JEFFREY B. COOPERSMITH (CA State Bar No. 252819)
KELLY M. GORTON (CA State Bar No. 300978)
BENJAMIN J. BYER (Admitted *Pro Hac Vice*)
AMANDA MCDOWELL (Admitted *Pro Hac Vice*)
MAX HENSLEY (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500 │Facsimile: (415) 276-6599
Email: jeffcoopersmith@dwt.com; kellygorton@dwt.com
       benbyer@dwt.com; amandamcdowell@dwt.com;
       maxhensley@dwt.com

Attorneys for Defendant RAMESH BALWANI

JOHN D. CLINE (CA State Bar No. 237759)
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted *Pro Hac Vice*)
LANCE A. WADE (Admitted *Pro Hac Vice*)
MICHELLE CHEN (Admitted *Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; MChen@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ELIZABETH A. HOLMES and RAMESH "SUNNY" BALWANI,<br><br>　　　　　Defendants. | Case No. CR-18-00258-EJD<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER DIRECTING THE GOVERNMENT TO CEASE AND DESIST POST-INDICTMENT USE OF THE GRAND JURY PROCESS TO OBTAIN DISCOVERY**<br><br>**Date: October 12, 2018<br>Time: 10:00 a.m.<br>CTRM.: 4, 5th Floor**<br><br>**Hon. Susan van Keulen** |

1

REPLY ISO MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD

# I. INTRODUCTION

The government's opposition contains no valid reason for its continued use of the grand jury other than the theoretical possibility that evidence will surface justifying additional charges or defendants. That is, the government seeks to continue to use the grand jury after indictment because it claims it *might* find something with which to seek a superseding indictment, even if it has no plans to do so. Because the government could make this same assertion in every case, the government's position amounts to a claim that it has unfettered authority to use the grand jury after an indictment without limit. This is not the law.

As addressed in our Motion and further below, (a) Defendants have standing to challenge the government's post-indictment use of the grand jury because they will face substantial harm if the government is permitted to engage in improper pretrial discovery that could prejudice their rights to a fair trial; (b) the timing and circumstances of the government's post-indictment Subpoena enforcement efforts demonstrate that continued use of the grand jury is inappropriate; and (c) at a minimum, a taint team is required because the documents the government is trying to review from Theranos are voluminous and defendants would be prejudiced by having to review the materials to ensure that privileged common interest materials are not included.[1]

# II. ARGUMENT

**A.   Defendants Have Standing to Challenge the Misuse of the Grand Jury Process.**

Defendants' standing to challenge the Subpoena rests on their interests as criminal defendants and the harm they will suffer if the government is allowed to circumvent the Federal Rules of Criminal Procedure to obtain improper pretrial discovery. The timing and circumstances of the Subpoena demonstrate that the government is using it to prepare for trial and to storehouse documents it was concerned it might have more difficulty obtaining from Theranos through a trial subpoena. The Court should grant Defendants' Motion to ensure that their trial is not tainted from the outset because of evidence obtained improperly through the Subpoena.

---

[1] Defendants have standing to object to disclosure of privileged common interest materials in the Theranos document set. With respect to documents that are covered only by a privilege belonging to Theranos, it is at least important to note that the government appears to have taken advantage of Theranos's financial difficulties to obtain otherwise privileged material. As discussed below, a "taint team" should be ordered at a minimum.

2

REPLY ISO MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD

The government fails to cite a single case holding that a criminal defendant does not have standing to challenge the government's abuse of the grand jury process after an indictment has been returned. Instead, the government argues that criminal defendants have standing to challenge a grand jury subpoena *only* if enforcement of the subpoena would implicate the defendant's privilege or property interests. *See* Opp. Br. 6-10. If the government's logic were accepted, then *nobody*—let alone a criminal defendant—would have standing to challenge blatant abuses of the grand jury process absent a personal privilege or property interest.

The government's standing argument is flatly inconsistent with the case law. Courts recognize that "[t]hird party standing to assert claims of grand jury abuse *cannot* be determined by categorizing the claimed interest as one of property or privilege," but rather courts look to the "nature of the abuse" to determine whether it affects the "legitimate interests of the party allegedly abused." *In re Grand Jury (Schmidt & Sons)*, 619 F.2d 1022, 1026–27 (3d Cir. 1980) (emphasis added)[2]; *In re Grand Jury Proceedings (Fernandez)*, 814 F.2d 61, 67-68 (1st Cir. 1987) (looking to the "scope and gravity" of the alleged grand jury abuse to find that defendants had standing). While a member of the public with no special stake in the proceedings may not have standing to challenge grand jury abuse, there are many instances when a third-party could have standing—the most obvious being a criminal defendant who challenges grand jury abuse after an indictment.

For example, the First Circuit held that a criminal defendant had standing to challenge a grand jury subpoena directed to a third-party travel agency on the grounds that the "grand jury was being used for the improper purpose of gathering evidence for a criminal case in which indictments have already issued." *Fernandez*, 814 F.2d at 64. There, the Court recognized that the criminal defendant's standing did not hinge on a relationship of privilege, property, or privacy interest, but instead rested on "the harm to his interests as a defendant in a criminal trial and as a victim of a systematic abuse of the powers of the grand jury." *Id.* at 66.

---

[2] The government's attempt to distinguish *Schmidt & Sons* is ineffective. Opp. Br. 7-8. Contrary to the government's assertion, the *Schmidt & Sons* court *declined* to narrowly limit third-party standing to challenge grand jury abuse to claims based on "privilege" or "property interests." *Schmidt & Sons*, 619 F.2d at 1026-27. Even if the government's theory were accepted—and the Subpoena had to "impose[] a burden" on the Defendants, *see* Opp. Br. 7—as discussed below, the Subpoena substantially burdens Defendants by introducing tainted and improperly obtained evidence into their trial.

Courts across the country agree that an indicted defendant has standing to challenge the misuse of the grand jury. *See In re Grand Jury Subpoena (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (granting defendant's motion to quash third-party grand jury subpoena); *United States v. Doe*, 455 F.2d 1270, 1274 n.2, 1276 (1st Cir. 1972) (finding that criminal defendant had standing to challenge grand jury subpoena and ordering grand jury transcripts to remain available); *In re Grand Jury (Doe I)*, 111 F.3d 1066 (3d Cir. 1997) (finding third-party standing based on interests other than privilege); Grand Jury Law and Practice § 9:16 (2d ed.) ("A party who is already under indictment has standing to seek relief at the time third parties are subpoenaed.").

The cases cited by the government are irrelevant because they discuss the attorney-client privilege rather than a defendant's standing to challenge the abuse of the grand jury process for the improper purpose of pre-trial preparation. Opp. Br. 8-10. For instance, the opposition cites *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009), in which the court found that a defendant failed to demonstrate that statements made by his company's outside counsel were protected by the attorney-client privilege. *Ruehle*, however, did not even discuss standing, and did not implicate a challenge to the abuse of the grand jury process. In the other case cited by the government, *United States v. Okun*, 281 F. App'x 228 (4th Cir. 2008),[3] the court denied the defendant's motion to intervene to quash a grand jury subpoena directed to his company's chief legal officer because the defendant failed to establish an attorney-client privilege. *Okun* is similarly inapposite because the defendant's standing claim rested solely on a claim of attorney-client privilege but did not involve the defendant's post-indictment challenge to the government's abuse of the grand jury process.

Defendants have shown that their standing to challenge the Subpoena is based on their interests as defendants in a pending criminal trial and as victims of the misuse of the grand jury process. Defendants will be substantially harmed if the government is allowed to misuse the grand jury to circumvent the Federal Rules of Criminal Procedure, improperly obtain pretrial discovery, and gather evidence on already-indicted charges that may be used against them at

---

[3] This case is incorrectly cited in the opposition, but Defendants provide the correct legal citation above.

DAVIS WRIGHT TREMAINE LLP

trial. Defendants have standing to challenge the Subpoena and to protect their right to a fair trial, which should be free from the taint of improperly obtained evidence.

**B.     The Post-Indictment Use of the Grand Jury is Improper.**

Defendants have shown that the government's post-indictment effort to enforce the Subpoena issued *over a year ago* is a misuse of the grand jury process. The government concedes, as it must, that "a grand jury subpoena cannot be used for the sole or dominant purpose of preparing an indicted case for trial." Opp. Br. 11. *See United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972) ("[T]he government should not use the grand jury for the sole purpose of pretrial discovery.").

The government also does not dispute that an "irregularity" in the use of the grand jury process can demonstrate that the grand jury is being used to prepare for trial. *See* Opp. Br. 10. And courts recognize that the timing and circumstances of a grand jury subpoena can lead to an inference that the government is using the grand jury improperly. *See Simels*, 767 F.2d at 29 (timing of subpoena can "cast[] significant light on its purposes").

For instance, in *United States v. Kovaleski*, after the court declared a mistrial and the government stated its intent to persist in the prosecution of the defendant, the government called an unindicted co-conspirator to testify before the grand jury. 406 F. Supp. 267, 269 (E.D. Mich. 1976). The witness had been called to testify in connection with an investigation of potential perjury charges. *Id*. The government conceded that it deemed it necessary to call the witness before the grand jury at that time because he was about to be released from federal custody and might not be available to the government at a later date. *Id*. The court noted the "unusual" timing of the subpoena and found that the government's "dominating purpose" was to use the grand jury to improperly obtain evidence for the upcoming trial. *Id.* at 270; *see also United States v. Raphael*, 786 F. Supp. 355, 359 (S.D.N.Y. 1992) (timing of government's service of grand jury subpoena "appears questionable"); *Simels*, 767 F.2d at 29-30 (quashing subpoena because circumstances suggested it was being used to prepare the pending indictment for trial); *cf. United States v. Furrow*, 125 F. Supp. 2d 1170, 1177 (C.D. Cal. 2000) (noting "no unusual sequence of events to justify an inference of … misconduct").

(left margin: DAVIS WRIGHT TREMAINE LLP)

Here, the timing and circumstances surrounding the Subpoena demonstrate its use is to obtain pretrial discovery. As shown in Defendants' Motion, the Subpoena was issued to Theranos in September 2017—over a year ago and almost nine months before the original indictment was returned. When Mr. Balwani's counsel challenged the government's post-indictment efforts to enforce the Subpoena, the government returned a superseding indictment *within the week,* without having the documents from Theranos. *See* Dkt. 39.

The government admits that the Subpoena targets documents from the time period from October 2016 to September 2017, Opp. Br. 5, further demonstrating that the Subpoena is improper. Theranos stopped taking investments no later than April 2015, Coopersmith Decl. [Second] ¶ 2, and its labs were shut down no later than October 2016—thus, there were no new investors or patients during that time period. *Id.* ¶ 3, Exs. A & B. Defendant Balwani did not even work at Theranos after May 2016. *Id.* ¶ 4. The indictment in this case was returned by the grand jury in June 2018—nine months after issuing the Subpoena to Theranos. The government contends that it agreed to allow Theranos to produce responsive documents on a rolling basis, starting with documents previously produced in the PFM litigation that pre-dated October 2016. Opp. Br. 4. To our knowledge, however, the government did not attempt to enforce the production of the October 2016 to September 2017 documents prior to the grand jury returning the June 2018 indictment. The government's focus on this arbitrary time period once again shows the Subpoena is being used as a "fishing expedition" and should not be enforced. *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (recognizing limits to the grand jury's powers). Indeed, the requests in the Subpoena are so broad that it is impossible to believe that its purpose is not to obtain trial discovery or simply provide a means to storehouse documents in the event they might turn out to be useful one day.

This irregular timing is only compounded by the fact that the government aggressively sought enforcement of the Subpoena in the final days before Theranos's dissolution. After it was apparent Theranos would dissolve, the government informed Theranos it was going to continue its enforcement efforts and was "conscious of the fact that the company's *dwindling resources* leave us with limited time." Coopersmith Decl. [First] Ex. C (emphasis added). This admission

strongly suggests a concern that the government might have more difficulty obtaining documents from Theranos through a trial subpoena, and also suggests the government is using the Subpoena to storehouse this evidence to prepare for trial. This is inconsistent with a need for the documents for the purpose of superseding. Indeed, the government's claimed need to obtain the documents because of Theranos' dissolution is strikingly similar to the government's improper use of a grand jury subpoena in *Kovaleski* to secure witness testimony before the witness might become unavailable.

While the government vaguely alludes to a "continued investigation," *see* Opp. Br. 11-15, the government fails to identify any conduct that is being pursued. And if the documents sought in the Subpoena were really needed for an ongoing investigation of additional charges, it seems highly improbable that the government would have agreed to a year-long delay in compliance, especially considering the grand jury has been investigating this case since 2016. *See* Bostic Decl. ¶ 3. Troublingly, the government's misuse of the grand jury process apparently sweeps even more broadly than its Subpoena enforcement efforts, as the government admits that the ongoing grand jury investigation includes interviews of "newly identified witnesses." *Id.* ¶ 4. The government is silent as to whether that testimony pertains to new charges or defendants, suggesting this too is improper. The government has offered "no other justification" for the continued grand jury investigation after more than two years and a superseding indictment. *See Star*, 470 F.2d at 1217.

The government argues generally that the post-indictment use of a grand jury subpoena may sometimes be needed to investigate offenses like "obstruction and money laundering," Opp. Br. 13, but the government does <u>not</u>, and could not, assert that it is investigating those charges in this case. There is not a shred of evidence that could support any such charges. Regarding "money laundering," the Securities and Exchange Commission has brought a civil action against Mr. Balwani but did not even seek a disgorgement remedy, demonstrating that there is absolutely no evidence of ill-gotten gains in this case. No. 18-cv-01603 (N.D. Cal. 2018), Dkt. 1. The SEC also did not seek any disgorgement from Ms. Holmes in the settlement it reached with her. No. 18-cv-01602 (N.D. Cal. 2018), Dkts. 1 & 9. The reason is, as the government knows, Mr.

DAVIS WRIGHT TREMAINE LLP

1 Balwani invested millions of his own money in Theranos, and there has never been any
2 allegation (nor could there be) that either Mr. Balwani or Ms. Holmes used investor money for
3 purposes other than running the business of Theranos.  There is also no basis for any
4 investigation of "obstruction," which is purely hypothetical.  If bare assertions of hypothetical
5 additional charges or defendants were enough to justify post-indictment use of the grand jury,
6 there would be no limit on such use.

7 As shown, the irregularities surrounding the timing and circumstances of the Subpoena
8 are substantial and demonstrate that the Subpoena is being used for trial preparation.

**C.   In the Alternative, and at a Minimum, the Government Should Be Required to Form a "Taint Team."**

The government contends that it is "considering" using a "taint or filter team" to review the materials sought by the Subpoena to ensure that the trial team does not review privileged materials.  *See* Opp. 9 n.2.  Defendants have shown in their Motion that the voluminous Theranos material sought by the government could contain documents covered by joint defense or common interest privileges belonging to Defendants—particularly because it seeks email from in-house company counsel.[4]  To give just one example, during the time period targeted by the Subpoena (October 2016 to September 2017), counsel for both Defendants and Theranos were engaged in countless email exchanges that were protected by the "common interest privilege," Coopersmith Decl. [Second] ¶ 5, and these email communications (or other emails amongst in-house company counsel, who were engaging in common interest communications, about the privileged substance of these communications) could very well be in the materials produced by Theranos.

The government appears to be well aware of the serious privilege issues here, as it has acknowledged that a "taint team" might be appropriate.  While the government should not have access to the materials sought by the Subpoena in the first place, if the Court rules otherwise, *at*

---

[4] Although Defendants' claim of standing does not rest on a personal privilege, the fact that privileged materials are likely implicated in the millions of pages of materials in question further demonstrates that Defendants have standing to raise this challenge.

*the very least* it should require the government to use a taint or filter team to review the materials for privileged documents—an option the government concedes is feasible.

### III.     CONCLUSION

The grand jury power is not so broad that abuses can remain unchecked by the rights of criminal defendants. The timing and circumstances of the Subpoena demonstrate that it is being used for trial preparation. The government cannot justify post-indictment use of the grand jury on the ground that it is theoretically possible that it could turn up evidence with which to supersede, because that rationale would eviscerate any limits on continued grand jury use because it would always be true. Accordingly, the Court should order the government to cease and desist its post-indictment use of the grand jury, including its post-indictment Subpoena enforcement efforts and, now that the government has disclosed it, continued and improper grand jury witness interviews.

DATED: October 1, 2018                                  Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jeffrey B. Coopersmith*
       Jeffrey B. Coopersmith

Attorneys for Defendant
RAMESH BALWANI

WILLIAMS &CONNOLLY LLP

By: */s/ Kevin M. Downey*
       Kevin M. Downey

Attorneys for Defendant
ELIZABETH A. HOLMES