```
 1
 2                   UNITED STATES DISTRICT COURT

 3                  NORTHERN DISTRICT OF CALIFORNIA

 4                        SAN JOSE DIVISION

 5
     UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
 6                                     )
                   PLAINTIFF,          )
 7                                     )  SAN JOSE, CALIFORNIA
              VS.                      )
 8                                     )  NOVEMBER 4, 2019
     ELIZABETH A. HOLMES AND RAMESH    )
 9   SUNNY BALWANI,                    )  PAGES 1 - 92
                                       )
10                 DEFENDANTS.         )
     _____    )

11

12
                   TRANSCRIPT OF PROCEEDINGS
13            BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  JOHN C. BOSTIC
17                              JEFFREY B. SCHENK
                           150 ALMADEN BOULEVARD, SUITE 900
18                         SAN JOSE, CALIFORNIA 95113

19                         BY:  ROBERT S. LEACH
                           1301 CLAY STREET, SUITE 340S
20                         OAKLAND, CALIFORNIA 94612

21        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22
     OFFICIAL COURT REPORTER:
23                         IRENE L. RODRIGUEZ, CSR, RMR, CRR
                           CERTIFICATE NUMBER 8074
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                                BY:  KEVIN M. DOWNEY
 4                                   LANCE A. WADE
                                     KATHERINE A. TREFZ
 5                                   MICHELLE CHEN
                                725 TWELFTH STREET, N.W.
 6                              WASHINGTON, D.C. 20005

 7

       FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
 8                              BY:  JEFFREY COOPERSMITH
                                     WALTER F. BROWN, JR.
 9                                   RANDALL LUSKEY
                                     AMANDA MCDOWELL
10                                   STEPHEN CAZARES
                                THE ORRICK BUILDING
11                              405 HOWARD STREET
                                SAN FRANCISCO, CALIFORNIA 94105
12
       ALSO PRESENT:           U.S. ATTORNEY'S OFFICE
13                             CIVIL DIVISION
                               BY:  ALLISON DAW
14                             150 ALMADEN BOULEVARD, SUITE 900
                               SAN JOSE, CALIFORNIA 95113
15

16     TELEPHONICALLY          FOOD AND DRUG ADMINISTRATION
                               BY:  MARCI NORTON
17                                  JACKLYN MARTINEZ-RESLY

18
                               DEPARTMENT OF HEALTH HUMAN
19                             SERVICES
                               BY:  LINDSAY TURNER
20

21

22

23

24

25
```

|  |  |  |
|---|---|---|

```
             1    SAN JOSE, CALIFORNIA                    NOVEMBER 4, 2019

             2                    P R O C E E D I N G S

10:14AM      3        (COURT CONVENED AT 10:14 A.M.)

10:14AM      4            THE COURT:  THANK YOU FOR YOUR COURTESY.

10:14AM      5        LET'S CALL OUR MORNING CALENDAR.  THIS IS 18-258, UNITED

10:15AM      6    STATES VERSUS HOLMES AND BALWANI.

10:15AM      7        WHY DON'T I CAPTURE APPEARANCES, PLEASE.

10:15AM      8            MR. BOSTIC:  GOOD MORNING, YOUR HONOR.  JOHN BOSTIC,

10:15AM      9    JEFF SCHENK, AND BOB LEACH FOR THE UNITED STATES.

10:15AM     10            MR. LEACH:  GOOD MORNING, YOUR HONOR.

10:15AM     11            THE COURT:  GOOD MORNING.

10:15AM     12            MS. DAW:  ALLISON DAW, ASSISTANT UNITED STATES

10:15AM     13    ATTORNEY FOR THE CIVIL DIVISION FOR THE FDA AND CMS.

10:15AM     14            THE COURT:  THANK YOU.  THANK YOU FOR BEING HERE.

10:15AM     15            MS. DAW:  MY PLEASURE.

10:15AM     16            MR. WADE:  GOOD MORNING.  LANCE WADE.  WITH ME ARE

10:15AM     17    MY COLLEAGUES, KEVIN DOWNEY, KATHERINE TREFZ, AND MICHELLE CHEN

10:15AM     18    ON BEHALF OF MS. HOLMES WHO IS PRESENT.

10:15AM     19            THE COURT:  THANK YOU.  GOOD MORNING.

10:15AM     20            MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR.

10:15AM     21        JEFF COOPERSMITH FOR MR. BALWANI.  MY COLLEAGUES, RANDY

10:15AM     22    LUSKEY, AMANDA MCDOWELL, WALT BROWN, AND STEVE CAZARES ARE

10:15AM     23    PRESENT AS WELL AS IS MR. BALWANI.

10:15AM     24            THE COURT:  THANK YOU.  GOOD MORNING.

10:15AM     25        I THINK WE HAVE SOME INDIVIDUALS TELEPHONICALLY APPEARING,
```

10:15AM  1    MS. KRATZMANN?

10:15AM  2              THE CLERK:  YES, YOUR HONOR.

10:15AM  3              THE COURT:  MAY I CAPTURE THOSE APPEARANCES, PLEASE.

10:15AM  4    LET'S START -- IS MS. TURNER ON THE LINE?

10:16AM  5              MS. TURNER:  YES, YOUR HONOR.  YES, I AM, YOUR

10:16AM  6    HONOR.  LINDSAY TURNER FROM HHS ON BEHALF OF CMS.

10:16AM  7              THE COURT:  THANK YOU.

10:16AM  8         WHO IS ON THE LINE REGARDING THE FDA?

10:16AM  9              MS. MARTINEZ-RESLY:  GOOD MORNING, YOUR HONOR.  THIS

10:16AM 10    IS JACKLYN MARTINEZ-RESLY AND MARCI NORTON FOR THE FDA.

10:16AM 11              THE COURT:  GOOD MORNING TO EACH OF YOU, AND THANK

10:16AM 12    YOU FOR JOINING US TELEPHONICALLY.  I THINK YOUR PRESENCE WILL

10:16AM 13    BE HELPFUL AS WE DISCUSS SOME OF THE ISSUES THAT REMAIN IN THIS

10:16AM 14    CASE.

10:16AM 15         LET ME START OFF BY SAYING I HAVE HAD BENEFIT OF

10:16AM 16    DOCUMENT 170, WHICH IS YOUR JOINT STATEMENT, AND YOU'VE TOLD ME

10:16AM 17    A LITTLE BIT ABOUT THE PROGRESS THAT WE'VE HAD.

10:16AM 18         LET ME -- I HAVE SOME THOUGHTS, AND, CANDIDLY, I WAS

10:16AM 19    THINKING THAT MAYBE I SHOULD JUST COME OUT AND TELL YOU WHAT

10:16AM 20    I'M THINKING NOW TO DO RATHER THAN -- AND I'M NOT SUGGESTING I

10:16AM 21    DON'T WANT TO HEAR FROM YOU BECAUSE I ALWAYS LEARN FROM YOU

10:17AM 22    WHEN WE HAVE THESE HEARINGS.

10:17AM 23         I AM, FIRST OF ALL, ENCOURAGED THAT THE PROTOCOL THAT THIS

10:17AM 24    COURT HAS TAKEN HAS PRODUCED SOME OF THE EVIDENCE AND DOCUMENTS

10:17AM 25    THAT THE DEFENSE HAS REQUIRED.

10:17AM 1          WE HAVE HAD, HAVEN'T WE, THIS LONG CONVERSATION FROM THE

10:17AM 2     DEFENSE PERSPECTIVE AS TO WHETHER OR NOT THE GOVERNMENT HAS

10:17AM 3     KNOWLEDGE, ACCESS, CONTROL, ET CETERA, OF SOME OF THIS

10:17AM 4     INFORMATION.

10:17AM 5          I ENGAGED A PROTOCOL, AND THIS IS FOR THE BENEFIT OF OUR

10:17AM 6     COLLEAGUES WHO ARE ON THE PHONE HERE.  I ENCOURAGED A PROTOCOL

10:17AM 7     THAT I THOUGHT WOULD PERMIT MORE DIRECT, IF YOU WILL, ACCESS TO

10:17AM 8     THE INFORMATION BECAUSE WE HAD THE AGENCY'S ATTENTION AND THEY

10:17AM 9     WERE RESPONDING.

10:17AM 10          THAT MORPHED, A LITTLE BIT, IF I COULD USE THAT CRUDE

10:17AM 11     WORD, INTO ASSISTING, THE GOVERNMENT ASSISTING THOSE AGENCIES

10:17AM 12     IN PRODUCING THE INFORMATION.

10:17AM 13          WE KNOW THAT, FOR EXAMPLE, I THINK THE GOVERNMENT'S --

10:18AM 14     EXCUSE ME -- DEFENSE MOTION WAS FILED IN APRIL OF THIS YEAR I

10:18AM 15     THINK IT WAS AND VERY CLOSE TO THE START OF THE BASEBALL

10:18AM 16     SEASON, AND NOW WE'RE POST WORLD SERIES.

10:18AM 17          (LAUGHTER.)

10:18AM 18               MR. WADE:  DULY NOTED, YOUR HONOR, THE WORLD SERIES.

10:18AM 19               THE COURT:  YES, I APPRECIATE THAT.  I WAS IN D C.

10:18AM 20     I COULDN'T GET TO THE PARADE BECAUSE OF FLIGHT OBLIGATIONS, BUT

10:18AM 21     I WAS ABLE TO DRIVE AROUND WITH MY DAUGHTER, AND WE OBSERVED A

10:18AM 22     LOT OF RED AND A LOT OF PEOPLE MOVING TOWARDS THE POTOMAC IN A

10:18AM 23     CERTAIN AREA.  SO WE VICARIOUSLY ENJOYED THE CELEBRATION.

10:18AM 24          CONGRATULATIONS TO THOSE OF YOU FROM THE NATION'S

10:18AM 25     CAPITAL.

| 10:18AM | 1 | MR. WADE:  THANK YOU. |
| 10:18AM | 2 | (LAUGHTER.) |
| 10:18AM | 3 | THE COURT:  YOU'RE WELCOME.  IT'S BEEN A FEW DECADES |
| 10:18AM | 4 | SINCE YOU'VE BEEN ABLE TO ENJOY THAT CELEBRATION, AND |
| 10:18AM | 5 | WALTER JOHNSON IS RISING I'M SURE.  SO CONGRATULATIONS FOR |
| 10:18AM | 6 | THAT.  THAT'S WHY YOU'RE HERE SO HAPPY.  I'M GLAD YOU WERE ABLE |
| 10:19AM | 7 | TO GET TO THE PARADE.  I'M HOPE YOU DID. |
| 10:19AM | 8 | MR. WADE:  I DID, YOUR HONOR. |
| 10:19AM | 9 | THE COURT:  GOOD.  GOOD.  WELL DONE. |
| 10:19AM | 10 | BUT WE WENT THROUGH THAT COLLABORATIVE, IF YOU WILL, |
| 10:19AM | 11 | APPROACH. |
| 10:19AM | 12 | I THINK FROM MY PERSPECTIVE IT DID ALLOW FOR THE |
| 10:19AM | 13 | PRODUCTION OF DOCUMENTS.  WE KNOW IN SOME OF THE EARLIER |
| 10:19AM | 14 | STATEMENTS FROM THE AGENCIES THAT THE TERM "6 MONTHS," WAS |
| 10:19AM | 15 | INDICATED IT WOULD TAKE THAT LONG TO PRODUCE THE DOCUMENTS. |
| 10:19AM | 16 | THE GOVERNMENT HERE IN THIS COURTHOUSE DISAGREED WITH |
| 10:19AM | 17 | THAT.  THEY SAID THAT'S TOO LONG.  I THINK WE ALL WERE IN |
| 10:19AM | 18 | AGREEMENT THAT THAT WAS TOO LONG, AND NONETHELESS, WE'RE HERE |
| 10:19AM | 19 | GETTING CLOSE TO THAT TIME PERIOD. |
| 10:19AM | 20 | I THINK WHAT WE CAN DO, THOUGH, WITH YOUR HELP, WITH YOUR |
| 10:19AM | 21 | STATEMENTS AND WHERE THINGS ARE, I KNOW THAT DOCUMENTS, MANY OF |
| 10:19AM | 22 | THEM, HAVE BEEN PRODUCED.  THE DEFENSE SUGGESTS THAT THEY NEED |
| 10:19AM | 23 | MORE AND PERHAPS DIFFERENT PARAMETERS TO COMPLETE THIS PROCESS. |
| 10:20AM | 24 | LET ME JUST SAY THAT I WANT THIS PROCESS TO BE COMPLETE |
| 10:20AM | 25 | BEFORE THE END OF THIS YEAR, AND I INTEND TO ISSUE AN ORDER |

```
10:20AM   1     THAT ORDERS THAT.

10:20AM   2          MY THOUGHT ABOUT -- LET ME JUST DIGRESS FOR A MOMENT TO

10:20AM   3     THINK ABOUT THE GOVERNMENT'S POSITION AS TO WHETHER OR NOT THEY

10:20AM   4     HAVE ACCESS, ET CETERA.

10:20AM   5          I STEP BACK AND I LOOK AT THE FDA AND CMS AND THEIR

10:20AM   6     INVOLVEMENT HERE, AND LET ME JUST ASK THIS QUESTION OF

10:20AM   7     MS. TURNER, OF MS. NORTON, AND OF MS. MARTINEZ-RESLY.  AND

10:20AM   8     THANK YOU, COUNSEL, THANK YOU FOR BEING ON THE LINE.  IT'S VERY

10:20AM   9     HELPFUL TO HAVE ACCESS TO THE LAWYERS WHO REPRESENT THESE

10:20AM  10     AGENCIES.

10:20AM  11          AS I UNDERSTAND IT THE GOVERNMENT, THAT IS THE

10:20AM  12     PROSECUTION, HAVE BEEN ASSISTING YOU IN CONDUIT, IF YOU WILL,

10:20AM  13     TO PROVIDE INFORMATION FOR THE PRODUCTION OF THE DISCOVERY.

10:21AM  14     THEY'VE ALLOWED YOU TO USE THE -- WHAT IS THE ACRONYM FOR THE

10:21AM  15     DATABASE?

10:21AM  16               MS. DAW:  LTSC, YOUR HONOR.

10:21AM  17               THE COURT:  YES, YES, TO DOWNLOAD THE INFORMATION TO

10:21AM  18     ASSIST.

10:21AM  19          AND MY SENSE IS THAT THAT HAS BEEN OF GREAT ASSISTANCE TO

10:21AM  20     YOU, MS. TURNER?

10:21AM  21               MS. TURNER:  YES, THAT'S RIGHT, YOUR HONOR.  IT'S

10:21AM  22     BEEN OF GREAT ASSISTANCE TO BE ABLE TO USE THAT LTSC DATABASE,

10:21AM  23     AND OTHERWISE I'M NOT SURE HOW THE AGENCY WOULD HAVE BEEN ABLE

10:21AM  24     TO PRODUCE THESE DOCUMENTS AND REVIEW THEM.

10:21AM  25               THE COURT:  THANK YOU.
```

10:21AM 1    AND, MS. NORTON AND MS. MARTINEZ-RESLY, MY SENSE IS THAT

10:21AM 2    YOU WOULD CONCUR IN THAT OBSERVATION?

10:21AM 3         MS. MARTINEZ-RESLY:  YOUR HONOR, WE HAVE BEEN --

10:21AM 4         THE COURT:  THIS IS MS. MARTINEZ?

10:21AM 5         MS. MARTINEZ-RESLY:  YES, I APOLOGIZE.  THIS IS

10:21AM 6    MS. MARTINEZ-RESLY.

10:21AM 7    WE HAVE BEEN KEEPING THE PROSECUTION ABREAST OF THE STATUS

10:21AM 8    OF OUR REVIEW AND PRODUCTION OF DOCUMENTS.

10:22AM 9    HOWEVER, WE HAVE BEEN USING THE DEPARTMENT OF HEALTH AND

10:22AM 10   HUMAN SERVICES'S DOCUMENT REVIEW PLATFORM BECAUSE WE HAVE

10:22AM 11   SPECIFIC LIMITATIONS ON THE KIND OF INFORMATION THAT WE'RE ABLE

10:22AM 12   TO PROVIDE OUTSIDE OF THE DEPARTMENT BY REGULATION AND BY

10:22AM 13   STATUTE INCLUDING TO THE DEPARTMENT OF JUSTICE.

10:22AM 14   SO THAT'S WHY WE'VE BEEN USING THE DEPARTMENT OF HEALTH

10:22AM 15   AND HUMAN SERVICES'S DOCUMENT REVIEW PLATFORM.

10:22AM 16        THE COURT:  I SEE.  WELL, THANK YOU FOR THAT.

10:22AM 17   LET ME ASK, HAS THE GOVERNMENT THEN -- AND I'M NOT ASKING

10:22AM 18   YOU TO GRADE THEM BUT JUST IN GENERAL -- HAS THE GOVERNMENT,

10:22AM 19   THE PROSECUTION, BEEN HELPFUL IN THEIR COMMUNICATION WITH YOU

10:22AM 20   AND YOUR COMMUNICATION WITH THEM IN DISCUSSING THE VARIOUS

10:22AM 21   TYPES OF PRODUCTION AND, PARDON ME, THE EVIDENCE, THE

10:22AM 22   DOCUMENTS, AND THEIR PRODUCTION?  HAS THAT BEEN HELPFUL?

10:22AM 23        MS. MARTINEZ-RESLY:  YES.  THIS IS

10:23AM 24   MS. MARTINEZ-RESLY AGAIN.

10:23AM 25   YES, THE GOVERNMENT HAS BEEN RESPONSIVE AND CLEAR IN

10:23AM 1    COMMUNICATING WHAT THE REQUESTS ENTAIL.  SO, YES, I WOULD AGREE

10:23AM 2    WITH THAT STATEMENT.

10:23AM 3            THE COURT:  ALL RIGHT.  AND MY SENSE IS THAT

10:23AM 4    CONTINUED COOPERATION AND COLLABORATION WITH THEM WOULD ASSIST

10:23AM 5    YOU GOING FORWARD?

10:23AM 6            MS. MARTINEZ-RESLY:  YES, THAT IS CORRECT.

10:23AM 7            THE COURT:  OKAY.  THERE'S BEEN NO OBJECTION TO A

10:23AM 8    LEADING QUESTION YET BUT --  SO LET ME JUST ASK, MS. TURNER,

10:23AM 9    MS. NORTON, AND MS. MARTINEZ-RESLY, ARE YOU PREPARED NOW TO

10:23AM 10   CONTINUE TO PROVIDE THIS ASSISTANCE AND WORK COLLABORATIVELY

10:23AM 11   WITH THE PROSECUTION HERE IN THIS ENDEAVOR?

10:23AM 12           MS. MARTINEZ-RESLY:  THIS IS MS. MARTINEZ-RESLY.

10:23AM 13      YES, THE FDA IS PREPARED TO CONTINUE TO DO THAT.

10:23AM 14           THE COURT:  ALL RIGHT.

10:23AM 15           MS. TURNER:  YES, THIS IS MS. TURNER.

10:23AM 16      AND CMS IS PREPARED TO DO THAT AS WELL.

10:23AM 17           THE COURT:  WELL, THANK YOU VERY MUCH.

10:24AM 18      DOES THAT INCLUDE THEN PROVIDING THE PROSECUTION HERE

10:24AM 19   ACCESS TO INFORMATION THAT YOU INTEND TO PROVIDE AND THAT YOU

10:24AM 20   PERHAPS -- INCLUDING INFORMATION THAT YOU WOULD DETERMINE NOT

10:24AM 21   TO PROVIDE?  WOULD YOU INCLUDE THE GOVERNMENT IN THOSE

10:24AM 22   DISCUSSIONS?

10:24AM 23           MS. NORTON:  THIS IS MS. NORTON, YOUR HONOR.

10:24AM 24      NO, WE WOULD NOT BE PROVIDING THE PROSECUTION WITH ANY

10:24AM 25   DOCUMENTS THAT WE ARE NOT ALSO PROVIDING TO THE DEFENDANTS.

10:24AM 1          THE COURT:  OKAY.

10:24AM 2          MS. TURNER:  THIS IS MS. TURNER.

10:24AM 3      THE SAME FOR CMS AS WELL.

10:24AM 4          THE COURT:  AND THAT IS BECAUSE, IF YOU COULD JUST

10:24AM 5      TELL ME?

10:24AM 6          MS. NORTON:  WELL, THIS IS MS. NORTON.

10:24AM 7      THE FDA HAS A GROUP OF PEOPLE WHO REVIEW DOCUMENTS FOR

10:24AM 8      RESPONSIVENESS AND FOR PRODUCTION AND FOR PRIVILEGE.

10:24AM 9      WE HAVE SEVERAL, AS MS. MARTINEZ-RESLY MENTIONED,

10:25AM 10     STATUTORY PROHIBITIONS ON THE PRODUCTION OF CONFIDENTIAL

10:25AM 11     COMMERCIAL INFORMATION AND TRADE SECRET INFORMATION OF THIRD

10:25AM 12     PARTIES OTHER THAN THERANOS BECAUSE HERE WE HAVE A WAIVER FROM

10:25AM 13     THE THERANOS ASSIGNEE PERMITTING US TO PRODUCE THERANOS'S

10:25AM 14     CONFIDENTIAL INFORMATION IN THE CONTEXT OF THIS LITIGATION.

10:25AM 15     BUT WE HAVE TO REVIEW THE DOCUMENTS BEFORE THEY CAN BE

10:25AM 16     PRODUCED TO ANYBODY TO MAKE SURE, YOU KNOW, FIRST, THAT THEY

10:25AM 17     ARE RESPONSIVE, BUT IF THEY'RE NOT RESPONSIVE WE WOULDN'T BE

10:25AM 18     TURNING THEM OVER TO ANY PARTY; AND, SECOND, TO MAKE SURE THAT

10:25AM 19     THERE IS NOT INFORMATION IN THE DOCUMENTS THAT WERE PROHIBITED

10:25AM 20     BY LAW FROM PRODUCING, OR THAT THEY ARE SUBJECT TO A PRIVILEGE

10:25AM 21     THAT THE AGENCY HAS NOT WAIVED.  THOSE WOULD ALSO HAVE TO BE

10:25AM 22     REDACTED BEFORE THEY WERE PRODUCED.

10:25AM 23     SO WHAT THE FDA IS DOING IS THAT IT'S REVIEWING THE

10:25AM 24     DOCUMENTS INHOUSE, AND THEN IF THE DOCUMENT IS RESPONSIVE AND

10:25AM 25     NOT PRIVILEGED, IT'S BEING PRODUCED TO THE PARTIES.

10:26AM  1          THE COURT:  ALL RIGHT.  THANK YOU.

10:26AM  2          MS. TURNER:  THIS IS MS. TURNER FOR CMS.

10:26AM  3      WE ARE REVIEWING THE DOCUMENTS IN HOUSE FOR ATTORNEY

10:26AM  4  CLIENT AND WORK PRODUCT PRIVILEGES, AND ALSO WE WILL BE

10:26AM  5  SPOT-CHECKING THE DOCUMENTS FOR SOME INFORMATION THAT IS

10:26AM  6  DELIVERED AND THAT DOESN'T HAVE ANYTHING TO DO WITH THERANOS.

10:26AM  7          THE COURT:  OKAY.  AND LET ME JUST SUGGEST SOMETHING

10:26AM  8  TO YOU.  I'M CERTAIN IN YOUR CAREERS THAT YOU HAVE HAD

10:26AM  9  SITUATIONS WHERE YOUR AGENCIES HAVE BEEN INVOLVED IN CRIMINAL

10:26AM  10  CASES, AND SO YOU HAVE SOME AFFINITY AND SOME KNOWLEDGE OF

10:26AM  11  POTENTIAL, I'LL USE THE WORD, TENSION THAT SOMETIMES CAN ARISE

10:26AM  12  BETWEEN A CIVIL CASE, A CRIMINAL CASE, AND THE RESPONSIBILITIES

10:26AM  13  THAT -- AND OBLIGATIONS THAT PARTIES HAVE IN THOSE CASES.

10:26AM  14      I KNOW YOU HAVE FAMILIARITY WITH THOSE, MS. TURNER,

10:27AM  15  MS. NORTON, AND MS. MARTINEZ-RESLY?

10:27AM  16          MS. MARTINEZ-RESLY:  YES, YOUR HONOR.

10:27AM  17          MS. TURNER:  YES, YOUR HONOR.

10:27AM  18          THE COURT:  ALL RIGHT.  THANK YOU.

10:27AM  19      AND MY SENSE ALSO IS THAT IN THOSE CRIMINAL CASES WHERE

10:27AM  20  THERE IS SOME TENSION BETWEEN CIVIL AND CRIMINAL OBLIGATIONS

10:27AM  21  THAT THE PROSECUTION COULD AND WOULD ASSIST YOUR VIEW AND YOUR

10:27AM  22  AGENCY'S AND ATTORNEYS, AT LEAST PERHAPS EVEN INITIALLY AND

10:27AM  23  CONTINUING TO IDENTIFY CERTAIN ISSUES THAT ARE UNIQUE TO

10:27AM  24  CRIMINAL DISCOVERY AND CRIMINAL PRODUCTION THAT MIGHT ASSIST IN

10:27AM  25  THE RELEASE OF CERTAIN INFORMATION OR PROVIDE YOU GREATER

10:27AM 1    AFFINITY FOR YOUR OBJECTIONS SUCH THAT THOSE COULD BE STATED AT

10:27AM 2    A LATER DATE AT A LATER TIME.

10:28AM 3        DO YOU CAPTURE MY MEANING?

10:28AM 4            MS. TURNER:  YES, YOUR HONOR.

10:28AM 5            THE COURT:  MS. TURNER, MS. NORTON,

10:28AM 6    MS. MARTINEZ-RESLY?

10:28AM 7            MS. NORTON:  THIS IS MS. NORTON.

10:28AM 8        WE HEAR WHAT YOU'RE SAYING, YOUR HONOR.

10:28AM 9            THE COURT:  SO WHAT I WAS SAYING -- AGAIN, I STARTED

10:28AM 10   OFF BY ME TELLING THESE GOOD LAWYERS AND PEOPLE HERE WHAT MY

10:28AM 11   INITIAL THOUGHTS ARE, AND LET ME COMPLETE THAT.

10:28AM 12       MY THOUGHTS ARE HERE, AS I LOOK AT THIS PRODUCTION OF

10:28AM 13   DOCUMENTS THAT HAVE GONE FORWARD THAT HAVE BEEN RELEASED,

10:28AM 14   THERE'S STILL SOME HICCUPS TO BE RESOLVED.

10:28AM 15       BUT I DO THINK -- I'M LOOKING TO THE GOVERNMENT'S TABLE

10:28AM 16   HERE -- I DO THINK THAT WHAT THE COURT INTENDS TO DO IS TO

10:28AM 17   ORDER THE CONTINUED PRODUCTION.  WE'RE GOING TO DISCUSS THE

10:28AM 18   NUANCES OF THAT IN JUST A MOMENT, BUT IN SOME MANNER THE COURT

10:28AM 19   IS GOING TO ORDER THAT THESE DOCUMENTS, THIS DISCOVERY, BE

10:28AM 20   PROVIDED, AND THE COURT IS GOING TO INVOKE RULE 16 AS TO THE

10:29AM 21   GOVERNMENT AND INDICATE TO THE GOVERNMENT THAT THEIR

10:29AM 22   OBLIGATIONS, THAT IS THE GOVERNMENT'S, THE PROSECUTION'S, THE

10:29AM 23   COURT FINDS THAT THERE IS SUFFICIENT GROUNDS TO ESTABLISH THAT

10:29AM 24   THERE IS A RULE 16 OBLIGATION FOR THE GOVERNMENT TO COMPLETE

10:29AM 25   THE DISCOVERY THAT HAS BEEN TRACKED SO FAR.

10:29AM 1        NOW, WHAT THAT MEANS -- I'M LOOKING NOW TO THE DEFENSE

10:29AM 2    TABLES -- THIS IS NOT AN INVITATION TO RELITIGATE WHAT HAS

10:29AM 3    ALREADY BEEN PROVIDED AS A RULE 16 ISSUE.  I THINK I'VE MADE

10:29AM 4    THAT DECISION ALREADY, BUT WHAT I'M SUGGESTING IS THAT THE

10:29AM 5    GOVERNMENT'S RULE 16 OBLIGATION ATTACHES TO THE FINISHING OF

10:29AM 6    THIS DISCOVERY REQUEST SUCH THAT I DO THINK THAT THE

10:29AM 7    GOVERNMENT -- IT'S APPROPRIATE TO FIND THAT THE RULE 16

10:29AM 8    OBLIGATION WILL GO FORWARD FROM HERE TO COMPLETE THIS

10:29AM 9    PRODUCTION OF INFORMATION.

10:30AM 10       SO I THINK IN GENERAL THAT'S THE OVERTONE OF WHAT I INTEND

10:30AM 11    TO DO TODAY.  ONE OF YOU MIGHT CONVINCE ME OTHERWISE.

10:30AM 12       MR. WADE, YOUR HEAD WAS MOVING UP AND DOWN WHICH I THINK

10:30AM 13    IS A UNIFORM INDICATION OF CONFIRMATION.

10:30AM 14          MR. WADE:  IT WAS, YOUR HONOR.  YES.

10:30AM 15          THE COURT:  OKAY.  ALL RIGHT.

10:30AM 16       SO HAVING SAID THAT, SHOULD WE THEN HAVE A DISCUSSION

10:30AM 17    ABOUT THESE OTHER REMAINING ISSUES AND THE NUANCES OF THEM, HOW

10:30AM 18    THAT SHOULD BE PRODUCED WITH THESE AGENCIES?

10:30AM 19       I KNOW THE GOVERNMENT HAD SOME -- EXCUSE ME, THE DEFENSE

10:30AM 20    HAD SOME QUESTIONS ABOUT SOME INFORMATION.

10:30AM 21          MR. COOPERSMITH:  YES, YOUR HONOR, IT MAKES SENSE TO

10:30AM 22    ME.

10:30AM 23          THE COURT:  OKAY.

10:30AM 24          MR. WADE:  YOUR HONOR, I THINK THAT IS SENSIBLE.  I

10:30AM 25    THINK ONE OF THE MOST SIGNIFICANT ISSUES IN THAT REGARD ARE

| | | |
|---|---|---|
| 10:30AM | 1 | PRESERVATION ISSUES AND THE POSSIBILITY THAT IT WOULD APPEAR |
| 10:30AM | 2 | THAT DOCUMENTS MAY HAVE BEEN DESTROYED IN THIS CASE ARE NOT |
| 10:31AM | 3 | ADEQUATELY PRESERVED, SO I HOPE -- THAT'S AN ISSUE THAT WE HOPE |
| 10:31AM | 4 | WE CAN ADDRESS DIRECTLY HERE THIS MORNING BECAUSE IT'S |
| 10:31AM | 5 | OBVIOUSLY OF GREAT CONCERN TO US. |
| 10:31AM | 6 | I'M SURE IT'S OF GREAT CONCERN TO THE GOVERNMENT AS WELL |
| 10:31AM | 7 | GIVEN THAT THE GOVERNMENT ASKED THE AGENCIES TO PRESERVE THESE |
| 10:31AM | 8 | DOCUMENTS YEARS AGO. |
| 10:31AM | 9 | THE COURT:  OKAY. |
| 10:31AM | 10 | MS. DAW:  IF I MAY BE HEARD ON THAT, YOUR HONOR? |
| 10:31AM | 11 | THE COURT:  YES. |
| 10:31AM | 12 | MS. DAW:  ALLISON DAW FOR THE HHS SUBAGENCIES FDA |
| 10:31AM | 13 | AND CMS. |
| 10:31AM | 14 | I DON'T UNDERSTAND THE SOURCE OF THE CONCERN THAT |
| 10:31AM | 15 | DOCUMENTS HAVE NOT BEEN PRESERVED.  I PARTICIPATED IN THE MEET |
| 10:31AM | 16 | AND CONFER TELEPHONE CALLS, AS DID ALL THREE ATTORNEYS WHO ARE |
| 10:31AM | 17 | ON THE PHONE. |
| 10:31AM | 18 | THE CLERK:  COULD YOU POINT THAT TO YOU.  THERE YOU |
| 10:31AM | 19 | GO. |
| 10:31AM | 20 | MS. DAW:  AND I DON'T RECALL ANYBODY MAKING ANY |
| 10:31AM | 21 | REPRESENTATIONS THAT DOCUMENTS HAD NOT BEEN RETAINED.  SO I, |
| 10:32AM | 22 | FRANKLY, AM AT A LOSS TO UNDERSTAND THE SOURCE OF THIS CONCERN |
| 10:32AM | 23 | ON DEFENSE'S PART. |
| 10:32AM | 24 | THE COURT:  OKAY.  WELL, LET'S -- I THINK WE SHOULD |
| 10:32AM | 25 | PROBABLY AGENDIZE EACH OF THESE TOPICS AND THEN HAVE A |

10:32AM  1        DISCUSSION OF THEM.

10:32AM  2               BUT FIRST, MS. KRATZMANN --

10:32AM  3          (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

10:32AM  4               THE COURT:  SO LET'S -- WELL, WHY DON'T WE MARSHAL

10:32AM  5        THROUGH SOME OF THE ISSUES HERE.  WHY DON'T I CALL COUNSEL TO

10:32AM  6        THE LECTERNS, DEFENSE COUNSEL AND GOVERNMENT COUNSEL, AND THEN

10:32AM  7        WE'LL GET BACK TO THESE OTHER ISSUES.

10:33AM  8          (PAUSE IN PROCEEDINGS.)

10:33AM  9               THE COURT:  SO I THINK WHAT I'LL DO, MR. BOSTIC, IS

10:33AM  10       START WITH THE DEFENSE AND HAVE YOU TELL ME BASED ON MY

10:33AM  11       OVERVIEW OF WHAT I INTEND TO DO HERE AND TO COMPLETE THIS TASK.

10:33AM  12          IN THE SPIRIT OF FULL DISCLOSURE ALSO I WANT TO TELL YOU

10:33AM  13       THAT I INTEND TO MAKE, AS I SAID -- OH, GREAT.  THANK YOU -- I

10:33AM  14       INTEND TO MAKE SOME ORDERS THAT THIS GET DONE BY THE END OF THE

10:33AM  15       YEAR.

10:33AM  16               MR. WADE:  THANK YOU, YOUR HONOR.  AND WE APPRECIATE

10:33AM  17       THE COURT'S ASSISTANCE IN GETTING THIS INFORMATION WHICH, AS

10:33AM  18       WE'VE DISCUSSED IN PREVIOUS HEARINGS, WE BELIEVE IS CRITICAL TO

10:33AM  19       THE DEFENSE IN THIS CASE.

10:33AM  20          I, TOO -- WE OBVIOUSLY HAVE DIFFERENCES OF OPINION THAT

10:33AM  21       WE'RE GOING TO RESOLVE WITH RESPECT TO THE AGENCIES IN THIS

10:33AM  22       CASE, BUT RECOGNIZING THAT AGENCY COUNSEL IS PRESENT, WE

10:34AM  23       UNDERSTAND THEY'RE WORKING HARD, AND I HOPE THAT NONE OF OUR

10:34AM  24       COMMENTS ARE TAKEN TO DEMEAN THE EFFORTS THAT ARE BEING MADE.

10:34AM  25               BUT NOTWITHSTANDING THOSE EFFORTS, I THINK WE HAVE SOME

10:34AM 1    DISTANCE TO GO DOWN THIS ROAD TO GET THERE BY THE END OF THE

10:34AM 2    YEAR.

10:34AM 3              THE COURT:  WELL, THANK YOU, MR. WADE.  LET ME

10:34AM 4    INTERRUPT YOU AGAIN.  I APOLOGIZE.

10:34AM 5        I SHOULD HAVE STARTED OFF BY THANKING ALL OF YOU,

10:34AM 6    INCLUDING THE AGENCIES AND THEIR REPRESENTATIVES WHO ARE ON THE

10:34AM 7    PHONE.  I DO WANT TO THANK YOU FOR MEETING AND CONFERRING.  I

10:34AM 8    KNOW JUDGES DO THAT A LOT, MEET AND CONFER, AND SOMETIMES

10:34AM 9    PEOPLE THINK, WELL, THAT JUST GETS IT OFF HIS OR HER DESK AND

10:34AM 10   PUTS IT ON THE LAWYERS TO DO, AND I SUPPOSE THAT'S TRUE TO A

10:34AM 11   CERTAIN EXTENT.

10:34AM 12       BUT WHEN YOU HAVE GOOD LAWYERS WHO ARE TALENTED, THEY KNOW

10:34AM 13   THE LAW, AND THEY KNOW WHAT THEY NEED, AND THEY KNOW WHAT THEY

10:34AM 14   CAN AND CANNOT DO, IT'S EASY TO MAKE THAT REQUEST.

10:34AM 15       YOU'VE DONE THAT.  I APPRECIATE IT.  TWO HOUR PHONE CALLS.

10:34AM 16   MY GOODNESS, YOU'VE ACCOMPLISHED A LOT.

10:34AM 17       BUT WHAT I HOPE WE CAN DO THIS MORNING IS TO FINISH UP THE

10:34AM 18   PATH HERE TO REACH WHAT WE'RE ALL OF COMMON PURPOSE TO GET THIS

10:35AM 19   DONE SO THAT YOU CAN MOVE FORWARD.

10:35AM 20       SO --

10:35AM 21             MR. WADE:  SURE.  AND, YOUR HONOR, WE WILL GO

10:35AM 22   THROUGH -- IF I COULD CATEGORIZE THE DISPUTES IN SORT OF TWO

10:35AM 23   BUCKETS.

10:35AM 24       ONE BUCKET RELATES TO PRESERVATION ISSUES OR POTENTIAL

10:35AM 25   DESTRUCTION ISSUES, AND THEN THE SECOND BUCKET WOULD RELATE TO

10:35AM 1    DOCUMENTS THAT STILL NEED TO BE PRODUCED AND THE TIMEFRAME FOR

10:35AM 2    THAT.

10:35AM 3        IT SOUNDS LIKE ONCE WE CLARIFY SOME SEARCH TERMS AND SOME

10:35AM 4    OTHER TECHNICAL ISSUES, WE MIGHT BE ABLE TO REACH A RESOLUTION

10:35AM 5    ON SOME OF THOSE OTHER TECHNICAL ISSUES HERE WITH THE COURT'S

10:35AM 6    ASSISTANCE.

10:35AM 7        THE MORE SIGNIFICANT CONCERN IS THAT FIRST ISSUE.  MS. DAW

10:35AM 8    FOR THE GOVERNMENT DID PARTICIPATE AND HER ASSISTANCE WAS VERY

10:35AM 9    HELPFUL IN THE MEET AND CONFER PROCESS.

10:35AM 10       TO HELP CRYSTALLIZE THIS ISSUE, THOUGH, I'M GOING TO POINT

10:35AM 11   TO TWO EXAMPLES.  IF I COULD REFER THE COURT TO DOCUMENT 170,

10:35AM 12   EXHIBIT A, WHICH IS A LETTER FROM FDA DATED OCTOBER 30TH, 2019.

10:36AM 13       ON THE SECOND PAGE OF THAT LETTER, YOUR HONOR, THERE ARE

10:36AM 14   SOME TECHNICAL ISSUES IDENTIFIED AND WHICH -- AND THERE ARE A

10:36AM 15   NUMBER OF BULLET POINTS.  IF YOU LOOK AT THE NUMBER, THE BULLET

10:36AM 16   POINTS THAT EXIST IN THE MIDDLE OF THE PAGE THERE, THE SECOND

10:36AM 17   BULLET POINT NOTES THAT WITH RESPECT TO 1,114 E-MAILS FOR

10:36AM 18   MR. GUTIERREZ, IT APPEARS THAT THE DOCUMENTS HAVE NOT BEEN

10:36AM 19   PRESERVED IN A WAY THAT IS SALVAGEABLE AND THAT THEY'RE ABLE TO

10:36AM 20   PRODUCE TO THE GOVERNMENT.

10:36AM 21       MR. GUTIERREZ, ACCORDING TO THE GOVERNMENT, WE DON'T

10:36AM 22   NECESSARILY DISAGREE, IS AMONGST ONE OF THE MOST IMPORTANT

10:37AM 23   WITNESSES IN THIS CASE.  INDEED, WE'VE TALKED ABOUT BRADY

10:37AM 24   COMING OUT OF THIS PROCESS AND EXCULPATORY INFORMATION COMING

10:37AM 25   OUT OF THIS PROCESS FOR THE FIRST TIME AS A RESULT OF THE

10:37AM  1    DEFENSE MOTION.  MUCH OF THAT MATERIAL RELATES DIRECTLY TO

10:37AM  2    MR. GUTIERREZ.

10:37AM  3        AND THE PARTIALLY VISIBLE E-MAILS IS INDICIA WITHIN

10:37AM  4    E-DISCOVERY LINGO FOR DOCUMENTS THAT WERE DELETED BUT COULD

10:37AM  5    ONLY PARTIALLY BE RESTORED, FRAGMENTS OF THOSE DOCUMENTS COULD

10:37AM  6    BE RESTORED.

10:37AM  7        SECOND, I NOTE ON THIS, ON THIS PAGE THERE ARE 255

10:37AM  8    DOCUMENTS FROM MR. GUTIERREZ THAT SEEM TO HAVE KIND OF COME OUT

10:37AM  9    OF THE BLUE, WHICH IS TROUBLING THAT WE HAVE DOCUMENTS FOR THE

10:37AM  10   MOST IMPORTANT WITNESS FOR THE FDA APPEARING, YOU KNOW, MONTHS

10:37AM  11   INTO THIS PROCESS WITHOUT EXPLANATION.

10:38AM  12       WITH RESPECT TO CMS --

10:38AM  13           THE COURT:  WELL, WHY DON'T WE --

10:38AM  14           MR. WADE:  YES.

10:38AM  15           THE COURT:  LET'S TALK ABOUT MR. GUTIERREZ.  I WAS

10:38AM  16   CURIOUS ABOUT WHAT A PARTIAL E-MAIL IS, AND MAYBE, MAYBE I CAN

10:38AM  17   GET SOME DEFINITION ON THAT.

10:38AM  18       MS. DAW.

10:38AM  19           MS. DAW:  ACTUALLY, I THINK THIS IS SOMETHING THAT

10:38AM  20   THE AGENCY ATTORNEYS MIGHT BE ABLE TO ADDRESS MORE SUCCINCTLY.

10:38AM  21           THE COURT:  OKAY.  ALL RIGHT.  WHO WOULD LIKE TO

10:38AM  22   TAKE THIS UP?  MS. MARTINEZ-RESLY?

10:38AM  23           MS. MARTINEZ-RESLY:  YES, YOUR HONOR, THIS IS

10:38AM  24   MS. MARTINEZ-RESLY.

10:38AM  25       WHAT WE'RE SEEING FOR THESE 1,114 E-MAILS ATTRIBUTABLE TO

10:38AM 1      MR. GUTIERREZ IS THAT OFTENTIMES A FULL "SUBJECT" LINE,

10:38AM 2  SOMETIMES A "FROM" LINE INDICATING WHO SENT THE E-MAIL, AND

10:38AM 3  THEN SOMETIMES A "DATE" LINE, SOMETIMES NOT.

10:38AM 4      WHAT IS CLEAR IS THAT THE "TO" FIELD IS ALMOST ALWAYS

10:39AM 5  MISSING AND THE CONTENT, THE BODY CONTENT OF THE E-MAIL IS

10:39AM 6  ALMOST ALWAYS MISSING.

10:39AM 7      SO THAT IS WHAT WE MEAN WHEN WE SAY THERE ARE PARTIALLY

10:39AM 8  VISIBLE E-MAILS FOR HIM.

10:39AM 9      AND I DON'T KNOW IF YOU WOULD LIKE ME TO GO INTO MORE

10:39AM 10  DETAIL AS TO WHAT WE'VE DONE ABOUT THOSE OR NOT AT THIS TIME.

10:39AM 11          THE COURT:  HAVE YOU TALKED ABOUT THIS, MR. WADE,

10:39AM 12  WITH --

10:39AM 13          MR. WADE:  WE'VE JUST RECEIVED SOME MORE

10:39AM 14  INFORMATION.  WE RECEIVED INFORMATION IN THE LETTER.

10:39AM 15      PRESERVATION WAS AN ISSUE THAT WAS DISCUSSED IN THE MEET

10:39AM 16  AND CONFER.  IT WAS AN ISSUE THAT WAS RAISED BY THE DEFENSE,

10:39AM 17  AND THE AGENCIES DIDN'T HAVE A LOT OF IMMEDIATE KNOWLEDGE WITH

10:39AM 18  RESPECT TO THAT IN THE MEET AND CONFER PROCESS AND PLEDGED TO

10:39AM 19  LOOK INTO IT.

10:39AM 20      DEFENSE COUNSEL WAS SOMEWHAT SURPRISED BY THAT GIVEN THAT

10:39AM 21  IT WAS HARD FOR US TO UNDERSTAND HOW COUNSEL FOR THE GOVERNMENT

10:39AM 22  WOULD BE IN A POSITION TO REPRESENT THAT THEY HAD GATHERED AND

10:39AM 23  PRODUCED ALL RESPONSIVE DOCUMENTS WHEN THEY DIDN'T KNOW WHETHER

10:39AM 24  ALL RESPONSIVE DOCUMENTS HAD ACTUALLY BEEN PRESERVED.

10:40AM 25      BUT SETTING THAT ASIDE, THIS IS IN ESSENCE ABSENT SOME

10:40AM  1      ABILITY TO REMEDY THIS ISSUE IN ADMISSION THAT MATERIAL

10:40AM  2      EVIDENCE HAS BEEN DESTROYED.

10:40AM  3          NOT HAVING THE CONTENT OF E-MAILS FROM THE MOST IMPORTANT

10:40AM  4      WITNESS IN THE CASE SUGGESTS THAT MATERIAL EVIDENCE HAS BEEN

10:40AM  5      DESTROYED.

10:40AM  6              THE COURT:  WELL, WE DON'T KNOW, WE DON'T KNOW WHAT

10:40AM  7      EVIDENCE HAS BEEN DESTROYED OR NOT.  I UNDERSTAND YOUR CONCERN

10:40AM  8      IT COULD BE A SHOPPING LIST ON AN E-MAIL OR SOMETHING.  WE JUST

10:40AM  9      DON'T KNOW, DO WE?

10:40AM 10              MR. COOPERSMITH:  JUST TO ADD, YOUR HONOR, I

10:40AM 11      THINK --

10:40AM 12              THE COURT:  MR. COPPERSMITH.

10:40AM 13              THE CLERK:  SPEAK INTO THE MICROPHONE.

10:40AM 14              MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

10:40AM 15          THE COURT'S QUESTION I THINK SHOULD BE ANSWERED.  IN THE

10:40AM 16      STATUS REPORT THE GOVERNMENT SAYS THAT THE AGENCY DIDN'T TELL

10:40AM 17      THE GOVERNMENT THAT MATERIAL HAD BEEN DELETED.

10:40AM 18          I THINK THE FDA COUNSEL ON THE PHONE HAS EXPLAINED WHAT

10:40AM 19      THEY'RE TRYING TO DO TO RESTORE.  SO THAT'S ONE THING.

10:40AM 20          BUT I HAVE NOT HEARD YET AN ANSWER TO THE COURT'S QUESTION

10:40AM 21      AS TO WHETHER OR NOT MATERIAL IN THE FIRST PLACE WAS DESTROYED

10:41AM 22      AND WHY.

10:41AM 23          IF THAT'S THE CASE, I THINK THE COURT AND THE PARTIES NEED

10:41AM 24      TO HAVE A FULL EXPLANATION OF WHAT ACTUALLY OCCURRED HERE,

10:41AM 25      ESPECIALLY WITH RESPECT TO MR. GUTIERREZ WHO WE AGREE IS AMONG

10:41AM 1    THE MOST IMPORTANT WITNESSES IN THE CASE.

10:41AM 2            THE COURT:  OKAY.  IT SOUNDS LIKE,

10:41AM 3    MS. MARTINEZ-RESLY, ARE YOU WORKING ON THAT ISSUE, THAT IS,

10:41AM 4    THAT QUESTION?

10:41AM 5            MS. MARTINEZ-RESLY:  YES, YES, YOUR HONOR.  I WILL

10:41AM 6    ALSO JUST SAY THAT WE HAVE NO EVIDENCE, AND WE HAVE NO REASON

10:41AM 7    TO BELIEVE THAT ANY OF THESE E-MAILS OR ANY OTHER E-MAILS WERE

10:41AM 8    DESTROYED INTENTIONALLY OR INADVERTENTLY.

10:41AM 9        THE EXPLANATION THAT WE HAVE RECEIVED FROM OUR INFORMATION

10:41AM 10   MANAGEMENT PERSONNEL IS THAT THE ORIGINAL E-MAIL CONTAINER

10:41AM 11   FILE, THE PFT FILE THAT HOUSES THESE E-MAILS, WAS CORRUPT.  I

10:41AM 12   DON'T THINK -- I DON'T UNDERSTAND THAT AS BEING RELATED TO

10:41AM 13   DELETION OR DESTRUCTION OF DOCUMENTS.

10:41AM 14           THE COURT:  OKAY.  LET ME -- MR. WADE, YOU CAN

10:42AM 15   CONTROL YOUR ENTHUSIASM FOR JUST A MOMENT.

10:42AM 16       IT SOUNDS LIKE THIS IS SOMETHING THAT IS STILL UNDER

10:42AM 17   INVESTIGATION BY THE AGENCY, AND MY SENSE IS THAT WE'RE NOT

10:42AM 18   GOING TO GET AN ANSWER TO THIS THIS MORNING.

10:42AM 19           MR. WADE:  YOUR HONOR, MAYBE WE CAN ADDRESS A COUPLE

10:42AM 20   OF OTHER PRESERVATION ISSUES THAT RELATE TO THE AGENCIES.

10:42AM 21           THE COURT:  BECAUSE WHAT --

10:42AM 22           MR. WADE:  AND START WITH THE FDA.

10:42AM 23       BUT I THINK THE DIRECT ANSWER TO YOUR QUESTION IS IT

10:42AM 24   APPEARS THAT WE'RE NOT GOING TO RESOLVE THIS THIS MORNING, BUT

10:42AM 25   I THINK IT'S MAYBE THE SINGLE MOST SIGNIFICANT REMAINING ISSUE

| | | |
|---|---|---|
| 10:42AM | 1 | IN THE CASE AND THE ONE THAT HAS THE ABILITY TO AFFECT THE |
| 10:42AM | 2 | RIGHTS OF THE DEFENDANTS, AND, THEREFORE, I WOULD SUGGEST THAT |
| 10:42AM | 3 | AN ORDER THAT REQUIRES MORE COMPREHENSIVE DISCLOSURE WITH |
| 10:42AM | 4 | RESPECT TO THE EFFORTS THAT WERE MADE TO PRESERVE EVIDENCE AND |
| 10:42AM | 5 | CONTEMPORANEOUS DOCUMENTS THAT EVIDENCE THAT IN A DISCLOSURE OF |
| 10:43AM | 6 | THAT EVIDENCE IS APPROPRIATE. |
| 10:43AM | 7 | PART OF THE REASON WHY I ASKED THE COURT TO INDULGE US TO |
| 10:43AM | 8 | HEAR THESE ISSUES IN GREATER LENGTH, IF YOU LOOK AT THE THIRD |
| 10:43AM | 9 | PAGE, THE FIRST TWO BULLETS ON THE THIRD PAGE SIMILARLY MAKE |
| 10:43AM | 10 | CLEAR THAT THERE MAY HAVE WELL BEEN OTHER GAPS WITH RESPECT TO |
| 10:43AM | 11 | THE PRESERVATION OF DOCUMENTS. |
| 10:43AM | 12 | THE AGENCIES DIDN'T KNOW.  THERE ARE -- THEY'RE DOING SOME |
| 10:43AM | 13 | INVESTIGATION, BUT WHAT THEY DESCRIBED AS THEIR PRESERVATION |
| 10:43AM | 14 | EFFORTS RELATED TO A SUBCATEGORY OF DOCUMENTS BUT DID NOT |
| 10:43AM | 15 | ADDRESS OTHER CATEGORIES OF DOCUMENTS. |
| 10:43AM | 16 | SO THIS IS A MAJOR POTENTIAL ISSUE IN THE CASE, AND THE |
| 10:43AM | 17 | ENTHUSIASM THAT YOUR HONOR SENSED FROM MY FACE COMES FROM THE |
| 10:43AM | 18 | FACT THAT IT'S NOT EVERY DAY THAT I HEAR AN ADMISSION OF A |
| 10:43AM | 19 | CORRUPT E-MAIL FILE FROM THE MOST SIGNIFICANT CUSTODIAN IN A |
| 10:43AM | 20 | CASE.  THAT IS, THAT IS A CORRUPTION, AN EVIDENCE CORRUPTION, |
| 10:44AM | 21 | AN EVIDENCE DESTRUCTION ISSUE THAT I THINK IS -- |
| 10:44AM | 22 | THE COURT:  I THINK THE TERM "CORRUPTION" -- MAYBE |
| 10:44AM | 23 | WE SHOULD BE CLEAR ON THAT. |
| 10:44AM | 24 | MR. BOSTIC. |
| 10:44AM | 25 | MR. BOSTIC:  YES, YOUR HONOR.  FOR THE GOVERNMENT I |

10:44AM 1      THINK THE COURT HAS HIT ON AN IMPORTANT DISTINCTION.  I HEAR

10:44AM 2      THE DEFENSE TALKING A LOT ABOUT FAILURE TO PRESERVE AND

10:44AM 3      EVIDENCE DESTRUCTION, BUT THAT'S SIMPLY NOT WHAT WE'RE HEARING

10:44AM 4      FROM THE AGENCIES AND THAT'S NOT WHAT WE'RE SEEING OR AT LEAST

10:44AM 5      THAT'S NOT WHAT THE AGENCIES ARE SEEING.  THEY'RE TALKING ABOUT

10:44AM 6      TECHNICAL ERRORS RELATING TO THE POSSIBLE UNFORTUNATE LOSS OF

10:44AM 7      SOME POTENTIALLY RESPONSIVE DOCUMENTS IN THIS CASE, BUT THERE'S

10:44AM 8      A LEAP BETWEEN THAT AND THE ASSUMPTION THAT THE AGENCIES EITHER

10:44AM 9      FAILED TO FOLLOW THEIR DOCUMENT PRESERVATION PROTOCOLS, OR THAT

10:44AM 10     THOSE PROTOCOLS WERE INSUFFICIENT, OR THAT THERE WAS SOME KIND

10:44AM 11     OF NEGLIGENCE OR MALFEASANCE HERE.  THERE'S SIMPLY NOT A

10:44AM 12     SHOWING OF THAT AS EAGER AS THE DEFENSE IS TO GET THERE.

10:44AM 13          THE COURT:  I'M SORRY.  I DIDN'T MEAN TO INTERRUPT.

10:44AM 14          MR. BOSTIC:  I AM SORRY.  I ALSO THINK I SHOULD

10:44AM 15     PROVIDE THE PROSECUTION'S PERSPECTIVE BECAUSE THE DEFENSE HAS

10:45AM 16     MENTIONED A NUMBER OF TIMES HOW IMPORTANT MR. GUTIERREZ IS TO

10:45AM 17     THIS CASE.

10:45AM 18          LET ME JUST SAY THAT THE PROSECUTION DOES NOT AGREE THAT

10:45AM 19     MR. GUTIERREZ IS THE MOST IMPORTANT CASE -- EXCUSE ME, THE MOST

10:45AM 20     IMPORTANT WITNESS OR DOCUMENT CUSTODIAN IN THIS CASE.

10:45AM 21          I MENTIONED THIS BEFORE, BEFORE THE COURT, BUT THE

10:45AM 22     INDICTMENT HERE ALLEGES A WIDE RANGE OF MISREPRESENTATIONS THAT

10:45AM 23     WERE MADE BY THE DEFENDANTS TO VICTIMS, INCLUDING DOCTORS AND

10:45AM 24     PATIENTS, AS WELL AS THE INVESTORS WHO GAVE MONEY TO THERANOS.

10:45AM 25          REPRESENTATIONS, OR RATHER MISREPRESENTATIONS CONCERNING

10:45AM 1    FDA IS JUST ONE CATEGORY AMONG SEVERAL CATEGORIES OF

10:45AM 2    MISREPRESENTATIONS THAT THE DEFENDANTS MADE, AND THE NATURE OF

10:45AM 3    THOSE MISREPRESENTATIONS REGARDING FDA IS IMPORTANT ALSO

10:45AM 4    BECAUSE THEY RELATE TO DISCREPANCIES BETWEEN WHAT DEFENDANTS

10:45AM 5    SAID THERANOS WAS REQUIRED TO DO AND WHAT FDA TOLD DEFENDANTS

10:45AM 6    THAT THERANOS WAS REQUIRED TO DO.

10:45AM 7        NOW, THE GOVERNMENT IS SUPPORTING THE DEFENDANT'S REQUEST

10:46AM 8    TO GAIN INSIGHT INTO A LOT OF INTERNAL FDA CORRESPONDENCE, BUT

10:46AM 9    LOOKING AT THE ALLEGATIONS IN THE INDICTMENT, THE IMPORTANT

10:46AM 10   QUESTION IS WAS THERE A DIFFERENCE BETWEEN WHAT THE FDA TOLD

10:46AM 11   DEFENDANTS AND WHAT THE DEFENDANTS THEN REPORTED TO OTHERS?

10:46AM 12       FDA'S INTERNAL CORRESPONDENCE ARE A BIG STEP REMOVED FROM

10:46AM 13   THAT, AND I THINK WE'LL GET LATER INTO ADDITIONAL TOPICS THAT

10:46AM 14   THE DEFENSE WANTS TO LOOK INTO THAT ARE EVEN FURTHER AFIELD

10:46AM 15   FROM THAT CENTRAL QUESTION.

10:46AM 16       SO I JUST WANT TO PUT THAT INTO PERSPECTIVE FOR THE COURT.

10:46AM 17            THE COURT:  OKAY.  THANK YOU.

10:46AM 18       AND WHEN WE TALK ABOUT CORRUPTION, WE'RE TALKING ABOUT

10:46AM 19   TECHNICAL ELECTRONIC DEVICES THAT HAVE OPERATED INAPPROPRIATELY

10:46AM 20   IN SOME MANNER FOR SOME REASON.

10:46AM 21            MR. COOPERSMITH:  THAT'S MY UNDERSTANDING, YOUR

10:46AM 22   HONOR, THAT WHEN WE TALK ABOUT CORRUPT FILES, WE'RE TALKING

10:46AM 23   ABOUT SOME TECHNICAL PROBLEM IN THIS CASE IN RESTORING

10:46AM 24   MATERIAL.

10:46AM 25       BUT MR. WADE'S COMMENTS, I THINK, ARE CORRECT THAT IN THE

10:46AM  1   WORLD OF E-DISCOVERY, OFTEN WHEN YOU TALK ABOUT CORRUPTED FILES

10:47AM  2   OR NEED-TO-RESTORE FILES, IT'S POSSIBLE, AND OFTEN LIKELY, THAT

10:47AM  3   WE'RE TALKING ABOUT MATERIAL THAT WAS ORIGINALLY DELETED.

10:47AM  4        SO I UNDERSTAND MR. BOSTIC'S POINT, AND, YOU KNOW, WISHFUL

10:47AM  5   THINKING IS THAT THIS IS NOT THAT, BUT I STILL HAVE NOT HEARD

10:47AM  6   ANY EXPLANATION, AND I DON'T KNOW THAT WE'LL GET THIS TODAY, AS

10:47AM  7   TO WHY THESE FILES WERE, YOU KNOW, CORRUPTED, IF YOU WILL, OR

10:47AM  8   HAVE THESE TECHNICAL GLITCHES.

10:47AM  9             THE COURT:  SURE.

10:47AM  10            MR. COOPERSMITH:  OFTEN WE SAY THEY ARE.

10:47AM  11       SO I KNOW THAT IT'S POSSIBLE FROM EXPERIENCE THAT A

10:47AM  12  FORENSIC INVESTIGATION CAN DETERMINE OFTEN WHAT HAPPENED IN THE

10:47AM  13  FIRST PLACE, AND THAT'S THE EXPLANATION THAT I THINK WE ALL ARE

10:47AM  14  NOT HEARING TODAY.

10:47AM  15            THE COURT:  AND MY SENSE IS THAT MS. MARTINEZ-RESLY

10:47AM  16  IS NOT ABLE TO GIVE US THE ANSWER TO THAT QUESTION THIS

10:47AM  17  MORNING.  I THINK SHE SUGGESTED THAT THERE IS SOME ONGOING

10:47AM  18  REVIEW OF THIS IN HER AGENCY, AND I'M TRUSTING THAT SHE'S GOING

10:47AM  19  TO ENGAGE THE PROPER RESOURCES IN HER OFFICE TO FIND OUT WHAT

10:47AM  20  HAPPENED, AND WHEN IT HAPPENED, AND WHEN IT DID HAPPEN WHAT

10:48AM  21  ITEMS, DOCUMENTS, DID IT AFFECT, IF ANY.

10:48AM  22       THAT'S A SEPARATE -- LET'S JUST PUT THAT AS A SEPARATE

10:48AM  23  LINE ITEM THAT IS SEPARATE FROM DISCLOSURE.  I'VE TALKED ABOUT

10:48AM  24  DISCLOSURE BY THE END OF THE YEAR, WHICH I'M SERIOUS ABOUT.

10:48AM  25       THIS INVESTIGATION, AND MS. MARTINEZ-RESLY, IF YOU COULD

10:48AM 1    MAKE A NOTE, I'M GOING TO ASK YOU AT SOME PART OF OUR

10:48AM 2    CONVERSATION THIS MORNING WHEN YOU THINK YOU'LL HAVE THAT

10:48AM 3    ACCOMPLISHED SUCH THAT YOU CAN REPORT TO THESE LAWYERS AND TO

10:48AM 4    THE COURT THE STATUS.  THAT'S GOING TO BE AN IMPORTANT ISSUE.

10:48AM 5         SO I THINK THAT'S ABOUT ALL WE CAN DO ON THAT NOW.

10:48AM 6         MR. WADE, ANYTHING ELSE YOU WANT TO TALK ABOUT?

10:48AM 7              MR. WADE:  NO.  I THINK THAT'S APPROPRIATE, YOUR

10:48AM 8    HONOR.

10:48AM 9         THE ONLY THING I WOULD NOTE IS, BECAUSE IT'S DIRECTLY

10:48AM 10   RELATED TO THAT ISSUE, IF THE COURT WERE TO LOOK AT THE FIRST

10:48AM 11   TWO BULLETS ON PAGE 3, THEY SIMILARLY TALK ABOUT WHETHER OR NOT

10:48AM 12   THERE WAS ADEQUATE PRESERVATION OF HARD COPY DOCUMENTS THAT

10:49AM 13   EXISTED, WHAT STEPS WERE TAKEN WHEN PEOPLE SUCH AS

10:49AM 14   MR. GUTIERREZ LEFT THE AGENCY, AND WHETHER THAT EVIDENCE STILL

10:49AM 15   EXISTS.

10:49AM 16        AND THE FDA WAS NOT ABLE TO ANSWER THAT DURING OUR MEET

10:49AM 17   AND CONFER PROCESS.  THE CORRESPONDENCE ATTACHED AS EXHIBIT A

10:49AM 18   SAYS THAT THEY'RE IN THE PROCESS OF GATHERING THAT.

10:49AM 19              THE COURT:  RIGHT.

10:49AM 20              MR. WADE:  I GUESS THE POINT I WOULD LIKE TO BE MADE

10:49AM 21   AS THE COURT ADDRESSES THIS ISSUE, GIVEN THE TIMING THAT WE'RE

10:49AM 22   UNDER HERE, IS THAT THAT -- THOSE DISCLOSURES HAPPEN MORE

10:49AM 23   QUICKLY WITH REGARD TO THE PRESERVATION OF EVIDENCE BECAUSE WE

10:49AM 24   WON'T KNOW WHETHER WE HAVE EVERYTHING OR WHETHER THE MISSING

10:49AM 25   ITEMS HAVE SIGNIFICANCE IN THE CASE THAT, FOR EXAMPLE, COULD

10:49AM 1    RELATE TO MOTIONS OR COULD RELATE TO OTHER ISSUES IN THE CASE

10:49AM 2    UNTIL WE HAVE THIS INFORMATION.

10:49AM 3         MY EXPECTATION WOULD BE -- UNFORTUNATELY, I THINK WE'RE

10:49AM 4    GOING TO HAVE TO GET THIS INFORMATION AND THEN MEET AND CONFER

10:50AM 5    AGAIN, AND THIS IS A SEPARATE PROCESS BECAUSE --

10:50AM 6              THE COURT:  RIGHT.

10:50AM 7              MR. WADE:  -- IT APPEARS THAT THE AGENCIES HAD NOT

10:50AM 8    ADDRESSED THIS DURING THEIR COLLECTION EFFORTS IN THE FIRST

10:50AM 9    INSTANCE.

10:50AM 10             THE COURT:  RIGHT.  AND I DON'T REMEMBER IN THE

10:50AM 11   PLEADINGS WHETHER THERE WAS A TIME STAMP AS TO WHEN THIS WAS

10:50AM 12   REALIZED WHEN THIS ISSUE AROSE.

10:50AM 13        BUT IN ANY EVENT, WHAT I'VE TOLD MS. MARTINEZ-RESLY, I'M

10:50AM 14   GOING TO TASK HER WITH TELLING US WHEN SHE THINKS SHE CAN HAVE

10:50AM 15   A REPORT ON THE PROGRESS OF THIS.

10:50AM 16        AND ALSO, MS. MARTINEZ-RESLY, AS TO WHAT INFORMATION YOU

10:50AM 17   CAN RELEASE TO THE LAWYERS, BOTH SIDES, AS TO THE PROTOCOL

10:50AM 18   INVOLVING RETENTION, HOW THAT IS DONE AND WHETHER OR NOT --

10:50AM 19   WHETHER ALL OF THOSE PROCEDURES WERE ENGAGED IN REGARDS TO

10:50AM 20   MR. GUTIERREZ'S E-MAILS.

10:50AM 21             MR. WADE:  AND MORE GENERALLY, YOUR HONOR, AS THE

10:50AM 22   TWO BULLET POINTS NOTE, IT'S NOT -- MR. GUTIERREZ IS A SPECIFIC

10:51AM 23   EXAMPLE WHERE WE KNOW THAT THERE WERE E-MAILS THAT ARE

10:51AM 24   CORRUPTED.  I DON'T MEAN TO SUGGEST THAT ANYONE ACTED

10:51AM 25   CORRUPTLY.

10:51AM 1          THE COURT:  NO.  WE'RE IN SILICON VALLEY.  IT'S A

10:51AM 2     TERM OF ART.  I THINK WE UNDERSTAND THAT.

10:51AM 3          SO THAT'S A SEPARATE ISSUE THAT IS GOING TO BE ENGAGED

10:51AM 4     HERE, AND WE'LL HAVE A SEPARATE REPORT ON THAT.

10:51AM 5          ANYTHING FURTHER ON THIS?  MR. COPPERSMITH?

10:51AM 6          MR. COOPERSMITH:  NO, YOUR HONOR.

10:51AM 7          THE COURT:  MR. BOSTIC, ANYTHING FURTHER ON THIS?

10:51AM 8          MS. DAW, ANYTHING FURTHER ON THIS?

10:51AM 9          MR. BOSTIC:  YOUR HONOR, FOR THE PROSECUTION, I'LL

10:51AM 10    HAVE SOME ADDITIONAL THOUGHTS ABOUT THE COURT'S PLAN TO IMPOSE

10:51AM 11    A RULE 16 OBLIGATION ON THE GOVERNMENT, BUT IT MIGHT MAKE SENSE

10:51AM 12    TO SAVE THOSE THOUGHTS UNTIL AFTER WE HAVE DISCUSSED THE

10:51AM 13    SPECIFIC ISSUE.

10:51AM 14         THE COURT:  RIGHT.  LET'S SEE HOW BIG THE JOB IS.

10:51AM 15    OKAY.  WHAT'S NEXT?

10:51AM 16         MR. WADE:  RELATED ISSUE ON THE PRESERVATION ISSUE

10:51AM 17    BEFORE GOING INTO THE SPECIFICS ON MISSING OR EVIDENCE THAT IS

10:51AM 18    SORT OF IN PROCESS.

10:51AM 19         THERE'S A SIMILAR ISSUE WITH RESPECT TO CMS.  I BELIEVE

10:52AM 20    CMS IS IN THE PROCESS OF INVESTIGATING THEIR PRESERVATION

10:52AM 21    EFFORTS.

10:52AM 22         THE COURT MAY REMEMBER ON A PRIOR OCCASION THAT WE HAD

10:52AM 23    DISCUSSED THERE WAS A PRIOR INSPECTION FROM CMS THAT OCCURRED

10:52AM 24    AT THERANOS EARLIER IN TIME AND THAT THAT HAD GIVEN THERANOS

10:52AM 25    SORT OF A CLEAN BILL OF HEALTH AT THAT TIME.

10:52AM 1      SO FAR WE HAVE NOT SEEN DOCUMENTS RELATING TO THAT WHICH

10:52AM 2  IS CONCERNING TO THE DEFENSE.  OUR HOPE -- WE HAVE RAISED THAT

10:52AM 3  ISSUE A NUMBER OF TIMES.  WE'VE MET AND CONFERRED ABOUT THE

10:52AM 4  PRESERVATION ISSUES WITH THE AGENCIES, AND OUR HOPE WOULD BE

10:52AM 5  THAT WE CAN RECEIVE SIMILAR UPDATES FROM THE AGENCIES WITH

10:52AM 6  RESPECT TO THE PRESERVATION EFFORTS THAT THEY MADE, CMS MADE

10:52AM 7  WITH RESPECT TO THOSE MATERIALS AND OTHERWISE.

10:52AM 8           THE COURT:  OKAY.  MS. TURNER, DO YOU WISH TO BE

10:52AM 9  HEARD ON THIS?

10:52AM 10          MS. TURNER:  YES, YOUR HONOR.

10:53AM 11      I DON'T SEE ANY PROBLEM WITH PROVIDING AN UPDATE ON THAT

10:53AM 12 ISSUE ONCE WE HAVE SOME ADDITIONAL INFORMATION.  I HAVE BEEN

10:53AM 13 LOOKING INTO IT, AND I JUST HAVEN'T HAD -- I DON'T HAVE ALL OF

10:53AM 14 THE INFORMATION NECESSARY TO REPORT BACK AT THIS MOMENT.

10:53AM 15          THE COURT:  OKAY.  MR. COPPERSMITH, ANYTHING YOU

10:53AM 16 WANT TO ADD?

10:53AM 17          MR. COOPERSMITH:  NOTHING ON THAT POINT.

10:53AM 18          THE COURT:  OKAY.  DOES THIS INCLUDE THE CMS

10:53AM 19 FOLLOWUP TO THE NON-MAIL HARD COPIES?  IS THIS THE SAME ISSUE

10:53AM 20 OR THIS A SEPARATE ISSUE?

10:53AM 21          MR. WADE:  I THINK IT'S A DIRECTLY RELATED ISSUE,

10:53AM 22 YOUR HONOR.

10:53AM 23          THE COURT:  RIGHT, RIGHT.

10:53AM 24          MR. WADE:  AT THE TIME WE MET AND CONFERRED, AGENCY

10:53AM 25 COUNSEL WAS NOT SURE WHETHER HARD DOCUMENTS HAD BEEN COLLECTED

10:53AM  1   AND PRODUCED.  THEY AGREED THAT THEY HAD BEEN FOCUSSING ON THE

10:53AM  2   E-MAIL.

10:53AM  3                THE COURT:  SURE.

10:53AM  4                MR. WADE:  SO THEY PLEDGED TO GO BACK AND MAKE

10:53AM  5   INQUIRIES ON THAT.

10:53AM  6                THE COURT:  GREAT.

10:53AM  7                MR. COOPERSMITH:  YOUR HONOR, I DO HAVE ONE FOLLOWUP

10:54AM  8   ON THAT.  IN ADDITION TO THE HARD COPY -- ONE QUESTION THAT I

10:54AM  9   HAVE NOT HEARD AN ANSWER TO IS THAT WE HAVE REASON TO BELIEVE

10:54AM  10  THAT THE AGENCY'S PERSONNEL, ESPECIALLY CMS BUT IT COULD BE

10:54AM  11  BOTH, WERE ALSO INVOLVED IN TEXT MESSAGING, A COMMON FORM OF

10:54AM  12  COMMUNICATION IN THIS DAY AND AGE, AND WE HAVE NOT SEEN ANY

10:54AM  13  TEXT MESSAGES FROM EITHER AGENCY.

10:54AM  14      WE WOULD HOPE THAT AS PART OF THEIR PROTOCOL THEY WOULD

10:54AM  15  ALSO BE SEARCHING FOR TEXT MESSAGE INFORMATION BECAUSE IN

10:54AM  16  PARTICULAR, YOUR HONOR, DURING THE INSPECTION OF THERANOS THAT

10:54AM  17  CMS CARRIED OUT, WE BELIEVE THAT THEY WERE USING TEXT MESSAGE

10:54AM  18  COMMUNICATIONS.

10:54AM  19                THE COURT:  OKAY.

10:54AM  20                MR. BOSTIC:  YOUR HONOR, APOLOGIES TO GO BACK ONE

10:54AM  21  STEP JUST TO MAKE SURE THE RECORD IS ACCURATE ON THE ISSUE OF

10:54AM  22  CMS HARD COPY DOCUMENTS.

10:54AM  23      MR. WADE JUST LEFT OUT ONE DETAIL, WHICH IS THAT ALTHOUGH

10:54AM  24  THE AGENCY COUNSEL DID NOT HAVE IMMEDIATE ANSWER AT THE TIME OF

10:54AM  25  OUR MEET AND CONFER CALL, THE AGENCY LATER FOLLOWED UP TO BOTH

10:55AM 1    PARTIES AND CONFIRMED THAT IT BELIEVES THAT THE MAJORITY OF

10:55AM 2    HARD COPY DOCUMENTS WOULD HAVE BEEN CAPTURED, COLLECTED, AND

10:55AM 3    PRODUCED TO THE PROSECUTION BACK IN 2017 SUCH THAT ALL OF THOSE

10:55AM 4    DOCUMENTS WOULD HAVE BEEN PRODUCED.

10:55AM 5            THE COURT:  I SAW THAT IN YOUR RESPONSE IN THAT AND

10:55AM 6    MY SENSE WAS -- I WAS GOING TO ASK ABOUT THAT -- MY SENSE IS

10:55AM 7    THAT THOSE DOCUMENTS THAT THE GOVERNMENT HAS RECEIVED,

10:55AM 8    MR. BOSTIC, YOU HAVE PROVIDED THOSE ALREADY?

10:55AM 9            MR. BOSTIC:  YES, YOUR HONOR.

10:55AM 10           MR. WADE:  THEY HAVE, YOUR HONOR.  THE ONLY POINT OF

10:55AM 11   DISAGREEMENT THERE IS MAJORITY IN OUR MINDS IS NOT SUFFICIENT

10:55AM 12   TO MEET THE REQUIREMENT.  SO WE WOULD RESPECT THE ENTIRETY OF

10:55AM 13   IT.

10:55AM 14           THE COURT:  AND WHEN YOU SAY, "TEXT MESSAGES," I'M

10:55AM 15   JUST TRYING TO GATHER YOU'RE TALKING ABOUT INDIVIDUALS -- ARE

10:55AM 16   YOU TALKING ABOUT WORK PHONES, THAT IS, BUSINESS RELATED

10:55AM 17   PHONES?  ARE YOU TALKING ABOUT PERSONAL PHONE TEXTS?

10:55AM 18           MR. COOPERSMITH:  YES, YOUR HONOR.  YES, WE'RE

10:55AM 19   TALKING ABOUT PERSONNEL WHO WORKED FOR THE AGENCIES WHO HAVE

10:55AM 20   EITHER PERSONAL OR BUSINESS PHONES, BUT THE TEXT MESSAGES WE'RE

10:55AM 21   LOOKING FOR OBVIOUSLY ARE TEXT MESSAGES ABOUT CMS OR FDA

10:56AM 22   BUSINESS THAT RELATE TO THERANOS.

10:56AM 23       SO WE'RE NOT LOOKING FOR THE PERSONAL TEXT MESSAGES OF

10:56AM 24   INDIVIDUAL EMPLOYEES.  WE'RE LOOKING FOR THEIR TEXT MESSAGES

10:56AM 25   ABOUT THE BUSINESS THAT THEY'RE IN, WHICH IS REGULATION.

10:56AM 1          THE COURT:  HOW DO YOU -- WHAT IS THE SCOPE OF THAT?

10:56AM 2   AND BY "THAT" I MEAN ARE YOU LOOKING AT PEOPLE WHO WOULD BE

10:56AM 3   PARTICULARLY INVOLVED WITH THERANOS AND WHATEVER THE AGENCY

10:56AM 4   REGULATION?  ARE YOU LOOKING FOR PEOPLE WHO ARE NOT INVOLVED

10:56AM 5   BUT, YES, ARE SOMEHOW COMMENTING ABOUT IT JUST AS A PERSONAL

10:56AM 6   OBSERVATION?  HOW DO YOU FILTER THAT?

10:56AM 7          MR. COOPERSMITH:  WELL, YOUR HONOR, I THINK THE

10:56AM 8   STARTING POINT FOR LOOKING AT THIS AND PROBABLY THE BULK OF THE

10:56AM 9   INFORMATION IS, FOR EXAMPLE, WHEN CMS PERSONNEL ARE ON THE

10:56AM 10  GROUND AT THERANOS CONDUCTING AN INSPECTION AND THEY'RE TEXT

10:56AM 11  MESSAGING ABOUT WHAT THEY'RE DOING OR ASKING FOR GUIDANCE, OR

10:56AM 12  EVEN COMMENTING ABOUT WHAT THEY'RE SEEING, THAT WOULD BE

10:56AM 13  DIRECTLY RESPONSIVE.

10:56AM 14      AND WE HOPE THAT THAT MATERIAL WOULD HAVE BEEN PRESERVED

10:57AM 15  IN ACCORDANCE WITH THE GOVERNMENT'S DIRECTION BACK IN 2017.

10:57AM 16      BUT WHATEVER EXISTS NOW WE WOULD EXPECT TO BE PRODUCED.

10:57AM 17      THE BROADER QUESTION THAT YOUR HONOR IS ASKING, I

10:57AM 18  UNDERSTAND, IS THAT IS IT POSSIBLE THAT SOME RANDOM EMPLOYEE OF

10:57AM 19  THESE AGENCIES, YOU KNOW, TEXTED AND JUST HAD AN OBSERVATION

10:57AM 20  ABOUT WHAT THEY SAW IN THE NEWS MEDIA, OR SOMETHING LIKE THAT?

10:57AM 21      THAT'S NOT REALLY WHAT WE'RE ASKING FOR.

10:57AM 22          THE COURT:  SURE.

10:57AM 23          MR. COOPERSMITH:  ALTHOUGH YOU CAN IMAGINE THAT THAT

10:57AM 24  COULD BE RELEVANT, BUT IT'S HARDER TO GET AT, RIGHT?

10:57AM 25      WHAT WE'RE REALLY LOOKING FOR, THE CORE OF IT IS TEXT

10:57AM  1      MESSAGING.  JUST LIKE PEOPLE SEND E-MAILS, PEOPLE SEND TEXTS.

10:57AM  2           THE COURT:  NO, I UNDERSTAND.  I CAPTURE THAT.  I

10:57AM  3      KNOW YOU'RE LOOKING AT ME LIKE AN OLD GUY LIKE YOU, JUDGE,

10:57AM  4      DOESN'T UNDERSTAND TEXTING.

10:57AM  5           MR. COOPERSMITH:  I'M NOT SO YOUNG MYSELF THESE

10:57AM  6      DAYS, YOUR HONOR.

10:57AM  7           THE COURT:  MS. DAW.

10:57AM  8           MS. DAW:  YOUR HONOR, A COUPLE OF POINTS.

10:57AM  9      FIRST IS ACCESS.  IF INDIVIDUALS USE THEIR PERSONAL

10:57AM 10      CELL PHONES AND THEY'RE NO LONGER AT THE AGENCY, EVEN IF THEY

10:57AM 11      ARE AT THE AGENCY, I QUESTION WHETHER THE AGENCY HAS ANY LEGAL

10:58AM 12      OBLIGATION OR ANY LEGAL RIGHT TO ACCESS THEIR CELL PHONES.

10:58AM 13      THE OTHER POINT THAT I WANTED TO MAKE HAS TO DO WITH THE

10:58AM 14      INSISTENCE THAT CMS IS PRESENT AT THERANOS.  THE INSPECTIONS

10:58AM 15      THAT ARE DONE IN THE FIELD ARE DONE BY THE STATE OF CALIFORNIA

10:58AM 16      AS A CONTRACTOR OF CMS, NOT BY CMS ITSELF.

10:58AM 17      MS. TURNER CAN CORRECT ME IF I'M WRONG, BUT THAT CAN

10:58AM 18      EXPLAIN ALSO WHY CMS DOESN'T HAVE AS MANY DOCUMENTS AS DEFENSE

10:58AM 19      COUNSEL SEEMS TO THINK THAT THEY SHOULD WITH RESPECT TO THOSE

10:58AM 20      INSPECTIONS BECAUSE THEY DIDN'T PERFORM THEM.

10:58AM 21      THEY'RE PERFORMED BY, AS I SAID, BY CONTRACTORS, AND THE

10:58AM 22      AGENCY MAY OR MAY NOT RECEIVE A REPORT, BUT THEY DON'T DO THE

10:58AM 23      INSPECTIONS THEMSELVES.

10:58AM 24           THE COURT:  OKAY.

10:58AM 25           MR. COOPERSMITH:  JUST TO CORRECT THE RECORD ON

10:58AM  1     THAT, YOUR HONOR, IN 2015, IN SEPTEMBER 2015 CMS SENT THEIR OWN

10:58AM  2     PERSONNEL, NOT THE STATE OF CALIFORNIA, THEY SENT THEIR OWN

10:59AM  3     PERSONNEL TO DO THE INSPECTION.

10:59AM  4          SO THERE ARE OTHER TIMES THAT STATE THEY HAVE DONE IT, BUT

10:59AM  5     BUT THERE ARE TIMES WHEN CMS DIRECTLY DID IT.

10:59AM  6               THE COURT:  OKAY.

10:59AM  7               MR. COOPERSMITH:  SO I'M SURE MS. DAW DIDN'T KNOW

10:59AM  8     THAT, BUT THAT'S ACTUALLY THE CASE.

10:59AM  9               THE COURT:  OKAY.  SO GETTING BACK TO THE BROADNESS

10:59AM 10     OF THE TEXTS, WHICH IS WHAT I WAS CONCERNED ABOUT, IT WOULD

10:59AM 11     PROBABLY BE RELATIVELY EASY TO IDENTIFY WHAT CMS PEOPLE WERE ON

10:59AM 12     THE GROUND DOING DIRECT WORK IN REGARDS TO THERANOS, ET CETERA,

10:59AM 13     AND YOU CAN CERTAINLY LOOK FOR TEXT MESSAGES FOR THAT

10:59AM 14     POPULATION.

10:59AM 15               MR. WADE:  YES, YOUR HONOR.  ORDINARILY WHEN YOU DO

10:59AM 16     A COLLECTION OF THIS KIND, YOU CONDUCT SORT OF A MINI INTERVIEW

10:59AM 17     OF EACH CUSTODIAN AND YOU SAY WHAT E-MAILS DO YOU HAVE?  WHAT

10:59AM 18     DOCUMENTS DO YOU HAVE?  DID YOU USE YOUR PHONE?  DID YOU SEND

10:59AM 19     TEXTS?  IT'S SOMETHING THAT WE DO ROUTINELY EVERY DAY.  IT'S

10:59AM 20     NOT A PARTICULARLY SIGNIFICANT TASK.

10:59AM 21               THE COURT:  RIGHT.  AND I'M HAVING THIS DRAWN-OUT

10:59AM 22     DISCUSSION NOT BECAUSE, AGAIN, MR. COPPERSMITH, I DON'T

11:00AM 23     UNDERSTAND THE TECHNOLOGY, BUT I WANT TO NARROW DOWN SO WE

11:00AM 24     DON'T HAVE TO DEAL WITH THIS AT SOME TIME IN THE FUTURE.

11:00AM 25               MR. COOPERSMITH:  YES, YOUR HONOR.  I THINK THAT'S

11:00AM 1    HOW YOU WOULD NARROW IT.

11:00AM 2        I SHOULD POINT OUT IT'S REALLY BOTH AGENCIES BECAUSE FDA

11:00AM 3    ALSO CONDUCTED AN INSPECTION OF THERANOS IN AUGUST OF 2015.  SO

11:00AM 4    IT'S BOTH AGENCIES, NOT JUST CMS.

11:00AM 5            THE COURT:  YES.  SHOULD WE MOVE ON FROM TEXTING TO

11:00AM 6    SOMETHING ELSE?

11:00AM 7            MR. WADE:  YES, YOUR HONOR.

11:00AM 8        I THINK IF WE WERE TO WORK PERHAPS OFF OF PAGE 9 OF THE

11:00AM 9    JOINT STATUS MEMORANDA WHERE WE IDENTIFY ISSUES, MAYBE THAT'S A

11:00AM 10   GOOD STARTING POINT TO TRY TO BRING SOME CLARITY.

11:00AM 11           THE COURT:  SURE.

11:00AM 12           MR. WADE:  AND I THINK WITH RESPECT TO CMS, I THINK

11:00AM 13   WE'VE MADE SOME PROGRESS ALREADY EVEN THOUGH WE HAVEN'T BEEN

11:00AM 14   WORKING DOWN THE LIST BECAUSE WE UNDERSTAND THAT THEY'RE GOING

11:00AM 15   TO MAKE INQUIRIES AND PROVIDE DISCLOSURES WITH RESPECT TO THEIR

11:00AM 16   EFFORTS TO COLLECT AND PRODUCE AND PRESERVE ALL RELEVANT

11:01AM 17   EVIDENCE.

11:01AM 18           THE COURT:  I THINK WE JUST TALKED ABOUT THAT

11:01AM 19   EARLIER.

11:01AM 20           MR. WADE:  YES.

11:01AM 21           THE COURT:  I THINK WHAT WE HAVEN'T TALKED ABOUT IS

11:01AM 22   THIS 2010-2013 TIME PERIOD.

11:01AM 23           MR. WADE:  YOUR HONOR, I THINK THAT ISSUE IS

11:01AM 24   RESOLVED TO THE EXTENT THAT THE DOCUMENTS HAVE BEEN PRESERVED,

11:01AM 25   AND WE'LL LEARN THAT.  AS A RESULT OF THEIR DISCLOSURES, I

11:01AM 1    THINK THAT ISSUE IS IN PROCESS.

11:01AM 2            THE COURT:  GREAT.

11:01AM 3            MR. WADE:  THEY'VE GATHERED THAT MATERIAL AND ARE IN

11:01AM 4    THE PROCESS OF REVIEWING THAT MATERIAL.  SO I THINK WE HAVE

11:01AM 5    MADE PROGRESS.

11:01AM 6        THE ISSUE THAT REMAINS AS OF THE DRAFTING OF THE STATUS

11:01AM 7    REPORT IS WHEN ARE WE GOING TO GET IT?  I UNDERSTAND THE COURT

11:01AM 8    HAS AN ANSWER TO THAT QUESTION.

11:01AM 9            THE COURT:  YES.  THAT WILL BE ANSWERED AT THE END

11:01AM 10   OF OUR CONVERSATION.  GREAT.

11:01AM 11       SHOULD WE MOVE TO FDA THEN?

11:01AM 12           MR. WADE:  YES, YOUR HONOR.  WORKING DOWN THOSE

11:02AM 13   LISTS.  SIMILARLY ITEM 1, (B)1 ON PAGE 9 OF DOCUMENT 170

11:02AM 14   IDENTIFIES PRESERVATION ISSUES.  I THINK WE'VE ADDRESSED THAT,

11:02AM 15   YOUR HONOR.

11:02AM 16       ITEM 2 RELATES TO THE MANNER OF COLLECTION AND ACQUISITION

11:02AM 17   OF RESPONSIVE DOCUMENTS, INCLUDING E-MAILS THAT -- THE ISSUE

11:02AM 18   HERE, YOUR HONOR, IS OUR UNDERSTANDING IS THAT THE AGENCY

11:02AM 19   COUNSEL JUST ASKED CUSTODIANS TO GATHER THE DOCUMENTS THAT THEY

11:02AM 20   THOUGHT WERE RESPONSIVE TO THE REQUESTS, AND THEY TOOK WHAT

11:02AM 21   THEY RECEIVED AND TURNED THEM OVER WHICH IS NOT IN KEEPING WITH

11:02AM 22   THE STANDARD OF CARE FOR A DOCUMENT COLLECTION EFFORT.

11:02AM 23       ORDINARILY, INQUIRIES NEED TO BE MADE AND YOU NEED TO MAKE

11:02AM 24   ASSURANCES THAT MATERIALS BEING PROVIDED, IN THE CASE OF AN

11:03AM 25   E-MAIL YOU DO A SEARCH LIKE THEY'RE DOING IN OTHER PORTIONS OF

11:03AM  1    THEIR COLLECTION.

11:03AM  2              THE COURT:  SO WHAT IS IT YOU WOULD LIKE IN REGARDS

11:03AM  3    TO UNION NUMBER 2 HERE?  YOU'VE IDENTIFIED AN ISSUE THAT YOU

11:03AM  4    HAVE CONCERNS ABOUT.

11:03AM  5              MR. WADE:  WE WOULD LIKE AGENCY COUNSEL TO FOLLOW UP

11:03AM  6    WITH THE RELEVANT CUSTODIANS AND MAKE INQUIRIES PERHAPS WITH

11:03AM  7    THE PROSECUTION TEAM TO MAKE SURE THAT THEY HAVE ACTUALLY

11:03AM  8    GATHERED ALL OF THE DOCUMENTS THAT ARE RESPONSIVE TO THE SIX

11:03AM  9    REQUESTS.

11:03AM  10             THE COURT:  OKAY.  MR. BOSTIC, DO YOU WANT TO BE

11:03AM  11   HEARD ON THIS?

11:03AM  12             MR. BOSTIC:  YES, YOUR HONOR.

11:03AM  13             THE COURT:  MR. BOSTIC, I APOLOGIZE IN ADVANCE.  I

11:03AM  14   HAVE A TENDENCY TO INTERRUPT PEOPLE.  I ASK A QUESTION, AND

11:03AM  15   THEN I GIVE AN ANSWER, AND THEN ASK YOU FOR YOUR ANSWER.

11:03AM  16      SO WHAT -- MY INTENT IN ENJOINING YOU WITH THE RULE 16

11:03AM  17   TYPE OF ISSUE IS THAT THIS IS EXACTLY THE TYPE OF ISSUE THAT I

11:03AM  18   THOUGHT YOUR OFFICE MIGHT BE OF ASSISTANCE TO GIVE SOME

11:04AM  19   GUIDANCE AS TO THAT TENSION THAT I TALKED ABOUT WITH CRIMINAL

11:04AM  20   DISCOVERY AND WHAT IS REALLY REQUIRED AND WHAT IS NOT.

11:04AM  21      YOUR EXPERTISE, I THINK, WOULD BE VALUABLE TO GIVE

11:04AM  22   GUIDANCE TO THE AGENCIES, NOT JUST FDA BUT CMS AND OTHERS, AS

11:04AM  23   TO WHAT REALLY NEEDS TO BE DONE, HOW TO DO IT, AND SUGGESTIONS

11:04AM  24   ON HOW TO ACCOMPLISH THAT.

11:04AM  25             MR. BOSTIC:  YES, YOUR HONOR.  THANK YOU.

11:04AM 1    THE AGENCIES, I THINK AS THEY CONFIRMED, HAVE HAD THE

11:04AM 2    BENEFIT OF THE PROSECUTION'S GUIDANCE ON THOSE ISSUES.  THEY

11:04AM 3    WILL CONTINUE TO HAVE IT REGARDLESS OF WHAT THE COURT ORDERS

11:04AM 4    TODAY.  I CAN ASSURE THE COURT THAT THE GOVERNMENT WILL STAY AS

11:04AM 5    INVOLVED AS IT CAN BE IN FACILITATING THE PRODUCTION OF THESE

11:04AM 6    DOCUMENTS BY THE AGENCIES TO THE DEFENSE.

11:04AM 7    THE COURT:  OKAY.

11:04AM 8    MR. BOSTIC:  ON SPECIFIC QUESTIONS, THOUGH, LIKE HOW

11:04AM 9    THE AGENCY GOES ABOUT COLLECTING DOCUMENTS, ONE POINT I'LL

11:04AM 10   RAISE IS THAT THE DEFENSE DOES CITE AN UNPUBLISHED CASE FROM

11:04AM 11   ANOTHER DISTRICT FOR THE PROPOSITION THAT THIS MAY NOT BE THE

11:04AM 12   BEST WAY FOR DOCUMENT CUSTODIANS TO RESPOND TO REQUESTS.

11:05AM 13   I DON'T THINK THAT IS BINDING ON THIS COURT, OF COURSE.

11:05AM 14   AND WHILE IT MAY BE TRUE THAT FOR SOME DOCUMENT CUSTODIANS MORE

11:05AM 15   INVOLVEMENT IS NECESSARY, WE ARE DEALING WITH HIGH-LEVEL

11:05AM 16   EMPLOYEES AT A GOVERNMENT AGENCY HERE, EMPLOYEES IN AN AGENCY

11:05AM 17   WHO ARE USED TO DEALING WITH DOCUMENT REQUESTS IN THE FOIA

11:05AM 18   CONTEXT.  AND IN THE LITIGATION CONTEXT, AND OCCASIONALLY IN

11:05AM 19   THE CRIMINAL PROSECUTION CONTEXT.

11:05AM 20   SO I DON'T THINK WE SHOULD ACCEPT THE DEFENSE'S ARGUMENT

11:05AM 21   THAT THIS IS PER SE UNACCEPTABLE, THAT YOU GO TO A SPECIFIC

11:05AM 22   CUSTODIAN WHO KNOWS HIS OR HER OWN DOCUMENTS BETTER THAN ANYONE

11:05AM 23   ELSE AND ASK THEM TO MAKE A GOOD FAITH EFFORT TO CAPTURE

11:05AM 24   EVERYTHING RESPONSIVE, AND TURN IT OVER, AND THEN TRUST IN

11:05AM 25   THEIR GOOD FAITH EFFORTS TO DO THAT.

11:05AM  1     THAT IS NOT UNUSUAL FOR HOW DISCOVERY WORKS.  EVEN WHEN

11:05AM  2     THE GOVERNMENT SERVES A SUBPOENA ON AN INDIVIDUAL OR A PARTY,

11:06AM  3     AT SOME POINT WE ARE TRUSTING IN THE GOOD FAITH OF THE

11:06AM  4     CUSTODIAN TO DO THEIR BEST, TO USE THEIR BEST EFFORTS TO

11:06AM  5     CAPTURE EVERYTHING AND TURN IT OVER.

11:06AM  6         SO I THINK THAT THERE IS NO SHOWING THAT THAT PROCESS HAS

11:06AM  7     FAILED IN THIS CASE, AND SO I THINK IT MIGHT BE PREMATURE TO

11:06AM  8     ORDER ADDITIONAL STEPS.

11:06AM  9         IF ADDITIONAL STEPS ARE NECESSARY, THE GOVERNMENT IS HAPPY

11:06AM  10    TO HELP HOWEVER IT CAN, BUT WHEN WE'RE TALKING ABOUT A RULE 16

11:06AM  11    OBLIGATION, THE COURT MENTIONED THE GOVERNMENT PROVIDING

11:06AM  12    GUIDANCE AND ASSISTANCE.  GUIDANCE AND ASSISTANCE ARE NOT THE

11:06AM  13    SAME THING AS ACCESS.  IF WE HAD ACCESS TO THESE DOCUMENTS, WE

11:06AM  14    CAN SIMPLY DECIDE HOW THEY'RE GOING TO BE COLLECTED, REVIEWED,

11:06AM  15    AND PRODUCED.  WE CAN'T MAKE THAT DECISION BECAUSE WE DON'T

11:06AM  16    HAVE THAT ACCESS.

11:06AM  17        ONE OF MY GOALS THIS MORNING IS TO AVOID A SITUATION WHERE

11:06AM  18    THE GOVERNMENT IS -- THE PHRASE "ON THE HOOK" HAS BEEN USED A

11:06AM  19    COUPLE OF TIMES -- WHERE THE GOVERNMENT IS ON THE HOOK FOR THE

11:06AM  20    SPECIFICS, THE REALLY KIND OF IN-THE-WEEDS SPECIFICS OF A

11:06AM  21    PROCESS THAT IT DOESN'T CONTROL.

11:06AM  22        THE COURT:  SURE.  WHAT ARE YOU -- WHAT ARE YOUR

11:07AM  23    THOUGHTS AS TO WHETHER OR NOT THIS COURT CAN ORDER ACCESS?

11:07AM  24        MR. BOSTIC:  SO MY INITIAL THOUGHT ON THAT, YOUR

11:07AM  25    HONOR, IS THAT WHEN WE'RE TALKING ABOUT THE SCOPE OF RULE 16,

11:07AM 1    THE QUESTION OF ACCESS DOESN'T TURN ON WHAT THE COURT ORDERS.

11:07AM 2         AS I READ THE CASE LAW, IT TURNS ON THE AUTHORITY THAT

11:07AM 3    THE PROSECUTION HAS, OR LACKS, TO KNOW OF, ACCESS, AND CONTROL

11:07AM 4    DOCUMENTS BASED ON ITS POSITION AS THE PROSECUTION.

11:07AM 5         I DON'T KNOW WHETHER THE COURT CAN EXPAND THAT ACCESS ON

11:07AM 6    THE PROSECUTION'S BEHALF, BUT I'LL POINT OUT THAT THAT TAKES US

11:07AM 7    IN A DIFFERENT DIRECTION FROM WHAT IS CONTEMPLATED IN THE

11:07AM 8    CASES.

11:07AM 9         THE COURT:  NO.  RIGHT.  I JUST ASK THAT QUESTION TO

11:07AM 10   PERHAPS ENGAGE A GENERAL CONVERSATION ABOUT IT.

11:07AM 11        I KNOW YOUR HOOK, IF YOU WILL, MR. WADE, IS SANTIAGO AND

11:07AM 12   WHAT THE COURT DID IN SANTIAGO, BUT OF COURSE THAT'S A LITTLE

11:08AM 13   DIFFERENT BECAUSE IT WAS BUREAU OF PRISONS AND THERE WAS A

11:08AM 14   LITTLE MORE PRIVITY BETWEEN THE PROSECUTION AND BUREAU OF

11:08AM 15   PRISONS, AND ET CETERA.  BUT I'M NOT GOING TO OPEN UP THAT

11:08AM 16   DISCUSSION NOW.

11:08AM 17        MR. WADE:  IF I MIGHT MAKE ONE SMALL POINT RELATED

11:08AM 18   TO THAT, YOUR HONOR, BECAUSE IT IS DIFFERENT FROM JUST THE LAW.

11:08AM 19   IT'S SPECIFIC TO THE FACTS OF THIS CASE.

11:08AM 20        THE GOVERNMENT DOES HAVE AN AGENT, AN FDA AGENT ON ITS

11:08AM 21   PROSECUTION TEAM, AND HE'S A MEMBER OF THE PROSECUTION TEAM.

11:08AM 22   THE DOCUMENTS THAT HAVE BEEN PRODUCED IN THIS CASE MAKE CLEAR

11:08AM 23   THAT WHEN THAT AGENT WANTED TO, FOR EXAMPLE, INTERVIEW SOMEONE

11:08AM 24   WITHIN THE FDA, THAT AGENT JUST DIRECTLY COMMUNICATED WITH THAT

11:08AM 25   PERSON AND SAID I NEED THESE DOCUMENTS, CAN YOU SEND ME THESE

11:08AM 1    DOCUMENTS IN ADVANCE, AND THE AGENT GOT WHATEVER THEY ASKED

11:08AM 2    FOR.

11:08AM 3        AND PART OF THE REASON THAT'S TRUE IS BECAUSE THERE'S

11:08AM 4    STATUTORY AUTHORITY THAT GIVES THAT AGENT THE ABILITY TO GET

11:08AM 5    THOSE DOCUMENTS WITHIN THE AGENCY.  SO THEY ACTUALLY HAVE TO

11:08AM 6    PROVIDE THE DOCUMENTS WITHIN THE AGENCY.

11:08AM 7        THE COURT:  I UNDERSTAND.  FOR THE RULE 16 ANALYSIS,

11:09AM 8    I APPRECIATE THAT ASSISTANCE.

11:09AM 9        BUT WHAT I SEE PARAGRAPH 2, LET ME JUST SAY, WHAT I SEE

11:09AM 10   PARAGRAPH 2 IS A VERY STRONG SUGGESTION TO THE AGENCIES FROM

11:09AM 11   THE DEFENSE AS TO HOW THEY MIGHT CONDUCT SOME ADDITIONAL WORK

11:09AM 12   TO ACCOMPLISH THE GOALS HERE.

11:09AM 13       I THINK THAT'S WHAT IT IS.  MY SENSE IS THAT THE AGENCY

11:09AM 14   LAWYERS LOOK AT THAT, READ IT AS SUCH, APPRECIATE YOUR

11:09AM 15   SUGGESTIONS, AND WILL CONTINUE TO PROSECUTE THEIR DISCOVERY

11:09AM 16   DILIGENTLY PURSUANT TO THE COURT'S ORDER THAT'S GOING TO BE

11:09AM 17   FORTHCOMING.

11:09AM 18       MR. WADE:  UNDERSTOOD, YOUR HONOR.

11:09AM 19       MS. DAW:  YOUR HONOR, ON BEHALF OF THE FDA, IF THE

11:09AM 20   COURT IS CONSIDERING AN ORDER PROVIDING ACCESS TO THEIR

11:09AM 21   DOCUMENTS, I WOULD ASK THAT THE FDA BE GIVEN AN OPPORTUNITY TO

11:09AM 22   BRIEF THAT ISSUE BECAUSE OF THE STATUTORY AND REGULATORY

11:09AM 23   OBLIGATIONS THAT THEY HAVE TO PROTECT INFORMATION.

11:09AM 24       THE COURT:  RIGHT.

11:09AM 25       MS. DAW:  I DON'T WANT THEM TO BE IN THE POSITION OF

11:10AM 1      DUELING LEGAL OBLIGATIONS.

11:10AM 2           THE COURT:  WELL, WHEN I SAY ACCESS, I REALIZE WITH

11:10AM 3      ALL OF THE AUTHORITY THAT MY COLLEAGUES AND I HAVE AND ENJOY,

11:10AM 4      I'M NOT SURE THAT WE CAN CREATE ACCESS JUST ON A SIGNATURE.

11:10AM 5      MAYBE WE CAN CREATE IT.  IT WON'T BE LONG LIVED, I WOULDN'T

11:10AM 6      THINK, AND THAT'S NOT WHAT I WAS SUGGESTING TO DO.

11:10AM 7           BUT I DO THINK THAT IN CASES OF UNIQUE CIRCUMSTANCES LIKE

11:10AM 8      THIS ONE, AND PARTICULARLY WHERE THE ACTIVITY OF THE PARTIES,

11:10AM 9      AS MR. WADE POINTS OUT, MIGHT SUGGEST SOMETHING A LITTLE

11:10AM 10     BROADER THAN PERHAPS -- CERTAINLY KNOWLEDGE IS ACCOMPLISHED AND

11:10AM 11     MAYBE ACCESS IS REALLY THE ISSUE WE'RE TALKING ABOUT.

11:10AM 12          BUT I DO THINK GIVEN THE ROAD, THE PATH THAT I'VE LAID

11:10AM 13     HERE TO ALLOW THE AGENCIES TO SELF-REGULATE, IF YOU WILL, TO

11:10AM 14     DEVELOP THE INFORMATION AND PROVIDE IT KNOWING THAT WE WANT IT,

11:10AM 15     THE COURT WANTS IT WITH THE ASSISTANCE, CONTINUED ASSISTANCE OF

11:10AM 16     THE GOVERNMENT, IS PROVIDED A CONTINUING AVENUE TO INCREASE THE

11:10AM 17     GOVERNMENT'S PARTICIPATION IN THAT ENDEAVOR.

11:11AM 18          MR. COOPERSMITH:  YOUR HONOR, THANK YOU FOR THAT.

11:11AM 19     JUST ONE WORD ABOUT ACCESS SINCE I HAVEN'T ADDRESSED THAT YET.

11:11AM 20          THE CONCEPT OF ACCESS, NOTWITHSTANDING WHAT THE GOVERNMENT

11:11AM 21     HAS SAID IN COURT TODAY AND IN PREVIOUS HEARINGS, THE FACT IS

11:11AM 22     THAT THEY, THE GOVERNMENT, ENJOYED ALL OF THE ACCESS THAT THEY

11:11AM 23     WANTED, AND THE RECORD IS THAT THEY EVEN ENJOYED THAT ACCESS

11:11AM 24     AFTER THE INDICTMENT IN JUNE 2018.  WHEN THE ACCESS SUPPOSEDLY

11:11AM 25     DRIED UP IS WHEN THE DEFENSE STARTED ASKING FOR DOCUMENTS.

11:11AM 1      SO ONCE THERE'S A FACTUAL -- AND IT IS A FACTUAL QUESTION

11:11AM 2    IN THIS CASE, WAS THERE ACCESS?  AND OUR ANSWER, OF COURSE, IS

11:11AM 3    YES.  THEN THE COURT CAN SIMPLY ORDER THE GOVERNMENT, AS IT

11:11AM 4    SAID IT WAS INCLINED TO DO, TO PRODUCE, TO MAKE SURE THESE

11:11AM 5    DOCUMENTS WERE PRODUCED UNDER RULE 16.  THAT'S GOING TO BE

11:11AM 6    IMMENSELY HELPFUL FOR ADDITIONAL REASONS THAT WE'LL DISCUSS

11:11AM 7    WHEN WE GET TO THESE OTHER TOPICS, BUT THAT'S IT.

11:11AM 8      IN TERMS OF ADDITIONAL BRIEFING, I WOULD SUGGEST TO THE

11:11AM 9    COURT THAT THESE AGENCIES AND THE GOVERNMENT HAVE HAD MANY,

11:12AM 10   MANY OPPORTUNITIES TO BRIEF THIS.  THIS ISSUE HAS BEEN ON THE

11:12AM 11   TABLE.  AND AT THIS POINT IF WE'RE GOING TO HOLD TO THE

11:12AM 12   SCHEDULE, THESE DOCUMENTS HAVE TO BE PRODUCED, AND THE COURT

11:12AM 13   HAS SUGGESTED THAT AT THE END OF THE YEAR WOULD BE A GOOD

11:12AM 14   DEADLINE.

11:12AM 15      SO I THINK THE ACCESS IS CLEAR, AND I THINK THE GOVERNMENT

11:12AM 16   SHOULD HAVE THE OBLIGATION.  AT THAT POINT, YOU KNOW, THE

11:12AM 17   GOVERNMENT IS GOING TO BE IMMENSELY HELPFUL.

11:12AM 18      FOR EXAMPLE, ON PARAGRAPH 2 THEY WERE JUST TALKING ABOUT

11:12AM 19   MANUAL REVIEW BY CUSTODIANS OR MANUAL COLLECTION.  ULTIMATELY

11:12AM 20   THE GOVERNMENT CAN SIMPLY OVERSEE THIS.  IT DOESN'T MEAN THEY

11:12AM 21   HAVE TO GET INTO THE TRENCHES AND START LOOKING IN THE FILE

11:12AM 22   ROOM, BUT THEY CAN OVERSEE THIS AND ASK THE RIGHT QUESTIONS TO

11:12AM 23   MAKE SURE THAT IF THERE WAS A COLLECTION FROM CUSTODIANS, HOW

11:12AM 24   THAT OCCURRED, MAKE SURE IT WAS ADEQUATE.

11:12AM 25      IT IS REALLY THE SAME THING I WOULD DO WHEN I GET A

| | | |
|---|---|---|
| 11:12AM | 1 | SUBPOENA FROM THE GOVERNMENT.  I DON'T TELL THE CLIENT, WELL, |
| 11:12AM | 2 | HERE'S A SUBPOENA, LET ME KNOW WHEN YOU'RE DONE COLLECTING.  I |
| 11:12AM | 3 | HAVE TO GET IN THERE AND ASK THE RIGHT QUESTIONS, MAKE SURE |
| 11:13AM | 4 | THAT THEY HAVE THOUGHT OF EVERYTHING, MAKE SURE THAT THEY HAVE |
| 11:13AM | 5 | THOUGHT OF HARD COPY, MAKE SURE THEY HAVE THOUGHT OF TEXTS, |
| 11:13AM | 6 | MAKE SURE THEY THOUGHT ALL OF THE RANGE OF THINGS THAT YOU HAVE |
| 11:13AM | 7 | TO DO.  THAT'S WHAT THE GOVERNMENT EXPECTS OF ME WHEN I GET A |
| 11:13AM | 8 | SUBPOENA, AND WE'RE EXPECTING NO LESS FROM THE GOVERNMENT. |
| 11:13AM | 9 | MR. BOSTIC:  YOUR HONOR, THAT'S A KEY POINT THAT |
| 11:13AM | 10 | MR. COPPERSMITH JUST MADE.  WHEN HIS CLIENT GETS A SUBPOENA HE, |
| 11:13AM | 11 | AS HIS CLIENT'S LAWYER, IS RESPONSIBLE FOR ENSURING THEIR |
| 11:13AM | 12 | COMPLIANCE WITH THAT SUBPOENA.  THAT'S WHAT THEY PAY HIM TO DO. |
| 11:13AM | 13 | THEY GIVE HIM THAT AUTHORITY TO COME IN AND GUIDE THEIR |
| 11:13AM | 14 | COLLECTION EFFORTS.  THAT'S THE SOURCE OF HIS OBLIGATION AND |
| 11:13AM | 15 | THAT IS THE SOURCE OF HIS AUTHORITY. |
| 11:13AM | 16 | NONE OF THAT APPLIES WITH RESPECT TO THE PROSECUTION AND |
| 11:13AM | 17 | THESE AGENCIES.  WE DO NOT HAVE THE AUTHORITY OR THE ABILITY TO |
| 11:13AM | 18 | DICTATE THE TERMS OF HOW THEY COLLECT AND PRODUCE THESE |
| 11:13AM | 19 | DOCUMENTS, AND THAT'S THE CORE REASON WHY WE'RE RESISTANT TO |
| 11:13AM | 20 | THE IDEA OF A RULE 16 ORDER. |
| 11:13AM | 21 | THE COURT:  I UNDERSTAND.  IT WAS REALLY PROVIDENT |
| 11:13AM | 22 | OF ME TO RAISE THAT ISSUE, WASN'T IT? |
| 11:14AM | 23 | ALL RIGHT.  LET'S MOVE TO NUMBER 3, SHALL WE? |
| 11:14AM | 24 | MR. WADE:  YES, YOUR HONOR, BACK TO DOCUMENT 170, |
| 11:14AM | 25 | PAGE 10, ITEM 3.  I BELIEVE THAT'S A TIMING ISSUE WHICH I |

11:14AM 1    BELIEVE THE COURT IS PREPARED TO ADDRESS.  I WON'T BELABOR

11:14AM 2    THAT.

11:14AM 3         STARTING ON ITEM 4 ARE A HOST OF TECHNICAL ISSUES.  THERE

11:14AM 4    ARE SOME SUBPARAGRAPHS HERE.  THIS IS SORT OF THE NITTY GRITTY

11:14AM 5    OF IT, YOUR HONOR.

11:14AM 6         AND AS INFORMED BY EXHIBIT A, WHICH IS THE LETTER WHICH

11:14AM 7    DISCUSSES THESE TECHNICAL DEFICIENCIES WHICH IS SLIGHTLY

11:14AM 8    IMPENETRABLE TO THE DEFENSE AT TIMES SPECIFICALLY AS IT RELATES

11:14AM 9    TO SOME OF THE REDACTIONS AND DOCUMENTS THAT ARE WITHHELD.

11:14AM 10        BUT IF WE CAN START WITH THE SEARCH TERMS, WHICH IS WHAT

11:14AM 11   IS IN PARAGRAPH 4, THERE ARE A COUPLE OF SPECIFIC DEFICIENCIES

11:15AM 12   THAT ARE IDENTIFIED THERE, THE FIRST OF WHICH IS THAT THERE WAS

11:15AM 13   NOT A STAND-ALONE SEARCH TERM FOR THE ROLLING CUSTODIANS FOR

11:15AM 14   THE TERM THERANOS WHICH WAS SOMEWHAT -- MAYBE IT'S OVERLY

11:15AM 15   SIMPLISTIC, BUT IT'S SOMEWHAT MYSTIFYING TO THE DEFENSE THAT

11:15AM 16   THAT SIMPLE TERM WASN'T INCLUDED TO IDENTIFY THE POOL OF

11:15AM 17   DOCUMENTS THAT SHOULD BE REVIEWED TO MAKE SURE THAT MATERIAL IS

11:15AM 18   GATHERED.

11:15AM 19        THE SECOND ISSUE RELATES TO LABORATORY DEVELOPED TESTS, OR

11:15AM 20   LDT, AND USING THAT AS SEARCH TERMS WHICH GIVEN SOME OF THE

11:15AM 21   BACK AND FORTH WITH THE AGENCIES AND THE QUESTION AS TO WHETHER

11:15AM 22   THE FDA EVEN HAD THE AUTHORITY TO REGULATE THERANOS, IT ALL

11:15AM 23   CENTERS ON THAT TERM.  THAT IS CLEARLY WHAT PART OF THE REQUEST

11:15AM 24   THAT IS SET FORTH IN CATEGORY 4 OF THE DEFENSE REQUEST AND HOW

11:15AM 25   THAT, HOW THAT REQUEST THAT A SEARCH FOR DOCUMENTS RESPONSIVE

11:16AM 1     TO THAT REQUEST COULD BE DONE WITHOUT AT LEAST LOOKING AT

11:16AM 2     DOCUMENTS THAT HAVE LAB DEVELOPED TESTS, OR LDT'S, WE FAIL TO

11:16AM 3     UNDERSTAND.

11:16AM 4          MR. COOPERSMITH:  YOUR HONOR, IF I COULD ADD

11:16AM 5     SOMETHING TO THIS ISSUE OF THE SEARCH TERMS.  LDT, LABORATORY

11:16AM 6     DEVELOPED TESTS, IS ONE EXAMPLE, BUT THERE ARE OTHERS.  JUST TO

11:16AM 7     PUT A FINE POINT ON THIS AND TO START FROM THE CONCEPT.  SO A

11:16AM 8     LABORATORY DEVELOPED TEST IS BASICALLY A TEST THAT A LABORATORY

11:16AM 9     COMES UP WITH ON ITS OWN AND RUNS IN ITS OWN LAB.

11:16AM 10    TRADITIONALLY, THE FDA HAS BACKED OFF ON ENFORCING THEIR

11:16AM 11    MEDICAL DEVICE REGULATIONS ON THAT SORT OF THING.  INSTEAD,

11:16AM 12    THEY HAVE LEFT THAT REGULATION TO CMS AS THE REGULATOR OF

11:16AM 13    LABORATORIES IN THE UNITED STATES.

11:16AM 14    SO IF YOU DEVELOP YOUR OWN TEST, AND YOU DON'T TRY TO SELL

11:16AM 15    IT TO SOMEONE ELSE COMMERCIALLY BUT YOU'RE RUNNING IT IN YOUR

11:17AM 16    OWN LAB, THAT CONCEPT OF AN LDT IS WHAT THE FDA HAS

11:17AM 17    TRADITIONALLY DECIDED THAT WE'LL LEAVE THAT TO CMS TO MAKE SURE

11:17AM 18    THE TESTS ARE BEING RUN CORRECTLY, BUT WE'RE NOT GOING TO

11:17AM 19    REGULATE IT AS A MEDICAL DEVICE.  THAT'S THE ISSUE.

11:17AM 20    THAT'S AN IMPORTANT REALLY CENTRAL ISSUE IN THIS CASE

11:17AM 21    BECAUSE, AS MR. WADE SAID, IT GOES TO THE HEART OF WHETHER THE

11:17AM 22    FDA REALLY HAD ANY AUTHORITY TO REGULATE THE THERANOS DEVICES

11:17AM 23    AND TESTS THAT ARE MENTIONED IN THE INDICTMENT AND ARE STRONGLY

11:17AM 24    AT ISSUE IN THIS CASE.

11:17AM 25    SO WHEN YOU LOOK AT THAT SEARCH TERM -- NOW, THE

11:17AM 1    GOVERNMENT'S ARGUMENT ON THIS SEARCH TERM, AND MS. DAW MAKES

11:17AM 2    IT, AND THE AGENCY COUNSEL MAKE IT, AND MR. BOSTIC MADE IT IN

11:17AM 3    THE STATUS REPORT, IS THAT THEY SAY, OH, IF YOU LOOK AT

11:17AM 4    CATEGORY 4 OF THE COURT'S JULY 19TH ORDER, IT DOESN'T MENTION

11:17AM 5    THE TERM LDT.  THAT'S THE CATEGORY THAT YOU MAY HAVE IT IN

11:17AM 6    FRONT OF YOUR HONOR THAT ASKS FOR ALL DOCUMENTS REGARDING THE

11:17AM 7    FDA'S TERMINATION OF THE TYPE OF FDA APPROVAL REQUIRED FOR

11:17AM 8    THERANOS'S PROPRIETARY TECHNOLOGY.

11:18AM 9        SO WE'RE TALKING ABOUT DOES THE FDA HAVE TO APPROVE THE

11:18AM 10   THERANOS DEVICES AS A MEDICAL DEVICE OR IS IT GOING TO BE UNDER

11:18AM 11   THIS LDT CATEGORY?

11:18AM 12       SO WHEN YOU LOOK AT THE ACTUAL SEARCH TERMS THE FDA USED

11:18AM 13   TO DO THE SEARCHES, THEY RAN THERANOS, THE TERM THERANOS, AND

11:18AM 14   VARIOUS THINGS, INCLUDING THE TERM HUMANITARIAN DEVICE

11:18AM 15   EXEMPTION.

11:18AM 16       WELL, THE TERM HUMANITARIAN DEVICE EXEMPTION DOESN'T

11:18AM 17   APPEAR IN THE COURT'S ORDER CATEGORY 4, EITHER.

11:18AM 18       BUT TO EXCLUDE LDT'S -- TO RUN THE SEARCH FOR HUMANITARIAN

11:18AM 19   DEVICE EXEMPTION, WHICH DOESN'T APPEAR IN THE COURT'S ORDER,

11:18AM 20   THEN TO ARGUE WE DON'T HAVE TO SEARCH FOR THERANOS AND LDT'S

11:18AM 21   BECAUSE THAT'S NOT IN THE COURT ORDER, THAT MAKES NO SENSE.

11:18AM 22       AND WHAT WE THINK HAS GONE ON HERE, YOUR HONOR, IS BY

11:18AM 23   EXCLUDING THE TERM LDT THE AGENCIES HAVE EXCLUDED A LARGE

11:18AM 24   UNIVERSE OF DOCUMENTS THAT RESPOND TO THE COURT ORDER AND ARE

11:18AM 25   AT THE CORE OF THIS CASE.

11:18AM 1        YOUR HONOR, THAT'S PROBABLY THE REASON WHY WHEN WE LOOK AT

11:19AM 2    THE HISTOGRAM WE'VE ATTACHED TO THE STATUS REPORT, AND YOU'VE

11:19AM 3    SEEN IT BEFORE, YOUR HONOR, IT JUST MAPS OUT WHAT TIME PERIODS

11:19AM 4    THESE DOCUMENTS CORRESPOND TO, THERE'S A VERY LOW INCIDENCE OF

11:19AM 5    DOCUMENTS IN 2014.  WE KNOW THAT 2014 WAS A HEAVY YEAR WHERE

11:19AM 6    THE DISCUSSION, THE DIALOGUE BETWEEN THERANOS AND FDA ABOUT

11:19AM 7    LDT'S WAS ONGOING.

11:19AM 8        SO TO EXCLUDE THAT SEARCH TERM MAKES NO SENSE.

11:19AM 9            THE COURT:  SO, LET ME JUST --

11:19AM 10            MR. COOPERSMITH:  PLEASE, YOUR HONOR.

11:19AM 11            THE COURT:  IT'S THREE AND TWO NOW.  LET'S GET TO

11:19AM 12   THE PITCH.

11:19AM 13            MR. COOPERSMITH:  YES, YOUR HONOR.

11:19AM 14            THE COURT:  WHAT IS IT YOU WANT?

11:19AM 15            MR. COOPERSMITH:  WELL, THE PITCH IS THAT I THINK

11:19AM 16   THEY NEED TO GO BACK.  REMEMBER, THEY NEVER ASKED US WHAT

11:19AM 17   SEARCH TERMS THEY WERE RUNNING, BUT THERE WERE A NUMBER OF

11:19AM 18   SEARCH TERMS, LDT BEING ONE EXAMPLE, AND WE NEED TO GO BACK AND

11:19AM 19   TELL THEM WHAT SEARCH TERMS NEED TO BE ADDED HERE, AND THEY

11:19AM 20   NEED TO RUN THOSE SEARCH TERMS.

11:19AM 21            THE COURT:  AND THAT'S -- YOU WANT A FASTBALL RIGHT

11:20AM 22   DOWN THE MIDDLE?

11:20AM 23            MR. COOPERSMITH:  RIGHT DOWN THE MIDDLE.

11:20AM 24            THE COURT:  AND SO IT'S LDT TERMS YOU WANT THEM TO

11:20AM 25   RUN?

11:20AM 1        MR. COOPERSMITH:  WELL, WE CAN GIVE A WHOLE LIST OF

11:20AM 2   SEARCH TERMS, YOUR HONOR.  THAT'S ONE.  WE CAN DO IT NOW OR WE

11:20AM 3   CAN DO IT --

11:20AM 4        THE COURT:  SO TELL ME ABOUT THAT.  WHEN YOU SAY "I

11:20AM 5   HAVE GIVE A WHOLE LIST," YOU CAN IMAGINE THE EXCITEMENT THAT

11:20AM 6   THE PROSECUTION AND THE AGENCY HAS WITH THAT.  IS THAT A LIST

11:20AM 7   OF 50 NAMES NOW?  IS THAT A LIST OF THREE THINGS?

11:20AM 8        IT SEEMS LIKE -- I THINK I TAKE YOUR POINT, AND IT SEEMS

11:20AM 9   LIKE THERANOS AND LDT, THAT'S SOMETHING THAT PROBABLY HAS SOME

11:20AM 10  RELEVANCE AND WOULD PRODUCE SOME DOCUMENTS THAT MIGHT BE

11:20AM 11  RELEVANT TO CATEGORY 2 EVEN, CATEGORY 4 PERHAPS.

11:20AM 12       BUT I'M JUST CURIOUS, IF WE WANT TO PROCEED HERE, WHAT IS

11:20AM 13  IT THAT YOU SUGGEST BE ALTERED, CHANGED OR USED AS ALTERNATIVE

11:20AM 14  TERMS TO ACCOMPLISH THIS?

11:20AM 15       I'M CURIOUS THEN WHAT THE PRODUCTION WOULD LOOK LIKE?

11:20AM 16  WHAT IS THE SIZE OF THAT ALWAYS BEING MINDFUL OF HOW MUCH TIME

11:21AM 17  THIS IS GOING TO TAKE?

11:21AM 18       MR. COOPERSMITH:  WELL, YOUR HONOR, SO FIRST OF ALL,

11:21AM 19  WE'RE NOT ASKING THEM TO REDO.  I MEAN, THEY'VE PRODUCED THE

11:21AM 20  DOCUMENTS THAT THEY HAVE ALREADY PRODUCED.

11:21AM 21       BUT I JUST WANT TO POINT OUT THAT IF THE AGENCIES HAD NOT

11:21AM 22  KEPT US IN THE DARK AND HAD TOLD US WHAT THEY WERE DOING, WE

11:21AM 23  WOULD HAVE BEEN ABLE TO TELL THEM.

11:21AM 24       SO, YOU KNOW, I DON'T WANT TO BELABOR THAT POINT, BUT I

11:21AM 25  THINK THAT'S THE CASE.

11:21AM  1          THE COURT:  THAT'S A GOOD CHOICE.

11:21AM  2          MR. COOPERSMITH:  YES, YOUR HONOR.  BUT GOING

11:21AM  3  FORWARD, MOVING FORWARD WE HAVE LDT, AS I'VE JUST EXPLAINED.

11:21AM  4          THE COURT:  RIGHT.

11:21AM  5          MR. COOPERSMITH:  THERE'S ANOTHER TERM THAT IS

11:21AM  6  UNIQUE TO THERANOS'S BUSINESS, AND IT'S THE TERM NANOTAINER.

11:21AM  7          THE COURT:  SPELL THAT.

11:21AM  8          MR. COOPERSMITH:  N-A-N-O-T-A-I-N-E-R, NANOTAINER.

11:21AM  9  THAT'S A TERM THAT IS UNIQUE TO THERANOS.  SO I'M NOT AWARE OF

11:21AM  10  OTHER COMPANIES WHO USE THAT TERM.  THAT'S WHAT THERANOS CALLED

11:21AM  11  ITS BLOOD COLLECTION DEVICE THAT COLLECTED SMALL BLOOD SAMPLES.

11:22AM  12     WHEN YOU LOOK AT THE SEARCH TERMS THAT THE FDA HAS RUN,

11:22AM  13  THEY HAVE NOT RUN THAT TERM EITHER, AND THAT'S LIKELY TO

11:22AM  14  PRODUCE ADDITIONAL DOCUMENTS.

11:22AM  15     SO WE DON'T WANT TO REDO ANYTHING, YOUR HONOR, BUT MOVING

11:22AM  16  FORWARD WE WOULD LIKE THESE ADDITIONAL SEARCH TERMS RUN.  AND

11:22AM  17  WE CAN TRY TO BE AS LIMITED, YOU KNOW, SO THEY'RE THE ONES THAT

11:22AM  18  ARE REALLY IMPORTANT, AND THEN TO HAVE THEM RUN IT, AND MAKE

11:22AM  19  SURE THOSE DOCUMENTS ARE PROPERLY REVIEWED, AND PRODUCED IF

11:22AM  20  THEY RESPOND TO THE COURT'S ORDER.

11:22AM  21          THE COURT:  THANK YOU.  SO, MR. COPPERSMITH, IS THIS

11:22AM  22  SOMETHING THAT YOU WOULD LIKE THE COURT TO ORDER -- I KNOW YOU

11:22AM  23  WANT THE COURT TO ORDER IT, BUT THE TIMING OF THAT?  IS THAT

11:22AM  24  SOMETHING THAT WE SHOULD DISCUSS NOW?  IS THIS SOMETHING THAT I

11:22AM  25  SHOULD GIVE YOU THE PRIVILEGE OF MEETING AND CONFERRING WITH

11:22AM 1    AGENCY COUNSEL AND THE GOVERNMENT TO DEVELOP A STRATEGY TO

11:22AM 2    ACCOMPLISH THAT WITHIN THE TIMELINE THAT THE COURT IS GOING TO

11:22AM 3    GIVE?

11:22AM 4         MR. COOPERSMITH:  YES, YOUR HONOR.  SO THE ISSUE IS

11:22AM 5    REALLY ONE OF TIMING, RIGHT?  THE LONGER THAT WE GO WITH MEET

11:22AM 6    AND CONFER AS OPPOSED TO A COURT ORDER DIRECTING THESE

11:23AM 7    ADDITIONAL SEARCH TERMS, THE MORE IT'S GOING TO BE PROBLEMATIC,

11:23AM 8    RIGHT?  BECAUSE IN THE MEET AND CONFER WE MAY GET, YOU KNOW,

11:23AM 9    DISAGREEMENTS ON THESE THINGS.

11:23AM 10   WHAT I THINK MAKES MORE SENSE TO ME IS THAT THE COURT

11:23AM 11   ORDER THE LDT, AND LABORATORY DEVELOPED TEST TERMS, THE

11:23AM 12   NANOTAINER TERMS, FINGERSTICK IS ANOTHER ONE.  THAT WAS A

11:23AM 13   COMMON TERM USED IN THE CASE OF THERANOS FOR THE WAY THAT THEY

11:23AM 14   COLLECTED BLOOD.

11:23AM 15   AT LEAST IF THOSE WERE RUN, AND I HAVE A LIST OF, YOU

11:23AM 16   KNOW, 23 THINGS, BUT WITHOUT READING THAT, YOU KNOW, THOSE 3

11:23AM 17   STAND OUT TO ME AS THE MOST IMPORTANT.

11:23AM 18   YOU KNOW, A COURT ORDER -- THAT WOULD SAVE TIME, YOUR

11:23AM 19   HONOR.  BASICALLY THEY WOULD HAVE TO RUN THOSE.  WHATEVER

11:23AM 20   DOCUMENTS COME UP IN THOSE SEARCHES THEY WOULD HAVE TO REVIEW,

11:23AM 21   AND I THINK WE WOULD BE CLOSER TO GETTING COMPLIANCE WITH THE

11:23AM 22   ORDER.

11:23AM 23   THE COURT:  SURE.  WELL, AS I TOLD YOU, WORKING

11:23AM 24   BACKWARDS, BECAUSE I TOLD YOU THE END OF THE YEAR IS THE

11:23AM 25   TIMELINE THAT I'M GOING TO SET HERE.  SO YOUR MEET AND CONFERS,

11:23AM 1    YOU SET THOSE UP SUCH THAT YOU CAN ACCOMPLISH THIS BY THE END

11:23AM 2    OF THE YEAR.  WORKING BACKWARDS, THAT'S HOW THAT WOULD WORK.

11:24AM 3              MR. WADE:  WE'RE PREPARED TO DO IT AS SOON AS AFTER

11:24AM 4    THIS CONFERENCE.

11:24AM 5              THE COURT:  SURE.

11:24AM 6              MR. WADE:  I THINK THE TERM THERANOS IS A

11:24AM 7    STAND-ALONE TERM.  LDT AND A COUPLE OF THE TERMS THAT

11:24AM 8    MR. COPPERSMITH HAS SUGGESTED, MAYBE A COUPLE MORE, WE'RE NOT

11:24AM 9    LOOKING TO REINVENT THE WHEEL HERE, BUT THERE ARE JUST A COUPLE

11:24AM 10   OF VERY OBVIOUS TERMS THAT WE THINK WERE OMITTED, AND WE WOULD

11:24AM 11   ASK THAT THOSE BE INCLUDED.

11:24AM 12             THE COURT:  OKAY.  LET ME ASK MS. MARTINEZ-RESLY

11:24AM 13   ABOUT THIS.

11:24AM 14             MS. MARTINEZ-RESLY:  YES, YES, YOUR HONOR.

11:24AM 15        SO THE, SO THE SEARCH TERMS THAT WE UTILIZED WERE -- WE

11:24AM 16   PROVIDED TO THE PARTIES AND WERE SPECIFICALLY GEARED TOWARD THE

11:24AM 17   SIX CATEGORIES REQUESTED BY THE DEFENDANTS IN THEIR MOTION TO

11:24AM 18   COMPEL.

11:24AM 19        WHAT I'M HEARING SUGGESTED NOW AND AT THE MEET AND CONFER

11:24AM 20   IS THAT NOW THAT THEY ARE SEEKING DOCUMENTS FAR BROADER THAN

11:25AM 21   THE SIX CATEGORIES OF DOCUMENTS JUST AS INDICATED BY THE

11:25AM 22   STANDALONE TERM "THERANOS," FOR EXAMPLE, WE HAVE LAID OUT IN

11:25AM 23   OUR OCTOBER 30TH LETTER TO THE COURT AS TO SPECIFICALLY WHY WE

11:25AM 24   DO NOT BELIEVE AN LDT IS AN APPROPRIATE SEARCH TERM FOR THE SIX

11:25AM 25   CATEGORIES OF DOCUMENTS.

11:25AM 1      BUT I DID JUST WANT TO POINT THAT OUT THAT THE SEARCH

11:25AM 2   TERMS THAT THE DEFENDANTS ARE REQUESTING HERE SEEM TO BE FAR

11:25AM 3   BROADER THAN WHAT THEY ORIGINALLY REQUESTED AND WHAT THE COURT

11:25AM 4   ORDERED THE AGENCIES TO SEARCH FOR AND PRODUCE.

11:25AM 5      THE COURT:  OKAY.  THANK YOU, MS. MARTINEZ-RESLY.

11:25AM 6   LET ME ASK YOU, IF -- WHAT WOULD IT ENTAIL TO INSERT THESE

11:25AM 7   NEW SEARCH TERMS, THESE THREE SEARCH TERMS, THE LDT, THE

11:25AM 8   NANOTAINER, FINGERSTICK?

11:26AM 9      MS. MARTINEZ-RESLY:  SO THAT -- I'M SORRY.  GO

11:26AM 10  AHEAD.  DID I INTERRUPT YOU, YOUR HONOR?

11:26AM 11     THE COURT:  I WAS GOING TO SAY THERANOS ALSO.  SO

11:26AM 12  THERE WAS FOUR OF THEM.

11:26AM 13     MS. MARTINEZ-RESLY:  SURE.  SO I GUESS I WOULD SAY

11:26AM 14  THAT OUR INITIAL COLLECTION, TO THE EXTENT IT WAS DONE VIA THE

11:26AM 15  SEARCH TERMS -- I'M SORRY.

11:26AM 16  OUR INITIAL COLLECTION DID INCLUDE THERANOS AS A

11:26AM 17  STANDALONE SEARCH TERM ANYWAY AND NANOTAINER AS WELL I'M BEING

11:26AM 18  REMINDED.  AND SO THE DOCUMENTS FROM WHICH WE, YOU KNOW, KIND

11:26AM 19  OF A STARTING SUBSET OF DOCUMENTS DID REQUEST THOSE TWO SEARCH

11:26AM 20  TERMS.

11:26AM 21  AND TO YOUR SECOND QUESTION WHICH WAS HOW -- WHAT WOULD IT

11:26AM 22  TAKE AND WHAT WOULD BE THE RESULT OF YOU USING THESE ADDITIONAL

11:26AM 23  SEARCH TERMS?  WE CAN PUT THOSE SEARCH TERMS THROUGH OUR

11:26AM 24  DOCUMENT REVIEW DATABASE, AND THE AMOUNT OF TIME IT WOULD TAKE

11:27AM 25  WOULD DEPEND, OF COURSE, ON THE VOLUME OF MATERIAL RESPONSIVE

11:27AM  1    TO THOSE TERMS.

11:27AM  2         IT'S DIFFICULT FOR ME TO ESTIMATE AT THIS POINT WITHOUT

11:27AM  3    KNOWING THE VOLUME, BUT I DO THINK THAT IF THE COURT WERE TO

11:27AM  4    ORDER THE PRODUCTION BY THE END OF THE YEAR, WE WOULD DO OUR

11:27AM  5    ABSOLUTE BEST AS WE HAVE BEEN DOING TO MAKE THAT DEADLINE.

11:27AM  6              THE COURT:  OKAY.

11:27AM  7              MS. NORTON:  YOUR HONOR, THIS IS MARCI NORTON.

11:27AM  8         I WOULD JUST LIKE TO ADD THAT THERE'S ANOTHER QUESTION

11:27AM  9    HERE, WHICH IS IF WE HAD TO GO BACK TO OUR ORIGINAL SEARCH OF

11:27AM 10    THE OVER 80 CUSTODIANS THAT HAVE BEEN SEARCHED SO FAR AND ADD

11:27AM 11    NEW SEARCH TERMS LIKE FINGERSTICK OR LTD, THAT WOULD TAKE QUITE

11:27AM 12    SOME TIME BECAUSE FOR THE FORMER EMPLOYEES THOSE SEARCHES ARE

11:27AM 13    OUT OF OUR HANDS.  THOSE ARE DONE BY OUR OFFICE OF INFORMATION

11:27AM 14    MANAGEMENT STAFF, AND I THINK WE WERE RECENTLY TOLD THAT IT'S

11:28AM 15    AT LEAST SIX WEEKS TO DO A SEARCH OF A FORMER EMPLOYEE'S FILES.

11:28AM 16         SO WHAT MS. MARTINEZ-RESLY WAS TALKING ABOUT IS IF WE ADD

11:28AM 17    THOSE SEARCH TERMS TO THE CURRENTLY COLLECTED DOCUMENTS, WHICH

11:28AM 18    I BELIEVE IS HUNDREDS OF THOUSANDS OF PAGES, THAT COULD BE DONE

11:28AM 19    WITH THE SOFTWARE THAT WE HAVE NOW.

11:28AM 20         IF WE'RE TALKING ABOUT RESEARCHING, ESPECIALLY WITH

11:28AM 21    RESPECT TO THOSE FORMER EMPLOYEES, I DON'T KNOW THAT WE WOULD

11:28AM 22    BE ABLE TO MEET AN END-OF-THE-YEAR DEADLINE.

11:28AM 23              THE COURT:  OKAY.  THANK YOU.  MR. COPPERSMITH.

11:28AM 24              MR. COOPERSMITH:  YOUR HONOR, JUST TO BRIEFLY POINT

11:28AM 25    OUT IN RESPONSE TO ONE THING THAT WAS SAID, THIS IS IN NO WAY

11:28AM 1    AN EFFORT TO EXPAND THE COURT ORDER.

11:28AM 2         THE COURT ORDER, AND I'M TALKING ABOUT CATEGORY 4 IN THE

11:28AM 3    COURT'S ORDER, DIRECTLY REQUIRES PRODUCTION OF INFORMATION,

11:28AM 4    DOCUMENTS REGARDING THE FDA'S DETERMINATION OF THE TYPE OF FDA

11:29AM 5    APPROVAL FOR THERANOS'S PROPRIETARY TESTING.

11:29AM 6         THERE CAN BE NO SEARCH TERM THAT IS MORE THE CORE OF THAT

11:29AM 7    CATEGORY THAN THIS LDT SEARCH TERM.  REALLY THE SAME GOES FOR

11:29AM 8    NANOTAINER AND FINGERSTICK.

11:29AM 9         AND FOR THE GOVERNMENT TO SAY THAT'S NOT THE CASE WHEN

11:29AM 10   THEY'VE DECIDED TO RUN SEARCH TERMS LIKE HUMANITARIAN DEVICE,

11:29AM 11   WHICH ALSO DON'T APPEAR IN THE COURT'S ORDER, THEY'RE SORT OF

11:29AM 12   TRYING TO FIND THINGS ON THE FRINGES, AND IT'S HARD TO

11:29AM 13   UNDERSTAND HOW THEY WERE REALLY TRYING TO COLLECT ALL OF THE

11:29AM 14   DOCUMENTS THAT WERE AT THE VERY HEART OF THIS CASE IF THEY

11:29AM 15   DIDN'T RUN LTD.

11:29AM 16        THE COURT:  AND YOU DIDN'T HAVE AN OPPORTUNITY,

11:29AM 17   MR. COPPERSMITH, TO GIVE SUGGESTED SEARCH TERMS?

11:29AM 18        MR. COOPERSMITH:  NO.  THEY KEPT US IN THE DARK, AND

11:29AM 19   EVENTUALLY THEY DID PROVIDE US LATE IN THE GAME WITH HERE'S

11:29AM 20   WHAT WE RAN WHICH IS WHY WE'RE BEFORE THE COURT TALKING ABOUT

11:29AM 21   THIS.

11:29AM 22        THE COURT:  OKAY.

11:29AM 23        MR. COOPERSMITH:  BUT THEY DIDN'T EVER CONSULT WITH

11:29AM 24   US AND SAY, HEY, ARE THERE SEARCH TERMS THAT YOU WOULD LIKE US

11:29AM 25   TO RUN?  AND MAYBE THEY WOULDN'T HAVE AGREED WITH US ON

11:29AM  1    EVERYTHING, BUT THEY DIDN'T DO THAT.

11:30AM  2         THE COURT:  SO YOU HEARD THE EXPLANATION THAT IT

11:30AM  3    WILL BE PERHAPS SIX WEEKS TO CONTACT THE OIM OF THE AGENCY FOR

11:30AM  4    FORMER EMPLOYEES.

11:30AM  5         AND YOU HEARD ABOUT, AS I UNDERSTAND IT, IF THE AGENCY

11:30AM  6    GOES FORWARD NOW WITH THESE NEW SEARCH TERMS ON -- IT SOUNDS

11:30AM  7    LIKE IT'S 80 EMPLOYEES, I THINK SHE SAID -- IT MIGHT TAKE SOME

11:30AM  8    TIME.

11:30AM  9         ARE YOU ASKING -- IS THAT WHAT YOU WANT TO HAVE DONE?

11:30AM  10        MR. COOPERSMITH:  I THINK IT'S REQUIRED UNDER THE

11:30AM  11   COURT ORDER, YOUR HONOR, AND I'M SORRY IT HASN'T HAPPENED

11:30AM  12   ALREADY.

11:30AM  13        THE COURT:  THAT'S WHAT YOU WANT DONE?

11:30AM  14        MR. COOPERSMITH:  YES, YOUR HONOR.

11:30AM  15        MR. WADE:  IT NEEDS TO BE DONE.

11:30AM  16        MS. NORTON:  YOUR HONOR, THIS IS MARCI NORTON.  MAY

11:30AM  17   I JUST INTERJECT A COUPLE OF THINGS?

11:30AM  18        THE COURT:  YES.

11:30AM  19        MS. NORTON:  THANK YOU.  FIRST OF ALL, I HAVE TO

11:30AM  20   CORRECT MR. COPPERSMITH'S COMMENTS THAT THE FDA NEVER REACHED

11:30AM  21   OUT TO HIM REGARDING SEARCH TERMS.

11:30AM  22        WHILE IT MAY BE THE CASE THAT WE DID NOT, WITH RESPECT TO

11:30AM  23   THE MOTION TO COMPEL, I PERSONALLY E-MAILED MR. COPPERSMITH'S

11:31AM  24   ASSOCIATE IN FEBRUARY, I BELIEVE, OF THIS YEAR AFTER THE

11:31AM  25   GOVERNMENT SHUTDOWN WAS OVER AND WE WERE TALKING ABOUT THE

11:31AM 1    SUBPOENA TO REQUEST SEARCH TERMS, AND I WAS NEVER PROVIDED ANY.

11:31AM 2    SO I WANTED TO MAKE THAT CLEAR ON THE RECORD.

11:31AM 3         SECONDLY, I'D LIKE TO POINT OUT, BECAUSE THEY SEEM TO --

11:31AM 4    MR. COPPERSMITH SEEMS TO BE HUNG UP ON THE FACT THAT THE FDA

11:31AM 5    LOOKS FOR THE TERMS HUMANITARIAN DEVICE EXEMPTION.

11:31AM 6         AS HE'S AWARE, AND YOU MAY NOT BE AWARE, THERE ARE MANY

11:31AM 7    WAYS THAT A MEDICAL DEVICE CAN COME TO MARKET LEGALLY THROUGH

11:31AM 8    FDA.  SO OUR SEARCH TERMS THAT WE USE, BECAUSE IT HAS ALWAYS

11:31AM 9    BEEN FDA'S POSITION THAT THERANOS'S DEVICES ARE NOT LABORATORY

11:31AM 10   DEVELOPED TESTS, WE USED THE SEARCH TERM FOR THE TYPE OF

11:31AM 11   APPROVAL AND CLEARANCES THAT ONE MIGHT GET THROUGH FDA, AND

11:31AM 12   THOSE ARE WHAT ARE CALLED THE 510K PROCESS; THERE'S A PMA, THE

11:32AM 13   PREMARKET APPROVAL PROCESS; THE 510K CALLED CLEARANCE; THERE'S

11:32AM 14   A HUMANITARIAN DEVICE EXEMPTION, WHICH WE KNEW THEY DID NOT

11:32AM 15   HAVE BUT WE SEARCHED, JUST TO BE CLEAR; AND THEN INVESTIGATION

11:32AM 16   DEVICE EXEMPTION IS ANOTHER WAY THAT DEVICES CAN BE LEGALLY

11:32AM 17   MARKETED ALSO CALLED AN ID.  AND THEN WE SEARCHED FOR ALL OF

11:32AM 18   THE APPLICATION NUMBERS OF APPLICATIONS THAT THAT FIRM

11:32AM 19   SUBMITTED TO THE AGENCY.  THERE'S ALSO A PROCESS CALLED DE

11:32AM 20   NOVO, AND WE SEARCHED FOR THAT.  SO THAT'S WHY WE CAME UP WITH

11:32AM 21   THOSE TERMS.

11:32AM 22        WE DID NOT SEARCH FOR THE LTD'S BECAUSE THE AGENCY DID NOT

11:32AM 23   EVER TAKE THE POSITION THAT THESE -- THIS COMPANY'S PRODUCTS

11:32AM 24   WERE LTD'S.

11:32AM 25            THE COURT:  OKAY.  THANK YOU VERY MUCH.

11:32AM  1          ANYTHING FURTHER BEFORE WE MOVE ON FROM THIS?

11:32AM  2              MR. WADE:  ONLY ONE POINT, YOUR HONOR, THAT THE

11:32AM  3    STATEMENT ABOUT THE FDA NOT REQUIRING REGULATION OF CERTAIN

11:32AM  4    THERANOS TECHNOLOGY IS DIRECTLY CONTRADICTORY TO AN ALLEGATION

11:33AM  5    IN PARAGRAPH 12(F) OF THE INDICTMENT.

11:33AM  6          SO THE POSITION BY FDA COUNSEL ONLY UNDERSCORES THE REASON

11:33AM  7    WHY WE NEED THE MATERIAL RELATING TO THAT.  IN SOME WAYS IT

11:33AM  8    SEEMS LIKE WE MAY AGREE MORE WITH THE FDA THAN WE AGREE WITH

11:33AM  9    THE UNITED STATES ASSISTANT ATTORNEYS PROCEEDING WITH THIS

11:33AM 10    CASE, BUT ULTIMATELY IT'S GOING TO BE 12 JURORS WHO NEED TO

11:33AM 11    DECIDE, AND WE NEED TO HAVE THE EVIDENCE THAT WE NEED TO PROVE

11:33AM 12    OUR CASE.

11:33AM 13              THE COURT:  OKAY.  THANK YOU.

11:33AM 14          LET'S MOVE ON -- WE ARE LEFT WITH 4(A) AND (B) -- OR (C)

11:33AM 15    PERHAPS.  I THINK (C) WE TALKED ABOUT EARLIER SO I DON'T THINK

11:33AM 16    WE NEED TO DEAL WITH THAT ANY FURTHER.  THAT'S MR. GUTIERREZ.

11:33AM 17    WE TALKED ABOUT CORRUPTION AND THOSE FILES.

11:33AM 18          SO I THINK WE'RE LEFT WITH THE DOCUMENTS THAT I THINK YOU

11:34AM 19    INDICATE ARE IN YOUR OPINION UNINTELLIGIBLE.

11:34AM 20              MR. WADE:  THE HEAVIEST REDACTIONS AND OMITTED

11:34AM 21    DOCUMENTS I'VE SEEN IN MY CAREER, YOUR HONOR.

11:34AM 22              THE COURT:  WELL, YOU'RE A RELATIVELY NEW

11:34AM 23    PRACTITIONER, COUNSEL.

11:34AM 24          (LAUGHTER.)

11:34AM 25              MR. WADE:  THANK YOU, YOUR HONOR.

11:34AM 1      WELL, THEN I HOPE I NEVER SEE SUCH HEAVILY REDACTED

11:34AM 2  MATERIALS FOR THE 50 YEARS I HAVE LEFT.

11:34AM 3      THERE ARE SOME EXAMPLES THAT ARE ATTACHED TO THE

11:34AM 4  PLEADINGS.  IT'S HARD TO UNDERSTAND EXACTLY WHAT IS GOING ON

11:34AM 5  HERE BECAUSE SOME OF THESE INTENTIONALLY WITHHELD MATERIALS ARE

11:34AM 6  TECHNICAL ISSUES OR PRIVILEGED CLAIMS APPEAR.  WE JUST DON'T

11:34AM 7  EVEN REALLY KNOW WHAT IS GOING ON.

11:34AM 8      WHAT YOU HAVE IS A DOCUMENT THAT HAS A SUBJECT MATTER OF

11:34AM 9  THERANOS AND THEN NO CONTENT WHATSOEVER.

11:34AM 10      NOW, IS THERE SOME WORLD IN WHICH THAT ISN'T RELEVANT?  I

11:34AM 11  MEAN, I GUESS MAYBE I COULD IMAGINE IT, BUT IT'S HARD TO

11:35AM 12  IMAGINE.

11:35AM 13      ANOTHER MORE SPECIFIC ISSUE THAT WE HAVE, YOUR HONOR, IS

11:35AM 14  IT'S BEEN SUGGESTED THAT DOCUMENTS WERE ONLY PRODUCED ONCE.

11:35AM 15      SO, FOR EXAMPLE, IF THERE'S AN E-MAIL WITH AN ATTACHMENT

11:35AM 16  TO ONE GROUP OF PEOPLE, AND THAT ATTACHED DOCUMENT EXISTS

11:35AM 17  SOMEWHERE ELSE, IT IS WITHHELD WITH THE OTHER -- THE SECOND

11:35AM 18  E-MAIL AND THE THIRD E-MAIL WHICH CREATES HUGE EVIDENTIARY

11:35AM 19  ISSUES IF THE COURT COULD JUST IMAGINE HOW WE WANT TO USE THESE

11:35AM 20  DOCUMENTS IN THE CASE WITH DIFFERENT WITNESSES.

11:35AM 21      SO I DON'T THINK THERE'S A BASIS TO WITHHOLD DUPLICATIVE

11:35AM 22  DOCUMENTS BASED ON THE FACT THAT THEY'RE ATTACHED TO DIFFERENT

11:35AM 23  E-MAILS.  THOSE AREN'T DUPLICATES IF THEY'RE ATTACHED TO

11:35AM 24  DIFFERENT E-MAILS.  IT'S IMPORTANT TO GET EACH ONE.

11:35AM 25          THE COURT:  OKAY.  ANYTHING, MR. COPPERSMITH?

11:35AM  1           MR. COOPERSMITH:  YOUR HONOR, I WOULD JUST POINT OUT

11:35AM  2   THAT WHEN YOU LOOK AT THE ATTACHMENT THAT WE HAVE PROVIDED IN

11:35AM  3   THE STATUS REPORT THERE'S A PIE CHART PROVIDED TO SORT OF SUM

11:35AM  4   UP THE MAGNITUDE OF THIS PROBLEM, WHICH IS, THAT, YOU KNOW, A

11:35AM  5   HUGE PERCENT, 37 PERCENT WHERE MARKED AS INTENTIONALLY

11:36AM  6   WITHHELD.

11:36AM  7           AND THEN WE PROVIDED SOME OTHER EXAMPLES WHERE, FOR

11:36AM  8   EXAMPLE -- ONE EXAMPLE WAS OUR EXHIBIT D WHERE THERE'S AN

11:36AM  9   E-MAIL THAT SAYS IT'S FROM MR. PILCHER, WHO IS AN FDA EMPLOYEE

11:36AM 10   WHO PARTICIPATED IN THE INSPECTION FDA PERFORMED, AMONG OTHER

11:36AM 11   THINGS.

11:36AM 12           AND IT SAYS, "ATTACHED PLEASE FIND MY INSPECTION NOTES

11:36AM 13   DURING THE AUGUST 2016 INSPECTION," AND THEN EVERYTHING ELSE IS

11:36AM 14   INTENTIONALLY WITHHELD.

11:36AM 15           SO THE IDEA THAT THOSE WERE NOT RESPONSIVE?  I SUSPECT

11:36AM 16   WHAT HAPPENED THERE IS WHAT MR. WADE WAS SAYING, WHICH IS THAT

11:36AM 17   THEY DECIDED, WELL, ONE OF THOSE ATTACHMENTS WAS PRODUCED IN

11:36AM 18   SOME FORM SOMEWHERE ELSE AND THEY SOMEHOW MADE THAT CONCLUSION.

11:36AM 19           BUT OBVIOUSLY AS MR. WADE SAID, IF I HAVE MR. PILCHER ON

11:36AM 20   THE STAND, YOU KNOW, I HAVE NO WAY AS AN EVIDENTIARY MATTER TO

11:36AM 21   SHOW THAT THIS WAS ACTUALLY AN ATTACHMENT TO HIS E-MAIL WITHOUT

11:36AM 22   THOSE DOCUMENTS.

11:36AM 23           SO THAT METHOD OF DE-DUPLICATING I HAVE NEVER SEEN BEFORE

11:36AM 24   AND DIDN'T MAKE ANY SENSE TO US, SO I THINK THEY NEED TO

11:36AM 25   REVISIT THAT AS WELL.

11:36AM 1          THE COURT:  OKAY.  ANYTHING, MR. BOSTIC, ON THIS?

11:37AM 2          MR. BOSTIC:  YES, YOUR HONOR.  JUST A COUPLE OF

11:37AM 3    THINGS.

11:37AM 4      I CAN'T SPEAK TO WHAT'S UNDERNEATH THE REDACTIONS THAT THE

11:37AM 5    FDA EXECUTED ON ITS DOCUMENT PRODUCTIONS.  I THINK I'LL COME

11:37AM 6    BACK TO THAT POINT LATER WHEN WE TALK ABOUT WHETHER RULE 16

11:37AM 7    APPLIES HERE OR NOT.

11:37AM 8      AS TO THE PRACTICE OF ONLY PRODUCING DOCUMENTS ONCE SUCH

11:37AM 9    THAT SOME PRODUCED DOCUMENTS SAY "INTENTIONALLY WITHHELD," AND

11:37AM 10   IT'S DIFFICULT FOR THE DEFENSE TO KNOW, AND FOR THE GOVERNMENT

11:37AM 11   TO KNOW, WHICH DOCUMENT THAT ACTUALLY IS AND WHERE ELSE THEY

11:37AM 12   MAY FIND IT IN THE PRODUCTION.  I AGREE WITH THE DEFENSE THAT

11:37AM 13   THEY NEED TO FIND A SOLUTION TO THAT.  I'M NOT IN A POSITION TO

11:37AM 14   PROVIDE THAT SOLUTION, BUT I AGREE THAT IT IS A PROBLEM.

11:37AM 15         THE COURT:  OKAY.

11:37AM 16         MR. BOSTIC:  AS TO THE REDACTIONS, I'LL JUST POINT

11:37AM 17   OUT THAT MY UNDERSTANDING IS THAT TO THE EXTENT THAT THE

11:37AM 18   DEFENSE HAS PROVIDED EXAMPLES OF POSSIBLY INAPPROPRIATE

11:37AM 19   REDACTIONS TO AGENCY COUNSEL, THEY'VE REVIEWED THEM AND

11:37AM 20   CONFIRMED THAT WHAT IS UNDERNEATH THOSE REDACTIONS HAS NOTHING

11:38AM 21   TO DO WITH THERANOS.

11:38AM 22      AGAIN, I HAVE TO TAKE THE AGENCY'S WORD FOR THAT, BUT I

11:38AM 23   HAVE NO REASON TO DOUBT THEM IF THEY HAVE DONE THAT REVIEW.

11:38AM 24         THE COURT:  WAS THERE -- LET ME ASK ANOTHER QUESTION

11:38AM 25   BEFORE I GO BACK TO THE DEFENSE HERE.

11:38AM 1      WAS THERE -- I THOUGHT THAT THE AGENCIES WERE GOING TO

11:38AM 2   DEVELOP A PRIVILEGE LOG AT SOME POINT IN TIME.

11:38AM 3      DID THAT -- I REMEMBER SOME COMMENT ABOUT THAT.

11:38AM 4          MR. COOPERSMITH:  WE HAVE NOT SEEN ONE, YOUR HONOR.

11:38AM 5          THE COURT:  OKAY.  OKAY.  SO LET ME TURN TO

11:38AM 6   MS. MARTINEZ-RESLY.  DO YOU WISH TO COMMENT?

11:38AM 7          MS. MARTINEZ-RESLY:  YES, YOUR HONOR.

11:38AM 8      SO THE DOCUMENTS THAT THE FDA WITHHELD AND PRODUCED TO

11:38AM 9   PARTIES AS INTENTIONALLY WITHHELD WITH THAT SLIP SHEET

11:38AM 10  INDICATING THAT PHRASE, WERE FOR THREE REASONS:

11:38AM 11     ONE WAS IF THAT DOCUMENT WAS COMPLETELY NONRESPONSIVE; ONE

11:38AM 12  WAS IF THAT DOCUMENT WAS ENTIRELY PRIVILEGED; AND ONE WAS, AS

11:39AM 13  THE PARTIES HAD BEEN DISCUSSING JUST NOW, WAS IF THAT DOCUMENT

11:39AM 14  WAS DUPLICATIVE OF ANOTHER DOCUMENT THAT THE PARTIES ALREADY

11:39AM 15  HAD VIA FDA'S INITIAL PRODUCTION OF DOCUMENTS TO THE DEPARTMENT

11:39AM 16  OF JUSTICE, WHICH THE DEPARTMENT OF JUSTICE WE UNDERSTAND HAS

11:39AM 17  ALREADY PROVIDED TO THE DEFENDANTS, OR DUPLICATIVE OF ANOTHER

11:39AM 18  DOCUMENT IN OUR REVIEW DATABASE, WHICH MEANS THAT IT WILL

11:39AM 19  EVENTUALLY BE REVIEWED AND PRODUCED IF IT HAS NOT BEEN ALREADY.

11:39AM 20     AND THE REASON FOR THIS APPROACH IS THAT -- THERE ARE

11:39AM 21  MULTIPLE REASONS.  ONE IS THE LARGE, THE LARGE NUMBER -- AND

11:39AM 22  KIND OF THE LARGE NUMBER OF DOCUMENTS THAT WERE YIELDED FROM

11:39AM 23  OUR SEARCH OF OVER 80 CUSTODIANS.  I BELIEVE IN OUR

11:40AM 24  SEPTEMBER 23RD LETTER TO MR. BALWANI WE POINTED OUT THAT OUR

11:40AM 25  SEARCH FOR 65 CUSTODIANS YIELDED OVER 150,000 DOCUMENTS, AND WE

11:40AM 1    KNEW AND UNDERSTOOD THAT THE PARTIES ALREADY HAD ABOUT

11:40AM 2    40,000 PAGES OF FDA DOCUMENTS.

11:40AM 3        WE ALSO UNDERSTOOD THAT THE COURT WANTED US TO PRODUCE THE

11:40AM 4    DOCUMENTS RESPONSIVE TO THE MOTION TO COMPEL IN AS EFFICIENT A

11:40AM 5    MANNER AS POSSIBLE.  SO WE EXERCISED OUR -- THIS, THIS

11:40AM 6    DE-DUPLICATION PROCESS IN ORDER TO MEET THE COURT'S DEADLINE

11:40AM 7    AND IN OUR GOOD FAITH UNDERSTANDING WE UNDERSTOOD THAT THE

11:40AM 8    PARTIES ALREADY HAD THESE DOCUMENTS IF THEY WERE DUPLICATIVE.

11:40AM 9        I UNDERSTAND THAT IT IS -- FROM WHAT THE PARTIES HAVE SAID

11:40AM 10   IN COURT TODAY AND DURING OUR MEET AND CONFER THAT IT IS

11:41AM 11   SOMETIMES DIFFICULT TO FIND THE DUPLICATIVE DOCUMENT AMONG THE

11:41AM 12   PRODUCTION OF DOCUMENTS THAT THEY ALREADY HAVE, AND SO WE SAID

11:41AM 13   AT THE MEET AND CONFER, AND I THINK WE SAID AGAIN IN THIS

11:41AM 14   OCTOBER 30TH LETTER, THAT WE ARE REVIEWING A LIST OF DOCUMENTS

11:41AM 15   THAT MR. BALWANI'S COUNSEL HAS PROVIDED TO US THAT THEY WOULD

11:41AM 16   LIKE US TO CONSIDER REPRODUCING IN FULL, AND WE ARE REVIEWING

11:41AM 17   THAT, AND WE WILL GET BACK TO THEM.

11:41AM 18        THE COURT:  OKAY.  CAN YOU TELL ME, WHEN DO YOU

11:41AM 19   THINK YOU'LL BE ABLE TO GET BACK TO THEM?

11:41AM 20        MS. MARTINEZ-RESLY:  I BELIEVE WE CAN GET BACK TO

11:41AM 21   THEM IN A COUPLE OF WEEKS WITH AN UPDATE.

11:41AM 22        THE COURT:  ALL RIGHT.  THANK YOU.

11:41AM 23        MS. MARTINEZ-RESLY:  YOUR HONOR, MAY I ALSO ADD ONE

11:42AM 24   OTHER THING?  WE'VE ALSO COMMITTED TO REVIEW ALL OF OUR

11:42AM 25   REDACTIONS FOR THE LAW ENFORCEMENT PRIVILEGE BECAUSE THAT WAS

11:42AM  1   BROUGHT TO OUR ATTENTION DURING THE LAST MEET AND CONFER AS

11:42AM  2   WELL.  SO WE ARE VOLUNTARILY UNDERTAKING A REVIEW OF THOSE

11:42AM  3   DOCUMENTS.

11:42AM  4          THE COURT:  ALL RIGHT.  THANK YOU.

11:42AM  5      MR. BOSTIC, ANYTHING TO ADD?

11:42AM  6          MR. BOSTIC:  NO, YOUR HONOR -- ACTUALLY, YES, YOUR

11:42AM  7   HONOR.  I THINK IT'S IMPORTANT TO NOTE THE AMOUNT OF EFFORT

11:42AM  8   THAT THE AGENCIES HAVE PUT IN HERE.  I KNOW THAT THE COURT

11:42AM  9   THANKED THEM EARLIER, AND FOR THE GOVERNMENT I WOULD LIKE TO

11:42AM 10   THANK THEM ALSO FOR THAT WORK.

11:42AM 11      I ASKED THE AGENCIES TO ESTIMATE HOW MANY EMPLOYEE HOURS

11:42AM 12   THEY HAD SPENT ON RESPONDING TO THIS ROUND OF DOCUMENT

11:42AM 13   REQUESTS, AND THE NUMBERS WERE HIGHER THAN I THOUGHT THEY WERE

11:42AM 14   GOING TO BE.

11:42AM 15      THE FDA ESTIMATES THAT IT SPENT APPROXIMATELY 2,600 HOURS

11:42AM 16   RESPONDING TO THESE DOCUMENT REQUESTS FOR THE PAST SEVERAL

11:42AM 17   MONTHS.  CMS, FOR ITS PART, ESTIMATES THAT IT SPENT

11:42AM 18   2,100 EMPLOYEE HOURS RESPONDING TO THESE REQUESTS.

11:42AM 19      SO I SAY THAT NOT BECAUSE THAT'S HOW WE MEASURE

11:43AM 20   COMPLIANCE.  THERE'S NO MAGIC NUMBER THAT ONCE THEY GET TO IT

11:43AM 21   WE SAY, OKAY, WE'RE GOING TO LEAVE YOU ALONE.  BUT I DON'T WANT

11:43AM 22   THERE TO BE ANY QUESTION THAT THE AGENCIES HAVEN'T DEVOTED A

11:43AM 23   TREMENDOUS AMOUNT OF RESOURCES RESPONDING TO THESE REQUESTS AND

11:43AM 24   THAT THEY'VE DONE SO IN GOOD FAITH.

11:43AM 25          THE COURT:  OKAY.  THANK YOU FOR THAT.

11:43AM 1        MR. COOPERSMITH.

11:43AM 2            MR. COOPERSMITH:  YES, YOUR HONOR.  I JUST WANT TO

11:43AM 3    MAKE IT CLEAR THAT FOR THE INDIVIDUAL PEOPLE INVOLVED WHO ARE

11:43AM 4    ON THE PHONE, AND THE OTHERS WHO ARE COLLECTING DOCUMENTS, WE

11:43AM 5    UNDERSTAND THAT THEY'RE WORKING ON THIS, AND WE DO APPRECIATE

11:43AM 6    THAT.

11:43AM 7        OBVIOUSLY WHEN WE'RE TALKING ABOUT THE DEFENDANT'S

11:43AM 8    CONSTITUTIONAL RIGHTS AND THE GOVERNMENT ELECTING TO BRING THIS

11:43AM 9    PROSECUTION, YOU KNOW, THEY'RE GOING TO HAVE TO DO WHAT IT

11:43AM 10   TAKES TO MAKE SURE THAT THEIR RIGHTS ARE PROTECTED AND THE

11:43AM 11   COURT'S ORDERS ARE FOLLOWED.

11:43AM 12       BUT I WANT TO MAKE A MORE SPECIFIC POINT AND THAT IS TO

11:43AM 13   ADDRESS SOME OF THE THINGS THAT WE JUST HEARD FROM THE PHONE

11:43AM 14   SPEAKER.

11:43AM 15       WE DID AN ANALYSIS, YOUR HONOR, BECAUSE MR. BOSTIC HAD

11:43AM 16   SUGGESTED THAT MAYBE THE DOCUMENTS WE WERE GETTING ARE JUST

11:43AM 17   DUPLICATIVE OF WHAT THE GOVERNMENT ALREADY GAVE US.  WE DID AN

11:43AM 18   ANALYSIS WITH OUR ANALYTICS DEPARTMENT TO SEE WHETHER THE

11:44AM 19   DOCUMENTS WE'RE NOW GETTING AND STARTING TO GET ARE DUPLICATIVE

11:44AM 20   OF ANYTHING, AND WE FOUND THAT OVER 90 PERCENT OF THE DOCUMENTS

11:44AM 21   BEING PRODUCED BY THE AGENCY ARE NOVEL, NEW DOCUMENTS THAT WE

11:44AM 22   HAVE NOT SEEN BEFORE FROM THE DEPARTMENT OF JUSTICE IN THEIR

11:44AM 23   PRODUCTION.

11:44AM 24       SO LEST THERE BE ANY DOUBT THAT THE DATA, THE RECORD SHOWS

11:44AM 25   THAT IT'S NOT THE CASE THAT WE'RE JUST GETTING DUPLICATIVE

11:44AM  1      MATERIAL AND MAKING THESE PEOPLE SPIN THEIR WHEELS FOR NO

11:44AM  2      REASON.  WE'RE GETTING DOCUMENTS THAT ARE REALLY IMPORTANT AND

11:44AM  3      CRUCIAL TO THE DEFENSE.

11:44AM  4          AND THE OTHER THING I WANTED TO MENTION, YOUR HONOR, IS

11:44AM  5      THAT I UNDERSTAND, YOU KNOW, WE HAD A DISCUSSION ABOUT THIS

11:44AM  6      SEARCH TERM LTD, BUT I WANT TO JUST LINK THAT TO THE

11:44AM  7      DELIBERATIVE PROCESS PRIVILEGE POINT THAT WE'VE BEEN HEARING

11:44AM  8      ABOUT NOW.

11:44AM  9              THE COURT:  HASN'T THAT BEEN WAIVED BY THE PARTIES?

11:44AM  10              MR. COOPERSMITH:  YES, YOUR HONOR.  AND JUST TO BE

11:44AM  11      CLEAR, THOUGH, WHAT MY UNDERSTANDING OF THE WAIVER IS, IS THAT

11:44AM  12      THE AGENCIES HAVE WAIVED THE DELIBERATIVE PROCESS FOR MATERIAL

11:44AM  13      THAT RELATES TO THERANOS, BUT IF THEY HAVE SOME OTHER COMPANY

11:44AM  14      OR SOME OTHER DISCUSSION THAT DOESN'T RELATE TO THERANOS, THEN

11:45AM  15      THEY HAVE NOT WAIVED THE DELIBERATIVE PROCESS.  SO THOSE, I

11:45AM  16      WOULD ASSUME, WOULD BE THE DOCUMENTS THAT SHOW UP ON A

11:45AM  17      PRIVILEGE LOG WHEN THEY GET AROUND TO THAT.

11:45AM  18          THE QUESTION, THOUGH, YOUR HONOR, IS HOW DO YOU DETERMINE

11:45AM  19      WHAT RELATES TO THERANOS AND WHAT DOESN'T?  AND WHAT WE KNOW

11:45AM  20      ABOUT THIS CASE IS THAT AT HIGH LEVELS OF THE FDA IN 2014 AND

11:45AM  21      2015 THEY WERE NOT ONLY TALKING INTERNALLY ABOUT HOW AND

11:45AM  22      WHETHER TO REGULATE THERANOS, THEY WERE ALSO TALKING ABOUT NEW

11:45AM  23      POLICY GUIDANCE THEY WERE TRYING TO ISSUE ABOUT LTD'S IN

11:45AM  24      GENERAL THAT WOULD APPLY NATIONWIDE TO ALL COMPANIES.

11:45AM  25          SO WE SEE IN THE DOCUMENTS THERE ARE TIMES WHEN HIGH-LEVEL

11:45AM 1    FDA PEOPLE EVEN TELL THE U.S. CONGRESS AND OTHERS THAT THERANOS

11:45AM 2    IS AN EXAMPLE OF WHY WE NEED TO REGULATE LTD'S, OR THERANOS AND

11:45AM 3    THESE OTHER TEN COMPANIES ARE REASONS WHY WE WANT TO CHANGE THE

11:45AM 4    WAY WE REGULATE LTD'S.

11:45AM 5         SO WHEN THEY'RE TALKING ABOUT THOSE HIGH-LEVEL POLICY

11:45AM 6    DISCUSSIONS, WE THINK THAT'S HIGHLY MATERIAL TO THE DEFENSE.

11:46AM 7         AND WHAT I THINK HAS HAPPENED HERE IS THAT IF THE

11:46AM 8    DISCUSSION WASN'T SPECIFICALLY RELATED TO A THERANOS MATTER

11:46AM 9    THAT IS EXISTING AT SOME POINT IN TIME, THEY'VE DECIDED TO MAKE

11:46AM 10   DELIBERATIVE PROCESS ARGUMENTS, BUT UNLESS YOU SEE THE CONTEXT

11:46AM 11   OF HOW THIS AGENCY WAS TRYING TO DO THINGS OVERALL.

11:46AM 12        SO I THINK THAT QUESTION OF WHAT IS RELATED TO THERANOS

11:46AM 13   AND WHAT IS NOT IS PERHAPS A DIFFICULT ONE, BUT IT CERTAINLY

11:46AM 14   SHOULDN'T BE ERRED ON THE SIDE OF NOT GIVING US THE DOCUMENTS,

11:46AM 15   WHICH I THINK IS WHAT HAS HAPPENED SO FAR.

11:46AM 16        THE COURT:  OKAY.

11:46AM 17        MR. BOSTIC:  YOUR HONOR, ON THAT POINT.  SO I THINK

11:46AM 18   WE'RE BACK TO THE SEARCH TERM DISCUSSION TEMPORARILY.  ABOUT 20

11:46AM 19   MINUTES AGO I THINK MR. COPPERSMITH SAID THIS IS NOT ABOUT

11:46AM 20   EXPANDING THE SCOPE OF THE COURT'S ORDER, BUT THAT'S WHAT I'M

11:46AM 21   HEARING RIGHT NOW.  I'M HEARING THAT NOT ONLY DOES THE DEFENSE

11:46AM 22   WANT DISCUSSIONS ABOUT LTD'S IN RELATION TO THERANOS, BUT ALSO

11:46AM 23   ABOUT LTD'S IN GENERAL.

11:46AM 24        NOWHERE IN THE SIX CATEGORIES THAT THE DEFENSE PROVIDED

11:46AM 25   THAT THE COURT ORDERED IS THAT CALLED FOR.  THAT SIMPLY IS NOT

11:47AM 1    RESPONSIVE TO THESE CATEGORIES.

11:47AM 2       SAME THING WITH "THERANOS" BY THE WAY AS A STANDALONE

11:47AM 3    TERM.  IF ONE OF THE CATEGORIES REQUESTED ALL DOCUMENTS

11:47AM 4    RELATING TO OR MENTIONING THERANOS, THEN IT WOULD MAKE SENSE TO

11:47AM 5    HAVE A STANDALONE TERM FOR THERANOS.

11:47AM 6       BUT MY CONCERN IS THAT BY DEMANDING SEARCH TERMS LIKE LTD

11:47AM 7    AND THERANOS STANDING ALONE, THEY ARE SEEKING DOCUMENTS THAT

11:47AM 8    ARE CLEARLY OUTSIDE THE FOUR CORNERS OF THE SIX REQUESTS THAT

11:47AM 9    THEY SELECTED AND THAT THE COURT ORDERED AND THAT THE

11:47AM 10    GOVERNMENT REQUESTED.

11:47AM 11       THE COURT:  OKAY.  THANK YOU.

11:47AM 12       MR. COOPERSMITH:  YOUR HONOR, TO BE MORE SPECIFIC TO

11:47AM 13    TRY TO ADDRESS MR. BOSTIC'S CONCERNS, WHAT WE'RE LOOKING FOR,

11:47AM 14    WHICH I THINK IS PART OF THE COURT ORDER, NOT AN EXPANSION, IS

11:47AM 15    HOW THE FDA WAS PLANNING TO APPLY THEIR POLICY ABOUT LTD'S TO

11:47AM 16    THERANOS, AND THAT'S DIRECTLY RESPONSIVE TO CATEGORY 4.

11:47AM 17       IF THERE'S SOME DISCUSSION THEY'RE HAVING THAT IS

11:47AM 18    COMPLETELY DIVORCED FROM ANYTHING HAVING TO DO WITH THERANOS,

11:48AM 19    THAT'S A DIFFERENT MATTER.

11:48AM 20       BUT HOW THEY APPLY THEIR POLICY AND THE POLICIES OR HOW

11:48AM 21    THEY MAY WISH TO APPLY IT TO THERANOS I THINK IS DIRECTLY

11:48AM 22    RELATED TO THE COURT ORDER.

11:48AM 23       THE COURT:  WELL, HOW DO YOU PUT THAT INTO A SEARCH

11:48AM 24    TERM?

11:48AM 25       MR. COOPERSMITH:  IT'S NOT A MATTER OF A SEARCH

11:48AM 1      TERM.  THERE'S NO REASON TO ADDRESS THE SEARCH TERM.  THE

11:48AM 2      SEARCH TERM IS THE LTD THAT WE'VE TALKED ABOUT.

11:48AM 3          THE QUESTION IS WHEN YOU FIND THE HITS WHEN YOU HAVE THE

11:48AM 4      DOCUMENTS.  NOW, THE FDA IS GOING TO HAVE, AND I GUESS BOTH

11:48AM 5      AGENCIES, HAVE TO DECIDE WHAT ARE WE GOING TO WITHHOLD AS

11:48AM 6      DELIBERATIVE PROCESS?  SO IT'S MORE OF A QUESTION OF HOW

11:48AM 7      BROADLY ARE THEY GOING TO SEARCH DELIBERATIVE PROCESS.  IT'S

11:48AM 8      NOT A SEARCH TERMS ISSUE AT ALL.

11:48AM 9          THE COURT:  SO YOU'RE TRYING TO POLICE THIS, IF YOU

11:48AM 10     WILL, UPFRONT.  AT SOME POINT IN TIME THERE WILL BE A

11:48AM 11     DISCUSSION, I ASSUME YOU'LL RAISE IT, THE DEFENSE TEAM WILL

11:48AM 12     RAISE IT ABOUT ANY PRIVILEGE LOG THAT EXISTS, AND WE'LL HAVE TO

11:48AM 13     LOOK AT THAT AND DETERMINE WHETHER OR NOT IT WAS APPROPRIATELY

11:48AM 14     WITHHELD OR THE REASONS THEREFOR.

11:48AM 15         MR. COOPERSMITH:  YES, YOUR HONOR.  AND THAT'S A

11:48AM 16     VERY FINE WAY TO DEAL WITH THE PROBLEM, BECAUSE THAT'S

11:48AM 17     TRADITIONAL IS THAT THE PARTY WITHHOLDING DOCUMENTS, THEY'RE

11:48AM 18     DECIDING SOMETHING IS PRIVILEGED.  THEY MAKE A PRIVILEGE LOG.

11:49AM 19         AND THEN WE LOOK AT IT AND CHALLENGE WHAT WE THINK IS NOT

11:49AM 20     WARRANTED.

11:49AM 21         MR. WADE:  ON THAT POINT, YOUR HONOR, BUT IN THE

11:49AM 22     INTEREST OF THE DIALOGUE THAT WE'VE HAD WITH THE OTHER PARTIES

11:49AM 23     TO TRY AND GET AT THIS EFFICIENTLY, WE JUST WANTED TO RAISE

11:49AM 24     THAT ISSUE NOW.

11:49AM 25         THE COURT:  SURE.

11:49AM  1          MR. WADE:  BECAUSE THERE HAVE BEEN TIMES WHEN WE'VE

11:49AM  2   BEEN ACCUSED OF NOT BEING RESPONSIVE OR NOT GIVING NOTICE.

11:49AM  3          FOR EXAMPLE, ON THE SEARCH TERMS, MS. HOLMES FILED THIS

11:49AM  4   MOTION AND OUR INPUT ON SEARCH TERMS WAS NEVER REQUESTED.  WHAT

11:49AM  5   IS NEWS TO ME IS THE FACT THAT I LEARNED EARLIER TODAY THAT

11:49AM  6   THERE WAS ANY SOLICITATION OF THAT.  SO WE WOULD HAVE BEEN

11:49AM  7   HAPPY TO PROVIDE THOSE SEARCH TERMS.

11:49AM  8          THE COURT:  YOUR COLLEAGUE DIDN'T TELL YOU THAT?

11:49AM  9          MR. WADE:  WELL, OUR COLLEAGUE IS PRESENT AND HAS A

11:49AM 10   DIFFERENT CASE PENDING BEFORE THE COURT THAT WE'RE NOT A PARTY

11:49AM 11   TO.

11:49AM 12          MY GUESS IS THAT IT WAS PART OF A MEET AND CONFER PROCESS

11:49AM 13   THERE THAT I THINK WAS SORT OF PUT ON HOLD BECAUSE OF THE

11:49AM 14   LITIGATION RELATING TO THIS MOTION.

11:49AM 15          SO WE'RE RAISING THIS ISSUE WITH REGARD TO THE

11:50AM 16   DELIBERATIVE PROCESS ISSUE NOW SO THAT PERHAPS WE CAN AVOID

11:50AM 17   TAKING TOO NARROW OF A VIEW AND HAVING FIGHTS OVER THAT FOR

11:50AM 18   MONTHS TO COME.

11:50AM 19          THE COURT:  OKAY.  I APPRECIATE THAT.

11:50AM 20          AND I ALSO APPRECIATE MS. MARTINEZ-RESLY'S COMMENTS ABOUT

11:50AM 21   THIS.  WE MAY, IN MY OBSERVATIONS, THAT IT MAY BE THAT WE'LL

11:50AM 22   HAVE ADDITIONAL DISCUSSION OVER IF THERE IS A PRIVILEGE LOG OR

11:50AM 23   NOT OR ITEMS THAT PRESENT ITSELF ON THAT AND THE REASONS FOR

11:50AM 24   THAT, AND THERE'S A TIME TO GET THAT DONE.

11:50AM 25          AGAIN, EVERYTHING WE'RE TALKING ABOUT HERE, AND I REALLY

11:50AM  1    HATE TO USE THE WORD "EFFICIENCY" OR "SPEED" OR ANYTHING LIKE

11:50AM  2    THAT IN A CRIMINAL CASE, BUT WE HAVE A TRIAL DATE, AND WE HAVE

11:50AM  3    SOME DATES SET.  I WANT TO LOOK TO YOUR PROPOSED SCHEDULE ALSO

11:50AM  4    IN A MOMENT, BUT I DO -- I'M NOT GOING TO DISTURB THE TRIAL

11:50AM  5    DATE.

11:50AM  6         I LOOK AT MR. SCHENK AND I MADE HIM, I DON'T KNOW IF IT

11:50AM  7    WAS A PROMISE, BUT IT WAS AT LEAST AN ASSURANCE, A STRONG

11:51AM  8    ASSURANCE THAT WE WOULDN'T DISTURB THE TRIAL DATES.  YOU ALL

11:51AM  9    HAVE PLANNED YOUR LIVES NEXT YEAR AROUND THAT, I'M SURE YOU

11:51AM  10   HAVE, AND I REALLY DON'T WANT TO DISTURB THAT.

11:51AM  11        TO THE EXTENT THAT WE CAN GET THIS INITIAL DISCOVERY PHASE

11:51AM  12   COMPLETED, WE CAN MOVE ON TO THE IMPORTANT ISSUES THAT YOU'RE

11:51AM  13   GOING TO PRESENT I'M SURE.

11:51AM  14            MR. COOPERSMITH:  THANK YOU, YOUR HONOR.  YES, WE'RE

11:51AM  15   AWARE OF THE TRIAL DATE, OF COURSE, AND ARE PLANNING.

11:51AM  16        JUST TO CLOSE THE LOOP ON ONE THING, IN THE S.E.C. -- AND

11:51AM  17   I DON'T WANT TO ARGUE S.E.C. MATTERS BECAUSE WE'RE NOT BEFORE

11:51AM  18   THE COURT ON THAT -- BUT SINCE AGENCY COUNSEL RAISED THIS

11:51AM  19   QUESTION OF SEARCH TERMS.  I THINK IT'S IMPORTANT TO NOTE THAT

11:51AM  20   THOSE SUBPOENAS WERE SERVED IN SEPTEMBER 2018.  WE GOT NOTHING

11:51AM  21   MORE THAN A BARE LITTLE TRICKLE OF DOCUMENTS UNTIL THIS COURT

11:51AM  22   ORDERED DOCUMENTS TO BE PRODUCED IN THE CRIMINAL CASE.

11:51AM  23        SINCE THEN WE HAVE AGREED WITH THE AGENCIES THAT THE

11:51AM  24   PRODUCTION UNDER THE CRIMINAL ORDER WOULD ALSO BE PRODUCTION

11:51AM  25   UNDER THE CIVIL AND ALSO WE'VE TOLD THE AGENCIES THAT WE'RE NOT

11:51AM 1   GOING TO ASK FOR ANYTHING MORE THAN WHAT IS ULTIMATELY PRODUCED

11:52AM 2   UNDER THE CRIMINAL ORDER AS THE COURT DIRECTS.

11:52AM 3       SO THIS ISSUE OF SEARCH TERMS, THEY NEVER SEARCHED FOR

11:52AM 4   ANYTHING.  THEY BASICALLY NEVER DID ANYTHING UNTIL THE COURT

11:52AM 5   ORDERED THE PRODUCTION ON THE CRIMINAL SIDE.

11:52AM 6       THE COURT:  OKAY.  ALL RIGHT.

11:52AM 7       ANY FURTHER OBSERVATIONS BEFORE?  I THINK WE'VE -- DARE I

11:52AM 8   USE THE WORD? -- EXHAUSTED TOPICS FOR TODAY.

11:52AM 9       MR. BOSTIC, YOU WANTED TO PUT SOMETHING ON THE RECORD,

11:52AM 10  THOUGH.

11:52AM 11      MR. BOSTIC:  YES, YOUR HONOR, JUST ON THE MATTER OF

11:52AM 12  WHETHER RULE 16 SHOULD APPLY DIRECTLY HERE.

11:52AM 13      THE COURT:  YES.

11:52AM 14      MR. BOSTIC:  I THINK THE COURT WAS CORRECT AT THE

11:52AM 15  BEGINNING WHEN IT SAID THAT ITS APPROACH TO DATE HAD YIELDED

11:52AM 16  PROGRESS AND THAT IS ABSOLUTELY TRUE, AND I DON'T WANT TO LOSE

11:52AM 17  SIGHT OF THAT.

11:52AM 18      BACK AT THE BEGINNING OF THIS CONVERSATION THAT WE'VE BEEN

11:52AM 19  HAVING THE AGENCIES WERE RAISING OBJECTIONS ABOUT THE RELEVANCE

11:52AM 20  OF CERTAIN TOPICS.  THEY WERE ESTIMATING THAT THEIR PRODUCTION

11:52AM 21  WOULD TAKE MONTHS UPON MONTHS TO COMPLETE THROUGH COURT ORDERS

11:52AM 22  AND THROUGH THE PROSECUTION'S WORK IN SECURING THE WAIVER FROM

11:52AM 23  THE ASSIGNEE, AND NEGOTIATING APPROPRIATE PROTECTIVE ORDERS

11:53AM 24  WITH THE COURT.  WE'VE OVERCOME MANY OF THE OBSTACLES THAT WERE

11:53AM 25  PREVENTING THOSE PRODUCTIONS FROM PROCEEDING.

11:53AM  1      THE AGENCIES HAVE PRODUCED THE DOCUMENTS THAT THEY PLEDGED

11:53AM  2  TO PRODUCE SEVERAL MONTHS AGO.  I THINK IT WAS IN JULY WHEN

11:53AM  3  THEY SENT THEIR INITIAL LETTER SAYING HERE'S WHAT WE'LL DO.

11:53AM  4      THE COURT USED A BASEBALL ANALOGY EARLIER, AND NOW I WANT

11:53AM  5  TO TALK ABOUT MOVING GOALPOSTS.  I THINK THAT'S A DIFFERENT

11:53AM  6  SPORT, MAYBE FOOTBALL.

11:53AM  7          THE COURT:  IT'S THE CURRENT SEASON SO THAT'S

11:53AM  8  APPROPRIATE.

11:53AM  9          MR. BOSTIC:  I THINK THAT IS WHAT IS HAPPENING HERE,

11:53AM  10 YOUR HONOR -- AND THE AGENCIES ARE ACCOMMODATING IT I THINK TO

11:53AM  11 THE EXTENT THAT THEY CAN -- THEY COMPLETED THEIR INITIAL ROUNDS

11:53AM  12 OF PRODUCTION AND THEN THE DEFENSE COMPLAINED ABOUT DATE

11:53AM  13 RESTRICTIONS USED BY CMS AND CUSTODIANS WHO WERE NOT INCLUDED

11:53AM  14 IN FDA'S INITIAL COLLECTIONS.

11:53AM  15     WE'VE DISCUSSED BEFORE THE MERITS OF THOSE POSITIONS SO I

11:53AM  16 WON'T RELITIGATE THEM NOW, BUT SUFFICE IT TO SAY THE AGENCIES

11:53AM  17 STAND BY, AND MY UNDERSTANDING IS THAT THEY STAND BY THEIR

11:53AM  18 INITIAL DOCUMENT COLLECTION PROCEDURES, BUT THEY STILL

11:54AM  19 ACCOMMODATED THE DEFENDANT'S REQUESTS TO EXPAND THEIR SEARCHES,

11:54AM  20 CMS EXPANDING THE SCOPE OF TIME THAT IT WAS LOOKING AT FOR ITS

11:54AM  21 DOCUMENT COLLECTION, AND FDA ADDING I BELIEVE EVERY CUSTODIAN

11:54AM  22 THAT DEFENDANTS POINTED OUT, EVEN THOUGH FDA INFORMS US THAT

11:54AM  23 THOSE ARE RELATIVELY MINOR EMPLOYEES WHOSE DOCUMENTS MIGHT HAVE

11:54AM  24 ALREADY BEEN CAPTURED.

11:54AM  25     SO THAT'S THE COLLECTION THAT THEY'RE DOING NOW.  THE

11:54AM  1    REVIEW WILL HAPPEN.  THE PRODUCTION WILL HAPPEN.  THIS PROCESS

11:54AM  2    IS WORKING.  THE DEFENSE IS NOW RAISING CONCERNS ABOUT

11:54AM  3    REDACTIONS AND TECHNICAL ISSUES.

11:54AM  4        I THINK SIMILARLY WE CAN OVERCOME THOSE CONCERNS USING THE

11:54AM  5    SAME PROCESS THAT WE HAVE BEEN USING.

11:54AM  6        MY CONCERN WITH A COURT ORDER THAT WOULD PUT THE

11:54AM  7    GOVERNMENT IN CHARGE OF OVERSEEING A PRODUCTION IS THAT I DON'T

11:54AM  8    THINK ANY BENEFIT WILL BE GAINED FROM IT.  I THINK THE COURT

11:54AM  9    ALREADY KNOWS THAT THE GOVERNMENT IS WORKING AS HARD AS IT CAN

11:54AM  10   TO GET THESE DOCUMENTS PRODUCED.

11:55AM  11       THERE'S NOTHING MORE THAT WE COULD DO WITH THAT ORDER THAT

11:55AM  12   WE CAN'T DO NOW.

11:55AM  13       AND LOOKING AT THE SPECIFIC TOPICS THAT WE DISCUSSED

11:55AM  14   TODAY, IT'S UNCLEAR HOW THE GOVERNMENT, THE PROSECUTION THAT

11:55AM  15   IS, CAN DO ANYTHING TO MOVE THE BALL FORWARD ON THOSE TOPICS.

11:55AM  16       WHEN WE TALK ABOUT TECHNICAL ISSUES, THERE'S NOTHING THE

11:55AM  17   PROSECUTION CAN DO TO RESOLVE THOSE.

11:55AM  18       WHEN IT COMES TO TEXT MESSAGES, IT'S DOUBTFUL, ACCORDING

11:55AM  19   TO AGENCY COUNSEL, WHETHER THE AGENCY EVEN HAS ACCESS TO

11:55AM  20   CERTAIN EMPLOYEE TEXT MESSAGES.  HOW MUCH LESS DOES THE

11:55AM  21   PROSECUTION HAVE ACCESS TO THOSE TEXT MESSAGES?  WE GET TEXT

11:55AM  22   MESSAGES THROUGH SEARCH WARRANTS WHEN WE NEED TO SEE THEM BUT

11:55AM  23   ONCE WE'RE SERVING -- ONCE WE'RE EXECUTING A SEARCH WARRANT TO

11:55AM  24   GET EVIDENCE, WE'RE SO FAR AWAY FROM THE CONCEPT OF ACCESS

11:55AM  25   UNDER RULE 16, I THINK THAT SPEAKS FOR ITSELF.

11:55AM 1      SAME THING ON THE ISSUE OF TIMING.  THE GOVERNMENT HAS

11:55AM 2 MADE THE LTSC AVAILABLE TO CMS, AND I BELIEVE THAT HAS SPED UP

11:56AM 3 SOME OF THEIR REVIEW AND PRODUCTION WORK.  BEYOND THAT, THERE'S

11:56AM 4 NOTHING THAT THE PROSECUTION CAN DO TO MAKE THE AGENCIES MOVE

11:56AM 5 FASTER.  I THINK THE COURT IS CONSIDERING AN ORDER THAT MAY DO

11:56AM 6 THAT, BUT THE COURT HAS THAT AUTHORITY WHERE THE PROSECUTION

11:56AM 7 DOES NOT.

11:56AM 8      FINALLY, ON THE ISSUES OF REDACTIONS AND PRIVILEGE LOGS,

11:56AM 9 AGENCY COUNSEL TOLD THE COURT EARLIER THAT THE AGENCIES WOULD

11:56AM 10 NOT, COULD NOT PROVIDE THE GOVERNMENT WITH MATERIALS OR ACCESS

11:56AM 11 TO MATERIALS THAT IT WOULDN'T PROVIDE TO THE DEFENSE.  THAT

11:56AM 12 MEANS THAT WE DON'T KNOW WHAT IS UNDERNEATH THE AGENCY'S

11:56AM 13 REDACTIONS, AND WE WON'T KNOW.  IT MEANS THAT WE CAN'T VIEW

11:56AM 14 THEIR PRIVILEGED MATERIALS TO CONFIRM THAT A PRIVILEGE LOG IS

11:56AM 15 ACCURATE OR THE CORRECT MATERIALS ARE BEING WITHHELD.

11:56AM 16      ALL OF THESE ISSUES JUST SERVE TO FURTHER DEMONSTRATE THAT

11:56AM 17 WE DON'T HAVE ACCESS TO THESE MATERIALS.

11:56AM 18      SO WHILE WE'RE HAPPY TO STAY INVOLVED AS MUCH AS WE CAN

11:56AM 19 AND CONTINUE TO ACT AS A MEDIATOR AND ADVISOR AND ADVOCATE IN

11:56AM 20 THE WAYS THAT HAVE BEEN PRODUCTIVE SO FAR, I WOULD ASK THE

11:57AM 21 COURT NOT TO ISSUE A RULE 16 ORDER DIRECTED AT THE GOVERNMENT.

11:57AM 22      THE COURT:  OKAY.  THANK YOU.

11:57AM 23      MR. WADE:  YOUR HONOR, JUST VERY BRIEFLY.  THE

11:57AM 24 FIELD -- THE GOALPOSTS HAVE BEEN WHERE THEY HAVE ALWAYS BEEN.

11:57AM 25 I'M NOW BEFORE THE COURT THE FOURTH TIME ASKING FOR THE SAME

11:57AM 1    THING.  IT'S NOT COMPLICATED.  IT'S VERY SIMPLE.

11:57AM 2           THE COURT:  WELL, I THINK WHAT MR. BOSTIC SUGGESTS

11:57AM 3    IS THE POSTS MAY HAVE BEEN THE SAME, BUT THERE'S BEEN

11:57AM 4    ADDITIONAL YARDAGE ENTERED INTO THE 50 YARDLINE PERHAPS AND NOW

11:57AM 5    WE'RE LOOKING AT A DIFFERENT FIELD.

11:57AM 6           MR. WADE:  NOT AT ALL, YOUR HONOR.  ALL WE'VE ASKED

11:57AM 7    FOR IS A REPRESENTATION FROM THE AGENCIES THAT THEY HAVE

11:57AM 8    PRODUCED ALL DOCUMENTS RESPONSIVE TO THEIR REQUESTS.

11:57AM 9        IF THE AGENCIES COME BACK AFTER THIS MEET AND CONFER

11:57AM 10   PROCESS -- AND BY THE WAY, THE AGENCIES, THROUGH COUNSEL, HAVE

11:57AM 11   COME FORWARD MULTIPLE TIMES AND SAID YES, AND THEN THERE'S

11:57AM 12   MORE; YES, AND THEN THERE'S MORE; YES, BUT THERE'S MORE.

11:57AM 13       SO IF THESE MEET AND CONFER PROCESSES REVEAL NO ADDITIONAL

11:57AM 14   DOCUMENTS, THEN WE'VE BEEN WASTING EVERYONE'S TIME.

11:57AM 15       MY SPECULATION BASED UPON OUR MEET AND CONFER IS THAT

11:57AM 16   THERE IS GOING TO BE SUBSTANTIAL ADDITIONAL DOCUMENTS.

11:58AM 17       AND IF PREVIOUSLY STARTING IN JUNE THE SLEEVES HAVEN'T

11:58AM 18   BEEN ROLLED UP AND THERE WAS MORE OWNERSHIP OF THIS AND A

11:58AM 19   RECOGNITION THAT THE GOAL ISN'T TO GET AWAY WITH MINIMAL

11:58AM 20   COMPLIANCE, THE GOAL IS TO ENSURE MAXIMUM COMPLIANCE, WE MIGHT

11:58AM 21   HAVE GOTTEN TO THIS POINT SLIGHTLY SOONER.

11:58AM 22          THE COURT:  HOW DOES A RULE 16 ORDER FROM THIS COURT

11:58AM 23   ASSIST IN THE PROCESS AS TO WHERE WE ARE NOW IN GOING FORWARD?

11:58AM 24          MR. WADE:  IT PUTS THE OBLIGATION ON THE LAWYERS IN

11:58AM 25   THIS CASE TO GATHER THE MATERIALS AND PRODUCE IT AND ENSURE

11:58AM  1    THAT IT'S PRODUCED.

11:58AM  2         AND THEY ARE ACCOUNTABLE TO ANSWER TO YOUR HONOR WITH

11:58AM  3    RESPECT TO THEIR MEETING THEIR RULE 16 OBLIGATIONS, AND WHAT

11:58AM  4    WE -- THE RECORD IN THIS CASE MAKES CLEAR THE RESPONSIVENESS

11:58AM  5    THAT COMES WHEN THE GOVERNMENT IS DIRECTLY INVOLVED UP UNTIL

11:58AM  6    THE POINT WHERE WE'VE MADE REQUESTS.

11:58AM  7         YOU CAN LOOK BACK AT ALL OF THESE CORRESPONDENCE AND

11:58AM  8    WHENEVER THE GOVERNMENT DURING THEIR PHASE OF THE CASE WHERE

11:59AM  9    THEY WANTED THEIR MATERIALS WANTED DOCUMENTS, THEY GOT THEM

11:59AM  10   PROMPTLY, AND THEY GOT WHAT THEY ASKED FOR, AND THEY GOT ACCESS

11:59AM  11   TO WITNESSES, AND THEY COULD FOLLOW UP AND ASK FOR ADDITIONAL

11:59AM  12   MATERIALS.

11:59AM  13        AND THOSE RESPONSES WERE MET COMPLETELY.

11:59AM  14        HAVING THE GOVERNMENT -- MR. BOSTIC HAS SAID HE STANDS

11:59AM  15   PREPARED TO ROLL UP HIS SLEEVES AND DO WHATEVER HE CAN TO

11:59AM  16   ASSIST THIS, BUT SO FAR THE MOST KNOWLEDGEABLE PERSON IN THIS

11:59AM  17   CASE IS THE CIVIL ASSISTANT UNITED STATES ATTORNEY WHO IS

11:59AM  18   REPRESENTING THE AGENCIES.

11:59AM  19        IN THE POSTURE OF THIS CASE WITH THE LAW IN THE NINTH

11:59AM  20   CIRCUIT, MR. BOSTIC SHOULD BE IN THAT ROLE.  HE'S MORE

11:59AM  21   KNOWLEDGEABLE ABOUT THESE ISSUES THAN MS. DAW IS.  HE'S

11:59AM  22   ACCOUNTABLE TO THE COURT.  HE'S DIRECTLY IMPACTED BY THE

11:59AM  23   SCHEDULE.

11:59AM  24             THE COURT:  WHAT IS HIS ACCESS?

11:59AM  25             MR. WADE:  HIS ACCESS IS SIMILAR, BUT HIS KNOWLEDGE

11:59AM   1    IS GREATER THAN HIS COLLEAGUE WHO HAS BEEN HANDLING THIS SO

11:59AM   2    FAR.

11:59AM   3         SO HE COULD HAVE EASILY POSED SOME OF THESE QUESTIONS IF

12:00PM   4    HE WAS DIRECTLY INVOLVED MUCH SOONER IN THE PROCESS.

12:00PM   5         THE GOVERNMENT IN THIS CASE ISSUED A PRESERVATION ORDER

12:00PM   6    YEARS AGO, YEARS AGO.  THEY SHOULD BE AS TROUBLED AS EVERYONE

12:00PM   7    ELSE IN THIS CASE WHEN THERE'S SOME INDICATION THAT MAY BE

12:00PM   8    DOCUMENTS WERE NOT PRESERVED THAT ARE MATERIAL TO THE CASE.

12:00PM   9         I'M SURE THEY'RE NOT PLEASED BY THAT.  NO LITIGANT IS EVER

12:00PM   10   PLEASED BY THE DESTRUCTION OF EVIDENCE, AND I'M SURE THE

12:00PM   11   GOVERNMENT IS NOT HERE GIVEN THAT THEY SENT CLEAR NOTICES AND

12:00PM   12   CLEARLY ASKED THAT THE AGENCIES DO THAT.

12:00PM   13        SO THE RESPONSE SHOULD BE THAT'S TROUBLING, LET ME FOLLOW

12:00PM   14   UP, AND LET ME GET TO THE BOTTOM OF THAT SO THAT I CAN MAKE

12:00PM   15   REPRESENTATIONS TO THE DEFENSE AS TO WHAT HAS HAPPENED, RATHER

12:00PM   16   THAN WAIT FOR THE LETTER TO COME FROM THE AGENCIES.

12:00PM   17             THE COURT:  SO WHERE WE'VE COME NOW, AND WE ALL KNOW

12:00PM   18   THIS, IS NOW WE HAVE THE AGENCIES ON THE LINE.  THEY'RE HERE IN

12:00PM   19   COURT PARTICIPATING IN THIS PROCESS.

12:00PM   20        WHAT IS IT THAT THIS COURT CAN DO WITH THE AGENCIES AND

12:01PM   21   THEIR REPRESENTATIVES THAT IS NOT ENHANCED BY MR. BOSTIC NOT

12:01PM   22   BEING IN IT?

12:01PM   23        DO YOU UNDERSTAND MY QUESTION?  WHY DOES MR. BOSTIC'S

12:01PM   24   OFFICE NEED TO HAVE RULE 16 IF I HAVE THESE LAWYERS,

12:01PM   25   MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY, ON THE PHONE TO

12:01PM  1    ORDER DIRECTLY?  THIS IS HOW WE WENT DOWN THIS PATH.  WHAT DOES

12:01PM  2    HE ADD?  I HAVE THEIR ATTENTION.

12:01PM  3              MR. WADE:  I WOULD ASSUME YOU DO, YOUR HONOR.

12:01PM  4    ALTHOUGH THERE HAVE BEEN AT LEAST TWO ORDERS THAT HAVE BEEN

12:01PM  5    IMPOSED BY THE COURT TO PRODUCE ALL OF THE DOCUMENTS, AND WE

12:01PM  6    HAVE YET TO HAVE ALL OF THE DOCUMENTS, AND THE YEAR IS RUNNING

12:01PM  7    OUT.

12:01PM  8              THE COURT:  WHY AREN'T YOU ASKING ME TO DO SOMETHING

12:01PM  9    TO THESE GOOD LAWYERS ON THE PHONE?

12:01PM 10              MR. WADE:  WELL, THE GOOD LAWYERS ON THE PHONE ARE

12:01PM 11    WORKING HARD.  WHAT THEY NEED IS IN BETWEEN THIS HEARING AND

12:01PM 12    WHATEVER THE NEXT DATE IS, IS SOMEONE WITH A VESTED INTEREST

12:01PM 13    WHO WILL SUFFER CONSEQUENCES BEFORE THE COURT IF THESE

12:01PM 14    DEADLINES ARE NOT MET TO ROLL UP AND ON A DAY-TO-DAY BASIS MAKE

12:02PM 15    INQUIRIES AS TO WHAT WAS COLLECTED.

12:02PM 16              THE COURT:  WON'T THEY SUFFER CONSEQUENCES IF THEY

12:02PM 17    VIOLATE THE COURT ORDER?  THEY WERE SUPPOSED TO HAVE BEEN IN

12:02PM 18    COMPLIANCE OCTOBER 25.

12:02PM 19              MR. WADE:  INITIALLY, YOUR HONOR, I BELIEVE THEY

12:02PM 20    WERE SUPPOSED TO BE IN COMPLIANCE OCTOBER 2ND, AND THEY

12:02PM 21    WEREN'T.

12:02PM 22        NOW, OCTOBER 25, AND THEY WEREN'T.

12:02PM 23        SO WE'RE GETTING CLOSE TO THE POINT WHERE EVERYTHING IS

12:02PM 24    IMPACTED, BUT THE PARTY THAT IS BEFORE THE COURT REPRESENTING

12:02PM 25    THE UNITED STATES SHOULD BE THE ONE THAT IS HELD ACCOUNTABLE

12:02PM 1    FOR THAT.  THEY WERE ABLE TO GET THE MATERIALS WHEN THEY WANTED

12:02PM 2    THE MATERIALS.

12:02PM 3           THE COURT:  I GUESS I'M JUST CURIOUS.  THIS IS

12:02PM 4    PERSONAL INFORMATION AND NOTHING ELSE.  WHAT SHOULD I DO TO

12:02PM 5    MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY ABOUT A

12:02PM 6    NONCOMPLIANCE ISSUE?

12:02PM 7           MR. WADE:  RESPECTFULLY, YOUR HONOR, AT THIS POINT

12:02PM 8    APART FROM ASKING THEM TO DO THE THINGS THAT WE'VE ASKED TO DO,

12:02PM 9    NOTHING.

12:02PM 10      BUT WE ASK THAT THE GOVERNMENT LAWYERS BE HELD ACCOUNTABLE

12:02PM 11   TO MAKE SURE THAT WE'RE NOT BACK IN THE SITUATION.

12:03PM 12      AGAIN, WE'VE SORT OF -- WE'VE HAD THIS RUNNING JOKE, YOUR

12:03PM 13   HONOR, ABOUT, YOU KNOW, THE THIRD TIME IS A CHARM, AND THE

12:03PM 14   FOURTH TIME IS A CHARM.  I GUESS WE'RE HEADED TOWARDS THE FIFTH

12:03PM 15   TIME.

12:03PM 16      I THINK IT'S APPROPRIATE FOR THE PARTY REPRESENTING THE

12:03PM 17   UNITED STATES TO TAKE OWNERSHIP OF THIS.

12:03PM 18      WHEN WE HAVE THESE CONFERENCES, THEY'RE NOT A STAKEHOLDER

12:03PM 19   IN THE CONFERENCES IN THE SAME WAY THEY WOULD BE IF THEY WERE

12:03PM 20   GETTING THE MATERIALS FOR THEMSELVES.

12:03PM 21      THEY SHOULD BE A STAKEHOLDER.

12:03PM 22           THE COURT:  WELL, I ASKED MS. TURNER, MS. NORTON,

12:03PM 23   MS. MARTINEZ-RESLY AT THE OUTSET ABOUT THE INVOLVEMENT OF THE

12:03PM 24   GOVERNMENT AND WHETHER OR NOT IT WAS OF ASSISTANCE TO THEM, AND

12:03PM 25   I THINK EACH OF THEM ANSWERED AFFIRMATIVELY THAT IT WAS

12:03PM   1    HELPFUL.

12:03PM   2           MR. WADE:  AND I THINK CONTINUING THEIR INVOLVEMENT

12:03PM   3    AND ULTIMATELY IN THE POSITION WHERE THE PROSECUTION TEAM HAS

12:03PM   4    TO COME FORWARD AND MAKE THE REPRESENTATIONS AS TO WHAT HAS

12:03PM   5    HAPPENED HERE AND WHAT HASN'T HAPPENED HERE IS APPROPRIATE IN

12:03PM   6    THIS CASE.

12:03PM   7           THE COURT:  OKAY.

12:04PM   8           MR. WADE:  I UNDERSTAND TO A DEGREE WHAT THE AGENCY

12:04PM   9    COUNSEL -- THINGS TAKE TIME, AND THEY'RE WORKING DILIGENTLY.

12:04PM  10           THE COURT:  SO 2,000 HOURS, 2,000 STAFF HOURS.

12:04PM  11           MR. WADE:  I WANT TO BE RESPECTFUL OF THAT.

12:04PM  12           THE COURT:  IT'S ALMOST AS MUCH AS YOU'RE BILLING.

12:04PM  13           MR. WADE:  EVERYONE IS WORKING HARD IN THIS CASE,

12:04PM  14    YOUR HONOR, GIVEN THE STAKES.

12:04PM  15        BUT I THINK THAT ON A DAY-TO-DAY BASIS GOING FORWARD

12:04PM  16    HAVING THE PROSECUTION TEAM INVOLVED AND ASKING THESE

12:04PM  17    QUESTIONS, I THINK THE PROSECUTION TEAM HAS A PRETTY CLEAR

12:04PM  18    SENSE OF WHERE WE'RE GOING TO BE ON THESE ISSUES, AND THEY CAN

12:04PM  19    ENSURE THAT WE REACH A DIFFERENT CONCLUSION BEFORE THE NEXT

12:04PM  20    HEARING.

12:04PM  21           THE COURT:  OKAY.  MR. BOSTIC.

12:04PM  22           MR. BOSTIC:  JUST VERY BRIEFLY, YOUR HONOR.  THE

12:04PM  23    COURT AND THE AGENCIES HAVE WHAT MR. WADE IS DESCRIBING

12:04PM  24    ALREADY.

12:04PM  25        IF IT HAS FELT LIKE THE GOVERNMENT HAS NOT BEEN INVESTED

12:04PM  1    IN THESE PROCEEDINGS -- WELL, I'M CONFUSED TO HEAR THE DEFENSE

12:04PM  2    SAY THAT IT FEELS LIKE THE GOVERNMENT HAS NOT BEEN INVESTED.

12:04PM  3    WE'VE EXPENDED A TREMENDOUS AMOUNT OF EFFORT AS WELL TO TRY TO

12:04PM  4    GET THESE EFFORTS RESOLVED.

12:04PM  5         IF IT WERE WITHIN OUR POWER TO HAND OVER ALL OF THE

12:05PM  6    DOCUMENTS THAT THE DEFENSE IS REQUESTING, OF COURSE WE WOULD

12:05PM  7    HAVE DONE THAT ALREADY.

12:05PM  8         LIKE THE COURT, WE WANT TO MOVE PAST THIS ISSUE.  THERE

12:05PM  9    ARE MORE IMPORTANT THINGS TO DISCUSS IN THIS CASE.  WE WOULD

12:05PM 10    LIKE TO GET TO THE BUSINESS OF ACTUALLY PROSECUTING THE CASE.

12:05PM 11         SO IF IT WERE WITHIN OUR POWER TO RESOLVE THESE ISSUES

12:05PM 12    INSTANTLY OVER THE COURSE OF THE NEXT WEEK, WE WOULD HAVE DONE

12:05PM 13    THAT ALREADY.  WE HAVE DONE EVERYTHING WE CAN.  WE'LL CONTINUE

12:05PM 14    TO DO THAT.

12:05PM 15         BUT IF THE CONVERSATION IS ABOUT MAKING THE GOVERNMENT,

12:05PM 16    MAKING THE PROSECUTION ACCOUNTABLE, AS THE DEFENSE IS

12:05PM 17    ADVOCATING FOR, I JUST DON'T THINK THAT THAT'S WHAT RULE 16 IS

12:05PM 18    ABOUT BECAUSE THE GOVERNMENT DOESN'T HAVE THE POWER TO RESOLVE

12:05PM 19    THESE ISSUES.

12:05PM 20         IF WE DID, I -- I FEEL LIKE I'M SAYING THE SAME THING OVER

12:05PM 21    AND OVER AGAIN.

12:05PM 22              THE COURT:  NO.  NO.

12:05PM 23              MR. BOSTIC:  SO I THINK, AS THE COURT SAID, IT HAS

12:05PM 24    THE AGENCY'S ATTENTION.  IT HAS HAD THE AGENCY'S ATTENTION FOR

12:05PM 25    SOME TIME.  THE ISSUE IS NOT COMPLACENCY ON THE PART OF THE

12:05PM   1   AGENCIES, AT LEAST FROM MY PERSPECTIVE.

12:05PM   2       THE ISSUE IS SIMPLY THAT WE'RE TALKING ABOUT A VERY BROAD

12:05PM   3   SCOPE OF DOCUMENT COLLECTION AND PRODUCTION.  THEY'VE PUT IN A

12:06PM   4   LOT OF HOURS TO MEET THEIR OBLIGATIONS, AND THEY'RE CONTINUING

12:06PM   5   TO DO SO.

12:06PM   6       EVERY TIME WE COME BACK TO THE COURT, THE DEFENSE DOES

12:06PM   7   HAVE A NEW ROUND OF COMPLAINTS THAT EXPAND, AT LEAST IN THE

12:06PM   8   AGENCY'S MIND, THE JOB THAT THEY'RE TASKED WITH PERFORMING.

12:06PM   9       SO THAT'S THE SITUATION THAT THEY'RE IN.

12:06PM  10       THE GOVERNMENT BELIEVES THAT THE REMAINING COMPLAINTS BY

12:06PM  11   THE DEFENSE CAN BE RESOLVED.  WE WOULD LIKE THE OPPORTUNITY TO

12:06PM  12   DO THAT IN THE SAME WAY THAT WE HAVE BEEN DOING.

12:06PM  13           THE COURT:  OKAY.  THANK YOU VERY MUCH.

12:06PM  14       MR. COPPERSMITH, YOU'RE PULLING THE MIKE TO YOURSELF.

12:06PM  15           MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

12:06PM  16       WE ALL KNOW THE DEPARTMENT OF JUSTICE WORKS WITH AGENCIES

12:06PM  17   ALL OF THE TIME.  THEIR CIVIL COUNTERPART IS WORKING WITH THE

12:06PM  18   AGENCIES.  THIS IS NO EARTHSHAKING SURPRISE THAT THE DEPARTMENT

12:06PM  19   OF JUSTICE COULD WORK WITH AGENCIES TO OVERSEE A PROCESS UNDER

12:06PM  20   RULE 16.  THAT'S NOTHING REALLY THAT UNUSUAL.

12:06PM  21       I THINK GIVEN WHAT HAS OCCURRED, YOU KNOW, I DISAGREE WITH

12:06PM  22   MR. BOSTIC THAT THIS HAS BEEN SOME KIND OF MOVING OF THE

12:07PM  23   GOALPOSTS OR EXPANDING.  I THINK IF THE DOJ WAS INVOLVED ALL

12:07PM  24   ALONG, AND WITH THEIR INVOLVEMENT GOING FORWARD, I THINK WE'LL

12:07PM  25   HAVE LESS, FEWER PROBLEMS, NOT MORE.

12:07PM  1      IT'S ONLY THE DEPARTMENT OF JUSTICE THAT HAS THE INCENTIVE

12:07PM  2  AND THE KNOWLEDGE OF THIS CASE TO MAKE SURE THAT THE COURT

12:07PM  3  ORDER IS COMPLETELY COMPLIED WITH, THAT THE DEFENSE GETS ALL OF

12:07PM  4  THE MATERIAL THAT THEY'RE SUPPOSED TO GET.

12:07PM  5      YOU KNOW, WE'VE SEEN BRADY EVIDENCE IN THESE PRODUCTIONS,

12:07PM  6  YOUR HONOR.  WE'VE INFORMED THE GOVERNMENT OF THE BRADY

12:07PM  7  EVIDENCE THAT WE HAVE FOUND.  AND THIS IS CRUCIAL.  THIS IS THE

12:07PM  8  WAY THAT OUR CLIENTS GET A FAIR TRIAL.

12:07PM  9      THE ONLY APPROPRIATE AGENCY TO OVERSEE THAT IS THE

12:07PM  10  DEPARTMENT OF JUSTICE.

12:07PM  11          THE COURT:  ALL RIGHT.  THANK YOU.

12:07PM  12      MR. LEACH, ANYTHING YOU WANT TO ADD TO THE CONVERSATION,

12:07PM  13  SIR?

12:07PM  14          MR. LEACH:  NO.  THANK YOU.

12:07PM  15          THE COURT:  ALL RIGHT.  THANK YOU.

12:07PM  16      ALL RIGHT.  WELL, LET ME INDICATE THAT I'VE -- YOU KNOW,

12:07PM  17  I'VE ENJOYED THE CONVERSATION THIS MORNING AS I DO EVERY TIME

12:07PM  18  WE ALL GET TOGETHER.  YOU'VE BEEN VERY HELPFUL IN INFORMING THE

12:07PM  19  COURT OF YOUR POSITIONS.

12:07PM  20      AGAIN, I THINK I'M ACCURATE IN THE OBSERVATION THAT WE'RE

12:07PM  21  ALL OF COMMON PURPOSE TO GET THE CASE TO TRIAL BY THE DATE THAT

12:08PM  22  I HAVE SET.  IT'S A HARD DATE.

12:08PM  23      IT IS IMPORTANT, AND I RECOGNIZE THE DEFENSE'S COMMENTS,

12:08PM  24  IT'S IMPORTANT THAT THESE DEFENDANT'S RIGHTS ARE PROTECTED.

12:08PM  25  THEY HAVE CONSTITUTIONAL RIGHTS.  THIS IS WHAT I WAS MENTIONING

12:08PM 1     EARLIER WHEN I SPOKE WITH MS. TURNER, MS. NORTON,

12:08PM 2     MS. MARTINEZ-RESLY ABOUT THE SOMETIMES TENSION THAT COMES UP

12:08PM 3     VIS-A-VIS CRIMINAL CASES AND CIVIL OBLIGATIONS AND CRIMINAL

12:08PM 4     OBLIGATIONS FOR DISCOVERY.

12:08PM 5         BUT THE PARTIES WILL GET A FAIR TRIAL.  THEY WILL GET A

12:08PM 6     FAIR TRIAL.  THEY'LL GET THEIR DAY IN COURT.  THEY WILL HAVE

12:08PM 7     THEIR DAY IN COURT.

12:08PM 8         OUR EFFORTS THROUGHOUT THE TIMES THAT WE HAVE MET HERE

12:08PM 9     PRELIMINARILY ARE TO ENSURE THAT THIS INFORMATION THAT THEY

12:08PM 10    SHOULD RECEIVE THEY DO GET IN A TIMELY MANNER SUCH THAT THEY

12:08PM 11    CAN USE IT AS THEY FEEL APPROPRIATE.  THAT'S GOING TO HAPPEN,

12:08PM 12    AND THAT'S WHAT WE HAVE PROCESSED HERE NOTWITHSTANDING MY

12:09PM 13    COMMENTS THROUGHOUT OUR CONVERSATION SOMETIMES A BIT FLIPPANT

12:09PM 14    ABOUT SPORTS METAPHORS, ANALOGIES, ET CETERA.

12:09PM 15        I DON'T MEAN TO MAKE LIGHT OF ANY OF THE SERIOUSNESS OF

12:09PM 16    THE CIRCUMSTANCES HERE.  IT'S VERY IMPORTANT.  IT'S VERY

12:09PM 17    IMPORTANT.  IT'S IMPORTANT FOR THE GOVERNMENT.  IT'S IMPORTANT

12:09PM 18    FOR THE DEFENDANTS.

12:09PM 19        I INTEND, AND I'M GOING TO CONTINUE TO DO MY BEST TO

12:09PM 20    MARSHAL FORWARD AND MAKE SURE AND ENSURE THAT EVERYONE'S RIGHTS

12:09PM 21    ARE PROTECTED AND THAT PRIVILEGES THAT EXIST ARE PROTECTED,

12:09PM 22    THAT THE RULES OF DISCOVERY ARE PROTECTED FROM ALL PARTIES,

12:09PM 23    INCLUDING THE AGENCIES, AND AS WELL AS OBLIGATIONS TO DISCLOSE.

12:09PM 24    THOSE ARE PARAMOUNT AND IMPORTANT HERE.

12:09PM 25        LET ME TALK ABOUT DOCUMENT 170-6, WHICH IS YOUR PROPOSED

12:09PM  1     SCHEDULE.  I'VE RECEIVED THAT.

12:09PM  2          IS THIS A SCHEDULE THAT YOU'D LIKE THE COURT TO ADOPT

12:09PM  3     THEN?

12:09PM  4          IS THE GOVERNMENT ASKING, MR. SCHENK, THAT THE COURT ADOPT

12:10PM  5     THIS SCHEDULE?

12:10PM  6                MR. SCHENK:  YES, YOUR HONOR.  THANK YOU.

12:10PM  7                MR. WADE:  YOUR HONOR, THE DIRECT ANSWER TO YOUR

12:10PM  8     QUESTION, IN LIGHT OF THE COURT'S COMMENTS AT THE PRIOR HEARING

12:10PM  9     WITH RESPECT TO THE TRIAL DATE, IS YES.  WE'VE MET AND

12:10PM 10     CONFERRED IN AN EFFORT TO SHOEHORN EVERYTHING WITHIN THAT.

12:10PM 11          AS WE ACTUALLY SAID WHEN SCHEDULING FIRST CAME UP IN JUNE,

12:10PM 12     TIME IS OF THE ESSENCE, AND THE DELAYS HAVE BEEN SIGNIFICANT.

12:10PM 13     AND SO WE'RE NOT SEEKING ANYTHING FROM THE COURT AT THIS TIME,

12:10PM 14     BUT SOME OF THE ITEMS IN THIS CASE THAT WERE CONTEMPLATED WHEN

12:10PM 15     WE MET AND CONFERRED ON THE SCHEDULE AS A WHOLE IN RESERVING

12:10PM 16     THE TRIAL DATES HAVE TAKEN MUCH MORE TIME THAN WE EXPECTED.

12:10PM 17          THAT HAS THE PROSPECT OF AFFECTING POTENTIAL MOTIONS,

12:10PM 18     AFFECTING POTENTIAL EXPERTS, ET CETERA.

12:10PM 19          SO WE'RE CONTINUING TO WORK.  WE HAVE THE TIME BLOCKED.

12:10PM 20     WE WANT TO DO EVERYTHING WE CAN TO GET THAT TRIAL ON SCHEDULE,

12:11PM 21     BUT I WANT TO BE CANDID WITH THE COURT ABOUT OUR CONCERN THAT

12:11PM 22     WE ARE RUNNING OUT OF TIME ON DELAYS WITH RESPECT TO SOME OF

12:11PM 23     THESE ISSUES.

12:11PM 24                THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR THAT

12:11PM 25     OBSERVATION.  I THINK YOU HAVE SOME TIME.

12:11PM 1    WE'RE SCHEDULED FOR JURY SELECTION ON JULY 28TH, THE END

12:11PM 2    OF JULY NEXT YEAR, AND THEN EVIDENCE WILL START AUGUST 4TH.

12:11PM 3    THAT'S OUR CURRENT SCHEDULE.

12:11PM 4    I'D LIKE, AS I SAID, I WOULD LIKE TO KEEP IT ON SCHEDULE

12:11PM 5    SUCH THAT YOU CAN NOTIFY YOUR WITNESSES THAT THEY HAVE DATES

12:11PM 6    CERTAIN, YOU CAN MAKE YOUR PLANS, YOUR PERSONAL PLANS

12:11PM 7    ACCORDINGLY AS WELL.

12:11PM 8    I NOTE THAT YOU SUGGEST HEARING ON 12(B)(3) MOTIONS ON

12:11PM 9    MONDAY, FEBRUARY 10TH.  WE'RE GOING TO LOOK AT OUR SCHEDULE.  I

12:11PM 10   THINK THAT'S AVAILABLE.  WE MAY START THOSE IN THE MORNING.

12:11PM 11   I'M GOING TO ASK OUR COURTROOM DEPUTY TO SET OUR CRIMINAL

12:11PM 12   CALENDAR LIGHT THAT DAY, IF AT ALL.  SO WE MIGHT DEVOTE THAT

12:12PM 13   ENTIRE DAY TO THIS CASE.

12:12PM 14   SO WE'LL DO WHAT WE CAN, AND I HOPE THIS IMPRESSES ON YOU,

12:12PM 15   I'M GOING TO DO WHAT I CAN WITH OUR CALENDAR MANAGEMENT TO

12:12PM 16   ALLOW THE CASE TO PROCEED ACCORDING TO THE SCHEDULE.

12:12PM 17   OUR PRETRIAL CONFERENCE, I THINK YOU HAVE SUGGESTED THAT

12:12PM 18   ON JULY 9TH, WHICH IS A THURSDAY.  I'M HAPPY TO ACCOMMODATE

12:12PM 19   THAT DAY.  THAT'S A CIVIL CALENDAR DAY AS YOU KNOW FOR US.

12:12PM 20   BUT AS YOU KNOW, I CAN ALSO BLOCK OFF THAT DATE, WHICH I

12:12PM 21   PROBABLY WILL DO.  WE PROBABLY WILL NOT HAVE ANYTHING ON

12:12PM 22   JULY 9TH BY WAY OF CIVIL MATTERS, AND WE'LL JUST GIVE YOUR CASE

12:12PM 23   THAT ENTIRE DAY TO ACCOMPLISH THE PRETRIAL CONFERENCE.

12:12PM 24   SO I TELL YOU THAT JUST TO INFORM YOU THAT, AGAIN, THAT'S

12:12PM 25   A HARD SET DATE, AND I WILL TELL OUR CIVIL LITIGANTS, AND AS

12:12PM  1    YOU KNOW THERE ARE MANY OF THEM IN THIS COURTHOUSE, THAT THEY

12:13PM  2    WILL NOT BE ABLE TO COME TO COURT JULY 9TH TO HEAR CIVIL

12:13PM  3    MOTIONS, AND I'LL RESERVE THAT FOR YOUR CASE, THIS CASE.

12:13PM  4        THE OTHER DEADLINES THAT YOU HAVE HERE SEEM APPROPRIATE

12:13PM  5    THAT YOU HAVE SUGGESTED.  THANK YOU FOR MEETING AND CONFERRING

12:13PM  6    AND LOOKING AT YOUR SCHEDULES TO REACH AGREEMENT ON A SCHEDULE

12:13PM  7    THAT IS APPROPRIATE FOR ALL OF YOU.

12:13PM  8        SO I'LL ADOPT EXHIBIT F.

12:13PM  9        AS TO THE COURT'S RULING ON RULE 16, YOU HEARD ME GIVE MY

12:13PM  10   PRELIMINARY THOUGHTS AND IDEAS ABOUT GOING FORWARD WITH THE

12:13PM  11   DISCOVERY ORDER.  I'M GOING TO ISSUE A WRITTEN ORDER AND

12:13PM  12   HOPEFULLY GET THAT OUT SHORTLY.  I APPRECIATE THE COMMENTS OF

12:13PM  13   THE GOVERNMENT AS TO WHY SHOULD WE CHANGE THINGS NOW, IT SEEMS

12:13PM  14   TO BE WORKING THE WAY IT'S GOING FORWARD.

12:13PM  15       I THINK THERE'S SOME CURRENCY TO THAT.  THINGS HAVE BEEN

12:13PM  16   PROCEEDING, AND I'M GLAD WE HAVE COUNSEL ON THE LINE.

12:13PM  17       ALTHOUGH I TOLD MR. WADE, I THINK IN OCTOBER, THAT, WELL,

12:13PM  18   MAYBE I'LL HAVE COUNSEL HEAR STANDING AT THE LECTERN WHERE

12:14PM  19   YOU'RE STANDING, MR. WADE.  I SUPPOSE WE'RE MOVING IN THAT

12:14PM  20   DIRECTION.  COUNSEL APPEARED TELEPHONICALLY NOW, AND IT MAY BE

12:14PM  21   THAT THEY'LL -- I'LL ASK THEM TO COME AND JOIN US IN SAN JOSE

12:14PM  22   AT SOME TIME IN THE FUTURE IF NEED BE.

12:14PM  23       LET ME ASK YOU, NOTWITHSTANDING THE SCHEDULE HERE, IS

12:14PM  24   THERE A NEED TO REQUEST -- A DESIRE FOR US TO MEET AGAIN AT

12:14PM  25   SOME TIME?

12:14PM  1          ANYONE HAVE THOUGHTS ABOUT THAT?

12:14PM  2              MR. WADE:  YOUR HONOR, MAYBE JUST A CONTROL DATE ON

12:14PM  3     THIS ISSUE.  I KNOW WE'VE TALKED BEFORE ABOUT WANTING TO AVOID

12:14PM  4     THAT FIFTH HEARING, AND MY HOPE AND EXPECTATION IS THAT WE

12:14PM  5     WILL, BUT IT WOULD SEEM LIKE THINGS SEEM TO HAPPEN WHEN PEOPLE

12:15PM  6     ARE GOING TO APPEAR IN FRONT OF THE COURT AND HAVING A CONTROL

12:15PM  7     DATE FOR WHATEVER ACTIONS THE COURT ORDERS I THINK MIGHT BE

12:15PM  8     APPROPRIATE.

12:15PM  9              THE COURT:  SURE.  WELL, YOUR SCHEDULE SUGGESTS I

12:15PM  10    THINK IT'S FEBRUARY 10TH FOR HEARING ON THE 12(B) MOTIONS.

12:15PM  11         SO WOULD YOU WANT SOMETHING IN JANUARY THEN?  LET ME GIVE

12:15PM  12    YOU A MOMENT TO MEET AND CONFER ON THAT.

12:15PM  13              MR. BOSTIC:  THANK YOU, YOUR HONOR.

12:15PM  14         (DISCUSSION OFF THE RECORD.)

12:15PM  15              MR. WADE:  ASSUMING, BASED ON THE DIRECTION FROM THE

12:15PM  16    COURT AS TO WHERE THE ORDER WILL COME OUT BEING BY THE END OF

12:15PM  17    THE YEAR AND MAYBE A DATE JANUARY 13TH, A COUPLE WEEKS AFTER

12:15PM  18    THAT SO WE'RE ABLE TO ASSESS WHERE THE AGENCIES ARE.

12:15PM  19         OF COURSE, IF THERE IS FULL COMPLIANCE WITH THE ORDER WE

12:16PM  20    CAN ADVISE THE COURT AND TAKE THAT DATE -- I'M SURE THE COURT

12:16PM  21    WOULD NOT OBJECT TO US NOT APPEARING IF WE DON'T HAVE ANYTHING

12:16PM  22    TO DISAGREE ABOUT.

12:16PM  23              THE COURT:  HOW DOES THAT LOOK, MS. KRATZMANN?

12:16PM  24              THE CLERK:  IN THE MORNING, YOUR HONOR, YOU'RE

12:16PM  25    AVAILABLE.

12:16PM  1              THE COURT:  IS THE MORNING GOOD?

12:16PM  2              MR. BOSTIC:  YES, YOUR HONOR.

12:16PM  3              MR. WADE:  THAT WORKS.

12:16PM  4              THE COURT:  MORNING?

12:16PM  5              MR. COOPERSMITH:  YES, YOUR HONOR.

12:16PM  6              THE COURT:  SHOULD THAT BE 10:00 A.M.,

12:16PM  7    MS. KRATZMANN?

12:16PM  8              THE CLERK:  YES, YOUR HONOR.

12:16PM  9              THE COURT:  ALL RIGHT.  LET'S SET THAT THEN.

12:16PM 10         JANUARY 13TH, JANUARY 13TH AT 10:00 A.M. FOR FURTHER

12:16PM 11    STATUS.  AGAIN, THAT'S A RESERVE, A PLACEHOLDER DATE, SHOULD IT

12:16PM 12    BE REQUIRED.  WE'LL SEE YOU BACK THEN.

12:16PM 13         OF COURSE, IF YOU NEED TO EVER HAVE ACCESS TO THE COURT,

12:16PM 14    YOU JUST NEED TO CALL MS. KRATZMANN FOR ANY INTERIM DATE AND

12:16PM 15    SHE CAN SET THAT, AND I'LL BE HAPPY TO ACCOMMODATE AS BEST WE

12:16PM 16    CAN.

12:16PM 17         AGAIN, I'M MOVING WITH YOU COLLABORATIVELY TO MOVE THE

12:17PM 18    CASE FORWARD AS BEST AS POSSIBLE.  THAT'S MY GOAL HERE.

12:17PM 19              MR. WADE:  WE APPRECIATE THE ACCOMMODATION.

12:17PM 20              THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

12:17PM 21              MR. BOSTIC:  AT THE LAST APPEARANCE IN THIS MATTER

12:17PM 22    THE GOVERNMENT REQUESTED THAT THE COURT ORDER THE PARTIES TO

12:17PM 23    MEET AND CONFER.  I THOUGHT IT WAS IMPORTANT THAT THERE WAS A

12:17PM 24    COURT ORDER TO REQUIRE THAT TO HAPPEN.

12:17PM 25         I WON'T MAKE THAT REQUEST AGAIN.  I THINK THAT THAT

12:17PM 1    CONVERSATION WILL CONTINUE IN GOOD FAITH, BUT IF THE COURT IS

12:17PM 2    INCLINED TO ORDER IT, OF COURSE THE PARTIES ARE HAPPY TO COMPLY

12:17PM 3    WITH THAT.

12:17PM 4          THE COURT:  WELL, MR. WADE'S OBSERVATION SEEMED TO

12:17PM 5    BE THAT PEOPLE, FOR WHATEVER REASON, SEEM TO FOLLOW COURT

12:17PM 6    ORDERS, OR NOT WAS HIS OBSERVATION AS WELL.

12:17PM 7       SO I'LL PROBABLY INCORPORATE SOMETHING LIKE THAT IN THE

12:17PM 8    ORDER.

12:17PM 9       MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY, ANYTHING ELSE

12:17PM 10   YOU WOULD LIKE TO ADD BEFORE WE DISENGAGE THE LINE?

12:17PM 11         MS. MARTINEZ-RESLY:  YOUR HONOR, THIS IS

12:17PM 12   JACKLYN MARTINEZ-RESLY.

12:17PM 13      I JUST WANTED TO CORRECT THE RECORD ON ONE POINT.  I THINK

12:17PM 14   I HEARD MR. BOSTIC AT SOME POINT SAY THAT THE FDA HAS ADDRESSED

12:17PM 15   ALL OF THE EXAMPLES THAT THE DEFENDANT HAD BROUGHT TO ITS

12:18PM 16   ATTENTION, TO FDA'S ATTENTION WITH RESPECT TO THE SCOPE OF THE

12:18PM 17   REDACTIONS, AND I JUST WANTED TO STATE THAT THE FDA HAS NOT

12:18PM 18   GOTTEN BACK WITH RESPECT TO THE, WITH RESPECT TO THE EXAMPLES

12:18PM 19   ATTACHED TO DOCUMENT 170 BUT WILL DO SO SHORTLY.

12:18PM 20         THE COURT:  OKAY.

12:18PM 21         MS. MARTINEZ-RESLY:  AND THAT'S IT.

12:18PM 22         THE COURT:  THANK YOU VERY MUCH.

12:18PM 23      MS. TURNER?  MS. NORTON?

12:18PM 24         MS. TURNER:  YOUR HONOR, THIS IS MS. TURNER.

12:18PM 25       THERE IS NOTHING FURTHER.

12:18PM  1          THE COURT:  GREAT.

12:18PM  2          MS. NORTON:  AND NOTHING FURTHER FROM ME, YOUR

12:18PM  3  HONOR.  MS. NORTON.

12:18PM  4          THE COURT:  THANK YOU VERY MUCH.

12:18PM  5       THANK YOU, MS. KRATZMANN.

12:18PM  6     MS. MARTINEZ-RESLY, MS. NORTON, MS. TURNER, THE JANUARY

12:18PM  7  STATUS CONFERENCE, I'M INVITING YOU TO JOIN US AGAIN AT THIS

12:18PM  8  POINT TELEPHONICALLY, AND IF THAT CHANGES, WHICH IS TO SAY IF I

12:19PM  9  REQUEST YOUR PRESENCE HERE IN SAN JOSE, WE'LL LET YOU KNOW IN A

12:19PM  10  TIMELY MANNER AS WELL.

12:19PM  11          MS. MARTINEZ-RESLY:  THANK YOU, YOUR HONOR.

12:19PM  12          THE COURT:  ALL RIGHT.  THANK YOU.  MS. DAW,

12:19PM  13  ANYTHING FURTHER?

12:19PM  14          MS. DAW:  NO, YOUR HONOR.  THANK YOU.

12:19PM  15          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  GOOD

12:19PM  16  SEEING YOU ALL.

12:19PM  17     THE TIME EXCLUSION REMAINS IN PLACE TO THE TRIAL DATE AS

12:19PM  18  PREVIOUSLY INDICATED.

12:19PM  19          MR. DOWNEY:  THANK YOU, YOUR HONOR.

12:19PM  20          THE CLERK:  COURT IS CONCLUDED.

12:19PM  21       (COURT CONCLUDED AT 12:19 P.M.)

         22

         23

         24

         25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18         DATED:  NOVEMBER 7, 2019
19

20

21

22

23

24

25