1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    UNITED STATES OF AMERICA,              Case No. 5:18-cr-00258-EJD

             Plaintiff,

9                                           **ORDER GRANTING IN PART &
                                            DENYING IN PART DEFENDANTS'
10        v.                                MOTION TO DISMISS THE
                                            SUPERSEDING INDICTMENT FOR
11   ELIZABETH A. HOLMES and RAMESH         LACK OF NOTICE; DENYING
     "SUNNY" BALWANI,                       MOTION TO DISMISS SUPERSEDING
12                                          INDICTMENT FOR FAILURE TO
             Defendants.                    ALLEGE FALSITY; GRANTING IN
13                                          PART & DENYING IN PART
                                            DEFENDANTS' MOTION TO DISMISS
14                                          COUNTS TWO AND NINE THROUGH
                                            ELEVEN OF SUPERSEDING
15                                          INDICTMENT**

16                                          Re: Dkt. Nos. 204, 205, 206

17       Defendants Elizabeth Holmes and Ramesh "Sunny" Balwani are charged with nine counts

18  of wire fraud in violation of 18 U.S.C. § 1343 and two counts of conspiracy to commit wire fraud

19  in violation of 18 U.S.C. § 1349.  The charges stem from Defendants' allegedly deceptive

20  representations about their company, Theranos, and its technology.  Three motions are before the

21  Court: (1) Defendants'[1] motion to dismiss the superseding indictment for lack of notice and, in the

22  alternative, for a bill of particulars; (2) Defendants' motion to dismiss the superseding indictment

23  in part for failure to allege falsity and motion to strike; and (3) Defendants' motion to dismiss

24

_____

25  [1] While Defendant Holmes brought the three motions to dismiss, Defendant Balwani joined each
    motion and reply.  *See* Dkt. Nos. 207, 208, 209, 306, 307, 308.

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
    GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
28  COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

                                        1

United States District Court
Northern District of California

counts two and nine through eleven of superseding indictment.  Having had the benefit of oral

argument on February 10, 2020 and having considered the Parties' papers, the Court **GRANTS in**

**part** and **DENIES in part** Defendants' (1) motion to dismiss for lack of notice and (2) motion to

dismiss counts two and nine through eleven and **DENIES** Defendants' motion to dismiss for

failure to allege falsity.

## I.    BACKGROUND

### A.  Factual Background

Defendant Holmes founded Theranos, a health care and life sciences company, in 2003.

Superseding Indictment ¶ 1 ("SI"), Dkt. 39.  Defendant Holmes served as the Chief Executive

Officer of the company.  *Id.*  Defendant Balwani served as a board member, the President, and the

Chief Operating Officer of Theranos.  *Id.* ¶ 2.

Theranos' stated mission was to revolutionize medical laboratory testing through its

allegedly innovative methods of drawing blood, testing blood, and diagnosing patients.  *Id.* ¶ 5.

During the company's first ten years, it pursued the development of proprietary technology that

could run clinical tests using only tiny drops of blood.  *Id.*  Theranos also worked to develop a

method for drawing only a few drops of capillary blood from a patient's finger using a small

lancet.  *Id.*  That blood was then stored in a "nanotainer."  *Id.*  Theranos sought to develop a

second device, termed the "TSPU" (Theranos Sample Processing Unit), "Edison," or "miniLab,"

that could quickly and accurately analyze blood samples collected in the nanotainer.  *Id.*  The

Government contends that the promises of these devices were never realized; the devices

"consistently" produced inaccurate and unreliable results.  *Id.*  Despite this, Defendants began a

publicity campaign to promote the company.  And, in September 2013, Theranos offered blood

testing at Walgreens' "Wellness Centers" in California and Arizona.  *Id.* ¶ 10.

The Government argues that Defendants conspired to commit and committed two

fraudulent schemes: a scheme to defraud investors and a scheme to defraud doctors and patients.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
2

United States District Court
Northern District of California

The Court outlines these below.

**Scheme to Defraud Investors.**  Defendants allegedly made materially false and misleading statements to investors and failed to disclose material facts to investors.  Based on the false statements, investors invested money in Theranos.  Specifically, from 2013 to 2015, Defendants made misstatements regarding:

1. **Theranos' Proprietary Analyzer:** Defendants allegedly made misstatements about Theranos' proprietary analyzer—the TSPU, Edison, or miniLab—when they claimed the analyzer was presently capable of accomplishing certain tasks, with more precision than other blood tests, and at a faster rate, when, in fact, Defendants knew these statements were false.  *Id.* ¶ 12(A).

2. **Theranos' Financial Health:** Defendants allegedly misrepresented Theranos' financial well-being when they told investors the company was financially strong and stable and would make huge profits in 2014 and 2015 when, in fact, they knew Theranos would only generate modest revenue.  *Id.* ¶ 12(B).

3. **Technology Demonstrations:** Defendants allegedly deceived investors through misleading technology demonstrations where they intended to cause potential investors to believe blood tests were being conducted on Theranos' proprietary analyzer when, in fact, Defendants knew the analyzer was operating in "null protocol."  *Id.* ¶ 12(C).

4. **Walgreens' Partnership:** Defendants allegedly misled investors when they told them Theranos had an expanding partnership with Walgreens when, in fact, the Walgreens rollout had stalled due to concerns with Theranos' performance.  *Id.* ¶ 12(D).

5. **United States Department of Defense ("DOD") Relationship:** Defendants allegedly told investors the company had a profitable and revenue-generating business relationship with the DOD and that Theranos technology was deployed on the battlefield.  In fact, Defendants knew that Theranos had limited revenue from military contracts and that its

United States District Court
Northern District of California

technology was not used in the battlefield. *Id.* ¶ 12(E).

6. **Food and Drug Administration ("FDA") Approval:** Defendants allegedly misled investors when they told investors that Theranos did not need the FDA to approve its proprietary analyzer and tests when, in fact, Defendants knew this to be false. *Id.* ¶ 12(F).

7. **Patient Testing:** Defendants allegedly told investors that patient tests were conducted using Theranos manufactured analyzers. In fact, Defendants knew that Theranos used third-party, commercially available analyzers. *Id.* ¶ 12(G).

8. **Peer Review:** Defendants allegedly falsely told investors that Theranos technology had been examined, used, and validated by several national or multinational pharmaceutical companies and research institutions. *Id.* ¶ 12(H).

9. **Media Representations:** Defendants allegedly made the false and misleading statements described above to reporters and then shared the resulting articles directly with potential investors and via the Theranos website. *Id.* ¶ 12(I).

**Scheme to Defraud Doctors and Patients.** The Government argues from 2013 to 2016, Defendants advertised and marketed Theranos technology to doctors and patients and falsely claimed that the tests were accurate and reliable. *Id.* ¶¶ 15–16. Claims about Theranos technology were implicit and explicit. *Id.* ¶ 15. Despite knowing that Theranos' technology[2] suffered from recurring accuracy and reliability problems, Defendants allegedly advertised the tests as accurate and reliable. *Id.* ¶ 17. Specifically, Defendants used materially false and misleading marketing materials and advertisements and transmitted Theranos blood results that Defendants knew contained, or likely contained, inaccurate information. *Id.* For instance, Theranos' public website touted its labs ability to perform tests "quickly and accurately on samples as small as a single

---

[2] The SI names specific blood tests—"calcium, chloride, potassium, bicarbonate, HIV, HbA1C, hCG, and sodium"—but also notes that the list of known, inaccurate blood tests is not limited to this list. SI ¶ 16.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

4

United States District Court
Northern District of California

drop." *Id.* ¶ 9.  Defendants also allegedly provided reports to patients that contained or were likely to contain: (1) inaccurate and unreliable results; (2) improperly adjusted reference ranges defining a normal or healthy result for a given test; (3) improperly removed "critical" results, *i.e.* results suggesting a patient needed medical attention; and (4) results generated from improperly validated assays, further decreasing the reliability of those tests.  *Id.* ¶ 17.

### B.  Procedural History

Defendants filed three motions to dismiss.  The first motion argues the SI must be dismissed because it is unconstitutionally vague.  Motion to Dismiss Superseding Indictment for Lack of Notice and, in the Alternative, for a Bill of Particulars ("Notice Mot."), Dkt. 204.  The Government opposes this motion and argues that the SI is not vague because it gives Defendants sufficient information to understand their charges.  United States' Opposition to Defendants' Motion to Dismiss Superseding Indictment for Lack of Notice, and, in the Alternative, for a Bill of Particulars ("Notice Opp."), Dkt. 265.  Defendants maintain that the SI fails to provide adequate notice.  Reply in Support of Motion to Dismiss Superseding Indictment for Lack of Notice ("Notice Reply"), Dkt. 296.

The second motion argues that the SI must be dismissed because it does not support a conclusion that Defendants' alleged statements and omissions were materially false.  Motion to Dismiss Superseding Indictment in Part for Failure to Allege Falsity ("Falsity Mot."), Dkt. 205.  The Government opposes this.  United States' Opposition to Defendants' Motion to Dismiss the Superseding Indictment in Part for Failure to Allege Falsity and Motion to Strike ("Falsity Opp."), Dkt. 266.  In their Reply, Defendants maintain that material falsity is not shown in the SI.  Reply in Support of Motion to Dismiss in Part for Failure to Allege Falsity ("Falsity Reply"), Dkt. 297.

The third motion argues that the counts in the SI (counts two and nine through eleven) must be dismissed because they fail to allege the required element of specific intent to commit wire fraud.  Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

("Counts Mot."), Dkt. 206.  The Government opposes this.  United States' Opposition to Defendants' Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment ("Counts Opp."), Dkt. 267.  Defendants maintain that these counts fail to allege intent to defraud.  Reply in Support of Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment ("Counts Reply"), Dkt. 298.

The Court addresses each motion in turn.

## II.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF NOTICE AND, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS

### A.  Lack of Notice

#### 1.  Legal Standard

Federal Rule of Criminal Procedure 7 requires that an indictment contain a "plain, concise, and definite written statements of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  To pass constitutional muster, an indictment must

> furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge.

*United States v. Cecil*, 608 F.3d 1294, 1297 (9th Cir. 1979); *but see Russell v. United States*, 369 U.S. 749, 763 (1962)) ("[W]here the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." (quotation mark and citation omitted)).

At the motion to dismiss stage, "the issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case."  *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).  So long as the indictment contains the "essential facts

United States District Court
Northern District of California

necessary to apprise a defendant of the crime charged," the indictment must stand. *Id.* "Because the requirement of a sufficient indictment serves these important purposes, the indictment must be considered as it was actually drawn, not as it might have been drawn." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *see also United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment.").[3]

### 2. Analysis

The essential elements of wire fraud are: (1) a scheme to defraud; (2) the use of a wire, radio, or television to further the scheme; and (3) a specific intent to defraud. *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017).[4]

Defendants argue that because wire fraud is "generic in nature," the SI must contain factual particularity above and beyond the generic statutory language. Notice Mot. at 3. In Defendant's view, because materially false or fraudulent representations are "part and parcel" of wire fraud, an indictment must go beyond the "generic" requirements of wire fraud and specify, in detail, the particular fraudulent representations and pretenses that make up an alleged scheme to defraud. *Id.* at 4. The Government rebuts this and argues that Defendants are on "fair notice" of what they will face at trial. Notice Opp. at 7. In the Government's view, the SI outlines Defendants' overall schemes to defraud investors, patients, and doctors, and provides details about those schemes. *Id.* at 3–4. The Government contends that an indictment need not allege verbatim quotes to adequately provide notice. *Id.* at 11. The Government argues the SI is constitutionally sound because it provides details about the "substance" of the allegations and so Defendants have "fair

---

[3] For this reason, the Court does not consider Defendants' arguments about what the Government's motions assert. *See, e.g.*, Notice Reply at 1.

[4] Conspiracy requires an agreement "among two or more persons that would satisfy the elements of the substantive offense of wire fraud." *United States v. Hussain*, 2017 WL 4865562, at *5 (N.D. Cal. Oct. 27, 2017). Hence, to state a charge of conspiracy, the indictment must adequately specify the underlying fraud.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
7

notice" about what they will face at trial. *Id.* at 8.

Defendants rely primarily on *Russell v. United States*, 369 U.S. 749 (1962), *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974), and *United States v. Keuylian*, 23 F. Supp. 3d 1126 (C.D. Cal. 2014). In *Russell*, the Supreme Court held that the indictment was unconstitutionally vague. 369 U.S. 754–55. There, the defendants were convicted of refusing to answer certain questions posed by a congressional subcommittee. *Id.* at 752. The indictment, however, failed to identify the subject matter under congressional subcommittee inquiry. *Id.* This, the Supreme Court concluded, was a constitutional violation because the underlying charge depended on the subject-matter of the questions. *Id.* at 764, 768. The indictment's failure to contain the subject-matter that was under inquiry resulted in two main problems: (1) the defendant would be forced to proceed to trial with a "cryptic" indictment that leaves the "chief issue[s] undefined" and (2) the prosecution could fill in the gaps of an indictment by "surmise or conjecture." *Id.* at 766. The Supreme Court thus held that the indictment failed the constitutional requirement of fair notice. *Id.*

In *Cecil*, the Ninth Circuit held that the indictment's "glaring lack of factual particularity" ran afoul of the fair notice requirement. 608 F.2d at 1294. There, the "rather barren" indictment mostly tracked the text of the relevant conspiracy statutes. *Id.* at 1296. It only made "two specific allegations concerning the conspiracies:" (1) it identified the locations of the conspiracy and (2) it stated the names of the alleged conspirators. *Id.* at 1297. The indictment, however, failed to place the conspiracies within any timeframe or provide any facts or circumstance about the conspiracy. *Id.* The complete lack of factual allegations prevented the defendants from understanding the charges and preparing a defense.

Likewise, in *Curtis*, the Tenth Circuit held that the indictment was so vague that "the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury." 506 F.2d at 989. There, the defendant founded a dating service.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Id.* at 986–87.  All the indictment alleged was that the service was a sham, it provided no detail as

2    to why it was a sham.  *Id.*  Thus, on appeal, the court concluded that the indictment was

3    unconstitutionally vague because it contained no language about *what* conduct formed the scheme.

4    *Id.* at 992

5           Finally, in *Keuylian*, the court held that the indictment had to be dismissed because it

6    tracked the statutory language.  23 F. Supp. 3d at 1129.  The indictment never stated the alleged

7    false statements, misrepresentations, or false pretenses that constituted the scheme to defraud.  *Id.*

8           Defendants admitted at oral argument that the SI contains more detail than the indictments

9    at issue in the above cases.  Nevertheless, they argue that this case is analogous to those cases.

10   Defendants argue that because this case focuses on two complex, immense, and vast schemes, the

11   above cases support the requirement of an indictment with more specificity.  The SI's factual and

12   temporal span makes the omission of details like the names of speaker(s) and the targets, dates,

13   context, and verbatim wording of misstatements unconstitutional.

14          But Defendants misread *Russell*, *Cecil*, *Curtis*, and *Keuylian*.  Admittedly, none of these

15   cases require an indictment to contain such extensive detail.  The vastness of the schemes alleged

16   do not change this conclusion—the Government need not allege in the indictment its case theory

17   or the evidence underlying the charges.  The Government must only provide enough facts to

18   apprise a defendant of what defense should be prepared for trial.  Hence, the Government need not

19   allege specific misstatements to meet the "fair notice" requirement.  This is confirmed by *United

20   States v. Buckley*, 689 F.2d 893 (9th Cir. 1982).  "[A]n indictment should be: (1) read as a whole;

21   (2) read to include facts which are necessarily implied; and (3) construed according to common

22   sense."  *Id.* at 899.  Common sense, not specific allegations is the standard.  *See Curtis*, 506 F.2d

23   at 990 ("While the particulars of the scheme . . . must be described with a degree of certainty

24   sufficient to . . . fairly to acquaint the defendant will [sic] the particular fraudulent scheme charged

25   against him, still the scheme itself need not be pleaded with all the certainty in respect of *time*,

26   Case No.: 5:18-cr-00258-EJD

27   ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

*place, and circumstance . . . .*" (emphasis added)).

Reading the indictment as a whole and with common sense, the Court holds that the SI is constitutionally sound because it:

- **Establishes a Particular Factual Universe.** The SI establishes the "universe" of facts giving rise to the charges. For instance, paragraphs four through nine adequately apprise Defendants that Theranos' statements promising "quick" and "accurate" diagnostic blood testing using "a single drop [of blood]" are at issue and underlie the wire fraud and conspiracy charges. *Compare* SI ¶¶ 4–9, *id.* § 10 (describing Theranos' partnership with Walgreens, their alleged fraudulent promises, and other facts giving rise to the charges), *with Keuylian*, 23 F. Supp. 3d at 1129 (dismissing indictment because it failed to describe any of the deceptive acts underlying the alleged scheme to defraud and thus only showed willful breach of contract).

- **States the Acts Underlying the Investor Scheme.** After establishing that Theranos' representations about their blood tests form the basis of the SI, the indictment informs Defendants *what* misrepresentations underlie the scheme to defraud investors. *See* SI ¶¶ 11–12 (establishing relevant time period as 2013–2015); *cf. Cecil*, 608 F.2d at 1297 (noting indictment's failure to establish a relevant timeframe). The SI informs Defendants that nine misrepresentations form the basis of the scheme and thus that Defendants should focus their defense on these nine areas. *Compare* SI ¶ 12 (claiming Theranos misrepresented its "proprietary analyzer," financial strength, use and examination of technology, partnership with Walgreens, U.S. Department of Defense, and FDA), *with Curtis*, 506 F.2d at 992 (holding indictment failed to provide notice because it lacked any detail as to what conduct formed scheme).

- **States the Acts Underlying the Doctor/Patient Scheme.** The SI also informs Defendants what conduct underlies the scheme to defraud doctors and patients. *See* SI ¶ 14 (establishing relevant time period as 2013–2016); *cf. Cecil*, 608 F.2d at 1297 (noting indictment's failure to establish a relevant timeframe). The SI apprises Defendants that the conduct underlying this scheme is Theranos' allegedly deceptive "advertisements and marketing materials" that stated Theranos could provide "accurate, fast, reliable, and cheap blood tests and test results." SI ¶ 15; *see also id.* ¶ 12(C) (alleging Defendants transmitted false blood tests). Hence, unlike *Russell*, where the Supreme Court held the indictment invalid because it failed to specify the subject-matter underlying the charges, the SI tells Defendants the alleged misconduct forming the indictment. 369 U.S. at 754–55.

Defendants argue that even while the SI informs them of the events underlying the charges, it nonetheless remains vague because it raises more questions and thus fails to provide fair notice.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

10

United States District Court
Northern District of California

United States District Court
Northern District of California

1   For instance, Defendants point to Paragraph 12(A), which alleges that Defendants misrepresented

2   the capabilities of their proprietary analyzers.  Defendants argue the term "proprietary analyzer" is

3   vague since Theranos had many "proprietary analyzers."  But, read as a whole, the SI defines

4   "proprietary analyzers" as the Edison, miniLab, or TSPU.  Next, Defendants contend that no

5   timeframe is given as to the misrepresentations and that the range of statements the SI could cover

6   is too vast.  But the indictment expressly confines the investor scheme timeframe to 2013–2015

7   and informs Defendants about the subject-matter of the alleged misstatements.  SI ¶¶ 11, 12.

8        Defendants next argue that the FDA claim is vague because FDA guidance documents

9   indicated that Theranos did not need to obtain clearance.  Notice Mot. at 6.  The Government

10  argues they have contrary evidence.  Notice Opp. at 10.  This amounts to an evidentiary dispute.

11  The indictment stage, however, "is not the appropriate time to require the Government to present

12  its proof."  *Buckley*, 689 F.2d at 900.  Ironically, the fact that Defendants can pick apart the truth

13  of the events in the indictment indicates that the SI is constitutionally sound—it means Defendants

14  *know* what they will face at trial.  *Cf.* Notice Mot. at 6 (arguing the *substance* of the Walgreens

15  allegation); *see also Curtis*, 506 F.2d at 987–88 (citing Form 3 of the Appendix of Forms annexed

16  to the Federal Rules of Criminal Procedure which requires false statements be alleged in substance

17  only and not by quotation).

18       Finally, Defendants argue Count Two is similarly vague because the Government fails to

19  define "reliable and accurate" or the meaning of "held out."  Notice Mot. at 8.  But, Count Two

20  expressly limits its factual universe to "advertisements and marketing materials" and "test results."

21  *See* SI ¶¶ 16–17.  The indictment, read as a whole, clarifies that Defendants are charged with

22  implicitly[5] and explicitly claiming that Theranos' tests could consistently produce accurate and

23

---

24  [5] Because the Court determines that the SI contains sufficient factual particularity to inform
    Defendants what events underlie the charged counts, the Court finds that Defendants' arguments

25  about what conduct constitutes a misrepresentation and what "implicit" means better suited for the
    Bill of Particulars analysis.

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO

27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;

28  GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
    COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

reliable results when, in fact, it could not.  *See Buckley*, 689 F.2d at 899.  Indeed, as Paragraph 9 of the SI states, the company's public website stated that Theranos' lab could perform tests "quickly and accurately on samples as small as a single drop."  Because Defendants know both the statutes they allegedly violated and the conduct underlying those alleged violations, the SI is particularized enough to provide fair notice and Defendants' motion to dismiss for lack of fair notice is **DENIED**.[6]

### B.  Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars."  A bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense and is "designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy."  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) ("The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense.").  A defendant, however, is not entitled to "know all the evidence the government intends to produce, but *only the theory* of the government's case."  *Yeargain*, 314 F.2d at 882 (emphasis added).  The decision to require a bill of particulars is within a trial court's broad discretion.  *Long*, 706 F.2d at 1054.

Defendants seek an order compelling the Government to identify (1) the details concerning the alleged false or fraudulent representations or omissions, (2) the names of persons who may testify about being deceived, (3) the names of all known coconspirators, and (4) the facts giving rise to an alleged duty to disclose and any material omissions that are alleged to have violated that

---

[6] The Court does not reach the Government's *United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) argument.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
12

duty.  The Court addresses each in turn.

**1.  Details Concerning the Alleged False or Fraudulent Representations**

Defendants contend that for Counts One and Two, the Government must specify the false and fraudulent representations allegedly made by Defendants and any coconspirator(s) during the course of the two frauds.  Defendants further argue that the Government must identify (1) who made the representation, (2) the precise content of the representation, (3) the form of the representation, *i.e.* oral or written, (4) the date of the representation, (5) to whom the representation is alleged to have been made, and (6) the manner in which the representation is claimed to be false or fraudulent.  *Id.* at 10.

Defendants contend that "[i]n cases less substantial than this one in scope and complexity, courts have ordered the government to identify the specific false or misleading statements." Notice Reply at 7.  As support, Defendants cite to *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), *United States v. Caine*, 270 F. Supp. 801 (S.D.N.Y. 1967) (holding bill of particulars required because indictment had no explanation about why the representations were false and misleading), and *United States v. Trie*, 21 F. Supp.2d 7 (D.D.C. 1998).

In *Bortnovsky*, the Second Circuit held that the district court erred in denying the defendants' motion for a bill of particulars.  820 F.2d at 573.  There, the defendants were indicted for engaging in a scheme to defraud a federal agency.  *Id.*  The indictment alleged that defendants "submit[ted] false claims for burglary losses to the Federal Insurance Administration" and "the New York Property Insurance Underwriting Association."  *Id.* at 574.  While the indictment provided a list of suspect pieces of mail along with their approximate dates of mailing and addresses, it failed to specify the dates of the staged burglaries or enumerate which of the numerous documents were falsified.  *Id.*  Thus, the "relevance of the key events was shrouded in mystery at the commencement of and throughout the trial" meaning the defendants were "forced to explain . . . events . . . unrelated to the charges pending.  *Id.* at 574–75.  The defendants' ability

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

13

United States District Court
Northern District of California

1   to view the 4,000 pages of documents at issue before trial was unhelpful because they had to

2   assess the "mountains of documents" without guidance as to which documents were relevant and

3   only had four days to complete the task.  *Id.*  Hence, without a bill of particulars as to which

4   documents and burglaries were fraudulent, the defendants could not adequately prepare a defense

5   for trial.  *Id.*

6          Likewise, in *Trie*, the court granted the defendant's motion for a bill of particulars and

7   ordered the government to provide information as to "exactly what the false statements [were],

8   what about them [was] false, who made them, and how [the defendant] caused them to be made."

9   21 F. Supp. 2d at 22.  There, the defendant was indicted for, among other things, making false

10  statements to the government.  *Id.* at 13.  The government provided the defendant with 45 pages of

11  excerpts in which the statements were contained.  *Id.* at 21.  The pages contained "175 names" and

12  "a variety of information about each person or entity listed."  *Id.*  This, the court held, rendered the

13  disclosure insufficient because "a defendant faced with false statements charges should not have to

14  waste precious pre-trial preparation time guessing which statements he has to defend against or

15  which contributor may be witnesses against him."  *Id.*

16         Defendants argue this case is more complex than *Bortnovsky*, *Caine*, and *Trie* and thus a

17  bill of particulars is required.  Notice Reply at 7.  First, Defendants highlight that in the

18  Government's three recently filed oppositions, it offers a new theory of its case.  *Id.* at 8 ("[T]he

19  government now claims to base its case in part on supposed 'implicit' representations without

20  identifying a basis for implying such representations.").  They argue that they cannot determine

21  the "implicit representations" at issue when the SI provides no further detail as to this theory.  *Id.*

22  Second, Defendants argue the conspiracy and schemes to defraud are vast—they span at least

23  three years and implicate the operations of a company that employed many hundreds of persons.

24  *Id.*; *cf. United States v. Stukenbrock*, No. 5:15-cr-00034-EJD at , Dkt. 143 (N.D. Cal. filed June

25  26, 2018) (denying bill of particulars after noting that scheme was "not particularly complex or

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28  GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
    COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

1  difficult to comprehend").

2      The Government argues that here, in contrast to *Bortnovsky*, *Caine*, and *Trie*, the SI gives

3  "notice of specific misrepresentations Defendants will need to address at trial" and thus goes

4  beyond the "generic" indictments at issue in three discussed cases.  Notice Opp. at 14; *see also*

5  *United States v. Bidloff*, 82 F. Supp. 2d 78, 84–85 (W.D.N.Y. 1999) ("[A]lthough the court in

6  *Caine* granted further particulars as to the specific pretenses . . . the indictment . . . failed to

7  provide any indication as to the substance of the falsehoods. . . . [It does not] establish[] a general

8  rule that particularization of specific false pretenses is required in every mail fraud prosecution.").

9  The Government also contends that Defendants have received extensive discovery that discloses

10 the scope of the evidence against them.[7]  Notice Opp. at 14–15.  In light of this discovery, the

11 Government argues a bill of particulars is unnecessary.  *Id.* at 16 (citing *United States v. Giese*,

12 597 F.2d 1170, 1180 ("[T]he government provided appellant with a large volume of information,

13 including physical evidence offered at trial, grand jury testimony, and memoranda which revealed

14 the government's theory of the case.  Full discovery also obviates the need for a bill of

15 particulars.")).

16     While the Government has provided Defendants with witness interviews, as demonstrated

17 by *Trie* this is not always specific enough to overcome the need for a bill of particulars.  Indeed,

18 the witness interviews do not identify the alleged misrepresentations.  Further, the universe of

19 potential misrepresentations is vast—the Government claims that Defendants made

20 misrepresentations to the media, on the Theranos website, and in advertisements and marketing

21 materials.  This is especially true for the doctor/patient fraud.  *See* SI ¶¶ 14–17 (confining the

22 scheme to "implicit and explicit" false claims made in Theranos "advertisements and marketing

23

24 _____

   [7] Additionally, the Government argues that Defendants delay in bringing this motion for a bill of
25 particulars and their ability to litigate the case without a bill shows a bill of particulars is
   unnecessary.  Notice Opp. at 15.
26 Case No.: 5:18-cr-00258-EJD
   ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27 DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
   TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28 GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
   COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
                                    15

United States District Court
Northern District of California

materials" but not labeling specific types of materials or the type of implicit conduct at issue); *cf.*
*Caine*, 270 F.3d at 806.  The Government's theory of "implicit" representations only expands the
scope of possible misrepresentations and the SI lacks any clear explanation of the Government's
implicit misrepresentation case theory.  In contrast, the investor fraud describes the specific type
of misrepresentations at issue.  *See id.* ¶ 12.  Defendants thus are not left to guess about the
Government's investor-fraud case theory.

Finally, much like in *Bortnovsky*, the discovery in this case is immense.  *See* Notice Reply
at 9 ("The government has produced more than 20 million pages of documents."); *cf. Trie*, 21 F.
Supp. 2d at 21 (finding 45 pages of excerpt testimony with 175 names prohibitive).  These
realities create a substantial risk that Defendants may be unfairly surprised at trial.  Accordingly,
the Government must provide Defendants information as to the **doctor/patient fraud**.  The
Government shall identify (1) the specific implicit and explicit false and fraudulent
misrepresentations in the advertisements and marketing materials, (2) what about them is false, (3)
who made them, and (4) how Defendants caused them to be made.  This includes the particular
tests that the Government claims Theranos was not capable of consistently producing.  *See
Bortnovsky*, 820 F.2d at 574 (noting that a defendant should not be forced to prepare unnecessary
defenses); *Trie*, 21 F. Supp. 2d at 21 (noting that a defendant should not have to guess about what
statements he will have to defend against).

### 2.   Names of Investors, Doctors, or Patients Who May Testify

"It is not uncommon for the Government to be required to disclose the names of some
potential witnesses in a bill of particulars, where the information is necessary or useful in the
defendant's preparation for trial."  *Will v. United States*, 389 U.S. 90, 99 (1967).  This must be
balanced against the proposition that a bill of particulars is "not to obtain disclosure of evidence or
witnesses to be offered by the Government at trial."  *United States v. Nachamie*, 91 F. Supp. 2d
565, 570 (S.D.N.Y. 2000).

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
16

1   Defendants argue they need a list of victims who may testify so that they can prepare to

2   confront those witnesses.  Notice Mot. at 11.  They argue this is necessary to "help the defense

3   attempt to identify the statements at issue."  Notice Reply at 11.  At present, however, the

4   Government has already disclosed to Defendants the names of alleged victims.  Notice Opp. at 17

5   ("Defendants have full access to all of the information in the government's possession concerning

6   the victims and how they might testify . . . .");  *see also* Notice Reply at 11 ("The government has

7   interviewed more than 120 witnesses and continues to interview more.").  Defendants, thus,

8   already have the names of people who may testify.  Accordingly, the request for names of victims

9   who may testify is **denied**.

10   **3.  Names of All Known Conspirators**

11   Courts regularly employ a six-factor test to evaluate whether the Government should

12   identify unnamed coconspirators.  *United States v. Barrett*, 153 F. Supp. 3d 552, 572 (E.D.N.Y.

13   2015).  They look to: (1) the number of co-conspirators; (2) the duration and breadth of the alleged

14   conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars;

15   (4) the volume of pretrial disclosure; (5) the potential danger to coconspirators and the nature of

16   the alleged criminal conduct; and (6) the potential harm to the Government's investigation.  *Id.*;

17   *see also United States v. Feil*, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (granting bill of

18   particulars requiring the government to name unnamed coconspirators due to lengthy duration and

19   scope of conspiracy and the heavy volume of discovery); *cf. United States v. DiCesare* 765 F.2d

20   890, 897 (9th Cir. 1985) (holding that it was not an abuse of discretion to deny the defendant's

21   request for a bill of particulars as to the names of coconspirators).

22   Defendants argue that the Government should identify all known coconspirators charged in

23   counts one and two.  *See* SI ¶¶ 20, 22 (alleging conspiracies among Defendants and "other known

24   and unknown to the Grand Jury").  They contend that in cases with sprawling indictments that

25   allege complex schemes, like this, courts regularly require the names of coconspirators to be

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
17

United States District Court
Northern District of California

1    disclosed.  They further argue that because the SI does not identify the speaker of the alleged

2    misrepresentations, an "unbounded set" of possible coconspirators exists and Defendants may be

3    unfairly surprised at trial by such coconspirator testimony.  Notice Mot. at 12.  Hence, they argue,

4    the universe of speakers must be limited.

5           The Government opposes this request and contends that it need not identify unnamed

6    coconspirators because Defendants fear of unfair surprise is unfounded.  Notice Opp. at 18.  The

7    Northern District of California's Criminal Local Rules already requires detailed pre-trial

8    disclosure of any co-conspirator statements intended to be offered under Fed. R. Evid.

9    801(d)(2)(E).  The Government also argues that the case law does not support the Defendants'

10   request.  Other cases that required a bill of particulars as to the unnamed coconspirators had more

11   defendants.  *Id.* at 18 (citing *United States v. Bazezew*, 783 F. Supp. 2d 160 (D.D.C. 2011)).

12          The Government's argument as to mandatory disclosures misses the mark.  There is no

13   guarantee the Criminal Local Rules will ameliorate the alleged lack of notice.  Coconspirator

14   statements could be offered for something other than "the truth of the matter asserted."  Moreover,

15   the number of named defendants in a case is irrelevant; it does not bear on the unfair surprise

16   inquiry.  Here, the relevant factors counsel towards requiring the Government to name all known

17   coconspirators.  First, the number of co-conspirators is vast.  Second, while the alleged

18   conspiracies only spanned three years, the scope of the alleged conspiracies is broad—they cover a

19   vast range of alleged misrepresentations made to investors, doctors, and patients about Theranos'

20   products and productivity.  Third, the SI is vague as to who else (beyond the Defendants) may be a

21   coconspirator.  Fourth, the volume of discovery is immense—millions of pages of documents have

22   been produced.  *Cf. Feil*, 2010 WL 1525263, at *3 (noting that the 70,000 plus pages of discovery

23   counseled in favor of granting bill of particulars as to request for coconspirator names).  Fifth, the

24   danger of harm to the coconspirators is not present in this case.  *See Nachamie*, 91 F. Supp. 2d at

25   573 ("[T]here is no legitimate concern that disclosing the names of unindicted coconspirators will

26   Case No.: 5:18-cr-00258-EJD
     ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
     GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
28   COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

1   endanger those individuals or compromise the Government's investigation. . . . [T]his case charges

2   Medicare fraud—not narcotics trafficking or murder . . . .").

3       While these factors may counsel in favor of granting Defendants' request, the fear of unfair

4   surprise is obviated by the Court granting Defendants' first request for a bill of particulars as to the

5   specific misrepresentations pertaining to the doctor-patient fraud.  This requires the Government

6   to provide the names of speakers.  *Cf.* Notice Mot. at 12 (discussing how it is impracticable for

7   Defendants to guess at the "universe of speakers").  Accordingly, this request is **denied** as to count

8   two but **granted** as to count one.

9               **4.   Facts Giving Rise to an Alleged Duty to Disclose/Material Omissions**

10      Defendants seek a bill of particulars about what facts underlie the Defendants' material

11  omissions and their duty to disclose.  *See* SI ¶¶ 13, 15, 24.  They argue that the SI lacks a

12  description of the alleged material omissions and fails to describe the basis of the alleged duty to

13  disclose.  Thus, they contend, the Government must identify (a) who made the alleged omission,

14  (b) precisely what is alleged to have been omitted, (c) when that omission is alleged to have

15  occurred, (d) the nature of the alleged duty to disclose, (e) to whom the duty allegedly was owed

16  and to whom the omission is alleged to have been directed, and (f) the manner in which the

17  omission is claimed to be fraudulent.  Notice Mot. at 13.  The Government argues in response the

18  SI already alleges the facts that Defendants withheld from their victims, like that Theranos relied

19  on third-party analyzers for its tests and that its Walgreens rollout had stalled.

20      The SI only alleges that Defendants had a "duty to disclose" "material facts."  It says

21  nothing about the *type* of duty or *what* facts must be disclosed.  *See, e.g.*, SI ¶ 11.  In another

22  opposition, however, the Government argues a "duty of trust" existed between Defendants and

23  investors and that Defendants' alleged "half-truths" gave rise to a duty to correct.  *See* Falsity Opp.

24  at 9.  Likewise, the Government grounds its omissions theory in the already-alleged material

25  misrepresentation—for instance, the Government argues that by telling investors the Walgreens

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28  GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
    COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

                                            19

United States District Court
Northern District of California

1    relationship was growing, when in fact it had stalled, Defendants omitted material information that

2    they had a duty to disclose.  Hence, Defendants can infer the Government's case-theory and there

3    is no need for a bill of particulars.  *See Yergain*, 314 F.2d at 882 (noting that a bill of particulars is

4    permissible to understand the Government's "theory of the . . .case").  Accordingly, this request is

5    **denied.**

6    ### III.   DEFENDANTS' MOTION TO DISMISS SUPERSEDING INDICTMENT IN PART FOR FAILURE TO ALLEGE FALSITY AND MOTION TO STRIKE

7

8             Defendants argue the SI fails to state an offense for conspiracy to commit wire fraud

9    because it fails to allege material falsity in Paragraphs 12(D), 12(E), and 16.  Falsity Mot. at 3–4.

10   They contend that the SI must be dismissed insofar as it relies on these allegations and that the

11   allegations should be struck to avoid prejudice.  *Id.* at 4.  Defendants further argue that the SI fails

12   to allege facts sufficient to support a fraud-by-omission theory because it alleges no duty to

13   disclose and identifies no material omissions.  *Id.* at 6.

14           **A.  Legal Standard**

15           Rule 7 requires that an indictment contain "a plain, concise, and definite written statements

16   of the essential facts constituting the offense charged."  Fed. R. Crim P. 7(c)(1).  An indictment's

17   failure to detail each element of the charged offense generally constitutes a "fatal defect."  *United*

18   *States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979); *see also United States v. Carroll*, 2015 WL

19   2251206, at *1 (N.D. Cal. May 13, 2015) ("An indictment fails to state an offense if it does not

20   allege facts which, if proven, would constitute a violation of 'the statute, rule, regulation, or other

21   provision of law that the defendant is alleged to have violated.'" (quoting Fed. R. Crim P.

22   7(c)(1))).

23           The Government argues that an indictment must be "liberally construed in favor of

24   validity."  Falsity Opp. at 4 (quoting *United States v. Holden*, 806 F.3d 1227, 1233 (9th Cir.

25   2015)).  This is the standard for post-trial review.  *Compare United States v. James*, 980 F.2d

26   Case No.: 5:18-cr-00258-EJD

27   ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

28

United States District Court
Northern District of California

1   1314, 1317 (9th Cir. 1970) ("When the sufficiency of the indictment is challenged *after trial*, it is

2   only required that the necessary facts appear in *any form* or *by fair construction* can be found

3   within the terms of the indictment." (quotation marks and citation omitted) (first emphasis

4   added)), *with United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("The timing of the

5   defendant's objection is important to the level of scrutiny employed; a defendant who objects to

6   the indictment *before* trial . . . is entitled to *a more exacting review* of the indictment than one who

7   waits until after trial to object." (emphasis added)).  Hence, because this is a pretrial challenge to

8   the indictment, the "liberal construction" standard advocated by the Government is misplaced.

9   The relevant inquiry is whether the SI contains sufficient detail to state an offense for wire fraud

10  or conspiracy to commit wire fraud.  *See, e.g.*, *Carroll*, 2015 WL 2251206 at *1.

11      **B.  Analysis**

12          **1.  Wire Fraud/Conspiracy to Commit Wire Fraud**

13          Wire fraud requires: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or

14  television to further the scheme; and (3) a specific intent to defraud."  *Lindsey*, 850 F.3d at 1013.

15  It is well-settled that materiality is an element of a "scheme or artifice to defraud" under the

16  federal wire fraud statute.  *Neder v. United States*, 527 U.S. 1, 21–25 (1999).  Material falsehood

17  may be proven by means other than a specific false statement.  *United States v. Omer*, 395 F.3d

18  1087, 1088 (9th Cir. 2005).  *Neder*, however, makes clear that in order to prove fraud, the

19  Government must prove the materiality of the falsehoods.  527 U.S. at 20–25.  An indictment's

20  failure to recite an essential element of the charged offense, namely materiality, is a fatal flaw that

21  requires dismissal of the indictment.  *Omer*, 395 F.3d at 1089.

22          The Government argues that, under this standard, it need not allege specific

23  misrepresentations because a scheme to defraud may rest on something other than false

24  statements.  Falsity Opp. at 4–5.  But this misses the point—the SI explicitly alleges that

25  Defendants made "materially false and misleading *statements* . . . and failed to disclose material

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
    GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
28  COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
    21

United States District Court
Northern District of California

facts." SI ¶ 12. The issue, thus, is not whether an indictment must plead specific misrepresentations, but whether the indictment sufficiently alleges materiality as to the misstatements at issue.[8]

"[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder*, 527 U.S. at 16 (internal quotations and alterations omitted). An indictment need not explain all factual evidence to be proved at trial. *United States v. Blinder,* 10 F.3d 1468, 1476 (9th Cir.1993).

Three alleged false statements are at issue: (1) the statements made to investors concerning the Walgreens contract, see SI ¶ 12(D); (2) the statements made to investors concerning the profitability of military contracts, see SI ¶ 12(E); and (3) the statements made to doctors and patients concerning the accuracy and reliability of the blood tests, see SI ¶ 16. Specifically, the SI alleges:

- Defendants told investors that Theranos had an "expanding partnership" with Walgreens when, in fact, the partnership "had stalled" by late 2014. SI ¶ 12(D).

- Defendants told investors they had a profitable relationship with the U.S. Department of Defense, and that Theranos technology had been deployed to the battlefield when, in fact, Defendants knew Theranos had limited revenue from its military contracts and that Theranos technology had not been deployed to the battlefield. *Id.* ¶ 12(E).

- Defendants told doctors and patients that their devices could provide "accurate, fast,

---

[8] There is some tension between *United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) and *Omer*, 395 F.3d 1087. *Woods* seems to require that materiality be shown as to *each* alleged misstatement. *See* 335 F.3d at 1000 ("*All* deceptive or misleading statements, false statements and half-truths, which are generally referred to as statements, and concealed, omitted and nondisclosed facts . . . *must be material to form the basis* of mail or wire fraud charges." (emphasis added)); *see also* Falsity Opp. at 5 (arguing alleged misstatements can be considered as material evidence of the fraud); *United States v. Hossain*, 2014 WL 4354125, at *3 (D. Nev. Sept. 2, 2014) (analyzing the four alleged false statements and finding that each was material). In contrast, *Omer* states only the "materiality of the scheme or artifice must be alleged" and that "the materiality of the specific statement need not be pleaded." 395 F.3d at 1089. This begs the question—pursuant to *Omer*, may the Court assess the statement's materiality in light of the whole indictment, *or* must the Court assess each statement's materiality individually? Because *Omer* did not concern alleged misstatements, while *Woods* did, the Court follows *Woods*' instruction that each misstatement must be "material" to form the basis of the wire fraud charges.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

22

1    reliable, and cheap blood tests and test results," when, in fact, they knew that these
tests could not "consistently produc[e] accurate and reliable results."  *Id.* ¶ 16.

2    Defendants fixate on the minute details in the indictment, like what the meaning of

3    "consistently" is.  *See* Falsity Reply at 4–5.  They also argue with semantics and point out that

4    Theranos could have an "expanding partnership" with Walgreens, even if it, at one point, had

5    "stalled."  This misunderstands the relevant standard at a motion to dismiss phase.  *See Buckley*,

6    689 F.2d at 897 (noting that at the motion to dismiss stage, "the issue in judging the sufficiency of

7    the indictment is whether the indictment adequately alleges the elements of the offense . . . not

8    whether the Government can prove its case."  At trial, the defense may argue about the meaning of

9    Defendants' Walgreens representations.  But, *at this stage*, such arguments are not appropriate; the

10   relevant inquiry is whether the indictment adequately alleges the elements of the offense.

11   Materiality does not require alleged misstatements to be accurate—it only requires the alleged

12   misstatements to have a "natural tendency to influence."  The three above statements exceed this

13   standard; the first two tend to give the false impression to an investor that Theranos' business was

14   growing, that it was a profitable company, and that it was a good investment.  Likewise, the third,

15   tends to give a false impression to the doctor and patient that Theranos' technology would provide

16   accurate results.  The SI thus sufficiently alleges a factual basis for its claim that the alleged

17   misrepresentations were material.

18   ### 2.  Fraud-by-Omission Theory

19   "It is settled in this Circuit that a scheme to defraud need not be an active

20   misrepresentation.  A nondisclosure or concealment may serve as a basis for the fraudulent

21   scheme."  *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*,

22   473 U.S. 207 (1985).  The ability to use an omission to form the basis of a scheme to defraud is

23   narrow.  *Id.* at 1450.  It may only be used "when there exists an independent duty (either fiduciary

24   or derived from an explicit and independent statutory requirement) and such a duty has been

25   breached."  *Id.*  A contrary rule would bring "almost any illegal act within the province of

26   Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO

27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;

28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the . . . fraud statute." *Id.* Hence, an indictment must allege facts giving rise to a duty to disclose.

2    *See United States v. Lonich*, 2016 WL 324039, at *8 (N.D. Cal. Jan. 27, 2016) (holding that if the

3    government wishes to prosecute based on an omissions theory, the indictment must allege that

4    defendant owed a duty to disclose); *see also United States v. DuBo*, 186 F.3d 1177, 1179 (9th Cir.

5    1999) ("Implied, necessary elements, not present in the statutory language, must be included in an

6    indictment.").

7        The SI alleges that Defendants omitted material facts that they had a "duty to disclose."

8    *See* SI ¶¶ 11, 12, 15. Defendants argue that the Government may not proceed with its fraud-by-

9    omission theory because the Government has not sufficiently alleged that they had a duty to

10   disclose information to investors, doctors, or patients. Falsity Mot. at 6. The Government rebuts

11   this and contends that Defendants had a duty to disclose omitted, material information pursuant to

12   a "duty of trust" and a "duty to correct" half-truths. Falsity Opp. at 8.

13       Half-truths and omissions are distinct concepts. *See, e.g.*, *United States v. Sumeru*, 449 F.

14   App'x 617, 621–22 (9th Cir. 2011) (noting that half-truths and omissions are different legal

15   theories); *United States v. Petrossi*, 786 F. App'x 286, 288–89 (2d Cir. 2019). An actionable

16   omission occurs when the defendant *fails* to speak despite the existence of a duty requiring him to

17   speak. In contrast, in a half-truths case, the duty to disclose arises because critical qualifying

18   information was omitted from speech. While half-truths create a "duty to correct" speech,

19   omissions trigger an independent duty to speak. Both, however, create a "duty to disclose." *See*

20   SI ¶ 11, 12, 15. Because omissions and half-truths are distinct theories, the Court addresses each

21   in turn.

22       Regarding omissions, the Government argues that an independent "duty of trust" existed

23   between Defendants and their investors. "Fiduciary" is a broad term; it encompasses "informal"

24   trusting relationships where one party "acts for the benefit of another and induces the trusting

25   party to relax the care and vigilance which it would ordinarily exercise." *United States v. Shields*,

26   Case No.: 5:18-cr-00258-EJD

27   ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;

28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

844 F.3d 819, 822–23 (9th Cir. 2016).  The Government argues that by making misrepresentations to investors, Defendants induced investors to relax their ordinary care and vigilance and thus entered into a "trusting relationship" with the investors.  Falsity Opp. at 9.  In other words, because the misrepresentations led investors to trust Defendants, Defendants owed investors a duty of trust and were required to disclose all material omitted information, *i.e.* information about Theranos' financial status, technological ability, etc.  *Id.*  Defendants argue rooting a duty of trust in the representation itself threatens to "swallow[s] the *Shields* rule . . . by permitting juries to convict on the basis of omissions whenever the government also alleges false statements, without any independent duty to disclose."  Falsity Reply at 8–9; *see also Dowling*, 739 F.2d at 1449 (noting that omissions-liability is narrow).

Defendants fear is misplaced.  Simply alleging that a defendant misrepresented something to an investor does not create a duty of trust.  Rather, the inquiry is whether the facts alleged in the indictment show that a defendant, acting for the benefit of an investor, induced the investor to relax the care and vigilance they would ordinarily exercise.  *See Shields*, 844 F.3d at 822–23.  Here, the SI does this—as shown in Paragraph 12(C), Defendants used deceptive technology demonstrations to reassure investors that Theranos' proprietary technology worked.  Likewise, as shown in Paragraphs 12(F) and 12(H), Defendants induced investors to trust Theranos technology by misrepresenting that *others*, like the FDA, concluded that the technology worked.  Moreover, Defendants, were both officers of Theranos; their position indicated that they knew about Theranos' technology.  Accordingly, Defendants alleged misrepresentations were sufficient to relax an investors ordinary duty of care because they purposefully caused an investor to believe that Theranos was successful, profitable, and a secure investment.  The SI thus sufficiently alleges that Defendants "duty to disclose" material omissions to investors was rooted in a duty of trust.  *See* SI ¶ 11, 12.

Regarding half-truths, "even in the absence of a trust relationship," one "cannot

affirmatively tell a misleading half-truth about a material fact." *See United States v. Laurienti*, 611 F.3d 530, 541 (9th Cir. 2010); *see also United States v. Harder*, 116 F. Supp. 3d 1197, 1206 (D. Or. 2015) ("Omissions of material fact and half-truths may be used to establish a scheme to defraud."); *United States v. Montgomery*, 384 F.3d 1050, 1063–64 (9th Cir. 2004) (holding the defendant's half-truths and concealment of material facts was actionable fraud). Half-truths and concealment may be premised on verbalized words, the arrangement of words, or the circumstances in which they are conveyed. *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967).

In the alternative to a duty of trust, once Defendants made inflated representations about Theranos' success and profitability, they needed to tell the "whole truth," *i.e.*, that Theranos' profitability was declining and that its partnership with Walgreens was stalling. Likewise, by representing their tests as "accurate" and "reliable," Defendants had a duty to disclose to doctors and patients that their tests "consistently" produced wrong results. Defendants argument that the Government is "transforming" the duty to correct asserted half-truths into an independent duty to disclose is thus misplaced. Falsity Reply at 9.

The SI alleges that Defendants "omitted" information that they had a duty to disclose. SI ¶¶ 11, 12, 15–17, 26. Hence, read as a whole, see *Buckley*, 689 F.2d at 899, the SI alleges that Defendants had (1) a duty of trust with investors and, pursuant to that duty, had a duty to disclose material information about Theranos' technology and profitability to investors, (2) a duty to disclose to investors the "whole truth" about Theranos' technology and profitability based on their "half-truths," and (3) a duty to disclose to doctors and patients the "whole truth" about Theranos blood tests' accuracy and reliability based on their "half-truths." *Cf.* Falsity Mot. at 7 (arguing certain paragraphs contain only "boilerplate allegations of unspecified omissions). Accordingly, Defendants motion to dismiss for failure to allege falsity is **DENIED.**

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY; GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

United States District Court
Northern District of California

1

2

### IV. DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

3       Defendants argue that counts two and nine through eleven, which relate to the scheme to

4  defraud doctors and patients, must be dismissed because they do not allege that Defendants acted

5  with the specific intent to obtain money or property from any doctors or patients through deceit.

6  Counts Mot. at ECF 7.  Defendants contend that the SI's shortcomings are twofold: first, counts

7  two and nine through eleven fail to allege that Defendants intended to deprive non-paying patients

8  and doctors of their money or property.  *Id.*  Second, the counts fail to allege that Defendants

9  intended to deprive patients of the benefit of the bargain.  *Id.*  The Court addresses each in turn.

10      **A. Scheme to Obtain Money or Property from Victims**

11      As noted, to prevail on a charge of wire fraud, the Government must prove: (1) a scheme to

12  defraud; (2) the use of a wire, radio, or television to further the scheme; and (3) a specific intent to

13  defraud.  *United States v. Lindsey*, 850 F.3d at 1013.[9]  On a motion under Federal Rule of

14  Criminal Procedure 12, the failure to allege facts that, if proven, would satisfy the intent element

15  of the offense is a fatal defect requiring dismissal of the indictment.  *See United States v. Mitchell*,

16  867 F.2d 1232, 1233 (9th Cir. 1989) ("To charge a scheme to defraud under section 1341,

17  *McNally* requires an allegation that Mitchell intended to deprive the city of money or property.

18  The indictment in this case is devoid of any such allegation." (citations omitted)).

19      "[F]or purposes of the mail fraud statute, the thing obtained must be property in the hands

20  of the victim."  *Cleveland v. United States*, 531 U.S. 12, 15 (2000); *see also Carpenter v. United*

21  *States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in

22  relevant part, and accordingly we apply the same analysis to both sets of offenses here.").  The

23

24  [9] A conspiracy under Section 1349 "requires an agreement among two or more persons that would
satisfy the elements of the substantive offense" of wire fraud.  *Hussain*, 2017 WL 4865562, at *5.

25  Accordingly, an indictment charging conspiracy to commit wire fraud must specify the underlying
fraud.  *See supra* n.3.

26

27

28

specific intent element of wire fraud, thus, "must be [the intent] to obtain money or property from the one who is deceived." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989); *see also United States v. Ali*, 620 F.3d 1062, 1071 (9th Cir. 2010) ("[U]nder *Lew*, Microsoft must be the victim from whom property was taken."); *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 927 (9th Cir. 2000) ("The purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings.").

### 1.   "Non-Paying" Patients[10]

The SI acknowledges that many of the alleged patient victims did not pay for Theranos tests and so Defendants argue that these patients are not "victims" under *Lew*.  Counts Mot. at ECF 9; *see also* SI ¶ 15 ("Based on [Defendants'] representations, [about Theranos's ability to provide accurate, fast, reliable, and cheap blood tests and test results] many hundreds of patients, paid, *or caused their medical insurance companies to pay*, Theranos, or *Walgreens acting on behalf of Theranos*, for blood tests and tests results . . . ." (emphasis added)).  Defendants thus argue that portions of the SI that rely on "non-paying" patient victims must be dismissed.

In *Lew*, the Ninth Circuit held that the defendant could not be convicted of mail fraud because the government failed to allege and prove that the defendant had the specific intent to deprive the alleged victim of property or money.  875 F.2d at 222.  There, the defendant, an immigration attorney, allegedly misrepresented his immigrant-client's employment status to the Department of Labor.  *Id.* at 220–21.  The government argued that defendant intended to defraud his immigrant-clients of money because he made them pay a fee and deceived them into believing that they could lawfully become permanent residents.  *Id.* at 220.  The court, however, disagreed and found that there was no evidence that the defendant intended to deceive his clients.  *Id.*

---

[10] This class of patients refers to patients who did not pay for the blood-tests because their insurance provider paid in full for the test.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
28

United States District Court
Northern District of California

1    Rather, the evidence showed that the defendant intended to deceive the Department of Labor. *Id.*

2    at 221. The jury instructions permitted the defendant to be convicted for wire fraud even though

3    the money was not received from the party deceived. *Id.* at 221, 222. This, the court held, was

4    improper because it failed to instruct the jury about the requisite convergence between the intent to

5    defraud and the intent to deprive a victim of money or property. *Id.* at 222. Due to this, the wire

6    fraud convictions were reversed. *Id.* at 222.

7         *Ali* maintains *Lew*'s requirement of convergence. In *Ali*, the defendants devised a scheme

8    in which they fraudulently obtained software and then resold the software for a profit. 620 F.3d at

9    1064. Microsoft sells Academic Edition ("AE") software through its Authorized Education

10   Reseller ("AER") program. *Id.* Only authorized distributors could sell AE software and they

11   could only sell it to AERs. *Id.* at 1064–65. The defendants fraudulently attained AER status by

12   creating new companies under false names to purchase existing AER companies. *Id.* at 1065.

13   This allowed the defendants to acquire and distribute AE software without ever becoming an

14   authorized distributor, thus diverting potential profits from Microsoft. *Id.* The Ninth Circuit first

15   determined that the diversion of profits qualified as "money or property" because it ultimately

16   denied Microsoft their right to full payment for AE software. *Id.* at 1067. The court next

17   concluded that there was convergence—the alleged victim, Microsoft, lost money. *Id.* at 1068.

18   Accordingly, the defendants had the "intent to defraud" Microsoft.

19        Pursuant to *Lew* and *Ali*, the indictment must show that the defendant intended to deprive

20   the alleged victim of their money or property. The Government does not allege that the patient-

21   victims had a property interest in receiving accurate test results or not being medically harmed.

22   *But see* Counts Opp. at 3–4 (discussing the trauma experienced by patients who received false

23   results); *cf. United States v. Slay*, 717 F. Supp. 689, 692 (E.D. Mo. 1989) (finding that while

24   *Carpenter* holds certain intangible property rights are within the scope of the wire fraud statute,

25   the right to accurate information is not a cognizable property interest); *United States v. Sadler*, 750

26   Case No.: 5:18-cr-00258-EJD
     ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

F.3d 585, 591 (6th Cir. 2014) ("[E]thereal right to accurate information doesn't fit within [limited property rights protected by wire fraud statute]."); *Cleveland*, 531 U.S. at 27 ("Absent clear statement by Congress, we will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States."); *McNally v. United States*, 483 U.S. 350, 359–60 (1987), *overruled on other grounds by Skilling v. United States*, 561 U.S. 358 (2010) ("The Court has often stated that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher one only when Congress has spoken in clear and definite language.").

Instead, the Government argues the SI sufficiently alleges that Defendants deprived patient-victims of "the money that Theranos's customers would pay for testing services." Counts Opp. at 1. But there is a fundamental issue with the Government's theory—some customers did not pay for their blood tests. Indeed, the SI specifically contemplates that not all patient-victims paid for the test.

- **Paragraph 15:** HOLMES and BALWANI devised a scheme to defraud doctors and patients, through advertisements and marketing materials, through explicit and implicit claims concerning Theranos's ability to provide accurate, fast, reliable, and cheap blood tests and test results, and through omissions concerning the limits of and problems with Theranos's technologies. Based on these representations, many hundreds of patients paid, ***or caused their medical insurance companies to pay***, Theranos, or Walgreens acting on behalf of Theranos, for blood tests and test results, sometimes following referrals from their defrauded doctors.

- **Paragraph 26:** On or about the dates set forth below, within the Northern District of California, and elsewhere, the defendants, for the purpose of executing the material scheme and artifice to defraud doctors and patients, and for obtaining money and property from patients, doctors, ***and insurance companies*** by means of materially false and fraudulent pretenses, representations, promises, and material omissions with a duty to disclose, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and pictures, that is, laboratory and blood test results and payments for the purchase of advertisements soliciting patients and doctors for its laboratory business, as further set forth below, in violation of Title 18, United States Code, Section 1343.

These paragraphs of the SI highlight the problem; the SI acknowledges that two types of patient victims exist—ones who paid and ones whose insurance paid. Much like in *Lew*, there is

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

divergence between the intent to defraud and the harm suffered.  Pursuant to the SI, the non-paying patients did not suffer a monetary harm.  At first glance, this seems like the same scenario as *United States v. Utz*, 886 F.2d 1148 (9th Cir. 1989).  There, the Ninth Circuit noted that it is enough for "the government [to] charge and the jury [to] find either that the victim was actually deprived of money or property *or* that the defendant intended to defraud the victim of the same. *Utz*, 886 F.2d at 1151.  Closer review, however, shows that this case is unlike *Utz*.  The "intent to defraud" still requires convergence; the defendant must intend to deprive the alleged victim of money or property.  *Utz* does not eradicate this requirement.  Under the SI, non-paying patients were not deprived of any money *and* because of their insurance-status, the SI contemplates that Defendants did not intend to deprive them of money.  *Boren*, 278 F.3d at 914 ("D]istrict court is bound by the four corners of the indictment.").  Indeed, insured customers are more like the third-party distributors in *Ali*.  There, the third-party distributors, like the insured customers, were not victims of the scheme because there was no showing that the defendants intended to deprive them of money or property.  *Ali*, 320 F.3d at 1068; *cf. United States v. Bonallo*, 858 F.2d 1427, 1434 n.9 (9th Cir. 1988) (holding that "intent to defraud" met as to bank because bank was a victim of the scheme).

In the alternative, the Government argues that insured patients were deprived money because they paid premiums.  Counts Opp. at 12 ("[P]remiums . . . mean[] that the money health insurance companies use to pay medical service providers is ultimately derived from, and indirectly reimbursed by, the covered patients.  An indirect connection between the victim of the fraud and funds obtained by the fraudster is acceptable . . . .").  But, even in "indirect connection" cases, the victim must still be deprived of their property or money.  *See, e.g.*, *Bonallo*, 858 F.2d at 1434 n.9 (noting that indirect victim, the bank, still was deprived of money); *Ali*, 620 F.3d at 1062 (affirming wire fraud conviction even where Microsoft was not the target of the scheme because Microsoft lost money from the scheme).  Here, in contrast to *Bonallo* and *Ali*, the patients would

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
31

United States District Court
Northern District of California

1   have paid their premiums *regardless* of Theranos' blood tests.  There is no showing or argument

2   by the Government that patients were required to pay a higher premium because of Theranos tests

3   or that premiums were specific for Theranos testing.  Hence, this case is not an "indirect

4   connection" case because insured victims did not lose money.

5          Finally, the Government's reliance on *United States v. Crawford* is misplaced.  *Crawford*

6   holds that a fraud conviction does not require the government to prove the identity of the fraud

7   victim.  239 F.3d 1086, 1092 (9th Cir. 2001).  There, the defendant sold a painting that did not

8   belong to her.  *Id.* at 1089.  The defendant argued on appeal that because ownership of the painting

9   had not yet been established, there was no identifiable victim and the government could not prove

10  she had the specific intent to defraud someone.  *Id.* at 1092.  The court disagreed and held that

11  because she knew she did not own the painting, she intended to deprive the owner, whoever that

12  may be, of its use.  *Id.* at 1093.

13         *Crawford* does not eradicate the requirement that a defendant's "intent must be to obtain

14  money or property from the one who is deceived."  *Lew*, 875 F.2d at 221.  The SI alleges that

15  Defendants intended to defraud two types of patients—ones who paid and ones whose insurance

16  paid for the blood tests.  Indeed, comparative to *Crawford*, where there was only *one possible*

17  *owner* of the painting, here, there are two sources of money.  Thus, even if the Government need

18  not prove specific patients' identities, it still must prove that Defendants intended to deprive the

19  *class* of victims of their money or property.  A contrary finding would make the wire fraud statue

20  limitless; any vague recitation of a class of persons would satisfy the statute.  But this would

21  contravene *McNally* and *Lew* because it would allow distinct sets of victims to be clumped into

22  one group, which would erode any type of convergence requirement.

23         There are four types of possible victims in the doctor/patient scheme: paying patients, non-

24  paying patients, doctors, and insurance companies.  The SI does not allege insurance companies

25  were defrauded.  It does, however, allege that insured patients were defrauded.  But it fails to

26  Case No.: 5:18-cr-00258-EJD
27  ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
    DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28  GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
    COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

1   connect a specific intent to defraud to such patients because it does not show Defendants intended

2   to deprive them of money.  Rather, the SI indicates that the money flowed from the insurance

3   company.  Hence, the SI does not show that Defendants intended to obtain money from the non-

4   paying patient-victims, *i.e.*, the one who was allegedly deceived.  *See id.*

5        For these reasons, the Court **GRANTS** Defendants' motion to dismiss counts two and nine

6   through eleven to the extent they depend on insured and non-paying patient-victims.[11]

7                **2.   Doctors**

8        Defendants next argue that the SI fails to allege that Defendants intended to deprive

9   doctors of money or property.  Counts Mot. at ECF 9.

10       The Government points the Court towards *United States v. Harkonen*, 510 F. App'x 633

11  (9th Cir. 2013).  In *Harkonen*, the Ninth Circuit held that there was sufficient evidence for the jury

12  to find that the defendant knowingly participated in a scheme to defraud and possessed the specific

13  intent to deceive or defraud.  510 F. App'x at 636.  There, the defendant issued a fraudulent press

14  release that overstated a pharmaceutical product's success and was "at least 'capable' of

15  influencing the decision of doctors to prescribe, or patients to seek, prescriptions of [the drug]."

16  *Id.*  Based on this, the jury convicted the defendant of wire fraud and the Ninth Circuit upheld the

17  conviction.  *Id.*

18       *Harkonen* is unhelpful to the Government's case.  It says *nothing* about (1) who the

19  defendant intended to defraud or (2) whether or not a property or money interest was alleged in the

20  indictment.  These are the issues before this Court.  Hence, *Harkonen* is unhelpful in answering

21  the question: can the Government maintain its allegation that Defendants had the specific intent to

22  defraud doctors of property or money?  *See Lew*, 875 F.2d at 222 (requiring a showing of intent to

23

24  [11] The Court does not view the presence of Walgreens as significant.  Theranos sponsored the tests
    and ran the results.  Defendants collected money from paying patients through Walgreens.  Hence,
25  Walgreens presence in the action is irrelevant.  Accordingly, this class of patients includes
    patients, with insurance, who either visited their doctors directly or used Walgreens.

26  Case No.: 5:18-cr-00258-EJD
    ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27  DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
    TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28  GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
    COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
                                    33

United States District Court
Northern District of California

defraud a victim of money or property).

The Court holds that the SI fails to allege that Defendants intended to deprive doctors of their money or property.  The SI alleges that Defendants "induc[ed] doctors to refer and patients to pay for and use its laboratory and blood testing services under the false and fraudulent pretense that Theranos technology produced reliable and accurate blood test results."  SI ¶ 22; *see also id.* ¶ 26 (alleging Defendants intended to defraud doctors of money and property).  The contrast between doctors and patients is plain; the SI alleges patients *paid* while doctors *referred*. Paragraph 26 does not save this conclusion—its bare-bones recitation that Defendants intended to deprive doctors of money or property does not provide the "meat on the bones" sufficient to satisfy the fair notice requirement discussed above.  Moreover, the Government's argument at trial that a specific doctor lost property is unconvincing.  The Court is bound by the four-corners of the indictment which fail to allege that Defendants intended to deprive doctors of their money or property.  *See Boren*, 278 F.3d at 914 (noting that court is bound by four-corners of the indictment).

In the alternative, the Government argues that the doctors were unwilling participants in the alleged scheme and passed along fraudulent information to their patients in recommending Theranos.  Counts Opp. at 12.  The Government relies on *United States v. Ciccone*, 219 F.3d 1078, 1084 (9th Cir. 2000) for support.  But this case is equally unhelpful.

*Ciccone* involved a telemarketing scheme where the defendant's employees made misrepresentations to victims.  219 F.3d at 1083–85.  Specifically, the defendant paid solicitors to telephone people as part of a scheme to get callers to send money to Feed America (the defendant's organization).  *Id.* at 1080.  The solicitors told people that they had won money, a fabulous prize, and the opportunity to donate to charitable causes.  *Id.*  But, first people had to pay a sum to Feed America, who only returned 10% of their donation.  *Id.*  The defendant argued on appeal that he could not be convicted of mail fraud because he did not personally make the calls.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
34

United States District Court
Northern District of California

1    *Id.* at 1083.  The Ninth Circuit rejected this argument and held that, even if he did not make the

2    calls, he directed his solicitor-employees to perpetrate the scheme by (1) providing solicitors with

3    lists identifying victims of other telemarketing schemes and (2) crafting the sales pitch that was

4    "rich with misrepresentations."  *Id.* at 1084.  The defendant's criminal liability was thus premised

5    on his own fraudulent behavior and his own intent to defraud the alleged victims.

6          This case differs from *Ciccone*.  First, there is no showing that Defendants directed doctors

7    to make misrepresentations to their patients.  Indeed, the defrauded doctors were not Theranos

8    employees (at least, pursuant to the SI).  The contrary is alleged.  The SI maintains that the

9    "defrauded doctors" referred patients to Theranos.  SI ¶ 15.  This shows that the doctors were *not*

10   operating at the direction of Defendants.  Second, in *Ciccone*, the alleged victims of the fraud lost

11   money and the defendant intended to defraud those victims.  There was thus convergence.  In

12   contrast, here, there is no showing that the doctors lost money or property or that Defendants

13   intended for them to lose money or property.

14         Furthermore, any similarity between *Ciccone* and this case is unhelpful to the Government.

15   The doctors can be compared to the telemarketer-employees who placed the calls, while the

16   recipients of the calls (the victims) can be compared to the paying patients.  There was no

17   argument that the defendant's telemarketer-employees were victims of the scheme.  *Ciccone*, 219

18   F.3d at 1080.  Thus, any comparison between the cases favors Defendants' argument that the SI

19   does not allege that the doctors were victims of the scheme to defraud.  Accordingly, *Ciccone* is

20   unpersuasive and the Court **GRANTS** Defendants request to dismiss counts two and nine through

21   eleven to the extent they depend on doctor-victims.

22            **B.  Benefit of the Bargain**

23         Defendants next argue that the SI must be dismissed as it relates to *all* patients because it

24   fails to allege that Defendants mispresented the "nature of the deal."  Counts Mot. at ECF 10.  In

25   Defendants view, the patient-victims got "what they paid for."  *Id.* at ECF 11.  The SI alleges that

26   Case No.: 5:18-cr-00258-EJD
     ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

United States District Court
Northern District of California

1    Defendants claimed, through advertisements and marketing materials, that Theranos could

2    produce accurate, fast, reliable, and cheap blood tests and results. SI ¶ 15. While the SI alleges

3    these claims were false, it does not explicitly allege that Theranos could *not* provide accurate, fast,

4    reliable, and cheap blood tests and test results. Counts Mot. at ECF 10. This is where Defendants

5    hang their hat. In their view, because the SI does not explicitly claim that Defendants promised

6    patients a certain result, the SI fails to allege that Defendants misrepresented the nature of the deal.

7         The wire-fraud statute makes criminal any "scheme or artifice to defraud." 18 U.S.C.

8    § 1343. As established above, the statute punishes schemes intended to "deprive [people] of their

9    money or property." *Cleveland*, 531 U.S. at 19. In this instance, that means the indictment must

10   allege that Defendants knowingly used an interstate wire communication to further a scheme to

11   defraud paying[12] patient-victims of their money or property. "Money or property" at first glance

12   seems clear. Indeed, as analyzed above, in the classic scenario, the relevant question is whether a

13   defendant intended to take a victim's money or property? *See, e.g. Ali*, 620 F.3d at 1067

14   (Microsoft deprived of money); *Crawford*, 239 F.3d at 1088 (defendant took property of another).

15        This question can become harder to answer in the commercial setting. In this case,

16   Defendants transacted with patients to provide a blood testing (a service). There is no dispute that

17   some patients paid Theranos for this service. *See* SI ¶ 15. There is, however, a dispute as to

18   whether or not the patients *got what they paid for*. Hence, the relevant inquiry is whether

19   Defendants misrepresented the nature of the bargain. *See United States v. Takhalov*, 827 F.3d

20   1307, 1313 (11th Cir. 2016) ("[A] schemer who tricks someone to enter into a transaction has not

21   'schemed to defraud' so long as he does not intend to harm the person he intends to trick. And

22

23   [12] Because the Court held above that the SI did not allege that Defendants had the SI to deprive
     non-paying patient-victims of their money, this portion of the Order only addresses paying patient-
24   victims, *i.e.* patients who either paid in full for the blood tests or paid a co-pay for the blood test.
     *See supra* IV.A.1. Defendants do not argue that the "benefit of the bargain" theory applies to the
25   doctor-victims and so the Court does not discuss the doctor-victims in this portion of the Order.
     *But see supra* IV.A.2.
26   Case No.: 5:18-cr-00258-EJD
     ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

1   this is so even if the transaction would not have occurred but for the trick."); *United States v.*

2   *Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) ("Our cases have drawn a fine line between schemes that

3   do no more than cause their victims to enter into transactions they would otherwise avoid—which

4   do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a

5   misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud

6   statutes.").

7           In *Takhalov*, the Eleventh Circuit held that, in the commercial context, a "scheme to

8   defraud" refers only to schemes in which a defendant "lies about the nature of the bargain itself."

9   827 F.3d at 1313.  There, the defendants were tried and convicted of wire fraud.  *Id.* at 1310.  The

10  defendants operated clubs and hired Eastern European women to pose as tourists, locate visiting

11  businessmen, and lure them into the defendants' clubs.[13]  *Id.*  The defendants asked for a jury

12  instruction that "[f]ailure to disclose the financial arrangement between the [Eastern European

13  women] and the Bar, in and of itself, is not sufficient to convict a defendant of any offense[.]"  *Id.*

14  at 1311 (first alteration in original).  The Eleventh Circuit held that the district court erred in

15  denying this instruction because the proposed instruction was an accurate statement of law.  The

16  presence of the women was irrelevant ; the victims still got what they "bargained" for.  *Id.* at

17  1315–16.  Hence, a defendant's lie about the nature of the bargain is actionable in two primary

18  forms.  First, the defendant might lie about the price of a good, *i.e.* represent that a good is $5

19  when it is in fact $10.  *Id.* at 1313–14.  Or, the defendant might lie about the characteristics of the

20  good, *i.e.* represent that a product is designer when it is in fact a knock-off.  *Id.* at 1314.

21          The following hypotheticals are instructive.  Imagine you go to the doctor's office for a

22  blood test.  The nurse tells you that before test, he will bring you apple juice.  Instead, because he

23  dislikes you, he brings you cranberry juice.  He takes your blood and you get your (accurate)

24  

---

[13] Part of the scheme involved swindling the men once they were inside the club.  That part of the
scheme was not at issue on appeal and is not discussed herein.

Case No.: 5:18-cr-00258-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT

results.  Did you get what you bargained for?  Yes.  You still got your blood test and received the correct results.  The fact that you got cranberry juice is irrelevant; you did not ask for juice; it was secondary to the core transaction.  Next imagine, you go to the doctor's office for the same blood test.  The nurse comes to your patient-room and tells you about a new type of blood test.  He says this new test only requires a couple drops of blood but remains just as accurate and reliable as a classic blood test.  You agree to use the new test, only to discover later that the test was neither accurate nor reliable.  Have, you been defrauded?  Yes.  Why?  Because the misrepresentation went to the value of the bargain.  You paid for something that you did not receive.  You paid for an accurate and reliable test and, because you did not receive that, you have been deceived about the characteristics of the good.  *See id.* at 1314.

The SI accords with the second scenario.  It alleges that Defendants used advertisements and marketing materials to misrepresent Theranos' ability to provide accurate, reliable, fast, and cheap blood tests.  SI ¶ 15.  It further alleges that Defendants knew that their technology was not capable of producing "accurate and reliable results."  *Id.* ¶ 16.  And, despite knowing about the problems with their technology, Defendants sent out inaccurate test results.  *Id.* ¶ 17.  Part of the bargain struck with consumers was thus that the tests and results would be accurate and reliable.  The accuracy and reliability guarantees were "characteristics" of the good.  *See Takhalov*, 827 F.3d at 1314.  Viewing the indictment as a whole and with common sense, it is plain that it sufficiently alleges that patients did not receive the benefit of the bargain.  *See Giese*, 597 F.2d at 1178 (noting that an indictment must be read with common sense).  They did not receive the accurate and reliable test that they were promised.  Accordingly, this is not the "sweeping expansion" Defendants claim it to be, see Counts Opp. at ECF 12, and the Court **DENIES** Defendants' request to dismiss Counts Two and Nine through Eleven as to paying patient-victims.

United States District Court
Northern District of California

1

## V.     CONCLUSION

2      For the foregoing reasons, the Court:

3      1.   **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss the SI for lack of

4           fair notice.  The Court holds the SI provides Defendants fair notice of the charges they face

5           but orders the Government to produce a bill of particulars as to the specific

6           misrepresentations underlying the doctor-patient fraud and the names of any co-

7           conspirators supporting count one.

8      2.   **DENIES** Defendants' Motion to Dismiss the SI for failure to allege falsity.

9      3.   **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Counts Two and

10          Nine through Eleven.  These counts remain as to paying patients, but to the extent they rely

11          on non-paying patients or doctors, they must be dismissed.

12          **IT IS SO ORDERED.**

13   Dated: February 11, 2020

14

15                                              EDWARD J. DAVILA
                                                United States District Judge
16

17

18

19

20

21

22

23

24

25

26   Case No.: 5:18-cr-00258-EJD
     ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO
27   DISMISS THE SUPERSEDING INDICTMENT FOR LACK OF NOTICE; DENYING MOTION
     TO DISMISS SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE FALSITY;
28   GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS
     COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT