JEFFREY B. COOPERSMITH (SBN 252819)
WALTER F. BROWN (SBN 130248)
MELINDA HAAG (SBN 132612)
RANDALL S. LUSKEY (SBN 240915)
STEPHEN A. CAZARES (SBN 201864)

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1-415-773-5700
Facsimile:    +1-415-773-5759

Email: jcoopersmith@orrick.com; wbrown@orrick.com;
          mhaag@orrick.com; rluskey@orrick.com;
          scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>HOLMES, et al.,<br><br>                    Defendants. | Case No. 5:18-cr-00258-EJD<br><br>**DEFENDANT RAMESH "SUNNY" BALWANI'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS BASED ON PRE-INDICTMENT DELAY**<br><br>Date:     October 6, 2020<br>Time:    10:00 a.m.<br>Judge:   Honorable Edward J. Davila<br>Ctrm:    4, 5th Floor |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION.................................................................................................. 2

II.  STATEMENT OF FACTS ..................................................................................... 3

III.  DISCUSSION ...................................................................................................... 8

    A.  The Sixth Amendment and Rule 48(b) empower courts to dismiss late-filed indictments........................................................................................... 8

    B.  The lengthy delay between the First and Second Superseding Indictments supports dismissal.................................................................... 9

    C.  The lack of justification for the government's delay supports dismissal............. 10

    D.  The volume of and deficiencies in the government's discovery productions explain why Mr. Balwani has agreed to exclude time under the Speedy Trial Act......................................................................... 11

    E.  Mr. Balwani need not show prejudice but will likely suffer it if the new indictments are not dismissed.............................................................. 12

IV.  CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barker v. Wingo*,
    407 U.S. 514 (1972)......................................................................................*passim*

*Doggett v. United States*,
    505 U.S. 647 (1992)..............................................................................................13

*McNeely v. Blanas*,
    336 F.3d 822 (9th Cir. 2003)........................................................................10, 13

*United States v. Cutting*,
    No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017)...............*passim*

*United States v. Gregory*,
    322 F.3d 1157 (9th Cir. 2003)........................................................................8, 9

*United States v. Johnson*,
    299 F. Supp. 3d 909 (M.D. Tenn. 2018)...............................................................8

*United States v. King*,
    483 F.3d 969 (9th Cir. 2007)...............................................................................10

*United States v. Mendoza*,
    530 F.3d 758 (9th Cir. 2008)........................................................................12, 13

**Rules and Other Authorities**

Fed. R. Crim. P.
    Rule 48(b)...................................................................................................*passim*

Fed. R. Evid.
    Rule 404(b)...........................................................................................................6

U.S. Attorney's Office, N.D. Cal., "Discovery Policy"
    Section I.G.1 .........................................................................................................7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 6, 2020, at 10:00 a.m., or at such later date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move this Court for an order dismissing the Second and Third Superseding Indictments on the ground that their late filing violated Mr. Balwani's Sixth Amendment right to a speedy trial and Federal Rule of Criminal Procedure 48(b). This motion is based on the accompanying memorandum of points and authorities, the files and records in this matter, and upon such further argument and evidence as may be presented before and during the hearing.

Dated:  August 28, 2020

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
JEFFREY B. COOPERSMITH

Attorney for Defendant
RAMESH "SUNNY" BALWANI

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3      The government filed Second and Third Superseding Indictments on July 15 and 29, 2020,

4  respectively. *See* Dkt. Nos. 449 & 469. Those charging instruments come more than two years

5  after the original Indictment and almost five years since the government began investigating this

6  case. For the reasons discussed below, the Second Superseding Indictment ("SSI") and Third

7  Superseding Indictment ("TSI") should be dismissed.

8      Despite the government's repeated protestations that only a few words have been changed,

9  the SSI and TSI double the time period of the alleged scheme to defraud investors and the related

10  conspiracy count—changing the range from 2013–2015 to 2010–2015—with relevant facts now

11  reaching back nearly a decade. *Compare* Dkt. No. 39 (FSI) ¶ 20, *with* Dkt. No. 469 (TSI) ¶ 20.

12  The latest indictment also dramatically expands the group of "investor" victims to include

13  "certain business partners" and "members of [Theranos's] board of directors," adding dozens of

14  individuals and at least two giant corporations[1] to the charges. TSI ¶ 3. Instead, the government,

15  which has long known of these events, simply failed to include them in the charges until now. As

16  a result, Mr. Balwani will have to pivot from the work he has been doing since this case began,

17  and potentially re-review much of the discovery—totaling millions of pages of documents in this

18  case—to meet theories that the government could have raised earlier but chose not to. Had Mr.

19  Balwani known from the start that these charges would be levied against him, he would have

20  allocated his resources and approached his defense differently. This burden, combined with the

21  very real prospect of witness memories fading and exculpatory evidence otherwise growing stale,

22  constitutes substantial prejudice to Mr. Balwani. The expanded charges cannot withstand Sixth

23  Amendment scrutiny.

24      The government's belated SSI and TSI both violate Mr. Balwani's rights under the Sixth

25  Amendment's Speedy Trial Clause and justify dismissal based on the Court's power under

26  Federal Rule of Criminal Procedure 48(b). Dismissing an indictment for undue delay under the

27

28

[1] In an August 21, 2020 email, the government identified Walgreens Company and Safeway, Inc. as alleged "business partners."

Sixth Amendment is rooted in an examination of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant.

In *United States v. Cutting*, No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017), Judge Susan Illston dismissed a late-filed superseding indictment under circumstances remarkably like those here. Judge Illston's reasoning is instructive; the court based the *Cutting* dismissal on the government's unjustifiably delayed charging instruments and untimely and deficient discovery productions, as well as the necessary potential for prejudice to the defendant in the form of fading witness memories and otherwise stale evidence. It did not matter that the defendant in *Cutting* had not invoked his Speedy Trial Act rights and had agreed that certain periods of time—necessary to review the vast amounts of discovery—should be excluded from Speedy Trial Act calculations. Because Judge Illston's reasoning in *Cutting* is equally applicable here, Mr. Balwani requests that the Court dismiss the SSI and TSI.

## II.    STATEMENT OF FACTS

The government originally obtained an indictment of Mr. Balwani on June 14, 2018, followed by a superseding indictment on September 6, 2018. *See* Dkt. Nos. 1, 39. The investigation, however, began years before those filings. This earlier investigation included collecting documents about Theranos's "business partners" and board of directors. In other words, the government had everything it needed to bring these new charges in the FSI if not the original Indictment.

***The Theranos–Walgreens relationship.*** Theranos's business partnership with Walgreens was formalized in a July 2010 agreement. *See* Declaration of Jeffrey B. Coopersmith ("Coopersmith Decl."), Ex. A. The government's interest in this relationship began as early as January 2016, when it issued a grand jury subpoena to Walgreens. *Id.*, Ex. B. Walgreens produced responsive documents to the government no later than July 2016. *Id.* The first document in this production was Bates-labeled WAG-TH-DOJ-00013359, meaning that this was not Walgreens' first production to the government. *Id.* That July production was almost *two years* before the government first indicted Mr. Balwani and more than *four and a half years* before the

1   most recent indictment.

2       Besides collecting documents from Walgreens, the SEC and USPIS also interviewed

3   Walgreens' General Counsel in February 2016, again nearly two and a half years before the

4   government's original indictment, and more than four years before its most recent indictment. *See*

5   *id.*, Ex. C. Indeed, strains in Theranos's business relationship with Walgreens had been covered in

6   the press, including in May 2016, when it was reported in the *Wall Street Journal*,[2] and June

7   2016, when it was reported in *Forbes*,[3] giving the government notice of many of the facts

8   underlying its new charges.

9       The SEC's sworn interviews of Walgreens executives continued in August 2016 and April

10  and May 2017. *See* Coopersmith Decl., Ex. D. The SEC gave the DOJ access to its investigative

11  materials in 2016. *Id.*, Ex. E. The last DOJ interview of a Walgreens executive that Mr. Balwani

12  knows of was in October 2019, a full nine months before the government redefined "investor" to

13  include Walgreens as a purported investor victim. *Id.*, Ex. F.

14      Finally, Walgreens initiated a civil action against Theranos in the District of Delaware in

15  November 2016—almost a year and a half before the original indictment—which garnered

16  widespread public attention[4] and gave the government even more information about the

17  relationship.

18      **The Theranos–Safeway relationship.** The government's focus on the relationship

19  between Theranos and Safeway also dates to as early as 2016. The *Wall Street Journal* reported

20  on the end of this relationship, which began in September 2010,[5] no later than November 2015.[6]

21

---

22  [2] Christopher Weaver & John Carreyrou, "Craving Growth, Walgreens Dismissed Its Doubts
23  About Theranos," *W.S.J.* (May 25, 2016), https://www.wsj.com/articles/craving-growth-
    walgreens-dismissed-its-doubts-about-theranos-1464207285.
24  [3] Bruce Japsen, "Walgreens Ends Theranos Relationship, Shutters 40 Blood Test Centers,"
    *Forbes* (June 12, 2016), https://www.forbes.com/sites/brucejapsen/2016/06/12/walgreens-finally-
25  cuts-ties-with-theranos/#79fe39fe64e4.
    [4] *See, e.g.*, Christopher Weaver et al., "Walgreens Sues Theranos, Seeks $140 Million in
26  Damages," *W.S.J.* (Nov. 8, 2016), https://www.wsj.com/articles/walgreens-seeks-to-recover-140-
    million-investment-from-theranos-1478642410; Sy Mukherjee, "Walgreens Trashes Theranos in
27  Their Fiery $140 Million Lawsuit Battle," *Fortune* (Nov. 15, 2016),
    https://fortune.com/2016/11/15/walgreens-theranos-lawsuit-court-documents/.
28  [5] Coopersmith Decl., Ex. G.

Beyond press coverage, the government interviewed the CEO of Safeway in June 2016 and the SEC interviewed Safeway's general counsel in March 2017, both well before the original indictment. Coopersmith Decl., Ex. H.

**The Theranos board of directors.** The government began interviewing members of the Theranos board no later than December 2016, and continued doing so throughout 2017 and 2018. *See id.*, Ex. I. The government also received documents about board members in response to grand jury subpoenas it issued as early as February 2018, four months before the original indictment and almost two and a half years before the most recent charges were filed. *See id.*, Ex. J.

The government has also had access to 2017 and 2018 deposition transcripts of board members and Walgreens and Safeway witnesses from private civil litigation, which the government produced in this matter in August 2018, August and September 2019, and March 2020. *See id.*, Ex. V.

**The patient counts.** Even for the TSI's new patient counts, the government has long been aware of the alleged facts underlying its charges. For example, the government sent the FDA documents about patient M.E. in August 2017 when asking to set up interviews with FDA personnel who worked with Theranos. *See id.* Ex. K; *see also* TSI ¶ 26. And the government subpoenaed patient M.E.'s physician for records no later than October 2017, receiving responsive lab reports for patient M.E. in November 2017. *See* Coopersmith Decl., Ex. L. In fact, the government interviewed M.E. in March 2018, three months before bringing the earliest charges against Mr. Balwani. *Id.*, Ex. M.

The government received patient B.B.'s lab reports in October 2018, almost two years before the most recent indictments. *Id.*, Ex. O; *cf.* TSI ¶ 26.

In short, nothing prevented the government from bringing the new charges in the SSI and TSI years ago.

---

[6] *See* John Carreyrou, "Safeway, Theranos Split After $350 Million Deal Fizzles," *W.S.J.* (Nov. 10, 2015), https://www.wsj.com/articles/safeway-theranos-split-after-350-million-deal-fizzles-1447205796.

***Deficiencies in the government's long-delayed productions.*** While the government had ample time to bring its expanded charges against Mr. Balwani, its own productions to Mr. Balwani have been marred by disorganization and delay.

As just one example, on November 5, 2019, the Court resolved a protracted discovery dispute about production of documents from the FDA and CMS. Dkt. No. 174. That Order required the government and the agencies to complete the production by December 31, 2019. *Id*. This was an extension from earlier Orders under which all responsive documents were to be produced first by October 2, 2019 (Dkt. No. 111), and then by October 25, 2019 (Dkt. No. 134). And despite the government's repeated assurances that it would meet its discovery obligations on time,[7] the government sought a last-minute extension the day before the Court's final deadline, representing that it believed the agencies would finish their productions to DOJ by April 30, 2020. *See* Dkt. No. 215 at 7. While the Court has not yet ruled on that motion, time has not borne out the government's assessment, with productions still coming in as recently as last month and no indication that the government is finished producing documents. Coopersmith Decl. ¶ 16, Ex. P.

Nor are these documents tangential to the government's case against Mr. Balwani. The government's March 23, 2020 bill of particulars mentions the FDA 17 times. *See id.*, Ex. Q. And the government has suggested that it plans to introduce evidence of alleged misrepresentations to the FDA and CMS under Federal Rule of Evidence 404(b). *Id.* (Government's Rule 404(b) Notice) at 7. Mr. Balwani's counsel has also raised concerns about the status and quality of the government's production of vital documents from CMS. *See id.*, Ex. R at 4–6. In fact, these belated productions have contained *Brady* material from core FDA custodians crucial to Mr. Balwani's defense. For example, documents produced by the government for the first time on

---

[7] *See e.g.,* Transcript of Proceedings Before the Honorable Edward J. Davila, (Oct. 2, 2019) (Mr. Bostic: "My understanding is that … the agencies are still on track to complete their productions of responsive documents either today or in the very near future."); *Id.* at 4:1-–14 (Mr. Bostic: "The government's understanding is that the defense will have all novel, nonduplicative and discoverable information either today or within the next few days."); Dkt. No. 121 at 3 (September 30, 2019 Joint Status Memo) ("As to FDA, the agency expects to be in substantial compliance with the Court's Order as of October 2.").

1    February 7, 2020 included a September 2014 draft request "for cause" inspection of Theranos's

2    Newark and Palo Alto locations related to its nanotainer and analyzer devices. *See id.*, Ex. S.

3    Previously, on October 1, 2019, the government produced an October 1, 2014 email about the for-

4    cause inspection with only a placeholder document denoting that the attachment was

5    "Intentionally Withheld" by FDA. *See id.*, Ex. T (FDA-0025024-FDA0025025); *see also id.*,

6    (US-FDA-0019231 (same email and no attachment produced)); (US-FDA-0019386 (9/30/2014

7    email attaching "Theranos Inspection Request Clean" and no attachment produced)). These

8    inexplicable delays in producing key documents cast doubt on the thoroughness of the

9    government's discovery processes and whether all Rule 16 and *Brady* material will ever be

10   collected.

11          Delays are not the only issue plaguing discovery in this case. The government's

12   productions have often been disorganized and difficult to review. *See* Coopersmith Decl. ¶ 21. In

13   addition, the government's May 28, 2020 production of FDA documents included, besides nearly

14   4 million pages of documents, 1.7 *Terabytes* of unprocessed data in a folder labeled "Tranch09."

15   *Id.* ¶ 22. The government has yet to resolve the deficiencies with this production identified by the

16   defense. *See id.*, Ex. U.

17          These deficiencies have occurred in the face of internal guidance for the U.S. Attorney's

18   Office for the Northern District of California cautioning that, generally, prosecutors should not

19   bring charges until they are prepared to meet their discovery obligations:

20          In most cases, a case should not be indicted until the AUSA has gathered and is
             ready to provide all *Brady* material and all discovery that the government is
21          obligated to produce under Federal Rule of Criminal Procedure 16. Discovery of
             *Brady* and Rule 16 material ordinarily should be provided to the defendant at or
22          before the defendant's arraignment and generally no later than one week before the
             first district court appearance.
23
24   U.S. Attorney's Office, N.D. Cal., "Discovery Policy" § I.G.1.[8]

25          Given the government's delays, as well as the concerns brought on by the coronavirus

26   _____

27   [8] This document, taken from the U.S. Department of Justice website, is the most recent publicly
     disclosed version, and appears to have been current as of 2010. *See*
28   https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/can_discovery_pol
     icy.pdf.

1    pandemic, Mr. Balwani has agreed to exclude time under the Speedy Trial Act several times,

2    most recently on August 14, 2020. *See* Dkt. Nos. 486 & 487. Because the Court ruled that Ms.

3    Holmes will proceed to trial first, Mr. Balwani is unlikely to go to trial before summer 2021 at the

4    earliest.

5    **III.    DISCUSSION**

6        **A.    The Sixth Amendment and Rule 48(b) empower courts to dismiss late-filed
                indictments.**

7

8        The government waited more than two years and then dramatically expanded the scope of

9    this case with charges that it could have brought at the outset of the prosecution. This delay

10   deprived Mr. Balwani of the chance to focus his resources to most effectively meet the

11   government's charges and instead pivot more than two years into the case to address the new

12   landscape, all in the face of serious danger of exculpatory documents or testimony no longer

13   being available for trial.

14       To decide whether the government's delay in filing a superseding indictment merits

15   dismissal, the Ninth Circuit balances four factors from the Supreme Court's decision in *Barker v.*

16   *Wingo*, 407 U.S. 514 (1972). Those factors include: "(1) the length of the delay; (2) the reason for

17   the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the

18   defendant." *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). Apart from the

19   Constitution itself, Federal Rule of Criminal Procedure 48(b) authorizes courts to dismiss an

20   indictment if "unnecessary delay occurs in … presenting a charge to a grand jury [or] bringing a

21   defendant to trial." Fed. R. Crim. P. 48(b).

22       Either standard compels dismissal here, and courts have dismissed superseding charging

23   instruments under similar circumstances elsewhere. *See, e.g.*, *United States v. Johnson*, 299 F.

24   Supp. 3d 909, 927 (M.D. Tenn. 2018); *Cutting*, 2017 WL 66837.

25       In *Cutting*, the government originally filed a 29-count indictment alleging conspiracy to

26   commit wire and bank fraud and several substantive fraud counts in March 2014. 2017 WL

27   66837, at *1. The Court dismissed several counts in January 2016. Two and a half years later, the

28   government filed a superseding indictment alleging five more counts. *Id.* at *3–4. In assessing the

1    *Barker* factors, the Court concluded that the 36-month delay between the original indictment and

2    the trial date was presumptively prejudicial, that the government could have filed all charges from

3    the superseding indictment in the original indictment, and that it lacked an explanation for why it

4    had not done so. *See id.* at *7–9. Even without finding bad faith, Judge Illston determined that the

5    government "acted deliberately and intentionally with regard to charging the new crimes added in

6    the superseding indictment." *Id.* at *10 ("[T]he government simply chose to seek indictment on

7    some of the charges of which it was aware, while holding back on others."). As for the third

8    factor, like here, the defendant had not invoked his rights under the Speedy Trial Act, and in fact

9    had waived those rights several times. *Id.* But the Court agreed that these waivers did not

10   preclude Cutting from asserting his constitutional rights, noting that he had agreed to

11   continuances to have enough time to review the voluminous discovery. *See id.* Finally, the Court

12   determined that the dangers of prejudice from fading witness memories and the difficulty of

13   reviewing the government's extensive document productions justified dismissing the superseding

14   indictment. *See id.* at 11–12.[9]

15          Assessing the same factors here should lead to the same result—dismissal of the SSI and

16   the TSI.

17          **B.      The lengthy delay between the First and Second Superseding Indictments**
               **supports dismissal.**
18

19          The Ninth Circuit held in *Gregory* that delays between indictment and trial "approaching

20   one year are presumptively prejudicial." 322 F.3d at 1162. There, the court considered a motion

21   to dismiss a third superseding indictment and assumed without deciding that the delay should be

22   measured from the timely first superseding indictment to trial. *See id.*

23          Here, it makes no difference whether the Court measures the delay from the original

24   indictment to trial, from the FSI to trial, or even from the FSI to the SSI. The shortest window—

25   between the September 2018 FSI and the July 2020 SSI—is 22 months, "well over the

26   _____

27   [9] Though a later order clarified that the Court's dismissal was rooted in Rule 48(b) instead of the
     Sixth Amendment, the dismissal remained undisturbed. *See* Order at 1–2, *United States v.*
     *Cutting*, Case No. 14-cr-00139-SI-1 (N.D. Cal. Feb. 21, 2017), ECF 371.
28

1   presumptively prejudicial threshold." *Cutting*, 2017 WL 66837, at *7 n.10.  In fact, even if the

2   coronavirus pandemic had not prevented presentations to the grand jury in March 2020, an 18-

3   month delay would still have been presumptively prejudicial. This factor thus weighs strongly in

4   Mr. Balwani's favor.

5            C.       **The lack of justification for the government's delay supports dismissal.**

6            The second *Barker* factor also weighs in favor of dismissal. The government cannot offer

7   any valid explanation for waiting over two years from the Indictment—and four years from the

8   investigation—to file the SSI and TSI. The government has had the information it needed to levy

9   the new accusations for years, but chose to hold them back in the Indictment and FSI.

10            The Ninth Circuit has explained that the reason for the government's delay "is the 'focal

11   inquiry'" when deciding whether delay merits dismissal. *United States v. King*, 483 F.3d 969, 976

12   (9th Cir. 2007). But the government here cannot explain it. *See McNeely v. Blanas*, 336 F.3d 822,

13   827 (9th Cir. 2003) (noting that government has the burden of explaining delay). When the record

14   does not show reason for the delay and the government has offered no reasonable explanation,

15   courts assume that no justifiable reason exists, and "weigh this factor heavily against the state."

16   *Id.* Even "neutral" reasons "such as negligence or overcrowded courts," are still counted against

17   the government because "the ultimate responsibility for such circumstances must rest with the

18   government rather than with the defendant." *Barker*, 407 U.S. at 531.

19            The circumstances here closely resemble *Cutting*. There, Judge Illston considered not only

20   the time since the original charging instrument but also the period during which the government

21   was investigating the alleged misconduct. As in *Cutting* the government here spent years before

22   the Indictment investigating Theranos's relationship with business partners like Walgreens and

23   Safeway and with its board of directors, including through "witness interviews" and "collect[ing]

24   … documents." 2017 WL 66837, at *8. Nor is the government's attempt to "significantly

25   expand[] the scope of the case" by increasing the length and nature of the alleged investor

26   conspiracy in the Second and Third Superseding Indictments in any way attributable to the

27   Court's prior rulings. *Id.* at *9.

28            Given the facts underlying the government's investigation, the grievous delay in time

1    between when the government first began investigating Theranos's business partners and when it

2    charged Mr. Balwani with that conduct is inexplicable at best and tactical at worst. The

3    government has had in its possession mountains of information about Theranos's board of

4    directors and business partners—media articles, publicly filed complaints, depositions and filings

5    from third-party litigation, documents produced in response to grand jury subpoenas, interview

6    memoranda, and more—since 2016, *four years* before including these parties in an indictment.

7         The record suggests nothing other than that the government purposefully delayed filing

8    these belated charges in the SSI and TSI.  The government conducted several witness interviews

9    related to these charges in 2016 (Walgreens and Safeway) and 2017 (the board of directors)—

10   long before the government filed even its *original* indictment. It also had access to deposition

11   transcripts of board members and Walgreens and Safeway witnesses from private civil litigation

12   long before filing the SSI and the TSI. Coopersmith Decl., Ex. V. Nothing explains the years in

13   which no meaningful discovery seems to have been conducted by the government, and in which

14   no superseding indictments were filed.

15        Before it filed its original indictment in June 2018, the government conducted interviews

16   with at least nine witnesses related to these newly added parties. *Id.*, Ex. W. In 2019—still a year

17   before filing its Second and Third Superseding Indictments—the government conducted six more

18   interviews related to these recently added alleged victims. *Id.*, Ex. X.

19        Nothing related to either the Court's earlier orders or the pandemic explains this. The

20   circumstances are nearly identical to those in *Cutting*. The second *Barker* factor should therefore

21   weigh against the government as strongly here as it did there.

**D.     The volume of and deficiencies in the government's discovery productions explain why Mr. Balwani has agreed to exclude time under the Speedy Trial Act.**

24        As in *Cutting*, the third *Barker* factor is neutral. Given the voluminous discovery, Mr.

25   Balwani has agreed that certain periods of time should be excluded from Speedy Trial Act

26   calculations in this case. [10] Yet so did Cutting, who likewise had agreed to exclude time, and that

---

[10] Mr. Balwani did ask to proceed to trial before Ms. Holmes, though the Court has ordered otherwise. *See* Dkt. No. 189.

1   did not dissuade that court from dismissing the superseding charging instrument. The court in

2   *Cutting* concurred with the defendant that agreeing "to certain continuances in order to have

3   adequate time to attempt to review the voluminous discovery" did not preclude the defendant

4   from asserting his Sixth Amendment rights. 2017 WL 66837, at *10. So too here.

5        The Court has recognized that the amount of discovery in this case is "immense." Dkt.

6   No. 330 at 16. And discovery has not concluded, even after production of more than 20 million

7   pages of documents. Besides the volume of discovery here, the government's "ESI production has

8   been marked by technical problems that impair the ability of counsel to search these documents."

9   *Cutting*, 2017 WL 66837, at *12. As in *Cutting*, the government here has produced emails with

10  missing attachments, "families of documents … produced as standalone documents without

11  metadata indicating that they are part of a family, [] emails and attachments produced as a single

12  document …, failing to insert page breaks at the end of documents, and producing multiple

13  unrelated documents together as a single document." *Id.* at *6; Coopersmith Decl. ¶ 21. Even as

14  many of these issues have been corrected, the deficiencies have certainly hampered Mr.

15  Balwani's review.

16       Given the volume and quality of discovery, Mr. Balwani had no choice but to agree to the

17  continuances to adequately prepare for trial—a task that is all the more complicated by the

18  government's recent and unexplained expansion of the scope of the charges.

19       **E.**     **Mr. Balwani need not show prejudice but will likely suffer it if the new indictments are not dismissed.**

20

21       The Ninth Circuit has stated that "no showing of prejudice is required when the delay is

22  great and attributable to the government." *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir.

23  2008). Under these circumstances, courts "presume prejudice." *Id.* Even so, Mr. Balwani will face

24  real and meaningful prejudice from the government's delay.

25       The Supreme Court has recognized three types of prejudice flowing from post-indictment

26  delays: "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the

27  possibility that the … defense will be impaired by dimming memories and loss of exculpatory

28  evidence." *Id.* Of these, the last category is the most serious "because the inability of a defendant

adequately to prepare his case skews the fairness of the entire system." *Id.* (quotation omitted). The "presumption that pretrial delay has prejudiced the accused intensifies over time." *McNeely*, 336 F.3d at 831. Prejudice can also be difficult to demonstrate concretely. *See Doggett v. United States*, 505 U.S. 647, 655 (1992) ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or, for that matter, identify."). Parties can rarely show precisely how delays have eroded exculpatory evidence or witness memories. *See Barker*, 407 U.S. at 532. This is especially true in a case like this one, where intense media interest has led to routine parroting of the government's charges without a corresponding chance for the defense to rebut them.

Here, the prospect of witnesses' unavailability and fading memories is more than plausible given that the events at issue date back more than ten years. Taking just the Theranos board of directors, two members of the board have passed away since the September 2018 FSI.[11] The ongoing pandemic will only compound Mr. Balwani's challenges in developing favorable trial testimony. While the pandemic is not attributable to the government, the difficulties it has caused should not be laid at the feet of a defendant entitled to a presumption of innocence.

Mr. Balwani faces other forms of prejudice as well. These include the increased sentencing exposure resulting from the new charges and the need to pivot after more than two years to meet the expanded charges. This is not merely a tactical shift. No defendant's resources are infinite. If Mr. Balwani had known that the charges would include alleged fraud against two giant corporations and an alleged conspiracy period going back to 2010 instead of 2013— accusations about which the government had possessed the information it needed years before filing them—he would have allocated and rationed resources differently. The "significantly broadened scope of the [SSI and TSI] will require all defense counsel to reexamine" the voluminous discovery "produced to date to analyze how those documents relate to the new allegations." *Cutting*, 2017 WL 66837, at *11.

---

[11] *See* https://www.legacy.com/obituaries/name/donald-lucas-obituary?pid=194910984; https://www.legacy.com/obituaries/mercurynews/obituary.aspx?n=thomas-peter-thomas-pete&pid=194490647.

## IV.  CONCLUSION

Balancing the *Barker* factors leads inexorably to one conclusion: The SSI and TSI must be dismissed. The delays in filing the latest charging instruments in this case and the lack of any justification for those delays will admit no other answer. Mr. Balwani therefore requests that the Court dismiss the Second and Third Superseding Indictments.


Dated:  August 28, 2020                Respectfully submitted,
                                       ORRICK, HERRINGTON & SUTCLIFFE LLP


                                       _____
                                       JEFFREY B. COOPERSMITH

                                       Attorney for Defendant
                                       RAMESH "SUNNY" BALWANI