JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date: October 6, 2020<br>Time: 10:00 AM<br>CTRM: 4, 5th Floor |
| | Hon. Edward J. Davila |

# MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 6, 2020 at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure to dismiss the Second and Third Superseding Indictments in part for failure to provide fair notice of the charges against her.  In the alternative, Ms. Holmes moves for an order instructing the government to provide a bill of particulars.  The Motion is based on the below Memorandum of Points and Authorities and Exhibits, the Declaration of Amy Mason Saharia, the record in this case, and any other matters that the Court deems appropriate.

DATED: August 28, 2020

                                            /s/ Amy Mason Saharia
                                            KEVIN DOWNEY
                                            LANCE WADE
                                            AMY MASON SAHARIA
                                            KATHERINE TREFZ
                                            Attorneys for Elizabeth Holmes

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

BACKGROUND ..............................................................................................................................2

ARGUMENT ....................................................................................................................................4

    I.    The Third Superseding Indictment Is Unconstitutionally Vague. ......................................4

        A.    The Indictments' Reference to "Certain Business Partners" Is Unconstitutionally Vague. ...............................................................................5

        B.    The Indictments' Reference to "Members of the Board of Directors" Is Unconstitutionally Vague. ...............................................................................8

        C.    The Indictments' Reference to "Investors" Is Unconstitutionally Vague. ...............................................................................................................9

        D.    The Government's Email Does Not Save Its Unconstitutional Indictments. ......................................................................................................10

    II.    At a Minimum, the Court Should Order a Bill of Particulars. ............................................11

        A.    The "individuals," "entities," "certain business partners," "members of the Board of Directors," and "individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities" alleged to be "investors." ..............................................12

        B.    The "certain business partners" and the nature of their "investments" .................13

        C.    The "members of the Board of Directors" and the nature of their "investments" ..............................................................................................................13

        D.    The alleged misrepresentations made to the various "investors" .........................14

        E.    The basis of any alleged duty to disclose ...........................................................15

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Pages

*Cleveland v. United States*, 531 U.S. 12 (2000) ................................................................................ 5

*Russell v. United States*, 369 U.S. 74 (1962) ................................................................... 4, 6, 10, 11

*United States v. Buckley*, 689 F.2d 893 (9th Cir. 1982) ..................................................................... 5

*United States v. Caine*, 270 F. Supp. 801 (S.D.N.Y. 1967) ............................................................. 12

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) ...................................................................... 5

*United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988) .................................................................. 8

*United States v. Hussain*, 2017 WL 4865562 (N.D. Cal. Oct. 27, 2017) .......................................... 5

*United States v. Keith*, 605 F.2d 462 (9th Cir. 1979) ...................................................................... 10

*United States v. Lindsey*, 850 F.3d 100 (9th Cir. 2017) .................................................................... 5

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) .................................................................... 11

*United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020) .................................................................... 5

*United States v. Nat'l Marketing, Inc.*, 306 F. Supp. 1238 (D. Minn. 1969) ................................... 12

*United States v. Simmons*, 96 U.S. 360 (1877) ................................................................................. 4

*United States v. Trumpower*, 546 F. Supp. 2d 849 (E.D. Cal. 2008) .............................................. 12

*United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993) ...................................................................... 5

*Will v. United States*, 389 U.S. 90 (1967) ................................................................................. 11, 12

*Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963) ................................................................ 12

## RULES

Fed. R. Crim. P. 7 ......................................................................................................................... 4, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

The First Superseding Indictment charged Ms. Holmes with engaging in a scheme to defraud "investors" by making false and misleading representations. It did not disclose the precise misrepresentations that Ms. Holmes allegedly made, but Ms. Holmes at least understood *whom* she was alleged to have defrauded: Theranos investors. Ms. Holmes naturally understood that term to have its ordinary meaning—i.e., to refer to the finite set of individuals and entities that invested money in Theranos in return for company securities and were identifiable on the company's stock ledger.

The Second and Third Superseding Indictments ("Indictments") depart from that common-sense meaning. In those Indictments, the government defines "investors" to include "individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities." *E.g.*, TSI, ECF No. 469, ¶ 3. That cryptic and tortured definition of the term "investors" raises a host of questions, and—if permitted—would expand exponentially the scope of the alleged scheme to defraud.[1] What does "business partners" mean? That undefined term could sweep in any number of individuals, companies, or governmental entities with which Theranos engaged in transactions. Which business partners? How is the government alleging that such business partners "invested" in Theranos? An intended deprivation of money or property is central to the wire-fraud statute, and the Indictments do not identify the nature of these partners' "investments." Which members of the board of directors? Is the government claiming only that Ms. Holmes defrauded board members in connection with their decisions to purchase company shares, or is the government alleging some other "investment" of money or property?

Although the government first introduced this new definition four months ago in a draft information it provided to the defense, the government did not attempt to explain what it means until a week ago. In an email dated August 21, 2020, the government said that "certain business partners"

---

[1] As set forth in Ms. Holmes' Motion To Dismiss Counts One and Three through Eight as Duplicitous, filed contemporaneously herewith, the new definition of "investors" renders the investor-related counts duplicitous. But even if the Court concludes that the Indictments are not duplicitous, they are unconstitutionally vague.

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                                                1

means Walgreens and Safeway, without explaining why it now considers these entities to be investors after treating them as something other than investors for the first two years of this case. And it appeared to suggest that its new definitions of "investors" includes all members of the Board of Directors, whether or not they invested money in Theranos, but this remains unclear. Suffice it to say, even a clear email could not cure the fatal ambiguities in the Indictments. The government's artfully evasive email certainly cannot do so.

Defending oneself from criminal charges should not be a guessing game. The government's new definition of "investors" requires Ms. Holmes to guess what the government means. The Court should dismiss Counts One and Three through Eight as unconstitutionally vague. A bill of particulars cannot cure this egregious ambiguity. Nonetheless, if the Court concludes that the Indictments pass constitutional muster, it should order a bill of particulars in the alternative.

## BACKGROUND

The government first obtained a Superseding Indictment in September 2018, alleging, in relevant part, that "Theranos solicited and received financial investments from investors" as part of a scheme to defraud those investors (*i.e.* deprive them of money). ECF No. 39 ¶ 3. The Superseding Indictment included a section regarding "Theranos's partnership with Walgreens" explaining Theranos' commercial launch and its rollout of Theranos wellness centers in 2013. *Id.* ¶ 10. The government further alleged, in a separate section of the indictment that formed the basis of the alleged scheme to defraud investors, that Theranos misrepresented the status of its "partnership" with Walgreens to "investors." *Id.* ¶ 12(D).

The Walgreens "partnership" was also referenced in the government's 404(b) Notice. Saharia Decl., Ex. A. In that notice, the government alleged that "[i]n pursuing and maintaining Theranos's partnership with Walgreens, Defendants made misrepresentations to Walgreens representatives." *Id.* at 3. Similarly, the government alleged that "[i]n pursuing a partnership between Theranos and Safeway, Defendants made misrepresentations to Safeway representatives." *Id.* Relevant to this motion, the government also alleged in its Rule 404(b) notice that "Defendants deceived Theranos's Board of Directors in furtherance of their schemes to defraud investors and patients," thus distinguishing between Board members and investors. *Id.*

Just under two years after the Superseding Indictment was returned, and after correspondence and motions practice regarding the Rule 404(b) notice, the government sought the return of a Superseding Information, which, among other things, expanded the term "investor" to include "individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities." ECF No. 390 ¶ 3. The government Second and Third Superseding Indictments reflect this same definition. *See* ECF Nos. 449, 469.

As soon as the defense became aware of this new definition, it asked the government to clarify its definition of "investors."[2] On April 24, Ms. Holmes requested that the government identify, among other things, (1) the "[i]ndividuals," "[e]ntities," "certain business partners," "members of Theranos's Board of Directors," and "[i]ndividuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities" alleged to be investors in the draft indictment and (2) the basis for the allegation that "certain business partners" and "members of the Board of Directors" "invested" in Theranos. *See* Saharia Decl., Ex. B at 2-3. The government refused her request on May 4, 2020, stating simply that it would respond when a new charging instrument was filed. *See* Saharia Decl., Ex. C.

On August 21, 2020, over three months after the government filed the May 8, 2020 Superseding Information, and one week before this motion was due to be filed, the government responded. Saharia Decl., Ex. D. In its August 21 email, the government stated in relevant part that "Theranos investors are easily identifiable from the discovery." *Id.* But it did not explain how it is defining "investors." Using open-ended language, it went on: "*For example*, a list of Theranos equity investors issued stock certificates is available at THER-0905030." *Id.* (emphasis added). Presumably, the government's "For example" limitation means to suggest that "investors" include individuals and entities beyond "equity investors," but it provided the defense no way to ascertain who those other investors are, or the nature of their "investments."

---

[2] The government provided the defense with a draft superseding indictment that is identical to the Indictments in all material respects on April 13, 2020. *See* Saharia Decl., Ex. E.

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                3

With respect to "certain business partners," the government wrote that "'[c]ertain business partners' are Safeway and Walgreens." *Id.* Safeway and Walgreens, notably, did not own Theranos stock and do not appear on the list of equity investors issued stock certificates cited by the government in its email. If the meaning of "certain business partners" was so obvious, one wonders why the government did not simply say so in the indictment itself, instead leaving Ms. Holmes to guess for the prior four months.

As for "members of Theranos' Board," the government wrote that members of the Board "are easily identifiable from the discovery provided to you." *Id.* It then said, "Indeed, *many* are listed in the stock certificate ledger reflected at THER-0905030." *Id.* (emphasis added). That passage suggests that the government considers *all* members of the Board of Directors to be "investors" whether or not they owned stock or invested money to acquire. If that is the government's position, the nature of these Board members' "investments" is utterly unclear. Neither the Indictments nor the government's email provide any basis for answering that question.

The best we can tell from the government's email, the government's new definition of "investors" is equity investors and maybe other undefined investors, plus Walgreens and Safeway, plus any individual who ever served on Theranos' Board during the period of the charged conspiracies.

## ARGUMENT

### I. The Third Superseding Indictment Is Unconstitutionally Vague.

Rule 7 mandates that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). That requirement codifies and enforces "basic principles of fundamental fairness" inherent in the Sixth and Fifth Amendments. *Russell v. United States*, 369 U.S. 749, 763-66 (1962). To pass constitutional muster, "'the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him.'" *Id.* at 766 (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)). "[C]ryptic form[s] of indictment" fail this standard and enable the prosecution to fill in the indictment's "gaps of proof by surmise or conjecture." *Id.* The constitutional notice requirement serves to (1) "enable [the defendant] to prepare his defense," (2) "ensure that the defendant is prosecuted on the basis of facts presented to the

grand jury," (3) "enable him to plead jeopardy against a later prosecution," and (4) "inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam). As this Court previously recognized, in assessing the sufficiency of an indictment, the court should read the indictment as a whole and apply common sense. ECF No. 330 at 9 (citing *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982)).

The government's new, ambiguous definition of "investor" fails these constitutional safeguards.

### A.   The Indictments' Reference to "Certain Business Partners" Is Unconstitutionally Vague.

The government's failure to identify in the Indictments the "certain business partners" Ms. Holmes allegedly defrauded is fatal to Counts One and Three through Eight.

To prevail on a charge of wire fraud, the government must prove: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (internal quotation marks omitted).[3] As this Court already recognized, a scheme to defraud must have as its object the deprivation of "'property in the hands of the victim.'" ECF No. 330 at 27 (quoting *Cleveland v. United States*, 531 U.S. 12, 15 (2000)); *see also United States v. Miller*, 953 F.3d 1095, 1102-03 (9th Cir. 2020) (holding that "wire fraud requires the intent to deceive *and* cheat—in other words, to deprive the victim of money or property by means of deception," and abrogating the Ninth Circuit's model jury instruction on wire fraud (emphasis added)). Accordingly, to defend against an allegation that a defendant engaged in a scheme to defraud, the defendant must know ***whom*** she allegedly intended to defraud.

Read with common sense, the prior indictment charged Ms. Holmes with defrauding "investors"—i.e., the identifiable, finite group of individuals and entities that invested money into Theranos in exchange for company shares. The prior indictment reinforced that common-sense reading

---

[3] A conspiracy under section 1349 "requires an agreement among two or more persons that would satisfy the elements of the substantive offense" of wire fraud. *United States v. Hussain*, 2017 WL 4865562, at *5 (N.D. Cal. Oct. 27, 2017). Accordingly, an indictment charging conspiracy to commit wire fraud must specify the underlying fraud. *See United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) ("We think a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count.").

in several respects.  First, each substantive wire-fraud count—Counts Three through Eight—involved a transfer of money from an investor to Theranos in exchange for company shares.  Superseding Indictment, ECF No. 39, ¶ 24.  Each individual or entity that initiated the at-issue wires, in other words, received an ownership share in Theranos.  Second, the prior indictment used the terms "investors" and "partner" to mean *different* things.  The indictment alleged that Ms. Holmes defrauded "investors" by making false statements about, among other things, the status of its "partnership with Walgreens."  *Id.* ¶ 12(D).  Ms. Holmes thus naturally understood that the allegedly defrauded "investors" did not include Walgreens or other similar business "partners."

Common sense cannot help Ms. Holmes understand the government's new, cryptic definition of "investors."  *Russell*, 369 U.S. at 766.  The Indictments do not define what it means by "business partners."  At best, Ms. Holmes could guess that they include Walgreens, which the Indictments continue to identify as a "partner."[4]  But the charging documents themselves do not identify any additional "partners."  Nor do they identify the nature of the "investments" that these business partners supposedly made—or the at-issue deprivation of money or property—which might help to narrow the potential universe of individuals and entities with which Theranos interacted.  The government, moreover, charges Ms. Holmes with defrauding only "certain" business partners, but it fails to identify which ones.  And as discussed below, trial by email is not constitutionally permissible.

To be sure, the notice requirement is not exacting; as this Court previously explained, "[t]he Government must only provide enough facts to apprise a defendant of what defense should be prepared for trial."  ECF No. 330 at 9.  But if any indictment fails this standard, this is it.  Ms. Holmes does not know "what defense should be prepared for trial."  *Id.*  Is she defending an allegation that she defrauded just Walgreens and Safeway?  The Department of Defense?  Doctors' offices that engaged a Theranos technician on-site?  Pharmaceutical companies with which Theranos transacted?  Vendors that provided

---

[4] As Ms. Holmes explains in her Motion To Dismiss Counts One and Three through Eight as Duplicitous, an indictment charging a scheme to defraud Walgreens would be time-barred.  The same would be true for Safeway and any number of other potential "business partners."  The government's re-definition of "investors" to include such entities thus appears to be an attempted end-run around the statute of limitations.

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                                  6

business services to Theranos? Neither the Indictments nor common sense provide any answers to these questions. And the answers to these questions fundamentally shape Ms. Holmes' trial preparations and the scope of the trial.

Each of the purposes motivating the notice requirement requires dismissal here. First, as just set forth, Ms. Holmes cannot adequately prepare her defense against a charge that she engaged in a scheme to defraud "certain business partners." The identities of the at-issue business partners will affect Ms. Holmes' trial preparations, including, for example, her preparation to meet the government's case at trial, her identification of relevant witnesses and exhibits, and third-party discovery. Second, the ambiguity and breadth of this term make it impossible to know whether Ms. Holmes is being prosecuted on the basis of facts presented to the grand jury. Third, the term is so vague that it could complicate Ms. Holmes' ability to plead jeopardy against a later prosecution—for example, if the government later charged Ms. Holmes with defrauding the Department of Defense, an entity with which Theranos transacted and that is mentioned in the Indictments, would the government disclaim that the Department was a "business partner"? Finally, and critically, the vague reference to "certain business partners" does not allow the Court to determine the sufficiency of the Indictments. As this Court already recognized, the wire-fraud statute requires a scheme to defraud victims of *money or property*. *See* p. 5, *supra*. When the term "investors" had its natural meaning in the prior indictment, it was fairly simple to ascertain that the alleged scheme to defraud "investors" had as its object the deprivation of money or property. The opacity of the term "business partners" makes that inquiry impossible, because the Indictments contain no details about the nature of the "investments" made by these "business partners."

The government now claims, four months after Ms. Holmes requested information regarding the meaning of "certain business partners," that the term simply means Walgreens and Safeway. Saharia Decl., Ex. D. But that is not obvious from the Indictments. To the contrary, the Indictments point away from construing "investors" to include Walgreens because it alleges that Ms. Holmes made misrepresentations to "investors" about the status of Theranos' partnership with Walgreens—an allegation that makes no sense if Walgreens is itself an investor.[5] *See e.g.*, TSI, ECF No. 469 ¶¶ 10,

---

[5] Such a broad and vague reach of the definition of "investor" present a substantial risk of a

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE
OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                             7

12(D).  And, as set forth above, absent any clarification of how the government is defining "investment," there are a host of entities with which Theranos did business that might qualify as a "certain business partner," many of which are represented on the government's witness list.  Proceeding to trial on this vague indictment will create the substantial risk that the jury will convict Ms. Holmes based on relationships with "business partners" that were not the subject of the indictment.

### B. The Indictments' Reference to "Members of the Board of Directors" Is Unconstitutionally Vague.

The Indictments reference to "members of the Board of Directors" as part of the class of allegedly defrauded "investors" is likewise unconstitutionally vague.  Some members of the Board of Directors did invest money into Theranos in exchange for company shares; these individuals would already have been included in the term "investors," as naturally understood, in the prior indictment.  Although Ms. Holmes initially assumed the government intends for the definition of "investors" to include only "members of the Board of Directors" who transferred money to Theranos, *see e.g.*, TSI ECF No. 469, ¶ 3, she cannot be sure, especially in light of its recent email.  The government's new definition suggests that it intends the definition to sweep into the charging document a broader group of directors—, this part of the new definition would be superfluous.  But, again, it is impossible to discern what that other "investment" could be, because the Indictments provide no information.

The government's email confirms the confusion.  Regarding the Board of Directors, the government stated that "[m]embers of Theranos' board are easily identifiable from the discovery provided to you.  Indeed, many are listed in the stock certificate ledger."  Saharia Decl., Ex. D.  The sentence, designed to evade the question, highlights the problem.  Is the government claiming that Ms. Holmes defrauded every member of the Board of Directors, as the first sentence quoted here states?  Or is it referring only to those listed in the stock certificate ledger, as the second sentence states in contradiction to the first?  If the first is the meaning, what is the nature of the alleged investment?  Ms. Holmes cannot fairly defend against this charge without understanding what is being charged.

Notably, before returning the Indictments, the government disclosed that it intended to introduce

---

nonunanimous jury verdict.  *See United States v. Gordon*, 844 F.2d 1397, 1401-02 (9th Cir. 1988).

evidence that Ms. Holmes allegedly defrauded Board members under Rule 404(b).  *See* Saharia Decl., Ex. A.  The government subsequently represented that the effect of the new indictment is to pull some of the conduct it alleged in its Rule 404(b) notice into the charging document itself.  Hr'g Tr. 23:16-24, July 20, 2020.  That statement illustrates the confusion produced by the Indictments.  The Rule 404(b) notice had nothing to do with "investments" by Board members.  It alleged only that "Defendants deceived Theranos's Board of Directors in furtherance of their schemes to defraud investors and patients," plainly indicating that the directors and investors were distinct groups. Saharia Decl., Ex. A. at 3.  The government's redefinition of "investors" to include Board members suggests that it intends to charge deception of Board members without the requisite connection to deprivation of money or property in their hands.

As with "business partners," each of the purposes motivating the notice requirement requires dismissal here.  *See* p. 6, *supra*.  First, Ms. Holmes cannot adequately prepare her defense against a charge that she engaged in a scheme to defraud Board members without understanding which ones or what the alleged deprivation of money or property is.  Indeed, there were different Board members at different times throughout the company.  Second, the ambiguity of this term makes it impossible to know whether Ms. Holmes is being prosecuted on the basis of facts presented to the grand jury.  Third, the term is so vague that it could complicate Ms. Holmes' ability to plead jeopardy against a later prosecution.  Finally, and critically, the vague reference to "members of the Board of Directors" does not allow the Court to determine the sufficiency of the Indictments.  As just set forth, the government does not explain the nature of the alleged deprivation of money or property in their hands—*e.g.*, whether it is limited to money they gave to Theranos in exchange for corporate shares, or whether the government has some other, more nebulous "investment" in mind, which may well fail under the wire-fraud statute.

### C. The Indictments' Reference to "Investors" Is Unconstitutionally Vague.

Finally, as the foregoing discussion makes clear, the entire definition of "investors" is unconstitutionally vague.  It fails to provide the constitutionally required notice because it includes "certain business partners" and "members of the Board of Directors," which are themselves

unconstitutionally vague.  More fundamentally, however, the new definition of "investors" indicates that the government has redefined that term to mean something broader than the traditional, common-sense understanding—i.e., equity investors—that flowed from the prior indictment.  But the Indictments provide no way to ascertain that broader meaning.  As a result, it is impossible to know which "individuals" and "entities" the government alleges to be investors.  Again, if these terms are limited to individuals and entities purchased Theranos securities, they can be easily identified.  But if the government is now claiming that some other contribution of money or property qualifies as an "investment," as its email suggests, *see* p. 3-4, *supra*, the universe of potentially defrauded individual or entity "investors" is unknowable.  Ms. Holmes cannot adequately litigate at this stage whether such individuals qualify as victims under the wire-fraud statute without knowing who they are and how the government claims they were deprived of money or property.

### D. The Government's Email Does Not Save Its Unconstitutional Indictments.

"[I]t is a settled rule that a bill of particulars cannot save an invalid indictment."  *Russell*, 369 U.S. at 769-70; *see also United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).  This is because a bill of particulars cannot ensure that the grand jury considered the facts the government is presenting as the basis for its theory.  *See Russell*, 369 U.S. at 771.  "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure."  *Id.*  Accordingly, failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect," *Keith*, 605 F.2d at 464, whether or not the court requires a bill of particulars.

If a bill of particulars cannot save a fatally ambiguous indictment, it is all the more the case that the government cannot cure the deficiencies in the Indictments by an eleventh-hour email—let alone by an ambiguous email.  As the Supreme Court has explained, "[t]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  *Russell*, 369 U.S. at 771.  Because of the government's ambiguous and shifting definition of the term investor, the Court can only

"guess as to what was in the minds of the grand jury at the time they returned the indictment." *See id.* The grand jury very well could have indicted on a narrower definition of investor than the government is now asserting by email. There is simply no way to know from the sparse information in the Indictments. And the government's email does not change that fact.

\* \* \*

For these reasons, Counts One and Three through Eight, all of which rest on the new definition of "investors," should be dismissed.

## II. At a Minimum, the Court Should Order a Bill of Particulars.

Although a "bill of particulars cannot save an invalid indictment," *Keith*, 605 F.2d at 464, a bill of particulars is warranted here in the event that the Court does not dismiss the Second and Third Superseding Indictments. *See* Fed. R. Crim. P. 7(f). A bill of particulars is "appropriate where a defendant requires clarification in order to prepare a defense." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The principal purpose of a bill of particulars is "to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.* Courts have "very broad discretion" to order a bill of particulars. *Will v. United States*, 389 U.S. 90, 99 (1967).

As the Court has already recognized, the scope of this case weighs in favor of a bill of particulars as a general matter. Even under the prior indictment, "[t]he universe of potential misrepresentations [was] vast." ECF No. 330 at 15. The government's expansion of the definition of "investor," and its doubling of the length of the charged conspiracy to defraud investors (from three to six years), multiply the universe of potential misrepresentations even further. And "discovery in this case is immense." *Id.* at 16. At the time of the prior motion to dismiss, the government had produced 20 million pages of documents; the government's production now stands at over 29 million pages. The defense cannot reasonably scour that production to guess what "investors" are now alleged to be victims if that term means something other than individuals or entities that purchased equity shares.

These "realities"—combined with the ambiguous nature of the Indictments—"create a substantial risk that Defendants may be unfairly surprised at trial." *Id.* The Court should require the

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                          11

government to provide the following information if it does not dismiss the investor-related counts.

### A. The "individuals," "entities," "certain business partners," "members of the Board of Directors," and "individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities" alleged to be "investors."

As this Court recognized in its prior ruling, the function of a bill of particulars is to allow the defendant to understand "the theory of the government's case." ECF No. 330 at 12 (emphasis omitted) (quoting *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963)). In light of the government's new, vague definition of "investors," Ms. Holmes cannot understand the theory of the investor-related counts without knowing whom the government is claiming to be "investors." It is thus critical that the government be required to disclose which "investors" Ms. Holmes is alleged to have defrauded.

As the Supreme Court has indicated, "it is not uncommon" to require disclosure of alleged fraud victims "where this information is necessary or useful in the defendant's preparation for trial." *Will*, 389 U.S. at 92, 99 (identities of persons alleged to have heard oral misrepresentations by defendant); *see also, e.g.*, *United States v. Trumpower*, 546 F. Supp. 2d 849, 852 (E.D. Cal. 2008) (requiring disclosure of the alleged "victims" of mail/wire fraud); *United States v. Nat'l Marketing, Inc.*, 306 F. Supp. 1238, 1242 (D. Minn. 1969) (requiring disclosure of other "similarly situated" victims); *United States v. Caine*, 270 F. Supp. 801, 806-07 (S.D.N.Y. 1967) (ordering disclosure of the identities of allegedly defrauded customers). Here, in light of the government's new definition, disclosure of the alleged "investors" is necessary to prepare for trial and to avoid unfair surprise because without such disclosure, the theory of the investor-related counts is unclear.

Of course, this is not to say that an indictment must always identify the alleged victims by name. Ms. Holmes did not move for disclosure of the names of alleged "investors" in the prior indictment because—based on the indications in the prior indictment—she understood that term to have its common-sense meaning of equity investors and she was able to identify who those investors were. In contrast, she does not currently understand the scope of the government's definition or the claimed deprivation of money or property, for all the reasons set forth above. The Court should require a bill of particulars identifying the claimed "investors."

**B.     The "certain business partners" and the nature of their "investments."**

At a bare minimum, the Court should require the government to disclose formally in a bill of particulars the "certain business partners" alleged to be "investors" and the nature of their supposed "investments." The Indictments do not define "business partners," and, as set forth above, that vague term could include any number of individuals, companies, or governmental entities, despite what the government's email purports the term to mean presently.

The Indictments provide no clues regarding the "certain" business partners at issue. Nor do they explain the nature of these business partners' supposed investments, which is critical to determining whether the government adequately alleges that they were deprived of money or property. The ambiguities introduced by this term are similar to the ambiguities introduced by the government's "implicit representation" theory of wire fraud in the patient-related counts. In its prior ruling, this Court held that the earlier indictment "lack[ed] any clear explanation of the Government's implicit-misrepresentation case theory," ECF No. 330 at 16. For that reason (among others), the Court required a bill of particulars enumerating the representations at issue in the patient counts, including "the particular tests the government claimed Theranos was not capable of consistently producing," *id.* Just as the government was required to identify the "particular tests," the Court should likewise require the government to identify the "certain business partners" at issue and the nature of their supposed investment, so that Ms. Holmes is not "left to guess" the government's new theory. *Id.*

**C.     The "members of the Board of Directors" and the nature of their "investments."**

For the same reasons as with the preceding category, at a bare minimum the government should be required to identify the "members of the Board of Directors" alleged to be "investors" and the nature of their supposed investments. Ms. Holmes is entitled to know the theory of the government's case as it relates to members of the Board of Directors. The Indictments "lack[] any clear explanation" of the government's theory as it relates to these individuals; in particular, it does not explain the nature of the claimed deprivation of money or property for these individuals. The government's email implies that the entire Board meets its definition of investor, but it also notes that "many" members of the Board are identified on a stock certificate ledger. Saharia Decl., Ex. D. Rather than clarify, the government's

MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS IN PART FOR LACK OF NOTICE
OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD                                             13

explanation simply magnifies the vagueness in the Second and Third Superseding Indictments. Ms. Holmes is entitled to know whether she is defending against claims related to certain Board members' purchases of corporate securities or whether the government will contend at trial that some other money or property is at issue.

### D. The alleged misrepresentations made to the various "investors."

The government's new definition of investors puts at issue any statement made by Ms. Holmes to any individual that falls into one of the five broad categories. Accordingly, the government should be required to identify the alleged misrepresentations made to each category of "investors." To be sure, the Court did not previously order a bill of particulars identifying the particular investor-focused misrepresentations because, the Court found, Ms. Holmes was not "left to guess about the Government's investor fraud-case theory." ECF No. 330 at 16.

The government's reformulation of the term investor—and its doubling of the length of the alleged conspiracy from three to six years—significantly changes the landscape. The government has alleged that Ms. Holmes "made material false and misleading statements to investors and failed to disclose material facts" through "misleading written and verbal communications," "marketing materials," "misleading financial statements, models and other information" and misleading "statements to the media." *See, e.g.*, TSI, ECF No. 469 ¶ 12. With the current expansion of both the length of the time frame and the definition of investors, it appears that Ms. Holmes will now be required to defend at trial (a) all statements made to any member of the Board of Directors (although of course most of those statements had nothing to do with soliciting investments from them), business partners, traditional investors, or firms founded to invest in Theranos, that was made in any written or verbal communication, and (b) all statements to the media. The fact that the Indictments do not provide Ms. Holmes with a basis to determine who falls into these groups (and when) creates the inevitability of unfair surprise at trial. Accordingly, the Court should order the government to disclose in a bill of particulars (1) the specific implicit and explicit alleged false and fraudulent misrepresentations, (2) what about them is false, (3) who made them, (4) how Defendants caused them to be made, and (5) to whom they were made. *See* ECF No. 330 at 16 (ordering similar information for patient-related counts).

### E. The basis of any alleged duty to disclose.

Finally, Ms. Holmes respectfully maintains that the government fails to allege facts giving rise to a duty to disclose to support an omission theory of wire fraud, and has moved to dismiss the Indictments on that basis in a separate motion. But, if the Court disagrees, at a minimum it should order the government to disclose the basis of its alleged duty to disclose to each group of purported investors. In its prior ruling, the Court held that it was unnecessary to require the government to identify the basis of the claimed duty to disclose because "Defendants can infer the government's case-theory." ECF No. 330 at 20. That is not the case now. Defendants cannot infer the basis of the government's case theory as to the new categories of "investors" identified in the Indictments. The government previously claimed that Defendants had an informal fiduciary relationship with investors. (They did not.) Does the government claim that Defendants had an informal fiduciary relationship with all purported "investors," even mega-companies like Walgreens and Safeway, as well as billionaires, that were well equipped to perform due diligence? We have no idea. The Court should dismiss the Indictments insofar as they allege omissions, but if it does not it should require a bill of particulars identifying the basis of any alleged duty to disclose for each category of investor.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts One and Three through Eight of the Second and Third Superseding Indictments or, in the alternative, instruct the government to provide a bill of particulars.

DATED: August 28, 2020                           Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2020, a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes