JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS**<br><br>Date:   October 6, 2020<br>Time:  10:00 AM<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

## MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 6, 2020, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court pursuant to Rules 8 and 12 of the Federal Rules of Criminal Procedure to dismiss Counts One and Three through Eight of the Second and Third Superseding Indictments related to "investors" as duplicitous. These counts impermissibly charge multiple schemes by incorporating five distinct categories of "investors." The Motion is based on the below Memorandum of Points and Authorities, the Declaration of Amy Mason Saharia, the record in this case, and any other matters that the Court deems appropriate.

DATED: August 28, 2020

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

BACKGROUND ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.      The Investor Counts Are Duplicitous Because They Allege Multiple Schemes. ................ 4

    II.     The Duplicitous Investor Counts Should Be Dismissed. ..................................................... 8

CONCLUSION ............................................................................................................................... 9

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

i

# TABLE OF AUTHORITIES

## CASES

Pages

*Abney v. United States*, 431 U.S. 651 (1977) ................................................................................ 3

*Cleveland v. United States*, 531 U.S. 12 (2000) ............................................................................. 7

*U.S. CFTC v. Paron Cap. Mgmt. LLC*, 2012 WL 2395259 (N.D. Cal. June 25, 2012) ................. 5

*United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985) ................................................................ 3

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) .................................................................. 6

*United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988) ......................................................... 2, 4, 8

*United States v. Hardy*, 762 F. Supp. 1403 (D. Haw. 1991) .................................................... 3, 4, 8

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017) ............................................................... 7

*United States v. Moran*, 759 F.2d 777 (9th Cir. 1985) .................................................................. 4

*United States v. Morse*, 785 F.2d 771 (9th Cir. 1986) ......................................................... 3, 4, 5, 6

*United States v. Ramirez-Martinez*, 273 F.3d 903 (9th Cir. 2001) ................................................ 3

*United States v. Shayota*, 2016 WL 6093237 (N.D. Cal. Oct. 19, 2016) ....................................... 9

*United States v. Smith*, 373 F.3d 561 (4th Cir. 2004) .................................................................... 3

*United States v. Starks*, 515 F.2d 112 (3d Cir. 1975). ................................................................... 8

*United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976) ........................................................ 3

## STATUTES AND RULES

18 U.S.C. § 1343 ............................................................................................................................ 1

18 U.S.C. § 1349 ............................................................................................................................ 1

Fed. R. Crim. P. 8 .......................................................................................................................... 2

Fed. R. Evid. 401 ........................................................................................................................... 8

Fed. R. Evid. 402 ........................................................................................................................... 8

Fed. R. Evid. 403 ........................................................................................................................... 8

Fed. R. Evid. 404(b) ............................................................................................................... 2, 8, 9

## OTHER AUTHORITIES

Black's Law Dictionary (11th Ed. 2019) ....................................................................................... 4

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

Counts One and Three through Eight of the Second and Third Superseding Indictments ("Indictments")—the counts related to an alleged scheme to defraud "investors"—should be dismissed as duplicitous.  The alleged "scheme to defraud investors" underlying these counts cannot fairly be read as a single scheme because the Indictments include a new definition of "investors" encompassing five distinct categories of entities and people—a number of which are not actually "investors" under any accepted definition.  The government fails to allege any facts demonstrating a nexus between those vague categories to support a single scheme to defraud.  Because the investor-related counts cannot fairly be read to charge a single scheme, they must be dismissed as duplicitous.

**BACKGROUND**

In September 2018, the government obtained a Superseding Indictment that charged Ms. Holmes and her codefendant with, among other things, one count of conspiracy to commit wire fraud against Theranos "investors," 18 U.S.C. § 1349, and six counts of wire fraud against "investors," 18 U.S.C. § 1343.  Superseding Indictment, ECF No. 39.  The Superseding Indictment alleged that Ms. Homes engaged in a "scheme, plan, and artifice to defraud investors" that involved making "material false and misleading statements to investors" and "fail[ing] to disclose material facts."  *Id.* ¶¶ 11-12.  The government then listed nine categories of false or misleading statements or representations, all of which were allegedly made to "investors."  *Id.* ¶¶ 12(A)-(I).  The alleged "scheme to defraud investors" underlies both the conspiracy count (Count One) and the substantive wire-fraud counts (Counts Three through Eight).  The alleged investors were individuals from whom Theranos "solicited and received financial investments" and deposited the investments "into its Comerica Bank account."  *Id.* ¶ 3.

The government has sought and obtained a Second and Third Superseding Indictment.  Second Superseding Indictment ("SSI"), ECF No. 449, Third Superseding Indictment ("TSI"), ECF No. 469.  In a dramatic departure from the Superseding Indictment that was returned in September 2018, the Indictments now define the term "investors" to include five distinct categories: (1) individuals; (2) entities; (3) certain business partners; (4) members of Theranos' board of directors; and (5) "individuals

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

1

and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos' securities." *Id.* ¶ 3.  The Indictments do not provide any details about how to identify the members of each category.  Theranos did "business" with numerous entities:  Walgreens, Safeway, hospitals, doctors' offices, pharmaceutical companies, and governmental entities, to name a few.

The government stated in an email to defense counsel on August 21 that "certain business partners" means Walgreens and Safeway.  Saharia Decl., Ex. A.  However, the Indictments identify only one "partnership" pursued by Theranos—its partnership with Walgreens—and does not allege that Walgreens is one of the "business partner" *investors*.  *E.g.*, TSI, ECF No. 469 ¶ 10.  Similarly, the government's Rule 404(b) notice, which was the subject of correspondence between the parties and motions practice before the filing of the Indictments, referred to the Walgreens and Safeway "partnerships" with no mention of investments.  Saharia Decl., Ex. B at 3.

The Indictments allege that the Walgreens partnership had already stalled by late 2014—more than five years before the filing of the Indictments—due to Walgreens' alleged "concerns with Theranos's performance."  *E.g.*, TSI, ECF No. 469 ¶ 12(D).  Had the government, as it should have, charged Ms. Holmes with a separate scheme to defraud Walgreens in the Indictments, that charge would have been time-barred.  Similarly, the new definition of "investor," if permitted, would conveniently enable the government to skirt Rule 404(b) limitations by bootstrapping prior alleged bad acts into the Indictments through expanding the scope of the prior charged scheme.  It thus raises the question of whether the government may have created its new definition of "investor" in an attempt to add into the case charges barred by the statute of limitations and alleged acts barred by the Federal Rules of Evidence—including, but not limited to, charges and acts related to Walgreens.

**ARGUMENT**

Rule 8(a) requires that multiple offenses in the same indictment be charged in separate counts. Fed. R. Crim. P. 8(a).  An indictment that contravenes Rule 8(a) by joining two or more distinct offenses in the same count is duplicitous.  *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988); *United*

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

2

*States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007).

Duplicity undermines a defendant's right to a fair trial. A duplicitous indictment compromises a defendant's Sixth Amendment right to know the charges brought against her, because a conviction on a duplicitous count could be obtained without a unanimous jury verdict as to each of the offenses contained in the count. *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). A duplicitous indictment also "eviscerate[s] the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged." *United States v. Hardy*, 762 F. Supp. 1403, 1408 (D. Haw. 1991) (citing *Abney v. United States*, 431 U.S. 651, 654 (1977)). Duplicity may expose a defendant to trial for offenses otherwise barred by the statute of limitations, as here. *See United States v. Smith*, 373 F.3d 561, 563 (4th Cir. 2004) ("When an indictment impermissibly joins separate offenses that occurred at different times, prosecution of the earlier acts may be barred by the statute of limitations."). And duplicity risks prejudicial evidentiary rulings at trial, *see United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), including by sweeping into the case otherwise irrelevant and prejudicial evidence of uncharged conduct. To avoid these risks, the court must scrutinize the indictment to determine whether it may "fairly be read to charge but one crime in each count." *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986).

The "investor" counts cannot fairly be read to charge a single scheme. By broadening the definition of "investor" to include five separate categories, the government impermissibly sweeps multiple purported schemes into a single alleged "scheme to defraud investors." The Indictments fail to allege any nexus among the various groups identified as "investors" to demonstrate a single "scheme" encompassing all of them. And, although the government has refused to identify precisely which individuals or entities fall into these groups, it appears clear based on its limited disclosure that some of the groups include individuals or entities that are not investors. Because the investor counts merge multiple schemes into one, they should be dismissed as duplicitous.

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

3

**I.     The Investor Counts Are Duplicitous Because They Allege Multiple Schemes.**

To determine whether a count alleges more than one "scheme," the court must consider whether the indictment on its face alleges "'one overall agreement among the various parties.'" *Gordon*, 844 F.2d at 1401 (quoting *United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985)). The relevant factors in determining whether there is a single scheme are "the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of times and goals." *Morse*, 785 F.2d at 775-76. An indictment that fails to "allege any nexus whatsoever, chronological, substantive or otherwise," among transactions, actors, or circumstances of the alleged scheme involves multiple schemes that must be charged in separate counts. *Hardy*, 762 F. Supp. at 1408. Because the Indictments fail to allege any nexus among the five categories of individuals and entities it defines as "investors," they charge more than one scheme.

The "nature" of the alleged scheme involving "investors" suggests multiple schemes. The expansive definition of "investors" incorporates distinct classes of purported victims, not all of whom were in fact *investors*. The (First) Superseding Indictment alleged that Defendants' scheme to defraud consisted of "soliciting *investments* through making the false and misleading representations set forth in this Indictment." Superseding Indictment, ECF No. 39, ¶ 20 (emphasis added). The government attempts to expand that charge exponentially simply by re-defining the term "investor" to encompass additional people and groups—without alleging any facts that support the erroneous claim that *all* of those categories had "investor" relationships with Theranos.

The government's definition of "investor" strains the meaning of that term. An investor is ordinarily understood as a purchaser of a security or other property with the expectation of earning a profit. *See Black's Law Dictionary* (11th Ed. 2019), investor. The Indictments confirm that common sense understanding: each count of alleged wire fraud (Counts Three through Eight) involves transfers of money by individuals or entities in exchange for Theranos securities. A business partnership, however, may derive from a contractual relationship and involves two parties who agree to undertake a venture with shared benefits and shared risks. *See Black's Law Dictionary* (11th Ed. 2019), partner. A

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

4

business partner is not an *investor*. *Cf. U.S. CFTC v. Paron Cap. Mgmt. LLC*, 2012 WL 2395259, at *5 (N.D. Cal. June 25, 2012) (holding that commodities statute protecting "investors" from "improper trading practices" did not extend to protect traders from "their business partners"). Even the government's own description of Theranos' partnership with Walgreens (the only "partner" mentioned in the Indictments) fails to suggest that Walgreens *invested* in Theranos. *E.g.*, TSI, ECF No. 469 ¶ 10 ("Theranos pursued a *partnership* with national pharmacy chain Walgreens." (emphasis added)). To the contrary, by alleging that Ms. Holmes made misrepresentations to "investors" about Theranos' "partnership" with Walgreens, the Indictments affirmatively suggest that Walgreens is not an investor. *Id.* ¶ 12(D).[1]

The same problem arises with respect to the government's attempt to define "investors" to include Theranos' board of directors. To be sure, a number of Theranos directors did invest money in exchange for Theranos securities, and thus would be investors under the ordinary meaning of that term. But they would already be presumably included in "investors." The government's specific reference to Theranos' board of directors reflects that it will broaden the meaning of "investors" to cover *additional* directors who do not qualify as "investors" as that term is commonly understood. The government's August 21 email confirms that intent: in response to the defense's question about who is included in this category, the government wrote that "[m]embers of Theranos' board are easily identifiable from the discovery provided to you" and that "many are listed in [Theranos'] stock certificate ledger." Saharia Decl., Ex. A. The government thus includes in its new definition *all* Board members, whether or not they purchased Theranos equity.

To be sure, a single scheme to defraud "investors" might have overlapping goals, times, or transactions. *United States v. Morse*, a case involving a series of tax shelter schemes, is illustrative. 785 F.2d at 774. In *Morse*, the Ninth Circuit concluded that an indictment that "clearly detailed" four

---

[1] In prior briefing the government treated "business partners" separately from "investors." *See* Gov't Opp'n to Def.'s Mot to Dismiss, ECF No. 265 at 4-5 (explaining that the government had produced documents collected from *both* investors and business partners "including [Theranos'] most prominent partner Walgreens.").

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

5

investment programs devised by the defendants to defraud investors was not duplicitous. *Id.* at 774, 775. But the indictment in *Morse* alleged vehicles through which the defendants accomplished the *same type* of harm—namely, defrauding actual investors. *Id.* at 774. The same is true in *United States v. Bryan*, another tax shelter case. 868 F.2d 1032, 1038 (9th Cir. 1989). There, the Ninth Circuit examined an indictment charging the defendants with a single tax-shelter scheme to defraud both taxpayers and the U.S. Treasury, concluding that the indictment was not duplicitous merely because the scheme involved two sets of victims. *Id.* In reaching that conclusion, the court reasoned that "illegal tax shelter promotion schemes" often have the intended effect of simultaneously "defrauding the specific taxpayers who are indicted to participate" and "defrauding the United States of tax revenue." *Id.*

In contrast, the Indictments here provide no such connection among the disparate categories of so-called "investors." Instead, the government sweeps in multiple possible schemes simply by calling "business partners," directors, and other individuals or entities "investors." The government does not allege facts from which the Court could conclude that Defendants' alleged scheme to defraud had the same nature and goals across these various groups—i.e., that Defendants "solicited *investments*" from these individuals "through making . . . false and fraudulent representations." *E.g.*, TSI, ECF No. 469 ¶ 20 (emphasis added). Theranos' relationships with Walgreens and Safeway—which were jointly planning business endeavors together—were entirely different than its relationships with investors. The government's prior treatment of "investors" and "business partners" as distinct categories, *see* n.1, *supra*, confirms the point. And calling all Board members "investors," as the government purports to be doing, makes no sense at all. As the government implicitly concedes in its e-mail, *see* p. 5, *supra*, not all Board members owned stock (and even fewer transferred money to Theranos in exchange for stock, as Paragraph 3 of the Indictments require). As a result, an indictment that merges a scheme to defraud "investors" with a scheme to defraud Board members is, by its very nature, duplicitous.

The problems created by this broader, duplicitous definition of "investors" are many. One issue is that the individuals and entities in each distinct group had access to different information. Theranos had different contractual relationships with different groups encompassed within the government's new

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

6

definition of "investors."  Walgreens, for example, had access to different information than ordinary investors.  Members of the Board of Directors, for example, had access to information that an ordinary investor or business partner would not; Ms. Holmes, moreover, had many conversations with Board members that had nothing to do with soliciting investments.  And Theranos' contractual obligations to these groups varied.  Given these distinctions, the materiality analysis may vary substantially from group to group.  As the Ninth Circuit has held, "a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the *decisionmaking body to which it was addressed*."  *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (emphasis added).  Here, the decision making bodies are so distinct that, even considered objectively, information that might have the natural tendency to influence one group might not influence the other.

In addition, the Indictments do not contain allegations that show that the object of the charged conduct as to these distinct groups were the same.  As the Court has already held, the government must allege a scheme to defraud that has as its object the deprivation of "property in the hands of the victim."  ECF No. 330 at 27 (quoting *Cleveland v. United States*, 531 U.S. 12, 15 (2000)).  Under the common-sense definition of investor, the property would be money in exchange for shares of the company.  In its Rule 404(b) notice, the government states that alleged misrepresentations were made to Walgreens and Safeway "[in] pursuing and maintaining" partnerships with the entities—not to obtain investments.  Saharia Decl. Ex. B.  Similarly, it alleges that "Defendants deceived Theranos' Board of Directors in furtherance of their schemes to defraud investors and patients" —not to solicit unidentified "investments" from Board members.  *Id.*  It appears that the government now has yet additional theories of deprivation of money or property, although it has not explained what they are.  If it does, the objects of the charged scheme would improperly diverge, creating two or more conspiracies, not one.

These issues illustrate how these five different categories are too distinct to be part of one unitary scheme.  The government could have charged a separate scheme to defraud "business partners" or an independent scheme to defraud Theranos' directors from the beginning.  It did not.  It should not now be

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

7

permitted to expand the reach of the alleged "scheme to defraud investors," and thus circumvent the statute of limitations, merely by altering its definition of who is an "investor."

## II.     The Duplicitous Investor Counts Should Be Dismissed.

The expansive definition of "investors" underlying the alleged "scheme to defraud investors" prejudices Ms. Holmes' right to a fair trial, requiring dismissal of the investor-related counts. The Court need not "roll the dice and preserve the confusion" of these duplicitous counts until after evidence is presented at trial. *Hardy*, 762 F. Supp. at 1410. Instead, "in light of potential infringement of [defendant's] rights," the duplicitous counts should be dismissed now. *Id.* Requiring Ms. Holmes to defend against multiple schemes to defraud charged as only one scheme will create the very harms that the duplicity doctrine aims to prevent.

First, the broad and vague reach of the definition of "investor" present a substantial risk of a non-unanimous jury verdict. *See Gordon*, 844 F.2d at 1401-02. Because the Indictments include five different categories of "investors," one juror could reach a verdict related to a scheme to defraud an individual investor who purchased shares in Theranos—whereas another could conclude that there was a scheme to defraud a "business partner" of Theranos. Under the government's sweeping definition of "investor," both jurors would find a scheme to defraud "investors," without agreeing on the underlying conduct.

Second, the expansive definition of "investor" risks prejudicial evidentiary rulings. *See United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). "[E]vidence admissible on one offense might be inadmissible on the other." *Id.* at 116-17. The expanded meaning of "investor" could allow the government to admit evidence that may otherwise be irrelevant under Rule 401 or of minimal probative value and therefore excluded under Rules 402 or 403. It could also permit the government to circumvent Rule 404(b) for certain "other acts" evidence. For example, under the government's broad definition of "investor," evidence of a transaction with a business partner such as a pharmaceutical company may avoid scrutiny as an "other act" under Rule 404(b). But if the term "investor" were limited to include people or entities who purchased shares of Theranos evidence of a misrepresentation

MOTION TO DISMISS AS DUPLICITOUS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS
CR-18-00258 EJD

to a non-investor business partner would likely be considered an "other act" that may well be inadmissible under Rule 404(b). *See, e.g.*, *United States v. Shayota*, 2016 WL 6093237, at *4 (N.D. Cal. Oct. 19, 2016) (holding inadmissible under Rule 404(b) evidence of an "other act" in which the "only connection between these two acts" was that the defendant "engaged in some sort of fraud"). Because the duplicitous investor counts infringe Ms. Holmes' right to a fair trial, they should be dismissed.

Finally, as discussed above, the government's expansion of the meaning of "investor" appears designed to smuggle into the case otherwise-time-barred claims and relieve the government of the proscriptions of Rule 404(b). Theranos began discussions with Walgreens, for example, in 2010. The government itself alleges that the relationship had stalled by 2014. *E.g.*, TSI, ECF No. 469 ¶ 12(D). If the government is allowed to add claims regarding Walgreens by the expedient of calling Walgreens an "investor," after treating Walgreens as something other than an "investor" for the first two years of this case, Ms. Holmes will now face for the first time claims relating to conduct that occurred well more than five years ago. Additionally, if the government's expansive definition of investor is allowed to stand, the government would circumvent the requirements of Rule 404(b) with just a stroke of its pen.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts One and Three through Eight of the Second and Third Superseding Indictments as duplicitous.

DATED: August 28, 2020                                   Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2020 a copy of this filing was delivered via ECF on all counsel of record.

        /s/ Amy Mason Saharia
        AMY MASON SAHARIA
        Attorney for Elizabeth Holmes