JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 ⎪ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 ⎪ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>        Defendants. | Case No. CR-18-00258-EJD<br><br>**MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT**<br><br>Date:      October 6, 2020<br>Time:     10:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

1

## **MOTION TO DISMISS**

2      PLEASE TAKE NOTICE that on October 6, 2020, at 10:00 a.m., or on such other date and time

3  as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose,

4  CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does

5  respectfully move the Court pursuant to Rules 8 and 12 of the Federal Rules of Criminal Procedure to

6  dismiss Counts Three through Eight and Ten of the Second Superseding Indictment and Counts Three

7  through Eight, Ten, and Eleven of the Third Superseding Indictment as time-barred under 18 U.S.C.

8  § 3282.  The Motion is based on the below Memorandum of Points and Authorities, the record in this

9  case, and any other matters that the Court deems appropriate.

10

11  DATED: August 28, 2020

12

13                                          /s/ Amy Mason Saharia
                                            KEVIN DOWNEY
14                                          LANCE WADE
                                            AMY MASON SAHARIA
15                                          KATHERINE TREFZ
                                            Attorneys for Elizabeth Holmes
16

17

18

19

20

21

22

23

24

25

26

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
    SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28  SUPERSEDING INDICTMENT
    CR-18-00258 EJD

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .....................................................................................................................4

    I.      Counts Three through Eight Are Time-Barred. ...........................................5

    II.     Counts Ten and Eleven Are Time-Barred. ................................................8

          A.     The Government's Filing of the Information Did Not Toll the Statute of Limitations for Purposes of 18 U.S.C. § 3282.......................................9

              1.     The filing of an information without the defendant's consent does not satisfy Section 3282........................................................9

              2.     The limited cases that reached the contrary conclusions are irrelevant and/or wrongly decided. ......................................15

          B.     18 U.S.C. § 3288 Does Not Help the Government................................20

CONCLUSION.................................................................................................................22

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

i

## **TABLE OF AUTHORITIES**

### **CASES**

Pages

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989)..................................................................14

*Jaben v. United States*, 381 U.S. 214 (1965) ...................................................................... *passim*

*Keene Corp. v. United States*, 508 U.S. 200 (1993) .....................................................................14

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938 (2016) ...........................................9

*Smith v. United States*, 360 U.S. 1 (1959) ................................................................................11

*Toussie v. United States*, 397 U.S. 112 (1970) ...........................................................................15

*United States v. Beardslee*, 197 F.3d 378 (9th Cir. 1999) ............................................................4

*United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998) ............................................ *passim*

*United States v. Clawson*, 104 F.3d 250 (9th Cir. 1996) ......................................................20, 21

*United States v. Clemenic*, 1988 U.S. Dist. LEXIS 12601 (N.D. Ill. Oct. 24, 1988) ...............10

*United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992) ............................................................18

*United States v. Ellis*, 622 F.3d 784 (7th Cir. 2010)....................................................................10

*United States v. Gonsalves*, 675 F.2d 1050 (9th Cir. 1982)........................................................15

*United States v. Hsin-Yung*, 97 F. Supp. 2d 24 (D.D.C. 2000)...................................................19

*United States v. Italiano*, 894 F.2d 1280 (11th Cir. 1990).............................................................6

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013)..............................................................5, 6, 7

*United States v. Machado*, 2005 WL 2886213 (D. Mass. Nov. 3, 2005) ..............................11, 18, 19, 20

*United States v. Marifat*, 2018 WL 1806690 (E.D. Cal. Apr. 17, 2018) ...................................21

*United States v. Moore*, 37 F.3d 169 (5th Cir. 1994)..................................................................10

*United States v. O'Neill*, 463 F. Supp. 1205 (E.D. Pa. 1979)....................................................6, 7

*United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001) .........................................................6, 7

*United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003) ............................................................6

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

Pages

*United States v. Spanier*, 744 F. App'x 351 (9th Cir. 2018)..........................................................6

*United States v. Stewart*, 425 F. Supp. 2d 727 (E.D. Va. 2006) ..........................................17, 18

*United States v. Tadros*, 310 F.3d 999 (7th Cir. 2002) ..............................................................4

*United States v. Teran*, 98 F.3d 831 (5th Cir. 1996) ................................................................10

*United States v. Thompson*, 287 F.3d 1244 (10th Cir. 2002) ...................................................10

*United States v. Vitanov*, 2007 WL 1793584 (D. Ariz. June 19, 2007).....................................7

*United States v. Watson*, 941 F. Supp. 601 (N.D. W. Va. 1996) ........................................18, 19

*United States v. Wessels*, 139 F.R.D. 607 (M.D. Pa. 1991) .....................................................10

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001) ...................................................14

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. amend V...................................................................................................................10

U.S. Const. amend VI .................................................................................................................21

18 U.S.C. § 1343 ..........................................................................................................................2

18 U.S.C. § 3238 ........................................................................................................................19

18 U.S.C. § 3282 ...................................................................................................................*passim*

18 U.S.C. § 3288 ...................................................................................................................*passim*

18 U.S.C. § 3293 ........................................................................................................................14

18 U.S.C. § 3294 ........................................................................................................................14

18 U.S.C. § 3300 ........................................................................................................................14

I.R.C. § 6531 ..............................................................................................................................16

Fed. R. Crim. P. 3 ......................................................................................................................12

Fed. R. Crim. P. 4 ................................................................................................................12, 13

Fed. R. Crim. P. 5 ................................................................................................................12, 13

Fed. R. Crim. P. 7 ...............................................................................................................*passim*

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

Pages

Fed. R. Crim. P. 10 .................................................................................................................9

Fed. R. Crim. P. 58 ...............................................................................................................10

Fed. R. Evid. 404 ...................................................................................................................3

**OTHER AUTHORITIES**

Black's Law Dictionary (2020) ...............................................................................................9

Merriam-Webster's Dictionary (2020) ...................................................................................9

Webster's Collegiate Dictionary (2020) .................................................................................9

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Counts Three through Eight and Ten of the Second Superseding Indictment ("SSI") and Counts

3    Three through Eight, Ten, and Eleven of the Third Superseding Indictment ("TSI"), charging individual

4    acts of wire fraud, are time-barred.[1]  A five-year statute of limitations governs this case.  *See* 18 U.S.C.

5    § 3282.  Counts Three through Eight are based on alleged investor-related wirings that occurred in 2013

6    and 2014—well more than five years before the grand jury returned the TSI on July 28, 2020.  And

7    because the TSI charges a scheme to defraud "investors" that is materially broader in length and scope

8    than the one charged in the (First) Superseding Indictment, the previous indictment does not toll the

9    statute of limitations for Counts Three through Eight.  If the government wanted to charge wire-fraud

10   counts based on the new scheme to defraud that it has charged in the TSI, it was required to do so within

11   five years of the charged wirings.

12    Counts Ten and Eleven similarly are time-barred.  They charge new counts of wire fraud, based

13   on new wirings occurring in May 2015—more than five years before the grand jury returned the TSI in

14   July 2020.  The government has suggested in prior briefing that its filing of an information in May

15   2020—which it did with full knowledge that Ms. Holmes did not consent to prosecution by

16   information—served to toll the statute of limitations on these charges.  That is incorrect.  To toll the

17   statute of limitations, the government must "institute" an information, and an information cannot be

18   "instituted" without a defendant's waiver of her right to be tried by a grand jury.  The opposite

19   conclusion would give the government the right to extend the statute of limitations *sua sponte* in any

20   case, against anyone, just by filing a patently unconstitutional information.  This Court should reject that

21   dangerous construction of 18 U.S.C. § 3282.

22    Counts Three through Eight and Ten of the Second Superseding Indictment and Counts Three

23   through Eight, Ten, and Eleven of the Third Superseding Indictment should be dismissed.

24

---

25    [1] Ms. Holmes focuses her argument here on the Counts in the Third Superseding Indictment, but

26   the same reasoning bars the identical Counts that were returned as part of the Second Superseding
     Indictment, ECF No. 449, on July 14, 2020.

**BACKGROUND**

_Counts Three through Eight._  Counts Three through Eight of the TSI charge wire fraud under 18 U.S.C. § 1343.  Each alleges that Ms. Holmes engaged in a scheme to defraud "investors" and transmitted or caused to be transmitted wire communications in furtherance of that alleged scheme.  TSI, ECF No. 469 ¶ 24.  The TSI alleges six wire communications occurring on the following dates: December 30, 2013; December 31, 2013 (two counts); February 6, 2014; and October 31, 2014 (two counts).  _Id._

The specific wires charged in Counts Three through Eight were also charged in the Superseding Indictment returned in 2018.  _See_ Superseding Indictment, ECF No. 39, ¶ 24.  The alleged scheme to defraud, however, was much narrower.  The Superseding Indictment alleged that the scheme to defraud "investors" took place between 2013 and 2015.  _See_ ECF No. 39, ¶ 11 ("From a time unknown but no later than 2013 through 2015 . . . .").  The TSI, returned nearly two years later, doubles the length of the charged conspiracy:  the government now claims that Defendants were engaged in scheme to defraud investors from 2010 to 2015.  _See_ TSI ¶ 11 ("From a time unknown but no later than 2010 through 2015 . . . .").  That lengthening of the charged conspiracy sweeps in numerous additional investors and alleged statements to investors, made at a different stage in the company's operations.  Notably, the TSI itself draws a distinction between Theranos' pre-2013 operations and its operations from 2013 onwards.  _See_ TSI ¶ 5 ("During its first ten years, from approximately 2003 to 2013, Theranos operated in what HOLMES called 'stealth mode,' with little public attention."); _id._ ¶ 6 ("In and around 2013, Theranos began to publicize its technological advances.").

The TSI also broadens the scope of the charged scheme to defraud investors by redefining the term "investors."  Paragraph 3 of the Superseding Indictment stated in relevant part:  "When Theranos solicited and received financial investments from investors, the money was deposited into its Comerica Bank account."  Ms. Holmes understood "investors" to have its common-sense meaning of equity investors—_i.e._, individuals who gave Theranos money in exchange for equity shares.  Ms. Holmes did

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

1  not understand that term to refer to Theranos business partners who did not own equity shares.  Nor did

2  she understand it to include members of Theranos' Board of Directors who did not convey money to

3  Theranos as alleged in paragraph 3 of the Superseding Indictment.  The Superseding Indictment

4  confirmed that common-sense meaning.  First, the wiring alleged in each wire-fraud count (Counts

5  Three through Eight) was a transfer of money to Theranos in exchange for Theranos shares.  Second, the

6  indictment distinguished between "investors" and companies with which Theranos had a business

7  partnership such as Walgreens.  The Superseding Indictment characterized the relationship between

8  Walgreens and Theranos as a "partnership," not as an investor relationship, ECF No. 39, ¶¶ 10, 12(D),

9  and alleged that Ms. Holmes made misrepresentations to "investors" about Theranos' "partnership" with

10  Walgreens, *id.* ¶ 12(D).

11         The government confirmed this distinction in its brief opposing Ms. Holmes' motion to dismiss

12  for lack of notice, where it described its discovery production as including documents "from Theranos

13  itself, from former employees of the company, from *investors*, from *business partners* of Theranos

14  including its most prominent partner Walgreens," among others.  ECF No. 265, at 4-5 (emphasis added).

15  The government further confirmed this distinction when it provided notice—months before the return of

16  the TSI—that in addition to the conduct charged in the Superseding Indictment, it intended to introduce

17  evidence of misrepresentations to members of Theranos' Board of Directors "in furtherance of

18  [Defendants'] scheme to defraud investors and patients" to business partners such as Walgreens and

19  Safeway "[i]n pursuing" "partnerships" (not investments) with these companies pursuant to Federal Rule

20  of Evidence 404(b).  Saharia Decl., Ex. A.

21         The TSI adds a new sentence to paragraph 3, which reads:  "Theranos's investors included

22  individuals, entities, certain business partners, members of its board of directors, and individuals and

23  entities who invested through firms formed for the exclusive or primary purpose of investing in

24  Theranos's securities."  TSI, ¶ 3.  The TSI does not state which "certain business partners" it is referring

25

26

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
    SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28  SUPERSEDING INDICTMENT
    CR-18-00258 EJD

1  to, nor does it state which members of the Theranos Board of Directors are included in this definition.[2]

2  On August 21, the government stated in an e-mail that "certain business partners" means Walgreens and

3  Safeway.  Saharia Decl., Ex. B.  As to Board members, the government vaguely suggested in the same

4  e-mail that it intends to include all Board members, whether or not they transferred money to Theranos

5  in exchange for stock:  "Members of Theranos' board are easily identifiable from the discovery provided

6  to you.  Indeed, many are listed in the stock certificate ledger reflected at THER-0905030."  *Id.*

7       Counts Ten and Eleven.  Counts Ten and Eleven are new charges of wire fraud that did not

8  appear in the Superseding Indictment.  These counts charge Defendants with transmitting or causing to

9  be transmitted wire communications in furtherance of a scheme to defraud patients.  TSI ¶ 26.  The wire

10  communication alleged in Count Ten is the transmission of patient E.T.'s test results on May 11, 2015.

11  *Id.*  The wire communication alleged in Count Eleven is the transmission of patient M.E.'s test results on

12  May 16, 2015.  *Id.*

13       The government first purported to charge these counts in a Superseding Information it filed on

14  May 8, 2020.  ECF Nos. 390, 391.  Before filing that information, the government asked Ms. Holmes

15  (through counsel) whether she would waive her right to a grand-jury indictment, and she responded that

16  she would not.  Decl. of L. Wade in Supp. of Mot. to Dismiss, ECF No. 399-1 ¶ 2.  A grand jury

17  returned the Second Superseding Indictment on July 14, 2020 that contained Count Ten but did not

18  contain Count Eleven.  ECF No. 449, ¶ 26.  The government then added Count Eleven in the Third

19  Superseding Indictment, which was returned on July 28, 2020.

20                                              **ARGUMENT**

21       The statute of limitations applicable to wire fraud is five years.  *See* 18 U.S.C. § 3282.  The

22  limitations period begins to run "when all the elements of the underlying offense have been committed."

23  *United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999).  For the wire-fraud counts, all of the

24  elements of the alleged offenses were committed as of the dates of the at-issue wirings.  *See, e.g.*, *United*

25  _____

26       [2] Ms. Holmes addresses the duplicitous nature of this definition, and its lack of notice, in
separate motions to dismiss.

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT

28  CR-18-00258 EJD

*States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002) (mailings or wiring commence the running of the five-year statute for mail/wire fraud).  And for each of Counts Three through Eight, Ten and Eleven, the at-issue wirings occurred more than five years before the grand jury returned the TSI on July 28, 2020 (and before the grand jury returned the SSI two weeks earlier on July 14, 2020).  The relevant question is thus whether any ground to toll the statute of limitations exists.  None exists:  the counts should be dismissed as time-barred.

## I.      Counts Three through Eight Are Time-Barred.

Counts Three through Eight of the Superseding Indictment charged Defendants with transmitting or causing to be transmitted wire communications in furtherance of a scheme to defraud "investors" from 2013 to 2015.  Those same counts of the TSI charge Defendants with transmitting or causing to be transmitted wire communications in furtherance of a different, broader scheme to defraud "investors" between 2010 and 2015.[3]  Because the TSI broadens and substantially amends the Superseding Indictment, the government cannot rely on the Superseding Indictment to toll the statute of limitations; Counts Three through Eight of the TSI must themselves be timely.  And because the at-issue wirings occurred in 2013 and 2014—more than five years ago—Counts Three through Eight are time-barred.

As a general matter, "the return of an indictment tolls the statute of limitations with respect to the charges contained in the indictment."  *United States v. Liu*, 731 F.3d 982, 996 (9th Cir. 2013) (quoting *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990)).  Tolling continues when a superseding indictment *on the same charges* is returned while a previous indictment is still pending; in that case, the superseding indictment is said to relate back to the prior one.  *Id.*  If the superseding indictment "broaden[ed] or substantially amend[ed] the charges in the original indictment, the statute of limitations would not have been tolled as to those charges."  *Id.* (alterations in original) (internal quotation marks

---

[3] The TSI does not indicate when in 2015 the alleged conspiracies and scheme to defraud ended.  Depending on the evidence at trial, Ms. Holmes reserves her rights to challenge the conspiracy counts of the operative indictment on statute of limitations grounds as well.

1  omitted).  By contrast, where a superseding indictment simply "duplicate[s] verbatim" the charges from

2  the prior indictment, the statute of limitations on those charges is tolled.  *Id.* (citation omitted).

3          To decide whether a superseding indictment broadens or substantially amends the prior

4  indictment, courts consider "whether the additional pleadings allege violations of a different statute,

5  contain different elements, rely on different evidence, or expose the defendant to a potentially greater

6  sentence." *Id.* at 997 (internal quotation marks omitted).  "[T]he charges are defined not simply by the

7  statute under which the defendant is indicted, but also by the factual allegations that the government

8  relies on to show a violation of the statute." *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir.

9  1990) (internal quotation marks omitted).  "The central concern in determining whether the counts in a

10 superseding indictment should be tolled based on similar counts included in the earlier indictment is

11 notice." *Liu*, 731 F.3d at 997.  Accordingly, a superseding indictment that narrows, rather than

12 broadens, the original charges will relate back to the original indictment.  *See, e.g., United States v.*

13 *Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003).  And a superseding indictment that merely provides

14 "additional details" about the same alleged crime is similarly unproblematic.  *United States v. Spanier*,

15 744 F. App'x 351, 354–55 (9th Cir. 2018).

16         Several cases are illustrative.  In *Liu*, the Ninth Circuit held that an indictment charging the

17 defendant with copyright infringement of music did not toll the statute of limitations with respect to

18 copyright infringement of a motion picture because the defendant lacked notice that "he was to be

19 subject to copyright infringement charges involving motion pictures." 731 F.3d at 997.  In *United States*

20 *v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001), the Eleventh Circuit held that a superseding indictment that

21 dramatically expanded the length of the charged conspiracy, and substantially increased the alleged

22 amount of imported drugs, did not relate back to the earlier indictment for purposes of the statute of

23 limitations.  *Id.* at 1253–54.  And in *United States v. O'Neill*, 463 F. Supp. 1205 (E.D. Pa. 1979), the

24 district court held that a superseding indictment that alleged different misrepresentations, albeit in the

25 same document at issue in the original indictment, substantially amended the charge and did not relate

26

27 MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
   SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28 SUPERSEDING INDICTMENT
   CR-18-00258 EJD

1   back to the original indictment.  *Id.* at 1208; *see also United States v. Vitanov*, 2007 WL 1793584, at *2

2   (D. Ariz. June 19, 2007) (same).  In so holding, the district court emphasized that the relevant inquiry is

3   whether the defendant was on notice, stating:  "Statutes of limitations are intended to insure, Inter alia,

4   that a defendant receives notice, within a prescribed time, of the acts with which he is charged, so that he

5   and his lawyers can assemble the relevant evidence before documents are lost, memory fades, etc."  463

6   F. Supp. at 1208.

7          Here, Counts Three through Eight broaden and substantially amend the charges against Ms.

8   Holmes in two ways.  First, as in *Ratcliff*, the government has substantially expanded the length of the

9   charged scheme to defraud, which is an element of each of the counts.  *See* TSI ¶¶ 11, 24.  The

10  Superseding Indictment charged a scheme to defraud investors from 2013 to 2015; the TSI *doubles* the

11  length of the charged scheme, from 2010 to 2015.  Ms. Holmes lacked any notice that the government

12  was charging her with engaging in a scheme to defraud from 2010 to 2013.  That expansion of the

13  charged scheme sweeps in countless additional investors and representations—none of which Ms.

14  Holmes understood to be part of the charges in this case.  And by expanding the charged scheme

15  backwards in time, the government has prejudiced Ms. Holmes in precisely the way that the statute of

16  limitations is intended to prevent:  by virtue of the government's amendment, Ms. Holmes is facing—for

17  the first time in this case—charges based on conduct that occurred ten years ago, long outside the statute

18  of limitations.  Because the government's dramatic lengthening of the charged scheme broadens and

19  substantially amends the wire-fraud counts, the prior indictment cannot toll the statute of limitations on

20  these counts.

21         Second, as in *Liu*, the government has substantially broadened the scope of the charged conduct

22  by redefining the term "investors."  As set forth above, the government added a new definition of

23  "investors" to include "business partners," which the government has explained in an e-mail means

24  Walgreens and Safeway.  *See* pp. 3–4, *supra*.  For the reasons set forth above, Ms. Holmes lacked any

25  notice under the prior indictment that the government was claiming that Ms. Holmes schemed to defraud

26

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
    SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28  SUPERSEDING INDICTMENT
    CR-18-00258 EJD

Walgreens and Safeway.  To the contrary, the prior indictment affirmatively *pointed away* from such a claim, by characterizing the relationship between Theranos and Walgreens as a "partnership" (and not an investor relationship) and by alleging that Ms. Holmes made representations to "investors" about Theranos' "partnership" with Walgreens.  Superseding Indictment, ECF No. 39, ¶¶ 10, 12(D).  Similarly, because the prior indictment characterized investors as persons or entities that made "financial investments" of "money" deposited into Theranos' bank account, *see* ECF No. 39, ¶ 3, Ms. Holmes lacked notice that the government was claiming that Board members who did not convey "money" to Theranos in that way were "investors."

This is not a case where the government has simply provided more detail about the scheme to defraud alleged in the Superseding Indictment.  Long after the relevant events, the government is attempting to expand dramatically the charged scheme to defraud, both by lengthening its duration and increasing its scope.  If the government wishes to expand the charged scheme to defraud, it cannot rely on the prior, narrower indictment to toll the statute of limitations.  It must show that the broadened charges are independently timely, as of the date of the TSI.  It cannot do that for Counts Three through Eight.  As a result, those counts must be dismissed.

## II.    Counts Ten and Eleven Are Time-Barred.

Counts Ten and Eleven charge wire fraud based on alleged wire communications that occurred on May 11 and 16, 2015 in furtherance of a scheme to defraud patients.  Although the government initiated its investigation in 2015, the indictments that charged these wire-fraud counts were not returned until on July 14 and 28, 2020—more than five years after the statute of limitations had expired.  The government has suggested, however, that its filing of an information charging these counts on May 8, 2020 tolled the statute of limitations under 18 U.S.C. § 3282, even though no criminal proceedings could occur based on that information since Ms. Holmes did not waive her constitutional right to grand-jury

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

8

1   indictment.  This Court should reject that dangerous interpretation of Section 3282.[4]

2   **A.     The Government's Filing of the Information Did Not Toll the Statute of Limitations for Purposes of 18 U.S.C. § 3282.**

3
4   **1.     The filing of an information without the defendant's consent does not satisfy Section 3282.**

5       a.     Section 3282 provides that "no person shall be prosecuted, tried, or punished for any

6   offense, not capital, unless the indictment is found or the information is instituted within five years next

7   after such offense shall have been committed."  18 U.S.C. § 3282(a).  Construing this provision must

8   necessarily commence with its plain text.  *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct.

9   1938, 1946 (2016).  Under the plain text, the mere filing of a felony information without consent does

10  not "institute" it.

11       The statutory text leaves no doubt that the charging instrument must be *effective*, and not merely

12  *filed*, to be "instituted."  To "institute" something means to "to originate and get established" or "to set

13  going."  Webster's Collegiate Dictionary (2020) (online version); *see also* Merriam-Webster's

14  Dictionary (2020) (online version) ("to originate and get established;" "to set going").  Similarly,

15  Black's Law Dictionary defines "institute" as "[t]o begin or start; commence."  Black's Law Dictionary

16  (2020) (online version).  Absent a waiver of indictment under Rule 7(b), an information purporting to

17  charge a felony does not "originate," "get established," "set going," "begin," "start," or "commence"

18  anything; it is a legal nullity.  A defendant cannot be arraigned on such an information without waiver,

19  *see* Fed. R. Crim. P. 10 adv. comm. notes to 2002 amendment, and as a result such a document does not

20

---

21   [4] To the extent the government invokes the pandemic and resulting suspension of grand-jury proceedings, that fact does not render these counts timely.  Neither Section 3282 nor Section 3288

22  contains an exception for pandemics or other emergencies, and only Congress can modify the statute of limitations in cases of emergencies.  In fact, shortly after the pandemic crisis arose, the Department of

23  Justice asked Congress to give the courts power to suspend statutes of limitations in emergency situations.  *See* Department of Justice Proposals for Addressing Issues Created by the COVID-19

24  Pandemic, available at https://int.nyt.com/data/documenthelper/6835-combed-doj-coronavirus-legisla/06734bbf99a9e0b65249/optimized/full.pdf#page=1.  Congress rejected that proposal.

25  Additionally, the pandemic cannot excuse the government's year-and-a-half delay in attempting to supersede the indictment based on evidence that was long in its possession.  Nothing in the record

26  suggests that the pandemic, and not the government's delay or (perhaps) prior unsuccessful attempts to supersede, that created this situation, nor could it given the government's position on grand-jury secrecy.

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD

28  SUPERSEDING INDICTMENT
    CR-18-00258 EJD
                                                            9

commence any criminal proceedings.  An information is "instituted" only when it is effective to "get

established" or "commence" a federal criminal case; and it is effective to do so only when it either

charges a misdemeanor or charges a felony and is accompanied by a waiver of indictment.  Fed. R.

Crim. P. 7(a)(2), 7(b), 58(b)(1).[5]

In fact, courts lack jurisdiction over felony informations where the government has not obtained

a valid waiver.  *See, e.g., United States v. Teran*, 98 F.3d 831, 835 (5th Cir. 1996) ("In the absence of a

valid waiver, the lack of an indictment in a felony prosecution is a defect affecting the jurisdiction of the

convicting court."); *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994) ("Unless there is a valid

waiver, the lack of an indictment in a federal felony case is a defect going to the jurisdiction of the

court." (quoting *United States v. Montgomery*, 628 F.2d 414, 416 (5th Cir. 1980))); *United States v.

Wessels*, 139 F.R.D. 607, 609 (M.D. Pa. 1991) ("Unless there is a valid waiver, the lack of an Indictment

in a federal felony case is a defect going to the jurisdiction of the court."); *United States v. Clemenic*,

1988 U.S. Dist. LEXIS 12601, at *8 (N.D. Ill. Oct. 24, 1988) ("[A] court only has jurisdiction over

felony proceedings brought on the basis of an indictment or brought upon an information where there is

a valid waiver of indictment.").  As Judge Zobel explained in rejecting the argument advanced by the

government here:

> [T]he court has no subject matter jurisdiction over a prosecution in which the government
> has filed an information without obtaining a valid waiver of indictment.  The jurisdictional
> nature of the waiver is grounded in the Fifth Amendment, which requires the government
> to prosecute felonies by indictment.  Under the Federal Rules of Criminal Procedure, the
> government may prosecute non-capital felonies by information instead, but only when the
> defendant has waived indictment "in open court and after being advised of the nature of
> the charge."  Fed. R. [Crim.] P. 7(b).  Thus, until a defendant has waived indictment
> pursuant to Rule 7(b), an information filed with the clerk of court cannot perform the same
> charging function as an indictment.  Indeed, a court in possession of an information but not

---

[5] Similarly, an indictment is "found" at the earliest when it is returned by a grand jury, as
required by the Fifth Amendment.  *See, e.g., United States v. Ellis*, 622 F.3d 784, 792 (7th Cir. 2010);
*United States v. Thompson*, 287 F.3d 1244, 1251-52 (10th Cir. 2002).  An indictment that is merely filed
with the court, without having been acted on by the grand jury, has not been "found" and cannot satisfy
the statute of limitations.

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

in possession of a waiver of indictment lacks subject matter jurisdiction over the case; such an information is virtually meaningless.

*United States v. Machado*, 2005 WL 2886213, at *2 (D. Mass. Nov. 3, 2005).

*Smith v. United States*, 360 U.S. 1 (1959), underscores the invalidity of a waiver-less information purporting to charge a felony.  In *Smith*, the government purported to charge a capital offense by information after obtaining a waiver of indictment.  Under Fed. R. Crim. P. 7(a) as it then stood, a capital offense could only be prosecuted by indictment; a defendant charged with a capital offense could not waive indictment.  Because Rule 7(a) did not permit the district court to proceed by information, even with a waiver, the Supreme Court concluded that "the United States Attorney did not have authority to file an information in this case and the waivers made by petitioner were not binding and *did not confer power on the convicting court to hear the case*."  360 U.S. at 10 (emphasis added).

The *Smith* analysis applies equally here.  Just as in *Smith*, where Rule 7(a) prescribed the method of initiating capital charges, here Rules 7(a) and 7(b) prescribe the method of instituting non-capital felony charges:  either an indictment or an information accompanied by a waiver of indictment.  And just as in *Smith*, where the failure to initiate capital charges as Rule 7(a) prescribed meant that the government lacked authority to file the information and to confer power on the court to proceed, here the failure to initiate non-capital felony charges as Rules 7(a) and 7(b) prescribe means that the government lacked authority to file the information and to confer power on the Court to proceed on the felony charges that the information purports to charge.  Because this meaningless information was powerless to "institute" anything, it cannot satisfy Section 3282.

b.    Supreme Court precedent construing the very same word in a different statute of limitations compels this conclusion.  In *Jaben v. United States*, 381 U.S. 214 (1965), the Court interpreted the word "instituted" in the statute of limitations governing felony tax evasion, which provided that "[w]here a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

11

1 | making of the complaint before the commissioner of the United States." *Id.* at 215-16 (quoting I.R.C.

2 | § 6531). The day before the statute of limitations was to expire, the government filed a complaint

3 | against the defendant; a grand jury then returned an indictment after the statute of limitations had

4 | expired; and the government invoked the 9-month grace period to argue that the indictment was timely.

5 | *Id.* at 216. As relevant here, the government argued that the mere *filing* a complaint as defined in Rule 3

6 | of the Federal Rules of Criminal Procedure operated to invoke the 9-month grace period under the

7 | relevant statute. *Id.* at 217. Accordingly, the government contended, it was irrelevant whether the

8 | complaint was sufficient to trigger further proceedings under Rules 4 and 5—*i.e.*, whether it showed

9 | probable cause, a necessary condition to issuance of an arrest warrant and a preliminary hearing. *Id.*; *see*

10 | *also* Fed. R. Crim. P. 4–5.

11 | The Supreme Court emphatically rejected the government's argument. As the Court explained,

12 | "[t]he Government would . . . totally ignore the further steps in the complaint procedure required by

13 | [the] Rules." 381 U.S. at 217. By ignoring "the requirements of the Rules that follow," the

14 | government's position "would deprive the institution of the complaint before the Commissioner of any

15 | independent meaning which might rationally have led Congress to fasten upon it as the method for

16 | initiating the nine-month extension." *Id.* Moreover, the Court observed, the government's interpretation

17 | "provides no safeguard whatever to prevent the Government from filing a complaint at a time when it

18 | does not have its case made, and then using the nine-month period to make it." *Id.* at 220. The Court

19 | highlighted the dangerous implications of the government's position:

20 | 

21 | > [I]t follows from its position that once having filed a complaint, the Government need not
> further pursue the complaint procedure at all, and, in the event that the defendant pressed
> for a preliminary hearing and obtained a dismissal of the complaint, that the Government
> could nonetheless rely upon the complaint . . . as having extended the limitation period.

22 | 

23 | *Id.* at 218.

24 | Rejecting the government's position, the Court interpreted the word "instituted" to require that

25 | the complaint be "adequate *to begin effectively* the criminal process prescribed by the Federal Criminal

26 | 

27 | MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28 | SUPERSEDING INDICTMENT
CR-18-00258 EJD

12

1   Rules." *Id.* at 220 (emphasis added).  Thus, only a complaint that was "sufficient to justify the next

2   steps in the process—those of notifying the defendant and bringing him before the Commissioner for a

3   preliminary hearing"—could invoke the nine-month grace period.  *Id*; *see also id.* at 227 (Goldberg, J.,

4   concurring in part and dissenting in part) ("[T]he view that I would accept as correct is that the only

5   complaint that tolls the statute is one that begins effectively the criminal process prescribed by the

6   Federal Rules.").  The Court thus proceeded to determine whether the complaint showed probable cause

7   and, concluding that it did, it held that the government had properly invoked the nine-month grace

8   period.  *Id.* at 225 (majority op.).

9       *Jaben* requires rejecting the government's argument that the filing of an information without the

10   defendant's consent satisfies, and thus tolls, the statute of limitations under Section 3282.  *Jaben*

11   rejected the position, urged by the government in this case, that the mere filing of a complaint

12   "institutes" it.  To the contrary, the Court required that the filed complaint be "adequate to begin

13   effectively the criminal process prescribed by the Federal Criminal Rules."  *Id.* at 220.  A felony

14   information to which a defendant does not consent is not "adequate to begin effectively the criminal

15   process prescribed by the Federal Criminal Rules."  *Id.*  Rule 7(b) permits prosecution by felony

16   information only if a defendant waived prosecution by indictment in open court.  *See* Fed. R. Crim. P.

17   7(b).  Because Ms. Holmes did not waive prosecution by indictment—a fact the government knew when

18   it filed the information—the information was not "instituted" for purposes of Section 3282.

19       The government's position here would produce the very same concerns that motivated the Court

20   in *Jaben* to reject that position.  The Court explained that the nine-month grace period was not intended

21   "to grant the Government greater time in which to make its case (a result which could have been

22   accomplished simply by making the normal period of limitation six years and nine months)."  381 U.S.

23   at 219.  By construing "instituted" to mean the filing of the complaint supported by probable cause, thus

24   satisfying Rules 4 and 5, the Court read the statute to require a "safeguard" "to prevent the Government

25   from filing a complaint at a time when it does not have its case made."  *Id.* at 220.  Construing

26

27 MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD

28 SUPERSEDING INDICTMENT
CR-18-00258 EJD

1  "instituted" in Section 3282 to mean the mere filing of an information—absent the defendant's

2  consent—would provide no "safeguard" whatsoever.  It would give the government free reign to extend

3  the statute of limitations, on its own, any time it has not yet proven its case to a grand jury within the

4  five-year limitations period.  As the Court observed in *Jaben*, if Congress had intended to accomplish

5  that radical result, it would have said so expressly, rather than through the use of the word "instituted."

6  *See Whitman v. Am. Trucking Ass'ns, Inc*., 531 U.S. 457, 468 (2001) ("Congress, we have held, does not

7  alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not,

8  one might say, hide elephants in mouseholes.").

9          c.      The broader statutory scheme further confirms this reading of Section 3282.  *See Davis*

10  *v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory

11  construction that the words of a statute must be read in their context and with a view to their place in the

12  overall statutory scheme.").  In other sections of the same chapter of Title 18, Congress chose to base the

13  statute of limitations on the "filing" of an information.  *See* 18 U.S.C. § 3293 ("No person shall be

14  prosecuted, tried, or punished for a violation of, or conspiracy to violate [various laws relating to

15  financial institutions] . . . unless the indictment is returned or the information is filed within 10 years

16  after the commission of the offense."); *id.* § 3294 ("No person shall be prosecuted, tried, or punished for

17  a violation of or conspiracy to violate section 668 [regarding the theft of major artwork] unless the

18  indictment is returned or the information is filed within 20 years after the commission of the offense.");

19  *id.* § 3300 ("No person may be prosecuted, tried, or punished for a violation of section 2442 [regarding

20  the recruitment or use of child soldiers] unless the indictment or the information is filed not later than 10

21  years after the commission of the offense.").  Congress knows how to write statutes of limitations that

22  are satisfied by the "filing" of an information.  Reading "instituted" to mean "filed" would violate the

23  fundamental canon that "[w]here Congress includes particular language in one section of a statute but

24  omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the

25  disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (second

26

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD

28  SUPERSEDING INDICTMENT
CR-18-00258 EJD

1    alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

2        d.    Finally, if any doubt remained, the well-established principle that "criminal limitations

3    statutes are to be liberally interpreted in favor of repose" would require adopting Ms. Holmes' reading

4    of the statute.  *Toussie v. United States*, 397 U.S. 112, 115 (1970) (internal quotation marks omitted)

5    (citing *United States v. Habig*, 390 U.S. 222, 227 (1968)); *see also United States v. Gonsalves*, 675 F.2d

6    1050, 1055 (9th Cir. 1982).  This principle is grounded in the basic purpose of criminal statutes of

7    limitations—"to protect individuals from having to defend themselves against charges when the basic

8    facts may have become obscured by the passage of time and to minimize the danger of official

9    punishment because of acts in the far-distant past." *Toussie*, 397 U.S. at 114-15.  Construing Section

10    3282 to permit the government to toll the statute of limitations by filing an information without the

11    defendant's consent would undermine the very purpose of statutes of limitations.

12        This principle should apply with special force here in light of the constitutional implications of

13    the government's position.  The requirement of a grand-jury indictment for felonies is protected by the

14    Constitution and may be excused in only one situation:  where the defendant consents.  Ms. Holmes'

15    reading of Section 3282 protects that right by ensuring that, within five years of the accrual of a criminal

16    offense, the government must either persuade a grand jury to return an indictment or persuade the

17    defendant to waive her right to indictment.  The government's reading, by contrast, would permit the

18    government to extend the statute of limitations unilaterally, even when it has not made its case, by the

19    expedient of filing an information without the defendant's consent.  That is not, and cannot be, the law.

20            **2.**    **The limited cases that reached the contrary conclusions are irrelevant and/or**

21                    **wrongly decided.**

22        Only a handful of cases have considered the meaning of "instituted" in Section 3282, and none

23    binds this Court.  The cases are split.  The cases that adopted the government's position were wrongly

24    decided and/or arose in far different procedural postures, and this Court should reject them.

25

26

27

28

a.      The principal case accepting the government's position is *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998).  In *Burdix-Dana*, the government filed a waiverless information charging the defendant with a felony.  *Id.* at 742.  Two weeks later, a grand jury returned an indictment charging the same felony.  *Id.*  The information was filed within five years of the statute of limitations; the indictment was untimely.  *Id.*  The district court later dismissed the information.  The defendant moved to dismiss the indictment as untimely; in response, The government argued that the filing of the information "instituted" it for purposes of Section 3282 and that, upon dismissal of the "instituted" information, it was entitled to invoke the six-month grace period provided under Section 3288.

On appeal, the Seventh Circuit held that the filing of the information served to "institute" it under Section 3282.  It further held, with virtually no discussion of the text of Section 3288, that the government was entitled to invoke Section 3288.  *Burdix-Dana*'s cursory reasoning is unpersuasive for a host of reasons.  First, the Seventh Circuit ignored the plain meaning of the term "instituted."  It did not discuss that word's ordinary meaning or consult dictionary definitions.  Instead, it simply equated that term with "filed."  Second, and relatedly, the Seventh Circuit overlooked the fact that Congress used the term "filed" in other statutes of limitations, which confirms that Congress would have chosen "filed" if that had been its intent.

Third, the *Burdix-Dana* court relegated *Jaben* to a footnote, ignored the analysis in that case, and simply declared without any explanation that "[t]he considerations that led the Court to its conclusion in *Jaben* were specific to the statute under review, and therefore the case is distinguishable from the one we currently address."  *Id.* at 742 n.1.  The Seventh Circuit did not even acknowledge that *Jaben* construed the very same word "instituted" in a statute of limitations.  As discussed above, *Jaben*'s analysis of "instituted" in Section 6531 fits squarely with Section 3282(a), and the considerations that led the Court to require an effective complaint in that case apply with full force here.

Fourth, the Seventh Circuit violated the principle that criminal statutes of limitations must be liberally construed in favor of repose.  The court never mentioned that principle.  It observed that "the

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

16

statutory language does not compel" the reading of Section 3282(a) that the defense urged, 149 F.3d at 743, but that (in addition to being wrong) has it backwards. Because statutes of limitations must be construed liberally in favor of repose, the Seventh Circuit should have adopted the meaning of "instituted" that the defense advanced, unless the statutory language *compelled* the government's reading—which it does not.

Fifth, the Seventh Circuit acknowledged the troubling policy concerns that its interpretation raised but simply dismissed them. It observed that "by equating 'instituted' with 'filed' and then applying 18 U.S.C. § 3288, we have allowed prosecutors to file an information, wait indefinitely, then present the matter to a grand jury well beyond the statute of limitations but within six months of the dismissal of the information." *Id*. at 743. The court downplayed that problem, however, because the defendant does not have to "rest[] on her rights" and could instead move for dismissal of the information. *Id*. That ignores the fact that even if the defendant could obtain a dismissal the day the information was filed—an impossibility, given the need for briefing and decision—the prosecutor would still have obtained an automatic six-month extension of the limitations period under Section 3288 under that interpretation. This is the same policy concern that motivated the Supreme Court to construe "instituted" to require an *effective* complaint in *Jaben*.

Finally, the Seventh Circuit failed to consider the text of Section 3288 and decided, with virtually no analysis, that Section 3288 provided the government an automatic six-month grace period upon dismissal of an information filed without consent. As discussed in more detail below in Section II.B, that reading of Section 3288 is incorrect.

In sum, *Burdix-Dana* failed to engage with the many reasons why "instituted" cannot mean "filed" in Section 3282, and this Court should reject its flawed analysis.

b.      A few other courts have construed "instituted" to include an information filed without a defendant's consent, but in different circumstances. In *United States v. Stewart*, 425 F. Supp. 2d 727 (E.D. Va. 2006), an information was filed and the defendant signed an indictment waiver outside open

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT
CR-18-00258 EJD

17

court before the statute of limitations had run, but the waiver in open court required by Rule 7(b) did not occur until after the statute had run. *Id.* at 728. The court acknowledged that the defendant's position— that an information could not be instituted until the open-court waiver required by Rule 7(b) had occurred—was the "better argument" based on "[a] plain and common-sense reading of Rule 7(b) and § 3282." *Id.* at 731. The court noted that Judge Zobel had accepted those arguments in the *Machado* case, discussed below, and found Judge Zobel's decision "well-reasoned." *Id.* at 733. Nonetheless, because the "majority" of the "sparse" cases on point, including *Burdix-Dana*, favored the government, the court (oddly) held that "the doctrine of stare decisis requires the Court to find that the filing of the criminal information with the clerk's office tolled the statute of limitations." *Id.* at 731, 734.

*United States v. Watson*, 941 F. Supp. 601 (N.D. W. Va. 1996), involves virtually the same situation. In *Watson*, the defendant entered a written plea agreement with the government, and the government filed an information before the statute of limitations had expired, but the hearing at which he would waive his grand-jury right was not scheduled until after the statute had run. *Id.* at 601–02. Rejecting the defendant's motion to dismiss, the court held that the filing of the information "instituted" it under Section 3282.[6]

Whatever the merit of those decisions, they do not apply here. In those cases, the defendants had agreed to waive their indictment right before the statute of limitations had run, and the only issue confronting the courts was whether the defendants should be permitted to assert the statute of limitations

---

[6] The Watson court relied on *United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992). In *Cooper*, a defendant agreed to plead guilty before the statute of limitations had expired, but the information was filed only after the statute had run. *Id.* at 960. The Tenth Circuit held that the untimely filing of the information barred prosecution, notwithstanding the defendant's agreement to plead guilty. *Id.* at 963. In dicta, it observed that the district court was wrong to suggest that the information could not be filed until the defendant waived his grand jury right in open court. It stated: "Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant. Instead, the rule proscribes prosecution without waiver. Therefore, the information could have been filed within the period of limitations, thus providing a valid basis for the prosecution." *Id.* at 962-63 (emphases and footnote omitted). As is often the case with dicta, the court did not consider, or even cite, Section 3282. In any event, whether an information filed before the statute of limitations has run is "instituted" where the government has already obtained an agreement to waive the grand jury right is not presented by this case.

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

when the open-court waiver did not occur until after the statute had run.  This case does not present the question whether an "information" filed under such circumstances is "instituted" for purposes of the statute of limitations.  The government knew full well that Ms. Holmes did not waive her indictment right when it filed the information in this case.  It did not file the information with the good-faith expectation that Ms. Holmes would consent to prosecution by information.  Rather, it filed the information as a tactic to get around the statute of limitations without her consent.[7]

c.       The best-reasoned case, *United States v. Machado*, 2005 WL 2886213 (D. Mass. Nov. 3, 2005), rejected *Burdix-Dana*.  In *Machado*, the government filed an information before the statute of limitations expired, but the defendant did not waive his indictment right until after the statute had run.  Judge Zobel held that the filing of the information did not "institute" it for purposes of Section 3282 and thus dismissed the charges as time-barred.  *Id.* at *3.  Unlike the *Burdix-Dana* court, Judge Zobel used standard tools of statutory construction to determine the plain meaning of "institute."  *Id.* at *2 (consulting dictionary definitions).  Also, unlike the *Burdix-Dana* court, she observed that a "court in possession of an information but not in possession of a waiver of indictment lacks subject matter jurisdiction over the case; such an information is 'virtually meaningless.'"  *Id.* (quoting *United States v. Wessels*, 139 F.R.D. 607, 609 (M.D. Pa. 1991)).  Based on that analysis, Judge Zobel reasoned that "[s]ince an information is the functional and constitutional equivalent of an indictment only when accompanied by a valid waiver of indictment, no reason exists why that rule should not apply in the statute of limitations context."  *Id.* at *2.  She acknowledged, and rejected, *Burdix-Dana*, noting its "lack of logic and reason," and observing that the case "only emphasizes the potential dangers of the

---

[7] *United States v. Hsin-Yung*, 97 F. Supp. 2d 24 (D.D.C. 2000), cited in *Watson*, is even further afield.  The case involved a venue question under 18 U.S.C. § 3238, which authorizes the government to "file[]" an information in the District of Columbia in certain circumstances.  The defendants argued that venue was improper in the District of Columbia because the government had not obtained indictment waivers when it filed the informations.  The district court rejected that argument, stating that "Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant. Instead, the rule proscribes prosecution without waiver."  *Id.* at 28 (emphases and citation omitted). That case, which involved a statute using the word "filed," has no bearing on the meaning of the word "instituted" under Section 3282.

MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
SUPERSEDING INDICTMENT
CR-18-00258 EJD

1   government's approach."  *Id.* at *3.  This Court should follow *Machado* and reject the government's

2   flawed, dangerous position.

3   **B.      18 U.S.C. § 3288 Does Not Help the Government.**

4       Nor does 18 U.S.C. § 3288 save these untimely counts.  Section 3288 provides:

5       Whenever an indictment or information charging a felony is dismissed for any reason after
        the period prescribed by the applicable statute of limitations has expired, a new indictment
6       may be returned in the appropriate jurisdiction within six calendar months of the date of
        the dismissal of the indictment or information . . . or, if no regular grand jury is in session
7       in the appropriate jurisdiction when the indictment or information is dismissed, within six
        calendar months of the date when the next regular grand jury is convened, which new
8       indictment shall not be barred by any statute of limitations.  This section does not permit
        the filing of a new indictment or information where the reason for the dismissal was the
9       failure to file the indictment or information within the period prescribed by the applicable
        statute of limitations, or some other reason that would bar a new prosecution.
10

11  The government may argue, relying on *Burdix-Dana*, that dismissal of the information would entitle it to

12  invoke the six-month grace period provided by this section.  That is wrong, for several reasons.

13      For starters, the information has not been dismissed.  Although Ms. Holmes moved to dismiss

14  the information, *see* ECF No. 399, the government took the position that the return of the Second

15  Superseding Indictment mooted that motion and that the court should not dismiss the information.  Hr'g

16  Tr. 13:9–14:2, Jul. 20, 2020.  Having taken that position, the government cannot now argue the opposite.

17      Second, the six-month grace period is not automatic; the statute provides that the government

18  cannot invoke the grace period "where the reason for the dismissal" is "some . . . reason that would bar a

19  new prosecution."  (The *Burdix-Dana* court ignored this requirement entirely.)  The Ninth Circuit

20  construes this phrase to "cut[] off the six-month grace period" for the government "where the defect—

21  whether it's a limitation problem 'or some other' problem—is not capable of being cured."  *United*

22  *States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996) (citation omitted).  Here, if the information had

23  been dismissed, it would have been on the ground that the government is not permitted to prosecute Ms.

24  Holmes for felonies by information without her consent.  That defect is not capable of being cured; the

25  government can never charge and prosecute felonies by information without a defendant's valid waiver

26

27  MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
    SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28  SUPERSEDING INDICTMENT
    CR-18-00258 EJD

1    of indictment, and Ms. Holmes will not consent.  As a result, the government cannot rely on Section

2    3288.

3            Third, and similarly, because an information filed without consent is not "initiated" for purposes

4    of Section 3282, the dismissal of such an ineffective information cannot possibly trigger Section 3288.

5    "[The] underlying concept of § 3288 is that if the defendant was indicted within time, then

6    approximately the same facts may be used for the basis of any new indictment [obtained after the statute

7    has run], if the earlier indictment runs into legal pitfalls."  *Clawson*, 104 F.3d at 251 (quoting *United

8    States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976)).  Ms. Holmes was neither indicted nor charged by

9    an information with her consent on Counts Ten and Eleven "within time"; as a result, Section 3288 does

10   not apply.  The dismissal of an information that the government knows the defendant does not consent

11   to, which cannot initiate criminal proceedings, is not the kind of "legal pitfall" that Section 3288 is

12   intended to address.  *Id.*  If it were, the government could buy itself a minimum six-month extension of

13   the statute of limitations literally in every single case simply by filing an information without consent.

14   For all the reasons set forth above, that reading of Sections 3282 and 3288 would violate the principle

15   that statutes of limitations must be read in favor of repose, and would create a massive end-run around

16   the five-year statute of limitations chosen by Congress.[8]  If Congress wanted to give the government a

17   way to extend the statute of limitations on its own, simply by filing an information that violates the Sixth

18   Amendment right to an indictment by grand jury, it would have said so.

19

20

21

22        [8] The Eastern District of California endorsed the *Burdix-Dana* court's reading of Section 3288
     but in completely different circumstances than those here.  In *United States v. Marifat*, 2018 WL
23   1806690 (E.D. Cal. Apr. 17, 2018), the defendant waived his grand-jury right and pleaded guilty to an
     information, all of which occurred within the statute of limitations.  *Id.* at *1. Six years later, the court
24   permitted defendant to withdraw his guilty plea as involuntary and dismissed the information.  The court
     held that Section 3288 permitted the government to re-indict the defendant within the six-month grace
25   period.  There, the court unquestionably had jurisdiction over the case based on the defendant's waiver
     of indictment; the defect was that the defendant's guilty plea was invalid.  Here, Ms. Holmes did not
26   waive her grand-jury right.

27   MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND
     SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD
28   SUPERSEDING INDICTMENT
     CR-18-00258 EJD

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts Three through Eight and Ten of the Second Superseding Indictment and Counts Three through Eight, Ten, and Eleven of the Third Superseding Indictment as time-barred.

DATED:  August 28, 2020                              Respectfully submitted,


                                                    /s/ Amy Mason Saharia
                                                    KEVIN DOWNEY
                                                    LANCE WADE
                                                    AMY MASON SAHARIA
                                                    KATHERINE TREFZ
                                                    Attorneys for Elizabeth Holmes

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes
