1  ADAM A. REEVES (NYBN 2363877)
   Attorney for the United States,
2  Acting Under Authority Conferred By 28 U.S.C. § 515

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4
   JEFF SCHENK (CABN 234355)
5  JOHN C. BOSTIC (CABN 264367)
   ROBERT S. LEACH (CABN 196191)
6  VANESSA BAEHR-JONES (CABN 281715)
   Assistant United States Attorneys
7
        150 Almaden Boulevard, Suite 900
8       San Jose, California 95113
        Telephone: (408) 535-5061
9       Fax: (408) 535-5066
        Robert.Leach@usdoj.gov
10
   Attorneys for United States of America
11
                      UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13
                            SAN JOSE DIVISION
14

15 UNITED STATES OF AMERICA,              )  Case No. 18-CR-00258 EJD
                                          )
16        Plaintiff,                      )  UNITED STATES' OPPOSITION TO
                                          )  DEFENDANTS' MOTION TO DISMISS
17     v.                                 )  SECOND AND THIRD SUPERSEDING
                                          )  INDICTMENTS BASED ON
18 ELIZABETH HOLMES and RAMESH            )  PRE-INDICTMENT DELAY [DKT. 493 & 495]
   "SUNNY" BALWANI,                       )
19                                        )  Date:   October 6, 2020
          Defendants.                     )  Time:  10:00 a.m.
20                                        )  Court: Hon. Edward J. Davila
                                          )
21                                        )  **REDACTED VERSION**
                                          )
22 _____ )

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

I.      PROCEDURAL HISTORY ..........................................................................................2

        A.      Proceedings Pre-COVID-19 ..............................................................................2

        B.      Post-COVID-19 Proceedings .............................................................................6

        C.      The Third Superseding Indictment ....................................................................9

ARGUMENT ..........................................................................................................................9

I.      LEGAL STANDARD...................................................................................................9

II.     DEFENDANTS' SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS NOT
        BEEN VIOLATED......................................................................................................11

        A.      This Is a Complex Fraud Case .........................................................................11

        B.      Any Alleged Delay Is Not Fairly Attributable to the Government...................12

        C.      Defendants Have Not Asserted a Right to a Speedy Trial and Have Benefitted
                From Delay ......................................................................................................13

        D.      Defendants Have Not Suffered Prejudice ........................................................14

        E.      Defendants' Reliance on *United States v. Cutting* Is Misplaced ......................17

CONCLUSION......................................................................................................................18

1

## **TABLE OF AUTHORITIES**

2

3

### **Cases**

4   *Barker v. Wingo*, 407 U.S. 514 (1972) ........................................................................ passim

5   *Clabourne v. Lewis*, 64 F.3d 1373 (9th Cir. 1995) ................................................... 11

6   *Denham v. Deeds*, 954 F.2d 1501 (9th Cir. 1992) ............................................... 13, 14

7   *Doggett v. United States*, 505 U.S. 647 (1992)............................................... 10, 11, 14

8   *McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003) ................................................ 10, 12

9   *McNeil v. Wisconsin*, 501 U.S. 171 (1991)............................................................... 11

10  *United States v. Alexander*, 817 F.3d 1178 (9th Cir. 2016)...................................... 15

11  *United States v. Belcher*, No. 16-CR-00211-LHK-2, 2017 WL 3721454 (N.D. Cal. Aug. 29, 2017) ..... 15

12  *United States v. Brown*, 498 F.3d 523 (6th Cir. 2007)............................................. 11

13  *United States v. Cutting*, No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017).................. 17

14  *United States v. Dreitzler*, 577 F.2d 539 (9th Cir. 1978)......................................... 11

15  *United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003) ............................... 9, 10, 14

16  *United States v. King*, 483 F.3d 969 (9th Cir. 2007) ............................................... 11

17  *United States v. Lam*, 251 F.3d 852 (9th Cir. 2001) ........................................ 10, 15

18  *United States v. Ly,* CR-00-0118 CW, 2001 WL 1456751 (N.D. Cal. Nov. 14, 2001)........... 9, 10, 14, 15

19  *United States v. Marion*, 404 U.S. 307 (1971)......................................................... 11

20  *United States v. Mendoza*, 530 F.3d 758 (9th Cir. 2008).......................................... 11

21  *United States v. Myers*, 930 F.3d 1113 (9th Cir. 2019) ........................................... 10

22  *United States v. Nance*, 666 F.2d 353 (9th Cir. 1982) ............................................ 12

23  *United States v. Neusom*, No. CR 03-0194, 2008 WL 4217861 (C.D. Cal. Sept. 12, 2008)................... 15

24  *United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994)........................................... 13

25  *United States v. Register*, 182 F.3d 820 (11th Cir. 1999).......................................... 11

26  *United States v. Saenz*, 623 F.3d 461 (7th Cir. 2010).............................................. 11

27  *United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992) ............................................ 11

28  *United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976).......................................... 15

**Statutes**

18 U.S.C. § 1343 ........................................................................................................... 2

18 U.S.C. § 1349 ........................................................................................................... 2

18 U.S.C. §§ 3161-3174 ............................................................................................... 1

**Rules**

Federal Rule of Criminal Procedure 12.2(c)(1)(B) ...................................................... 7

Federal Rule of Criminal Procedure 48 ................................................................. 1, 17

1   The United States respectfully submits its Opposition to Defendants' Motion to Dismiss Second
2   and Third Superseding Indictments Based on Pre-Indictment Delay.  Dkt. 493 & 495.

**INTRODUCTION**

4   In June 2019, Defendants agreed to a July 28, 2020 trial date on the Superseding Indictment.  In
5   the meantime, after considerable motion practice, their cases have been severed, and the Nation has been
6   struck by a once-in-a-lifetime Pandemic.  On April 15, 2020, recognizing the challenges raised by
7   COVID-19, the Court continued the Holmes trial to October 2020, with no objection.  On August 11,
8   2020, again in recognition of the difficulties imposed by COVID-19, the Court continued her trial to
9   March 9, 2021, again with no objection.

10   Defendants do not argue the Constitution's Speedy Trial Clause (or Federal Rule of Criminal
11   Procedure 48) bars a trial on the Superseding Indictment in March 2021.  They do not claim a violation
12   of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, nor do they dispute that compliance with the Speedy
13   Trial Act raises a strong presumption of compliance with the Constitution's Speedy Trial Clause.
14   Instead, they claim the Grand Jury's decision to return a Third Superseding Indictment alleging one of
15   the conspiracies began in or about 2010 (not 2013), and implicated investors (Walgreens, Safeway,
16   Theranos board members) they did not appreciate had invested money in Theranos, hopelessly
17   compromises their speedy trial rights.  This argument does not withstand scrutiny.

18   The Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972), sets forth a multi-factor
19   test to assess whether a constitutional speedy trial violation has occurred.  None of those factors supports
20   a finding of a violation of here.  Defendants present no evidence that the time period between indictment
21   and trial is uncommonly long in the context of a complex fraud trial, let alone one in the age of COVID-
22   19.  "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious,
23   complex conspiracy charge."  *Barker*, 407 U.S. at 531.  The time that has expired between indictment
24   and trial is not attributable to the government, and is amply justified by the massive discovery and
25   pretrial litigation involved in this case and COVID-19, as confirmed by Defendants' own repeated
26   agreement to exclude time from the Speedy Trial Act clock through December 8, 2020 (in the case of
27   Balwani) and March 9, 2021 (in the case of Holmes).  And, most fundamentally, there is no prejudice.
28   None of the alleged delay is attributable to the Third Superseding Indictment.  Defendants' argument

GOVT. OPP'N TO MOT. TO DISMISS FOR PRE-
INDICTMNET DELAY, CASE NO. 18-258 EJD        1

1   that the date change and definition of investors in the Third Superseding Indictment drastically

2   transform the case is wrong and hyperbole.  And they cannot credibly claim surprise that the

3   government seeks to present evidence relating to Walgreens, Safeway, and Theranos board members

4   that was produced to them in the government's initial discovery productions.

5          For these reasons, as discussed in detail below, the Court should deny the motion.

6                                    **FACTUAL BACKGROUND**

7   **I.     PROCEDURAL HISTORY**

8          **A.     Proceedings Pre-COVID-19**

9          On June 14, 2018, the Grand Jury returned an indictment charging Defendants with one count of

10  conspiracy to commit wire fraud against Theranos investors, in violation of 18 U.S.C. § 1349 (Count

11  One), one count of conspiracy to commit wire fraud against doctors and Theranos patients, in violation

12  of 18 U.S.C. § 1349 (Count Two), and nine individual counts of wire fraud, in violation of 18 U.S.C.

13  § 1343.  Dkt. 1.

14         Among other things, the indictment alleged that Defendants were officers of a health care and

15  life sciences company, Theranos.  *Id.* ¶ 1 & 2.  It alleged:  "During its first ten years, from

16  approximately 2003 to approximately 2013, Theranos was in what HOLMES called 'stealth mode,' with

17  little public attention."  *Id.* ¶ 5.  It alleged that "Theranos pursued a partnership with national pharmacy

18  chain Walgreens."  *Id.* ¶ 10.  And it alleged a scheme to defraud investors "[f]rom a time unknown but

19  no later than 2013 through 2015" executed through at least nine categories of false and misleading

20  statements.  *Id.* ¶¶ 11-12.

21         On June 15, 2018, Defendants made initial appearances and were released on bail.  Dkt. 5 & 7.

22  They have remained out of custody throughout the proceedings.  The Court set a status conference for

23  August 15, 2018, and, with no objection, excluded time under the Speedy Trial Act.  Dkt. 5, 7, & 22 at

24  7.  With Defendants' stipulation and consent, the Court continued the status conference to October 15,

25  2018, and found time was appropriately excluded under the Speedy Trial Act.  Dkt. 30, 43.

26         On September 6, 2018, the Grand Jury returned a Superseding Indictment, adding an allegation

27  regarding "Investor #6" and making changes to one of the wire fraud counts (Count Four).  Dkt. 39 at

28  ¶¶ 13 & 24.

1    On October 15, 2018, the Court convened a status conference.  Dkt. 57.  With no objection, the

2    Court found that the case is complex.  *Id.*  The Court scheduled a further status conference for January

3    14, 2019, and, with consent, found that the time until January 14, 2019, was appropriately excluded

4    under the Speedy Trial Act for effective preparation of counsel.  *Id.*

5    On January 14, 2019, the Court convened a further status conference.  The Court noted "[t]here

6    is aprox[imately] 16-17 million pages of discovery in this matter."  Dkt. 64.  Counsel "confirmed with

7    the Court that it found and ordered the case is complex."  *Id.*  The Court continued the matter to April

8    22, 2019, and found, without objection, the ends of justice served in granting the continuance

9    outweighed the best interests of the public and Defendants in a speedy trial and excluded time through

10   April 22, 2019, because the case is complex and for effective preparation of counsel.  Dkt. 64.

11   At the April 22, 2019 status conference, the government requested that a trial date be set.

12   Defendants objected and stated "we're about three months too early to discuss that."  Declaration of

13   AUSA Robert S. Leach in Support of United States' Opposition to Defendants' Motion to Dismiss

14   Second and Third Superseding Indictments Based on Pre-Indictment Delay ("Leach Decl."), Ex. A

15   (4/22/2019 Hrg. Tr. at 13:19-20).  The defense argued it was premature to set a trial date because it

16   needed "substantial additional time to review and analyze the voluminous discovery that has been

17   produced to date," and because it perceived discovery was incomplete and the government was

18   continuing to investigate.  Dkt. 66 at 3:21-23.  The Court set a further status conference for July 1, 2019,

19   and, without objection, found that the ends of justice served in granting a continuance outweighed the

20   best interests of the public and Defendants in a speedy trial and excluded time under the Speedy Trial

21   Act through July 1, 2019, because the case is complex and for effective preparation.  Dkt. 69 & Leach

22   Decl. Ex. A at 27.[1]

23   Defendants moved to compel production of documents in the possession of the Food and Drug

24   Administration ("FDA") and Centers for Medicare and Medicaid Services ("CMS").  Dkt. 67.  The

25

26   _____

     [1]    Throughout 2019 and the first part of 2020, Balwani "[took] discovery in the [parallel] SEC case

27   with an eye towards obtaining helpful information to defend [the criminal] case" and noted that
     "because of the similarity of the two cases, that information [i.e., SEC civil discovery] may be helpful in

28   the criminal case."  Defendant Ramesh Balwani's Opposition to United States' Motion to Intervene and
     Stay, *SEC v. Balwani*, CV 18-1603 EJD (May 3, 2019), Dkt. 77 at 12:22-25.

1  government opposed, arguing the documents were not in its possession, custody, or control.  Dkt. 79.

2  On June 28, 2019, the Court conducted a hearing on the motion and advanced the previously scheduled

3  status conference.  In advance of the hearing, the parties submitted a joint status memorandum stating:

> The government is prepared to commence trial at the Court's direction.  During our April 2019 status conference, the government asked the Court to set the matter for trial recognizing that the complexity of this case, including the volume of discovery, likely weighs in favor of a trial date in 2020.  Although the government went into discussions with defense counsel with a preference for a trial date during the first half of 2020, the defense, particularly counsel for defendant Holmes, who did not represent Ms. Holmes during the investigation that led to the indictment, explained to the government during those discussions that significant work remains before it will be prepared for trial, including review of FDA/CMS documents that have yet to be produced and approximately 4 terabytes of data recently produced to the government that remains to be processed.
>
> In light of each defendant's need to prepare effectively for trial, the government does not oppose the defendants' joint request for a trial in September 2020, or as soon thereafter as would be convenient for the Court.

13  Dkt. 80.  At the hearing, without objection, the Court set a trial date of July 28, 2020.  Leach Decl. Ex. B

14  (6/28/2019 Hrg. Tr. at 4-10).  The Court also found, without objection, that the ends of justice served in

15  granting the continuance outweighed the best interests of the public and Defendants in a speedy trial and

16  excluded time under the Speedy Trial Act from June 28, 2019, through July 28, 2020, for effective

17  preparation of counsel.  *Id.* at 69-70; Dkt. 83.

18      On July 15, 2019, the parties jointly proposed a pretrial schedule with, among other things, Rule

19  12 motions to be filed October 15, 2019, and a Rule 12 motions hearing on December 16, 2019.  Dkt.

20  89-4.



21      On July 17, 2019,

24      Dkt. 92.

Leach Decl. Ex. C ( ███████████████████ ) Dkt. 96. █████████████████████

On July 19, 2019, the Court ordered FDA and CMS to produce documents responsive to the motion to compel, and scheduled a further hearing for October 2, 2019.  Dkt. 111.

. Leach Decl. Ex. D.

On October 2 and November 4, 2019, the Court convened further hearings on the motion to compel.  Dkt. 131, 171.  At the November 4, 2019 hearing, the Court adopted a proposed pretrial schedule submitted by the parties setting a Rule 12 motion deadline of December 16, 2019, and a hearing on February 10, 2020.  Dkt. 170-6, 171.

On November 5, 2019, the Court granted the motion to compel discovery and ordered the government to produce certain documents in the possession of FDA and CMS.  Dkt. 174.[2]

On December 3, 2019, ███████████████ . Dkt. 189.

On December 16, 2019, Holmes filed three motions to dismiss the Superseding Indictment, which Balwani joined.  Dkt. 204, 205, 206.  Holmes also gave notice under Rule 12.2 of her intent to

---

[2] The government completed its production of documents in FDA's and CMS' possession on May 28, 2020.  Counsel for Holmes wrote the government objecting that one tranche of documents was produced in an unprocessed format (i.e., a format easily loadable into a document review database).  Although the defense is equally capable of processing them, the government undertook the considerable effort and expense of processing them and produced load-ready files on September 8, 2020.

introduce expert evidence relating to a mental disease or defect or any other mental condition of the

defendant bearing on the issue of guilt.  Dkt. 507 at 1.

On February 11, 2020, the Court issued an Order Granting in Part & Denying in Part

Defendants' Motion to Dismiss the Superseding Indictment for Lack of Notice; Denying Motion to

Dismiss Superseding Indictment for Failure to Allege Falsity; Granting in Part & Denying in Part

Defendants' Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment.  Dkt.

339.  Among other things, the Court ordered the government to produce a bill of particulars as to certain

counts and identify co-conspirators as to Count One and dismissed counts "to the extent they rely on

non-paying patients or doctors."  Dkt. 330 at 39.

On March 6, 2020, the government provided Defendants a Notice re Government's Intent to

Introduce Certain Evidence.  Among other things, the government advised Defendants that it intended to

introduce evidence of false and misleading representations made to Walgreens, Safeway, and Theranos

board members.  Dkt. 367-1 at 3-4.

**B.       Post-COVID-19 Proceedings**

On March 16, 2020, the Court ordered that "[n]o jury trial will be commenced before May 1,

2020" and "[a]ll grand jury proceedings in this district are suspended until May 1, 2010."  *See* General

Order No. 72, IN RE: Coronavirus Disease Public Health Emergency.  The suspension on grand jury

proceedings continued through June 2020.  *See* General Order No. 72-2, IN RE: Coronavirus Disease

Public Health Emergency; General Order No. 72-3, IN RE: Coronavirus Disease Public Health

Emergency.  The prohibition on jury trials continued through September 2020.  *See* General Order No.

72-5, IN RE: Coronavirus Disease Public Health Emergency (issued July 23, 2020) ("No new jury trial

will be conducted through September 30, 2020."); General Order No. 72-6, IN RE: Coronavirus Disease

Public Health Emergency (issued September 16, 2020) ("Jury trials may proceed in accordance with the

logistical considerations necessitated by the Court's safety protocols.").

On March 20, 2020, the Court issued an Order Re Severance of Trials, finding good cause to

sever the Holmes and Balwani trials and ordering that Holmes's trial would proceed as scheduled on

July 28, 2020.  Dkt. 362.

On March 30, 2020, the government and Balwani filed a proposed case schedule recommending a January 19, 2021 trial date for him.  Dkt. 366 & 366-1.

On March 31, 2020, the government filed a motion for an examination of Holmes pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B).  Dkt. 507 at 2.

In advance of the April 1, 2020 status conference, Holmes submitted briefing setting forth "COVID-19 Challenges and Legal Impediments" and proposed sweeping orders (ultimately withdrawn), which she claimed were necessary to maintain the July 28, 2020 trial schedule.  Dkt. 367 at 6:14 to 8:8; Dkt. 368, 375.  On April 1, 2020, the Court convened a telephonic status conference and directed the parties to meet and confer regarding the existing schedule: "what pretrial tasks can be done considering COVID-19 and the ability to achieve those tasks to keep the [July 2020] trial date if possible," adding "[t]he Court will not disturb the trial date at this time."  Dkt. 371.  The Court scheduled a further status conference for the Holmes matter on April 15, 2020.

On April 9, 2020, the government advised counsel for Holmes that, following the Court's ruling on Defendants' motions to dismiss the Superseding Indictment, the government intended to seek a second superseding indictment.  Because the Grand Jury was suspended at the time, the government inquired whether Holmes would agree to waive her constitutional right to indictment and proceed to trial by superseding information.  Holmes declined.  Dkt. 372.  The government nonetheless provided Holmes a copy of the proposed superseding information.  *Id.* at n.1.

In an April 14, 2020 status report, Holmes advised the Court that, before learning the government intended to seek a second superseding indictment, she had proposed, "given the[e] risks and considerations [associated with COVID-19]," a "plan to proceed in early 2021."  Dkt. 372 at 4:12-13.  She also stated:  "we will continue to work diligently to get ready for trial based on the new charges (again, assuming they will be returned by a grand jury), and we believe that with diligent efforts we will be prepared to proceed to trial six months after the existing trial date (on or about February 8)."  *Id.* at 6:22-25.

On April 15, 2020, the Court continued the Holmes trial to October 27, 2020.  The Court found that the ends of justice served in granting the continuance outweighed the best interests of the public and the Defendant in a speedy trial, and excluded time under the Speedy Trial Act from April 15, 2020,

1   through October 27, 2020.  Dkt. 374.  Counsel for Holmes agreed to the exclusion and stated "it also

2   may be covered by one of the Court's General Orders as well."  Leach Decl. Ex. E. (4/15/2020 Hrg. Tr.

3   at 33).

4              On May 8, 2020, the government filed a Superseding Information.  Dkt. 391.

5              On May 14, 2020, the government and Balwani filed a proposed case schedule recommending an

6   April 20, 2021 trial date.  Dkt. 396 & 396-1.

7              On July 14, 2020, the Grand Jury returned a Second Superseding Indictment.  Dkt. 449.

8              On July 20, 2020, the Court conducted a status conference via Zoom, at which Defendant

9   Holmes requested that the trial be continued in light of the ongoing COVID-19 pandemic and the need

10  for effective preparation for trial due to the complexities of the case.  *See* Dkt. 484 (citing Dkt. 463 at

11  62-66, 69-71).  The government stated that it was prepared to proceed in October, but nevertheless

12  agreed that Holmes had identified many "real challenges and unique challenges to this case" as a result

13  of the pandemic.  Dkt. 484.  Counsel for Holmes stated:

14              In the current health environment, which has gotten worse in these months not better,
            where we haven't had the ability to meet with our client in months in person, where we
15          don't have the ability to meet with witnesses, where we don't have the ability to meet in
            person with experts . . . .  There's a lot that can be done.  There's a lot that we have done,
16          but we need lead time in advance to do that.  If we're forced to do it, your Honor knows
            we would do it, but it endangers people, and we would prefer that we would not be put in
17          that choice.  And we would ask the court to not put us in that choice.

18  Leach Decl. Ex. F. (7/20/2020 Hrg. Tr. at 71).  Counsel for Balwani stated:

19              For now, your Honor, unfortunately everything that Mr. Wade said and Mr. Leach said
            about the COVID crisis and Your Honor said is right.  We're sort of at the mercy of those
20          unfortunate circumstances. . . .  We, I think, unfortunately are going to have to, given the
            court's position of the order of trial, await Ms. Holmes's trial.  If the trial really takes
21          three months, then we'll have to try that at some point, and we're happy to reconfer with
            the government once the Holmes trial is set on what exactly the schedule for Mr. Balwani
22          should look like . . . .

23  *Id.* at 81-82.  Accordingly, the Court instructed the parties to meet and confer regarding a proposed new

24  trial date and case schedule.  Dkt. 454.

25              On July 28, 2020, the Grand Jury returned a Third Superseding Indictment, which is

26  substantively no different from the Superseding Information first described to the defense in early April

27  2020.

28

1    On August 10, 2020, Holmes and the government filed a Joint Status Report with a revised

2  proposed pretrial schedule.  Holmes proposed jury selection beginning March 16, 2021.  Dkt. 482.

3    On August 11, 2020, the Court convened a status conference via Zoom and ordered jury

4  selection in the Holmes trial to begin March 9, 2021.  Dkt. 484.  The Court found, without objection,

5  that the ends of justice served in granting the continuance outweighed the best interests of the public and

6  Defendant Holmes in a speedy trial and excluded time from October 27, 2020, through March 9, 2021,

7  for effective preparation of counsel.

8    On August 14, 2020, Balwani stipulated to, and the Court ordered, an exclusion of time for

9  effective preparation of counsel to December 8, 2020, the date of the next status conference in the

10  Balwani matter.  Dkt. 487.

11    The instant motion was filed on August 28, 2020.  On September 9, 2020, the Court issued an

12  Order Granting Government's Motion for Examination.  Dkt. 507.

13    **C.      The Third Superseding Indictment**

14    The changes between the Superseding Indictment and Third Superseding Indictment are modest.

15  The Third Superseding Indictment alleges the conspiracy to defraud investors began no later than 2010

16  (rather than no later than 2013).  Dkt. 469 ¶¶ 11-12.  It specifically alleges that Theranos's investors

17  included individuals, entities, certain business partners, members of its board of directors, and

18  individuals and entities who invested through firms formed for the exclusive or primary purpose of

19  investing in Theranos's securities.  *Id.* ¶ 3.  It continues to allege that Theranos "pursued a partnership

20  with Walgreens" and refer to the "stealth mode" period of 2003 to 2013.  *Id.* ¶¶ 5, 10.  It also alleges

21  three new patient counts.  *Id.* ¶¶ 26.

22                        **ARGUMENT**

23  **I.     LEGAL STANDARD**

24    The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right

25  to a speedy and public trial."  U.S. CONST. AMEND. VI; *United States v. Gregory*, 322 F.3d 1157, 1161

26  (9th Cir. 2003).  As the Court has recognized, "[t]his is not an objective standard.  In fact, the

27  constitutional guarantee of speedy trial is more flexible – and more lax – than its statutory counterpart.

28  Consequently, it is impossible to determine with precision when the right has been denied."  *United*

1    *States v. Ly*, CR-00-0118 CW, 2001 WL 1456751, at *2 (N.D. Cal. Nov. 14, 2001) (citation omitted);

2    *see also Barker v. Wingo*, 407 U.S. 514, 522 (1972) (noting "[t]he right of a speedy trial is necessarily

3    relative" and demands a "functional analysis . . . in the particular context of the case" (internal quotation

4    omitted)); *United States v. Myers*, 930 F.3d 1113, 1117 (9th Cir. 2019) (observing "the Supreme Court

5    directs courts to take an ad hoc, case-by-case approach" to speedy trial claims).  Thus, "the delay that

6    can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy

7    charge."  *Barker*, 407 U.S. at 531.  The Supreme Court's "speedy trial standards recognize that pretrial

8    delay is often both inevitable and wholly justifiable.  The government may need time to collect

9    witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down."

10   *Doggett v. United States,* 505 U.S. 647, 651 (1992).

11          The Supreme Court has articulated a balancing test to determine when government delay

12   abridges the Sixth Amendment right to a speedy trial.  Those factors include: (1) the length of the delay,

13   (2) the reason for the delay, (3) whether defendant has asserted the right to a speedy trial, and (4) the

14   prejudice caused by the delay.  *Barker*, 407 U.S. at 530; *Doggett*, 505 U.S. at 651.  These factors are not

15   exhaustive, nor is any factor necessary or sufficient.  *Ly*, 2001 WL 1456751, at *2; *see Barker*, 407 U.S.

16   at 530 ("We can do little more than identify *some of the factors* which courts should assess in

17   determining whether a particular defendant has been deprived of his right." (emphasis added)); *McNeely*

18   *v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003); *United States v. Lam*, 251 F.3d 852, 855 (9th Cir. 2001).

19   A court's determination may also be influenced by prosecutorial bad faith or a pattern of delay.

20   *Doggett*, 505 U.S. at 656.

21          In *Gregory*, the Ninth Circuit summed up this inquiry with the question "whether [the

22   government's] choice to issue a superseding indictment *created* a delay" which violated the defendant's

23   Sixth Amendment rights.  322 F.3d at 1161 (emphasis added) (no violation where defendant charged

24   with money laundering in superseding indictment after serving offenses on other crimes).

25   ///

26   ///

27   ///

28   ///

## II.   DEFENDANTS' SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS NOT BEEN VIOLATED

### A.   This Is a Complex Fraud Case

When this case is tried in March 2021, approximately 33 months will have elapsed between the indictment on the conspiracy charges and most of the wire fraud charges.[3]  The delay in cases where the Supreme Court and Ninth Circuit have found constitutional speedy trial violations is typically much longer than the delay here, however it is measured.  *See, e.g.*, *Doggett*, 505 U.S. at 650-51 (8-year delay); *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (10-year delay); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (5-year delay).  Defendants present no evidence the time period here is "uncommonly long" in the context of complex fraud cases.  *See Doggett*, 505 U.S. at 651 (stating one of the relevant inquires is whether delay before trial was uncommonly long).  The complexity of the case and nature of the charges are factors courts consider in determining whether delay in a particular cases violates a defendant's speedy trial right.  *See, e.g.*, *United States v. Saenz*, 623 F.3d 461, 464 (7th Cir. 2010) (finding no speedy trial violation because the case was complex); *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (finding no speedy trial violation because complex case involved multiple crimes, defendants, and events occurring in multiple states); *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding no speedy trial violation because the case involved a complex conspiracy); *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (finding no speedy trial violation because of the complex nature of the case involving multiple defendants); *United States v. Dreitzler*, 577 F.2d 539, 550 (9th Cir. 1978) (emphasizing complexity of the case in analysis of speedy trial issues).

In addition, there is no allegation here that the Speedy Trial Act has been violated.  As the Ninth Circuit has held "'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'"  *King*, 483 F.3d at 976 (quoting

---

[3]   The Sixth Amendment is offense specific.  *United States v. Marion*, 404 U.S. 307, 313 (1971); *see McNeil v. Wisconsin*, 501 U.S. 171 (1991); *Clabourne v. Lewis*, 64 F.3d 1373, 1378 (9th Cir. 1995). The start date for new charges in the Second and Third Superseding Indictments should run from the time they were first asserted (e.g., July 14, 2020, for Counts 9 and 10 and July 28, 2020, for Count 11).

1  *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)) (finding two-year delay in "extraordinarily

2  complex" fraud case "not excessive" and no speedy trial violation).

3      For these reasons, the first *Barker* factor weighs against a finding of a speedy trial violation.

4  **B.      Any Alleged Delay Is Not Fairly Attributable to the Government**

5      The time that has expired to date is attributable to (1) the complexity of the case and the

6  voluminous discovery, (2) extensive pretrial motion practice, and (3) COVID-19.  Indeed, since April

7  22, 2019, when the government first requested the Court set a trial date, there have been, at best, only 37

8  days when a motion was not pending (i.e., November 6 to December 2, 2019, and arguably March 21,

9  2020, to March 30, 2020).

10      A review of the record reveals that Defendants' agreement to the initial July 28, 2020 trial date

11  was a voluntary choice, not coercion.  *Compare McNeely*, 336 F.3d at 827 ("[D]elay attributable to the

12  defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial

13  argument.").  At the April 22, 2019 status conference, the government – not Defendants – pressed for a

14  trial date.  Defendants argued it was three months too soon.  At the next status conference, Defendants

15  proposed September 2020 (the Court advanced it to July 28, 2020).  ████████████████████████████

16  ████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████

18  ██████████████████████████████████████  Nothing the government did or

19  did not do affected any of this; indeed, █████████████████████████████████

20  ████████████.

21      The continuance of the trial date from July 28, 2020, to March 9, 2021, is the result of COVID-

22  19, not the government and not the Third Superseding Indictment.  At the April 15, 2020 status

23  conference, Holmes advised the Court that, *before learning the government intended to seek a second*

24  *superseding indictment*, she had proposed, "given the[e] risks and considerations [associated with

25  COVID-19]," a "plan to proceed in early 2021."  Dkt. 372 at 4:12-13.  She also stated:  "we will

26  continue to work diligently to get ready for trial based on the new charges (again, assuming they will be

27  returned by a grand jury), and we believe that with diligent efforts we will be prepared to proceed to trial

28  six months after the existing trial date (on or about February 8)."  On April 15, 2020, the Court

1   continued the trial date to October 2020, but ultimately that proved unworkable because of the virus.

2   Dkt. 484 ("On July 20, 2020, the Court conducted a status conference in this case at which Defendant

3   Holmes requested that the trial currently set for October 27, 2020 be continued in light of the ongoing

4   COVID-19 pandemic and the need for effective preparation for trial due to the complexities of the case."

5   (citations omitted)).

6          The government obtained the Second and Third Superseding Indictments as quickly as possible

7   following the Court's rulings on the motion to dismiss and, to prevent any claim of surprise or lack of

8   notice, advised the defense in April 2020 at the first available opportunity, even while the Grand Jury

9   was suspended.  Nothing stopped the defense from pressing its Rule 12 motions prior to December

10  2020, nor should the defense be surprised the government evaluated the charging document through the

11  lens of the ruling on the motions to dismiss and the defense motion practice.

12         For these reasons, the second *Barker* factor weighs against a finding of a speedy trial violation.

13  **C.      Defendants Have Not Asserted a Right to a Speedy Trial and Have Benefitted From**
            **Delay**
14

15         The Defendants agreed or did not object to extensions of time under the Speedy Trial Act on no

16  fewer than eight occasions.  To the extent Defendants retroactively complain about the period between

17  June 2018 and December 2020, the third *Barker* factor weighs against them.  Having repeatedly agreed

18  to exclude time from the Speedy Trial Act clock during that period, Defendants cannot turn around and

19  claim they asserted a right to a speedy trial.  "Where a defendant stipulates to the need for trial

20  preparation, he cannot maintain that these continuances give rise to a Speedy Trial Act violation."

21  *United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994) (internal quotation omitted); *see also*

22  *Denham v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992).

23         Defendants suggest they were forced to agree to extensions because of discovery issues.  This

24  does not withstand scrutiny.  As described above, a review of the record reveals that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In any

26  event, a defendant who seeks to assert his or her speedy trial right should be expected to say so, not

27  consent to extension after extension and lay in wait with after-the-fact objections.

28

1    Not only did Defendants fail to object to extensions of time, they benefited from them.  In 2019

2    and 2020, Balwani "[took] discovery in the [parallel] SEC case with an eye towards obtaining helpful

3    information to defend [the criminal] case."  Defendant Ramesh Balwani's Opposition to United States'

4    Motion to Intervene and Stay, *SEC v. Balwani*, CV 18-1603 EJD (May 3, 2019), Dkt. 77 at 12:22-25.

5    Balwani argued further to the Court that "because of the similarity of the two cases, that information

6    [i.e., SEC civil discovery] may be helpful in the criminal case."  *Id.*  These statements further suggest

7    Defendants' agreement to exclude time was not a reluctant concession but a tactical choice.

8    For these reasons, the third *Barker* factor weighs against a finding of a speedy trial violation.

9    **D.    Defendants Have Not Suffered Prejudice**

10    In *Gregory*, the Ninth Circuit stated: "no showing of prejudice is required when the delay is great

11    and attributable to the government.  In contrast . . . when the government has been negligent and the

12    delay does not far exceed the minimum time required to trigger the full *Barker* inquiry, we must

13    consider the amount of delay in relation to particularized prejudice.  322 F.3d at 1162-63 (internal

14    quotations and citation omitted).  "Actual prejudice is typically demonstrated in three ways: 'oppressive

15    pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's]

16    defense will be impaired.'"  *Id.* at 1663 (quoting *Doggett*, 505 U.S. at 654) (alteration in original).

17    "Absent bad faith, prejudice will not be presumed, but must be proven."  *Ly*, 2001 WL 1456751, at *9

18    (citing *Doggett,* 505 U.S. at 656).

19    There is no prejudice for several reasons.  Defendants have been out of custody throughout the

20    proceedings; they cannot complain about oppressive pretrial incarceration.  They hint at anxiety and

21    concern of the accused.  But they fail to show how the additional allegations relating to Walgreens,

22    Safeway, and Theranos board members (to the extent they can even be deemed "new") add to any

23    anxiety and concern already stemming from the conspiracy and other charges.  In addition, the Ninth

24    Circuit has recognized: "Conclusory allegations of general anxiety and depression are present in almost

25    every criminal prosecution. . . .  [N]othing in the record . . . distinguishes the emotional strain

26    experienced by [this defendant] from other criminal defendants.  Further, during this period, [defendant]

27    was at liberty on his personal recognizance.  We therefore conclude that such allegations, as are present

28    here, constitute a showing of minimal prejudice of a type normally attending criminal prosecution.  This

1   showing, without more, did not deprive [defendant] of his right to a speedy trial." *United States v.*

2   *Simmons*, 536 F.2d 827, 831-32 (9th Cir. 1976).

3          Defendants argue their defense has been impaired, but the evidence they cite only underscores

4   the weakness of their claim.  They note that one Theranos board member, Donald Lucas, passed away

5   on December 31, 2019.  But they omit the fact that Mr. Lucas, sadly, developed Alzheimer's no later

6   than 2013 – during the fraud scheme, years before negative *Wall Street Journal* coverage, and years

7   before the onset of the government's investigation.  Leach Decl. Ex. G.  Mr. Lucas's unfortunate illness

8   explains why Defendants elected not to depose him in earlier litigation.[4]  Mr. Lucas's unavailability is

9   not the result of delay.  They also refer to another individual, Peter Thomas, who resigned from the

10  Board in 2010, yet point to no documents or statements that suggest he would have had anything

11  uniquely exculpatory to add.  The fact that he was not deposed in prior litigation corroborates that the

12  defense has not been meaningfully prejudiced by his unfortunate passing.  *See also United States v.*

13  *Lam*, 251 F.3d 852, 860 (9th Cir. 2001) (speculation about defects in witness testimony or lost evidence

14  do not demonstrate actual prejudice); *United States v. Belcher*, No. 16-CR-00211-LHK-2, 2017 WL

15  3721454, at *2 (N.D. Cal. Aug. 29, 2017) ("Defendant's claim that he is prejudiced by fading witness

16  memories and lost evidence also fails because Defendant has not identified 'any non speculative proof

17  as to how his defense was prejudiced by the delay.'" (quoting *United States v. Alexander*, 817 F.3d

18  1178, 1183 (9th Cir. 2016))).

19         Defendants cite the need to redeploy resources.  But this Court has observed: "The alleged strain

20  on Defendant's business and income and his related anxiety are unfortunate effects of this case, but such

21  effects are likely common to any defendant facing similar charges."  *Belcher*, 2017 WL 3721454, at *2

22  (citing *United States v. Neusom*, No. CR 03-0194, 2008 WL 4217861, at *6 (C.D. Cal. Sept. 12, 2008)

23  & *Ly*, 2001 WL 1456751, at *9) (denying motion to dismiss superseding indictment returned 14 months

24  after initial indictment).  For years, Defendants and Theranos have been embroiled in litigation with and

25  relating to Walgreens.  The parallel litigation has involved depositions of numerous Theranos board

26

27  _____

    [4]      Theranos, Holmes, or Balwani have been sued by Walgreens, at least two investors (Partner
28  Fund Management and Robert Colman), the SEC, and a class of plaintiffs in Arizona (where Walgreens
    is also a party and subject to discovery by Defendants).

members and at least one Safeway representative.  It therefore strains credulity to think that they have not performed work to understand what happened in those relationships.  Defendants have had discovery relating to Walgreens, Safeway, and Theranos board members since the government's initial production and could not have failed to appreciate the government's intent to use such evidence.  Finally, it should not be surprising that after a ruling on Defendants' motions to dismiss – which they waited until December 2019 to file – the government might re-evaluate the charging language.

Defendants cite enhanced sentencing exposure.  This is not prejudice resulting from delay.  In any event, they make no effort to show that the new patient counts will alter the Sentencing Guidelines calculation or meaningfully add to the likely sentence, particularly given the existence of a conspiracy count.

Finally, it bears emphasis that none of the alleged delay is attributable to the Third Superseding Indictment.  Defendant Holmes conceded she could be prepared for a trial on the charges in the Third Superseding Indictment by February 2021 – *earlier* than the current trial date.  The changes in the Third Superseding Indictment are modest.  Each iteration of the indictment consistently alleged a scheme to defraud investors, which, whether defined or not, is a term that easily captures Walgreens, Safeway, and Theranos board members.  The "pursuit" of a relationship with Walgreens has been a part of the indictment from day one.  The government produced evidence it had gathered from Walgreens, Safeway, and Theranos board members in its initial productions in August 2018 and October 2018.  For example, witness statements from at least two Walgreens witnesses (Jay Rosan and Nimesh Javeri); Safeway's CEO, and three Theranos board members were included in the government's initial productions.  Leach Decl. ¶ 9.  As the government advised the Court, the superseding indictments do not involve substantial new discovery.  Leach Decl. Ex. E at 9.[5]  In addition, even under the Defendants' limited conception of the scheme to defraud, evidence relating to Walgreens, Safeway, and Theranos board members – who received substantially similar misrepresentations that others received – is inextricably intertwined with the scheme and admissible to show motive, opportunity, intent,

---

[5]     Defendants complain about the format of one of the FDA productions, but they make no argument any of these documents have anything to do with Walgreens, Safeway, or Theranos board members.

preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In sum, the changes

reflected in the Third Superseding Indictment do not radically change the case and do not give rise to

delay that would not have otherwise occurred because of COVID-19 or the defense's general need for

preparation.

In sum, Defendants have not identified any real prejudice.  This factor weighs against a finding

of a speedy trial violation.

E.        **Defendants' Reliance on *United States v. Cutting* Is Misplaced**

Defendants place great weight on Judge Illston's unpublished decision in *United States v.

Cutting*, No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017).  The Court should decline to

do so.  In *Cutting*, thirty-one months after the initial indictment and five months before trial, the

government brought a superseding indictment alleging two wholly new schemes to defraud and alleging,

for the first time, that one of the new fraud schemes caused the failure of the entire bank and millions of

losses to the FDIC.  Judge Illston initially found a Speedy Trial Clause violation but then reconsidered,

and clarified there was only a Rule 48 violation.  Subsequently, the government brought a new

indictment with the dismissed charges, as Judge Illston indicated the government was free to do.  Faced

with the prospect of two trials, the defendants ultimately agreed to a consolidated trial on both

indictments and were convicted.  The fact-intensive case remains on appeal, and in more than three

years, has been cited only once by a single district court.  Here, by comparison, the *Barker* factors do not

weigh in favor of a Speedy Trial Clause or Rule 48 violation.  In addition, the changes to the indictment

are significantly more modest.  They do not change the scheme to defraud.  Finally, unlike in *Cutting*,

the government gave substantial notice of its intentions by providing them a draft information in April

2020 and alerting them of its intention to present evidence relating to Walgreens, Safeway, and

Theranos board members in March 2020.

///

///

///

1

**CONCLUSION**

2        For the foregoing reasons, the Court should deny the motion.

3   DATED:  September 18, 2020                        Respectfully submitted,

4                                                     ADAM A. REEVES
                                                      Attorney for the United States,
5                                                     Acting Under Authority Conferred
                                                      By 28 U.S.C. § 515
6

7                                                     /s Robert S. Leach

8                                                     ROBERT S. LEACH
                                                      JEFF SCHENK
9                                                     JOHN C. BOSTIC
                                                      VANESSA BAEHR-JONES
10                                                    Assistant United States Attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28