ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND THREE THROUGH EIGHT OF THE SECOND AND THIRD SUPERSEDING INDICTMENTS [DKT 497 & 502] |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date: October 6, 2020<br>Time: 10:00 a.m.<br>Court: Hon. Edward J. Davila |

The United States respectfully submits its Opposition to Defendants' Motion to Dismiss Counts One and Three Through Eight of the Second and Third Superseding Indictments. Dkt. 497 & 502.

**INTRODUCTION**

Defendants argue that the Second and Third Superseding Indictments do not allege a single scheme to defraud (and thus must be dismissed as duplicitous) because they define "investors" to include entities and people who "are not actually 'investors' under any accepted definition." Dkt. 491 at

GOVT. OPP'N TO MOT. TO DISMISS FOR
DUPLICITY, CASE NO. 18-258 EJD    1

1:5-7. This is wrong. Under the Ninth Circuit's case law on "duplicity," the Court must sustain an indictment if it may fairly be read to charge one crime in each count. The Ninth Circuit takes a "broad view" of what may constitute a "single scheme" to defraud and has held repeatedly: "'the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme.'" *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (quoting *United States v. Mastelotto*, 717 F.2d 1238, 1245 (9th Cir. 1983)). Contrary to the Defendants' repeated suggestions, Safeway, Walgreens, and Theranos board members are appropriately considered "investors" because they invested money in Theranos. Walgreens and Safeway each paid tens of millions to acquire notes convertible into Theranos shares – i.e., securities – pursuant to agreements that defined them as "investors." The government did not pick the term from whole cloth – it was how Defendants repeatedly described them. Defendants also concede that some Theranos board members paid millions to acquire securities, which again is entirely consistent with the allegation that they are investors. Even if Safeway, Walgreens, and Theranos board members were somehow distinct from other investors, the Second and Third Superseding Indictments, fairly read, allege they, like other investors, received false and misleading statements as set forth in Paragraph 12. Accordingly, there is a sufficient nexus among them and the indictments are fairly read to allege one scheme to defraud "by reference to the intent of the alleged defrauders." *Mastelotto*, 717 F.2d at 1245.

Because the Second and Third Superseding Indictments allege a single scheme to defraud, the Court should deny the motion. And in no event is dismissal an appropriate remedy. Duplicity issues may be cured by having the government elect the basis upon which it will continue or a corrective instruction to the jury.

## FACTUAL BACKGROUND

On June 14, 2018, the Grand Jury returned an indictment charging Defendants with one count of conspiracy to commit wire fraud against Theranos investors, in violation of 18 U.S.C. § 1349 (Count One), one count of conspiracy to commit wire fraud against doctors and Theranos patients, in violation

of 18 U.S.C. § 1349 (Count Two), and nine individual counts of wire fraud, in violation of 18 U.S.C. § 1343.  Dkt. 1.

Among other things, the indictment alleged that Defendants were officers of a health care and life sciences company, Theranos. *Id.* ¶ 1 &2.  It alleged:  "When Theranos solicited and received financial investments from investors, the money was deposited into its Comerica Bank account."  *Id.* ¶ 3.  It alleged a "Scheme to Defraud Investors" "from a time unknown but no later than 2013 through 2015."  *Id.* ¶ 11.  It further alleged beginning in approximately 2013, Defendants made materially false and misleading statements to "investors" and listed a number of categories of false and misleading statements.  *Id.* ¶ 12.

On September 6, 2018, the Grand Jury returned a Superseding Indictment.  Dkt. 39.  The changes between the Indictment and the Superseding Indictment are not relevant to this motion.

On July 14, 2020, the Grand Jury returned a Second Superseding Indictment.  Dkt. 449.  In Paragraph 3, the Second Superseding Indictment specifically alleges:  "Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities."  *Id.* ¶ 3.  Paragraph 11 alleges a "Scheme to Defraud Investors" "from a time unknown but no later than 2010 through 2015."  *Id.* ¶ 11.  It further alleges beginning in approximately 2010, Defendants made materially false and misleading statements to "investors" and listed the same categories of false and misleading statements as set forth in the Indictment and Superseding Indictment.  *Id.* ¶ 12.

On July 28, 2020, the Grand Jury returned a Third Superseding Indictment.  Dkt. 469.  With respect to Paragraphs 3, 11, and 12, the Third Superseding Indictment is identical to the Second.

The government anticipates the evidence at trial will show that Safeway, Walgreens, and members of Theranos' board invested money in Theranos:

- On or about July 30, 2010, Theranos and Safeway entered into an option agreement that gave Safeway the right to purchase a $10 million promissory note convertible into Series C-1 shares of Theranos.  *See* Declaration of AUSA Robert S. Leach in Support of United States' Opposition to Defendants' Motion to Dismiss Counts One and Three Through

1    Eight of the Second and Third Superseding Indictments ("Leach Decl."), Ex. A
2    (SWYSEC_000000005, 28-38).

- On or about September 20, 2010, Safeway and Theranos entered into an agreement that, among other things, gave Safeway the right to purchase an additional promissory note, in the amount of $15 million, convertible into Series C-1 preferred shares of Theranos. *Id.* at SWYSEC_000000005-6, 39-48.

- Between in or about August 2011 and December 2011, Safeway exercised its rights, paid $30 million to Theranos, and acquired the convertible promissory notes. *See* Leach Decl. Exs. B & C (SWYSEC_000000061; SWYSEC_000000073). The convertible promissory notes define Safeway as an "investor." *Id.* at SWYSEC_0000000 & SWYSEC_000000073. Theranos defined the convertible promissory notes as securities; required representations and warranties from the "Investor" to ensure securities law compliance; and characterized the convertible promissory notes as an "investment." *Id.* at SWYSEC_000000066, SWYSEC_000000078.

- On or about June 5, 2012, Walgreens and Theranos entered into an agreement that, among other things, gave Walgreens the right to purchase a $40 million promissory note convertible into Series C-1 preferred shares of Theranos. *See* Leach Decl. Ex. D (WAG-TH-00000064). That day, Walgreens, through an affiliate, exercised its rights under the agreement and acquired the convertible promissory note. *Id.* at WAG-TH-00000078-83. The convertible promissory note defines the Walgreens affiliate as an "investor." *Id.* at WAG-TH-00000078. Theranos required "Investor Representations" from the Walgreens affiliate; characterized the convertible promissory note as an "investment"; and stated the convertible promissory note could not be resold without registration under the Securities Act of 1933. *Id.* at WAG-TH-00000081.

- On or about December 31, 2013, under the heading "Additional Equity Rights," Theranos gave Walgreens the right to convert $50 million of a $75 million payment Walgreens was making at the time into Theranos equity. *See* Leach Decl. Ex. E (WAG-TH-00000103).

- In or about March 2014, R.B. and S.B. invested approximately $5 million at or around the time R.B. became a board member. *See* Leach Decl. ¶ 7.
- In or about December 2014, H.K. caused a trust titled "H.K. 2014 Grandchildren's Trust" to invest approximately $3 million while H.K. was a board member. *See* Leach Decl. ¶ 8.

## ARGUMENT

### I. LEGAL STANDARD

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). The Ninth Circuit instructs that, in reviewing an indictment for duplicity, courts should look to the indictment itself to determine "whether it may fairly be read to charge but one crime in each count." *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986).

The Ninth Circuit takes a "broad view" of what may constitute a "single scheme" for purposes of the federal fraud statutes. *Id.* (holding indictment alleging mail fraud scheme comprising four separate tax shelters/investment programs involving different victims promoted over three year period was not duplicitous). The Ninth Circuit has held repeatedly: "'the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme.'" *Id.* (quoting *United States v. Mastelotto*, 717 F.2d 1238, 1245 (9th Cir. 1983)); *United States v. Bryan*, 862 F.2d 1032, 1037-38 (9th Cir. 1989). "As long as 'the set of fraudulent transactions alleged in a count is within the conceivable contemplation of a greedy mind, no duplicity has occurred.'" *Bryan*, 862 F.2d at 1038 (quoting *Mastelotto*, 717 F.2d at 1244). Because the mail and wire fraud statutes "themselves place no internal limitations on scope of the term, the courts have uniformly defined the scope of a 'scheme to defraud' by reference to the intent of the alleged defrauders." *Mastelotto*, 717 F.2d at 1244.

For example, in *Bryan*, the defendant was charged with 20 counts of mail fraud. According to the indictment, he devised a scheme intended to defraud both a class of taxpayers, who were induced by a series of misrepresentations to invest in illegal tax shelters he created, and the government, which was deprived of tax revenue. Bryan lured upper-income taxpayers with two different types of tax shelters, one involving phony charitable contributions, another involving investments in a commodities trading

company. Bryan moved to dismiss the indictment as duplicitous, arguing it alleged "two distinct schemes . . . intended to defraud two distinct classes of victims." The district court denied the motion, and the Ninth Circuit affirmed. The Ninth Circuit rejected the argument that "a single count alleging the defendant schemed to defraud a variety of victims is necessarily duplicitous." 862 F.2d at 1037; *id.* at 1038 ("that the scheme . . . was alleged to have defrauded two sets of victims does not require a finding that two separate 'schemes' existed"). The Ninth Circuit reasoned that a scheme may have the natural and intended consequence of defrauding two different groups, and that the use of different means and misrepresentations made in different contexts may also constitute part of a single scheme. *Id.*

By contrast, in *United States v. Gordon*, the Ninth Circuit found an indictment was duplicitous where it alleged both a conspiracy to defraud the Navy and to obstruct a grand jury investigation into that misconduct. 844 F.2d 1397, 1400-02 (9th Cir. 1988). Refusing to imply a subsidiary conspiracy to conceal a crime, the Ninth Circuit found the evidence involving a primary agreement to secure government contracts did not show any contemplated or discussed plans for a cover up. *Id.*

## II. COUNT ONE AND COUNTS THREE THROUGH EIGHT ARE NOT DUPLICITOUS BECAUSE THEY ALLEGE A SINGLE SCHEME TO DEFRAUD

Applying these principles, the Second and Third Superseding Indictments are fairly read to charge one single scheme to defraud.

Defendants argue the government has failed to allege facts demonstrating a "nexus between . . . vague categories" of investors (Dkt. 497 at 1:7-9, 3:20-22, 4:10-11) or "a connection among the disparate categories" of investors (*id.* at 6:10-11). That argument miscomprehends the standard. The Ninth Circuit has repeatedly rejected the notion that a single scheme to defraud cannot be directed at "two distinct classes of victims." *Bryan*, 862 F.2d at 1037. It likewise has reaffirmed that one scheme may involve "the defrauding of different people over an extended period of time, using different means and representations." There simply is no requirement that all victims of the scheme be the same or substantially similar. What matters is the intent of the alleged fraudsters. *Mastelotto*, 717 F.2d at 1244.

Even if some commonality among victims were required for a single scheme, Walgreens, Safeway, and Theranos board members easily fit that requirement. For one, the Second and Third Superseding Indictments, fairly read, sufficiently allege they invested money in Theranos, as did others.

Further, the Second and Third Superseding Indictments, fairly read, sufficiently allege they, like other investors, received false and misleading statements as set forth in Paragraph 12. Providing money and receiving the allegedly fraudulent misrepresentations more than satisfies the Ninth Circuit standards.

Walgreens, Safeway, and Theranos' board members also easily fit within the definition of investors for several reasons. Walgreens and Safeway, the evidence will show, each paid millions for Theranos securities in the form of convertible notes. The paperwork is replete with references to them as "investors." It was no stretch for the Grand Jury to refer to them with the same words Defendants did.

Defendants likewise concede, and the evidence will show, Theranos board members invested in Theranos. The fact that all of them may not have is irrelevant. "It is not necessary for the Government to prove that the defendants were actually successful in obtaining money or property by means of false or fraudulent pretenses, representations, or promises. [Nor is it] necessary for the Government to prove that anyone lost any money or property as a result of the scheme or plan." *United States v. Rude*, 88 F.3d 1538, 1547 (9th Cir. 1996) (quoting instruction to jury); *United States v. Mosesian*, 972 F.2d 1346, 1992 WL 197408, at *9 (9th Cir. 1992) (unpublished) ("[T]he government need only prove that the defendants intended to induce reliance, not that the victims of the scheme actually would have relied on the mailed documents."); *Llanos v. United States*, 206 F.2d 852, 854-55 (9th Cir. 1953) ("The crime is devising a scheme and using the mails or methods of transportation or communication in interstate commerce to execute or attempt to execute the scheme. Whether the scheme is successful is irrelevant, as is the purpose for which the dupes may have surrendered their money."); *see also Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 649 (2008) (holding reliance is not an element of mail fraud). The fact that recipients of false and misleading statements did not invest does not mean there was no single scheme to defraud.

For these reasons, the Third Superseding Indictment, like its predecessors, alleges a single scheme to defraud investors.

### III. DISMISSAL IS NOT AN APPROPRIATE REMEDY

The Second and Third Superseding Indictments meet the requirements of Rule 8 and are not duplicitous. But even if they were, the government may correct a duplicitous indictment by electing the

basis upon which it will continue; a corrective instruction to the jury may also cure the violation. *See United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985) (jury instruction alleviated possible duplicity in indictment by informing jury that defendant must be found guilty of at least one offense in count); *United States v. Trammel*, 133 F.3d 1343, 1355 (10th Cir. 1998) (jury instruction cured possible duplicity of mail and wire fraud counts). Defendants' arguments that dismissal is required are unavailing.

First, Defendants argue defining "investors" to include Walgreens, Safeway, and Theranos board members creates a substantial risk of a non-unanimous jury verdict. This is speculative. In any event, to the extent necessary to ensure unanimity, the Court can provide instruction about the elements that must be proven and the requirement of a unanimous verdict. *See, e.g.*, *United States v. Lyons*, 472 F.3d 1055, 1068-69 (9th Cir. 2007), *overruling on other grounds recognized by Tamosaitis v. URS Inc.*, 781 F.3d 468, 489 n.11 (9th Cir. 2015); *Rude*, 88 F.3d at 1546.

Second, Defendants raise the specter of prejudicial evidentiary rulings. Dkt. 497 at 8:18-19:5. But they make no effort to explain why evidence relating to, for example, Walgreens was irrelevant under the prior indictment or excludable under Rule 404(b). Theranos's relationship with Walgreens was at issue from day one. *See* Dkt. 1 at ¶ 10 (alleging Theranos "pursued" a partnership with Walgreens with no date limitation). Defendants' deceit of Walgreens is inextricably intertwined with the scheme to defraud. Walgreens was fed many of the same lies that other investors received. In addition, Defendants provided financial projections to investors that portrayed a rosy picture of the Walgreens relationship they knew was failing.

Finally, Defendants argue the government is "smuggl[ing]" time-barred claims" into the case. But the statute of limitations is not a bar to the admission of evidence. *See United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000) ("Relevant pre-limitations evidence is admissible to show the existence of a scheme to complete an illicit transaction."); *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) ("The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence."); *People v. Johnson*, 3 Cal. 4th 1183, 1244 (1992) (holding unadjudicated battery that occurred outside of the statute of limitations was properly admitted). Holmes simply speculates about

when the statute of limitations would expire on substantive wire fraud counts involving Walgreens and others. Moreover, if a scheme to defraud investors arose in 2010 and continued throughout 2015, there is no statute of limitations problem with an indictment alleging a conspiracy to commit wire fraud filed in July 2020.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

DATED: September 18, 2020

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

/s Robert S. Leach
_____
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
VANESSA BAEHR-JONES
Assistant United States Attorneys