ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5589
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AND THIRD SUPERSEDING INDICTMENTS FOR LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS |
| v. | [DKT. 496 & 501] |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date: October 6, 2020<br>Time: 10:00 a.m.<br>Court: Hon Edward J. Davila |

**TABLE OF CONTENTS**

INTRODUCTION & BACKGROUND ...............................................................................................1

ARGUMENT .......................................................................................................................................3

I. The Indictment Provides Sufficient Notice of the Charges. ..................................................3

   A. Legal Standard ...........................................................................................................3

   B. The Indictment's Description of Theranos's "Investors" Does Not Constitute a New or Vague Definition of the term. ......................................................................3

   C. The Investors Contemplated by the Indictment Language Fit the Commonsense Definition of the Term. ......................................................................5

   D. An Indictment Need Not Include Lists of Named Victims or Overly Particularized Allegations, as this Court Has Already Held. ...................................7

   E. The Government Has Answered the Defense's Questions in Meet and Confer Correspondence. ...........................................................................................8

II. A Bill of Particulars is Unnecessary. ....................................................................................10

   A. Legal Standard ...........................................................................................................10

   B. Defendants Have Full Access to the Information Needed to Identify Theranos's Investors and the Misrepresentations Made to Them. ..........................10

   C. Little Has Changed Since the Court Correctly Decided the Investor Fraud Allegations in This Case Did Not Warrant a Bill of Particulars. ............................11

CONCLUSION ..................................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Bortonovsky*,
 820 F.2d 572 (2d Cir. 1987) .................................................................................................. 10, 11

*United States v. Buckley*,
 689 F.2d 893 (9th Cir. 1982) ...................................................................................................... 3, 4

*United States v. Cecil*,
 608 F.2d 1294 (9th Cir. 1979) ........................................................................................................ 3

*United States v. Clay*,
 476 F.2d 1211 (9th Cir. 1973) ...................................................................................................... 10

*United States v. Curtis*,
 506 F.2d 985 (10th Cir. 1974) ........................................................................................................ 8

*United States v. Giese*,
 597 F.2d 1170 (9th Cir. 1979) ...................................................................................................... 10

*United States v. Long*,
 706 F.2d 1044 (9th Cir. 1983) ................................................................................................ 10, 12

*United States v. Trumpower*,
 546 F. Supp. 2d 849 (E.D. Cal. 2008) ......................................................................................... 7, 8

*United States v. Utz*,
 886 F.2d 1148 (9th Cir. 1989) ........................................................................................................ 8

*Yeargain v. United States*,
 314 F.2d 881 (9th Cir. 1963) ........................................................................................................ 10

**Statutes**

28 U.S.C. § 515 ............................................................................................................................. 1, 13

**Rules**

Fed. R. Crim. P. 7(c)(1) ...................................................................................................................... 3

## INTRODUCTION & BACKGROUND

The charges in this case arise from Defendants Holmes and Balwani's schemes to defraud a number of victims in connection with their blood testing company Theranos. While controlling Theranos and its operations, they devised and executed a scheme to defraud patients who obtained blood testing services from the company. Those patients came to Theranos seeking the accurate and reliable blood test results Defendants promised, but Defendants' knew that Theranos's tests suffered from accuracy and reliability problems. That fraudulent scheme culminated in numerous patients receiving questionable or demonstrably inaccurate blood test results. At the same time, Defendants engaged in a scheme to defraud individuals and entities that sought to invest in Theranos. Defendants made a variety of misrepresentations to investors interested in Theranos, concealing the company's reliance on third-party devices while exaggerating the capabilities of Theranos's proprietary analyzers, the financial health of the company, and the strength of its relationships with businesses and government agencies. After they were exposed to false and misleading information from Holmes and Balwani, investors parted with more than $700 million, trusting that Theranos's claimed achievements would lead to monumental success and growth in the future. Predictably, Theranos folded after Defendants' misrepresentations were exposed, resulting in massive losses for the investor victims. Defendants' instant motion asks the Court to dismiss every count comprising the investor-focused allegations: arguably half the case.

It is worth noting that Defendants' fifteen-page motion demanding that sweeping relief is based primarily on the inclusion of a single sentence in the latest versions of the Indictment. That sentence appears toward the beginning of the Indictment in a short paragraph providing a basic, high-level description of Theranos as a corporate entity. (Dkt. 469 ¶ 3). After listing Theranos's state of incorporation and its principal place of business, the Indictment specifies that Theranos deposited financial investments from investors in the company's Comerica Bank account. (*Id*.). The Indictment goes on to explain:

> Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities.

(*Id*.). Based on that language, Defendants claim that they are unable to identify investor victims or

GOVT. OPP'N TO MTD / BILL OF PARTICULARS
18-CR-00258 EJD                                                             1

1  prepare a defense to the investor-focused allegations in the Indictment.  Specifically, Defendants
2  contend that the above language radically expands the meaning of "investors" beyond its natural
3  meaning, necessitating a dismissal of the investor-fraud counts or a bill of particulars detailing investor
4  identities and the false statements directed toward them.  But Defendants' strong reaction to that neutral
5  recitation of the facts appears to stem from strategic concerns rather than genuine confusion or concern
6  about possible prejudice.  The Court should disregard Defendants' complaints for at least three reasons.

7       First, the language of the Indictment provides no reason to deviate from the normal meaning of
8  "investors" and read in a specialized or overbroad definition.  The details that follow the reference to
9  investors in the language above simply provide a description of Theranos's investors, not a redefinition
10 of the concept.  The defense should construe the language in question according to common sense and
11 give "investors" its usual meaning in this context:  individuals or entities who paid Theranos money in
12 exchange for Theranos securities.  And even if the language describing Theranos's investors could be
13 read to expand the definition of

14      Second, Defendants' arguments misjudge the pleading standards for fraud indictments.  There is
15 no requirement that an indictment disclose the name of each victim who was defrauded during a far-
16 reaching fraudulent scheme like the one in this case.  The government is not even required to prove that
17 any individual victims were defrauded, as the wire fraud statute criminalizes the scheme itself regardless
18 of whether it is completed.  Indeed, this Court has already applied the applicable pleading standards to
19 the investor-focused allegations in the Indictment, which are substantially similar to the allegations
20 previously examined by the Court in this case.  Following that analysis, the Court generally approved
21 the allegations as sufficiently detailed to satisfy constitutional requirements and put Defendants on
22 notice of the charges. (Dkt. 330 at 9-20).

23      Third, Defendants are well-equipped to determine for themselves the identities of the investor
24 victims in this case as well as the false statements made to them.  Although discovery is voluminous,
25 obtaining these facts requires review of a focused set of documents as readily accessible to the defense
26 as to the government.  In February 2020, the Court ordered the government to provide a bill of
27 particulars disclosing identities of co-conspirators associated with the alleged conspiracy to defraud
28 investors.  Beyond that, the Court has ruled that a bill of particulars is not necessary to further spell out

GOVT. OPP'N TO MTD / BILL OF PARTICULARS
18-CR-00258 EJD                                                                 2

the nature of the scheme to defraud investors. The alleged scheme to defraud investors has not changed in any way that merits a departure from the Court's earlier reasoning.

For those reasons, discussed in more detail below and in the government's accompanying filings, the Court should deny Defendants' motion to dismiss and decline to order another bill of particulars.

## ARGUMENT

**I.     The Indictment Provides Sufficient Notice of the Charges.**

**A.     Legal Standard**

An indictment is not meant to be a compilation of every fact relevant to a criminal prosecution, nor is it an extensive preview of the evidence comprising the government's case in chief. The government "need not allege its theory of the case or supporting evidence" in an indictment. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982). Instead, an indictment should be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is constitutionally sufficient as long as it "set[s] forth the elements of the offense charged" and "contain[s] a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). The indictment should "contain[] the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *Buckley*, 689 F.2d at 896. The indictment is also meant (1) "to ensure that the defendants are being prosecuted on the basis of the facts presented to the grand jury," and (2) "to allow the court to determine the sufficiency of the indictment." *Id.* These "corollary purposes" of an indictment take on additional significance after trial, "when the theory on which the Government has obtained a conviction is clear." *Id.* at 896 n.3. During the pretrial stage, however, the corollary purposes are generally considered met as long as the indictment satisfies the above primary requirements. *Id.*

**B.     The Indictment's Description of Theranos's "Investors" Does Not Constitute a New or Vague Definition of the term.**

Defendants contend that the Indictment is fatally flawed because it incorporates a "cryptic and tortured" definition of the term "investors." (Dkt. 496 at 5). This argument misunderstands or misrepresents the clear language of the Indictment. Defendants' motion insists on treating a sentence in

paragraph three of the operative Indictment as a specialized and new definition for the term "investors" as used in the Indictment. More specifically, Defendants arguments are premised on the theory that the language of that sentence is meant to supplant the usual, original meaning of "investors" so that it applies to more individuals and entities than it otherwise would. This theory is incorrect. The Second and Third Superseding Indictments refer to the same set of Theranos investors referenced in the original and First Superseding Indictments. The language in paragraph three provides an additional *description* of the makeup of Theranos's investors—not a redefinition of what that term means.

Thus, it is Defendants who are twisting the language of the Indictment, reading in an illogically broad definition of the term "investor" in an attempt to substantiate their arguments that the Indictment is unconstitutionally vague. According to Defendants, when the Indictment alleges that Theranos's investors included certain business partners, this means that *any* business partner could be a Theranos investor, leaving Defendants unable to determine which partners the government views as investors. Similarly, Defendants claim that, because the Indictment alleges that Theranos investors included members of its Board, *any* member of the Board could be characterized as an investor by the government. Defendants make the same argument as to individuals and entities who invested in Theranos through firms created for that purpose.

But the language of the Indictment itself does not support Defendants' interpretation. When the Indictment states that Theranos's investors included persons or companies in a certain category, that does not signify that any and all persons and companies in that category might be Theranos investors. It simply does not follow from the language of the Indictment that all Board members or all business partners were Theranos investors—just as it would make no sense to conclude from similar language that all "individuals" or all "entities" in the world might be Theranos investors. Defendants' theory thus violates the rule that indictments should be read as a whole and "construed according to common sense." *Buckley*, 689 F.2d at 899. Interpreting the operative Indictment according to the proper standard, nothing in paragraph three expands or otherwise alters the definition of "investor" beyond its normal meaning in this context. That view is also consistent with the individual investor wire fraud counts in the operative Indictment; each of Counts Three through Eight relates to a wire transfer to Theranos from an investor victim who paid money in exchange for shares of the company. (Dkt. 469 ¶ 24).

That last point highlights a serious flaw in Defendants' request for dismissal. Defendants' motion is concerned with the prospect that an early paragraph in the Indictment contains a vague or overbroad definition of the term "investor." In Defendants' minds, such an improper definition might include individuals and entities that could not serve as victims in a chargeable scheme to defraud. On those grounds, Defendants seek to dismiss not just the offending language but all of Count One plus Counts Three through Eight. (Dkt. 496 at 6). But even if the early paragraphs in the Indictment included an overbroad or vague definition of "investors" generally, there still would be no basis to dismiss Counts Three through Eight. As Defendants know, each of those counts is based on a wire transfer of money used by an investor victim to pay for Theranos shares. Accordingly, the victims associated with those counts would qualify as investors under any fair definition of the term. The Indictment thus provides constitutionally sufficient notice as to these counts regardless of the description of investors in paragraph three. Defendants overreach considerably when they demand that those counts be dismissed.

### C. The Investors Contemplated by the Indictment Language Fit the Commonsense Definition of the Term.

A simple review of the evidence available to both sides in this case shows that the individuals and entities that the government views as investors were "investors" in the traditional sense: they paid money to Theranos and in return received Theranos securities. As alleged in the operative Indictment, the individuals who invested in Theranos includes certain business partners, members of Theranos's Board, and individuals and entities who invested through purpose-built firms:

*As to business partners*, both Safeway and Walgreens qualify as investors under any reasonable definition of the term. As detailed in the government's Opposition to Defendants' Motion to Dismiss Counts One and Three through Eight of the Second and Third Superseding Indictments Theranos entered into an option agreement with Safeway in July 2010 allowing Safeway to purchase a promissory note convertible into shares of Theranos. (*See* Declaration of AUSA Robert S. Leach in Support of United States' Opposition to Defendants' Motion to Dismiss Counts One and Three Through Eight of the Second and Third Superseding Indictments ("Leach Decl."), Ex. A (SWYSEC_000000005, 28-38)). A similar additional agreement was executed between the parties in September of that year. (*Id.* at 5-6,

1  39-48). In the latter half of 2011, Safeway exercised its rights and paid Theranos for the convertible
2  promissory notes. The paperwork memorializing that transaction expressly define Safeway as an
3  "investor." (*See* Leach Decl. Exs. B & C (SWYSEC_000000061; SWYSEC_000000073); *Id.* at 61, 66,
4  73, 78). In June 2012, Walgreens, another business partner of Theranos, obtained and exercised similar
5  rights to obtain its own promissory note convertible to Theranos stock. The paperwork for that deal
6  similarly refers to the transaction as an "investment." (*See* Leach Decl. Ex. D (WAG-TH-00000050 at
7  14); *Id.* at 78-83).

8  *As to Board members*, multiple members of Theranos's Board appear as stockholders on
9  Theranos's Stock Certificate Ledger—produced to the defense under bates number THER-0905030.
10  That document lists individual Board members as stock holders, indicating the year when a given
11  member obtained Theranos shares, how many shares were acquired, and how the Board member paid
12  Theranos.

13  *As to investors who invested through purpose-built firms*, the relevant entities can be identified
14  through a combination of Theranos's Stock Certificate Ledger and the interview reports for the investor
15  witnesses associated with those entities. For example, the interview report for an investor with the
16  initials D.L. indicates that he and a number of limited partners invested in Theranos through a purpose-
17  created fund. (See US-REPORTS-0011835-39; US-REPORTS-0011849). In turn, the tab of
18  Theranos's Stock Certificate Ledger (THER-0905030) associated with the year 2014 includes an entry
19  documenting the acquisition of Theranos stock by that investment entity and indicating the amount of
20  money paid to Theranos in exchange for the securities.

21  All of the individuals or entities discussed above would be readily identifiable as Theranos
22  investors under the language of each of the Indictments returned in this case—even where the
23  Indictment merely references "investors" without additional elaboration. Thus, Defendants' concerns,
24  regarding an overbroad definition of "investor" or a novel theory of "property" in the context of the
25  convergence requirement, are speculative and unfounded.

26  Defendants come up short in their repeated attempts to show that the Indictment's description of
27  investors has changed the scope of the case. For example, Defendants read too much into language in
28  the Indictments and in the government's pleadings discussing investors, Theranos partners, and Board

members in turn. Defendants seem to argue that, because the Indictments and the government's notice under Federal Rule of Evidence 404(b) refer to Theranos's "partnership" with Walgreens, the Grand Jury and the government are precluded from viewing Walgreens as an investor. (Dkt. 496 at 6). But what reason do Defendants have to assume that the categories of "partner" and "investor" must be mutually exclusive? Even though "investor" and "partner" might mean different things in the Indictment (*id*. at 10), why could an entity not fit both definitions? Defendants offer no satisfactory answer to these questions. They advance a similar argument as to Theranos's Board members and its investors (*id*. at 6), again, without explaining why those groups could not overlap.[1]

As to Walgreens specifically, the defense focuses on the allegation that Defendants made misrepresentations to investors about Theranos's partnership with Walgreens. According to Defendants, this allegation makes no sense if Walgreens itself was an investor. (*Id*. at 11). The Indictment, though, does not allege that *every* category of misrepresentation was made to *every* investor. In fact, Defendants know from their review of the discovery that that was not the case. It should surprise no one that Defendants probably held off from making false statements *to Walgreens about the Walgreens partnership*.[2] This fact does not disqualify Walgreens from being a Theranos investor and a victim of Defendants' fraud if Defendants intended to defraud the company through other misleading statements.

### D. An Indictment Need Not Include Lists of Named Victims or Overly Particularized Allegations, as this Court Has Already Held.

Defendants' motion asks the Court to hold that the operative Indictment is defective for failure to name the victims of Defendants' scheme to defraud investors. Defendants cite no binding authority establishing a general rule that indictments must plead that detail. On the contrary, the case law cited by Defendants is distinguishable and fails to impose such a rigid requirement. In *Trumpower*, for example, the court required a bill of particulars in a case where the indictment failed to plead the factual circumstances of the alleged fraud and alleged the existence of a scheme only in generic terms. *United*

---

[1] This argument by the defense is especially confusing in light of their acknowledgement that some members of Theranos's Board invested money into the company in exchange for shares, such that they would have been included in the natural definition of the term "investors." (Dkt. 496 at 12).

[2] Similarly, since at least one Board member investor was affiliated with the Department of Defense, it would stand to reason that Defendants might have held back from making misrepresentations to him about Theranos's dealings with that Department.

*States v. Trumpower*, 546 F. Supp. 2d 849, 851-52 (E.D. Cal. 2008).  The Indictment in this case goes much further, detailing the specific categories of misrepresentations Defendants made and spelling out the objectives of their fraudulent scheme.  And even in *Trumpower*, it was unclear from the court's order whether the government was required to name each victim in the bill of particulars or merely identify a predefined class of victims as the Indictment here already does.  *Id*. at 852.

Defendants' demand that the Indictment include the identities of victims who were defrauded also conflicts with the case law holding that a scheme to defraud does not need to be successful in order to support criminal charges.  *See United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989).  It is the scheme to defraud itself, rather than the effect of that scheme, that triggers the fraud statute.  *Id.*  Thus, it would be odd to require indictments to list all defrauded victims when a conviction does not require that any victims were actually defrauded.

It is worth noting that the investor-focused allegations of the Indictment are substantially the same as the allegations the Court analyzed before denying Defendants' previous motion to dismiss for lack of notice.  (Dkt. 330 at 7-12).  In the Court's February 11, 2020 Order, the Court held that common sense, not specific allegations, was the standard by which indictments were judged.  (*Id*. at 9).  *See United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974).  The Court found that the investor fraud allegations of the First Superseding Indictment were sufficiently particularized to accomplish the fair notice objectives of an indictment.  (Id. at 9, 12).  The Court further found that that Indictment "establishe[d] a particular factual universe" giving rise to the charges and "state[d] the acts underlying the investor scheme" in sufficient detail.  (*Id*. at 10).  The Third Superseding Indictment meets those same standards in the same ways, despite Defendants' recent complaints.

Because the law does not require an indictment to name each individual victim defrauded by a defendant, the Court should reject Defendants' attack on the Indictment in this case.

### E. The Government Has Answered the Defense's Questions in Meet and Confer Correspondence.

Moving beyond the language of the Indictment, Defendants complain that, when they asked government counsel for additional details regarding the identities of investors, they received in reply a short message identifying certain investors and referring them to locations in the discovery where

GOVT. OPP'N TO MTD / BILL OF PARTICULARS
18-CR-00258 EJD                              8

Theranos's investors are listed. (Dkt. 496 at 7, 8). But the government's matter-of-fact response to the defense's question is not evidence of an intent to obfuscate the issue. Rather, it is confirmation of the fact that the government has not deviated from the usual, common-sense definition of what constitutes an investor. The government did not provide any further explanation regarding the identities of investors in this case simply because there was no additional explanation required in order to understand who was a Theranos investor and who was not.

The Theranos Stock Certificate Ledger, referenced by bates number in the government's response to the defense, appears to contain a complete list of the investors who directly purchased shares from Theranos in exchange for money. The only Theranos investors known to the government but not on that ledger are the two business partner investors, identified for the defense as Safeway and Walgreens. Their history as investors is summarized briefly above. Finally, as to Board members, the government reminded the defense that the members of Theranos's Board of Directors were easily identifiable from the discovery. Cross-referencing a list of Directors against the company's stock ledger would indicate which Board members were also investors.

The government thus gave the defense the information it needed to resolve its questions, and was unaware that defense counsel remained confused. Had the defense followed up and inquired as to whether the government viewed *all* Board members as investors, the government would have answered that board members were investors only if they had paid for Theranos shares. Rather than seek clarification from the government, however, Defendants filed the pending motion seeking to dismiss a substantial portion of the case. The record makes it clear that Defendants did not file the instant motion due to a lack of transparency on the government's part. It is likely that no answer from the government would have been acceptable to the defense. This is shown by Defendants' reaction to the government's response regarding "business partner" investors. The government's response to the defense on this point could not have been clearer: the "certain business partners" referenced in paragraph three of the Indictment are Safeway and Walgreens. (Dkt. 496 at 8). Nonetheless, Defendants remain unsatisfied with that answer, pointing out that those entities do not appear on Theranos's Stock Certificate Ledger and complaining that those businesses should have been expressly named in the Indictment. (*Id*. at 8, 11).

1    Ultimately, the defense is correct that the government's email has no bearing on the adequacy of

2 the Indictment. Because the Indictment stands on its own merits as constitutionally sufficient, the Court

3 should deny Defendants' motion to dismiss.

**II.    A Bill of Particulars is Unnecessary.**

**A.    Legal Standard**

A bill of particulars is appropriate in cases where a defendant needs clarification of the criminal charges in order to prepare a defense. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The function of the bill of particulars is "to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.* A court should order a bill of particulars only when the indictment is "too vague and indefinite for such purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quotation omitted). Like the indictment itself, a bill of particulars is not meant to give the defense a preview of the government's proof at trial. "A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). "[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortonovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A trial court's decision whether to order a bill of particulars is disturbed on appeal only upon a showing of abuse of discretion. *Long*, 706 F.2d at 1054; *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973).

**B.    Defendants Have Full Access to the Information Needed to Identify Theranos's Investors and the Misrepresentations Made to Them.**

As discussed above, Defendants are incorrect that the operative Indictment incorporates a specialized or vague definition of the term "investor;" there is no good reason to depart from the natural meaning of the term in this context and read in a broader definition as Defendants fear. Thus, when the Indictment refers to investors, the government takes that to mean individuals or entities who paid Theranos and received securities. Determining which individuals and entities invested in Theranos is easy for Defendants to accomplish using the discovery produced by the government. The discovery in this case is voluminous, but as described above, there are a small number of documents—known to both

parties—that are sufficient to identify Theranos's investors. Those documents include the company's stock ledger and the key documents surrounding the transactions by which Safeway and Walgreens became investors, all referenced above. For additional context, Defendants may locate and review individual investor agreements and wire transfer records between Theranos and specific investors. And to understand which misleading statements were made to each investor and how, Defendants need only review the reports documenting interviews with the investors or their representatives, along with the attached documents and other correspondence between the investors and Theranos. Because Defendants have easy access to these materials, and because the relevant group of investors is finite and of a manageable size, the Court should decline to order a bill. Indeed, a bill of particulars is not warranted where the information sought by the defendant is available in the indictment "or in some acceptable alternate form." *Bortonovsky*, 820 F.2d at 574.

### C. Little Has Changed Since the Court Correctly Decided the Investor Fraud Allegations in This Case Did Not Warrant a Bill of Particulars.

Defendants must concede that, if "investors" has its "natural meaning" (ECF 496 at 11), a bill of particulars detailing the identities of the investor victims and the object of the fraud is not needed. (*Id*. at 11, 15, 16). Defendants chose not to seek a bill of particulars disclosing the identities of investor victims based on the language in the First Superseding Indictment. (*Id*. at 16). It is Defendants' misunderstanding of the language in paragraph three of the operative Indictment that prompts their current request for that relief. Because the Indictment language references the same set of investors covered by the previous Indictments, a bill of particulars is unnecessary and the Court should deny Defendants' request.

Similarly, the Court should decline to order a bill of particulars because it has already determined, correctly, that Defendants have sufficient information regarding the investor-focused fraud allegations in the Indictment. In its February 11, 2020 Order, the Court declined to require an extensive bill of particulars supplementing the allegations describing Defendants' scheme to defraud investors, requiring only that the government identify for the defense the co-conspirators involved in Count One. (Dkt. 330 at 12-20). The Court found that the investor fraud allegations in the First Superseding Indictment were specific enough so that Defendants "are not left to guess about the Government's

investor-fraud theory." (*Id*. at 16). The Court specifically declined to order a bill of particulars naming victims who might testify in light of the fact that Defendants had access to all information in the government's possession concerning the victims and how they might testify. (*Id*. at 17). The government has continued to comply with its discovery obligations, preserving Defendants' access to the needed materials. The reasoning underlying the Court's February ruling applies to Defendants' current request, warranting denial of their motion.

Defendants also base their request for a bill of particulars on the fact that the operative Indictment alleges a longer time period for Defendants' conspiracy to defraud investors. This change does not warrant a bill of particulars either, because it does not make it any more difficult for Defendants to understand the charges or to prepare their trial and avoid surprise. *Long*, 706 F.2d at 1054. First, (time period always relevant).

Second, the addition of those earlier years to the time period expressly covered by the operative Indictment does not dramatically increase the volume of statements the Defendants must be prepared to defend. As alleged in the Indictment, Theranos operated in what Holmes called "stealth mode" for the first ten years of its existence, from approximately 2003 to 2013. (Dkt. 469 ¶ 5). During that time period, Defendants generally maintained a level of secrecy concerning Theranos's activities and ongoing development work. As a result, Defendants made few, if any, public statements about Theranos, and were significantly less active in soliciting potential investors during the earlier years added to the scope of the conspiracy charges in the recent Indictments.

Finally, when it comes to Defendants' interest in preserving a future double jeopardy defense, the expansion of the time frame expressly covered by the Indictment actually benefits them. *See Long*, 706 F.2d at 1054 (one purpose of a bill of particulars is to protect against double jeopardy). By removing any doubt that Defendants' earlier conduct falls under the conspiracy charges in this case, the operative Indictment provides a clearer picture of what is encompassed by the pending charges.

Under these circumstances, a bill of particulars would create an undue burden on the government and afford limited benefit to the defense. The Court should decline to order a bill and should deny Defendants' motion.[3]

---

[3] Additionally, Defendants' motion includes a request that the Court order the government to

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss the investor counts in the Indictment, and should decline to order a bill of particulars.

DATED: September 18, 2020

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

 */s/ John C. Bostic*
JOHN C. BOSTIC
JEFF SCHENK
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys

---

provide the basis of any alleged duty to disclose. (Dkt. 496 at 19). This request amounts to a motion for reconsideration of the Court's previous rulings on this subject. The government's position on that request is laid out in a separate filing submitted herewith.