STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5589
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' MOTION FOR ORDER THAT DEFENDANTS LACK INDIVIDUAL PRIVILEGE INTEREST IN THERANOS CORPORATE DOCUMENTS |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date: December 14, 2020<br>Time: 1:30 p.m.<br>Court: Hon Edward J. Davila |
| Defendants. | |

GOVT MOT RE INDIVIDUAL PRIVILEGE
18-CR-00258 EJD

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on December 14, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4, 5th Floor, of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, the United States will and hereby does move for an Order that Defendants lack an individual privilege interest in certain Theranos corporate documents. This motion is based upon the instant notice, the attached memorandum of points and authorities, the Declaration of John Bostic and associated exhibits filed herewith, the records in this case, and upon such argument as may be made at the hearing on the motion.

DATED: November 20, 2020

Respectfully submitted,

STEPHANIE M. HINDS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

 */s/ John C. Bostic*
JOHN C. BOSTIC
JEFF SCHENK
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Defendant Holmes was the founder and chief executive of Theranos, a company that claimed to have developed revolutionary blood-testing technology. As founder and CEO, Holmes was also the public face of the company and its spokesperson. She was involved in virtually all aspects of the company's operations—along with her partner, Ramesh Balwani. In that capacity, she frequently solicited the services of attorneys on behalf of the company. Holmes directed the activities of the counsel she retained, acting as a representative of the company she founded and ran. Theranos ceased operations in 2018, and has assigned all of its rights to an Assignee tasked with liquidating and disbursing the company's assets. Thus, Holmes no longer controls any attorney-client privilege associated with Theranos. The Assignee has informed the government that it will not assert privilege over the materials addressed by this motion. Nonetheless, Holmes's counsel has repeatedly asserted the privilege in response to document collection efforts by the government, interviews of key witnesses, and most recently, sixteen documents on the government's trial exhibit list.

There is no dispute that Holmes has the burden to establish the validity of any privilege she wishes to assert. Thus far, Holmes has attempted to make that showing with conclusory statements regarding purported joint representations of her and Theranos by lawyers including those at Boies, Schiller, and Flexner. But in order to establish an individual privilege in the corporate context, Holmes must show, among other things, that she clearly conveyed to Theranos's lawyers that she was seeking legal advice in their individual rather than in her representative capacity, that counsel saw fit to communicate with her on those terms, and that the substance of the conversations did not concern matters within the general affairs of the company. *United States v. Graf*, 610 F.3d 1148, 1160 (9th Cir. 2010). Holmes cannot make the required showing. Indeed, the communications at issue here relate to the business of Theranos, and it is clear that Holmes engaged in these conversations in her capacity as chief representative of the company. These facts do not create a personal privilege that Holmes can assert in order to disrupt the government's investigation or trial presentation.

Because Holmes has no valid privilege to assert as to this information, the Court should issue an Order to that effect and hold that the documents and information at issue are admissible at trial.

**BACKGROUND**

**I.      Holmes' Vague Claims of Privilege**

Defendants have a long history of making conclusory and unsubstantiated privilege claims in this case.  In 2018, in connection with a motion alleging grand jury abuse, Defendants demanded that the government use a taint team to review any documents collected from Theranos during the final days of the company's operation.  (ECF No. 40).  At that time, Defendants lacked standing to assert privilege claims on behalf of Theranos itself.  The company had entered into an assignment for the benefit of creditors on September 12, 2018, making a general assignment on that date and transferring ownership of all of its rights to an Assignee.[1] (*See* Declaration of John Bostic in Support of Motion, Exh A (Assignee Notice to Creditors)).  Defendants argued, though, that the Theranos documents in question "likely" included "documents covered by privileged belonging to the defendants as well."  (ECF No. 40 at 4).  Magistrate Judge van Keulen denied Defendants' motion as to grand jury abuse, but ordered the government to employ a taint team to review the Theranos corporate documents.

The taint review process covered approximately 274,000 documents.  The government taint team took a very liberal view of Defendants' privilege claims, but identified only twenty-five documents that might be subject to even colorable claims of individual privilege by Holmes or Balwani.  (Bostic Decl. ¶ 2).  Those results showed that Defendants' professed concerns about privileged documents were largely unfounded.  Nonetheless, their privilege claims succeeded in slowing down a portion of the government's investigation.

The government trial team also has had a number of discussions with Holmes's counsel regarding documents produced by Theranos reflecting communications with the company's lawyers.  The government has been working with the Theranos Assignee—the controller of any remaining Theranos corporate privilege—in handling such documents.  To the extent the Assignee has waived Theranos's corporate privilege as to specific documents, the government understands that it is free to review and use those documents in its investigation.  The government has agreed to inform the defense of any express assertion or waiver of privilege by the Assignee so that Defendants may make equal use

---

[1] The Assignee was tasked with liquidating Theranos's assets and distributing the available proceeds to creditors, and had no other relationship with Theranos the company.  (*Id.*).

GOVT MOT RE INDIVIDUAL PRIVILEGE
18-CR-00258 EJD                                        2

of non-privileged materials. Holmes's counsel has objected to the government's approach. (Bostic Decl. ¶ 3).

Holmes also has objected to the government's interactions with certain witnesses like David Boies, prominent attorney and member of Theranos's Board of Directors. In February of 2019, counsel for Holmes wrote a letter to the government alleging that witnesses like Boies may have violated their legal obligations to Holmes by responding to government inquiries. (Bostic Decl., Exh. B). In response, the government asked that Holmes substantiate her concerns by identifying the specific engagements that gave rise to the obligations referenced in Holmes's letter. (Bostic Decl., Exh. C). Rather than provide the requested details, Holmes sent the government a single example of a 2012 case where the Boies Schiller firm filed a civil complaint on behalf of Theranos and Holmes. (Bostic Decl., Exh. D (see Attachment B to letter)). At the same time, Holmes disclosed that the Boies Schiller firm had recently clarified that it represented the company and *not* Holmes personally. (*Id.* (see Attachment A to letter)).

On June 26, 2020, the government served Defendant Holmes with its Exhibit List. On July 30, 2020, counsel for Holmes sent a letter to the government complaining that thirteen documents on the government's exhibit list implicated a privilege belonging to Holmes because they reflected communications with attorneys at the law firm Boies, Schiller, and Flexner LLP. (Bostic Decl., Exh. E (7/30/20 letter)). The documents in question were originally produced by Theranos in connection with a lawsuit brought against the company by investor Partner Fund Management. (Bostic Decl. ¶ 4). Those documents were later provided to the SEC during its investigation, and shared with the government in 2017, during the pre-indictment phase of the government's investigation. (*Id.*). The government produced these documents to Holmes and Balwani in October and November of 2018. (*Id.*).

Holmes's privilege claims over these documents were based on the assertion that she and Theranos were "jointly represented by Mr. Boies and his firm on a variety of matters during the period of the alleged conspiracy." (Bostic Decl., Exh. E (7/30/20 letter)). Holmes identified three additional documents on the government's Exhibit List that she contended were protected by Theranos's corporate privilege—although she continued to lack standing to assert or enforce any privilege on behalf of the defunct company. (*Id.*).

/ /

## II. The Government's Recent Attempts to Meet and Confer

The government responded to Holmes's letter on August 6, 2020. (Bostic Decl., Exh. F). The government informed the defense that the Theranos Assignee had waived privilege regarding the specific documents cited in Holmes's letter, meaning that the documents were privileged only if Holmes could assert a personal privilege over them. (*Id.*). The government acknowledged that the Boies Schiller firm appeared on filings for Holmes in two litigation matters, both of which terminated in early March 2014. Holmes, however, had not explained why the Boies Schiller documents she identified were privileged as to her personally—or even stated that the law firm had represented her individually in 2015 or 2016. (*Id.*). In order to allow the government to weigh Holmes's privilege claims, the government requested that Holmes identify the supporting facts, including: the identities of any attorneys representing Holmes in connection with the documents; the nature of the legal engagements underlying the document including the dates of those engagements; whether there were any retainer agreements or joint defense agreements in those engagements; and whether Holmes personally paid for the relevant legal services. (*Id.*). The government agreed that it would not share with any witness the documents identified in Holmes's letter, and that it would refrain from substantive review of those items except as necessary to determine their privilege status, consistent with California Rule of Professional Conduct 4.4. (*Id.*).

In subsequent meet and confer correspondence, Holmes demanded additional information from the government, including copies of documents already produced to the defense and undiscoverable communication between the government and the Theranos Assignee. (See, e.g., Bostic Decl, Exh. G). In a September 22, 2020 letter, Holmes pointed to one additional litigation matter where Boies Schiller purportedly represented Holmes personally. (Bostic Decl., Exh. H). Holmes refused to provide the information that might show the specific documents in question were actually privileged, offering a privilege log instead. (*Id.*).

On October 28, 2020, the government wrote to Holmes's counsel requesting again that Holmes proffer the facts necessary to establish her claims of privilege, and asking for the privilege log promised in Holmes's September 22, which had not yet been provided. (Bostic Decl.. Exh. I). In particular, the government asked for the facts that Holmes would proffer to a court evaluating her privilege claims in a

1  final attempt to avoid litigation. (*Id.*). Holmes refused to provide those details. (Bostic Decl., Exh. J).
2  Defendant's most recent response attached a privilege log that does not include the information needed
3  to establish Holmes's privilege claims, necessitating this motion. (Bostic Decl., Exh. K).

**ARGUMENT**

**III.    It is Holmes's Burden to Establish the Existence of a Valid Privilege**

Holmes has made it clear that she intends to assert broad, individual privilege claims over certain documents and information in this case, including thirteen of the documents identified on the government's Exhibit List. Having made that choice, the burden falls on Holmes to prove that her claimed privilege is valid. "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir.2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997)). The required showing is not an easy one. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002)). The party asserting the privilege "bears the burden of proving each essential element" of the eight-part test that determines whether information is covered by the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* at 607-608 (quotation omitted).

Similarly, the work-product doctrine protects documents "prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir.1989). Where a document was not created "exclusively for litigation," then it qualifies for production only if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (quotation omitted). In applying this standard, courts "consider the totality of the circumstances and determine whether the document was

created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* (quotation omitted). "The party seeking to invoke the work product doctrine bears the burden of establishing all the requisite elements, and any doubts regarding its application must be resolved against the party asserting the protection." *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014).

### IV.     Holmes's Claims of Individual Privilege Are Untenable

In discussions with the government, Holmes oversimplifies the question of whether she can assert privilege over the documents and information in question. In her view, if a law firm once filed a pleading on behalf of a person, that person has a perpetual right to shield from discovery all communications with that firm and prevent their use as evidence in a criminal investigation and trial. As discussed above, much more is required to successfully assert a claim of privilege. And establishing the existence of a valid privilege is especially difficult in this case; the fact that these communications occurred in the corporate context makes it "challenging to determine the identity of the client." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). The Ninth Circuit has contemplated these challenges, including the factual scenario presented here: "[C]orporate officers, directors, and employees who communicate with corporate counsel on behalf of the corporation may later attempt to claim a personal attorney-client privilege regarding those communications after the corporation has waived its own privilege." *Id.*

In those cases, courts are guided by the rule that "any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer." *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir.1986) (cited in *Graf*, 610 F.3d at 1159). In *Bevill*, the Third Circuit relied on a multi-part test to determine whether an individual had successfully established a personal privilege in the context of corporate legal communications. That test, later adopted by the Ninth Circuit, requires the person asserting the privilege to satisfy *each* of the following five requirements.

**First**, they must show they approached counsel for the purpose of seeking legal advice. **Second**, they must demonstrate that when they approached counsel they made it clear that they were

seeking legal advice in their individual rather than in their representative capacities.  **Third**, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.  **Fourth**, they must prove that their conversations with counsel were confidential.  And **fifth**, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Graf*, 610 F.3d at 1160 (quoting *Bevill*, 805 F.2d at 123, 125).[2]  Here, Defendant has not made an adequate showing as to any of these factors.  Based on the government's understanding of the facts and the nature of the communications at issue, Holmes cannot satisfy factors two, three, or five.

The government assumes for the sake of argument that Holmes will establish that she engaged in these communications because she was seeking legal advice in satisfaction of the first factor.  It is highly doubtful, though, that Holmes satisfied the second requirement of the *Bevill* test by clearly indicating to Theranos's outside counsel that she was seeking their advice in her personal capacity and not as a representative of the company.  It is important to note that this element of the test places the burden squarely on the individual asserting the privilege to show that they *expressly* sought advice for themselves as opposed to the company.  Here, it seems the opposite is true.  A review of Holmes's privilege log shows that the communications in question related to corporate matters, as discussed in more detail below.  It would have been strange indeed for Holmes to expressly ask for *personal* legal advice on matters of corporate interest as opposed to seeking such guidance in her capacity as chief executive of the company.

If Holmes did not make it clear to attorneys that she was seeking legal advice in her individual

---

[2] This test has been adopted by several other circuits.  *See, e.g.*, *In re Grand Jury Subpoena (Newparent )*,  274 F.3d 563, 571–72 (1st Cir.2001); *In re Grand Jury Subpoenas (Roe and Doe)*, 144 F.3d 653, 659 (10th Cir.1998); *In re Grand Jury Proceedings*, 156 F.3d 1038, 1040-41 (10th Cir.1998); *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214-15 (2d Cir.1997).  The Sixth Circuit appears to use a similar test, requiring at a minimum that a corporate employee must make it clear to counsel that he seeks advice on personal matters.  *See Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir.2005) ("Our court, like many others, requires that the individual officer seeking a personal privilege 'clearly claim[ ]' he is seeking legal advice in his individual capacity.").  Other circuits have cited *Bevill* favorably without adopting the five-factor test.  *See, e.g.*, *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C.Cir.1994).

capacity, then the attorneys could not have chosen to represent her individually in the context of the challenged communications. This fact prevents Holmes from meeting the third element of the *Bevill* test. As further evidence that Theranos's lawyers did not agree to represent Holmes separate from her capacity as Theranos CEO, the firm itself informed Holmes's lawyers in March of last year that Boies Schiller represented Theranos the company and did not represent Holmes personally. (Bostic Decl., Exh. D (see Attachment A to letter)); s*ee Graff*, 610 F.3d at 1161 (noting that some of the attorneys in that case denied representing the defendant individually). Moreover, Holmes's privilege log includes several documents where Holmes is merely copied on communication between others—and one communication not including her at all. (Bostic Decl., Exh. K). These facts undercut any claim of a mutual understanding between Holmes and counsel that they were representing her individually.

In considering the second and third factors under *Bevill*, the Ninth Circuit in *Graff* stressed the fact that the relevant retainer agreements had been signed on behalf of the company itself, noting also that the defendant had not paid for any of the legal representation. *Id.* at 1161-62. The apparent lack of a retainer agreement signed by Holmes *in her personal capacity* and a lack of any payment by Holmes herself would have reinforced counsel's understanding that they were not representing her individually but only as a representative of Theranos.

Finally, as to the fifth *Bevill* factor, Holmes's privilege log reveals that the substance of the conversations in question related to "matters within [Theranos] or the general affairs of [Theranos]." *Graff*, 610 F.3d at 1160. This fact alone prevents Holmes from satisfying the *Bevill* test, under which an employee "may only assert an individual privilege to the extent that communications regarding individual acts and liabilities are segregable from discussions about the corporation." *In re Grand Jury Subpoena*, 274 F.3d 563, 573 (1st Cir. 2001). Holmes claims an individual privilege over communications on various topics, including attorney billing arrangements, investor contacts, regulatory requirements, and claims by journalists. But not one of these topics relates to Holmes herself separate from the business of Theranos. Instead, each of these subject areas, on its face, implicates the interests and activities of Theranos as opposed to Holmes in her personal capacity. Accordingly, it is logical to conclude that these conversations with counsel reflected Holmes's role as founder, leader, and spokesperson for Theranos as a company. *Graff*, 610 F.3d at 1162 (defendant failed fifth factor because

his discussions with counsel "related to his official duties at [the company] and the general affairs of the company"). As such, those communications did not give rise to any personal privilege Holmes can assert now.

Nor can Holmes prevail simply by showing that the Boies Schiller firm may have represented her for specific legal engagements in the past—even if she could make such a showing. In *Graf*, the Ninth Circuit noted that some of the attorneys in question had actually represented the defendant personally at various times on a range of matters. *Graf*, 610 F.3d at 1162-63. Nonetheless, because that defendant had never asked those attorneys to represent him personally in connection with the communications at issue in that case, and because there was no evidence that the defendant consulted those attorneys on anything other than company business, he could not establish the existence of a personal attorney-client relationship or corresponding privilege. Similar facts here compel similar results.

The defendant in *Graf* failed to prove an individual privilege despite having an additional argument not available to Holmes. According to Graf, the fact that he was an independent contractor rather than an employee of the relevant company meant that his conversations with corporation counsel should not have fallen within the company's privilege but his own. *Graf*, 610 F.3d at 1157. The Ninth Circuit concluded that, although Graf had no official title at the company, he regularly communicated on the company's behalf, participated in marketing and management, and served as "the company's voice in its communications with counsel." *Id.* Here, in contrast, Holmes was the founder and CEO of the company that held the privilege. As the highest-ranking officer of the company, Holmes was involved in every aspect of Theranos's business, and served as the voice of the company in internal discussions, in pitches to investors, in interviews with journalists, and in conversations with attorneys. Holmes cannot recast those conversations—in which she spoke as head of the company—as personal simply to frustrate the government's access to evidence.

Holmes's privilege claims here are further weakened by the fact that David Boies and his firm were heavily involved in Theranos's activities from the early days of the company. Based on the information available to the government, it appears that the law firm worked on a wide range of issues for the company. Under those circumstances, it is inappropriate to assume that every communication

between Holmes and a Boies Schiller attorney relates to the firm's representation of her personally.  As for David Boies himself, he acted as Theranos's lawyer in some situations but was also an investor in the company.  He sat on the company's Board of Directors beginning in mid-to-late 2015, where he would have provided general input on the company's growth and business strategies.  *See, e.g.*, *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) ("Where the attorney was asked for business (as opposed to legal) counsel, no privilege attached….").

Defendant's work-product assertions do not change the outcome.  Holmes's privilege log references documents that appear to be dual-use at best, and she cannot show that the documents would not have been created in the same form absent the prospect of litigation.  *See Richey*, 632 F.3d at 568.  More important, it would make little sense if a corporate executive could to assert work-product privilege in cases where the corresponding attorney-client privilege belonged only to the company.  Courts faced with scenarios similar to this one have applied the logic of the *Bevill* test to reject accompanying work-product claims.  *See, e.g.*, *Grassmueck v. Ogden Murphy Wallace, P.L.L.C.*, 213 F.R.D. 567, 572 (W.D. Wash. 2003) (holding that former employee could not invoke work-product privilege over documents that "relate to the corporate affairs and are not segregable from representation of [the employee] as an individual).  Even if some of the materials in question were created for the joint benefit of Holmes and Theranos, the work product privilege does not give her the power to veto disclosure.  *Grand Jury Subpoena*, 274 F.3d at 574.  The Theranos Assignee's waiver "negates [her] potential claim" of work-product privilege.  *Id.*

## CONCLUSION

Accordingly, the Court should issue an order holding that Holmes has not established an individual privilege as to communications with Boies Schiller attorneys, and hold that the documents in question are admissible and not privileged.

GOVT MOT RE INDIVIDUAL PRIVILEGE
18-CR-00258 EJD                                              10

| | |
|---|---|
| DATED: November 20, 2020 | Respectfully submitted, |
| | STEPHANIE M. HINDS<br>Attorney for the United States,<br>Acting Under Authority Conferred<br>By 28 U.S.C. § 515 |
| | */s/ John C. Bostic*<br>JOHN C. BOSTIC<br>JEFF SCHENK<br>ROBERT S. LEACH<br>VANESSA BAEHR-JONES<br>Assistant United States Attorneys |