STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5589
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF MOTION FOR ORDER THAT DEFENDANTS LACK INDIVIDUAL PRIVILEGE INTEREST IN THERANOS CORPORATE DOCUMENTS |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date: December 16, 2020<br>Time: 11:00 a.m.<br>Court: Hon Nathanael M. Cousins |
| Defendants. | |

GOVT REPLY ISO MOT RE INDIVIDUAL PRIVILEGE
18-CR-00258 EJD

**INTRODUCTION**

The government has challenged Defendant Holmes's broad privilege assertions, providing notice of her burden to substantiate those claims and the legal standard she must meet. In response, Defendant makes no real attempt to satisfy the applicable standard. Instead, she asks the Court to assume based on minimal evidence that she had a generalized personal attorney-client relationship with the Boies Schiller law firm spanning several years. From that dubious starting point, Defendant jumps to the conclusion that all communications with Boies Schiller attorneys must have been in the context of that personal attorney-client relationship. Defendant applies this argument even to communications where she is merely copied or not included at all.

Defendant's approach is insufficient to satisfy her burden under the applicable case law. Defendant has failed to present evidence establishing a sustained individual attorney-client relationship with Boies Schiller, and has made no effort to prove that she discussed her status as an individual client with lawyers at the firm. Moreover, the documents at issue plainly relate to Defendant's role as chief executive of Theranos and her responsibilities to manage the company's business, undercutting any claim that these specific communications were particularly targeted to Holmes's individual legal interests. In similar situations, courts have consistently held that a corporate officer cannot claim an individual privilege over typical communications with corporate counsel—especially when the company itself has waived any privilege over those communications. Any other result would give many corporate officers the unnecessary and potentially dangerous power to interfere with a company's privilege rights.

In an effort to avoid the burden she cannot meet, Defendant points to a small number of court cases where Boies Schiller filed pleadings in her name and Theranos's, asking the Court to extrapolate from that a broader joint representation spanning several years. In support of that argument, Defendant relies on inapposite case law regarding attorney conflicts of interest and joint representations of corporate subsidiaries. Neither the facts nor the law supports Defendant's argument, though.

Accordingly, the Court should grant the government's motion in full.

//

**ARGUMENT**

**I.     Defendant Is Unable to Satisfy the Standard Established in *Graf***

When a corporate officer speaks to corporate counsel, "[t]he default assumption is that the attorney only represents the corporate entity, not the individuals within the corporate sphere, and it is the individuals' burden to dispel that presumption." *In re Grand Jury Subpoena (Newparent)*, 274 F.3d 563, 571 (1st Cir. 2001). To overcome that assumption and claim individual privilege, the Ninth Circuit requires individuals in Defendant's position to satisfy a five-part test:

> **First**, they must show they approached counsel for the purpose of seeking legal advice. **Second**, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. **Third**, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. **Fourth**, they must prove that their conversations with counsel were confidential. And **fifth**, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Graf*, 610 F.3d at 1160 (quoting *Bevill*, 805 F.2d at 123, 125). Defendant has refused to engage on this standard because she cannot meet the required elements. Defendant has failed to show in connection with the challenged communications that she informed Boies Schiller that she was seeking legal advice in her personal and not representative capacity. She has similarly failed to show that Boies Schiller expressly agreed to represent her individually in connection with the specific communications at issue. Finally, she has not shown—and cannot show—that these communications related to anything other than Theranos's general corporate affairs.

Responding to the government's motion, Defendant concedes that Boies Schiller's claimed joint representation of her in connection with the Fuisz litigation ended in the first quarter of 2014. (Holmes Decl. ¶ 2). She further concedes that she is unable to produce a personal engagement letter or retainer agreement regarding the legal engagements in question. (*Id.*). Although she repeatedly represents that she understood Boies Schiller to be representing her individually, she offers no evidence she ever discussed that understanding with the Boies Schiller attorneys. Aside from cases where Boies Schiller

filed pleadings in her name and in Theranos's, she does not claim that the firm ever agreed to represent her individually or informed her that it was representing her individually. Instead, she asserts that she does not recall being told otherwise. (*Id.* ¶¶ 3-5). Defendant does not claim to have paid Boies Schiller personally for legal services, leaving the Court to infer that payment was handled by Theranos alone. Defendant's declaration purports to list a small number of topics on which Boies Schiller gave her individual advice. Notably, though, Defendant's submission does not establish which, if any, of the documents addressed in the government's motion relate to which of those topics. And Defendant's privilege log reveals that those communications actually involve general matters of corporate business instead of Defendant's own distinct legal rights. Faced with similar facts, the Tenth Circuit has found that a corporate officer could not satisfy the *Bevill* test because the documents at issue pertained to his acts as a corporate officer, and were not kept confidential as to other corporate officers or third parties. *In re Grand Jury Proceedings*, 156 F.3d 1038, 1041 (10th Cir. 1998). The same is true here.

It bears repeating that, under the applicable standard, even if Defendant can establish the existence of a personal attorney-client relationship beyond her role as a corporate representative, the attorney-client privilege "would extend only to those communications which involved [her] individual rights and responsibilities" arising out of her actions as a corporate officer—not general advice for the company. *In re Grand Jury Subpoena (Newparent)*, 274 F.3d 563, 572 (1st Cir. 2001); *see also In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998) ("[W]hether or not Intervenor might have been able to show the existence of a personal attorney-client relationship with corporate counsel, he still had the burden in this case of showing that the privilege actually applies to *the documents at issue*.") (emphasis in original).

Rather than prove that the specific communications at issue are covered by an individual attorney-client privilege as the law requires, Defendant attempts to establish the existence of an amorphous personal attorney-client relationship with Boies Schiller that spans the relevant time period. Defendant claims that her purported long-running attorney-client relationship with the firm began in 2011 in connection with an intellectual property dispute against a man named Richard Fuisz. (Opp. at 2). That dispute led to Theranos filing a lawsuit against Fuisz and others alleging causes of action relating to the ownership of certain United States patents. (*See* Case No. 11-cv-05236 PSG, ECF No. 1).

The fact that Defendant was a named plaintiff in the Fuisz litigation, however, is not dispositive or even particularly significant. Holmes is listed as an inventor or co-inventor on many if not all of the patents owned by Theranos. As the former holder or co-holder of those patents, she might have been viewed as a necessary party in any lawsuit implicating their ownership or involving alleged infringement. *See, e.g.*, *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir.1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."). In light of this doctrine, the failure to join Holmes as a named plaintiff might have rendered Theranos's lawsuit against Fuisz procedurally defective. Accordingly, her presence as a named party in such litigation arguably says more about legal requirements than it does about any overarching relationship between Boies Schiller and Holmes.

Moreover, Defendant's efforts in this regard miss the mark. Her burden is to establish the existence of a valid individual privilege applicable to each of the communications she claims as privileged. Even if Defendant were able to establish that Boies Schiller attorneys represented her in connection with discrete legal matters in the past, she still cannot show that the specific communications at issue here are all covered by an individual privilege. *Teleglobe*, cited by Defendant, instructs that "a co-client relationship is limited by 'the extent of the legal matter of common interest.'" *In re Teleglobe Communications Corporation*, 493 F.3d 345, 363 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75 cmt. c). In other words, joint representation is determined matter by matter. The fact that one legal matter is handled on a joint basis has no automatic effect on other, separate matters. In this case, Defendant invites the Court to conclude that a single joint representation early in a lawyer's history with a party (here, the Fuisz litigation) automatically converts every subsequent engagement into a similar joint representation. The law does not support that theory, and adopting it would largely eliminate the burden of the party claiming the privilege to show its application over the actual communications at issue.

Finally, even if Defendant could establish that some of the challenged communications were protected by the attorney-client privilege, the Assignee's privilege waiver has the potential to render her privilege claims moot. In *In re Grand Jury Subpoena (Newparent)*, the First Circuit analyzed corporate officer privilege in the context of a criminal investigation, where the individual privilege claim was

stronger than Defendant's in several respects. *Newparent*, 274 F.3d at 571-72. For instance, the corporate lawyer in that case submitted an affidavit making it clear that he represented the named officers in their personal capacities. *Id.* In response, the First Circuit assumed for argument's sake that the first four prongs of the *Bevill* test were satisfied. *Id.* at 572. Turning to the fifth factor, however, that court noted that "the individuals' allegedly protected communications with [the company lawyer] do not appear to be distinguishable from discussions between the same parties in their capacities as corporate officers and corporate counsel, respectively, anent matters of corporate concern." *Id.* at 572. In that case, the company was willing to cooperate in the government's investigation, and the court found the company's privilege waiver dispositive. *Id.* at 573. The First Circuit's holding was that "a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity, notwithstanding the existence of an individual attorney-client relationship between him and the corporation's counsel." *Id.*[1] This holding rejected the theory advanced by Defendant here: that corporate officers should have "a veto over the disclosure of documents produced for the joint benefit of the individual[] and the corporation." *Id.* at 574. That court rightly saw that granting officers that power "would open the door to a claim of jointly held privilege in virtually every corporate communication with counsel." *Id.* at 573. Although the Ninth Circuit has not yet ruled on this specific question, the First Circuit noted that its holding followed the reasoning of *Bevill*, on which the Ninth Circuit relied in *Graf*. *Id.*

Following this sound reasoning, the Court should hold that Defendant has failed to meet the applicable test to establish a valid individual privilege claim, and should hold that the Theranos Assignee's waiver removes any privilege concerns regarding the documents in question.

## II.     Defendant's Arguments Rely on Incorrect Legal Standards

The *Graf* test described above is not optional. The Ninth Circuit has adopted it as the appropriate standard for cases where corporate officers wish to invoke the attorney-client privilege over communications with the company's lawyers. Defendant has made no effort to show how the

---

[1] In reaching that conclusion, the First Circuit noted that an alleged joint defense agreement would not change the analysis, since "the existence of a joint defense agreement does not increase the number of parties whose consent is needed to waive the attorney-client privilege." *Id.* at 572-73.

communications she seeks to protect fit within that standard. Instead, Defendant argues that she is not subject to the *Graf* test based on her claim that Boies Schiller jointly represented her and Theranos for years on a variety of topics, proving the existence of attorney-client relationship "beyond question." (Opp. at 15). According to Defendant, *Graf* applies only in situations involving what she calls an "implied" attorney-client relationship. (*Id.* at 9, 15). But neither *Graf* nor *Bevill* frames its holding that way. Indeed, neither of those opinions even references a distinction between "implied" attorney engagements or other varieties, much less premises its reasoning on such a distinction.

The only support Defendant cites for this point is *Montgomery Academy v. Kohn*, 82 F. Supp. 2d 312 (D.N.J. 1999). That district court case is not binding on this Court, and it is of limited value here. *Montgomery Academy* had nothing to do with the scope of the attorney-client privilege or a corporate officer's ability to assert that privilege over conversations with company lawyers. Instead, that case involved a request to disqualify an attorney from representing a school in a legal matter where the school's interests were adverse to those of one of the lawyer's former clients, named Kohn. *Montgomery Acad.*, 82 F. Supp. 2d at 314-15. The court in that case found that, before the lawyer had been hired by the school to sue Kohn and others, the lawyer had met with Kohn—who was apparently affiliated with the school—and received confidential information during what was deemed to be an attorney-client conversation. *Id.* at 315-16. Especially problematic was the fact that the confidential information obtained during that meeting related to the subject matter of the lawsuit later brought against Kohn. *Id.* at 315. The plaintiff in that case cited *Bevill* in its attempt to avoid the lawyer's disqualification. *Id.* at 316. The court distinguished *Bevill* based on its dissimilar context and held that the lawyer's previous attorney-client contact with Kohn disqualified her from representing the school against Kohn. *Id.*

Ultimately, *Montgomery Academy* lends little support to Defendant's argument. Because that case does not involve a privilege assertion by a corporate officer, that court's decision was not guided by the key principles that matter here: that the party asserting the privilege has the burden to establish it, that the attorney-client privilege is strictly construed, and that any privilege that exists as to a corporate officer's role belongs to the corporation itself and not the officer. *See United States v. Ruehle*, 582 F.3d 600, 607 (9th Cir. 2009); *Bevill*, 805 F.2d at 124. Here, those principles weigh in favor of the

government's motion.

In essence, Defendant's argument turns on her view of the difference between disputable attorney-client relationships and those whose existence is beyond dispute. Holmes insists that her claimed relationship with Boies Schiller falls into the latter category. But the existence and scope of Defendant's relationship with Boies Schiller is disputable, and her conclusory statements have done little to distinguish that relationship from the usual one between any chief executive and outside counsel. As a result, Defendant's submission falls well short of the showing she is required to make to assert an independent privilege.

Defendant's reliance on the Third Circuit's *Teleglobe* case is similarly misplaced. In *In re Teleglobe Communications Corporation*, 493 F.3d 345 (3d Cir. 2007), corporate subsidiaries in bankruptcy proceedings brought a suit alleging breach of fiduciary duties in connection with a controlling corporation's decision to cease funding the subsidiaries' parent company. *Teleglobe*, 493 F.3d at 352-53. In connection with that litigation, the Third Circuit considered communications of attorneys who represented the entire corporate family before the dispute arose. *Id.* The resulting opinion lays out some general principles relevant to the analysis of multi-client lawyer engagements. Because that case involves corporate entities rather than individuals affiliated with companies, however, it is unhelpful in navigating the ambiguities that arise when corporate officers communicate with corporate counsel as representatives of their company. In that context, *Graf* and similar cases provide far more valuable instruction.

To the extent *Teleglobe* is helpful, it actually cautions against rushing to recognize or expand the scope of privilege in joint representations. For example, *Teleglobe* cites the Supreme Court's reasoning in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), recognizing that the attorney-client privilege should not be applied "mechanically" in the corporate context. *Teleglobe*, 493 F.3d at 361. Instead, a "more nuanced inquiry" is appropriate, focusing on whether giving a type of communication protection is "likely to encourage *compliance-enhancing* communication" that improve the legal system. *Id.* (emphasis in original). In contrast, Holmes urges the Court to apply the privilege mechanically to a wide range of communications, screening them in a way that would not facilitate beneficial attorney-client exchange but merely deprive the government of evidence. The Third Circuit in *Teleglobe* also

advised that the scope of joint representation is determined by the parties' intent and expectations, underscoring the importance of statements made by parties and their attorneys. *Id.* at 363. Here, the Boies Schiller firm has informed the defense of its understanding that it never represented Holmes individually. (*See* Declaration of John Bostic in Support of Motion, Exh. D / ECF No. 559-5 at 5). In that same vein, *Teleglobe* admonishes that "finding too broad the scope of a joint representation gives the parties more control over each other's ability to waive the privilege than they intended." *Teleglobe*, 493 F.3d at 363. In this case, the Court should not empower Defendant to overrule the Assignee's decision to waive privilege over certain communications relating to corporate matters.

### III. The Court Should Disregard Defendant's Ancillary Arguments

Defendant's Opposition to the government's motion also includes arguments that have no bearing on the validity and scope of her claimed privilege. The Court should disregard these arguments.

More than once in her Opposition, Defendant relies her belief that she was personally represented by attorneys at Boies Schiller throughout the relevant time period. Her declaration similarly makes representations about the existence of that attorney-client relationship apparently based solely on her understanding. Defendant's subjective beliefs, however, do not establish a valid privilege. In *Montgomery Academy*, a district court case cited by the defense, the court notes that "[r]easonable belief is the proper legal standard for assessing whether an implied attorney-client relationship existed." *Montgomery Academy*, 82 F. Supp. 2d at 318. Defendant, however, does not assert that her claimed attorney-client relationship was "implied," and argues that *Graf* provides the appropriate standard for determining whether such relationships exist. (Opp. at 15). Critically, none of the five factors set out by *Graf* involves a party's subjective understanding or belief about an attorney-client relationship. *Graf*, 610 F.3d at 1160. Instead, that test appears designed to put the burden on the party seeking legal advice to make it explicit and clear that she is communicating in her personal capacity and not as a corporate representative. *Id.* In *Teleglobe*, the Third Circuit firmly rejected an argument that a joint representation of two parties can arise through the expectations of one party alone. *Teleglobe*, 493 F.3d at 362. As that Court made clear, a party's mistaken beliefs about representation do not give them the right to control the protections and privileges afforded to another client—even if those mistaken beliefs are reasonable. *Id.*

Elsewhere in her brief, Defendant accuses the government of demonstrating a lackadaisical approach to her claims (opp. at 9) and showing disregard for her attorney-client relationship (*id* at 5). Those accusations ring hollow in light of all the government's efforts (1) repeatedly requesting additional information from Defendant in order to understand the basis for her privilege claims; (2) engaging in a lengthy and labor-intensive filter review aimed at keeping any Holmes-privileged documents away from the trial team; and (3) raising this issue with the Court to obtain confirmation that Defendant lacks a personal privilege. The government does not intend to violate any valid privilege in its investigation or prosecution of this case, but doubts Defendant's privilege claims based on her insufficient showing.

Similarly, the Court should give little weight to Defendant's complaints regarding communications between the government and the Assignee who inherited Theranos's assets and legal rights. Defendant argues that, without access to the government's communications with the Assignee, she is unable to determine what position the Assignee has taken on certain documents—or the implications of those decisions on Holmes's rights. (Opp. At 8-9). But the government has kept Defendant informed of the Assignee's positions as to specific documents, and Defendant is not entitled to the government's communications with counsel representing third parties. More important, Defendant's argument that she needs transparency into government discussions with the Assignee is inconsistent with her overall position. Holmes's Opposition is based on the premise that she has a unilateral right to assert privilege over communications with Boies Schiller lawyers who represented Theranos—regardless of the Assignee's actions. If that were the case, the Assignee's decisions to assert or waive any corporate privilege would have no effect on Holmes's rights. Alternatively, if the Court follows the above case law to conclude that Holmes lacks a broad personal privilege as to these communications, she has no grounds to complain about how the Assignee handles them.

## CONCLUSION

Accordingly, the Court should grant the government's motion and hold that Defendant lacks an individual privilege as to the documents in question.

| | |
|---|---|
| DATED: December 9, 2020 | Respectfully submitted, |
| | STEPHANIE M. HINDS<br>Attorney for the United States,<br>Acting Under Authority Conferred<br>By 28 U.S.C. § 515 |
| | */s/ John C. Bostic*<br>JOHN C. BOSTIC<br>JEFF SCHENK<br>ROBERT S. LEACH<br>VANESSA BAEHR-JONES<br>Assistant United States Attorneys |