```
 1

 2                    UNITED STATES DISTRICT COURT

 3                   NORTHERN DISTRICT OF CALIFORNIA

 4                        SAN JOSE DIVISION

 5

    UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
 6                                    )
                   PLAINTIFF,         )  SAN JOSE, CALIFORNIA
 7                                    )
              VS.                     )  DECEMBER 16, 2020
 8                                    )
    ELIZABETH A. HOLMES,             )  PAGES 1 - 33
 9                                    )
                   DEFENDANT.         )
10   _____    )

11

12                 TRANSCRIPT OF ZOOM PROCEEDINGS
              BEFORE THE HONORABLE NATHANAEL COUSINS
13                 UNITED STATES DISTRICT JUDGE

14
    A P P E A R A N C E S (ZOOM):
15
    FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
16                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
17                        150 ALMADEN BOULEVARD, SUITE 900
                          SAN JOSE, CALIFORNIA 95113
18
                          BY:  ROBERT S. LEACH
19                             VANESSA BAEHR-JONES
                          1301 CLAY STREET, SUITE 340S
20                        OAKLAND, CALIFORNIA 94612

21       (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

23  OFFICIAL COURT REPORTER:
                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                          CERTIFICATE NUMBER 8074
24
        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25            TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S (ZOOM): (CONT'D)

 2

 3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                                BY:  LANCE A. WADE
 4                                   AMY MASON SAHARIA
                                     PATRICK LOOBY
 5                              725 TWELFTH STREET, N.W.
                                WASHINGTON, D.C. 20005
 6
                                LAW OFFICE OF JOHN D. CLINE
 7                              BY:  JOHN D. CLINE
                                ONE EMBARCADERO CENTER, SUITE 500
 8                              SAN FRANCISCO, CALIFORNIA 94111

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SAN JOSE, CALIFORNIA                    DECEMBER 18, 2020

 2                        P R O C E E D I N G S

 3            (COURT CONVENED AT 11:05 A.M.)

 4                THE CLERK:  CALLING CRIMINAL 18-0258, UNITED STATES

 5        VERSUS ELIZABETH HOLMES.

 6            BEGINNING WITH GOVERNMENT COUNSEL, PLEASE STATE YOUR NAME

 7        FOR THE RECORD.

 8                MR. BOSTIC:  JOHN BOSTIC FOR THE UNITED STATES.

 9                MR. LEACH:  GOOD MORNING, YOUR HONOR.

10            ROBERT LEACH FOR THE UNITED STATES.

11                THE COURT:  GOOD MORNING.

12                MR. WADE:  GOOD MORNING, YOUR HONOR.

13            LANCE WADE ON BEHALF OF ELIZABETH HOLMES.  WITH ME THIS

14        MORNING OUT THERE ARE MY COLLEAGUES, AMY SAHARIA AND

15        PATRICK LOOBY.

16            MS. HOLMES IS ALSO PRESENT.  I RECOGNIZE HER ON THE

17        SCREEN.  SO THE COURT IS AWARE, WE HAVE SET UP A MECHANISM BY

18        WHICH WE ARE ABLE TO COMMUNICATE WITH HER IF NEED BE, AND IF

19        THAT BECOMES NECESSARY, I WILL ADVISE THE COURT OF THAT AND

20        SEEK THE COURT'S INDULGENCE FOR A BRIEF RECESS, OTHERWISE SHE

21        CONSENTS TO PROCEEDING IN THIS MANNER.

22                THE COURT:  THANK YOU, MR. WADE.  GOOD MORNING,

23        MS. HOLMES.

24            AND ON THE ISSUE OF COMMUNICATION, YES, IF AT ANY POINT

25        YOU WOULD LIKE TO PAUSE SO YOU CAN HAVE A CONFIDENTIAL
```

11:06AM 1    COMMUNICATION WITH YOUR CLIENT OR CONVERSELY IF SHE WOULD LIKE

11:06AM 2    TO HAVE A CONFIDENTIAL COMMUNICATION WITH YOU, PLEASE BRING IT

11:06AM 3    TO MY ATTENTION, AND WE WILL PAUSE FOR THAT PURPOSE.

11:06AM 4        WE ARE PROCEEDING REMOTELY BECAUSE OF THE PANDEMIC, AND

11:06AM 5    THANK YOU FOR HAVING CONSENTED TO OUR PROCEDURES FOR THAT

11:06AM 6    REASON.

11:06AM 7        WE ARE MAKING A RECORDING OF THIS MORNING'S HEARING.  A

11:06AM 8    REMINDER FOR THOSE WHO ARE OBSERVING THE HEARING THAT NO

11:06AM 9    BROADCAST, TRANSMISSION, OR ANY LIVE TRANSMISSION OF OUR

11:06AM 10   HEARING IS PERMITTED.  THE PARTIES MAY USE THE TRANSCRIPT, OF

11:06AM 11   COURSE, FOR THEIR PURPOSES IN THE CASE.

11:06AM 12       AND THIS HEARING IS ON A REFERRAL FROM JUDGE DAVILA, THE

11:07AM 13   TRIAL JUDGE.  BOTH PARTIES MAY OBJECT TO MY RULING ON THE ORDER

11:07AM 14   ON THE EVIDENTIARY ISSUES AND MUST DO SO WITHIN 14 DAYS OF MY

11:07AM 15   RULING BACK TO JUDGE DAVILA.

11:07AM 16       THAT'S OUR PROCEDURAL POSTURE TODAY.

11:07AM 17       OF COURSE WE'RE HERE ON THE GOVERNMENT'S MOTION ON AN

11:07AM 18   EVIDENTIARY ISSUE ARISING FROM ASSERTED PRIVILEGES OF

11:07AM 19   MS. HOLMES.  I'VE RECEIVED OPPOSITION AND REPLY BRIEF IN

11:07AM 20   PREPARATION FOR THE HEARING TODAY.

11:07AM 21       MR. BOSTIC, I'LL START WITH YOU IF YOU'RE THE ONE TO

11:07AM 22   ADDRESS THE ISSUES FOR THE GOVERNMENT.  GIVE ME A LITTLE BIT OF

11:07AM 23   PRECISION AS TO WHAT YOU'RE SEEKING.  THERE ARE 13 EXHIBITS,

11:07AM 24   TRIAL EXHIBITS IDENTIFIED IN THE PAPERS BETWEEN THE PARTIES,

11:07AM 25   BUT SOME LOFTIER WORDS IN THE MOTION ABOUT WHETHER -- WHAT

| | |
|---|---|
| 11:07AM | 1 | YOU'RE SEEKING IS SOMETHING BROADER THAN JUST THOSE TRIAL |

11:07AM 1 YOU'RE SEEKING IS SOMETHING BROADER THAN JUST THOSE TRIAL

11:08AM 2 EXHIBITS, IF YOU'RE WANTING AN ORDER THAT, FOR EXAMPLE, GOES TO

11:08AM 3 ALL BOISE SCHILLER REPRESENTATIONS AND COMMUNICATIONS OR IF

11:08AM 4 THERE IS SOMEWHERE IN BETWEEN AS FAR AS WHAT YOU'RE ASKING ME

11:08AM 5 TO RULE.

11:08AM 6 AND, OF COURSE, THERE ARE ADDITIONAL MOTIONS IN LIMINE

11:08AM 7 DEALING WITH MANY OTHER ISSUES AT TRIAL, AND I KNOW THOSE FOR

11:08AM 8 CONTEXT, BUT THE PARTIES HERE HAVE MUCH MORE GRANULAR KNOWLEDGE

11:08AM 9 ABOUT THE PARTICULAR TRIAL EXHIBITS AND OTHER TESTIMONY THAT

11:08AM 10 YOU MIGHT USE AT TRIAL.

11:08AM 11 SO I THINK YOU'RE A LITTLE AHEAD OF ME AS TO YOUR -- AS TO

11:08AM 12 WHAT YOU KNOW.

11:08AM 13 BACK OUT A LITTLE BIT AND GIVE ME SOME CONTEXT FOR WHERE

11:08AM 14 THIS DISPUTE FITS IN WITH THE BIGGER PICTURE.

11:08AM 15 MR. BOSTIC:  YES, YOUR HONOR.  I'LL DO MY BEST.  AND

11:08AM 16 PLEASE FOLLOW UP WITH ADDITIONAL QUESTIONS IF I DON'T ANSWER

11:08AM 17 THE COURT'S FULL QUESTION.

11:08AM 18 THIS DISPUTE HAS BEEN, I THINK, PERCOLATING FOR A WHILE

11:08AM 19 BETWEEN THE PARTIES.  I THINK, AS THE COURT CAN INFER FROM THE

11:08AM 20 PARTIES' BRIEFING, AT VARIOUS TIMES THROUGHOUT THE LITIGATION

11:08AM 21 THE DEFENSE HAS ALSO RAISED THE SPECTER OF A POSSIBLE PRIVILEGE

11:09AM 22 OR AN ASSERTED PRIVILEGE BELONGING TO MS. HOLMES PERSONALLY IN

11:09AM 23 HER PERSONAL CAPACITY AS OPPOSED TO IN HER CAPACITY AS CEO OF

11:09AM 24 THERANOS AND A REPRESENTATIVE OF THE COMPANY.

11:09AM 25 THAT HAS COME UP IN CONNECTION WITH THE GOVERNMENT'S

| | | |
|---|---|---|
| 11:09AM | 1 | EARLIER EFFORTS TO COLLECT DOCUMENTS FROM THERANOS ITSELF AS |
| 11:09AM | 2 | THE COMPANY WAS SHUTTING DOWN.  IT CAME UP LATER IN VARIOUS |
| 11:09AM | 3 | INSTANCES WHERE PARTICULAR DOCUMENTS OF INTEREST WERE |
| 11:09AM | 4 | IDENTIFIED BY THE GOVERNMENT, AND NOW IT HAS COME UP IN THE |
| 11:09AM | 5 | CONTEXT OF THESE 13 DOCUMENTS THAT THE COURT REFERENCED THAT |
| 11:09AM | 6 | ARE ON THE GOVERNMENT'S TRIAL EXHIBIT LIST AND ABOUT WHICH THE |
| 11:09AM | 7 | DEFENSE ASSERTS THE OBJECTION THAT THEY ARE PRIVILEGED. |
| 11:09AM | 8 | SO AS FAR AS THE SCOPE OF THE RELIEF SOUGHT IN THE |
| 11:09AM | 9 | GOVERNMENT'S MOTION, I CAN CLARIFY THAT.  THE GOVERNMENT IS |
| 11:09AM | 10 | SEEKING A RULING ONLY AS TO THOSE 13 DOCUMENTS. |
| 11:09AM | 11 | TO THE EXTENT THAT THE BRIEFING DISCUSSES THE GENERAL |
| 11:09AM | 12 | ISSUE OUTSIDE OF THOSE 13 DOCUMENTS, IT'S TO GIVE THE COURT |
| 11:09AM | 13 | THAT CONTEXT AND BECAUSE I THINK THE COURT'S RULING ON THOSE 13 |
| 11:10AM | 14 | DOCUMENTS WILL BE INSTRUCTIVE TO THE PARTIES ON OTHER MATERIALS |
| 11:10AM | 15 | AND TOPICS. |
| 11:10AM | 16 | THE COURT:  AND THAT'S WHERE I MIGHT NEED SOME MORE |
| 11:10AM | 17 | HELP TO ENSURE THAT -- TO THE EXTENT THAT I'M GIVING |
| 11:10AM | 18 | INSTRUCTIONS OUTSIDE OF THOSE 13 DOCUMENTS, WHAT EXACTLY I'M |
| 11:10AM | 19 | INSTRUCTING.  FOR EXAMPLE, ARE THERE OTHER DOCUMENTS NOT BEFORE |
| 11:10AM | 20 | ME THAT MY RULING MIGHT IMPACT THEIR ADMISSION AT TRIAL AND IS |
| 11:10AM | 21 | THERE TESTIMONIAL EVIDENCE FROM WITNESSES WHERE THERE ALSO |
| 11:10AM | 22 | MIGHT BE A PRIVILEGE ASSERTION MADE IN MY RULING AS TO |
| 11:10AM | 23 | MS. HOLMES'S ABILITY TO RAISE THESE EVIDENTIARY PRIVILEGE |
| 11:10AM | 24 | OBJECTIONS IS ALSO GOING TO IMPLICATE THOSE? |
| 11:10AM | 25 | TELL ME MORE ABOUT THE CONSEQUENCE OF MY RULING ONE WAY OR |

7

```
11:10AM   1    THE OTHER ON THIS MOTION.

11:10AM   2          MR. BOSTIC:  SO, YOUR HONOR, I THINK IT DEPENDS ON

11:10AM   3    THE NATURE OF THE COURT'S RULING AND HOW THE COURT FRAMES THAT

11:10AM   4    RULING.  AND IT'S HARD TO SAY SITTING HERE WHAT THE DOWNSTREAM

11:10AM   5    IMPLICATIONS MIGHT BE, BUT THERE MAY BE OTHER DOCUMENTS THAT

11:11AM   6    FIT INTO A SIMILAR CATEGORY.  AGAIN, NONE OF THEM HAVE

11:11AM   7    CURRENTLY BEEN IDENTIFIED ON THE GOVERNMENT'S OR I BELIEVE THE

11:11AM   8    DEFENSE'S TRIAL EXHIBIT LIST, BUT TO THE EXTENT THAT ADDITIONAL

11:11AM   9    SIMILAR DOCUMENTS ARE ADDED IN THE FUTURE, THE PARTIES MAY RELY

11:11AM  10    ON OR REFERENCE THE COURT'S RULING AS INSTRUCTIVE AS TO HOW THE

11:11AM  11    COURT WOULD LIKELY RULE ON THOSE OTHER DOCUMENTS.

11:11AM  12          SIMILARLY, TO THE EXTENT THAT THE GOVERNMENT OR THE

11:11AM  13    DEFENSE SEEKS TO INTRODUCE TESTIMONY FROM DAVID BOIES OR FROM

11:11AM  14    ANOTHER LAWYER AT BOIES SCHILLER, THE COURT'S RULING ON THESE

11:11AM  15    SIMILAR DOCUMENTS MAY AGAIN BE INSTRUCTIVE, NOT DIRECTLY I

11:11AM  16    THINK DECIDING THE ISSUE, BUT MIGHT BE INSTRUCTIVE ON THE

11:11AM  17    QUESTION OF WHETHER THOSE TOPICS OR THAT TESTIMONY MIGHT

11:11AM  18    TRIGGER SOME KIND OF PRIVILEGE PROTECTIONS.

11:11AM  19          SO I THINK AS THE COURT CAN SEE FROM THE PARTIES'

11:11AM  20    BRIEFING, THERE'S A DISAGREEMENT HERE AS TO EVEN WHAT STANDARD

11:11AM  21    NEEDS TO APPLY IN THESE SORTS OF COMMUNICATIONS, AND I THINK

11:11AM  22    THE COURT'S GUIDANCE ONE WAY OR THE OTHER WILL BE VALUABLE TO

11:12AM  23    THE PARTIES, NOT JUST IN CONNECTION WITH THESE DOCUMENTS, BUT

11:12AM  24    IN GENERAL GOING FORWARD.

11:12AM  25          THE COURT:  AND ARE THE WITNESSES OTHER THAN
```

```
11:12AM   1      MR. BOIES WHO I SHOULD BE FOCUSSED ON IN MAKING THIS RULING?
11:12AM   2           MR. BOSTIC:  BASED ON THE DEFENSE'S CURRENT
11:12AM   3   ASSERTIONS NONE COME TO MIND, YOUR HONOR.  I'M NOT SURE WHETHER
11:12AM   4   THE DEFENSE'S THINKING ON THIS, THIS MATTER ALSO EXTENDS TO
11:12AM   5   IN-HOUSE ATTORNEYS WHOSE TESTIMONY THE GOVERNMENT MIGHT SEEK TO
11:12AM   6   PRESENT.
11:12AM   7           THE COURT:  ALL RIGHT.  THANK YOU.
11:12AM   8      LET ME GET MR. WADE'S PERSPECTIVE OR ANY OF HIS TEAMMATES
11:12AM   9   AS TO THE CONSEQUENCE OF THIS RULING JUST TO MAKE SURE THAT I
11:12AM  10   UNDERSTAND HOW THIS IS GOING TO IMPACT THE TRIAL AND BEFORE I
11:12AM  11   RULE.
11:12AM  12           MR. WADE:  THANK YOU, YOUR HONOR.
11:12AM  13      AS YOUR HONOR WELL KNOWS, AN EVIDENTIARY PRIVILEGE DOES
11:12AM  14   NOT EXIST IN A VACUUM.  IT'S NOT AN AMORPHOUS THING.  IT
11:12AM  15   RELATES TO PARTICULAR COMMUNICATIONS BETWEEN AN ATTORNEY AND A
11:13AM  16   CLIENT.
11:13AM  17      WITH RESPECT TO THE COMMUNICATIONS THAT ARE AT ISSUE,
11:13AM  18   THESE 13 COMMUNICATIONS, THERE'S NUANCES TO SOME OF THE
11:13AM  19   COMMUNICATIONS, BUT I THINK IT'S BEYOND DISPUTE THAT THERE'S AN
11:13AM  20   ATTORNEY-CLIENT RELATIONSHIP WITH RESPECT TO THE BOIES SCHILLER
11:13AM  21   LAW FIRM AND OUR CLIENT IN MULTIPLE RESPECTS, BUT IT'S ALL BUT
11:13AM  22   CONCEDED AT THE BEGINNING OF THE RELEVANT TIME PERIOD AND AT
11:13AM  23   THE END OF THE RELEVANT TIME PERIOD BECAUSE -- AND OUR
11:13AM  24   ARGUMENT, TO BE CLEAR, IS THAT THAT CONTINUED THROUGHOUT AND IN
11:13AM  25   PARTICULAR CONTINUED WITH RESPECT TO THE 13 DOCUMENTS THAT ARE
```

11:13AM  1    AT ISSUE.

11:13AM  2        TO THE EXTENT THAT THE GOVERNMENT SEEKS TO ADVANCE SOME

11:13AM  3    OTHER ARGUMENT, THAT'S -- WE WELCOME THAT DISCUSSION, AND WE'RE

11:13AM  4    HAPPY TO GO THROUGH A PROCESS WHERE WE ENGAGE WITH THE

11:13AM  5    GOVERNMENT ON THAT.

11:13AM  6        I'D LIKE TO BE CLEAR HERE THAT THERE'S NOTHING NEFARIOUS

11:13AM  7    IN ANY WAY ABOUT A DEFENDANT ASSERTING HER RIGHTS WITH RESPECT

11:14AM  8    TO A PRIVILEGE.  IN FACT, AS THE COURT AND THE GOVERNMENT

11:14AM  9    COUNSEL WELL KNOW, IF MS. HOLMES DID NOT ASSERT HER RIGHTS WITH

11:14AM  10   RESPECT TO PRIVILEGES, THEY WOULD BE WAIVED, AND THERE WOULD BE

11:14AM  11   CONSEQUENCES THAT WOULD FLOW FROM THAT.

11:14AM  12       SO GOVERNMENT COUNSEL IS CORRECT THAT WE HAVE, SINCE BEING

11:14AM  13   ENGAGED IN THIS MANNER, CONSISTENTLY ADVISED THE GOVERNMENT AS

11:14AM  14   TO MS. HOLMES'S POSITION WITH RESPECT TO ATTORNEY-CLIENT

11:14AM  15   PRIVILEGE RELATIONSHIPS, AND WE'VE DONE SO IN A GOOD FAITH WAY

11:14AM  16   BASED UPON THE INFORMATION THAT IS AVAILABLE TO US.

11:14AM  17       AS I NOTED IN THE BRIEFING, WE HAVE NOT SOUGHT TO APPLY

11:14AM  18   THAT PRIVILEGE TO EVERY LAW FIRM THE COMPANY ENGAGED, AND IT'S

11:14AM  19   SET FORTH IN OUR BRIEF, OUR REPLY BRIEF.  THEY'VE ENGAGED MANY.

11:14AM  20       BUT THIS IS A UNIQUE RELATIONSHIP AND THE SCOPE AND THE

11:14AM  21   APPLICATION OF THE PRIVILEGE, UNFORTUNATELY, HAS TO BE DONE IN

11:14AM  22   A COMMUNICATION-BY-COMMUNICATION BASIS.

11:14AM  23           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

11:15AM  24       MR. WADE, STICKING WITH YOU.  AS YOU NOTED THERE WAS AN

11:15AM  25   ATTORNEY-CLIENT RELATIONSHIP.  THE QUESTION IS WHETHER IT WAS

11:15AM 1   AN INDIVIDUAL RELATIONSHIP OR IF IT WAS A CORPORATE

11:15AM 2   RELATIONSHIP OR BOTH, AND THEN TO FIGURE OUT THE TIMEFRAME FOR

11:15AM 3   EACH OF THOSE, AND THEN TO APPLY THAT TO INDIVIDUAL

11:15AM 4   COMMUNICATIONS.

11:15AM 5        SO FOCUSSING ON THE ASSERTION THAT THERE'S AN INDIVIDUAL

11:15AM 6   ATTORNEY-CLIENT BASIS BETWEEN MS. HOLMES AND THE BOIES SCHILLER

11:15AM 7   FIRM.  SUMMARIZE FOR ME WHAT THE BEST EVIDENCE IS THAT THE --

11:15AM 8   FROM THE BEGINNING THAT THEY HAD AN ATTORNEY-CLIENT PRIVILEGE

11:15AM 9   RELATIONSHIP THAT WAS AN INDIVIDUAL RATHER THAN A CORPORATE

11:15AM 10  BASIS.

11:15AM 11           MR. WADE:  THANK YOU, YOUR HONOR.

11:15AM 12           THE COURT:  YES.

11:15AM 13           MR. WADE:  AT THE BEGINNING OF THAT RELATIONSHIP

11:15AM 14  WHEN BOIES SCHILLER WAS FIRST BROUGHT IN TO DO ANY WORK WITH

11:16AM 15  RESPECT TO THERANOS OR MS. HOLMES, IT WAS IN CONNECTION WITH

11:16AM 16  THE FUISZ LITIGATION IN WHICH IT JOINTLY REPRESENTED BOTH OUR

11:16AM 17  CLIENT, ELIZABETH HOLMES, AND THE COMPANY.

11:16AM 18        CONTRARY TO WHAT THE GOVERNMENT SUGGESTED IN THEIR

11:16AM 19  OPPOSITION BRIEF THAT WAS BECAUSE SHE WAS A PARTY IN INTEREST.

11:16AM 20  IT DIDN'T RELATE TO SOME PARTICULAR PATENT DOCUMENT OR

11:16AM 21  OTHERWISE.  THERE ARE MANY OTHER INVENTORS TO THAT PATENT.  SHE

11:16AM 22  WAS AN INDIVIDUAL CLIENT, SHE HAD INDIVIDUAL INTERESTS THAT

11:16AM 23  WERE COEXTENSIVE AND NOT IN CONFLICT WITH THE CORPORATION,

11:16AM 24  WHICH IS NOT SURPRISING.  SHE WAS AN INVENTOR ON MANY OF THE

11:16AM 25  PATENTS.  SHE WAS THE FOUNDER.  SHE WAS THE CEO.  SHE WAS A

```
11:16AM    1    CONTROLLING SHAREHOLDER.

11:16AM    2         SO THE FACT THAT THE INTERESTS ALIGNED IS NOT SURPRISING.

11:16AM    3         THAT REPRESENTATION CONTINUED FOR A NUMBER OF YEARS.  IT

11:16AM    4    WAS CONCEDEDLY A JOINT REPRESENTATION.  THE BOIES SCHILLER FIRM

11:16AM    5    APPEARED ON BEHALF OF MS. HOLMES IN THAT MATTER.  THEY SIGNED

11:17AM    6    PLEADINGS ON BEHALF OF MS. HOLMES IN THAT MATTER AS PART OF A

11:17AM    7    JOINT REPRESENTATION, AND THEREAFTER THAT JOINT REPRESENTATION

11:17AM    8    CONTINUED.  THAT MATTER INVOLVED A LOT OF INTELLECTUAL PROPERTY

11:17AM    9    MATTERS AND TRADE SECRET MATTERS.

11:17AM   10         AN OUTGROWTH OF THAT WAS A BROADER ASSESSMENT OF THE TRADE

11:17AM   11    SECRET AND INTELLECTUAL PROPERTY MATTERS IN WHICH THERANOS HELD

11:17AM   12    AN INTEREST AND MS. HOLMES HELD AN INTEREST, AND IT CONTINUED

11:17AM   13    THEREAFTER.

11:17AM   14         WE'VE SET FORTH A NUMBER OF, A NUMBER OF DIFFERENT

11:17AM   15    REPRESENTATIONS WITHIN OUR PLEADINGS BUT IT CONTINUED.

11:17AM   16         LET ME JUMP TO THE END.  THE END OF THE REPRESENTATION IS

11:17AM   17    IN THE FALL OF 2016 WHEN, AGAIN, THEY WERE IN THE -- THE

11:17AM   18    COMPANY WAS IN THE MIDST OF A JOINT REPRESENTATION WITH

11:17AM   19    MS. HOLMES, WITH THE COMPANY, AND IT WAS ONLY WHEN THEY CEASED

11:18AM   20    BOTH REPRESENTATIONS THAT THE REPRESENTATION ENDED.

11:18AM   21         IN THAT PERIOD IN BETWEEN THERE WERE A NUMBER OF MATTERS

11:18AM   22    ON WHICH BOIES SCHILLER WAS PROVIDING ADVICE IN CONNECTION WITH

11:18AM   23    A JOINT REPRESENTATION WHERE INTERESTS WERE ALIGNED TO

11:18AM   24    MS. HOLMES, THEY WERE PROVIDING THAT ADVICE TO MS. HOLMES AND

11:18AM   25    TO THE COMPANY.
```

11:18AM 1       AND YOU DON'T HAVE TO TAKE MY WORD FOR IT, YOUR HONOR.

11:18AM 2   YOU CAN LOOK ON PAGE 3 OF OUR OPPOSITION THERE'S A STATEMENT

11:18AM 3   SMACK IN THE MIDDLE OF THIS, THESE REPRESENTATIONS WHERE THE

11:18AM 4   GENERAL COUNSEL OF THE COMPANY, HEATHER KING, AT THAT TIME ON

11:18AM 5   THE RECORD -- THERE'S A TRANSCRIPT OF IT IN A MEETING WITH

11:18AM 6   "THE WALL STREET JOURNAL" SAID TO "THE WALL STREET JOURNAL"

11:18AM 7   THAT DAVID BOIES WAS INTIMATELY INVOLVED WITH THE COMPANY AND

11:19AM 8   THAT HE HAD ADVISED ELIZABETH AND THE COMPANY ON AN ONGOING

11:19AM 9   BASIS.

11:19AM 10      NOW, MS. KING WAS WELL SITUATED TO HAVE THAT INFORMATION.

11:19AM 11  SHE WAS A FORMER BOIES SCHILLER PARTNER.  SHE HAD WORKED FOR

11:19AM 12  THE COMPANY AND FOR MS. HOLMES BEFORE SHE BECAME THE GENERAL

11:19AM 13  COUNSEL, AND THEN SHE CONTINUED THEREAFTER.

11:19AM 14      SO IN THAT PERIOD IN BETWEEN THOSE TWO JOINT

11:19AM 15  REPRESENTATIONS, WE HAVE A CLEAR STATEMENT FROM THE GENERAL

11:19AM 16  COUNSEL OF THE COMPANY WITH CLOSE CONNECTION TO THE

11:19AM 17  BOIES SCHILLER FIRM AS TO JOINT REPRESENTATIONS.

11:19AM 18      THE COURT, QUOTE, "ADVISED ELIZABETH AND THE COMPANY,"

11:19AM 19  CLOSED QUOTE.

11:19AM 20          THE COURT:  DID HER QUOTE INDICATE OR IS THERE SOME

11:19AM 21  CONTEXT TO INDICATE THAT IN REPRESENTING MS. HOLMES IT WAS IN

11:19AM 22  HER INDIVIDUAL CAPACITY AT THAT MOMENT AS COMPARED TO IN HER

11:19AM 23  ROLE AS THE CORPORATE REPRESENTATIVE?

11:20AM 24          MR. WADE:  WELL, WE KNOW IT IS IN CONNECTION WITH

11:20AM 25  THE DECLARATION PROVIDED BY MS. HOLMES BECAUSE IN THIS VERY

11:20AM  1      PERIOD THE BOIES SCHILLER FIRM WAS CONSIDERING POTENTIAL LEGAL

11:20AM  2      ACTION AGAINST "THE WALL STREET JOURNAL" ON BEHALF OF

11:20AM  3      MS. HOLMES, AND THERE'S OTHER EVIDENCE THAT WE CAN SUBMIT IN

11:20AM  4      CONNECTION WITH THAT.

11:20AM  5          I PAUSE BRIEFLY TO NOTE FOR THE COURT, OBVIOUSLY WHEN

11:20AM  6      YOU'RE LITIGATING A PRIVILEGE ISSUE WITH YOUR ADVERSARY WITHIN

11:20AM  7      THE SAME PROCEEDING THERE ARE LIMITATIONS IN TERMS OF THE

11:20AM  8      AMOUNT OF CONTEXT AND INFORMATION THAT WE CAN PROVIDE TO

11:20AM  9      CLARIFY THE JOINT REPRESENTATION.

11:20AM 10          WE DON'T WANT TO WAIVE PRIVILEGE.  BUT AS WE'VE NOTED IN

11:20AM 11      OUR BRIEF, TO THE EXTENT THAT THE COURT BELIEVES THAT NECESSARY

11:20AM 12      IN THIS MATTER, WE COULD SUBMIT THAT EX PARTE IN CAMERA SO THE

11:20AM 13      COURT CAN SEE THAT INFORMATION.

11:20AM 14          FOR EXAMPLE, WE CAN'T DESCRIBE OTHER PRIVILEGE

11:20AM 15      COMMUNICATIONS THAT MIGHT BEAR ON THESE QUESTIONS WITHOUT

11:20AM 16      WAIVING THE PRIVILEGE, AND OBVIOUSLY WE DON'T INTEND TO DO

11:21AM 17      THAT.

11:21AM 18              THE COURT:  YES.  YOU REFERENCE A FOOTNOTE IN YOUR

11:21AM 19      BRIEF SUGGESTING THAT THERE MIGHT BE SOME IN CAMERA REVIEW OF

11:21AM 20      SOME ADDITIONAL MATERIALS WITHOUT COMPELLING DISCLOSURE OF WHAT

11:21AM 21      YOU'RE GOING TO POTENTIALLY GOING TO SUBMIT.

11:21AM 22          CAN YOU GIVE ME A LITTLE MORE INFORMATION ABOUT THE VOLUME

11:21AM 23      OF WHAT YOU PLAN TO PROVIDE FOR IN CAMERA AND HOW THAT WOULD BE

11:21AM 24      HELPFUL TO THE COURT?  IF YOU CAN GIVE ME A LITTLE MORE SHAPE

11:21AM 25      TO WHAT I MIGHT LOOK AT.

11:21AM  1        OF COURSE, MANY TIMES THE COURT RESOLVES ISSUES LIKE THIS

11:21AM  2   WITHOUT DOING IN CAMERA REVIEW, BUT IT CAN BE A WAY TO HELP

11:21AM  3   UNDERSTAND AND ASSESS THE PRIVILEGE.

11:21AM  4        SO TELL ME MORE ABOUT WHAT YOU WOULD PROVIDE IF I AGREED

11:21AM  5   TO IT.

11:21AM  6            MR. WADE:  WELL, FOR ONE, WE CAN PROVIDE SOME OF THE

11:21AM  7   COMMUNICATIONS THAT ARE AT ISSUE AND NOT WAIVE THEM IF THE

11:21AM  8   COURT REQUESTED THEM TO BE SUBMITTED.

11:21AM  9        IT'S AMBIGUOUS, I THINK, IN THE NINTH CIRCUIT AS TO

11:21AM 10   WHETHER WE NEED DIRECTION FROM THE COURT TO SUBMIT THEM TO

11:22AM 11   PROTECT US FROM THE WAIVER OR WHETHER WE CAN DO THAT

11:22AM 12   VOLUNTARILY.  SO WE DIDN'T WANT TO DO IT WITHOUT A DIRECTION

11:22AM 13   FROM THE COURT TO MAKE SURE WE DON'T WAIVE THE PRIVILEGE.

11:22AM 14        AS THE COURT CAN TELL, WE'RE CONSERVATIVE IN THAT REGARD.

11:22AM 15        BUT MORE GENERALLY, THERE ARE OTHER COMMUNICATIONS THAT

11:22AM 16   ARE PRIVILEGED THAT HAVE LANGUAGE THAT WE THINK, YOU KNOW,

11:22AM 17   CONFIRM OUR GENERAL ARGUMENT AND OUR FRAME.

11:22AM 18        PART OF THAT IS, YOUR HONOR, AND THE VOLUME TO THAT POINT,

11:22AM 19   YOUR HONOR, BECAUSE I KNOW SOMETIMES COURTS IN YOUR POSITION

11:22AM 20   GET STUCK WITH A LABORIOUS TASK.

11:22AM 21        FORTUNATELY, FOR ALL OF US WE'RE TALKING ABOUT 13

11:22AM 22   DOCUMENTS HERE, MANY OF THEM RELATE, FRANKLY, MANY OF THEM

11:22AM 23   RELATE TO THAT DISPUTE, POTENTIAL DISPUTE WITH "THE WALL STREET

11:22AM 24   JOURNAL," AND SO THAT'S THE VAST MAJORITY OF THE COMMUNICATIONS

11:22AM 25   ON HERE.  AND THEN THERE ARE A COUPLE OF OTHERS.

| | | |
|---|---|---|
| 11:22AM | 1 | IT WOULD NOT BE AN EXTENSIVE SUBMISSION, BUT WE THINK IT |
| 11:22AM | 2 | WOULD BE HELPFUL TO THE COURT.  AND WE THINK WHY IT'S |
| 11:23AM | 3 | APPROPRIATE HERE, YOUR HONOR, IS THIS -- THE ASSESSMENT OF THE |
| 11:23AM | 4 | JOINT PRIVILEGE IN THIS CONTEXT, WHEN YOU LOOK AT TELEGLOBE AND |
| 11:23AM | 5 | YOU LOOK AT SOME OF THE OTHER CASES THAT TALK ABOUT THE JOINT |
| 11:23AM | 6 | REPRESENTATION AND WHETHER THE JOINT REPRESENTATION CONTINUES, |
| 11:23AM | 7 | IT'S CLEAR THAT CONTEXT MATTERS IN CONNECTION WITH THAT. |
| 11:23AM | 8 | THIS IS NOT A BEVILL OR A GRAF CASE WHERE THE QUESTION IS |
| 11:23AM | 9 | WAS THERE EVER AN ATTORNEY-CLIENT RELATIONSHIP WHERE THE |
| 11:23AM | 10 | QUESTION IN THOSE CASES IS ABOUT THE FORMATION. |
| 11:23AM | 11 | WE KNOW ABOUT THE FORMATION.  THE FORMATION IS ESSENTIALLY |
| 11:23AM | 12 | UNDISPUTED. |
| 11:23AM | 13 | THE QUESTION IS THE SCOPE.  AND IN CONNECTION WITH THAT |
| 11:23AM | 14 | SCOPE AND WHETHER THE JOINT REPRESENTATION CEASED, THERE ARE |
| 11:23AM | 15 | OTHER FACTORS THAT ARE TO BE CONSIDERED.  SOME OF THOSE FACTORS |
| 11:23AM | 16 | ARE HARD TO CONSIDER WITHOUT PROVIDING SOME PRIVILEGED |
| 11:23AM | 17 | INFORMATION. |
| 11:23AM | 18 | THE COURT:  ALL RIGHT.  LET ME PAUSE THERE, |
| 11:23AM | 19 | MR. WADE, AND GIVE MR. BOSTIC A CHANCE TO ADDRESS TWO THINGS, |
| 11:24AM | 20 | MR. BOSTIC, IN WHICHEVER ORDER YOU WANT.  ONE IS THE PROCEDURAL |
| 11:24AM | 21 | OPTION OF HAVING THE COURT RECEIVE IN CAMERA ADDITIONAL |
| 11:24AM | 22 | MATERIALS FROM THE DEFENSE FOR ME TO REVIEW. |
| 11:24AM | 23 | AND THEN SECONDLY IS YOUR VIEW ABOUT KIND OF IN RESPONSE |
| 11:24AM | 24 | TO WHETHER THE PRIVILEGE IS INDIVIDUALLY HELD BY MS. HOLMES OR |
| 11:24AM | 25 | JOINT IN RESPONSE TO WHAT MR. WADE HAS ARGUED. |

11:24AM 1        MR. BOSTIC:  THANK YOU, YOUR HONOR.  I'LL START WITH

11:24AM 2   THE SECOND AND THEN MOVE TO THE FIRST IF THAT'S ALL RIGHT.

11:24AM 3        SO I THINK THAT WE NEED TO START WITH THE DEFAULT UNDER

11:24AM 4   THE LAW IN THESE SITUATIONS WHERE A CORPORATE OFFICER SPEAKS TO

11:24AM 5   LAWYERS HIRED BY THE COMPANY.

11:24AM 6        THE DEFAULT IS, UNDER THE NINTH CIRCUIT AND UNDER THE

11:24AM 7   THIRD CIRCUIT, THAT ANY PRIVILEGE THAT EXISTS AS TO A CORPORATE

11:24AM 8   OFFICER'S ROLE AND FUNCTIONS WITHIN A COMPANY BELONGS TO THE

11:24AM 9   CORPORATION AND NOT THE OFFICER.

11:24AM 10       SO BECAUSE THIS CAN BE A COMPLICATED SITUATION WHERE A

11:25AM 11  CORPORATE OFFICER SPEAKS TO COMPANY COUNSEL, IT CAN CREATE

11:25AM 12  CONFUSION ABOUT WHO THE CLIENT IS AND WHO THE PRIVILEGE BELONGS

11:25AM 13  TO.  WE HAD THAT DEFAULT TEST OR THAT DEFAULT STANDARD AND THE

11:25AM 14  GRAF TEST IS VERY CLEAR IN LAYING OUT THE REQUIREMENTS FOR A

11:25AM 15  CORPORATE OFFICER TO CLAIM INDIVIDUAL PRIVILEGE OVER THAT KIND

11:25AM 16  OF COMMUNICATION.

11:25AM 17       AS THE COURT CAN SEE FROM THAT STANDARD, IT'S SET UP TO

11:25AM 18  MAKE IT CHALLENGING FOR THAT CORPORATE OFFICER TO MAKE THAT

11:25AM 19  SHOWING, THE SHOWING REQUIRED TO ASSERT THAT INDIVIDUAL

11:25AM 20  PRIVILEGE.

11:25AM 21       HERE THE DEFENSE WANTS TO IGNORE THAT STANDARD AND INSTEAD

11:25AM 22  RELY ON GENERAL CASE LAW ABOUT JOINT REPRESENTATIONS, BUT THOSE

11:25AM 23  CASES CITED BY THE DEFENSE ARE OF LIMITED USEFULNESS HERE

11:25AM 24  BECAUSE THEY DON'T MAKE ANY ATTEMPT TO NAVIGATE THIS

11:25AM 25  COMPLICATED SITUATION, THE CHALLENGING SITUATION OF WHEN A

11:25AM 1    CORPORATE OFFICER IS SPEAKING TO COMPANY COUNSEL, AND IT MIGHT

11:25AM 2    BE UNCLEAR WHETHER THAT CORPORATE OFFICER IS SPEAKING IN HIS OR

11:25AM 3    HER INDIVIDUAL CAPACITY OR SIMPLY AS A CORPORATE

11:26AM 4    REPRESENTATIVE.

11:26AM 5         AND I SAY THAT'S A CHALLENGING SITUATION.  AT LEAST IT

11:26AM 6    WOULD BE A CHALLENGING SITUATION IF IT WEREN'T FOR THIS VERY

11:26AM 7    CLEAR GRAF TEST THAT LAYS OUT SIMPLE ELEMENTS THAT IS INCUMBENT

11:26AM 8    ON THAT CORPORATE OFFICER TO SATISFY.

11:26AM 9         SO I THINK IT'S IMPORTANT TO REMEMBER THE NINTH CIRCUIT IN

11:26AM 10   THE RUEHLE CASE TELLS US THAT THE PARTY ASSERTING THE PRIVILEGE

11:26AM 11   HAS THE BURDEN OF ESTABLISHING FIRST THE EXISTENCE OF THE

11:26AM 12   RELATIONSHIP AND THEN ALSO THE PRIVILEGED NATURE OF THE

11:26AM 13   COMMUNICATIONS.

11:26AM 14        SO I HEAR THE COURT ASKING ABOUT THE RELATIONSHIP ITSELF.

11:26AM 15   SO LET'S START THERE.

11:26AM 16        I THINK THE KEY FACTS HERE ARE THAT THE BOIES SCHILLER

11:26AM 17   FIRM, YES, REPRESENTED AND ADVISED THERANOS ON A VARIETY OF

11:26AM 18   MATTERS.  THAT'S CLEAR.  THAT'S NOT DISPUTED.

11:26AM 19        IT IS DISPUTED, THOUGH, THAT THERE WAS A CLEAR AND JOINT

11:26AM 20   REPRESENTATION HERE AT ANY TIME.

11:26AM 21        IN RESPONSE TO HER BURDEN OR IN HER ATTEMPT TO SATISFY HER

11:26AM 22   BURDEN, THE DEFENDANT HAS SUBMITTED SOME GENERALIZED STATEMENTS

11:27AM 23   ABOUT THAT RELATIONSHIP, BUT SHE DOESN'T CLAIM THAT SHE EVER

11:27AM 24   MADE IT CLEAR TO BOIES SCHILLER ON A SINGLE OCCASION THAT SHE

11:27AM 25   WAS SEEKING THE FIRM'S ADVICE IN HER INDIVIDUAL CAPACITY.

```
11:27AM   1          SHE NEVER CLAIMS THAT THE FIRM EXPRESSLY AGREED TO
11:27AM   2    REPRESENT HER IN HER INDIVIDUAL CAPACITY.
11:27AM   3          SHE NEVER CLAIMS THAT SHE ENTERED INTO AN INDIVIDUAL
11:27AM   4    RETAINER AGREEMENT WITH THE FIRM.  IN FACT, DOESN'T REMEMBER
11:27AM   5    AND CAN'T PRODUCE ANY RETAINER AGREEMENT AT ALL.  THAT FACTOR
11:27AM   6    IS RELEVANT TO THE NINTH CIRCUIT IN THE GRAF CASE.
11:27AM   7          THE DEFENDANT DOESN'T CLAIM TO HAVE EVER PAID A SINGLE
11:27AM   8    DOLLAR TO BOIES SCHILLER IN HER PERSONAL CAPACITY.  THAT LEAVES
11:27AM   9    THE COURT I THINK TO REASONABLY ASSUME THAT THERANOS ITSELF
11:27AM  10    PAID FOR THIS REPRESENTATION.  THAT FACTOR WAS ALSO RELEVANT IN
11:27AM  11    THE GRAF OPINION.
11:27AM  12          IT'S ALSO IMPORTANT NOT TO LOSE SIGHT OF THE FACT THAT THE
11:27AM  13    FIRM ITSELF INFORMS DEFENSE COUNSEL IN CONNECTION WITH THIS
11:27AM  14    CASE THAT ITS UNDERSTANDING WAS THAT IT NEVER REPRESENTED
11:27AM  15    HOLMES INDIVIDUALLY, AND THE GOVERNMENT HAS SUBMITTED THAT
11:27AM  16    COMMUNICATION TO THE COURT FOR THE COURT'S REVIEW.  THAT IS
11:27AM  17    ARGUABLY DISPOSITIVE AS TO FACTOR NUMBER 3 IN GRAF REQUIRING
11:28AM  18    THAT THE LAWYER ACTUALLY AGREE TO REPRESENT THE INDIVIDUAL
11:28AM  19    DEFENDANT IN THAT PERSONAL CAPACITY.
11:28AM  20          ANY STATEMENT BY HEATHER KING COULD NOT CHANGE THOSE
11:28AM  21    FACTS.  AND, IN FACT, IF THE COURT REVIEWS THAT LANGUAGE, THE
11:28AM  22    ACTUAL LANGUAGE OF MS. KING'S STATEMENT, I THINK THE COURT WILL
11:28AM  23    SEE THAT THAT'S NOT CLEARLY ASSERTING AN INDIVIDUAL
11:28AM  24    ATTORNEY-CLIENT RELATIONSHIP BETWEEN HOLMES AND BOIES SCHILLER.
11:28AM  25    BUT EVEN IF IT DID, THAT WOULDN'T MATTER HERE.  HEATHER KING
```

11:28AM 1    WOULD BE OUTSIDE OF THAT RELATIONSHIP, AND IT WOULD HAVE NO

11:28AM 2    EFFECT ON HOLMES'S FAILURE TO SHOW THE ELEMENTS AND THE FACTORS

11:28AM 3    THAT I'VE JUST LISTED.

11:28AM 4         SIMILARLY, HOLMES'S SUBJECTIVE UNDERSTANDING DOESN'T

11:28AM 5    MATTER HERE.  I THINK THE GOVERNMENT CITED THE CASE LAW SHOWING

11:28AM 6    THAT.

11:28AM 7         SO WE'RE LEFT WITH THE DEFENSE ASKING THE COURT TO ASSUME

11:28AM 8    OR INFER FROM SOME PLEADINGS WHERE BOIES SCHILLER SIGNED ON

11:28AM 9    BEHALF OF THERANOS AND HOLMES THAT THERE WAS A LONGSTANDING

11:29AM 10   JOINT REPRESENTATION THAT SPANNED A VARIETY OF MATTERS, BUT THE

11:29AM 11   EVIDENCE DOESN'T SHOW THAT.

11:29AM 12        AS TO THE FUISZ LITIGATION, THAT SUIT WAS BROUGHT BY THE

11:29AM 13   COMPANY, OF COURSE.  HOLMES WAS ALSO A PLAINTIFF.  IT APPEARS

11:29AM 14   THAT PATENT LAW MIGHT HAVE REQUIRED OR AT LEAST AUGURED IN

11:29AM 15   FAVOR OF JOINING HOLMES AS A COPLAINTIFF THERE.

11:29AM 16        I'LL ALSO NOTE THAT ACCORDING TO THAT COMPLAINT, HOLMES

11:29AM 17   HAD ASSIGNED SOME RIGHTS TO THE COMPANY.  SO IT'S UNCLEAR THAT

11:29AM 18   SHE WOULD HAVE RECOVERED PERSONALLY IN THAT CASE.

11:29AM 19        ALL OF THIS JUST GOES TO THE POINT THAT TO THE EXTENT THAT

11:29AM 20   BOIES SCHILLER APPEARED FOR OR REPRESENTED HOLMES IN CONNECTION

11:29AM 21   WITH THAT LITIGATION, IT REALLY APPEARS THAT THAT

11:29AM 22   REPRESENTATION WAS INCIDENTAL TO ITS OVERALL REPRESENTATION OF

11:29AM 23   THE COMPANY.

11:29AM 24        SO IF THAT'S THE CASE, IT SHOULD NOT BE RELIED UPON AS A

11:29AM 25   SIGNAL OF THE BEGINNING OF A LONG-TERM JOINT REPRESENTATION

| | | |
|---|---|---|
| 11:29AM | 1 | THAT -- |
| 11:29AM | 2 | THE COURT:  MR. BOSTIC, SORRY FOR INTERRUPTING. |
| 11:29AM | 3 | WHAT IS THE TEST FOR -- WHEN YOU SAY IT'S INCIDENTAL?  HOW DO I |
| 11:30AM | 4 | REACH THAT CONCLUSION?  IS THERE SOME CASE LAW THAT SAYS HERE'S |
| 11:30AM | 5 | HOW YOU TELL IF SOME REPRESENTATION IS INCIDENTAL OR NOT, OR IS |
| 11:30AM | 6 | IT JUST A COMMON SENSE TEST? |
| 11:30AM | 7 | MR. BOSTIC:  I WOULD SAY IT'S A COMMON SENSE TEST, |
| 11:30AM | 8 | YOUR HONOR.  I DON'T HAVE A CASE TO CITE ON THAT.  I THINK WHAT |
| 11:30AM | 9 | WE'RE LEFT TO DO IS LOOK AT THE EVIDENCE THAT THE DEFENSE HAS |
| 11:30AM | 10 | SUBMITTED.  IT IS THE DEFENSE'S BURDEN.  WE ARE LEFT TO LOOK AT |
| 11:30AM | 11 | THAT AND I THINK INFER WHAT WE CAN. |
| 11:30AM | 12 | BUT MY MAIN POINT IS THAT IT WOULD BE SEVERAL STEPS TOO |
| 11:30AM | 13 | FAR TO INFER FROM WHAT THE DEFENSE HAS PUT IN FRONT OF THE |
| 11:30AM | 14 | COURT THAT THIS WAS THE BEGINNING OF A FULL INDIVIDUAL OR JOINT |
| 11:30AM | 15 | REPRESENTATION THAT INCLUDED ELIZABETH HOLMES IN HER PERSONAL |
| 11:30AM | 16 | CAPACITY. |
| 11:30AM | 17 | THE COURT:  MR. WADE WILL MAKE THE ARGUMENTS ON HIS |
| 11:30AM | 18 | CLIENT'S BEHALF, BUT SHE WAS A NAMED PARTY IN THAT LITIGATION |
| 11:30AM | 19 | AND WAS ASSERTING INTELLECTUAL PROPERTY RIGHTS.  IT APPEARS ON |
| 11:30AM | 20 | A PERSONAL BASIS THEY WERE HER RIGHTS, AND THEY WERE RIGHTS |
| 11:30AM | 21 | THAT THE COMPANY ALSO HELD, BUT THEY WERE RIGHTS THAT SHE WAS |
| 11:30AM | 22 | ASSERTING IN THAT CASE AND THAT, YOU KNOW, AS TO YOUR ARGUMENT, |
| 11:31AM | 23 | THAT WAS INCIDENTAL TO THE CASE. |
| 11:31AM | 24 | YOU KNOW, I HEAR THE ARGUMENT ON THE OTHER SIDE WHICH IS, |
| 11:31AM | 25 | NO, THAT WASN'T INCIDENTAL, THAT WAS A SUBSTANTIAL |

11:31AM  1    REPRESENTATION OF HER INDIVIDUAL RIGHTS WHERE COUNSEL WAS

11:31AM  2    COMMUNICATING WITH HER ABOUT THAT.

11:31AM  3         ALL RIGHT.

11:31AM  4         IF YOU CAN -- I'LL CONSIDER YOUR ARGUMENTS.  ADDRESS THE

11:31AM  5    ISSUE OF POTENTIAL IN CAMERA REVIEW AND THE PROS AND CONS TO

11:31AM  6    LOOKING AT THOSE MATERIALS.

11:31AM  7         MR. BOSTIC:  YES, YOUR HONOR.

11:31AM  8         IF I COULD JUST VERY BRIEFLY ON THE COURT'S LAST POINT.

11:31AM  9    THE COURT ACTUALLY DOES NOT NEED TO DECIDE THE QUESTION OF

11:31AM 10    WHETHER THAT REPRESENTATION IN CONNECTION WITH THE FUISZ

11:31AM 11    LITIGATION WAS TRULY JOINT OR NOT, BECAUSE IN THIS CASE THE

11:31AM 12    COMMUNICATIONS AT ISSUE, THERE'S NO CLAIM BY THE DEFENSE THAT

11:31AM 13    THEY ACTUALLY RELATED TO THAT MATTER.

11:31AM 14         THE CASE LAW TELLS US THAT TO THE EXTENT THERE IS A JOINT

11:31AM 15    REPRESENTATION, IT IS MATTER SPECIFIC.  IT CANNOT BE THE CASE

11:32AM 16    THAT A PAST JOINT REPRESENTATION, EVEN IF IT WOULD CREATE THAT

11:32AM 17    INDIVIDUAL ATTORNEY-CLIENT RELATIONSHIP, THE CASE LAW DOESN'T

11:32AM 18    SUPPORT THE IDEA THAT THAT WOULD THEN AUTOMATICALLY CREATE ALL

11:32AM 19    ADDITIONAL, OR SORRY, THAT THAT WOULD CONVERT FUTURE ADDITIONAL

11:32AM 20    ENGAGEMENTS INTO JOINT ONES THAT WOULD PRESERVE THAT

11:32AM 21    RELATIONSHIP.

11:32AM 22         I HAVE SOME ADDITIONAL POINTS TO MAKE ABOUT THE INDIVIDUAL

11:32AM 23    COMMUNICATIONS HERE, BUT FIRST LET ME ADDRESS THE COURT'S

11:32AM 24    QUESTION ABOUT ADDITIONAL SUBMISSION OF IN CAMERA MATERIALS.

11:32AM 25         THE CASE LAW IS CLEAR THAT THE DEFENSE HAS THE BURDEN TO

11:32AM 1   MAKE THE REQUIRED SHOWING.  THAT BURDEN HAS BEEN SQUARELY WITH

11:32AM 2   THE DEFENSE THIS ENTIRE TIME.

11:32AM 3        THE GOVERNMENT'S POSITION IS THAT THE DEFENSE SHOULD HAVE

11:32AM 4   SUBMITTED ALL OF THE EVIDENCE THAT IT NEEDED TO MAKE THE

11:32AM 5   SHOWING BY THIS TIME.  SO THE GOVERNMENT WOULD OBJECT TO

11:32AM 6   ADDITIONAL SUBMISSIONS AFTER THIS FACT.  EVEN IF THE GOVERNMENT

11:32AM 7   IS NOT ENTITLED TO ACTUALLY SEE WHAT IS SUBMITTED IN CAMERA,

11:32AM 8   THE GOVERNMENT HAS A RIGHT, I THINK REASONABLY, TO HEAR THE

11:32AM 9   DEFENSE'S ARGUMENTS ABOUT THOSE SUBMISSIONS AND TO BE PART OF

11:32AM 10  THAT CONVERSATION.

11:33AM 11       THE COURT:  ALL RIGHT.  THANK YOU.

11:33AM 12       ON THE ISSUE OF IN CAMERA REVIEW, I DETERMINED IT WOULD BE

11:33AM 13  HELPFUL FOR MY EVALUATION OF THE PRIVILEGE AND THE SCOPE OF THE

11:33AM 14  PRIVILEGE TO REVIEW THOSE MATERIALS.

11:33AM 15       ONE OF THE FACTORS THE COURT CONSIDERS IN DOING THAT IS

11:33AM 16  THE VOLUME AND JUST THE ADMINISTRATIVE ASPECT OF WILL I BE ABLE

11:33AM 17  TO REVIEW IT IN A TIMELY WAY SO THAT IT WILL BE HELPFUL FOR ME

11:33AM 18  TO MAKE MY DECISION?

11:33AM 19       AND MR. WADE HAS PROFFERED THAT THE VOLUME WILL NOT BE

11:33AM 20  DISABLING AND WILL NOT CAUSE A DELAY IN THE CASE.

11:33AM 21       AND THE ADVANTAGE OF JUDGE DAVILA HAVING REFERRED THE

11:33AM 22  MATTER TO ME IS THAT THERE'S NOT A DANGER OF, YOU KNOW, OF

11:33AM 23  INFECTION OF THE TRIAL JUDGE WITH SOMETHING THAT IS PRIVILEGED

11:33AM 24  AND CONFIDENTIAL THAT WOULD CAUSE HIM TO BE UNFAIR IN HIS TRIAL

11:33AM 25  AND POTENTIAL SENTENCING OF THE CASE.  I CAN LOOK AT THE

11:33AM 1    MATERIALS IN CAMERA WITHOUT CONCERN THAT THEY WILL IMPACT

11:33AM 2    JUDGE DAVILA'S RULINGS ONE WAY OR THE OTHER.

11:34AM 3        I DON'T FIND THE DEFENSE HAS WAIVED THIS ARGUMENT.  THEY

11:34AM 4    RAISED IT IN THEIR BRIEF THAT THEY PROPOSED MY LOOKING AT IT,

11:34AM 5    AND I JUST WANTED TO GET MORE CONTEXT FOR THAT PROPOSAL BEFORE

11:34AM 6    ORDERING IT.

11:34AM 7        SO, MR. WADE, I DO GRANT YOU LEAVE TO PROVIDE THE

11:34AM 8    MATERIALS EX PARTE FOR IN CAMERA REVIEW.  AND BY SUGGESTING

11:34AM 9    THAT THEY ARE EX PARTE MY -- MR. BALWANI, OF COURSE, IS A

11:34AM 10   CODEFENDANT IN THE CASE.  HE'S NOT A PARTY TO THE ARGUMENTS

11:34AM 11   HERE ABOUT EVIDENTIARY PRIVILEGES, BUT MY SUGGESTION WOULD BE

11:34AM 12   IS THAT THIS IS COMING TO THE COURT AND NOT TO THE CODEFENDANT

11:34AM 13   OR NOT TO THE GOVERNMENT.  I WON'T PROVIDE IT TO JUDGE DAVILA

11:34AM 14   WITHOUT ANY FURTHER COURT ORDER AND OPPORTUNITY TO RESPOND.

11:34AM 15       DO THOSE LIMITATIONS MAKE SENSE TO YOU?

11:34AM 16          MR. WADE:  THAT MAKES SENSE, YOUR HONOR.

11:34AM 17       IF I MIGHT WHEN APPROPRIATE, I WILL ALSO RESPOND BRIEFLY

11:34AM 18   TO MR. BOSTIC'S ARGUMENT.

11:34AM 19          THE COURT:  ALL RIGHT.  FIRST TELL ME WHEN YOU'LL

11:35AM 20   GET THOSE MATERIALS TO ME.

11:35AM 21          MR. WADE:  WHEN WOULD THE COURT LIKE THEM?

11:35AM 22          THE COURT:  WHENEVER.  AS SOON AS YOU CAN REASONABLY

11:35AM 23   GET THEM.

11:35AM 24       IF THEY'RE COMING ELECTRONICALLY, THEY CAN COME TO MY

11:35AM 25   COURTROOM DEPUTY, AND YOU CAN COMMUNICATE WITH HER AS TO

11:35AM 1      PROVIDING THEM.

11:35AM 2           IF THEY'RE COMING IN PAPER FORM, YOU CAN PROVIDE THEM TO

11:35AM 3      THE COURTHOUSE IN SAN JOSE, AND I'LL PICK THEM UP THERE.

11:35AM 4           MR. WADE:  YOUR HONOR, MAYBE BOTH FOR CONVENIENCE

11:35AM 5      AND TO MAKE SURE THE RECORD IS CLEAR, WE WILL TRANSMIT THEM TO

11:35AM 6      CHAMBERS ELECTRONICALLY PERHAPS MORE QUICKLY AND THEN GET THEM

11:35AM 7      ON FILE IN A MORE FORMAL WAY WITH THE COURT SO THERE'S A RECORD

11:35AM 8      OF THE FILING IN THE DOCKET.

11:35AM 9           THE COURT:  THAT SOUNDS GOOD.

11:35AM 10     IS FRIDAY DOABLE?

11:35AM 11          MR. WADE:  COULD WE HAVE UNTIL MONDAY, YOUR HONOR?

11:35AM 12          THE COURT:  SURE.

11:35AM 13          MR. WADE:  THANK YOU.

11:35AM 14          THE COURT:  SO WE'LL ANTICIPATE RECEIVING SOME IN

11:36AM 15     CAMERA MATERIALS BY MONDAY, THE 21ST.  AND WE'LL DOCUMENT WHEN

11:36AM 16     WE RECEIVE THEM, AND SO THAT WILL BE IN THE RECORD.

11:36AM 17          ALL RIGHT.  MR. WADE, YOU WANTED TO RESPOND FURTHER TO

11:36AM 18     MR. BOSTIC'S ARGUMENTS.  GO AHEAD.

11:36AM 19          MR. WADE:  I DID, YOUR HONOR.  FIRST OF ALL, THERE'S

11:36AM 20     NO INCIDENTAL ATTORNEY-CLIENT PRIVILEGE, ATTORNEY-CLIENT

11:36AM 21     RELATIONSHIP.

11:36AM 22          AS A LAWYER I EITHER HAVE OBLIGATIONS TO A CLIENT OR I

11:36AM 23     DON'T.  THERE'S NO SUCH THING IN THE LAW, THAT I'M AWARE OF, OF

11:36AM 24     AN INCIDENTAL ATTORNEY-CLIENT RELATIONSHIP.

11:36AM 25          MR. BOSTIC'S ARGUMENT SORT OF DEMONSTRATES THE FAILURES OF

11:36AM 1      GRAF IN THIS CASE BECAUSE MR. BOSTIC IS SUGGESTING THAT WE

11:36AM 2      SHOULD USE THE TEST SET FORTH IN GRAF TO DEFEAT WHAT WAS

11:36AM 3      CLEARLY A JOINT REPRESENTATION BECAUSE THERE IS NOT EVIDENCE TO

11:36AM 4      MEET THE GRAF STANDARD NECESSARILY IN CONNECTION WITH THE

11:36AM 5      MATTER IN WHICH MS. HOLMES WAS REPRESENTED IN LITIGATION WHERE

11:36AM 6      THEY SIGNED PLEADINGS, WHERE THINGS WERE SUBMITTED TO THE COURT

11:37AM 7      ON HER BEHALF, THEY ENTERED INTO AN APPEARANCE PURSUANT TO THE

11:37AM 8      NORTHERN DISTRICT OF CALIFORNIA RULES.

11:37AM 9          YOUR HONOR, THEY DID THAT IN A MANNER THAT WAS NOT JUST A

11:37AM 10     PATENT MATTER.  THAT INVOLVED ALLEGED THEFT OF TRADE SECRETS

11:37AM 11     AND OTHER MATTERS THAT WERE MUCH BROADER THAN PATENT MATTERS.

11:37AM 12         SECONDLY, ON BEHALF OF, ON BEHALF OF MS. HOLMES, THE

11:37AM 13     BOIES SCHILLER FIRM IN A RELATED MATTER ACTUALLY FILED

11:37AM 14     LITIGATION AGAINST MCDERMOTT, WILL & EMERY IN A LEGAL

11:37AM 15     MALPRACTICE MATTER IN THE DISTRICT OF COLUMBIA.  AGAIN, NOT A

11:37AM 16     PATENT MATTER.  A MATTER THAT WAS AN OUTGROWTH OF THAT AND

11:37AM 17     REFLECTS THE NATURE OF THE JOINT RELATIONSHIP WHICH CONTINUED.

11:37AM 18         AND CONTRARY TO THE SUGGESTION OF COUNSEL, WE DON'T HAVE

11:37AM 19     TO LOOK JUST TO THOSE REPRESENTATIONS.  YOU CAN LOOK TO THE

11:37AM 20     EXPLANATION PROVIDED BY MS. HOLMES IN HER DECLARATION.

11:37AM 21         ALTHOUGH WE WILL SUBMIT ADDITIONAL INFORMATION TO THE

11:38AM 22     COURT IN CAMERA.  SHE SETS THE CONTEXT FOR THE ADVICE THAT WAS

11:38AM 23     PROVIDED IN DIFFERENT MATTERS.  THAT ADVICE WAS PROVIDED IN

11:38AM 24     CONNECTION WITH AN ONGOING JOINT REPRESENTATION, AND SHE MAKES

11:38AM 25     CLEAR THAT THERE WAS NEVER ANY INDICATION AT ANY TIME FROM THE

11:38AM 1   START OF THE REPRESENTATION TO THE END THAT THE REPRESENTATION

11:38AM 2   WAS LIMITED IN ANY WAY.

11:38AM 3       AND IT WOULD BE UNFAIR TO TAKE A GRAF TEST WHICH IF YOU

11:38AM 4   LOOK AT THE FACTS OF GRAF, YOU'RE TALKING IN GRAF WHICH, YOU

11:38AM 5   KNOW, IT TOOK SEVERAL BITES AT THE APPLE FOR THE COURT TO EVEN

11:38AM 6   CONSIDER THE BEVILL TEST, THE NINTH CIRCUIT TO EVEN CONSIDER

11:38AM 7   THE BEVILL TEST.

11:38AM 8       BUT WHEN YOU LOOK AT GRAF, THE FACTS ARE SO FAR FROM THIS

11:38AM 9   CASE IS TO DEMONSTRATE THE BAD FIT TO THESE FACTS WHERE THERE

11:38AM 10  WAS A LONGSTANDING JOINT REPRESENTATION IN ADVANCE OF THE

11:38AM 11  COMMUNICATIONS THAT ARE AT ISSUE HERE.  IN THAT CASE THE PERSON

11:39AM 12  WASN'T EVEN AN EMPLOYEE OF THE COMPANY.

11:39AM 13      SO WE SHOULDN'T SLAVISHLY ADHERE TO SOME MULTIFACTOR TEST

11:39AM 14  THAT IS SET FORTH IN THE NINTH CIRCUIT IF IT DOESN'T FIT TO THE

11:39AM 15  FACTS OF THE CASE.

11:39AM 16      HERE IT DOESN'T.  WE HAVE A CLEAR BOOK ENDED JOINT

11:39AM 17  REPRESENTATIONS THAT ARE DEMONSTRATED BY MULTIPLE

11:39AM 18  REPRESENTATION IN CONNECTION WITH MULTIPLE LITIGATION MATTERS

11:39AM 19  AND THE LAW IS CLEAR, AS WE'VE CITED IN OUR BRIEF, THAT THAT

11:39AM 20  PRESUMPTIVELY -- THAT IS PRESUMPTIVE EVIDENCE ESTABLISHING AN

11:39AM 21  ATTORNEY-CLIENT RELATIONSHIP WITH RESPECT TO MS. HOLMES, IT'S A

11:39AM 22  JOINT REPRESENTATION, AND THEN WE NEED TO GO BACK TO TELEGLOBE

11:39AM 23  AND LOOK AT THE FACTORS SET FORTH IN TELEGLOBE WHICH MANY

11:39AM 24  DISTRICT COURTS IN THIS CIRCUIT HAVE CITED FAVORABLY AND A

11:40AM 25  COUPLE OF DISTRICT COURT OF CALIFORNIA CASES OR DISTRICT OF

| | | |
|---|---|---|
| 11:40AM | 1 | ARIZONA CASES, AND I THINK THE NINTH CIRCUIT HAS CITED IT |
| 11:40AM | 2 | FAVORABLY ONCE. |
| 11:40AM | 3 | JOINT REPRESENTATION IS THE VEHICLE THROUGH WHICH TO |
| 11:40AM | 4 | ASSESS THESE OTHER COMMUNICATIONS, AND AS IT RELATES TO THAT |
| 11:40AM | 5 | WHOLE, IF YOU WILL, WHICH IS NOT -- WHICH COMES BETWEEN THE |
| 11:40AM | 6 | TWO -- THE FORMAL LITIGATION MATTERS, WE HAVE MS. HOLMES'S |
| 11:40AM | 7 | DECLARATION, WE HAVE MS. KING'S STATEMENT, WHICH CONFIRMS THAT |
| 11:40AM | 8 | DECLARATION, AND THERE WILL BE OTHER EVIDENCE SUBMITTED TO THE |
| 11:40AM | 9 | COURT. |
| 11:40AM | 10 | THE COURT:  THANK YOU, MR. WADE. |
| 11:40AM | 11 | MR. BOSTIC, I'LL GIVE YOU YOUR FINAL WORD AT THIS STAGE OF |
| 11:40AM | 12 | THE PROCEEDINGS. |
| 11:40AM | 13 | MR. BOSTIC:  THANK YOU, YOUR HONOR. |
| 11:40AM | 14 | SO I THINK UNDER TELEGLOBE ITSELF, THOUGH, WHICH BY THE |
| 11:40AM | 15 | WAY CAUTIONS NOT TO OVERLY MECHANICALLY APPLY THE LABEL OF |
| 11:40AM | 16 | JOINT REPRESENTATION, UNDER TELEGLOBE IT'S CLEAR THAT WHETHER A |
| 11:41AM | 17 | REPRESENTATION EXISTS IS DETERMINED ON A MATTER-BY-MATTER |
| 11:41AM | 18 | BASIS. |
| 11:41AM | 19 | IT IS NOT THE CASE THAT BECAUSE A FIRM REPRESENTED AN |
| 11:41AM | 20 | INDIVIDUAL ONCE THAT EVERY ADDITIONAL CONTACT BETWEEN THAT |
| 11:41AM | 21 | INDIVIDUAL AND THAT FIRM BECOMES PART OF THAT SAME JOINT |
| 11:41AM | 22 | REPRESENTATION. |
| 11:41AM | 23 | IN FACT, IT'S CLEAR HERE THAT THE FUISZ LITIGATION ENDED |
| 11:41AM | 24 | IN THE FIRST QUARTER OF 2014.  THE TOY CLASS ACTION, WHICH IS |
| 11:41AM | 25 | ALSO REFERENCED BY THE DEFENSE, DIDN'T BEGIN OR AT LEAST THE |

11:41AM 1    DEFENSE DOESN'T SUBMIT ANYTHING I THINK BEFORE SEPTEMBER OF

11:41AM 2    2016, EXCEPT FOR ONE OF THE DOCUMENTS AT ISSUE HERE.  ALL OF

11:41AM 3    THE DOCUMENTS THAT THE COURT IS CONSIDERING OCCURRED OR CAME TO

11:41AM 4    BE BETWEEN THOSE TWO DATES.

11:41AM 5        SO WHILE THE DEFENSE WANTS THE COURT TO FOCUS ON THAT

11:41AM 6    POSSIBLE JOINT REPRESENTATION AT THE BEGINNING OF THE TIME

11:41AM 7    PERIOD AND ANOTHER POSSIBLE JOINT REPRESENTATION AT THE END,

11:41AM 8    THOSE DON'T DIRECTLY BEAR ON THE COMMUNICATIONS ACTUALLY AT

11:41AM 9    ISSUE HERE.

11:41AM 10       AND IT IS INCUMBENT, THE BURDEN IS ON THE PARTY ASSERTING

11:42AM 11   NOT JUST TO ESTABLISH THE EXISTENCE OF THAT ATTORNEY-CLIENT

11:42AM 12   RELATIONSHIP, BUT ALSO TO ESTABLISH THAT THE PRIVILEGE APPLIES

11:42AM 13   TO THE COMMUNICATIONS AT ISSUE.  THAT'S WHERE THE DEFENSE

11:42AM 14   REALLY RUNS INTO TROUBLE HERE.

11:42AM 15       BESIDES THE FACT THAT THESE COMMUNICATIONS OCCURRED

11:42AM 16   OUTSIDE THE TIME PERIODS COVERED BY THOSE ALLEGED JOINT

11:42AM 17   REPRESENTATIONS, WE CAN ALSO SEE JUST FROM THE DESCRIPTIONS IN

11:42AM 18   THE DEFENDANT'S PRIVILEGE LOG THAT THESE RELATE NOT TO MATTERS

11:42AM 19   AFFECTING HOLMES INDIVIDUALLY IN HER PERSONAL CAPACITY, BUT

11:42AM 20   MATTERS AFFECTING THE COMPANY, MATTERS THAT IMPLICATE HOLMES'S

11:42AM 21   RESPONSIBILITY AS CEO, AS CORPORATE REPRESENTATIVE.

11:42AM 22       THESE ARE THE KINDS OF COMMUNICATIONS THAT ANY CORPORATE

11:42AM 23   CEO WOULD BE HAVING WITH ANY COMPANY COUNSEL.  THEY'RE NOT

11:42AM 24   UNIQUE TO HER.  THEY'RE IN FRONT OF THE COURT NOW BECAUSE

11:42AM 25   THEY'RE ON THE GOVERNMENT'S EXHIBIT LIST, BUT OTHERWISE THERE'S

REALLY NOTHING SPECIAL ABOUT THEM.

THEY ARE THE SORT OF COMMUNICATIONS YOU WOULD EXPECT TO SEE BETWEEN ANY COMPANY'S CEO AND COUNSEL.

LOOKING AT THE SPECIFIC TOPICS COVERED HERE, I THINK IT JUST DRIVES THAT POINT HOME.  FOR EXAMPLE, THE FIRST DOCUMENT ON THEIR PRIVILEGE LOG SAYS IT RELATES TO ATTORNEY-CLIENT COMMUNICATION REGARDING ATTORNEY BILLING ARRANGEMENTS IN ANTICIPATION OF LITIGATION.

THESE WOULD HAVE BEEN BILLING ARRANGEMENT FOR A LITIGATION OR REPRESENTATION WHERE THERANOS DID THE PAYMENT.  SO TO THE EXTENT THAT BOIES SCHILLER IS HAVING A CONVERSATION WITH HOLMES ABOUT BILLING FOR THAT REPRESENTATION, HOW CAN IT BE ARGUED THAT THAT CONVERSATION IS IN HER PERSONAL CAPACITY AS PART OF HER INDIVIDUAL ATTORNEY-CLIENT RELATIONSHIP WHEN THE TOPIC IS BILLING WHERE THE BILLS GO TO THE COMPANY, THE BILLS ARE PAID BY THE COMPANY?  THAT'S A CONVERSATION INVOLVING HER IN HER CEO CORPORATE REPRESENTATIVE CAPACITY ONLY.

SIMILARLY, DOCUMENTS 2 AND 11 ON THAT LIST RELATE TO COMMUNICATIONS WITH INVESTORS.  HOLMES DID NOT HAVE A PERSONAL INDIVIDUAL BUSINESS RELATIONSHIP WITH THE INVESTORS.  THESE PEOPLE WERE INVESTORS IN THERANOS, THE COMPANY.

TO THE EXTENT THAT THEY SIGNED INVESTOR AGREEMENTS, THOSE AGREEMENTS WERE SIGNED WITH THE COMPANY AS THE OTHER PARTY. THEY GAINED SHARES IN THE COMPANY IN CONNECTION WITH THEIR INVESTMENTS.

11:44AM 1        SO TO THE EXTENT THAT HOLMES WAS HAVING CONTACT WITH THEM,

11:44AM 2    IT WAS AS A COMPANY REPRESENTATIVE.  TO THE EXTENT THAT SHE WAS

11:44AM 3    GETTING LEGAL ADVICE, THAT WAS LEGAL ADVICE FOR THE COMPANY IN

11:44AM 4    CONNECTION WITH THAT ROLE AS CEO AND COMPANY SPOKESPERSON.

11:44AM 5        AGAIN, DOCUMENTS 4, 7, 8, AND 9, THOSE RELATE TO THE

11:44AM 6    REGULATORY APPROVAL PROCESS BASED ON THE DEFENSE'S PRIVILEGE

11:44AM 7    LOG.  THESE WERE THERANOS'S REGULATORY SUBMISSIONS SEEKING

11:44AM 8    APPROVAL FOR COMPANY TECHNOLOGY AND COMPANY PROCESSES.

11:44AM 9        THIS IS NOT ELIZABETH HOLMES PERSONALLY.  SHE WASN'T LAB

11:44AM 10    DIRECTOR, FOR EXAMPLE.  SO THESE COMMUNICATIONS ON THEIR FACE,

11:44AM 11    EVEN JUST BASED ON THE PRIVILEGE LOG, RELATE NOT TO HOLMES'S

11:45AM 12    PERSONAL RIGHTS AND OBLIGATIONS SEPARATE FROM THE COMPANY, BUT

11:45AM 13    RELATE SOLELY TO HER ROLE AS CORPORATE CHIEF EXECUTIVE AND A

11:45AM 14    REPRESENTATIVE OF THE COMPANY.

11:45AM 15        AND THE CASE LAW MAKES IT CLEAR THAT IN THAT SITUATION THE

11:45AM 16    TEST IS NOT MET THAT THE INDIVIDUAL PRIVILEGE CANNOT BE

11:45AM 17    ASSERTED.

11:45AM 18        THE NEWPARENT CASE TELLS US THAT AN EMPLOYEE CAN ASSERT AN

11:45AM 19    INDIVIDUAL PRIVILEGE ONLY TO THE EXTENT THAT COMMUNICATIONS

11:45AM 20    REGARDING INDIVIDUAL ACTS AND LIABILITIES ARE SEGREGABLE FROM

11:45AM 21    DISCUSSIONS ABOUT THE CORPORATION.

11:45AM 22        THE DEFENSE HAS NOT EVEN ATTEMPTED TO MAKE THAT SHOWING

11:45AM 23    HERE AND THAT'S BECAUSE THEY CAN'T.

11:45AM 24        I'LL MAKE JUST ONE QUICK FINAL POINT, AND THAT'S THAT

11:45AM 25    ALIGNED INTERESTS ARE NOT ENOUGH HERE.  THE FACT THAT HOLMES'S

11:45AM 1     INTEREST MAY HAVE BEEN ALIGNED WITH THE COMPANY, AND I SUSPECT

11:45AM 2     THAT THE COURT WILL SEE THAT IN WHAT THE DEFENSE PLANS TO

11:45AM 3     SUBMIT TO THE COURT, BUT THE FACT THAT HOLMES'S PERSONAL

11:46AM 4     FORTUNES MAY HAVE BEEN TIED WITH THE COMPANY IS NOT UNIQUE IN

11:46AM 5     THIS CASE.  THAT'S TRUE FOR ANY COMPANY FOUNDER AND CEO.

11:46AM 6         FOR ANY COMPANY AND FOUNDER AND CEO, THEIR PAY WILL RISE

11:46AM 7     IF THEIR COMPANY DOES WELL.  THEY MIGHT LOSE THEIR JOB IF THE

11:46AM 8     COMPANY DOES POORLY, THEIR REPUTATION IS TIED INTO THAT OF THE

11:46AM 9     COMPANY.  SO ALIGNMENT OF INTEREST IS NOTHING UNIQUE HERE.  IF

11:46AM 10    THAT WERE ENOUGH TO FORCE THE COURT TO INFER A JOINT

11:46AM 11    REPRESENTATION, THEN THERE WOULD BE A JOINT REPRESENTATION IN

11:46AM 12    NEARLY EVERY CASE AND THE GRAF CASE WOULD LOSE ALL MEANING.

11:46AM 13        SO I'M HAPPY TO RESPOND TO ANY ADDITIONAL QUESTIONS THAT

11:46AM 14    THE COURT MIGHT HAVE, BUT WITH THAT THE GOVERNMENT SUBMITS.

11:46AM 15            THE COURT:  I DON'T HAVE ANY ADDITIONAL QUESTIONS

11:46AM 16    NOW.  I THANK BOTH PARTIES FOR YOUR PREPARATION.

11:46AM 17        I WILL DEFER RULING UNTIL I'VE HAD AN OPPORTUNITY TO

11:46AM 18    REVIEW THE IN CAMERA SUBMISSION FROM THE DEFENSE, AND IF I DO

11:46AM 19    GENERATE ANY ADDITIONAL QUESTIONS, I DON'T ANTICIPATE A NEED

11:46AM 20    FOR A FURTHER HEARING, BUT IF I REVIEW THOSE AND HAVE SOME

11:47AM 21    QUESTIONS, EITHER FACTUAL OR LEGAL TO POSE TO THE PARTIES, THEN

11:47AM 22    I WILL RE-NOTICE IT FOR A FURTHER HEARING.

11:47AM 23        I SEE, MR. WADE, MAYBE HAS ONE MORE THING TO ADD TO THE

11:47AM 24    RECORD.  GO AHEAD.

11:47AM 25            MR. WADE:  YOUR HONOR, I WAS HOPING TO BRIEFLY

11:47AM  1   REPLY.  MR. BOSTIC RAISED SEVERAL NEW POINTS THAT HADN'T BEEN

11:47AM  2   ADDRESSED.  WITHOUT EXPANDING THE SCOPE OF THE ARGUMENT, IF I

11:47AM  3   MIGHT TAKE 20 SECONDS AND REPLY TO THOSE POINTS?

11:47AM  4         THE COURT:  NOTHING TAKES 20 SECONDS.  BUT GO AHEAD,

11:47AM  5   MR. WADE.

11:47AM  6         MR. WADE:  I'LL DO MY BEST.  AGAIN, THE ARGUMENT

11:47AM  7   ABOUT THE APPLICATION OF BEVILL DEMONSTRATES WHY IT DOESN'T

11:47AM  8   WORK HERE.  BECAUSE IF YOU APPLY BEVILL AND THE FIVE FACTORS,

11:47AM  9   THE FIFTH FACTOR, WHICH SAYS THAT THE INTERESTS HAVE TO BE

11:47AM  10  DISTINCT FROM THE CORPORATION WOULD MEAN THAT AN OFFICER IN A

11:47AM  11  CORPORATION COULD NEVER HAVE A JOINT REPRESENTATION, AND WE

11:47AM  12  KNOW THAT'S NOT THE CASE.  IT WASN'T THE CASE HERE IN THREE

11:47AM  13  MATTERS, AND IT'S NOT THE CASE THROUGHOUT COURTS IN THIS LAND.

11:47AM  14  THAT'S WHY BEVILL DOESN'T MAKE SENSE IN THE CONTEXT OF A JOINT

11:48AM  15  REPRESENTATION.  POINT ONE.

11:48AM  16        POINT TWO.  WHY SOME OF THE COURTS, GRAF IN PARTICULAR,

11:48AM  17  TALKS ABOUT THE PAYMENT OF LEGAL FEES, THAT WAS MORE OF AN

11:48AM  18  ISSUE IN GRAF BECAUSE GRAF INVOLVED AN INDEPENDENT CONTRACTOR

11:48AM  19  WHO WAS MAKING AN ARGUMENT THAT HE HAD SOME SEPARATE

11:48AM  20  INDEPENDENT RELATIONSHIP WITH THE VERY SAME ATTORNEY, AND

11:48AM  21  THAT'S WHY THERE'S SO MUCH DISCUSSION IN GRAF.

11:48AM  22        AS WE KNOW, YOUR HONOR, CORPORATIONS ROUTINELY INDEMNIFY

11:48AM  23  INDIVIDUAL OFFICERS FOR -- IN CONNECTION WITH JOINT

11:48AM  24  REPRESENTATIONS AND IN CONNECTION WITH LEGAL WORK DONE ON

11:48AM  25  BEHALF OF THE INDIVIDUAL OFFICER IN CONNECTION WITH JOINT

11:48AM 1    REPRESENTATIONS, AND THAT'S EXACTLY WHAT HAPPENED HERE.

11:48AM 2    THERE'S AN INDEMNIFICATION AGREEMENT THAT OBLIGATED THERANOS TO

11:48AM 3    PAY LEGAL FEES FOR MS. HOLMES IN CONNECTION WITH JOINT

11:48AM 4    REPRESENTATION.  SO THAT'S OF NO MOMENT FOR THIS CASE AND

11:48AM 5    SHOULD BE GIVEN LITTLE WEIGHT.

11:49AM 6           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  I

11:49AM 7    THINK THAT GIVES ME PLENTY TO WORK WITH.

11:49AM 8        THANK YOU AGAIN FOR YOUR PREPARATION ON BOTH SIDES.  YOUR

11:49AM 9    BRIEFS WERE VERY HELPFUL.

11:49AM 10       WE WILL HAVE A WRITTEN ORDER, AND BOTH PARTIES WILL HAVE

11:49AM 11   AN OPPORTUNITY TO ASSESS THAT AND FILE ANY OBJECTIONS BACK TO

11:49AM 12   JUDGE DAVILA.

11:49AM 13       ALL RIGHT.  HAPPY HOLIDAYS.  WE'RE IN RECESS.  THANKS

11:49AM 14   AGAIN.

11:49AM 15          MR. LEACH:  THANK YOU, YOUR HONOR.

11:49AM 16          MR. WADE:  HAPPY HOLIDAYS.  THANK YOU, YOUR HONOR.

11:49AM 17          MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:49AM 18       (COURT CONCLUDED AT 11:49 A.M.)

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, RMR, CRR
17         CERTIFICATE NUMBER 8074

18
           DATED:  JANUARY 6, 2021
19

20

21

22

23

24

25