1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

    UNITED STATES OF AMERICA,        )
6                                    )  CR-18-00258-EJD
                    PLAINTIFF,       )
7                                    )  SAN JOSE, CALIFORNIA
            VS.                      )
8                                    )  MAY 4, 2021
    ELIZABETH A. HOLMES,             )
9                                    )  PAGES 1 - 195
                    DEFENDANT.       )
10  _____  )
                                     )
11
                    TRANSCRIPT OF PROCEEDINGS
12          BEFORE THE HONORABLE EDWARD J. DAVILA
                 UNITED STATES DISTRICT JUDGE
13
    A P P E A R A N C E S:
14
    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                         BY:  JOHN C. BOSTIC
                                JEFFREY B. SCHENK
16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
17
                           BY:  ROBERT S. LEACH
18                              KELLY VOLKAR
                           1301 CLAY STREET, SUITE 340S
19                         OAKLAND, CALIFORNIA 94612

20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
    OFFICIAL COURT REPORTERS:
22                              IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                CERTIFICATE NUMBER 8074
23                              LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

1

A P P E A R A N C E S: (CONT'D)

2


3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:   KEVIN M. DOWNEY
4                                    LANCE A. WADE
                                     PATRICK LOOBY
5                                    KATHERINE TREFZ
                                     AMY SAHARIA
6                                    J.R. FLEURMONT
                                     SEEMA ROPER
7                              725 TWELFTH STREET, N.W.
                               WASHINGTON, D.C. 20005
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                         MAY 4, 2021 |
| | 2 | P R O C E E D I N G S |
| 09:33AM | 3 | (COURT CONVENED AT 9:32 A.M.) |
| 09:33AM | 4 | THE COURT:  ALL RIGHT.  LET'S CALL OUR MORNING |
| 09:33AM | 5 | MATTER.  THIS IS 18258, UNITED STATES VERSUS ELIZABETH HOLMES. |
| 09:33AM | 6 | LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES, |
| 09:33AM | 7 | PLEASE. |
| 09:33AM | 8 | THE CLERK:  I HOPE IT'S OKAY. |
| 09:33AM | 9 | THE COURT:  LET'S GET APPEARANCES OF THE PARTIES. |
| 09:33AM | 10 | WHO APPEARS FOR THE GOVERNMENT? |
| 09:33AM | 11 | MR. SCHENK:  GOOD MORNING. |
| 09:33AM | 12 | JEFF SCHENK FOR THE UNITED STATES.  SEATED WITH ME AT |
| 09:33AM | 13 | COUNSEL TABLE FROM THE TABLE LEFT IS KELLY VOLKAR, AND |
| 09:33AM | 14 | ROBERT LEACH, AND JOHN BOSTIC. |
| 09:33AM | 15 | THE COURT:  GOOD MORNING.  WHO APPEARS FOR THE |
| 09:34AM | 16 | MS. HOLMES? |
| 09:34AM | 17 | MS. SAHARIA:  GOOD MORNING, YOUR HONOR.  IT'S VERY |
| 09:34AM | 18 | NICE TO SEE YOU IN PERSON. |
| 09:34AM | 19 | AMY SAHARIA FOR THE DEFENDANT ELIZABETH HOLMES. |
| 09:34AM | 20 | WITH ME IN THE COURTROOM IS KEVIN DOWNEY, LANCE WADE, AND |
| 09:34AM | 21 | I'LL LIKE TO INTRODUCE MY COLLEAGUE, SEEMA ROPER. |
| 09:34AM | 22 | THE COURT:  THANK YOU. |
| 09:34AM | 23 | MS. SAHARIA:  MS. HOLMES IS PRESENT. |
| 09:34AM | 24 | THE COURT:  THANK YOU. |
| 09:34AM | 25 | MS. SAHARIA:  WE HAVE TWO ADDITIONAL ATTORNEYS FROM |

09:34AM 1    OUR TEAM WHO WILL BE ADDRESSING THE COURT TODAY,

09:34AM 2    KATHERINE TREFZ AND J.R. FLEURMONT.  THEY ARE HERE IN THE

09:34AM 3    COURTHOUSE BUT NOT SPECIFICALLY PRESENT IN THE COURTROOM AT THE

09:34AM 4    MOMENT.

09:34AM 5         THE COURT:  ALL RIGHT.  THANK YOU.

09:34AM 6       DID THEY WISH TO BE PRESENT IN THE COURTROOM?

09:34AM 7         MS. SAHARIA:  IF YOUR HONOR IS COMFORTABLE WITH

09:34AM 8    THAT, I THINK WE WOULD PREFER FOR THEM TO BE SEATED IN THE

09:34AM 9    GALLERY SO THAT THEY CAN WATCH IN PERSON.

09:34AM 10        THE COURT:  THAT'S FINE.  LET ME INDICATE THAT THE

09:34AM 11   CURRENT PROTOCOLS IS THAT OUR COURTROOM IS CLOSED TO THE

09:34AM 12   PUBLIC.  HOWEVER, WE ARE, AT MY REQUEST, HAVING THIS HEARING IN

09:34AM 13   PERSON FOR A NUMBER OF REASONS.

09:34AM 14      BUT IF YOU WOULD LIKE THOSE COUNSEL TO BE PRESENT, AS LONG

09:34AM 15   AS THEY SEAT THEMSELVES IN A SOCIALLY DISTANCED MANNER.

09:34AM 16      I SEE MR. WADE STANDING UP, AND HE'S GOING TO COLLECT THEM

09:35AM 17   I PRESUME.

09:35AM 18        MS. SAHARIA:  I BELIEVE SO.  I CAN SEE HIS

09:35AM 19   REFLECTION.  I APPRECIATE THAT, YOUR HONOR.

09:35AM 20        THE COURT:  OF COURSE.  THANK YOU.

09:35AM 21      LET ME -- AS WE GET STARTED, I JUST THOUGHT THAT I WOULD

09:35AM 22   JUST INDICATE A COUPLE OF RULES THAT WE WILL FOLLOW FOR THE

09:35AM 23   HEARING.

09:35AM 24      IT'S MY INTENT, FIRST OF ALL, TO -- WE HAVE A LOT OF WORK

09:35AM 25   AHEAD OF US, BUT IT'S MY INTENT, I THOUGHT WE WOULD TAKE BREAKS

09:35AM  1    EVERY HOUR, TAKE A SMALL BREAK, MAYBE TEN MINUTE BREAK EVERY

09:35AM  2    HOUR, AND THEN WE WOULD RESUME AGAIN AFTERWARDS, AND THAT'S FOR

09:35AM  3    THE COMFORT OF EVERYONE AND ALSO FOR OUR COURT REPORTER AND

09:35AM  4    STAFF.

09:35AM  5         ALSO, IF AT ANY TIME ANYONE NEEDS TO TAKE A BREAK FOR ANY

09:35AM  6    REASON, PLEASE LET ME KNOW, AND I'M HAPPY TO ACCOMMODATE THAT

09:35AM  7    REQUEST AS WELL AS NEEDED.

09:35AM  8         MY THOUGHT WAS THAT ALSO JUST FOR SCHEDULING PURPOSES IS

09:35AM  9    THAT WE'LL HAVE A 1 HOUR LUNCH RATHER THAN THE TYPICAL

09:36AM  10   90 MINUTE LUNCH.  I HOPE THAT COMPORTS WITH YOUR SCHEDULES.

09:36AM  11        MY SENSE ALSO IS THAT WE WOULD END OUR DAY AROUND

09:36AM  12   4:00 P.M. DEPENDING ON WHERE WE ARE.  I DON'T WANT TO TAKE US

09:36AM  13   TO 5:00 O'CLOCK, BUT I THOUGHT AROUND 4:00 P.M. MIGHT BE GOOD.

09:36AM  14   OF COURSE, WE'LL GAUGE THAT ACCORDING TO THE PROGRESS THAT WE

09:36AM  15   MAKE WITH THIS HEARING.

09:36AM  16        NOW, LET ME ALSO INDICATE THAT OF COURSE I'VE READ AND

09:36AM  17   REVIEWED ALL OF YOUR MOTIONS, YOUR EXHIBITS, AND MATTERS THAT

09:36AM  18   YOU'VE FILED IN THIS CASE.

09:36AM  19        MY THOUGHT IS WHAT I WOULD LIKE TO DO IS THAT YOU WILL

09:36AM  20   RECEIVE AN OMNIBUS RULING ON THESE MOTIONS FROM ME.  YOU WON'T

09:36AM  21   GET THAT TODAY.  BUT YOU'LL RECEIVE -- WHAT I HOPE TO DO IS TO

09:36AM  22   GIVE YOU ORDERS WITH THE COURT'S IMPRESSIONS AND THE COURT'S

09:36AM  23   ORDERS ON THESE MILS, AND THAT WILL BE FORTHCOMING AFTER OUR

09:37AM  24   HEARING THIS WEEK.

09:37AM  25        I DON'T KNOW HOW SOON THAT WILL BE, BUT I'M GOING TO

09:37AM  1   ENDEAVOR TO GET THAT TO YOU AS SOON AS POSSIBLE FOR YOUR

09:37AM  2   INFORMATION.  IT MAY BE, HOWEVER, THAT I'LL RULE FROM THE BENCH

09:37AM  3   OR AT LEAST INDICATE THE COURT'S RULING FROM THE BENCH.

09:37AM  4   HOPEFULLY THAT WOULD HELP YOU ALSO.  AND THEN YOU WOULD RECEIVE

09:37AM  5   SUBSEQUENT, AS I SAID, FORMAL ORDERS OF THE COURT AS TO SOME OF

09:37AM  6   THE MOTIONS.

09:37AM  7        I THINK SOME OF THE MOTIONS, AND JUST GIVING YOU SOME

09:37AM  8   DETAIL IN ADVANCE, SOME OF THE MOTIONS MIGHT BE DEFERRED.  SOME

09:37AM  9   OF THE MOTIONS I MIGHT BE ABLE TO RULE ON THEM HERE AND AT

09:37AM  10  LEAST TELL YOU THE COURT'S THINKING ON SOME OF THE MOTIONS, AND

09:37AM  11  OTHERS THAT I'M EAGER TO HEAR YOUR COMMENTS AND FURTHER

09:37AM  12  ASSISTANCE TO THE COURT.

09:37AM  13       NOW, WHAT I WOULD ALSO LIKE TO DO IS WE'RE HERE IN THE

09:37AM  14  COVID CIRCUMSTANCE.  WE HAVE ALL OF THIS PLEXIGLASS, AND

09:37AM  15  MS. SAHARIA TOLD US SHE HAD BENEFITS IN SEEING REFLECTIONS AND

09:38AM  16  THOSE TYPES OF THINGS.

09:38AM  17       WHAT I THOUGHT WE WOULD START WITH IS ALLOWING COUNSEL TO

09:38AM  18  SPEAK FROM THE LECTERNS.  AND LET'S TRY THAT.  I JUST WANT TO

09:38AM  19  SAY THAT THIS IS FOR BENEFIT OF OUR COURT REPORTER AS WELL.

09:38AM  20  WE'RE ALL WEARING MASKS, AND I APPRECIATE THAT.  THIS WOULD

09:38AM  21  BENEFIT THE COURT REPORTER AND ME AS WELL AS FAR AS LISTENING

09:38AM  22  TO YOUR ARGUMENTS.

09:38AM  23       CONCURRENT WITH THAT IS I'M GOING TO ASK OUR COURTROOM

09:38AM  24  DEPUTY TO TURN OFF THE MICROPHONES AT YOUR TABLES SUCH THAT YOU

09:38AM  25  CAN COMMUNICATE, IF YOU WISH, THOSE OF YOU AT THE TABLE CAN

7

09:38AM 1    COMMUNICATE WITH EACH OTHER, AND THAT WILL NOT BE COLLECTED ON

09:38AM 2    THE MICROPHONES.  THAT WILL BE PRIVATE.

09:38AM 3        IF, HOWEVER, COUNSEL WISH TO SPEAK FROM THE TABLES, LET ME

09:38AM 4    KNOW OR LET MS. KRATZMANN KNOW AND SHE CAN TURN YOUR MIKES ON

09:38AM 5    TO ACCOMMODATE THAT.  I'M HAPPY TO DO THAT.

09:38AM 6        ALSO, IF YOU DO SPEAK FROM THE TABLE, AS WELL AS SPEAKING

09:38AM 7    FROM THE LECTERN, I WOULD BE GRATEFUL IF YOU WOULD SPEAK

09:39AM 8    DIRECTLY INTO THE MICROPHONE SO WE CAN CAPTURE WHAT YOU SAY.

09:39AM 9    IT'S A CHALLENGE AS WE'RE GOING FORWARD.

09:39AM 10       THAT'S ONE OF THE REASONS, CANDIDLY, I WANTED US TO GET

09:39AM 11   TOGETHER TO HAVE AN IN-PERSON HEARING SO WE CAN SEE EACH OTHER

09:39AM 12   AND ENJOY OUR FELLOWSHIP AND YOU CAN HELP ME HERE, BUT ALSO SO

09:39AM 13   WE COULD IN ANTICIPATION OF THE TRIAL WE CAN WORK OUT SOME OF

09:39AM 14   THE NUANCES AND CHALLENGES THAT WE'LL BE FACING DURING THE

09:39AM 15   TRIAL.

09:39AM 16       I THINK I INDICATED TO YOU IN OUR LAST HEARING, THAT ZOOM

09:39AM 17   HEARING, THAT IT IS MY HOPE THAT WE WILL HAVE THE TRIAL IN THIS

09:39AM 18   COURTROOM, IN MY COURTROOM AS OPPOSED TO THE CEREMONIAL

09:39AM 19   COURTROOM WHERE I THINK SOME OF YOU HAVE LOOKED AT ALREADY AND

09:39AM 20   GAUGED THAT OUT.

09:39AM 21       BUT IT'S MY HOPE THAT WE WILL HAVE THE TRIAL HERE AND FOR

09:39AM 22   SELFISH REASONS.  I HAVE GREATER COMFORT IN THIS COURTROOM.  I

09:39AM 23   DO THINK THAT IT'S BETTER SUITED FOR OUR NEEDS FOR THE TRIAL.

09:39AM 24   SO I'M GOING TO ENDEAVOR TO MAKE THAT HAPPEN IF AT ALL

09:40AM 25   POSSIBLE.

09:40AM 1          SO THOSE ARE THE ONLY INTRODUCTORY COMMENTS THAT I HAVE.

09:40AM 2          DOES ANYBODY HAVE ANYTHING TO SAY INTRODUCTORYWISE ABOUT

09:40AM 3     ANYTHING THAT I'VE COVERED OR ANY QUESTIONS ABOUT ANYTHING I'VE

09:40AM 4     COVERED?

09:40AM 5               MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

09:40AM 6               MS. SAHARIA:  NO, YOUR HONOR.

09:40AM 7               THE COURT:  MR. DOWNEY, I FEEL LIKE I'M AT

09:40AM 8     WRIGLEY FIELD IN A CHEAP SEAT RIGHT BEHIND A POST HERE.

09:40AM 9               MR. DOWNEY:  LET ME GET UP FROM BEHIND THE POST.

09:40AM 10              THE COURT:  NO, NO.  I JUST DON'T WANT YOU TO BE

09:40AM 11    UNCOMFORTABLE AS I MOVE LEFT AND RIGHT HERE.

09:40AM 12         ALL RIGHT.  THANK YOU VERY MUCH.

09:40AM 13              MR. DOWNEY:  THANK YOU.

09:40AM 14              THE COURT:  AND I WANT TO THANK YOU, TOO, FOR

09:40AM 15    PROVIDING THE SCHEDULE OF HOW WE'LL CONDUCT THE MOTIONS, HOW

09:40AM 16    YOU'D LIKE TO HAVE THE MOTIONS CALLED.  THAT WAS HELPFUL FOR

09:40AM 17    OUR SCHEDULING PURPOSE.

09:40AM 18         SO REFERRING TO THAT SCHEDULE IT APPEARS THAT THE FIRST

09:41AM 19    MOTION TO BE HEARD IS THE GOVERNMENT'S MOTION IN LIMINE

09:41AM 20    NUMBER 1 WHICH IS TO PRECLUDE THE DEFENDANT FROM OFFERING AN

09:41AM 21    IMPROPER DEFENSE OF BLAMING HER VICTIMS, AND I THINK THIS

09:41AM 22    RELATES TO SOMETHING CALLED THE CULTURE OF SILICON VALLEY

09:41AM 23    STARTUPS.

09:41AM 24         SO WHO WILL ARGUE THAT MOTION FOR THE GOVERNMENT.

09:41AM 25              MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

09:41AM   1        JEFF SCHENK FOR THE UNITED STATES ONCE AGAIN.

09:41AM   2        YOUR HONOR, THIS MOTION IS ONE THAT I THINK WE CAN

09:41AM   3   DISPENSE WITH RATHER QUICKLY.  THE PARTIES AGREE THAT INVESTOR

09:41AM   4   OR VICTIM NEGLIGENCE IS NOT A DEFENSE, AND BECAUSE OF THAT

09:41AM   5   THERE'S A LINE OF ARGUMENTS FOR QUESTIONING THAT FOLLOWS FROM

09:41AM   6   THAT AS, THEREFORE, BEING INAPPROPRIATE.  THINGS, FOR INSTANCE,

09:41AM   7   THAT WOULD ATTACK THE DUE DILIGENCE OF A VICTIM INVESTOR WOULD

09:41AM   8   BE INAPPROPRIATE BECAUSE, AGAIN, THE EFFORT OF A VICTIM TO

09:42AM   9   LEARN MORE ABOUT THE INVESTMENT, THE SCHEME, THE OPPORTUNITY

09:42AM  10   REALLY AREN'T RELEVANT AS THE CASE LAW SUGGESTS.

09:42AM  11        AND FLOWING FROM THAT, WE WOULD URGE THE COURT, THEREFORE,

09:42AM  12   TO RULE THAT ARGUMENTS CONCERNING HOW MUCH A VICTIM RELIES ON

09:42AM  13   STATEMENTS MADE TO THAT VICTIM INVESTOR REALLY SHOULD BE

09:42AM  14   PROHIBITED.

09:42AM  15        NOW, THE DEFENSE MAKES A POINT ABOUT ARGUMENTS THAT ARE

09:42AM  16   MADE FOR IMPEACHMENT PURPOSES.  A VICTIM TAKES THE STAND AND

09:42AM  17   TESTIFIES A CERTAIN WAY, THE DEFENSE, THEREFORE, SHOULD BE

09:42AM  18   ALLOWED TO IMPEACH WITH INCONSISTENT FACTS OR STATEMENTS.  AND

09:42AM  19   WE AGREE WITH THAT.

09:42AM  20        WHAT WE ARE SEEKING IS THE COURT TO PRECLUDE ARGUMENTS

09:42AM  21   THAT BLAME THE VICTIMS, THAT SAY THAT THEY DIDN'T DO ENOUGH

09:42AM  22   DUE DILIGENCE INVESTIGATION, THAT THE STATEMENTS THAT WERE MADE

09:42AM  23   TO THE VICTIM DIDN'T CAUSE THE VICTIM TO ACTUALLY INVEST.

09:43AM  24   THOSE KINDS OF ARGUMENTS ARE WHAT THE COURT FROM THIS MOTION

09:43AM  25   SHOULD RULE ON, AND THAT REALLY FLOWS FROM THE LINDSEY CASE.

09:43AM   1      IT'S WITH AN E, L-I-N-D-S-E-Y.  AND IT HAS HELPFUL LANGUAGE FOR

09:43AM   2      THE COURT TO DRAW FROM ABOUT THE ABSENCE OF RELIANCE REALLY NOT

09:43AM   3      BEING A STATEMENT ABOUT WHETHER RELIANCE IS PRESENT IN THE CASE

09:43AM   4      BECAUSE WE DON'T HAVE TO ACTUALLY RELY FOR THE STATEMENTS TO BE

09:43AM   5      MATERIAL.

09:43AM   6           AND NOW I'LL TURN TO WHAT THE COURT NOTED AT THE OUTSET,

09:43AM   7      AND, THAT IS, THERE IS A SECTION IN THE MOTION THAT DISCUSSES

09:43AM   8      THE CULTURE WITHIN SILICON VALLEY.

09:43AM   9           WHAT THE GOVERNMENT IS SEEKING FROM THE COURT WITH REGARD

09:43AM  10      TO THAT POINT IS THAT IT'S NOT RELEVANT, AND THE DEFENSE SHOULD

09:43AM  11      NOT BE ALLOWED TO ARGUE ABOUT WHETHER EXAGGERATION IS COMMON

09:43AM  12      WITHIN SILICON VALLEY AND OTHERS HAVEN'T BEEN CHARGED

09:43AM  13      CRIMINALLY; THAT THE GOVERNMENT CHOSE TO PROSECUTE THIS CASE

09:43AM  14      BUT HASN'T INDICTED OR PROSECUTED COMPANY X OR COMPANY Y, AND

09:43AM  15      THAT COMPANY ENGAGED IN EXAGGERATION IN OVERSTATEMENT.

09:43AM  16           THEY'RE REALLY ASKING THE JURY TO MAKE ITS DETERMINATION

09:44AM  17      BASED ON FACTS NOT BEFORE THEM, NOT BASED ON THE GUILT OR

09:44AM  18      INNOCENCE OF MS. HOLMES ON CERTAIN COUNTS, BUT INSTEAD TO

09:44AM  19      SPECULATE ABOUT GOVERNMENT CHARGING DECISIONS IN CASES THAT ARE

09:44AM  20      NOT BEFORE THE COURT.

09:44AM  21           THE COURT:  COULD THEY -- THANK YOU, MR. SCHENK.

09:44AM  22           COULD THEY, THE DEFENSE THAT IS, COULD THEY SAY OR COULD

09:44AM  23      THEY COMMENT EITHER IN AN OPENING OR IN A CLOSING ARGUMENT OR

09:44AM  24      IN A QUESTION TO A WITNESS, CAN THEY COMMENT THAT IT IS NOT

09:44AM  25      UNUSUAL IN IPO'S OR NEW VENTURES FOR COMPANY REPRESENTATIVES TO

09:44AM 1    EXTOL THE VIRTUES, THE EXCITEMENT, THE NEW TYPE OF PRODUCT WHEN

09:44AM 2    IT'S BEING MARKETED?

09:44AM 3         IS THAT SOMETHING THAT THEY CAN TALK ABOUT?  THAT THAT'S

09:44AM 4    WHAT HAPPENS IN SILICON VALLEY WHEN ZOOM TECHNOLOGY CAME OUT

09:44AM 5    AND EVERYONE EXTOLLED ITS VIRTUES?  IS THAT APPROPRIATE?

09:45AM 6         MR. SCHENK:  NO.  WE WOULD URGE THE COURT TO

09:45AM 7    PROHIBIT THAT KIND OF ARGUMENT, AND THE REASON BEING IS BECAUSE

09:45AM 8    IT'S REALLY ASKING THE JURY TO MAKE ITS DETERMINATION BASED ON

09:45AM 9    FACTORS OTHER THAN THE EVIDENCE PRESENTED TO THE JURY IN THIS

09:45AM 10   CASE REGARDING MS. HOLMES'S INTENT TO DEFRAUD OR KNOWLEDGE,

09:45AM 11   MATERIALITY, REALLY THE ESSENCE OF WHAT ARE STRAIGHTFORWARD

09:45AM 12   CONSPIRACY AND WIRE FRAUD COUNTS.

09:45AM 13        THE COURT:  I WAS CURIOUS WHETHER -- IS IT ALL

09:45AM 14   RIGHT?  WOULD IT BE PERMITTED TO HAVE THAT TYPE OF TESTIMONY OF

09:45AM 15   THIS IS HOW SPONSORS, THIS IS HOW FOUNDERS TALK ABOUT THEIR

09:45AM 16   PRODUCT WITHOUT TALKING ABOUT THE SECOND PART, WHICH IS "AND

09:45AM 17   EVERYBODY DOES IT AND NOBODY ELSE WAS PROSECUTED"?  JUST THE

09:45AM 18   STANDALONE FACT WHEN LARRY ELLISON, FOR EXAMPLE, BEGAN

09:45AM 19   ORACLE -- MAYBE THAT'S A POOR EXAMPLE.

09:45AM 20        WHEN SOMEONE DISCUSSES THEIR NEW PRODUCT, THEIR NEW

09:46AM 21   DESIGN, THEIR NEW IDEA, IT'S COMMON IN SILICON VALLEY FOR

09:46AM 22   PROMOTERS TO ENGAGE IN THAT TYPE OF CONDUCT AND THEN VOCABULARY

09:46AM 23   COMMUNICATION, BUT WITHOUT SAYING THESE OTHER COMPANIES DID

09:46AM 24   THAT SAME THING AND THEY WEREN'T PROSECUTED?

09:46AM 25        MR. SCHENK:  YOUR HONOR, I THINK THAT THE FACTS THAT

09:46AM 1    ARE MISSING FROM THE COURT'S HYPOTHETICAL ARE KNOWLEDGE ON

09:46AM 2    MS. HOLMES'S PART ABOUT THAT CIRCUMSTANCE.

09:46AM 3        IN OTHER WORDS, WHAT THE JURY SHOULD BE ASKED TO DO IS TO

09:46AM 4    EVALUATE KNOWLEDGE AND INTENT OF STATEMENTS MADE BY MS. HOLMES,

09:46AM 5    IN THIS CONTEXT EXAGGERATED STATEMENTS, AND WAS SHE MIMICKING,

09:46AM 6    WAS SHE DOING IT BECAUSE OTHERS WERE DOING IT?  WAS HER INTENT

09:46AM 7    TO DO IT WAS TO COPY THOSE, AND, THEREFORE, SOME OF THE POINTS

09:46AM 8    THAT THE COURT JUST MADE CERTAINLY COULD BECOME MORE RELEVANT.

09:46AM 9        BUT I WOULD SAY IN THE ABSTRACT, THAT IS TRUE, IF WE

09:46AM 10   ACCEPT FOR THE MOMENT THAT IT IS TRUE.  IF IT IS JUST A FACT

09:46AM 11   THAT WITHIN SILICON VALLEY EXAGGERATION OCCURS, THAT ISN'T

09:47AM 12   RELEVANT.  IT HAS TO SOMEHOW BE TIED TO AN ELEMENT THAT IS

09:47AM 13   RELEVANT FOR THIS JURY'S DETERMINATION, AND I WOULD THINK THAT

09:47AM 14   THE MOST LIKELY PLACES FOR THAT TIE TO OCCUR ARE TO KNOWLEDGE

09:47AM 15   OR TO INTENT OF MS. HOLMES.

09:47AM 16       THE COURT:  SO I LOOKED AT THIS -- YOU KNOW, THE

09:47AM 17   INTERESTING THING, MR. SCHENK, AND I THINK YOU AND YOUR

09:47AM 18   COLLEAGUES OPPOSITE RECOGNIZE THIS, IS THAT MANY OF THESE

09:47AM 19   MOTIONS ARE RELATED AND OVERLAP IN A VARIETY OF WAYS.

09:47AM 20       THIS IS ONE WHERE I THOUGHT IT MIGHT OVERLAP WITH -- IF

09:47AM 21   THERE'S EVIDENCE IN FRONT OF THE JURY, AND LET'S FACE IT, THIS

09:47AM 22   JURY IS GOING TO BE HALED FROM SILICON VALLEY, IF THERE'S

09:47AM 23   EVIDENCE THAT THERE IS A, I'LL CALL IT A CULTURE OR AT LEAST

09:47AM 24   THIS IS SOMETHING THAT PROMOTERS DO, AND IF THAT'S PERMITTED,

09:47AM 25   WON'T YOU AND YOUR TEAM BE PERMITTED TO THEN SAY, WELL, WHILE

09:48AM 1  YOU'VE HEARD THAT TYPE OF CONDUCT IS SOMEWHAT NOT UNUSUAL FOR

09:48AM 2  PROMOTERS IN SILICON VALLEY, BUT WHAT IS DIFFERENT FROM THAT IN

09:48AM 3  THIS CASE IS THE DEFENDANT DID X, WOULDN'T YOU BE PERMITTED TO

09:48AM 4  DO THAT?  AND DOESN'T THAT LEVEL THAT PLAYING FIELD SOMEHOW?

09:48AM 5        MR. SCHENK:  YES.  I SEE THE POINT THE COURT IS

09:48AM 6  MAKING.  CERTAINLY IF THE DEFENSE IS ALLOWED TO SAY THAT THE

09:48AM 7  ACTIONS OF THERANOS, OR THE ACTIONS OF MS. HOLMES ARE

09:48AM 8  CONSISTENT WITH ACTIONS TAKEN BY OTHER STARTUPS IN

09:48AM 9  SILICON VALLEY, THE GOVERNMENT CERTAINLY SHOULD BE ALLOWED TO

09:48AM 10  SAY LET'S LOOK A LITTLE BIT MORE CLOSELY AT THAT.  IS WHAT

09:48AM 11  MS. HOLMES OR IS WHAT THERANOS DID EXACTLY LIKE, QUITE LIKE, OR

09:48AM 12  QUITE DIFFERENT FROM THE ACTIONS OF OTHER COMPANIES?

09:48AM 13    I THINK THE COURT IS RIGHT TO POINT THAT OUT, AND I THINK

09:48AM 14  THE COURT IS REFERRING TO OR IS HINTING AT MOTIONS REGARDING

09:48AM 15  TRADE SECRET PRACTICES WHEN IT SAID SOME OF THESE MOTIONS

09:48AM 16  OVERLAP WITH OTHER MOTIONS IN LIMINE THAT ARE NOW BEFORE THE

09:49AM 17  COURT.

09:49AM 18    THE ONE THING I WOULD CAUTION AGAINST THERE IS THE DEFENSE

09:49AM 19  IS PAINTING A VERY BROAD BRUSH WHEN THEY'RE SAYING TRADE SECRET

09:49AM 20  PRACTICES AT THERANOS EXPLAIN SILOING, EXPLAIN THE

09:49AM 21  NONDISCLOSURE -- THE USE OF -- THE AGGRESSIVE USE OF

09:49AM 22  NONDISCLOSURE.

09:49AM 23    AND WHAT I WOULD CAUTION AGAINST IS JUST THE ARGUMENT THAT

09:49AM 24  THE DEFENSE WOULD BE ALLOWED TO SAY LET ME EXPLAIN TO YOU THE

09:49AM 25  CULTURE OF SILICON VALLEY AND WHY THERANOS LOOKS LIKE THAT,

09:49AM  1    LIKE THERANOS FITS WITHIN BECAUSE I THINK WHAT THAT DOES IS THE

09:49AM  2    CART BEFORE THE HORSE IS SAYING WHAT HAS OCCURRED AT THERANOS

09:49AM  3    IS COMMON, IS NORMAL, IS ACCEPTABLE, AND I'M NOT SURE WHICH

09:49AM  4    ELEMENT IT SPEAKS TO.  I'M NOT SURE WHICH OF THE SORT OF

09:49AM  5    DECISIONS THE JURY IS GOING TO HAVE TO MAKE, DOES THAT SORT OF

09:49AM  6    TESTIMONY OR EVEN ARGUMENT CLARIFY FOR THE JURY?

09:49AM  7         THE COURT:  THIS TOUCHES ON, AND I DON'T WANT TO GET

09:50AM  8    AHEAD OF OURSELF, FORGIVE ME, BUT IT TOUCHES ON ONE OF THE

09:50AM  9    MOTIONS ABOUT THE PRECLUSION, THE POTENTIAL PRECLUSION OF

09:50AM  10   EVIDENCE ABOUT LAVISH SPENDING LIFESTYLE, ET CETERA.

09:50AM  11        I THINK THIS IS ONE OF THOSE TYPE OF SITUATIONS WHERE,

09:50AM  12   WELL, IS IT NORMAL FOR CEO'S TO FLY IN PRIVATE PLANES?  TO HAVE

09:50AM  13   CARS THAT ARE DRIVEN BY DRIVERS?  ET CETERA, ET CETERA.  AND

09:50AM  14   THEIR LIFESTYLE, HOW IS THAT DIFFERENT?

09:50AM  15        WELL, THERE MIGHT BE DIFFERENCES.  THIS IS KIND OF THE

09:50AM  16   SAME SITUATION WHERE I LOOK AT THIS AND I THOUGHT, WELL, I

09:50AM  17   THINK THE GOVERNMENT WOULD BE PERMITTED TO, IF THIS EVIDENCE

09:50AM  18   WERE TO COME IN, YOU WOULD BE PERMITTED TO CERTAINLY DRAW THE

09:50AM  19   JURY'S ATTENTION TO EVIDENCE THAT WHILE THAT MIGHT HAVE A

09:50AM  20   CONCURRENT THEME IN SILICON VALLEY, THIS CASE IS DIFFERENT FOR

09:50AM  21   THESE REASONS BECAUSE THIS DEFENDANT DID X, MARKETED THIS AS

09:51AM  22   ALTRUISTIC IN HER DESIRE TO DO SOMETHING, BUT THE ALTRUISM

09:51AM  23   CHANGED BECAUSE OF X, HER LIFESTYLE, THOSE TYPES OF THINGS.

09:51AM  24        I'M NOT SUGGESTING WHAT THE EVIDENCE SHOWS, BUT IT'S THE

09:51AM  25   ARGUMENT THAT YOU WOULD MAKE.  I'M TRYING TO SEE WHETHER OR NOT

09:51AM   1     THAT PROTECTS THE GOVERNMENT FROM THE UNTOWARD ISSUE THAT

09:51AM   2     YOU'RE TALKING ABOUT.

09:51AM   3                MR. SCHENK:  YES, I AGREE WITH THE COURT.  AND WHILE

09:51AM   4     I'M NOT THE ATTORNEY THAT WILL ARGUE THE LIFESTYLE MOTION

09:51AM   5     BEFORE THE COURT, I WOULD NOTE THAT ONE DIFFERENCE THERE IS

09:51AM   6     THAT THE RELEVANCE OF THAT EVIDENCE IS THAT IT SPEAKS DIRECTLY

09:51AM   7     TO INTENT.  ONE HAS AN INTENT TO CONTINUE A SCHEME IF THE

09:51AM   8     SCHEME ENCOURAGES, FOSTERS, AND PAYS FOR A LIFESTYLE THAT ONE

09:51AM   9     APPRECIATES.

09:51AM  10        SO THE ABILITY TO DRAW THE LINE BETWEEN THE EVIDENCE THAT

09:51AM  11     IS IN QUESTION AND THE ELEMENT IS QUITE A DIRECT LINE.

09:51AM  12                THE COURT:  AND I THINK THE GIST OF YOUR MOTION IS

09:52AM  13     THAT MS. HOLMES AND HER TEAM SHOULD NOT BE PERMITTED TO ARGUE

09:52AM  14     TO THE JURY THAT OTHER COMPANIES, OTHER CEO'S, OTHER

09:52AM  15     INDIVIDUALS DO THIS EXACT SAME CONDUCT, AND, THEREFORE,

09:52AM  16     MS. HOLMES SHOULD BE ACQUITTED FOR THAT REASON BECAUSE THEY'RE

09:52AM  17     NOT PROSECUTED.

09:52AM  18                MR. SCHENK:  PRECISELY.

09:52AM  19                THE COURT:  AND I'LL ASK THE DEFENSE WHETHER THAT'S

09:52AM  20     AN ARGUMENT THAT THEY SEEK TO ADVANCE.

09:52AM  21                MR. SCHENK:  PRECISELY.  RIGHT.

09:52AM  22                THE COURT:  ANYTHING ELSE?  I INTERRUPTED YOU WITH

09:52AM  23     MY QUESTION.

09:52AM  24                MR. SCHENK:  NO.  SUBMIT IT.  THANK YOU.

09:52AM  25                THE COURT:  ALL RIGHT.  THANK YOU.

09:52AM  1          MS. ROPER:  GOOD MORNING, YOUR HONOR.

09:52AM  2          THE COURT:  YOU SHOULD STATE YOUR APPEARANCE FOR THE

09:52AM  3     RECORD.

09:52AM  4          MS. ROPER:  YES, YOUR HONOR.

09:52AM  5      SEEMA ROPER ON BEHALF OF MS. HOLMES.

09:52AM  6          THE COURT:  THANK YOU.

09:52AM  7          MS. ROPER:  YOUR HONOR, I'D LIKE TO FIRST TALK ABOUT

09:52AM  8     THE GOVERNMENT'S FIRST PART OF ITS MOTION REGARDING THE CONDUCT

09:52AM  9     -- WHAT IS VICTIM CONDUCT EVIDENCE.

09:52AM 10          THE PARTIES LARGELY SEEM TO BE IN AGREEMENT AS TO THE

09:53AM 11     SCOPE OF ADMISSIBILITY AS TO THIS EVIDENCE.  THE PARTIES AGREE

09:53AM 12     THAT THE EVIDENCE COULD BE ADMITTED IN CERTAIN CIRCUMSTANCES,

09:53AM 13     FOR EXAMPLE, TO SHOW MATERIALITY, TO SHOW AS IMPEACHMENT

09:53AM 14     EVIDENCE.

09:53AM 15          YOUR HONOR, IN THEIR BRIEFS THE GOVERNMENT CITES TO

09:53AM 16     UNITED STATES VERSUS YANG WHERE ANOTHER DISTRICT IN THIS COURT

09:53AM 17     FACING AN IDENTICAL MOTION HELD THAT THIS KIND OF EVIDENCE

09:53AM 18     COULD BE ADMITTED FOR THOSE TWO PURPOSES.

09:53AM 19          WE WOULD ALSO ARGUE, YOUR HONOR, THAT THIS EVIDENCE COULD

09:53AM 20     BE ADMITTED TO SHOW INTENT, A THIRD PURPOSE.  THAT WAS NOT ONE

09:53AM 21     OF THE PURPOSES FOR WHICH THE DEFENDANTS IN YANG HAD PROFFERED

09:53AM 22     TO THE COURT, HOWEVER, I BELIEVE THAT THAT IS ANOTHER

09:53AM 23     ADMISSIBLE PURPOSE FOR THIS EVIDENCE.

09:53AM 24          YOUR HONOR, BECAUSE THE PARTIES AGREE THAT THERE ARE

09:53AM 25     ADMISSIBLE PURPOSES FOR THIS EVIDENCE, A BROAD ORDER DENYING, A

09:54AM 1    BROAD ORDER DENYING THIS EVIDENCE IN WHOLE, OR EXCUSE ME,

09:54AM 2    GRANTING -- DENYING THE ADMISSION OF THIS EVIDENCE IN WHOLE

09:54AM 3    WOULD BE IMPROPER.  I THINK IT WOULD BE INCREDIBLY HARD TO DRAW

09:54AM 4    THE LINES AT THIS TIME WITHOUT THE EVIDENCE BEFORE US.

09:54AM 5         YOUR HONOR, WE REQUEST THAT THE COURT WAIT AND LET THE

09:54AM 6    GOVERNMENT RAISE ITS OBJECTIONS AT TRIAL TO SPECIFIC EVIDENCE.

09:54AM 7              THE COURT:  WELL, LET ME -- I'M SORRY TO INTERRUPT

09:54AM 8    YOU.

09:54AM 9              MS. ROPER:  YES.

09:54AM 10             THE COURT:  LET ME ASK YOU, AS I PROMISED MR. SCHENK

09:54AM 11   I WOULD, ARE YOU GOING TO ARGUE THAT OTHER COMPANIES, OTHER

09:54AM 12   CEO'S, OTHER NEW COMPANIES HAVE ENGAGED IN THIS CONDUCT AND

09:54AM 13   THEY WEREN'T PROSECUTED?

09:54AM 14             MS. ROPER:  I'M SORRY.  YOUR HONOR, I WAS ADDRESSING

09:54AM 15   THE OTHER FIRST.

09:54AM 16        BUT TO YOUR QUESTION, NO, WE DO NOT INTEND TO MAKE THAT

09:54AM 17   ARGUMENT AT TRIAL.  WE ARE NOT GOING TO BE MAKING A SELECTIVE

09:54AM 18   PROSECUTION ARGUMENT DURING TRIAL.

09:54AM 19             THE COURT:  OKAY.

09:54AM 20             MS. ROPER:  WE AGREE WITH THAT, YOUR HONOR.

09:54AM 21        BUT WE DO BELIEVE THAT THAT EVIDENCE ABOUT SILICON VALLEY

09:54AM 22   CULTURE SHOULD BE ADMITTED FOR OTHER PURPOSES, THE SAME

09:54AM 23   PURPOSES OF MATERIALITY, INTENT, IMPEACHMENT.

09:54AM 24             THE COURT:  WHAT IS THE DIFFERENCE, THEN?

09:54AM 25             MS. ROPER:  THE CONDUCT EVIDENCE?

09:54AM  1          THE COURT:  YES.

09:55AM  2          MS. ROPER:  I THINK THEIR -- AND I COULD BE WRONG.

09:55AM  3  THE GOVERNMENT CAN SAY.

09:55AM  4      I THINK THE GOVERNMENT'S MOTION IS GOING BEYOND JUST THE

09:55AM  5  SILICON VALLEY CULTURE EVIDENCE.  I COULD BE WRONG.

09:55AM  6      I THINK THEY'RE TALKING ABOUT OTHER TYPES OF EVIDENCE IN

09:55AM  7  WHICH THE INVESTORS, FOR EXAMPLE, MAY HAVE KNOWN BEYOND JUST --

09:55AM  8  BEYOND WHAT MS. HOLMES MAY HAVE KNOWN ABOUT SILICON VALLEY.  I

09:55AM  9  DON'T THINK THAT THEIR MOTION IS LIMITED.

09:55AM 10      BUT IF IT IS LIMITED TO JUST THAT PURPOSE, AND I COULD BE

09:55AM 11  WRONG, YOUR HONOR, IF IT IS ONLY LIMITED TO THIS CULTURE OF

09:55AM 12  SECRECY, OR EXCUSE ME, THIS SILICON VALLEY CULTURE, THEN

09:55AM 13  YOUR HONOR IS CORRECT, THAT WE WOULDN'T BE ADMITTING IT FOR

09:55AM 14  THAT PURPOSE, ADMITTING IT FOR THE PURPOSE OF A SELECTIVE

09:55AM 15  PROSECUTION ARGUMENT.

09:55AM 16          THE COURT:  SO WHAT IS THE IMPEACHMENT THAT YOU

09:55AM 17  MENTIONED?

09:55AM 18          MS. ROPER:  FOR EXAMPLE, YOUR HONOR, IF SOMEBODY

09:55AM 19  TESTIFIED THAT THEY -- IN SILICON VALLEY NOBODY USES

09:56AM 20  EXAGGERATION, AND WE KNOW THAT IN SILICON VALLEY THAT IS

09:56AM 21  SOMETHING THAT IS DONE, WE WOULD WANT TO ADMIT THAT EVIDENCE TO

09:56AM 22  IMPEACH A WITNESS.

09:56AM 23          THE COURT:  IF A GOVERNMENT WITNESS TESTIFIES THAT

09:56AM 24  THERE'S NEVER BEEN EXAGGERATION IN MARKETING OF A NEW PRODUCT?

09:56AM 25          MS. ROPER:  CORRECT, YOUR HONOR.

09:56AM 1          THE COURT:  I SEE.  THEN YOU WOULD IMPEACH AND SAY,

09:56AM 2     WELL, CERTAINLY.  LET'S TALK ABOUT THE LATE STEVE JOBS, AND YOU

09:56AM 3     COULD JUST PULL ANYBODY OUT AND SAY OF COURSE.

09:56AM 4          MS. ROPER:  ANY OF THE BIG STARTUP COMPANIES, ANY

09:56AM 5     BIG INVESTORS, ANY BIG COMPANIES.  LIKE EARLIER YOU GAVE THE

09:56AM 6     EXAMPLE OF LARRY ELLISON.  EXACTLY.

09:56AM 7          THE COURT:  OKAY.  ALL RIGHT.

09:56AM 8          MS. ROPER:  AT THIS TIME, YOUR HONOR, WE WOULD ASK

09:56AM 9     THE COURT TO DENY THE GOVERNMENT'S MOTION.

09:56AM 10         THE COURT:  OKAY.  THANK YOU.

09:56AM 11      MR. SCHENK.

09:56AM 12         MR. SCHENK:  JUST VERY BRIEFLY, YOUR HONOR.

09:56AM 13      THE GOVERNMENT, FIRST, DOES NOT ANTICIPATE ANYBODY TAKING

09:56AM 14   THE STAND AND CATEGORICALLY SAYING THAT TYPE OF EXAGGERATION IS

09:56AM 15   NOT EXISTENT IN SILICON VALLEY.  SO I DON'T ANTICIPATE THE NEED

09:57AM 16   FOR IMPEACHMENT ON THAT SUBJECT TO BECOME NECESSARY IN THIS

09:57AM 17   TRIAL.

09:57AM 18      OTHER THAN THAT, I'LL SUBMIT TO THE COURT.  I DON'T HAVE

09:57AM 19   ANYTHING TO ADD.

09:57AM 20         THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.

09:57AM 21      WELL, I LOOKED AT THIS MOTION, AND IT SEEMED TO THE COURT

09:57AM 22   THAT WHAT THE GOVERNMENT'S CONCERN WAS, THAT PRIMARILY WAS THAT

09:57AM 23   THE DEFENSE MAY SAY -- AGAIN, COUNSEL PUT IT AS SELECTIVE

09:57AM 24   PROSECUTION -- OTHER PEOPLE, THAT THE CULTURE IN SILICON VALLEY

09:57AM 25   WITH NEW COMPANIES IS THAT THERE'S A LOT OF STATEMENTS, AND WE

09:57AM  1    ALL KNOW THAT THAT'S WHAT HAPPENS.  AND WHY WAS MS. HOLMES

09:57AM  2    PROSECUTED WHEN NOBODY ELSE WAS PROSECUTED FOR SIMILAR CONDUCT?

09:57AM  3        I'M RELIEVED TO HEAR THAT THE DEFENSE IS NOT GOING TO

09:57AM  4    PROFFER THAT ARGUMENT, AND I APPRECIATE THAT.  I THINK IT'S AN

09:57AM  5    INAPPROPRIATE ARGUMENT, AND I THINK THE DEFENSE RECOGNIZES

09:57AM  6    THAT.

09:57AM  7        SO FOR THAT PART OF THE GOVERNMENT'S MOTION, IF THAT'S

09:58AM  8    WHAT YOUR MOTION WAS POINTED TOWARDS, I GRANT THE MOTION AS TO

09:58AM  9    THAT TO PRECLUDE THE DEFENSE FROM ARGUING THAT PARTICULAR

09:58AM  10   ARGUMENT THAT THIS CONDUCT IS SIMILAR AS OTHER SILICON VALLEY

09:58AM  11   COMPANIES ENGAGED IN, AND THEY WERE NOT PROSECUTED, AND,

09:58AM  12   THEREFORE, THE JURY SHOULD CONSIDER THAT.  THAT'S NOT

09:58AM  13   APPROPRIATE.

09:58AM  14       AS TO THE CULTURE OF SILICON VALLEY AND WHAT IS, WHAT IS

09:58AM  15   THAT CULTURE AND HOW MUCH OF THAT SHOULD BE INTRODUCED, I THINK

09:58AM  16   IF THE GOVERNMENT'S MOTION SEEKS TO PRECLUDE ANY TALK ABOUT THE

09:58AM  17   SILICON VALLEY STARTUP CULTURE AND THAT, AND I DON'T THINK

09:58AM  18   THAT'S WHAT YOU'RE ASKING TO DO.  MY SENSE IS THAT THERE'S

09:58AM  19   GOING TO BE SOME NATURAL DISCUSSION ABOUT STARTUP COMPANIES,

09:58AM  20   AND HOW THEY OPERATE, AND WHAT WAS DIFFERENT ABOUT THIS, IF

09:59AM  21   THERE WAS SOMETHING DIFFERENT ABOUT THIS PARTICULAR COMPANY.

09:59AM  22       SO I CAN'T TODAY SAY THAT I'M GOING TO PRECLUDE THAT

09:59AM  23   CONVERSATION BECAUSE I THINK IT ACTUALLY, IT'S PROBABLY

09:59AM  24   INHERENT, SOME OF THE GOVERNMENT'S CASE IS PREDICATED ON THAT.

09:59AM  25       SO I'M NOT GOING TO GIVE A BLANKET EXCLUSION OF THAT.

09:59AM 1    BUT I DO THINK THAT THIS IS SOMETHING THAT THE COURT WILL

09:59AM 2    BE MINDFUL OF AND REVIEW AS THE EVIDENCE COMES IN.

09:59AM 3    AND I THINK IT'S SOMETHING THAT WE'LL RULE ON AS THE

09:59AM 4    EVIDENCE IS INTRODUCED CONCURRENT WITH THE COURT'S ORDER HERE

09:59AM 5    THAT THE DEFENSE IS NOT TO PRESENT THIS ARGUMENT.

09:59AM 6    AND THAT'S WHAT I'LL SAY NOW.  AND AS I SAID, YOU'LL GET

09:59AM 7    MORE INFORMATION IN THE COURT'S FINAL ORDER.

09:59AM 8    ALL RIGHT.  THE NEXT MOTION THAT I SHOW IS, AGAIN, DOCKET

09:59AM 9    588, AND IT'S THE GOVERNMENT'S MOTION NUMBER 2 TO PRECLUDE THE

10:00AM 10   DEFENSE FROM REFERENCING PUNISHMENT IN FRONT OF THE JURY.

10:00AM 11   MR. SCHENK.

10:00AM 12        MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

10:00AM 13   I THINK SIMILARLY WITH THIS ONE WE CAN DISPENSE WITH IT

10:00AM 14   RATHER QUICKLY.  LET ME JUST MAKE A COUPLE OF POINTS.

10:00AM 15   THE FIRST IS THAT THE PARTIES AGREE THAT STATEMENTS

10:00AM 16   REGARDING PUNISHMENT, PENALTIES THE DEFENDANT MAY FACE, ARE

10:00AM 17   INAPPROPRIATE.  AND AS THE COURT KNOWS, THIS IS A STANDARD

10:00AM 18   MOTION IN LIMINE FILED IN MANY CASES.  WHERE THE PARTIES SEEM

10:00AM 19   TO PART WAYS IS WHAT IN THE BRIEFING IS SORT OF CALLED THE

10:00AM 20   "MORE SUBTLE REFERENCES TO PUNISHMENT," FOR INSTANCE, THE

10:00AM 21   PHRASE "SERIOUS CONSEQUENCES."

10:00AM 22   AND SO THERE'S EASY STEPS, AND, THAT IS, NO REFERENCE TO

10:00AM 23   PUNISHMENT, SIGNIFICANT TIME, FELONY, THINGS LIKE THAT.  IT'S

10:00AM 24   INAPPROPRIATE TO ASK THE JURY TO EVALUATE SOMETHING THAT ISN'T

10:00AM 25   BEFORE THEM, AND IT'S CLEARLY THE PROVINCE OF THE COURT SHOULD

10:00AM  1    WE GET TO THAT KIND OF STATEMENT.

10:00AM  2         FOR THE MORE CHALLENGING TOPIC, THE SUBTLE REFERENCES TO

10:01AM  3    PUNISHMENT, THE REASON THE COURT SHOULD PROHIBIT THOSE, IS

10:01AM  4    BECAUSE THE SAME LOGIC APPLIES.  THE REASON YOU DON'T PUT

10:01AM  5    PUNISHMENT IN FRONT OF THE JURY IS BECAUSE YOU WANT THEM TO

10:01AM  6    MAKE THEIR DECISION BASED ON RELEVANT EVIDENCE PUT BEFORE THEM.

10:01AM  7    DID THE GOVERNMENT MEET ITS BURDEN OF PROVING THE ELEMENTS

10:01AM  8    BEYOND A REASONABLE DOUBT?

10:01AM  9         AND TO ALLOW THE JURY TO HEAR WHAT ARE THE MORE SUBTLE

10:01AM  10   REFERENCES, "SERIOUS CONSEQUENCES," FOR INSTANCE, FAILS FOR THE

10:01AM  11   SAME REASON.  IT ASKS THE JURY TO EVALUATE EVIDENCE AND TO,

10:01AM  12   THEREFORE, BE INFECTED BY FACTS THAT ARE AREN'T, QUESTIONS OF

10:01AM  13   WHETHER THIS ELEMENT WAS PROVEN OR WHETHER THIS ELEMENT WAS NOT

10:01AM  14   PROVEN.

10:01AM  15        NOW, THERE IS A CASE FROM JUDGE ORRICK, AN ORDER FROM

10:01AM  16   JUDGE ORRICK IN 2017.

10:01AM  17             THE COURT:  WAY UP IN SAN FRANCISCO?

10:01AM  18             MR. SCHENK:  IT COULDN'T BE FURTHER FROM US.

10:01AM  19        AND I WOULD URGE THE COURT FOR TWO REASONS NOT TO FOLLOW

10:01AM  20   IT.  FIRST, THAT CASE HAD COOPERATORS WHO HAD PLED GUILTY AND

10:02AM  21   WERE GOING TO TESTIFY.  SO PUNISHMENT PENALTIES WERE COMING IN,

10:02AM  22   IN THE TRIAL.  THAT IS NOT THE CASE HERE.

10:02AM  23        THE SECOND REASON IS SUBTLE REFERENCES TO PUNISHMENT SUCH

10:02AM  24   AS "SERIOUS CONSEQUENCES" REALLY ARE STILL REFERENCES TO

10:02AM  25   PUNISHMENT.  AND JUDGE ORRICK SORT OF ACCEPTS BUT DOESN'T

10:02AM 1    EXPLAIN WHY THERE'S A DISTINCTION BETWEEN THE TWO.  AND I THINK

10:02AM 2    THAT THE BETTER ARGUMENT REALLY IS THAT "SERIOUS CONSEQUENCES"

10:02AM 3    IS JUST LIKE SAYING A LARGE AMOUNT OF PRISON OR A FELONY OR

10:02AM 4    SOME OF THE OTHER CLEARLY INAPPROPRIATE ARGUMENTS TO MAKE.

10:02AM 5        WE WOULD ASK THE COURT TO CHART ITS OWN PATH AND NOT

10:02AM 6    FOLLOW THE NONBINDING FROM JUDGE ORRICK, AGAIN, NOTING THAT

10:02AM 7    MOST OF THE TYPES OF ARGUMENTS THAT THE PARTIES AGREE ON HERE

10:02AM 8    IT WOULD BE INAPPROPRIATE TO MAKE REFERENCE TO.

10:02AM 9            THE COURT:  THANK YOU.

10:03AM 10           MS. ROPER:  THANK YOU, YOUR HONOR.

10:03AM 11       YOUR HONOR, MS. HOLMES ACKNOWLEDGES THAT IT WOULD BE

10:03AM 12   INAPPROPRIATE TO IDENTIFY THE PARTICULARS OF A PUNISHMENT THAT

10:03AM 13   SHE FACES, FOR EXAMPLE, SPECIFIC TERM OF IMPRISONMENT.

10:03AM 14       BUT THE GOVERNMENT'S MOTION GOES TOO FAR IN ASKING FOR

10:03AM 15   WHAT THEY CALL THESE "SUBTLE REFERENCES TO PUNISHMENT" BECAUSE

10:03AM 16   THEY ARE NOT IN FACT REFERENCES TO PUNISHMENT AT ALL.

10:03AM 17   CONSEQUENCES TO A DEFENDANT EXTENDS BEYOND JUST THE TIME THAT

10:03AM 18   THEY FACE IN PRISON.

10:03AM 19       THE GOVERNMENT HAS NOT IDENTIFIED ANY CASES IN WHICH A

10:03AM 20   COURT HAS GRANTED THIS BROAD MOTION OVER THE OBJECTION OF

10:03AM 21   DEFENSE COUNSEL.  IN FACT, IT ONLY CITES TO CASES IN WHICH THE

10:03AM 22   COURTS HAVE PROHIBITED DIRECT REFERENCES TO PUNISHMENT.

10:03AM 23       TWO COURTS IN THIS DISTRICT HAVE DENIED IDENTICAL

10:03AM 24   GOVERNMENT MOTIONS SEEKING TO EXCLUDE REFERENCES THAT THEY TERM

10:03AM 25   TO BE "SUBTLE REFERENCES TO PUNISHMENT."

10:03AM  1              THE COURT:  WELL, IS IT THE DEFENSE THOUGHT THAT YOU

10:03AM  2      WOULD RAISE IN A SUBTLE MANNER SOMETHING LIKE "THIS CASE HAS

10:04AM  3      SERIOUS CONSEQUENCES TO MS. HOLMES"?

10:04AM  4          IS THAT WHAT YOU INTEND TO DO?

10:04AM  5              MS. ROPER:  YOUR HONOR, I THINK, FOR EXAMPLE,

10:04AM  6      PROSECUTORS, DEFENSE COUNSEL LIKE OFTEN AT THE BEGINNING OF THE

10:04AM  7      TRIAL, PERHAPS IN THEIR OPENING OR IN THEIR CLOSING STATEMENT

10:04AM  8      AT THE END OF THE TRIAL WILL REMIND JURORS ABOUT THEIR SERIOUS

10:04AM  9      RESPONSIBILITY, THEIR SOLEMN OATH IN THE CASE.  THEY MAY REMIND

10:04AM 10      JURORS TO PAY SPECIFIC ATTENTION BECAUSE THE CASE HAS SERIOUS

10:04AM 11      CONSEQUENCES TO THE DEFENDANT.  I DON'T THINK --

10:04AM 12              THE COURT:  THAT'S WHERE THIS COMES IN.  IT'S

10:04AM 13      ARGUMENT.  IT'S NOT EVIDENCE, IT'S ARGUMENT.

10:04AM 14          THE QUESTION IS, IS IT INAPPROPRIATE ARGUMENT?

10:04AM 15          ISN'T IT COMMON KNOWLEDGE THAT ANY FEDERAL CRIMINAL

10:04AM 16      PROSECUTION IS A SERIOUS MATTER?

10:04AM 17              MS. ROPER:  CORRECT, YOUR HONOR.  THERE'S -- AND

10:04AM 18      THAT'S MY POINT.  THESE ARE CONSEQUENCES THAT EXTEND BEYOND

10:04AM 19      JUST GOING TO PRISON.  THIS IS SOMETHING THAT STAYS WITH

10:04AM 20      SOMEONE AS A CONVICTED FELON FOR THE REST OF THEIR LIFE WHETHER

10:04AM 21      THEY --

10:04AM 22              THE COURT:  WELL, THAT'S PART OF PUNISHMENT, TOO,

10:04AM 23      ISN'T IT?  YOU TALK ABOUT MAYBE FINES AND THOSE TYPES OF

10:04AM 24      THINGS.  THAT IS PART OF PUNISHMENT.

10:05AM 25              MS. ROPER:  I THINK, YOUR HONOR, THE CONCERN THAT

10:05AM 1    THE CASES HAVE, FOR EXAMPLE, IN U.S. VERSUS SHANNON, THE

10:05AM 2    CONCERN IS ACTUALLY THAT THEY JURY WILL GO BEYOND THEIR ROLE AS

10:05AM 3    FACT FINDER AND TRY TO GET INTO YOUR HONOR'S ROLE AT THE END OF

10:05AM 4    THE CASE, IF IT GETS INTO THE SECOND PHASE, AT SENTENCING.

10:05AM 5        THESE PHRASES, THESE REFERENCES TO THE SERIOUSNESS OF THE

10:05AM 6    CASE, THEY DON'T ASK THE JURY TO STEP INTO THAT ROLE.  THEY

10:05AM 7    DON'T DISTRACT THE JURY FROM THINKING ABOUT WHAT THE POSSIBLE

10:05AM 8    SENTENCE MIGHT BE AT THE END OF THE TRIAL.  THAT'S THE

10:05AM 9    DIFFERENCE BETWEEN THE TWO, AND IT'S A SUBTLE DIFFERENCE.

10:05AM 10        THE COURT:  SO THIS CASE HAS SERIOUS CONSEQUENCES

10:05AM 11   FOR MY CLIENT IS WHAT YOU'RE SUGGESTING YOUR TEAM MIGHT PUT

10:05AM 12   BEFORE THE JURY EITHER IN OPENING OR CLOSING?

10:05AM 13        MS. ROPER:  PERHAPS, YOUR HONOR.  AND IN CONTEXT FOR

10:05AM 14   THE EXAMPLE THAT I GAVE, IN THE CONTEXT OF WHY IT'S VERY

10:05AM 15   IMPORTANT FOR THE JURY TO PAY ATTENTION, TO REMEMBER THEIR

10:05AM 16   OATH.

10:05AM 17        YOUR HONOR, AGAIN, THIS U.S. V. WILLIAMS AND U.S. V.

10:06AM 18   GAINES, TWO DIFFERENT DISTRICT COURTS IN THIS DISTRICT, WHO

10:06AM 19   FACE IDENTICAL MOTIONS FOUND TWO TYPES OF STATEMENTS.

10:06AM 20        THE CASE HAS SERIOUS CONSEQUENCES FOR THE DEFENDANT OR

10:06AM 21   YOUR DECISION WILL HAVE CONSEQUENCES ARE DIFFERENT THAN THOSE

10:06AM 22   THAT ARE PROHIBITED UNDER THE LAW.

10:06AM 23        THE COURT:  WHAT IS IT THAT THE DEFENSE SEEKS TO

10:06AM 24   GAIN BY INFORMING EITHER OF THOSE TWO STATEMENTS?  WHAT DO YOU

10:06AM 25   THINK THAT DOES?

10:06AM  1           MS. ROPER:  YOUR HONOR, IT'S JUST A REMINDER TO THE

10:06AM  2  JURY THAT THESE ARE -- THIS IS A SIGNIFICANT MATTER.  IT'S

10:06AM  3  GOING TO BE A LONG TRIAL.  WE WANT TO MAKE SURE THAT THE JURORS

10:06AM  4  UNDERSTAND AND APPRECIATE THAT THIS IS AN IMPORTANT CASE AND

10:06AM  5  THAT THEY SHOULD BE PAYING ATTENTION THROUGH THIS TRIAL.

10:06AM  6  THAT'S THE GOAL.

10:06AM  7           THE COURT:  SO A PHRASE LIKE THAT, I DON'T THINK THE

10:06AM  8  GOVERNMENT WOULD HAVE ANY OBJECTION IF YOU SAID "THIS IS AN

10:06AM  9  IMPORTANT CASE."

10:07AM  10    I THINK THEIR OBJECTION IS "THIS IS AN IMPORTANT CASE

10:07AM  11  BECAUSE IT HAS SERIOUS CONSEQUENCES FOR MY CLIENT."

10:07AM  12           MS. ROPER:  YOUR HONOR, I APPRECIATE THAT THAT'S THE

10:07AM  13  CONCERN.  I DON'T THINK THAT THAT PHRASE IS A REFERENCE TO THE

10:07AM  14  PUNISHMENT SHE SEEKS -- OR THAT SHE MAY FACE, AND I DON'T

10:07AM  15  BELIEVE THAT THE LAW PROHIBITS ANYTHING MORE THAN JUST THESE

10:07AM  16  DIRECT REFERENCES TO PUNISHMENT.

10:07AM  17           THE COURT:  WELL, I DON'T KNOW WHY -- I JUST DON'T

10:07AM  18  UNDERSTAND WHY YOUR TEAM WOULD WANT TO FLIRT WITH THE MARGINS

10:07AM  19  OF THIS.  YOU KNOW, AND YOUR TEAM KNOWS, THAT YOU CAN'T GET UP

10:07AM  20  AND SAY, "PLEASE BE CAREFUL BECAUSE MY CLIENT CAN GO TO PRISON

10:07AM  21  DEPENDING ON YOUR JUDGMENT."  YOU CAN'T DO THAT.  YOU'RE NOT

10:07AM  22  GOING TO.

10:07AM  23           MS. ROPER:  I AGREE, YOUR HONOR, WE'RE NOT GOING TO

10:07AM  24  BE SAYING THAT.

10:07AM  25           THE COURT:  NOBODY IS GOING TO BE SAYING THAT.

10:07AM 1     RIGHT.

10:08AM 2          AND I SOMETIMES AM CURIOUS ABOUT WHY THIS CONVERSATION,

10:08AM 3     AGAIN, IS WHAT I CALL IS AT THE MARGINS?  WHAT DOES THAT REALLY

10:08AM 4     SEEK TO DO?

10:08AM 5          I UNDERSTAND, AS YOU PUT IT, IT REMINDS THEM OF THEIR

10:08AM 6     SOLEMN OATH THAT THE SERIOUSNESS OF THE WORK THAT THEY MUST DO,

10:08AM 7     WHICH IS APPROPRIATE.  I THINK THAT IS ENTIRELY APPROPRIATE,

10:08AM 8     THE SERIOUS NATURE OF THE WORK THAT THEY DO.

10:08AM 9          WE'RE GOING TO TAKE PEOPLE OUT OF THEIR HOMES AND JOBS FOR

10:08AM 10    SEVERAL WEEKS, AND IT'S A COMMITMENT TO THE JUSTICE SYSTEM, AND

10:08AM 11    THE OATH THAT THEY'LL TAKE AS JURORS TO LISTEN TO THIS

10:08AM 12    EVIDENCE, AND KEEP AN OPEN MIND THROUGHOUT THE TRIAL.

10:08AM 13          MS. ROPER:  EXACTLY, YOUR HONOR.

10:08AM 14          THE COURT:  AND I ENCOURAGE THE PARTIES TO REMIND

10:08AM 15    THE JURY OF THEIR SOLEMN OATH.

10:08AM 16          WHEN WE START TO GET A LITTLE AT THE MARGINS, AS I SAY, IS

10:08AM 17    IF THE JURY IS TRYING TO BE AFFECTED IN SOME WAY TO NOT JUST

10:09AM 18    LOOK AT THE OATH THAT THEY HAVE TAKEN, BUT ALSO TO LOOK AT

10:09AM 19    CONSEQUENCES OF THEIR DECISION IN A WAY THAT IS INAPPROPRIATE

10:09AM 20    THAT REFERENCES PUNISHMENT.

10:09AM 21          AND I THINK LAWYERS HAVE -- DEFENSE LAWYERS, AS YOU KNOW,

10:09AM 22    I DON'T WANT TO SAY "STRUGGLED," BUT HAVE DEALT WITH THIS ISSUE

10:09AM 23    OVER THE DECADES.  HOW MUCH CAN WE SAY?  AND WHAT SHOULD WE

10:09AM 24    STAY AWAY FROM?

10:09AM 25          SO I APPRECIATE YOUR COMMENTS.  I RECOGNIZE THE

10:09AM 1    GOVERNMENT'S COMMENTS.  AND I RECOGNIZE YOUR COMMITMENT, YOUR

10:09AM 2    TEAM'S COMMITMENT THROUGH RECOGNIZING THAT IT'S INAPPROPRIATE

10:09AM 3    TO PUT PUNISHMENT IN FRONT OF THE JURY EITHER IN AN OPENING

10:09AM 4    STATEMENT OR A CLOSING ARGUMENT, AND I'LL HOLD YOUR TEAM TO

10:09AM 5    THAT.

10:09AM 6         UNLESS THERE'S ANYTHING FURTHER FROM MR. SCHENK?

10:09AM 7              MR. SCHENK:  NO.  SUBMIT IT, YOUR HONOR.

10:09AM 8              THE COURT:  ANYTHING FURTHER?

10:09AM 9              MS. ROPER:  THANK YOU, YOUR HONOR.

10:09AM 10             THE COURT:  I WILL GRANT THE MOTION.  I WILL GRANT

10:09AM 11   THE MOTION AS TO THE DEFENSE IS NOT PERMITTED TO PUT PUNISHMENT

10:10AM 12   DIRECTLY IN FRONT OF THE JURY.  THAT'S NOT APPROPRIATE.

10:10AM 13        AND THE DEFENSE WILL, AND I BELIEVE THEY KNOW WHAT TO DO

10:10AM 14   HERE, BUT THEY SHOULD CHOOSE THEIR PHRASING CAREFULLY WHEN

10:10AM 15   MAKING COMMENTS AND CAUTIOUSLY WHEN TALKING ABOUT THE NATURE OF

10:10AM 16   THE CASE.

10:10AM 17        I'M NOT GOING TO RULE SPECIFICALLY ON WHAT YOU CAN'T SAY

10:10AM 18   THIS, AND THE CASE HAS SERIOUS CONCERNS FOR MY CLIENT.  BUT I

10:10AM 19   THINK YOU'VE HEARD ME COMMENT ON THIS.

10:10AM 20        AND I DO HAVE SOME CONCERNS ABOUT REFERENCE TO PUNISHMENT,

10:10AM 21   SUBTLE OR NOT.  A SUBTLE REFERENCE, AS MR. SCHENK POINTS OUT,

10:10AM 22   IS NONETHELESS A REFERENCE.

10:10AM 23        SO I APPRECIATE YOUR TELLING ME THAT YOU KNOW HOW TO, AND

10:10AM 24   YOUR TEAM, KNOW HOW TO CONDUCT YOURSELVES ON THIS.

10:10AM 25        ALL RIGHT.  THANK YOU.

10:10AM 1    I THINK NEXT IS 588, GOVERNMENT'S MOTION IN LIMINE

10:11AM 2 NUMBER 3, AND THIS IS TO PRECLUDE AN IMPROPER ADVICE-OF-COUNSEL

10:11AM 3 DEFENSE.

10:11AM 4    MR. SCHENK, YOU HAVE THIS ONE AS WELL.

10:11AM 5     MR. SCHENK:  I DO, YOUR HONOR.  THANK YOU.

10:11AM 6    WHEN THE COURT BEGAN THIS MORNING WITH THE INTRODUCTORY

10:11AM 7 COMMENTS THAT NOTED THAT THERE MIGHT BE SOME MOTIONS THAT IT

10:11AM 8 WOULD CHOOSE TO DEFER RULING ON, AND AT THE RISK OF CONCEDING

10:11AM 9 TOO MUCH, MAYBE THIS IS ONE THAT THE COURT WOULD CONSIDER

10:11AM 10 DEFERRING RULING ON.

10:11AM 11    THE GOVERNMENT REALLY IS ASKING FOR TWO THINGS HERE, AND

10:11AM 12 THEY BOTH INVOLVE STATEMENTS THAT ATTORNEYS MADE.

10:11AM 13    THE FIRST IS AN ORDER FROM THE COURT PRECLUDING MS. HOLMES

10:11AM 14 FROM OFFERING TESTIMONY REGARDING STATEMENTS THAT ATTORNEYS

10:11AM 15 MADE DURING THE COURSE OF THE TRIAL.  THERE ARE DIFFERENT RULES

10:11AM 16 OF EVIDENCE TO ADMIT STATEMENTS IF THE GOVERNMENT WAS OFFERING

10:11AM 17 THEM IN THEIR CASE-IN-CHIEF VERSUS THE DEFENSE, BUT

10:11AM 18 ADDITIONALLY, THE DEFENSE CONTINUES TO MAINTAIN PRIVILEGE

10:11AM 19 EXISTS BETWEEN HER AND MANY LAWYERS.  AND IT'S CERTAINLY HER

10:11AM 20 RIGHT, AND WE DON'T OBJECT TO THAT EXCEPT, AS THE COURT KNOWS,

10:11AM 21 THERE'S A PENDING MOTION BEFORE JUDGE COUSINS ON THAT ISSUE.

10:12AM 22    BUT LEAVING THAT ASIDE, WHAT WE'RE CONCERNED ABOUT IS

10:12AM 23 SWORD AND SHIELD.  IT CAN'T BOTH BE THE CASE THAT A PRIVILEGE

10:12AM 24 IS MAINTAINED AND THAT LAWYERS OR STATEMENTS LAWYERS HAVE MADE

10:12AM 25 ARE SOLICITED FOR THE BENEFIT OF THE JURY, FOR THE JURY TO

10:12AM 1    HEAR, AND THAT'S WHY WE WANTED TO BRIEF THE ISSUE AND RAISE IT

10:12AM 2    FOR THE COURT BECAUSE IT SHOULDN'T WORK BOTH WAYS.  A LANE

10:12AM 3    SHOULD BE CHECKED.

10:12AM 4         THE SECOND, AND I WOULD ADVOCATE EVEN AMONG THESE TWO, THE

10:12AM 5    ONE THAT IS MORE APPROPRIATE FOR THE COURT TO DEFER RULING ON

10:12AM 6    IS THE ONE INVOLVING JURY INSTRUCTIONS AND WHETHER MS. HOLMES

10:12AM 7    GETS AN INSTRUCTION REGARDING GOOD FAITH OR WHAT IS SOMETIMES

10:12AM 8    CALLED ADVICE OF COUNSEL.  AND IT'S TRUE THAT THE CASES

10:12AM 9    CERTAINLY SUGGEST THAT THE COURT SHOULD WAIT TO DETERMINE JURY

10:12AM 10   INSTRUCTIONS UNTIL IT HEARS EVIDENCE, AND WE DON'T DISPUTE THAT

10:12AM 11   AT ALL.

10:12AM 12        WHAT WE NOTE ONLY IS THAT OFTEN THE CASES THAT SUPPORT

10:12AM 13   GIVING EITHER GOOD FAITH OR ADVICE OF COUNSEL DO SO AFTER THE

10:12AM 14   DEFENSE MEETS CERTAIN ELEMENTS.  FULL DISCLOSURE TO THE LAWYER

10:13AM 15   BY THE DEFENDANT REGARDING THE FACTS AND CIRCUMSTANCES AND THEN

10:13AM 16   THOSE -- THAT DISCLOSURE LEADING TO CERTAIN ADVICE BEING GIVEN.

10:13AM 17        NONE OF THAT HAS BEEN PROVIDED TO THE GOVERNMENT YET.

10:13AM 18   THERE'S BEEN NO NOTICE GIVEN TO THE GOVERNMENT.  AND IT APPEARS

10:13AM 19   THAT THE DEFENSE ISN'T PLANNING TO PURSUE AN ADVICE OF COUNSEL

10:13AM 20   DEFENSE.  FINE.

10:13AM 21        AGAIN, WE FILED A MOTION TO PROVIDE BENEFIT TO THE COURT

10:13AM 22   SO THE COURT HAS THE BRIEFING AT THE TIME THAT THIS ISSUE

10:13AM 23   SHOULD EVER BECOME RIPE.  IT WOULD BE APPROPRIATE TO DEFER

10:13AM 24   RULING CERTAINLY ON THE SECOND OF THOSE.

10:13AM 25             THE COURT:  ALL RIGHT.  THANK YOU.

10:13AM 1          MR. SCHENK:  THANK YOU.

10:13AM 2          MR. WADE:  GOOD MORNING, YOUR HONOR.

10:13AM 3      LANCE WADE FOR MS. HOLMES.  IT'S NICE TO SEE YOU.

10:13AM 4          THE COURT:  GOOD MORNING.

10:13AM 5          MR. WADE:  THEY LET ME UP HERE FROM THE CHEAP SEATS

10:13AM 6   TO ADDRESS THE COURT.  I WILL DO IT BRIEFLY.

10:13AM 7      WE AGREE WITH THE GOVERNMENT THAT THEY SHOULD BE DEFERRED

10:14AM 8   OR WHATEVER THE LAW IS WITH RESPECT TO THE ADVICE OF COUNSEL

10:14AM 9   INSTRUCTION.  I THINK WE ALL RECOGNIZE THAT LAWYER EVIDENCE MAY

10:14AM 10  BE IN THIS CASE, AND WE SHOULD DEAL WITH THAT AS IT COMES.

10:14AM 11     IF YOU HAVE ANY QUESTIONS, I'M HAPPY TO ADDRESS IT.

10:14AM 12         THE COURT:  NO.  ALL RIGHT.  WELL, THE ONLY QUESTION

10:14AM 13  I HAD IS, MR. WADE, THESE ARE THE FEWEST WORDS THAT YOU HAVE

10:14AM 14  SPOKEN IN THIS CASE.  I'LL JUST MAKE THAT OBSERVATION.

10:14AM 15     (LAUGHTER.)

10:14AM 16         MR. WADE:  WE'RE OFF TO AN AUSPICIOUS START,

10:14AM 17  YOUR HONOR.

10:14AM 18         THE COURT:  THANK YOU VERY MUCH.

10:14AM 19     ANYTHING FURTHER, MR. SCHENK?

10:14AM 20         MR. SCHENK:  NO, YOUR HONOR.

10:14AM 21         THE COURT:  WELL, I APPRECIATE YOU FILING THIS

10:14AM 22  MOTION AND DRAWING THE ISSUE TO THE COURT'S ATTENTION.  WHETHER

10:14AM 23  OR NOT THE, AS IT'S PHRASED, THE ATTORNEY ADVICE OR VICE OF

10:14AM 24  ATTORNEY DEFENSE IS GOING TO BE ADVANCED OR NOT IS YET TO BE

10:14AM 25  KNOWN.

10:14AM 1      I THINK MR. WADE TELLS US THAT HIS TEAM UNDERSTANDS THE

10:14AM 2  PREREQUISITES FOR DOING SO.  MY SENSE IS THAT IF THEY INTEND TO

10:14AM 3  ADVANCE THAT, THAT THEY'LL MEET THE PREREQUISITES.

10:14AM 4      THANK YOU, COUNSEL, FOR POINTING OUT THAT THIS IS AN

10:14AM 5  APPROPRIATE MOTION TO DEFER.  THE COURT WILL DEFER ITS RULING

10:15AM 6  ON THE GOVERNMENT'S MOTION PENDING EVIDENCE OTHERWISE THAT

10:15AM 7  SUPPORTS IT.  OKAY.  THANK YOU.

10:15AM 8      LET'S MOVE TO THIS IS MS. HOLMES'S MOTION.  THIS IS DOCKET

10:15AM 9  563.  AND I ALSO BELIEVE THAT IT TOUCHES ON THE GOVERNMENT'S

10:15AM 10  MOTION IN LIMINE NUMBER 10.  IT SEEMS LIKE THESE TWO MAY HAVE

10:15AM 11  SOME CROSSOVER ISSUES.  BUT LET'S TURN TO 563.  THIS IS

10:15AM 12  MS. HOLMES'S MOTION TO EXCLUDE EVIDENCE OF ANECDOTAL TEST

10:15AM 13  RESULTS.

10:15AM 14          MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

10:15AM 15      MR. WADE IS ACTUALLY GOING TO BE THE ONE TO ADDRESS THIS

10:15AM 16  MOTION, BUT AS YOUR HONOR INDICATED EARLIER, THERE IS A LOT OF

10:15AM 17  OVERLAP ACROSS THE DEFENSE MOTIONS AND THE GOVERNMENT MOTIONS,

10:15AM 18  AND WE THOUGHT IT COULD BE HELPFUL TO SPEND A FEW MINUTES

10:15AM 19  PROVIDING FACTUAL BACKGROUND THAT CROSSES ALL OF THE MOTIONS,

10:16AM 20  WHICH I THINK WILL HELP SAVE SOME TIME IN INDIVIDUAL MOTIONS.

10:16AM 21      SO WITH THE COURT'S INDULGENCE, I THOUGHT I WOULD PROVIDE

10:16AM 22  THAT IF THAT'S OKAY WITH YOU?

10:16AM 23          THE COURT:  SURE.  THAT'S FINE.  THANK YOU.

10:16AM 24          MS. SAHARIA:  SO MUCH OF THE GOVERNMENT'S CASE AND

10:16AM 25  THE MOTIONS CONCERN THERANOS'S BLOOD TESTING SERVICES THAT IT

10:16AM  1      PROVIDED FROM LATE 2013 TO LATE 2016.  SO I THOUGHT I WOULD

10:16AM  2      JUST DESCRIBE HOW AT A HIGH LEVEL THOSE OPERATIONS OCCURRED AT

10:16AM  3      THERANOS DURING THAT TIME.

10:16AM  4           THERANOS OPERATED TWO FEDERALLY CERTIFIED CLINICAL

10:16AM  5      LABORATORIES.  ONE IN ARIZONA AND ONE IN CALIFORNIA.  THEY

10:16AM  6      GENERALLY OPERATED IN THE FOLLOWING WAY:

10:16AM  7           BLOOD WOULD BE COLLECTED AT APPROXIMATELY 40 DIFFERENT

10:16AM  8      LOCATIONS WHICH WERE PRIMARILY WALGREENS PHARMACIES.

10:16AM  9           THE BLOOD WAS COLLECTED IN TWO PRIMARY WAYS DEPENDING ON

10:16AM  10     WHICH ASSAY WAS GOING TO BE CONDUCTED AND OTHER FACTORS.

10:17AM  11          BLOOD WOULD SOMETIMES BE DRAWN FROM THE VEIN USING

10:17AM  12     TRADITIONAL VENOUS COLLECTION WITH A NEEDLE.

10:17AM  13          SOMETIMES BLOOD WOULD BE COLLECTED FROM A FINGERSTICK.

10:17AM  14          THE BLOOD WOULD THEN BE TRANSPORTED FROM THAT COLLECTION

10:17AM  15     SITE TO ONE OF THOSE TWO LABORATORIES.

10:17AM  16          THE TESTING OF THE BLOOD THEN OCCURRED IN ONE OF THREE

10:17AM  17     PRINCIPAL WAYS, AND WE'RE GOING TO TALK A LOT ABOUT THOSE THREE

10:17AM  18     WAYS OVER THE COURSE OF THESE ARGUMENTS.

10:17AM  19          THE FIRST IS THAT SOME ASSAYS WERE RUN ON TRADITIONAL

10:17AM  20     COMMERCIAL DEVICES THAT THERANOS PURCHASED FROM THIRD PARTIES.

10:17AM  21     YOU'LL HEAR THESE REFERRED TO AS COMMERCIAL DEVICES OR PERHAPS

10:17AM  22     FDA APPROVED DEVICES, AND THAT SIMPLY MEANS THAT THE FDA

10:17AM  23     APPROVED THAT THIRD PARTY MANUFACTURER TO SELL ITS DEVICES TO

10:17AM  24     OTHER COMPANIES LIKE THERANOS.  SO THAT'S WAY NUMBER ONE THAT

10:17AM  25     BLOOD WAS TESTED.

10:17AM 1      THE SECOND WAY IS THAT THERANOS USED ITS OWN PROPRIETARY

10:18AM 2 ANALYZERS TO TEST BLOOD AS LABORATORY DEVELOPED TESTS THAT IT

10:18AM 3 DEVELOPED ITSELF.  AND WE CALL THOSE DEVICES TSPU'S.  THAT

10:18AM 4 STANDS FOR THERANOS SAMPLE PROCESSING UNIT.

10:18AM 5      SO IF YOU HEAR THE TERM TSPU, THAT REFERS TO THERANOS'S

10:18AM 6 OWN PROPRIETARY ANALYZER.

10:18AM 7      AND THEN THE THIRD WAY, AND ONE OF OUR MOTIONS CONCERNS

10:18AM 8 THIS WAY, IS THAT SOME TESTING OCCURRED ON COMMERCIAL DEVICES

10:18AM 9 AT ANOTHER COMPANY MANUFACTURED THAT PERMITS THE USER TO MAKE

10:18AM 10 MODIFICATIONS TO THOSE DEVICES TO DEPLOY THEIR OWN LABORATORY

10:18AM 11 DEVELOPED TESTS.

10:18AM 12      THERANOS USED LABORATORY DEVELOPED TESTS ON THOSE DEVICES

10:18AM 13 THAT ALLOWED IT TO TEST SMALLER SAMPLES OF BLOOD ON THOSE

10:18AM 14 DEVICES.

10:18AM 15      NOW, WHICH OF THOSE THREE METHODS WAS USED DEPENDED ON

10:18AM 16 DIFFERENT FACTORS AND WHICH CHANGED OVER TIME AND THOSE THREE

10:19AM 17 FACTORS -- THERE ARE THREE PRIMARY FACTORS.  ONE WAS THE

10:19AM 18 LOCATION WHERE THE BLOOD WAS TESTED.

10:19AM 19      IN THERANOS'S ARIZONA LAB, ONLY COMMERCIAL DEVICES WERE

10:19AM 20 USED, SO ONLY THAT FIRST METHOD COULD BE USED IN THE ARIZONA

10:19AM 21 LABORATORY.

10:19AM 22      BUT IN THE CALIFORNIA LABORATORY ALL THREE METHODS WERE

10:19AM 23 USED.

10:19AM 24      HOW THE BLOOD WAS DRAWN COULD AFFECT HOW IT WOULD BE

10:19AM 25 TESTED.  SO IF BLOOD WAS DRAWN THROUGH THE VENOUS METHOD AS

10:19AM 1    OPPOSED TO THE FINGERSTICK METHOD, THAT COULD AFFECT WHICH KIND

10:19AM 2    OF DEVICE THE BLOOD WAS TESTED ON.

10:19AM 3         AND THEN THE THIRD IS THAT SOME ASSAYS -- YOU KNOW, AN

10:19AM 4    ASSAY COULD BE SOMETHING LIKE A GLUCOSE TEST OR A CALCIUM TEST.

10:19AM 5    WE'LL TALK A LOT ABOUT DIFFERENT ASSAYS DURING THE COURSE OF

10:19AM 6    THESE HEARINGS.  WHICH ASSAY WAS ORDERED BY THE DOCTOR COULD

10:19AM 7    AFFECT HOW IT WAS TESTED.  SOME ASSAYS WERE ONLY RUN ON THE

10:19AM 8    COMMERCIAL MACHINE, AND SOME ASSAYS COULD BE RUN ON ALL THREE

10:20AM 9    KINDS OF MACHINES, AND WHICH ONE WAS USED WOULD VARY OVER TIME

10:20AM 10   FOR THOSE DIFFERENT ASSAYS.

10:20AM 11        DETAILED INFORMATION ABOUT ALL OF THE TEST RESULTS

10:20AM 12   INCLUDING WHICH OF THOSE DEVICES AND METHODS WAS USED TO TEST

10:20AM 13   EVERY SINGLE SAMPLE OF BLOOD WAS STORED IN THERANOS'S

10:20AM 14   LABORATORY INFORMATION SYSTEMS DATABASE CALLED THE LIS

10:20AM 15   DATABASE.  AND MR. WADE IS GOING TO DISCUSS THAT IN MORE DETAIL

10:20AM 16   TODAY.

10:20AM 17        SO WITH THAT VERY GENERAL BACKGROUND ABOUT THAT PART OF

10:20AM 18   THERANOS'S OPERATIONS, LET ME TURN TO THE RELEVANT ALLEGATIONS

10:20AM 19   IN THE INDICTMENT.

10:20AM 20        THE THIRD SUPERSEDING INDICTMENT ALLEGES THAT MS. HOLMES

10:20AM 21   MADE FALSE STATEMENTS ABOUT THERANOS'S PROPRIETARY ANALYZER,

10:20AM 22   THAT'S THE SECOND METHOD THAT I TALKED ABOUT, AS WELL AS THE

10:20AM 23   ACCURACY AND RELIABILITY OF THERANOS'S TESTS, WHEN, IN FACT,

10:20AM 24   ACCORDING TO THE GOVERNMENT THERANOS'S PROPRIETARY ANALYZER HAD

10:21AM 25   ACCURACY AND RELIABILITY PROBLEMS.  THAT'S PARAGRAPH 12(A) OF

10:21AM  1    THE INDICTMENT.  AND THERANOS'S TECHNOLOGY WAS NOT CAPABLE OF

10:21AM  2    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.  THAT'S

10:21AM  3    PARAGRAPH 16 OF THE INDICTMENT.

10:21AM  4        IN PARTICULAR, THE GOVERNMENT IDENTIFIES IN THE INDICTMENT

10:21AM  5    23 ASSAYS FOR WHICH IT ALLEGES THAT THERANOS WAS NOT CAPABLE OF

10:21AM  6    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

10:21AM  7        IF I COULD HAVE THE ELMO TURNED ON, I JUST WANT TO PROVIDE

10:21AM  8    CONTEXT FOR THESE 23 ASSAYS SO THE COURT UNDERSTANDS HOW THE

10:21AM  9    DIFFERENT MOTIONS RELATE TO EACH OTHER.

10:21AM  10       THE COURT:  HAS THE GOVERNMENT SEEN THIS SLIDE

10:21AM  11   PREVIOUSLY?

10:21AM  12       MS. SAHARIA:  THEY HAVE NOT, BUT I DO HAVE A COPY TO

10:21AM  13   HAND TO THEM.

10:21AM  14       THE COURT:  GREAT.  THANK YOU.

10:21AM  15       MS. SAHARIA:  SO AS CONTEXT, YOUR HONOR, DURING THE

10:22AM  16   RELEVANT PERIOD THERANOS PERFORMED MORE THAN 200 DIFFERENT

10:22AM  17   ASSAYS, AND SO THOSE 200 ASSAYS ARE REPRESENTED BY THE GREEN

10:22AM  18   CIRCLE.  AND THE GOVERNMENT'S INDICTMENT IDENTIFIES 23 OF THEM,

10:22AM  19   SO ABOUT 10 PERCENT THAT IT ALLEGES THERANOS COULD NOT PERFORM

10:22AM  20   CONSISTENTLY ACCURATE AND RELIABLE RESULTS.  SO THAT'S THIS

10:22AM  21   BLUE CIRCLE HERE (INDICATING).

10:22AM  22       NOW, I THINK AS YOUR HONOR NOTICED FROM THE MOTIONS, THE

10:22AM  23   GOVERNMENT RETAINED AN EXPERT, DR. STEVEN MASTER, AND ASKED HIM

10:22AM  24   TO OPINE THAT THERANOS WAS NOT CAPABLE OF CONSISTENTLY

10:22AM  25   PRODUCING ACCURATE RESULTS FOR 10 OF THE 23.  SO THAT'S THIS

10:22AM 1    RED CIRCLE HERE (INDICATING).  SO WE'VE GONE FROM 200 DOWN TO

10:22AM 2    23 AND THEN DOWN TO 10.

10:22AM 3        I THINK AS YOUR HONOR KNOWS AS TO THE MOTIONS, DR. MASTER

10:22AM 4    WAS UNABLE TO OFFER THAT OPINION AND HE OPINED ONLY THAT

10:23AM 5    THERANOS COULD NOT PRODUCE ACCURATE AND RELIABLE RESULTS FOR

10:23AM 6    6 OF THOSE ASSAYS.  SO WE'VE NARROWED IT DOWN TO 6 OUT OF THE

10:23AM 7    TOTAL OF 200 PERFORMED AND 23 IDENTIFIED IN THE INDICTMENT.

10:23AM 8        I'M GOING TO DISCUSS TOMORROW THE FLAWS IN HIS OPINIONS AS

10:23AM 9    TO THOSE 6, BUT IT'S UNCLEAR HOW THE GOVERNMENT INTENDS TO

10:23AM 10   PROVE ITS ALLEGATIONS FOR THESE REMAINING 17 GIVEN THAT

10:23AM 11   DR. MASTER HAS NOT PRODUCED AN OPINION FOR THOSE.

10:23AM 12       NOW, THE GOVERNMENT HAS ALSO DISCLOSED NINE MEDICAL

10:23AM 13   PROFESSIONALS AS EXPERTS TO TALK ABOUT THEIR TESTS THEIR

10:23AM 14   INDIVIDUAL PATIENTS RECEIVED, ALTHOUGH IN MANY CASES THEY HAVE

10:23AM 15   FAILED TO IDENTIFY THOSE PATIENTS.  MY COLLEAGUE, MS. KATHERINE

10:23AM 16   TREFZ, IS GOING TO DISCUSS THAT WITH US TODAY.

10:23AM 17       THE GOVERNMENT CONCEDES THAT THOSE WITNESSES CANNOT OPINE

10:23AM 18   THAT THERANOS WAS UNABLE TO PRODUCE ACCURATE AND RELIABLE

10:23AM 19   RESULTS BECAUSE THEY'RE NOT QUALIFIED TO OFFER THAT OPINION.

10:23AM 20       INSTEAD, THE GOVERNMENT WANTS THEM JUST DESCRIBE

10:24AM 21   PARTICULAR OCCASIONS WHEN THEIR PATIENTS RECEIVED THE TEST

10:24AM 22   RESULT.

10:24AM 23       NOW, ONE POINT THAT I DON'T REALLY THINK COMES ACROSS IN

10:24AM 24   THE MOTIONS BUT I THINK IT'S IMPORTANT FOR THE COURT TO

10:24AM 25   UNDERSTAND IS THAT OUT OF THOSE NINE MEDICAL PROFESSIONALS,

10:24AM 1    ONLY ONE HAS A PATIENT WHO RECEIVED A TEST WITHIN THESE SIX

10:24AM 2    ASSAYS FOR WHICH DR. MASTER OFFERS AN OPINION.  THE REST OF

10:24AM 3    THOSE NINE MEDICAL PROFESSIONALS HAD PATIENTS WHO RECEIVED

10:24AM 4    OTHER TESTS.

10:24AM 5        SOME RECEIVED TESTS IN THESE 10, SOME RECEIVED TESTS OUT

10:24AM 6    HERE IN THESE 23, AND SOME EVEN RECEIVED TESTS OUT HERE THAT

10:24AM 7    ARE NOT EVEN IDENTIFIED IN THE INDICTMENT (INDICATING).

10:24AM 8        FOR THOSE MEDICAL PROFESSIONALS, IT'S ALSO UNCLEAR HOW THE

10:24AM 9    GOVERNMENT INTENDS TO PROVE THAT THOSE ASSAYS WERE ACCURATE AND

10:24AM 10   RELIABLE SINCE THEY CONCEDE THAT THEY CANNOT PROVIDE THAT

10:24AM 11   OPINION.

10:24AM 12       NOW, THE CONCEPT OF ACCURACY AND RELIABILITY OF BLOOD

10:25AM 13   TESTS ARE A SCIENTIFIC CONCEPT.  THAT'S CLEAR FROM THE REPORT

10:25AM 14   OF DR. MASTER.  AND WHEN THE GOVERNMENT BRINGS A SCIENTIFIC

10:25AM 15   CASE, YOU WOULD EXPECT IT TO CONDUCT A SCIENTIFIC

10:25AM 16   INVESTIGATION.  YOU WOULD EXPECT IT TO SECURE THE RELEVANT DATA

10:25AM 17   AND EVIDENCE, TO ENGAGE SCIENTISTS, AND TO CONDUCT A

10:25AM 18   SCIENTIFICALLY VALID REVIEW OF THE DATA AND THE EVIDENCE.

10:25AM 19       THE GOVERNMENT INEXPLICABLY DID NONE OF THAT.  NOT BEFORE

10:25AM 20   IT INDICTED MS. HOLMES, NOT AFTER IT INDICTED MS. HOLMES.  AT

10:25AM 21   BEST, IT WENT THROUGH THE MOTIONS OF DOING THOSE THINGS, BUT

10:25AM 22   ONLY IN THE MOST CURSORY FASHION AS WE WILL DISCUSS IN THE

10:25AM 23   VARIOUS ARGUMENTS.

10:25AM 24       THE GOVERNMENT'S LACK OF DATA AND ITS LACK OF ANALYSIS

10:25AM 25   HAVE LED TO A GIGANTIC HOLE IN ITS CASE, AND IT IS TRYING TO

10:25AM   1    FILL THAT HOLE WITH NONSCIENTIFIC EVIDENCE, AND THAT IS THE

10:25AM   2    REASON FOR MANY OF OUR MOTIONS.

10:25AM   3        TODAY WE ARE GOING TO DISCUSS THE FOLLOWING CATEGORIES OF

10:26AM   4    NONSCIENTIFIC EVIDENCE:

10:26AM   5        ANECDOTES REGARDING INCORRECT TEST RESULTS, AND ANY TINY

10:26AM   6    FRACTION OF THE 7 TO 10 MILLION TEST RESULTS GENERATED BY

10:26AM   7    THERANOS, THAT'S 563, WHICH MR. WADE WILL ADDRESS FIRST;

10:26AM   8        ACCOUNTS OF THOSE ANECDOTAL RESULTS BY MEDICAL

10:26AM   9    PROFESSIONALS, ECF 561;

10:26AM   10       TESTIMONY ABOUT SUPPOSED VIOLATIONS OF FEDERAL REGULATIONS

10:26AM   11   THAT THE GOVERNMENT DID NOT CHARGE IN THIS CASE, ECF 569; AND,

10:26AM   12       SPREADSHEETS FOR COUNTING CUSTOMER COMPLAINTS THAT

10:26AM   13   MS. HOLMES NEVER SAW, ECF 570.

10:26AM   14       TOMORROW WE WILL DISCUSS THE UNRELIABLE OPINIONS BY

10:26AM   15   DR. MASTER THAT RESTS ON EMAILS AND THAT APPLY NO DISCLOSED

10:26AM   16   METHODOLOGY, ECF 560;

10:26AM   17       THE RESULTS OF REGULATORY INSPECTIONS THAT DID NOT ASSESS

10:26AM   18   WHETHER THERANOS'S TESTS WERE INACCURATE AND RELIABLE, ECF 573,

10:27AM   19   574, AND 575; AND,

10:27AM   20       THERANOS'S PROPHYLACTIC REMEDIAL DECISION TO VOID SOME OF

10:27AM   21   ITS TEST RESULTS, ECF 572.

10:27AM   22       IT HAS ALSO BECOME CLEAR THAT THE GOVERNMENT INTENDS TO

10:27AM   23   DISTRACT THE JURY FROM ITS HOLE IN THIS CASE BY TURNING THE

10:27AM   24   TRIAL INTO A TRIAL ABOUT OTHER THINGS.

10:27AM   25       TODAY WE WILL DISCUSS ITS INTENT TO INFLAME THE JURY WITH

10:27AM  1    HYPOTHETICAL ACCOUNTS OF LIFE THREATENING HARM THAT NEVER

10:27AM  2    HAPPENED TO ANY THERANOS CUSTOMER, ECF 562;

10:27AM  3        THEN THURSDAY WE WILL TALK ABOUT ITS FOCUS ON MS. HOLMES'S

10:27AM  4    ALLEGED SPENDING, ECF 567;

10:27AM  5        SUPPOSED CULTURE OF SECRECY THAT AFFECTS NORMAL CORPORATE

10:27AM  6    PRACTICES, ECF 566 AND 576;

10:27AM  7        IRRELEVANT MEDIA COVERAGE OF THERANOS, ECF 578; AND,

10:27AM  8        THE GOVERNMENT'S INTENT TO PRESENT EVIDENCE THAT HAS NO

10:28AM  9    CONNECTION TO MS. HOLMES, EVIDENCE OF SUPPOSED BAD ACTS OR

10:28AM  10   FALSE STATEMENTS BY RANDOM THERANOS EMPLOYEES, 575.

10:28AM  11       ABSENT STRICT CONTROL BY THIS COURT OVER THE SCOPE OF THE

10:28AM  12   GOVERNMENT'S CASE, THIS TRIAL IS GOING TO BE A SPRAWLING MESS

10:28AM  13   OF IRRELEVANT, PREJUDICIAL EVIDENCE AND THE GOVERNMENT WILL

10:28AM  14   INJECT ERROR INTO THIS CASE.

10:28AM  15       SO WITH THAT INTRODUCTION, I'M GOING TO TURN IT OVER TO

10:28AM  16   MR. WADE.

10:28AM  17            THE COURT:  THANK YOU.

10:28AM  18            MS. SAHARIA:  WOULD YOUR HONOR LIKE A COPY OF THIS?

10:28AM  19            THE COURT:  I WOULD.  THANK YOU.

10:28AM  20            MS. SAHARIA:  (HANDING.)

10:28AM  21            THE COURT:  MR. WADE, YOU'RE SPEAKING TO 563.

10:28AM  22            MR. WADE:  I'M SPEAKING TO 563 AND THE GOVERNMENT'S

10:28AM  23   MOTION IN LIMINE NUMBER 10 THERE.

10:28AM  24       I BELIEVE THEY'RE SUBSTANTIALLY OVERLAPPING.  AND I WILL

10:28AM  25   PICK UP WHERE MS. SAHARIA LEFT OFF AND FOCUS ON THE BREADTH OF

10:29AM   1    THE GOVERNMENT'S CONSPIRACY AND THE CONTENTIONS IN THIS CASE

10:29AM   2    WHICH ARE AS BROAD OF CONTENTIONS AS I'VE SEEN IN A CRIMINAL

10:29AM   3    CASE IN A FEDERAL COURT AMOUNTING ESSENTIALLY TO A PRODUCTS

10:29AM   4    LIABILITY CASE OR A BREACH OF WARRANTY CASE.

10:29AM   5        THE GOVERNMENT CONTENDS THAT THERANOS WAS NOT CAPABLE OF

10:29AM   6    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.  AS WE'VE

10:29AM   7    JUST SAW FROM MS. SAHARIA'S DEMONSTRATIVE, THAT IS A SWEEPING

10:29AM   8    ALLEGATION THAT AFFECTS A MASSIVE SCOPE OF CONDUCT WITHIN A

10:29AM   9    COMPANY.

10:29AM  10        THERANOS PERFORMED TESTS FOR MORE THAN TWO YEARS.  IT

10:29AM  11    PERFORMED MORE THAN 200 DIFFERENT ASSAYS.  THOSE ASSAYS RAN ON

10:29AM  12    ALL KINDS OF DIFFERENT MACHINES, AS MS. SAHARIA JUST MENTIONED,

10:29AM  13    AND LABS IN TWO DIFFERENT STATES, AND IN ALL, THERANOS

10:30AM  14    PERFORMED BETWEEN 7 AND 10 MILLION TESTS.

10:30AM  15        THE GOVERNMENT'S CASE HERE IS THE PROVERBIAL -- THE

10:30AM  16    EVIDENCE THAT THEY MOVE FORWARD IS EVIDENCE OF FALSITY WITH

10:30AM  17    RESPECT TO THAT CLAIM, THAT BROAD CLAIM, WHICH RELATES TO ALL

10:30AM  18    OF THERANOS TESTING.

10:30AM  19        IF YOU LOOK AT THEIR BILL OF PARTICULARS, THEIR ALLEGED

10:30AM  20    MISREPRESENTATIONS, MANY OF THEM COVER ALL OF THAT TESTING.

10:30AM  21    THEIR CASE AGAINST THOSE 7 TO 10 MILLION TESTS, THEY SEEK TO

10:30AM  22    OFFER TESTIMONY OF 11 PATIENTS.  IT IS THE PROVERBIAL ONE IN A

10:30AM  23    MILLION, YOUR HONOR.

10:30AM  24        THEY OFFER THAT WITHOUT OFFERING A SCIENTIFIC BASIS TO

10:30AM  25    SUGGEST THAT THAT EVIDENCE IS RELEVANT.  IN ORDER FOR THE

10:30AM 1    EVIDENCE TO BE RELEVANT, THEY HAVE TO ESTABLISH THAT THERANOS'S

10:31AM 2    TECHNOLOGY WAS RESPONSIBLE FOR THE ERRONEOUS RESULT.  THEY

10:31AM 3    CAN'T DO THAT.

10:31AM 4        JUST BECAUSE AN ERRONEOUS RESULT HAPPENED DOES NOT MEAN

10:31AM 5    THAT IT WAS A RESULT OF THERANOS TECHNOLOGY.  THEY NEED TO

10:31AM 6    ESTABLISH A CAUSAL RELATIONSHIP BETWEEN THE TECHNOLOGY AND THE

10:31AM 7    RESULT.

10:31AM 8        AS YOUR HONOR WELL KNOWS, AND WE'VE ALL BECOME VERY

10:31AM 9    FAMILIAR WITH TESTING OVER THE LAST 15 MONTHS OR SO, TESTING IS

10:31AM 10   A DYNAMIC PROCESS.  IT INVOLVES MANY DIFFERENT VARIABLES.  SOME

10:31AM 11   OF THOSE RELATE TO THE TECHNOLOGY.  MANY OF THEM RELATE TO

10:31AM 12   OTHER THINGS WITHIN THE TESTING PROCESS, SOME OF WHICH HAVE

10:31AM 13   NOTHING TO DO WITH THERANOS LIKE THE PATIENT, THEIR MEDICAL

10:31AM 14   CONDITION, THEIR MEDICINE, THEIR DIET.  ALL OF THOSE THINGS CAN

10:32AM 15   CREATE AN ERRONEOUS RESULT.

10:32AM 16       SO BY SUGGESTING, BY WANTING TO BRING FORWARD ANECDOTES,

10:32AM 17   STATISTICALLY INSIGNIFICANT ANECDOTES, THE GOVERNMENT IS TRYING

10:32AM 18   TO CREATE THE IMPRESSION WITH THE JURY THAT THOSE ANECDOTES ARE

10:32AM 19   A DEMONSTRATION OF THERANOS'S INABILITY TO CONSISTENTLY PRODUCE

10:32AM 20   ACCURATE AND RELIABLE RESULTS.

10:32AM 21       NOW, THE -- WE'VE CITED AT DOCKET 563 AT 4 SOME SCIENTIFIC

10:32AM 22   LITERATURE THAT TALKS ABOUT LAB ERROR RATES.  ERRORS HAPPEN

10:32AM 23   EVERY DAY IN VIRTUALLY EVERY LAB.  THERE ARE ERRORS HAPPENING

10:32AM 24   PROBABLY AS WE SPEAK GIVEN THE VOLUME OF TESTING THAT IS

10:32AM 25   HAPPENING IN THIS COUNTRY.  THERE'S A KNOWN ERROR RATE IN THE

10:32AM 1    LITERATURE OF BETWEEN .1 PERCENT AND 3 PERCENT.

10:33AM 2         UNDER THOSE ERROR RATES, WHICH THE GOVERNMENT HAS NOT

10:33AM 3    CONTESTED, AND, FRANKLY, WE BELIEVE ARE CONSERVATIVE WITHIN THE

10:33AM 4    LITERATURE THAT WE'VE REVIEWED, YOU WOULD EXPECT TO SEE BASED

10:33AM 5    ON A VOLUME OF 7 TO 10 MILLION TESTS, BETWEEN 700,000 AND

10:33AM 6    210,000 ERRORS.

10:33AM 7         CONSIDERATION OF THOSE FACTS DEMONSTRATE THE

10:33AM 8    INSIGNIFICANCE OF THE EVIDENCE THAT IS OFFERED BY THE

10:33AM 9    GOVERNMENT IN THIS CASE.

10:33AM 10        THE GOVERNMENT STATISTICALLY BY OFFERING 11 OF 7 TO

10:33AM 11   10 MILLION, THEY'RE SEEKING TO OFFER BETWEEN 1 AND 2000THS OF

10:33AM 12   1 PERCENT.

10:33AM 13        I HAD TO ASK MS. SAHARIA WHO HAS MORE EXPERTISE IN MATH

10:33AM 14   WHAT THAT MEANT FOR THE RECORD.  THAT'S .000001571.  THEY DO

10:34AM 15   THAT -- STATISTICALLY THAT'S CLEARLY INSIGNIFICANT.  THEY

10:34AM 16   COULDN'T CREDIBLY OFFER ANY SUGGESTION OTHERWISE.

10:34AM 17        THEY OFFER THIS EVIDENCE WITH RESPECT TO A VARIETY OF

10:34AM 18   DIFFERENT TESTS.  AS BEST WE CAN TELL, THE GOVERNMENT DOESN'T

10:34AM 19   EVEN KNOW FOR EACH INDIVIDUAL TEST HOW THE TEST WAS RUN, THE

10:34AM 20   METHOD -- MS. SAHARIA JUST WENT THROUGH ALL OF THE STEPS IN THE

10:34AM 21   PROCESS:  THE METHOD THAT WAS USED, THE MACHINE THAT IT WAS RUN

10:34AM 22   ON, THE LAB THAT IT WAS PERFORMED AT, AND ALL OF THE OTHER

10:34AM 23   VARIABLES THAT ARE INVOLVED IN A TEST.

10:34AM 24        IT'S NOT EVEN CLEAR THAT THEY KNOW HOW MANY TESTS, FOR

10:34AM 25   EXAMPLE, ON HCG, WHICH OFTEN RELATES TO PREGNANCY.  IT'S NOT

10:34AM 1    CLEAR THAT THEY EVEN KNOW HOW MUCH HCG TESTS THERANOS RAN LET

10:35AM 2    ALONE HOW MANY HCG TESTS THERANOS RAN WITHIN A PARTICULAR

10:35AM 3    PERIOD THAT IS RELEVANT TO THE PATIENT THAT IS AT ISSUE OR ON

10:35AM 4    THE MACHINE THAT IS RELEVANT TO THE PATIENT AT ISSUE.

10:35AM 5        SO THE STATISTICAL INSIGNIFICANCE OF THIS EVIDENCE IS

10:35AM 6    BEYOND DISPUTE.

10:35AM 7        NOW, THE GOVERNMENT COULD POTENTIALLY CURE THAT IF THEY,

10:35AM 8    IF THEY DID WHAT THEIR OWN EXPERTS SUGGEST.

10:35AM 9        SO AFTER WE POINTED OUT THE PROBLEM WITH THE ANECDOTAL

10:35AM 10   EVIDENCE, THE GOVERNMENT WENT TO DR. MASTER AND THEY PROFFERED

10:35AM 11   WITHIN THEIR OPPOSITION THAT IMPLICIT WITHIN HIS OPINION IS

10:35AM 12   THAT CUSTOMERS -- CUSTOMER COMPLAINTS CAN BE RELEVANT.

10:35AM 13       BUT IF YOU LOOK AT WHAT DR. MASTER SAYS, AND THIS IS

10:35AM 14   OFFERED DOCKET 668 AT 8, "IN DISCUSSING THE RELEVANCE THAT

10:36AM 15   CUSTOMER COMPLAINTS HAVE ON ACCURACY AND RELIABILITY,

10:36AM 16   DR. MASTER WOULD TESTIFY THAT PARTICULAR INCIDENTS," QUOTE,

10:36AM 17   "'LED TO UNCOVERING SYSTEMIC OR PATIENT SPECIFIC ISSUES WITH A

10:36AM 18   LABORATORY TEST,'" CLOSED QUOTE, "OR THAT THEY WERE," QUOTE,

10:36AM 19   "'THEY WERE AWAY OF,'" QUOTE, "'IDENTIFYING UNRESOLVED ISSUES

10:36AM 20   WITH INDIVIDUAL ASSAYS.'"

10:36AM 21       IN OTHER WORDS, HE WON'T SAY THAT THEY'RE RELEVANT IN AND

10:36AM 22   OF THEMSELVES TO PROVE ACCURACY AND RELIABILITY.  WHAT THEIR

10:36AM 23   OWN EXPERT IS SAYING IS THAT IS A GATEWAY TO DO AN ANALYSIS TO

10:36AM 24   ASSESS WHETHER IT'S RELEVANT TO A DETERMINATION AS TO WHETHER

10:36AM 25   IT CAN BE OFFERED TO SHOW ACCURACY AND RELIABILITY.

10:36AM 1    THEY HAVEN'T DONE THAT.  THEY HAVEN'T DONE THAT

10:36AM 2    INVESTIGATION.

10:36AM 3    THE PRINCIPAL DEFICIENCY WITH RESPECT TO THEIR

10:37AM 4    INVESTIGATIVE FUNCTION RELATES TO THEIR FAILURE TO OBTAIN THE

10:37AM 5    LIS DATABASE.  THIS IS A MASSIVE FAILURE OF PROOF ON BEHALF OF

10:37AM 6    THE GOVERNMENT.

10:37AM 7    IF I COULD OFFER MY OWN DEMONSTRATIVE, AND I'LL OFFER ONE

10:37AM 8    UP TO THE COURT.  I'LL PUT ONE UP ON THE ELMO SO EVERYONE HAS

10:37AM 9    THE BENEFIT OF IT.

10:37AM 10   THIS DEMONSTRATIVE JUST GIVES THE COURT A SENSE.  I

10:37AM 11   UNDERSTAND THAT SOMETIMES -- I DON'T WANT TO SPEAK ON BEHALF OF

10:37AM 12   THE COURT, BUT AS I GET OLDER, WHAT A DATABASE IS AND WHAT IT

10:37AM 13   MEANS HAS LESS AND LESS SIGNIFICANCE.  SO I'VE HAD TO GROUND

10:37AM 14   MYSELF IN THE FACTS A LITTLE BIT TO UNDERSTAND WHAT THE

10:37AM 15   LIS DATABASE IS.  IT'S NOT A DOCUMENT DATABASE THAT WE DEAL

10:38AM 16   WITH IN COURT.  IT'S A MULTI FACETTED TOOL THAT COLLECTS DATA

10:38AM 17   THROUGHOUT THE TESTING PROCESS.

10:38AM 18   SO WHEN YOU LOOK AT, WHEN YOU LOOK AT THIS PROCESS, THE

10:38AM 19   BLUE BOX IS DESIGNED TO DEMONSTRATE THE TESTING PROCESS AS A

10:38AM 20   WHOLE, AND THE ARROWS SHOW THE WAY IN WHICH YOU WORK THROUGH

10:38AM 21   THAT PROCESS.

10:38AM 22   SO THE CUSTOMER COMES IN AND PROVIDES ALL OF THIS

10:38AM 23   INFORMATION THAT IS LOGGED WITHIN THE DATABASE.  YOU KNOW

10:38AM 24   THE -- YOU KNOW THEIR SPECIFIC DOCTOR, THEIR MEDICAL HISTORY,

10:38AM 25   YOU GO THROUGH THE LOCATION, THE COLLECTION METHOD, WHAT

10:38AM  1      PHLEBOTOMIST WAS USED, THE TRANSPORTATION SPECIFIC INFORMATION

10:38AM  2      WAS IN ARIZONA, IT WAS 110 DEGREES IN ARIZONA THAT DAY WHEN IT

10:38AM  3      WAS SITTING ON THE TARMAC ON ITS WAY TO CALIFORNIA, FOR

10:39AM  4      EXAMPLE.

10:39AM  5          YOU HAVE RECEIPT AND PROCESSING INFORMATION, WHEN IT WAS

10:39AM  6      RECEIVED WITHIN THE LABORATORY.  YOU HAVE -- AND THIS IS

10:39AM  7      CRITICAL AND IT RELATES TO MANY OF THE -- MUCH OF THE EVIDENCE

10:39AM  8      THAT THE GOVERNMENT WANTS TO OFFER ON THE DEVICE.  WHEN YOU

10:39AM  9      LOOK UNDER THE DEVICE HERE, YOU HAVE THE TYPE OF DEVICE USED;

10:39AM 10      YOU HAVE ALL OF THE TESTS THAT WERE RUN; YOU HAVE THE QUALITY

10:39AM 11      CONTROL DATA THAT RELATES TO THAT DEVICE ON THE DAY THAT TESTS

10:39AM 12      WERE RUN; AND THEN, OF COURSE, YOU HAVE OTHER INFORMATION THAT

10:39AM 13      RELATE TO ALL OF THE DIFFERENT RESULTS.  AND YOU HAVE THIS NOT

10:39AM 14      FOR ONE PATIENT, YOU HAVE IT FOR EVERY PATIENT.

10:39AM 15          SO IF THE GOVERNMENT IN CHOOSING TO OFFER A CASE ON

10:39AM 16      ACCURACY AND RELIABILITY, THE STARTING POINT IS RIGHT HERE

10:39AM 17      (INDICATING).  IT'S THE 7 TO 10 MILLION TESTS THAT SHOW WHAT

10:39AM 18      HAPPENED WITHIN THE LABS AT THERANOS ON WHICH DEVICES.  WHICH

10:40AM 19      ASSAYS?  HOW MUCH WERE THERE?

10:40AM 20          WITHIN THE CONTEXT OF THE ISOLATED EXAMPLES, THE ANECDOTAL

10:40AM 21      EXAMPLES, THEN THE QUESTION BECOMES WHAT DR. MASTER SAYS.  WE

10:40AM 22      HAVE A TEST THAT THE PATIENTS BELIEVE TO BE ERRONEOUS.  WHAT IS

10:40AM 23      THE CAUSAL -- WHAT IS THE CAUSE OF THAT?

10:40AM 24          LET ME GET ALL OF THE RELEVANT DATA AND ASSESS THE

10:40AM 25      POTENTIAL CAUSES OF THAT OR RULE OUT THE CAUSES OF THAT.

10:40AM 1     THE GOVERNMENT DIDN'T DO THAT.

10:40AM 2     WITH RESPECT TO THE 23 ASSAYS, THE GOVERNMENT COULD HAVE

10:40AM 3 GONE INTO THIS DATABASE, THEY COULD HAVE EXTRACTED OUT ALL OF

10:40AM 4 THE TESTS THAT WERE RUN FOR ALL OF THOSE ASSAYS; THEY COULD

10:40AM 5 HAVE HAD AN EXPERT REVIEW IT; THEY COULD HAVE LOOKED AT THE

10:40AM 6 DEVICE THAT IT WAS RUN ON; THEY COULD HAVE LOOKED AT WHETHER

10:40AM 7 THAT DEFICIENCY ACTUALLY RELATED TO THE THERANOS TECHNOLOGY.

10:41AM 8     THEY DIDN'T DO THAT.

10:41AM 9     SO WE DON'T EVEN KNOW.  IT'S NOT CLEAR THAT THE GOVERNMENT

10:41AM 10 KNOWS WHETHER THE PARTICULAR PATIENTS THAT THEY'RE SEEKING TO

10:41AM 11 OFFER RAN THE TEST THAT WAS ON A THERANOS DEVICE VERSUS A MORE

10:41AM 12 STANDARD FDA APPROVED TEST.  IT'S NOT CLEAR THAT THEY'RE AWARE

10:41AM 13 OF WHAT TEST IT WAS RUN ON MUCH LESS HOW MANY OTHER TESTS WERE

10:41AM 14 RUN DURING THAT TIME PERIOD.

10:41AM 15     THE DEFICIENCIES HERE ARE TWOFOLD.  ONE, THIS IS, AS THEIR

10:41AM 16 OWN EXPERT SAYS WHEN HE TALKS ABOUT HOW YOU ASSESS INDIVIDUAL

10:41AM 17 INSTANCES OF COMPLAINTS OR HOW YOU ASSESS ACCURACY AND

10:41AM 18 RELIABILITY GENERALLY, YOU LOOK AT DATA, YOU LOOK AT -- YOU

10:41AM 19 READ IT IN SCIENCE, YOUR EXPERTISE.

10:42AM 20     THIS FAILURE TO OBTAIN THIS EVIDENCE IS A GAPING HOLE IN

10:42AM 21 THE GOVERNMENT'S CASE, BUT MORE FUNDAMENTALLY IT CREATES A

10:42AM 22 SITUATION WHERE MS. HOLMES IS UNABLE TO CONFRONT MANY OF THE

10:42AM 23 OTHERWISE INADMISSIBLE ANECDOTAL PIECES OF INFORMATION THAT THE

10:42AM 24 GOVERNMENT NOW WANTS TO BRING FORWARD AND OFFER FOR THE TRUTH

10:42AM 25 AND OFFER IT TO SUGGEST THAT THESE TESTS WERE INACCURATE AND

10:42AM  1    UNRELIABLE AND THAT THESE STATEMENTS IDENTIFIED IN THE BILL OF

10:42AM  2    PARTICULARS WERE FALSE.  THEY DEPRIVE HER OF THE ABILITY TO DO

10:42AM  3    THAT INVESTIGATION.

10:42AM  4        INSTEAD, THEY WANT TO COME IN AND SAY, AND YOU'LL HEAR IT

10:42AM  5    THROUGHOUT THESE THREE DAYS, THE CMS REPORT SAYS THIS, THERE'S

10:42AM  6    A QC PROBLEM IN A COUPLE OF DAYS DURING THIS PERIOD ON THIS

10:43AM  7    TEST, THAT'S EVIDENCE OF INACCURACY AND UNRELIABILITY.  THAT'S

10:43AM  8    A CONCLUSION REACHED BY A GOVERNMENTAL AGENCY IN AN ADVERSARIAL

10:43AM  9    PROCESS.  THAT'S OUR EVIDENCE OF -- TO PROVE THIS WRONG.

10:43AM  10       BUT IF YOU HAD THE DATA YOU COULD GO BACK AND LOOK AT ALL

10:43AM  11   OF THE TESTS THAT WERE PERFORMED.  YOU COULD ASSESS, FOR

10:43AM  12   EXAMPLE, AN ISSUE THAT THE GOVERNMENT PUTS FORWARD REPEATEDLY

10:43AM  13   AS FACT WHICH IS ACTUALLY IN DISPUTE, WHICH IS THERE'S A QC

10:43AM  14   FAILURE.  THAT SUGGESTS EVERYTHING IS INACCURATE AND

10:43AM  15   UNRELIABILITY, OR UNRELIABLE.

10:43AM  16       AND THEY -- WELL, DID THEY PROVIDE RESULTS TO PATIENT?

10:43AM  17       WELL, THE GOVERNMENT SAYS YES BECAUSE CMS SAYS YES IN A

10:43AM  18   HEARSAY STATEMENT THAT SHOULD BE INADMISSIBLE.

10:43AM  19       HOW DO WE KNOW WHETHER THEY ACTUALLY PROVIDED THOSE TESTS?

10:43AM  20   IT'S IN THE LIS, YOUR HONOR.

10:44AM  21       ALL OF THE INFORMATION THAT RELATES TO HOW THE TESTS WERE

10:44AM  22   PERFORMED, THE FREQUENCY, WHEN, THE QC, ALL OF THE GOODS WITH

10:44AM  23   RESPECT TO TESTING ARE IN THERE.

10:44AM  24       NOW, YOU WOULD THINK IF THE GOVERNMENT WANTED TO CHOOSE TO

10:44AM  25   CHARGE ONE OF THE BROADEST MAIL WIRE FRAUD CONSPIRACIES PERHAPS

10:44AM 1    THIS DISTRICT HAS SEEN IN TERMS OF THE BREADTH OF WHAT THEY'RE

10:44AM 2    SAYING AND WITH RESPECT TO ACCURACY AND RELIABILITY, THEY WOULD

10:44AM 3    AT LEAST GET THE DATA, BUT THEY DID NOT.

10:44AM 4        AND SO RECOGNIZING THEIR FAILURE YEARS LATER, THE

10:44AM 5    GOVERNMENT HAS EMBARKED ON A LONG INVESTIGATION OF WHY IT CAN'T

10:44AM 6    GET THAT DATA.

10:44AM 7        AND IT SAYS, WELL, OKAY, WE SHOULDN'T BE ABLE TO ARGUE

10:44AM 8    THAT THEY FAILED TO MEET THEIR BURDEN, WHICH WOULD BE AN

10:44AM 9    UNCONSTITUTIONAL LIMITATION ON MS. HOLMES.

10:44AM 10       AND THEY SHOULD BE ABLE TO PUT FORWARD EVIDENCE AS TO WHY

10:45AM 11   THEY WEREN'T ABLE TO GET THAT WHEN IT'S NOT IN DISPUTE, OR AT

10:45AM 12   LEAST IT SHOULDN'T BE AFTER WE'VE CLARIFIED THE RECORD IN OUR

10:45AM 13   PLEADING, MS. HOLMES HAD NO ROLE WHATSOEVER IN THAT LIS ISSUE,

10:45AM 14   WHETHER IT WAS A FAILURE TO PRESERVE OR A MISCOMMUNICATION,

10:45AM 15   WHATEVER -- HOWEVER YOU WANT TO CATEGORIZE THAT ISSUE, THAT

10:45AM 16   RELATED TO PEOPLE COMPLETELY SEPARATE FROM MS. HOLMES.

10:45AM 17       SO UNDER 404(B), UNDER 401, THAT IS JUST NOT RELEVANT TO

10:45AM 18   THIS CASE.  SO ALL OF THAT EVIDENCE AS TO WHY THEY COULDN'T --

10:45AM 19   WHY THEY DIDN'T PROVE THEIR CASE IS OUT.  IT SHOULD BE OUT,

10:45AM 20   RESPECTFULLY.

10:45AM 21       THE EVIDENCE -- THE ACTUAL EVIDENCE OF THOSE EVENTS SHOW

10:45AM 22   THAT THE GOVERNMENT MADE THIS ALLEGATION ABOUT ACCURACY AND

10:45AM 23   RELIABILITY BEFORE THEY GOT THAT DATA AT ALL.  THE RETURN DATE

10:46AM 24   ON THE SUBPOENA WHEN THEY TRIED TO GET THE LIS DATA, THE RETURN

10:46AM 25   DATE WAS JUNE 14TH, 2018.  THAT WAS THE DAY THAT THEY RETURNED

AN INDICTMENT IN THIS CASE, THEIR FIRST INDICTMENT, AND IN
WHICH THEY MADE THESE SAME ALLEGATIONS.

THEY NEVER HAD ANY INTENTION OF GOING TO LOOK AT THE
LIS DATA.  THEY DIDN'T EVEN MEANINGFULLY LOOK AT IT.  IT WAS ON
THE SHELF AT THE U.S.'S OFFICE FOR YEARS.  THEY DIDN'T EVEN TRY
TO ACCESS IT UNTIL MARCH OF 2020 AT WHICH POINT THEY MAY HAVE
BROUGHT ALLEGATIONS THAT IT HAD BEEN IMPROPERLY DESTROYED WHEN
THE FACTS ACTUALLY RESPECTFULLY WOULD SUGGEST OTHERWISE.

BUT WHAT IS NOT IN DISPUTE IS THAT THE GOVERNMENT KNEW
ABOUT THE LIS DATA, KNEW ABOUT THE LIS, AND KNEW ABOUT THE
LIS DATABASE IN DECEMBER 2016 WHEN COUNSEL FOR THERANOS MADE
THEM AWARE OF WHAT THE LIS DATABASE WAS AND WHAT DATA WAS
TRACKED IN THERE.

THEY HAD ACCESS TO EXPERTS AND THEY'RE WORKING WITH THE
FDA AND CMS.  EVERYONE KNOWS THAT A LAB HAS DATA.  EVERYONE
KNOWS THAT IT TRACKS THAT INFORMATION.  AND THE GOVERNMENT
DIDN'T GET IT.  SO THEIR FAILURE TO GET IT LEAVES A HOLE.

THEIR DESIRE TO COVER UP THAT HOLE BY BRINGING IN SOME
SIDE TRIAL ABOUT WHY THEY WEREN'T ABLE TO GET IT WHEN THEY
SOUGHT IT TOO LATE, AT A TIME THAT THEY KNEW THAT THE COMPANY
WAS SHUTTING DOWN, THAT'S IRRELEVANT TO THIS CASE.  IT MAY BE
RELEVANT TO OTHER PROCEEDINGS, YOUR HONOR.  IT'S NOT RELEVANT
TO THIS CASE.  THEY HAVE NO CONNECTION TO THIS CASE.  SO THAT
SHOULD BE EXCLUDED, AND WE SHOULD HAVE NO RESTRICTIONS ON OUR
ABILITY TO OFFER THAT EVIDENCE.

10:48AM 1     NOR SHOULD WE -- WE SHOULD HAVE NO LIMITATIONS WITH

10:48AM 2  RESPECT TO OUR ABILITY TO ARGUE ABOUT THEIR FAILURES TO OBTAIN

10:48AM 3  THAT EVIDENCE.  IT IS -- THE GOVERNMENT BEARS THE BURDEN OF

10:48AM 4  PROOF IN THIS CASE.  THEY ARE THE ONES WHO CHOSE TO CHARGE A

10:48AM 5  CONSPIRACY OF THIS BREADTH AND TO PROCEED IN THIS MANNER.  THEY

10:48AM 6  HAVE THE BURDEN.

10:48AM 7     WE HAVE THE ABILITY TO SAY THAT THERE'S AN OBVIOUS WAY FOR

10:48AM 8  THEM TO HAVE MET THAT BURDEN, AND THEY DIDN'T DO IT.

10:48AM 9     AND WITH THAT I'LL PAUSE AND TAKE ANY QUESTIONS THAT THE

10:48AM 10 COURT MAY HAVE.

10:48AM 11           THE COURT:  ALL RIGHT.  WELL, THANK YOU.

10:48AM 12    WELL, FIRST OF ALL, I PROMISED WE WOULD TAKE A BREAK EVERY

10:49AM 13 HOUR.  I DON'T KNOW IF YOUR TEAM IS READY FOR A BREAK NOW OR

10:49AM 14 NOT, BUT NOW WOULD BE THE TIME TO TAKE A BREAK.

10:49AM 15    I DO HAVE -- AND I THINK YOU HIT ON A THRESHOLD ISSUE

10:49AM 16 PERHAPS ABOUT THIS MOTION, AND IT REALLY IS THE LIS DATABASE.

10:49AM 17 AND MY NOTES TO MYSELF SAY "WHAT ARE WE GOING TO DO ABOUT THIS

10:49AM 18 AND WHEN?"

10:49AM 19    I'M LOOKING AT THE GOVERNMENT.  WHEN DO WE DEAL WITH THIS

10:49AM 20 ISSUE?  BECAUSE I EXPECT WHEN THE GOVERNMENT STANDS AT THEIR

10:49AM 21 LECTERN TO TALK TO ME ABOUT THIS, THEY HAVE -- I KNOW IT WON'T

10:49AM 22 SURPRISE YOU -- PROBABLY A 180 DIFFERENT VIEW OF THE LIS.  AND

10:49AM 23 THERE'S A FACTUAL DISPUTE, ISN'T THERE, ABOUT HOW THAT

10:49AM 24 OCCURRED, AND WHETHER OR NOT SOMEBODY KNEW OR WHERE IS THE KEY?

10:49AM 25 AND NOBODY COULD FIND THE KEY.

10:49AM  1      AND THERE WERE LAW FIRMS MENTIONED WHO KNEW ABOUT THE KEY

10:49AM  2   AND WHO WERE IN COMMUNICATION, AND YET THE KEY IS NOT

10:50AM  3   DISCOVERED.  AND ULTIMATELY, AS I UNDERSTAND THE FACTS AT LEAST

10:50AM  4   FROM THE BRIEFING, THE DATABASE WAS DECONSTRUCTED, DESTROYED

10:50AM  5   SUCH THAT IT COULD NOT BE RECONSTRUCTED FOR OUR USE IN THIS

10:50AM  6   TRIAL, AS YOU POINT OUT, VERY IMPORTANT FOR THIS PARTICULAR

10:50AM  7   TRIAL.

10:50AM  8      THE GOVERNMENT ASKED, AS I'VE LEARNED IN THE BRIEFING, THE

10:50AM  9   GOVERNMENT ASKED FOR A COPY, A PROXY COPY, I BELIEVE IT'S

10:50AM  10  CALLED, OF THAT DATABASE, AND THEY WERE PROVIDED SOMETHING, BUT

10:50AM  11  WHAT THEY WEREN'T PROVIDED WAS A KEY.

10:50AM  12     AND WE CAN TALK ABOUT WHERE THE KEY IS, WHAT HAPPENED AND

10:50AM  13  ALL OF THAT.  BUT LET'S TAKE OUR BREAK NOW.  AND THOSE ARE

10:50AM  14  THINGS THAT I'LL HEAR FROM YOU ABOUT PERHAPS.

10:50AM  15     BUT REALLY THE QUESTION IS WHAT DO WE DO ABOUT THE LIS AND

10:50AM  16  IS THAT THE BASIS OF ADDITIONAL LITIGATION BRIEFING OF HOW

10:51AM  17  WE'RE GOING TO DEAL WITH THAT IF IT'S GOING TO COME INTO THIS

10:51AM  18  CASE, AND IS THAT SOMETHING THAT IS BEYOND THE SCOPE OF THIS

10:51AM  19  PARTICULAR MOTION IN LIMINE?  I THINK IT MIGHT BE.

10:51AM  20     THERE'S REFERENCE TO THE LIS IN THIS, BUT THERE'S NO

10:51AM  21  SUGGESTION AS TO -- THERE'S CRITICISM ABOUT IT.  THERE'S

10:51AM  22  SUGGESTION THAT IT'S AT ISSUE, BUT THERE'S NOTHING IN THE

10:51AM  23  BRIEFING THAT SUGGESTS WHAT THE PARTIES WANT TO DO ABOUT IT,

10:51AM  24  AND THAT WAS A QUESTION THAT I WAS GOING TO HAVE FOR BOTH

10:51AM  25  SIDES.

10:51AM  1          SO LET'S GIVE YOU AN OPPORTUNITY TO THINK ABOUT THAT

10:51AM  2     QUESTION.  AND WE'LL TAKE A TEN MINUTE BREAK, WE WILL COME

10:51AM  3     BACK, AND THEN WE'LL CONCLUDE FOR THE MORNING AND TAKE OUR

10:51AM  4     LUNCH BREAK.  AND COME BACK AFTER THIS.

10:51AM  5          WE'LL TAKE TEN MINUTES.

10:51AM  6          MR. WADE:  THANK YOU, YOUR HONOR.

10:51AM  7     (RECESS FROM 10:51 A.M. UNTIL 11:09 A.M.)

11:09AM  8          THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

11:09AM  9     THE RECORD.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE

11:09AM 10     AGAIN.  AND WE HAD OUR BREAK.

11:09AM 11          MR. DOWNEY, I THINK I LEFT YOU AT THE BREAK WITH A

11:09AM 12     QUESTION OR A POTENTIAL QUESTION THAT THE COURT HAD ABOUT THE

11:09AM 13     LIS AND WHAT SHOULD BE DONE ABOUT IT, THE ISSUE I SHOULD SAY.

11:09AM 14          MR. WADE:  YES, YOUR HONOR.  LET ME ADDRESS THAT

11:09AM 15     BRIEFLY.

11:09AM 16          FIRST OF ALL, I BELIEVE THE ISSUE IS BEFORE THE COURT AT

11:09AM 17     DOCKET 565 AT 4 IN CONNECTION WITH A MOTION TO EXCLUDE CERTAIN

11:10AM 18     404(B) EVIDENCE THAT INVOLVES THERANOS EMPLOYEES UNRELATED TO

11:10AM 19     MS. HOLMES.  WE MOVED TO EXCLUDE ANY OFFER OF EVIDENCE BY THE

11:10AM 20     GOVERNMENT OF LIS, OF THE ALLEGED LIS DESTRUCTION.  SO I

11:10AM 21     BELIEVE IT IS BEFORE THE COURT.  THAT MOTION WILL BE ADDRESSED

11:10AM 22     IN MORE DETAIL I BELIEVE TOMORROW, BUT I BELIEVE THE MATTER IS

11:10AM 23     RIPE BEFORE THE COURT.

11:10AM 24          WITH RESPECT TO THE EVIDENCE ITSELF AND HOW IT WORKS INTO

11:10AM 25     THIS CASE OR WHETHER IT WORKS INTO THIS CASE, LET ME REITERATE

11:10AM 1    A COUPLE OF POINTS.  ONE, THE GOVERNMENT KNEW ABOUT THIS

11:10AM 2    EVIDENCE FOR YEARS BEFORE IT RETURNED AN INVESTIGATION.  WE

11:10AM 3    CITE THE EXHIBITS IN OUR MOTION PAPERS, BUT THERE'S A LETTER

11:10AM 4    ADVISING THEM OF THIS IN DECEMBER OF 2016.  IT'S CLEAR THAT

11:10AM 5    THEY KNEW ABOUT IT THROUGHOUT 2018, AND WERE IN DISCUSSIONS

11:10AM 6    WITH COMPANY COUNSEL ABOUT THIS DATABASE.

11:10AM 7         THEY ALSO KNEW THAT THE COMPANY WAS GOING TO CLOSE.

11:11AM 8    THERE'S EVIDENCE WITHIN -- FROM WITHIN THE GOVERNMENT FILES

11:11AM 9    THAT THEY KNEW THE FINANCIAL TRAJECTORY OF THERANOS AT THAT

11:11AM 10   TIME AND THAT IT WAS LIKELY TO CLOSE.

11:11AM 11        IN FACT, GOVERNMENT PERSONNEL, FBI AGENTS, TOOK A TRUCK

11:11AM 12   AND DROVE TO THE THERANOS FACILITY AND BACKED IT UP AND GOT A

11:11AM 13   WHOLE SLEW OF EVIDENCE FROM THE THERANOS FACILITY JUST AS IT

11:11AM 14   WAS ABOUT TO CLOSE.

11:11AM 15        IT COULD HAVE EASILY GOTTEN THE LIS DATABASE

11:11AM 16   INFRASTRUCTURE AND PUT IT ON THAT TRUCK.  IT CHOSE NOT TO.

11:11AM 17        IT IS A FUNDAMENTAL PRINCIPLE OF LAW THAT THE GOVERNMENT

11:11AM 18   NEEDS TO OBTAIN THE EVIDENCE IT NEEDS TO PROVE ITS CASE BEFORE

11:11AM 19   IT RETURNS AN INDICTMENT.

11:11AM 20        NOW, THERE HAS BEEN A LOT OF GRAND JURY ACTIVITY IN THIS

11:11AM 21   CASE, YOUR HONOR, AND I WILL SET ASIDE WITH SOME RESTRAINT THE

11:11AM 22   PROPRIETARY OF SOME OF THAT GRAND JURY ACTIVITY AND WHETHER

11:12AM 23   IT'S BEING USED AS A DISCOVERY MECHANISM.

11:12AM 24        HERE THE GOVERNMENT SAYS IT IS NOT, AND WE WILL ACCEPT

11:12AM 25   THEM AT THEIR WORD.  THEY HAVE A SEPARATE MATTER THAT RELATES

11:12AM 1    TO THIS AS IT RELATES TO THE GRAND JURY, AND I WON'T GO INTO

11:12AM 2    THAT MORE DEEPLY IN THIS FORUM.

11:12AM 3        BUT AT THE TIME THAT THEY CHOSE TO BRING ITS CASE, IT HAD

11:12AM 4    TO HAVE EVIDENCE TO PROVE ITS CASE.  IT DIDN'T HAVE THAT

11:12AM 5    EVIDENCE.  IT HAD NOT OBTAINED THAT DATABASE.  IT NOW HAS TO

11:12AM 6    SUFFER THE CONSEQUENCES OF THAT.

11:12AM 7        WHATEVER HAPPENED THEREAFTER WITH RESPECT TO THAT DATABASE

11:12AM 8    COULD BE THE SUBJECT OF A TRIAL UNTO ITSELF, CERTAINLY A MINI

11:12AM 9    TRIAL WITHIN THIS TRIAL THAT WOULD INVOLVE WITNESSES.  THERE

11:12AM 10   HAVE ABOUT 20 WITNESSES THAT HAVE BEEN INTERVIEWED OR HAVE

11:12AM 11   GIVEN TESTIMONY IN CONNECTION WITH THAT MATTER.  THAT DOES NOT

11:12AM 12   INCLUDE GOVERNMENT PERSONNEL WHO WOULD BE RELEVANT TO THAT

11:13AM 13   CASE, INCLUDING EVERY MEMBER OF THE PROSECUTION TEAM WHO WOULD

11:13AM 14   BE A WITNESS AS TO WHETHER THEY TOOK APPROPRIATE STEPS TO

11:13AM 15   OBTAIN THAT EVIDENCE WHEN THEY KNEW ABOUT IT FOR YEARS AND WHEN

11:13AM 16   IT WAS PRODUCED TO THEM.

11:13AM 17       BECAUSE IF YOU LOOK AT THE BRADY LETTER THAT IS SET FORTH

11:13AM 18   AND AS AN EXHIBIT TO OUR MOTION, YOU'LL SEE IT'S THE LONGEST

11:13AM 19   BRADY LETTER I'VE EVER RECEIVED.  IT'S MORE THAN 20 PAGES, I

11:13AM 20   BELIEVE, AND IT SETS FORTH THE CHRONOLOGY IN EXCRUCIATING

11:13AM 21   DETAIL AS TO WHEN THE GOVERNMENT LEARNED ABOUT THE FACT THAT

11:13AM 22   THE COMPANY WAS CLOSING, WHEN IT KNEW ABOUT THE LIS, WHEN IT

11:13AM 23   KNEW ABOUT ALL OF THIS INFORMATION, AND WHEN IT GOT THAT COPY

11:13AM 24   AND HOW IT DEALT WITH THAT COPY WELL KNOWING THAT THE COMPANY

11:13AM 25   WAS ABOUT TO CLOSE.

11:13AM 1      NOT EXPEDITIOUSLY, NOT THOROUGHLY, AND NOT DILIGENTLY.

11:13AM 2  SORT OF SLOWLY.

11:13AM 3      AND THEN IT WENT TO ITS OWN INTERNAL EXPERTS WITHIN THE

11:13AM 4  U.S. ATTORNEY'S OFFICE AND SOUGHT GUIDANCE AS TO HOW THEY MIGHT

11:14AM 5  ACCESS THAT.  THEY GOT VERY GOOD ADVICE IT TURNS OUT BECAUSE IT

11:14AM 6  WASN'T JUST THE COPY THAT WAS RELEVANT THAT THEY HAD WHERE THEY

11:14AM 7  HAD AN ISSUE WITH THE KEY.  THAT'S A LITTLE BIT OF A RED

11:14AM 8  HERRING THERE.  THERE WAS ALSO A COPY ON A SERVER SYSTEM THAT

11:14AM 9  THERANOS HAD.

11:14AM 10      AND THEIR OWN EXPERT, THEIR OWN INTERNAL LITIGATION

11:14AM 11  SUPPORT EXPERT WHO WOULD BE A WITNESS IN THIS MINI TRIAL SAYS

11:14AM 12  YOU CAN GO AND GET ALL OF THAT HARDWARE AND RECREATE IT WITHIN

11:14AM 13  THE U.S. ATTORNEY'S OFFICE, BUT THEY NEVER DID THAT.  THEY

11:14AM 14  DIDN'T DO MUCH OF ANYTHING FOR A YEAR AND A HALF.

11:14AM 15      NOW, IN THE INTERVENING PERIOD THE ASSIGNEE, WHO TOOK OVER

11:14AM 16  FOR THERANOS THEREAFTER, GAVE UP THE SERVERS.  THE HARDWARE

11:14AM 17  INFRASTRUCTURE ON WHICH THAT SYSTEM OPERATED, THOSE WERE

11:15AM 18  RETURNED TO LEASEES -- LEASORS.

11:15AM 19      SO AT THAT POINT THE ABILITY TO RECONSTRUCT THE

11:15AM 20  LIS DATABASE WAS GONE, BUT AT THE TIME THAT THEY TOOK IT DOWN

11:15AM 21  TO PUT IT IN STORAGE, THE TESTIMONY OF THE EXPERTS IN THIS

11:15AM 22  MATTER SUGGEST THAT THEY THOUGHT THAT THEY COULD GET IT BACK UP

11:15AM 23  WITHIN A MONTH.  THAT'S WHAT -- I'M NOT GOING TO IDENTIFY

11:15AM 24  NAMES.  I COULD DO THAT IN A SEPARATE PROCEEDING IF IT'S

11:15AM 25  HELPFUL TO THE COURT.  I THINK THE COURT KNOWS SOME OF THE

11:15AM   1    NAMES, BUT SOME OF THE RELEVANT I.T. PROFESSIONALS WHO ARE

11:15AM   2    INVOLVED IN THAT JUDGMENT, THE MOST KNOWLEDGEABLE I.T.

11:15AM   3    PROFESSIONALS HAVE OFFERED STATEMENTS TO SAY THAT THEY THOUGHT

11:15AM   4    THEY COULD OFFER THAT -- THEY COULD PUT THIS DATABASE BACK

11:15AM   5    TOGETHER WITHIN A MONTH.  SO THE COPY IS ONE THING.  THE

11:16AM   6    EXISTING INFRASTRUCTURE IS ANOTHER.

11:16AM   7         SO THE GOVERNMENT'S FAILURE TO MOVE ON THAT IS A

11:16AM   8    SIGNIFICANT ISSUE WITH RESPECT TO THIS MATTER.

11:16AM   9         NOW, YOUR HONOR, I HAVE A SOLUTION TO THIS MESS, WHICH IS

11:16AM   10   DOCKET 565 AT 4.  THIS HAS NOTHING TO DO WITH ELIZABETH HOLMES.

11:16AM   11   NOTHING.  THE GOVERNMENT DOESN'T -- THE GOVERNMENT TRIED IN ITS

11:16AM   12   OPPOSITION TO OUR ANECDOTAL EVIDENCE MOTION TO CREATE A

11:16AM   13   NEFARIOUS IMPLICATION THAT COUNSEL FOR MS. HOLMES WAS INVOLVED.

11:16AM   14        WE DISABUSED THEM OF THAT.  THEY DID IT BASED ON A

11:16AM   15   PRIVILEGE LOG.  I'M SURE THEY DID IT IN GOOD FAITH.  THEY HAVE

11:16AM   16   OVERREAD THE PRIVILEGE LOG.  THOSE DOCUMENTS HAVE NOTHING TO DO

11:16AM   17   WITH LIS.  AND AS WE SAID IN OUR BRIEFING, WE WOULD BE PREPARED

11:16AM   18   TO OFFER THEM TO THE COURT IN CAMERA TO DEMONSTRATE THAT.

11:16AM   19        BUT THERE'S NO, NO OFFER OF PROOF THAT THE GOVERNMENT CAN

11:17AM   20   MAKE THAT MS. HOLMES, OR HER COUNSEL OR ANYONE ELSE, HAD ANY

11:17AM   21   ROLE WHATSOEVER IN THE DISMANTLING OF THAT OR THE PRODUCTION OF

11:17AM   22   THE COPY, EITHER ONE OF THE TWO OPTIONS.

11:17AM   23        GIVEN THAT, THAT HAS NO ROLE IN THIS CASE WHICH RELATES TO

11:17AM   24   MS. HOLMES.  IT'S IRRELEVANT UNDER 401, AND IT WOULD BE

11:17AM   25   INCREDIBLY PREJUDICIAL UNDER 403 SINCE SHE HAD NOTHING TO DO

11:17AM 1    WITH IT.  BUT JUST BECAUSE THE GOVERNMENT CAN'T GET INTO THAT

11:17AM 2    DOESN'T MEAN THAT WE DON'T GET TO STAND IN FRONT OF THE JURORS

11:17AM 3    AND SAY THAT THEIR FAILURE TO GET THE EVIDENCE BEFORE BRINGING

11:17AM 4    THE INDICTMENT IS A CRITICAL DEFICIENCY IN THEIR CASE.  WE

11:17AM 5    FULLY INTEND TO DO THAT.

11:17AM 6        THE FACT THAT THEY TRIED TO GET IT LATER AND MAKE WHOEVER

11:17AM 7    SHOT WHO WITH RESPECT TO THAT IS FOR ANOTHER PROCEEDING.

11:17AM 8    THAT'S NOT RELEVANT TO THIS CASE.

11:17AM 9        WHAT IS RELEVANT IS THAT AT THE TIME THAT THEY SERVED THE

11:18AM 10   INDICTMENT, THEY HAD EVIDENCE THAT THEY, I ASSUME, REPRESENTED

11:18AM 11   TO THE GRAND JURY BY WHICH THEY COULD PROVE IT, AND THEY DON'T.

11:18AM 12       NOW, THAT IS WHY THOSE DEFICIENCIES ARE WHY THE GOVERNMENT

11:18AM 13   CONTINUES TO COME BACK TO THESE ANECDOTES.  IT'S THE ONLY THING

11:18AM 14   THAT THEY'VE GOT.  AND WHY THEY CONTINUE TO CALL THESE PATIENTS

11:18AM 15   VICTIMS, WHICH IS A PRESUMPTION.  THEY DON'T HAVE EVIDENCE THAT

11:18AM 16   THEY'RE VICTIMS.

11:18AM 17       THEY HAVE EVIDENCE THAT THEY DID NOT GET ACCURATE TEST

11:18AM 18   RESULTS.  WE DON'T KNOW WHY THEY DIDN'T GET ACCURATE TEST

11:18AM 19   RESULTS, BUT IF WE ASSUME FOR ARGUMENT SAKE -- IT'S NOT CLEAR

11:18AM 20   SOME OF THEM -- ALL OF THEM GOT INACCURATE TEST RESULTS, WE'RE

11:18AM 21   NOT CONCEDING THAT, BUT EVEN IF YOU DO, WE DON'T KNOW WHY

11:18AM 22   BECAUSE THE GOVERNMENT HASN'T DONE THE ANALYSIS NECESSARY TO DO

11:18AM 23   THAT.

11:18AM 24       AND IT'S VERY TELLING, YOUR HONOR, YOU SAW THE CIRCULAR

11:19AM 25   CHART FROM MS. SAHARIA.  I THINK IF ONE OF THESE PATIENTS FALLS

11:19AM 1    WITHIN -- THEIR OWN EXPERT WILL NOT SUPPORT THIS VIEW, NOT

11:19AM 2    ONLY -- NOT JUST WITH RESPECT TO PROCESS, THE IDEA THAT ONE

11:19AM 3    CUSTOMER IS EVIDENCE OF INABILITY TO PROVIDE ACCURATE AND

11:19AM 4    RELIABLE RESULTS, BUT THEIR OWN EXPERT WON'T OPINE ON MANY OF

11:19AM 5    THE ASSAYS THAT THESE VERY PATIENTS RECEIVED.

11:19AM 6        IF I MIGHT BEFORE I STOP AND TAKE QUESTIONS FROM THE

11:19AM 7    COURT, I THINK IF WE'RE HONEST ABOUT THE ELEPHANT IN THE ROOM,

11:19AM 8    IF THE COURT LOOKS AT THE LANGUAGE THAT IS USED BY THE LANGUAGE

11:19AM 9    TO DESCRIBE SUPPOSED VICTIMS, THESE HARROWING EXPERIENCES, AND

11:19AM 10   THESE, LIKE, POTENTIAL HUGE CONSEQUENCES.  YOU KNOW, THEY

11:19AM 11   CLEARLY -- THE EMOTIONAL APPEAL OF THIS EVIDENCE IS WHY THEY

11:19AM 12   WANT TO OFFER IT.  THAT WOULD BE THE SUBJECT OF A MOTION.  IT'S

11:19AM 13   EXACTLY WHY IT'S NOT -- IT'S PARTICULARLY WHY IT'S NOT

11:20AM 14   PERMISSIBLE BECAUSE IT'S HIGHLY PREJUDICIAL.

11:20AM 15       BUT EVEN BEFORE WE GET TO THAT 403 BALANCING, EVEN BEFORE

11:20AM 16   WE GET TO THE -- WHAT IS ALWAYS THERE, IT GOES TO WEIGHT, IT

11:20AM 17   HAS TO BE RELEVANT.  IT HAS TO BE RELEVANT AND THE FOUNDATION

11:20AM 18   OF ITS RELEVANCE HAS TO BE OFFERED BEFORE A WEIGHT ANALYSIS IS

11:20AM 19   ENGAGED IN WHATSOEVER.

11:20AM 20           THE COURT:  WELL, IS IT RELEVANT FOR A PATIENT TO

11:20AM 21   SAY I PAID MONEY TO THERANOS FOR ONE OF THEIR TESTS.  I WAS

11:20AM 22   INTRIGUED BY THE ADVERTISING, AND WHATEVER, AND THE

11:20AM 23   REPRESENTATIONS MADE.  ALTHOUGH RELIANCE IS NOT NECESSARY, WE

11:20AM 24   KNOW THAT.

11:20AM 25       BUT A PATIENT SAYS, I PAID MONEY FOR THIS, I DIDN'T GET

11:20AM 1    WHAT I PAID FOR I DISCOVERED.  THE TEST WAS ERRONEOUS.

11:20AM 2         ISN'T THAT RELEVANT?  DOES THAT HAVE SOME RELEVANCE?

11:20AM 3              MR. WADE:  NO, BECAUSE WE DON'T KNOW WHY IT WAS

11:20AM 4    ERRONEOUS, YOUR HONOR.  THAT'S THE WHOLE POINT.  THERE HAS TO

11:21AM 5    BE A CAUSAL CONNECTION.

11:21AM 6         IT WOULD BE LIKE SAYING, YOUR HONOR, I WANT TO PROVE -- I

11:21AM 7    WANT TO CONVICT DR. FAUCCI OF FRAUD BY SAYING THAT THESE

11:21AM 8    VACCINES ARE GREAT AND INCREDIBLY RELIABLE AND SAFE.

11:21AM 9         MY EVIDENCE OF THAT IS NOT THE REGULATORY APPROVALS, IT'S

11:21AM 10   NOT ALL OF THE TESTING DATA THAT THEY DID, IT'S NOT THE

11:21AM 11   UNIVERSE OF MATERIAL AS A WHOLE.  IT'S ONE PERSON WHO HAS A

11:21AM 12   BLOOD CLOT AND TWO PEOPLE WHO DIE WITHIN A WEEK.

11:21AM 13              THE COURT:  BUT THE DIFFERENCE IS THAT DR. FAUCCI IS

11:21AM 14   NOT MAKING MONEY ON THE REPRESENTATION, IS HE?  HE'S MAKING AN

11:21AM 15   OBSERVATION -- PERHAPS IF HE SAID SUCH A THING HE IS MAKING AN

11:21AM 16   OBSERVATION.

11:21AM 17        IT'S A LITTLE DIFFERENT HERE WHERE A COMPANY REPRESENTS

11:21AM 18   ITSELF AND ITS ABILITY TO DO CERTAIN THINGS, AND SOMEBODY HIRES

11:21AM 19   THE COMPANY, TAKES THE TEST, AND THEN THEY DIDN'T GET WHAT THEY

11:21AM 20   THOUGHT THEY WERE GOING TO GET.  END OF STORY.  PERIOD.  HARD

11:21AM 21   STOP THERE.

11:21AM 22        ISN'T THAT RELEVANT THAT I PAID FOR SOMETHING AND I DIDN'T

11:22AM 23   GET IT?

11:22AM 24              MR. WADE:  WELL, THE GOVERNMENT -- NO, IN SHORT,

11:22AM 25   BECAUSE WE DON'T KNOW WHY THEY DIDN'T GET IT.

11:22AM 1       AGAIN, THE GOVERNMENT CAN'T EVEN -- WITH THESE STATISTICS

11:22AM 2   CANNOT EVEN SHOW ASSOCIATION MUCH LESS CAUSATION.  WE DON'T

11:22AM 3   KNOW WHAT CAUSED THE -- THE DYNAMIC PROCESS OF BLOOD TESTING,

11:22AM 4   YOUR HONOR --

11:22AM 5       THE COURT:  SO IS THAT THE RESPONSIBILITY OF THE

11:22AM 6   CUSTOMER, THE CLIENT, TO SAY I DIDN'T GET WHAT I WANTED BECAUSE

11:22AM 7   YOU SAID THAT YOU WOULD GIVE ME AN ACCURATE TEST AND IF YOU

11:22AM 8   CALLED -- IF YOU GO TO A COMPANY AND SAY A CUSTOMER GOES TO THE

11:22AM 9   COMPANY AND SAYS, YOU DIDN'T GIVE ME WHAT I WANT, AND WHAT YOU

11:22AM 10  REPRESENTED.  IS THE COMPANY THEN SUPPOSED TO SAY, WELL, YEAH.

11:22AM 11  PROVE IT?  TELL ME WHY?  I'M NOT GOING TO GIVE YOU ANY RELIEF

11:22AM 12  UNTIL YOU PROVE TO ME WHY YOU THINK.  AND PUT THE BURDEN ON THE

11:22AM 13  CLIENT TO DISPROVE THAT?  IS THAT HOW IT WORKS?

11:22AM 14       MR. WADE:  WELL, YOUR HONOR --

11:22AM 15       THE COURT:  IS THAT TOO SIMPLE?

11:22AM 16       MR. WADE:  YOU'RE ESSENTIALLY TALKING ABOUT A

11:23AM 17  CUSTOMER SERVICE COMPLAINT AND A RESPONSE TO THAT WHICH IS

11:23AM 18  SOMEWHAT INTERESTING BECAUSE THE THEORY THAT THE GOVERNMENT

11:23AM 19  SETS FORTH WOULD BASICALLY -- THE IMPLICATION OF THE

11:23AM 20  GOVERNMENT'S ARGUMENT, THE BREADTH OF ITS CONTENTION IS WHEN

11:23AM 21  ALMOST ANYBODY WHO OFFERS A PRODUCT OR SERVICE COMES FORWARD

11:23AM 22  AND SAYS THIS IS A GOOD PRODUCT, NOT JUST DIRECTLY BUT DIRECTLY

11:23AM 23  AND IMPLICITLY ACCORDING TO THE GOVERNMENT, AND THEN THERE'S

11:23AM 24  ANY COMPLAINT ABOUT IT, THAT'S EVIDENCE OF FRAUD WITHOUT

11:23AM 25  SHOWING WHETHER, YOU KNOW, THERE'S A CAUSAL LINK BETWEEN THE

11:23AM 1      SERVICE THAT IS PROVIDED AND THE HARM OR COMPLAINT THAT

11:23AM 2      RESULTS.  THAT'S THE CRITICAL PIECE.

11:23AM 3          AND, YOUR HONOR, PUTTING A DRUG COMPANY CEO IN THE PLACE

11:23AM 4      OF DR. FAUCCI, THE ADMISSIBLE -- THE EVIDENCE WOULD BE NO MORE

11:23AM 5      ADMISSIBLE.  THOSE ADMIRATIONAL ANECDOTES, WHICH ARE COMPLETELY

11:23AM 6      EXPECTED IN THE SAME WAY THAT ERRORS ARE EXPECTED WITHIN A LAB,

11:23AM 7      ARE NO MORE ADMISSIBLE TO PROVE THAT IN AND OF THEMSELVES THAN

11:24AM 8      THAT ANYTHING ELSE.

11:24AM 9          THE COURT:  LET ME ASK IT THIS WAY.  IT SEEMS LIKE

11:24AM 10     WHAT YOU'RE SAYING IS THAT -- I LOOKED AT MS. SAHARIA'S CHART

11:24AM 11     AND THE CASCADING CIRCLES THERE, AND IT SEEMS LIKE IT'S REALLY

11:24AM 12     A WEIGHT ISSUE.  ISN'T IT MORE OF A WEIGHT ISSUE?  AND ISN'T

11:24AM 13     THAT YOUR CLOSING ARGUMENT THAT IT IS A 1 IN A MILLION AND THIS

11:24AM 14     IS THE BEST THAT YOU CAN DO, LADIES AND GENTLEMEN, AND YOU

11:24AM 15     CAN'T CONVICT ON THAT?  ISN'T IT REALLY A WEIGHT ISSUE?

11:24AM 16         MR. WADE:  IT'S NOT A WEIGHT ISSUE, YOUR HONOR,

11:24AM 17     BECAUSE WEIGHT ONLY COMES TO BEAR IN A CASE ONCE THE EVIDENCE

11:24AM 18     HAS A TICKET TO ADMISSION.

11:24AM 19         SO THEY STILL, BEFORE THEY DO -- OTHERWISE IT EFFECTIVELY

11:24AM 20     SHIFTS THE BURDEN TO MS. HOLMES.  THEY HAVE THE BURDEN OF

11:24AM 21     PROVING THEIR CASE.  THEY HAVE CHOSEN TO MAKE THESE BROAD

11:24AM 22     ALLEGATIONS WITH RESPECT TO ACCURACY AND RELIABILITY.

11:24AM 23         THE EVIDENCE THAT THEY'RE WANTING TO OFFER ON THESE

11:25AM 24     PATIENTS IS NOT RELEVANT TO THAT BECAUSE THEY HAVE NOT

11:25AM 25     ESTABLISHED THAT CAUSAL LINK EITHER SPECIFICALLY IN THE

11:25AM  1    LIS DATABASE OR STATISTICALLY IN CONNECTION WITH SOME VALID

11:25AM  2    SCIENTIFIC STUDY.

11:25AM  3         THERE ARE MECHANISMS BY WHICH THEY COULD DO IT.  YOU WOULD

11:25AM  4    EXPECT IF THEY WERE TO CHOOSE TO DO THAT THEY WOULD ENGAGE IN

11:25AM  5    ONE OF THOSE MECHANISMS.  BUT WHEN THEY DON'T DO THAT, THEY

11:25AM  6    CAN'T SCOUR THE EARTH, WHICH THEY HAVE DONE HERE FOR YEARS IN A

11:25AM  7    HIGH PROFILE CASE, YOUR HONOR, WHERE PEOPLE ARE COMING OUT OF

11:25AM  8    THE WOODWORK, AND THEY WANT TO TAKE 1 IN A MILLION PATIENTS AND

11:25AM  9    PUT THEM IN FRONT OF THE JURY AND SHIFT THE BURDEN TO

11:25AM  10   MS. HOLMES TO SAY THESE PEOPLE PROVED THAT THEY WERE NOT

11:25AM  11   CAPABLE OF PRODUCING ACCURATE AND RELIABLE RESULTS AND NOW WE,

11:25AM  12   WITHOUT THE LIS DATABASE, HAVE THE BURDEN OF SAYING THERE'S NO

11:25AM  13   CAUSATION.

11:25AM  14        THEY HAVE TO ESTABLISH THE CAUSATION BEFORE IT BECOMES

11:25AM  15   RELEVANT IN THIS CASE.  WE DON'T -- FOR ALL WE KNOW, THERE

11:25AM  16   COULD BE DIET, THERE COULD BE MEDICATION, THERE COULD BE HEALTH

11:26AM  17   CONDITIONS.  THERE COULD BE OTHER THINGS THAT CAUSE THOSE

11:26AM  18   ERRONEOUS RESULTS.  WE DON'T KNOW THAT.

11:26AM  19             THE COURT:  OKAY.  GIVE ME JUST A MOMENT.

11:26AM  20        I'VE BEEN PASSED A NOTE THAT TELLS ME THAT OUR CONFERENCE

11:26AM  21   LINE WAS DISCONNECTED AND THE PUBLIC CAN NO LONGER HEAR.

11:26AM  22        HAS THAT BEEN CORRECTED?

11:26AM  23             THE CLERK:  YOUR HONOR, I DID NOT WANT TO INTERRUPT

11:26AM  24   THE PROCEEDINGS BUT THERE'S NO WAY FOR ME, THERE'S NO WAY FOR

11:26AM  25   ME TO RECONNECT WITHOUT GOING THROUGH THE P.A. AND INTERRUPTING

11:26AM  1    THESE PROCEEDINGS --

11:26AM  2              THE COURT:  WELL, THIS IS --

11:26AM  3              THE CLERK:  -- TO GET THEM BACK ON.

11:26AM  4              THE COURT:  SO WHAT DO WE NEED TO DO, PAUSE THESE

11:26AM  5    PROCEEDINGS?

11:26AM  6              THE CLERK:  CAN WE TAKE A FIVE MINUTE BREAK.  I

11:26AM  7    APOLOGIZE, YOUR HONOR.

11:26AM  8              THE COURT:  LET'S DO THAT.  I THINK THE PUBLIC HAS A

11:26AM  9    RIGHT TO HEAR.  WE'RE NOT ALLOWING THEM INTO THE COURTROOM

11:26AM  10   BECAUSE OF OUR HEALTH CONDITIONS, BUT WE ARE OFFERING THEM THE

11:26AM  11   ABILITY TO PARTICIPATE VIA THE TELEPHONE LINE.

11:26AM  12       I THINK BEFORE WE GO FURTHER, COUNSEL, I THINK I WOULD

11:26AM  13   LIKE TO REESTABLISH THE CONNECTION, PLEASE.  SO LET'S TAKE A

11:27AM  14   PAUSE TO DO THAT.

11:27AM  15             MR. WADE:  WE UNDERSTAND, YOUR HONOR.

11:27AM  16             THE CLERK:  COURT IS IN RECESS.

11:27AM  17        (PAUSE IN PROCEEDINGS.)

11:27AM  18             THE COURT:  CAN WE STAY HERE WHILE YOU'RE DOING

11:27AM  19   THAT?

11:27AM  20             THE CLERK:  IF YOU'D LIKE, YOUR HONOR.

11:27AM  21             MR. WADE:  YOUR HONOR, IF I MAY JUST STEP IN HERE.

11:27AM  22             THE COURT:  YES.  GO RIGHT AHEAD.  SURE.

11:27AM  23        (PAUSE IN PROCEEDINGS.)

11:28AM  24             THE CLERK:  WE'RE READY TO PROCEED.

11:28AM  25             THE COURT:  LET ME INDICATE THAT WE'VE RECEIVED

11:28AM 1    NOTICE THAT OUR TELEPHONE LINE WAS DISCONNECTED FOR A BRIEF

11:28AM 2    PERIOD OF TIME WHILE COUNSEL WAS SPEAKING.

11:28AM 3        MR. WADE, DO YOU JUST WANT TO SUMMARIZE YOUR LAST COMMENT,

11:28AM 4    AND THEN I'LL TURN TO THE GOVERNMENT TO SEE IF THEY HAVE

11:28AM 5    ANYTHING TO SAY.

11:28AM 6        MR. WADE:  I'M NOT SURE I'LL ADEQUATELY -- I'LL DO

11:28AM 7    IT JUSTICE, YOUR HONOR, A SECOND TIME, BUT I'LL JUST STOP BY

11:29AM 8    SAYING YOUR HONOR ASKED ABOUT WEIGHT.  WE BELIEVE THAT THEY

11:29AM 9    HAVE TO ESTABLISH RELEVANCE BEFORE THEY DO THIS AND BEFORE IT'S

11:29AM 10   ADMISSIBLE AND WEIGHT IS CONSIDERED.

11:29AM 11       BUT I WILL ADD, IN THE EVENT THAT THERE IS SOME MINUSCULE

11:29AM 12   RELEVANCE HERE, THE PREJUDICIAL IMPACT ON SUCH ANECDOTAL

11:29AM 13   EVIDENCE JUST SWAMPS ANY PROBATIVE VALUE BASED ON THE

11:29AM 14   STATISTICALLY ANALYSIS AND PARTICULARLY GIVEN THE LACK OF

11:29AM 15   ACCESS TO THE LIS TO REFUTE THOSE ALLEGATIONS.

11:29AM 16       THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

11:29AM 17   YOU.

11:29AM 18       MR. BOSTIC, DO YOU SPEAK FOR THE GOVERNMENT ON THIS

11:29AM 19   MOTION?

11:29AM 20       MR. BOSTIC:  YES, YOUR HONOR.  GOOD MORNING.  IT'S

11:29AM 21   NICE TO SEE YOU.

11:29AM 22       THE COURT:  NICE TO SEE YOU.

11:29AM 23       MR. BOSTIC:  BETWEEN MS. SAHARIA AND MR. WADE

11:29AM 24   THERE'S A LOT TO RESPOND TO, SO I'LL ASK THE COURT'S INDULGENCE

11:29AM 25   THERE.

11:29AM   1          I WOULD LIKE TO RESPOND TO THE BULK OF MR. WADE'S ARGUMENT

11:29AM   2     RELATING TO THE LIS, BUT FIRST I WOULD LIKE TO SPEAK ABOUT

11:29AM   3     PATIENT TESTIMONY AND ITS IMPORTANCE IN THIS CASE AND WHY I

11:30AM   4     THINK MR. WADE IS ACTUALLY MAKING THE WRONG ARGUMENT OVERALL.

11:30AM   5          MR. WADE HIMSELF SAID THAT THE DEFENSE VIEWS THIS CASE

11:30AM   6     OSTENSIBLY OR ESSENTIALLY AS A PRODUCTS LIABILITY CASE.  THAT'S

11:30AM   7     NOT CORRECT.  THAT'S NOT THE KIND OF CASE THAT THIS IS.  THIS

11:30AM   8     IS A CRIMINAL WIRE FRAUD CASE.  IT'S VERY DIFFERENT FROM A

11:30AM   9     CIVIL PRODUCTS LIABILITY CASE.

11:30AM  10          AND TO THE EXTENT THAT THEY SEEK TO DEFEND IT AS A

11:30AM  11     PRODUCTS LIABILITY CASE OR SEEK TO EXCLUDE EVIDENCE THAT WOULD

11:30AM  12     NOT BE PART OF A PRODUCTS LIABILITY CASE, THAT'S A MISTAKE THAT

11:30AM  13     THEY'RE MAKING.  IT'S THE WRONG ARGUMENT, AND THE COURT SHOULD

11:30AM  14     DENY ANY REQUEST ON THAT BASIS.

11:30AM  15          THIS IS NOT A CIVIL ACTION WHERE THE SAFETY OF A PRODUCT

11:30AM  16     AND WHETHER IT MEETS INDUSTRY STANDARDS IS THE KEY QUESTION.

11:30AM  17     THIS IS A WIRE FRAUD CASE WHERE THE KEY QUESTION IS WHAT DID

11:31AM  18     THE DEFENDANT INTEND?  DID THE DEFENDANT MAKE KNOWING

11:31AM  19     MISREPRESENTATIONS WITH THE INTENT TO DECEIVE AND CHEAT

11:31AM  20     CUSTOMERS OF THERANOS?

11:31AM  21          THE FACT THAT THE FRAUD IN THIS CASE RELATES TO A PRODUCT

11:31AM  22     OFFERED BY A COMPANY DOES NOT TURN IT FROM A CRIMINAL WIRE

11:31AM  23     FRAUD CASE INTO A PRODUCTS LIABILITY CASE.  IT NEEDS TO BE

11:31AM  24     JUDGED BASED ON THE ELEMENTS OF CRIMINAL WIRE FRAUD AND THOSE

11:31AM  25     ELEMENTS ALONE.

11:31AM  1        SO WHAT IS THIS CASE?  THIS IS A CASE WHERE THE INDICTMENT

11:31AM  2    ALLEGES THAT THE DEFENDANT DEFRAUDED PATIENTS BY CLAIMING THAT

11:31AM  3    THERANOS TESTS WERE ACCURATE AND RELIABLE WHEN, IN FACT, THEY

11:31AM  4    WERE NOT.  AND SHE KNEW IT.

11:31AM  5        PATIENTS PAID FOR THOSE TESTS BELIEVING THAT THEY WOULD

11:31AM  6    RECEIVE ACCURATE AND RELIABLE RESULTS, NOT KNOWING THAT THOSE

11:31AM  7    TESTS SUFFERED FROM ACCURACY AND RELIABILITY PROBLEMS.

11:31AM  8        WHEN THAT HAPPENED, WHEN THEY PAID FOR THOSE TESTS

11:31AM  9    THINKING THAT THEY WERE ACCURATE BUT GOT THE OPPOSITE, THEY

11:31AM  10   BECAME VICTIMS OF DEFENDANT'S FRAUD.  AND WE UNDERSTAND THAT

11:32AM  11   THE DEFENSE DOES NOT ACCEPT THE GOVERNMENT'S THEORY OF THE

11:32AM  12   CASE.  THE DEFENSE PREVIOUSLY MOVED TO DISMISS THE INDICTMENT

11:32AM  13   BECAUSE THEY DISAGREED WITH THAT THEORY.  THE COURT IN LARGE

11:32AM  14   PART DENIED THOSE MOTIONS TO DISMISS.  THIS CASE IS HEADING

11:32AM  15   TOWARDS TRIAL ON THAT THEORY AS CHARGED IN THE INDICTMENT.

11:32AM  16       AT TRIAL ACTUAL AND INTENDED VICTIMS OF THE DEFENDANT'S

11:32AM  17   SCHEME TO DEFRAUD WILL TESTIFY AS TO THE FACTS SHOWING THAT

11:32AM  18   THEY DID NOT GET THE BENEFIT OF THEIR BARGAIN.  IN OTHER WORDS,

11:32AM  19   THAT MEANS THAT THEY'RE GOING TO TESTIFY THAT THEY SOUGHT OUT

11:32AM  20   TESTING FROM THERANOS AND RECEIVED RESULTS BACK THAT WERE NOT

11:32AM  21   ACCURATE.  THAT IS A KEY PART OF THE PROOF IN THIS CASE, AND

11:32AM  22   IT'S TO BE EXPECTED IN ANY FRAUD CASE THAT VICTIMS WOULD

11:32AM  23   TESTIFY ABOUT HOW THEY CAME TO BE DEFRAUDED, HOW THEY MISSED

11:32AM  24   OUT ON THE BENEFIT OF THEIR BARGAIN.  THAT SHOULD NOT BE A

11:32AM  25   SURPRISE TO ANYONE.

11:32AM 1      BY ARGUING THAT THESE FACTS ARE IRRELEVANT AND THAT THAT

11:32AM 2    VICTIM TESTIMONY IS INADMISSIBLE, DEFENDANT'S MOTION IS ASKING

11:33AM 3    THE COURT TO BLOCK VICTIMS OF THE CHARGED FRAUD FROM TESTIFYING

11:33AM 4    AT TRIAL.  I THINK IT'S IMPORTANT TO PUT THIS IN PERSPECTIVE.

11:33AM 5    THAT'S WHAT THEY'RE ASKING THE COURT TO DO.

11:33AM 6      WHAT A WINDFALL THAT WOULD BE TO ANY DEFENDANT TO BLOCK

11:33AM 7    VICTIMS FROM BEING ABLE TO COME TO THE TRIAL AND TESTIFY ABOUT

11:33AM 8    THEIR EXPERIENCES BEING DEFRAUDED.

11:33AM 9      BUT AT THE SAME TIME WHAT A RADICAL STEP IT WOULD BE FOR A

11:33AM 10   TRIAL COURT TO ISSUE THAT KIND OF EVIDENTIARY RULING.

11:33AM 11     I ALSO WANT TO RESPOND TO THE DEFENSE'S CHARACTERIZATION

11:33AM 12   OF THIS CASE AS AN EXTREMELY BROAD CASE.  THAT'S NOT TRUE,

11:33AM 13   EITHER.

11:33AM 14     THE INDICTMENT IN THIS CASE, WHILE DETAILED, IS

11:33AM 15   MANAGEABLE.  IT INCLUDES A HANDFUL OF WIRE FRAUD COUNTS AND TWO

11:33AM 16   CONSPIRACY COUNTS.  IT'S BASED ON TWO SCHEMES TO DEFRAUD, ONE

11:33AM 17   TARGETING INVESTORS, ONE TARGETING PATIENTS, AND THOSE SCHEMES

11:33AM 18   SPANNED A FEW YEARS EACH.  IT'S AS SIMPLE AS THAT.

11:34AM 19     THE FACT THAT THE COMPANY ENDED UP PERFORMING A LARGE

11:34AM 20   NUMBER OF ASSAYS OVER SEVERAL YEARS DOES NOT MAKE THIS CASE

11:34AM 21   BROADER THAN WHAT I JUST STATED.

11:34AM 22     HOLMES HERSELF AND THE COMPANY MADE BROAD CLAIMS ABOUT THE

11:34AM 23   ACCURACY OF THE TESTS AND THE SUPERIORITY OF THE COMPANY'S

11:34AM 24   TECHNOLOGY VERSUS CONVENTIONAL METHODS.  SO, IF ANYTHING, IT'S

11:34AM 25   THE SIMPLE BREADTH OF THOSE CLAIMS THAT INFORMS THE SCOPE OF

11:34AM 1    THE TRIAL, THE SCOPE OF THE GOVERNMENT'S ALLEGATIONS HERE.

11:34AM 2         I'D LIKE TO TALK BRIEFLY ABOUT THE DEFENSE'S USE OF THE

11:34AM 3    WORD "ANECDOTAL."  IN THIS CASE IT STRIKES THE GOVERNMENT THAT

11:34AM 4    "ANECDOTAL" IS BEING USED AS A PEJORATIVE TERM IN AN EFFORT TO

11:34AM 5    MINIMIZE THE VALIDITY OR THE SIGNIFICANCE OF PATIENT EXPERIENCE

11:34AM 6    TESTIMONY HERE.

11:34AM 7         BUT SURELY THE COURT WILL RECOGNIZE THAT THE VAST MAJORITY

11:34AM 8    OF WITNESS TESTIMONY IN ANY TRIAL COULD BE CHARACTERIZED AS

11:35AM 9    ANECDOTAL.  THIS IS WHAT 95 PERCENT OF WHAT WITNESSES DO.  THEY

11:35AM 10   TAKE THE STAND, THEY SWEAR TO TELL THE TRUTH, AND THEN THEY

11:35AM 11   TELL THE JURY WHAT THEY EXPERIENCED.  THEY TELL THE JURY WHAT

11:35AM 12   THEY OBSERVED, WHAT HAPPENED TO THEM.

11:35AM 13        YOU COULD CHARACTERIZE THOSE AS ANECDOTES, BUT THE WAY

11:35AM 14   THAT THE DEFENSE USES THAT TERM, WE BELIEVE IT'S AN EFFORT TO

11:35AM 15   MINIMIZE AND TRIVIALIZE THAT TESTIMONY THAT SHOULD BE

11:35AM 16   ADMISSIBLE.

11:35AM 17        SO HERE THE VICTIMS OF BOTH SCHEMES TO DEFRAUD WILL

11:35AM 18   TESTIFY ABOUT THEIR RELEVANT EXPERIENCES AND OBSERVATIONS,

11:35AM 19   STATEMENTS MADE TO THEM BY HOLMES OR THERANOS, THE ACTIONS THEY

11:35AM 20   TOOK BASED ON THOSE STATEMENTS, AND THE ACTS THAT SHOW THAT

11:35AM 21   THEY DIDN'T GET THE BENEFIT OF THE BARGAIN.

11:35AM 22        SO WHAT ABOUT THE DEFENSE'S CITED CASES CRITICIZING

11:35AM 23   EVIDENCE FOR BEING MERELY ANECDOTAL?

11:35AM 24        SO THE DEFENDANT'S CASES IF YOU LOOK AT THEM ARE ABOUT THE

11:35AM 25   SUFFICIENCY AND THE TYPE OF EVIDENCE NECESSARY GENERALLY TO

11:35AM 1    PROVE CAUSATION IN CIVIL CASES WHERE ISSUES LIKE CAUSATION AND

11:35AM 2    DAMAGES ARE THE CORE OF THE INQUIRY.

11:36AM 3        AS I MENTIONED BEFORE, THIS IS NOT ONE OF THOSE CASES.

11:36AM 4    THIS IS NOT A CASE WHERE CAUSATION AND DAMAGES ARE GOING TO BE

11:36AM 5    THE ISSUES BEFORE THE JURY.

11:36AM 6        THE DEFENSE HAS CITED CASES THAT INCLUDE CASES ABOUT

11:36AM 7    WHETHER A DIET DRUG CAUSED STROKES, A CASE ABOUT WHETHER A

11:36AM 8    PRESCRIPTION DRUG CAUSED BLEEDING, A CASE ABOUT WHETHER A

11:36AM 9    SUBSTANCE CAUSED HEPATITIS, THERE ARE CITATIONS TO THE

11:36AM 10   REFERENCE MANUAL ON SCIENTIFIC EVIDENCE ARE ALSO ALL ABOUT

11:36AM 11   CAUSATION CASES.

11:36AM 12       THIS IS NOT A CAUSATION CASE.  THIS IS A FRAUD CASE WHERE

11:36AM 13   THE FOCUS, AGAIN, IS ON THE DEFENDANTS'S INTENT AND WHETHER HER

11:36AM 14   KNOWLEDGE OF THERANOS'S ACCURACY AND RELIABILITY PROBLEMS PUT

11:36AM 15   HER ON NOTICE THAT HER REPRESENTATIONS ABOUT THE ACCURACY OF

11:36AM 16   THE TESTS WERE MISLEADING AND WHETHER SHE NONETHELESS MADE

11:36AM 17   THOSE MISREPRESENTATIONS WITH THE INTENT TO DECEIVE AND CHEAT

11:36AM 18   PATIENT VICTIMS.

11:36AM 19       CAUSATION CASES IN CONTRAST RISE AND FALL ON EXPERT

11:36AM 20   TESTIMONY SHOWING A LINK BETWEEN THE MANUFACTURER'S PRODUCT AND

11:36AM 21   SOME HARM SUFFERED BY THE PLAINTIFFS.  SO THAT'S DIFFERENT FROM

11:37AM 22   AN ALLEGATION THAT THE PRODUCTS SIMPLY ISN'T AS DESCRIBED.

11:37AM 23   IT'S DIFFERENT FROM THE ALLEGATION LIKE THE GOVERNMENT AS MADE

11:37AM 24   HERE THAT THE DEFENDANT KNOWINGLY MISLED PEOPLE AS TO THE

11:37AM 25   NATURE OF THE PRODUCT.

11:37AM 1        IN PRODUCTS LIABILITY CASES, IF MEMORY SERVES, INTENT IS

11:37AM 2   NOT A KEY FACTOR.  INSTEAD, THE PERFORMANCE OF THE PRODUCT

11:37AM 3   TAKES CENTER STAGE AND STATISTICAL ANALYSIS FOR CAUSATION MIGHT

11:37AM 4   BE MORE IMPORTANT, BUT AGAIN, THIS IS NOT THAT KIND OF CASE, SO

11:37AM 5   DEFENDANT'S RELIANCE ON THOSE CASES IS OF LIMITED USE TO THE

11:37AM 6   COURT.

11:37AM 7        DEFENDANT OBJECTS TO EVEN THE USE OF THE WORD "VICTIM" TO

11:37AM 8   DESCRIBE THESE WITNESSES HERE.  THE GOVERNMENT UNDERSTANDS THAT

11:37AM 9   SHE IS INNOCENT UNTIL PROVEN GUILTY AND, OF COURSE, THE DEFENSE

11:37AM 10  DOES NOT BELIEVE OR MUST ARGUE THAT A FRAUD DID NOT OCCUR HERE.

11:37AM 11       BUT THIS IS THE GOVERNMENT'S CASE AS CHARGED BY THE -- AND

11:37AM 12  AS RETURNED BY THE GRAND JURY IN THE INDICTMENT.  AND AS THE

11:38AM 13  DEFENSE RECOGNIZED, IT IS THE GOVERNMENT THAT HAS THE BURDEN OF

11:38AM 14  PROOF.  WE'RE SIMPLY ASKING THAT THE COURT ALLOW THE GOVERNMENT

11:38AM 15  THE OPPORTUNITY TO PROVE ITS CASE TO SATISFY THAT BURDEN.

11:38AM 16       IT'S ALSO IMPORTANT TO NOTE THAT WHILE DEFENSE'S -- WHILE

11:38AM 17  THE DEFENSE'S ARGUMENTS FOCUS ON THE SUFFICIENCY OF PATIENT

11:38AM 18  TESTIMONY TO SHOW THAT THERE WERE PROBLEMS WITH THERANOS'S

11:38AM 19  TESTS, THAT EVIDENCE SHOULD NOT BE VIEWED IN A VACUUM EITHER AT

11:38AM 20  TRIAL OR BY THE COURT DURING THIS HEARING.

11:38AM 21       AT TRIAL THE GOVERNMENT INTENDS TO PRESENT SEVERAL

11:38AM 22  VARIETIES OF EVIDENCE THAT WILL SHOW THAT THERANOS'S TESTS

11:38AM 23  SUFFERED FROM A WIDE RANGE OF ACCURACY AND RELIABILITY

11:38AM 24  PROBLEMS.  THOSE CATEGORIES WILL INCLUDE, FOR EXAMPLE,

11:38AM 25  TESTIMONY FROM THERANOS EMPLOYEES ABOUT RECURRING PROBLEMS WITH

11:38AM 1    CERTAIN CATEGORIES OF THERANOS'S CLINICAL TESTS.  THOSE

11:39AM 2    RECURRING PROBLEMS AND THEIR EXISTENCE WILL BE CONFIRMED USING

11:39AM 3    PATIENT COMPLAINTS.

11:39AM 4         THERE WILL ALSO BE TESTIMONY ABOUT TECHNICAL CHALLENGES

11:39AM 5    SPECIFIC TO THERANOS'S TECHNOLOGY THAT THE COMPANY WAS NEVER

11:39AM 6    ABLE TO OVERCOME.

11:39AM 7         YOU WILL HEAR TESTIMONY OR THE JURY WILL HEAR TESTIMONY

11:39AM 8    ABOUT QUALITY CONTROL FAILURE RATES AND HOW THERANOS'S DEVICES

11:39AM 9    FAILED QUALITY CONTROL TESTING AT A SIGNIFICANTLY HIGHER RATE

11:39AM 10   THAN CONVENTIONAL DEVICES USED BY THERANOS'S EMPLOYEES.

11:39AM 11        THERE WILL ALSO BE INTERNAL THERANOS COMMUNICATIONS

11:39AM 12   SHOWING THAT THESE PROBLEMS CAUSED THE COMPANY TO FREQUENTLY

11:39AM 13   WITHDRAW TEST RESULTS, TEMPORARILY STOP OFFERING CERTAIN

11:39AM 14   ASSAYS, SWITCH DEVICES USED TO PERFORM CERTAIN ASSAYS OR

11:39AM 15   CONSIDER ALTERING THE WAY THAT THEY'VE DESCRIBED A GIVEN ASSAY.

11:39AM 16        THE GOVERNMENT INSPECTORS, REGULATORY INSPECTORS WILL

11:39AM 17   TESTIFY ABOUT DEFICIENCIES IN THERANOS'S LAB PRACTICES,

11:39AM 18   DEFICIENCIES THAT WOULD NEGATIVELY IMPACT ACCURACY OF THE

11:39AM 19   TESTS.

11:39AM 20        FINALLY, THERE WILL BE EVIDENCE OF THERANOS'S ULTIMATE

11:40AM 21   VOIDING OF A LARGE PERCENTAGE OF ITS CLINICAL TEST, A STEP THAT

11:40AM 22   WOULD NOT BE NECESSARY IF THERE WERE NO REASON TO DOUBT THE

11:40AM 23   ACCURACY AND THE MERIT OF THOSE TEST RESULTS.

11:40AM 24        SO IN THE CONTEXT OF THE OTHER EVIDENCE, THE EXISTENCE OF

11:40AM 25   INDIVIDUAL DEMONSTRABLY INACCURATE PATIENT TEST RESULTS IT

11:40AM  1    CERTAINLY IS RELEVANT AND IT EASILY MEETS THE TEST UNDER

11:40AM  2    FEDERAL RULE OF EVIDENCE 401 BECAUSE EVIDENCE OF THOSE

11:40AM  3    INACCURATE RESULTS HAS A TENDENCY TO MAKE A FACT OF CONSEQUENCE

11:40AM  4    IN THIS CASE MORE OR LESS PROBABLE CAUSE THAN IT WOULD BE

11:40AM  5    WITHOUT THE EVIDENCE.

11:40AM  6         SPECIFICALLY, THE FACT OF CONSEQUENCE BEING THERANOS'S

11:40AM  7    ACCURACY PROBLEMS AND THE DEFENDANT'S KNOWLEDGE OF THOSE

11:40AM  8    ACCURACY PROBLEMS.

11:40AM  9         I LOOKED AT RULE 401, AND I NOTICED THE ADVISORY COMMITTEE

11:40AM  10   NOTES HAS SOME VERY HELPFUL LANGUAGE ALSO THAT I WANTED TO

11:40AM  11   SHARE.  THE ADVISORY COMMITTEE NOTES SAYS FOR 401, THE STANDARD

11:40AM  12   FOR PROBABILITY UNDER THE RULE IS, QUOTE, "MORE PROBABLE THAN

11:40AM  13   IT WOULD BE WITHOUT THE EVIDENCE.  ANY MORE STRINGENT

11:41AM  14   REQUIREMENT IS UNWORKABLE AND UNREALISTIC."  AND THEN IT QUOTES

11:41AM  15   THE SAYING "A BRICK IS NOT A WALL.  IT IS NOT TO BE SUPPOSED

11:41AM  16   THAT EVERY WITNESS CAN MAKE A HOME RUN."

11:41AM  17        SO I THINK THE DEFENSE, AGAIN, WANTS THE COURT TO VIEW THE

11:41AM  18   OFFERED WITNESS TESTIMONY IN A VACUUM AND ASK THE QUESTION,

11:41AM  19   WOULD THIS TESTIMONY, WOULD THIS EVIDENCE STANDING ON ITS OWN

11:41AM  20   CONCLUSIVELY PROVE THAT THERANOS'S TESTS HAD ACCURACY PROBLEMS,

11:41AM  21   THAT THOSE TESTS WERE INACCURATE?

11:41AM  22        BUT THAT'S NOT THE CORRECT QUESTION.  THE CORRECT QUESTION

11:41AM  23   IS WHETHER THAT EVIDENCE TENDS TO MAKE THAT KEY QUESTION OR

11:41AM  24   THAT KEY FACT MORE OR LESS PROBABLE, AND CERTAINLY THE ANSWER

11:41AM  25   MUST BE YES.

11:41AM 1       IT SHOULD ALSO BE NOTED THAT SOME OF THESE PATIENT

11:41AM 2   EXPERIENCES ARE ESPECIALLY PROBATIVE NOT JUST BECAUSE THEY

11:41AM 3   EVIDENCE THE EXISTENCE OF PROVABLE FALSE RESULTS, BUT ALSO

11:41AM 4   BECAUSE OF THE NATURE OF THOSE RESULTS.

11:41AM 5       SO, FOR EXAMPLE, AS THE DEFENSE KNOWS, MULTIPLE

11:41AM 6   OBSTETRICIANS THAT THE GOVERNMENT HAS SPOKEN TO HAVE SAID THAT

11:42AM 7   THEY ENCOUNTERED PROBLEMS WITH THERANOS'S HCG TEST THAT THEY

11:42AM 8   DIDN'T SEE IN THEIR MANY YEARS OF USING CONVENTIONAL LABS.

11:42AM 9   THAT IS VALUABLE COMPARISON INFORMATION THAT, AGAIN, SHOWS THAT

11:42AM 10  THERANOS'S TESTS SUFFERED FROM PROBLEMS UNIQUE TO THE COMPANY.

11:42AM 11  AND, AGAIN, UNDER RULE 401, THAT IS RELEVANT AND ADMISSIBLE

11:42AM 12  EVIDENCE.

11:42AM 13      SIMILARLY, ONE PRACTITIONER INFORMED THE GOVERNMENT THAT

11:42AM 14  SHE GOT IMPOSSIBLE TESTOSTERONE RESULTS FROM THERANOS FROM

11:42AM 15  MULTIPLE PATIENTS AFTER NOT GETTING OR NOT HAVING THOSE

11:42AM 16  PROBLEMS WITH OTHER LABS IN THE PAST.

11:42AM 17      FINALLY, ONE OF THE GOVERNMENT'S ANTICIPATED WITNESSES AND

11:42AM 18  THE BASIS OF AN INDICTED COUNT GOT TWO IMPOSSIBLE PROSTATE TEST

11:42AM 19  RESULTS.  OUT OF THREE THERANOS TESTS, TWO OF THEM WERE

11:42AM 20  PROVABLY FALSE.

11:42AM 21      SO AGAIN, THIS REALLY UNDERCUTS THE DEFENDANT'S CLAIM

11:42AM 22  ABOUT THE .1 PERCENT TO 3 PERCENT FAILURE RATE THAT THEY WOULD

11:43AM 23  EXPECT TO SEE IN ALL LABORATORY TESTING.

11:43AM 24      WHEN WE SEE PATIENTS GETTING TESTS AND SEEING ERRORS THAT

11:43AM 25  DID NOT OCCUR WITH OTHER LABS, WHEN WE SEE PATIENTS GETTING

11:43AM 1 MULTIPLE ERRONEOUS RESULTS FROM IT THERANOS IN A SHORT PERIOD

11:43AM 2 OF TIME, THAT DOES TEND TO SHOW THAT THERANOS'S TESTS SUFFERED

11:43AM 3 FROM ACCURACY AND RELIABILITY PROBLEMS AS CHARGED IN THE

11:43AM 4 INDICTMENT.

11:43AM 5  I'LL MOVE ON NEXT TO THE LIS, BUT I WANTED TO PAUSE AND

11:43AM 6 SEE IF THE COURT HAS ANY QUESTIONS ON THE POINTS I HAVE MADE SO

11:43AM 7 FAR.

11:43AM 8  THE COURT:  WELL, I DID HAVE A QUESTION.  I DON'T

11:43AM 9 KNOW IF IT'S APPROPRIATE NOW.  THERE IS A SEPARATE STANDALONE

11:43AM 10 MOTION REGARDING THE ADMISSIBILITY OF PATIENT EXPERIENCES AND

11:43AM 11 PERSONAL EXPERIENCES.

11:43AM 12  MR. WADE TOUCHED A LITTLE BIT ABOUT THAT IN HIS

11:43AM 13 PRESENTATION.  I DON'T KNOW IF YOU WANT TO SPEAK TO THAT OR IF

11:43AM 14 YOU WOULD PREFER TO WAIT UNTIL THAT MOTION IS BEFORE THE COURT.

11:43AM 15  MR. BOSTIC:  SO, YOUR HONOR, I AM NOT THE AUSA WHO

11:44AM 16 WILL BE HANDLING THAT ARGUMENT, SO RESPECTFULLY I WOULD LIKE TO

11:44AM 17 DEFER TO MY COLLEAGUE ON THAT ONE.

11:44AM 18  THE COURT:  SURE.

11:44AM 19  MR. BOSTIC:  BUT I WILL SAY AS TO RULE 403 AND

11:44AM 20 PATIENT HARM, THE GOVERNMENT IS AWARE OF RULE 403, OF COURSE.

11:44AM 21 AND AS I MENTIONED BEFORE, THE PURPOSE OF THE VICTIM TESTIMONY

11:44AM 22 HERE IS TO PROVIDE CONCRETE EXAMPLES OF INSTANCES WHERE

11:44AM 23 PATIENTS, CUSTOMERS, VICTIMS OF THE ALLEGED FRAUD RECEIVED

11:44AM 24 INACCURATE TEST RESULTS FROM THERANOS.  THAT MUST BE RELEVANT.

11:44AM 25  I SHOULD ALSO RESPOND TO MR. WADE'S ALLEGATION THAT THE

11:44AM 1    GOVERNMENT SEEKS TO ADMIT THIS EVIDENCE BECAUSE OF ITS

11:44AM 2    EMOTIONAL CONTENT.  THAT SIMPLY IS NOT TRUE.  AND IT'S PROVABLE

11:44AM 3    OR THAT FACT IS PROVABLE IF THE GOVERNMENT -- I'M SORRY, OR IF

11:44AM 4    THE COURT LOOKS AT WHICH WITNESSES THE GOVERNMENT HAS SELECTED

11:44AM 5    TO TESTIFY.

11:44AM 6         FOR EXAMPLE, THE PATIENT THAT I MENTIONED A MOMENT AGO WHO

11:44AM 7    RECEIVED THE INACCURATE PROSTATE TEST RESULTS TOLD US THAT

11:45AM 8    THOSE RESULTS DIDN'T CONCERN HIM BECAUSE HIS DOCTOR KNEW FROM

11:45AM 9    THE FIRST LOOK THAT THOSE RESULTS WERE INACCURATE.  SO THERE'S

11:45AM 10   NO COMPONENT IN THAT STORY WHERE THAT PATIENT WORRIED THAT HE

11:45AM 11   WAS ILL OR HE WAS GOING TO DIE.  THERE WAS NO SIGNIFICANT

11:45AM 12   EMOTIONAL DISTRESS STEMMING FROM THAT, AND YET THAT PATIENT IS

11:45AM 13   A BASIS OF ONE OF THE COUNTS IN THE GOVERNMENT'S INDICTMENT.

11:45AM 14        SIMILARLY, THE DOCTOR THAT I MENTIONED WHO GOT A NUMBER OF

11:45AM 15   INACCURATE TESTOSTERONE RESULTS FROM THERANOS INDICATED THAT

11:45AM 16   SHE DIDN'T MAKE ANY TREATMENT CHANGES TO HER PATIENTS BASED ON

11:45AM 17   THOSE INACCURATE RESULTS.  SO THOSE PATIENTS WERE ALSO NOT

11:45AM 18   HARMED BY THE INACCURATE RESULTS THAT THERANOS SENT OUT.

11:45AM 19        DOES THE GOVERNMENT CONCEDE THE DEFENSE'S CLAIM THAT THIS

11:45AM 20   HARM NEVER OCCURRED TO ANY PATIENT?

11:45AM 21        OF COURSE NOT.  THERE'S NO REASON TO BELIEVE THAT,

11:45AM 22   ESPECIALLY GIVEN THE NUMBER OF PATIENTS AND THE NUMBER OF TESTS

11:45AM 23   THAT THERANOS DID WHILE EXPERIENCING THESE ACCURACY PROBLEMS.

11:46AM 24        BUT THE GOVERNMENT'S SELECTION OF WITNESSES FOR THIS TRIAL

11:46AM 25   DOES NOT FOCUS ON PRESENTING WITNESSES WHO HAVE EXPERIENCED

11:46AM  1    THAT KIND OF TRAUMA.

11:46AM  2          THE COURT:  ALL RIGHT.  THANK YOU.

11:46AM  3       IF YOU WANT TO -- BEFORE YOU MOVE TO THE LIS CONVERSATION,

11:46AM  4    AND I THINK YOU'LL TALK ABOUT IN YOUR PORTION YOU'LL TALK ABOUT

11:46AM  5    MY QUESTION ABOUT WEIGHT VERSUS ADMISSIBILITY.

11:46AM  6       BUT GOVERNMENT 10 SEEMS TO BE SOMEWHAT RELATED TO THIS,

11:46AM  7    AND, THAT IS, AND I THINK THE PHRASE IS THERE'S A LOT OF 404(B)

11:46AM  8    LANGUAGE IN THE PLEADINGS HERE AND ATTACHED TO SOME OF THE

11:46AM  9    EVIDENCE.

11:46AM  10       I THINK GOVERNMENT 10 SAYS THAT THIS EVIDENCE IS

11:46AM  11    INEXTRICABLY INTERTWINED?  IS THAT THE GOVERNMENT'S POSITION?

11:46AM  12    AND IF SO, MAYBE YOU CAN TALK ABOUT THAT FOR A MOMENT.

11:46AM  13          MR. BOSTIC:  IT IS, YOUR HONOR.

11:46AM  14       IS THE COURT SPECIFICALLY ASKING ABOUT PATIENTS WHO IT SO

11:46AM  15    HAPPENED DID NOT PAY FOR THE TESTS THAT THEY RECEIVED?

11:47AM  16          THE COURT:  RIGHT, THEY WERE NONPAYING.  AND THE

11:47AM  17    COURT HAS ALREADY RULED ON THAT AS FAR AS THE MOTION TO

11:47AM  18    DISMISS.

11:47AM  19       BUT I THINK THE GOVERNMENT IS SAYING THAT THAT EVIDENCE IS

11:47AM  20    NONETHELESS RELEVANT AND THE GOVERNMENT WOULD NOT IDENTIFY

11:47AM  21    THOSE INDIVIDUALS AS VICTIMS, BUT THEIR TESTIMONY HAS RELEVANCE

11:47AM  22    BECAUSE IT SEEMS YOU'RE SUGGESTING THAT THAT COMMENT IS

11:47AM  23    INEXTRICABLY INTERTWINED WITH THE SCHEME, THE FRAUD?

11:47AM  24          MR. BOSTIC:  CORRECT, YOUR HONOR.  YES, I WILL

11:47AM  25    EXPLAIN THAT.

11:47AM 1     LET ME START BY SAYING THAT THE GOVERNMENT ABSOLUTELY

11:47AM 2  ACCEPTS THE COURT'S RULING AND IS NOT SEEKING TO UNDERMINE IT

11:47AM 3  THAT INDIVIDUALS WHO DID NOT PAY OUT OF POCKET FOR THERANOS

11:47AM 4  TEST RESULTS ARE NOT VICTIMS IN THIS CASE.

11:47AM 5     THAT IS TO SAY, THEY DID NOT END UP BECOMING VICTIMS OF

11:47AM 6  DEFENDANT'S SCHEME TO DEFRAUD.  INDIVIDUALS WHO RECEIVED

11:47AM 7  THERANOS TESTS BUT WHERE THOSE TESTS WERE EITHER FREE OR WERE

11:48AM 8  PAID FOR BY INSURANCE WERE INTENDED VICTIMS OF THAT SAME SCHEME

11:48AM 9  TO DEFRAUD, BUT IT TURNED OUT THAT THEY ENDED UP NOT BEING

11:48AM 10  SEPARATED FROM THEIR MONEY, SO THEY ENDED UP NOT BEING ACTUAL

11:48AM 11  VICTIMS OF A COMPLETED FRAUD UNDER THE COURT'S RULING AND

11:48AM 12  REASONING.

11:48AM 13     SO THE GOVERNMENT ACCEPTS THAT.

11:48AM 14     BUT BECAUSE INDIVIDUALS WHO RECEIVED UNRELIABLE TESTS FROM

11:48AM 15  THERANOS, EVEN WITHOUT PAYING, WERE VICTIMS OF OR WERE INTENDED

11:48AM 16  VICTIMS OF THAT SCHEME TO DEFRAUD, THEIR EXPERIENCES ARE

11:48AM 17  SIMILARLY RELEVANT.

11:48AM 18     THE CONDUCT OF DEFENDANT TOWARDS THOSE VICTIMS, EXCUSE ME,

11:48AM 19  TOWARDS THOSE PATIENTS IS STILL RELEVANT BECAUSE IT WAS ALL

11:48AM 20  DONE IN THE SAME COURSE OF CONDUCT DURING WHICH THE PAYING

11:48AM 21  PATIENTS WERE DEFRAUDED.

11:48AM 22     SO THE NONPAYING PATIENTS HEARD THE SAME ADVERTISING

11:48AM 23  MATERIALS, THEY WERE EXPOSED TO THE SAME PROMOTIONAL CLAIMS

11:48AM 24  FROM THERANOS, THEY MADE SIMILAR DECISIONS ABOUT RELYING ON

11:49AM 25  THOSE CLAIMS TO PATRONIZE THERANOS, AND TO THE EXTENT THAT THEY

11:49AM  1   RECEIVED DEMONSTRABLY INACCURATE TEST RESULTS, THE EXISTENCE OF

11:49AM  2   THOSE INACCURATE RESULTS IS PROOF FIRST THAT THERANOS HAD

11:49AM  3   ACCURACY AND RELIABILITY PROBLEMS.  AND TO THE EXTENT THAT

11:49AM  4   THERANOS WAS THEN INFORMED OF THOSE SPECIFIC ERRORS, WHICH THEY

11:49AM  5   WERE IN MANY CASES, IT'S PROOF OF THERANOS'S COLLECTIVE

11:49AM  6   KNOWLEDGE OF THOSE ACCURACY PROBLEMS AND DEFENDANT'S KNOWLEDGE

11:49AM  7   SPECIFICALLY.

11:49AM  8            THE COURT:  THANK YOU.

11:49AM  9            MR. BOSTIC:  WE SHOULD TALK ABOUT THE LIS.

11:49AM 10       FIRST, LET'S TALK ABOUT WHAT THE LIS WAS AND WHAT IT WAS

11:49AM 11   NOT.  I THINK THE DEFENSE HAS BEEN HELPFUL TO A DEGREE IN

11:49AM 12   EXPLAINING WHAT DATA SPECIFICALLY WAS IN THAT LIS.

11:49AM 13       THE COURT WILL NOTE, THOUGH, THAT NOWHERE IN THE LIS DATA

11:49AM 14   WAS THERE A COLUMN OR A FIELD THAT WOULD INDICATE WHETHER A

11:50AM 15   GIVEN RESULT WAS ACCURATE OR INACCURATE.

11:50AM 16       SO TO THE EXTENT THAT THE LIS IS BEING HELD OUT AS

11:50AM 17   SUFFICIENT TO ANSWER THE QUESTION HOW MANY THERANOS TESTS WERE

11:50AM 18   INACCURATE, THERE'S NO REASON TO THINK THAT THE LIS WOULD HAVE

11:50AM 19   BEEN ABLE TO DO THAT.

11:50AM 20       IT CERTAINLY WOULD HAVE BEEN A POWERFUL TOOL TO USE IN THE

11:50AM 21   GOVERNMENT'S INVESTIGATION.  THE LIS WOULD HAVE BEEN USEFUL TO

11:50AM 22   HELP IDENTIFY PATIENT VICTIMS.  IT WOULD HAVE PROVIDED A

11:50AM 23   GREATER OVERVIEW OF WHICH ASSAYS THERANOS WAS RUNNING AND WHEN,

11:50AM 24   AND OW MANY OF THE GIVEN ASSAY TYPE WERE RUN DURING A RELEVANT

11:50AM 25   TIME PERIOD.

11:50AM 1        BUT THE GOVERNMENT HAS BEEN ABLE TO CAPTURE THAT

11:50AM 2    INFORMATION IN VARIOUS OTHER WAYS.  SOME REPORTS WERE RUN FROM

11:50AM 3    THE LIS SYSTEM BEFORE IT WAS SHUT DOWN.

11:50AM 4        THE GOVERNMENT ALSO HAS EQUIVALENT INFORMATION FROM THE

11:50AM 5    LAB REPORTS THEMSELVES, FROM EMPLOYEE TESTIMONY ABOUT HOW TESTS

11:50AM 6    WERE RUN AT VARIOUS TIMES AND SOME OTHER THERANOS RECORDS.

11:50AM 7        SO THE TYPE OF INFORMATION THAT WAS CAPTURED IN THE LIS IN

11:51AM 8    ONE PLACE HAS, THANKFULLY, BEEN PRESERVED IN PART ELSEWHERE IN

11:51AM 9    THE MATERIALS OBTAINED BY THE GOVERNMENT.

11:51AM 10        IN ADDITION, THE LIS CONTAINED QUALITY CONTROL DATA THAT

11:51AM 11    WOULD PROVIDE MORE INFORMATION ABOUT HOW FREQUENTLY THERANOS'S

11:51AM 12    DEVICES FAILED THAT QUALITY CONTROL EVALUATION THAT WAS DONE

11:51AM 13    SEPARATE FROM THE ACTUAL CLINICAL TESTING.

11:51AM 14        BUT, AGAIN, THE LIS DID NOT INDICATE WHICH RESULTS WERE

11:51AM 15    ACCURATE AND WHICH WERE INACCURATE.  SO THE LIS WOULD NOT HAVE

11:51AM 16    BEEN THE TOOL THAT EITHER SIDE COULD USE TO DETERMINE THE

11:51AM 17    OVERALL FAILURE RATE OR THE OVERALL ERROR RATE OF THERANOS'S

11:51AM 18    TESTS, BUT THAT'S OKAY BECAUSE THIS CASE IS NOT ABOUT OVERALL

11:51AM 19    FAILURE RATE.  THIS IS NOT ABOUT DETERMINING WHAT PERCENTAGE OF

11:51AM 20    THERANOS'S TESTS WERE INACCURATE AND HOLDING THAT UP AGAINST

11:51AM 21    SOME KIND OF INDUSTRY STANDARD.

11:51AM 22        INSTEAD, THIS IS A WIRE FRAUD CASE.  THE DEFENDANT

11:51AM 23    REPRESENTED THAT THE TESTS WERE ACCURATE AND RELIABLE KNOWING

11:51AM 24    THAT THEY HAD THESE PROBLEMS, AND IT WILL BE UP TO THE JURY TO

11:52AM 25    DECIDE WHETHER HER KNOWLEDGE OF THOSE PROBLEMS, AGAIN, PUT HER

11:52AM 1    ON NOTICE THAT THOSE REPRESENTATIONS WERE MISLEADING AND

11:52AM 2    WHETHER SHE MADE THOSE REPRESENTATIONS TO DEFRAUD.

11:52AM 3        IT'S ALSO I THINK IMPORTANT TO NOTE THAT EVEN IF THE LIS

11:52AM 4    WERE CAPABLE OF PRODUCING AN ESTIMATED FAILURE RATE AND OVERALL

11:52AM 5    FAILURE RATE FOR THE LAB TESTS DONE BY THERANOS, THE DEFENSE

11:52AM 6    WOULD STILL BE ARGUING THAT THIS INFORMATION WAS IRRELEVANT TO

11:52AM 7    A WIRE FRAUD CASE, AND ARGUABLY CORRECTLY SO, BECAUSE THEY

11:52AM 8    WOULD BE ARGUING THAT UNLESS HOLMES HAS DONE THAT SAME ANALYSIS

11:52AM 9    AND HAD BEEN AWARE OF THAT OVERALL FAILURE RATE, THAT IT

11:52AM 10   WOULDN'T BE RELEVANT TO HER INTENT TO DEFRAUD IN THIS CRIMINAL

11:52AM 11   CASE.

11:52AM 12       SO I THINK WHEN THE DEFENSE HOLDS OUT THE LIS AS A

11:52AM 13   CRITICAL PIECE OF EVIDENCE, THE EVIDENCE THAT THE GOVERNMENT

11:52AM 14   COULD USE TO PROVE ITS CASE, I THINK THAT'S A STRAW MAN

11:52AM 15   ARGUMENT.  THE LIS WAS NOT CRITICAL TO THE CHARGING IN THIS

11:53AM 16   CASE NOR IS IT CRITICAL TO THE PROOF AT TRIAL.

11:53AM 17       WHEN IT COMES TO BLAME FOR THE LOSS OF THE LIS.  AS THE

11:53AM 18   COURT CAN TELL, THIS IS A VERY HOTLY DEBATED FACTUAL DISPUTE.

11:53AM 19   THE GOVERNMENT'S OPPOSITION DISCUSSED DESTRUCTION OF THE

11:53AM 20   LIS DATABASE BECAUSE THE GOVERNMENT BELIEVES THAT THOSE FACTS

11:53AM 21   WERE IMPORTANT BACKGROUND FOR THE COURT TO KEEP IN MIND WHEN

11:53AM 22   WEIGHING THE DEFENSE'S ATTEMPT TO REMOVE PATIENT TESTIMONY FROM

11:53AM 23   TRIAL.

11:53AM 24       THE DEFENDANT ARGUES THAT THE GOVERNMENT'S CASE IS DOOMED

11:53AM 25   BY A LACK OF STATISTICAL ANALYSIS ACCOUNTING FOR ALL OF

11:53AM 1    THERANOS'S TEST RESULTS, BUT THAT'S SIMPLY NOT TRUE.  THE

11:53AM 2    ELEMENTS IN THE CASE LAW DON'T REQUIRE THAT KIND OF STATISTICAL

11:53AM 3    ANALYSIS IN THIS CASE.

11:53AM 4         WHEN IT COMES TO WHOSE FAULT IT IS THAT THE LIS IS

11:53AM 5    MISSING, OBVIOUSLY THE PARTIES DISAGREE.  THE GOVERNMENT

11:53AM 6    ABSOLUTELY DOES NOT CONCEDE THAT IT'S THE GOVERNMENT'S FAULT

11:54AM 7    THAT THAT EVIDENCE WAS MISSING.

11:54AM 8         I WON'T GO THROUGH THE ENTIRE STORY.  I THINK THE COURT

11:54AM 9    HAS THE BRIEFING FOR THAT.  BUT IT'S IMPORTANT TO JUST REMEMBER

11:54AM 10   A FEW KEY DATES AND KEY EVENTS.

11:54AM 11        THE DATABASE ITSELF WAS SUBPOENAED FROM THERANOS IN JUNE

11:54AM 12   2018.  I BELIEVE THE DATE WAS JUNE 4TH, 2018.  THE DEFENSE

11:54AM 13   MIGHT HAVE MISTAKENLY SAID JUNE 14TH.

11:54AM 14        THE DISCUSSIONS ABOUT RESPONDING TO THAT SUBPOENA BEGAN AT

11:54AM 15   THERANOS WHILE THE DEFENDANT WAS STILL CEO.  SO WHILE SHE WAS

11:54AM 16   STILL RUNNING THE COMPANY, HER EMPLOYEES, HER AGENTS WERE

11:54AM 17   DISCUSSING HOW TO RESPOND TO THAT SUBPOENA FOR THE LIS.

11:54AM 18        EVENTUALLY FOLLOWING THE INDICTMENT A PURPORTED COPY OF

11:54AM 19   THE LIS WAS PRODUCED TO THE GOVERNMENT AT THE END OF AUGUST

11:54AM 20   2018, AUGUST 27TH, 2018.  THE DATABASE WAS COMPLETELY SHUT

11:54AM 21   DOWN, IN OTHER WORDS, THERANOS'S COPY OF THE DATABASE WAS SHUT

11:54AM 22   DOWN BY AUGUST 31ST, 2018.

11:54AM 23        SO WE'RE TALKING ABOUT A FOUR-DAY WINDOW BETWEEN WHEN THE

11:55AM 24   GOVERNMENT RECEIVED WHAT IT WAS TOLD AND WHAT IT BELIEVED WAS A

11:55AM 25   COPY OF THERANOS'S LIS DATABASE, AND WHEN THE WORKING COPY OF

11:55AM  1    THAT DATABASE, WHAT TURNED OUT FROM THE GOVERNMENT'S

11:55AM  2    UNDERSTANDING TO BE THE ONLY WORKING COPY OF THAT DATABASE, WAS

11:55AM  3    DESTROYED BY THERANOS, WAS DISASSEMBLED IN A WAY THAT MADE IT

11:55AM  4    LIKELY IMPOSSIBLE FOR IT TO EVER BE RECONSTRUCTED AND ACCESSED

11:55AM  5    AGAIN.

11:55AM  6         IN LIGHT OF THOSE FACTS, ALL OF THE DEFENSE'S ARGUMENTS

11:55AM  7    ABOUT THE GOVERNMENT'S COUPLE WEEK DELAY BEFORE ATTEMPTING TO

11:55AM  8    ACCESS THE DATABASE, ITS DELAY BEFORE TAKING ADDITIONAL STEPS

11:55AM  9    TO TRY TO RECONSTRUCT THAT DATABASE, STEPS WHICH WERE

11:55AM  10   ULTIMATELY FUTILE AND WHICH MAY HAVE BEEN DOOMED FROM THE

11:55AM  11   START, ALL OF THOSE ARGUMENTS ARE IRRELEVANT BECAUSE IN ORDER

11:55AM  12   FOR THE GOVERNMENT TO BE RESPONSIBLE FOR THIS LOSS, THE

11:55AM  13   GOVERNMENT WOULD HAVE NEEDED TO HAVE KNOWN DURING THAT FOUR-DAY

11:55AM  14   WINDOW WHEN IT STILL COULD HAVE DONE SOMETHING ABOUT IT THAT

11:56AM  15   THE COPY IT OBTAINED WAS USELESS, BUT THE GOVERNMENT DIDN'T

11:56AM  16   KNOW THAT DURING THAT WINDOW.

11:56AM  17        THE ONLY PEOPLE WHO KNEW THAT THAT COPY WAS INACCESSIBLE

11:56AM  18   AND UNWORKABLE WERE INDIVIDUALS AT THERANOS, INDIVIDUALS WHO

11:56AM  19   HAD PREVIOUSLY WORKED FOR DEFENDANT, AND INDIVIDUALS WHO WORKED

11:56AM  20   AT A COMPANY WHERE DEFENDANT WAS STILL CHAIRMAN OF THE BOARD OF

11:56AM  21   THAT COMPANY.

11:56AM  22        SO THERE IS A FACTUAL DISPUTE HERE.  THE GOVERNMENT

11:56AM  23   RECOGNIZES THAT.

11:56AM  24        SO THE COURT'S QUESTION WHAT SHOULD BE DONE NOW ABOUT THE

11:56AM  25   LIS ISSUE, I THINK THE GOVERNMENT'S ANSWER IS TWOFOLD.

11:56AM  1        FIRST, TO THE EXTENT THAT THE LIS IS THE SUBJECT OF

11:56AM  2   ANOTHER MOTION IN LIMINE, WITH THE COURT'S PERMISSION, I'LL

11:56AM  3   DEFER TO MY COLLEAGUE WHO WILL COVER THAT MOTION, BUT I SUSPECT

11:56AM  4   THE GOVERNMENT'S ANSWER WILL BE THAT ITS INVESTIGATION

11:56AM  5   REGARDING THE LIS AND RESPONSIBILITY FOR ITS DESTRUCTION IS

11:56AM  6   ONGOING.

11:56AM  7        SO WE DON'T YET KNOW THE NATURE OF EVIDENCE THAT WOULD BE

11:56AM  8   PRESENTED AT TRIAL.  NO ONE HAS BEEN CHARGED WITH OBSTRUCTION

11:57AM  9   IN THIS CASE.  SO IT'S PREMATURE, I THINK, TO DECIDE WHETHER

11:57AM 10   THAT ISSUE WILL BE PART OF THIS TRIAL OR NOT.  I THINK WE NEED

11:57AM 11   TO WAIT AND SEE WHERE THAT INVESTIGATION GOES.

11:57AM 12        AS TO THIS SPECIFIC MOTION AND WHETHER PATIENT TESTIMONY

11:57AM 13   SHOULD COME IN, THE COURT DOES NOT NEED TO TAKE A SIDE ON THE

11:57AM 14   LIS ISSUE, DOES NOT NEED TO RESOLVE THAT DISPUTE IN ORDER TO

11:57AM 15   DECIDE THE MOTION THAT IS IN FRONT OF IT.  THE GOVERNMENT WOULD

11:57AM 16   URGE THE COURT TO FOCUS ON THE IMPORTANCE OF THAT TESTIMONY AND

11:57AM 17   THE REASONS FOR ITS ADMISSIBILITY SEPARATE FROM THE LIS ISSUE.

11:57AM 18            THE COURT:  THANK YOU.  THAT WAS GOING TO BE MY

11:57AM 19   QUESTION IS WHETHER FOR THIS MOTION THE LIS CAN BE PARSED OUT

11:57AM 20   AND SEPARATED?

11:57AM 21        MR. DOWNEY GAVE AN OVERARCHING COMMENT ABOUT THE LIS AND

11:57AM 22   WHY IT'S SO IMPORTANT AND WHY THE RESULTS OF ANECDOTAL, HE USED

11:57AM 23   THE WORD "ANECDOTAL," SUGGESTS THAT IT'S JUST NOT ENOUGH.

11:58AM 24        AND I ASKED HIM ABOUT THE WEIGHT.  AND WE HAD A BREAK, AND

11:58AM 25   HE HAD PLENTY OF TIME TO THINK ABOUT THAT QUESTION.

11:58AM 1    WHAT IS YOUR RESPONSE?  IS THIS REALLY A WEIGHT ISSUE AS

11:58AM 2    OPPOSED TO AN ADMISSIBILITY ISSUE?  AND IF SO, WHY?

11:58AM 3    MR. BOSTIC:  IT ABSOLUTELY IS A WEIGHT ISSUE,

11:58AM 4    YOUR HONOR.  AND I THINK THE COURT CORRECTLY RECOGNIZED THAT

11:58AM 5    THE ARGUMENTS THAT THE DEFENSE IS MAKING ARE THE ARGUMENTS THAT

11:58AM 6    IT CAN MAKE EITHER IN A RULE 29 MOTION IN ITS CROSS-EXAMINATION

11:58AM 7    OF GOVERNMENT WITNESSES OR IN IT'S CLOSING REMARKS TO THE JURY.

11:58AM 8    THESE ARE QUESTIONS FOR THE JURY TO DECIDE:  WHAT IS THE

11:58AM 9    IMPORT OF THIS PERSON'S TESTIMONY?  WHAT CONCLUSIONS SHOULD I

11:58AM 10    DRAW FROM IT?  HOW MUCH WEIGHT CAN I GIVE IT.

11:58AM 11    WHEN IT COMES TO ADMISSIBILITY, THOUGH, I THINK RULE 401

11:58AM 12    IS CLEAR.  THOSE SAME ADVISORY NOTES FROM RULE 401 SAY THAT

11:58AM 13    DEALING WITH PROBABILITY IS THE LANGUAGE OF THE RULE HAS THE

11:59AM 14    ADDED BENEFIT OF AVOIDING CONFUSION BETWEEN QUESTIONS OF

11:59AM 15    ADMISSIBILITY AND QUESTIONS OF THE SUFFICIENCY OF THE EVIDENCE,

11:59AM 16    AND I THINK THAT'S THE ERROR THAT THE DEFENSE HAS MADE IN ITS

11:59AM 17    ARGUMENT.

11:59AM 18    I THINK THEY'RE FOCUSSING ON THE SUFFICIENCY OF THE

11:59AM 19    EVIDENCE WHERE ADMISSIBILITY REALLY IS THE KEY QUESTION HERE.

11:59AM 20    THESE ARE THE BRICKS THAT MAKE UP THE GOVERNMENT'S PROOF.  THEY

11:59AM 21    ARE NOT THE WALL.

11:59AM 22    MR. WADE:  BRIEFLY, YOUR HONOR.  I SHOULD MAKE CLEAR

11:59AM 23    THAT MR. WADE WAS WHO MADE THAT ARGUMENT.  I DON'T WANT IT

11:59AM 24    ATTRIBUTED TO MR. DOWNEY IN THE ANNALS OF HISTORY AND HAVE HIM

11:59AM 25    SUFFER FROM MY DEFICIENT ARGUMENT.

11:59AM 1          LABELLING SOMEONE AS A VICTIM DOES NOT MAKE IT SO.  ONE IS

12:00PM 2     A VICTIM IF YOU ESTABLISH THAT THEY'RE A VICTIM.  WE AGREE WITH

12:00PM 3     THE GOVERNMENT THAT THERE'S A FRAUD, THAT THIS CASE INVOLVES

12:00PM 4     WIRE FRAUD.

12:00PM 5          SO THE QUESTION THAT IS AT ISSUE HERE IS WHETHER IN THE

12:00PM 6     TERMS OF THE INDICTMENT THE THERANOS TECHNOLOGY CAUSED THE WIRE

12:00PM 7     FRAUD, CAUSED THE ERRONEOUS RESULT.  THAT'S WHAT IS SET FORTH

12:00PM 8     IN THE INDICTMENT.

12:00PM 9          THE GOVERNMENT SAID -- IGNORES THE FIRST HALF AND SAYS

12:00PM 10    THERE'S AN ERRONEOUS RESULT THAT HAPPENED AT THERANOS, BUT YOU

12:00PM 11    HAVE TO SHOW THE CONNECTION BETWEEN THE TWO TO ESTABLISH THAT

12:00PM 12    IT'S A VICTIM.

12:00PM 13         WE'RE NOT TRYING TO PREVENT AN ACTUAL VICTIM FROM OFFERING

12:00PM 14    TESTIMONY.

12:00PM 15             THE COURT:  SO IS IT JUST THE NOMENCLATURE?  IF A

12:00PM 16    PERSON IS CALLED -- IF WITNESS A IS CALLED, AND IF HE OR SHE IS

12:00PM 17    JUST CALLED A PATIENT, A CLIENT, IS THAT ALL RIGHT THEN WITHOUT

12:00PM 18    CALLING THEM A VICTIM?

12:00PM 19             MR. WADE:  NO.  THE EVIDENCE IS IRRELEVANT FOR ALL

12:01PM 20    OF THE REASONS THAT I JUST SUGGESTED, BUT WHAT THE GOVERNMENT

12:01PM 21    IS DOING IS LABELLING THIS TESTIMONY AS VICTIM TESTIMONY AND

12:01PM 22    SORT OF CREATING A SPECIAL BUBBLE AROUND IT AND SUGGESTING THAT

12:01PM 23    YOU COULDN'T POSSIBLY PRECLUDE VICTIM TESTIMONY.

12:01PM 24         WELL, IT'S ONLY VICTIM TESTIMONY IF THEY'RE DEPRIVED OF --

12:01PM 25    THE GOVERNMENT USED THE WORD "PRODUCT."  IT'S NOT A PRODUCT,

12:01PM  1     IT'S A SERVICE.

12:01PM  2          THE COURT:  WELL, THEY'RE FACT WITNESSES, AREN'T

12:01PM  3     THEY?  AREN'T THEY FACT WITNESSES?

12:01PM  4        THE GOVERNMENT CALLS WITNESSES TO PROVE THEIR CASE, AND

12:01PM  5     THE PURPOSE OF THE TRIAL IS TO TEST THE EVIDENCE.  AND THESE

12:01PM  6     ARE FACT WITNESSES WHO WILL SAY WHATEVER THEY SAID AND WHATEVER

12:01PM  7     THEIR CONNECTION WITH YOUR CLIENT'S COMPANY WAS, AND THEY WILL

12:01PM  8     BE DIRECT EXAMINED, AND THEN YOU'LL CROSS-EXAMINE THEM, AND

12:01PM  9     THEN THE JURY WILL HAVE TO DECIDE HOW MUCH WEIGHT TO GIVE TO

12:01PM  10    THEIR TESTIMONY AND THEIR EXPERIENCE.

12:01PM  11         MR. WADE:  AGAIN, IT'S AN INVITATION TO ERROR,

12:01PM  12    YOUR HONOR, BECAUSE THEY'RE PROFFERING TESTIMONY THAT THEY

12:01PM  13    HAVEN'T ESTABLISHED IS RELEVANT.

12:01PM  14        YOU HAVE TO ESTABLISH THAT THERE'S A THRESHOLD RELEVANCE

12:01PM  15    TO THE EVIDENCE BEFORE YOU PUT US TO THE BURDEN OF CHALLENGING

12:02PM  16    THAT EVIDENCE, BEFORE YOU PUT MS. HOLMES TO THAT BURDEN.

12:02PM  17         THE COURT:  I SEE.

12:02PM  18         MR. WADE:  THEY HAVEN'T ESTABLISHED THAT BECAUSE

12:02PM  19    THERE'S NO CAUSAL CONNECTION.

12:02PM  20         THE COURT:  SO YOUR ARGUMENT -- I FAILED TO ASK

12:02PM  21    MR. BOSTIC.  MAYBE HE'LL STAND IN RESPONSE TO THIS.  IT SOUNDS

12:02PM  22    LIKE YOU'RE SAYING THERE'S BURDEN SHIFTING HERE.

12:02PM  23         MR. WADE:  THERE'S CLEARLY BURDEN SHIFTING BECAUSE,

12:02PM  24    YOUR HONOR, FOR IT TO BE RELEVANT, THEY HAVE TO SHOW -- AGAIN,

12:02PM  25    THE SERVICES ARE MULTI FACETTED.

12:02PM 1      SO LET'S SAY THE RESULT THAT -- THE ERRONEOUS RESULT WAS

12:02PM 2  CAUSED BY THE FACT THAT THE BLOOD SAT FOR A DAY AT 110 DEGREE

12:02PM 3  HEAT IN PHOENIX BEFORE IT MADE ITS WAY TO -- WE DON'T HAVE ANY

12:02PM 4  WAY TO KNOW THAT BECAUSE WE DON'T HAVE THE EVIDENCE THAT WOULD

12:02PM 5  SHOW SORT OF THE AUDIT TRAIL, THE CHAIN OF CUSTODY.

12:02PM 6      THE GOVERNMENT ASSUMES THAT BECAUSE THERE'S AN ERROR, IT'S

12:02PM 7  THE RESULT OF THERANOS BECAUSE THEY GOT THE TEST AT THERANOS.

12:02PM 8  ACTUALLY, THEY ASSUME BECAUSE THERE'S AN ERROR, IT'S THERANOS

12:03PM 9  TECHNOLOGY AS SET FORTH IN THE INDICTMENT THAT CAUSED THE ERROR

12:03PM 10  WHEREAS THERE ARE MANY OTHER ASPECTS OF THE TESTING PROCESS

12:03PM 11  THAT HAVE NOTHING TO DO WITH THERANOS TECHNOLOGY.

12:03PM 12      THE COURT:  SO MAY I STOP YOU THERE?

12:03PM 13      I'M GOING TO HAVE THE UNIQUE OPPORTUNITY TO ASK MR. BOSTIC

12:03PM 14  TO COME TO HIS LECTERN THERE AND MAYBE JUST RESPOND TO THIS SO

12:03PM 15  WE CAN HAVE A LITTLE DEBATE ABOUT THAT.

12:03PM 16      MR. WADE:  SURE.

12:03PM 17      THE COURT:  MR. BOSTIC, CAN YOU JUST RESPOND TO THIS

12:03PM 18  LAST POINT OF MR. WADE?

12:03PM 19      MR. BOSTIC:  YES, YOUR HONOR.  I DON'T THINK THIS IS

12:03PM 20  BURDEN SHIFTING.  I THINK WHAT THE DEFENSE IS ASKING THE COURT

12:03PM 21  TO DO IS TO PREJUDGE THE EVIDENCE.  I THINK THE DEFENSE IS

12:03PM 22  ASKING THE COURT TO ASSUME ITS THEORY OF THE CASE, ASSUME ITS

12:03PM 23  THEORY OF THE DEFENSE, WHICH WOULD EXPLAIN AWAY ALL OF THE

12:03PM 24  ACCURACY PROBLEMS AT THERANOS UNDER THE GUISE OF NORMAL

12:03PM 25  STATISTICAL ERROR RATES IN LABORATORIES OR ERRORS IN SAMPLE

12:04PM 1     HANDLING OR WHAT HAVE YOU.

12:04PM 2          THE DEFENSE ASKED THE COURT TO BUY INTO THAT THEORY, AND

12:04PM 3     BASED ON THAT ASSUMPTION TO ASSUME THAT INDIVIDUAL PATIENT

12:04PM 4     TESTIMONY COULD NOT BE RELEVANT TO THE QUESTION OF WHETHER

12:04PM 5     THERANOS HAD ACCURACY AND RELIABILITY PROBLEMS.

12:04PM 6          AND I WANT TO EMPHASIZE AGAIN THAT THE GOVERNMENT IS NOT

12:04PM 7     HOLDING OUT THESE PATIENTS AS CONCLUSIVE INDEPENDENT,

12:04PM 8     STANDALONE PROOF THAT THERANOS SUFFERED FROM SYSTEMIC ACCURACY

12:04PM 9     AND RELIABILITY PROBLEMS.  THAT PROOF WILL BE ELSEWHERE IN THE

12:04PM 10    TRIAL AND WILL CONSIST OF THE CATEGORIES THAT I MENTIONED TO

12:04PM 11    THE COURT EARLIER.

12:04PM 12         IT WILL BE CLEAR TO THE JURY THAT THERANOS'S TESTS

12:04PM 13    SUFFERED FROM SYSTEMIC AND GENERAL PROBLEMS ESPECIALLY AND

12:04PM 14    SPECIFICALLY THE ASSAYS THAT ARE NAMED IN THE INDICTMENT IN

12:04PM 15    THIS CASE.

12:04PM 16         IN THE CONTEXT OF THAT EVIDENCE, THE EXPERIENCES OF

12:05PM 17    INDIVIDUAL PATIENTS WHO WILL SAY I'M AN EXAMPLE OF THIS, I

12:05PM 18    RECEIVED AN INACCURATE RESULT FROM THERANOS MUST BE RELEVANT.

12:05PM 19    HOW COULD THEY NOT BE?

12:05PM 20              THE COURT:  DO YOU HAVE TO -- DOES THE GOVERNMENT

12:05PM 21    HAVE TO DISTINGUISH WHY THE TEST WAS ERRONEOUS?  DO YOU HAVE TO

12:05PM 22    SAY THAT THIS IS A TEST THAT WAS NOT ON OUR TARMAC IN ARIZONA

12:05PM 23    FOR 12 HOURS BEFORE IT ARRIVED?  THIS WAS A TEST THAT WAS NOT

12:05PM 24    THE RESULT OF POOR EATING OR POOR, WHATEVER, DIET OF THE

12:05PM 25    TESTEE?  DO YOU HAVE TO DO THAT?

12:05PM  1      MR. BOSTIC:  YOUR HONOR, FIRST, I THINK IT WOULD BE

12:05PM  2  IMPOSSIBLE FOR THE GOVERNMENT TO PROVE NOT JUST THOSE NEGATIVES

12:05PM  3  BUT EVERY CONCEIVABLE NEGATIVE IN THE CASE OF EVERY PATIENT

12:05PM  4  TEST RESULT.

12:05PM  5      IF THAT WERE THE STANDARD, THEN, YES, NO PATIENT COULD

12:05PM  6  TESTIFY BECAUSE THERE WOULD ALWAYS BE A QUESTION ABOUT WHAT

12:05PM  7  MIGHT HAVE SPECULATIVELY HAPPENED TO THAT SAMPLE, WHAT OTHER

12:05PM  8  EXPLANATION THAT MIGHT BE.

12:05PM  9      IT'S UP TO THE DEFENSE TO MAKE THOSE ARGUMENTS IF THEY

12:05PM 10  WANT TO.  IT'S UP TO THE JURY TO WEIGH THEM AND DECIDE HOW MUCH

12:06PM 11  SIGNIFICANCE TO ASCRIBE TO THE PATIENT TESTIMONY.

12:06PM 12      BUT AGAINST THE BACKDROP OF STRONG EVIDENCE OF REPEATED

12:06PM 13  AND SYSTEMIC ACCURACY PROBLEMS.  INDIVIDUAL EXAMPLES OF

12:06PM 14  INACCURATE TEST RESULTS ARE SIMPLY, LIKE I SAID, ANOTHER BRICK

12:06PM 15  IN THE WALL.  THEY ABSOLUTELY TEND TO MAKE A FACT IN DISPUTE

12:06PM 16  MORE LIKELY THAN NOT.

12:06PM 17      THE COURT:  ALL RIGHT.  THANK YOU.  MR. BOSTIC.

12:06PM 18      MR. WADE.

12:06PM 19      MR. WADE:  YOUR HONOR, AGAIN, THEY DON'T MAKE A

12:06PM 20  MATERIAL FACT MORE PROBABLE BECAUSE THEY HAVEN'T ESTABLISHED

12:06PM 21  THAT THE THERANOS PRODUCT CAUSED THE RESULT.

12:06PM 22      SO THERE IS NOT -- UNTIL THEY GET THAT TICKET TO

12:06PM 23  ADMISSION, IT'S NOT AN ASSESSMENT OF WEIGHING THE RELEVANCE AND

12:06PM 24  WEIGHING IT AGAINST THIS EXTREME PREJUDICE THAT WOULD RESULT

12:06PM 25  FROM THESE, YOU KNOW, CHERRY PICKED EXAMPLES.

12:06PM 1      IT HAS TO BE ABLE TO BE OFFERED AS RELEVANCE AT THE

12:06PM 2  OUTSET.  THEY'RE JUST SAYING THERE WAS A RESULT AND IT HAPPENED

12:06PM 3  AT THERANOS, THEREFORE, THAT HAPPENED.

12:06PM 4      THERE ARE MANY OTHER POTENTIAL FACTORS, BUT THEY'RE JUST

12:07PM 5  PUTTING INTO EVIDENCE THIS WITH THE ASSUMPTION OF CAUSATION AND

12:07PM 6  THE LABELLING OF A PERSON AS A VICTIM.

12:07PM 7      EVERY ERRONEOUS RESULT THAT RESULTS IN A LAB DOES NOT

12:07PM 8  RESULT FROM THE TECHNOLOGY OF THE LAB.

12:07PM 9          THE COURT:  WELL, MR. BOSTIC INFORMS US, AND HE

12:07PM 10  ASSURES YOU AND YOUR TEAM, THAT HE HAS ADDITIONAL EVIDENCE TO

12:07PM 11  PROFFER TO SUPPORT THE CLAIM.

12:07PM 12          MR. WADE:  WELL, WE SHOULD BE ABLE TO VOIR DIRE

12:07PM 13  THOSE WITNESSES OUTSIDE OF THE PRESENCE OF THE JURY BEFORE, IF

12:07PM 14  THAT'S TRUE, BEFORE THAT IS OFFERED IN FRONT OF THE JURY AND

12:07PM 15  BEFORE THEY OPEN ON IT.

12:07PM 16      BUT TO SUGGEST THAT THAT EXISTS INDEPENDENTLY -- THEY HAVE

12:07PM 17  AN EXPERT.  THEY HAVE AN EXPERT WHO COULD COME IN AND SAY

12:07PM 18  THERE'S CAUSATION.  THEIR EXPERT HASN'T DONE THAT.

12:07PM 19      THEIR EXPERT HAS SAID THAT YOU NEED TO DO WHAT WE HAVE

12:07PM 20  SUGGESTED WHICH IS WHERE THE LIS DEFICIENCY COMES IN, WHICH IS

12:07PM 21  WHEN YOU IDENTIFY AN ANECDOTAL EXAMPLE, YOU NEED TO LOOK AT THE

12:08PM 22  SURROUNDING FACTS AND CIRCUMSTANCES TO ACCESS WHETHER THERE'S

12:08PM 23  AN ISSUE WITH THE TECHNOLOGY.  THAT'S HOW YOU DO IT

12:08PM 24  SCIENTIFICALLY.

12:08PM 25      THEY'RE NOT OFFERING IT SCIENTIFICALLY.  THEY'RE TRYING TO

12:08PM  1      FIND ANY PATIENT THAT SAYS THAT THEY GOT AN ERRONEOUS RESULT,

12:08PM  2      IT WAS AT THERANOS, THEREFORE, IT WAS A RESULT OF THERANOS'S

12:08PM  3      TECHNOLOGY, AND SHIFT THE BURDEN TO MS. HOLMES.

12:08PM  4           IT'S IMPERMISSIBLE, AND IT'S DANGEROUS TESTIMONY IN THE

12:08PM  5      CONTEXT OF THIS CASE BECAUSE IT WILL BE VERY POWERFUL TO THE

12:08PM  6      JURY.  AND LETTING THAT IN AND SHIFTING TO US THE BURDEN OF

12:08PM  7      ATTACKING THAT IS UNCONSTITUTIONAL.

12:08PM  8              THE COURT:  WELL, WE TALKED ABOUT IT EARLIER.  I

12:08PM  9      SAID YOU HAVE A BATTING AVERAGE OF 1 IN A MILLION.  ISN'T THAT

12:08PM  10     COMPELLING TO A JURY?

12:08PM  11             MR. WADE:  THE FACT THAT WE HAVE GOOD ARGUMENTS TO

12:08PM  12     REFUTE THIS EVIDENCE DOESN'T MEAN THE EVIDENCE SHOULD COME IN

12:08PM  13     AND WE SHOULD BE PUT TO THAT BURDEN, OKAY?  THAT'S WHAT I HAD

12:08PM  14     TO ADDRESS WITH RESPECT TO THAT.

12:08PM  15          AND I WILL NOTE, ON THE LIS ISSUE, THE GOVERNMENT

12:09PM  16     CONTINUES TO HAVE THIS INNUENDO WITHOUT EVIDENCE OF OUR

12:09PM  17     CLIENT'S INVOLVEMENT IN SOME WAY IN THIS, AND IT'S TOTALLY

12:09PM  18     INAPPROPRIATE AND UNSUPPORTED BY A YEAR LONG GRAND JURY

12:09PM  19     INVESTIGATION THAT HAS RESULTED IN MILLIONS OF DOCUMENTS BEING

12:09PM  20     PRODUCED, 20 WITNESSES BEING INTERVIEWED, AND NOT ONE SAYS THAT

12:09PM  21     MS. HOLMES HAD ANY ROLE IN THE SUBPOENA, COMPLIANCE --

12:09PM  22             THE COURT:  YOU'RE TALKING ABOUT A COLLATERAL MATTER

12:09PM  23     HERE.

12:09PM  24             MR. WADE:  I'M TALKING ABOUT THE LIS ISSUE, RIGHT.

12:09PM  25     YEAH.  THEY'VE CREATED THE IMPRESSION THAT BECAUSE THE CLIENT

12:09PM  1    WAS THE CEO DURING THAT TIME PERIOD WHEN THE SUBPOENA WAS

12:09PM  2    ISSUED, THAT SHE MAY -- THERE'S THIS AURA THAT SHE'S SOMEHOW

12:09PM  3    INVOLVED.

12:09PM  4        THERE'S NO ACTUAL EVIDENCE THAT THERE IS ANY INVOLVEMENT.

12:09PM  5    YOU CAN BE SURE THAT THEY WOULD OFFER IT IF THERE WAS.  THEY'RE

12:09PM  6    NOT OFFERING IT, AND, THEREFORE, IT HAS NO ROLE IN THIS CASE.

12:09PM  7        NOW, THEY HAVE EFFECTIVELY CONCEDED THAT THEY'RE

12:09PM  8    CONTINUING TO TRY TO FIND THAT BECAUSE THEY HAVE AN ONGOING

12:10PM  9    GRAND JURY, THE GOVERNMENT HAS AN ONGOING GRAND JURY

12:10PM  10   INVESTIGATION.

12:10PM  11       THEY'RE SAYING, WELL, DON'T RULE ON THAT NOW.  LET'S WAIT,

12:10PM  12   WAIT, WAIT.  YOU KNOW, YOUR HONOR, WE'RE -- WE'VE BEEN AT THIS

12:10PM  13   A LONG TIME.  WE'RE GETTING PRETTY CLOSE TO TRIAL AND TO

12:10PM  14   SUGGEST THAT WE HAVE TO CONTINUE TO WAIT TO SEE IF THEY CAN USE

12:10PM  15   A GRAND JURY, WHICH THEY SHOULD NOT BE USING TO OBTAIN

12:10PM  16   EVIDENCE, YOU KNOW, IS TOO MUCH.

12:10PM  17       WE NEED TO SORT OF RULE ON WHAT IS COMING IN AND WHAT IS

12:10PM  18   NOT COMING IN AND DRAW SOME LINES ON THIS BECAUSE THERE ARE

12:10PM  19   SERIOUS IMPLICATIONS ON THIS ISSUE.

12:10PM  20       BECAUSE IF THESE ISSUES COME INTO THIS CASE, AS I SAID,

12:10PM  21   THERE ARE MANY MEMBERS OF THE GOVERNMENT TEAM THAT -- WHO ARE

12:10PM  22   WITNESSES IN THIS CASE BECAUSE OF THEIR INVOLVEMENT IN THE

12:10PM  23   FACTS, THERE ARE MEMBERS OF THEIR OFFICES, THERE'S ADDITIONAL

12:10PM  24   DISCOVERY THAT IS NEEDED.

12:10PM  25       WE DON'T WANT TO BE DISTRACTED BY ANY OF THAT BECAUSE

12:10PM 1    MS. HOLMES HAS NOTHING TO DO WITH THOSE ISSUES.  SO WE SHOULD

12:10PM 2    LEAVE THEM WHERE THEY ARE.

12:11PM 3         BUT IN MAKING THAT ARGUMENT AND IN ADDRESSING THE LIS,

12:11PM 4    MR. BOSTIC MADE CLEAR, THE PREJUDICE THAT RESULTS TO MS. HOLMES

12:11PM 5    FROM THE GOVERNMENT'S FAILURE HERE.

12:11PM 6         NOW, FIRST OF ALL, IT WAS NOT -- THE GOVERNMENT IS

12:11PM 7    PROFFERING SELECTIVE EVIDENCE WITH RESPECT TO THIS.  THEY

12:11PM 8    SAID -- I SAID THE RETURN DATE ON THE GRAND JURY WAS THE 14TH,

12:11PM 9    NOT THE ISSUANCE.  IT WAS ISSUED ON THE 4TH, THE RETURN DATE ON

12:11PM 10   THE GRAND JURY SUBPOENA FOR THE LIS DATABASE WAS THE 14TH,

12:11PM 11   WHICH WAS THE DATE THAT THEY INDICTED.  SO THEY CLEARLY MADE

12:11PM 12   THE JUDGMENT.  THEY DIDN'T NEED THE EVIDENCE.  BUT THEY HAD NO

12:11PM 13   IDEA WHAT THE EVIDENCE WAS, OKAY?

12:11PM 14        THE GOVERNMENT'S SUGGESTION THAT THE ONLY RELEVANT PERIOD

12:11PM 15   HERE IS THIS FOUR-DAY PERIOD IS WRONG, THAT EXPERTS WHO HAVE

12:11PM 16   OFFERED EVIDENCE TO THE GOVERNMENT IN THIS CASE WHO ARE MOST

12:11PM 17   KNOWLEDGEABLE ABOUT THE LIS DATABASE SAID AT THE END OF AUGUST

12:11PM 18   THAT THEY BELIEVED THAT THEY COULD RESURRECT THE LIS DATABASE

12:12PM 19   WITHIN A MONTH.  IT WASN'T UNTIL THE HARDWARE WAS DESTRUCTED

12:12PM 20   BECAUSE OF FAILURE TO GO OUT AND GET IT AND TO TREAT THIS ISSUE

12:12PM 21   SERIOUSLY THAT THE ABILITY TO RESURRECT THAT WORKING COPY OF

12:12PM 22   LIS RENDERED IT UNAVAILABLE TO US.  THAT'S WHEN THE FAILURE

12:12PM 23   RESULTED.

12:12PM 24        AND THE GOVERNMENT KNEW THAT THAT COULD HAPPEN.  THEY KNEW

12:12PM 25   THERE WAS DANGER OF LOSING THIS EVIDENCE BECAUSE THE COMPANY

12:12PM 1    HAD GONE TO AN ASSIGNEE YET THEY DIDN'T PURSUE IT.

12:12PM 2        SO ALL OF THAT, AGAIN, SHOULD BE OUT.  WE'RE NOT LOOKING

12:12PM 3    TO PUT PROSECUTORS ON THE WITNESS STAND.  WE'RE NOT LOOKING

12:12PM 4    TO -- WE HAVE ENOUGH WITNESSES TO CALL IN THIS CASE BY ITSELF.

12:12PM 5    BUT TO THE EXTENT THAT THE GOVERNMENT IS CREATING THIS

12:12PM 6    IMPRESSION THAT THEIR FAILURE TO ACT WAS SO LIMITED, THE

12:12PM 7    EVIDENCE IS QUITE TO THE CONTRARY.

12:12PM 8        AND TO BE FAIR TO COUNSEL FOR THE GOVERNMENT, HE

12:13PM 9    RECOGNIZES THAT THAT IS HOTLY DISPUTED, AND I DON'T WANT TO

12:13PM 10   CREATE THE IMPRESSION THAT THEIR PROFFERED FACTS ARE ACCURATE

12:13PM 11   ON THIS RESPECT.

12:13PM 12       FINALLY, WHERE THEY ARE ACCURATE IS WITH RESPECT TO THE

12:13PM 13   QUALITY OF THAT EVIDENCE, AND TO USE HIS WORDS, THE POWERFUL

12:13PM 14   TOOL THAT THAT EVIDENCE WOULD PROVIDE WITHIN THIS CASE,

12:13PM 15   POWERFUL TOOL TO BE ABLE TO PROVIDE DETAILED INFORMATION ABOUT

12:13PM 16   THE CHERRIES THAT THEY PICKED WITHIN THIS CASE THAT ARE NOT

12:13PM 17   RELEVANT.  THEY'RE TRYING TO CREATE THEIR RELEVANCE BY CALLING

12:13PM 18   THEM VICTIMS, AND WE HAVE NO ABILITY TO LOOK AT THE WHOLE

12:13PM 19   ORCHARD.  WE HAVE NO ABILITY TO EVEN LOOK AT ALL OF THE

12:13PM 20   DETAILED FACTS RELATING TO THAT CHERRY BECAUSE IT'S TRUE THAT

12:13PM 21   THERE IS NO CHECKBOX WITHIN THE DATABASE THAT SAYS, OH,

12:13PM 22   INACCURATE, ACCURATE.  WE NEVER SUGGESTED AS MUCH.

12:13PM 23       BUT WE DID SUGGEST AND THE EVIDENCE SHOWED --

12:14PM 24           THE COURT:  IS THAT SIGNIFICANT?

12:14PM 25           MR. WADE:  IT'S NOT SIGNIFICANT, YOUR HONOR, BECAUSE

12:14PM   1    THE WAY YOU LOOK AT THESE ISSUES IS THROUGH DETAILED ANALYSIS

12:14PM   2    OF THE DATA THAT RELATES TO A PARTICULAR PATIENT THAT THEY'RE

12:14PM   3    OFFERING, A PARTICULAR TEST THAT THEY'RE OFFERING, A PARTICULAR

12:14PM   4    PHLEBOTOMIST WHO DID THE DRAW ON THAT PATIENT.  WERE THERE

12:14PM   5    ISSUES WITH THAT PHLEBOTOMIST?  WAS THAT PHLEBOTOMIST, WHEN SHE

12:14PM   6    WAS DOING VENOUS DRAWS OR SOMETHING, JUST MAKING ERRORS?  IF

12:14PM   7    SO, THAT DOESN'T GO TO THE CORE OF THERANOS TECHNOLOGY.

12:14PM   8        THAT IS WHERE THE ACTUAL FACTS WITH RESPECT TO WHAT

12:14PM   9    HAPPENED AND WHETHER THERE'S A CAUSAL RELATIONSHIP BETWEEN THE

12:14PM   10   THERANOS TECHNOLOGY AND THE PATIENT EXISTS.  IT'S WITHIN THAT

12:14PM   11   POWERFUL TOOL.

12:14PM   12       AND THE DEPRIVATION FROM OF US FROM HAVING THAT TOOL IS

12:14PM   13   SIGNIFICANT.  THE ABILITY OF THE GOVERNMENT TO OFFER THE

12:14PM   14   EVIDENCE WHEN WE DON'T HAVE IT IS EXTRAORDINARILY PREJUDICIAL

12:14PM   15   AND ARGUABLY A DUE PROCESS VIOLATION.

12:15PM   16           THE COURT:  SO ARE YOU SAYING THAT YOU WOULD LIKE

12:15PM   17   TO, IF THE COURT WERE TO ALLOW THIS TO GO FORWARD, YOU WOULD

12:15PM   18   LIKE THE OPPORTUNITY TO TELL, INFORM THE JURY IN SOME MANNER,

12:15PM   19   BLAME THE GOVERNMENT FOR THE LACK OF EXISTENCE AT THE TRIAL OF

12:15PM   20   THE LIS?

12:15PM   21           MR. WADE:  WE SHOULD BE ABLE TO OFFER TESTIMONY THAT

12:15PM   22   THERE'S A DATABASE THAT PROVIDES ALL OF THE DETAILED

12:15PM   23   INFORMATION WITH RESPECT TO TESTING.

12:15PM   24           THE COURT:  THERE WAS.

12:15PM   25           MR. WADE:  AND THE GOVERNMENT DID NOT -- THERE WAS

12:15PM  1    AT THERANOS'S OPERATING, IT WAS DEVELOPED BY THERANOS'S

12:15PM  2    EMPLOYEES, VERY COMPLICATED, VERY SOPHISTICATED PIECE OF

12:15PM  3    TECHNOLOGY DEVELOPED BY THE COMPANY THAT PROVIDED A LOT OF

12:15PM  4    DETAILED INFORMATION, AND THE GOVERNMENT DID NOT OBTAIN THAT

12:15PM  5    EVIDENCE.

12:15PM  6            THE COURT:  AND IF THAT WERE PERMITTED, YOU WOULD

12:15PM  7    ASK FOR A JURY INSTRUCTION OF SOME SORT I PRESUME?  MAYBE NOT.

12:15PM  8            MR. WADE:  YOUR HONOR, AS THE COURT PROBABLY KNOWS

12:15PM  9    BETTER THAN I DO GIVEN YOUR FREQUENCY OF PRACTICE IN THIS

12:16PM 10    CIRCUIT, THE NINTH CIRCUIT HAS SEVERAL DIFFERENT TYPES OF

12:16PM 11    INSTRUCTIONS IN CRIMINAL CASES THAT RELATE TO THE FAILURE TO

12:16PM 12    OBTAIN EVIDENCE, AND THERE ARE DIFFERENT GRADATIONS.  I WILL

12:16PM 13    DEFER THAT TO THE JURY INSTRUCTION.

12:16PM 14        AS THE COURT WELL KNOWS, THERE IS A NEGLIGENT FAILURE

12:16PM 15    INSTRUCTION THAT COULD BE PROVIDED.  WHETHER THAT'S APPROPRIATE

12:16PM 16    IN THIS CASE OR NOT, YOU KNOW, WE HAVEN'T DECIDED.

12:16PM 17            THE COURT:  AND IF THE COURT WERE TO DECIDE WHETHER

12:16PM 18    AN INSTRUCTION LIKE THAT SHOULD LIE, MY FOLLOW-UP QUESTION

12:16PM 19    WOULD BE THEN BECAUSE IT'S A FACTUAL DISPUTE, SHOULDN'T THERE

12:16PM 20    BE -- I KNOW IN YOUR PLEADINGS I SAW THE TERM MINI TRIALS

12:16PM 21    ALMOST IN EVERY --

12:16PM 22            MR. WADE:  WHEN THERE'S AN 85 PAGE 404(B) NOTICE,

12:16PM 23    YOUR HONOR, I HOPE YOU UNDERSTAND WHY WE --

12:16PM 24            THE COURT:  I CAPTURED IT, YES.

12:16PM 25        BUT IT SEEMS LIKE WHEN THERE'S A FACTUAL DISPUTE, PERHAPS

12:16PM 1    THAT'S A FACTUAL DISPUTE THAT THE JURY WOULD HAVE TO DECIDE,

12:17PM 2    AND PERHAPS THE COURT WOULD THEN FASHION AN APPROPRIATE

12:17PM 3    INSTRUCTION IF IT BECOMES AN IMPORTANT ISSUE IN THE CASE FOR

12:17PM 4    THE JURY TO DECIDE THAT AS WELL, WHETHER OR NOT THE GOVERNMENT

12:17PM 5    IS AT FAULT, AND WHETHER OR NOT ANYONE IS AT FAULT.

12:17PM 6        AGAIN, THAT'S JUST A HYPOTHETICAL QUESTION.

12:17PM 7            MR. WADE:  I THINK IF I'M UNDERSTANDING THE COURT,

12:17PM 8    THE COURT HAS REFERRED TO DOORS AT DIFFERENT POINTS DOWN THE

12:17PM 9    HALLWAY, AND IF WE OPEN THE DOOR TO A CERTAIN LINE OF ARGUMENT,

12:17PM 10   DOES THAT PERMIT THE GOVERNMENT TO COME IN AND SAY, WELL, IT

12:17PM 11   WASN'T REALLY OUR FAULT, IT WAS THEIR FAULT, WHICH IS KIND OF

12:17PM 12   WHAT THIS GRAND JURY INVESTIGATION HAS BEEN ABOUT?

12:17PM 13       I THINK THERE'S -- OUR GOAL IS TO NOT TO AVOID THE SIDE

12:17PM 14   DISTRACTION.  IT'S NOT CORE TO THIS CASE.

12:17PM 15       BUT THE GOVERNMENT'S FAILURE TO OBTAIN EVIDENCE IS CORE TO

12:17PM 16   THIS CASE.  THEY DIDN'T HAVE IT AT THE TIME THAT THEY MADE THE

12:17PM 17   ALLEGATIONS, AND I THINK THE FACT THAT THEY DIDN'T OBTAIN IT

12:18PM 18   AND CANNOT MEET THEIR BURDEN OF PROOF IS AN ARGUMENT THAT ANY

12:18PM 19   DEFENDANT SHOULD BE ABLE TO MAKE.

12:18PM 20       IF WE SEEK AN INSTRUCTION THAT THEY'RE AFFIRMATIVELY

12:18PM 21   BLAMING, YOU SHOULD INFER THAT IT WOULD BE FAVORABLE, THAT MAY

12:18PM 22   OPEN A CAN OF WORMS THAT I'M GOING TO LEAVE FOR ANOTHER DAY.

12:18PM 23       BUT AT A MINIMUM WE'RE ABLE TO ARGUE ABOUT THEIR FAILURE

12:18PM 24   TO OBTAIN EVIDENCE THAT THEY NEED TO PROVE THEIR CASE.

12:18PM 25            THE COURT:  MR. BOSTIC, DO YOU WANT TO COMMENT ON

12:18PM 1    ANY OF THIS?

12:18PM 2         MR. BOSTIC:  VERY BRIEFLY.  I WON'T SAY ANYTHING

12:18PM 3    ELSE ABOUT THE LIS UNLESS THE COURT HAS ANY QUESTIONS, BUT I

12:18PM 4    WANT TO MAKE TWO IMPORTANT POINTS IN RESPONSE TO WHAT MR. WADE

12:18PM 5    SAID EARLIER.

12:18PM 6         FIRST, IN RESPONSE TO DEFENSE'S REFERRALS TO DR. MASTER'S

12:18PM 7    OPINIONS AND ITS RELIANCE, BY THE WAY, ON SEVERAL CASES THAT

12:18PM 8    ARE IN THE CONTEXT OF THE DAUBERT STANDARD, I JUST THINK IT'S

12:18PM 9    IMPORTANT TO POINT OUT THAT TESTIMONY BY VICTIMS WHO ARE NOT

12:18PM 10   EXPERT WITNESSES, TESTIMONY BY VICTIMS IS NOT SUBJECT TO THE

12:18PM 11   DAUBERT STANDARD.  SO DIFFERENCES BETWEEN WHAT THOSE VICTIMS

12:19PM 12   ARE EXPECTED TO SAY VERSUS WHAT A RETAINED EXPERT IS EXPECTED

12:19PM 13   TO SAY UNDER THE DAUBERT STANDARD IS NOTHING REMARKABLE,

12:19PM 14   NOTHING IMPROPER, AND IT IS IMPROPER TO TRY TO IMPOSE THAT

12:19PM 15   HEIGHTENED DAUBERT STANDARD ON THE TESTIMONY OF NONEXPERTS.

12:19PM 16        THE FINAL POINT IS IN RESPONSE TO MR. WADE'S ARGUMENT THAT

12:19PM 17   THE GOVERNMENT NEEDS TO MAKE SOME SHOWING ABOUT THE STRENGTH OF

12:19PM 18   ITS EVIDENCE IN ORDER TO ESTABLISH THE ADMISSIBILITY OF THIS

12:19PM 19   PATIENT TESTIMONY.  THAT APPEARS NOWHERE IN THE LAW.  TO ME

12:19PM 20   THAT SOUNDS LIKE THE DEFENSE IS SAYING THAT THE GOVERNMENT

12:19PM 21   NEEDS TO PREVAIL ON A RULE 29 MOTION BEFORE IT CAN DEFEAT THIS

12:19PM 22   MOTION IN LIMINE.  THAT'S EXACTLY BACKWARDS.

12:19PM 23        THE DEFENSE'S ENTIRE ARGUMENT HERE IS PREMISED ON ITS

12:19PM 24   ASSUMPTION, ITS ARGUMENT THAT THE GOVERNMENT CAN'T MEET ITS

12:19PM 25   BURDEN OF PROOF, BUT THAT CANNOT FORM THE BASIS OF THE COURT'S

12:19PM   1      RULING HERE.

12:19PM   2                  THE COURT:  ALL RIGHT.  THANK YOU.

12:20PM   3            MR. WADE.

12:20PM   4                  MR. WADE:  NOTHING FURTHER, YOUR HONOR.

12:20PM   5                  THE COURT:  IS IT TIME FOR LUNCH, FOLKS?

12:20PM   6                  MR. WADE:  THANK YOU, YOUR HONOR.

12:20PM   7                  THE COURT:  I THINK IT IS.  LET'S TAKE OUR NOON

12:20PM   8      RECESS NOW, PLEASE.

12:20PM   9            WHY DON'T WE SEE EVERYBODY BACK AT, LET'S SEE, 1:30, 1:3O.

12:20PM   10                 MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:20PM   11                 THE COURT:  ALL RIGHT.  THANK YOU.

12:20PM   12             (LUNCH RECESS TAKEN AT 12:20 P.M.)

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

**AFTERNOON SESSION**

01:35PM  2   (COURT CONVENED AT 1:35 P.M.)

01:35PM  3          THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

01:35PM  4   PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

01:35PM  5      AND WE'LL TAKE UP THE REMAINING MOTIONS.

01:35PM  6      I THINK THE NEXT MOTION IS DOCKET 561, I BELIEVE.  THIS IS

01:35PM  7   MS. HOLMES'S MOTION TO EXCLUDE EVIDENCE OF FACT PERCIPIENT

01:36PM  8   WITNESSES.

01:36PM  9          MS. TREFZ:  GOOD AFTERNOON, YOUR HONOR.

01:36PM 10      KATIE TREFZ FOR MS. HOLMES.

01:36PM 11          THE COURT:  THANK YOU.  GOOD AFTERNOON.  NICE TO SEE

01:36PM 12   YOU.

01:36PM 13          MS. TREFZ:  NICE TO SEE YOU AS WELL.

01:36PM 14          THE COURT:  THANK YOU.

01:36PM 15          MS. TREFZ:  THIS MOTION, AS YOU NOTED, RELATES TO

01:36PM 16   THE TESTIMONY OF CERTAIN FACT WITNESS DOCTORS FROM WHOM THE

01:36PM 17   GOVERNMENT ALSO SEEKS TO ELICIT EXPERT TESTIMONY.  AND JUST BY

01:36PM 18   WAY OF ROADMAPPING, THIS IS ONE OF THOSE MOTIONS THAT I THINK

01:36PM 19   WOULD BENEFIT FROM SOME FAIRLY DETAILED DISCUSSION BECAUSE IT'S

01:36PM 20   VERY KIND OF -- IT PRESENTS SOME SORT OF THORNY FACTUAL AND

01:36PM 21   LEGAL QUESTIONS THAT ARE RELATED TO A LOT OF THE ISSUES THAT

01:36PM 22   YOU'VE BEEN DISCUSSING WITH MR. WADE AND MR. BOSTIC EARLIER

01:36PM 23   TODAY.

01:36PM 24      SO I'M -- MY PLAN WAS TO DO A LITTLE OVERVIEW OF THE

01:36PM 25   MOTION, AND THEN I'D LIKE TO TALK BRIEFLY ABOUT THE

01:36PM 1    GOVERNMENT'S REPRESENTATIONS KIND OF NARROWING THE SCOPE OF THE

01:37PM 2    TESTIMONY, WHICH I THINK REALLY HELPS PUT INTO FOCUS WHAT THE

01:37PM 3    REMAINING ISSUES ACTUALLY ARE WITH RESPECT TO OUR MOTION.

01:37PM 4        THIRD, THEN I'D LIKE TO WALK THROUGH WHAT I THINK ARE

01:37PM 5    ESSENTIALLY FOUR TYPES OF OPINIONS THAT WE ARE -- THAT ARE

01:37PM 6    STILL IN CONTENTION HERE THAT WE'RE MOVING TO EXCLUDE AND FOR

01:37PM 7    ADDITIONAL -- FOR TWO REASONS:  ONE ON 702 GROUNDS AND THEN,

01:37PM 8    TWO, ON RULE 16 GROUNDS.

01:37PM 9            THE COURT:  CAN I ASK -- THANK YOU.  MAY I ASK A

01:37PM 10   THRESHOLD QUESTION?

01:37PM 11           MS. TREFZ:  YES.

01:37PM 12           THE COURT:  IS ONE OF THE ISSUES HERE A QUESTION FOR

01:37PM 13   THE GOVERNMENT AS TO WHETHER OR NOT ADDITIONAL SUBPOENAS WILL

01:37PM 14   BE ISSUED OR A QUESTION FOR THE GOVERNMENT ABOUT WHAT

01:37PM 15   ADDITIONAL INFORMATION THEY MIGHT BE COLLECTING?  WOULD THAT

01:37PM 16   HELP THE DISCUSSION HERE?

01:37PM 17           MS. TREFZ:  I THINK IT WILL, ALTHOUGH I WOULD SAY

01:37PM 18   THAT DEPENDING ON WHAT IS BEING COLLECTED AND WHEN, WE STILL

01:38PM 19   THINK THAT THE GOVERNMENT WILL NEED TO PROVIDE OR HAS -- AND

01:38PM 20   HAS FAILED TO PROVIDE AN ADEQUATE RULE 16 SUMMARY OF THOSE

01:38PM 21   DISCLOSURES.  YOU KNOW, IT DOES SEEM LIKE THE GOVERNMENT IS, AT

01:38PM 22   LEAST BASED ON DISCOVERY WE'VE RECEIVED, CONTINUING TO GATHER

01:38PM 23   INFORMATION FROM THESE DOCTORS.

01:38PM 24       WE TAKE ISSUE WITH THAT A LITTLE BIT, WHICH MY HOPE WAS TO

01:38PM 25   GET TO THAT A LITTLE BIT LATER ONCE WE'RE KIND OF THERE, BUT OF

01:38PM  1    COURSE IT WOULD BE HELPFUL TO KNOW WHAT THE GOVERNMENT IS

01:38PM  2    CONTINUING TO DO.

01:38PM  3        WE HAVE NOT HAD A DISCUSSION WITH THEM ABOUT THE RULE 17

01:38PM  4    SUBPOENAS THAT THEY SAY THAT THEY'RE ISSUING, ALTHOUGH I DO

01:38PM  5    KNOW FROM THE DISCOVERY THAT WE RECEIVED THAT THEY CERTAINLY

01:38PM  6    HAVE BEEN, AT LEAST WITH RESPECT TO ONE OF THE DOCTORS, THEY

01:38PM  7    HAVE FBI AGENTS KIND OF LOOKING AT ALL OF THOSE DOCTOR'S FILES

01:38PM  8    AND ARE PRODUCING ADDITIONAL THINGS.

01:38PM  9            THE COURT:  I LOOKED AT THIS AND I THOUGHT THAT IT

01:39PM 10    MIGHT BE HELPFUL TO HAVE THAT QUESTION POSED AND ANSWERED AND

01:39PM 11    THAT MIGHT BE BENEFICIAL TO THE MOTION.  I DON'T MEAN TO

01:39PM 12    PRECLUDE YOU FROM SPEAKING TO THE MOTION, BUT IT SEEMS LIKE

01:39PM 13    THERE ARE SOME QUESTIONS THAT MIGHT BENEFIT FROM THE ANSWER AND

01:39PM 14    THAT MIGHT BE HELPFUL TO YOU AND YOUR TEAM.

01:39PM 15            MS. TREFZ:  WE'RE HAPPY TO KNOW THE ANSWERS.  I

01:39PM 16    DON'T THINK THAT THEY ARE -- THAT THEY KIND OF SUPPLANT THE

01:39PM 17    MOTION, SO WE STILL HAVE SOME THOUGHTS TO PROVIDE.  BUT, OF

01:39PM 18    COURSE, WE'RE HAPPY TO HEAR WHAT THE GOVERNMENT IS DOING.

01:39PM 19            THE COURT:  WELL, IS THE GOVERNMENT PREPARED TO

01:39PM 20    SPEAK TO THAT NOW, OR WOULD YOU LIKE TO WAIT UNTIL THIS

01:39PM 21    DISCUSSION FROM THE DEFENSE IS FINISHED?

01:39PM 22        MR. BOSTIC.

01:39PM 23            MR. BOSTIC:  JOHN BOSTIC FOR THE UNITED STATES, YES.

01:39PM 24    I'M HAPPY TO ADDRESS THAT NOW IF THE COURT WOULD LIKE TO

01:39PM 25    KNOW, AND I'M PREPARED TO PROVIDE THAT INFORMATION.

01:39PM  1          THE COURT:  THANK YOU.  WHY DON'T YOU TELL US THAT?

01:39PM  2     THAT MIGHT BE HELPFUL.

01:39PM  3          MR. BOSTIC:  LIKE MS. TREFZ, I THINK I SEE THE

01:39PM  4     ISSUES IN THIS MOTION AS SEPARATED INTO THE UNDERLYING QUESTION

01:40PM  5     OF WHETHER THIS KIND OF TESTIMONY CAN BE ADMITTED, AND THEN THE

01:40PM  6     SEPARATE QUESTION OF, WHAT LEVEL OF DISCLOSURE IS NECESSARY BY

01:40PM  7     THE GOVERNMENT IN ORDER TO AVOID PREJUDICE TO THE DEFENSE

01:40PM  8     ESSENTIALLY?

01:40PM  9          SO I'LL TAKE THAT SECOND POINT.

01:40PM  10         HERE THE GOVERNMENT'S EXPERT DISCLOSURES, WHEN THEY WERE

01:40PM  11    SERVED, REFLECTED THE TOTALITY OF THE GOVERNMENT'S INFORMATION

01:40PM  12    ABOUT THE EXPERT'S ANTICIPATED OPINIONS AND THE BASES FOR THOSE

01:40PM  13    OPINIONS.

01:40PM  14         IN THE TIME SINCE THEN, AS MS. TREFZ NOTED, WE HAVE

01:40PM  15    CONTINUED OUR EFFORTS TO GATHER ADDITIONAL FACTS AND EVIDENCE

01:40PM  16    FROM THOSE DOCTORS TO PROVIDE FURTHER SUPPORT OF THEIR --

01:40PM  17    FURTHER SUPPORT FOR THEIR OPINIONS, PARTLY IN RESPONSE TO

01:40PM  18    QUESTIONS AND THE POINTS RAISED BY THE DEFENSE IN THEIR

01:40PM  19    BRIEFING.

01:40PM  20         THAT EFFORT HAS MET WITH SOME CHALLENGES.  I THINK AS

01:40PM  21    ALLUDED TO IN THE GOVERNMENT'S BRIEFING, AND I'LL JUST UPDATE

01:41PM  22    THE COURT SINCE THEN, IT'S BEEN THE SAME, BUT SOME OF OUR

01:41PM  23    DOCTOR WITNESSES HAVE BEEN VERY DIFFICULT TO CONTACT OVER THE

01:41PM  24    LAST SEVERAL MONTHS.  I THINK MORE THAN ONE OF THEM IS QUITE

01:41PM  25    IMPACTED BY THE ONGOING COVID-19 PANDEMIC.  IN PARTICULAR, ONE

DOCTOR, WHO FOCUSES ON POLYCYSTIC OVARIAN SYNDROME, HAS
BRANCHED OUT INTO COVID-19 TESTING AND ALSO VACCINATION AND IS
NOW OVERSEEING WHAT I UNDERSTAND TO BE A MULTI-STATE TESTING
AND VACCINATION OPERATION INVOLVING THOUSANDS OF EMPLOYEES.

SO IT'S BEEN CHALLENGING, TO SAY THE LEAST, TO GET THESE,
OR SOME OF THE DOCTORS, TO BUILD SOME TIME INTO THEIR SCHEDULES
TO TRY TO GO BACK AND FIND THE FILES FOR THE INDIVIDUAL
PATIENTS THAT THEIR OPINIONS ARE BASED ON AND GET THOSE TO THE
GOVERNMENT.

TO THE EXTENT THAT WE HAVE RECEIVED ADDITIONAL INFORMATION
FROM THOSE DOCTORS, AND WE HAVE, INCLUDING FROM THAT PARTICULAR
DOCTOR WHO SENT US A CHART OF ALL OF THE RELEVANT TESTOSTERONE
RESULTS BOTH FROM THERANOS AND FROM OTHER LABS FOR THE PATIENTS
THAT WOULD INCLUDE, I THINK THE SMALLER GROUP OF PATIENTS THAT
SHE WOULD CONTEND GOT INACCURATE THERANOS TEST RESULTS, WE
RECEIVED THAT CHART AND OF COURSE PRODUCED IT TO THE DEFENSE.

ANOTHER -- ONE OF OUR PROPOSED DOCTOR WITNESSES IS AN
OBSTETRICIAN WHOM WE HAVE BEEN IN RECENT CONTACT WITH AND WHO
WAS ABLE TO POINT US TO SPECIFIC PATIENTS THAT ARE THE BASIS
FOR HIS OPINION, AND WE, OF COURSE, PROVIDED THE MEMORANDA OF
THOSE INTERVIEWS TO THE DEFENSE, ALONG WITH THE ATTACHED
DOCUMENTS IN THE PATIENT FILES.

SO WE ARE MAKING PROGRESS, FRANKLY, NOT AS QUICKLY AS I
WOULD LIKE US TO MAKE.

IT IS OUR PLAN TO CONTINUE THOSE EFFORTS, AND ALSO TO

01:42PM  1    PROVIDE UPDATED DISCLOSURES TO THE DEFENSE LISTING THE NEW

01:42PM  2    DETAILS THAT WE HAVE OBTAINED FROM THOSE DOCTORS.

01:43PM  3        I BELIEVE THE POTENTIAL PREJUDICE TO THEM IS MITIGATED

01:43PM  4    PARTLY BY THE FACT THAT WE'VE BEEN KEEPING THEM APPRISED OF OUR

01:43PM  5    ONGOING EFFORTS THROUGH ROLLING DISCOVERY PRODUCTION.

01:43PM  6        AND AGAIN, I WOULD JUST POINT OUT THAT BECAUSE WE'RE STILL

01:43PM  7    APPROXIMATELY FOUR MONTHS FROM TRIAL, OR MAYBE LONGER, BEFORE

01:43PM  8    THESE WITNESSES TESTIFY OR BEFORE THE PRETRIAL CONFERENCE,

01:43PM  9    THERE IS STILL TIME TO AMEND THAT DISCLOSURE I WOULD SUGGEST

01:43PM 10    AND STILL GIVE THE DEFENSE AMPLE TIME TO PREPARE THEIR RESPONSE

01:43PM 11    TO THESE FAIRLY NARROW AND SIMPLE THINGS.

01:43PM 12            THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM 13        DO YOU WANT TO SPEAK TO RULE 17 AT ALL, OR IS THAT

01:43PM 14    APPROPRIATE FOR YOU TO TALK ABOUT NOW AT ALL?

01:43PM 15            MR. BOSTIC:  I AM HAPPY TO.

01:43PM 16        THAT IS STILL SOMETHING THAT THE GOVERNMENT IS

01:43PM 17    CONSIDERING, AND WE WILL USE EITHER RULE 17 OR TRIAL SUBPOENAS

01:43PM 18    AS NECESSARY.

01:43PM 19        BUT IN THE MEANTIME, WHAT WE REALLY NEED IS THE DOCTORS TO

01:43PM 20    IDENTIFY INDIVIDUAL PATIENTS FOR US, AND IT'S DIFFICULT TO

01:43PM 21    CRAFT A SUBPOENA TO CAPTURE THAT WHEN REALLY WHAT WE NEED IS

01:44PM 22    FOR THEM TO PUT IN THE WORK AND IDENTIFY THE UNDERLYING BASES

01:44PM 23    FOR THEIR OPINIONS AND WHAT THOSE OPINIONS ARE.

01:44PM 24        THIS IS FURTHER COMPOUNDED BY THE FACT THAT OF COURSE, AS

01:44PM 25    THE COURT KNOWS, THESE ARE NOT RETAINED EXPERTS, SO THESE

01:44PM  1    EXPERT DISCLOSURE REQUIREMENTS ARE MOST OFTEN APPLIED AND

01:44PM  2    ENFORCED IN THE CONTEXT OF EXPERTS WHO ARE HIRED AND PAID

01:44PM  3    SIGNIFICANT SUMS OF MONEY TO BE AT THE BECK AND CALL OF THE

01:44PM  4    LITIGATING PARTIES, AND THAT'S NOT THE CASE HERE.

01:44PM  5         THESE INDIVIDUALS ARE PRIMARILY PERCIPIENT WITNESSES WHO

01:44PM  6    ARE GOING TO TESTIFY ABOUT THEIR EXPERIENCES TREATING PATIENTS

01:44PM  7    WHO GOT INACCURATE THERANOS TEST RESULTS.  THERE IS AN OPINION

01:44PM  8    COMPONENT OF THEIR TESTIMONY, BUT THEY'RE NOT TYPICAL EXPERTS

01:44PM  9    IN MANY WAYS.

01:44PM 10         THE COURT:  SURE.  THANK YOU.

01:44PM 11         WOULD IT ASSIST YOU AND YOUR TEAM IN SECURING THIS

01:44PM 12    INFORMATION IF THE COURT WERE TO PLACE, I DON'T KNOW, DEADLINES

01:44PM 13    OR SOMETHING LIKE THAT SUCH THAT YOU COULD EXPRESS THAT TO THE

01:44PM 14    GOOD DOCTORS, THAT THE COURT IS HOLDING YOUR FEET TO THE FIRE,

01:45PM 15    OR SOMETHING LIKE THAT, TO GET THEM TO WORK A LITTLE MORE

01:45PM 16    DILIGENTLY?  WOULD THAT BE OF SOME ASSISTANCE?

01:45PM 17         MR. BOSTIC:  IT'S HARD TO SAY, YOUR HONOR.  I

01:45PM 18    BELIEVE THE EXPERTS ARE USING THEIR BEST EFFORTS TO TRY TO

01:45PM 19    JUGGLE THEIR VARIOUS RESPONSIBILITIES AND BE RESPONSIVE TO US.

01:45PM 20         IF THE COURT THINKS THAT'S NECESSARY, OF COURSE THE

01:45PM 21    GOVERNMENT WILL USE ITS BEST EFFORTS TO COMPLY WITH THAT

01:45PM 22    DEADLINE AND ENSURE THAT THE WITNESSES COMPLY.

01:45PM 23         THE COURT:  I'M JUST ASKING IN THE ABSTRACT,

01:45PM 24    SOMETIMES THAT'S HELPFUL IF YOU CONTACT SOMEBODY AND TELL THEM,

01:45PM 25    THE COURT EXPECTS A RESPONSE BY X DATE, AND I'M SURE YOU AND

01:45PM 1     YOUR TEAM CAN PHRASE THAT IN AN APPROPRIATE WAY WHAT THAT

01:45PM 2     MEANS.  I JUST DON'T KNOW.  I WANTED TO OFFER THAT AS A

01:45PM 3     SUGGESTION IF THAT MIGHT BE HELPFUL.

01:45PM 4           MR. BOSTIC:  I APPRECIATE THAT, YOUR HONOR.  I

01:45PM 5     WOULDN'T REQUEST IT ON BEHALF OF THE GOVERNMENT, BUT, OF

01:45PM 6     COURSE, THE GOVERNMENT WILL ABIDE BY ANY COURT ORDER.

01:45PM 7           THE COURT:  THANK YOU.

01:45PM 8        DO YOU HAVE ANYTHING LEFT TO SAY, MS. TREFZ?

01:46PM 9           MS. TREFZ:  I DO, UNFORTUNATELY, YOUR HONOR.  I'M

01:46PM 10    SORRY FOR ALL OF YOUR TIME, BUT WE DO HAVE IMPORTANT ISSUES TO

01:46PM 11    DEAL WITH I THINK.

01:46PM 12        AS IS CLEAR FROM THIS DISCUSSION AND FROM OUR MOTIONS, THE

01:46PM 13    GOVERNMENT HAS INDICATED THAT IT INTENDS TO CALL SEVERAL

01:46PM 14    DOCTORS WHOSE PATIENTS WERE THERANOS CUSTOMERS, AND BASED ON

01:46PM 15    THOSE DISCLOSURES AND OTHER DISCOVERY, IT APPEARS THAT A KEY

01:46PM 16    PIECE OF THE ANTICIPATED TESTIMONY FOR THOSE DOCTORS IS THAT

01:46PM 17    THEY'RE GOING TO -- IS THAT THE GOVERNMENT WILL SEEK TO ELICIT

01:46PM 18    THAT THE PATIENTS OF THEIRS RECEIVED INCORRECT OR LIKELY

01:46PM 19    INCORRECT RESULTS FROM THERANOS.

01:46PM 20        AND THIS IS -- THE KIND OF PLAIN GOAL OF THIS EVIDENCE IS

01:46PM 21    TO PROVE THE GOVERNMENT'S ALLEGATIONS ABOUT THE CAPABILITIES OF

01:46PM 22    THERANOS TECHNOLOGY.

01:46PM 23        AND JUST TO TOUCH BRIEFLY ON A DISCUSSION THAT OCCURRED

01:46PM 24    EARLIER, I THINK, YOU KNOW, MR. BOSTIC WAS FOCUSSED ON INTENT

01:46PM 25    AS A QUESTION, BUT THERE IS ALSO THE SEPARATE ISSUE OF WHETHER

01:46PM 1    THE ALLEGED MISREPRESENTATIONS WERE, IN FACT, FALSE.

01:47PM 2        AND THE ALLEGATION ABOUT THE MISREPRESENTATIONS IS THAT

01:47PM 3    THEY WERE MISREPRESENTATIONS ABOUT THE CAPABILITIES OF

01:47PM 4    THERANOS'S TECHNOLOGY.  SO THE GOVERNMENT NEEDS TO PROVE THAT

01:47PM 5    THE, THAT THE -- IT'S NOT SIMPLY A MATTER OF WHAT MS. HOLMES'S

01:47PM 6    INTENT WAS.  IT IS ALSO A MATTER OF WHETHER THOSE WERE, IN

01:47PM 7    FACT, MISREPRESENTATIONS.

01:47PM 8        SO THIS IDEA THAT THE GOVERNMENT NEEDS ALL OF THESE

01:47PM 9    DIFFERENT WAYS TO PROVE THAT THERANOS'S TECHNOLOGY, THE

01:47PM 10   CAPABILITIES OF THERANOS'S TECHNOLOGY WAS THAT IT DID NOT

01:47PM 11   CONSISTENTLY PROVIDE ACCURATE AND RELIABLE RESULTS, THAT'S A

01:47PM 12   KEY ELEMENT OF THEIR CASE THAT IS SEPARATE FROM THE INTENT

01:47PM 13   ELEMENT.

01:47PM 14       SO THESE DOCTORS ARE BEING USED AS ONE WAY TO KIND OF FILL

01:47PM 15   IN THE EVIDENCE, PLUG THAT HOLE THAT MR. WADE AND MS. SAHARIA

01:47PM 16   WERE TALKING ABOUT.

01:47PM 17       BECAUSE SOME OF THE TESTIMONY FALLS INTO THE REALM OF

01:47PM 18   EXPERT TESTIMONY, THE GOVERNMENT RIGHTLY INCLUDED CERTAIN OF

01:48PM 19   THE DOCTOR WITNESSES, AND THIS IS SOME OF ITS DOCTOR WITNESSES

01:48PM 20   ON ITS WITNESS LIST, NOT ALL OF THEM.

01:48PM 21       IT INCLUDED THEM IN ITS EXPERT DISCLOSURES, AND THE MOST

01:48PM 22   RECENT DISCLOSURE IS FROM SEPTEMBER 2020, AND THAT IDENTIFIED

01:48PM 23   NINE MEDICAL PROFESSIONALS THAT MAY PROVIDE EXPERT TESTIMONY.

01:48PM 24       AND THE EXACT TESTIMONY VARIES BY DOCTOR, SO THAT'S WHY

01:48PM 25   IT'S KIND OF WORTH GOING THROUGH THESE DIFFERENT CATEGORIES

01:48PM   1    THAT I WANTED TO OUTLINE FOR THE COURT IN A FEW MINUTES.

01:48PM   2        THE OPPOSITION -- THE GOVERNMENT'S OPPOSITION REPRESENTS

01:48PM   3    THAT IT WILL ELICIT ACTUALLY A NARROWER SET OF TESTIMONY THAT I

01:48PM   4    THINK IS DISCLOSED IN THE RULE 16 DISCLOSURES, BUT THE

01:48PM   5    TESTIMONY THAT THE GOVERNMENT HASN'T DISCLAIMED STILL PUTS

01:48PM   6    THESE WITNESSES IN THAT TRICKY CATEGORY OF BEING BOTH FACT

01:48PM   7    WITNESSES AND EXPERT WITNESSES AS MR. BOSTIC SUGGESTED.

01:48PM   8        AND WHAT THAT MEANS IS THAT WHILE THEY MAY HAVE SOME

01:49PM   9    TESTIMONY THAT IS BASED ON THEIR PERCIPIENT OBSERVATION,

01:49PM   10   WHETHER THEY END UP APPLYING THEIR MEDICAL EXPERTISE OR DRAW

01:49PM   11   CONCLUSIONS OR OPINIONS ABOUT, FOR EXAMPLE, THERANOS TEST

01:49PM   12   RESULTS, THE TESTIMONY THAT THEY GIVE IS FULLY SUBJECT TO BOTH

01:49PM   13   RULE 16'S (A)(1)(G) DISCLOSURE REQUIREMENTS AND 702 AND DAUBERT

01:49PM   14   AND THE COURT'S GATEKEEPING FUNCTION IS FULLY ENGAGED.

01:49PM   15       SO WITH RESPECT TO SOME OF THE OPINIONS, NOT ALL OF THEM

01:49PM   16   THAT ARE IN THE DISCLOSURES, BUT WITH RESPECT TO SOME OF THE

01:49PM   17   OPINIONS THAT ARE IN THE DISCLOSURES, WE THINK THAT THEY HAVE

01:49PM   18   NOT PROVIDED AN ADEQUATE BASIS UNDER RULE 16 AND THAT, AS A

01:49PM   19   RESULT, THE COURT IS IN A POSITION WHERE IT CAN'T ACTUALLY

01:49PM   20   PERFORM ITS GATEKEEPING FUNCTION CERTAINLY WITHOUT A DAUBERT

01:49PM   21   HEARING OR FURTHER -- OR VOIR DIRE BEFORE THOSE WITNESSES

01:49PM   22   TESTIFY.

01:49PM   23       I AM GOING TO FOCUS ON THESE FOUR OPINIONS THAT I KEEP

01:50PM   24   MENTIONING, BUT JUST BEFORE I GET THERE, I WANTED TO, TO TALK

01:50PM   25   ABOUT THE REPRESENTATIONS THAT SEEM TO NARROW THE CATEGORY --

01:50PM 1    WHAT THE GOVERNMENT WILL OFFER THESE WITNESSES TO SAY.  AND IN

01:50PM 2    PARTICULAR, WE'D ASK THAT THE GOVERNMENT BE HELD TO THESE

01:50PM 3    REPRESENTATIONS AND THAT THEY BE INCORPORATED INTO AN ORDER

01:50PM 4    JUST FOR CLARITY AND EASIER ENFORCEMENT LATER ON.

01:50PM 5         AND THOSE REPRESENTATIONS WE OUTLINED ON PAGE 2 OF OUR

01:50PM 6    REPLY, BUT JUST BRIEFLY, NUMBER ONE, THAT THE DOCTOR WITNESSES

01:50PM 7    WILL NOT TESTIFY ABOUT THE OVERALL ACCURACY OF THERANOS

01:50PM 8    RESULTS; NUMBER TWO, THAT THE DOCTOR WITNESSES WILL NOT TESTIFY

01:50PM 9    AS TO THE EXPLANATION FOR THE INCORRECT RESULTS; AND, NUMBER

01:50PM 10   THREE, THAT THE DOCTOR WITNESSES' TESTIMONY WILL BE LIMITED TO

01:50PM 11   THE SPECIFIC RESULTS THAT THEIR PATIENTS RECEIVED FROM

01:50PM 12   THERANOS.

01:50PM 13        AND TO BE CLEAR, WE DON'T -- WE STILL OBJECT TO THE

01:50PM 14   ADMISSION OF TESTIMONY ABOUT THESE PARTICULAR PATIENTS'

01:51PM 15   RESULTS, BUT IN THE EVENT THE COURT, YOU KNOW, DOES NOT FIND

01:51PM 16   OUR OBJECTION WELL TAKEN OR OVERRULES OUR MOTION OR DENIES OUR

01:51PM 17   MOTION WITH RESPECT TO ANECDOTAL TESTIMONY, WE STILL ASK THAT

01:51PM 18   THE GOVERNMENT BE HELD TO ITS OWN REPRESENTATION ABOUT THESE

01:51PM 19   LIMITS.

01:51PM 20             THE COURT:  MAY I STOP YOU THERE --

01:51PM 21             MS. TREFZ:  YES.

01:51PM 22             THE COURT:  -- AND TURN TO MR. BOSTIC.  I'M SORRY TO

01:51PM 23   DO THIS POINT, COUNTERPOINT, BUT SOMETIMES IT'S HELPFUL.

01:51PM 24             MS. TREFZ:  SURE.

01:51PM 25             THE COURT:  BUT, MR. BOSTIC, AS TO THOSE

01:51PM  1     LIMITATIONS, THAT IS, THAT PRECLUDING THE WITNESSES FROM

01:51PM  2     TESTIFYING ABOUT LAB ERROR THAT CAUSED THE INACCURACY OR

01:51PM  3     TESTIFYING ABOUT ANY OTHER SPECIFICS, DO YOU QUARREL WITH THAT?

01:51PM  4          MR. BOSTIC:  SO, YOUR HONOR, THE GOVERNMENT STANDS

01:51PM  5     BY THE REPRESENTATIONS IN ITS BRIEFING.

01:51PM  6          I WOULD JUST SAY AS TO THE CHARACTERIZATION OF THAT

01:51PM  7     NARROWING IN THE DEFENSE'S REPLY BRIEF, I'M NOT SURE I WOULD

01:51PM  8     PUT IT EXACTLY THE WAY THEY PUT IT.

01:52PM  9          FOR EXAMPLE, I NOTE THAT THE DEFENSE CLAIMS THAT, FOR

01:52PM  10    EXAMPLE, EVERY TIME A DOCTOR SAYS SOMETHING LIKE LAB ERROR IS

01:52PM  11    THE ONLY EXPLANATION FOR THE NUMBERS HE SAW FROM THERANOS, OR

01:52PM  12    THAT LAB ERROR/INACCURATE TESTING IS THE ONLY POSSIBILITY, THE

01:52PM  13    DEFENSE SOMEWHAT AGGRESSIVELY READS THE GOVERNMENT'S NARROWING

01:52PM  14    OF EXPERT OPINIONS AS EXCLUDING THOSE STATEMENTS, AND I DON'T

01:52PM  15    SEE IT THAT WAY.

01:52PM  16         I BELIEVE THAT IF A DOCTOR IS QUALIFIED TO TESTIFY THAT A

01:52PM  17    SPECIFIC THERANOS TEST RESULT COULD NOT HAVE BEEN ACCURATE,

01:52PM  18    THEN IT'S THE SAME THING TO SAY THAT THE TEST WAS INACCURATE OR

01:52PM  19    THAT LAB ERROR/INACCURATE TESTING IS THE ONLY EXPLANATION.

01:52PM  20         IN MY VIEW THESE ARE SYNONYMOUS STATEMENTS, SO I'M NOT

01:52PM  21    SURE WHETHER THE DEFENSE IS SUGGESTING DIFFERENT LANGUAGE BE

01:53PM  22    USED, BUT I THINK THE DEFENSE'S READING OF THE GOVERNMENT'S

01:53PM  23    SO-CALLED "CONCESSIONS" ARE A LITTLE BROAD.

01:53PM  24         THE COURT:  I SEE.  THANK YOU.

01:53PM  25         WHEN I READ THOSE I THOUGHT, WELL, IT'S APPROPRIATE TO

01:53PM 1    ALLOW THE PHYSICIANS TO TESTIFY ABOUT THE TESTS, THE INACCURACY

01:53PM 2    OF THE TESTS, AND I THINK GOT DOWN TO A LITTLE BIT MORE

01:53PM 3    GRANULAR ABOUT RECEIVING A TEST RESULT AND RECOGNIZING THAT IT

01:53PM 4    WAS NOT POSSIBLE THAT THE NUMBERS, THE GRADATIONS, WHATEVER IT

01:53PM 5    WAS, IT WAS JUST SO OFF THE CHARTS FROM NORMAL MEDICAL

01:53PM 6    BIOLOGICAL PRACTICE THAT THEY ORDERED RETESTS AND ANOTHER TEST

01:53PM 7    CAME IN, WITHOUT SAYING THIS IS EVIDENCE THEN THAT THERANOS

01:53PM 8    CANNOT ACCURATELY AND CONSISTENTLY PROVIDE TESTING, BUT I HAD

01:53PM 9    THIS TEST RESULT FROM MY PATIENT, IT WAS WRONG, THE TEST WAS

01:53PM 10   FROM THERANOS, AND THAT'S ALL I CAN SAY ABOUT IT.

01:54PM 11           MS. TREFZ:  WELL, WITH RESPECT TO THE SPECIFIC POINT

01:54PM 12   THAT MR. BOSTIC MADE ON LAB ERROR IS THE ONLY EXPLANATION, I'M

01:54PM 13   NOT SURE THAT THESE WITNESSES HAVE THE BASIS TO GO THERE.

01:54PM 14       I THINK WHAT YOUR HONOR SAID WAS SOMETHING SLIGHTLY

01:54PM 15   DIFFERENT, WHICH IS THE CONCLUSION THAT THE TESTS WERE

01:54PM 16   INACCURATE OR THAT A SPECIFIC TEST WAS INACCURATE AND IT CAME

01:54PM 17   FROM THERANOS, NOT NECESSARILY ASCRIBING IT TO, YOU KNOW, LAB

01:54PM 18   ERROR OR JUST REGULAR IMPRECISION OR SOME OTHER PATIENT

01:54PM 19   MEDICATION OR SOMETHING LIKE THAT.

01:54PM 20       I THINK THAT THOSE ARE TWO DIFFERENT THINGS.

01:54PM 21       WITH RESPECT TO THE INDIVIDUAL PATIENT RESULTS, I THINK WE

01:54PM 22   HAVE OUR OBJECTION ON THE -- THAT YOU JUST WERE DISCUSSING WITH

01:54PM 23   RESPECT TO THE FACT THAT THESE ARE ANECDOTES AND WE THINK THAT

01:54PM 24   THEY ARE NOT PROBATIVE BUT ARE EXTREMELY PREJUDICIAL IN THE

01:54PM 25   CONTEXT OF THIS SCIENTIFIC CASE.

01:55PM  1      BUT ASIDE FROM KIND OF THAT -- WITH THOSE QUALIFICATIONS,

01:55PM  2  I GUESS I WOULD SAY THAT, FOR US, HOW WE READ THE GOVERNMENT'S

01:55PM  3  REPRESENTATION WAS THAT SOMETHING LIKE LAB ERROR IS THE ONLY

01:55PM  4  POSSIBILITY BECAUSE IT ASCRIBES A SPECIFIC REASON TO THE

01:55PM  5  INACCURACY AND IS NOT JUST THE RESULT IS INACCURATE BASED ON

01:55PM  6  WHAT I KNOW OF THIS PATIENT'S MEDICAL HISTORY AND MEDICAL FILE.

01:55PM  7      WE THOUGHT THAT THAT WAS APPROPRIATELY LIMITED BY THE

01:55PM  8  GOVERNMENT.

01:55PM  9          THE COURT:  MR. BOSTIC.

01:55PM 10          MR. BOSTIC:  AND, YOUR HONOR, I THINK MY ANSWER

01:55PM 11  WOULD BE THAT WHEN WE'RE SPEAKING TO THESE DOCTOR WITNESSES AND

01:55PM 12  THEY USE THE PHRASE "LAB ERROR" WHEN THEY SAY LAB ERROR IS THE

01:55PM 13  ONLY EXPLANATION, I THINK TO THEM WHAT THAT MEANS IS THAT THIS

01:55PM 14  NUMERICAL VALUE THAT CAME BACK FROM THERANOS COULD NOT

01:56PM 15  ACCURATELY REPRESENT, COULD NOT ACCURATELY CORRESPOND TO WHAT

01:56PM 16  IS HAPPENING IN THE PATIENT'S BODY, AND THAT LEAVES LAB ERROR,

01:56PM 17  WHICH ENCOMPASSES, I THINK THEY WOULD SAY -- AND I DON'T MEAN

01:56PM 18  TO SPEAK FOR THEM -- BUT I THINK THEY WOULD SAY THAT WHEN THEY

01:56PM 19  SAY "LAB ERROR," THAT ENCOMPASSES ANYTHING FROM INHERENTLY

01:56PM 20  FLAWED TESTING METHODS TO SAMPLE MISHANDLING TO ANY NUMBER OF

01:56PM 21  OTHER THINGS.

01:56PM 22      THEY'RE NOT GOING TO TESTIFY ABOUT THE DEFICIENCIES IN

01:56PM 23  THERANOS'S LAB PRACTICES OR FLAWS IN THE THERANOS DEVICE.  THEY

01:56PM 24  DON'T HAVE INSIGHT INTO THAT, SO THEY WON'T BE OFFERING THOSE

01:56PM 25  OPINIONS.  WHEN THEY SAY "LAB ERROR," I THINK THEY SIMPLY MEAN

01:56PM 1   THE RESULT IS ERRONEOUS AND THE SOURCE OF THE ERROR IS

01:56PM 2   SOMEWHERE ON THE THERANOS SIDE BECAUSE THE NUMBER SIMPLY

01:56PM 3   DOESN'T MATCH WHAT MUST BE THE REALITY OF THE PATIENT'S ACTUAL

01:56PM 4   HEALTH CONDITION.

01:56PM 5            THE COURT:  THANK YOU.  SO DOES THAT SAY THAT THE

01:56PM 6   WITNESS WOULD TESTIFY, I ORDERED A TEST, I RECEIVED THE RESULT,

01:57PM 7   IT WAS SO EXTRAORDINARY OR SO DIFFERENT THAN NORMAL TESTING

01:57PM 8   THAT I RETESTED AND GOT A DIFFERENT RESULT WHICH WAS MORE

01:57PM 9   ACCURATE.  THE TEST WAS IN ERROR AND IT CAME FROM THERANOS, AND

01:57PM 10  THAT'S ENOUGH, WITHOUT SAYING "LAB ERROR," WHICH I THINK IS THE

01:57PM 11  OFFENSIVE TERM HERE.

01:57PM 12           MR. BOSTIC:  CORRECT, YOUR HONOR.  I THINK THAT

01:57PM 13  COULD BE ANOTHER WAY TO CONVEY THE SAME IDEA AND THAT WOULD BE

01:57PM 14  THE CORE OF THEIR TESTIMONY.

01:57PM 15      OF COURSE IT WOULD INCLUDE ADDITIONAL JUSTIFICATIONS,

01:57PM 16  BACKGROUND AND CONTEXT SUPPORTING THAT OPINION.

01:57PM 17           THE COURT:  SURE.  THEY'RE NOT GOING TO BE PERMITTED

01:57PM 18  TO TESTIFY ABOUT ACCURACY OR RELIABILITY OF TESTING OVERALL

01:57PM 19  BECAUSE THEY DON'T HAVE THAT EXPERTISE, OR ANY FLAW IN THE

01:57PM 20  THERANOS TECHNOLOGY BECAUSE THEY DON'T HAVE THAT EXPERTISE.

01:57PM 21           MR. BOSTIC:  CORRECT, YOUR HONOR.

01:57PM 22      I THINK THE ONLY POINT I WOULD MAKE IS THAT TO THE EXTENT

01:57PM 23  THAT A DOCTOR DECIDED TO STOP USING THERANOS TESTING SERVICES

01:58PM 24  AFTER HAVING A BAD EXPERIENCE WITH AN INACCURATE OR MULTIPLE

01:58PM 25  IN ACCURATE RESULTS, THE GOVERNMENT BELIEVES THAT THAT DOCTOR

01:58PM 1    SHOULD BE ALLOWED TO EXPLAIN THE REASONS FOR THAT DECISION.

01:58PM 2         THAT'S NOT THE SAME THING AS SAYING, HERE'S WHAT THE

01:58PM 3    PROBLEM IS AT THERANOS.  I KNOW WHAT THE EXPLANATION IS.

01:58PM 4         THAT'S NOT AN OPINION.  IT'S NOT AN EXPERT OPINION.  IT'S

01:58PM 5    SIMPLY EXPLAINING A DECISION THAT THE DOCTOR MADE, AND WE THINK

01:58PM 6    THAT'S RELEVANT TO SHOW THE MATERIALITY OF THE ACCURACY OF

01:58PM 7    THESE TESTS AND TO PROVIDE INFORMATION TO THE JURY THAT WILL

01:58PM 8    HELP THEM, OR AT LEAST INFORM THEM AS TO THE DOCTOR'S

01:58PM 9    CREDIBILITY WHEN IT CAME TO HOW THE DOCTOR RESPONDED TO THESE

01:58PM 10   SITUATIONS.

01:58PM 11        THE COURT:  THANK YOU.

01:58PM 12        THERE WAS ONE OTHER PIECE, I THINK IT WAS POTENTIAL

01:58PM 13   TESTIMONY FROM A PHYSICIAN THAT MIGHT SAY THAT THERE WAS NO, NO

01:58PM 14   BIOLOGICAL EXPLANATION FOR THE RESULTS THAT THEY RECEIVED ON A

01:58PM 15   PARTICULAR TEST.

01:58PM 16        MR. BOSTIC:  I THINK THAT WOULD BE ANOTHER

01:58PM 17   PERMISSIBLE WAY TO CONVEY THIS IDEA, THIS BASIC IDEA THAT

01:59PM 18   THERANOS PROVIDED AN ASSAY RESULT THAT COULD NOT HAVE BEEN

01:59PM 19   ACCURATE.

01:59PM 20        MS. TREFZ:  AND FOR THAT, YOUR HONOR, I WOULD SAY

01:59PM 21   THAT WE SHOULD HAVE THE OPPORTUNITY TO TEST WHETHER THAT IS

01:59PM 22   ACTUALLY -- AND BY "TEST" I MEAN EXAMINE THE WITNESS.

01:59PM 23        THE COURT:  CROSS-EXAMINATION.

01:59PM 24        MS. TREFZ:  WELL, NOT JUST CROSS-EXAMINE THEM, BUT

01:59PM 25   IN A DAUBERT OR VOIR DIRE, BECAUSE I'M NOT SURE THAT THE

01:59PM 1    DOCTORS HAVE THE ABILITY TO SAY OR HAVE RELIABLY CONCLUDED THAT

01:59PM 2    THERE'S NO BIOLOGICAL EXPLANATION FOR A PARTICULAR RESULT.

01:59PM 3        IT DEPENDS ON THE DOCTOR, AND AS -- ONCE WE GET INTO THE

01:59PM 4    ACTUAL OPINIONS THAT WERE -- THAT WE THINK ARE STILL AT ISSUE,

01:59PM 5    THEN, YOU KNOW, I THINK THERE IS A QUESTION IN A LOT OF

01:59PM 6    SITUATIONS WHETHER THE DOCTOR EVEN IS REFERRING TO SOMETHING

01:59PM 7    SPECIFIC OR WHETHER THE DOCTOR IS JUST KIND OF TALKING FROM

01:59PM 8    MEMORY, AND I WOULD SAY FOR THAT -- FOR ALL OF THOSE THINGS,

02:00PM 9    INCLUDING THIS KIND OF THERE'S NO BIOLOGICAL EXPLANATION, IF

02:00PM 10   IT'S NOT TIED TO A VERY SPECIFIC KIND OF PATIENT FILE AND A

02:00PM 11   VERY SPECIFIC EXPLANATION, THAT RAISES REAL 702 CONCERNS AND SO

02:00PM 12   WE WOULD WANT TO -- WE THINK WITH THESE PARTICULAR DOCTORS

02:00PM 13   THERE'S A VERY -- THE COURT'S GATEKEEPING FUNCTION IS ACTUALLY

02:00PM 14   EXTREMELY IMPORTANT BECAUSE OF THIS MIXED FACT AND EXPERT ROLE

02:00PM 15   THAT THEY PLAY, AND THE KIND OF WAY IN WHICH THIS PERCIPIENT

02:00PM 16   WITNESS TESTIMONY CAN GET OUT OF HAND AND KIND OF VENTURE INTO

02:00PM 17   EXPERT AREAS THAT WE THINK WILL REALLY BE ESPECIALLY

02:00PM 18   PREJUDICIAL IN THIS KIND OF CASE.

02:00PM 19        THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND THAT.

02:00PM 20   THANK YOU FOR THAT.

02:00PM 21        WHEN I LOOKED AT THIS, THE THOUGHT OCCURRED TO ME THAT THE

02:00PM 22   DOCTORS WOULD TESTIFY BASED ON THEIR KNOWLEDGE AS MEDICAL

02:00PM 23   PHYSICIANS, AND PART OF THAT, BEING A DOCTOR, IS KNOWING --

02:01PM 24   THEY HAVE TO KNOW A LITTLE BIT OF BIOLOGY, AND THEY CAN

02:01PM 25   CERTAINLY TESTIFY ABOUT NUMBERS THAT WERE, FOR EXAMPLE, NOT

02:01PM 1    POSSIBLE IN A HUMAN BEING OR NOT POSSIBLE GIVEN THIS CONDITION

02:01PM 2    AND STATE THE REASONS WHY THEIR MEDICAL TRAINING SUGGESTS THAT.

02:01PM 3         I THOUGHT THAT SOME OF THESE DOCTORS, AT LEAST AS

02:01PM 4    PHYSICIANS, WOULD BE ABLE TO DO THAT AS TO SOME OF THESE TEST

02:01PM 5    RESULTS.  BUT AS YOU SAY, WE'LL SEE.

02:01PM 6              MS. TREFZ:  I THINK IT DEPENDS.

02:01PM 7              THE COURT:  OKAY.  THANK YOU.

02:01PM 8         THANK YOU, MR. BOSTIC.

02:01PM 9              MS. TREFZ:  OKAY.  IF I CAN JUST MOVE ON TO KIND OF

02:01PM 10   THE FOUR CATEGORIES OF OPINIONS THAT I THINK WE HAVE LEFT HERE.

02:01PM 11        THE FIRST SET OF OPINIONS IS OPINIONS REGARDING THERANOS

02:01PM 12   RESULTS THAT ARE PURPORTEDLY BASED ON SOME SET OF PATIENT

02:01PM 13   RESULTS, BUT FOR WHICH NO PATIENTS HAVE BEEN IDENTIFIED, AND AN

02:01PM 14   EXAMPLE OF THIS IS IN THE OPINIONS REFLECTED IN THE DISCLOSURES

02:02PM 15   FOR DR. ASIN, AND IF YOU LOOK AT EXHIBIT 5 TO OUR MOTION, TO

02:02PM 16   OUR OMNIBUS SET OF EXHIBITS, PAGE 7, THE BOTTOM PARAGRAPH JUST

02:02PM 17   BY WAY OF EXAMPLE, THERE'S A DISCLOSURE TO HBA1C TESTS.

02:02PM 18        AND THIS IS A TEST, AS THE COURT MAY KNOW, BUT JUST FOR

02:02PM 19   THE BENEFIT OF THE RECORD, IT IS USED FOR -- IT'S USED TO

02:02PM 20   MONITOR BLOOD SUGAR CONTROL AND WHAT IT DOES IS MEASURE THE

02:02PM 21   PERCENTAGE OF A PATIENT'S HEMOGLOBIN THAT IS GLYCATED AND IT'S

02:02PM 22   COMMONLY USED IN MONITORING TYPE 2 DIABETES.

02:02PM 23        SO DR. ASIN IS DISCLOSED AS SAYING -- OR AS POTENTIALLY

02:02PM 24   TESTIFYING THAT THERANOS A1C TESTS WERE EITHER TOO HIGH OR TOO

02:02PM 25   LOW, THE THERANOS TESTS WERE NOT ACCURATE.

| | | |
|---|---|---|
| 02:02PM | 1 | AND THIS TYPE OF DISCLOSURE WE THINK IS PROBLEMATIC FOR |
| 02:03PM | 2 | ONE PRIMARY REASON, WHICH IS THAT IT DOESN'T DISCLOSE THE BASES |
| 02:03PM | 3 | OR REASONS FOR DR. ASIN'S OPINION.  IT DOESN'T TALK ABOUT |
| 02:03PM | 4 | WHETHER HE'S SAYING -- IT DOESN'T EXPLAIN WHETHER HE'S BASING |
| 02:03PM | 5 | THIS ON ONE DISCLOSURE OR ONE RESULT OR A THOUSAND, IT DOESN'T |
| 02:03PM | 6 | DISCLOSE WHETHER HE'S TALKING ABOUT PATIENTS WHO HAVE TYPE 2 |
| 02:03PM | 7 | DIABETES OR NORMAL OR DO NOT, AND IT DOESN'T TALK ABOUT THE |
| 02:03PM | 8 | TIME PERIOD FOR WHICH HE'S COVERING, WHICH IS IMPORTANT |
| 02:03PM | 9 | BECAUSE -- AND THIS GOES A LITTLE BIT TO ONE OF THE ISSUES THAT |
| 02:03PM | 10 | YOU WERE DISCUSSING WITH MR. WADE AND MS. SAHARIA EARLIER, |
| 02:03PM | 11 | WHICH IS THAT THERE WAS A TIME PERIOD FOR PATIENTS TESTED IN |
| 02:03PM | 12 | ARIZONA WHERE THERANOS HBA1C TESTS WERE NOT RUN ON -- WELL, ANY |
| 02:03PM | 13 | TEST THAT WAS RUN IN ARIZONA WAS RUN ON A COMMERCIAL DEVICE, |
| 02:04PM | 14 | WAS NOT RUN ON THERANOS TECHNOLOGY, AND THERE WAS A TIME PERIOD |
| 02:04PM | 15 | WHEN IT WAS WELL-KNOWN WITHIN THERANOS AND DISCLOSED TO DOCTORS |
| 02:04PM | 16 | THAT THERE WAS ACTUALLY AN ISSUE WITH THE REAGENT THEY WERE |
| 02:04PM | 17 | USING FROM A THIRD PARTY -- FROM THE THIRD PARTY MANUFACTURER |
| 02:04PM | 18 | OF THE MACHINE, SIEMENS, AND SIEMENS HAD ISSUED A RECALL NOTICE |
| 02:04PM | 19 | BASED ON THIS HBA1C REAGENT AND -- |
| 02:04PM | 20 | THE COURT:  WHAT IS THE TIME STAMP OF THAT? |
| 02:04PM | 21 | MS. TREFZ:  THE TIME PERIOD OF THAT IS BASICALLY |
| 02:04PM | 22 | SUMMER TO FALL 2014.  AND SO TO THE EXTENT THAT DR. ASIN OR, |
| 02:04PM | 23 | ALTERNATIVELY, DR. PAGE IS BASING THEIR EXPERT OPINIONS ABOUT |
| 02:04PM | 24 | HBA1C TESTS AND THE PURPORTED INACCURACY OF THEM ON THIS TIME |
| 02:04PM | 25 | PERIOD, THAT REALLY DOESN'T GO TO THERANOS TECHNOLOGY AT ALL. |

02:04PM 1        I THINK THAT THAT'S ONE OF THE KIND OF -- IT KIND OF

02:05PM 2   CRYSTALLIZES TO ME WHY WE NEED TO BE ABLE TO KIND OF UNDERSTAND

02:05PM 3   THE BASES FOR THIS, AND ALSO WHY WE REALLY NEED TO UNDERSTAND

02:05PM 4   HOW THE GOVERNMENT IS USING THIS EVIDENCE TO GET TO THE

02:05PM 5   ACCURACY AND RELIABILITY OF THERANOS TECHNOLOGY.

02:05PM 6        THE COURT:  SO ARE YOU SAYING THAT BECAUSE THE

02:05PM 7   TESTING IN THOSE EXAMPLES WERE NOT RUN ON THERANOS MACHINES,

02:05PM 8   BUT ON THIRD PARTY MACHINES, THAT THAT IS OUTSIDE OF THE --

02:05PM 9   THAT'S CONDUCT OUTSIDE OF THE INDICTMENT?

02:05PM 10        MS. TREFZ:  I'M SAYING IT MAY NOT BE RELEVANT AT ALL

02:05PM 11   BECAUSE IT'S NOT RUN ON THERANOS TECHNOLOGY, OR AT THE VERY

02:05PM 12   LEAST WE NEED TO BE ABLE TO KIND OF PRESSURE TEST WHETHER THE

02:05PM 13   OPINION, WHETHER THE OPINIONS OF THESE DOCTORS FALL WITHIN THAT

02:05PM 14   SCOPE.

02:05PM 15        BUT I'M NOT SURE WHY IT'S RELEVANT OR WHY IN 702 LANGUAGE

02:06PM 16   IT FITS THE CASE IF IT GOES TO, YOU KNOW, COMMERCIAL

02:06PM 17   TECHNOLOGY.

02:06PM 18        THE COURT:  AND I DON'T MEAN TO GET INTO THE WEEDS

02:06PM 19   HERE OR GO SOMEWHERE ELSE, BUT IF THE INDICTMENT SAYS THAT

02:06PM 20   THERANOS REPRESENTED THAT THEY COULD DO ACCURATE AND RELIABLE

02:06PM 21   AND CONSISTENT TESTING, DOES IT SAY ON THEIR PROPRIETARY

02:06PM 22   MACHINES?

02:06PM 23        MS. TREFZ:  YOUR HONOR, IT SAYS THERANOS TECHNOLOGY

02:06PM 24   CONSISTENTLY PRODUCED ACCURATE AND RELIABLE RESULTS.  I THINK

02:06PM 25   THAT'S IN PARAGRAPH 16 OF THE THIRD SUPERSEDING INDICTMENT.

02:06PM 1      SO I THINK IT'S A REAL QUESTION AS TO WHETHER IT FALLS

02:06PM 2  OUTSIDE.

02:06PM 3           THE COURT:  OKAY.  OKAY.

02:06PM 4           MS. TREFZ:  SO THE REASON WHY I RAISE THAT,

02:06PM 5  YOUR HONOR, IS BECAUSE IT'S IMPORTANT FOR US TO KNOW THE BASES

02:06PM 6  AND REASONS FOR THE OPINIONS, AND IT'S IMPORTANT NOT ONLY FOR

02:06PM 7  RULE 16 PURPOSES, BUT IT'S IMPORTANT FOR THE 702 GATEKEEPING

02:07PM 8  PURPOSE AS WELL.

02:07PM 9      JUST LAST YEAR IN A CASE CALLED VALENCIA-LOPEZ THE

02:07PM 10  NINTH CIRCUIT EMPHASIZED, YOU KNOW, THAT THE 702 GATEKEEPING

02:07PM 11  FUNCTION, OF COURSE AS YOUR HONOR I'M SURE IS WELL AWARE,

02:07PM 12  HAPPENS BEFORE THE WITNESS TESTIFIES.

02:07PM 13      AND IN ORDER TO DO THAT, THEY NEED TO HAVE -- THE COURT

02:07PM 14  NEEDS TO HAVE AN ACTUAL EXPLANATION OF THE METHODOLOGY USED AND

02:07PM 15  WHAT THE BASES AND REASONS ARE SO THAT IT CAN PERFORM THAT

02:07PM 16  GATEKEEPING FUNCTION.

02:07PM 17      AND THEN THE KIND OF THIRD POINT THAT I WOULD HAVE WITH

02:07PM 18  RESPECT TO THIS CATEGORY OF OPINIONS IS THAT FOR THESE MIXED

02:07PM 19  FACT AND EXPERT WITNESSES, THOSE FUNCTIONS I THINK WE WOULD

02:07PM 20  SUBMIT ARE EVEN HEIGHTENED HERE BECAUSE OF THE ROLES THAT THESE

02:07PM 21  DOCTORS PLAY.  YOU KNOW, THE CASES MAKE CLEAR THAT WHEN -- THAT

02:07PM 22  WHEN EXPERT TESTIMONY IS BASED ON EXPERIENCE, YOU KNOW, RATHER

02:07PM 23  THAN SOME, YOU KNOW, SPECIFIC SCIENTIFIC TESTING OR SOMETHING

02:08PM 24  LIKE THAT, THEN THE COURT'S GATEKEEPING FUNCTION IS

02:08PM 25  ESPECIALLY -- MUST ESPECIALLY BE ENGAGED.

02:08PM  1          AND THE COMMON EXAMPLE IS WITH RESPECT TO DEA AGENTS.  YOU

02:08PM  2     KNOW, THIS IS THE ONE THAT IS OFTEN IN THE CASES, DEA AGENTS

02:08PM  3     GET UP AND TALK ABOUT COMMUNICATIONS WITH RESPECT TO DRUG

02:08PM  4     CARTELS AND THEY'RE CERTIFIED AS AN EXPERT BECAUSE THEY'VE

02:08PM  5     SPENT YEARS INVESTIGATING DRUG CARTELS.

02:08PM  6          IN THOSE CASES, YOU KNOW, THE COURTS ACKNOWLEDGE THIS

02:08PM  7     PARTICULAR PREJUDICE OR RISK OF PREJUDICE THAT COMES FROM THESE

02:08PM  8     EXPERTS OR THESE AGENTS BEING THE INVESTIGATING AGENT AND THEN

02:08PM  9     TESTIFYING AS AN EXPERT AS TO SOME THINGS AND NOT AS AN EXPERT

02:08PM  10    AS TO OTHERS.

02:08PM  11         HERE I WOULD SUBMIT THAT THIS IS -- THE RISK OF KIND OF

02:08PM  12    BLEEDING FACT AND EXPERT TESTIMONY TOGETHER IS EVEN GREATER

02:08PM  13    BECAUSE THESE INDIVIDUALS WILL BE INTRODUCING THEMSELVES AS

02:08PM  14    MEDICAL DOCTORS AND, YOU KNOW, MEDICAL DOCTORS PROBABLY HAVE

02:09PM  15    THAT EXTRA AUTHORITY OVER THEIR PATIENT'S OPINIONS.

02:09PM  16         SO I THINK WE REALLY NEED TO BE IN A POSITION TO BE ABLE

02:09PM  17    TO TEST THAT.

02:09PM  18         I USED DR. ASIN AS AN EXAMPLE, BUT I WANTED TO JUST FLAG

02:09PM  19    THAT THIS IS A CONCERN THAT IS RELEVANT TO THE DISCLOSURES FOR

02:09PM  20    MS. EMBRY ON TESTOSTERONE, DR. LINNERSON AND DR. SZMUC WITH

02:09PM  21    RESPECT TO HCG -- AND THAT'S S-Z-M-U-C -- AND DR. PAGE WITH

02:09PM  22    RESPECT TO HBA1C AS WELL.

02:09PM  23              THE COURT:  SO IT'S NOT UNUSUAL TO HAVE FACT/EXPERT

02:09PM  24    COMBINED, AND AS YOU KNOW, THERE ARE NINTH CIRCUIT INSTRUCTIONS

02:10PM  25    THAT INFORM A JURY ABOUT THAT.

02:10PM 1        PART OF THE TRIAL PROCESS IS FOR THE TRIAL COURT TO INFORM

02:10PM 2    THE JURY AS TO WHEN A WITNESS IS TESTIFYING AS AN EXPERT

02:10PM 3    VIS-À-VIS A FACT WITNESS, AND THAT IS SOMETHING THAT CAN BE

02:10PM 4    HANDLED INTERNALLY I THINK.

02:10PM 5        MS. TREFZ:  I AGREE, YOUR HONOR.

02:10PM 6        I ONLY POINT IT OUT TO NOTE THAT IN THIS PARTICULAR CASE

02:10PM 7    IT WILL BE REALLY IMPORTANT TO UNDERSTAND WHAT THEY'RE

02:10PM 8    TESTIFYING ABOUT BASED ON JUST AS FACT WITNESSES AND WHAT IS

02:10PM 9    EXPERT TESTIMONY BECAUSE THERE'S A REAL RISK OF KIND OF MIXING

02:10PM 10   THOSE THINGS, AS THERE IS IN EVERY CASE.

02:10PM 11       SO THAT WAS THE FIRST SET OF OPINIONS.

02:10PM 12       THE SECOND SET OF OPINIONS THAT I WANTED TO MAKE SURE THAT

02:10PM 13   WE HAVE IN MIND HERE IS OPINIONS REGARDING PURPORTED LACK OF

02:10PM 14   PROBLEMS, ERRORS, OR ISSUES WITH RESPECT TO OTHER LABS.

02:10PM 15       HERE, YOU KNOW, FOR MANY -- THERE ARE SEVERAL OF THE

02:10PM 16   EXPERTS -- AND I THINK MR. BOSTIC EARLIER TODAY USED THE

02:10PM 17   EXAMPLE OF MS. EMBRY WHO IS DISCLOSED AS POTENTIALLY TESTIFYING

02:11PM 18   THAT THE MEDICAL PROFESSIONAL HAD NEVER EXPERIENCED CLINICAL

02:11PM 19   ERRORS WITH OTHER LAB COMPANIES.

02:11PM 20       AN EXAMPLE OF THIS IS IN EXHIBIT 4, PAGE 3 OF -- TO OUR

02:11PM 21   SET.  AND JUST TO QUOTE FROM THAT, IT SAYS SHE WILL FURTHER

02:11PM 22   TESTIFY THAT IN 20 PLUS YEARS USING SONORA QUEST AND LABCORP,

02:11PM 23   SHE HAS NEVER EXPERIENCED ANY CLINICAL ERRORS WITH THEIR LAB

02:11PM 24   RESULTS, AND SIMILAR DISCLOSURES WERE MADE WITH RESPECT TO

02:11PM 25   SEVERAL OF THE OTHER DOCTORS.

02:11PM  1      THERE'S NO DISCLOSURE HERE AS TO HOW ANY OF THESE DOCTORS

02:11PM  2   CAME TO THIS SWEEPING CONCLUSION THAT THEY HAD NEVER

02:11PM  3   EXPERIENCED CLINICAL ERRORS WITH OTHER LAB COMPANIES, OR EVEN

02:11PM  4   REALLY WHAT THAT MEANS.  DOES IT MEAN THAT THEY NEVER

02:11PM  5   QUESTIONED THE ACCURACY OF A TEST?  DOES IT MEAN THAT THEY

02:11PM  6   NEVER HAD A PATIENT REPEAT A TEST?  THAT THEY NEVER

02:12PM  7   CONCLUSIVELY DETERMINED THAT THERE WAS AN ERROR, OR THAT THEY

02:12PM  8   WERE NEVER NOTIFIED THAT THERE WAS AN ERROR?

02:12PM  9      KIND OF SEPARATELY FROM THIS DEFINITIONAL ISSUE, ALSO,

02:12PM 10   WHAT IS THIS BASED ON?  IS IT SIMPLY BASED ON THEIR MEMORY, I

02:12PM 11   DON'T REMEMBER HAVING A CLINICAL ERROR WITH ANOTHER LAB?  OR IS

02:12PM 12   IT BASED ON A SYSTEMATIC VIEW OF THEIR PATIENT RECORDS?  AND IF

02:12PM 13   SO, KIND OF HOW DID THEY GO ABOUT DOING THAT HERE?

02:12PM 14      I THINK UNDERSTANDING WHETHER THESE OPINIONS ARE BASED ON

02:12PM 15   SUFFICIENT DATA AND ALSO RELIABLE METHODS RELIABLY APPLIED,

02:12PM 16   WHICH IS WHAT 702 REQUIRES, IS ESPECIALLY IMPORTANT BECAUSE

02:12PM 17   THESE SWEEPING CONCLUSIONS, WHEN CONSIDERED IN THE CONTEXT OF

02:12PM 18   PUBLICLY AVAILABLE INFORMATION, SEEM TO HAVE A HIGH LIKELIHOOD

02:12PM 19   OF BEING UNRELIABLE.

02:12PM 20      AND JUST TO GIVE AN EXAMPLE AS TO WHY, WE TALKED EARLIER,

02:12PM 21   OR YOU DID WITH MR. WADE, ABOUT WELL DOCUMENTED ERROR RATES.

02:13PM 22      AND GIVEN, YOU KNOW, WELL DOCUMENTED ERROR RATES AND LAB

02:13PM 23   TESTING AND THE NUMBER OF TESTS THAT THESE DOCTORS SAID THAT

02:13PM 24   THEY PERFORMED OR REVIEWED IN THEIR LIFETIME, IT IS HIGHLY

02:13PM 25   UNLIKELY THAT THEY NEVER EXPERIENCED ANOTHER LAB ERROR.  THEY

02:13PM   1    JUST POTENTIALLY DON'T REMEMBER IT OR THEY WERE NEVER INFORMED

02:13PM   2    OF IT.

02:13PM   3        SECOND, WE KNOW FROM EVIDENCE THAT WILL PRESUMABLY BE AT

02:13PM   4    ISSUE IN THIS CASE, LIKE THE HBA1C EXAMPLE THAT I GAVE YOU

02:13PM   5    EARLIER, THAT SOMETIMES COMMERCIAL DEVICE MANUFACTURERS RECALL

02:13PM   6    REAGENTS IN OTHER PARTS OF THEIR MACHINES, AND THAT DOESN'T

02:13PM   7    ALWAYS REQUIRE PATIENT NOTIFICATION.  IT'S KIND OF A

02:13PM   8    COMPLICATED ISSUE.

02:13PM   9        BUT I WOULD JUST NOTE THAT JUST BECAUSE THERE IS A RECALL

02:13PM  10    IN A PARTICULAR REAGENT OR A TEST RESULT MIGHT BE OFF, THAT

02:13PM  11    DOESN'T AUTOMATICALLY MEAN THAT YOU MUST INFORM THE DOCTOR.

02:13PM  12        THE COURT:  SO THIS IS -- IT SOUNDS LIKE THIS IS A

02:13PM  13    GOOD FODDER FOR CROSS-EXAMINATION.

02:14PM  14        MS. TREFZ:  I UNDERSTAND WHY YOU WOULD SAY THAT,

02:14PM  15    YOUR HONOR.

02:14PM  16        BUT IT'S EXTREMELY PREJUDICIAL WHEN IT COMES IN AS THE

02:14PM  17    IDEA OF I'VE NEVER HAD ANOTHER LAB ERROR.

02:14PM  18        AND I DO THINK THAT THAT IS CLEARLY THE STUFF OF EXPERT

02:14PM  19    TESTIMONY BECAUSE THE DECISION ITSELF AS TO WHETHER SOMETHING

02:14PM  20    IS AN ERROR OR NOT OR IS CORRECT IS CLEARLY BASED ON MEDICAL

02:14PM  21    OPINION, AND IT'S NOT AS IF THESE DOCTORS HAVE SAT THERE FOR

02:14PM  22    YEARS AND BEEN LIKE, I'M TALLYING UP THE NUMBER OF LAB ERRORS

02:14PM  23    THAT I MAKE.  THIS IS NOT SIMPLY PERCIPIENT WITNESS TESTIMONY.

02:14PM  24        THEY ARE COMBINING ALL OF THESE INDIVIDUAL DECISIONS,

02:14PM  25    PRESUMABLY, OF THEIR PATIENTS AND SAYING, IF YOU TAKE THEM ALL

02:14PM 1    TOGETHER, I'VE NEVER EXPERIENCED ANOTHER LAB ERROR AND THAT'S

02:14PM 2    THE OPINION THAT I'M NOW GOING TO GIVE.

02:14PM 3         SO I WOULD SAY THAT THAT IS OBVIOUSLY THE STUFF OF EXPERT

02:14PM 4    TESTIMONY.

02:14PM 5         AND OUR POINT HERE IS THAT WE DON'T KNOW THE BASIS FOR

02:15PM 6    THIS, AND IT NEEDS TO BE DISCLOSED AND THE COURT NEEDS TO HAVE

02:15PM 7    THE OPPORTUNITY TO PERFORM THIS GATEKEEPING FUNCTION BECAUSE OF

02:15PM 8    THE SUBSTANTIAL PREJUDICE THAT WOULD COME FOR IT, OR COME FROM

02:15PM 9    IT.

02:15PM 10        I HEARD MR. BOSTIC SAY EARLIER THAT THE IDEA THAT OTHER

02:15PM 11   LAB ERRORS IS -- THAT OTHER LABS HAD ERRORS, OR DIDN'T, IS, YOU

02:15PM 12   KNOW, RELEVANT IN THIS CASE, AND IF -- I QUESTION WHETHER

02:15PM 13   THAT'S THE CASE BECAUSE WHAT WE'RE REALLY TALKING ABOUT IS

02:15PM 14   THERANOS, NOT OTHER LABS, OR THAT'S WHAT THE ALLEGATIONS IN THE

02:15PM 15   INDICTMENT GO TO.

02:15PM 16        BUT EVEN IF NOT, IT REALLY DOES OPEN THE DOOR TO KIND OF

02:15PM 17   QUESTIONING WHETHER THAT IS -- YOU KNOW, WHETHER THAT'S TRUE OF

02:15PM 18   THESE LAB COMPANIES, WHICH HAS NOT REALLY BEEN AN ISSUE OF

02:15PM 19   DISCOVERY IN THIS CASE.

02:15PM 20        AND FRANKLY, IT MEANS THAT PRETTY MUCH ANY ANECDOTAL

02:15PM 21   RESULT, INCLUDING SOMETHING THAT IS -- YOU KNOW, INCLUDING FROM

02:15PM 22   DOCTORS THAT HAVE NOTHING TO DO WITH THERANOS COULD COME IN AND

02:15PM 23   SAY, OH, BY THE WAY, I RECEIVED -- I DID HAVE A LAB ERROR FROM

02:16PM 24   SONORA QUEST, I DID HAVE A LAB ERROR FROM LABCORP, OR ANY OF

02:16PM 25   THESE OTHER LAB COMPANIES, AND I THINK THAT KIND OF BLOWS THE

02:16PM 1    DOORS OFF OF THE POTENTIAL, YOU KNOW, SCOPE OF THIS VERY LONG

02:16PM 2    CASE AND KIND OF -- AND SO I THINK OVERALL MY POINT IS THAT, AS

02:16PM 3    A FIRST STEP, WE NEED TO UNDERSTAND WHAT THE BASIS FOR THESE

02:16PM 4    EXTREMELY SWEEPING STATEMENTS ARE BECAUSE THERE'S REASON TO

02:16PM 5    DOUBT WHETHER THEY ARE RELIABLE CONCLUSIONS.

02:16PM 6         SO AT THIS POINT I WANTED TO TOUCH JUST BRIEFLY ON THE

02:16PM 7    TIMING ISSUE BECAUSE I UNDERSTAND WITH RESPECT TO -- I

02:16PM 8    UNDERSTAND THAT THE GOVERNMENT IS SAYING THAT IT IS TRYING TO

02:16PM 9    GET MORE INFORMATION ON WHAT THESE DOCTORS ARE BASING THEIR

02:16PM 10   OPINIONS ON.

02:16PM 11        THE GOVERNMENT FOCUSSED ON FOUR MONTHS UNTIL TRIAL, BUT I

02:17PM 12   WOULD JUST NOTE THAT IT IS 14 MONTHS, 14 MONTHS PAST THE

02:17PM 13   DISCLOSURE DEADLINE FOR THESE EXPERT DISCLOSURES FOR THE

02:17PM 14   GOVERNMENT'S CASE.

02:17PM 15        THE GOVERNMENT HAS BEEN SAYING IT IS TRIAL READY SINCE

02:17PM 16   JULY OF LAST YEAR AT LEAST, AND IT SEEMS TO ME THAT IF THE

02:17PM 17   GOVERNMENT WANTS TO ELICIT THESE OPINIONS, WHICH IS AT LEAST IN

02:17PM 18   SOME WAY UP TO THEM, THEY CHOOSE, SUBJECT TO RELEVANCE AND OUR

02:17PM 19   OBJECTIONS, BUT IF THE GOVERNMENT IS COMING IN HERE AND WANTING

02:17PM 20   TO ELICIT THESE OPINIONS AT TRIAL, IT CERTAINLY SHOULD HAVE HAD

02:17PM 21   ENOUGH TIME TO FIGURE OUT WHY ITS WITNESSES BELIEVE WHAT THEY

02:17PM 22   BELIEVE AND, FRANKLY, FIGURING OUT THE BASES FOR THESE

02:17PM 23   OPINIONS, I WOULD HAVE THOUGHT, IS SOMETHING THAT YOU WOULD

02:17PM 24   WANT TO DO WHEN YOU'RE INTERVIEWING THE WITNESSES THE FIRST

02:17PM 25   TIME OR BEFORE YOU MAKE BROAD ACCURACY ACCUSATIONS.

02:17PM 1     BUT AT THE VERY LEAST I GUESS MY POINT, YOUR HONOR, IS

02:17PM 2     THAT WE NEED THE OPPORTUNITY FOR -- ONCE WE GET ADEQUATE

02:18PM 3     DISCLOSURES, IF THEY EVER COME, WE NEED THE OPPORTUNITY TO

02:18PM 4     HAVE -- YOU KNOW, TO TEST THE RELIABILITY OF THEIR OPINIONS

02:18PM 5     BEFORE THOSE DOCTORS GET UP AND TESTIFY.

02:18PM 6         THE THIRD SET OF OPINIONS -- AND HERE THIS IS -- I THINK I

02:18PM 7     CAN DEFER TO THE COURT A LITTLE BIT ON WHETHER YOU WANT TO

02:18PM 8     DISCUSS THIS NOW OR WITH RESPECT TO THE NEXT MOTION, WHICH I

02:18PM 9     ALSO HAVE THE PLEASURE OF ARGUING, BUT IT'S STATEMENTS ABOUT

02:18PM 10    THESE KIND OF HYPOTHETICAL INFLAMMATORY CONSEQUENCES THAT

02:18PM 11    DIDN'T HAPPEN, AND OUR MOTION IN THAT REGARD COVERS BOTH,

02:18PM 12    BUT -- OR COVERS BOTH CUSTOMER TESTIMONY IN THAT RESPECT.

02:18PM 13         THE COURT:  WELL, LET ME -- I'LL ACCEPT YOUR

02:18PM 14    INVITATION TO SPEAK ABOUT IT.  THANK YOU.

02:18PM 15         MS. TREFZ:  OKAY.

02:18PM 16         THE COURT:  LET ME SAY, JUST TO HELP THINGS ALONG IN

02:18PM 17    THE CONVERSATION, AND TO GIVE THE GOVERNMENT A HEADS UP, I DO

02:19PM 18    HAVE SOME CONCERNS ABOUT ALLOWING SOME OF THE TESTIMONY, THE

02:19PM 19    EMOTIONAL TESTIMONY ABOUT HYPOTHETICAL CONDITIONS AND WHAT THAT

02:19PM 20    MEANT TO INDIVIDUALS.  SO I DO HAVE SOME CONCERNS ABOUT THAT,

02:19PM 21    SO THE GOVERNMENT'S -- I'M JUST PUTTING THE GOVERNMENT ON

02:19PM 22    NOTICE.  I'D LIKE TO HEAR FROM YOU ABOUT WHY THAT HAS RELEVANCE

02:19PM 23    AND WHY IT SHOULD BE ADMITTED.

02:19PM 24         I HAVE SOME DOUBTS -- IN THE SPIRIT OF FULL DISCLOSURE, I

02:19PM 25    HAVE SOME DOUBTS ABOUT IT, BUT I JUST WANT TO LET YOU KNOW.

02:19PM  1    THAT MIGHT HELP YOUR ARGUMENT, TOO.

02:19PM  2              MS. TREFZ:  RIGHT.  I APPRECIATE THAT, YOUR HONOR.

02:19PM  3         SO I'M GOING TO MOVE ON.  THAT'S A BUCKET OF EXPERT

02:19PM  4    TESTIMONY, BUT WE'LL TALK ABOUT THAT NEXT, I WOULD SAY IN THE

02:19PM  5    INTEREST OF BEING BRIEF, BUT I THINK WE'RE BEYOND THAT.

02:19PM  6         AND THEN THE FOURTH CATEGORY IS OPINIONS REGARDING

02:19PM  7    THERANOS RESULTS OF IDENTIFIED PATIENTS, AND THAT I LEFT IT FOR

02:19PM  8    LAST BECAUSE I KNOW YOU'VE ALREADY BEEN DISCUSSING IT WITH

02:19PM  9    MR. WADE AND IT REALLY GOES TO THE -- OUR OBJECTION THERE IS

02:19PM  10   NOT REALLY ON DISCLOSURE BECAUSE I THINK FOR THOSE PATIENT --

02:20PM  11   FOR THOSE OPINIONS WHERE THE DOCTOR HAS ACTUALLY IDENTIFIED A

02:20PM  12   PATIENT, THEN WE HAVE WHAT WE NEED OR WE CAN SUBPOENA WHAT ELSE

02:20PM  13   WE NEED.

02:20PM  14        BUT WE JUST NOTE THAT -- WE WOULD JUST MAKE THE ADDITIONAL

02:20PM  15   POINT THAT FOCUSSING ON THESE INDIVIDUAL ANECDOTAL ISSUES,

02:20PM  16   DESPITE THEIR KIND OF -- DESPITE THEIR LIMITED PROBATIVE VALUE,

02:20PM  17   AND ESPECIALLY IN THE CONTEXT OF A CASE WHERE THE GOVERNMENT

02:20PM  18   DOESN'T HAVE KIND OF A SYSTEMIC DATA ANALYSIS, WE THINK IT'S

02:20PM  19   EVEN MORE PREJUDICIAL BECAUSE IT SUGGESTS TO THE JURY THAT SUCH

02:20PM  20   AN EXPERIENCE IS REPRESENTATIVE WHEN WE KNOW THAT THERE IS NO

02:20PM  21   INDICATION THAT THAT'S NECESSARILY THE CASE.

02:20PM  22             SO WITH THAT, YOUR HONOR, I THINK I WOULD --

02:20PM  23             THE COURT:  YIELD THE FLOOR?

02:20PM  24             MS. TREFZ:  YEAH, TURN IT OVER.

02:20PM  25             THE COURT:  OKAY.

02:21PM 1      MR. BOSTIC.

02:21PM 2          MR. BOSTIC:  THANK YOU, YOUR HONOR.

02:21PM 3      I MENTIONED BEFORE, BUT LET ME JUST REITERATE, THAT THESE

02:21PM 4  ARE NOT STANDARD EXPERT WITNESSES.  THEY ARE MAINLY PERCIPIENT

02:21PM 5  WITNESSES.

02:21PM 6      WE SPOKE BEFORE THE LUNCH BREAK ABOUT THE IMPORTANCE OF

02:21PM 7  PATIENT VICTIM TESTIMONY IN THIS CASE, AND SO THE COURT KNOWS

02:21PM 8  THE GOVERNMENT'S VIEWS THERE.

02:21PM 9      THE GOVERNMENT BELIEVES THAT IT'S EXTREMELY IMPORTANT TO

02:21PM 10  THE VICTIMS' RIGHTS AND TO THE TRUTH SEEKING FUNCTION OF THE

02:21PM 11  JURY THAT THEY HEAR FROM PATIENT VICTIMS WHO GOT INACCURATE

02:21PM 12  THERANOS TEST RESULTS.

02:21PM 13      THE TESTIMONY OF DOCTORS REALLY GOES HAND IN HAND WITH THE

02:21PM 14  TESTIMONY OF THOSE PATIENT VICTIMS.

02:21PM 15      A PATIENT CAN TESTIFY ABOUT THE PROMOTIONAL MATERIALS OR

02:21PM 16  THE MARKETING MATERIALS THAT THEY WERE EXPOSED TO FROM

02:22PM 17  THERANOS, ABOUT THEIR REASONS FOR CHOOSING THERANOS, ABOUT

02:22PM 18  THEIR EXPERIENCES WITH THE COMPANY, THE RESULTS THAT THEY GOT.

02:22PM 19      SO, FOR EXAMPLE, A VICTIM CAN TESTIFY THAT SHE USED

02:22PM 20  THERANOS FOR HCG, FOR A PREGNANCY TEST, AND SHE CAN TALK ABOUT

02:22PM 21  WHY SHE CHOSE THERANOS AND GIVE HER VIEWS ON WHERE ACCURACY WAS

02:22PM 22  IMPORTANT TO HER, AND SHE CAN RELAY THE RESULTS SHE RECEIVED

02:22PM 23  WHEN SHE'S ON THE STAND.

02:22PM 24      BUT HER DOCTOR IS THE ONE WHO IS IN THE BEST POSITION TO

02:22PM 25  TESTIFY REGARDING WHAT AN HCG TEST IS, HOW IS IT USED, WHY WAS

02:22PM 1    IT ORDERED IN THIS SPECIFIC PATIENT'S CASE, AND ALSO TO EXPLAIN

02:22PM 2    WHAT RESULTS MEAN, SO INCLUDING THE SIGNIFICANCE OF THE

02:22PM 3    SPECIFIC RESULTS RECEIVED BY THAT PARTICULAR PATIENT AT ISSUE.

02:22PM 4        SO FOR ALL OF THE REASONS THAT PATIENT TESTIMONY IS VITAL

02:22PM 5    TO THIS CASE, DOCTOR TESTIMONY ABOUT THOSE SAME RESULTS IS

02:22PM 6    VITAL AS A COMPLEMENT TO THAT PATIENT TESTIMONY.

02:22PM 7        WE HAVE SPOKEN ABOUT THE SCOPE OF THE ANTICIPATED DOCTOR

02:23PM 8    TESTIMONY, SO I WON'T REITERATE THAT, ALTHOUGH I'M HAPPY TO

02:23PM 9    ANSWER ANY QUESTIONS THAT THE COURT MIGHT HAVE.

02:23PM 10       AND I WILL GO THROUGH THE FOUR CATEGORIES OF OPINIONS THAT

02:23PM 11   THE DEFENSE IS STILL OBJECTING TO.

02:23PM 12       LET ME FIRST JUST HIGHLIGHT THE FACT THAT THE STANDARD FOR

02:23PM 13   ADMISSIBILITY OF EXPERT TESTIMONY IS FLEXIBLE.  THE

02:23PM 14   NINTH CIRCUIT TELLS US THAT.  THAT'S THE DECISION IN

02:23PM 15   LOPEZ MARTINEZ CITED BY BOTH PARTIES.

02:23PM 16       THE STANDARD FOR ADMISSIBILITY AND RELIABILITY

02:23PM 17   DETERMINATIONS NEEDS TO BE FLEXIBLE FOR EXPERT TESTIMONY

02:23PM 18   BECAUSE THERE ARE SO MANY DIFFERENT KINDS OF EXPERT OPINIONS

02:23PM 19   THAT COME IN IN SUCH A WIDE VARIETY OF DIFFERENT CASE TYPES.

02:23PM 20       WHEN WE SEE THE CASES, THOUGH, THAT THE DEFENSE RELIES ON

02:23PM 21   IN SEEKING TO EXCLUDE THESE OPINIONS, WE SEE PRIMARILY ONE CASE

02:23PM 22   TYPE.  WE SEE A CASE TYPE INVOLVING COMPLICATED ISSUES,

02:24PM 23   DIFFICULT AND DISPUTED EXPERT OPINIONS THAT ARE BASED ON, OR

02:24PM 24   SHOULD BE BASED ON, DETAILED ANALYSIS.  AS WITH THE PATIENT

02:24PM 25   TESTIMONY MOTION, THE DEFENSE RELIES ON A NUMBER OF CASES THAT

02:24PM   1    INVOLVE CAUSATION, A SPECIFIC ISSUE THAT IS KEY AND PIVOTAL IN

02:24PM   2    A CASE TYPE THAT THE COURT IS NOW FACED WITH.

02:24PM   3        AS BEFORE, I THINK THE DEFENSE'S AUTHORITY IS OF LIMITED

02:24PM   4    USEFULNESS HERE.

02:24PM   5        THE GOVERNMENT'S DISCLOSURE TO THE DEFENSE GOES INTO

02:24PM   6    SUBSTANTIAL DETAIL ABOUT THESE WITNESSES' OPINIONS AND THE

02:24PM   7    BASES THEREFORE.  WE ARE WORKING STILL TO BOLSTER THAT AND

02:24PM   8    PROVIDE ADDITIONAL INFORMATION.

02:24PM   9        BUT THE OPINIONS ARE WELL FOUNDED.  IT'S HIGHLIGHTED IN

02:24PM  10    THE GOVERNMENT'S BRIEFING, BUT EXPLAINED MORE FULLY IN THE

02:24PM  11    COURT'S -- OR SORRY, IN THE GOVERNMENT'S DISCLOSURE TO THE

02:25PM  12    DEFENSE THAT EACH OF THESE DOCTORS IS VERY, VERY WELL QUALIFIED

02:25PM  13    TO RENDER THE KIND OF OPINION THAT THE GOVERNMENT ANTICIPATES

02:25PM  14    THEY'LL RENDER.  EACH OF THESE DOCTORS HAS USED AND REVIEWED

02:25PM  15    RESULTS FROM THE RELEVANT ASSAYS, THOUSANDS, IF NOT TENS OF

02:25PM  16    THOUSANDS OF TIMES.  THIS IS LITERALLY WHAT THEY DO.  THIS IS

02:25PM  17    HOW THEY SPEND THEIR DAYS AS TREATING PHYSICIANS IS OBTAINING

02:25PM  18    THESE LAB RESULTS AND THEN CORRELATING THOSE LAB RESULTS TO THE

02:25PM  19    OTHER INFORMATION THAT THEY HAVE ABOUT THEIR PATIENT'S HEALTH

02:25PM  20    CONDITION, PHYSICAL PRESENTATION, COMPLAINTS OR SELF-REPORTING

02:25PM  21    FROM THE PATIENT.

02:25PM  22        AND BY VIRTUE OF THEIR FORMAL EDUCATION, THEIR TRAINING,

02:25PM  23    AND AS I JUST REFERENCED, THEIR SUBSTANTIAL EXPERIENCE WORKING

02:25PM  24    WITH THESE ASSAYS, THEY INEVITABLY BECOME EXPERTS IN EXACTLY

02:25PM  25    WHAT WE'RE ASKING THEM TO DO, TAKE AN ASSAY RESULT AND PAIR IT

02:26PM  1    TO EVERYTHING ELSE THEY KNOW ABOUT THE PATIENT AND SEE WHAT

02:26PM  2    THAT RELATIONSHIP IS.

02:26PM  3         AND IN THE CASES OF SOME THESE THERANOS TESTS, THE ANSWER

02:26PM  4    IS THERE IS NO CORRELATION.  THERE'S A MISMATCH.  THESE TWO

02:26PM  5    THINGS ARE INCOMPATIBLE.  THE THERANOS ASSAY RESULT DOES NOT

02:26PM  6    SQUARE WITH THE OTHER FACTS THAT I KNOW ABOUT MY PATIENT.  AND

02:26PM  7    WHEN THAT'S THE CASE, THEY SHOULD BE ABLE TO SIMPLY STATE THAT

02:26PM  8    FACT.

02:26PM  9         SO THAT KIND OF OPINION IS RELATIVELY SIMPLE.  IT'S NOT

02:26PM 10    BASED ON A STATISTICAL ANALYSIS AS THE DEFENSE KEEPS WANTING TO

02:26PM 11    SEE IN THIS CASE THEY CLAIM.  IT'S BASED ON THE DOCTOR'S

02:26PM 12    EDUCATION, TRAINING, AND EXPERIENCE.  IT DOESN'T NECESSITATE A

02:26PM 13    DETAILED MULTI-STEP METHODOLOGY.  THERE'S NO WAY THAT THE

02:26PM 14    DOCTOR COULD PRODUCE A 10 OR 20-PAGE REPORT EXPLAINING HOW HE

02:26PM 15    OR SHE KNOWS THIS RESULT TO BE FALSE.  IT SIMPLY IS A FACT

02:26PM 16    KNOWN TO THE DOCTOR BASED ON THEIR EXPERIENCE AND THE AMOUNT OF

02:27PM 17    EXPERIENCE THAT THEY HAVE WORKING WITH THAT SPECIFIC ASSAY.

02:27PM 18         SO IN POINTING TO OTHER EXAMPLES WHERE EXPERT OPINIONS

02:27PM 19    WERE FAR MORE COMPLEX AND REQUIRED FAR MORE DETAILED PROOF AND

02:27PM 20    A MORE RIGOROUS METHODOLOGY OR A MORE ELABORATE METHODOLOGY,

02:27PM 21    THE DEFENSE'S ARGUMENTS ESSENTIALLY PENALIZE, OR SEEK TO

02:27PM 22    PENALIZE THESE EXPERT OPINIONS FOR BEING SIMPLE.

02:27PM 23         BUT SIMPLICITY SHOULD BE A GOOD THING HERE.  COMPLEXITY IS

02:27PM 24    NOT A REQUIREMENT FOR RELIABILITY OR ADMISSIBILITY WHEN IT

02:27PM 25    COMES TO EXPERT OPINIONS.  IT'S OKAY THAT THESE OPINIONS ARE

02:27PM 1    RELATIVELY SIMPLE ONES.

02:27PM 2        AND THE GOVERNMENT CITES ADAMS VERSUS LABCORP, THAT'S AN

02:27PM 3    ELEVENTH CIRCUIT CASE WHERE THE COURT THERE SAID THAT AN

02:27PM 4    EXPERT'S METHODOLOGY CAN CONSIST OF THE APPLICATION OF MEDICAL

02:27PM 5    KNOWLEDGE, AND WHETHER THAT EXPERT'S APPROACH IS CALLED A,

02:27PM 6    QUOTE, METHODOLOGY OR SIMPLY, QUOTE, APPLICATION OF

02:27PM 7    PROFESSIONAL JUDGMENT DOES NOT MATTER AS LONG AS THERE'S AN

02:28PM 8    APPROPRIATE RELIABILITY INQUIRY.

02:28PM 9        SO HERE AGAIN THE QUALIFICATIONS OF THESE EXPERTS, THE

02:28PM 10   FACT THAT WE'RE SIMPLY ASKING THEM TO OPINE IN A WAY THAT THEY

02:28PM 11   DO LITERALLY EVERY DAY AS PART OF TREATING PATIENTS, THOSE

02:28PM 12   FACTS RENDER THEIR OPINIONS ADMISSIBLE AND RELIABLE AND THERE

02:28PM 13   SHOULD NOT BE ANY NEED TO HAVE A DAUBERT HEARING TO CONFIRM

02:28PM 14   THAT.

02:28PM 15       IMAGINE -- HERE'S A POSSIBLY HELPFUL ANALOGY.  IMAGINE

02:28PM 16   THAT THIS CASE, INSTEAD OF TURNING ON THE ACCURACY OF BLOOD

02:28PM 17   TESTS, TURNED ON THE ACCURACY OF AN ELECTRONIC SCALE.  YOU CAN

02:28PM 18   IMAGINE A FAMILY PHYSICIAN, WHO CONSTANTLY DOES HEALTH CHECKS

02:28PM 19   AND WEIGHS PEOPLE FREQUENTLY, WOULD HAVE A PRETTY GOOD SENSE OF

02:28PM 20   WHAT A PATIENT'S WEIGHT IS LIKELY TO BE, WHAT THE REALISTIC

02:28PM 21   RANGE IS GOING TO BE, AND IF A PATIENT COMES INTO THE OFFICE

02:28PM 22   ONE DAY WHO HAS WEIGHED, LET'S SAY, 180 POUNDS IN THE PAST, IF

02:29PM 23   THE DOCTOR HAS A SENSE OF THAT PATIENT'S OVERALL HEALTH, MUSCLE

02:29PM 24   TONE, HEIGHT, THAT OTHER INFORMATION, IF THAT PATIENT STEPS ON

02:29PM 25   AN ELECTRONIC SCALE AND THE SCALE READS 40 POUNDS INSTEAD OF

02:29PM 1    180, THAT DOCTOR IS IN A VERY GOOD POSITION TO SAY THIS RESULT

02:29PM 2    DOESN'T MATCH UP.  THIS SCALE CANNOT BE ACCURATE BASED ON MY

02:29PM 3    EXPERIENCE, BASED ON THE SIMPLE FACT THAT I KNOW THERE IS

02:29PM 4    SOMETHING WRONG WITH THIS RESULT.  IT CANNOT BE TRUE.

02:29PM 5        THAT'S THE EXACT SAME THING THAT IS HAPPENING HERE.  JUST

02:29PM 6    LIKE IN THAT CASE, YOU KNOW, IF THIS WERE ABOUT ELECTRONIC

02:29PM 7    SCALES, WE WOULDN'T BE ASKING THE DOCTORS TO EXPLAIN WHAT WENT

02:29PM 8    WRONG IN THE CIRCUITRY OF THE SCALE.  WE'RE NOT ASKING THEM TO

02:29PM 9    PROVIDE THAT EXPLANATION.  WE'RE NOT ASKING THEM TO MAKE

02:29PM 10   SWEEPING CONCLUSIONS ABOUT WHAT MUST BE WRONG WITH OTHER SCALES

02:29PM 11   MADE BY THAT SAME COMPANY.

02:29PM 12       BUT THEY CAN SAY, I GOT THIS RESULT, IT DOESN'T MAKE SENSE

02:29PM 13   BASED ON EVERYTHING ELSE I KNOW.

02:29PM 14       IN THAT CASE ALSO, IT'S HARD TO IMAGINE HOW THERE COULD BE

02:30PM 15   A COMPLICATED, ELABORATE MULTI-STEP METHODOLOGY UNDERLYING THAT

02:30PM 16   OPINION, BUT THAT DOESN'T MEAN IT'S NOT RELIABLE, AND THAT'S

02:30PM 17   SIMPLY THE GOVERNMENT'S POINT.

02:30PM 18       LET ME COVER THE FOUR CATEGORIES OF OPINIONS THAT THE

02:30PM 19   DEFENSE IS OBJECTING TO.

02:30PM 20       FIRST, AS TO OPINIONS BASED ON PATIENTS WHO HAVE NOT YET

02:30PM 21   BEEN IDENTIFIED, THE GOVERNMENT'S PLAN IS TO IDENTIFY THOSE

02:30PM 22   PATIENTS IF AT ALL POSSIBLE, AND SO THAT IS THE CONTINUING WORK

02:30PM 23   OF THE GOVERNMENT.  IN SOME CASES IT INVOLVES RETRIEVING LARGE

02:30PM 24   QUANTITIES OF RECORDS FROM THE DOCTOR'S OFFICE AND REVIEWING

02:30PM 25   THOSE RECORDS THOROUGHLY TO ASSIST THE DOCTOR IN IDENTIFYING

02:30PM  1   THOSE PATIENTS.

02:30PM  2        IN OTHER CASES IT INVOLVES WORKING WITH THE DOCTOR AND

02:30PM  3   SEEKING THAT INFORMATION SO THAT THE DOCTOR CAN ACTUALLY GO

02:30PM  4   THROUGH AND -- GO BACK THROUGH HIS OR HER RECORDS AND PROVIDE

02:30PM  5   THAT INFORMATION TO THE GOVERNMENT.

02:30PM  6        SO THOSE EFFORTS ARE ONGOING.

02:30PM  7        THE PLAN IS TO -- OR THE GOVERNMENT'S INTENTION IS TO HAVE

02:31PM  8   DOCTORS TESTIFY BASED ON SPECIFIC PATIENTS THAT THEY CAN

02:31PM  9   IDENTIFY FOR THE DEFENSE.

02:31PM  10        IN THE ABSENCE OF THAT, WE'LL NEED TO THINK ABOUT WHETHER

02:31PM  11   ENOUGH DETAIL CAN BE PROVIDED SEPARATE FROM THE PATIENT'S

02:31PM  12   IDENTITY THAT A SHOWING CAN STILL BE MADE FOR THAT OPINION AS

02:31PM  13   RELIABLE, BUT WE'RE NOT THERE YET.  PLAN A IS STILL TO ACTUALLY

02:31PM  14   DETERMINE AND DISCLOSE THOSE IDENTITIES.

02:31PM  15        THE NEXT CATEGORY RELATES TO OPINIONS REGARDING THE

02:31PM  16   ABSENCE OF PROBLEMS WITH OTHER LAB SERVICES.

02:31PM  17        HERE I HEAR TWO DIFFERENT THINGS FROM THE DEFENSE.  ON THE

02:31PM  18   ONE HAND I HEAR THAT THIS CASE CAN'T BE PROVEN WITHOUT A

02:31PM  19   DETERMINATION OF THERANOS'S OVERALL FAILURE RATE, AND IF THAT

02:31PM  20   OVERALL FAILURE RATE IS SIMILAR TO WHAT THE DEFENSE REPRESENTS

02:31PM  21   IS THE GENERAL FAILURE RATE IN LAB TESTING, THEN IT CAN'T BE

02:32PM  22   SAID THAT THERANOS'S TESTS WERE INACCURATE.

02:32PM  23        THE GOVERNMENT DISAGREES WITH THAT READING OF THE CASE.

02:32PM  24   THAT'S NOT HOW THIS WIRE FRAUD CASE WORKS.

02:32PM  25        BUT, ON THE OTHER HAND, THE DEFENSE IS NOW SAYING THAT THE

02:32PM   1    RELATIVE PERFORMANCE OF OTHER LABS MAKES NO DIFFERENCE TO THIS

02:32PM   2    CASE AND THAT DOCTORS SHOULDN'T BE ALLOWED TO SAY, I

02:32PM   3    EXPERIENCED THESE PROBLEMS WITH THERANOS TESTS, I NEVER

02:32PM   4    ENCOUNTERED SIMILAR PROBLEMS WITH OTHER LAB SERVICES.

02:32PM   5         BUT THOSE STATEMENTS BY DOCTORS, THOSE OPINIONS ARE

02:32PM   6    IMPORTANT BECAUSE THEY DO SHOW THE FACT, THEY TEND TO SHOW THAT

02:32PM   7    THE ACCURACY AND RELIABILITY PROBLEMS EXPERIENCE BY THERANOS

02:32PM   8    WERE UNIQUE TO THAT COMPANY.

02:32PM   9         THIS IS NOT GOING TO BE THE ONLY EVIDENCE BY A LONG SHOT

02:32PM  10    THAT SHOWS THAT.  AS I REFERENCED BEFORE, THERE WILL BE

02:32PM  11    INTERNAL EMPLOYEE COMMUNICATIONS REGARDING THERANOS SPECIFIC

02:32PM  12    ISSUES.  THERE WILL BE REGULATORY REPORTS SHOWING THE

02:32PM  13    DEFICIENCIES IN THE THERANOS LABS.

02:33PM  14         SO IT WILL BE VERY CLEAR AT THE END OF THE TRIAL THAT

02:33PM  15    THERANOS SUFFERED FROM MANY OF ITS OWN UNIQUE PROBLEMS THAT

02:33PM  16    CREATED AN INABILITY TO DELIVER RELIABLE TEST RESULTS.

02:33PM  17         BUT DOCTORS' STATEMENTS ARE CERTAINLY PART OF THAT.  WHEN

02:33PM  18    THEY OPINE THAT A SPECIFIC TEST RESULT IS INACCURATE, OR MUST

02:33PM  19    HAVE BEEN INACCURATE, I THINK IT WILL BE CLEAR THAT THESE

02:33PM  20    SITUATIONS, THESE INSTANCES MADE QUITE AN IMPACT ON THESE

02:33PM  21    DOCTORS.

02:33PM  22         IN ORDER FOR THEM TO SAY THAT A TEST RESULT MUST BE

02:33PM  23    INACCURATE, THE RESULT MUST BE SO FAR OUT OF THE RANGE OF WHAT

02:33PM  24    THEY WERE EXPECTING THAT IT'S OBVIOUS.  OTHERWISE THEY WOULDN'T

02:33PM  25    BE COMFORTABLE MAKING THAT STATEMENT.

02:33PM 1     SO WHEN THEY SAY IN TURN THAT I NEVER ENCOUNTERED ANYTHING

02:33PM 2     LIKE THIS WORKING WITH OTHER LABS FOR THE PAST 10 YEARS,

02:33PM 3     20 YEARS, HOWEVER LONG IT IS, I THINK THE COURT AND THE JURY

02:33PM 4     CAN RELY ON THAT STATEMENT OF THEIR MEMORY.

02:34PM 5     AGAIN, THAT'S NOT NECESSARILY AN OPINION.  THAT IS SIMPLY

02:34PM 6     A STATEMENT OF THEIR RECOLLECTION SAYING THAT THEY DON'T RECALL

02:34PM 7     HAVING THESE PROBLEMS WITH OTHER LABS BECAUSE THESE ISSUES

02:34PM 8     STAND OUT IN THE DOCTORS' MINDS.

02:34PM 9          THE COURT:  SO THAT WOULD BE THE REASON -- THE

02:34PM 10    TESTIMONY WOULD BE, HOW DO YOU REMEMBER THIS, AND THE ANSWER

02:34PM 11    WOULD BE, BECAUSE I'VE NEVER HAD AN ISSUE WITH A LAB BEFORE?

02:34PM 12         MR. BOSTIC:  YES, YES, YOUR HONOR.

02:34PM 13    AND IF THE FOLLOW-UP QUESTION WAS, WELL, HOW CAN YOU BE

02:34PM 14    SURE?  WOULD YOU REMEMBER THIS KIND OF ISSUE COMING UP BEFORE?

02:34PM 15    I ANTICIPATE THE RESPONSE WOULD BE:  YES, CERTAINLY.  THIS

02:34PM 16    WAS SUCH A UNIQUE AND DRAMATICALLY WRONG RESULT THAT IT'S GOING

02:34PM 17    TO STAND OUT IN MY MIND GOING FORWARD.  ANYTHING SIMILAR WOULD

02:34PM 18    HAVE SIMILARLY STOOD OUT IN MY MIND.

02:34PM 19    SO IF THE QUESTION FROM THE DEFENSE IS, HAVE THESE DOCTORS

02:34PM 20    GONE BACK AND AUDITED EACH OF THEIR 5,000, 10,000 ASSAY RESULTS

02:34PM 21    OBTAINED FROM CONVENTIONAL LABS OVER DECADES TO REACH THAT

02:35PM 22    OPINION, THE ANSWER IS NO.

02:35PM 23    BUT THEIR TESTIMONY WILL BE HONEST IN THAT THEY'RE SIMPLY

02:35PM 24    TESTIFYING THAT, TO THEIR RECOLLECTION, THEY HAVE NOT SEEN

02:35PM 25    THESE ISSUES WITH OTHER LABS BEFORE.

02:35PM 1           THE COURT:  SO IS THE QUESTION, PHRASED EQUALLY,

02:35PM 2  HAVE YOU EVER HAD A PATIENT TEST RESULT COME BACK WITH THIS

02:35PM 3  TYPE OF VARIANCE, OR WHATEVER IT IS, INACCURACY?  IS THAT THE

02:35PM 4  SAME QUESTION?

02:35PM 5          MR. BOSTIC:  I BELIEVE IT'S EQUIVALENT, YOUR HONOR.

02:35PM 6         THE COURT:  AND THEN THE QUESTION IS -- WELL, I SEE

02:35PM 7  THE ISSUE OF I'VE NEVER SEEN THIS BEFORE; AND THEN THE

02:35PM 8  QUESTIONS OF, WELL, HOW MANY LABS HAVE YOU USED?  WELL, I'VE

02:35PM 9  ONLY USED QUEST, OR WHATEVER IT IS.  AND THAT HAS SOME VALUE, I

02:35PM 10  SUPPOSE.  OR, I'VE USED 50 DIFFERENT LABS.  I SUPPOSE THAT HAS

02:35PM 11  DIFFERENT VALUE.

02:36PM 12     I WAS JUST CURIOUS IF THE ISSUE REALLY WAS, HAVE YOU EVER

02:36PM 13  HAD A PATIENT TEST WITH THIS RANGE, THIS VARIANCE THAT'S

02:36PM 14  NONBIOLOGICAL, THAT HAS NO BIOLOGICALLY SOUND EXPLANATION OR

02:36PM 15  SOMETHING LIKE THAT.

02:36PM 16         MR. BOSTIC:  THE COURT'S QUESTION IS WHETHER IT

02:36PM 17  MATTERS HOW MANY LABS THE GIVEN DOCTOR HAS PATRONIZED?

02:36PM 18         THE COURT:  WELL, I THINK SO.

02:36PM 19     WHAT I HEAR MS. TREFZ SAYING IS THAT THERE NEEDS TO BE

02:36PM 20  DAUBERTS ON ALL OF THESE THINGS, AND BEFORE YOU CAN EVEN LET

02:36PM 21  THOSE IN, JUDGE, YOU NEED TO ASK THESE TYPES OF QUESTIONS, WHAT

02:36PM 22  IS THE OPINION BASED ON?

02:36PM 23     AS OPPOSED TO JUST ASKING THEM AS NOT SO MUCH OF AN

02:36PM 24  EXPERT, I SUPPOSE, BUT JUST AS A FACT WITNESS ON THEIR PRACTICE

02:36PM 25  20 YEARS, 30 YEARS, 10 YEARS, 5 YEARS, IN ALL OF THAT, HOW MANY

02:36PM 1    TESTS HAVE YOU SENT OUT AND HAVE YOU EVER HAD TESTS THAT ARE

02:37PM 2    ANOMALIES LIKE THIS BEFORE OR RECEIVED THAT?

02:37PM 3         I DON'T KNOW.  I'M NOT TRYING TO FASHION A QUESTION.  I'M

02:37PM 4    JUST TRYING TO GET AN IDEA, IS A DAUBERT REALLY NEEDED FOR

02:37PM 5    THESE IF THERE ARE OTHER QUESTIONS THAT CAN BE POSED AND

02:37PM 6    ANSWERED WITH THE SAME QUESTION AND PROVIDE THAT INFORMATION?

02:37PM 7              MR. BOSTIC:  I DON'T BELIEVE A DAUBERT IS NECESSARY.

02:37PM 8    THE CASE LAW IS CLEAR THAT IT'S NOT REQUIRED AS AN AUTOMATIC

02:37PM 9    MATTER OF COURSE.

02:37PM 10        AND HERE I THINK, AGAIN, THE SIMPLICITY OF THE OPINIONS IS

02:37PM 11   THE KEY.  THE SIMPLICITY OF THE OPINIONS SHOULD MAKE THEM

02:37PM 12   EASIER TO DEFEND, EASIER FOR THE DEFENSE TO UNDERSTAND AND TO

02:37PM 13   PREPARE FOR.  IT MAKES IT EASIER FOR THEM TO CONFRONT THEM,

02:37PM 14   FRANKLY.

02:37PM 15        AND SO I'M NOT SURE WHAT WOULD BE ACCOMPLISHED BY A

02:37PM 16   DAUBERT HEARING.

02:37PM 17        AS TO THIS SPECIFIC CATEGORY OF STATEMENT, A DOCTOR SAYING

02:37PM 18   THAT THEY HAVEN'T ENCOUNTERED THIS KIND OF ISSUE BEFORE, I

02:37PM 19   DON'T VIEW THAT AS A SEPARATE OPINION FROM THEIR CORE OPINION

02:38PM 20   ABOUT A SPECIFIC INACCURATE THERANOS TEST RESULT.

02:38PM 21        ONCE THEY OPINE THAT GIVEN A THERANOS TEST RESULT SET OFF

02:38PM 22   ALARM BELLS, IF YOU WILL, THE NEXT QUESTION IS SIMPLY, HAS THAT

02:38PM 23   ALARM EVER GONE OFF BEFORE?  HAVE YOU EVER SEEN A SET OF

02:38PM 24   CONDITIONS THAT SIMILARLY CAUSED YOU TO REACT WITH THE

02:38PM 25   CONCLUSION THAT A TEST RESULT MUST BE SIMILARLY INACCURATE?

02:38PM   1          SO IT'S DEFINED TO THAT DOCTOR'S RECOLLECTION, TO HIS OR

02:38PM   2    HER EXPERIENCE, AND IT'S NOT AN INDEPENDENT OPINION THAT WOULD

02:38PM   3    REQUIRE A SEPARATE BASIS.

02:38PM   4          THE NEXT CATEGORY RELATES TO HYPOTHETICAL CONSEQUENCES OF

02:38PM   5    INACCURATE TEST RESULTS.  I THINK THIS IS PART AND PARCEL OF

02:38PM   6    THE CONTEXTUAL AND BACKGROUND TESTIMONY THAT THESE DOCTORS ARE

02:38PM   7    EXPECTED TO GIVE AND SHOULD BE PERMITTED TO GIVE.

02:38PM   8          WHEN A DOCTOR IS EXPLAINING WHAT AN ASSAY IS, HOW IT'S

02:39PM   9    USED, WHY IT'S IMPORTANT, I THINK IT'S CRITICAL THAT THE DOCTOR

02:39PM  10    BE ALLOWED TO EXPLAIN WHY ACCURACY IS IMPORTANT FOR A GIVEN

02:39PM  11    ASSAY, AND THAT NECESSARILY MUST INCLUDE HOW THE DOCTOR

02:39PM  12    INTERPRETS AND WOULD RESPOND TO OUT OF RANGE OR RED FLAG

02:39PM  13    RESULTS.  SO IT'S AS SIMPLE AS THAT.

02:39PM  14          WHEN A DOCTOR IS EXPLAINING HOW HE OR SHE INTERPRETS HCG

02:39PM  15    RESULTS, FOR EXAMPLE, YOU WOULD EXPECT THE DOCTOR TO SAY IF A

02:39PM  16    RESULT IS THIS FAR OUT OF RANGE IN THIS DIRECTION, I MIGHT

02:39PM  17    RESPOND IN THE FOLLOWING WAY:  IT WOULD BE A MEDICAL EMERGENCY,

02:39PM  18    THIS STEP WOULD THEN BE NECESSARY.

02:39PM  19          OF COURSE IF THE TEST RESULT WAS INACCURATE, THERE'S A

02:39PM  20    RISK THAT STEPS WOULD BE TAKEN UNNECESSARILY.  THAT DOESN'T

02:39PM  21    SEEM CONTROVERSIAL.

02:39PM  22          IT WOULD BE INTRODUCED ONLY TO PROVIDE FURTHER CONTEXT AND

02:39PM  23    BACKGROUND FOR THE JURY, AND ALSO TO SHOW THE MATERIALITY OF

02:40PM  24    ACCURACY REPRESENTATIONS IN THIS CASE.

02:40PM  25          WHEN IT COMES TO THE BUSINESS OF OFFERING CLINICAL BLOOD

02:40PM  1    TESTING, REQUIREMENTS FOR ACCURACY COME WITH THE TERRITORY AND

02:40PM  2    THE DOCTOR TESTIMONY WILL BE PART OF THE SHOWING THAT THE VALUE

02:40PM  3    OF THESE TESTS LIES IN THEIR ACCURACY.

02:40PM  4         SO WHEN THERANOS OFFERED TESTS REPRESENTING THEM TO BE

02:40PM  5    ACCURATE, BUT THEY HAD ACCURACY AND RELIABILITY PROBLEMS,

02:40PM  6    VICTIMS, PATIENT VICTIMS DIDN'T GET THE BENEFIT OF THE BARGAIN

02:40PM  7    BECAUSE IF THE ACCURACY IS MISSING, THE VALUE OF THE TEST IS

02:40PM  8    GREATLY DIMINISHED, IF NOT ELIMINATED, AND THE DOCTOR TESTIMONY

02:40PM  9    WILL EXPLAIN WHY THAT'S THE CASE FOR INDIVIDUAL ASSAYS.

02:40PM  10        AS TO PATIENT ACCOUNTS REGARDING RISKS OR IMPACTS OF

02:40PM  11   INACCURATE THERANOS RESULTS, WITH THE COURT'S PERMISSION, I'LL

02:41PM  12   DEFER TO MY COLLEAGUE WHO IS GOING TO ARGUE THAT SEPARATE

02:41PM  13   MOTION.

02:41PM  14        AND THAT BRINGS ME I THINK TO THE FOURTH CATEGORY, WHICH

02:41PM  15   IS, I THINK, JUST A REHASHING OF THE DEFENDANT'S REQUEST THAT

02:41PM  16   THE COURT EXCLUDE PATIENT TESTIMONY BASED ON INDIVIDUAL PATIENT

02:41PM  17   RESULTS.

02:41PM  18        AS WITH THAT MOTION, THE EXISTENCE OF INACCURATE THERANOS

02:41PM  19   TESTS IS RELEVANT.  THESE ARE, AGAIN, BRICKS IN THE WALL OF THE

02:41PM  20   GOVERNMENT'S CASE REGARDING THE ACCURACY AND RELIABILITY

02:41PM  21   PROBLEMS WITH THERANOS.  THEY ARE CERTAINLY NOT THE ONLY PIECES

02:41PM  22   OF EVIDENCE THAT THE GOVERNMENT WILL OFFER, BUT ONCE THE

02:41PM  23   EVIDENCE HAS ESTABLISHED -- OR BECAUSE THE EVIDENCE IS GOING TO

02:41PM  24   ESTABLISH THAT THERANOS HAD THESE REPEATED PROBLEMS ACROSS

02:41PM  25   SEVERAL OF ITS TESTS WITH ACCURACY AND RELIABILITY, THE

02:42PM  1    EXISTENCE AND RECEIPT OF THOSE BAD TEST RESULTS BY PATIENTS AND

02:42PM  2    THOSE DOCTORS BECOMES RELEVANT AND WILL BE A RELEVANT PART OF

02:42PM  3    THE PROOF AT TRIAL.

02:42PM  4              THE COURT:  OKAY.  THANK YOU VERY MUCH.

02:42PM  5         MS. TREFZ, ANYTHING IN CLOSING?

02:42PM  6              MS. TREFZ:  YOUR HONOR, I'LL BE EXTREMELY BRIEF.

02:42PM  7    THREE QUICK POINTS, YOUR HONOR.

02:42PM  8         THE FIRST IS THAT I JUST WANTED TO MAKE CLEAR THAT WE ARE

02:42PM  9    NOT SAYING THAT PAYING THERANOS CUSTOMERS AND DOCTORS CAN'T

02:42PM  10   TESTIFY AT ALL.  I WOULD JUST -- I WANT TO -- I DON'T WANT THE

02:42PM  11   MISIMPRESSION TO BE LEFT THAT WE'RE SOMEHOW MOVING TO EXCLUDE

02:42PM  12   ALL DOCTOR TESTIMONY OR ALL PAYING PATIENT TESTIMONY.  THERE

02:42PM  13   ARE THINGS THAT WE THINK THAT THEY COULD SAY.

02:42PM  14        WHAT WE'RE CHALLENGING ARE VERY SPECIFIC DISCLOSURES THAT

02:42PM  15   HAVE BEEN MADE AND VERY -- AND IN THE NEXT MOTION VERY SPECIFIC

02:43PM  16   POTENTIAL PARTS OF THEIR TESTIMONY.

02:43PM  17        SECOND, THE FACT THAT IT'S A SIMPLE OPINION DOESN'T MEAN

02:43PM  18   THAT IT CAN -- THAT IT DOESN'T NEED TO SATISFY 702.  IT STILL

02:43PM  19   NEEDS TO BE RELIABLE.

02:43PM  20        AND I JUST NOTE THAT THE IDEA THAT A DOCTOR COULD GET UP

02:43PM  21   AND SAY I'VE NEVER EXPERIENCED CLINICAL ERRORS BEFORE MAY BE

02:43PM  22   SIMPLE TESTIMONY, BUT IT'S EXTREMELY SWEEPING AND EXTREMELY

02:43PM  23   PREJUDICIAL AND OF LIMITED PROBATIVE VALUE IN THIS CASE.

02:43PM  24        WITH RESPECT TO THE HYPOTHETICAL CONSEQUENCES, LET'S TALK

02:43PM  25   ABOUT THAT NEXT SO THAT WE CAN MOVE ON.

02:43PM  1          BUT THOSE ARE THE ONLY POINTS I WANTED TO MAKE.  THANKS.

02:43PM  2                 THE COURT:  OKAY.  THANK YOU.

02:43PM  3          DO YOU HAVE 562?

02:43PM  4                 MS. TREFZ:  YES.  GIVE ME A SECOND AND I WILL BE

02:44PM  5     BACK.

02:44PM  6                 THE COURT:  IT'S ABOUT AN HOUR SINCE OUR LAST

02:44PM  7     RECESS.

02:44PM  8          SHOULD WE PRESS ON?  DOES ANYBODY NEED A BREAK?  ANYBODY

02:44PM  9     NEED A BREAK?

02:44PM  10                 MS. SAHARIA:  WE'RE OKAY, YOUR HONOR.

02:44PM  11                 THE COURT:  ALL RIGHT.  LET'S PRESS ON.  THANK YOU.

02:44PM  12                 MS. TREFZ:  ALL RIGHT.  I BELIEVE WE'RE NOW AT 562.

02:44PM  13     AM I CORRECT?

02:44PM  14                 THE COURT:  THAT'S WHAT MY NOTES SAY.

02:44PM  15                 MS. TREFZ:  SO AS WE HAVE SORT OF BEEN TALKING ABOUT

02:44PM  16     HERE, THIS MOTION ALSO DEALS WITH SOME OF THE SPECIFIC CUSTOMER

02:44PM  17     STORIES AND PATIENT STORIES, BUT IT FOCUSSES ON A VERY SPECIFIC

02:44PM  18     PART OF THEM.

02:44PM  19          AND IN PARTICULAR, IT APPEARS, BASED ON EVERYTHING THAT WE

02:44PM  20     HAVE RECEIVED, DISCLOSURES, DISCOVERY, AND PLEADINGS, THAT THE

02:45PM  21     GOVERNMENT SEEKS TO INTRODUCE AT TRIAL EVIDENCE REGARDING, ONE,

02:45PM  22     COLLATERAL EMOTIONAL EFFECTS SUFFERED BY THERANOS CUSTOMERS WHO

02:45PM  23     BELIEVE THAT THEY RECEIVED AN ERRANT RESULTS; OR, TWO,

02:45PM  24     HYPOTHETICAL POTENTIAL PHYSICAL CONSEQUENCES OF AN ERRANT TEST

02:45PM  25     THAT SIMPLY DID NOT OCCUR HERE.

02:45PM 1      AS I JUST MENTIONED A MOMENT AGO, WE'RE NOT LOOKING TO CUT

02:45PM 2  OUT ALL CUSTOMER TESTIMONY.  THIS IS NOT A MATTER OF EXCLUDING

02:45PM 3  THE VICTIMS, AS THE GOVERNMENT CALLS THEM, FROM THIS CASE.

02:45PM 4      WHAT IT IS, IT IS AIMED AT FOCUSSING ON THE ISSUE AND, IN

02:45PM 5  PARTICULAR, THE WIRE FRAUD HARM THAT IS AT ISSUE HERE.

02:45PM 6      MR. BOSTIC HAS SAID MULTIPLE TIMES THAT THIS IS NOT A

02:45PM 7  PRODUCTS LIABILITY CASE.  HE SAYS IT'S A WIRE FRAUD CASE.

02:45PM 8      THE HARM FROM A WIRE FRAUD CASE IS FINANCIAL HARM, AND IN

02:46PM 9  THIS CASE THE HARM FROM THE ALLEGED WIRE FRAUD CASE IS THE

02:46PM 10  MONEY THAT THE PATIENT PAID FOR THE TEST.

02:46PM 11      SO ADDITIONAL CONSEQUENCES, WHETHER THEY BE EMOTIONAL OR,

02:46PM 12  AS IS THE CASE IN SOME OF THE TESTIMONY, HYPOTHETICAL PHYSICAL

02:46PM 13  CONSEQUENCES THAT SOMEBODY FEARED COULD HAPPEN, IT'S NOT

02:46PM 14  RELEVANT TO THE CASE THE GOVERNMENT CHOSE TO CHARGE.

02:46PM 15      WHAT I REALLY WANTED TO FOCUS ON, YOUR HONOR, IS THE

02:46PM 16  POTENTIAL PREJUDICE THAT COMES FROM THIS EVIDENCE, AND EARLIER

02:46PM 17  TODAY MR. BOSTIC FOCUSSED ON -- HE SAID, WE'RE NOT LOOKING TO

02:46PM 18  JUST INFLAME THE JURY.  LOOK AT THE WITNESSES THAT WE HAVE

02:46PM 19  CHOSEN TO PUT ON OUR LIST.  HERE'S ONE EXAMPLE OF THIS ONE

02:46PM 20  PATIENT WHO SAYS THAT HE WASN'T REALLY WORRIED ABOUT HIS

02:46PM 21  RESULT.

02:47PM 22      BUT I THINK WE ULTIMATELY NEED ONLY READ THE INTRODUCTION

02:47PM 23  TO THE GOVERNMENT'S BRIEF IN ITS OPPOSITION TO OUR MOTION HERE

02:47PM 24  TO UNDERSTAND THE INFLAMMATORY PURPOSE OF THIS EVIDENCE.  THIS

02:47PM 25  BRIEF IS FULL OF INDIGNATION AND FURY, BUT IT'S WORTH NOTING

02:47PM 1   THAT THE GOVERNMENT IS TAKING SUBSTANTIAL LIBERTIES WITH

02:47PM 2   RESPECT TO THE EXAMPLES THAT IT PRESENTS IN THIS BRIEF.

02:47PM 3       IN PARTICULAR, THERE'S ONE POINT THAT WE WERE NOT ABLE TO

02:47PM 4   ADDRESS IN OUR REPLY BECAUSE WE ONLY RECEIVED THE DISCOVERY

02:47PM 5   AFTER THE REPLY WAS FILED IN MARCH, BUT WE RECEIVED THE

02:47PM 6   DISCOVERY AT THE END OF MARCH.

02:47PM 7       BUT I THINK IT REALLY ILLUMINATES THE PURPOSE OF THIS

02:47PM 8   EVIDENCE AND I WANT TO ENSURE THAT THE COURT IS NOT LEFT WITH

02:47PM 9   AN IMPRESSION AS TO, YOU KNOW, THERE WERE THERANOS TESTS THAT

02:47PM 10  WERE THIS CLOSE TO CAUSING SUBSTANTIAL PATIENT HARM, BUT BY THE

02:48PM 11  GRACE OF GOOD MEDICAL CARE, THEY SOMEHOW AVOIDED IT.

02:48PM 12      IN PARTICULAR, THE GOVERNMENT USES AN EXAMPLE ABOUT AN

02:48PM 13  ECTOPIC PREGNANCY, AND THIS EXAMPLE IS ON PAGE 5 OF THEIR BRIEF

02:48PM 14  STARTING AT LINE 3.  THE GOVERNMENT SAYS ANOTHER PATIENT

02:48PM 15  RECEIVED A THERANOS TEST RESULT INDICATING SHE WAS NOT

02:48PM 16  PREGNANT.  IN REALITY, SHE WAS CURRENTLY EXPERIENCING AN

02:48PM 17  ECTOPIC PREGNANCY THAT WOULD HAVE THREATENED HER LIFE HAD A

02:48PM 18  TEST FROM ANOTHER LAB NOT REVEALED ITS PRESENCE.

02:48PM 19      THAT BRIEF WAS FILED ON JANUARY 8TH, 2021.  BUT TWO MONTHS

02:48PM 20  EARLIER, THE PATIENT'S DOCTOR TOLD THE GOVERNMENT SOMETHING

02:48PM 21  VERY DIFFERENT.  WHAT THE PATIENT'S DOCTOR TOLD THE

02:48PM 22  GOVERNMENT -- THIS IS IN THE INTERVIEW MEMORANDUM WHICH I'M

02:48PM 23  HAPPY TO SUBMIT IF IT'S NECESSARY -- BUT JUST FOR THE PURPOSE

02:49PM 24  OF MOVING US ALONG HERE, IT MAKES CLEAR THAT THE DOCTOR

02:49PM 25  EXPECTED AN ECTOPIC PREGNANCY AS A RESULT OF THE THERANOS TEST

02:49PM  1    AND NOT IN SPITE OF IT AS THE GOVERNMENT SUGGESTS.

02:49PM  2         IT MAKES CLEAR THAT A THERANOS TEST INDICATED CORRECTLY

02:49PM  3    THAT THE DOCTOR'S ATTEMPT TO DISSOLVE THE ECTOPIC PREGNANCY

02:49PM  4    WITH MEDICATION WAS UNSUCCESSFUL, AND IT MAKES CLEAR THAT THE

02:49PM  5    DOCTOR IS USED TO ERRATIC HCG READINGS EARLY IN PREGNANCY,

02:49PM  6    INCLUDING FROM NONTHERANOS LABS THAT HE USES REGULARLY.

02:49PM  7         THE DOCTOR ALSO TOLD THE GOVERNMENT THAT HE THOUGHT MOST

02:49PM  8    DOCTORS WOULD HAVE ORDERED -- WOULD HAVE DONE WHAT HE DID IN

02:49PM  9    THIS CASE, WHICH WAS TO ORDER AN ADDITIONAL TEST IF HE HAD A

02:49PM  10   QUESTION.

02:49PM  11        I POINT THIS OUT, AGAIN, FOR TWO REASONS.  ONE, AS I SAID,

02:49PM  12   I WANT TO BE SURE THAT THE COURT IS NOT LEFT WITH THE

02:49PM  13   MISIMPRESSION THAT THESE RESULTS WERE VERY CLOSE TO CAUSING

02:49PM  14   SOME KIND OF DRAMATIC HARM WHEN, IN FACT, THAT IS NOT THE CASE

02:49PM  15   IN THE VERY VIGNETTE THAT THE GOVERNMENT IS POINTING TO.

02:49PM  16        BUT SECOND, THE DRAMATIC NATURE OF THE GOVERNMENT'S

02:50PM  17   DESCRIPTION, ESPECIALLY KIND OF IN THE CONTEXT OF THE REST OF

02:50PM  18   ITS OPPOSITION HERE, REALLY I THINK HIGHLIGHTS AND MAKES CLEAR

02:50PM  19   THAT THE GOVERNMENT IS SEEKING TO PLAY ON EMOTIONS RATHER THAN

02:50PM  20   PROVE, YOU KNOW, WITH RELEVANT EVIDENCE THE HARM.

02:50PM  21        THE GOVERNMENT, I THINK, IN ITS ARGUMENT SUGGESTS, WELL,

02:50PM  22   HARM IS SOMETIMES USED TO PROVE INTENT OR IT'S USED TO PROVE,

02:50PM  23   YOU KNOW, ONE OF THESE OTHER THINGS.

02:50PM  24        BUT, AGAIN, THOSE CASES ARE LIMITED TO WIRE FRAUD HARM,

02:50PM  25   AND THERE IS A WHOLE HOST OF CASES THAT WE CITED IN OUR BRIEF

02:50PM 1    AND TO WHICH I WOULD SUBMIT THAT THE GOVERNMENT REALLY HAS NO

02:50PM 2    GOOD ANSWER THAT KIND OF DRAWS THE LINE AT COLLATERAL

02:50PM 3    CONSEQUENCES.

02:50PM 4        BECAUSE THE GOVERNMENT CHOSE TO BRING A WIRE FRAUD CASE

02:50PM 5    HERE, THE WIRE FRAUD HARM IS THE FINANCIAL HARM THAT THE PAYING

02:50PM 6    PATIENT, YOU KNOW, ALLEGEDLY, YOU KNOW, INCURRED WHEN THEY PAID

02:50PM 7    FOR THEIR THERANOS TEST.  IT'S NOT THE EMOTIONS THAT THEY FELT.

02:51PM 8        AND THEN THE ADDITIONAL KIND OF JUST POINT I WANTED TO

02:51PM 9    PROVIDE CONTEXT FOR HERE IS EVEN IF PORTIONS OF THIS EVIDENCE

02:51PM 10   MIGHT BE RELEVANT TO, I'VE HEARD MATERIALITY AS AN EXAMPLE,

02:51PM 11   EVEN IF PORTIONS OF THIS EVIDENCE MIGHT BE RELEVANT TO

02:51PM 12   MATERIALITY, EVIDENCE OF A CUSTOMER'S EMOTIONAL RESPONSE AND

02:51PM 13   THESE HYPOTHETICAL CATASTROPHIC EVENTS THAT DEPEND ON, FRANKLY,

02:51PM 14   SEVERAL LEVELS OF ADDITIONAL MEDICAL PROCEDURES OR

02:51PM 15   NONINTERVENTION, I THINK THIS ISN'T THE ONLY WAY FOR THE

02:51PM 16   GOVERNMENT TO INTRODUCE EVIDENCE OF MATERIALITY AS TO THE

02:51PM 17   ALLEGED ACCURACY AND RELIABILITY REPRESENTATIONS, THE ALLEGED

02:51PM 18   MISREPRESENTATIONS.

02:51PM 19       RULE 403 JURIS PRUDENCE AND ALL OF THE WAY FROM OLD CHIEF

02:52PM 20   DOWN MAKE CLEAR THAT WHEN YOU'RE WEIGHING PROBATIVE VALUE AND

02:52PM 21   UNDUE PREJUDICE, IT'S APPROPRIATE TO CONSIDER EVIDENTIARY

02:52PM 22   ALTERNATIVES.

02:52PM 23       AND HERE I THINK THE IDEA THAT, WITH RESPECT TO THE

02:52PM 24   DOCTORS, ONE EXAMPLE AGAIN IS THE POTENTIAL HYPOTHETICAL

02:52PM 25   CONSEQUENCES OF -- FROM THE DISCLOSURE RELATED TO DR. ASIN WITH

02:52PM 1    RESPECT TO PSA -- AND THAT'S PROSTATE SPECIFIC ANTIGEN -- AND

02:52PM 2    THE DISCLOSURE THERE HAS KIND OF A PARADE OF OR A SERIES OF

02:52PM 3    UNFORTUNATE EVENTS THAT COULD POTENTIALLY LEAD TO HEMORRHAGING

02:52PM 4    AND SURGERY.

02:52PM 5        BUT IT'S CLEAR FROM THE DESCRIPTION THAT WHAT YOU'RE

02:52PM 6    TALKING ABOUT IS, OKAY, THE DOCTOR GETS A TEST IT DOESN'T THINK

02:52PM 7    IS -- OR GETS A TEST THAT IT BELIEVES REQUIRES A BIOPSY AND IT

02:52PM 8    DOES -- OR SOME OTHER DOCTOR DOES THE BIOPSY AND THE BIOPSY

02:53PM 9    GOES WRONG, SOMEHOW THAT'S NOT CAUGHT, AND THEN THERE'S

02:53PM 10   HEMORRHAGING AND SURGERY THAT IS REQUIRED.

02:53PM 11       THAT IS -- THAT IS AN EXTREME CATASTROPHIC, LIKE,

02:53PM 12   HYPOTHETICAL EXAMPLE THAT NEVER OCCURRED, OR THERE'S NO

02:53PM 13   EVIDENCE THAT IT EVER OCCURRED HERE AND IT HAS MINIMAL

02:53PM 14   PROBATIVE VALUE, BUT REALLY BRINGS WITH IT EXTREME PREJUDICE

02:53PM 15   AND SUGGESTS THAT THERE IS SOME KIND OF INTENSE DANGER THAT

02:53PM 16   SIMPLY WAS NOT PRESENT HERE.

02:53PM 17       SO THOSE ARE THE POINTS THAT I WANTED TO MAKE WITH RESPECT

02:53PM 18   TO THIS CASE.

02:53PM 19       AND THEN I GUESS -- SORRY.  FINALLY ONE POINT, AND I HEARD

02:53PM 20   THIS MENTIONED EARLIER.  JUST TO BE CLEAR, WE'RE NOT -- WHEN

02:53PM 21   WE'RE MOVING TO EXCLUDE THESE EMOTIONAL HARMS, WE MEAN NO

02:53PM 22   DISRESPECT TO CUSTOMERS THAT -- WHO SAY THAT THEY WERE UPSET OR

02:53PM 23   WORRIED AS A RESULT OF A TEST RESULT.

02:54PM 24       IT'S SIMPLY THAT THOSE FEELINGS AREN'T RELEVANT TO THE

02:54PM 25   CASE THAT THE GOVERNMENT CHOSE TO CHARGE, AND MS. HOLMES IS

02:54PM 1    ENTITLED TO BE TRIED ON EVIDENCE RELEVANT TO AND NOT UNDULY

02:54PM 2    PREJUDICIAL TO THE CASE THAT THE GOVERNMENT CHOSE TO CHARGE,

02:54PM 3    WHICH IS WIRE FRAUD.

02:54PM 4         SO WITH THAT I'LL YIELD THE FLOOR.

02:54PM 5              THE COURT:  THANK YOU.

02:54PM 6         MR. SCHENK, YOU'RE SPEAKING TO THIS?

02:54PM 7              MR. SCHENK:  YES.

02:54PM 8              THE COURT:  AND I HOPE YOU WERE -- I WAS GOING TO

02:54PM 9    USE THE WORD BENEFITTED -- BUT AT LEAST INFORMED OF THE COURT'S

02:54PM 10   INITIAL VIEW OF THIS.  AND I'M HAPPY TO HEAR FROM YOU.

02:54PM 11             MR. SCHENK:  YES.  YES, THANK YOU.  I APPRECIATE THE

02:54PM 12   COURT'S INITIAL INTRODUCTORY COMMENTS.

02:54PM 13        OFFERING BLOOD TESTS WHEN YOU KNOW THEY'RE INACCURATE IS

02:54PM 14   AN EXTREMELY RISKY THING TO DO TO THE PUBLIC.  THAT'S WHAT THE

02:54PM 15   EVIDENCE WILL SHOW OCCURRED IN THIS CASE.

02:54PM 16        THERE IS NO INTRINSIC VALUE TO A BLOOD TEST.  NO PERSON

02:54PM 17   GOES TO GET A BLOOD TEST WITHOUT EXPECTING TO USE THE RESULTS.

02:55PM 18        AND WHEN I SAY "USE," I MEAN THE MATERIALITY OF IT, THE

02:55PM 19   BENEFIT OF THE BARGAIN.

02:55PM 20        AND IT IS FOR THAT REASON THAT THERE ARE REALLY THREE

02:55PM 21   BASES THAT I THINK THE COURT SHOULD ADMIT AT LEAST SOME PORTION

02:55PM 22   OF THIS EVIDENCE.

02:55PM 23        I ACKNOWLEDGE, AND I WANT TO START BY SAYING AT SOME POINT

02:55PM 24   THERE IS SIGNIFICANT DIMINISHING RETURNS TO HOW LONG YOU ALLOW

02:55PM 25   A PATIENT TO TELL THE STORY OF THEIR WORRIES AND THEIR FEARS

02:55PM 1    AND THE WHAT ELSE.  I ACKNOWLEDGE THAT.  AT SOME 403 STEPS IN

02:55PM 2    AND THE TESTIMONY SHOULD NOT CONTINUE.

02:55PM 3         BUT IT DOESN'T MEAN THAT YOU DON'T BEGIN DOWN THE ROAD,

02:55PM 4    AND THE REASON YOU BEGIN DOWN THE ROAD IS FOR THREE THINGS.

02:55PM 5         NOW, THE FIRST IS THAT THE GOVERNMENT HAS THE RIGHT TO

02:55PM 6    PROVE THAT THE PATIENTS DID NOT RECEIVE THE BENEFIT OF THE

02:55PM 7    BARGAIN.  IN OTHER WORDS, THEY WENT INTO AN EXCHANGE WITH

02:55PM 8    THERANOS EXPECTING TO GET A BLOOD TEST THAT THEY COULD THEN

02:55PM 9    MAKE OR GIVE TO A DOCTOR TO MAKE MEDICAL DECISIONS BASED UPON.

02:56PM 10        AND WHEN A PATIENT TAKES THE STAND AND TELLS THE STORY OF

02:56PM 11   WHAT RESULT THEY GOT AND THEN WHAT THEY DID WITH THAT RESULT,

02:56PM 12   TOOK IT TO THEIR DOCTOR AND THEN WENT AND GOT A SECOND TEST,

02:56PM 13   AND THE SECOND TEST SAID SOMETHING DIFFERENT AND THEY ENDED UP

02:56PM 14   FOLLOWING THE MEDICAL ADVICE WITH THE SECOND AND NOT THE FIRST

02:56PM 15   TEST, THAT IS HELPFUL BACKGROUND TO EXPLAIN WHY THE PATIENT

02:56PM 16   DIDN'T GET THE BENEFIT OF THE BARGAIN, WHY THEY FELT THAT WHAT

02:56PM 17   THEY EXPECTED TO GET WAS DIFFERENT FROM WHAT THEY ACTUALLY GOT.

02:56PM 18        THE SECOND BASIS IS MATERIALITY.  AGAIN, THE FACT THAT A

02:56PM 19   PATIENT EXPECTED TO GET A BLOOD TEST AND THEN EXPECTED TO MAKE

02:56PM 20   MEDICAL DECISIONS BASED UPON THAT BLOOD TEST IS RELEVANT.

02:56PM 21        I'LL NOTE AGAIN THERE'S NO INTRINSIC VALUE TO A BLOOD

02:56PM 22   TEST.  IT REALLY LIVES AND DIES BASED ON THE MEDICAL DECISIONS

02:56PM 23   THAT YOU MAKE BASED UPON THOSE RESULTS.

02:56PM 24        A PATIENT SHOULD BE ALLOWED TO TAKE THE STAND AND TELL THE

02:56PM 25   COURT, I GOT A TEST, THE TEST SAID X, AND THEN I DID Y IN

02:56PM  1     RESPONSE TO IT.

02:56PM  2          AND IF Y IS, I WENT TO MY DOCTOR, I GOT A SECOND TEST OR A

02:57PM  3     THIRD TEST, AND HERE'S WHAT THOSE TESTS REVEALED AND HERE ARE

02:57PM  4     THE DECISIONS THAT I MADE BASED UPON THAT, THAT AGAIN IS

02:57PM  5     HELPFUL MATERIALITY EVIDENCE BECAUSE IT DOES SUGGEST THAT THE

02:57PM  6     STATEMENTS THAT THERANOS WAS MAKING TO THESE PATIENTS LED THEM

02:57PM  7     TO ENGAGE IN THIS TRANSACTION OF THINGS, LED THEM TO BUY THE

02:57PM  8     BLOOD TEST AND THEN TO RELY UPON THE RESULTS THAT THE BLOOD

02:57PM  9     TEST PROVIDED.

02:57PM  10         AND THEN I'LL NOTE FOR THE COURT THE THIRD BASIS IS THE

02:57PM  11    DEFENDANT'S FRAUDULENT INTENT.  WHEN MS. HOLMES KNOWS -- AND

02:57PM  12    THERE ARE EMAILS AND SOME WERE REFERENCED IN THE FILING -- THAT

02:57PM  13    CERTAIN TESTS WERE UNLIKELY TO PRODUCE ACCURATE RESULTS, THAT

02:57PM  14    THERE WERE PROBLEMS AT THERANOS WITH GENERATING ACCURATE

02:57PM  15    RESULTS OF CERTAIN TESTS AND CONTINUES TO OFFER THE TESTS, AND

02:57PM  16    PATIENTS ARE GETTING THESE INACCURATE RESULTS, IT SPEAKS TO

02:57PM  17    INTENT.  IT IS RELEVANT TO INTENT.

02:57PM  18         IN OTHER WORDS, YOU INTEND THOSE OUTCOMES IF YOU'RE AWARE

02:57PM  19    THAT THEY'RE LIKELY TO OCCUR.  IF A PATIENT GETTING AN

02:58PM  20    INACCURATE RESULT, IF A PATIENT GETTING RESULT X FROM THERANOS

02:58PM  21    AND THEN GOING AND GETTING CONFIRMATORY TESTS FROM OTHER LABS

02:58PM  22    THAT SUGGEST SOMETHING DIFFERENT, AND THAT OUTCOME IS EXPECTED

02:58PM  23    BY MS. HOLMES, SHE'S NOT SURPRISED BY IT BECAUSE THERE'S

02:58PM  24    INTERNAL EMAILS SUGGESTING HER KNOWLEDGE OF ACCURACY AND

02:58PM  25    RELIABILITY PROBLEMS, SHE'S INTENDING THAT OUTCOME TO OCCUR.

02:58PM 1        AND THERE'S A LINE OF CASES THAT TALK ABOUT VICTIMS BEING

02:58PM 2    VICTIMIZED IS EVIDENCE OF INTENT AND THAT THE OUTCOME THAT

02:58PM 3    OCCURS CAN SPEAK TO THE INTENT OF THE PERPETRATOR OF THE

02:58PM 4    OFFENSE.

02:58PM 5        I'LL NOTE FOR THE COURT TWO FINAL POINTS.  THE FIRST IS

02:58PM 6    EARLIER WHEN WE WERE DISCUSSING ANECDOTAL TEST RESULTS, AND THE

02:58PM 7    COURT NOTED THAT IT HAD SOME OVERLAP, HERE THERE IS CONCERN

02:59PM 8    ABOUT PATIENTS TESTIFYING BECAUSE THEY -- THERE'S A LACK OF

02:59PM 9    CAUSATION, THE PATIENTS ARE TALKING ABOUT THEIR BAD TEST

02:59PM 10   RESULTS, BUT THEY'RE NOT NECESSARILY EXPLAINING THAT THERANOS

02:59PM 11   WAS THE CAUSE OF THE BAD TEST RESULTS AS OPPOSED TO SITTING ON

02:59PM 12   THE TARMAC IN 100-DEGREE WEATHER.

02:59PM 13       WE DON'T USE THAT SAME STANDARD IN A PONZI SCHEME, FOR

02:59PM 14   INSTANCE.  IF A VICTIM IN A PONZI SCHEME TESTIFIES, HERE'S WHAT

02:59PM 15   THE DEFENDANT TOLD ME, AND BECAUSE OF THAT, I GAVE THE

02:59PM 16   DEFENDANT MY MONEY, WE DON'T EXPECT THE VICTIM TO KNOW THAT THE

02:59PM 17   DEFENDANT SPENT HER MONEY PAYING OFF NEW INVESTORS OR HAD IN

02:59PM 18   HER POCKETS OR BUYING MANSIONS.  WE DON'T EXPECT THAT KNOWLEDGE

02:59PM 19   FROM THE VICTIM.

02:59PM 20       THE VICTIM IS ALLOWED TO TAKE THE STAND AND EXPLAIN THEIR

02:59PM 21   RELATIONSHIP WITH THE DEFENDANT, WHAT CAUSED THEM TO INVEST, OR

02:59PM 22   TO BUY THE TEST, AND THE EFFECT OF THAT PURCHASE.

02:59PM 23       AND I THINK THE SAME ANALYSIS APPLIES HERE AND THE COURT

02:59PM 24   SHOULD ALLOW AT LEAST SOME MEASURE OF THE PATIENT'S TESTIMONY

02:59PM 25   TO THAT END.

02:59PM  1          AND ONE CASE THAT I THINK WAS HELPFUL, AND IT WAS CITED BY

03:00PM  2    THE DEFENSE HERE, IS THE PACIFIC GAS AND ELECTRIC COMPANY CASE

03:00PM  3    THAT WAS TRIED BEFORE JUDGE HENDERSON IN THIS DISTRICT.

03:00PM  4          IN THAT CASE THE DEFENSE ARGUED, JUDGE, THIS CASE IS ABOUT

03:00PM  5    PIPELINE SAFETY ACT VIOLATIONS AND OBSTRUCTION OF JUSTICE.  YOU

03:00PM  6    SHOULD PROHIBIT THE GOVERNMENT FROM MENTIONING THE SAN BRUNO

03:00PM  7    EXPLOSION OR ITS DEADLY CONSEQUENCES.  IT'S NOT RELEVANT.

03:00PM  8          AND JUDGE HENDERSON'S RULING WAS, NO, I DISAGREE.  IT IS

03:00PM  9    OKAY FOR THE JURY TO HEAR ABOUT THE EXPLOSION, AND HE

03:00PM  10   SPECIFICALLY RULED THAT THE WORD "DEADLY" WAS ADMISSIBLE IN THE

03:00PM  11   TRIAL.

03:00PM  12         HE DREW LINES THAT THE NUMBER OF DEATHS -- EIGHT PEOPLE

03:00PM  13   DIED DURING THE EXPLOSION, AND JUDGE HENDERSON SAID THAT'S TOO

03:00PM  14   FAR, AND THERE WERE LINES THAT HE DREW AROUND HOW MUCH OF THE

03:00PM  15   EXPLOSION WAS ALLOWED TO COME IN.

03:00PM  16         BUT HE DIDN'T ADOPT THE POSITION THAT THE DEFENSE IS

03:00PM  17   URGING THE COURT IN THIS INSTANCE AND THAT IS TO PROHIBIT ALL

03:00PM  18   DISCUSSION OF THE CONSEQUENCE OF THE ACTIONS OF THE TESTS.

03:01PM  19   THERE IS SOME ROOM FOR IT, AND I THINK WHAT THE COURT SHOULD DO

03:01PM  20   IS CRAFT THAT LINE, IS THE VICTIMS SHOULD BE ALLOWED TO TAKE

03:01PM  21   THE STAND AND TELL THE INITIAL CONSEQUENCES OF IT, WHEN THEY

03:01PM  22   RECEIVED THE TEST, WHAT THEY DID WITH THAT INFORMATION, AND

03:01PM  23   WHAT FUTURE DECISIONS THEY MADE BASED UPON THAT RESULT, FOR

03:01PM  24   INSTANCE, THE SECOND TESTS, THE RESULT OF THAT TEST, AND THEIR

03:01PM  25   EXPERIENCE.

03:01PM 1     I THINK THAT IS THE PLACE THAT IT WOULD BE APPROPRIATE TO

03:01PM 2     DRAW THE LINE IN THIS INSTANCE, AND IT IS CONSISTENT WITH

03:01PM 3     JUDGE HENDERSON'S RULING IN PG&E.

03:01PM 4          THE COURT:  THANK YOU.  LET ME ASK, FIRST OF ALL,

03:01PM 5     WERE YOU INVOLVED IN THAT TRIAL, MR. SCHENK?

03:01PM 6          MR. SCHENK:  I WAS, YOUR HONOR.

03:01PM 7          THE COURT:  YES, I THOUGHT SO.

03:01PM 8     BUT THE QUESTION I HAVE -- I DON'T QUARREL WITH AND I

03:01PM 9     DON'T PART COMPANY WITH THE CONCEPT THAT THE WITNESS COULD

03:01PM 10    TESTIFY THAT THEY TOOK THE TEST; THE RESULTS, FOR WHATEVER

03:01PM 11    REASON, WERE SUSPICIOUS TO THEM; THEY TOOK A SECOND TEST AND

03:01PM 12    RECEIVED MEDICAL ADVICE AND THAT; AND THEN WE THINK WENT AND

03:02PM 13    DID SOMETHING ELSE.  THAT'S WHERE WE MIGHT GET A LITTLE --

03:02PM 14    THAT'S WHERE I HAVE SOME ISSUE ABOUT THAT.

03:02PM 15    MORE IMPORTANTLY, I THINK THE TESTIMONY, THE POTENTIAL

03:02PM 16    TESTIMONY THAT I WAS CALLING OUT IS THE ECTOPIC PREGNANCY, FOR

03:02PM 17    EXAMPLE, AND THE WITNESS THEN TESTIFYING ABOUT THE ANGUISH, THE

03:02PM 18    PAIN, THE WORRY, ALL OF THAT, AND I COULDN'T SLEEP FOR DAYS, I

03:02PM 19    WAS WORRIED ABOUT X.

03:02PM 20    THE OTHER PATIENT WHO MAY HAVE RECEIVED A TEST THAT

03:02PM 21    SUGGESTED A MEDICAL CONDITION, BUT THEN UPON SUBSEQUENT

03:02PM 22    TESTING, SEEING MY PHYSICIAN, I GOT A DIFFERENT RESULT AND I

03:02PM 23    DID Y.  I TOOK THIS MEDICATION.

03:02PM 24    BUT THEN GOING IN AND SAYING, I COULDN'T SLEEP FOR WEEKS,

03:02PM 25    I HAD TO CHANGE MY WILL BECAUSE I THOUGHT DEATH WAS IMMINENT,

03:02PM  1    ET CETERA, ET CETERA, THAT'S PROBABLY TOO FAR AND I DON'T THINK

03:02PM  2    YOU'RE ADVOCATING FOR THAT.

03:02PM  3              MR. SCHENK:  CORRECT, YOUR HONOR.

03:03PM  4        IF I CAN REPEAT BACK WHAT THE COURT SAID?  I THINK IF A

03:03PM  5    PATIENT WERE TO TAKE THE STAND AND SAY, TO USE THE COURT'S

03:03PM  6    EXAMPLE, I RECEIVED A THERANOS TEST AND I THOUGHT I HAD CANCER,

03:03PM  7    OR I THOUGHT I HAD A SEVERE CONDITION, AND ONE THING I DID IN

03:03PM  8    RESPONSE TO IT WAS TO GO GET OTHER TESTS, AND AFTER I RECEIVED

03:03PM  9    A SECOND TEST AND THEN CONSULTED WITH MY PHYSICIAN, I

03:03PM  10   DETERMINED, OR MY PHYSICIAN TOLD ME I DIDN'T HAVE CANCER.

03:03PM  11       I THINK THAT'S APPROPRIATE AND THE COURT COULD LIMIT IT

03:03PM  12   THERE.

03:03PM  13       I AGREE WITH THE COURT, THERE IS NOT THE NEED THEN FOR THE

03:03PM  14   PATIENT TO SAY, THERE WAS TWO WEEKS BETWEEN THOSE TWO TESTS AND

03:03PM  15   HERE'S HOW I FELT DURING THOSE TWO WEEKS.

03:03PM  16       IF THE COURT SAID THAT'S 403 AND THAT'S TOO FAR, WE

03:03PM  17   RESPECT THE RULING.

03:03PM  18       THE AMOUNT OF TIME I THINK MIGHT BE RELEVANT AND THE

03:03PM  19   PATIENT SHOULD BE ALLOWED TO EXPLAIN THAT BECAUSE THAT'S PART

03:03PM  20   OF THE STORY, BUT THE FEELINGS THAT THE PATIENT HAD DURING THAT

03:03PM  21   INTERVENING TWO WEEKS IS AN APPROPRIATE PLACE FOR THE COURT TO

03:03PM  22   DRAW THE LINE.

03:03PM  23              THE COURT:  MS. TREFZ, DO YOU WANT TO COME TO THE

03:04PM  24   LECTERN.

03:04PM  25       SO THE TRAIL, IF YOU WILL, OF TESTING IS WHAT I THINK --

03:04PM  1    I'LL CALL IT THAT -- THE TRAIL OF TESTING, A TEST THAT WAS

03:04PM  2    EITHER SUSPECTED TO BE INCORRECT OR CAUSED A PATIENT TO BE

03:04PM  3    RETESTED AT A DIFFERENT SOURCE, DO YOU HAVE PROBLEMS WITH THAT?

03:04PM  4         MS. TREFZ:  YOUR HONOR, WE HAVE A GENERAL RELEVANCE

03:04PM  5    OBJECTION BASED ON THE ANECDOTAL REST RESULTS ISSUE.

03:04PM  6         BUT TO THE EXTENT THAT THIS MOTION IS PRIMARILY KIND OF

03:04PM  7    SEPARATELY AIMED AT THE 403 AND IN THE EXTREME KIND OF --

03:04PM  8         THE COURT:  THIS IS REGARDING EMOTIONAL REACTION.

03:04PM  9         MS. TREFZ:  RIGHT, EXACTLY.  I THINK THAT IS

03:04PM  10   POTENTIALLY A FAIR LINE TO DRAW.

03:04PM  11        I THINK PART OF IT DEPENDS ON WHETHER THAT LINE IS

03:04PM  12   ACTUALLY OBSERVED AS YOU'RE -- AS THE TESTIMONY IS BEING

03:05PM  13   ELICITED.

03:05PM  14        YOU KNOW, THEY'RE ASKING SOMEBODY WHAT THEY DID NEXT

03:05PM  15   VERSUS --

03:05PM  16        THE COURT:  LET ME STOP YOU THERE.

03:05PM  17        MR. SCHENK, IF THE COURT MAKES A RULING, ARE YOU INCLINED

03:05PM  18   TO FOLLOW THE RULING?

03:05PM  19        MR. SCHENK:  YES.

03:05PM  20        THE COURT:  ALL RIGHT.  I THINK THAT ANSWERS THE

03:05PM  21   QUESTION PERHAPS.

03:05PM  22        MS. TREFZ:  WELL, IT'S EASY TO SAY IN THE ABSTRACT,

03:05PM  23   AND SOMETIMES WHEN YOU'RE IN THE MOMENT IT CAN BE -- WE CAN GET

03:05PM  24   FAR AFIELD KIND OF QUICK.

03:05PM  25        THE COURT:  WELL, LET ME SAY, IN THE THICK OF TRIAL,

03:05PM 1   I KNOW THAT THINGS COME UP AND PEOPLE SAY THINGS THAT THEY

03:05PM 2   REGRET OR SAY THINGS UNINTENTIONALLY.  WE ALL UNDERSTAND THAT.

03:05PM 3        BUT WE'RE TALKING ABOUT INTENTIONALLY ASKING A QUESTION

03:05PM 4   THAT THEY KNOW IS NOT GOING TO BE PERMITTED.  THAT'S WHY I

03:05PM 5   WANTED TO GO THROUGH THIS COLLOQUY HERE, AND I COULD SEE -- I

03:05PM 6   CALL IT THE TRAIL OF TESTING -- JUST IF SOMEBODY GOT A TEST AND

03:05PM 7   THEY GOT A SECOND TEST, A SECOND OPINION -- AND I THINK THAT'S

03:05PM 8   VERY COMMON IN THE MEDICAL INDUSTRY -- AND THEN THEY GOT THE

03:06PM 9   SECOND TEST AND CONSULTED WITH A PHYSICIAN, EITHER THE SAME OR

03:06PM 10  A SECOND, AND THEN THEY DID X.

03:06PM 11       WITHOUT TESTIFYING ABOUT ANY JOY, FEAR, HAPPINESS, ANY

03:06PM 12  EMOTION THAT OCCURRED, BECAUSE THAT'S NOT THE REASON FOR THE

03:06PM 13  TESTIMONY.  IT'S IRRELEVANT WHAT THE EMOTION OF THE PATIENT

03:06PM 14  WAS.  WHAT'S RELEVANT IS WHAT THEY DID AND ANY SUBSEQUENT

03:06PM 15  CONDUCT TO THE INITIAL TEST.  THAT'S THE RELEVANCE, I THINK.

03:06PM 16            MR. SCHENK:  YES, YOUR HONOR.

03:06PM 17            MS. TREFZ:  YES, I THINK THAT IS A REASONABLE PLACE

03:06PM 18  TO LAND, YOUR HONOR.

03:06PM 19            THE COURT:  OKAY.  I THINK WE FINISHED WITH 562.

03:06PM 20  GREAT.

03:06PM 21            MR. SCHENK:  THANK YOU VERY MUCH.

03:06PM 22            THE COURT:  THANK YOU.  SHOULD WE TAKE 10 MINUTES?

03:06PM 23            MS. SAHARIA:  SURE, YOUR HONOR.

03:06PM 24            THE COURT:  LET'S DO THAT NOW.  WE'LL TAKE A

03:06PM 25  10-MINUTE BREAK.  THANK YOU.

03:06PM 1          (RECESS FROM 3:06 P.M. UNTIL 3:21 P.M.)

03:21PM 2              THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

03:21PM 3      PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:21PM 4          WE HAVE TWO MOTIONS IN LIMINE REMAINING THIS AFTERNOON.

03:22PM 5      WE'LL SEE HOW WE DO.  I TOLD YOU I WOULD LIKE TO FINISH AT

03:22PM 6      4:00.  THAT, CANDIDLY, IS FOR CONVENIENCE OF THE PARTIES IF

03:22PM 7      NOTHING ELSE.

03:22PM 8          LET ME -- WHAT I'D LIKE TO DO IS TO CALL A MATTER OUT OF

03:22PM 9      ORDER, THOUGH.  I THINK WE CAN DISCUSS DOCKET 570, AND THIS IS

03:22PM 10     MS. HOLMES'S MOTION TO EXCLUDE CUSTOMER SERVICE SPREADSHEETS

03:22PM 11     THAT REFLECT CUSTOMARY FEEDBACK.

03:22PM 12         AND I THINK, WHEN I LOOK AT THE TWO REMAINING, 569 AND

03:22PM 13     570, MY SENSE IS THIS ONE, I THINK, SHOULD NOT REQUIRE A LOT OF

03:22PM 14     DISCUSSION, AND SO I THOUGHT WE COULD TAKE THIS ONE UP NOW AND

03:22PM 15     WHATEVER TIME WE HAVE LEFT WE CAN TALK ABOUT 569.

03:22PM 16         LET ME JUST STATE AN OBSERVATION, THAT THIS IS A MOTION --

03:23PM 17     JUST LOOKING AT THE PLEADINGS, THE COURT MAY DEFER RULING ON

03:23PM 18     THIS SUBJECT TO THE GOVERNMENT LAYING A FOUNDATION, OR BEING

03:23PM 19     ABLE TO LAY A FOUNDATION FOR SOME OF THE INFORMATION IN REGARDS

03:23PM 20     TO THE SPREADSHEETS -- THAT'S JUST A HIGH LEVEL OBSERVATION

03:23PM 21     THAT I HAVE FROM THE PLEADINGS -- AND IN REGARDS TO

03:23PM 22     AUTHENTICATION AND THOSE ISSUES.

03:23PM 23         SO IT MIGHT BE SOMEWHAT -- I THINK THE DEFENSE SAYS IT'S A

03:23PM 24     LITTLE PREMATURE HERE.

03:23PM 25         BUT THAT'S MY INITIAL REVIEW OF THIS, BUT I'M HAPPY TO

03:23PM 1      HEAR FROM THE PARTIES.

03:23PM 2           IS THIS YOUR MOTION, MS. SAHARIA?

03:23PM 3             MS. SAHARIA:  IT'S NOT MY MOTION.  I'D LIKE TO

03:23PM 4      INTRODUCE THE COURT TO OUR COLLEAGUE, J.R. FLEURMONT.  HE'S

03:23PM 5      GOING TO ADDRESS THE REMAINING TWO MOTIONS.

03:23PM 6             THE COURT:  OH, LOVELY.  THANK YOU.

03:23PM 7        GOOD AFTERNOON.

03:23PM 8             MR. FLEURMONT:  GOOD AFTERNOON.

03:23PM 9             THE COURT:  WELCOME TO SAN JOSE.

03:24PM 10            MR. FLEURMONT:  THANK YOU.  I'M HAPPY TO BE HERE.

03:24PM 11            THE COURT:  SO I'D LIKE TO TAKE 570 FIRST, AND YOU

03:24PM 12     HEARD MY PRELIMINARY OBSERVATION ABOUT THIS.  MAYBE THAT HELPS

03:24PM 13     YOU WITH YOUR ARGUMENT.  I DON'T MEAN TO -- YOU'RE GOING TO BE

03:24PM 14     SPEAKING THROUGHOUT THE WEEK, I EXPECT, ON OTHER MOTIONS.

03:24PM 15            MR. FLEURMONT:  THAT'S CORRECT.

03:24PM 16            THE COURT:  RIGHT.  SO I DON'T MEAN TO SUGGEST THAT

03:24PM 17     I'M TRYING TO CUT YOU OFF, BUT I THINK YOU HAVE A HEADS UP

03:24PM 18     ABOUT WHAT I'M THINKING ABOUT HERE.

03:24PM 19            MR. FLEURMONT:  YES, YOUR HONOR.

03:24PM 20       YOUR HONOR IS EXACTLY RIGHT.  THE COURT'S OBSERVATIONS

03:24PM 21     ECHO THE CONCERNS THAT WE HAVE ABOUT THIS PARTICULAR PIECE OF

03:24PM 22     EVIDENCE.

03:24PM 23       TO PUT IT BRIEFLY, THE GOVERNMENT HAS FAILED TO LINK THESE

03:24PM 24     SPREADSHEETS TO ANY KNOWLEDGE THAT MS. HOLMES EVER KNEW ABOUT

03:24PM 25     THEM.  THE GOVERNMENT HAS FAILED TO LAY A FOUNDATION AS TO THE

03:24PM 1    AUTHENTICATION OF THESE SPREADSHEETS.  EVEN THE EXHIBITS THAT

03:24PM 2    THE GOVERNMENT CITES SHOWS THAT THERE'S ISSUES WITH THE CONTENT

03:24PM 3    OF THE SPREADSHEETS AND ISSUES WITH HOW THEY'RE FORMED, AND NOT

03:24PM 4    TO MENTION ALL OF THE HEARSAY ISSUES, THE HEARSAY ISSUES ABOUT

03:24PM 5    THE SPREADSHEETS THEMSELVES AND THE CONTENTS WITHIN THE

03:25PM 6    SPREADSHEETS.

03:25PM 7            THE COURT:  OKAY.  WELL, LET'S -- WHO STANDS FOR THE

03:25PM 8    GOVERNMENT?

03:25PM 9        MR. BOSTIC.  THANK YOU.

03:25PM 10           MR. BOSTIC:  YES, YOUR HONOR.  GOOD AFTERNOON.

03:25PM 11           THE COURT:  AND YOU HEARD MY INITIAL OBSERVATIONS.

03:25PM 12   I HOPE THAT'S HELPFUL TO YOU.

03:25PM 13           MR. BOSTIC:  I DID, YOUR HONOR.

03:25PM 14       I THINK IT MAKES SENSE TO AVOID CERTAINLY A BLANKET RULING

03:25PM 15   AT THIS TIME AND APPROACH EXHIBITS OR PORTIONS OF EXHIBITS ON A

03:25PM 16   CASE-BY-CASE BASIS.

03:25PM 17       THE GOVERNMENT CERTAINLY INTENDS TO LAY AN APPROPRIATE AND

03:25PM 18   SUFFICIENT FOUNDATION FOR ANY OF THESE EXHIBITS THAT IT INTENDS

03:25PM 19   TO INTRODUCE AT TRIAL.

03:25PM 20       I THINK IT'S QUITE CLEAR FROM THE CASE LAW CITED BY THE

03:25PM 21   GOVERNMENT THAT THIS KIND OF EVIDENCE CAN OVERCOME A HEARSAY

03:25PM 22   OBJECTION.  I THINK THE NINTH CIRCUIT HAS RULED ON THAT

03:25PM 23   CONCLUSIVELY.

03:25PM 24       AND IN THIS CASE SPECIFICALLY, EVEN WHERE THERE IS NO

03:25PM 25   EVIDENCE OF THIS DEFENDANT HAVING A COMPLETE COMPLAINT LOG ON

03:25PM 1    HER DESK AT SOME POINT, THERE IS MUCH EVIDENCE IN THE RECORD

03:26PM 2    SHOWING THAT SHE WAS GENERALLY KEPT APPRISED OF THESE

03:26PM 3    COMPLAINTS AS THEY CAME INTO THE COMPANY.

03:26PM 4        THERE IS EVIDENCE IN MULTIPLE FORMS SHOWING THAT THE

03:26PM 5    DEFENDANT HAD NUMEROUS CONVERSATIONS WITH OTHERS AT THERANOS,

03:26PM 6    THAT INDIVIDUAL PATIENT COMPLAINTS WERE REPORTED UP THE CHAIN

03:26PM 7    TO BOTH DEFENDANTS IN THIS CASE AND THOSE IN THEIR IMMEDIATE

03:26PM 8    ORBIT, AND ON THAT BASIS IT'S CERTAINLY EASY TO CONCLUDE THAT

03:26PM 9    THE CUSTOMER COMPLAINTS THEMSELVES, THEIR EXISTENCE IS THE

03:26PM 10   FOUNDATION FOR THAT OTHER EVIDENCE AND THAT THEIR EXISTENCE

03:26PM 11   TENDS TO SHOW HOLMES'S KNOWLEDGE OF THE COMPLAINTS THAT

03:26PM 12   THERANOS RECEIVED.

03:26PM 13       THE COURT:  WELL, TO YOUR POINT ABOUT THE COURT

03:26PM 14   SHOULD NOT ISSUE, IN YOUR OPINION THE COURT SHOULD NOT ISSUE A

03:26PM 15   BLANKET PRECLUSION, I THINK OF THIS EVIDENCE, I THINK THAT'S

03:26PM 16   WHAT I WAS SAYING, MR. FLEURMONT, IS THAT I THINK THE COURT

03:26PM 17   SHOULD DEFER AND DETERMINE WHETHER OR NOT ADDITIONAL EVIDENCE

03:27PM 18   WOULD BE HELPFUL FOR A FOUNDATIONAL BASIS AND MAKE THAT

03:27PM 19   DECISION WHEN THAT EVIDENCE OR THAT FOUNDATION IS PRESENTED IN

03:27PM 20   SOME MANNER BEFORE THE COURT, OR THE EVIDENCE IS PRESENTED

03:27PM 21   BEFORE THE COURT WITH THAT FOUNDATION.

03:27PM 22       MR. BOSTIC:  NO OBJECTION TO THAT APPROACH,

03:27PM 23   YOUR HONOR.

03:27PM 24       THE COURT:  SO I'LL DEFER THIS, 570.  EXCUSE ME.

03:27PM 25       NOW WE'RE BACK TO 569.  SO THANK YOU FOR THAT.

03:27PM 1          MR. FLEURMONT, YOU HAVE THAT AS WELL?

03:27PM 2              MR. FLEURMONT:  YES, YOUR HONOR.

03:27PM 3          YOUR HONOR, EARLIER TODAY THE GOVERNMENT IN ITS OPPOSITION

03:27PM 4  TO ANECDOTAL EVIDENCE MOTION STATED THIS IS NOT A CASE ABOUT

03:27PM 5  WHETHER CERTAIN CONDUCT MET INDUSTRY STANDARDS, AND WE AGREE.

03:27PM 6          ALLEGED VIOLATIONS OF INDUSTRY STANDARDS ARE NOT RELEVANT

03:27PM 7  TO THIS CASE FOR REASONS THAT I'LL DISCUSS.

03:27PM 8          ALTHOUGH THAT'S THE GOVERNMENT'S REPRESENTATION TODAY, IN

03:27PM 9  ITS 404(B) NOTICE, THAT'S EXHIBIT 1 AT PAGE 7, CATEGORY 14

03:28PM 10 STATES THE GOVERNMENT ALLEGES THAT VIOLATIONS OF INDUSTRY

03:28PM 11 STANDARDS AND GOVERNMENT REGULATIONS SUPPORTS THE GOVERNMENT'S

03:28PM 12 BROAD ALLEGATIONS THAT THERANOS TECHNOLOGY WAS, IN FACT, NOT

03:28PM 13 CAPABLE OF CONSISTENTLY PRODUCING ACCURATE AND RELIABLE

03:28PM 14 RESULTS.

03:28PM 15         THE GOVERNMENT CITES TO FOUR CATEGORIES OF EVIDENCE IN

03:28PM 16 SUPPORT OF THOSE BROAD ALLEGATIONS.  THE FIRST IS CLINICAL

03:28PM 17 TRIAL EVIDENCE.  THE GOVERNMENT ALLEGES THAT THERANOS FAILED TO

03:28PM 18 IMPLEMENT A CLEAR, INFORMED CONSENT PROTOCOLS AND THAT THEY

03:28PM 19 FOSTERED A CULTURE OF COURSE OF TESTING ENVIRONMENT.

03:28PM 20         THE SECOND CATEGORY RELATES TO RESEARCH AND DEVELOPMENT

03:28PM 21 VALIDATION STUDIES.  THE GOVERNMENT ALLEGES THAT THERANOS

03:28PM 22 FAILED TO HAVE ADEQUATE VALIDATION STUDIES AND THAT THEY USED

03:28PM 23 INSUFFICIENT DATA TO SUPPORT THOSE STUDIES.

03:28PM 24         THE THIRD CATEGORY IS GENERAL INCOMPLIANCE WITH FEDERAL

03:28PM 25 REGULATIONS.

03:28PM  1       AND THE FOURTH CATEGORY IS RELATED TO AGENCY REPORTS WHICH

03:28PM  2   WILL BE ADDRESSED BY MY COLLEAGUE IN A SEPARATE MOTION IN

03:28PM  3   LIMINE.

03:28PM  4       I'D LIKE TO START WITH THE FIRST CATEGORY OF CLINICAL

03:28PM  5   TRIALS.  THIS RELATES TO LANGUAGE IN THE 404(B) NOTICE THAT

03:29PM  6   THERANOS ALSO CUT CORNERS IN ITS ARIZONA RESEARCH AND

03:29PM  7   DEVELOPMENT TESTING AND FAILED TO IMPLEMENT A CLEAR PROTOCOL

03:29PM  8   FOR INFORMED CONSENT FOR TRIAL PARTICIPANTS AND FOSTERED A

03:29PM  9   COERCIVE ENVIRONMENT FOR TESTING.

03:29PM 10       NOW, THE GOVERNMENT HAS FAILED TO PROVIDE ANY EVIDENCE IN

03:29PM 11   SUPPORT OF THAT ALLEGATION IN ITS 404(B) EVIDENCE.  DESPITE

03:29PM 12   SUPPLEMENTING ITS 404(B) NOTICE TWICE IN THIS CASE, THE

03:29PM 13   GOVERNMENT HAS NOT POINTED TO A PIECE OF EVIDENCE OR TESTIMONY

03:29PM 14   AS AN EXHIBIT IN SUPPORT OF THAT ALLEGATION IN VIOLATION OF

03:29PM 15   LOCAL RULE 16-1, AS THE COURT VERY WELL KNOWS, THAT IT REQUIRES

03:29PM 16   THE GOVERNMENT TO PROVIDE A SUMMARY OF ANY EVIDENCE OF OTHER

03:29PM 17   CRIMES, WRONGS, OR ACTS WHICH THE GOVERNMENT INTENDS TO OFFER

03:29PM 18   AND TO SUPPORT THAT SUMMARY WITH DOCUMENTARY EVIDENCE, WITNESS

03:29PM 19   STATEMENTS IN SUFFICIENT DETAIL THAT THE COURT MAY RULE

03:29PM 20   PRETRIAL ON THE PROFFERED EVIDENCE.

03:29PM 21       AFTER MS. HOLMES POINTED THIS OUT IN HER OPENING MOTION,

03:30PM 22   THE GOVERNMENT FAILED TO, IN ITS OPPOSITION, EVEN ADDRESS THE

03:30PM 23   LACK OF EVIDENCE ON THIS ISSUE; AND THEREFORE, BECAUSE THE

03:30PM 24   GOVERNMENT HAS NOT CITED TO A PIECE OF EVIDENCE, THE GOVERNMENT

03:30PM 25   HAS NOT RESPONDED TO MS. HOLMES POINTING THAT ISSUE OUT, THE

03:30PM 1    GOVERNMENT HAS CONCEDED THIS ISSUE AND THE COURT SHOULD ISSUE A

03:30PM 2    RULING PRECLUDING THAT EVIDENCE.

03:30PM 3        THE NEXT CATEGORY RELATES TO R&D VALIDATION, AND THIS IS

03:30PM 4    RELATING TO THE GOVERNMENT'S ALLEGATION AND ITS 404(B) NOTICE

03:30PM 5    THAT THERANOS FAILED TO CONDUCT ADEQUATE VALIDATION STUDIES,

03:30PM 6    RELIED ON INSUFFICIENT DATA TO CLAIM THAT THE TESTS WERE VALID,

03:30PM 7    ACCURATE, AND RELIABLE.  AGAIN, THAT'S AT EXHIBIT 1 ON PAGE 7.

03:30PM 8        NOW, SIMILARLY, THE GOVERNMENT AGAIN, WITHOUT CITING ANY

03:30PM 9    EVIDENCE, ALLEGES A FAILURE TO CONDUCT ADEQUATE VALIDATION

03:30PM 10   STUDIES.  THE GOVERNMENT DOES NOT POINT TO ANY DATA TO SUPPORT

03:30PM 11   ITS ALLEGATION, DOESN'T EXPLAIN WHAT AN ADEQUATE VALIDATION

03:30PM 12   STUDY IS, AND DOESN'T EVEN EXPLAIN WHAT SUFFICIENT DATA WOULD

03:30PM 13   BE TO SUPPORT THAT STUDY.  THIS WOULD BE IN VIOLATION OF LOCAL

03:30PM 14   RULE 16-1.

03:30PM 15       AND IN THE GOVERNMENT'S OPPOSITION, ITS ONLY DEFENSE TO

03:31PM 16   THIS CATEGORY IS TO SAY THAT IT EXPECTS THAT WITNESSES WILL

03:31PM 17   TESTIFY THAT THERANOS LAUNCH EFFORTS WERE RUSHED IN 2013, BUT

03:31PM 18   THE ONLY EVIDENCE CITED IN THE GOVERNMENT'S OPPOSITION IS

03:31PM 19   DIRECTLY CONTRARY TO THAT ALLEGATION.

03:31PM 20       THE COURT -- EXCUSE ME, THE GOVERNMENT POINTS TO TESTIMONY

03:31PM 21   BY DR. ADAM ROSENDORFF, THE FORMER LAB DIRECTOR OF THERANOS,

03:31PM 22   AND WHAT MR. ROSENDORFF -- OR DR. ROSENDORFF, EXCUSE ME, SAYS

03:31PM 23   IN HIS DEPOSITION TESTIMONY WAS THAT HE DID NOT, QUOTE, FEEL

03:31PM 24   PRESSURE INDIVIDUALLY FROM MANAGEMENT TO GET THESE VALIDATION

03:31PM 25   REPORTS SIGNED.  THAT'S AT GOVERNMENT'S EXHIBIT 38, DOCKET

03:31PM 1    681-2.

03:31PM 2         HE ALSO SAID THAT HE WAS ONLY GOING TO SIGN THE VALIDATION

03:31PM 3    REPORTS IF THEY MET HIS STANDARDS AND THAT THERE WERE NO

03:31PM 4    VALIDATION REPORTS BEFORE OR AFTER THE LAUNCH THAT HE REFUSED

03:31PM 5    TO SIGN.

03:31PM 6         SO THE ONLY EVIDENCE THAT THE COURT -- THE ONLY EVIDENCE

03:31PM 7    THAT THE GOVERNMENT POINTS TO IN SUPPORT OF THAT ALLEGATION IS

03:31PM 8    DIRECTLY CONTRARY TO THE ALLEGATION THAT THEY SAY HAD TO DO

03:31PM 9    WITH THE VALIDATION TESTING.

03:31PM 10        AND FOR THAT REASON WE ASK THE COURT TO EXCLUDE THAT

03:32PM 11   CATEGORY OF EVIDENCE AS WELL.

03:32PM 12        THE LAST CATEGORY I'LL DISCUSS TODAY IS THE GENERAL

03:32PM 13   CATEGORY OF VIOLATION OF INDUSTRY STANDARDS AND GOVERNMENT

03:32PM 14   REGULATIONS.  THIS IS ALSO AT EXHIBIT 1 AT PAGE 7 IN WHICH THE

03:32PM 15   GOVERNMENT ALLEGES THAT IN FURTHERANCE OF THE SCHEME TO

03:32PM 16   DEFRAUD, THE DEFENDANTS FAILED TO CONFORM TO INDUSTRY

03:32PM 17   STANDARDS, AS WELL AS GOVERNMENT REGULATIONS OR RULES REGARDING

03:32PM 18   CLINICAL LABORATORY STANDARDS.

03:32PM 19        THIS EVIDENCE SHOULD BE EXCLUDED BECAUSE THE GENERAL RULE

03:32PM 20   IS THAT EVIDENCE OF VIOLATIONS OF FEDERAL LAW ARE IMPERMISSIBLE

03:32PM 21   EXPERT TESTIMONY IN A CIVIL OR A CRIMINAL CASE.

03:32PM 22        THE GOVERNMENT SEEKS TO ADMIT THIS TESTIMONY THROUGH TWO

03:32PM 23   OF ITS EXPERTS.  ONE IS DR. MASTER, AND THE OTHER ONE IS

03:32PM 24   DR. ADAM ROSENDORFF.

03:32PM 25        AS THIS COURT KNOWS, BECAUSE IT HELD IN LUKOV, L-U-K-O-V,

03:32PM  1   VERSUS SCHINDLER ELEVATOR CORP, 2012 WESTLAW 2428251, AN EXPERT

03:33PM  2   WITNESS CANNOT GIVE AN OPINION AS FOR A LEGAL CONCLUSION.  AS

03:33PM  3   THE NINTH CIRCUIT STATED IN UNITED STATES VERSUS SHOLL, EXPERTS

03:33PM  4   DO NOT TESTIFY ABOUT THE LAW BECAUSE IT IS THE JUDGE'S DUTY TO

03:33PM  5   INFORM THE JURY ABOUT THE LAW THAT IS RELEVANT TO THEIR

03:33PM  6   DELIBERATIONS.

03:33PM  7       YOUR HONOR, FROM THESE CASES AND OTHERS, IT'S CLEAR THAT

03:33PM  8   NO GOVERNMENT WITNESS MAY PROVIDE HIS OR HER LEGAL CONCLUSION

03:33PM  9   AS TO ANY LAW THAT WAS ALLEGEDLY VIOLATED OR REGULATION THAT

03:33PM 10   WAS ALLEGEDLY VIOLATED IN THIS CASE.

03:33PM 11       NOW, THE GOVERNMENT UNDERSTANDS THAT GENERAL RULE, BUT

03:33PM 12   THEY SEEK A CARVEOUT IN THIS CASE AND THEY ARGUE THAT THERE

03:33PM 13   SHOULD BE NO RULE AGAINST ADMISSION OF LEGAL CONCLUSIONS

03:33PM 14   COMMUNICATED TO A DEFENDANT.  THAT'S AT DOCKET 670 AT PAGE 4.

03:33PM 15       BUT ALL OF THE GOVERNMENT'S CASES THAT THEY CITE ARE

03:33PM 16   DISTINGUISHABLE BECAUSE THEY DEAL WITH A SIMILAR FACT PATTERN.

03:33PM 17   IN EACH CASE THERE'S AN ATTORNEY FOR THE DEFENDANT EXPLAINING

03:33PM 18   TO THE DEFENDANT THAT THE CONDUCT THAT THEY'RE ENGAGING IN MAY

03:33PM 19   BE A CRIME AND LATER THAT PERSON IS CHARGED FOR THE SAME OR THE

03:33PM 20   EXACT SAME CRIME, THE SAME OR SIMILAR CRIME.

03:34PM 21       IN THIS CASE THE EVIDENCE THAT THE GOVERNMENT POINTS TO

03:34PM 22   FOR SOMEONE TELLING MS. HOLMES ABOUT A VIOLATION OF A

03:34PM 23   CRIMINAL -- A VIOLATION OF A FEDERAL REGULATION IS NOT AN

03:34PM 24   ATTORNEY.  IT'S DR. ADAM ROSENDORFF.  HE IS A REGULAR

03:34PM 25   INDIVIDUAL.  HE'S NOT AN ATTORNEY.  MS. HOLMES IS NOT CHARGED

03:34PM 1    WITH CRIMINAL VIOLATIONS OF CLINICAL LABORATORY IMPROVEMENT

03:34PM 2    AMENDMENTS, WHICH IS THE REGULATION THAT HE POINTS OUT, A

03:34PM 3    CHARGE THAT WAS AVAILABLE TO THE GOVERNMENT, AND THE EVIDENCE

03:34PM 4    CITED BY THE GOVERNMENT IS NOT RELEVANT TO WHETHER MS. HOLMES

03:34PM 5    KNOWINGLY VIOLATED THE WIRE FRAUD ACT BY PERSISTING IN CONDUCT

03:34PM 6    AFTER RECEIVING ADVICE THAT HER CONDUCT WAS IN VIOLATION OF

03:34PM 7    THAT WIRE FRAUD ACT.

03:34PM 8        THE CASES THE GOVERNMENT CITES STAND FOR THE SIMPLE

03:34PM 9    PROPOSITION THAT WHEN AN ATTORNEY TELLS A DEFENDANT THAT HE OR

03:34PM 10   SHE IS DIRECTLY VIOLATING A CRIME FOR WHICH HE OR SHE LATER

03:34PM 11   WILL BE CHARGED, THAT IS RELEVANT TO INTENT.

03:34PM 12       NOTABLY, IN THIS CASE THERE IS NO ALLEGATION THAT AN

03:34PM 13   ATTORNEY TOLD MS. HOLMES THAT THERE'S A VIOLATION OF THE WIRE

03:34PM 14   FRAUD ACT.

03:34PM 15           THE COURT:  SO LET ME ASK YOU, IF DR. ROSENDORFF --

03:35PM 16   HE WAS THE LAB DIRECTOR, I THINK; IS THAT CORRECT?

03:35PM 17           MR. FLEURMONT:  THAT'S CORRECT, YOUR HONOR.

03:35PM 18           THE COURT:  SO AS LAB DIRECTOR, SHOULD WE KNOW OR

03:35PM 19   SHOULD WE ASSUME OR DO WE KNOW THAT THAT IS A POSITION OF ART,

03:35PM 20   IF YOU WILL; THAT IS, HE WAS IN CHARGE OF THE FUNCTIONS, THE

03:35PM 21   DAILY OPERATIONS, THE REPORTING, ALL OF THE THINGS IN THE

03:35PM 22   LABORATORY, THAT FALLS UNDER HIS DOMAIN, ISN'T THAT HIS CHARGE?

03:35PM 23   ISN'T THAT WHAT HE DOES AS LAB DIRECTOR?  HE MAKES SURE THE LAB

03:35PM 24   OPERATES, FUNCTIONS SMOOTHLY, EFFICIENTLY, PROFITABLY, AND

03:35PM 25   LEGALLY?  IS THAT PART OF HIS DUTIES?

03:35PM 1          MR. FLEURMONT:  THAT'S CORRECT, YOUR HONOR.

03:35PM 2          PART OF THE LAB DIRECTOR'S DUTY IS TO MAKE SURE THAT THE

03:35PM 3     TESTS THAT ARE COMING OUT OF THE LAB ARE ACCURATE AND RELIABLE

03:35PM 4     AND MAKE SURE THE LAB IS FUNCTIONING.

03:35PM 5          BUT THE DISCONNECT OF THAT FACT PATTERN AND WHAT IS GOING

03:35PM 6     ON HERE IS THAT -- AND PARTICULARLY GOING BACK TO THE CASES

03:35PM 7     THAT THE GOVERNMENT HAS CITED -- IT'S NOT AN ATTORNEY PROVIDING

03:35PM 8     LEGAL ADVICE ABOUT THE CONDUCT FOR WHICH SOMEONE IS LATER

03:36PM 9     CHARGED.

03:36PM 10         HERE THIS IS A DOCTOR TALKING ABOUT LAB OPERATIONS THAT

03:36PM 11    ARE NOT -- AND THERE'S NO ALLEGATION OR THERE'S NO ADVICE AND

03:36PM 12    THERE'S NO STATEMENT IN THERE ABOUT VIOLATIONS OF THE WIRE

03:36PM 13    FRAUD ACT, THE CRIME FOR WHICH MS. HOLMES IS CHARGED.

03:36PM 14         THE COURT:  WELL, HE'S NOT SAYING THAT -- HE'S NOT

03:36PM 15    OFFERING A LEGAL OPINION THAT THE LAB WAS LEGALLY IN VIOLATION.

03:36PM 16         HE'S, AS I UNDERSTAND IT -- AND PLEASE HELP ME OUT HERE --

03:36PM 17    AS I UNDERSTAND IT, BECAUSE OF HIS POSITION, BECAUSE OF THE

03:36PM 18    HIGH LEVEL POSITION THAT HE HAD A LAB DIRECTOR, HE SHOULD KNOW

03:36PM 19    ABOUT REGULATIONS, HE KNOWS CLIA REGULATIONS, THOSE ARE

03:36PM 20    IMPORTANT TO A FUNCTIONING -- A CERTIFIED FUNCTIONING LAB AND

03:36PM 21    IF THEY'RE CONTINUING TO DO THE WORK, THEY NEED TO BE CERTIFIED

03:36PM 22    AND ALL OF THAT, INVOLVED -- SOMETIMES THERE'S CROSSOVER WITH

03:36PM 23    THE FDA AND OTHERS.  SO HE KNOWS THOSE THINGS.

03:37PM 24         ISN'T THE CONDUCT HERE THE FACT THAT HE LOOKED AT THE LAB

03:37PM 25    AS LAB DIRECTOR AND NOTED SOME THINGS THAT PARTED COMPANY WITH

03:37PM 1    CLIA REGULATIONS THAT HE KNOWS, HE KNOWS ABOUT, AND THEN HE

03:37PM 2    INFORMED EITHER MS. HOLMES OR ADMINISTRATION THAT THE LAB WAS

03:37PM 3    NOT IN COMPLIANCE WITH THOSE REGULATIONS, NOT THAT WE'RE

03:37PM 4    VIOLATING THE LAW, BUT RIGHT NOW THE REGULATIONS REQUIRE X,

03:37PM 5    WHATEVER IT IS, AND WE'RE NOT DOING X, WHATEVER THAT IS.

03:37PM 6        IS THAT TOO SIMPLISTIC?

03:37PM 7        IT SEEMS LIKE THAT'S WHAT HE DID.  SO HE'S NOT OFFERING

03:37PM 8    LEGAL OPINION ABOUT ANY VIOLATIONS.  HE'S TALKING ABOUT

03:37PM 9    REGULATIONS THAT, AS LAB DIRECTOR, HE'S SUPPOSED TO KNOW.  I

03:37PM 10   ASSUME THAT'S WHY HE WAS HIRED, BECAUSE OF HIS BACKGROUND,

03:37PM 11   KNOWLEDGE AND EXPERIENCE.  ISN'T THAT WHAT HE'S DOING?

03:37PM 12       MR. FLEURMONT:  WELL, NOT QUITE, YOUR HONOR.  HE IS

03:38PM 13   OFFERING LEGAL OPINIONS.

03:38PM 14       I WANT TO BE VERY CLEAR ON THE EVIDENCE THAT WE SEEK TO

03:38PM 15   EXCLUDE.  SO WE'RE SEEKING TO EXCLUDE ANY TESTIMONY BY ANY

03:38PM 16   WITNESS, NOT JUST DR. ROSENDORFF, THAT HERE IS THIS LAW, HERE'S

03:38PM 17   WHAT THIS LAW SAYS, THERANOS VIOLATED THIS LAW.

03:38PM 18       THAT, UNDER THE CASE LAW, I THINK IS VERY CLEAR IS

03:38PM 19   INADMISSIBLE EXPERT OPINION TESTIMONY.

03:38PM 20       THE COURT:  THAT'S WHAT I WAS SAYING.  PARDON ME FOR

03:38PM 21   INTERRUPTING YOU.  MY THOUGHT WAS THAT HE WAS NOT GOING TO

03:38PM 22   TESTIFY TO THAT.

03:38PM 23       MR. FLEURMONT:  OKAY.  WELL, YOUR HONOR, THAT'S NOT

03:38PM 24   QUITE -- THAT'S NOT OUR UNDERSTANDING BASED ON THE EXHIBITS

03:38PM 25   THAT THE GOVERNMENT HAS PROVIDED.

03:38PM  1          THE COURT:  OKAY.

03:38PM  2          MR. FLEURMONT:  WE HAVE A DIFFERENT UNDERSTANDING.

03:38PM  3  FOR EXAMPLE, THE GOVERNMENT PROVIDES AT EXHIBIT 24 AN EMAIL

03:38PM  4  CHAIN THAT I'LL NOTE THAT MS. HOLMES IS NOT ON IN WHICH HE SAYS

03:38PM  5  THAT THESE ARE THE AREAS OF CLIA LAW THAT WE'RE NOT COMPLYING

03:38PM  6  WITH.

03:38PM  7          THE COURT:  I'M SORRY.  SAY AGAIN.

03:38PM  8          MR. FLEURMONT:  THESE ARE THE AREAS OF CLIA LAW IN

03:38PM  9  WHICH WE ARE NOT COMPLYING.

03:39PM  10          THE COURT:  OKAY.  SO IT SOUNDS LIKE IT'S A LITTLE

03:39PM  11  BIT OF BOTH OF WHAT I SAID, WHAT MY OBSERVATION WAS, I CALLED

03:39PM  12  THEM REGULATIONS, AND HE SAID THAT WE'RE NOT IN COMPLIANCE WITH

03:39PM  13  CLIA.

03:39PM  14          MR. FLEURMONT:  IT'S A FEDERAL REGULATION,

03:39PM  15  YOUR HONOR.

03:39PM  16          THE COURT:  RIGHT, REGULATION.  HE DIDN'T SAY THAT

03:39PM  17  WE'RE BREAKING THE LAW.  HE DIDN'T SAY WE SHOULD LAWYER UP

03:39PM  18  BECAUSE WE'RE BREAKING THE LAW.  PARDON ME.

03:39PM  19      BUT HE SAID THERE'S A REGULATION THAT WE'RE NOT FOLLOWING

03:39PM  20  HERE.

03:39PM  21          MR. FLEURMONT:  YOUR HONOR, I THINK THAT'S A --

03:39PM  22          THE COURT:  IS THAT TOO SIMPLISTIC?

03:39PM  23          MR. FLEURMONT:  I DON'T WANT TO CALL YOUR HONOR

03:39PM  24  SIMPLISTIC.

03:39PM  25          THE COURT:  NO, NO.  I SAID IT.

03:39PM 1           MR. FLEURMONT:  I THINK THAT'S A DISTINCTION WITHOUT

03:39PM 2    A DIFFERENCE TO SAY THAT WE'RE NOT IN COMPLIANCE WITH FEDERAL

03:39PM 3    LAW AND TO SAY THAT WE'RE VIOLATING FEDERAL LAW.  IT'S

03:39PM 4    EFFECTIVELY THE SAME THING, YOUR HONOR.

03:39PM 5           THE COURT:  OKAY.

03:39PM 6           MR. FLEURMONT:  AND WE SEEK TO EXCLUDE -- THAT'S THE

03:40PM 7    EVIDENCE THAT WE SEEK TO EXCLUDE.

03:40PM 8        BUT PUTTING LEGAL CONCLUSIONS ASIDE, THE EVIDENCE OF

03:40PM 9    VIOLATION OF INDUSTRY STANDARDS IS NOT RELEVANT TO THIS CASE

03:40PM 10   FOR OTHER REASONS.

03:40PM 11       THE GOVERNMENT HAS ALLEGED THAT MS. HOLMES MISREPRESENTED

03:40PM 12   TO INVESTORS AND PAYING CUSTOMERS THAT THERANOS COULD PROVIDE

03:40PM 13   ACCURATE AND RELIABLE TEST RESULTS DESPITE KNOWING THAT

03:40PM 14   THERANOS TECHNOLOGY WAS IN FACT, AND I QUOTE, NOT CAPABLE OF

03:40PM 15   CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

03:40PM 16       WE SUBMIT THAT THE EVIDENCE OF VIOLATION OR ALLEGED

03:40PM 17   VIOLATION OF INDUSTRY STANDARDS IS NOT RELEVANT TO THAT CHIEF

03:40PM 18   ALLEGATION IN THIS CASE, WHICH IS PARAGRAPH 16 OF THE

03:40PM 19   GOVERNMENT'S THIRD SUPERSEDING INDICTMENT.

03:40PM 20       FIRST, THE GOVERNMENT'S RETAINED EXPERT CANNOT EVEN OPINE

03:40PM 21   THAT ANY SUCH VIOLATION OF INDUSTRY STANDARDS AFFECTS ACCURACY

03:40PM 22   AND RELIABILITY.  HE SIMPLY STATES THAT IT COULD HAVE A

03:40PM 23   POTENTIAL TO AFFECT ACCURACY AND RELIABILITY.

03:40PM 24       SO EVEN THE GOVERNMENT'S OWN RETAINED EXPERT UNDERSTANDS

03:41PM 25   THAT THERE'S NOT THAT STRONG OF A CONNECTION IN THIS CASE.

03:41PM 1        SECOND, THE GOVERNMENT CMS WITNESS HAS EXPLAINED, CMS DOES

03:41PM 2    NOT DETERMINE ACCURACY OR RELIABILITY OF TESTS.  RATHER, IT

03:41PM 3    LOOKS TO SEE IF THE LAB IS FOLLOWING ITS OWN POLICIES, AND

03:41PM 4    THAT'S SARAH BENNETT.  AND THAT'S AT EXHIBIT 31, WHICH IS THE

03:41PM 5    DEPOSITION TESTIMONY OF MS. BENNETT.

03:41PM 6        AND MOREOVER, THIS GOES BACK TO THE ORIGINAL POINT, THE

03:41PM 7    404(B) NOTICE IN WHICH THE GOVERNMENT MADE THESE ALLEGATIONS

03:41PM 8    AND CITED THESE DOCUMENTS DID NOT INCLUDE ANY DOCUMENT THAT HAD

03:41PM 9    MS. HOLMES COPIED OR THAT SHOWED MS. HOLMES'S AWARENESS OF THIS

03:41PM 10   ISSUE.

03:41PM 11       AND SO FOR THOSE REASONS WE BELIEVE THAT THE RELEVANCE IS

03:41PM 12   SLIM TO NONE WHEN IT COMES TO INDUSTRY STANDARDS.

03:41PM 13       THE LAST POINT I'D LIKE TO MAKE, YOUR HONOR, IS RELATED TO

03:41PM 14   THE PREJUDICIAL EFFECT OF THIS TESTIMONY.

03:41PM 15       EVEN IF THE COURT WERE TO FIND THAT THERE WAS SOME MINIMAL

03:41PM 16   PROBATIVE RELEVANCE TO THIS, WE FEEL THAT THAT RELEVANCE IS

03:41PM 17   SUBSTANTIALLY OUTWEIGHED BY A PREJUDICIAL EFFECT, AND THIS IS

03:42PM 18   BECAUSE IF THE COURT WAS TO ALLOW THE JURY TO HEAR REPEATEDLY

03:42PM 19   ABOUT EVIDENCE RELATED TO INDUSTRY STANDARDS AND VIOLATIONS OF

03:42PM 20   FEDERAL REGULATIONS, THERE'S A SERIOUS DANGER THAT THE JURY

03:42PM 21   COULD CONVICT BASED ON THEIR UNDERSTANDING OF A VIOLATION OF A

03:42PM 22   FEDERAL REGULATION.

03:42PM 23            THE COURT:  A CIVIL REGULATION THAT THE JURY MIGHT

03:42PM 24   THEN SAY, WELL, THE DANGER IS THAT THERE MIGHT BE A CONVICTION

03:42PM 25   OF A CRIMINAL STATUTE BASED ON A CIVIL REGULATION.

03:42PM  1          MR. FLEURMONT:  THAT'S EXACTLY RIGHT, YOUR HONOR.

03:42PM  2       WITH THAT, I'LL YIELD MY TIME.

03:42PM  3          THE COURT:  OKAY.  THANK YOU.

03:42PM  4       MR. LEACH, THIS IS THE FIRST TIME TODAY WE HEAR FROM YOU.

03:42PM  5          MR. LEACH:  I KNOW, YOUR HONOR.  I HOPE TO LIVE UP

03:42PM  6  TO THE STANDARD OF MY COLLEAGUES.  GOOD AFTERNOON.

03:42PM  7       ROBERT LEACH FOR THE UNITED STATES.

03:42PM  8       THE DEFENSE SEEKS A CATEGORICAL EXCLUSION OF ANY EVIDENCE,

03:42PM  9  ARGUMENT, REFERENCES TO VIOLATIONS OF INDUSTRY STANDARDS OR

03:42PM  10  GOVERNMENT REGULATIONS AND RULES, A CATEGORICAL RULE ON THAT IN

03:43PM  11  THIS CASE.

03:43PM  12       AND IT RAISED THREE ARGUMENTS FOR THIS CATEGORICAL RULE:

03:43PM  13  RELEVANCE, 403, AND THE RULE THAT THEY HAVE CONJURED UP WHICH

03:43PM  14  IS THAT NONLAWYERS CAN'T TALK ABOUT WHAT THEY COMMUNICATED TO

03:43PM  15  THE DEFENDANTS ABOUT THE LAW DURING THE SCHEME TO DEFRAUD.

03:43PM  16       THEY DID NOT RAISE A 404 OBJECTION.  THEY DRAW A LOT ON

03:43PM  17  THE 404(B) NOTICE, BUT I THINK MUCH OF WHAT WE'RE TALKING ABOUT

03:43PM  18  IS NOT GENERALLY 404(B) EVIDENCE, YOUR HONOR.

03:43PM  19       I THINK WHEN YOU GET DOWN INTO THE SPECIFICS, YOU SEE WHY

03:43PM  20  THIS CATEGORICAL RULE THAT THEY'RE ARGUING FOR IS NOT

03:43PM  21  WARRANTED, AND I WANT TO FOCUS ON EXHIBIT 24, THIS IS AT DOCKET

03:43PM  22  582-8.  THIS IS THE EMAIL THAT MY FRIEND ON THE OTHER SIDE WAS

03:43PM  23  TALKING ABOUT FROM DR. ROSENDORFF TITLED -- WHERE HE'S RAISING

03:43PM  24  ISSUES ABOUT THERANOS'S LAB AND TESTING THAT HAD BEEN DONE FOR

03:44PM  25  THE EDISON TO DATE.

03:44PM 1        THIS EMAIL IS FORWARDED TO MS. HOLMES, SO THERE'S AMPLE

03:44PM 2    EVIDENCE THAT SHE KNEW ABOUT IT.

03:44PM 3        THERE'S ADDITIONAL EMAILS WHERE SHE'S COMMUNICATING ABOUT

03:44PM 4    THE RESPONSE TO DR. ROSENDORFF IN RESPONSE TO THIS EMAIL.

03:44PM 5        AND THE THRUST OF WHAT DR. ROSENDORFF IS SAYING IN THIS

03:44PM 6    EMAIL TO MR. BALWANI, WHICH GETS FORWARDED TO MS. HOLMES, AND

03:44PM 7    THAT'S -- THE FORWARDING IS, IN THE GOVERNMENT'S OPPOSITION, IS

03:44PM 8    ESSENTIALLY THAT WE HAVEN'T DONE SOME OF THE STUDIES THAT ARE

03:44PM 9    NECESSARY TO RUN OUR LAB CONSISTENTLY WITH CLIA.

03:44PM 10        THE COURT:  THIS IS DR. ROSENDORFF?

03:44PM 11        MR. LEACH:  THIS IS DR. ROSENDORFF.

03:44PM 12        AND YOUR HONOR TOUCHED ON THE ROLE OF DR. ROSENDORFF.  HE

03:44PM 13    IS THE LAB DIRECTOR.  HIS DUTIES INCLUDE MAKING SURE THAT THIS

03:44PM 14    LAB IS OPERATING CORRECTLY, IN A SAFE WAY, COMPLIANT WITH

03:44PM 15    FEDERAL LAW, COMPLIANT WITH STATE LAW.

03:44PM 16        IF THOSE THINGS DON'T HAPPEN, THERE CAN BE CONSEQUENCES

03:45PM 17    FOR HIM, SO HE NEEDS TO BE -- YOU KNOW, THESE ARE NOT

03:45PM 18    REGULATIONS THAT AFFECT JUST LAWYERS.  THESE ARE REGULATIONS

03:45PM 19    THAT AFFECT HIM AND HIS CONDUCT AND THAT HE'S TESTED ON AND

03:45PM 20    THAT HE HAS TO KNOW ABOUT.  SO HE'S VERY MUCH IN A POSITION TO

03:45PM 21    HAVE INFORMATION ABOUT WHAT HE'S TALKING ABOUT.

03:45PM 22        AND ESSENTIALLY IN NOVEMBER OF 2013, HE'S RAISING RED

03:45PM 23    FLAGS ABOUT WHAT THERANOS IS DOING IN ITS LAB.  HE'S SAYING

03:45PM 24    THAT WE HAVE NOT RUN THE RIGHT TESTS FOR OUR EDISON DEVICE, THE

03:45PM 25    DEVICE THAT ALL OF THE INVESTORS CARE ABOUT.  HE'S SAYING, WE

03:45PM 1    NEED TO DO X, Y, AND Z BEFORE WE DO THIS IN OUR LAB.

03:45PM 2         I CAN'T THINK OF MORE SIGNIFICANT INTENT EVIDENCE THAN

03:45PM 3    THIS.

03:45PM 4         THIS IS NOT DR. ROSENDORFF INSTRUCTING THE JURY ON WHAT

03:45PM 5    THE LAW IS.  WE ACKNOWLEDGE THAT IS THE COURT'S JOB.  THE COURT

03:45PM 6    EXPOUNDS ON WHAT THE CONTRACT MEANS AND THE COURT WILL GIVE

03:45PM 7    JURY INSTRUCTIONS AT THE END OF THE DAY.

03:46PM 8         BUT THERE ARE MANY, MANY SITUATIONS WHERE NONLAWYERS

03:46PM 9    COMMUNICATE TO A PERSON IN REALTIME ABOUT RED FLAGS, ABOUT

03:46PM 10   THINGS THAT THEY'RE DOING RIGHT AND THEY'RE DOING WRONG, AND

03:46PM 11   THEY'RE ESSENTIALLY TRYING TO CREATE THIS RULE THAT IF IT'S

03:46PM 12   COUCHED IN SOME LEGAL TERM OR SOME ABIDING BY A CONDITION, THAT

03:46PM 13   IT'S OUT AND IT HAS NO RELEVANCE.

03:46PM 14        AND THAT CAN'T BE RIGHT, YOUR HONOR.  THAT WOULD MEAN THAT

03:46PM 15   A CFO, A NONLAWYER, WHO TELLS THE CEO OF A COMPANY, WE'RE

03:46PM 16   RECOGNIZING REVENUE INCORRECTLY, OR WE'RE BACKDATING STOCK

03:46PM 17   OPTIONS AND WE SHOULDN'T DO THAT, CAN'T COME IN, IMPERMISSIBLE

03:46PM 18   LEGAL OPINION.

03:46PM 19        OR IF A SCIENTIST GOES TO THE CHIEF MARKETING OFFICER AND

03:46PM 20   SAYS, I DON'T FEEL GOOD ABOUT HOW WE'RE MARKETING THIS, THIS

03:46PM 21   DOESN'T SEEM RIGHT TO ME, IT SEEMS BAD, CAN'T COME IN,

03:46PM 22   IMPERMISSIBLE LEGAL OPINION UNDER THEIR RULE.

03:46PM 23        THIS IS KEY INTENT, STATE OF MIND, PLAN, KNOWLEDGE

03:47PM 24   EVIDENCE THAT GOES DIRECTLY TO WHAT THE DEFENDANT KNEW ABOUT

03:47PM 25   HER LAB, KNEW WHAT WAS GOING ON IN THERE, AND WHAT SHE DOES

03:47PM 1    ABOUT IT.

03:47PM 2         I THINK ANOTHER CRITICAL PIECE OF EVIDENCE THAT WE CITE TO

03:47PM 3    PROVE THIS CONCEPT IS EXHIBIT 26, WHICH IS 583, AND THIS IS

03:47PM 4    DR. ROSENDORFF TELLING TO MR. BALWANI IN AN EMAIL, WHICH

03:47PM 5    ULTIMATELY GETS FORWARDED TO MS. HOLMES, FOR PROFICIENCY

03:47PM 6    TESTING, WE'RE NOT 100 PERCENT OF THE TIME DOING IT THE WAY WE

03:47PM 7    SHOULD BE DOING IT.  WE SHOULD BE DOING IT ON THE THERANOS

03:47PM 8    DEVICES THAT ARE ACTUALLY USED IN OUR LAB, AND WE'RE NOT DOING

03:47PM 9    THAT.

03:47PM 10        HE DOESN'T SAY, WE'RE VIOLATING THE LAW.  HE SAYS, WE'RE

03:47PM 11   NOT DOING THAT 100 PERCENT OF THE TIME AND WE SHOULD BE.

03:47PM 12             THE COURT:  AND THAT EMAIL IS IN THE CHARGING TIME

03:47PM 13   PERIOD?

03:47PM 14             MR. LEACH:  ABSOLUTELY, YOUR HONOR.  IT'S MARCH OF

03:47PM 15   2014, APPROXIMATELY.

03:47PM 16        AND EVEN IF IT WERE COUCHED IN, WE'RE NOT COMPLYING WITH

03:48PM 17   THE REGULATION, DR. ROSENDORFF IS PERFECTLY CAPABLE OF, BECAUSE

03:48PM 18   HE'S THE REGULATED PERSON, OF TALKING ABOUT HIS CONCERNS.

03:48PM 19        AND THEY CAN CROSS-EXAMINATION HIM ABOUT HIS NOT BEING A

03:48PM 20   LAWYER, HIS NOT KNOWING WHAT HE TALKS ABOUT.

03:48PM 21        THEY POINT TO LANGUAGE IN THE EMAIL WHERE HOLMES SUGGESTS

03:48PM 22   SHE MIGHT HAVE GOTTEN ADVICE FROM SOMEONE ELSE.  THEY CAN

03:48PM 23   CROSS-EXAMINATION DR. ROSENDORFF ABOUT IT.  BUT IT DOESN'T

03:48PM 24   DIMINISH THE RELEVANCE, IT DOESN'T RAISE 403 CONCERNS, AND IT

03:48PM 25   CERTAINLY DOESN'T IMPINGE ON THE COURT'S RESPONSIBILITY TO

03:48PM 1    INSTRUCT THE JURY ON WHAT THE LAW IS.

03:48PM 2         AND TO THE EXTENT THAT THERE'S ANY DOUBT ABOUT THIS, THIS

03:48PM 3    CAN BE CURED WITH AN INSTRUCTION.  THE COURT CAN SAY SHE'S NOT

03:48PM 4    ACCUSED OF VIOLATING 42 CFR 1274 OR THIS.

03:48PM 5         THIS EVIDENCE IS OFFERED TO SHOW HER STATE OF MIND, HER

03:48PM 6    INTENT, HER KNOWLEDGE OF PROBLEMS WITHIN THE LAB, WHICH SHE

03:49PM 7    DOES NOT FIX.

03:49PM 8         AND THESE TWO ISOLATED EXAMPLES, YOUR HONOR, ARE IMPORTANT

03:49PM 9    BECAUSE THEY CULMINATE IN NOVEMBER OF 2014 WHEN DR. ROSENDORFF

03:49PM 10   GOES TO MS. HOLMES AGAIN AND SAYS, I AM NOT COMFORTABLE WITH

03:49PM 11   WHAT WE'RE DOING IN THE LAB.  I CAN NO LONGER STAND BY THESE

03:49PM 12   RESULTS.  YOU NEED TO FIND ANOTHER LAB DIRECTOR.

03:49PM 13        AND WHAT DO THEY DO?  THEY FORCE HIM OUT, AND THEN THEY

03:49PM 14   HARASS HIM WITH THREATS OF VIOLATING CONFIDENTIALITY.

03:49PM 15        ALL OF THIS, THIS ENTIRE ARC IS DEEPLY PROBATIVE OF HER

03:49PM 16   STATE OF MIND, HER INTENT, HER PLAN, AND HER MOTIVE.

03:49PM 17        AND I WOULD ALSO ADD, YOUR HONOR, THEY GO OUT OF THEIR

03:49PM 18   WAY -- AND WE CITED TWO CASES IN THE BRIEF, GRAPH AND MCCLAREN.

03:49PM 19   THESE STAND FOR THE OBVIOUS POSITION THAT IF SOMEONE IS RAISING

03:49PM 20   RED FLAGS ABOUT THE LAWFULNESS OF SOMEBODY'S CONDUCT DURING

03:49PM 21   THIS SCHEME, THAT OBVIOUSLY GOES TO THEIR INTENT AND THEIR

03:49PM 22   STATE OF MIND.

03:49PM 23        THE FACT THAT IT CAME FROM A LAB DIRECTOR INSTEAD OF A

03:50PM 24   LAWYER IS A DIFFERENCE WITHOUT A MEANING IN THIS PARTICULAR

03:50PM 25   INSTANCE, PARTICULARLY BECAUSE OF THE LAB DIRECTOR'S DUTIES.

03:50PM 1      THEY'RE ESSENTIALLY ARGUING FOR A RULE THAT SAYS IF

03:50PM 2  INSIDERS RAISE RED FLAGS ABOUT MISCONDUCT, UNLESS THEY HAVE A

03:50PM 3  LAW DEGREE, IT'S NOT ADMISSIBLE, AND THAT'S JUST NOT SUPPORTED

03:50PM 4  BY ANY OF THE CASES THAT THEY HAVE CITED OR COMMON SENSE.

03:50PM 5      IT WOULD, IT WOULD ESSENTIALLY IMMUNIZE EVIDENCE OF A

03:50PM 6  DEFENDANT'S KNOWLEDGE THAT HAPPENS TO COME COUCHED IN TERMS OF

03:50PM 7  A LEGAL OPINION.

03:50PM 8      THEY HAVE ALSO, UNDER THIS GUISE OF VIOLATING INDUSTRY

03:50PM 9  STANDARDS AND GOVERNMENT VIOLATIONS, MOVED TO EXCLUDE EVIDENCE

03:50PM 10  OF THERANOS'S REVELATION STUDIES, WHICH THEY DON'T EVEN MAKE

03:50PM 11  THE ARGUMENT IS ACTUALLY 404(B) EVIDENCE.  IT'S PART OF THE

03:50PM 12  SCHEME TO DEFRAUD.  IT'S PART OF THE UNDERLYING BASIS FOR WHAT

03:51PM 13  HAPPENED HERE.

03:51PM 14      THE GOVERNMENT'S POINT WITH THESE VALIDATION STUDIES,

03:51PM 15  YOUR HONOR, IS THAT IN 2013 THERANOS GOES VERY PUBLIC WITH ITS

03:51PM 16  TECHNOLOGY AND SAYS THAT WE HAVE A DEVICE THAT CAN RUN ALL OF

03:51PM 17  THE TESTS, AND WE'RE GOING TO BE COMPETING WITH LABCORP AND

03:51PM 18  QUEST AND ESSENTIALLY SAY WE'RE READY AND WE'RE NOW MAKING IT

03:51PM 19  AVAILABLE TO CONSUMERS.

03:51PM 20      WELL, IT TURNS OUT THERANOS INSIDERS, INCLUDING

03:51PM 21  DR. ROSENDORFF, INCLUDING SHEKAR CHANDRASEKARAN, INCLUDING

03:51PM 22  OTHERS WERE SAYING WE'RE NOT READY, MS. HOLMES, AND THESE

03:51PM 23  VALIDATION STUDIES ARE RUSHED AND YOU'RE PUTTING TOO MUCH

03:51PM 24  PRESSURE ON US, AND SOME OF THEM ARE NOT COMING BACK IN THE WAY

03:51PM 25  WE WANT.

03:51PM 1        AND THE THRUST OF THIS EVIDENCE IS THAT THEY ANNOUNCE THAT

03:51PM 2    THEY ARE READY WITHOUT HAVING DONE THE WORK AND WITHOUT HAVING

03:51PM 3    THE STUDIES TO BACK THEM UP.

03:51PM 4        I DON'T THINK THAT'S 404(B) EVIDENCE.  THAT WASN'T THE

03:51PM 5    BASIS FOR THE MOTION IN THE FIRST INSTANCE.  WE INCLUDE IT IN

03:52PM 6    THE NOTICE BECAUSE WE WANT TO BE TRANSPARENT ABOUT WHERE WE ARE

03:52PM 7    GOING AND WHAT WE'RE GOING TO OFFER.

03:52PM 8        BUT THESE ARE DEEPLY RELEVANT TO WHETHER OR NOT THERANOS

03:52PM 9    COULD REALLY DO WHAT IT SAID IT COULD DO WHEN IT ANNOUNCED ITS

03:52PM 10   TECHNOLOGY TO THE WORLD IN SEPTEMBER OF 2013.

03:52PM 11       SO I DON'T SEE A BASIS TO EXCLUDE THESE VALIDATION

03:52PM 12   STUDIES.

03:52PM 13       WITH RESPECT TO INDUSTRY STANDARDS, IT IS RELEVANT.  IT'S

03:52PM 14   RELEVANT BECAUSE MS. HOLMES HELD OUT TO THE WORLD HER

03:52PM 15   COMPLIANCE WITH CLIA AS PART OF THE WAY INVESTORS AND PATIENTS

03:52PM 16   COULD ENSURE THAT THE TESTS WERE ACCURATE AND RELIABLE.  SHE

03:52PM 17   PUT THAT IN A POWERPOINT TO HER BOARD MEMBERS.  SHE TOLD THAT

03:52PM 18   TO THE PRESS.

03:52PM 19       WHEN COMING UNDER SCRUTINY, SHE SAID, YOU DON'T NEED TO

03:52PM 20   WORRY ABOUT FDA REGULATION HERE.  I'M COMPLYING WITH CLIA.

03:53PM 21   THIS ENSURES THE ACCURACY AND RELIABILITY OF MY TESTING.

03:53PM 22       SO THE FACT THAT THEY ARE NOT COMPLYING WITH CLIA OR

03:53PM 23   INDUSTRY STANDARDS IS PART OF THE EVIDENCE THAT SHOWS THAT

03:53PM 24   THOSE TESTS WERE NOT ACCURATE AND RELIABLE.

03:53PM 25       IF YOU'RE NOT DOING THE THINGS THAT THE INDUSTRY HAS

03:53PM 1    AGREED ARE WHAT CONTRIBUTE TO THAT END PRODUCT, THAT'S A BRICK

03:53PM 2    IN THE WALL THAT HELPS SHOW THAT THE TESTS WERE, AT THE END OF

03:53PM 3    THE DAY, NOT ACCURATE AND NOT RELIABLE.

03:53PM 4        DR. MASTER IS EMINENTLY QUALIFIED TO TESTIFY ABOUT THESE

03:53PM 5    THINGS.  THE CMS WITNESSES ARE EMINENTLY QUALIFIED TO TALK

03:53PM 6    ABOUT THESE THINGS.

03:53PM 7        AND ALL OF THIS IS CURED WITH, TO THE EXTENT THAT THERE IS

03:53PM 8    ANY PREJUDICE -- AND I DON'T THINK THERE IS ANY PREJUDICE --

03:53PM 9    IT'S CURED WITH AN INSTRUCTION:  MS. HOLMES IS CHARGED WITH

03:53PM 10   VIOLATING THE WIRE FRAUD STATUTE.  ONE OF THE ELEMENTS IS HER

03:53PM 11   INTENT TO DECEIVE AND CHEAT.  YOU HAVE RECEIVED THIS EVIDENCE

03:53PM 12   PROFFERED BY THE GOVERNMENT AS PART OF THAT ELEMENT AND YOU'RE

03:53PM 13   NOT TO CONVICT BECAUSE OF A VIOLATION OF AN INDUSTRY STANDARD

03:54PM 14   OR SOME TYPE OF REGULATION.

03:54PM 15        THE COURT:  THIS GETS TO MY OBSERVATION THAT IT'S

03:54PM 16   IMPORTANT THAT THE JURY NOT CONVICT IN A CRIMINAL CASE WHERE A

03:54PM 17   CRIMINAL CHARGE BASED ON EVIDENCE OF CIVIL -- A VIOLATION OF A

03:54PM 18   CIVIL REGULATION, AND CERTAINLY THE GOVERNMENT WOULD NOT ARGUE

03:54PM 19   THAT TO A JURY.

03:54PM 20        MR. LEACH:  WE WOULD NOT ARGUE THAT, YOUR HONOR.  I

03:54PM 21   THINK THE COURT IS GETTING AT THE WOLF CASE AND SOME OF THE

03:54PM 22   OTHER CASES CITED BY THE DEFENDANT.

03:54PM 23        AND THERE WHERE I THINK THE GOVERNMENT WENT AWRY WAS THAT

03:54PM 24   IT WAS ARGUING THE DUTY TO DISCLOSE CAME FROM THIS CIVIL

03:54PM 25   REGULATION AND YOU COULD CONCLUDE THAT SHE MISREPRESENTED

03:54PM 1       SOMETHING TO THESE INVESTORS SIMPLY BY VIOLATING THAT

03:54PM 2       REGULATION.

03:54PM 3           THAT'S NOT WHAT WE'RE ARGUING HERE.  WE'RE ARGUING THAT

03:54PM 4       THE UNDERLYING FACTS, THE FACT THAT THEY WERE FAILING QUALITY

03:54PM 5       CONTROL SO MANY TIMES, THE FACT THAT THEY WERE RUNNING PATIENT

03:54PM 6       SAMPLES AFTER FAILING QUALITY CONTROL, THAT IS -- THAT FACTUAL

03:55PM 7       EVIDENCE IS EVIDENCE FROM WHICH A JURY COULD CONCLUDE THAT

03:55PM 8       THESE TESTS WERE NOT ACCURATE AND WERE NOT RELIABLE.

03:55PM 9           SO IT'S THE UNDERLYING FACTS, WHICH THE WITNESSES SHOULD

03:55PM 10      BE ABLE TO TALK ABOUT WHAT THEY SAW AND DID THERE, THAT THE

03:55PM 11      GOVERNMENT SEEKS TO ELICIT THAT SHE VIOLATED THIS PARTICULAR

03:55PM 12      CIVIL REGULATION AND, THEREFORE, CONVICT IS NOT AN ARGUMENT

03:55PM 13      THAT THE GOVERNMENT IS TRYING TO MAKE.

03:55PM 14                  THE COURT:  THANK YOU VERY MUCH.  THANK YOU.

03:55PM 15                  MR. LEACH:  THANK YOU, YOUR HONOR.

03:55PM 16                  THE COURT:  SO A CURATIVE INSTRUCTION, IS THAT

03:55PM 17      SUFFICIENT?

03:55PM 18                  MR. FLEURMONT:  NO, YOUR HONOR, IT'S NOT.

03:55PM 19          I'D LIKE TO PICK UP EXACTLY WHERE THE GOVERNMENT LEFT OFF.

03:55PM 20          SO THERE'S A DISTINCTION IN THE PROHIBITION OF

03:55PM 21      IMPERMISSIBLY INFECTING A TRIAL WITH CIVIL REGULATIONS IN THE

03:55PM 22      CASE LAW.

03:55PM 23          IN THE UNITED STATES VERSUS WOLF CASE, THE COURT STATED

03:55PM 24      THAT CREATING A SERIOUS RISK THAT THE JURY WOULD FIND THE

03:56PM 25      DEFENDANT GUILTY OF A REGULATION BECAUSE THEY FAILED TO COMPLY

03:56PM 1    WITH THAT REGULATION IN A CRIMINAL CASE IS GOING TO LEAD TO

03:56PM 2    REVERSIBLE ERROR.

03:56PM 3         THAT'S NOT ABOUT MAKING AN EXPLICIT STATEMENT ABOUT THE

03:56PM 4    REGULATION.  THAT'S NOT ABOUT MAKING A SPECIFIC ARGUMENT ABOUT

03:56PM 5    THE REGULATION.  THAT'S JUST ALLOWING THE REGULATION TO

03:56PM 6    IMPERMISSIBLY INFECT THE TRIAL.

03:56PM 7         THE COURT:  SO DOES THAT EVIDENCE EVER COME IN THEN?

03:56PM 8    AS MR. LEACH SUGGESTED, THE LAB DIRECTOR HAS A -- HE'S GOT AN

03:56PM 9    IMPORTANT POSITION AND PART OF THAT IS REPORTING UP THE CHAIN

03:56PM 10   OF COMMAND AND HE REPORTS DEFICIENCIES.

03:56PM 11        YOU'RE SUGGESTING THAT THAT'S NOT ADMISSIBLE.

03:56PM 12        MR. FLEURMONT:  NOT QUITE, YOUR HONOR.

03:56PM 13        I UNDERSTAND THE IMPORTANCE OF A LAB DIRECTOR,

03:56PM 14   PARTICULARLY IN THIS CASE, AND I UNDERSTAND THAT IT'S HIS DUTY

03:56PM 15   TO DO A VARIETY OF THINGS, AND ONE OF THOSE THINGS IS REPORTING

03:56PM 16   UP THE CHAIN.

03:56PM 17        WHERE WE'RE DRAWING THE LINE IS FOR A GOVERNMENT WITNESS,

03:57PM 18   LAB DIRECTOR OR NOT, ANY OF THEIR WITNESSES TO COME IN AND SAY

03:57PM 19   THIS IS THE LAW AND MY LEGAL CONCLUSION IS THAT THERANOS

03:57PM 20   VIOLATED THE LAW APPLYING THE FACTS AS THAT PERSON INTERPRETS

03:57PM 21   THEM TO THIS CASE.

03:57PM 22        THE COURT:  SO IF DR. ROSENDORFF, FOR EXAMPLE, IS

03:57PM 23   NOT PERMITTED TO SAY THAT, HE'S NOT PERMITTED TO SAY, IN MY

03:57PM 24   OPINION, THERANOS WAS VIOLATING THE LAW, BUT HE IS PERMITTED TO

03:57PM 25   TESTIFY THAT HE HAS KNOWLEDGE, BECAUSE OF HIS EDUCATION,

03:57PM  1    BACKGROUND, HE WAS HIRED AS LAB DIRECTOR, WHAT ARE THE DUTIES

03:57PM  2    AND RESPONSIBILITIES OF THAT CHAIN OF COMMAND REPORTING,

03:57PM  3    WHATEVER IT IS, AND HE SAYS, AS LAB DIRECTOR I'M FAMILIAR WITH

03:57PM  4    CLIA REGULATIONS.  AS LAB DIRECTOR I FELT THAT WE WEREN'T

03:57PM  5    FOLLOWING THOSE REGULATIONS, I REPORTED THAT.

03:58PM  6         CAN HE TESTIFY ABOUT THAT?  CAN HE SAY THAT?

03:58PM  7              MR. FLEURMONT:  YOUR HONOR, IT'S THAT MIDDLE PART

03:58PM  8    THAT I THINK IS PROHIBITED BY THE CASE LAW, THAT WE WEREN'T

03:58PM  9    FOLLOWING REGULATIONS, WE WERE IN VIOLATION OF A PARTICULAR

03:58PM  10   REGULATION.

03:58PM  11             THE COURT:  HE DOESN'T SAY VIOLATION.  HE SAID, WE

03:58PM  12   WERE NOT FOLLOWING THE REGULATIONS AS -- MAYBE HE SAYS, AS I

03:58PM  13   UNDERSTAND THEM TO BE BASED ON MY TRAINING AND EXPERIENCE AND

03:58PM  14   KNOWLEDGE AS A LAB DIRECTOR.  CAN HE SAY THAT?  CAN HE TESTIFY

03:58PM  15   AS TO -- NOT AS A LAWYER, NOT AS ANYONE WITH A LEGAL DEGREE,

03:58PM  16   BUT AS A LAB DIRECTOR, CAN HE SAY THAT?

03:58PM  17        AGAIN, PART OF HIS JOB DUTY IS TO REPORT, TO OBSERVE, TO

03:58PM  18   MAKE SURE THAT THE LAB IS IN COMPLIANCE, AND I GUESS I'M -- I

03:58PM  19   HOPE YOU CAN TELL I'M STRUGGLING A LITTLE BIT WITH WHY CAN'T

03:59PM  20   SOMEONE SAY, I WAS DOING MY JOB AND MY JOB IS TO REPORT WHAT I

03:59PM  21   BELIEVE ARE ERRORS IN THE FUNCTIONING AND THE OPERATION?

03:59PM  22        I'M NOT SAYING THAT WE'RE VIOLATING THE LAW -- OR LET ME

03:59PM  23   SAY THIS, HE WOULDN'T TESTIFY THAT, IN MY OPINION, WE WERE

03:59PM  24   VIOLATING THE LAW.  HE WOULDN'T BE PERMITTED TO SAY THAT.  HE

03:59PM  25   WOULDN'T HAVE THE BACKGROUND AS A LAWYER, AS YOU POINT OUT.

03:59PM 1    BUT A QUESTION ABOUT, WERE YOU IN COMPLIANCE WITH THE

03:59PM 2  REGULATIONS, CLIA REGULATIONS AS YOU KNEW IT?

03:59PM 3    NO.

03:59PM 4    WHY?

03:59PM 5    WELL, THE REGULATIONS REQUIRE TESTING THREE TIMES A DAY AT

03:59PM 6  X AMOUNT OF HOURS.

03:59PM 7    WERE YOU DOING THAT?

03:59PM 8    NO.

03:59PM 9    IS THAT PERMITTED?

03:59PM 10    MR. FLEURMONT:  WELL, YOUR HONOR, THE STRUGGLE I

03:59PM 11  THINK WITH THIS QUESTION IS THAT AS THE GOVERNMENT POINTED TO

03:59PM 12  EXHIBIT 24, I TOOK ANOTHER LOOK AT IT AND IN IT HE SAYS, AND I

03:59PM 13  QUOTE, AS OF TODAY WE ARE IN VIOLATION OF THE STANDARD.

03:59PM 14    THE COURT:  SURE.

03:59PM 15    MR. FLEURMONT:  SO IT'S DIFFICULT TO WORK WITH THAT

04:00PM 16  HYPOTHETICAL KNOWING THAT THE TESTIMONY THAT THEY SEEK TO ADMIT

04:00PM 17  IS, AND I QUOTE, WE ARE IN VIOLATION OF THE STANDARD.

04:00PM 18    BUT TO ANSWER THE COURT'S QUESTION, IT'S OUR POSITION THAT

04:00PM 19  FOR ANY GOVERNMENT EXPERT, REGARDLESS IF IT'S DR. ROSENDORFF OR

04:00PM 20  DR. MASTER OR ANY EXPERT, TO COME IN AND SAY, HERE'S THE LAW,

04:00PM 21  HERE'S HOW THERANOS VIOLATED IT, AND THIS IS MY LEGAL

04:00PM 22  CONCLUSION, IT'S CLEARLY IMPERMISSIBLE UNDER THE CASE LAW.

04:00PM 23    NOW, EVEN IF THE COURT WERE TO DISAGREE, WE DO HAVE OUR

04:00PM 24  RELEVANCE OBJECTIONS, AND AS I STATED BEFORE, THIS GOES BACK TO

04:00PM 25  TWO OF THE GOVERNMENT WITNESSES EXPLICITLY STATING THAT -- ONE,

04:00PM 1    THE FIRST BEING DR. MASTER, THAT THE VIOLATION OF INDUSTRY

04:00PM 2    STANDARDS COULD POTENTIALLY LEAD TO AN ISSUE WITH ACCURACY AND

04:00PM 3    RELIABILITY AND DOESN'T DRAW THAT CLEAR CONNECTION, AND THIS IS

04:00PM 4    THE GOVERNMENT'S RETAINED EXPERT.

04:00PM 5         AND NOW WE HAVE THE GOVERNMENT'S CMS WITNESS WHO SAYS THAT

04:01PM 6    IT'S NOT CMS'S JOB TO PASS ON THE ACCURACY AND RELIABILITY OF

04:01PM 7    THE TEST JUST TO SEE IF THERANOS IS FOLLOWING ITS OWN

04:01PM 8    STANDARDS.

04:01PM 9              THE COURT:  SO MAY I STOP YOU AND ASK MR. LEACH,

04:01PM 10   MR. LEACH, IS IT YOUR INTENT TO ASK DR. ROSENDORFF WHETHER OR

04:01PM 11   NOT, IN HIS OPINION, THE LAB WAS VIOLATING THE LAW AND HIM TO

04:01PM 12   SAY, THIS IS MY LEGAL CONCLUSION?

04:01PM 13             MR. LEACH:  I WOULDN'T ASK HIM IF THAT WAS HIS LEGAL

04:01PM 14   CONCLUSION, YOUR HONOR.

04:01PM 15        I WOULD ASK HIM, WAS THERANOS COMPLYING WITH THE STANDARD?

04:01PM 16   WAS THERANOS MEETING THE CONDITIONS THAT IT WAS OBLIGATED TO

04:01PM 17   MEET?

04:01PM 18        I CERTAINLY WOULDN'T FRAME IT IN TERMS OF VIOLATION OF THE

04:01PM 19   CRIMINAL CODE.

04:01PM 20        BUT I COME BACK TO THIS IDEA, YOUR HONOR, ALL OF THE CASES

04:01PM 21   THEY'RE TALKING ABOUT IN TERMS OF IMPERMISSIBLE LEGAL OPINION

04:01PM 22   ARE REALLY WHEN A RETAINED EXPERT COMES IN AND TRIES TO

04:01PM 23   ESSENTIALLY USURP YOUR HONOR'S ROLE IN TELLING THE JURY WHAT

04:02PM 24   THE LAW IS.

04:02PM 25        THIS EVIDENCE IS RELEVANT BECAUSE IT'S COMMUNICATED TO THE

04:02PM 1    DEFENDANT IN REAL TIME, AND IT'S HER REACTION TO THIS THAT

04:02PM 2    MATTERS.

04:02PM 3          DOES SHE SHOW DR. ROSENDORFF THE TEN REASONS WHY THEY

04:02PM 4    ACTUALLY WERE COMPLYING?  NO.  EVERYBODY AGREES THAT THEY

04:02PM 5    WEREN'T AND SHE SAYS, WE'RE GOING TO FIX THIS, WE'RE GOING TO

04:02PM 6    FIX THIS.

04:02PM 7          AND THEN IT COMES UP AGAIN IN MARCH OF 2014, AND WHAT DOES

04:02PM 8    SHE DO?  NOTHING.

04:02PM 9          AND THEN IT ULTIMATELY COMES TO A PEAK IN NOVEMBER OF

04:02PM 10   2015.

04:02PM 11         AND SO I CAN'T GLEAN FROM ANY OF THE CASES THAT THEY

04:02PM 12   CITED, PARTICULARLY IN LIGHT OF GRAPH AND MCCLAREN, THIS IDEA

04:02PM 13   THAT A LAY WITNESS, WHEN THEY'RE RAISING RED FLAGS -- IMAGINE

04:02PM 14   THE WHISTLEBLOWER WHO GOES TO THE CEO AND SAYS, WE'RE DOING

04:02PM 15   THESE 15 THINGS WRONG IN THE BANK.  I'M NOT A LAWYER, BUT I'VE

04:02PM 16   BEEN AT THE BANK FOR 20 YEARS AND THIS MAKES ME FEEL BAD.

04:02PM 17         NOBODY WOULD SUGGEST THAT THAT DOESN'T COME IN AS

04:03PM 18   KNOWLEDGE OF THE CEO'S INTENT.

04:03PM 19         THEY'RE REALLY CRAFTING A RULE THAT WOULD EXCLUDE ANY TYPE

04:03PM 20   OF RED FLAG EVIDENCE THAT IS COUCHED IN TERMS OF A LEGAL

04:03PM 21   OPINION, AND THERE IS OVERLAP IN THE RESPONSIBILITIES THAT

04:03PM 22   DR. ROSENDORFF HAS AS THE LAB DIRECTOR.  IT'S HIS JOB TO COMPLY

04:03PM 23   WITH THESE, YOU KNOW, IN ADDITION TO THE OWNER.

04:03PM 24         SO I THINK ALL OF THESE ISSUES ARE CURED WITH A GOOD JURY

04:03PM 25   INSTRUCTION AND CROSS-EXAMINATION.

04:03PM 1      YOU'RE NOT A LAWYER, ARE YOU, DR. ROSENDORFF?  YOU DON'T

04:03PM 2  KNOW HOW MANY LAWYERS MS. HOLMES TALKED TO, DO YOU,

04:03PM 3  DR. ROSENDORFF?

04:03PM 4      AND IT REALLY GOES TO THE WEIGHT OF WHAT HE'S SAYING, NOT

04:03PM 5  SOME CONTRAVENTION OF THE RULE THAT THIS IS IMPERMISSIBLE LEGAL

04:03PM 6  OPINION.  I JUST DON'T THINK THAT YOU CAN FIND THAT IN THE

04:03PM 7  CASES, AND THESE WERE THE WORDS THAT HE USED IN THE MOMENT TO

04:03PM 8  MR. BALWANI AND ULTIMATELY TO MS. HOLMES.

04:03PM 9          THE COURT:  RIGHT.  I APPRECIATE THAT.

04:03PM 10      I THINK, TO MR. FLEURMONT'S POINT, HIS CONCERN IS THAT THE

04:04PM 11  JURY MIGHT FIND, OR THE COURT WOULD ALLOW DR. ROSENDORFF, WHO

04:04PM 12  WE ARE TALKING ABOUT HERE, TO TESTIFY AS TO A LEGAL OPINION,

04:04PM 13  HIS LEGAL OPINION OF A VIOLATION OF THE LAW, AS OPPOSED TO

04:04PM 14  WHETHER THE LAB IS FOLLOWING THE REGULATIONS THAT THEY'RE

04:04PM 15  SUPPOSED TO FOLLOW.

04:04PM 16      I GUESS WHAT I'M SUGGESTING IS, ARE THOSE TWO DIFFERENT

04:04PM 17  THINGS, OR AREN'T THOSE THE SAME THINGS?

04:04PM 18          MR. FLEURMONT:  YOUR HONOR, WE SUBMIT THAT THOSE ARE

04:04PM 19  TWO VERY DIFFERENT THINGS.

04:04PM 20          THE COURT:  AND IF THE COURT WERE TO SAY YOUR

04:04PM 21  WITNESS IS NOT PERMITTED TO GIVE ANY LEGAL CONCLUSION?

04:04PM 22          MR. FLEURMONT:  YOUR HONOR, I DON'T THINK THAT'S

04:04PM 23  CLEAR ENOUGH GUIDANCE FOR THE WITNESS.  I THINK WE NEED TO

04:04PM 24  UNPACK THAT A LITTLE BIT, BECAUSE AS YOU CAN SEE IN THE

04:04PM 25  EXHIBITS, HE WANTS TO GIVE LEGAL CONCLUSIONS.  HE'S DONE IT

04:04PM 1    ALREADY.

04:04PM 2         AND I DID NOT HEAR MR. LEACH SAY THAT IT WOULD BE

04:04PM 3    IMPERMISSIBLE FOR HIM TO SAY, DR. ROSENDORFF, FOR HIM TO SAY

04:05PM 4    EXACTLY WHAT HE SAID IN THAT EXHIBIT, WHICH IS, WE ARE IN

04:05PM 5    VIOLATION OF THE STANDARD, WHICH I THINK UNDER THE CASE LAW IS

04:05PM 6    CLEARLY IMPERMISSIBLE.

04:05PM 7              THE COURT:  SO IF THE POINT IS, IN HIS OPINION AS

04:05PM 8    THE LAB DIRECTOR, THAT THE LAB WAS NOT FOLLOWING THE

04:05PM 9    REGULATIONS, OPERATIONAL, WE WERE NOT FOLLOWING THE

04:05PM 10   REGULATIONS.

04:05PM 11        WHY WEREN'T YOU?  WHAT DO THE REGULATIONS REQUIRE YOU TO

04:05PM 12   DO?

04:05PM 13        X, Y, Z, WHATEVER THEY ARE.

04:05PM 14        AND WERE YOU DOING THOSE THINGS?

04:05PM 15        NO, WE WEREN'T.  AND THAT'S CLIA.  I KNOW CLIA.  I'VE

04:05PM 16   LIVED WITH CLIA IN MY 30 YEARS OF EXPERIENCE, ET CETERA,

04:05PM 17   WHATEVER HE SAYS.

04:05PM 18        ISN'T THAT PERMISSIBLE?

04:05PM 19        AND THEN IF THE COURT WERE TO ADVISE THE JURY, THIS IS NOT

04:05PM 20   A LEGAL OPINION, THIS IS THE DIRECTOR'S OPINION ONLY AS TO

04:05PM 21   WHETHER THE LAB WAS FOLLOWING THE REGULATIONS AS HE UNDERSTOOD

04:05PM 22   THEM, AND THAT WOULD BE TESTED BY CROSS-EXAMINATION.

04:06PM 23        AND IF THE COURT WERE TO GIVE AN INSTRUCTION BOTH AT THE

04:06PM 24   TIME OF THE EVIDENCE, AS WELL AS IN A FINAL INSTRUCTION, THAT

04:06PM 25   THE JURY MAY NOT, THEY'RE NOT PERMITTED TO USE ANY ALLEGED

04:06PM  1    VIOLATIONS OF A REGULATION IN THEIR DELIBERATION OF A CRIMINAL

04:06PM  2    STATUTE, VIOLATION OF A CRIMINAL STATUTE, ISN'T THAT

04:06PM  3    PROPHYLACTIC ENOUGH TO PROVIDE THE JURY AND PROVIDE YOU SOME

04:06PM  4    ASSURANCE THAT THEY WON'T DO THAT?

04:06PM  5              MR. FLEURMONT:  SO, YOUR HONOR, I THINK WE'RE ALMOST

04:06PM  6    THERE.  BUT I THINK THERE ARE TWO ISSUES BAKED INTO THAT

04:06PM  7    HYPOTHETICAL, ONE THAT IS, I THINK, MOSTLY TAKEN CARE OF BY

04:06PM  8    THAT HYPOTHETICAL, AND ONE THAT IS NOT.

04:06PM  9         SO THE FIRST ONE IS THAT THE WAY YOU EXPLAINED, THE WAY HE

04:06PM  10   JUST WENT THROUGH THE REGULATIONS.  I THINK THAT THAT SOLVES

04:06PM  11   THE LEGAL CONCLUSION ISSUE, BUT IT DOES NOT SOLVE THE RELEVANCE

04:06PM  12   AND THE PREJUDICE ISSUE WHICH I THINK IS WHAT THE COURT WAS

04:06PM  13   TALKING ABOUT ON THE BACK END WITH THE CURATIVE INSTRUCTION.

04:06PM  14        YOUR HONOR, WE SUBMIT THAT THAT CURATIVE INSTRUCTION, I

04:07PM  15   GUESS IS WHERE I STARTED ON REBUTTAL, IS THAT IT'S NOT ENOUGH

04:07PM  16   BECAUSE, AS I WAS SAYING, THERE'S A DISTINCTION IN THE CASE

04:07PM  17   LAW.  ONE IS WHEN YOU IMPERMISSIBLY INFECT THE TRIAL WITH

04:07PM  18   GOVERNMENT REGULATIONS, AND THE OTHER IS WHEN YOU TRY TO TAKE

04:07PM  19   AN ELEMENT OF THE OFFENSE AND YOU SUBSTITUTE THAT WITH A

04:07PM  20   VIOLATION OF A REGULATION.

04:07PM  21        I THINK THAT IS WHAT MR. LEACH WAS GETTING AT WHEN HE WAS

04:07PM  22   TALKING ABOUT SOME OF THE CASES.

04:07PM  23        THAT, YOUR HONOR, IS NOT THE WOLF CASE WHICH TALKS ABOUT

04:07PM  24   THE FORMER.  THAT IS THE -- LET ME MAKE SURE AND GRAB THAT.  I

04:07PM  25   BELIEVE IT'S THE EAGLE WHITE CASE.  YEAH, THIS IS UNITED STATES

04:07PM 1    VERSUS -- I'M SORRY, NOT EAGLE WHITE, WHITE EAGLE, THAT'S

04:07PM 2    721 F.3D 1108.  IN THAT CASE, THE NINTH CIRCUIT MADE VERY CLEAR

04:07PM 3    THAT IT'S IMPERMISSIBLE TO USE VIOLATION OF A CIVIL STATUTE TO

04:07PM 4    IPSO FACTO SUPPLY A CRUCIAL ELEMENT OF A CRIMINAL OFFENSE,

04:07PM 5    WHICH IS DIFFERENT FROM REPEATEDLY REFERENCING CLIA REGULATIONS

04:07PM 6    OR CIVIL REGULATIONS AND HAVING THE JURY KIND OF INFER THAT

04:08PM 7    BECAUSE THESE REGULATIONS WERE VIOLATED, THERE WAS A VIOLATION

04:08PM 8    OF THE CRIMINAL OFFENSE FOR WHICH MS. HOLMES IS CHARGED.

04:08PM 9        SO OUR POSITION IS THAT A CURATIVE INSTRUCTION WOULD NOT

04:08PM 10   BE ENOUGH.

04:08PM 11       IF WE REACH A POINT THAT WE HAVE A CRITICAL MASS, IF YOU

04:08PM 12   WILL, A DISCUSSION OF CLIA REGULATIONS, BECAUSE AT THAT POINT

04:08PM 13   THERE'S A SERIOUS RISK THAT THE JURY WILL THINK, WELL, BECAUSE

04:08PM 14   THESE VIOLATIONS -- EXCUSE ME, BECAUSE THESE REGULATIONS WERE

04:08PM 15   VIOLATED, SHE MUST HAVE DONE SOMETHING WRONG AND SHE MUST HAVE

04:08PM 16   VIOLATED THE CHARGE FOR WHICH SHE'S CHARGED.

04:08PM 17           THE COURT:  SO SHOULD THE COURT BE CONCERNED ABOUT

04:08PM 18   WHETHER THAT IS THE ONLY EVIDENCE THAT THE GOVERNMENT HAS, AS

04:08PM 19   OPPOSED TO, IS THERE ADDITIONAL EVIDENCE THAT THE JURY COULD

04:08PM 20   USE IN THEIR CONSIDERATION?

04:08PM 21       IN OTHER WORDS, IF IT WAS JUST CIVIL REGULATIONS THAT WERE

04:08PM 22   VIOLATED AND THE GOVERNMENT SEEKS A CONVICTION BASED PRIMARILY

04:08PM 23   ON THAT, THAT WOULD BE ONE ISSUE.

04:08PM 24       BUT IF THE GOVERNMENT HAS OTHER EVIDENCE, AND MR. LEACH

04:08PM 25   WILL TELL US IN JUST A MOMENT WHETHER THEY DO HAVE OTHER

04:09PM 1    EVIDENCE, THAT IT WOULD BE FOR THE JURY TO CONSIDER AND TO

04:09PM 2    DELIBERATE IN ADDITION TO THIS PIECE OF EVIDENCE WHICH

04:09PM 3    MR. LEACH TELLS US IS REALLY FOR THE ISSUE OF PERHAPS

04:09PM 4    KNOWLEDGE, NOTICE, AND INTENT.

04:09PM 5         DOES THAT DELETE THAT ARGUMENT SOMEWHAT?

04:09PM 6         MR. FLEURMONT:  IT AFFECTS THE ARGUMENT, YOUR HONOR,

04:09PM 7    BUT IT'S NOT ENOUGH.

04:09PM 8         I THINK WHAT YOU REFERENCED IS TWO SITUATIONS, ONE NOT AS

04:09PM 9    BAD AS THE OTHER, BUT BOTH TERRIBLE IN A SENSE THAT IF IT'S THE

04:09PM 10   GOVERNMENT'S ONLY EVIDENCE THAT THERE IS VIOLATIONS OF CLIA

04:09PM 11   REGULATIONS TO SUPPORT ITS BROAD ALLEGATION THAT THERANOS --

04:09PM 12   SORRY, I UNDERSTAND I'M SPEAKING TOO FAST -- THAT THERANOS WAS

04:09PM 13   NOT ABLE TO CONSISTENTLY PRODUCE ACCURATE AND RELIABLE RESULTS,

04:09PM 14   THEN, OF COURSE, YOUR HONOR, WE WOULD FILE A RULE 29 MOTION AND

04:09PM 15   THAT WOULD BE THE FEATURE OF THE MOTION.

04:09PM 16        JUST BECAUSE THERE'S OTHER EVIDENCE DOES NOT REMOVE THE

04:09PM 17   TAINT OR THE INFECTION IN THE TRIAL.

04:09PM 18        IT'S NOT AS BAD AS THE FORMER, BUT THEY'RE BOTH -- WE

04:10PM 19   SUBMIT THAT BOTH WOULD BE A TERRIBLE RESULT AND LEAD TO ERROR

04:10PM 20   IN THIS TRIAL.

04:10PM 21        THE COURT:  IT'S PROBABLY DIFFICULT FOR A LAWYER TO

04:10PM 22   TALK ABOUT ERROR IN A CASE WHEN YOU'VE GOT A JUDGE IN FRONT OF

04:10PM 23   YOU.  YES, I REMEMBER THOSE AWKWARD CONVERSATIONS, AND NO

04:10PM 24   OFFENSE TAKEN.  I APPRECIATE THE CONVERSATION.

04:10PM 25        MR. FLEURMONT:  THANK YOU, YOUR HONOR.

04:10PM 1          THE COURT:  MR. LEACH.

04:10PM 2          MR. LEACH:  I LIKE THE HYPOTHETICAL THAT THE COURT

04:10PM 3    HAD BEEN CRAFTING, SO THAT'S MY POSITION ON THAT.

04:10PM 4       THE GOVERNMENT IS NOT ARGUING THAT BECAUSE MS. HOLMES

04:10PM 5    VIOLATED OR THERANOS VIOLATED 42 CFR, THAT YOU MAY CONVICT HER

04:10PM 6    OF WIRE FRAUD.

04:10PM 7       WHAT THE GOVERNMENT IS SAYING IS IF THERANOS WAS NOT

04:10PM 8    MEETING THE STANDARD SET FORTH IN THAT REGULATION AND THE CMS

04:10PM 9    INSPECTORS GO IN AND SEE THAT THERE'S THIS MANY NUMBER OF

04:10PM 10   QUALITY CONTROL FAILURES AND THIS MANY INSTANCES WHERE THEY'RE

04:11PM 11   REPORTING PATIENT RESULTS AFTER QUALITY CONTROL FAILURES, THAT

04:11PM 12   IS A PIECE OF EVIDENCE FROM WHICH A JURY COULD CONCLUDE

04:11PM 13   THERANOS'S TESTS WERE NOT ACCURATE AND RELIABLE.

04:11PM 14      IN ADDITION TO THE VOIDING, IN ADDITION TO THE ACCOUNTS OF

04:11PM 15   PATIENTS, IN ADDITION TO INNUMERABLE EMAILS TO MS. HOLMES

04:11PM 16   TELLING HER ABOUT PROBLEMS WITH THE TESTS, IN ADDITION TO

04:11PM 17   STATEMENTS FROM HER OWN INSIDERS THAT WE NEED TO STOP USING THE

04:11PM 18   EDISON DEVICE FOR CERTAIN TESTS, IN ADDITION TO EVIDENCE THAT

04:11PM 19   AT THE TIME THAT CMS HAD COME IN, THEY HAD COMPLETELY STOPPED

04:11PM 20   USING THE EDISON FOR ANYTHING, ALL OF THAT IS SUFFICIENT FOR A

04:11PM 21   JURY TO REACH A CONCLUSION.

04:11PM 22      BUT THE GOVERNMENT IS NOT SAYING MERE VIOLATION OF A CIVIL

04:11PM 23   REGULATORY SCHEME IS ENOUGH.  BUT IF YOU'RE TOLD ABOUT THESE

04:11PM 24   VIOLATIONS -- WHICH DON'T EXIST IN A VACUUM, THEY EXIST TO

04:11PM 25   ENSURE ACCURACY AND RELIABILITY -- AND YOU IGNORE THEM AND YOU

04:12PM 1    FORCE OUT THE LAB DIRECTOR WHO WAS RAISING THOSE PROBLEMS,

04:12PM 2    THAT'S SUGGESTIVE OF AN INTENT TO DEFRAUD.

04:12PM 3        THAT'S WHAT THE GOVERNMENT IS ARGUING.

04:12PM 4            THE COURT:  YOU GET THE LAST WORD.  IT'S YOUR

04:12PM 5    MOTION, MR. FLEURMONT.

04:12PM 6            MR. FLEURMONT:  I WON'T KEEP THE COURT ANY LONGER.

04:12PM 7    THANK YOU, YOUR HONOR.

04:12PM 8            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

04:12PM 9    YOU.

04:12PM 10           MR. LEACH:  THANK YOU, YOUR HONOR.

04:12PM 11           THE COURT:  ALL RIGHT.  THIS ONE IS UNDER SUBMISSION

04:12PM 12   AND, AS I SAID, I WISH TO GET WRITTEN ORDERS OUT TO YOU AFTER

04:12PM 13   WE'VE FINISHED ALL OF THE MOTIONS.

04:12PM 14       I THINK WE'RE FINISHED FOR THE DAY.  WE'RE ALMOST ON TIME.

04:12PM 15   IT'S ABOUT QUARTER PAST THE HOUR.

04:12PM 16       ANYTHING ELSE THAT EITHER SIDE WISHES TO RAISE TO THE

04:12PM 17   COURT AT THIS TIME ON ANY ISSUE?

04:12PM 18           MR. SCHENK:  NO, YOUR HONOR.  THANK YOU.

04:12PM 19           MS. SAHARIA:  NOT FROM US.

04:12PM 20           THE COURT:  ALL RIGHT.  THANK YOU.

04:12PM 21       MS. KRATZMANN, ARE WE MEETING AT 9:00 O'CLOCK TOMORROW

04:12PM 22   MORNING?

04:12PM 23           THE CLERK:  I BELIEVE SO, YOUR HONOR.  9:00 A.M.

04:12PM 24           THE COURT:  DOES THAT WORK FOR EVERYONE'S SCHEDULE?

04:13PM 25           MS. SAHARIA:  YES.

04:13PM  1          THE COURT:  ALL RIGHT.  GREAT.  HAVE A GOOD EVENING.

04:13PM  2          MS. SAHARIA:  YOU, TOO.

04:13PM  3          THE COURT:  THANK YOU.

04:13PM  4          THE CLERK:  COURT IS ADJOURNED FOR THE DAY.

04:13PM  5      (COURT ADJOURNED AT 4:13 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16                    _____
                      IRENE RODRIGUEZ, CSR, CRR
17                    CERTIFICATE NUMBER 8076

18

19                    _____
                      LEE-ANNE SHORTRIDGE, CSR, CRR
20                    CERTIFICATE NUMBER 9595

21                    DATED:  MAY 7, 2021

22

23

24

25