UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


UNITED STATES OF AMERICA,           )
                                    )  CR-18-00258-EJD
            PLAINTIFF,              )
                                    )  SAN JOSE, CALIFORNIA
      VS.                           )
                                    )  JULY 7, 2021
ELIZABETH A. HOLMES,                )
                                    )  PAGES 1 - 79
            DEFENDANT.              )
_____     )
                                    )


TRANSCRIPT OF ZOOM PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                       BY:   JOHN C. BOSTIC
                             JEFFREY B. SCHENK
                       150 ALMADEN BOULEVARD, SUITE 900
                       SAN JOSE, CALIFORNIA 95113

                       BY:  ROBERT S. LEACH
                            KELLY VOLKAR
                       1301 CLAY STREET, SUITE 340S
                       OAKLAND, CALIFORNIA 94612

        (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTER:
                       IRENE L. RODRIGUEZ, CSR, RMR, CRR
                       CERTIFICATE NUMBER 8074

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                         BY:  KEVIN M. DOWNEY
                              LANCE A. WADE
                              KATHERINE TREFZ
                              AMY SAHARIA
                              RICHARD CLEARY
                         725 TWELFTH STREET, N.W.
                         WASHINGTON, D.C. 20005

                         LAW OFFICE OF JOHN D. CLINE
                         BY:  JOHN D. CLINE
                         ONE EMBARCADERO CENTER, SUITE 500
                         SAN FRANCISCO, CALIFORNIA 94111

```
 1    SAN JOSE, CALIFORNIA                    JULY 7, 2021

 2                  P R O C E E D I N G S

 3         (COURT CONVENED AT 10:10 A.M.)

 4              THE COURT:  THANK YOU.  GOOD MORNING EVERYONE.

 5         LET'S CALL OUR MORNING MATTER.  THIS IS 18-258,

 6    UNITED STATES VERSUS ELIZABETH HOLMES.

 7         LET ME FIRST GET APPEARANCES OF THE PARTIES, PLEASE.

 8         WHO APPEARS FOR THE GOVERNMENT TODAY?

 9              MR. BOSTIC:  GOOD MORNING, YOUR HONOR.

10         JOHN BOSTIC FOR THE UNITED STATES ALONG WITH ROBERT LEACH,

11    JEFF SCHENK, AND KELLY VOLKAR.

12              THE COURT:  THANK YOU.  GOOD MORNING EVERYONE.

13         WHO APPEARS FOR THE DEFENDANT?

14              MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

15         THIS IS AMY SAHARIA FOR MS. HOLMES.  WITH ME IS

16    KEVIN DOWNEY, LANCE WADE, KATHERINE TREFZ, JOHN CLINE.

17         I WILL NOTE THAT MY COLLEAGUE, RICH CLEARY, IS HERE IN

18    THIS ROOM WITH ME BUT IS NOT APPEARING ON VIDEO.

19         AND MS. HOLMES IS PRESENT.  I SEE HER ON THE SCREEN.

20         WE DO HAVE A MECHANISM FOR COMMUNICATING WITH HER IF NEED

21    BE, AND SHE DOES CONSENT TO PROCEEDING REMOTELY TODAY.

22              THE COURT:  THANK YOU.  THANK YOU FOR THAT.  GOOD

23    MORNING EVERYONE.

24         THIS IS THE DATE AND TIME THAT WAS SET FOR THE MOTION.

25    THIS INVOLVES DOCKETS 810.  IT'S PLAINTIFF'S -- EXCUSE ME --
```

The timestamps in the left margin read 10:10AM for lines 3 through 14, and 10:11AM for lines 15 through 25.

10:11AM 1    ELIZABETH HOLMES'S MOTION TO SUPPRESS EVIDENCE.  THERE'S AN

10:11AM 2    OPPOSITION AT 846 AND A REPLY AT 850.  THESE ARE ALL DOCKETS.

10:11AM 3    I HAVE READ AND REVIEWED ALL OF THOSE DOCKETS, THE ATTACHMENTS

10:12AM 4    AND REFERENCES THERETO.

10:12AM 5        ARE THERE ANY OTHER DOCUMENTS THAT COUNSEL WISH TO DRAW TO

10:12AM 6    MY ATTENTION BEFORE WE GO FURTHER?

10:12AM 7        ANYTHING?

10:12AM 8            MS. SAHARIA:  NO, YOUR HONOR.

10:12AM 9        I WOULD JUST NOTE THAT OUR MOTION DOES CROSS-REFERENCE OUR

10:12AM 10   REPLY BRIEF IN SUPPORT OF OUR MOTION IN LIMINE TO EXCLUDE

10:12AM 11   ANECDOTAL EVIDENCE AND THE EXHIBITS ATTACHED TO THAT REPLY

10:12AM 12   BRIEF, AND SOME OF THOSE EXHIBITS MAY BE REFERENCED TODAY AS

10:12AM 13   WELL.

10:12AM 14           THE COURT:  ALL RIGHT.  THANK YOU.

10:12AM 15           MR. BOSTIC:  NO ADDITIONAL FILINGS FROM THE

10:12AM 16   GOVERNMENT.  THANK YOU, YOUR HONOR.

10:12AM 17           THE COURT:  THANK YOU.

10:12AM 18       SO THIS IS A MOTION TO SUPPRESS FILED.  THE FIRST THING I

10:12AM 19   WANTED TO ASK IS ARE WE PAST THE DEADLINE TO FILE RULE 12

10:12AM 20   MOTIONS TO SUPPRESS?  HAS THAT COME AND GONE?

10:12AM 21       WHO WANTS TO ANSWER THAT?  MR. BOSTIC?

10:12AM 22           MS. SAHARIA:  SO, YOUR HONOR --

10:12AM 23           THE COURT:  OH, YES, MS. SAHARIA.  YES.  THANK YOU.

10:12AM 24           MS. SAHARIA:  YES.  I'LL TAKE THAT.

10:12AM 25       SO, YOUR HONOR, THE DEADLINE FOR RULE 12 MOTIONS WAS IN

10:13AM 1    AUGUST OF 2020, BUT THAT MOTION -- THE DEADLINE FOR FILING

10:13AM 2    RULE 12 MOTIONS APPLIES ONLY WHEN THE MOTION IS REASONABLY

10:13AM 3    AVAILABLE AT THE TIME.  THIS MOTION WAS NOT REASONABLY

10:13AM 4    AVAILABLE AT THE TIME BECAUSE THE EVIDENCE ON WHICH IT IS BASED

10:13AM 5    WAS NOT AVAILABLE TO THE DEFENSE OR PRODUCED AT THAT TIME.

10:13AM 6        THE GOVERNMENT FIRST PRODUCED ITS BRADY LETTER DISCLOSING

10:13AM 7    ITS RULE IN THE LOSS OF LIS ONLY IN OCTOBER OF 2020 AND MUCH OF

10:13AM 8    THE EVIDENCE ON WHICH THE MOTION IS BASED HAS BEEN TRICKLED OUT

10:13AM 9    FROM THE GOVERNMENT IN THE MONTHS SINCE THEN.

10:13AM 10       JUST TO GIVE ONE EXAMPLE, OR TWO EXAMPLES.  WE LITIGATED

10:13AM 11   THE MOTION TO EXCLUDE ANECDOTAL TEST RESULTS AT A TIME WHEN THE

10:13AM 12   GOVERNMENT WAS WITHHOLDING SIGNIFICANT EVIDENCE RELATED TO ITS

10:13AM 13   ROLE IN THE LOSS OF THE LIS DATABASE, WHICH IS WHY THE

10:14AM 14   GOVERNMENT ITSELF WAS FORCED TO CONSENT TO OUR EXTENSION OF

10:14AM 15   TIME TO FILE A REPLY BRIEF GIVEN ITS LATE PRODUCTION OF

10:14AM 16   INFORMATION RELATED TO THESE EVENTS.

10:14AM 17       JUST AS ANOTHER EXAMPLE, THE GOVERNMENT MADE ANOTHER

10:14AM 18   PRODUCTION RELEVANT TO THIS MOTION ONLY IN MARCH OF THIS YEAR,

10:14AM 19   ON MARCH 30TH, AND I WOULD NOTE THAT SOME OF THOSE DOCUMENTS

10:14AM 20   HAVE BEEN IN THE GOVERNMENT'S POSSESSION SINCE DECEMBER.

10:14AM 21       SO WHILE WE WERE LITIGATING THE REPLY BRIEF AND

10:14AM 22   SUPPORTIVE -- OR THE ANECDOTAL EVIDENCE MOTION, THE GOVERNMENT

10:14AM 23   WAS WITHHOLDING DOCUMENTS RELEVANT TO THESE ISSUES.

10:14AM 24       SO WE THINK THIS MOTION WAS NOT REASONABLY AVAILABLE BACK

10:14AM 25   IN AUGUST OF 2020.  EVEN IF IT WAS, WE THINK THESE EVENTS

10:14AM  1    SURELY CONSTITUTE GOOD CAUSE FOR FILING THE MOTION NOW.  AND AS

10:14AM  2    YOU KNOW, YOUR HONOR, WE MOVED TO EXCLUDE THE GOVERNMENT'S

10:14AM  3    ANECDOTAL EVIDENCE UNDER THE RULES OF EVIDENCE.

10:15AM  4         THE COURT RULED ON THAT MOTION ONLY IN MAY FOLLOWING THE

10:15AM  5    MAY HEARING.  WE DID PREVIEW, AS WE WERE LITIGATING THOSE

10:15AM  6    ISSUES, THAT IF THIS EVIDENCE WERE TO BE DEEMED RELEVANT, THAT

10:15AM  7    WOULD RAISE DUE PROCESS CONCERNS.  THOSE DUE PROCESS CONCERNS

10:15AM  8    ARE NOW RIPE, WHICH IS WHY WE FILED THE MOTION NOW.

10:15AM  9         AND JUST AS A FINAL POINT ON THIS, YOUR HONOR, THE

10:15AM 10    GOVERNMENT CLAIMS THAT THE MOTION IS UNTIMELY ONLY IN A

10:15AM 11    FOOTNOTE OF THEIR BRIEF.  I THINK IT'S WELL ESTABLISHED THAT

10:15AM 12    FOOTNOTES ARE NOT SUFFICIENT TO PRESERVE AN ISSUE, AND I THINK

10:15AM 13    IF THE GOVERNMENT REALLY THOUGHT THE MOTION WAS UNTIMELY, YOU

10:15AM 14    WOULD EXPECT THAT ARGUMENT TO BE FULLY PRESENTED TO THE COURT,

10:15AM 15    WHICH IT WAS NOT.

10:15AM 16         THE COURT:  ALL RIGHT.  THANK YOU.

10:15AM 17       MR. BOSTIC, DO YOU WISH TO BE HEARD?

10:15AM 18         MR. BOSTIC:  YES, YOUR HONOR.  THANK YOU.  JUST

10:15AM 19    BRIEFLY.

10:15AM 20       ON THE LAST POINT, THE GOVERNMENT CHOSE TO MEET THIS

10:15AM 21    MOTION ON THE MERITS BECAUSE I THINK, AS WE'LL SEE SHORTLY, THE

10:15AM 22    GOVERNMENT HAS THE STRONGER ARGUMENT ON THE LAW AND THE FACTS,

10:15AM 23    BUT ON THE PROCEDURAL POINT, THE GOVERNMENT DOESN'T AGREE THAT

10:16AM 24    THIS MOTION IS TIMELY.

10:16AM 25       THE KEY FACTS THAT WOULD HAVE PUT THE DEFENSE ON NOTICE OF

10:16AM  1    THE CAUSE FOR BRINGING THIS MOTION OR WOULD HAVE LED THE

10:16AM  2    DEFENSE TO KNOW THAT SUCH A MOTION WAS POSSIBLE OR COLORABLE

10:16AM  3    WERE KNOWN TO THE DEFENSE LONG BEFORE THIS MOTION WAS FILED.

10:16AM  4        THE GOVERNMENT HAS CONTINUED TO COLLECT EVIDENCE RELEVANT

10:16AM  5    TO THESE ISSUES AS PART OF ITS ONGOING INVESTIGATION AND HAS

10:16AM  6    PRODUCED THOSE MATERIALS, SOME OF THEM SUBSEQUENT TO THE MOTION

10:16AM  7    FILING DEADLINE FOR WHICH RULE 12 MOTIONS, BUT THE KEY FACTS

10:16AM  8    THE GOVERNMENT CONTENDS WERE KNOWN TO THE DEFENSE LONG BEFORE.

10:16AM  9    THE GOVERNMENT ALSO DISAGREES WITH THE ARGUMENT THAT THE

10:16AM  10   COURT'S MOTION IN LIMINE RULING SOMEHOW RIPENED THIS MOTION.

10:16AM  11       THESE ARGUMENTS COULD HAVE BEEN BROUGHT IN PARALLEL TO OR

10:16AM  12   PREVIOUS TO THE COURT'S MOTION IN LIMINE ADJUDICATIONS.

10:16AM  13           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

10:16AM  14   YOU FOR THAT.  I WANT TO GET CLARIFICATION OF THE PARTY'S

10:16AM  15   POSITIONS ON THAT.

10:17AM  16       AND BECAUSE WE ARE ALL HERE, I THINK WE SHOULD GO FORWARD

10:17AM  17   WITH THIS MOTION.  LET ME JUST TELL YOU, I'VE READ YOUR

10:17AM  18   PLEADINGS, AND I APPRECIATE YOUR AUGMENTATION OF THOSE TODAY.

10:17AM  19       MY INTENT IS TO LISTEN TO WHAT YOU HAVE TO SAY AND MOST

10:17AM  20   LIKELY WE'LL TAKE THE MOTION UNDER SUBMISSION AND YOU'LL GET AN

10:17AM  21   ORDER OUT SHORTLY THEREAFTER.

10:17AM  22       SO LET ME START THEN.  MS. SAHARIA, ARE YOU SPEAKING ON

10:17AM  23   THE MOTION?

10:17AM  24           MS. SAHARIA:  YES, I AM, YOUR HONOR.

10:17AM  25           THE COURT:  ALL RIGHT.  THANK YOU.  WHAT WOULD YOU

10:17AM  1    LIKE ME TO KNOW?

10:17AM  2          MS. SAHARIA:  YOUR HONOR, LET ME COVER I THINK FOUR

10:17AM  3    TOPICS IN THIS PRESENTATION.  I'LL START WITH JUST A FEW

10:17AM  4    INTRODUCTORY REMARKS ABOUT THE MOTION TO PUT THE REST IN

10:17AM  5    FRAMING.  I'LL TOUCH ON A FEW OF THE LEGAL ISSUES THAT I THINK

10:17AM  6    ARISE OUT OF THE PARTY'S BRIEFS, AND THEN I WANT TO SPEND THE

10:17AM  7    BULK OF THE ARGUMENT ON WHAT WE THINK ARE THE KEY DISPUTED

10:17AM  8    FACTS THAT REQUIRE A HEARING, AND THEN I'LL JUST TOUCH AT THE

10:18AM  9    VERY END ON THE MOTION TO COMPEL THAT ACCOMPANIES THE MOTION TO

10:18AM  10   SUPPRESS.

10:18AM  11       SO JUST TO BEGIN, I JUST WANT TO MAKE CLEAR THAT AT THIS

10:18AM  12   JUNCTION THE QUESTION BEFORE THE COURT IS SIMPLY WHETHER TO

10:18AM  13   HOLD AN EVIDENTIARY HEARING.  WE DO THINK THAT THE CURRENT

10:18AM  14   RECORD SUFFICES TO REQUIRE SUPPRESSION, BUT THE COURT NEED NOT

10:18AM  15   MAKE THAT DECISION TODAY OR IN DECIDING THE MOTION AS IT

10:18AM  16   CURRENTLY STANDS.

10:18AM  17       THE COURT NEED ONLY HOLD FOR PRESENT PURPOSES THAT THE

10:18AM  18   MOTION RAISES AN ISSUE OF FACT, OF DISPUTED FACTS RELATED TO

10:18AM  19   WHETHER TO SUPPRESS EVIDENCE OR WHETHER TO IMPOSE SOME SORT OF

10:18AM  20   SANCTION FOR THE LOSS OF THIS EVIDENCE, AND THEN PROCEED TO

10:18AM  21   HOLD A HEARING AT WHICH POINT THE COURT CAN THEN MAKE ITS FINAL

10:18AM  22   DECISION BASED ON THE FULL RECORD DEVELOPED AT THAT HEARING.

10:18AM  23       THE QUESTION WITH RESPECT TO WHETHER TO HOLD A HEARING IS

10:18AM  24   WHETHER WE HAVE ALLEGED FACTS WITH SUFFICIENT DEFINITENESS,

10:18AM  25   CLARITY, AND SPECIFICITY TO ENABLE THE COURT TO DETERMINE THAT

10:19AM   1    CONTESTED ISSUES OF FACT EXIST, AND WE SUBMIT THAT WE HAVE MET

10:19AM   2    THAT REQUIREMENT EASILY WITH RESPECT TO BOTH OF THE LEGAL

10:19AM   3    THEORIES THAT ARE PRESENTED IN THE MOTION.

10:19AM   4        AS YOUR HONOR I'M SURE IS AWARE, THE MOTION PRESENTS TWO

10:19AM   5    DIFFERENT THEORIES FOR SUPPRESSING EVIDENCE OR FOR IMPOSING

10:19AM   6    SOME SORT OF SANCTION IN CASES OF LOSS OF EVIDENCE.  THE HIGHER

10:19AM   7    STANDARD IS THE DUE PROCESS STANDARD.

10:19AM   8        BUT IN THE NINTH CIRCUIT THERE IS A LESSER STANDARD, THE

10:19AM   9    LOUD HAWK STANDARD, THAT REQUIRES SANCTIONS IN CASES OF

10:19AM   10   GOVERNMENT LOSS OF EVIDENCE AND PURSUANT TO A BALANCING TEST,

10:19AM   11   AND THAT IS -- THAT STANDARD GOVERNS LESSER SANCTIONS SUCH AS

10:19AM   12   SUPPRESSION AND IT IS A LESSER STANDARD.

10:19AM   13       SO AT THIS POINT THE COURT NEED ONLY CONCLUDE THAT THERE

10:19AM   14   ARE DISPUTED ISSUES OF FACT THAT GO TO THAT BALANCING TEST TO

10:19AM   15   PROCEED FORWARD TO A HEARING AT WHICH POINT WE EXPECT THE

10:19AM   16   RECORD WILL SHOW THAT WE ARE ENTITLED TO SUPPRESSION OR OTHER

10:20AM   17   SANCTIONS BOTH UNDER LOUD HAWK AND UNDER THE DUE PROCESS

10:20AM   18   CLAUSE.

10:20AM   19       NOW, THE STANDARD FOR HOLDING A HEARING IS NOT TERRIBLY

10:20AM   20   DEMANDING.  THE COURT -- THE GOVERNMENT HAS CITED TO THE COURT

10:20AM   21   A NUMBER OF CASES IN WHICH COURTS HAVE DENIED SUPPRESSION AND

10:20AM   22   CASES OF FAILURE TO COLLECT OR PRESERVE EVIDENCE, BUT I WOULD

10:20AM   23   NOTE THAT IN MANY OF THOSE CASES THE COURT DID HOLD AN

10:20AM   24   EVIDENTIARY HEARING AND CONCLUDED THAT SUPPRESSION WAS NOT

10:20AM   25   REQUIRED ONLY BASED ON THE FACTS THAT WERE DEVELOPED AT THAT

10:20AM 1    HEARING.  THOSE CASES INCLUDE LOUD HAWK, ROBERTSON, GIBSON,

10:20AM 2    BROWN, AND HINKSON.  IN ALL OF THOSE CASES THE COURT DID HOLD A

10:20AM 3    HEARING.

10:20AM 4        NOW, WE SUBMIT THAT THIS CASE IS FUNDAMENTALLY DIFFERENT

10:20AM 5    FROM THE CASES ON WHICH THE GOVERNMENT IS RELYING.  THE TYPICAL

10:20AM 6    CASE WHERE SUPPRESSION IS DENIED IS A CASE WHERE AN AGENT OUT

10:20AM 7    IN THE FIELD FAILS TO COLLECT EVIDENCE SUCH AS, LET'S SAY, A

10:20AM 8    BLOOD SAMPLE IN ORDER TO SUBJECT IT TO TESTS HAVING NO REASON

10:21AM 9    TO BELIEVE AT THE TIME THAT THOSE TESTS WOULD HAVE ANY

10:21AM 10   EXCULPATORY VALUE TO THE DEFENDANT.

10:21AM 11       AND IN A TYPICAL CASE WHERE SUPPRESSION IS DENIED, THE

10:21AM 12   AGENT WAS TYPICALLY FOLLOWING ROUTINE GOVERNMENT PROCEDURES IN

10:21AM 13   DECIDING NOT TO COLLECT THAT EVIDENCE, OR MAYBE AT WORST IT WAS

10:21AM 14   A MERE OVERSIGHT BY WHICH THAT EVIDENCE WAS NOT COLLECTED.

10:21AM 15       I THINK IT'S CLEAR FROM THE RECORD THAT THIS IS NOT THAT

10:21AM 16   TYPICAL CASE.  I WANT TO TALK IN MORE DETAIL ABOUT THE ACTUAL

10:21AM 17   EVIDENCE IN A LITTLE BIT, BUT LET ME JUST START WITH THREE

10:21AM 18   GENERAL OBSERVATIONS ABOUT THIS CASE.

10:21AM 19       FIRST, AT THE TIME OF THE EVENTS IN QUESTION, THE

10:21AM 20   GOVERNMENT UNQUESTIONABLY KNEW THAT AT THE LIS DATABASE WAS THE

10:21AM 21   MOST RELIABLE AND COMPREHENSIVE SET OF INFORMATION ABOUT

10:21AM 22   THERANOS'S TEST RESULTS, AND IT KNEW THAT THAT DATABASE HAD

10:21AM 23   EXCULPATORY VALUE GOING TO A CENTRAL ISSUE IN THE CASE.

10:21AM 24       SECOND, THE LOSS OF THE EVIDENCE IS NOT THE RESULT OF

10:21AM 25   STANDARD GOVERNMENT PROCEDURES OR EVEN OVERSIGHT.  THE

10:22AM 1    GOVERNMENT'S CONDUCT IN THIS CASE WAS SO UNUSUAL THAT IT FELT

10:22AM 2    COMPELLED TO WRITE A 23-PAGE BRADY LETTER TO THE DEFENSE

10:22AM 3    DESCRIBING ITS FAILURE TO PRESERVE THE LIS.

10:22AM 4         THE EVIDENCE TO DATE, WHICH TODAY IS STILL INCOMPLETE, BUT

10:22AM 5    THE EVIDENCE TO DATE SUGGESTS THAT PROSECUTORS, THE PROSECUTORS

10:22AM 6    PROSECUTING THIS CASE REPEATEDLY DISREGARDED ADVICE FROM THEIR

10:22AM 7    OWN SUPPORT STAFF REGARDING STEPS THAT THEY SHOULD TAKE TO

10:22AM 8    ACCESS AND PRESERVE THE LIS DATABASE.

10:22AM 9         THE COURT:  MS. SAHARIA, AT THE TIME THAT THEY

10:22AM 10   DISREGARDED, ACCORDING TO THE DOCUMENTS THAT I'VE READ, AT THE

10:22AM 11   TIME THAT THEY DISREGARDED THE ADVICE OF THEIR EXPERTS AS YOU

10:22AM 12   SUGGEST, THE LIS WAS DESTROYED, WASN'T IT?

10:22AM 13        MS. SAHARIA:  WELL, NOT EXACTLY, YOUR HONOR.

10:22AM 14        I THINK IT'S IMPORTANT TO KEEP IN MIND THAT THERE'S REALLY

10:22AM 15   TWO SOURCES OF DATA THAT ARE RELEVANT TO THIS DISCUSSION.

10:23AM 16   THERE IS THE LIS DATABASE.

10:23AM 17        THE COURT:  SURE.  WELL, LET ME TELL YOU WHAT I'M

10:23AM 18   TALKING ABOUT SO YOU UNDERSTAND.

10:23AM 19        MS. SAHARIA:  SURE.

10:23AM 20        THE COURT:  SO AS I UNDERSTAND IT THE LIS WAS

10:23AM 21   CREATED, AND MAYBE WE'LL TALK A LITTLE BIT MORE ABOUT THE

10:23AM 22   GENESIS OF THAT CREATION, BUT IT WAS CREATED.  IT CONTAINED ALL

10:23AM 23   OF THIS INFORMATION.  IT WAS IN THE CUSTODIAL POSSESSION OF

10:23AM 24   THERANOS.  THEY HAD IT ON SIGHT, OR SOMEWHERE, THE SERVERS WERE

10:23AM 25   THERE, AND THEN AT THE DEMISE OF THERANOS THE -- I SUPPOSE IT

10:23AM  1    WAS GOING TO BE DECONSTRUCTED, THAT IS, THE SERVERS.  IT SOUNDS

10:23AM  2    LIKE THE SERVERS MAY HAVE BEEN LEASED OR SOMETHING, BUT THEY

10:23AM  3    WERE TAKEN APART, AND THEY WERE GOING TO BE DECONSTRUCTED SUCH

10:23AM  4    THAT THE LIS AS IT EXISTED WOULD NO LONGER EXIST AND IT'S A

10:23AM  5    FIRST ITERATION SHALL I SAY.

10:24AM  6             MS. SAHARIA:  SURE.  SO LET ME --

10:24AM  7             THE COURT:  SO DIDN'T A COPY OF THAT, WHEN THE

10:24AM  8    GOVERNMENT RECEIVED A COPY IN AUGUST -- I THINK IT WAS AUGUST

10:24AM  9    27TH, WAS IT?  IS THAT WHEN THEY RECEIVED THEIR COPY?

10:24AM  10            MS. SAHARIA:  YES, YOUR HONOR, IT WAS IN AUGUST OF

10:24AM  11   2018.

10:24AM  12            THE COURT:  YES.

10:24AM  13        AND THEN FOUR DAYS LATER THERANOS CAUSED THE DEMISE OF THE

10:24AM  14   SERVERS, AND WHOEVER WAS IN CHARGE CAUSED THE DEMISE OF THE

10:24AM  15   SERVERS SUCH THAT THEY DID MAKE A COPY OF IT, AND THEY SENT IT

10:24AM  16   TO THE GOVERNMENT.

10:24AM  17        AND THEN FOUR DAYS LATER IT WAS DESTROYED, IF YOU WILL.

10:24AM  18   IT WAS DECOMMISSIONED I GUESS IS THE WORD, AND THE GOVERNMENT

10:24AM  19   DID NOT DECOMMISSION IT.  THE GOVERNMENT DIDN'T REQUEST IT TO

10:24AM  20   BE DECOMMISSIONED.  THAT WAS A UNILATERAL DECISION THAT WAS

10:24AM  21   MADE BY THERANOS.

10:24AM  22        AS I UNDERSTAND IT FROM THE DOCUMENTS I'VE READ, THAT THAT

10:24AM  23   DATE, THAT DECOMMISSIONING DATE WAS NOT PROVIDED TO THE

10:24AM  24   GOVERNMENT AT THE TIME THAT THE GOVERNMENT RECEIVED THE

10:25AM  25   DATABASE FROM THERANOS.  THAT'S WHAT I UNDERSTAND AT LEAST FROM

10:25AM 1      THE DOCUMENTS THAT YOU FILED.

10:25AM 2          I DON'T THINK YOU QUARREL WITH THE FACT THAT THE

10:25AM 3      GOVERNMENT DID NOT DESTROY THIS OR DECOMMISSION.  THAT WAS DONE

10:25AM 4      BY WHOEVER WAS IN CHARGE OF THERANOS.

10:25AM 5          AND I DON'T THINK YOU QUARRELLED WITH THE FACT THAT THE

10:25AM 6      GOVERNMENT WAS NOT GIVEN NOTICE OF THE DECOMMISSION DATE.  I

10:25AM 7      DON'T THINK YOU QUARREL WITH THAT.

10:25AM 8          THEN THE OTHER QUESTION I HAD IS APPARENTLY WHEN THE

10:25AM 9      GOVERNMENT RECEIVED WHAT THEY THOUGHT WAS A MIRROR IMAGE OF THE

10:25AM 10     DATABASE, THEY WERE NOT TOLD THAT A MISSING KEY, I GUESS THEY

10:25AM 11     CALL IT, TO ACCESS THE DATABASE WAS MISSING.

10:25AM 12         THEY WERE GIVEN A PASSWORD, AN ENCRYPTED PASSWORD THAT

10:25AM 13     WOULD ALLOW THEM TO OPEN THE DATABASE, BUT AT THE TIME THAT IT

10:25AM 14     WAS DELIVERED FROM THE LAWYERS, THE LAWYERS KNEW THAT THERE WAS

10:26AM 15     A KEY THAT WOULD NEED TO BE USED TO ACCESS THE MATERIAL.  THAT

10:26AM 16     WAS NOT PROVIDED IN THE DATABASE THAT WAS GIVEN TO THE

10:26AM 17     GOVERNMENT.

10:26AM 18         AND SO THE GOVERNMENT -- IN ESSENCE WHAT THEY WERE GIVEN

10:26AM 19     WAS A NONWORKING COPY, IF YOU WILL, OF THE DATABASE.  IN OTHER

10:26AM 20     WORDS, THEY COULDN'T ACCESS IT.  EVEN IF THEY HAD TRIED TO

10:26AM 21     ACCESS IT IN THE PARKING LOT ONCE THEY RECEIVED IT, THEY

10:26AM 22     WOULDN'T HAVE BEEN ABLE TO.

10:26AM 23         IS THAT THE STATE OF THINGS?

10:26AM 24             MS. SAHARIA:  WELL, I, I, I -- SOME OF THAT IS

10:26AM 25     CORRECT, YOUR HONOR, BUT I THINK THERE ARE INFERENCES DRAWN

10:26AM   1       FROM THOSE FACTS THAT REQUIRE AN EVIDENTIARY HEARING.

10:26AM   2            SO LET ME TAKE THOSE TWO PIECES OF FACTS IN TURN.  ONE,

10:26AM   3       THE LIS SERVER, THE PHYSICAL SERVER; AND THEN, TWO, THE COPY OF

10:26AM   4       THE LIS.

10:26AM   5            SO WITH RESPECT TO THE LIS SERVER, YES, YOUR HONOR IS

10:27AM   6       CORRECT THAT THE SERVER -- I DON'T THINK THE CORRECT WORD IS

10:27AM   7       DESTROYED.  IT'S NOT AS THOUGH SOMEONE TOOK A HAMMER TO THE

10:27AM   8       SERVER AND, YOU KNOW, CRUSHED IT TO PIECES OUT IN THE PARKING

10:27AM   9       LOT.

10:27AM   10           THE GOVERNMENT KNEW FULL KNOW THAT THERANOS WAS CLOSING,

10:27AM   11      IT WAS PHYSICALLY CLOSING ITS OFFICE BUILDING, AND WHEN A

10:27AM   12      BUILDING CLOSES, THAT REQUIRES TAKING THE THINGS IN THE

10:27AM   13      BUILDING AND MOVING THEM.

10:27AM   14           WHAT THE GOVERNMENT APPRECIATED ABOUT WHAT THAT MEANT FOR

10:27AM   15      THE PHYSICAL LIS SERVER WOULD BE AN ISSUE TO EXPLORE AT THE

10:27AM   16      HEARING, BUT IT'S UNDISPUTED THE GOVERNMENT WAS FULL AWARE THAT

10:27AM   17      THERANOS WAS CLOSING AND YET IT WAITED A YEAR AND A HALF UNTIL

10:27AM   18      THE EVE OF THE COMPANY CLOSING TO REQUEST THE DATABASE.

10:27AM   19           THE COURT:  WELL, THERE WERE NEGOTIATIONS, WEREN'T

10:27AM   20      THERE?  WASN'T THE GOVERNMENT AND LAWYERS FOR THERANOS IN

10:27AM   21      NEGOTIATION ABOUT -- I MEAN, THERE WAS A TROVE OF EVIDENCE THAT

10:28AM   22      WAS BEING SOUGHT NOT ONLY FROM -- WHEN I SAY "THE GOVERNMENT" I

10:28AM   23      MEAN THIS PROSECUTION.

10:28AM   24           BUT THERE WAS ALSO LETTERS AND DOCUMENTATION FROM THE

10:28AM   25      S.E.C. AND SUBPOENAS FROM THE S.E.C. EARLIER.  WAS IT IN 2016

10:28AM 1   PERHAPS?  '15?  THERE WERE SUBPOENAS THAT WERE REQUESTING -- IT

10:28AM 2   SEEMED LIKE THE SAME TYPE OF INFORMATION WHEN WE LOOK AT THE

10:28AM 3   SUBPOENAS.  THEY TALK ABOUT -- THE S.E.C. SUBPOENAS TALK ABOUT

10:28AM 4   ALL THE INFORMATION REGARDING -- INFORMATION THAT COULD BE ON

10:28AM 5   THE LIS I SUPPOSE.

10:28AM 6       BUT IN ANY EVENT, THERE WERE NEGOTIATIONS BETWEEN THE

10:28AM 7   PROSECUTION, THE GOVERNMENT PROSECUTION IN THIS CASE AND THE

10:28AM 8   ATTORNEYS FOR THERANOS ABOUT RECEIVING INFORMATION.  WASN'T

10:28AM 9   THAT ONGOING?

10:28AM 10      MS. SAHARIA:  WELL, TO BE SURE, THE GOVERNMENT WAS

10:28AM 11  REQUESTING CERTAIN SUBSETS OF DATA THAT RESIDED IN THE LIS, BUT

10:28AM 12  THE FIRST TIME THAT THE GOVERNMENT SUBPOENAED THE LIS DATABASE

10:28AM 13  ITSELF WITH THE FULL ARRAY OF INFORMATION IN THE DATABASE WAS

10:28AM 14  ON JUNE 14TH, 2018, WHICH WAS ONLY TWO WEEKS BEFORE IT RETURNED

10:29AM 15  THE INDICTMENT IN THIS CASE AND AT A TIME WHEN IT KNEW FULL

10:29AM 16  WELL THAT THERANOS WAS ABOUT TO CLOSE.

10:29AM 17      THE COURT:  WELL, IT WAS JUNE 4TH.

10:29AM 18      WAS IT JUNE 4TH AND THEN THE INDICTMENT WAS JUNE 14TH?  I

10:29AM 19  CAN'T REMEMBER THE DATES, BUT IT WAS AROUND THAT SAME TIME

10:29AM 20  PERIOD.  I THINK YOU'RE CORRECT.

10:29AM 21      MS. SAHARIA:  YES.  I THINK IT WAS JUNE 4TH AND

10:29AM 22  JUNE 18TH, BUT IT'S AROUND THOSE PRECISE DATES, YOUR HONOR.

10:29AM 23      THE COURT:  RIGHT.

10:29AM 24      MS. SAHARIA:  WITH RESPECT TO THE DATABASE ITSELF,

10:29AM 25  IT IS CERTAINLY TRUE THAT WHEN THE COMPANY CLOSED, IT HAD NO

10:29AM 1    CHOICE BUT TO MOVE THE PHYSICAL SERVERS TO A DIFFERENT

10:29AM 2    LOCATION.  MY UNDERSTANDING IS I THINK THEY WERE INITIALLY

10:29AM 3    TRANSFERRED TO THE ASSIGNEE AND THEN AT SOME POINT RETURNED TO

10:29AM 4    THE LESSOR OF THAT EQUIPMENT.

10:29AM 5         AND IT IS, I THINK, CORRECT THAT ONCE THAT PHYSICAL MOVING

10:29AM 6    OF THE SERVERS OCCURRED, BECAUSE THEY HAD TO BE, YOU KNOW,

10:29AM 7    DISCONNECTED FROM EACH OTHER, THAT IS WHAT THE GOVERNMENT

10:30AM 8    CALLED THE DECOMMISSIONING OF THE LIS DATABASE.

10:30AM 9         BUT THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD FROM

10:30AM 10   WITNESSES THAT THE GOVERNMENT HAS INTERVIEWED AND THESE ARE

10:30AM 11   AT -- LET ME MAKE SURE THAT I GIVE THE COURT THE CORRECT

10:30AM 12   EXHIBIT NUMBERS, THESE ARE -- HOLD ON.  THESE ARE DEFENSE

10:30AM 13   EXHIBITS 10, 11, AND 13, WITNESSES HAVE SAID THAT IT WOULD HAVE

10:30AM 14   CERTAINLY HAVE BEEN POSSIBLE TO RECONSTRUCT THE DATABASE USING

10:30AM 15   THE PHYSICAL SERVERS WITH SOME AMOUNT OF EFFORT.  PERHAPS OVER

10:30AM 16   A MONTH IT COULD HAVE BEEN RECONSTRUCTED USING THE PHYSICAL

10:30AM 17   EQUIPMENT.  THAT IS ONE OF THE AVENUES THAT THE GOVERNMENT

10:30AM 18   SUPPORT STAFF RECOMMENDED TO THE GOVERNMENT, THAT IT ACTUALLY

10:30AM 19   SEIZE THE PHYSICAL SERVERS AND USE THE PHYSICAL SERVERS TO GET

10:30AM 20   ACCESS TO THE LIS DATA.  THAT IS SOMETHING THAT THE GOVERNMENT

10:31AM 21   WAS DOING IN FACT.  BEFORE THERANOS CLOSED, IT ROLLED UP THE

10:31AM 22   TRUCKS TO THE COMPANY'S PHYSICAL LOCATION AND TOOK OTHER

10:31AM 23   PHYSICAL EQUIPMENT FROM THERANOS, BUT IT DIDN'T DO THAT FOR THE

10:31AM 24   LIS DATABASE.

10:31AM 25             THE COURT:  AND THAT'S BECAUSE IT SEEMED LIKE FROM

10:31AM  1    THE RECORD IN SOME OF THE DOCUMENTATION THAT THERE WERE ONGOING

10:31AM  2    NEGOTIATIONS BETWEEN COUNSEL FOR THERANOS AND THE GOVERNMENT.

10:31AM  3    THERE WERE EMAILS THAT SUGGESTED -- THIS IS IN THE BRADY

10:31AM  4    LETTER, I THINK, THAT YOU MENTIONED.  IT'S PROBABLY

10:31AM  5    EXHIBIT 732-2, PARAGRAPHS 31, 34, 36, SOME OF THOSE PARAGRAPHS

10:31AM  6    IN THERE.  PARDON ME, I DON'T HAVE THEM AT MY FINGERTIPS

10:31AM  7    EXACTLY.  BUT THEY SUGGEST THAT THERE WAS AN EXCHANGE OF

10:31AM  8    INFORMATION, VERY CORDIAL, BETWEEN THE GOVERNMENT AND I THINK

10:31AM  9    IT WAS WILMER HALE ATTORNEYS WHO WERE IN CHARGE AT THAT TIME OF

10:31AM 10    NEGOTIATING THIS EXCHANGE OF INFORMATION.

10:31AM 11       IT APPEARS THAT SOME OF THESE EMAILS SAID THE TRUCKS WILL

10:31AM 12    BE HERE.  WILMER HALE SAID, WE'LL TELL YOU THE SIZE OF WHAT

10:32AM 13    YOU'RE COLLECTING SO YOU CAN ORGANIZE THE RIGHT TRUCKS,

10:32AM 14    CORRECT TRUCKS, AND GET THE RIGHT SIZE OF TRUCKS TO TAKE THINGS

10:32AM 15    AWAY.  BUT THERE WAS NEVER DISCUSSION, YOU'RE RIGHT, ABOUT THE

10:32AM 16    SERVERS.  THOSE WERE STILL CONNECTED, STILL ONLINE.

10:32AM 17       AND IT SEEMED LIKE CONCURRENT WITH THAT THE CONVERSATION

10:32AM 18    WAS ONGOING WITH THE GOVERNMENT ABOUT HOW TO GET THE LIS.

10:32AM 19       AND THEN ON AUGUST 27TH I THINK THERE WAS AN EMAIL --

10:32AM 20    PARDON ME.  LET ME BACKTRACK A MOMENT.  I THINK THERE WAS AN

10:32AM 21    EARLIER EMAIL FROM MR. BOSTIC THAT SAID, HEY, I'M JUST CHECKING

10:32AM 22    IN ON WHEN CAN WE GET THE DATABASE?  I'M WORKING WITH THERANOS

10:32AM 23    TO GET THAT FOR YOU WAS THE RESPONSE FROM WILMER.

10:32AM 24       AND THEN IT'S READY FOR YOU AUGUST 27TH, COME GET IT.

10:32AM 25       AND THEN FOUR DAYS LATER THEY DECOMMISSION, THEY, SOMEONE.

10:32AM 1     LET ME JUST BE CLEAR, I DON'T KNOW WHO DECOMMISSIONED IT, BUT

10:32AM 2     CAN WE AGREE THAT THE GOVERNMENT DID NOT DECOMMISSION THE

10:32AM 3     DATABASE?

10:32AM 4              MS. SAHARIA:  OF COURSE, YOUR HONOR.  THE GOVERNMENT

10:32AM 5     WAS NOT THERE AT THERANOS DECONNECTING THE WIRES.

10:33AM 6          THE GOVERNMENT DID KNOW THAT THERANOS WAS CLOSING.  AND

10:33AM 7     IT, AND IT, IT DID KNOW THAT, YOU KNOW, RELATIVELY SOON

10:33AM 8     THEREAFTER THAT ITS SUPPORT STAFF WERE RECOMMENDING THAT IT

10:33AM 9     ATTEMPT TO GET THE PHYSICAL HARDWARE, AND IT DIDN'T DO THAT.

10:33AM 10         NOW, LET ME TALK ABOUT THE COPY OF THE LIS THAT WAS

10:33AM 11    PRODUCED TO THE GOVERNMENT ON AUGUST 27TH.

10:33AM 12         THE GOVERNMENT HAS REPRESENTED THAT IT NEEDS -- THAT THAT

10:33AM 13    WAS PRODUCED WITHOUT A PASSWORD AND THAT IT CAN'T ACCESS THE

10:33AM 14    DATABASE WITHOUT A PASSWORD.

10:33AM 15         IT SAYS IN ITS OPPOSITION THAT -- THIS IS AT PAGE 6, THAT

10:33AM 16    ITS EFFORTS TO ACCESS THAT COPY OF THE LIS DATABASE HAVE

10:33AM 17    FAILED, BUT THEY PROVIDE PRECIOUS LITTLE EVIDENCE OF WHAT THOSE

10:33AM 18    EFFORTS ACTUALLY WERE OR IMPORTANTLY WHEN THEY OCCURRED.

10:33AM 19         AND I WILL NOTE THAT UNDER THE LOUD HAWK BALANCING TEST IT

10:34AM 20    IS THE GOVERNMENT'S DUTY TO JUSTIFY THE REASONABLENESS OF ITS

10:34AM 21    CONDUCT AND TO COME FORWARD WITH EVIDENCE JUSTIFYING ITS

10:34AM 22    CONDUCT.

10:34AM 23         AND THE REASON IT HASN'T COME FORWARD WITH THAT EVIDENCE,

10:34AM 24    I WOULD SUBMIT, IS BECAUSE THE ACTUAL EVIDENCE IS QUITE

10:34AM 25    DAMAGING TO THE GOVERNMENT ON THIS POINT.  IT RECEIVED THAT

10:34AM 1   COPY OF THE LIS DATABASE AS YOUR HONOR INDICATED IN LATE AUGUST

10:34AM 2   OF 2018 AT A TIME WHEN IT KNEW THAT THE COMPANY WAS ABOUT TO

10:34AM 3   CLOSE.

10:34AM 4        NOW, THE FIRST THING THAT WE ALWAYS DO WHEN WE OBTAIN A

10:34AM 5   PRODUCTION FROM THE GOVERNMENT IS WE OPEN IT AND WE CHECK IT

10:34AM 6   BECAUSE THERE ARE OFTEN TECHNICAL GLITCHES ASSOCIATED WITH

10:34AM 7   PRODUCTIONS, MISSING PASSWORDS, OR DATA THAT IS CORRUPTED OR

10:34AM 8   WHAT HAVE YOU, AND THE REASON FOR THAT IS TO MAKE SURE THAT YOU

10:34AM 9   PROMPTLY CAN CORRECT ANY PROBLEM.

10:34AM 10  THE GOVERNMENT DIDN'T DO THAT.  IT TOOK THREE WEEKS TO

10:34AM 11  ACCESS THE HARD DRIVE, EVEN THOUGH THERANOS WAS IMMINENTLY

10:34AM 12  CLOSING.  THIS IS AT THE BRADY LETTER WHICH IS EXHIBIT 88 TO

10:35AM 13  OUR ANECDOTAL EVIDENCE REPLY BRIEF, PARAGRAPHS 36 TO 43.

10:35AM 14      AND THEN IT TOOK TWO AND A HALF WEEKS FOR THE SUPPORT

10:35AM 15  PERSONNEL TO RELAY TO THE PROSECUTORS THAT THEY DIDN'T HAVE THE

10:35AM 16  RIGHT SOFTWARE TO PROCESS IT.  THAT'S EXHIBIT 88, PARAGRAPH 46.

10:35AM 17      NOW, WILMER HALE HAD TOLD THE GOVERNMENT A MONTH IN

10:35AM 18  ADVANCE WHAT SOFTWARE IT WAS GOING TO NEED TO PROCESS THE

10:35AM 19  DATABASE, AND THERE'S NO EVIDENCE THAT IT ACTED ON THAT

10:35AM 20  INFORMATION.

10:35AM 21          THE COURT:  DID WILMER HALE EVER PROVIDE INFORMATION

10:35AM 22  TO THE GOVERNMENT THAT THEY WOULD NEED THE KEY, THE MISSING

10:35AM 23  KEY?  WAS THAT EVER GIVEN TO THE GOVERNMENT?

10:35AM 24          MS. SAHARIA:  I HAVE NOT SEEN THAT EVIDENCE IN THE

10:35AM 25  RECORD, NOR HAVE I SEEN EVIDENCE THAT THE GOVERNMENT ATTEMPTED

10:35AM 1  TO OPEN THE DATABASE AND REALIZED IT NEEDED A PASSWORD.  FOR A

10:36AM 2  YEAR AND A HALF THE FIRST RECORDED ATTEMPT FROM THE GOVERNMENT

10:36AM 3  TO ASK FOR A PASSWORD FOR THE DATABASE OCCURRED IN MARCH OR

10:36AM 4  APRIL OF 2020.  THIS IS EXHIBIT 88, AGAIN, THEIR BRADY LETTER,

10:36AM 5  AT PARAGRAPH 52.

10:36AM 6       THE GOVERNMENT DOESN'T INDICATE EXACTLY WHEN THAT

10:36AM 7  OCCURRED.  THEY INDICATE THAT THEY REACHED OUT TO WILMER HALE

10:36AM 8  IN MARCH OR APRIL OF 2020.  I WOULD SUBMIT IT'S NOT A

10:36AM 9  COINCIDENCE THAT THAT IS THE VERY MOMENT WHEN WE STARTED ASKING

10:36AM 10 THE GOVERNMENT TO SUPPORT ITS ALLEGATIONS IN ITS 404(B) LETTER

10:36AM 11 THAT IT COULD NOT ACCESS THE LIS DATABASE.

10:36AM 12      BUT FOR A YEAR AND A HALF THE GOVERNMENT DID NOTHING WITH

10:36AM 13 THIS COPY OF THE LIS DATABASE SITTING ON A PARALEGAL'S SHELF,

10:36AM 14 AND IF IT HAD ACTED PROMPTLY AS YOU WOULD EXPECT A PROSECUTOR

10:36AM 15 WITH THE MOST CENTRAL EVIDENCE IN THE CASE TO DO, THEY VERY

10:36AM 16 WELL WOULD HAVE FOUND THE PASSWORD.  THEY VERY WELL WOULD --

10:37AM 17           THE COURT:  THEY WOULD HAVE FOUND THE PASSWORD, THE

10:37AM 18 KEY TO OPEN THIS?

10:37AM 19           MS. SAHARIA:  WELL, THEY, THEY, THEY PRESUMABLY --

10:37AM 20           THE COURT:  THEY NEVER HAD --

10:37AM 21           MS. SAHARIA:  RIGHT, THEY NEVER HAD THAT.

10:37AM 22      BUT THERE WAS EVIDENCE THAT THERE WERE PEOPLE CONNECTED

10:37AM 23 WITH THERANOS WHO MIGHT HAVE HAD THAT KEY IF THE GOVERNMENT HAD

10:37AM 24 PROMPTLY REALIZED THAT IT NEEDED IT.

10:37AM 25      AGAIN, THE SUPPORT STAFF SUGGESTED MULTIPLE THINGS THAT

10:37AM 1   THE GOVERNMENT MIGHT HAVE DONE, WHICH WOULD HAVE, NUMBER ONE,

10:37AM 2   LED IT TO REALIZE THAT IT NEEDED A SECOND PASSWORD TO OPEN THE

10:37AM 3   LIS DATABASE.

10:37AM 4       BUT SECOND OF ALL, WE DON'T KNOW IF THERE ARE OTHER WAYS

10:37AM 5   THAT THE GOVERNMENT COULD HAVE ACCESSED THIS DATABASE, AND

10:37AM 6   THEIR SUPPORT STAFF SUGGESTED THOSE AVENUES TO THEM.

10:37AM 7       FIRST, THEY SUGGESTED THAT THEY CONNECT WITH THE FBI.  THE

10:37AM 8   GOVERNMENT HAS ACCESS TO THE MOST SOPHISTICATED COMPUTER

10:37AM 9   EXPERTS IN THE WORLD AT THE FBI.  WE ALL KNOW FROM PUBLIC

10:38AM 10  RECORDING OF THE SOPHISTICATED TOOLS THAT THE FBI USES EVERY

10:38AM 11  DAY TO ACCESS FORENSIC DATA FROM COMPUTERS.  THERE'S NO

10:38AM 12  EVIDENCE THAT THE GOVERNMENT ACTED ON THAT SUGGESTION.  THERE'S

10:38AM 13  NO EVIDENCE TO THIS DAY THAT THE GOVERNMENT HAS EVER ASKED ITS

10:38AM 14  COUNTERPARTS IN THE FBI IF THEY COULD OPEN THE DATABASE.

10:38AM 15      AGAIN, THE SUPPORT STAFF SUGGESTED THAT THEY GET THE

10:38AM 16  PHYSICAL SERVERS.  THERE'S NO EVIDENCE THAT THEY DID THAT.

10:38AM 17      THERE'S NO EVIDENCE THAT THE GOVERNMENT DID MUCH OF

10:38AM 18  ANYTHING FOR A YEAR AND A HALF, WHICH IS THE FIRST TIME THAT IT

10:38AM 19  REALIZED IT NEEDED A PASSWORD.  AND AT THAT POINT IT WAS TOO

10:38AM 20  LATE TO TRACK DOWN THE PEOPLE WHO MIGHT HAVE THAT PASSWORD.

10:38AM 21      THE COURT:  RIGHT, BECAUSE THEY RECEIVED IT ON

10:38AM 22  AUGUST 27TH, AND FOUR DAYS LATER IT WAS DECOMMISSIONED NOT BY

10:38AM 23  THE GOVERNMENT BUT BY SOMEONE ELSE, SOMEONE, A THIRD PARTY.  I

10:38AM 24  DON'T KNOW WHO DID THAT, BUT PERHAPS IT'S IN THE PROCESS OF

10:38AM 25  DECOMMISSIONING.

10:38AM 1      SO FOR THOSE FOUR DAYS THE GOVERNMENT SHOULD HAVE,

10:38AM 2   ACCORDING TO YOUR POSITION, SHOULD HAVE ACCESSED IT TO

10:39AM 3   DETERMINE WHETHER OR NOT THEY COULD ACTUALLY OPEN IT UP IN

10:39AM 4   THOSE FOUR DAYS BECAUSE THAT WAS THE LIFESPAN OF THE DATABASE,

10:39AM 5   AT LEAST AS IT EXISTED BEFORE IT WAS DECOMMISSIONED.

10:39AM 6      SO THEY SHOULD HAVE DONE SOMETHING IN THOSE FOUR DAYS, BUT

10:39AM 7   THEY DIDN'T.  SO IT SEEMS LIKE WHATEVER THEY DID AFTERWARDS,

10:39AM 8   ISN'T THAT KIND OF IMMATERIAL BECAUSE THEY COULDN'T HAVE DONE

10:39AM 9   THAT?

10:39AM 10      732-4 I THINK IS A JUNE 25TH EMAIL FROM DAVID TAYLOR TO

10:39AM 11   SOMEBODY, AND IT'S REGARDING A MEETING ON THE LIS.  I THINK YOU

10:39AM 12   SEE THAT.  AND DIDN'T HE SAY "WE SHOULD JUST GIVE THE DOJ THE

10:39AM 13   DATABASE AND LET THEM FIGURE IT OUT.  THEY WON'T KNOW WHAT TO

10:39AM 14   DO WITH IT AND THAT THE PEOPLE WHO DO ARE IN INDIA.  OUR

10:39AM 15   EXPERTS ARE THE ONLY ONES WHO UNDERSTAND IT, AND WE DON'T WANT

10:39AM 16   TO MAKE THEM PERCIPIENT WITNESSES.  IS THERE ANYONE LEFT IN THE

10:39AM 17   COMPANY WHO CAN ASSIST US IN ACTUALLY GETTING THE DATABASE TO

10:39AM 18   THE GOVERNMENT?"  AND THIS WAS AT A PRE-INDICTMENT TIME.

10:40AM 19      AND THERANOS HAD, OF COURSE, CONTROL OF THE LIS.  THEY HAD

10:40AM 20   ACCESS TO IT.  SO DOESN'T THAT SUGGEST THAT AT LEAST THERE WAS

10:40AM 21   SOME KNOWLEDGE, I WON'T CALL IT SCIENTER, BUT THERE WAS SOME

10:40AM 22   KNOWLEDGE THAT THIS KEY HAD TO BE CREATED BACK THEN?

10:40AM 23      AND I'M GETTING A LITTLE AHEAD OF OURSELVES, BUT IT SEEMS

10:40AM 24   LIKE YOUR CLIENT, AT LEAST THE DEFENSE, WOULD HAVE ALSO KNOWN

10:40AM 25   OF THE IMPORTANCE OF THIS SUCH THAT -- AND THIS IS KIND OF A

10:40AM 1   BALANCING, I SUPPOSE, PART OF OUR BALANCING CONVERSATION --

10:40AM 2   SUCH THAT BECAUSE YOUR CLIENT HAD, LET'S CALL IT, PRIVITY TO

10:40AM 3   THE DATABASE AND KNOWLEDGE OF ITS IMPORTANCE, SHE, TOO, COULD

10:40AM 4   HAVE SECURED A COPY.  IS THAT SOMETHING THAT SHOULD ENTER INTO

10:40AM 5   THE CONVERSATION OR THE EQUATION?

10:40AM 6        I'VE ASKED YOU A LOT THERE, MS. SAHARIA.  I APOLOGIZE.

10:40AM 7            MS. SAHARIA:  YEAH.  SO I THINK THAT THERE ARE THREE

10:40AM 8   COMPONENTS TO THAT.  LET ME START WITH THE FIRST ONE.

10:40AM 9        OUR ARGUMENT DOES NOT REST ON FOUR DAYS.  THE FACT THAT

10:41AM 10  THE COPY WAS PRODUCED AND FOUR DAYS LATER THE PHYSICAL SERVER

10:41AM 11  WAS TAKEN APART AND MOVED IS NOT MATERIAL TO OUR ARGUMENT

10:41AM 12  BECAUSE THERE ARE STEPS THAT THE GOVERNMENT REASONABLY SHOULD

10:41AM 13  HAVE TAKEN EVEN AFTER THOSE FOUR DAYS.

10:41AM 14       FIRST, REACHED OUT TO THERANOS -- FIGURED OUT THAT THEY

10:41AM 15  COULDN'T OPEN THE DATABASE AND WHY.  AND THE REASON PRESUMABLY,

10:41AM 16  ACCORDING TO THE GOVERNMENT, IS BECAUSE THEY LACKED THE

10:41AM 17  PASSWORD.  IT TOOK THEM A YEAR AND A HALF TO REALIZE THAT.  BUT

10:41AM 18  IF THEY REALIZED THAT PROMPTLY, NOT WITHIN FOUR DAYS BUT WITHIN

10:41AM 19  A REASONABLE AMOUNT OF TIME, THEY COULD HAVE TALKED TO

10:41AM 20  THERANOS'S COUNSEL, ALERTED THEM TO THIS ISSUE, AND THEY COULD

10:41AM 21  HAVE, ONE WOULD THINK, FOUND SOMEONE WHO HAD THE APPROPRIATE

10:42AM 22  PASSWORD.

10:42AM 23       THERE IS EVIDENCE IN THE RECORD OF VARIOUS PEOPLE WHO

10:42AM 24  MIGHT HAVE HAD THAT PASSWORD, NONE OF WHOM THE GOVERNMENT

10:42AM 25  APPROACHED AT THE RELEVANT TIME OR THEY DIDN'T APPROACH THE

10:42AM  1    COUNSEL EITHER TO TRY TO GET THE PASSWORD.

10:42AM  2        LIKEWISE, AS I'VE ALREADY INDICATED, THE PHYSICAL SERVER

10:42AM  3    WAS, WE BELIEVE THIS WOULD COME OUT AT A HEARING, STILL

10:42AM  4    AVAILABLE IN THE POSSESSION OF THE ASSIGNEE.  THEY COULD HAVE

10:42AM  5    TAKEN THE PHYSICAL SERVER AT THAT TIME AND USED THE PHYSICAL

10:42AM  6    SERVER TO ACCESS THE LIS DATABASE.

10:42AM  7        SO THAT'S, THAT'S -- I THINK THE FIRST QUESTION IS WE'RE

10:42AM  8    NOT SAYING THEY HAD TO DO ALL OF THESE THINGS IN FOUR DAYS, BUT

10:42AM  9    PROSECUTORS HAVE AN OBLIGATION TO ACT DILIGENTLY AND PROMPTLY

10:42AM 10    WHEN THEY'RE DEALING WITH THE MOST CRITICAL EVIDENCE IN THE

10:42AM 11    CASE AND EVIDENCE THAT HAS EXTREME EXCULPATORY VALUE TO A

10:42AM 12    DEFENDANT TO MAKE SURE THAT THAT EVIDENCE IS PRESERVED AND

10:42AM 13    AVAILABLE TO THE DEFENDANT, AND THEY DIDN'T DO THAT HERE.  SO

10:43AM 14    THAT'S THE FIRST QUESTION.

10:43AM 15            THE COURT:  YOUR CLIENT HAD, YOUR CLIENT HAD ACTUAL

10:43AM 16    POSSESSION OF THE DATABASE BEFORE IT WAS DECOMMISSIONED.

10:43AM 17            MS. SAHARIA:  WELL, THERANOS DID.

10:43AM 18            THE COURT:  YES.

10:43AM 19            MS. SAHARIA:  AT THE TIME OF THE DECOMMISSIONING,

10:43AM 20    MS. HOLMES WAS NOT CEO OF THE COMPANY.  SHE HAD ALREADY BEEN

10:43AM 21    INDICTED.

10:43AM 22        THE GOVERNMENT HAS PRODUCED NO EVIDENCE DESPITE ITS

10:43AM 23    CONTINUED INSINUATIONS THAT MS. HOLMES HAD ANY KNOWLEDGE OF ANY

10:43AM 24    OF THESE FACTS.

10:43AM 25            THE COURT:  SURE.  THAT WAS --

10:43AM   1          MS. SAHARIA:  NOW, WITH RESPECT TO WHETHER SHE COULD

10:43AM   2     HAVE SECURED THE DATABASE, I'M NOT SURE WHAT I CAN DISCLOSE

10:43AM   3     ABOUT THAT ISSUE WITHOUT DISCLOSING PRIVILEGED COMMUNICATIONS,

10:43AM   4     SO I DON'T FEEL COMFORTABLE ANSWERING YOUR HONOR'S QUESTION AT

10:43AM   5     THIS TIME OTHER THAN TO SAY THAT MS. HOLMES HAS ALWAYS BELIEVED

10:43AM   6     THAT THE DATABASE WOULD BE EXCULPATORY IN THIS CASE.

10:43AM   7          THE SECOND QUESTION THAT YOUR HONOR ASKED RELATES TO --

10:44AM   8          THE COURT:  THEN WHY DIDN'T YOU HAVE A COPY OF IT,

10:44AM   9     THEN?  I GUESS I'M NOT MISSING -- I'M MISSING THAT PART.  IS

10:44AM  10     THAT PART OF THE BALANCING THAT IT WAS NOT IN THE GOVERNMENT'S

10:44AM  11     POSSESSION, THE ACTUAL WORKING COPY?  THE GOVERNMENT NEVER HAD

10:44AM  12     AN ACTUAL WORKING COPY OF THE DATABASE.  THERANOS DID.

10:44AM  13          AND AS YOU JUST SAID, IT WAS ALWAYS IMPORTANT TO YOUR

10:44AM  14     CLIENT FOR THE EXCULPATORY REASONS.  SHE HAD COUNSEL AT THE

10:44AM  15     TIME THAT THIS WAS GOING ON.

10:44AM  16          DOES THAT FACT ENTER INTO THE BALANCING AT ALL?

10:44AM  17          MS. SAHARIA:  I'M RELUCTANT TO ANSWER THAT QUESTION

10:44AM  18     WITHOUT CONSULTING WITH THE REST OF MY TEAM AND MY CLIENT --

10:44AM  19          THE COURT:  OKAY.  SURE.  OF COURSE.

10:44AM  20          MS. SAHARIA:  -- BECAUSE I DON'T WANT TO REVEAL

10:44AM  21     PRIVILEGED COMMUNICATIONS OR COMMON INTEREST PRIVILEGED

10:44AM  22     COMMUNICATIONS, YOUR HONOR.

10:44AM  23          THE COURT:  OKAY.  FAIR ENOUGH.  FAIR ENOUGH.

10:44AM  24          MS. SAHARIA:  BUT I WILL CONSULT WITH MY TEAM ABOUT

10:44AM  25     THAT QUESTION.

10:45AM 1    YOU HAD ALSO ASKED A QUESTION ABOUT A PARTICULAR EMAIL

10:45AM 2    FROM MR. TAYLOR WHO DID BECOME THE CEO OF THE COMPANY.  I DON'T

10:45AM 3    THINK ANYTHING IN THAT EMAIL REVEALS ANY SORT OF NEFARIOUS

10:45AM 4    INTENT TO HIDE A PASSWORD FROM THERANOS, EXCUSE ME, FROM THE

10:45AM 5    GOVERNMENT.  THERE'S NOTHING I THINK IN THAT EMAIL ABOUT THAT

10:45AM 6    FACT, BUT I DO THINK THAT'S WHY ALL OF THESE ISSUES CREATE

10:45AM 7    DISPUTED ISSUES OF FACT THAT SHOULD BE EXPLORED AT A HEARING.

10:45AM 8    WHAT DID THE GOVERNMENT KNOW ABOUT THE IMPLICATIONS OF

10:45AM 9    THERANOS CLOSING?

10:45AM 10   WHY DID IT WAIT A YEAR AND A HALF TO SECURE THE MOST

10:45AM 11   IMPORTANT EVIDENCE IN THE CASE AT A TIME WHEN IT KNEW THE

10:45AM 12   COMPANY WAS ABOUT TO CLOSE AND THAT IT MAY LACK ACCESS TO THAT

10:45AM 13   INFORMATION?

10:45AM 14   WHY DID IT SIT WITH THE HARD COPY OF THE LIS DATABASE FOR

10:45AM 15   A YEAR AND A HALF?

10:46AM 16   WHY DID IT SHOW SUCH LITTLE INTEREST IN THIS EVIDENCE THAT

10:46AM 17   IT CLAIMS WOULD HAVE BEEN INCULPATORY, THE MOST RELEVANT

10:46AM 18   EVIDENCE IN THE CASE, AND IT SHOWED NO INTEREST IN ACCESSING IT

10:46AM 19   FOR A YEAR AND A HALF, AND BY THE TIME IT FINALLY TRIED TO

10:46AM 20   ACCESS IT, ALL OF THE WITNESSES WHO COULD HAVE PROVIDED A

10:46AM 21   PASSWORD PRESUMABLY DON'T HAVE ACCESS TO IT ANYMORE, AND THE

10:46AM 22   PHYSICAL SERVER THAT COULD HAVE BEEN RESTORED, ACCORDING TO THE

10:46AM 23   EXPERTS WHO WORKED AT THERANOS, ALSO HAD BEEN LOST?

10:46AM 24   SO IT IS FUNDAMENTALLY THE GOVERNMENT'S LACK OF DILIGENCE,

10:46AM 25   ITS FAILURE TO HEED THE ADVICE OF ITS STAFF THAT HAS PUT -- AND

10:46AM 1    ITS EXTREME DELAY IN TRYING TO GET THIS EVIDENCE IN THE FIRST

10:46AM 2    PLACE THAT IS AT LEAST PARTLY TO BLAME FOR OUR INABILITY TO USE

10:46AM 3    THE DATABASE.

10:46AM 4        I'VE JUMPED AHEAD TO KIND OF COVERING A LOT OF THE FACTS.

10:46AM 5    LET ME JUST, IF I MAY, TOUCH ON A FEW LEGAL ISSUES THAT I THINK

10:47AM 6    COME OUT OF THE PARTIES' BRIEFS, AND THEN I'LL GO BACK AND

10:47AM 7    COVER A FEW OF THE OTHER RELEVANT FACTS HERE.

10:47AM 8        AS I INDICATED AT THE BEGINNING, WE HAVE MOVED UNDER TWO

10:47AM 9    STANDARDS.  THE FIRST IS THE DUE PROCESS CLAUSE AND THE SECOND

10:47AM 10   IS LOUD HAWK.

10:47AM 11       THE LOUD HAWK STANDARD GOVERNS SANCTIONS THAT ARE LESS

10:47AM 12   THAN DISMISSAL SUCH AS SUPPRESSION, AND THE LOUD HAWK TEST IS

10:47AM 13   GOVERNED BY THEN JUDGE KENNEDY'S, JUSTICE KENNEDY'S CONCURRING

10:47AM 14   OPINION IN THAT CASE THAT HAS BEEN ADOPTED BY THE NINTH CIRCUIT

10:47AM 15   AS THE LAW OF THE CIRCUIT.

10:47AM 16       JUDGE KENNEDY ARTICULATED A BALANCING TEST THAT I THINK

10:47AM 17   YOUR HONOR HAS ALLUDED TO.  YOU HAVE ON ONE SIDE THE QUALITY OF

10:47AM 18   THE GOVERNMENT CONDUCT THAT IS WEIGHED AGAINST THE PREJUDICE TO

10:47AM 19   THE DEFENDANT.  AND AS JUDGE KENNEDY EXPLAINED, IT'S DONE ON A

10:47AM 20   SLIDING SCALE OF SORTS.  SO THE GREATER THE PREJUDICE TO THE

10:47AM 21   DEFENDANT, THE LESS CULPABLE CONDUCT YOU REQUIRE FROM THE

10:48AM 22   GOVERNMENT AND VICE VERSA, THE MORE CULPABLE THE GOVERNMENT

10:48AM 23   CONDUCT, THE LESS THE AMOUNT OF PREJUDICE THAT WOULD BE

10:48AM 24   REQUIRED.  AND IN CASES OF SEVERE PREJUDICE, FOR EXAMPLE, HE

10:48AM 25   SAID THE GOOD FAITH OR BAD FAITH OF THE GOVERNMENT MIGHT BE

10:48AM  1    IMMATERIAL TO CONDUCTING THAT BALANCING TEST.

10:48AM  2         AS I INDICATED BEFORE, IT'S THE GOVERNMENT'S BURDEN UNDER

10:48AM  3    THAT TEST TO JUSTIFY ITS CONDUCT, AND THEN THE DEFENDANT BEARS

10:48AM  4    THE BURDEN TO ESTABLISH PREJUDICE.

10:48AM  5         LET ME JUST TOUCH ON TWO ISSUES THAT RELATE TO THAT

10:48AM  6    BALANCING TEST THAT COME OUT OF THE GOVERNMENT'S OPPOSITION

10:48AM  7    BRIEF.

10:48AM  8         FIRST, THE GOVERNMENT REPEATEDLY CLAIMS IN ITS BRIEF THAT

10:48AM  9    BAD FAITH IS REQUIRED.  UNDER LOUD HAWK THAT IS SIMPLY

10:48AM  10   INCORRECT.  THAT'S AN INCORRECT STATEMENT OF THE LAW.

10:48AM  11        THE GOVERNMENT CITED JUDGE TRASK'S OPINION IN LOUD HAWK

10:48AM  12   FOR THAT PROPOSITION WHERE THEY STATED THAT BAD FAITH OR

10:48AM  13   CONNIVANCE IS REQUIRED.  BUT JUDGE TRASK'S OPINION IS NOT THE

10:49AM  14   LAW OF THE CIRCUIT, JUDGE KENNEDY'S OPINION IS.  AND AS I'VE

10:49AM  15   INDICATED, JUDGE KENNEDY'S OPINION IS CRYSTAL CLEAR THAT BAD

10:49AM  16   FAITH IS NOT REQUIRED.

10:49AM  17        THE SECOND IS THAT THE SAME INQUIRY UNDER LOUD HAWK

10:49AM  18   APPLIES TO A CASE WHERE THE GOVERNMENT EITHER FAILED TO

10:49AM  19   PRESERVE EVIDENCE IN ITS POSSESSION OR FAILED TO COLLECT

10:49AM  20   EVIDENCE.

10:49AM  21        WE THINK THIS IS NOT A CASE ABOUT A FAILURE TO COLLECT FOR

10:49AM  22   THE REASONS WE'VE BEEN DISCUSSING.  THE GOVERNMENT DID HAVE A

10:49AM  23   COPY OF THE LIS DATABASE IN ITS POSSESSION AND DIDN'T TAKE ANY

10:49AM  24   STEPS TO TRY TO MAKE IT WORK, BUT EVEN IF THE COURT THOUGHT

10:49AM  25   THAT THIS WAS A CASE ABOUT A FAILURE TO COLLECT, WHEN

10:49AM 1   JUDGE KENNEDY ENUMERATED THE FACTORS THAT ARE RELEVANT TO THE

10:49AM 2   GOVERNMENT CONDUCT, ONE OF THE FACTORS IS, QUOTE, "WHETHER THE

10:49AM 3   EVIDENCE WAS LOST OR DESTROYED WHILE IN ITS CUSTODY."

10:49AM 4       SO THAT IS A RELEVANT FACTOR, WHETHER THE GOVERNMENT HAD

10:49AM 5   CUSTODY OF THE EVIDENCE WHEN IT WAS LOST, BUT IT'S NOT

10:50AM 6   DISPOSITIVE.  JUDGE KENNEDY CLEARLY ARTICULATED THAT AS ONE OF

10:50AM 7   SEVERAL RELEVANT FACTORS.  AND SO WE SUBMIT THAT THE

10:50AM 8   GOVERNMENT'S SUBMISSION TO THE COURT THAT THAT IS DISPOSITIVE

10:50AM 9   IS NOT SUPPORTED BY LOUD HAWK AND NO NINTH CIRCUIT CASE SO

10:50AM 10   HOLDS.

10:50AM 11       I'M NOT GOING TO DISCUSS THE DUE PROCESS INQUIRY UNTIL THE

10:50AM 12   COURT HAS QUESTIONS ABOUT THAT, BUT I WILL JUST NOTE THAT IT'S

10:50AM 13   ALSO CRYSTAL CLEAR UNDER NINTH CIRCUIT LAW THAT A FAILURE TO

10:50AM 14   COLLECT EVIDENCE CAN GIVE RISE TO A DUE PROCESS VIOLATION IF IT

10:50AM 15   OCCURS IN BAD FAITH, AND THAT'S THE MILLER VERSUS VASQUEZ CASE.

10:50AM 16       SO, YOUR HONOR, WE'VE ALREADY DISCUSSED SOME OF THE

10:50AM 17   RELEVANT FACTS THAT WE THINK GIVE RISE TO A DISPUTE OF FACT

10:50AM 18   WITH RESPECT TO THE GOVERNMENT'S CONDUCT.  THE GOVERNMENT

10:50AM 19   ITSELF HAS CONCEDED THAT DISPUTE IN THE PAST.  AT THE MAY 4TH

10:50AM 20   HEARING IT SAID, "WHEN IT COMES TO BLAME FOR THE LOSS OF THE

10:51AM 21   LIS, AS THE COURT CAN TELL THIS IS A VERY HOTLY DEBATED FACTUAL

10:51AM 22   DISPUTE."  THAT WAS AT PAGE 81 AND THEN AGAIN AT PAGE 83.  SO

10:51AM 23   THERE IS A FACTUAL DISPUTE HERE.  THE GOVERNMENT RECOGNIZES

10:51AM 24   THAT.

10:51AM 25       WE FULLY AGREE THERE IS A DISPUTE OF FACT.  EVEN IF THE

10:51AM  1    COURT THINKS THAT THERE IS SOME BLAME ON THE THERANOS SIDE,

10:51AM  2    AND, AGAIN, NONE OF THAT BLAME LIES WITH MS. HOLMES, THERE'S A

10:51AM  3    WHOLE HOST OF FACTS THAT ARE NOT YET CLEAR BOTH WITH RESPECT TO

10:51AM  4    WHAT HAPPENED ON THE THERANOS SIDE OF THINGS AND WITH RESPECT

10:51AM  5    TO WHAT HAPPENED ON THE GOVERNMENT'S SIDE OF THINGS AND IN

10:51AM  6    PARTICULAR THE REASONS WHY THE PROSECUTORS BOTH DELAYED SO LONG

10:51AM  7    IN ATTEMPTING TO COLLECT THE EVIDENCE AND THEN WHY THEY DELAYED

10:51AM  8    SO LONG IN ATTEMPTING TO ACCESS THE EVIDENCE SUCH THAT THE

10:51AM  9    ABILITY TO ACCESS IT OR TO OBTAIN THE PHYSICAL SERVER WAS AT

10:51AM 10    THAT POINT GONE.

10:52AM 11        THE GOVERNMENT CLEARLY KNEW THE VALUE OF LIS.  IT HAD

10:52AM 12    KNOWN FOR A YEAR AND A HALF, SINCE DECEMBER OF 2016 AT LEAST,

10:52AM 13    ABOUT THE LIS DATABASE.  IT KNEW THAT IT CONTAINED ALL OF THE

10:52AM 14    TEST RESULTS.  IT KNEW THAT IT IDENTIFIED THE SPECIFIC DEVICE

10:52AM 15    THAT GENERATED EACH RESULT WHICH IS VERY IMPORTANT EVIDENCE IN

10:52AM 16    THIS CASE THAT HAS BEEN LOST.  IT KNEW THAT THE ACCURACY AND

10:52AM 17    RELIABILITY OF THE TEST RESULTS WOULD BE CENTRAL TO ITS CASE

10:52AM 18    GIVEN THE ALLEGATIONS IN THE INDICTMENT, AND IT KNEW THAT SOME

10:52AM 19    DOCTORS WHO HAD SENT PATIENTS TO LIS BELIEVED THAT THEIR TEST

10:52AM 20    RESULTS WERE ACCURATE AND RELIABLE.  THOSE TEST RESULTS

10:52AM 21    OF COURSE RESIDED IN THE LIS AND CONSTITUTE EXCULPATORY

10:52AM 22    EVIDENCE THAT WAS IN THE LIS.

10:52AM 23        I'M NOT GOING TO REPEAT THE FACTS THAT WE HAVE TALKED

10:52AM 24    ABOUT WITH RESPECT TO THE GOVERNMENT'S BOTH DISREGARDING OF THE

10:53AM 25    ADVICE FROM THERANOS'S COUNSEL ABOUT WHAT THEY NEEDED TO DO TO

10:53AM   1    RESTORE THE DATABASE, TO OBTAIN THE SPECIFIC SOFTWARE, NOR --

10:53AM   2    AND THEN AS WELL AS THE ADVICE FROM THE SUPPORT STAFF.  JUST

10:53AM   3    FOR THE RECORD, THAT'S OUTLINED IN THE GOVERNMENT'S BRADY

10:53AM   4    LETTER AT PARAGRAPHS 46 TO 47 AND 49.  AS I INDICATED, THERE IS

10:53AM   5    REASON TO THINK THAT THOSE WOULD HAVE BEEN FRUITFUL AVENUES

10:53AM   6    EITHER CONSULTING WITH THE FBI OR OBTAINING THE ACTUAL PHYSICAL

10:53AM   7    HARDWARE WHICH MULTIPLE WITNESSES HAVE SAID COULD HAVE BEEN

10:53AM   8    RESTORED.

10:53AM   9         TO BE SURE THE GOVERNMENT -- YOU KNOW, I'M SURE WE'RE

10:53AM  10    GOING TO HEAR THIS -- WANTS TO PIN THE BLAME ON THE THERANOS

10:53AM  11    INDIVIDUALS WHO PRODUCED THE DATABASE COPY, AGAIN, THAT WAS

10:53AM  12    ONLY ONE OF TWO PATHS.  THAT DOESN'T ADDRESS THE SERVER ITSELF

10:54AM  13    AND THE GOVERNMENT'S FAILURE TO COLLECT THAT PHYSICAL SERVER.

10:54AM  14    BUT AGAIN, EVEN WITH RESPECT TO THAT, WHAT HAPPENED WITH THE

10:54AM  15    DATABASE COPY, THE RECORD IS JUST NOT VERY PRECISE ABOUT WHY

10:54AM  16    THAT HAPPENED, WHAT THOSE INDIVIDUALS THOUGHT ABOUT WHETHER THE

10:54AM  17    GOVERNMENT COULD ACCESS THAT COPY.

10:54AM  18         AND WITH THE BURDEN ON THE GOVERNMENT TO JUSTIFY ITS

10:54AM  19    CONDUCT AND THEIR FAILURE TO JUSTIFY THEIR EXTREME DELAYS IN

10:54AM  20    BOTH OBTAINING AND ACCESSING THE COPY, WE JUST THINK THEY

10:54AM  21    HAVEN'T MADE THAT SHOWING AT THIS POINT AND THAT IS WHY A

10:54AM  22    HEARING IS REQUIRED.

10:54AM  23              THE COURT:  THANK YOU.

10:54AM  24         LET ME ASK, MS. SAHARIA, WE'RE TALKING ABOUT ANECDOTAL,

10:54AM  25    AND THIS IS PART OF THE IN LIMINE MOTIONS, WHETHER OR NOT

10:54AM 1    ANECDOTAL INFORMATION CAN COME IN.  YOUR IN LIMINE MOTION,

10:54AM 2    MAYBE IT WAS THE GOVERNMENT'S, SOUGHT TO PRECLUDE YOU, HOUR

10:54AM 3    TEAM, FROM USING THE TERM "ANECDOTAL.  I THINK THERE WAS

10:54AM 4    SOMETHING PEJORATIVE ABOUT THAT TERM IN THE GOVERNMENT'S MIND.

10:55AM 5        AND I THINK I SAID, NO, YOU CAN PUT ON A DEFENSE.  YOU

10:55AM 6    CAN CALL IT WHAT YOU WOULD LIKE, ET CETERA.

10:55AM 7        IN THAT REGARD IT SEEMS LIKE THERE'S CRITICISM OF AT LEAST

10:55AM 8    THE STATE OF THE EVIDENCE NOW, PRETRIAL I UNDERSTAND, THAT

10:55AM 9    THERE WAS ARGUMENT IN LIMINE THAT, WELL, THEY'RE ONLY GOING TO

10:55AM 10   HAVE 11 WITNESSES WHO ARE TALKING TO TALK ABOUT BAD TESTS, I'LL

10:55AM 11   JUST CALL IT BAD TESTS, INCORRECT TESTS, AND THAT'S NOT ENOUGH.

10:55AM 12   AND THAT WAS, I THINK, THE DEFENSE ARGUMENT AS TO AN ISSUE.

10:55AM 13       BUT IN THE DOCUMENTS THAT I'VE READ IN REGARDS TO THIS

10:55AM 14   MOTION, I THINK YOU TALK ALSO ABOUT -- YOUR TEAM, NOT YOU BUT

10:55AM 15   YOUR TEAM, TALK ABOUT YOU HAVE OTHER DOCTORS WHO, INCLUDING A

10:55AM 16   DOCTOR WHO IS GOING TO SAY, OH, THEY WERE MY GO TO.  THERANOS

10:55AM 17   WAS MY GO-TO TESTER, AND I HAD GREAT CONFIDENCE IN THEM.

10:55AM 18       I RAISE THAT BECAUSE THAT SEEMS THAT YOU HAVE EVIDENCE

10:55AM 19   THAT YOU CAN PUT ON TO REBUT, TO CHALLENGE THE ANECDOTAL, I'LL

10:56AM 20   CALL IT, EVIDENCE THAT THE GOVERNMENT IS GOING TO PUT ON

10:56AM 21   VIS-A-VIS THESE DOCTORS THAT YOU HAVE IDENTIFIED AND OTHER

10:56AM 22   WITNESSES THAT YOU HAVE IDENTIFIED IN THESE PLEADINGS.

10:56AM 23       IS THAT ACCURATE?

10:56AM 24           MS. SAHARIA:  SO I THINK THAT QUESTION BRINGS US TO

10:56AM 25   THE SECOND PART OF THE BALANCING TEST, WHICH IS WHAT IS THE

10:56AM  1      PREJUDICE TO THE DEFENSE?

10:56AM  2          AND ONE OF THE FACTORS THAT JUDGE KENNEDY OUTLINED IN

10:56AM  3      LOUD HAWK IS THE ADEQUACY OF THE SUBSTITUTE EVIDENCE, IN THIS

10:56AM  4      CASE SUBSTITUTE EVIDENCE, ANECDOTES FROM INDIVIDUAL DOCTORS,

10:56AM  5      FOR INSTANCE, THAT THEY RECEIVED IN ACCURATE TEST RESULTS.

10:56AM  6          AND WE WOULD SUBMIT THAT THERE'S NO SUBSTITUTE FOR THE

10:56AM  7      LIS DATABASE.  THE GOVERNMENT ADMITTED THIS ITSELF IN ITS

10:56AM  8      OPPOSITION BRIEF TO OUR MOTION TO EXCLUDE ANECDOTAL EVIDENCE.

10:56AM  9      THIS WAS ECF 682, PAGE 1.  THEY SAID, "DATA IS A POWERFUL THING

10:57AM 10      BECAUSE IT SPEAKS FOR ITSELF."

10:57AM 11          WE TOTALLY AGREE WITH THAT.  THERE'S NOTHING LIKE HAVING

10:57AM 12      THE ACTUAL DATA AND THE ACTUAL TEST RESULTS AND ALL OF THE

10:57AM 13      INFORMATION ABOUT THOSE TEST RESULTS TO CONVINCE A JURY THAT

10:57AM 14      THE GOVERNMENT'S CASE IS WRONG.

10:57AM 15          AN ANECDOTE FROM A DOCTOR THAT THEY HAD A GOOD EXPERIENCE

10:57AM 16      IS NO SUBSTITUTE FOR HARD COLD SCIENTIFIC DATA THAT RESIDED IN

10:57AM 17      THE DATABASE.

10:57AM 18          I CAN GIVE THE COURT I THINK MAYBE FIVE EXAMPLES OF THE

10:57AM 19      EXTREME PREJUDICE THAT HAS ACCRUED TO MS. HOLMES FROM THE

10:57AM 20      INABILITY TO ACCESS THE LIS DATA THAT I THINK GO TO THIS

10:57AM 21      QUESTION.

10:57AM 22          THE FIRST IS VAST QUANTITIES OF ACCURATE AND RELIABLE TEST

10:57AM 23      RESULTS RESIDE IN THE LIS DATABASE, RESIDED IN THE DATABASE I

10:57AM 24      SHOULD SAY, ALMOST CERTAINLY MILLIONS OF THEM.

10:57AM 25          AND WE CAN, YOU KNOW, CALL A DOCTOR TO TALK ABOUT THEIR

10:58AM  1    ANECDOTAL EXPERIENCE TO TRY TO COUNTER THE GOVERNMENT'S

10:58AM  2    ANECDOTES, BUT THAT'S NO MATCH FOR THE MILLIONS OF WHAT WE

10:58AM  3    BELIEVE ARE MILLIONS OF ACCURATE RESULTS IN THE DATABASE.

10:58AM  4         NOW, THE GOVERNMENT RESPONDS TO THAT, WELL, THAT YOU CAN'T

10:58AM  5    KNOW FROM ANY ONE TEST RESULT IN THE DATABASE WHETHER IT WAS

10:58AM  6    ACCURATE OR NOT.  YOU KNOW, MAYBE IT WAS WITHIN A NORMAL RANGE,

10:58AM  7    BUT THE PATIENT ACTUALLY SHOULD HAVE HAD AN ABNORMAL TEST

10:58AM  8    RESULT, AND SO YOU CAN'T KNOW THAT IT'S ACCURATE.  THAT'S THEIR

10:58AM  9    RESPONSE.

10:58AM 10         PERHAPS IT'S TRUE AS TO ONE INDIVIDUAL TEST RESULT, BUT

10:58AM 11    WHEN YOU HAVE MILLIONS OF TEST RESULTS, YOU, OF COURSE, CAN

10:58AM 12    PERFORM ANALYSES WITH THAT DATA THAT WOULD LEAVE A JURY TO

10:58AM 13    CONCLUDE THAT THEY WERE ACCURATE AND RELIABLE.

10:58AM 14         FOR EXAMPLE, YOU COULD IDENTIFY THE SPREAD OF TEST RESULTS

10:58AM 15    THAT OCCURRED OVER VARIOUS REFERENCE RANGES AND DETERMINE HOW

10:58AM 16    MANY OF THEM FELL WITHIN THE EXPECTED RANGE.  WERE THERE AN

10:58AM 17    EXTREME NUMBER OF OUTLIERS OR NOT?  AND IF THERE WERE NOT, THAT

10:59AM 18    WOULD BE PRETTY GOOD EVIDENCE TO A JURY THAT THESE TESTS WERE

10:59AM 19    ACCURATE AND RELIABLE BECAUSE THEY FELL WITHIN THE EXPECTED

10:59AM 20    RANGE.  AND WE CAN'T --

10:59AM 21              THE COURT:  DID THE LIS -- I'M SORRY, MS. SAHARIA.

10:59AM 22              MS. SAHARIA:  YES.

10:59AM 23              THE COURT:  DID THE LIS ALLOW FOR THE INTRODUCTION

10:59AM 24    OF THIRD PARTY TESTS?

10:59AM 25         I THINK THE EVIDENCE SEEMS TO SHOW THAT THERE WERE THIRD

10:59AM  1    PARTY TESTS THAT WERE TAKEN FROM PATIENTS WHO, FOR WHATEVER

10:59AM  2    REASON, WANTED TO GET A TEST OUTSIDE OF THERANOS, THEY GOT A

10:59AM  3    DIFFERENT RESULT.  AND JUST FOR PURPOSES OF OUR DISCUSSION,

10:59AM  4    I'LL SAY THAT THEY BELIEVED THAT THAT THIRD PARTY TEST WAS MORE

10:59AM  5    ACCURATE.

10:59AM  6         AND DID THE LIS CONTAIN INFORMATION SUCH THAT THE ACCURATE

10:59AM  7    TESTS, THE THIRD PARTY TEST WAS REINTRODUCED INTO THE LIS?

10:59AM  8              MS. SAHARIA:  I DON'T BELIEVE SO, YOUR HONOR.  BUT

10:59AM  9    IF I'M WRONG, MR. WADE CAN JUMP IN AND SAY SO.

11:00AM  10        THERE ARE CIRCUMSTANCES WHERE THERANOS ITSELF WOULD SEND

11:00AM  11   CERTAIN TESTS OUT TO A THIRD PARTY VENDOR IF IT DIDN'T HAVE THE

11:00AM  12   CAPACITY TO CONDUCT THAT PARTICULAR TEST.  I UNDERSTAND THAT

11:00AM  13   THAT IS COMMON IN THE LABORATORY INDUSTRY.  THEY'RE CALLED

11:00AM  14   REFERENCE LABS.

11:00AM  15        I THINK THAT INFORMATION WOULD BE INCLUDED IN THE

11:00AM  16   LIS DATABASE.  THAT IS IMPORTANT INFORMATION, THE PARTICULAR

11:00AM  17   WAY THAT A TEST WAS CONDUCTED, WHICH DEVICE WAS IT CONDUCTED

11:00AM  18   ON.  WAS IT CONDUCTED ON THE THERANOS DEVICE OR WAS IT

11:00AM  19   CONDUCTED ON A COMMERCIALLY AVAILABLE DEVICE?  THAT'S CRITICAL

11:00AM  20   INFORMATION THAT IS NOW LOST TO US BECAUSE -- TAKE ONE OF THE

11:00AM  21   GOVERNMENT'S ANECDOTAL PATIENTS WHO IS GOING TO COME IN AND SAY

11:00AM  22   THEIR TEST RESULT WAS INACCURATE.  IF WE CAN SHOW AT THE LIS

11:00AM  23   DATABASE THAT THAT TEST RESULT WAS NOT RUN ON A THERANOS DEVICE

11:00AM  24   BUT WAS RUN ON SOME OTHER COMMERCIALLY AVAILABLE DEVICE, THAT

11:01AM  25   WOULD BE PRETTY GOOD EVIDENCE THAT THE ERROR WAS NOT THE RESULT

11:01AM 1      OF THERANOS TECHNOLOGY, IT WAS THE RESULT OF SOME OTHER FACTOR.

11:01AM 2          SO WE CAN'T MEET THE GOVERNMENT'S ANECDOTES WITHOUT ACCESS

11:01AM 3      TO THE FULL RANGE OF LIS DATA THAT RELATES TO THESE TEST

11:01AM 4      RESULTS.

11:01AM 5              THE COURT:  IS THAT ONE OF THE ALLEGATIONS THAT THE

11:01AM 6      GOVERNMENT MAKES THAT THERANOS WAS REPRESENTING THAT ALL OF THE

11:01AM 7      TESTS WERE DONE ON THEIR PROPRIETARY DEVICES WHEN, IN FACT,

11:01AM 8      THEY WERE DONE ON A SEPARATE DEVICE?  SO WOULDN'T THAT BE

11:01AM 9      INCULPATING EVIDENCE?

11:01AM 10             MS. SAHARIA:  WELL, WITH RESPECT TO THE PATIENT

11:01AM 11     COUNTS THAT WOULD BE EXCULPATING EVIDENCE, YOUR HONOR, BECAUSE

11:01AM 12     THEIR CLAIM IS THAT THERANOS TECHNOLOGY WAS INCAPABLE OF

11:01AM 13     PRODUCING ACCURATE AND RELIABLE RESULTS.

11:01AM 14         SO IF A PATIENT IS GOING TO COME IN AND TALK ABOUT AN

11:02AM 15     INACCURATE TEST RESULT BUT THE CAUSE OF THAT INACCURACY CANNOT

11:02AM 16     POSSIBLY BE THERANOS TECHNOLOGY, THAT WOULD BE EXCULPATORY

11:02AM 17     INFORMATION WITH RESPECT TO THAT INDIVIDUAL PATIENT BECAUSE IT

11:02AM 18     WOULD SHOW THE CAUSE MUST BE SOMETHING ELSE.

11:02AM 19         NOW, A FEW OTHER EXAMPLES.  WITH RESPECT TO THE CMS

11:02AM 20     REPORT, FOR EXAMPLE, WE CAN'T ADEQUATELY REBUT THE GOVERNMENT'S

11:02AM 21     RELIANCE ON THE CMS REPORT WITHOUT ACCESS TO LIS BECAUSE THE

11:02AM 22     DATA, YOU KNOW, THE SMALL SAMPLES OF DATA THAT ARE REFLECTED IN

11:02AM 23     THE CMS REPORT OF COURSE CAME OUT OF LIS.  THEY REFLECT

11:02AM 24     INFORMATION IN LIS, BUT THEY'RE ONLY FOR LIMITED TIME PERIODS.

11:02AM 25     AND WE LACK THE FULL DATA FROM LIS THAT WOULD BE NECESSARY TO

11:02AM   1    PUT THAT DATA IN CONTEST.

11:02AM   2          THE COURT:  IS THERE SOME DATA FROM LIS THAT EXISTS

11:02AM   3    THAT RELATES TO CMS, THOUGH?  I THOUGHT I READ SOMETHING THAT

11:02AM   4    SAID THAT THERE IS SOME DATA FROM THE LIS THAT EXISTS AND

11:03AM   5    PERHAPS THAT'S RELEVANT TO THE CMS?

11:03AM   6          MS. SAHARIA:  WELL, THERE IS SOME DATA FROM CMS THAT

11:03AM   7    WAS PRODUCED -- EXCUSE ME, FROM LIS THAT WAS PRODUCED OVER THE

11:03AM   8    COURSE OF THE GOVERNMENT'S INVESTIGATION IN RESPONSE TO

11:03AM   9    SPECIFIC REQUESTS FOR SPECIFIC KINDS OF INFORMATION, BUT IT'S

11:03AM  10    NOT THE FULL RANGE OF DATA.

11:03AM  11        NOW, I THINK WHAT YOUR HONOR MIGHT BE THINKING OF IS THAT

11:03AM  12    THE GOVERNMENT HAS REPEATEDLY REFERRED TO POTENTIAL TESTIMONY

11:03AM  13    FROM THERANOS'S LAB DIRECTOR IN 2016.  HIS NAME IS MR. DAS WHO

11:03AM  14    THEY WANT TO TESTIFY ABOUT VARIOUS ANALYSES THAT HE PERFORMED

11:03AM  15    FOLLOWING THE CMS REPORT, AND, OF COURSE, THOSE WOULD HAVE BEEN

11:03AM  16    PERFORMED USING DATA FROM THE LIS.

11:03AM  17        HOW ARE WE SUPPOSED TO CONFRONT HIS RECOLLECTION OF WHAT

11:03AM  18    ANALYSES HE PERFORMED OR TEST THE RELIABILITY OF HIS ANALYSES

11:04AM  19    WITHOUT ACCESS TO THE ACTUAL DATA ON WHICH HE BASED THOSE

11:04AM  20    ANALYSES?

11:04AM  21        THE LOSS OF THE LIS DATA IS QUITE EQUIVOCAL TO CONFRONTING

11:04AM  22    THAT KIND OF TESTIMONY THAT THEY WANT TO PUT AT ISSUE.  AND

11:04AM  23    SIMILARLY WITH THE TESTIMONY OF DR. MASTER, IN HIS SUPPLEMENTAL

11:04AM  24    REPORT HE CONDUCTS VARIOUS CALCULATIONS THAT USES INPUT, OTHER

11:04AM  25    CALCULATIONS PERFORMED BY UNIDENTIFIED THERANOS WITNESSES THAT

11:04AM 1    THEY DID WITH THE LIS DATA.  SO HE'S NOW TWO OR THREE STEPS

11:04AM 2    REMOVED FROM THE LIS DATA PERFORMING CALCULATIONS, AND WITHOUT

11:04AM 3    ACCESS TO THE LIS DATA, IT'S UNCLEAR HOW WE CAN TEST THE

11:04AM 4    RELIABILITY OF THOSE CALCULATIONS.

11:04AM 5        SO THERE ARE ALL SORTS OF WAYS IN WHICH OUR LACK OF ACCESS

11:04AM 6    TO THE LIS DATA BOTH DEPRIVES US OF THE MOST CRITICAL

11:04AM 7    EXCULPATORY EVIDENCE IN THE CASE AND HINDERS OUR ABILITY TO

11:04AM 8    CONFRONT THE GOVERNMENT'S WITNESSES, TO CONFRONT THE

11:04AM 9    GOVERNMENT'S EVIDENCE.

11:04AM 10       AND THEN WHAT IS ONE FINAL POINT WITH RESPECT TO THE

11:05AM 11   PREJUDICE, AND I THINK THIS TOUCHES ON YOUR HONOR'S QUESTION

11:05AM 12   ABOUT, YOU KNOW, KIND OF HOW THIS COULD PLAY OUT AT TRIAL.  YOU

11:05AM 13   KNOW, JUDGE KENNEDY RECOGNIZED IN LOUD HAWK THE VERY SEVERE

11:05AM 14   PREJUDICE THAT CAN ACCRUE WHEN THIS KIND OF -- EVIDENCE ABOUT

11:05AM 15   LOSS OF DATA OR LOSS OF EVIDENCE IS PRESENTED TO A JURY.

11:05AM 16       NO MATTER HOW CLEAR IT IS, AND WE THINK IT'S CRYSTAL CLEAR

11:05AM 17   THAT MS. HOLMES HAD NO ROLE IN THESE EVENTS, THERE IS A SEVERE

11:05AM 18   RISK OF PREJUDICE TO MS. HOLMES IF WE HAVE TO LITIGATE THESE

11:05AM 19   FACTS ABOUT WHO LOST THE DATA IN FRONT OF THE JURY.  THE JURY

11:05AM 20   MAY WELL SPECULATE ABOUT THE INTENTIONS OF THERANOS'S EMPLOYEES

11:05AM 21   WITHOUT A PROPER BASIS FOR DOING SO, OR GOD FORBID, THEY MAY

11:05AM 22   INFER THAT MS. HOLMES HAD SOMETHING TO DO WITH IT, EVEN THOUGH

11:05AM 23   SHE DIDN'T, PERHAPS BECAUSE THE GOVERNMENT KEEPS TRYING TO

11:06AM 24   INSINUATE THAT WITHOUT ANY FACTUAL BASIS FOR DOING THAT.

11:06AM 25       IT WOULD BE VERY PREJUDICIAL FOR US TO HAVE TO LITIGATE

11:06AM 1      THESE ISSUES IN FRONT OF THE JURY, AND THAT'S WHY WE THINK THE

11:06AM 2      APPROPRIATE COURSE IS FOR THE COURT TO HOLD AN EVIDENTIARY

11:06AM 3      HEARING BEFORE TRIAL OUTSIDE OF THE JURY'S PRESENCE WHERE WE

11:06AM 4      CAN DEVELOP THESE FACTS, AND THEN THE COURT CAN DETERMINE WITH

11:06AM 5      ALL OF THE FACTS BEFORE IT, WHICH ARE NOT YET BEFORE THE COURT,

11:06AM 6      WHAT THE APPROPRIATE REMEDY WOULD BE.

11:06AM 7              THE COURT:  SO WE TALKED ABOUT THIS IN THE IN LIMINE

11:06AM 8      MOTIONS, DIDN'T WE?  AND I THINK IN MY RULING ON THIS

11:06AM 9      PARTICULAR IN LIMINE MOTION THE COURT DEFERRED IT DEPENDENT ON

11:06AM 10     WHETHER OR NOT THE DEFENSE WAS GOING TO INTRODUCE THIS IN YOUR

11:06AM 11     CASE-IN-CHIEF.  YOU MIGHT DECIDE TO -- AND I THINK I MENTIONED

11:06AM 12     OPENING THE DOOR.  IF YOU DECIDE TO BLAME THE GOVERNMENT FOR

11:06AM 13     THIS AND VIS-A-VIS THE GOVERNMENT THE SAME THING, AND THAT'S A

11:07AM 14     QUESTION, ISN'T IT?  IT'S STILL AN OPEN ENDED QUESTION AS TO IF

11:07AM 15     LIS IS GOING TO COME IN AT ALL.

11:07AM 16         IF IT DOESN'T COME IN, THEN WHAT YOU HAVE, AS I SUGGESTED

11:07AM 17     EARLIER, IS YOUR BATTLE OF ANECDOTAL DOCTORS TALKING ABOUT THE

11:07AM 18     ANECDOTAL INFORMATION, AND THE JURY CAN THEN DECIDE JUST BASED

11:07AM 19     ON THAT INFORMATION AT LEAST FOR WHATEVER ISSUE IT PRESENTS.

11:07AM 20         SO IF THE LIS DOESN'T COME IN, IT SEEMS LIKE YOU'RE ON

11:07AM 21     EVEN GROUND.

11:07AM 22              MS. SAHARIA:  WELL, I RESPECTFULLY DISAGREE BECAUSE

11:07AM 23     THE GOVERNMENT WANTS TO PRESENT EVIDENCE ALL OF WHICH TIES BACK

11:07AM 24     TO THE LIST.  THEY WANT TO PRESENT THE EVIDENCE OF DR. MASTER

11:07AM 25     THAT TIES BACK TO THE LIST.  THEY WANT TO PRESENT THE EVIDENCE

11:07AM 1    OF DR. DAS, A THERANOS EMPLOYEE THAT TIES BACK TO THE LIS.

11:07AM 2    THEY WANT TO PRESENT THESE ANECDOTES THAT WE CAN'T, WE CAN'T

11:07AM 3    FULLY CONFRONT THE ANECDOTES WITHOUT KNOWING THE INFORMATION

11:08AM 4    ABOUT THEM IN THE LIS.

11:08AM 5        SO I DON'T THINK THAT WE'RE ON AN EVEN PLAYING FIELD JUST

11:08AM 6    BECAUSE BOTH PARTIES LACK ACCESS TO THE LIS.

11:08AM 7        NOW, THE COURT DID RECOGNIZE IN ITS RULING A COUPLE OF

11:08AM 8    THINGS THAT I THINK ARE RELEVANT TO THIS DISCUSSION.

11:08AM 9        YOU'RE ABSOLUTELY RIGHT THAT THE COURT DID NOTE THAT THE

11:08AM 10   DEFENSE MIGHT DECIDE TO PUT THE BLAME FOR THE LOSS OF THE

11:08AM 11   EVIDENCE AT ISSUE.  THAT, OF COURSE, IS A JUDGMENT CALL THAT WE

11:08AM 12   HAVEN'T MADE, AND I THINK OUR PREFERENCE IS TO AVOID THIS

11:08AM 13   ENTIRE SIDESHOW AT TRIAL, BUT I DO THINK THAT THAT HIGHLIGHTS

11:08AM 14   THE IMPORTANCE OF OUR MOTION TO COMPEL.  THE INFORMATION IN THE

11:08AM 15   GOVERNMENT'S BRADY LETTER THAT HAS STILL NOT BEEN PRODUCED TO

11:08AM 16   US, WHICH, NAMELY, ARE THE DOCUMENTS THAT UNDERLIE THAT BRADY

11:08AM 17   LETTER THAT THE GOVERNMENT REFUSES TO PRODUCE AND EVEN THE

11:08AM 18   IDENTITIES OF THE PEOPLE NAMED IN THE BRADY LETTER, HOW CAN WE

11:08AM 19   EXERCISE A JUDGMENT ABOUT WHETHER OR NOT TO PRODUCE EVIDENCE AT

11:08AM 20   TRIAL OR TO CALL WITNESSES ON THIS ISSUE IF THE GOVERNMENT

11:09AM 21   REFUSES TO TELL US WHO THE WITNESS ARE AND REFUSES TO ACTUALLY

11:09AM 22   GIVE US THE EVIDENCE?

11:09AM 23       SO I DO THINK THAT THAT ISSUE HIGHLIGHTS WHY THE COURT

11:09AM 24   SHOULD GRANT THE MOTION TO COMPEL, WHETHER OR NOT THE COURT

11:09AM 25   EVEN HOLDS A HEARING, WE THINK THAT MOTION TO COMPEL IS

11:09AM 1    RELEVANT TO TRIAL.

11:09AM 2        NOW, THE COURT DID SEPARATELY NOTE, APPROPRIATELY SO, THAT

11:09AM 3    WE ARE ENTITLED TO HOLD THE GOVERNMENT TO ITS BURDEN AT TRIAL.

11:09AM 4    WE, OF COURSE, HAVE THE FULL CAPABILITY TO ARGUE THAT THEY HAVE

11:09AM 5    FAILED TO MEET THAT BURDEN BECAUSE THEY'VE PRESENTED AN

11:09AM 6    ANECDOTAL CASE THAT IS LACKING IN DATA.  I THINK IT'S

11:09AM 7    INEVITABLE THAT THE JURY WILL HEAR THAT THERE WAS SUCH A

11:09AM 8    DATABASE, THAT THERE WAS AN LIS DATABASE, AND THE JURY WILL NO

11:09AM 9    DOUBT APPRECIATE THAT THE DATABASE IS NOT BEFORE THEM.  AND I

11:09AM 10   THINK IT IS APPROPRIATE FOR THE DEFENSE, YOU KNOW, WHETHER OR

11:10AM 11   NOT EVIDENCE IS SUPPRESSED, I THINK IT'S APPROPRIATE FOR THE

11:10AM 12   DEFENSE TO HOLD THE GOVERNMENT TO ITS BURDEN BY ARGUING TO THE

11:10AM 13   JURY THAT THE DATA IS NOT BEFORE THE JURY, AND THE GOVERNMENT

11:10AM 14   HAS NOT PRESENTED THAT DATA TO THE JURY WITHOUT BLAMING ANYONE

11:10AM 15   FOR WHY IT'S -- THE GOVERNMENT IS NOT PRESENTING THAT DATA TO

11:10AM 16   THE JURY.  I THINK THE DEFENSE HAS TO BE ABLE TO MAKE THAT

11:10AM 17   ARGUMENT.

11:10AM 18       BUT AGAIN, I THINK THE FACT THAT THAT ARGUMENT IS

11:10AM 19   CRITICALLY AN IMPORTANT ARGUMENT TO THE DEFENSE JUST HIGHLIGHTS

11:10AM 20   THAT THE REAL DANGER THAT THE JURY WILL SPECULATE AND DRAW

11:10AM 21   INCORRECT INFERENCES FROM THE LACK OF DATA, WHICH IS WHY WE

11:10AM 22   THINK THE ONLY APPROPRIATE REMEDY FOLLOWING A HEARING WOULD BE

11:10AM 23   A SUPPRESSION.

11:10AM 24            THE COURT:  OKAY.  THANK YOU VERY MUCH, MS. SAHARIA.

11:10AM 25            MS. SAHARIA:  THANK YOU, YOUR HONOR.

11:10AM 1          THE COURT:  YOU'RE WELCOME.

11:10AM 2          MR. WADE:  YOUR HONOR, I APOLOGIZE.  THIS WOULD BE

11:10AM 3  ONE OF THOSE MOMENTS WHERE IN A CONVENTIONAL HEARING I WOULD

11:10AM 4  PASS MS. SAHARIA A NOTE.

11:11AM 5          BUT WITH RESPECT TO THE PRIVILEGE ISSUE THAT WAS RAISED,

11:11AM 6  IF I MIGHT ADDRESS THAT JUST VERY -- FOR 30 SECONDS?  AND THAT

11:11AM 7  IS JUST TO SAY MS. SAHARIA WAS NOT INVOLVED, I THINK, IN THE

11:11AM 8  REPRESENTATION DURING THIS TIME PERIOD BETWEEN THE INDICTMENT

11:11AM 9  AND THE SO-CALLED "DECOMMISSIONING OF THE LIS" OR IN OTHER

11:11AM 10  WORDS PUTTING THE LIS IN THE STORAGE FACILITY, WHICH IS HOW I

11:11AM 11  WOULD REFER TO IT.

11:11AM 12          TO THE EXTENT THAT THE COURT HAS INQUIRIES WITH RESPECT TO

11:11AM 13  MS. HOLMES'S KNOWLEDGE OF AND ACCESS TO THAT DATA AND HER

11:11AM 14  PARTICIPATION IN SUBPOENA COMPLIANCE OR LACK THEREOF GIVEN HER

11:11AM 15  STATUS IN THE INVESTIGATION, WE WOULD BE HAPPY TO PROVIDE A

11:11AM 16  PROFFER TO THE COURT IN CAMERA EX PARTE ON THAT.  I THINK IT

11:11AM 17  WOULD ADDRESS ANY OF THE COURT'S CONCERNS.

11:11AM 18          I DON'T THINK IT WOULD BE FAIR TO DRAW ANY ADVERSE

11:11AM 19  INFERENCE FROM MS. HOLMES NOT CURRENTLY POSSESSING THE LIS.

11:12AM 20  AND IF THE COURT WERE INTENDING TO DO THAT, WE WOULD REQUEST

11:12AM 21  THE OPPORTUNITY TO JUST ADDRESS THAT BECAUSE I THINK AN

11:12AM 22  EX PARTE HEARING WHERE WE EXCHANGE FOR TWO MINUTES ON THE

11:12AM 23  PRIVILEGE ISSUES WOULD MORE THAN ADDRESS THE COURT'S CONCERN.

11:12AM 24          THE COURT:  WELL, THANK YOU.  I WAS NOT INTENDING --

11:12AM 25  IT WAS NOT MY INTENT TO BROACH A PRIVILEGE TOPIC.

11:12AM 1      AND, MS. SAHARIA, PLEASE KNOW THAT, THAT WAS NOT MY

11:12AM 2   INTENT, NOR, MR. WADE, THAT WAS NOT MY INTENT.  I WAS JUST

11:12AM 3   TRYING TO GET THE FACTUAL SCENARIO DOWN.  THE DATES, THE

11:12AM 4   TIMELINE OF WHAT OCCURRED I THINK SPEAK PERHAPS SUFFICIENT

11:12AM 5   EVIDENCE FOR THE COURT TO CONSIDER THE MOTION HERE.

11:12AM 6      I THINK WE KNOW THAT THE EVIDENCE SHOWS THAT ON INDICTMENT

11:12AM 7   IT WAS JUNE 14TH OR JUNE 18TH, WHATEVER IT WAS, I THINK

11:12AM 8   MS. HOLMES STEPPED DOWN AS CEO.  I THINK THERE IS INFORMATION

11:12AM 9   IN THE DOCUMENTS I'VE READ THAT SUGGESTS THAT SHE REMAINED AS

11:12AM 10  PRESIDENT OF THE BOARD, BUT SHE DID STEP DOWN AS CEO AT THE

11:13AM 11  TIME.  I RECOGNIZE THAT.

11:13AM 12     MY QUESTION TO MS. SAHARIA WAS REGARDING -- I THINK IT WAS

11:13AM 13  THE PREJUDICE.  THAT'S WHAT MOVED US TO THE PREJUDICE

11:13AM 14  CONVERSATION AROUND THE FACTS THAT AT THE TIME OF THE

11:13AM 15  DECOMMISSION.  I WISH IT WAS AS SIMPLE AS JUST PUTTING IN

11:13AM 16  STORAGE BECAUSE, MR. WADE, WE COULD JUST GET IT OUT OF STORAGE

11:13AM 17  AND OPEN IT UP AND THAT WOULD RESOLVE ALL OF THIS, BUT

11:13AM 18  APPARENTLY IT'S NOT THAT EASY.

11:13AM 19     THE QUESTION WAS AT THE TIME THAT IT WAS DECOMMISSIONED

11:13AM 20  AND PRIOR TO THE DECOMMISSION, AS EARLY AS JUNE WHEN THERE WAS

11:13AM 21  NOTICE OF THE INDICTMENT, CERTAINLY THE IMPORTANCE OF THE LIS

11:13AM 22  WAS CERTAINLY KNOWN TO THE DEFENSE.  AND FOR A PREJUDICE

11:13AM 23  ANALYSIS THE QUESTION WAS, WELL, THERE WAS PRIVITY THERE AND

11:13AM 24  DOESN'T THAT SUGGEST THAT, NOT FAULT, BUT THERE WAS AN

11:13AM 25  OPPORTUNITY TO PRESERVE WAS THE POINT THAT I WAS TRYING TO

11:14AM  1    MAKE.  THAT'S IT.

11:14AM  2         BUT THANK YOU FOR YOUR -- I APPRECIATE THE OFFER ABOUT IN

11:14AM  3    CAMERA.  I DON'T THINK IT'S NEEDED JUST NOW.

11:14AM  4         LET'S TURN TO THE GOVERNMENT.

11:14AM  5              MR. WADE:  YOUR HONOR, IF I MIGHT JUST SO THE RECORD

11:14AM  6    IS CLEAR ON THIS POINT.  I INFER FROM THE COURT'S COMMENT THAT

11:14AM  7    THERE IS AN INFERENCE THAT MS. HOLMES HAD ACCESS TO THE LIS

11:14AM  8    DURING THAT TIME PERIOD.

11:14AM  9              THE COURT:  OH.  NO.  MR. WADE, THAT'S NOT WHAT I

11:14AM  10   SAID.  MR. WADE, THAT'S NOT WHAT I SAID, SIR.  THAT'S NOT WHAT

11:14AM  11   I SAID THAT SHE HAD ACCESS TO IT.

11:14AM  12        I WAS STATING THE FACTS THAT SHE WAS STILL AT THE TIME,

11:14AM  13   SHE WAS -- THE RECORD WILL REFLECT THAT SHE WAS CEO OR WHATEVER

11:14AM  14   SHE WAS.

11:14AM  15        YOU RECALL IN MY ORDER ON THE IN LIMINE MOTIONS, I THINK I

11:14AM  16   GRANTED YOUR RELIEF.  I SAID THERE HAS TO BE A NEXUS, SOME TYPE

11:14AM  17   OF A SHOWING OF A CONNECTION TO YOUR CLIENT AND THE LIS, AND

11:14AM  18   THAT STILL HOLDS TRUE.  SO I THINK THAT -- I HOPE THAT ANSWERS

11:14AM  19   YOUR QUESTION.

11:15AM  20        MR. BOSTIC.

11:15AM  21              MR. WADE:  THANK YOU, YOUR HONOR.

11:15AM  22              MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:15AM  23        I'LL START WITH JUST A FEW OF THE RELEVANT FACTS, AND I

11:15AM  24   THINK THE COURT HAS HIT SOME OF THE KEY ISSUES HERE OR ALL OF

11:15AM  25   THE KEY ISSUES.

11:15AM  1      JUST SO WE'RE CLEAR ON THE TIMELINE, THE GRAND JURY

11:15AM  2   SUBPOENAED THE RESULTS FROM THE LABORATORY INFORMATION SYSTEM,

11:15AM  3   THE LIS, IN APRIL OF 2018.  THAT SUBPOENA CALLED FOR THE ENTIRE

11:15AM  4   UNIVERSE OF LAB RESULTS FROM THE LIS.  SO THAT REQUEST, THAT

11:15AM  5   SUBPOENA WAS PENDING AS TO THERANOS FROM APRIL 2018 GOING

11:15AM  6   FORWARD.

11:15AM  7      LATER AS A RESULT OF DISCUSSIONS BETWEEN GOVERNMENT

11:15AM  8   COUNSEL AND THERANOS COUNSEL, THE GOVERNMENT SERVED OR RATHER

11:15AM  9   THE GRAND JURY ISSUED ANOTHER SUBPOENA WHICH THE GOVERNMENT

11:15AM  10  SERVED REQUESTING A SOFT COPY OF THE DATABASE ITSELF.  SO THE

11:15AM  11  DATABASE IN NATIVE FORM, ELECTRONIC FORM THAT WOULD HAVE

11:15AM  12  INCLUDED THAT SAME INFORMATION BUT WITH MORE CAPABILITY FOR

11:15AM  13  SORTING AND SEARCHING.  SO THAT REQUEST WAS AT THE BEGINNING OF

11:16AM  14  THE JUNE, THAT SUBPOENA.

11:16AM  15     THE LIS COPY WAS PRODUCED TO THE GOVERNMENT MONTHS LATER,

11:16AM  16  AT THE END OF AUGUST 2018, SEVERAL MONTHS AFTER THE GOVERNMENT

11:16AM  17  SERVED THE SUBPOENA REQUESTING ALL RESULTS FROM THE LIS.

11:16AM  18     AROUND THAT SAME TIME THE GOVERNMENT WAS IN CONTACT WITH

11:16AM  19  THERANOS COUNSEL ABOUT OBTAINING SOME EXEMPLARS OF THERANOS

11:16AM  20  ANALYZERS, AND THE DEFENSE HIGHLIGHTED THIS I THINK IN AN

11:16AM  21  EFFORT TO SUGGEST THAT THE GOVERNMENT SHOULD HAVE OR A

11:16AM  22  REASONABLE PROSECUTOR WOULD HAVE TAKEN THE SAME APPROACH AS TO

11:16AM  23  THE SERVERS HOUSING THE LIS THAT IT DID AS TO THOSE THERANOS

11:16AM  24  ANALYZERS, BUT THIS IS APPLES AND ORANGES IN A WAY THAT I THINK

11:16AM  25  IS CLEAR.

11:16AM 1    IN COLLECTING INFORMATION FROM THERANOS IN THE FORM OF LAB

11:16AM 2    RESULTS OR EMAILS OR OTHER INTERNAL DOCUMENTS, WE'RE TALKING

11:16AM 3    ABOUT ELECTRONICALLY STORED INFORMATION, ESI, WHICH IS

11:17AM 4    SOMETHING THAT LAWYERS AND INVESTIGATORS DEAL WITH REGULARLY.

11:17AM 5    IN COLLECTING THAT INFORMATION THE TYPICAL APPROACH, OF COURSE,

11:17AM 6    IS NOT TO GO IN AND SEIZE THE PHYSICAL DEVICES THEMSELVES,

11:17AM 7    ESPECIALLY WHEN THE BUSINESS IS OPERATING AND THAT WOULD BE

11:17AM 8    DISRUPTIVE TO THAT BUSINESS.

11:17AM 9    SO IT'S VERY COMMON AND STANDARD FOR ESI PRODUCTION TO BE

11:17AM 10   HANDLED BY TRANSFERRING AN ELECTRONIC COPY OF THAT INFORMATION.

11:17AM 11   ESI CAN BE COPIED BY ITS VERY NATURE.

11:17AM 12   MOREOVER, WITH ALMOST ALL ESI, CERTAINLY ALL ESI THAT I'VE

11:17AM 13   HAD EXPERIENCE WITH OTHER THAN THIS DATABASE, MOVING THE

11:17AM 14   HARDWARE THAT CONTAINS THAT ESI DOESN'T DISRUPT OR DESTROY THE

11:17AM 15   ESI.  AND THAT WAS PROVEN IN THIS CASE, THE ASSIGNEE, WHEN IT

11:17AM 16   TOOK OVER THERANOS'S ASSETS, DID SUCCESSFULLY OBTAIN A LARGE

11:17AM 17   AMOUNT OF THERANOS'S NON-LIS, ELECTRONICALLY STORED

11:17AM 18   INFORMATION.

11:17AM 19   SO THERE WAS NO NOTICE TO THE GOVERNMENT THAT THE

11:17AM 20   SHUDDERING OF THERANOS WOULD RESULT IN THE LOSS OF THIS

11:18AM 21   INFORMATION, JUST TO MAKE THAT CLEAR, AND I THINK THE COURT

11:18AM 22   NOTED THAT ALREADY.

11:18AM 23   IN CONTRAST, THE THERANOS ANALYZERS, THE EXEMPLARS OF THE

11:18AM 24   EDISON, THE DIFFERENT VERSIONS OF THE TSPU, THE GOVERNMENT

11:18AM 25   NEEDED TO OBTAIN THOSE FOR THE SAKE OF HAVING THOSE PIECES OF

11:18AM 1    EVIDENCE, THE PHYSICAL DEVICES THEMSELVES.  THAT WASN'T TO

11:18AM 2    OBTAIN ESI STORED ON THOSE DEVICES.  SO THAT EXPLAINS THE

11:18AM 3    DIFFERENT APPROACH.

11:18AM 4        THE ASSIGNEE WENT LIVE A COUPLE OF WEEKS AFTER THE COPY OF

11:18AM 5    THE LIS WAS PRODUCED TO THE GOVERNMENT.  THE GOVERNMENT WAS

11:18AM 6    UNABLE TO ACCESS THE LIS OR AT LEAST THE COPY THAT IT OBTAINED,

11:18AM 7    AND AS A RESULT IT CONSULTED WITH THERANOS COUNSEL SHORTLY

11:18AM 8    AFTER OBTAINING IT, AND THEN LATER WITH ASSIGNEE COUNSEL TO TRY

11:18AM 9    TO GET HELP WITH ACCESSING THAT INFORMATION.

11:18AM 10       THOSE RESULTS OR THOSE EFFORTS WERE ULTIMATELY FUTILE.

11:18AM 11   AND THAT'S THE REAL POINT HERE THAT THE DEFENSE IS ATTEMPTING

11:18AM 12   TO, I THINK, INVITE THE COURT TO PENALIZE THE GOVERNMENT FOR

11:19AM 13   NOT GOING FURTHER DOWN ROADS THAT WOULD HAVE BEEN DEAD ENDS OR

11:19AM 14   ROADS THAT WERE INDICATING THAT THEY WERE DEAD ENDS, FIRST AS

11:19AM 15   TO THE COPY OF THE LIS THAT THE GOVERNMENT DID OBTAIN, AND,

11:19AM 16   SECOND, AS TO THE ORIGINAL VERSION OF THE LIS THAT WAS

11:19AM 17   DECOMMISSIONED OR REALLY IN EFFECT DESTROYED BY THERANOS IN

11:19AM 18   AUGUST 2018.  SO I'LL TAKE THOSE TWO COPIES ONE AFTER THE OTHER

11:19AM 19   JUST TO MAKE SURE THAT WE'RE CLEAR ON HOW THOSE WERE DEAD ENDS.

11:19AM 20       AS TO THE GOVERNMENT COPY, SO THE GOVERNMENT ATTEMPTED TO

11:19AM 21   GAIN ACCESS TO THE LIS COPY THAT THERANOS GAVE IT WITHIN WEEKS.

11:19AM 22   THE GOVERNMENT SUBMITS THAT'S A REASONABLE TIME GIVEN THE

11:19AM 23   VOLUME OF EVIDENCE IN THIS CASE AND THE OTHER EVENTS THAT WERE

11:19AM 24   HAPPENING AT THAT TIME.

11:19AM 25       THAT COPY, HOWEVER, WAS DOUBLE ENCRYPTED, AND THE

11:19AM 1  GOVERNMENT WAS NOT INFORMED OF THAT ENCRYPTION STATUS OR OF THE

11:19AM 2  EXISTENCE OF A SECOND ENCRYPTION KEY THAT WOULD BE NEEDED IN

11:19AM 3  ORDER TO ACCESS THOSE FILES.

11:19AM 4       DESPITE THE FACT THAT IN ITS REQUEST TO THERANOS THE

11:20AM 5  GOVERNMENT HAD ASKED FOR NOT JUST THE DATABASE BUT ALSO

11:20AM 6  ANYTHING THAT WAS REQUIRED TO ACCESSING, INCLUDING ANY SOFTWARE

11:20AM 7  THAT WAS REQUIRED TO ACCESS IT.

11:20AM 8       THAT COPY OF THE LIS, THE COPY RECEIVED FROM THERANOS, HAS

11:20AM 9  ALSO, BY THE WAY, BEEN PRODUCED TO THE DEFENSE.  SO THE DEFENSE

11:20AM 10  IN THIS CASE HAS THE SAME INFORMATION THAT THE GOVERNMENT HAS,

11:20AM 11  THE SAME VERSION OF THE LIS.

11:20AM 12       SO I'M CONFUSED TO HEAR THE DEFENSE COMPLAIN ABOUT THE

11:20AM 13  GOVERNMENT'S LACK OF EFFORTS TO ACCESS THAT DEVICE, THAT COPY,

11:20AM 14  BECAUSE THE DEFENSE HAS EQUIVALENT, IDENTICAL ACCESS TO THAT

11:20AM 15  SAME INFORMATION.  AND IF IT WERE ACCESSIBLE, PRESUMABLY WE

11:20AM 16  WOULDN'T BE IN THIS SITUATION BECAUSE THE GOVERNMENT, OR EXCUSE

11:20AM 17  ME, THE DEFENSE WOULD HAVE GONE THROUGH THE EFFORTS THAT IT

11:20AM 18  WANTED THE GOVERNMENT TO GO THROUGH, OBTAINED ACCESS TO THAT

11:20AM 19  DATABASE, THAT COPY OF THE DATABASE, AND THUS THERE WOULD BE NO

11:20AM 20  PREJUDICE TO THE DEFENSE BECAUSE THE DEFENDANT WOULD HAVE

11:20AM 21  ACCESS TO IT.

11:21AM 22       THE FACT THAT THE DEFENSE APPARENTLY HAS BEEN EQUALLY

11:21AM 23  UNSUCCESSFUL IN ACCESSING THAT COPY OF THE DATABASE JUST PROVES

11:21AM 24  THAT THAT COPY ITSELF WAS A DEAD END.  IT WAS NOT A VIABLE COPY

11:21AM 25  OF THE DATABASE.  SO THERE'S REALLY NO POINT IN SCRUTINIZING

11:21AM  1    THE GOVERNMENT'S CONDUCT AS TO ITS EFFORTS TO ACCESS THAT COPY

11:21AM  2    BECAUSE IT'S ALL MOOT.  NO PREJUDICE RESULTED FROM ANY LACK OF

11:21AM  3    EFFORT THERE, BECAUSE NO MATTER WHAT EFFORT WAS EXPENDED, THOSE

11:21AM  4    COPIES, THE COPY THAT WE HAVE, THE COPY THAT WE GAVE TO THE

11:21AM  5    DEFENSE, OUR UNDERSTANDING IS THAT THEY'RE JUST NOT VIABLE,

11:21AM  6    THEY CANNOT BE ACCESSED, ESPECIALLY WITHOUT THE SECOND

11:21AM  7    ENCRYPTION KEY THAT, YOU KNOW, FOR WHICH THERE'S NO TRACE.

11:21AM  8         LET ME MOVE TO THE ORIGINAL COPY THEN, THE COPY OF THE LIS

11:21AM  9    THAT THERANOS USED, THE COPY THAT WAS STORED AT THERANOS ON

11:21AM 10    HARDWARE, DISASSEMBLED BY THERANOS AFTER FOUR DAYS OF

11:22AM 11    PRODUCTION TO THE GOVERNMENT.  AS GOOD AS CONTEMPORANEOUSLY,

11:22AM 12    I'M LEAVING A VERY NARROW WINDOW FOR THE GOVERNMENT TO

11:22AM 13    UNDERSTAND AND REALIZE THAT WHAT IT HAD WAS NOT VIABLE AND THEN

11:22AM 14    TAKE THE STEPS NEEDED TO ANTICIPATE, PREDICT, AND THEN PREVENT

11:22AM 15    THERANOS FROM DESTROYING OR DISABLING THE ORIGINAL VERSION OF

11:22AM 16    THE LIS.  THAT'S A CRITICAL TIME PERIOD.  AND I THINK THE COURT

11:22AM 17    IS RIGHT TO FOCUS ON THAT THREE- OR FOUR-DAY PERIOD AND ASK

11:22AM 18    WHAT WOULD WE EXPECT?  WHAT SHOULD WE DEMAND THAT THE

11:22AM 19    GOVERNMENT HAD DONE DURING THAT NARROW TIME PERIOD?

11:22AM 20         BEFORE THERANOS TOOK THAT ACTION TO DECOMMISSION THE LIS,

11:22AM 21    THE EVIDENCE IN THE RECORD SHOWS THAT THERANOS EMPLOYEES KNEW

11:22AM 22    THAT SHUTTING DOWN THE DATABASE WOULD LIKELY BE A PERMANENT

11:22AM 23    MOVE.  THEY WENT FORWARD ANYHOW.

11:22AM 24         THE ASSIGNEE TOOK OVER THERANOS'S ASSETS A COUPLE OF WEEKS

11:22AM 25    LATER.  THE GOVERNMENT IS AWARE AND HAS SHARED THIS INFORMATION

11:22AM 1    WITH THE DEFENSE THAT BY MID SEPTEMBER THE ASSIGNEE WAS

11:23AM 2    INVESTIGATING THE LIS PARTLY IN RESPONSE TO REQUESTS FROM

11:23AM 3    PLAINTIFFS IN CIVIL CASES.  AND THE ASSIGNEE, DESPITE ITS

11:23AM 4    EFFORTS IN COORDINATING WITH THERANOS COUNSEL, CONTINUED TO BE

11:23AM 5    UNABLE TO GAIN ANY REAL OR MEANINGFUL ACCESS TO THAT LIS

11:23AM 6    INFORMATION.

11:23AM 7         BY MID OCTOBER THERANOS OUTSIDE COUNSEL AT WILMER HALE

11:23AM 8    CONFIRMED FOR THE ASSIGNEE THAT THEY COULDN'T ACCESS THE LIS

11:23AM 9    BECAUSE IT WAS DOUBLE ENCRYPTED.  SO WE KEEP COMING BACK TO

11:23AM 10   THIS ISSUE JUST LIKE THE COPY PRODUCED TO THE GOVERNMENT, THE

11:23AM 11   ORIGINAL COPY WAS DOUBLE ENCRYPTED, REQUIRED THIS PARTICULAR

11:23AM 12   ENCRYPTION KEY IN ORDER TO GAIN ACCESS, AND IT'S UNKNOWN WHERE

11:23AM 13   THAT KEY WAS, WHETHER IT HAD BEEN LOST ENTIRELY.  SO IT'S

11:23AM 14   COMPLETELY SPECULATIVE TO GUESS OR SUGGEST THAT EFFORTS BY THE

11:23AM 15   GOVERNMENT TARGETED AT THAT ORIGINAL COPY, THAT ORIGINAL

11:23AM 16   HARDWARE, WOULD HAVE PRODUCED ANY RESULTS.

11:23AM 17        THE DEFENSE REFERENCES WITNESS STATEMENTS SPECULATING THAT

11:24AM 18   THAT ORIGINAL COPY COULD HAVE BEEN RESURRECTED.  BUT IF THE

11:24AM 19   COURT LOOKS AT THOSE STATEMENTS, I THINK THE COURT WILL SEE

11:24AM 20   THAT THEY DON'T OR DON'T MERIT MUCH WEIGHT.

11:24AM 21        FIRST, NONE OF THOSE STATEMENTS ADDRESS THE NEED FOR THE

11:24AM 22   ENCRYPTION KEY AND THE DOUBLE ENCRYPTED STATUS OF THAT

11:24AM 23   DATABASE.  TO THE EXTENT THAT A WITNESS THOUGHT THAT THE

11:24AM 24   DATABASE MIGHT BE ABLE TO BE RESURRECTED, IT DOES NOT ACCOUNT

11:24AM 25   FOR AND DOESN'T PROVIDE A SOLUTION FOR THAT DOUBLE ENCRYPTED

11:24AM 1      STATUS.

11:24AM 2           ONE OF THE STATEMENTS THAT DEFENDANTS OR THE DEFENDANT

11:24AM 3      RELIES ON IS FROM A LAWYER WHO IN THAT SAME PROFFER TO THE

11:24AM 4      GOVERNMENT ADMITTED THAT HE DIDN'T HAVE A STRONG TECHNICAL

11:24AM 5      BACKGROUND, SO HE WAS JUST GIVING INFORMATION BASED ON HIS

11:24AM 6      UNDERSTANDING AT THE TIME, NOT TRYING TO ACT AS AN EXPERT TO

11:24AM 7      EXPLAIN WHAT WAS ACTUALLY POSSIBLE.

11:24AM 8           AS TO THE OTHER INDIVIDUALS WHO HAVE SOME MORE TECHNICAL

11:24AM 9      QUALIFICATIONS, ONE SAID HE DIDN'T THINK IT WOULD BE DIFFICULT

11:25AM 10     AT THE TIME THAT THE DATABASE WAS SHUT DOWN, BUT DIDN'T REALLY

11:25AM 11     PROVIDE AN OPINION THAT IT COULD HAVE BEEN RECONSTRUCTED

11:25AM 12     AFTERWARDS OR DIDN'T PROVIDE A CONTEMPORANEOUS OPINION AS OF

11:25AM 13     TODAY THAT HE THOUGHT IT REMAINED VIABLE AFTER IT WAS

11:25AM 14     DECOMMISSIONED.

11:25AM 15          ANOTHER SAID THAT HE THOUGHT THAT REASSEMBLING THE

11:25AM 16     DATABASE WOULD BE VERY DIFFICULT, BUT AGAIN, HE ALSO

11:25AM 17     SPECIFICALLY SAID THAT IT WOULD BE IMPOSSIBLE WITHOUT THE

11:25AM 18     PRIVATE ENCRYPTION KEY.  SO AGAIN, WE COME BACK TO THE

11:25AM 19     ENCRYPTION KEY THAT WAS NEVER PROVIDED TO THE GOVERNMENT AND OF

11:25AM 20     WHICH THE GOVERNMENT WAS NOT EVEN INFORMED.

11:25AM 21          SO THANKS TO THERANOS'S ACTIONS, THANKS TO THE ACTIONS OF

11:25AM 22     DEFENDANT'S COMPANY, THE ORIGINAL COPY OF THE LIS TURNED INTO A

11:25AM 23     DEAD END.  THANKS TO THE FORMAT IN WHICH IT WAS PRODUCED TO THE

11:25AM 24     GOVERNMENT, AND THE LACK OF THE COMPANY INFORMATION, THAT COPY

11:25AM 25     OF THE LIS WAS A DEAD END AS WELL.  THAT'S WHY WE'RE IN THIS

11:25AM 1     SITUATION.

11:25AM 2          SO TO SAY TO THE COURT, WELL, WE NEED TO DELVE FURTHER

11:26AM 3     INTO THE GOVERNMENT'S ACTIONS PURSUING THOSE TWO DEAD ENDS

11:26AM 4     DOESN'T MAKE SENSE, IT'S NOT RELEVANT TO THE INQUIRY, IT HAS NO

11:26AM 5     EFFECT ON THE PREJUDICE TO THE DEFENDANT, THE ALLEGED

11:26AM 6     PREJUDICE, AND WE SUBMIT IT WOULD BE A WASTE OF TIME.

11:26AM 7          THE COURT:  ALL RIGHT.  DO YOU WANT TO SPEAK TO THE

11:26AM 8     BRADY ISSUE?

11:26AM 9          MR. BOSTIC:  YES, YOUR HONOR, I'M HAPPY TO COVER THE

11:26AM 10    BRADY ISSUE.

11:26AM 11         SO HERE THERE'S SOME TENSION IN THE DEFENDANT'S POSITION,

11:26AM 12    AND, FRANKLY, THE IDEA THAT ON THE ONE HAND THE DEFENSE IS

11:26AM 13    ATTEMPTING TO USE THE FULSOMENESS OF THE GOVERNMENT'S

11:26AM 14    DISCLOSURE AS A CONCESSION AS AN ADMISSION OF WRONGDOING WHILE

11:26AM 15    ON THE OTHER HAND SAYING WE NEED MORE INFORMATION, THE COURT

11:26AM 16    SHOULD ORDER THAT THE GOVERNMENT NEEDS TO OPEN ITS FILES TO THE

11:26AM 17    DEFENSE SO THAT THE DEFENSE CAN PERUSE AND LOOK FOR ADDITIONAL

11:26AM 18    INFORMATION THAT MIGHT BE HELPFUL ON THIS ISSUE I THINK SHOULD

11:27AM 19    RAISE SOME CONCERNS WITH THE COURT.

11:27AM 20         THE GOVERNMENT HAS EXCEEDED ITS OBLIGATIONS IN THIS CASE

11:27AM 21    BY PROVIDING A VERY THOROUGH WRITTEN DISCLOSURE TO THE DEFENSE.

11:27AM 22    ADDITIONAL FACTS ARE -- THE UNDERLYING INFORMATION, UNDERLYING

11:27AM 23    THAT LETTER AND THE INTERNAL GOVERNMENT COMMUNICATIONS

11:27AM 24    THEMSELVES CERTAINLY ARE NOT RELEVANT OR HELPFUL TO THE DEFENSE

11:27AM 25    UNLESS THE COURT FINDS THAT THERE ARE DISPUTED ISSUES HERE TO

11:27AM 1    BE DECIDED, AND THE GOVERNMENT SUBMITS THAT THERE ARE NOT.

11:27AM 2         THE UNDISPUTED FACTS HERE ARE SUFFICIENT TO ESTABLISH THAT

11:27AM 3    THE DEFENDANT'S CLAIM CANNOT PROCEED, THAT THE DEFENDANT'S

11:27AM 4    REQUEST FOR THE SUPPRESSION MUST FAIL, AND THAT THERE'S NO NEED

11:27AM 5    FOR AN EVIDENTIARY HEARING.

11:27AM 6         AND WITH THE COURT'S PERMISSION, I WOULD LIKE TO HIGHLIGHT

11:27AM 7    SOME OF THE CASE LAW THAT I THINK ESTABLISHES THAT.

11:27AM 8              THE COURT:  SURE.

11:28AM 9              MR. BOSTIC:  THE LOUD HAWK OPINION ITSELF SAYS THAT

11:28AM 10   SUPPRESSION IS APPROPRIATE UNDER SOME CIRCUMSTANCES WHEN THE

11:28AM 11   GOVERNMENT LOSES OR DESTROYS TANGIBLE EVIDENCE PRIOR TO TRIAL.

11:28AM 12        NOW, THAT'S IN THE COURT'S OPINION ITSELF, NOT IN

11:28AM 13   JUDGE KENNEDY'S CONCURRENCE, BUT IN THE COURT'S OPINION WHICH

11:28AM 14   IS NINTH CIRCUIT PRECEDENT.

11:28AM 15        IN THIS CASE, AS WE JUST DISCUSSED, THE EVIDENCE WAS

11:28AM 16   ACTUALLY MORE UNDER THE DEFENDANT'S CONTROL THAN THE

11:28AM 17   GOVERNMENT'S, AND I'M NOT RAISING THIS TO ASSIGN BLAME OR

11:28AM 18   INSINUATE WRONGDOING ON THE DEFENDANT'S PART.

11:28AM 19        THE POINT HERE IS ABOUT ACCESS AND PREJUDICE, AND IT'S

11:28AM 20   GOING TO BE IMPOSSIBLE FOR THE DEFENDANT TO SHOW THAT SHE WAS

11:28AM 21   PREJUDICED BY THE LOSS OF THIS INFORMATION WHEN DURING THE

11:28AM 22   RELEVANT TIME PERIOD THE INDIVIDUAL INVOLVED WHO ACTUALLY HAD

11:28AM 23   EASIER ACCESS TO IT THAN THE GOVERNMENT WAS DEFENDANT HERSELF.

11:28AM 24        SO WHEN THE GOVERNMENT'S INVESTIGATION BEGAN, WHEN THE

11:28AM 25   S.E.C. SERVED DOCUMENT PRESERVATION NOTICES ON THERANOS, WHEN

11:28AM  1    THE GOVERNMENT SERVED GRAND JURY SUBPOENAS ON THERANOS CALLING

11:29AM  2    FOR PORTIONS OF THE LIS AND THEN THE ENTIRE THING, AT THOSE

11:29AM  3    TIME PERIODS THIS WAS DEFENDANT'S COMPANY THAT SHE HAD FOUNDED

11:29AM  4    OF WHICH SHE SERVED AS THE CHIEF EXECUTIVE OF WHICH SHE WAS A

11:29AM  5    MAJOR SHAREHOLDER.

11:29AM  6         EVEN AFTER INDICTMENT WHEN THE LIS WAS PRODUCED TO THE

11:29AM  7    DEFENDANT, DEFENDANT -- OR EXCUSE ME, PRODUCED TO THE

11:29AM  8    GOVERNMENT, THE DEFENDANT REMAINS CHAIR OF THE BOARD OF THE

11:29AM  9    COMPANY AND WAS STILL CONNECTED TO THE COMPANY.

11:29AM 10         IN CONTRAST, THE GOVERNMENT'S ACCESS TO THE EVIDENCE HERE

11:29AM 11    WAS VIA GRAND JURY SUBPOENA WHERE THE GOVERNMENT WAS DEFENDED

11:29AM 12    ON COMPLIANCE OF THE DOCUMENT CUSTODIAN, THERANOS ITSELF, AND

11:29AM 13    THE GOVERNMENT UNDERSTOOD THAT IT WAS OBTAINING THAT COMPLIANCE

11:29AM 14    DURING THE RELEVANT TIME PERIOD.  ONLY LATER DID IT BECOME

11:29AM 15    APPARENT THAT THE COPY THAT IT HAD OBTAINED FROM THERANOS WAS

11:29AM 16    NOT VIABLE.

11:29AM 17         UNDER THE CASE LAW THESE DISTINCTIONS MATTER.  THE

11:29AM 18    DIFFERENCE BETWEEN CASES WHERE THE GOVERNMENT ACTUALLY

11:30AM 19    POSSESSED THE EVIDENCE THAT WAS LOST AND CASES WHERE IT'S

11:30AM 20    ALLEGED THAT THE GOVERNMENT FAILED TO COLLECT, THESE

11:30AM 21    DISTINCTIONS MATTER AND THEY SERVE TO DEFEAT DEFENDANT'S

11:30AM 22    REQUEST HERE.

11:30AM 23         IN FACT, IT'S CRITICAL THAT NO COURT CASE HAS EVEN APPLIED

11:30AM 24    LOUD HAWK TO A SIMILAR SITUATION INVOLVING A FAILURE TO

11:30AM 25    COLLECT, AT LEAST NO CASE CITED BY THE DEFENDANT AND NO CASE

11:30AM  1    THAT THE GOVERNMENT CAN LOCATE.

11:30AM  2        FLYER ITSELF DOES NOT ADDRESS WHETHER SANCTIONS LIKE

11:30AM  3    SUPPRESSION ARE APPROPRIATE WHEN LAW ENFORCEMENT FAILS TO

11:30AM  4    COLLECT EVIDENCE IN THE FIRST PLACE.

11:30AM  5        IN U.S. VERSUS BROWN, THAT'S A DISTRICT CASE CITED BY THE

11:30AM  6    GOVERNMENT IN ITS BRIEFS, THE COURT CITES FLYER BUT NOTES THE

11:30AM  7    LACK OF CASE LAW APPLYING THIS TEST IN SITUATIONS LIKE THIS AND

11:30AM  8    IN THE ABSENCE OF THAT SUPPORT DECLINES TO EVEN ENGAGE IN

11:30AM  9    LOUD HAWK BALANCING IN THE FIRST PLACE, AFTER, BY THE WAY,

11:30AM  10   FINDING THAT THE FAILURE TO COLLECT BODY WORN CAMERA FOOTAGE IN

11:31AM  11   THAT CASE WASN'T A DUE PROCESS VIOLATION BECAUSE THERE WAS NOT

11:31AM  12   BAD FAITH OR SHOWING OF EXCULPATORY VALUE.

11:31AM  13       IT'S ALSO IMPORTANT THAT SOME OF THE CASES IN THIS AREA

11:31AM  14   ARE FOCUSSING ON THE NEED OR THE APPLICABILITY OF A JURY

11:31AM  15   INSTRUCTION REGARDING MISSING EVIDENCE.  SO ZUNIGA-GARCIA,

11:31AM  16   THAT'S A CASE RELIED UPON BY THE DEFENSE, INVOLVING A TOOL HELD

11:31AM  17   BY THE DEFENDANT AND A LARGER SET OF TOOLS USED FOR ALLEGEDLY

11:31AM  18   MODIFYING A GAS TANK TO SMUGGLE DRUGS, THAT CASE PROVIDED

11:31AM  19   LITTLE ANALYSIS OVERALL, BUT IT'S IMPORTANT TO NOTE THAT IN

11:31AM  20   THAT CASE THE EVIDENCE WAS LOST OR DESTROYED WHILE HELD BY THE

11:31AM  21   GOVERNMENT UNLIKE THE FACTS OF THIS CASE.  AND THAT CASE

11:31AM  22   INVOLVED A REMEDIAL JURY INSTRUCTION.

11:31AM  23       AND FOR CASES DEALING WITH REMEDIAL JURY INSTRUCTIONS, I

11:31AM  24   THINK IT'S IMPORTANT TO NOTE THAT THE NINTH CIRCUIT MODEL

11:31AM  25   INSTRUCTION, THAT'S MODEL INSTRUCTION 4.19 WHERE THE NOTES OF

11:32AM 1    THAT INSTRUCTION CITE THE LOUD HAWK CASE, THAT INSTRUCTION SAYS

11:32AM 2    IF YOU FIND THAT THE GOVERNMENT INTENTIONALLY DESTROYED OR

11:32AM 3    FAILED TO PRESERVE, AND INSERT DESCRIPTION OF EVIDENCE, THAT

11:32AM 4    THE GOVERNMENT KNEW OR SHOULD HAVE KNOWN WOULD BE EVIDENCE IN

11:32AM 5    THIS CASE, THEN THE JURY MAY INFER THAT THAT EVIDENCE WAS

11:32AM 6    UNFAVORABLE TO THE GOVERNMENT.

11:32AM 7         SO AGAIN, THIS IS THE NINTH CIRCUIT'S MODEL INSTRUCTION

11:32AM 8    ESSENTIALLY CODIFYING LOUD HAWK IN THE CONTEXT OF JURY

11:32AM 9    INSTRUCTIONS, AND IT'S EXPRESSLY WORDED IN THE CONTEXT OF CASES

11:32AM 10   WHERE THE GOVERNMENT INTENTIONALLY DESTROYING OR FAILING TO

11:32AM 11   PRESERVE EVIDENCE THAT IT KNOWS WOULD BE EXCULPATORY.

11:32AM 12        SO GIVEN THAT, AGAIN, AND THE LACK OF CASE LAW APPLYING

11:32AM 13   LOUD HAWK, LACK OF CASE LAW APPLYING THAT BALANCING TEST,

11:32AM 14   TWO CASES INVOLVING THE FAILURE TO COLLECT EVIDENCE, THERE ARE

11:32AM 15   SERIOUS QUESTIONS ABOUT WHETHER THAT TEST EVEN APPLIES IN THIS

11:32AM 16   SITUATION.

11:32AM 17        MARTINEZ VERSUS MARTINEZ, THAT'S A NINTH CIRCUIT CASE THAT

11:33AM 18   SAYS THAT THE FAILURE TO COLLECT POTENTIALLY USEFUL EVIDENCE

11:33AM 19   IS, QUOTE, "DISTINCTLY DIFFERENT" THAN A DESTRUCTION OF

11:33AM 20   EVIDENCE THAT IS ALREADY EXTANT.

11:33AM 21        SO, AGAIN, THE DEFENSE'S FAILURE TO CITE A CASE LIKE THIS

11:33AM 22   ONE WHERE THE COURT IMPOSED SANCTIONS WHERE THE GOVERNMENT DID

11:33AM 23   NOT DESTROY OR LOSE EVIDENCE I THINK IT REALLY MATTERS AND

11:33AM 24   WEAKENS THEIR CLAIM.

11:33AM 25        AND ALL THE MORE SO, NOT ONLY IS THERE NOT A CASE IMPOSING

11:33AM 1    SANCTIONS UNDER THOSE CIRCUMSTANCES, THERE CERTAINLY ISN'T A

11:33AM 2    CASE IMPOSING SANCTIONS WHERE THE GOVERNMENT ACTUALLY SOUGHT TO

11:33AM 3    OBTAIN THE EVIDENCE IN QUESTION WHERE THE GOVERNMENT WAS LED TO

11:33AM 4    BELIEVE THAT IT HAD OBTAINED THE EVIDENCE WHERE AT THE TIME THE

11:33AM 5    EVIDENCE WAS LOST, IT WAS ACTUALLY CONTROLLED BY THE DEFENDANT

11:33AM 6    OR PARTIES CONNECTED TO THE DEFENDANT RATHER THAN THE

11:33AM 7    GOVERNMENT, AND WHERE THE EVIDENCE WAS DESTROYED NOT BY THE

11:33AM 8    GOVERNMENT OR ITS AGENTS BUT BY INDIVIDUALS AFFILIATED WITH THE

11:34AM 9    DEFENDANT, THOSE FACTS PRESENT HERE TAKE THIS CASE SO FAR OUT

11:34AM 10   OF THE HEARTLAND OF AUTHORITY WHERE SANCTIONS LIKE THIS ARE

11:34AM 11   EVEN CONSIDERED OR IMPOSED THAT DEFENDANT'S REQUEST REALLY

11:34AM 12   REPRESENTS A SIGNIFICANT EXPANSION OF THE CASE LAW IN THIS

11:34AM 13   AREA.

11:34AM 14        AND GIVEN THE FACTS OF THIS CASE, THE GOVERNMENT WOULD

11:34AM 15   SUBMIT THAT THE FACTS SIMPLY ARE NOT COMPELLING ENOUGH TO

11:34AM 16   WARRANT THAT KIND OF EXPANSION EVEN IF ONE WERE SUPPORTED BY

11:34AM 17   THE LAW.

11:34AM 18             THE COURT:  ALL RIGHT.  THANK YOU, MR. BOSTIC.

11:34AM 19        ANYTHING FURTHER?

11:34AM 20             MR. BOSTIC:  NO, YOUR HONOR.

11:34AM 21        I HAVE ADDITIONAL THOUGHTS ON BAD FAITH AND THE

11:34AM 22   EXCULPATORY NATURE OF THE EVIDENCE, BUT IF THE COURT IS --

11:34AM 23   FEELS THAT IT'S PREPARED ON THOSE ISSUES, THEN I'M HAPPY TO

11:34AM 24   SUBMIT.

11:34AM 25             THE COURT:  WELL, WHY DON'T YOU STATE IT FOR THE

11:34AM 1    RECORD.  WHY DON'T YOU -- I'LL LET YOU GO FORWARD AND TELL ME

11:34AM 2    YOUR THOUGHTS ON THOSE TWO TOPICS IF YOU WISH.

11:34AM 3              MR. BOSTIC:  THANK YOU, YOUR HONOR.  JUST VERY

11:35AM 4    BRIEFLY.

11:35AM 5         ON THE BAD FAITH ISSUE, AGAIN, THE LOUD HAWK OPINION OF

11:35AM 6    THE COURT DOES SAY THAT SUPPRESSION OF SECONDARY EVIDENCE IS

11:35AM 7    APPROPRIATE WHERE A DEFENDANT CAN SHOW BAD FAITH OR CONNIVANCE

11:35AM 8    ON THE PART OF THE GOVERNMENT.

11:35AM 9         THE CONCURRENCE BY JUDGE KENNEDY CONTAINS DICTA SAYING

11:35AM 10   THAT IN CASES OF SEVERE PREJUDICE, QUOTE, "SEVERE PREJUDICE,"

11:35AM 11   SUPPRESSION OR OTHER SANCTIONS CAN BE APPROPRIATE WITHOUT

11:35AM 12   REGARD TO GOOD FAITH OR CULPABILITY OF THE GOVERNMENT.

11:35AM 13        TWO POINTS ON THAT.  FIRST, THIS IS NOT A CASE INVOLVING

11:35AM 14   SEVERE PREJUDICE.  I'LL TALK ABOUT THAT BRIEFLY IN A MINUTE.

11:35AM 15   BUT MORE GENERALLY, WE SEE FROM THIS THAT THE DEFENSE'S

11:35AM 16   ARGUMENT REALLY RELIES ON CHERRY PICKING PHRASES LIKE THIS FROM

11:35AM 17   DICTA, BUT ALSO ASKING THE COURT TO IGNORE THE HOLDINGS OF

11:35AM 18   THESE CASES.  THE HOLDINGS OF THESE CASES GENERALLY AND

11:35AM 19   CONSISTENTLY SHOW THAT THE BURDEN TO OBTAIN THIS KIND OF RELIEF

11:36AM 20   IS VERY HIGH AND THAT THE FOCUS OF THE COURT'S ANALYSIS IN

11:36AM 21   CASES LIKE THIS IS REALLY ON THE CULPABILITY AND THE BAD FAITH

11:36AM 22   OF GOVERNMENT ACTORS.

11:36AM 23        THE FLYER ITSELF, THE FLYER OPINION AFFIRMS THE DISTRICT

11:36AM 24   COURT'S FINDINGS REGARDING DUE PROCESS AND SUPPRESSION, SO

11:36AM 25   AFFIRMING THE DISTRICT COURT'S DECISION NOT TO FIND A DUE

11:36AM 1    PROCESS VIOLATION OR TO SUPPRESS EVIDENCE.  AND IN FLYER THE

11:36AM 2    NINTH CIRCUIT NOTES IN BOTH OF THOSE CONTEXTS THE DISTRICT

11:36AM 3    COURT'S FINDING IS NO BAD FAITH BY THE GOVERNMENT.  THAT'S A

11:36AM 4    CASE WHERE THE HARD DRIVE WAS MISHANDLED, BUT THE GOVERNMENT

11:36AM 5    DIDN'T INTENTIONALLY CORRUPT DATA.

11:36AM 6        SO, AGAIN, IN THAT CASE ALTHOUGH BAD FAITH MAY NOT BE AN

11:36AM 7    EXPLICIT REQUIREMENT, FLYER MAKES CLEAR THAT THE PRESENCE OR

11:36AM 8    ABSENCE OF BAD FAITH IS A CRITICAL DETERMINATION NOT JUST TO

11:36AM 9    THE DUE PROCESS QUESTION BUT ALSO TO THE QUESTION OF WHETHER

11:36AM 10   SANCTIONS ARE APPROPRIATE.

11:36AM 11       OTHER CASES ARE SIMILAR.  U.S. VERSUS HENDRIX CITED BY THE

11:37AM 12   GOVERNMENT AND ALSO U.S. VERSUS ROBERTSON FOCUSSED ON THE

11:37AM 13   GOVERNMENT'S CONDUCT AND THE CULPABILITY OR LACK THEREOF OF THE

11:37AM 14   GOVERNMENT'S CONDUCT.

11:37AM 15       JUST VERY BRIEFLY HERE ON THE EXCULPATORY NATURE OR THE

11:37AM 16   ALLEGED EXCULPATORY NATURE OF THE DATA IN THE LIS.  DEFENSE

11:37AM 17   COUNSEL SAID MULTIPLE TIMES THAT THIS WAS THE MOST CRITICAL

11:37AM 18   EVIDENCE IN THE CASE.  THE GOVERNMENT ABSOLUTELY DISAGREES WITH

11:37AM 19   THAT, AND THAT'S NOT SUPPORTED BY THE EVIDENCE.

11:37AM 20       CERTAINLY THE GOVERNMENT DID NOT VIEW THIS AS THE MOST

11:37AM 21   CRITICAL EVIDENCE IN THE CASE AT THE TIME OF INDICTMENT.  IF

11:37AM 22   THAT HAD BEEN THE CASE, OF COURSE THE GOVERNMENT WOULD HAVE

11:37AM 23   COLLECTED AND EXAMINED THAT EVIDENCE PRIOR TO CHARGING THE

11:37AM 24   CASE.

11:37AM 25       THIS CASE WAS CHARGED BASED ON THE OTHER EVIDENCE THAT

| | |
|---|---|
| 11:37AM | 1 |
| 11:37AM | 2 |
| 11:37AM | 3 |
| 11:37AM | 4 |

11:37AM  1    CONCLUSIVELY SHOWS THAT THERANOS'S TECHNOLOGY SUFFERED FROM

11:37AM  2    ACCURACY AND RELIABILITY PROBLEMS AS WELL AS THE WEALTH OF

11:37AM  3    EVIDENCE THAT ESTABLISHES THE INVESTOR FRAUD AS TO WHICH THE

11:37AM  4    LIS IS OF MINIMAL RELEVANCE.

11:37AM  5        SO I JUST WANT TO PUSH BACK ON THE DEFENSE'S

11:38AM  6    CHARACTERIZATION OF THIS AS THE UNDISPUTED MOST CRITICAL

11:38AM  7    EVIDENCE IN THE CASE.  THAT'S SIMPLY NOT TRUE, AND THAT'S

11:38AM  8    PARTLY BECAUSE OF THE LIMITATIONS OF THE LIS AND WHAT IT COULD

11:38AM  9    NOT DO.

11:38AM  10       I BELIEVE THE DEFENSE CONCEDES THAT THE LIS WOULD NOT

11:38AM  11   ALLOW EITHER PARTY TO IDENTIFY ACCURATE OR INACCURATE RESULTS

11:38AM  12   SIMPLY BY LOOKING AT THOSE RESULTS.  IT'S NOT THE CASE THAT WE

11:38AM  13   COULD OPEN IT UP AND SEE MILLIONS OF ENTRIES, ACCURATE ONES

11:38AM  14   HIGHLIGHTED IN GREEN AND INACCURATE ONES HIGHLIGHTED IN RED.

11:38AM  15       THE COURT HAS SEEN, I THINK, THAT THE WAY THAT WE SHOW AN

11:38AM  16   INDIVIDUAL RESULT IS INACCURATE IS BY COMPARING IT AGAINST

11:38AM  17   EITHER A REFERENCE TEST AT THE SAME TIME THAT INFORMATION WOULD

11:38AM  18   NOT HAVE BEEN INCLUDED IN THE LIS OR BY COMPARING A PATIENT'S

11:38AM  19   RESULT TO THE OTHER INFORMATION WE HAVE ABOUT THAT PATIENT'S

11:38AM  20   PRESENTATION.  FOR EXAMPLE, IF SOMEONE TESTS NEGATIVE FOR

11:38AM  21   PREGNANCY BUT THEN ENDS UP CARRYING A FETUS TO TERM, WE HAVE A

11:39AM  22   CONFLICT THERE BETWEEN THE BLOOD TESTS RESULTS AND THE REALITY

11:39AM  23   OF THE PATIENT'S CONDITION.  THAT KIND OF INFORMATION, THE

11:39AM  24   INFORMATION CONTAINED IN A PATIENT'S MEDICAL CHART, THE

11:39AM  25   INFORMATION THAT A DOCTOR CAN OBTAIN BY OBSERVING A PATIENT,

```
11:39AM   1    THAT INFORMATION IS NOT CONTAINED IN THE LIS, EITHER.
11:39AM   2         SO THE IDEA THAT THE LIS WOULD HAVE ENABLED THE PARTIES TO
11:39AM   3    DETERMINE AN OVERALL FAILURE RATE OR REACH A CONCLUSIVE
11:39AM   4    DETERMINATION ABOUT THERANOS'S OVERALL RELIABILITY IS SIMPLY
11:39AM   5    FALSE.
11:39AM   6         TO THE EXTENT THAT THE LIS WOULD HAVE BEEN USEFUL IN THIS
11:39AM   7    CASE, IT WOULD HAVE BEEN USEFUL CERTAINLY TO THE GOVERNMENT IN
11:39AM   8    CORROBORATING THE INFORMATION THAT THE GOVERNMENT INTENDS TO
11:39AM   9    PRESENT FROM WITNESSES, INCLUDING INDIVIDUAL PATIENTS AND
11:39AM  10    FORMER THERANOS EMPLOYEES WHO DID HAVE ACCESS TO THAT DATA, AND
11:39AM  11    IT'S FROM THOSE EMPLOYEES THAT WE KNOW THAT THE LIS DATA WOULD
11:40AM  12    NOT HAVE BEEN EXCULPATORY IN THIS CASE.
11:40AM  13         THE INDIVIDUALS AT THERANOS WHO WORKED WITH THAT DATA, THE
11:40AM  14    GOVERNMENT REGULATORS WHO HAD ACCESS TO SOME OF THAT DATA
11:40AM  15    CONCLUDED THAT THE DATA SHOWED SERIOUS AND GLOBAL PROBLEMS WITH
11:40AM  16    THERANOS'S ACCURACY AND RELIABILITY.  THAT'S HOW WE KNOW THAT
11:40AM  17    WERE THIS EVIDENCE STILL AVAILABLE, WERE THE LIS STILL INTACT,
11:40AM  18    IT ACTUALLY WOULD HAVE BEEN INCULPATORY RATHER THAN
11:40AM  19    EXCULPATORY.
11:40AM  20         THE DEFENSE'S SPECULATION OR ASSUMPTIONS ABOUT WHAT MIGHT
11:40AM  21    HAVE BEEN POSSIBLE WERE THE DEFENSE TEAM ABLE TO ANALYZE THE
11:40AM  22    LIS DATA JUST CAN'T SUPPORT THE REQUEST UNDER THE CASE LAW.
11:40AM  23         WITH THAT THE GOVERNMENT WILL SUBMIT, YOUR HONOR.
11:40AM  24              THE COURT:  ALL RIGHT.  THANK YOU.
11:40AM  25         MS. SAHARIA?
```

11:40AM  1          MS. SAHARIA:  YES.  THANK YOU, YOUR HONOR.

11:40AM  2          LET ME COVER A FEW POINTS.  FIRST, LET ME JUST RESPOND

11:40AM  3    BRIEFLY TO MR. BOSTIC'S DISCUSSION OF THE CASE LAW JUST TO GET

11:41AM  4    THAT OUT OF THE WAY.

11:41AM  5          I DON'T OFTEN DO THIS, ACCUSE OPPOSING COUNSEL OF

11:41AM  6    MISCHARACTERIZING THE CASE LAW, BUT MR. BOSTIC IS

11:41AM  7    MISCHARACTERIZING LOUD HAWK.  I DON'T THINK HE'S DOING SO

11:41AM  8    INTENTIONALLY.

11:41AM  9          THE DISCUSSION OF REQUIRING BAD FAITH IS NOT THE OPINION

11:41AM  10   OF THE COURT, AND THAT'S CLEAR FROM THE OPENING, THE OPENING

11:41AM  11   DISCUSSION IN LOUD HAWK WHERE IT IDENTIFIED JUDGES WHO JOIN THE

11:41AM  12   OPINION.  I'M JUST GOING TO READ IT TO THE COURT.  "TRASK,

11:41AM  13   CIRCUIT JUDGE, FILES AN OPINION AND THE JUDGMENT OF THE COURT.

11:41AM  14   BROWNING, WRIGHT, CHOY, WALLACE,, ANDERSON, AND KENNEDY CONCUR

11:41AM  15   IN THE RESULT AND IN SECTIONS I, II, III, AND VI."

11:41AM  16         THE PART OF THE OPINION THAT MR. BOSTIC IS QUOTING TO THE

11:41AM  17   COURT IS SECTION IV OF THAT OPINION.  IT IS NOT THE OPINION OF

11:41AM  18   THE COURT.

11:41AM  19         WE DIDN'T CITE THIS CASE TO THE COURT BECAUSE I THOUGHT

11:42AM  20   THAT IT WAS CRYSTAL CLEAR THAT JUDGE KENNEDY'S OPINION IS NOT

11:42AM  21   DICTA BUT IS CONTROLLING LAW IN THE NINTH CIRCUIT, BUT SINCE

11:42AM  22   THE GOVERNMENT APPARENTLY DISAGREES, I WOULD CITE THE COURT TO

11:42AM  23   THE UNITED STATES VERSUS SIVILLA, 714 F. 3D 1168, NINTH CIRCUIT

11:42AM  24   2013 IN WHICH THE NINTH CIRCUIT SAYS THAT JUDGE KENNEDY'S

11:42AM  25   CONCURRING OPINION IN LOUD HAWK IS CONTROLLING LAW OF THIS

11:42AM  1    CIRCUIT TO DETERMINE WHETHER GOVERNMENT LOSS OF EVIDENCE

11:42AM  2    WARRANTS SANCTIONS LESS THAN DISMISSAL.

11:42AM  3        IT'S NOT DICTA.  THAT IS THE CONTROLLING LAW IN THIS

11:42AM  4    CIRCUIT, AND JUDGE TRASK'S DISCUSSION OF BAD FAITH IS NOT EVEN

11:42AM  5    THE OPINION OF THE COURT IN LOUD HAWK.  SO JUST TO GET THAT OUT

11:42AM  6    OF THE WAY.

11:42AM  7        A FEW OTHER ISSUES WITH RESPECT TO THE CASE LAW.  THE

11:42AM  8    GOVERNMENT RELIES VERY HEAVILY ON THE BROWN DISTRICT COURT CASE

11:42AM  9    FROM ANOTHER DISTRICT WHERE THE COURT SAID THAT A FAILURE TO

11:42AM  10   COLLECT EVIDENCE IS NOT ACTIONABLE UNDER LOUD HAWK, BUT THAT

11:43AM  11   COURT FAILED TO ACKNOWLEDGE THE LANGUAGE IN LOUD HAWK THAT

11:43AM  12   WHETHER THE EVIDENCE WAS IN THE GOVERNMENT'S CUSTODY IS JUST

11:43AM  13   ONE RELEVANT FACTOR.

11:43AM  14       LOUD HAWK DOES NOT MAKE THAT DISPOSITIVE.  IT CLEARLY IS

11:43AM  15   JUST ONE FACTOR OUT OF MANY, AND THAT DISTRICT COURT FAILS TO

11:43AM  16   RECOGNIZE THAT LANGUAGE IN LOUD HAWK.

11:43AM  17       THAT CASE ALSO, BY THE WAY, DOESN'T EVEN REALLY INVOLVE

11:43AM  18   THE FAILURE TO COLLECT THE EVIDENCE SO MUCH AS A FAILURE TO

11:43AM  19   CREATE THE EVIDENCE.  IT INVOLVES A SITUATION WHERE THE POLICE

11:43AM  20   OFFICERS WERE NOT WEARING THEIR BODY CAMS, AND THERE WAS NO

11:43AM  21   EVIDENCE TO EVEN BE COLLECTED.  THERE WAS NO VIDEO.  THE CLAIM

11:43AM  22   WAS JUST THAT THE POLICE OFFICERS HAD VIOLATED PROTOCOL BY

11:43AM  23   FAILING TO TURN ON THEIR VIDEO CAMS.

11:43AM  24       THE ZUNIGA-GARCIA CASE IS A LOUD HAWK CASE.  IT'S CRYSTAL

11:43AM  25   CLEAR FROM THAT CASE THAT INTENT IS NOT REQUIRED UNDER

| | |
|---|---|
| 11:43AM | 1 |

LOUD HAWK.  AND, AGAIN, THE COURT OR THE GOVERNMENT CITED THE

MARTINEZ CASE FROM THE NINTH CIRCUIT.  THAT IS NOT A LOUD HAWK

CASE, EITHER, AND THE CONTROLLING NINTH CIRCUIT CASE LAW UNDER

THE DUE PROCESS CLAIM AND WHETHER A FAILURE TO COLLECT CAN RISE

TO THE LEVEL OF A DUE PROCESS VIOLATION IS MILLER VERSUS

VASQUEZ, AND IT CLEARLY HOLDS THAT IT CAN.

SO THAT'S JUST TO RESPOND TO SOME OF THE CASE LAW.

NOW, WITH RESPECT TO THE EVIDENCE, MR. BOSTIC GAVE A VERY

NICE CLOSING ARGUMENT ABOUT WHAT FINDINGS OF FACT HE WOULD LIKE

THE COURT TO REACH AT THE CONCLUSION OF AN EVIDENTIARY HEARING,

BUT THAT'S WHY WE WOULD NEED A HEARING SO THE COURT CAN JUDGE

CREDIBILITY FOR ITSELF.

I THINK MR. BOSTIC URGED THE COURT TO REACH CREDIBILITY

DETERMINATIONS BASED ON 302 MEMOS FROM THE FBI.  THAT'S CLEARLY

NOT APPROPRIATE.  THE COURT NEEDS TO HEAR THE EVIDENCE LIVE AND

DETERMINE WHETHER THOSE WITNESSES ARE CREDIBLE, HEAR THEIR

TESTIMONY FIRSTHAND AND DETERMINE WHETHER MR. BOSTIC'S

REPRESENTATIONS THAT THESE ARE DEAD ENDS ARE REALLY ACCURATE.

WE JUST DON'T KNOW BECAUSE WE DON'T HAVE ALL OF THE EVIDENCE

BEFORE US.

THE COURT:  WELL, MS. SAHARIA, LET ME ASK YOU, WHAT

-- IT SEEMS CLEAR THAT THERE'S NO DISPUTE THAT WHAT THE

GOVERNMENT HAS, WHAT THE GOVERNMENT WAS PROVIDED IS

INACCESSIBLE, AND IT WAS AT THE TIME THAT THEY RECEIVED IT

BECAUSE THEY DO NOT HAVE THE KEY.  THE DOCUMENTS THAT YOU

11:45AM 1    SUPPLIED TO THE COURT, EXHIBITS AND THINGS, SHOW

11:45AM 2    CONTEMPORANEOUS EMAILS FROM WILMER AND OTHER PARTIES WHO WERE

11:45AM 3    IN CONTROL AT THE TIME, AT LEAST RECOGNITION THAT A KEY WAS

11:45AM 4    MISSING.  THERE'S MENTION OF NAMES OF INDIVIDUALS WHO CREATED

11:45AM 5    THE LIS, INDIVIDUALS WHO MIGHT HAVE THE KEY, INDIVIDUALS WHO

11:45AM 6    WERE IN INDIA.  I THINK I REFERENCED THOSE EARLIER.

11:45AM 7         BUT THERE'S NO DISPUTE, IS THERE, THAT THE GOVERNMENT HAD,

11:46AM 8    WHEN THEY RECEIVED THE LIS ON AUGUST 27, AND WHENEVER IT WAS,

11:46AM 9    2018, IT WAS A NONFUNCTIONING COPY?  IT WAS SOMETHING THAT WAS

11:46AM 10   GIVEN TO THEM THAT THEY EITHER RECEIVED IN GOOD FAITH OR

11:46AM 11   WHATEVER, BUT WHATEVER THEY RECEIVED IT WAS -- THEY COULD NOT

11:46AM 12   ACCESS IT, AND THEY DID NOT KNOW THAT AT THE TIME.

11:46AM 13        IS THAT IN DISPUTE?

11:46AM 14          MS. SAHARIA:  I DON'T DISPUTE THAT.

11:46AM 15        BUT WHAT I DO DISPUTE IS WHETHER -- HAD THE GOVERNMENT

11:46AM 16   ACTED PROMPTLY AND REASONABLY AS REASONABLE PROSECUTORS WOULD

11:46AM 17   HAVE DONE, WOULD THEY HAVE BEEN ABLE TO FIND THE INFORMATION

11:46AM 18   THEY NEEDED TO USE THE DATABASE COPY THAT THEY HAD?

11:46AM 19        NOW, IN MY OPENING PRESENTATION I NOTED FOR THE COURT THAT

11:46AM 20   IF YOU READ THE BRADY LETTER VERY CAREFULLY, IT APPEARS THAT

11:46AM 21   THE FIRST TIME THAT THE GOVERNMENT ASKED ANYONE FOR A PASSWORD

11:47AM 22   WAS A YEAR AND A HALF LATER, AND MR. BOSTIC DID NOT CHALLENGE

11:47AM 23   THAT IN HIS PRESENTATION.  HE NOTES THAT THERE WERE DISCUSSIONS

11:47AM 24   ABOUT HOW THEY COULDN'T ACCESS THE LIS DATABASE OCCURRING IN

11:47AM 25   THE U.S. ATTORNEY'S OFFICE IN LATE 2018, AND THAT APPEARS TO BE

11:47AM 1     TRUE.

11:47AM 2         BUT AT THE TIME, IT APPEARS FROM THE BRADY LETTER, AND

11:47AM 3     AGAIN, I URGE THE COURT TO READ THOSE PARAGRAPHS VERY

11:47AM 4     CAREFULLY, THE PARALEGALS AND SUPPORT STAFF WERE TELLING THE

11:47AM 5     GOVERNMENT THAT THE DATABASE WAS TOO BIG AND THEY DIDN'T HAVE

11:47AM 6     THE RIGHT SOFTWARE TO ACCESS IT.

11:47AM 7         NOW, MIND YOU, THE GOVERNMENT HAD BEEN TOLD LONG AGO WHAT

11:47AM 8     SOFTWARE IT WOULD NEED TO ACCESS IT AND APPARENTLY IT DIDN'T

11:47AM 9     GET IT, BUT THAT'S WHAT THEY WERE TALKING ABOUT IN LATE 2018.

11:47AM 10        THERE'S NO DISCUSSION IN THE BRADY LETTER THAT THE

11:47AM 11    GOVERNMENT REALIZED IT NEEDED A PASSWORD, WHICH IT WOULD HAVE

11:47AM 12    DONE IF IT DILIGENTLY OPENED THE LIS DATABASE, AND WE CAN'T

11:47AM 13    KNOW UNTIL WE HAVE AN EVIDENTIARY HEARING WHETHER THEY COULD

11:48AM 14    HAVE OBTAINED THAT PASSWORD OR WHETHER THEY COULD HAVE RESTORED

11:48AM 15    THE PHYSICAL LIS DATABASE, AS WITNESSES HAVE SAID THEY COULD

11:48AM 16    HAVE, IF THEY HAD OBTAINED THE PHYSICAL HARDWARE FROM THE

11:48AM 17    ASSIGNEE.  IT EXISTED.

11:48AM 18        IF THEY HAD ACTED PROMPTLY, THAT EQUIPMENT STILL EXISTED,

11:48AM 19    IT WAS WITH THE ASSIGNEE, THEY COULD HAVE COLLECTED IT.  AND,

11:48AM 20    YOU KNOW, MR. BOSTIC POINTED OUT THAT COLLECTING PHYSICAL

11:48AM 21    ANALYZERS IS DIFFERENT THAN COLLECTING ESI AND THE TYPICAL

11:48AM 22    APPROACH TO COLLECTING ESI IS JUST TO, YOU KNOW, COLLECT A COPY

11:48AM 23    OF THE DATA.

11:48AM 24        THAT MIGHT BE SO IN THE ORDINARY CASE, BUT WE KNOW THIS IS

11:48AM 25    NOT AN ORDINARY CASE BECAUSE THE GOVERNMENT'S OWN EXPERTS,

11:48AM 1    THEIR OWN ESI EXPERTS RECOMMENDED TO THE GOVERNMENT THAT THEY

11:48AM 2    TAKE STEPS TO EITHER GIVE IT TO THE FBI TO OPEN OR TO GO GET

11:48AM 3    THE PHYSICAL EQUIPMENT.  THEIR OWN EXPERTS TOLD THEM TO GO GET

11:48AM 4    THE PHYSICAL EQUIPMENT AND THEY DIDN'T DO IT.

11:48AM 5            THE COURT:  OKAY.  SO WOULD IT -- AS TO THE

11:49AM 6    DILIGENCE, AND I UNDERSTAND YOUR POINT ABOUT BEING CRITICAL OF

11:49AM 7    THE GOVERNMENT WAITING FOR A YEAR, 18 MONTHS, WHATEVER IT WAS

11:49AM 8    THAT THEY WAITED FOR.  SO WOULD THEY HAVE BEEN DILIGENT IF THEY

11:49AM 9    TRIED TO OPEN IT IN FIVE DAYS AT THE TIME THAT THEY RECEIVED

11:49AM 10   IT?  WOULD THAT HAVE BEEN DUE DILIGENCE?

11:49AM 11           MS. SAHARIA:  WELL, PERHAPS, YOUR HONOR.  I MEAN, I

11:49AM 12   WOULD HOPE THAT THEY WOULD TRY TO OPEN IT WITHIN A DAY OR TWO

11:49AM 13   OF RECEIVING IT.  THAT'S WHAT I THINK MOST PEOPLE DO WHEN THEY

11:49AM 14   RECEIVE PRODUCTIONS.  THEY DON'T SIT AROUND FOR FIVE DAYS,

11:49AM 15   ESPECIALLY WHEN THEY KNOW THAT THE PRODUCING COMPANY IS ABOUT

11:49AM 16   TO DISSOLVE.  I MEAN, I THINK THAT DISTINGUISHES THIS CASE FROM

11:49AM 17   THE ORDINARY CASE.

11:49AM 18           THE COURT:  BUT THEY DIDN'T KNOW.  THEY DIDN'T KNOW

11:49AM 19   THAT THE DATABASE WOULD BE DECOMMISSIONED FOUR DAYS AFTER THEY

11:49AM 20   RECEIVED IT, THOUGH, DID THEY?  IS THERE ANY DISPUTE ABOUT

11:49AM 21   THAT?

11:49AM 22           MS. SAHARIA:  MR. BOSTIC HAS REPRESENTED ORALLY TO

11:49AM 23   THE COURT THAT FACT, AND I HAVE NO BASIS TO QUARREL WITH THAT

11:50AM 24   ORAL REPRESENTATION TO THE COURT THAT HE DIDN'T KNOW THAT AT

11:50AM 25   THE TIME.

11:50AM  1      THEY CERTAINLY KNEW THE COMPANY WAS CLOSING.

11:50AM  2          THE COURT:  SURE.  I DIDN'T SEE ANY DOCUMENTATION,

11:50AM  3  ANY EMAILS OR ANYTHING THAT PUT ANY PARTY ON NOTICE THAT THE

11:50AM  4  DATABASE WOULD BE DECOMMISSIONED WHEN IT WAS.  I DIDN'T SEE

11:50AM  5  ANYTHING ABOUT THAT, NOR DID I SEE ANYTHING THAT GAVE

11:50AM  6  INFORMATION TO THE GOVERNMENT THAT WHAT THEY WERE GIVEN THEY

11:50AM  7  COULDN'T OPEN BECAUSE OF A LACK OF THIS KEY, I THINK THIS

11:50AM  8  PASSWORD KEY, THIS SECONDARY KEY THAT WAS NEEDED.

11:50AM  9      SO THEY WERE GIVEN SOMETHING AND IN ESSENCE FOUR DAYS

11:50AM  10  LATER IT -- THE LIS WAS -- THE ORIGINAL LIS WAS DESTROYED, AND

11:50AM  11  THE CRITICISM IS THE GOVERNMENT SHOULD HAVE OPENED THIS TO FIND

11:50AM  12  OUT THAT THEY HAD AN INOPERATIVE, INACCESSIBLE DATABASE PRIOR

11:51AM  13  TO THE DESTRUCTION OF THE LIS.

11:51AM  14          MS. SAHARIA:  WELL, NO.  AGAIN, THAT'S NOT PRECISELY

11:51AM  15  OUR -- MY POSITION.

11:51AM  16      IF THEY HAD ACTED PROMPTLY, WHETHER WITHIN FOUR DAYS OR

11:51AM  17  WHETHER WITHIN A WEEK, THERE WERE AVENUES AVAILABLE TO THE

11:51AM  18  GOVERNMENT TO USE THE COPY -- POTENTIALLY TO USE THE COPY IN

11:51AM  19  ITS POSSESSION OR TO GET THE ORIGINAL SERVER.

11:51AM  20      AND UNTIL WE HAVE AN EVIDENTIARY HEARING AND HEAR FROM THE

11:51AM  21  PEOPLE ON THE GROUND ABOUT WHAT THOSE AVENUES WOULD HAVE LED

11:51AM  22  TO, I DON'T THINK THAT WE CAN JUST TAKE FOR GRANTED THAT THESE

11:51AM  23  WERE DEAD ENDS AS MR. BOSTIC REPRESENTED THEM TO BE.

11:51AM  24      AGAIN, THEY COULD HAVE CONSULTED WITH THERANOS'S COUNSEL

11:51AM  25  ABOUT THE PASSWORD.  APPARENTLY THEY DIDN'T DO THAT FOR A YEAR

11:51AM 1    AND A HALF, AND PERHAPS AT THAT POINT IN TIME THEY COULD HAVE

11:51AM 2    FOUND THE PASSWORD.  PERHAPS THEY COULD -- I MEAN, THEY

11:51AM 3    CERTAINLY COULD HAVE OBTAINED THE PHYSICAL EQUIPMENT.

11:52AM 4         I THINK IT'S IMPORTANT TO KEEP IN MIND IN ADDITION THAT

11:52AM 5    THE ONLY REASON THAT WE'RE IN THIS POSITION AT ALL, THAT WE'RE

11:52AM 6    IN THIS POSITION OF THE FOUR-DAY GAP IS THAT THE GOVERNMENT

11:52AM 7    WAITED A YEAR AND A HALF FROM LEARNING ABOUT THE LIS DATABASE

11:52AM 8    TO EVEN BOTHER SUBPOENAING IT.

11:52AM 9         BY THE TIME THEY ASKED FOR THE DATABASE IN IT'S JUNE 4TH

11:52AM 10   SUBPOENA, THEY KNEW THE COMPANY WAS CLOSING SOON.  AND IF THEY

11:52AM 11   HAD ACTED PROMPTLY IN OBTAINING OR COLLECTING EVIDENCE IN THE

11:52AM 12   FIRST PLACE, WE VERY WELL WOULD HAVE NEVER BEEN IN THIS

11:52AM 13   SITUATION.

11:52AM 14        THE COURT:  BUT THERE WERE EARLIER SUBPOENAS AS

11:52AM 15   MR. BOSTIC IDENTIFIED.  THERE WERE EARLIER SUBPOENAS.  AND THE

11:52AM 16   SUBPOENAS IN THE REQUEST FOR PRODUCTION INDICATED DATABASE AND

11:52AM 17   ALL SOFTWARE NECESSARY TO ACCESS TO THAT.  I READ THOSE IN THE

11:52AM 18   SUBPOENAS AS WELL AS --

11:52AM 19        MS. SAHARIA:  THAT I DO NOT BELIEVE IS CORRECT,

11:52AM 20   YOUR HONOR.  THE FIRST SUBPOENA FOR THE DATABASE AND THE

11:52AM 21   SOFTWARE NECESSARY TO OPERATE IT WAS JUNE 4TH.  THEY HAD NEVER

11:53AM 22   BEFORE THAT DATE REQUESTED PRODUCTION OF THE DATABASE.

11:53AM 23        THEY HAD REQUESTED PRODUCTION OF INFORMATION FROM THE

11:53AM 24   DATABASE.  THERANOS WOULD GENERATE EXCEL SPREADSHEETS OF

11:53AM 25   CERTAIN DATA IN THE DATABASE AND PRODUCE THAT TO THE GOVERNMENT

11:53AM  1    AS EXCEL SPREADSHEETS.  BUT THE FIRST REQUEST FOR THE DATABASE

11:53AM  2    DIDN'T COME UNTIL JUNE 4TH, 2018.

11:53AM  3        WILMER HALE DID TELL THE GOVERNMENT WHAT SOFTWARE IT WOULD

11:53AM  4    NEED.  THAT SOFTWARE BELONGED TO MICROSOFT, AND THERANOS DIDN'T

11:53AM  5    FEEL IT APPROPRIATE APPARENTLY, WHICH MAKES SENSE TO ME, TO

11:53AM  6    GIVE THE GOVERNMENT, IT WOULD PROBABLY WOULD BREACH A LICENSE,

11:53AM  7    TO GIVE THE GOVERNMENT A COPY OF THE PUBLICLY AVAILABLE

11:53AM  8    MICROSOFT SOFTWARE.  AND SO IT TOLD THE GOVERNMENT WHAT

11:53AM  9    SOFTWARE TO GET, AND THERE'S NO EVIDENCE THAT IT DID.

11:53AM 10        JUST A FEW OTHER POINTS.  ON THE BRADY ISSUE, THE

11:53AM 11    INFORMATION IN THE BRADY LETTER, AND THIS GOES TO OUR MOTION TO

11:54AM 12    COMPEL, IT IS BRADY INFORMATION.  WHETHER OR NOT THE COURT

11:54AM 13    ULTIMATELY CONCLUDES THAT THE GOVERNMENT IS AT FAULT AND THAT

11:54AM 14    SUPPRESSION OR SOME OTHER SANCTION WOULD BE AN APPROPRIATE

11:54AM 15    REMEDY, THE FACT THAT THE GOVERNMENT RECEIVED THE MOST

11:54AM 16    COMPREHENSIVE COLLECTION OF TEST RESULT DATA AND MADE ALMOST NO

11:54AM 17    ATTEMPT TO EVEN OPEN IT FOR A YEAR AND A HALF IS HIGHLY

11:54AM 18    EXCULPATORY AND PROBATIVE EVIDENCE THAT THE GOVERNMENT DIDN'T

11:54AM 19    VIEW THIS AS VERY INCULPATORY OTHERWISE YOU WOULD THINK IT

11:54AM 20    WOULD TRY A LITTLE HARDER TO USE THIS DATA.  THAT IS RELEVANT

11:54AM 21    EVIDENCE.

11:54AM 22        WE ARE ENTITLED TO MAKE A JUDGMENT CALL AS TO WHETHER WE

11:54AM 23    WANT TO PRESENT THAT EVIDENCE AT TRIAL, AND WE CAN'T DO THAT

11:54AM 24    WITHOUT THE ACTUAL DOCUMENTS AND IDENTITIES OF THE INVOLVED

11:54AM 25    INDIVIDUALS.  SO THAT JUST GOES TO THE MOTION TO COMPEL.

11:54AM 1       JUST A FEW OTHER RESPONSES.

11:55AM 2       MR. BOSTIC POINTED OUT THAT THERE'S NO PREJUDICE HERE

11:55AM 3  BECAUSE TWO YEARS LATER IN 2020 THE GOVERNMENT PRODUCED A COPY

11:55AM 4  OF THE COPY TO MS. HOLMES.

11:55AM 5       OF COURSE MS. HOLMES DOES NOT HAVE ACCESS TO FBI COMPUTER

11:55AM 6  EXPERTS.  SHE DOESN'T HAVE ACCESS TO THE PHYSICAL SERVERS

11:55AM 7  BECAUSE THE GOVERNMENT DIDN'T COLLECT THEM AND BY NOW THEY'VE

11:55AM 8  BEEN RETURNED TO THE LESSORS OR DESTROYED, NOR DID SHE HAVE

11:55AM 9  TIMELY ACCESS TO -- IN THE WAKE OF THIS PRODUCTION TO PEOPLE

11:55AM 10  WHO MIGHT HAVE HAD THE PASSWORD.  AGAIN, THERE'S NO EVIDENCE

11:55AM 11  THAT MS. HOLMES HAD ANY KNOWLEDGE OF ANY OF THESE EVENTS, HAD

11:55AM 12  ANY KNOWLEDGE OF ANY PASSWORD ISSUE.

11:55AM 13       THE GOVERNMENT HAS AGAIN MADE SPECIOUS ASSERTIONS THAT SHE

11:55AM 14  MUST HAVE BEEN RESPONSIBLE FOR SUBPOENA COMPLIANCE.  SHE WAS

11:55AM 15  NOT RESPONSIBLE FOR SUBPOENA COMPLIANCE.

11:56AM 16       WE RESPECTFULLY REQUEST THE OPPORTUNITY TO PRESENT TO THE

11:56AM 17  COURT IN CAMERA A STATEMENT TO THIS EFFECT SO THE COURT

11:56AM 18  UNDERSTANDS WHAT MS. HOLMES DID OR DID NOT OR HAVE ACCESS TO AT

11:56AM 19  THE RELEVANT TIME.  WE THINK THAT THE INFORMATION IS

11:56AM 20  PRIVILEGED, BUT IT'S RELEVANT TO SOME OF THE COURT'S QUESTIONS,

11:56AM 21  AND WE WOULD RESPECT THE OPPORTUNITY TO PRESENT AN IN CAMERA

11:56AM 22  SUBMISSION TO THE COURT ON THAT ISSUE.

11:56AM 23       I'LL JUST CLOSE ON THE ISSUE OF PREJUDICE.  IT IS -- THE

11:56AM 24  LACK OF ACCESS TO THE DATABASE IS PREJUDICIAL BOTH WITH RESPECT

11:56AM 25  TO INDIVIDUAL TEST RESULTS AND MORE GENERALLY.

11:56AM  1        WITH RESPECT TO THE INDIVIDUAL TEST RESULTS, THERE IS

11:56AM  2   SIGNIFICANT INFORMATION THAT WE CAN LEARN ABOUT THOSE

11:56AM  3   INDIVIDUAL TEST RESULTS FROM THE DATABASE.  EVEN IF YOU CAN'T,

11:56AM  4   YOU KNOW, YOU CAN'T LOOK AT THE DATABASE FOR SURE AND KNOW IF

11:57AM  5   SOMEONE WAS ACTUALLY PREGNANT OR NOT, BUT AS I SAID, THERE'S

11:57AM  6   INFORMATION IN THE DATABASE THAT GOES TO WHETHER WHAT MIGHT

11:57AM  7   HAVE CAUSED AN INACCURATE TEST RESULT.

11:57AM  8        AND WE COULD TAKE THE MULTITUDE OF DATA IN THAT DATABASE

11:57AM  9   AND PUT THAT INDIVIDUAL RESULT IN CONTEXT, YOU KNOW, HOW MANY

11:57AM 10   OF THESE WERE OUT OF WHACK?

11:57AM 11        YOU KNOW, THE GOVERNMENT'S DOCTOR EXPERTS HAVE SAID THAT

11:57AM 12   THESE RESULTS IN MANY CASES WERE OBVIOUS ERRORS TO THEM.

11:57AM 13        WELL, HOW MANY OTHER OBVIOUS ERRORS ARE THERE IN THE

11:57AM 14   DATABASE?  ARE THERE A LOT?  ARE THERE NONE?  IS THERE ONE OF,

11:57AM 15   YOU KNOW, HUNDREDS OF THOUSANDS OF SUCH RESULTS AND THIS IS

11:57AM 16   JUST ONE OF THEM?  THAT WOULD BE VERY PROBATIVE, AND WE DON'T

11:57AM 17   HAVE ACCESS TO THAT.

11:57AM 18        AND IT'S NOT SPECULATION FOR US TO SAY THAT THERE IS

11:57AM 19   EXCULPATORY VALUE TO THE DATABASE, AND THAT'S THE LANGUAGE THAT

11:57AM 20   THE COURTS USED IN DETERMINING WHETHER TO SUPPRESS EVIDENCE,

11:57AM 21   WHETHER THERE IS POTENTIAL EXCULPATORY VALUE, AND WHETHER THE

11:58AM 22   GOVERNMENT KNEW THAT AT THE RELEVANT TIME.

11:58AM 23        AND THERE'S NO QUESTION THAT THERE ARE MANY, MANY, MANY

11:58AM 24   MILLIONS OF ACCURATE TEST RESULTS IN THAT DATABASE THAT SHOW

11:58AM 25   THAT THERANOS WAS GENERATING ACCURATE AND RELIABLE TEST RESULTS

11:58AM   1    ACROSS A VERY BROAD RANGE OF TESTS AND ALL OF THAT IS HIGHLY

11:58AM   2    EXCULPATORY BOTH ON THE QUESTION OF FALSITY BUT ALSO WITH

11:58AM   3    RESPECT TO MS. HOLMES'S INTENT.

11:58AM   4        SO WITH THAT WE URGE THE COURT TO SET THIS MOTION FOR A

11:58AM   5    HEARING AND SEPARATELY I URGE THE COURT TO GRANT OUR MOTION TO

11:58AM   6    COMPEL.

11:58AM   7            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH,

11:58AM   8    MS. SAHARIA.

11:58AM   9        MR. BOSTIC, MS. SAHARIA GETS THE LAST WORD, BUT IS THERE

11:58AM   10   ANYTHING YOU WANT TO SAY?  AND IF THERE IS, I'LL GIVE

11:58AM   11   MS. SAHARIA THE LAST WORD.

11:58AM   12           MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:58AM   13       JUST ON THAT LAST POINT ABOUT THE PREJUDICE TO THE DEFENSE

11:58AM   14   AND THE EXCULPATORY NATURE OR ARGUABLE EXCULPATORY NATURE OF

11:58AM   15   THIS DATA.  I WOULD REFER THE COURT TO THE FLYER DECISION AND

11:59AM   16   THE ROBERTSON DECISION.

11:59AM   17       SO FLYER REJECTED THAT DEFENDANT'S SUPPRESSION ARGUMENTS

11:59AM   18   PARTLY BECAUSE THAT DEFENDANT DIDN'T SHOW THAT THE LOSS OF

11:59AM   19   EVIDENCE PREJUDICED HIM.  IN THAT CASE THE LOSS OF ELECTRONIC

11:59AM   20   INFORMATION MEANT THAT IT WAS ACTUALLY MORE DIFFICULT FOR THE

11:59AM   21   GOVERNMENT TO PROVE SUCCESSFUL DOWNLOADS OF THE INCRIMINATING

11:59AM   22   MATERIAL IN THAT CASE.

11:59AM   23           THE COURT:  BUT THE GOVERNMENT DISMISSED THE ONE

11:59AM   24   COUNT THAT INVOLVED -- WAS INVOLVED IN THIS CASE IF I RECALL

11:59AM   25   CORRECTLY.

11:59AM  1         MR. BOSTIC:  CORRECT, YOUR HONOR.

11:59AM  2      BUT THE DEFENDANT IN THAT CASE WANTED ADDITIONAL

11:59AM  3  SUPPRESSION THAT THE COURT DENIED ON THE BASIS THAT THERE WAS

11:59AM  4  AN INSUFFICIENT SHOWING THAT THE PREJUDICE WAS ACTUALLY APPLIED

11:59AM  5  TO THE DEFENDANT HIMSELF AS OPPOSED TO THE GOVERNMENT.

11:59AM  6      AND HERE WHEN WE'RE TALKING ABOUT CONTEXTUAL INFORMATION

11:59AM  7  SURROUNDING INDIVIDUAL PATIENT RESULTS, THERE'S EVERY REASON TO

11:59AM  8  BELIEVE THAT THE LACK OF THAT INFORMATION PUTS THE GOVERNMENT

11:59AM  9  AT A DISADVANTAGE ALSO SO THAT THE DEFENSE OBVIOUSLY CAN -- YOU

12:00PM  10  KNOW, IS AWARE OF THAT.  BUT THIS IS NOT PREJUDICE UNIQUE TO

12:00PM  11  THE DEFENDANT.  IT IS NOT THE KIND OF PREJUDICE THAT SUPPORTS A

12:00PM  12  FINDING OF SANCTIONS BEING WARRANTED UNDER LOUD HAWK.

12:00PM  13      ROBERTSON SIMILARLY DECLINES TO ISSUE A REMEDIAL JURY

12:00PM  14  INSTRUCTION UNDER LOUD HAWK PARTLY BECAUSE THAT COURT FOUND

12:00PM  15  THAT THE EXCULPATORY VALUE OF THE EVIDENCE IN THAT CASE WAS NOT

12:00PM  16  APPARENT.

12:00PM  17      SO HERE WHEN THE DEFENSE TALKS ABOUT HOW MANY ACCURATE

12:00PM  18  RESULTS THE LIS WOULD HAVE CONTAINED OR EVEN ASSUMES THAT IT

12:00PM  19  WOULD BE POSSIBLE TO IDENTIFY WHICH RESULTS WERE ACCURATE IN

12:00PM  20  THE LIS, THAT IS SPECULATION.  IT'S THE KIND OF SPECULATION

12:00PM  21  THAT THE COURT CAN'T RELY ON IN AN ANALYSIS LIKE THIS.

12:00PM  22      AND IN ROBERTSON THE COURT HAD PREVIOUSLY FOUND THAT IT

12:00PM  23  WAS COMPLETELY SPECULATIVE WHETHER THE VIDEO THAT WAS LOST IN

12:00PM  24  THAT CASE WAS POTENTIALLY USEFUL TO THE DEFENSE AND THE SAME IS

12:00PM  25  TRUE HERE.

12:00PM  1       NOT ONLY HERE ARE WE FACING SPECULATION ABOUT THE NATURE

12:01PM  2   OF THE DATA IN THE LIS, SPECULATION WHICH IS CONTRARY TO WHAT

12:01PM  3   WITNESSES HAVE TOLD US AND WHAT OTHER DATA SHOWS, BUT WE'RE

12:01PM  4   ALSO FACING ANOTHER LAYER OF SPECULATION ABOUT WHETHER THAT

12:01PM  5   EVIDENCE WAS TRULY IN EXISTENCE AFTER THE ORIGINAL COPY OF THE

12:01PM  6   DATABASE WAS DISASSEMBLED IN AUGUST OF 2018.  SO WE HAVE

12:01PM  7   MULTIPLE LAYERS OF SPECULATION HERE COMPOUNDING EACH OTHER.

12:01PM  8       NOT ONLY CAN THE DEFENSE NOT SHOW THAT THIS EVIDENCE WOULD

12:01PM  9   HAVE BEEN EXCULPATORY, IT CAN'T EVEN SHOW THAT THE EVIDENCE WAS

12:01PM 10   ACCESSIBLE OR EXTANT POST AUGUST 2018.

12:01PM 11           THE COURT:  ALL RIGHT.  THANK YOU.

12:01PM 12       MS. SAHARIA.  AND THIS IS THE FINAL WORD, MS. SAHARIA.

12:01PM 13           MS. SAHARIA:  FINAL WORD.

12:01PM 14       SO WITH RESPECT TO THE FLYER CASE, THE COURT HELD THERE

12:01PM 15   WAS NO EVIDENCE OF PREJUDICE TO THE DEFENDANT BECAUSE HE HAD

12:01PM 16   ADMITTED TO THE AGENTS THAT CAME TO SEIZE HIS COMPUTER THAT HE

12:01PM 17   HAD DOWNLOADED THE PORN, SO THE FACT THAT THE COMPUTER WAS NOT

12:02PM 18   AVAILABLE TO HIM WAS NOT EXCULPATORY.  SO THAT'S NEITHER HERE

12:02PM 19   NOR THERE WITH RESPECT TO THIS CASE.

12:02PM 20       WITH RESPECT TO THE ROBERTSON CASE, THE COURT DID HOLD AN

12:02PM 21   EVIDENTIARY HEARING, AND IT WAS AFTER ALL OF THE EVIDENCE CAME

12:02PM 22   OUT AT THAT HEARING ABOUT WHAT THE VIDEO CAMERA SHOWED OR

12:02PM 23   DIDN'T SHOW AND WHICH WAY IT WAS POINTED AND THE FACT THAT IT

12:02PM 24   WAS ACTUALLY NOT EVEN -- THE VIEW OF THE CAR AT ISSUE WAS

12:02PM 25   OBSTRUCTED, ALL OF THAT EVIDENCE CAME OUT AT A HEARING AND ON

12:02PM 1    THE BASIS OF THAT EVIDENCE THE COURT CONCLUDED THAT THE

12:02PM 2    EXCULPATORY NATURE OF THE EVIDENCE WAS SPECULATIVE, AND,

12:02PM 3    THEREFORE, THERE WAS MINIMAL PREJUDICE.

12:02PM 4         I WILL NOTE THAT IN THAT CASE THE COURT ALSO RELIED ON THE

12:02PM 5    FACT THAT THE FAILURE TO PRESERVE THE EVIDENCE WAS DUE TO

12:02PM 6    ROUTINE OPERATION OF THE POSTAL SERVICE AND THAT THE

12:02PM 7    PROSECUTORS WERE NOT INVOLVED.  THIS IS A VERY DIFFERENT

12:02PM 8    SITUATION THAN ROBERTSON.

12:02PM 9         WE ARE NOT SPECULATING.  WE HAVE OFFERED THE COURT

12:03PM 10   EVIDENCE FROM WITNESSES INTERVIEWED BY THE GOVERNMENT THAT THE

12:03PM 11   DATABASE COULD HAVE THEN USED IF IT HAD BEEN PUT BACK TOGETHER

12:03PM 12   IN A TIMELY FASHION.

12:03PM 13        THE GOVERNMENT DOESN'T WANT TO BELIEVE THAT EVIDENCE, BUT

12:03PM 14   THAT'S EXACTLY WHY AN EVIDENTIARY HEARING IS REQUIRED SO THE

12:03PM 15   COURT CAN HEAR THAT EVIDENCE FIRSTHAND AND MAKE FINDINGS OF

12:03PM 16   FACT BASED ON THAT EVIDENCE.

12:03PM 17        THE GOVERNMENT WAS WELL AWARE THAT THIS WAS -- THIS WOULD

12:03PM 18   BE A COMPLEX DATABASE WHICH USED AND IT WAS PUT ON NOTICE OF

12:03PM 19   THAT FACT IN MAY.  WE DON'T DISPUTE THAT THIS IS A COMPLEX

12:03PM 20   DATABASE.  IT CERTAINLY WAS.  THE GOVERNMENT HAD PLENTY OF

12:03PM 21   NOTICE OF THE STEPS THAT IT COULD HAVE TAKEN TO BE ABLE TO USE

12:03PM 22   DATABASE, AND IT DIDN'T TAKE ANY OF THOSE STEPS.  THIS IS ALL

12:03PM 23   RELEVANT EVIDENCE THAT THE COURT SHOULD HEAR AT A HEARING.

12:03PM 24             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

12:03PM 25   YOU.

12:03PM 1       AS I INDICATED AT THE OUTSET, I'M GOING TO REVIEW ALL OF

12:04PM 2    YOUR COMMENTS AND REVIEW, ONCE AGAIN, THE PAPERS AND THE COURT

12:04PM 3    WILL TAKE THE MOTION UNDER SUBMISSION, AND I'LL ISSUE AN ORDER

12:04PM 4    SHORTLY THAT WILL HAVE THE COURT'S FINDINGS AND RULING ON THE

12:04PM 5    MOTION AND ON THE REQUESTS FOR A HEARING AND OTHER INFORMATION.

12:04PM 6       ANYTHING FURTHER BEFORE WE CLOSE TODAY?

12:04PM 7          MS. SAHARIA:  YOUR HONOR, I THINK MR. DOWNEY WOULD

12:04PM 8    LIKE TO ADDRESS A FEW -- ONE OR MORE ISSUES RELATING TO

12:04PM 9    PRETRIAL ISSUES.

12:04PM 10          THE COURT:  OKAY.

12:04PM 11          MR. DOWNEY:  JUST A HOUSEKEEPING QUESTION.  I DON'T

12:04PM 12   THINK WE'RE SCHEDULED TO BE TOGETHER BEFORE THE QUESTIONNAIRE

12:04PM 13   WILL GO OUT.  AND HAS THE COURT FINALIZED THAT?  AND IS THERE

12:04PM 14   ANYTHING THAT THE COURT NEEDS FURTHER FROM THE PARTIES ON THAT?

12:04PM 15          THE COURT:  I DO NOT NEED ANYTHING FURTHER FROM YOU.

12:04PM 16   AND YOU'LL GET THE COURT'S FINAL QUESTIONNAIRE SHORTLY.

12:04PM 17          MR. DOWNEY:  GOOD.  THANK YOU, YOUR HONOR.

12:04PM 18      AND THE OTHER QUESTION WAS JUST I KNOW YOUR HONOR HAD

12:04PM 19   MENTIONED THAT AT SOME TIME PRIOR TO THE 31ST WE MIGHT GET

12:04PM 20   TOGETHER.

12:04PM 21      I ASSUME THE COURT WILL SET THAT DATE IN THE FUTURE, BUT I

12:05PM 22   JUST WANTED TO ASK IF THE COURT WANTS TO SET IT NOW.

12:05PM 23          THE COURT:  WELL, I'M HAPPY TO -- I DO THINK IT'S

12:05PM 24   IMPORTANT THAT WE DO GET TOGETHER, ALL OF US, AT SOME POINT IN

12:05PM 25   TIME, AND I WAS GOING TO LEAVE IT TO YOU TO SCHEDULE YOUR

12:05PM  1      SCHEDULES TO MEET AND CONFER AND SEE WHAT WORKS FOR ALL OF YOUR

12:05PM  2      TEAMS.

12:05PM  3              MR. DOWNEY:  WE'LL DO THAT, YOUR HONOR.

12:05PM  4              THE COURT:  BUT I'M HAPPY TO HAVE YOU IN HERE IN THE

12:05PM  5      COURT.

12:05PM  6          I CAN TELL YOU THAT, AS YOU PROBABLY READ, WE'RE STARTING

12:05PM  7      TO RELAX THINGS.  OUR COURT HAS GIVEN US -- WE HAVE DECIDED TO

12:05PM  8      ALLOW EACH JUDGE THE DISCRETION AS TO WHETHER OR NOT TO TAKE

12:05PM  9      THE PLEXIGLASS DOWN THAT'S IN THE COURTROOM, AND YOU'VE HEARD

12:05PM 10      ME SPEAK ABOUT MY FONDNESS OF THE PLEXIGLASS IN THE COURTROOM.

12:05PM 11          I HAVEN'T ASKED IT TO BE REMOVED JUST YET.  IN THE SPIRIT

12:05PM 12      OF FULL DISCLOSURE, I'M CONSULTING WITH MY STAFF ALSO TO SEE

12:06PM 13      WHAT THEIR COMFORT LEVEL IS AS WELL BEFORE I MAKE ANY FINAL

12:06PM 14      DECISIONS, AND I'M HAPPY TO HEAR FROM YOU AS WELL ABOUT THAT,

12:06PM 15      TOO, THAT IS, BOTH SIDES, ABOUT YOUR CONCERNS, IF ANY, ABOUT

12:06PM 16      WHETHER OR NOT PLEXIGLASS SHOULD STAY IN PLACE AND WHAT YOUR

12:06PM 17      THOUGHTS ARE, AND, IF SO, IN WHAT CAPACITY.  THAT MIGHT BENEFIT

12:06PM 18      YOU AND YOUR WITNESSES AND ALL OF THE PARTIES.

12:06PM 19          SO YOU CAN LET ME KNOW THAT, TOO.

12:06PM 20          BUT, YES, I'D LIKE YOU TO MEET AND CONFER AND WORK WITH

12:06PM 21      MS. KRATZMANN AND SEE IF WE CAN GET AN AGREEABLE DATE WHEN WE

12:06PM 22      CAN ALL GET TOGETHER.

12:06PM 23              MR. DOWNEY:  FAIR ENOUGH, YOUR HONOR.  UNDERSTOOD,

12:06PM 24      YOUR HONOR.

12:06PM 25              THE COURT:  OKAY.  GREAT.  THANK YOU.

12:06PM  1          THEN LET ME JUST EXTEND OUR BEST WISHES TO EVERYONE IN

12:06PM  2     FUTURE ENDEAVORS, AND WE HOPE THE BEST AND EXTEND OUR GOOD WILL

12:06PM  3     TO ALL OF YOU, AND WE LOOK FORWARD TO SEEING YOU AGAIN ALL

12:07PM  4     HEALTHY, AND I LOOK FORWARD TO HAVING YOU ALL IN THE COURTROOM

12:07PM  5     AGAIN.

12:07PM  6          SO BEST WISHES.  THANK YOU.

12:07PM  7               MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:07PM  8               MR. BOSTIC:  THANKS VERY MUCH.

12:07PM  9               MR. WADE:  THANK YOU, YOUR HONOR.

12:07PM  10               THE CLERK:  COURT IS ADJOURNED.  THIS WEBINAR SHALL

12:07PM  11     TERMINATE.

        12               (COURT CONCLUDED AT 12:07 P.M.)

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18
           DATED:  JULY 9, 2021
19

20

21

22

23

24

25