As requested by the Court, accompanying this cover sheet, Mr. Balwani is filing a <u>redacted version</u> of **Defendant Ramesh "Sunny" Balwani's Sealed Response to Motion of Dow Jones & Company Inc. to Intervene for Limited Purpose of Seeking to Unseal Judicial Records in the Court's File, including the Docket; Motion to Unseal Judicial Records** (Sealed Dkt. No. 934). As indicated in the Certificate of Service, Mr. Balwani is serving the redacted version on all parties and also on counsel for Dow Jones. Mr. Balwani served the unredacted version on counsel for the government and counsel for Ms. Holmes, because they have been privy to the material sealed pursuant to the Court's January 14, 2020 order. Mr. Balwani has not served the unredacted version on Dow Jones because that would reveal matters currently under seal prior to any ruling from the Court on Dow Jones' motion.

JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
GUY SINGER (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
       gsinger@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>HOLMES, et al.,<br><br>   Defendants. | Case No. 18-CR-00258-EJD<br><br>**DEFENDANT RAMESH "SUNNY" BALWANI'S SEALED RESPONSE TO MOTION OF DOW JONES & COMPANY INC. TO INTERVENE FOR LIMITED PURPOSE OF SEEKING TO UNSEAL JUDICIAL RECORDS IN THE COURT'S FILE, INCLUDING THE DOCKET; MOTION TO UNSEAL JUDICIAL RECORDS**<br><br>Date:   August 26, 2021<br>Time:   11:30 a.m.<br>Judge:  Honorable Edward J. Davila<br>Ctrm:   4, 5th Floor (via Zoom)<br><br>***FILED UNDER SEAL*** |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# PROVISIONALLY FILED UNDER SEAL PURSUANT TO COURT ORDER OF JANUARY 14, 2020

**I.      INTRODUCTION**

Nothing has changed since the Court rightly concluded that public disclosure of the Court's severance order and the materials underlying it "would impair the ability of the parties to receive a fair trial." Dkt. 369 at 1 n.1. Press scrutiny of this case remains intense, and indeed has ramped up as Ms. Holmes' trial date approaches. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For these reasons, Mr. Balwani opposes the relief requested by Dow Jones in its motion to unseal the filings underlying the Court's Order granting severance ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ There are no new facts or bases to unseal any of the documents at issue.

Nonetheless, on August 13, 2021, per the Court's instructions, Mr. Balwani submitted to Courtroom Deputy Adriana Kratzmann proposed redactions to the papers identified by the Court to Mr. Balwani's counsel that would be necessary at a bare minimum to safeguard his Fifth and Sixth Amendment rights. Those proposed redactions will reveal the titles of the docket entries identified by the Court for the parties to propose redactions, as well as some of the legal arguments underlying those pleadings. Those proposed redactions represent the greatest possible disclosure consistent with Mr. Balwani's constitutional guarantee of a fair trial, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Under this Court's January 13, 2020 instruction, Mr. Balwani is filing this memorandum ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under seal. Mr. Balwani outlines the standard governing the Court's prior decision to seal these papers in his concurrently filed public response to Dow Jones' motion.

## II.     PROCEDURAL BACKGROUND

The Court knows the factual background to this issue well. The parties have extensively briefed the substance of Mr. Balwani's severance motion, Ms. Holmes' severance motion ████ ████████, and the government's steadfast opposition to maintaining the pleadings related to those filings under seal.

**A.     The Court Seals Pleadings Related to the Reasons for Mr. Balwani's Severance**

Since ████████████████████████████████████████████████████████████████████████████████ papers relating to this issue have remained sealed. Mr. Balwani sought to keep these matters under seal ████████████████████████████████████████████████████████████. *See* Dkt. 186 (Balwani Admin. Mot. to Seal); *see also* Dkt. 201 (Balwani Reply Re: Admin. Mot. to Seal). The Court provisionally granted Mr. Balwani's motion to seal on December 12, 2019. During a ████ hearing on ██████████, the Court instructed the parties that future filings related to ██████████████████████████████ be filed under seal without the need for separate sealing papers. When the Court issued its sealed Order granting in part Mr. Balwani's motion to sever, it made its findings on sealing explicit: As the Court stated, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Dkt. 369 at 1 n.1.

By the time the Court entered its ruling ██████████████████████████████████████████████████

████ ██████████████████████████████████████████████
██████████████████████████████████████████████████
████ ██████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████
████ ██████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2       The Court did not make its prejudice finding based on an uncontested request from

3 Mr. Balwani. Instead, the government hotly disputed the basis for sealing. Its brief in opposition

4 raised the same arguments that Dow Jones relies on now along with arguments under the Crime

5 Victims' Rights Act. *Compare* Dkt. 195 at 3–6 *with* Dkt. 881 at 11–22. ███████████

6 ████████████████████████████████████████████████ Mr. Balwani has

7 had to file several briefs rebuffing new efforts from the government to make public ████

8 ███████████—including in opposition briefs filed under seal on May 22 and June 19, 2020.

9 Despite the government's efforts, however, the Court has never deviated from its ruling that these

10 documents must remain sealed to protect the defendants' right to a fair trial.

11 **B.    Press Coverage of this Case Has Intensified**

12       In the 16 months since the Court issued its sealing order, the press coverage of the case

13 has only intensified. As Mr. Balwani described in his original severance briefing and as the Court

14 already knows, this is one of the most watched criminal cases in the country. By December 2019,

15 there were already hundreds of articles in the Bay Area press—and hundreds more nationally—

16 covering Theranos and the government's accusations. *See, e.g.*, Dkt. 190 ¶ 4.

17       Public scrutiny has only intensified as Ms. Holmes' trial date gets closer. The Court has

18 no doubt seen this in the various Zoom and telephonic hearings held over the last year: even with

19 the pandemic raging and other issues to report on, there were often dozens of listeners for even

20 routine hearings. In recent weeks, John Carreyrou, the bestselling author and former *Wall Street*

21 *Journal* reporter whose stories prompted the government's investigation, announced a new

22 podcast covering Ms. Holmes' trial.[1] Another hit podcast is also returning to cover the trial.[2] And

23 the traditional press coverage has reached a galloping pace, covering everything from casting

---

[1] Yasmin Khorram, *Reporter Who Broke Theranos Scandal Predicts Outcome of Trial*, CNBC.COM (July 9, 2021 at 8:00 a.m. EDT), https://www.cnbc.com/video/2021/07/09/john-carreyrou-will-uncover-the-final-chapter-of-the-theranos-scandal.html.

[2] Peter White, *'The Dropout': ABC News Podcast Returns as Elizabeth Holmes Goes on Trial*, DEADLINE (Aug. 5, 2021), https://deadline.com/2021/08/the-dropout-abc-news-podcast-returns-elizabeth-holmes-trial-1234809349/.

news on the forthcoming film and TV series about Theranos[3] to the developments in these proceedings—including this motion to unseal.[4]

C. **Dow Jones Seeks to Unseal the Documents and the Parties Propose Redactions**

Despite the press's intense interest in this case, no non-party has sought to unseal the documents underlying the Court's public Order on March 20, 2020 severing the defendants' trials until now. *See* Dkt. 362.

One year and more than four months later, Dow Jones—which owns the *Wall Street Journal*—filed its motion. At a status hearing on August 10, the Court directed the parties to propose redactions to a list of docket entries that it circulated later that day. ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

On August 13, Mr. Balwani provided to the Court his proposed redactions to the documents on the list provided by the Court. The proposed redacted language falls into several categories: ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[3] *See, e.g.*, Dan Clarendon, *Meet the Major Players of Hulu's Theranos Drama 'The Dropout'*, TV INSIDER (Aug. 15, 2021), https://www.tvinsider.com/gallery/the-dropout-hulu-cast-vs-real-people/; Chris Evangelista, *Elizabeth Holmes 'Bad Blood' Movie Starring Jennifer Lawrence and Directed by Adam McKay Still in Development*, Slash Film (Apr. 22, 2021), https://www.slashfilm.com/bad-blood-movie-update/.

[4] *See, e.g.*, Joel Rosenblatt, *Elizabeth Holmes Prosecutor Seeks to Undo Secrecy on Mental Defense*, BLOOMBERG (Aug. 10, 2021), https://www.bloomberg.com/news/articles/2021-08-10/holmes-judge-weighs-unsealing-mental-evaluation-in-criminal-case; Yasmin Khorram, *Judge May Unseal Some Mental Health Records in Elizabeth Holmes Case*, CNBC.COM (Aug. 10, 2021), https://www.cnbc.com/2021/08/10/judge-may-unseal-some-mental-health-records-in-elizabeth-holmes-case.html; Sara Randazzo & Christopher Weaver, *Judge in Elizabeth Holmes Trial Concerned about Secrecy, to Rule on Unsealing Request*, Wall St. J. (Aug. 10, 2021), https://www.wsj.com/articles/judge-in-elizabeth-holmes-trial-concerned-about-secrecy-to-rule-on-unsealing-request-11628625221; *see also* Joel Rosenblatt, Elizabeth Holmes Judge Won't Block Patient Complaint Evidence, BLOOMBERG (Aug. 4, 2021), https://www.bloomberg.com/news/articles/2021-08-04/holmes-judge-won-t-block-theranos-patient-complaint-evidence (covering the Court's ruling on Ms. Holmes' motion to suppress); Brittany De Lea, *Theranos CEO Holmes' Request to Suppress Trial Evidence Denied by Judge*, FOX BUSINESS (Aug. 4, 2021), https://www.foxbusiness.com/technology/holmes-request-denied-evidence-suppressed-trial, (same).

DEFENDANT BALWANI'S SEALED
RESPONSE TO DOW JONES' MOTION,
CASE NO. 18-CR-00258-EJD

1  █
2 █
3 █
4 █
5 █
6 █
7 █
8 █
9 █
10 █ [5]

### III.   ARGUMENT

The Court ruled over a year ago that disclosing this information publicly would impair the parties' trial rights. No party has identified any changed circumstance or new legal context. As detailed below, the legal standards that previously applied still apply and require the Court to continue its sealing order to protect Mr. Balwani's constitutional right to a fair trial. Public scrutiny of this case remains as intense as ever and is reaching a fevered pitch as Ms. Holmes begins her trial. █

█

█ [6]

Because the facts and law are the same now—and indeed provide even more support for

---

[5] As Mr. Balwani noted in prior correspondence with the Court, he lacks access to several pleadings identified by the Court █ █ . Mr. Balwani asks the Court for a chance to review these and any other documents currently under seal if the Court is inclined to make any portion of them public.

[6] The timing of Dow Jones' motion underscores this reality. No press outlet has sought access to the sealed pleadings since the Court publicly announced that the trials were severed. The public interest in open access and auditing the criminal justice system that the motion trumpets was the same then as it is now.

DEFENDANT BALWANI'S SEALED
RESPONSE TO DOW JONES' MOTION,
CASE NO. 18-CR-00258-EJD

1  sealing than before—the Court should stick to its ruling and shield Mr. Balwani from the

2  incalculable burden on his constitutional rights that disclosure would impose. ███████

3  ████████████████████████████████████████████████████████████████ Accordingly,

4  the Court should not revisit its prior decision at all. But if it chooses to grant some of Dow Jones'

5  motion, any documents released should at least include the redactions Mr. Balwani has proposed,

6  and additional redactions Mr. Balwani would have to propose to any other documents that Court

7  is considering for disclosure in whole or in part.

8  **A.    Legal Standards**

9        To start, Mr. Balwani does not dispute—nor has he ever disputed—that both the First

10 Amendment and the common law generally allow public access to court documents. *See* Dow

11 Jones Mot. at 11–12. He likewise does not contest that this general right applies here under the

12 "experience and logic" test that Dow Jones describes. *See id.* at 12–13. In applying these

13 standards, however, Mr. Balwani's own constitutional rights must take priority. The right of

14 access to judicial records is not absolute. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589,

15 597–98 (1978). And here it must give way to Mr. Balwani's Fifth and Sixth Amendment rights to

16 a fair trial before an unbiased jury. ████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████

18 █████████████████████████████████

19       To prevail, Mr. Balwani need only meet the "good cause" standard previously met and

20 adopted by the Court. *See, e.g.*, *United States v. Schipke*, 515 F. App'x 662, 665 n.1 (9th Cir.

21 2013); *United States v. Mahoney*, No. CR18-0090-JCC, 2019 WL 1040402, at *2 (W.D. Wash.

22 Mar. 5, 2019). But Mr. Balwani's position should carry the day even under the more stringent

23 "compelling reasons" test.

24       "[A] trial judge has an affirmative constitutional duty to minimize the effects of

25 prejudicial pretrial publicity." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). Fulfilling

26 that duty may involve sealing documents. *See, e.g.*, *United States v. Nacchio*, No. 05-cr-00545-

27 EWN, 2007 WL 9723305, at *2–3 (D. Colo. Jan. 25, 2007) (sealing jury questionnaire until first

28 day of jury selection because "significant publicity" may taint jury pool). Even courts that have

1  ruled in favor of public access have recognized that a defendant's right to a fair trial is "not
2  without a place" in deciding whether to close criminal proceedings, and both the First
3  Amendment right of access and the common law right of access "may give way in certain cases to
4  other rights or interests." *United States v. Carpenter*, 923 F.3d 1172, 1179 (9th Cir. 2019)
5  (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 326 (2019). "Unsurprisingly then, this
6  balance of the interests is a discretion to be exercised in light of the relevant facts and
7  circumstances of the particular case." *Id.* (internal quotation marks omitted).

8  Courts have reasoned that it "is better to err … on the side of generosity in the protection
9  of a defendant's right to a fair trial before an impartial jury" in making the sort of decision the
10 Court faces here. *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. 1981). In *Belo*, the Fifth
11 Circuit rejected arguments that tools less restrictive than denying media access to tapes—like
12 extensive voir dire or change of venue—were available. *Id.* at 432. Instead, the dangers of pretrial
13 publicity for an untried defendant, especially when those dangers would be amplified in an earlier
14 trial of another defendant, warranted sealing. *See id.* So too has the Ninth Circuit stated that there
15 will be cases when the harm from disclosing information is so great that "the balance may well tip
16 in favor of keeping records sealed." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095
17 (9th Cir. 2014). This is a paradigmatic example of such a case.

18 **B.     Compelling Reasons Justify Sealing the Documents**

19 Here, the consequences of unsealing the papers would be ▮▮▮▮▮ irreversible.
20 "Secrecy is a one-way street: Once information is published, it cannot be made secret again. An
21 order to unseal … is effectively unreviewable on appeal from a final judgment." *See In re Copley*
22 *Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) (internal quotation marks omitted). If the Court
23 errs in protecting Mr. Balwani's rights, it is easily corrected. First, the information may become
24 public ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮ Mr. Balwani recognizes that he cannot stop the press from reporting on ▮▮▮
26 ▮▮▮▮▮▮▮. He has never asked for a closed courtroom ▮▮▮▮▮
27 ▮▮▮▮▮▮▮. As the Court recognized in the August 10, 2021 status hearing,
28 "we haven't started evidence yet, and the pretrial discussions are discussions about the ability for

certain evidence to be introduced or not. … It doesn't become an issue at a trial level until a party actually introduces the evidence in." Tr. of Zoom Proceedings at 29:23–30:3, *United States v. Holmes and Balwani,* CR-18-00258-EJD (N.D. Cal. Aug. 10, 2021). ██████████

██████████████████████████████████████████████████████████████████████████████████

██████████████ Under the case law discussed above the burden on Mr. Balwani to maintain the sealing of the papers is less, while the strong Sixth Amendment reason for sealing remains. At the August 10, 2021 status hearing, Court again noted "the need to preserve and protect the right to a fair trial for parties and the need to seal in the Court's judgment items that are required to remain private, confidential, until otherwise introduced into evidence." *Id.* at 20:17–24. The Court should continue to avoid the risk of tainting Mr. Balwani's trial ██████████████ ██████████████████████████████████████████████████ Even Ms. Holmes has asked the Court to avoid disclosing anything until after jury selection. *See* Holmes August 13, 2021 Email to Courtroom Deputy Kratzmann.

██████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

██████████████ First, recent social science research suggests that negative pretrial publicity has a "cumulative effect … on jurors' attitudes and decisions." Christine L. Ruva, *From the Headlines to the Jury Room: An Examination of the Impact of Pretrial Publicity on Jurors and Juries*, *in* 3 ADVANCES IN PSYCHOLOGY & LAW 5 (M. Miller ed. 2018). "[F]or jurors exposed to anti-defendant articles, those receiving high amounts of [pretrial publicity] were more likely to vote guilty than those receiving low amounts." *Id.*

Studies also reveal that jurors cannot detect the bias that pretrial publicity causes in their own views. *Id.* And voir dire does little to help courts identify jurors tainted by pretrial publicity. *Id.* at 24 (summarizing findings that jurors exposed to pretrial publicity were more likely to vote "guilty" than jurors who were not, despite attesting that they could "judge the defendant in a fair and unbiased manner"). Potential jurors with an agenda trying to secure a place on a high-profile

1  jury are distressingly common.[7]

2  And the jury pool *will* be exposed to this information. ████████████
3  ████████████████████████████████████████████████████████

4  These factors—the intense negative pretrial publicity's national scope and its empirical
5  effect on prospective jurors—mean that no tools beyond sealing can protect Mr. Balwani's rights.
6  Changing venue or a voir dire questionnaire are unequal to the task. Sealing these papers or
7  releasing them only subject to Mr. Balwani's proposed redactions ████████████████
8  ██████████ or Mr. Balwani has been tried is vital if there is any hope of ensuring him a
9  fair proceeding.

### C. Even If the Court Revisits Its Decision and Releases Some Material, the Redactions Proposed by Mr. Balwani Are Necessary at a Minimum to Protect His Constitutional Rights

12  Given that the law and the facts remain static, the Court should deny Dow Jones' motion.
13  But if the Court is inclined to grant the motion in part, Mr. Balwani's proposed redactions reflect
14  the bare minimum necessary to protect his constitutional rights ████████████████
15  ████████████.
16  ████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████
22  ████████████████████████████████████████████████████████

---

[7] *See, e.g.*, Malia Wollan, *How to Be Selected for a Jury*, N.Y. TIMES (July 28, 2017), https://www.nytimes.com/2017/07/28/magazine/how-to-be-selected-for-ajury.html ("Philip Anthony, chief executive of DecisionQuest, a trial consulting firm whose work includes assisting in jury selection … [e]stimates that some 17 percent [of jurors] are 'stealth jurors,' people seeking seat to further a hidden personal agenda.").
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████
2 ████████████████████████████████████████████████
3 ██████████████████████████

4      Mr. Balwani proposes keeping sealed, for instance, portions of Dkt. 314—the Declaration
5 of Vanessa Baehr-Jones supporting the government's opposition to Mr. Balwani's severance
6 motion—as well as several exhibits to that opposition. ████████████████████████
7 ██████████████████████████████████████████████████████████
8 ██████████████████████████████████████████████████████████
9 ██████████████████████████████████████████████████████████
10 █████████████████████████████████████████████████████████
11 █████████████████████████████████████████████████████████
12 █████████████████████████████████████████████████████████
13 █████████████████████████████████████████████████████████
14 █████████████████████████████████████████████████████████
15 █████████████████████████████████████████████████████████
16 █████████████████████████████████████████████████████████
17 █████████████████████████████████████████████████████████
18 █████████████████████████████████████████████████████████
19 █████████████████████████████████████████████████████████
20 █████████████████████████████████████████████████████████
21 █████████████████████████████████████████████████████████
22 ███████████████████████████████████████████████ Once
23 ████████████████████████████████████████████████
24 articles are published, the prejudice to Mr. Balwani is the same ████████████
25 █████████████████████████████████████████████████████████
26 ██████████████████
27 █████████████████████████████████████████████████████████
28 ████████████████████████████

1
2
3
4
5
6
7
8
9
10

11   As the government itself has observed in its August 13, 2021 communication to the Court,
12   journalists are already speculating about
13
14
15   . Indeed, the government
16   routinely takes this position in other contexts in which its own interests are at stake. In litigation
17   under the Freedom of Information Act, for instance, courts have sided with the government in
18   ruling that "each individual piece of intelligence information, much like a piece of jigsaw puzzle,
19   may aid in piecing together other bits of information even when the individual piece is not of
20   obvious importance in itself." *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) (agreeing with
21   the government and affirming non-disclosure of legal fees); *see also Hamdan v. U.S. Dep't of*
22   *Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (observing that "disclosure of small pieces of a puzzle
23   may be aggregated and considered in context by an adversary" giving risk to even explaining the
24   basis for withholding documents under the Freedom of Information Act).
25
26
27
28   And here, the other side of the ledger is not a statutory right to information,

1   but Mr. Balwani's constitutional rights to a fair trial and an impartial jury.

2   While Mr. Balwani opposes unsealing or making public any of the documents at issue, if
3   the Court is inclined to grant some of the relief requested by Dow Jones, Mr. Balwani asks the
4   Court, at the very least, to include his proposed redactions in any document it chooses to partially
5   unseal in response to Dow Jones' motion and to give him the opportunity to review and propose
6   redactions to any other documents it may release, in whole or in part.

## IV.   CONCLUSION

For these reasons, Mr. Balwani requests that the Court deny Dow Jones' motion. If it grants any relief, it should unseal pleadings responsive to Dow Jones' motion only if redacted as Mr. Balwani has proposed. If there are other documents the Court intends to release for which it has not yet asked Mr. Balwani's counsel to propose redactions or to which Mr. Balwani lacks access—including orders, the parties' rejoinder briefing, hearing transcripts, or pleadings ███ ████████████—Mr. Balwani asks the Court for a chance to propose redactions to those documents before any are made public.

Dated:  August 20, 2021

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
JEFFREY B. COOPERSMITH

Attorney for Defendant
RAMESH "SUNNY" BALWANI

**CERTIFICATE OF SERVICE**

I, Jeffrey B. Coopersmith, hereby certify that copies of the redacted version of **Defendant Ramesh "Sunny" Balwani's Sealed Response to Motion of Dow Jones & Company Inc. to Intervene for Limited Purpose of Seeking to Unseal Judicial Records in the Court's File, including the Docket; Motion to Unseal Judicial Records** were served via ECF on the following attorneys on the same day it was filed with the Court to the following counsel of record in the above-referenced matter:

| | |
|---|---|
| Jeffrey Benjamin Schenk<br>John Curtis Bostic<br>Robert S. Leach<br>Kelly I. Volkar<br>UNITED STATES ATTORNEY'S OFFICE<br>NORTHERN DISTRICT OF CALIFORNIA<br>jeffrey.b.schenk@usdoj.gov<br>john.bostic@usdoj.gov<br>robert.leach@usdoj.gov<br>kelly.volkar@usdoj.gov<br><br>*Attorneys for United States* | Steven D. Zansberg<br>LAW OFFICE OF STEVEN D. ZANSBERG, LLC<br>steve@zansberglaw.com<br><br>*Attorneys for Dow Jones & Company, Inc.* |
| Kevin M. Downey<br>Amy Mason Saharia<br>Katherine A. Trefz<br>Lance A. Wade<br>Patrick J. Looby<br>Seema Mittal Roper<br>WILLIAMS AND CONNOLLY LLP<br>kdowney@wc.com<br>asaharia@wc.com<br>ktrefz@wc.com<br>lwade@wc.com<br>plooby@wc.com<br>SMRoper@wc.com<br><br>*Attorneys for Defendant Elizabeth Holmes* | John D. Cline<br>LAW OFFICE OF JOHN D. CLINE<br>cline@johndclinelaw.com<br><br>*Attorneys for Defendant Elizabeth Holmes* |

I certify under penalty of perjury that the foregoing is true and correct. Executed on 24th day of August, 2021, in Seattle, Washington.

                                                      */s/ Jeffrey B. Coopersmith*
                                                      JEFFREY B. COOPERSMITH