Pages 1 - 22

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward J. Davila, Judge

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,            )
                                 )
  VS.                            )   NO. CR 18-00258 EJD
                                 )
ELIZABETH A. HOLMES,             )
                                 )
            Defendant.           )
_____)

                              San Jose, California
                              Monday, June 28, 2021

       **TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
                    STEPHANIE M. HINDS
                    ACTING UNITED STATES ATTORNEY
                    450 Golden Gate Avenue, 11th Floor
                    San Francisco, California  94102
              **BY:  ROBERT S. LEACH**
                    **ASSISTANT UNITED STATES ATTORNEY**

                    STEPHANIE M. HINDS
                    ACTING UNITED STATES ATTORNEY
                    150 Almaden Boulevard, Suite 900
                    San Jose, California  95113
              **BY:  JOHN C. BOSTIC**
                    **JEFFREY B. SCHENK**
                    **ASSISTANT UNITED STATES ATTORNEYS**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
                       CSR No. 7445, Official U.S. Reporter

```
1    APPEARANCES VIA ZOOM:   (CONTINUED)

2    For Plaintiff:
                          STEPHANIE M. HINDS
3                         ACTING UNITED STATES ATTORNEY
                          450 Golden Gate Avenue, 11th Floor
4                         San Francisco, California  94102
                     BY:  KELLY I. VOLKAR
5                         ASSISTANT UNITED STATES ATTORNEY

6

7    For Defendant:
                          WILLIAMS & CONNOLLY LLP
8                         725 Twelfth Street, NW
                          Washington, D.C. 20005
9                    BY:  LANCE A. WADE, ATTORNEY AT LAW
                          AMY SAHARIA, ATTORNEY AT LAW
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **<u>Monday - June 28, 2021</u>**              **<u>3:12 p.m.</u>** |

1   <u>Monday - June 28, 2021</u>                              <u>3:12 p.m.</u>

2                           P R O C E E D I N G S

3                              ---o0o---

4          (Defendant present via Zoom, out of custody.)

5          **THE CLERK:**  Court is now in session.  The Honorable Edward

6   J. Davila presiding.

7          **THE COURT:**  All right.  Thank you.

8          Let's call 18-258, United States versus Elizabeth Holmes.

9          This is a remote status hearing that was set by the Court

10  for the parties.  This is a hearing where parties were asked to

11  phone in.

12         And let me first capture appearance of the parties,

13  starting with the Government.

14         Who appears for the Government?

15         **MR. LEACH:**  Good afternoon, Your Honor.  Robert Leach on

16  behalf of the United States, and I'm joined by John Bostic,

17  Jeff Schenk, and Kelly Volkar.

18         **THE COURT:**  Thank you.

19         Good afternoon, everyone.  Thank you for being available

20  for this.

21         And let me ask from the defense side, who appears?

22         **MR. WADE:**  Good morning.  I guess good afternoon,

23  Your Honor.  It's Lance Wade on behalf of Ms. Holmes.  With me

24  is Ms. Saharia.

25         Ms. Holmes is also present telephonically and is listening

1   in.  We have conferred with her, as we usually do, and are able

2   to reach her if we need to consult with her during the hearing.

3       **THE COURT:**  All right.  Thank you.

4       And she otherwise consents to participate in this remote

5   hearing for this status purpose?

6       **MR. WADE:**  She does consent to proceeding in this manner,

7   Your Honor.  Thank you.

8       **THE COURT:**  All right.  Thank you.

9       And I'm going to ask -- Ms. Holmes, I see that it appears

10  from my screen that you're muted.  If you could just unmute

11  yourself and just state your name.  I'm then going to ask your

12  lawyers whether or not they recognize that voice as being their

13  client.

14      So, Ms. Holmes, if you could unmute and just state your

15  name, please.

16      **THE DEFENDANT:**  Yes.  Good afternoon.  My name is

17  Elizabeth Holmes.

18      **THE COURT:**  Thank you very much.

19      And, Mr. Wade, that question is to you, sir, now.  Do you

20  recognize that voice as that of your client?

21      **MR. WADE:**  I do, Your Honor.

22      **THE COURT:**  All right.  Thank you very much.  We've got

23  that out of the way.  Ms. Holmes can mute herself again, if she

24  wishes, unless she's called upon to speak.

25      Well, thank you.  I set this today because, as everyone

knows, we had a *Daubert* hearing calendared for this Wednesday
in regards to some of the issues involving Dr. Masters.  And we
had scheduled that.  There was to be, I think, a trial run, a
dry run of the technology regarding that hearing and how it was
going to be conducted remotely from Philadelphia, San Jose.

I received an e-mail Friday -- I think it was Friday late
afternoon -- from Ms. Kratzmann indicating that there were some
issues regarding -- it sounded like there were some issues from
Mr. Wade about the Government's supplemental submissions and
the defense feeling that it was not possible to do the hearing
remotely as originally planned; therefore, that dry run would
not be necessary.

I received copies of your communications with
Ms. Kratzmann, both Mr. Wade's as well as the Government's
response from Mr. Leach suggesting that the hearing could go
forward, in the Government's view, and that if it could not for
whatever reason, that they suggested a date perhaps closer in
time to the trial date, which would allow for convenience of
witnesses and parties.

So I wanted to just touch base now.  I have not vacated
the date yet, the Wednesday date, although I do think it's
doubtful that that will occur, just to let you know.

But what I do want to know is what -- I suppose, Mr. Wade,
you can inform the Court about the issues that you think might
present problems with the original plan, how we can repair

1    those issues, solve the issues such that we could go forward,

2    and also, to gain your insight, both sides, as to a new date

3    that we can -- an appropriate date that we can schedule this

4    *Daubert* hearing.

5            So let's start with you, Mr. Wade, please.

6            **MR. WADE:**  Thank you, Your Honor.

7            And I think as the Court knows, there was an issue with

8    respect to the witness, really, in the *Daubert* hearing that the

9    parties have been meeting and conferring on to try to reach an

10   accommodation to see if there was a way in which we could

11   squeeze this *Daubert* hearing in before our client became

12   unavailable.  It was obviously our preference to try to do

13   that, but there were some travel restrictions, I think, as

14   the Court knows.

15           We believed that we might be able to accomplish that via

16   remote proceeding, technologically, based on the information

17   that we had available to us at the time and what we thought

18   would be the subject of the hearing.

19           As the Court knows, the Government last week provided a

20   new report that provides substantial new -- points to

21   substantial new evidence upon which Dr. Master relies, provides

22   new opinions upon which Dr. Master relies.  We obviously have

23   concerns about the timeliness of that, which are addressed in

24   the papers.

25           The issues with respect to the practical matter before

1    the Court and whether the hearing can proceed in a virtual

2    manner is really a logistical one or a practical one, which is,

3    many of the documents that are at issue are very small, have

4    very small font; they have a lot of data; they have very narrow

5    lines of data.  And going through them and going through what

6    was technologically possible with the court in Philadelphia, we

7    just didn't think it would be possible to have a hearing that

8    would be effective to convey that information through to the

9    courtroom remotely.

10        I say that notwithstanding the great efforts that

11   the Court and its staff went to to try to accommodate that and

12   to try to make this work, and we're obviously very appreciative

13   of those efforts by the Court.  And one of the reasons we

14   raised it so quickly, frankly, is everyone had gone to so much

15   effort to try to facilitate that, we didn't want to burden them

16   further, given all the effort and our belief that it wouldn't

17   technologically be possible with the type of exhibits that we

18   would have to use in the hearing.

19        We did meet and confer with the Government.  Our solution

20   to going forward in a remote setting is not one I think would

21   necessarily -- is, we think, the appropriate solution, but not

22   necessarily one we think the Government would accept, which is,

23   they could -- the Court could strike the supplemental report

24   and the materials in it, and we'd be prepared to go forward on

25   the prior report that was filed with respect to Dr. Master.

1    And if the Court were to do that, we would be prepared to go

2    forward on Thursday and comfortable using the evidence that we

3    were aware of prior to the supplemental report.

4          In the event that that is not possible and although it's

5    not our preference, given unavailability issues that I know

6    the Court is aware of, I think we would probably have no choice

7    but to wait until closer to the hearing and to have the *Daubert*

8    hearing, you know, at a time closer to the hearing, when the

9    witness would be available.  And we've conveyed that to

10   the Government as well.

11         It wouldn't be our preference.  Our preference would be to

12   go sooner.  But obviously, we're not going to require anyone to

13   drive across the country or do anything extraordinary for this.

14   We think we can wait if that's what's required.

15         **THE COURT:**  All right.  Thank you.

16         And when you say "the hearing," are you referencing the

17   start of trial sometime in August?

18         **MR. WADE:**  Yes.  I think the Government had suggested that

19   in some communications with the Court.  I think we had raised

20   with the Court previously our preference to go -- to go sooner.

21   Obviously, there are some practical limitations that stand

22   between our ability to move forward.  And we recognize reality,

23   and we're not going to impose on the witness some unreasonable

24   burden.  We don't think that's reasonable, and we'll wait.

25         **THE COURT:**  Okay.  Thank you.

1          And the reality is, we're a little compressed for time

2     because of your client's situation, of course, and we all want

3     to respect that and the Court does respect that.  And I'm not

4     going to -- and neither is the Government, as they've said

5     before.  They're not wishing to impose any type of difficulties

6     on your client.  I appreciate the reciprocity as to any witness

7     issue from the Government.

8          Mr. Leach, do you want to be heard?

9          **MR. LEACH:**  I do, Your Honor.  Thank you very much, and

10    thank you for taking the time.

11         Since the Court's order on the motion in limine respecting

12    Dr. Master, we've been coordinating and communicating with the

13    defense to try to accommodate two issues:  one, a health

14    condition relating to the Government's witness; and, two, the

15    defense's stated need to have any *Daubert* hearing completed by

16    July 1st.  And it was in that spirit with which we agreed to

17    the 30th and proposed the remote hearing.

18         I don't think there's anything in the supplemental report

19    from a substantive or a technological reason that really

20    changes the playing field.  But I take counsel at their word

21    that they feel constrained by the format the Government was

22    prepared to show exhibits.

23         I mean, we were prepared to have the technology

24    demonstration today to see exactly how we would be doing it;

25    and in the event we weren't able to show them on the screen, we

1    were prepared to go forward with hard-copy exhibits, as we did

2    before the technological revolution.  And we think that's a

3    perfectly fine way to go about it, particularly given our view

4    of what the scope of the hearing should be.

5          But I take the defense at their word that they feel

6    constrained by that, and want to make sure all sides are able

7    to present their arguments and information in an effective way.

8          We -- the Government sees -- will make itself available at

9    any time convenient to the Court and the parties.

10          We obviously object to striking the supplemental report.

11    We think it's perfectly appropriate.  The defense challenged

12    the bases and the quantum of information that Dr. Master

13    considered.  He now has considered some additional information

14    which was produced in discovery a long time ago.  We don't see

15    any basis to strike the report.  We'd want to be heard on that

16    substantive point.

17          But from a technological standpoint, we hear what the

18    defense is saying and will be available whenever the Court and

19    the defense are prepared to proceed.

20          We've raised some issues with -- about our ability to have

21    a live hearing because of some medical issues and want to be as

22    respectful as we can of those.  I do think the closer we get to

23    trial, the more those will be resolved or we'll have clarity on

24    how to navigate those.

25          And so the Government would be fine scheduling a hearing

1  closer to trial, or even during trial, for that matter.  But we

2  don't see that technology is an impediment.  And we'll be

3  available whenever the Court and counsel are ready.

4      **THE COURT:**  Thank you, Mr. Leach.  Thank you.  I

5  appreciate the parties looking at this.

6      It sounds like, Mr. Wade, your concern was, during the

7  *Daubert* hearing, your ability to effectively communicate

8  regarding some of the information you've received.  It sounds

9  like a formatting-type issue with some of these graphs.  I've

10  not seen them.  I'm not sure what it is exactly you're talking

11  about.  But it sounds like your e-mail suggested some of these

12  things are difficult to read and comprehend.

13      And I saw that and I was curious whether or not, if all

14  parties had, as Mr. Leach said, hard copies, whether or not

15  that would facilitate a better, more facile operation, where we

16  could all look at it and hold hard copy and, nonetheless,

17  reference it remotely.  That was the first thing that came to

18  my mind.  Mr. Leach said "old school."  You're too young to be

19  old school, Mr. Wade.  But that's something that perhaps we

20  could do.

21      But, again, I don't want to -- I want to respect

22  everybody's, both sides, any time constraints that you have

23  regarding compressing a hearing.  If we need to go closer to

24  the trial date to accommodate, that would give the parties more

25  time to perhaps create larger slides, whatever it is you need

1    to do, that's fine as well.

2        I believe when the Court set this hearing, I think I

3    allowed a supplemental report to be filed.  I think I did that

4    as long as supplemental reports were filed -- wasn't it

5    ten days before the hearing?  I think that's what I said.

6        **MR. LEACH:**  Yes, Your Honor.

7        **THE COURT:**  So the filing on -- what was it? -- the 18th,

8    I think, I think that falls 12 days before the hearing date

9    perhaps.  So I don't think there's a timeliness issue,

10   Mr. Wade, respectively, about that.

11       But I'm happy to do -- we were looking at our calendar

12   because, of course, my calendar has to be adjusted for what's

13   available for us.  And I'll tell you, we're having some

14   staffing issues as we start to reopen, my colleagues.  And so

15   we do have some staffing issues that present challenges for us.

16   They can be overcome.  They're challenges, but they can,

17   nonetheless, be overcome.

18       We were looking at perhaps having a hearing on the 9th as

19   probably the last possible day we could have a hearing prior

20   to -- at least that's probably the last day I would like to do

21   something, given Ms. Holmes' situation.  I don't think going

22   any closer or any deeper into July would be appropriate.

23       And thank you both for meeting and conferring.

24       I'm also happy to allow the *Daubert* hearing to occur

25   sometime in August as well, if the parties want to look to an

1    August date that might look convenient that is before the trial

2    starts, recognizing we have some other work to do, of course,

3    before that trial date.

4        We're going to be looking through -- and I just received

5    some responses regarding questionnaires.  And, of course, that

6    questionnaire is still a work in progress, isn't it?  It's not

7    in the record.  It's still being worked on by the parties and

8    by the Court, and we still have some work to do before that

9    questionnaire actually goes out to the public; that is, the

10   public jurors who are going to receive that and fill it out.

11       So we still have that to do sometime in perhaps August,

12   late July, I just want to remind you.  And I don't think I have

13   to remind you of all the work that's necessary in the case.

14       But we can certainly do something in August.  I know we

15   can find a date to have this hearing in August.

16       I think Mr. Leach suggested -- I think you said even

17   during the trial.  And it's not unusual to have *Daubert*

18   hearings during the trial as well.  I know that's not counsel's

19   preference.  Counsel prefers to have all issues resolved -- as

20   many issues resolved as possible prior to the beginning of

21   evidence.  I recognize that.  But we all know that that

22   sometimes happens, and we'll deal with it as needed.

23       Should I -- well, let me ask you.  Should we have this

24   hearing in August sometime and allow you to meet and confer and

25   pick a date in August that sounds reasonable for both of your

1    concerns, availability of parties?

2        **MR. WADE:**   Your Honor, I do think that's probably most

3    sensible, and we certainly -- I would like to do that.

4        I appreciate that the Court is, in part, accommodating our

5    client and her unavailability, as the Government has been

6    during our dialogue.  So I do want to state for the record my

7    appreciation of that.

8        I do think -- I feel constrained about talking about

9    technology via this technology.  But if this gives the Court

10   any sense for some of the difficulties, some of the -- drawing

11   differences between some of these lines and doing it with a

12   witness while the Court follows along and there are multiple

13   parties within a Zoom call, I hope the Court understands

14   that -- maybe it's the fact that I am old school that makes me

15   slightly afraid to be able to do that effectively via this

16   manner.

17       So I think proceeding in August is sensible.  I think we

18   could meet and confer with the Government and find -- find a

19   time that works with the witness and to accommodate the

20   witness's concerns.

21       I would like to note, Your Honor, just to make sure that

22   our position on this is not lost amidst our accommodating each

23   other here, Your Honor did permit a supplemental report,

24   supplemental materials in support of Dr. Master's exhibit to

25   explain the methodology that he used in his prior report.

1          That's not what we got on the docket a little over a week

2     ago.  We got a completely different methodology that supported

3     many of the tests, and we -- and they doubled the tests.  So

4     they went from nine tests that were supposed to be at issue in

5     the *Daubert* hearing, and instead, now Dr. Master has provided

6     an opinion with respect to ten additional tests that were not a

7     part of his prior report and were never previously disclosed.

8     They did that based upon information that's been available to

9     the Government for years, and they did it just a short time

10    before trial.

11         So this is -- in our view, this is not contemplated by

12    the Court.  This is well beyond the *Daubert* order.  This is

13    just a completely new opinion with respect -- that doubles the

14    number of tests that are at issue in the case.  And so we do

15    think that report should be stricken.

16         I think the Court may know -- I know you mentioned before,

17    Your Honor, you've been on a well-earned vacation, and so it's

18    possible you haven't gotten through some of the papers yet.

19    But we did note in our papers that if this is to be permitted,

20    we would be forced to seek a continuance on this issue because

21    they've substantially, and at a late date, doubled the tests

22    that their expert's going to opine on.

23         And so I don't want that to get lost amidst the issue of

24    the *Daubert* hearing with respect to the nine tests that were

25    the subject of the Court's order.  That's -- there's more than

1  that that's really at issue with respect to Dr. Master.

2      **THE COURT:**  Well, thank you.  I'll ask Mr. Leach to

3  comment.

4      But I want to draw everyone's attention to Document 797,

5  page 11 of 12, ECF page 11 and 12, and lines 16 through 18.

6  I think that speaks to the -- if you look at that order -- and

7  I know you all have -- that's what the *Daubert* hearing is

8  about, and I think we're all aware of that.

9      (Reading):

10      "The Court concludes that a *Daubert* hearing is

11      appropriate to assess the reliability of Dr. Master's

12      methodology, which he employed to provide testimony

13      and opinions about chloride, potassium, bicarbonate,

14      HIV, HbA1c, hCG, cholesterol, calcium, and sodium."

15      So I don't think it's in dispute that that's what

16  the Court's interested in, and anything else beyond what

17  the Court order said would be not relevant to the Court's

18  order.

19      Mr. Leach, I think you understand that.

20      **MR. LEACH:**  I do, Your Honor.  And I don't agree with the

21  characterization that defense counsel is attributing to the

22  supplemental report or to Dr. Master.

23      What Dr. Master has done is he's described in more fulsome

24  detail his methodology.  He also notes that he's reviewed

25  additional documents with respect to the assays listed in the

report and come to the conclusion that those additional

documents further support what he opined in the initial report.

    In addition, he's looked at -- and I think the Court will

see this on page 6 and 7 of his supplemental report, that the

new documents that he's reviewed are directly relevant to his

conclusion in the initial report that there's systemic problems

with Edison 3.5 testing.  And based on what he'll explain are

signal values for the tests that he's looked at, as well as

other tests, those additional assays reinforce his opinions on

the ones listed in the Court order.

    And so I don't think we've gone beyond what the Court has

ordered for the hearing.

    Even if we were and these were new assays and new

opinions, I think it's perfectly appropriate for an expert to

supplement his opinion as new information comes along.  There

are often times when an expert learns of information in the

trial and wants to incorporate that into his opinion.

    So I don't share the view that this dramatically expands

what he's saying.  It's perfectly appropriate, when a defendant

or any party brings a motion challenging the bases for an

expert for that expert to look to see if there are additional

facts supporting his bases and methodologies.

    So I don't think we've gone beyond what the Court has

ordered, and certainly, it's perfectly appropriate for an

expert to supplement his opinion.

1          **THE COURT:**  All right.   Thank you.

2          Well, the Court indicated in its order, as I read it to

3   you -- and you all have it in that filing -- I said that there

4   should be a *Daubert* hearing.   It would be appropriate to have a

5   *Daubert* hearing in regards to the doctor's opinions of those

6   assays that I mentioned.   And I think Mr. Wade's accurate;

7   there's nine of them.

8          If he's going to talk about assays that the Court's not

9   interested in, then the Court won't consider those.

10          What I think I hear you saying, Mr. Leach, is that in

11   regards to -- and I'm not trying to put words in your mouth.

12   I'm telling you what I think I heard you say -- that in regards

13   to the Court's inquiry about and curiosity about methodology,

14   this expert will -- and I think I saw that in Document 842 and

15   various pages; that's your supplemental -- this doctor will

16   talk about his methodology in regards to his findings on those

17   nine categories, but he will explain that that methodology can

18   also be used and was used in examining other types of assays.

19          And he'll talk about why that -- for example, the TEA,

20   I think -- is that trial and error? -- those types of things

21   and why that is permitted in the science.   He talks about two

22   ways:   total allowable errors and some other ratios.   So I

23   expect there might be some explanation about that from the

24   doctor.

25          Mr. Leach?

1          **MR. LEACH:**  That's very fair, Your Honor.

2          And I anticipate Dr. Master will say:  My calculation --

3   or my -- the information about total allowable error, as it

4   applies to these particular assays, one of the reasons why I'm

5   confident that these assays were not accurate and reliable

6   based on the Cigna metrics calculated using that total

7   allowable error hold true for these assays is it also holds

8   true for other assays.  So these are not outliers.  These are

9   not, you know, simply cherrypicked assays.  But it's a metric

10  that applies equally to other Edison tests.

11         And so I -- those, at a high level, are the concepts laid

12  out in the supplemental report.

13         **THE COURT:**  Okay.  Thank you for that.  And of course --

14         **MR. LEACH:**  I'm sorry, Your Honor.

15         Also, I wanted to respond to the Court's initial question,

16  which is, a date in August would be fine and we're happy to

17  confer with the defense about that.

18         **THE COURT:**  All right.  Thank you.

19         So, Mr. Wade, the *Daubert* hearing is an opportunity for

20  whoever the proffering party is to answer the Court's

21  questions, the Court's curiosity, the Court's doubts as

22  expressed in this Court's order.  And I think the supplemental

23  report suggests that.

24         I don't look at it this way, Mr. Wade, as an entirely new

25  report that requires a continuance so you can retain yet

1   another expert to come in and do various things.  I don't see

2   it quite that way.

3        I see it as Dr. Master rising to the Court's challenge and

4   offering his additional information on methodology and how he

5   came to his opinions, and that's appropriate.

6        And certainly, you and your team, I expect, will continue

7   to test his theories and his bases.

8        And I appreciate your consideration of the Court.  You

9   held up a paper that had some drawings on it.  I couldn't tell

10  if it was a batting order, a recipe for lasagna, or what it

11  was.  But I understand -- thank you.  I understand why now you

12  think it would be best for us to have an in-person hearing or

13  at least that the remote would not work and it would be a

14  challenge when we look at different grids that have notations,

15  certainly with scientific notations on them.  And I appreciate

16  that.  We want to have as clear a record as we can for the

17  parties.

18       So those are my observations, Mr. Wade, in response to

19  yours about a new report, entirely new report.  It's a

20  different report.  It's additional information.  I expect that

21  you will vigorously challenge it when the time comes for the

22  hearing.

23       Let's do this.  Let's then vacate the hearing that's set,

24  Ms. Kratzmann, for this Thursday, the 30th.  We'll vacate that.

25       And thank you very much, Counsel.  Rather than have you

1    sit and discuss that here on the Zoom hearing, I think it would

2    probably be more efficient and effective for us to end our

3    hearing now, with the understanding that the parties will

4    continue to meet and confer and will consult Ms. Kratzmann

5    regarding a date, an appropriate date for the *Daubert* hearing

6    that was ordered pursuant to the Court's order in Docket 797,

7    7-9-7.  And you can select a date that is convenient for all

8    parties.

9         I'm not going to disturb -- I believe we'll see each other

10   next week sometime.  I think it's July 7.  Don't we have a

11   hearing regarding a motion to dismiss?

12        **MR. WADE:**  That's correct, Your Honor.

13        **THE COURT:**  Right.

14        **MR. WADE:**  A suppression motion.  Suppression motion.

15        **THE COURT:**  Yes, a suppression motion.  Thank you.

16        I'm not going to disturb that date.  That will remain in

17   place.  As I understand, the parties wish to proceed on that;

18   so we'll do that.

19        All right.  Any questions about today or anything we're

20   going to do regarding the *Daubert* or Dr. Master?

21        **MR. LEACH:**  Not from the Government, Your Honor, no.

22        **THE CLERK:**  Your Honor, just to confirm that date, it

23   would be scheduled for a half-day session; correct?

24        **THE COURT:**  Well, that's what I have indicated.  I think

25   we can get this done in a half a day, owing to I know how

1  efficient counsel are and the issues that they'd like to take

2  care of.  So that's what we'll schedule it for.  And hope

3  springs eternal, Ms. Kratzmann.  So we'll schedule it for half

4  a day.

5       And then you can meet and confer, Counsel, and get back to

6  Ms. Kratzmann with a date.

7       We'll check our calendars and move forward.  Okay?

8       **MR. WADE:**  Thank you, Your Honor.

9       **MR. LEACH:**  Thank you, Your Honor.

10      **THE COURT:**  Anything further?  If not, we'll conclude this

11  hearing.  And I look forward to seeing everyone on the 7th.

12      Thank you very much.  Thanks for accommodating this.

13  Thank you.  I appreciate it.

14      **MR. LEACH:**  Thank you, Your Honor.

15      **MR. WADE:**  Thank you, Your Honor.

16      **THE CLERK:**  Court is adjourned.  This webinar shall

17  terminate.

18              (Proceedings adjourned at 3:42 p.m.)

19                      ---o0o---

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Tuesday, August 24, 2021

_Ana Dub_
_____

    Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
           Official United States Reporter