1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 | Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14
   UNITED STATES OF AMERICA,              )  Case No. CR-18-00258-EJD-SVK
15                                        )
           Plaintiff,                     )  **ELIZABETH HOLMES' REPLY TO**
16                                        )  **GOVERNMENT'S OPPOSITION TO MR.**
        v.                                )  **BALWANI'S MOTION TO SEVER**
17                                        )
   ELIZABETH HOLMES and                   )
18 RAMESH "SUNNY" BALWANI,                )  **FILED UNDER SEAL**
                                          )
19         Defendants.                    )
                                          )  Hon. Edward J. Davila
20 _____)

21

22

23

24

25

HOLMES' REPLY TO GOVERNMENT'S OPPOSITION TO BALWANI'S MOTION TO SEVER
CR-18-00258 EJD SKV

FILED

FEB 06 2020

Susan Y. Soong
Clerk, U.S. District Court
Northern District of California
San Jose

ECF Dkt. No. 324

1    The government's Opposition to Mr. Balwani's Motion to Sever erroneously argues that
2  evidence of Mr. Balwani's intimate partner abuse will be excluded at trial. Alternatively, it contends
3  that such evidence can be limited in meaningful ways. Either result would preclude a significant portion
4  of Ms. Holmes' likely defense, including important aspects of her own likely testimony, in clear
5  violation of her Fifth and Sixth Amendment rights. Ms. Holmes therefore submits this brief in response
6  to address a handful of issues.
7    First, evidence about intimate partner abuse is highly likely to be introduced into evidence in a
8  trial involving Ms. Holmes, in the form of both fact and expert testimony. The government has alleged
9  in the Superseding Indictment that Ms. Holmes acted with *mens rea* in making certain representations,
10  but it has not identified the specific evidence upon which it will rely to prove this element. Based on
11  Ms. Holmes' current (but limited) understanding of the government's case—as informed by the
12  government's broad (yet vague) Indictment—there is a high likelihood that evidence regarding the
13  *nature* of Ms. Holmes' and Mr. Balwani's relationship will be relevant at trial. The Indictment charges
14  both defendants with the same conspiracies and acts. Ms. Holmes was the company's CEO and Chair
15  and Mr. Balwani its Vice Chair, COO, and President during the period covered by the alleged
16  conspiracies. The government presumably will argue that Ms. Holmes was aware of, approved of,
17  turned a blind eye to, and/or directed alleged wrongdoing related to aspects of the company's operations
18  over which Mr. Balwani exercised control. The Indictment alleges that Ms. Holmes made categories of
19  misstatements related to company operations for which Mr. Balwani had primary responsibility. For
20  example, the government presumably will argue that Ms. Holmes was aware of alleged falsity of
21  statements related to Theranos' financial models, *see* Indictment ¶ 12(3), even if Mr. Balwani created
22  and presented those models to investors. Ms. Holmes' relationship with Mr. Balwani at a time when she
23  was suffering intimate partner abuse, and the reasons why she believed representations about those
24  financial models, are relevant to the question whether she knew that such models were false or
25  misleading. The government presumably will also argue that Ms. Holmes was aware of the alleged
26  falsity of statements related to the state of the Walgreens partnership. *See* Indictment ¶ 12(D). Mr.
27  Balwani was primarily leading that partnership. Ms. Holmes' relationship with Mr. Balwani, and the
28  reasons why she believed representations that she transmitted about that partnership, are relevant to the

1  question whether she believed that any statements about the Walgreens relationship were false or

2  misleading, including to rebut any claim that she was "deliberately ignorant" of certain alleged facts.

3  *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015). Discovery suggests that the government

4  has asked witnesses in its investigation about Ms. Holmes and Mr. Balwani's relationship, showing that

5  the government understands the relevance of the relationship to the Superseding Indictment's

6  allegations.

7         Second, the government ignores the profound constitutional implications of the restrictions it

8  proposes to place on Ms. Holmes' defense by either excluding or limiting such evidence. The

9  Constitution guarantees Ms. Holmes a "meaningful opportunity to present a complete defense," *Holmes*

10  *v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks omitted), including the

11  "fundamental" right to present witnesses, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), and the

12  "right to take the witness stand and to testify in [her] own defense," *Rock v. Arkansas*, 483 U.S. 44, 49

13  (1987). As the Ninth Circuit has observed, "[t]hese rules reflect the fact that individuals accused of

14  criminal behavior should be permitted to present, within reason, the strongest case they are able to

15  marshal in their defense." *United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994).

16         The Court would err if it precluded Ms. Holmes from presenting evidence in her defense—

17  including her own likely testimony—regarding what she knew and believed and why. *See Haischer*,

18  780 F.3d at 1284 (reversing conviction where court excluded evidence of intimate partner abuse that was

19  relevant to the defendant's *mens rea* to commit wire fraud). As noted, that evidence is highly likely to

20  include a description of her relationship with Mr. Balwani, which will require a detailed understanding

21  of the nature of the relationship both in and out of the workplace. Witnesses interviewed by the

22  government have indicated that Mr. Balwani was controlling with Ms. Holmes, that Ms. Holmes was

23  isolated by Mr. Balwani, that Mr. Balwani was combative with Ms. Holmes, and that Mr. Balwani was

24  often physically present in Ms. Holmes' office, all factors that Dr. Mechanic has indicated are abuse

25  tactics used by abusers. *See* Mechanic Decl. 5.

26         Third, expert testimony likely will play an important role in Ms. Holmes' defense. Expert

27  testimony will be helpful and appropriate in educating the jury as to the reasons for Ms. Holmes' belief

28  in, deference to, and reliance on Mr. Balwani. The government continues to misunderstand the nature of

1  the potential expert opinions that Ms. Holmes noticed pursuant to Rule 12.2(b). ███████

2

3  ████████████████████████████████████████ With respect to the substantive case, the

4  potential expert testimony for which notice was given pursuant to Rule 12.2(b) relates to whether and

5  how Ms. Holmes' psychological responses during and after the relationship were and are consistent with

6  typical reactions of victims of an abusive relationship, as well as additional context to help the jury

7  understand the nature and features of abusive relationships, including dispelling common

8  misconceptions about them. *See* Notice of Submission in Response to Jan. 13, 2020 Sealed Hr'g 1-2

9  (Jan. 17, 2020); Ltr. from Trefz to Baehr-Jones (Jan. 17, 2020) (attached as Ex. 2 to Baehr-Jones Decl.

10  in support of Government's Opp'n); Def. Elizabeth A. Holmes' Notice Pursuant to Fed. R. Crim. P.

11  12.2(b).[1]

12       Ms. Holmes is likely to testify herself to the reasons why she believed, relied on, and deferred to

13  Mr. Balwani. But expert evidence on intimate partner abuse is important to contextualize and address

14  common misconceptions about abusive relationships, including addressing stereotypes about the types

15  of individuals who are victims of abuse (such as the suggestion implicit in the government's Opposition

16  that Ms. Holmes could not be an abuse victim because she presented in public as a successful

17  businesswoman), and is regularly introduced for that purpose. *See United States v. Lopez*, 913 F.3d 807,

18  820-23 (9th Cir. 2019) (cataloging the ways in which expert testimony on intimate partner abuse may be

19  helpful to a jury's evaluation of the facts and a defendant's credibility); *United States v. Nwoye*, 824

20  F.3d 1129, 1140 (D.C. Cir. 2016) (Kavanaugh, J.) ("Expert testimony on battered woman syndrome

21  could have helped [the defendant] dispel the ordinary lay person's perception that a woman in a

22  battering relationship is free to leave at any time." (internal quotation marks omitted)); M.A. Dutton,

23  *Validity of "Battered Woman Syndrome" in Criminal Cases Involving Battered Women, in* Dep't of

24

25

26      [1] The Court was careful not to order the premature disclosure of Ms. Holmes' defense. While Ms. Holmes sought to provide some information that may be helpful to the Court in addressing Mr.

27  Balwani's motion in light of the Court's comments at the January 13, 2020 hearing, Dr. Mechanic's Declaration is not intended to contain all of her opinions with respect to the substantive issues in the case, nor was it intended to be an expert disclosure pursuant to Rule 16(b)(1)(C) or a report of

28  examination pursuant to Rule 16(b)(1)(B).

1  Justice et al., The Validity and Use of Evidence Concerning Battering and Its Effects in Criminal Trials
2  pt. I, at 3-4 (1996).

3         Fourth, the government's lengthy discussion of the Insanity Defense and Reform Act (IDRA)
4  and the cases applying that Act is irrelevant. The IDRA addresses a defendant's use of a "severe mental
5  disease or defect" to establish, as an affirmative defense, that the defendant "was unable to appreciate
6  the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). Ms. Holmes does not intend
7  to present an affirmative defense such as insanity under the IDRA. The Act is therefore inapposite. For
8  decades, courts have distinguished between an affirmative defense under the IDRA and evidence
9  negating the element of specific intent, and have held that the IDRA does not prohibit the latter.[2] The
10  government's suggestion that a defendant's ability to introduce psychological evidence in her defense
11  flows from the IDRA is simply incorrect.

12         The Act operates only to limit the circumstances in which a defendant may "excuse guilt with
13  mental defect evidence." *United States v. Brown*, 880 F.2d 1012, 1017 (9th Cir. 1989) (internal
14  quotation marks omitted). It does not exclude evidence of mental condition where, as here, such
15  evidence is offered to "negat[e] an element of the offense" such as *mens rea*. *Id.*; *see also, e.g., United*
16  *States v. Childress*, 58 F.3d 693, 726-30 (D.C. Cir. 1995). Ms. Holmes' anticipated use of expert
17  evidence does not run afoul of the rules. Ms. Holmes is not seeking to excuse alleged guilt through an
18  affirmative defense; she seeks to introduce, for example, evidence tending to prove that she lacked the
19  intent to deceive because, as a result of her deference to Mr. Balwani, she believed that various
20  representations were true.

21         Finally, at trial the government may seek to rebut Ms. Holmes' evidence related to intimate
22  partner abuse. The government might attempt to introduce evidence questioning whether the
23  relationship was abusive and whether, even if it was abusive, it affected Ms. Holmes' state of mind.
24  This kind of rebuttal appears to be what the government's new expert, Dr. Binder, has previewed ▮▮▮
25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But the fact that the government
26

27         [2] *See United States v. Brown*, 880 F.2d 1012, 1017 (9th Cir. 1989); *see also, e.g., United States v.*
   *Childress*, 58 F.3d 693, 729-31 (D.C. Cir. 1995); *United States v. Cameron*, 907 F.2d 1051, 1063-66
28  (11th Cir. 1990); *United States v. Newman*, 889 F.2d 88, 91-92 & n.1 (6th Cir. 1989); *United States v.*
   *Newman*, 849 F.2d 156, 165 (5th Cir. 1988).

HOLMES' REPLY TO GOVERNMENT'S OPPOSITION TO BALWANI'S MOTION TO SEVER
CR-18-00258 EJD SKV                        4

1  may present rebuttal evidence at trial does not make Ms. Holmes' potential evidence irrelevant or

2  inadmissible.  Under the Sixth Amendment jury trial guarantee, it is for the jury, not the court, to make

3  credibility determinations.

4  **CONCLUSION**

5      For these reasons, the Court should decline the government's invitation to preclude significant

6  aspects of Ms. Holmes' defense.

7

8  DATED: February 6, 2020

9

10

11  KEVIN DOWNEY
    LANCE WADE
    AMY MASON SAHARIA
12  KATHERINE TREFZ
    JOHN D. CLINE
13  Attorneys for Elizabeth Holmes

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to 18 U.S.C. § 1746, I hereby certify that copies of this Reply were served via email to the attorneys at the following addresses on the same day it was filed with the Court under Local Civil Rule 7-11.

Jeffrey B. Coopersmith
Walter F. Brown
Melina Haag
Randall S. Luskey
Stephen A. Cazares
ORRICK, HERRINGTON & SUTCLIFFE LLP
jcoopersmith@orrick.com
wbrown@orrick.com
mhaag@orrick.com
rluskey@orrick.com
scazares@orrick.com

*Attorneys for Ramesh "Sunny" Balwani*

Jeffrey Benjamin Schenk
John Curtis Bostic
Robert S. Leach
Vanessa Ann Baehr-Jones
UNITED STATES ATTORNEY'S OFFICE
NORTHERN DISTRICT OF CALIFORNIA
jeffrey.b.schenk@usdoj.gov
john.bostic@usdoj.gov
robert.leach@usdoj.gov
vanessa.baehr-jones@usdoj.gov

*Attorneys for United States*

KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
JOHN D. CLINE
Attorneys for Elizabeth Holmes