1   JEFFREY B. COOPERSMITH (SBN 252819)
    WALTER F. BROWN (SBN 130248)
2   MELINDA HAAG (SBN 132612)
    RANDALL S. LUSKEY (SBN 240915)
3   STEPHEN A. CAZARES (SBN 201864)

4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105-2669
6   Telephone:    +1-415-773-5700
    Facsimile:    +1-415-773-5759
7
    Email: jcoopersmith@orrick.com; wbrown@orrick.com;
8          mhaag@orrick.com; rluskey@orrick.com;
           scazares@orrick.com
9

10  Attorneys for Defendant
    RAMESH "SUNNY" BALWANI
11

**FILED**

FEB 2 4 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

351

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                         SAN JOSE DIVISION

16

17  UNITED STATES OF AMERICA,            Case No. 18-CR-00258-EJD

18              Plaintiff,               **DEFENDANT RAMESH "SUNNY"**
                                         **BALWANI'S [~~PROPOSED~~] SURREPLY**
19      v.                               **IN SUPPORT OF MOTION TO SEVER**

20  HOLMES, et al.,
                                         Judge:   Honorable Edward J. Davila
21              Defendants.

22

23          **PROVISIONALLY FILED UNDER SEAL**
24  **PURSUANT TO COURT ORDER OF JANUARY 13,**
25                         **2020**

26

27

28

## I.   INTRODUCTION

Defendant Ramesh "Sunny" Balwani files this surreply in support of his motion for severance to address additional arguments in the government's February 18, 2020 brief.  The government made these new arguments despite the Court's direction to address only the admissibility of lay testimony underlying Ms. Holmes' purported abuse defense.  Those new arguments are flawed and misstate the record, and as a result Mr. Balwani is compelled to respond.

The government dramatically underplays the prejudicial scope of the factual allegations supporting Ms. Holmes' "abuse" defense.  And oddly, the government devotes an entire section of its supplemental brief to suggesting that the *government*'s cross-examination of Ms. Holmes' witnesses will cure any prejudice to Mr. Balwani from her salacious and inflammatory accusations, and indeed even benefit Mr. Balwani.  The government cites no authority for the bizarre contention that a defendant benefits from being accused of sexual abuse in the middle of an unrelated fraud trial, and that he should rest assured that the government will have his back during cross-examination.

Further, the government's authorities for empaneling dual juries deal with drastically different circumstances than those the Court faces here.  None suggest that using dual juries for a complex fraud trial of three months or longer with potentially hundreds of witnesses is a viable path.  The government's criticism of Mr. Balwani for not conducting community surveys to show that his jury in a dual-jury trial would have to be burdened with sequestration is based on the illogical premise that jury sequestration is to guard against prejudicial publicity before trial as opposed to during trial.

All the government's new arguments fail, and its points are not aided by once again claiming without evidence that Ms. Holmes' "abuse" defense is part of a joint strategy of the defendants.  The only way to avoid obvious undue prejudice and to secure Mr. Balwani's constitutional right to a fair trial is to grant his motion to sever.

II.   **ARGUMENT**

    A.   **The government misunderstands the prejudice from Ms. Holmes' prospective defense.**

███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████  Gov. Feb. 18 Br. at 3.  But the government overlooks the entire scope of extremely serious and unfairly prejudicial accusations that Ms. Holmes wishes to level against Mr. Balwani at a joint trial.

    The impermissible prejudice goes far beyond any specific accusations ██████

███████████████████████  For instance, Ms. Holmes plans to introduce evidence that Mr. Balwani verbally disparaged her and withdrew "affection if she displeased him"; controlled what she ate, how she dressed, how much money she could spend, who she could interact with—essentially dominating her and erasing her capacity to make decisions.  *See* Holmes Mot. to Sever at 2-3.  Ms. Holmes' other filings and statements at the January 13 and February 10 hearings underscore the depth of the unfair prejudice.  *See, e.g.*, Amended Declaration of Mindy Mechanic at 13 (alleging that Mr. Balwani's control included monitoring her calls, text messages, and emails; physical violence, such as throwing hard, sharp objects at her; restricting her sleep; monitoring her movements; and insisting that any success she achieved was because of him).  In short, even setting aside the claims of sexual abuse, Ms. Holmes alleges a decade-long campaign of psychological abuse contemporaneous with the events in the indictment—evidence of which would *never* be admissible against Mr. Balwani were he tried alone.

    The government's abject failure to grapple with the actual serious and inflammatory allegations that Ms. Holmes plans to make fatally undermines its argument that hers are the types of factual claims that can be addressed with mere limiting instructions at trial.

    B.   **Mr. Balwani did not cook up the offensive suggestion that he sexually and psychologically abused Ms. Holmes.**

    The government continues to baselessly accuse Mr. Balwani of orchestrating the "abuse" defense with Ms. Holmes, resulting in Mr. Balwani's severance motion.  *See, e.g.*, Gov. Feb. 18

1   Br. at 1 (referring to Defendants' "theory for obtaining severance"); *id.* at 2 (referring to

2   Defendants' "failed Rule 12.2(b) defense"); *id.* at 11 n.9 (arguing that severance motions were

3   part of "joint defense strategy" because Ms. Holmes informed Mr. Balwani of her planned

4   defense and because her counsel contested the government's claim that her defense would be

5   inadmissible).  In truth, Ms. Holmes' allegations are deeply offensive to Mr. Balwani, devastating

6   personally to him, and highly and unfairly prejudicial to his defense of this case. *See* Balwani

7   Reply at 1 n.1.[1]  Mr. Balwani knew nothing about Ms. Holmes' defense until September 17,

8   2019, when counsel for Ms. Holmes contacted undersigned counsel as a courtesy with the

9   permission of the Court before sending a letter the next day.  *See* Dec. 3, 2019 Declaration of

10  Jeffrey B. Coopersmith in Support of Motion to Sever at ¶ 3 & Ex. A.

11 **C.    Nothing suggests that Mr. Balwani would benefit from the outrageous abuse
12          accusations.**

13          In one of the stranger passages of its supplemental brief, the government suggests that its

14  own cross-examination of Ms. Holmes and her witnesses could benefit Mr. Balwani by making

15  her appear dishonest. *See* Gov. Feb. 18 Br. at 16. According to the government, its efforts to

16  prove the dishonesty of Mr. Balwani's co-defendant in a fraud conspiracy trial will somehow

17  benefit Mr. Balwani's defense.  This naïve suggestion is wholly unsupported.  The government

18  cites no authority endorsing the idea that a defendant outsource his defense to the government in

19  the hopes that being accused of engaging in a long-term pattern of sexual, psychological, and

20  emotional abuse will somehow help him.

21          The government also ignores that its interests and Mr. Balwani's are not perfectly aligned

22  on the issue of impeachment.  The government is likely indifferent to Mr. Balwani's alleged

23  misdeeds, focusing only on rebutting Ms. Holmes' arguments that the alleged abuse prevented her

24  from forming intent to defraud.  Mr. Balwani would have to be concerned with completely

25  rebutting the allegations in every particular, lest the testimony interfere with the jury's reaching a

26  fair decision on the fraud charges.

27  _____
[1]  Indeed, if the Court ultimately indicates that it will admit expert testimony on this defense at a joint trial, Mr.
28  Balwani would likely have to retain an expert and move for the expert's examination of Ms. Holmes.  At a joint
trial, Mr. Balwani would also vigorously contest the admissibility of the "abuse" defense.

**D.      Empaneling dual juries would be inadequate and unworkable.**

The government cites no case in which a court endorsed or allowed dual juries in a lengthy fraud trial of several months, and none in which dual juries were empaneled in a case this complex.  Also, its comments on sequestration are illogical and misunderstand the purpose of sequestering a jury.

The government cites the bribery prosecution in *United States v. Lewis*, 716 F.2d 16 (D.C. Cir. 1983), for the proposition that dual juries have been used in white collar cases.  Yet it ignores both the facts of *Lewis* and that court's comments.  The trial in *Lewis* lasted only eight days.  The court cautioned that dual juries should be used only in "relatively uncomplicated situations" because the procedure can involve "substantial risks of prejudice to a defendant's right to a fair trial." *Id.* at 19 (internal quotation marks omitted) (citing cases).  The government also ignores that in *Lewis* the jury for the defendant prejudiced by the testimony had to be sequestered to avoid having that jury learn of the *Bruton* statements presented to the other jury. *Id.* at 20.

As for *United States v. Rimar*, 558 F.2d 1271 (6th Cir. 1977), the defendants were charged with stealing and possession of stolen property, rather than a massively complex regulatory and investor fraud. *Id.* at 1271.  The Sixth Circuit explained that while appellants had raised several issues, the "primary concern of [the] court … was whether the unusual procedure … created an atmosphere so confusing as to deprive these appellants of a fair trial." *Id.* at 1273.  Ruling that the use of dual juries was not unconstitutional is hardly a ringing endorsement.

The government also dramatically understates the disruption that two juries would cause. The government speculates that neither jury would need to be dismissed from any portion of the government's case, but offers no mechanism for ensuring that its guess that "Holmes would [not] be able to establish a foundation for asking questions that could raise these allegations of abuse on cross-examination" is correct. *See* Gov. Feb. 18 Br. at 18.  Moreover, Mr. Balwani would have to guess whether to seek to establish facts contrary to Ms. Holmes' anticipated defense and characterization of Mr. Balwani as an abuser during the government's case-in-chief through witnesses who interacted and observed the defendants during the relevant time period.  Would the government object to such evidence as irrelevant at the time, only to become relevant later in the

1   trial when Ms. Holmes and her expert testify?  Further, the government's ill-thought-out

2   procedure for each defendant's jury to be excused for the entirety of the other's defendant's case

3   presupposes no overlap among witnesses who may not be able to testify more than once, no need

4   for taking witnesses out of order, no problem that the Court may have with the wholesale

5   replication of overlapping aspects of the defendants' respective cases.  These issues are likely

6   only the tip of a glacier of logistical and constitutional problems.

7        The government also misapprehends and sidesteps the prejudice from negative publicity

8   *during trial*.  If Ms. Holmes tells her story in her opening statement and during her defense case,

9   it will be endlessly publicized throughout trial.  Voir dire will not solve the problem because that

10   process obviously occurs before opening statements and presentation of evidence, and thus cannot

11   address the likelihood that jurors will learn of an inflammatory defense blaring in the press and on

12   social media.  The government criticizes Mr. Balwani for not presenting polling data to show that

13   his jury would have to be burdened with sequestration (like the jury in *Lewis*), but does not

14   explain how community polling now would assist in determining the impact of incendiary

15   evidence that has not yet been made public on a jury during trial.  Contrary to the government's

16   claims, sequestration relates not to pretrial publicity but to prejudicial coverage during trial. In

17   our era of smartphones and news alerts—where a push notification with a headline is enough to

18   catastrophically affect Mr. Balwani—it is next to impossible to imagine that the Balwani jury

19   would not learn of Ms. Holmes' allegations.

20   **III.    CONCLUSION**

21        Mr. Balwani asks the Court to sever his case from Ms. Holmes' and order that he proceed

22   to trial first.

23

    Dated:  February 24, 2020                   Respectfully submitted,
24                                               ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                                               JEFFREY B. COOPERSMITH

27                                               JEFFREY B. COOPERSMITH

28                                               Attorney for Defendant
                                                 RAMESH "SUNNY" BALWANI

DEFENDANT BALWANI'S [PROPOSED]
SURREPLY IN SUPPORT OF MOTION TO SEVER,
CASE NO. 18-CR-00258-EJD