FILED

Mar 30 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH A. HOLMES, and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | SEALED BY ORDER OF THE COURT<br><br>Case No. 5:18-cr-00258-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER**<br><br>**FILED UNDER SEAL**<br><br>Re: Dkt. Nos. 189, 238 |

Defendants Elizabeth Holmes and Ramesh "Sunny" Balwani are charged with wire fraud in violation of 18 U.S.C. § 1343 and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The charges stem from Defendants' allegedly deceptive representations about their company, Theranos, and its technology. Pending before the Court are the Defendants' separate motions to sever. Having had the benefit of oral argument and having considered the parties' papers[1], the Court grants in part and denies in part Mr. Balwani's motion to sever. Mr. Balwani will be tried separately from Ms. Holmes. His request to be tried first, however, will be denied. The ruling on Mr. Balwani's motion to sever renders Ms. Holmes's motion to sever moot.

**I.    BACKGROUND**

   **A.    Factual Background**

Ms. Holmes founded Theranos, a health care and life sciences company, in 2003.

---

[1] The briefing (Dkt. Nos. 189, 238, 299, 313, 325, 342, 345, 346, 351) and other filings pertaining to the motions were sealed by the Court. Those documents contain personal matters of the parties and confidential material that if publicly disclosed at this time would impair the ability of the parties to receive a fair trial. The hearing was closed to the public for the same reasons and was conducted telephonically to avoid travel for participants in light of the COVID-19 health crisis.

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

1

Superseding Indictment ¶ 1, Dkt. 39. Ms. Holmes served as the Chief Executive Officer of the company. *Id.* Mr. Balwani served as a board member, the President, and the Chief Operating Officer of Theranos. *Id.* ¶ 2.

The stated mission of Theranos was to revolutionize medical laboratory testing through its allegedly innovative methods of drawing blood, testing blood, and diagnosing patients. *Id.* ¶ 5. During the company's first ten years, it pursued the development of proprietary technology that could run clinical tests using only tiny drops of blood. *Id.* Theranos also worked to develop a method for drawing only a few drops of capillary blood from a patient's finger using a small lancet. *Id.* That blood was then stored in a "nanotainer." *Id.* Theranos sought to develop a second device, termed the "TSPU" (Theranos Sample Processing Unit), "Edison," or "miniLab," that could quickly and accurately analyze blood samples collected in the nanotainer. *Id.* The Government contends that the promises of these devices was never realized and that the devices produced inaccurate and unreliable results. *Id.*

Defendants are charged with conspiring to commit and committing two fraudulent schemes: a scheme to defraud investors and a scheme to defraud doctors and patients. As to the fraudulent scheme to defraud investors, Defendants allegedly (1) claimed that Theranos's proprietary analyzer—the TSPU, Edison, or miniLab—was presently capable of accomplishing certain tasks, with more precision than other blood tests, and at a faster rate, when, in fact, Defendants knew these statements were false (*id.* ¶ 12(A)); (2) told investors the company was financially strong and stable and would make huge profits in 2014 and 2015 when, in fact, Defendants knew Theranos would only generate modest revenue (*id.* ¶ 12(B)); (3) made misleading technology demonstrations where Defendants intended to cause potential investors to believe that blood tests were being conducted on Theranos's proprietary analyzer when, in fact, Defendants knew the analyzer was operating in "null protocol" (*id.* ¶ 12(C)); (4) told investors Theranos had an expanding partnership with Walgreens when, in fact, the Walgreens rollout had stalled due to concerns with Theranos's performance (*id.* ¶ 12(D)); (5) told investors the company

had a profitable and revenue-generating business relationship with the U.S. Department of Defense and that Theranos technology was deployed on the battlefield, when in fact, Defendants knew that Theranos had limited revenue from military contracts and that its technology was not used in the battlefield (*id.* ¶ 12(E)); (6) told investors Food and Drug Administration ("FDA") approval was not needed for the proprietary analyzer and tests when, in fact, Defendants knew by late 2013 and throughout 2014 that the FDA was requiring Theranos to apply for clearance or approval for its analyzer and tests (*id.* ¶ 12(F)); (7) told investors that patient tests were conducted using Theranos manufactured analyzers, when in fact, Defendants knew that Theranos used third-party, commercially available analyzers (*id.* ¶ 12(G)); (8) told investors Theranos technology had been examined, used, and validated by several national or multinational pharmaceutical companies and research institutions, when in fact, Defendants knew this was false (*id.* ¶ 12(H)); and (9) made the false and misleading statements described above to reporters and then shared the resulting articles directly with potential investors and via the Theranos website (*id.* ¶ 12(I)).

As to the fraudulent scheme to defraud doctors and patients, the Government alleges that from 2013 to 2016, Defendants advertised and marketed Theranos technology to doctors and patients, presented misleading and false claims about the accuracy and reliability of its blood tests, and omitted the problems and limits of Theranos technologies. *Id.* ¶¶ 15–16. Defendants allegedly used materially false and misleading marketing materials and advertisements and transmitted Theranos blood results that Defendants knew contained, or likely contained, inaccurate information. *Id.* ¶ 17.

### B. Procedural Background

On September 18, 2019, the parties informed the Court that Ms. Holmes had advised Mr. Balwani by letter that she intended to "introduce expert evidence at trial related to a mental condition bearing on guilt." Balwani's Mtn. to Sever (Dkt. No. 189) at 2. Ms. Holmes informed Mr. Balwani that she would have an expert testify about, among other things, "intimate partner violence/abuse (including at least psychological, emotional and sexual abuse) suffered by Ms.

Holmes at the hands of Mr. Balwani," "the abusive tactics used by Mr. Balwani that allowed him to exert control over [Ms. Holmes]," and "the psychological impact of the relationship on Ms. Holmes during the time period of the relationship and in connection with the charged conspiracy" between Ms. Holmes and Mr. Balwani. *Id*. Mr. Balwani adamantly denies these allegations.

Relying on this letter, Mr. Balwani filed a motion to sever on December 3, 2019. Mr. Balwani seeks severance because regardless of the merits of Ms. Holmes's representations, "the prejudice [he] will suffer if Ms. Holmes presents or even publicly discloses this defense, particularly in a case as high profile as this one, is so extreme that severance is essential to preserve [his] right to a fair trial." *Id*. Mr. Balwani also asserts that once his case is severed from Ms. Holmes's case, it is essential for his case to proceed first so that the jury pool for his case will not be incurably tainted. *Id*.

On December 16, 2019, Ms. Holmes filed her severance motion. Although the merits of Ms. Holmes's motion to sever is not addressed herein, the substance of motion is important to give context to Mr. Balwani's motion. Ms. Holmes's motion for severance is based on the matters indicated in the letter but for different reasons. Ms. Holmes argues that as a result of Mr. Balwani's abusive treatment of her she suffers from Intimate Partner Abuse syndrome ("IPA") and concurrent posttraumatic stress disorder ("PTSD") such that she cannot be near him without suffering physical distress. She argues that if she is tried together with Mr. Balwani, she will likely suffer stress and physical ailments that will manifest visually such that she will not appear to the jury in her true sense. She also asserts that there is a risk she will be unable to concentrate in her case and will thus be unable to assist and participate in her defense. Ms. Holmes filed as an exhibit a document prepared by Dr. Mechanic, a retained psychologist who examined her, reviewed documents, and interviewed members of her family. ███████████ ████████████████████████████████████████████████████████████ Ms. Holmes also filed notice under Federal Rule of Criminal Procedure 12.2(b), stating that she may introduce expert evidence at trial related to a mental condition bearing on guilt. The document

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

4

1 | prepared by Dr. Mechanic did not address the basis for Ms. Holmes's potential Rule 12.2(b)
2 | defense, ███████████████████████████████████
3 | ███████████████████████████████████
4 |      On January 17, 2020, at the direction of the Court, Ms. Holmes provided an amended and
5 | sworn declaration of Dr. Mechanic (hereinafter "Declaration"). Ms. Holmes also informed the
6 | Government that she had engaged Dr. Mechanic as an expert for purposes of her Rule 12.2(b)
7 | notice. Like the original filing, Dr. Mechanic's amended Declaration focused on the basis for Ms.
8 | Holmes's motion to sever and provided only meager information relevant to Ms. Holmes's Rule
9 | 12.2(b) defense.
10 |      The Government retained Dr. Binder to opine on Ms. Holmes's noticed Rule 12.2(b)
11 | defense. Dr. Binder reviewed the same documents relied upon by Dr. Mechanic ███
12 | ███████████████████████████████████
13 | ███████████████████████████████████
14 | ███████████████████████████████████
15 | ███

## II.   STANDARDS

Federal Rule of Criminal Procedure 8, Joinder of Offenses or Defendants, "evinces a strong federal policy favoring joint trials of defendants who are indicted together." *United States v. Lopez*, 915 F. Supp. 891, 894-95 (E.D. Mich. 1996). "Co-defendants jointly charged are, *prima facie*, to be jointly tried." *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980). This rule applies particularly in criminal conspiracy cases. *United States. v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *see also United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004) ("a joint trial is particularly appropriate where the co-defendants are charged with conspiracy"). Joint trials "play a vital role in the criminal justice system." *Zafiro v. United States.*, 506 U.S. 534, 537 (1993)) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). Joint trials are favored because they "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts.'" *Id.* (quoting *Richardson*, 481 U.S. at 210).

Federal Rule of Criminal Procedure 14, Relief from Prejudicial Joinder, provides that a district court may order separate trials if a joint trial of defendants "appears to prejudice" one of them. Fed. R. Crim. Proc. 14(a). "[A] district court should grant a severance under Rule 14" only if (1) "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or (2) a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also Reay v. Scribner*, 369 F. App'x 847, 848-49 (9th Cir. 2010) (quoting). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539.

## II. DISCUSSION

### A. Balwani's Motion to Sever

The Court finds it appropriate to sever Mr. Balwani's trial from Ms. Holmes's trial for the reasons discussed below.

#### 1. Prejudice

Mr. Balwani argues that a severance under Rule 14(a) is necessary because the defense Ms. Holmes advances undermines his constitutional rights, in particular his right to due process under the Fifth Amendment of the United States Constitution. Specifically, Mr. Balwani asserts that in a joint trial, Ms. Holmes's inflammatory allegations would expose the jury to character evidence that would otherwise be inadmissible against him if he were tried alone. Mr. Balwani argues that severance is required on this basis alone.

Mr. Balwani's core argument is that if Ms. Holmes presents the evidence outlined in the letter during a joint trial, he will be unfairly prejudiced and his rights to a fair trial will be compromised, citing *Zafiro*. He argues that Ms. Holmes's evidence seeking to establish her innocence would require him to defend against not only the Government's case, but to defend against her allegations as well because her allegations are so inflammatory that they cannot be left

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S
MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER
6

1  unrebutted before the jury.  He argues that the allegations are so pernicious that in the current
2  climate of Me Too and public awareness of abusive sexual behavior of certain men against
3  women, it will be impossible for him to receive a fair trial if this evidence is admitted in a joint
4  trial.  Mr. Balwani also argues that his rights under the Fifth and Sixth Amendments to the United
5  States Constitution will be violated with a joint trial because he will be forced to testify to respond
6  to and deny the allegations of abuse, even though these allegations are not alleged by the
7  Government.  He argues the allegations alone are so damning in the current climate that it will be
8  impossible for a fair joint trial and that no special instruction of the Court can separate the jury
9  from the alleged uncharged conduct and the Government's proof and evidence.

Mr. Balwani's arguments are well supported by the handful of federal courts that have faced similar circumstances.  In *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995), Breinig and his former wife, Joan Moore ("Moore"), were charged with tax evasion.  Breinig moved for severance in anticipation of antagonistic defenses, and Moore joined in the motion.  *Id*. at 851-52.  The trial court denied the motion.  At trial, Moore presented a defense of diminished capacity to negate *mens rea*.  Moore claimed that she lacked the capacity to have evaded taxes "wilfully" because she was dominated and controlled by Breinig.  *Id*. at 852.  For his part, Breinig claimed that because Moore kept all the books and an accounting firm prepared their taxes, he had no knowledge of the underreporting.  *Id*.  Moore's defense was based largely on the testimony of a psychiatrist and a psychologist who had treated her a few years after the alleged tax evasion.  Over Breinig's objection, these expert witnesses testified to "Moore's mental instability, to her extreme insecurities, to her suicidal tendencies; to Breinig's infidelities; and to Moore's low self-esteem."  *Id*.  There was also evidence that Breinig alienated the couple's children, which caused Moore to feel abandoned by them; that Breinig also abandoned Moore; and that Breinig "manipulated" her throughout the course of their twenty-four-year marriage, resulting in Moore's extreme dependence on him.  *Id*.  Although the court admitted all of this evidence only in support of Moore's defense, the evidence amounted to "dramatic evidence of Breinig's bad character."  *Id*.

The Sixth Circuit concluded that Breinig's claim of prejudice met the *Zafiro* standard for severance and accordingly reversed Breinig's conviction. *Id*. at 853-54. The Sixth Circuit reasoned:

> The unfairness in Breinig's trial resulted not from a mutually antagonistic defense, but from evidence the jury was permitted to hear and evaluate and which was, as to Breinig, impermissible and highly inflammatory evidence of his bad character. The jury was told, by well-credentialed experts, that Breinig was an adulterous, mentally abusive, and manipulating spouse. Such testimony, of course, would have been inadmissible against him under any theory of the Federal Rules of Evidence on a trial for tax evasion. Because Breinig's credibility was in issue, the jury's consideration of categorically inadmissible evidence was manifestly prejudicial, and unfairly so. It provided the government with an unfair windfall that the rules of evidence and elemental notions of fairness would otherwise not allow, and that Rule 8(b) does not envision.

*Id*. at 853. In so holding, the Sixth Circuit noted that it was presented with an "exceptional case" with "unique facts," and that the district court could not have foreseen much of the testimony that was ultimately introduced at trial. *Id*.

In *United States v. Lopez*, 915 F. Supp. 891 (E.D. Mich. 1996), Rene Cardona ("Cardona") and Sandra Lopez ("Lopez") were jointly indicted on drug charges, including conspiracy to distribute cocaine. Cardona moved for severance because Lopez "intend[ed] to offer evidence in her defense that Cardona beat and/or coerced her into committing criminal activity." *Id*. at 900. Cardona argued that he would be "severely prejudiced in the eyes of a jury" by Lopez's defense, and further, that this prejudice would be "magnified because Lopez may not testify, depriving Cardona of an opportunity to cross examine her on this element of her defense." *Id*. The *Lopez* court conducted an *in camera* review of Lopez's affidavit outlining her proposed defense and was satisfied that the evidence she intended to introduce would expose Cardona "to the same degree of prejudice which justified the reversal in *Breinig*." *Id*. at 901. The *Lopez* court also held that the "proposed evidence of physical abuse and coercion would be inadmissible against Cardona if he were tried independently. *Id*. Finally, the *Lopez* court noted that "less drastic measures, such as limiting instructions, would not suffice to cure this substantial risk of prejudice." *Id*. For this

reason, the *Lopez* court granted Lopez's motion to sever.

In *United States v. Swan*, No. 12-CR-27 JAW, 2013 WL 3422022 (D. Me. July 8, 2013), a married couple was indicted on multiple counts, including fraud and extortion. Mr. Swan moved to sever after Ms. Swan's trial brief revealed allegations of spousal abuse. *Id*. at *2. More specifically, Ms. Swan disclosed that she would present evidence of her state of mind, including her "fear and lack of control resulting from actions by her husband." *Id*. Ms. Swan alleged that Mr. Swan was a "controlling and physically abusive husband" and described his behavior as "chilling." *Id*. The *Swan* court concluded that the potential prejudice against Mr. Swan was so severe that his motion to sever must be granted:

> If his case were tried separately, his wife's allegations of spousal abuse would be inadmissible and the jury would focus on whether the Government had proven its criminal charges against him beyond a reasonable doubt. However, if his case is tried with his wife, the jury will likely hear her contention that Marshall Swan emotionally and physically abused her and Marshall Swan will therefore be compelled to defend himself not only against the prosecutor's case against him but also his wife's case against him. Furthermore, Carole Swan's allegations . . . are dramatic, including "black eyes, bruised ribs, and clumps of hair being pulled from her head as she was dragged from room to room" and a "paranoid regime aimed at tracking Carole's slightest movements." [citation] If the jury were to hear this evidence against Marshall Swan, there is the risk that they would convict him not because he committed the charged crimes of federal criminal fraud but because they believe he committed uncharged crimes of spousal abuse, or at least that their ability to judge him fairly on the merits would be compromised.

*Id*. at *4. Further, the *Swan* court was not convinced that a jury instruction limiting the jury's use of the evidence of abuse would be successful. *Id*. at *5.

Here, the information outlined in Dr. Mechanic's Declaration, <u>if admitted into evidence in a joint trial</u>, would be highly prejudicial and unfair to Mr. Balwani for the very reasons stated in *Breinig*, *Lopez*, and *Swan*. Because Dr. Mechanic's Declaration was offered only as support for Ms. Holmes's severance motion and not as a formal report directed to a 12.2(b) defense, however, it was unclear to what extent Ms. Holmes would seek to admit as evidence at trial any of the information contained in the Declaration. The Declaration recites both factual matters and expert

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

9

1  opinion. █████████████

2  ████████████████████████████████

3  ████████████████████████████████

4  ████████████████████████████████

5  ████████████████████████████████

6  ██████████████████████████

7  ████████████████████████████

8  ██████████████████████████████

9  ████████████████████████████████

10 ████████████████████████████████

11 ████████████████████████████████

12 ████████████████████████████████

13 ████████████████████████████████

14 ████████████████████████████████

15 ███████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████

18 ██████████████████████████████

19 ██████████████████████████████

20 ██████████████████████████████

21 ████████████████████████████████

22 ████████████████████████████████

23 ███████████████████████████████

24 ████████████████████████████████

25 ████████████████████████████████

26 ████████████████████████████████

27

28

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S
MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 ▓▓▓▓▓▓▓▓

The Court discussed the Declaration with the parties at hearings trying to determine the nature of the testimonial evidence Ms. Holmes intended to offer at trial and whether that testimony will relate to her 12.2(b) defense. The Court was initially concerned with whether Ms. Holmes would be advancing a duress defense. The Court was careful, and indicated as much to counsel, that it was not asking Ms. Holmes what her defense would be or asking her to reveal her defense at this stage in the proceedings. In response, counsel indicated that they would not be advancing a duress defense for Ms. Holmes, and further represented that Ms. Holmes's defense would be a lack of *mens rea* to commit the offenses charged.

The Court asked whether a *Daubert*[2] hearing as to Dr. Mechanic's qualifications or opinions should be advanced to an earlier stage of the schedule. The Government favored having the *Daubert* hearing so the parties would have an early determination on the admissibility issue. The Government argued that Dr. Mechanic's anticipated trial testimony, as reflected in her Declaration, would be inadmissible at trial. The Government reasoned that Dr. Mechanic's Declaration does not describe how Ms. Holmes's purported mental conditions undermined her ability to form the requisite intent to deceive at the time she committed the crimes alleged, and therefore there is no basis to admit Dr. Mechanic's testimony in support of a Rule 12.2(b) defense. And because Dr. Mechanic's Declaration does not support a Rule 12.2(b) defense in the Government's view, the allegations against Mr. Balwani are irrelevant and inadmissible. Ms. Holmes objected to an early *Daubert* hearing.

The Court acknowledged that if Dr. Mechanic was found not qualified as an expert, the ▓▓▓▓▓▓▓▓▓▓ outlined in her Declaration might lack relevance and be inadmissible. *See e.g. United States v. Scholl*, 166 F.3d 964, 970 (9th Cir. 1999) (holding that district court did not err in

---

[2] *See Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311 (9th Cir. 1995) (on remand, holding that proponent of expert testimony must show that evidence is admissible under standards set forth in the Supreme Court's decision).

limiting the testimony of defendant's compulsive gambling psychological expert where "there [was] no 'fit' between his testimony and the issue of willfulness" for charges for filing false tax returns); *United States v. Baxt*, 74 F. Supp. 2d 436, 440-41 (D.N.J. 1999) (for expert testimony to be admissible, "it must negate Baxt's *mens rea* by tending to prove that Baxt did not submit false financial statements knowingly or with the intent to influence [the lender]"); *United States v. Richards*, 9 F.Supp. 2d 455, 459 (D.N.J. 1998) (holding that expert testimony as to defendant's "major depressive order" was inadmissible to negate *mens rea* element of charges for embezzlement). After having been informed that Ms. Holmes would not advance a duress defense, the Court solicited more information on how the *mens rea* defense might be presented, again without asking defense counsel to reveal specifics. That discussion led to the Court's inquiry as to whether, as Ms. Holmes's counsel said, she could testify as a lay witness to conduct/treatment she received from Mr. Balwani during their relationship, including salacious conduct of a sexual intimate nature to support her *mens rea* defense. During this discussion Ms. Holmes's counsel represented that it "was highly likely Holmes would testify" about the conduct. Ms. Holmes's counsel emphasized that it was unusual for a defense attorney to so reveal a client's intention to testify in a criminal case, but he felt confident in doing so in this case. This statement was quite profound and meaningful to the Court. The Court then asked Ms. Holmes to prepare a proffer of proposed lay witness testimony and evidence that the Court would review *in camera* and invited further briefing from the parties as to the admissibility of lay witness testimony on the issue of *mens rea* and the basis for its admissibility.

The Court has thoroughly reviewed this additional briefing and proffer. Having done so, the Court finds that Ms. Holmes might testify at trial as a lay witness to certain conduct of Mr. Balwani as to her, and that based on the proffer, briefing, representations and comments of counsel,³ such testimony would be unfairly prejudicial to codefendant Mr. Balwani such that he

---

³ *See* Notice of Submission at 1-2, Dkt. No. 299 ("[C]ounsel can state, as officers of the court that there is a significant likelihood that Ms. Holmes will (1) testify at trial that she suffered from intimate partner abuse and (2) explain the impact of the abuse on her state of mind during the

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER
12

will be denied a fair trial unless his trial is severed from Ms. Holmes's trial. *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015). In *Haischer*, the defendant, Haischer, was convicted of committing and conspiring to commit wire fraud. The indictment alleged that Haischer, a loan officer at a brokerage firm, participated in a scheme to secure mortgages using false information in loan applications and supporting documents. Haischer testified that she did not submit the information, and that Nunes, an alleged co-conspirator, had filled out the applications. *Id*. at 1280. Haischer testified that she deferred to Nunes's judgment because he was a senior loan officer at the brokerage firm and her then-boyfriend. *Id*. Haischer also alleged that Nunes had abused her, but the jury was not permitted to consider evidence of abuse, however. *Id*. The trial court reasoned that the evidence of abuse possessed no probative value as to Haischer's *mens rea* defense and was highly prejudicial. *Id*. at 1281. The jury convicted Haischer. On appeal, the Ninth Circuit vacated the conviction. The Ninth Circuit held that the trial court committed error by excluding evidence of Haischer's alleged abuse, reasoning that "[a]lthough the evidence of abuse was less probative of Haischer's lack of knowledge or intent than it was of Haischer's potential duress defense, the evidence was not so minimally probative that it was proper to exclude it entirely." *Id*. at 1282. Moreover, the Ninth Circuit held that the error rose to the level of a constitutional error:

> The evidence of abuse would have been central evidence in support of Haischer's *mens rea* defense, particularly in light of the deliberate ignorance theory as reflected in the *Jewell* instruction. Because Haischer's knowledge and intent were necessary elements of wire fraud, the evidence related to a critical element of the government's case. We conclude that the exclusion of the evidence violated Haischer's due process rights.

*Id*. at 1284.

Here, based upon the representations of counsel, Ms. Holmes is likely to testify as a lay witness to conduct by Mr. Balwani to substantiate her *mens rea* defense, just as the defendant in

---

relevant period. . . . Finally, there is a significant likelihood that Ms. Holmes will call other witnesses and offer other evidence on these issues.")
CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

13

*Haischer* sought to introduce evidence of abuse through a lay witness. The Government argues that *Haischer* is distinguishable because in that case, the alleged abuse was connected directly and factually to the fraud. Haischer's sister testified that she heard Nunes yelling at Haischer to sign papers, which Haischer testified were papers for the alleged fraudulent loan application. The Government's argument has merit, but it is premature. At trial, Ms. Holmes will eventually have to connect the alleged abuse to the charged conduct for the abuse to be relevant and admissible. *See e.g. United States v. Gonzalez*, 599 F. App'x 727 (9th Cir. 2015) (holding that trial court did not abuse its discretion in excluding evidence of abusive childhood because the evidence was highly prejudicial and had "very little, if any, relevance or probative value absent some expert testimony connecting the past abuse Appellant suffered to her mental state at the time of the crime"); *United States v. Boykoff*, 186 F. Supp. 2d 347, 349 (S.D.N.Y. 2002) (recognizing that courts have "refused to admit mental disease evidence where no direct link could be established between it and the issue of *mens rea*"); *United States v. Pirro*, 76 F. Supp. 2d 478, 485 (S.D.N.Y. 1990) ("Mental disease evidence is generally excluded where no link is demonstrated between the evidence and the defendant's *mens rea* or where the defendant could not demonstrate that he actually lacked *mens rea* at the time of the offense because of any psychological defect."). The Court is not and has not ruled on the admissibility of any of Ms. Holmes's anticipated evidence at this time. The Court's ruling is that even without expert testimony, Ms. Holmes might testify as a lay witness to conduct by Mr. Balwani that is the foundation of her *mens rea* defense. *Haischer*, 780 F.3d at 1282-84; *see also Swan*, 2013 WL 3422022, at *2 (severing trials because even without an expert, the jury's "ability to judge [Mr. Swan] fairly on the merits would be compromised" in light of "[Mrs.] Swan's allegations" of abuse). Mr. Balwani would then be put in the position of having to "defend himself not only against the prosecutor's case against him but also [Ms. Holmes's] case against him." *Swan*, 2013 WL 3422022, at *4. The jury in a joint trial could use the proffered evidence, spanning a decade of alleged abuse, in a manner that is unfair and prejudicial to Mr. Balwani. The jury might "convict [Mr. Balwani] not because he committed

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER
14

the charged crimes of federal criminal fraud but because they believe he committed uncharged crimes of [intimate partner] abuse, or at least that their ability to judge him fairly on the merits would be compromised." *Id*. Under the circumstances of this case, a joint trial might "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

The Court further finds that a less drastic measure than severance, such as a special or limiting instruction, would not be an effective remedy or mitigation for the potential prejudice to Mr. Balwani. *Lopez*, 915 F. Supp. at 901 (holding that less drastic measures, such as limiting instructions, would not suffice to cure the substantial risk of prejudice). The Government proposes that the Court empanel dual juries instead of ordering severance. The Government envisions a "Holmes Jury" and a separate "Balwani Jury" present for the Government's opening statement, but only the "Holmes Jury" would be present for her opening statement, and only the "Balwani Jury" would be present for his. Thereafter, only the "Holmes Jury" would hear Holmes's affirmative defense, the Government's rebuttal to her defense, and closing arguments pertaining only to Holmes. The "Balwani Jury" would proceed in a similar manner. Although there is precedent for the use of dual juries in the Ninth Circuit,[4] the Court finds that proceeding with dual juries in a single trial would be too cumbersome and unwieldly for a case of this complexity and is not a viable remedy or solution. The Court is mindful of the need to adjudicate cases to provide a just determination of every proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay. Fed. R. Crim. P. 2. The Court finds that the use of dual juries in this case would be inefficient and impractical in our courthouse and that separate trials, although burdensome to the Government, defense and the court, is appropriate and fair to all parties.

### 2. Other Factors

Mr. Balwani contends that the following additional considerations weigh in favor of

---

[4] *See Lambright v. Stewart*, 191 F.3d 1181, 1185 (9th Cir. 1999) ("[D]ual juries are in wide use and . . . they have worked out just fine.").

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER

15

severance. First, without a ruling on severance at the earliest possible time, Mr. Balwani would be forced to launch a massive, expensive, distracting, and time-consuming investigation to be prepared to counter Ms. Holmes's allegations at a joint trial, and that the investigation might draw publicity that would incurably taint the jury pool. Second, Ms. Holmes's defense may prove to be irreconcilably antagonistic to Mr. Balwani's defense. Third, there is a risk that Mr. Balwani's confrontation rights under the Sixth Amendment may be violated if late into the trial and after jeopardy attaches, Ms. Holmes elects to present her defense through an expert witness.

Because the Court finds that the potential for unfair prejudice warrants a severance in accordance with *Zafiro*, it is largely unnecessary for the Court to address Mr. Balwani's alternative bases for severance. The Court notes only that the defenses as currently presented are somewhat antagonistic. Nevertheless, that is not the critical factor in the Court's decision; the prejudice factor predominates and outweighs other considerations in this case.

### B. Defendant Holmes's Motion to Sever

Because the Court has granted Balwani's motion, Ms. Holmes's motion to sever is deemed moot.

## III. CONCLUSION

Mr. Balwani's motion to sever is granted, and he will be tried separately from Ms. Holmes. Mr. Balwani's request to be tried first is denied. Severance "does not create a right to a particular trial sequence." *Mack v. Peters*, 80 F.3d 230, 235 (7th Cir. 1996). Ms. Holmes's trial will remain as scheduled with all previous scheduling deadlines remaining undisturbed. Ms. Holmes's motion to sever is deemed moot.

**IT IS SO ORDERED.**

Dated: March 30, 2020

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:18-CR-00258-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BALWANI'S MOTION TO SEVER; FINDING MOOT HOLMES'S MOTION TO SEVER
16