1  STEPHANIE M. HINDS (CABN 154284)
   Attorney for the United States,
2  Acting Under Authority Conferred By 28 U.S.C. § 515

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4
   JEFF SCHENK (CABN 234355)
5  JOHN C. BOSTIC (CABN 264367)
   ROBERT S. LEACH (CABN 196191)
6  VANESSA BAEHR-JONES (CABN 281715)
   Assistant United States Attorneys
7
        150 Almaden Boulevard, Suite 900
8       San Jose, California 95113
        Telephone: (408) 535-5061
9       Fax: (408) 535-5066
        Vanessa.Baehr-Jones@usdoj.gov
10
   Attorneys for United States of America
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15  UNITED STATES OF AMERICA,              )  Case No. 18-CR-00258 EJD
                                           )
16        Plaintiff,                       )  UNITED STATES' OMNIBUS REPLY IN
                                           )  SUPPORT OF UNITED STATES' MOTION TO
17     v.                                  )  REJOIN THE TRIALS OF DEFENDANTS
                                           )  ELIZABETH HOLMES AND RAMESH "SUNNY"
18  ELIZABETH HOLMES and RAMESH            )  BALWANI PURSUANT TO FEDERAL RULE OF
    "SUNNY" BALWANI,                       )  CRIMINAL PROCEDURE 8(b) AND MOTION TO
19                                         )  EXCLUDE TESTIMONY FROM DR. MECHANIC
        Defendants.                        )  PURSUANT TO FEDERAL RULES OF
20                                         )  EVIDENCE 401, 402, 403, AND 702
                                           )
21                                         )  Date:   December 15, 2020
                                           )  Time:  10:00 a.m.
22                                         )  Court: Hon. Edward J. Davila
                                           )
23                                         )  **[FILED PROVISIONALLY UNDER SEAL
                                           )  PURSUANT TO COURT ORDER OF JANUARY
24                                         )  13, 2020]**
                                           )
25  _____)

26

27

28

GOVT. OMNIBUS REPLY                    1
18-CR-00258 EJD

FILED

Dec 15 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

SEALED BY ORDER OF THE COURT

**INTRODUCTION**

Defendant Elizabeth Holmes's defense is clear:  she intends to blame her crimes on her co-conspirator, Defendant Ramesh Balwani.  Holmes will testify that she believed what she said was true when she lied to investors and the media—promoting blood tests that were not safe for patients to rely on—because Balwani misled her about what was happening in the clinical lab.[1]  Balwani, for his part, may argue that he warned Holmes about the problems and it was her choice, as CEO, to lie to investors and the media.  The fact that the defendants want to blame each other, though, is <u>not</u> a proper basis for severance.  *See United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996).  Co-conspirators frequently point their fingers at each other, and it is the jury's role to decide whose story to believe and whom to hold accountable.  "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Zafiro v. United States*, 506 U.S. 534, 540 (1993).

Absent legal grounds to seek severance, Holmes has injected another element into her defense, claiming Balwani abused her ▇▇▇ and physically.  Holmes, however, has not stated a basis on which to admit these allegations.  Using allegations of abuse as a means to improperly bolster her credibility and gain sympathy with the jury—*i.e.*, it's more likely she's telling the truth that she believed Balwani because Balwani abused her—is clearly improper.  Whether Balwani ▇▇▇ or physically abused her has nothing to do with whether she believed him when he told her how accurate Theranos blood tests were in the clinical lab.  Holmes attempts to fit the abuse evidence into the case law describing the diminished capacity defense, but refuses to accept the basic premise of these cases:  "there must be some evidence (however weak) of a link between the defendant's mental illness and his ability to form a specific intent."  *United States v. Christian*, 749 F.3d 806, 815 (9th Cir. 2014), *overruled in part on other grounds*, *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc).   The Court stated in its Order granting severance that Holmes would have to show such a connection for the abuse allegations to be admissible.  (Mar. 30, 2020, Sealed Court Order at 14.)  Holmes claims no such connection; ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and the abuse allegations are irrelevant.

---

[1] Holmes claims Balwani's "areas of responsibility" encompassed "operations, the clinical laboratory, the day-to-day of the Walgreens relationship, the company's financials, and due diligence meetings with potential investors and partners."  (Dkt. #626, Holmes Opp. to Mot. to Exclude Mechanic Test. at 14.)

1    Finally, since March 2020, the tragedy of the COVID-19 pandemic has dramatically shifted the

2    risks and burdens of holding two lengthy fraud trials.  Extensive safety precautions will be necessary for

3    trial in this case, even after vaccine distribution begins.  The burdens the pandemic place on the court

4    staff, the jurors, the witnesses, and the public weigh heavily in favor of rejoinder.  To the extent Holmes

5    and Balwani need additional time to prepare, they should move for a continuance and the Court should

6    ensure all parties have time to prepare effectively for trial.  But this is not a basis for denying rejoinder

7    of two properly-joined co-conspirators.  It also bears emphasis that the parties were four months before

8    trial when the Court initially severed the case.  The Court should rejoin the Defendants' trials.

9                                              **ARGUMENT**

10   **I.    Holmes's Defense Has Nothing To Do With Abuse**

11         Holmes intends to blame others for her misrepresentations, half-truths, and omissions.  As the

12   government articulated in its Motion to Exclude the Testimony of Dr. Mechanic, this is entirely

13   consistent with Holmes's three days of sworn testimony before the Securities and Exchange

14   Commission (SEC).  ███████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████   This defense has nothing to do with Holmes's

17   noticed Rule 12.2(b) defense, which listed three potential diagnoses as mental conditions bearing on

18   guilt:  post-traumatic stress disorder (PTSD), anxiety, and depression.  Indeed, Holmes now asserts that

19   ██████████████████████████████████████████████████.  (Nov. 30, 2020, Baehr-Jones

20   Decl., Exh. 12, Mechanic Disclosure, at 5.)

21         Holmes instead claims that the abuse allegations are relevant because the abuse makes it more

22   likely (*i.e.*, bolsters her claims) that she relied on Balwani's statements.  Nothing in the case law,

23   though, supports admissibility of highly prejudicial abuse allegations to bolster a defendant's credibility.

24   To the contrary, the case law prohibits such use of expert testimony.  *See United States v. Preston*, 873

25   F.3d 829, 836 (9th Cir. 2017) (holding admission of expert testimony bolstering victim's credibility to

26   be error).  Holmes relies on *Haischer*, but this is <u>not</u> the theory of admissibility the Ninth Circuit

27   endorsed there.  *See United States v. Haischer*, 780 F.3d 1277, 1282–83 (9th Cir. 2015).  Haischer was

28   not claiming that the abuse allegations made it more likely that she would believe her co-conspirator that

1   the loan documents were accurate.  *Id.*  Instead, the facts there showed that Haischer was experiencing

2   horrific physical abuse—the co-conspirator broke her leg and was withholding medical treatment—

3   while she was coerced into signing the false loan document.  *Id.* at 1282.  The Ninth Circuit reasoned

4   that the abuse evidence was therefore relevant because she may have been unable to knowingly and

5   intentionally sign the false loan documents in that situation.  *Id.*  This would have potentially "supported

6   one of Haischer's primary defenses, that she signed the documents without knowing what they said

7   because of pressure from [her co-conspirator]."  *Id.*

8         Nothing about the factual scenario in *Haischer* is similar to the facts here.  ▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14        Holmes claims the government is conflating the intent element with the element of falsity.  (Dkt.

15  #626, Opp. to Mot. to Exclude Binder Test. at 1, 11–12, 11 n.6.)  This is an incorrect reading of the

16  government's argument.  Of course, the government must prove falsity and the defense may always

17  attempt to challenge the government's evidence of this element at trial.  The government's point is that

18  Holmes's defense theory regarding her intent—"I believed the alleged fraudulent statements were true

19  because I was misled" (a version of the good faith reliance defense)—is inconsistent with a diminished

20  capacity theory.  Under a diminished capacity theory, like in *Haischer*, a defendant instead claims, "I did

21  not have the capacity to intentionally lie or cheat."  Believing her scientists, advisors, and Balwani

22  required Holmes to reason and think through her statements.  Her reasoned belief that she was relying on

23  accurate information and therefore making factual statements is the antithesis of lacking the

24  psychological capacity to form intent.  Accordingly, these two defenses are incompatible.

25        Moreover, the abuse allegations here lack the kind of factual connection to the fraud that was

26  present in *Haischer*.  Here, the alleged ▮▮▮ and physical abuse happened outside of the office (and in

27  some cases, many years before the alleged fraud) and had no connection to Holmes's presentations at

28  investor meetings, "demos" of the Theranos analyzers, or appearances on national media outlets.  ▮

GOVT. OMNIBUS REPLY                                4
18-CR-00258 EJD

1  ███████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  █    Instead, Holmes proffers:  ███████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████  This would amount to

7  nothing more than improper bolstering of Holmes's good faith reliance defense.

8      Nor does the evidence before the Court connect the abuse to the commission of the fraud.

9  Holmes does not make this connection in her testimony before the SEC, nor in her interview with Dr.

10  Binder.  Instead, the facts tend to show that Holmes was perfectly capable of making decisions, even

11  when those decisions were adverse to Balwani.  ████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████

14  ██████████████████████████████  And Holmes's personal assistants observed that

15  the relationship between Holmes and Balwani appeared to be mutually respectful in the office.  (*See*

16  Decl. of Vanessa Baehr-Jones, Exhs. 1 (FBI 302 for Paige Williams), 2 (FBI 302 for Nicole Canas).)

17      Holmes is not claiming that the abuse interfered with her ability or capacity to form the requisite

18  intent.  Instead, Holmes claims the abuse evidence will somehow corroborate her claim that she relied

19  on Balwani—even though the allegations of abuse are far removed from any of the events underlying

20  the fraud.  Holmes attempts to fit this theory into the existing diminished capacity case law, but the cases

21  she cites are not analogous.  In addition to *Haischer*, she relies on *United States v. Rahm*, 993 F.2d 1405

22  (9th Cir. 1993), *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002), and *United States v. Childress*,

23  58 F.3d 693, 730 (D.C. Cir. 1995) (per curiam).  (Holmes Opp. to Mot. to Exclude Mechanic Test. at 9.).

24  Each of these cases, though, sets forth some connection between the mental condition and the

25  defendant's capacity to form the requisite intent.

26      In *Rahm*, 993 F.2d at 1411–12, the Ninth Circuit held that expert testimony about the defendant's

27  "perceptual difficulties" may have assisted the jury in determining whether the defendant could

28  recognize the counterfeit currency she used in her purchase.  In *Finley*, 301 F.3d at 1010–12, the

GOVT. OMNIBUS REPLY                    5
18-CR-00258 EJD

defendant suffered from "delusional disorder or atypical belief system" which he argued would have "inhibit[ed]" his capacity to understand whether the at-issue financial instruments were fake. And in *Childress*, 58 F.3d at 730, the D.C. Circuit explained that "[t]he proper focus [is] on the proffered link or relationship between the specific psychiatric evidence offered and the mens rea at issue in the case."

The abuse claims here simply have nothing to do with the commission of the fraud. The only purpose of admitting the allegations as part of this defense is to generate sympathy with the jury and improperly bolster Holmes's credibility. The Court should exclude Dr. Mechanic's testimony.

## II.    Holmes's Motion for Severance Is Meritless and the Court May Deny It on this Record

In her opposition, Holmes sets out another reason for the Court to delay deciding on rejoinder: litigation of her motion to sever. But additional litigation is not necessary. There is already an ample factual record on which the Court may deny the motion.

As an initial matter, Holmes's motion is best understood as a claim of mental impairment that she argues will interfere with her ability to communicate with her counsel and participate meaningfully in her trial. (*See* Holmes Mot. to Sever at 5–9.) The case law on competency is therefore informative in evaluating the veracity and merit of her claim. The test for competency has two prongs. *Dusky v. United States*, 362 U.S. 402, 402 (1960). First, "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Id.* Second, "whether he has a rational as well as factual understanding of the proceedings against him."[2] *Id.* Courts should consider three broad categories in assessing mental competency: "defendant's medical history, [her] behavior in and out of court, and defense counsel's statements about the defendant's competency." *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014).

"[T]he district court is in the best position to evaluate claims of physical and mental illness impacting the defendant at trial." *United States v. Turner*, 897 F.3d 1084, 1105 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1234 (2019). "District courts have been given a relatively wide berth in evaluating the effect of a defendant's mental or physical complaints in light of the court's firsthand knowledge of the defendant and [her] situation, gained over time." *Id.* (internal quotation marks omitted). And the

---

[2] A district court's finding that a defendant is competent to stand trial is a question of fact which is reviewed for clear error. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).

district court also has "the ability to sift overstatement from understatement, eyeing the defendant's and the doctors' credibility, and tempering the prosecutors' zeal." *Id.* (internal quotation marks omitted). After nearly two years of court appearances and litigation in this case, the Court is well-positioned to make an assessment of whether any mental impairment would impact Holmes's ability to appear at a joint trial.

First, the Court has observed Holmes and Balwani together in at least eleven court appearances from October 2018 to February 2020.  (*See* Dkt. CR 18-258-EJD.)  At none of these hearings did Holmes exhibit any perceivable psychological distress.  There was no evidence that Holmes's proximity to Balwani triggered any PTSD-associated symptoms, such as "anxiety, panic attacks, fainting, hypervigilance, and numbness."  (*See* Holmes Mot. to Sever at 6.)  Several of these hearings lasted for hours.  (*See, e.g.*, [Rule 12 motions hearing].)  And at least two of these hearings involved extensive argument about the very issues Holmes claims may be triggering, her allegations of abuse.  (*See, e.g.*, [12.2 hearings].)  Throughout, Holmes has appeared composed, engaged, and capable of communicating with her counsel—indeed, she has consulted visibly with them during these appearances.

Second, the factual record before the Court does not support Holmes's claims of severe impairment.  The undisputed facts are ███████████████████████████████████████ ████████████████████████████████████████████████ From 2009 until 2016, they collaborated in running a large, complex company and raised hundreds of millions of dollars together.  She presented with Balwani before the Board of Directors.  (*See* Nov. 20, 2020, Baehr-Jones Decl., Exh. 10, at SEC-TX-000005411–12.)  She took the stage at company-wide events with Balwani. (*See, e.g.*, Baehr-Jones Decl., Exhs. 3–12 (video clips of Holmes and Balwani at company events).) Even if ███████████████████████████████████████████████ ██████████████████████████ Holmes has never presented any PTSD-associated symptoms while appearing next to him—even in high-pressure meetings and large events.  The factual record simply does not support ██████████████████████

The Court also has before it the video recordings of Dr. Binder's exam of Holmes and Holmes's SEC testimony.  (Nov. 30, 2020, Baehr-Jones Delc., Exhs 4a, 4b, 7–9.)  ███████████████████████ ████████████████████████████████████████████████████ She

1  has a clear factual understanding of the alleged offense and her justifications for the specific statements

2  that comprise the alleged misrepresentations.  *See Dusky*, 362 U.S. at 402 (second prong of competency

3  inquiry asks whether defendant has a "rational as well as factual understanding of the proceedings

4  against [her]").  There is also no evidence that she has an inability to consult with counsel—to the

5  contrary, ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  Holmes has presented no medical evidence supporting her claims that sitting near Balwani will render

9  her incompetent to stand trial.  Moreover, defense counsel represented at the initial hearings on the

10 severance motions that Holmes does <u>not</u> have any competency issues—directly contradicting the

11 premise of her motion that she will be unable to consult meaningfully with counsel because of a mental

12 impairment.  Thus all of the factors set forth in *Garza* for the Court to consider—"defendant's medical

13 history, [her] behavior in and out of court, and defense counsel's statements about the defendant's

14 competency"—weigh against a finding of impairment.  751 F.3d at 1134.

15      Finally, it is worth highlighting how much Holmes has to gain from arguing she cannot sit

16 through trial next to Balwani.  Holmes intends to blame Balwani for her crimes as part of her good faith

17 reliance defense.  This defense would be much more difficult to present if Balwani were also present at

18 trial and his counsel were actively refuting her claims.  The Court may consider Holmes's interest in

19 severance in assessing the credibility and merit of her claimed mental impairment.  *Turner*, 897 F.3d at

20 1105–06 ("A defendant's claims of impairment must be considered in the context of the trial as a

21 whole."); *United States v. Benson*, No. 12-CR-00480-YGR-1, 2016 WL 215233, at *1 (N.D. Cal. Jan.

22 19, 2016) (court may consider "secondary gain" of defendant in evaluating claims of incompetency).

23      In sum, the Court is well-positioned to determine that Holmes is capable of appearing at a joint

24 trial with Balwani based on her previous court appearances, the representations of her counsel, and all of

25 the facts already before the Court.

26      Finally, even if the Court would be assisted by additional evidence or argument on this issue,

27 there is no reason the parties cannot accomplish this expeditiously.  Both sides have retained experts

28 who have examined Holmes and could provide testimony at an evidentiary hearing, if necessary.

**III.    Holmes Has Placed Her Mental Condition at Issue and Has Therefore Waived Her Patient-Psychotherapist Privilege**

Holmes noticed a Rule 12.2(b) defense, asserting she may present evidence of current diagnoses of PTSD, anxiety, and depression.  Holmes now claims she will <u>not</u> present these current diagnoses and therefore she has not waived her patient-psychotherapist privilege and can withhold from the government all discovery—including even the name—of her current treating psychotherapist.  But this position contradicts Holmes's claim that evidence of Balwani's abuse is relevant "mental condition" evidence that should be admitted at trial to help corroborate her claim that she believed him.  (As argued above, the government disputes that evidence of abuse is admissible "mental condition" evidence under Holmes's defense theory.)  Holmes cannot on the one hand put her "mental condition" at issue and at the same time withhold basic discovery information like the name of her treating psychotherapist.  The government should be able—at a minimum—to issue a trial subpoena to Holmes's psychotherapist if Holmes intends to present what she claims is "mental condition" evidence in her defense.  *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010) ("[W]aiver is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information related to those issues.")

**IV.    The Public Safety Emergency of the Global Pandemic Weighs in Favor of Rejoinder**

Tragically, the threat of the global pandemic to public safety in the United States has grown exponentially since the Court decided to sever defendants' trial in March 2020.  No one anticipated in March 2020 that nine months later the United States would be losing 3,000 lives a day.  The federal courts have met this emergency by dramatically limiting in-court appearances.  Only three trials have occurred in this district since the pandemic began and the latest county orders have prompted the Court to cease all in-person, public hearings and halt all jury trials until at least January 3, 2021.  Again, no one could have predicted the federal courts in this district would need to close to the public for a second time, halting all jury trials and putting an inevitable strain on the Court's resources once trials resume.

The Court has articulated a series of safety precautions necessary for this trial and the government is confident that a trial under these conditions is possible.  Still, the trial will pose some safety risks and will impose significant burdens on the court staff, the witnesses, the jurors, and the

GOVT. OMNIBUS REPLY                               9
18-CR-00258 EJD

1   public.  It is entirely appropriate for the Court to consider these burdens in deciding rejoinder.

2   Defendants have not argued otherwise—they merely claim that circumstances have not changed

3   materially since March 2020.  This argument fails on its face.  The current reality, sadly, is almost

4   unrecognizable from the one in which these motions were originally argued.  This factor weighs heavily

5   in favor of rejoining the trials.

6                                                    **CONCLUSION**

7           For the foregoing reasons, the Court should exclude the testimony of Dr. Mechanic and rejoin

8   Defendants' trials.

9   DATED:  December 11, 2020                              Respectfully submitted,

10                                                          STEPHANIE HINDS
                                                            Attorney for the United States,
11                                                          Acting Under Authority Conferred
                                                            By 28 U.S.C. § 515
12

13                                                          */s/ Vanessa Baehr-Jones*
                                                            _____
14                                                          VANESSA BAEHR-JONES
                                                            JEFF SCHENK
15                                                          JOHN C. BOSTIC
                                                            ROBERT S. LEACH
16                                                          Assistant United States Attorneys

17

18

19

20

21

22

23

24

25

26

27

28

GOVT. OMNIBUS REPLY                        10
18-CR-00258 EJD