1  JEFFREY B. COOPERSMITH (SBN 252819)
   AMY WALSH (Admitted Pro Hac Vice)
2  STEPHEN A. CAZARES (SBN 201864)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  The Orrick Building
   405 Howard Street
4  San Francisco, CA  94105-2669
   Telephone:     (415) 773-5700
5  Facsimile:     (415) 773-5759

6  Email: jcoopersmith@orrick.com; awalsh@orrick.com;
   scazares@orrick.com
7
   Attorneys for Defendant
8  RAMESH "SUNNY" BALWANI

9

10       UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                            SAN JOSE DIVISION

12

| 13 | UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
|---|---|---|
| 14 | Plaintiff, | **DEFENDANT RAMESH "SUNNY" BALWANI'S RESPONSES TO THE GOVERNMENT'S MOTIONS IN LIMINE** |
| 15 | v. | |
| 16 | RAMESH "SUNNY" BALWANI, | |
| 17 | Defendant. | **Date:  January 6, 2022** **Time:  9:00 a.m.** **CTRM.: 4, 5th Floor** |
| 18 | | |
| 19 | | **Hon. Edward J. Davila** |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 1: BLAMING VICTIMS........ 1

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 2: PUNISHMENT .................. 2

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 3: ADVICE OF
  COUNSEL ........................................................................................................................ 2

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 4: COORDINATION
  WITH JOURNALISTS OR COMPETITORS ...................................................... 3

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 5: GOOD FAITH
  DEFENSE ........................................................................................................................ 3

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 6: ACTIONS POST-
  DEPARTURE FROM THERANOS ...................................................................... 4

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 7: CMS DOCUMENTS ........ 6

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 8: TEXT MESSAGES........... 8

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 9: THERANOS
  EMAILS ........................................................................................................................... 9

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 10: STATEMENTS BY
  THERANOS EMPLOYEES AND AGENTS ...................................................... 9

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 11: DEFENDANT'S
  PRIOR TESTIMONY ..................................................................................................... 11

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 12: DEFENDANT'S
  MOTHER'S BLOOD TEST .......................................................................................... 12

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 13: TESTIMONY
  FROM "NON-PAYING" PATIENTS .......................................................................... 13

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 14: REVERSE *JENCKS*
  AND RULE 16................................................................................................................... 13

RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 15: EXPERT
  DISCLOSURES............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boren v. Sable*,
887 F.2d 1032 (10th Cir. 1989)........................................................................ 10

*Hawthorne Partners v. AT&T Tech., Inc.*,
831 F. Supp. 1398 (N.D. Ill. 1993) ................................................................... 12

*United States v. Barreiro*,
No. 13-CR-00636-LHK, 2015 WL 7734139 (N.D. Cal. Dec. 1, 2015)................... 4

*United States v Benny*,
786 F.2d 1410 (9th Cir. 1986)............................................................................ 4

*United States v. Bensimon*,
172 F.3d 1121 (9th Cir. 1999)............................................................................ 12

*United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010)....................................................................... 10, 11

*United States v. Conners*,
825 F.2d 1384 (9th Cir. 1987)............................................................................ 8

*United States v. Finley*,
301 F.3d. 1000 (9th Cir. 2002)........................................................................... 15

*United States v. Ghilarducci*,
220 F. App'x 496 (9th Cir. 2007) ....................................................................... 4

*United States v. Hickey*,
580 F.3d 922 (9th Cir. 2009).............................................................................. 4

*United States v. Hicks*,
103 F.3d 837 (9th Cir. 1996), *overruled on other grounds by United States v.*
*W.R. Grace*, 536 F.3d 499 (9th Cir. 2008) (en banc)........................................... 14

*United States v. Mayans*,
17 F.3d 1174 (9th Cir. 1994).............................................................................. 8

*United States v. Mixon*,
No. CR-14-00631-001-TUC-JGZ, 2015 WL 13849035 (D. Ariz. Oct. 16,
2015) .............................................................................................................. 12

*United States v. Olano*,
62 F.3d 1180 (9th Cir. 1995).............................................................................. 2

*United States v. Pac. Gas & Elec. Co.*,
 178 F. Supp. 3d 927 (N.D. Cal. 2016) ...................................................................... 6

*United States v. Peters*,
 937 F.2d 1422 (9th Cir. 1991).................................................................................. 15

*United States v. Sager*,
 227 F.3d 1138 (9th Cir. 2000).................................................................................... 3

*United States v. Williams*,
 No. 3:13-cr-00764-WHO-1, 2017 WL 4310712 (N.D. Cal. Sept. 28, 2017) ........................... 2

**Statutes and Court Rules**

Fed. R. Crim. P. 16.............................................................................. 13, 14, 15, 16

Fed. R. Crim. P. 26.2.............................................................................. 13, 14

Fed. R. Evid. 106.............................................................................. 8, 9, 11

Fed. R. Evid. 401.............................................................................. 6, 8, 9, 13

Fed. R. Evid. 402.............................................................................. 6, 13

Fed. R. Evid. 403.............................................................................. 5, 6, 8, 9, 13

Fed. R. Evid. 404.............................................................................. 8, 9

Fed. R. Evid. 801.............................................................................. 6, 9, 10, 11

Fed. R. Evid. 802.............................................................................. 6

Fed. R. Evid. 803.............................................................................. 6, 7, 9, 12

Fed. R. Evid. 901.............................................................................. 9, 15

Fed. R. Evid. 902.............................................................................. 9

**RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 1: BLAMING VICTIMS**

The government's motion to preclude blaming a defendant's purported victims should be denied. It is unnecessary because Mr. Balwani does not intend to argue that victims are to blame in this case.

The government asserts that an in limine ruling is necessary based on certain instances where Ms. Holmes' counsel purportedly examined witnesses "along these lines." Dkt. 1155 at 1. In what the government described as its "strongest example" of impropriety, counsel for Holmes asked whether, "often in due diligence on tech companies, people do pretty detailed reviews of intellectual property…?" Ex. 45 (10/27/21 Trial Tr. 4879:13–15 (referring to 10/26/21 Trial Tr. 4784:16–18)).

The government did not object to these lines of examination during the respective witnesses' testimony. The testimony tracked the Court's pretrial ruling that such evidence may be relevant to the element of materiality or the alleged victims' credibility. Dkt. 798 at 81. When the government raised the issue after the fact during the Holmes trial, the Court rightly contrasted unobjectionable questioning and testimony about investor decision-making with an improper victim-blaming argument. As the Court explained, "the time to object" to improper victim blaming "would be in closing arguments." Ex. 45 (11/3/21 Trial Tr. 5370:5–6). Mr. Balwani's counsel understands that victim-blaming would be improper during closing arguments, and does not intend to ask questions designed to set up a victim-blaming argument, so there is no basis for in limine relief on this issue. Mr. Balwani must of course be able to ask questions designed to get at the complex issues surrounding materiality for the host of sophisticated investor witnesses the defense expects the government will call.

The defense does not object to the government's request that the Court adopt its prior ruling about a selective prosecution defense. Dkt. 798 at 82–83. But the Court's ruling noted that the government's request to preclude Ms. Holmes from introducing a defense focused on the culture of Silicon Valley startups was overbroad. *Id.* at 82. The Court also noted that the evidence "will undoubtably touch on the nature of startup companies, including financing, funding, industry protocols, and other issues common to the technology industry in Silicon Valley," and

1   ruled that "[t]he Court will permit general fair comment on the marketing of new ventures,

2   including statements concerning investment and the nature of the firm, product or technology."

3   *Id.* at 82–83. Mr. Balwani agrees that the same ruling should apply in his trial.

4   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 2: PUNISHMENT**

5    Mr. Balwani will not make any overt references to punishment in statements, questions, or

6   arguments before the jury. Nor does he object to the Court's nuanced ruling on this issue in the

7   Holmes trial. There, the Court explained that commentary "on a defendant's potential penalty or

8   punishment 'draw[s] the attention of the jury away from their chief function as the sole judges of

9   the facts, opens the door to compromise verdicts, and confuses the issues to be decided.'"

10   Dkt. 798 at 83 (quoting *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995)). But the

11   Court also observed that subtle references to the importance of the proceedings or the seriousness

12   of the case to the defendant are "not really referencing punishment." *Id.* at 84 (quoting *United*

13   *States v. Williams*, No. 3:13-cr-00764-WHO-1, 2017 WL 4310712, at *8 (N.D. Cal.

14   Sept. 28, 2017)). The Court ruled in the Holmes trial that comments about the serious task facing

15   the jury and the importance of the jurors' oath are appropriate and that the defense could make

16   "careful, cautious, and appropriate comments when talking about the nature of the case to the

17   jury." *Id.* Mr. Balwani asks for the same ruling. His counsel understands the Court's instruction

18   on this issue and will abide by it.

19   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 3: ADVICE OF**
**COUNSEL**
20

21    Mr. Balwani does not object to the Court's adopting its decision from the Holmes trial

22   deferring whether the defense may raise an advice-of-counsel defense. *See* Dkt. 798 at 86. The

23   Court ruled that, before "invoking an advice-of-counsel defense, [the defendant] must establish

24   the foundational prerequisites for the advice-of-counsel defense." *Id.* If the government's request

25   is restricted to seeking this ruling—as it appears on its face to be—then Mr. Balwani does not

26   oppose it. But as with Ms. Holmes' trial, the government has included several attorneys who

27   advised Theranos and dozens of communications from Theranos' attorneys on its witness and

28   exhibit list. Mr. Balwani cannot know without seeing the government's case-in-chief whether a

1   formal advice-of-counsel defense is appropriate. Nor can he know whether any other statements

2   made by attorneys are relevant to Mr. Balwani's state of mind, consistent with the Federal Rules

3   of Evidence. Mr. Balwani will conform his presentation to what the Rules permit and does not

4   oppose the ruling that the Court entered in the Holmes case on this issue.

5   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 4: COORDINATION**

6   **WITH JOURNALISTS OR COMPETITORS**

7        The government seeks to preclude any defense argument that the government coordinated

8   with journalists or Theranos' competitors in making its charging decisions. The Court granted a

9   narrow preclusion in the Holmes trial, and it should do the same here.

10       The Court ordered that the defense could not argue that "the charging decisions were

11  influenced by 'coordination,'" because there has so far been no evidence of coordination in

12  particular. Dkt. 798 at 88.  But the Court explained that "[e]vidence regarding the Government's

13  investigation may be relevant and admissible at trial," including about the investigation's "details,

14  thoroughness, or good faith." *Id.* at 87–88 (citing *United States v. Sager*, 227 F.3d 1138 (9th

15  Cir. 2000)). Thus, the Court should grant the government's motion only in the same limited

16  respect it did for Ms. Holmes.

17       **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 5: GOOD FAITH**

18       **DEFENSE**

19       The government asks the Court to adopt its prior ruling from the Holmes trial precluding

20  argument that Mr. Balwani had a good-faith belief that alleged investor-victims would be repaid

21  or otherwise suffer no harm. Dkt. 1155 at 5. Mr. Balwani does not challenge the Court's prior

22  ruling to "preclude only the argument that [Mr. Balwani] knowingly made misrepresentations but

23  had a good-faith belief that [his] alleged victims would be repaid or otherwise suffer no harm."

24  Dkt. 798 at 90. So long as the government recognizes, as it did in connection with Ms. Holmes'

25  case, that Mr. Balwani may argue that he "thought [he] was telling the truth" about Theranos,

26  Dkt. 726 at 5, and thus had a good-faith belief in any representations he made about the company,

27  Mr. Balwani does not oppose the government's request.

28       But the Court should reject any attempt by the government to seek a broader ruling. For

DEFENDANT BALWANI'S RESPONSES TO THE
GOVERNMENT'S MOTIONS IN LIMINE
CASE NO. CR-18-00258-EJD

1   instance, contrary to the government's assertions, Mr. Balwani should be permitted to argue that

2   he "viewed the amounts he … collected from [the alleged] victims … as genuine investments that

3   he intended to make profitable," Dkt. 1155 at 5, because it shows he did not harbor an intent to

4   defraud. *See United States v. Hickey*, 580 F.3d 922, 931 (9th Cir. 2009) ("[Defendant] is entitled

5   to advance the claim that he did not intend to defraud the victims…."); *United States v.*

6   *Ghilarducci*, 220 F. App'x 496, 501 (9th Cir. 2007) (defendant's "good faith belief that his

7   program was legitimate" can undermine the element of "specific intent to defraud"); *United*

8   *States v. Barreiro*, No. 13-CR-00636-LHK, 2015 WL 7734139, at *1 (N.D. Cal. Dec. 1, 2015)

9   ("Defendants are entitled to argue that they lacked intent to defraud because they believed, in

10   good faith, that any alleged misrepresentations were true and that [the fraudulent company] was a

11   legitimate business.").

12       Mr. Balwani recognizes that there may be a fine line in some cases between an improper

13   argument—that a defendant honestly believed that a scheme he knew to be fraudulent would

14   eventually be profitable—and a proper argument—that he honestly believed that representations

15   about eventual profitability were true. *See United States v Benny*, 786 F.2d 1410, 1417 (9th

16   Cir. 1986) ("While an honest, good-faith belief in the truth of the misrepresentations may negate

17   intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no

18   defense at all."). He does not oppose the Court's adopting its prior ruling from the Holmes trial,

19   but that ruling should not be extended to preclude Mr. Balwani from offering a proper defense

20   about his good-faith belief in the legitimacy, value, and prospects of Theranos, negating any

21   alleged intent to defraud.

22   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 6: ACTIONS POST-
     DEPARTURE FROM THERANOS**

23

24       The government asks the Court to preclude any reference to actions taken by Theranos

25   after Mr. Balwani left the company in mid-2016.[1] According to the government, Theranos'

26   _____

27   [1] Mr. Balwani stepped down from his position as President and Chief Operating Officer of
     Theranos in May 2016, and he formally cut ties with the company on July 7, 2016. It is unclear
28   from the government's motion whether it seeks to exclude evidence of Theranos' actions as of

1    actions taken after Mr. Balwani departed are irrelevant absent a "non-speculative connection

2    between those actions and directives made by Defendant." Dkt. 1155 at 6–7. The government also

3    argues that even if such actions are relevant, they should be excluded under Rule 403 because the

4    jury may "conflate actions taken by Theranos and co-Defendant Holmes without any showing

5    that Defendant provided input or otherwise influenced such actions." *Id.* at 7.

6            Mr. Balwani does not dispute that actions taken by Theranos (or Theranos executives like

7    Ms. Holmes) must be tied in some way to him before they are relevant. But that does not justify a

8    categorical ruling precluding all possible references to Theranos' (or Ms. Holmes') actions after

9    Mr. Balwani's resignation. The government itself recognizes that such evidence may be relevant

10   if the defense shows that Mr. Balwani's "input" or "influence[]" "affected" the company's actions

11   after his departure. *Id.* at 7. Such post-employment evidence may also be relevant if it bears on

12   events that occurred while Mr. Balwani worked at Theranos. The government also acknowledges

13   that the Court should "examine[] *all the evidence*" before determining whether the defense has

14   made the requisite connection between Mr. Balwani and Theranos' "post-employment actions."

15   *Id.* at 6 (emphasis added). Because this foundational connection cannot be assessed independent

16   of "all the evidence," *id.*, there is no basis for the Court to make a blanket relevancy ruling now.

17           It would be even more inappropriate to universally exclude this evidence on Rule 403

18   grounds. The government's Rule 403 argument assumes that the defense will not make any

19   showing of relevance. *See* Dkt. 1155 at 7 ("Admitting evidence about the company's actions after

20   Defendant resigned allows the defense to conflate actions taken by Theranos and co-Defendant

21   Holmes *without any showing that Defendant provided input or otherwise influenced such*

22   *actions*." (emphasis added)). Of course, if the defense shows that Theranos' later actions bear on

23   Mr. Balwani's conduct, knowledge, or intent before he resigned, then the risk of "conflat[ing]

24   actions taken by" others is eliminated. *Id.* Moreover, as the Court has explained, "a Rule 403

25   analysis cannot be conducted in a vacuum without knowing how and for what purpose the

26   evidence is offered." Dkt. 798 at 47. Because the government has identified no particular

27   _____

28   May or July. It will be necessary to resolve this issue only if the parties offer evidence that falls
     between the two dates.

1   evidence that should be excluded under Rule 403, the Court should defer ruling "until trial, so

2   that questions of foundation, relevancy, and potential prejudice may be resolved in proper

3   context." Dkt. 798 at 4 (quoting *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941

4   (N.D. Cal. 2016)).

5           The Court should thus deny the government's motion to categorically "exclude all

6   evidence of actions taken by Theranos or co-Defendant Holmes after Defendant left the

7   company." Dkt. 1155 at 7.

8           **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 7: CMS DOCUMENTS**

9           In the Holmes trial, the government sought to admit the Centers for Medicare and

10  Medicaid Services' ("CMS") January 25, 2016 letter and attached Form CMS-2567 Statement of

11  Deficiencies (collectively, the "January 2016 CMS Report" or "Report") in its entirety. Dkt 588.

12  After months of litigation, including multiple rounds of briefing and argument, as well as

13  redactions proposed by Ms. Holmes, the government ultimately agreed to redact the Report by

14  admitting only part of it through the testimony of Dr. Kingshuk Das—the whole January 25, 2016

15  "immediate jeopardy" letter, and an excerpt of the Form CMS-2567. Holmes Tr. Ex. 4621A;

16  Holmes Tr. Ex. 4621B; *see also* Dkts. 574, 588, 675, 717, 798, 897, 906, 989. And yet, against

17  Mr. Balwani, the government filed the present motion to admit the whole Report and to re-litigate

18  the issues with no new legal or factual reason to do so. Dkt. 1155 at 7.

19          Mr. Balwani opposes the government's motion to admit the full January 2016 CMS

20  Report for the same reasons Ms. Holmes' articulated under Rules 401–403 and 801–803, as well

21  as in her motion to partially redact certain government agency reports, including the January 2016

22  CMS Report. *See* Dkts. 574, 717, 897. To begin, the government should be able to admit no more

23  than the excerpts it did in Ms. Holmes' trial.

24          Mr. Balwani also objects to admission of the January 2016 CMS Report because portions

25  of it are inadmissible. Dkt. 1156 at 1–11. Some findings relate to regulatory non-compliance in

26  testing on unmodified commercial devices, and so are irrelevant to the charges in the Indictment.

27  *Id.* Other findings in the 2016 CMS Report relate to non-compliance with regulations about

28  laboratory practices, documentation and training issues, as well as laboratory management issues,

all of which constituted civil regulatory violations. While these findings may tend to show that Theranos' lab in general suffered from various issues, none goes to the allegations here: that Theranos' technology—the Theranos devices—could not consistently producing accurate and reliable results. *Id.*; Third Superseding Indictment ("Indictment" or "TSI"), Dkt. 469, ¶¶ 12(A), 12(C), 12(F), 12(H), 15, 16, 17(C). For that reason, Mr. Balwani has proposed redactions to those exhibits. Dkt. 1156, Exs. 17–18.

Similarly, CMS' immediate jeopardy finding is irrelevant to anything alleged in the Indictment because it turned on tests run on unmodified commercial devices, not Theranos' own technology. Dkt. 1156 at 1–11. Unless the government can show that any CMS deficiency finding was specifically based upon testing on Theranos' own devices and tests, any such findings are irrelevant to the charges in the Indictment. In fact, the government makes the same argument in its twelfth motion in limine on Mr. Balwani's mother's blood test. *See* Dkt. 1155 at 19–20 ("Defendant Balwani has not provided basic foundational evidence demonstrating whether his mother's blood test from Theranos would tend to prove the accuracy or reliability of Theranos's proprietary blood analyzer" and "Defendant Balwani has not even provided evidence to show whether his mother received a fingerstick test rather than a venous draw blood test, and/or whether the test was run on Theranos proprietary blood analyzer or a regular FDA-approved machine."). Further, any minuscule probative value about the capability of the Theranos devices is far outweighed by the unfair prejudice, and risk of confusion of issues and misleading the jury about what is at issue.

Finally, contrary to the government's assertions, the CMS Report cannot go to Mr. Balwani's state of mind or knowledge when he allegedly misrepresented the capability of Theranos' technology because the Report issued long after Mr. Balwani allegedly made any of those misrepresentations. The government fails to proffer—other than through conclusory assertions—how Mr. Balwani's knowledge of the CMS findings in 2016 can possibly be probative of his state of mind before 2016.

For these reasons, and for the reasons in Dkts. 574, 717, 897, Mr. Balwani asks the Court to exclude the entire CMS Report. But if the Court finds some portions of the CMS Report

relevant, the redacted versions filed by Mr. Balwani as Dkt. 1156, Exs. 17–18 are the most that should be admitted.

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 8: TEXT MESSAGES

The government asks the Court to adopt all its prior rulings from the Holmes trial admitting text messages between Ms. Holmes and Mr. Balwani. It asks the Court to admit—as relevant, non-hearsay, and authentic—Trial Exhibit 5387A or, alternatively, Trial Exhibit 5387D (comprising Trial Exhibit 5387A and Ms. Holmes' Rule 106 additions).[2] Mr. Balwani opposes their wholesale admission.

First, several texts should be excluded under Rules 403 and 404. Mr. Balwani has highlighted all such texts in Exhibit 49 to the concurrently filed Coopersmith Declaration.[3] Any possible probative value of these texts is far outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. They have nothing to do with the case against Mr. Balwani. *See, e.g.*, Dkt. 798 at 69–70 (excluding certain disparaging chants); Dkt. 1156 at 53–54 (requesting same relief). The attached highlighted texts are also inadmissible under Rule 404(a), are inadmissible for any Rule 404(b) purpose, and in any event do not reference any of the topics included in the government's required Rule 404(b) notice. Fed. R. Evid. 404; *see generally United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994).

Second, the government has not met its burden to establish the relevance of the remaining texts. *See United States v. Conners*, 825 F.2d 1384, 1390 (9th Cir. 1987) (proponent of the evidence has the burden of proving its relevance). Unless the government lays a sufficient foundation tying each text string to the capability of "Theranos's technology" to consistently produce accurate and reliable results (*see* TSI, Dkt. 469, ¶ 16), or to some other issue relevant in the case, they should be excluded under Rule 401. Many of the texts in Trial Exhibit 5387A concern the management of Theranos' labs, personnel issues, and other issues unrelated to the

---

[2] Mr. Balwani is not bound by Ms. Holmes' position as to Rule 106 additions and is proposing his own 106 additions in this response. Accordingly, we discuss only Exhibit 5387A because Exhibit 5387D does not bind Mr. Balwani.

[3] Mr. Balwani has separately challenged one particular text string in his Motion in Limine No. 6. Dkt. 1156 at 40–44.

1    capability of Theranos' technology. Moreover, many of the text messages are ambiguous, further

2    obscuring their relevance. Because the government has not laid the requisite foundation, the Court

3    should not issue a blanket order admitting all of Trial Exhibit 5387A.

4         Finally, if the Court admits all of Trial Exhibit 5387A, Mr. Balwani proposes his own

5    additions "that in fairness ought to be considered at the same time." Fed. R. Evid. 106. His

6    proposed Exhibit 5387H—attached as Exhibit 50 to the Coopersmith Declaration—reflects the

7    government's offered exhibit (5387A) plus Mr. Balwani's proposed Rule 106 additions, which

8    are highlighted. If the Court grants any of the relief Mr. Balwani seeks under Rules 401, 403, and

9    404, Mr. Balwani will formulate a new exhibit comprising the texts the government may

10   introduce plus his proposed Rule 106 additions.

11   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 9: THERANOS EMAILS**

12        To the extent the government merely seeks a ruling that emails *can* be business records,

13   Mr. Balwani has no objection. *See* Dkt. 1155 at 16 ("Thus, the mere fact that the business record

14   is in the form of an email is no categorical bar to admissibility."). Of course, there may be some

15   emails the government offers as evidence that do not fall within Federal Rule of Evidence 803(6),

16   the business-records exception to the hearsay rule. Mr. Balwani reserves the right to object at trial

17   if the government cannot or does not lay a proper foundation. Further, the admissibility of any

18   email does not depend on what Bates number appears on the document, as the government

19   appears to suggest. *See* Dkt. 1155 at 14. Rather, admissibility of an email depends on whether it

20   falls within Rule 803(6), another hearsay exception, or is offered for a non-hearsay purpose, as

21   well as whether it can be authenticated at trial under Rules 901 and 902.

22   **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 10: STATEMENTS BY**
     **THERANOS EMPLOYEES AND AGENTS**
23

24        The government asks the Court to globally admit "statements by Theranos agents and

25   employees, particularly within the clinical lab, on matters within the scope of that relationship

26   and while it existed." Dkt. 1155 at 18. But as in the Holmes matter, the government has identified

27   no particular statements it seeks to admit and instead asks for a sweeping ruling under Federal

28   Rule of Evidence 801(d)(2)(D). The Court has explained that "whether statements are admissible

under Rule 801(d)(2)(D)" requires "a fact-based inquiry applying common law principles of agency." Dkt. 798 at 96 (quoting *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010)). This analysis cannot be conducted in a vacuum. Thus, as in the Holmes case, "it is premature for the Court to issue a categorical ruling admitting any and all testimony of Theranos agents and employees on matters within the scope of that relationship and while it existed." *Id.* at 95.

The government argues for a different outcome here, claiming that "significant trial evidence introduced in the Holmes trial has proven the close relationship between Defendant Balwani and employees within Theranos's clinical laboratory." Dkt. 1155 at 18. Even putting aside that Mr. Balwani was not a party in that trial and had no chance to argue or object to anything, the only evidence the government identifies from the Holmes trial is an organizational chart "showing that Defendant Balwani was the direct report of the Laboratory Director, to whom several senior lab employees reported," along with testimony of Dr. Dhawan discussing the roles of various lab personnel. *Id.* (citing Dkt. 1133-4 and Trial Transcripts for 11/14/21 & 11/15/21). As the Court recognized, "an employee's 'mere occupation of a subordinate position in the corporate chain of command' is sufficient to establish an 'agency relationship' for the purpose of … Rule 801(d)(2)." Dkt. 798 at 95 (quoting *Boren v. Sable*, 887 F.2d 1032, 1041 (10th Cir. 1989)); *see id.* at 96 ("Whether the statements of a corporate employee may be admitted against a corporate officer depends upon the relationship between the employee and the officer…."). Thus, the evidence introduced about Theranos' corporate structure does not render the government's motion any less premature.

Nor does the government's focus on employees within the clinical lab. As in the Holmes matter, "[t]he Government does not cite … any case supporting the admission of statements of hundreds of employees to a corporate [officer] under Rule 801(d)(2)(D)." Dkt. 798 at 95–96. Theranos' clinical lab was "a big operation" with well over a hundred employees. Ex. 45 (10/15/2021 Trial Tr. 3823:5–6 (Dr. Dhawan's testimony that "a large number of people" worked in the lab)); *see also* Dkt. 1133-4 at 7 (listing more than 160 employees assigned to Theranos' CLIA laboratory). Whether in or outside the clinical lab, "Theranos employees were not Holmes' [or Balwani's] agents; they were Theranos' agents." Dkt. 798 at 95. To prove otherwise, the

1   government must show that "both the principal and the agent … manifest[ed] assent to the

2   principal's right to control the agent." *Id.* at 96 (quoting *Bonds*, 608 F.3d at 506). Here, like in the

3   Holmes case, "[t]he Government has not attempted to make this showing for all of the hundreds

4   of Theranos employees" whose unspecified statements it seeks to admit under Rule 801(d)(2)(D).

5   *Id.*

6           The Court should therefore deny and defer ruling on the government's motion. The Court

7   can apply Rule 801(d)(2)(D) as necessary at trial. At that time, Mr. Balwani also can raise any

8   evidentiary objections to particular statements of Theranos agents or employees that the

9   government may seek to introduce.

10          **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 11: DEFENDANT'S**
                                    **PRIOR TESTIMONY**
11

12          Invoking the rule against hearsay, the government prematurely seeks to prevent

13   Mr. Balwani from offering his own prior statements at trial. The admissibility of those statements,

14   however, is not ripe for adjudication. The government has identified no particular statements of

15   concern, and the admissibility of such statements will depend on context and purpose at trial.

16   Moreover, Mr. Balwani has not yet decided whether to testify, a decision that could alter the

17   analysis of which statements are admissible.

18          The Court recognized all this in ruling on the analogous motion in the Holmes trial. *See*

19   Dkt. 798 at 98–99. But although the Court nominally granted that motion, it denied blanket in

20   limine relief, noting the need for "additional context" at trial. *Id.* at 99 ("Without additional

21   context, the Court cannot say that a currently unidentified out-of-court statement by Holmes

22   would be hearsay, let alone that an exception to hearsay does not apply. … The Government may

23   object in due course to specific evidence submitted at trial.").

24          Mr. Balwani's prior statements might be admissible for any number of reasons—as a prior

25   consistent statement, Fed. R. Evid. 801(d)(1)(B), as state-of-mind evidence, Fed. R. Evid. 803(3),

26   or as the remainder of an admissible statement, Fed. R. Evid. 106, to name just a few. There is no

27   relief that would be appropriate for the Court to grant at this stage other than to state that it will

28   apply the rule against hearsay and its exceptions as needed. As a result, any decision on the

1    government's motion should be deferred to trial.

2    **RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 12: DEFENDANT'S**
3                              **MOTHER'S BLOOD TEST**

4          The government moves in limine to exclude evidence of a particular blood test result

5    because "foundational evidence demonstrating whether [the blood test] from Theranos would

6    tend to prove the accuracy or reliability of Theranos's proprietary blood analyzer" and a

7    demonstration of its "foundational relevance to the charged conduct in the Third Superseding

8    Indictment" is lacking. Dkt. 1155 at 19–20. Mr. Balwani agrees. Where foundation cannot be laid

9    to show that Mr. Balwani's mother—or any patient—"received a fingerstick test rather than a

10   venous draw blood test, and/or whether the test was run on Theranos proprietary blood analyzer

11   or a regular FDA-approved machine" the evidence should be excluded. Dkt. 1155 at 20; *see also*

12   Dkt. 1156 at 1–11. The same applies to any evidence going to accuracy and reliability of non-

13   Theranos technology.

14          Still, it would be improper and untimely to preclude Mr. Balwani from offering any piece

15   of evidence before his trial has even begun—before he has seen the government's case against

16   him and before he has had the chance to lay necessary foundation. *United States v. Mixon*,

17   No. CR-14-00631-001-TUC-JGZ, 2015 WL 13849035, at *1 (D. Ariz. Oct. 16, 2015) ("A district

18   court also has discretion to defer evidentiary rulings until trial" and "evidentiary rulings should be

19   deferred until trial so that questions of foundation, relevancy and potential prejudice may be

20   resolved in proper context." (quoting *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th

21   Cir. 1999) and *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D.

22   Ill. 1993) respectively)). The same cannot be said for the government's intention to call Patients

23   E.T. and B.B. and to present excerpts of the 2016 CMS Report—the government cannot lay

24   foundation to admit this evidence because there can be no reasonable dispute that these

25   evidentiary offerings, among others, are irrelevant to the accuracy and reliability of Theranos'

26   technology. *See* Dkt. 1156 at 1–11.

27          The defense agrees that evidence going to the accuracy and reliability of patient tests is

28   not relevant unless it goes to the accuracy and reliability of Theranos' technology, not unmodified

                                                                  - 12 -

commercial technology. Mr. Balwani acknowledges that whether he will be able to admit evidence of his mother's blood tests in a potential defense case will depend on whether he can lay that foundation at the appropriate time.

## RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 13: TESTIMONY FROM "NON-PAYING" PATIENTS

As it did in the Holmes trial, the government seeks to admit testimony from non-paying patients. As Mr. Balwani has argued in his own motion, any anecdotal evidence about patients' experiences—including non-paying patients—is irrelevant to the charges brought here concerning systemic inaccuracy or unreliability. *See* Dkt. 1156 at 56. Testimony from non-paying patients would be especially irrelevant to and misleading in this fraud case, and it should be excluded under Rules 401–403 as described in Mr. Balwani's motion. *Id.* Testimony from any non-paying patient is also excludable if the government cannot lay a foundation that the patient test at issue was run on Theranos technology. *See id.* at 1–11.

If the Court is inclined to admit anecdotal patient testimony, it should do so with at least the same restriction it adopted in the Holmes trial: "Patients, physicians, and other witnesses who may testify about receiving results will not be permitted to testify about any physical, financial, or emotional harm they may have experienced beyond simply paying for the test." Dkt. 798 at 99.

## RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 14: REVERSE *JENCKS* AND RULE 16

Mr. Balwani understands his obligations under Federal Rules of Criminal Procedure 16(b) and 26.2 and will comply with them. But the government's motion requests—or seems to request—other relief not required by any statute, Rule, or case.

To start, the parties' respective disclosure obligations are not identical. The government must produce documents that are "material to preparing the defense" *or* which "the government intends to use … in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). The government also has constitutional obligations to disclose other material, like *Brady* and *Giglio* information, to the defense. Mr. Balwani's reciprocal obligation, by contrast, extends only to those items within his possession, custody, or control that he intends to use in his case-in-chief.

*See* Fed. R. Crim. P. 16(b)(1)(A). Moreover, Rule 16 explicitly excludes from the defense's

disclosure obligations any statement made to a defendant's attorney or agent by a government or

defense witness or a prospective government or defense witness. *See* Fed. R. Crim. P. 16(b)(2).

As for reverse *Jencks*, Rule 26.2 requires production of "any statement of the witness,"

which is defined by the Rule as "a written statement that the witness makes and signs, or

otherwise adopts or approves," or a substantially verbatim recording or transcript of the witness's

oral statement. *See* Fed. R. Crim. P. 26.2(a) & (f). Rule 26.2 also requires the production of those

statements after the witness's direct examination. While Mr. Balwani does not necessarily intend

to wait for after direct examinations of defense witnesses to provide any Rule 26.2 material that

may exist to the government, the government's request is premature given that Mr. Balwani's

trial has not even begun.

Despite these limitations on the information the government is entitled to, Mr. Balwani

has identified potential trial exhibits—including those exhibits listed on the government and

Ms. Holmes' exhibit lists and other exhibits offered or admitted in Ms. Holmes' trial. He has also

produced other documents not identified by any other party. In fact, Mr. Balwani has produced a

potential witness's signed statement well before Rule 26.2's deadline. *See* Dkt. 1158 (Sonnier

Declaration). Mr. Balwani's productions include documents underlying his disclosures of

potential defense experts. *See, e.g.*, Ex. 46. In other words, Mr. Balwani has honored and will

continue to honor his obligations under the Federal Rules. The government has yet to call its first

witness, much less completed its case-in-chief. What witnesses and exhibits Mr. Balwani "intends

to use" in his own case-in-chief—if he presents one at all—may change in response to the

government's presentation. *See United States v. Hicks*, 103 F.3d 837, 841 (9th Cir. 1996) (holding

that a district court that orders the "defendant to exchange witness lists and summaries of

anticipated witness testimony in advance of trial has exceeded its authority under Rule 16 ...."),

*overruled on other grounds by United States v. W.R. Grace*, 536 F.3d 499, 512 (9th Cir. 2008) (en

banc). Mr. Balwani will produce any other documents or reverse *Jencks* material as required by

the Rules.

Last, the government asks the Court to preclude Mr. Balwani "from using documents

stamped with the Bates prefix HOLMES-, unless [he] informs the government how [he] received such documents from his co-Defendant." Dkt. 1155 at 23. This request has no basis in law. The disclosure rules require production of documents and records, not explanations of how the defense obtained them. If the government chooses to challenge the authenticity of any exhibit Mr. Balwani offers, that challenge will hinge on Federal Rule of Evidence 901, which provides examples of ways to authenticate evidence. Nothing requires him to disclose how he obtained any particular document or information. And as for the HOLMES prefix documents that Mr. Balwani referenced as possible exhibits in his own trial, documents bearing that prefix were admitted in Ms. Holmes' trial and were thus made available on the Court's public website.

In sum, the government moves to compel Mr. Balwani to disclose information to which it is not entitled. The Court should thus deny the government's motion.

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 15: EXPERT DISCLOSURES

The Court should deny the government's motion to exclude Mr. Balwani's three potential expert witnesses due to alleged insufficient disclosure. Mr. Balwani's timely served expert disclosures met the requirements of Federal Rule of Criminal Procedure 16(b)(1)(C). Mr. Balwani has also served a supplemental disclosure that remedies any alleged deficiencies.

The government acknowledges that Mr. Balwani timely served his expert disclosures in November. Dkt. 1155 at 23. Yet despite its apparent dissatisfaction with those disclosures, the government never met and conferred with the defense, and instead moved to exclude based on a claim of insufficient disclosure a week later. In any event, the government's motion is now moot because Mr. Balwani gave the government a detailed declaration for one of his experts (Richard Sonnier) in his November 19, 2021 filing, *see* Dkt. 1158, and a supplemental disclosure containing detailed information about the other two experts on December 3, 2021. Ex. 46.

Excluding the potential experts is not the proper remedy for the alleged insufficient disclosures. *See United States v. Peters*, 937 F.2d 1422, 1424–26 (9th Cir. 1991) (holding that excluding defense expert without any discovery violation was prejudicial error); *see also United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (holding that excluding expert testimony

1  was improper when the disclosure met the minimum requirements and government failed to

2  request a more definite statement). As discussed below, the Court has recognized and applied this

3  principle in the Holmes case, and should apply the same standard here. *See, e.g.*, Dkt. 798 at 55–

4  56 (ruling that even the representation that the government would supplement its disclosures

5  obviated the need to exclude testimony based on inadequate disclosure).

6          The government served its initial expert disclosures in the Holmes case in March 2020.

7  Dkt. 580-3. Later, the defense repeatedly requested that the government supplement its

8  disclosure. *See, e.g.*, Dkt. 561 at 10–12 (detailing several requests for adequate disclosures). The

9  government waited two months before responding that its disclosures were "more than sufficient"

10 and refusing to provide any more information. Dkt. 582-4. After Ms. Holmes moved to compel

11 adequate disclosure, the Court noted that "it may be necessary to have the government offer

12 additional information" on the proffered expert testimony. Ex. 47 (7/20/20 Hr'g Tr. 59:12–18).

13 The government later tried to supplement its disclosure in September 2020. Dkt. No. 580-4.

14         Continuing to find the government's supplemental disclosure insufficient, Ms. Holmes

15 moved in limine on the same topic. Dkt. 561. The government's responded by supplementing its

16 expert disclosures again. Dkt. No. 660 at 1 (noting the government was "working to collect the

17 additional details requested by Defendant" and "intends to supplement its disclosure as soon as it

18 obtains the necessary information from its witnesses"). What's more, the government asked the

19 Court to "reserve ruling" on Holmes' motion while the government worked to finish this task. *Id.*

20 at 10. While the Court ultimately agreed with Ms. Holmes that the government's expert

21 disclosures were inadequate, it found—"[i]n light of the Government's representation [that it

22 would further supplement the disclosures]"—"no need to exclude any testimony on the bases of

23 an inadequate disclosure." Dkt. 798 at 55–56.

24         While Mr. Balwani maintains that his November disclosure was sufficient under

25 Rule 16(b)(1)(C), he provided more information on November 19 and December 3, 2021.

26 Dkt. 1158; Ex. 46. These new disclosures gave the government supplemental summaries of the

27 potential experts' expected testimony and additional bases for their opinions—including lists of

28 materials the experts reviewed in connection with forming their opinions. This exceeds what the

1    government has provided in its expert disclosures, for example for Dr. Kingshuk Das.[4]

2         Thus, the government's motion should be denied.

3

4    DATED: December 6, 2021                 Respectfully submitted,

5                                           ORRICK HERRINGTON & SUTCLIFFE LLP

6
                                           By:  */s/ Jeffrey B. Coopersmith*
7                                               Jeffrey B. Coopersmith

8                                               Attorney for Defendant
9                                               RAMESH "SUNNY" BALWANI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28   [4] The government has failed to list the materials Dr. Das reviewed in forming his opinion. *See* Ex. 48.