STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAMESH "SUNNY" BALWANI, <br><br> Defendant. | Case No. 18-CR-00258 EJD <br><br> UNITED STATES' REPLY TO DEFENDANT RAMESH "SUNNY" BALWANI'S RESPONSES TO UNITED STATES' MOTIONS *IN LIMINE* <br><br> Date: January 6, 2022 <br> Time: 9:00 a.m. <br> Court: Hon. Edward J. Davila |

U.S. REPLY TO BALWANI'S RESPONSES TO U.S.' MOTIONS *IN LIMINE*,
CASE NO. 18-258 EJD

# TABLE OF CONTENTS

I.   REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENTS'S MOTION *IN LIMINE* NO. 1: BLAMING VICTIMS ................................................................. 1

II.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 2: PUNISHMENT ........................................................................ 2

III. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 3: ADVICE OF COUNSEL ........................................................... 2

IV.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 4: COORDINATION WITH JOUNALISTS OR COMPETITORS ........................ 3

V.   REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 5: GOOD FAITH DEFENSE ................................................................. 3

VI.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 6: ACTIONS POST-DEPARTURE FROM THERANOS .................................. 4

VII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 7: CMS DOCUMENTS ................................................................... 4

VIII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 8: TEXT MESSAGES ..................................................................... 6

IX.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 9: THERANOS EMAILS .................................................................. 8

X.   REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 10: STATEMENTS BY THERANOS EMPLOYEES AND AGENTS ................... 9

XI.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 11: DEFENDANT'S PRIOR TESTIMONY ........................................... 10

XII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 12: DEFENDANT'S MOTHER'S BLOOD TEST ................................... 10

XIII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 13: TESTIMONY FROM "NON-PAYING" PATIENTS ................................ 11

XIV. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 14: REVERSE *JENCKS* AND RULE 16 ............................................. 12

XV.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 15: EXPERT DISCLSOURES ......................................................... 12

**TABLE OF AUTHORITIES**

Cases

*City of Pomona v. SQM N. Am. Corp.*,
    866 F.3d 1060 (9th Cir. 2017)……………………………..…………………………………1, 2
*United States v. Heller*,
    551 F.3d 1108 (9th Cir. 2009)……………………………………………………………………1, 2
*United States v. Lindsey*,
    850 F.3d 1009 (9th Cir. 2017)………………………………………………………………………2

The government respectfully submits the following reply to Defendant Ramesh "Sunny" Balwani's Responses to United States' Motions *in limine*. ECF No. 1179 ("Balwani Resp."). Throughout this reply, the government references the ongoing trial of co-Defendant Elizabeth Holmes in *United States v. Holmes*, No. 5:18-CR-00258-EJD-1 ("*Holmes* trial") and the Court's Order re: Motions *in Limine*, ECF No. 798 ("MIL Order") from the *Holmes* trial.

## I. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 1: BLAMING VICTIMS

The parties appear to be substantially in agreement that the Court should adopt its prior ruling from the *Holmes* MIL Order. *Compare* United States' Motions *in Limine* ("U.S. MILs"), ECF No. 1155 at 8–10, *with* Balwani Resp., ECF No. 1179 at 5–6 (stating, "Mr. Balwani's counsel understands that victim-blaming would be improper during closing arguments" and "[t]he defense does not object to the government's request that the Court adopt its prior ruling about a selective prosecution defense . . . Mr. Balwani agrees that the same ruling should apply in his trial."). In the *Holmes* MIL Order, the Court (1) prohibited the use of victim blaming as a defense but permitted admissible impeachment evidence and other admissible evidence bearing on materiality, and (2) allowed "general fair comment on the marketing of new ventures, including statements concerning investment and the nature of the firm, product, or technology." MIL Order, ECF No. 798 at 80–83.

However, while the parties agree in principle, Defendant Balwani asserts in his response that cross examination questions by co-Defendant Holmes' team that violated the Court's MIL Order were, in fact, aligned with the Court's MIL Order. Balwani Resp., ECF No. 1179 at 5. Thus, the government requests that the Court grant its motion *in limine* No. 1 and adopt its prior ruling to provide advance notice and guidelines to both parties. As the Court and Defendant Balwani are undoubtedly aware, "[a] motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *Id*. at 1111–12. Motions *in limine* also serve as "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

U.S. REPLY TO BALWANI'S RESPONSES TO U.S.' MOTIONS *IN LIMINE*,
CASE NO. 18-258 EJD                                 1

Here, the government seeks a ruling to establish the guardrails of what will and will not be allowed during trial, as the Court provided in advance of the *Holmes* trial.  Defendant Balwani states that he "must of course be able to ask questions designed to get at the complex issues surrounding materiality for the host of sophisticated investor witnesses the defense expects the government will call."  Balwani Resp., ECF No. 1179 at 5.  The government has never contested the admissibility of evidence regarding materiality.  But there is a distinct difference between what information may be objectively important to potential investors and arguing that the "sophisticated investor witnesses the defense expects the government will call" were negligent, were not actually misled, or were otherwise at fault.  *See United States v. Lindsey*, 850 F.3d 1009, 1011–12 (9th Cir. 2017) (holding that lender negligence is not a defense to fraud, and that "evidence of the general lending standards applied in the mortgage industry is admissible to disprove materiality, but evidence of individual lender behavior is not admissible for that purpose").  The government is asking the Court to adopt its prior ruling, which precludes improper victim blaming but allows evidence related to materiality.  Such a ruling would "give[] counsel advance notice of the scope of certain evidence," *see Heller*, 551 F.3d at 1111–12, and "resolve issues which would otherwise clutter up the trial."  *See City of Pomona*, 866 F.3d at 1070.  Therefore, the government asks that the Court grant its motion *in limine* No. 1.

## II.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 2: PUNISHMENT

The government's motion *in limine* No. 2 requests that the Court adopt its prior ruling in the *Holmes* MIL Order (U.S. MILs, ECF No. 1155 at 10–11), which would preclude Defendant Balwani from referencing punishment in front of the jury but would allow him to "make careful, cautious, and appropriate comments when talking about the nature of the case to the jury."  *See* MIL Order, ECF No. 798 at 84.  Defendant Balwani agrees and "asks for the same ruling."  Balwani Resp., ECF No. 1179 at 6.  Therefore, the Court should grant the government's motion *in limine* No. 2.

## III.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 3: ADVICE OF COUNSEL

The government's motion *in limine* No. 3 requests that the Court adopt its prior ruling in the *Holmes* MIL Order (U.S. MILs, ECF No. 1155 at 11–12), which would require Defendant Balwani to

"establish the foundational prerequisites for the advice-of-counsel defense, namely: (1) waiver of the applicable attorney-client privilege, (2) demonstrating that there was a full disclosure to h[is] attorney of all material facts, (3) and that []he relied in good faith on the specific course of conduct the attorney recommended" prior to invoking an advice-of-counsel defense.  *See* MIL Order, ECF No. 798 at 86.  Defendant Balwani does not object to the Court adopting this ruling.  Balwani Resp., ECF No. 1179 at 6 ("Mr. Balwani does not object to the Court's adopting its decision from the Holmes trial[.]").  Therefore, the Court should adopt its prior ruling as requested in the government's motion *in limine* No. 3.

### IV.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 4: COORDINATION WITH JOUNALISTS OR COMPETITORS

The parties appear to be substantially in agreement that the Court should adopt its prior ruling from the *Holmes* MIL Order granting the government's request to preclude Defendant Balwani from arguing that the government's "charging decisions were influenced by 'coordination' with journalists or competitors."  *See* MIL Order, ECF No. 798 at 88.  *Compare* U.S. MILs, ECF No. 1155 at 12, *with* Balwani Resp., ECF No. 1179 at 7.  Therefore, the Court should grant the government's motion *in limine* No. 4.

### V.  REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 5: GOOD FAITH DEFENSE

The parties appear to be substantially in agreement that the Court should adopt its prior ruling from the *Holmes* MIL Order granting the government's request to preclude Defendant Balwani from making improper good faith arguments.  *See* MIL Order, ECF No. 798 at 90; *compare* U.S. MILs, ECF No. 1155 at 12–13, *with* Balwani Resp., ECF No. 1179 at 7–8.  However, Defendant Balwani argues that he should be permitted to argue that he viewed the wire fraud charges as genuine investments that he intended to make profitable.  Balwani Resp., ECF No. 1179 at 8.  This response demonstrates why the Court should grant the government's request to provide guardrails against improper argument in advance of trial, which would preclude Defendant Balwani from arguing that he "knowingly made misrepresentations but had a good-faith belief that h[is] alleged victims would be repaid or otherwise suffer no harm."  MIL Order, ECF No. 798 at 90.  Therefore, the Court should grant the government's motion *in limine* No. 5.

## VI. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 6: ACTIONS POST-DEPARTURE FROM THERANOS

The parties appear to be substantially in agreement that the Court should find actions by Theranos, Theranos employees, or co-Defendant Holmes after July 2016 largely irrelevant. *See* U.S. MILs, ECF No. 1155 at 13–14; Balwani Resp., ECF No. 1179 at 8–9; ECF No. 1156 at 41–46 (Omnibus Motions in Limine ("Balwani MILs") No. 4) (arguing that the Court should "exclude any statements offered by the government as coconspirator statements that were made after July 7, 2016"); ECF No. 1181 at 23 (government's responses to Defendant's MILs). The parties also appear to be substantially in agreement that the limited circumstances in which such evidence may be relevant is if Defendant Balwani somehow influenced or controlled the company's actions after his departure, or if the later actions bear on Defendant's "conduct, knowledge or intent before he resigned." Balwani Resp., ECF No. 1179 at 9; ECF No. 1181 at 23. Therefore, the Court should grant the government's motion *in limine* No. 6 precluding evidence after July 7, 2016, when Defendant formally left Theranos. *See* ECF No. 1157 at 393.[1]

## VII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 7: CMS DOCUMENTS

The government requests that the Court adopt its prior ruling in the *Holmes* MIL Order granting admission of the Centers for Medicare and Medicaid Services' ("CMS") January 25, 2016 letter to Theranos' former lab director, Dr. Sunil Dhawan, and the attached Form CMS-2567, Statement of Deficiencies, for the Theranos Newark clinical laboratory (collectively, the "CMS Report") and holding the CMS Report was relevant, not unduly prejudicial, and not hearsay. MIL Order, ECF No. 798 at 16–20, 90; *see* U.S. MILs, ECF No. 1155 at 14. In response, Defendant Balwani takes issue with the government's motion to admit "the whole Report" as opposed to the limited portions of the CMS Report that the government ultimately sought admission of in the *Holmes* trial, and claims that CMS' findings relating to testing on "unmodified commercial devices" as opposed to Theranos' devices are irrelevant to

---

[1] The government is willing to limit its motion to actions taken after July 2016, when Defendant formally "cut ties with the company," and take up issues regarding evidence between May and July 2016 only if they arise during trial. *See* Balwani Resp., ECF No. 1179 at 8–9 n.1.

U.S. REPLY TO BALWANI'S RESPONSES TO U.S.' MOTIONS *IN LIMINE*,
CASE NO. 18-258 EJD                   4

the charges in the Indictment and that the CMS Report cannot go to Defendant Balwani's state of mind or knowledge. Balwani Resp., ECF No. 1179 at 10–12.

First, just as Defendant Balwani is not bound by trial strategy decisions made in the *Holmes* trial (*see* Balwani Resp., ECF No. 1179 at 12 n.2), neither is the government—especially as it relates to evidence about deficiencies identified in Theranos' Newark clinical laboratory, which was run by Defendant Balwani. Thus, there is indeed a "legal [and] factual reason" to relitigate this issue as it relates to Defendant Balwani, who was even closer than co-defendant Holmes to the issues raised in the CMS Report. *Contra id.* at 10.

Second, as the government explained in its opposition to Defendant's MIL No. 1 (ECF No. 1181 at 4–11), Defendant Balwani is relying on an overly narrow and hyper-technical reading of the charges against Defendants in arguing that the only evidence that is relevant in this case is evidence relating to "Theranos' technology—the Theranos devices" and not evidence relating to testing on "unmodified commercial devices" or the general deficiencies of the Theranos lab. *See* Balwani Resp., ECF No. 1179 at 10–11. Defendant Balwani is charged with engaging in a scheme to defraud patients that goes beyond the abilities of just "Theranos' technology—the Theranos devices" and includes Theranos' abilities as a whole. *See* Third Superseding Indictment ("TSI"), ECF No. 469 at ¶¶ 14–18. For instance, the TSI alleges Defendants Holmes and Balwani engaged in a scheme to defraud patients who came to Theranos for blood testing services, representing to those patients that "*Theranos* could provide accurate, fast, reliable, and cheap blood tests and test results" despite their knowledge that "*Theranos* was not capable of consistently producing accurate and reliable results for certain blood tests including . . . ." *Id*. at ¶¶ 16–17 (emphasis added). And the TSI specifically references PT/INR, which is one of the portions of the CMS Report that Defendant asserts in his MILs should be excluded. *Compare* Balwani MILs, ECF No. 1156 at 21–22, *with* TSI ¶ 16, *and* ECF No. 1181 at 9–11. The Court should thus reject Defendant's argument that CMS' "immediate jeopardy finding [that] is based on the deficiencies related to the accuracy and reliability of PT/INR" is irrelevant (Balwani MILs, ECF No. 1156 at 21; Balwani Resp., ECF No. 1179 at 11), given the TSI specifically alleges accuracy and reliability problems with PT/INR. As such, evidence that goes to *Theranos* not being able to consistently produce accurate and reliable blood test results—whether it be

on its devices or "unmodified commercial devices" or as a result of general laboratory deficiencies—is relevant to the charges against Defendant Balwani.

Lastly, as the Court stated in the *Holmes* MIL Order, the CMS Report is relevant to questions about "state of mind, intent, and knowledge regarding the alleged misrepresentations about the accuracy and reliability of the Theranos' blood tests" as "the CMS survey findings and sanctions indicate violations of federal regulations that themselves are meant to ensure, among other things, the accuracy and reliability of certain kinds of clinical laboratory work." MIL Order, ECF No. 798 at 18. While the CMS Report was sent to Theranos in January 2016, CMS inspectors told Defendant the key findings after the CMS inspection in fall 2015 and yet Theranos continued to test patient samples without addressing issues raised by CMS. *See* ECF No. 1183-6 at 4–7. Thus, the CMS findings are, indeed, relevant to Defendant's state of mind and knowledge.

For the reasons already articulated by the Court, the Court should grant the government's motion *in limine* No. 7.

## VIII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 8: TEXT MESSAGES

The government requests that the Court adopt its prior ruling in the *Holmes* MIL Order and at the *Holmes* trial and admit—as relevant, authentic, and non-hearsay—the text messages offered by the government in the *Holmes* trial captured in Trial Exhibit 5387A (a subset of text messages relevant to charges in the Indictment between Defendant Balwani and co-defendant Holmes, which were admitted as part of Trial Exhibit 5387D after co-Defendant Holmes submitted her Federal Rule of Evidence 106 additions). U.S. MILs, ECF No. 1155 at 19. First and foremost, the texts the government seeks admission of are relevant, as the government demonstrated throughout the *Holmes* trial. *See also* MIL Order, ECF No. 798 at 92; ECF No. 588 at 17–22. These texts between Defendants relate to the CMS inspection, the FDA inspection, the company's financials, ongoing issues in Theranos' laboratory, pitches to potential investors, and retaliation against former employees and journalist John Carreyrou when those individuals risked exposing Defendants' fraudulent scheme. *See* Trial Exhibit 5387A. The government submits that the relevance of the texts it seeks to admit will be as manifest during Defendant Balwani's trial as it was during his co-Defendant's. *Contra* Balwani Resp., ECF No. 1179 at 12–13.

Defendant Balwani identifies three text conversations between himself and co-Defendant Holmes that he asserts violate Federal Rules of Evidence 403 and 404. Balwani Resp., ECF No. 1179 at 13; *see* ECF No. 1179-2 at 69–71 (Exhibit 49). The last conversation (*id.* at 71) is the same text that Defendant Balwani seeks to exclude in his MIL 6, and thus the government incorporates by reference its response to that motion. ECF No. 1181 at 26–27. The government is willing to withdraw its request with respect to the single highlighted text message in the first passage. ECF No. 1179-2 at 69.

The third and final conversation Defendant Balwani seeks to exclude under Rules 403 and 404 is the passage where Defendants are discussing journalist John Carreyrou's heritage. *Id.* at 70. This passage is relevant to the two charged schemes and inextricably intertwined with the charged conduct. Specifically, this particular passage occurs within mere days of Defendants discussing Carreyrou's upcoming visit to a Walgreens and how to ensure that he gets a fingerstick test because it "[s]eems like this guy is looking to write something negative." ECF No. 1179-2 at 125 (Exhibit 50). Defendant Balwani met with members of Fusion GPS to build opposition research against Carreyrou, which co-Defendant Holmes' wholeheartedly agreed with, saying: "We'll get killer package for when meet w[ith] carreyrou to turn this into our story[.]" *Id.* at 125, 128–129. Defendant Balwani expressed his concern with Carreyrou investigating Theranos to co-Defendant Holmes: "I am worried about over exposure without solid substance which is lacking right now." *Id.* at 129. Contemporaneous with these text messages, co-Defendant Holmes says "[f]ingerstick is our key point now" and Defendant Balwani responds "I know. Got to succeed in fs." *Id.* at 132.

Defendants continue to discuss Carreyrou and the negative story he may write, suggesting perhaps they should share more information with him, but that doing so may "set[ a] precedent of someone getting access just because they challenge" Defendants' claims about the capabilities of Theranos' technology. *Id.* at 135. Within this context, and as Defendant Balwani is "narrowing [ ] down" who may be the confidential sources for Carreyrou's information, Defendants exchange the at-issue text conversation where Defendant says to co-Defendant the fact that Carreyrou is French is "[v]ery funny" and "[e]xplains everything[.]" *Id.* at 138–139, 152; ECF No. 1179-2 at 70 (Exhibit 49). Co-Defendant Holmes describes Carreyrou as a "cynic" and Defendant Balwani noted that he had the same "struggle" "with fusiongps[.]" ECF No. 1179-2 at 138 (Exhibit 50). These text messages were part of Defendants' "aggressive" response

to the *Wall Street Journal*, which at least co-Defendant Holmes has stated she now regrets. 11/30 Trial Transcript at 7964:2–7969:5, 7978:23–25. These text messages were sent in April 2015, when Theranos was still providing tests to patients and pitching potential investors. A reasonable inference from Defendants' response to Carreyrou's investigating is that they did not want their schemes to defraud to be exposed. Thus, the Court should not exclude these messages under Rules 403 or 404.

Finally, Defendant Balwani has provided his own Federal Rule of Evidence 106 suggested additions if the Court were to admit Trial Exhibit 5387A at the government's request. Balwani Resp., ECF No. 1179 at 13; ECF No. 1179-2 at 72–201 (Exhibit 50). As the Court is well aware, the *Holmes* trial is ongoing. The government has not yet had the opportunity to fully review Defendant's proposed Rule 106 suggestions but commits to doing so within a reasonable time after the *Holmes* trial concludes and before Defendant Balwani's trial begins. The government will meet and confer with Defendant regarding his Rule 106 suggestions as it did with his co-Defendant and will seek to resolve as many issues as possible before seeking admission of Trial Exhibit 5387H (which will constitute the government's proposed text messages in Trial Exhibit 5387A and Defendant's Rule 106 additions).

### IX. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 9: THERANOS EMAILS

The parties appear to be substantially in agreement that the Court should admit as business records internal Theranos emails, which the government defines as emails to or from email addresses with the domain @theranos.com that were sent or received by Theranos personnel and which bear the Bates prefixes THER-, THERDOJ-, THPFM-, THER-AZ-, TS-, and TS2-. U.S. MILs, ECF No. 1155 at 21–23. Defendant asks only that the Court permit him to raise objections in the moment at trial. Balwani Resp., ECF No. 1179 at 13. The government submits that the Court is well-versed in the types of emails and the purposes for which the government may rely on these emails during trial given its familiarity with how the government repeatedly laid foundation for these internal Theranos emails in the *Holmes* trial to support their admission as business records under Federal Rule of Evidence 803(6). Indeed, the government has submitted the same exhibit list for the *Balwani* trial as it used in the *Holmes* trial. Thus, the government submits that the internal Theranos emails listed above should be presumed admissible— particularly exhibits that were admitted as business records during the *Holmes* trial—and that if an

exception to their admissibility applies, Defendant Balwani can object in the moment at trial. Granting the government's motion will make for a more efficient trial and avoid interruptions such as occurred early on during the *Holmes* trial. *See* ECF Nos. 1018, 1019 (cutting testimony short to resolve dispute regarding whether internal Theranos emails could constitute business records). As such, the government asks the Court to grant its motion *in limine* No. 9.

## X. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 10: STATEMENTS BY THERANOS EMPLOYEES AND AGENTS

The government similarly requests that the Court admit statements made by Theranos employees and agents pursuant to Federal Rule of Evidence 801(d)(2). U.S. MILs, ECF No. 1155 at 23–24. The Court previously deferred such a ruling during motions *in limine* in the *Holmes* trial, but primarily because of foundational agency concerns. *See* MIL Order, ECF No. 798 at 94–97 (deferring decision regarding admission of Theranos employee and agent statements against co-Defendant Holmes pending the government establishing foundation). Drawing on the Court's decision in the *Holmes* trial, Defendant Balwani argues that a ruling on the government's motion *in limine* No. 10 would be premature and should again be deferred. Balwani Resp., ECF No. 1179 at 13–14.

However, as the government pointed out in its motion, throughout the *Holmes* trial the government has established the close connection between Defendant Balwani and other Theranos employees within the lab such that their statements should be permitted under Rule 801(d)(2). U.S. MILs, ECF No. 1155 at 25. The evidence during the *Holmes* trial demonstrated that Defendant Balwani, as well as co-Defendant Holmes, were hands-on executives and Theranos was not a particularly large company. Moreover, as with the prior response, the Court is well-versed in the types of exhibits the government is likely to seek to admit at the *Balwani* trial as it did in the *Holmes* trial and the Court is likely aware that the government intends to seek admission of statements made by direct reports to Defendant Balwani and those that reported to Defendant's direct reports, which should alleviate any agency concerns. *See* ECF No. 1019 at 5–6. Therefore, the government asks that the Court grant its motion *in limine* No. 10.

//
//
//

U.S. REPLY TO BALWANI'S RESPONSES TO U.S.' MOTIONS *IN LIMINE*,
CASE NO. 18-258 EJD                    9

## XI. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 11: DEFENDANT'S PRIOR TESTIMONY

The government requests that the Court adopt its prior ruling in the *Holmes* MIL Order (U.S. MILs, ECF No. 1155 at 25–26), which, consistent with Federal Rule of Evidence 801 and Ninth Circuit precedent, would preclude Defendant Balwani from "introduc[ing] exculpatory statements without testifying in court." *See* MIL Order, ECF No. 798 at 98.  Yet, Defendant urges the Court to rule differently, stating that "[t]here is no relief that would be appropriate for the Court to grant at this stage other than to state that it will apply the rule against hearsay and its exceptions as needed."  Balwani Resp., ECF No. 1179 at 15.  However, contrary to Defendant Balwani's assertion, the Court can and should make the same ruling that it did in the *Holmes* trial as the same rule, law, and reasoning applies to Defendant Balwani. As such, the Court should grant the government's motion *in limine* No. 11.

## XII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 12: DEFENDANT'S MOTHER'S BLOOD TEST

The government requests that the Court preclude Defendant Balwani from "offering evidence that his mother received a Theranos test given that he cannot demonstrate foundational relevance to the charged conduct in the Third Superseding Indictment or overcome the additional relevance or hearsay barriers."  U.S. MILs, ECF No. 1155 at 27.  Defendant "agrees" such foundational relevance is lacking but then asserts it would be "improper" to preclude such evidence at this stage.  Balwani Resp., ECF No. 1179 at 16.  Not so.  The government asserted multiple aspects of missing foundational relevance for Defendant's mother's blood test, including why Defendant Balwani's mother received the test, what her medial background or conditions may or may not be, whether she had other blood tests done by competing lab companies, or whether she or her physician relied on the Theranos test results that she received to make any medical judgments.  By contrast, as the Court saw in the *Holmes* trial, the patient-victims who testified supplied this information and information of this nature is presented with respect to many more patient-victims in internal Theranos emails.  Furthermore, Defendant does not contest the government's assertion that if his mother were simply receiving a Theranos test to support her son or test out the Walgreens experience, then that fact would be wholly irrelevant to the charges in this case.  Without this

critical foundational information, Defendant Balwani cannot prove that his mother's blood test at Theranos was relevant.

Rather than address the substance of the government's relevance argument, Defendant focuses on the inability to determine on which device Theranos ran Defendant's mother's blood test. *See* Balwani Resp., ECF No. 1179 at 16–17. But his response misses the point: Defendant cannot rely on having his mother tested to support *his knowledge* that Theranos' proprietary blood analyzers produced accurate and reliable results if he cannot demonstrate that his mother's test was run on an Edison. This relates to contemporaneous statements Defendant made to investors as well as patients. By contrast, as described above and in the government's opposition to Balwani's MIL No. 1, the conspiracy to defraud paying Theranos patients is broader than simply which device performed the blood test. *See* ECF No. 1181 at 4–11; TSI ¶¶ 16–17. Moreover, as the government described in its motion, even if Defendant could overcome the foundational relevance issues, Defendant would also have to overcome hearsay and other barriers to admissibility. Therefore, the Court should grant the government's motion *in limine* No. 12 and exclude such evidence.

### XIII. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 13: TESTIMONY FROM "NON-PAYING" PATIENTS

The government requests that the Court adopt its prior ruling in the *Holmes* MIL Order (U.S. MILs, ECF No. 1155 at 27–28), which found that "[t]estimony from non-paying patient witnesses concerning their experience with Theranos testing is relevant and admissible[.]" MIL Order, ECF No. 798 at 47–50, 53, 99. Defendant Balwani seeks for the Court to reconsider its ruling (*see* Balwani MILs, ECF No. 1156 at 64, 67) and argues as his co-Defendant did previously that any "anecdotal evidence about patients' experiences—including non-paying patients—is irrelevant to the charges brought here concerning systematic inaccuracy or unreliability." Balwani Resp., ECF No. 1179 at 17. However, the Court has already found otherwise in the *Holmes* trial, stating: "Evidence of even one inaccurate result tends to show that Theranos was producing inaccurate results, even if it does not fully prove the point." MIL Order, ECF No. 798 at 48–49. The same reasoning applies here. Therefore, the Court should grant the government's motion *in limine* No. 13.

## XIV. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 14: REVERSE *JENCKS* AND RULE 16

The government requests an order from the Court precluding Defendant Balwani from introducing evidence during trial that should have been produced under his reciprocal discovery obligations pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2 but were not. U.S. MILs, ECF No. 1155 at 29–30. This order is necessary to avoid what happened in the *Holmes* trial when co-Defendant Holmes sought to introduce at trial several documents that had not been previously produced to the government less than 24 hours before attempting to admit them at her trial. *See* ECF No. 1185. While Defendant Balwani asserts that he "understands his obligations under Federal Rules of Criminal Procedure 16(b) and 26.2 and will comply with them" (Balwani Resp., ECF No. 1179 at 17), so did his co-Defendant Holmes. *See*, *e.g.*, 11/19 Trial Transcript at 7037:25–7035:3. Pursuant to his obligations, Defendant must disclose any documents within his possession, custody, or control that he intends to use in his case-in-chief and any reverse *Jencks* materials. Fed. R. Crim. P. 16(b)(1)(A), 26.2. The government is asking the Court for an order ensuring that this happens.

## XV. REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* NO. 15: EXPERT DISCLSOURES

Based on Mr. Balwani's supplemental disclosures, the government submits that its motion *in limine* No. 15 is moot.

DATED: December 13, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

  */s/ Amani S. Floyd*
JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
KELLY I. VOLKAR
AMANI S. FLOYD
Assistant United States Attorneys