1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,

        v.

RAMESH "SUNNY" BALWANI,

                        Defendant.

Case No.  5:18-cr-00258-EJD-1

**ORDER RE: MOTIONS IN LIMINE**

Re: Dkt. Nos. 1155, 1156

On July 28, 2020, a federal grand jury returned a Third Superseding Indictment, charging Defendants Elizabeth Holmes and Ramesh "Sunny" Balwani with ten counts of wire fraud (Counts 3 through 12) in violation of 18 U.S.C. § 1343, and two counts of conspiracy to commit wire fraud (Counts 1 through 2) in violation of 18 U.S.C. § 1349.  Third Superseding Indictment ("TSI"), Dkt. No. 469.  The Defendants were charged with making deceptive representations about their company, Theranos, and its technology.

In anticipation of trial, Balwani and the Government each filed motions in limine ("MIL") and supporting declarations.  *See* United States' Mots. in Limine ("Govt. Mot."), Dkt. No. 1155; Decl. of Kelly I. Volkar in Supp. of United States' Mots. in Limine ("Volkar Decl."), Dkt. No. 1155-1; Def. Ramesh "Sunny" Balwani's Omnibus Mots. in Limine ("Balwani Mot."), Dkt. No. 1156; Decl. of Jeffrey B. Coopersmith in Supp. of Def. Ramesh Balwani's Mots. in Limine ("Coopersmith Decl."), Dkt. Nos. 1156-1, 1157; Decl. of Richard L. Sonnier III ("Sonnier Decl."), Dkt. No. 1158.  Both parties submitted timely responses and replies in support of their respective motions.  *See* Def. Ramesh "Sunny" Balwani's Responses to the Govt.'s Mots. in Limine

("Balwani Resp."), Dkt. No. 1179; Decl. of Jeffrey B. Coopersmith in Supp. of Mr. Balwani's Resp. to Govt.'s Mots. in Limine ("Coopersmith Resp. Decl."), Dkt. No. 1179-1, 1179-2; United States' Resp. to Def. Ramesh "Sunny" Balwani's Mots. in Limine ("Govt. Resp."), Dkt. No. 1181; Decl. of Kelly I. Volkar in Supp. of United States' Resp. to Def. Balwani's Mots. in Limine ("Volkar Resp. Decl."), Dkt. No. 1183; Def. Ramesh "Sunny" Balwani's Replies in Supp. of His Mots. in Limine ("Balwani Reply"), Dkt. No. 1193; Decl. of Jeffrey B. Coopersmith Re: Mr. Balwani's Replies in Supp. of His Mots. in Limine ("Coopersmith Reply Decl."), Dkt. No. 1193-1; and United States' Reply to Def. Ramesh "Sunny" Balwani's Resp. to United States' Mots. in Limine ("Govt. Reply"), Dkt. No. 1195.  The Court heard oral argument on February 4 and 8, 2022.  Dkt. Nos. 1318, 1319.  Having considered the parties' arguments, the relevant law, and the record in this case, the Court orders as follows.

## I.     BACKGROUND

### A.     The Indictment

Holmes founded Theranos, a health care and life sciences company, in 2003.  TSI ¶ 1. Holmes served as the company's Chief Executive Officer.  *Id*.  Balwani was a board member, President, and Chief Operating Officer of Theranos.  *Id*. ¶ 2.

Theranos' stated mission was to revolutionize medical laboratory testing through its allegedly innovative methods of drawing and testing blood and diagnosing patients.  *Id*. ¶ 4. During the company's first ten years, its scientists worked toward developing proprietary technology that could run clinical tests using only tiny drops of blood.  *Id*. ¶ 5.  Theranos also worked toward developing a method for drawing a few drops of capillary blood from a patient's finger using a small lancet.  *Id*.  The blood was then stored in a "nanotainer."  *Id*.  Theranos sought to develop a second device called the Theranos Sample Processing Unit ("the TSPU," "Edison," or "miniLab") that could quickly and accurately analyze blood samples stored in the nanotainer.  *Id*. The Government contends that the promises of these devices were never realized; the devices "consistently" produced inaccurate and unreliable results.  *Id*. ¶ 16.  Despite this, Defendants began a publicity campaign to promote the company and its devices.  *Id.* ¶¶ 6-9.  In September

United States District Court
Northern District of California

United States District Court
Northern District of California

2013, Theranos offered blood testing at Walgreens "Wellness Centers" in California and Arizona. *Id*. ¶ 10.

The Government argues that Defendants conspired to commit and committed fraud through two fraudulent schemes: one to defraud investors and another to defraud doctors and patients. The Court outlines these schemes below.

**Scheme to Defraud Investors.** Defendants allegedly made materially false and misleading statements and failed to disclose material facts to investors. Based on the false statements, investors invested money in Theranos. Specifically, from 2013 to 2015, Defendants allegedly made misstatements regarding:

1. Theranos' proprietary analyzer: Defendants allegedly made misstatements about Theranos' proprietary analyzer—the TSPU, Edison, or miniLab—when they claimed the analyzer was presently capable of accomplishing certain tasks, with more precision than other blood tests, and at a faster rate, when they knew these statements were false. *Id*. ¶ 12(A).

2. Theranos' financial health: Defendants allegedly misrepresented Theranos' financial well-being when they told investors the company was financially strong and stable and would make huge profits in 2014 and 2015 when, in fact, they knew Theranos would only generate modest revenue. *Id*. ¶ 12(B).

3. Technology demonstrations: Defendants allegedly deceived investors through misleading technology demonstrations intended to cause potential investors to believe blood tests were being conducted on Theranos' proprietary analyzer when Defendants knew the analyzer was operating in "null protocol." *Id*. ¶ 12(C).

4. Walgreens partnership: Defendants allegedly misled investors when they told them Theranos had an expanding partnership with Walgreens when the Walgreens rollout had stalled due to concerns with Theranos' performance. *Id*. ¶ 12(D).

5. United States Department of Defense ("DOD") relationship: Defendants allegedly told investors the company had a profitable and revenue-generating business relationship with the DOD and that Theranos technology was deployed on the battlefield. Defendants allegedly knew

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1   that Theranos had limited revenue from military contracts and that its technology was not used in

2   the battlefield.  *Id*. ¶ 12(E).

3        6. Food and Drug Administration ("FDA") approval: Defendants allegedly misled

4   investors when they told them that Theranos did not need the FDA to approve its proprietary

5   analyzer and tests when Defendants knew this to be false.  *Id*. ¶ 12(F).

6        7. Patient testing: Defendants allegedly told investors that patient tests were conducted

7   using Theranos-manufactured analyzers.  Defendants allegedly knew that Theranos used third-

8   party, commercially available analyzers.  *Id*. ¶ 12(G).

9        8. Peer review: Defendants allegedly falsely told investors that several national or

10   multinational pharmaceutical companies and research institutions had examined, used, and

11   validated Theranos technology.  *Id*. ¶ 12(H).

12        9. Media representations: Defendants allegedly made the false and misleading statements

13   described above to reporters and then shared the resulting articles directly with potential investors

14   and via Theranos' website.  *Id*. ¶ 12(I).

15        **Scheme to Defraud Doctors and Patients.**  The Government alleges that from 2013 to

16   2016, Defendants advertised and marketed Theranos technology to doctors and patients, and

17   falsely claimed that the tests were accurate and reliable.  *Id*. ¶¶ 14-15.  Their claims about

18   Theranos technology were implicit and explicit.  *Id*. ¶ 15.  Despite knowing that Theranos'

19   technology suffered from recurring accuracy and reliability problems, Defendants allegedly

20   advertised the tests as accurate and reliable.  *Id*. ¶¶ 16-17.  Specifically, Defendants used

21   materially false and misleading marketing materials and advertisements, and transmitted Theranos

22   blood results that Defendants knew contained, or likely contained, inaccurate information.  *Id*. ¶¶

23   16-18.  For instance, Theranos' public website touted its lab's ability to perform tests "quickly and

24   accurately on samples as small as a single drop."  *Id*. ¶ 9.  Defendants also allegedly provided

25   patients with reports that contained or were likely to contain: (1) inaccurate and unreliable results;

26   (2) improperly adjusted reference ranges defining a normal or healthy result for a given test; (3)

27   improperly removed "critical" results, i.e., results suggesting a patient needed medical attention;

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  and (4) results generated from improperly validated assays, further decreasing the reliability of

2  those tests.  *Id*. ¶ 17(C).

3  **B.   Procedural History**

4  The Court ordered separate trials for Holmes and Balwani.  Dkt. No. 977.  In anticipation

5  of trial, Holmes and the Government each filed motions in limine.  Dkt. Nos. 560, 561, 562, 563,

6  564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577,578, 588.  The Court

7  addressed each motion in its May 22, 2021 Order Re: Motions in Limine ("Holmes MIL Order").

8  Dkt. No. 798.

9  Holmes' jury trial concluded on January 3, 2022.  The jury found Holmes guilty on Counts

10  1, 6, 7 and 8; not guilty on Counts 2, 10, 11 and 12; and did not reach a verdict on Counts 3, 4 and

11  5.[1]  Dkt. No. 1235.  Balwani's jury trial is scheduled to begin March 9, 2022.

12  **II.   LEGAL STANDARDS**

13  Motions in limine are a "procedural mechanism to limit in advance testimony or evidence

14  in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other

15  pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise

16  clutter up the trial."  *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

17  Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely

18  within the discretion of the district court."  *Id*.; *see Luce v. United States*, 469 U.S. 38, 41 n.4

19  (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent

20  authority to manage the course of trials").

21  In many instances, however, rulings "should be deferred until trial, so that questions of

22  foundation, relevancy, and potential prejudice may be resolved in proper context."  *United States*

23  *v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016).  For example, in order to

24  exclude evidence on a motion in limine, "the evidence must be inadmissible on all potential

25  grounds."  *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014).

26  _____

27  [1] The Government dismissed Count 9.  Dkt. No. 1152.

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1   Thus, denial of a motion in limine to exclude certain evidence does not mean that all evidence

2   contemplated by the motion will be admitted, only that the court is unable to make a

3   comprehensive ruling in advance of trial.  *Id*. at 1168.  Moreover, even if a district court does rule

4   in limine, the court may "change its ruling at trial because testimony may bring facts to the district

5   court's attention that it did not anticipate at the time of its initial ruling."  *City of Pomona*, 866

6   F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings

7   are not binding on the trial judge, and the judge may always change his mind during the course of

8   a trial.").

9       **C.      Federal Rule of Evidence 401**

10          Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if "it has any

11  tendency to make a fact more or less probable than it would be without the evidence . . . and the

12  fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  "Relevancy simply

13  requires that the evidence logically advance a material aspect of the party's case."  *United States v.*

14  *Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotations omitted).

15      **D.      Federal Rule of Evidence 403**

16          Even if evidence is relevant, it must be excluded if its "probative value is substantially

17  outweighed by a danger of .  .  . unfair prejudice, confusing the issues, misleading the jury, undue

18  delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Evidence

19  is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis,

20  commonly, though not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172,

21  180 (1997).  "Unfair prejudice can result from evidence that makes it more likely for a juror 'to

22  defer to findings and determinations relevant to credibility made by an authoritative, professional

23  factfinder rather than determine those issues for themselves.'"  *United States v. Sine*, 493 F.3d

24  1021 (9th Cir. 1992).

25      **E.      Federal Rule of Evidence 802**

26          Hearsay evidence is inadmissible unless otherwise provided for under a federal statute, the

27  Federal Rules of Evidence, or "other rules prescribed by the Supreme Court."  Fed. R. Evid. 802.

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing" and which "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.  "Hearsay within hearsay" is only admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

### III.   BALWANI'S MOTIONS IN LIMINE AND RELATED GOVERNMENT MOTIONS

#### A.   Balwani's MIL No. 1 to Exclude Evidence of Accuracy and Reliability of Tests Run on Unmodified Commercial Devices

The TSI charges two fraudulent schemes—a scheme to defraud investors and a scheme to defraud patients.  Balwani argues that under the TSI, the alleged scheme to defraud patients turns on allegations that Theranos' proprietary technology was not capable of producing accurate and reliable results.  Balwani Mot. at 1–2.  Balwani contends that because the TSI does not include allegations regarding the accuracy and reliability of non-Theranos technology—i.e., unmodified, commercially available blood analyzers used by Theranos in its clinical laboratories—or about the general practices of the Theranos clinical laboratories, evidence regarding the accuracy or reliability of blood tests is only relevant if the test was run on a Theranos-manufactured or Theranos-modified device.  *Id.* at 1.  On this ground, Balwani moves to exclude testimony from patients E.T. and B.B. and to exclude portions of the Centers for Medicare and Medicaid Services ("CMS") January 25, 2016, letter to Theranos' former lab director, Dr. Sunil Dhawan, and the attached Form CMS-2567, Statement of Deficiencies, for the Theranos Newark clinical laboratory (collectively, "the CMS Report").

"[A]n indictment is not to be read in a technical manner, but is to be construed according to common sense and with an appreciation of existing realities."  *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir. 1976) (citing *United States v. Pleasant*, 469 F.2d 1121 (8th Cir. 1972); *McKinney v. United States*, 172 F.2d 781 (9th Cir. 1949)).  The indictment must be read to include facts which are "necessarily implied by the allegations made therein."  *Id.*  Further, even if an essential averment in an indictment is "faulty in form, if it may by fair construction be found within the text, it is sufficient."  *Id.*  This is because the purpose of an indictment is to furnish the

United States District Court
Northern District of California

defendant with a sufficient description of the charges against him to enable him to prepare his defense, to enable him to plead double jeopardy against a second prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *Williamson v. United States*, 310 F.2d 192, 195–96 (9th Cir. 1962).

The TSI meets this burden. Fairly read, the scheme to defraud patients includes Theranos' use of unmodified, commercially available blood analyzers. The language of the TSI makes this clear by going beyond statements about the abilities of "Theranos's technology" and including allegations about Theranos' abilities generally. *See* TSI ¶¶ 14–18. First, the TSI alleges that Holmes and Balwani engaged in a scheme to defraud patients who came to Theranos for blood testing services by representing to those patients that "*Theranos* could provide accurate, fast, reliable, and cheap blood tests and test results" despite their knowledge that "*Theranos* was not capable of consistently producing accurate and reliable results for certain blood tests." *Id.* ¶¶ 16–17 (emphases added). Second, while the TSI does at times focus exclusively on "Theranos technology," the TSI also makes clear that the alleged scheme to defraud patients includes all blood tests run by Theranos. *See id.* ¶ 18 ("Knowing that the accuracy and reliability of *Theranos test results* was questionable and suspect, Holmes and Balwani oversaw the electronic wiring of test results to patients, including . . . B.B. [and] E.T." (emphasis added)). Indeed, the TSI's inclusion of assays (like HIV, the test that E.T. received) not run on Theranos-specific devices confirms this. *See id.* at ¶ 16. Finally, even accepting Balwani's argument, evidence that patients received inaccurate tests from unmodified conventional analyzers is relevant evidence that Holmes and Balwani falsely promised patients that *Theranos* could deliver test results with superior accuracy. The TSI puts Balwani on notice that the scheme to defraud patients includes Theranos' use of unmodified conventional analyzers. Accordingly, the Court **DENIES** Balwani's motion to exclude evidence about the accuracy and reliability of tests run on unmodified commercial devices**.**

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

8

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Balwani's MIL No. 2 to Exclude Expert Testimony of Dr. Das**

Balwani moves to exclude Dr. Kingshuk Das, a former Theranos lab director, as an expert witness.  In the Holmes trial, the Court determined that Dr. Das was a percipient witness and could testify about what he observed while working at Theranos.  *See Order re Pre-Trial Motions* ("Holmes MIL Order 2"), Dkt. No. 989.  Like Holmes, Balwani argues that Dr. Das' testimony will be based in part on scientific, technical, or other specialized knowledge that makes him an expert witness.  Balwani Mot. at 13.  The Court disagrees.  Balwani does not raise any new arguments as to why Dr. Das' testimony should be considered expert testimony.  Additionally, the Government's opposition makes clear that the testimony it seeks to elicit from Dr. Das is fact testimony.  *See* Govt. Resp. at 10 ("[T]he government should be able to call Dr. Das to testify about his job, what he was hired by Defendant to do, what he discovered while performing the tasks that Defendants asked him to do . . . , and his perspective of the resulting discussion of what he discovered with senior management.").  However, the Court again notes that specific details of particular scientific procedures or analyses that would require specialized knowledge to understand and interpret would move Dr. Das' testimony from percipient to expert.  If expert testimony is introduced, Balwani may object at that time.  Accordingly, the Court **DEFERS** ruling on Balwani's motion to exclude unless and until Dr. Das offers expert witness testimony at trial.[2]

**C.    Balwani's MIL No. 3 to Exclude Evidence of Theranos' Voiding Test Results**

The CMS report sent in late January 2016 detailed deficiencies CMS found in Theranos' CLIA lab.  *See* Coopersmith Decl., Ex. 17.  CMS determined that Theranos' lab was "not in compliance with all of the Conditions required for certification in the CLIA program" and that "the deficient practices of the laboratory pose immediate jeopardy to patient health and safety."  *Id.* at 1.  CMS directed Theranos to "take immediate action to remove the jeopardy and come into

---

[2] Because the Court concludes that Dr. Das may testify as a percipient witness, it does not address Balwani's argument that the destruction of the Laboratory Information System ("LIS") prevents Dr. Das from testifying at this time.  However, the Court notes that Dr. Das' reliance on the LIS may present other constitutional issues.

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1    Condition-level compliance." *Id.* at 2.  CMS told Theranos it had ten calendar days to provide

2    CMS "with a credible allegation of compliance and acceptable evidence of correction

3    documenting that the immediate jeopardy has been removed and that action has been taken to

4    correct all of the condition-level deficiencies in question." *Id.*  In response to the CMS Report,

5    Theranos hired a new laboratory director, Dr. Das.  Dr. Das determined that to comply with the

6    CMS directive, Theranos would need to void all test results that the identified deficiencies may

7    have impacted.  Balwani moves under Federal Rule of Evidence 407 for an order excluding

8    evidence of Theranos' decision to void test results.  Balwani Mot. at 20.

9         Under Rule 407, evidence of subsequent remedial measures is not admissible to prove

10   culpable conduct by the party taking those measures or to prove "a defect in a product or its

11   design."  The purpose of Rule 407 is to encourage parties to improve safety conditions "without

12   fear that subsequent measures will be used as evidence against them."  *Gauthier v. AMF, Inc.*, 788

13   F.2d 634, 637 (9th Cir. 1986).  "An exception to Rule 407 is recognized for evidence of remedial

14   action mandated by superior governmental authority . . . because the policy goal of encouraging

15   remediation would not necessarily be furthered by exclusion of such evidence."  *O'Dell v.*

16   *Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *see also In re Aircrash in Bali, Indonesia*,

17   871 F.2d 812, 817 (9th Cir. 1989) ("The purpose of Rule 407 is not implicated in cases involving

18   subsequent measures in which the defendant did not voluntarily participate. . . . In this case, Pan

19   Am's management, although to be commended for its cooperation, nonetheless, was legally

20   obligated to cooperate with the FAA's investigation.").

21        Balwani argues that because Theranos voluntarily decided to void test results, evidence

22   about the voiding cannot be introduced to prove culpability.  *See* Fed. R. Evid. 407.  Specifically,

23   Balwani contends that because CMS inspectors Sarah Bennett and Gary Yamamoto did not

24   require Theranos to void the test results, the decision to do so was voluntary.  *But see* Dkt. No.

25   1157, Ex. 34 (noting that voiding tests was "an unusual remediation for deficient practices" and

26   that laboratories were only required to contact affected clients and take corrective action, like

27   issuing a corrected test).  *See* Coopersmith Decl., Ex. 34 (noting that voiding tests was "an unusual

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

United States District Court
Northern District of California

remediation for deficient practices" and that laboratories were only required to contact affected clients and take corrective action, like issuing a corrected test). However, this argument misunderstands the inquiry. CMS identified various deficiencies and directed Theranos to cure these deficiencies. CMS did not specify how Theranos should cure the deficiencies. Instead, CMS permitted Theranos (through its laboratory director) to remedy the identified deficiencies. *See* Coopersmith Decl., Ex. 36 at 6 ("CMS tells the laboratory they must fix a deficiency and *the laboratory decides how they're going to fix it*." (emphasis added)); *id.*, Ex. 35 ("Again, CMS does not determine what those corrective actions must be. It's the laboratory and the laboratory director's responsibility to determine how those patients were affected or have been affected by the deficient practice and what they believe the corrective action should be."). The question is whether Theranos found it necessary to void the test results to cure the deficiencies.

The CMS inspection uncovered issues with patient test results. Under 42 C.F.R. § 493.1291(k), once a laboratory uncovers errors in a patient's test results, the laboratory must notify the person and issue corrective results. During the Holmes trial,[3] Dr. Das testified that he prepared a patient impact assessment in response to the CMS's deficiency findings. *See* Tr. of Nov. 9, 2021 Trial Proceedings, Dkt. No. 1285, at 5824–35. During this process, Dr. Das discovered that there was a possible patient impact for every test reported from Theranos' proprietary 3.5 series devices. *Id.* at 5832. Given the extent of the deficiencies, Dr. Das was unable to determine "the exact nature and magnitude" of the effect of the deficiencies on patient results. *Id.* Thus, Theranos could not comply with § 493.1291(k) by contacting the affected clients and issuing corrected results. The only option available to Dr. Das to comply with his regulatory obligations was to void the impacted tests results. Accordingly, Theranos' decision to

---

[3] Balwani argues that the Government did not lay the proper foundation for Dr. Das' conclusion because it turned on a question that was both leading and compound. *See* Balwani Reply at 17 n.13. Balwani argues a Rule 104(c) hearing is necessary to address this issue. The Court disagrees. While the Government may have asked a leading question during direct examination, the information solicited demonstrates that Theranos did not voluntarily void the test results but did so because of a perceived obligation to do so. However, Balwani is certainly able to object to the form of questioning during his trial.

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

void all tests performed on Edison or 3-series devices was involuntary and not a remedial measure under Rule 407.

Balwani's use of *Auer v. Robbins*, 519 U.S. 452 (1997) misses the point. The issue is not whether CMS believed voiding was necessary, but whether *Theranos* believed voiding was necessary to comply with the various regulations. As discussed, Theranos believed voiding was necessary to comply with its regulatory obligations. The decision to void the test results was therefore involuntary. Moreover, this is not a situation where an agency requires a specific result. Instead, CMS and the governing regulations allowed Theranos to decide how to correct the identified deficiencies. Thus, CMS's interpretation of what usually occurs is not relevant. *Cf. Auer*, 519 U.S. 452 (analyzing an agency interpretation that required a specific outcome).

Finally, Balwani argues that the lack of evidence tying him to the decision to void test results requires exclusion. In the Holmes trial, the Court required the Government to tie the events in 2016 to the charged conduct. The same requirement applies to Balwani. Accordingly, the Court **DEFERS** ruling on the admissibility of Theranos' decision to void test results until the Government makes a proffer of evidence that clearly ties the events in 2016 to the charged conduct.

### D.   Balwani's MIL No. 4 to Exclude Co-Conspirator Statements

Balwani moves for an order excluding certain alleged coconspirator statements on the ground that the statements fall outside the conspiracy time frames alleged in the TSI, i.e., statements from before September 2009 or after July 7, 2016. Balwani Mot. at 30.

For a statement to be admissible under Federal Rule of Evidence 801(d)(2)(E) (the coconspirator exception), the Government must prove the existence of a conspiracy at the time the statement was made. *See United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007). Balwani contends that the Government cannot use Rule 801(d)(2)(E) to introduce statements made by alleged coconspirator Holmes before Balwani joined Theranos in September 2009 or after he left Theranos in July 2016, nor can the Government use statements made after both charged

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1    conspiracies ended.  Balwani Mot. at 30.

2         In opposition, the Government notes that during the Holmes trial, most exhibits were

3    admissible as business records or statements of agents, or for other non-hearsay purposes.  Govt.

4    Resp. at 19.  Indeed, it appears that the Court did not admit any exhibit or portion of testimony

5    based solely on Rule 801(d)(2)(E) during the Holmes trial.  Based on this, the Government

6    informed Balwani that it did not anticipate offering exhibits based solely on the coconspirator

7    exception because such exhibits or testimony would be admissible under other hearsay exceptions

8    (or for a non-hearsay purpose).  Govt. Resp. at 19.  The Government also does not plan to use

9    Holmes' pre-2009 statements for the truth of the matter asserted and agrees with Balwani that

10   post-July 2016 statements are likely irrelevant.  *Id.*

11        Considering the Government's response, the Court **DEFERS** ruling on this motion unless

12   and until the Government attempts to use Rule 801(d)(2)(E) to admit pre-2009 statements or post-

13   July 2016 statements.

14        **E.    Balwani's MIL No. 5 to Exclude Expert Testimony Offered by Law Witnesses**

15        Balwani moves for an order precluding improper expert opinion from lay witnesses.

16   Balwani Mot. at 36.  The motion focuses primarily on the trial testimony of Erica Cheung, a

17   former Theranos employee who worked in the company's clinical laboratory for several months.

18   In the Holmes trial, Ms. Cheung testified about her understanding of the significance of certain

19   tests and events based on her experience working in the Theranos lab.  She testified about her

20   experiences running quality control checks and about the overall reliability and performance of

21   Theranos technology.  This testimony was proper percipient witness testimony.  *See United States

22   v. Chen*, No. 17-cr-00603-BLF-1, 2021 WL 2662116, at *9–10 (N.D. Cal. June 29, 2021) (finding

23   that proffered witnesses appeared to be lay witnesses, based on "their personal knowledge and

24   positions in the day-to-day affairs of [the Company]").  The testimony that the Government seeks

25   to elicit is permissible factual testimony based on Ms. Cheung's personal knowledge.  The defense

26   may object to statements during trial that it believes cross into expert testimony.  Accordingly, the

27   Court **DEFERS** ruling on this motion unless and until a lay witness attempts to offer expert

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  testimony.[4]

2  ### F.   Balwani's MIL No. 6 to Exclude Irrelevant and Inflammatory Text Messages

3  The Court considers this motion concurrently with the Government's Motion in Limine

4  No. 8 to admit text messages between Holmes and Balwani offered by the Government.  *See infra*

5  Section IV.H.3.

6  ### G.   Balwani's MIL No. 7 to Exclude Evidence of Balwani's License Plate

7  The Government does not intend to offer evidence of Balwani's automobile license plate

8  and does not oppose this motion.  Govt. Resp. at 24–25.  Accordingly, the Court **GRANTS** the

9  motion to exclude evidence of Balwani's automobile license plate.

10  ### H.   Balwani's MIL No. 8 Adopting Certain Motions Previously Filed by Elizabeth
     Holmes

11

12  Balwani asks the Court to adopt pretrial rulings from the Holmes case as to seven motions

13  in limine.  Balwani Mot. at 48.  The Government requests the Court remain open to reconsidering

14  those pretrial rulings with respect to Balwani subject to how the evidence is introduced at his trial.

15  Govt. Resp. at 26.  The Government incorporates by reference its prior oppositions and arguments

16  on the associated topics.  *Id.*

17  #### 1.   Balwani's Request to Extend Certain Pretrial Rulings from Holmes' Trial to
          His Trial

18

19  ##### a.   Balwani Adopts Holmes' MIL to Exclude Evidence Concerning
             Wealth, Spending, And Lifestyle (Dkt. No. 567)

20  Balwani adopts Holmes' Motion to Exclude Evidence Concerning Wealth, Spending, and

21  Lifestyle Under Rules 401–403 (Dkt. No. 567), and asks the Court to apply its ruling on Holmes'

22  motion to his trial.  Balwani Mot. at 50-51.  The Court previously ruled as follows:

23

24  ───────────────

[4] Balwani also argues that physician witnesses should not be able to attribute inaccurate Theranos
25  test results to "laboratory error."  Balwani Mot. at 39.  In opposition, the Government states that it
does not plan to elicit such testimony, but instead, as in the Holmes trial, will elicit testimony that
26  certain Theranos results were incorrect.  Balwani does not respond to this in his reply brief.  The
Court concludes that physician witnesses should be permitted to discuss conclusions they reached
27  regarding the accuracy of relevant Theranos test results.

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1

2

> The Government may introduce evidence that Holmes enjoyed a lifestyle as Theranos CEO that is comparable to those of other tech company CEOs.  This includes salary, travel, celebrity, and other perks and benefits commensurate with the position.  However, references to specific purchases or details reflecting branding of clothing, hotels, or other personal items is not relevant, and the prejudicial effect of that evidence outweighs any probative value.

> Based on the foregoing, the Court **GRANTS IN PART** Holmes' MIL to exclude evidence referencing her wealth, spending, and lifestyle that is outside the general nature of her position as Theranos CEO.

Holmes MIL Order at 9.

The Government agrees that the Court's ruling should apply to Balwani.  Govt. Resp. at 26.  However, in response to Balwani's concerns about appealing to class prejudice, the Government asks for the ruling to be extended to exclude any evidence of Balwani's wealth or financial status before he joined Theranos or outside of his spending associated with his salary and perks received as an executive of Theranos.  *Id*.

In light of the parties' agreement, Balwani's motion is **GRANTED**: the Court will apply the ruling on Holmes' motion to Balwani's trial.  The Government is precluded from introducing evidence of Holmes' and Balwani's wealth, spending, and lifestyle that is outside the general nature of their positions at Theranos.  The Government's request to exclude evidence of Balwani's pre-Theranos wealth is **DENIED**.  The Government has not shown that Balwani's own use of evidence of his pre-Theranos wealth would appeal to class prejudice in a manner that would be unfairly prejudicial.  If, however, Balwani presents evidence of his pre-Theranos wealth (e.g., his loan to the company), the Government may present rebuttal evidence.

### b.  Balwani Adopts Holmes' MIL to Exclude Evidence of Remedial Measures and Settlements (Dkt. No. 572)

In Holmes' Motion in Limine to Exclude Evidence of Remedial Measures and Settlements Under Rules 401-403, 407, and 408, she requested among other things, an "order precluding the [G]overnment from introducing any evidence of . . . the settlements with CMS and the Arizona Attorney General['s] Office."  Dkt. No. 572, at 10.  The Court granted as unopposed Holmes' motion to exclude the CMS Settlement and the Arizona Settlement (including the refunds

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1    associated with the Arizona Settlement).  Holmes MIL Order at 39.  The Court deferred ruling on

2    the admissibility of statements by Theranos and Holmes to the Arizona Attorney General's Office

3    in the course of its investigation and to CMS in the course of its survey and subsequent

4    proceedings.  *Id.*

5          Balwani adopts Holmes' motion and asks the Court to apply its ruling regarding the two

6    settlements to his trial.  Balwani Mot. at 51.  The Government agrees to abide by the Court's

7    ruling regarding the two settlements.

8          In light of the parties' agreement, Balwani's motion is **GRANTED.**  The Court's prior

9    ruling regarding the two settlements applies to Balwani's trial.

              **c.  Balwani Adopts Holmes' MIL to Exclude Certain News Articles (Dkt.
10                No. 578)**

11

12         Holmes moved to exclude certain news articles under Federal Rules of Evidence 403 and

13   802.  Dkt. No. 578.  She sought a blanket order excluding over fifty articles by journalists not

14   testifying at trial.  *Id.* at 1.  The Court denied the motion without prejudice as to all the articles not

15   specifically identified and filed with the motion and its accompanying declarations and exhibits;

16   denied the motion as to the "Blood, Simpler" article by Ken Auletta; and granted the motion as to

17   the following six articles: "Craving Growth, Walgreens Dismissed Its Doubts About Theranos" by

18   John Carreyrou and Christopher Weaver, *Wall Street Journal* (May 25, 2016); "Hot Startup

19   Theranos Has Struggled With Its Blood-Test Technology" by John Carreyrou, *Wall Street Journal*

20   (Oct. 16, 2015); "Walgreens Scrutinizes Theranos Testing" by John Carreyrou, Michael Siconolfi,

21   and Christopher Weaver, *Wall Street Journal* (Oct. 23, 2015); "Safeway, Theranos Split After

22   $350 Million Deal Fizzles" by John Carreyrou, *Dow Jones* (Nov. 10, 2015); "Blood Lab that

23   Boasts Breakthrough Goes on Defense Against its Doubters" by Katie Benner and Andrew

24   Pollack, *New York Times* (October 2015); and "Can Elizabeth Holmes Save Her Unicorn?" by

25   Sheelah Kolhatkar and Carolina Chen, *Business Week* (December 2015).  Holmes MIL Order at

26   44.

27         Balwani adopts Holmes' motion and asks the Court to adopt its prior decision: (1) to

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE
                                                16

United States District Court
Northern District of California

United States District Court
Northern District of California

1  provide a limiting instruction to ensure the jury considers the "Blood, Simpler" article by Ken

2  Auletta solely for its effect on readers; (2) to exclude the six articles listed above as inadmissible

3  hearsay; and (3) to allow the defense to request at trial that the Court exclude other news articles

4  the Government has not yet identified.  Balwani Mot. at 52.

5       The Government asks the Court "to remain open to reconsidering whether to admit some

6  of the previously excluded articles for a limited purpose—such as effect on the readers—as it

7  initially did for the "Blood, Simpler" article.  Govt. Resp. at 27.  In particular, the Government

8  suggests the October 16, 2015 Wall Street Journal article by John Carreyrou ("the WSJ article")

9  may provide helpful context to the jury for Balwani's trial.  *Id.*

10       Balwani's motion is **GRANTED**: the Court will apply the ruling on Holmes' motion

11  regarding news articles to Balwani's trial.  The Government's request to "remain open to

12  reconsidering whether to admit some of the previously excluded articles for a limited purpose" is

13  **DEFERRED**.

### d.  Balwani Adopts Holmes' MIL to Exclude Evidence of Customer Impact (Dkt. No. 562)

16       Holmes sought to exclude evidence of collateral emotional effects suffered by Theranos

17  customers who believe that they received erroneous results as well as hypothetical harms that can

18  result from medical decisions based on erroneous results.  Dkt. No. 562.  The Court granted

19  Holmes' motion to the extent it sought to exclude emotional, graphic, or otherwise inflammatory

20  evidence relating to the impact or potential impact on customers of inaccurate test results.  Holmes

21  MIL Order at 47–54.

22       Balwani adopts Holmes' motion and asks the Court to apply its ruling to his trial.

23  Balwani Mot. at 53.  Balwani also asks the Court to extend its ruling to specific testimony

24  introduced at Holmes' trial.  Specifically, Balwani asks the Court to preclude the Government

25  from "inviting" Dr. Zachman to testify about: (1) the "surprise" and "sadness" reported by her

26  patient, B.G., on receiving an inaccurate hCG test; (2) the "very impactful" effect that B.G.'s test

27  had on Dr. Zachman, given that she "was empathizing to [B.G.] as a woman"; and (3) her

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

discussion with B.G. about "ways to terminate a pregnancy." *Id.* (citations omitted).  Balwani also asks the Court to bar the Government from eliciting testimony from Dr. Rosendorff that "an abnormally high potassium result" "could indicate that the patient is at risk for a heart rhythm problem," i.e., "arrythmia." *Id.* (citations omitted).  Balwani views this testimony as falling within the Court's prior ruling and thus argues it should be excluded.

The Government asks the Court to at least adopt the same parameters that it set during the Holmes trial.  The Government also contends that, contrary to Balwani's assertion, it complied with the Court's Holmes MIL Order.  Further, the Government contends that there is no basis to exclude the testimony of Dr. Zachman and Dr. Rosendorff outlined above because (1) there is no guarantee that the witnesses will testify in exactly the same manner at both trials and (2) the words and phrases Bawlani takes issue describe "next steps," which the Court held was permissible.

The Court **GRANTS** Balwani's motion to the extent he asks the Court to apply the ruling on Holmes' motion to his trial.  The Court **DENIES** Balwani's motion to exclude the excerpts of Dr. Rosendorff's and Dr. Zachman's testimony outlined above.  Dr. Rosendorff's testimony is relevant, not unduly prejudicial, and is not "emotional, graphic, or otherwise inflammatory evidence."  Dr. Zachman's testimony is also relevant, not unduly prejudicial, and does not violate the Holmes MIL Order.  Although Dr. Zachman expressed emotions, her testimony was not "emotional, graphic, or otherwise inflammatory."

### e.  Balwani Adopts Holmes' MIL to Exclude Evidence of Alleged Blaming and Vilifying of Competing Companies and Journalists (Dkt. No. 577)

Holmes' Motion in Limine to Exclude Evidence of Alleged Blaming and Vilifying of Competing Companies and Journalists Under Rules 401-403 and 404 (Dkt. No. 577) sought to exclude the following evidence:

1)  A Theranos employee will testify that Holmes and Balwani led a group of employees in a chant of "Fuck you, Sonora Quest," with the implication that competitors such as Sonora Quest and Quest were "behind the questioning of Theranos."  Dkt. No. 580-2 at 59.

United States District Court
Northern District of California

2)  A Walgreens employee will testify that Holmes stated that "Theranos' competitors were sending people into Walgreens to order esoteric blood tests in order to throw off the blood draw percentages." *Id.* at 61.

3)  Another Walgreens employee will testify that "Balwani advised Walgreens that the reasons for the high number of venous blood draws included the cartridges not being ready for tests that were being ordered, LabCorp and Quest sending people in to order tests which required venous blood draws, and doctors ordering esoteric tests." *Id.* at 61–62.

4)  A Theranos employee will testify that he learned at "an all-hands meeting" of an impending WSJ article by John Carreyrou.  At that meeting, "the attendees were told the article made several allegations that were false, and that this story was being pushed by LabCorp and Quest." *Id.* at 62.

5)  A Theranos employee will testify that Holmes and Balwani led a group of employees in a chant of "Fuck you, Carreyrou." *Id.* at 59.

The Court granted Holmes' motion as to the chants.  Holmes MIL Order at 68–70.  The Court deferred ruling on the statements to Walgreens employees and the all-hands meeting statements, noting the Government's inability to point to any evidence showing that these two categories of statements were false.  *Id.*

Balwani adopts Holmes' motion and asks the Court to apply its ruling to his trial.  Balwani Mot. at 53.  The Government maintains its position as stated in its opposition to Holmes' motion and asks the Court to at least adopt the same parameters that it set during the Holmes trial.

In light of the parties' agreement and in the absence of any new arguments on the issues raised in Holmes' motion, Balwani's motion is **GRANTED**.  The Court's prior ruling applies to Balwani's trial.

> ### f.  Balwani Adopts Holmes' MIL to Exclude Evidence and Argument as to the Purported Inaccuracy or Unreliability of Tests Not Identified in the Bill of Particulars (Dkt. No. 568)

Holmes moved to preclude the Government from introducing at trial evidence and argument regarding the purported inaccuracy and unreliability of tests not identified in the Government's Bill of Particulars.  Dkt. No. 568.  The Court granted the motion as follows:

> The Government is precluded from introducing any evidence or argument regarding the purported inaccuracy and unreliability of tests not identified in the Government's Bill of Particulars.  The

United States District Court
Northern District of California

> Government may still introduce evidence or testimony about tests
> not listed in the Bill of Particulars for purposes unrelated to the
> accuracy and reliability of those tests.  The Government shall
> provide notice of exhibits or testimony that may involve tests not
> identified in the Bill of Particulars prior to their introduction so that
> the parties and Court can address any issues, in the context of
> specific evidence, outside the presence of the jury.

Holmes MIL Order at 80.

Balwani adopts Holmes' motion and maintains that the Court should exclude evidence of tests that are outside the scope of the assays listed in the Bill of Particulars.  Balwani Mot. at 54. Balwani also requests that, at a minimum, the Court compel the Government to give notice of exhibits or testimony that may involve tests not identified in the Bill of Particulars before their introduction.  *Id*. at 55.

The Government requests the Court reconsider its prior ruling because it excludes "too large of a swath of otherwise relevant evidence."  Govt. Resp. at 29.  The Government anticipates that based on the Holmes trial, evidence at Balwani's trial is likely to reference tests beyond those identified in the Amended Bill of Particulars[5] because Defendants and Theranos employees did not treat each assay on an individual basis.  Govt. Resp. at 28.  For example, the Government indicates that CMS inspector Sarah Bennett may testify that the issues CMS found and reported as a deficiency with respect to one assay were often present with respect to multiple assays beyond the one listed in the CMS Report.  *See, e.g.*, Volkar Decl., Ex. 6 at 4–7 ("There is a systemic issue of quality.  Across the board, not just with the Edison but also their other testing.").  As another example, the Government cites to internal Balwani text messages to Holmes describing problems with Theranos' CLIA lab.  Govt. Resp. at 29.

The Court is inclined to reconsider its prior ruling, but defer any rulings on specific evidence until trial.  The Court finds that evidence of "a systemic issue of quality" and Balwani's text messages describing problems with Theranos' CLIA lab are relevant.  The Ninth Circuit has

---

[5] On November 5, 2021, the Government served an Amended Bill of Particulars to add another blood test—"the CBC panel including each of its component assays"—to the list of assays.

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

20

United States District Court
Northern District of California

observed that there is a low bar for relevancy under Federal Rule of Evidence 401.  *See Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).  Balwani counters that there is no need for the Court to reconsider the prior ruling because evidence on the accuracy and reliability of tests run on unmodified commercial machines goes beyond what is charged in the TSI.  The Court already rejected this argument.  *See supra* Section III.A.  Balwani also argues that the evidence is prejudicial and will confuse the jury.  However, the Court's reconsideration of the prior ruling does not mean the evidence is admissible, only that it may be admissible.  The Court **DEFERS** ruling on the issue until trial.  The Government shall provide notice of exhibits or testimony that may involve tests not identified in the Bill of Particulars prior to their introduction so that the parties and Court can address any issues, in the context of specific evidence, outside the presence of the jury.

### g.  Evidence of Fault for the Loss of Theranos' LIS (Dkt. No. 561)

Theranos used a Laboratory Information System ("LIS") database to store patient results and quality control data.  Holmes MIL Order at 56.  While the Government sought and received a grand jury subpoena to access the database, the Government has been unable to review its copy of the LIS database because it was encrypted, and Theranos never provided the encryption key to the Government, rendering the LIS database copy inaccessible.  Order Denying Mot. to Suppress ("Holmes Suppression Order"), Dkt. No. 887, at 6–7.

Holmes and the Government litigated the loss of the LIS extensively.  While the Court did not conclusively determine who was at fault for its destruction in the Holmes MIL Order, the Government presented evidence that Theranos and its counsel at WilmerHale played a significant role in the Government's inability to access the data stored on the LIS.  Holmes MIL Order at 56; *see also* Holmes Suppression Order at 4–7, 12, 14–16.  Balwani re-raises arguments that the Government mishandled the collection of the LIS and suggests that certain testimony should be limited as a result.  Citing the Holmes MIL Order, Balwani argues that, at minimum, evidence regarding fault for the loss of the LIS is not admissible.  Balwani Mot. at 55.  In the Holmes MIL Order, the Court held that (1) evidence about Theranos' destruction of the LIS is "not relevant

United States District Court
Northern District of California

1   under Rules 401 and 404(b)," and (2) the defense could make arguments regarding the

2   significance of the LIS data to the Government's case.  Holmes MIL Order at 57–58.  However,

3   the Court deferred ruling on whether an argument at trial that "the LIS database is unavailable

4   because of the Government's failure to obtain it" opened the door to the Government presenting

5   evidence of Theranos' culpability in the loss of the LIS.  *Id.*

6        The Court adopts those holdings in this case, with some clarification.  The Court will allow

7   Balwani to argue there is insufficient evidence or lack of proof.  He may argue that individual

8   patient or physician testimony is insignificant without broader comparative data.  However,

9   raising the unavailability of the LIS or implying fault or responsibility for its unavailability may

10  lead to the admission of additional evidence, including evidence of the circumstances surrounding

11  the dismantling of the LIS.  This does not preclude Balwani from presenting the defense of his

12  choosing.  *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000).  Balwani may still present his

13  defense, but it may open the door to the introduction of evidence regarding the circumstances,

14  including fault, for the loss of the LIS.  Because this issue depends on what arguments Balwani

15  raises at trial, the Court **DEFERS** ruling.

16      **2.  Balwani's Request to Reconsider Rulings from Holmes' Trial**

17       Balwani adopts and incorporates the arguments in the eleven Holmes motions discussed

18  below, for which he offers no new arguments.  Balwani Mot. at 48.  The Government incorporates

19  its prior oppositions and arguments on the associated issues.  Govt. Resp. at 25.  Further, the

20  Government asserts that there is no basis for the Court to reconsider at this time its prior rulings on

21  the eleven motions.  *Id.*

22      **a.  Balwani Adopts Holmes' MIL to Exclude Anecdotal Evidence (Dkt. No.
23  563)**

24       Holmes sought to exclude "anecdotal" patient or physician testimony about inaccurate test

25  results under Federal Rules of Evidence 401-403.  Dkt. No. 563.  The Court held that "[e]vidence

26  of even one inaccurate result tends to show that Theranos was producing inaccurate results, even if

27  it does not fully prove the point," and accordingly denied the motion.  Holmes MIL Order at 48–

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1    49.

2         Because there has been no change in circumstance and the parties' arguments remain the

3    same, the Court applies the ruling on Holmes' motion to Balwani's trial.

4              **b.  Balwani Adopts Holmes' MIL to Exclude FDA Inspection Evidence**
                   **(Dkt. No. 573)**
5

6         Holmes moved to exclude "evidence of or reference to, [the FDA's] 2015 inspections of

7    Theranos." Dkt. No. 573 at 1.  Holmes' motion referred specifically to 27 exhibits that "relate to

8    [the] FDA's inspections," and that were "identified by the Government . . . as proposed exhibits."

9    *Id*. at 3.  These exhibits ("the FDA inspection evidence") encompass the FDA's documented

10   observations (Forms 483), internal emails among FDA agents, and records of communications

11   between Holmes and Balwani made during and about the FDA inspection.  *Id*. at 1–4.  Holmes

12   argued that "[t]hese documents should be excluded along with any corresponding testimony

13   offered by the government."  *Id*. at 3–4.

14        The Court found that evidence arising out of the FDA inspection of the Theranos lab in

15   California was relevant to Holmes' state of mind, intent, and knowledge regarding the alleged

16   misrepresentations about the accuracy and reliability of Theranos' blood tests.  Holmes MIL Order

17   at 11.  The Court also held that two FDA inspection reports referred to as Form FDA-483s, were

18   admissible under Federal Rule of Evidence 803(8)(A)(ii).  *Id*. at 14.  The Court deferred ruling on

19   Holmes' motion, acknowledging the possibility for further side bar discussions on the matter,

20   should Holmes wish to specify certain exhibits within this collection of evidence and make new

21   arguments as to why these particular exhibits should still be excluded.  *Id*. at 16.  Holmes later

22   moved to partially redact certain government agency reports, including Form FDA-483 for the

23   Palo Alto facility and Form FDA-483 for the Newark facility.  The Court provisionally approved

24   Holmes' proposed redactions under the "Observation 1" heading of the Form FDA-483 for the

25   Newark facility and denied the motion for partial redactions in all other respects.  Order Re Pre-

26   Trial Motions, Dkt. No. 989.

27        Balwani adopts Holmes' motion, as well as Holmes' proposed redactions to the two FDA

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

     United States District Court
     Northern District of California

1  forms and her supporting arguments.  Specifically, Balwani requests the same redactions under the

2  "Observation 1" heading of the Form FDA-483 for the Newark facility if the Court admits it into

3  evidence.

4       Because there has been no change in circumstance and the parties' arguments remain the

5  same, the Court applies the ruling on Holmes' motion and the ruling on the redactions to the two

6  FDA forms to Balwani's trial.

7       **c.  Balwani Adopts Holmes' MIL to Exclude Evidence of Alleged**
        **Violations of Industry Standards and Regulations (Dkt. No. 569)**

8

9       Holmes moved to exclude evidence regarding Theranos' purported "[v]iolations of

10  industry standards and government regulations or rules regarding research and development

11  procedures, medical devices and clinical laboratory practices."  Dkt. No. 569, at 1–2 (citing Dkt.

12  No. 580 at 7).  Holmes argued that (1) the Government's evidence of alleged violations of industry

13  standards and government regulations requires impermissible legal opinions and (2) alleged

14  violations of industry standards and government regulations are irrelevant and prejudicial.  The

15  Court denied Holmes' motion.  Holmes MIL Order at 72.  The Court held that the Government

16  cannot offer evidence detailing violations of industry standards or government regulations solely

17  to support an element of the charged offense, but that statements made to Holmes concerning

18  perceived violations of industry standards and government regulations were admissible.  *Id*. at 72.

19  The Court also indicated that a curative instruction would be given to the jury stating that this

20  evidence was offered only to show notice was given to Holmes and her state of mind.  *Id*.

21       Balwani adopts Holmes' motion and asks the Court to grant the motion in full.  Balwani

22  also contends that the Court should at least limit the jury's consideration of this evidence to

23  assessing notice to him and his state of mind.

24       Because there has been no change in circumstance and the parties' arguments remain the

25  same, the Court applies the ruling on Holmes' motion to Balwani's trial.  The admissibility of the

26  evidence at issue is subject to limitations such as relevancy and *Phillips v. United States*, 356 F.2d

27  297 (9th Cir. 1966), where the Ninth Circuit rejected a "constructive notice" theory imputing a co-

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   conspirator's actual notice of prospective or actual customer complaints against another co-

2   conspirator.

3       **d.  Balwani Adopts Holmes' MIL to Exclude Theranos' Customer Service**
            **Spreadsheets (Dkt. No. 570)**

4

5       Holmes moved on hearsay, prejudice, and improper character evidence grounds to

6   preclude the Government from introducing Theranos' customer-service spreadsheets, which

7   purportedly contain summaries of various customer-service communications.  Dkt. No. 570.  The

8   Court ruled that the Government could introduce the contents of the spreadsheets to show Holmes

9   knew of customer complaints about accuracy and reliability.  However, the Court deferred

10  deciding whether the spreadsheets were admissible under the business records exception.  Holmes

11  MIL Order at 74.  The Court also ruled that evidence of the specific details of the customer

12  complaints that address Theranos' tests would consume excessive time, could confuse and mislead

13  the jury, and prejudice Holmes.  Accordingly, the Court allowed the Government to present

14  evidence that customer complaints focusing on Theranos' tests exist, but precluded evidence of the

15  specific details of the complaints.  *Id.*  The Court also agreed to give the jury a limiting instruction

16  that such evidence is admissible only for the purpose of establishing Holmes' notice of those

17  complaints and not to establish there were actual issues with Theranos' technology.  *Id.* at 74–75.

18      Balwani adopts Holmes' motion.  If the Court allows the Government to introduce portions

19  of the spreadsheets to show notice, Balwani asks the Court to, at a minimum, adopt the ruling

20  from Holmes' trial.  Balwani also adopts the arguments in Holmes' Renewed Motion to Admit

21  Certain Customer Feedback Reports (Dkt. 1140) as to specific customer feedback reports shared

22  directly with him.  Holmes argued that the customer feedback reports were relevant to four issues

23  in the case:  Holmes' alleged representation to investors that Theranos presently had an expanding

24  partnership with Walgreens; the accuracy and reliability allegations; allegations concerning price

25  and the role of price and the representations that Holmes allegedly made to customers; and

26  Holmes' vision and understanding that the Theranos business was working.  The Court observed

27  that the customer comments were not about test results, but a host of other subjects such as

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

25

convenience, pricing, the Theranos app, and customer experiences at the Walgreens test site, including the facilities' cleanliness and waiting times.  Tr. of Nov. 16, 2021 Trial Proceedings, Dkt. No. 1288, at 6330:8-17, 6344:18-25, 6345:22-25.  A significant majority of comments were about pricing—customers were happy that they could find affordable testing.  *Id*. at 6330:01–6331:23, 6344:20–6345:1.  The Court concluded that the customer feedback reports were not relevant to the issues in the indictment and denied the motion orally.  *Id*. at 6349:25–6351:13. Balwani argues that there is a "mismatch" between allowing the Government to present customer complaints for a defendant's state of mind but barring evidence of positive customer feedback for the same purpose.  Balwani Mot. at 58.

Again, because there has been no change in circumstance and the parties' arguments remain the same, the Court applies the ruling on Holmes' motion to Balwani's trial.  The admissibility of the evidence at issue is subject to limitations such as relevancy and *Phillips v. United States*, 356 F.2d 297 (9th Cir. 1966), ), where the Ninth Circuit rejected a "constructive notice" theory imputing a co-conspirator's actual notice of prospective or actual customer complaints against another co-conspirator.  Balwani's "mismatch" argument is unpersuasive.  For the reasons stated above, the customer feedback reports are not relevant to the issues in the indictment.  Moreover, the minimal probative value the customer feedback reports may have is substantially outweighed by a danger of unfair prejudice and excessive consumption of time.

### e.  Balwani Adopts Holmes' MIL to Exclude Bad Acts of Theranos Agents and Employees (Dkt. No. 565)

Balwani also adopts Holmes' Motion to Exclude Alleged Bad Acts and False or Misleading Statements of Theranos Agents and Employees (Dkt. No. 565), including related memoranda points and authorities, and any declarations, attachments, or other supporting evidence.  Holmes provided examples of anticipated evidence and arguments regarding Theranos agents and employees that she contended the Government had not connected to any knowledge or conduct on her part.  The Court deferred ruling on Holmes' motion, noting that it was incumbent upon the Government to come forward with proof of a sufficient connection between Holmes and

United States District Court
Northern District of California

each "bad act" so that the Court may assess the relevance and potential prejudice of each bad act. Holmes MIL Order at 63–64.  The Court also noted that Federal Rule of Evidence 104(c)(3) requires a hearing out of the presence of the jury to consider whether the Government has presented sufficient evidence of a connection to justify admissibility of any particular bad act, to avoid Rule 403 issues.  Fed. R. Evid. 104(c)(3) ("The court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . (3) justice so requires.").  Balwani maintains that the evidence identified in Holmes' motion should be excluded, but asks at a minimum for the Court's ruling to apply to his trial.

Once again, because there has been no change in circumstance and the parties' arguments remain the same, the Court applies the ruling on Holmes' motion to Balwani's trial.[6]  The Court will **DEFER** ruling on the admissibility of any particular bad act pending the Government's establishment of the necessary foundation for the evidence it seeks to introduce.

### f.   Balwani Adopts Holmes' MIL to Exclude Evidence of Civil or Regulatory Settlements (Dkt.  No. 571)

Holmes moved to exclude evidence regarding civil or regulatory settlements Theranos, Holmes, or Balwani entered into, including evidence regarding the negotiation of those settlements and any evidence pertaining to Theranos' ongoing civil litigation.  Dkt. No. 571.  The Court deferred ruling on Holmes' Motion, noting that the evidence could be used for certain purposes under Federal Rule of Evidence 408 and further, that the evidence could be used for impeachment purposes.  Holmes MIL Order at 44–47.

Balwani adopts Holmes' motion and maintains that evidence of civil or regulatory settlement should be excluded outright.  However, he acknowledges the Court's prior ruling and asks the Court to adopt, at a minimum, the same approach for his trial.

---

[6] At February 4, 2022 hearing, Balwani's counsel argued that certain actions taken by David Boies (or at his direction) should be excluded.  The parties did not raise this issue in their briefs and the Court therefore does not consider it here.  Balwani is free to raise an objection to the evidence at the appropriate time during trial.

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Once again, there has been no change in circumstance and the parties' arguments remain

2 the same.  Accordingly, the Court applies the ruling on Holmes' motion to Balwani's trial.

3    **g.  Balwani Adopts Holmes' MIL to Exclude Evidence on Interactions
        with Regulatory Agencies (Dkt. No. 575)**

4

5    Holmes moved to exclude certain evidence relating to Theranos' interactions with

6 government regulatory agencies under Federal Rules of Evidence 401–403 and 801–803.  Dkt.

7 No. 575.  The Court declined to issue a broad exclusion of evidence relating to unidentified

8 regulatory agencies.  Holmes MIL Order at 30.  Instead, the Court directed the Government to

9 provide notice before seeking to introduce evidence not yet disclosed and to include its reasons for

10 late disclosure.  *Id.*

11    Balwani adopts Holmes' motion and "reserves the right, as afforded to Ms. Holmes, to

12 raise 'further discussions on these matters, should the parties wish to specify certain exhibits . . .

13 and offer new arguments as to why those particular exhibits should still be excluded.'" Balwani

14 Mot. at 60 (quoting Holmes MIL Order at 30).

15    Again, there has been no change in circumstance and the parties' arguments remain the

16 same.  Accordingly, the Court applies the ruling on Holmes' motion to Balwani's trial.

17    **h.  Balwani Adopts Holmes' MIL to Exclude Evidence of Trade Secrets
        Practices (Dkt. No. 566)**

18

19    Holmes moved to exclude evidence of Theranos' trade secret practices under Federal Rules

20 of Evidence 401–404.  Dkt. No. 566.  The motion primarily concerned three categories of

21 evidence relating to Holmes playing a role in: (1) fostering a culture of secrecy and forcing

22 employees and others to sign non-disclosure agreements; (2) restricting access to laboratory areas

23 within Theranos; and (3) threatening or intimidating employees or former employees (collectively,

24 "trade secret practices").  The Court denied the motion and indicated that Holmes may raise

25 pertinent objections at trial if the Government failed to establish a sufficient connection between

26 Holmes and Theranos' trade secrets practices.

27

28 Case No.: 5:18-cr-00258-EJD-1
   ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1   Balwani adopts Holmes' motion.  Balwani Mot. at 60.  Recognizing that the Court denied

2   the Motion, he asks the Court to at least acknowledge that it is "incumbent upon the Government

3   to come forward with a sufficient connection between [Mr. Balwani] and Theranos'

4   implementation of particular trade secrets practices, including threatening and intimidating

5   employees or former employees of the company." *Id.*  Balwani argues that without this

6   foundation, evidence of the Theranos' trade secret practices should be excluded.

7   There has been no change in circumstance and the parties' arguments remain the same.

8   Accordingly, the Court applies the ruling on Holmes' motion to Balwani's trial.

9   **i.  Balwani Adopts Holmes' MIL to Exclude Evidence on Third-Party
    Testing Platforms (Dkt. No. 576)**

10

11   Holmes moved to exclude evidence and argument that Theranos "tampered with" and

12   "concealed" commercially available third-party diagnostic testing platforms.  Dkt. No. 576.  The

13   Court granted in part and denied in part Holmes' motion.  Holmes MIL Order at 67–68.  The

14   Court ruled that the Government may introduce evidence related to the modifications or the tests

15   run on third-party platforms, but was precluded from framing its evidence and argument in a way

16   to suggest the third-party platforms were "tampered" with until and unless that has been proven by

17   appropriate evidence.  *Id.* at 67.  The Court also ruled that the Government may introduce

18   evidence relating to what was or was not "concealed" or shared with manufacturers of the third-

19   party testing platforms.  *Id*. at 67–68.

20   There has been no change in circumstance and the parties' arguments remain the same.

21   Accordingly, the Court applies the ruling on Holmes' motion to Balwani's trial.

22   **j.  Balwani Adopts Holmes' MIL to Exclude Rule 404(b) Evidence for
    Lack of Expert Support**

23

24   Holmes moved to exclude certain Rule 404(b) evidence.  Dkt. No. 564.  Specifically,

25   Holmes sought to exclude three subcategories of evidence disclosed in the Government's Rule

26   404(b) notice dealing with aspects of Theranos' laboratory practices: (1) multiplexing test results

27   and disregarding outliers to mask inconsistency; (2) improperly setting and altering reference

28   Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

ranges; and (3) withholding important information from doctors and patients.  The Court found that the majority of evidence at issue was fact evidence not necessitating evaluation under Rule 404(b); that the evidence did not require an expert opinion to be introduced at trial; and that a blanket exclusion of evidence was not warranted.  Holmes MIL Order at 76–78.

Balwani adopts Holmes' motion, acknowledging that the Court denied Holmes' motion. Because there has been no change in circumstance and the parties' arguments remain the same, the Court applies the ruling on Holmes' motion to Balwani's trial.

### k.  Balwani Adopts Holmes' MIL to Exclude Expert Testimony of Dr. Stephen Master

Holmes previously moved to exclude the opinion testimony of the Government's expert witness, Dr. Stephen Master, under Federal Rules of Evidence 401-403 and 702.  Dkt. No. 560. The Court denied in part and deferred in part Holmes' motion.  Dkt. No. 797.  Specifically, the Court declined to exclude Dr. Master's opinions regarding industry standards and the Vitamin D assay, and deferred ruling on the balance of the motion to exclude pending a *Daubert* hearing.

Balwani adopts Holmes' motion to exclude and "requests at least that same relief if the government intends to call Dr. Master at his trial."  Balwani Mot. at 61–62.  The Government incorporates its previous arguments and filings on the motion.  Govt. Resp. at 25.  Because there has been no change in circumstance and the parties' arguments remain the same, the Court applies the same ruling to Balwani's motion.  Dkt. No. 797.

Accordingly, the Court adopts its prior ruling and **DENIES** the motion to exclude Dr. Master's opinions regarding industry standards and the Vitamin D assay.  The Court will **DEFER** ruling on the balance of Balwani's motion to exclude pending a *Daubert* hearing.  The Government shall determine Dr. Master's availability for a *Daubert* hearing, meet and confer with Balwani's counsel regarding scheduling, and shall notify the deputy clerk of the parties' proposed schedule for a *Daubert* hearing.

### 3.  Balwani Adopts Holmes' Motion to Suppress

Holmes previously moved to suppress evidence of customer complaints and testing results,

1     as well as the CMS Report based on the balancing test described in *United States v. Flyer*, 633

2     F.3d 911, 916 (9th Cir. 2011) and *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.

3     1979) (en banc). Dkt. No. 810. She argued that the Government should not be permitted to use

4     this evidence as "evidence of fraud" after it failed to gather and preserve the LIS database.

5     Holmes also requested an evidentiary hearing and further production from the Government.

6        The Court denied Holmes' motion to suppress, holding that the exculpatory value of the

7     LIS database was speculative. Holmes Suppression Order. The Court determined that the

8     Government never had true possession of a working copy of the LIS database and played no part

9     in the decommissioning and dismantling of the original database equipment that resulted in the

10     permanent loss of the necessary encryption key. Accordingly, the Court found no bad faith on the

11     part of the Government and no due process violation. Because the Government never actually

12     possessed an accessible working copy of the LIS database, and because the Government did not

13     cause the destruction or loss of the LIS, the Court did not engage in the three-factor analysis under

14     *Arizona v. Youngblood*, 488 U.S. 51 (1988), or reach the question of whether other sanctions are

15     warranted under the *Loud Hawk* balancing test.

16        Balwani adopts Holmes' unsuccessful motion to suppress. Balwani Mot. at 62–63. He

17     argues that the Court should now come to a different conclusion based on the opinion of Richard

18     L. Sonnier III, Balwani's Microsoft SQL expert witness. Balwani asserts that the Court's previous

19     ruling relied on inaccurate information from the Government. Specifically, according to Mr.

20     Sonnier: no private encryption key was necessary for the Government to access the LIS database;

21     the Government would not have needed such a key if it had obtained the original LIS equipment;

22     and disassembling the LIS in August 2018 did not destroy the LIS database. *Id.* at 62 (citing

23     Sonnier Decl. ¶¶ 10-13). He opines that the Government could have either obtained the LIS

24     database equipment or the disk drives for the LIS. *Id.* ¶ 4.

25        This new evidence does not alter the Court's original analysis. First, as to the threshold

26     question of whether the LIS database contained exculpatory evidence, Balwani offers no new

27     evidence or arguments. He simply assumes that the evidence is exculpatory. At the hearing, he

28     Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1    described other exculpatory evidence demonstrating that Theranos did provide accurate and

2    reliable test results, and then went on to conclude that the LIS database must therefore contain

3    "millions of exculpatory results." Tr. of Feb. 8, 2022 Proceedings at 47:5–50:10. The LIS

4    database could contain millions of exculpatory results, but as the Court explained in its previous

5    order, it is equally likely that it also contain millions of *inculpatory* results. The exculpatory value

6    of the LIS database was and remains speculative.

7            As to the question of whether the Government's conduct constituted bad faith, Balwani

8    takes no issue with the Court's prior ruling concerning events up to August 31, 2018, but instead

9    focuses on the Government's actions after that date. Specifically, he points to a Government

10   Automated Litigation Specialist ("ALS") Supervisor who suggested obtaining the original LIS

11   database hardware, arguing that the Government ignored the advice of "its own expert." *Id.* at

12   33:14–43:19. Balwani contends that suppression is warranted because the Government did not

13   attempt to obtain the original LIS hardware despite its own employee's suggestion.

14          This argument is unpersuasive for multiple reasons. First, while the ALS Supervisor did

15   suggest obtaining the original LIS hardware, that was only one proposal among several: (1) asking

16   Theranos for a production that could be viewed and processed in a standard way; (2) "encouraging

17   [Theranos] to consider handing over its physical SQL server and setting it up in a workroom"; (3)

18   checking with the FBI or other government agencies to see if they would be able to process large

19   SQL database archives; and (4) identifying a vendor who could process the copy of the LIS

20   database (which could be cost-prohibitive). Sonnier Decl., Ex. C ("*Brady* Ltr.") ¶ 46. The

21   Government apparently elected to pursue the first and third options, albeit unsuccessfully. *Id.*, Ex.

22   C ¶ 48. The Court cannot say that the Government's choice was made in bad faith, particularly

23   when ubsequent interviews with persons possessing direct, personal knowledge of the LIS

24   revealed that attempting to reconstruct the system using the original equipment would not have

25   been feasible post-decommission. *See, e.g.*, *id.*, Ex. H at US-REPORTS-000016264 ("[O]nce the

26   servers were turned off, then a forensic team would be needed to recover the data on the LIS, but

27   nobody on [Theranos' IT consultant's] team knew how to do this or if it would even be possible. .

28

1   . . Moving hundreds of devices with thousands of connections would be nearly impossible, which

2   is why the percent chance of getting everything back up and running was so low.  They discussed

3   trying to move the LIS without taking it apart, but that was not possible. Additionally, a lot of the

4   connectivity was virtual, located in the software. . . . T]he LIS would be lost once they moved

5   it."); *id.*, Ex. J at TheranosABC00039050 ("*As long as the physical servers stay intact*, the data on

6   them is preserved, and can be accessed by someone with the proper password." (emphasis added));

7   *id.*, Ex. M at US-REPORTS-0025154 ("[T]he LIS database was a bespoke database developed by

8   a group of software engineers who no longer worked at Theranos and they would be needed in

9   order to help move the database."); *id.*, Ex. M at US-REPORTS-0025157 ("MCCHESNEY took

10  the hard drives out of the servers to save them and took them to a different storage unit. . . .

11  However, once the hard drives were taken out of the servers, if they were not tracked as to where

12  they came from, it would have been impossible to put them back together.  Even if the hard drives

13  were all labeled correctly, it would have been extremely difficult to reconstruct the database

14  because in addition to the servers there are also hundreds of network devices which would have to

15  be connected correctly.  Accordingly, retaining these hard drives would not necessarily have

16  meant the data on them had been retained."); *id.*, Ex. N at US-REPORTS-0019325 ("The LIS was

17  on completely different infrastructure consisting of hundreds of servers.  Since [Theranos' IT

18  consultant] did not know the system inside and out, the way they would know a Microsoft and

19  VMware system, there was no way to be able to move it since it was a customized system."); *id.*,

20  Ex. M at US-REPORTS-0019325–26 ("If one had the data and knew how to understand it and

21  query the data then simply having the database might be enough.  However, if you want the

22  application to be usable again by people you will have to reconstruct the whole application [to]

23  restore it.  CHUNG did not think [it would] have been possible to get the LIS database to work

24  again after it was taken apart, and thought he had told people that it could not be reconstructed as

25  there were a lot of conversations about feasibility. . . . [O]nce you take the hard drive out of the

26  system it would be almost impossible to get it working again."); *id.*, Ex. N at US-REPORTS-

27  0019329 ("The four things necessary to try to rebuild the LIS database would have been the

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

encryption keys, binary, database, and the build production documents.  It would have been a gargantuan effort to rebuild this system from scratch.  However, they would need the encryption key, so it would be impossible to rebuild it without this, and they did not have it.  Even if they had everything [including] the encryption key it would take a team of engineers and project managers to put the LIS database back together.").  Mr. Sonnier's declaration does not address these statements.

Second, Holmes made a similar argument concerning the Government's post-August 31, 2018 actions or lack thereof.  Holmes Suppression Order at 13–14.  The Court ultimately found that the Government's post-August 31, 2018 conduct to be irrelevant because the encryption key necessary to decrypt the LIS database or its copy was lost when the equipment was dismantled, destroying the disk array.  *Id.*  Balwani offers Mr. Sonnier's opinion that this was not actually the case.

The Court has reviewed Mr. Sonnier's declaration and finds it unconvincing in this regard.  While the Court does not doubt Mr. Sonnier's qualifications as an expert, his opinion appears to be based solely on his review of a selection of documents produced in discovery.  Although it was not possible for Mr. Sonnier to personally examine the LIS, he appears not to have spoken with any Theranos employees/agents with personal knowledge of the LIS to confirm his understanding of how it was set up or functioned.  *See* Sonnier Decl. ¶ 4.  As the Government noted, the LIS was a bespoke database system.  *See, e.g.*, *id.*, Ex. N at US-REPORTS-0019325.  Thus, while Mr. Sonnier may have an excellent understanding of SQL databases in general, it is not clear that he has an equally excellent understanding of the LIS's unique features.

Furthermore, Mr. Sonnier's opinion is inconsistent with the documentary evidence and statements from Theranos employees/agents that the Court previously considered.  Mr. Sonnier opines that the encryption key was only necessary for the copy of the LIS database that the Government received from Theranos, and that no key was necessary for the original LIS database.  *Id.* ¶ 11 ("[T]his password for the private encryption key would have been necessary only for accessing data from the LIS database backup that Theranos produced to the government in August

2018.  The missing password for the private encryption key **would not** have been necessary had the government obtained possession of the equipment running the LIS database either before or after August 31, 2018.  Unlike with the LIS database backup produced by Theranos, possessing this equipment would have allowed access without any password for the private encryption key." (emphasis original)).  But multiple Theranos employees/agents with actual knowledge and experience with the LIS very unambiguously stated otherwise.  *See, e.g.*, *id.*, Ex. E at US-REPORTS-0016252 ("The LIS was a completely separate network which was connected to the Internet, but encrypted by a software based encryption key."); *id.*, Ex. G at US-REPORTS-0019712–13 ("CADDENHEAD never had access to the information on the LIS database because this information was encrypted and he did not have the encryption key. . . . CADDENHEAD could copy the LIS database without the private key needed to access the data in the database. . . . MCCHESNEY wanted the whole package which would include the copy and the password so they could decrypt the database. . . . CADDENHEAD advised that without the private encryption key one would not be able to get into the documents."); *id.*, Ex. J at TheranosABC00039050 ("As long as the physical servers stay intact, the data on them is preserved, and can be accessed by someone with the proper password."); *id.*, Ex. G at US-REPORTS-0019713 ("CADDENHEAD only cared about where the LIS database was so that he could copy the files onto the hard drives. One could only decrypt the database with the master key, but once RMS was shutdown they would not be able to decrypt the database."); *id.*, Ex. G at US-REPORTS-0019714 ("CHANDRASEKARAN's group [was] responsible for the software portion of the LIS database and should have had all the encryption keys for the database."); *id.*, Ex. M at US-REPORTS-0019326 ("In SQL server technology in regards to encryption, just because you have made a backup you can put a password on the backup and restore the data with the password you specified, but that does not mean you know the password on the database."); *id.*, Ex. M at US-REPORTS-0019327 ("CHUNG reminded MCCHESNEY that just because they made a backup of the database that does not mean that they would be able to look at this data because there was still an encryption key that they did not know.  Accordingly, it did not matter how many copies they

1   made, because they would not be able to restore the data without a key."); *id.*, Ex. M at US-

2   REPORTS-0019329 ("The four things necessary to try to rebuild the LIS database would have

3   been the encryption keys, binary, database, and the build production documents.  It would have

4   been a gargantuan effort to rebuild this system from scratch.  However, they would need the

5   encryption key, so it would be impossible to rebuild it without this, and they did not have it.");

6   *Brady* Ltr. ¶¶ 48, 50 (stating that assignee counsel informed the Government that the LIS database

7   was encrypted, that the assignee did not have the means to decrypt it, that Balwani would likely be

8   able to decrypt the database, and that Balwani and Sekhar Chandrasekaran were responsible for

9   encrypting the LIS database); Dkt. No. 681-34 at TheranosABC00042262 ("The password for

10  restoring the private key should be in a document that Antti had in his possession . . . ."); Dkt. No.

11  681-36 at 3 (Sept. 28, 2020 expert witness report of Bruce W. Pixley differentiating between the

12  Veracrypt whole-disk encryption of the hard drive containing the LIS database copy and the

13  second separate encryption of the SQL backup files themselves).  While the Government agents

14  and attorneys might not have fully understood the LIS, Mr. Sonnier's conclusion that relevant

15  Theranos employees/agents that created and used the system also did not understand it is not well-

16  founded.  Sonnier Decl. ¶ 9.

17      Finally, as discussed in the Court's previous order denying the motion to suppress, "if

18  [Theranos] took the LIS apart they would not be able to access it again because then the

19  encryption key would be lost.  The encryption key was located on a disk array which had a lot of

20  pieces and when they took the disk array apart it would have destroyed the encryption key."  *Id.*,

21  Ex. E at US-REPORTS-0016253; *see also id.*, Ex. H at US-REPORTS-0016264 (noting that

22  "there was no way of recovering the data from" the LIS hard drives).  The disk array was

23  destroyed when the LIS equipment was dismantled and removed.  *Id.*  Mr. Sonnier acknowledges

24  this statement but does not address the physical destruction of the disk array resulting in loss of the

25  encryption key.  *See id.* ¶¶ 9-11.  He describes other methods of encrypting the LIS database but

26  does not explain the relation—if any—to the disk array or otherwise rebut the facts the

27  Government has put forward.  In the end, whether the Government had retrieved the original LIS

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

hardware is irrelevant because the encryption key was permanently lost with the dismantling of the disk array. Balwani offers nothing to refute that specific fact.

Ultimately, Mr. Sonnier's opinion does not change any of the numerous facts recited above, or at least he does not provide sufficient information to suggest that the factual situation is materially different from what the Court previously understood it to be. At worst, the Government was negligent in the route it chose to take, but negligence is insufficient under the law for the relief Balwani seeks. *Flyer*, 633 F.3d at 916 (citing *Youngblood*, 488 U.S. at 58). The Court finds that Balwani has provided no additional evidence or arguments that would warrant departing from its earlier ruling denying the motion to suppress, the request for an evidentiary hearing, and further production.

Accordingly, for the reasons stated above and in the Court's previous order denying Holmes' motion to suppress, the Court **DENIES** Balwani's motion to suppress. During the hearing, defense counsel proposed a jury instruction on this issue. The Court will consider the proposed instruction and all other instructions at the charging conference.

## IV.    GOVERNMENT'S MOTIONS IN LIMINE AND RELATED DEFENSE MOTIONS

### A.    Government's MIL No. 1 to Preclude Defendant from Offering an Improper Defense of Blaming Her Victims and Selective Prosecution

The Government previously moved to preclude Holmes from blaming victims for failing to exercise greater diligence in their dealings with Theranos and to introduce a related defense regarding the Government's selective prosecution of Holmes and Theranos amongst a range of similar abuses perpetuated by other Silicon Valley startups. Holmes MIL Order at 80. The Government now requests that the Court adopt its prior ruling in the Holmes MIL Order as to both defenses. Govt. Mot. at 1–3. Balwani does not object to the Government's request for the same ruling as to the selective prosecution defense, but he argues that precluding him from victim-blaming is unnecessary because he does not intend to argue that victims were at fault. Balwani Resp. at 1–2. Balwani notes that the Government did not object to lines of examination during the Holmes trial and only raised the issue after, and he says that he must be able to question victims

United States District Court
Northern District of California

1  concerning materiality.  *Id.*

2      Because there has been no change in circumstance and the parties do not raise any new

3  arguments, the Court adopts its prior ruling.  Holmes MIL Order at 80–83.  Accordingly, the Court

4  **GRANTS** the Government's motion to the extent Balwani attempts to utilize victim blaming as a

5  defense.  As to the selective prosecution issue, the Court understands that Balwani does not intend

6  to introduce a selective prosecution defense, and the Court takes him at his word.  The Court

7  recognizes that evidence in this case will undoubtably touch on the nature of startup companies,

8  including financing, funding, industry protocols, and other issues common to the technology

9  industry in Silicon Valley.  The Court will permit general fair comment on the marketing of new

10  ventures, including statements concerning investment and the nature of the firm, product, or

11  technology.

12      **B.      Government's MIL No. 2 to Preclude the Defense from Referencing Punishment
               in Front of The Jury**

13

14      The Government previously moved to preclude Holmes from referencing punishment in

15  front of the jury.  Holmes MIL Order at 83–84.  The Government now requests that the Court

16  adopt its prior ruling in the Holmes MIL Order.  Govt. Mot. at 3–4.  Balwani represents that he

17  will not make any overt references to punishment before the jury, and he concurs in requesting the

18  same ruling the Court made before.  Balwani Resp. at 2.

19      Accordingly, the Court adopts its prior ruling and **GRANTS** the motion to preclude the

20  defense from referencing punishment in front of the jury.

21      **C.      Government's MIL No. 3 to Preclude an Improper Advice-Of-Counsel Defense**

22      The Government previously moved to preclude Holmes from asserting "an improper

23  advice-of-counsel defense"—specifically, to preclude (1) testimony suggesting that attorneys

24  made statements to Holmes or that she relied upon such statements to negate intent, and (2) a

25  formal advice-of-counsel defense and the associated jury instruction.  Holmes MIL Order at 84–

26  86.  The Government now requests that the Court adopt its prior ruling in the Holmes MIL Order.

27  Govt. Mot. at 4–5.  Balwani does not object to the Court adopting its prior ruling.  Balwani Resp.

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1    at 2–3.

2         Accordingly, the Court adopts its prior ruling and **DEFERS** ruling on the motion as

3    premature at this time.  Prior to invoking an advice-of-counsel defense, Balwani must establish the

4    foundational prerequisites for the advice-of-counsel defense, namely: (1) waiver of the applicable

5    attorney-client privilege, (2) demonstrating that there was a full disclosure to his attorney of all

6    material facts, (3) and that he relied in good faith on the specific course of conduct the attorney

7    recommended.

8         **D.    Government's MIL No. 4 to Preclude a Defense Argument That the
            Government's Charging Decisions Were Influenced by Coordination with
9            Journalists or Competitors**

10        The Government previously moved to preclude Holmes from arguing that its charging

11   decisions were influenced by "coordination" with journalists or competitors.  Holmes MIL Order

12   at 86–88.  The Government now requests that the Court adopt its prior ruling in the Holmes MIL

13   Order.  Govt. Mot. at 5.  Balwani does not object to the Court adopting its prior ruling.  Balwani

14   Resp. at 3.

15        Accordingly, the Court adopts its prior ruling and **GRANTS** the motion to exclude the

16   defense's argument that the charging decisions were influenced by "coordination" with journalists

17   or competitors.  Nothing in this Order is intended to preclude Balwani from presenting evidence or

18   argument regarding the details, thoroughness, or good faith of the criminal investigation.

19        **E.    Government's MIL No. 5 to Preclude Defendant from Presenting an Improper
            Good Faith Defense**
20

21        The Government previously moved to preclude Holmes from "presenting an improper

22   good faith defense" that she intended to make victims' investments profitable or repay them, such

23   that they would suffer no loss in the end.  Holmes MIL Order at 88–90.  The Government now

24   requests that the Court adopt its prior ruling in the Holmes MIL Order.  Govt. Mot. at 5–6.

25   Balwani does not object to the Court adopting its prior ruling, but argues that that ruling should

26   not be extended to preclude him from offering a defense concerning his good faith belief in the

27   "legitimacy, value, and prospects of Theranos."  Balwani Resp. at 3–4.

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1

2

3

4

Accordingly, the Court adopts its prior ruling and **GRANTS** the motion to preclude Balwani from presenting an improper good faith defense outside of Ninth Circuit precedent. Specifically, the Court precludes the argument that Balwani knowingly made misrepresentations but had a good-faith belief that his alleged victims would be repaid or otherwise suffer no harm.

5

6

### F. Government's MIL No. 6 to Preclude Defendant from Offering Evidence of Actions Taken by Theranos After Defendant Left the Company

7

8

9

10

11

12

13

14

The Government moves under Federal Rules of Evidence 401 and 403 to preclude any reference to actions Theranos took after Balwani left the company in July 2016.  The Government argues that actions the company took after Balwani departed are irrelevant and risk confusing the jury.  However, the Government notes that post-employment evidence would be relevant if Balwani can demonstrate a "non-speculative connection between those actions and directives made by [Balwani]."  Govt.'s Mot. at 6–7.  In the alternative, the Government urges the Court to exclude post-employment evidence because the risk of jury confusion outweighs its probative value.

15

16

17

18

19

20

21

22

23

24

Balwani does not dispute that actions taken by Theranos or Theranos executives after his departure "must be tied in some way to him before they are relevant."  Balwani Resp. at 5. Instead, he argues that post-employment evidence may be relevant if it bears on events that occurred while he worked at Theranos.  The Parties thus appear to agree that post-employment evidence is only relevant if it relates to Balwani's conduct while at Theranos.  It is premature to say that Balwani will be unable to demonstrate a nexus between his time at Theranos and post-employment evidence.  It is also premature to say that the evidence, which has not yet been presented or identified, is unduly prejudicial.  Accordingly, the Court **DEFERS** ruling on the admissibility of post-employment evidence until Balwani makes a proffer of evidence regarding actions Theranos took after July 2016.

25

### G. Government's MIL No. 7 to Admit Trial Exhibit 4621 (CMS Letter and The Accompanying January 26, 2016 Form CMS-2567, Statement Of Deficiencies)

26

27

This Court previously found admissible the CMS Report, as captured in Trial Exhibit 4621.  *See* Holmes MIL Order at 16–20.  In the prior trial, the Government moved *in limine* to

28

Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1  seek admission of the CMS Report, and Holmes moved *in limine* for a blanket exclusion of the

2  CMS Report.  This Court denied Holmes' motion and granted the Government's motion, finding

3  the CMS survey findings and sanctions relevant, "more probative then prejudicial," and excepted

4  from the rule against hearsay under Federal Rule of Evidence 803(8)(A)(ii).  Holmes MIL Order at

5  18–20.

6      As in the Holmes trial, the Government moves to include the CMS Report and argues that

7  the CMS findings are relevant to show Balwani's state of mind, intent, and knowledge regarding

8  the alleged misrepresentations about the accuracy and reliability of Theranos' blood tests.  Govt.

9  Mot. at 10.  The Government also contends that the CMS findings are relevant evidence that

10  Theranos, despite representations to the contrary, was not a "new standard in quality" with the

11  "highest levels of accuracy" because it was not capable of consistently producing accurate and

12  reliable blood test results, and that Theranos' proprietary blood analyzer had accuracy and

13  reliability problems, as alleged in the TSI.  *Id.* at 10.  The Government further argues that the

14  CMS Report can be admitted for its truth under Rule 803(8)(A)(ii).

15      Balwani opposes the Government's motion to admit the full CMS Report on the same

16  grounds as Holmes, namely that the CMS Report is irrelevant, unduly prejudicial, and hearsay.

17  *See* Balwani Resp. at 6.  The Court disagrees.  As explained in the Holmes MIL Order and this

18  Order, the CMS Report is relevant and probative, and is not unduly prejudicial.  *See* Holmes MIL

19  Order at 16–20.  Additionally, the CMS Report is excepted from the rule against hearsay by Rule

20  803(8)(A)(ii).[7]  *See id.* at 13–16, 20.

21      Balwani argues that if the CMS Report is admitted, it should be subject to the same

22  redactions as in the Holmes trial because it contains information about non-relevant regulatory

23  compliance issues, such as Theranos' non-compliance with regulations about laboratory practices,

24  documentation and training issues, and laboratory management issues.  *See id.* at 6–7.  Balwani

25

26  [7] As in the Holmes MIL Order, the Court defers ruling on whether portions of the Report are non-hearsay under Federal Rule of Evidence 801(d)(2)(D) until the Government establishes the
27  necessary foundation for the evidence it seeks to introduce.  *See* Holmes MIL Order at 97.

28  Case No.: 5:18-cr-00258-EJD-1
   ORDER RE: MOTIONS IN LIMINE
                    41

1    contends that these portions of the CMS Report are not relevant because they do not go to the

2    allegations at issue, namely that Theranos could not consistently produce accurate and reliable

3    results.  He next argues that the CMS Report's "immediate jeopardy" finding is irrelevant to

4    anything alleged in the TSI because the finding turned on tests run on unmodified commercial

5    devices, not Theranos' own technology.  *See id.* at 7; *see also supra* Section III.A.  Finally,

6    Balwani argues that the Report is not relevant for state of mind purposes because the CMS Report

7    was issued long after he made the alleged misrepresentations regarding Theranos' technology.  *See*

8    Balwani Resp. at 7.

9           The Court disagrees with Balwani's arguments in opposition.  First, neither the

10   Government nor Balwani are bound by the trial strategy decisions Holmes made in her trial.  *See*

11   *United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990) (holding "law of the case" does not

12   apply to severed co-defendants but reaching the same well-reasoned result as a prior panel).

13   Indeed, there are important differences between the co-defendants.  Balwani ran Theranos'

14   Newark clinical laboratory and was thus closer to the issues raised in the CMS Report.  However,

15   the Court finds it more appropriate to handle objections to specific portions of the CMS Report

16   during the trial.  Second, as the Court explains below, Balwani is relying on an overly narrow and

17   hyper-technical reading of the charges against him.  The TSI charges Holmes and Balwani with a

18   scheme to defraud patients that goes beyond the abilities of just "Theranos devices."  As alleged in

19   the TSI, Holmes and Balwani engaged in a scheme to defraud patients who came to Theranos for

20   blood testing services by representing to those patients that "*Theranos* could provide accurate,

21   fast, reliable, and cheap blood tests and test results," despite knowing that Theranos was not

22   capable of consistently producing accurate and reliable results for certain blood tests."  TSI ¶¶ 16-

23   17 (emphasis added).  The portions of the CMS Report that discuss accuracy and reliability

24   problems with Theranos blood tests run on unmodified, third-party devices are thus relevant to the

25   alleged scheme to defraud patients.  Finally, the Court continues to find the CMS Report relevant

26   for state of mind, intent, and knowledge purposes.  While Theranos received the CMS Report in

27   January 2016, CMS inspectors told Balwani about the key findings after the CMS inspection in

28   Case No.: 5:18-cr-00258-EJD
     ORDER RE: MOTIONS IN LIMINE

the fall of 2015, well before he left the company.  The CMS findings are therefore relevant evidence of Balwani's state of mind and knowledge.

For these reasons, the Court **GRANTS** the Government's motion to admit the CMS Report.

### H.    Government's MIL No. 8 to Admit Text Messages Between Holmes and Balwani Offered by The Government

The Government previously sought to admit portions of certain text messages between Holmes and Balwani obtained through SEC and grand jury subpoenas.  Holmes MIL Order at 90–94.  The Government now requests that the Court adopt its prior rulings in the Holmes MIL Order and during the Holmes trial that excerpts of texts between Holmes and Balwani are relevant, non-hearsay, and authentic.  Govt. Mot. at 12–14.  Specifically, the Government seeks to admit—as relevant, non-hearsay, and authentic—Trial Exhibit 5387A or, alternatively, Trial Exhibit 5387D (consisting of Trial Exhibit 5387A and Holmes' additions under Federal Rule of Evidence 106). *Id.* at 12.

Balwani does not challenge the texts in Trial Exhibit 5387A as to authenticity, thus the Court will not adopt its prior ruling denying the Government's motion without prejudice based on authenticity.  Holmes MIL Order at 93–94; Tr. of Feb. 4, 2022 Proceedings at 137:20-21, 138:23-24 ("MS. WALSH: . . . We are not going to be objecting to the texts based on authenticity. . . . We're not going to object on authenticity, or we don't anticipate doing that.").  Nor did Balwani raise any hearsay objections in his moving papers or at the hearing.  *See id.* at 132:25–138:25; Balwani Resp. at 8–9.  However, he raises multiple other objections to the Government's request.

First, Balwani argues that the Government has not laid the requisite foundation for all of the texts contained in Trial Exhibit 5387A and therefore a blanket order admitting the entire exhibit is inappropriate.  Balwani Resp. at 8–9.  He contends that texts are irrelevant unless the Government can tie them to the capability of Theranos' technology to consistently produce accurate and reliable results "or to some other issue relevant in the case."  *Id.* at 8.  The Court agrees that a blanket admission is not appropriate at this time, particularly since its previous ruling

United States District Court
Northern District of California

1    in the Holmes MIL Order concerned not the entirety of Trial Exhibit 5387A, but rather six specific

2    excerpts, which the Court found relevant to the key events in this case or Holmes' knowledge.

3    Holmes MIL Order at 91–92.  The Court adopts the portion of the Holmes MIL Order concerning

4    the relevance of those six excerpts.

5        Balwani rejects the Government's alternative proposal of Trial Exhibit 5387D, consisting

6    of Holmes' Rule 106 additions.  Instead, he proposes his own Rule 106 additions in proposed Trial

7    Exhibit 5387H.  At the February 4, 2022 hearing, the parties agreed to meet and confer further

8    concerning those proposed additions.  Tr. of Feb. 4, 2022 Proceedings at 134:14–135:8.  The

9    Court **DEFERS** ruling on Balwani's Rule 106 objections at this time pending further discussions

10   between the parties.

11       Balwani further objects to three specific excerpts from Trial Exhibit 5387A under Rules

12   401, 403, and 404.  Balwani Resp. at 8 (referring to highlighted portions in Coopersmith Resp.

13   Decl., Ex. 49).  The Court addresses each in turn.

14       **1.  Women above 40**

15       The first excerpt Balwani finds objectionable concerns his views on women over the age of

16   40.  Coopersmith Resp. Decl., Ex. 49 at PRH_0000016.  At the hearing, the Government

17   represented that it did not intend to seek admission of this text at this time, but it reserved the

18   possibility depending on Balwani's opening or other arguments.   Tr. of Feb. 4, 2022 Proceedings

19   at 133:15-22; *see also* Gov't Reply at 7 (withdrawing request as to the "women above 40" text).

20   Accordingly, the Court **DENIES** the Government's motion to admit this text without prejudice to

21   renewal should other evidence introduced at trial shed light on the text's relevance.

22       **2.  John Carreyrou's heritage**

23       The second excerpt Balwani finds objectionable is an exchange concerning Wall Street

24   Journal reporter John Carreyrou's French heritage.  Coopersmith Resp. Decl., Ex. 49 at

25   PHR_0000195.  The Government asserts that this excerpt is relevant to the charged schemes and

26   is intertwined with the charged conduct because it occurred days after texts showing that Holmes

27   and Balwani were concerned that Carreyrou would write a negative article.  At the hearing, the

28   Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1    Government argued that this exchange demonstrates that Holmes and Balwani were unable to

2    refute Carreyrou's potential criticism on the merits and thus had to resort to attacking him

3    personally.

4        In response, Balwani contends that this text exchange is not directly related to Carreyrou's

5    visit to Walgreens, Theranos' technology generally, or investors.  He disputes the Government's

6    characterization of this exchange as inextricably intertwined with the charged conduct and argues

7    that it has little to no probative value and could prejudice the jury against him.

8        The Court is inclined to agree with Balwani.  While the Government may be correct that a

9    reasonable inference from Balwani and Holmes' texts concerning their response to Carreyrou's

10   investigation and impending article is that they did not want their schemes to defraud to be

11   exposed, this particular exchange concerning Carreyrou's French heritage does not clearly

12   demonstrate that.  This exchange appears more akin to private offhand comments, as opposed to

13   Balwani and Holmes' thoughts or plans on how to publicly respond to Carreyrou's article.  The

14   probative value of the exchange in relation to the charged conduct appears low, and the

15   Government has other evidence at its disposal through which it may express its theory that

16   Balwani and Holmes could not respond to Carreyrou's article by directly addressing the facts.  The

17   potential for prejudice likewise seems quite low, but on balance, the Court finds that it outweighs

18   the even lower probative value of the exchange on the record currently before the Court.

19   Accordingly, the Court **DENIES** without prejudice the Government's motion to admit this text

20   absent a foundation demonstrating additional probative value.

21       ### 3.  Death and sex

22       The third excerpt Balwani finds objectionable is an exchange concerning an email Holmes

23   wished to send to "Rupert" (presumably, Rupert Murdoch) following publication of Carreyrou's

24   article in the Wall Street Journal the previous day.  Balwani also separately moves to exclude this

25   excerpt in his Motion in Limine No. 6.  Balwani argues that this excerpt's use of the words "death

26   and sex," "murder," and "filth" is inflammatory, prejudicial, confusing, and misleading.  Balwani

27   also argues that these terms have "no discernable meaning in the context of this case" and are thus

United States District Court
Northern District of California

1  irrelevant.  The Government contends that this excerpt is probative of knowledge and intent to

2  defraud because it demonstrates Holmes and Balwani's efforts to distract from the content of the

3  Carreyrou article as opposed to refuting it.

4  The relevance of this text exchange is difficult to assess without knowing exactly what the

5  draft email to Murdoch said.  The Court disagrees with Balwani's assertion that the exchange

6  lacks any probative value.  These texts tend to reflect Holmes and Balwani's attempts at damage

7  control immediately following the publication of Carreyrou's article, and Balwani himself states

8  that "[a]ll our partners are bailing one at a time and same with investors."  Coopersmith Resp.

9  Decl., Ex. 49 at PRH_000035.  The exchange therefore provides some insight into Holmes and

10  Balwani's efforts to maintain the alleged conspiracy and scheme to defraud.

11  As to the prejudicial nature of the texts, the Court is not prepared to say that use of the

12  words "death," "sex," "murder," and "filth" are so prejudicial as to warrant exclusion.  Balwani's

13  argument that the texts would lead a jury to believe that Holmes and Balwani were engaged in

14  "some violent criminal activity" gives the jury far too little credit.  Even without a full

15  understanding of what, for example, "the death and sex thing" means, a plain reading of the texts

16  suggests that Holmes and Balwani were using these terms figuratively, not literally, as evidenced

17  by Balwani's suggestion not to discuss "personal life or murder because enough people on Twitter

18  will assume there is something there."  *Id.*  As Balwani observes, "[t]his is a wire fraud case."

19  Balwani Mot. at 43.  It is not a murder case, and a jury will be able to appreciate that distinction.

20  Simply using those words in conversation does not mean the speaker literally did those things.

21  Accordingly, the Court **DENIES** Balwani's Motion in Limine No. 6 to exclude this

22  exchange.

23  The Court **DEFERS** ruling on the remainder of the text messages in Trial Exhibit 5387A,

24  with the exception of the six excerpts discussed in the Holmes MIL Order, which are admitted.

25  **I.  Government's MIL No. 9 to Admit Theranos Emails as Business Records**

26  The Government moves to admit internal Theranos emails as authentic and business

27  records under Rule of Evidence 803(6)—specifically, emails to or from email addresses with the

1    domain @theranos.com sent or received by Theranos personnel and bearing the Bates prefixes

2    THER-, THERDOJ-, THPFM, THER-AZ-, TS-, and TS2-.  Govt. Mot. at 14–16.  The

3    Government cites to numerous instances in the transcript for the Holmes trial where Theranos

4    employees testified that they regularly used email to conduct work in the usual course of business,

5    that it was their regular practice to send emails at or near the time of events and to do so

6    accurately, and to share relevant information to create reliable records.  Theranos employees also

7    testified that Theranos used specific email groups to respond to particular issues.

8        Balwani states that he does not object to a ruling that, as a general matter, emails can serve

9    as business records, but he points out that some emails may not satisfy the requirement of Rule

10   803(6), and he reserves the right to object if the Government is unable to lay a proper foundation.

11   At the hearing, the Government made clear that it seeks admission of emails to improve trial

12   efficiency, particularly as to emails that were previously admitted as business records in the

13   Holmes trial.  However, Holmes' objections or lack thereof during her trial are not binding on

14   Balwani, who may feel differently about certain exhibits.

15       At the hearing, Balwani represented that he did not intend to needlessly challenge emails

16   for which the Government already laid a solid foundation, and that counsel would meet and confer

17   in advance of introduction of any emails at issue to attempt to resolve the dispute early on.  The

18   parties appear to be largely in accord.  To the extent the Government seeks a ruling that, as a

19   general principle, emails can serve as business records, the Court agrees.  The Court **DEFERS**

20   ruling on the admission of any specific emails pending objections from Balwani.

21
     **J.    Government's MIL No. 10 to Admit Statements by Theranos and Theranos**
22   **        Employees and Agents Offered by The Government**

23       The Government moves to admit statements by Theranos employees, particularly

24   employees within the clinical lab, as non-hearsay under Rule 801(d)(2)(D).  Rule 801(d)(2)(D)

25   provides that a statement made by the party's agent or employee on a matter within the scope of

26   that relationship and while it existed is not hearsay.  The Government relies on a Theranos

27   organizational chart to establish the requisite relationship.

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

Balwani responds that as in the Holmes case, "it is premature for the Court to issue a categorical ruling admitting any and all testimony of Theranos agents and employees on matters within the scope of that relationship and while it existed."  Balwani Resp. at 10 (quoting Holmes MIL Order at 95).

The Court agrees that it is premature to issue a categorical ruling pretrial.  , The Ninth Circuit has stated that to determine whether statements are admissible under Rule 801(d)(2)(D), a court must "'undertake a fact-based inquiry applying common law principles of agency.'"  *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (quoting *NLRB v. Friendly Cab Co., Inc.*, 512 F.3d 1090, 1096 (9th Cir. 2008)); *see also United States v. Agne*, 214 F.3d 47, 54–55 (1st Cir. 2000) ("Whether the statements of a corporate employee may be admitted against a corporate officer depends upon the relationship between the employee and the officer; 'if the factors which normally make up an agency relationship are present the evidence should not be excluded simply because the statement is offered against a corporate officer, rather than the corporation.'").  At present, the Government has not identified any particular employee or any specific statement it seeks to admit.  Balwani's position at the top of Theranos' organizational chart alone is insufficient to establish the admissibility of statements made by any of the 160-plus employees working in Theranos' lab.

The Government's MIL No. 10 is **DEFERRED** pending the Government's establishment of the necessary foundation for the evidence it seeks to introduce.

### K.   Government's MIL No. 11 to Exclude Self-Serving Hearsay Statements Made and Offered by Holmes

The Government previously moved to prevent Holmes from introducing witness testimony or direct evidence of self-serving statements she made to the press, to victims, or in her testimony to the SEC.  MIL Order at 98.  The Court granted the Government's motion to the extent that Holmes' out-of-court statements are inadmissible for the reasons stated in Rule 801 and *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).

The Government now asks the Court to adopt its prior ruling in the Holmes MIL Order to

United States District Court
Northern District of California

1  Balwani.  Specifically, the Government requests an order that Balwani "is not permitted to

2  introduce exculpatory statements without testifying in court."  Govt. Mot. at 18.  In response,

3  Balwani asserts that the Government's motion is not ripe for adjudication.  Balwani reasons that

4  the Government has not identified any particular statement of concern, and the admissibility of

5  any statement will depend on the context and purpose at trial.  Moreover, Balwani has not yet

6  decided whether to testify.

7       The Court **GRANTS** the Government's motion to the extent that Balwani's out-of-court

8  statements are inadmissible for the reasons stated in Rule 801 and *Ortega.*  However, a blanket

9  ruling excluding all out-of-court statements is premature.  The admissibility of a particular

10  statement will depend on the content of the statement and the purpose for which the party seeks to

11  introduce the statement.  Without additional context, the Court cannot say that a currently

12  unidentified out-of-court-statement by Balwani would be hearsay, let alone that an exception to

13  hearsay does not apply.  The Government may object in due course to specific evidence submitted

14  at trial.  Balwani shall provide the Government and the Court with fair notice when he believes the

15  issue is about to arise during trial so that the Court may address it outside the presence of the jury.

16  **L.  Government's MIL No. 12 to Preclude Defendant from Offering Evidence That
17  His Mother Received a Blood Test From Theranos Without the Necessary
      Foundation**

18       The Government believes Balwani may seek to admit evidence during his trial that his

19  mother received a test from Theranos.  The Government moves to preclude any such evidence or

20  testimony as lacking foundational relevance and hearsay under Federal Rules of Evidence 401,

21  403, and 802.  In response, Balwani asserts that it would be improper and untimely to preclude

22  him from offering any piece of evidence before his trial has begun.  Nevertheless, he

23  acknowledges that whether he will be able to admit evidence of his mother's blood tests will

24  depend whether he can lay a proper foundation.  During the February 4, 2022 hearing, both sides

25  requested the Court defer ruling on the motion.

26       The Government's motion to preclude Balwani from offering evidence of his mother's

27  blood test(s) is **DEFERRED** until Balwani has an opportunity to lay a foundation for the evidence

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California

1  at the appropriate juncture in the trial.

2  **M.  Government's MIL No. 13 to Admit Relevant Testimony from 'Non-Paying'**
3  **Patient Witnesses**

4        The Government requests the Court adopt its prior ruling in the Holmes MIL Order that

5  "[t]estimony from non-paying patient witnesses concerning their experience with Theranos testing

6  relevant and admissible[.]"  Holmes MIL Order at 47–50, 53, 99.  The Government's motion is

7  **GRANTED**.  Although a non-paying patient is not an actual victim of the alleged fraud, that

8  witness may have experienced events and actions relevant to the charges in the case.  For example,

9  a non-paying patient may have seen marketing materials or news articles about Theranos and the

10  testing it provides.  A non-paying patient may have received an inaccurate test result, which was

11  then brought to Balwani's attention.  "Evidence of even one inaccurate result [whether received by

12  a paying or non-paying patient] tends to show that Theranos was producing inaccurate results,

13  even if it does not fully prove the point."  Holmes MIL Order at 48-49.  Further, Balwani has not

14  shown that the probative value of testimony from a non-paying witness is substantially

15  outweighed by the risks of unfair prejudice, confusing the issues or misleading the jury.

16  **N.  Government's MIL No. 14 to Order Defendant to Produce Reverse *Jencks***
17  **Including Any *in Camera* Proffers**

18        The Government requests that the Court issue an order precluding Balwani from

19  introducing evidence at trial that should have been produced under the reciprocal discovery

20  obligations of Federal Rules of Criminal Procedure 16(b) and 26.2.  Further, the Government

21  seeks an order precluding Balwani from using documents stamped with the Bates prefix

22  "HOLMES-", unless Defendant informs the Government how he received such documents from

23  Holmes.  The Government also requests an order directing Balwani to produce all Rule 26.2

24  material in his possession, including documents without Bates stamps or with the Bates stamp

25  prefix HOLMES, within ten days of the hearing on this motion.

26        Balwani opposes the Government's motion, asserting that (1) he understands his

27  obligations under Rules 16(b) and 26.2 and will comply with them; (2) the request for Rule 26.2

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

1  material is premature given that his trial has not begun; and (3) he is under no obligation to

2  disclose how he received documents bearing the Bates prefix "HOLMES-."

3        To the extent the Government is requesting the Court set a date for compliance, the motion

4  is **DENIED**.  However, as stated during the February 4, 2022 hearing, the Court expects counsel's

5  compliance with Rules 16(b) and 26.2 in a timely manner such that it does not interrupt the flow

6  of the trial or undermine the Government's ability to present its case.

7      **O.**    **Government's MIL No. 15 to Exclude Defendant's Three Purported Experts Due to Insufficient Disclosure**

8

9        The Government moves to exclude three expert witnesses that Balwani identified in its

10  November 12, 2021 expert disclosure: (1) Xavier Oustalniol; (2) Richard L. Sonnier, III; and (3)

11  Scott Weingust.  Balwani provided the Government a declaration from Richard Sonnier in his

12  November 19, 2021 filing (Dkt. No. 1158), and a supplemental disclosure containing information

13  about the other two experts on December 3, 2021.  The Government acknowledges its motion is

14  moot based on Balwani's supplemental disclosures.  Accordingly, the Government's MIL No. 15

15  is **DENIED AS MOOT.**

16      **IT IS SO ORDERED.**

17  Dated:  February 28, 2022

18                                  _____

19                                 EDWARD J. DAVILA
                               United States District Judge

20

21

22

23

24

25

26

27

28  Case No.: 5:18-cr-00258-EJD-1
ORDER RE: MOTIONS IN LIMINE

United States District Court
Northern District of California