STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Fax: (408) 535-5066
   Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT THAT PHARMACEUTICAL REPORTS WERE IMPROPERLY ALTERED |
| v. | |
| RAMESH "SUNNY" BALWANI, | |
| Defendant. | Date: March 11, 2022<br>Time: 9:00 a.m.<br>Court: Hon. Edward J. Davila |

The government opposes Defendant Ramesh "Sunny" Balwani's Motion to Exclude Evidence and Argument that Pharmaceutical Reports were Improperly Altered. ECF No. 1327 ("Mot."). The Court should deny Defendant's untimely Motion because it rests on an incorrect factual premise—that there is no connection between Defendant and the altered pharmaceutical reports, which were altered in spring 2010 after Defendant had joined Theranos and was personally and professionally invested in the company. The evidence is also admissible because Defendant is vicariously liable for acts occurring during, and made in furtherance of, the alleged conspiracy and scheme to defraud investors. Finally, the probative value is not substantially outweighed by any prejudice for purposes of Federal Rule of Evidence 403.

## I. Defendant's Motion is Untimely

The parties stipulated to, and the Court approved, a deadline of November 19, 2021, to file any motions *in limine* to exclude evidence pretrial. ECF No. 1015. The government met this deadline, which was the same day it completed its case-in-chief of co-Defendant Elizabeth Holmes. ECF No. 1152, 1155. During the *Holmes* case, the government presented all salient facts underlying Defendant's present Motion to exclude well before the November 19 deadline: opening statements occurred on September 8, 2021, and the last substantive government witness relating to this topic testified on November 2, 2021. *See* ECF No. 1327-3 (Exhibit 1) at 3–36. Only co-Defendant Holmes' testimony and closing arguments in mid-December 2021 occurred after the initial deadline. *Id.* at 37–53. But Defendant waited months after these events, until the eve of his trial in March 2022, to file this untimely Motion and then, less than twelve hours after filing, Defendant also requested that the Court impose a shortened response time on the government so that the Motion may be resolved before opening statements. ECF No. 1327; 03/01/2022 Hearing Transcript at 34:21–38:11. On these facts, the Court could disregard Defendant's manufactured urgency and deny the Motion as untimely.[1]

//
//

---

[1] Nevertheless, the government commits to not raise the altered pharmaceutical reports in its opening statement to permit the Court sufficient time to rule on the merits of the Motion, if it wishes to do so.

**II.   Defendant Was Part of a Conspiracy and Scheme to Defraud Investors at the Time the Pharmaceutical Reports Were Altered and Thus They Are Relevant and Admissible**

   A.   **Factual Background**

The Third Superseding Indictment ("TSI") alleges that Defendant joined Theranos in September 2009 and served as Theranos' President and Chief Operating Officer ("COO"). ECF No. 469 (TSI) ¶ 2. Defendant, who was romantically involved with co-Defendant Holmes, personally guaranteed a multi-million-dollar loan to Theranos in August 2009 and, in return, Holmes named him President and COO of Theranos. *See* ECF No. 1156 (Balwani's MILs) at 42; ECF No. 1157 at 391; *United States v. Holmes*, 11/29/2021 Trial Transcript at 7850:4–18. In August 2009, Holmes' assistant began forwarding documents related to Theranos' relationship with pharmaceutical companies to Defendant Balwani. *See* ECF No. 1327-3 (Exhibit 6) at 167. In December 2009, Defendant is copied on an email co-Defendant Holmes sent to GlaxoSmithKline ("GSK"), a pharmaceutical company, attaching a report with GSK and Theranos logos, without any request for permission to share the GSK report with other companies. ECF No. 1327-3 (Exhibit 7) at 169. In February 2010, Defendant saved an unaltered copy of the Schering-Plough report within his electronic file directory, namely a version of the report that did not include the Schering-Plough logo or the enhanced conclusion statements. Declaration of Kelly I. Volkar in support of the Government's Opposition to Defendant's Motion to Exclude Evidence and Argument that Pharmaceutical Reports were Improperly Altered ("Volkar Decl.") ¶ 3 & Exhibit 2 (metadata accompanying production of this document shows a "date created" as February 12, 2010, and a file path showing that the document was saved within Balwani's files).

In sworn testimony before the SEC in its investigation, Defendant asserted that he "took the leadership role . . . in negotiations and contracts" for retail pharmacy businesses in February or March 2010. ECF No. 1163-2 at 3–4. He also asserted that he was deeply involved with the relationship with Walgreens "from the start." *Id.* at 5. In March 2010, co-Defendant Holmes emailed a representative of Walmart—copying Defendant—and attached a copy of the unaltered Schering-Plough-related report with only Theranos' logo affixed. ECF No. 1327-3 (Exhibit 8) at 248–65. Walmart did not partner with or invest in Theranos. One month later, co-Defendant Holmes emailed representatives of Walgreens—copying Defendant—and also separately emailed a representative of Safeway—copying Defendant—

this time attaching *altered* pharmaceutical documents with the respective pharmaceutical company's logo in addition to the Theranos logo. ECF No. 1327-3 (Exhibit 2) at 55, 88–109; Volkar Decl., Exh. 1. Both Walgreens and Safeway moved forward with partnering with Theranos, and Walgreens and Safeway ultimately invested. *See generally United States v. Holmes*, 10/06/2021, 10/12/2021, 10/13/2021, 10/14/2021 Trial Transcripts (testimony of representatives of Walgreens and Safeway).

The TSI alleges that Defendant Balwani and co-Defendant Holmes conspired to and "engaged in a scheme, plan, and artifice to defraud investors" from "approximately 2010 through approximately 2015," and that "as early as 2010, Theranos pursued a partnership with national pharmacy chain Walgreens." ECF No. 469 (TSI) ¶¶ 10–13, 19–20.

B.   **Relevance**

The evidence Defendant seeks to exclude in the present Motion supports the TSI's allegation that he and his co-Defendant knowingly misled Walgreens and other potential investors beginning in 2010.

*First*, contrary to Defendant's assertion (ECF No. 1327 (Mot.) at 9), there is circumstantial evidence that Defendant knew that logos were being added and/or that the pharmaceutical reports were altered in 2010 without authorization. The evidence demonstrates that Defendant Balwani was romantically involved with co-Defendant Holmes, joined her financially struggling company by personally guaranteeing a multi-million-dollar loan in August 2009, began receiving documents showing the status of relationships between Theranos and pharmaceutical companies between August 2009 and February 2010, and was copied on several key emails with both unaltered and altered versions of pharmaceutical-related reports in spring 2010. *See* ECF No. 469 (TSI) ¶ 2; ECF No. 1156 (Balwani's MILs) at 42; *United States v. Holmes*, 11/29/2021 Trial Transcript at 7850:4–18; ECF No. 1327-3 (Exhibit 6) at 167. A reasonable juror could draw an inference from these facts that Defendant either participated in or was at least aware of altering the pharmaceutical reports with the intent of deceiving Walgreens and Safeway in early 2010 after Defendant realized the unaltered pharmaceutical reports did not persuade Walmart.

This inference is bolstered by other evidence demonstrating Defendant's knowing participation in the scheme to defraud investors. Defendant saved a copy of the unaltered Schering-Plough-related report within his work computer files in February 2010, and he informed the SEC that he controlled

negotiations with Walgreens from the very beginning.  *See* Volkar Decl. ¶ 3 & Exh. 2; ECF No. 1163-2 at 3–5.  Furthermore, Defendant has knowledge from the reports about the short duration of the studies and minimal resulting revenue, which may be contrasted with statements that Defendants made to investors about ongoing work with pharmaceutical companies and financial projections including large sums anticipated from that work with pharmaceutical companies.  *Compare* ECF No. 1327-3 (Exhibit 2) at 55–109, *with United States v. Holmes*, 10/22/2021, 11/16/2021 Trial Transcript at 4504:23–4505:2, 6383:12–6384:6, 6426:14–22 (recording of co-Defendant Holmes describing "ongoing" pharmaceutical relationships in December 2013 and investor Brian Grossman describing how he was told that pharmaceutical relationships had helped sustain Theranos up through 2013).  Defendant has also previously asserted that he prepared Theranos' financial model (ECF No. 1163-2 at 6–7), which projected $40 million in revenue from pharmaceutical companies in 2014 at the same time Defendant knew that Theranos had no ongoing work with pharmaceutical companies and the most expected deferred revenue Theranos would realize was approximately $3 million.  *Compare* Volkar Decl., Exh. 8 (Defendant noting $3 million in deferred revenue for pharmaceutical company Celgene and no others), *and United States v. Holmes*, 09/14/2021 Trial Transcript at 712:11–715:25 (testimony of Theranos controller describing no revenue from pharmaceutical companies after 2010), *with* Volkar Decl., Exh. 6 (projecting $40 million in revenue from pharmaceutical companies in 2014).

Defendant also regularly sent the altered pharmaceutical reports to potential investors and discussed doing so with co-Defendant Holmes.  *See*, *e.g.*, ECF No. 1179-2 at 89 (Holmes texts Balwani "Am planning on including all we sent dst, including the Pfizer-related report.  Let me know if you disagree."); Volkar Decl., Exh. 4 (Defendant sending reports to potential investor BDT); Exh. 5 (co-Defendant asking if Defendant has any "issues" with sending reports to representative of Walmart, Greg Penner, and attaching the altered Schering-Plough-related report); Exh. 3 (Defendants preparing to send reports to potential investor Fremont Group).  Finally, after *The Wall Street Journal* exposed the Defendants' fraudulent scheme, Defendant discouraged co-Defendant Holmes from trying to continue their prior narrative because "they [Walgreens representatives] know"—indicating Defendants had knowledge and conspired together to deceive Walgreens.  *See* ECF No. 1179-2 at 193.  And Defendant rebuffed internal attempts to gather more information about Theranos' relationships with pharmaceutical

companies that could be used to refute the *Journal*'s claims.  Volkar Decl., Exh. 9.  In short, the altered pharmaceutical reports show Defendant's knowledge that pharmaceutical companies "had not examined, used, or validated Theranos's technology" in a myriad of ways and thus is relevant and admissible at Defendant's trial.  ECF No. 469 (TSI) ¶ 12(H).

***Second***, even accepting co-Defendant Holmes' testimony that she altered the logos in or around April 2010, this evidence should not be excluded because it falls squarely within the principle of co-schemer and co-conspirator liability, as explained by the Ninth Circuit.  "Each member of a scheme to defraud is responsible for the actions of other coschemers performed during the course of and in furtherance of the scheme."  *United States v. Stapleton*, 293 F.3d 1111, 1115 (9th Cir. 2002); *see also United States v. Reed*, 575 F.3d 900, 925–27 (9th Cir. 2009) (finding no error in district court providing similar instructions for co-conspirator liability while rejecting a "mere presence" instruction).  "A defendant is criminally liable for any underlying substantive offenses committed by co-conspirators during the defendant's membership in the conspiracy . . . . [except for] substantive offenses committed before joining or after withdrawing from a conspiracy."  *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992).  Defendant need not personally have made the statement or committed the act so long as the defendant was a "knowing participant" in such a scheme, then the defendant may be held vicariously liable.  *Id.* at 1262–63.  The Ninth Circuit Model Criminal Jury Instructions recommend instructing the jury that, if they conclude the defendant was a member of the scheme and had the intend to defraud, "the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, *even if the defendant did not know what the other co-schemers said or did*."  Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 15.33 (last revised June 2021) (emphasis added); *see also Stapleton*, 293 F.3d at 1115–18; ECF No. 1211 (Gov. Proposed Jury Instructions) at 37, 43.

Evidence and argument relating to the altered pharmaceutical reports falls squarely within the black letter law governing vicarious liability in the Ninth Circuit.  Defendant saved an unaltered Schering-Plough-related report within his files and was copied on an email approximately two months later with altered pharmaceutical-related reports.  *See* Volkar Decl. ¶ 3 & Exh. 2; ECF No. 1327-3 (Exhibit 2) at 55–109.  The unauthorized modifications to the reports occurred at the outset of the

conspiracy and scheme to defraud as described by the TSI (ECF No. 469 (TSI) ¶¶ 10–13, 19–20)—not before Defendant joined the company or after any withdrawal from the conspiracy or scheme. By early 2010, within the alleged period in the TSI, Defendant Balwani was personally and financially invested in Theranos. Defendant "took the leadership role" for retail businesses in February or March 2010, but the first attempt at attracting Walmart faltered. *See* ECF No. 1163-2 at 3–5; ECF No. 1327-3 (Exhibit 8) at 248–65. Approximately one month later, Defendants successfully interested Walgreens and Safeway in potential partnerships—with the key difference being the altered pharmaceutical reports. *See* ECF No. 1327-3 (Exhibit 2) at 55, 88–109; Volkar Decl., Exh. 1; *United States v. Holmes*, 10/12:/2021 Trial Transcript at 3191:1–3199:9. The reports were altered during—and furthered the purpose of—the alleged conspiracy and scheme to defraud investors. Thus, regardless of which Defendant altered the pharmaceutical reports, they are admissible under a vicarious liability theory.

Defendant's citation to *Phillips v. United States*, 356 F.2d 297 (9th Cir. 1965), is inapposite. ECF No. 1327 (Mot.) at 9 n.6. The Ninth Circuit in *Phillips* re-emphasized that "acts of one conspirator committed during the course of and in furtherance of the conspiracy are the acts of all conspirators" but held that co-conspirators who never saw the fraudulent letters at issue could not have knowledge imputed to them because a third co-conspirator had received the letters and thus the district court erred in admitting the letters. 356 F.2d at 303–06. However, the court noted the situation would be different if the defendants had actual direct knowledge of the documents. *Id.* at 306 ("Where documents are admitted on the theory that a defendant's actual knowledge of them shows that he must have realized the scheme was fraudulent, . . . such documents may be considered [by the jury] only if it has been independently shown that such defendant had actual knowledge of the documents while the asserted scheme was in progress."). That is exactly what the facts are here: the government is alleging these altered pharmaceutical reports are part of the Defendants' scheme to defraud Walgreens and other potential investors, and Defendant Balwani had actual knowledge of the documents attaching both an unaltered and altered version of at least one of the reports in spring 2010. *Compare* ECF No. 1327-3 (Exhibit 8) at 248–65, *with id.* (Exhibit 2) at 88–109. To the extent Defendant is asserting that he did not read or closely pay attention to the modifications made to the reports (ECF No. 1327 (Mot.) at 9), that is not a bar to their admissibility but, at best, fodder for cross examination or closing argument.

Defendant's citation to the Court's order on motions *in limine* in the *Holmes* case is similarly misplaced. ECF No. 1327 (Mot.) at 8, 10 (citing *United States v. Holmes*, Case No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *37, *39 (N.D. Cal. May 22, 2021)); ECF No. 798 at 61–64 ("Holmes MIL Order"). In the Holmes MIL Order, the Court held that the government needed to meet the low threshold of Federal Rule of Evidence 104(b) if it intended to introduce evidence that Holmes knew of or directed David Boies and members of his law firm—none of whom are named co-conspirators—to retaliate against former Theranos employees. ECF No. 798 at 61–64. The government subsequently met that prerequisite and the Court admitted evidence related to that topic. *See* ECF No. 1004 at 6–7; *United States v. Holmes*, 09/15/2021 Trial Transcript at 982:2–983:3. Here, by contrast, Defendant is attempting to escape responsibility for conduct by a co-conspirator, during and in furtherance of the charged conspiracy. Defendant has provided as exhibits to his Motion the very documents that make the foundational connection Rule 104 requires—he merely asks the Court to draw different inferences from those documents. *See* ECF No. 1327-3 at 88–109, 248–65 (Exhibits 2 & 8). But that is the jury's task. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

***Third***, the evidence is admissible for alternative reasons beyond Defendant's knowledge that are not addressed in Defendant's Motion to exclude. *Cf.* ECF No. 1327 (Mot.) at 8–11. For example, the government could seek to admit the altered pharmaceutical reports to demonstrate the falsity of statements made to Walgreens, particularly given the importance and materiality of these documents to Walgreens executives. *See, e.g.*, *United States v. Holmes*, 10/12/2021 Trial Transcript at 3189:8–3199:9 (Walgreens executive describing importance of pharmaceutical reports in promoting Theranos internally to other Walgreens executives for potential partnership).

In sum, evidence and argument regarding the altered pharmaceutical reports are relevant and admissible in the trial against Defendant Balwani, as they were in the prior trial.

### C.   Federal Rule of Evidence 403

Defendant has not shown that the probative value of the altered pharmaceutical reports is substantially outweighed by a danger of unfair prejudice or misleading the jury under Federal Rule of Evidence 403, and thus the evidence should be admitted. *Cf.* ECF No. 1327 (Mot.) at 11. Rule 403

typically, although not exclusively, tends to bar emotional, inflammatory, or propensity evidence. *See* ECF No. 1326 at 6 ("Balwani MIL Order"). None of the typical categories are at issue here. Rather, Defendant asserts the evidence is unfairly prejudicial because his co-Defendant Holmes testified that she added the unauthorized logos and—due to Defendant's successful motion to sever the two trials—the jury in his case will not hear that same confession. *See* ECF No. 1327 (Mot.) at 11.

Defendant's reliance on co-Defendant Holmes' testimony during her trial is misplaced and should not be used to bar the government from presenting relevant evidence in his trial. As an initial matter, the Court is not required to accept the truth of Holmes' testimony that she added the unauthorized logos to the pharmaceutical reports. And regardless of whether that testimony was true, Holmes' statements do not rule out Defendant's knowledge and involvement. *See* ECF No. 1327-3 (Exhibit 1) at 37–49. Specifically, neither party asked whether co-Defendant Holmes discussed the decision to add logos with anyone, such as Defendant, or whether anyone directed her to alter the documents. *Id.* She also testified that she was not sure who deleted certain language from some of the reports. *Id.* at 47–48. Other evidence admitted during the *Holmes* trial also demonstrated the close working relationship of Defendants, including editing and commenting on draft emails by one another. *See, e.g., United States v. Holmes*, 11/30/2021 Trial Transcript at 7982:3–7992:25 (Defendant and co-Defendant commenting on draft response email to former employee Tyler Shultz's email raising concerns related to patient testing).

The absence of direct evidence of either Defendant modifying the pharmaceutical reports does not preclude the government from offering and admitting circumstantial evidence that both Defendants were aware of the alterations and asking the jury to draw permissible inferences. Indeed, the government did just that in its case-in-chief in the *Holmes* trial when it had no indication whether co-Defendant Holmes would testify. The government seeks to admit the same evidence here—that does not run afoul of Rule 403. Defendant may provide his own narrative associated with these facts (ECF No. 1327 (Mot.) at 9) through cross examination and closing argument, after which the jury will resolve the competing inferences.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court deny Defendant's Motion to exclude evidence and argument relating to the improperly altered pharmaceutical reports.

DATED: March 7, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Kelly I. Volkar*
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys