JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**MR. BALWANI'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE AND ARGUMENT THAT PHARMACEUTICAL REPORTS WERE IMPROPERLY ALTERED**<br><br>Date: March 11, 2022<br>Time: 9:00 a.m.<br>CTRM.: 4, 5th Floor<br><br>Hon. Edward J. Davila |

## I. INTRODUCTION

As Mr. Balwani's motion argued, evidence or argument about the alteration of pharmaceutical reports—including adding pharmaceutical-company logos to those reports without authorization—should not come into evidence in Mr. Balwani's trial for three reasons. First, no evidence shows that Mr. Balwani knew or even should have suspected that a single change was unauthorized or otherwise improper. Second, the government cannot erase the temporal limits that the law imposes on vicarious liability, and its opposition fails to meet even a threshold showing that a conspiracy or scheme to defraud existed in March or April 2010, when the changes were made. And third, evidence of altering the reports—stripped of the crucial but inadmissible context that Ms. Holmes personally made the changes—invites the jury to speculate, contrary to the evidence, that Mr. Balwani altered the reports knowing that the changes were unauthorized.

The government's opposition sidesteps Mr. Balwani's own reliance on the same representation later given to retailers and investors: pharmaceutical companies had robustly validated Theranos' technology. And it shrugs off that the communications on which Mr. Balwani was copied gave him no reason to believe that anything was improper about the use of company logos or other alterations to the reports. The government's arguments do not overcome the barriers to admission that Mr. Balwani's motion identifies.

The Court should thus grant Mr. Balwani's motion and bar the government from introducing evidence of altering the pharmaceutical reports or mentioning the issue during closing argument. The government represents that it will refrain from mentioning this issue in its opening statement to give the Court time to consider the motion. Dkt. 1337 at 2 n.1.

## II. ARGUMENT

### A. Nothing Supports the Government's Speculation that Mr. Balwani Knew of Any Improper Changes to the Pharmaceutical Reports

The government agrees that it would be error to admit evidence in a conspiracy case on a theory that knowledge of a claim's falsity could be imputed to a co-conspirator. *See* Dkt. 1337 at 7 (citing *Phillips v. United States*, 356 F.2d 297, 303–06 (9th Cir. 1965)). But the government

claims that it can offer the challenged evidence "on the theory that a defendant's actual knowledge of [the challenged evidence] shows that he must have realized the scheme was fraudulent." *Id.* (quoting *Phillips*, 356 F.2d at 306). The problem for the government is that the facts do not support this theory. They undermine it.

First, the government fails to acknowledge Mr. Balwani's own receipt of the same sort of representations Ms. Holmes made to later investors. In August 2009, Mr. Balwani learned that "Theranos' technology has been *robustly validated*" through its partnerships with pharmaceutical companies, and that Theranos' clients included the companies at issue. Dkt. 1327-3 at 162, 167. This context dispels the notion that Mr. Balwani would have reason to suspect anything to the contrary.

Second, no evidence even hints that Mr. Balwani knew of the addition of any logo to the Pfizer report, much less that any change was unauthorized. As for the GSK report, the *only* evidence is exculpatory: Mr. Balwani was copied on an email *to GSK* attaching the report of that company's work with Theranos in the same form in which it was later shared with investors, i.e., with both logos. Dkt. 1327-3 at 169. The only possible inference to draw is that Mr. Balwani had no idea anything was amiss, since Theranos was open about sharing the report with GSK, the entity that would need to authorize any changes.

Last, Mr. Balwani was copied on an email circulating an unchanged version of the Schering-Plough report in March 2010, before being copied on other emails with the changed version of that report in April 2010. *See id.* at 248–65. From that single instance of receiving the original version of the Schering-Plough report, the government asserts that jurors can reasonably infer that he noticed the lack of a pharmaceutical logo in March and connected it to the changes to that document a month later. In fact, the government extrapolates from this single innocuous data point that Mr. Balwani also knew of changes to other reports he had not seen, even though no evidence supports that theory, and nothing suggests Mr. Balwani's knowledge or expectation that any report was changed without permission.

The government also claims that, "[i]n February 2010, Mr. Balwani "saved an unaltered copy of the Schering-Plough report within his electronic file directory …." Dkt. 1337 at 3 (noting

that the file path within the document's metadata proved its claim).[1] But whether Mr. Balwani received this version of the Schering-Plough report in February or March 2010 does not affect the analysis. There is no basis from which the jury could infer that this communication alerted Mr. Balwani to any improper conduct or unauthorized changes. Any argument to the jury that it can infer Mr. Balwani's knowledge would be divorced from the evidence and thus impermissible—especially given the missing context of Ms. Holmes' admissions.

### B. The Government Cannot Show That a Conspiracy or Scheme to Defraud Existed in April 2010

The government fares no better in claiming that the changes to the reports are admissible under a theory of vicarious liability. The government again starts with a concession: one can be liable for the acts of a co-conspirator or co-schemer only when the actions were performed "during the course of the" scheme or conspiracy. Dkt. 1337 at 6. But the government's theory reads this temporal requirement out of existence. For the jury to consider whether Mr. Balwani is criminally liable for another's acts in April 2010, the government must prove that a conspiracy or scheme to defraud existed in April 2010. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (holding, in a case addressing co-conspirator statements, that the government must prove the existence of a conspiracy and a defendant's participation to the trial court by a preponderance of the evidence before it may be admitted). It cannot satisfy this test.

To prop up its claim that a conspiracy to defraud existed in April 2010, the government points to a host of alleged misconduct and documents from December 2013 through

---

[1] The government repeats this assertion several more times. *See, e.g.*, *id.* at 4; *id.* at 6. But the assertion is incorrect as well as irrelevant because the government misunderstands the metadata it relies on. There is no support for the government's claim that the "date created" field reflects when Mr. Balwani received or downloaded the document rather than the date the document itself was created by someone else, even if attached to a later email. Nor must the Court speculate about which party is reading the metadata correctly. The government's own supporting declaration compels the conclusion that the report was simply attached to the same March 19, 2010 email to Walmart that Mr. Balwani's motion identified. The file path quoted by the government is "C:\RT-12960\sbalwani\***RE_ times to talk***\Multiplexed Panel Validation Report_FDA-ICH.pdf." Dkt. 1338 ¶ 3 (emphasis added). And the subject line of the March 19, 2010 email to Walmart attaching this same version of the report is "***RE: times to talk***." *See* 1327-3 at 245. There is no communication other than the March 19 email with that subject line attaching this report, so the government's assertion that Mr. Balwani downloaded the report in February rests on nothing.

October 2015. *See, e.g.*, Dkt. 1337 at 5, 9; Dkt. 1338 ¶¶ 4–10. Putting aside Mr. Balwani's disagreement with the government's characterizations of those facts, those events shed no light on whether there was either a conspiracy or a scheme to defraud more than three years earlier. So the Court is left with the government's proffered evidence of a conspiracy in spring 2010:

| Government's "Evidence" | Legally Required Showing | |
|---|---|---|
| • Mr. Balwani joined Theranos in September 2009<br><br>• Mr. Balwani and Ms. Holmes were in a romantic partnership<br><br>• Mr. Balwani helped manage the retail partnerships<br><br>• Mr. Balwani was copied on emails to Walmart and Walgreens in March and April, 2010 | **Conspiracy**[2] | • Willful participation in agreement to commit wire fraud<br><br>• Membership in conspiracy in April 2010 |
| | **Wire Fraud**[3] | • Knowing participation in a scheme to defraud<br><br>• Materiality<br><br>• Intent to deceive and cheat |

    The government has not articulated the evidence that establishes the illicit agreement and when it occurred: the evidence of when Ms. Holmes and Mr. Balwani willfully decided to enter into an agreement to defraud investors or knowingly began participating in a scheme to do so. None of the pieces of evidence cited by the government referenced in the chart above establishes a conspiracy in April 2010. From this series of innocuous events—without more—the government claims that it has made the showing needed for the Court to allow the evidence of the alterations to go to the jury. But the government's arguments require the Court to fill in massive evidentiary gaps and turn on pure speculation. There is nothing from these facts to suggest Mr. Balwani's intent to defraud in April 2010. As far as he knew and the evidence reflects, Theranos' technology had been robustly validated by pharmaceutical companies. The company

---

[2] Adapted from Dkt. 1206 at 17–18.
[3] Adapted from Dkt. 1206 at 24.

was months away from investor fundraising or contracts with its retail partners and more than a year away from any payment from a retail partner. The government can prevail in offering the pharma-logo evidence on this record only if the Court does not hold the government to its burden, established in *Bourjailly*, of proving a conspiracy or scheme by a preponderance of the evidence. That assessment is for the Court to make in the first instance before the government may present the proffered evidence to a jury.

Because the government cannot make its required showing, the Court should exclude all evidence or argument about altering pharmaceutical reports.[4]

### C. Admitting This Evidence Without Explaining Ms. Holmes' Responsibility for Altering the Reports Is Highly Prejudicial and Invites the Jury to Speculate

Rule 403 independently precludes admitting this evidence. Ms. Holmes' admission to personally altering the documents is critical context without which the jury would be misled to Mr. Balwani's severe prejudice.

The government demands the right to paint an incomplete portrait for the jury—one that the parties in fact know is incomplete. The government credited Ms. Holmes' admissions in her trial, accepting them as true both during cross-examination and arguing from them during closing argument. But Mr. Balwani lacked the chance—and the government lacked the incentive—to ask the natural follow-up question: did Ms. Holmes tell Mr. Balwani what she was doing? There is no path that does not sacrifice Mr. Balwani's Confrontation Clause rights to rebut any improper suggestion about his role. The danger that the jury will accept the government's invitation to speculate about Mr. Balwani's involvement—with no supporting evidence—is too great to tolerate.

Finally, the government's suggestion that "none of the typical categories" of prejudicial evidence is at issue is unconvincing. The prejudicial evidence here is worse than what courts

---

[4] The government's argument that the evidence of altering the reports also shows the falsity of the representation and not just the intent to defraud ignores the narrow scope of Mr. Balwani's motion. Mr. Balwani does not seek to bar the government from offering evidence that pharmaceutical companies did not comprehensively validate Theranos' technology. He seeks only to preclude evidence of doctoring or editing the reports without authorization.

typically encounter: the government is asking for permission to invite the jury to hold Mr. Balwani criminally responsible for another's acts without showing his knowledge or intent and without staying within the legal guardrails around when we are liable for someone else's conduct.

### D. Mr. Balwani's Motion Is Timely and Does Not Prejudice the Government

The government contends that Mr. Balwani's request is untimely for being brought after the deadline for filing pretrial motions in limine. Dkt. 1137 at 2. This argument lacks merit.

First, the government has faced no "shortened response time." *Id.* Under the parties' agreement, the government filed its opposition 7 days after Mr. Balwani submitted his motion—just as Criminal Local Rule 47-2(d) provides. In fact, Mr. Balwani's motion gave the government far more time to respond to his exclusion request than it would have had if Mr. Balwani sought the identical exclusion on identical grounds mid-trial. *See* Crim. L.R. 47-2(a) ("This rule [on timing] does not apply to motions during the course of trial or hearing."). In other words, Mr. Balwani could have submitted the same brief the night before the first pharmaceutical witness was to testify in trial, with no meaningful chance for the government to challenge his arguments. The approach Mr. Balwani has taken here gives the parties and the Court ample time to consider this issue with no prejudice to the government. *See Emery v. Harris*, No. 1:10-cv-01947-JLT (PC), 2014 WL 710963, at *1 (E.D. Cal. Feb. 21, 2014) ("Though Defendant's current motion was not filed within the deadline imposed by the Court, without doubt Defendant was entitled to object to [the evidence] at the time of its presentation at trial. By filing the motion in advance, Defendant allows a more considered response by Plaintiff and the Court."); *Forney v. Hopkins*, No. CV 07-152-M-JCL, 2009 WL 10677468, at *1 (D. Mont. Mar. 26, 2009) (ruling that Court would consider motion in limine presenting evidentiary issues that "must be resolved regardless of whether they are presented by way of a pretrial motion or in a motion or objection at trial").

Second, the government gives short shrift to—or else ignores—the procedural context. One ground of Mr. Balwani's request turns on Ms. Holmes' testimony and the government's closing in the Holmes trial: events that had not occurred when the motions in limine were due.

1    And the government nowhere acknowledges that Mr. Balwani's motion followed closely on the heels of the parties' conference on February 17, 2022, during which the government informed counsel that it would offer evidence on altering pharmaceutical reports in Mr. Balwani's case. *See* Dkt. 1327-2 ¶¶ 2–3. On learning this, Mr. Balwani promptly sought relief from the Court.

His motion is timely, and in any event does not prejudice the government.

### III.   CONCLUSION

For these reasons, Mr. Balwani asks the Court to grant his motion.

DATED: March 10, 2022                     Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By:  */s/ Jeffrey B. Coopersmith*
     Jeffrey B. Coopersmith

     Attorney for Defendant
     RAMESH "SUNNY" BALWANI