JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   (415) 773-5700
Facsimile:    (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**MOTION FOR DISMISSAL OR FOR OTHER REMEDIES**<br><br>Date:  March 22, 2022<br>Time:  8:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>**Hon. Edward J. Davila** |

**NOTICE OF MOTION AND MOTION FOR DISMISSAL OR FOR OTHER REMEDIES**

PLEASE TAKE NOTICE that on March 22, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move the Court to dismiss the Third Superseding Indictment and, in the alternative, to provide other remedies for the government's discovery violations. The Motion is based on the below Memorandum of Points and Authorities, the concurrently filed Declaration of Amy Walsh, the record in this case, and any other matters that the Court deems appropriate.

DATED: March 15, 2022                 Respectfully submitted,

                                      ORRICK HERRINGTON & SUTCLIFFE LLP

                                      By:  /s/ Jeffrey B. Coopersmith
                                           Jeffrey B. Coopersmith

                                           Attorney for Defendant
                                           RAMESH "SUNNY" BALWANI

MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION AND BACKGROUND

On April 2, 2021, Mr. Balwani requested that the government produce the fruits of its search of electronic devices belonging to potential witness Viswanathan "Shekar" Chandrasekaran. Declaration of Amy Walsh, Ex. 1. Just after 5:00 pm on March 8, 2022, almost a year later and on the eve of Mr. Balwani's jury selection, the government informed defense counsel that it planned to turn over all of what was seized from Mr. Chandrasekaran's home, consisting of about 20 terabytes of data, the equivalent of around 130 million pages. *Id.*, Ex. 2.[1] The email from government counsel did not describe the contents of this mammoth volume of material, but both parties know that Mr. Chandrasekaran was a consultant for Theranos who worked on the Laboratory Information System (LIS) that has long been the subject of motion practice before the Court here and in Elizabeth Holmes' case. *See, e.g.*, Dkts. 563, 682, 730, 1156, 1181, 1193. The government has also been espousing a theory for well over a year that Mr. Chandrasekaran was involved in the failure to preserve LIS after he left Theranos. *See* Dkt. 682 at 2–7, 10; Mr. Balwani's April 28, 2021 Sealed Joinder to Ms. Holmes' Motion to Exclude Evidence of Anecdotal Test Results; Walsh Decl., Ex. 3 at 14:6–7.

This was not a case of inadvertent noncompliance with the government's responsibilities. The government has had the data since it seized Mr. Chandrasekaran's devices on December 9, 2020. Rather than produce any of that data then or even close in time to the seizure, the government inexplicably sat on the material until the eve of Mr. Balwani's trial when it notified defense counsel that it would dump an enormous and undifferentiated volume of data on defense counsel that will be physically impossible to review in time to use during the trial. Walsh Decl., Ex. 1; *see also id.*, Ex. 4.[2] The March 8 email from the government estimated that it would take about three weeks just to load the data on several hard drives it has asked the defense to

---

[1] *See How Much Is 1 TB of Storage?*, Dropbox (last visited Mar. 9, 2022), https://experience.dropbox.com/resources/how-much-is-1tb.

[2] While the parties' discussions over reviewing a small selection of potentially privileged documents are ongoing, that does not affect the 20 terabytes of non-privileged material the government is producing.

provide. *Id.*, Ex. 2. It is unclear whether the government has reviewed any of this material, but evidently it believes that it contains or may contain material it must turn over to the defense under the applicable rules.[3] The untimeliness and breadth of this disclosure violate both Rule 16 and Mr. Balwani's Fifth Amendment rights under *Brady v. Maryland*, 372 U.S. 83 (1963), and its progeny, because Mr. Balwani cannot review the huge trove of data in time to meaningfully assess whether to use it in trial.

This is a Rule 16 and constitutional violation of immense proportions, and because of the extent of the violation, the Court should dismiss the Third Superseding Indictment. This remedy is appropriate because the government's case turns on the allegation that Theranos was incapable of consistently producing accurate and reliable results.[4] The data in the LIS was material to the defense's ability to attack that allegation. Thus, the loss of the LIS is critical to Mr. Balwani's defense, including Mr. Chandrasekaran's role in trying to obtain the LIS. Short of dismissing the entire indictment, the Court should exclude all evidence and argument related to the patient-fraud counts, which turn on the government's allegation about accuracy, because the Chandrasekaran data may well be material to the LIS and its destruction, and therefore to the allegations about accuracy. Despite having this material since December 2020 and knowing that Mr. Balwani requested it in April 2021, the government waited until the eve of Mr. Balwani's trial, and until after the parties had briefed and argued motions related to the loss of the LIS and the Court decided that motion, to inform Mr. Balwani that it had decided to produce this massive volume of additional data.

**II.     ARGUMENT**

    **A.     The Government's Anticipated Disclosure Violates Rule 16 and *Brady***

The government's anticipated disclosure of 20 terabytes of new data three weeks into trial

---

[3] Any assertion that the material is irrelevant would conflict with the government's decision to provide it. The government would not turn over 20 terabytes of information unless it believed that the data may contain relevant information. In any event, the defense now has an ethical obligation to review discovery produced by the government.

[4] Mr. Balwani maintains that, because the charges in the indictment are limited to the capabilities of Theranos' proprietary technology, evidence unrelated to Theranos' technology is inadmissible. But the Court has ruled otherwise. *See* Dkt. 1326 at 7–8.

1   contravenes its disclosure obligations under Rule 16 and *Brady*. The government ignored its
2   express duty under Rule 16 to "promptly" disclose evidence requested by the defense by ignoring
3   Mr. Balwani's request for nearly a year and waiting until mid-trial to make its disclosure. Fed. R.
4   Crim. P. 16(c). Courts have "emphasized that disclosure of critical information on the eve of trial
5   is unsafe for the prosecution," especially when the material is "not easily identifiable as a
6   document of significance" and "located … among reams of documents." *United States v. Gil*, 297
7   F.3d 93, 106 (2d Cir. 2002). The government's "disclosure must occur at a time when the
8   evidence can be of use and value to the defendant." *United States v. Govey*, 284 F. Supp. 3d 1054,
9   1056 (C.D. Cal. 2018). The Court should not countenance the government's dereliction of its
10  duties.

   **B.   The Court Should Dismiss the Indictment**

12      Faced with a discovery violation, the Court is empowered to impose a range of sanctions,
13  including to "prohibit that party from introducing the undisclosed evidence" and to "enter any
14  other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C)–(D). Such an order
15  can include dismissal of the charges if the defendant "suffers substantial prejudice and where no
16  lesser remedial action is available." *Govey*, 284 F. Supp. 3d at 1061 (quoting *United States v.*
17  *Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008)).

18      The government's conduct warrants the most severe sanctions and the dismissal of the
19  Third Superseding Indictment. As in *Govey*, the government "did not proceed reasonably and
20  competently" in responding to Mr. Balwani's discovery request; "instead [it] inexplicably and
21  unapologetically delayed the disclosure of material evidence." *Id.* at 1062. And, even now, as the
22  government contemplates disclosure, it does so "in a manner that demonstrate[s] blatant
23  indifferent and reckless disregard for the Defendant's ability to use the materials at trial." *Id.* In
24  *Govey*, dismissal was warranted when the government "dumped" some 100,000 documents "on
25  the eve of trial," because, as the district court explained, "[i]t was downright disingenuous for the
26  Government to expect" the court and the defendant would have the "superpowers" necessary to
27  review that "magnitude of material documents." *Id.* The government's conduct here eclipses the
28  transgressions in *Govey* by orders of magnitude, delivering many times the amount of data weeks

*into* trial.

The Chandrasekaran data dump is not a stray file that was mistakenly overlooked. It is a massive trove of data, directly responsive to a defense Rule 16 request, that the government knew about, that Mr. Balwani requested, and that the government elected to sit on for a year. The government's decision to provide the material means that it believes that it contains or may contain evidence that it must disclose under Rule 16 or *Brady*. In fact, in its response to Ms. Holmes' motion in limine related to anecdotal evidence and its response to Mr. Balwani's motion to suppress related to the loss of the LIS, as well as during oral argument on these issues, the government invoked Mr. Chandrasekaran as representing a supposed "connection between the loss of the [LIS] information and Mr. Balwani," even as it knew it was withholding evidence about Mr. Chandrasekaran. Ex. 3 at 14:6–7; *see also* Dkt. 682 at 2–7, 10. Yet the defense did not learn about the government's intention to produce Mr. Chandrasekaran's multi-terabytes of data to Mr. Balwani until the eve of his trial.

The combination of this discovery's extraordinary untimeliness and its breadth violates Mr. Balwani's Fifth Amendment rights under *Brady* and its progeny because Mr. Balwani cannot review the Chandrasekeran data in time to meaningfully assess its contents and decide whether to use it. While Mr. Balwani's counsel does not know what is in the data, the government's seizure of the data in connection with an investigation of the loss of the LIS suggests it contains material helpful to the defense. Mr. Balwani's counsel must therefore review the data for anything that could help defend against the charges. *See United States v. Messer*, 647 F. Supp. 704, 708 (D. Mont. 1986) (explaining that failure to review documents provided by government in discovery constituted "deficient performance in defending a criminal case"). But counsel cannot discharge their duty in time for this trial. The upshot is that the government's conduct leaves Mr. Balwani "with two options: continue the trial, and give up his Sixth Amendment right to a speedy trial; or proceed with trial, and give up his [other constitutional rights.] Either option denies Defendant his constitutional rights and the fair administration of justice." *Govey*, 284 F. Supp. 3d at 1063–64.

No reasonable continuance would cure the harms caused by the government's delaying this disclosure until no earlier than the third week of trial. Without the ability to review

documents that may be material to Mr. Balwani's ability to defend against the allegation that Theranos' technology was incapable of consistently producing accurate results, the prejudice he faces is severe. The Court should not condone the government's conduct, and the only "order that is just" under Rule 16 here is dismissal with prejudice. *Govey*, 284 F. Supp. 3d at 1064 ("The only option the Court has to preserve and protect Defendant's constitutional rights is to dismiss the charges and to do so with prejudice."); *id.* at 1064 n.4 ("Any lesser sanction would also constitute an endorsement of the Government's misconduct and the unwillingness to take responsibility for its actions.").

### C. The Court Should Exclude Evidence on the Patient-Fraud Counts Where LIS Issues Are Most Relevant

Nothing short of an order of dismissal can fully address the government's conduct. But even absent dismissal, the Court should fashion some remedy, and significant sanctions are warranted to mitigate the harms to Mr. Balwani's defense. Mr. Balwani requests that the Court exclude any evidence supporting the patient-fraud counts, including testimony from or about Mr. Chandrasekaran.

The Court has the power to exclude evidence. Fed. R. Crim. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court may: … prohibit that party from introducing the undisclosed evidence …."). It should exercise that power when, as here, "disclosure of the [evidence] on the eve of trial" would "interfere with a defendant's right to a fair trial, since substantial prejudice may result if counsel does not have adequate time to attempt to overcome the prejudicial effect of such evidence." *United States v. Espericueta-Reyes*, 631 F.2d 616, 623 (9th Cir. 1980). When such a disclosure would make "it unreasonably difficult for [the defendant] to present his defense," he may, among other things, "move the court for a ruling excluding the objectionable testimony on due process grounds." *Id.* at 623 & n.6.

Even with the Chandrasekaran data expected to be physically produced mid-trial (i.e., loaded on hard drives), there is no reasonable approach that would permit Mr. Balwani to review terabytes of new evidence on the fly. And issues about the LIS and the patient-fraud counts to which it connects are expected to arise quickly in Mr. Balwani's trial. For example, the

government's list of witnesses for the first week includes two witnesses who are expected to testify about laboratory testing errors. With no adequate path to reviewing and admitting the new discovery in compliance with the rules and justice, that evidence must be excluded. And merely precluding the government from introducing any of the material in the 20 terabytes of data would be a toothless remedy, because the government likely has no intention to introduce any of this material in its case-in-chief. The problem here is that the government is dumping the equivalent of 130 million pages of information on the defense that it concluded it must produce, even though the government has had the data since December 2020. Given this timing, it is impossible for defense counsel to discharge its obligation to Mr. Balwani to review the material.

### III.  CONCLUSION

The Court should grant Mr. Balwani's motion and dismiss the Third Superseding Indictment. In the alternative, it should sanction the government's discovery violations as requested above.

DATED: March 15, 2022            Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Jeffrey B. Coopersmith*
    Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH "SUNNY" BALWANI