# Exhibits 1 - 4
# To The Declaration of Amy Walsh

# EXHIBIT 1



April 2, 2021

<u>Via Email</u>

Mr. John C. Bostic, Esquire
Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Ms. Kelly I. Volkar, Esquire
Assistant United States Attorneys
Northern District of California
150 Almaden Boulevard, Suite 900
San Jose, CA  95113

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue
Suite 5600
Seattle, WA  98104

+1 206 839 4300
**orrick.com**

**Jeffrey B. Coopersmith**

E  jcoopersmith@orrick.com
D  +1 206 839 4339
F  +1 206 839 4301

Re:   United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
      <u>No. CR-18-00258-EJD (N.D. Cal.)</u>

Dear Counsel:

On March 24, 2021, the government produced what appears to be incomplete recordings of an interview of Shekar Chandrasekaran.  On March 30, 2021, the government produced an interview memorandum purporting to reflect that interview.  We learned from these materials that the government conducted a search warrant at Mr. Chandresekaran's home in December 2020.  We join the discovery requests set forth in Lance Wade's letter of March 30, 2021.  In addition, however, as the government was aware prior to the execution of the search warrant, Mr. Chandresekaran was likely in possession of privileged communications for which Mr. Balwani may assert a claim of attorney client and/or work product privilege.  Please let us know what steps the government took prior to and during execution of the search warrant, and has taken since seizing items from Mr. Chandrasekaran, to avoid reviewing any potentially privileged materials.  We look forward to your response.

Sincerely,

*[signature: Jeffrey B. Coopersmith]*

Jeffrey B. Coopersmith

# EXHIBIT 2

| | |
|---|---|
| **From:** | Boome, Casey (USACAN) <Casey.Boome@usdoj.gov> |
| **Sent:** | Tuesday, March 8, 2022 5:03 PM |
| **To:** | Cazares, Stephen; Cygnor, Jennifer |
| **Subject:** | Balwani Discovery Production from IncRev Filter Team |

**This message originated from outside your organization**

Steve and Jennifer –

The Balwani trial team has asked me to produce to you all of the data extracted from Viswanathan Chandrasekaran's electronic devices. This production will include about 20 terabytes of data, but, according to the filter team's RCFL technician, it will require approximately 24 to 26 terabytes of hard drive storage to accommodate the data and file systems. To facilitate the production, the RCFL asks that you provide several fast drives, such as 3.5" internal SATA drives, to include three 8 TB SATA hard drives (totaling 24TB) and one 2 TB SATA hard drive. If you have another technical suggestion to facilitate the production, please let me know.

If you would like to proceed with SATA hard drives, please deliver or send them to:

FBI Silicon Valley Regional Computer Forensics Laboratory
c/o Gregory Wales
4600 Bohannon Drive, Suite 200
Menlo Park, CA 94025

The RCFL estimates it will take approximately three weeks to load the drives once received.

Thanks,

Casey


**Casey Boome**
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue, 11th Floor, San Francisco, CA 94102
Desk: 415-436-6627 | Cell: 415-377-0568
Casey.Boome@usdoj.gov

# EXHIBIT 3

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                         SAN JOSE DIVISION


    UNITED STATES OF AMERICA,       )
                                    ) CR-18-00258-EJD
                    PLAINTIFF,      )
                                    ) SAN JOSE, CALIFORNIA
                VS.                 )
                                    ) FEBRUARY 8, 2022
    RAMESH SUNNY BALWANI,           )
                                    ) PAGES 1 - 82
                    DEFENDANT.      )
    _____ )


                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE EDWARD J. DAVILA
                     UNITED STATES DISTRICT JUDGE

  A P P E A R A N C E S:

  FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                         BY:  JOHN C. BOSTIC
                              JEFFREY B. SCHENK
                         150 ALMADEN BOULEVARD, SUITE 900
                         SAN JOSE, CALIFORNIA 95113

                         BY:  ROBERT S. LEACH
                              KELLY VOLKAR
                         1301 CLAY STREET, SUITE 340S
                         OAKLAND, CALIFORNIA 94612

         (APPEARANCES CONTINUED ON THE NEXT PAGE.)



  OFFICIAL COURT REPORTERS:
                         IRENE L. RODRIGUEZ, CSR, RMR, CRR
                         CERTIFICATE NUMBER 8074
                         LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

10:20AM 1  SO THE COURT MIGHT REMEMBER A DISCUSSION OF THAT VERY
10:20AM 2  PHONE CALL THAT HAPPENED DAYS BEFORE THE DATABASE WAS
10:21AM 3  DECOMMISSIONED FROM OUR PREVIOUS BRIEFING.
10:21AM 4  MR. CHANDRASEKARAN WAS ACTUALLY ONE OF THE PARTIES ON THAT
10:21AM 5  CALL.
10:21AM 6  SO THE CONNECTION BETWEEN THE LOSS OF THE INFORMATION AND
10:21AM 7  MR. BALWANI IS NOWHERE NEAR AS TENUOUS AS MR. COOPERSMITH
10:21AM 8  CLAIMS.  IT HAS NOTHING TO DO WITH THE ORBIT OF THE PLANETS.
10:21AM 9  IT'S A SIMPLE SOLID LINE FROM THE DEFENDANT THROUGH THIS
10:21AM 10 CONSULTANT TO THE ACTUAL ACTIONS THAT OCCURRED AT THERANOS
10:21AM 11 DURING THE RELEVANT TIME PERIOD.
10:21AM 12 THAT SAID, THE GOVERNMENT CURRENTLY DOES NOT PLAN TO
10:21AM 13 INTRODUCE THOSE FACTS TO THE JURY, BUT WE ALSO DISAGREE WITH
10:21AM 14 THE DEFENSE ON WHAT WE WOULD OPEN THE DOOR TO THAT KIND OF
10:21AM 15 EVIDENCE AND WHAT MIGHT NECESSITATE BRINGING THAT KIND OF
10:21AM 16 EVIDENCE IN.
10:21AM 17 I THINK THE COURT IS CORRECT THAT OF COURSE THE DEFENDANT
10:21AM 18 CAN ALWAYS SAY, GENERALLY SPEAKING, THAT THE GOVERNMENT HASN'T
10:21AM 19 PROVEN ITS CASE, THE GOVERNMENT HASN'T SATISFIED THIS ELEMENT
10:21AM 20 OR THAT ELEMENT.
10:21AM 21 BUT WHEN A DEFENSE LAWYER SAYS TO THE JURY, OR IMPLIES IN
10:22AM 22 CROSS-EXAMINING A WITNESS, THAT THERE'S A SPECIFIC ITEM OF
10:22AM 23 EVIDENCE THAT THE GOVERNMENT FAILED TO PUT FORWARD, FAILED TO
10:22AM 24 QUESTION THE WITNESS ABOUT, FAILED TO PRESENT TO THE JURY, THAT
10:22AM 25 CREATES A NECESSARY IMPLICATION THAT THAT'S A FAILURE ON THE

CERTIFICATE OF REPORTERS

WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

*/s/ Irene Rodriguez*
_____
IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER 8076

*/s/ Lee-Anne Shortridge*
_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: FEBRUARY 8, 2022

# EXHIBIT 4

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LANCE WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 30, 2021

<u>Via Email</u>

Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Mr. John C. Bostic, Esquire
Ms. Kelly I. Volkar, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

Re: United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
<u>No. CR-18-00258-EJD (N.D. Cal.)</u>

Dear Counsel:

I write to raise several issues related to the government's March 24, 2021 production.[1] The production presents significant concerns relating to the government's compliance with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and Rule 16, and Ms. Holmes' ability to prepare her defense.

*First*, we note that your cover email is inaccurate, as it fails to note the production of two audio recordings of an undated interview of Shekar Chandrasekaran. The recordings (or contents of them) were not previously disclosed to the defense, notwithstanding the fact that they contained *Brady* material relevant to Ms. Holmes' motions and preparation of her defense. The recordings reveal a previously-undisclosed interview of Mr. Chandrasekaran, whom the government recently accused of failing to "halt the destruction of the LIS database," the repository of critical missing evidence in this case. Corrected Gov't Opp'n to Mot. to Exclude Anecdotal Test Results, ECF No. 682 at 7 (filed Jan. 11, 2021); *see also id*. at 2, 4, 6-8, 10 (discussing Chandrasekaran).

---

[1] The government made this production in response to our February 22, 2021 letter requesting the production of recordings of interviews of three witnesses—Antti Korhonen, Eric Caddenhead, and Michael Chung. Those recordings had not previously been produced by the government in usable form.

WILLIAMS & CONNOLLY LLP

Jeffrey Schenk, Esq., *et al.*
March 30, 2021
Page 2

The interview focuses on a subject covered by that recent government pleading—namely Mr. Chandrasekaran's role in the events surrounding the LIS in summer 2018, and the technical ability to access the critical evidence stored on Theranos' LIS database. *See generally id*. The contents of these recordings are exculpatory of Ms. Holmes, confirming that she was in no way involved in the loss of the evidence residing on the LIS. The recordings were plainly relevant to Ms. Holmes' responsive pleading, which was due one month ago, February 22, 2021—six weeks after the government's opposition.

*Second*, the recordings are incomplete. In the recordings, the government agents do not identify themselves for the record—only one provides his full name (but not his title or affiliation) at the end of the interview after being asked by the witness. Nor do the agents specify the date, time, or location of the interview. It is evident that the government agents began speaking with the witness prior to the start of the recordings, including on the subject of attorney-client privileged communications. Certain segments of the recordings are not audible. Provide a complete, accurate, and clearly audible version of the recordings, as well as the identities of the government personnel who participated in the interview or who communicated with Mr. Chandrasekaran during the recordings. Please also specify the interview's date, time, and location.

*Third*, the recordings of Mr. Chandrasekaran's interview are not coextensive in duration, raising questions about their provenance and handling in government custody. One recording runs 11 seconds longer than the other, and the two recordings have different file sizes. As noted, neither recording appears to memorialize the full interview. As a result of these discrepancies, it is unclear whether the recordings were made on different devices, or whether one or both of the recordings were edited in some way prior to production. Provide all versions of any recordings of this interview, and state whether the recordings produced on March 24 were edited, adjusted, modified, or tampered with in any way prior to their disclosure to the defense. If any such modifications took place, identify the government agents involved in those modifications.[2]

*Fourth*, the government has not produced a Form 302 memorandum to memorialize the interview. Nor has the government provided agent notes or any other account of the interview. This conflicts with DOJ policy, which requires the prompt memorialization and production of witness statements following interviews. *See* Justice Manual, Criminal § 9-5.000, Issues Related to Discovery, Trials, and Other Proceedings ("[G]enerally speaking, witness interviews should

---

[2] The two recordings relating to the July 27, 2020 interview of Antti Korhonen also have different durations and file sizes. Ms. Holmes asks that the government provide all versions of any recording of that interview; state whether the recordings were edited, adjusted, modified, or tampered with in any way; and, if such modifications occurred, identify the government agents involved in those modifications. Please also promptly produce any outstanding recordings, 302s, agent notes, proffers, documents, subpoenas (to the witness or a third party), or memorialized grand jury testimony relating to Michael Chung, Eric Caddenhead, Antti Korhonen, Shekar Chandrasekaran, or any other target, subject, or witness in the government's LIS investigation.

WILLIAMS & CONNOLLY LLP

Jeffrey Schenk, Esq., *et al.*
March 30, 2021
Page 3

be memorialized by the agent[, ]and prosecutors should confirm with agents that substantive interviews should be memorialized. . . . Exculpatory information, regardless of whether that information is memorialized, must be disclosed to the defendant reasonably promptly after discovery."). Provide the Form 302 memorandum, agent notes, and any other documents related to this or any other interview of Mr. Chandrasekaran.

*Fifth*, it is clear from the recordings that a search warrant was executed. This warrant has not previously been disclosed to the defense. Promptly disclose that warrant, the affidavit filed in support of the application for that warrant, and any attachments to the warrant or affidavit. In light of the principal subject matter of the interview of Mr. Chandrasekaran (*i.e.*, issues relating to the LIS), and the probable-cause standard necessary for the warrant to issue, both documents almost certainly contain *Brady* material and are exculpatory of Ms. Holmes.

*Sixth*, none of the fruits of the warrant have been produced to the defense. The government has produced no data or documents to the defense, nor has it produced receipts of the logging of evidence. Ms. Holmes requires that evidence, which (again, in light of the submissions made by the government in support of a warrant) may contain *Brady* material. Please produce it or confirm the absence of any relevant evidence in the seized materials. Given the government's allegations relating to LIS and Mr. Chandrasekaran, the absence of any relevant evidence may well be *Brady*.

*Seventh*, Ms. Holmes has repeatedly submitted clear, pertinent *Brady* requests to the government. The fact that these recordings were just now disclosed raises serious questions about the government's compliance with its *Brady* obligations more generally. This is particularly true in light of the fact that the exculpatory evidence contained in these recordings relates to ongoing motion practice bearing on the admissibility of evidence at trial. Please explain why these recordings were not previously disclosed and what steps the government will take to collect any other *Brady* materials in the possession of law enforcement personnel, but not yet disclosed to the defense.

In light of the fact that the issues raised above relate to matters currently pending before the Court, we would appreciate a prompt response to this letter.

Sincerely,

*[signature]*

Lance Wade

cc: Jeff Coopersmith, Esq. (by email)