JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**MOTION TO EXCLUDE TRIAL EXHIBIT 2931**<br><br>Date:  March 22, 2022<br>Time:  8:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>**Hon. Edward J. Davila** |

## MOTION TO EXCLUDE TRIAL EXHIBIT 2931

PLEASE TAKE NOTICE that on March 22, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does respectfully move the Court pursuant to Rules 802 and 403 of the Federal Rules of Evidence to exclude Trial Exhibit 2931 ("TX2931"). The Motion is based on the below Memorandum of Points and Authorities, the concurrently filed Declaration of Jeffrey B. Coopersmith, the record in this case, and any other matters that the Court deems appropriate.

DATED: March 21, 2022              Respectfully submitted,

                                   ORRICK HERRINGTON & SUTCLIFFE LLP

                                   By:  /s/ Jeffrey B. Coopersmith
                                        Jeffrey B. Coopersmith

                                        Attorney for Defendant
                                        RAMESH "SUNNY" BALWANI

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Ms. Erika Cheung worked for Theranos as a Laboratory Associate from October 2013 through April 2014. On September 19, 2015, after first speaking to a journalist, she submitted a 20-plus-paragraph complaint about the company to the Centers for Medicare and Medicaid Services ("CMS"). *See* Coopersmith Decl. in Support of Mot. to Exclude TX2931, Ex. 1 (TX2931). In Ms. Holmes' trial and elsewhere, Ms. Cheung has previously testified about the concerns she expressed in that complaint. In Ms. Holmes' trial, after a discussion with the Court, the government ultimately elected not to offer Ms. Cheung's CMS complaint as evidence. Mr. Balwani understands that here, however, the government may attempt to do so.

Although Ms. Cheung may of course testify within the bounds of the evidence rules about what she claims to have observed at Theranos, her complaint—marked as TX2931—is inadmissible. There can be no dispute that the complaint would be hearsay if offered for the truth of the matters asserted therein. *See* Fed. R. Evid. 801, 802; *United States v. Tafollo-Cardenas*, 897 F.2d 976, 979–81 (9th Cir. 1990). And no hearsay exception allows the government to offer Ms. Cheung's complaint for this purpose. Indeed, the complaint is the exact kind of "carefully prepared" statement made "for the express purpose of" facilitating litigation that is discouraged when the declarant can testify to the underlying facts instead. *United States v. Felix-Jerez*, 667 F.2d 1297, 1302 (9th Cir. 1982) (quoting Fed. R. Evid. 803(5) advisory committee's note).

The government cannot evade the hearsay bar by admitting TX2931 for a non-hearsay purpose. As the Court observed in Ms. Holmes' trial, TX2931 is unnecessary to admit under any non-hearsay theory because Ms. Cheung and CMS agents "could testify" to the underlying facts in the complaint or to the fact that CMS received the complaint. 9/15/21 Holmes Trial Tr. at 892; *see also United States v. Maher*, 454 F.3d 13, 22 (1st Cir. 2006) (a rule admitting similar witness statements as context for subsequent investigatory actions would be "impossibly overbroad").

For similar reasons, TX2931 should also be excluded under Rule 403. There is a severe risk the jury will consider the email for the truth of Ms. Cheung's allegations and will be improperly affected by its emotional overtures and legal conclusions. Because the need for TX2931 is slight, and the likelihood of confusion and unfair prejudice is great, it should be excluded. *See United States v. Merino-Balderrama*, 146 F.3d 758, 761–63 (9th Cir. 1998).

## II.     FACTUAL BACKGROUND

As noted above, in September 2015—17 months after she resigned from Theranos—Ms. Cheung emailed CMS an "official complaint" reporting information about Theranos to federal regulators. 9/15/21 Holmes Trial Tr. at 985; Ex. 1. In this complaint, which Ms. Cheung supplemented via email on October 28, 2015, she detailed her alleged concerns about Theranos from her time working at the company. 9/15/21 Holmes Trial Tr. at 986; Ex. 1.

Ms. Cheung cast her personal concerns in definitive terms about the viability of Theranos' technology. *See* Ex. 1 at 2 (claiming that "numerous experiments, quality assurance studies and proficiency testing prov[ed] that [Theranos] produced results that had questionable accuracy and precision"); *id.* at 6 (claiming that data generated from Theranos' proprietary technology "always showed inaccuracy problems and precision never stayed consistent over short periods of time"). She also described her own emotional reactions and legal conclusions resulting from the allegations underlying her complaint. *See id.* at 3 (claiming in cover email to CMS that Theranos' approach to confidentiality "has always made me scared"); *id.* at 6 ("I couldn't manage to go to work everyday [sic] sick to my stomach[,] [k]nowing that I could potentially devastate someones [sic] life . . . ."); *id.* ("[W]hat went on at Theranos was complete negligence and honestly felt criminal in many ways.").

Ms. Cheung has since testified to the complaint's underlying facts more than once, including in Ms. Holmes' trial. *See, e.g.*, 9/15/21 Holmes Trial Tr. at 841–45, 943–48, 969–71.

### III. ARGUMENT

#### A. TX2931's Out-of-Court Statements Are Neither Admissible Under a Hearsay Exception Nor for Any Non-Hearsay Purpose Because Ms. Cheung and CMS Agents Can Testify to the Relevant Facts.

The out-of-court statement of a testifying witness offered to prove the truth of the matter asserted is inadmissible hearsay unless it satisfies a hearsay exception. *See Tafollo-Cardenas*, 897 F.2d at 979–81; *see also* Fed. R. Evid. 801(d)(1) (articulating limited exceptions for a witness's previous out-of-court statement).

Ms. Cheung's complaint is an out-of-court statement relevant to establish the truth of Ms. Cheung's allegations about Theranos and what she viewed as problematic lab practices—i.e., its hearsay value. There is no hearsay exception for admitting TX2931, and the government offered none at Ms. Holmes' trial when the exhibit was discussed. In fact, the government disclaimed any "inten[tion] to introduce [TX2931] for the truth of the statements therein." 9/15/21 Holmes Trial Tr. at 891. And for good reason: As Ms. Cheung's testimony in the Holmes trial makes clear, she sufficiently recalls the facts asserted in her complaint. *See, e.g.*, *id.* at 841–45, 943–48, 969–71. Because Ms. Cheung can "testif[y] about the facts contained in [her] statement," there is "no need to introduce the statement" itself, and it would be "error" to do so under Rule 803(5) or otherwise. *Felix-Jerez*, 667 F.2d at 1301.

This is the same sort of "carefully prepared" statement, made "for the express purpose of" facilitating litigation, whose use Rule 803(5)(A)'s impaired-memory requirement aims to discourage. *Felix-Jerez*, 667 F.2d at 1302 (quoting Fed. R. Evid. 803(5) advisory committee's note); *see also id.* at 1301, 1303 (where investigator had "clear, distinct recollection" of facts in written statement containing "a number of conclusionary and inculpatory . . . remarks," admission under Rule 803(5) was erroneous and "highly prejudicial").

Nor can the government prevail by asserting, as it initially attempted in Ms. Holmes' trial, that TX2931 is admissible for a purpose other than to prove the truth of the matters it asserts. In Ms. Holmes' trial, the government argued that TX2931 was admissible "to show that CMS was made aware of the[] issues" Ms. Cheung reported, and that the government "should be allowed to lay the foundation for why CMS was involved in the first place." 9/15/21 Holmes Trial Tr. at

1  891–92. Here the government might also suggest that the statements in the complaint explain

2  Ms. Cheung's subsequent conduct—i.e., that they show the alleged facts' "effect on the listener."

3  *See, e.g.*, *id.* at 883–84 (government asserting similar theory for other evidence admitted through

4  Ms. Cheung).

5  But in Ms. Holmes' trial, the Court expressed skepticism that admitting TX2931 would be

6  necessary for these purposes. *See* 9/15/21 Holmes Trial Tr. at 892. The government conceded that

7  "Ms. Cheung [would be] on the stand" and could "talk about what she saw at Theranos." *Id.* at

8  891. The Court additionally remarked that the government would not "need the email" to

9  establish notice to CMS since CMS witnesses could "come in and corroborate the [email's]

10 report[]." *Id.* The government responded that the Court's comments were "well taken," *id.*, and

11 subsequently abandoned these theories.

12 Any attempt by the government to resurrect these theories here would fail for the same

13 reasons the Court suggested in Ms. Holmes' trial. While the government may be "entitled to

14 provide some explanation" for an agency's decision to investigate a complaint, the government

15 may not put on evidence or elicit testimony that "relate[s] historical aspects of the case" such as

16 out-of-court "complaints" that "contain[] inadmissible hearsay." 2 McCormick on Evidence

17 § 249. Admitting Ms. Cheung's 20-plus-paragraph complaint on the theory that this extended

18 testimonial account is necessary to explain CMS's involvement would be "impossibly

19 overbroad." *Maher*, 454 F.3d at 22 (discussing application of the hearsay rules to Confrontation

20 Clause challenge); 2 McCormick on Evidence § 249 (warning that the practice of admitting out-

21 of-court statements to explain "the information upon which" investigators acted is susceptible to

22 "abuse" by the government). As to the theory that the statements in Ms. Cheung's complaint help

23 explain her decision to report Theranos, the complaint itself is the only conduct the government

24 could plausibly seek to explain. To suggest that those statements explain her decision to make the

25 same statements is circular. If the government wants Ms. Cheung to provide context for her

26 actions, she may simply testify that she decided to file a complaint with CMS based on what she

27 claims to have observed at Theranos, without admitting TX2931.

28 In sum, as the Court has already recognized, admitting TX2931 is not necessary to give

context to Ms. Cheung's actions because she "could testify" to the same facts, nor does the government "need the email" to establish notice to CMS. 9/15/21 Holmes Trial Tr. at 892.

### B. TX2931 Is Also Inadmissible Under Rule 403 Because Any Probative Value Is Substantially Outweighed by the Severe Risk of Juror Confusion and Unfair Prejudice.

Rule 403 also bars admission of TX2931. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury," or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As shown above, Ms. Cheung can testify to the allegations underlying TX2931 and why they motivated her to submit a complaint, and CMS agents can likewise explain their investigative steps.[1] Ms. Cheung's complaint is therefore cumulative and has little independent probative value. *See Merino-Balderrama*, 146 F.3d at 761 (where "alternative" evidence is equally probative but presents "a lower danger of unfair prejudice," the court should "discount the value" of the challenged evidence under Rule 403 (quoting *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)).

On the other side of the 403 scales, there is a high risk that the jury will consider TX2931 for its impermissible hearsay value. With Ms. Cheung's detailed allegations written out for them, jurors would likely struggle to use TX2931 solely for a non-hearsay purpose without accepting Ms. Cheung's definitive claims that Theranos' technology "always showed inaccuracy problems and precision" problems and was "proving" to "produce[] results that had questionable accuracy and precision." Ex. 1 at 2, 6; *see Clark v. City of Los Angeles*, 650 F.2d 1033, 1038 (9th Cir. 1981) (when a document "constitutes a written account of practically all of [the plaintiff's] case against the [defendant]," the risk of unfair prejudice is high). Even with a limiting instruction, the jury cannot reasonably be expected to "accept the declarations for any light that they cast" on Ms. Cheung's actions while "reject[ing]" her detailed accusations for their truth. *Shepard v.*

---

[1] Mr. Balwani reserves all rights to object at trial to particular testimony on this subject, including on the basis that several of the assertions in Ms. Cheung's complaint require "demonstrable expertise" or improperly opine on the scientific cause of events in violation of Rule 701. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997); *see also United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011).

1  *United States*, 290 U.S. 96, 104 (1933). Drawing "so subtle" a distinction "is a feat beyond the
2  compass of ordinary minds." *Id.* "When the risk of confusion" is this great, "the evidence goes
3  out." *Id.*

4      TX2931 would also inject improper emotional overtures and legal conclusions into the
5  case. Ms. Cheung's complaint describes how she felt "sick to her stomach" about "potentially
6  devastat[ing]" someone's life while working at Theranos, and she told CMS that Theranos'
7  confidentiality practices "always made [her] scared." Ex. 1 at 3, 6. An "emotive document" that
8  "does not simply relate factual occurrences" but also "arouse[s] sympathy and create[s] enmity
9  for the" defendant is "highly prejudicial" and warrants exclusion. *Clark*, 650 F.2d at 1038. The
10 Court rightly agreed with this reasoning in the Holmes trial. *See* 9/15/21 Holmes Trial Tr. at 889
11 (agreeing with defense's "concerns about 403 issues regarding Ms. Cheung and her personal
12 emotional feelings"). Worse yet, TX2931 contains Ms. Cheung's opinions that Theranos was
13 engaged in "complete negligence" and even "criminal" practices—legal conclusions to which she
14 cannot testify. Ex. 1 at 6; *see United States v. Bohn*, 622 F.3d 1129, 1138 (9th Cir. 2010) ("a lay
15 witness may not testify as to a legal conclusion" (ellipses and quotation mark omitted)); *see also*
16 Fed. R. Evid. 701 (limiting permissible opinion testimony by lay witnesses).

17     Because the independent probative value of TX2931 is slight, and the likelihood of juror
18 confusion and unfair prejudice is high, the exhibit should be excluded.

19 **IV.   CONCLUSION**
20     The Court should grant Mr. Balwani's motion and exclude TX2931.

22 DATED: March 21, 2022                Respectfully submitted,

23                                     ORRICK HERRINGTON & SUTCLIFFE LLP

25                                     By:  */s/ Jeffrey B. Coopersmith*
                                          Jeffrey B. Coopersmith

26                                     Attorney for Defendant
27                                     RAMESH "SUNNY" BALWANI