JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:	(415) 773-5700
Facsimile:	(415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>       Defendant. | Case No. CR-18-00258-EJD<br><br>**RAMESH "SUNNY" BALWANI'S MOTION TO EXCLUDE TRIAL EXHIBITS 504, 551, 983, 1496, AND 1776 AND RELATED TESTIMONY**<br><br>Date:  April 12, 2022<br>Time:  8:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTION TO EXCLUDE TRIAL EXHIBITS AND RELATED TESTIMONY**

PLEASE TAKE NOTICE that on April 12, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move the Court under Rules 403, 404, 802, and 805 of the Federal Rules of Evidence to exclude Trial Exhibits 504, 551, 983, 1496, and 1776 and related testimony. The Motion is based on the below Memorandum of Points and Authorities, the concurrently filed Declaration of Amy Walsh and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: April 8, 2022                    Respectfully submitted,

                                        ORRICK HERRINGTON & SUTCLIFFE LLP

                                        By:  /s/ Jeffrey B. Coopersmith
                                             Jeffrey B. Coopersmith

                                        Attorney for Defendant
                                        RAMESH "SUNNY" BALWANI

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The government's disclosure of exhibits it intends to introduce through Daniel Edlin gives rise to several objections that warrant argument outside the jury's presence. These include: Exhibits 504, 551, 983, 1496, and 1776. Four of the exhibits are emails that Mr. Balwani neither sent nor received. The fifth is a news article that was the product of an interview for which Mr. Balwani was not present.

***Exhibits 504 and 551.*** Mr. Edlin and Ms. Holmes communicated with representatives of the Department of Defense (DOD) on Theranos' behalf to advance DOD business relationships that Theranos had previously established. These communications included two emails in which Mr. Edlin sent military personnel memoranda summarizing Theranos' technology and proposed military projects. *See* Declaration of Amy Walsh, Exs. 1–2 (Exs. 504 & 551). In Ms. Holmes' trial, the government questioned Mr. Edlin extensively about alleged misrepresentations in these communications.

The Court should exclude Exhibits 504 and 551 because they—and the questioning around purported misrepresentations to the military—are evidence of "other acts" the government failed to disclose before trial in its Rule 404(b) notices. Rule 404(b)'s notice requirement is a "condition precedent to admissibility of 404(b) evidence"; "the offered evidence is inadmissible if … the notice requirement has not been met." Fed. R. Evid. 404 advisory committee's note to 1991 amdt. The requirement recognizes that "other acts" evidence always carries the risk of being used for the impermissible purpose of character evidence. *See* Fed. R. Evid. 404(b)(1). The government must articulate a permissible, non-character purpose for such evidence before trial to give the defendant "a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A).

Nor is this evidence "inextricably intertwined" with the charged offenses—as it would need to be to escape Rule 404(b)'s notice requirement. The indictment alleges a scheme to defraud *investors* using misrepresentations *about* Theranos' relationship with the military. Previous statements *to* the military in Exhibits 504 and 551 are neither part of the same transaction as the charged conduct nor necessary for the government to tell a coherent story about

the alleged crime. The government does not need to admit representations to military personnel in order to prove that later representations to investors about the military were untrue.

Rule 403 also bars this evidence. It turns on just the sort of character-based inferences forbidden by the Federal Rules. And juxtaposing purported misrepresentations to the military with substantially similar alleged misrepresentations to investors—as the government's direct examination of Mr. Edlin has already suggested—makes the prejudice especially acute.

***Exhibits 983, 1496, and 1776.*** Three other exhibits are either inadmissible hearsay or hearsay within hearsay. Rules 802 and 805 bar their admission. Casual workplace discussions like the one in Exhibit 983 are not business records under Rule 803(6). Nor is Mr. Balwani copied on the conversation—so it cannot be admitted to show his state of mind.

Exhibits 1496 and 1776 both contain hearsay within hearsay. The former includes prejudicial out-of-court statements by declarants who will never testify and whose statements—including the suspicion that the Theranos device is "just a box of Palo Alto air"—are inadmissible under any theory. As for Exhibit 1776, the *Fortune* article by Roger Parloff also reflects classic hearsay within hearsay. Even if the government offers the article for a purpose other than its truth, the admissibility turns on the truth of the second layer of statements: that the named and unnamed Theranos sources actually said what Mr. Parloff's article claims they did.

The Court should exclude these exhibits and the challenged testimony related to them.

## II.   FACTUAL BACKGROUND

### A.   The Government in the Holmes Trial Elicited Evidence of Un-Noticed, Un-Charged Alleged Misrepresentations to the Military That Were Substantially Similar to Alleged Misrepresentations to Investors.

Theranos maintained business relationships with four units of the United States military—U.S. Central Command, U.S. Africa Command, and, as relevant here, U.S. Special Operations Command ("SOCOM") and the U.S. Army Medical Center. 10/19/21 Holmes Tr. at 4012–13. Theranos—through Mr. Edlin and Ms. Holmes—communicated with various military medical personnel to develop protocols for testing the Theranos devices in the field. *See id.* Mr. Edlin and Ms. Holmes twice sent memoranda to the U.S. military that the government alleges contain several misrepresentations. *See* Walsh Decl., Exs. 1–2 (Exs. 504 & 551).

The first of these communications, Exhibit 504, is an email exchange and corresponding attachment between Ms. Holmes, Mr. Edlin, and Major Stephen Cook, providing information on the relationship between Theranos and SOCOM. *Id.*, Ex. 1 (Exhibit 504). Theranos and SOCOM entered into a relationship with the ultimate goal of operating Theranos' blood analyzer device in theatre on board military evacuation platforms. *Id.* at 4.

The second, Exhibit 551, is an email exchange and corresponding attachment between Ms. Holmes, Mr. Edlin, and Lieutenant Kevin Chung, providing background information and assay performance data to support the relationship between Theranos and the U.S. Army. *Id.*, Ex. 2 (Ex. 551).

Mr. Balwani faces charges for defrauding investors, not the military. Nothing in the Third Superseding Indictment, the Bill of Particulars, or the government's 404(b) notices refers to misrepresentations *to* the U.S. military akin to those purportedly in Exhibit 504 or Exhibit 551. Yet in the Holmes trial, the government extensively questioned Mr. Edlin about alleged misrepresentations in Exhibits 504 and 551, highlighting certain alleged misrepresentations for the jury and eliciting evidence, through Mr. Edlin, of their alleged falsity. The government also asked Mr. Edlin about alleged misrepresentations in marketing and investor materials, especially a presentation sent to Mr. Rupert Murdoch. *See Id.*, Ex. 3 (Exhibit 4869). The government will likely do the same in this trial and has signaled its intent to use the same exhibit with Mr. Edlin here. In the prior trial, the government highlighted substantially similar representations to the military in Exhibits 504 and 551, on the one hand, and to investors in Exhibit 4869, on the other hand, and elicited testimony that these representations were false:

| Ex. 504 (Military) | Ex. 551 (Military) | Ex. 4869 (Murdoch) | Edlin Testimony in Holmes Trial on Purported Misrepresentations |
|---|---|---|---|
| "This technology is an industry first, with profound effects on the ability to triage and stabilize patients via quantitative reads | "Theranos's proprietary, patented technology runs comprehensive blood tests from a fingerstick." (pg. 7) | "Theranos's proprietary, patented technology runs comprehensive blood tests from a fingerstick" (pg. 3) | 10/19/21 Tr. at 3998; *id.* at 4039 |

| | | | |
|---|---|---|---|
| from micro-sample sizes in real-time in the field." (pg. 5) | | | |
| "Theranos has created a point-of-service laboratory infrastructure that generates real-time data from a fingerstick of blood or other micro-volumes of different sample types delivering higher quality data than previously possible." (pg. 5) | "Tests for micro-samples of other matrices in real-time outside of traditional lab settings and generates significantly higher integrity data than currently possible." (pg. 7) | "It generates significantly higher integrity data than currently possible" (pg. 3) | 10/19/21 Tr. at 3998; *id.* at 4019; *id.* at 4039; *id.* at 4042 |
| | "Higher Quality Data: The unprecedented lack of variation with Theranos yields higher integrity data and longitudinal trending." (pg. 24) | "The unprecedented lack of variation from system to system yields higher integrity data and longitudinal trending, enabling earlier insight into the onset/progression of disease and reducing unnecessary secondary procedures from results which currently show up as false positive results." (pg. 15) | 10/19/21 Tr. at 3899; *id.* at 4042 |
| "Each Theranos device can run every test currently available through the traditional centralized or hospital laboratory infrastructure." (pg. 5) | "Unlike existing point of care technologies, Theranos analyzers run any test available in central laboratories." (pg. 16)  "All 2000+ currently run tests/CPT codes are available through Theranos." (pg. 24)  "Theranos runs any test available in | "Theranos runs any test available in central laboratories, and processes all sample types." (pg. 28) | 10/19/21 Tr. at 4000; *id.* at 4020; *id.* at 4040; *id.* at 4042 |

| | | | |
|---|---|---|---|
| | central laboratories." (pg. 24) | | |
| | "Accuracy: The <5% CV yielded in Theranos' analysis results from elimination of pre-analytic errors, and provides for precise and actionable information that was previously inaccessible." (pg. 23) | "Theranos provides the highest level of oversight, automation, and standardization in our pre- and post-analytical processes, ensuring the highest levels of accuracy and precision." (pg. 30) | 10/19/21 Tr. at 4000–01; *id.* at 4041 |

The government also elicited testimony from Mr. Edlin about other purported misrepresentations to the military in Exhibits 504 and 551. *See, e.g.*, 10/19/21 Holmes Tr. at 4017, 4019–22, 4041–42. Based on recent disclosures from the government, we expect the government to offer the same exhibits and to elicit substantially similar testimony from Mr. Edlin.

**B.     Exhibits 983, 1496, and 1776 Contain Multiple Layers of Hearsay.**

The government has also suggested that it will offer three exhibits with multiple layers of hearsay.

The first of these, Exhibit 983, is an August 20, 2013 email discussion among Mr. Edlin, Jeffrey Blickman, and Christian Holmes. Though the context is unclear, the discussion consists of off-the-cuff casual workplace communications noting that something—possibly related to Theranos' relationship with DOD—is "pretty firkin [sic] obvious" and that "EAH will obviously handle this the right way and kill it …." Walsh Decl., Ex. 4 (Ex. 983).

The second, Exhibit 1496, is a January 2014 communication to Ms. Holmes—not Mr. Balwani—from Mr. Edlin summarizing "egregious and disruptive" comments by DOD participants in a meeting with Theranos representatives. The email includes a second-hand description of one such comment to the effect of "I'm starting to believe the [Theranos] device is just a box of Palo Alto air." *Id.*, Ex. 5 (Ex. 1496).

And the third, Exhibit 1776, is a June 2014 story in *Fortune* by Roger Parloff containing what the government contends are misrepresentations made by Ms. Holmes to Mr. Parloff.

## III. ARGUMENT

### A. The Court Should Exclude Evidence of Misrepresentations in Exhibits 504 and 551 Because They Are "Other Acts" Evidence for Which the Government Was Required, But Failed, to Give Pre-Trial Notice Articulating a Permissible, Non-Character Purpose Under Rule 404(b).

Evidence on the purported falsity of representations to the military is classic propensity evidence. The government gave no notice of its intent to use such evidence under Rule 404(b). And any suggestion that the representations to the military are inextricably intertwined with the alleged scheme to defraud investors boils down to bootstrapping.

"Evidence of specific wrongful conduct is not admissible to prove the character of a person or to show he acted in conformity therewith." *United States v. Hill*, 953 F.2d 452, 456 (9th Cir. 1991); *see also* Fed. R. Evid. 404(b)(1). If the government in a criminal case seeks to admit evidence of prior acts, it must articulate a permissible, relevant purpose under Rule 404(b)(2). *Hill*, 953 F.2d at 456. The government must also give the defendant "reasonable notice" in writing of Rule 404(b) evidence it intends to offer "before trial" if the defendant requests such notice, and the notice must articulate "the permitted purpose for which the prosecutor intends to offer the evidence" and "the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3). Otherwise, the evidence is inadmissible. Fed. R. Evid. 404 advisory committee's note to 1991 amdt. If the government fails to provide notice of a permissible purpose for such evidence, there is a significant risk that it will be offered and received as character/propensity evidence. Rule 404(b) and its notice provision exist to "avoid a danger that the jury will punish the defendant" for wrongful acts "other than those charged," or that the jury "will convict when unsure of guilt, because it is convinced that the defendant is a bad [person] deserving of punishment." *Hill*, 953 F.2d at 457; *see also United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (Rule 404(b) is designed to prevent jury from inferring that the defendant's "bad character" makes him "more likely to have committed the crime with which he is charged").

Here, the indictment alleges a scheme to defraud *investors*, which was carried out in part by misrepresentations to *investors* about Theranos' relationship with the military and misrepresentations to *investors* about the technology's capability. Dkt. 469 (Third Superseding

1  Indictment, ¶ 12(E) (alleging that Ms. Holmes and Mr. Balwani "represented to investors that
2  Theranos presently had a profitable and revenue-generating business relationship with the United
3  States Department of Defense, and that Theranos's technology had deployed to the battlefield")).
4  But as the government indicated in Ms. Holmes' trial, its interest in Exhibits 504 and 551 and
5  related testimony is to show alleged misrepresentations Ms. Holmes made to *the military* about
6  the technology's capabilities. DOD is not an investor. *See* Dkt. 552 (Order Re Defendants'
7  Motions to Dismiss the Second and Third Superseding Indictments) at 20 (confirming the
8  indictments' "understanding of 'investors' as meaning 'individuals and entities that purchased
9  Theranos securities'"); 10/19/21 Holmes Tr. at 3899 (Ms. Holmes' counsel explaining that the
10 government confirmed DOD was not "one of th[e] business partners . . . referenced in any way in
11 the indictment"). The statements to DOD in Exhibits 504 and 551 are therefore not part of the
12 overall scheme to defraud as alleged in the indictment, but rather constitute "other acts" evidence
13 for which the government had to give notice under Rule 404(b). Because the government did not
14 do so, the Court should exclude the evidence.

15       Nor can the government prevail by asserting, as it did in the Holmes trial, that this
16 evidence is "inextricably intertwined with the charged [investor] fraud" and therefore not
17 evidence of "other acts" subject to Rule 404(b)'s requirements. 10/19/21 Holmes Trial Tr. at
18 3897. "Other act" evidence is "inextricably intertwined" with the charged offense in only two
19 circumstances: either (a) the other acts and the charged offense "clear[ly]" constitute "a single
20 criminal transaction," or (b) the evidence is "necessary" to admit for the government to "offer a
21 coherent and comprehensible story regarding the commission of the crime." *United States v.*
22 *Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). "Coincidence in time is insufficient" to
23 satisfy these requirements. *Id.* at 1013. And the Ninth Circuit has "caution[ed]" that this doctrine
24 "should be applied narrowly," lest it "'lend too many opportunities for its abuse.'" *Hill*, 953 F.2d
25 at 457 n.1 (quoting 1 Wigmore, Evidence § 218 at 720–21 (3d ed. 1940)). "Other acts" evidence
26 with "no direct bearing on the elements" of the charged offense must meet Rule 404(b)'s
27 requirements. *Hill*, 953 F.2d at 457.
28       In the Holmes trial, the government offered two reasons why this evidence was

"inextricably intertwined" with the charged offenses. First, it argued that the allegedly false statements to the military were "part of the overall scheme to mislead investors as to the nature of Theranos's contacts with the military." 10/19/21 Holmes Tr. at 3897. Under this theory, the DOD presentation statements "ma[d]e [the] deception [to investors] more believable" because they "g[o]t the military on the hook," which "add[ed] a kernel of truth" to Ms. Holmes' allegedly false statements "about Theranos's contact with the military." *Id.* Second, the government argued that this evidence showed that Ms. Holmes "knew" the "basis for the military's interest" in Theranos and "knew that the company couldn't deliver on that specific promise," making it more likely "she was well aware that the device . . . was unlikely to be used by the military" even as she allegedly "was telling [investors] it was." *Id.* at 3898.

Neither theory can establish that the alleged misrepresentations to DOD are "inextricably intertwined" with the charged scheme to defraud. Contrary to the government's assertions, the alleged misrepresentations to the military are not "clear[ly]" "part of the transaction" charged in the indictment. *Vizcarra-Martinez*, 66 F.3d at 1012. As explained above, when the government has alleged a scheme to defraud investors, only uncharged transactions involving other investors form "'part of the same transaction'" as the charged fraud. *See United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016); *see also id.* at 1175–76. Ms. Holmes' previous statements to the *military* are separate from the indictment's allegations and are not "part of the same transaction[] as the conduct alleged in the indictment." *Hill*, 953 F.2d at 457. The military is not an "investor" in the scheme described by the operative indictment, and the government has never claimed any investors "acted in reliance" on the statements made to DOD; only that they "relied on what Ms. Holmes told them about" the "military relationship *after* she had made these misrepresentations to the military." 10/19/21 Holmes Tr. at 3903 (emphasis added). These statements offer no "direct proof" of one of the elements of the charged offenses, *Hill*, 953 F.2d at 457; *see also Loftis*, 843 F.3d at 1176.

Nor are the alleged misrepresentations to the DOD "necessary" to tell a "comprehensible story" about the alleged investor fraud. *Vizcarra-Martinez*, 66 F.3d at 1012–13. The statements to DOD do not tell the jury the "time, place, and circumstances of the acts which form the basis of

the charge," *id.* at 1013, or otherwise form "an integral part of the immediate context of the crime charged," *United States v. Hall*, 604 F.3d 539, 543 (8th Cir. 2010); *cf. United States v. Kaiser*, 609 F.3d 556, 571 (9th Cir. 2010) (prior fraudulent dealings were "inextricably intertwined" because it "would have been impossible to intelligibly present a case" without them); *United States v. Newton*, 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002) ("[S]imilar fraudulent acts in close temporal proximity to the charged crimes furnish[] an element of context, but [they are] certainly not crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed.").

Indeed, the government's presentation in the Holmes trial proves that the jury need not hear alleged misrepresentations made *to* the *subject* of the alleged investor misstatements to understand the misrepresentations *about* that subject made to the *investors*. There, the government presented evidence that Ms. Holmes misrepresented Theranos' relationship with pharmaceutical companies to investors, including evidence about the supposedly true nature of Theranos' modest dealings with those companies. *See, e.g.*, 10/22/21 Holmes Tr. at 4402 (testimony by Pfizer representative that he was "not aware of any revenue generating work by Theranos with Pfizer" after 2010); 10/26/21 Holmes Tr. at 5100–01 (testimony by investor about Theranos' claimed relationship with pharmaceutical companies). The government did not elicit testimony regarding alleged misrepresentations *to* the pharmaceutical companies, even though it would presumably "make [Ms. Holmes'] deception more believable." 10/19/21 Holmes Tr. at 3897. That is because whether Ms. Holmes made misrepresentations to the pharmaceutical companies does not affect the truth of her representations to investors about Theranos' work with pharmaceutical companies. The same is true for DOD. Even if the government needs to show the jury that "the military . . . ha[d] some level of connection with Theranos" or that Ms. Holmes "knew the basis for the military's interest" in Theranos, *Id.* at 3897, 3898, the government can have Mr. Edlin or a military witness testify to the nature of those relationships—much like it did with the pharmaceutical witnesses—without offering Exhibits 504 and 551.[1]

In sum, because evidence of misrepresentations in Exhibits 504 and 551 reflects conduct

---

[1] Mr. Balwani reserves all rights to object at trial to particular testimony on this subject.

separate from the charged offenses, that evidence is inadmissible unless the government meets the requirements of Rule 404(b) to admit it for a permissible, non-character purpose. The government's desire to sketch what it feels is "a complete picture" of the alleged investor fraud cannot pull this "other acts" evidence outside of that rule. *United States v. Paladino*, 401 F.3d 471, 475 (7th Cir. 2005) (rejecting similar government argument involving evidence of previous "bad acts" the defendants concealed from investors). The Court should thus exclude Exhibits 504 and 551 and evidence of purported misrepresentations to the military to "avoid a danger that the jury will punish" Mr. Balwani for these uncharged acts or impermissibly infer he is "more likely to have committed" the charged offenses based on this inadmissible evidence of "bad character." *Brown*, 880 F.2d at 1014 (internal quotation mark omitted).

**B. The Court Should Exclude Evidence of Misrepresentations in Exhibits 504 and 551 Under Rule 403 Because Any Probative Value Is Substantially Outweighed by the Severe Risk of Juror Confusion and Unfair Prejudice.**

Rule 403 also bars evidence of misrepresentations in Exhibits 504 and 551. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury," or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Even if the government must show the jury that "the military . . . ha[d] some level of connection with Theranos" or that Ms. Holmes "knew the basis for the military's interest" in Theranos to prove its case, 10/19/21 Holmes Tr. at 3897, 3898, the government has other ways to establish these facts. Rather than introduce Exhibits 504 or 511, the government can ask Mr. Edlin or a military witness about the nature of the relationship or offer other evidence of the military's communications to Ms. Holmes. Exhibits 504 and 551, which discuss *device capabilities*, are not directly probative of alleged misstatements to investors *about the military relationship*. Testimony from Mr. Edlin or a military witness *about the military relationship* would be far more probative of that relevant fact. In fact, the government had to rely on a multi-step chain of inferences to squeeze any probative value out of exhibits 504 and 551. *See* 10/19/21 Holmes Tr. at 3897–98. This evidence is therefore cumulative and has little independent probative value. *See United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998)

(where "alternative" evidence is just as probative but presents "a lower danger of unfair prejudice," the court should "discount the value" of the challenged evidence under Rule 403 (quoting *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)). It is the allegedly tenuous nature of the relationship with the military that is probative for the government, not how that relationship was allegedly induced by Ms. Holmes. The inducement has no independent probative value to the investor fraud counts.

On the other side of the Rule 403 scales, there is a high risk that the jury will impermissibly "punish" Mr. Balwani for Ms. Holmes' previous allegedly wrongful conduct or treat this evidence as character evidence that makes the defendants "more likely to have committed" the charged offenses. *Brown*, 880 F.2d at 1014. "Evidence of this type invites the inference that he who lies often ought to be damned as a liar without regard to the crime in question." *DeCastris*, 798 F.2d at 264. The risk of unfair prejudice here is "especially obvious" because the prior conduct is substantially similar to the alleged investor fraud. *Old Chief*, 519 U.S. at 185. The military presentation contains many of the same statements, even much of the same formatting, as the investor presentations on which the charges here are based. Were the jury to view the military presentations and Mr. Edlin's testimony about misstatements in them, the jury would naturally be tempted to conclude that the later, similar claims made to investors were "more likely" to be intentional misstatements. *Brown*, 880 F.2d at 1014. Especially absent a permissible 404(b) purpose for presenting such similar prior acts to the jury, *compare United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004), this risk tips the Rule 403 scales decidedly in favor of exclusion. *See Old Chief*, 519 U.S. at 185.

Because the independent probative value of evidence of purported misrepresentations in Exhibits 504 and 551 is slight, and the likelihood of juror misuse and unfair prejudice is high, the exhibits should be excluded.

### C. The Court Should Exclude Exhibits 983, 1496, and 1776 as Inadmissible Hearsay.

Exhibits 983, 1496, and 1776 all contain out-of-court statements that do not fall within any exception to the hearsay bar. *See* Fed. R. Evid. 802.

***Exhibit 983.*** The casual workplace communication reflected in Exhibit 983 cannot be a business record under Rule 803(6), and no other hearsay exception even plausibly applies. Rule 803(6) allows the admission of hearsay for "record[s] of an act, event, condition, opinion, or diagnosis" when they meet the Rule's requirements for preparation and storage in the ordinary course of business and were made close in time to the event described. Fed. R. Evid. 803(6). A document is a "record" when made under "established company procedures for the systematic or routine … making and preserving of company records, and relied upon by the business in the performance of its functions." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (internal quotation marks omitted). Casual communication between employees is not a business record even if the employees are discussing business records. *See Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 215 (9th Cir. 1957). In *Moore*, even interoffice memoranda were not business records because they were "casual and informal in nature" and "were patently intended as communications between employees, and not as records of company activity." *Id.* "An email is not a business record … simply because it was sent between two employees … or because employees regularly conduct business through emails." *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019). And emails that are merely a "form of conversation" do not satisfy Rule 803(6). *Id.*; *see also Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (explaining that work emails are not business records just because they are exchanged between company employees).

It is difficult to think of a clearer case of casual communications than a somewhat joking exchange among Theranos employees apparently about internal policies surrounding public discussion of Theranos' military relationship. No plausible argument suggests that any party to the communication is memorializing a new policy or making a record on which Theranos would later rely. Instead, the exhibit is a context-free discussion of some sort of policy or rule and a suggestion that Ms. Holmes will address the issue, complete with a sarcastic comment about the composition of Theranos' board and what should be obvious to outside reporters.

Mr. Balwani is not copied, and thus the exhibit cannot come into evidence to show his knowledge or state of mind. *See Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965)

("[S]o-called 'constructive' notice or knowledge of a circumstances, based upon the actual knowledge of a co-conspirator … has no tendency, circumstantially or otherwise, to prove criminal intent."); *see also United States v. Engelmann*, 720 F.3d 1005, 1008 (8th Cir. 2013) ("Fraudulent intent is not presumed or assumed; it is personal and not imputed. One is chargeable with his own personal intent, not the intent of some other person.").

Thus, Exhibit 983 is hearsay not within any exception. It should stay out.

**Exhibits 1496 and 1776.** Under Rule 805, hearsay within hearsay is admissible only when "each part of the combined statements conforms with an exception to the rule." That is not the case for either Exhibit 1496 or 1776.

Starting with the first, second-hand accounts of claims about challenges to the relationship between Theranos and certain elements of the military cannot satisfy Rule 805's test. Even if the first layer of hearsay—the communication from Mr. Edlin to Ms. Holmes—is a business record, the second layer of hearsay—the underlying comments—is not. Comments from a DOD declarant stating that the Theranos device may be "just a box of Palo Alto air" are both highly prejudicial and completely unmoored from any exception to the hearsay rules. Nor is Mr. Balwani, whose role in Theranos' DOD partnerships was limited, copied on this email. It thus falls squarely within Rule 805's prohibition.

So too with Mr. Parloff's article in *Fortune*—Exhibit 1776. *See, e.g.*, *Larez v. Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) ("As the reporters never testified nor were subjected to cross-examination, their transcriptions of Gates's statements involve a serious hearsay problem."); *see also Horta v. Sullivan*, 4 F.3d 2, 7 (1st Cir. 1993) ("In fact, the newspaper account is hearsay within hearsay."). The article quotes and otherwise attributes several assertions to Ms. Holmes and others. Neither the admissibility of co-conspirator statements nor offering the article for its falsity can salvage the article if offered through Mr. Edlin. There remains the underlying claim—which can only be offered for its truth—that Ms. Holmes really made the representations reflected in the article.

Because all three challenged exhibits are inadmissible hearsay, Mr. Balwani asks the Court to exclude them.

## IV. CONCLUSION

The Court should grant Mr. Balwani's motion and exclude the challenged evidence.

DATED: April 8, 2022

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH "SUNNY" BALWANI