STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Fax: (408) 535-5066
   Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>   Defendant. | Case No. 18-CR-00258 EJD<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO ALLOW CROSS EXAMINATION REGARDING DR. ADAM ROSENDORFF'S POST-THERANOS EMPLOYMENT<br><br>Date: April 19, 2022<br>Time: 8:30 a.m.<br>Court: Hon. Edward J. Davila |

# INTRODUCTION

The government opposes Defendant Ramesh "Sunny" Balwani's Motion to Allow Cross Examination Relating to Dr. Adam Rosendorff's Post-Theranos Employment (ECF No. 1401 ("Motion")), which seeks to permit questions regarding topics that were properly excluded during the last trial against co-Defendant Elizabeth Holmes. *See United States v. Holmes*, 10/05/2021 Trial Transcript ("10/5 Tr.") at 2705:1–2716:12; *see also id.* at 2548:25–2578:25; *United States v. Holmes*, 09/24/2021 Trial Transcript ("9/24 Tr.") at 1690:14–1694:12, 1697:10–1698:25; *United States v. Holmes*, 09/28/2021 Trial Transcript ("9/28 Tr.") at 2098:6–2100:16. After hearing substantial argument spread across multiple days, the Court rejected similar arguments made by co-Defendant Holmes. The Court held that the defense in that case sought to introduce "inappropriate character evidence" that was more prejudicial than probative for purposes of Federal Rule of Evidence 403. 10/5 Tr. at 2707:3–2714:15. The Court also referenced Federal Rule of Evidence 608 and its purpose of "avoid[ing] mini trials," and found that the proposed cross examination would also be cumulative. *Id.* Following that same reasoning, the Court should deny Defendant's pending Motion and preclude any cross examination concerning Dr. Rosendorff's post-Theranos employment.

# BACKGROUND

Dr. Adam Rosendorff worked as the CLIA laboratory director at Theranos from April 2013 until he resigned in November 2014—almost a decade ago. 9/24 Tr. at 1702:22–1703:1. Since then, Dr. Rosendorff has worked for a number of companies within their laboratories. *See generally* 10/5 Tr. at 2548:25–2578:25. To the extent some of those companies have faced scrutiny from government entities,[1] the defense seeks to use those facts to impugn Dr. Rosendorff's competence and his motives for testifying. As described below, the evidence Defendant seeks to introduce is wholly irrelevant and inadmissible character evidence.

---

[1] Defendant asserts that federal investigations involve "*all three* of Dr. Rosendorff's post-Theranos workplaces" (ECF No. 1401 at 5), insinuating these three companies are the only positions Dr. Rosendorff has held since resigning from Theranos. But public information on Dr. Rosendorff's LinkedIn profile shows he has worked at several lab companies since Theranos, not all of which are discussed in Defendant's Motion. *See* https://www.linkedin.com/in/adam-rosendorff-5473a616.

*Invitae*.  From January 2015 until September 2017, Dr. Rosendorff served as the laboratory director for Invitae.  *See* ECF No. 1401-3 at 10 (Exhibit 1), 16 (Exhibit 2).  In September 2017, Invitae announced its intent to retest 50,000 samples for a rare genetic mutation, estimating that a testing error might have generated false negative results for 2 to 15 patients.  *See* ECF No. 1401 at 3 & n.1; 10/5 Tr. at 2564:14–2565:15.  Four years later, in November 2021, Invitae announced in its public securities filings that the company had "recently received a subpoena from the U.S. Attorney's Office for the District of Massachusetts requesting that we produce certain documents regarding our sponsored testing programs."  ECF No. 1401-3 at 92, 105 (Exhibit 3).  No public charges have been filed in connection with that investigation.  In response to Defendant's request for materials received in response to the subpoena issued to Invitae, the government has informed Defendant that those materials include "no documents from the time period of Dr. Rosendorff's employment at Invitae."  ECF No. 1401-3 at 271.

*uBiome*.  Dr. Rosendorff was employed as uBiome's laboratory director for a few months, and was absent for a substantial portion of that time due to a medical issue.  *See* 10/5 Tr. at 2565:16–2567:7; ECF No. 1401 at 4.  In March 2021, the U.S. Attorney's Office for the Northern District of California announced an indictment issued against the co-CEOs of uBiome for defrauding health insurance providers.  ECF No. 1401-3 at 273 (Exhibit 5).  The federal grand jury indicted the two uBiome co-CEOs on charges including "conspiracy to commit securities fraud, conspiracy to commit health care fraud, money laundering, and related offenses in connection with alleged schemes to defraud health insurance providers and investors to raise capital for . . . uBiome."  *Id.*  "Specifically, according to the indictment, the defendants developed, implemented, and oversaw practices designed to deceive approving health care providers and reimbursing insurance providers regarding tests that were not validated and not medically necessary.  Further, the indictment alleges the defendants falsified documents and lied and concealed material facts when insurance providers asked questions to which truthful answers would reveal the fraudulent nature of uBiome's billing model."  *Id.* at 274; *see also id.* at 275 (further describing the nature of the charges as largely relating to billing practices).  Critically, there is no indication that Dr. Rosendorff was aware of uBiome's fraudulent billing practices during the few months he served as the company's lab director.  Indeed, given that the prior lab director had quit

U.S. OPP'N TO DEF. MOT. TO ALLOW CROSS EXAM RE:
DR. ROSENDORFF'S POST-THERANOS EMPLOYMENT,
CASE NO. 18-258 EJD                              3

after learning of those practices, the co-CEOs of uBiome had reason to conceal the fraudulent scheme from Dr. Rosendorff. *See* 10/5 Tr. at 2566:15–24. As the government represented during co-Defendant Holmes' trial, Dr. Rosendorff was never a target of the uBiome investigation and the two former co-CEOs of uBiome are the only individuals charged in the indictment. *See* 10/5 Tr. at 2565:23–2566:3.

**PerkinElmer**. From January 2021 through present day, Dr. Rosendorff serves as the laboratory director at PerkinElmer, Inc.'s Branch Lab in Valencia, California, which is operated in partnership with the California Department of Public Health ("CDPH") ("CDPH Branch Lab"). *See* 10/5 Tr. at 2567:8–2568:18, 2717:5–2720:25. In early 2021, employees of the Centers for Medicare and Medicaid Services ("CMS") conducted a routine inspection of the CDPH Branch Lab and alerted Dr. Rosendorff to several deficiencies, which Dr. Rosendorff testified during co-Defendant Holmes' trial were mostly related to "document review and review of the L.I.S." systems. *See* 10/5 Tr. at 2719:6–9; *see also* ECF No. 1401-3 at 279–293 (Exhibits 6–8). Later that year, CMS declined to impose sanctions after finding—based on documentation submitted throughout the year and up through September 10, 2021—that the CDPH Branch Lab had corrected the identified deficiencies. *See* Declaration of Kelly I. Volkar in Support of United States' Opposition to Defendant's Motion to Allow Cross Examination Regarding Dr. Adam Rosendorff's Post-Theranos Employment ("Volkar Decl."), Exhibits 1 & 2.

## ARGUMENT

The government requests that the Court deny Defendant's Motion and prohibit any inquiry during cross examination of Dr. Rosendorff regarding his post-Theranos employment. While the Court allowed limited inquiry during co-Defendant Holmes' cross examination into the CMS findings at PerkinElmer (10/5 Tr. at 2705:1–2716:12, 2717:5–2720:25), recent events show that the speculative threat of sanctions over Dr. Rosendorff has gone away, making Defendant's argument about the potential for bias even more tenuous than it was during the Holmes trial. Furthermore, the Court should prohibit any inquiry regarding Invitae and uBiome given that, contrary to Defendant's assertion that relevant facts have changed (ECF No. 1401 at 5), it remains true that there is an insufficient connection between those extraneous events and Dr. Rosendorff's testimony in this case. Finally, a balancing under Rule 403 weighs in favor of excluding these topics, which would unnecessarily prolong this trial.

### A. The Topics Defendant Seeks to Query on Cross Examination Are Irrelevant and Inadmissible Character Evidence—Not Evidence of Bias

Dr. Rosendorff's post-Theranos employment is irrelevant to his testimony regarding his actions and statements to Defendant while employed at Theranos. *See*, *e.g.*, *United States v. Holmes*, 09/15/2021 Trial Transcript at 986:10–990:7 (sustaining irrelevance objection to questions regarding witness' post-Theranos employment). Indeed, the only relevance is to show Dr. Rosendorff's propensity or character for being an allegedly incompetent laboratory director—but that is "inappropriate character evidence" as the Court found in the last trial. 10/5 Tr. at 2705:1–2716:12.

To avoid this inevitable conclusion, Defendant makes the same bid as his co-Defendant in the last trial, asserting again that Dr. Rosendorff's post-Theranos employment should be questioned to show his bias for the prosecution. ECF No. 1401 at 5–7. But "[t]he point of a bias inquiry is to expose to the jury the witness' special motive to lie by revealing facts such as interest in the outcome of the trial or personal animosity or favoritism toward the defendant" or prosecution. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) (internal citations omitted) (citing *United States v. Abel*, 469 U.S. 45 (1984)). For example, in *Abel*, the Supreme Court held that evidence showing defendant and a defense witness were both members in a gang and one of the gang's tenets required its members to lie to protect each other was admissible as bias evidence against that witness. 469 U.S. at 52–53.

By contrast, here, Defendant has not shown—and cannot show—that subsequent investigations of companies where Dr. Rosendorff worked at certain times after he resigned from Theranos gives rise to a motive for Dr. Rosendorff to lie or slant his testimony. First and foremost, Defendant has not provided any connection between Dr. Rosendorff's employment as Invitae's lab director—in California in 2017—to the more recent federal investigation in 2021 by the Massachusetts U.S. Attorney's Office into "sponsored testing programs"—which may not have even been related to his role. On that question, it is telling that the federal government office "has no documents from the time period of Dr. Rosendorff's employment at Invitae" as a result of their investigation to date (ECF No. 1401-3 at 271 (Exhibit 4))—making Defendant's unsupported assertions about Dr. Rosendorff's involvement even more speculative. And Invitae's voluntary decision to retest 50,000 samples in September 2017 due to a

"relatively minor" error,[2] in case up to 15 patients received a false negative, is a "specific instance[ ] of a witness's conduct" that does not relate to Dr. Rosendorff's "character for truthfulness" and thus is prohibited by Federal Rule of Evidence 608(b).[3]  Moreover, Defendant has not shown any motive for Dr. Rosendorff to lie regarding events at Theranos because of the 2017 re-testing of samples at Invitae.

Second, Defendant has failed to demonstrate that Dr. Rosendorff was in any way implicated in the billing-related fraud charged against the two co-CEOs of uBiome.  Defendant plucks one phrase out of the government's press release and speculates that validation of lab tests is at issue in that case, when reading the entirety of the press release and summary of the charges clearly demonstrates it is a health-care *billing*-related fraud scheme, and Defendant has not asserted that Dr. Rosendorff had any responsibility over uBiome's billing practices.  *Compare* ECF No. 1401 at 5, *with* ECF No. 1401-3 at 273–275 (Exhibit 5).  As this Court has observed, "[e]vidence of 'guilt by association' is improper." ECF No. 798 at 61 (*Holmes* MIL Order); *see also United States v. Dickens*, 775 F.2d 1056, 1058 (9th Cir. 1985) ("Evidence of association with others affiliated with the 'mob,' even though the others may have been engaged in criminal activity, did not bear on Lester's truthfulness.").  Indeed, Defendant's own Motion acknowledges that "[t]he probative value of such evidence [of a witness' bias], depends in large measure on some showing *that the government was contemplating prosecution*[.]" ECF No. 1401 at 6–7 (quoting *United States v. Atherton*, 936 F.2d 728, 733 (2d Cir. 1991)) (emphasis added).  For uBiome, Dr. Rosendorff was never a target of the investigation and he was not one of the two defendants criminally charged.  *See* 10/5 Tr. at 2565:23–2566:3.  Thus, nothing about the federal investigation regarding uBiome has any tendency to show Dr. Rosendorff is biased in this trial. Defendant's strategy is thus revealed as an attempt to show guilt by association with two different companies that have come under federal scrutiny.

---

[2] Catherine Ho, "After Error, SF Genetic Testing Firm is Retesting 50,000 Saliva Samples," *S.F. Chronicle* (Sept. 12, 2017), *available at* 2017 WLNR 28169944 *and* https://www.sfchronicle.com/business/article/After-error-SF-genetic-testing-firm-is-retesting-12192601.php.

[3] The government notes that Defendant is not asserting Rule 608(b) as a basis to admit evidence on these topics, as co-Defendant Holmes did.  *Compare* ECF No. 1401, *with* 10/5 Tr. at 2548:25–2551:9.

Third, while the Court previously permitted limited questioning regarding Dr. Rosendorff's current position due to the involvement of overlapping CMS employees and the threat of sanctions to Dr. Rosendorff (10/5 Tr. at 2709:14–2716:12), CMS has since decided not to impose any sanctions—including against Dr. Rosendorff—based on additional documentation the CDPH Branch Lab provided throughout the summer and fall last year. *See* Volkar Decl., Exhibit 2. The government continues to assert that the connection between CMS's decisions in that unrelated inspection and Dr. Rosendorff's testimony at this trial is far too attenuated, but whatever speculative connection there once was has now evaporated entirely. Defendant cannot show Dr. Rosendorff has a motive to lie or testify favorably for the prosecution based on his employment at the PerkinElmer CDPH Branch Lab.

Finally, the government notes that—cutting strongly against Defendant's claim that questioning regarding these three companies will show Dr. Rosendorff's motive to slant his testimony favorably for the prosecution—each of the investigations Defendant references began in 2021 *after* Dr. Rosendorff had already given prior consistent statements regarding his percipient observations while working at Theranos in civil depositions and multiple interviews with the FBI. *Compare* ECF No. 1401-3 at 92, 105 (Invitae subpoena announced November 2021), 273 (uBiome indictment announced March 2021), 279 (CMS sends findings to CDPH Branch Lab in February 2021), *with*, *e.g.*, 9/28 Tr. at 1976:4–13 (describing civil deposition in February 2019).

### B. Federal Rule of Evidence 403 Prohibits Inquiry Into the Tangential and Irrelevant Topic of Dr. Rosendorff's Post-Theranos Employment

Any minimal relevance cannot withstand a Rule 403 analysis, particularly given that allowing Defendant to cross examine on Dr. Rosendorff's post-Theranos employment will inevitably prolong and unnecessarily complicate an already lengthy trial. *See*, *e.g.*, *Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281, 1298 (9th Cir. 1986) ("[C]ourts have 'wide discretion' under Rule 403 to impose limits on the quantity and type of [bias] evidence that [the parties] introduce."); *see also* ECF No. 1326 at 6 (*Balwani* MIL Order) (noting that Rule 403 typically tends to prohibit propensity evidence among other unduly prejudicial categories). As the Court found in the last trial, "the reason for [Rule] 608(b) . . . is to avoid mini trials, to avoid getting into these off ramps that talk about perhaps useful information, but . . . it

becomes a 403 type of issue" and the Court has to decide whether to "allow additional evidence in to clear the record[.]" 10/5 Tr. at 2571:3–2574:9, 2705:1–2716:12.

Defendant has not shown that Dr. Rosendorff has any personal knowledge or involvement in the two federal criminal investigations (regarding Invitae and uBiome) about which Defendant would like to cross examine Dr. Rosendorff. If Defendant were permitted to ask questions without any good faith basis for believing Dr. Rosendorff has personal knowledge of the answer, the government would need to take time in response to clear up the confusion and demonstrate the lack of connection between Dr. Rosendorff and those investigations. Similarly, for the CMS findings related to the PerkinElmer CDPH Branch Lab, if Defendant were permitted to cross examine Dr. Rosendorff, the government would need to respond by introducing detailed evidence of the favorable resolution of that inspection. The government would also introduce Dr. Rosendorff's prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). Thus, these topics are exactly the type that would trigger mini-trials that are wholly unnecessary, cause undue delay, and would serve only to prolong an already lengthy trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court deny Defendant's Motion and prohibit cross examination of Dr. Adam Rosendorff regarding irrelevant, unduly prejudicial, character evidence relating to his post-Theranos employment and any unrelated federal investigations of companies where he has been employed.

DATED: April 18, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

  /s/ Kelly I. Volkar
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys