JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**RAMESH "SUNNY" BALWANI'S MOTION TO EXCLUDE TRIAL EXHIBITS 3790 AND 4871 AND RELATED TESTIMONY**<br><br>Date: April 29, 2022<br>Time: 8:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>Hon. Edward J. Davila |

**MOTION TO EXCLUDE TRIAL EXHIBITS 3790 AND 4871 AND RELATED TESTIMONY**

PLEASE TAKE NOTICE that on April 29, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move the Court under Rules 401, 403, 802, and 805 of the Federal Rules of Evidence to exclude Trial Exhibits 3790 and 4871 and related testimony. The Motion is based on the below Memorandum of Points and Authorities, the concurrently filed Declaration of Stephen A. Cazares and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: April 27, 2022　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　ORRICK HERRINGTON & SUTCLIFFE LLP

　　　　　　　　　　　　　　　　　　　　By:　*/s/ Jeffrey B. Coopersmith*
　　　　　　　　　　　　　　　　　　　　　　　Jeffrey B. Coopersmith

　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　　　　RAMESH "SUNNY" BALWANI

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Despite the fact that Mr. Balwani did not join Theranos until 2009, the government may attempt to introduce evidence of purported communications from Ms. Holmes to Bryan Tolbert in 2006.[1] Mr. Tolbert worked for Hall Group, which invested in Theranos twice—first in 2006 and then in 2013. Before the first investment, Mr. Tolbert participated in a conference call with Ms. Holmes, and he took notes based on what she and others said. Mr. Tolbert also received written investor materials from Theranos prior to Hall Group's 2006 investment. During the Holmes trial, the government introduced Mr. Tolbert's notes as Trial Exhibit 3790 and the written investor materials as Trial Exhibit 4871, and questioned him extensively about them. This evidence is not admissible in this trial if the government offers it because the events were long before Mr. Balwani worked at Theranos and have no connection to his time at the company.

Exhibits 3790 and 4871 and Mr. Tolbert's related testimony should be excluded under Rules 401 and 403. Both exhibits are irrelevant to the charged scheme to defraud, which concerns Hall Group's investment in 2013, several years *after* the statements in these exhibits. The government has acknowledged that "actions . . . taken by Theranos under different corporate leadership" are generally "not relevant to [Mr. Balwani's] participation in the [alleged] schemes to defraud." Dkt. 1155 at 6. And there is an extreme risk of confusion and unfair prejudice if the jury is presented with statements made by Mr. Balwani's alleged co-conspirator *years prior* to and completely divorced from the time period for which he could conceivably be liable for her actions.

Exhibit 3790 should also be excluded as inadmissible hearsay. While the government has disclaimed any intention to offer Ms. Holmes's pre-2009 statements for their truth, this exhibit

---

[1] The defense asked the government on April 24 and April 26 if they plan to introduce specific exhibits from 2006 through Mr. Tolbert, but at the time of this filing the government has not yet confirmed one way or the other. The defense also has not been informed of specific exhibits the government may seek to introduce through Patrick Mendenhall, another investor witness who will likely testify on April 29. Like Mr. Tolbert, Mr. Mendenhall was involved in 2006 and 2013 investments in Theranos. Should the government seek to introduce any pre-2010 communications between Ms. Holmes and Mr. Mendenhall or related testimony, that evidence should be excluded for many of the same reasons articulated herein.

contains multiple layers of hearsay that the government cannot cure. The government cannot invoke Rule 803(6), as it did in the Holmes trial, because Mr. Tolbert's notes do not qualify as a business record. They were compiled from several sources, including some that Mr. Tolbert does not even recall, and they were not recorded pursuant to any established company procedures.

The Court should exclude Exhibits 3790 and 4871 and related testimony insofar as they are irrelevant, risk confusion and unfair prejudice, and/or contain impermissible hearsay.

## II.     FACTUAL BACKGROUND

### A.     The Hall Group First Invests in Theranos in 2006—Long Before Mr. Balwani's Tenure—Before Eventually Investing Again in 2013.

Bryan Tolbert is the Vice President of Finance at Hall Group. 10/22/21 Holmes Trial Tr. at 4434. Mr. Tolbert first became familiar with Theranos in 2006—several years before Mr. Balwani joined the company—when Hall Group was considering an investment. *Id.* at 4434. Mr. Tolbert's boss, Craig Hall, tasked him with conducting due diligence on Theranos at that time. *Id.* at 4436. Mr. Tolbert's diligence included conversations with Ms. Holmes and review of written materials provided by Theranos. *Id.* at 4437–54. The defense anticipates the government may introduce exhibits pertaining to Mr. Tolbert's 2006 diligence.

Trial Exhibit 3790 is one such exhibit. *See* Declaration of Stephen A. Cazares, Ex. 1 (Trial Exhibit 3790). It purports to be Mr. Tolbert's notes from an October 26, 2006 conference call with Elizabeth Holmes, Gary Nordheimer, and Chris Lucas. The notes cover Theranos' existing fundraising efforts as of 2006 and work with pharmaceutical companies, as well as information regarding Theranos' financials. In a prior interview with the government, Mr. Tolbert said that he did not remember if these were actual notes from the call or a summary of what he learned. Cazares Decl., Ex. 2 (Tolbert Mar. 2019 MOI) at 2. He also stated that he could not remember if certain information in his notes came from Mr. Lucas or Ms. Holmes, and that he "could not remember exactly who was speaking during the phone call." *Id.* at 2–3. But he "understood Lucas received his information directly from Holmes." *Id.* at 3.

In the Holmes trial, the Court admitted Exhibit 3790 under Rule 803(6) over the defense's hearsay objection. 10/22/21 Holmes Trial Tr. at 4438–40. To lay its Rule 803(6) foundation, the

1 government elicited testimony from Mr. Tolbert that the document represented a "combination"
2 of "notes that [he] took while [he] was on the call" but also "additional information that had been
3 sent to [Hall Group]," which he later testified he sometimes simply "cut and paste[d]" into his
4 own notes. *Id.* at 4438, 4443. The government then elicited testimony about Mr. Tolbert's
5 understanding, as reflected in his notes, of the timing of a potential IPO, Theranos' work with
6 pharmaceutical companies, and Theranos' projected revenue. *Id.* at 4445–47.

7 Trial Exhibit 4871 is another such exhibit. Cazares Decl., Ex. 3 (Trial Exhibit 4871). This
8 exhibit purports to be investor materials that Mr. Tolbert received before Hall Group's 2006
9 investment. The materials cover background on "who the officers and directors of the company
10 were, … what the company did, as well as the financial projections then." 10/22/21 Holmes Trial
11 Tr. at 4449. In the Holmes trial, this exhibit was admitted pursuant to a stipulation between the
12 government and the defense. *Id.* The government then elicited testimony regarding Mr. Tolbert's
13 understanding of Theranos' financial projections going into 2007 and 2008 based on his review of
14 Exhibit 4871, including that the projections showed a "significant increase in revenue" into 2008.
15 *Id.* at 4449–51.

16 After Mr. Tolbert's diligence, Hall Group invested $2 million indirectly into Theranos in
17 late 2006, through Chris Lucas' investment fund, Black Diamond Ventures. 10/22/21 Holmes
18 Trial Tr. at 4454. Mr. Balwani was not affiliated with Theranos at that time. He did not join the
19 company until September 2009—about three years after Hall Group's first investment.

20 Seven years after its first investment, on December 31, 2013, Hall Group invested another
21 $5 million into Theranos, this time directly. 10/22/21 Holmes Trial Tr. at 4441, 4468. In the
22 Holmes trial, Mr. Tolbert testified that he participated in an investor call with Ms. Holmes on
23 December 20, 2013, and also had "several communications" with Mr. Lucas that informed the
24 2013 investment. *Id.* at 4460, 4491–92. Mr. Tolbert never met Mr. Balwani in person or on a
25 phone call. Ex. 2 at 2. Their paths did not cross.

26 **B.   Procedural History**

27
28 Mr. Balwani previously moved to exclude certain alleged coconspirator statements that

are outside the timeframe of any conceivable conspiracy. Dkt. 1156 at 30. In response, the government argued that it did not intend to offer Ms. Holmes' pre-2009 statements for the truth of the matter asserted, but instead "for the effect on the investor's state of mind particularly as it relates to later decisions to invest during the charged period." Dkt. 1181 at 19–20. The Court ultimately deferred ruling on Mr. Balwani's motion, making note of the government's commitments to a limited use of this evidence. Dkt. 1326 at 12–13.

### III.    ARGUMENT

#### A.    The Court Should Exclude Exhibits 3790 and 4871 and Related Testimony Under Rule 401 Because They Are Irrelevant.

Exhibits 3790 and 4871 and related testimony are fundamentally irrelevant. Mr. Balwani had no affiliation with Theranos, let alone any involvement with its financial projections or investor communications, before September 2009. Statements that Ms. Holmes made to potential investors in 2006—three years before Mr. Balwani's tenure—do not make any fact of consequence to Mr. Balwani's guilt or innocence any more or less probable. *See* Fed. R. Evid. 401.

The government has never purported, nor could it, that any conspiracy or scheme to defraud investors existed before Mr. Balwani joined Theranos in September 2009. *Cf.* Dkts. 469 ¶¶ 19–22 (Third Superseding Indictment), 1181 at 18–20. Ms. Holmes' *earlier* actions, divorced from any alleged conspiracy or scheme, cannot be used to show that Mr. Balwani intentionally participated in a *later* conspiracy or scheme to defraud. "It is well settled that 'guilt' is an 'individual and personal' matter," so Mr. Balwani cannot be criminally liable for someone else's actions absent a viable theory of vicarious liability—none of which possibly exists before 2009. *United States v. Holmes*, Case No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *37 (N.D. Cal. May 22, 2021).[2] Indeed, the government has acknowledged that "actions . . . taken by Theranos

---

[2] It would not only be improper to hold Mr. Balwani liable for Ms. Holmes' actions prior to any alleged conspiracy or scheme to defraud, it would also be improper to impute her knowledge or state of mind to him at any point in time. *See Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965) ("[S]o-called 'constructive' notice or knowledge of a circumstance, based upon the actual knowledge of a co-conspirator … has no tendency, circumstantially or otherwise, to prove

1   under different corporate leadership" are generally "not relevant to [Mr. Balwani's] participation
2   in the [alleged] schemes to defraud." Dkt. 1155 at 6. That is certainly true when the exchanges
3   documented in Exhibits 3790 and 4871 occurred three years before Mr. Balwani joined the
4   company.
5         Perhaps recognizing this fatal flaw, the government has suggested it will offer these
6   exhibits and related testimony "for the[ir] effect on the investor's state of mind . . . relate[d] to
7   later decisions to invest during the charged period," *i.e.*, to prove what was material to Hall
8   Group's investments in 2013. Dkt. 1181 at 19–20. Because of the temporal gulf between the 2006
9   statements and Hall Group's decision to invest in 2013, this theory of relevance fails. Hall
10  Group's 2006 communications with Theranos concerned the state of the company *at that time*.
11  While Ms. Holmes' 2006 statements may have been material to Hall Group's 2006 investments, it
12  is implausible that those statements had a material impact on Mr. Tolbert's state of mind *years*
13  *later* when he was considering the 2013 investment. *See United States v. Weinstock*, 231 F.2d
14  699, 701 (D.C. Cir. 1956) (defining "material" to mean "reasonably likely to influence" the
15  decision). That Ms. Holmes' 2006 statements may have been probative of Mr. Tolbert's state of
16  mind in 2006 does not render them relevant to the charges against Mr. Balwani. *See United States*
17  *v. Dean*, 980 F.2d 1286, 1288–89 (9th Cir. 1992) (out-of-court statements may be probative of a
18  witness's motivation for his decision, but they are still inadmissible if "his reasons for [that
19  decision] are not of consequence to the determination of the action, *i.e.*, they do not bear on any
20  issue involving the elements of the charged offense").
21        Because neither of these exhibits nor related testimony are probative of a material issue in
22  this case, they should be excluded.

---

criminal intent."); *United States v. Engelmann*, 720 F.3d 1005, 1008 (8th Cir. 2013) ("Fraudulent intent is not presumed or assumed; it is personal and not imputed. One is chargeable with his own personal intent, not the intent of some other person.").

### B. The Court Should Also Exclude These Exhibits Under Rule 403 Because Any Probative Value Is Substantially Outweighed by the Severe Risk of Juror Confusion and Unfair Prejudice.

Rule 403 also bars admission of Exhibits 3790 and 4871 and related testimony. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury," or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Because Exhibits 3790 and 4871 and related testimony have no probative value with respect to a material issue in this case, the risks of juror confusion and unfair prejudice necessarily counsel in favor of exclusion under Rule 403. And those risks are great. The government itself has acknowledged that introducing evidence of "actions . . . taken by Theranos under different corporate leadership" prior to Mr. Balwani's tenure would "confuse and mislead the jury." Dkt. 1155 at 6. The government seeks to admit these exhibits based on the slenderest of reeds: that these statements had some purported relevance to Hall Group's investment seven years down the line after significant intervening events. That boundless inference invites the jury to impermissibly attribute Ms. Holmes' actions in 2006 to Mr. Balwani even though he was neither affiliated with Theranos nor accused of participating in any alleged conspiracy or scheme to defraud at the time. Indeed, the government expressed a similar concern in its motion in limine to preclude Mr. Balwani from offering evidence of Ms. Holmes' actions after he left Theranos. *See* Dkt. 1155 at 7 ("Admitting evidence about the company's actions after Defendant resigned allows the defense to conflate actions taken by Theranos and co-Defendant Holmes without any showing that Defendant provided input or otherwise influenced such actions." (referencing Ms. Holmes' presentation to the AACC and Theranos' formation of advisory boards in 2016)). If the government believes that evidence of Ms. Holmes' actions in late 2016—mere months after Mr. Balwani left Theranos—is improper, then Ms. Holmes' statements in 2006—three years before Mr. Balwani joined Theranos and seven years before the relevant investment—pose much graver risks under Rule 403.

Because the probative value of Exhibits 3790 and 4871 is nonexistent and the likelihood

of juror misuse and unfair prejudice is high, the exhibits should be excluded.

### C. Exhibit 3790 and Testimony Related to Matters Mr. Tolbert Did Not Personally Observe Are Inadmissible Hearsay Under Rule 802 and 805.

Even if Rules 401 and 403 did not preclude the admission of Exhibit 3790 and related testimony—which is not the case—this evidence would still be inadmissible under Rule 802. Exhibit 3790 contains out-of-court statements that are not subject to any hearsay exception.

Exhibit 3790 presents two layers of hearsay: Ms. Holmes' out-of-court statements to Mr. Tolbert, and Mr. Tolbert's out-of-court written notes. At the motion in limine stage, the government stated that "co-Defendant Holmes' statements … to investors before 2009 are unlikely to be offered for the truth of the matter asserted," Dkt. 1181 at 19. Instead, the government anticipated that it would offer Ms. Holmes' pre-2009 statements for a non-hearsay purpose, such as "for the effect on the investor's state of mind." *Id.* at 19-20. However, as discussed above, these 2006 statements are not admissible for their effect on Mr. Tolbert's state of mind in December 2013—they are simply too remote in time. *See supra* at III.A. But even if that theory held water and provided a non-hearsay purpose for the admission of Ms. Holmes' statements to Mr. Tolbert, it does not address the other layer of hearsay—Mr. Tolbert's out-of-court notes.

No hearsay exception applies to Mr. Tolbert's notes. Contrary to the government's theory in the Holmes trial, Exhibit 3790 does not qualify as a business record under Rule 803(6). That rule allows the admission of hearsay for "record[s] of an act, event, condition, opinion, or diagnosis" when they meet the Rule's requirements for preparation and storage in the ordinary course of business and were made close in time to the event described. Fed. R. Evid. 803(6). A document is a "record" when made under "established company procedures for the systematic or routine … making and preserving of company records, and relied upon by the business in the performance of its functions." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (internal quotation marks omitted).

The government's purported foundation for invoking Rule 803(6) in the Holmes trial depended on Exhibit 3790 reflecting Mr. Tolbert's own notes about statements Ms. Holmes made to him directly. 10/22/2021 Holmes Trial Tr. at 4437–40; *see* Fed. R. Evid. 803(6)(A) (requiring proponent to show the record was made by "someone with knowledge" or "transmitted by[] someone with knowledge"). But that does not follow from the facts. Although Mr. Tolbert testified that most of the statements in Exhibit 3790 were his notes from the investor call with Ms. Holmes, he also testified that some of the content was "sent to [Hall Group]" from sources other than Ms. Holmes, like "Chris Lucas . . . or somebody [else]," and that he simply "cut and paste[d]" certain content into his own notes. 10/22/21 Holmes Trial Tr. at 4438, 4443. He has also said that he "did not remember if these were actual notes from the call or a summary of what he learned" secondhand through individuals other than Ms. Holmes. Ex. 2 at 2; *see also id.* at 2–3 (certain information might have "either come from Lucas or from the telephone call with Holmes"; he "could not remember who told him" certain other information; he "could not remember exactly who was speaking during the phone call, but he understood Lucas received his information directly from Holmes" (capitalization omitted)). In short, Mr. Tolbert's notes are an amalgamation of hearsay upon hearsay from several sources, some of whom he cannot even identify.

Exhibit 3790 does not qualify as a business record. First, Mr. Tolbert's uncertainty about whether he heard the statements from Ms. Holmes, Mr. Lucas, or someone else means he does not have the personal knowledge of what Ms. Holmes actually said that is necessary to invoke this exception. *See* Fed. R. Evid. 803(6)(A) (requiring that recordkeeper have personal knowledge of the asserted information). Second, the fact that his notes might reflect out-of-court statements by Mr. Lucas about out-of-court statements by Ms. Holmes introduces more layers of potential hearsay that would require their own hearsay exceptions. *See* Fed. R. Evid. 805 (hearsay within hearsay is admissible only when "each part of the combined statements conforms with an exception to the rule"); Fed. R. Evid. 803(6) advisory committee's note ("If . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with

scrupulous accuracy is of no avail."); *Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 214 (9th Cir. 1957).

Finally, Mr. Tolbert failed to establish anything about this note-taking practice or whether the notes at issue were created in accordance with "established company procedures," as required. *Clark*, 650 F.2d at 1037. An employee's personal note-taking practices do not qualify as such. *See EEOC v. UMB Bank Financial Corp.*, 558 F.3d 784, 792–93 (8th Cir. 2009) (while interview notes maintained "as a part of [the employee's] normal duties" might be "valuable," the court had "difficulty" concluding they "fit[] within the Rule 803(6) exception"); *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 937 (Exxon employee's notes taken "in the normal course of business" were not admissible under Rule 803(6) absent showing "that the notes were made pursuant to company procedures"). Mr. Tolbert's testimony that he "sometimes" took notes on investment calls, 10/22/21 Holmes Trial Tr. at 4438, falls far short of the kind of "systematic or routine" procedure required by Rule 803(6). *See, e.g.*, *Chadwell v. Koch Refining Co.*, 251 F.3d 727, 732 (8th Cir. 2001) (fact that meetings occurred "irregularly and for a specific purpose . . . cast[] doubt" on whether notes from such meetings could be "legitimately" classified as "kept in the course of a regularly conducted business activity").

These requirements are no mere formalities; they are essential for establishing the "unusual reliability" and "precision" that justifies the business records exception. Fed. R. Evid. 803(6) advisory committee's note; *see also* Fed. R. Evid. 803(6)(E) (evidence only admissible under Rule 803(6) if "the opponent does not show that . . . the method or circumstances of preparation indicate a lack of trustworthiness"). Because Exhibit 3790 contains hearsay not subject to any hearsay exception, it should be excluded. The same logic applies to any testimony by Mr. Tolbert about statements made to third parties that were relayed to him.

### IV.   CONCLUSION

The Court should grant Mr. Balwani's motion and exclude the challenged evidence.

| | | |
|---|---|---|
| 1 | DATED: April 27, 2022 | Respectfully submitted, |
| 2 | | ORRICK HERRINGTON & SUTCLIFFE LLP |
| 4 | | By: */s/ Jeffrey B. Coopersmith*<br>Jeffrey B. Coopersmith |
| 5 | | Attorney for Defendant<br>RAMESH "SUNNY" BALWANI |