1  STEPHANIE M. HINDS (CABN 154284)
United States Attorney

2

THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
5  ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
6  Assistant United States Attorneys

7      150 Almaden Boulevard, Suite 900
San Jose, California 95113
8      Telephone: (408) 535-5061
Fax: (408) 535-5066
9      Kelly.Volkar@usdoj.gov

10  Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,             )  Case No. 18-CR-00258 EJD
                                          )
16          Plaintiff,                    )  UNITED STATES' OPPOSITION TO
                                          )  DEFENDANT'S MOTION TO EXCLUDE TRIAL
17      v.                                )  EXHIBITS 3790 AND 4871 AND RELATED
                                          )  TESTIMONY
18  RAMESH "SUNNY" BALWANI,               )
                                          )  Date:   April 29, 2022
19          Defendant.                    )  Time:   8:30 a.m.
                                          )  Court:  Hon. Edward J. Davila
20  _____  )

21

22

23

24

25

26

27

28

The government opposes Defendant Ramesh "Sunny" Balwani's Motion to Exclude Trial Exhibits 3790 and 4871 and Related Testimony (ECF No. 1416), relating to trial exhibits and associated testimony of Bryan Tolbert—a representative of an investor-victim—introduced during co-Defendant Elizabeth Holmes' trial.  While the government does not currently intend to seek to admit the challenged trial exhibits 3790 and 4871 in this trial, the government does intend to elicit testimony from Mr. Tolbert about his understanding of Theranos, including its technology and financial status, prior to 2009.  As the government did in the *Holmes* trial and as it previewed in its motion *in limine* briefing for this trial, the government intends to elicit testimony from certain investors relating to pre-2009 information for the purpose of the effect that background information had on those investors when they received updated information from Theranos executives, including Defendant, in late 2013.

## BACKGROUND

During co-Defendant Holmes' trial, several investor-victims or representatives thereof testified about early investments in Theranos before the charged period and how that related to their decision to invest again in December 2013.  *See, e.g.*, *United States v. Holmes*, 10/22/2021 Trial Transcript ("10/22 Tr.") at 4433:10–4569:2 (testimony of Bryan Tolbert on behalf of investor-victim Hall Group), 11/04/2021 Trial Transcript ("11/4 Tr.") at 5388:20–5556:10 (testimony of Chris Lucas on behalf of investor-victim Black Diamond Ventures), 11/10/2021 Trial Transcript ("11/10 Tr.") at 6037:5–6100:13 (testimony of investor-victim Alan Eisenman); *see also* ECF No. 469 ¶ 24 (Counts 3, 4, 5).  Each of these investors testified about how they learned about Theranos, what they understood about the company, and why they invested in an early fundraising round in 2006.  10/22 Tr. at 4436:7–4454:10; 11/4 Tr. at 5393:2–5398:13; 11/10 Tr. at 6039:12–6048:13.  Each of these investors then had infrequent and sporadic updates from Theranos, if any communication, until the summer of 2013.  10/22 Tr. at 4454:14–4455:24; 11/4 Tr. at 5399:10–5402:8; 11/10 Tr. at 6058:11–6070:21.

In July 2013, Theranos sent an email communication to current shareholders announcing Theranos' upcoming consumer launch, newly launched website, and recent additions to the company's Board of Directors.  10/22 Tr. at 4456:11–4463:1 (discussing TX 0949); 11/4 Tr. at 5402:9–5411:3.  The investors testified that Theranos' description of the technology in 2013 was consistent with the vision co-Defendant Holmes described to them in 2006, but after almost a decade in "stealth mode" they

expected and understood the company's product to be more mature and its financial condition to be more stable.  11/4 Tr. at 5392:6–17, 5397:7–5398:13, 5442:11–5443:11, 5552:20–5553:14; *see also* 10/22 Tr. at 4456:11–4466:8; 11/4 Tr. at 5402:9–5411:3; 11/10 Tr. at 6043:2–11, 6049:13–6057:5, 6076:1–15, 6082:20–6083:5.  Then, in December 2013, Defendants emailed current shareholders— meaning prior investors—and offered them the opportunity to invest again before Theranos began receiving larger investments from new investors.  10/22 Tr. at 4466:9–4517:8; 11/4 Tr. at 5411:4– 5429:13; 11/10 Tr. at 6081:7–6087:23.  Critically, in late 2013, both Defendant Balwani and co-Defendant Holmes made substantially similar representations to these current shareholders that Theranos' technology did not need further innovation or invention, that "the 'science' behind Theranos [was] complete" and ready to be used to run patient samples, that Theranos manufactured its own devices, and that the company was financially stable even without further investment.  *See*, *e.g.*, TX 4059;[1] 11/10 Tr. at 6075:10–24, 6084:4–6087:7 (describing call and email exchange with Defendant Balwani prior to 2013 investment); *see also* 10/22 Tr. at 4466:9–4517:8 (describing co-Defendant Holmes' statements during call with current shareholders in December 2013).

Anticipating that it would seek to introduce similar investor testimony in this trial, the government stated in its opposition to Defendant's motion *in limine* to exclude co-conspirator statements before 2009:  "the government expects it will seek to admit such statements for non-hearsay purposes as it has done in the *Holmes* trial.  For example, co-Defendant Holmes' statements regarding the state of the technology or company to investors before 2009 are unlikely to be offered for the truth of the matter asserted, but more likely to be offered for the effect on the investor's state of mind particularly as it relates to later decisions to invest during the charged period."  ECF No. 1181 at 22–23 (citing relevant portions of the *Holmes* trial transcript).[2]  The Court in its order deferred ruling on the issue in part based

---

[1] Attached for the Court's convenience as Exhibit 1 to the accompanying Declaration of Kelly I. Volkar in support of this opposition.

[2] Defendant's Motion repeatedly quotes from the government's motion *in limine* seeking to exclude "actions taken by Theranos after Defendant was fired from the company" (*see* ECF No. 1155 at 13) and attempts to apply the same logic to the pre-2009 time period.  *Cf.* ECF No. 1416 at 3, 6, 9.  But doing so is the equivalent of comparing apples to oranges.  As described below, the pre-2009 time period is relevant to the extent it affected investors and provided background knowledge they had when they considered and ultimately did invest again in Theranos during the charged period in 2013.  It is part of the investors' story and their percipient experience with Theranos.  By contrast, actions by the company

1    on the government's representation that it "does not plan to use Holmes' pre-2009 statements for the

2    truth of the matter asserted[.]"  ECF No. 1326 at 13 (Balwani MIL Order).

3                                              **ARGUMENT**

4    **I.    Pre-2009 Interactions Between Investors and Theranos Are Relevant and Should Not Be
           Prohibited Under Federal Rule of Evidence 403**

5

6          Defendant's Motion incorrectly asserts the pre-2009 time period is irrelevant simply because he

7    was not yet employed at Theranos and falls outside the charged conspiracy.  *See*, *e.g.*, *United States v.*

8    *Holmes*, 10/26/2021 Trial Transcript at 4846:11–4863:8 (co-Defendant Holmes raising similar

9    argument).  However, the pre-2009 time period is relevant for these investors to describe their state of

10   mind in deciding whether to invest in 2013, including the effect statements by both Defendants had on

11   them with the context of the prior information they had already received from the company, and is

12   material to their decision to invest again in 2013.  Indeed, as some of these investors testified during co-

13   Defendant Holmes' trial, the stage of growth of a company is an important factor for evaluating an

14   investment because it determines how risky of an investment it is.  *See*, *e.g.*, 11/4 Tr. at 5392:6–17,

15   5397:7–5398:13, 5437:14–5443:11, 5552:20–5553:14; 11/10 Tr. at 6043:2–11, 6082:20–6083:5.  They

16   testified that in 2006 when they invested, they were uncertain whether Theranos would be successful or

17   not.  *See id.*; *see also* 10/22 Tr. at 4456:11–4466:8.  By contrast, in 2013, seven years later, Defendants

18   described the purportedly advanced or "complete" stage of Theranos' technology and bolstered their

19   claims by sharing news articles and the joint press release with Walgreens.  *See*, *e.g.*, TX 4059; 10/22

20   Tr. at 4456:11–4466:8; 11/4 Tr. at 5402:9–5411:3; 11/10 Tr. at 6043:2–11, 6049:13–6057:5, 6076:1–15,

21   6082:20–6083:5.  As one of these investors testified last trial, by 2013, Defendants gave the impression

22   that "[t]he investment was substantially de-risked."  11/10 Tr. at 6082:20–6083:5.  As a direct result of

23   these false and misleading statements in 2013, several investors chose to *increase* their investment

24   amount.  For example, Mr. Tolbert testified that the Hall Group originally invested $2 million in 2006

25   indirectly through another fund, but after receiving updated information from Theranos in 2013, decided

26   to invest approximately $5 million and directly (rather than indirectly).  *See* 10/22 Tr. at 4441:7–16,

27

28   after Defendant left Theranos in mid-2016 relate to attempts to cover up the fraud scheme, which is
     irrelevant to the investors' decision to invest during the charged period.

1   4443:6–10, 4454:3–10, 4517:2–8; *see also* 11/4 Tr. at 5395:15–19, 5398:14–5399:9 (Chris Lucas

2   testifying about increasing investment from ~$2 million total in 2006 to $5.4 million in 2013).

3          The investors who were current shareholders in Theranos as of 2013—which is within the

4   charged period and the basis for three substantive wire fraud counts—should be permitted to describe

5   how they became familiar with Theranos, their knowledge of the technology and how it advanced over

6   time, and their knowledge of the status of the company, its partnerships, and financial status, because

7   this background and context is intertwined with their decision to invest again in 2013.  The pre-2009

8   information they received was relevant to their evaluation and understanding of information they

9   received in 2013 as well as their decision to re-invest in 2013.  Thus, the pre-2009 period is relevant and

10  not unduly prejudicial to provide context for the jury with respect to the investor-victims who invested

11  in December 2013.  And prohibiting these investor-victims from testifying about how they learned about

12  Theranos and why they chose to invest stands to inject more confusion into the trial than permitting the

13  investors to tell their story.  *Cf.* ECF No. 1416 at 8.

14  **II.   Statements of Co-Defendant and Co-Conspirator Elizabeth Holmes Are Admissible**

15          Defendant's Motion asserts that "Mr. Tolbert never met Mr. Balwani in person or on a phone

16  call."  ECF No. 1416 at 5.  But that is not a basis for excluding relevant testimony by Mr. Tolbert.  "A

17  defendant is criminally liable for any underlying substantive offenses committed by co-conspirators

18  during the defendant's membership in the conspiracy . . . . [except for] substantive offenses committed

19  before joining or after withdrawing from a conspiracy."  *United States v. Lothian*, 976 F.2d 1257, 1262

20  (9th Cir. 1992).  Defendant need not personally have made the statement or committed the act so long as

21  the defendant was a "knowing participant" in such a scheme, then the defendant may be held vicariously

22  liable.  *Id.* at 1262–63.  Indeed, the Ninth Circuit Model Criminal Jury Instructions recommend

23  instructing the jury that, if they conclude the defendant was a member of the scheme and had the intend

24  to defraud, "the defendant may be responsible for other co-schemers' actions during the course of and in

25  furtherance of the scheme, *even if the defendant did not know what the other co-schemers said or did*."

26  Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 15.33 (last

27  revised June 2021) (emphasis added); *see also United States v. Stapleton*, 293 F.3d 1111, 1115–18

28  (9th Cir. 2002); ECF No. 1211 (Gov. Proposed Jury Instructions) at 37, 43.

1    Here, the underlying substantive offense occurred in 2013, when Defendant was a knowing

2  participant in the scheme to defraud investors.  While Defendant was not an executive of Theranos and

3  did not make statements to these investors prior to 2009, he adopted and embellished any prior

4  statements about the company made by his co-Defendant when, in 2013, he spoke with several investors

5  and made the same types of false or misleading statements she did.  *See, e.g.*, TX 4059 (memorializing

6  information investor learned during call with Defendant Balwani in December 2013); 11/10 Tr. at

7  6075:10–24, 6084:4–6087:7 (describing call and email exchange with Defendant Balwani prior to 2013

8  investment); *see also* 10/22 Tr. at 4466:9–4517:8 (describing co-Defendant Holmes' statements during

9  call with current shareholders in December 2013).  Given the well-established law surrounding co-

10  schemer and co-conspirator liability, the government does not need to establish a direct connection

11  between Defendant Balwani and each investor in order to prove he was a knowing participant in the

12  scheme and conspiracy, and thus could reasonably foresee that his co-conspirator Elizabeth Holmes

13  would make similar false and misleading statements in furtherance of that conspiracy.

14                                    **CONCLUSION**

15    For the foregoing reasons, the government respectfully requests the Court deny Defendant's

16  Motion to exclude relevant testimony from Bryan Tolbert regarding pre-2009 information he learned

17  about Theranos that related his employer's decision to invest again in 2013.

19  DATED:  April 28, 2022                    Respectfully submitted,

20                                  STEPHANIE M. HINDS
21                                  United States Attorney

22                                    */s/ Kelly I. Volkar*
23                                  ROBERT S. LEACH
                                    JEFF SCHENK
24                                  JOHN C. BOSTIC
                                    KELLY I. VOLKAR
25                                  Assistant United States Attorneys