UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No.  5:18-cr-00258-EJD-2<br><br>**ORDER DENYING MOTION FOR DISMISSAL OR OTHER REMEDIES**<br><br>**FILED UNDER SEAL**<br><br>Re: Dkt. No. 1357 |

Defendant Ramesh "Sunny" Balwani is currently standing trial in this criminal prosecution. Before the Court is Balwani's motion to dismiss the Third Superseding Indictment ("TSI") against him or for other remedies based on what he believes is the Government's failure to comply with its discovery and disclosure obligations under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Mot. for Dismissal or for Other Remedies ("Mot."), Dkt. No. 1357. The Government opposes. U.S. Opp'n to Def.'s Mot. for Dismissal or for Other Remedies ("Opp'n"), Dkt. No. 1374-3. The Court held a sealed hearing on the motion on March 29, 2022. Dkt. No. 1382. Having considered the parties' written submissions and oral arguments, the Court DENIES the motion.

**I.   BACKGROUND**

Balwani and his co-defendant, Elizabeth Holmes, are charged with 12 counts of wire fraud and conspiracy to commit wire fraud arising out of their time as the Chief Operating Officer and Chief Executive Officer, respectively, of Theranos Inc. ("Theranos"), a health care and life sciences company offering blood testing technology. TSI, Dkt. No. 469. Theranos used a bespoke

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
1

database called the Laboratory Information System ("LIS") that housed, among other things, all patient test results and all quality control data at Theranos. Dkt. No. 798 at 56. The LIS was created and maintained by ▓▓▓▓▓▓▓▓, an outside technology consulting firm that provided various services to Theranos, and its principal, Vinaswathan "Shekar" Chandrasekaran. Mot. at 1; Opp'n at 2; Decl. of Casey Boome in Supp. of U.S. Opp'n to Def. Balwani's Mot. to Dismiss ("Boome Decl."), Dkt. No. 1374-5 ¶ 1.

The LIS has been the subject of extensive litigation by the parties, and a more detailed description of the LIS and its demise can be found in the Court's prior orders. *See, e.g.*, Dkt. No. 798 at 56–58; Dkt. No. 887; Dkt. No. 1326 at 21–22, 30–37. After Theranos decommissioned the LIS in August 2018, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Opp'n at 2–4. In furtherance of this ▓▓▓▓▓▓▓▓, the Government sought and obtained a warrant to search Chandrasekaran's residence, which also served as ▓▓▓▓'s principal place of business, for evidence of those crimes. *Id.* The search warrant authorized the seizure of specific categories of information from the time period of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* The warrant further authorized the Government to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* On December 9, 2020, law enforcement agents executed the warrant and seized 16 devices comprising approximately 21.4 terabytes (TB) of data. Boome Decl. ¶ 2. Of that 21TB, approximately 772 gigabytes (GB) are associated with files falling within the search warrant's date range. *Id.* ¶ 5. The remainder of the 21TB (excluding the 772GB) is non-responsive to the search warrant, and after accounting for machine files, unallocated space, and deduplication, the amount of human readable data consists of approximately 2.7TB, or 10,560,000 files. *Id.* ¶ 7.

After filtering for the relevant warrant date range, a Government filter team—separate from the trial team prosecuting this action—was assigned to identify potentially privileged materials belonging to Holmes, Balwani, and/or Theranos within the 772GB portion and filter out those privileged documents before providing any documents to the prosecution team. *Id.* ¶ 8. On March 30, 2021, Holmes' counsel wrote to the Government prosecution team concerning the

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
2

Chandrasekaran search, stating that

> none of the fruits of the warrant have been produced to the defense. The government has produced no data or documents to the defense, nor has it produced receipts of the logging of evidence. Ms. Holmes require that evidence, which (again, in light of the submissions made by the government in support of a warrant) may contain *Brady* material. Please produce it or confirm the absence of any relevant evidence in the seized materials. Given the government's allegations relating to LIS and Mr. Chandrasekaran, the absence of any relevant evidence may well be *Brady*.

Decl. of Amy Walsh re: Def. Ramesh Balwani's Mot. for Dismissal or for Other Remedies ("Walsh Decl."), Dkt. No. 1357-2, Ex. 4 at 3. On April 2, 2021, Balwani's counsel wrote to the prosecution team, stating, "We join the discovery requests set forth in [Holmes' counsel's] letter of March 30, 2021" and voiced concerns that the materials seized might have been protected under the attorney-client privilege or attorney work product doctrine. *Id.*, Ex. 1.

On April 16, 2021, the filter team provided defense counsel with the search terms it was using to identify potentially privileged materials within the 772GB. Mot. at 5. In response, Holmes and Balwani requested that "the government team immediately cease all review of any of the seized data . . . ." Boome Decl., Ex. A; *see also id.*, Ex. B (Balwani's counsel stating, "We do not consent to any further review by any government personnel . . . .").

On April 21, 2021, Holmes' counsel emailed the prosecution team, stating: "We understand that you have in your possession certain evidence seized from the residence of Shekar Chandrasekaran that was purportedly filtered by a government taint team ('seized documents')." Decl. of Robert S. Leach in Supp. of U.S.' Opp'n to Def.'s Mot. for Dismissal or for Other Remedies, Dkt. No. 1374-4, Ex. B at 3. Holmes' counsel requested that the prosecution team immediately cease review of any documents obtained from the search. *Id.* Balwani's counsel responded, making the same request. *Id.* In response, Government counsel stated that the prosecution team had not reviewed any seized documents and that he "would like to arrange for their production to both defendants as soon as possible (without any review by the prosecution team)." *Id.* at 2. Holmes and Balwani did not respond directly to this offer and instead objected to the production of any of their potentially privileged information to their co-defendant and to any

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
3

Government lawyer or agent reviewing any potentially privileged materials. *Id.* at 1–2.

Also on April 21, 2021, Government counsel leading the filter team emailed defense counsel to advise them that the filter team intended to continue with its privilege review, and offered to produce both the potentially privileged and non-privileged materials—i.e., the entire 772GB. *Id.* ¶ 10, Ex. B at 3. Holmes and Balwani did not respond directly to this offer and instead reiterated their objections to the production of any of their potentially privileged information to their co-defendant and to any Government lawyer or agent reviewing any potentially privileged materials. *Id.*, Ex. B at 1–2.

On April 23, 2021, Holmes moved for an emergency hearing and order requiring the filter team to cease its review, which Balwani joined. Dkt. Nos. 759, 763. The Court scheduled a hearing for April 26, 2021, and the parties submitted status conference statements in advance. Dkt. Nos. 762, 769, 770, 771. At the April 26 hearing, the Court ordered (1) the filter team to cease work, and (2) the defense teams and the filter team to meet and confer further to agree on privilege search terms which the filter team could use to create a representative dataset for submission to Magistrate Judge Virginia K. DeMarchi, so that she could make a preliminary determination of whether the materials implicated any privilege or work product. *See* Boome Decl. ¶ 11, Exs. C, E, F, G. That process took several months, and the filter team submitted the dataset to Judge DeMarchi on November 3, 2021. *Id.* ¶¶ 11-21, Ex. H.

Proceedings before Judge DeMarchi continued into 2022. *Id.* ¶¶ 22-28. On January 31, 2022, Holmes' counsel informed the filter team that she did not intend to assert privilege over the documents Judge DeMarchi had identified as potentially privileged as to Holmes. *Id.* ¶ 24, Ex. K. On February 11, 2022, the parties met and conferred on a conference call and agreed in principal that the filter team could reinitiate its review, aside from certain files that Balwani identified in a privilege log. *Id.* ¶ 26. On February 24, 2022[1], the filter team informed the prosecution team that

---

[1] The Boome Declaration states the date of this conversation was "February 24, 2021," but the Court understands this to be a typographical erorr.

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
4

the filter team expected to resume its privilege review in the near future as the proceedings before Judge DeMarchi wind down. *Id.* ¶ 27.

On March 8, 2022—the literal eve of Balwani's trial—the filter team contacted Balwani's counsel, stating its intention to produce all electronic data seized from ▮▮▮▮ Chandrasekaran's devices, not just the 772GB the parties had been litigating before Judge DeMarchi. *Id.* ¶ 29; Walsh Decl., Ex. 2 ("The Balwani trial team has asked me to produce to you all of the data extracted from Viswanathan Chandrasekaran's electronic devices. This production will include about 20 terabytes of data . . . ."). The filter team requested that Balwani provide several hard drives to the FBI's computer forensics laboratory for the production, which would take an estimated three weeks to load.

Jury selection began for Balwani's trial on March 9, 2022. Dkt. No. 1349. On March 15, 2022, Balwani filed the motion now before the Court. Dkt. No. 1357.

## II. DISCUSSION

Balwani argues that the belated production violates both the Government's obligations under *Brady* and Rule 16. He asks the Court to dismiss the TSI, or, at the very least "exclude any evidence supporting the patient-fraud counts, including testimony from or about Mr. Chandrasekaran." Mot. at 5.

### A. *Brady v. Maryland*

Independent of its obligations under Rule 16, the Government has a constitutional obligation to disclose exculpatory evidence and impeachment evidence of prosecution witnesses when such evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Kyles v. Whitley*, 514 U.S. 419, 432–33 (1995). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine[ ] confidence in the outcome of

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
5

the trial." *Smith v. Cain*, 565 U.S. 73, 74 (2012) (citation and quotation marks omitted). In *Strickler v. Greene*, the Supreme Court clarified that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281–82 (1999); *see also United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013).

The parties dispute whether the 21TB contains potentially material *Brady* information. The Government argues that despite being aware of its existence since at least April 2, 2021, Balwani never once sought to compel production of the 21TB, and that he frankly admitted in his April 23, 2021 status conference statement that "███████████████████████████████████████████████████████"—all of which indicates a lack of materiality and, perhaps, even gamesmanship. Opp'n at 11, 13 (quoting Dkt. No. 771 at 1); *see also* Tr. of Trial Proceedings, Mar. 29, 2022 ("3/29/2022 Tr.") at 1411:18-20 ("[W]e stand by our statement that Mr. Coopersmith made back in April of 2021, which is probably a lot of that data is irrelevant to this case. We think it is."). Balwani, on the other hand, acknowledged at the hearing that he could find no case law supporting his contention that he is relieved of showing materiality under these circumstances, but he nevertheless argued that he is not required to demonstrate materiality at the district court level to obtain relief under *Brady*. 3/29/2022 Tr. at 1408:4-19, 1414:20–1415:11. Although Balwani did not cite to any specific authority concerning a defendant's burden to demonstrate materiality before the district court, the Ninth Circuit has held that *Brady* materiality is a retrospective test that evaluates the strength of evidence after trial has concluded. *Olsen*, 704 F.3d at 1183 and n.3; *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. If doubt exists, it should be resolved in favor of the defendant and full disclosure made. The government should therefore disclose all evidence relating to guilt or punishment which might reasonably be considered

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
6

favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." (quoting *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239–40 (D. Nev. 2005); internal punctuation omitted)).

The difficulty here is that nobody has any idea what the 21TB contains because nobody wants to assume the burden of reviewing 21TB—or even 2.7TB, as it may actually be. 3/29/2022 Tr. at 1411:16-18 ("We did not seek 20 terabytes – we don't want 20 terabytes of data, but apparently we're going to have it in the middle of trial."), 1424:1-3 ("In an abundance of caution, I wanted to make sure that the defense had access to it, not to review 21 terabytes of data, Your Honor. No one is going to look at that."). Because neither side is truly interested in reviewing the data, its true exculpatory or impeachment value remains speculative.[2] *Id.* at 1411:25–1412:12 ("MS. WALSH: . . . So it's not completely speculative that there may be some material items in the 20 terabytes of data. THE COURT: That are exculpatory? MS. WALSH: Well, we don't know. It could be helpful to the defense. There may be. THE COURT: That sounds speculative. I think you would agree that it's speculation. MS. WALSH: Yes, but we have an obligation to go in and see.").

Ultimately, however, this dispute does not turn on the question of materiality. The real crux of this issue arises out of tension between the Government's *Brady* obligations and its Fourth Amendment limitations. Unlike Rule 16, the Government must turn over *Brady* material "[w]ith

---

[2] To the extent Balwani asserts that evidence obtained from Chandrasekaran is relevant and material because of the Government's suggestion that Balwani and Chandrasekaran were somehow involved in the demise of the LIS, 3/29/2022 Tr. at 1414:5-12, the Court observes that the Government has steadfastly maintained that the LIS is not critical to this case and it does not intend to raise the LIS in its case-in-chief. *See, e.g.*, May 5, 2021 Hr'g Tr., Dkt. No. 793, at 79:10–80:9, 80:14–81:2, 82:15-16; Dkt. No. 1181 at 29; Feb. 8, 2022 Hr'g Tr., Dkt. No. 1343, at 12:7-17. The Court's rulings on both Holmes' and Balwani's motions in limine on the issue indicated that if the LIS is raised at trial, it would be because Holmes or Balwani chose to introduce the topic. Dkt. No. 798 at 56–59 (granting Holmes' motion to preclude evidence of Theranos' involvement in the destruction of the LIS database, unless and until the Government lays a proper foundation at trial or Holmes puts the factual dispute in issue); Dkt. No. 1326 at 21–22 (adopting Holmes motion in limine ruling and advising that "Balwani may still present his defense [that there is insufficient evidence or lack of proof of guilt without the LIS], but it may open the door to the introduction of evidence regarding the circumstances, including fault, for the loss of the LIS").

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
7

or without a request from the defense." *United States v. Bundy*, 968 F.3d 1019, 1039 (9th Cir. 2020). Production of *Brady* material, however, presupposes that the Government is in lawful possession, custody, or control of that material in the first instance. The parties focus on the privilege dispute over the 772GB and whether the Court's April 26, 2021 order divested the Government of control over the data seized. But the Court's order could not have divested the Government of control that it never had to begin with.

"As a general rule, in searches made pursuant to warrants[,] only the specifically enumerated items may be seized." *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982). In the computer information age, the Ninth Circuit has recognized "[t]he legitimate need to scoop up large quantities of data, and sift through it carefully," and that "over-seizing data is an inherent part of the electronic search process." *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621 F.3d 1162, 1176–77 (9th Cir. 2010) (per curiam); *see also United States v. Schesso*, 730 F.3d 1040, 1046 n.3 (9th Cir. 2013) (noting that seizure and subsequent off-premises search of entire computer system and associated digital storage devices is "not out of the ordinary" and is expressly contemplated by Federal Rule of Criminal Procedure 41(e)(2)(B)). The Ninth Circuit has warned, however, that "[t]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect." *CDT III*, 621 F.3d at 1177. In a concurring opinion, Judge Kozinski stated:

> The process of sorting, segregating, decoding and otherwise separating seizable data (as defined by the warrant) from all other data should also be designed to achieve that purpose and that purpose only. Thus, if the government is allowed to seize information pertaining to ten names, the search protocol should be designed to discover data pertaining to those names only, not to others, and not those pertaining to other illegality.

*Id.* at 1179 (Kozinski, J., concurring).

The Chandrasekaran search warrant authorized the seizure only of data from the relevant time period of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This was the 772GB. The remainder of the 21TB thus fell outside the scope of the warrant, and the Government was not authorized to seize it,

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
8

much less retain it, review it, or offer it up to Holmes and Balwani in April 2021 or March 2022. *Id.* ("Once the data has been segregated (and, if necessary, redacted), the government agents involved in the investigation should be allowed to examine only the information covered by the terms of the warrant. Absent further judicial authorization, any remaining copies should be destroyed or, at least so long as they may be lawfully possessed by the party from whom they were seized, returned along with the actual physical medium that may have been seized (such as a hard drive or computer). The government should not retain copies of such returned data unless it obtains specific judicial authorization to do so."). The Government's commitment to fulfilling its discovery obligations is commendable, but it appears that commitment also blinded the Government to the threshold question of whether it should—or even could—have properly exercised possession, custody, or control over the non-responsive 21TB in the first place.

Accordingly, because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive 21TB, it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material. Accordingly, no *Brady* violation occurred here.

## B. Rule 16

Rule 16 requires the Government to produce five categories of discovery upon a defendant's request: the defendant's written and oral statements, the defendant's prior criminal record, documents and objects that are material to preparing the defense and/or that the Government intends to use in its case-in-chief, reports of examinations and tests, and summaries of expert witness testimony. Fed. R. Crim. P. 16(a)(1). The Government has a continuing duty promptly to disclose additional evidence or material to the defendant as it is discovered. Fed. R. Crim. P. 16(c). Under Rule 16(d), the Court, in regulating discovery, may on a finding of good cause either deny, restrict, or defer discovery or inspection, or grant other appropriate relief or enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d).

The Court is not persuaded that a Rule 16 violation has occurred, based on the plain language of Rule 16. First, the production is not per se untimely, as Rule 16(c) contemplates the

production of materials even during trial. Fed. R. Crim. P. 16(c) (requiring disclosure under certain circumstances if a party "discovers additional evidence or material before or during trial"). Therefore, the Government's production on the eve of trial, standing alone, is not sufficient to create a Rule 16 violation. Balwani's motion is premised on a combination of the timing and volume of the production. *See, e.g.*, Mot. at 1, 2; 3/29/2022 Tr. at 1393:9-20.

It is not apparent from the record that Balwani ever requested the full 21TB as Rule 16 requires. Fed. R. Crim. P. 16(a)(1) (requiring disclosures "[u]pon a defendant's request"); Fed. R. Crim. P. 16(c) (continuing duty to disclose information that, among other requirements, "the other party previously requested"). The initial demand from Holmes—in which Balwani joined—sought "the fruits of the warrant." Walsh Decl, Ex. 4 at 3; *id.*, Ex. 1. The warrant authorized the Government to search for and seize only information falling within the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ period, which is the 772GB portion. At the hearing, Balwani repeatedly asserted that the "the fruits of the warrant" consisted only of the 772GB, not the entire 21TB. *See* 3/29/2022 Tr. at 1396:8-10, 1403:10–1404:6. Because Balwani never requested anything other than the 772GB fruits of the warrant, he did not make a Rule 16 demand for the remainder of the 21TB now at issue.

Even if Balwani had made a proper Rule 16 demand for the remainder of the 21TB, the Government could not have produced that data because, for the reasons discussed above, the Government did not have lawful possession, custody, or control of it. The Court therefore does not address whether the Government's April 2021 offer to produce the materials seized pertained to only the 772GB as Balwani argues, or the entire 21TB as the Government contends.

Because Balwani has not demonstrated that any *Brady* or Rule 16 violation occurred, the Court need not reach the question of an appropriate remedy.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Balwani's motion for dismissal or other remedies. If the Government has already produced the 21TB to Balwani, Balwani must immediately return all 21TB and destroy any copies, notes, and memoranda generated from the

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
10

21TB.

**IT IS SO ORDERED.**

Dated: April 7, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cr-00258-EJD-2
ORDER DENYING MOT. FOR DISMISSAL OR OTHER REMEDIES
11