JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**MOTION TO COMPEL LIS EVIDENCE**<br><br>Date:  May 11, 2022<br>Time:  8:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>**Hon. Edward J. Davila** |

# NOTICE OF MOTION AND MOTION TO COMPEL LIS DOCUMENTS

PLEASE TAKE NOTICE that on May 11, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move the Court to compel the production of *Brady* evidence concerning the Theranos Laboratory Information System. The Motion is based on the below Memorandum of Points and Authorities, the concurrently filed Declaration of Jeffrey B. Coopersmith and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: May 4, 2022                               Respectfully submitted,

                                                 ORRICK HERRINGTON & SUTCLIFFE LLP

                                                 By:   */s/ Jeffrey B. Coopersmith*
                                                       Jeffrey B. Coopersmith

                                                 Attorney for Defendant
                                                 RAMESH "SUNNY" BALWANI

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The government charged Mr. Balwani with concealing systemic testing errors in Theranos' blood testing system without obtaining or reviewing the company's central repository of patient and testing data: the Laboratory Information System (LIS). The Court has consistently recognized that Mr. Balwani is entitled to challenge the quality and thoroughness of the government's investigation, including its failure to procure the LIS. *See, e.g.*, Dkt. 1326 at 22, 39. The Court has also recognized at least the possibility that the government was negligent in its efforts to secure the LIS, and it will consider whether the jury should receive an adverse inference instruction at the close of trial based on the evidence adduced. *See* Dkt. 1326 at 37.

Central to this inquiry is whether the government could have secured the LIS by seizing the LIS servers and drives, and whether the government unreasonably ignored advice to do so from its own technical specialists. The government disclosed this advice in an October 2020 letter to counsel (the "*Brady* letter"), but it has never provided any of the underlying evidence. *See* Declaration of Jeffrey B. Coopersmith, Ex. 1. That evidence is discoverable under both Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Both the Ninth Circuit and the Supreme Court have held that evidence undermining an investigation is exculpatory and must be disclosed to the defendant. *See Kyles v. Whitley*, 514 U.S. 419, 445–54 (1995); *United States v. Howell*, 231 F.3d 615, 624–27 (9th Cir. 2000).

The government cannot discharge its obligations by simply reciting the critical evidence in a sanitized and anonymized fashion, as it did in the *Brady* letter. Rather, it must disclose all *Brady* and Rule 16 material. Ms. Holmes' counsel broadly requested all documents, communications, and identities of individuals referenced in the *Brady* letter in correspondence and in a motion to suppress evidence that Mr. Balwani joined. Dkt. 810 at 8; Dkt. 811-4; Dkt. 1156 at 62. After the Court denied the motion to suppress, and after Mr. Balwani— consistent with the Court's rulings—put the issue of fault for the loss of the LIS before the jury in his opening statement, the government refused to provide key categories of information underlying the *Brady* letter. The Court should compel the production of documents responsive to

Mr. Balwani's narrow request. Its denial of the motion to suppress does not mandate otherwise.

## II.      BACKGROUND

The October 2020 *Brady* letter included, in the government's words, "information, which you may view as potential *Brady*, *Giglio*, or *Jencks* information" Coopersmith Decl., Ex. 1 at 1. The 24-page letter contained high-level summaries of the investigation into LIS, often stripped of specific names, specific communications, and specific dates. *See generally id.*

The *Brady* letter acknowledges that by September 18, 2018, the government had tried—and failed—to access LIS using the password it received from Theranos' outside counsel, WilmerHale. *Id.* at 20–21. The government then sat on its hands. Weeks passed while government employees continued to acknowledge to each other that they could not load the data. *Id.* On October 5, a supervisor in the government's litigation-support unit explained again to government counsel that "the [LIS] drive does not contain material which could be processed in house" and that "the material was not provided to the [government] in a format that can be extracted, viewed, or processed by available software." *Id.* at 22.

At that point, the government litigation-support supervisor "suggested a possible route forward" to the government attorneys: "encourage[] the producing party [Theranos] to consider handing over its physical SQL server and setting it up in a workroom." *Id.* In other words, the same solution proposed by Richard L. Sonnier, an expert in Microsoft SQL databases, encryption, and data recovery retained by Mr. Balwani. *See* Dkt. 1158 ¶¶ 11–21. Mr. Sonnier has opined that "no private encryption key would have been needed had the government pursued either accessing the LIS database or the LIS system by obtaining possession of the hard disk drives and equipment that ran the LIS instead of just the database backup provided to it by Theranos." *Id.* ¶ 21; *see also* ¶¶ 11, 17, 20. Mr. Sonnier also disputes the claims of witnesses interviewed by the government— neither of whom was an expert in either SQL servers generally or the construction and maintenance of the Theranos LIS[1]—that re-assembling the LIS system would have been nearly

---

[1] *See* Dkt. 1158 at 82 (Chung interview memorandum noting that he was a consultant responsible for moving Theranos servers on several occasions who was hired to help with shutting down Theranos); *id.* at 75, 78 (Caddenhead interview memorandum describing him as "basically the last IT person at the company" and noting that a different person's software group was responsible for "the software portion of the LIS database").

- 2 -

impossible after it was dismantled. *See id.* ¶ 19.

The admissions in the *Brady* letter—combined with Mr. Sonnier's sworn declaration—conflict with the government's claim that, "[b]y the time the government realized that the copy of the LIS could never be accessed, it was apparently too late." Dkt. 1181, at 14.

After the Court denied a motion to suppress and corollary request for further production, *see* Dkt. 1326 at 37, Mr. Balwani sought further disclosures of evidence underlying the *Brady* letter to develop his defenses at trial. *See* Coopersmith Decl., Ex. 2. The government declined this request, citing the Court's ruling on the suppression motion. *See id.*, Ex. 3.[2]

### III.   ARGUMENT

#### A. Mr. Balwani Has a Right to Present Evidence on the Quality of the Government's Investigation, and That Evidence Is Discoverable Under *Brady* and Rule 16

The government's refusal to produce material concerning its investigation into LIS violates Rule 16, as well as the government's *Brady* obligations. The Ninth Circuit has held that it is reversible error to exclude evidence supporting a defense theory that the government's "investigation was sloppy and that a more thorough investigation would have exonerated him." *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) (holding that district court abused its discretion in barring the evidence that would have let the defendant "fully argue his sloppy investigation theory"). Just as *Crosby* allows, Mr. Balwani contends that the government was, at a minimum, negligent in failing to secure the LIS. The evidence underlying the government's *Brady* letter—especially its failure to act upon the advice of the litigation-support unit—is highly relevant to both the Court's consideration of an adverse inference instruction, *see* Dkt. 1326 at 37, and the defense theory that the treasure trove of patient-testing data in the LIS would undermine the government's allegations.[3] But to fully present that evidence to the jury, Mr. Balwani must

---

[2] The government's response noted that it had already produced some categories of requested information. The specific documents that the defense seeks here are identified below.

[3] Several witnesses have already confirmed the scope and granularity of data stored in LIS. *See, e.g.*, 4/22/22 Balwani Tr. at 3599–3604 (Dr. Rosendorff confirming that LIS could be used to look up any patient result, patient trend data, the type of device used, the sample tested, the reference range, and other information, and that LIS could be queried to help respond to clinician concerns and determine whether a patient result was valid). The government's failure to secure evidence so probative of falsity is itself exculpatory, as the authorities cited here confirm.

have it—not just the government's sanitized summary of it in the *Brady* letter. Mr. Balwani is entitled to the actual evidence, not the government's carefully crafted summary.

This evidence is subject to discovery: The government revealed as much by including it in its *Brady* letter.[4] And evidence concerning LIS is "material to preparing the defense" for Rule 16 purposes: The central evidence in this case about laboratory error is the patient and testing data in the laboratory's database, and the government's failure to obtain that data and present it at trial undermines its investigation, as well as the charges resulting from that investigation. Fed. R. Crim. P. 16(a)(1)(E)(1). Consistent with Supreme Court and Ninth Circuit precedent, the Court has repeatedly ruled that the defense can challenge the sufficiency of the government's anecdotal evidence and the quality of its investigation. *See, e.g.*, Dkt. 1326 at 39 (refusing to exclude "evidence or argument regarding the details, thoroughness, or good faith of the criminal investigation"); Dkt. 798 at 47 (refusing to exclude argument about "the lack of 'statistical' or 'scientific' evidence as a defense," "characterizing that missing evidence as critical to the Government's case," or "arguing about the statistical insignificance of individual patient or physician testimony"). It is those very issues to which the requested discovery is relevant.

### B. The Court's Denial of Mr. Balwani's Motion to Suppress Does Not Affect the Relevance or Discoverability of the Evidence

Nor is the government absolved from its discovery obligations by the Court's ruling that "the exculpatory value of the LIS database was speculative." Dkt. 1326 at 31. Even assuming that the exculpatory value of the LIS data is uncertain, evidence about the government's failure to obtain that data is itself exculpatory. As the Ninth Circuit and the Supreme Court have held, evidence is exculpatory and subject to *Brady* disclosure when it "might 'have raised opportunities to attack … the thoroughness and even good faith of the investigation'"—and that is true even if some fruits of the investigation might also be considered inculpatory. *Howell*, 231 F.3d at 625 (quoting *Kyles*, 514 U.S. at 445); *accord* Dkt. 798 at 87 (citing *Howell*); Dkt. 1326 at 39.

---

[4] The government tried to shortcut its *Brady* and Rule 16 obligations in the letter by disclosing information that "you [Mr. Balwani] may view as potential *Brady*, *Giglio*, or *Jencks* information" but noting that the government does "not necessarily agree that this information is responsive to Rule 16" or those authorities. Coopersmith Decl., Ex. 1 at 1. The government, of course, cannot evade its discovery obligations by qualifying all its disclosures as prophylactic. And in any event, the characterizing the evidence as falling within *Brady* tracks the precedent cited in this motion.

The disclosures in the *Brady* letter cast doubt on the quality of the government's investigation and the accuracy of the government's representations about that investigation. As the Court has acknowledged, a jury could view the government's investigatory failures as "negligent," and a jury instruction may be warranted. Dkt. 1326 at 37. Mr. Balwani must be able to lay the factual predicate—to show the jury the evidence that the government knew it could not access the LIS data, knew what it could do to obtain it, and inexplicably failed to take the recommended action. And to make that argument, Mr. Balwani should be permitted to examine the evidence concerning the government's investigation—not just the government's summary of that evidence.

That the Court has previously declined to compel production of evidence underlying the *Brady* letter in a different procedural posture is irrelevant to the Court's decision now. *Cf.* Dkt. 887 at 17–18. Those rulings arose in the context of motions to suppress. Although the Court did not credit Mr. Sonnier's expert testimony in ruling on Mr. Balwani's motion to suppress the government's evidence on the accuracy and reliability of Theranos' testing, Dkt. 1326 at 34–37, that determination does not bind the jury in deciding whether the government has met its burden at trial, *see Mazzei v. Money Store*, 829 F.3d 260, 268 (2d Cir. 2016) (pretrial factual findings "do not bind the trier of fact"); *see also Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (holding in a prisoner civil rights action that if a judge's factual finding on exhaustion of remedies also implicates the merits, the finding does not bind the jury considering the merits). "[I]t is the exclusive function of the jury to determine the credibility of witnesses; to resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Barham*, 466 F.2d 1138, 1140 (9th Cir. 1972); *see also* Dkt. 1206 at 2, 10 (final jury instructions in Holmes trial on jury's duty to find facts and assess the credibility of witnesses). Turning to the jury even following an adverse ruling on a motion to suppress is routine. *See, e.g.*, *United States v. Younger*, 398 F.3d 1179, 1186, 1191 (9th Cir. 2005).

And as Mr. Balwani signaled in his opening statement, he intends to make the government's investigatory failure a key feature of his defense at trial. *See* 03/22/22 Trial Tr. 1113–14 (colloquy following opening statements). The decision to include this in opening was

based squarely on the Court's rulings that Mr. Balwani is entitled to present "evidence or argument regarding the details, thoroughness, or good faith of the criminal investigation." Dkt. 1326 at 39.

Mr. Balwani's requested relief is also substantially narrower and more targeted than the discovery Ms. Holmes sought in her motion to suppress (and, by extension, in Mr. Balwani's joinder to that request). *Cf.* Dkt. 810 at 8; Dkt. 1156 at 62. Mr. Balwani seeks only that information necessary for his defense:

- All communications and materials, to the extent they exist in written form, that are specifically referenced in paragraphs 39, 40, 41, 42, 43, 46, 47, 48, 49, 50, and 51 of the *Brady* letter.

Mr. Balwani is entitled to discover this evidence under Rule 16 and *Brady*, and the Court should exercise its authority to order its immediate production. *See* Fed. R. Crim. P. 16(d)(2)(A) (empowering courts to "order [a] party to permit the discovery").

## IV.   CONCLUSION

The Court should grant Mr. Balwani's motion and compel production of the evidence listed above concerning the government's investigation of the LIS.

DATED: May 4, 2022

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH "SUNNY" BALWANI