# Exhibits 1 – 3

# TO THE DECLARATION OF JEFFREY B. COOPERSMITH RE: DEFENDANT RAMESH BALWANI'S MOTION TO COMPEL LIS EVIDENCE

# Exhibit 1



*United States Attorney*
*Northern District of California*

*1301 Clay Street, Suite 340S*
*Oakland, California 94612*

*(510) 637-3680*
*Fax: (510) 637-3724*

October 29, 2020

*By Email*

Lance Wade, Esq.
Kevin Downey, Esq.
Amy Saharia, Esq.
Katie Trefz, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Re: *United States v. Holmes*, CR 18-258 EJD

Dear Counsel:

Pursuant to your requests for discovery, we write to alert you to the following information, which you may view as potential *Brady*, *Giglio*, or *Jencks* information. This supplements our letter to you dated July 9, 2019. By making these disclosures, we do not necessarily agree that this information is responsive to Rule 16, *Brady*, *Giglio*, or *Jencks*, nor do we waive any applicable privilege or protection.

* * * * *

1. Government notes of a phone call with Pete Skinner on or about January 28, 2016, state in part:

> privately held
> few SHDs
>     sophisticated
>     employees
> no public offering
>
> tech
>     prop – h'ware, software, chem, protocol
> . . . .
> software enables TSPU and larger h'ware to hook up w/ cloud so machine can be used remotely & results viewed remotely
>     big data anal.

communications from lawyer custodians), notwithstanding that (1) you will shortly be getting everything you asked for (and more); and (2) John's email made quite clear that we were to contact you before COB today if we wanted to avoid motion practice (which we do)? I'm not sure what would be the relief seek in your motion, if you do intend to file one. And I'd personally find it disappointing if you do intend to file a motion where we were given time to and did consider your position — and are giving you what you've requested. I assume that you would not be using this motion to cast the Company in a negative light to support your indictments. I am taking time away from my vacation out of the country to respond to this, and I would hope that we could have your professional courtesy."

35. On or about September 4, 2018, [REDACTED] wrote to attorneys for the government: "I now understand that it is Mr. Balwani's counsel that intends to file a motion to quash the subpoena. If that is not correct, please let us know. If, however, the below is right, we would like to continue meeting and conferring." An attorney for the government replied: "Thanks for reaching out. I think your first email was based on a misunderstanding and that you have things straight now. The sole purpose of a motion to compel would be to obtain the documents covered by the subpoena. If Theranos is going to produce those documents pursuant to the subpoena and without the need for further court order, there's no need for any such motion. I understand from speaking to [REDACTED] a few minutes ago that Theranos is processing the production now and that we'll get it as soon as it is ready next week. I also understand that Theranos intends to produce those documents regardless of any motion that Mr. Balwani's lawyers might file in the criminal case. If that's correct, I expect that the issue I raised in my September 1 email will be resolved with that production. Please let me know if I'm misinformed about the company's plans. Thanks again for taking the time to write. I appreciate your attention to the matter and hope you enjoy the rest of your vacation."

36. Shortly after receiving an encrypted hard drive with what was purported to be "a copy of Theranos' LIS database" on or about August 27, 2018, FBI Agent Scussel, at the direction of an attorney for the government, sent the encrypted drive by Federal Express to a paralegal in the USAO.

37. On or about September 5, 2018, a USPIS representative not connected to the investigation forwarded to Chris McCollow a newspaper article to the effect that Theranos was shutting down.

38. On or about September 12, 2018, [REDACTED] from WilmerHale stated to the government that the company was probably dissolving that day and that WilmerHale would not be able to act for the company after that. [REDACTED] indicated WilmerHale was still planning to produce a final batch of documents to the government at the end of the week. She also provided the name of the assignee and the law firm representing the assignee.

39. On or about September 12, 2018, a paralegal in the USAO reported to an Automated Litigation Support (ALS) supervisor with the USAO that she had two hard drives in her possession. The paralegal indicated she had wanted to send one of the hard drives to the ALS supervisor, that is was a 1 TB drive but that she was not sure what the data size was; her computer was not detecting the data size. The paralegal planned on sending the hard drive to the IT department of the USAO to take a look. If the IT department was able to fix it, the paralegal

planned to have the IT department give it to the ALS supervisor. The paralegal indicated if the IT department was able to fix it, she would execute routine ALS forms to provide details on what the paralegal wanted done.

40. Later on or about September 12, 2018, the ALS supervisor agreed to the paralegal's plan and offered to look at the drive as well, noting ALS had its little tricks to try and coax drives to play nice. The paralegal advised that after a call with an IT department representative the paralegal decided to send the drive directly to ALS for processing.

41. On or about September 14, 2018, the ALS supervisor advised the paralegal, an IT department representative, and a USAO employee in the ALS unit that she had received the drive that afternoon but it was not playing nice for her either. She reported receiving the following message on both her workstation and a standalone computer:

The ALS supervisor initially guessed that that the drive might be formatted for a Mac or simply corrupted. She discussed the matter with an IT department supervisor and the USAO employee in the ALS unit, who wondered whether the entire drive might be encrypted as a VeraCrypt (or TrueCrypt) volume. The ALS supervisor noted that if that were the case, the ALS unit would need a password to unlock it. She asked whether the originator of the drive provided any documentation as to the contents and/or a password? She provided a scan of the drive label to assist in tracking down a password.

42. On or about September 15, 2018, the paralegal reported to the ALS supervisor, the IT department representative, and the USAO employee in the ALS unit that she had found the hard drive is password protected and provided the following password: 7Dh$fsB!dgs&6Fes!

43. On or about September 18, 2018, the ALS supervisor advised the paralegal and the USAO employee in the ALS unit as follows:

> It looks like [the USAO employee in the ALS unit's] diagnosis was correct; we couldn't see the contents of the drive because it's a VeraCrypt volume (a drive which has been encrypted using VeraCrypt).
>
> Using the password you provided I was able to open it on the standalone, but now I just have further questions!
>
> The contents of the drive *do not* appear to be load ready files, or natives, or any kind of forensic viewer. Rather, It looks like a set of backup copies of something, probably a database (the format is .bak).

Without knowing what sort of database these are from (or if they indeed are database backups) it's very hard to figure out how we might extract the data (or even if it's possible for us to do so).

It also raised the question that perhaps these are simply backup copies of material that has already been provided to our office.

Was there any documentation provided when the drive was delivered?

If you could send along any additional info you have about this drive that would be great; I'm also happy to speak with an agent if you have a point of contact for this material.

The ALS supervisor also provided the following screenshot:

Computer ▸ Local Disk (M:) ▸ LIS ▸ LatestprodDBBackups ▸

Organize ▾ Include in library ▾ Share with ▾ Burn New folder

| Name | Date modified | Type | Size |
| --- | --- | --- | --- |
| AllKeys_Certs | 8/8/2018 11:58 PM | File folder | |
| AuthDB_backup_2017_01_10_172346_1022605.bak | 1/10/2017 5:23 PM | BAK File | 259,850 KB |
| DashboardDB_backup_2017_01_10_172346_1803934.bak | 1/10/2017 5:24 PM | BAK File | 66,792 KB |
| DataAnalyticsDB_backup_2017_01_10_172348_9775557.bak | 1/10/2017 9:11 PM | BAK File | 2,991,930 KB |
| eLabsDB_backup_2017_01_10_172346_2272736.bak | 1/10/2017 6:27 PM | BAK File | 391,362,474 KB |
| FinDB_backup_2017_01_10_172346_2585262.bak | 1/10/2017 7:04 PM | BAK File | 42,996 KB |
| LogDB_backup_2017_01_10_172347_6649194.bak | 1/10/2017 8:22 PM | BAK File | 1,833,218 KB |
| ResultsDB_backup_2017_01_10_172346_3054059.bak | 1/10/2017 7:12 PM | BAK File | 48,673,750 KB |
| SM2Core_backup_2017_01_10_172348_1805946.bak | 1/10/2017 8:54 PM | BAK File | 174,850,734 KB |
| SurveyDB_backup_2017_01_10_172346_3835398.bak | 1/10/2017 7:16 PM | BAK File | 788 KB |
| TVADB_backup_2017_01_10_172346_6023107.bak | 1/10/2017 7:58 PM | BAK File | 209,449,448 KB |
| XifinDB_backup_2017_01_10_172349_8057597.bak | 1/10/2017 9:26 PM | BAK File | 327,783 KB |

12 items

44. On or about September 20, 2018, the government spoke with attorneys from Dorsey representing the Assignee. The call participants discussed state law governing assignments for the benefit of creditors, the contract governing the assignment, board and shareholder approval, Fortress, and the Assignee's approach to privilege.

45. On or about October 4, 2018, the government paralegal advised the ALS supervisor (and attorneys for the government) of an upcoming vacation through October 19, 2018, and inquired whether she was able to find the program that would enable the government to view the hard drive (described above).

46. On or about October 5, 2018, the ALS supervisor advised attorneys for the government and the government paralegal about issues surrounding the hard drive. She noted she had discussions with her unit, the IT department, and the LTSC. She said the drive does not contain material which could be processed in house or by the LTSC. She said the drive contains 12 BAK files totaling about 830 gigabytes. She said the .bak extension indicates that the files were most likely backup files for a Microsoft SQL database. She said if that was correct such files would be used to restore database backups on a Microsoft SQL Server. She said .bak is a common extension and without documentation of what the drive was meant to contain she could only make an educated guess that these were database backups. She said because they were archive files the size of the data could increase when restored. She said the material was not provided to the USAO in a format that can be extracted, viewed, or processed by available software. She said the LTSC's EDD [electronic data discovery] software can only digest SQL.bak files if they are under 300 mb. She suggested a possible route forward of pushing the producing party to see if the party could be persuaded to produce in a manner that can be viewed and processed in a standard way rather than an unspecified archive format the government could not access. She suggested encouraging the producing party to consider handing over its physical SQL server and setting it up in a workroom. She suggested checking with the FBI or other agencies to see if they have resources that can process large SQL database archives. She suggested identifying a vendor who could process the material and noted the data size and labor cost could be staggering. She offered to set up a call or meeting to discuss the issues further.

47. On or about October 30, 2018, the government paralegal advised the ALS supervisor she had met with attorneys for the government and the group decided to pursue the options of pushing the producing party to see if it could be persuaded to produce in a manner that can be viewed and processed in a standard way rather than an unspecified archive format the government could not access and checking with the FBI or other agencies to see if they have resources that can process large SQL database archives. The government paralegal also advised the ALS supervisor to return the hard drive when she had a chance. Around that time, the ALS supervisor did so. The hard drive remained in the possession of the government paralegal until around the spring of 2020.

48. In approximately October and November of 2020, counsel for the government was in contact with counsel for the assignee at the Dorsey law firm on a variety of topics. During those discussions, government counsel noted that the government had been unable to access the copy of the LIS database produced by Theranos. Assignee counsel expressed a lack of surprise that the government was having difficulty accessing the database, and offered to investigate whether the assignee had the database in a different form that would facilitate the government's access. During a subsequent conversation, assignee counsel reported back to the government that it had been unable to locate an alternative version of the LIS database that would allow access. Assignee counsel also informed government counsel that the LIS database was encrypted and that the assignee lacked the means to decrypt it. Assignee counsel opined that Sunny Balwani would likely be able to decrypt the database, but could not identify anyone else who they thought could accomplish the task.

49. On or about January 14, 2019, the government paralegal advised attorneys for the government that ALS had tried to process the hard drive but does not have the software to process the discovery and proposed possible options of producing a native version, involving the

FBI computer forensics team, involving a third party, and/or reaching out to the source. On or about January 29, 2019, the government paralegal provided a similar update.

50. In March of 2019, government counsel contacted assignee counsel to ask some follow-up questions about how the LIS database came to be encrypted and decommissioned. On March 21, 2019, assignee counsel emailed an attorney for the government and conveyed the assignee's understanding that Sunny Balwani and [REDACTED] encrypted the LIS database. In that email, assignee counsel also quoted David Taylor, former Theranos president, as stating that the LIS database was "the most comprehensive (though still not fully comprehensive) company repository of clinical information -- patient contact info, doctor contact info, test dates and results, etc. It has, however, been decommissioned, and before the company formally closed we were advised that it be a herculean undertaking to get it up and running again." Assignee counsel promised to speak to the assignee to determine whether they had any additional information.

51. On March 25, 2019, assignee counsel followed up with an attorney for the government and passed along information from [REDACTED] at the assignee entity. [REDACTED] confirmed that the assignee did not know who decommissioned the LIS database. [REDACTED] also conveyed that Eric Caddenhead, former IT manager of Theranos heard that [REDACTED] had been involved with the LIS database, and that Caddenhead had stated that the LIS database was maintained by a group outside of Theranos, Inc. That email also conveyed that David Taylor had told [REDACTED] on several occasions "that the LIS was decommissioned and that prior to ABC, Theranos, Inc. had been told that it could no longer be reconstructed with the existing resources." The assignee also reported that a company called FTI Consulting had done some work via WilmerHale on behalf of Theranos, and relayed from a representative of that company that FTI had not decommissioned the database.

52. In or about March or April of 2020, an attorney for the government called WilmerHale attorney [REDACTED] and/or [REDACTED]. The purpose of that call was to inquire as to whether WilmerHale was in possession of additional passwords or other information that would allow the government to access the purported copy of the LIS database that had previously been produced by WilmerHale when it represented Theranos. During that call or a follow-on call, the attorney(s) from WilmerHale confirmed that they did not have any such additional information beyond what they had provided earlier.

53. In or about May 2020, Special Agent Scussel retrieved an encrypted hard drive from the USAO and took it to the FBI's RCFL.

54. In or about June 2020, Special Agent Scussel retrieved an encrypted hard drive from the RCFL, returned it the grand jury file, and provided four copies to the USAO.

Very truly yours,

STEPHANIE M. HINDS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

/s Robert S. Leach

ROBERT S. LEACH
JEFFREY SCHENK
JOHN C. BOSTIC
VANESSA BAEHR-JONES
Assistant United States Attorneys

cc Jeff Coopersmith, Esq. (by email)

# Exhibit 2



**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue
Suite 5600
Seattle, WA 98104-7097

+1 206 839 4300

**orrick.com**

**Jeffrey B. Coopersmith**

**E** jcoopersmith@orrick.com
**D** +1 206 839 4339
**F** +1 206 839 4301

March 30, 2022

***Via E-Mail***

John Bostic
Jeffrey Schenk
United States Attorney's Office
150 Almaden Boulevard, Suite 900
San Jose, CA 95113

Robert Leach
United States Attorney's Office
1301 Clay Street, Suite 340S
Oakland, CA 94612

Kelly Volkar
United States Attorney's Office
450 Golden Gate Avenue
San Francisco, CA 94102

Re: United States v. Balwani, No. 18-CR-00258-EJD (N.D.Ca.)

Dear Counsel:

Please let us know by close of business Friday, April 1, 2022, whether you will provide the defense with all communications and materials, to the extent they exist in written form, that are specifically referenced in the following paragraphs of the attached letter from the government dated October 29, 2020: 7, 9, 10, 31, 32, 34, 39, 40, 41, 42, 43, 46, 47, 48, 49, 50, and 51. Thank you.

Very truly yours,

Jeffrey B. Coopersmith

# Exhibit 3

**Brecher, Aaron**

**From:** Leach, Robert (USACAN) <Robert.Leach@usdoj.gov>
**Sent:** Friday, April 1, 2022 9:14 PM
**To:** Brecher, Aaron; Schenk, Jeffrey (USACAN); Bostic, John (USACAN); Volkar, Kelly (USACAN)
**Cc:** Coopersmith, Jeffrey; Walsh, Amy; Cazares, Stephen; Cygnor, Jennifer; Tracey, Malissa; Schuricht, Sachi; Flynn, James
**Subject:** RE: US v. Balwani, 18-cr-218

Dear Counsel,

Thank you for your March 30, 2022 letter.

As you know, in her motion to suppress, Ms. Holmes moved to compel production of much if not all of the material you seek. On August 4, 2021, the Court denied the motion. ECF No. 887 at 17-18. On November 19, 2021, Mr. Balwani adopted the motion to suppress and again moved for production of "all documents related to [the government's] decision not to capture the LIS data." ECF No. 1156 at 62. On February 28, 2022, the Court denied the motion, including Mr. Balwani's demand for further production. ECF No. 1326 at 30-37; *id.* at 37 ("The Court finds that Balwani has provided no additional evidence or arguments that would warrant departing from its earlier ruling denying the motion to suppress, the request for an evidentiary hearing, and further production."). One month later, nothing has changed. We respectfully decline your request.

Please note, with respect to items that post-date August 31, 2018, the Court has held: "To the extent [defendant] seeks the identities of government employees and documents cited for the purpose of delving into the Government's actions with respect to the LIS database after August 31, 2018, that information is not relevant . . . ." ECF No. 887 at 17. The matters set forth in Paragraphs 39 through 51 of the government's October 29, 2020 letter all fall into that category.

With respect to Paragraphs 31, 32, and 34, emails referenced in the government's letter were produced to you more than a year ago, on October 29, 2020. *See, e.g.*, WH000000229, 230, 832-833, 924.

With respect to Paragraphs 7, 9, and 10, the government's letter references notes and work product of SEC attorneys. Such notes are not discoverable under Rule 16. The notes themselves are hearsay and are not admissible. And, even assuming the matters set forth in the notes are *Brady* material (which we dispute), *Brady* does not entitle Mr. Balwani to information in any particular form.

Best regards,
Bob

********************************
Robert S. Leach
Assistant United States Attorney
Deputy Chief, Corporate and Securities Fraud Section
United States Attorney's Office
Northern District of California
1301 Clay Street, Suite 340S
Oakland, California 94612
(510) 637-3918 -- Office

(415) 793-2945 – Cell

---

**From:** Brecher, Aaron <abrecher@orrick.com>
**Sent:** Wednesday, March 30, 2022 12:28 PM
**To:** Schenk, Jeffrey (USACAN) <JSchenk@usa.doj.gov>; Leach, Robert (USACAN) <RLeach@usa.doj.gov>; Bostic, John (USACAN) <jbostic@usa.doj.gov>; Volkar, Kelly (USACAN) <KVolkar@usa.doj.gov>
**Cc:** Coopersmith, Jeffrey <jcoopersmith@orrick.com>; Walsh, Amy <awalsh@orrick.com>; Cazares, Stephen <scazares@orrick.com>; Cygnor, Jennifer <jcygnor@orrick.com>; Tracey, Malissa <mtracey@orrick.com>; Schuricht, Sachi <sschuricht@orrick.com>; Flynn, James <jflynn@orrick.com>
**Subject:** [EXTERNAL] US v. Balwani, 18-cr-218

Counsel:

Attached please find correspondence from Jeff Coopersmith and the letter referred to in that correspondence.

Best,

Aaron

**Aaron P. Brecher**
Senior Associate
Pronouns: he/him/his

Orrick
Seattle
T +1-206-839-4332
M +1-727-410-2901
abrecher@orrick.com



---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.