STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Fax: (408) 535-5066
   Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL LIS DISCOVERY |
| v. | |
| RAMESH "SUNNY" BALWANI, | Date: May 11, 2022<br>Time: 8:30 a.m.<br>Court: Hon. Edward J. Davila |
| Defendant. | |

The government opposes Defendant Ramesh "Sunny" Balwani's Motion to Compel LIS (Laboratory Information System) Discovery. ECF No. 1425 ("Motion"). The Court should reject Defendant's renewed attempt to compel the government to produce the underlying documents described in the government's October 29, 2020 letter (*see* ECF 1425-3 at 3–9) for the same reasons it has previously denied this requested relief—namely, because the documents the Defendant seeks are irrelevant to the present case, unlikely to be exculpatory, cumulative, and fall under the work-product exemption. ECF No. 887 at 17–18. That Defendant chose to discuss the LIS in his opening statement does not change the government's discovery obligations and thus does not meaningfully alter the Court's prior ruling. The Court should deny Defendant's renewed motion to compel.

## I.  Defendant's Motion is Untimely

On October 29, 2020, in response to Defendants' requests, the government disclosed more than twenty pages' worth of information that Defendants may view as potentially discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, 154 (1972), or *Jencks v. United States*, 353 U.S. 657 (1957). *See* ECF No. 1425-3 at 3–9; *United States v. Holmes*, 05/04/2021 Hearing Transcript at 55:17–25 (co-Defendant's counsel describing letter as "the longest *Brady* letter I've ever received" that provides the LIS-related chronology "in excruciating detail"). In June 2021, co-Defendant Elizabeth Holmes moved to suppress certain evidence the government intended to introduce at her trial based in part on her view of the facts related to the destruction of Theranos' LIS, and also requested further production of the documents underlying the government's October 2020 letter. ECF No. 810; *see also* ECF No. 846 (government's opposition). On August 4, 2021, the Court denied co-Defendant Holmes' motion, including her request for further production of documents. ECF No. 887 at 17–18. On November 19, 2021, Defendant Balwani adopted co-Defendant Holmes' motion to suppress and again moved for production of "all documents related to [the government's] decision not to capture the LIS data." ECF No. 1156 at 73–74. On February 28, 2022, the Court denied Defendant Balwani's motion, including his demand for further production. ECF No. 1326 at 30–37; *see id.* at 37 ("The Court finds that Balwani has provided no additional evidence or arguments that would warrant departing from its earlier ruling denying the motion to suppress, the request for an evidentiary hearing, and further production.").

On March 22, 2022, Defendant discussed the LIS database in his opening statement, describing what he expected the evidence at trial would show. 03/22/2022 Trial Transcript ("3/22 Tr.") at 1105:13–1111:19; *see also id.* at 1113:1–1114:7. Subsequently, on March 30, 2022, Defendant's counsel sent a letter to the government once again seeking documents underlying certain paragraphs of the government's October 29, 2020 letter, and the government responded the next day by referring Defendant back to the Court's prior rulings. *See* ECF No. 1425-3 at 11–14. More than a month later, Defendant seeks to compel the government to produce categories of documents covered by his earlier requests and the Court's previous rulings in 2021 and 2022. ECF No. 1425 at 8. The Court should deny Defendant's untimely and meritless Motion.

## II.    The Court Previously Denied Defendant's Request and Nothing Pertinent Has Changed

As described briefly above, the Court has rejected on multiple occasions both Defendants' discovery requests for government emails discussing the inaccessible LIS database copy. The Court has previously found the exculpatory nature of this evidence to be "speculative," the evidence post-August 31, 2018 to be "irrelevant," and that the government did not act in bad faith. ECF No. 887; ECF No. 1326 at 30–37. Specifically, the Court found that "[t]he LIS database information alone would not provide a conclusive determination of whether the Theranos blood tests were accurate, and *it could just as likely contain incriminating evidence to the contrary*. Any exculpatory value is therefore speculative in nature." ECF No. 887 at 10 (emphasis added); *see id.* at 8–11; ECF No. 1326 at 31–32 ("it is equally likely that [the database] also contain[s] millions of *inculpatory* results"). The Court also noted that, while co-Defendant Holmes asserted the LIS database would include exculpatory information, she never "informed the Government of the database's purported exculpatory value either prior to filing the present motion or prior to the decommissioning of the original LIS database," nor did she seek to aid the government in its efforts to obtain a copy (ECF No. 887 at 9)—all of which is true of Defendant Balwani, as well. *See* 02/08/2022 Hearing Transcript ("2/8 Tr.") at 12:19–14:11, 21:20–26:4 (defense counsel asserting that they had every right to reach out to Theranos and ask for a copy of the LIS).

The Court has also found "no bad faith on the part of the Government[.]" ECF No. 1326 at 31; ECF No. 887 at 15; *see id.* at 11–15; *see also id.* at 2–6 (detailing facts regarding the government's request for a copy of the LIS database from Theranos and its subsequent assignee). Indeed, the Court

found that the evidence demonstrated that "[i]t was the deliberate actions of [ ] third parties that resulted in the loss of the LIS database and its content, not the Government's actions." ECF No. 887 at 16. The Court focused on the four-day period between when Theranos provided an "unusable" copy of the LIS database to the government and Theranos decommissioning the database without informing the government, and found that "[a] brief delay of four days hardly approaches even negligence, much less bad faith or a due process violation." ECF No. 887 at 13; *see id.* at 11–15. Defendant Balwani asserted that the government acted in bad faith by not following the suggestion of its Automated Litigation Specialist ("ALS") supervisor, but this Court found that "argument [ ] unpersuasive for multiple reasons," including that the suggestion "was only one proposal among several[.]" ECF No. 1326 at 32.

Moreover, the Court held that any evidence of the government's conduct after Theranos destroyed the LIS database in late August 2018 is irrelevant. ECF No. 887 at 14 ("[T]he Government's conduct after August 31, 2018 is irrelevant."). Co-Defendant Holmes argued, as Defendant Balwani has here, that the government could have reconstructed the database, but the Court found that the evidence "either contradicts her proposition or is of low persuasive value." ECF No. 887 at 13–14; *see also id.* at 16. Defendant Balwani provided an expert opinion report asserting that the government "could have either obtained the LIS database equipment or the disk drives for the LIS[,]" but the Court held "[t]his new evidence does not alter the Court's original analysis." ECF No. 1326 at 31. Indeed, in response to both Defendants' assertions, the Court noted that Theranos' own employees at the time, with "direct, personal knowledge of the LIS" said "that attempting to reconstruct the system using the original equipment would not have been feasible post-decommission." ECF No. 1326 at 32–34; ECF No. 887 at 5 ("Theranos employees/agents knew that once the system was put into storage, it might be 'very difficult to resuscitate.'"). The Court found Defendant Balwani's expert's opinion that the LIS database could be reconstructed "unconvincing" in part because "he appears not to have spoken with any Theranos employees/agents with personal knowledge of the LIS to confirm his understanding of how it was set up or functioned." ECF No. 1326 at 34. Finally, the Court held that "whether the Government had retrieved the original LIS hardware is irrelevant because the encryption key was permanently lost with the dismantling of the disk array. Balwani offers nothing to refute that specific fact." ECF No. 1326 at 36–37.

Based in part on the above findings, the Court denied co-Defendant Holmes' request—adopted by Defendant Balwani—for further production of documents underlying the government's October 2020 letter because "Holmes has not indicated why any of the information or evidence she seeks is relevant, helpful in establishing her defense, not cumulative, or not exempt from disclosure due to deliberative privilege and/or work product protection." ECF No. 887 at 17; *see id.* at 17–18; ECF No. 1326 at 37; *cf.* 2/8 Tr. at 79:16–25 (Defendant Balwani requesting the same documents sought in the present Motion). The Court specifically held: "To the extent [defendant] seeks the identities of government employees and documents cited for the purpose of delving into the Government's actions with respect to the LIS database after August 31, 2018, that information is not relevant[.]" ECF No. 887 at 17. All of the documents sought in Defendant's present Motion fall in that category—spanning in time from September 2018 through March 2019. ECF 1425 at 8; ECF No. 1425-3 at 4–8. As the Court previously held, these documents are "not relevant"—and nothing has changed to alter the Court's conclusion.

Defendant's trial strategy to signal in his opening statement that he intends to introduce evidence regarding the government's alleged failure to reconstruct the LIS database—after the Court held such evidence to be irrelevant twice in pretrial proceedings—does not now entitle him to discovery on that topic. Opening statements are supposed to preview for the jury what the evidence will show—not what evidence the defendant hopes to collect—and parties "proceed at their own peril" in making such promises to the jury as this Court has reminded both parties throughout this trial and the last one. *See, e.g.*, 02/04/2022 Hearing Transcript at 154:5–155:22 (parties proceed at their own peril in making promises during opening statement about what evidence will be admitted at trial); 2/8 Tr. at 29:6–16 (parties proceed at their own peril in discussing LIS-related evidence); *United States v. Holmes*, 10/20/2021 Trial Transcript at 4207:7–18 (co-Defendant seeking—ultimately unsuccessfully—to admit evidence because it was referenced in opening statement). And promising evidence in an opening statement does not change the government's discovery obligations, outlined below, nor should it be used as a tool to circumvent the Court's prior discovery ruling.

### III. Defendant Is Not Entitled to the Discovery He Seeks to Compel

The documents underlying the government's October 2020 letter are not discoverable under Federal Rule of Criminal Procedure 16 ("Rule 16") or *Brady* given that they are irrelevant,

not exculpatory, and constitute work product and mental processes of the prosecution team in this case. *See* ECF No. 1423 (describing relevant discovery standards).

A.     **Federal Rule of Criminal Procedure 16**

Defendant asserts in his Motion that he is entitled to the documents under Rule 16 as "material to preparing the defense" (ECF No. 1425 at 6), but entirely ignores that Rule 16(a)(2) exempts from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The Ninth Circuit has held that "internal government documents prepared by the U.S. Attorney in anticipation of litigation" are squarely within the ambit of the work product privilege and not subject to discovery under Rule 16. *United States v. Fernandez*, 231 F.3d 1240, 1246–47 (9th Cir. 2000) (holding the USAO's death penalty evaluation form and prosecution memorandum were not discoverable); *see also United States v. Nobles*, 422 U.S. 225, 236–39 (1975) (work-product privilege applies in criminal cases and "[a]t its core, the work-product doctrine shelters the mental processes of the attorney [and staff], providing a privileged area within which he can analyze and prepare his client's case"). All but three of Defendant's requests for documents relate to solely internal emails within the United States Attorney's Office ("USAO") for the Northern District of California and relate to processing discovery received from Theranos in connection with prosecuting this case. These documents fall squarely within the protections of Rule 16(a)(2).

Furthermore, Defendant cannot show these documents are "material to preparing the defense" because the documents are irrelevant in this case, as the Court has already found. *See* ECF No. 887 at 14, 17; ECF No. 1326 at 32–34, 36–37. "Materiality is a necessary prerequisite to discovery." *United States v. USDC, Cent. Dist. of Cal., Los Angeles, CA*, 717 F.2d 478, 480 (9th Cir. 1983). Evidence is material under Rule 16 if it is "relevant to the development of a possible defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (internal quotation omitted). Materiality means "more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Barreras-Felix*, No. 19-CR-02199, 2020 WL 1074753, at *3 (D. Ariz. Mar. 6, 2020) (internal quotation omitted). Rather, disclosure of the evidence must "enable the accused to substantially alter the quantum of proof in his favor." *United States v. Marshall*, 532 F.2d 1279, 1285

(9th Cir. 1976) (denying discovery motion where "[a]ny information discovered would have had a great potential for confusing the issues at trial").

Here, Defendant asserts that his defense will center around "the government's investigatory failure" to obtain data stored in the LIS database, citing to the Court's permission that Defendant can challenge the thoroughness of the government's investigation and case law discussing a defense built around a sloppy police investigation. *See* ECF No. 1425 at 5–8. In support, Defendant cites three cases that all review actions (or the failure to act) by the *police* in investigating the crime, not the *prosecution's* internal decision-making process in deciding what evidence to use in proving the crime at trial. *Cf. Kyles v. Whitley*, 514 U.S. 419, 445–49 (1995); *United States v. Howell*, 231 F.3d 615, 623–27 (9th Cir. 2000); *United States v. Crosby*, 75 F.3d 1343, 1347–48 (9th Cir. 1996). In stark contrast, here, the discovery Defendant seeks does not relate to a failure to *collect* the LIS database, rather it all relates to a failure to *reconstruct* a non-working, inaccessible copy of the LIS that the government received. *See* ECF No. 1425-3 at 3–9. Defendant seeks underlying documents with internal government communications about the possible methods of gaining access to an inaccessible copy of the LIS database provided by Theranos so that Defendant may criticize which methods the prosecution opted to pursue. Defendant asserts these documents are material because they may show the government was negligent in failing to secure the LIS and focuses particularly on "its failure to act upon the advice of the litigation-support unit[.]" ECF No. 1425 at 5–6. However, as this Court has already acknowledged, the ALS supervisor's suggestion "was only one proposal among several" and the government followed other alternatives that were suggested, "albeit unsuccessfully." ECF No. 1326 at 32; *see* ECF No. 1425-3 at 7 (suggesting four possible alternative routes upon discovering the copy of LIS that Theranos provided was inaccessible).

Indeed, Defendant's request bears strong resemblance to the discovery request to prove a defense of selective prosecution that was rejected by the Supreme Court in *United States v. Armstrong*, 517 U.S. 456 (1996). In *Armstrong*, the Supreme Court held that—while Defendant asserted the evidence he sought could be useful in "challenging the prosecution's conduct of the case"—Rule 16(a)(1) is narrower and "refer[s] only to defenses in response to the Government's case in chief." *Id.* at 462. The Court goes on to cite Rule 16(a)(2) as supporting its conclusion, noting that "[b]ecause [defendants']

CASE NO. 18-258 EJD                                                7

construction of 'defense' creates the anomaly of a defendant's being able to examine all Government work product except the most pertinent, we find their construction implausible." *Id.* at 462–63. In explaining the sanctity of prosecutorial discretion, the Supreme Court held that "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* at 465 (internal quotation omitted). Rather than seeking discovery in an attempt to prove a sloppy law enforcement investigation related to conduct in the Third Superseding Indictment, Defendant seeks evidence to call into question the prosecutors' *thought processes and mental impressions* upon learning that Theranos provided it with an inaccessible copy of the LIS. Under the rationale of *Armstrong*, that does not constitute material relevant to the defense for purposes of Rule 16.

**B.   *Brady v. Maryland*, 373 U.S. 83 (1963)**

The documents underlying the government's October 2020 discovery letter do not constitute *Brady* material, either. *Cf.* ECF No. 1425 at 5–6 & n.4. The government understands and embraces its constitutional obligation to disclose material exculpatory and impeachment evidence to Defendant (*see* ECF No. 1423 (describing relevant standard under *Brady*))—it has met that obligation here. As a threshold matter, Defendant has not shown that any of the materials he seeks would be exculpatory. *See* ECF No. 887 at 8–11; ECF No. 1326 at 31–32 ("it is equally likely that [the database] also contain[s] millions of *inculpatory* results"). Defendant attempts to avoid the Court's prior holdings by asserting that the documents he seeks are exculpatory "evidence about the government's failure to obtain that [LIS] data[.]" ECF No. 1425 at 6–7. But several of the documents subject to Defendant's Motion would *contradict* his defense theory that the government could have reconstructed the LIS in fall 2018, for example paragraphs 48, 50, and 51 (as included in ECF No. 1425-3 at 7–8) relate to communications between the government, the assignee to Theranos' assets after it dissolved, and some former Theranos employees, all of whom support the *government's* view—rather than Defendant's—that reconstructing the LIS database would be a "herculean undertaking" or was no longer possible. *See* ECF No. 1425-3 at 7–8. Defendant has also not explained how the government's purported failure to follow one of several suggested alternatives by a litigation-support employee constitutes exculpatory evidence in response to

the government's case-in-chief.  And, of course, defense counsel informed the Court that they had attempted to obtain a copy of the LIS database themselves, presumably to no avail.  *See* 2/8 Tr. at 12:19–14:11, 21:20–26:4 (defense counsel asserting that they had every right to reach out to Theranos and ask for a copy of the LIS).

Furthermore, Defendant is not entitled to the documents underlying the government's October 2020 letter because the work-product doctrine also applies under a *Brady* analysis.  The Ninth Circuit has held that "[t]he animating purpose of *Brady* is to preserve the fairness of criminal trials" but that principle "does not encompass an obligation on the prosecutor's part to reveal his or her strategies, legal theories, or impressions of the evidence."  *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006).  Indeed, the Ninth Circuit rationalized that "[e]xtending the *Brady* rule to opinion work product would greatly impair the government's ability to prepare for trials" and consequently held that "in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory facts."  *Id.*; *see also United States v. Agurs*, 427 U.S. 97, 111 (1976) ("reject[ing] the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel").  While Defendant wants to challenge the thoroughness of the investigation in his defense, that alone does not entitle him to the innerworkings of the prosecution team in deciding how to proceed in proving its case.  The government's internal decision-making about which alternative method to follow in attempting to obtain a working copy of the LIS after it learned the copy it was given was not functional is squarely within the work-product doctrine and, therefore, the government should not be compelled to turn over any underlying internal documents referenced in its October 2020 letter.  Indeed, these types of materials are precisely those which the U.S. Department of Justice's *Justice Manual* instructs prosecutors to provide in a summary letter to defense counsel.  *See* U.S. Dep't of Just., *Justice Manual* § 9-5.002 (Step 3(C)); *cf.* ECF No. 1425 at 3–4, 5–6 (requesting "the actual evidence, not the government's carefully crafted summary" without a supporting legal citation).

Finally, Defendant's Motion fails to demonstrate disclosure is required under *Brady* for several other reasons.  For example, Defendant does not assert that the evidence is necessary for impeachment or that it would even be admissible over an objection under Federal Rule of Evidence 403.  Defendant would have to overcome a high burden to call a member of the prosecution team to testify as a witness at

his trial. *See, e.g.*, *United States v. Prantil*, 764 F.2d 548, 553–54 (9th Cir. 1985) ("[C]ourts have generally disfavored allowing a participating prosecutor to testify[] at a criminal trial. . . . This reluctance is understandable particularly when the defendant seeks to call the prosecutor as a witness."). Additionally, the government maintains that the evidence Defendant seeks will not be material to the prosecution's case-in-chief charging Defendant Balwani with conspiracy to commit and committing wire fraud for the reasons stated above with respect to the standard under Rule 16. However, because the analysis of materiality for purposes of *Brady* "necessarily is a retrospective test, evaluating the strength of the evidence after trial has concluded"—the government is encouraged to err on the side of disclosing pretrial and thus must be entitled to make "prophylactic" disclosures of what the Defendant may view as *Brady* material even without conceding such material is, in fact, discoverable under *Brady*. *See*, *e.g.*, *United States v. Olsen*, 704 F.3d 1172, 1181–84 (9th Cir. 2013) (describing three requirements of *Brady* as favorability, suppression, and materiality and denying relief based on materiality, which must be determined retrospectively); U.S. Dep't of Just., *Justice Manual* § 9-5.001(B)(1), 9-5.002 (encouraging prosecutors to provide discovery broader than the discovery obligations); *cf.* ECF No. 1425 at 6 n.4.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court deny Defendant's Motion to compel further discovery related to the LIS.

DATED: May 9, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

  */s/ Kelly I. Volkar*
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys