JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAMESH "SUNNY" BALWANI, <br><br> Defendant. | Case No. CR-18-00258-EJD <br><br> **MR. BALWANI'S REPLY IN SUPPORT OF MOTION TO COMPEL LIS DISCOVERY** <br><br> Date: May 11, 2022 <br> Time: 8:30 a.m. <br> CTRM.: 4, 5th Floor <br><br> Hon. Edward J. Davila |

## I.      INTRODUCTION

This Court has consistently recognized that Mr. Balwani is entitled to challenge the quality and thoroughness of the government's investigation. That includes putting at issue and presenting evidence of fault for the loss of Theranos' Laboratory Information System (LIS), the central repository of patient and testing data, to challenge the government's core allegations in this case. The Ninth Circuit and Supreme Court have consistently held that a defendant is entitled to obtain evidence in the government's possession that pertains to developing and presenting precisely this kind of defense. In this case, however, the government is refusing to disclose even the same narrow subset of evidence that the government already decided it had to describe and disclose in its October 2020 *Brady* letter. *See* Dkt. 1425-3 at 3–9. Production of the requested material is mandated by Rule 16 and *Brady*. It is not precluded by work-product protection or by this Court's earlier suppression ruling.[1]

## II.      ARGUMENT

### A.      Mr. Balwani May Present Evidence of the Quality of the Government's Investigation and That Evidence Is Discoverable Under Rule 16 and *Brady*

Nowhere in its 10-page opposition does the government acknowledge this Court's previous rulings—based on controlling precedent—that: (1) Mr. Balwani may raise "fault or responsibility for [LIS's] unavailability, … including evidence of the circumstances surrounding the dismantling of the LIS," Dkt. 1326 at 22; (2) he may present "evidence or argument regarding the details, thoroughness, or good faith of the criminal investigation," *id.* at 39; and (3) the government may have been "negligent in the route it chose to take" to try to procure the LIS data, *id.* at 37. Nor does the government deny that the evidence Mr. Balwani seeks relates to "the dismantling of the LIS" and "the route [the government] chose to take" in trying to obtain the LIS data. Still, the government claims this evidence is "irrelevant" and so need not be produced. Dkt. 1426 at 5. That position cannot be squared with this Court's prior rulings or the controlling

---

[1] The government characterizes Mr. Balwani's motion as untimely—without citation to any legal authority—yet it is the government that is under a duty to timely disclose the requested materials. *See* Dkt. 1426 at 2–3; Fed. R. Evid. 16(c) (continuing duty to disclose requires "prompt[]" disclosure); *see, e.g., United States v. Woodley*, 9 F.3d 774, 776 (9th Cir. 1993) ("government failed to timely disclose *Brady* and Rule 16 materials" by providing them 10 days before trial).

case law. It cannot even be squared with the government's own decision to describe the evidence in a *Brady* letter.

***Rule 16.*** "Evidence is material under Rule 16 if it is 'relevant to the development of a possible defense.'" *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (quoted in Dkt. 1426 at 6). The government suggests that materiality is a demanding standard, *see* Dkt. 1426 at 6–7, but that is wrong: "Materiality is a low threshold; it is satisfied so long as 'the information [the defendant seeks] would have helped' [him] prepare a defense. Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citations omitted).

The evidence Mr. Balwani seeks meets this standard. This Court has acknowledged that fault for the loss of LIS, including the government's potentially negligent decision not to seize the physical servers and drives, is a possible defense. Dkt. 1326 at 22, 39; *see also United States v. Crosby*, 75 F.3d 1343, 1347–48 (9th Cir. 1996) (holding that district court abused its discretion in limiting the defendant to "poking holes in the prosecution's case," when he "could have plausibly argued that a more thorough investigation would have produced [exculpatory] evidence"). The evidence Mr. Balwani seeks—specific communications among government employees about their ability to access the government's copy of the LIS and options for procuring the LIS data, coupled with the government's failure to take those steps—is relevant to that defense. *See* Dkt. 1425-3 at 3–9. These premises lead to an obvious conclusion: The government must disclose the requested communications, as they are "relevant to the development of a possible defense." *Mandel*, 914 F.2d at 1219 (quoted in Dkt. 1426 at 6); *see* Fed. R. Crim. P. 16(a)(1)(E)(i), (c).[2]

The government tries to sidestep this Court's rulings, and the Ninth Circuit precedent underlying those rulings, by drawing several meaningless distinctions. First, the government argues—with no authority—that while defendants may be entitled to probe investigative actions taken by *the police*, they cannot probe investigative decisions made by *the prosecution*. Dkt. 1426

---

[2] Rule 16(a)(2) does not excuse the government's failure to produce the requested information for reasons explained *infra* at Part B.

at 7. None of the relevant case law, however, turns on the particular law enforcement body that carried out the sloppy investigation. What matters is whether the defendant could "plausibly argue[] that a more thorough investigation would have produced [exculpatory] evidence," *Crosby*, 75 F.3d at 1348—not whether the investigation was carried out by prosecution team members who happen to be police, prosecutors or paralegals and litigation support staff.

Second, the government distinguishes the failure to *collect* the LIS database and the failure to *reconstruct* it. Dkt. 1426 at 7. But this distinction similarly makes no difference. An investigation is flawed whether the flaw arose from failing to collect probative evidence in the first place or from failing to timely obtain it after realizing that the evidence originally collected could not be accessed. The defense contends—with evidence—that the government could have obtained the LIS if it has followed its own advice. *See* Dkt. 1158 ¶¶ 9–21 (Sonnier Decl.). If the government wants to present evidence suggesting that is not the case, it can try to do so.

Third, the government strains to compare this case to *United States v. Armstrong*, 517 U.S. 456 (1996), where the Supreme Court held that "Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* at 463. Unlike the defendant in *Armstrong*, Mr. Balwani is requesting "documents material to the preparation of [his] defense against the Government's case in chief," not documents related to a selective-prosecution claim. Whereas a selective-prosecution claim, like the one in *Armstrong*, turns on extraneous evidence involving prosecutorial discretion and decisions about unrelated individuals, Mr. Balwani is seeking evidence that goes to core issues about the government's investigation and the quality (or lack thereof) of the evidence obtained from it. The government's failure to obtain the information contained in the LIS—patient results, trend data, specific devices used for tests, reference ranges, and more—tends to undermine the government's ability to prove beyond a reasonable doubt that Theranos systemically was unable to produce accurate and reliable test results, and demonstrates its rush to judgment without the critical LIS evidence.

**Brady.** The evidence Mr. Balwani seeks should also be produced under the government's *Brady* obligations. The government's own authorities make clear that *Brady* applies here. As the

Ninth Circuit explained in *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013), *Brady* material need not be exculpatory on its face. So long as it is "*potentially* exculpatory"—including if it displays a "sloppiness and haste [that] could have supported a defense theory" of "inadvertent[]" error in the collection or examination of evidence—the material qualifies as "favorable" and must be disclosed. *Id.*; *see also Kyles v. Whitley*, 514 U.S. 419, 443 (1995) (information which might "have raised opportunities to attack … the thoroughness and even good faith of the investigation …" constitutes exculpatory evidence); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("That the information withheld may seem inculpatory on its face in no way eliminates or diminishes the government's duty to disclose evidence of a flawed … investigation."). The government is simply wrong when it claims that "Defendant has not shown that any of the materials he seeks would be exculpatory." Dkt. 1426 at 8. Because the LIS contained a plethora of information about patient results and trends—indeed, it was regularly queried to respond to clinician concerns and determine whether a patient result was valid—it is "*potentially* exculpatory." *Olsen*, 704 F.3d at 1181. The government's failure to procure it even "inadvertently" is relevant to Mr. Balwani's defense. *Id.*[3]

The government also argues that several of the documents Mr. Balwani seeks "would *contradict* his defense theory," presumably because they include third-party opinions that the LIS could not be reconstructed without the missing encryption key. Dkt. 1426 at 8. Those opinions conflict with the opinion of Mr. Sonnier, an expert in Microsoft SQL databases, encryption, and data recovery retained by Mr. Balwani. *See* Dkt. 1158 ¶¶ 11–21 (Sonnier Decl.); Dkt. 1326 at 34–37 (discussing these conflicting opinions). But competing interpretations of the facts are no reason to withhold potentially exculpatory material. As *Olsen* explains, a "prosecutor's speculative prediction about the likely materiality of favorable [i.e., *potentially* exculpatory] evidence … should not limit the disclosure of such evidence." 704 F.3d at 1183 n.3; *see also United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C.2005) ("[T]he government must always produce any potentially exculpatory … evidence without regard to how the withholding of such

---

[3] And Mr. Balwani need not even establish that the LIS data itself might have been exculpatory. Under *Kyles* and *Howell*, evidence of investigatory negligence itself is exculpatory no matter the probative value of the underlying data. *See Kyles*, 514 U.S. at 445; *Howell*, 231 F.3d at 625.

evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial."). It likewise does not matter that the government pursued options other than seizing the LIS hardware and servers. *See* Dkt. 1426 at 8–9. The government may argue that the options it pursued were adequate, but that does not affect whether the defense has a right to obtain and present the underlying evidence (as opposed to the government's summary description of it).[4]

### B. The Work-Product Doctrine Does Not Absolve the Government of Its Obligation to Disclose the Requested Material

The government cannot evade its disclosure obligations by invoking work-product protections. *See United States v. Ruehle*, 583 F.3d 600, 607–08 (9th Cir. 2009) (party asserting privilege bears the burden of proving it applies). The government's own authorities again belie its position. In *Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006), the Ninth Circuit defined "work product" as "material encompassing only an attorney's mental impressions or legal theories." *Id.* at 742. And in *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000), the Ninth Circuit explained that a memorandum containing a "comprehensive discussion of … the [government's] theory of liability," "the facts and evidence," and "the basis for Federal prosecution," which was "intended primarily for to be used as a guideline and work sheet for the internal decision making process," qualified as work product. *Id.* at 1247. Rule 16(a)(2) recognizes the same limited privilege. *See* Fed. R. Crim. P. 16(a)(2); *Fernandez*, 231 F.3d at 1247.

The material Mr. Balwani seeks is far afield from the kind of "legal theories" and "mental impressions" that are protected as work product. *Compare Morris*, 447 F.3d at 742 (report concluding that witness perjured herself is a "statement of the prosecutor's opinion" and thus work product) *and Fernandez*, 231 F.3d at 1247 (death penalty evaluation form "designed to help the Attorney General decide whether the death penalty is appropriate in any case" constitutes work product), *with* Dkt. 1425-3 (*Brady* letter) at ¶¶ 39–43, 46–51 (describing communications among paralegals, litigation support staff, and attorneys about technical efforts to access the LIS

---

[4] The government's Rule 403 argument does not affect its disclosure obligations. *See* Dkt. 1426 at 9–10 (citing *United States v. Prantil*, 764 F.2d 548 (9th Cir. 1985)). But in any event, as the Court remarked during trial on May 10, 2022, evidence the government seeks to admit against a defendant is by definition prejudicial. The same goes for evidence the defense may wish to present in its case against the government.

1  copy provided by Theranos and options for accessing a working copy). That some of these
2  communications are "solely internal emails within the United States Attorney's Office" does not
3  render them work product. Dkt. 1426 at 6. It is their content that matters. And while a prosecutor
4  is not required "to deliver his entire file to defense counsel," *United States v. Agurs*, 427 U.S. 97,
5  111 (1976) (quoted in Dkt. 1426 at 9), Mr. Balwani at this time is requesting a narrow subset of
6  materials within the *Brady* letter—much less than Ms. Holmes' earlier request for "all documents
7  related to [the government's] decision not to capture the LIS data." Dkt. 1426 at 2.

8  Even if the requested materials contained work product, the government has waived any
9  privilege by disclosing the substance of its internal communications to the defense. *See United*
10 *States v. Sanmina Corp.*, 968 F.3d 1107, 1121–22 (9th Cir. 2020) (disclosure of work product
11 waives protection where "such disclosure, under the circumstances, is inconsistent with the
12 maintenance of secrecy from the disclosing party's adversary," regardless of "whether he
13 intended that result or not"); *see, e.g.*, *Rubalcava v. San Jose*, No. 20-cv-04191-BLF, 2022 WL
14 484988 (N.D. Cal. Feb. 16, 2022) (witness statements described in a declaration by counsel
15 waived work-product protection over those documents). Indeed, at least in paragraphs 43, 50, and
16 51 of the *Brady* letter, the government quoted verbatim from the purportedly protected
17 communications, and the remaining paragraphs reproduce portions of those communications
18 either verbatim or in close paraphrase. Dkt. 1425-3 at ¶¶ 43, 50, 51. The government cannot
19 sanitize exculpatory information to circumvent its discovery obligations, and then hide behind the
20 work-product doctrine to avoid producing the actual evidence. The government has not satisfied
21 its burden of proving that the requested documents are protected work product.

22     **C.   The Court's Prior Rulings Do Not Preclude the Relief Mr. Balwani Seeks**
23 The Court's denial of Mr. Balwani's motion to suppress does not decide the present
24 motion. Nor does the Court's prior ruling that "the exculpatory value of the LIS database was
25 speculative," Dkt. 1326 at 31, foreclose producing the requested material under *Brady* and Rule
26 16. *See* Dkt. 1425 at 4 ("Even assuming that the exculpatory value of the LIS data is uncertain,
27 evidence about the government's failure to obtain that data is itself exculpatory."); Fed. R. Crim.
28 P. 16(a)(1)(E)(i) (mandating disclosure of any "item material to preparing the defense");

*Hernandez-Meza*, 720 F.3d at 768 ("Information is material even if it simply causes a defendant to 'completely abandon' a planned defense …."). Likewise, the Court's earlier reasoning that the government's "negligence [in investigating the LIS] is insufficient" to warrant suppression, Dkt. 1326 at 37, does not preclude ruling now that evidence of such negligence is material and exculpatory. *See Olsen*, 704 F.3d at 1181 (evidence of "sloppiness and haste" may be exculpatory); *Howell*, 231 F.3d at 625 (information that might support a challenge to "the thoroughness … of the investigation" is exculpatory).

Moreover, because of changes in the procedural posture, the Court should not decide this motion based on its factual findings from the suppression stage. Although the Court at that time did not credit Mr. Sonnier's expert testimony that the government could have accessed the LIS by seizing the physical servers and drives, Dkt. 1326 at 34 (finding part of Mr. Sonnier's declaration "unconvincing"), the jury is not bound by that finding. *See* Dkt. 1425 at 5 (citing multiple cases establishing that court's pretrial factual findings do not bind the trier of fact). The government does not even attempt to respond to these authorities. Instead, it argues the facts. *See* Dkt. 1426 at 4 (comparing Mr. Sonnier's opinion to those of "Theranos' own employees at the time"). But the resolution of any factual tension is the job of the jury. *See United States v. Barham*, 466 F.2d 1138, 1140 (9th Cir. 1972). The government is free to counter Mr. Balwani's evidence with its own; for instance, the government can call witnesses who it believes have greater familiarity with the LIS. But evaluating the government's investigation—including the credibility of Mr. Sonnier's opinion that the government could have obtained the data at the heart of this case if it had followed the advice of its support staff—is for the jury. Such factual disputes should not thwart the mandatory disclosure of evidence that is relevant to a possible defense. *See United States v. Budziak*, 697 F.3d 1105, 1113 (9th Cir. 2012) (where "the government argued that [the defendant] would not uncover any helpful information through discovery of the software, [but] the declarations of [the defendant's] computer forensics expert stated otherwise, … the district court should not merely defer to government assertions that discovery would be fruitless"). In sum, this Court's previous rulings do not preclude ordering the limited disclosures Mr. Balwani

now seeks.

## III.   CONCLUSION

For the reasons above, Mr. Balwani asks that the Court grant his motion.

DATED: May 10, 2022                     Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By:   */s/ Jeffrey B. Coopersmith*
        Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH "SUNNY" BALWANI