JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **RAMESH "SUNNY" BALWANI'S MOTION TO LIMIT TESTIMONY OF PATIENT B.G.** |
| v. | |
| RAMESH "SUNNY" BALWANI, | **Date:  May 13, 2022** |
| Defendant. | **Time:  1:30 p.m.** |
| | **CTRM.: 4, 5th Floor** |
| | **Hon. Edward J. Davila** |

1

## MOTION TO LIMIT TESTIMONY OF PATIENT B.G.

2        PLEASE TAKE NOTICE that on May 13, 2022, at 1:30p.m., or on such other date and

3  time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South

4  First Street, San Jose, CA  95113, before the Honorable Edward J. Davila, Defendant Ramesh

5  "Sunny" Balwani will and hereby does respectfully move the Court pursuant to Federal Rules of

6  Evidence 401, 403, and 802 to limit the testimony of patient witness B.G. The Motion is based on

7  the below Memorandum of Points and Authorities, the record in this case, and any other matters

8  that the Court deems appropriate.

9        DATED: May 12, 2022                         Respectfully submitted,

10                                                    ORRICK HERRINGTON & SUTCLIFFE LLP

11
                                                By:   */s/ Jeffrey B. Coopersmith*
12                                                    Jeffrey B. Coopersmith

13                                                    Attorney for Defendant
                                                      RAMESH "SUNNY" BALWANI
14

15

16

17

18

19

20

21

22

23

24

25

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.    INTRODUCTION**

3      The Theranos patient known as "B.G." testified at the Holmes trial about her receipt of

4   Theranos blood tests indicating that she may have been experiencing a miscarriage, even though

5   she was not. Her testimony, however, included impermissible hearsay and stretched into highly

6   emotional topics that are irrelevant to this wire fraud case and more prejudicial than probative.

7   Mr. Balwani moves to preclude the government from eliciting this same testimony on several

8   grounds.

9      First, B.G.'s testimony included hearsay statements made by her doctor. As the

10   government argued—and this Court held—at the Holmes trial, a patient's recital of her doctor's

11   out-of-court statements is inadmissible hearsay. *See* Fed. R. Evid. 802, 803(4); 11/18/2021

12   Holmes Trial Tr. at 6815 (citing *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 (9th Cir. 1985) (per

13   curiam)) ("[S]he can say what she told the physician, but she can't tell you what the physician

14   told her.")

15      Second, B.G.'s testimony—recounting both her personal experiences and some of her

16   doctor's out-of-court statements—is also inadmissible under Rules 401 and 403. Mr. Balwani

17   respectfully seeks limited reconsideration of the Court's in limine with respect to this specific,

18   especially inadmissible testimony. In particular, B.G. testified at the Holmes trial about three

19   miscarriages she had experienced before becoming a Theranos patient, about Dr. Zachman's

20   explanation of possible treatment options following a confirmed miscarriage, and about

21   emotionally charged details of her doctor's visit. These details lack any relevance to the wire

22   fraud charges against Mr. Balwani, they are prejudicial and inflammatory, and they contravene

23   the Court's earlier reasoning about the limits of permissible patient testimony. *See* Fed. R.

24   Evid. 401, 403; Dkt. 1326 at 17 (Balwani MIL Order).

25

Anticipating similar testimony at the present trial, Mr. Balwani moves to limit B.G.'s testimony to relevant, non-hearsay purposes.

## II.    FACTUAL BACKGROUND

During the Holmes trial, B.G. first testified about her professional experience as a medical assistant, which is how she became familiar with Theranos and its offerings. 9/21/2021 Holmes Trial Tr. at 1436–38. The testimony then turned to B.G.'s personal experience. She explained that in the years leading up to her Theranos tests, she had suffered miscarriages "three times in a row." *Id.* at 1439. B.G. recalled that during those experiences she had received blood-test results with "falling HCG," or human chorionic gonadotropin, levels. *Id.* at 1445.

B.G. then described her experience receiving two fingerstick blood tests from Theranos in 2014. *Id.* at 1440–44. She visited her healthcare provider, Dr. Audra Zachman, to review the test results. *Id.* at 1444–46. B.G. testified that her daughter accompanied her to Dr. Zachman's office, where the staff presented her with "a bag of stuff [for] when you're a new mom, all of the goodies." *Id.* at 1445.

By the end of the visit, however, Dr. Zachman informed B.G. that her hCG levels were "falling, unfortunately," which indicated she may have been experiencing a miscarriage. *Id.* at 1445. Dr. Zachman then told B.G. about "potential treatment options," including "[t]he ways to terminate a pregnancy, the options, you can take the medication and D&C [dilation and curettage] or just let your body go through it naturally." *Id.* They also "discuss[ed] getting retested." *Id.*

B.G.'s pregnancy was ultimately viable, and she gave birth to a baby girl. *Id.* at 1446.

Ms. Holmes did not object at trial to any of B.G.'s testimony. *See id.* at 1447.

III.    **ARGUMENT**

A.    **The Court Should Preclude the Government from Eliciting Hearsay Statements Made by Dr. Zachman and Offered Through B.G.**

B.G.'s testimony about what Dr. Zachman told her was irrelevant, prejudicial, and inadmissible hearsay. Indeed, the government's questioning was formulated specifically to elicit hearsay: "When you went in to see Dr. Zachman after this second test, *what did she say to you*?" *Id.* at 1444 (emphasis added). The statements that B.G.'s hCG levels were "falling, unfortunately," and describing the various miscarriage treatment options, *id.* at 1445, were out-of-court statements offered for their truth, *see* Fed. R. Evid. 801. No hearsay exception applies.

Rule 803(4) does not apply. The Ninth Circuit has long and unambiguously held that "Rule 803(4) applies only to statements made *by the patient* to the doctor, *not the reverse*." *Bulthuis*, 789 F.2d at 1316 (emphases added); *see also* Fed. R. Evid. 803 advisory committee notes (limiting allowable statements of present medical condition to "statements … *if made to a physician*" (emphasis added)); *Caruso v. Solorio*, No. 1:15-cv-780, 2020 WL 1450559, at *6 n.8 (E.D. Cal. Mar. 25, 2020) ("However, … the statements that a doctor makes to a patient are not excepted.").

The government successfully advocated for this uncontroversial interpretation of Rule 803(4) in the Holmes trial, arguing that a doctor's statement to another patient (E.T.) "would be a hearsay out-of-court opinion," 11/17/2021 Holmes Trial Tr. at 6768, that presented "hearsay concerns," *id.* at 6767, admission of which "would not be proper," *id.* at 6768. *Accord id.* at 6772 ("[T]hat is inadmissible hearsay."); *id.* at 6772–73 ("I still don't see a basis for getting in out-of-court statements which sound[] like they would be coming in for their truth."); *id.* at 6777 ("That's hearsay. That's an out-of-court statement coming in for its truth."). Appling *Bulthuis*, the Court then correctly ruled in the Holmes trial that "under the exception [803(4)] she can say what

she told the physician, but she can't tell you what the physician told her." 11/18/2021 Holmes

Trial Tr. at 6815 (citing *Bulthuis*, 789 F.2d 1315).

Even if Rule 803(4) could apply to Dr. Zachman's statements to her patient, the out-of-

court statements B.G. recited in the Holmes trial fail to satisfy even the plain text of that rule,

which requires that the statement be "made for—and reasonably pertinent to—medical diagnosis

or treatment," Fed. R. Evid. 803(4)(A), or that it "describes medical history; past or present

symptoms or sensations; their inception; or their general cause," Fed. R. Evid. 803(4)(B).

Dr. Zachman's statements concerning B.G.'s forward-looking treatment options are not history,

symptoms, or causes, nor are they made *for* purposes of diagnosis or treatment. *See, e.g.*, *United

States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018) (Rule 803(4)(A) applies to

statements made by an "individual seeking medical care" because of the "declarant's selfish

interest in obtaining appropriate medical care"); *United States v. Yagi*, No. CR-12-0483, 2013

WL 10570994, at *6 (N.D. Cal. Oct. 17, 2013).

In sum, the Court's reasoning to exclude hearsay offered by patient E.T. in the Holmes

trial—and Ninth Circuit precedent applying Rule 803(4)—should preclude the government from

asking B.G. questions that elicit Dr. Zachman's out-of-court explanation of B.G.'s test results and

treatment options.

**B.   The Court Should Reconsider its Pretrial Ruling and Exclude Irrelevant and Prejudicial Testimony About B.G.'s Prior Miscarriages, Treatment Options, and Doctor's Office Visit**

Before trial, Mr. Balwani adopted Ms. Holmes' motion in limine, which this Court

granted, to exclude patient testimony concerning "emotional, graphic, or otherwise inflammatory

evidence relating to the impact or potential impact on customers of inaccurate test results."

Dkt. 1326 at 17 (Balwani MIL Order) (citing Dkt. 798 at 47–54 (Holmes MIL Order)); *accord*

Dkt. 798 at 50 ("Patients, physicians, and other witnesses who may testify about receiving test

results will not be permitted to testify about any physical, financial, or emotional harm they may have experienced beyond simply paying for the test."); *id.* at 52 (granting Ms. "Holmes's motion to extent it seeks to exclude emotional, graphic, or otherwise inflammatory evidence relating to the impact or potential impact on customers of inaccurate test results").

Mr. Balwani also asked the Court to exclude certain testimony offered during the Holmes trial that he viewed as inconsistent with the Court's in limine ruling, including testimony about B.G.'s history of miscarriages and "ways to terminate a pregnancy" following a miscarriage. Dkt. 1156 at 53 (Balwani MIL); 2/4/22 Trial Tr. at 181–82. Although the Court adopted its in limine ruling from the Holmes trial, it did not exclude that particular testimony. Dkt. 1326 at 18.

Mr. Balwani respectfully requests that the Court reconsider its pretrial ruling, as applied to this particular testimony about B.G.'s prior miscarriages and her discussion with Dr. Zachman about potential treatment options for a miscarriage that never came to be. None of this testimony is relevant to any element of the wire fraud charges or the accuracy of the Theranos testing, and its minimal (if any) probative value is far outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 401, 403.

***B.G.'s Prior Miscarriages.*** Nothing about B.G.'s prior miscarriages is relevant to the wire fraud charges. There was no testimony that those experiences influenced B.G.'s decision to be tested at Theranos or the results she received from Theranos. The testimony is thus irrelevant and inadmissible under Rule 401. Insofar as B.G.'s personal medical history provides context for her doctor's recommendation to test her hCG levels early and often, that context can be provided without reference to miscarriages. Not only does such testimony have little probative value, it carries a high risk of provoking an emotional response in the jury. B.G.'s experience with Theranos was unfortunate—especially in light of her tragic history of losing several pregnancies—but that is precisely why testimony about her past miscarriages has no place in this

trial. *See, e.g.*, *United States v. Williams*, No. ACM 38454, 2015 WL 4039267, at *5–6 (C.A.A.F. June 19, 2015) (reversing admission of "evidence about [a] pregnancy and miscarriage" that was "factually untethered" from the charges given the "substantial danger of unfair prejudice"). Whether B.G. had previously experienced any miscarriages, let alone three, has no relevance to whether Mr. Balwani conspired to defraud Theranos patients. The risk of unfair prejudice far outweighs any probative value of this testimony, so it should be excluded. Fed. R. Evid. 401, 403.

*Treatment Options.* During the Holmes trial, B.G. also testified about potential treatment options that Dr. Zachman explained to her following her receipt of Theranos test results. In addition to the hearsay concerns discussed above, this testimony should be excluded as irrelevant and prejudicial.

Dr. Zachman described B.G.'s miscarriage treatment options *after* she received the two Theranos tests and corresponding results. The nature of those potential treatments is not probative of the charged conduct—wire fraud and conspiracy to commit wire fraud—because any alleged fraud against B.G. was at that point in the rear-view mirror. *See* Fed. R. Evid. 401. On this point, again, the government analogously urged the Court in the Holmes trial to exclude physician statements regarding E.T. *See* 11/17/2021 Holmes Trial Tr. at 6767 ("I also have relevance concerns because I'm not sure of the relevance of what this patient's physician told her about the results."); *id.* at 6777–78 ("[In response to the argument that] the jury needs to know how all of the information available to the patient and how the patient felt and what the patient's understanding was, and I don't think that's relevant either in a case where the Court has ruled that patient impact and emotional distress … are not at issue …. So I'm just not seeing the connection as to what matter at issue this makes more or less likely under 401.").

This absence of probative value must be weighed against the highly prejudicial nature of this testimony, which referred to sensitive medical procedures—including a surgical procedure,

1    dilation and curettage (or "D&C," 9/21/2021 Holmes Trial Tr. at 1445), which is associated with

2    early abortion, *see Planned Parenthood Fed. of Am., Inc. v. Gonzales*, 435 F.3d 1163, 1166–67

3    (9th Cir. 2006), *rev'd*, *Gonzales v. Carhart*, 550 U.S. 124 (2007)—and an emotionally

4    challenging medical decision that B.G. fortunately never had to make. This testimony is

5    particularly prejudicial when offered (as hearsay) through the patient herself—especially if the

6    jury knows the patient has experienced such difficult procedures in the past—rather than through

7    her healthcare provider. Because Dr. Zachman's statements about treatment options are more

8    prejudicial than probative, they should be excluded. Fed. R. Evid. 403.

9         ***Details of B.G.'s Visit to the Doctor's Office.*** Finally, the Court should exclude B.G.'s

10   testimony about irrelevant details of her visit to Dr. Zachman's office. During the Holmes trial,

11   B.G. testified that her daughter accompanied her to the visit, where B.G. was welcomed with a

12   bag of pregnancy-related "goodies." 9/21/2021 Holmes Trial Tr. at 1444–45. Neither of these

13   details bears any relevance to the charges or whether the hCG test was accurate. Instead, they

14   relate solely to the "impact or potential impact on customers" that this Court has ruled

15   inadmissible. Dkt. 1326 at 17 (Balwani MIL Order). This testimony is particularly inflammatory

16   and prejudicial in light of the fact that it was *Dr. Zachman's office*, not Theranos, that decided to

17   celebrate the occasion of B.G.'s pregnancy before the pending test results had even come in. *See*

18   9/21/2021 Holmes Trial Tr. at 1445.

19                                              * * *

20        Mr. Balwani respectfully requests that the Court reconsider these portions of its pretrial

21   ruling and preclude the government from eliciting testimony about B.G.'s prior miscarriages,

22   potential treatment options, or irrelevant details about B.G.'s visit to Dr. Zachman's office. None

23   of this testimony is relevant to the charges or whether the hCG test in question was accurate, and

24   its minimal (if any) probative value is dwarfed by the severe risk of provoking an emotional

25

Motion To Limit Testimony Of Patient B.G.
Case No. CR-18-00258-EJD

1   response in the jury and inflaming prejudices against Mr. Balwani.

2   **IV.     CONCLUSION**

3          For all the above reasons, Mr. Balwani asks the Court to grant this motion.

4
    DATED: May 12, 2022                        Respectfully submitted,
5
                                               ORRICK HERRINGTON & SUTCLIFFE LLP
6

7                                              By:   */s/ Jeffrey B. Coopersmith*
                                                     Jeffrey B. Coopersmith
8
                                                     Attorney for Defendant
9                                                    RAMESH "SUNNY" BALWANI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25