STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' MOTION TO EXCLUDE DEFENDANT'S LIS-RELATED TESTIMONY AND EVIDENCE BY RICHARD L. SONNIER, III |
| v. | |
| RAMESH "SUNNY" BALWANI, | Date: May 20, 2022<br>Time: 8:30 a.m.<br>Court: Hon. Edward J. Davila |
| Defendant. | |

**TABLE OF CONTENTS**

NOTICE ........................................................................................................................................1

INTRODUCTION .........................................................................................................................1

BACKGROUND ...........................................................................................................................2

I.     The Data Contained Within Theranos' Laboratory Information System ("LIS") ..........2

II.    The Government's Diligent Efforts to Obtain the LIS ....................................................4

III.   Theranos' Access to and Destruction of the LIS in Late August 2018 ..........................5

IV.   Procedural History ..........................................................................................................6

ARGUMENT .................................................................................................................................8

I.     The LIS Evidence Defendant Will Likely Seek to Introduce is Irrelevant ....................8

II.    Any Minimal Value of the LIS Evidence Is Substantially Outweighed by the Prejudicial Value and Should Be Excluded Under Federal Rule of Evidence 403 ......13

III.   Testimony of Defendant's LIS-Related Expert Is Improper Opinion Testimony .........15

CONCLUSION ............................................................................................................................16

# TABLE OF AUTHORITIES

CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) .................................................................................................. 15

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ................................................................................................ 15

*Kyles v. Whitley*,
  514 U.S. 419 (1995)................................................................................................................ 12

*United States v. Armstrong*,
  517 U.S. 456 (1996)................................................................................................................ 11

*United States v. Crosby*,
  75 F.3d 1343 (9th Cir. 1996) .................................................................................................. 12

*United States v. Howell*,
  231 F.3d 615 (9th Cir. 2000) .................................................................................................. 12

*United States v. Kyashuk*,
  29 F. 4th 1077 (9th Cir. 2022) ........................................................................................... 8, 11

*United States v. Perez*,
  662 F. App'x 495 (9th Cir. 2016) ............................................................................................. 8

*United States v. Scheffer*,
  523 U.S. 308 (1998).................................................................................................................. 8

*United States v. Sellers*,
  906 F.3d 848 (9th Cir. 2018) .................................................................................................. 12

RULES

Fed. R. Evid. 104(a)................................................................................................................... 1, 8
Fed. R. Evid. 401(a)....................................................................................................................... 8
Fed. R. Evid. 403 ..................................................................................................................... 1, 13
Fed. R. Evid. 702(a)..................................................................................................................... 15
Federal Rule of Criminal Procedure 16(b).................................................................................... 7
Federal Rules of Evidence 104 ........................................................................................... 1, 3, 8, 9
Federal Rule of Evidence 402 ............................................................................................... 1, 8, 9

# NOTICE

PLEASE TAKE NOTICE that on May 20, 2022, at 8:30 a.m., or on such other date and time as the Court may order, in Courtroom 4 before the Honorable Edward J. Davila, the United States will and hereby does move the Court to exclude testimony and evidence of expert witness Richard L. Sonnier, III disclosed by Defendant Ramesh "Sunny" Balwani who is expected to testify regarding the Laboratory Information System ("LIS"). The Motion is based on the below points and authorities, the record in this case, oral argument, and any other matters that the Court deems appropriate.

# INTRODUCTION

The government hereby moves to exclude Defendant Ramesh "Sunny" Balwani from introducing during his defense case-in-chief, if he chooses to present one, any testimony or evidence from Defendant's LIS-related expert, Richard L. Sonnier, III, under Federal Rules of Evidence 104, 402, 403, and 702.[1] While Defendant is entitled to "present[ ] the defense of his choosing" and the jury is the ultimate arbiter of facts introduced at trial (ECF No. 1326 at 22 (Balwani MIL Order)), Defendant must first demonstrate threshold relevance and admissibility of those facts—and he cannot do so with respect to the LIS-related evidence he seeks to introduce through Mr. Sonnier. Mr. Sonnier's declaration (ECF No. 1158)—which the Court reviewed and found "unconvincing" with respect to pretrial motion practice—asserts that he could have reconstructed the LIS after it was decommissioned at the end of August 2018 if the government had gotten the original components out of storage sooner. But Mr. Sonnier is not qualified to testify about what actions the government could take and, to the extent he testifies generically that someone could have taken such steps in fall 2018, then Defendant Balwani was in equal or greater position to do so. Thus, the government requests the Court exercise its function as gatekeeper, avoid a mini-trial, and exclude irrelevant testimony and evidence from Mr. Sonnier. Granting the government's request would also moot Defendant's recent motion to compel LIS evidence.

---

[1] The government has requested but has not received any *Jencks* material for any of the 15 witnesses identified on Defendant's potential case-in-chief witness list, including any contracts or compensation-related information for Defendant's three retained experts. The Court stated its expectation that Defendant would timely disclose this information to the government (ECF No. 1326 at 50–51), and the government now requests the Court set a date certain by which Defendant must provide this material.

U.S. MOT. TO EXCLUDE SONNIER,
CASE NO. 18-258 EJD                                1

*See* ECF No. 1425.

## BACKGROUND

The Court has heard the facts surrounding the nature and destruction of Theranos' Laboratory Information System ("LIS") on numerous occasions from the government and both Defendants, and the government incorporates by reference its prior filings and arguments.[2] The government recently detailed the Court's prior rulings on this topic in ECF No. 1426 at 3–5 (citing ECF Nos. 887 and 1326) and will not repeat that discussion here. Rather, the government highlights facts as developed during the present trial and notes their consistency with the Court's prior rulings. *See also* ECF No. 887 at 1–7 (detailing facts surrounding the government's attempt to obtain the LIS and Theranos' subsequent destruction of it).

### I. The Data Contained Within Theranos' Laboratory Information System ("LIS")

The LIS database does not contain comprehensive information of all Theranos patients stating whether those patients received accurate or inaccurate results. First and foremost, information within the LIS database, alone, could not demonstrate whether any given Theranos test result was accurate or inaccurate. Erika Cheung, who worked as a clinical lab associate in Theranos' lab from October 2013 until April 2014 and accessed the LIS, testified it would not "have been possible for the LIS to indicate for each patient result whether it was accurate or inaccurate[.]" 03/30/2022 Trial Transcript ("3/30 Tr.") at 1471:21–1473:21, 1565:6–1566:24, 1575:5–1576:20. This testimony was corroborated by Dr. Adam Rosendorff, Theranos' laboratory director from April 2013 until November 2014, who testified that he accessed and used the LIS to view data and it was not "possible to look at the individual results [in LIS] and identify them individually as accurate or inaccurate[.]" 04/26/2022 Trial Transcript ("4/26 Tr.") at 3732:7–3734:3. He also testified that he would learn—after patient results had been sent out—that patient results were inaccurate based on inconsistencies with patient presentation or

---

[2] The government incorporates by reference its prior briefing, including all supporting declarations and exhibits, and oral argument on this subject. *See*, *e.g.*, ECF No. 682, 846, 1181, 1426; *United States v. Holmes*, 05/04/2021 Hearing Transcript ("5/4/21 Tr.") at 45:1–68:10, 79:9–85:21; *United States v. Holmes*, 07/07/2021 Hearing Transcript ("7/7 Tr."); *United States v. Holmes*, 11/10/2021 Trial Transcript at 5877:10–5889:7; *United States v. Holmes*, 11/19/2021 Trial Transcript ("11/19 Tr.") at 7100:16–7104:16; *United States v. Balwani*, 02/08/2022 Hearing Transcript ("2/8 Tr.").

contemporaneous test results from conventional non-Theranos labs, and he confirmed those details would not be contained within the LIS. *Id.* The testimony of Dr. Rosendorff and Ms. Cheung reinforces the Court's prior finding that "there is no indication [LIS] contained data reflecting the accuracy of Theranos test results" and "[t]he LIS database information alone would not provide a conclusive determination of whether the Theranos blood tests were accurate[.]" ECF No. 887 at 9–10.

Second, the LIS database does not necessarily contain information for all patients who got their blood tested through Theranos while operational within Walgreens stores from September 2013 to June 2016. *See* 04/19/2022 Trial Transcript at 2922:6–11, 2970:19–2971:10 (Nimesh Jhaveri's testimony regarding dates of Theranos testing services offered at Walgreens stores). For example, Erika Cheung testified that the LIS was implemented "after [she] had been working there for a while" and "the majority of the information that was inputted there [in LIS] was just the patient results, but [there were also] numerous spreadsheets that would essentially have the quality control information, sometimes even the patient results, so whether it got inserted into the LIS system [Ms. Cheung] can't be certain." 3/30 Tr. at 1471:21–1473:21, 1565:6–1566:24. She also testified that "ideally" the technician who ran particular patient samples would be noted in LIS, but "it was hard to say what was put in there and what wasn't" because "things were so manually done[.]" *Id.* Sarah Bennett, a surveyor with CMS, testified that in fall 2015 it was difficult to get documents the surveyors requested from Theranos. 05/03/2022 Trial Transcript ("5/3/22 Tr.") at 4637:12–23, 4655:15–25.

As the government has previously described (ECF No. 846 at 7–8), the LIS would have provided some valuable information to the government, such as the ability to identify additional patient-victims and quality control ("QC") data of Theranos' analyzers, but it would not have allowed the parties to sort accurate from inaccurate results or determine an overall failure rate for Theranos' blood tests. The government gained that information elsewhere, including, *inter alia*, from the CMS report, from individual patients, from Theranos' decision to void all tests performed on its Edison device, and from spreadsheets generated by Theranos from the LIS containing QC data. *See* ECF No. 846 at 7–8; ECF No. 887 at 10 n.4 (detailing additional evidence demonstrating the inaccuracy and unreliability of

Theranos blood tests). Thus, while obtaining the LIS would have been helpful to the government—which is why it subpoenaed the LIS—it was not the critical piece of evidence Defendant asserts it to be.

**II.     The Government's Diligent Efforts to Obtain the LIS**

As early as October 2015—while Defendant Balwani was still employed at Theranos—the Securities and Exchange Commission's Division of Enforcement ("SEC") sent Theranos a document preservation letter instructing the company to preserve certain categories of relevant records, including "documents" defined to include "database" that related to "Theranos's lab testing . . . and results" and subsequently sent document requests that implicated the data in the LIS. *See* ECF Nos. 846-4, 846-5, 846-6. Those categories unmistakably encompassed Theranos' LIS database.

Beginning in February 2018, the Department of Justice ("DOJ") served multiple grand jury subpoenas on Theranos requiring the company to produce evidence such as "[t]he entirety of all blood test lab reports" provided to Theranos patients and, in April 2018, explicitly requesting "[t]he entirety of all blood test lab reports maintained in the L.I.S. database." ECF Nos. 846-7, 846-8. On June 4, 2018, the government served an additional grand jury subpoena on Theranos, requesting the entirety of all reports in the LIS along with a softcopy or proxy of the LIS database, along with any proprietary software required to access and search the database. *See* ECF No. 681-27; *see also* ECF No. 846-9 (July 2018 email from government to Theranos' counsel requesting LIS database and software by August 10, 2018). The attachments to all three grand jury subpoenas advised Theranos that any person who destroys documents—"including electronic documents"—demanded by the subpoena may be subject to criminal prosecution. ECF Nos. 681-27, 846-7, 846-8.

On August 27, 2018, counsel for Theranos sent the government a transmittal letter representing that Theranos was producing an encrypted hard drive containing a copy of Theranos' LIS database in native format. *See* ECF No. 681-35. Theranos' counsel provided a password for the enclosed hard drive itself but did not disclose to the government that the database could not be accessed without a separate password for the "key file" needed to restore the database. *See id.* The government's efforts to access that copy of the LIS database or obtain a functioning copy have failed, meaning the government has never had access to a working version of the LIS.

### III. Theranos' Access to and Destruction of the LIS in Late August 2018

Although Theranos discontinued patient testing in summer 2016, employees at Theranos had access to the LIS throughout the first half of 2018 and were able to run queries throughout Theranos' testing data and generate reports from that data. On August 28, 2018, three days before Theranos was set to vacate the facility where it maintained the LIS database hardware, Theranos executives and attorneys convened a call to discuss the upcoming shutdown of the LIS system. *See* ECF No. 681-37. Theranos—but not the government—was aware that, once the LIS was put into storage, it might become "very difficult to resuscitate." *Id.* This conference call included two Theranos employees, Michael Chung and Eric Caddenhead, and Vinaswathan "Shekar" Chandrasekaran, the principal of an outside technology firm hired by Defendant Balwani to create and maintain the LIS database. *See id.*; ECF No. 1423 at 2. Defendant's counsel has represented that Mr. Chandrasekaran was on the August 28, 2018, call because he was attempting to secure a copy of LIS for Defendant, but he was ultimately unsuccessful in doing so. *See* 2/8 Tr. at 12:19–14:11, 21:20–26:4.

On August 30, 2018, Theranos personnel began to disassemble the hardware running the LIS database at its Newark facility. *See* ECF No. 681-38. The following day—and only four days after the government had received what it still believed to be an accessible copy of the LIS—the Theranos database had been completely shut down. *Id.* On or about September 14, 2018, Theranos assigned its assets to an assignee (essentially a bankruptcy trustee). The government understands that Theranos successfully migrated other IT records to the assignee.

"In September and October 2018, the Government tried repeatedly and unsuccessfully to access the information from the copy of the LIS database." ECF No. 887 at 6 (citing October 29, 2020 letter, *also available at* ECF No. 1425-3 at 3–9). The Court has also previously summarized Mr. Chung's and Mr. Caddenhead's view that resuscitating the LIS would be "almost impossible." *See* ECF No. 1326 at 32–36. Importantly, the government never obtained a copy of "the encryption key" necessary to access the LIS, and that key was permanently lost when Theranos destroyed the LIS equipment. *See* ECF No. 1326 at 36–37. In sum, without alerting the government in late August 2018, Theranos produced a nonviable copy of the LIS to the government and four days later permanently destroyed the only

working version of the database.  The government has produced to Defendants the same inaccessible version of LIS that the government received from Theranos.  7/7 Tr. at 48:8–11.

### IV. Procedural History

The parties have frequently discussed the LIS database with the Court.  Co-Defendant Elizabeth Holmes argued at length during the hearing on her motions *in limine* about her version of the facts surrounding the destruction of LIS.  *See* 5/4/21 Tr. at 45:1–68:10, 79:9–85:21.  As a result, the Court held that co-Defendant Holmes could argue at her trial that the government "failed to conduct a statistical analysis of Theranos test results" and to pejoratively refer to the patient-victims' testimony as "anecdotal[.]"  ECF No. 798 at 56–59.  However, the Court also held that any argument "that the LIS database is unavailable because of the Government's failure to obtain it" opens the door to the government's "evidence of Theranos' culpability in the destruction of the LIS."  *Id.*  Co-Defendant Holmes subsequently filed a motion to suppress the evidence the government intended to present at her trial regarding the patient-related fraud scheme because of the missing LIS database, and the Court heard further argument on the topic.  ECF Nos. 810, 846; 7/7 Tr.  The Court denied co-Defendant Holmes' motion to suppress because it found, based on the evidence provided by the parties, that "[t]he LIS database information alone would not provide a conclusive determination of whether the Theranos blood tests were accurate, and it could just as likely contain incriminating evidence to the contrary.  Any exculpatory value is therefore speculative in nature."  ECF No. 887 at 10.  The Court also found "no bad faith on the part of the Government[.]"  ECF No. 887 at 15.  Indeed, the Court found that the evidence demonstrated that "[i]t was the deliberate actions of [ ] third parties that resulted in the loss of the LIS database and its content, not the Government's actions."  ECF No. 887 at 16.  The Court focused on the four-day period between when Theranos provided an "unusable" copy of the LIS database to the government and Theranos decommissioning the database without informing the government, and found that "[a] brief delay of four days hardly approaches even negligence, much less bad faith or a due process violation."  ECF No. 887 at 13.  Finally, as pertains to this Motion, the Court held that any evidence of the government's conduct after Theranos destroyed the LIS database in late August 2018 is irrelevant.  ECF No. 887 at 14 ("[T]he Government's conduct after August 31, 2018 is irrelevant.").

The topic of LIS continued to be a frequent discussion during co-Defendant Holmes' trial and, notably, she did not ultimately choose to address LIS in her closing argument but still asserted several related points such as the "anecdotal" nature of the patients the government called to testify and the lack of "statistical" evidence presented by the government, as the Court permitted at the motions *in limine* stage. *See United States v. Holmes*, 12/17/2021 Trial Transcript at 9216:15–9227:22. The jury in the last trial ultimately acquitted co-Defendant Holmes on the patient-related counts. ECF No. 1235.

Defendant Balwani adopted Holmes' motion *in limine* and motion to suppress and accompanying arguments. ECF No. 1156 at 67, 73–74. The Court heard argument and held that its views had not changed. *See* 2/8 Tr.; ECF No. 1326 at 30–37. The Court reiterated its findings that the exculpatory nature of this evidence to be "speculative," that the government did not act in bad faith, and that the evidence post-August 31, 2018 was not relevant. ECF No. 1326 at 30–37. Nevertheless, on March 22, 2022, Defendant discussed the LIS database in his opening statement, describing what he expected the evidence at trial would show. 03/22/2022 Trial Transcript ("3/22 Tr.") at 1105:13–1111:19; *see also id.* at 1113:1–1114:7.

On May 12, 2022, Defendant disclosed to the government witnesses he expects to call in his case-in-chief if he chooses to present one and four witnesses that may be called the week of May 16, 2022—three of which appear to relate to the topic of LIS. On May 16, 2022, Defendant provided an amended witness list and changed his weekly disclosure. Both disclosures listed Richard L. Sonnier, III, as a potential witness to testify this week if Defendant presents a case-in-chief. Because Defendant has not produced any discovery related to the disclosed witnesses as required under Federal Rule of Criminal Procedure 16(b) and 26.2 (reverse *Jencks*) (*see also* ECF No. 1155 at 29–30 requesting this information), the government is drawing its expectation of these witnesses' testimony from documents produced in this case and public sources of information. Defendant disclosed as likely to testify this coming week Richard L. Sonnier, III, his LIS-related expert (*see* ECF No. 1158), and Mike Wei, who worked for FTI Consulting which was hired by Theranos' firm WilmerHale in mid-2016 and had access to Theranos' LIS database before it was dismantled in August 2018.

**ARGUMENT**

Defendant cannot show by a preponderance of the evidence that Mr. Sonnier's testimony related to Theranos' LIS database is relevant and admissible under Federal Rules of Evidence 104, 402, 403, and 702.  The government moved *in limine* to exclude evidence offered by Defendant relating to actions of Theranos and its agents after Defendant left the company in mid-2016, and the parties substantially agreed that such evidence would be irrelevant unless influenced or controlled by Defendant.  ECF Nos. 1155 at 13–14, 1179 at 9, 1195 at 7.  The government's best understanding of expected testimony from several witnesses disclosed by Defendant would fall into this irrelevant time period.  In particular, as subject to this Motion, the government expects Mr. Sonnier to testify about what actions the government could have taken after August 31, 2018—that is, after Theranos dismantled the LIS database—which this Court has already correctly ruled is irrelevant.  Whatever minimal probative value, if any, these events bear in response to the government's case-in-chief, it is substantially outweighed by the prejudice of wasting time and potentially misleading the jury under Federal Rule of Evidence 403.  As discussed with respect to Defendant's pending discovery motion, certain areas may constitute government work product.  *See* ECF No. 1426.

**I.    The LIS Evidence Defendant Will Likely Seek to Introduce is Irrelevant**

While criminal defendants are entitled to "present a complete defense," "[t]he accused does not have an unfettered right to offer testimony that is inadmissible under standard rules of evidence." *United States v. Kyashuk*, 29 F. 4th 1077, 1090–91 (9th Cir. 2022) (affirming district court's decision to exclude evidence that defendant believed was critical to his "sole defense" but the government sought to exclude as irrelevant under Federal Rules of Evidence 402 and 403); *see also United States v. Scheffer*, 523 U.S. 308–09 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). Evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).  "Irrelevant evidence is not admissible." Fed. R. Evid. 402.  "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a); *see United States v. Perez*, 662 F. App'x 495, 497 (9th Cir. 2016) (noting preponderance of the evidence

standard for threshold inquiry).  Thus, Defendant must first demonstrate to the Court by a preponderance of the evidence that the testimony he seeks from Mr. Sonnier regarding LIS is relevant to the charges against him under Federal Rules of Evidence 104, 401, and 402 before he may seek to admit such evidence before the jury.  He cannot do so.

Mr. Sonnier's expected testimony relates to what the government could have done differently during an irrelevant time period and is thus inadmissible.  Defendant has previously asserted two theories of relevance for LIS-related evidence: (1) that it relates to the government's allegation that Theranos was incapable of providing accurate or reliable blood test results and Defendants knew it, and (2) that it is relevant to contradict the thoroughness of the government's investigation.  *See also* 3/22 Tr. at 1105:13–1111:19.  Neither is a basis to admit testimony from Defendant's expert Mr. Sonnier.

With respect to Defendant's first theory, testimony in this case has already shown that the LIS database did not have the capacity to demonstrate whether any individual test result was accurate or inaccurate and the database was missing large swaths of data from the September 2013 through April 2014 time frame.  *See* 3/30 Tr. at 1471:21–1473:21, 1565:6–1566:24; 4/26 Tr. at 3732:7–3734:3.  When regulators from CMS arrived at Theranos in fall 2015 and needed to review data from the lab—which should have been in LIS—Ms. Bennett testified that it would take hours to receive documentation and it was not always what she had requested.  5/3/22 Tr. at 4637:12–23, 4655:15–25.  Ms. Bennett testified that her review of Theranos' QC data for Theranos' proprietary blood analyzer, the Edison, was based on a "random selection" of data and time periods—which is a strong indication that the vast majority of such QC data in LIS would not have fared better.  *See id.* at 4670:8–18.  Based on Ms. Bennett's review of Theranos' documents at the time, the issues she identified "were systemic issues." *Id.* at 4677:17–4678:4.  Defendant cannot meet the threshold burden of demonstrating by a preponderance of the evidence that data in the LIS would have been exculpatory rather than more of the same.  Thus, testimony relating to the LIS, its capabilities, and whether it was collected in functioning form by the government does not make any fact pertaining to the accuracy or reliability of Theranos' tests more or less probable—and is therefore irrelevant.

      Nor is LIS-related evidence and testimony relevant to challenge the thoroughness of the government's investigation given the underlying facts in this case.  First, as described above, both the SEC and the DOJ have served subpoenas covering the LIS or data from the LIS since October 2015, all of which included the obligation on Theranos to preserve such data.  Second, members of the undersigned prosecution team explicitly requested any software necessary to operate the LIS in June 2018 and followed up by email in July 2018 requesting production by August 10, 2018, weeks before the database was ultimately destroyed by Theranos.  *See* ECF Nos. 681-27, 846-9.  Theranos did not comply and waited until August 27, 2018 to produce a purported copy of the LIS—four days before Theranos decided to dismantle the LIS database with Defendant's consultant on the phone call but without telling the government it was going to do so.  *See* ECF Nos. 681-35, 681-37, 681-38.  Third, the government collected voluminous alternative evidence demonstrating that Defendants knew Theranos was incapable of producing accurate and reliable blood test results, as has been shown thus far in this trial as well as in the trial against co-Defendant Holmes.  The government received large spreadsheets generated from LIS through its various discovery requests.  While obtaining the LIS database may have been a useful tool for the government in identifying additional patient-victims and likely providing additional evidence of QC failures, the grand jury returned an indictment against Defendants on June 14, 2018, without the LIS database.  And last fall a jury acquitted co-Defendant Holmes on the patient-related counts despite neither side having access to the LIS database and co-Defendant Holmes not explicitly referencing the LIS in her closing argument.  In sum, the LIS database was a piece of evidence that neither side has present access to—through no fault of the government—that does not directly affect the outcome of the case.

      As the Court has previously held, the government's conduct after August 31, 2018—when Theranos decommissioned the LIS database without telling the government it was doing so—is entirely irrelevant.  *See* ECF No. 887 at 14 ("[T]he Government's conduct after August 31, 2018 is irrelevant."); ECF No. 1326 at 36–37.  The Court should exercise its gate-keeping function under Rule 104(a) given its review of the evidence and exclude testimony from Mr. Sonnier about this irrelevant timeframe.  The Court has found that the underlying evidence "either contradicts" the proposition that the government

could have reconstructed the LIS database "or is of low persuasive value" and Defendant's expert's declaration did "not alter the Court's original analysis." ECF Nos. 887 at 13–14, 16, 1326 at 31. It is appropriate for the Court to exclude irrelevant evidence as the jury's job is to decide the case based on *admitted* evidence at trial, not inadmissible, irrelevant evidence. *See Kyashuk*, 29 F. 4th at 1090–91; *cf.* ECF No. 1425 (citing cases for the proposition that the jury assesses the credibility of witnesses and decides facts admitted at trial). The Court properly observed that Defendant's proposed expert had not "spoken with any Theranos employees/agents with personal knowledge of the LIS to confirm his understanding of how it was set up or functioned." ECF No. 1326 at 34. Rather, Theranos' own employees at the time, with "direct, personal knowledge of the LIS" said "that attempting to reconstruct the system using the original equipment would not have been feasible post-decommission." ECF No. 1326 at 32–34; ECF No. 887 at 5 ("Theranos employees/agents knew that once the system was put into storage, it might be 'very difficult to resuscitate.'").

Moreover, Defendant's attempt to avoid the Court's prior conclusion is to shoehorn the alleged "negligence" of the prosecution team into Defendant's challenge to the thoroughness of the investigation—but that is equally irrelevant and not a topic on which Mr. Sonnier should be permitted to comment.[3] First, the government's internal decision-making about what to do and what options to pursue once it learned that Theranos did not provide it with a functioning copy of the LIS database as requested is protected by the work product privilege. *See* ECF No. 1426 at 6–10. As the government previously argued, this case is analogous to *United States v. Armstrong*, 517 U.S. 456 (1996), where the defendant wanted to focus his defense on the selections, choices, and conduct of the prosecution team rather than rebutting the elements of the charges brought against him. So too here. Defendant tried to merge the analysis of courts reviewing sloppy police work with the prosecution team's conduct here

---

[3] While Defendant seeks to demonstrate "negligence" on the part of the prosecution team to distract from the criminal charges against him, "negligence is insufficient under the law for the relief Balwani seeks." ECF No. 1326 at 37. Even if Defendant were able to demonstrate negligence on the part of the government—which he cannot—that would still not entitle him to a jury instruction on lost or missing evidence because the Ninth Circuit model instruction, itself, requires that the government "intentionally" destroyed or failed to preserve evidence for the trial. *See* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 3.19.

(ECF No. 1431 at 3–4), but the Ninth Circuit has distinguished in this analogous context between attempts by the defense to challenge the *prosecution's* conduct versus *law enforcement's* conduct. *See United States v. Sellers*, 906 F.3d 848, 852–53 (9th Cir. 2018) ("[A]gents occupy a different space and role in our system than prosecutors; they are not charged with the same constitutional functions, and their decisions are more often scrutinized by—and in—courts."). The prosecution's decision to follow up with Theranos' assignee rather than attempting to obtain the physical servers is utterly irrelevant to the conspiracy and wire fraud charges against Defendant.

Second, Defendant has not cited a single case where the court found no bad faith on the part of the government and yet allowed the defense to challenge the *prosecution's* decisions and conduct in pursuing charges against an indicted criminal defendant. The cases cited by Defendant in his discovery motion are far afield from the facts here. *Cf. Kyles v. Whitley*, 514 U.S. 419, 445–49 (1995) (statements of another individual who was anxious to see the defendant get arrested should not have been excluded given he was an essential government witness at trial); *United States v. Howell*, 231 F.3d 615, 623–27 (9th Cir. 2000) (mistakes in police report said money was found on another individual when, in truth, it was found by police on defendant, but defendant's opening statement asserted there would be no testimony that the money was found on him and, instead, he could have argued the police were sloppy in their investigation); *United States v. Crosby*, 75 F.3d 1343, 1347–48 (9th Cir. 1996) (court improperly excluded evidence that another individual "had the opportunity, ability and motive to commit the crime" and it would have complemented defendant's argument that police were sloppy where they did not collect much physical evidence at the scene of the assault).

Third, Defendant had greater knowledge than the government that the LIS database was about to be destroyed in late August 2018 via his consultant, Shekar Chandrasekaran—indeed, his counsel has stated that Defendant even attempted to obtain a copy of the LIS before it was destroyed. *See* 2/8 Tr. at 12:19–14:11, 21:20–26:4. Defendant should not be permitted at trial to create the misleading impression that the government had some greater obligation than he did to collect or reconstruct the LIS when he, himself, was unsuccessful in his own attempts to do so. If Mr. Sonnier is permitted to testify about what someone theoretically could have done in August 2018 to reassemble a functioning copy of LIS, then

the government should be permitted to introduce evidence of Defendant's greater knowledge of the then-pending destruction of the database. And if Defendant wants to fault the government for obtaining a criminal indictment against him without LIS, the government will likely respond in rebuttal that Defendant failed to obtain a functioning copy of the LIS database with even better access than the government had at the time. As the Court previously noted, Mr. Sonnier also does not account for the "encryption key [that] was permanently lost with the dismantling of the" physical LIS equipment in August 2018. *See* ECF No. 1326 at 36–37. No further discovery from the government will alter these underlying facts. *See* ECF No. 1426.

In sum, the Court should exercise its gate-keeping function under Rule 104(a) and deem inadmissible under Rule 402 the irrelevant testimony or evidence from Mr. Sonnier—particularly as it relates to reconstructing the nonfunctioning copy of LIS after August 31, 2018.

**II.  Any Minimal Value of the LIS Evidence Is Substantially Outweighed by the Prejudicial Value and Should Be Excluded Under Federal Rule of Evidence 403**

As described above, the LIS-related testimony and evidence Defendant will likely seek to admit is irrelevant and any minimal probative value is substantially outweighed by the danger of misleading the jury, confusing the issues, wasting time and creating a mini-trial about LIS, unfairly prejudicial, and cumulative of other evidence. Fed. R. Evid. 403. What happened to LIS after Defendant left Theranos in mid-2016, why Theranos did not provide a working copy of the database in response to numerous government subpoenas, why Theranos did not preserve it as instructed, and why Defendant through Mr. Chandrasekaran did not halt its destruction given how useful he now purportedly believes it to be— are not relevant to any element of any of the crimes charged in the present indictment against Defendant. ECF No. 469. Instead, these questions relate to an entirely new nucleus of facts that the parties would need to present to the jury. Defendant has moved to compel discovery relating to internal government communications, indicating he may be considering trying to call a member of the prosecution team to testify about its internal decision-making process (which would be highly improper as previously argued in ECF No. 1426). This is the very definition of a mini-trial and falls squarely within Rule 403. The

Court should exercise its gate-keeping function under Rule 104(a) and exclude under Rule 403 any testimony and evidence from Mr. Sonnier.

Defendant's opening statement discussed the government not collecting LIS before indicting Defendant and failing to reconstruct it despite its own employee's suggestion that theoretically could have permitted it to do so in fall 2018. *See* 3/22 Tr. at 1105:13–1111:19. Mr. Sonnier, an expert on Microsoft SQL databases, indicated in his declaration that he is likely to testify that the LIS theoretically could have been reconstructed after August 31, 2018. *See* ECF No. 1158.

If Defendant seeks to introduce evidence insinuating the government is at fault for LIS missing from this trial—as his opening statement and disclosed witnesses suggest that he does—then he is opening the door to a large swath of potential rebuttal evidence from the government to correct that misleading impression. For example, the government should be permitted to introduce additional evidence to rebut Defendant's assertion that LIS was "critical" evidence by, *inter alia*, calling Dr. Kingshuk Das to testify about his real-time analysis of data likely drawn from LIS and ultimate decision that *every* patient tested on Theranos' proprietary blood analyzer was at risk of harm, admitting the customer complaint spreadsheet detailing negative experiences after receiving faulty test results, admitting evidence of Theranos' decision in spring 2016 to void all tests run on the Edison, and admitting expert rebuttal testimony from Dr. Stephen Master that the LIS was not necessary to his conclusion that Theranos put patients in danger. The government should be permitted to rebut any implication that the government should have collected the LIS database sooner than August 2018 by admitting evidence to show all the other lawsuits filed against Theranos, the multiple government subpoenas dating back to October 2015 while Defendant was still Chief Operating Officer at Theranos, and to discuss what evidence was presented to the grand jury in June 2018 that led them to indict Defendants. The government should be permitted to correct any misleading impression Defendant gives the jury about the ability to reconstruct the LIS database after Theranos obliterated it by calling as rebuttal witnesses, *inter alia*, Michael Chung, Eric Caddenhead, John McChesney, Shekar Chandrasekaran, and attorneys from Theranos' law firm, Wilmer Cutler Pickering Hale and Dorr, LLP ("WilmerHale"). To rebut any impression given to the jury that Defendant was distanced

from the destruction of LIS, the government should be permitted to admit evidence of Defendant's friendship and business relationship with Shekar Chandrasekaran, who was on the conference call when it was decided to dismantle the LIS database on August 28, 2018, any joint defense agreement between Defendant Balwani and co-Defendant Holmes, and Defendant's equal if not greater opportunity (and motive due to ongoing lawsuits) to obtain a functioning copy of LIS long before its destruction.

The government requests the Court exercise its gate-keeping function under Rule 104(a) and exclude testimony and evidence under Rule 403 that would give the jury the misleading impression that the government is somehow at fault for the missing LIS, that the database was some kind of prerequisite to criminal charges against Defendant in this fraud case, and that the government was in a better position to halt its initial destruction or to reconstruct the database than Defendant. The danger of misleading the jury, confusing the issues, wasting time on a mini-trial, and unfair prejudice is quite high and the probative value of the evidence is nonexistent or quite minimal at best. Thus, the Court should exclude testimony from Richard L. Sonnier, III.

### III. Testimony of Defendant's LIS-Related Expert Is Improper Opinion Testimony

To be admissible, expert testimony must be helpful to the trier of fact. Fed. R. Evid. 702(a). "[T]he trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (internal quotations omitted). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Id.* at 1044 (internal quotation omitted). In this regard, the Court once again acts as "a gatekeeper, not a fact finder" in determining whether the expert's "testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013). Here, for the reasons described above, the expected testimony of Richard L. Sonnier, III as described in his declaration (ECF No. 1158) relates solely to the theoretical ability to reconstruct Theranos' LIS database and anything after Theranos destroyed the physical equipment housing the LIS database in or around August 31, 2018 is entirely irrelevant to the charges at issue. It also fails to account for Defendant's equal if not greater ability to pursue such steps at the time. Thus, the Court should also exclude Mr. Sonnier from testifying on this topic under Rule 702.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court exclude Defendant's LIS-related expert, Richard L. Sonnier, III from testifying and exclude any accompanying evidence and testimony regarding the LIS database after August 31, 2018.

DATED: May 17, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

   /s/ Kelly I. Volkar
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys