JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. CR-18-00258-EJD<br><br>**RAMESH "SUNNY" BALWANI'S MOTION TO ADMIT TX 20073A**<br><br>Date:  May 23, 2022<br>Time:  11:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>**Hon. Edward J. Davila** |

**MOTION TO ADMIT TX 20073A**

PLEASE TAKE NOTICE that on May 23, 2022, at 11:30 a.m. or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does respectfully move the Court to admit Trial Exhibit 20073A.  The Motion is based on the below Memorandum of Points and Authorities, the Declaration of Jeffrey B. Coopersmith and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: May 22, 2022                              Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By:  */s/ Jeffrey B. Coopersmith*
         Jeffrey B. Coopersmith

         Attorney for Defendant
         RAMESH "SUNNY" BALWANI

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

During the trial testimony of Dr. Audra Zachman, the Court sustained the government's objections to Trial Exhibit 20073, a 44-page spreadsheet produced by Dr. Zachman's former clinic, Southwest Women's Contemporary Care ("SWCWC"). The Court noted its concern that the spreadsheet was formatted in a way that made the dates associated with some of the data in the spreadsheet unclear. The Court ruled that the defense could obtain another, more "fulsome" version of the spreadsheet that cured the formatting issues. The defense has now obtained the native excel version of the spreadsheet and moves the Court to admit Trial Exhibit 20073A.

**II.     FACTUAL BACKGROUND**

During trial, Dr. Zachman testified about observing a drop in her patient's ("B.G.") hCG numbers after two Theranos test results in October 2014. 5/13/22 Trial Tr. at 5783. Dr. Zachman testified that she concluded from the Theranos results that B.G. either had a "threatened pregnancy or a loss of a pregnancy." *Id.* Dr. Zachman opined at trial that B.G.'s two hCG tests from Theranos were inaccurate, and that she stopped recommending Theranos to patients after B.G.'s tests because she no longer felt she could make "appropriate decisions" based on Theranos lab results. 5/13/22 Trial Tr. at 5785, 5792-93. B.G. ultimately had a "successful viable pregnancy and delivery." 5/13/22 Trial Tr. at 5776.

During Dr. Zachman's testimony, the defense attempted to introduce Trial Exhibit 20073, a 44-page spreadsheet containing lab order information produced by SWCWC. *See* Declaration of Jeffrey B. Coopersmith, Ex. 1; 5/13/22 Trial Tr. at 5805-14. Before Dr. Zachman's testimony, the defense obtained a Business Records Declaration under Rules 803(6) and 902(11), which covered the spreadsheet reflected in Tx 20073. *See* Declaration of Jeffrey B. Coopersmith, Ex. 2. The government stipulated that Tx 20073 was authenticate and not hearsay before Dr. Zachman's testimony, but indicated it might have other objections.

During trial, Dr. Zachman testified that the spreadsheet included columns reflecting lab orders and dates for various blood tests, a list of SWCWC healthcare providers, patient

identification numbers for SWCWC patients, and that Theranos was listed as the "facility name." 5/13/22 Trial Tr. at 5805-14. Dr. Zachman testified that SWCWC regularly preserved the medical data of its patients, 5/13/22 Trial Tr. at 5806, and that the spreadsheet reflected a list of patients from SWCWC that continued using Theranos after B.G.'s test. 5/13/22 Trial Tr. 5808 ("Q: So this is a spreadsheet reflecting your former clinic's patients who visited Theranos; correct? A: That's what it appears); *id.* at 5809-10 ("Q: And this spreadsheet reflects a list of patients from your former clinic that continued using Theranos after Ms. Gould's test; correct? A: I see that….").

The government objected to Tx 20073 under Rules 401 and 403, noting that "it's difficult or impossible to identify the dates for many of these rows…." 5/13/22 Trial Tr. 5812; *id.* The Court sustained the government's objection, noting that the excel spreadsheet had been "separated or split up somehow" and that pages 23 to 44 contained information on the excel that was not timestamped. 5/13/22 Trial Tr. 5812-13. The Court ruled: "If you could get a different exhibit. I appreciate that it's an excel sheet that has been … separated or split up. Before I'll admit it, I think it needs to be put together in a more wholesome and fulsome fashion." 5/13/Trial Tr. 5812-13; *see also id.* at 5811 ("As to pages 23 to 44, the relevance objection is sustained unless there's a time stamp as to these.").

Following Dr. Zachman's testimony, the defense obtained the native excel version of Tx 20073 from SWCWC, which is now labeled as Tx 20073A. *See* Coopersmith Decl., Ex. 3. The native excel spreadsheet reflected in Tx 20073A cures the formatting issues that existed with the PDF spreadsheet that the defense attempted to introduce at trial. Tx 20073A contains 1155 rows reflecting the Theranos blood tests ordered for SWCWC's patients between October 2015 and October 2016, including the SWCWC providers associated with each order. Each datapoint in Tx 20073A is now timestamped by the lab order date reflected in Column C of the spreadsheet.

Prior to this motion, the defense conferred with the government regarding Tx 20073A. The government informed the defense that it does not have any authentication or hearsay objection to Tx 20073A, and that the defense therefore would not need a document custodian to testify about Tx 20073A. The government noted, however, that it may still have Rule 401 and

- 2 -

MOTION TO ADMIT TX 20073A
CASE NO. CR-18-00258-EJD

Rule 403 concerns with the spreadsheet.

### III.   ARGUMENT

The Court should admit Tx 20073A because the formatting issues identified by the Court have been cured, and Tx 20073A provides the jury with important evidence needed to evaluate the sensitive trial testimony from Dr. Zachman and patient B.G.

**Rule 401.** Dr. Zachman testified that she conducted a thorough search through SWCWC's patient records, at the government's request, in order to determine whether there were any other inaccurate Theranos hCG results. 5/13/22 Trial Tr. at 5813-16. Dr. Zachman concluded that she "did not find much that was out of place" and that B.G.'s results were the only "overtly abnormal" Theranos hCG results she could find. *Id.* Tx 20073A shows that Dr. Zachman's search included the review of 277 Theranos hCG results, which is information the jury should be able to weigh as they assess whether Theranos' hCG test was accurate and reliable. As the Court has ruled, "evidence of even one inaccurate result" is relevant, Dkt. 798, and so the data contained in Tx 20073A, taken alongside Dr. Zachman's testimony, is critical defense evidence demonstrating that B.G.'s inaccurate hCG test was an outlier, and the only overtly abnormal result in over 200 other hCG results.

Dr. Zachman also testified that she stopped referring patients to Theranos after B.G.'s results because she could no longer rely on Theranos' labs to make "appropriate" treating decisions.  5/13/22 Trial Tr. 5792-93. Tx 20073A would provide the jury with important context needed to assess Dr. Zachman's credibility and the severity of her stated concerns. The spreadsheet shows that over one thousand SWCWC patients received lab orders from Theranos after B.G.'s test, that Dr. Zachman's colleagues were using Theranos, and that even her own patients received lab results from Theranos. While Dr. Zachman testified that she could not "force" her patients not to use Theranos, 5/13/22 Trial Tr. at 5818, the jury should be permitted to weigh Dr. Zachman's stated concerns against evidence showing the regular and repeated use of Theranos by Dr. Zachman's colleagues and her own patients. The magnitude of SWCWC's use of Theranos after B.G.'s test, coupled with the fact that there is no evidence showing Dr. Zachman continued to express her concerns to her colleagues or refused to make treating decisions for her

own patients based off their Theranos labs, is critical defense evidence the jury should be permitted to weigh during deliberations.

**Rule 403.** Because TX 20073A is a native and complete excel document, and the prior formatting issues have been cured, any potential risk of confusing the jury has been resolved. Tx 20073A now clearly shows the date of each Theranos lab order, and the SWCWC provider associated with each order. Each lab order is now timestamped, and the probative value is substantial as addressed above.

* * *

Mr. Balwani respectfully requests that the Court admit Tx 20073A and overrule the government's remaining objections under Rule 401 and Rule 403.

**IV.   CONCLUSION**

For all the above reasons, Mr. Balwani asks the Court to grant this motion.

DATED: May 22, 2022                         Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP


By:   */s/ Jeffrey B. Coopersmith*
      Jeffrey B. Coopersmith

      Attorney for Defendant
      RAMESH "SUNNY" BALWANI