STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' MOTION TO EXCLUDE TESTIMONY FROM SCOTT WEINGUST |
| v. | Date: May 27, 2022<br>Time: 8:30 a.m.<br>Court: Hon. Edward J. Davila |
| RAMESH "SUNNY" BALWANI, | |
| Defendant. | |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 27, 2022, at 8:30 a.m. or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, the government will and hereby does respectfully move the Court for an order excluding opinion testimony from Scott Weingust. The Motion is based on the below Memorandum of Points and Authorities, the Declaration of Robert S. Leach in Support of the United States' Motion to Exclude Testimony from Scott Weingust ("5/23/2022 Leach Decl.") and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: May 23, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

  /s/ Robert S. Leach
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On May 19, 2022, the defense confirmed their intention to call Scott Weingust to testify. The defense has indicated that "Mr. Weingust may provide expert testimony on patents and the process for obtaining them. He may also explain how IP portfolios are generally valued and the process for calculating their value. Mr. Weingust may testify about the value of Theranos' IP portfolio as of the time Mr. Balwani left Theranos in mid-2016." 5/23/2022 Leach Decl. Ex. B. Such testimony is not relevant. The value of Theranos' intellectual property in May 2016 has no bearing on whether the statements made to investors during the scheme to defraud in and before 2015 were false or misleading, and it has no tendency to prove any other element of the offenses alleged. Even if minimally probative, such evidence will confuse the jury, particularly because Mr. Weingust's opinions appear to be based primarily on events in 2017 and 2018, when Theranos formed a special purpose vehicle to obtain $65 million from Fortress Investment Group ("Fortress"), through a loan agreement secured by Theranos' patents. Months later, Fortress took control of the patents when Theranos defaulted and declared insolvency through an assignment for the benefit of creditors ("ABC"). Injecting this transaction into the trial will confuse the jury. In all events, Mr. Weingust should not be permitted to offer opinions that the defense, to this day, has not disclosed, chiefly his opinion of the specific value of Theranos' intellectual property.

## FACTUAL BACKGROUND

On November 12, 2021, the defense provided the government notice that they intended to offer expert testimony from Scott Weingust and two additional experts. The entirety of the disclosure with respect to Mr. Weingust reads:

> Scott Weingust is a Managing Director at Stout Risius Ross, LLC ("Stout") and the leader of its Intellectual Property ("IP") Valuation practice. Stout is a global investment bank and advisory firm specializing in corporate finance, valuation, financial disputes, and investigations. Mr. Weingust is also an adjunct professor at the DePaul University College of Law where he teaches a class on IP valuation. He has valued patent portfolios and/or trade secrets on more than 200 individual projects. Mr. Weingust was the Chair of the Valuation and Pricing Committee of the Licensing Executives Society (U.S. and Canada)—one of the leading IP professional organizations in the United States. Mr. Weingust has experience advising companies on best practices associated with trade secret protection and management programs including business practices and policies. His trade secret valuation projects require that he assess the extent and quality of clients'

trade secret protection and management efforts as one issue that may affect value. Mr. Weingust's curriculum vitae is attached hereto as Exhibit B.

Mr. Weingust may testify as an industry expert regarding the valuation of Theranos's IP portfolio and its trade secret protection practices. Mr. Weingust may provide testimony educating the jury generally on the topics of IP valuation and trade secret protection. The defense anticipates that Mr. Weingust may testify about the value of Theranos's IP portfolio based on his expert review of IP valuations and other related analyses conducted by other organizations. The defense also expects Mr. Weingust may testify about the actions taken at Theranos to protect trade secrets and other confidential information.

5/23/2022 Leach Decl. Ex. A.

On December 3, 2021, the defense provided a supplemental disclosure with respect to its three experts. Leach Decl. Ex. B. The entirety of the supplemental disclosure with respect to Mr. Weingust reads:

If called, Scott Weingust may testify as an expert in intellectual property ("IP") valuation based on his knowledge, skill, experience, training, and education in that area. See Fed. R. Evid. 702. Mr. Weingust may provide expert testimony on patents and the process for obtaining them. He may also explain how IP portfolios are generally valued and the process for calculating their value. Specific to Theranos Mr. Weingust may testify about the value of Theranos' IP portfolio as of the time Mr. Balwani left Theranos in mid-2016. His testimony would be based on his review of IP valuations and related materials listed in Exhibit B.

Mr. Weingust may also testify generally regarding what constitutes a trade secret and indicators of a trade secret's value. He may testify regarding why companies must actively protect trade secrets and the consequences of failing to do so. Mr. Weingust may testify as to best practices and industry standards regarding how companies can best protect their trade secrets. He may further testify that steps Theranos took to protect its trade secrets and other confidential information (including Theranos policies and practices) were consistent with industry standards and were required in order for its trade secrets to remain protected.

In forming the opinions we currently believe he may testify to, Mr. Weingust reviewed and considered the materials listed in Exhibit B, in addition to relying on the information included in Mr. Balwani's November 12, 2021 disclosure.

5/23/2022 Leach Decl. Ex. B.

On May 18, 2022, the defense provided its "Amended Case-in-Chief Exhibit List." ECF No. 1454-2. Exhibits 27083 to 27145 appear to be those relating to Mr. Weingust's anticipated testimony. Of the 62 exhibits, virtually all are dated in 2017 and later. *Id.* at p.5-7. Forty-one were produced by Fortress, which in December 2017, entered into a 108-page Credit Agreement with Theranos and Theranos IP Company, LLC, a special purpose vehicle formed for the purpose of acquiring all patent rights assigned or owned by Theranos. 5/23/2022 Leach Decl. Ex. C. This loan – referred to as a

"delayed draw senior secured term loan" – permitted Theranos to borrow $65 million on the closing date, and an additional $35 million in two separate tranches upon achieving certain milestones. *Id.* Ex. D. The loan was secured by the patent rights. *Id.* Theranos ultimately defaulted on the loan; Fortress took control of the patent rights; and Theranos declared bankruptcy through the ABC. Ten of the documents relied on by Mr. Weingust consist of deposition testimony by a Fortress employee in 2019 in the parallel Securities and Exchange Commission ("SEC") enforcement action and the attached exhibits, including a letter written by Fortress' lawyer to the SEC and Department of Justice in December 2017. ECF No. 1454-2; 5/23/2022 Leach Decl. Ex. E.

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE TESTIMONY ABOUT THE ALLEGED VALUE OF THERANOS' PATENTS IN MAY 2016 AS IRRELEVANT.

Mr. Weingust's testimony should be excluded under Federal Rule of Evidence 401. The value of Theranos' intellectual property in May 2016 is not relevant. The operative indictment alleges the defendant and Ms. Holmes made false and misleading statements about the capabilities of its analyzer, its revenues in 2015 and prior, whether the analyzer was genuinely used in technology demonstrations, the Walgreens relationship, its business with the Department of Defense, the need for certain regulatory approvals, its use of third-party devices, and alleged endorsements by pharmaceutical companies. ECF No. 469 ¶ 12. The jury will not be asked to determine what was the value of Theranos or its patent portfolio at any time, including May 2016. Instead, the jury will be asked to determine whether the defendant "knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"; whether the statements made as part of the scheme were material; whether the defendant acted with "the intent to deceive and cheat"; and whether interstate wires were used to carry out or attempt to carry out an essential part of the scheme. ECF No. 1206 at p.24. Theranos' intellectual property rights may have been valuable, but if the alleged misrepresentations were made, the investors were still aggrieved in their property interests. While good faith is a defense to securities fraud and mail fraud, an honest belief in the ultimate success of the enterprise is not, in itself, a defense. *United States v. Tarallo*, 380 F.3d 1174, 1191 (9th Cir. 2004), *amended*, 413 F.3d 928 (9th Cir. 2005).

The defense appears to suggest that if the defendant used the money obtained from investors for any corporate purpose, there is no fraud. But that is not what the indictment alleges. The indictment alleges the defendant and Ms. Holmes deceived investors into parting with money and property through false and misleading statements respecting aspects of Theranos' current business. ECF No. 1206 at p.24. There is no allegation in the operative indictment that defendants made misrepresentations about Theranos' patents or intellectual property. There is no evidence that investors gave money to Theranos because they hoped someday the patent portfolio by itself would generate value on their investments. The financial information given to investors showed no revenue from intellectual property licensing or enforcement, nor did such information make any mention of monetizing patents or other intellectual property. And there is no evidence that defendant or Ms. Holmes ever provided an intellectual property valuation (true or false) to investors during the relevant time period.

Because Mr. Weingust's opinions are not relevant to any fact of consequence they should be excluded under Rule 401.

## II. THE COURT SHOULD EXCLUDE OPINION TESTIMONY BASED ON THE 2017 FORTRESS TRANSACTION AND OTHER 2017-2018 EVENTS

Even if opinions about the value of Theranos' intellectual property had marginal relevance, Mr. Weingust's opinions should be excluded under Rule 403 because they will confuse the jury. First, focusing on the value of patents or intellectual property in May 2016 will distract from the question the jury will be asked to determine: whether the defendant "knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." ECF No. 1206 at p.24. Second, Mr. Weingust's opinions inevitably will inject into the trial a series of complex, confusing, and irrelevant events in 2017 and 2018, chiefly the Fortress loan and the ABC.

## III. THE COURT SHOULD EXCLUDE ANY OPINIONS FROM MR. WEINGUST BEYOND THOSE SET FORTH IN THE NOVEMBER 12, 2021, AND DECEMBER 3, 2021 DISCLOSURES

To the extent the Court permits testimony from Mr. Weingust, it should hold him to the limited disclosures provided on November 12 and December 3, 2021. *See* Fed. R. Crim. P. 16(b)(1)(C) (requiring the defense to provide an expert witness summary describing "the witness's opinions" [and]

the "bases and reasons for those opinions"). Specifically, the Court should exclude any testimony by Mr. Weingust ascribing a specific – and to this day undisclosed – "value" to Theranos' intellectual property. He should be prohibited from articulating any "process for calculating [the] value" of Theranos' intellectual property not set forth in the notice. And he should not be permitted to go beyond any "bases and reasons" other than those set forth in the notice. Rule 16 requires a defendant to disclose, at a minimum, the opinion a particular witness will offer and the reasons for it. The defense disclosed no specific value and no specific reason or basis. They should not be permitted to go beyond what they have previously disclosed.

## CONCLUSION

For these reasons, the Court should grant the motion.

DATED: May 23, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

  /s/ Robert S. Leach
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
KELLY I. VOLKAR
Assistant United States Attorneys