UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. 5:18-cr-00258-EJD-2<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE LIS-RELATED TESTIMONY AND EVIDENCE BY RICHARD L. SONNIER III; GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL LIS EVIDENCE**<br><br>Re: Dkt. Nos. 1425, 1440 |

Defendant Ramesh "Sunny" Balwani is currently standing trial in this criminal prosecution. Before the Court are the parties' competing related motions: Balwani's motion to compel certain evidence related to Theranos Inc.'s ("Theranos") Laboratory Information System ("LIS") database, and the Government's motion to exclude LIS-related testimony and evidence by Balwani's expert witness, Richard L. Sonnier III. Mot. to Compel LIS Evid. ("LIS Mot."), Dkt. No. 1425; U.S. Mot. to Exclude Def.'s LIS-Related Testimony and Evid. by Richard L. Sonnier, III ("Sonnier Mot."), Dkt. No. 1440. The Court held a hearing on May 23, 2022. Dkt. No. 1457. Having considered the parties' written submissions and oral arguments, the Court GRANTS IN PART and DENIES IN PART both the motion to compel and the motion to exclude.

I.  **BACKGROUND**

Balwani and his co-defendant, Elizabeth Holmes, are charged with 12 counts of wire fraud and conspiracy to commit wire fraud arising out of their time as the Chief Operating Officer and Chief Executive Officer, respectively, of Theranos, a health care and life sciences company

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
1

offering blood testing technology. TSI, Dkt. No. 469.  Theranos used a bespoke database called the LIS that housed, among other things, all patient test results and all quality control data at Theranos.  Dkt. No. 798 at 56; *see also* Trial Tr. vol. 21, at 3598:14–3603:14, Apr. 22, 2022 (testimony of Dr. Adam Rosendorff regarding information stored in and potential use of the LIS); Trial Tr. vol. 22, at 3732:7– 3734:3, Apr. 26, 2022 (same).  The LIS has been the subject of extensive litigation by the parties, and a more detailed description of the LIS and its demise can be found in the Court's prior orders.  *See, e.g.*, Dkt. No. 798 at 56–58; Dkt. No. 887; Dkt. No. 1326 at 21–22, 30–37.

The Government completed its case-in-chief on May 20, 2022.  Balwani's defense-in-chief began the same day and remains ongoing.  Balwani has represented that "a key feature of his defense at trial" will be the Government's purported "investigatory failure" to obtain either the original LIS equipment prior to the database's decommission or to reconstruct the LIS using the original equipment after decommission.  LIS Mot. at 5; *see also* Trial Tr. vol. 9, at 1105:13– 1111:7, Mar. 22, 2022 (Balwani's opening statement discussing the LIS and the Government's failure to obtain it).  He intends to introduce this evidence through his expert, Mr. Sonnier.  *See, e.g.*, Mr. Balwani's Opp'n to the Govt.'s Mot. to Exclude Def.'s LIS-Related Testimony and Evid. by Richard L. Sonnier, III ("Sonnier Opp'n"), Dkt. No. 1448, at 1–2.  In anticipation of the presentation of this defense, Balwani moved to compel certain LIS evidence on May 4, 2022, and the Government moved to exclude Mr. Sonnier's testimony and related evidence on May 17, 2022.  Dkt. Nos. 1425, 1440.

**II.    MOTION TO COMPEL**

On October 29, 2020, the Government transmitted a letter to defense counsel in response to Defendants' discovery requests, which the Government indicated might qualify as information necessitating disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or *Jencks v. United States*, 353 U.S. 657 (1957) ("the *Brady* letter").  Decl. of Jeffrey B. Coopersmith re: Def.'s Mot. to Compel LIS Evid., Ex. 1, Dkt. No. 1425-2 ("*Brady*

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
2

Ltr."), at 1.[1]  That letter included, among other things, information describing Government employees/agents' inability to access the copy of the LIS database Theranos provided pursuant to subpoena and the Government's subsequent unsuccessful attempts to otherwise obtain the information contained in the LIS database. *Id.* ¶¶ 36, 39-43, 46-54.  Balwani now seeks a court order compelling the Government to produce "[a]ll communications and materials, to the extent they exist in written form, that are specifically referenced in paragraphs 39, 40, 41, 42, 43, 46, 47, 48, 49, 50, and 51 of the *Brady* letter" under *Brady* and Federal Rule of Criminal Procedure 16 to support his "investigatory failure" defense.  LIS Mot. at 6.

The Government opposes the motion to compel on the following grounds: (1) the Court has already ruled that events post-dating the LIS decommission on August 31, 2018 are irrelevant; (2) the communications sought are exempt under Rule 16(a)(2); (3) the communications are not *Brady* material because they are not exculpatory; and (4) the communications are non-discoverable attorney work product.  U.S. Opp'n to Def.'s Mot. to Compel LIS Disc. ("LIS Opp'n"), Dkt. No. 1426.  As to the first argument, it is true that the Court has previously held that the decommissioning of the LIS and the Government's subsequent Conduct was irrelevant.  Dkt. No. 798 at 56–58; Dkt. No. 887 at 13–14; Dkt. No. 1326 at 21–22.  But the situation has since changed in material ways: previously, neither Balwani nor Holmes provided concrete positions on their plans for any LIS-related evidence sought.  *See* Dkt. No. 887 at 17 (denying Holmes's motion to suppress because she "has not indicated why any of the information or evidence she seeks is relevant, helpful in establishing her defense, not cumulative, or not exempt from disclosure due to deliberative privilege and/or work product protection.  She asserts that the evidence is material to her defense at trial because '[t]he government has noticed numerous LIS-related witnesses.'"); Dkt. No. 1156 at 49, 62–63 (adopting Holmes's motion to suppress and thus raising the Government's failure to follow the ALS supervisor's suggestion only as evidence of bad faith warranting suppression).  Now, however, Balwani has articulated a specific defense and

---

[1] A complete version of this letter can be found at Dkt. No. 732-2.

Case No.:   5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL

the evidence he wishes to introduce to attack the Government's investigation. As the Court has stated before, Balwani may argue insufficient evidence or lack of proof of guilt. Dkt. No. 1326 at 22. The communications Balwani now seeks meet the low threshold for relevance because they have a tendency—however slight—to make the facts concerning the quality or thoroughness of the Government's investigation more or less probable, which is of consequence to this action. Fed. R. Evid. 401; *see Rios v. Tilton*, No. 2:07-cv-0790 KJN P, 2016 WL 29567, at *6 (E.D. Cal. Jan. 4, 2016) ("[T]he requirements of Federal Rule of Evidence 401 are not especially stringent.") (citing *Slaughter-Payne v. Shinseki*, 522 F. A'ppx 409, 410 (9th Cir. 2013) (noting the "low bar for relevancy under Federal Rule of Evidence 401.")); *see also United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353 (9th Cir. 1981) (same); *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (same).

As to the Government's second argument that the communications sought are exempt under Rule 16(a)(2), the Ninth Circuit has held that Rule 16 applies only to pretrial discovery, not trial practice:

> Both the language and history of Rule 16 indicate that it addresses only pretrial discovery. Rule 16(f) requires that a motion for discovery be filed 'within 10 days after arraignment or . . . such reasonable later time as the court may permit,' and further commands that it include all relief sought by the movant. When this provision is viewed in light of the Advisory Committee's admonition that it is designed to encourage promptness in filing and to enable the district court to avoid unnecessary delay or multiplication of motions, . . . the pretrial focus of the Rule becomes apparent. . . . Finally, [t]he Advisory Committee's Notes emphasize its pretrial character. Those notes repeatedly characterize the Rule as a provision governing pretrial disclosure, never once suggesting that it was intended to constrict a district court's control over evidentiary questions arising at trial.

*United States v. Nobles*, 422 U.S. 225, 235–36 (1975) (internal citations omitted). Rule 16 thus does not require production of the materials underpinning the *Brady* letter at this late stage after Balwani has already begun his defense-in-chief.

The Government further contends that the communications sought are not discoverable under *Brady* primarily because they are not exculpatory. LIS Opp'n at 8–10. As the Government

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
4

1  notes, the Court has previously denied Defendants' motions to suppress because the exculpatory

2  value of the LIS database was speculative.  Dkt. No. 887 at 8–11; Dkt. No. 1326 at 31–32.

3  However, the evidence now at issue before the Court is not the LIS database itself, but rather

4  documents relating to the Government's efforts to obtain the LIS and the data it contained.

5  Balwani asserts that these documents are exculpatory because they undermine the Government's

6  investigation and thus must be disclosed.  LIS Mot. at 1 (citing *Kyles v. Whitley*, 514 U.S. 419,

7  445–54 (1995); *United States v. Howell*, 231 F.3d 615, 624–27 (9th Cir. 2000); *United States v.*

8  *Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996)).  The Government attempts to distinguish *Kyles*,

9  *Howell*, and *Crosby* by arguing that those cases concerned "the *police* in investigating the crime,

10  not the *prosecution's* internal decision-making process in deciding what evidence to use in

11  proving the crime at trial," but cites to no authority supporting such a distinction.[2]  LIS Opp'n at 7

12  (emphases original).  At any rate, the relevant portions of the *Brady* letter does not so clearly

13  reflect the Government's consideration of what evidence to use at trial, beyond the common-sense

14  logic that the Government cannot use evidence it does not possess.  "[I]nformation which might

15  'have raised opportunities to attack . . . the thoroughness and even good faith of the investigation .

16  . .' constitutes exculpatory material evidence.  *Howell*, 231 F.3d at 625 (quoting *Kyles*, 514 U.S. at

---

[2] In its motion to exclude Mr. Sonnier's testimony, the Government cites to *United States v. Sellers*, where the Ninth Circuit noted that the presumption of regularity provides "a measure of protection (and confidentiality) to prosecutors' deliberative processes, which are covered by strong privileges," whereas law enforcement "[a]gents' investigatory decisions are regularly questioned at trial, and their credibility is put before courts and juries.  Thus, agents occupy a different space and role in our system than prosecutors; they are not charged with the same constitutional functions, and their decisions are more often scrutinized by—and in—courts."  906 F.3d 848, 853 (9th Cir. 2018).  *Sellers* concerned the narrow context of a claim of selective enforcement in stash house reverse-sting operations.  *Id.* at 852.  The Government urges the Court to find *Sellers* and its related progenitor, *United States v. Armstrong*, 517 U.S. 456 (1996)—which discussed the standard for obtaining discovery for a claim of selective prosecution—analogous to the present situation.  But the Court does not read *Sellers* or *Armstrong* as holding that a defendant may not obtain and introduce evidence that the Government's investigation resulting in criminal charges was flawed, particularly in light of unambiguous and on-point statements to the contrary from both the Supreme Court and the Ninth Circuit in *Kyles* and *Howell*.  *See United States v. Soto-Zuniga*, 837 F.3d 992, 1000–01 (9th Cir. 2016) ("In our view, the holding of *Armstrong* applies to the narrow issue of discovery in selective-prosecution cases.").  *Armstrong* also relies on Rule 16, which for the reasons described above, does not apply to these circumstances.

Case No.:   5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
5

443). While the jury may very well ultimately find Balwani's defense unconvincing, *Brady* requires the Government to provide him the information to present that defense. *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) ("The prosecution must disclose materials that are *potentially* exculpatory or impeaching." (emphasis original)); *see also Howell*, 231 F.3d at 625 ("That the information withheld may seem inculpatory on its face in no way eliminates or diminishes the government's duty to disclose evidence of a flawed police investigation.").

Finally, the Government argues that the communications Balwani seeks are protected under the attorney work product doctrine. LIS Opp'n at 9; *see also id.* at 7–8. The work product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation or for trial. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citation omitted). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles*, 422 U.S. at 237–38. The doctrine protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself," *id.* at 238–39, and its primary purpose is to "prevent exploitation of a party's efforts in preparing for litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989). Work product protection can extend to interview notes, memoranda, summaries, and analyses. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Hatamanian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR(JSC), 2016 WL 2606830 at *3 (N.D. Cal. May 6, 2016). "*Brady* does not require a prosecutor to disclose to the defense most 'opinion work product,' that is, material encompassing only an attorney's mental impressions or legal theories." *Morris v. Ylst*, 447 F.3d 735, 742 (9thCir. 2006).

The documents upon which the *Brady* letter is based are not before the Court, and thus the Court cannot say to what extent they are protected as attorney work product. However, what the Government did or did not do are facts that are not protected. *See id.* at 743 (exculpatory facts unknown to the defense are *Brady* material). Information in those documents that reflects the prosecuting attorneys' mental impressions or legal theories is protected, but the mere fact, for

example, that a Government employee suggested various possible courses of action with respect to the LIS and the course(s) the Government pursued in the end are not themselves work product. Ultimately, the entire prosecution can be considered a reflection of the Government's impressions and thoughts, thus the Court declines to expand the work product doctrine in the manner the Government suggests. As the Government states in its opposition, "in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady unless they contain underlying exculpatory facts*." LIS Opp'n at 9 (quoting *Morris*, 447 F.3d at 742; internal quotation marks omitted; emphasis added). The underlying exculpatory facts are discoverable here.

Balwani argues that the Government waived all work product protection over the documents at issue because it produced the *Brady* letter. Mr. Balwani's Reply in Supp. of Mot. to Compel LIS Disc., Dkt. No. 1431, at 6 (citing *Sanmina*, 968 F.3d at 1121–22; *Rubalcava v. City of San Jose*, No. 20-cv-04191-BLF (VKD), 2022 WL 484988 (N.D. Cal. Feb. 16, 2022)). Neither of the cases that Balwani cites for that assertion addresses *Brady* disclosures. Finding a waiver by virtue of providing *Brady* disclosures would not only lead to the absurd result of waiver in every single federal criminal prosecution, but it could discourage prosecutors from providing fulsome disclosures in the first instance. The Court is unaware of any authority holding that the mere act of disclosing information under *Brady* waives all work product protection.

Accordingly, the Government shall produce communications sufficient to show the facts referenced in paragraphs 39, 40, 41, 42, 43, 46, 47, 48, 49, 50, and 51 of the *Brady* letter, to the extent they exist in written form, by **June 2, 2022, 10:00 a.m.** The Government may withhold or redact any portions that it asserts qualify for protection under the work product doctrine as describing counsel's mental impressions, legal theories, or litigation strategies, and provide a privilege log to that effect. The Court defers ruling on the admissibility of any particular communications until such communications are offered at trial through a competent witness.[3]

---

[3] At the May 23, 2022 hearing, defense counsel represented that calling members of the prosecution team or other Government employees would be unnecessary. Trial Tr. vol. 33 at

1  Alternatively, in lieu of production, the parties may reach agreement as to certain facts to
2  be read into the record.

### III.  MOTION TO EXCLUDE

As discussed above, Balwani is entitled to put on a defense concerning the Government's "investigatory failure." For this defense, Balwani retained Mr. Sonnier as an expert witness "in the field of Microsoft SQL databases and attendant equipment and software, including encryption of such databases and recovery of data from them." Decl. of Richard L. Sonnier III ("Sonnier Decl."), Dkt. No. 1158 ¶ 1; *see also* Sonnier Opp'n at 1 (describing Mr. Sonnier as "Mr. Balwani's expert in SQL databases, data encryption, and data recovery"); Trial Tr. vol. 33 at 6421:12-14 ("Mr. Sonnier is an expert in SQL . . . server databases, data encryption, and data recovery."). At the hearing, Balwani represented that the testimony he intended to solicit from Mr. Sonnier would track Mr. Sonnier's declaration submitted in support of Balwani's motion to suppress. Trial Tr. vol. 33 at 6421:12-16. In that declaration, Mr. Sonnier opines that: the Government could have obtained the LIS database itself before it was decommissioned in August 2018; the Government could have retrieved the equipment and reassembled the LIS database after the decommission; and no encryption key would have been necessary had the Government retrieved the original LIS equipment at any time. Sonnier Decl. ¶ 4.

The Government now seeks to exclude Mr. Sonnier's trial testimony and LIS-related evidence under Federal Rules of Evidence 104, 402, 403, and 702. Sonnier Mot. at 1. As to the Government's relevance objections, the Court finds that Mr. Sonnier's proposed opinions are not

---

6430:6-11, 6440:21–6441:2, May 23, 2022. Based on that representation, and other representations made that all necessary foundation for Balwani's "investigatory failure" defense could be laid through Mr. Sonnier's testimony, the Court will preclude Balwani from calling any members of the prosecution team as witnesses because he has not demonstrated a compelling need to do so. *See United States v. Prantil*, 764 F.2d 548, 552–54 (9th Cir. 1985) ("[C]ourts have generally disfavored allowing a participating prosecutor to testify, at a criminal trial. . . . This reluctance is understandable particularly when the defendant seeks to call the prosecutor as a witness."); *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982) ("The federal courts have universally condemned the practice of a government prosecutor's testifying at a trial in which he is participating; such testimony is permitted only if required by a compelling need.").

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
8

irrelevant based on Balwani's anticipated "investigatory failure" defense for the reasons described above. However, the Court finds it appropriate to limit Mr. Sonnier's testimony in the following ways:

First, the Government voices concern that Balwani will attempt to use Mr. Sonnier to argue that the LIS could have conclusively demonstrated that Theranos's tests were accurate and reliable. Sonnier Mot. at 9. At the hearing, Balwani represented that he did not intend to elicit such testimony through Mr. Sonnier. Trial Tr. vol. 33 at 6455:19–6456:1 ("MR. BRECHER: . . . [W]e don't intend to lay any more foundation supporting that. We think Dr. Rosendorff's testimony gives us all we need to argue that point."). Based on that representation, Mr. Sonnier may not testify as to whether the LIS database and its contents would have demonstrated that Theranos tests were accurate and reliable.

Second, the Court is concerned by statements defense counsel made at the hearing as to the scope of Mr. Sonnier's expertise and resulting opinions. Balwani's counsel asserted:

> Mr. Sonnier is a veteran of countless forensic investigations. This is what he does for a living. He's going to say, "I'm familiar with how we seize evidence, and I have also reviewed material."
> And Your Honor will recall, experts can form opinions based on even inadmissible materials they review if it's reliable within their field.
> And he's going to say, I've looked at literature that I consider reliable in my field and that other experts rely on about best practices and what should be done in seizing electronic data, and I think the Government could have done this. And I don't see how that's controversial, Your Honor.

Trial Tr. vol. 33 at 6437:16–64:38. As the Government points out, Mr. Sonnier was disclosed as a an expert "in the field of Microsoft SQL databases and attendant equipment and software, including encryption of such databases and recovery of data from them." Sonnier Decl. ¶ 1. He was not disclosed as an expert in forensic investigations or seizure of evidence *for the purposes of a criminal investigation*. Nor does his curriculum vitae reflect such experience. *See* Sonnier Decl., Ex. A.

At the hearing, the Court engaged in extensive colloquy with defense counsel as to precisely how counsel intended to introduce evidence through Mr. Sonnier and the kinds of

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
9

questions counsel intended to elicit based on those documents. Balwani's counsel repeatedly represented that the testimony sought from Mr. Sonnier would be quite straightforward—counsel would introduce evidence and solicit testimony regarding: the LIS copy that the Government received from Theranos; the Government's options for otherwise obtaining the LIS data, including the ALS Supervisor's suggestion to obtain the LIS equipment; which options the Government chose to pursue; and whether, in Mr. Sonnier's expert opinion, the Government would have been able to access the LIS data without the use of a private encryption key by obtaining the LIS equipment before or after decommission. *See, e.g.*, Trial Tr. vol. 33 at 6435:19–6436:5 ("MR. BRECHER: . . . I think it's not a particularly complicated exercise. . . . 'Mr. Sonnier, do you understand that these are representations by the Government?" Full stop. That's it. Here's a piece talking about this encrypted copying of a database. Here's a paragraph saying it couldn't be opened. Here's a recommendation from the Government's technical supervisor saying why don't you try this. And then the followup. Mr. Sonnier, do you agree with that? Would that have worked? Yes. I don't think it gets significantly more complicated than that."); *id.* at 6458:8-16 ("MR. BRECHER: . . . Mr. Sonnier is going to say, if Your Honor permits us to put on his testimony, that the Government knew that it had an option to seize the servers. And he's going to say, 'In my opinion, in my expert opinion, that would have worked.' That's it. That's essentially the sum total of what we want from Mr. Sonnier. There will be some context to establish his expert credentials and some factual foundation to explain this issue of the encrypted copy. But that's all we're going to say."); *id.* at 6461:7-9 ("The limits of his testimony are precisely, that the Government was told that it could have done more, and if it would have done more, that would have worked."); *id.* at 6456:7-10 ("[W]e're allowed to say the Government could have done more, and then Mr. Sonnier can say that in testimony. And we can say in closing, and you know what, you should conclude that the Government should have done more."); *id.* at 6469:8-13 ("MR. BRECHER: Well, Your Honor, we are going to ask him or we do intend to ask him, was the Government told that this is something that they could have done? Yes. Would that have worked? Yes."). The Court will hold Balwani to the above representations made concerning the

testimony he seeks to elicit from Mr. Sonnier and the manner in which he seeks to do so. Mr. Sonnier may testify as to what the Government *could* have done, but he may not testify as to what the Government *should* have done, as that is outside the scope of his noticed testimony and expertise. The Court will also hold Balwani to his representations that he would not elicit legal conclusions from Mr. Sonnier regarding the Government's course of action or disparaging the Government. *Id.* at 6436:23–6437:10 ("MR. BRECHER: So the point raised by Ms. Volkar in the Government's reply brief, right, that Mr. Sonnier may offer, a fear that Mr. Sonnier would offer legal conclusions about negligence or recklessness, we're not going to ask him that. . . . That's not something for Mr. Sonnier to testify about."); *id.* at 6479:12-14, 6480:24 –6481:3 ("MR. BRECHER: I want to comment for a moment about sullying the Government or throwing mud on the Government. . . . [M]y intention isn't to insult and our intention is not to insult these prosecutors or these investigators . . . .").

The Court turns now to the Government's request to preclude Balwani from introducing certain evidence through Mr. Sonnier. At the hearing, Balwani expressed his intent to introduce factual evidence describing the Government's attempts (or lack thereof) to obtain the LIS data. He proposed to do so either through any documents produced as the result of Balwani's motion to compel or through the *Brady* letter itself. *Id.* at 6476:23–6477:14.

The Court declines to admit the *Brady* letter as an exhibit. The few courts that have addressed the issue all conclude that such letters are inadmissible. *See, e.g.*, *United States v. Dock*, No. 1:11CR0026-4, 2016 WL 4529757, at *2 (W.D. Va. July 27, 2015) (rejecting claim of ineffective assistance of counsel based on counsel's failure to attempt to introduce *Brady* letter, because the letter was hearsay and no apparent exception applied); *J.W. v. City of Oxnard*, No. CV 07-06191 CAS (SHx), 2008 WL 4810298, at *1–2 (C.D. Cal. Oct. 27, 2008) (granting motion in limine to exclude *Brady* letter as inadmissible hearsay, and holding that even if public records exception were to apply, admitting the letter would be more prejudicial than probative); *United States v. Milikowsky*, 896 F. Supp. 1285, 1303 n.34 (D. Conn. 1994) (rejecting defendants' argument that the *Brady* letter should have been admitted as the nonhearsay admission of a party

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
11

opponent under Federal Rule of Evidence 801(d)(2) and rejecting the conclusion that "with each *Brady* disclosure . . . prosecutors would, in effect, be stipulating to the introduction of that disclosure into evidence."). Because the Court has granted Balwani's motion to compel as described above, use of the *Brady* letter—which reflects at least one level of hearsay, if not more—is unnecessary and cumulative.

Having set the boundaries of Mr. Sonnier's testimony, the Court addresses the scope of the Government's rebuttal case. The Government may introduce evidence to rebut the implication that its investigation was flawed in the manner Balwani contends. It may offer evidence to explain why it did not attempt to obtain the original LIS equipment prior to decommission, and why it could not have resurrected the LIS after decommission. The Government may offer evidence that Balwani also unsuccessfully attempted to obtain the LIS or a copy or a recreated version of the LIS, but it may not create the impression that Balwani was obligated to do so or that he is guilty because he did not do so. Furthermore, the Government may not introduce rebuttal evidence regarding the accuracy or reliability of Theranos tests based on the LIS data because Mr. Sonnier will not testify on that topic. Both parties are advised that what the Government should have done to obtain the LIS, and whether the LIS is necessary for a finding of guilt is more appropriately reserved for closing arguments.

Permitting Mr. Sonnier to testify with the limitations outlined above will not mislead the jury, confuse the issues, waste time, or result in a mini-trial about the LIS. The parameters set forth above appropriately balance Balwani's right to present the defense of his choice and the requirements of Rules 403 and 702. *United States v. Scheffer*, 523 U.S. 308–09 (1998) ("A defendant's right to present relevant evidence is not unlimited but rather is subject to reasonable restrictions.").

### IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Balwani's motion to compel LIS-related evidence and GRANTS IN PART and DENIES IN PART the Government's motion to exclude the testimony of Mr. Sonnier.

**IT IS SO ORDERED.**

Dated: May 27, 2022

                                                                 _____
                                                                 EDWARD J. DAVILA
                                                                 United States District Judge

Case No.: 5:18-cr-00258-EJD-2
ORDER GRANTING IN PART MOT. TO EXCLUDE SONNIER AND MOT. TO COMPEL
13