JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>    Defendant. | Case No. CR-18-00258-EJD<br><br>**MR. BALWANI'S MOTION TO ADMIT VARIOUS TRIAL EXHIBITS**<br><br>Date:  June 6, 2022<br>Time:  9:00 a.m.<br>CTRM.: 4, 5th Floor<br><br>**Hon. Edward J. Davila** |

**MOTION TO ADMIT VARIOUS TRIAL EXHIBITS**

PLEASE TAKE NOTICE that on June 6, 2022, at 9:00 a.m. or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does respectfully move the Court to admit various Trial Exhibits. The Motion is based on the below Memorandum of Points and Authorities, the Declaration of Amy Walsh and attached exhibits, the record in this case, and any other matters that the Court deems appropriate.

DATED: June 1, 2022                    Respectfully submitted,

                                       ORRICK HERRINGTON & SUTCLIFFE LLP

                                       By:  */s/ Jeffrey B. Coopersmith*
                                            Jeffrey B. Coopersmith

                                            Attorney for Defendant
                                            RAMESH "SUNNY" BALWANI

## I. INTRODUCTION

Mr. Balwani moves to introduce various trial exhibits attached to this motion, all of which are authentic and admissible over any hearsay objection, for the reasons discussed in detail below.[1] *See* Declaration of Amy Walsh, Exs. 1–9. Mr. Balwani intends to offer these exhibits through a paralegal, Mr. Youske Okano, from the law firm of Orrick, Herrington, and Sutcliffe LLP. The Court should grant this motion.

## II. ARGUMENT

Written evidence is admissible once the proponent shows that it is authentic, the best evidence, relevant, and not subject to a hearsay objection. *See United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir. 1993) (per curiam) ("The proponent of a writing at trial must overcome authentication, best evidence, and hearsay objections …." (emphasis omitted)). All the exhibits Mr. Balwani seeks to admit here satisfy those requirements and are therefore admissible.

### A. The Attached Trial Exhibits Are Authentic and the Best Evidence

All of the attached exhibits are authentic and the best evidence because they fall under the parties' stipulation, their authenticity is properly subject to judicial notice, and/or they are independently authenticated under Rules 901 and 902. Therefore, they need not be introduced through a subscribing witness. *See* Fed. R. Evid. 903.

***Exhibits 1–5, 7 & 8.*** Exhibits 1 through 5, 7 and 8, are authentic and the best evidence under the parties' March 15, 2022 stipulation. *See* Dkt. 1354. These exhibits are "[e]mails to or from email addresses with the domain @theranos.com that were sent or received by Theranos personnel" and bear the requisite Bates prefixes. *See id.* ¶ 2 (stipulating that such emails are "true and correct copies of emails stored, collected, and/or produced by Theranos"); *see* Walsh Decl. Exs. 1–5, 7–8. Several of these exhibits also include attachments. *See* Walsh Decl., Exs. 1 (TX 7098), 5 (TX 15058), 7 (TX 20826), 8 (TX 15029). As the government has acknowledged, when an email and its attachment(s) are produced together with sequential bates numbers, both the email and attachment(s) are authentic. *See* 4/1/22 Trial Tr. at 1899 (acknowledging that an

---

[1] For ease of reference, Mr. Balwani has included a chart summarizing all of the exhibits covered by this motion and their respective grounds for admissibility *infra* at 11.

attachment to an email falling under the stipulation is itself "stored, collected, and produced by Theranos" "pursuant to the stipulation"); *see also United States v. Pang*, 362 F.3d 1187, 1192–93 (9th Cir. 2004) (authenticity of invoices established where, among other things, "the numbers were in sequence with the numbers of other invoices that were in evidence").

***Exhibits 6 & 7.*** Exhibits 6 (TX 20817) and 7 (TX 20826) are authentic for additional reasons. Trial Exhibit 20817 is the FDA's approval of the Theranos herpes simplex virus-1 (HSV-1) assay under section 510(k) of the Food, Drug, and Cosmetic Act (FDCA). Walsh Decl., Ex. 6. Trial Exhibit 20826 is the FDA's grant of "waived status" to that same assay under the Clinical Laboratory Improvement Amendments of 1988 (CLIA). Ex. 7.

Trial Exhibit 20817, the section 510(k) approval, is a self-authenticating public record. It is a publication obtained from the FDA's website[2] and is therefore authentic as a "publication purporting to be issued by a public authority." Fed. R. Evid. 902(5); *accord Kuba v. Sea World, Inc.*, 428 F. App'x 728, 732 (9th Cir. 2011) (holding that district court erred by excluding self-authenticating excerpts of a government website under Rule 902(5)). Mr. Okano will also be able to testify from personal knowledge that the exhibit can be accessed from the FDA's website. *See infra* n.5. The authenticity of Trial Exhibit 20817 is further supported by Trial Exhibit 27079—attached to this motion, but not offered for admission at this time—which shows that an FDA management analyst transmitted FDA's section 510(k) approval to Theranos from her @fda.hhs.gov email address. Walsh Decl., Ex. 10 (TX 27079). That email and its attachment are authentic under the parties' stipulation.

For the above-stated reasons, both Trial Exhibits 20817 and 20826 are authentic per the parties' stipulation, and Trial Exhibit 20817 is self-authenticating on top of that. In addition, both of these exhibits are official FDA communications that are independently authentic under Rule 901. They are authentic because they are "purported public record[s] or statement[s] … from the office where items of this kind are kept," Fed. R. Evid. 901(b)(7)(B), as well as based on their "appearance, contents, substance, internal patters, or other distinctive characteristics … , taken

---

[2] *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K143236; https://www.accessdata.fda.gov/cdrh_docs/pdf14/K143236.pdf.

together with all the circumstances," Fed. R. Evid. 901(b)(4).

In particular, both FDA documents are written on FDA letterhead; represent official FDA findings and communications; and are signed by FDA officials. *See* Walsh Decl., Ex. 6 at 3–4 (TX 20817); Ex. 7 at 2–3 (TX 20826). Moreover, both documents were transmitted by FDA officials from their official @fda.hhs.gov email addresses, and the government has indisputably stipulated to the authenticity of those emails. *See* Ex. 10 at 1 (TX 27079) (transmitting 510(k) approval); Ex. 7 at 1 (TX 20826) (transmitting CLIA waiver); Dkt. 1354 (stipulation). The FDA's website confirms all the relevant dates, parties, and communications. *See* Ex. 6 at 1 (TX 20817). Indeed, the website hosting the section 510(k) approval even cross-references the file number for the CLIA waiver, K143236, demonstrating that the documents are internally consistent and authentic. *Compare* Ex. 6 at 1 (TX 20817) (FDA website), *with* Ex. 7 at 2 (TX 20826) (CLIA waiver).

These indicia are sufficient to meet the low bar for showing authentication, especially without countervailing evidence that the documents are inauthentic. *See, e.g.*, *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) ("Thus, the district court applied an incorrect legal standard because, as set out above, the Bennett letter and its return receipt could have been authenticated by review of their contents if they appeared to be sufficiently genuine."); *id.* (rejecting the district court's requirement that documents "must be authenticated by a competent witness with personal knowledge of their authenticity"); *id.* at 533–34 (relying on the documents' dates, letterhead, sender, address lines, and other characteristics for authentication purposes).

***Exhibit 9.*** Exhibit 9 (TX 20830) is provisional patent Application No. 61/875,678 for Theranos' modifications to commercial predicate devices to accommodate smaller sample volumes. The Court should take judicial notice of the authenticity of this document, which was filed with the U.S. Patent and Trademark Office (PTO). *See* Fed. R. Evid. 201(c)(2) ("The court … must take judicial notice if a party requests it and the court is supplied with the necessary information"). The patent application is publicly available on the PTO's website,[3] meaning its

---

[3] The '678 Application is accessible publicly on the PTO's database of patent materials by entering the application number at https://portal.uspto.gov/pair/PublicPair and selecting the "Image File Wrapper" tab.

authenticity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, courts routinely take judicial notice of patent applications. *See, e.g.*, *Universal Elecs. Inc. v. Roku, Inc.*, No. SACV 18-1580, 2019 WL 1877616, at *1 n.1 (C.D. Cal. Mar. 5, 2019) ("The '088 Application is a matter of public record issued by the U.S. [PTO] whose accuracy and authenticity cannot reasonably be disputed. Therefore, the Court takes judicial notice of the '088 Application's existence and the content therein."); *accord Anderson v. Kimberly-Clerk Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) (per curiam) ("It is also well-established that a court may take judicial notice of patents or patent applications."); *Oroamerica Inc. v. D & W Jewelry Co.*, 10 F. App'x 516, 517 n.4 (9th Cir. 2001) (taking judicial notice of patent applications); *Coinstar, Inc. v. Coinbank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (same).

Alternatively, the patent application is authentic under Rule 901(b) for the reasons described above with respect to the FDA exhibits. The application is a "document [that] was recorded or filed in a public office as authorized by law," Fed. R. Evid. 901(b)(7)(A), including, at least, 35 U.S.C. § 111 and 37 C.F.R. § 1.53(c), *see* Walsh Decl., Ex. 9 at 1, 56 (TX 20830). And the application bears all the distinctive indicia of an authentic patent application. *See supra* at 3–4 (citing Fed. R. Evid. 901(b)(4)). It was accessed from the PTO's public website, *supra* n.3; it was made on the official PTO Form SB16, Ex. 9 at 1; and it includes the PTO's Electronic Acknowledgement Receipt confirming the filing, *id.* at 55–56.

**B. The Exhibits Are Relevant and Admissible Over Any Hearsay Objection**

These exhibits are admissible over any hearsay objection because they either fall within a recognized hearsay exception or are offered for a non-hearsay purpose.

***Exhibits 1–5.*** Exhibits 1 through 5 are admissible for the non-hearsay purpose of showing Mr. Balwani's knowledge and state of mind, because they are emails (and their attachments) conveying relevant information to Mr. Balwani. *See* Walsh Decl., Exs. 1–5. The government has introduced—and the Court has admitted—numerous emails on which Mr. Balwani is copied for the same highly relevant, non-hearsay purpose. *See, e.g.*, 4/6/2022 Trial Tr. at 2329 (Government: "The email [TX 291] includes Mr. Balwani, the Defendant, on the cc line. It is therefore relevant

to demonstrate the Defendant's state of mind as to two issues, knowledge and intent; that is, what is done with the attachments."); *id.* at 2329–2330 (Court: "So these are not coming in for the truth of anything asserted, but rather that they were received at least by Mr. Balwani per the email address? … All right. … [T]his email is being admitted for the limited purpose of knowledge, that is, knowledge as to the recipient of the email …."); *id.* at 2332–2334 (offering and admitting related documents, including TX 277, for same limited purpose); *id.* at 2431 (same for TX 3965); *id.* at 2435–2436 (same for TX 3981); 4/13/2022 Trial Tr. at 2561–2562 (same for TX 5413); 5/10/2022 Trial Tr. at 5123 (Government: "[A]t a minimum, the document [TX 2065—an email among Mr. Balwani, Ms. Holmes, and Mr. Holmes] comes in because it is notice to the Defendant, and it doesn't need to come in for its truth in order to accomplish that"); *id.* at 5126 (Court: "I do find that at a minimum, this should come in for notice. I see Mr. Balwani's name on it. He's in the middle of the email chain, and he's a recipient at the top.").

        The same is true for the exhibits Mr. Balwani seeks to admit here. They convey information to Mr. Balwani about the capabilities of Theranos' technology, the licensure of its prospective lab director, and the company's interactions with pharmaceutical companies. *See* Walsh Decl., Ex. 1 (TX 7089) (excerpts of February 18, 2010 slide deck by Dr. Ian Gibbons, Theranos' chief scientist, discussing capabilities of Theranos' technology), Ex. 2 (TX 15004) (email chain including October 19, 2010 email from Dr. Gibbons explaining capabilities of Theranos' platform), Ex. 3 (TX 7286) (email chain including April 21, 2013 email from Dr. Daniel Young outlining Theranos assays "for fda filing"), Ex. 4 (TX 20827) (email chain including July 27, 2015 email from Dr. Suraj Saksena updating Mr. Balwani about the status of his application for clinical lab director licensure), Ex. 5 (TX 15058) (December 15, 2009 email from Theranos to GlaxoSmithKline (GSK) attaching, inter alia, "the validation report from the GSK staff who tested Theranos technologies"). Mr. Balwani's state of mind about all of these issues is highly relevant to the charges and central to rebutting the government's assertions regarding Mr. Balwani's knowledge of the capabilities of Theranos' technology, its relationships with pharmaceutical companies, and Mr. Balwani's intentions regarding hiring various laboratory directors after Dr. Rosendorff's departure.

***Exhibits 6 & 7.*** Exhibits 6 (TX 20817) and 7 (TX 20826) are official FDA communications that fall squarely within the hearsay exception for public records. *See* Fed. R. Evid. 803(8). Both exhibits comprise "statement[s] of a public office" that "set[] out … the office's activities," "matter[s] observed while under a legal duty to report," and "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(i)–(iii). As the Supreme Court has long held, Rule 803(8)'s reference to "factual findings" encompasses a broad category of statements that "extends to conclusions and opinions contained in such [government] reports." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 156 (1988). The findings in Exhibits 6 and 7 are the result of investigations authorized by the FDCA and CLIA, including but not limited to 21 U.S.C. § 360, 42 U.S.C. § 263a, and 21 C.F.R. §§ 801.109–.128, 807.3–.100. As the FDA itself explained, it issued these findings after it reviewed the data submitted by Theranos and determined that Theranos was legally permitted to market the device under the FDCA and CLIA. Walsh Decl., Ex. 6 at 3 (TX 20817); *see also id.*, Ex. 7 at 2 (TX 20826) (explaining that the FDA "has completed its review of your application for waived status under [CLIA]").

Courts routinely admit FDA communications like these under Rule 803(8). In *McClellan v. I-Flow Corp.*, for example, Judge Aiken overruled a hearsay objection to documents "depict[ing] the FDA's activities in reviewing 510(k) applications and includ[ing] factual findings resulting from [FDA]'s review of I-Flow's 510(k) application, an investigation made pursuant to authority granted by law." No. 07-1309, 2010 WL 3954092, at *2 (D. Or. Oct. 7, 2010) (citing 21 C.F.R. § 807.100 as FDA's investigative authority); *accord Smith v. I-Flow*, No. 09 C 3908, 2011 WL 12627557, at *2 (N.D. Ill. June 15, 2011) (applying Rule 803(8) to FDA clearance memorandum); *see also In re EpiPen*, 545 F. Supp. 3d 922, 945 & n.17 (D. Kan. 2021) (reconsideration and certification denied on other grounds) (applying Rule 803(8) to FDA authorization); *In re Bard*, No. MDL 15-02641, 2018 WL 1109554, at *4 (D. Ariz. Mar. 1, 2018) (applying Rule 803(8) to FDA warning).

And, as this Court has already recognized at trial, public records require no foundation. "[T]he public records exception is one of the few hearsay exceptions that does not require a foundation. Instead, documents that fall under the public records exception are presumed

1   trustworthy, placing the burden of establishing untrustworthiness on the opponent of the

2   evidence." *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (quotation

3   marks omitted). The documents at issue here were written, signed, and issued by federal officials,

4   and nothing suggests that they lack trustworthiness. *See* Walsh Decl., Exs. 6, 7.[4]

5         Trial Exhibit 20826, the CLIA waiver, is also independently admissible for the

6   non-hearsay purpose of showing notice to Mr. Balwani. *See id.*, Ex 7. The CLIA waiver was

7   forwarded to Mr. Balwani by Theranos' regulatory counsel and is thus probative of his state of

8   mind regarding federal regulatory approvals of Theranos' technology. *See id.* at 1. As explained

9   above, notice to Mr. Balwani is a non-hearsay purpose that the Court has regularly used to admit

10  documents during this trial.

11        ***Exhibits 8 & 9.*** Exhibits 8 (TX 15029) and 9 (TX 20830) are also offered for a non-

12  hearsay purpose of showing that Theranos made certain communications to federal regulatory

13  agencies—not for the truth of the matters asserted within those communications.

14        Trial Exhibit 15029 comprises an October 23, 2013 email from Ms. Holmes to FDA

15  personnel with two attachments—Theranos' "Assay Testing Summary in CLIA Lab" and its

16  "Planned Assay Testing Summary in CLIA Lab," which Ms. Holmes describes, respectively, as

17  lists of "all tests that have been run on samples collected from patients in Theranos Wellness

18  Centers since the Wellness Centers began operation in September" and "all tests currently

19  planned to potentially be run on samples collected in Theranos Wellness Centers during Phase I

20  of Theranos' operations." Walsh Decl., Ex. 8 at 1. Critically, the first attachment indicates that

---

[4] Both FDA documents are also admissible as non-hearsay because they include statements whose "significance … lies solely in the fact that it was made," such as a statement that "affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801(c) advisory committee notes; *accord United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993) (per curiam) (citing *id.*) (certificate of the Federal Deposit Insurance Corporation "memorializes the fact of the legal relationship" between the bank and the agency and is, therefore, "obviously not hearsay").

The FDA documents are admissible because they affected Theranos' legal rights to use and market its device for certain purposes. *See* Walsh Decl., Exs. 6 (TX 20817), 7 (TX 20826). As courts have acknowledged, similar communications from FDA "affect[]" a party's "legal rights and potential liabilities under the law, which is all that is required for the verbal acts doctrine to apply." *Willis v. Abbott Labs.*, No. 1:15-cv-00057, 2017 WL 5988215, at *9 (W.D. Ky. Dec. 1, 2017); *see also United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (cancelled checks "fall squarely in this category of legally-operative verbal acts that are not barred by the hearsay rule").

two assays are run on "Theranos Protocol," meaning "FDA-cleared assays running a Theranos protcol [sic] (i.e., modified under the CLIA regulations)" and "thus validated as LDTs." *Id.* at 2.

      Mr. Balwani offers this exhibit not for its truth, but to show that Theranos disclosed to the FDA that it was running assays on modified predicates. Whether or not Theranos was in fact running the listed assays in the manner claimed—that is, no matter whether the factual assertions are true—the disclosure itself is relevant because it undercuts the government's allegation that Ms. Holmes and Mr. Balwani hid Theranos' use of modified predicates from the world. This is a non-hearsay use that the government has asserted elsewhere in this trial. *See, e.g.*, 4/26/2022 Trial Tr. at 3800–3801 (Government: "The truth or falsity of the statements in the Parloff article are irrelevant. They are offered simply because these are statements that were made to the world …. So there is no hearsay problem here."). Just as the government has done in its case-in-chief, Mr. Balwani can rely on other evidence to prove the truth of the matter asserted in Trial Exhibit 15029 (i.e., that Theranos used modified predicates to run certain assays), but that does not mean the communication itself is offered for its hearsay value. *See, e.g.*, *United States v. Muscato*, 534 F. Supp. 969, 975 (E.D.N.Y. 1982) (an out-of-court statement is admitted for a "non-assertive use" when offered to show the communication of certain factual assertions, or knowledge that those assertions were made, even though their truth may be "established by other evidence in the case"); 2 McCormick On Evid. § 250 (8th ed.) (explaining that such an out-of-court statement "has value independent" of its veracity). Again, the Court has recognized this distinction for evidence introduced by the government. *See, e.g.*, 4/29/2022 Trial Tr. at 4244, 4246 (the government offered and the Court admitted evidence of alleged misrepresentations Ms. Holmes made to an investor in 2006 over Mr. Balwani's objection because "[t]he question of [their truth or] falsity comes through [other] pieces of evidence comparing what Ms. Holmes said and the reality"). Trial Exhibit 15029 is admissible for the same reason.

      As noted above, Trial Exhibit 20830 is a provisional patent application that Theranos filed with the PTO in fall 2013 pertaining to "devices, methods and systems for reducing sample volume"—in other words, Theranos' modifications to commercial predicate devices. Walsh Decl., Ex. 9. Like the email to the FDA, this provisional patent application is offered not for the

truth of the specifications or patent claims made within, but rather to show the non-assertive act by Theranos of applying for patent protection over the described technology. The government suggested repeatedly in its case that the use of modified commercial devices formed part of the alleged fraudulent scheme. But Theranos' application for provisional patent protection shows the company was taking steps to protect what it viewed as legitimate and valuable intellectual property allowing commercial devices to accommodate smaller blood samples. Again, Trial Exhibit 20830 is not hearsay because it is offered for a "non-assertive use," *Muscato*, 534 F. Supp. at 975—that is, to show that Theranos applied for patent protection over its modifications to predicate devices, which has "value independent of" the truth of the assertions made within the patent application, 2 McCormick On Evid. § 250.

* * *

The chart on the following page summarizes all the trial exhibits Mr. Balwani seeks to introduce through this motion and their respective grounds for admissibility:

| Decl. Ex. | Trial Exhibit | Description of Exhibit | Basis for Authenticity | Overcoming Hearsay Objection |
|---|---|---|---|---|
| 1 | 7098 | Email to Mr. Balwani with attached excerpts of slide deck regarding capabilities of Theranos' technology | Stipulation | Not Offered for the Truth (Offered for notice to Mr. Balwani) |
| 2 | 15004 | Emails to Mr. Balwani regarding capabilities of Theranos' technology | Stipulation | Not Offered for the Truth (Offered for notice to Mr. Balwani) |
| 3 | 7286 | Emails to Mr. Balwani outlining status of Theranos assays "for fda filing" | Stipulation | Not Offered for the Truth (Offered for notice to Mr. Balwani) |
| 4 | 20827 | Emails to Mr. Balwani about status of Dr. Suraj Saksena's application for clinical lab director license | Stipulation | Not Offered for the Truth (Offered for notice to Mr. Balwani) |
| 5 | 15058 | Emails to Mr. Balwani and attachments regarding Theranos' work with GSK | Stipulation | Not Offered for the Truth (Offered for notice to Mr. Balwani) |
| 6 | 20817 | FDA's 510(k) approval of Theranos' HSV-1 assay | Rule 901; Rule 902(5); Stipulation | Rule 803(8); Alternatively, Not Offered for the Truth (Offered for fact of legal relationship) |
| 7 | 20826 | FDA's CLIA waiver of Theranos' HSV-1 assay | Rule 901; Stipulation | Rule 803(8); Alternatively, Not Offered for the Truth (Offered for fact of legal relationship & Notice to Mr. Balwani) |
| 8 | 15029 | Email from Ms. Holmes to FDA with attachments listing Theranos assays currently conducted on Wellness Center samples and assays planned for future use on such samples | Stipulation | Not Offered for the Truth (Offered for fact of disclosure to FDA) |
| 9 | 20830 | Patent application for Theranos' modifications to commercial predicate devices | Court can take judicial notice of authenticity; Rule 901 | Not Offered for the Truth (Offered for fact of filing of patent application) |

### C. The Exhibits May Be Offered Through an Orrick Paralegal

Mr. Balwani seeks to offer all the attached exhibits through Mr. Okano, a paralegal at Orrick, Herrington and Sutcliffe LLP. No rule bars admitting these exhibits through a witness like Mr. Okano, who has no connection to their underlying content. The Court and the government

1    recently adopted this position when admitting Trial Exhibit 2065—an email chain among
2    Mr. Balwani, Ms. Holmes, and Mr. Holmes—through Mr. Mosley, a Theranos investor with no
3    connection to the events described in the email. *See* 5/10/2022 Trial Tr. at 5115 (government
4    asserting that "it doesn't matter that the witness who is on the stand wasn't on the email"; "a
5    particular witness on the stand is not relevant to the analysis"; "the test is not whether meaningful
6    cross can be conducted based upon who's on the stand"—that is "not the measure of whether the
7    Court should admit a particular document"); *id.* at 5127 (Court admitting email even though "this
8    witness … wasn't here and didn't know anything about [the events described in the email], [and]
9    he just happens to … be on the stand testifying at the time that this email is going to come up").
10   That was not an isolated occurrence. *See, e.g.*, 4/6/2022 Trial Tr. at 2328–2330 (government
11   offering and Court admitting email from Theranos to Walgreens and attachments, including
12   Schering-Plough report, through Dr. Constance Cullen after confirming that she was "not on
13   either of the emails").
14         Ninth Circuit law also instructs that a witness through whom written evidence is offered
15   need not have personal knowledge of the events discussed in the writing so long as his testimony
16   is limited to his direct perception of the writing and its contents. According to Rule 602, "[a]
17   witness may testify to a matter only if evidence is introduced sufficient to support a finding that
18   the witness has personal knowledge of the matter." Fed. R. Evid. 602. This requires that the
19   witness have some "knowledge produced by the direct involvement of the senses." *United States*
20   *v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014). When a witness is asked solely to read a document,
21   his testimony directly involves the sense of sight, which provides personal knowledge of the
22   document's contents. *See, e.g.*, *United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir. 2001)
23   (under Rule 701's analogous personal-knowledge requirement, witnesses could render opinions
24   on documents where they "review[ed] those documents before stating their opinions to the jury"
25   because their "opinions were 'rationally based on the[ir] perception' of the documents" (alteration
26   in original)); *Barrowman v. Wright Med. Tech. Inc.*, No. C15-0717, 2017 WL 4161688, at *2
27   (W.D. Wash. Sept. 19, 2017) ("Accordingly, personal knowledge 'is not strictly limited to
28   activities in which the declarant has personally participated [because] personal knowledge can

come from review of the contents of files and records.'" (alteration in original)). The requisite knowledge can even arise from a witness's "role and participation in the litigation," because that experience "gives him knowledge of some facts from reviewing records." *Barrowman*, 2017 WL 4161688, at *3. Here, where the witness will be asked only to review the exhibits before him,[5] that witness has the required personal knowledge.

### III. CONCLUSION

For the reasons above, Mr. Balwani asks that the Court grant this motion.

DATED: June 1, 2022                                  Respectfully submitted,

                                                                            ORRICK HERRINGTON & SUTCLIFFE LLP

                                                      By:   */s/ Jeffrey B. Coopersmith*
                                                              Jeffrey B. Coopersmith

                                                              Attorney for Defendant
                                                              RAMESH "SUNNY" BALWANI

---

[5] Mr. Okano may also explain how Trial Exhibit 20817, FDA's 510(k) approval of Theranos' HSV-1 IgG assay, and Trial Exhibit 20830, Theranos' provisional patent application, can be publicly accessed online based on his personal experience navigating the FDA's and PTO's websites. *See* Walsh Decl., Exs. 6, 9.