```
 1
 2                   UNITED STATES DISTRICT COURT

 3                  NORTHERN DISTRICT OF CALIFORNIA

 4                        SAN JOSE DIVISION

 5
      UNITED STATES OF AMERICA,        )
 6                                     )   CR-18-00258-EJD
                        PLAINTIFF,     )
 7                                     )   SAN JOSE, CALIFORNIA
                VS.                    )
 8                                     )   MARCH 11, 2022
      RAMESH SUNNY BALWANI,            )
 9                                     )   VOLUME 3
                        DEFENDANT.     )
10      _____  )   PAGES 498 - 634

11
                        TRANSCRIPT OF PROCEEDINGS
12             BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
      A P P E A R A N C E S:
14
        FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                             BY:  JOHN C. BOSTIC
                                    JEFFREY B. SCHENK
16                             150 ALMADEN BOULEVARD, SUITE 900
                               SAN JOSE, CALIFORNIA 95113
17
                               BY:  ROBERT S. LEACH
18                                  KELLY VOLKAR
                               1301 CLAY STREET, SUITE 340S
19                             OAKLAND, CALIFORNIA 94612

20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21      OFFICIAL COURT REPORTERS:
                               IRENE L. RODRIGUEZ, CSR, RMR, CRR
22                             CERTIFICATE NUMBER 8074
                               LEE-ANNE SHORTRIDGE, CSR, CRR
23                             CERTIFICATE NUMBER 9595

24
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3     FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                               BY:  SHAWN ESTRADA
 4                                  SACHI SCHURICHT
                               THE ORRICK BUILDING
 5                             405 HOWARD STREET
                               SAN FRANCISCO, CALIFORNIA 941057
 6
                               BY:  JEFFREY COOPERSMITH
 7                                  AMANDA MCDOWELL
                               701 FIFTH AVENUE, SUITE 5600
 8                             SEATTLE, WASHINGTON 98104

 9                             BY:  STEPHEN CAZARES
                               77 SOUTH FIGUEROA STREET, SUITE 3200
10                             LOS ANGELES, CALIFORNIA 90017

11                             BY:  AMY WALSH
                               51 W 52ND STREET
12                             NEW YORK, NEW YORK 10019

13

14     ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
                               BY:  MADDI WACHS, PARALEGAL
15                                  SARA SLATTERY, PARALEGAL

16                             UNITED STATES POSTAL INSPECTION SERVICE
                               BY:  CHRISTOPHER MCCOLLOW
17
                               FEDERAL BUREAU OF INVESTIGATION
18                             BY:  MARIO C. SCUSSEL

19                             UNITED STATES FOOD & DRUG
                               ADMINISTRATION
20                             BY:  GEORGE SCAVDIS

21                             JURY CONSULTANT
                               BY:  DAVID PERROTT
22

23

24

25
```

|   | 1 | SAN JOSE, CALIFORNIA                         MARCH 11, 2022 |
|---|---|---|

```
                          1    SAN JOSE, CALIFORNIA                    MARCH 11, 2022

09:12AM   2                    P R O C E E D I N G S

09:18AM   3         (COURT CONVENED AT 9:18 A.M.)

09:18AM   4         (PROSPECTIVE JURY PANEL OUT AT 9:18 A.M.)

09:19AM   5              THE COURT:  GOOD MORNING EVERYONE.  I APOLOGIZE FOR

09:19AM   6    THE BRIEF DELAY.  LET'S GO ON THE RECORD IN 18-258,

09:19AM   7    UNITED STATES VERSUS RAMESH "SUNNY" BALWANI.

09:19AM   8         FOR THE GOVERNMENT WHO APPEARS?

09:19AM   9              MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  KELLY VOLKAR

09:19AM  10    ON BEHALF OF THE GOVERNMENT.

09:19AM  11         I'M JOINED BY JEFF SCHENK, JOHN BOSTIC, ROBERT LEACH, AND

09:19AM  12    OUR CASE AGENT, CHRISTOPHER MCCOLLOW, AND OUR PARALEGAL,

09:19AM  13    MADDI WACHS.

09:19AM  14              THE COURT:  THANK YOU.  GOOD MORNING, EVERYONE.

09:19AM  15         FOR THE DEFENDANTS.

09:19AM  16              MR. COOPERSMITH:  GOOD MORNING.

09:19AM  17         JEFF COOPERSMITH FOR MR. BALWANI, WHO IS PRESENT, AND MY

09:19AM  18    COLLEAGUES ARE PRESENT, AMY WALSH, STEPHEN CAZARES,

09:19AM  19    SHAWN ESTRADA --

09:19AM  20              MR. RAFAT:  THE SOUND SYSTEM IS NOT ON.

09:19AM  21              THE COURT:  JUST A SECOND, SIR.  THANK YOU.  I'M

09:19AM  22    SORRY.

09:19AM  23              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:19AM  24         JEFF COOPERSMITH FOR MR. BALWANI.  HE'S PRESENT.

09:19AM  25         I'M JOINED BY MY COLLEAGUES AMY WALSH, SACHI SCHURICHT,
```

09:20AM 1    SHAWN ESTRADA, AARON BRECHER, AND AMANDA MCDOWELL.

09:20AM 2         DAVID PERROTT, OUR JURY CONSULTANT, IS ALSO PRESENT.

09:20AM 3              THE COURT:  THANK YOU.  GOOD MORNING.

09:20AM 4         THIS IS THE DATE AND TIME SET TO HEAR A MOTION FILED BY

09:20AM 5    THE DEFENSE, IT'S DOCUMENT 1327, AND I HAVE READ THAT.

09:20AM 6         I'VE READ 1337, WHICH IS THE GOVERNMENT'S OPPOSITION, AND

09:20AM 7    THEN THE DEFENSE REPLY --

09:20AM 8              MR. RAFAT:  YOUR HONOR, I APOLOGIZE FOR

09:20AM 9    INTERRUPTING.  THE SOUND SYSTEM IS OFF, AND THAT MEANS THE

09:20AM 10   COURTHOUSE IS NOT PROVIDING ACCESS.

09:20AM 11             THE COURT:  SIR, COULD YOU, FIRST OF ALL, STATE YOUR

09:20AM 12   NAME.

09:20AM 13             MR. RAFAT:  THE SOUND SYSTEM IS NOT ON.  THE COURT

09:20AM 14   IS DENYING --

09:20AM 15             THE COURT:  WOULD YOU PLEASE STATE YOUR NAME?

09:21AM 16             MR. RAFAT:  THE SOUND --

09:21AM 17             THE COURT:  EXCUSE ME.  COULD YOU CALL THE CSO UP

09:21AM 18   HERE AND MAYBE THEY CAN HELP THIS GENTLEMAN?  I'M NOT ABLE TO

09:21AM 19   COMMUNICATE WITH HIM.

09:22AM 20        (PAUSE IN PROCEEDINGS.)

09:22AM 21             THE COURT:  GOOD MORNING.  I SEE A -- PARDON ME,

09:22AM 22   LADIES AND GENTLEMEN.  I SEE ONE OF OUR COURT SECURITY OFFICER

09:23AM 23   IS PRESENT.

09:23AM 24        SIR, THERE WAS A GENTLEMAN HERE WHO WAS EXPRESSING SOME

09:23AM 25   CONCERN, AND I WANTED HIM TO SPEAK WITH YOU ABOUT HIS ISSUE,

| | | |
|---|---|---|
| 09:23AM | 1 | AND THEN HAVE YOU LET ME KNOW WHAT HIS ISSUE WAS SO WE COULD |
| 09:23AM | 2 | CORRECT IT. |
| 09:23AM | 3 | COURT SECURITY OFFICER:  OKAY, YOUR HONOR. |
| 09:23AM | 4 | THE COURT:  I BELIEVE HE'S LEFT THE COURTROOM NOW |
| 09:23AM | 5 | UNFORTUNATELY.  I CAN DESCRIBE HIM FOR YOU.  HE'S A GENTLEMAN, |
| 09:23AM | 6 | AND I THINK HE'S WEARING A T-SHIRT TODAY. |
| 09:23AM | 7 | AND IF YOU SEE HIM, YES, IF YOU SEE HIM, COULD YOU MAYBE |
| 09:23AM | 8 | INQUIRE AS TO WHAT IT IS THAT HE NEEDS US TO DO TO ASSIST HIM? |
| 09:23AM | 9 | I WASN'T ABLE TO UNDERSTAND HIM. |
| 09:23AM | 10 | COURT SECURITY OFFICER:  YES.  FINE.  6-FOOT |
| 09:23AM | 11 | T-SHIRT? |
| 09:23AM | 12 | THE COURT:  YES. |
| 09:23AM | 13 | COURT SECURITY OFFICER:  I DO RECOGNIZE HIM. |
| 09:23AM | 14 | THE COURT:  THANK YOU VERY MUCH.  AND MAKE SURE YOU |
| 09:23AM | 15 | LET HIM KNOW THAT I'M HERE TO HELP HIM AND I WANT HIM TO |
| 09:23AM | 16 | UNDERSTAND WHAT HIS ISSUE IS, BUT HE'S LEFT THE COURTROOM NOW. |
| 09:23AM | 17 | GREAT.  THANK YOU. |
| 09:23AM | 18 | COURT SECURITY OFFICER:  THANK YOU, YOUR HONOR. |
| 09:24AM | 19 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:24AM | 20 | COUNSEL, YOU CAN TAKE YOUR MASKS OFF IF YOU WOULD LIKE. |
| 09:24AM | 21 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 09:24AM | 22 | MR. BRECHER:  THANK YOU, YOUR HONOR.  I WAS JUST |
| 09:24AM | 23 | ABOUT TO ASK. |
| 09:24AM | 24 | GOOD MORNING, YOUR HONOR.  AARON BRECHER FOR MR. BALWANI. |
| 09:24AM | 25 | MR. COOPERSMITH:  YOUR HONOR, I'M SORRY, COULD I |

09:24AM 1    HAVE A QUICK CONVERSATION WITH MS. ROBINSON?  THERE'S A

09:24AM 2    POTENTIAL ISSUE.

09:24AM 3              THE COURT:  WITH WHO?

09:24AM 4              MR. COOPERSMITH:  WITH MS. ROBINSON.

09:24AM 5         (DISCUSSION OFF THE RECORD.)

09:24AM 6              MR. COOPERSMITH:  OKAY.  I'M SORRY, YOUR HONOR.

09:24AM 7              THE COURT:  THAT'S QUITE ALL RIGHT.  YOU SHOULD PULL

09:24AM 8    THAT MICROPHONE OVER.

09:24AM 9              MR. BRECHER:  YES, OF COURSE.

09:24AM 10        IS THAT BETTER, YOUR HONOR?

09:24AM 11             THE COURT:  YES.  THANK YOU.

09:24AM 12             MR. BRECHER:  I EXPECT THE COURT IS QUITE FAMILIAR

09:24AM 13   WITH THE SUBSTANCE OF THE EVIDENCE THAT WAS ADMITTED IN THE

09:24AM 14   HOLMES TRIAL ABOUT THE ALTERATION OF THESE REPORTS ABOUT

09:24AM 15   THERANOS'S PARTNERSHIPS WITH VARIOUS PHARMACEUTICAL COMPANIES,

09:24AM 16   INCLUDING IN PARTICULAR THE ADDITION OF SOME OF THOSE

09:25AM 17   COMPANIES' LOGOS.

09:25AM 18        SO UNLESS YOUR HONOR HAS QUESTIONS ABOUT THAT, I THINK

09:25AM 19   I'LL DIVE RIGHT INTO THE ARGUMENT IF THE COURT DOESN'T MIND.

09:25AM 20             THE COURT:  NO, PLEASE.

09:25AM 21             MR. BRECHER:  AS THE COURT MAY HAVE SEEN FROM OUR

09:25AM 22   PAPERS, THE HOLMES JURY FOUND THIS EVIDENCE HIGHLY SIGNIFICANT

09:25AM 23   AS TO THE QUESTION OF INTENT IN REACHING ITS DECISION.

09:25AM 24        BUT THE GOVERNMENT CANNOT BRING THAT EVIDENCE INTO THIS

09:25AM 25   TRIAL, AND THAT'S BECAUSE DOING SO WOULD RISK CONFUSING THE

09:25AM 1    JURY BY PAINTING A MISLEADING PICTURE OF MR. BALWANI'S ROLE,

09:25AM 2    AND IT WOULD ALSO FAIL TO SATISFY THE STANDARDS REQUIRED FOR A

09:25AM 3    VICARIOUS LIABILITY THEORY.

09:25AM 4         NOW, THE GOVERNMENT HAS TWO THEORIES THAT ITS OPPOSITION

09:25AM 5    BRIEF HAS PROFFERED.  THE FIRST IS THAT THERE IS SUFFICIENT

09:25AM 6    CIRCUMSTANTIAL EVIDENCE TO SUGGEST THAT MR. BALWANI HAD DIRECT

09:25AM 7    PERSONAL KNOWLEDGE OF THESE CHANGES AND THAT THEY WERE

09:25AM 8    UNAUTHORIZED.

09:25AM 9         AND THE SECOND THEORY IS THAT THE EVIDENCE IS ADMISSIBLE

09:25AM 10   UNDER A VICARIOUS LIABILITY THEORY AS THE ACTS OF A -- EXCUSE

09:25AM 11   ME, OF A COSCHEMER OR COCONSPIRATOR.

09:26AM 12        BUT I THINK THE GOVERNMENT IS MISTAKEN ON BOTH OF THOSE

09:26AM 13   THEORIES, AND I'D LIKE TO START WITH THE FIRST.

09:26AM 14        AS YOUR HONOR KNOWS, THE NINTH CIRCUIT IN THE PHILLIPS

09:26AM 15   DECISION, WHICH I KNOW HAS BEEN CITED EXTENSIVELY THROUGHOUT

09:26AM 16   THESE PROCEEDINGS, SAID YOU CANNOT IMPUTE KNOWLEDGE OR INTENT

09:26AM 17   TO A COSCHEMER OR A COCONSPIRATOR.  THAT HAS TO BE SHOWN

09:26AM 18   PERSONALLY.

09:26AM 19        AND IT IS ERROR TO ADMIT EVIDENCE OF PURPORTEDLY FALSIFIED

09:26AM 20   EVIDENCE WITHOUT SOME SHOWING THAT THE DEFENDANT KNEW, HAD

09:26AM 21   ACTUAL KNOWLEDGE, NOT IMPUTED KNOWLEDGE, ABOUT THAT FALSITY.

09:26AM 22        I DON'T SEE HOW THE GOVERNMENT CAN GET TO WHERE THEY CLAIM

09:26AM 23   THEY WANT TO BE ON THAT THEORY, AND THAT'S WHERE I'M STARTING.

09:26AM 24        YOUR HONOR, THERE IS NOT ONE IOTA OF EVIDENCE THAT

09:26AM 25   MR. BALWANI KNEW OF AN UNAUTHORIZED CHANGE TO ANY OF THESE

09:26AM 1     REPORTS.

09:26AM 2          MR. BALWANI HAD ALMOST NO CONTACT WITH THESE

09:26AM 3     PHARMACEUTICAL COMPANIES.  THOSE RELATIONSHIPS WERE MANAGED BY

09:27AM 4     MS. HOLMES.

09:27AM 5          INDEED, AS THE GOVERNMENT HAS POINTED OUT IN ITS BRIEFING

09:27AM 6     AND AS THEY INTRODUCED AT THE HOLMES TRIAL, MANY OF THESE

09:27AM 7     RELATIONSHIPS, THE PARTNERSHIPS THAT LED TO THESE REPORTS HAD

09:27AM 8     EITHER REACHED THEIR CONCLUSION OR WERE ON THEIR WAY TO THEIR

09:27AM 9     CONCLUSION BY THE TIME MR. BALWANI EVEN JOINED THE COMPANY.

09:27AM 10         MR. BALWANI ALSO RECEIVED, BEFORE HE JOINED THERANOS IN

09:27AM 11    SEPTEMBER 2009, A COMMUNICATION IN AUGUST 2009 TELLING HIM THAT

09:27AM 12    THERANOS'S TECHNOLOGY HAD BEEN, QUOTE, ROBUSTLY VALIDATED BY

09:27AM 13    ITS PHARMACEUTICAL PARTNERS AND IDENTIFYING THESE VERY SAME

09:27AM 14    COMPANIES.

09:27AM 15         IN OTHER WORDS, YOUR HONOR, MR. BALWANI GOT THE SAME

09:27AM 16    REPRESENTATION THAT THE INVESTORS LATER GOT ABOUT

09:27AM 17    PHARMACEUTICAL COMPANIES COMPREHENSIVELY VALIDATING THERANOS'S

09:27AM 18    TECHNOLOGY.

09:27AM 19         WE KNOW THAT THERE'S NO EVIDENCE THAT MR. BALWANI EVER SAW

09:27AM 20    WHAT I'LL CALL THE ORIGINAL OR UNALTERED VERSIONS OF THE GSK,

09:27AM 21    THE GLAXOSMITHKLINE REPORT, OR OF THE PFIZER REPORT.

09:27AM 22         AS FOR THE SCHERING-PLOUGH REPORT, THE GOVERNMENT SEEMS TO

09:28AM 23    HANG ITS HAT ON A SINGLE EMAIL, MARCH 19TH, 2010, IN WHICH

09:28AM 24    MR. BALWANI IS COPIED AND HE'S -- AND THAT ATTACHMENT IS THE

09:28AM 25    UNALTERED VERSION OF THE SCHERING-PLOUGH REPORT.

09:28AM 1     AND THEN A MONTH LATER, ON APRIL 14TH, 2010, THERE'S AN

09:28AM 2  EMAIL TO WALGREENS ON WHICH MR. BALWANI IS ALSO COPIED THAT

09:28AM 3  CONTAINS THE -- TO USE MR. SCHENK'S TERMS IN THE CLOSING

09:28AM 4  ARGUMENT IN THE HOLMES TRIAL, THE ENHANCED VERSION OF ALL THREE

09:28AM 5  REPORTS.  THAT'S PRETTY MUCH IT.

09:28AM 6     AND FROM THAT SINGLE INCIDENCE, THE GOVERNMENT

09:28AM 7  EXTRAPOLATES A THEORY UNDER WHICH A JURY COULD FAIRLY CONCLUDE

09:28AM 8  THAT MR. BALWANI WOULD HAVE SEEN THE PRESENCE OR ABSENCE OF A

09:28AM 9  LOGO IN AN ATTACHMENT A MONTH APART AND ATTACHED SOME SORT OF

09:28AM 10  SIGNIFICANCE TO THAT TO SUGGEST HE KNEW IT WAS UNALTERED -- OH,

09:28AM 11  I'M SORRY, YOUR HONOR.

09:28AM 12       THE COURT:  NO.  GO AHEAD.

09:28AM 13       MR. BRECHER:  FRANKLY, YOUR HONOR, I JUST DON'T

09:28AM 14  THINK THAT THAT HOLDS WATER, AND I THINK IN ANOTHER CONTEXT THE

09:29AM 15  GOVERNMENT WOULD AGREE.  AND, INDEED, THEY HAVE SHOWN THEIR

09:29AM 16  AGREEMENT WITH THIS GENERAL PRINCIPLE IN BOTH WORD AND DEED.

09:29AM 17     I'LL START WITH WORD.  YOUR HONOR WILL LIKELY REMEMBERS

09:29AM 18  THAT MS. HOLMES'S TESTIMONY IN HER OWN TRIAL WAS THAT SHE DID

09:29AM 19  NOT BELIEVE SHE HAD DONE ANYTHING WRONG AND BY SHARING THE

09:29AM 20  ENHANCED VERSIONS OF AT LEAST THE PFIZER AND THE GSK REPORTS

09:29AM 21  WITH THOSE RESPECTIVE COMPANIES, THERE COULDN'T HAVE BEEN ANY

09:29AM 22  INTENT TO DEFRAUD.

09:29AM 23     BUT HERE'S WHAT MR. SCHENK HAD TO SAY ABOUT THAT AT

09:29AM 24  CLOSING ARGUMENT.  HE SAID, QUOTE, "MS. HOLMES TOLD YOU ON THE

09:29AM 25  STAND THAT SHE APPLIED THE LOGOS TO THOSE DOCUMENTS.  I THINK

09:29AM  1    FROM THAT TO SUGGEST I NEVER WOULD HAVE INTENDED, THOUGHT I WAS

09:29AM  2    DEFRAUDING ANYBODY IF I HAD GIVEN IT BACK TO THE PHARMA

09:29AM  3    COMPANIES."

09:29AM  4         BUT THEN HE GOES ON.  "IT CERTAINLY ISN'T ON THE PHARMA

09:29AM  5    COMPANIES TO DISCOVER THAT AND TO REPORT IT BACK TO THERANOS."

09:29AM  6         YOUR HONOR, IN OTHER WORDS, ACCORDING TO THE GOVERNMENT,

09:29AM  7    EVEN THOUGH THE ENHANCED VERSIONS ARE SHARED WITH THE VERY SAME

09:29AM  8    COMPANY WHO'S RESPONSIBLE FOR THESE RELATIONSHIPS AND WHO HAS

09:29AM  9    THE AUTHORITY TO GIVE THERANOS PERMISSION TO USE THEIR LOGOS,

09:30AM 10    THERE'S NO REASON TO BELIEVE THAT THEY WOULD HAVE DISCOVERED

09:30AM 11    IT, EVEN THOUGH IT WAS SENT TO THEM.

09:30AM 12         THAT IS A PRETTY SHARP CONTRAST TO WHAT THE GOVERNMENT IS

09:30AM 13    ARGUING HERE, WHERE MR. BALWANI IS SOMEHOW SUPPOSED TO DIVINE

09:30AM 14    SOME UNAUTHORIZED USE FROM TWO EMAILS A MONTH APART.

09:30AM 15         BUT THE SECOND EXAMPLE, YOUR HONOR, FRANKLY COMES FROM THE

09:30AM 16    GOVERNMENT'S BRIEFING IN THIS VERY MOTION.  ITS OPPOSITION SAYS

09:30AM 17    AT LEAST THREE TIMES THAT IN FEBRUARY 2010, SO NOT MARCH,

09:30AM 18    MR. BALWANI SAVED A COPY OF THE UNALTERED SCHERING-PLOUGH

09:30AM 19    REPORT, AND THEY CITE A METADATA STRING.

09:30AM 20         I'M SORRY TO SAY, YOUR HONOR, THE GOVERNMENT IS MISTAKEN

09:30AM 21    AND THEY MISINTERPRETED WHAT THAT DATA MEANS.  THE GOVERNMENT

09:30AM 22    CLAIMS THERE'S A DATE CREATED FIELD, WHICH IS RIGHT, WHICH SAYS

09:30AM 23    FEBRUARY 10TH OR FEBRUARY 12TH OF 2010.  THAT'S TRUE.

09:30AM 24         BUT THAT FIELD DOES NOT TELL YOU THAT MR. BALWANI SAVED IT

09:30AM 25    ON THAT DATE.

09:31AM 1        NOW, I KNOW MOST NORMAL PEOPLE DON'T FIND METADATA QUITE

09:31AM 2   AS SCINTILLATING AS I DO, SO I'LL TRY TO OFFER A MORE CONCRETE

09:31AM 3   EXAMPLE.

09:31AM 4        MANY JUDGES THROUGHOUT THE COUNTRY HAVE CHAMBERS

09:31AM 5   PROCEDURES ABOUT HOW THEY LIKE EXHIBITS MARKED AND THE LIKE.

09:31AM 6        IF MS. ROBINSON WOULD SEND ME AN EMAIL TODAY WITH

09:31AM 7   YOUR HONOR'S CHAMBERS PROCEEDING AND THAT DOCUMENT WERE CREATED

09:31AM 8   IN JANUARY OF 2017, THE GOVERNMENT COULD HAVE THE SAME

09:31AM 9   METADATA, THE EXACT SAME EVIDENCE, AND TELL YOU THAT I

09:31AM 10  DOWNLOADED THAT DOCUMENT TO MY LAW FIRM SERVER IN JANUARY 2017,

09:31AM 11  BUT OBVIOUSLY THAT'S NOT TRUE BECAUSE MS. ROBINSON WAS NOT

09:31AM 12  WORKING IN YOUR CHAMBERS AT THAT TIME AND I WASN'T WORKING IN

09:31AM 13  MY CURRENT FIRM AT THAT TIME.

09:31AM 14        BUT WE DON'T NEED TO GUESS, AND THE COURT DOES NOT NEED TO

09:31AM 15  GUESS ABOUT WHAT THIS DATE MEANS OR WHAT IT COULD MEAN, BECAUSE

09:31AM 16  WE KNOW FROM THE FILE PATH WHAT IT MEANS.  THE FILE PATH

09:31AM 17  INCLUDES THE SUBJECT LINE OF THE MARCH 2010 EMAIL HEADER, RE:

09:31AM 18  TIMES TO TALK.  THAT'S THE PARENT DOCUMENT.  THAT IS THE SOURCE

09:31AM 19  OF THE UNDERLYING ATTACHMENT.

09:32AM 20        NOW, YOUR HONOR, I'M NOT SUGGESTING THAT THIS MATTERS TO

09:32AM 21  THE ARGUMENTS.  I DON'T THINK WHETHER MR. BALWANI GOT IT IN

09:32AM 22  FEBRUARY OR GOT IT IN MARCH, I DON'T THINK ANYTHING TURNS ON

09:32AM 23  THAT.

09:32AM 24        BUT IT'S A TELLING POINT, YOUR HONOR, BECAUSE THE

09:32AM 25  GOVERNMENT LOOKED AT THIS INFORMATION, THEY EXAMINED IT

09:32AM 1    CLOSELY, THE FILE PATH IS A VERY SHORT STRING OF WORDS, AND

09:32AM 2    THEY DREW A CONCLUSION THAT TURNED OUT TO BE INCORRECT, AND

09:32AM 3    THEY REPEATED IT NUMEROUS TIMES IN THEIR BRIEF.

09:32AM 4        I THINK THAT'S A PERFECTLY INNOCENT MISTAKE, AND I'M

09:32AM 5    CONFIDENT THE GOVERNMENT WOULD AGREE.

09:32AM 6        IF I WERE TO SUGGEST THAT IT WERE ANYTHING OTHER THAN A

09:32AM 7    MISTAKE, THAT IT CASTS DOUBT SOMEHOW ON THE INTEGRITY OF THE

09:32AM 8    GOVERNMENT'S SUBMISSIONS, I THINK IT WOULD RUFFLE SOME FEATHERS

09:32AM 9    WITH MY FRIENDS ON THE OTHER SIDE.

09:32AM 10       BUT THE INFERENCES THERE ARE ORDERS OF MAGNITUDE STRONGER

09:32AM 11   THAN WHAT THEY'RE ASKING THE JURY TO SAY ABOUT MR. BALWANI,

09:32AM 12   THAT HE SHOULD HAVE NOTICED, THAT THE JURY CAN FAIRLY CONCLUDE

09:32AM 13   THAT HE DID NOTICE THE PRESENCE OR ABSENCE OF A LOGO ON

09:32AM 14   DOCUMENTS THAT HE RECEIVED A MONTH APART.  IT JUST SEEMS ABSURD

09:32AM 15   TO ME, AND I THINK THAT PHILLIPS FORBIDS THAT KIND OF SHOWING.

09:33AM 16       MOVING ON TO VICARIOUS LIABILITY, YOUR HONOR, IT'S A

09:33AM 17   PRETTY SCARY CONCEPT, TO BE FRANK, YOU KNOW, THE IDEA OF BEING

09:33AM 18   CRIMINALLY RESPONSIBLE FOR SOMETHING THAT SOMEONE ELSE DOES.

09:33AM 19       AND THE LAW RECOGNIZES THAT SCARINESS.  THAT'S WHY THERE

09:33AM 20   ARE IMPORTANT GUARDRAILS AROUND WHEN IT'S APPROPRIATE TO HOLD

09:33AM 21   SOMEONE ACCOUNTABLE FOR THE ACTS OF ANOTHER.

09:33AM 22       IN THIS CASE THE RELEVANT CATEGORIES ARE COCONSPIRATOR

09:33AM 23   LIABILITY AND COSCHEMER LIABILITY.

09:33AM 24       BUT IN ORDER FOR THAT TO COME BEFORE A JURY, YOUR HONOR

09:33AM 25   MUST FIND BY A PREPONDERANCE OF THE EVIDENCE THAT THE ELEMENTS,

09:33AM 1     THE NECESSARY ELEMENTS OF THOSE SHOWINGS HAVE BEEN MET.

09:33AM 2         AND THE TENOR OF THE GOVERNMENT'S OPPOSITION SUGGEST THAT

09:33AM 3     YOUR HONOR CAN JUST LOOK AT A FEW DISPARATE FACTS AND STRING

09:33AM 4     TOGETHER A FEW INFERENCES, SOME SPECULATION, AND SORT OF SHAKE

09:33AM 5     IT IN A BOX AND SAY, WELL, I GUESS IT'S A JURY QUESTION.

09:33AM 6         BUT THAT'S NOT WHAT THE LAW REQUIRES.  THE LAW REQUIRES

09:34AM 7     THE COURT TO LOOK AT ALL OF THE FACTS PROFFERED BY THE PARTIES

09:34AM 8     IN WHATEVER FORMAT YOUR HONOR CHOOSES TO CONSIDER THE RULE 104

09:34AM 9     ISSUE AND DECIDE ON A PREPONDERANCE STANDARD.

09:34AM 10        SO WHAT IS THERE?  THE GOVERNMENT'S BRIEF TELLS YOU ABOUT

09:34AM 11    A HOST OF CONDUCT IN BOTH TESTIMONY AND DOCUMENTS FROM

09:34AM 12    NOVEMBER 2013 TO OCTOBER OF 2015.

09:34AM 13        YOUR HONOR, NONE OF THAT TELLS US ABOUT WHETHER THERE WAS

09:34AM 14    A CONSPIRACY OR SCHEME TO DEFRAUD IN APRIL 2010, AND ANY

09:34AM 15    SUGGESTION TO THE CONTRARY DEFIES NOT ONLY THE LAWS OF

09:34AM 16    EVIDENCE, BUT THE LAWS OF REASON, AND NOT TO MENTION SPACE AND

09:34AM 17    TIME, FRANKLY.

09:34AM 18        WHAT WE HAVE IN 2010 IS MR. BALWANI WORKED AT THERANOS.

09:34AM 19    MR. BALWANI WAS IN CHARGE AND HELPED LEAD THE RETAIL

09:34AM 20    PARTNERSHIPS, AND MR. BALWANI AND MS. HOLMES WERE IN A ROMANTIC

09:34AM 21    PARTNERSHIP.  THAT'S IT.

09:34AM 22        I DON'T THINK THAT THAT WOULD EVEN SURVIVE A SUMMARY

09:35AM 23    JUDGMENT MOTION IN A CIVIL CASE, YOUR HONOR.

09:35AM 24        WHAT THE GOVERNMENT IS ASKING YOU TO DO IS NOT TO DRAW

09:35AM 25    INFERENCES IN THEIR FAVOR -- AND, AGAIN, THIS IS NOT SOME

09:35AM 1    RULE 29 MOTION WHERE THE COURT IS REQUIRED TO DO SO.

09:35AM 2         THEY'RE ASKING FOR LEAPS ACROSS THESE HUGE EVIDENTIARY

09:35AM 3    GAPS THAT THEY DON'T FILL WITH ANYTHING AND THEY TRY TO

09:35AM 4    BACKFILL WITH EVIDENCE FROM LITERALLY YEARS LATER.

09:35AM 5         THAT'S NOT GOOD ENOUGH, YOUR HONOR.

09:35AM 6         THE COURT WOULD ALSO HAVE TO CONSIDER NOT JUST THE

09:35AM 7    GOVERNMENT'S EVIDENCE, BUT THE COMPLETE PICTURE.  THE COURT

09:35AM 8    WOULD HAVE TO CONSIDER -- AND THE GOVERNMENT DOESN'T GRAPPLE

09:35AM 9    WITH THIS IN THEIR OPPOSITION -- THE EXCULPATORY AUGUST 2009

09:35AM 10   COMMUNICATION TO MR. BALWANI TELLING HIM EXACTLY WHAT INVESTORS

09:35AM 11   LATER HEARD, THAT PHARMACEUTICAL COMPANIES HAD ROBUSTLY

09:35AM 12   VALIDATED THE TECHNOLOGY.

09:35AM 13        FRANKLY, THE COURT WOULD HAVE TO CONSIDER OTHER ISSUES,

09:35AM 14   LIKE MR. BALWANI WAS LARGELY IN THAILAND FOR MANY OF HIS EARLY

09:35AM 15   MONTHS AT THE COMPANY, INCLUDING A TRIP FROM MID-FEBRUARY TO

09:35AM 16   EARLY MARCH.

09:35AM 17        THE COURT WOULD HAVE TO CONSIDER HIS DISTANCE CONCEPTUALLY

09:35AM 18   FROM THE PHARMACEUTICAL RELATIONSHIP, SOMETHING THAT MS. HOLMES

09:36AM 19   MANAGED AND NOT HIM.

09:36AM 20        AND WE KNOW THAT THAT'S NOT ENOUGH.  WE KNOW THAT'S NOT

09:36AM 21   ENOUGH BECAUSE OF YOUR OWN JURY INSTRUCTIONS IN THE HOLMES

09:36AM 22   TRIAL THAT A MERE BUSINESS PARTNERSHIP OR A MERE ROMANTIC

09:36AM 23   PARTNERSHIP WITHOUT MORE IS NOT ENOUGH TO SHOW A CONSPIRACY.

09:36AM 24        SO I DON'T THINK THE GOVERNMENT CAN GET THERE.

09:36AM 25        AND THEN LAST, YOUR HONOR, EVEN IF THE COURT IS INCLINED

09:36AM  1    TO DISAGREE WITH ME ON ONE OR MORE OF THOSE THEORIES, I THINK

09:36AM  2    RULE 403 BARS THE EVIDENCE, AND THAT'S BECAUSE WE HAVE THIS NEW

09:36AM  3    CONTEXT OF MS. HOLMES'S TESTIMONY.

09:36AM  4        MR. BALWANI FACES A RANGE OF CHARGES, TWO CONSPIRACY

09:36AM  5    COUNTS, BUT ALSO TEN MORE SUBSTANTIVE WIRE FRAUD COUNTS.

09:36AM  6        AND THE JURY CAN REACH DIFFERENT DECISIONS ON EACH OF

09:36AM  7    THOSE COUNTS AND, INDEED, THE HOLMES JURY DID SO, DIVIDING IT

09:36AM  8    SORT OF A THREE-WAY SPLIT, AS IT WERE, IN POSSIBLE OUTCOMES.

09:36AM  9        IF THE JURY DOES NOT UNDERSTAND THE FULL CONTEXT THAT IS

09:36AM  10   NOW AVAILABLE TO THE PARTIES, IT DANGEROUSLY INVITES THEM TO

09:37AM  11   SPECULATE, AND THAT'S WHAT IT WOULD BE, THAT IT WAS MR. BALWANI

09:37AM  12   WHO PERSONALLY PERFORMED THESE ACTS.  BUT THERE'S NO ADMISSIBLE

09:37AM  13   WAY OF OFFERING THE JURY THE REQUIRED CONTEXT WITHOUT

09:37AM  14   SACRIFICING MR. BALWANI'S CONFRONTATION RIGHTS.

09:37AM  15       MS. HOLMES TESTIFIED THAT SHE DID IT, BUT AS THE

09:37AM  16   GOVERNMENT POINTS OUT QUITE RIGHTLY IN ITS BRIEF, SHE DOESN'T

09:37AM  17   SAY WHETHER OR NOT MR. BALWANI KNEW.

09:37AM  18       AND THERE'S A REASON WE DON'T KNOW THE ANSWER TO THAT.

09:37AM  19   IT'S BECAUSE MR. LEACH, WHEN HE WAS QUITE EFFECTIVELY

09:37AM  20   CROSS-EXAMINING MS. HOLMES, LACKED ANY INCENTIVE TO ASK HER

09:37AM  21   THAT QUESTION.

09:37AM  22       AND MR. BALWANI, WHO WAS NOT PRESENT, LACKED THE

09:37AM  23   OPPORTUNITY TO ASK HER THAT QUESTION.

09:37AM  24       THINGS MAY CHANGE IF SHE SHOWS UP ON A WITNESS LIST AND

09:37AM  25   TESTIFIES.  BUT UNLESS THAT HAPPENS, THAT CRITICAL CONTEXT

513

09:37AM  1    NECESSARY FOR THE JURY TO UNDERSTAND WHO DID WHAT AND WHAT WERE

09:37AM  2    THE ROLES, IT WON'T COME INTO THE CASE.

09:37AM  3         AND IT'S A PRETTY SCARY HYPOTHETICAL WHEN YOU SORT OF SPIN

09:37AM  4    OUT WHAT WOULD HAPPEN.

09:37AM  5         BEFORE THE HOLMES TESTIMONY, THE GOVERNMENT'S PLAN, AND I

09:37AM  6    THINK IT WAS THE PLAN THAT THEY WERE EXECUTING IN THE HOLMES

09:38AM  7    TRIAL, WAS PERFECTLY ABOVE BOARD, RIGHT?  YOU PRESENT TO THE

09:38AM  8    JURY, HERE'S THE BEFORE VERSION OF THE PHARMACEUTICAL REPORT,

09:38AM  9    HERE'S THE AFTER.  THESE PHARMA WITNESSES ARE GOING TO SAY, WE

09:38AM 10    DIDN'T AUTHORIZE THESE CHANGES AND TO OUR KNOWLEDGE THEY

09:38AM 11    WEREN'T AUTHORIZED.  MEMBERS OF THE JURY, HERE'S AN EMAIL FROM

09:38AM 12    MS. HOLMES, YOU DRAW YOUR OWN CONCLUSION.

09:38AM 13         AND THAT WOULD BE FINE.

09:38AM 14         BUT NEW FACTS MEAN NEW LEGAL CONSEQUENCES.  NOW WE KNOW

09:38AM 15    MORE.

09:38AM 16         AND IT WOULD BE PATENTLY UNFAIR TO INVITE THE JURY TO LOOK

09:38AM 17    AT THE ONLY DEFENDANT WHO IS GOING TO BE IN FRONT OF THEM, AND

09:38AM 18    THAT'S MY CLIENT, AND SAY, YOU KNOW WHAT, MAYBE HE DID IT, WHEN

09:38AM 19    THE GOVERNMENT KNOWS THAT'S NOT TRUE, THE COURT -- AND I KNOW

09:38AM 20    YOUR HONOR WOULD BE DUTY BOUND TO SORT OF SIT IMPASSIVELY AND

09:38AM 21    NOT COMMENT ON THE EVIDENCE -- KNOWS IT'S NOT TRUE, AND THE

09:38AM 22    DEFENSE KNOWS IT'S NOT TRUE.

09:38AM 23         THE ONLY ONE SORT OF BEING MISLED HERE WOULD BE THE JURY.

09:38AM 24         JUST WRAPPING UP, HERE, YOUR HONOR, I REALLY THINK IT'S

09:38AM 25    IMPORTANT TO EMPHASIZE JUST HOW NARROW THE RELIEF THAT WE'RE

09:39AM 1    REQUESTING IS.  THE GOVERNMENT MADE SOME ALLUSION IN ITS

09:39AM 2    OPPOSITION TO THE NOTION OF THIS EVIDENCE BEING OFFERED TO

09:39AM 3    PROVE THE FALSITY OF REPRESENTATIONS LATER MADE TO INVESTORS.

09:39AM 4        THAT'S FINE.  BOTH PARTIES HAVE A PERFECTLY LEGITIMATE

09:39AM 5    INTEREST IN RELYING ON EVIDENCE ABOUT THERANOS'S RELATIONSHIP

09:39AM 6    WITH THESE PHARMACEUTICAL COMPANIES.

09:39AM 7        FROM THE DEFENSE PERSPECTIVE, IT'S FOR MR. BALWANI'S

09:39AM 8    INTENT.  IT'S WHAT HE WAS BEING TOLD IN REALTIME.

09:39AM 9        AND FROM THE GOVERNMENT'S PERSPECTIVE, IT'S FALSITY.  IT'S

09:39AM 10   THERANOS TOLD INVESTORS OUR TECHNOLOGY HAS BEEN COMPREHENSIVELY

09:39AM 11   VALIDATED BY PHARMACEUTICAL COMPANIES.

09:39AM 12       IF THE GOVERNMENT WANTS TO OFFER EVIDENCE TO SUGGEST THAT

09:39AM 13   THAT'S NOT TRUE, PERFECTLY FAIR GAME.  WE MAY HAVE TRIAL

09:39AM 14   OBJECTIONS DEPENDING ON THE QUESTIONS OR THE PARTICULAR

09:39AM 15   EXHIBITS OFFERED, BUT WE'RE NOT HERE TRYING TO STOP THEM FROM

09:39AM 16   DOING THAT.

09:39AM 17       WE'RE ONLY ASKING FOR A FAIR EXCLUSION OF THIS VERY NARROW

09:39AM 18   CATEGORY OF EVIDENCE, THIS EVIDENCE OF DOCTORING WHICH THERE'S

09:39AM 19   NO TETHER WHATSOEVER TO MY CLIENT AND IT COULD BE INCREDIBLY

09:40AM 20   PREJUDICIAL FOR THE JURY.

09:40AM 21       THANK YOU, YOUR HONOR.

09:40AM 22           THE COURT:  THANK YOU.

09:40AM 23       WOULD IT -- IF THE GOVERNMENT WERE TO INTRODUCE, VIA SOME

09:40AM 24   WITNESSES, THE FACT THAT, LET'S SAY FROM THE PHARMACEUTICAL

09:40AM 25   COMPANIES, EACH OF THE TWO, TWO DOCUMENTS, WHATEVER THEY ARE,

515

```
09:40AM   1      IS THIS YOURS?  YES.  DID YOU SEND THIS?  YES.  WHATEVER IT IS,

09:40AM   2      LAY A FOUNDATION FOR THE UNALTERED, I'LL JUST CALL IT THAT.

09:40AM   3           AND THEN ASK ABOUT THE OTHER ONE, WITHOUT ATTRIBUTION, DID

09:40AM   4      YOU RECEIVE THIS FROM MS. HOLMES?  OR THE SOURCE OF IT, WHO DID

09:40AM   5      YOU GET THIS FROM?  ELIZABETH HOLMES.

09:40AM   6           IS THAT ADMISSIBLE?

09:40AM   7                MR. BRECHER:  NO, YOUR HONOR.  AND THAT'S PRECISELY

09:40AM   8      THE CATEGORY OF EVIDENCE THAT WE THINK IS NOT ADMISSIBLE, AND

09:40AM   9      IT'S PRECISELY BECAUSE THE GOVERNMENT CANNOT SHOW ANY

09:40AM  10      FOUNDATION -- THERE'S NO SHOWING THAT MR. BALWANI MADE THESE

09:40AM  11      ALTERATIONS.  THERE'S NO SHOWING THAT MR. BALWANI KNEW THESE

09:41AM  12      ALTERATIONS HAD BEEN MADE AT ALL, MUCH LESS WITHOUT

09:41AM  13      AUTHORIZATION.

09:41AM  14                THE COURT:  SO YOU'RE SAYING IT'S NOT RELEVANT TO

09:41AM  15      YOUR CLIENT?

09:41AM  16                MR. BRECHER:  THAT'S CORRECT, YOUR HONOR.

09:41AM  17                THE COURT:  IT HAS RELEVANCE, BUT NOT TO YOUR

09:41AM  18      CLIENT.

09:41AM  19                MR. BRECHER:  EXACTLY, YOUR HONOR.

09:41AM  20           IT COULD COME IN UNDER A THEORY OF VICARIOUS LIABILITY IF

09:41AM  21      THE GOVERNMENT COULD MAKE THAT SHOWING IN APRIL 2010, AND IF

09:41AM  22      THEY COULD GET OVER THE 403 HURDLE.

09:41AM  23           BUT I DON'T THINK THE GOVERNMENT CAN MAKE EITHER SUCH

09:41AM  24      SHOWING.

09:41AM  25                THE COURT:  ARE THERE OTHER -- CAN YOU FATHOM ANY
```

09:41AM 1     OTHER REASON OR ANY OTHER METHOD OF ADMISSIBILITY FOR THOSE TWO

09:41AM 2     LETTERS THAT WE TALKED ABOUT, OR THESE DOCUMENTS THAT WE'RE

09:41AM 3     TALKING ABOUT?

09:41AM 4          IS THERE ANY OTHER METHOD THAT THOSE COULD COME IN?

09:41AM 5               MR. BRECHER:  THE DOCUMENTS THEMSELVES?

09:41AM 6               THE COURT:  YES.

09:41AM 7               MR. BRECHER:  ABSOLUTELY, YOUR HONOR.

09:41AM 8          AGAIN, I'M NOT TRYING TO BAR THE GOVERNMENT FROM SHOWING

09:41AM 9     FALSITY.  THE INVESTORS RECEIVED THESE DOCUMENTS, AND THE CORE

09:41AM 10    CLAIM IS THAT THERANOS HAS COMPREHENSIVELY VALIDATED THE

09:41AM 11    TECHNOLOGY, AND IF THEY WANT TO CALL OTHER WITNESSES OR PUT ON

09:41AM 12    OR USE OTHER EXHIBITS TO SUGGEST, NO, THAT'S NOT TRUE, THAT'S

09:41AM 13    FINE.  THAT'S WHAT TRIALS ARE FOR.  WE HAVE CROSS-EXAMINATION

09:42AM 14    FOR THAT.

09:42AM 15         I'M NOT HERE TRYING TO TIE THE GOVERNMENT'S HANDS.  I'M

09:42AM 16    ASKING THAT THE FIGHT BE FAIR.

09:42AM 17         ONE WAY, AND I'M JUST THINKING OUT LOUD ABOUT THE

09:42AM 18    PRACTICALITIES, IS JUST AS YOUR HONOR FREQUENTLY DID IN THE

09:42AM 19    HOLMES TRIAL, AND JUST AS COURTS FREQUENTLY ORDER REDACTIONS OF

09:42AM 20    VARIOUS EXHIBITS ON 403 GROUNDS, AND ON FRANKLY ANY NUMBER OF

09:42AM 21    GROUNDS, THE COURT COULD IMPOSE THAT THE PARTIES CONFER ABOUT

09:42AM 22    AN AGREED UPON SORT OF UNIFORM VERSION OF THESE REPORTS, MAYBE

09:42AM 23    WITH JUST THE THERANOS LOGO OR NO LOGOS.  I'M SORT OF

09:42AM 24    INDIFFERENT ON THAT, YOUR HONOR.

09:42AM 25         SO, NO, THE REPORTS CAN COME IN JUST FINE.  IT'S EVIDENCE

09:42AM 1    AND ARGUMENTS ABOUT ALTERATION, ABOUT DOCTORING.  THAT'S WHAT I

09:42AM 2    THINK HAS TO STAY OUT.

09:42AM 3              THE COURT:  OKAY.  I SEE.  THANK YOU.

09:42AM 4              MR. BRECHER:  THANK YOU, YOUR HONOR.

09:42AM 5              THE COURT:  MS. VOLKAR.

09:42AM 6              MS. VOLKAR:  THANK YOU, YOUR HONOR.

09:42AM 7         WHAT I HEARD MY COLLEAGUE SAY WERE SOME GREAT TOPICS FOR

09:42AM 8    CROSS-EXAMINATION AND CLOSING ARGUMENT.

09:42AM 9         BUT WHAT I DIDN'T HEAR ONCE, UNTIL YOUR HONOR JUST ASKED

09:43AM 10   THE QUESTION, WAS ANY THEORY FOR NOT ADMITTING THESE EXHIBITS.

09:43AM 11        YOUR HONOR ASKED ABOUT RELEVANCE.  WE HAVE NOT ONCE HEARD

09:43AM 12   ABOUT ANYTHING ABOUT THE ACTUAL STANDARDS FOR ADMITTING THESE

09:43AM 13   DOCUMENTS, ARE THEY RELEVANT?  ARE THEY UNDULY PREJUDICIAL?

09:43AM 14   ARE THEY HEARSAY?

09:43AM 15        THAT'S NOT THE BASIS OF THIS.  THEIR MOTION IS ALMOST

09:43AM 16   ENTIRELY ABOUT VICARIOUS LIABILITY.

09:43AM 17        AS WE DESCRIBED IN OUR OPPOSITION, WE -- VICARIOUS

09:43AM 18   LIABILITY IS ON THE TABLE, AND I WILL GET THERE.

09:43AM 19        BUT WE THINK THAT THESE DOCUMENTS ARE RELEVANT TO

09:43AM 20   MR. BALWANI'S KNOWLEDGE, AND THERE ARE FACTS.  I UNDERSTAND

09:43AM 21   THAT MY COLLEAGUE DISAGREES WITH A REASONABLE INFERENCE THAT

09:43AM 22   CAN BE DRAWN FROM THEM, BUT BOTH SIDES AGREE ON THE FACTS.

09:43AM 23        AND I THINK WHEN WE'RE IN THAT POSITION, AND I'M GOING TO

09:43AM 24   WALK THROUGH THEM IN JUST A MOMENT, WE'RE REALLY IN A POSITION

09:43AM 25   WHERE IT'S UP TO THE JURY, THE DECIDER OF FACTS, TO DECIDE

| | | |
|---|---|---|
| 09:43AM | 1 | WHICH INFERENCE THEY BELIEVE. |
| 09:43AM | 2 | NOW, WHAT ARE THOSE FACTS? |
| 09:43AM | 3 | I KNOW MY COLLEAGUE WALKED THROUGH THEM AS WELL, SO I |
| 09:43AM | 4 | DON'T WANT TO BELABOR THEM, BUT I DO WANT TO POINT OUT THERE |
| 09:44AM | 5 | ARE TWO DIFFERENT VIEWS. |
| 09:44AM | 6 | THE PARTIES, BOTH MR. BALWANI AND MS. HOLMES, WERE IN A |
| 09:44AM | 7 | ROMANTIC RELATIONSHIP.  WE KNOW AND WE SEE FROM THE TEXT |
| 09:44AM | 8 | MESSAGES THAT DON'T GO BACK ALL OF THE WAY TO 2010 THAT THEY'RE |
| 09:44AM | 9 | CONSTANTLY IN COMMUNICATION. |
| 09:44AM | 10 | WE KNOW THAT THEY'RE CONSTANTLY DISCUSSING VARIOUS ASPECTS |
| 09:44AM | 11 | OF THE COMPANY IN THAT ROMANTIC RELATIONSHIP. |
| 09:44AM | 12 | SO IT'S NOT JUST, WHAT DO YOU WANT TO HAVE FOR DINNER |
| 09:44AM | 13 | TONIGHT?  THEY'RE TALKING ABOUT WHAT DO WE WANT TO HAVE GO TO |
| 09:44AM | 14 | THIS INVESTOR?  WHAT DO WE WANT IN THIS DECK?  THEY'RE |
| 09:44AM | 15 | CONSTANTLY TALKING ABOUT TOPICS RELATED TO THE BUSINESS. |
| 09:44AM | 16 | HE JOINS THE COMPANY, AND WHAT IS THE FIRST THING HE DOES |
| 09:44AM | 17 | WHEN HE JOINS THE COMPANY?  HE'S GUARANTEEING WHAT IS AT LEAST |
| 09:44AM | 18 | A $10 MILLION LOAN.  THERE'S SOME DOCUMENTS THAT SUGGEST THAT |
| 09:44AM | 19 | IT'S MORE, AND HE'S GUARANTEEING A LOAN. |
| 09:44AM | 20 | WHY WOULD YOU DO THAT? |
| 09:44AM | 21 | HE MUST KNOW THE COMPANY IS STRUGGLING AND OUT OF MONEY. |
| 09:44AM | 22 | SO HE'S JOINING THE COMPANY KNOWING IT'S STRUGGLING FINANCIALLY |
| 09:44AM | 23 | AND PUTTING HIS OWN MONEY ON THE LINE THROUGH A PERSONAL |
| 09:44AM | 24 | GUARANTEE OF A LOAN TO THE COMPANY THAT HIS GIRLFRIEND IS |
| 09:45AM | 25 | RUNNING. |

09:45AM 1          WHAT DOES HE GET IN RETURN?

09:45AM 2          HE GETS TO BE COO, AND HE GETS TO BE IN CHARGE OF THE

09:45AM 3    RETAIL RELATIONSHIPS.  THAT INCLUDES WITH WALGREENS, WITH

09:45AM 4    SAFEWAY, AND AN ATTEMPT WITH WAL-MART.

09:45AM 5          WHAT IS AMONG THE FIRST THING HE DOES?

09:45AM 6          IN MARCH OF 2010, HE'S ON AN EMAIL THAT GOES TO WAL-MART

09:45AM 7    THAT INCLUDES AN UNALTERED REPORT.

09:45AM 8          AND THIS IS TRULY WHERE MY COLLEAGUE AND I PART WAYS,

09:45AM 9    BECAUSE I THINK -- I KNOW HE SPENT A DECENT AMOUNT OF TIME

09:45AM 10   TALKING ABOUT THE METADATA AND WHAT INFERENCE CAN BE DRAWN FROM

09:45AM 11   THAT, BUT THE FACT OF THE MATTER IS THAT HE MISSES THE POINT

09:45AM 12   WHY THE GOVERNMENT POINTED TO THIS DOCUMENT.

09:45AM 13         MR. BALWANI THOUGHT THIS UNALTERED SCHERING-PLOUGH RELATED

09:45AM 14   REPORT WAS IMPORTANT ENOUGH TO SAVE IN HIS FILES.

09:45AM 15         WHY WOULD SOMEONE DO THAT?

09:45AM 16         I UNDERSTAND I'M SPECULATING, BUT SOMEONE WOULD DO THAT

09:45AM 17   BECAUSE HE'S ABOUT TO TAKE CHARGE OF THE RETAIL RELATIONSHIP

09:45AM 18   AND HE MIGHT NEED TO SEND THAT.

09:45AM 19         IMMEDIATELY THEREAFTER, AN EMAIL GOES TO WAL-MART WITH THE

09:46AM 20   UNALTERED REPORTS.  THAT RELATIONSHIP GOES NOWHERE.

09:46AM 21         ONE MONTH LATER HE'S ON AN EMAIL TO WALGREENS AND SAFEWAY

09:46AM 22   WITH ALTERED PHARMACEUTICAL REPORTS.  THAT RELATIONSHIP GOES

09:46AM 23   SOMEWHERE.

09:46AM 24         AND IN THE YEARS -- AND I UNDERSTAND WE'RE FOCUSSED ON THE

09:46AM 25   EARLY TIME PERIOD, BUT I DO THINK IT'S TELLING THAT IN THE

09:46AM  1    YEARS LATER, 2013 TO 2015, MR. BALWANI, WHO HAS THE UNALTERED

09:46AM  2    VERSIONS OF THE REPORT, AT LEAST ONE, SAVED IN HIS FILES, NEVER

09:46AM  3    SENDS AN UNALTERED VERSION TO AN INVESTOR.  HE ONLY EVER SENDS

09:46AM  4    ALTERED VERSIONS WITH BOTH LOGOS WITH ENHANCED LANGUAGE.

09:46AM  5            THE COURT:  IS THERE -- I'M SORRY TO INTERRUPT YOU.

09:46AM  6    IS THERE EVIDENCE, WILL THERE BE EVIDENCE THAT HE ACTUALLY

09:46AM  7    DID SEND THE ALTERED VERSIONS?

09:46AM  8            MS. VOLKAR:  YES, YOUR HONOR, AND I INCLUDED SOME IN

09:46AM  9    MY EXHIBITS.  I'M HAPPY TO POINT THE COURT TO THEM.

09:47AM 10    THE FIRST ONE THAT IS COMING TO MIND IS HE SENT ALTERED

09:47AM 11    VERSIONS TO BDT, AND I CAN GRAB THE EXHIBIT NUMBER FOR THAT IF

09:47AM 12    YOU'RE --

09:47AM 13            THE COURT:  NO.  THAT'S FINE.  IT'S IN THE DOCUMENTS

09:47AM 14    THAT YOU FILED?

09:47AM 15            MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

09:47AM 16    AND HE IS TALKING WITH ELIZABETH HOLMES ABOUT SENDING THE

09:47AM 17    REPORTS TO OTHER INVESTORS AS WELL.

09:47AM 18    BUT THE EXAMPLE WE ATTACHED WHERE IT HAS THE REPORTS WITH

09:47AM 19    IT I BELIEVE IS THE BDT ONE, BUT WE DID INCLUDE EXAMPLES IN OUR

09:47AM 20    FILING.

09:47AM 21    SO WHEN WE GET TO PHILLIPS -- I'M SORRY.  I WANT TO SWITCH

09:47AM 22    FROM THOSE ARE THE FACTS.  THOSE ARE FACTS THAT KNOW THAT IT'S

09:47AM 23    CIRCUMSTANTIAL EVIDENCE THAT MR. BALWANI SAW UNALTERED REPORTS

09:47AM 24    AND SAW THE PART THAT HE WAS RESPONSIBLE FOR, THE RETAIL

09:47AM 25    RELATIONSHIP WITH WAL-MART, GO NOWHERE.  AND THEN HE SAW THE

09:47AM   1   ALTERED REPORTS GO TO WALGREENS AND SAFEWAY.

09:47AM   2          EVEN IF HE DOESN'T HAVE THE SAME LEVEL OF KNOWLEDGE AS

09:47AM   3   MS. HOLMES ABOUT THE PHARMACEUTICAL RELATIONSHIPS, HE'S ON

09:48AM   4   THOSE DOCUMENTS.  HE IS SEEING THE OUTCOME.

09:48AM   5          AND LATER ON IN THE FRAUD SCHEME, HE'S ENCOURAGING IT AND

09:48AM   6   HE'S GOING ALONG WITH IT.  HE'S ONLY SENDING THE ALTERED

09:48AM   7   VERSIONS OF DOCUMENTS TO INVESTORS.

09:48AM   8          SO I DO THINK THAT A JURY CAN INFER FROM THAT KNOWLEDGE.

09:48AM   9          AND WHEN I GET TO PHILLIPS, I THINK THIS CASE IS

09:48AM  10   INCREDIBLY DISTINGUISHABLE, OR IS VERY FAR AFIELD FROM

09:48AM  11   PHILLIPS.  AND OF COURSE YOUR HONOR IS VERY FAMILIAR WITH THAT.

09:48AM  12   IT CAME UP FREQUENTLY IN THE LAST TRIAL.

09:48AM  13          BUT PHILLIPS WAS TALKING ABOUT SOMETHING OF WHICH A

09:48AM  14   DEFENDANT KNOWS NOTHING ABOUT.  IN PHILLIPS, THE ALTERED

09:48AM  15   DOCUMENTS WERE NEVER SEEN OR SENT TO CODEFENDANTS AND WERE ONLY

09:48AM  16   SENT TO UNNAMED COCONSPIRATORS, AND THEREFORE, THESE DEFENDANTS

09:48AM  17   WHO NEVER SAW THE DOCUMENTS, THE NINTH CIRCUIT REASONED, CAN'T

09:48AM  18   HAVE THE KNOWLEDGE OF THESE UNNAMED COCONSPIRATORS IMPUTED TO

09:49AM  19   THEM, AND IT WAS SPECIFICALLY CUSTOMER COMPLAINTS ABOUT THE

09:49AM  20   LETTERS.

09:49AM  21          YOUR HONOR USED THAT CASE TO EXCLUDE EVIDENCE OF CUSTOMER

09:49AM  22   COMPLAINTS OF THERANOS THAT WENT TO MR. BALWANI, BUT THAT THERE

09:49AM  23   WAS NO EMAIL SHOWING THAT THEY WENT TO MS. HOLMES.

09:49AM  24          THAT IS AN EXAMPLE OF SOMETHING THAT IS GOING ONLY TO ONE

09:49AM  25   CODEFENDANT OR COCONSPIRATOR OR COSCHEMER, BUT NOT TO ANOTHER.

09:49AM 1      MR. BALWANI IS ON THESE EMAILS, SO HE IS AWARE OF THE KEY

09:49AM 2  FACTS, ALTERED, UNALTERED, AND BOTH OF THOSE DOCUMENTS ARE ON

09:49AM 3  THE GOVERNMENT'S EXHIBIT LIST.

09:49AM 4      SO PHILLIPS IS I JUST THINK IRRELEVANT IN THIS PARTICULAR

09:49AM 5  SCENARIO.

09:49AM 6      ALSO, I BELIEVE MY COLLEAGUE REFERENCED THE FACT THAT

09:49AM 7  MR. BALWANI IS ON ONE OF THE GSK EMAILS.

09:49AM 8      THE DEFENSE HAS NOT POINTED TO ANYTHING, AND THE

09:49AM 9  GOVERNMENT ARGUED THIS IN THE OTHER CASE, THAT SHOWED THE

09:50AM 10  PHARMACEUTICAL COMPANIES GIVING PERMISSION TO SEND THESE

09:50AM 11  REPORTS, ALL OF WHICH WERE GENERATED BY THERANOS.  I THINK

09:50AM 12  THAT'S IMPORTANT TO REITERATE.  THE PHARMACEUTICAL COMPANIES

09:50AM 13  NEVER GAVE PERMISSION TO SEND THESE REPORTS TO ANYONE OUTSIDE

09:50AM 14  OF THE PHARMACEUTICAL COMPANY.

09:50AM 15      THEY ALL HAD CONTRACTS, IT CAME OUT THROUGH

09:50AM 16  CROSS-EXAMINATION OF MS. HOLMES, THEY ALL HAD CONTRACTS THAT

09:50AM 17  SAID SPECIFICALLY THESE REPORTS AND THIS DATA WAS NOT ALLOWED

09:50AM 18  TO BE SHARED, BUT MS. HOLMES AND MR. BALWANI HAVE NEVER SHOWN

09:50AM 19  THAT THEY ACTUALLY GOT THAT PERMISSION IN ORDER TO SHARE THESE.

09:50AM 20      AND MR. BALWANI IS ON SEVERAL EMAILS WHERE THEY SEND THESE

09:50AM 21  REPORTS FREELY AND WITH THE ADDED LOGOS.  SO THAT'S ANOTHER

09:50AM 22  ASPECT OF EVEN THOUGH HE WAS ON AN EMAIL TO GSK WITH THIS

09:50AM 23  REPORT, IT'S STILL NOT PROVIDING THAT LINK THAT THERE WAS

09:50AM 24  PERMISSION TO SEND IT TO OTHER INVESTORS, WHICH HE HIMSELF

09:50AM 25  LATER DID.

09:50AM  1        SO NOW WE GET TO VICARIOUS LIABILITY, AND I WANT TO BE

09:50AM  2    EXTRA CLEAR HERE BECAUSE THE GOVERNMENT'S OPPOSITION SPENDS A

09:51AM  3    DECENT OF TIME ON THIS AND IT IS IMPORTANT.

09:51AM  4        THERE IS EVIDENCE OF MR. BALWANI'S ACTUAL KNOWLEDGE.  THAT

09:51AM  5    MEANS THIS ISN'T A PHILLIPS SCENARIO.  THIS EVIDENCE IS

09:51AM  6    ABSOLUTELY RELEVANT.

09:51AM  7        AND IN THE HOLMES CASE, THE GOVERNMENT DID NOT KNOW THAT

09:51AM  8    MS. HOLMES WAS GOING TO TESTIFY.

09:51AM  9        AND TO TAKE MY COLLEAGUE'S ARGUMENT TO ITS FULLEST EXTENT,

09:51AM 10    HE IS SAYING, I BELIEVE INCORRECTLY, THAT THE GOVERNMENT

09:51AM 11    SHOULDN'T HAVE BEEN ABLE TO ADMIT THIS EVIDENCE IN THE PAST

09:51AM 12    CASE IN ITS CASE-IN-CHIEF BECAUSE IT DIDN'T KNOW WHO ACTUALLY

09:51AM 13    ALTERED THE DOCUMENTS, AND ONLY WHEN MS. HOLMES TESTIFIED THAT

09:51AM 14    SHE ALTERED THE DOCUMENTS DID THIS EVIDENCE BECOME RELEVANT AND

09:51AM 15    ADMISSIBLE.  AND THAT'S JUST WRONG, YOUR HONOR.

09:51AM 16        WE'RE SEEKING TO ADMIT THE SAME EVIDENCE IN THIS CASE.

09:51AM 17    IT'S NOT LIKE THIS IS SOMETHING THAT HAPPENED IN 2008 BEFORE

09:51AM 18    MR. BALWANI JOINED THE COMPANY.  THIS HAPPENED IN 2010.  HE'S

09:51AM 19    ON THE KEY EMAILS.  HE'S PART OF THE COMPANY.  HE'S

09:52AM 20    ROMANTICALLY INVOLVED WITH HER.  THERE ARE A LOT OF DIFFERENT

09:52AM 21    ASPECTS.  HE ENDS UP SENDING THESE SAME ALTERED REPORTS LATER,

09:52AM 22    EVEN THOUGH HE HAS UNALTERED VERSIONS SAVED IN HIS COMPUTER

09:52AM 23    FILES.

09:52AM 24        AS I PROMISED, I WANT TO TURN QUICKLY TO VICARIOUS

09:52AM 25    LIABILITY.  MY COLLEAGUE TAKES ISSUE WITH THE CONCEPT OF

09:52AM 1    VICARIOUS LIABILITY, BUT WE ARE IN THE NINTH CIRCUIT AND THAT

09:52AM 2    STILL IS THE CONTROLLING LAW.

09:52AM 3         ONE IS RESPONSIBLE FOR THE ACTS OF A COSCHEMER OR

09:52AM 4    COCONSPIRATOR THAT ARE DURING THE CONSPIRACY AND IN FURTHERANCE

09:52AM 5    OF THE CONSPIRACY, AND THIS IS EXACTLY WHAT THE GOVERNMENT

09:52AM 6    ALLEGES IN THE THIRD SUPERSEDING INDICTMENT.

09:52AM 7         THE CONSPIRACY AND SCHEME TO DEFRAUD INVESTORS BEGAN IN

09:52AM 8    2010 WITH WALGREENS, AND ONE OF THE LIES THAT WALGREENS WAS

09:52AM 9    TOLD WAS THE FACT THAT PHARMACEUTICAL COMPANIES HAD VALIDATED

09:52AM 10   THERANOS, AND ONE OF THE VEHICLES FOR SHOWING AND DEMONSTRATING

09:52AM 11   THAT LIE WAS THESE ALTERED PHARMACEUTICAL REPORTS.

09:52AM 12        THIS IS CORELY AND SQUARELY WITHIN THE CONSPIRACY AND THE

09:53AM 13   SCHEME TO DEFRAUD THAT THE GOVERNMENT HAS ALLEGED AND PROVED IN

09:53AM 14   THE LAST TRIAL AND BELIEVES IT WILL MEET ITS BURDEN TO DO SO

09:53AM 15   HERE.

09:53AM 16        SO WITH THAT, IT BRINGS ME TO RULE 403, AND I DON'T THINK

09:53AM 17   I NEED TO SAY MUCH MORE THERE BECAUSE ONCE, ONCE THE COURT

09:53AM 18   REALIZES, AS THE GOVERNMENT SUBMITS, THAT THE EVIDENCE IS

09:53AM 19   RELEVANT, IT'S NOT HEARSAY, IT'S VERY PROBATIVE, AND IT'S NOT

09:53AM 20   PREJUDICIAL, THE ONE POINT THAT MY COLLEAGUE ADDED IN ADDITION

09:53AM 21   IS THE -- THAT IT WOULD MISLEAD OR CONFUSE THE JURY.

09:53AM 22        AND IT DIDN'T MISLEAD OR CONFUSE THE LAST JURY, AND THEY

09:53AM 23   WILL BE ABLE, THROUGH CROSS-EXAMINATION AND CLOSING ARGUMENT,

09:53AM 24   TO POINT OUT TO THE JURY THAT HE WASN'T -- THAT MR. BALWANI WAS

09:53AM 25   NOT INVOLVED WITH THE PHARMACEUTICAL RELATIONSHIPS.

09:53AM 1          THE GOVERNMENT INTENDS TO CALL PHARMACEUTICAL WITNESSES.

09:53AM 2    THEY'LL BE ABLE TO ASK THEM, DID YOU EVER -- DO YOU EVEN KNOW

09:53AM 3    WHO MR. BALWANI IS?  I DON'T MEAN TO DO MY COLLEAGUE'S JOB FOR

09:54AM 4    HIM OR PUT WORDS IN HIS MOUTH, BUT THAT IS STILL OPEN AND

09:54AM 5    AVAILABLE TO THEM.  THIS EVIDENCE CAN STILL BE TESTED THROUGH

09:54AM 6    THE TRIAL PROCESS, AND RULE 403 IS NOT THE BASIS TO EXCLUDE IT.

09:54AM 7          AND THEN I SAID THAT WAS THE LAST POINT, BUT THE VERY LAST

09:54AM 8    POINT IS, OF COURSE, THIS EVIDENCE IS IMPORTANT FOR FALSITY

09:54AM 9    BECAUSE IT IS ONE OF THE WAYS THAT NOT JUST WALGREENS, BUT

09:54AM 10   LATER INVESTORS -- YOUR HONOR HEARD MR. MOSLEY, LISA PETERSON,

09:54AM 11   SEVERAL OF THE INVESTORS TALKED ABOUT HOW IMPORTANT THESE

09:54AM 12   REPORTS WERE TO THEM AND SEEING THE LOGO MADE THEM THINK THAT

09:54AM 13   THESE WERE AUTHORED BY THESE PHARMACEUTICAL COMPANIES.

09:54AM 14         MR. BALWANI SAW A VERSION AT LEAST OF THE SCHERING-PLOUGH

09:54AM 15   DOCUMENT WITHOUT THAT LOGO.  HE DID HAVE THE KNOWLEDGE THAT

09:54AM 16   THOSE INVESTORS NEVER GOT THE BENEFIT OF, THAT A VERSION

09:54AM 17   EXISTED WITHOUT THE LOGO, AND THAT'S WHY THE EVIDENCE SHOULD BE

09:54AM 18   ADMISSIBLE FOR FALSITY AS WELL, AND HE DOES KNOW ABOUT IT

09:54AM 19   DIRECTLY.

09:54AM 20         THANK YOU.

09:54AM 21             THE COURT:  THANK YOU.

09:54AM 22         ARE YOU SEEKING THEN -- IS THE GOVERNMENT GOING TO SEEK,

09:54AM 23   TO THE EXTENT THAT YOU CAN TELL US, TO ADMIT ALL OF THE

09:55AM 24   DOCUMENTS, THE ALTERED DOCUMENTS?  I THINK THERE WERE TWO OF

09:55AM 25   THEM, WERE THERE?

09:55AM  1          MS. VOLKAR:  I BELIEVE THERE WERE THREE, YOUR HONOR,

09:55AM  2    BUT WE DIDN'T -- I DON'T THINK -- THE THIRD ONE DID NOT COME

09:55AM  3    INTO PLAY UNTIL MS. HOLMES WAS TESTIFYING.

09:55AM  4          SO I BELIEVE THE GOVERNMENT WOULD BE SEEKING -- WE DID

09:55AM  5    COMMIT TO NOT REFERENCING IT IN THE OPENING STATEMENT, BUT I DO

09:55AM  6    BELIEVE WE WOULD BE SEEKING TO ADMIT THE TWO ALTERED REPORTS WE

09:55AM  7    DID LAST TIME, WHICH WAS PFIZER AND SCHERING-PLOUGH, AND IT'S

09:55AM  8    RELATED TO THOSE TWO PHARMACEUTICAL COMPANIES.

09:55AM  9          THE COURT:  I SEE.  OKAY.

09:55AM  10         SO YOUR COLLEAGUE OPPOSITE'S POSITION IS, WELL -- AND HE

09:55AM  11    MAY SAY, AND I'M GOING TO TURN TO HIM IN A MOMENT -- WELL,

09:55AM  12    THAT'S ALL FINE AND GOOD, BUT IT STILL CAUSES EXTREME

09:55AM  13    SPECULATION.  IT WOULD STILL CAUSE EXTREME SPECULATION BY THE

09:55AM  14    JURY.  AND THAT'S SOMETHING THAT I THINK HE SAID WHEN HE TOLD

09:55AM  15    US IT WOULD BE INHERENTLY UNFAIR TO HIS CLIENT.

09:56AM  16         WHAT IS YOUR COMMENT TO THAT?

09:56AM  17         MS. VOLKAR:  THANK YOU, YOUR HONOR.

09:56AM  18         I THINK IT'S NO MORE SPECULATION THAN THE JURY WAS

09:56AM  19    PERMITTED IN THE LAST CASE.

09:56AM  20         AND THE ONE NEW FACT, AS MY COLLEAGUE PUTS IT, IS

09:56AM  21    MS. HOLMES'S TESTIMONY.

09:56AM  22         BUT CONTRARY TO WHAT HE SAID, THE GOVERNMENT IS NOT, AND

09:56AM  23    THE COURT IS NOT, BOUND TO BELIEVE THE TRUTH OF MS. HOLMES'S

09:56AM  24    TESTIMONY.

09:56AM  25         IN FACT, THE JURY IS INSTRUCTED YOU CAN BELIEVE ALL, PART,

09:56AM   1      OR NONE OF A PERSON'S TESTIMONY.

09:56AM   2           AND FROM THE SAME -- I'M ASSUMING MY COLLEAGUE IS

09:56AM   3      REFERRING TO THE NEWS REPORT -- FROM THE SAME REPORTS THAT

09:56AM   4      JURORS GAVE TO NEWS AND MEDIA OUTLETS, THEY RANKED MS. HOLMES'S

09:56AM   5      CREDIBILITY VERY LOW.

09:56AM   6           I DIGRESS A LITTLE BIT HERE, BUT WHAT I'M TRYING TO SAY IS

09:56AM   7      EVEN THOUGH SHE SAID, I DID IT, AND DIDN'T SAY, WE DID IT, OR I

09:56AM   8      DID IT IN CONSULTATION WITH MR. BALWANI, THE GOVERNMENT IS NOT

09:56AM   9      BOUND TO THAT VERSION.

09:56AM  10           AND THE QUESTIONS WEREN'T ASKED WHETHER SHE DISCUSSED THIS

09:56AM  11      DECISION WITH MR. BALWANI OR WHETHER SHE WAS DIRECTED TO DO SO.

09:57AM  12           WE ALSO KNOW THAT SHE TESTIFIED EVERYTHING SHE DID AT THE

09:57AM  13      COMPANY WAS INFLUENCED BY HIM.

09:57AM  14           SO WHAT I'M SAYING IS THAT MY COLLEAGUE WANTS TO PICK AND

09:57AM  15      CHOOSE CERTAIN PORTIONS OF HER TESTIMONY, BUT WE ARE ALSO --

09:57AM  16      BUT WE, THE GOVERNMENT, ARE ALSO NOT BOUND TO TAKE THAT AS THE

09:57AM  17      GOSPEL TRUTH.

09:57AM  18           AND ALSO, EVEN IF WE WERE TO ACCEPT THE TRUTH OF HER

09:57AM  19      TESTIMONY, IT DOESN'T, IT DOESN'T ELIMINATE ANY POSSIBLE

09:57AM  20      JOINING OR -- PARDON ME, YOUR HONOR.  IT DOESN'T EXCUSE ANY

09:57AM  21      POSSIBLE INVOLVEMENT OF MR. BALWANI IN THESE ACTS.

09:57AM  22           AND THESE ACTS DID HAPPEN, AGAIN, IF WE WERE TO BELIEVE

09:57AM  23      MS. HOLMES'S TESTIMONY, IN APRIL 2010 BETWEEN THAT WAL-MART

09:57AM  24      EMAIL IN MARCH 2010 AND THE WALGREENS AND SAFEWAY EMAIL IN

09:57AM  25      APRIL OF 2010.  MR. BALWANI IS THERE, HE'S ON THESE EMAILS,

09:57AM  1    HE'S ROMANTICALLY INVOLVED WITH HER, HE'S GOT MONEY ON THE

09:57AM  2    LINE, AND HE IS COO OF THERANOS, A COMPANY THAT HE HAS JOINED

09:58AM  3    AND COMMITTED TO MAKING THE BEST COMPANY HE CAN, AND THAT'S

09:58AM  4    MOTIVE, YOUR HONOR.

09:58AM  5         SO I DO THINK THAT IT'S NOT UNDUE SPECULATION TO GIVE

09:58AM  6    THESE FACTS TO THE JURY AND SAY THAT BASED ON THESE FACTS HE

09:58AM  7    PROBABLY DID KNOW.

09:58AM  8         WE HEARD SEVERAL POTENTIAL JURORS EARLIER THIS WEEK TALK

09:58AM  9    ABOUT HOW CLOSELY COO'S AND CEO'S OF STARTUPS WORK TOGETHER,

09:58AM  10   AND ESPECIALLY WHEN THEY'RE ROMANTICALLY INVOLVED.

09:58AM  11        AND I ONLY SAY THAT TO SAY THAT WE, THE GOVERNMENT,

09:58AM  12   CONTINUE TO BELIEVE THAT THESE TWO WORKED TOGETHER ON

09:58AM  13   EVERYTHING.  AND I THINK THERE ARE SEVERAL WITNESSES WHO HAVE

09:58AM  14   TALKED AND SPOKEN TO THAT EFFECT AND TESTIFIED TO THAT EFFECT,

09:58AM  15   THAT MS. HOLMES AND MR. BALWANI DISCUSSED EVERYTHING.

09:58AM  16        SO I DON'T THINK THAT IT'S UNDUE SPECULATION TO ASK THE

09:58AM  17   JURY THAT, EVEN IF HE WASN'T INVOLVED WITH THE PHARMACEUTICAL

09:58AM  18   RELATIONSHIPS, THAT HE MAY HAVE LEARNED FROM MS. HOLMES OR

09:58AM  19   AGAIN, AT THE VERY LEAST, HE SAW UNALTERED VERSIONS, HE SAW

09:58AM  20   ALTERED VERSIONS.

09:58AM  21        WHICH DID HE CHOOSE TO USE WHEN HE TRIED TO GET HUNDREDS

09:59AM  22   OF MILLIONS OF DOLLARS?  HE USED THE ALTERED VERSIONS.

09:59AM  23             THE COURT:  OKAY.  I'M GOING TO ASK YOUR COLLEAGUE

09:59AM  24   OPPOSITE IF THAT, WHAT YOU JUST SAID, WOULD BE ADMISSIBLE.

09:59AM  25        BUT I'M ALSO CURIOUS, IS THERE ANY LIMITATION THAT YOU

09:59AM 1    BELIEVE THE COURT SHOULD PUT ON THE ADMISSION OF ANY OF THIS

09:59AM 2    EVIDENCE?

09:59AM 3          YOU HEARD US TALK IN THE HOLMES TRIAL MANY TIMES, THIS

09:59AM 4    ONLY GOES TO KNOWLEDGE, THIS ONLY GOES TO INTENT, THIS ONLY

09:59AM 5    GOES TOWARDS WHATEVER IT IS.

09:59AM 6          ARE THERE LIMITING INSTRUCTIONS THAT YOU THINK WOULD

09:59AM 7    APPLY?

09:59AM 8                MS. VOLKAR:  THE GOVERNMENT'S POSITION IS NO.

09:59AM 9          BUT OF COURSE IT DOES DEPEND ON YOUR HONOR'S RULING, AND

09:59AM 10   THAT'S BECAUSE WE DO THING THAT IT GOES TO BOTH KNOWLEDGE AND

09:59AM 11   FALSITY.

09:59AM 12         IF YOUR HONOR BUYS ANY PART OF THE DEFENSE'S ARGUMENT --

09:59AM 13   I'M SORRY TO SAY IT THAT WAY, BUT IF YOUR HONOR AGREES WITH THE

09:59AM 14   DEFENSE IN THAT WAY THAT, FOR EXAMPLE, PHILLIPS WORKS, OR

09:59AM 15   DISAGREES WITH THE CONCEPT -- I HATE TO SAY THIS BUT DISAGREES

10:00AM 16   WITH THE CONCEPT OF VICARIOUS LIABILITY, THEN I GUESS IT COULD

10:00AM 17   BE A LIMITING INSTRUCTION THAT THIS EVIDENCE IS ONLY FOR THE

10:00AM 18   PURPOSE OF FALSITY.

10:00AM 19         BUT THERE'S STILL, AS I SEE IT, AS THE GOVERNMENT SEES IT,

10:00AM 20   I HAVE NOT HEARD ANY REASON TO BAR THIS EVIDENCE ENTIRELY,

10:00AM 21   AGAIN, EXCEPT FOR RULE 403.

10:00AM 22         BUT I THINK WE ALL AGREE THIS IS HIGHLY RELEVANT EVIDENCE,

10:00AM 23   AND, AGAIN, I DISAGREE WITH THE PREMISE THAT MR. BALWANI HAD NO

10:00AM 24   POSSIBLE KNOWLEDGE OF THE ALTERATION.

10:00AM 25         THERE MAY BE A LIMITING INSTRUCTION THAT MR. BALWANI WAS

10:00AM 1    NOT AT THE COMPANY DURING THE TIME PERIOD IT WORKED WITH THE

10:00AM 2    PHARMACEUTICAL COMPANIES.  LIKE, I CAN SEE SOME LIMITATION OF

10:00AM 3    CONDUCT BEFORE 2009 OR REALLY BEFORE 2010 WHEN THE INDICTMENT

10:00AM 4    ALLEGES THE CONSPIRACY BEGAN.  THERE IS A WORLD IN WHICH

10:00AM 5    PRECONSPIRACY CONDUCT SHOULD NOT BE CONSIDERED AGAINST HIM, AND

10:00AM 6    THAT'S PARTICULARLY IMPORTANT IF WE'RE IN THE WORLD OF

10:01AM 7    VICARIOUS LIABILITY.

10:01AM 8        THANK YOU.

10:01AM 9            THE COURT:  THANK YOU.

10:01AM 10            MR. BRECHER:  THANK YOU.  I APPRECIATE THE

10:01AM 11   OPPORTUNITY TO RESPOND.

10:01AM 12       FIRST, I DID HEAR MY COLLEAGUE SAY, TWO-THIRDS OF THE WAY

10:01AM 13   THROUGH HER REMARKS, ACKNOWLEDGE THAT MR. BALWANI ONLY EVER

10:01AM 14   RECEIVED WHAT WE'LL CALL THE "UNALTERED" VERSION OF THE

10:01AM 15   SCHERING-PLOUGH REPORT.

10:01AM 16       BUT I COUNTED SIX TIMES IN WHICH THE REPRESENTATION WAS

10:01AM 17   MADE THAT HE HAD UNALTERED VERSIONS, HE HAD ALTERED VERSIONS.

10:01AM 18       AS TO PFIZER AND GSK, SIMPLY NOT TRUE.  MR. BALWANI NEVER

10:01AM 19   SAW, NEVER POSSESSED THE UNALTERED VERSIONS, AND THE GOVERNMENT

10:01AM 20   HAS NO EVIDENCE OF ANY KIND TO THE CONTRARY.  SO LET'S BE VERY

10:01AM 21   CLEAR ABOUT THAT.

10:01AM 22       SECOND, I HOPE THAT I DID NOT SUGGEST THAT I DISAGREED

10:01AM 23   WITH THE CONCEPT OF VICARIOUS LIABILITY.  I BELIEVE WHAT OUR

10:01AM 24   PAPERS AND MY ARGUMENT TODAY SAID IS THAT THE GOVERNMENT IS

10:01AM 25   REQUIRED TO MAKE A SHOWING BEFORE IT CAN INTRODUCE THAT

10:01AM  1    EVIDENCE, AND IT IS.  AND THAT SHOWING HAS TO BE CONSIDERED ON

10:01AM  2    A PREPONDERANCE STANDARD.  THEY HAVE TO MEET THAT BURDEN, AND I

10:02AM  3    DON'T THINK THAT THEY CAN.

10:02AM  4         BUT LET'S SHIFT GEARS BACK TO THE ISSUE OF MR. BALWANI'S

10:02AM  5    PERSONAL KNOWLEDGE.

10:02AM  6         IF MR. BALWANI ONLY EVER HAS THE ALTERED PFIZER AND GSK

10:02AM  7    REPORTS, THEN THOSE ARE GOING TO BE THE ONLY REPORTS THAT HE'S

10:02AM  8    EVER GOING TO SEND TO INVESTORS.

10:02AM  9         AND AS FOR SCHERING-PLOUGH, I DON'T BELIEVE, AND I DON'T

10:02AM 10    BELIEVE THE GOVERNMENT SERIOUSLY BELIEVES, THAT RECEIVING THAT

10:02AM 11    IN MARCH -- OR MARCH 19TH, 2010, AND THEN SEEING -- AGAIN,

10:02AM 12    BEING COPIED ON AN EMAIL IN APRIL, A MONTH LATER, MEANS THAT HE

10:02AM 13    HAD ACTUAL KNOWLEDGE OR EVEN CONSTRUCTIVE KNOWLEDGE.

10:02AM 14         AND I THINK ONE OF THE REASONS THAT GOES TO THAT IS THAT

10:02AM 15    THERE WAS NO RESPONSE TO THE GOVERNMENT'S OWN, THE GOVERNMENT'S

10:02AM 16    OWN ILLUSTRATIONS IN MR. SCHENK'S CLOSING OR IN ITS OWN

10:02AM 17    BRIEFING.

10:02AM 18         I'M NOT ACCUSING THE GOVERNMENT OF ANYTHING, YOUR HONOR,

10:02AM 19    BUT DID THE GOVERNMENT TRY TO MISLEAD THIS COURT ABOUT THE

10:02AM 20    METADATA ISSUE, ABOUT THE DATE?  OF COURSE NOT.  IT'S A SIMPLE

10:03AM 21    MISTAKE.  BUT BEAR IN MIND THE CONTEXT OF THAT SIMPLE MISTAKE.

10:03AM 22         THEY LOOKED AT THIS TINY STRING OF TEXTS.  THEY RELIED ON

10:03AM 23    IT, THEY EXAMINED IT CLOSELY, AND THEY WROTE A BRIEF THAT THEY

10:03AM 24    SUBMITTED TO YOU, AND THEY MADE SEVERAL ASSERTIONS OF FACT THAT

10:03AM 25    TURNED OUT TO BE UNTRUE.

10:03AM 1          AND, YET, THAT'S PERFECTLY INNOCENT?

10:03AM 2          BUT MR. BALWANI SHOULD BE EXPECTED, BY ANY REASONABLE

10:03AM 3    MIND, TO HAVE PUT THE MISSING LOGO TOGETHER, TO HAVE DRAWN SOME

10:03AM 4    INFERENCE FROM THAT?  I THINK THAT THAT'S JUST ABSURD,

10:03AM 5    YOUR HONOR.

10:03AM 6          AND I WANT TO MOVE ON.

10:03AM 7          THE REST OF THE EVIDENCE IS ABOUT EVENTS IN 2013, 2014,

10:03AM 8    2015.  ALL I HEAR IS THAT THEY'RE TEXTING EXTENSIVELY ABOUT THE

10:03AM 9    COMPANY.

10:03AM 10         WELL, YEAH, IT'S THE CEO AND THE COO.

10:03AM 11         BUT AS YOUR HONOR'S OWN JURY INSTRUCTION, I THINK IT'S

10:03AM 12   FINAL INSTRUCTION 16 IN THE HOLMES CASE POINTS OUT, THAT'S NOT

10:03AM 13   ENOUGH.  THAT'S NOT ENOUGH FOR THIS COURT TO MAKE ITS THRESHOLD

10:03AM 14   SHOWING.

10:03AM 15         OH, THE ISSUE OF WHAT COULD OR COULD NOT COME INTO THE

10:04AM 16   HOLMES TRIAL, I THINK IT'S, FRANKLY, A STRANGE ARGUMENT BECAUSE

10:04AM 17   AS BOTH SIDES REPEATEDLY ACKNOWLEDGED IN THEIR BRIEFING, WHAT

10:04AM 18   HAPPENED IN THE HOLMES TRIAL DOESN'T BIND US HERE.

10:04AM 19         BUT HERE IT'S NOT SOME ACADEMIC POINT ABOUT THE LAW OF THE

10:04AM 20   CASE WHERE YOUR HONOR HAS PASSED ON THE QUESTION AND WE'RE

10:04AM 21   ASKING YOU TO PLEASE RECONSIDER IT.

10:04AM 22         MS. HOLMES NEVER MOVED FOR THIS RELIEF, AND SO THE COURT

10:04AM 23   IS WRITING ON A COMPLETE BLANK SLATE.

10:04AM 24         THE OTHER ISSUE, YOUR HONOR, IS OF COURSE THE GOVERNMENT

10:04AM 25   KNEW GOING INTO THE HOLMES TRIAL THAT SHE WAS INTIMATELY

10:04AM 1    INVOLVED AND MANAGED THE PHARMACEUTICAL RELATIONSHIPS.  INDEED,

10:04AM 2    MR. BALWANI WASN'T EVEN AT THE COMPANY WHILE WHEN THESE EVENTS

10:04AM 3    WERE GOING ON.  IT'S A VERY DIFFERENT CONTEXT HERE.

10:04AM 4         AND AS FOR THE NOTION -- SO I THINK WHAT THEY WERE

10:04AM 5    PLANNING TO DO IN THE HOLMES TRIAL WAS PERFECTLY FAIR, AND I

10:04AM 6    THINK I SAID THAT IN MY OPENING REMARKS TODAY.

10:04AM 7         BUT THINGS CHANGE.  IF I'M A PROSECUTOR AND I DON'T HAVE

10:04AM 8    ANY EXCULPATORY EVIDENCE IN MY POSSESSION, THEN I'VE DISCHARGED

10:05AM 9    MY BRADY OBLIGATIONS.  I DON'T HAVE ANYTHING TO DISCLOSE.

10:05AM 10        BUT IF LATER I DO, WELL, NOW I HAVE SOMETHING TO DISCLOSE.

10:05AM 11   NOW WE KNOW A NEW FACT, AND WITHOUT KNOWLEDGE OF THAT NEW FACT,

10:05AM 12   WHICH THE JURY CANNOT HEAR WITHOUT SOME SACRIFICE OF

10:05AM 13   MR. BALWANI'S CONSTITUTIONAL RIGHTS, IT RISKS SEVERE AND

10:05AM 14   UNWARRANTED PREJUDICE, BECAUSE THE ONLY NATURAL CONCLUSION THAT

10:05AM 15   THEY'RE GOING TO DRAW IS LOOK AT WHO IS ON THE DOCS.  IT'S JUST

10:05AM 16   HIM.

10:05AM 17        MS. HOLMES IS NOT HERE, AND BARRING SOMETHING SURPRISING,

10:05AM 18   I DON'T THINK WE'RE GOING TO HEAR FROM HER, AND I DON'T THINK

10:05AM 19   MR. BALWANI IS GOING TO HAVE A CHANCE TO QUESTION HER TO ASK

10:05AM 20   THAT FOLLOW-UP QUESTION, AND IT'S PRECISELY THAT ABSENCE OF

10:05AM 21   OPPORTUNITY THAT MAKES THIS ALL SO UNFAIR.

10:05AM 22        AGAIN, YOUR HONOR, I'M HAPPY TO ANSWER ANY OF THE COURT'S

10:05AM 23   QUESTIONS, BUT I THINK THAT I'LL LEAVE IT THERE AND ON OUR

10:05AM 24   PAPERS, UNLESS YOUR HONOR HAS QUESTIONS.

10:05AM 25             THE COURT:  YOU HEARD ME ASK MS. VOLKAR ABOUT

10:05AM  1    LIMITING INSTRUCTIONS.  PERHAPS THERE WAS SOME CONVERSATION

10:05AM  2    ABOUT THAT.

10:05AM  3         IS THERE ANY LIMITING INSTRUCTION OR ADMONITION TO ANY

10:06AM  4    ADMONITION OF SOME OF THIS EVIDENCE THAT YOU THINK WOULD ASSIST

10:06AM  5    THE JURY IN NOT TAKING AN UNTOWARD OR INAPPROPRIATE REACTION TO

10:06AM  6    THE EVIDENCE?

10:06AM  7              MR. BRECHER:  IT'S AN INTERESTING QUESTION,

10:06AM  8    YOUR HONOR.

10:06AM  9              THE COURT:  THANK YOU.

10:06AM  10             MR. BRECHER:  I'M TROUBLED TO THINK OF ONE OFFHAND

10:06AM  11   THAT WOULD CURE THE ISSUE.

10:06AM  12        I THINK PART OF THE PROBLEM IS THAT THE PARTIES ARE NOT

10:06AM  13   GOING TO COME TO A PLACE OF ALIGNMENT, RIGHT?

10:06AM  14        WE MIGHT IMAGINE AN INSTRUCTION THAT SAYS SOMETHING LIKE,

10:06AM  15   THIS EVIDENCE IS ONLY ADMISSIBLE FOR FALSITY.  YOU CAN CONSIDER

10:06AM  16   WHETHER IN FACT THE PHARMACEUTICAL COMPANIES AUTHORIZED THIS,

10:06AM  17   BUT YOU CAN'T CONSIDER IT FOR MR. BALWANI'S INTENT.

10:06AM  18        I DON'T THINK THE GOVERNMENT WOULD LIKE THAT VERY MUCH,

10:06AM  19   AND FRANKLY, I DON'T THINK IT WOULD SOLVE -- WHILE IT WOULD BE

10:06AM  20   SOMEWHAT HELPFUL, I DON'T THINK IT WOULD SOLVE OUR CONCERNS

10:06AM  21   BECAUSE, AGAIN, THE NARROW ISSUE THAT WE'RE FOCUSSED ON, AND IT

10:06AM  22   REALLY IS THAT TIGHT ISSUE, IS THE ACT OF ALTERING, DOCTORING,

10:07AM  23   ENHANCING, WHATEVER YOUR HONOR 'S PREFERRED TERM, IN APRIL OF

10:07AM  24   2010.

10:07AM  25        AND SHOWING THAT THERE IS A CONSPIRACY OR COULD BE A

10:07AM 1    CONSPIRACY OR MAYBE WAS A CONSPIRACY OR A SCHEME IN 2013 OR

10:07AM 2    2014, THAT CAN'T GO BACK IN TIME TO 2010 BECAUSE -- AND THE

10:07AM 3    GOVERNMENT ABSOLUTELY RECITES THIS ACCURATELY IN THEIR BRIEF,

10:07AM 4    THEY JUST DON'T APPLY IT ACCURATELY -- ACTS OF COSCHEMERS OR

10:07AM 5    COCONSPIRATORS HAVE TO BE DONE NOT ONLY IN FURTHERANCE OF THE

10:07AM 6    SCHEME OR CONSPIRACY, BUT DURING THE COURSE OF THE SCHEME OR

10:07AM 7    CONSPIRACY.

10:07AM 8         UNDER THE GOVERNMENT'S THEORY, THAT DURATIONAL

10:07AM 9    REQUIREMENT, THAT TEMPORAL RESTRICTION WOULD BE COMPLETELY

10:07AM 10   MEANINGLESS, AND NOW YOU'RE GOING TO HAVE A RANGE OF TRIALS IN

10:07AM 11   WHICH THE GOVERNMENT IS GOING TO TALK ABOUT ALLEGED MISCONDUCT

10:07AM 12   OF ABSENT PARTIES AND ABSENT WITNESSES AND SAYING, YEAH, THE

10:07AM 13   DEFENDANT IS PROBABLY RESPONSIBLE FOR IT.

10:07AM 14        I DON'T THINK THAT THAT CAN STAND, YOUR HONOR.  I THINK

10:07AM 15   THAT OUR NARROW RESTRICTION IS NECESSARY HERE.

10:07AM 16            THE COURT:  SO LET ME JUST REVIEW.  SO YOU'VE TOLD

10:08AM 17   ME THAT THE ALTERED DOCUMENTS MIGHT BE ADMISSIBLE IN THE CASE.

10:08AM 18   YOU SAID THAT YOU COULD SEE THAT THAT WOULD BE IMPORTANT TO THE

10:08AM 19   GOVERNMENT AND THEY WOULD BE ADMISSIBLE TO SHOW THE JURY,

10:08AM 20   HERE'S WHAT INVESTORS RECEIVED, OR THE INVESTORS MAY TESTIFY,

10:08AM 21   YES, THIS IS WHAT I RECEIVED.

10:08AM 22        YOU HAVE NO QUARREL WITH THAT?

10:08AM 23            MR. BRECHER:  NONE WHATSOEVER, YOUR HONOR.

10:08AM 24        I THINK AS LONG AS THERE'S NOTHING FROM WHICH THE JURY

10:08AM 25   COULD INAPPROPRIATELY INFER THAT THERE WAS SOME ALTERATION OR

10:08AM 1    CHANGE, AGAIN, THE SORT OF SOLUTION THAT I'M THINKING OF IN MY

10:08AM 2    HEAD IS SOME KIND OF REDACTION EXERCISE, BUT I'M NOT WEDDED TO

10:08AM 3    THAT.

10:08AM 4            THE COURT:  PARDON ME, I'M JUST NOT FOLLOWING THAT.

10:08AM 5            MR. BRECHER:  OH.

10:08AM 6            THE COURT:  SO THE JURY COULD RECEIVE THE UNALTERED

10:08AM 7    AND THE ALTERED?  DO YOU HAVE ANY PROBLEM WITH THAT?

10:08AM 8            MR. BRECHER:  OH -- I DO.

10:08AM 9        I WANT TO MAKE SURE I'M TRACKING THE COURT'S QUESTION, SO

10:08AM 10   MAYBE I SHOULD BACK UP.

10:08AM 11           THE COURT:  SURE.

10:08AM 12           MR. BRECHER:  THE WITNESSES LIKE MR. WEBER AND

10:09AM 13   MS. CULLEN, THEIR ROLES, THEIR PERSONAL KNOWLEDGE, AND IT

10:09AM 14   ENDS -- IN MR. WEBER'S CASE I THINK IT IS LATE 2008 TO EARLY

10:09AM 15   JANUARY OF 2009, AND IN MS. CULLEN'S CASE IT'S LATE 2009.  SO

10:09AM 16   THEY'RE NOT GOING FORWARD IN TIME.

10:09AM 17       CERTAINLY THE GOVERNMENT CAN SHOW THE WITNESSES THE

10:09AM 18   REPORTS THAT WERE PREPARED BY THERANOS ABOUT THOSE

10:09AM 19   PARTNERSHIPS.

10:09AM 20           THE COURT:  AND THEY WOULD SAY, YES, THIS IS -- THEY

10:09AM 21   TIME STAMPED THOSE REPORTS.

10:09AM 22           MR. BRECHER:  AND SAY, NO, WE DIDN'T COMPREHENSIVELY

10:09AM 23   VALIDATE; NO, WE NEVER COMMUNICATED THAT TO THE COMPANY.

10:09AM 24       PERFECTLY FINE.  I HAVE NO OBJECTION TO IT WHATSOEVER.

10:09AM 25           SECOND, IN THE LATER PERIOD, THAT 2013/2014 PERIOD WHERE

10:09AM 1    THE ENHANCED VERSIONS OF THE REPORTS ARE BEING SENT TO

10:09AM 2    INVESTORS, THAT INVESTORS RECEIVE THESE REPORTS AND WHETHER

10:09AM 3    THAT -- THOSE RELATIONSHIPS AND THOSE REPRESENTATIONS WERE

10:09AM 4    MATERIAL, TOTALLY FAIR GAME.

10:09AM 5        WHETHER THOSE REPRESENTATIONS WERE FALSE, AGAIN, TOTALLY

10:10AM 6    FAIR GAME.

10:10AM 7        WHAT I'M SUGGESTING ABOUT A REDACTION EXERCISE IS WHAT I

10:10AM 8    DON'T WANT THE JURY TO BE ALLOWED TO SEE IS EVEN IF THERE'S NO

10:10AM 9    EXPLICIT ARGUMENT, THE JURY CAN'T SEE TWO DIFFERENT VERSIONS

10:10AM 10   AND SAY, OH, THEY DOCTORED IT UP, THEY COOKED IT UP.  RIGHT?

10:10AM 11       AND I THINK AN EASY SOLUTION TO THAT WOULD BE, IF THE

10:10AM 12   GOVERNMENT PREFERS, TO STRIP AWAY THE PHARMACEUTICAL LOGO, OR

10:10AM 13   IF THE COURT THINKS IT WANTS TO BE MORE EVENHANDED, STRIP AWAY

10:10AM 14   BOTH LOGOS.  I'M COMPLETELY INDIFFERENT ON THAT POINT,

10:10AM 15   YOUR HONOR.

10:10AM 16       I'M PERFECTLY FINE WITH THE JURY SEEING THE REPORTS

10:10AM 17   KNOWING THAT THE PHARMACEUTICAL WITNESSES WILL SAY, NO, I DON'T

10:10AM 18   THINK THAT THAT REFLECTS OUR VIEWS; AND KNOWING THAT THE

10:10AM 19   INVESTORS SAID, YEAH, I THOUGHT THEY HAD BEEN COMPREHENSIVELY

10:10AM 20   VALIDATED, THIS GAVE ME GREAT CONFIDENCE.

10:10AM 21       THAT IS FODDER FOR CROSS-EXAMINATION.  THAT IS FODDER FOR

10:10AM 22   TRIAL.  I WOULD NOT BE HERE TRYING TO KEEP THAT OUT.

10:10AM 23       THAT WOULD BE THE LIAR, LIAR TACTIC, YOU KNOW, IT'S BAD

10:11AM 24   FOR MY CASE SO I WANT YOU TO KEEP IT OUT.

10:11AM 25       WHAT I DO WANT KEPT OUT, YOUR HONOR, IS THE EVIDENCE OF

538

10:11AM 1   DOCTORING, THAT NARROW, NARROW CATEGORY OF EVIDENCE, THOSE

10:11AM 2   CHANGES THAT WERE MADE IN APRIL OF 2010, BECAUSE THERE'S NO

10:11AM 3   TETHER TO MR. BALWANI.

10:11AM 4           THE COURT:  SO YOU HAVE NO QUARREL WITH THE

10:11AM 5   ORIGINAL, BUT YOU DON'T WANT THE, THE ALTERED DOCUMENT?

10:11AM 6           MR. BRECHER:  I DON'T WANT THE ALTERED DOCUMENT IN A

10:11AM 7   WAY THAT WOULD REFLECT THAT IT'S ALTERED.  I'M PERFECTLY

10:11AM 8   FINE --

10:11AM 9           THE COURT:  HOW DO WE DO THAT?

10:11AM 10          MR. BRECHER:  OH, WELL, THROUGH WHAT I SUGGESTED

10:11AM 11  WOULD BE ONE WAY, YOUR HONOR, THROUGH REDACTING THE LOGOS.

10:11AM 12          THE COURT:  I SEE.  OKAY.

10:11AM 13          MR. BRECHER:  RIGHT?

10:11AM 14          THE COURT:  SURE.

10:11AM 15          MR. BRECHER:  SOME UNIFORM VERSION OF THE DOCUMENT.

10:11AM 16      AM I CLEAR ON THAT, YOUR HONOR?

10:11AM 17          THE COURT:  I THINK YOU ARE.

10:11AM 18      LET ME ASK MS. VOLKAR IF SHE IS.

10:11AM 19          MS. VOLKAR:  I THINK MY COLLEAGUE'S COMMENTS FURTHER

10:11AM 20  SHOWS WHY AN ORDER ON THIS POINT WOULD BE UNNECESSARY.

10:11AM 21  ESSENTIALLY WHAT HE'S ASKING FOR IS THE GOVERNMENT NOT TO PUT

10:11AM 22  THE TWO, THE UNALTERED AND ALTERED DOCUMENT NEXT TO EACH OTHER

10:11AM 23  AS WE DID, AND I AGAIN JUST SIMPLY CANNOT SEE ANY BASIS, ANY

10:12AM 24  LEGAL BASIS FOR EXCLUDING THE GOVERNMENT FROM MAKING THAT

10:12AM 25  POINT, THAT THIS IS WHAT THE PHARMACEUTICAL THAT MR. WEBER AND

10:12AM 1    DR. CULLEN RECEIVED, AND THIS IS WHAT INVESTORS RECEIVED.

10:12AM 2        IF WE'RE SAYING THAT THOSE TWO THINGS ARE ADMISSIBLE, I'M

10:12AM 3    REALLY NOT SEEING WHY THE GOVERNMENT'S HANDS SHOULD BE TIED TO

10:12AM 4    NOT PUT THEM SIDE BY SIDE TO SHOW, FOR EXAMPLE, FALSITY,

10:12AM 5    FALSITY IN TERMS OF WHAT WAS TOLD TO THE INVESTORS.

10:12AM 6        THE COURT:  WELL, THAT'S WHAT I'M TRYING -- I'M

10:12AM 7    SORRY TO INTERRUPT YOU, MS. VOLKAR, BUT THAT'S WHAT I'M TRYING

10:12AM 8    TO UNDERSTAND, IS EVIDENCE WILL SHOW THAT THESE TWO

10:12AM 9    INDIVIDUALS, THEY'LL TALK ABOUT WHAT THEIR COMPANIES DID OR

10:12AM 10   DIDN'T DO, AND THEN INVESTORS WILL BE SHOWN A DIFFERENT, IS

10:12AM 11   THIS WHAT YOU RECEIVED?  YES, NO.

10:12AM 12       DID YOU TAKE ACTION BASED ON THIS?  WAS IT MATERIAL TO

10:12AM 13   YOUR DECISION.  YES, NO.

10:12AM 14       ISN'T THAT OKAY?

10:13AM 15       MR. BRECHER:  YES.

10:13AM 16       AND I APOLOGIZE, YOUR HONOR, APPARENTLY I'VE BEEN UNCLEAR.

10:13AM 17       YES, THAT IS FINE.

10:13AM 18       THE ISSUE IS PRECISELY WHAT MS. VOLKAR ARTICULATED, IT'S

10:13AM 19   THE SIDE-BY-SIDE COMPARISON.

10:13AM 20       THE COURT:  AND SO IS IT JUST THE VISUAL YOU DON'T

10:13AM 21   WANT?

10:13AM 22       MR. BRECHER:  NO, IT'S NOT THE VISUAL.  IF THE COURT

10:13AM 23   IS SATISFIED -- ANOTHER ALTERNATIVE WOULD BE ONLY TO ADMIT THE

10:13AM 24   ALTERED VERSION, OR ONLY TO ADMIT THE UNALTERED VERSION.  I'M

10:13AM 25   TRULY INDIFFERENT.

10:13AM 1      WHAT GOES TO FALSITY, YOUR HONOR, IS THE SUGGESTION THAT

10:13AM 2   PHARMACEUTICAL COMPANIES HAVE COMPREHENSIVELY VALIDATED THE

10:13AM 3   TECHNOLOGY.  THOSE WITNESSES, I EXPECT, IF THEY TESTIFY

10:13AM 4   CONSISTENT TO HOW THEY DID IN THE LAST TRIAL, WILL SAY, NO,

10:13AM 5   THAT'S NOT TRUE.

10:13AM 6      I'M FINE WITH THAT.  RIGHT?

10:13AM 7      IT IS THE EXTREMELY DAMNING, NARROW SLIVER OF

10:13AM 8   MS. HOLMES -- AND WE KNOW IT WAS MS. HOLMES GOING IN AND MAKING

10:13AM 9   CHANGES TO BEEF UP THE REPORTS.

10:13AM 10         THE COURT:  I SEE.  SO YOUR QUARREL IS, WELL, IF

10:13AM 11   THEY SEE THAT, WE KNOW, IF WE BELIEVE MS. HOLMES'S TESTIMONY,

10:14AM 12   SHE DID IT.

10:14AM 13         MR. BRECHER:  YES.

10:14AM 14         THE COURT:  NOBODY ASKED HER ON DIRECT OR CROSS, DID

10:14AM 15   ANYONE HELP YOU?  WHO ELSE HELPED YOU WITH IT?

10:14AM 16      I DON'T RECALL ANY QUESTION LIKE THAT.

10:14AM 17         MR. BRECHER:  THERE WERE NO SUCH QUESTIONS,

10:14AM 18   YOUR HONOR.

10:14AM 19         THE COURT:  AND SO YOUR --

10:14AM 20         MR. BRECHER:  I'M SORRY.

10:14AM 21         THE COURT:  AND SO YOUR OBJECTION IS, WELL, IF THE

10:14AM 22   ALTERED IS UP THERE AND THERE'S NO -- EVEN IF THERE'S NO

10:14AM 23   MENTION OF IT IN OUR TRIAL, EVERYONE IS GOING TO LOOK AT MY

10:14AM 24   CLIENT BECAUSE HE'S THE ONLY ONE AT THE DEFENDANT'S TABLE.

10:14AM 25         MR. BRECHER:  PRECISELY RIGHT, YOUR HONOR.  THAT'S

1        THE 403 ISSUE.

2            THERE'S ALSO, OF COURSE, THE VICARIOUS LIABILITY ISSUE.

3        I'LL SPEAK TO THAT FOR JUST 30 SECONDS.

4            YES, THE COURT IS NOT BOUND BY MS. HOLMES'S TESTIMONY.

5        BUT LET'S NOT KID OURSELVES.  THE GOVERNMENT ABSOLUTELY

6        BELIEVED THAT ADMISSION.  THEY TRUMPETED IT IN THEIR CLOSING.

7        I THINK, HAD THE COURT PERMITTED IT, MR. SCHENK MIGHT HAVE BEEN

8        WILLING TO SHOUT IT FROM THE ROOFTOPS.  THEY LOVED THAT

9        EVIDENCE.

10           WE KNOW THAT'S WHAT THEY SAID.  WE KNOW THAT'S AN

11       ADMISSION.  WE DIDN'T HAVE A CHANCE TO FOLLOW UP AND GET THE

12       DETAILS.

13           AND OF COURSE THE GOVERNMENT, BECAUSE THEY'RE TRYING OUR

14       DEFENDANT NEXT, DIDN'T HAVE ANY INCENTIVE TO ASK THAT QUESTION.

15           SO THAT'S THE UNFAIRNESS.  THAT'S THE 403 ISSUE.

16           AGAIN, IT REALLY IS NARROWLY FOCUSSED.  I'M COMPLETELY

17       UNINTERESTED IN STOPPING THE GOVERNMENT IN SOME SORT OF BROAD

18       BASED WAY FROM SAYING THAT PHARMACEUTICAL COMPANIES DIDN'T

19       COMPREHENSIVELY VALIDATE THE TECHNOLOGY.  WE JUST HAVE TO LIVE

20       WITH THAT AND LIVE ON CROSS-EXAMINATION AND ARGUMENT.

21               THE COURT:  OKAY.

22               MR. BRECHER:  BUT WHAT THEY CAN'T SAY IS

23       MR. BALWANI, OR MS. HOLMES, OR SOMEONE, ALTERED THESE REPORTS,

24       BECAUSE THEY DON'T SATISFY THE VICARIOUS LIABILITY STANDARD AND

25       THERE'S NO TIE TO MR. BALWANI.

10:15AM  1         THE COURT:  I HAVE NOT ASKED MS. VOLKAR IF THAT'S

10:15AM  2  WHAT THE GOVERNMENT INTENDS TO DO, TO SAY HE DID IT BECAUSE OF

10:15AM  3  THEIR RELATIONSHIP.

10:15AM  4     IT SOUNDS LIKE THAT'S WHAT THE INFERENCE WOULD BE AND

10:15AM  5  PERHAPS THE CLOSING ARGUMENT WOULD BE.

10:16AM  6        MS. VOLKAR:  YOUR HONOR, WE'LL HAVE TO WAIT AND SEE

10:16AM  7  EXACTLY HOW THE EVIDENCE COMES IN.

10:16AM  8     OF COURSE FOR CLOSING ARGUMENT, I THINK WHAT I WOULD

10:16AM  9  IMAGINE, AND I MAY BE EXTRAPOLATING TOO FAR HERE, IS WE

10:16AM 10  PROBABLY WOULD POINT TO WHAT I DID IN MY BRIEF, WHICH IS THE

10:16AM 11  EMAIL TO WAL-MART THAT WENT NOWHERE, AND THEN THE EMAIL THAT

10:16AM 12  WENT TO WALGREENS AND SAFEWAY AND WENT SOMEWHERE.

10:16AM 13     AND MORE IMPORTANTLY, ONE, I WANT TO SAY THAT BECAUSE THE

10:16AM 14  GOVERNMENT USED THE EVIDENCE THAT WAS IN MS. HOLMES'S TRIAL,

10:16AM 15  THE FACT THAT SHE ADMITTED SHE DID IT IN CLOSING ARGUMENT

10:16AM 16  DOESN'T HELP THEIR 403 ARGUMENT HERE.

10:16AM 17     IF MR. BALWANI TOOK THE STAND AND SAID, I DISCUSSED IT

10:16AM 18  WITH HER, I INSTRUCTED HER TO CHANGE THE LOGOS, WE WOULD ALSO

10:16AM 19  REFERENCE THAT IN OUR CLOSING AND THERE WOULDN'T BE ANY

10:16AM 20  CONTRADICTION BETWEEN THOSE TWO THINGS.

10:16AM 21     BUT MORE IMPORTANTLY THAN THAT, I WANT TO GET BACK TO THE

10:16AM 22  SOLUTION MY COLLEAGUE IS PROPOSING, WHICH IS ONE VERSION OF THE

10:16AM 23  REPORT, SOME WAY WE CAN AGREE ON ONE VERSION OF THE REPORT SO

10:16AM 24  THERE'S NO WAY THAT THE JURY KNOWS THAT THEY WERE ALTERED.

10:16AM 25     PRACTICALLY, HOW DO WE DO THAT, YOUR HONOR?  AND I'M NOT

10:17AM 1     TRYING TO BE CUTE HERE, BUT THE PHARMACEUTICAL WITNESSES NEVER

10:17AM 2     SAW THE VERSION WITH THE LOGO.

10:17AM 3          YES, MS. HOLMES SENT BACK TO PFIZER A VERSION WITH THE

10:17AM 4     LOGO IN, LIKE, 2015.  BUT AT THE TIME, IN THIS 2010 PERIOD

10:17AM 5     WE'RE TALKING ABOUT, THE PHARMA WITNESSES THAT WE CALLED LAST

10:17AM 6     TIME, MR. WEBER AND DR. CULLEN, AND I EXPECT WE MAY CALL THEM

10:17AM 7     IN THIS TRIAL, THEY NEVER SAW THE VERSION WITH THE LOGO.

10:17AM 8          AND IF WE ARE TO DO AS MY COLLEAGUE SUGGESTS AND STRIP

10:17AM 9     THAT PHARMACEUTICAL LOGO OFF AND SHOW IT TO THE INVESTORS, I

10:17AM 10    WOULD POSIT THAT THEY WOULD EXPRESS SURPRISE.

10:17AM 11         MULTIPLE OF THE WITNESSES, MR. MOSLEY, LISA PETERSON,

10:17AM 12    ALAN EISENMAN ALL SAID THAT THEY KEYED IN ON THOSE LOGOS.  THEY

10:17AM 13    FOCUSSED ON THAT.  THAT WAS A BIG PORTION OF WHAT WAS

10:17AM 14    CONVINCING TO THEM.  THAT WAS PART OF THEIR RELIANCE.

10:17AM 15         SO I'M HAVING A HARD TIME OF ENVISIONING A VERSION OF SOME

10:18AM 16    COMBINED UNALTERED REPORT THAT CAN SATISFY THOSE TWO DIFFERENT

10:18AM 17    WITNESSES.

10:18AM 18         IT SIMPLY IS PART OF THE STORY, YOUR HONOR.  IT REALLY IS

10:18AM 19    THE FACT THAT THE ALTERING OF THE PHARMA LOGOS WAS ONE OF THE

10:18AM 20    FALSE MISREPRESENTATIONS.

10:18AM 21         SO THAT BRINGS ME BACK TO FALSITY, AND IF THERE IS A

10:18AM 22    LIMITING INSTRUCTION, PERHAPS IT'S THAT THE JURY CAN ONLY

10:18AM 23    CONSIDER THE ALTERING OF THE LOGOS FOR FALSITY AND NOT

10:18AM 24    KNOWLEDGE.

10:18AM 25         AGAIN, THE GOVERNMENT DISAGREES WITH THAT.

10:18AM 1      AND I GO BACK TO WHERE MY COLLEAGUE STARTED, OR WAS AT A

10:18AM 2  FEW MINUTES AGO, THAT WE HAVE TO SORT OF PROVE BY A

10:18AM 3  PREPONDERANCE OF THE EVIDENCE.

10:18AM 4      I DID NOT SEE A CASE IN THEIR MOTION OR REPLY THAT

10:18AM 5  ACTUALLY REQUIRES THAT.

10:18AM 6      THEY CITE BOURJAILY, WHICH SAYS FOR COCONSPIRATOR

10:18AM 7  STATEMENTS TO GET AROUND HEARSAY UNDER RULE 801(B)(2)(E), THE

10:18AM 8  GOVERNMENT MUST MEET THAT BURDEN.

10:18AM 9      I HAVE NOT YET SEEN A CASE THAT SAYS THAT WE HAVE TO MEET

10:18AM 10  THIS HIGHER BAR.  AND, AGAIN, EVEN IF WE DO -- AND PERHAPS I'M

10:19AM 11  JUST UNAWARE OF THE CASE, THEY DIDN'T CITE ONE -- I THINK THAT

10:19AM 12  WE HAVE MET IT HERE FOR ALL OF THE REASONS THAT I SAID EARLIER

10:19AM 13  TODAY.

10:19AM 14          THE COURT:  THANK YOU.

10:19AM 15          MR. BRECHER:  YOUR HONOR, I HAVE TO RESPOND TO THAT

10:19AM 16  LAST POINT.

10:19AM 17      FIRST, THE GOVERNMENT DOESN'T NEED LOGOS TO PROVE THE

10:19AM 18  FALSITY ELEMENT.

10:19AM 19      AND AS FOR WHAT LATER WITNESSES MIGHT SAY, ONE, PARTIES

10:19AM 20  ROUTINELY INSTRUCT WITNESSES TO GUARD THEMSELVES AROUND THE

10:19AM 21  COURT'S EVIDENTIARY RULINGS.  THAT'S A STANDARD NOT ONLY

10:19AM 22  FEATURE AT TRIAL PRACTICE, IT'S A RESPONSIBILITY OF EXAMINING

10:19AM 23  ATTORNEYS.

10:19AM 24      SECOND, GIVEN THE GOVERNMENT'S OWN MIL'S, I DON'T THINK

10:19AM 25  IT'S APPROPRIATE TO TALK ABOUT INDIVIDUAL INVESTOR'S RELIANCE.

10:19AM 1    THAT'S NOT AN ELEMENT THAT THE GOVERNMENT HAS TO PROVE.

10:19AM 2         THE GOVERNMENT TRIED TO STOP THE DEFENDANTS, AND I THINK

10:19AM 3    IT SUCCEEDED IN STOPPING DEFENDANTS, FROM INTRODUCING THAT SORT

10:19AM 4    OF EVIDENCE.  THEY SHOULDN'T GET TO INTRODUCES IT WHEN THE SHOE

10:19AM 5    IS ON THE OTHER FOOT.

10:19AM 6         BUT SECOND, AS TO THE PREPONDERANCE STANDARD, BOURJAILY,

10:19AM 7    YES, THAT PARTICULAR CASE AROSE IN THE CONTEXT OF COCONSPIRATOR

10:20AM 8    STATEMENTS, WHICH ARE OF COURSE CONCEPTUALLY CLOSELY ANALOGOUS

10:20AM 9    TO THIS SCENARIO.

10:20AM 10        BUT HERE'S WHAT BOURJAILY HAD TO SAY, "WE ARE THEREFORE

10:20AM 11   GUIDED BY OUR PRIOR DECISIONS REGARDING ADMISSIBILITY

10:20AM 12   DETERMINATIONS THAT HINGE ON PRELIMINARY FACTUAL QUESTIONS.  WE

10:20AM 13   HAVE TRADITIONALLY REQUIRED THAT THESE MATTERS BE ESTABLISHED

10:20AM 14   BY A PREPONDERANCE OF PROOF."

10:20AM 15        WHAT BOURJAILY IS SAYING, IN FACT, WHAT BOURJAILY IS

10:20AM 16   REJECTING IS THE CRIMINAL DEFENDANT IN THAT CASE SAID, ONE, YOU

10:20AM 17   CAN'T RELY ON THE HEARSAY STATEMENTS THEMSELVES AS PART OF THAT

10:20AM 18   PRELIMINARY SHOWING, AND THE SUPREME COURT SAID, YES, YOU CAN.

10:20AM 19        AND THEY SAID THERE SHOULD BE A HIGHER STANDARD, SINCE

10:20AM 20   THIS IS A CRIMINAL CASE, THAN PREPONDERANCE, AND THE SUPREME

10:20AM 21   COURT SAID, NO, PREPONDERANCE IS THE STANDARD SHOWING NEEDED AT

10:20AM 22   THAT 104 PRELIMINARY QUESTION GROUND.

10:20AM 23        SO I JUST WANTED TO RESPOND TO THAT BRIEF POINT.

10:20AM 24        OTHER THAN THAT, YOUR HONOR, I KNOW THAT THE COURT HAS

10:20AM 25   GIVEN THIS SUBSTANTIAL ATTENTION AND I APPRECIATE THAT.

10:20AM 1          THE COURT:  NO.  THANK YOU FOR THE CONVERSATION,

10:20AM 2     BOTH OF YOU.

10:20AM 3          ONE THING THAT YOU DIDN'T TALK ABOUT IS FOUND ON PAGE 2,

10:20AM 4     ECF PAGE 2 OF 1337, AND THE TIMELINESS OF THE MOTION.

10:21AM 5          I THINK THE REPLY WAS FILED YESTERDAY, I BELIEVE IT WAS.

10:21AM 6          MR. BRECHER:  YES.

10:21AM 7          THE COURT:  WITH GREAT CONFIDENCE HE SAYS, YES, IT

10:21AM 8     WAS.

10:21AM 9          MR. BRECHER:  I'M HAPPY TO SPEAK TO THAT.

10:21AM 10         THE COURT:  NO, NO.

10:21AM 11         WE RECEIVED THAT, AND THEN IN A FOOTNOTE ON THE PAGE THAT

10:21AM 12    I JUST MENTIONED, FOOTNOTE 1 INDICATES THE GOVERNMENT, AS WE

10:21AM 13    KNOW, COMMITS NOT TO MENTION THIS, AND I APPRECIATE THAT.  THAT

10:21AM 14    TAKES SOME TIME PRESSURE OFF OF THE COURT AS TO WHEN IT WILL

10:21AM 15    LET YOU KNOW, BY ORDER OR OTHERWISE, THE DECISION AS TO THIS

10:21AM 16    MOTION.

10:21AM 17         IT SOUNDS LIKE -- LET ME JUST SAY, WHEN I LOOKED AT THIS

10:21AM 18    MOTION, IN THE SPIRIT OF FULL DISCLOSURE, I SAID, IS THIS ONE

10:21AM 19    OF, LOOKING AT OUR, AT THE MIL ORDERS -- YOU KNOW, I USE THIS

10:21AM 20    PHRASE OFTEN IN THOSE, AS YOU KNOW -- IS THIS SOMETHING THAT

10:21AM 21    SHOULD BE DEFERRED UNTIL THERE'S A FOUNDATION OR WHAT?

10:21AM 22         AND THEN MY CONCERN WAS, WELL, THAT'S NOT FAIR TO THE

10:22AM 23    PARTIES BECAUSE THEY WANT TO TELL THE JURY IN THEIR OPENING

10:22AM 24    STATEMENTS WHAT THEY CAN EXPECT TO HEAR.

10:22AM 25         AND THE TIMING OF THIS CAUSED ME SOME CONCERN.  THE

10:22AM 1    GOVERNMENT SAID, WE'RE NOT GOING TO TALK ABOUT THIS IN OUR

10:22AM 2    OPENING, AND I APPRECIATE THAT.  THAT GIVES THE COURT A LITTLE

10:22AM 3    BIT OF LATITUDE.

10:22AM 4        IT GIVES YOU SOME LATITUDE AS WELL FROM YOUR TEAMS, I

10:22AM 5    THINK.

10:22AM 6            MR. BRECHER:  WELL, YOUR HONOR, THIS KILLS ME TO

10:22AM 7    SAY, AND MS. VOLKAR CAN CORRECT ME IF I'M MISTAKEN, BUT I DON'T

10:22AM 8    KNOW HOW MUCH LATITUDE THERE IS.

10:22AM 9        AGAIN, THE GOVERNMENT CAN CORRECT ME, BUT MY UNDERSTANDING

10:22AM 10   BASED, ON RECENT DISCLOSURES, IS THAT THEY PLAN TO CALL SOME OF

10:22AM 11   THESE PHARMACEUTICAL COMPANY WITNESSES QUITE EARLY IN THEIR

10:22AM 12   CASE-IN-CHIEF.

10:22AM 13       THEY DID MAKE THAT REPRESENTATION ABOUT THEIR OPENING

10:22AM 14   STATEMENT, WHICH I VERY MUCH CONSIDERED.

10:22AM 15       I'M HAPPY TO SPEAK TO THE TIMELINESS ISSUE.  I THINK IT'S

10:22AM 16   JUST SORT OF A BRIEF MATTER.

10:22AM 17       AS THE COURT KNOWS, THE PARTIES CAN RAISE EVIDENTIARY

10:22AM 18   OBJECTIONS IN TRIAL, AND WE COULD HAVE FILED THIS IDENTICAL

10:22AM 19   BRIEF THE MORNING THAT MR. WEBER WAS SCHEDULED TO GET ON THE

10:22AM 20   STAND.

10:22AM 21       WE FILED IT UNDER THE NORMAL NOTING PERIOD ALLOWED BY THE

10:22AM 22   LOCAL RULES.  THE GOVERNMENT HAD THE FULL RESPONSE PERIOD

10:23AM 23   ALLOWED BY THE LOCAL RULES.  IT'S ONLY THE HEARING DATE THAT

10:23AM 24   HAS BEEN PUSHED UP A FEW DAYS TO MAKE SURE WE'RE AHEAD OF

10:23AM 25   OPENINGS.

10:23AM  1      I THINK, AND AS THE CASES THAT WE CITE IN OUR REPLY POINT

10:23AM  2  OUT, ALLOWING THIS PROCESS TO PLAY OUT THE WAY IT IS, IS BETTER

10:23AM  3  THAN WAITING UNTIL THE NIGHT BEFORE OR THE MORNING OF.  IT

10:23AM  4  GIVES THE COURT AT LEAST SOME TIME, AND AS EXCELLENT AS

10:23AM  5  MS. VOLKAR IS, AND I'VE KNOWN HER FOR SOME TIME, I KNOW SHE CAN

10:23AM  6  WRITE A KILLER BRIEF OVERNIGHT.

10:23AM  7      I DON'T KNOW IF SHE CAN WRITE A KILLER BRIEF IN FOUR

10:23AM  8  MINUTES, WHICH IS WHAT WOULD HAPPEN IF WE BROUGHT THIS TYPE OF

10:23AM  9  MOTION THE MORNING OF.

10:23AM 10      SO I'M HAPPY TO SPEAK TO IT, YOUR HONOR.

10:23AM 11          THE COURT:  MAYBE FIVE OR SIX MINUTES.

10:23AM 12          MR. BRECHER:  I'D SAY AT LEAST SEVEN, BUT SHE IS

10:23AM 13  VERY GOOD, YOUR HONOR.

10:23AM 14      KNOWING, YOUR HONOR, THAT AT LEAST ONE PRONG OF OUR

10:23AM 15  MOTION, WHICH IS THE 403 ELEMENT, DIDN'T ARISE UNTIL AFTER THE

10:23AM 16  MIL DEADLINE.  AND OF COURSE WE BROUGHT THIS UP IN A MEET AND

10:23AM 17  CONFER AND WHEN WE LEARNED WE SWIFTLY MOVED.

10:23AM 18          THE COURT:  SURE.  I APPRECIATE IT.  I APPRECIATE

10:23AM 19  THE FACT THAT YOU ARE USING THE MEET AND CONFER PROCESS TO MAKE

10:24AM 20  THE TRIAL MORE EFFICIENT, WHILE ALLOWING YOU BOTH TO DO WHAT

10:24AM 21  YOU NEED TO DO ON EACH SIDE, AND I'M GRATEFUL FOR THAT.

10:24AM 22      AND I THINK THE OBJECTION FROM THE GOVERNMENT WAS, WELL,

10:24AM 23  THE LAST DAY TO FILE MOTIONS WAS NOVEMBER, OR SOMETHING LIKE

10:24AM 24  THAT.

10:24AM 25      AS YOU POINT OUT, THE TRIAL IS A FLUID PROCESS.  THINGS

10:24AM 1   HAPPEN.  I APPRECIATE THE FACT THAT YOU RESPECT THAT FILING A

10:24AM 2   MOTION THE NIGHT BEFORE, THE MORNING OF, IS -- AND I'VE USED

10:24AM 3   THE PHRASE BEFORE -- MOZART TO A JUDGE'S EAR.  IT'S PROBABLY

10:24AM 4   MORE LIKE LED ZEPPELIN TO CERTAIN JUDGE'S EARS.

10:24AM 5              MR. BRECHER:  I UNDERSTAND.  I CAN'T SAY THAT WILL

10:24AM 6   NEVER HAPPEN.  BUT ALWAYS, AS YOUR HONOR POINTED OUT, IT'S A

10:24AM 7   FLUID PROCESS.  I THINK THE PHRASE IN THE HOLMES TRIAL YOU USED

10:24AM 8   WAS A MOVABLE FEAST ON A RELATED ISSUE.

10:24AM 9       BUT ONCE THIS ISSUE CAME TO OUR MINDS AND WE CONFERRED

10:25AM 10  WITH THE GOVERNMENT, WE MOVED SWIFTLY AND WANTED TO PUT IT IN

10:25AM 11  FRONT OF YOU.

10:25AM 12      SO THANK YOU FOR HEARING US TODAY.

10:25AM 13             THE COURT:  THANK YOU SO MUCH.  MATTER IS UNDER

10:25AM 14  SUBMISSION.  THANK YOU SO MUCH.

10:25AM 15             MS. VOLKAR:  THANK YOU, YOUR HONOR.  AND THANK YOU

10:25AM 16  FOR THE KIND WORDS.

10:25AM 17             THE COURT:  SO I BELIEVE -- LET'S MOVE ON TO ANOTHER

10:25AM 18  ISSUE.  THE RECORD SHOULD REFLECT IT'S 10:25.

10:25AM 19      I BELIEVE WE ASKED THOSE SIX JURORS TO COME BACK THIS

10:25AM 20  MORNING.

10:25AM 21      ARE THEY HERE?

10:25AM 22             THE CLERK:  THEY ARE HERE.

10:25AM 23             THE COURT:  GREAT.  SO, COUNSEL, DO YOU WANT TO TAKE

10:25AM 24  A MOMENT TO REGROUP ON THIS?

10:25AM 25             MR. SCHENK, MR. COOPERSMITH.

10:25AM 1      MR. SCHENK:  THANK YOU, YOUR HONOR.

10:25AM 2      YES, I THINK THAT WOULD BE GREAT, JUST A FEW MINUTES MAYBE

10:25AM 3  WHILE THE JURY IS BROUGHT UP.

10:25AM 4      AND THEN IS THE PLAN TO DO THE SAME THING THAT WE DID

10:25AM 5  YESTERDAY WITH THE GROUP, AND THAT IS, SORT OF BEGIN THE

10:25AM 6  QUESTIONS WITH ALL OF THEM IN THE COURTROOM TO DETERMINE

10:25AM 7  WHETHER INDIVIDUAL VOIR DIRE OF THIS, I BELIEVE IT'S SIX OR SO

10:26AM 8  INDIVIDUALS, IS NECESSARY?

10:26AM 9      THE COURT:  THAT WAS MY THOUGHT.

10:26AM 10     MR. COOPERSMITH.

10:26AM 11     MR. COOPERSMITH:  YES.  AS I SAID YESTERDAY, THAT

10:26AM 12 WAS CERTAINLY BETTER THAN TRYING TO DO IT WITH THE WHOLE VENIRE

10:26AM 13 PANEL HERE.

10:26AM 14     IT IS AWKWARD TO TRY TO GET AT WHAT THEIR KNOWLEDGE IS

10:26AM 15 ABOUT THE RELATIONSHIP IN THE GROUP SETTING.  I THINK THE TWO

10:26AM 16 THAT WERE BROUGHT IN YESTERDAY WERE -- THAT WAS MORE EFFECTIVE

10:26AM 17 AND IT DIDN'T TAKE TOO MUCH TIME.

10:26AM 18     THE COURT:  RIGHT.

10:26AM 19     MR. COOPERSMITH:  BUT THAT'S OUR PREFERENCE.

10:26AM 20     BUT, AGAIN, THE GROUP OF 6 IS BETTER THAN A GROUP OF 40.

10:26AM 21     THE COURT:  WELL, LET'S START WITH THEM, AND THEN

10:26AM 22 YOUR ARTFUL QUESTIONING WILL DEVELOP WHETHER AND WHEN WE NEED

10:26AM 23 TO GO AND SPEAK INDIVIDUALLY, AND YOU SHOULD JUST LET ME KNOW

10:26AM 24 AND NOT BE SHY ABOUT SAYING, JUDGE, CAN WE STOP HERE AND MAYBE

10:26AM 25 WE'LL INVITE A PRIVATE CONVERSATION WITH THIS JUROR, OR

10:26AM  1    SOMETHING LIKE THAT.

10:26AM  2            MR. COOPERSMITH:  YES, YOUR HONOR.  I UNDERSTAND.

10:26AM  3        IN TERMS OF AN AGENDA THAT WE WOULD LIKE TO PROPOSE, YES,

10:26AM  4    THAT'S THE FIRST ITEM OR ORDER OF BUSINESS TODAY, TO DO THIS

10:27AM  5    WITH THE SIX JURORS.  THAT'S ABOUT THEIR KNOWLEDGE OF THE

10:27AM  6    RELATIONSHIP.

10:27AM  7        AND THEN WE ALSO HAVE THE ISSUE OF CAUSE AND HARDSHIP

10:27AM  8    ISSUES FROM PANEL ONE FROM THE FIRST DAY, LAST WEDNESDAY.

10:27AM  9        AND THEN AFTER THAT WE CAN TALK MORE ABOUT WHAT THIS JURY

10:27AM  10   LOOKS LIKE BASED ON WHERE THE LANDSCAPE IS.

10:27AM  11           THE COURT:  RIGHT.  WELL, WHAT I'M HOPING TO DO --

10:27AM  12   THANK YOU.

10:27AM  13       WHAT I'M HOPING TO DO WITH OUR TIME TODAY IS TO DO THAT,

10:27AM  14   ALL OF THAT, AND HOPEFULLY GET A FINAL UNIVERSE OF OUR PANEL

10:27AM  15   TODAY.

10:27AM  16       I'D LIKE US TO BEGIN THE JURY SELECTION PROCESS TODAY,

10:27AM  17   THAT IS, PASSING YOUR SELECTIONS FOR ANY PEREMPTORY CHALLENGES

10:27AM  18   THAT YOU MIGHT HAVE SUCH THAT WE COULD SECURE A JURY AND

10:27AM  19   ALTERNATES TODAY, NOTIFY THOSE INDIVIDUALS TO REPORT TO COURT,

10:27AM  20   SWEAR THEM IN, AND THEN BEGIN THE CASE.

10:27AM  21       I THINK WE CAN DO THAT TODAY.

10:27AM  22           MR. COOPERSMITH:  YOUR HONOR, IT'S POSSIBLE.  I

10:27AM  23   THINK WE HAVE TO SEE WHAT THE NUMBERS ARE AFTER THE ADDITIONAL

10:28AM  24   CAUSE AND SOME HARDSHIP ISSUES THAT WE NEVER ADDRESSED FROM

10:28AM  25   PANEL ONE.

10:28AM   1          ONCE WE GET THROUGH THAT, THEN WE'LL KNOW WHAT THE NUMBER

10:28AM   2     IS.

10:28AM   3          BUT I THINK THE MINIMUM NUMBER IS 40.

10:28AM   4              THE COURT:  RIGHT.

10:28AM   5              MR. COOPERSMITH:  AND IF WE HAVE MORE THAN 40, THEN

10:28AM   6     YES.

10:28AM   7          WE HAVE SOME OTHER ISSUES THAT WE WOULD LIKE TO DISCUSS

10:28AM   8     ABOUT THE PROCESS, BUT, YES, IT DEPENDS ON WHAT THE NUMBERS ARE

10:28AM   9     AFTER THE SIX COMING IN AND THEN THE ADDITIONAL STRIKES FROM

10:28AM   10    WEDNESDAY.

10:28AM   11             THE COURT:  OKAY.

10:28AM   12             MR. SCHENK:  THAT AGENDA SOUNDS GREAT TO THE

10:28AM   13    GOVERNMENT.

10:28AM   14             THE COURT:  OKAY.  ALL RIGHT.  LET'S TAKE A BRIEF

10:28AM   15    BREAK AND WE'LL COME BACK IN ABOUT TEN MINUTES.

10:28AM   16             MR. SCHENK:  THANK YOU.

10:28AM   17         (RECESS FROM 10:28 A.M. UNTIL 10:43 A.M.)

10:43AM   18         (PROSPECTIVE JUROR NUMBERS 10, 34, 48, 80, 82, AND 83 IN

10:43AM   19    AT 10:43 A.M.)

10:43AM   20             THE COURT:  WE ARE BACK ON THE RECORD IN THE BALWANI

10:44AM   21    MATTER.

10:44AM   22         ALL COUNSEL ARE PRESENT.  MR. BALWANI IS PRESENT.

10:44AM   23         WE HAD INVITED BACK CERTAIN PROSPECTIVE JURORS, AND THESE

10:44AM   24    ARE -- AGAIN, I'M GOING TO REFERENCE BY JUROR NUMBERS, PLEASE.

10:44AM   25         WHEN I CALL YOUR NUMBER, IF YOU COULD JUST RAISE YOUR HAND

10:44AM 1    JUST FOR CONFIRMATION.

10:44AM 2         JUROR NUMBER 10.  THANK YOU.

10:44AM 3         34.  THANK YOU.

10:44AM 4         48.  THANK YOU.

10:44AM 5         80.

10:44AM 6         82.  THANK YOU.

10:44AM 7         AND 83.  THANK YOU.

10:44AM 8         THANK YOU ALL FOR COMING BACK.  GOOD MORNING.  I APOLOGIZE

10:44AM 9    FOR THE INCONVENIENCE THAT THIS MAY HAVE CAUSED YOU COMING

10:44AM 10   BACK.

10:44AM 11        WE ASKED YOU TO COME BACK TODAY FOR A LIMITED PURPOSE, AND

10:44AM 12   THIS IS IN REGARDS TO THE RESPONSE TO SOME QUESTIONS BOTH ON

10:45AM 13   YOUR QUESTIONNAIRES AND ALSO ON QUESTIONS THAT WERE ASKED

10:45AM 14   YESTERDAY.  THIS IS SPECIFICALLY RELATED TO YOUR KNOWLEDGE OF

10:45AM 15   THE HOLMES CASE, I THINK.

10:45AM 16        IS THAT CORRECT, COUNSEL?  IS THAT WHAT YOU WOULD LIKE?

10:45AM 17             MR. COOPERSMITH:  YOUR HONOR, NO.  IT HAS TO DO WITH

10:45AM 18   THE RELATIONSHIP BETWEEN MR. BALWANI AND --

10:45AM 19             THE COURT:  I SEE.  ALL RIGHT.  THANK YOU.

10:45AM 20        THE RELATIONSHIP BETWEEN MR. BALWANI AND MS. HOLMES.

10:45AM 21        AND THERE WERE SOME COMMENTS MADE THAT COUNSEL AND I WOULD

10:45AM 22   LIKE TO FOLLOW UP WITH YOU ON THAT.

10:45AM 23        AND YOU ANSWERED THOSE QUESTIONS IN YOUR QUESTIONNAIRE.

10:45AM 24   YOU RESPONDED TO SOME QUESTIONS OF COUNSEL.

10:45AM 25        WE JUST WANTED TO ASK YOU SOME FOLLOW-UP QUESTIONS THIS

10:45AM  1      MORNING ABOUT THAT.  COLLECTIVELY, IT MAY BE THAT WE'LL -- IT

10:46AM  2      MAY BE THAT WE WILL TALK WITH YOU PRIVATELY, INDIVIDUALLY,

10:46AM  3      ABOUT THIS.

10:46AM  4           BUT LET ME SEE.  MR. -- WOULD YOU LIKE TO GO FIRST,

10:46AM  5      MR. COOPERSMITH?

10:46AM  6                MR. COOPERSMITH:  I'M HAPPY TO, YOUR HONOR.

10:46AM  7                THE COURT:  SURE.  GO RIGHT AHEAD.

10:46AM  8                MR. COOPERSMITH:  MAY I REMOVE MY MASK?

10:46AM  9                THE COURT:  YES.  THANK YOU.

10:46AM 10                MR. COOPERSMITH:  GOOD MORNING, EVERYONE.

10:46AM 11           AGAIN, NOT THAT YESTERDAY YOU HAD A CHOICE, BUT THANK YOU

10:46AM 12      FOR COMING BACK HERE.  AS JUDGE DAVILA SAID, I'M SORRY FOR THE

10:46AM 13      IMPOSITION THAT THAT CAUSES TO YOUR SCHEDULES.

10:46AM 14           AS WE SAID THE OTHER DAY WHEN YOU WERE HERE, I BELIEVE IT

10:46AM 15      WAS ON WEDNESDAY, THIS IS A VERY IMPORTANT PROCESS TO MAKE SURE

10:46AM 16      THAT WE CAN HAVE AS FAIR A TRIAL AS POSSIBLE.  SO, AGAIN, THANK

10:46AM 17      YOU.

10:46AM 18           AND AS I SAID BEFORE ON WEDNESDAY, THERE ARE NO WRONG

10:46AM 19      ANSWERS TO THE QUESTIONS THAT I'LL ASK.  IT'S REALLY JUST A

10:46AM 20      MATTER OF NOT ABOUT YOU PERSONALLY, WHETHER YOU'RE A FAIR

10:46AM 21      PERSON OR GOOD PERSON, JUST WHETHER YOU HAVE CERTAIN KNOWLEDGE

10:47AM 22      THAT COULD BE AN ISSUE, YOU KNOW, WITH SERVING AS A JUROR IN

10:47AM 23      THIS CASE.

10:47AM 24           SO THANK YOU AGAIN.

10:47AM 25           LET ME JUST TELL YOU WHAT THIS IS ABOUT AGAIN.  SO FOR

```
10:47AM   1    SOME OF YOU IN THE QUESTIONNAIRES, AND SOME OF YOU HAVE BY A

10:47AM   2    SHOW OF HANDS, THERE WAS A QUESTION ABOUT WHETHER YOU WERE

10:47AM   3    AWARE OF A RELATIONSHIP, AND SPECIFICALLY A ROMANTIC

10:47AM   4    RELATIONSHIP, BETWEEN MR. BALWANI AND ELIZABETH HOLMES.

10:47AM   5         MR. BALWANI IS THE DEFENDANT WHO IS ON TRIAL IN THIS

10:47AM   6    PROCEEDING, NOT MS. HOLMES.

10:47AM   7         AND THE QUESTION WAS, ARE YOU AWARE OF THE RELATIONSHIP?

10:47AM   8         AND OUR UNDERSTANDING IS THAT ALL OF YOU RAISED YOUR HANDS

10:47AM   9    IN RESPONSE TO THAT.

10:47AM  10         SO LET ME JUST FIRST CONFIRM THAT THAT'S THE CASE TO MAKE

10:47AM  11    SURE THAT WE'VE GOT THE RIGHT PEOPLE, RIGHT.

10:47AM  12         AND SIR, YOU'RE JUROR NUMBER 83?

10:47AM  13              JUROR:  I'M SORRY?

10:47AM  14              MR. COOPERSMITH:  ARE YOU JUROR NUMBER 83?

10:47AM  15              JUROR:  I'M SORRY, I CAN'T --

10:47AM  16              MR. COOPERSMITH:  ARE YOU JUROR NUMBER 83?

10:47AM  17              JUROR:  YES, YES.

10:48AM  18              MR. COOPERSMITH:  AND DID YOU ALSO RAISE YOUR HAND,

10:48AM  19    SIR, IN RESPONSE TO THAT QUESTION?

10:48AM  20              JUROR:  YES, I DID.

10:48AM  21              MR. COOPERSMITH:  SO MY FIRST QUESTION IS, IS THERE

10:48AM  22    ANYTHING ABOUT YOUR KNOWLEDGE OF THE RELATIONSHIP BETWEEN

10:48AM  23    MR. BALWANI AND MS. HOLMES, AND SPECIFICALLY THE ROMANTIC

10:48AM  24    RELATIONSHIP, THAT GIVES YOU ANY DOUBT THAT YOU COULD BE A FAIR

10:48AM  25    AND IMPARTIAL JUROR?
```

556

| | | |
|---|---|---|
| 10:48AM | 1 | THE COURT:  IS THIS FOR THE ENTIRE GROUP? |
| 10:48AM | 2 | MR. COOPERSMITH:  THIS IS FOR THE ENTIRE GROUP. |
| 10:48AM | 3 | COULD YOU RAISE YOUR HAND IF YOU THINK IT GIVES YOU ANY |
| 10:48AM | 4 | DOUBT AT ALL HAVING THAT KNOWLEDGE, WHETHER YOU COULD BE FAIR |
| 10:48AM | 5 | AND IMPARTIAL? |
| 10:48AM | 6 | SO JUROR NUMBER 34 AND JUROR NUMBER 10, YOU RAISED YOUR |
| 10:48AM | 7 | HANDS. |
| 10:48AM | 8 | ANY OTHER RESPONSES? |
| 10:48AM | 9 | OKAY.  I SEE NO OTHER HANDS. |
| 10:48AM | 10 | NOW, I KNOW THAT, AND MAYBE WE ALL KNOW, THAT ROMANTIC |
| 10:49AM | 11 | RELATIONSHIPS CAN BE COMPLEX.  THAT'S JUST THE WAY THAT LIFE |
| 10:49AM | 12 | IS. |
| 10:49AM | 13 | AND MY NEXT QUESTION IS, BY A SHOW OF HANDS, PLEASE RAISE |
| 10:49AM | 14 | YOUR HAND IF YOU WERE AWARE OF ANYTHING ABOUT THE RELATIONSHIP |
| 10:49AM | 15 | BETWEEN MS. HOLMES AND MR. BALWANI WHERE THERE WAS SOME |
| 10:49AM | 16 | DIFFICULTIES IN THE RELATIONSHIP THAT WERE AT LEAST ALLEGED OR |
| 10:49AM | 17 | REPORTED ON IN THE MEDIA THAT YOU MAY HAVE READ. |
| 10:49AM | 18 | AND THAT'S JUROR NUMBER 79? |
| 10:49AM | 19 | JUROR:  80. |
| 10:49AM | 20 | MR. COOPERSMITH:  OH, 80. |
| 10:49AM | 21 | JUROR:  82. |
| 10:49AM | 22 | MR. COOPERSMITH:  AND? |
| 10:49AM | 23 | JUROR:  83. |
| 10:49AM | 24 | MR. COOPERSMITH:  ANY OTHER HANDS ON THAT ONE? |
| 10:49AM | 25 | THANK YOU, YOUR HONOR. |

10:49AM 1          THOSE WERE THE QUESTIONS THAT I WANTED TO ASK, YOUR HONOR.

10:49AM 2          CAN WE HAVE A MOMENT?

10:49AM 3              THE COURT:  DID YOU WANT TO TALK WITH YOUR TEAM?

10:49AM 4              MR. COOPERSMITH:  TO YOUR HONOR.

10:49AM 5              THE COURT:  ALL RIGHT.  SURE.

10:49AM 6          WITH MR. SCHENK HERE?

10:49AM 7          LET ME ASK YOU THIS, MR. COOPERSMITH, IS IT YOUR --

10:50AM 8          FIRST OF ALL, MR. SCHENK, DO YOU HAVE ANY QUESTIONS?

10:50AM 9              MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

10:50AM 10             THE COURT:  MR. COOPERSMITH, WOULD YOU LIKE ME TO

10:50AM 11 INVITE ANY OF THESE JURORS TO A PRIVATE CONVERSATION WITH YOU,

10:50AM 12 ME, AND THE GOVERNMENT?

10:50AM 13             MR. COOPERSMITH:  YES, YOUR HONOR.

10:50AM 14         AND MAYBE THAT WOULD BE AN EASIER WAY TO DO IT, JUST TO

10:50AM 15 SAY THE JURORS WHO RESPONDED AFFIRMATIVELY IN ONE WAY OR THE

10:50AM 16 OTHER, I THINK THAT WOULD BE HELPFUL.

10:50AM 17         THERE WAS ONE JUROR --

10:50AM 18         I'M SORRY, SIR.  YOUR JUROR NUMBER?

10:50AM 19             JUROR:  48.

10:50AM 20             MR. COOPERSMITH:  48.  I DON'T THINK JUROR 48 RAISED

10:50AM 21 HIS HAND IN RESPONSE TO EITHER QUESTION, SO I DON'T THINK IT'S

10:50AM 22 NECESSARY FOR JUROR 48.

10:50AM 23             THE COURT:  OKAY.

10:50AM 24             MR. COOPERSMITH:  BUT FOR THE OTHER JURORS.

10:50AM 25             THE COURT:  OKAY.  ARE YOU SAYING THAT WE COULD

10:50AM 1    RELEASE JUROR 48 IN YOUR OPINION?

10:50AM 2            MR. COOPERSMITH:  YES, YOUR HONOR.

10:50AM 3            THE COURT:  FOR PURPOSES OF THIS MORNING?

10:50AM 4            MR. COOPERSMITH:  YES, YOUR HONOR.

10:50AM 5            THE COURT:  OKAY.

10:50AM 6        MR. SCHENK?

10:50AM 7            MR. SCHENK:  I AGREE REGARDING JUROR 48.

10:50AM 8            THE COURT:  OKAY.  JUROR 48, THANK YOU FOR COMING

10:50AM 9    IN.  IT'S GOOD SEEING YOU AGAIN.

10:51AM 10            JUROR:  GREAT.

10:51AM 11            THE COURT:  YOU'LL BE NOTIFIED AGAIN WHETHER OR NOT

10:51AM 12    YOU NEED TO RETURN AND WHEN THAT WOULD BE, SIR.  THANK YOU.

10:51AM 13            JUROR:  OKAY.  THANK YOU.

10:51AM 14            THE COURT:  THANK YOU.

10:51AM 15        (PROSPECTIVE JUROR NUMBER 48 NOT PRESENT.)

10:51AM 16            THE COURT:  SO, FOLKS, I THINK WHAT I'D LIKE TO DO

10:51AM 17    IS TO USE THE ROOM BACK HERE, AND THEN WE CAN HAVE A

10:51AM 18    CONVERSATION WITH EACH JUROR PRIVATELY.

10:51AM 19        I DON'T THINK THIS IS GOING TO TAKE VERY LONG.

10:51AM 20        MR. COOPERSMITH?  MR. SCHENK?

10:51AM 21            MR. COOPERSMITH:  I DON'T THINK EITHER, YOUR HONOR.

10:51AM 22            THE COURT:  MR. SCHENK, I DON'T THINK IT WILL.

10:51AM 23        SO, LADIES AND GENTLEMEN, WE'RE GOING TO CALL YOU BACK ONE

10:51AM 24    AT A TIME TO SPEAK WITH US PRIVATELY IN THE BACK ROOM HERE.

10:51AM 25    YOU'LL JUST WAIT HERE.  THE BALANCE OF YOU WILL JUST PLEASE SIT

559

10:51AM 1     HERE AND WAIT UNTIL WE'RE READY FOR YOU OR YOU'RE CALLED TO

10:51AM 2     COME BACK.

10:51AM 3          I DON'T THINK THIS WILL TAKE TOO LONG.

10:52AM 4          IF ANY OF YOU WOULD LIKE ANY REFRESHMENTS WHILE YOU'RE

10:52AM 5     WAITING, PLEASE LET MS. ROBINSON KNOW, AND WE CAN GET YOU

10:52AM 6     WATER.  I THINK WE HAVE TEA AVAILABLE AS WELL IF YOU WOULD LIKE

10:52AM 7     SOME.

10:52AM 8          BUT I DON'T THINK THIS WILL TAKE TOO LONG.

10:52AM 9          OKAY.  LET'S START WITH JUROR 34 THEN, AND WE'LL HAVE YOU

10:52AM 10    ESCORTED BACK.

10:52AM 11         COUNSEL, WHO IS GOING TO COME BACK?  MR. SCHENK?

10:52AM 12              MS. SCHENK:  YES, YOUR HONOR.

10:52AM 13              THE COURT:  THANK YOU.

10:52AM 14         MR. COOPERSMITH, YOU'RE GOING TO COME BACK, AND YOU WOULD

10:52AM 15    LIKE MS. WALSH TO JOIN YOU?

10:52AM 16              MR. COOPERSMITH:  YES, YOUR HONOR.

11:43AM 17              MR. SCHENK:  AND WE WOULD LIKE MR. LEACH.

11:43AM 18              THE COURT:  ALL RIGHT.  THANK YOU.

11:43AM 19         (SIDE-BAR CONFERENCE ON THE RECORD.)

11:43AM 20         (PROSPECTIVE JUROR NUMBER 34 IS PRESENT.)

11:43AM 21              THE COURT:  ALL RIGHT.  WE'RE ON THE RECORD -- THE

11:43AM 22    FLOOR JUST GOT TALLER OR SOMETHING.

11:43AM 23         WE'RE ON THE RECORD OUTSIDE THE PRESENCE OF THE COURTROOM.

11:43AM 24    WE'RE IN THE JURY DELIBERATION ROOM WITH JUROR NUMBER 34

11:43AM 25    MEETING PRIVATELY WITH COUNSEL, MR. LEACH, MR. SCHENK,

| | | |
|---|---|---|
| 11:43AM | 1 | MS. WALSH, AND MR. COOPERSMITH. |
| 11:43AM | 2 | AND, MR. COOPERSMITH, DID YOU HAVE QUESTIONS FOR JUROR 34? |
| 11:43AM | 3 | MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU. |
| 11:43AM | 4 | AND WILL YOU BE COMFORTABLE IF I REMOVE MY MASK? |
| 11:43AM | 5 | PROSPECTIVE JUROR:  YES, ABSOLUTELY. |
| 11:43AM | 6 | MR. COOPERSMITH:  OKAY.  THANK YOU. |
| 11:43AM | 7 | AGAIN, THANK YOU FOR YOUR TIME. |
| 11:43AM | 8 | PROSPECTIVE JUROR:  NO WORRIES. |
| 11:43AM | 9 | MR. COOPERSMITH:  AND BEING HONEST.  IT'S JUST THAT |
| 11:43AM | 10 | THIS IS THE PROCESS. |
| 11:43AM | 11 | PROSPECTIVE JUROR: |
| 11:43AM | 12 | MR. COOPERSMITH:  AND MY FIRST QUESTION FOR YOU IS, |
| 11:43AM | 13 | YOU RAISED YOUR HAND ABOUT KNOWLEDGE OF THE RELATIONSHIP; IS |
| 11:43AM | 14 | THAT RIGHT? |
| 11:43AM | 15 | PROSPECTIVE JUROR:  THAT'S RIGHT. |
| 11:43AM | 16 | MR. COOPERSMITH:  AND THEN YOU ALSO SAID JUST NOW |
| 11:43AM | 17 | YOU WEREN'T SURE IF YOU COULD BE FAIR; IS THAT RIGHT? |
| 11:43AM | 18 | PROSPECTIVE JUROR:  YES. |
| 11:43AM | 19 | MR. COOPERSMITH:  SO I GUESS FOR STARTERS, CAN YOU |
| 11:43AM | 20 | TELL US WHAT YOU KNOW ABOUT THE RELATIONSHIP BETWEEN |
| 11:43AM | 21 | MR. BALWANI AND MS. HOLMES? |
| 11:43AM | 22 | PROSPECTIVE JUROR:  YEAH.  I CAN SAY I DON'T KNOW |
| 11:43AM | 23 | THAT MUCH.  JUST AS THE COURT ASKED OF KNOWING ANYTHING ABOUT |
| 11:43AM | 24 | THE CASE, THAT WAS JUST A PIECE OF INFORMATION THAT I KNEW. |
| 11:43AM | 25 | I DIDN'T FOLLOW THAT SPECIFIC PLOT LINE OR WHATEVER VERY |

```
11:43AM    1    CLOSELY, BUT I JUST KNEW FROM EITHER READING SOMEWHERE OR AT
11:43AM    2    SOME POINT IN THE COURSE OF THE ORIGINAL TRIAL OR WHATEVER THAT
11:43AM    3    THAT WAS THE CASE, BUT I NEVER REALLY FOLLOWED IT VERY CLOSELY.
11:43AM    4             MR. COOPERSMITH:  OKAY.  AND WHAT, IF ANYTHING,
11:43AM    5    ABOUT THE RELATIONSHIP BETWEEN MR. BALWANI AND MS. HOLMES, EVEN
11:43AM    6    IF YOU DON'T KNOW TOO MUCH ABOUT IT, WHAT ABOUT THAT PROMPTED
11:43AM    7    YOU TO SAY THAT YOU WEREN'T SURE IF YOU COULD BE FAIR?
11:43AM    8             PROSPECTIVE JUROR:  YEAH, SO THAT ONE CAME TO ME
11:43AM    9    RIGHT -- REALLY QUICK.  THE FIRST THING IS, LIKE, ANY
11:43AM   10    RELATIONSHIP REQUIRES COMMUNICATION AND THINGS LIKE THAT,
11:43AM   11    RIGHT?  I MEAN, THIS IS GENERAL.
11:43AM   12         AND SO WHEN YOU ASKED THE QUESTION, THE FIRST THING I
11:43AM   13    THOUGHT WAS, WELL, HOW CAN I SEPARATE THOSE TWO PEOPLE WHO HAVE
11:43AM   14    THAT KIND OF RELATIONSHIP SORT OF STATUS TO NOT HAVE, YOU KNOW,
11:43AM   15    SOME KNOWLEDGE OF WHAT ONE OR THE OTHER IS DOING?
11:43AM   16         AND THEN IT LED ME TO THINK ABOUT THE OUTCOME OF THE
11:43AM   17    ELIZABETH HOLMES TRIAL.
11:43AM   18         SO I THOUGHT TO MYSELF, WELL, IS THERE A COMMUNICATIVE
11:43AM   19    PROPERTY, SOMETHING IN MY HEAD, THAT COULD CLOUD THAT JUDGMENT
11:43AM   20    BECAUSE OF, YOU KNOW, THE RELATIONSHIP AND THEN THE OUTCOME OF
11:43AM   21    THE OTHER?
11:43AM   22             MR. COOPERSMITH:  I SEE.
11:43AM   23             PROSPECTIVE JUROR:  THAT'S WHY I RAISED MY HAND
11:43AM   24    BECAUSE THERE WAS A DOUBT IN MY HEAD.
11:43AM   25             MR. COOPERSMITH:  THANK YOU.  IT SOUNDS LIKE YOU DO
```

11:43AM 1    KNOW ABOUT THE OUTCOME OF THE OTHER CASE?

11:43AM 2                PROSPECTIVE JUROR:  I DO.

11:43AM 3                MR. COOPERSMITH:  AND WHAT DO YOU KNOW ABOUT THAT?

11:43AM 4    WHAT IS THE OUTCOME?

11:43AM 5                PROSPECTIVE JUROR:  I KNOW THERE WAS LIKE, FOUR, I

11:43AM 6    DON'T KNOW IF THE TERM IS COUNTS OF GUILTY.  THAT'S PRETTY MUCH

11:43AM 7    ALL I KNOW.

11:43AM 8                MR. COOPERSMITH:  OKAY.

11:43AM 9                PROSPECTIVE JUROR:  I KNOW, LIKE, IT WASN'T A CLEAN,

11:43AM 10   LIKE, YOU KNOW, NOT GUILTY.

11:43AM 11               MR. COOPERSMITH:  IT SOUNDS LIKE YOU KNOW SHE WAS

11:43AM 12   CONVICTED AND FOUND GUILTY OF SOME THINGS?

11:43AM 13               PROSPECTIVE JUROR:  YES, YES.

11:43AM 14               MR. COOPERSMITH:  AND JUST SO I UNDERSTAND, ARE YOU

11:43AM 15   SAYING THAT BECAUSE YOU KNOW ABOUT THAT, AND YOU ALSO KNOW

11:43AM 16   ABOUT A ROMANTIC RELATIONSHIP, THAT'S IT'S HARD TO UNDERSTAND

11:43AM 17   HOW MR. BALWANI WOULDN'T BE IN THE SAME BOAT AS MS. HOLMES?  IS

11:43AM 18   THAT THE --

11:43AM 19               PROSPECTIVE JUROR:  YEAH, THAT WAS THE IMMEDIATE

11:43AM 20   THOUGHT WHEN YOU ASKED THE QUESTION.  IT WAS LIKE, WELL, I KNOW

11:43AM 21   WITH MY WIFE AND I, IF WE ARE PLANNING ANYTHING, WE PLAN IT

11:43AM 22   TOGETHER.

11:43AM 23       AND IT JUST SO HAPPENS, I MEAN, MY WIFE AND I WORK AT THE

11:43AM 24   SAME COMPANY, TOO, WHICH IS THE CASE.  SO WHEN WE TALK ABOUT

11:43AM 25   STUFF AT WORK, WE EACH KNOW WHAT WE'RE DOING.

11:43AM 1      AND WHETHER OUR RELATIONSHIP IS HEALTHY OR NOT, I THINK

11:43AM 2   THERE'S THAT COMMUNICATION AND THERE'S THAT BOND OF WHAT ARE WE

11:43AM 3   GOING TO DO AT WORK KIND OF TOGETHER, ALTHOUGH WE'RE NOT IN THE

11:43AM 4   SAME DEPARTMENT.

11:43AM 5      BUT, YOU KNOW, THAT'S KIND OF WHERE I WAS GOING WITH IT.

11:43AM 6         MR. COOPERSMITH:  I UNDERSTAND.  AGAIN, THANK YOU.

11:43AM 7   THAT'S WHAT THIS PROCESS IS ABOUT.

11:43AM 8      SO JUST TO TELL YOU, THE JUDGE WILL INSTRUCT YOU IN THIS

11:43AM 9   CASE THAT WHATEVER THE OUTCOME OF MS. HOLMES'S CASE HAS NO

11:43AM 10  BEARING OF WHAT A JURY COULD DECIDE IN THIS CASE; RIGHT?

11:43AM 11         PROSPECTIVE JUROR:  YES.

11:43AM 12         MR. COOPERSMITH:  AND EVEN THOUGH THAT INSTRUCTION

11:43AM 13  IS GIVEN, DO YOU STILL FEEL IT WOULD BE HARD TO PUT OUT OF YOUR

11:43AM 14  MIND THAT YOU HAVE EXPERIENCE THE WAY YOU COMMUNICATE WITH YOUR

11:43AM 15  SPOUSE AND YOU KNOW MS. HOLMES WAS FOUND GUILTY OF SOMETHING,

11:43AM 16  SO THAT THIS WOULD BE LIKE A DIFFICULT PROCESS FOR YOU?

11:43AM 17      IS THAT FAIR?  OR DO YOU THINK YOU COULD COMPLETELY PUT IT

11:43AM 18  OUT OF YOUR MIND?  IT DOESN'T MATTER WHAT HAPPENED TO

11:43AM 19  MS. HOLMES, THIS IS A COMPLETELY BLANK SLATE.  AND THE COURT

11:43AM 20  WOULD INSTRUCT YOU THAT WAY.

11:43AM 21         PROSPECTIVE JUROR:  YEAH.  I'M GUESS I'M GOING TO

11:43AM 22  ANSWER AS BLUNTLY AS I CAN.  I DON'T KNOW IF I CAN PUT IT OUT

11:43AM 23  OF MY MIND.  JUST HOW IN MY RELATIONSHIP HOW THE DYNAMICS WORK

11:43AM 24  AND HOW -- I DON'T EVEN KNOW, LIKE, KIND OF THE GENERAL SETUP

11:43AM 25  OF THE CASE AND HOW IT'S GOING TO WORK, BUT I ASSUME, BASED ON

11:43AM 1    THE KNOWLEDGE OF WHAT I HAVE OF THE THERANOS TRIAL AND JUST

11:43AM 2    THERANOS IN GENERAL, WHICH IS NOT A LOT, THAT THERE HAS TO BE A

11:43AM 3    CONNECTION BETWEEN ONE VERDICT AND THIS ONE.

11:43AM 4        AND I WOULD SAY, YOU KNOW, TO THE JUDGE OF COURSE, LIKE,

11:43AM 5    IF YOU ASKED ME TO TRY TO PUT IT OUT, OF COURSE I WOULD TRY,

11:43AM 6    BUT THERE'S ALWAYS THAT STRAND FOR ME.

11:43AM 7        MR. COOPERSMITH:  I APPRECIATE YOUR CANDOR, SIR, SO

11:43AM 8    THANK YOU.

11:43AM 9        THE COURT:  SIR, YOU HEARD ME TALK ABOUT THE FOUR

11:43AM 10   MINUTE MILE.

11:43AM 11       PROSPECTIVE JUROR:  ABSOLUTELY.  AND I GUESS THAT'S

11:43AM 12   THE TOUGH PART ABOUT ANY PART OF THIS, RIGHT?  AND I KNOW WHAT

11:43AM 13   YOUR OBLIGATIONS ARE TO THIS, IT'S LIKE HOW DO YOU, HOW DO YOU

11:43AM 14   ASK US TO SEPARATE THAT?

11:43AM 15      AND THAT'S, LIKE, ASKING ME TO REMOVE A PART OF MY SOUL I

11:43AM 16   GUESS.

11:43AM 17       THE COURT:  SURE.

11:43AM 18       PROSPECTIVE JUROR:  SO I COULD IN MY MIND SAY, OKAY,

11:43AM 19   THERE'S, THERE'S NO RIGHT, LIKE, INNOCENT UNTIL PROVEN GUILTY.

11:43AM 20      BUT, YEAH, HAVING YOU ASK THAT QUESTION, I CAN ONLY TRY.

11:43AM 21   LIKE, I THINK THAT'S THE THING, RIGHT?

11:43AM 22       THE COURT:  OKAY.

11:43AM 23       PROSPECTIVE JUROR:  LIKE, I'M AN OBJECTIVE PERSON BY

11:43AM 24   NATURE, AND I DON'T TYPICALLY HAVE THESE REALLY SWINGING, LIKE,

11:43AM 25   OR WILD TENETS THAT I HOLD ON TO, BUT I CAN SAY THAT ONCE YOU

11:43AM 1   ASKED THAT QUESTION, IT WAS LIKE I DON'T KNOW IF I CAN.

11:43AM 2           MR. COOPERSMITH:  ALL RIGHT.  THANK YOU.  I

11:43AM 3   APPRECIATE THAT.

11:43AM 4           THE COURT:  MR. SCHENK, ANY QUESTIONS?

11:43AM 5           MR. SCHENK:  YES.

11:43AM 6       MAY I?

11:43AM 7           PROSPECTIVE JUROR:  YES.

11:43AM 8           MR. SCHENK:  THANK YOU FOR COMING BACK TODAY AND

11:43AM 9   YOUR CANDOR.

11:43AM 10      YOU HAVE EXPRESSED A THOUGHT ABOUT YOUR ABILITY TO KEEP

11:43AM 11  CERTAIN THINGS OUT OF YOUR MIND IF YOU WERE A JUROR IN THIS

11:43AM 12  CASE, AND I JUST WANT TO MAKE SURE THAT I UNDERSTAND WHICH

11:43AM 13  THOUGHTS IT IS THAT YOU WONDER WHETHER YOU COULD KEEP OUT OF

11:43AM 14  YOUR MIND.

11:43AM 15      IT SEEMS LIKE WE'RE TALKING ABOUT TWO THINGS.  ONE, YOU

11:43AM 16  DESCRIBED WHEN SPOUSES WORK AT A COMMON EMPLOYER, IT WOULD BE

11:43AM 17  NATURAL FOR THEM TO TALK, TO COMMUNICATE, TO UNDERSTAND.

11:43AM 18      AND I'M WONDERING IF IT'S YOUR EXPERIENCE IN THAT AREA

11:43AM 19  THAT YOU WOULD HAVE TROUBLE KEEPING OUT OF YOUR MIND, OR IS IT

11:43AM 20  THE VERDICT IN THE HOLMES CASE THAT YOU WOULD HAVE TROUBLE

11:43AM 21  KEEPING OUT OF YOUR MIND IF YOU WERE A JUROR IN THIS CASE?

11:43AM 22          PROSPECTIVE JUROR:  I THINK THAT IS AN INTERESTING

11:43AM 23  QUESTION, BECAUSE I THINK THAT, FOR ME, ONE DOESN'T EXIST

11:43AM 24  WITHOUT THE OTHER, RIGHT?

11:43AM 25      LIKE, I COULD DEFINITELY KEEP OUT OF MY MIND, YOU KNOW,

11:43AM 1     WHAT IS SPOKEN BETWEEN SPOUSES OR SIGNIFICANT OTHERS ABOUT

11:43AM 2     WORK.  THAT'S ONE SIDE.

11:43AM 3         I CAN DEFINITELY KEEP OUT OF MY MIND, LIKE, ABOUT IS

11:43AM 4     MR. BALWANI INNOCENT BEFORE PROVEN GUILTY, RIGHT?

11:43AM 5         BUT WHEN YOU TAKE THE TWO TOGETHER, THERE'S -- LIKE,

11:43AM 6     THAT'S WHERE I HAVE THE MOST TROUBLE.  IT'S LIKE TO ME, THEY'RE

11:43AM 7     TIED TOGETHER ALREADY BECAUSE OF -- AND I KNOW KIND OF THE

11:43AM 8     POSITION OF EACH PERSON IN THAT COMPANY, RIGHT?  AND SO NOT

11:43AM 9     ONLY AS COWORKERS, BUT AS RELATION -- SOMEONE IN A

11:43AM 10    RELATIONSHIP, LIKE, THAT COMMUNICATION IS, TO ME IN MY LIFE, IS

11:43AM 11    SUPER TIGHT.

11:43AM 12        AND SO INDIVIDUALLY I THINK, SURE, LIKE, I CAN TAKE THOSE

11:43AM 13    TWO THINGS AND COMPARTMENTALIZE AND SAY, OKAY, I COULD DO VERY

11:43AM 14    FAIR, LIKE, JUDGMENT OF IT.

11:43AM 15        WHEN YOU BRING THEM TOGETHER, IT PUTS ME IN A LITTLE BIT

11:43AM 16    OF QUESTION.

11:43AM 17        I'M NOT SAYING THAT I CAN'T DO IT.  LIKE, I'M GREAT AT

11:43AM 18    FOLLOWING DIRECTIONS.  BUT THERE'S JUST THAT THING THERE FOR

11:43AM 19    ME.

11:43AM 20            MR. SCHENK:  THANK YOU.  I APPRECIATE YOUR ANSWER.

11:43AM 21            THE COURT:  ANYTHING FURTHER?

11:43AM 22            MR. SCHENK:  NO.  THANK YOU.

11:43AM 23            MR. COOPERSMITH:  NO, THANK YOU.

11:43AM 24            THE COURT:  ACTUALLY, YOU CAN STEP OUTSIDE.

11:43AM 25        ANY REASON THAT WE CAN'T ASK JUROR NUMBER 34 TO GO HOME?

| | | |
|---|---|---|
| 11:43AM | 1 | PROSPECTIVE JUROR:  I CAN HEAD OUT? |
| 11:43AM | 2 | THE COURT:  YES.  HAVE A GREAT WEEKEND, AND YOU'LL |
| 11:43AM | 3 | HEAR FROM THE CLERK'S OFFICE AS TO WHAT NEXT STEPS THERE ARE |
| 11:43AM | 4 | FOR THIS JURY. |
| 11:43AM | 5 | PROSPECTIVE JUROR:  AND THE TRIAL STARTS ON TUESDAY, |
| 11:43AM | 6 | SO I WOULD HEAR PROBABLY BY MONDAY? |
| 11:43AM | 7 | THE COURT:  I WOULD THINK SO.  I WOULD THINK SO. |
| 11:43AM | 8 | THAT'S OUR HOPE. |
| 11:43AM | 9 | PROSPECTIVE JUROR:  OKAY.  GREAT.  THANK YOU SO |
| 11:43AM | 10 | MUCH. |
| 11:43AM | 11 | THE COURT:  THANK YOU. |
| 11:43AM | 12 | (PROSPECTIVE JUROR NUMBER 34 IS NOT PRESENT.) |
| 11:43AM | 13 | THE COURT:  LET'S GO OFF THE RECORD FOR JUST A |
| 11:43AM | 14 | MOMENT.  THANK YOU. |
| 11:43AM | 15 | (PAUSE IN PROCEEDINGS.) |
| 11:43AM | 16 | THE COURT:  NUMBER 10 IS NEXT. |
| 11:43AM | 17 | (PROSPECTIVE JUROR NUMBER 10 IS PRESENT.) |
| 11:43AM | 18 | THE COURT:  LET'S GO BACK ON THE RECORD.  WE'LL |
| 11:43AM | 19 | BRING IN JUROR 10. |
| 11:43AM | 20 | THE CLERK:  JUROR 10. |
| 11:43AM | 21 | THE COURT:  THANK YOU. |
| 11:43AM | 22 | GOOD MORNING.  PLEASE BE SEATED.  THANK YOU. |
| 11:43AM | 23 | WE'RE ON THE RECORD WITH COUNSEL AND JUROR NUMBER 10. |
| 11:43AM | 24 | THANK YOU, JUROR NUMBER 10.  THANK YOU FOR COMING IN. |
| 11:43AM | 25 | PROSPECTIVE JUROR:  OKAY. |

11:43AM 1            THE COURT:  WE WANTED TO TALK WITH YOU PRIVATELY

11:43AM 2     OUTSIDE OF YOUR COLLEAGUE JURORS JUST TO FOLLOW UP ON A COUPLE

11:43AM 3     OF QUESTIONS HERE.

11:43AM 4            YOU'RE NOT IN TROUBLE.  THIS IS NOT ANYTHING THAT YOU

11:43AM 5     SHOULD BE WORRIED ABOUT OR CONCERNED ABOUT.  IT'S JUST SOME OF

11:43AM 6     THESE TOPICS ARE BETTER DISCUSSED PRIVATELY, OUTSIDE OF THE

11:43AM 7     PRESENCE OF OTHER JURORS SUCH THAT THERE MIGHT NOT BE ANY OTHER

11:43AM 8     INFLUENCE.

11:43AM 9            SO, MR. COOPERSMITH, DO YOU HAVE SOME QUESTIONS?

11:43AM 10               MR. COOPERSMITH:  YES.  THANK YOU, YOUR HONOR.

11:43AM 11           ARE YOU COMFORTABLE IF I REMOVE MY MASK?

11:43AM 12               PROSPECTIVE JUROR:  PARDON ME?

11:43AM 13               MR. COOPERSMITH:  ARE YOU COMFORTABLE IF I TAKE MY

11:43AM 14    MASK OFF?

11:43AM 15               PROSPECTIVE JUROR:  SURE.

11:43AM 16               MR. COOPERSMITH:  OKAY.  THANK YOU.

11:43AM 17           FIRST OF ALL, AS JUDGE DAVILA TOLD YOU, THANK YOU FOR

11:43AM 18    COMING HERE TODAY, AND I APPRECIATE YOUR TIME.

11:43AM 19           WE JUST WANT TO TALK ABOUT THIS ISSUE THAT WE WERE JUST

11:43AM 20    TALKING ABOUT IN THE COURTROOM.  AND IT SOUNDS LIKE YOU'RE

11:43AM 21    AWARE OF A ROMANTIC RELATIONSHIP BETWEEN MR. BALWANI AND

11:43AM 22    MS. HOLMES.

11:43AM 23               PROSPECTIVE JUROR:  UH-HUH, YEAH.  I THINK FIANCE,

11:43AM 24    RIGHT?

11:43AM 25               MR. COOPERSMITH:  IS THAT WHAT YOU UNDERSTAND?

11:43AM   1            PROSPECTIVE JUROR:  YES.

11:43AM   2            MR. COOPERSMITH:  OKAY.  ARE YOU ALSO AWARE OF THE

11:43AM   3   OUTCOME OF MS. HOLMES'S CASE?

11:43AM   4        TO PUT IT ANOTHER WAY, DO YOU KNOW WHAT HAPPENED TO

11:43AM   5   MS. HOLMES?

11:43AM   6            PROSPECTIVE JUROR:  THEY ACCUSED HER OF THE FRAUD

11:43AM   7   INFORMATION.

11:43AM   8            MR. COOPERSMITH:  OKAY.  WHEN YOU SAY "FRAUD," WHAT

11:43AM   9   DO YOU MEAN BY THAT?

11:43AM  10            PROSPECTIVE JUROR:  AT FIRST SHE CREATED A COMPANY

11:43AM  11   AND THEY SAID THEY HAVE A MACHINE TO HAVE A BLOOD TEST FOR A

11:43AM  12   TEST FOR THE CANCER, AND THEN THEY SAY IT'S NOT TRUE BECAUSE --

11:43AM  13   YEAH, THEY ASK FOR A LOT OF MONEY FROM THE INVESTORS, AND THEN

11:43AM  14   THE OTHER SHAREHOLDERS.

11:43AM  15            MR. COOPERSMITH:  OKAY.

11:43AM  16        ARE YOU AWARE OF MS. HOLMES HAVING A SEPARATE TRIAL?

11:43AM  17            PROSPECTIVE JUROR:  NO.  I THINK THEY'RE TOGETHER.

11:43AM  18            MR. COOPERSMITH:  OKAY.  YOU THINK MS. HOLMES IS

11:43AM  19   GOING TO BE AT THIS TRIAL?

11:43AM  20            PROSPECTIVE JUROR:  YEAH, I THINK SO.  THEY GO

11:43AM  21   TOGETHER.

11:43AM  22            MR. COOPERSMITH:  OKAY.  THANK YOU FOR THAT.

11:43AM  23        SO LET'S TALK ABOUT THE RELATIONSHIP.  WHAT DO YOU KNOW

11:43AM  24   ABOUT THE RELATIONSHIP BETWEEN MS. HOLMES AND MR. BALWANI IN

11:43AM  25   TERMS OF THE ROMANTIC RELATIONSHIP?  WHAT DO YOU KNOW ABOUT

11:43AM 1      THAT?

11:43AM 2            PROSPECTIVE JUROR:  WELL, MY HUSBAND TOLD ME,

11:43AM 3      BECAUSE WE KNOW THIS CASE BACK TO A FEW YEARS AGO, YEAH.  AND

11:43AM 4      MY FAMILY TALKED ABOUT IT.  AND THEN MY HUSBAND JUST TOLD ME,

11:43AM 5      TOLD ME THEY ARE LOVERS, THEY ARE FIANCE.

11:43AM 6            MR. COOPERSMITH:  OKAY.  AND ARE YOU AWARE OF ANY

11:43AM 7      DIFFICULTIES OF ANY SORT IN THE RELATIONSHIP BETWEEN

11:43AM 8      MR. BALWANI AND MS. HOLMES?

11:43AM 9            PROSPECTIVE JUROR:  NO, I DON'T.

11:43AM 10            MR. COOPERSMITH:  OKAY.

11:43AM 11            PROSPECTIVE JUROR:  DO THEY HAVE A KID?

11:43AM 12            MR. COOPERSMITH:  YOU KNOW, I WISH I COULD ANSWER

11:43AM 13      YOUR QUESTIONS, BUT I CAN'T REALLY TELL YOU.

11:43AM 14            PROSPECTIVE JUROR:  OKAY.

11:43AM 15            MR. COOPERSMITH:  RIGHT.

11:43AM 16            PROSPECTIVE JUROR:  BUT I HEARD.

11:43AM 17            MR. COOPERSMITH:  ALL RIGHT.  IS THAT WHAT YOU

11:43AM 18      UNDERSTAND?

11:43AM 19            PROSPECTIVE JUROR:  UH-HUH.

11:43AM 20            MR. COOPERSMITH:  OKAY.

11:43AM 21         NOW, YOU USED THE WORD "FRAUD."

11:43AM 22         DO YOU THINK, IF YOU WERE SEATED AS A JUROR IN THIS CASE,

11:43AM 23      COULD YOU PUT YOUR KNOWLEDGE OR OPINION ABOUT FRAUD OUT OF YOUR

11:43AM 24      MIND AND JUST FOCUS ON THE EVIDENCE IN THE CASE?  BECAUSE

11:43AM 25      THAT'S WHAT JUDGE DAVILA WOULD TELL EVERY JUROR THAT THEY WOULD

11:43AM  1    HAVE TO DO, AND I'M JUST WONDERING IF YOU'RE CAPABLE OF DOING

11:43AM  2    THAT?

11:43AM  3              PROSPECTIVE JUROR:  TO BE HONEST --

11:43AM  4              MR. COOPERSMITH:  YES, THAT'S WHAT WE WANT.

11:43AM  5              PROSPECTIVE JUROR:  I DON'T KNOW.  BECAUSE THE FIRST

11:43AM  6    TIME WHEN I SAW ELIZABETH HOLMES, I JUST DON'T FEEL

11:43AM  7    COMFORTABLE.  I JUST THINK SHE'S LYING.

11:43AM  8              MR. COOPERSMITH:  OKAY.

11:43AM  9              PROSPECTIVE JUROR:  JUST FROM MY INSTINCT, I JUST

11:43AM  10   FEEL LIKE THAT.

11:43AM  11        YEAH, AT THAT TIME SHE HAS NO TRIAL CASE, RIGHT?  AT THAT

11:43AM  12   TIME EVERYBODY SAYS, SHE'S SO GOOD.  I THINK IT WAS 2013 OR

11:43AM  13   2015.

11:43AM  14             MR. COOPERSMITH:  OKAY.

11:43AM  15             PROSPECTIVE JUROR:  SO I JUST DON'T SAY WHAT SHE

11:43AM  16   SAYS IS TRUE.

11:43AM  17             MR. COOPERSMITH:  OKAY.  AND SINCE YOU DON'T BELIEVE

11:43AM  18   MS. HOLMES OR YOU --

11:43AM  19             PROSPECTIVE JUROR:  YEAH.

11:43AM  20             MR. COOPERSMITH:  -- HOW DOES THAT AFFECT YOUR

11:43AM  21   BELIEF ABOUT MR. BALWANI?

11:43AM  22             PROSPECTIVE JUROR:  BECAUSE THEY ARE LOVERS.  HE'S

11:43AM  23   HER FIANCE.  I THINK THEY HAVE A KID.

11:43AM  24             MR. COOPERSMITH:  OKAY.  AND DO YOU THINK THAT YOU

11:43AM  25   COULD JUST PUT OUT OF YOUR MIND ANYTHING ABOUT THAT AND JUST

```
11:43AM  1    FOCUS ON THE EVIDENCE THAT IS PRESENTED IN THE COURTROOM AND

11:43AM  2    ONLY USE THAT EVIDENCE TO DECIDE ABOUT MR. BALWANI'S GUILT OR

11:43AM  3    INNOCENCE?

11:43AM  4              PROSPECTIVE JUROR:  THAT'S WHY I SAY I DON'T KNOW.

11:43AM  5              MR. COOPERSMITH:  YOU DON'T KNOW?

11:43AM  6              PROSPECTIVE JUROR:  BECAUSE I REALLY THINK THAT THEY

11:43AM  7    ARE GUILTY TO BE HONEST WITH YOU.

11:43AM  8              MR. COOPERSMITH:  THAT'S ALL WE WANT.  THERE'S NO

11:43AM  9    WRONG ANSWERS.  WE JUST APPRECIATE YOUR HONESTY.

11:43AM 10         YOUR HONOR, THAT'S ALL OF THE QUESTIONS I HAVE.

11:43AM 11              THE COURT:  OKAY.  MR. SCHENK, ANYTHING?

11:43AM 12              MR. SCHENK:  NO.  THANK YOU.

11:43AM 13              THE COURT:  THAT'S ALL.  SO YOU CAN LEAVE TODAY AND

11:43AM 14    THE COURT WILL NOTIFY YOU IF YOU NEED TO COME BACK.

11:43AM 15              PROSPECTIVE JUROR:  OKAY.

11:43AM 16         BY THE WAY, I JUST NOTICE THAT MY SON'S GRADUATION DATE IS

11:43AM 17    JUNE 13TH.

11:43AM 18              THE COURT:  JUNE 13TH?

11:43AM 19              PROSPECTIVE JUROR:  IT'S FOR THE BUSINESS

11:43AM 20    DEPARTMENT, AND JUNE 15TH FOR THE WHOLE SCHOOL.

11:43AM 21              THE COURT:  OH, SO THE BUSINESS GOES FIRST?

11:43AM 22              PROSPECTIVE JUROR:  YEAH.  SO I DON'T KNOW IF I'M

11:43AM 23    SELECTED TO BE A JUROR, CAN I BE EXCUSED FOR A FEW DAYS OR

11:43AM 24    WHAT?

11:43AM 25              THE COURT:  THANK YOU FOR LETTING ME KNOW THAT.
```

11:43AM 1     JUNE 13TH YOU SAID?

11:43AM 2              PROSPECTIVE JUROR:  AND 15TH IS THE WHOLE SCHOOL.

11:43AM 3              THE COURT:  RIGHT.  IS HE GOING TO STAY -- ARE YOU

11:43AM 4     PLANNING ON STAYING FOR THE WHOLE SCHOOL AS WELL?

11:43AM 5              PROSPECTIVE JUROR:  YES.  AND TO BE HONEST WITH YOU,

11:43AM 6     WE HAVE NOT SEEN OUR PARENTS FOR THREE YEARS BECAUSE OF COVID.

11:43AM 7     OUR PLAN IS AFTER HIS GRADUATION DAY WE'LL GO TO CANADA.

11:43AM 8              THE COURT:  OH.

11:43AM 9              PROSPECTIVE JUROR:  BUT I DON'T KNOW IF THE CASE

11:43AM 10    WILL LAST FOR HOW LONG, BECAUSE IT'S THE ONLY TIME THAT WE CAN

11:43AM 11    GO IS IN JUNE, THE END OF JUNE OR JULY.

11:43AM 12             THE COURT:  OKAY.  ALL RIGHT.

11:43AM 13             PROSPECTIVE JUROR:  THANK YOU.

11:43AM 14             THE COURT:  CONGRATULATIONS.

11:43AM 15             PROSPECTIVE JUROR:  THANK YOU.  HAVE A GOOD WEEKEND.

11:43AM 16             THE COURT:  YOU AS WELL.

11:43AM 17             MR. SCHENK:  THANK YOU.

11:43AM 18             MR. COOPERSMITH:  THANK YOU.

11:43AM 19             PROSPECTIVE JUROR:  OKAY.  BYE.

11:43AM 20         (PROSPECTIVE JUROR NUMBER 10 IS NOT PRESENT.)

11:43AM 21             THE COURT:  DO WE WANT TO HAVE DISCUSSION ABOUT

11:43AM 22    JURORS HERE OR ON THE RECORD THERE?  I'M HAPPY TO --

11:43AM 23             MR. SCHENK:  NO PREFERENCE.

11:43AM 24             THE COURT:  WHY DON'T WE TALK ABOUT -- JUROR 10.

11:43AM 25    ANY THOUGHTS ABOUT JUROR 10?

11:43AM   1        WE'RE BACK ON THE RECORD OUTSIDE OF JUROR 10 AND JUST

11:43AM   2   COUNSEL.

11:43AM   3             MR. COOPERSMITH:   THANK YOU, YOUR HONOR.

11:43AM   4        MAYBE IT'S HELPFUL TO TALK A MINUTE AS THEY COME HERE.

11:43AM   5   FOR BOTH THE TWO JURORS WE SAW, NUMBER 10 AND 34, WE THINK THEY

11:43AM   6   NEED TO BE STRUCK BASED ON THEIR ANSWERS.

11:43AM   7             MR. SCHENK:   YOUR HONOR, NUMBER 10 THE GOVERNMENT

11:43AM   8   AGREES SHE SAID I REALLY THINK THEY'RE GUILTY, AND IT SEEMS

11:43AM   9   SHE'S REACHED A CONCLUSION BASED ON THE STATE OF THE EVIDENCE

11:43AM  10   AND NOT JUST BASED ON HER THOUGHTS.

11:43AM  11        AND FOR NUMBER 34 I TRIED TO DRILL DOWN ON WHETHER HIS

11:43AM  12   KNOWLEDGE, THAT HE WOULD CARRY FORWARD WAS KNOWLEDGE OF THE WAY

11:43AM  13   IN HIS EXPERIENCE RELATIONSHIPS WORK, WHICH I THINK IS

11:43AM  14   COMPLETELY APPROPRIATE FOR A JUROR TO BRING INTO A DELIBERATION

11:43AM  15   ROOM VERSUS THE CONVICTION ON MS. HOLMES BEING IMPUTED TO

11:43AM  16   MR. BALWANI BASED ON THE RELATIONSHIP, AND I THINK THAT THE

11:43AM  17   ANSWER HE GAVE DOES PROVIDE THE GOVERNMENT A LITTLE BIT OF A

11:43AM  18   CONCERN THAT HE'S GOING TO FIND OR AT LEAST BEGIN THE TRIAL

11:43AM  19   THINKING THAT MR. BALWANI IS GUILTY BECAUSE OF THE WAY

11:43AM  20   RELATIONSHIPS WORK IN HIS MIND AND THE KNOWLEDGE OF THE

11:43AM  21   CONVICTION.   I THINK YOU REALLY WOULD HAVE TO SEPARATE THE TWO

11:43AM  22   IN A WAY THAT I'M NOT SURE THAT HE COULD OR WAS HONEST WITH US

11:43AM  23   AND SAID HE HAD CONCERNS THAT HE COULD.

11:43AM  24        SO FOR THAT REASON THE GOVERNMENT WOULD ALSO AGREE TO

11:43AM  25   EXCUSE 34.

575

11:43AM  1                    THE COURT:  ANY OBJECTION?

11:43AM  2                    MR. COOPERSMITH:  NO, YOUR HONOR.

11:43AM  3                    THE COURT:  ALL RIGHT.  34 IS EXCUSED.  I HAD

11:43AM  4       SIMILAR OBSERVATIONS AND NOTES.

11:43AM  5            SO 34 IS EXCUSED FOR CAUSE AS WELL.

11:43AM  6            SO 10 AND 34.

11:43AM  7                    THE CLERK:  WOULD YOU LIKE 80?

11:43AM  8                    THE COURT:  NEXT IS -- IS IT 80?  YES.

11:43AM  9                    THE CLERK:  OKAY.

11:43AM  10           (PROSPECTIVE JUROR NUMBER 80 IS PRESENT.)

11:43AM  11                   THE COURT:  GOOD MORNING.

11:43AM  12                   PROSPECTIVE JUROR:  GOOD MORNING.

11:43AM  13                   THE COURT:  PLEASE HAVE A SEAT.  THANK YOU FOR

11:43AM  14      MEETING WITH US THIS MORNING.

11:43AM  15           WE JUST WANTED TO FOLLOW UP ON A COUPLE OF THE QUESTIONS

11:43AM  16      THAT YOU WERE ASKED OUTSIDE, AND WE WANTED TO DO THIS OUTSIDE

11:43AM  17      OF THE PRESENCE OF OTHER JURORS SO WE COULD HAVE A PRIVATE

11:43AM  18      CONVERSATION ABOUT THAT.

11:43AM  19           MR. COOPERSMITH.

11:43AM  20                   MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:43AM  21           ARE YOU COMFORTABLE IF I REMOVE MY MASK, SIR?

11:43AM  22                   PROSPECTIVE JUROR:  IT'S UP TO YOU.

11:43AM  23                   MR. COOPERSMITH:  IT'S UP TO ME?

11:43AM  24           I'LL LEAVE IT ON.  IT SOUNDS LIKE YOU MAY BE MORE

11:43AM  25      COMFORTABLE THAT WAY.

11:43AM 1         PROSPECTIVE JUROR:  IT'S OKAY.  YOU CAN TAKE IT OFF.

11:43AM 2         MR. COOPERSMITH:  ARE YOU SURE?

11:43AM 3         PROSPECTIVE JUROR:  YES.

11:43AM 4         MR. COOPERSMITH:  THANK YOU.  IT'S HARD TO TALK WITH

11:43AM 5    THE MASK.

11:43AM 6         SO, FIRST OF ALL, THANK YOU FOR YOUR TIME, AND I

11:43AM 7    APPRECIATE YOU TAKING EVEN MORE TIME TODAY AND COMING BACK

11:43AM 8    HERE.

11:43AM 9         AS I SAID IN THE COURTROOM, THERE'S NO WRONG OR RIGHT

11:43AM 10   ANSWER, AND WE'RE TRYING TO GET WHAT PEOPLE REALLY THINK, AND

11:43AM 11   YOU'RE ENTITLED TO THINK WHATEVER YOU WANT, WE JUST WANT TO

11:43AM 12   MAKE SURE WE KNOW WHAT THAT IS.

11:43AM 13        PROSPECTIVE JUROR:  OKAY.

11:43AM 14        MR. COOPERSMITH:  SO MY FIRST QUESTION IS THAT IT

11:43AM 15   SOUNDS LIKE YOU'RE AWARE OF A ROMANTIC RELATIONSHIP BETWEEN

11:43AM 16   MS. HOLMES AND MR. BALWANI?

11:43AM 17        PROSPECTIVE JUROR:  YES, I HEARD THE NEWS, BUT I

11:43AM 18   DIDN'T READ THE DETAIL.

11:43AM 19        MR. COOPERSMITH:  OKAY.  ARE YOU ALSO AWARE OF THE

11:43AM 20   OUTCOME OF MS. HOLMES'S SEPARATE CASE?

11:43AM 21        PROSPECTIVE JUROR:  NO.  I DON'T PAY MUCH ATTENTION,

11:43AM 22   BUT I KNOW THERE'S SOMETHING GOING ON, BUT IT'S NOT.

11:43AM 23        MR. COOPERSMITH:  OKAY.  WHEN YOU SAY, "THERE'S

11:43AM 24   SOMETHING GOING ON," WHAT DO YOU THINK SOMETHING IS GOING ON?

11:43AM 25        PROSPECTIVE JUROR:  LIKE THERE'S A TRIAL, AND IT'S

11:43AM 1    STILL GOING ON.

11:43AM 2            MR. COOPERSMITH:  DO YOU KNOW WHAT HAPPENED TO THAT

11:43AM 3    TRIAL?

11:43AM 4            PROSPECTIVE JUROR:  THE PREVIOUS ONE?

11:43AM 5            MR. COOPERSMITH:  RIGHT.

11:43AM 6            PROSPECTIVE JUROR:  I DON'T KNOW.

11:43AM 7            MR. COOPERSMITH:  YOU DON'T KNOW?

11:43AM 8            PROSPECTIVE JUROR:  IN MY MIND I THINK IT'S NOT

11:43AM 9    FINISHED.

11:43AM 10           MR. COOPERSMITH:  OKAY.  THANK YOU.

11:43AM 11       AND WITH REGARD TO THE RELATIONSHIP, WHAT DO YOU KNOW

11:43AM 12   ABOUT THE RELATIONSHIP BETWEEN MR. BALWANI AND MS. HOLMES?

11:43AM 13           PROSPECTIVE JUROR:  I DON'T KNOW THE DETAILS, BUT I

11:43AM 14   KNOW THEY HAVE SOME RELATIONSHIP; THAT THEY HAVE FUN TIME

11:43AM 15   TOGETHER ON THE WEEKEND OR ON VACATION, OR SOMETHING LIKE THAT.

11:43AM 16           MR. COOPERSMITH:  OKAY.  AND DO YOU KNOW OF ANYTHING

11:43AM 17   ABOUT THAT RELATIONSHIP THAT YOU THINK WOULD AFFECT YOUR

11:43AM 18   ABILITY TO BE FAIR OR ANYTHING LIKE THAT?

11:43AM 19           PROSPECTIVE JUROR:  I'LL BE FAIR BECAUSE I THINK

11:43AM 20   THAT THIS IS JUST THE NEWS.

11:43AM 21       I DON'T THINK THIS IS SETTLED BECAUSE IF SOMEBODY SAYS

11:43AM 22   THIS AND SOMEBODY SAYS THAT, I THINK AS A JURY WE NEED TO KNOW

11:43AM 23   ALL OF THE DETAILS, AND FOR ME I DON'T KNOW ANY DETAILS.

11:43AM 24       I JUST BRIEFLY HEARD OF THE THING.

11:43AM 25           MR. COOPERSMITH:  OKAY.  AND IS THERE ANYTHING THAT

11:43AM 1    YOU'VE LEARNED ABOUT THIS CASE THAT WOULD MAKE YOU LOOK AT

11:43AM 2    MR. BALWANI AS ANYTHING OTHER THAN PRESUMED INNOCENT?

11:43AM 3         PROSPECTIVE JUROR:  I THINK AT THIS STAGE I DON'T

11:43AM 4    KNOW THE DETAILS.  I DON'T KNOW THE CONCRETE EVIDENCE.  I DON'T

11:43AM 5    KNOW LIKE THE BEYOND A REASONABLE DOUBT.  I DON'T KNOW WHAT IS

11:43AM 6    A REASONABLE, THE STANDARDS, HOW IS IT REASONABLE AND WHAT IS

11:43AM 7    NOT REASONABLE.

11:43AM 8      SO I THINK THERE'S TOO MANY THINGS TO LEARN AND STUDY IN

11:43AM 9    THIS CASE.  IT'S TOO EARLY.

11:43AM 10        MR. COOPERSMITH:  THANK YOU, SIR.  I APPRECIATE YOUR

11:43AM 11   ANSWERS AND THAT'S HELPFUL, AND THAT'S WHAT THIS PROCESS IS

11:43AM 12   ABOUT.

11:43AM 13     SO THANK YOU.

11:43AM 14     I DON'T HAVE ANYTHING FURTHER, YOUR HONOR.

11:43AM 15         THE COURT:  MR. SCHENK?

11:43AM 16         MR. SCHENK:  NO, YOUR HONOR.  THANK YOU.

11:43AM 17         THE COURT:  THANK YOU, SIR.

11:43AM 18     THE COURT WILL LET YOU GO TODAY, AND THE COURT WILL LET

11:43AM 19   YOU KNOW IF AND WHEN YOU CAN COME BACK.

11:43AM 20         PROSPECTIVE JUROR:  THANK YOU VERY MUCH.

11:43AM 21         THE COURT:  THANK YOU.

11:43AM 22     (PROSPECTIVE JUROR NUMBER 80 IS NOT PRESENT.)

11:43AM 23         THE COURT:  THE RECORD SHOULD REFLECT THAT NUMBER 80

11:43AM 24   HAS LEFT.

11:43AM 25         MR. COOPERSMITH:  WE'RE NOT MOVING TO STRIKE NUMBER

11:43AM 1      80 AT THIS TIME.

11:43AM 2                  MR. SCHENK:  WE AGREE THERE'S NOT A BASIS.

11:43AM 3                  THE COURT:  ALL RIGHT.  82.

11:43AM 4                  THE CLERK:  IS HE JUST RELEASED OR HAVE WE EXCUSED

11:43AM 5      HIM?

11:43AM 6                  THE COURT:  HE'S JUST RELEASED AND NOT EXCUSED.

11:43AM 7      HE'S SUBJECT TO RECALL.

11:43AM 8                  THE CLERK:  OKAY.  82?

11:43AM 9                  THE COURT:  YES.

11:43AM 10         (PROSPECTIVE JUROR NUMBER 82 IS PRESENT.)

11:43AM 11                 THE COURT:  GOOD MORNING.

11:43AM 12                 PROSPECTIVE JUROR:  GOOD MORNING.

11:43AM 13                 THE COURT:  PLEASE HAVE A SEAT.

11:43AM 14         THANK YOU FOR YOUR PATIENCE.  APOLOGIZE ON BEHALF OF THE

11:43AM 15     COURT AND THE LAWYERS FOR BRINGING YOU BACK.  IT WILL BE VERY

11:43AM 16     BRIEF AS YOU'VE SEEN.

11:43AM 17         WE'VE BROUGHT YOU BACK HERE BECAUSE WE WANTED TO FOLLOW UP

11:43AM 18     ON SOME QUESTIONS ABOUT YOUR ANSWER REGARDING THE RELATIONSHIP

11:43AM 19     HERE, AND COUNSEL WILL ASK YOU THOSE QUESTIONS.

11:43AM 20         WE'RE DOING THIS PRIVATELY BECAUSE WE WANT TO MAKE SURE

11:43AM 21     THAT THERE'S -- WHAT WE SAY IS NOT HEARD BY OTHERS OR SUCH THAT

11:43AM 22     IT COULD IN ANY WAY IMPACT THE STATEMENTS AND COMMENTS OF SOME

11:43AM 23     OF YOUR OTHER JURORS, YOUR COLLEAGUE JURORS.

11:43AM 24                 PROSPECTIVE JUROR:  OKAY.

11:43AM 25                 THE COURT:  SO THAT'S WHAT WE'RE DOING HERE.

11:43AM 1          MR. COOPERSMITH IS GOING TO START.

11:43AM 2          CAN HE TAKE HIS MASK OFF?

11:43AM 3                  PROSPECTIVE JUROR:  SURE.

11:43AM 4                  THE COURT:  ARE YOU COMFORTABLE WITH THAT?  IS THAT

11:43AM 5      OKAY?

11:43AM 6                  PROSPECTIVE JUROR:  THAT'S FINE.

11:43AM 7                  THE COURT:  MR. COOPERSMITH.

11:43AM 8                  MR. COOPERSMITH:  THANK YOU.

11:43AM 9          AS JUDGE DAVILA SAID, THANK YOU FOR COMING HERE.  WE

11:43AM 10     APPRECIATE IT.  WE'RE TRYING TO UNDERSTAND WHO ARE THE RIGHT

11:43AM 11     JURORS FOR THIS CASE.

11:43AM 12                 PROSPECTIVE JUROR:  OKAY.

11:43AM 13                 MR. COOPERSMITH:  IT DOESN'T SAY ANYTHING ABOUT YOU.

11:43AM 14         AND AS YOU WERE HEARING OUTSIDE IN THE COURTROOM WITH

11:43AM 15     EVERYBODY, I'M INTERESTED IN PARTICULAR ABOUT THE RELATIONSHIP

11:43AM 16     WITH MR. BALWANI AND MS. HOLMES, AND IT SOUNDS LIKE YOU KNOW

11:43AM 17     SOMETHING ABOUT THAT?

11:43AM 18                 PROSPECTIVE JUROR:  I JUST HEARD THAT SHE ALLEGED

11:43AM 19     ABUSE.

11:43AM 20                 MR. COOPERSMITH:  OKAY.  AND ANY MORE SPECIFICS

11:43AM 21     ABOUT WHAT SHE ALLEGED?

11:43AM 22                 PROSPECTIVE JUROR:  NO, I DID NOT FOLLOW THAT TRIAL

11:43AM 23     WHATSOEVER.  I JUST KNOW SHE ALLEGED THAT.

11:43AM 24                 MR. COOPERSMITH:  OKAY.  DO YOU HAVE ANY

11:43AM 25     UNDERSTANDING OF, LIKE, WHY SHE ALLEGED THAT OR WHEN SHE

11:43AM 1   ALLEGED THAT?

11:43AM 2            PROSPECTIVE JUROR:  I DON'T KNOW THE TIMELINE OF

11:43AM 3   THAT CASE.  I DIDN'T FOLLOW IT CLOSELY.

11:43AM 4       I KNOW IT'S GOING TO BE PORTRAYED IN THE HULU SHOW.

11:43AM 5   THAT'S KIND OF THE EXTENT OF IT.

11:43AM 6            MR. COOPERSMITH:  OKAY.  DO YOU KNOW WHAT THE

11:43AM 7   OUTCOME OF THE OTHER CASE WAS?

11:43AM 8            PROSPECTIVE JUROR:  NO IDEA.

11:43AM 9            MR. COOPERSMITH:  YOU DON'T KNOW WHAT HAPPENED?

11:43AM 10           PROSPECTIVE JUROR:  HUH-UH.

11:43AM 11           MR. COOPERSMITH:  OKAY.  WITH REGARD TO THE ABUSE

11:43AM 12  ALLEGATION, DO YOU HAVE ANY REASON TO BELIEVE ONE WAY OR

11:43AM 13  ANOTHER WHETHER THAT ALLEGATION IS TRUE?

11:43AM 14           PROSPECTIVE JUROR:  NO.  I DIDN'T FOLLOW UP ON THAT

11:43AM 15  CASE.  I DON'T KNOW THE DETAILS SURROUNDING IT, SO I COULDN'T

11:43AM 16  MAKE A JUDGMENT CALL ON IT.

11:43AM 17           MR. COOPERSMITH:  IS THERE ANYTHING ABOUT YOU, YOUR

11:43AM 18  KNOWLEDGE, YOUR WORK, YOUR BACKGROUND THAT WOULD MAKE YOU

11:43AM 19  BELIEVE A WOMAN WHO CLAIMS THAT A MAN ABUSED HER ONE WAY OR THE

11:43AM 20  OTHER?

11:43AM 21           PROSPECTIVE JUROR:  WELL, I HAVE A BACKGROUND IN

11:43AM 22  JOURNALISM SO MY TRAINING BASICALLY -- I MEAN, NO.  IF I DON'T

11:43AM 23  HAVE THE FACTS OR SOMETHING HAS BEEN PROVEN IN COURT, I DON'T

11:43AM 24  REALLY HOLD THAT IN ANY WAY.

11:43AM 25           MR. COOPERSMITH:  OKAY.

11:43AM  1          AND IF YOU WERE SITTING AT TRIAL AND YOU WERE, YOU KNOW,

11:43AM  2    EVERY DAY, DAY AFTER DAY FOR SOME MONTHS, UNFORTUNATELY, YOU

11:43AM  3    WOULD BE LOOKING AT MR. BALWANI WHO IS SITTING AT COUNSEL

11:43AM  4    TABLE, WOULD YOU BE LOOKING AT HIM AS AN ALLEGED ABUSER OR AS A

11:43AM  5    PERSON WHO IS PRESUMED INNOCENT?

11:43AM  6          PROSPECTIVE JUROR:  NOT AS AN ABUSER.  JUST AS A

11:43AM  7    PERSON WHO IS PRESUMED INNOCENT UNTIL PROVEN GUILTY.

11:43AM  8          MR. COOPERSMITH:  COULD YOU PUT OUT OF YOUR MIND

11:43AM  9    LIKE THE ALLEGATION OF ABUSE HAS ANY RELEVANCE?  COULD YOU PUT

11:43AM 10    IT OUT OF YOUR MIND THAT THAT EVEN HAPPENED?

11:43AM 11          PROSPECTIVE JUROR:  DEFINITELY, BECAUSE I DON'T KNOW

11:43AM 12    THE CIRCUMSTANCES.

11:43AM 13          MR. COOPERSMITH:  OKAY.  AND YOU THINK WITHOUT THE

11:43AM 14    CIRCUMSTANCES IT WOULD BE UNFAIR TO HOLD THAT AGAINST

11:43AM 15    MR. BALWANI?

11:43AM 16          PROSPECTIVE JUROR:  YES.

11:43AM 17          MR. COOPERSMITH:  ANYTHING WE SHOULD KNOW?  ANYTHING

11:43AM 18    ELSE WE SHOULD KNOW IN TERMS OF YOUR ABILITY TO BE FAIR AND

11:43AM 19    IMPARTIAL AS A JUROR?

11:43AM 20          PROSPECTIVE JUROR:  NO.

11:43AM 21          MR. COOPERSMITH:  THAT'S ALL OF THE QUESTIONS I

11:43AM 22    HAVE.

11:43AM 23          MR. SCHENK:  NO, THANK YOU.

11:43AM 24          THE COURT:  YOU CAN LEAVE FOR THE DAY.  YOU'LL BE

11:43AM 25    NOTIFIED WHETHER YOU WILL BE NEEDED.  HAVE A GREAT WEEKEND.

11:43AM 1          PROSPECTIVE JUROR:  THANK YOU.  YOU TOO.

11:43AM 2          (PROSPECTIVE JUROR NUMBER 82 IS NOT PRESENT.)

11:43AM 3          THE COURT:  MR. COOPERSMITH.

11:43AM 4          MR. COOPERSMITH:  SHE ANSWERED THE QUESTIONS VERY

11:43AM 5    WELL AND SHE CLEARLY SAID THAT SHE'S NOT GOING TO HOLD THAT

11:43AM 6    AGAINST -- I'M SORRY.

11:43AM 7          SHE CLEARLY SAID SHE'S NOT GOING TO HOLD THAT AGAINST

11:43AM 8    MR. BALWANI.  THAT'S ALL POSITIVE AND ORDINARILY I WOULD NOT BE

11:43AM 9    MOVING.

11:43AM 10         THE ISSUE, THOUGH, IS THAT I JUST THINK THAT GIVEN THE

11:43AM 11   SITUATION HERE, HAVING A JUROR COMING INTO THE CASE KNOWING

11:43AM 12   ABOUT THAT WHEN WE HAVE OTHER JURORS, PLENTY OF OTHER JURORS

11:43AM 13   WHO DON'T KNOW IS I THINK A DANGEROUS THING BECAUSE, AS I SAID

11:43AM 14   IN COURT, THAT WAS THE WHOLE REASON FOR THE SEVERANCE.

11:43AM 15         I DO ACKNOWLEDGE, OF COURSE, THE JUROR'S ANSWERS AND, YOU

11:43AM 16   KNOW, WE ALL HEARD WHAT HAPPENED.  SO THAT'S WHAT WE THINK

11:43AM 17   ABOUT THAT.

11:43AM 18         THE COURT:  ARE YOU EXERCISING A CAUSE CHALLENGE?

11:43AM 19         MR. COOPERSMITH:  YES, JUST BECAUSE WE DON'T THINK

11:43AM 20   KNOWLEDGE OF ABUSE SHOULD COME INTO THE CASE, BUT I DO

11:43AM 21   UNDERSTAND THE COUNTERING ARGUMENT.

11:43AM 22         MR. SCHENK:  YOUR HONOR, THE GOVERNMENT OPPOSES THAT

11:43AM 23   CHALLENGE.

11:43AM 24         SHE SAID THAT SHE HAD NO IDEA WHAT HAPPENED IN THE OTHER

11:43AM 25   TRIAL.  SHE HAD NO IDEA WHETHER THE ALLEGATION, THE ABUSE

11:43AM 1    ALLEGATION WAS TRUE, HER BACKGROUND IN JOURNALISM SUGGESTED YOU

11:43AM 2    NEED FACTS IN ORDER TO REACH CONCLUSIONS, THAT SHE WOULD LOOK

11:43AM 3    AT MR. BALWANI EVERY DAY AS INNOCENT, THAT SHE COULD DEFINITELY

11:43AM 4    PUT IT OUT OF HER MIND.

11:43AM 5        SO THERE'S NO BASIS TO BELIEVE THAT THIS JUROR WOULD ENTER

11:43AM 6    THE COURTROOM WITH BIAS BASED ON HER KNOWLEDGE OF THE ABUSE

11:43AM 7    ALLEGATION.

11:43AM 8        LET ME JUST SAY A COUPLE OF WORDS.  MR. COOPERSMITH HAS

11:43AM 9    MADE THE ARGUMENT REPEATEDLY TO THE COURT THAT ABUSE WAS THE

11:43AM 10   REASON FOR THE SEVERANCE.  THAT'S AN OVERSTATEMENT.

11:43AM 11       THE COURT SEVERED BECAUSE DAY AFTER DAY MS. HOLMES WAS

11:43AM 12   GOING TO ACCUSE A CODEFENDANT SITTING IN THE COURTROOM OF

11:43AM 13   ABUSE, MAYBE BLAME HIM FOR THE CRIME.  THAT IS A VERY DIFFERENT

11:43AM 14   THING THAN WHAT MR. COOPERSMITH IS CLAIMING WOULD NOW VIOLATE

11:43AM 15   THE WHOLE REASON THE COURT SEVERED THE TWO CASES BY ALLOWING A

11:43AM 16   JUROR WHO IS AWARE OF THE ABUSE ALLEGATIONS TO BE ON THIS JURY.

11:43AM 17       IT IS NOT THE CASE THAT THE COURT SEVER THE TWO TRIALS

11:43AM 18   BECAUSE OF A PASSING REFERENCE TO AN ABUSE AS THIS JUROR HAS

11:43AM 19   INDICATED.  IT WAS ON THE CONTRARY, BECAUSE THE COURT FOUND AN

11:43AM 20   IRRECONCILABLE DIFFERENCE BETWEEN THE DEFENSES THAT WOULD BE

11:43AM 21   TRIED OR PROPOUNDED BY TWO DEFENDANTS SIMULTANEOUSLY.

11:43AM 22       EVEN THE KINDS OF CASES THAT THE DEFENSE CITED IN ITS

11:43AM 23   MOTION TO SEVER WERE NOT 403 BASED SORT OF ALLEGATIONS OR TOO

11:43AM 24   PREJUDICIAL TO BE SPOKEN.  THEY WERE THE IRRECONCILABLE TRIAL

11:43AM 25   DIFFERENCES AS A BASIS TO SEVER.

11:43AM 1      SO IT IS NOT THE CASE THAT THE COURT, BY ALLOWING A JUROR

11:43AM 2  LIKE JUROR 82 TO SIT IN THIS TRIAL, WOULD BE REVERSING OR

11:43AM 3  ISSUING AN ORDER CONTRARY TO THE BASIS FOR SEVERANCE

11:43AM 4  PREVIOUSLY.  THERE'S A SIGNIFICANT DISTINCTION BETWEEN ALLOWING

11:43AM 5  A JUROR LIKE 82 TO SIT IN THIS TRIAL AND THE BASIS FOR

11:43AM 6  SEVERANCE ORIGINALLY.

11:43AM 7      SO THE COURT SHOULD DENY.

11:43AM 8          THE COURT:  THANK YOU.

11:43AM 9          MR. COOPERSMITH:  YOUR HONOR, THE ONLY THING I WOULD

11:43AM 10  ADD IS THAT WHEN THE JURY -- WHEN THE TRIAL IS OVER AND THE

11:43AM 11  EVIDENCE IS IN AND THEN THE JURORS ARE DELIBERATING, WHAT WOULD

11:43AM 12  THE COURT DO, IF ANYTHING, TO MAKE SURE THAT IN THE COURSE OF

11:43AM 13  DELIBERATIONS A JUROR WOULDN'T SAY, WELL, YOU KNOW, I DO KNOW

11:43AM 14  THAT HE WAS ALSO ACCUSED OF ABUSE, RIGHT?

11:43AM 15      I MEAN, THERE WILL BE EVIDENCE IN THIS CASE WHERE I

11:43AM 16  CERTAINLY BELIEVE THAT THERE ARE CERTAIN EMAILS THAT

11:43AM 17  MR. BALWANI SENT THAT WERE NOT THAT NICE.  HE WAS SOMETIMES A

11:43AM 18  DEMANDING BOSS.  THAT EVIDENCE WILL COME IN.

11:43AM 19      TO HAVE A JUROR IN DELIBERATIONS -- WE DON'T HAVE ANY

11:43AM 20  CONTROL AT ALL WHAT THEY TALK ABOUT.  IF SOMEONE WANTS TO BRING

11:43AM 21  THAT INTO THE CASE, THEN ALL OF THE OTHER JURORS WILL KNOW.

11:43AM 22      THAT'S KIND OF REALLY THE HEART OF THE REASON WHY I HAVE

11:43AM 23  CONCERN.

11:43AM 24      EVEN THOUGH I DO ACKNOWLEDGE, MR. SCHENK IS RIGHT ABOUT

11:43AM 25  THE -- AND I ACKNOWLEDGE THE ANSWER, BUT THAT'S THE CONCERN

11:43AM 1    THAT I HAVE.

11:43AM 2            THE COURT:  I AGREE.  IT SOUNDS LIKE WE'RE IN

11:43AM 3    AGREEMENT HERE, OR AT LEAST MADE THE OBSERVATIONS.  SHE WAS

11:43AM 4    VERY FORTHRIGHT.

11:43AM 5        AND ONE THING I WILL NOTE FOR THE RECORD IS HER DEMEANOR.

11:43AM 6    SHE WAS -- HER ANSWERS WERE CRISP.  THEY QUICKLY FOLLOWED YOUR

11:43AM 7    QUESTIONS, INCLUDING HER DENIALS THAT IT'S NOT GOING TO AFFECT

11:43AM 8    ME.

11:43AM 9        AND SHE SAID I'M A JOURNALIST, I NEED TO SEE EVIDENCE

11:43AM 10   BEFORE I CAN EVEN WRITE, I THINK IS WHAT SHE WAS INFERRING.

11:43AM 11       AND HERE SHE TOLD US SHE COULD PRESUME INNOCENCE, AND I

11:43AM 12   UNDERSTAND THAT.

11:43AM 13       AND I DIDN'T READ HER 2.15, BUT MY SENSE IS THAT SHE TOLD

11:43AM 14   US YESTERDAY THAT SHE WOULD FOLLOW THE INSTRUCTIONS OF THE

11:43AM 15   COURT.

11:43AM 16       2.15 WILL BE READ.  AND I THINK THAT WOULD DO ABOUT AS

11:43AM 17   MUCH AS WE CAN TO ABOUT INFORMING A JURY ABOUT WHAT THEY MAY

11:43AM 18   NOT DISCUSS IN A CASE.

11:43AM 19       AND YOU'RE RIGHT, WE CAN'T GO IN THERE WITH THEM.  WE'RE

11:43AM 20   NOT REFEREES WITH THEIR DISCUSSION.  THEY'LL DO WHAT THEY DO

11:43AM 21   GUIDED BY THE INSTRUCTIONS AND THE PRESUMPTION IS THAT THE

11:43AM 22   JURORS FOLLOW THE INSTRUCTIONS OF THE COURT.

11:43AM 23       SO THAT'S THE PROPHYLACTIC MEASURES THAT THE COURT CAN AND

11:43AM 24   WILL TAKE IN THE CASE.

11:43AM 25       I'M GOING TO -- IF YOU'RE MAKING A REQUEST TO STRIKE HER

11:43AM 1      FOR CAUSE, I'M GOING TO RESPECTFULLY DECLINE THAT INVITATION.

11:43AM 2      I DO THINK THAT SHE ANSWERED SUCH THAT A CAUSE CHALLENGE IS

11:43AM 3      WARRANTED IF THAT WAS THE REQUEST.

11:43AM 4              MR. COOPERSMITH:  THAT WAS THE QUESTION.

11:43AM 5              THE COURT:  THANK YOU.  83.

11:43AM 6          (PROSPECTIVE JUROR NUMBER 83 IS PRESENT.)

11:43AM 7              THE COURT:  GOOD MORNING.  HAVE A SEAT.

11:43AM 8      THANK YOU FOR COMING IN THIS MORNING AND STAYING A LITTLE

11:43AM 9      BIT TODAY.  WE WANTED TO FOLLOW UP WITH SOME OF THE QUESTIONS

11:43AM 10     THAT MR. COOPERSMITH MENTIONED OUTSIDE IN JUST A MOMENT AND

11:43AM 11     JUST FOLLOWING UP ON SOME OF THOSE WITH YOU HERE.

11:43AM 12     AND WE'RE SPEAKING WITH YOU PRIVATELY, OUTSIDE OF THE

11:43AM 13     PRESENCE OF THE OTHER PROSPECTIVE JURORS, SO WE DON'T HAVE THEM

11:43AM 14     LISTEN TO ANYTHING THAT MIGHT CAUSE THEM TO CHANGE AN ANSWER OR

11:43AM 15     THINK ABOUT AN ANSWER THAT IS NOT APPROPRIATE.

11:43AM 16     SO MR. COOPERSMITH IS GOING TO BEGIN BY ASKING YOU SOME

11:43AM 17     QUESTIONS.

11:43AM 18             MAY I ASK HIM TO TAKE HIS MASK OFF?  DO YOU HAVE A --

11:43AM 19             PROSPECTIVE JUROR:  NO, THAT'S FINE.

11:43AM 20             THE COURT:  ARE YOU COMFORTABLE WITH THAT?

11:43AM 21             PROSPECTIVE JUROR:  YES, THAT'S FINE.

11:43AM 22             THE COURT:  MR. COOPERSMITH.

11:43AM 23             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:43AM 24     THANK YOU, SIR, FOR COMING BACK HERE.

11:43AM 25             PROSPECTIVE JUROR:  SURE.

11:43AM  1          MR. COOPERSMITH:  AND TAKING THE TIME.  I APPRECIATE

11:43AM  2   THAT.

11:43AM  3       AS I SAID OUT IN THE COURTROOM, THERE'S NO WRONG ANSWERS

11:43AM  4   HERE.  WE'RE TRYING TO UNDERSTAND WHAT PEOPLE THINK AND FEEL

11:43AM  5   AND TO UNDERSTAND WHO THE RIGHT JURORS WOULD BE ON THIS CASE.

11:43AM  6       I THINK YOU SAID OR RAISED YOUR HAND AT LEAST TO

11:43AM  7   ACKNOWLEDGE THAT YOU WERE AWARE OF A RELATIONSHIP BETWEEN

11:43AM  8   MR. BALWANI AND MS. HOLMES?

11:43AM  9          PROSPECTIVE JUROR:  YES.

11:43AM 10          MR. COOPERSMITH:  AND WHAT DO YOU KNOW ABOUT THAT?

11:43AM 11          PROSPECTIVE JUROR:  ONLY THAT IT SEEMS THAT I RECALL

11:43AM 12   IN NEWSPAPER ARTICLES THAT I'VE READ MENTIONING THAT THEY HAD A

11:43AM 13   RELATIONSHIP.

11:43AM 14          MR. COOPERSMITH:  DO YOU KNOW ANYTHING MORE THAN

11:43AM 15   THAT ABOUT THE RELATIONSHIP?

11:43AM 16          PROSPECTIVE JUROR:  IT IMPLIED THAT IT WAS A

11:43AM 17   ROMANTIC RELATIONSHIP.

11:43AM 18          MR. COOPERSMITH:  OKAY.

11:43AM 19          PROSPECTIVE JUROR:  AND BEYOND THAT I REALLY DON'T

11:43AM 20   KNOW.

11:43AM 21          MR. COOPERSMITH:  OKAY.  AND NO OTHER KNOWLEDGE OF

11:43AM 22   HOW THE RELATIONSHIP WENT, WHETHER IT WAS SMOOTH OR DIFFICULT

11:43AM 23   OR GOOD OR BAD OR ANYTHING?

11:43AM 24          PROSPECTIVE JUROR:  WELL, I UNDERSTAND IT BECAME NOT

11:43AM 25   A GOOD RELATIONSHIP.

589

11:43AM  1          MR. COOPERSMITH:  AND WHAT DO YOU KNOW ABOUT THAT?

11:43AM  2     WHY DO YOU SAY IT DIDN'T BECOME A GOOD RELATIONSHIP?

11:43AM  3          PROSPECTIVE JUROR:  WELL, I THINK IT REFERRED TO --

11:43AM  4     I RECALL BEING REFERRED TO THE RELATIONSHIP IN THE PAST TENSE.

11:43AM  5          MR. COOPERSMITH:  MEANING IT'S NO LONGER A

11:43AM  6     RELATIONSHIP?

11:43AM  7          PROSPECTIVE JUROR:  RIGHT.

11:43AM  8          MR. COOPERSMITH:  BUT DO YOU KNOW THE REASON WHY IT

11:43AM  9     WOULD HAVE ENDED IF THAT'S WHAT HAPPENED?

11:43AM 10          PROSPECTIVE JUROR:  NO.

11:43AM 11          MR. COOPERSMITH:  OKAY.  DO YOU KNOW ANYTHING ABOUT

11:43AM 12     THE OUTCOME OF MS. HOLMES'S CASE OR WHAT HAPPENED TO HER?

11:43AM 13          PROSPECTIVE JUROR:  WELL, I UNDERSTAND SHE HAD OR

11:43AM 14     RECEIVED A NINE MONTH SENTENCE I BELIEVE IT WAS?

11:43AM 15          MR. COOPERSMITH:  OKAY.  THAT'S WHAT YOU HEARD?

11:43AM 16          PROSPECTIVE JUROR:  THAT'S WHAT I HAVE HEARD.

11:43AM 17          MR. COOPERSMITH:  OKAY.  AND IS THERE ANYTHING ABOUT

11:43AM 18     THAT UNDERSTANDING THAT WOULD MAKE YOU LESS THAN FAIR AND

11:43AM 19     IMPARTIAL IN THE CASE OF MR. BALWANI?

11:43AM 20          PROSPECTIVE JUROR:  WELL, ONLY TO THE EXTENT THAT, I

11:43AM 21     MEAN, I WOULD, I WOULD HAVE THE FEELING THAT THEY HAVE BEEN

11:43AM 22     SOMEHOW WORKING TOGETHER OR HAD HAD THE OPPORTUNITY TO WORK

11:43AM 23     TOGETHER ON WHATEVER IT WAS THAT SHE HAD DONE.

11:43AM 24          MR. COOPERSMITH:  OKAY.  SO DO YOU LINK THE TWO

11:43AM 25     THINGS, LIKE THERE WAS A ROMANTIC RELATIONSHIP ON THE ONE HAND

11:43AM 1    AND THAT YOU HAVE SOME UNDERSTANDING OF THE OUTCOME OF

11:43AM 2    MS. HOLMES'S CASE?  DO YOU LINK THOSE TWO THINGS?

11:43AM 3                PROSPECTIVE JUROR:  WELL, YEAH, IF THEY HAD A

11:43AM 4    RELATIONSHIP I WOULD LINK THE TWO.

11:43AM 5                MR. COOPERSMITH:  HOW WOULD YOU LINK THE TWO?

11:43AM 6                PROSPECTIVE JUROR:  WELL, I WOULD LINK THEM JUST

11:43AM 7    THAT TWO PEOPLE WHO WERE TOGETHER IN A ROMANTIC RELATIONSHIP,

11:43AM 8    AND ESPECIALLY IF THEY'RE INVOLVED IN THE SAME INDUSTRY AND THE

11:43AM 9    SAME BUSINESS, YOU KNOW, WOULD BE SHARING INFORMATION AND

11:43AM 10   DETAILS ABOUT WHAT WAS GOING ON.

11:43AM 11       I MEAN, IT'S HARD TO IMAGINE THAT ONE OF THEM WOULD NOT

11:43AM 12   KNOW WHAT THE OTHER ONE WAS DOING.

11:43AM 13               MR. COOPERSMITH:  OKAY.  IF YOU WERE SEATED AS A

11:43AM 14   JUROR, THE JUDGE WOULD INSTRUCT YOU THAT WHAT YOU KNOW ABOUT

11:43AM 15   THE OUTCOME OF MS. HOLMES'S CASE HAS NO BEARING ON THIS TRIAL.

11:43AM 16   THAT'S NOTHING SOMETHING THAT A JUROR IS SUPPOSED TO CONSIDER.

11:43AM 17   THAT YOU'RE SUPPOSED TO PUT THAT OUT OF YOUR MIND AND JUST

11:43AM 18   FOCUS ON WHETHER THE GOVERNMENT HAS MET ITS BURDEN TO PROVE

11:43AM 19   MR. BALWANI IS GUILTY BEYOND A REASONABLE DOUBT.

11:43AM 20       DO YOU THINK THAT YOU COULD PUT OUT OF YOUR MIND WHAT YOU

11:43AM 21   JUST TALKED ABOUT WITH THE RELATIONSHIP AND THE FACT THAT YOU

11:43AM 22   HAVE SOME KNOWLEDGE OF THE OUTCOME OF MS. HOLMES'S CASE, CAN

11:43AM 23   YOU PUT THAT ASIDE AND JUST GIVE MR. BALWANI A TOTALLY CLEAN

11:43AM 24   SLATE UNTIL THE GOVERNMENT IS ABLE TO, YOU KNOW, PROVE

11:43AM 25   OTHERWISE?

11:43AM  1          PROSPECTIVE JUROR:  WELL, I MEAN PERSONALLY I HAVE A

11:43AM  2     PROBLEM FOCUSSING.  AS I MENTIONED IN THE QUESTIONNAIRE, I HAVE

11:43AM  3     PARKINSON'S DISEASE, AND IT AFFECTS, IT AFFECTS MY COGNITIVE

11:43AM  4     ABILITIES TO FOLLOW THROUGH ON A PARTICULAR THOUGHT AND FOCUS

11:43AM  5     ON THINGS.

11:43AM  6          SO, I MEAN, TO THAT EXTENT, I DON'T KNOW WHETHER IT'S

11:43AM  7     GOING TO BE -- IF I'M GOING TO BE TOTALLY ABLE TO DO THAT.

11:43AM  8          MR. COOPERSMITH:  AND DO YOU THINK THAT'S PARTLY

11:43AM  9     BECAUSE OF YOUR ILLNESS, SIR?

11:43AM 10          PROSPECTIVE JUROR:  WELL, IT'S JUST THAT, YOU KNOW,

11:43AM 11     I HAVE A DIFFICULTY WITH, WITH CONCENTRATING FOR SPECIFICALLY

11:43AM 12     CONTINUITY ISSUES FOLLOWING THROUGH LIKE A STORY LINE.

11:43AM 13          FOR EXAMPLE, IF I SEE A MOVIE OR READ A BOOK, I COULD

11:43AM 14     ENJOY IT IN THE MOMENT, BUT IF I TRY TO RECALL IT AFTERWARDS, I

11:43AM 15     COULDN'T TELL YOU WHAT THE PLOT IS.

11:43AM 16          IN OTHER WORDS, I GET HALF WAY THROUGH IT, AND LOSE TRACK

11:43AM 17     OF WHAT I'M --

11:43AM 18          MR. COOPERSMITH:  SO JUST TO BE -- AND, FIRST OF

11:43AM 19     ALL, I'M VERY SORRY TO HEAR ABOUT YOUR ILLNESS, SIR.

11:43AM 20          PROSPECTIVE JUROR:  OH, THANKS.

11:43AM 21          MR. COOPERSMITH:  AND -- BUT BECAUSE OF THAT ISSUE,

11:43AM 22     IF YOU WERE TO SIT THROUGH A TRIAL THAT LASTED SEVERAL MONTHS,

11:43AM 23     AND THEN YOU WERE ASKED TO MAKE A DECISION OF MR. BALWANI BASED

11:43AM 24     ON ALL OF THE EVIDENCE THAT YOU HAVE HEARD, DO YOU HAVE ANY

11:43AM 25     DOUBT AS TO WHETHER YOU COULD RECALL AND PUT TOGETHER THE

11:43AM   1      DETAILS OF WHAT YOU HEARD IN ORDER TO, YOU KNOW, BE A JUROR WHO

11:43AM   2      COULD DELIBERATE AND REACH AN INVESTIGATION?

11:43AM   3              PROSPECTIVE JUROR:  WELL, I DEFINITELY FEEL LIKE I

11:43AM   4      WOULD HAVE DIFFICULTY DOING THAT.

11:43AM   5              MR. COOPERSMITH:  OKAY.  OKAY.  ALL RIGHT.  THANK

11:43AM   6      YOU, SIR.  I APPRECIATE YOUR HONESTY AND YOUR TIME.

11:43AM   7              PROSPECTIVE JUROR:  OKAY.

11:43AM   8              MR. COOPERSMITH:  I DON'T HAVE ANY OTHER QUESTIONS

11:43AM   9      FOR THIS JUROR.

11:43AM  10              THE COURT:  MR. SCHENK.

11:43AM  11              MR. SCHENK:  JUST ONE BRIEF QUESTION.

11:43AM  12          SOME JURORS DURING TRIAL DECIDE TO TAKE NOTES BECAUSE THEY

11:43AM  13      ALSO HAVE TROUBLE REMEMBERING DURING THE COURSE OF A LONG

11:43AM  14      TRIAL.

11:43AM  15          WOULD TAKING NOTES ASSIST YOU ABOUT RECALL LATER OR DO YOU

11:43AM  16      THINK THAT WOULDN'T BE A SUFFICIENT SOLUTION?

11:43AM  17              MR. COOPERSMITH:  WELL, PART OF THE PROBLEM AND ONE

11:43AM  18      OF THE SYMPTOMS, PHYSICAL SYMPTOMS I HAVE IS DIFFICULTY IN

11:43AM  19      WRITING, AND I DON'T KNOW THAT I'LL BE ABLE TO TAKE NOTES

11:43AM  20      EFFECTIVELY.

11:43AM  21              THE COURT:  OKAY.  THANK YOU VERY MUCH.

11:43AM  22          ANYTHING FURTHER?

11:43AM  23              MR. COOPERSMITH:  NOTHING FURTHER, YOUR HONOR.

11:43AM  24              THE COURT:  YOU'RE ONE OF THE RARE PEOPLE WHO ARE A

11:43AM  25      NATIVE BAY AREA.  I THINK YOU WERE BORN IN SAN MATEO?

11:43AM   1          PROSPECTIVE JUROR:  SAN MATEO, THAT'S CORRECT.

11:43AM   2          THE COURT:  DID YOU GO TO SAN MATEO HIGH?

11:43AM   3          PROSPECTIVE JUROR:  NO.  I ACTUALLY GREW UP IN

11:43AM   4  SAN JOSE -- ACTUALLY I GREW UP IN SARATOGA AND WENT TO PROSPECT

11:43AM   5  HIGH SCHOOL.

11:43AM   6          THE COURT:  OH.  YOU'RE ONE OF THE LOCALS, TRUE

11:43AM   7  LOCALS.  THERE USED TO BE A LOT OF ORCHARDS WHEN YOU WERE IN

11:43AM   8  HIGH SCHOOL.

11:43AM   9          PROSPECTIVE JUROR:  WHEN I WAS A KID I REMEMBER

11:43AM  10  THEM.

11:43AM  11          THE COURT:  DID YOU CUT APRICOTS?

11:43AM  12          PROSPECTIVE JUROR:  NO, BUT WHEN I WAS A KID I

11:43AM  13  REMEMBER EATING THEM.

11:43AM  14      (LAUGHTER.)

11:43AM  15          THE COURT:  THERE WERE A LOT OF THEM.

11:43AM  16      ANY FURTHER QUESTIONS?

11:43AM  17          MR. COOPERSMITH:  NO, YOUR HONOR.

11:43AM  18          THE COURT:  THANK YOU FOR COMING IN.  YOU'LL BE

11:43AM  19  NOTIFIED BY THE CLERK'S OFFICE WHETHER YOU WILL NEED TO COME

11:43AM  20  BACK IN.  THANK YOU FOR SPENDING TIME WITH US THIS MORNING.

11:43AM  21          PROSPECTIVE JUROR:  THANK YOU VERY MUCH.

11:43AM  22      (PROSPECTIVE JUROR NUMBER 83 IS NOT PRESENT.)

11:43AM  23          THE COURT:  MR. COOPERSMITH.

11:43AM  24          MR. COOPERSMITH:  I THINK THERE WERE TWO ISSUES WITH

11:43AM  25  JUROR NUMBER 83.  ONE IS THE HARDSHIP ISSUE.

594

11:43AM  1          I THINK MR. SCHENK MADE A GOOD POINT AND QUESTION ABOUT DO

11:43AM  2     YOU TAKE NOTES?  AND APPARENTLY THAT'S NOT EVEN AN OPTION FOR

11:43AM  3     HIM.

11:43AM  4               THE COURT:  THAT'S IN HIS QUESTIONNAIRE, HE HAS

11:43AM  5     TROUBLE WRITING.

11:43AM  6               MR. COOPERSMITH:  SO BASED ON THE HARDSHIP.  AND

11:43AM  7     ALSO I THINK THERE WERE SOME CAUSE ISSUES PUTTING THE OUTCOME

11:43AM  8     OUT AND ESPECIALLY WHEN YOU COMBINE THE TWO THINGS.  I THINK

11:43AM  9     THIS JUROR SHOULD BE EXCUSED.

11:43AM 10               MR. LEACH:  THE GOVERNMENT DOESN'T OPPOSE EXCUSING

11:43AM 11     HIM FOR HARDSHIP.  I DON'T THINK WE NEED TO REACH THE CAUSE

11:43AM 12     ISSUE.

11:43AM 13               THE COURT:  IN TALKING WITH HIM, AND THE COURT

11:43AM 14     REREAD HIS QUESTIONNAIRE, AND SEEING HIS DEMEANOR, AND I LOOKED

11:43AM 15     AT HIS WRITING, AND HE WAS VERY CANDID ABOUT HIS COGNITIVE

11:43AM 16     ABILITY TO RECALL, AND SO I'M GOING TO STRIKE HIM FOR HARDSHIP.

11:43AM 17               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:43AM 18               THE COURT:  I THINK THAT EXHAUSTS YOUR LIST FOR THE

11:43AM 19     MORNING?

11:43AM 20               MR. COOPERSMITH:  THAT WAS THE LIST.

11:43AM 21               THE COURT:  OKAY.

11:43AM 22               MR. COOPERSMITH:  AND THEN WE STILL HAVE THE OTHER

11:43AM 23     CAUSE STRIKES FOR THE PEOPLE.

11:43AM 24          I'VE GIVEN MR. SCHENK A DOCUMENT THAT TELLS THE GOVERNMENT

11:43AM 25     WHO THAT IS, AND I HAVE A DOCUMENT FOR THE COURT AS WELL.  THIS

11:43AM  1     IS WHAT I WILL BE GOING THROUGH.

11:43AM  2               THE COURT:  SHOULD I RECEIVE THIS?

11:43AM  3               MR. SCHENK:  YES, YOUR HONOR.  I THINK IT MAY BE

11:43AM  4     HELPFUL.

11:43AM  5               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:43AM  6          (HANDING.)

11:43AM  7               THE COURT:  SHOULD WE -- LET ME CHECK MY CALENDAR

11:43AM  8     FOR JUST A MOMENT.  LET'S GO OFF THE RECORD.

11:43AM  9          (DISCUSSION OFF THE RECORD.)

11:43AM  10              THE COURT:  WE'LL SEE YOU AT 1:00 O'CLOCK.

11:43AM  11         YOU KNOW WHAT, WE'LL BE IN JUDGE KOH'S COURTROOM BECAUSE

11:43AM  12    THEY'LL BE HANGING THE MURAL HERE.  SO WE'LL BE MEETING

11:43AM  13    DOWNSTAIRS, I THINK; IS THAT RIGHT?

11:43AM  14              MR. COOPERSMITH:  YES, WE CAN DO THAT.

11:43AM  15         I'M SORRY, YOUR HONOR.

11:43AM  16         THERE WAS A JUROR THAT YOU DEFERRED ON 126 FROM YESTERDAY.

11:43AM  17              THE COURT:  NOT 12 --

11:43AM  18              MR. COOPERSMITH:  SHE WAS 126.

11:43AM  19              THE COURT:  126, YES.  THE CHIROPRACTOR, RIGHT?

11:43AM  20              MR. COOPERSMITH:  THAT'S CORRECT.

11:43AM  21              THE COURT:  I DID REVIEW THE TRANSCRIPT OF THE

11:43AM  22    COLLOQUY.  I THINK IT WAS TWO PAGES OF -- AT LEAST THAT I WAS

11:43AM  23    INTERESTED IN -- REGARDING -- WHAT I FOCUSSED ON YESTERDAY WAS

11:43AM  24    HER STATEMENTS REGARDING MORAL AND ETHICS.  I WAS INTRIGUED BY

11:43AM  25    THAT.

11:43AM   1          HER OTHER COMMENTS ABOUT HER INVOLVEMENT WITH HER WORK DID

11:43AM   2     NOT TROUBLE ME.  THAT IS SCHEDULING, AND SHE HAD COLLEAGUES WHO

11:43AM   3     COULD DO HER CASELOAD.  SHE HAD CONCERN.

11:43AM   4          THAT, TO ME, SOUNDS LIKE, IF YOU WILL, THE NORMAL BUSINESS

11:43AM   5     DISRUPTION AND LIFE DISRUPTION THAT JURORS HAVE WHEN THEY'RE

11:43AM   6     CALLED.  SO I DON'T HAVE ANY CONCERN ABOUT THAT.

11:43AM   7          MY CONCERN WAS FOCUSSED ON HER USE OF THE WORD "ETHICS"

11:43AM   8     AND "MORALITY," AND I WANTED TO LOOK AT THAT AGAIN.

11:43AM   9          IT SEEMED TO ME THAT SHE'S EQUATING HER -- SHE TOLD US AS

11:43AM  10     A HEALTH CARE PROVIDER THAT SHE PAYS GREAT ATTENTION TO ETHICS

11:43AM  11     AND MORAL.  THAT CAUSES ME CONCERN THAT IN LOOKING AT THIS

11:43AM  12     EVIDENCE SHE'S GOING TO USE THAT LENS TO PERHAPS JUDGE THE

11:43AM  13     EVIDENCE IN AN UNFAIR MANNER.

11:43AM  14               MR. COOPERSMITH:  THAT WAS OUR CONCERN AS WELL.

11:43AM  15               THE COURT:  SO I'M GOING TO STRIKE HER FOR CAUSE.

11:43AM  16     THANK YOU FOR LETTING ME LOOK AT THE TRANSCRIPT.

11:43AM  17          WE'LL SEE YOU AT 1:00 O'CLOCK.

11:43AM  18               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:43AM  19               MR. SCHENK:  OKAY.

11:43AM  20          (LUNCH RECESS TAKEN AT 11:43 A.M.)

         21

         22

         23

         24

         25

01:05PM 1                          **AFTERNOON SESSION**

01:06PM 2              (COURT CONVENED AT 1:06 P.M.)

01:06PM 3              (PROSPECTIVE JURY PANEL OUT AT 1:06 P.M.)

01:06PM 4                   THE COURT:  ALL RIGHT.  WE'RE ON THE RECORD IN THE

01:06PM 5      BALWANI MATTER.

01:06PM 6         ALL COUNSEL PREVIOUSLY PRESENT ARE PRESENT AGAIN.

01:06PM 7         I THINK WE WERE GOING TO TALK ABOUT ADDITIONAL POTENTIAL

01:06PM 8      CHALLENGES I BELIEVE.

01:06PM 9                   MR. COOPERSMITH:  YES, YOUR HONOR.

01:07PM 10                  THE COURT:  LET ME FIX THE MICROPHONE BEFORE WE GO

01:07PM 11     ON THE RECORD, IRENE.

01:07PM 12             (DISCUSSION OFF THE RECORD.)

01:07PM 13                  THE COURT:  LET'S GO ON THE RECORD.

01:07PM 14        MR. COOPERSMITH, YOU HAVE SOME THOUGHTS ABOUT SOME JURORS?

01:07PM 15                  MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

01:07PM 16        AND I DON'T KNOW IF YOU STILL HAVE THE LIST, YOUR HONOR,

01:07PM 17     BUT WE GAVE A LIST OUT WHEN WE WERE IN THE DELIBERATION ROOM TO

01:08PM 18     MR. SCHENK AS WELL.

01:08PM 19                  THE COURT:  YES.

01:08PM 20                  MR. COOPERSMITH:  AND THAT'S THE LIST THAT I'M GOING

01:08PM 21     TO FOLLOW.

01:08PM 22                  THE COURT:  OKAY.

01:08PM 23                  MR. COOPERSMITH:  I HAVE A COUPLE OF OTHER QUESTIONS

01:08PM 24     BEYOND THAT, BUT LET ME JUST START WITH THAT LIST.

01:08PM 25             SO THE FIRST ITEM DISCUSSED IS HARDSHIP ISSUES THAT WE

01:08PM 1    JUST WANTED TO MAKE SURE THE COURT ADDRESSED.

01:08PM 2         SO THE FIRST ONE IN THAT CATEGORY IS JUROR NUMBER 6.

01:08PM 3         WHAT WE DID HERE IS WE WENT BACK TO THE TRANSCRIPT SO WE

01:08PM 4    COULD GET EXACTLY WHAT THE RECORD WAS AND WHAT WE THOUGHT THE

01:08PM 5    ISSUE WAS.

01:08PM 6         SO ON THIS ONE THE JUROR SAID THAT "I HAVE TO WORK EARLY"

01:08PM 7    SO SHE CAN HELP HER SINGLE DAUGHTER TO WORK AFTER SHE COMES

01:08PM 8    HOME, BECAUSE SHE HAS A 97-YEAR OLD MOTHER-IN-LAW IN MY HOUSE

01:08PM 9    AND A 3-YEAR OLD TO TAKE CARE OF.

01:08PM 10        SHE SAID, IS THERE ANY ADJUSTMENT YOU CAN MAKE -- THE

01:08PM 11   COURT ASKED THE QUESTION IF THERE'S ANY ADJUSTMENT SHE CAN MAKE

01:08PM 12   TO MAKE SURE THE FAMILY IS PROVIDED FOR AND THE BABYSITTING

01:09PM 13   OCCURS AND YOU CAN ALSO BE A JUROR IN THIS CASE?

01:09PM 14        AND THE ANSWER WAS I DON'T KNOW.

01:09PM 15        SO THAT SEEMED TO BE A QUESTION.  OBVIOUSLY THE COURT CAN

01:09PM 16   MAKE A DECISION ABOUT THAT, BUT I JUST WANTED TO BRING THAT TO

01:09PM 17   YOUR ATTENTION.

01:09PM 18             THE COURT:  OKAY.

01:09PM 19        MR. SCHENK.

01:09PM 20             MR. SCHENK:  YOUR HONOR, I THINK IT'S A CLOSE CALL.

01:09PM 21   I DON'T THINK THE RECORD IS AS GOOD OR AS CLOSE IT HAS BEEN FOR

01:09PM 22   OTHER JURORS WE HAVE EXCUSED FOR CAUSE BECAUSE OF HER "I DON'T

01:09PM 23   KNOW" ANSWER.

01:09PM 24        IF YOU LOOK AT HER QUESTIONNAIRE, IN QUESTION 1 SHE WROTE

01:09PM 25   NO TO WHETHER SHE WAS APPLYING TO BE EXCUSED ON THE BASIS OF A

01:09PM  1    SERIOUS HARDSHIP, BUT TO NUMBER 7 SHE WROTE YES.

01:09PM  2        NUMBER 7 WAS A QUESTION ABOUT THE IMPLICATIONS OF THE

01:09PM  3    COVID PANDEMIC ON THE JURY SERVICE.  SHE WROTE DUE TO THE

01:09PM  4    PANDEMIC SHE HAD TO START WORK EARLY SO THAT SHE COULD TAKE

01:09PM  5    CARE OF THIS GRANDCHILD, ALLOWING HER CHILD TO WORK.

01:09PM  6        IT SEEMS, AS A RESULT, A LITTLE UNCLEAR IF, AS PANDEMIC

01:10PM  7    RESTRICTIONS LOOSEN, THIS HARDSHIP EVAPORATES AND WHETHER HER

01:10PM  8    ABILITY TO BE A JUROR IS THEN SORT OF MADE A LITTLE EASIER, AND

01:10PM  9    DOES THAT EXPLAIN THE "I DON'T KNOW" ANSWER BECAUSE OF THE

01:10PM  10   TRANSITION TIME WE'RE IN.

01:10PM  11       I SUPPOSE I'M LEFT IN A POSITION OF NOT REALLY BEING ABLE

01:10PM  12   TO PROVIDE MUCH OF A RECOMMENDATION TO THE COURT.  I SUPPOSE MY

01:10PM  13   ANSWER IS LIKE HERS, I DON'T KNOW.  IT'S A CLOSE CALL, AND THE

01:10PM  14   RECORD IS JUST INCOMPLETE ON HER REQUEST.

01:10PM  15            THE COURT:  MR. COOPERSMITH, ANYTHING FURTHER ON

01:10PM  16   THAT ONE?

01:10PM  17            MR. COOPERSMITH:  THAT'S ALL I HAVE, YOUR HONOR.

01:10PM  18            THE COURT:  ALL RIGHT.  THANK YOU.

01:10PM  19       I WAS HOPING WHEN I ASKED THE QUESTIONS, I TYPICALLY DO

01:10PM  20   ABOUT CONFLICTS AND THINGS, THAT WE WOULD HAVE A MORE FULSOME

01:10PM  21   ANSWER ABOUT SOLUTIONS, AND "I DON'T KNOW" IS THE BEST SHE

01:10PM  22   COULD DO WHEN I ASKED HER THE QUESTION.

01:10PM  23       WE DIDN'T CALL HER BACK TO ASK FOR FOLLOWUP.

01:11PM  24       I THINK IN THE TOTALITY OF HER CIRCUMSTANCES, WITH HER

01:11PM  25   97-YEAR YOUNG MOTHER AND THE 3-YEAR OLD, IT SOUNDS LIKE HER

01:11PM 1    HANDS ARE QUITE FULL ALREADY.

01:11PM 2        SO I'M GOING TO STRIKE HER FOR HARDSHIP.  JUROR 6 IS

01:11PM 3    STRICKEN FOR HARDSHIP.

01:11PM 4            MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:11PM 5        MOVING ON TO THE NEXT ONE ON THE LIST -- OBVIOUSLY

01:11PM 6    NUMBER 10 WAS ALREADY STRUCK.

01:11PM 7        WE MOVE ON TO NUMBER 14, JUROR NUMBER 14.

01:11PM 8            THE COURT:  YES.

01:11PM 9            MR. COOPERSMITH:  SO THIS WAS A WOMAN WHO SAID THAT

01:11PM 10   HER CONCERN WAS THAT POLISH -- I'M SORRY, ENGLISH WAS NOT HER

01:11PM 11   FIRST LANGUAGE.  SHE SAID THE CASE IS SO SERIOUS THAT I HAVE

01:11PM 12   CONCERNS THAT LAW TERMINOLOGY OR FINANCE TERMINOLOGY, SHE'S

01:11PM 13   REALLY NERVOUS ABOUT THIS AND IT MIGHT REALLY AFFECT, REALLY

01:11PM 14   AFFECT REALLY MY COMPREHENSION AND THE VERDICT.

01:11PM 15       AND THEN DURING THE COLLOQUY I HAD WITH HER, YOUR HONOR, I

01:11PM 16   ASKED HER ABOUT THAT ISSUE, AND SHE WAS TALKING ABOUT WATCHING

01:12PM 17   MOVIES AND HOW SHE DIDN'T REALLY HAVE A COMPREHENSION OF MOVIES

01:12PM 18   AND THAT SHE WAS ALWAYS HAVING TO ASK PEOPLE WHAT WAS GOING ON,

01:12PM 19   WHICH SHE OBVIOUSLY COULDN'T DO AS A JUROR.

01:12PM 20       AND SO WE THOUGHT FOR THAT REASON -- AND THIS IS A -- I

01:12PM 21   KNOW WHAT YOUR HONOR SAID, AND WE WILL, OF COURSE -- I'M SURE

01:12PM 22   THE GOVERNMENT WILL AS WELL -- WILL TRY TO MAKE THIS AS

01:12PM 23   DIGESTIBLE AS WE CAN, AND IT'S TO OUR ADVANTAGE AND ALL OF OUR

01:12PM 24   ADVANTAGES TO DO THAT.

01:12PM 25       HOWEVER, THIS JUROR, I THINK, SAID SEVERAL TIMES SHE HAD

01:12PM  1    CONCERNS.

01:12PM  2        I'LL JUST MENTION, AND I'M TALKING ABOUT HARDSHIP, SHE DID

01:12PM  3    MENTION IN HER QUESTIONNAIRE THAT HER HUSBAND ALWAYS SAYS THAT

01:12PM  4    THERANOS WAS THE BIGGEST SCAM.  THAT WAS QUESTION 39.

01:12PM  5        AND IN QUESTION 41, SHE WROTE, SHE GOT MONEY FROM PEOPLE

01:12PM  6    PROMISING NEVER TO DELIVER.

01:12PM  7        AND I KNOW SHE ANSWERED SOME QUESTIONS THAT SUGGESTED THAT

01:12PM  8    SHE COULD STILL BE FAIR.  WE HAVE THAT LINGERING CONCERN.

01:12PM  9        BUT THE HARDSHIP ISSUE TO US ON THE ENGLISH LANGUAGE AND

01:12PM  10   THE FAILURE TO COMPREHEND MOVIES WE THINK WOULD BE ENOUGH TO

01:13PM  11   STRIKE.

01:13PM  12        THE COURT:  OKAY.

01:13PM  13        MR. SCHENK:  YOUR HONOR, THE GOVERNMENT OPPOSES

01:13PM  14   EXCUSING JUROR 14 FOR HARDSHIP.  SHE HAS BEEN IN THE

01:13PM  15   UNITED STATES I THINK SHE SAID FOR 30 YEARS.

01:13PM  16        SHE ENGAGED THOUGHTFULLY IN DIALOGUE WITH THE COURT AND

01:13PM  17   WITH MR. COOPERSMITH ON ALL OF THESE ISSUES.

01:13PM  18        IF YOU LOOK AT HER QUESTIONNAIRE, SHE ANSWERED THE

01:13PM  19   QUESTIONS.  SHE DIDN'T JUST CHECK YES OR NO.  ON MANY OCCASIONS

01:13PM  20   SHE WROTE OUT RESPONSES.  SHE EVEN WROTE NOT APPLICABLE OR N-A

01:13PM  21   TO CERTAIN QUESTIONS.  THAT SHOWED SHE WASN'T SKIPPING

01:13PM  22   QUESTIONS THAT SHE FOUND CONFUSING OR DIDN'T KNOW HOW TO

01:13PM  23   RESPOND TO.

01:13PM  24        BUT HER QUESTIONNAIRE ALSO DOESN'T SUGGEST SOMEONE WHOSE

01:13PM  25   LANGUAGE DIFFICULTIES WOULD RISE TO THE LEVEL OF A HARDSHIP FOR

01:13PM  1      OUR CASE.

01:13PM  2                  THE COURT:  ALL RIGHT.  THANK YOU.

01:13PM  3          SHE WAS -- I DON'T WANT TO USE THE WORD "ENTERTAINING,"

01:13PM  4      BUT SHE DID EXCHANGE WITH THE COURT AND COUNSEL, I THOUGHT

01:14PM  5      EFFECTIVELY.  AND ACTUALLY, AS THE DAY WENT ON, I THOUGHT SHE

01:14PM  6      GOT BETTER, CANDIDLY.  IT SEEMED TO BE HER ATTENTION LEVEL WAS

01:14PM  7      INCREASED.

01:14PM  8          SHE TOLD US ABOUT THE MOVIES.  I WAS STRUCK WITH PERHAPS

01:14PM  9      SHE WAS BEING A MOVIE CRITIC BECAUSE SHE SAID, MY HUSBAND

01:14PM  10     WATCHES THESE POLITICAL MOVIES, AND IT'S HARD FOR ME TO FOLLOW

01:14PM  11     THE POLITICAL MOVIES.

01:14PM  12         AND I DON'T KNOW IF THAT WAS THE PLOT, BECAUSE SOMETIMES

01:14PM  13     THOSE ARE DENSE AND THICK AND FULL OF SURPRISES, OR WHETHER IT

01:14PM  14     WAS SOMETHING ELSE.

01:14PM  15         SHE DID, IN RESPONSE TO ONE OF OUR QUESTIONS ABOUT -- I

01:14PM  16     THINK IT WAS MR. SCHENK, WELL, WHAT DO YOU DO IF THE T.V. IS

01:14PM  17     ON?  BECAUSE SHE SAID THE T.V. IS ALWAYS ON IN HER HOUSEHOLD,

01:14PM  18     OR FREQUENTLY ON.

01:14PM  19         SHE SAID, DO I JUST RUN OUT OF THE ROOM?  WELL, I GUESS

01:14PM  20     THAT'S WHAT I'LL DO, I'LL RUN OUT OF THE ROOM.

01:14PM  21         SO SHE SEEMED TO HAVE COMPREHENSIVE KNOWLEDGE ABOUT THE

01:14PM  22     INSTRUCTION THAT THAT QUESTION, AND THE RESPONSE WAS PHRASED

01:15PM  23     TO, THE NEED NOT TO BE EXPOSED.

01:15PM  24         AND SHE HAS BEEN HERE 30 YEARS.  I RECOGNIZE THAT -- I

01:15PM  25     THINK POLISH IS HER FIRST LANGUAGE.  BUT I, I DIDN'T HAVE

603

01:15PM  1    DIFFICULTY COMMUNICATING WITH HER, AND I DIDN'T OBSERVE THAT

01:15PM  2    COUNSEL DID.

01:15PM  3         YOU MAY HAVE HAD TO REPEAT A QUESTION, BUT I DON'T THINK

01:15PM  4    IT WAS LANGUAGE.  I THINK IT WAS AUDITORY.  THE MICROPHONES

01:15PM  5    WERE NOT WORKING.

01:15PM  6         BUT I'M NOT GOING TO FIND A HARDSHIP OR A CAUSE FOR HER.

01:15PM  7         SO SHE'LL REMAIN ON THE PANEL.

01:15PM  8              MR. COOPERSMITH:  UNDERSTOOD, YOUR HONOR.

01:15PM  9         AND BY THE WAY, I'LL ALSO MENTION THAT SHE COMPLAINED

01:15PM  10   ABOUT A FINGER INJURY.

01:15PM  11             THE COURT:  YES.

01:15PM  12             MR. COOPERSMITH:  AND I DON'T KNOW THAT THAT WAS A

01:15PM  13   REASON TO STRIKE HER, SO I WASN'T INCLUDING THAT.

01:15PM  14             THE COURT:  SHE SEEMED TO -- SHE HELD IT UP, I

01:15PM  15   THINK.  AND I SAW HER.  SHE TOLD US SHE HAD TO EXERCISE IT, AND

01:15PM  16   MY OBSERVATION WAS THAT THERE WERE A COUPLE OF TIMES WHEN SHE

01:15PM  17   WAS MOVING HER HAND AROUND AND CLOSING IT AND OPENING IT, AND I

01:15PM  18   DON'T KNOW IF THAT WAS THE EXERCISE SHE WAS REFERENCING, BUT --

01:16PM  19             MR. COOPERSMITH:  YES, YOUR HONOR.

01:16PM  20             THE COURT:  OKAY.

01:16PM  21             MR. COOPERSMITH:  THAT BRINGS US TO JUROR NUMBER 31.

01:16PM  22        THIS WAS THE YOUNG MAN WHO SAID HE HAD BEEN ON OTHER

01:16PM  23   JURIES.  HE SAID IT WAS A THIRD TIME THAT HE HAD BEEN CALLED.

01:16PM  24   YOU REMEMBER HIM.

01:16PM  25             THE COURT:  YES.  I DON'T NEED TO HEAR A LOT ABOUT

01:16PM 1    31.  I THINK I HEARD A LOT ABOUT 31 FROM HIS OWN MOUTH, SO I

01:16PM 2    DON'T NEED ANY ASSISTANCE FOR 31.  I'M GOING TO STRIKE HIM FOR

01:16PM 3    HARDSHIP.

01:16PM 4         THANK YOU FOR YOUR OFFER.

01:16PM 5              MR. COOPERSMITH:  YES, YOUR HONOR.

01:16PM 6         NEXT ONE FOR HARDSHIP IS 42.

01:16PM 7         SO WE LOOKED BACK AT THE TRANSCRIPT, AND IT'S QUOTED IN

01:16PM 8    THE LIST I HANDED UP, YOUR HONOR, THE TRANSCRIPT CITES.

01:16PM 9         SO JUST GOING THROUGH THE BULLET POINTS, HE SAID, "SO I'VE

01:16PM 10   BEEN APPLYING FOR THE LAST MONTH FOR A JOB.  SINCE I WAS AWAY

01:16PM 11   FROM WORK FOR THE LAST TEN YEARS IT WAS NOT, LIKE, REALLY EASY

01:17PM 12   TO FIND SOME," REFERRING TO APPLYING FOR A JOB.

01:17PM 13        AND THEN HE CONTINUED.  "AT PRESENT I HAVE ONE OFFER

01:17PM 14   ALREADY, AND TODAY, THIS MORNING, I RECEIVED IN THE MAIL

01:17PM 15   THEY'RE PUTTING ONE FOR ME, THE SECOND ONE, LIKE TODAY,

01:17PM 16   SOMETHING, THAT I'M WILLING TO TAKE."

01:17PM 17        AND THEN HE TALKED ABOUT THE DIFFICULTY OF A START DATE.

01:17PM 18              THE COURT:  SHE.

01:17PM 19              MR. COOPERSMITH:  I'M SORRY, YOUR HONOR, SHE HAD

01:17PM 20   DIFFICULTY WITH THE START DATE.

01:17PM 21        AND THEN YOUR HONOR HAD A DIALOGUE WITH HER WHERE YOU

01:17PM 22   ASKED HER ABOUT THE CONCERN, AND SHE SAID THAT ULTIMATELY, "AND

01:17PM 23   THEY WOULD BE, LIKE, TRAINING, I WOULDN'T BE ABLE TO LEARN THE

01:17PM 24   THING PROPERLY IF I'M NOT THERE."

01:17PM 25        SO BASICALLY IN A NUTSHELL, SHE WAS TOLD -- SHE WAS

```
01:17PM   1    LOOKING FOR A JOB, SHE HADN'T WORKED FOR A WHILE OUTSIDE OF THE
01:18PM   2    HOME APPARENTLY.  SHE DECIDED TO GET BACK INTO THE WORK FORCE.
01:18PM   3    SHE APPLIED FOR A COUPLE OF JOBS.  SHE HAD AN OFFER, I THINK IT
01:18PM   4    WAS BEING PREPARED AND SHE WAS GOING TO GET IT.  SHE WANTED TO
01:18PM   5    ACCEPT IT AND SHE FELT IT WOULD BE VERY DIFFICULT TO SAY, WELL,
01:18PM   6    ACTUALLY THANK YOU, BUT I'M NOT GOING TO BE ABLE TO START FOR
01:18PM   7    THREE MONTHS.
01:18PM   8         SO THAT SEEMED TO BE A PROBLEM FOR HER AND A REASON TO
01:18PM   9    STRIKE HER.
01:18PM  10              MR. SCHENK:  YOUR HONOR, I THINK THIS ONE IS ALSO A
01:18PM  11    CLOSE CALL, LIKE NUMBER 6.  THERE'S TWO JOB OFFERS SHE TALKED
01:18PM  12    ABOUT WITH THE COURT.
01:18PM  13         THE FIRST ONE SHE ACTUALLY KNEW ABOUT WHEN SHE FILLED OUT
01:18PM  14    THE QUESTIONNAIRE.  IT'S NOT THE ONE THAT SHE WAS INCLINED TO
01:18PM  15    ACCEPT.
01:18PM  16         THE SECOND ONE SHE RECEIVED THE OFFER, OR AT LEAST
01:18PM  17    COMMUNICATION THAT SHE WOULD RECEIVE AN OFFER AFTER FILLING OUT
01:18PM  18    THE QUESTIONNAIRE, BUT BEFORE COMING TO COURT FOR THE JURY
01:18PM  19    SELECTION PROCESS.
01:18PM  20         WHAT SHE SAID WAS, THAT IS THE ONE THAT I WANT TO ACCEPT.
01:18PM  21    THAT ONE HAS A START DATE I THINK SHE SAID THE 28TH OF MARCH.
01:18PM  22         AND SHE DIDN'T HAVE THE WRITTEN OFFER YET, AND SHE HAD NOT
01:18PM  23    COMMUNICATED WITH THEM ABOUT THE IMPACT OF JURY SERVICE AND, IN
01:19PM  24    PARTICULAR, WHETHER THE JURY SERVICE WOULD AFFECT HER ABILITY
01:19PM  25    TO TRAIN AT THIS NEW EMPLOYER OR WHETHER SHE WOULD START SORT
```

01:19PM 1    OF BEHIND BECAUSE SHE MISSED THE TRAINING.

01:19PM 2         I REALLY WOULD PREFER IF WE HAD A LITTLE MORE DEVELOPED ON

01:19PM 3    THAT, THE WRITTEN OFFER AND THE INFORMATION ABOUT WHETHER THERE

01:19PM 4    IS ACTUALLY A CONFLICT BETWEEN OUR DAYS OF TRIAL AND HER

01:19PM 5    ABILITY TO TRAIN.

01:19PM 6         THAT SAID, IT DOES WORRY ME A LITTLE BIT THAT KEEPING HER

01:19PM 7    ON, INCLUDING HER IN THE SELECTION IS GOING TO GIVE US A JUROR

01:19PM 8    WHO VERY QUICKLY IS GOING TO HAVE A CRYSTALLIZED HARDSHIP.

01:19PM 9         I DON'T THINK IT'S CRYSTALLIZED TODAY, BUT IT FEELS LIKE

01:19PM 10   WE'RE ON THE EVE OF A CRYSTALLIZED HARDSHIP.

01:19PM 11             THE COURT:  THANK YOU.

01:19PM 12        ANYTHING FURTHER, MR. COOPERSMITH?

01:19PM 13             MR. COOPERSMITH:  YOUR HONOR, JUST THAT ONE THING --

01:19PM 14             THE COURT:  YOU DON'T HAVE TO IF YOU DON'T WANT TO.

01:19PM 15             MR. COOPERSMITH:  WELL, NO.  I'LL JUST SAY REAL

01:19PM 16   QUICKLY THAT IT'S ONE THING TO HAVE AN ESTABLISHED JOB AND YOU

01:20PM 17   CAN TELL YOUR EMPLOYER I'LL COME DO JURY SERVICE.

01:20PM 18        BUT IN THIS SITUATION IT SEEMED REALLY PROBLEMATIC FOR

01:20PM 19   HER.

01:20PM 20             THE COURT:  YEAH, IT IS -- IT IS REGRETTABLE THAT

01:20PM 21   HER NEW JOB AND THE TRIAL START, COINCIDE SOMEWHAT AND OVERLAP.

01:20PM 22        I THOUGHT, WELL, WHY DON'T YOU JUST -- WE'LL TAKE A BREAK

01:20PM 23   AND WHY DON'T YOU CALL THEM AND TELL THEM YOU ACCEPT, BUT YOU

01:20PM 24   WON'T BE AVAILABLE FOR THREE MONTHS.

01:20PM 25        THAT'S NOT REALISTIC, I THINK, IN TODAY'S MARKET.

01:20PM 1       AND SHE, I THINK, HAS A SPECIALIZED FIELD.  I THINK SHE

01:20PM 2    HAS ADVANCED DEGREES.

01:20PM 3       I'M GOING TO STRIKE HER FOR HARDSHIP.

01:20PM 4        MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:20PM 5       THAT BRINGS US TO JUROR NUMBER 79.  SHE WAS THE SOCIAL

01:20PM 6    WORKER AT THE DAVITA DIALYSIS CLINIC.  SHE EXPLAINED HOW SHE

01:20PM 7    OVERSAW ABOUT 130 PATIENTS.  SHE'S MOVING TO A DIFFERENT

01:20PM 8    LOCATION WITH HER CLINIC.

01:21PM 9       AND THEN SHE TALKED ABOUT HOW THE SOCIAL WORKERS WERE

01:21PM 10    ALREADY COVERING OTHER CLINICS AND SHE SAID IT WOULD BE A VERY

01:21PM 11    LARGE IMPACT ON HER PATIENTS.

01:21PM 12       THAT'S PRETTY MUCH THE GIST OF THAT.  BUT THAT'S WHAT CAME

01:21PM 13    UP WITH HER.

01:21PM 14        MR. SCHENK:  YOUR HONOR, THE GOVERNMENT WOULD OPPOSE

01:21PM 15    EXCUSING 79 FOR HARDSHIP.  I BELIEVE DAVITA IS A VERY LARGE

01:21PM 16    EMPLOYER.  THERE ARE OTHER INDIVIDUALS, OTHER SOCIAL WORKERS

01:21PM 17    AVAILABLE.  I APPRECIATE THAT.

01:21PM 18       THE PROCESS OF COVERING DOWN OR COVERING OVER WOULD BE

01:21PM 19    BURDENSOME, BUT I DID NOT GET THE IMPRESSION FROM HER

01:21PM 20    STATEMENTS THAT THERE WAS AN INABILITY TO COVER.

01:21PM 21       THERE WERE CHALLENGES, AND JURY SERVICE PRESENT CHALLENGES

01:21PM 22    FOR ALL OF THE JURORS THAT WE ASK TO SIT, ESPECIALLY IN A TRIAL

01:21PM 23    OF THIS LENGTH.

01:21PM 24       BUT I DON'T KNOW THAT WHAT WE HEARD FROM HER REGARDING THE

01:21PM 25    IMPACT WAS SUFFICIENT TO RISE TO A HARDSHIP THE GOVERNMENT

```
01:21PM    1    WOULD SUPPORT IN THIS CASE.
01:21PM    2              THE COURT:  SHE WAS -- SHE TOLD US ABOUT THE IMPACT.
01:21PM    3       IT SEEMED, IN MY VIEW, THAT SHE HAD GREAT CONCERN FOR THE
01:22PM    4    IMPACT, OF COURSE WITH HER PATIENTS, BUT ALSO ON HER COLLEAGUES
01:22PM    5    THAT WOULD BE ABSORBING HER CASELOAD OR SOMEHOW SPLITTING UP
01:22PM    6    HER CASELOAD.
01:22PM    7       INTERESTING, SHE DID NOT TELL US THAT SHE WAS CONCERNED
01:22PM    8    WITH A FINANCIAL ISSUE THAT WE FREQUENTLY SEE, AND THAT WASN'T
01:22PM    9    COVERED.  THAT WASN'T RAISED BY HER THAT SHE WAS CONCERNED
01:22PM   10    THAT SHE MIGHT NOT BE PAID OR IT WOULD CAUSE A HARDSHIP TO HER
01:22PM   11    FAMILY INCOME AT ALL.
01:22PM   12       SHE DID TALK ABOUT THE CONCERN OF WORK ON HER COLLEAGUES,
01:22PM   13    AND I THINK THAT SPEAKS HIGHLY OF HER.  SHE'S PROBABLY JUST A
01:22PM   14    WONDERFUL COWORKER TO BE WITH, AND COMMITTED TO HER PATIENTS,
01:22PM   15    BUT I DON'T SEE ENOUGH TO EXCUSE HER FOR HARDSHIP BASED ON THE
01:22PM   16    RECORD.
01:22PM   17       SO I'M NOT GOING TO STRIKE HER FOR HARDSHIP.
01:22PM   18              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.
01:22PM   19       MOVING ON TO JUROR 101.
01:22PM   20       JUROR 101 IS THE WOMAN WHO SAID SHE OWNED FIVE
01:23PM   21    RESTAURANTS.  SHE SAID HER HUSBAND MANAGED ONE OF THE
01:23PM   22    RESTAURANTS I BELIEVE.
01:23PM   23              THE COURT:  WAS ONE OF THEM IN SEATTLE ALSO, I
01:23PM   24    THINK?
01:23PM   25              MR. COOPERSMITH:  WE HAVE A LOT OF GREAT VIETNAMESE
```

01:23PM 1       RESTAURANTS IN SEATTLE.  I'M NOT SURE HERS IS ONE OF THEM.

01:23PM 2              SO SHE SAID SHE OWNED THESE RESTAURANTS AND SHE SAID SHE

01:23PM 3       HAD TO GO TO THE MARKET EVERY DAY.

01:23PM 4              AND SHE ALSO HAD SOME FAMILY RESPONSIBILITY.  SHE HAD

01:23PM 5       THREE CHILDREN WHO WERE YOUNG, AGES 4, 9, AND 11.

01:23PM 6              AND THEN SHE -- IT WAS EITHER HERE OR HER HUSBAND WHO

01:23PM 7       COULD DO THE DROPOFF AND THE PICKUP OF THE CHILDREN, BUT THOSE

01:23PM 8       ARE OTHER PEOPLE, BUT THEN SHE ALSO HAD TO MANAGE THE

01:23PM 9       RESTAURANTS.

01:23PM 10             AND I'LL ALSO NOTE, YOUR HONOR, THAT ON HER QUESTIONNAIRE,

01:23PM 11      SHE INDICATED A PROBLEM WITH UNDERSTANDING ENGLISH.

01:23PM 12             SO THAT'S, IN A NUTSHELL, THE HARDSHIP WITH HER.

01:23PM 13                  MR. SCHENK:  YOUR HONOR, THE GOVERNMENT OPPOSES

01:23PM 14      EXCUSING 101 FOR HARDSHIP.

01:24PM 15             FIRST, THE HOW OLD QUESTION, SHE SAID ACTUALLY, "THE KIDS

01:24PM 16      ARE OKAY, WE HAVE HELP."  I BELIEVE THEY HIRE SOMEONE.

01:24PM 17             HER QUESTIONNAIRE I WOULD SAY DOES NOT SUPPORT DIFFICULTY

01:24PM 18      UNDERSTANDING ENGLISH.  SHE ANSWERS THE QUESTIONS.  SHE WRITES

01:24PM 19      ADDITIONAL RESPONSES IN ENGLISH TO QUESTIONS THAT CALL FOR

01:24PM 20      ADDITIONAL INFORMATION.

01:24PM 21             SO THAT LEAVES US WITH THE QUESTION OF COVERAGE FOR

01:24PM 22      RESTAURANTS.  SHE SAID THAT WHAT SHE -- SHE OWNS THEM.  THERE

01:24PM 23      ARE OBVIOUSLY EMPLOYEES THAT WORK AT THEM, AND THEN THE

01:24PM 24      PARTICULAR ISSUE WAS GOING TO THE MARKET EVERY DAY TO SUPPLY

01:24PM 25      THE RESTAURANT, AND SHE SAID THAT SHE HAS OTHER PEOPLE WHO CAN

01:24PM 1      HELP HER WITH THAT.

01:24PM 2           WHAT HER CONCERN WAS, I CAN RELY ON THESE OTHER PEOPLE FOR

01:24PM 3      A FEW WEEKS, BUT WILL I BE ABLE TO RELY ON OTHERS BEYOND THOSE

01:24PM 4      INITIAL WEEKS?

01:24PM 5           AND I DON'T -- I GUESS MY BELIEF IS THAT THE RECORD DOES

01:24PM 6      NOT ACTUALLY SUPPORT SOME STATEMENT THAT THERE REALLY IS A

01:25PM 7      HARDSHIP, THE HARDSHIP WILL CRYSTALLIZE AT THIS POINT BECAUSE

01:25PM 8      OF THIS REASON.

01:25PM 9           I THINK WHAT THE EVIDENCE OR THE RECORD BEFORE US SHOWS IS

01:25PM 10     THAT SHE HAS HELP IN BOTH PLACES THAT SHE ARTICULATED HARDSHIP.

01:25PM 11     SHE HAS OTHERS WHO HELP CARE FOR THE KIDS, AND SHE HAS OTHERS

01:25PM 12     WHO HELP TAKE CARE OF THE RESTAURANT.

01:25PM 13          AND AS A RESULT I DON'T THINK SHE QUALIFIES FOR A

01:25PM 14     HARDSHIP.

01:25PM 15               THE COURT:  THANK YOU.

01:25PM 16          I THINK SHE TOLD US SHE HAS ONE EMPLOYEE THAT SHE HELD IN

01:25PM 17     HIGH REGARD.  I THINK, WASN'T THAT HER HUSBAND?

01:25PM 18          (LAUGHTER.)

01:25PM 19               MR. COOPERSMITH:  THAT'S TRUE, YOUR HONOR.

01:25PM 20               THE COURT:  AND THAT SEEMED TO SUGGEST -- AND LET ME

01:25PM 21     SAY, HER PRESENCE WAS KNOWN TO THE COURT.  LET ME SAY THAT.  I

01:25PM 22     DON'T THINK SHE WAS SHY ABOUT ANSWERING QUESTIONS AND I DON'T

01:25PM 23     THINK SHE HAD DIFFICULTY ANSWERING YOUR QUESTIONS.

01:25PM 24          MY SENSE IS THAT SHE PROBABLY HAS BEEN RUNNING HER

01:25PM 25     BUSINESS FOR 13 YEARS SHE TELLS US, AND SHE SAYS IT'S AN

01:25PM   1    ONGOING CONCERN.  SHE KNOWS HOW TO DO THAT.

01:26PM   2        MY SENSE IS THAT HER BUSINESS MANAGEMENT SKILLS, SHE'S

01:26PM   3    PROBABLY A LITTLE HUMBLE ABOUT THOSE.

01:26PM   4        SO I'M GOING TO DENY TO FIND A HARDSHIP FOR HER.  I THINK

01:26PM   5    SHE CAN ENGAGE REPLACEMENTS TO MANAGE THE DIFFICULTIES THAT SHE

01:26PM   6    EXPRESSED.

01:26PM   7             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:26PM   8        ONE OTHER ISSUE I WANTED TO RAISE WITH THE COURT IS NOT ON

01:26PM   9    THE LIST THAT WE PASSED UP, BUT WE WERE JUST REMEMBERING DURING

01:26PM   10   THE BREAK, IS THAT THERE WAS ONE JUROR, WHO WAS NUMBER 119, AND

01:26PM   11   THE ONLY THING I WANTED TO RAISE TO THE COURT WAS THAT SHE SAID

01:26PM   12   THAT SHE HAD EMAILED, I BELIEVE SHE SAID, HER DOCTOR, BECAUSE

01:26PM   13   THIS WAS THE WOMAN WHO SAID SHE WOULD BE 31 WEEKS PREGNANT SHE

01:26PM   14   PREDICTED AT THE END OF THE TRIAL.

01:26PM   15            THE COURT:  RIGHT.

01:26PM   16            MR. COOPERSMITH:  AND SHE SAID SHE EMAILED HER

01:26PM   17   DOCTOR AND HAD NOT HEARD BACK YET.

01:27PM   18            THE COURT:  RIGHT.

01:27PM   19            MR. COOPERSMITH:  AND I WONDERED IF WE SHOULD FOLLOW

01:27PM   20   UP TO SEE.

01:27PM   21        BECAUSE THE ISSUE WAS SHE WAS ASKING THE DOCTOR IF SOMEHOW

01:27PM   22   STRESS WITH THE TRIAL WOULD IMPACT HER, BUT WE DON'T KNOW THE

01:27PM   23   ANSWER TO THAT.  BUT SHE WAS EMAILING THE DOCTOR, AND WE JUST

01:27PM   24   DON'T KNOW.

01:27PM   25            THE COURT:  MR. SCHENK.

01:27PM 1          MR. SCHENK:  I CERTAINLY DON'T -- I'M NOT AWARE OF

01:27PM 2     WHAT WOULD CHANGE THE RECORD ON THE HARDSHIP SINCE WHEN WE LAST

01:27PM 3     DISCUSSED THIS.

01:27PM 4        SHE'S PART OF THE VENIRE UNTIL WE RECEIVE ADDITIONAL

01:27PM 5     INFORMATION THAT WOULD LEAD US TO REEVALUATE THAT SITUATION.

01:27PM 6          THE COURT:  SHE INDICATED IN HER QUESTIONNAIRE AND

01:27PM 7     TO US THAT SHE WAS SOMEWHAT CONCERNED, AND I THINK HER

01:27PM 8     STATEMENT WAS I JUST WANT TO LET YOU GUYS KNOW, I THINK IS WHAT

01:27PM 9     SHE SAID.

01:27PM 10       AND I ASKED ABOUT DOCTORS, AND SHE SAID, WELL, I'VE

01:27PM 11    EMAILED HER, AND I HAVEN'T HEARD BACK.

01:27PM 12       I DON'T KNOW IF -- MADAM CLERK, HAVE WE RECEIVED ANY

01:28PM 13    INDICATION FROM JUROR 119 VIA EMAIL OR PHONE MESSAGE?

01:28PM 14         THE CLERK:  NO, NONE WHATSOEVER.

01:28PM 15         THE COURT:  I'M LED TO THINK THAT IF SHE HAD HEARD

01:28PM 16    FROM HER DOCTOR WITH SOME ADVICE THAT SHE NOT DO THIS, SHE

01:28PM 17    SEEMED LIKE A RESPONSIBLE PERSON, SHE WOULD HAVE NOTIFIED THE

01:28PM 18    COURT, PERHAPS, OR MAYBE SHE'LL WAIT UNTIL SHE'S SUMMONED AND

01:28PM 19    THEN NOTIFY, AND THAT CREATES ANOTHER ISSUE, I SUPPOSE.

01:28PM 20         MR. COOPERSMITH:  RIGHT.

01:28PM 21         THE COURT:  BUT MY INTENT -- LET ME SAY THIS:  I'M

01:28PM 22    NOT GOING TO, I'M NOT GOING TO EXCUSE HER NOW.

01:28PM 23       WHAT I'D LIKE TO DO IS -- I DON'T THINK THE RECORD IS

01:28PM 24    SUFFICIENT TO CAUSE ME TO DO THAT.

01:28PM 25         ANYTHING ELSE, OTHER STRIKES OR ANYTHING ELSE YOU WOULD

613

01:28PM 1    LIKE TO RAISE ABOUT OUR PANEL?

01:28PM 2              MR. COOPERSMITH:  YES, YOUR HONOR.

01:28PM 3         THERE'S ONE MORE HARDSHIP RELATED ISSUE TO THE COURT, AND

01:28PM 4    THEN THERE'S ONE ADDITIONAL CAUSE ISSUE.  SO IF I COULD ADDRESS

01:28PM 5    THOSE IN TURN?

01:28PM 6              THE COURT:  SURE.

01:29PM 7              MR. COOPERSMITH:  FIRST, THIS JUROR IS NUMBER 142

01:29PM 8    THAT I'M TALKING ABOUT RIGHT NOW.

01:29PM 9         NUMBER 142, I DON'T RECALL THAT THERE WAS ANY DIALOGUE

01:29PM 10   WITH HER, SO WE REALLY DON'T HAVE A LOT OF INFORMATION, AND

01:29PM 11   THAT HAPPENS, YOU KNOW, OBVIOUSLY SOMETIMES.

01:29PM 12        BUT I WENT BACK OVER THE BREAK AND I LOOKED AND I SAW THAT

01:29PM 13   IN THE QUESTIONNAIRE SHE DID RAISE THAT SHE HAD TROUBLE

01:29PM 14   UNDERSTANDING THE QUESTIONNAIRE.  I THINK THAT'S QUESTION 70

01:29PM 15   AND 65.

01:29PM 16        AND THEN SHE -- YOU KNOW, SHE WAS RAISING THE ISSUE.  IN

01:29PM 17   FACT, I THINK SHE MAYBE EVEN ASKED FOR A HARDSHIP EXCUSAL BASED

01:29PM 18   ON THE ENGLISH LANGUAGE DIFFICULTY.

01:29PM 19        SO THAT'S SOMETHING ELSE I NOTICED, AND I WANTED TO RAISE

01:29PM 20   THAT FOR THE COURT'S ATTENTION AS WELL.

01:29PM 21              THE COURT:  I NOTICED THAT SOME OF THE QUESTIONS ARE

01:29PM 22   BLANK, I THINK, IN THE QUESTIONNAIRE.

01:29PM 23              MR. COOPERSMITH:  YES, YOUR HONOR.

01:29PM 24              THE COURT:  I DON'T HAVE IT IN FRONT OF ME NOW.  I

01:29PM 25   HAVE MY NOTES.

01:29PM  1        BUT I THINK THERE ARE SOME PAGES THAT WERE BLANK, BUT SHE

01:30PM  2   WASN'T -- THERE WERE NO QUESTIONS POSED TO HER, WERE THERE, BY

01:30PM  3   COUNSEL OR THE COURT?

01:30PM  4            MR. COOPERSMITH:  NO, YOUR HONOR, NOT THAT I CAN

01:30PM  5   RECALL.

01:30PM  6            THE COURT:  THAT MEANS THAT SHE DIDN'T RAISE HER

01:30PM  7   HAND WHEN I EXPRESSED AN INVITATION TO.

01:30PM  8            MR. SCHENK:  YOUR HONOR, I'M SCROLLING THROUGH 142'S

01:30PM  9   QUESTIONNAIRE NOW, AND AT LEAST IN MY REVIEW THERE'S SOME

01:30PM  10  QUESTIONS THAT ARE LEFT BLANK, BUT I DON'T NOTICE ANY WHOLE

01:30PM  11  PAGES WHERE SHE FAILS TO MAKE ANY MARKINGS.

01:30PM  12       SHE CHECKS DIFFERENT ANSWERS, SOMETIMES NO TO QUESTIONS.

01:30PM  13  I BELIEVE THERE WERE INSTANCES WHERE SHE WROTE NOT LENGTHY,

01:30PM  14  BUT, FOR INSTANCE, SHE -- TO THE QUESTION ABOUT HOBBIES, SHE

01:30PM  15  HAND WROTE IN TWO DIFFERENT HOBBIES TO THAT QUESTION TO

01:30PM  16  OCCUPATION OR JOBS.

01:30PM  17       SHE WROTE IN ANSWERS TO THOSE QUESTIONS.

01:30PM  18       SHE DOES TELL US THAT HER EDUCATIONAL BACKGROUND WAS IN A

01:31PM  19  DIFFERENT COUNTRY.  SHE WRITES THE NAME OF THE COUNTRY IN THAT

01:31PM  20  QUESTION.

01:31PM  21       AND I AGREE, I DON'T HAVE ANY NOTES FROM 142 IN COURT.

01:31PM  22       SO I THINK THAT THE RECORD AT THIS POINT IS INSUFFICIENT

01:31PM  23  TO EXCUSE FOR LANGUAGE.

01:31PM  24            THE COURT:  OKAY.  THANK YOU.

01:31PM  25       I'M NOT GOING TO EXCUSE HER.  WE JUST DON'T HAVE A FULSOME

01:31PM 1    RECORD ON HER, AND IT'S REGRETTABLE THAT NONE OF US ASKED HER

01:31PM 2    QUESTIONS ABOUT THIS, SO --

01:31PM 3              MR. COOPERSMITH:  RIGHT.

01:31PM 4              THE COURT:  AND YOUR NEXT WAS?

01:31PM 5              MR. COOPERSMITH:  YES, YOUR HONOR.

01:31PM 6         NUMBER 52, THIS WAS A JUROR WHO WAS VERY CANDID AND

01:31PM 7    PERHAPS BRAVE AND DIDN'T MIND DISCUSSING PRIOR CONVICTIONS IN

01:31PM 8    OPEN PUBLIC, OPEN RECORD.

01:31PM 9         HE SAID THAT, IN THE TRANSCRIPT, THAT HE HAD BEEN ON THE

01:31PM 10   DEFENDANT'S SIDE OF THE LAW, SO HE SAID HE GUESSED HIS OPINION

01:31PM 11   OF BEING A DEFENDANT IS GENERALLY IF YOU'RE ACCUSED OR BEING

01:32PM 12   ACCUSED OR INDICTED FOR SOMETHING, IT'S GENERALLY YOU'RE GUILTY

01:32PM 13   OF IT.  WHETHER OR NOT IT CAN BE PROVEN IS A DIFFERENT STORY.

01:32PM 14        AND THEN HE WENT ON TO SAY, SO GENERALLY IF YOU'RE ACCUSED

01:32PM 15   OF SOMETHING, IT'S GENERALLY BECAUSE YOU, YOU DID SOMETHING

01:32PM 16   WRONG, AGAIN, WHETHER YOU CAN PROVE IT OR NOT.

01:32PM 17        HE THINKS THAT IF SOMEONE HAS BEEN ARRESTED, ACCUSED,

01:32PM 18   INDICTED, THERE'S SOME GUILT IN THAT.

01:32PM 19        HE SAID THAT -- THE QUESTION TO HIM WAS, AND DO YOU THINK

01:32PM 20   IT WOULD BE DEFENSE'S OBLIGATION TO TRY TO PROVE THE INNOCENCE

01:32PM 21   OF IN THIS CASE MR. BALWANI?

01:32PM 22        AND HIS ANSWER WAS:  I THINK SO.

01:32PM 23        AND THEN HE SAID:  I DON'T THINK I'M ASKING HIM TO PROVE

01:32PM 24   INNOCENCE.  IT'S MORE IN MY VIEW THINKING THAT THERE IS SOME

01:32PM 25   TRUTH IN ALLEGATIONS AND INDICTMENTS.

01:32PM   1          AND I THINK WE ASKED A LOT OF QUESTIONS OF HIM TO TRY TO

01:32PM   2    SHAKE HIM OFF OF IT, FOR LACK OF A BETTER WORD, TO UNDERSTAND

01:32PM   3    THE PROCESS.  HE OBVIOUSLY HAD EXPERIENCE SOME TIME AGO WITH

01:32PM   4    THE CRIMINAL JUSTICE SYSTEM.

01:32PM   5          I THINK GIVEN THOSE ANSWERS, WE THINK THIS WOULD BE A

01:32PM   6    REASON TO STRIKE HIM FOR CAUSE.

01:32PM   7               MR. SCHENK:  YOUR HONOR, THE GOVERNMENT OPPOSES

01:33PM   8    STRIKING 52 FOR CAUSE.

01:33PM   9          LET ME START WITH HIS QUESTIONNAIRE.  ON QUESTIONS 39 AND

01:33PM  10    46, QUESTIONS THAT ASK ABOUT ABILITY TO BE FAIR AND IMPARTIAL,

01:33PM  11    HE ANSWERS NO.

01:33PM  12          FORGIVE ME.  LET ME REPHRASE THAT.  IS THERE ANYTHING THAT

01:33PM  13    WOULD INFLUENCE OR AFFECT YOUR ABILITY TO BE FAIR?

01:33PM  14          TO EACH ONE HE ANSWERS NO.

01:33PM  15          QUESTIONS ABOUT WHETHER, BECAUSE SOMEONE HAS BEEN CHARGED,

01:33PM  16    DOES THAT MEAN THAT THEY'RE MORE LIKELY TO BE GUILTY CAN BE

01:33PM  17    ANSWERED TWO DIFFERENT WAYS.

01:33PM  18          ONE WAY IS, DOES THE FACT OF THE CHARGE MAKE THEM GUILTY?

01:33PM  19    AND OBVIOUSLY THE ANSWER TO THAT IS NO BASED ON THE PRESUMPTION

01:33PM  20    OF INNOCENCE.

01:33PM  21          BUT THE OTHER WAY THAT QUESTION CAN BE ANSWERED IS, IN

01:33PM  22    YOUR EXPERIENCE, IS IT MORE LIKELY THAN NOT THAT THE PERSON WHO

01:33PM  23    HAS BEEN CHARGED IS ACTUALLY GUILTY?

01:33PM  24          WHICH BEGS THINGS LIKE CONVICTION RATES OR GUILTY PLEA

01:33PM  25    RATES.

01:33PM   1        AND IT'S CERTAINLY POSSIBLE THAT HIS EXPERIENCES, HIS LIFE

01:34PM   2    EXPERIENCES SUGGEST, AND HE WAS ANSWERING IT IN THE LATTER, NOT

01:34PM   3    THE FORMER.  WHEN WE FOLLOWED UP WITH HIM -- AND BY "WE" I MEAN

01:34PM   4    THE COURT AND MR. COOPERSMITH -- HE SAID THAT HE CAN HOLD THE

01:34PM   5    GOVERNMENT TO ITS BURDEN.  HE WOULD NOT REQUIRE THE DEFENDANT

01:34PM   6    TO PROVE INNOCENCE.

01:34PM   7        I'M NOT ASKING MR. BALWANI TO PROVE INNOCENCE.  I CAN PUT

01:34PM   8    MY VIEWS IN A CLOSET.  IT WOULD NOT BE DIFFICULT.

01:34PM   9        ANY DOUBT ABOUT THAT?

01:34PM  10        NO.

01:34PM  11        SO I THINK THE RECORD SUGGESTS THAT WHEN HE MAKES

01:34PM  12    STATEMENTS ABOUT THE FACT OF CHARGES, SPEAKING ABOUT THE

01:34PM  13    LIKELIHOOD OF GUILT, HE WAS SPEAKING ABOUT, DID THE PERSON

01:34PM  14    COMMIT THE CRIME IN THE WORLD?  DID IT OCCUR?

01:34PM  15        AND NOT, IS HE GOING TO HOLD MR. BALWANI TO A BURDEN, TO

01:34PM  16    ANY BURDEN AT ALL IN THE TRIAL?

01:34PM  17        I THINK HIS ANSWERS ON THAT ARE CLEAR AND THERE'S NOT A

01:34PM  18    BASIS TO EXCUSE HIM FOR CAUSE.

01:34PM  19            THE COURT:  THANK YOU.  HE WAS -- AND THIS HAPPENED

01:35PM  20    WITH A COUPLE OF PROSPECTIVE JURORS ABOUT, WELL, THEY'RE HERE,

01:35PM  21    THIS MUST MEAN SOMETHING.

01:35PM  22        AND OF COURSE WE ALL THINK, WELL, OF COURSE, THERE'S

01:35PM  23    PROBABLE CAUSE, AND THAT'S WHAT GETS AN INDICTMENT, PERHAPS,

01:35PM  24    THAT'S WHERE IT GOES, THAT'S PART OF THE PATH, BUT THAT DOES

01:35PM  25    NOT MEAN THE SAME THING AS A CONVICTION BEYOND A REASONABLE

01:35PM 1      DOUBT.

01:35PM 2           WE DON'T GET INTO CRIMINAL LAW LECTURES WITH JURORS ABOUT

01:35PM 3      THOSE THINGS.

01:35PM 4           BUT WE CERTAINLY UNDERSTAND THE LAYPERSON'S OBSERVATION I

01:35PM 5      THINK OF THE JUSTICE SYSTEM AND HOW THOSE THINGS MIGHT CONFLATE

01:35PM 6      INTO ONE AS OPPOSED TO PARSED OUT.

01:35PM 7           HE HAS, AS WE KNOW FROM HIS CANDOR, EXPERIENCE IN THE

01:35PM 8      JUSTICE SYSTEM IN HIS YOUTH, AND HE TOLD US ABOUT THAT.

01:35PM 9           I HAD SOME CONCERNS ABOUT HIS COMMENTS AND HIS STATEMENTS

01:35PM 10     BOTH IN HIS QUESTIONNAIRE AND THEN SOME FOLLOWUP.

01:35PM 11          BUT AT THE END, I DO THINK AND I REMEMBER THE ANSWERS TO

01:36PM 12     THE QUESTIONS, AND I REMEMBER ASKING HIM, DO YOU HAVE ANY DOUBT

01:36PM 13     ABOUT THIS?

01:36PM 14          AND I ASKED THAT INTENTIONALLY BECAUSE IT WAS -- CANDIDLY,

01:36PM 15     THERE WAS A -- I'LL CALL IT A REHABILITATION OF HIS ANSWERS TO

01:36PM 16     TRY TO ASK HIM -- OR CLARIFICATION OF HIS ANSWERS TO WHAT THE

01:36PM 17     TRIAL WOULD BE ABOUT AND THE STANDARDS AND BURDEN OF PROOF, AND

01:36PM 18     THAT WAS HIS ANSWER, NO.  OKAY.

01:36PM 19          I HAD MY FEELINGS, I CAN BE FAIR, I WILL BE FAIR, NO DOUBT

01:36PM 20     ABOUT THAT.

01:36PM 21          SO I'M NOT GOING TO STRIKE HIM FOR CAUSE.  I CERTAINLY

01:36PM 22     UNDERSTAND THE CONCERNS THAT COLLOQUY WOULD BRING.

01:36PM 23               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:36PM 24          THE ONLY OTHER THING I WILL MENTION QUICKLY WITH HIM IS HE

01:36PM 25     DID SAY HE WATCHED PART, NOT THE ENTIRETY, BUT HE WALKED PART

01:36PM  1   OF THE ERIKA CHEUNG "TED TALK," WHICH WAS OF CONCERN TO US.

01:36PM  2        BUT THE OTHER THING I JUST WONDERED IS WITH THE PAST, IT

01:36PM  3   SOUNDED LIKE FELONY CONVICTIONS, HE MAY WELL HAVE HAD HIS CIVIL

01:36PM  4   RIGHTS RESTORED.  NOBODY ASKED HIM THAT QUESTION, SO WE DON'T

01:37PM  5   KNOW THE ANSWER TO THAT.

01:37PM  6             THE COURT:  OH.

01:37PM  7             MR. COOPERSMITH:  HOW DOES THE COURT --

01:37PM  8             THE COURT:  YOU CAN DO A RECORD CHECK OR SOMETHING.

01:37PM  9        I WAS -- HE SAID IN HIS YOUTH, AND I WAS CONCERNED, ARE

01:37PM 10   THESE JUVENILE CONVICTIONS THAT OTHERWISE WOULD NOT BE

01:37PM 11   ADMISSIBLE?

01:37PM 12        BUT WE DIDN'T ASK HIM THAT, AND I DIDN'T ASK HIM THAT.

01:37PM 13        HE SAID IN HIS YOUTH.  I THINK HE TOLD US HIS AGE IN THE

01:37PM 14   QUESTIONNAIRE.

01:37PM 15        BUT THAT WAS MY THOUGHT.  MAYBE I DID ASK HIM THAT

01:37PM 16   ACTUALLY.  WELL, THIS WAS WHEN YOU WERE YOUNG?

01:37PM 17             MR. COOPERSMITH:  DEFINITELY, YOUR HONOR, HE DID SAY

01:37PM 18   THAT.  I JUST DON'T KNOW HOW YOUNG.

01:37PM 19             THE COURT:  RIGHT.  RIGHT.

01:37PM 20             MR. COOPERSMITH:  BECAUSE OBVIOUSLY WHAT WE WOULDN'T

01:37PM 21   WANT IS FOR A JUROR TO BE SEATED AND THEN IT LATER TURNS OUT

01:37PM 22   THAT THE JUROR WAS INELIGIBLE.

01:37PM 23             THE COURT:  RIGHT.

01:37PM 24             MR. COOPERSMITH:  I DON'T KNOW ONE WAY OR THE OTHER

01:37PM 25   WHETHER HE IS OR ISN'T, BUT --

01:37PM 1              THE COURT:  AND THE QUESTIONNAIRE DIDN'T ASK, HAVE

01:37PM 2     YOU BEEN CONVICTED OF A FELONY, DOES IT?  WE DIDN'T ASK THAT.

01:37PM 3              MR. COOPERSMITH:  IT DID NOT AS FAR AS I CAN

01:38PM 4     REMEMBER.

01:38PM 5              THE COURT:  I'M TRYING TO RECALL.  I DON'T HAVE THE

01:38PM 6     TRANSCRIPT IN FRONT OF ME, BUT I THINK HE TOLD US, DID HE,

01:38PM 7     THERE WERE THEFT OFFENSES, FRAUD OFFENSES, SOMETHING LIKE THAT?

01:38PM 8              MR. SCHENK:  AN EMBEZZLEMENT.

01:38PM 9              MR. COOPERSMITH:  THAT'S CORRECT.

01:38PM 10             THE COURT:  RIGHT.  RIGHT, QUERY WHETHER THAT WAS A

01:38PM 11    FELONY OR A MISDEMEANOR OR IT WAS, YOU KNOW, A WOBBLER THAT WAS

01:38PM 12    REDUCED TO A MISDEMEANOR AND THEN HE HAD HIS RECORD CLEARED

01:38PM 13    UNDER 1203.4 OF THE PENAL CODE I THINK IT IS.

01:38PM 14             MR. SCHENK:  HE TOLD US THAT HIS AGE IS 48, AND THAT

01:38PM 15    HIS PRIORS WERE ABOUT 30 YEARS AGO.

01:38PM 16             THE COURT:  WELL, THAT'S CUTTING IT CLOSE, ISN'T IT?

01:39PM 17        YOU KNOW, I THINK, LET ME JUST SAY THIS, OUT OF AN

01:39PM 18    ABUNDANCE OF CAUTION, I WOULD HATE TO SEE A JUROR SIT AND

01:39PM 19    DISCOVER THAT HE OR SHE WAS NOT QUALIFIED BECAUSE OF SOME OTHER

01:39PM 20    REASON.

01:39PM 21        SO LET ME STRIKE HIM OUT OF AN ABUNDANCE OF CAUTION.

01:39PM 22             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:39PM 23        THOSE ARE ALL OF THE --

01:39PM 24             MR. SCHENK:  I'M SORRY, THE BASIS IS CAUSE?

01:39PM 25             THE COURT:  CAUSE, I'M SORRY.

621

01:39PM   1          NOT OUT OF AN ABUNDANCE OF CAUTION.

01:39PM   2              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:39PM   3          THOSE WERE ALL OF THE ADDITIONAL CAUSE AND HARDSHIP ISSUES

01:39PM   4      I WANTED TO RAISE.

01:39PM   5          I THINK IT MIGHT BE WISE FOR US ALL TO MAKE SURE WE ARE ON

01:39PM   6      THE SAME PAGE IN TERMS OF THE COUNT AT THIS POINT.

01:39PM   7              THE COURT:  RIGHT.

01:39PM   8              MR. COOPERSMITH:  I BELIEVE WE MIGHT BE RIGHT AT 40.

01:39PM   9              MR. SCHENK:  I THINK 41, AND I CAN READ THE NUMBERS

01:39PM  10      IF THAT WOULD BE HELPFUL.

01:39PM  11              THE COURT:  WELL, WHY DON'T -- THAT WOULD BE

01:40PM  12      HELPFUL, BUT LET'S TAKE A BREAK.  LET'S TAKE ABOUT TEN MINUTES

01:40PM  13      AND LET YOU LOOK AT YOUR CALCULATIONS AND SEE WHERE YOU ARE,

01:40PM  14      AND THEN WE'LL COUNT UP AND SEE WHAT THAT IS.

01:40PM  15          WOULD THAT BE ALL RIGHT?

01:40PM  16              MR. COOPERSMITH:  YES, YOUR HONOR.

01:40PM  17              MR. SCHENK:  YES.

01:40PM  18              THE COURT:  AND THEN MAYBE WE CAN GO FORWARD IF WE

01:40PM  19      HAVE SUFFICIENT NUMBERS.

01:40PM  20              MR. COOPERSMITH:  YEAH, AND I MAY HAVE SOME

01:40PM  21      ADDITIONAL THOUGHTS TO OFFER BEFORE THAT.  BUT, YES, YOUR

01:40PM  22      HONOR, OF COURSE.

01:40PM  23              THE COURT:  OKAY.  LET'S TAKE ABOUT TEN MINUTES.

01:40PM  24          (RECESS FROM 1:40 P.M. UNTIL 1:56 P.M.)

01:56PM  25              THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

622

01:56PM  1    PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

01:56PM  2         COUNSEL, WHAT IS THE STATUS OF THINGS?

01:56PM  3              MR. SCHENK:  YOUR HONOR, WE'VE MET AND CONFERRED,

01:56PM  4    AND WE HAVE A LIST OF REMAINING JURORS THAT WE AGREE UPON.

01:56PM  5    THERE ARE 40 REMAINING JURORS.

01:56PM  6              THE COURT:  OKAY.  IF ONE OF YOU WOULD INDICATE THE

01:57PM  7    NUMBER OF JURORS, PROSPECTIVE JURORS THAT REMAIN.

01:57PM  8              MR. SCHENK:  YOUR HONOR, THE REMAIN JURORS ARE:  14,

01:57PM  9    18, 26, 36, 44, 45, 48, 67, 79, 80, 82, 101, 102, 103, 108,

01:57PM  10   109, 113, 114, 115, 116, 117, 119, 125, 129, 131, 133, 134,

01:58PM  11   142, 143, 160, 161, 162, 163, 164, 165, 167, 169, 170, 179, AND

01:58PM  12   181.

01:58PM  13              THE COURT:  THANK YOU.

01:58PM  14         MR. COOPERSMITH, DO YOU AGREE WITH THAT?

01:58PM  15              MR. COOPERSMITH:  WE AGREE THAT THOSE ARE THE 40

01:58PM  16   JURORS THAT REMAIN AFTER ALL OF THE STRIKES, YOUR HONOR.

01:58PM  17              THE COURT:  OKAY.

01:58PM  18              MR. COOPERSMITH:  AND I DID WANT TO RAISE ONE THING

01:58PM  19   BEFORE WE START TO GO THROUGH THIS PROCESS.

01:58PM  20         SO AS YOUR HONOR REMEMBERS, ON WEDNESDAY I HAD MADE A

01:58PM  21   MOTION TO STRIKE THE FIRST PANEL BECAUSE I THOUGHT THEY WERE

01:58PM  22   TAINTED BASED ON COMMENTS MADE, AND I UNDERSTAND THE COURT

01:58PM  23   DENIED THAT MOTION.

01:58PM  24         AND, YOU KNOW, THIS WAS BECAUSE, YOU KNOW, JURORS HAD

01:58PM  25   BLURTED OUT THINGS LIKE THE TECHNOLOGY WAS IMPOSSIBLE TO DO ALL

623

01:59PM 1    TESTS WITH JUST ONE DROP, THAT IT'S A FRAUD, IT'S A FRAUDULENT

01:59PM 2    COMPANY, ONE JUROR SAID IT WAS A SENSE OF BETRAYAL WHEN THINGS

01:59PM 3    ARE MISUSED IN THE MEDICAL WORLD.

01:59PM 4         THESE WERE THE TYPES OF COMMENTS THAT WE WERE CONCERNED

01:59PM 5    ABOUT.  I KNOW THE COURT DENIED THE MOTION.

01:59PM 6         WHAT WE THINK MIGHT BE ANOTHER REMEDY, ALTHOUGH WE STILL

01:59PM 7    STAND BY THAT MOTION, DESPITE THE COURT DENYING IT, WE

01:59PM 8    RESPECTFULLY DISAGREE WITH IT, WE THINK ANOTHER REMEDY WHICH

01:59PM 9    MIGHT MAKE THINGS A LITTLE FAIRER, BECAUSE I THINK THE PROCESS

01:59PM 10   ON THURSDAY, YESTERDAY, WENT A LITTLE MORE SMOOTHLY, IS TO FILL

01:59PM 11   THE BOX WITH THESE 40 JURORS STARTING FROM THE SECOND PANEL

01:59PM 12   RATHER THAN THE FIRST PANEL; AND THERE'S NO -- OBVIOUSLY THE

01:59PM 13   JURORS WHO HAD LOWER NUMBERS WHO WERE IN THE FIRST PANEL, THAT

01:59PM 14   WAS RANDOMLY ASSIGNED BY THE CLERK.

01:59PM 15        I DO ACKNOWLEDGE THAT NOW THAT WE KNOW SOMETHING ABOUT AT

01:59PM 16   LEAST A LOT OF THESE JURORS, WE ARE, IF WE WENT THIS WAY, ARE

01:59PM 17   MAKING A DECISION THAT THAT WOULD BE -- YOU KNOW, MAYBE WE'RE

02:00PM 18   PUTTING A LITTLE MORE WEIGHT ON WHAT WE KNOW ABOUT THE SECOND

02:00PM 19   PANEL.

02:00PM 20        NOTWITHSTANDING THAT, THOUGH, I THINK IT WOULD BE ANOTHER

02:00PM 21   WAY TO GET THE PROCESS MOVING, TO PICK THE JURY, BUT AT LEAST

02:00PM 22   PROVIDE SOME REMEDY FOR WHAT WE AT LEAST SAW ON THE FIRST DAY

02:00PM 23   AND SOME PROBLEMS WITH TAINT OF THE PANEL.

02:00PM 24             THE COURT:  OKAY.

02:00PM 25        MR. SCHENK.

02:00PM 1          MR. SCHENK:  YOUR HONOR, THE GOVERNMENT OPPOSES

02:00PM 2     THAT.

02:00PM 3          THERE IS A RANDOMNESS, THE USE OF COMPUTERS TO SELECT THE

02:00PM 4     VENIRE, TO SEND OUT THE SUMMONS, TO INVITE JURORS IN, AND IT'S

02:00PM 5     THROUGH THAT PROCESS THAT NUMBERS ARE APPLIED TO EACH JUROR.

02:00PM 6          AND TO NOW SORT OF USE HUMAN INTERVENTION TO PUT A THUMB

02:00PM 7     ON THE SCALE AND REORDER THE PANELS AFFECTS THE RANDOMNESS THAT

02:00PM 8     IS IMPORTANT IN THE PROCESS OF SELECTING JURORS.  THE

02:00PM 9     RANDOMNESS AVOIDS BIAS OR OTHER THINGS FROM ENTERING INTO THE

02:00PM 10    ORDERING OF THE JURORS.

02:00PM 11         THE COURT GOT THE RULING CORRECT WHEN IT DENIED THE

02:01PM 12    DEFENSE'S MOTION TO STRIKE THE ENTIRE DAY ONE PANEL, AND

02:01PM 13    BECAUSE THE COURT GOT THAT RULING CORRECT, THERE IS NO NEED TO

02:01PM 14    MAKE ANY CHANGES OR INTERVENTIONS.

02:01PM 15         AND EVEN THE PROPOSAL BY THE DEFENSE BY PUTTING PANEL 2 IN

02:01PM 16    FRONT OF PANEL 1 STILL CREATES THE OPPORTUNITY THROUGH THE USE

02:01PM 17    OF STRIKES TO GO INTO PANEL NUMBER 1.

02:01PM 18         SO IF THERE IS SOME INFECTION THAT OCCURRED THROUGH THE

02:01PM 19    BLURTING OUT OF STATEMENTS, THIS DOESN'T SOLVE THAT.

02:01PM 20         SO IT'S AN INEFFECTIVE, INAPPROPRIATE SOLUTION TO A

02:01PM 21    NONEXISTENT PROBLEM, AND THAT'S WHY THE GOVERNMENT BELIEVES

02:01PM 22    THAT THE COURT SHOULD NOT REORDER THE PANELS.

02:01PM 23         MR. COOPERSMITH:  YOUR HONOR, I AGREE IT DOESN'T

02:01PM 24    SOLVE IT.  IT MITIGATES IT, AND THAT WAS THE REASON FOR THE

02:01PM 25    SUGGESTION.

625

| | | |
|---|---|---|
| 02:01PM | 1 | THE COURT:  SURE.  OKAY.  THANK YOU. |
| 02:01PM | 2 | WELL, ABSENT A STIPULATION FROM THE PARTIES TO DO THAT, |
| 02:01PM | 3 | I'M NOT GOING TO DO THAT, MR. COOPERSMITH.  I THINK THAT REALLY |
| 02:01PM | 4 | WOULD, IN ESSENCE, INTERJECT THE COURT INTO THE SELECTION |
| 02:02PM | 5 | PROCESS OF THE LAWYERS BY ASKING THE COURT TO MAKE A |
| 02:02PM | 6 | DETERMINATION OUTSIDE OF RANDOMNESS FOR WHATEVER REASON, |
| 02:02PM | 7 | PREFERENTIAL REASON, AND I JUST, I THINK THAT'S CONTRARY TO THE |
| 02:02PM | 8 | THEORY AND SPIRIT OF RANDOM SELECTION OF JURORS RESPECTING THE |
| 02:02PM | 9 | PEREMPTORY CHALLENGES. |
| 02:02PM | 10 | WE'VE HAD THE CAUSE PORTION, AND THE COURT HAS HEARD CAUSE |
| 02:02PM | 11 | AND HARDSHIP FROM BOTH SIDES AND HAS MADE ITS DECISION ON |
| 02:02PM | 12 | THOSE.  THAT'S PART OF THE PROCESS. |
| 02:02PM | 13 | I THINK TO CHANGE THAT NOW WOULD BE INAPPROPRIATE.  I DO |
| 02:02PM | 14 | BELIEVE IT WOULD BE INAPPROPRIATE TO ADJUST THAT ABSENT A |
| 02:02PM | 15 | STIPULATION OF THE PARTIES WITH ANYTHING MORE, AND I DON'T HEAR |
| 02:02PM | 16 | ONE.  SO I'M GOING TO DECLINE YOUR INVITATION TO DO THAT. |
| 02:03PM | 17 | WE'LL BEGIN THE SELECTION PROCESS.  YOU WILL HAVE THE FORM |
| 02:03PM | 18 | HANDED TO YOU BY OUR COURTROOM DEPUTY, AND THEN YOU CAN PASS |
| 02:03PM | 19 | THE SHEET BACK AND FORTH. |
| 02:03PM | 20 | ANY QUESTIONS ABOUT THAT PROCESS? |
| 02:03PM | 21 | MR. SCHENK:  YOUR HONOR, ONE CLARIFICATION. |
| 02:03PM | 22 | MY RECOLLECTION IS THAT THE COURT REQUIRES ALL STRIKES TO |
| 02:03PM | 23 | OCCUR WITHIN THE BOX, SO THAT THE FIRST 12 JURORS, YOU HAVE TO |
| 02:03PM | 24 | ESSENTIALLY DRAW AN IMAGINARY LINE IN YOUR MIND -- |
| 02:03PM | 25 | THE COURT:  THAT'S RIGHT. |

626

02:03PM  1              MR. SCHENK:  -- AND NOT STRIKE JUROR 15, FOR

02:03PM  2   INSTANCE, WITH YOUR VERY FIRST STRIKE.

02:03PM  3              THE COURT:  THAT'S RIGHT.  THE WAY IT WORKS IS THAT

02:03PM  4   THERE'S ALWAYS -- SO THIS FIRST -- WHAT YOU'RE DOING NOW IS

02:03PM  5   SELECTING THE 12 MEMBERS OF THE JURY WHO WILL HEAR THE CASE.

02:03PM  6        WE'LL THEN MOVE INTO ALTERNATES.  SO THERE'S ALWAYS A

02:03PM  7   BENCH, IF YOU WILL, OF 12, AND YOUR STRIKES MUST BE 1 THROUGH

02:03PM  8   12 INITIALLY.  YOU CAN'T SAY, I'LL STRIKE 15 INITIALLY.

02:04PM  9        IF THERE ARE STRIKES IN THAT 12, THEN 13 MOVES IN

02:04PM 10   VIRTUALLY, AND I'LL ASK YOU TO DO THAT IN A CENTIPEDE FASHION,

02:04PM 11   I'LL CALL IT THAT, TO VIRTUALLY MOVE IN THE NEXT PERSON TO FILL

02:04PM 12   THAT SPOT.

02:04PM 13        DOES THAT MAKE SENSE?

02:04PM 14              MR. COOPERSMITH:  YES, YOUR HONOR.

02:04PM 15        SO TO MAKE SURE I UNDERSTAND, ONCE A JUROR FILLS A SPOT IN

02:04PM 16   THE 12 IN THE VIRTUAL BOX, THAT JUROR IS ELIGIBLE TO BE STRUCK

02:04PM 17   WITH A PEREMPTORY?

02:04PM 18              THE COURT:  CORRECT.

02:04PM 19              MR. COOPERSMITH:  AND THEN THE SAME PROCESS I ASSUME

02:04PM 20   WOULD WORK WITH THE SIX ALTERNATES WHERE WE WOULD BASICALLY

02:04PM 21   VIRTUALLY HAVE A BOX OF SIX; IS THAT RIGHT.

02:04PM 22              THE COURT:  YES.  DOES THAT HELP YOU?

02:04PM 23              MR. SCHENK:  YES.

02:04PM 24              THE COURT:  ARE YOU READY TO BEGIN THAT PROCESS?

02:04PM 25              MR. SCHENK:  YES, YOUR HONOR.

02:04PM 1    MR. COOPERSMITH:  YES, YOUR HONOR.

02:04PM 2    THE COURT:  OKAY.  I'LL ASK OUR COURTROOM DEPUTY IN

02:04PM 3    JUST A MOMENT TO HAND YOU THE SHEET THAT WE HAVE PREPARED.

02:04PM 4    (DISCUSSION OFF THE RECORD.)

02:09PM 5    THE COURT:  COUNSEL, I ALSO WANT TO LET YOU KNOW

02:09PM 6    THAT ONCE WE SECURE THE JURY AND ALTERNATES TODAY, MY INTENT IS

02:09PM 7    TO HAVE THEM COME BACK AND WE'LL SEE IF WE CAN GET THEM HERE

02:09PM 8    MONDAY FOR SWEARING IN IF THAT'S POSSIBLE.

02:09PM 9    IF NOT, WE'LL DO THAT TUESDAY FIRST THING.

02:09PM 10   BUT IT'S MY INTENT NOT TO RELEASE OUR THIRD PANEL JUST OUT

02:09PM 11   OF AN ABUNDANCE OF CAUTION.  SO I'M NOT GOING TO RELEASE THE

02:09PM 12   THIRD PANEL UNTIL WE'VE SWORN IN OUR PANEL AND OUR ALTERNATES.

02:09PM 13   MR. COOPERSMITH:  YES, YOUR HONOR.

02:09PM 14   MR. SCHENK:  THANK YOU.

02:09PM 15   THE COURT:  AND THEN WE'LL SEE IF WE CAN BRING THEM

02:09PM 16   IN MONDAY DEPENDING ON THE TIMING.

02:09PM 17   MR. COOPERSMITH:  THANK YOU.

02:10PM 18   MR. SCHENK:  SWEARING IN WOULD BE THE ONLY THING ON

02:10PM 19   MONDAY?

02:10PM 20   THE COURT:  CORRECT.  YES, THAT'S CORRECT.

02:10PM 21   (PAUSE IN PROCEEDINGS.)

02:10PM 22   MR. SCHENK:  JUST FOR CLARIFICATION, YOUR HONOR,

02:10PM 23   WE'VE BEEN USING NUMBERS, JUROR NUMBERS.

02:10PM 24   THE TOP HALF OF THE SHEET HAS A LINE ON IT WHERE WE WRITE

02:10PM 25   OUR STRIKES.  I WANT TO CONFIRM THAT WE JUST WRITE NUMBERS ON

02:11PM  1        THE LINE.

02:11PM  2            I CAN PASS IT UP.

02:11PM  3                THE CLERK:  INSTEAD OF THEIR NAME.

02:11PM  4                THE COURT:  I THINK THAT'S SUFFICIENT.  AS LONG AS

02:11PM  5    EVERYBODY KNOWS, RIGHT.  YOU DON'T HAVE TO WRITE OUT THEIR

02:11PM  6    NAMES, RIGHT.

02:11PM  7            IF YOU PUT THE NUMBERS DOWN, THAT'S SUFFICIENT.

02:11PM  8                MR. COOPERSMITH:  YES, YOUR HONOR.

02:11PM  9                THE COURT:  DO YOU UNDERSTAND THAT, MR. COOPERSMITH?

02:11PM  10               MR. COOPERSMITH:  YES.

02:11PM  11               THE COURT:  THANK YOU.

02:11PM  12               MR. SCHENK:  I'M SORRY.  YOUR HONOR ALSO TOLD US THE

02:11PM  13   OTHER DAY, IF WE PASS, WE DO NOT LOSE THE STRIKE UNLESS THE

02:11PM  14   OTHER SIDE PASSES, AND THEN THAT MEANS WE HAVE A JURY OR WE

02:11PM  15   HAVE A GROUP OF ALTERNATES.

02:11PM  16               THE COURT:  THAT'S CORRECT.  A PASS IS NOT A STRIKE.

02:11PM  17   THAT DOESN'T SUBTRACT FROM YOUR STRIKES.

02:11PM  18           TWO PASSES IN SUCCESSION MEANS WE HAVE A JURY.

02:11PM  19               MR. COOPERSMITH:  YES, YOUR HONOR.

02:11PM  20               MR. SCHENK:  THANK YOU, YOUR HONOR.

02:11PM  21           (PAUSE IN PROCEEDINGS.)

02:27PM  22               THE COURT:  COUNSEL, I JUST WANT TO INTERRUPT YOUR

02:27PM  23   PROCESS FOR JUST A MOMENT.

02:27PM  24           I JUST WANT TO BE CERTAIN THAT I WAS CLEAR.  RIGHT NOW

02:27PM  25   WE'RE DOING THE 12, THE 12 MEMBERS OF THE JURY.

| | | |
|---|---|---|
| 02:27PM | 1 | IF AND WHEN YOU REACH THAT 12, THEN PLEASE LET ME KNOW AND |
| 02:27PM | 2 | WE'LL STOP, AND WE'LL MEMORIALIZE THAT, AND THEN WE'LL GO |
| 02:27PM | 3 | FORWARD. |
| 02:27PM | 4 | MR. COOPERSMITH:  YES, YOUR HONOR. |
| 02:27PM | 5 | THE COURT:  WAS THAT YOUR UNDERSTANDING? |
| 02:28PM | 6 | MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU. |
| 02:28PM | 7 | MR. SCHENK:  YES. |
| 02:28PM | 8 | THE COURT:  GREAT.  THANK YOU.  SORRY TO INTERRUPT. |
| 02:28PM | 9 | (PAUSE IN PROCEEDINGS.) |
| 02:54PM | 10 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 02:55PM | 11 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 02:55PM | 12 | MR. SCHENK? |
| 02:55PM | 13 | MR. SCHENK:  YOUR HONOR, WE HAVE A JURY.  THE |
| 02:55PM | 14 | GOVERNMENT HAS PASSED IT'S FINAL TWO, AND I WONDER IF I SHOULD |
| 02:55PM | 15 | WRITE "PASS" IN.  WE HAVE LEFT IT BLANK IN THE EVENT THE |
| 02:55PM | 16 | GOVERNMENT USED THOSE FINAL TWO, BUT WE HAVE A JURY NOW, SO -- |
| 02:55PM | 17 | THE COURT:  SURE, WHY DON'T YOU WRITE THAT IN. |
| 02:55PM | 18 | IS THAT ALL RIGHT WITH YOU, MR. COOPERSMITH? |
| 02:55PM | 19 | MR. COOPERSMITH:  YES, YOUR HONOR. |
| 02:55PM | 20 | THE COURT:  OKAY. |
| 02:55PM | 21 | MR. SCHENK:  SHOULD I PASS THAT UP? |
| 02:55PM | 22 | THE COURT:  YES, IF YOU COULD HAND IT UP TO OUR |
| 02:55PM | 23 | COURTROOM DEPUTY. |
| 02:55PM | 24 | IF YOU COULD JUST CHECK THAT AGAINST YOUR LIST. |
| 02:56PM | 25 | (PAUSE IN PROCEEDINGS.) |

02:59PM  1          THE COURT:  ALL RIGHT.  THANK YOU.

02:59PM  2      OUR COURTROOM DEPUTY HAS RECEIVED THE WORK PRODUCT OF

02:59PM  3  COUNSEL ON THEIR STRIKES, AND I'M GOING TO ASK OUR COURTROOM

02:59PM  4  DEPUTY TO READ, BY JUROR NUMBER, THE MAKEUP OF THE 12 JURORS.

03:00PM  5  SO IT WILL BE -- THE FIRST NAME ON THE LIST WOULD BE JUROR

03:00PM  6  NUMBER 1 WILL SIT IN THAT SEAT, AND SO FORTH.

03:00PM  7      SO PLEASE LISTEN TO THESE NUMBERS TO SEE IF IT

03:00PM  8  CORRESPONDS, COUNSEL, WITH YOUR CALCULATION.

03:00PM  9      SO, MADAM CLERK, IF YOU COULD PLEASE READ THE NUMBERS OF

03:00PM 10  THE JURY.

03:00PM 11          THE CLERK:  JUROR NUMBER 26 WILL BE JUROR NUMBER 1;

03:00PM 12      JUROR NUMBER 67 WILL BE JUROR NUMBER 2;

03:00PM 13      JUROR NUMBER 101 WILL BE JUROR NUMBER 3;

03:00PM 14      JUROR NUMBER 102 WILL BE JUROR NUMBER 4;

03:01PM 15      JUROR NUMBER 108 WILL BE JUROR NUMBER 5;

03:01PM 16      JUROR NUMBER 109 WILL BE JUROR NUMBER 6;

03:01PM 17      JUROR NUMBER 114 WILL BE JUROR NUMBER 7;

03:01PM 18      JUROR NUMBER 116 WILL BE JUROR NUMBER 8;

03:01PM 19      JUROR NUMBER 125 WILL BE JUROR NUMBER 9;

03:01PM 20      JUROR NUMBER 129 WILL BE JUROR NUMBER 10;

03:01PM 21      JUROR NUMBER 131 WILL BE JUROR NUMBER 11;

03:01PM 22      AND JUROR NUMBER 133 WILL BE JUROR NUMBER 12.

03:01PM 23          THE COURT:  DOES THAT COMPORT WITH YOUR

03:01PM 24  CALCULATIONS, MR. SCHENK?

03:01PM 25          MR. SCHENK:  YES, IT DOES.

03:02PM 1            THE COURT:  MR. COOPERSMITH?

03:02PM 2            MR. COOPERSMITH:  YES.

03:02PM 3            THE COURT:  THANK YOU.

03:02PM 4      THOSE NUMBERS WILL COMPROMISE THE 12 JURORS WHO WILL SIT

03:02PM 5  IN THE BOX, THE 12 JURORS.

03:02PM 6      SHALL WE NOW MOVE TO THE SELECTION OF THE ALTERNATES?  AND

03:02PM 7  THERE ARE SIX ALTERNATES, AND SO THE FOLLOWING, WHOEVER IS LEFT

03:02PM 8  IN SUCCESSION WILL BE THE UNIVERSE OF THOSE SELECTIONS, AND YOU

03:02PM 9  HAVE THREE STRIKES EACH.

03:02PM 10     THE SAME RULES APPLY.  A PASS IS NOT A STRIKE; TWO PASSES

03:02PM 11  AND WE HAVE OUR ALTERNATE JURORS.

03:02PM 12           MR. SCHENK:  YES, YOUR HONOR.

03:02PM 13           MR. COOPERSMITH:  YES, YOUR HONOR.

03:02PM 14           THE COURT:  DO YOU HAVE A SHEET TO BEGIN THAT?

03:02PM 15           MR. SCHENK:  SHOULD WE GET THE SHEET BACK?  I THINK

03:02PM 16  WE USE THE SAME.

03:02PM 17           THE COURT:  YEAH, I THINK YOU CAN.  IT MAKES MORE

03:02PM 18  SENSE TO DO THAT.

03:14PM 19     (PAUSE IN PROCEEDINGS.)

03:18PM 20           THE COURT:  ALL RIGHT.  LET'S GO BACK ON THE RECORD.

03:18PM 21     MR. SCHENK, MR. COOPERSMITH, HAVE YOU COMPLETED YOUR

03:19PM 22  SELECTION FOR THE ALTERNATE JURORS?

03:19PM 23           MR. SCHENK:  YES, YOUR HONOR.

03:19PM 24           MR. COOPERSMITH:  YES, YOUR HONOR.

03:19PM 25           THE COURT:  ALL RIGHT.  THANK YOU.

03:19PM   1          OUR COURTROOM DEPUTY WILL COMPILE THAT LIST AND THEN READ

03:19PM   2    THAT OUT TO YOU FOR US.

03:19PM   3          (PAUSE IN PROCEEDINGS.)

03:19PM   4              THE CLERK:  JUROR NUMBER 134 WILL BE ALTERNATE JUROR

03:19PM   5    NUMBER 1;

03:19PM   6          JUROR NUMBER 142 WILL BE ALTERNATE JUROR NUMBER 2;

03:19PM   7          JUROR NUMBER 164 WILL BE ALTERNATE JUROR NUMBER 3;

03:19PM   8          JUROR NUMBER 167 WILL BE ALTERNATE JUROR NUMBER 4;

03:19PM   9          JUROR NUMBER 169 WILL BE ALTERNATE JUROR NUMBER 5;

03:20PM  10          JUROR NUMBER 170 WILL BE ALTERNATE JUROR NUMBER 6.

03:20PM  11              THE COURT:  MR. SCHENK, DOES THAT COMPORT WITH YOUR

03:20PM  12    COMPILATION?

03:20PM  13              MR. SCHENK:  YES, YOUR HONOR.

03:20PM  14              THE COURT:  MR. COOPERSMITH?

03:20PM  15              MR. COOPERSMITH:  YES, YOUR HONOR.

03:20PM  16              THE COURT:  ALL RIGHT.  THANK YOU.

03:20PM  17          THEN THOSE JURORS WILL BE SELECTED AS OUR CHOSEN ALTERNATE

03:20PM  18    JURORS.  I'LL ASK OUR COURT COMMISSIONER TO ASK THE 12 AND THE

03:20PM  19    6 TO APPEAR THE NEXT COMING MONDAY.  IS THAT THE 14TH I THINK

03:20PM  20    IT IS?

03:20PM  21              THE CLERK:  IT IS.

03:20PM  22              THE COURT:  SHOULD WE HAVE THEM COME IN AT

03:20PM  23    10:00 A.M., COUNSEL?

03:20PM  24              MR. COOPERSMITH:  THAT WOULD BE FINE.

03:20PM  25              MR. SCHENK:  YES, YOUR HONOR.

03:20PM  1          THE COURT:  ALL RIGHT.  WHAT I INTEND TO DO IS TO

03:20PM  2     SWEAR THEM AS A JUROR AND THE ALTERNATE JURORS.

03:20PM  3          I'M JUST CURIOUS, IF WE HAVE TIME, PERHAPS I'LL

03:20PM  4     PRE-INSTRUCT ON MONDAY AS WELL, AND THEN ON WEDNESDAY WE CAN

03:21PM  5     JUST BEGIN WITH YOUR OPENING STATEMENTS.

03:21PM  6          WOULD THAT WORK?

03:21PM  7          MR. SCHENK:  I THINK IT WAS TUESDAY, YOUR HONOR.

03:21PM  8          THE COURT:  TUESDAY.  I'M SORRY.

03:21PM  9          MR. SCHENK:  YES, THAT WOULD BE FINE.

03:21PM  10         THE COURT:  THE PRELIMINARY INSTRUCTIONS ARE

03:21PM  11    20 MINUTES.

03:21PM  12         MR. COOPERSMITH:  YOUR HONOR, I DON'T HAVE ANY

03:21PM  13    PROBLEM WITH THAT.

03:21PM  14         THE COURT:  OKAY.  LET'S SEE WHAT OUR TIME IS.

03:21PM  15         THAT WOULD ALLOW ME -- IN THE PRELIMINARY INSTRUCTIONS, AS

03:21PM  16    YOU KNOW, IT DOES HAVE THE ADMONITION, AND I'M THINKING IT

03:21PM  17    MIGHT BE WISE TO GIVE THEM AN ADMONITION BEFORE THEY LEAVE.

03:21PM  18         SO I'LL PLAN ON DOING THAT.  I HOPE WE CAN ACCOMPLISH THAT

03:21PM  19    TIMEWISE.

03:21PM  20         MR. COOPERSMITH:  BUT OPENING STATEMENTS WILL HAVE

03:21PM  21    TO BE TUESDAY?

03:21PM  22         THE COURT:  YES, YOU WON'T HAVE TO OPEN ON MONDAY.

03:21PM  23    RIGHT.  OKAY.

03:21PM  24         MR. COOPERSMITH:  THANK YOU.

03:21PM  25         THE COURT:  ANYTHING ELSE BEFORE WE BREAK?

03:21PM   1          MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

03:21PM   2          MR. COOPERSMITH:  NO, YOUR HONOR.

03:21PM   3          THE COURT:  ALL RIGHT.  THANK YOU.  HAVE GOOD

03:21PM   4   WEEKENDS.  GET PLENTY OF SLEEP.

03:21PM   5          MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

03:21PM   6          THE COURT:  AND WE'LL NOTIFY OUR COMMISSIONER TO

03:21PM   7   NOTIFY THESE JURORS.

03:21PM   8       I'M NOT GOING TO RELEASE THE THIRD PANEL YET.  LET'S NOT,

03:22PM   9   AND PLEASE BE SPECIFIC, THAT WE'RE NOT GOING TO RELEASE THAT

03:22PM  10   PANEL.

03:22PM  11          THE CLERK:  OKAY.

03:22PM  12          THE COURT:  AND WE'LL SEE WHAT HAPPENS.

03:22PM  13          MR. SCHENK:  ALSO, ARE WE JUST GOING TO SAY NOTHING

03:22PM  14   TO JUROR 179 AND 181 BECAUSE THE PARTIES DID NOT USE ALL OF

03:22PM  15   THEIR STRIKES, WE DID NOT NEED ALL 40 JURORS?

03:22PM  16       SO I THINK IF WE'RE NOT GOING TO RELEASE THE THIRD PANEL,

03:22PM  17   WE MIGHT AS WELL NOT SAY SOMETHING TO 179 AND 181 AT THIS

03:22PM  18   POINT.

03:22PM  19          THE COURT:  THAT'S RIGHT, THEY'RE STILL PART OF THE

03:22PM  20   MIX POTENTIALLY, SHOULD THERE BE A NEED THEY WOULD FOLLOW NEXT.

03:22PM  21          MR. SCHENK:  THANK YOU.

03:22PM  22          MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

03:22PM  23          THE CLERK:  COURT IS ADJOURNED.

03:22PM  24       (COURT ADJOURNED AT 3:22 P.M.)

         25

1

2

3                      CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18
           _____
19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  MARCH 11, 2022

22

23

24

25