1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

        UNITED STATES OF AMERICA,          )
6                                          )  CR-18-00258-EJD
                         PLAINTIFF,        )
7                                          )  SAN JOSE, CALIFORNIA
                    VS.                    )
8                                          )  APRIL 1, 2022
        RAMESH "SUNNY" BALWANI,            )
9                                          )  VOLUME 12
                         DEFENDANT.        )
10      _____        )  PAGES 1683 - 1905

11

12                  TRANSCRIPT OF TRIAL PROCEEDINGS
                 BEFORE THE HONORABLE EDWARD J. DAVILA
13                  UNITED STATES DISTRICT JUDGE

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                               BY:  JOHN C. BOSTIC
16                                  JEFFREY B. SCHENK
                               150 ALMADEN BOULEVARD, SUITE 900
17                             SAN JOSE, CALIFORNIA 95113

18                             BY:  ROBERT S. LEACH
                                    KELLY VOLKAR
19                             1301 CLAY STREET, SUITE 340S
                               OAKLAND, CALIFORNIA 94612
20
                (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
        OFFICIAL COURT REPORTER:
22                             IRENE L. RODRIGUEZ, CSR, RMR, CRR
                               CERTIFICATE NUMBER 8074
23

24          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
25

```
1      A P P E A R A N C E S:  (CONT'D)

2      FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                               BY:  MOLLY MCCAFFERTY
3                                   SHAWN ESTRADA
                               THE ORRICK BUILDING
4                              405 HOWARD STREET
                               SAN FRANCISCO, CALIFORNIA 94105
5
                               BY:  JEFFREY COOPERSMITH
6                                   AARON BRECHER
                                    AMANDA MCDOWELL
7                              701 FIFTH AVENUE, SUITE 5600
                               SEATTLE, WASHINGTON 98104
8
                               BY:  STEPHEN CAZARES
9                              77 SOUTH FIGUEROA STREET, SUITE 3200
                               LOS ANGELES, CALIFORNIA 90017
10
                               BY:  AMY WALSH
11                             51 W 52ND STREET
                               NEW YORK, NEW YORK 10019
12

13     ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
                               BY:  MADDI WACHS, PARALEGAL
14                                  SARA SLATTERY, PARALEGAL

15                             ORRICK, HERRINGTON & SUTCLIFFE
                               JENNIFER CYGNOR, PARALEGAL
16
                               PROLUMINA
17                             BY:  COREY ALLEN
                               2200 SIXTH AVENUE, SUITE 425
18                             SEATTLE, WASHINGTON 98121

19                             UNITED STATES POSTAL INSPECTION SERVICE
                               BY:  CHRISTOPHER MCCOLLOW
20
                               FEDERAL BUREAU OF INVESTIGATION
21                             BY:  MARIO C. SCUSSEL

22                             UNITED STATES FOOD & DRUG
                               ADMINISTRATION
23                             BY:  GEORGE SCAVDIS

24

25
```

1

                    INDEX OF PROCEEDINGS

2

        GOVERNMENT'S:

3

4     **MARK PANDORI**
      DIRECT EXAM BY MR. BOSTIC (RES.)         P. 1716
5     CROSS-EXAM BY MR. COOPERSMITH (RES.)     P. 1746

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX OF EXHIBITS

                              IDENT.        EVIDENCE

GOVERNMENT'S


1620                                          1721
5770                                          1725




DEFENDANT'S

20478                                         1749
9939 (CONDITIONALLY)                          1778
20258                                         1822
20282                                         1826
1513                                          1833
5545 WITH REDACTIONS                          1839
7440                                          1855
20281                                         1869
20254                                         1875

```
          1    SAN JOSE, CALIFORNIA                    APRIL 1, 2022

          2                    P R O C E E D I N G S

08:33AM   3         (COURT CONVENED AT 8:33 A.M.)

08:33AM   4         (JURY OUT AT 8:33 A.M.)

08:33AM   5              THE COURT:  WE ARE ON THE RECORD.  ALL COUNSEL ARE

08:33AM   6    PRESENT.  MR. BALWANI IS PRESENT.

08:33AM   7         WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.

08:33AM   8         LET'S SEE.  LAST NIGHT AT ABOUT 4:30 P.M. DOCUMENT 1384

08:33AM   9    WAS FILED, MOTION TO STRIKE IMPROPER EXPERT TESTIMONY, AND

08:33AM  10    OTHER PROHIBITED TESTIMONY BY THE DEFENSE.

08:33AM  11         I CHECKED THE ECF DOCKET THIS MORNING.  I DON'T THINK THE

08:33AM  12    GOVERNMENT HAS FILED ANYTHING.

08:33AM  13         MR. BOSTIC?

08:33AM  14              MR. BOSTIC:  NO, YOUR HONOR.  BUT WE'RE PREPARED TO

08:33AM  15    ADDRESS IT ORALLY.

08:34AM  16              THE COURT:  WELL, I'VE READ THIS.

08:34AM  17         DOES THE GOVERNMENT HAVE A RESPONSE TO THIS?

08:34AM  18              MR. BOSTIC:  YES, YOUR HONOR.

08:34AM  19              THE COURT:  ALL RIGHT.  THANK YOU.

08:34AM  20              MR. BOSTIC:  SO, YOUR HONOR, THE GOVERNMENT OPPOSES

08:34AM  21    THE DEFENSE MOTION TO STRIKE PORTIONS OF THE TESTIMONY OF

08:34AM  22    DR. PANDORI AND MS. CHEUNG.

08:34AM  23         THE SECTIONS OF TESTIMONY IDENTIFIED BY THE DEFENSE ARE

08:34AM  24    NOT EXPERT TESTIMONY.  THEY ARE THE TESTIMONY OF PERCIPIENT

08:34AM  25    WITNESSES WHO WORKED AT THERANOS.  THEY ADDRESS THE
```

08:34AM 1    OBSERVATIONS OF THOSE WITNESSES IN TERMS OF HOW THE THERANOS

08:34AM 2    TECHNOLOGY WORKED AND MORE PARTICULARLY WHETHER THE THERANOS

08:34AM 3    TECHNOLOGY WORKED, AND IN THAT VEIN THESE WITNESSES HAVE

08:34AM 4    FIRSTHAND PERCIPIENT EXPERIENCE WHICH THEY ARE ABLE TO RELATE

08:34AM 5    TO THE JURY WITHOUT VEERING INTO THE REALM OF EXPERT TESTIMONY.

08:34AM 6        WHEN A WITNESS WHO WORKED WITH THESE DEVICES TESTIFIES

08:35AM 7    THAT THERE WERE RELIABILITY PROBLEMS, THAT THERE WERE ACCURACY

08:35AM 8    CONCERNS, THEY WERE REPORTING WHAT THEY SAW, WHEN THEY DESCRIBE

08:35AM 9    THEIR OWN CONCERNS AND WHY THEY WERE WORRIED ABOUT THE ACCURACY

08:35AM 10   OF THESE DEVICES, THAT'S RELEVANT NOT ONLY TO PUT THEIR

08:35AM 11   OBSERVATIONS IN CONTEXT, BUT ALSO BECAUSE IT'S THOSE CONCERNS

08:35AM 12   THAT MOTIVATED THEM TO ULTIMATELY RAISE THESE ISSUES WITH

08:35AM 13   OTHERS AT THE COMPANY, INCLUDING THE DEFENDANT HIMSELF, AND

08:35AM 14   THEN ULTIMATELY TO LEAVE THEIR EMPLOYMENT WITH THE COMPANY.

08:35AM 15       SO I'M HAPPY TO ADDRESS SPECIFIC INSTANCES THAT THE COURT

08:35AM 16   MIGHT HAVE QUESTIONS ON OR RESPOND TO ANY QUESTIONS THAT THE

08:35AM 17   COURT MIGHT HAVE, BUT OUR OVERALL POSITION IS THAT THESE

08:35AM 18   WITNESSES STAYED WITHIN THE BOUNDS OF LAY TESTIMONY AND ADHERED

08:35AM 19   TO THE GUIDANCE PREVIOUSLY ISSUED BY THE COURT IN CONNECTION

08:35AM 20   WITH PRETRIAL BRIEFING.

08:35AM 21       THE COURT:  ALL RIGHT.  WELL, THANK YOU.

08:35AM 22       I WONDER IF YOU COULD COMMENT ON PAGE 3 OF THE MOTION,

08:36AM 23   ECF PAGE 5 AT ABOUT LINE 13, I THINK, IT LOOKS LIKE IT, 13, IT

08:36AM 24   CITES THE TRANSCRIPT 1137 TO 1138.  THERE WAS AN OBJECTION

08:36AM 25   THERE.  I THINK IT WAS BASED ON 602 BY MR. COOPERSMITH.

08:36AM 1      AND THE COURT THEN ALLOWED THE TESTIMONY TO OCCUR, AND

08:36AM 2  THEN THERE WAS A 702 OBJECTION AS I RECALL.

08:36AM 3      SO THE 602 OBJECTION WAS OBVIOUSLY BASED ON KNOWLEDGE,

08:36AM 4  PERSONAL KNOWLEDGE.  MY SENSE IS THAT THAT IS WHAT THAT

08:36AM 5  COLLOQUY WAS REFERENCING, THE KNOWLEDGE, THE OBSERVATIONS AS

08:36AM 6  YOU JUST MENTIONED.

08:36AM 7      AND I BELIEVE THAT COLLOQUY WAS REGARDING WHAT THOSE

08:36AM 8  MACHINES COULD DO, WHAT THE ELISA, WAS IT THE ELISA MACHINES OR

08:36AM 9  THE EDISON MACHINES, WHAT THEY COULD RUN.

08:37AM 10      AND WHEN I LOOK AT THAT TESTIMONY AND RECALLING THE

08:37AM 11  COLLOQUY, THAT REALLY WAS A QUESTION ABOUT, AND YOU'LL PARDON

08:37AM 12  ME FOR PUTTING IT IN A DIFFERENT VISUAL VEIN, BUT I HOPE IT

08:37AM 13  CAPTURES THE SENTIMENT OF THAT EXAMINATION.

08:37AM 14      IT SEEMED TO ME THE QUESTIONS WERE:  THIS IS A TOASTER,

08:37AM 15  AND CAN YOU TOASTER RYE BREAD IN THIS TOASTER?  CAN YOU TOAST

08:37AM 16  WHEAT BREAD THEN TOASTER?  CAN YOU TOAST FRENCH BREAD IN THIS

08:37AM 17  TOASTER?

08:37AM 18      AND THEN THE NEXT QUESTION WOULD BE CAN YOU POACH AN EGG

08:37AM 19  IN THIS TOASTER?  CAN YOU MAKE SPAGHETTI IN THIS TOASTER?

08:37AM 20      AND IT SEEMED TO ME THAT THAT'S WHAT THAT QUESTIONING WAS

08:37AM 21  OF MS. CHEUNG, WHAT CAN YOU DO IN THESE MACHINES?  AND THAT, IT

08:37AM 22  SEEMED TO ME, DIDN'T REQUIRE EXPERTISE TO TALK ABOUT WHAT COULD

08:38AM 23  BE RUN IN THAT PARTICULAR MACHINE.  THAT'S WHAT SHE WAS TRAINED

08:38AM 24  TO DO.

08:38AM 25      THAT'S JUST ONE EXAMPLE.

08:38AM   1         ON THE SAME PAGE THERE WAS OBJECTIONS ABOUT WAS THIS

08:38AM   2    GROUNDBREAKING TECHNOLOGY, AND I THINK THERE WAS AN OBJECTION

08:38AM   3    TO THAT AT LEAST RAISED IN THE PLEADINGS.

08:38AM   4         AND THE QUESTION WAS NOT BASED NECESSARILY ON EXPERTISE,

08:38AM   5    BUT I BELIEVE DR. PANDORI TESTIFIED GROUND BREAKING IN THE

08:38AM   6    CONTEXT OF THE LITERATURE THAT WAS PUBLIC THROUGH THE COMPANY,

08:38AM   7    THE COMPANY REPRESENTATIONS, OR AT LEAST LITERATURE THAT HE,

08:38AM   8    DR. PANDORI, HAD READ REGARDING REPRESENTATIONS.  AND IN THAT

08:38AM   9    VEIN THE TECHNOLOGY WAS NOT GROUND BREAKING TO HIM.  I DON'T

08:38AM  10    BELIEVE THAT REQUIRED EXPERTISE.

08:38AM  11         LATER ON IN THAT SAME PAGE AT LINE 24, 25, THERE WERE

08:39AM  12    NOTES OF -- TESTIMONY OF 1610 REGARDING FAMILIARITY WITH THE

08:39AM  13    LITERATURE, ET CETERA.  THERE WAS NO OBJECTION ACTUALLY TO ANY

08:39AM  14    OF THAT TESTIMONY.

08:39AM  15         THERE WAS CONVERSATIONS AT 1657 REGARDING RAW DATA, AND

08:39AM  16    THE CONTEXT OF THAT CONVERSATION WAS REALLY IN RESPONSE TO AN

08:39AM  17    EMAIL, AS I RECALL THE TESTIMONY, FROM MR. BALWANI ASKING FOR

08:39AM  18    THE RAW DATA.  I THINK THE EMAIL SAID I WANT TO SEE THE RAW

08:39AM  19    DATA.

08:39AM  20         AND I BELIEVE YOUR QUESTIONS WERE REGARDING WHAT WOULD --

08:39AM  21    IN ESSENCE, WHAT WOULD SOMEONE NEED TO HAVE KNOWLEDGE OF TO DO

08:39AM  22    SOMETHING WITH THE RAW DATA.  AND THE WITNESS TESTIFIED, WELL,

08:39AM  23    YOU WOULD HAVE TO HAVE SOME MEDICAL BACKGROUND OR SOMETHING.

08:39AM  24         AND THEN ULTIMATELY THE WITNESS SAID, WELL, YOU KNOW,

08:40AM  25    PERHAPS HE WAS GOING TO HAVE SOMEBODY LOOK AT IT SO THERE'S A

08:40AM   1    COMPLETELY INNOCENT REASON FOR HIS REQUEST.  I WANT IT.  MAYBE

08:40AM   2    HE PERSONALLY COULDN'T DO IT BECAUSE HE DIDN'T HAVE THE

08:40AM   3    BACKGROUND NECESSARY.  I THINK IT'S -- IN THE TESTIMONY HE HAS

08:40AM   4    A SOFTWARE BACKGROUND, OR AT LEAST IN THE OPENING STATEMENTS.

08:40AM   5         BUT, AGAIN, THAT FOLLOW-UP QUESTION AND ANSWER RATHER,

08:40AM   6    MAYBE HE WAS GOING TO HAVE SOMEONE ELSE LOOK AT IT.

08:40AM   7         OKAY.  I GUESS WHAT I'M POINTING OUT IS -- AND ACTUALLY,

08:40AM   8    THERE WAS NO OBJECTION TO THAT LINE OF QUESTIONING EITHER.

08:40AM   9         THE COMMENTS POINTED OUT ON PAGE 4 AT LINE 6, THERE'S

08:40AM  10    ANOTHER COLLOQUY THAT IS HIGHLIGHTED REGARDING SCOPE OF

08:40AM  11    EMPLOYMENT AND JOB DESCRIPTIONS.

08:40AM  12         AGAIN, AT PAGE 1663, THE ANSWER WAS, YEAH, I AGREE WITH, I

08:40AM  13    AGREE WITH -- THE QUESTION WAS, DO YOU AGREE WITH MR. BALWANI'S

08:41AM  14    ASSESSMENT?  I THINK HE WAS TALKING ABOUT -- MR. BALWANI WAS

08:41AM  15    TALKING ABOUT HIS OBSERVATIONS.  AND THE QUESTION WAS DO YOU

08:41AM  16    AGREE WITH HIM?  AND THE WITNESS ANSWERED, AND THERE WAS NO

08:41AM  17    OBJECTION TO THAT ANSWER, WHICH POTENTIALLY COULD HAVE CALLED

08:41AM  18    UPON EXPERT TESTIMONY IF WE FOLLOW THAT SAME, THAT SAME

08:41AM  19    THOUGHT.

08:41AM  20         THERE WERE MANY QUESTIONS EVEN AT PAGE 1508 ON

08:41AM  21    CROSS-EXAMINE TALKING TO MS. CHEUNG ABOUT THE MATRIX AND WHAT'S

08:41AM  22    THE MATRIX, AND TELL US ABOUT WHAT THE MATRIX DID?

08:41AM  23         PAGE 1146 DESCRIBING THE PROCESS, RUNNING SAMPLES ON THE

08:41AM  24    SIEMENS ADVIA; PAGE 1147, THE NEED FOR CENTRIFUGING; PAGE 1149,

08:41AM  25    VALIDATION.  SHE KNEW WHAT IT MEANT.  NO OBJECTION.

1692

08:41AM 1       NOW, THERE WAS A PAGE, I BELIEVE THE MOTION INDICATES AT

08:42AM 2   1246 AND 1245, THERE WAS AN OBJECTION TO RECONCILING THE TWO

08:42AM 3   STATEMENTS.  AT PAGE 1246 THERE WAS AN OBJECTION, AND I THINK

08:42AM 4   THE COURT SAID WELL TAKEN, POINT WELL TAKEN.  I SUSTAINED THE

08:42AM 5   OBJECTION.

08:42AM 6       AND THEN MR. BOSTIC LAID A FOUNDATION, I THINK, FOR THAT

08:42AM 7   CONTINUING OVER TO PAGE 1248.

08:42AM 8       PAGE 1224 THERE WERE QUESTIONS, DID NOT FEEL THAT THE

08:42AM 9   MACHINES HAD THE INFRASTRUCTURE TO RUN HEP C.  NO OBJECTION.

08:42AM 10      HER OBJECTION REGARDING STABILITY IN HEP C WAS AT 1223.

08:42AM 11  NO OBJECTIONS.

08:42AM 12      THERE WERE THINGS IN THE PLEADINGS ALSO THAT TALK ABOUT

08:42AM 13  THE HACKING AND THE TESTIMONY REGARDING THE HACKING AT

08:42AM 14  PAGE 1665.  NO OBJECTION TO THAT.

08:42AM 15      ALTHOUGH IT'S NOTED IN THE PLEADINGS TO STRIKE NOW -- NOW

08:42AM 16  YOU'RE ASKING TO STRIKE THAT.  THERE WAS NO OBJECTION WHEN THAT

08:42AM 17  CAME IN.

08:42AM 18      THERE WAS REFERENCE TO THE PRIOR, THE PRIOR RULING IN THE

08:43AM 19  HOLMES CASE, AND THAT THIS TOPIC WAS RAISED AT THAT TIME IN AN

08:43AM 20  IN LIMINE MOTION.  AND THE WORD "HACKING" WASN'T REFERENCED IN

08:43AM 21  THAT MOTION.  THE WORD "TAMPERED" WAS USED.  PERHAPS IT'S THE

08:43AM 22  SAME THING.  BUT "TAMPERED," I BELIEVE, WAS THE WORD THAT WE

08:43AM 23  WERE DISCUSSING IN THE PRIOR MOTION, THE MOTION IN LIMINES IN

08:43AM 24  THE OTHER CASE.

08:43AM 25      BUT I TAKE THE POINT, YOU KNOW, TAMPERING, I UNDERSTAND

08:43AM  1    THAT COULD BE SEEN AS A PEJORATIVE TERM THAT MIGHT SUGGEST TO

08:43AM  2    THE JURY SOME NEFARIOUS ACTIVITY WAS DONE TO THESE MACHINES

08:43AM  3    THAT SHOULD CALL THEM TO QUESTION THAT.

08:43AM  4        THOSE ARE THE TYPES OF THINGS, OF COURSE, AS I SAID,

08:43AM  5    THERE'S NO OBJECTION TO THAT HACKING EITHER.  LET ME JUST TAKE

08:43AM  6    A MOMENT.

08:43AM  7        DO YOU AGREE WITH THAT, COUNSEL?

08:43AM  8            MR. BRECHER:  WITH WHICH POINT, YOUR HONOR?

08:43AM  9            THE COURT:  THAT THERE WAS NO OBJECTION TO THE

08:43AM 10    HACKING?

08:43AM 11            MR. BRECHER:  ON THAT PARTICULAR, THAT'S CORRECT,

08:44AM 12    YOUR HONOR.

08:44AM 13            THE COURT:  AND THAT PERHAPS WAS STRATEGIC, PERHAPS

08:44AM 14    SOME OF THESE OTHER ITEMS THAT I MENTIONED THAT WERE NOT

08:44AM 15    OBJECTED TO WERE STRATEGIC IN SOME MANNER.  I DON'T KNOW.  I'M

08:44AM 16    NOT ASKING ANY QUESTION ABOUT THAT.

08:44AM 17        THE POINT IS, THE POINT IS THAT BECAUSE -- JUST BECAUSE

08:44AM 18    IT'S SCIENCE DOESN'T MEAN IT REQUIRES EXPERTISE.  I APPRECIATE

08:44AM 19    DRAWING ATTENTION TO THIS.  SOMETIMES IT'S NOT AS SHARP AN EDGE

08:44AM 20    AS WE WOULD LIKE IT TO BE.  THERE ARE GREY AREAS IN THIS.

08:44AM 21        AND I BELIEVE THAT BOTH SIDES HAVE, IN THEIR EXAMINATION,

08:44AM 22    AND I UNDERSTAND CROSS-EXAMINATION IS RESPONSIVE TO DIRECT AND

08:44AM 23    SO SOMETIMES THERE'S, I'LL JUST CALL IT, CLEANUP.  SOMETIMES

08:44AM 24    YOU WANT TO CLEAN UP SOME OF THE THINGS THAT WERE RAISED ON

08:44AM 25    DIRECT SO YOUR EXAMINATION HAS TO BE GUIDED AS SUCH.

08:44AM  1        BUT THE TESTIMONY ABOUT THESE MACHINES HAS NOT, HAS NOT

08:45AM  2   BEEN SUCH, AND THE COURT'S RULINGS, I HAVE NOT SEEN IT SUCH

08:45AM  3   THAT IT REQUIRES A 702.

08:45AM  4        NOW, THERE COULD HAVE BEEN OBJECTIONS FROM THE GOVERNMENT

08:45AM  5   TO QUESTIONS THAT THE DEFENSE ASKED, AGAIN, REGARDING -- I

08:45AM  6   THINK I TALKED A LITTLE BIT ABOUT IT, THE CENTRIFUGE, THE

08:45AM  7   VALIDATION, AND ALL OF THOSE THINGS, THAT ARGUABLY THOSE MIGHT

08:45AM  8   REQUIRE 702, SOMEONE TO TALK ABOUT, WHAT IS A CENTRIFUGE?

08:45AM  9   ISN'T THAT HOW THEY MAKE NUCLEAR WEAPONS?  ISN'T THAT WHAT THEY

08:45AM 10   DO?  AND WHAT IS THE DIFFERENCE BETWEEN THAT AND THE EDISON

08:45AM 11   MACHINE?  SO DOES THAT REQUIRE AN EXPERTISE?  PERHAPS.

08:45AM 12        BUT THERE WAS NO OBJECTION TO ANY OF THAT FROM THE

08:45AM 13   GOVERNMENT.  I THINK THAT QUESTIONING CAME ON YOUR SIDE, WHICH

08:45AM 14   IS TO SAY THAT THERE IS SOME LATITUDE WHEN WE'RE TALKING ABOUT

08:45AM 15   THESE MACHINES.

08:45AM 16        IF IT GOES INTO, I THINK, SOMETHING LIKE WHAT DOES A

08:46AM 17   CENTRIFUGE DO?  AND WHAT DOES IT ACTUALLY DO TO MOLECULES WHEN

08:46AM 18   THEY'RE SPUN AT 15 MILLION RPM'S?  WHAT DOES THAT DO TO A

08:46AM 19   MOLECULE, OR HOW DOES THAT WORK?  THEN, OF COURSE, WE GET INTO

08:46AM 20   EXPERTISE AND THOSE TYPES OF THINGS.

08:46AM 21        I STILL THINK WE'RE AT A HIGH LEVEL IN THE CONVERSATIONS

08:46AM 22   THAT BOTH SIDES HAVE DONE.

08:46AM 23        IS THAT A SUBSTANTIALLY HIGH LEVEL THAT IT'S NOT REQUIRING

08:46AM 24   EXPERTISE?

08:46AM 25        SOMETIMES IT GETS CLOSE, AND I'LL GRANT YOU THAT.  I CAN

08:46AM  1    UNDERSTAND WHY THERE WOULD BE OBJECTIONS TO THAT, BUT, EXCUSE

08:46AM  2    ME, BUT AS I READ THROUGH THE PLEADINGS, I SEE A DISTINCTION

08:46AM  3    BETWEEN WHAT HAS BEEN ASKED AND WHAT HAS BEEN RECEIVED IN

08:46AM  4    EVIDENCE, THAT IS, NOTWITHSTANDING RAISING THE FIGUEROA-LOPEZ

08:46AM  5    CASE, AND WE KNOW WHAT HAPPENED IN THAT CASE AND THE OFFICERS

08:47AM  6    WERE -- THE AGENTS WERE ALLOWED TO TESTIFY AND GIVE THEIR

08:47AM  7    OPINIONS AS TO WHAT I THINK WAS A DRUG COURIER, THESE ARE ALL

08:47AM  8    ATTRIBUTES OF A DRUG COURIER.  OF COURSE, IT WAS HARMLESS ERROR

08:47AM  9    IN THAT BECAUSE OF OTHER EVIDENCE IN THE CASE, OF COURSE.

08:47AM  10       BUT IT DOESN'T APPEAR TO ME THAT THIS -- WHAT HAS BEEN

08:47AM  11   ELICITED SO FAR HAS BEEN REQUIRED OF AN EXPERT BACKGROUND OR

08:47AM  12   ANY EXPERTISE.  THESE -- MS. CHEUNG, DR. PANDORI WERE EMPLOYEES

08:47AM  13   THERE.  DR. PANDORI WAS TESTIFYING ABOUT HE'S A LAB DIRECTOR.

08:47AM  14   HE WAS ASKED QUESTIONS ABOUT WHAT DOES A LAB DIRECTOR DO?  YOU

08:47AM  15   CAME INTO THIS -- I KNOW THERE WERE QUESTIONS ABOUT REGULATORY

08:47AM  16   THINGS, AND HE WAS TALKING ABOUT THAT'S MY JOB DESCRIPTION.

08:47AM  17   THAT'S WHAT I'M SUPPOSED TO DO.  I'M SUPPOSED TO KNOW ABOUT THE

08:47AM  18   REGULATIONS, AND THAT'S HOW I OPERATE AND HAVE OVERSIGHT OVER

08:48AM  19   THE LAB.

08:48AM  20       WHAT DOES A LAWYER DO?  A LAWYER ADVOCATES.

08:48AM  21       BUT WE'RE NOT GOING TO ASK YOU TO REVIEW YOUR LAW REVIEW

08:48AM  22   ARTICLES, COUNSEL.

08:48AM  23            MR. BRECHER:  I'M HAPPY TO DO SO, YOUR HONOR.

08:48AM  24   THEY'RE NOT GREAT.

08:48AM  25            THE COURT:  WE'LL CALL YOUR PARENTS IN WHEN YOU DO

1696

08:48AM 1    THAT, AND THEY'LL BE HAPPY TO JOIN US IN HEARING THOSE.  I'M

08:48AM 2    SURE THEY'RE PROUD OF YOU.

08:48AM 3              MR. BRECHER:  THAT'S THE SOLE LEADERSHIP,

08:48AM 4    YOUR HONOR.

08:48AM 5              THE COURT:  WELL, MY POINT IS, MY POINT IS -- AGAIN,

08:48AM 6    PARDON ME.  I DON'T MEAN TO BE INDELICATE ABOUT IT.  BUT USING

08:48AM 7    THE TOASTER ANALOGY, THAT'S REALLY WHAT I SEE THIS AS AND THAT

08:48AM 8    IS WITH THIS EDISON MACHINE.

08:48AM 9         SHE WAS TALKING ABOUT THIS IS WHAT COULD BE RUN.  YOU

08:48AM 10   NEEDED THE T-CUPS, YOU NEEDED THIS, AND THAT MACHINE COULDN'T

08:48AM 11   BE RUN WITHOUT THESE THINGS.  I DON'T BELIEVE THAT REQUIRED

08:48AM 12   EXPERTISE.

08:48AM 13        NOW, I DO HAVE SOME CONCERN, AND I THINK THE DEFENSE

08:48AM 14   RAISED THIS, THIS WAS A CONCERN, IT WAS RAISED IN THE MOTIONS

08:48AM 15   IN LIMINE PREVIOUSLY IN THE OTHER CASE, AND WE TALKED ABOUT IT

08:49AM 16   IN THIS CASE, AND THAT IS THE DANGER OF USING REGULATIONS, THAT

08:49AM 17   IS, CIVIL REGULATIONS TO GIVE THE JURY AN INFERENCE THAT IF

08:49AM 18   THERE'S A VIOLATION OF A CIVIL REGULATION, THEY SHOULD USE OR

08:49AM 19   CONSIDER IN ANY WAY, USE THAT IN THEIR THOUGHT PROCESS AS TO A

08:49AM 20   VIOLATION OF A CRIMINAL STATUTE.

08:49AM 21        AND THAT OVERRIDES, I THINK, THIS CASE, AND THAT'S A

08:49AM 22   CONCERN THAT I HAVE, AND I LOOK AT THE GOVERNMENT WHEN I SAY

08:49AM 23   THAT.

08:49AM 24        I THINK THERE WERE SOME OBJECTIONS, AT LEAST ONE OBJECTION

08:49AM 25   FROM THE DEFENSE ABOUT THAT, AND I DO HAVE CONCERN ABOUT THAT,

08:49AM 1    AND WE'LL USE THIS TIME FOR ME TO EXPRESS THAT TO THE

08:49AM 2    GOVERNMENT.  I WANT TO BE CAREFUL THAT THE JURY DOES NOT, IS

08:49AM 3    NOT SOMEHOW INFORMED INTENTIONALLY OR ACCIDENTALLY THAT A

08:49AM 4    VIOLATION OF A CIVIL REGULATION IS GOING TO BE INFERENCE OR IN

08:49AM 5    SOME WAY CAUSE THEM TO THINK THAT THERE'S BEEN A VIOLATION OF A

08:50AM 6    CRIMINAL SECTION, AND THAT'S IMPROPER.

08:50AM 7            MR. BOSTIC:  IF I COULD RESPOND TO THAT, YOUR HONOR?

08:50AM 8            THE COURT:  YES.

08:50AM 9            MR. BOSTIC:  SO THE COURT'S POINT, OF COURSE, ARE

08:50AM 10   WELL TAKEN.

08:50AM 11       IT CERTAINLY IS NOT THE GOVERNMENT'S INTENT TO IMPLY TO

08:50AM 12   THE JURY THAT THEY SHOULD CONVICT BECAUSE OF A VIOLATION OF A

08:50AM 13   REGULATORY REQUIREMENT, AND I THINK THAT COMES THROUGH IN THE

08:50AM 14   QUESTIONS AND ANSWERS.

08:50AM 15       IN THE INSTANCES WHERE THOSE REGULATIONS WERE DISCUSSED,

08:50AM 16   AND I'M THINKING PRIMARILY OF THE REGULATIONS CONCERNING

08:50AM 17   PROFICIENCY TESTING, THE FOCUS -- WE ATTEMPTED TO KEEP THE

08:50AM 18   FOCUS ON THE ISSUE OF TESTING ACCURACY.  AND THOSE TWO ISSUES

08:50AM 19   ARE REALLY INTERTWINED.

08:50AM 20       AND SO THE POINT OF THAT TESTIMONY IS THAT PROFICIENCY

08:50AM 21   TESTING IS A REQUIREMENT, AND THE FOCUS IS NOT ON THE FACT THAT

08:50AM 22   IT IS A REGULATION AND WHAT THE PENALTIES ARE FOR VIOLATING IT.

08:51AM 23   WE DIDN'T INTRODUCE THE REGULATION AS, YOU KNOW, AN EXHIBIT.

08:51AM 24   WE DIDN'T ASK ABOUT, YOU KNOW, WHAT CONSEQUENCES THERE MIGHT BE

08:51AM 25   IF A LAB VIOLATES THOSE REGULATIONS, WE DIDN'T HIGHLIGHT THAT.

08:51AM 1      INSTEAD, THE FOCUS WAS ON THE FUNCTION THAT THAT

08:51AM 2   REQUIREMENT SERVES, WHICH IS TO PROVIDE A WAY TO CONFIRM THAT

08:51AM 3   LABORATORY TESTING IS ACTUALLY DELIVERING RELIABLE RESULTS, AND

08:51AM 4   THAT'S A CHIEF ISSUE THAT IS RELEVANT TO THIS CASE.

08:51AM 5      SO THE FACT THAT THERE WAS DISCUSSION ABOUT THOSE

08:51AM 6   REGULATIONS, IT REALLY IS ANCILLARY TO THE CENTRAL ISSUE HERE,

08:51AM 7   WHICH IS THE TREATMENT OF PROFICIENCY TESTING AT THERANOS, AT

08:51AM 8   DEFENDANT'S COMPANY, AND WHETHER THE COMPANY'S USE OR NON-USE

08:51AM 9   OF PROFICIENCY TESTING HAD AN EFFECT ON THE RELIABILITY AND

08:51AM 10  ACCURACY OF THE RESULTS THAT WERE GOING OUT TO PATIENTS.

08:52AM 11             THE COURT:  OKAY.  THANK YOU.

08:52AM 12  COUNSEL.

08:52AM 13             MR. BRECHER:  THANK YOU, YOUR HONOR.

08:52AM 14      I APPRECIATE THE COURT TAKING THIS TIME.  I KNOW THE COURT

08:52AM 15  OFFERED A HOST OF COMMENTS THIS MORNING, BUT I KNOW -- I AM

08:52AM 16  SENSITIVE THAT MR. BOSTIC DIDN'T HAVE AN OPPORTUNITY TO RESPOND

08:52AM 17  IN WRITING, SO I WANTED TO MAKE SURE THAT THE GOVERNMENT HAS

08:52AM 18  COMPLETED ITS RESPONSE TO THE OTHER ISSUES THAT THE COURT

08:52AM 19  RAISED IF IT HAD ANY.

08:52AM 20             MR. BOSTIC:  THE ONLY ISSUE THAT I DIDN'T ADDRESS

08:52AM 21  YET IS THE USE OF THE TERM "HACKED."

08:52AM 22      ON THAT ISSUE, I'LL JUST POINT OUT BRIEFLY THAT I

08:52AM 23  UNDERSTOOD THE COURT'S ORDER TO BE PREVENTING THE RISK OF A

08:52AM 24  WITNESS USING A PEJORATIVE TERM TO GIVE THEIR OWN OPINION

08:52AM 25  CRITICIZING OR PASSING JUDGMENT ON THERANOS'S MODIFICATION OF

08:52AM  1    THIRD PARTY DEVICES.  THAT'S NOT WHAT HAPPENED YESTERDAY OR THE

08:52AM  2    DAY BEFORE YESTERDAY.

08:52AM  3         WHEN DR. PANDORI USED THAT TERM "HACKED," HE WAS USING A

08:52AM  4    TERM THAT HE HAD HEARD AT THERANOS.  THAT WAS THE COMPANY'S OWN

08:52AM  5    INTERNAL TERM APPARENTLY FOR THEIR PRACTICE OF MODIFYING THESE

08:53AM  6    DEVICES.

08:53AM  7         SO I CERTAINLY DON'T THINK IT'S UNFAIR FOR HIM TO USE, TO

08:53AM  8    SIMPLY REPEAT THE TERM THAT HE HAD HEARD AT THE COMPANY.  HE

08:53AM  9    WAS NOT BEING PEJORATIVE OR PASSING ANY JUDGMENT ON THAT

08:53AM  10   PRACTICE.

08:53AM  11              THE COURT:  AND I DON'T BELIEVE, I DON'T BELIEVE THE

08:53AM  12   GOVERNMENT FOLLOWED UP ON THAT AND ASKED ANY QUESTIONS ABOUT

08:53AM  13   THAT.

08:53AM  14        I'M SURE THE DEFENSE WILL, OR IF YOU CHOOSE TO, THAT'S

08:53AM  15   SOMETHING THAT YOU WOULD DO TO GET CLARITY ON THAT TERM, WHERE

08:53AM  16   THAT CAME FROM.

08:53AM  17              MR. BRECHER:  POSSIBLY, YOUR HONOR.

08:53AM  18        AND I VERY MUCH APPRECIATE THE COURT'S COMMENTS, AND I

08:53AM  19   THINK I AGREE WITH MOST OF THEM.

08:53AM  20        I WANT TO MAKE SURE THAT OUR POSITION ON WHAT CONSTITUTES

08:53AM  21   EXPERT TESTIMONY IS CLEAR, AND IF AT THE END OF THE DAY I

08:53AM  22   ACCOMPLISH THAT AND THERE REMAINS DAYLIGHT BETWEEN MY

08:53AM  23   UNDERSTANDING AND THE COURT'S UNDERSTANDING, I'M UNDER NO

08:53AM  24   ILLUSIONS AS TO WHOSE PERSPECTIVE IS GOING TO GOVERN THE TRIAL

08:53AM  25   AND WE WILL HAVE MADE OUR RECORD CLEAR.

08:53AM  1          BUT I THINK IT'S IMPORTANT TO POINT OUT THAT THE

08:53AM  2     OBJECTIONS AS WE RAISED THEM IN THE BRIEF AND IN SOME OF OUR

08:54AM  3     PAST BRIEFING ARE NOT CENTERED ON TECHNICAL SUBJECTS.  INDEED,

08:54AM  4     EVEN THE COURT'S EXAMPLE ABOUT MOLECULES AND WHAT GOES INTO

08:54AM  5     THEM, THAT DOESN'T GIVE ME A LOT OF HEARTBURN, YOUR HONOR.  THE

08:54AM  6     DEFINITION GAME, I DON'T WORRY ABOUT THAT TOO MUCH.

08:54AM  7          AS MR. BOSTIC POINTED OUT AT THE END OF THE DAY YESTERDAY,

08:54AM  8     THIS IS A TECHNICAL CASE.  IT DEALS WITH LAB TESTING.  THE JURY

08:54AM  9     IS GOING TO HEAR TERMS THAT THEY NEED TO UNDERSTAND FROM THESE

08:54AM  10    LAY WITNESSES, AND MOST OF THE WITNESSES ON THE GOVERNMENT'S

08:54AM  11    LIST ARE LAY WITNESSES, HOW THOSE TERMS WERE USED AT THERANOS.

08:54AM  12         OUR OBJECTION IS A LITTLE BIT DIFFERENT.  702, AS I

08:54AM  13    UNDERSTAND IT, AND I THINK NOT ONLY FIGUEROA-LOPEZ BUT EVERY

08:54AM  14    OTHER NINTH CIRCUIT OPINION TO ADDRESS THIS NARROW ISSUE THAT

08:54AM  15    I'M AWARE OF SAYS THE SAME THING, IT'S THE REASONING THAT

08:54AM  16    REQUIRES GOING FROM WHAT YOU OBSERVE IN YOUR PERCIPIENT

08:54AM  17    EXPERIENCE TO WHAT CONCLUSIONS AND OPINIONS YOU ACTUALLY DRAW.

08:54AM  18    THAT'S WHERE IMPERMISSIBLE EXPERTISE CAN BE IMPLICATED, AND THE

08:54AM  19    CENTRAL HALLMARK OF EXPERT TESTIMONY IS CAUSE AND EFFECT.

08:55AM  20         MS. CHEUNG IS WELCOME TO TESTIFY, AND WE WOULDN'T HAVE

08:55AM  21    OBJECTING TO HER TESTIFYING, THAT MACHINES FAILED QUALITY

08:55AM  22    CONTROL TESTS BASED ON THE STANDARDS THAT THERANOS SET.

08:55AM  23         WHAT HAPPENED TO THOSE MACHINES?  WHAT DID THEY DO WITH

08:55AM  24    THOSE MACHINES?  THAT'S FINE.

08:55AM  25         SHE'S ALSO WELCOME TO TESTIFY ABOUT WHAT DID SHE, OR IF

08:55AM  1    SHE HAS PERSONAL KNOWLEDGE, OTHERS COMMUNICATE TO MR. BALWANI

08:55AM  2    OR POTENTIALLY MS. HOLMES AND OTHERS AT THERANOS ABOUT THEIR

08:55AM  3    CONCERNS.  ALL ABOVE BOARD.

08:55AM  4         BUT WHEN YOU MOVE FROM THERE WAS A PROBLEM WITH THE

08:55AM  5    QUALITY CONTROLS, I SAW THAT THEY WERE FAILING, AND I'M TURNING

08:55AM  6    TO YOU, JURORS, AND I'M TELLING YOU I'M CONCERNED BECAUSE TO ME

08:55AM  7    WHAT THAT INDICATES IS THAT THERE IS SOME FUNDAMENTAL ACCURACY

08:55AM  8    PROBLEM, IF YOU LOOK AT THE ADVISORY COMMITTEE NOTES TO 702,

08:55AM  9    WHICH I THINK IS A VERY TELLING EXAMPLE BECAUSE IT GOES FROM

08:55AM  10   SAYING A DOCTOR -- A PHYSICIAN, AND, OF COURSE, MS. CHEUNG WAS

08:55AM  11   A JUNIOR LAB ASSOCIATE FRESH OUT OF COLLEGE, A PHYSICIAN CAN'T

08:55AM  12   SAY UNLESS NOTICE AS AN EXPERT, THAT BRUISING INDICATES TRAUMA.

08:56AM  13        I DON'T KNOW HOW A JUNIOR LAB ASSOCIATE OR EVEN SOMEONE

08:56AM  14   LIKE DR. PANDORI CAN, CONSISTENT WITH THOSE ADVISORY COMMITTEE

08:56AM  15   NOTES, CONSISTENT WITH FIGUEROA-LOPEZ, SAY WE SAW THESE

08:56AM  16   PHENOMENA, THERE WERE INTERNAL POLICIES AND PRACTICES AROUND

08:56AM  17   THESE PHENOMENA, WE RAISED CONCERNS ABOUT THESE PHENOMENA,

08:56AM  18   MAYBE THEY WERE IGNORED, AND NOW I'M CONCLUDING FROM THAT THAT

08:56AM  19   THERE IS SOME DEEP UNDERLYING PROBLEM.

08:56AM  20        THE COURT:  WELL, I APPRECIATE THAT.

08:56AM  21        BUT SOME OF THE COLLOQUY TALKED ABOUT THE SOP'S, AND THERE

08:56AM  22   WERE, THERE WERE -- THIS WAS CONTRARY TO THE SOP'S.  WHY DID

08:56AM  23   THAT CREATE CONCERN?  WELL, IT WASN'T -- IT DIDN'T FOLLOW THE

08:56AM  24   SOP'S.

08:56AM  25        YOUR COLLEAGUE, MR. COOPERSMITH, ON HIS CROSS-EXAMINATION

08:56AM 1    OF MS. CHEUNG INVITED HER TO LOOK AT AN SOP, AND THEN I BELIEVE

08:56AM 2    SHE CONCEDED THAT HER METHODOLOGY DID NOT FOLLOW THE SOP.

08:56AM 3        SO THERE WAS -- IF YOU SEE, THERE'S SOME THREAD ABOUT

08:56AM 4    THIS.  IT'S NOT -- IT ISN'T LEFT ON.  THERE IS SOME -- THERE'S

08:57AM 5    TESTIMONY ABOUT THE SOP'S, THERE'S TESTIMONY ABOUT WHAT THE

08:57AM 6    MACHINES COULD DO AND NOT DO, AND I THINK BOTH SIDES HAVE

08:57AM 7    FLIRTED WITH THAT AND THOSE CONCEPTS.  IT'S IMPORTANT TO YOUR

08:57AM 8    CASES, I SUPPOSE.  BUT IT DOES NOT -- IN THE COURT'S VIEW, THE

08:57AM 9    WAY THAT THE QUESTIONS HAVE BEEN ASKED, AND IT HASN'T RISEN TO

08:57AM 10   THAT LEVEL, THE FIGUEROA-LOPEZ TYPE OF TESTIMONY.  I JUST HAVE

08:57AM 11   NOT SEEN IT THAT WAY.  YOU HAVE MADE YOUR RECORD THERE, AND I

08:57AM 12   APPRECIATE THAT.

08:57AM 13       AND WE'LL BE MINDFUL GOING FORWARD ALSO, AND I APPRECIATE

08:57AM 14   YOU BRINGING THIS TO THE COURT'S ATTENTION.

08:57AM 15           MR. BRECHER:  OH, I'M SORRY, YOUR HONOR.

08:57AM 16           THE COURT:  NO, NO.  IT'S IMPORTANT TO HAVE THIS

08:57AM 17   DISCUSSION.  WE TALKED A LITTLE BIT ABOUT -- I'VE SHARED WITH

08:57AM 18   YOU MY CONCERNS ALSO ABOUT THIS CROSSOVER OF A CIVIL REGULATION

08:57AM 19   AND PENALTIES THAT MIGHT IN SOME WAY INFECT A JURY'S OPINION

08:58AM 20   ABOUT A CRIMINAL STATUTE, AND I HAVE CONCERNS ABOUT THE TENSION

08:58AM 21   BETWEEN THOSE TWO THINGS.

08:58AM 22           MR. BRECHER:  YES, YOUR HONOR.

08:58AM 23       IF I COULD SPEAK TO THAT FOR A MOMENT, ALTHOUGH I SUPPOSE

08:58AM 24   I SHOULD FIRST PAUSE ON THIS HACKED POINT?

08:58AM 25       FIRST, JUST TO MAKE SURE THE RECORD IS CLEAR, THAT RULING

08:58AM  1      IS NOT SOLELY IN 798.  IT WASN'T JUST CONFINED TO THE HOLMES

08:58AM  2      TRIAL.  IT WAS INCORPORATED BY REFERENCE IN 1326 IN THE RULING

08:58AM  3      IN THIS TRIAL ON PAGE 29.

08:58AM  4          AND WHILE THE WORD THERE THAT WAS USED WAS "TAMPERING,"

08:58AM  5      THE LANGUAGE THAT THE COURT USED IN EITHER ORDER DID NOT

08:58AM  6      CONTAIN THE PERSONAL OPINION RESTRICTION THAT MR. BOSTIC

08:58AM  7      OFFERED.  CERTAINLY I DON'T READ IT THAT WAY, AND I DON'T THINK

08:58AM  8      THERE'S ANY TEXT IN THAT ORDER THAT COULD BE READ THAT WAY.

08:58AM  9          WHAT THE COURT PROHIBITED, AS I UNDERSTAND THE RULING, IS

08:58AM  10     THE USE OF LANGUAGE THAT WOULD IMPLY TO THE JURY, REGARDLESS OF

08:58AM  11     WHETHER IT'S THE WITNESS'S OPINION OR ANYTHING ELSE, THAT

08:58AM  12     SOMETHING IMPROPER OR UNTOWARD HAD BEEN DONE.

08:58AM  13               THE COURT:  RIGHT.

08:58AM  14               MR. BRECHER:  AND I THINK IT'S APPROPRIATE TO

08:59AM  15     INSTRUCT THE JURY THAT THERE'S BEEN NO FOUNDATION LAID FOR

08:59AM  16     THAT.  IT WAS ALSO THE FACT THAT --

08:59AM  17               THE COURT:  DO I DO THAT ABSENT AN OBJECTION?  HOW

08:59AM  18     DO I DO THAT NOW?

08:59AM  19               MR. BRECHER:  IT'S A GREAT QUESTION, YOUR HONOR.

08:59AM  20               THE COURT:  THANK YOU.

08:59AM  21               MR. BRECHER:  SO I DO KNOW THAT THERE ARE SOME

08:59AM  22     POINTS IN WHICH THERE WERE OBJECTIONS RAISED IN THESE COMMENTS

08:59AM  23     AND SOME IN WHICH THEY WERE NOT.

08:59AM  24          AND IF THE COURT IS GOING TO REST PART OF ITS RULING ON A

08:59AM  25     SORT OF TARGET GONE BY WAIVER, I UNDERSTAND THAT, I DO.

08:59AM  1      BUT I WOULD SAY A COUPLE OF THINGS.  FIRST, OBVIOUSLY

08:59AM  2   YOUR HONOR HAS THE DISCRETION TO EXCUSE SUCH A WAIVER, AND HERE

08:59AM  3   WE -- YOU KNOW, MR. COOPERSMITH RAISED THE OBJECTION AT THE END

08:59AM  4   OF THE DAY, WE TEED IT UP IN A BRIEF THE FOLLOWING DAY.

08:59AM  5      BUT THE SECOND POINT I WOULD SAY IS THAT YOUR HONOR HAS A

08:59AM  6   BROADER RANGE OF REMEDIES.  EVEN IF THE COURT IS NOT INCLINED

08:59AM  7   TO STRIKE TESTIMONY, IF YOU AGREE WITH ME NOW, AND BASED ON

08:59AM  8   YOUR COMMENTS I DON'T TAKE FOR GRANTED THAT YOUR HONOR DOES,

08:59AM  9   BUT IF ON SOME OF THESE ISSUES YOUR HONOR AGREES WITH ME, THE

08:59AM  10  COURT HAS THE OPTION OF INSTRUCTING THE GOVERNMENT THAT THEY

08:59AM  11  CAN'T REFER TO THE IMPERMISSIBLE TESTIMONY IN CLOSING ARGUMENT,

09:00AM  12  FOR EXAMPLE.

09:00AM  13     THE COURT ALSO HAS THE OPTION TO TURN BACK TO THE POINT

09:00AM  14  ABOUT LEGAL CONCLUSIONS, AND I KNOW THAT'S AN ISSUE THAT

09:00AM  15  YOUR HONOR AND I HAVE HAD A CHANCE TO DISCUSS IN THE PAST.

09:00AM  16     THE COURT COULD INSTRUCT THE JURY THIS MORNING, JUST A

09:00AM  17  BRIEF CURATIVE INSTRUCTION, A REMINDER THAT MR. BALWANI IS NOT

09:00AM  18  ON TRIAL FOR THE VIOLATION OF CIVIL REGULATIONS, BECAUSE I DO

09:00AM  19  THINK THAT THERE WAS SOME VERY TROUBLING TESTIMONY THERE,

09:00AM  20  INCLUDING ABOUT WHAT THE FEDERAL GOVERNMENT AND ALL STATES

09:00AM  21  REQUIRE.  AND IT IS PERFECTLY CONSISTENT WITH 1326 FOR THE

09:00AM  22  GOVERNMENT TO DO, AS MR. BOSTIC ORIGINALLY DID IN HIS

09:00AM  23  TESTIMONY, WHICH IS, DID YOU RAISE THESE CONCERNS WITH

09:00AM  24  MR. BALWANI?  WHAT WAS HIS REACTION?  THAT'S PRECISELY WHAT THE

09:00AM  25  COURT SAID WAS OKAY.

09:00AM 1    BUT THE FOLLOWUP IS PRECISELY WHAT THE COURT SAID IS NOT

09:00AM 2    OKAY, AND THAT WAS THE QUESTION, WERE YOU GUESSING?  WAS THIS A

09:00AM 3    GUESS ABOUT WHAT THE REGULATIONS MEAN?  THAT IS AN INVITATION

09:00AM 4    FOR THE WITNESS TO TURN TO THE JURY, AND I THINK YOUR HONOR SAW

09:01AM 5    EVEN FROM A LATERAL PERSPECTIVE THAT DR. PANDORI GAVE A NUMBER

09:01AM 6    OF PROFESSORIAL ASIDES IN HIS TESTIMONY YESTERDAY, IN HIS

09:01AM 7    TESTIMONY ON WEDNESDAY.  THAT IS AN INVITATION TO TURN TO THE

09:01AM 8    JURY AND TELL THEM WHAT THE LAW IS, AND THAT'S NOT PERMISSIBLE.

09:01AM 9    AND I THINK THE COURT COULD CURE THAT THIS MORNING.

09:01AM 10   I THINK THAT THAT'S EVERYTHING THAT I HAVE, YOUR HONOR,

09:01AM 11   EXCEPT FOR ONE MINOR POINT, AND THAT'S BACK ON THE EXPERT

09:01AM 12   TESTIMONY ISSUE.

09:01AM 13   AS I SAID, AS WE UNDERSTAND THE CASE LAW, AND IT SEEMS TO

09:01AM 14   ME THAT WE UNDERSTAND IT DIFFERENTLY THAN YOUR HONOR, AND

09:01AM 15   THAT'S OKAY.  AS YOU POINT OUT, WE'VE MADE OUR RECORD.

09:01AM 16   THERE'S NO CURE FROM GROUNDING SPECIALIZED REASONING AND

09:01AM 17   EXPERTISE IN WHAT YOU LEARNED ON THE JOB.  I THINK THAT'S WHAT

09:01AM 18   FIGUEROA-LOPEZ STANDS FOR.

09:01AM 19   BUT EVEN IF WE'RE TOTALLY OFF THE RESERVATION ON THAT

09:01AM 20   POINT, AND YOUR HONOR IS CORRECT, AND OBVIOUSLY YOU'RE THE

09:01AM 21   JUDGE SO IT'S GOING TO WORK OUT THAT WAY, I HAVE TO DRAW

09:01AM 22   ATTENTION TO WHAT WE QUOTED IN OUR BRIEF, THIS PASSAGE ON

09:02AM 23   PAGE 1663 TO 64 OF THE TRANSCRIPT WHERE DR. PANDORI IS OFFERED

09:02AM 24   THAT LIFELINE BY MR. BOSTIC, AND HE PUSHES IT AWAY.

09:02AM 25   HE SAYS, WAS THIS BASED ON THE SCOPE OF YOUR EMPLOYMENT,

1706

09:02AM  1    YOUR COMFORT RAISING THESE CONCERNS ABOUT PT?  AND DR. PANDORI

09:02AM  2    SAYS, I DON'T KNOW.  I DIDN'T REALLY KNOW WHAT THE SCOPE OF MY

09:02AM  3    EMPLOYMENT WAS, BUT I FELT COMFORTABLE DOING IT, QUOTE,

09:02AM  4    "BECAUSE I HAVE A LOT OF EXPERIENCE IN DIRECTING LABORATORY

09:02AM  5    ACTIVITIES AND LOOKING AT PT'S, AND I'M BOARD CERTIFIED AS A

09:02AM  6    HIGH COMPLEXITY LAB DIRECTOR, I FELT THAT I COULD CONTRIBUTE."

09:02AM  7        IN OTHER WORDS, WHAT HE SAID TO THE JURY, IN ESSENCE,

09:02AM  8    YOUR HONOR, WAS, NO, I'M NOT SURE THAT IT WAS WITHIN THE SCOPE

09:02AM  9    OF MY EMPLOYMENT, BUT I'M AN EXPERT, RIGHT?  I DON'T KNOW ANY

09:02AM 10    UNIVERSE IN WHICH THAT SORT OF TESTIMONY IS PERMISSIBLE EVEN

09:02AM 11    UNDER THE STANDARD THAT THE COURT SAYS.

09:02AM 12        THE COURT:  WHAT WAS THE QUESTION?  WHAT WAS THE

09:02AM 13    QUESTION?

09:02AM 14        MR. BRECHER:  THE QUESTION WAS WHETHER, IF I RECALL

09:02AM 15    CORRECTLY, IT WAS WHETHER DR. PANDORI FELT CONFIDENT IN

09:03AM 16    OFFERING HIS OPINIONS ON PROFICIENCY TESTING ON THOSE

09:03AM 17    REGULATIONS AND WHAT THEY REQUIRE, WHICH, AGAIN, NOT ONLY

09:03AM 18    RAISES 702 ISSUES, BUT ALSO -- AND MR. CAZARES RAISED THIS

09:03AM 19    OBJECTION IN THE MOMENT -- ALSO CALLS UPON DR. PANDORI TO OFFER

09:03AM 20    ANOTHER LEGAL CONCLUSION, THE SAME ISSUE THAT YOUR HONOR

09:03AM 21    SUGGESTED WAS SOMEWHAT TROUBLING.

09:03AM 22        THE COURT:  I RECALL THAT QUESTION ABOUT HIS DUTIES,

09:03AM 23    AND I'LL HAVE TO LOOK AT THE TRANSCRIPT AGAIN.

09:03AM 24      BUT, MR. BOSTIC, DO YOU HAVE THAT AT YOUR FINGERTIPS?

09:03AM 25        MR. BOSTIC:  YOUR HONOR, IF I REMEMBER THAT

09:03AM 1    CORRECTLY, THAT QUESTIONING WAS ABOUT ESSENTIALLY WHY

09:03AM 2    DR. PANDORI WAS PART OF THAT CONVERSATION WITH MR. BALWANI AND

09:03AM 3    OTHERS AT THERANOS.

09:03AM 4        SO THE QUESTION TO HIM WAS REALLY -- AND I'M SORRY, I

09:03AM 5    DON'T HAVE THE EXACT WORDING, BUT THE GIST OF THE QUESTION WAS,

09:03AM 6    WHY WERE YOU EXPRESSING YOUR VIEWS HERE?  WAS IT PART OF YOUR

09:03AM 7    JOB TO WEIGH IN ON THIS?  WHY WERE YOU PROVIDING YOUR OPINIONS

09:03AM 8    TO THE DEFENDANT ON THIS TOPIC.

09:04AM 9        AND SO THAT WAS HIS OPPORTUNITY TO EXPLAIN WHY HE DID WHAT

09:04AM 10   HE DID, WHY HE WAS OFFERING THAT INPUT TO MR. BALWANI AND

09:04AM 11   OTHERS AT THE COMPANY AT THE TIME.

09:04AM 12       I DISAGREE THAT THAT VEERS INTO EXPERT TESTIMONY OR THAT

09:04AM 13   THAT'S HIM BOLSTERING HIS EXPERT OPINIONS.

09:04AM 14           THE COURT:  MY RECOLLECTION OF THE QUESTION -- I'M

09:04AM 15   SORRY, I DON'T HAVE THE TRANSCRIPT IN FRONT OF ME NOW, BUT IT

09:04AM 16   WAS SOMETHING TO THAT VEIN DESCRIBING HIS JOB AND DID YOUR JOB

09:04AM 17   ENCOMPASS THE ABILITY TO OPINE AS TO MR. BALWANI'S

09:04AM 18   OBSERVATIONS, OR WHATEVER IT WAS.

09:04AM 19           MR. BRECHER:  YOUR HONOR, I HAPPEN TO HAVE THE

09:04AM 20   TESTIMONY IN FRONT OF ME.  IT'S DOCKET 1384-3 AT PAGE 1663.

09:04AM 21       AND MY OBJECTION IS NOT NECESSARILY TO THE QUESTION, IT'S

09:04AM 22   TO THE ANSWER THAT WAS GIVEN.

09:04AM 23       AND, IN FACT, ON THE HACKING POINT I'LL NOTE, IN FAIRNESS

09:04AM 24   TO MR. BOSTIC, I DON'T UNDERSTAND THE GOVERNMENT TO HAVE

09:04AM 25   ELICITED THAT DELIBERATELY.

09:04AM   1          THE COURT:  RIGHT.

09:04AM   2          MR. BRECHER:  BUT AS WE POINT OUT, THERE IS SOME

09:05AM   3   OBLIGATION TO INSTRUCT YOUR WITNESSES ABOUT THE COURT'S

09:05AM   4   RULINGS.

09:05AM   5          I APOLOGIZE, I THOUGHT YOU HAD A QUESTION.

09:05AM   6          ON PAGE 1663 THE QUESTION IS, FIRST OF ALL, AND I'M

09:05AM   7   LOOKING AT LINE 19, YOUR HONOR, FIRST OF ALL, AS LABORATORY

09:05AM   8   DIRECTOR AT THE TIME, DID YOU FEEL QUALIFIED TO GIVE YOUR INPUT

09:05AM   9   ON WHAT PROFICIENCY TESTING SHOULD LOOK LIKE AT THE LAB?

09:05AM  10          THE QUESTION DOES COUCH ITSELF IN TERMS OF HIS JOB

09:05AM  11   RESPONSIBILITIES, BUT IT ALSO ASKS WHETHER HE FEELS QUALIFIED.

09:05AM  12          BUT REGARDLESS, YOUR HONOR, ON WHETHER THE QUESTION ITSELF

09:05AM  13   WAS PERMISSIBLE, DR. PANDORI REJECTS THE PREMISE THAT IT WAS

09:05AM  14   HIS EMPLOYMENT THAT QUALIFIES HIM.

09:05AM  15          WHAT HE SAYS IS THAT IT'S MY BACKGROUND, IT'S THE OTHER

09:05AM  16   LABS THAT I'VE WORKED AT, IT'S MY EDUCATION, IT'S MY BOARD

09:05AM  17   CERTIFICATION.  THAT IS EXPERT TESTIMONY ON ANY DEFINITION OF

09:05AM  18   THE TERM.

09:05AM  19          I'LL JUST FLAG ON THAT ONE THERE WERE OBJECTIONS, SEVERAL

09:05AM  20   ACTUALLY, ON THAT PASSAGE.

09:05AM  21          BUT, AGAIN, EVEN IF THE COURT IS INCLINED NOT TO STRIKE

09:06AM  22   THE TESTIMONY FOR REASONS, WHETHER YOU DISAGREE SUBSTANTIVELY,

09:06AM  23   YOU DISAGREE PROCEDURALLY, OR YOU JUST THINK IT WOULD CREATE

09:06AM  24   CONFUSION, THERE ARE OTHER REMEDIES FOR THE COURT TO CONSIDER.

09:06AM  25          THE COURT:  THANK YOU.

09:06AM   1          MR. BRECHER:  THANK YOU, YOUR HONOR.

09:06AM   2          MR. BOSTIC:  YOUR HONOR, IF I COULD JUST BRIEFLY

09:06AM   3    RESPOND TO A COUPLE OF POINTS?

09:06AM   4          FIRST OF ALL, ON THE USE OF THE TERM "HACKED," I DISAGREE

09:06AM   5    THAT ANY CURATIVE INSTRUCTION IS NECESSARY, ESPECIALLY AT THIS

09:06AM   6    POINT.

09:06AM   7          THERE IS AN OPPORTUNITY ON CROSS-EXAMINATION FOR THE

09:06AM   8    DEFENSE TO CLARIFY WITH THIS WITNESS WHETHER THIS WITNESS IS

09:06AM   9    PASSING JUDGMENT ON OR CRITICIZING THERANOS'S USE OF MODIFIED

09:06AM  10    DEVICES.

09:06AM  11          I EXPECT THAT THE WITNESS WOULD SAY THAT HIS ONLY CONCERN

09:06AM  12    WAS WITH THE ACCURACY PROBLEMS THAT HE SAW AFTER THE FACT.

09:06AM  13          I DON'T UNDERSTAND THIS WITNESS TO BE SAYING THAT THERE

09:06AM  14    WAS SOMETHING WRONG PER SE WITH THE PRACTICE OF MAKING CHANGES

09:06AM  15    TO THOSE THIRD PARTY DEVICES.

09:06AM  16          I UNDERSTAND THE DEFENSE HAS PROVIDED THE COURT WITH A

09:06AM  17    DICTIONARY DEFINITION WITH THE TERM "HACKED."  I'LL POINT OUT

09:06AM  18    THAT IF A TERM LIKE "TAMPERED" IS FORBIDDEN AND THEN ALL

09:07AM  19    SYNONYMS OF THAT TERM ARE FORBIDDEN, IT BECOMES DIFFICULT TO

09:07AM  20    CONVEY THE IDEA IN THE FIRST PLACE.

09:07AM  21          I'M SURE I COULD FIND A THESAURUS WHERE TERMS LIKE

09:07AM  22    "ALTERED" AND "MODIFIED" ARE IN SIMILAR LISTS OF SYNONYMS FOR

09:07AM  23    TERMS LIKE "TAMPERED."

09:07AM  24          "HACKED" IS NOT NECESSARILY A PEJORATIVE TERM.  IN FACT,

09:07AM  25    MY UNDERSTANDING IS THAT IN THE TECHNICAL FIELD IT SOMETIMES IS

USED AS A COMPLIMENT.  IT'S A WAY TO FIND A CREATIVE SOLUTION
TO A PROBLEM.

SO I DON'T THINK THERE'S A SERIOUS CONCERN THAT THIS
WITNESS HAS BEEN SEEN TO CRITICIZE THAT PRACTICE EXCEPT FOR THE
ACCURACY PROBLEMS THAT IT PRODUCED, AND I THINK TO THE EXTENT
THAT THERE IS ANY LACK OF CLARITY, THAT CAN BE CLEARED UP ON
CROSS WITHOUT AN INSTRUCTION.

I THINK THE COURT IS RIGHT ON, ON THE ABILITY OF THESE
WITNESSES TO TESTIFY ABOUT WHAT THEY SAW AS OPERATORS OF THESE
DEVICES.

WHEN MS. CHEUNG, FOR EXAMPLE, TESTIFIED ABOUT HER CONCERNS
THAT SHE HAD AFTER SEEING QC PERFORMANCE, TO TAKE THE COURT'S
TOASTER ANALOGY, IF SOMEONE SAID EVERY TIME I PLUG IN MY
TOASTER IT SPARKS AND BURSTS INTO FLAMES, THAT MAKES ME WORRIED
THAT I AM NOT GOING TO BE ABLE TO MAKE TOAST FOR MY BREAKFAST
TOMORROW MORNING.

THAT'S THE SAME THING MS. CHEUNG WAS SAYING, WHENEVER THE
DEVICE WAS CHECKED IN THE QC STEP, SHE SAW PROBLEMS, THAT
RAISED CONCERNS FOR HER THAT THE DEVICE WAS NOT UP TO THE TASK
THAT IT WAS CREATED TO DO, WHICH WAS PROVIDE ACCURATE RESULTS
FOR PATIENT TESTING.

YOU DON'T NEED THE PERSON WHO DESIGNED THE MACHINE OR AN
EXPERT TO TESTIFY ABOUT THAT IN THE SAME WAY THAT YOU WOULDN'T
NEED SOMEONE TO TESTIFY ABOUT PROBLEMS WITH THE TOASTER.

FINALLY, WHEN WITNESSES LIKE THESE COUCH THEIR TESTIMONY

09:08AM 1     IN TERMS OF WHAT THEY LEARNED ON THE JOB, WHAT THEY SAW ON THE

09:08AM 2     JOB, THAT DOES ADDRESS THE DEFENSE'S CONCERNS, OR IT SHOULD,

09:08AM 3     BECAUSE THIS IS ALL ABOUT THE DEFENDANT'S STATE OF MIND AND HIS

09:09AM 4     INTENT, HIS KNOWLEDGE, AND SO THE PRACTICES AT THERANOS, THE

09:09AM 5     WAY TERMS WERE USED AT THERANOS, THE THINGS SEEN AT THERANOS,

09:09AM 6     ALL AT THE DEFENDANT'S COMPANY, ARE ALL RELEVANT TO WHAT HE WAS

09:09AM 7     AWARE OF, WHAT HE UNDERSTOOD, AND THEN WHAT HE INTENDED IN THE

09:09AM 8     DECISIONS THAT HE MADE.  SO THAT INFORMATION IS CERTAINLY

09:09AM 9     RELEVANT.

09:09AM 10          DEPRIVING THE JURY OF THAT WOULD HAVE THESE WITNESSES

09:09AM 11    SIMPLY SAY, I WORKED AT THERANOS FOR A TIME, AND THEN I SUPPOSE

09:09AM 12    THEY WOULD NEED TO SKIP TO I RAISED CONCERNS TO MANAGEMENT AND

09:09AM 13    THEN I LEFT.  THEY WOULDN'T BE ABLE TO EXPLAIN THAT CRITICAL

09:09AM 14    INTERVENING STEP THAT CAUSED THEM TO TAKE THOSE LATER STEPS AND

09:09AM 15    GIVE NOTICE TO THE DEFENDANT AND OTHERS.

09:09AM 16          SO FOR THOSE REASONS, THE GOVERNMENT OPPOSES THE MOTION.

09:09AM 17               THE COURT:  THANK YOU.

09:09AM 18               MR. BRECHER:  THANK YOU, YOUR HONOR.

09:09AM 19          JUST BRIEFLY.

09:09AM 20          FIRST OF ALL, I DO THINK THERE'S A MEANINGFUL DIFFERENCE

09:09AM 21    BETWEEN THE WORD "HACKED" AND THE WORD "MODIFIED," AND I WOULD

09:09AM 22    URGE THE COURT TO LOOK AT AGAIN 1326 AND THE PORTIONS OF 798

09:10AM 23    THAT IT ADOPTS BECAUSE WHAT DR. PANDORI SUBJECTIVELY MEANT OR

09:10AM 24    DIDN'T MEAN IS NOT WHAT THAT ORDER TURNS ON, AT LEAST AS I

09:10AM 25    UNDERSTAND IT.

09:10AM  1        BUT SECOND, AS TO THE PARADE OF HORRIBLES THAT MR. BOSTIC

09:10AM  2   OFFERED UP AT THE END ABOUT WHAT WITNESSES WOULDN'T BE ALLOWED

09:10AM  3   TO SAY, ALL I CAN DO IS I ASK THE COURT TO REVIEW THE

09:10AM  4   TRANSCRIPT OF THIS ARGUMENT AND THE PLEADINGS AND ASK IF I'VE

09:10AM  5   EVER HINTED AT ANYTHING LIKE THAT SORT OF WATERED DOWN

09:10AM  6   TESTIMONY.

09:10AM  7        THEY CAN TALK ABOUT PROBLEMS.  THEY CAN TALK ABOUT THINGS

09:10AM  8   NOT WORKING THE WAY THEY WERE SUPPOSED TO.

09:10AM  9        IT'S MAKING THAT INFERENTIAL LEAP FROM I DREW A

09:10AM 10   CONCLUSION, AND THIS IS MY CONCLUSION.  THAT'S VERY, VERY

09:10AM 11   DIFFICULT WHEN THAT LEAP REQUIRES DEMONSTRABLE EXPERTISE, AND

09:10AM 12   WE THINK IN THE INSTANCES THAT WE'VE FLAGGED THAT IT DOES.

09:10AM 13             THE COURT:  ALL RIGHT.  WELL, THANK YOU.  THANK YOU

09:10AM 14   VERY MUCH.

09:10AM 15        ANYTHING FURTHER?

09:10AM 16             MR. BOSTIC:  SUBMIT IT, YOUR HONOR.

09:10AM 17             MR. BRECHER:  THANK YOU, YOUR HONOR.  NOTHING

09:10AM 18   FURTHER.

09:10AM 19             THE COURT:  THANK YOU.

09:10AM 20        THE MOTION TO STRIKE, I'M NOT GOING TO STRIKE THE

09:11AM 21   TESTIMONY THAT YOU DESCRIBED.  I RESPECTFULLY DECLINE YOUR

09:11AM 22   INVITATION TO DO SO FOR THE REASONS STATED ON THE RECORD.  I

09:11AM 23   DON'T BELIEVE THAT IT HAS RISEN TO A 702 TYPE OF TESTIMONY THAT

09:11AM 24   REQUIRES THAT.

09:11AM 25        AS TO WHETHER OR NOT THE COURT SHOULD ADVISE THE JURY OF

09:11AM 1   ANY SPECIAL INSTRUCTION REGARDING THE CIVIL REGULATIONS AND

09:11AM 2   THAT, I'M NOT GOING TO DO THAT NOW.

09:11AM 3       I EXPECT THAT THERE WILL BE A FINAL INSTRUCTION THAT -- IN

09:11AM 4   THE FINAL INSTRUCTIONS THAT WILL TOUCH ON THAT, BUT I'M GOING

09:11AM 5   TO RESERVE THAT AND INDICATE THAT SHOULD THAT ISSUE COME UP, I

09:11AM 6   MAY VERY WELL USE THAT AS A REMEDY TO INFORM THE JURY ABOUT

09:11AM 7   WHAT THEY SHOULD DO AND HOW THEY SHOULD TREAT THAT TYPE OF

09:11AM 8   TESTIMONY.  SO I SUPPOSE THERE'S A RESERVATION ON THAT, AND

09:11AM 9   WE'LL JUST SEE WHERE THAT DEVELOPS.

09:12AM 10      AS TO THIS TERM "HACKED" MY SENSE IS THAT YOUR COLLEAGUES,

09:12AM 11  OR YOU, IF YOU CROSS-EXAMINE, WILL HAVE THE OPPORTUNITY TO

09:12AM 12  CLEAR THAT UP AND ASK QUESTIONS IF YOU WISH.  MAYBE YOU DON'T.

09:12AM 13  BUT THAT'S WHAT CROSS-EXAMINATION IS FOR.

09:12AM 14      THE OTHER THING I NOTED IN THESE TYPES OF CASES, SOMETIMES

09:12AM 15  RAISING THE ISSUE AGAIN UNNECESSARILY RAISES IT AND DRAWS

09:12AM 16  ATTENTION TO IT FOR THE JURY, PARTICULARLY IN SCIENTIFIC CASES

09:12AM 17  WHERE SOME OF THIS HAS BEEN, AND I'M NOT OFFERING ANY CRITIQUE

09:12AM 18  OR OBSERVATION OF THE PERFORMANCE OF THE ATTORNEYS, BUT RATHER

09:12AM 19  JUST THE MATERIAL, IT CAN BE DRY.  AND FOR LAY JURORS, THE

09:12AM 20  TESTIMONY IS SOMETIMES -- THE INFORMATION RATHER IS SOMETIMES

09:12AM 21  DRY AND DOESN'T HAVE THE SAME MEANING.  AND IF YOU WANT TO BEAT

09:12AM 22  THE DRUM AND CALL THEIR ATTENTION TO IT AGAIN, YOU CAN DO THAT.

09:12AM 23  THAT'S WHAT CLOSING ARGUMENTS ARE FOR I SUPPOSE.

09:13AM 24      SO I'M NOT GOING TO TAKE ANY REMEDIAL ACTION AT THIS

09:13AM 25  POINT.  I'M GOING TO RESERVE THE OPPORTUNITY TO DO THAT.  I'LL

09:13AM  1    SEE WHAT CROSS-EXAMINATION DOES AS WE GO FORWARD.

09:13AM  2         ALL RIGHT.  IT'S ABOUT A QUARTER AFTER THE HOUR NOW.

09:13AM  3         PLEASE RECALL THAT REGRETTABLY WE HAVE TO TAKE A BREAK AT

09:13AM  4    10:30 TODAY, AND IT WILL PROBABLY BE ABOUT AN HOUR, AN HOUR

09:13AM  5    BREAK, AND WE'LL COME BACK AS CLOSE TO 11:30 AS WE CAN, AND

09:13AM  6    THEN WE'LL FINISH, FINISH THE DAY AT 3:00.  I THINK I TOLD THEM

09:13AM  7    3:00 TODAY.

09:13AM  8         I BELIEVE WE ONLY HAVE TWO DAYS NEXT WEEK IF I'M NOT

09:13AM  9    MISTAKEN, TWO DAYS OF TESTIMONY NEXT WEEK, AND THEN THE

09:13AM  10   FOLLOWING WEEK WE'LL START A REAL TRIAL SCHEDULE HOPEFULLY.  SO

09:13AM  11   THANK YOU FOR YOUR PATIENCE.

09:13AM  12        MR. BOSTIC:  THANK YOU, YOUR HONOR.

09:13AM  13        MR. BRECHER:  THANK YOU, YOUR HONOR.

09:13AM  14        (RECESS FROM 9:13 A.M. UNTIL 9:21 A.M.)

09:21AM  15        (JURY IN AT 9:21 A.M.)

09:21AM  16        THE COURT:  THANK YOU.  GOOD MORNING.

09:21AM  17        WE'RE BACK ON THE RECORD.  OUR JURY IS PRESENT.

09:21AM  18        ALL COUNSEL IS PRESENT, AND THE DEFENDANT IS PRESENT.

09:21AM  19        LADIES AND GENTLEMEN, IT'S NICE TO SEE YOU.  I HAD TO

09:21AM  20   SPEND SOME TIME WITH THESE LAWYERS TO GET THEIR HELP ON

09:21AM  21   SOMETHING THIS MORNING, SO I APOLOGIZE FOR THE DELAY.

09:21AM  22        BEFORE WE BEGIN, THOUGH, LET ME ASK YOU THAT QUESTION.

09:21AM  23   DURING OUR BREAK HAVE ANY OF YOU -- DID ANY OF YOU HAVE CAUSE

09:21AM  24   TO READ, DISCUSS, OR LEARN ANYTHING ABOUT THIS CASE OUTSIDE OF

09:21AM  25   THIS COURTROOM?

09:21AM 1    IF SO, WOULD YOU PLEASE RAISE YOUR HAND NOW.

09:21AM 2    I SEE NO HANDS.  THANK YOU.

09:21AM 3    LADIES AND GENTLEMEN, I DO WANT TO TELL YOU ONE OTHER

09:21AM 4  THING BEFORE WE START TODAY.  THIS MORNING I'VE DISCUSSED

09:21AM 5  THINGS WITH THE LAWYERS, AND WE ALL AGREE THAT WE WILL BE IN

09:21AM 6  SESSION ON SATURDAY AND SUNDAY, SO I JUST WANT YOU TO KNOW

09:22AM 7  THAT.

09:22AM 8    (LAUGHTER.)

09:22AM 9    THE COURT:  OKAY.  EVERYBODY KNOWS IT'S APRIL 1ST,

09:22AM 10 DON'T THEY?  OKAY.  THANK YOU VERY MUCH.

09:22AM 11   ALL RIGHT.  WE'RE NOT GOING TO BE IN SESSION SATURDAY AND

09:22AM 12 SUNDAY.

09:22AM 13   (LAUGHTER.)

09:22AM 14   THE COURT:  WE'LL BE IN SESSION TODAY.  I JUST WANT

09:22AM 15 TO REMIND YOU OF OUR SCHEDULE.  WE WILL HAVE TO BREAK AT 10:30,

09:22AM 16 AND WE'LL BREAK FOR ABOUT AN HOUR, I THINK, AND THEN WE'LL

09:22AM 17 CONTINUE THROUGH THE AFTERNOON, AND HOPEFULLY WE CAN BREAK

09:22AM 18 AROUND 3:00 O'CLOCK.

09:22AM 19   NEXT WEEK I BELIEVE WE'RE ONLY IN SESSION TWO DAYS.

09:22AM 20   IS THAT RIGHT, COUNSEL?  I THINK IT'S TWO DAYS NEXT WEEK.

09:22AM 21   MR. SCHENK:  YES, YOUR HONOR.

09:22AM 22   THE COURT:  RIGHT.  AND THEN THE WEEK FOLLOWING,

09:22AM 23 HOPEFULLY WE CAN START ON A MORE NORMAL THREE DAY SCHEDULE.

09:22AM 24   I'VE ASKED YOU TO LOOK AT YOUR SCHEDULES AND TO SEE IF WE

09:22AM 25 MIGHT EXTEND UNTIL 4:00 O'CLOCK SO WE CAN TRY TO CAPTURE AS

09:22AM    1    MUCH TIME AS WE CAN.  WE'LL TALK ABOUT THAT NEXT WEEK.

09:22AM    2         ALL RIGHT.  THANK YOU VERY MUCH.

09:22AM    3         DO WE HAVE THE WITNESS BACK?

09:22AM    4              MR. BOSTIC:  YES, YOUR HONOR.

09:22AM    5              THE COURT:  OKAY.  THANK YOU.

09:22AM    6         IF WE CAN CALL DR. PANDORI.

09:23AM    7         GOOD MORNING, SIR.  GO AHEAD AND TAKE THE STAND AGAIN IF

09:23AM    8    YOU WOULD, SIR.  MAKE YOURSELF COMFORTABLE AGAIN.

09:23AM    9         WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR NAME

09:23AM   10    AGAIN, PLEASE.

09:23AM   11              THE WITNESS:  MARK PANDORI.

09:23AM   12              THE COURT:  THANK YOU.  COUNSEL.

09:23AM   13         **(GOVERNMENT'S WITNESS, MARK PANDORI, WAS PREVIOUSLY**

09:23AM   14    **SWORN.)**

09:23AM   15                   **DIRECT EXAMINATION (RESUMED)**

09:23AM   16    BY MR. BOSTIC:

09:23AM   17    Q.   GOOD MORNING, DR. PANDORI.

09:23AM   18    A.   GOOD MORNING.

09:23AM   19    Q.   YESTERDAY WE SPENT A LITTLE TIME DISCUSSING A MEETING THAT

09:23AM   20    YOU HAD WITH MR. BALWANI ABOUT WHETHER THE EDISON SHOULD

09:23AM   21    CONTINUE TO BE USED AT THERANOS.

09:23AM   22         DO YOU RECALL THAT?

09:23AM   23    A.   YES.

09:23AM   24    Q.   CAN YOU HELP US PLACE THAT MEETING IN TIME?  APPROXIMATELY

09:23AM   25    WHEN WAS THAT IF YOU REMEMBER?

09:24AM  1    A.   I HAVE DIFFICULTY PLACING THAT MEETING IN TIME.

09:24AM  2    Q.   WAS --

09:24AM  3    A.   IT WAS -- I'M SORRY TO INTERRUPT YOU.

09:24AM  4         IT WAS LIKELY MARCH OR APRIL.

09:24AM  5    Q.   YOU LEFT THE COMPANY IN MAY OF 2014; IS THAT RIGHT?

09:24AM  6    A.   CORRECT.

09:24AM  7    Q.   AND DO YOU REMEMBER WHETHER THIS WAS THE WEEK BEFORE YOU

09:24AM  8    LEFT OR SOME TIME EARLIER THAN THAT?

09:24AM  9    A.   SOME TIME EARLIER THAN THAT.

09:24AM  10   Q.   YOU TESTIFIED BEFORE THAT YOU HAD EXPRESSED THE VIEW THAT

09:24AM  11   MAYBE THE EDISON SHOULDN'T BE USED AT ALL AT THERANOS, AT LEAST

09:24AM  12   TEMPORARILY; IS THAT RIGHT?

09:24AM  13   A.   I EXPRESSED THAT VIEW.

09:24AM  14   Q.   AND HAD YOU EXPRESSED THAT VIEW TO MR. BALWANI DIRECTLY

09:24AM  15   BEFORE THE MEETING THAT WE TALKED ABOUT?

09:24AM  16   A.   NO.

09:24AM  17   Q.   DO YOU UNDERSTAND THAT YOUR COMMENT HAD GOTTEN BACK TO

09:24AM  18   MR. BALWANI?

09:24AM  19   A.   IT WAS MY ASSESSMENT THAT IT HAD OR GUESS THAT IT HAD.

09:25AM  20   Q.   AND WHAT MADE YOU THINK THAT?

09:25AM  21   A.   BECAUSE HE CAME --

09:25AM  22        MR. CAZARES:  OBJECTION.  HEARSAY.  ALSO FOUNDATION.

09:25AM  23        THE COURT:  OVERRULED.

09:25AM  24   YOU CAN FINISH YOUR ANSWER.

09:25AM  25        THE WITNESS:  HE CAME, HE CAME TO EXPRESS SOME

09:25AM  1    DISAGREEMENT WITH ME ON THAT TOPIC.

09:25AM  2    BY MR. BOSTIC:

09:25AM  3    Q.   TELL US ABOUT THE CIRCUMSTANCES OF THAT?  WHAT DO YOU

09:25AM  4    REMEMBER ABOUT THAT ENCOUNTER?

09:25AM  5    A.   WELL, I'M IN MY OFFICE, IT WAS AFTER 5:00 P.M., AND HE

09:25AM  6    CAME -- WE DIDN'T HAVE A SCHEDULED MEETING, BUT HE CAME WITH

09:25AM  7    TWO ADDITIONAL, TWO MEMBERS OF THE PRODUCT MANAGEMENT TEAM, AND

09:25AM  8    CAME TO MY OFFICE, AND I WAS SITTING AT MY DESK, AND HE LET ME

09:25AM  9    HAVE IT.

09:25AM  10   Q.   WHEN YOU SAY HE LET YOU HAVE IT, WHAT DOES THAT MEAN?

09:26AM  11   A.   HE WAS UPSET.  AND I DON'T REMEMBER THE DETAILS OR THE

09:26AM  12   EXACT WORDS OF THE CONVERSATION AT THIS POINT, BUT I REMEMBER

09:26AM  13   THE SUBSTANCE OF IT WAS THAT HE -- THAT I WASN'T -- MAYBE I WAS

09:26AM  14   MAKING DECISIONS OR DRAWING CONCLUSIONS THAT I WASN'T

09:26AM  15   PREPARED -- OR I WASN'T IN A POSITION TO BE MAKING.

09:26AM  16   Q.   DURING THAT CONVERSATION, DID HE ASK YOU ANY QUESTIONS

09:26AM  17   ABOUT WHY YOU HAD SAID WHAT YOU HAD SAID?

09:26AM  18   A.   THAT'S NOT MY RECOLLECTION.

09:26AM  19   Q.   DID HE SEEM INTERESTED IN UNDERSTANDING YOUR CONCERNS

09:26AM  20   ABOUT THE EDISON DEVICE?

09:26AM  21   A.   IN THE CONTEXT OF THAT CONVERSATION?

09:26AM  22   Q.   YES.

09:26AM  23   A.   NO.  NO.

09:26AM  24   Q.   THE TWO OTHER PEOPLE THAT HE BROUGHT, WERE THOSE

09:26AM  25   INDIVIDUALS AT THERANOS WHO YOU HAD PREVIOUSLY BEEN INVOLVED

09:26AM 1     WITH IN CONVERSATIONS ABOUT ISSUES WITH EDISONS?

09:26AM 2     A.   NO.

09:26AM 3     Q.   DO YOU REMEMBER THEM SAYING ANYTHING DURING THAT

09:26AM 4     CONVERSATION?

09:26AM 5     A.   NO.

09:26AM 6     Q.   WERE YOU SURPRISED BY MR. BALWANI'S NEGATIVE REACTION TO

09:27AM 7     YOUR VIEW ABOUT THE EDISON?

09:27AM 8              MR. CAZARES:  OBJECTION.  LEADING.

09:27AM 9              THE COURT:  I'M SORRY?

09:27AM 10             MR. CAZARES:  LEADING.

09:27AM 11             THE COURT:  I DIDN'T HEAR YOU BECAUSE YOU WEREN'T

09:27AM 12    STANDING.

09:27AM 13             MR. CAZARES:  OBJECTION.  LEADING.  SORRY,

09:27AM 14    YOUR HONOR.

09:27AM 15             THE COURT:  OVERRULED.

09:27AM 16    BY MR. BOSTIC:

09:27AM 17    Q.   WOULD YOU LIKE THE QUESTION AGAIN, DR. PANDORI?

09:27AM 18    A.   NO, I WASN'T SURPRISED.

09:27AM 19    Q.   WHY WEREN'T YOU SURPRISED?

09:27AM 20    A.   BECAUSE IT WAS -- IT FELT LIKE THE KIND OF ANSWER -- THE

09:27AM 21    KIND OF SITUATION THAT WE WERE IN, HE WAS FERVENT ABOUT

09:27AM 22    EVERYTHING AND WAS A STAUNCHED DEFENDER OF WHAT WAS GOING ON

09:27AM 23    THERE, AND SUPPORTER, AND I THINK HE REALLY WAS A PROPONENT FOR

09:27AM 24    USING THAT TECHNOLOGY.

09:27AM 25    Q.   AND WHEN YOU SAY THAT THAT WAS YOUR IMPRESSION OF HIS

09:27AM  1     VIEW, HOW HAD THAT MANIFESTED IN THE PAST IN YOUR EXPERIENCE?

09:27AM  2     A.   CAN YOU RESTATE THE QUESTION.

09:27AM  3     Q.   SURE.

09:27AM  4          WHAT MAKES YOU SAY THAT THAT WAS MR. BALWANI'S VIEW?  WHAT

09:27AM  5     HAD YOU OBSERVED THAT HAD LEFT YOU WITH THAT IMPRESSION?

09:28AM  6     A.   WELL, IN SITUATIONS WHERE THERE WAS REASON TO BELIEVE THAT

09:28AM  7     THE EDISONS DIDN'T WORK PROPERLY, HE ALWAYS SIDED AND CAME TO

09:28AM  8     THEIR DEFENSE OR QUESTIONED OTHER PEOPLE'S ASSESSMENTS OF THAT.

09:28AM  9     Q.   I'D LIKE TO TALK ABOUT THE WAY THAT INFORMATION MOVED

09:28AM 10     AROUND THERANOS.

09:28AM 11          FIRST, CAN I ASK YOU TO TURN TO TAB 1620 IN THE BINDER IN

09:28AM 12     FRONT OF YOU?

09:28AM 13     A.   YES.

09:28AM 14     Q.   LET ME ASK YOU, BEFORE WE GET TO THAT DOCUMENT, YOU WERE

09:28AM 15     TALKING ABOUT MR. BALWANI'S APPROACH TO SITUATIONS WHERE THE

09:28AM 16     EDISON WAS QUESTIONED.

09:28AM 17          LET ME ASK, DID MR. BALWANI ENCOURAGE COMMUNICATION

09:28AM 18     BETWEEN PEOPLE AT THERANOS ABOUT ISSUES WITH THE ANALYZER?

09:29AM 19     A.   THE OPPOSITE.  WE WERE JUST -- PEOPLE IN THE COMPANY WERE

09:29AM 20     SOMEWHAT DISCOURAGED FROM COMMUNICATING WITH ONE ANOTHER ON

09:29AM 21     VARIOUS TOPICS.

09:29AM 22     Q.   LOOKING AT THE DOCUMENT IN FRONT OF YOU AT TAB 1620.

09:29AM 23          DO YOU HAVE THAT?

09:29AM 24     A.   YES.

09:29AM 25     Q.   AND DO YOU SEE IN FRONT OF YOU AN EMAIL CHAIN INCLUDING

PANDORI DIRECT BY MR. BOSTIC (RES.)

09:29AM   1    MR. BALWANI RELATING TO THIS ISSUE OF COMMUNICATION BETWEEN

09:29AM   2    INDIVIDUALS AT THERANOS?

09:29AM   3    A.   I'D HAVE TO TAKE A FEW SECONDS TO LOOK AT THIS.

09:29AM   4    Q.   THAT'S FINE.

09:29AM   5         (PAUSE IN PROCEEDINGS.)

09:30AM   6            THE WITNESS:  YEAH, I REMEMBER THIS.

09:30AM   7    BY MR. BOSTIC:

09:30AM   8    Q.   OKAY.  AND DO YOU SEE THAT THIS IS AN EMAIL INCLUDING

09:30AM   9    MR. BALWANI?

09:30AM   10   A.   EXCUSE ME?

09:30AM   11   Q.   DO YOU SEE THAT THIS IS AN EMAIL CHAIN INCLUDING

09:30AM   12   MR. BALWANI?

09:30AM   13   A.   YES.

09:30AM   14            MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 1620.

09:30AM   15            MR. CAZARES:  OBJECTION.  HEARSAY, LACK OF

09:30AM   16   FOUNDATION.  THIS WITNESS IS NOT ON THE EMAIL.

09:30AM   17            MR. BOSTIC:  THIS IS UNDER 801(B)(2), YOUR HONOR.

09:30AM   18            THE COURT:  DO YOU WANT TO -- THIS IS FROM

09:30AM   19   MR. BALWANI?

09:30AM   20            MR. BOSTIC:  YES, YOUR HONOR.

09:30AM   21            THE COURT:  OVERRULED.

09:30AM   22            MR. BOSTIC:  MAY WE PUBLISH?

09:30AM   23            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:30AM   24        (GOVERNMENT'S EXHIBIT 1620 WAS RECEIVED IN EVIDENCE.)

09:30AM   25   BY MR. BOSTIC:

09:30AM  1    Q.   LET'S START WITH PAGE 2 OF THIS EXHIBIT.

09:30AM  2         IF WE CAN ZOOM IN ON THE MIDDLE OF THE PAGE TO CAPTURE THE

09:30AM  3    FIRST PART OF THE ORIGINAL EMAIL.

09:30AM  4         ACTUALLY, LET'S GO ONE DOWN FROM THERE.

09:30AM  5         DR. PANDORI, DO YOU SEE THAT THIS EMAIL CHAIN BEGINS WITH

09:31AM  6    AN EMAIL FROM KIMBERLY ALFONSO AT THERANOS?

09:31AM  7    A.   WELL, THAT PART IS CUT OFF, WHAT YOU'VE HIGHLIGHTED.  BUT,

09:31AM  8    YES, I SEE THAT NOW.

09:31AM  9    Q.   OKAY.  THANK YOU.

09:31AM  10        DO YOU REMEMBER WHO MS. ALFONSO WAS?

09:31AM  11   A.   NO.

09:31AM  12   Q.   OKAY.  DO YOU SEE THAT SHE SENDS THIS EMAIL TO

09:31AM  13   SUNNY BALWANI?

09:31AM  14   A.   YEAH.

09:31AM  15   Q.   AND SHE SAYS, "PLEASE SEE BELOW FOR THIS WEEK'S UPDATES.

09:31AM  16   LET ME KNOW IF YOU'D LIKE TO DISCUSS CONCERNS LIVE AND PLEASE

09:31AM  17   ADVISE ON NEEDS."

09:31AM  18        DO YOU SEE THAT?

09:31AM  19   A.   YES.

09:31AM  20   Q.   AND LET'S CONTINUE TO THE FOLLOWING EMAIL FROM HER, AND

09:31AM  21   LET'S LOOK AT PAGE 3 AND ZOOM IN ON THE TOP.

09:31AM  22        DR. PANDORI, DO YOU SEE IN HER EMAIL TO MR. BALWANI

09:31AM  23   THERE'S A SECTION ENTITLED CONCERNS?

09:31AM  24   A.   I SEE THAT.

09:31AM  25   Q.   AND ONE OF THE BULLET POINTS SAYS, "TURN-AROUND TIMES

09:31AM  1    HIGH, MEETING WITH TRACY, ALLISON, AND MARK PANDORI."

09:31AM  2        DO YOU SEE THAT?

09:31AM  3    A.   YES.

09:31AM  4    Q.   AND THEN THE BULLET POINT UNDERNEATH THAT SAYS, "MARK

09:32AM  5    EXTREMELY CONCERNED WITH VOLUME GENERATED BY SALES REPS."

09:32AM  6    A.   YES.

09:32AM  7    Q.   AROUND THIS TIME PERIOD, DO YOU RECALL HAVING CONCERNS

09:32AM  8    ABOUT TURN-AROUND TIMES AND VOLUME?

09:32AM  9    A.   YES.

09:32AM  10   Q.   AND WHY WERE YOU CONCERNED ABOUT THAT?

09:32AM  11   A.   OUR TURN-AROUND TIMES WERE LONG.  THE FAILURE -- THE

09:32AM  12   INSTRUMENTS FAILED A LOT, THE EDISONS ACTUALLY FAILED A LOT,

09:32AM  13   WHICH MEANT THAT THERE WERE A LOT OF RERUNS, WHICH MEANT THAT

09:32AM  14   THERE WERE EXTENDED TURN-AROUND TIMES, WHICH IS TO SAY THAT IT

09:32AM  15   WOULD TAKE A LONG PERIOD OF TIME FOR US TO GET A RESULT BACK

09:32AM  16   OUT TO A CLINICIAN OR A PATIENT.

09:32AM  17       AND SO BECAUSE EVEN A FEW SPECIMENS COMING IN WERE MEETING

09:32AM  18   THAT TROUBLE.  IF MORE WERE TO COME IN, THAT TROUBLE WOULD BE

09:32AM  19   COMPOUNDED.

09:32AM  20   Q.   LET'S ZOOM OUT.  AND IF WE COULD LOOK AT THE BOTTOM OF

09:32AM  21   THIS EMAIL AND SEE MS. ALFONSO'S EMAIL SIGNATURE.

09:33AM  22       DO YOU SEE THAT INDICATES THAT SHE'S THE GENERAL MANAGER,

09:33AM  23   SALES AND BUSINESS DEVELOPMENT?

09:33AM  24   A.   I SEE THAT.

09:33AM  25   Q.   OKAY.  LET'S GO TO PAGE 1 OF THIS EXHIBIT AND ZOOM IN ON

09:33AM   1    THE BOTTOM HALF OF THE PAGE.

09:33AM   2         IN THAT SELECTION, DR. PANDORI, DO YOU SEE AN EMAIL FROM

09:33AM   3    MR. BALWANI ON MARCH 17TH RESPONDING TO THIS TOPIC?

09:33AM   4    A.   I SEE IT, YES.

09:33AM   5    Q.   AND HE SAYS, "START WITH ALLISON DIRECTLY.  THIS SHOULD

09:33AM   6    HAVE NEVER HAPPENED.  SHE SHOULD HAVE RECEIVED CLEAR GOALS AND

09:33AM   7    INSTRUCTIONS AND HER INTERFACING WITH LAB -- LET ALONE

09:33AM   8    ORGANIZING OTHER MEETINGS WITH LAB IS NOWHERE ON HER AGENDA."

09:33AM   9         DO YOU SEE THAT?

09:33AM  10    A.   YES.  YES.

09:33AM  11    Q.   LET'S GO UP TO THE TOP OF THIS PAGE AND SEE ANOTHER

09:33AM  12    SIMILAR EMAIL FROM MR. BALWANI.

09:34AM  13         AND DO YOU SEE THERE AT THE TOP OF THE PAGE MR. BALWANI

09:34AM  14    WRITES AGAIN AND SAYS, "I SPOKE WITH TRACY AND COMMUNICATED

09:34AM  15    THIS TO HER CLEARLY THAT THIS CANNOT HAPPEN AGAIN.  SHE

09:34AM  16    UNDERSTANDS."

09:34AM  17         DO YOU SEE THAT?

09:34AM  18    A.   YES.

09:34AM  19    Q.   AROUND THIS TIME -- SO WE'RE IN MARCH OF 2014.  WHAT WAS

09:34AM  20    THE POLICY AT THERANOS IN CONNECTION WITH PEOPLE FROM DIFFERENT

09:34AM  21    DEPARTMENTS SPEAKING TO EACH OTHER ABOUT THESE TOPICS?

09:34AM  22    A.   IT WAS MY UNDERSTANDING THAT THAT WAS DISCOURAGED.  THEY

09:34AM  23    WANTED ALL INFORMATION TO GO THROUGH A PROCESS THAT WENT UP

09:34AM  24    THROUGH MANAGEMENT.

09:34AM  25    Q.   AND WHERE DID THAT UNDERSTANDING COME FROM?

09:34AM   1    A.   WELL, TALKING TO OTHER PEOPLE IN THE COMPANY.

09:34AM   2    Q.   AND WHAT WAS YOUR UNDERSTANDING AS TO WHERE THAT DIRECTION

09:34AM   3    WAS COMING FROM?  WHOSE PREFERENCE WAS IT THAT --

09:34AM   4    A.   MY UNDERSTANDING WAS THAT THAT CAME FROM SUNNY.

09:34AM   5    Q.   I'LL ASK YOU TO LOOK NEXT AT TAB 5770, PLEASE.

09:35AM   6    A.   I SEE IT.

09:35AM   7    Q.   OKAY.  AND IS 5770 AN EMAIL BETWEEN YOU AND DR. ROSENDORFF

09:35AM   8    AGAIN RELATING TO INFORMATION FLOW INTERNALLY AT THERANOS?

09:35AM   9    A.   YES.

09:35AM  10         MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5770.

09:35AM  11         MR. CAZARES:  NO OBJECTION.

09:35AM  12         THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:35AM  13         (GOVERNMENT'S EXHIBIT 5770 WAS RECEIVED IN EVIDENCE.)

09:35AM  14    BY MR. BOSTIC:

09:35AM  15    Q.   SO, DR. PANDORI, THE INITIAL EMAIL ON THIS CHAIN IS FROM

09:35AM  16    ERIKA CHEUNG TO YOU AND THE SUBJECT IS QUICK QUESTION.

09:35AM  17         DO YOU SEE THAT?

09:35AM  18    A.   YES.

09:35AM  19    Q.   AND MS. CHEUNG TALKS ABOUT GOING TO A NORMANDY MEETING

09:35AM  20    THAT DAY, AND SHE SAYS THAT NOTICED THAT SOMEONE NAMED NISHIT

09:35AM  21    WAS REALLY OUT OF TOUCH WITH SOME OF THE ISSUES GOING ON IN

09:36AM  22    CLIA AND ELISA.

09:36AM  23         THEN SHE ASKED, "AM I ALLOWED TO DISCLOSE INFORMATION

09:36AM  24    ABOUT OUR PT TESTING AND ISSUES DOWNSTAIRS TO HIM?"

09:36AM  25         DO YOU SEE THAT?

09:36AM 1      A.   I SEE THAT.

09:36AM 2      Q.   AND YOU THEN FORWARDED THAT QUESTION TO DR. ROSENDORFF;

09:36AM 3      CORRECT?

09:36AM 4      A.   CORRECT.

09:36AM 5      Q.   AND YOU SAY IN YOUR EMAIL TO DR. ROSENDORFF THAT

09:36AM 6      MS. CHEUNG'S QUESTION BELOW MAY SPARK A SMALL DISCUSSION

09:36AM 7      BETWEEN US?

09:36AM 8      A.   YES.

09:36AM 9      Q.   WHY WAS -- WHY DID YOU THINK THAT MS. CHEUNG'S QUESTION

09:36AM 10     MIGHT REQUIRE DISCUSSION BETWEEN YOU AND DR. ROSENDORFF?

09:36AM 11     A.   WELL, THIS WOULD BE A SITUATION WHERE A REPRESENTATIVE OF

09:36AM 12     CLIA WOULD BE TALKING ABOUT OUR ISSUES WITH A REPRESENTATIVE OF

09:36AM 13     A DIFFERENT PART OF THE COMPANY, AND WE KNEW THAT UPPER

09:36AM 14     MANAGEMENT MIGHT BE REALLY UPSET ABOUT THAT.

09:36AM 15     Q.   AND WHEN YOU SAY, "UPPER MANAGEMENT," WHO ARE YOU

09:36AM 16     REFERRING TO?

09:36AM 17     A.   ELIZABETH HOLMES AND SUNNY BALWANI.

09:36AM 18     Q.   AS LABORATORY DIRECTOR, ARE THERE REASONS WHY YOU WOULD

09:36AM 19     WANT TO ENCOURAGE COMMUNICATION BETWEEN DEPARTMENTS LIKE THESE?

09:37AM 20     A.   ABSOLUTELY.  WHAT YOU'RE FACING IS A SITUATION WHERE YOU

09:37AM 21     HAVE A PROBLEM AND YOU'RE TRYING TO SOLVE IT.

09:37AM 22          WITHIN A NORMAL, NORMALLY OPERATING LAB, YOU WOULD NEED

09:37AM 23     ALL OF THE PEOPLE THAT ARE INVOLVED IN RUNNING LAB TESTS TO

09:37AM 24     WORK TOGETHER TO COME UP WITH A SOLUTION BECAUSE THEY WOULD

09:37AM 25     HAVE TO FOLLOW AN INVESTIGATIVE PROCESS TO TRY AND ASCERTAIN

09:37AM   1    THE PROBLEM, AND THEN YOU WOULD HAVE TO WORK TOGETHER TO TRY

09:37AM   2    AND ASCERTAIN A SOLUTION.

09:37AM   3        THAT COULD ONLY REALLY TRULY BE DONE IN A NORMALLY

09:37AM   4    OPERATING LABORATORY IF PEOPLE WORKED TOGETHER AND DISCUSSED

09:37AM   5    IT.  IF ALL OF THOSE PEOPLE WERE GERMANE TO GENERATING THAT LAB

09:37AM   6    TEST RESULT, AND NISHIT WAS.

09:37AM   7    Q.   I SEE.

09:37AM   8        SO DID YOU DISAGREE WITH THE DIRECTION AT THERANOS TO SILO

09:37AM   9    INFORMATION THIS WAY?

09:37AM  10    A.   YES.

09:37AM  11    Q.   OKAY.  WE CAN TAKE THAT DOWN.  THANK YOU, MS. WACHS.

09:37AM  12        DO YOU REMEMBER, DR. PANDORI, WE LOOKED PREVIOUSLY AT A

09:38AM  13    "WALL STREET JOURNAL" ARTICLE FROM SEPTEMBER OF 2013?

09:38AM  14    A.   YES.

09:38AM  15    Q.   AND YOU PREVIOUSLY TESTIFIED THAT THERE WERE STATEMENTS IN

09:38AM  16    THAT ARTICLE THAT YOU FOUND NOT TO BE TRUE BASED ON YOUR WORK

09:38AM  17    AT THERANOS; IS THAT RIGHT?

09:38AM  18    A.   THAT'S RIGHT.

09:38AM  19    Q.   WAS THAT THE ONLY TIME THAT THAT HAPPENED?

09:38AM  20    A.   NO.  IT HAPPENED ANOTHER TIME.

09:38AM  21    Q.   I'LL ASK YOU TO TURN TO TAB 1599, PLEASE, IN YOUR BINDER.

09:38AM  22    A.   OKAY.

09:38AM  23    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

09:38AM  24    A.   IT STARTS WITH ONE DROP --

09:38AM  25    Q.   YES.  IS THIS A COPY OF AN ARTICLE IN "WIRED" MAGAZINE

09:38AM  1    THAT YOU REVIEWED DURING YOUR TIME WORKING AT THE COMPANY?

09:38AM  2    A.   YES, THAT'S CORRECT.

09:38AM  3              MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 1599.

09:38AM  4              MR. CAZARES:  OBJECTION.  HEARSAY.  DOUBLE

09:38AM  5    FOUNDATION.

09:38AM  6              MR. BOSTIC:  YOUR HONOR, THIS IS NOT BEING OFFERED

09:38AM  7    FOR THE TRUTH.

09:39AM  8              THE COURT:  WHAT'S ITS PURPOSE?

09:39AM  9              MR. BOSTIC:  ITS PURPOSE IS SIMILAR TO 1106, TO SHOW

09:39AM  10   WHAT WAS IN THE PUBLIC REALM AT THE TIME REGARDING THERANOS,

09:39AM  11   AND IT ALSO PROVIDES THE FOUNDATION FOR A SUBSEQUENT

09:39AM  12   CONVERSATION THAT THIS WITNESS HAD WITH THE DEFENDANTS.

09:39AM  13             MR. CAZARES:  SAME OBJECTIONS.  AND NOTICE TO THE

09:39AM  14   PUBLIC IS NOT AT ISSUE IN THE CASE.

09:39AM  15             THE COURT:  CAN YOU LAY A FOUNDATION AS TO WHAT, IF

09:39AM  16   ANYTHING, THIS DOCUMENT WHAT THE EFFECT OF THIS DOCUMENT HAD ON

09:39AM  17   THIS WITNESS?

09:39AM  18             MR. BOSTIC:  YES, YOUR HONOR.

09:39AM  19   Q.   DR. PANDORI, YOU SAID YOU READ THIS ARTICLE WHILE YOU WERE

09:39AM  20   WORKING AT THE COMPANY?

09:39AM  21   A.   YES, I DID.

09:39AM  22   Q.   WHEN YOU READ THE CONTENT OF THIS ARTICLE, AND I'M NOT

09:39AM  23   ASKING YOU ABOUT THE CONTENT RIGHT NOW OR WHAT IT IS, WHEN YOU

09:39AM  24   READ THE CONTENT, WHAT WAS YOUR REACTION?

09:39AM  25   A.   WELL, I HAD A NEGATIVE REACTION TO THIS BECAUSE I'M NOW AN

09:39AM  1    EMPLOYEE OF THE COMPANY, AND THIS -- SO ANYTHING WRITTEN ABOUT

09:40AM  2    THE COMPANY REPRESENTS SOMETHING ABOUT ME AS WELL, BECAUSE I'M

09:40AM  3    A PART OF THIS.

09:40AM  4        AND I FELT THAT THERE WERE INACCURATE OR MISLEADING

09:40AM  5    STATEMENTS IN THIS, AND I THOUGHT THAT THAT, IN THE LONG RUN,

09:40AM  6    WOULD HAVE A NEGATIVE IMPACT ON THE COMPANY BECAUSE WE DON'T

09:40AM  7    WANT PEOPLE TO BELIEVE ONE THING BUT GET ANOTHER IN TERMS OF A

09:40AM  8    PRODUCT BECAUSE THAT WOULD HURT US IN THE LONG TERM AS A

09:40AM  9    COMPANY, OR SHORT TERM.

09:40AM  10       AND SO I REALLY WANTED -- WHEN I READ THIS, I THOUGHT IT'S

09:40AM  11   MORE IMPORTANT THAT WE TRY AND THEN CREATE A SITUATION WHERE

09:40AM  12   THE TRUE -- YOU KNOW, REALLY WHERE WE ARE AT WOULD BE WHAT

09:40AM  13   WOULD BE DISPLAYED TO THE PUBLIC RATHER THAN THE KIND OF

09:40AM  14   STATEMENTS THAT WERE MADE HERE.

09:40AM  15   Q.   AND AFTER READING THIS ARTICLE AND HAVING THAT REACTION,

09:40AM  16   DID THAT THEN CAUSE YOU TO RAISE THOSE CONCERNS DIRECTLY TO

09:40AM  17   MR. BALWANI AND MS. HOLMES?

09:40AM  18   A.   YES, I DID ACTUALLY RAISE THOSE CONCERNS TO BOTH OF THEM.

09:41AM  19            MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 1599

09:41AM  20   BASED ON THAT FOUNDATION.

09:41AM  21            MR. CAZARES:  SAME OBJECTION.

09:41AM  22            THE COURT:  I'M GOING TO SUSTAIN THE OBJECTION AS TO

09:41AM  23   THE DOCUMENT ITSELF.

09:41AM  24       YOU CAN INQUIRE ABOUT THINGS THAT WERE RAISED, HIS

09:41AM  25   CONCERNS, BUT THE ACTUAL DOCUMENT ITSELF, AT THIS POINT I'M

09:41AM   1    GOING TO SUSTAIN THE OBJECTION.

09:41AM   2    BY MR. BOSTIC:

09:41AM   3    Q.   DR. PANDORI, YOU TESTIFIED THAT THERE WERE STATEMENTS IN

09:41AM   4    THE ARTICLE THAT YOU FOUND NOT TO BE CORRECT; IS THAT RIGHT?

09:41AM   5    A.   THAT'S RIGHT.

09:41AM   6    Q.   CAN YOU TELL US, GENERALLY SPEAKING, WHAT WERE THE TOPIC

09:41AM   7    OF THOSE STATEMENTS?  WHAT WERE THEY ABOUT?

09:41AM   8            MR. CAZARES:  OBJECTION.  HEARSAY.  FOUNDATION.

09:41AM   9            THE COURT:  OVERRULED.

09:41AM   10            THE WITNESS:  IN GENERAL, THEY WERE STATEMENTS ABOUT

09:41AM   11    THE CAPABILITY OF THE THERANOS LAB TESTING OPERATION.

09:41AM   12    BY MR. BOSTIC:

09:41AM   13    Q.   AND WERE THEY ABOUT, FOR EXAMPLE, WHAT THE TECHNOLOGY

09:42AM   14    COULD DO?

09:42AM   15    A.   RIGHT.  YEAH.

09:42AM   16        SO THINGS ABOUT TURN-AROUND TIME OR WHAT TESTS MIGHT OR

09:42AM   17    MIGHT NOT BE AVAILABLE OR THEIR ACCURACY.

09:42AM   18    Q.   LET'S BREAK THOSE UP IF WE COULD.

09:42AM   19        ON TURN-AROUND TIME, IF YOU SAW A DISCREPANCY THERE

09:42AM   20    BETWEEN WHAT THE ARTICLE SAID AND YOUR EXPERIENCE, WHAT WAS THE

09:42AM   21    DIFFERENCE?

09:42AM   22    A.   THE DIFFERENCE WAS THAT --

09:42AM   23            MR. CAZARES:  OBJECTION.  HEARSAY.  RELEVANCE.  THE

09:42AM   24    WITNESS IS ALSO LOOKING AT THE ARTICLE WHILE THE QUESTION IS

09:42AM   25    BEING ASKED.

09:42AM  1          THE COURT:  THANK YOU.  OVERRULED.

09:42AM  2          YOU CAN ANSWER THE QUESTION.

09:42AM  3     BY MR. BOSTIC:

09:42AM  4     Q.   WOULD YOU LIKE THE QUESTION AGAIN, DR. PANDORI?

09:42AM  5     A.   NO.

09:42AM  6          THE AMOUNT OF TIME THAT WAS REPRESENTED IN THE ARTICLE

09:42AM  7     THAT INDICATED HOW LONG IT WOULD TAKE FOR US TO GENERATE A LAB

09:42AM  8     TEST RESULT WAS SHORTER THAN WHAT IT WAS ACTUALLY TAKING IN THE

09:42AM  9     LAB.

09:42AM  10    Q.   SO, IN OTHER WORDS, THE ARTICLE EXAGGERATED THE SPEED OF

09:43AM  11    THE THERANOS TEST?

09:43AM  12              MR. CAZARES:  OBJECTION.  LEADING.

09:43AM  13              THE COURT:  SUSTAINED.

09:43AM  14    BY MR. BOSTIC:

09:43AM  15    Q.   WERE THERE OTHER ISSUES OR OTHER TOPICS BESIDES

09:43AM  16    TURN-AROUND TIME WHERE YOU THOUGHT THAT THERE WERE FALSE OR

09:43AM  17    MISLEADING STATEMENTS IN THE ARTICLE?

09:43AM  18              MR. CAZARES:  OBJECTION.  HEARSAY.

09:43AM  19              THE COURT:  OVERRULED.

09:43AM  20              THE WITNESS:  YES.

09:43AM  21    BY MR. BOSTIC:

09:43AM  22    Q.   WHAT WERE THOSE OTHER TOPICS?

09:43AM  23    A.   AM I ALLOWED TO LOOK AT THIS TO REFRESH MY MEMORY?

09:43AM  24    Q.   WOULD LOOKING AT THE ARTICLE REFRESH YOUR RECOLLECTION?

09:43AM  25    A.   IT WOULD, BUT THERE ARE A COUPLE OF ISSUES THAT I REMEMBER

09:43AM  1    OFF THE TOP OF MY HEAD.

09:43AM  2    Q.   WHAT I'LL ASK YOU TO DO IS TAKE A MOMENT TO LOOK AT THE

09:43AM  3    ARTICLE, AND LET ME KNOW WHEN YOU'RE DONE, AND I'LL RE-ASK THE

09:43AM  4    QUESTION.

09:43AM  5    A.   OKAY.

09:44AM  6         (PAUSE IN PROCEEDINGS.)

09:44AM  7              THE WITNESS:  OKAY.

09:44AM  8    BY MR. BOSTIC:

09:44AM  9    Q.   DID REVIEWING THE ARTICLE REFRESH YOUR MEMORY ABOUT SOME

09:44AM 10    OF THE OTHER TOPICS WHERE WHAT YOU SAW THAT YOU VIEWED AS FALSE

09:44AM 11    OR MISLEADING STATEMENTS?

09:44AM 12    A.   YEAH, READING THIS REMINDED ME HOW I FELT WHEN I READ IT.

09:44AM 13    Q.   SO WE TALKED ABOUT TURN-AROUND TIME ALREADY.

09:44AM 14         WHAT OTHER ISSUES DID YOU SEE WITH THIS ARTICLE?

09:44AM 15    A.   WELL, ONE THING THAT STUCK OUT WAS THE MENTION OF THE

09:44AM 16    FERTILITY PANEL.  AT THAT TIME WE DIDN'T OFFER THAT.  AT LEAST

09:44AM 17    FROM THE CLIA PERSPECTIVE, WE DIDN'T HAVE QUALITY DATA THAT I

09:44AM 18    THINK LED US TO THINK THAT THAT IS SOMETHING THAT WE COULD

09:44AM 19    OFFER.

09:44AM 20         BUT THERE WERE STATEMENTS HERE ABOUT NOT CULTURING

09:45AM 21    BACTERIA OR VIRUSES AND USING GENETIC METHODOLOGIES, WHICH WAS

09:45AM 22    POSED AS A NOVEL MEANS OF PROTECTING PATHOGENS, BUT THAT'S AN

09:45AM 23    INCORRECT STATEMENT AS WELL.

09:45AM 24         THAT WAS -- THERE WAS NOTHING NOVEL BEING DONE IN THAT

09:45AM 25    REGARD AT THERANOS WITH REGARD TO DETECTING PATHOGENS THAT WAY.

09:45AM   1              THE USE OF DNA TO DETECT PATHOGENS --

09:45AM   2                   MR. CAZARES:  OBJECTION.  702.

09:45AM   3                   THE COURT:  WHY DON'T YOU ASK A QUESTION.

09:45AM   4                   MR. BOSTIC:  SURE.

09:45AM   5    Q.   DR. PANDORI, WHAT WAS YOUR -- WHAT HAD YOU OBSERVED THAT

09:45AM   6    MADE YOU UNDERSTAND THAT THAT WAS NOT A NOVEL THING THAT

09:45AM   7    THERANOS WAS DOING?

09:45AM   8                   MR. CAZARES:  SAME OBJECTION.  702.

09:45AM   9                   THE COURT:  OVERRULED.

09:45AM  10                   THE WITNESS:  WELL, THAT STATEMENT, IF YOU GO TO A

09:45AM  11    PEER REVIEWED LITERATURE AND THE BODY OF KNOWLEDGE THAT WE HAVE

09:45AM  12    WITH REGARD TO DIAGNOSTIC TESTING, FOR EXAMPLE, PCR, WHICH IS A

09:45AM  13    WAY TO USE -- TO DO A DNA BASED DIAGNOSTIC, INSTEAD OF CULTURE,

09:46AM  14    WHICH WAS INVENTED IN 1985, AND SHORTLY THEREAFTER WAS ADOPTED

09:46AM  15    TO DETECT PATHOGENS.

09:46AM  16         IN THE LABORATORY THAT I WORKED PRIOR TO THIS AND OTHER

09:46AM  17    LABORATORIES I WORKED, WE USED DNA METHODOLOGIES TO DETECT

09:46AM  18    VIRUSES AND BACTERIA.  WE WOULD DO OVER 100,000 TIMES A YEAR.

09:46AM  19                   MR. CAZARES:  OBJECTION.  INSPECTOR.

09:46AM  20                   THE COURT:  SUSTAINED.  YOU CAN ASK ANOTHER

09:46AM  21    QUESTION.

09:46AM  22    BY MR. BOSTIC:

09:46AM  23    Q.   SO, DR. PANDORI, SO FAR WE HAVE TALKED ABOUT TURN-AROUND

09:46AM  24    TIME AND THE STATUS OF THE FERTILITY PANEL AT THERANOS AND

09:46AM  25    WHETHER THERANOS'S DNA METHODS WERE NOVEL AT THE TIME.

| | | |
|---|---|---|
| 09:46AM | 1 | IS THAT CORRECT SO FAR? |
| 09:46AM | 2 | A.   SO FAR THAT WAS A SUMMARY OF WHAT WE DISCUSSED. |
| 09:46AM | 3 | Q.   WERE THERE OTHER TOPICS IN THE ARTICLE THAT YOU FELT WERE |
| 09:46AM | 4 | ADDRESSED INADEQUATELY OR MISLEADING? |
| 09:46AM | 5 | A.   THE -- THERE'S AN IMPLICATION HERE THAT TESTS WERE |
| 09:47AM | 6 | ACCURATE OR MORE ACCURATE, AND THAT WAS A PROBLEM BECAUSE THAT |
| 09:47AM | 7 | WASN'T AN OBSERVATION THAT WAS BEING MADE EMPIRICALLY IN THE |
| 09:47AM | 8 | LABORATORY. |
| 09:47AM | 9 | MR. CAZARES:  OBJECTION.  702.  MOVE TO STRIKE. |
| 09:47AM | 10 | THE COURT:  DO YOU WANT TO LAY A FOUNDATION? |
| 09:47AM | 11 | MR. BOSTIC:  SURE. |
| 09:47AM | 12 | Q.   SO YOU SAID THAT THE ARTICLE IMPLIED OR SAID THAT THE |
| 09:47AM | 13 | THERANOS TESTING WAS MORE ACCURATE; IS THAT CORRECT? |
| 09:47AM | 14 | A.   CORRECT. |
| 09:47AM | 15 | Q.   AND BASED ON YOUR OBSERVATIONS WHEN YOU WERE AT THE |
| 09:47AM | 16 | COMPANY, AND LIMITED TO ONLY WHAT YOU SAW WHILE YOU WERE THERE, |
| 09:47AM | 17 | WAS THAT TRUE OR NOT? |
| 09:47AM | 18 | MR. CAZARES:  OBJECTION.  702. |
| 09:47AM | 19 | THE COURT:  BASED ONLY ON HIS OBSERVATIONS? |
| 09:47AM | 20 | MR. BOSTIC:  YES, YOUR HONOR. |
| 09:47AM | 21 | THE COURT:  YOU CAN ANSWER THE QUESTION BASED ON |
| 09:47AM | 22 | YOUR OBSERVATIONS. |
| 09:47AM | 23 | THE WITNESS:  BASED SOLELY ON MY OBSERVATIONS, |
| 09:47AM | 24 | THERE'S NO REASON AT ALL TO BELIEVE THAT THESE TESTS WERE MORE |
| 09:47AM | 25 | ACCURATE THAN TESTS THAT ALREADY EXISTED. |

09:47AM   1    BY MR. BOSTIC:

09:47AM   2    Q.   WERE THERE STATEMENTS IN THE ARTICLE ABOUT HOW MANY TESTS

09:47AM   3    THERANOS COULD PERFORM FROM A DROP OF BLOOD?

09:48AM   4              MR. CAZARES:  OBJECTION.  LEADING AND HEARSAY AGAIN.

09:48AM   5              THE COURT:  I'LL SUSTAIN THE LEADING QUESTION.

09:48AM   6    BY MR. BOSTIC:

09:48AM   7    Q.   DR. PANDORI, DO YOU RECALL ANY OTHER INSTANCES IN THE

09:48AM   8    ARTICLE WHERE YOU THOUGHT THAT THE ABILITIES OF THE THERANOS

09:48AM   9    TECHNOLOGY WERE MISREPRESENTED?

09:48AM   10             MR. CAZARES:  OBJECTION.  LEADING.

09:48AM   11             THE COURT:  OVERRULED.

09:48AM   12             THE WITNESS:  WELL, THE USE OF THE WORD "PANEL" IS

09:48AM   13   AN IMPLICATION WHEN SOMEBODY GOES AND GETS A PANEL, AS MANY

09:48AM   14   PEOPLE MAY KNOW, THAT WOULD BE ASKING FOR A NUMBER OF

09:48AM   15   LABORATORY TESTS SIMULTANEOUSLY, AND IT WASN'T OUR CURRENT

09:48AM   16   CAPABILITY TO BE ABLE TO RUN MANY, MANY -- SEVERAL LAB TESTS ON

09:48AM   17   ONE SPECIMEN ON THERANOS TECHNOLOGY AT THAT TIME.

09:48AM   18   BY MR. BOSTIC:

09:48AM   19   Q.   AND WHAT DID THE -- WHAT DO YOU RECALL THE ARTICLE SAYING

09:48AM   20   THAT WAS CONSISTENT OR INCONSISTENT WITH THAT?

09:48AM   21             MR. CAZARES:  OBJECTION.  HEARSAY AND LEADING.

09:48AM   22             MR. BOSTIC:  YOUR HONOR, THIS MIGHT BENEFIT FROM A

09:49AM   23   BRIEF SIDE-BAR DISCUSSION.  THE GOVERNMENT IS NOT OFFERING ANY

09:49AM   24   OF THIS CONTENT FOR THE TRUTH.

09:49AM   25             THE COURT:  UNDERSTOOD.  THE OBJECTION IS OVERRULED.

PANDORI DIRECT BY MR. BOSTIC (RES.)

09:49AM  1          YOU CAN ANSWER THE QUESTION.

09:49AM  2               THE WITNESS:  CAN YOU RE-ASK THE QUESTION?

09:49AM  3     BY MR. BOSTIC:

09:49AM  4     Q.   YES.  SO LET ME GO BACK ONE QUESTION.

09:49AM  5          YOU WERE TELLING US ABOUT ANOTHER INSTANCE WHERE THE

09:49AM  6     ABILITIES OF THE THERANOS TECHNOLOGY YOU THOUGHT WERE

09:49AM  7     MISREPRESENTED IN THE ARTICLE.

09:49AM  8          CAN YOU SUMMARIZE THAT AGAIN FOR US?

09:49AM  9               MR. CAZARES:  OBJECTION.  IT CALLS FOR A NARRATIVE.

09:49AM 10     ASKED AND ANSWERED.

09:49AM 11               THE COURT:  OVERRULED.

09:49AM 12               THE WITNESS:  YOU WANT ME TO SUMMARIZE MY TROUBLE

09:49AM 13     WITH THE ARTICLE?  WOULD YOU LIKE ME TO BREAK THEM DOWN

09:49AM 14     INDIVIDUALLY, OR JUST GIVE YOU A GENERAL ASSESSMENT OF IT?

09:49AM 15     BY MR. BOSTIC:

09:49AM 16     Q.   I THINK JUST THE LAST TOPIC YOU WERE DISCUSSING ABOUT THE

09:49AM 17     BREADTH OF TESTS OR THE NUMBER OF TESTS THAT COULD BE

09:49AM 18     CONDUCTED?

09:49AM 19     A.   WELL, THE IMPLICATION OF THE ARTICLE IS THAT PEOPLE WILL

09:49AM 20     BE ABLE TO GET A PANEL OF TESTS PERFORMED ON A SINGLE

09:49AM 21     FINGERSTICK, BUT THAT WAS NOT THE CASE IN MY TIME THERE.

09:49AM 22     Q.   INSTEAD, WHAT WERE THE CAPABILITIES OF THE TECHNOLOGY AS

09:50AM 23     FAR AS HOW MANY TESTS COULD BE DONE ON A SINGLE SAMPLE?

09:50AM 24     A.   WE HAD A LOT OF DIFFICULT EVEN RUNNING ONE TEST ON ONE

09:50AM 25     SAMPLE.

09:50AM   1    Q.   ON THAT SAME TOPIC, IN YOUR EXPERIENCE WAS THE THERANOS

09:50AM   2    TECHNOLOGY CAPABLE OF RUNNING FOLLOW-ON TESTS ON BLOOD SAMPLES?

09:50AM   3    A.   NOT IN THE TIME THAT I WAS THERE.

09:50AM   4    Q.   AND CAN YOU EXPLAIN WHAT THAT MEANS?  WHAT IS A FOLLOW-ON

09:50AM   5    TEST?

09:50AM   6    A.   WELL, YOU TAKE A SAMPLE FROM A HUMAN BEING, IT COMES TO

09:50AM   7    THE LAB, YOU GET A TEST RESULT, THAT TEST RESULT WOULD CAUSE

09:50AM   8    YOU TO WANT TO RUN ANOTHER IN REFLUX TO THAT.

09:50AM   9    Q.   AND WAS THAT TOPIC ADDRESSED IN THE "WIRED" ARTICLE?

09:50AM  10    A.   I DON'T RECALL.

09:51AM  11         MR. CAZARES:  MOVE TO STRIKE THE PRIOR STATEMENTS

09:51AM  12    REGARDING THE IMPRESSION OF THE WITNESS ABOUT THE ARTICLE ON

09:51AM  13    THAT TOPIC.

09:51AM  14         MR. BOSTIC:  YOUR HONOR, IF I COULD BE ALLOWED TO

09:51AM  15    REFRESH THE WITNESS ON THAT?

09:51AM  16         THE COURT:  YES.

09:51AM  17    BY MR. BOSTIC:

09:51AM  18    Q.   DR. PANDORI, CAN I DIRECT YOU TO PAGE 2 OF EXHIBIT 1599?

09:51AM  19    A.   YES.

09:51AM  20    Q.   AND ABOUT TWO-THIRDS OF THE WAY DOWN THE PAGE, IF YOU

09:51AM  21    COULD REVIEW THAT AND THEN LET ME KNOW WHEN YOU'RE FINISHED?

09:51AM  22    A.   YEAH, I SEE THAT STATEMENT.

09:51AM  23    Q.   AND DO YOU SEE A STATEMENT THAT RELATES TO THERANOS'S

09:51AM  24    ABILITY, OR NOT --

09:51AM  25         THE COURT:  WE JUST HAVE TO GO ONE AT A TIME,

09:51AM   1    PLEASE, FOR THE SAKE OF OUR COURT REPORTER, PLEASE.

09:51AM   2         WHY DON'T YOU ASK THE QUESTION AGAIN, MR. BOSTIC.

09:51AM   3              MR. BOSTIC:  SURE.

09:51AM   4    Q.   THE QUESTION WAS, NOW THAT YOU'VE HAD A CHANCE TO REVIEW

09:51AM   5    AND REFRESH YOUR RECOLLECTION, DO YOU RECALL A STATEMENT IN THE

09:51AM   6    ARTICLE ADDRESSING WHETHER THERANOS WAS CAPABLE OF DOING

09:52AM   7    FOLLOW-ON TESTING --

09:52AM   8              MR. CAZARES:  OBJECTION.  LEADING.

09:52AM   9              THE COURT:  HE HADN'T FINISHED HIS QUESTION AGAIN.

09:52AM  10    I'M SORRY.  COULD I TROUBLE YOU, MR. BOSTIC, TO ASK YOUR

09:52AM  11    QUESTION IN TOTAL AGAIN, PLEASE.

09:52AM  12    BY MR. BOSTIC:

09:52AM  13    Q.   SURE.

09:52AM  14         THE QUESTION WAS NOW THAT YOU'VE REVIEWED THE ARTICLE AND

09:52AM  15    REFRESHED YOUR RECOLLECTION, DO YOU RECALL ANY LANGUAGE IN THE

09:52AM  16    ARTICLE ADDRESSING WHETHER THERANOS TECHNOLOGY COULD PERFORM

09:52AM  17    FOLLOW-ON TESTING LIKE WE'VE BEEN DISCUSSING?

09:52AM  18    A.   YES.

09:52AM  19              MR. CAZARES:  THE OBJECTION WAS LEADING.

09:52AM  20              THE COURT:  OVERRULED.  YOU CAN ANSWER THE QUESTION.

09:52AM  21              THE WITNESS:  YES, I RECALL THAT.

09:52AM  22    BY MR. BOSTIC:

09:52AM  23    Q.   AND BASED ON YOUR REVIEW, WHEN THIS ARTICLE CAME OUT IN

09:52AM  24    MARCH 2014, WAS THE ARTICLE ACCURATE IN ITS REPRESENTATIONS

09:52AM  25    ABOUT WHETHER THERANOS COULD DO FOLLOW-ON TESTING?

09:52AM   1    A.   NO.

09:52AM   2    Q.   YOU SAID THAT THIS ARTICLE RAISED CONCERNS IN YOUR MIND

09:52AM   3    AND THAT YOU EVENTUALLY HAD A CONVERSATION WITH MR. BALWANI

09:53AM   4    ABOUT IT; IS THAT CORRECT?

09:53AM   5    A.   AND -- YES.

09:53AM   6    Q.   DESCRIBE FOR US HOW THAT CONVERSATION CAME TO HAPPEN?

09:53AM   7    A.   I WAS ASKED TO COME TO ELIZABETH HOLMES'S OFFICE, AND

09:53AM   8    SUNNY BALWANI AND ELIZABETH HOLMES WERE IN THE OFFICE, AND I

09:53AM   9    SAT DOWN ACROSS FROM THEM.

09:53AM   10   Q.   WERE YOU TOLD WHY YOU WERE ASKED TO GO TO THEIR OFFICE?

09:53AM   11   WAS THIS A SCHEDULED MEETING?

09:53AM   12   A.   NO, IT WAS NOT.

09:53AM   13   Q.   AND WHAT HAPPENED WHEN YOU FIRST ARRIVED AT THE OFFICE?

09:53AM   14        WELL, FIRST, LET ME ASK, WAS ANYONE ELSE PRESENT AT THIS

09:53AM   15   MEETING BESIDES YOU, MS. HOLMES, AND MR. BALWANI?

09:53AM   16   A.   NO.

09:53AM   17   Q.   SO WHAT WAS THE CONVERSATION ONCE YOU ARRIVED AT THE

09:53AM   18   OFFICE?

09:53AM   19   A.   THAT I HAD A NEGATIVE ATTITUDE ABOUT THE COMPANY.

09:53AM   20   Q.   LET ME ASK FIRST, DO YOU AGREE WITH THAT AROUND THIS TIME?

09:53AM   21   DID YOU OR HAD YOU COME TO HAVE A NEGATIVE ATTITUDE ABOUT

09:53AM   22   THERANOS?

09:53AM   23   A.   I HAD A NEGATIVE ATTITUDE ABOUT THERANOS AS A DIAGNOSTIC

09:54AM   24   LABORATORY, AND I FELT THAT THERE WERE A LOT OF VERY, VERY MANY

09:54AM   25   PROBLEMS WITH REGARD TO QUALITY OF THE RESULTS THAT WERE

09:54AM   1     GENERATED AT THERANOS AS A DIAGNOSTIC LABORATORY.

09:54AM   2     Q.   AND HAD THAT BEEN YOUR ATTITUDE DURING YOUR ENTIRE TIME AT

09:54AM   3     THE COMPANY?  HAD YOU COME IN WITH THAT KIND OF ATTITUDE ABOUT

09:54AM   4     THERANOS?

09:54AM   5     A.   I CAME IN WITH AN OBJECTIVE ATTITUDE ABOUT WHETHER OR NOT

09:54AM   6     THAT WAS THE CASE.

09:54AM   7     Q.   WHEN YOU STARTED AT THERANOS, WERE YOU EXCITED ABOUT THE

09:54AM   8     PROSPECT OF WORKING THERE?

09:54AM   9     A.   ABSOLUTELY.  THERE WAS AN OPPORTUNITY FOR THIS TECHNOLOGY

09:54AM   10    TO HAVE A LARGE IMPACT ON INDIVIDUAL HEALTH, BUT PUBLIC HEALTH

09:54AM   11    AS WELL.

09:54AM   12    Q.   AND THE MEETING THAT WE'RE TALKING ABOUT WITH MS. HOLMES

09:54AM   13    AND MR. BALWANI, WHEN DID THAT TAKE PLACE?

09:54AM   14    A.   ON OR AROUND MY BIRTHDAY IN MAY, WHICH WAS MAY 19TH.  I

09:54AM   15    DON'T KNOW.  IT WAS PLUS OR MINUS ONE DAY OF THAT, I THINK.

09:54AM   16    Q.   SO TELL US MORE ABOUT THAT CONVERSATION.  THE TOPIC

09:55AM   17    APPARENTLY WAS YOUR, I GUESS THEIR WORDS, BAD ATTITUDE ABOUT

09:55AM   18    THERANOS.

09:55AM   19         HOW DID YOU RESPOND?

09:55AM   20    A.   WELL, I SAID, THERE WERE JUST A LOT OF FOUNDATIONAL

09:55AM   21    PROBLEMS.  WE HAD PROBLEMS WITH QUALITY, BUT THAT BEING ABLE TO

09:55AM   22    TALK TO ONE ANOTHER WAS AN ISSUE, AND IT WAS VERY DIFFICULT FOR

09:55AM   23    US TO SOLVE PROBLEMS THERE IN THAT ENVIRONMENT.

09:55AM   24         IT WASN'T AN ENVIRONMENT WHERE WE COULD APPLY NORMAL

09:55AM   25    LABORATORY PROCEDURE TO SOLVING PROBLEMS BECAUSE THE LAB

09:55AM  1    DIRECTORS WEREN'T NECESSARILY THE ULTIMATE DECISION MAKERS IN

09:55AM  2    THIS CASE.

09:55AM  3         AND THE LABS WHERE I WORKED AS THE PUBLIC HEALTH LAB

09:55AM  4    DIRECTOR, THIS WOULD BE LIKE ASKING THE MAYOR OR THE BOARD OF

09:55AM  5    DIRECTORS OR SOMETHING TO PLAY A ROLE IN SOLVING PROBLEMS WITH

09:55AM  6    THE QUALITY AT THE LAB, AND THAT WAS A SIGNIFICANT PROBLEM.

09:55AM  7         BUT ONE OF THE THINGS WAS THAT I HAD SAID TO PRODUCT

09:55AM  8    MANAGERS DURING A CALL WITH SALES, I SAID WHEN --

09:56AM  9              MR. CAZARES:  OBJECTION.  NONRESPONSIVE.

09:56AM 10              THE COURT:  SUSTAINED.  YOU CAN ASK ANOTHER

09:56AM 11    QUESTION.

09:56AM 12    BY MR. BOSTIC:

09:56AM 13    Q.   I DO WANT TO HEAR ABOUT THAT, BUT LET ME ASK YOU FIRST ON

09:56AM 14    THAT TOPIC, WHEN YOU RAISED YOUR CONCERNS ABOUT QUALITY ISSUES

09:56AM 15    AT THE COMPANY AND THE LEVEL OF COMMUNICATION, WAS MR. BALWANI

09:56AM 16    RECEPTIVE TO THOSE CONCERNS AT THAT TIME AT THIS MAY 2014

09:56AM 17    MEETING?

09:56AM 18    A.   NO.

09:56AM 19    Q.   WHAT MAKES YOU SAY THAT?

09:56AM 20    A.   WELL, I SAID TO ELIZABETH AND SUNNY, I SAID WHAT WE NEED

09:56AM 21    TO DO IS HAVE REGULAR MEETINGS BETWEEN THE SALES, THE PRODUCT

09:56AM 22    MANAGERS, MANAGEMENT, AND THE LAB DIRECTORS, BECAUSE THE LAB

09:56AM 23    DIRECTORS KNOW WHAT TESTS ARE VALIDATED AND HAVE QUALITY AND

09:56AM 24    WHICH ONES DO NOT, THAT WAY THE SALESPEOPLE CAN HAVE THAT SAME

09:56AM 25    KNOWLEDGE SO THAT WHEN THEY'RE IN THE FIELD, WE'RE ALL ON THE

09:56AM  1    SAME PAGE WITH REGARD TO WHAT WORKS AND WHAT DOESN'T.

09:56AM  2         I SAID I THINK WE SHOULD HAVE REGULAR MEETINGS ABOUT THIS.

09:57AM  3         AND SUNNY'S RESPONSE WAS THAT WILL NEVER HAPPEN.

09:57AM  4    Q.   WHAT, IF ANYTHING, DID THAT CONVERSATION HAVE TO DO WITH

09:57AM  5    WHAT YOU HAD READ IN THE PRESS ABOUT THERANOS?

09:57AM  6    A.   WHAT WAS THE FIRST PART OF THAT QUESTION?

09:57AM  7    Q.   SURE.

09:57AM  8         DID YOUR CONVERSATION WITH MR. BALWANI AND MS. HOLMES HAVE

09:57AM  9    ANYTHING TO DO WITH WHAT YOU HAD READ IN THE PRESS ABOUT

09:57AM  10   THERANOS?

09:57AM  11   A.   YEAH.  WELL, THE "WIRED" ARTICLE WAS A CATALYST FOR THIS,

09:57AM  12   IF YOU WILL.

09:57AM  13   Q.   HOW SO?

09:57AM  14   A.   WELL, WHEN I SAW THAT -- LIKE I SAID, WHEN I WAS WORKING

09:57AM  15   THERE, THERE WERE A LOT OF MISREPRESENTATIONS ABOUT OUR

09:57AM  16   CAPABILITIES, AND I'M PART OF THIS NOW, SO YOU'RE NOT ONLY

09:57AM  17   MISREPRESENTING WHAT THERANOS CAN DO, YOU'RE MISREPRESENTING

09:57AM  18   WHAT I'M A PART OF.

09:57AM  19        SO THERE'S HARM THAT CAN COME FROM MAKING THOSE

09:57AM  20   MISREPRESENTATIONS, AND I, I WAS VERY UPSET ABOUT THAT.

09:57AM  21   Q.   WHEN YOU PROPOSED A SOLUTION TO THAT PROBLEM, YOU SAID

09:57AM  22   THAT MR. BALWANI HAD A RESPONSE, AND WHAT WAS THAT?

09:58AM  23   A.   THAT WILL NEVER HAPPEN.

09:58AM  24   Q.   IN THAT MOMENT DID MS. HOLMES PROVIDE YOU WITH ANY

09:58AM  25   RESPONSE AT ALL TO YOUR SUGGESTION?

09:58AM 1    A.   MS. HOLMES SAID TO ME, IT SEEMS LIKE YOU'RE UNHAPPY

09:58AM 2    WORKING IN THE CLIA LABORATORY; MAYBE YOU WOULD BE HAPPIER IF

09:58AM 3    WE HAD YOU WORKING ON DIFFERENT PRODUCTS AT THERANOS, MAYBE IN

09:58AM 4    THE NUCLEIC ACID DIVISION, WHICH IS A TEST DEVELOPMENT AREA

09:58AM 5    THAT INVOLVES USING DNA BASED DETECTION OF ORGANISMS.

09:58AM 6    Q.   AND IN YOUR MIND WAS THAT AN ACCEPTABLE SOLUTION TO THE

09:58AM 7    CONCERNS YOU WERE RAISING?

09:58AM 8    A.   THAT IS NOT A SOLUTION TO THE CONCERNS THAT I WAS RAISING

09:58AM 9    AT ALL.

09:58AM 10   Q.   WAS THERE ANY OTHER CONTENT IN THAT MEETING THAT STANDS

09:58AM 11   OUT IN YOUR MIND?

09:58AM 12   A.   NO.

09:58AM 13   Q.   WHAT WAS THE OUTCOME OF THAT MEETING?  DID YOU MAKE ANY

09:58AM 14   DECISIONS AFTERWARDS?

09:58AM 15   A.   WELL, I MADE A DECISION WHILE I WAS SEATED THAT I WOULD

09:58AM 16   QUIT THE COMPANY.

09:59AM 17   Q.   AND DID YOU, IN FACT, QUIT THE COMPANY?

09:59AM 18   A.   I DID.

09:59AM 19   Q.   WHEN DID YOU QUIT THE COMPANY?

09:59AM 20   A.   FIVE MINUTES LATER.

09:59AM 21   Q.   AND WHAT WAS YOUR REASON FOR ENDING YOUR EMPLOYMENT WITH

09:59AM 22   THERANOS?

09:59AM 23   A.   WELL, THE TECHNOLOGY WASN'T ANYWHERE NEAR WHAT I THOUGHT

09:59AM 24   IT WAS.  IT WASN'T -- THE EDISONS DIDN'T WORK VERY WELL, AND

09:59AM 25   THAT WAS SOMETHING THAT WAS BUILT AT THERANOS TO MY KNOWLEDGE,

09:59AM   1        BUT THEY WORKED VERY, VERY POORLY.  THEY GENERATED -- THEY

09:59AM   2        FAILED VERY, VERY, VERY OFTEN.

09:59AM   3            THERE WAS NO THERANOS TECHNOLOGY FOR DOING CHEMISTRY.  THE

09:59AM   4        ONLY WAY THAT COULD BE DONE IS ON A HACKED MACHINE THAT WAS

09:59AM   5        BUILD BY AN FDA APPROVED COMPANY -- A COMPANY THAT MADE FDA

09:59AM   6        CLEARED EQUIPMENT.

09:59AM   7            THERE WAS NO TECHNOLOGY TO DETECT ORGANISMS USING DNA THAT

09:59AM   8        WAS NOVEL OR PUT INTO PLACE THAT WAS -- IF IT WAS NOVEL OR ANY

09:59AM   9        BETTER OR ANY DIFFERENT THAN ANY PREVIOUS TECHNOLOGY.

10:00AM  10            I COULDN'T APPLY MY NORMAL SKILLS AS A LAB DIRECTOR TO

10:00AM  11        SOLVE PROBLEMS AT THERANOS BECAUSE TALKING TO PEOPLE WAS

10:00AM  12        DIFFICULT ACROSS DIVISIONS OR FROM DIFFERENT ASPECTS OF THE

10:00AM  13        COMPANY.

10:00AM  14            MY DECISIONS, OR DR. ROSENDORFF'S DECISION AS LAB

10:00AM  15        DIRECTORS, ALL HAD TO BE VETTED BY UPPER MANAGEMENT, WHICH IS A

10:00AM  16        REALLY, REALLY FOREIGN CONCEPT TO ME AS A LAB DIRECTOR.

10:00AM  17            AND STATEMENTS WERE BEING MADE THAT MISREPRESENTED THE --

10:00AM  18                MR. CAZARES:  OBJECTION.  CALLS FOR HEARSAY.

10:00AM  19                THE COURT:  SUSTAINED AS TO THAT WITHOUT FOUNDATION.

10:00AM  20        BY MR. BOSTIC:

10:00AM  21        Q.  BESIDES THOSE OUTSIDE STATEMENTS, WERE THERE OTHER ISSUES

10:00AM  22        THAT YOU HAVEN'T TALKED ABOUT YET THAT CAUSED YOU TO LEAVE THE

10:00AM  23        COMPANY, OR HAVE WE CAPTURED ALL OF THEM?

10:00AM  24        A.  I THINK WE'VE PRETTY MUCH CAPTURED ALL OF THEM.

10:00AM  25            I MEAN, IT WAS SUMMARIZED BY WHEN I MADE A SUGGESTION,

10:01AM   1   WHICH I THOUGHT WAS PRETTY BASIC AND FAIRLY FUNDAMENTAL AND

10:01AM   2   RATHER NONCONTROVERSIAL, ABOUT LETTING THE LAB DIRECTORS PLAY A

10:01AM   3   ROLE IN SHARING INFORMATION WITH PRODUCT AVAILABILITY, WHEN

10:01AM   4   THAT WAS DEEMED NO WAY, I THOUGHT THIS IS CRAZY.  WHY WOULD I

10:01AM   5   WANT TO WORK HERE?

10:01AM   6   Q.   WHEN YOU TENDERED YOUR RESIGNATION, DID MR. BALWANI ASK

10:01AM   7   YOU TO STAY AND REMAIN AT THE COMPANY?

10:01AM   8   A.   NO.

10:01AM   9   Q.   DID YOU HAVE ANY CONVERSATION WITH MR. BALWANI AFTER THE

10:01AM  10   CONVERSATION THAT WE JUST TALKED ABOUT WHERE HE SAID THAT THOSE

10:01AM  11   MEETINGS WOULD NEVER HAPPEN?

10:01AM  12   A.   I DON'T RECALL EVER HAVING A CONVERSATION WITH MR. BALWANI

10:01AM  13   AGAIN AFTER THAT.

10:01AM  14           MR. BOSTIC:  A MOMENT, YOUR HONOR?

10:01AM  15           THE COURT:  YES.

10:01AM  16       (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

10:01AM  17           MR. BOSTIC:  NO FURTHER QUESTIONS AT THIS TIME.

10:02AM  18       THANK YOU, DR. PANDORI.

10:02AM  19           THE COURT:  CROSS-EXAMINATION?

10:02AM  20           MR. CAZARES:  YES, YOUR HONOR.  THANK YOU.

10:03AM  21       MAY I APPROACH THE WITNESS, YOUR HONOR?

10:03AM  22           THE COURT:  YES.

10:03AM  23           MR. CAZARES:  (HANDING.)

10:03AM  24       AND, YOUR HONOR, MAY I APPROACH THE COURT?

10:03AM  25           THE COURT:  YES.

10:03AM   1            MR. CAZARES:  (HANDING.)

10:03AM   2        YOUR HONOR, MAY I REMOVE MY MASK?

10:03AM   3            THE COURT:  YES.

10:03AM   4            MR. CAZARES:  THANK YOU VERY MUCH.

10:03AM   5                       **CROSS-EXAMINATION**

10:03AM   6   BY MR. CAZARES:

10:03AM   7   Q.  GOOD MORNING, DR. PANDORI.

10:04AM   8        MY NAME IS STEVE CAZARES, AND I REPRESENT MR. BALWANI.

10:04AM   9   A.  GOOD MORNING.

10:04AM   10  Q.  AND I HAVE A FEW QUESTIONS FOR YOU, SIR.

10:04AM   11  A.  YES.  THANK YOU.

10:04AM   12  Q.  AND JUST TO REVERT BACK TO THE BEGINNING IN THE TIME

10:04AM   13  PERIOD WHEN YOU FIRST STARTED TO WORK AT THERANOS IN LATE 2013.

10:04AM   14      DO YOU REMEMBER THAT TIME PERIOD?

10:04AM   15  A.  YES.

10:04AM   16  Q.  OKAY.  AND YOU HAD INDICATED THAT YOU BECAME AWARE OF

10:04AM   17  THERANOS AND MAYBE YOU DID SOME INTERNET RESEARCH BEFORE

10:04AM   18  APPLYING FOR A JOB; IS THAT RIGHT?

10:04AM   19  A.  YES.

10:04AM   20  Q.  AND THAT'S BASICALLY HOW YOU CAME TO BE INTRODUCED TO

10:04AM   21  THERANOS; IS THAT CORRECT?

10:04AM   22  A.  CORRECT.

10:04AM   23  Q.  AND YOU HAD TESTIFIED ON DIRECT THAT WHEN YOU APPLIED, YOU

10:04AM   24  WEREN'T -- YOU DIDN'T RECALL EXACTLY WHAT POSITION YOU HAD

10:04AM   25  APPLIED FOR; IS THAT RIGHT?

PANDORI CROSS BY MR. CAZARES

10:04AM 1    A.   YEAH.  I BELIEVE THAT'S CORRECT.

10:04AM 2    Q.   BUT IT WAS SOME SORT OF MANAGEMENT DECISION?

10:04AM 3    A.   YES.

10:04AM 4    Q.   WAS THAT YOUR INTENTION?

10:04AM 5    A.   I ASSUME SO.

10:04AM 6    Q.   OKAY.  BECAUSE PREVIOUSLY YOU HAD HELD SENIOR MANAGEMENT

10:04AM 7    POSITIONS IN PUBLIC LABORATORIES; CORRECT?

10:05AM 8    A.   CORRECT.

10:05AM 9    Q.   AND BOTH IN SAN FRANCISCO?

10:05AM 10   A.   IN SAN FRANCISCO AND PRIOR TO THERANOS.

10:05AM 11   Q.   CORRECT.

10:05AM 12        BUT YOU WEREN'T THE ACTUAL LAB DIRECTOR IN SAN FRANCISCO;

10:05AM 13   IS THAT CORRECT?

10:05AM 14   A.   THAT'S INCORRECT.

10:05AM 15   Q.   YOU WERE THE LAB DIRECTOR?

10:05AM 16   A.   I WAS.

10:05AM 17   Q.   OKAY.  AND YOU WERE LOOKING FOR A SIMILAR POSITION AT

10:05AM 18   THERANOS; CORRECT?

10:05AM 19   A.   SIMILAR.

10:05AM 20   Q.   OKAY.  IN THE BINDERS THAT YOU HAVE THERE IN FRONT OF YOU

10:05AM 21   WITHIN VOLUME 2 -- WELL, ACTUALLY NO.  LET ME GRAB -- WITHIN

10:06AM 22   THE SECOND OF THE VOLUMES YOU SHOULD HAVE A TAB MARKED 20478.

10:06AM 23   PROBABLY NEAR THE BACK OF THAT SECOND VOLUME.

10:06AM 24   A.   20478.

10:06AM 25        I SEE IT.

10:06AM   1    Q.   ARE WE THERE?   OKAY.

10:06AM   2         SO 20478, IF YOU LOOK AT THE TOP OF THE PAGE, IT LOOKS

10:06AM   3    LIKE IT APPEARS TO BE AN EMAIL FROM A MONA RAMAMURTHY TO

10:06AM   4    MR. BALWANI.

10:06AM   5         DO YOU SEE THAT?

10:06AM   6    A.   I SEE IT.

10:06AM   7    Q.   AND DATED APPROXIMATELY OCTOBER 20, 2013.

10:06AM   8         DO YOU SEE IT?

10:06AM   9    A.   I SEE IT.

10:06AM   10   Q.   OKAY.   BUT FURTHER DOWN IN THE MIDDLE OF THAT FIRST PAGE

10:06AM   11   THERE'S AN EMAIL FROM YOURSELF TO MS. RAMAMURTHY.

10:06AM   12        DO YOU SEE THAT?

10:06AM   13   A.   I SEE IT.

10:06AM   14   Q.   AND MS. RAMAMURTHY WAS IN THE HR DEPARTMENT AT THERANOS;

10:06AM   15   CORRECT?

10:07AM   16   A.   YES.

10:07AM   17   Q.   AND YOU HAD SOME INTERACTIONS WITH HER WHEN YOU WERE

10:07AM   18   JOINING THERANOS IN LATE 2013?

10:07AM   19   A.   YEAH.

10:07AM   20   Q.   OKAY.   AND IF YOU CONTINUE THROUGH THE REST, I'M NOT GOING

10:07AM   21   TO ASK YOU TO LOOK AT EVERY PAGE IN 20478, THERE'S SOME

10:07AM   22   ADDITIONAL COMMUNICATIONS BETWEEN YOURSELF AND MS. RAMAMURTHY.

10:07AM   23        DO YOU SEE THAT?

10:07AM   24   A.   YES.

10:07AM   25   Q.   AND YOU USED IT TO COMMUNICATE AT THERANOS DURING THE

```
10:07AM    1    REGULAR COURSE OF -- WHILE AT THERANOS YOU USED EMAILS AS

10:07AM    2    REGULAR COMMUNICATIONS IN YOUR JOB; CORRECT?

10:07AM    3    A.   CORRECT.

10:07AM    4            MR. CAZARES:  MOVE TO ADMIT 20478, YOUR HONOR.

10:07AM    5            MR. BOSTIC:  NO OBJECTION.

10:07AM    6            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:07AM    7        (DEFENDANT'S EXHIBIT 20478 WAS RECEIVED IN EVIDENCE.)

10:07AM    8    BY MR. CAZARES:

10:07AM    9    Q.   AND IF WE WANTED TO START MAYBE AT PAGE 3 OF 20478.

10:07AM   10    A.   YES.

10:07AM   11    Q.   AND AT THE BOTTOM YOU'LL SEE THAT THERE'S A COMMUNICATION

10:07AM   12    FROM MS. RAMAMURTHY TO YOURSELF OCTOBER 18TH --

10:07AM   13    A.   UH-HUH.

10:07AM   14    Q.   -- SAYING WELCOME TO THERANOS.

10:08AM   15        DO YOU SEE THAT?

10:08AM   16    A.   YEAH, I DO.

10:08AM   17    Q.   AND THIS IS ABOUT THE TIME THAT YOU WERE OFFERED THE JOB

10:08AM   18    AT THERANOS; CORRECT?

10:08AM   19    A.   IT APPEARS SO.

10:08AM   20    Q.   AND AGAIN, YOU WERE LOOKING FOR A MANAGEMENT POSITION AT

10:08AM   21    THERANOS; CORRECT?

10:08AM   22    A.   MANAGEMENT?  I MEAN, I WANTED TO BE APART OF THE

10:08AM   23    DEVELOPMENT OF THIS TECHNOLOGY IN SOME WAY, AND I THOUGHT THAT

10:08AM   24    MY CREDENTIALS PROBABLY WOULD HAVE LED TO SOMETHING LIKE THAT.

10:08AM   25    Q.   OKAY.
```

PANDORI CROSS BY MR. CAZARES

```
10:08AM  1    A.   IT'S NOT LIKE I WOULD APPLY TO JUST RUN LAB TESTS.

10:08AM  2    Q.   UNDERSTOOD.  AND IF YOU WANT TO FLIP FORWARD TO PAGE 2 OF

10:08AM  3    THE EXHIBIT.

10:08AM  4    A.   YES.

10:08AM  5    Q.   ACTUALLY, LET'S GO BACK TO THE FIRST PAGE.

10:08AM  6    A.   YOU MEAN PAGE 1?

10:08AM  7    Q.   PAGE 1.

10:08AM  8    A.   OKAY.

10:08AM  9    Q.   AND THE ORIGINAL MESSAGE IN THE MIDDLE OF THE PAGE --

10:08AM  10   A.   WE STARTED THERE.

10:08AM  11   Q.   -- FROM YOURSELF TO MS. RAMAMURTHY, DO YOU SEE WHERE YOU

10:08AM  12   WROTE, "MONA, MAYBE I CAN ASK YOU MOST OF MY QUESTIONS."

10:09AM  13        DO YOU SEE THAT?

10:09AM  14   A.   YES.

10:09AM  15   Q.   OKAY.  AND ONE OF THE QUESTIONS THAT YOU ASKED

10:09AM  16   MS. RAMAMURTHY IS, YOU KNOW, FIRST YOU DECLARE, "I AM APPROVED

10:09AM  17   BY THE STATE OF CALIFORNIA TO BE A LABORATORY DIRECTOR FOR A

10:09AM  18   PUBLIC HEALTH LABORATORY, AND I MEET ALL OF THE FEDERAL

10:09AM  19   REQUIREMENTS TO BE A CLINICAL LABORATORY DIRECTOR."

10:09AM  20        DO YOU SEE THAT?

10:09AM  21   A.   YES.

10:09AM  22   Q.   AND THEN YOU WROTE, "THE STATE OF CALIFORNIA, I BELIEVE,

10:09AM  23   REQUIRES THAT I REGISTER AS A CLINICAL LABORATORY DIRECTOR WITH

10:09AM  24   THE STATE DEPARTMENT OF PUBLIC HEALTH."

10:09AM  25        DO YOU SEE THAT?
```

PANDORI CROSS BY MR. CAZARES

| | | |
|---|---|---|
| 10:09AM | 1 | A.   YES. |
| 10:09AM | 2 | Q.   AND BUT THEN YOU WROTE, "THE REGS ARE UNCLEAR, BUT THE |
| 10:09AM | 3 | STATE OF CALIFORNIA MAY REQUIRE AN EXAMINATION FOR ME TO |
| 10:09AM | 4 | ACCOMPLISH THAT REGISTRATION." |
| 10:09AM | 5 | DO YOU SEE THAT AS WELL? |
| 10:09AM | 6 | A.   YES. |
| 10:09AM | 7 | Q.   AND THEN I THINK -- YOU WRITE, "I THINK THAT MY BOARD |
| 10:09AM | 8 | CERTIFICATION EXAM (WHICH I PASSED OF COURSE) COUNTS AS THAT |
| 10:09AM | 9 | EXAM, BUT I'M NOT 100 PERCENT." |
| 10:09AM | 10 | "IS THERANOS COMFORTABLE WITH THIS STIPULATION? |
| 10:09AM | 11 | "WHAT I MEAN IS AT THE STATE, (WHICH IS UNCLEAR ABOUT |
| 10:09AM | 12 | THEIR REQUIREMENTS) MIGHT ASK ME TO PASS ANOTHER EXAM TO GET |
| 10:09AM | 13 | THE REGISTRATION. |
| 10:09AM | 14 | "IS THIS OKAY IN THE CONTEXT OF THIS OFFER?" |
| 10:10AM | 15 | AND WITH THIS MESSAGE YOU ARE ASKING A QUESTION OF |
| 10:10AM | 16 | MS. RAMAMURTHY WHETHER IT WAS OKAY WITH THERANOS WHETHER A |
| 10:10AM | 17 | POSITION THAT YOU'RE GOING TO TAKE MIGHT REQUIRE YOU TO TAKE |
| 10:10AM | 18 | AND PASS A STATE REQUIRED EXAM? |
| 10:10AM | 19 | A.   SORT OF.  SO BY SEEING THESE EMAILS YOU ARE, AS YOU KNOW, |
| 10:10AM | 20 | REFRESHING MY MEMORY. |
| 10:10AM | 21 | Q.   OKAY. |
| 10:10AM | 22 | A.   SO I CAN EXPLAIN. |
| 10:10AM | 23 | Q.   GO AHEAD. |
| 10:10AM | 24 | A.   SO I BELIEVE THAT THE POSITION WAS LABORATORY DIRECTOR. |
| 10:10AM | 25 | AND SO LABORATORY DIRECTOR IN MY FIELD IS NOT JUST A JOB |

10:10AM  1    TITLE.  THAT'S A FORMAL TERMINOLOGY IN THE EYES OF THE FEDERAL

10:10AM  2    GOVERNMENT AND AT THE STATE LEVEL OF GOVERNMENT.

10:10AM  3         SO I SOUGHT HERE NOT TO MISLEAD THERANOS, THAT I MET THE

10:10AM  4    QUALIFICATIONS OF A LAB DIRECTOR AT THE STATE LEVEL.

10:10AM  5         CALIFORNIA -- THERE ARE FEDERAL REGULATIONS FOR WHO CAN BE

10:10AM  6    A LAB DIRECTOR, AND I MEET THOSE.

10:11AM  7         STATES MAY APPLY ADDITIONAL REQUIREMENTS ON TOP OF FEDERAL

10:11AM  8    REQUIREMENTS.  CALIFORNIA IS AN EXAMPLE OF ONE OF THOSE STATES,

10:11AM  9    AND BECAUSE I WAS A PUBLIC HEALTH LAB DIRECTOR, THAT DIDN'T

10:11AM 10    NECESSARILY MEAN THAT I QUALIFIED AS A LAB DIRECTOR IN A

10:11AM 11    CLINICAL LABORATORY.

10:11AM 12         SO WHAT I WANTED TO ACHIEVE HERE WAS TO ENSURE THAT

10:11AM 13    THERANOS WAS NOT MISLED BY ME, AND THAT WHILE I QUALIFY AS A

10:11AM 14    PUBLIC HEALTH LAB DIRECTOR, IF THEY'RE HIRING ME AS A LAB

10:11AM 15    DIRECTOR IN THE TERMINOLOGY AS IT'S USED ACCORDING TO CMS, THEN

10:11AM 16    I MAY NOT MEET THOSE REQUIREMENTS, AND IT MAY REQUIRE

10:11AM 17    ADDITIONAL EXAMINATION.

10:11AM 18    Q.   THANK YOU FOR THAT EXPLANATION.

10:11AM 19         AND I GUESS IN SHORT, GIVEN YOUR EXPERIENCE, AND NOT

10:11AM 20    WITHSTANDING ALL OF THE EXPERIENCE THAT YOU HAVE, AND I'M NOT

10:11AM 21    CALLING IT INTO QUESTION AT ALL, UNDER THE STATE OF CALIFORNIA

10:11AM 22    RULES AND REGULATIONS TO BE A CLIA LAB DIRECTOR, THERE MIGHT

10:11AM 23    BE, AS YOU SAID, THIS EXTRA REQUIREMENT THAT YOU MIGHT HAVE

10:11AM 24    NEEDED AND YOU WERE JUST ASKING THERANOS IF THERANOS WAS OKAY

10:11AM 25    WITH THAT?

10:11AM  1    A.   CORRECT.

10:11AM  2    Q.   OKAY.  AND DOES THAT INDICATE THAT YOU WERE CONSIDERING

10:12AM  3    AND BEING CONSIDERED FOR THE CLIA LAB DIRECTOR POSITION AT

10:12AM  4    THERANOS IN THIS APPLICATION PROCESS?

10:12AM  5    A.   YOU KNOW, I DIDN'T KNOW BECAUSE IT WAS JUST THE TWO WORDS,

10:12AM  6    LAB DIRECTOR, SO I DIDN'T KNOW THAT VERY CLEARLY.

10:12AM  7    Q.   BUT NOTWITHSTANDING, YOU FELT COMFORTABLE WITH YOUR

10:12AM  8    EXPERIENCE TO TAKE KIND OF A SENIOR POSITION WITHIN THE CLIA

10:12AM  9    LAB WHETHER OR NOT YOU WERE THE CLIA LAB DIRECTOR OR A SENIOR

10:12AM  10   MANAGER WITHIN THE CLIA LAB; CORRECT?

10:12AM  11   A.   WELL, AT THAT MOMENT I JUST WANTED THEM TO UNDERSTAND WHO

10:12AM  12   I WAS.  I HAD NOT ACCEPTED ANY JOB AT THAT POINT.

10:12AM  13   Q.   OKAY.  BUT ULTIMATELY YOU DID ACCEPT THE JOB?

10:12AM  14   A.   EVENTUALLY WHEN THEY OFFERED ME THE JOB I ACCEPTED IT,

10:12AM  15   YES.

10:12AM  16   Q.   OKAY.  AND YOU WERE HAPPY WITH THAT JOB, CORRECT, AT THE

10:12AM  17   TIME?

10:12AM  18   A.   EXCUSE ME?

10:12AM  19   Q.   YOU WERE HAPPY ACCEPTING THAT POSITION?

10:12AM  20   A.   I WAS REALLY EXCITED.

10:12AM  21   Q.   OKAY.  AND AS PART OF YOUR ACCEPTING THE POSITION, YOU

10:12AM  22   CAME TO HAVE COMMUNICATIONS WITH DR. ROSENDORFF ABOUT KIND OF

10:12AM  23   YOUR ROLE IN THE LAB; IS THAT CORRECT?

10:13AM  24   A.   YES.

10:13AM  25   Q.   OKAY.  AND IN THOSE DISCUSSIONS YOU HAD WITH

10:13AM  1    DR. ROSENDORFF, THE TWO OF YOU DISCUSSED HOW THE TWO OF YOU

10:13AM  2    WOULD OVERSEE THE LAB ONCE YOU STARTED AT THERANOS; CORRECT?

10:13AM  3    A.   WE DISCUSSED IT.

10:13AM  4    Q.   AND IN THOSE DISCUSSIONS, THOUGH, ONCE YOU ACCEPTED THE

10:13AM  5    POSITION AT THERANOS, YOU UNDERSTOOD THAT IT WAS DR. ROSENDORFF

10:13AM  6    WHO WAS GOING TO BE THE CLIA CERTIFIED LAB DIRECTOR AND THEN

10:13AM  7    YOU WERE GOING TO WORK WITH HIM, THOUGH, IN KIND OF A

10:13AM  8    SIDE-BY-SIDE POSITION?

10:13AM  9    A.   THE TENSE YOU USED IS FUTURE.

10:13AM  10        AS I UNDERSTOOD IT, DR. ROSENDORFF ALREADY WAS THE CLIA

10:13AM  11   LABORATORY DIRECTOR.

10:13AM  12   Q.   AND WITH THAT UNDERSTANDING, YOU WERE NOT THE CLIA

10:13AM  13   CERTIFIED LAB DIRECTOR DURING THE TIME PERIOD THAT YOU WORKED

10:13AM  14   AT THERANOS?

10:13AM  15   A.   THAT'S CLEAR.

10:13AM  16   Q.   AND THERE IS A DISTINCTION UNDER THE REGS BETWEEN THE CLIA

10:13AM  17   CERTIFIED LAB DIRECTOR IN A LABORATORY AND OTHER PERSONNEL,

10:13AM  18   INCLUDING SOMEONE WHO MAY HAVE A TITLE OF LAB DIRECTOR;

10:13AM  19   CORRECT?

10:13AM  20   A.   THE FEDERAL REGULATIONS AND ALL STATE REGULATIONS ARE

10:13AM  21   UNAMBIGUOUS WITH REGARD TO THE TERM "LABORATORY DIRECTOR," BUT

10:14AM  22   I WOULDN'T SAY THAT THOSE REGULATIONS SPELL OUT THE DIFFERENCES

10:14AM  23   BETWEEN JOB TITLES.

10:14AM  24   Q.   FAIR ENOUGH.

10:14AM  25        YOU WOULD AGREE THAT A LAB DIRECTOR IS RESPONSIBLE FOR

10:14AM 1    EVERY ASPECT OF THE LAB'S OPERATION?

10:14AM 2    A.   YEAH, ACCORDING TO FEDERAL -- ACCORDING TO REGULATIONS OF

10:14AM 3    A CLIA LABORATORY DIRECTOR.

10:14AM 4    Q.   RIGHT.  AND THE CLIA LABORATORY DIRECTOR IS ALSO

10:14AM 5    RESPONSIBLE FOR THE SAFETY OF ALL OF THE MEMBERS AND EMPLOYEES

10:14AM 6    WITHIN THE LAB; CORRECT?

10:14AM 7    A.   CORRECT.

10:14AM 8    Q.   AND THE CLIA LAB DIRECTOR IS ALSO RESPONSIBLE FOR THE

10:14AM 9    QUALITY OF LABORATORY TESTING PERFORMED WITHIN THAT LAB

10:14AM 10   DIRECTOR'S LAB?

10:14AM 11   A.   CORRECT.

10:14AM 12   Q.   AND THE CLIA LAB DIRECTOR IS ALSO RESPONSIBLE FOR

10:14AM 13   OVERSIGHT OF THE PERSONNEL AND ENSURING THAT THE PROPER

10:14AM 14   TECHNOLOGIES ARE SELECTED AND USED FOR TECHNOLOGIES WITHIN THE

10:14AM 15   LAB?

10:14AM 16   A.   YES.

10:14AM 17   Q.   OKAY.  AND IN ADDITION, THE CLIA LAB DIRECTOR IS

10:14AM 18   RESPONSIBLE TO ENSURE THAT THE MACHINES AND TECHNIQUES ARE

10:14AM 19   OPERATING IN A QUALITY MANNER WITHIN THE LAB; CORRECT?

10:15AM 20   A.   YEAH.  THOSE ARE MY OWN WORDS ACTUALLY.

10:15AM 21   Q.   AND THOSE ARE THE RESPONSIBILITIES OF A LAB DIRECTOR;

10:15AM 22   CORRECT?

10:15AM 23   A.   CORRECT.

10:15AM 24   Q.   OKAY.  THOSE RESPONSIBILITIES INCLUDE LABORATORY DIRECTOR

10:15AM 25   AUTHORIZATION SIGNOFF ON THE USE OF ANY LABORATORY DEVELOPED

10:15AM   1   TESTS WITHIN THE CLINICAL LAB; RIGHT?

10:15AM   2   A.   THE CLINICAL LAB DIRECTOR DOES SIGN OFF ON THOSE.

10:15AM   3   Q.   OKAY.  AND UNTIL THE CLINICAL LABORATORY SIGNS OFF ON THE

10:15AM   4   DEVELOPED TESTS, LIKE THE THERANOS EDISON, THAT TEST CANNOT BE

10:15AM   5   USED IN THE LAB?

10:15AM   6   A.   CORRECT.

10:15AM   7   Q.   OKAY.  AND THE SAME GOES, THE DECISION TO TAKE A TEST OFF

10:15AM   8   LINE WITHIN THE CLINICAL LAB, THAT REQUIRES THE LAB DIRECTOR,

10:15AM   9   THE CLIA LAB DIRECTOR'S AUTHORIZATION; CORRECT?

10:15AM  10   A.   YES.

10:15AM  11   Q.   NOW, YOU TALKED A LITTLE BIT ABOUT STANDARD OPERATING

10:15AM  12   PROCEDURES, I THINK, A BIT IN YOUR DIRECT EXAM, WHICH ARE A

10:16AM  13   REGULAR PART OF KIND OF THE MANAGEMENT AND OPERATION OF THE

10:16AM  14   CLINICAL LAB; CORRECT?

10:16AM  15   A.   I'M NOT SURE I UNDERSTAND YOUR QUESTION.

10:16AM  16   Q.   STANDARD OPERATING PROCEDURES ARE THE PROCEDURES UNDER

10:16AM  17   WHICH THE LABORATORY EMPLOYEES AND SCIENTISTS OPERATE AND

10:16AM  18   PERFORM THEIR DUTIES WITHIN THE LAB; IS THAT RIGHT?

10:16AM  19   A.   OH, BUT AN SOP WOULD BE ASSIGNED TO SEPARATE KINDS OF

10:16AM  20   OPERATIONS OR TESTS, YEAH.

10:16AM  21        YEAH, IT WOULD BE PLURALIZED, YES.

10:16AM  22   Q.   AND ALL OF THOSE SOP'S WITHIN THE LABORATORY REQUIRE THE

10:16AM  23   LABORATORY DIRECTOR TO SIGN OFF; CORRECT?

10:16AM  24   A.   WELL, THEY -- IN SOME INSTANCES CLIA DIRECTORS I THINK DO

10:16AM  25   ASSIGN DESIGNEES IF THEY'RE NOT GOING TO BE ON SITE, FOR

PANDORI CROSS BY MR. CAZARES

10:16AM 1    EXAMPLE.  SOME LAB DIRECTORS ARE NOT ON SITE ALL OF THE TIME.

10:16AM 2    Q.   BECAUSE THE REGULATIONS PERMIT A LAB DIRECTOR TO OVERSEE

10:16AM 3    MORE THAN ONE LAB AT A TIME; CORRECT?

10:16AM 4    A.   CORRECT, FEDERAL REGULATIONS ALLOW A LAB DIRECTOR TO

10:17AM 5    DIRECT UP TO FIVE.

10:17AM 6    Q.   AND BECAUSE OF THAT, THE RULE ALLOWS A LAB DIRECTOR TO

10:17AM 7    DESIGNATE, AS YOU SAY, RESPONSIBILITIES OVER SOME OF THE

10:17AM 8    OBLIGATIONS OR RESPONSIBILITIES OF THE LAB DIRECTORS

10:17AM 9    THEMSELVES; RIGHT?

10:17AM 10   A.   IN WRITING.

10:17AM 11   Q.   BUT THAT IS PERMITTED?

10:17AM 12   A.   IT'S MY UNDERSTANDING.

10:17AM 13   Q.   AND THE CLINICAL LAB DIRECTOR ALSO HAS OVERSIGHT AND

10:17AM 14   RESPONSIBILITIES FOR OVERSEEING AND APPROVING QUALITY CONTROL

10:17AM 15   ASSURANCE PROGRAMS AND QUALITY CONTROL WITHIN THE LABORATORY;

10:17AM 16   CORRECT?

10:17AM 17   A.   YOU SAID CLIA LABORATORY DIRECTORS?

10:17AM 18   Q.   YES.

10:17AM 19   A.   YEAH.

10:17AM 20   Q.   NOW, WITHIN YOUR RELATIONSHIP WITH DR. ROSENDORFF, ONCE

10:17AM 21   YOU ALREADY STARTED WORKING WITHIN THE LAB, I THINK YOU

10:17AM 22   DESCRIBED YOUR ROLE AS KIND OF MORE OPERATIONAL, MAYBE

10:17AM 23   LOGISTICS.

10:17AM 24       IS THAT ACCURATE?

10:17AM 25   A.   WELL, WE HAD TO FIGURE OUT SOME WAY TO WORK TOGETHER

10:17AM  1   BECAUSE I DIDN'T HAVE A PIECE OF PAPER SAYING THESE WERE MY JOB

10:17AM  2   DUTIES, SO WE THOUGHT THAT I WOULD FUNCTION ALONG WITH HIM, AND

10:18AM  3   I WAS COMFORTABLE SORT OF FUNCTIONING AS A SUBORDINATE TO HIM

10:18AM  4   THAT WOULD HELP HIM GET LOGISTICS AND OPERATIONS GOING BECAUSE

10:18AM  5   AT LEAST AS A FORMAL LAB DIRECTOR I UNDERSTOOD THOSE THINGS,

10:18AM  6   BUT THAT I COULD CONSULT HIM ON VARIOUS MATTERS ASSOCIATED WITH

10:18AM  7   BEING A CLIA LAB DIRECTOR.

10:18AM  8   Q.   AND THAT'S THE ROLE THAT YOU TOOK ON?

10:18AM  9   A.   I TOOK THAT ON UPON MYSELF.

10:18AM  10   Q.   OKAY.  SOON AFTER YOU WERE HIRED, THERE WAS ANOTHER

10:18AM  11   INDIVIDUAL HIRED WITHIN THE LAB NAMED LANGLY GEE; IS THAT

10:18AM  12   RIGHT?

10:18AM  13   A.   YES.

10:18AM  14   Q.   OKAY.  AND LANGLY GEE WAS HIRED AS THE QUALITY ASSURANCE

10:18AM  15   AND QUALITY CONTROL MANAGER WITHIN THE LAB; CORRECT?

10:18AM  16   A.   THAT'S MY RECOLLECTION, YES.

10:18AM  17   Q.   AND LANGLY GEE HAD EXPERIENCE IN SUCH WORK PRIOR TO

10:18AM  18   JOINING THERANOS; CORRECT?

10:18AM  19   A.   YEAH.  LANGLY HAD WORKED IN TOXICOLOGICAL LABORATORIES.

10:18AM  20   Q.   AND SO FROM THAT POINT FORWARD IN EARLY 2014 THROUGH THE

10:18AM  21   END OF YOUR TIME PERIOD, LANGLY GEE WAS THE MANAGER WITHIN THE

10:19AM  22   CLINICAL LAB OVERSEEING THE QUALITY CONTROL PROGRAM; CORRECT?

10:19AM  23   A.   HE WAS HIRED WITH THAT JOB TITLE.

10:19AM  24   Q.   AND DR. ROSENDORFF WAS PART OF THAT HIRING DECISION;

10:19AM  25   CORRECT?

PANDORI CROSS BY MR. CAZARES

10:19AM 1     A.   I DON'T RECALL.

10:19AM 2     Q.   LANGLY GEE WORKED WITH DR. ROSENDORFF DURING THE TIME

10:19AM 3     PERIOD THAT YOU WERE AT THERANOS; CORRECT?

10:19AM 4     A.   CORRECT.

10:19AM 5     Q.   NOW, OTHER -- THERE ARE OTHER LAYERS OF MANAGEMENT WITHIN

10:19AM 6     THE CLINICAL LABORATORY AT THERANOS, OTHER THAN THE LAB

10:19AM 7     DIRECTOR AND YOURSELF AND MR. GEE; CORRECT?

10:19AM 8     A.   YOU MEAN OTHER LAYERS OF OFFICERSHIP SORT OF LIKE OTHER

10:19AM 9     MANAGERS?

10:19AM 10    Q.   LIKE TECHNICAL SCIENTISTS?  THERE WAS A TECHNICAL

10:19AM 11    SCIENTIST WITHIN THE CLINICAL LABORATORY; CORRECT?

10:19AM 12    A.   THERE MAY HAVE BEEN, ALTHOUGH I DON'T KNOW TO WHOM THAT

10:19AM 13    TITLE WAS ASSIGNED.

10:19AM 14    Q.   A TECHNICAL SCIENTIST IS A STATE LICENSED LABORATORY

10:19AM 15    SCIENTIST WITHIN THE CLINICAL LAB; CORRECT?

10:19AM 16    A.   THE TERM IS TECHNICAL SUPERVISOR.

10:19AM 17    Q.   OKAY.  TECHNICAL SUPERVISOR.

10:20AM 18         BUT THAT IS A STATE LICENSED PERSON WITHIN THE CLINICAL

10:20AM 19    LAB; CORRECT?

10:20AM 20    A.   IT'S NOT A STATE LICENSURE, NO.  THAT'S SOMEBODY WHO MEETS

10:20AM 21    FEDERAL REQUIREMENTS.  AND IF THE STATE APPLIES AN ADDITIONAL

10:20AM 22    LAYER OF REQUIREMENTS OVER THE FEDERAL REQUIREMENTS, THEY WOULD

10:20AM 23    HAVE TO MEET ALL OF THOSE REQUIREMENTS.  SOMETIMES THAT

10:20AM 24    INVOLVES TAKING A BOARD CERTIFICATION EXAM.

10:20AM 25    Q.   AND THERANOS HAD A TECHNICAL SUPERVISOR; CORRECT?

PANDORI CROSS BY MR. CAZARES

10:20AM   1    A.   I DON'T RECALL.

10:20AM   2    Q.   DO YOU REMEMBER AN INDIVIDUAL NAMED STEVE MORAN OR MORIN?

10:20AM   3    A.   YES.

10:20AM   4    Q.   OKAY.  AND HE WAS YOUR TECHNICAL SUPERVISOR DURING YOUR

10:20AM   5    TIME PERIOD AT THE LAB; CORRECT?

10:20AM   6    A.   I DON'T KNOW.

10:20AM   7    Q.   DO YOU REMEMBER A PERSON NAMED HODA ALAMDAR?

10:20AM   8    A.   YES.

10:20AM   9    Q.   AND HODA ALAMDAR WAS THE GENERAL SUPERVISOR WITHIN THE

10:20AM  10    LAB; CORRECT?

10:20AM  11    A.   I DON'T KNOW.

10:20AM  12    Q.   YOU DID WORK FOR HER FOR SIX MONTHS WHILE YOU WERE AT THE

10:20AM  13    LAB; RIGHT?

10:20AM  14    A.   I REMEMBER HODA.

10:20AM  15    Q.   AND SHE WAS AN EXPERIENCED LAB SCIENTIST AS WELL?

10:20AM  16    A.   YES.

10:20AM  17    Q.   AND YOU WORKED WITH HER?

10:20AM  18    A.   WITH HER, YES.

10:20AM  19    Q.   NOW, YOU DESCRIBED IN YOUR TESTIMONY YESTERDAY THAT WHEN

10:21AM  20    YOU BEGAN AT THERANOS, IT WASN'T YOUR ORIGINAL INTENTION FOR

10:21AM  21    YOU TO HAVE A ROLE IN PROFICIENCY TESTING; IS THAT RIGHT?

10:21AM  22    A.   I DON'T KNOW THAT THAT WAS EXPLICITLY STATED.  I THINK

10:21AM  23    WHAT I STATED WAS THAT I WASN'T GIVEN A LIST OF JOB DUTIES.

10:21AM  24    Q.   AND AMONG THE JOB DUTIES YOU WEREN'T GIVEN WAS PROFICIENCY

10:21AM  25    TESTING OVERSIGHT?

PANDORI CROSS BY MR. CAZARES

10:21AM 1    A.   NOBODY TOLD ME THAT I WAS TO PROVIDE PT OVERSIGHT.

10:21AM 2    Q.   OKAY.  BUT THE CLINICAL LAB DIRECTOR OF THE LAB,

10:21AM 3    ADAM ROSENDORFF, DID HAVE RESPONSIBILITIES OF OVERSEEING THE

10:21AM 4    PROFICIENCY TESTING AT THE LAB; RIGHT?

10:21AM 5    A.   THAT'S CORRECT.

10:21AM 6    Q.   THROUGHOUT THE TIME YOU WERE AT THERANOS, IT WAS

10:21AM 7    ADAM ROSENDORFF'S RESPONSIBILITY AS THE CLIA LAB DIRECTOR TO

10:22AM 8    OVERSEE THE PROFICIENCY TESTING PROGRAM?

10:22AM 9    A.   IT IS HIS RESPONSIBILITY.

10:22AM 10   Q.   NOW, YOU DESCRIBED YESTERDAY IN YOUR DIRECT EXAMINATION

10:22AM 11   THAT YOU WERE MADE AWARE OF THE FACT THAT PROFICIENCY TESTING

10:22AM 12   WAS RUN ON PREDICATE METHODS USED WITHIN THE LABORATORY BUT NOT

10:22AM 13   ON THE THERANOS LDT METHODS; IS THAT CORRECT?

10:22AM 14   A.   CORRECT.

10:22AM 15   Q.   INCLUDING THE EDISON?

10:22AM 16   A.   EXCUSE ME?

10:22AM 17   Q.   INCLUDING THE EDISON -- PROFICIENCY TESTING WAS NOT RUN ON

10:22AM 18   THE EDISON DURING THE TIME PERIOD THAT YOU STARTED AT THERANOS?

10:22AM 19   A.   I WAS MADE TO BELIEVE THAT, YES.

10:22AM 20   Q.   OKAY.  AND BECAUSE OF THAT, YOU REACHED A CONCLUSION THAT

10:22AM 21   YOU WANTED TO RUN PROFICIENCY TESTING SAMPLES ON THE EDISON

10:22AM 22   DEVICES TO TEST THEM OUT I GUESS?

10:22AM 23   A.   WELL, THAT'S NOT AN ARBITRARY WHIMSICAL DECISION.

10:23AM 24        THAT WAS MY OPINION BECAUSE THE FEDERAL REGULATIONS

10:23AM 25   REQUIRE THAT WE DO PT ON TESTS THAT ARE USED TO GENERATE

10:23AM   1    PATIENT RESULTS.

10:23AM   2         THE RESULTS OF PROFICIENCY TESTS --

10:23AM   3              MR. CAZARES:  YOUR HONOR, MOVE TO STRIKE AS NONE

10:23AM   4    RESPONSIVE.

10:23AM   5              THE COURT:  THE PREVIOUS RESPONSE WILL REMAIN.  YOU

10:23AM   6    CAN ASK ANOTHER QUESTION.

10:23AM   7              MR. CAZARES:  THANK YOU, YOUR HONOR.

10:23AM   8    Q.   SO YOU REACHED THIS CONCLUSION THAT YOU WANTED TO RUN

10:23AM   9    PROFICIENCY SAMPLES ON THE EDISON DEVICE; CORRECT?

10:23AM  10    A.   CORRECT.

10:23AM  11    Q.   AND YOU DISCUSSED THAT WITH ADAM ROSENDORFF?

10:23AM  12    A.   YES.

10:23AM  13    Q.   BECAUSE HE WAS THE CLIA LABORATORY DIRECTOR?

10:23AM  14    A.   CORRECT.

10:23AM  15    Q.   AND ADAM ROSENDORFF AGREED?

10:23AM  16    A.   YES.

10:23AM  17    Q.   NOW, YOU DIDN'T ACTUALLY RUN THESE PROFICIENCY TESTING

10:23AM  18    SAMPLES YOURSELF IN THIS EXPERIMENT, DID YOU?

10:23AM  19    A.   NO.

10:23AM  20    Q.   OKAY.  OTHER LAB, LIKE MAYBE OTHER CLIA LAB ASSISTANTS,

10:23AM  21    RUN THE LAB TESTS?

10:23AM  22    A.   CLINICAL LABORATORY SCIENTISTS, YEAH.

10:24AM  23    Q.   OKAY.  DO YOU KNOW WHO?

10:24AM  24    A.   NO.

10:24AM  25    Q.   DO YOU KNOW IF IT WAS MORE THAN ONE PERSON?

10:24AM  1    A.   NO, I DON'T.

10:24AM  2    Q.   DO YOU KNOW WHO PUT TOGETHER THE SPREADSHEETS THAT YOU

10:24AM  3    LOOKED AT YESTERDAY IN YOUR TESTIMONY WITH THE RESULTS OF THAT

10:24AM  4    EXPERIMENT?

10:24AM  5    A.   I THOUGHT LANGLY GEE ASSEMBLED THE DATA AND PUT IT INTO

10:24AM  6    SPREADSHEETS WAS MY UNDERSTANDING.

10:24AM  7    Q.   BUT LANGLY GEE DIDN'T RUN THE EXPERIMENTS; CORRECT?

10:24AM  8    A.   IT WOULDN'T HAVE BEEN IN HIS JOB DESCRIPTION TO DO THAT.

10:24AM  9    Q.   AND YOU WANTED TO RUN THIS EXPERIMENT ON THE PROFICIENCY

10:24AM 10    TESTING SAMPLES ON THE EDISON DEVICE BECAUSE YOU WANTED TO SEE

10:24AM 11    HOW THE EDISON COMPARED TO THE FDA APPROVED PREDICATE METHODS?

10:24AM 12    A.   NO.  I WANTED TO RUN THE PROFICIENCY TESTS ON THE EDISONS

10:24AM 13    BECAUSE THE REGULATIONS IN PATIENT SAFETY REQUIRE IT, AND WE

10:24AM 14    WOULD AT THE SAME TIME LEARN WHETHER THOSE TWO METHODS WERE

10:25AM 15    COMPARABLE.

10:25AM 16    Q.   SO COMPARABILITY WAS ONE OF THE REASONS WHY YOU RAN THE

10:25AM 17    TESTS?

10:25AM 18    A.   YES.  IT'S ANOTHER REASON, BUT IT'S NOT AS IMPORTANT AS

10:25AM 19    THE FIRST REASON.

10:25AM 20    Q.   OKAY.  AND YOU WANTED TO RUN THIS COMPARISON AS PART OF

10:25AM 21    THE REASON FOR DOING THE EXPERIMENT BECAUSE THE FDA APPROVED

10:25AM 22    DEVICES ARE MORE ESTABLISHED, I THINK, GOLD STANDARD AS YOU

10:25AM 23    STATED YESTERDAY I THINK; CORRECT?

10:25AM 24    A.   CORRECT.

10:25AM 25    Q.   AND THEY'VE GONE THROUGH THIS RIGOROUS KIND OF TESTING,

10:25AM  1    VOLUMINOUS DOCUMENTATION, AND STUDIES THAT THE FDA REVIEWED AND

10:25AM  2    WOULD HAVE GRANTED APPROVAL BASED ON THE FDA'S OWN KIND OF

10:25AM  3    STANDARDS?

10:25AM  4    A.   ALL OF THAT IS CORRECT, AND ON TOP OF THAT THEY WOULD HAVE

10:25AM  5    BEEN IN USE MEDICALLY FOR SOME TIME.

10:25AM  6    Q.   GIVING YOU SOME ASSURANCE THAT THEY WERE QUALITY?

10:25AM  7    A.   CORRECT.

10:25AM  8    Q.   NOW, IN DOING THE EXPERIMENT, SO THE USE OF THE FDA

10:25AM  9    APPROVED MACHINE WAS TO SET A BASELINE TO COMPARE THE EDISON

10:26AM 10    RESULTS; CORRECT?

10:26AM 11    A.   THE PT -- YOU'RE TALKING ABOUT RUNNING THE PT'S ON THE

10:26AM 12    PREDICATE METHODS.

10:26AM 13    Q.   YEAH, THE INTERNAL.

10:26AM 14    A.   RIGHT.  YOU WANTED TO SEE HOW WELL THEY WOULD COMPARE IN

10:26AM 15    THAT REGARD.

10:26AM 16    Q.   OKAY.  AND TO DO THAT YOU WOULD WANT TO ESTABLISH THE

10:26AM 17    BASELINE USING THE FDA APPROVED METHOD; CORRECT?

10:26AM 18    A.   I WOULDN'T USE THE WORD BASELINE.  YOU WOULD JUST WANT TO

10:26AM 19    SEE WHAT RESULTS YOU GOT.

10:26AM 20    Q.   AND THEN RUN THESE SAMPLES ON THE THERANOS METHOD TO AGAIN

10:26AM 21    SEE HOW CLOSE THEY COMPARE?

10:26AM 22    A.   YOU WANT TO RUN THESE -- LIKE THE LAW IS UNAMBIGUOUS.  THE

10:26AM 23    SPECIMENS HAVE TO BE RUN THE WAY YOU TREAT PATIENT SPECIMENS.

10:26AM 24    Q.   AND DO YOU KNOW WHETHER OR NOT THE CLINICAL LAB SCIENTIST,

10:26AM 25    AS YOU SAY WHO DID THE COMPARISON EXPERIMENT, RAN THE PT

10:26AM 1   SAMPLES IN A SIMILAR MANNER THAT THERANOS RUNS ITS PATIENT

10:27AM 2   SAMPLES?

10:27AM 3   A.   THEY WERE ASKED TO DO SO.

10:27AM 4   Q.   OKAY.  BUT YOU DIDN'T ACTUALLY OBSERVE THE EXPERIMENT TAKE

10:27AM 5   PLACE TO ENSURE THAT THE CLINICAL LAB SCIENTIST RAN THE

10:27AM 6   EXPERIMENT IN THE SAME WAY USING THE SAME PROCEDURES THAT THE

10:27AM 7   LAB USES FOR PATIENT SAMPLES; CORRECT?

10:27AM 8   A.   CORRECT, CORRECT.

10:27AM 9   Q.   NOW, IN YOUR TESTIMONY YESTERDAY YOU TALKED A LITTLE BIT

10:27AM 10  ABOUT, IN RESPONSE TO THE QUESTIONS BY THE GOVERNMENT, ABOUT

10:27AM 11  PROFICIENCY TESTING REQUIREMENTS AS WELL AS AAP, THE

10:27AM 12  ALTERNATIVE ASSESSMENT PROCEDURE I THINK IT IS.

10:27AM 13      IS THAT CORRECT?

10:27AM 14  A.   CORRECT.

10:27AM 15  Q.   OKAY.  AND YOU TESTIFIED THAT YOU DID SOME INVESTIGATION

10:27AM 16  OR STUDY AS A PART OF KIND OF THIS PROCESS RELATING TO THIS

10:27AM 17  INTERNAL EXPERIMENT RUNNING THE PROFICIENCY TESTING SAMPLES ON

10:27AM 18  THE EDISON DEVICE; CORRECT?

10:27AM 19  A.   YES.  SO YOU SAID AN INVESTIGATION.  IT WAS A REVIEW OF

10:28AM 20  THE REGULATIONS.

10:28AM 21  Q.   OKAY.  AND THE REVIEW OF THE REGULATIONS, THAT'S THE CLIA

10:28AM 22  REGULATIONS; CORRECT?

10:28AM 23  A.   WELL, THERE WAS A NUMBER OF THINGS TAKEN INTO ACCOUNT.  I

10:28AM 24  BELIEVE I ALSO CONSULTED WHAT WERE CALLED CLSI GUIDELINES.

10:28AM 25  THOSE ARE CLINICAL LABORATORY STANDARDS INSTITUTE, AND THIS IS

10:28AM  1    NOT GOVERNMENT BUT A THIRD PARTY OF PROFESSIONALS WHO SEEK TO

10:28AM  2    MAKE GUIDELINES FOR BEST PRACTICES.  THEY'RE NOT GOVERNMENT.

10:28AM  3    Q.   AND IN REACHING YOUR OPINIONS REGARDING THE USE OF AAP FOR

10:28AM  4    THE EDISON DEVICES, YOU CONSULTED THE CLSI GUIDELINES?

10:28AM  5    A.   I RECALL DOING SO.

10:28AM  6    Q.   OKAY.  NOW, PRIOR TO YOUR ARRIVAL AT THERANOS, YOU HAD

10:28AM  7    NEVER STUDIED THE CLSI GUIDELINES RELATING TO THE USE AND

10:28AM  8    PROPRIETY OF AAP FOR A LAB DEVELOPED TEST; CORRECT?

10:28AM  9    A.   I HAD DISCUSSED THEN WITH PEOPLE WHO HAD BECAUSE THERE

10:29AM 10    WERE SITUATIONS WITH PT THAT -- WHERE WE NEEDED TO FIND CERTAIN

10:29AM 11    SOLUTIONS.

10:29AM 12    Q.   SO YOU HAD HAD DISCUSSIONS WITH PERSONS BUT NOT STUDY THE

10:29AM 13    REGS AND THE CLSI GUIDELINES YOURSELF REGARDING THE PROPRIETY

10:29AM 14    AND USE OF AAP FOR A LAB DEVELOPED TEST; CORRECT?

10:29AM 15    A.   YEAH, I HAD SOUGHT COUNSEL FROM OTHER LAB DIRECTORS WHO I

10:29AM 16    CONSIDERED MENTORS OF MINE, AND WE DISCUSSED CLSI GUIDELINES AT

10:29AM 17    ONE POINT IN THE CONTEXT OF PROFICIENCY TESTING.

10:29AM 18    Q.   AND AGAIN, I APPRECIATE THAT.

10:29AM 19         SO YOU DISCUSSED CLSI GUIDELINES WITH OTHERS, BUT MY

10:29AM 20    QUESTION IS A LITTLE DIFFERENT.

10:29AM 21    A.   UH-HUH.

10:29AM 22    Q.   DID YOU YOURSELF REVIEW THE CLSI GUIDELINES, PRIOR TO

10:29AM 23    ARRIVING AT THERANOS, RELATING TO THE USE AND PROPRIETY OF AAP

10:29AM 24    FOR LAB DEVELOPED TESTS?

10:29AM 25    A.   I DON'T REMEMBER.

| | | |
|---|---|---|
| 10:29AM | 1 | MR. CAZARES:  YOUR HONOR -- |
| 10:29AM | 2 | Q.   MR. PANDORI, YOU WERE DEPOSED IN LITIGATION RELATING TO |
| 10:30AM | 3 | THERANOS ABOUT FIVE YEARS AGO; IS THAT RIGHT? |
| 10:30AM | 4 | A.   I THINK SO.  I DON'T REMEMBER EXACTLY HOW LONG AGO. |
| 10:30AM | 5 | Q.   YOU SAT DOWN IN A CONFERENCE ROOM OF SOME SORT, THERE WAS |
| 10:30AM | 6 | A COURT REPORTER, YOU WERE SWORN, AND YOU -- |
| 10:30AM | 7 | A.   YEAH. |
| 10:30AM | 8 | Q.   -- AGREED TO TELL THE TRUTH? |
| 10:30AM | 9 | AND THERE WERE LAWYERS WHO ASKED QUESTIONS? |
| 10:30AM | 10 | A.   UH-HUH. |
| 10:30AM | 11 | Q.   AND THAT WAS ABOUT MARCH 9TH OF 2017? |
| 10:30AM | 12 | A.   UH-HUH, YES. |
| 10:30AM | 13 | MR. CAZARES:  YOUR HONOR, I HAVE A STATEMENT AT |
| 10:30AM | 14 | EXHIBIT 2802, 322, LINES 19 TO 323, LINE 22. |
| 10:30AM | 15 | THE COURT:  IS THAT IN ONE OF THESE BINDERS? |
| 10:30AM | 16 | MR. CAZARES:  IT'S IN BINDER 3, YOUR HONOR.  I |
| 10:30AM | 17 | APOLOGIZE. |
| 10:31AM | 18 | THE COURT:  2802? |
| 10:31AM | 19 | MR. CAZARES:  2802.  IT'S A 3-9-2017 TRANSCRIPT, |
| 10:31AM | 20 | PAGE 322, LINE 19 TO 323, LINE 22. |
| 10:31AM | 21 | THE COURT:  I DON'T HAVE -- IT'S NOT IN 3. |
| 10:31AM | 22 | VOLUME 3? |
| 10:31AM | 23 | MR. CAZARES:  YES. |
| 10:31AM | 24 | THE COURT:  2802. |
| 10:31AM | 25 | MR. CAZARES:  I THINK IT MAY BE TAB 1. |

10:31AM  1              THE COURT:  IT'S NOT IN THIS.

10:31AM  2         BUT WHILE WE SEARCH FOR THAT, WE'LL NEED TO TAKE OUR

10:32AM  3    BREAK.

10:32AM  4              MR. CAZARES:  I APOLOGIZE, YOUR HONOR.  YES.

10:32AM  5              THE COURT:  SO LET'S DO THAT, LADIES AND GENTLEMEN.

10:32AM  6    WE'LL TAKE OUR BREAK NOW.  WE'LL FIND THIS DOCUMENT IN THE

10:32AM  7    INTERIM.

10:32AM  8         PLEASE REMEMBER THIS SHOULD BE ABOUT AN HOUR.  I HOPE TO

10:32AM  9    COME BACK AT 11:30.  IF IT'S NOT AT THE BOTTOM OF THAT HOUR, IT

10:32AM 10    WILL BE VERY CLOSE TO IT.  SO WE'LL TAKE OUR RECESS NOW.

10:32AM 11         THANK YOU, COUNSEL.

10:32AM 12         YOU MAY STAND DOWN, DR. PANDORI.  WE'LL COME BACK.

10:32AM 13         IT'S NOT IN THIS.

11:37AM 14         ( RECESS TAKEN AT 10:32 A.M. UNTIL 11:39 A.M.)

11:39AM 15         (JURY OUT AT 11:39 A.M.)

11:39AM 16              THE COURT:  WE'RE BACK ON THE RECORD NOW OUTSIDE OF

11:39AM 17    THE PRESENCE OF THE JURY.

11:39AM 18         ALL COUNSEL ARE PRESENT.  THE JURY IS NOT PRESENT.

11:39AM 19         DR. PANDORI IS PRESENT.

11:39AM 20         DO WE NEED TO DISCUSS SOMETHING?

11:39AM 21              MR. BOSTIC:  VERY BRIEFLY, YOUR HONOR.

11:39AM 22              THE COURT:  SHOULD THE WITNESS STAY IN THE

11:39AM 23    COURTROOM?

11:39AM 24              MR. BOSTIC:  I THINK THE WITNESS COULD BE EXCUSED

11:39AM 25    FOR THIS, YOUR HONOR.

11:40AM 1        THE COURT:  OKAY.  IF YOU COULD JUST STEP OUTSIDE,

11:40AM 2    SIR.  THANK YOU.

11:40AM 3        WE ARE OUTSIDE OF THE PRESENCE OF THE JURY, AND

11:40AM 4    DR. PANDORI HAS LEFT THE COURTROOM.

11:40AM 5        MR. BOSTIC.

11:40AM 6        MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:40AM 7        I JUST WANTED TO RAISE ONE ISSUE WITH THE COURT, AND I

11:40AM 8    GAVE MR. CAZARES NOTICE OF THIS A MINUTE AGO.  I STILL HAVE IN

11:40AM 9    MIND THE COURT'S COMMENTS EARLIER THIS MORNING ABOUT THE

11:40AM 10   COURT'S CONCERNS ABOUT TESTIMONY RELATING TO OBLIGATIONS UNDER

11:40AM 11   RELEVANT REGULATIONS.

11:40AM 12       AND I NOTE THAT DURING THE CROSS-EXAMINATION SO FAR THERE

11:40AM 13   HAVE BEEN MULTIPLE QUESTIONS RELATING TO THOSE REGULATIONS AND

11:40AM 14   THE OBLIGATIONS THEY IMPOSE AND ON WHOM, AND I NOTE ALSO THAT

11:40AM 15   SIMILAR QUESTIONS WERE PROPOUNDED BY THE DEFENSE DURING THE

11:40AM 16   CROSS-EXAMINATION OF MS. CHEUNG BEFORE DR. PANDORI GAVE

11:41AM 17   TESTIMONY ABOUT HIS VIEW OF THE REGULATIONS IN CONNECTION WITH

11:41AM 18   PROFICIENCY TESTING.

11:41AM 19       I SENSE SOME TENSION BETWEEN THE DEFENSE'S POSITION THAT

11:41AM 20   THAT IS COMPLETELY OUTSIDE THIS CASE, BUT THEN THEIR REPEATED

11:41AM 21   QUESTIONS OF WITNESSES ABOUT WHAT THE REGULATIONS REQUIRE AND

11:41AM 22   WHO THEY REQUIRE IT OF.

11:41AM 23       I'M NOT MOVING TO STRIKE THOSE QUESTIONS AND ANSWERS AT

11:41AM 24   THIS TIME, BUT I WANTED TO RAISE THAT FOR BOTH THE PARTIES TO

11:41AM 25   HAVE IT IN MIND AND FOR THE COURT IN CASE IT'S RELEVANT TO THE

11:41AM 1    DEFENSE'S FUTURE QUESTIONS, OR POSITIONS OR QUESTIONS THAT THE

11:41AM 2    GOVERNMENT TAKES IN CONNECTION WITH THE REDIRECT OF THIS

11:41AM 3    WITNESS.

11:41AM 4         THE COURT:  ALL RIGHT.  WELL, THANK YOU.

11:41AM 5         WELL, I RAISED THIS MORNING THE COURT'S CONCERN ABOUT THAT

11:41AM 6    TO BOTH OF YOU THAT GUIDES.  YOU KNOW, YOU CAN TAKE MY CONCERNS

11:41AM 7    FOR WHATEVER YOU WOULD LIKE.  I HAVE THOSE CONCERNS.  THOSE

11:41AM 8    CONCERNS WILL CONTINUE.

11:41AM 9         THE EVIDENCE MAY TAKE US SOMEWHERE, THE EVIDENCE PROFFERED

11:42AM 10   BY QUESTIONS ON BOTH SIDES, THAT MAY TAKE US SOMEWHERE THAT

11:42AM 11   CAUSES US TO DISCUSS THE CONCERNS THAT I HAD AND WHETHER OR NOT

11:42AM 12   HAVING EXPRESSED THOSE TO BOTH SIDES THERE HAVE BEEN QUESTIONS

11:42AM 13   THAT HAVE GENERATED TENSION, AS YOU PUT IT, TO THAT POSITION

11:42AM 14   AND WHETHER OR NOT REMEDIES NEED TO BE INVOKED.

11:42AM 15         MR. CAZARES:  I UNDERSTAND, YOUR HONOR, AND IT'S A

11:42AM 16   CONCERN I THINK WE ALL SHARE.  IT'S A CONCERN THAT THE

11:42AM 17   GOVERNMENT AND THE DEFENSE HAS AND WE'VE RAISED IN THE

11:42AM 18   BEGINNING DURING SOME OF THE GOVERNMENT'S PRESENTATIONS IN

11:42AM 19   DIRECT WITH THE FIRST TWO WITNESSES RELATE TO PROFICIENCY

11:42AM 20   TESTING, QUALITY CONTROL, INSUFFICIENT EXECUTION OF THOSE

11:42AM 21   OBLIGATIONS IN THE LAB, AND THEN DRAWING INFERENCES FROM THAT

11:42AM 22   INSUFFICIENT EXECUTION AS TO THE ACCURACY AND RELIABILITY OF

11:42AM 23   THE TESTS, AND THE OPERATIONS OF THE LAB, AND POTENTIALLY

11:42AM 24   MR. BALWANI'S LIABILITY FOR THOSE ACTIVITIES.

11:43AM 25         TO THE EXTENT THAT THE GOVERNMENT HAS STARTED THE

11:43AM  1    INTRODUCTION OF THOSE ISSUES, WHICH WE THINK HAVE A PLACE, BUT

11:43AM  2    THERE'S A CERTAIN LINE, AND I'M NOT SURE EXACTLY WHERE THAT

11:43AM  3    LINE IS, WHICH IS WHY I THINK THE COURT IS UNDERSTANDABLY

11:43AM  4    CONCERNED.

11:43AM  5        BUT I THINK WE HAVE AN OBLIGATION TO RESPOND TO THAT BY

11:43AM  6    POINTING OUT THOSE REQUIREMENTS, PROFICIENCY TESTING, QUALITY

11:43AM  7    CONTROL, OBLIGATIONS, PERFORMANCE OF THAT, THERE ARE PERSONS

11:43AM  8    WITHIN THE LAB UNDER THOSE SAME REGULATIONS THAT GOVERN THOSE

11:43AM  9    PROCEDURES WHO IS RESPONSIBLE FOR THOSE PROCEDURES AND

11:43AM 10    OVERSEEING THOSE PROCEDURES, AND WE THINK IT IS NOT JUST FAIR

11:43AM 11    BUT NECESSARY TO POINT OUT THE HIERARCHY WITHIN THE LAB AND WHO

11:43AM 12    IT IS THAT HAS RESPONSIBILITY OVER THOSE PROGRAMS.

11:43AM 13            THE COURT:  I DON'T THINK MR. BOSTIC -- I HAVEN'T

11:43AM 14    HEARD ON OBJECTION TO THE ORG CHART EXAMINATION OF WHERE THAT

11:43AM 15    IS.

11:43AM 16        IS THAT WHAT YOU'RE CONCERNED ABOUT?

11:43AM 17            MR. BOSTIC:  NO, YOUR HONOR.

11:43AM 18        BUT I NOTE THAT COPIES OF THOSE REGULATIONS HAVE BEEN IN

11:44AM 19    THE WITNESS BINDERS CREATED BY THE DEFENSE.  I DON'T THINK ANY

11:44AM 20    OF THEM HAVE BEEN INTRODUCED INTO EVIDENCE YET.

11:44AM 21        I AGREE THAT THERE'S A LINE SOMEWHERE THAT WE'RE ALL

11:44AM 22    TRYING TO FIND, AND I JUST WANTED TO FLAG THE ISSUE FOR

11:44AM 23    EVERYONE SO THAT WE'RE DELIBERATE ABOUT KIND OF TOWING THAT

11:44AM 24    LINE OR CROSSING IT.

11:44AM 25            THE COURT:  NO, I APPRECIATE THAT, BECAUSE THE COURT

11:44AM 1    OBVIOUSLY IS GOING TO HAVE TO RULE ON OBJECTIONS IF THEY'RE

11:44AM 2    MADE, RULE ON THE ADMISSIBILITY OF EVIDENCE, AS WELL AS MAKE

11:44AM 3    DECISIONS AS TO WHETHER INSTRUCTIONS EITHER DURING OR AT THE

11:44AM 4    END OF THE TRIAL ARE APPROPRIATE.

11:44AM 5         I'M GLAD WE'RE TALKING ABOUT IT.  IT'S A SENSITIVE ISSUE.

11:44AM 6         AGAIN, THE CASE INVOLVES SCIENCE, BUT IT DOESN'T MEAN THAT

11:44AM 7    EVERYTHING, AS I SAID THIS MORNING, FALLS UNDER 702.  SOME OF

11:44AM 8    IT MAY.

11:44AM 9         IT DOESN'T MEAN THAT, HOWEVER, THAT THERE'S WHOLESALE,

11:44AM 10   BECAUSE IT'S SCIENCE, THE REGULATIONS FROM A GOVERNMENT AGENCY

11:44AM 11   REGARDING LAB OPERATIONS NECESSARILY TRANSFORM INTO AN 18

11:45AM 12   UNITED STATES CODE VIOLATION.  WE ALL APPRECIATE THAT.

11:45AM 13        AND THERE'S A FINE LINE HERE.  YOU KNOW, THAT'S WHY YOU'RE

11:45AM 14   TERRIFIC LAWYERS.  YOU HAVE TO TREAD THAT PATH VERY CAREFULLY

11:45AM 15   FOR BOTH OF YOUR PURPOSES, AND I APPRECIATE THAT YOU'RE DOING

11:45AM 16   THAT NOW.

11:45AM 17        SO THANKS FOR POINTING THAT OUT.

11:45AM 18             MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:45AM 19             THE COURT:  THANK YOU.

11:45AM 20        DID YOU GET A CORRECT NUMBER FOR THE DOCUMENT?

11:45AM 21             MR. CAZARES:  YOUR HONOR --

11:45AM 22             THE COURT:  YES.

11:45AM 23             MR. CAZARES:  -- I RECONSIDERED AND RETHOUGHT, I

11:45AM 24   ACTUALLY GAVE YOU THE WRONG EXHIBIT NUMBER, AND THAT'S MY

11:45AM 25   FAULT.  I APOLOGIZE.

11:45AM 1        BUT AS WE GO BACK ON THE RECORD WITH THE WITNESS, I'M

11:45AM 2   ACTUALLY GOING TO MOVE ON.

11:45AM 3            THE COURT:  RIGHT.  GOTCHA.

11:45AM 4        SHOULD WE BRING OUR JURY OUT THEN?

11:45AM 5            MR. CAZARES:  YES, YOUR HONOR.

11:45AM 6            THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  WE'RE OFF

11:45AM 7   THE RECORD NOW.

11:45AM 8        (JURY IN AT 11:45 A.M.)

11:48AM 9            THE COURT:  ALL RIGHT.  THANK YOU.  PLEASE BE

11:48AM 10  SEATED.

11:48AM 11       WE ARE BACK ON THE RECORD.

11:48AM 12       OUR JURY AND ALTERNATES ARE PRESENT.

11:48AM 13       ALL COUNSEL, MR. BALWANI IS PRESENT.

11:48AM 14       DR. PANDORI IS ON THE STAND.

11:48AM 15       COUNSEL, YOU'D LIKE TO RESUME?

11:48AM 16           MR. CAZARES:  THANK YOU, YOUR HONOR.

11:48AM 17  Q.   GOOD MORNING AGAIN, DR. PANDORI.

11:48AM 18  A.   GOOD MORNING.

11:48AM 19  Q.   I WANT TO TURN BACK TO THE TOPIC THAT WE WERE DISCUSSING,

11:49AM 20  WHICH IS THE ISSUE OF THE EXPERIMENT WITHIN THE CLINICAL LAB

11:49AM 21  RELATING TO THESE NEW YORK PROFICIENCY TESTING SAMPLES.

11:49AM 22       DO YOU RECALL THAT?

11:49AM 23  A.   YES.

11:49AM 24  Q.   AND YOU HAD TESTIFIED THAT YOU WANTED TO PERFORM THE

11:49AM 25  PROFICIENCY TESTING SAMPLES ON THE EDISON DEVICE, AS YOU STATED

11:49AM  1    BEFORE, BECAUSE YOU WERE CONCERNED THAT A REGULATORY

11:49AM  2    REQUIREMENT MAY NOT BE MET WITH RESPECT TO PROFICIENCY TESTING;

11:49AM  3    IS THAT RIGHT?

11:49AM  4    A.   CORRECT.

11:49AM  5    Q.   OKAY.  AND JUST TO GO BACK AND MAKE SURE WE UNDERSTAND

11:49AM  6    YOU.  WE TALKED A LITTLE BIT ABOUT THE CLSI GUIDELINES, AND YOU

11:49AM  7    INDICATED THAT YOU HAD HAD DISCUSSIONS WITH OTHER LAB DIRECTORS

11:49AM  8    RELATING TO THE ISSUE OF AAP AND THE PROPRIETY OF AAP FOR LAB

11:49AM  9    DEVELOPED TESTS?

11:49AM 10    A.   THOSE CONVERSATIONS THAT I ALLUDED TO WITH OTHER LAB

11:49AM 11    DIRECTORS WERE PRIOR TO.

11:49AM 12         SO I HAD KNOWLEDGE THAT CLSI, CLSI MAY HAVE SOMETHING TO

11:49AM 13    SAY ABOUT PROFICIENCY IN THAT REGARD.

11:50AM 14    Q.   OKAY.  BUT AGAIN, IT WASN'T SOMETHING THAT YOU SPENT A LOT

11:50AM 15    OF TIME STUDYING THE SPECIFICS OF THE CLSI GUIDELINES REGARDING

11:50AM 16    AAP AS APPLIED TO LAB DEVELOPED TESTS?

11:50AM 17    A.   THAT'S CORRECT.

11:50AM 18    Q.   OKAY.  BUT YOU DO AGREE, DON'T YOU, THAT THERE ARE

11:50AM 19    CIRCUMSTANCES WHEN AN ALTERNATIVE ASSESSMENT PROCEDURE, AN AAP,

11:50AM 20    IS APPROPRIATE FOR SATISFYING PROFICIENCY TESTING REQUIREMENTS

11:50AM 21    ON A LAB DEVELOPED TEST?

11:50AM 22    A.   I AGREE.

11:50AM 23    Q.   OKAY.  AND THERE CAN BE DIFFERENT CIRCUMSTANCES THAT MAY

11:50AM 24    JUSTIFY IT; CORRECT?

11:50AM 25    A.   CORRECT.

11:50AM 1    Q.   OKAY.  ONE OF THOSE MAY BE THE ISSUE OF, I THINK IT'S BEEN

11:50AM 2    MENTIONED IN THE COURTROOM ALREADY, THIS MATRIX EFFECT ISSUE.

11:50AM 3         IS THAT ONE CIRCUMSTANCE?

11:50AM 4    A.   THAT'S A POSSIBLE CIRCUMSTANCE.

11:50AM 5    Q.   OKAY.  ANOTHER POSSIBLE CIRCUMSTANCE WHERE AAP MAY BE

11:50AM 6    APPROPRIATE IS WHERE A COMPANY HAS AN EMERGING OR EMERGENT

11:50AM 7    TECHNOLOGY, SOMETHING DIFFERENT WHERE THERE'S NO PEER AGAINST

11:50AM 8    WHICH TO COMPARE THE PERFORMANCE OF THAT DEVICE AGAINST FOR THE

11:51AM 9    PURPOSES OF PROFICIENCY TESTING; IS THAT RIGHT?

11:51AM 10   A.   THAT -- IT COULD BE.

11:51AM 11   Q.   OKAY.  AND YOU AGREE THAT THERANOS'S EDISON DEVICE USING

11:51AM 12   THE FINGERSTICK TECHNOLOGY WAS A DEVICE THAT HAD NO SPECIFIC

11:51AM 13   PEER, AND BY THAT I MEAN ANOTHER MEDICAL DEVICE TESTING

11:51AM 14   CAPILLARY SAMPLES ON THE IMMUNOASSAYS AGAINST WHICH TO COMPARE

11:51AM 15   FOR THE PURPOSES OF PROFICIENCY TESTING?

11:51AM 16   A.   BOTH ARE IMMUNOASSAY, AND THERE ARE OTHER IMMUNOASSAYS

11:51AM 17   THAT ARE INVOLVED FOR WHICH PT, THERE IS GENERATION OF RANGES.

11:51AM 18        SO I WOULD THINK YOU COULD LOOK AT IT A COUPLE OF

11:51AM 19   DIFFERENT WAYS.

11:51AM 20        BUT WITH REGARD TO WHETHER OR NOT THE EDISON HAS A PEER,

11:51AM 21   LIKE ANOTHER PIECE OF EQUIPMENT IN EXISTENCE LIKE THE EDISON AT

11:51AM 22   THAT MOMENT, TO MY KNOWLEDGE, NO.  JUST TO MY KNOWLEDGE.

11:51AM 23   THERE'S A LOT OF EQUIPMENT OUT THERE.

11:51AM 24   Q.   UNDERSTOOD.  THANK YOU.

11:51AM 25        AT THE TIME THIS EXPERIMENT WAS PERFORMED USING THE

11:52AM  1    NEW YORK PT SAMPLES WITHIN THE LAB ON THE EDISON, YOU WERE NOT

11:52AM  2    AWARE OF THE FACT THAT DR. ROSENDORFF HAD ALREADY SIGNED OFF ON

11:52AM  3    AN SOP TO APPLY AAP TO THE EDISON; CORRECT?

11:52AM  4    A.   CORRECT.

11:52AM  5    Q.   OKAY.  AND YOUR LACK OF UNDERSTANDING OR AWARENESS, I'LL

11:52AM  6    CALL IT, OF THE ALREADY EXISTING SOP, THAT WAS PART OF THE

11:52AM  7    REASON WHY YOU WERE CONCERNED ABOUT THE FACT THAT NEW YORK

11:52AM  8    SAMPLES WEREN'T BEING APPLIED TO THE EDISON FOR THE PURPOSE OF

11:52AM  9    SATISFYING PT; IS THAT RIGHT?

11:52AM 10    A.   IT SOUNDS CORRECT.

11:52AM 11         I THINK WHAT YOU'RE SAYING IS, IF I COULD ASK BACK TO YOU?

11:52AM 12    Q.   NO, NO.  IT SOUNDS CORRECT, IS THAT FAIR ENOUGH?

11:52AM 13    A.   WOULD YOU RESTATE THE QUESTION.

11:52AM 14    Q.   CAN THE REPORTER READ THE TRANSCRIPT?

11:52AM 15              THE COURT:  MADAM REPORTER, WOULD YOU PLEASE READ

11:52AM 16    BACK THE LAST QUESTION.

11:52AM 17              MR. CAZARES:  I SHOULD HAVE ASKED THAT, YOUR HONOR.

11:52AM 18    I APOLOGIZE.

11:53AM 19         (RECORD READ BY COURT REPORTER.)

11:53AM 20              THE WITNESS:  IS IT PART OF MY CONCERN?

11:53AM 21         MY CONCERN AT THAT MOMENT WAS NOT DERIVED FROM A LACK OF

11:53AM 22    KNOWLEDGE OF THAT.

11:53AM 23         IT WAS DERIVED FROM THE FACT THAT THE REGULATIONS REQUIRED

11:53AM 24    SOMETHING THAT I DID NOT SEE BEING PERFORMED.

11:53AM 25    BY MR. CAZARES:

PANDORI CROSS BY MR. CAZARES

11:53AM 1    Q.   OKAY.  BUT YOU AGREE WITH ME THAT IF PERFORMED, A PROPERLY

11:53AM 2    PERFORMED AAP PROCEDURE COULD SATISFY THAT SAME PROFICIENCY

11:53AM 3    TESTING REQUIREMENT WITH RESPECT TO THE EDISON?

11:53AM 4    A.   UPON AUDIT BY CLIA, THE CLIA AUDITOR WOULD HAVE TO MAKE

11:53AM 5    THAT ASSESSMENT.

11:53AM 6    Q.   BUT YOU AGREE WITH ME THAT A PROPERLY APPLIED AAP

11:53AM 7    PROCEDURE TO A LAB DEVELOPED TEST LIKE THE EDISON CAN SATISFY

11:54AM 8    THE PT REQUIREMENTS?

11:54AM 9    A.   YES, THAT'S MY UNDERSTANDING.

11:54AM 10   Q.   OKAY.  IN YOUR BINDER THAT YOU HAVE THERE, AND I'LL TRY TO

11:54AM 11   GET THE CITE CORRECTLY THIS TIME.  WE'RE LOOKING AT VOLUME 2.

11:54AM 12   IF YOU WANT TO TAKE OUT EXHIBIT 9939.

11:54AM 13        YOUR HONOR, I BELIEVE IT HAS ALREADY BEEN CONDITIONALLY

11:54AM 14   ADMITTED, SO I'D LIKE TO PUBLISH IT WITH YOUR PERMISSION?

11:54AM 15             THE WITNESS:  9939?

11:54AM 16             MR. CAZARES:  9939.

11:54AM 17             THE COURT:  IN VOLUME?

11:54AM 18             MR. CAZARES:  THAT IS IN VOLUME 2, YOUR HONOR.

11:54AM 19             THE WITNESS:  CAN YOU GIVE ME A ROUGH IDEA WHERE IN

11:54AM 20   VOLUME 2?

11:54AM 21             MR. CAZARES:  ABOUT MIDPOINT.  IN THE 9000'S.

11:55AM 22             THE WITNESS:  9973.

11:55AM 23             THE COURT:  IT'S IN VOLUME 1.  IT'S IN VOLUME 1 OF

11:55AM 24   MY BINDER.

11:55AM 25             MR. CAZARES:  OKAY.  VOLUME 1.  I APOLOGIZE.

11:55AM 1       YOUR HONOR, I DO BELIEVE IT HAS BEEN CONDITIONALLY

11:55AM 2   ADMITTED.

11:55AM 3       MAY I PUBLISH?

11:55AM 4           THE COURT:  I THINK THIS WAS SUBJECT TO --

11:55AM 5           THE WITNESS:  OKAY.  9939, YES.

11:55AM 6           THE COURT:  -- SUBJECT TO AUTHENTICATION.  SO I WILL

11:55AM 7   ALLOW THIS TO BE PUBLISHED.

11:55AM 8       LADIES AND GENTLEMEN, YOU RECALL THAT I TALKED ABOUT THIS

11:56AM 9   THE OTHER DAY.  THIS IS BEING PUBLISHED NOW SUBJECT TO

11:56AM 10  AUTHENTICATION THAT WILL HAPPEN, I'M TOLD, SOME TIME LATER IN

11:56AM 11  THE TRIAL.

11:56AM 12      SHOULD THAT NOT HAPPEN, THEN I'LL STRIKE THIS AND ANY

11:56AM 13  TESTIMONY RELATED TO IT.

11:56AM 14      BUT IT IS CONDITIONALLY ADMITTED AT THIS POINT, AND IT MAY

11:56AM 15  BE PUBLISHED.

11:56AM 16      (DEFENDANT'S EXHIBIT 9939 WAS CONDITIONALLY RECEIVED IN

11:56AM 17  EVIDENCE.)

11:56AM 18  BY MR. CAZARES:

11:56AM 19  Q.  IF WE CAN FOCUS ON THE TOP OF THE FIRST PAGE AND DRAWING

11:56AM 20  YOUR ATTENTION, DR. PANDORI, THE DATE APPEARS TO BE

11:56AM 21  NOVEMBER 26TH, 2013.

11:56AM 22      DO YOU SEE THAT?

11:56AM 23  A.  I SEE THAT.

11:56AM 24  Q.  OKAY.  AND THE DOCUMENT IS TITLED STANDARD OPERATING

11:56AM 25  PROCEDURE.

11:56AM  1          DO YOU SEE THAT?

11:56AM  2    A.   YES.

11:56AM  3    Q.   AND PROFICIENCY TESTING FOR THERANOS LAB DEVELOPED TESTS:

11:56AM  4    EDISON 3.5?

11:56AM  5    A.   YES.

11:56AM  6    Q.   AND THE SIGNATURES APPEAR TO BE LI DING-CHIANG, LABORATORY

11:56AM  7    GENERAL SUPERVISOR.

11:56AM  8          DO YOU SEE THAT?

11:56AM  9    A.   YES.

11:56AM  10   Q.   AND DID YOU WORK WITH LI DING-CHIANG DURING THE TIME YOU

11:56AM  11   WERE AT THERANOS?

11:56AM  12   A.   I THINK SO.  THE NAME -- YEAH, I BELIEVE, YES.

11:56AM  13   Q.   AND LABORATORY GENERAL SUPERVISOR, THAT'S A POSITION

11:57AM  14   WITHIN THE CLINICAL LAB?

11:57AM  15   A.   I'M SORRY, LI DING, I REMEMBER HER WELL.

11:57AM  16        WHAT IS THE QUESTION?

11:57AM  17   Q.   THAT'S ALL, JUST WHETHER YOU REMEMBER HER.

11:57AM  18   A.   OH.

11:57AM  19   Q.   DANIEL YOUNG.  YOU KNOW WHO DR. YOUNG IS?

11:57AM  20   A.   YES.

11:57AM  21   Q.   AND THEN DR. ROSENDORFF AT THE BOTTOM APPEARS TO BE THE

11:57AM  22   THIRD SIGNATORY.

11:57AM  23        DO YOU SEE THAT?

11:57AM  24   A.   YES.

11:57AM  25   Q.   AND IT APPEARS TO BE DECEMBER 2ND, 2013?

11:57AM  1    A.   IT DOES.

11:57AM  2    Q.   SO AROUND THE TIME, MAYBE A LITTLE BIT BEFORE YOU STARTED

11:57AM  3    WORKING AT THERANOS?

11:57AM  4    A.   NOTABLY BEFORE, YEAH.

11:57AM  5    Q.   AND DURING THE TIME PERIOD, OR AT THE TIME I'LL SAY IT,

11:57AM  6    THAT YOU WERE INVOLVED IN THE DISCUSSIONS TO CONDUCT THIS

11:57AM  7    EXPERIMENT USING THE NEW YORK PROFICIENCY TESTING SAMPLES, YOU

11:57AM  8    HAD NOT SEEN OR REVIEWED THIS SOP REFLECTED AT EXHIBIT 9939;

11:57AM  9    CORRECT?

11:57AM 10    A.   CORRECT.

11:57AM 11    Q.   AND DR. ROSENDORFF HADN'T MENTIONED IT TO YOU UP TO THAT

11:57AM 12    POINT?

11:57AM 13    A.   CORRECT.

11:57AM 14    Q.   OKAY.  BUT YOU AGREE THAT DR. ROSENDORFF WAS AUTHORIZED TO

11:57AM 15    APPROVE THIS PROCEDURE FOR SATISFYING PT REQUIREMENTS ON THE

11:58AM 16    EDISON?

11:58AM 17    A.   YES.

11:58AM 18    Q.   OKAY.  AND IF YOU LOOK AT THE THIRD PAGE OF THE EXHIBIT,

11:58AM 19    THE SOP FOR PROFICIENCY TESTING ON THE EDISON, UNDER 2.1.

11:58AM 20         DO YOU SEE THAT?

11:58AM 21    A.   I SEE 2.1.

11:58AM 22    Q.   UNDER SCOPE THE SOP READS, "THE ALTERNATIVE ASSESSMENT

11:58AM 23    PROTOCOL APPLIES TO ALL LABORATORY DEVELOPED TESTS ON THE

11:58AM 24    EDISON 3.5 INSTRUMENT, AND WILL BE CONDUCTED IMMEDIATELY

11:58AM 25    FOLLOWING THE RECEIPT OF PROFICIENCY TESTING RESULTS FROM THE

11:58AM 1    AMERICAN PROFICIENCY INSTITUTE, (API)."

11:58AM 2         DO YOU SEE THAT?

11:58AM 3    A.   YES.

11:58AM 4    Q.   AND "THE API CONDUCTS PROFICIENCY TESTING OF ALL 4

11:58AM 5    IMMUNOASSAYS OFFERED AT TIME OF SOP DRAFTING," AND THEN THERE'S

11:58AM 6    A REFERENCE TO FOUR ASSAYS.

11:58AM 7         DO YOU SEE THAT?

11:59AM 8    A.   YES.

11:59AM 9    Q.   AND SO PER THE SOP, THIS PROCEDURE FOR SATISFYING

11:59AM 10   PROFICIENCY TESTING WAS SUPPOSED TO BE CONDUCTED CONCURRENT

11:59AM 11   WITH THE RECEIPT OF PROFICIENCY TESTING SAMPLES FROM API; IS

11:59AM 12   THAT RIGHT?

11:59AM 13   A.   THIS WAS THE SOP, YES.

11:59AM 14   Q.   OKAY.  BUT THAT WASN'T DONE AS PART OF YOUR EXPERIMENT

11:59AM 15   RUNNING THE NEW YORK SAMPLES ON THE EDISON; CORRECT?

11:59AM 16   A.   I DON'T UNDERSTAND THE QUESTION.  COULD YOU REPHRASE IT.

11:59AM 17   Q.   YOUR EXPERIMENT USING THE NEW YORK SAMPLES FOR THE EDISON,

11:59AM 18   JUST FOR THIS PT ISSUE, WAS NOT CONDUCTED UPON RECEIPT OF THE

11:59AM 19   NEW YORK SAMPLES; CORRECT?

11:59AM 20   A.   THAT WAS MY OBSERVATION -- THAT IS WHAT I WAS LED TO

11:59AM 21   BELIEVE.

11:59AM 22   Q.   BUT YOU DON'T KNOW THAT?

11:59AM 23   A.   WELL, LANGLY GEE, I BELIEVE, OR ADAM, AND/OR BOTH TOLD

11:59AM 24   ME --

11:59AM 25   Q.   THAT'S OKAY.

11:59AM   1          MOVE TO STRIKE, YOUR HONOR.  THAT'S A YES OR NO ANSWER.

11:59AM   2              THE COURT:  YOU WANTED A YES OR NO?

11:59AM   3              MR. CAZARES:  I WANTED A YES OR NO.

12:00PM   4              THE COURT:  WHY DON'T YOU RE-ASK YOUR QUESTION.

12:00PM   5    BY MR. CAZARES:

12:00PM   6    Q.   THE QUESTION WAS AT THE TIME THAT YOU CONDUCTED THE

12:00PM   7    NEW YORK EXPERIMENT, DID YOU CONDUCT THE EXPERIMENT CONCURRENT

12:00PM   8    WITH THE LAB'S RECEIPT OF THE SAMPLES FROM NEW YORK?

12:00PM   9    A.   OH, NO.

12:00PM  10    Q.   OKAY.  SO THE SAMPLES HAD ALREADY BEEN RECEIVED; CORRECT?

12:00PM  11    A.   THAT IS MY UNDERSTANDING.

12:00PM  12    Q.   AND THE SAMPLES HAD ALREADY BEEN USED TO RUN PT ON

12:00PM  13    PREDICATE DEVICES; CORRECT?

12:00PM  14    A.   YES.

12:00PM  15    Q.   AND SO WHAT YOU WERE USING FOR THE EXPERIMENT WAS THE

12:00PM  16    LEFTOVER; CORRECT?

12:00PM  17    A.   CORRECT.

12:00PM  18    Q.   OKAY.  AND THAT WASN'T A PROCEDURE SET FORTH IN THE SOP

12:00PM  19    REFLECTED IN EXHIBIT 9939; CORRECT?

12:00PM  20    A.   I'D HAVE TO READ THE WHOLE PROCEDURE.

12:00PM  21    Q.   AND YOU HADN'T DONE THAT AT THE TIME; CORRECT?

12:00PM  22    A.   ME?  NO.

12:00PM  23              THE COURT:  DO YOU WANT HIM TO READ THIS TO ANSWER

12:00PM  24    YOUR LAST QUESTION?

12:00PM  25              MR. CAZARES:  NO, YOUR HONOR.

12:00PM  1              THE COURT:  OKAY.

12:01PM  2      BY MR. CAZARES:

12:01PM  3      Q.   UNDER 3.1 ON THIS THIRD PAGE OF THE EXHIBIT UNDER

12:01PM  4      RESPONSIBILITIES, DO YOU SEE THAT?

12:01PM  5      A.   I SEE IT.

12:01PM  6      Q.   AND THE SOP READS, "IT IS THE RESPONSIBILITY OF THE

12:01PM  7      TECHNICAL SUPERVISOR TO ENSURE THAT THE ALTERNATIVE ASSESSMENT

12:01PM  8      PROCEDURE IS CONDUCTED AT LEAST TWICE TIMES A YEAR FOR ALL 4

12:01PM  9      ANALYTES."

12:01PM  10     A.   I SEE IT.

12:01PM  11     Q.   OKAY.  AND YOU REFERENCED BEFORE THAT THE CLINICAL LAB

12:01PM  12     DIRECTOR HAS THE AUTHORITY TO DELEGATE RESPONSIBILITIES; RIGHT?

12:01PM  13     A.   YES.

12:01PM  14     Q.   AND IS THIS ONE OF THE EXAMPLES WHERE ADAM ROSENDORFF, THE

12:01PM  15     CLINICAL LAB DIRECTOR, DELEGATED RESPONSIBILITIES FOR THE

12:01PM  16     TESTING TO THE TECHNICAL SUPERVISOR?

12:01PM  17              MR. BOSTIC:  FOUNDATION.  CALLS FOR SPECULATION.

12:01PM  18              THE COURT:  CAN YOU LAY A FOUNDATION FOR THAT,

12:01PM  19     COUNSEL?

12:01PM  20     BY MR. CAZARES:

12:01PM  21     Q.   THE DOCUMENT REFERENCED IN THE EXHIBIT REFERENCED 9939

12:01PM  22     APPEARS TO BE THE STANDARD OPERATING PROCEDURE FOR AAP

12:02PM  23     REGARDING THE EDISON DURING THE TIME THAT YOU WORKED AT

12:02PM  24     THERANOS; CORRECT?

12:02PM  25     A.   IT APPEARS TO BE.

12:02PM   1     Q.   OKAY.  AND IT LOOKS LIKE ADAM ROSENDORFF, THE LAB

12:02PM   2     DIRECTOR, AUTHORIZED IT; CORRECT?

12:02PM   3     A.   YES.

12:02PM   4     Q.   AND HE WAS AUTHORIZED TO IMPLEMENT THE SOP REFLECTED IN

12:02PM   5     9939; CORRECT?

12:02PM   6     A.   HE AUTHORIZED?  YES.

12:02PM   7     Q.   AND AS THE LAB DIRECTOR AT THE TIME UNDER CLIA,

12:02PM   8     ADAM ROSENDORFF HAD THE AUTHORITY TO DELEGATE THE

12:02PM   9     RESPONSIBILITY TO ENSURE THAT THE AAP PROCEDURE WAS EXECUTED AS

12:02PM   10    REFLECTED IN EXHIBIT 9939?

12:02PM   11    A.   IT'S MY UNDERSTANDING --

12:02PM   12          MR. BOSTIC:  OBJECTION.  CALLS FOR A LEGAL

12:02PM   13    CONCLUSION.

12:02PM   14          THE COURT:  YOU'RE ASKING WHETHER HIS JOB, THE

12:02PM   15    DOCTOR, ROSENDORFF'S JOB ALLOWED HIM TO DO THAT?

12:02PM   16          MR. CAZARES:  EXACTLY, YOUR HONOR.

12:02PM   17          THE COURT:  DID YOU UNDERSTAND THAT?

12:02PM   18          THE WITNESS:  I UNDERSTAND.

12:02PM   19          THE COURT:  OKAY.  YOU CAN ANSWER THE QUESTION.

12:02PM   20          THE WITNESS:  SO THIS IS A MORE COMPLEX ANSWER THAN

12:02PM   21    YOU'RE LOOKING FOR.

12:02PM   22    BY MR. CAZARES:

12:02PM   23    Q.   IT'S ACTUALLY JUST A YES OR NO.

12:02PM   24    A.   I DON'T KNOW.

12:02PM   25    Q.   YOU DON'T KNOW WHETHER THE LAB --

12:03PM 1          THE QUESTION IS, SO YOU'RE TELLING THE COURT NOW THAT YOU

12:03PM 2    DON'T KNOW WHETHER THE CLINICAL LAB DIRECTOR, ADAM ROSENDORFF,

12:03PM 3    UNDER CLIA HAD THE AUTHORITY TO DELEGATE RESPONSIBILITIES?

12:03PM 4          IS THAT WHAT YOU'RE SAYING?

12:03PM 5    A.   YES, HE HAS THE AUTHORITY TO DELEGATE RESPONSIBILITIES.

12:03PM 6    Q.   AND DOES THAT INCLUDE THE AUTHORITY TO DELEGATE

12:03PM 7    RESPONSIBILITY TO HIS TECHNICAL SUPERVISOR TO ENSURE THAT THE

12:03PM 8    AAP PROGRAM FOR THE EDISON WAS EXECUTED?

12:03PM 9    A.   IN CIRCUMSTANCES -- IN DIAGNOSTIC LABORATORIES, LABORATORY

12:03PM 10   DIRECTORS HAVE THAT AUTHORITY.

12:03PM 11   Q.   THANK YOU.  MOVING ON TO PAGE 5 OF THE PROCEDURE, UNDER 4

12:03PM 12   PROCEDURE?

12:03PM 13   A.   YES.

12:03PM 14   Q.   AND DO YOU SEE THE SOP IMPLEMENTED BY DR. ROSENDORFF

12:04PM 15   INCLUDES OBTAINING FIVE VENOUS CLINICAL SAMPLES FROM AN

12:04PM 16   IN-HOUSE COLLECTION.

12:04PM 17         DO YOU SEE THAT?

12:04PM 18   A.   YES.

12:04PM 19   Q.   OKAY.  AND VENOUS SAMPLES MEANING KIND OF REAL BLOOD FROM

12:04PM 20   A PERSON'S ARM THEORETICALLY?

12:04PM 21   A.   VENOUS BLOOD.

12:04PM 22   Q.   OKAY.  AND THAT'S DIFFERENT THAN MOST PT PROGRAMS;

12:04PM 23   CORRECT?

12:04PM 24   A.   TO HAVE TO DRAW BLOOD FROM AN INDIVIDUAL TO PERFORM PT'S

12:04PM 25   IS HIGHLY UNUSUAL.

12:04PM  1    Q.   AND UNDER 4.4 THE AAP SOP AT EXHIBIT 9939 REFERENCES

12:04PM  2    RUNNING THE PREDICATE SIEMENS IMMULITE AND THE THERANOS LDT

12:04PM  3    METHODS IN PARALLEL USING FIVE SAMPLES FOR EACH ASSAY FOR EACH

12:04PM  4    PATIENT.

12:04PM  5         DO YOU SEE THAT?

12:04PM  6    A.   YES.

12:04PM  7    Q.   OKAY.  AND IS THERE ANYTHING WRONG WITH THAT PROCEDURE?

12:04PM  8    A.   YES.

12:04PM  9    Q.   AND WHAT IS WRONG WITH IT?

12:04PM  10   A.   THE VENOUS SAMPLES ARE BEING RUN ON THE THERANOS LDT

12:05PM  11   METHOD AND THE IMMULITE, BUT THE SPECIMENS ARE NOT DRAWN IN THE

12:05PM  12   SAME MANNER AND PLACED IN THE SAME TUBE PRIOR TO TESTING.

12:05PM  13   Q.   AND DID YOU MAKE THAT KNOWN TO DR. ROSENDORFF WHEN YOU

12:05PM  14   WERE AT THERANOS?

12:05PM  15   A.   I DIDN'T.  AS YOU ASKED EARLIER, I WASN'T AWARE OF THIS

12:05PM  16   SOP.

12:05PM  17   Q.   UNDER ACCEPTANCE CRITERIA FURTHER DOWN ON THAT SAME

12:05PM  18   PAGE 5 UNDER 5.4 THE SOP READS, "IF AN ANALYTE FAILS TWO

12:05PM  19   CONSECUTIVE PROFICIENCY EVENTS, TESTING WILL BE DISCONTINUED

12:05PM  20   FOR THAT ANALYTE, UNTIL SUCH TIME AS THE ASSAY IS CORRECTED AND

12:05PM  21   PASSES AAP PT RETESTING."

12:05PM  22        DO YOU SEE THAT?

12:05PM  23   A.   YES.

12:05PM  24   Q.   IS THAT AN APPROPRIATE PROCEDURE?

12:05PM  25   A.   CLIA MAY OR MAY NOT, I THINK, AGREE WITH THAT.

PANDORI CROSS BY MR. CAZARES

12:06PM  1          SO I'M NOT SURE WHETHER OR NOT -- I'D HAVE TO REVIEW THE

12:06PM  2     REGULATIONS.

12:06PM  3     Q.   OKAY.  NOW, LET'S GO ABOVE THAT ONE AT 5.3 IN THE SAME

12:06PM  4     SOP.

12:06PM  5          "IF AN ANALYTE FAILS A PROFICIENCY EVENT, CORRECTIVE

12:06PM  6     ACTIONS WILL BE IMPLEMENTED ACCORDING TO QOP-00006."

12:06PM  7          DO YOU SEE THAT?

12:06PM  8     A.   I SEE THAT.

12:06PM  9     Q.   AND IS IT TYPICAL UNDER PROFICIENCY TESTING PROGRAMS THAT

12:06PM  10    THE FAILURE OF ONE PROFICIENCY TESTING EVENT DOESN'T REQUIRE

12:06PM  11    THE LAB TO STOP ALL TESTING USING THAT METHOD?

12:06PM  12    A.   THE FAILURE OF ONE OF THEM DOES NOT REQUIRE HALTING

12:06PM  13    TESTING ON THAT TEST, BUT IT DOES INVOKE AND REQUIRE

12:06PM  14    INVESTIGATION.

12:06PM  15    Q.   SO YOU HAVE TO INVESTIGATE WHY THE FAILURE MAY HAVE

12:06PM  16    HAPPENED?

12:06PM  17    A.   CORRECT.

12:06PM  18    Q.   OKAY.  BUT YOU COULD CONTINUE TESTING PATIENT SAMPLES

12:06PM  19    WHILE THAT IS GOING ON?

12:06PM  20    A.   I BELIEVE YOU HAVE TO FAIL TWO OF THREE EVENTS ACCORDING

12:06PM  21    TO THE FEDERAL GOVERNMENT.

12:06PM  22    Q.   WHICH CAN SPAN A PERIOD OF MONTHS; CORRECT?

12:07PM  23    A.   CORRECT.

12:07PM  24    Q.   MAYBE EVEN A YEAR; CORRECT?

12:07PM  25    A.   OH, I DON'T KNOW ABOUT A YEAR.

12:07PM  1    Q.   IT SAYS THREE TIMES A YEAR OR EVERY SIX MONTHS?

12:07PM  2    A.   WELL, GENERALLY MY UNDERSTANDING IS THAT THESE -- PT HAD

12:07PM  3    TO HAVE BEEN DONE THREE TIMES A YEAR WITH A MINIMUM OF FIVE

12:07PM  4    CHALLENGES PER EVENT.

12:07PM  5    Q.   AND IF YOU TURN TO THE NEXT PAGE, IF WE CAN FOCUS ON

12:07PM  6    THE -- UNDER REFERENCES, 7.5.

12:07PM  7    A.   YES.

12:07PM  8    Q.   ONE OF THE REFERENCES IN DR. ROSENDORFF'S SOP IS CLSI

12:07PM  9    GUIDELINE GP 29.

12:07PM  10        DO YOU SEE THAT?

12:07PM  11   A.   I SEE IT.

12:07PM  12   Q.   AND IS THAT SOMETHING THAT YOU YOURSELF REVIEWED IN THE

12:07PM  13   PROCESS OF LEARNING ABOUT THE AAP PROGRAM AT THERANOS?

12:07PM  14   A.   I DON'T REMEMBER THE CODE NUMBERS.

12:07PM  15   Q.   BUT A CLSI GUIDELINE NONETHELESS IS SOMETHING THAT YOU

12:07PM  16   CONSULTED?

12:07PM  17   A.   I RECALLED CONSULTING CLSI GUIDELINES, BUT I CAN'T SPEAK

12:08PM  18   TO WHETHER IT WAS GP 29.

12:08PM  19   Q.   UNDERSTOOD.

12:08PM  20        OKAY.  I'M TRYING TO GET THE VOLUME CORRECT THIS TIME.  SO

12:08PM  21   I'D LIKE YOU TO TAKE A LOOK AT EXHIBIT 20418.  20418.  THAT'S

12:09PM  22   IN VOLUME 2.

12:09PM  23   A.   I'M THERE.

12:09PM  24   Q.   AND CAN YOU TAKE A LOOK AT THE FIRST PAGE AND JUST

12:09PM  25   FAMILIARIZE YOURSELF WITH THE DOCUMENT.  LET ME KNOW WHEN

12:09PM  1    YOU'RE SATISFIED THAT YOU'RE FAMILIAR WITH IT?

12:09PM  2    A.   I RECOGNIZE THIS.

12:09PM  3    Q.   OKAY.  AND THIS IS THE CLSI GUIDELINE THAT RELATES TO AAP

12:09PM  4    TESTING AND PROCEDURES; CORRECT?

12:09PM  5    A.   TO A DEGREE.  THIS SAYS SPECIFICALLY WHEN PROFICIENCY

12:09PM  6    TESTING IS NOT AVAILABLE, WHICH IS A SITUATION THAT WOULD

12:09PM  7    INVOKE AN AAP, BUT IT'S NOT BROAD ENOUGH TO EXPLAIN EVERY

12:09PM  8    INSTANCE WHERE AN AAP WOULD BE NECESSARY.

12:09PM  9    Q.   BUT THIS IS A GUIDELINE THAT YOU RECOGNIZE?

12:09PM  10   A.   IT'S HARD TO REMEMBER DOCUMENTS LIKE THIS, BUT I BELIEVE

12:09PM  11   I'VE SEEN SOMETHING LIKE THIS BEFORE.

12:09PM  12   Q.   OKAY.  AND YOU'VE REVIEWED THE CLSI GUIDELINES AS THEY

12:10PM  13   RELATE TO AAP TESTING IN THE PAST; CORRECT?

12:10PM  14   A.   IN THE PAST.

12:10PM  15   Q.   AND IN PARTICULAR DURING YOUR TIME PERIOD AT THERANOS, YOU

12:10PM  16   REVIEWED CLSI GUIDELINES WHEN THIS ISSUE OF THE AAP TESTING IN

12:10PM  17   RELATION TO THE PT PROGRAM CAME UP IN EARLY 2014?

12:10PM  18   A.   I RECALL -- I'M SORRY, I RECALL.

12:10PM  19   Q.   OKAY.

12:10PM  20        YOUR HONOR, MOVE TO ADMIT?

12:10PM  21            MR. BOSTIC:  AUTHENTICATION AND 401.

12:10PM  22            THE COURT:  COUNSEL, ANYTHING YOU WANT TO ADD?  YOU

12:10PM  23   HEARD THE OBJECTION.

12:10PM  24            MR. CAZARES:  THE WITNESS HAS REFERENCED THAT HE

12:10PM  25   REVIEWED THESE, HE RECALLS IT, THEY'RE REFERENCED IN THE LAB'S

12:10PM  1    SOP THAT IS AT ISSUE RELATING TO AAP AND PROFICIENCY TESTING.

12:10PM  2    THE RELEVANCE IS CLEAR MID LANE.

12:10PM  3           THE COURT:  WELL, I'M NOT CERTAIN THAT THIS DOCUMENT

12:10PM  4    IN TOTO NEEDS TO BE INTRODUCED.  I'M NOT CERTAIN WHAT THE

12:10PM  5    RELEVANCE OF IT IS.

12:10PM  6        CAN YOU EXAMINE ON ANOTHER TOPIC, AND WE CAN TALK ABOUT

12:11PM  7    THIS OUTSIDE OF THE PRESENCE OF THE JURY?  OR DO WE NEED TO DO

12:11PM  8    THAT NOW?

12:11PM  9           MR. CAZARES:  WE CAN SET THAT ASIDE, AND I CAN MOVE

12:11PM  10   ON TO SOMETHING ELSE.

12:11PM  11          THE WITNESS:  DO YOU WANT ME TO SET IT ASIDE?

12:11PM  12   BY MR. CAZARES:

12:11PM  13   Q.   YOU CAN SET IT ASIDE.  WE WILL ADDRESS IT LATER.

12:11PM  14        IF YOU CAN NOW TAKE A LOOK AT -- SO THIS IS IN THE

12:11PM  15   GOVERNMENT'S BINDER, SO THE SMALLER BINDER, EXHIBIT 1548.

12:11PM  16   1548.

12:12PM  17   A.   IT'S NOT PRESENT IN THE BINDER.

12:12PM  18          MR. CAZARES:  YOUR HONOR, I BELIEVE 1548 HAS ALREADY

12:12PM  19   BEEN ADMITTED INTO EVIDENCE.

12:12PM  20        MAY I PUBLISH?

12:12PM  21          THE COURT:  I DON'T SEE IT IN THE GOVERNMENT'S

12:12PM  22   BINDER.

12:12PM  23        MS. ROBINSON, DO YOU SHOW THAT AS BEING ADMITTED?

12:12PM  24          THE CLERK:  I HAVE TO LOOK IN THE PAST, YOUR HONOR.

12:12PM  25        NOT YESTERDAY.

12:12PM  1           THE COURT:  I THINK IT MAY HAVE BEEN.

12:12PM  2           MR. BOSTIC:  YOUR HONOR, I SHOW THAT EXHIBIT AS

12:12PM  3     HAVING BEEN ADMITTED.

12:12PM  4           THE COURT:  I THINK MR. BOSTIC ADMITTED IT ACCORDING

12:12PM  5     TO MY NOTES, SO IT CAN BE PUBLISHED.

12:13PM  6     BY MR. CAZARES:

12:13PM  7     Q.   AND DO YOU SEE UP ON THE SCREEN EXHIBIT 1548, DR. PANDORI?

12:13PM  8     A.   IF WHAT IS ON MY SCREEN IS 1548, THEN YEAH.

12:13PM  9     Q.   OKAY.  AND THE COVER PAGE IS AN EMAIL FROM LANGLY GEE TO

12:13PM  10    AURELIE SOUPPE, ERIKA CHEUNG, JAMIE LIU, AND ROMINA RIENER.

12:13PM  11          DO YOU SEE THAT?

12:13PM  12    A.   YES.

12:13PM  13    Q.   AND THEY WERE EACH LAB ASSISTANTS IN THE CLINICAL LAB

12:13PM  14    DURING THE TIME PERIOD THAT YOU WORKED AT THERANOS?

12:13PM  15    A.   CORRECT.

12:13PM  16    Q.   AND THIS IS FEBRUARY 19TH, 2014.

12:13PM  17          DO YOU SEE THAT?

12:13PM  18    A.   YES.

12:13PM  19    Q.   AND THAT'S AROUND THE TIME PERIOD OF THIS EXPERIMENT

12:13PM  20    RELATING TO THE NEW YORK PROFICIENCY TESTING SAMPLES?

12:13PM  21    A.   I THINK SO.

12:13PM  22    Q.   AND IF WE CAN GO TO THE NEXT PAGE.

12:13PM  23          DO YOU SEE THE DATE UP ON THE SCREEN IN THE SPREADSHEET?

12:13PM  24    A.   YES.

12:13PM  25    Q.   AND THIS WAS SOMEWHAT DISCUSSED IN YOUR DIRECT

12:14PM  1    EXAMINATION.

12:14PM  2         DO YOU REMEMBER THAT?

12:14PM  3    A.   I DO.

12:14PM  4    Q.   AND THESE ARE THE VALUES, THE RESULTS FROM THE NEW YORK

12:14PM  5    PROFICIENCY TESTING EXPERIMENT; CORRECT?

12:14PM  6    A.   YES.

12:14PM  7    Q.   AGAIN TO RECAP, SO THE EXPERIMENT WAS RUNNING THE NEW YORK

12:14PM  8    SAMPLES ON THE FDA APPROVED GOLD STANDARD AS WELL AS RUNNING

12:14PM  9    THE SAME SAMPLES ON THE EDISON DEVICE AND COMPARING THE RESULTS

12:14PM 10    FROM THE TWO; CORRECT?

12:14PM 11    A.   MORE PRECISELY WHAT IS INTENDED IS THAT THE SPECIMENS ARE

12:14PM 12    TREATED THE SAME WAY AS PATIENT SPECIMENS, NOT NECESSARILY JUST

12:14PM 13    RUN ON THE DEVICES.

12:14PM 14    Q.   AND I THINK YOU ALREADY TESTIFIED THAT YOU YOURSELF DIDN'T

12:14PM 15    PROCESS THE SAMPLES FOR THE PURPOSE OF THE EXPERIMENT; CORRECT?

12:14PM 16    A.   CORRECT.

12:14PM 17    Q.   OKAY.  SO YOU DON'T KNOW WHETHER THE SPECIMENS WERE

12:14PM 18    HANDLED IN THE SAME WAY AS A PATIENT SAMPLE WOULD BE HANDLED;

12:14PM 19    CORRECT?

12:14PM 20    A.   CORRECT.

12:14PM 21    Q.   OKAY.  OTHER PEOPLE DID THAT?

12:14PM 22    A.   YES.

12:14PM 23    Q.   OKAY.  THE DATA WAS JUST PRESENTED TO YOU?

12:14PM 24    A.   THAT'S CORRECT.

12:14PM 25    Q.   OKAY.  BUT THE SPREADSHEET IS REFLECTING OR REPORTING TO

12:15PM  1    REFLECT THE RESULTS COMPARING THE EDISON RESULTS TO THE FDA

12:15PM  2    GOLD STANDARD AS YOU'VE SAID; CORRECT?

12:15PM  3    A.   CORRECT.

12:15PM  4    Q.   NOW, GETTING BACK TO THE SPREADSHEET AND SOME OF THE

12:15PM  5    NUMBERS.  I THINK IN YOUR TESTIMONY YOU REVIEWED THIS WITH THE

12:15PM  6    GOVERNMENT AND COMPARED, FOR EXAMPLE, VITAMIN D, THE NUMBERS

12:15PM  7    FOR THE PREDICATE, EVENTS 06, 07, 08, 09, 10.

12:15PM  8        DO YOU SEE THAT?

12:15PM  9    A.   YES.

12:15PM 10    Q.   AND COMPARED TO THE THERANOS RESULTS BENEATH ON ROW 3 FOR

12:15PM 11    THE SAME EVENTS 6, 7, 8, 9, AND 10.

12:15PM 12        DO YOU SEE THAT?

12:15PM 13    A.   YES.

12:15PM 14    Q.   AND YOU WERE ASKED QUESTIONS ABOUT THE DIFFERENCES AND

12:15PM 15    WHAT RECOVERY MEANT AND THINGS LIKE THAT.

12:15PM 16        DO YOU RECALL THAT?

12:15PM 17    A.   NOBODY ASKED ME WHAT RECOVERY MEANT, BUT I THINK I WAS

12:15PM 18    ASKED TO COMMENT ON THEM.

12:15PM 19    Q.   NOW, WITH RESPECT TO THE TPSA IN THE NEXT CATEGORY OF

12:16PM 20    RESULTS, AGAIN, THE SPREADSHEET REFLECTS NEW YORK TM 267, 268,

12:16PM 21    269, AND 270.

12:16PM 22        DO YOU SEE THAT?

12:16PM 23    A.   YES.

12:16PM 24    Q.   AND THAT'S THE TYPICAL FIVE SAMPLES FOR THE PT CHALLENGE

12:16PM 25    IF YOU WILL?

PANDORI CROSS BY MR. CAZARES

12:16PM  1    A.   PROBABLY.

12:16PM  2    Q.   AND THEN FOR EACH OF THE COLUMNS REFLECTING THE RESULTS

12:16PM  3    FOR EACH OF THE DIFFERENT FIVE SAMPLE CHALLENGES; CORRECT?

12:16PM  4    A.   YES.

12:16PM  5    Q.   OKAY.  NOW, FOR THE SPREADSHEET, IF YOU LOOK AT COLUMNS E

12:16PM  6    AND F -- WELL, ACTUALLY E AND G FOR THE TPSA AND EVEN THE FT4

12:16PM  7    AND TSH.

12:17PM  8        DO YOU SEE THOSE COLUMNS E AND G?

12:17PM  9    A.   YES.

12:17PM  10   Q.   EACH OF THEM REFLECT THE PREDICATE AND THE THERANOS

12:17PM  11   NUMBERS AND THEN SOMETHING CALLED RECOVERY COMPARING THE TWO?

12:17PM  12   A.   YES.

12:17PM  13   Q.   AND FOR EACH OF COLUMNS E AND G, THERE'S A COUPLE OF

12:17PM  14   NUMBERS HIGHLIGHTED, BUT THERE'S ONLY TWO NUMBERS HIGHLIGHTED.

12:17PM  15       DO YOU SEE THAT?

12:17PM  16   A.   YES.

12:17PM  17   Q.   AND THOSE APPEAR TO BE UNDER THE RERUN COLUMN; CORRECT?

12:17PM  18   A.   THEY ARE.

12:17PM  19   Q.   OKAY.  BUT UNDER COLUMNS E AND G, ONLY THE PREDICATE

12:17PM  20   NUMBERS ARE HIGHLIGHTED FOR THE TPSA.

12:17PM  21       DO YOU SEE THAT?

12:17PM  22   A.   YEAH, I DO.

12:17PM  23   Q.   SO FOR -- AND THE RERUN IN LAB PARLANCE MEANS THE SAMPLE

12:17PM  24   WAS RUN, SOME ISSUE, OBVIOUSLY WE CAN'T KNOW THAT HERE,

12:17PM  25   OCCURRED, AND IT WAS RERUN; CORRECT?

PANDORI CROSS BY MR. CAZARES

12:17PM  1    A.   YES.

12:17PM  2    Q.   AND THAT HAPPENS IN CLINICAL LABS; CORRECT?

12:17PM  3    A.   IT DOES HAPPEN.

12:17PM  4    Q.   OKAY.  AND AGAIN, GETTING BACK TO COLUMNS E AND G, THE

12:17PM  5    ONLY NUMBERS THAT ARE HIGHLIGHTED FOR THE TPSA ARE THE

12:18PM  6    PREDICATE NUMBER AND THE -- THE PREDICATE NUMBER OF 3.1 AND 7.5

12:18PM  7    FOR COLUMNS E AND G.

12:18PM  8         DO YOU SEE THAT?

12:18PM  9    A.   YES.

12:18PM  10   Q.   AND THOSE ARE RUN ON THE GOLD STANDARD, THE FDA GOLD

12:18PM  11   STANDARD; CORRECT?

12:18PM  12   A.   YES.

12:18PM  13   Q.   OKAY.  YOU WOULD AGREE WITH ME THERE'S NO REASON WHY YOU

12:18PM  14   WOULD RERUN THE PT ON THE FDA GOLD STANDARD IN DOING THE

12:18PM  15   COMPARISON; CORRECT?

12:18PM  16   A.   THERE'S NO REASON TO RERUN ON THE FDA GOLD STANDARD?

12:18PM  17   Q.   CORRECT?

12:18PM  18   A.   I DON'T KNOW WHAT THE REASON WHY WAS THIS RERUN.

12:18PM  19   Q.   WELL, LET ME BACK UP THOUGH.

12:18PM  20        DO YOU IN FACT KNOW YOURSELF, SETTING ASIDE THE

12:18PM  21   SPREADSHEET, THAT THE FDA GOLD STANDARD DEVICE WAS USED TO

12:18PM  22   RERUN THE TWO SAMPLES FOR TPSA AS REFLECTED IN COLUMNS E AND G?

12:18PM  23   A.   THE SAME PREDICATE METHOD THAT WAS RUN INITIALLY?

12:18PM  24   Q.   I'M ASKING YOU DO YOU KNOW YOURSELF WHETHER RERUNS WERE

12:18PM  25   ACTUALLY DONE ON THE PREDICATE METHOD?

PANDORI CROSS BY MR. CAZARES

12:19PM  1    A.   DO I KNOW MYSELF?

12:19PM  2         BASED ON WHAT I'M LOOKING AT --

12:19PM  3    Q.   THAT'S NOT WHAT I'M ASKING.  THAT'S NOT WHAT I'M ASKING

12:19PM  4    YOU, SIR.

12:19PM  5         I'M ASKING UNDER THE RERUN COLUMN THERE ARE ONLY TWO

12:19PM  6    NUMBERS HIGHLIGHTED; CORRECT?

12:19PM  7    A.   CORRECT.

12:19PM  8    Q.   AND IT'S 3.1 AND 7.5; CORRECT?

12:19PM  9    A.   YES.

12:19PM  10   Q.   AND THOSE NUMBERS ARE THE EXACT SAME AS WHAT IS REFLECTED

12:19PM  11   IN COLUMN D AND IN COLUMN F; CORRECT?

12:19PM  12   A.   CORRECT.

12:19PM  13   Q.   OKAY.  BUT IN THIS PT COMPARISON COMPARING THE PREDICATE

12:19PM  14   GOLD TO THE EDISON DEVICE, YOU'RE NOT AWARE OF THE FACT AND

12:19PM  15   DON'T KNOW THAT THE PT SAMPLE WAS RUN TWICE ON THE FDA GOLD

12:19PM  16   STANDARD FOR THE TPSA AS REFLECTED IN COLUMNS E AND G; CORRECT?

12:19PM  17   A.   YOU'RE ASKING ME WHETHER I KNOW IT.  THERE'S EVIDENCE IN

12:19PM  18   FRONT OF ME THAT IT WAS RERUN ON THAT DEVICE BECAUSE THERE'S

12:19PM  19   NOT TWO LINES FOR PREDICATE THERE, THERE'S ONLY ONE.

12:19PM  20   Q.   THAT'S NOT WHAT I'M ASKING YOU.

12:19PM  21        WHAT I'M ASKING YOU FOR COLUMN E, WHICH IS THE RERUN

12:20PM  22   COLUMN, THERE'S ONLY TWO NUMBERS HIGHLIGHTED; CORRECT?

12:20PM  23   A.   CORRECT.

12:20PM  24   Q.   AND THAT'S THE PREDICATE VALUES?

12:20PM  25   A.   YES.

12:20PM  1    Q.   AND YOU WOULD AGREE WITH ME THAT THE THERANOS VALUES ON

12:20PM  2    COLUMNS E AND G, THOSE ARE VALUES, ACCORDING TO THE

12:20PM  3    SPREADSHEETS, FROM A RERUN, ACCORDING AT LEAST AS FAR AS THE

12:20PM  4    SPREADSHEET IS CONCERNED; CORRECT?

12:20PM  5    A.   AS FAR AS THE SPREADSHEET IS CONCERNED THOSE ARE IN A

12:20PM  6    RERUN COLUMN.

12:20PM  7    Q.   OKAY.  AND THEY'RE DISTINGUISHED FROM THE PREDICATE COLUMN

12:20PM  8    BY THE HIGHLIGHTS TO THE PREDICATE DEVICE; CORRECT?

12:20PM  9    A.   THEY'RE DISTINGUISHED VISUALLY BY THE FACT THAT SOME ARE

12:20PM 10    HIGHLIGHTED AND SOME ARE NOT.

12:20PM 11    Q.   DESPITE THE FACT THAT THEY'RE EACH IN THE SAME RERUN

12:20PM 12    COLUMN WITHIN THE SPREADSHEET; CORRECT?

12:20PM 13    A.   THAT'S CORRECT.

12:20PM 14    Q.   AND YOU WOULD AGREE WITH ME THAT THE FDA APPROVED GOLD

12:20PM 15    STANDARD IS A MORE RELIABLE DEVICE; CORRECT?

12:20PM 16    A.   YES.

12:20PM 17    Q.   AND WITHIN THIS -- WITHIN THE SCOPE OF THIS TEST, THERE

12:20PM 18    WAS NO REASON TO RERUN THE FDA APPROVED DEVICE USING THE

12:20PM 19    PROFICIENCY TESTING SAMPLE FOR THIS EXPERIMENT?

12:21PM 20              MR. BOSTIC:  I'M SORRY.  OBJECTION.  FOUNDATION.

12:21PM 21    CALLS FOR SPECULATION GIVEN THAT HE DIDN'T PERSONALLY CONDUCT

12:21PM 22    THE TEST.

12:21PM 23              THE COURT:  I THINK THAT IS WHAT THE EARLIER

12:21PM 24    TESTIMONY IS.  MAYBE YOU SHOULD CLEAR THAT UP.  I'M NOT

12:21PM 25    CERTAIN.

12:21PM  1          DO YOU UNDERSTAND THE QUESTION, SIR?

12:21PM  2               THE WITNESS:  I BELIEVE I UNDERSTAND THE QUESTION.

12:21PM  3               THE COURT:  LET'S HAVE -- WHY DON'T YOU ASK IT AGAIN

12:21PM  4   JUST FOR CLARITY.

12:21PM  5   BY MR. CAZARES:

12:21PM  6   Q.   AGAIN, YOU'VE TESTIFIED ALREADY THAT THE FDA APPROVED GOLD

12:21PM  7   STANDARD IS A MORE RELIABLE DEVICE THAN THE EDISON IN YOUR

12:21PM  8   VIEW?

12:21PM  9   A.   YES.

12:21PM 10   Q.   AND IN THE CONTEXT OF THIS EXPERIMENT, TRYING TO COMPARE

12:21PM 11   THE EDISON TO THE GOLD STANDARD, THERE'S NO REASON TO RETEST

12:21PM 12   THE SAMPLE ON THE GOLD STANDARD IN THIS EXPERIMENT; CORRECT?

12:21PM 13   A.   THERE MAY HAVE BEEN A REASON FOR THE TECHNICIAN TO RERUN

12:21PM 14   IT, BUT BECAUSE I DIDN'T OBSERVE THE TECHNICIAN OR RUN THESE

12:21PM 15   SPECIMENS, I DON'T KNOW WHAT THE RATIONALE WAS.

12:21PM 16   Q.   BUT YOU DON'T ACTUALLY KNOW THAT THEY WERE RERUN, CORRECT,

12:21PM 17   SETTING THE SPREADSHEET ASIDE?

12:21PM 18   A.   YOU'RE ASKING ME IF I HAVE VISUAL EVIDENCE OF THAT?

12:22PM 19   Q.   YES.

12:22PM 20   A.   NO, I DON'T KNOW.

12:22PM 21   Q.   AND YOU DIDN'T RUN THE SAMPLES YOURSELF?

12:22PM 22   A.   I DID NOT RUN THE SAMPLES MYSELF.

12:22PM 23   Q.   OKAY.  AND YOU DIDN'T PUT THE SPREADSHEET TOGETHER?

12:22PM 24   A.   I DIDN'T WHAT?

12:22PM 25   Q.   YOU DIDN'T PUT THE SPREADSHEET TOGETHER?

```
12:22PM   1      A.   I DID NOT.

12:22PM   2      Q.   OKAY.  YOU CAN SET THAT ASIDE.

12:22PM   3           DR. PANDORI, IF YOU CAN TAKE A LOOK AT EXHIBIT 1580, WHICH

12:22PM   4      IS ALREADY IN EVIDENCE AND IT'S IN VOLUME 1.

12:22PM   5           YOUR HONOR, MAY I PUBLISH?

12:22PM   6                THE COURT:  YES.

12:22PM   7                MR. CAZARES:  IT'S IN THE GOVERNMENT'S VOLUME 1.

12:22PM   8                THE WITNESS:  DID YOU SAY 15E?

12:23PM   9                MR. CAZARES:  1580 IN THE GOVERNMENT'S BINDER.

12:23PM  10                THE WITNESS:  80.

12:23PM  11                THE COURT:  IT'S ALSO ON YOUR SCREEN.

12:23PM  12                THE WITNESS:  OH, I'VE GOT IT.

12:23PM  13      BY MR. CAZARES:

12:23PM  14      Q.   DO YOU HAVE THAT IN FRONT OF YOU?

12:23PM  15      A.   YES.

12:23PM  16      Q.   OKAY.  AND STARTING AT 1580 IS AN EMAIL EXCHANGE CHAIN,

12:23PM  17      THE LATTER OF WHICH AT THE TOP IS FEBRUARY 25, 2014, A MESSAGE

12:23PM  18      FROM MR. BALWANI TO DR. ROSENDORFF.

12:23PM  19           DO YOU SEE THAT?

12:23PM  20      A.   YES.

12:23PM  21      Q.   OKAY.  AND THIS IS A DOCUMENT DISCUSSED IN YOUR DIRECT

12:23PM  22      EXAM YESTERDAY?

12:23PM  23      A.   YES.

12:23PM  24      Q.   AND THIS IS SUBSEQUENT TO THE NEW YORK PROFICIENCY TESTING

12:23PM  25      EXPERIMENT THAT WE JUST DISCUSSED?
```

12:23PM  1      A.   EXCUSE ME.  YES.

12:23PM  2      Q.   OKAY.  AND YOU HAD MENTIONED BEFORE THAT AT THE TIME THE

12:24PM  3      EXPERIMENT WAS DONE, YOU WERE UNAWARE OF THE SOP THAT

12:24PM  4      DR. ROSENDORFF HAD ALREADY APPROVED FOR AAP; CORRECT?

12:24PM  5      A.   CORRECT.

12:24PM  6      Q.   OKAY.  AND TURNING TO PAGE 5 WITHIN EXHIBIT 1580.  WE'LL

12:24PM  7      PUT IT UP ON THE SCREEN.

12:24PM  8      A.   YES.

12:24PM  9      Q.   THERE'S A MESSAGE FROM DR. DANIEL YOUNG TO DR. ROSENDORFF

12:24PM  10     COPYING MS. HOLMES AND MR. BALWANI REGARDING PROFICIENCY

12:24PM  11     TESTING FOR LDT'S.

12:24PM  12          DO YOU SEE THAT?

12:24PM  13     A.   YES.

12:24PM  14     Q.   AND THAT'S BEFORE YOU JOINED THERANOS; CORRECT?

12:24PM  15     A.   IT IS.

12:24PM  16          THE COURT:  DOES SOMEONE HAVE A PHONE ON?  I HEAR A

12:25PM  17     RING.  IF EVERYONE COULD CHECK YOUR DEVICES, PLEASE.

12:25PM  18          (CELL PHONE RINGING.)

12:25PM  19          THE COURT:  I'M SORRY, COUNSEL.  GIVE ME A MOMENT

12:25PM  20     HERE.

12:25PM  21          CAN WE RESET THE SYSTEM?

12:25PM  22          THE CLERK:  I CAN.

12:25PM  23          THE COURT:  I'M SORRY.

12:25PM  24          FOLKS, FEEL FREE TO STAND UP AND STRETCH FOR A MOMENT IF

12:26PM  25     YOU WOULD LIKE.

12:26PM  1              (STRETCHING.)

12:26PM  2                   THE COURT:  LET'S TRY IT AGAIN.  THANK YOU.  I

12:26PM  3      APOLOGIZE FOR THE INCONVENIENCE.

12:26PM  4                   MR. CAZARES:  GREAT.  THANK YOU, YOUR HONOR.

12:26PM  5      Q.  RETURNING BACK TO EXHIBIT 1580 THAT IS ON THE SCREEN,

12:26PM  6      DR. PANDORI.

12:26PM  7          WE JUST REFERENCED THE MESSAGE FROM DANIEL YOUNG TO

12:26PM  8      DR. ROSENDORFF ON NOVEMBER 26TH, 2013.

12:27PM  9          BUT IF WE TURN THE PAGE TO PAGE 4, THERE'S A MESSAGE IN

12:27PM 10      THE BOTTOM QUARTILE FROM DR. YOUNG TO YOURSELF FEBRUARY 24TH,

12:27PM 11      2014.

12:27PM 12          DO YOU SEE THAT?

12:27PM 13      A.  I SEE IT.

12:27PM 14      Q.  AND THIS IS DR. YOUNG FORWARDING THE PRIOR EMAIL STRING TO

12:27PM 15      YOU, AND HE WRITES, "FYI:  AS BACKGROUND"?

12:27PM 16      A.  I SEE IT.

12:27PM 17      Q.  AND THIS WAS PART OF THE DISCUSSIONS AND COMMUNICATIONS

12:27PM 18      GOING ON IN THE LAB RELATING TO THIS NEW YORK PROFICIENCY

12:27PM 19      TESTING EXPERIMENT; CORRECT?

12:27PM 20      A.  YES.

12:27PM 21      Q.  AND THIS IS DR. YOUNG FORWARDING TO YOU THE BACKGROUND TO

12:27PM 22      THE IMPLEMENTATION OF AN AAP PROGRAM AT THERANOS; CORRECT?

12:27PM 23      A.  WHAT WAS THAT?

12:27PM 24      Q.  THE EMAIL REFLECTS DR. YOUNG FORWARDING TO YOU BACKGROUND

12:27PM 25      DISCUSSIONS PRIOR TO YOUR JOINING THERANOS RELATING TO THE AAP

12:27PM 1    PROGRAM?

12:27PM 2    A.   IT LOOKS THAT WAY.

12:27PM 3    Q.   AND RETURNING BACK TO THE MESSAGE ON PAGE 5 FROM DR. YOUNG

12:28PM 4    TO DR. ROSENDORFF, ELIZABETH HOLMES, AND SUNNY BALWANI.

12:28PM 5         WITHIN THE MESSAGE DR. YOUNG IS EXPLAINING KIND OF

12:28PM 6    PROVIDING HIS VIEW AS TO WHY AN AAP PROGRAM WAS APPROPRIATE.

12:28PM 7         DO YOU SEE THAT?

12:28PM 8    A.   YES.

12:28PM 9    Q.   OKAY.  AND YOU REVIEWED THIS CONTEMPORANEOUSLY IN FEBRUARY

12:28PM 10   OF 2014 WHEN YOU WERE AT THERANOS; CORRECT?

12:28PM 11   A.   THIS EMAIL WAS SENT TO ME.

12:28PM 12   Q.   AND DID YOU REVIEW IT?

12:28PM 13   A.   PROBABLY.

12:28PM 14   Q.   FOCUSSING ON THE SECOND PARAGRAPH FROM DR. YOUNG TO

12:28PM 15   DR. ROSENDORFF COPYING MR. BALWANI AND MS. HOLMES, DO YOU SEE

12:28PM 16   UNDER THE -- THAT PARAGRAPH STARTING "FOR OUR LDT'S, ALL OF

12:28PM 17   WHICH ARE CLIA REGULATED AT THE MOMENT, WE NEED SOP'S FOR PT."

12:29PM 18        DO YOU SEE THAT?

12:29PM 19   A.   YEAH, I SEE THAT.

12:29PM 20   Q.   AND THEN HE WROTE, "HOWEVER, THERE ARE SEVERAL FACTORS

12:29PM 21   THAT PREVENT US FROM ENROLLING IN THE TRADITIONAL PT PROGRAM."

12:29PM 22        DO YOU SEE THAT AS WELL?

12:29PM 23   A.   THIS IS ON PAGE 5.

12:29PM 24   Q.   PAGE 5, SECOND PARAGRAPH, FULL PARAGRAPH.

12:29PM 25   A.   THIS IS FROM -- TO ADAM ROSENDORFF?

12:29PM  1    Q.   IT IS UP ON THE SCREEN AS WELL IF THAT WILL HELP.

12:29PM  2    A.   FROM DANIEL YOUNG?

12:29PM  3    Q.   YES.

12:29PM  4    A.   YES, I SEE THAT.

12:29PM  5    Q.   AND EXPLAINING WHY THERE ARE SEVERAL FACTS THAT PREVENT

12:29PM  6    US, THERANOS, FROM ENROLLING IN TRADITIONAL PT PROGRAMS,

12:29PM  7    DR. YOUNG INFORMS DR. ROSENDORFF, "A PEER GROUP MOST

12:29PM  8    SIGNIFICANTLY IS THAT A PERFORMANCE IN PT SURVEYS IS BASED ON

12:29PM  9    AN EVALUATION AGAINST A PEER GROUP."

12:29PM 10         DO YOU SEE THAT?

12:29PM 11    A.   I SEE THAT.

12:29PM 12    Q.   AND IT GOES ON, "A PEER GROUP IS COMPOSED OF DIFFERENT

12:29PM 13    LABS ALL RUNNING IN THE SAME METHOD/DEVICE."

12:29PM 14    A.   I SEE THAT.

12:29PM 15    Q.   "THE GOALS OF SUCH PT IS TO COMPARE THE PERFORMANCE OF AN

12:30PM 16    INDIVIDUAL LABORATORY TO THEIR PEER GROUP AND SOMETIMES TO

12:30PM 17    TARGET VALUES ESTABLISHED BY REFERENCE METHODS OR REFERENCE

12:30PM 18    LABORATORIES."

12:30PM 19         DO YOU SEE THAT?

12:30PM 20    A.   I SEE THAT.

12:30PM 21    Q.   AND THIS IS ADVICE BEING PROVIDED BY DR. YOUNG TO

12:30PM 22    DR. ROSENDORFF AND COPYING MS. HOLMES AND MR. BALWANI.

12:30PM 23         DO YOU SEE THAT?

12:30PM 24    A.   YES.

12:30PM 25    Q.   AND YOU WEREN'T PRESENT AT THE TIME; CORRECT?

12:30PM  1    A.   CORRECT.

12:30PM  2    Q.   OKAY.  AND ULTIMATELY DR. ROSENDORFF ACCEPTED DR. YOUNG'S

12:30PM  3    RATIONALE AND IMPLEMENTED AN SOP FOR AAP FOR THE EDISON IN

12:30PM  4    DECEMBER OF 2013; CORRECT?

12:30PM  5    A.   I DON'T KNOW WHAT YOU MEAN BY "IMPLEMENTED" BECAUSE THIS

12:30PM  6    WASN'T DONE ON THOSE SPECIMENS.

12:30PM  7    Q.   DR. ROSENDORFF SIGNED OFF AND APPROVED AN SOP FOR AAP FOR

12:30PM  8    THE EDISON PROFICIENCY TESTING; CORRECT?

12:30PM  9    A.   WE SAW THAT IN AN EARLIER DOCUMENT.

12:30PM  10   Q.   CORRECT.

12:30PM  11   A.   CORRECT.

12:30PM  12   Q.   AND SO YOU WOULD AGREE WITH ME, DR. ROSENDORFF ACCEPTED

12:30PM  13   DR. YOUNG'S ADVICE; CORRECT?

12:30PM  14   A.   I PARSED YOUR WORDS.  I AGREE WITH ACCEPTED, NOT

12:31PM  15   IMPLEMENTED.

12:31PM  16   Q.   AND THE PERSON RESPONSIBLE FOR IMPLEMENTING THE AAP

12:31PM  17   PROGRAM WITHIN THE CLINICAL LAB WAS --

12:31PM  18        (CELL PHONE RINGING.)

12:31PM  19   BY MR. CAZARES:

12:31PM  20   Q.   WE'RE ALL GOOD.  IT HAPPENS ALL OF THE TIME.

12:31PM  21        THE PERSON RESPONSIBLE FOR IMPLEMENTING THE AAP PROGRAM

12:31PM  22   WITHIN THE CLINICAL LAB WAS THE CLIA LAB DIRECTOR,

12:31PM  23   ADAM ROSENDORFF; CORRECT?

12:31PM  24   A.   CORRECT.

12:31PM  25   Q.   UNDER -- CONTINUING WITH DR. YOUNG'S EMAIL MESSAGE TO

12:31PM  1     DR. ROSENDORFF UNDER PROPOSAL.

12:31PM  2         AGAIN, DR. ROSENDORFF WRITES, "WHERE TRADITIONAL PT

12:31PM  3     OPTIONS ARE NOT AVAILABLE, WE MUST INITIATE ALTERNATIVE

12:32PM  4     ASSESSMENT PROCEDURE.  NAMELY, FOR NON-CMS-REGULATED TESTS, FOR

12:32PM  5     THOSE TESTS WHICH LACK FDA CLEARANCE OR FOR TESTS THAT LACK A

12:32PM  6     SUITABLE PEER GROUP, COMMERCIAL OR EXTERNAL PT PROGRAMS ARE NOT

12:32PM  7     AVAILABLE AND AAP ARE USED TO HELP ASSESS THE QUALITY/ACCURACY

12:32PM  8     OF LABORATORY TEST SYSTEM PERFORMANCE."

12:32PM  9         DO YOU SEE THAT?

12:32PM 10     A.   YES.  YOU SAID DR. ROSENDORFF SAID THAT.

12:32PM 11     Q.   THIS WAS IN DR. YOUNG'S EMAIL.

12:32PM 12         DO YOU SEE THAT?

12:32PM 13     A.   YES.

12:32PM 14     Q.   OKAY.  TURNING TO PAGE 3 OF THE EMAIL CHAIN.

12:32PM 15     A.   YES.

12:32PM 16     Q.   AND ON THIS PORTION OF THE CHAIN, YOU'RE ON THE MESSAGE AT

12:32PM 17     THE BOTTOM THIRD ABOUT -- FROM DR. YOUNG TO MR. BALWANI,

12:33PM 18     LANGLY GEE, COPYING YOU, DR. ROSENDORFF, AND SAMARTHA ANEKAL.

12:33PM 19         DO YOU SEE THAT?

12:33PM 20     A.   YES.

12:33PM 21     Q.   FEBRUARY 24TH, 2014, AGAIN.

12:33PM 22         AND IN THIS MESSAGE DR. YOUNG ADVISES, "WE ALSO NEED

12:33PM 23     INFORMATION ABOUT THE PT SAMPLES, SUCH AS WHAT MATRIX WHERE

12:33PM 24     THEY, DID THEY HAVE ANTICOAGULANT IN THEM, ET CETERA.  THESE PT

12:33PM 25     SAMPLES ARE USUALLY FORMULATED WITH CERTAIN TEST SYSTEMS IN

PANDORI CROSS BY MR. CAZARES

12:33PM 1    MIND, WHICH IS ONE OF THE REASONS I AM NOT COMFORTABLE USING

12:33PM 2    THEM WITHOUT A PEER GROUP.  OTHERWISE, WE HAVE TO DO EXTENSIVE

12:33PM 3    STUDY TO UNDERSTAND OUR THESE PT SAMPLES MAY PERFORM

12:33PM 4    DIFFERENTLY ON OUR SYSTEM VERSUS ONE OF THE SO-CALLED

12:33PM 5    CLUNKERS."

12:33PM 6        DO YOU SEE THAT?

12:33PM 7    A.   I SEE THAT.

12:33PM 8    Q.   AND AGAIN, THIS IS ADVICE COMING FROM DR. YOUNG TO

12:33PM 9    MR. BALWANI, MR. GEE, AND COPYING YOURSELF AND DR. ROSENDORFF?

12:33PM 10   A.   THAT'S RIGHT.

12:33PM 11   Q.   AND DID YOU DISAGREE WITH DR. YOUNG REGARDING THE IMPACT

12:33PM 12   OR POTENTIAL IMPACT OF MATRIX EFFECT ON THE JUSTIFICATION FOR

12:34PM 13   USING AAP FOR THE EDISON?

12:34PM 14   A.   IN MY FIELD I NEITHER AGREE OR DISAGREE WITH THINGS LIKE

12:34PM 15   THIS UNTIL I HAVE DATA TO DO SO.

12:34PM 16       AND DANIEL YOUNG --

12:34PM 17   Q.   I APOLOGIZE.  CONTINUE.

12:34PM 18   A.   DANIEL YOUNG, TO MY KNOWLEDGE, IS NOT A DOCTOR OF

12:34PM 19   BIOCHEMISTRY, CHEMISTRY, BIOLOGY, OR MEDICINE.

12:34PM 20   Q.   YOU IDENTIFIED HIM PREVIOUSLY IN YOUR TESTIMONY YESTERDAY,

12:34PM 21   I THINK, AS SOMEONE WHO CONSULTED WITH MANAGEMENT, WITH

12:34PM 22   DR. ROSENDORFF WHO WAS A KIND OF FIXER WITHIN THE COMPANY;

12:34PM 23   CORRECT?

12:34PM 24   A.   I DON'T KNOW THAT I USED THE WORD "FIXER."

12:34PM 25       I'M SORRY, I DON'T EVEN RECALL WHAT I REFERRED TO HIM AS,

12:34PM  1    BUT I THINK HE -- MY MEMORY OF HIM WAS THAT HE WAS TRAINED IN

12:34PM  2    MATHEMATICS OR COMPUTER SCIENCE.

12:34PM  3    Q.   A PH.D. AT M.I.T.?

12:34PM  4    A.   I SEE.

12:34PM  5    Q.   YOU UNDERSTOOD THAT AT THE TIME?

12:34PM  6    A.   NO.

12:34PM  7    Q.   OKAY.  CONTINUING WITH THE SAME EXHIBIT TO THE TOP PAGE OF

12:35PM  8    THE FIRST PAGE, AND I THINK YOU DISCUSSED THIS WITH GOVERNMENT

12:35PM  9    COUNSEL YESTERDAY.

12:35PM  10       THIS IS THE MESSAGE FROM MR. BALWANI TO DR. ROSENDORFF,

12:35PM  11   YOURSELF, DANIEL YOUNG, LANGLY GEE, COPYING OTHERS ON

12:35PM  12   FEBRUARY 25, 2014.

12:35PM  13       DO YOU SEE THAT?

12:35PM  14   A.   YES.

12:35PM  15   Q.   AT THE TOP.

12:35PM  16       AND THIS IS THE MESSAGE WHERE MR. BALWANI STARTED, "I ALSO

12:35PM  17   WANT TO REITERATE THIS POINT.  I AM EXTREMELY IRRITATED AND

12:35PM  18   FRUSTRATED BY FOLKS WITH NO LEGAL BACKGROUND TAKING LEGAL

12:35PM  19   POSITIONS AND INTERPRETATIONS ON THESE MATTERS AND JUNIOR CLIA

12:35PM  20   AND NON-CLIA PERSONNEL CHALLENGING OUR CLIA SOP'S."

12:35PM  21       DID YOU HEAR THAT?  DID YOU SEE THAT?  I'M SORRY.

12:35PM  22   A.   BOTH, YES.

12:35PM  23   Q.   OKAY.  AND THE CLIA SOP THAT IS BEING REFERENCED IS THIS

12:35PM  24   ISSUE OF THE AAP SOP FOR THE EDISON DEVICE; CORRECT?

12:36PM  25   A.   IT'S IN REFERENCE TO THE PROFICIENCY TESTING ISSUE THAT

12:36PM  1       WE'VE BEEN TALKING ABOUT.

12:36PM  2       Q.   AND AMONG THE SOP'S AT ISSUE IS THE AAP SOP FOR THE

12:36PM  3       EDISON; CORRECT?

12:36PM  4       A.   CORRECT.

12:36PM  5       Q.   OKAY.  AND THAT SOP YOU WERE UNAWARE OF WHEN YOU CONDUCTED

12:36PM  6       THE NEW YORK PROFICIENCY TESTING EXPERIMENT; CORRECT?

12:36PM  7       A.   CORRECT.

12:36PM  8       Q.   FOCUSSING ON THE SECOND PARAGRAPH.

12:36PM  9       A.   YES.

12:36PM  10      Q.   NOW, MR. BALWANI WRITES, "THESE PAST FEW DAYS, WE HAVE

12:36PM  11      WASTED SO MUCH TIME TALKING TO PEOPLE OUTSIDE OF CLIA WHO HAVE

12:37PM  12      COME TO US TO SHARE THAT OUR PT ON VITAMIN D ON EDISON HAS

12:37PM  13      FAILED.  THESE PT SAMPLES SHOULD HAVE NEVER RUN ON EDISONS TO

12:37PM  14      BEGIN WITH.  WE SHOULD FOLLOW OUR SOP'S REGARDING PT."

12:37PM  15           DO YOU SEE THAT?

12:37PM  16      A.   YES, I SEE IT.

12:37PM  17      Q.   OKAY.  YOU AGREED WITH MR. BALWANI'S MESSAGE IN THIS EMAIL

12:37PM  18      THAT WE, THERANOS, SHOULD FOLLOW OUR CURRENT SOP'S REGARDING

12:37PM  19      PT, PROFICIENCY TESTING?

12:37PM  20      A.   YOU NEED SOME KIND OF PROFICIENCY TESTING FOR THESE

12:37PM  21      SPECIMENS.

12:37PM  22      Q.   SO YOU AGREE WITH MR. BALWANI'S STATEMENT ON THAT POINT?

12:37PM  23      A.   THAT THESE PT SAMPLES SHOULD NEVER HAVE RUN ON --

12:37PM  24      Q.   THAT'S NOT WHAT I'M ASKING.  I'M VERY SPECIFIC.

12:37PM  25      A.   WHAT ARE YOU ASKING?

12:37PM  1    Q.   DR. PANDORI, IN THE SECOND PARAGRAPH MR. BALWANI WROTE,

12:37PM  2    "WE SHOULD FOLLOW OUR CURRENT SOP'S REGARDING PT."

12:37PM  3         AND YOU UNDERSTAND THAT TO BE PROFICIENCY TESTING;

12:38PM  4    CORRECT?

12:38PM  5    A.   CORRECT.

12:38PM  6    Q.   OKAY.  AND YOU AGREE WITH THAT STATEMENT BY MR. BALWANI?

12:38PM  7    A.   AT THE TIME I DIDN'T KNOW WHAT THE SOP WAS, SO I COULD NOT

12:38PM  8    AGREE OR DISAGREE WITH THAT STATEMENT.

12:38PM  9    Q.   SO REGARDLESS OF WHETHER DR. ROSENDORFF HAD IMPLEMENTED,

12:38PM 10    AUTHORIZED, APPROVED AN SOP FOR THE PROFICIENCY TESTING FOR THE

12:38PM 11    EDISON, YOU WOULD NOT AGREE THAT THE EXISTING LAB DIRECTOR

12:38PM 12    STANDARD OPERATING PROCEDURE SHOULD BE FOLLOWED?

12:38PM 13    A.   THAT WOULD BE THE LAB DIRECTOR'S DECISION.

12:38PM 14    Q.   OKAY.  GETTING BACK TO THE FOURTH PARAGRAPH IN THAT

12:38PM 15    MESSAGE THAT WAS FOCUSSED ON BY MR. BOSTIC YESTERDAY.

12:38PM 16         IT READS AT THE TOP, "IT IS CRITICAL THAT IF ANYONE IN

12:38PM 17    CLIA OR OUTSIDE HAS ANY QUESTIONS, THEY ASK YOU (MARK AND ADAM)

12:38PM 18    AND THEY BE REFERRED TO THE SOP'S."

12:38PM 19         DO YOU SEE THAT?

12:39PM 20    A.   YES.

12:39PM 21    Q.   AND THE MARK IS REFERRING TO YOURSELF, DR. PANDORI;

12:39PM 22    CORRECT?

12:39PM 23    A.   I THINK SO.

12:39PM 24    Q.   AND THE ADAM IS DR. ROSENDORFF?

12:39PM 25    A.   YES.

12:39PM   1    Q.   AND YOU AGREE, MR. BALWANI IS CORRECT THAT QUESTIONS IN

12:39PM   2    CLIA REGARDING PROFICIENCY TESTING ISSUES SHOULD HAVE BEEN

12:39PM   3    DIRECTED AT THAT TIME TO DR. ROSENDORFF AND TO YOU; CORRECT?

12:39PM   4    A.   CORRECT.

12:39PM   5    Q.   AND THE CLINICAL LAB EMPLOYEES SHOULD BE DIRECTED TO THE

12:39PM   6    SOP'S REGARDING PROFICIENCY TESTING FOR ANY QUESTIONS; CORRECT?

12:39PM   7    A.   CORRECT.

12:39PM   8    Q.   SO YOU AGREE WITH WHAT MR. BALWANI IS WRITING HERE IN THIS

12:39PM   9    EMAIL; CORRECT?

12:39PM  10    A.   WHAT PART OF THE EMAIL?

12:39PM  11    Q.   WHAT I JUST READ, THAT THE EMPLOYEES SHOULD BE REFERRED TO

12:39PM  12    YOU AND DR. ROSENDORFF AND THE SOP'S REGARDING PROFICIENCY

12:39PM  13    TESTING?

12:39PM  14    A.   THAT'S NOT WHAT IS HIGHLIGHTED HERE.

12:39PM  15    Q.   I JUST ASKED THE QUESTION.

12:40PM  16         YOU AGREE WITH MR. BALWANI THAT EMPLOYEES WITHIN THE

12:40PM  17    CLINICAL LAB WHO HAD QUESTIONS SHOULD BE DIRECTED TO YOU,

12:40PM  18    DR. ROSENDORFF, AND THE SOP'S?

12:40PM  19    A.   THEY SHOULD BE TO.  OF COURSE THEY SHOULD BE DIRECTED TO

12:40PM  20    THE LAB DIRECTOR.

12:40PM  21    Q.   YOU CAN SET THAT ASIDE.

12:40PM  22         IF YOU CAN TAKE A LOOK AT, AND IT'S ALREADY IN EVIDENCE,

12:40PM  23    AT EXHIBIT 1570.

12:40PM  24         YOUR HONOR, MAY WE PUBLISH?  I THINK IT'S ALREADY IN

12:40PM  25    EVIDENCE?

12:40PM  1              THE COURT:  YES.

12:40PM  2              MR. CAZARES:  1570.

12:40PM  3    Q.  IT'S ALREADY ON THE SCREEN, DR. PANDORI, IF THAT IS

12:40PM  4    CONVENIENT.

12:40PM  5         1570 I BELIEVE IS ALSO A MESSAGE YOU COVERED YESTERDAY

12:40PM  6    WITH MR. BOSTIC, AND THE LATTER OF WHICH AT THE TOP OF THE

12:41PM  7    FIRST PAGE IS A FEBRUARY 25TH, 2014 EMAIL FROM YOURSELF TO

12:41PM  8    DR. ROSENDORFF.

12:41PM  9         DO YOU SEE THAT?

12:41PM  10   A.  YES.

12:41PM  11   Q.  AND I'M NOT GOING TO ASK YOU ABOUT IT BECAUSE WE JUST

12:41PM  12   DISCUSSED IT, BUT THIS IS A SUBSEQUENT MESSAGE WITHIN THIS

12:41PM  13   LARGER CHAIN REGARDING THE PROFICIENCY TESTING FOR LDT'S AS

12:41PM  14   REFLECTED IN THE SUBJECT LINE OF THE EMAIL?

12:41PM  15   A.  YES.

12:41PM  16   Q.  SO WE'RE TALKING ABOUT THE SAME SUBJECT THAT WE JUST

12:41PM  17   TALKED ABOUT A MINUTE OR TWO AGO?

12:41PM  18   A.  YEAH, WE ARE.

12:41PM  19   Q.  OKAY.  IF YOU LOOK AT PAGE 3 OF THE EXHIBIT A MESSAGE FROM

12:42PM  20   MR. BALWANI TO DR. ROSENDORFF, DANIEL YOUNG, LANGLY GEE COPYING

12:42PM  21   YOURSELF AND SAMARTHA ANEKAL.

12:42PM  22        DO YOU SEE THAT RIGHT IN THE MIDDLE OF THE PAGE?

12:42PM  23   A.  YES.

12:42PM  24   Q.  AND IN THE MESSAGE MR. BALWANI WROTE IN RESPONSE TO PRIOR

12:42PM  25   MESSAGES REGARDING THIS ISSUE, "AND OUR VALIDATION AGAINST

12:42PM 1      IMMULITE HAS BEEN EXCELLENT IN THE PAST.  IT IS THESE PT

12:42PM 2      SAMPLES THAT ARE OFF."

12:42PM 3          AND THEN CONTINUING, "THIS IS A GREAT PLACE TO START IS

12:42PM 4      WHAT MARK, YOU AND I DISCUSSED TODAY -- TO RUN INTERNAL PT'S

12:42PM 5      HERE AND COMPARE WITH SAMPLES WE DRAW HERE.  LET'S RUN FEW

12:42PM 6      STUDIES ON THESE 4-8 ASSAYS.  I THINK OUR ANSWERS WILL BECOME

12:42PM 7      VERY CLEAR THAT WHAT DANIEL IS SUGGESTING IS ACCURATE."

12:42PM 8          DO YOU SEE THAT?

12:42PM 9      A.   YES, I SEE THAT.

12:42PM 10     Q.   AND THE MESSAGE, MR. BALWANI'S MESSAGE REFERENCES A

12:42PM 11     DISCUSSION BETWEEN HIMSELF, DR. ROSENDORFF, AND YOU REGARDING

12:43PM 12     ANOTHER QUALITY EXPERIMENT, IF YOU WILL, TO RUN INTERNAL PT'S

12:43PM 13     AND COMPARE SAMPLES, REAL SAMPLES WITHIN THE LAB; CORRECT?

12:43PM 14     A.   IT'S TO RUN INTERNAL PT'S, CORRECT.

12:43PM 15     Q.   AND YOU AGREED WITH THAT AT THE TIME?

12:43PM 16     A.   WE HAD TO DO A PT SOMEHOW, AND AT THIS POINT YOU MAY

12:43PM 17     RECALL I WASN'T AWARE OF OUR SOP -- OF THE SOP YOU SHOWED ME

12:43PM 18     EARLIER, SO I'M TRYING TO WORK WITH EVERYBODY TO FIND A

12:43PM 19     SOLUTION TO THE PT COMPLEXITY THAT WE'RE FACING HERE.

12:43PM 20         SO I THOUGHT THAT ONE WAY WE COULD DO THAT IS TO DO WHAT

12:43PM 21     IS CALLED INTERNAL PT, BUT AGAIN, THAT WASN'T -- THAT IS NOT

12:43PM 22     EVEN THE SOP YOU SHOWED ME EARLIER.  THIS IS ME NOT KNOWING

12:43PM 23     WHAT WAS IN THE SOP BUT ME TRYING TO OFFER A SOLUTION TO THE

12:43PM 24     FACT THAT WE HAD NOT DONE PT CORRECTLY ON THOSE TESTS.

12:43PM 25     Q.   AND IN THE MESSAGE MR. BALWANI IS AGREEING WITH YOU THAT

12:43PM   1    IT'S A GOOD IDEA TO DO THIS INTERNAL PT TO FIND THE SOLUTION;

12:44PM   2    CORRECT?

12:44PM   3    A.   YES.

12:44PM   4    Q.   TURNING TO PAGE 2 OF THE EXHIBIT.  AT THE TOP THERE'S A

12:44PM   5    MESSAGE FROM DANIEL YOUNG WHERE DR. YOUNG APPEARS "TO ADD MORE

12:44PM   6    DETAILS TO HIS CONCERNS RELATING TO USING PT SAMPLES WITHOUT

12:44PM   7    EXTENSIVE STUDY WITH OUR LDT'S AND WITHOUT A PEER GROUP."

12:44PM   8         DO YOU SEE THAT?

12:44PM   9    A.   I CAN'T SEE THE HEADER TO THE EMAIL.

12:44PM  10         WHO WROTE THIS?

12:44PM  11    Q.   IT'S ON THE SCREEN.  DANIEL YOUNG?

12:44PM  12    A.   DANIEL YOUNG.  I SEE IT.  NOW I DO.

12:44PM  13    Q.   AND THIS IS DANIEL YOUNG OFFERING INSIDER'S THOUGHTS AND

12:44PM  14    HE WRITES, "TO ADD MORE DETAILS ABOUT MY CONCERNS RELATED TO

12:45PM  15    USING PT SAMPLES WITHOUT EXTENSIVE STUDY WITH OUR LDT'S AND

12:45PM  16    WITHOUT A PEER GROUP, I WANTED TO HIGHLIGHT WHY THE PEER GROUP

12:45PM  17    METHODS WERE ESTABLISHED FOR PT AND OTHER CHALLENGES RELATED TO

12:45PM  18    MATRIX EFFECTS."

12:45PM  19         DO YOU SEE THAT?

12:45PM  20    A.   YES.

12:45PM  21    Q.   AND SO, AGAIN, DR. YOUNG IS RAISING THIS ISSUE AND

12:45PM  22    QUESTION RELATING TO POTENTIAL MATRIX EFFECTS AND WHETHER OR

12:45PM  23    NOT THERE'S A PEER GROUP THAT WOULD MAKE COMMERCIAL PROFICIENCY

12:45PM  24    TESTING PROCEDURES WITH THE NEW YORK OR AAP OR CAP APPROPRIATE

12:45PM  25    OR SOME SORT OF AAP PROGRAM?

12:45PM 1    A.   HE'S REFERRING TO THIS CONCEPTUALLY.

12:45PM 2    Q.   OKAY.  AND THEN CONTINUING ON AT PAGE 1 THERE IS A MESSAGE

12:45PM 3    FROM DR. ROSENDORFF AT THE MIDDLE OF THE PAGE TO MR. BALWANI,

12:45PM 4    DANIEL YOUNG, COPYING OTHERS, INCLUDING YOURSELF.

12:45PM 5        AND DR. ROSENDORFF WROTE, "READING THROUGH THE REGULATIONS

12:45PM 6    MORE FINELY -- IF WE DID ENROLL IN PT FOR THERANOS METHODS, WE

12:46PM 7    WOULD NEED TO DO AN ALTERNATIVE ASSESSMENT PROCEDURE IN ANY

12:46PM 8    EVENT, BECAUSE THE RESULTS WOULD BE UNGRADED (FEWER THAN 10

12:46PM 9    PARTICIPANTS).  UNGRADED EVENTS HAVE TO UNDERGO AN AAP

12:46PM 10   ACCORDING TO CLIA REGS."

12:46PM 11       DO YOU SEE THAT?

12:46PM 12   A.   YES, I SEE THAT.

12:46PM 13   Q.   AND THE ISSUE OF "BECAUSE THE RESULTS WOULD BE UNGRADED"

12:46PM 14   AS DR. ROSENDORFF WROTE, RELATES TO THE FACT THAT TO THE EXTENT

12:46PM 15   THAT YOU SENT IN THE RESULTS FROM YOUR RUNNING THE PT SAMPLES,

12:46PM 16   THERE WAS NOT A SUFFICIENTLY LARGE PEER GROUP WITH WHICH TO

12:46PM 17   COMPARE THOSE RESULTS.

12:46PM 18       IS THAT WHAT DR. ROSENDORFF IS WRITING HERE?

12:46PM 19   A.   I BELIEVE THAT'S WHAT HE'S SAYING THERE.

12:46PM 20   Q.   OKAY.  WHICH MEANS THAT THERE WAS NO PEER GROUP AGAINST

12:46PM 21   WHICH TO MEASURE THE RESULTS THAT YOU JUST PROVIDED TO THE

12:46PM 22   AGENCY; CORRECT?

12:46PM 23   A.   THERE WOULDN'T HAVE BEEN OTHER LABS RUNNING EDISONS IS ALL

12:46PM 24   THAT MEANS.

12:46PM 25   Q.   AND THEN CONTINUING ON AT THE TOP OF THE PAGE ON 1570 YOU

12:47PM  1    RESPOND TO DR. ROSENDORFF, COPYING MR. BALWANI, DR. YOUNG, AND

12:47PM  2    OTHERS.

12:47PM  3         DO YOU SEE THAT?

12:47PM  4    A.   YEAH, I DO.

12:47PM  5    Q.   AND YOU WROTE, "ADAM,

12:47PM  6         "SEEMS THAT THE THING TO DO WOULD BE TO REPORT THE

12:47PM  7    THERANOS METHODS, AS THEY ARE OUR PRIMARY METHODS.  THIS WOULD

12:47PM  8    KEEP US IN FULL COMPLIANCE WITH THE REGS, AND THE LACK OF A

12:47PM  9    PEER GROUP WOULD TRIGGER AN 'UNGRADED' SCORE, WHICH WOULD ALLOW

12:47PM 10    US TO EVALUATE OUR PERFORMANCE."

12:47PM 11         DO YOU SEE THAT?

12:47PM 12    A.   YES.

12:47PM 13    Q.   AND THEN "FOR ANY TESTS THAT SEEM TO HAVE MATRIX EFFECTS,

12:47PM 14    THIS EVALUATION OF OUR PERFORMANCE COULD INCLUDE THE TESTING OF

12:47PM 15    5 PATIENT SPECIMENS INSTEAD OF PT SURVEY SAMPLES."

12:47PM 16         DO YOU SEE THAT?

12:47PM 17    A.   OH, YEAH, I SEE THAT.

12:47PM 18    Q.   OKAY.  SO YOU WERE AGREEING WITH DR. ROSENDORFF THAT

12:47PM 19    RUNNING THE PT ON THE EDISON AND REPORTING THE RESULTS TO THE

12:47PM 20    AGENCY WOULD RESULT IN THIS UNGRADED BECAUSE OF THE LACK OF A

12:47PM 21    LARGE ENOUGH PEER GROUP; CORRECT?

12:47PM 22    A.   IT WOULD -- PROBABLY, YEAH.  I DON'T KNOW WHAT NEW YORK'S

12:48PM 23    PROCEDURE WOULD BE IN THAT CASE.

12:48PM 24    Q.   OKAY.  BUT THAT'S WHAT YOU WROTE HERE IN THE MESSAGE.  YOU

12:48PM 25    AGREED WITH HIM THAT THE UNGRADED RESULTS WOULD STILL HAPPEN?

12:48PM   1    A.   IT'S LIKELY.

12:48PM   2    Q.   OKAY.  AND THEN THE LAB WOULD THEN REVERT TO THIS INTERNAL

12:48PM   3    AAP PROCESS OF TESTING FIVE PATIENT SAMPLES INSTEAD OF THE PT

12:48PM   4    SAMPLES FROM THE AGENCY; CORRECT?

12:48PM   5    A.   THIS WAS A SUGGESTION OF MINE THAT WE RUN SOME KIND OF

12:48PM   6    PATIENT SPECIMENS FOR WHICH WE HAD KNOWN VALUES, AND AT THIS

12:48PM   7    TIME I DIDN'T KNOW WHAT OUR SOP WAS.  I'M JUST TRYING TO FIND A

12:48PM   8    WAY TO DO PT ON THESE FOR THESE TESTS.  THAT'S ALL I'M DOING

12:48PM   9    HERE.

12:48PM   10   Q.   UNDERSTOOD.

12:48PM   11        AND THEN BELOW THAT YOU WROTE, "WE WOULD HAVE TO MAINTAIN

12:48PM   12   THE DATA/EVIDENCE ON FILE THAT CERTAIN OF OUR TESTS ARE

12:48PM   13   AFFECTED BY THE PT MATRIX, AND THIS WOULD BE OUR SCIENTIFIC

12:49PM   14   RATIONALE FOR EVALUATING THE PERFORMANCE OF SUCH TESTS INSTEAD

12:49PM   15   OF ACTUAL SPECIMENS."

12:49PM   16        DO YOU SEE THAT?

12:49PM   17   A.   I SEE THAT.

12:49PM   18   Q.   SO THE RECORDS FROM THIS INTERNAL PROCESS WOULD HAVE TO BE

12:49PM   19   MAINTAINED TO PROVIDE JUSTIFICATION LATER ON IF NEEDED;

12:49PM   20   CORRECT?

12:49PM   21   A.   RIGHT.  WE WOULD HAVE TO BE ABLE TO JUSTIFY LATER ON THE

12:49PM   22   FACT THAT WE WERE DOING PT DIFFERENTLY THAN ANYONE ELSE.

12:49PM   23   Q.   BUT THE RESULTS OF THIS INTERNAL STUDY WOULD NOT BE

12:49PM   24   REPORTED OUT THEMSELVES TO THE PT AGENCY; CORRECT?

12:49PM   25   A.   RIGHT.  UNLIKE NORMAL PT, THE GOVERNMENT WOULD NOT RECEIVE

```
12:49PM   1      THOSE RESULTS.

12:50PM   2      Q.   IF WE CAN TAKE A LOOK AT 1589.   1589.

12:50PM   3      A.   YES.

12:50PM   4      Q.   I THINK IT'S ALSO IN EVIDENCE.

12:50PM   5           YOUR HONOR, MAY WE PUBLISH?

12:50PM   6                THE COURT:   YES.

12:50PM   7      BY MR. CAZARES:

12:50PM   8      Q.   DO YOU SEE 1589 IS ON THE SCREEN, DR. PANDORI?

12:50PM   9      A.   YES.

12:50PM  10      Q.   AND YOU ALSO HAVE IT.

12:50PM  11           IT'S AN EMAIL CHAIN, THE LATTER OF WHICH IS AT THE TOP

12:50PM  12      PAGE FROM DANIEL YOUNG TO YOURSELF, ALSO TO MR. BALWANI,

12:50PM  13      DR. ROSENDORFF, AN INDIVIDUAL NAMED PAUL PATEL, COPYING

12:50PM  14      MS. HOLMES.

12:50PM  15           DO YOU SEE THAT?

12:50PM  16      A.   I SEE SEVERAL EMAILS.

12:50PM  17      Q.   OKAY.   AT THE TOP OF THE PAGE?

12:50PM  18      A.   AT THE TOP OF THE PAGE IS AN EMAIL FROM JAMIE LIU TO

12:51PM  19      ERIKA CHEUNG.

12:51PM  20      Q.   YES.   AND IF YOU COULD TURN TO THE SECOND PAGE OF 1589.

12:51PM  21      A.   OKAY.

12:51PM  22      Q.   AND THE EMAIL CHAIN STARTS WITH A MESSAGE FROM YOURSELF TO

12:51PM  23      LANGLY GEE, ERIKA CHEUNG, JAMIE LIU, AND THEN THERE'S A COPY TO

12:51PM  24      ADAM ROSENDORFF.

12:51PM  25           DO YOU SEE THAT?
```

PANDORI CROSS BY MR. CAZARES

12:51PM  1    A.   YES.

12:51PM  2    Q.   AND THE MESSAGE READS, "ALL,

12:51PM  3         "AS PER OUR EARLIER DISCUSSION:

12:51PM  4         "WE WILL BE APPLYING A NEW QUALITY MEASURE TO OUR EDISON

12:51PM  5    TESTS.

12:51PM  6         "GOING FORWARD ONCE PER WEEK WE WILL BE COLLECTING AND

12:51PM  7    COMPARING 5 SAMPLES AS FOLLOWS:"

12:51PM  8         AND THEN THERE'S A DESCRIPTION OF VENIPUNCTURE ON

12:51PM  9    PREDICATE; VENIPUNCTURE ON EDISON; FINGERSTICK ON EDISON.

12:52PM 10         DO YOU SEE THAT?

12:52PM 11    A.   YES.

12:52PM 12    Q.   AND THIS IS -- THIS INTERNAL PROCESS AND QUALITY STUDY

12:52PM 13    THAT WE HAVE ALREADY DISCUSSED THAT WAS BEING DONE, THIS WAS AN

12:52PM 14    INTERNAL QUALITY STUDY REGARDING THIS USE OF FIVE SAMPLES

12:52PM 15    INTERNALLY IN LIEU OF DOING PT TO FIGURE OUT THIS AAP ISSUE;

12:52PM 16    CORRECT?

12:52PM 17    A.   CORRECT.

12:52PM 18    Q.   IF YOU CAN TURN TO THE BOTTOM OF PAGE 1?

12:52PM 19    A.   YES.

12:52PM 20    Q.   DO YOU SEE THERE'S A MESSAGE FROM MR. BALWANI TO YOURSELF

12:52PM 21    COPYING LANGLY GEE, DR. YOUNG, DR. SIVARAMAN, DR. SAKSENA,

12:52PM 22    DR. ROSENDORFF, TINA LIN, AND SOME OF THE LAB ASSOCIATES.

12:52PM 23         DO YOU SEE THAT?

12:52PM 24    A.   YES.

12:52PM 25    Q.   AND YOU SEE THAT MR. BALWANI WAS MADE AWARE OF THIS

12:53PM   1    INTERNAL STUDY THAT WAS BEING PERFORMED AT YOUR REQUEST;

12:53PM   2    CORRECT?

12:53PM   3    A.   YES.

12:53PM   4    Q.   OKAY.  AND MR. BALWANI WROTE, "PLEASE MAKE SURE THAT

12:53PM   5    EDTA-PLASMA (OR AN APPROPRIATE MATRIX) IS USED FOR EDISONS AND

12:53PM   6    THE APPROPRIATE ONES FOR PREDICATE METHODS."

12:53PM   7         DO YOU SEE THAT?

12:53PM   8    A.   I DO.

12:53PM   9    Q.   AND MR. BALWANI PROVIDES SUGGESTIONS ABOUT THE STUDY.

12:53PM   10         DO YOU SEE THAT?

12:53PM   11   A.   YES, I DO.

12:53PM   12   Q.   OKAY.  HE'S AGREEING THAT THE STUDY SHOULD BE PERFORMED;

12:53PM   13   CORRECT?

12:53PM   14   A.   HE'S AGREEING THAT THE STUDY SHOULD BE PERFORMED --

12:53PM   15   INITIATED.

12:53PM   16   Q.   OKAY.  AND IT WAS INITIATED; CORRECT?

12:53PM   17   A.   IT'S BEEN EIGHT YEARS.  I DON'T REMEMBER.

12:53PM   18   Q.   PASSAGE OF TIME MAKES RECOLLECTION DIFFICULT?

12:54PM   19   A.   SOMETIMES.

12:54PM   20   Q.   FURTHER UP ON THE MESSAGE DR. ROSENDORFF RESPONDS TO

12:54PM   21   MR. BALWANI ON FEBRUARY 25TH, 2014.

12:54PM   22         "SUNNY,

12:54PM   23         "JUST TO CLARIFY, EDISONS ARE EDTA-PLASMA AND THE MAJORITY

12:54PM   24   OF IMMUNOASSAYS ON THE PREDICATE INSTRUMENTS ARE SERUM."

12:54PM   25         DO YOU SEE THAT?

12:54PM  1    A.   YES.

12:54PM  2    Q.   AND THEN HE ALSO WRITES, "WITH THIS STUDY, WE WILL COLLECT

12:54PM  3    EDTA-PLASMA CTN'S AND THE RIGHT VACUTAINER FOR THE PREDICATE

12:54PM  4    ASSAYS."

12:54PM  5         SO THIS IS, AGAIN, COMPARING THE EDISON TO THE PREDICATE

12:54PM  6    DEVICES; CORRECT?

12:54PM  7    A.   YES.  THIS IS ADAM, DR. ROSENDORFF, MAKING SURE THAT THE

12:54PM  8    CORRECT SPECIMENS ARE DRAWN FOR THE ASSAYS AT HAND.

12:54PM  9    Q.   AND THEN MR. BALWANI RESPONDS TO DR. ROSENDORFF, "THIS IS

12:54PM 10    WHAT WE DID FOR ALL OF OUR VALIDATION WORK WE DID FOR EACH OF

12:54PM 11    THESE ASSAYS WHEN WE BROUGHT THEM FOR CLIA."

12:55PM 12         DO YOU SEE THAT?

12:55PM 13    A.   YES.

12:55PM 14    Q.   "I AM NOT SURE WHAT NEW INFORMATION WE WILL GET BUT IF YOU

12:55PM 15    WANT TO RERUN THIS ONCE TO GENERATE QC DATA, I HAVE NO ISSUES

12:55PM 16    WITH THE FOLLOWING AS COMMUNICATED YESTERDAY.  THIS ONE TIME

12:55PM 17    STUDY WILL BE USEFUL TO CLARIFY ANY CONFUSION CAUSED BY THE PT

12:55PM 18    SAMPLES."

12:55PM 19         DO YOU SEE THAT?

12:55PM 20    A.   YES.

12:55PM 21    Q.   AND SO, AGAIN, MR. BALWANI WAS AGREEING THAT THE STUDY

12:55PM 22    COULD AND SHOULD BE PERFORMED; CORRECT?

12:55PM 23    A.   ONCE, YES.

12:55PM 24    Q.   DR. ROSENDORFF, IF YOU CAN TAKE A LOOK AT WHAT IS

12:55PM 25    WITHIN --

12:55PM   1                THE COURT:  DR. PANDORI.

12:55PM   2                MR. CAZARES:  I'M SORRY?

12:55PM   3                THE COURT:  PANDORI.

12:56PM   4    BY MR. CAZARES:

12:56PM   5    Q.   DR. PANDORI, IF YOU CAN TAKE A LOOK AT WHAT IS IN THE

12:56PM   6    BINDER 2 FOR THE DEFENSE EXHIBIT 20258.

12:56PM   7    A.   WHICH NUMBER?

12:56PM   8    Q.   20258.

12:56PM   9    A.   I'M THERE.

12:56PM  10    Q.   OKAY.  AND 20258 APPEARS TO BE AN EMAIL CHAIN, THE LATTER

12:56PM  11    OF WHICH AT THE TOP OF THE FIRST PAGE IS DATED FEBRUARY 25,

12:56PM  12    2014, A MESSAGE FROM MR. BALWANI TO YOURSELF.

12:56PM  13         DO YOU SEE THAT?

12:56PM  14    A.   YES.

12:56PM  15    Q.   AND AGAIN, WITHIN THE TIME PERIOD THAT YOU WORKED AT

12:56PM  16    THERANOS, EMAIL WAS USED REGULARLY TO COMMUNICATE WITHIN THE

12:56PM  17    CLIA LAB AND WITH OTHERS?

12:56PM  18    A.   YES.

12:56PM  19                MR. CAZARES:  MOVE TO ADMIT 20258, YOUR HONOR.

12:57PM  20                MR. BOSTIC:  IS THIS COMING IN AS A BUSINESS RECORD,

12:57PM  21    YOUR HONOR?

12:57PM  22                THE COURT:  I BELIEVE IT IS.

12:57PM  23         IS THAT THE FOUNDATION?

12:57PM  24                MR. CAZARES:  YES, YOUR HONOR.

12:57PM  25                MR. BOSTIC:  NO OBJECTION.

12:57PM  1          THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:57PM  2          (DEFENDANT'S EXHIBIT 20258 WAS RECEIVED IN EVIDENCE.)

12:57PM  3     BY MR. CAZARES:

12:57PM  4     Q.   STARTING AT THE LAST PAGE OF THE EXHIBIT, PAGE 3 JUST TO

12:57PM  5     ORIENT US, DO YOU SEE THERE'S A MESSAGE FROM DR. ROSENDORFF TO

12:57PM  6     CLIA.LAB.

12:57PM  7          DO YOU SEE THAT?

12:57PM  8     A.   YEAH.  YES.

12:57PM  9     Q.   AND DR. ROSENDORFF WRITES, "WHEN WE GET A VENOUS TUBE ONLY

12:57PM  10    FROM WAG THAT REQUIRES A VENOUS ONLY TEST AND ALSO REQUIRES A

12:57PM  11    TEST FOR VITAMIN D, TSH, PSA, OR FT4, IN ADDITION TO RUNNING AN

12:57PM  12    EDISON TEST FOR THE LATTER 4 ASSAYS, WE SHOULD ALSO RUN TESTING

12:58PM  13    ON THE PREDICATE INSTRUMENTS PARALLEL AS FOLLOWS," AND HE LISTS

12:58PM  14    VITAMIN B, DIASORIN; TSH, IMMULITE; FT4, IMMULITE; TPSA,

12:58PM  15    IMMULITE.

12:58PM  16          AND THEN, "PLEASE GIVE BOTH THE EDISON RESULT AND THE

12:58PM  17    PREDICATE RESULT TO LANGLY TO BE INCLUDED IN THE SPREADSHEET."

12:58PM  18          DO YOU SEE THAT?

12:58PM  19    A.   I SEE THAT.

12:58PM  20    Q.   AND THIS IS COMPARING THE EDISON TO THE PREDICATE DEVICES?

12:58PM  21    A.   YES.

12:58PM  22    Q.   FURTHER UP IN THE CHAIN ON PAGE 1 THERE'S A MESSAGE FROM

12:58PM  23    YOURSELF TO MR. BALWANI ON FEBRUARY 25, 2014.

12:58PM  24          DO YOU SEE THAT?

12:58PM  25    A.   YES.

12:58PM  1    Q.    AND IN THE MESSAGE YOU SAY "THANK YOU FOR THIS."

12:58PM  2          "TO CLARIFY, SHALL I HOLD OFF ON INITIATING THE QC MEASURE

12:59PM  3    WE DISCUSSED IN YOUR OFFICE YESTERDAY?

12:59PM  4          "I'VE ALREADY ORGANIZED ALL THE CTN AND DRAWING

12:59PM  5    REQUIREMENTS WITH IN-HOUSE STUDIES AND BCD.

12:59PM  6          "AND I'VE DISCUSSED EXECUTION WITH A SMALL INTRA-CLIA

12:59PM  7    TEAM, INCLUDING LANGLY WHOM I'VE PUT IN CHARGE.

12:59PM  8          "THE PROPER SPECIMEN TYPES PER METHOD WERE GOING TO BE

12:59PM  9    USED AND RESULTS COMPARED."

12:59PM  10         DO YOU SEE THAT?

12:59PM  11   A.    YES.

12:59PM  12   Q.    AND AGAIN, THIS IS AN INTERNAL STUDY COMPARING EDISON TO

12:59PM  13   PREDICATE?

12:59PM  14   A.    YES.

12:59PM  15   Q.    BUT YOU WERE ASKING MR. BALWANI WHETHER YOU SHOULD HOLD

12:59PM  16   OFF ON INITIATING THE QC MEASURE.

12:59PM  17         DO YOU SEE THAT?

12:59PM  18   A.    YES.

12:59PM  19   Q.    AND DOCTOR -- MR. BALWANI AT THE TOP OF THE PAGE RESPONDS,

12:59PM  20   "I WOULD LIKE TO DO THIS FOR THESE 4 ASSAYS THIS WEEK AND

12:59PM  21   ADDITIONAL ASSAYS AT LEAST ONCE SO WE HAVE THE DATA AND WE CAN

12:59PM  22   ELIMINATE THE DOUBT THAT THE PT SAMPLES HAVE CREATED IN SOME

12:59PM  23   PEOPLE'S MINDS."

12:59PM  24         DO YOU SEE THAT?

12:59PM  25   A.    YES.

12:59PM  1    Q.   AND SO, AGAIN, MR. BALWANI AGREED THAT THIS STUDY SHOULD

12:59PM  2    PROCEED?

12:59PM  3    A.   IS THIS REFERRING -- I'M NOT SURE WHAT STUDY HE'S

01:00PM  4    REFERRING TO EXACTLY.

01:00PM  5    Q.   MR. BALWANI'S MESSAGE AT THE TOP OF EXHIBIT 20258.

01:00PM  6         DO YOU SEE THAT?

01:00PM  7    A.   YES.

01:00PM  8    Q.   AND IT'S A RESPONSE TO YOUR MESSAGE RIGHT BELOW; CORRECT?

01:00PM  9    A.   YES.

01:00PM  10   Q.   AND YOUR MESSAGE SAYS, "TO CLARIFY, SHALL I HOLD OFF ON

01:00PM  11   INITIATING THE QC MEASURE?"

01:00PM  12        DO YOU SEE THAT?

01:00PM  13   A.   YES.

01:00PM  14   Q.   AND IN RESPONSE MR. BALWANI SAYS, "I WOULD LIKE TO DO THIS

01:00PM  15   FOR THESE 4 ASSAYS THIS WEEK."

01:00PM  16        DO YOU SEE THAT?

01:00PM  17   A.   I SEE THAT, YES.

01:00PM  18   Q.   AND SO MR. BALWANI WAS AGREEING TO PROCEED WITH THE QC

01:00PM  19   MEASURE; CORRECT?

01:00PM  20   A.   YES.

01:00PM  21   Q.   AND MR. BALWANI CONTINUES WITHIN THAT SAME FIRST SENTENCE

01:00PM  22   AFTER THIS WEEK, "AND ADDITIONAL ASSAYS AT LEAST ONCE SO WE

01:01PM  23   HAVE THE DATA AND WE CAN ELIMINATE THE DOUBT THAT THE PT

01:01PM  24   SAMPLES HAVE CREATED IN ME PEOPLE'S MINDS."

01:01PM  25        DO YOU SEE THAT?

PANDORI CROSS BY MR. CAZARES

01:01PM   1    A.   YES.

01:01PM   2    Q.   AND THIS ISSUE REGARDING THE PT EXPERIMENT USING THE

01:01PM   3    NEW YORK SAMPLES WITHIN THE CLINICAL LAB ON THE EDISON RAISED

01:01PM   4    QUESTIONS WITHIN THE LABORATORY AMONGST STAFF; CORRECT?

01:01PM   5    A.   CORRECT.

01:01PM   6    Q.   ALSO QUESTIONS BEING RAISED BY PERSONS OUTSIDE OF THE

01:01PM   7    CLINICAL LAB, YOU'RE AWARE OF THAT?

01:01PM   8    A.   OUTSIDE OF THE CLINICAL LAB?  YOU MEAN EMPLOYEES AT

01:01PM   9    THERANOS OUTSIDE?

01:01PM   10   Q.   YES.

01:01PM   11   A.   YES.

01:01PM   12   Q.   AND YOU SEE MR. BALWANI WANTS YOU TO PROCEED WITH THIS

01:01PM   13   QUALITY MEASURE AS YOU'VE DESCRIBED TO IN ORDER TO TRY TO PUT

01:01PM   14   TO REST THOSE QUESTIONS AND CONCERNS; CORRECT?

01:01PM   15        MR. BOSTIC:  OBJECTION.  CALLS FOR SPECULATION AND

01:02PM   16   FOUNDATION.

01:02PM   17        THE COURT:  SUSTAINED ON SPECULATION.

01:02PM   18   BY MR. CAZARES:

01:02PM   19   Q.   I'LL CONTINUE.  GOING BACK TO THE MESSAGE.

01:02PM   20        MR. BALWANI WROTE, "BUT I WOULD LIKE THIS PERFECTLY

01:02PM   21   PLANNED.  YOU SHOULD INCLUDE SURAJ AND DANIEL AND SAM SO THEY

01:02PM   22   MAKE SURE WE HAVE THE RIGHT CARTRIDGES, RIGHT PROCESSES AND

01:02PM   23   RIGHT DATA (BASICALLY DO IT IN THE NORMANDY LAB AS THERE

01:02PM   24   EVERYTHING DOES RUN CORRECTLY) SO WE DO THIS RIGHT."

01:02PM   25        DO YOU SEE THAT?

01:02PM   1      A.   I DO.

01:02PM   2      Q.   AND DANIEL IS DANIEL YOUNG?

01:02PM   3      A.   YES.

01:02PM   4      Q.   AND SURAJ IS DR. SAKSENA?

01:02PM   5      A.   I THINK SO.

01:02PM   6      Q.   OKAY.  AND SAM IS -- I BELIEVE HE'S A DOCTOR.  I'M NOT

01:02PM   7      SURE.  MR. SAM ANEKAL?  DO YOU KNOW WHO SAM ANEKAL IS?

01:02PM   8      A.   I RECOGNIZE -- WHEN YOU SAY THE NAME, IT RESONATES WITH

01:02PM   9      ME.

01:02PM   10     Q.   WITHIN THAT SAME BINDER, DR. PANDORI, IF YOU COULD TAKE A

01:03PM   11     LOOK AT EXHIBIT 20282.

01:03PM   12     A.   YES.

01:03PM   13     Q.   AND THE FIRST PAGE AT THE TOP REFERENCES A MESSAGE FROM

01:03PM   14     YOURSELF TO MR. BALWANI ON FEBRUARY 27, 2014.

01:03PM   15          DO YOU SEE THAT?

01:03PM   16     A.   YES.

01:03PM   17     Q.   OKAY.

01:03PM   18          MOVE TO ADMIT EXHIBIT 20282, YOUR HONOR.

01:03PM   19               MR. BOSTIC:  NO OBJECTION.

01:03PM   20               THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

01:03PM   21          (DEFENDANT'S EXHIBIT 20282 WAS RECEIVED IN EVIDENCE.)

01:03PM   22     BY MR. CAZARES:

01:03PM   23     Q.   AND IF YOU CAN TURN TO THE TOP OF THE SECOND PAGE,

01:04PM   24     DR. PANDORI.

01:04PM   25     A.   YES.

01:04PM  1    Q.   AND THERE'S A MESSAGE FROM MR. BALWANI TO DR. ROSENDORFF,

01:04PM  2    YOURSELF, LI DING-CHIANG, HODA ALAMDAR, DANIEL YOUNG, AND

01:04PM  3    BRAD ARINGTON.

01:04PM  4         DO YOU SEE THAT?

01:04PM  5    A.   YES.

01:04PM  6    Q.   AND THE MESSAGE READS:

01:04PM  7         "ADAM/MARK,

01:04PM  8         "ELIZABETH MET WITH CHARLES ROUSSEL, CEO OF CAP, HERE IN

01:04PM  9    OUR OFFICE TODAY ON OUR BROADER COLLABORATION EFFORTS WITH THEM

01:04PM 10    OVER THE NEXT FEW YEARS.  AS SHARED IN THE PAST, WE HAVE

01:04PM 11    EXCELLENT RELATIONSHIP WITH HIM.

01:04PM 12         "HE ALSO CONFIRMED OUR POSITION ON AAP AND PT AS DISCUSSED

01:04PM 13    YESTERDAY AND AS WE HAVE ALWAYS KNOWN.  WE ARE GOING TO BE

01:04PM 14    WORKING WITH CAP CLOSELY OVER COMING MONTHS TO DO SOME

01:04PM 15    BENEFICIAL THINGS WHICH WILL BE GOOD FOR LAB BUSINESSES

01:04PM 16    EVERYWHERE AND CERTAINLY FOR US."

01:04PM 17         DO YOU SEE THAT?

01:04PM 18    A.   YES.

01:04PM 19    Q.   AND CAP IS ONE OF THE PROFICIENCY TESTING AGENCIES AMONG

01:04PM 20    OTHERS; CORRECT?

01:04PM 21    A.   THEY HAPPEN TO OFFER PROFICIENCY TESTING SERVICES.  THEY

01:04PM 22    ARE THEMSELVES AN ACCREDITING BODY AS WELL.

01:05PM 23    Q.   AND CHARLES ROUSSEL, HE'S AN EXECUTIVE AT CAP, OR WAS AT

01:05PM 24    THE TIME?

01:05PM 25    A.   I DON'T RECOGNIZE THE NAME.

01:05PM 1    Q.   AND CONTINUE WITH THE MESSAGE IF YOU CAN CONTINUE ON

01:05PM 2    PAGE 1, AT THE BOTTOM OF PAGE 1.

01:05PM 3    A.   YES.

01:05PM 4    Q.   YOU WROTE A MESSAGE TO MR. BALWANI ON FEBRUARY 26TH,

01:05PM 5    "SUNNY,

01:05PM 6         "ARE WE THINKING OF BECOMING ACCREDITED BY CAP,

01:05PM 7    EVENTUALLY?"

01:05PM 8    A.   I SEE THAT.

01:05PM 9    Q.   OKAY.  AND WAS THAT ATTRACTIVE TO YOU, POTENTIALLY

01:05PM 10   BECOMING ACCREDITED BY CAP AT THERANOS?

01:05PM 11   A.   THAT'S A GOOD IDEA, I THINK.

01:05PM 12   Q.   AND MR. BALWANI RESPONDED, "AT SOME POINT WE ARE THINKING

01:05PM 13   ABOUT THIS.  WE HAVE HAD CONCERNS THAT THE AUDITORS MAY BE FROM

01:05PM 14   COMPETITIVE LABS AND PETER HAS OFFERED TO MAKE SURE THAT THAT

01:05PM 15   DOESN'T HAPPEN AND HE PERSONALLY COULD LEAD THE INSPECTION

01:05PM 16   WHICH WILL BE KINDA COOL."

01:05PM 17        DO YOU SEE THAT?

01:05PM 18   A.   YES.

01:05PM 19   Q.   NOW, MR. BALWANI IS REFERENCING A CONCERN THAT I GUESS THE

01:05PM 20   CAP AUDITORS AS A PART OF THE ACCREDITATION MIGHT BE EMPLOYEES

01:05PM 21   OF OTHER LABORATORIES.

01:06PM 22        IS THAT WHAT HE'S SAYING?

01:06PM 23   A.   I THINK SO, YES.

01:06PM 24   Q.   OKAY.  AND A CONCERN THAT THOSE OTHER LABORATORIES MAY

01:06PM 25   LEARN INTERNAL TRADE SECRETS, METHODS USED BY THERANOS;

01:06PM  1    CORRECT?

01:06PM  2    A.  YES.

01:06PM  3    Q.  AND YOU RESPONDED AT THE TOP OF THE PAGE, "OKAY.  YOU READ

01:06PM  4    MY MIND.  I WAS GOING TO MENTION HOW THEY DO THEIR INSPECTIONS

01:06PM  5    AND HOW THE TEAM THAT COMES IN CAN BE FROM VARIOUS PLACES --

01:06PM  6    OTHER CORPORATE ENTITIES AS WELL."

01:06PM  7         DO YOU SEE THAT?

01:06PM  8    A.  YES.

01:06PM  9    Q.  AND YOU SAY, "SOUNDS VERY GOOD."

01:06PM  10        SO YOU RECOGNIZE AT THE TIME THAT, I GUESS, THIS ISSUE

01:06PM  11   RAISED BY MR. BALWANI ABOUT POTENTIAL EMPLOYEES FROM COMPETITOR

01:06PM  12   LABS BEING APART OF THE INSPECTION WERE AT THERANOS TO, I

01:06PM  13   GUESS, PARTICIPATE IN A CAP AND ACCREDITATION PROGRAM; CORRECT?

01:06PM  14   A.  I RECOGNIZE THAT IT WAS A POSSIBILITY THAT THAT MIGHT

01:06PM  15   HAPPEN BUT DIDN'T KNOW AT THAT MOMENT WHAT SOLUTIONS MAY EXIST

01:07PM  16   IN THAT.

01:07PM  17   Q.  OKAY.  FAIR ENOUGH.  THANK YOU.

01:07PM  18        IF YOU CAN TAKE A LOOK AT EXHIBIT 3526 IN VOLUME 1.  3526.

01:07PM  19   A.  OKAY.

01:07PM  20   Q.  DO YOU HAVE 3526?

01:07PM  21   A.  I SEE IT.

01:07PM  22   Q.  OKAY.  3526 IS AN EMAIL DATED MARCH 14TH, 2014.  IT

01:08PM  23   APPEARS TO BE FROM YOURSELF -- I MEAN, FROM MR. BALWANI TO YOU

01:08PM  24   COPYING SOME OTHERS RELATING TO VITAMIN D.

01:08PM  25        DO YOU SEE THAT?

PANDORI CROSS BY MR. CAZARES

01:08PM   1      A.   YES.

01:08PM   2      Q.   AND AGAIN, EMAIL WAS USED AS A REGULAR MEANS OF

01:08PM   3      COMMUNICATION WITHIN THE CLINICAL LAB AS WELL AS WITH

01:08PM   4      MANAGEMENT; CORRECT?

01:08PM   5      A.   YES.

01:08PM   6           MR. CAZARES:  MOVE TO ADMIT 3526, YOUR HONOR.

01:08PM   7           MR. BOSTIC:  TWO LAYERS OF HEARSAY, YOUR HONOR.

01:08PM   8           THE COURT:  CAN YOU LAY A FURTHER FOUNDATION IF YOU

01:08PM   9      CAN, COUNSEL.

01:08PM   10          MR. CAZARES:  YES, YOUR HONOR.

01:08PM   11     Q.   WITHIN THE EMAIL CHAIN REFLECTED HERE, WE JUST TALKED

01:08PM   12     ABOUT IN THE LAST COUPLE OF MESSAGES IN THE LAST FEW MINUTES

01:08PM   13     THIS INTERNAL QUALITY MEASURE STUDY THAT WAS BEING PERFORMED ON

01:08PM   14     THE FOUR THERANOS ASSAYS COMPARING THE PREDICATE METHODS WITH

01:08PM   15     THE THERANOS METHODS; CORRECT?

01:08PM   16     A.   CORRECT.

01:08PM   17     Q.   AND THAT STUDY WAS DONE; CORRECT?

01:09PM   18     A.   TO MY KNOWLEDGE.

01:09PM   19     Q.   OKAY.  AND MR. BALWANI WAS MADE AWARE OF THAT STUDY,

01:09PM   20     CORRECT, AS WE'VE SEEN?

01:09PM   21     A.   YES.

01:09PM   22     Q.   YOURSELF ALSO AWARE OF IT AT THE TIME?

01:09PM   23     A.   YES.

01:09PM   24     Q.   AND DR. ROSENDORFF?

01:09PM   25     A.   YES.

01:09PM 1    Q.   OKAY.  YOU MENTIONED BEFORE THAT DR. SURAJ SAKSENA YOU

01:09PM 2    RECOGNIZED AS ONE OF THE SCIENTISTS WITHIN THE R&D LAB?

01:09PM 3    A.   YES.

01:09PM 4    Q.   AND DR. ANEKAL'S NAME YOU RECOGNIZED?

01:09PM 5    A.   I DO.

01:09PM 6    Q.   ALSO A SCIENTIST WITHIN THERANOS?

01:09PM 7    A.   SEEING IT SPELLED OUT, I ALSO RECOGNIZE IT NOW.

01:09PM 8    Q.   AND THESE ARE ALL PERSONS WHO PERIODICALLY WOULD BE

01:09PM 9    CONSULTED ABOUT ISSUES RELATED TO THE THERANOS DEVICE, TO THE

01:09PM 10   EXTENT QUESTIONS CAME UP ABOUT PERFORMANCE, ABOUT CARTRIDGES,

01:09PM 11   REAGENTS, THE CLINICAL SIDE WOULD PERIODICALLY CONSULT WITH THE

01:09PM 12   R&D SIDE AT TIMES; CORRECT?

01:10PM 13   A.   YES.

01:10PM 14   Q.   AND WITHIN THE MESSAGE MR. BALWANI SEEMS TO BE REPORTING

01:10PM 15   COMMUNICATIONS FROM THE R&D SIDE RELAYING IT TO THE CLINICAL

01:10PM 16   SIDE AS PART OF THESE DISCUSSIONS ABOUT THE QUALITY CONTROL

01:10PM 17   STUDY THAT YOU REQUESTED WITHIN THE CLINICAL LAB; CORRECT?

01:10PM 18   A.   CAN YOU RESTATE YOUR QUESTION, PLEASE.

01:10PM 19   Q.   MR. BALWANI IS REPORTING A COMMUNICATION REPORT FROM THE

01:10PM 20   R&D SIDE OF THERANOS TO YOURSELF, DR. ROSENDORFF, LANGLY GEE,

01:10PM 21   ALL WITHIN THE CLINICAL LAB COMMUNICATING RESULTS FROM THIS

01:10PM 22   INTERNAL STUDY REGARDING THE EDISON; CORRECT?

01:10PM 23   A.   THAT'S IMPLIED HERE, YES.

01:10PM 24        MR. CAZARES:  MOVE TO ADMIT, YOUR HONOR.

01:10PM 25        MR. BOSTIC:  SAME OBJECTION, YOUR HONOR.  I DON'T

01:10PM  1    THINK THIS QUALIFIES UNDER 803(6).  EVEN IF IT DID, IT WOULDN'T

01:10PM  2    ADDRESS THE EMBEDDED VERBAL OUT-OF-COURT STATEMENT.

01:11PM  3            THE COURT:  WELL, I DON'T THINK THERE'S A SUFFICIENT

01:11PM  4    803(6) FOUNDATION.  I THINK THERE'S SOME DOUBLE HEARSAY ON

01:11PM  5    THAT, SO I'LL SUSTAIN THE OBJECTION AT THIS POINT.

01:11PM  6            MR. CAZARES:  YES, YOUR HONOR.

01:11PM  7    Q.  DR. PANDORI, AGAIN, GETTING BACK TO THE ISSUE OF THE

01:11PM  8    NEW YORK PROFICIENCY TESTING EXPERIMENT, WHEN THAT HAPPENED,

01:11PM  9    AGAIN, ONE OF THE CONCERNS THAT YOU HAD WAS THAT THERANOS'S

01:11PM  10   CLINICAL LAB WASN'T REPORTING, WAS NOT TESTING AND REPORTING TO

01:11PM  11   THE NEW YORK AGENCY THE RESULTS OF PROFICIENCY TESTING SAMPLES

01:11PM  12   SUBMITTED BY NEW YORK TO THERANOS; CORRECT?

01:11PM  13   A.  CORRECT.

01:11PM  14   Q.  AND THAT WAS A CONCERN OF YOURS BECAUSE YOU BELIEVED THAT

01:11PM  15   THE LAB SHOULD BE REPORTING THE METHOD USED WITHIN THE LAB ON

01:11PM  16   PATIENT SAMPLES; CORRECT?

01:11PM  17   A.  METHOD OR METHODS, YES.

01:12PM  18   Q.  SO IF THERE WERE TWO METHODS, IN YOUR VIEW THE LAB SHOULD

01:12PM  19   REPORT BOTH?

01:12PM  20   A.  IF THEY'RE USED FOR PATIENT MANAGEMENT.

01:12PM  21   Q.  IT SHOULD BE REPORTED?

01:12PM  22   A.  YES.

01:12PM  23   Q.  WITHIN VALUE 1 OF THE DEFENSE BINDER YOU CAN TAKE A LOOK

01:12PM  24   AT EXHIBIT 1513.

01:12PM  25   A.  YES.

PANDORI CROSS BY MR. CAZARES

01:12PM 1    Q.   DO YOU HAVE 1513?  YOU GOT THERE FASTER THAN I DID.

01:12PM 2         OKAY.  1513.  AT THE TOP OF THE FIRST PAGE THERE APPEARS

01:12PM 3    TO BE A MESSAGE FROM ADAM ROSENDORFF TO A DAVID RAMOS, COPYING

01:12PM 4    A MR. GONG, AND COPYING YOURSELF.

01:13PM 5         DO YOU SEE THAT?

01:13PM 6    A.   YES.

01:13PM 7    Q.   AND I'M NOT SURE I SAID THE DATE.  FEBRUARY 5, 2014; IS

01:13PM 8    THAT THE DATE?

01:13PM 9    A.   YES.

01:13PM 10        MR. CAZARES:  OKAY.  MOVE TO ADMIT 1513, YOUR HONOR.

01:13PM 11        MR. BOSTIC:  IS THIS COMING IN AS A BUSINESS RECORD?

01:13PM 12        MR. CAZARES:  YES.

01:13PM 13        MR. BOSTIC:  NO OBJECTION.

01:13PM 14        THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

01:13PM 15        (DEFENDANT'S EXHIBIT 1513 WAS RECEIVED IN EVIDENCE.)

01:13PM 16   BY MR. CAZARES:

01:13PM 17   Q.   AND STARTING AT THE BACK -- PAGE 2.  THERE'S A MESSAGE ON

01:13PM 18   PAGE 2 FROM DAVID RAMOS TO SAM GONG.

01:13PM 19        DO YOU SEE THAT ON JANUARY 27TH?

01:13PM 20   A.   I DO.

01:13PM 21   Q.   AND MR. RAMOS SAYS, "HEY SAM,

01:13PM 22        "I WAS WONDERING IF YOU WERE GOING TO EMAIL ME THE

01:13PM 23   INFORMATION THAT I NEEDED IN REFERENCE TO THE THAN ANALYTES

01:13PM 24   THAT I CANNOT RUN ON ADVIA 1.  COULD YOU PLEASE ALSO EMAIL ME

01:13PM 25   THE REASONING BEHIND MY INABILITY TO RUN THOSE ANALYTES?  I

01:13PM   1    KNOW YOU EXPLAINED IT TO ME BEFORE BUT IT WOULD BE HANDY TO

01:13PM   2    HAVE A WRITTEN COPY OF THAT INFORMATION."

01:14PM   3         DO YOU SEE THAT?

01:14PM   4    A.   YES.

01:14PM   5    Q.   AND ADVIA 1 IS A SIEMENS DEVICE USED AT THERANOS; RIGHT?

01:14PM   6    A.   IT'S A PREDICATE FDA APPROVED TESTING DEVICE.

01:14PM   7    Q.   AND IT WAS ALSO A PREDICATE DEVICE THAT WAS MODIFIED BY

01:14PM   8    THERANOS TO RUN FINGERSTICK SAMPLES; CORRECT?

01:14PM   9    A.   IT WAS A SIEMENS DEVICE.  YOU SAID ADVIA WAS A SIEMENS

01:14PM  10    DEVICE?

01:14PM  11    Q.   I'M ASKING YOU.

01:14PM  12    A.   YEAH.  I DON'T RECALL THAT PARTICULAR NAME RIGHT NOW.  IT

01:14PM  13    MAY HAVE BEEN ONE OF THEM THAT WAS HACKED, YEAH.

01:14PM  14    Q.   AND SO IS IT YOUR TESTIMONY THAT YOU DON'T RECALL WHETHER

01:14PM  15    A SIEMENS DEVICE WAS MODIFIED BY THERANOS TO RUN FINGERSTICK

01:14PM  16    SAMPLES?

01:14PM  17    A.   A SIEMENS DEVICE WAS MODIFIED.

01:14PM  18    Q.   OKAY.  AND YOU RECOGNIZE ADVIA AS BEING A SIEMENS DEVICE

01:14PM  19    ALSO?

01:14PM  20    A.   YES.

01:14PM  21    Q.   OKAY.  AND THEN TURNING TO THE FIRST PAGE OF 1513.  MID

01:15PM  22    PAGE THERE'S A MESSAGE FROM AGAIN MR. GONG BACK TO DAVID RAMOS.

01:15PM  23         DO YOU RECALL WHO DAVID RAMOS IS, BY THE WAY?

01:15PM  24    A.   DAVID RAMOS IS A CLINICAL LABORATORY SCIENTIST, WHICH IS A

01:15PM  25    LICENSED POSITION THAT ALLOWS HIM TO PERFORM DIAGNOSTIC TESTING

01:15PM   1    AND REPORT THOSE RESULTS TO CLINICIANS.

01:15PM   2    Q.   SO HE'S THE LAYER OF PERSONNEL WITHIN THE CLINICAL LAB

01:15PM   3    ABOVE THE ASSISTANTS LIKE MS. CHEUNG; CORRECT?

01:15PM   4    A.   CORRECT.

01:15PM   5    Q.   AND SAM GONG, WAS HE A CLINICAL LAB EMPLOYEE?  DO YOU

01:15PM   6    RECALL?

01:15PM   7    A.   I DON'T RECALL HIM.

01:15PM   8    Q.   MR. GONG WROTE TO MR. RAMOS OR RESPONDED TO MR. RAMOS,

01:15PM   9    "HERE IS THE LIST OF ASSAYS ON ADVIA 1 THAT HAVE BEEN ALTERED

01:15PM   10   FROM THE PREDICATE PROTOCOL."

01:15PM   11        THEN THERE'S A LIST OF ASSAYS.  I WON'T ASK YOU TO NAME

01:15PM   12   ALL OF THEM, BUT THEY START WITH AAT.

01:15PM   13        WHAT IS AAT?

01:15PM   14   A.   THAT'S SOME KIND OF ALBUMIN TRANSFERASE OR -- I'M NOT SURE

01:15PM   15   WHAT THE ENZYME NAME IS.  IT'S A TRANSFERASE OF SOME KIND.

01:16PM   16   Q.   OKAY.  FURTHER DOWN THERE'S CARB 2.  WOULD THAT BE

01:16PM   17   BICARBONATE?

01:16PM   18   A.   YEAH.  AND THESE PARTICULAR INITIALS, I DON'T KNOW WHAT

01:16PM   19   CARB 2 IS REFERRING TO.  IT'S ANOTHER ANALYTE BIOCHEMICALLY.

01:16PM   20   Q.   AND ARE THESE GENERAL CHEMISTRY ASSAYS?

01:16PM   21   A.   YES.

01:16PM   22   Q.   AND AGAIN, EVERYONE HAS THEIR SPECIALTY.  GENERAL

01:16PM   23   CHEMISTRY WASN'T YOUR SPECIFICALLY?

01:16PM   24   A.   RIGHT.  IGA, IGM, AND IGG ARE ANTIBODIES.

01:16PM   25   Q.   AND THEN IN RESPONSE TO MR. GONG, DAVID RAMOS FORWARDS THE

01:16PM  1    MESSAGE WITH THE LIST TO ADAM ROSENDORFF, AND THEN YOU SEE AT

01:16PM  2    THE TOP DR. ROSENDORFF WRITES TO MR. RAMOS COPYING SAM GONG AND

01:16PM  3    YOURSELF.

01:16PM  4         HE WROTE, "ALL,

01:16PM  5         "WE NEED ALL THESE METHODS CHANGED TO THE PREDICATE,

01:17PM  6    SIEMENS SETTING ASAP FOR THE PROFICIENCY EXERCISE DUE 2/6.

01:17PM  7    CURRENTLY ONLY IGA, IGM, AND IGG, TRF, AND HSCRP ARE RUN ON

01:17PM  8    THERANOS METHODS -- FOR PT THESE SHOULD BE TESTED ON BOTH

01:17PM  9    THERANOS AND PREDICATE METHODS.  WE WILL REPORT THE PREDICATE

01:17PM  10   NUMBERS FOR ALL ASSAYS."

01:17PM  11        DO YOU SEE THAT?

01:17PM  12   A.   YES.

01:17PM  13   Q.   OKAY.  AND IN THIS MESSAGE DR. ROSENDORFF IS INSTRUCTING

01:17PM  14   MR. RAMOS WITHIN THE CLINICAL LAB TO CHANGE THE METHODS ON THE

01:17PM  15   SIEMENS DEVICE TO THE PREDICATE METHOD; CORRECT?

01:17PM  16   A.   TO RUN THEM ON PREDICATE, YES.

01:17PM  17   Q.   OKAY.  AND FOR THE PT CHALLENGE ON FEBRUARY 6TH REFLECTIVE

01:17PM  18   MESSAGE, DR. ROSENDORFF IS ADVISING MR. RAMOS AND COPYING YOU

01:18PM  19   THAT THERANOS WILL REPORT THE PREDICATE RESULT AND NOT THE

01:18PM  20   EDISON RESULT; CORRECT?

01:18PM  21   A.   IT JUST SAYS, "WE WILL REPORT PREDICATE NUMBERS," IT

01:18PM  22   DOESN'T SAY NOT TO REPORT THE OTHER.

01:18PM  23   Q.   BUT DR. ROSENDORFF SAYS, "WE WILL REPORT THE PREDICATE

01:18PM  24   NUMBERS FOR ALL ASSAYS"; CORRECT?

01:18PM  25   A.   IT SAYS THAT.

PANDORI CROSS BY MR. CAZARES

01:18PM 1    Q.   OKAY.  AND YOU WERE COPIED ON THE MESSAGE?

01:18PM 2    A.   I'M COPIED ON THAT MESSAGE.

01:18PM 3    Q.   OKAY.  IF YOU CAN TAKE AT VOLUME 1, I'M PRETTY SURE I HAVE

01:18PM 4    THE RIGHT VOLUME, 5545.  5545.

01:18PM 5    A.   I'M THERE.

01:18PM 6    Q.   YOU'VE GOT IT?

01:19PM 7         55, AT THE TOP OF THE FIRST PAGE THERE'S A MESSAGE FROM

01:19PM 8    DAN EDLIN TO MS. HOLMES DATED 5-9-2014.

01:19PM 9         DO YOU SEE THAT?

01:19PM 10   A.   YES.

01:19PM 11   Q.   AND THEN FURTHER DOWN AT THE BOTTOM OF THE FIRST PAGE

01:19PM 12   AFTER THE FIRST TWO MESSAGES AT THE TOP THERE'S A STRING THAT

01:19PM 13   BEGINS WITH A MESSAGE FROM MR. GEE TO MR. EDLIN, BRAD ARINGTON,

01:19PM 14   DR. ROSENDORFF, AND YOURSELF.

01:19PM 15        DO YOU SEE THAT?

01:19PM 16   A.   YES.

01:19PM 17   Q.   ON MAY 8TH, 2014?

01:19PM 18        AND WITHIN THE LAB AT THERANOS, EMAIL COMMUNICATIONS WERE

01:19PM 19   A REGULAR MEANS OF COMMUNICATING ISSUES WITHIN THE LAB?

01:19PM 20   A.   THEY WERE.

01:19PM 21   Q.   AND WITH MANAGEMENT?

01:19PM 22   A.   YES.

01:20PM 23        MR. CAZARES:  MOVE TO ADMIT EXHIBIT 5545,

01:20PM 24   YOUR HONOR.

01:20PM 25        MR. BOSTIC:  HEARSAY AND RELEVANCE, YOUR HONOR.

01:20PM  1      MR. CAZARES:  AS TO HEARSAY, YOUR HONOR, I WOULD BE

01:20PM  2  OPEN TO, OF COURSE, REDACTING THE TOP TWO MESSAGES ON THE FIRST

01:20PM  3  PAGE THAT DO NOT INVOLVE DR. PANDORI.

01:20PM  4      THE REST OF THE CHAIN RELATING TO THIS ISSUE OF

01:20PM  5  PROFICIENCY TESTING RESULTS AND REPORTING INCLUDE DR. PANDORI

01:20PM  6  AND OTHERS WITHIN THE CLINICAL LAB.

01:20PM  7      MR. BOSTIC:  SAME OBJECTION, YOUR HONOR.

01:20PM  8      THE COURT:  THERE ARE ALSO SOME OTHER ATTACHMENTS.

01:20PM  9  ARE YOU SEEKING?

01:20PM  10      MR. CAZARES:  NOT FOR NOW -- I COULD AGREE -- I HAVE

01:20PM  11  TO AGREE, IF YOUR HONOR REQUIRES IT -- REDACTING THE FIRST TWO

01:20PM  12  MESSAGES ON PAGE 1 AND OMITTING THE ATTACHMENT.

01:20PM  13      THE COURT:  ALL RIGHT.  AND THIS IS UNDER 803(6)?

01:21PM  14      MR. CAZARES:  YES, YOUR HONOR.

01:21PM  15      THE COURT:  AND I THINK YOU ASKED THIS WITNESS

01:21PM  16  WHETHER OR NOT THE EMAILS WERE RECORDED IN A WAY AND RETAINED

01:21PM  17  SUCH THAT THEY COULD BE USED AGAIN FOR REFERENCE?

01:21PM  18      DID YOU ASK THAT QUESTION?

01:21PM  19      MR. CAZARES:  I DIDN'T BUT I CAN, YOUR HONOR.

01:21PM  20      THE COURT:  LET'S DO THAT.

01:21PM  21  BY MR. CAZARES:

01:21PM  22  Q.  DURING THE TIME YOU WERE AT THERANOS, AGAIN, EMAILS WERE

01:21PM  23  REGULARLY USED AS A MEANS OF COMMUNICATION BY YOURSELF AND

01:21PM  24  OTHERS WITHIN THE CLINICAL LAB AS WELL AS COMMUNICATION WITH

01:21PM  25  MANAGEMENT; CORRECT?

01:21PM    1    A.   CORRECT.

01:21PM    2    Q.   AND WHILE YOU WERE AT THERANOS, OF COURSE, YOU WEREN'T

01:21PM    3    ALWAYS THERE THROUGH THE COURSE OF YOUR CAREER, BUT WHILE YOU

01:21PM    4    WERE THERE, YOU KEPT THOSE EMAILS; CORRECT?  YOU MAINTAINED

01:21PM    5    THEM?

01:21PM    6    A.   THEY WERE AUTOMATICALLY MAINTAINED IN AN EMAIL BOX -- THEY

01:21PM    7    WERE AUTOMATICALLY STORED IN AN EMAIL BOX MANAGED BY THERANOS

01:21PM    8    I.T.

01:21PM    9            MR. CAZARES:  MOVE TO ADMIT, YOUR HONOR.

01:21PM   10            THE COURT:  ALL RIGHT.  THANK YOU.

01:21PM   11        I'LL ADMIT IT WITH THE REDACTIONS AS INDICATED IN THE

01:21PM   12    EXHIBIT.  THE ATTACHMENT IS NOT BEING OFFERED AT THIS TIME.

01:21PM   13            MR. CAZARES:  THANK YOU, YOUR HONOR.

01:22PM   14        (DEFENDANT'S EXHIBIT 5545 WITH REDACTIONS WAS RECEIVED IN

01:22PM   15    EVIDENCE.)

01:22PM   16    BY MR. CAZARES:

01:22PM   17    Q.   IF WE CAN START WITH PAGE 4 OF THE REDACTED 5545.  AT THE

01:22PM   18    BOTTOM OF PAGE 4 YOU SEE THAT THERE'S A MESSAGE FROM DAN EDLIN

01:22PM   19    COPYING -- OR TO DR. ROSENDORFF TO YOURSELF MAY 5TH, 2014,

01:22PM   20    SUBJECT, UPDATED PT AUDIT RENEWAL SINCE 3/18.

01:22PM   21        DO YOU SEE THAT?

01:22PM   22    A.   YES.

01:22PM   23    Q.   AND IT SAYS, "HI ADAM AND MARK,

01:22PM   24        "HAVE UNDERGONE" -- "HAVE WE UNDERGONE," SORRY, "ANY NEW

01:22PM   25    PROFICIENCY TESTING OR AUDIT RENEWALS SINCE 3/18/14?  IF SO,

01:22PM  1    CAN YOU PLEASE SEND ME A COPY OF THE REPORTS OR LICENSES?  EAH

01:22PM  2    HAS ASKED FOR THIS AS PART OF A PRESENTATION SHE IS COMPILING

01:22PM  3    FOR TOMORROW SO WE WOULD NEED THIS TONIGHT.

01:22PM  4         "THANKS FOR YOUR HELP.

01:22PM  5         "DAN."

01:22PM  6         DO YOU SEE THAT?

01:22PM  7    A.   YES.

01:22PM  8    Q.   AND NOW, DAN EDLIN, HE WAS NOT A CLINICAL LAB -- HE WAS

01:22PM  9    NOT PART OF THE CLINICAL LAB; CORRECT?

01:23PM  10   A.   I DON'T REMEMBER WHAT ROLE HE PLAYED.

01:23PM  11   Q.   OKAY.  YOU RECOGNIZE EAH AS ELIZABETH HOLMES?

01:23PM  12   A.   YES.

01:23PM  13   Q.   OKAY.  AND SO DAN EDLIN IS REQUESTING FROM YOURSELF AND

01:23PM  14   DR. ROSENDORFF WHETHER THERE ARE ANY NEW PROFICIENCY TESTING OR

01:23PM  15   AUDIT RENEWALS SINCE MARCH 18, 2014; CORRECT?

01:23PM  16   A.   CORRECT.

01:23PM  17   Q.   AND THIS IS BEING REQUESTED FOR THE PURPOSES OF A

01:23PM  18   PRESENTATION BY ELIZABETH HOLMES; CORRECT?

01:23PM  19   A.   YES.

01:23PM  20   Q.   AND DR. ROSENDORFF RESPONDS IN THE NEXT MESSAGE TO

01:23PM  21   DANIEL EDLIN, COPYING YOURSELF, "DANIEL, WE ARE CONTINUALLY

01:23PM  22   DOING PROFICIENCY TESTING.  LANGLY OR BRAD CAN FILL YOU IN ON

01:23PM  23   STATE BY STATE APPLICATION/STATUS."

01:23PM  24        DO YOU SEE THAT?

01:23PM  25   A.   I SEE THAT.

01:23PM   1    Q.   AND THEN EDLIN RESPONDS ADDING OTHERS TO THE MESSAGE.

01:23PM   2         "DO WE HAVE ANY UPDATED REPORTS OR LICENSES SINCE 3/18?"

01:23PM   3         DO YOU SEE THAT?

01:24PM   4    A.   YES.

01:24PM   5    Q.   AND THEN DR. ROSENDORFF RESPONDS AT THE BOTTOM OF PAGE 3,

01:24PM   6    "LANGLY," AND THEN IT CONTINUES ON PAGE 4 AT THE TOP, "MAYBE

01:24PM   7    SHOW OUR 100 PERCENT GRADE IN HEMATOLOGY?"

01:24PM   8         DO YOU SEE THAT?

01:24PM   9    A.   YES.

01:24PM  10    Q.   AND HEMATOLOGY IS AN ANALYTE THAT IS SUBJECT TO

01:24PM  11    PROFICIENCY TESTING REQUIREMENTS; CORRECT?

01:24PM  12    A.   YES.

01:24PM  13    Q.   AND HEMATOLOGY IS A CATEGORY OF TESTING THAT WAS RUN AT

01:24PM  14    THERANOS ON PREDICATE METHODS BUT ALSO ON THERANOS PROPRIETARY

01:24PM  15    METHODS; CORRECT?

01:24PM  16    A.   YES.

01:24PM  17    Q.   AND THEN CONTINUING ON THE MESSAGE, LANGLY GEE RESPONDS TO

01:24PM  18    DR. ROSENDORFF, YOURSELF, AND DAN EDLIN, COPYING ARINGTON.

01:24PM  19         "HERE ARE SURVEYS PERFORMED IN SCORES AND UPDATE TO

01:24PM  20    LICENSURES SINCE 3/18."

01:24PM  21         DO YOU SEE THAT?

01:24PM  22    A.   YES.

01:24PM  23    Q.   AND THEN THESE SCORES ARE FOR WHAT APPEAR TO BE TESTING

01:25PM  24    EVENTS, OR CHALLENGES, AT THERANOS INCLUDING MICROBIOLOGY,

01:25PM  25    TOXICOLOGY, HIV, INFECTIOUS DISEASE, CLINICAL MICROSCOPY AND

01:25PM  1    API HEMATOLOGY.

01:25PM  2        DO YOU SEE THAT?

01:25PM  3    A.   YES.

01:25PM  4    Q.   AS WELL AS INFECTIOUS DISEASE, SEROLOGY, AND THE SCORES

01:25PM  5    ARE ALL 100 PERCENT?

01:25PM  6    A.   YES.

01:25PM  7    Q.   AND THIS WOULD BE PROFICIENCY TESTING CHALLENGES CONDUCTED

01:25PM  8    IN THE CLINICAL LAB DURING THE TIME PERIOD THAT YOU WERE

01:25PM  9    WORKING IN THE CLINICAL LAB; CORRECT?

01:25PM  10   A.   YES.

01:25PM  11   Q.   IN RESPONSE TO MR. GEE FORWARDING THE PROFICIENCY TESTING

01:25PM  12   SCORES, MR. ARINGTON RESPONDS AT THE BOTTOM OF PAGE 2, "JUST A

01:25PM  13   COUPLE OF CLARIFICATIONS.  I BELIEVE THAT MARYLAND AND FLORIDA

01:25PM  14   ARE CURRENTLY VALID LICENSES, BUT ARE UP FOR RENEWAL ON THE

01:25PM  15   DATES NOTED BY LANGLY.  (PLEASE CONFIRM).  AS FOR NEW JERSEY,

01:26PM  16   THE RENEWAL IS PENDING OBTAINING A BIO ANALYTICAL LABORATORY

01:26PM  17   DIRECTOR LICENSE WITH THE NEW JERSEY BOARD OF MEDICINE AND I

01:26PM  18   BELIEVE ADAM IS TAKING CARE OF THAT."

01:26PM  19       DO YOU SEE THAT?

01:26PM  20   A.   I DO.

01:26PM  21   Q.   WERE YOU AWARE THAT THERANOS HAD CLINICAL LICENSES, CLIA

01:26PM  22   LICENSES IN STATES OTHER THAN CALIFORNIA?

01:26PM  23   A.   I RECALL THAT THEY WERE SEEKING THEM, AND I BELIEVE THEY

01:26PM  24   HAD THEM IN ARIZONA, BUT I WASN'T SURE OF THE ENTIRE SUITE.

01:26PM  25   Q.   AND THE MESSAGE IS REFERRING TO OTHER STATES THAT IT

01:26PM  1    APPEARS THAT THERANOS MAY HAVE HAD OR WAS PURSUING LICENSES;

01:26PM  2    CORRECT?

01:26PM  3    A.   YEAH, IT WOULD APPEAR SO.

01:26PM  4    Q.   AND THEN IN RESPONSE MR. GEE WRITES, "ALL," THIS IS THE

01:26PM  5    MIDDLE OF PAGE 2, "MARYLAND AND FLORIDA ARE CURRENT VALID

01:26PM  6    LICENSES AND THE RENEWAL DATES ARE LISTED.

01:26PM  7         "MARYLAND SHOULD BE SENDING THE RENEWAL PAPERWORK BY MAY

01:26PM  8    19TH, 2014."

01:27PM  9         DO YOU SEE THAT?

01:27PM  10   A.   YES.

01:27PM  11   Q.   AND THEN IN RESPONSE TO MR. GEE REPORTING THOSE LICENSE

01:27PM  12   STATUSES, THERE ARE MESSAGES FROM DAN EDLIN.

01:27PM  13        "PLEASE SEND THE LATEST VERSIONS OF THESE REPORTS IN PDF."

01:27PM  14        DO YOU SEE THAT?

01:27PM  15   A.   YES.

01:27PM  16   Q.   OKAY.  YOU CAN SET THAT ASIDE.

01:27PM  17             THE COURT:  COUNSEL, SHOULD WE TAKE OUR BREAK NOW

01:27PM  18   BEFORE YOU MOVE INTO ANOTHER AREA?  I DON'T WANT TO INTERRUPT

01:27PM  19   YOU.

01:27PM  20        WE WERE GOING TO BREAK AT 1:30.

01:27PM  21             MR. CAZARES:  YOUR HONOR, THIS IS A VERY GOOD SPOT,

01:27PM  22   YES.

01:27PM  23             THE COURT:  LET'S TAKE OUR AFTERNOON BREAK, LADIES

01:27PM  24   AND GENTLEMEN.  IT WILL BE 30 MINUTES, PLEASE, 30 MINUTES.

01:28PM  25        (JURY OUT AT 1:28 P.M.)

01:28PM   1          THE COURT:  THE RECORD SHOULD REFLECT THAT THE JURY

01:28PM   2   HAS LEFT FOR BREAK.  DR. PANDORI HAS LEFT THE COURTROOM.

01:28PM   3          ALL COUNSEL AND THE DEFENDANT IS PRESENT.

01:28PM   4          I JUST WANT TO TALK ABOUT 20418, WHICH WAS THE GP 29-A2

01:29PM   5   CLIA DOCUMENT THAT WAS SOUGHT TO BE ADMITTED.

01:29PM   6          I JUST HAVE SOME QUESTIONS ABOUT -- WE HAD SOME ROBUST

01:29PM   7   DISCUSSION THIS MORNING REGARDING EXPERTISE AND, FOR EXAMPLE, I

01:29PM   8   DRAW YOUR ATTENTION TO PAGE 21 -- PAGE 31 OF THE DOCUMENT

01:29PM   9   THERE'S FORMULA 2 IS SOMETHING THAT I CAN'T DESCRIBE.

01:29PM  10          APPENDIX A HAS A CHART WITH AN X AND A Y AXIS THAT HAS

01:29PM  11   SOME INFORMATION ON IT.

01:29PM  12          I RAISE THESE POINTS TO SUGGEST THAT THIS IS A CONCERN

01:29PM  13   THAT I HAVE ABOUT THIS GOING TO THE JURY AND WHAT IS THE

01:29PM  14   RELEVANCE OF PAGE 29 OF THE EXHIBIT ALSO HAS FORMULA 1 THAT --

01:29PM  15   I'LL GIVE COUNSEL FIVE MINUTES TO SOLVE FOR US BEFORE WE GO

01:30PM  16   FORWARD IF YOU WANT.

01:30PM  17          MY POINT IS, WHAT IS THE RELEVANCE OF HAVING THE JURY HAVE

01:30PM  18   THE ENTIRETY OF THE DOCUMENT?  MY SENSE IS THAT THE WITNESS

01:30PM  19   TESTIFIED ABOUT GP 29 AND WHAT THAT MEANT.  HE SAID HE WASN'T

01:30PM  20   CERTAIN EXACTLY ABOUT WHAT EXACTLY THE DOCUMENT WAS OR WHAT

01:30PM  21   THAT TESTING WAS, AND --

01:30PM  22          MR. CAZARES:  YOUR HONOR, I THINK THE WITNESS

01:30PM  23   TESTIFIED THAT HE REVIEWED THE CLSI GUIDELINES IN RELATION TO

01:30PM  24   THE PROPRIETARY OF AAP FOR PROFICIENCY TESTING IN THERANOS'S

01:30PM  25   EDISON DEVICE.

01:30PM   1              THE COURT:  RIGHT.

01:30PM   2              MR. CAZARES:  HE SAID HE HAD DISCUSSIONS WITH OTHER

01:30PM   3       LAB DIRECTORS PRIOR TO JOINING THERANOS ABOUT, AGAIN, THAT SAME

01:30PM   4       ISSUE; HE HAS RAISED QUESTIONS ABOUT THE PROPRIETARY OF

01:30PM   5       DR. ROSENDORFF'S SIGNED SOP AND THE TERMS.  YOU SAW HE

01:30PM   6       DISAGREED WITH SOME OF THOSE ISSUES, WHICH IS THE FOUNDATION OF

01:30PM   7       SOME OF HIS TESTIMONY ABOUT THE ENTIRE PROFICIENCY TESTING

01:31PM   8       PROGRAM AT THERANOS.

01:31PM   9          THE CLSI GUIDELINE IS REFERENCED BY DR. ROSENDORFF AS A

01:31PM  10       BASES FOR HIS PROCEDURE AS LAB DIRECTOR BY IMPLEMENTING IT, AND

01:31PM  11       I THINK I SHOULD BE PERMITTED TO CONFRONT THIS WITNESS AND HIS

01:31PM  12       TESTIMONY CHALLENGING DR. ROSENDORFF'S SOP WITH THE VERY

01:31PM  13       DOCUMENT THAT BOTH THIS WITNESS IS FAMILIAR WITH AND THAT

01:31PM  14       DR. ROSENDORFF RELIED UPON IN DEVELOPING THE SOP.

01:31PM  15              THE COURT:  WELL, THAT'S ONE THING CHALLENGING HIM,

01:31PM  16       BUT ADMITTING IT INTO EVIDENCE IS WHAT YOU SOUGHT TO DO.

01:31PM  17              MR. CAZARES:  YES, YOUR HONOR.

01:31PM  18              THE COURT:  AND THAT'S THE CONCERN THAT I HAVE.

01:31PM  19          AND HE DID SAY THAT -- I THOUGHT HE HAD A QUALIFIED ANSWER

01:31PM  20       AS TO WHETHER HE SAW THIS OR NOT.

01:31PM  21          MR. BOSTIC.

01:31PM  22              MR. BOSTIC:  THAT'S MY RECOLLECTION AS WELL,

01:31PM  23       YOUR HONOR.  I DON'T BELIEVE THE WITNESS TESTIFIED THAT HE HAD

01:31PM  24       HAD REVIEWED THIS PARTICULAR DOCUMENT.

01:31PM  25              EVEN IF HE HAD, I THINK THAT REASONING COULD POTENTIALLY

01:31PM  1    OPEN THE DOOR TO A WIDE RANGE OF TECHNICAL AND SCIENTIFIC

01:32PM  2    LITERATURE AND MATERIALS THAT AREN'T AUTOMATICALLY ADMISSIBLE

01:32PM  3    IN THIS CASE.

01:32PM  4         I SHARE THE COURT'S CONCERN ABOUT THE TECHNICAL AND

01:32PM  5    COMPLICATED NATURE OF THIS DOCUMENT.  I DON'T THINK IT'S

01:32PM  6    APPROPRIATE TO ASK THE JURY TO INTERPRET THESE GUIDELINES AND

01:32PM  7    MAKE A JUDGMENT AS TO WHETHER THERANOS'S PRACTICES COMPLIED

01:32PM  8    WITH THEM OR NOT.

01:32PM  9         AND IF COUNSEL IS SEEKING TO SOLICIT THE WITNESS'S

01:32PM 10    OPINION, HIS INTERPRETATION OF THESE GUIDELINES, I THINK THAT'S

01:32PM 11    INCONSISTENT WITH THE POSITION THEY'VE TAKEN ON 702 TESTIMONY

01:32PM 12    HERE.

01:32PM 13         I THINK IN CROSS-EXAMINATION ALREADY THERE HAVE BEEN

01:32PM 14    SEVERAL QUESTIONS ASKING THIS WITNESS IF HE AGREED WITH

01:32PM 15    STATEMENTS BY MR. BALWANI OR JUDGMENTS BY OTHER TECHNICAL

01:32PM 16    PERSONNEL AT THERANOS, AND I THINK THOSE HAVE CROSSED THE LINE

01:32PM 17    WHEN IT COMES TO 702 AND SEEKING THAT KIND OF OPINION TESTIMONY

01:32PM 18    AS WELL.

01:32PM 19         I THINK THIS WOULD BE A STEP FURTHER IN THE WRONG

01:32PM 20    DIRECTION.

01:32PM 21              MR. CAZARES:  YOUR HONOR, THIS WITNESS HAS TESTIFIED

01:32PM 22    QUITE STRENUOUSLY REGARDING HIS EXPERIENCE.  THE GOVERNMENT

01:33PM 23    DREW THAT OUT IN BUFFERING HIS TESTIMONY, AND HE HAS OPINED ON

01:33PM 24    CAUSATION ISSUES RELATING TO THE EDISON DEVICE AS WELL AS

01:33PM 25    OPINED ON THE FACT THAT WHAT HE OBSERVED REGARDING THE

01:33PM 1    PROFICIENCY TESTING PROGRAM WAS INAPPROPRIATE AND INSUFFICIENT

01:33PM 2    UNDER THE REGULATIONS.  THIS IS A LEARNED TREATISE BY HIS OWN

01:33PM 3    ADMISSION THAT HE'S FAMILIAR WITH, REVIEWED.

01:33PM 4        DR. ROSENDORFF --

01:33PM 5            THE COURT:  I'M NOT -- LET'S CHECK THE TRANSCRIPT TO

01:33PM 6    SEE IF HE SAID HE REVIEWED IT.

01:33PM 7            MR. CAZARES:  THERE WERE TWO ANSWERS.

01:33PM 8        ONE WAS, YES, I REVIEWED IT.  I TRIED TO PRESS HIM.  YOU

01:33PM 9    STUDIED IT CLOSELY, AND HE RESISTED THAT.  THAT'S WHERE I WAS

01:33PM 10   GOING TO IMPEACH HIM WITH A PRIOR STATEMENT, BUT HE DID SAY

01:33PM 11   YES.

01:33PM 12           MR. BOSTIC:  MY MEMORY, YOUR HONOR, IS THAT HE

01:33PM 13   STATED THAT HE IS FAMILIAR WITH SOME OF THE CLSI GUIDELINES,

01:33PM 14   BUT HE DID NOT KNOW WHETHER HE HAD REVIEWED GP 29, WHICH IS THE

01:34PM 15   ONE THAT WE'RE TALKING ABOUT NOW.

01:34PM 16           THE COURT:  AND THAT'S MY REC -- PERHAPS WE SHOULD

01:34PM 17   LOOK AT THE TRANSCRIPT.

01:34PM 18       BUT MY POINT IS I'M RETICENT TO ADMIT THE DOCUMENT.

01:34PM 19       I DON'T HAVE A PROBLEM WITH YOU TESTING THIS WITNESS'S

01:34PM 20   KNOWLEDGE, OR WHATEVER, ABOUT HIS AGREEMENT OR NOT, BUT TO

01:34PM 21   ALLOW THE DOCUMENT TO COME IN, I THINK IT'S GOING TO HAVE

01:34PM 22   THIS -- ARE YOU GOING TO ASK THIS JURY THEN TO GO BACK AND LOOK

01:34PM 23   AT THIS AND ASK THEM TO REVIEW REFERENCE METHOD, REGRESSION

01:34PM 24   ANALYSIS, QUALITY MANAGEMENT, PROFICIENCY TESTING, SPECIAL

01:34PM 25   CAUSE VARIATION?  ALL OF THOSE THINGS ARE LISTED IN HERE AS YOU

01:34PM 1    KNOW.

01:34PM 2         MR. CAZARES:  UNDERSTOOD, YOUR HONOR.

01:34PM 3         THERE ARE COMPLICATED SCIENTIFIC ISSUES REFERENCED ALL

01:34PM 4    OVER THIS CASE, INCLUDING MANY OF THE EMAILS CIRCULATED IN THIS

01:34PM 5    CASE, AND UNFORTUNATELY THAT'S THE CASE THAT WE HAVE AND ARE

01:34PM 6    PRESENTED WITH.

01:35PM 7         WITH RESPECT TO MY EXAMINATION OF THE WITNESS WITH THE

01:35PM 8    DOCUMENT WITHOUT ADMITTING IT, YOUR HONOR, OF COURSE, IF I'M

01:35PM 9    GIVEN SOME LATITUDE IN SHOWING HIM THE DOCUMENT, AS HE'S

01:35PM 10   ALREADY BEEN GIVEN IN REVIEWING PUBLICATIONS NOT IN EVIDENCE,

01:35PM 11   AND I'M ABLE TO ASK QUESTIONS SIMILARLY TO THE GOVERNMENT'S

01:35PM 12   QUESTIONS ABOUT THE SUBSTANCE OF THE ACTUAL DOCUMENT DESPITE

01:35PM 13   THE FACT THAT IT'S NOT IN EVIDENCE, YES, I CAN ACCOMPLISH WHAT

01:35PM 14   I NEED WITHOUT IT BEING IN EVIDENCE.

01:35PM 15        WE MAY HAVE ANOTHER WITNESS LATER ON IN THE TRIAL WHO WE

01:35PM 16   CAN TRY TO GET IT THROUGH, BUT I UNDERSTAND THE COURT'S

01:35PM 17   CONCERNS.

01:35PM 18        THE COURT:  I DON'T HAVE A PROBLEM IN ADMITTING

01:35PM 19   PAGE 1, WHICH IS THE COVER PAGE THAT IDENTIFIES WHAT IT IS, AND

01:35PM 20   THAT WOULD INFORM THE JURY AS TO WHAT THIS THING IS THAT HE'S

01:35PM 21   TALKING ABOUT.

01:35PM 22        THE CONTENTS AND ALL OF THE TECHNOLOGY, AND I THINK

01:35PM 23   MR. BOSTIC IS ACCURATE, I THINK YOU WOULD AGREE WITH HIM THAT

01:35PM 24   BOTH OF THE EXAMINATIONS HAVE DRIFTED AS WE TALKED ABOUT THIS

01:35PM 25   MORNING IN OUR 702 CONVERSATION.

01:35PM 1        I'VE GIVEN LATITUDE.  THE CASE IS A SCIENTIFIC CASE.  IT

01:36PM 2    INVOLVES THESE TYPES OF TOPICS THAT, AS I TOLD YOU THIS

01:36PM 3    MORNING, YOUR COLLEAGUE THIS MORNING, I DON'T BELIEVE IT

01:36PM 4    DRIFTED INTO THE NECESSITY OF 702 MUCH LIKE THIS AFTERNOON.  WE

01:36PM 5    DIDN'T HEAR ANY 702 OBJECTIONS THIS AFTERNOON.

01:36PM 6        MY SENSE IS THAT THE INFORMATION GAINED AND THE QUESTIONS

01:36PM 7    ASKED WERE VERY SIMILAR TO THE ONES OF THE PREVIOUS DAY'S

01:36PM 8    TESTIMONY OF WITNESSES DESCRIBING, AND I'M GIVING COUNSEL

01:36PM 9    LATITUDE TO TALK ABOUT THESE THINGS TO INFORM THE JURY.

01:36PM 10       AND I BELIEVE THEY CAN BE INFORMED ABOUT WHAT THIS IS,

01:36PM 11   WHAT AN AAP IS, WHY YOU DO THAT, WHY WOULD SOMEONE DO THAT.

01:36PM 12       BUT THE WITNESS'S -- DR. PANDORI WENT A LITTLE FURTHER

01:36PM 13   TALKING ABOUT SOME OTHER THINGS, AND THERE WAS NO OBJECTION,

01:36PM 14   AND YOU ASKED THE QUESTION, AND THAT'S FINE.

01:36PM 15       SO IT'S -- AGAIN, WE'RE WALKING THAT CAT WALK, AREN'T WE,

01:36PM 16   ABOUT HOW FAR IS 702 AND HOW MUCH IS REALLY HELPFUL TO THE

01:36PM 17   JURY?

01:36PM 18       I'M NOT GOING TO ADMIT THE ENTIRETY OF THE DOCUMENT FOR

01:36PM 19   THE REASONS THAT I HAVE INDICATED.  I JUST THINK IT WOULD

01:37PM 20   REQUIRE -- MAYBE YOU HAVE A WITNESS WHO CAN OPINE TO IT.

01:37PM 21       I WILL ALLOW YOU, AND I WILL ADMIT THE COVER, THE COVER

01:37PM 22   SHEET TO, IF YOU WISH THAT, TO GUIDE YOUR EXAMINATION AND TO

01:37PM 23   GIVE CONTEXT TO YOUR EXAMINATION IF YOU WANT TO ASK HIM

01:37PM 24   QUESTIONS ABOUT THE CONTEXT.

01:37PM 25           MR. CAZARES:  UNDERSTOOD, YOUR HONOR.  YES,

01:37PM  1    YOUR HONOR.

01:37PM  2              THE COURT:  AND I'LL DO THAT IN FRONT OF THE JURY IF

01:37PM  3    YOU WOULD LIKE.  AND IF YOU WANT TO RENEW IT, WE'LL TAKE IT UP

01:37PM  4    THEN.

01:37PM  5              MR. CAZARES:  YES.

01:37PM  6              MR. BOSTIC:  CAN I OFFER ONE THOUGHT?

01:37PM  7              THE COURT:  YES.

01:37PM  8              MR. BOSTIC:  IN DETERMINING THE BOUNDS OF THAT

01:37PM  9    QUESTIONING, I NOTICE A DIFFERENCE BETWEEN THIS DOCUMENT AND

01:37PM  10   THE ARTICLE THAT THE WITNESS WAS QUESTIONED ON EARLIER.

01:37PM  11       AND THE DEFENSE IS, OF COURSE, RIGHT THAT THIS CASE

01:37PM  12   INVOLVES TECHNICAL INFORMATION AND MATERIALS, THAT'S BEEN THE

01:37PM  13   FORM OF EVIDENCE SO FAR.  THIS IS NOT EVIDENCE THAT SHOWS WHAT

01:37PM  14   HAPPENED AT THERANOS.  THIS IS AN ADDITIONAL SET OF STANDARDS.

01:37PM  15       SO THERE'S A DIFFERENCE BETWEEN ASKING A WITNESS TO

01:37PM  16   DESCRIBE WHAT HAPPENED IN REFERENCING INTERNAL DOCUMENTS OR

01:38PM  17   ASKING HIM TO DESCRIBE WHAT HE SAW IN THE PRESS AT THE TIME.

01:38PM  18   AND THIS, WHICH WOULD BE BRINGING IN A NEW SET OF STANDARDS AND

01:38PM  19   GUIDELINES AND CRITERIA AND ASKING THE WITNESS TO OPINE ON

01:38PM  20   PRESUMABLY WHETHER THE THERANOS PRACTICES WERE CONSISTENT WITH

01:38PM  21   THAT OR NOT, AND I WOULD OBJECT TO THAT UNDER BOTH THE HEARSAY

01:38PM  22   BUT UNDER 401 AND 403.

01:38PM  23              THE COURT:  WELL, THAT --

01:38PM  24              MR. CAZARES:  YOUR HONOR, VERY BRIEFLY.  I DISAGREE.

01:38PM  25       THE PURPOSE OF THE EVIDENCE IS TO DEMONSTRATE THE

01:38PM   1    CONSISTENCY OF THE ACCEPTED GUIDELINES THAT DR. PANDORI HIMSELF

01:38PM   2    SAYS THAT HE CONSULTED AS REFERENCED BY DR. ROSENDORFF AND WERE

01:38PM   3    RELIED UPON DR. ROSENDORFF TO IMPLEMENT THE AAP PROGRAM THAT

01:38PM   4    THIS WITNESS HAS NOW SAID WAS INSUFFICIENT.

01:38PM   5         SO THAT INFORMS WHAT ACTUALLY HAPPENED AT THE LAB.  AND

01:38PM   6    AGAIN, THE WITNESS CAN HAVE AGREEMENT WITH WHETHER THAT WAS

01:38PM   7    APPROPRIATE OR NOT, BUT THE WITNESS HAS REFERENCED THINGS THAT

01:38PM   8    THE CLSI GUIDELINES AS SOMETHING THAT HE AND PROFESSIONALS LIKE

01:39PM   9    HIM RELY UPON, AND I THINK IT IS EVIDENCE AND IT SHOULD BE

01:39PM  10    ADMITTED.  BUT I UNDERSTAND THE COURT IS NOT GOING TO DO SO FOR

01:39PM  11    NOW, AND WE MAY HAVE ANOTHER WITNESS LATER, BUT I WILL PROBABLY

01:39PM  12    USE IT ON CROSS-EXAMINATION.

01:39PM  13              THE COURT:  WELL, LET'S SEE WHAT HE SAYS.

01:39PM  14         MY RECOLLECTION IS THAT HE LOOKED AT THIS, HE LOOKED AT

01:39PM  15    GP 29, AND HE LOOKED AT THIS AND SAID -- HE MENTIONED SOMETHING

01:39PM  16    ABOUT THIS NOT REALLY BEING -- COVERING THE GP 29 THAT HE HAD

01:39PM  17    FAMILIARITY WITH.  I SAY THAT IN ADVANCE.  THERE MIGHT BE --

01:39PM  18    THIS MIGHT BE OUTSIDE OF THE SCOPE OF HIS PERSONAL KNOWLEDGE OR

01:39PM  19    EXPERIENCE.  HE MAY NOT HAVE READ THIS.

01:39PM  20         AND IF HE DIDN'T, THEN IT'S NOT RELEVANT TO HIS THOUGHT

01:39PM  21    PROCESS, CRITICISMS.  IF YOU HAVE THE DOCUMENT THAT HE DID

01:39PM  22    READ, THAT'S A DIFFERENT STORY, BUT I --

01:39PM  23              MR. CAZARES:  I UNDERSTAND, YOUR HONOR.  I THINK

01:39PM  24    WE'LL HAVE TO WORK IT OUT WITH SOME FURTHER QUESTIONING.

01:39PM  25              THE COURT:  WE'LL SEE WHAT HE SAYS.  RIGHT.  OKAY.

01:39PM   1       THANK YOU.

01:39PM   2               MR. BOSTIC:  FINALLY -- APOLOGIES, YOUR HONOR.

01:39PM   3       ONE HOUSEKEEPING MATTER.  LET ME ALERT THE DEFENSE AND THE

01:39PM   4   COURT TO A SCHEDULING ISSUE WITH THIS WITNESS NOW THAT I SEE

01:40PM   5   HOW LONG THE CROSS-EXAMINATION IS LIKELY TO CONTINUE.

01:40PM   6       THIS WITNESS IS THE LAB DIRECTOR FOR A PUBLIC LAB IN

01:40PM   7   ALAMEDA COUNTY.  MY UNDERSTANDING IS THAT THEY HAVE A CLIA

01:40PM   8   INSPECTION ON TUESDAY.

01:40PM   9       I'M NOT SURE -- AND I HAVEN'T BEEN IN TOUCH WITH THE

01:40PM  10   WITNESS RECENTLY BECAUSE HE'S ON CROSS-EXAMINATION, BUT I

01:40PM  11   UNDERSTAND THAT HE MAY FEEL THE NEED TO BE PRESENT AT THE

01:40PM  12   ALAMEDA LAB FOR THAT INSPECTION.

01:40PM  13       SO I'M NOT SURE HOW MUCH MORE COUNSEL HAS PLANNED, BUT I

01:40PM  14   WANTED TO ALERT THE COURT.

01:40PM  15               THE COURT:  OKAY.  I HAVE RECOLLECTION I HEARD

01:40PM  16   SOMEWHERE, A MONTH OR SO AGO, ABOUT LAB DIRECTORS NEEDING TO BE

01:40PM  17   PRESENT AT CLIA INSPECTIONS.  I DON'T KNOW WHERE.  IT JUST

01:40PM  18   COMES TO MIND.

01:40PM  19               MR. CAZARES:  YOUR HONOR, I RECOGNIZE THE ISSUE.  I

01:40PM  20   WILL NOT BE FINISHED TODAY.

01:40PM  21               THE COURT:  OKAY.

01:40PM  22               MR. CAZARES:  SO I GUESS WE'LL HAVE TO DEAL WITH THE

01:40PM  23   SCHEDULING ISSUE.

01:40PM  24               THE COURT:  WE'LL TAKE OUR BREAK.  MAYBE YOU CAN

01:40PM  25   TALK ABOUT THAT, AND WE'LL SEE WHERE IT TAKES US.

01:40PM   1          NEXT WEEK, REMIND ME, WE'RE NOT -- I KNOW THERE WAS SOME

01:40PM   2     TRAVEL FOR A JUROR ON FRIDAY I THINK.

01:41PM   3          THE CLERK:  THURSDAY AND FRIDAY.

01:41PM   4          (RECESS FROM 1:41 P.M. UNTIL 2:05 P.M.)

02:05PM   5          (JURY IN AT 2:05 P.M.)

02:05PM   6          THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

02:05PM   7     ALL COUNSEL ARE PRESENT.

02:05PM   8          THE JURY IS PRESENT.

02:05PM   9          MR. BALWANI IS PRESENT.

02:05PM  10          DR. PANDORI IS BACK ON THE STAND.

02:05PM  11          COUNSEL, WOULD YOU LIKE TO RESUME?

02:06PM  12          MR. CAZARES:  YES, YOUR HONOR.  THANK YOU VERY MUCH.

02:06PM  13          I APOLOGIZE, YOUR HONOR.

02:06PM  14     Q.   GOOD AFTERNOON, DR. PANDORI.

02:06PM  15     A.   GOOD AFTERNOON.

02:06PM  16     Q.   RETURNING BACK TO A TOPIC WE DISCUSSED A LITTLE BIT HERE,

02:06PM  17     OR ACTUALLY QUITE A BIT HERE, REGARDING THE AAP SOP, THE

02:06PM  18     PROCEDURES FOR THE EDISON DEVICE.

02:06PM  19          WE'VE TALKED ABOUT THE PRIOR SOP FROM DECEMBER OF 2013

02:06PM  20     THAT DR. ROSENDORFF SIGNED OFF ON THAT YOU SAID THAT YOU HADN'T

02:06PM  21     BEEN AWARE OF BACK IN LATE 2013 AND 2014; CORRECT?

02:06PM  22     A.   I THINK HE -- YOU'RE REFERRING TO AN SOP THAT HE SIGNED

02:06PM  23     OFF ON IN NOVEMBER OF 2013 I BELIEVE.

02:06PM  24     Q.   THAT'S YOUR RECOLLECTION?  I'M JUST ASKING IS THAT YOUR

02:06PM  25     RECOLLECTION?

02:06PM  1    A.   I THOUGHT THAT'S WHAT IT SAID.

02:06PM  2    Q.   OKAY.  AND YOU WERE UNAWARE OF THAT IN THAT EARLY TIME

02:07PM  3    PERIOD OF YOUR EMPLOYMENT IN DECEMBER 2013 AND JANUARY 2014?

02:07PM  4    A.   CORRECT.

02:07PM  5    Q.   OKAY.  AND I POINTED OUT SOME PROVISIONS WITHIN THAT SOP

02:07PM  6    AND YOU DISAGREED WITH SOME OF THOSE; CORRECT?

02:07PM  7    A.   UM, I HAD NOT REVIEWED IT PRIOR.

02:07PM  8    Q.   SO YOU'RE NOW SAYING THAT YOU DIDN'T DISAGREE WITH THE

02:07PM  9    PROGRAM?

02:07PM  10   A.   OH, I WOULD HAVE -- I WAS IMPLYING THAT MAYBE IT WOULD

02:07PM  11   HAVE BENEFITTED FROM SOME REVIEW.

02:07PM  12   Q.   OKAY.  IF YOU COULD TURN TO EXHIBIT 7440.  THAT SHOULD BE

02:07PM  13   IN YOUR SECOND BINDER.

02:07PM  14        ACTUALLY, I'M SORRY.  IT'S BINDER 1, VOLUME 1, DEFENSE

02:07PM  15   7440.

02:08PM  16   A.   7440.

02:08PM  17   Q.   7440.  GOT IT?

02:08PM  18   A.   GOT IT.

02:08PM  19   Q.   7440 IS AN EMAIL WITH AN ATTACHMENT.

02:08PM  20        THE FIRST PAGE OF 7440 APPEARS TO BE AN EMAIL FROM

02:08PM  21   YOURSELF TO MR. BALWANI?

02:08PM  22   A.   YES.

02:08PM  23   Q.   APRIL 17TH, 2014?

02:08PM  24   A.   YES.

02:08PM  25   Q.   OKAY.

02:08PM   1            MOVE TO ADMIT 7440, YOUR HONOR.

02:08PM   2                 MR. BOSTIC:  NO OBJECTION.

02:08PM   3                 THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

02:08PM   4            (DEFENDANT'S EXHIBIT 7440 WAS RECEIVED IN EVIDENCE.)

02:08PM   5       BY MR. CAZARES:

02:08PM   6       Q.   LOOKING AT THE FIRST PAGE, DR. PANDORI, THE SUBJECT LINE

02:08PM   7       REFERENCES SLIDES PT, AAP.

02:08PM   8            DO YOU SEE THAT?

02:08PM   9       A.   YES.

02:08PM   10      Q.   AND PT REFERRED TO PROFICIENCY TESTING?

02:08PM   11      A.   YES.

02:08PM   12      Q.   AND AAP, ALTERNATIVE ASSESSMENT PROCEDURE?

02:08PM   13      A.   YES.

02:08PM   14      Q.   OKAY.  AND THEN THERE'S AN ATTACHMENT REFERENCE THE WITHIN

02:08PM   15      THE EMAIL?

02:08PM   16      A.   YES.

02:08PM   17      Q.   OKAY.  AND YOU WROTE TO MR. BALWANI, "ATTACHED, A

02:08PM   18      SLIDESHOW I PUT TOGETHER GIVING AN OVERVIEW OF AAP AND HOW IT

02:08PM   19      WORKS AND WHY IT IS BETTER THAN PT."

02:09PM   20           DO YOU SEE THAT?

02:09PM   21      A.   YES.

02:09PM   22      Q.   AND YOU ALSO WROTE, "I AM HAPPY TO ADD THIS.  I PURPOSELY

02:09PM   23      AVOIDED GETTING INTO THE TECHNICAL ASPECTS OF PASSING AND

02:09PM   24      FAILING.  WE CAN CERTAINLY ADD CRITERIA, ET CETERA."

02:09PM   25           DO YOU SEE THAT?

02:09PM   1    A.   YES.

02:09PM   2    Q.   "IF OK, I AIM TO PRESENT THIS AT STAFF MEETING ON

02:09PM   3    THURSDAY.

02:09PM   4         "THANKS, MARK PANDORI."

02:09PM   5         DO YOU SEE THAT?

02:09PM   6    A.   YES.

02:09PM   7    Q.   AND SO YOU WERE PRESENTING TO MR. BALWANI A POWERPOINT

02:09PM   8    PRESENTATION REGARDING THE EDISON ON THIS DATE; CORRECT?

02:09PM   9    A.   I WAS ASKING TO DO SO.

02:09PM  10    Q.   AND YOU DID SO?

02:09PM  11    A.   I RECALL.

02:09PM  12    Q.   OKAY.  AND YOU PUT TOGETHER THE POWERPOINT; CORRECT?

02:09PM  13    A.   YES.

02:09PM  14    Q.   AND YOU SENT IT TO MR. BALWANI?

02:09PM  15    A.   YES.

02:09PM  16    Q.   OKAY.  AND IF WE COULD PUT PAGE 2, THE FIRST PAGE OF THE

02:09PM  17    ATTACHMENT UP, THE FIRST PAGE OF THE PRESENTATION IS TITLED

02:09PM  18    PROFICIENCY TESTING AND QUALITY ASSESSMENT OF THERANOS METHODS.

02:09PM  19         DO YOU SEE THAT?

02:09PM  20    A.   I DO.

02:10PM  21    Q.   AND AGAIN, THIS IS SOMETHING THAT YOU PREPARED?

02:10PM  22    A.   YES.

02:10PM  23    Q.   AND TURNING TO THE SECOND PAGE OF THE EXHIBIT, THE

02:10PM  24    POWERPOINT REGARDING AAP, THE PRESENTATION REFERENCES CMS, AKA

02:10PM  25    CLIA, REQUIRES ALL TESTS FOR CERTAIN REGULATED ANALYTES ARE

02:10PM   1    EVALUATED FOR ACCURACY ON A ROUTINE BASIS.

02:10PM   2         THAT IS YOUR UNDERSTANDING OF WHAT CLIA REQUIRES; CORRECT?

02:10PM   3    A.   CORRECT.

02:10PM   4    Q.   AND THREE EXTERNAL CHALLENGES PER YEAR.

02:10PM   5         YOU'VE TESTIFIED TO THAT; CORRECT?

02:10PM   6    A.   CORRECT.

02:10PM   7    Q.   AND PRIVATE AGENCIES PROVIDE SYNTHETIC, PRESERVED,

02:10PM   8    SPECIMEN PANELS.

02:10PM   9         DO YOU SEE THAT?

02:10PM   10   A.   YES.

02:10PM   11   Q.   AND THAT'S ACCURATE?

02:10PM   12   A.   FOR SOME AGENCIES, YES.

02:10PM   13   Q.   OKAY.  AND THEN THE NEXT PAGE IN YOUR PRESENTATION TO

02:10PM   14   MR. BALWANI YOU WROTE, "PANELS ARE TESTED BY MULTIPLE

02:10PM   15   LABORATORIES ON VARIOUS TYPES OF EQUIPMENT TO GENERATE

02:10PM   16   ACCEPTABLE RANGES ON A PER METHOD BASIS."

02:10PM   17        DO YOU SEE THAT?

02:10PM   18   A.   YES.

02:10PM   19   Q.   AND THEN YOU WROTE, "YOUR LAB IS COMPARED TO PEER GROUPS

02:11PM   20   ON THE BASIS OF EQUIPMENT."

02:11PM   21        DO YOU SEE THAT?

02:11PM   22   A.   YES.

02:11PM   23   Q.   AND THAT'S DEALING WITH THAT PEER ISSUE; CORRECT?

02:11PM   24   A.   YES.

02:11PM   25   Q.   OKAY.  AND THEN IN THE PRESENTATION YOU SENT TO

02:11PM 1    MR. BALWANI YOU WROTE, "THERANOS TESTS HAVE NO PEER GROUPS";

02:11PM 2    CORRECT?

02:11PM 3    A.   CORRECT.

02:11PM 4    Q.   AND THEN THE PRESENTATION CONTINUES.

02:11PM 5         "NORMAL PROCESS OF PT IS THEREFORE NOT APPROPRIATE."

02:11PM 6         DO YOU SEE THAT?

02:11PM 7    A.   YES.

02:11PM 8    Q.   AND THAT'S WHAT YOU TOLD MR. BALWANI IN THIS PRESENTATION;

02:11PM 9    CORRECT?

02:11PM 10   A.   ON -- YES.

02:11PM 11   Q.   AND THEN YOU CONTINUED IN YOUR PRESENTATION TO MR. BALWANI

02:11PM 12   ABOUT THE APPROPRIATENESS.

02:11PM 13        "ADDITIONALLY, THE SYNTHETIC MATRIX OF MANY COMMERCIALLY

02:11PM 14   AVAILABLE PT SAMPLES IS NOT AN APPROPRIATE ONE FOR MANY

02:11PM 15   THERANOS TESTS."

02:11PM 16        THAT'S WHAT YOU WROTE?

02:11PM 17   A.   I WROTE THAT.

02:11PM 18   Q.   AND THEN THE NEXT PAGE OF THE PRESENTATION CONTINUES.

02:11PM 19        "HOW IS PT PERFORMED THEN ON THERANOS TESTS?"

02:12PM 20        DO YOU SEE THAT?

02:12PM 21   A.   YES.

02:12PM 22   Q.   AND THE PRESENTATION CONTINUES, "THE CLSI (THE CLINICAL

02:12PM 23   AND LABORATORY STANDARDS INSTITUTE)."

02:12PM 24        DO YOU SEE THAT?

02:12PM 25   A.   YES.

PANDORI CROSS BY MR. CAZARES

02:12PM  1      Q.   AND WE TALKED ABOUT THAT EARLIER TODAY; CORRECT?

02:12PM  2      A.   YES.

02:12PM  3      Q.   OKAY.  THAT'S THAT THE GUIDELINE IN THE INDUSTRY; CORRECT?

02:12PM  4      A.   CORRECT.

02:12PM  5      Q.   "REFERS TO THE USE OF AN AAP OR ALTERNATIVE ASSESSMENT

02:12PM  6      PROTOCOL."

02:12PM  7           DO YOU SEE THAT?

02:12PM  8      A.   YES.

02:12PM  9      Q.   AND IT CONTINUES, YOUR PRESENTATION.

02:12PM  10          "THIS IS AN ALTERNATIVE WAY TO ASSESS THE ONGOING

02:12PM  11     PERFORMANCE OF A LABORATORY TEST WHEN STANDARD PT IS

02:12PM  12     INAPPROPRIATE."

02:12PM  13          DO YOU SEE THAT?

02:12PM  14     A.   I SEE IT.

02:12PM  15     Q.   AND THAT'S THE PRESENTATION THAT YOU SUBMITTED TO

02:12PM  16     MR. BALWANI; CORRECT?

02:12PM  17     A.   YES.

02:12PM  18     Q.   AND THEN THE DECK CONTINUES.

02:12PM  19          "PARTICULARLY IMPORTANT FOR LABORATORIES WHO HAVE NO

02:12PM  20     PEERS... SUCH AS US."

02:12PM  21          AGAIN, YOU REPORTED THAT TO MR. BALWANI; CORRECT?

02:12PM  22     A.   IT WAS PUT IN THE PRESENTATION HERE.

02:12PM  23     Q.   THAT YOU SUBMITTED TO MR. BALWANI?

02:12PM  24     A.   CORRECT.

02:12PM  25     Q.   AND THE DECK CONTINUES ON THE NEXT PAGE.

02:13PM   1              "OUR AAP."

02:13PM   2              REGARDING "OUR," THAT REFERS TO THERANOS; CORRECT?

02:13PM   3        A.   CORRECT.

02:13PM   4        Q.   AND THE PRESENTATION YOU SUBMITTED STATES, "INCLUDES

02:13PM   5   COMPARISON OF A PREDICATE FOOD AND DRUG ADMINISTRATION APPROVED

02:13PM   6   METHOD (FOR WHICH THERE IS EXTERNAL ASSESSMENT AVAILABLE) TO

02:13PM   7   THE THERANOS METHODS."

02:13PM   8              DO YOU SEE THAT?

02:13PM   9        A.   YES.

02:13PM  10        Q.   AND "OUR AAP USES ACTUAL CLINICAL SPECIMENS; 5 OR MORE

02:13PM  11   SPECIMENS ARE TESTED BY PREDICATE, AND BY THE THERANOS METHOD."

02:13PM  12              DO YOU SEE THAT?

02:13PM  13        A.   YES.

02:13PM  14        Q.   AND THEN THE DESCRIPTION CONTINUES.

02:13PM  15              "INCLUDES MONTHLY (OR GREATER FREQUENCY) PERFORMANCE."

02:13PM  16              DO YOU SEE THAT?

02:13PM  17        A.   YES.

02:13PM  18        Q.   AND MONTHLY CHECK IS MORE FREQUENT THAN COMMERCIAL PT'S;

02:13PM  19   CORRECT?

02:13PM  20        A.   YES.

02:13PM  21        Q.   AND THE DECK CONTINUES ON THE NEXT PAGE.

02:14PM  22              "THE THERANOS AAP IS SUPERIOR TO STANDARD PT AND WILL

02:14PM  23   PROVIDE EVEN MORE QUALITY ASSURANCE."

02:14PM  24              DO YOU SEE THAT?

02:14PM  25        A.   YES.

02:14PM   1    Q.   AND THAT'S PRESENTED IN THE DECK THAT YOU SENT TO

02:14PM   2    MR. BALWANI; CORRECT?

02:14PM   3    A.   CORRECT.

02:14PM   4    Q.   AND THE DECK NEXT SAYS, "PERFORMED MORE FREQUENTLY (WORKS

02:14PM   5    AS A CANARY IN A COAL MINE, CLOSER TO REALTIME MONITORING)."

02:14PM   6         DO YOU SEE THAT?

02:14PM   7    A.   I DO.

02:14PM   8    Q.   AND AGAIN, THIS IS BEING PRESENTED TO MR. BALWANI BY YOU

02:14PM   9    IN THIS PRESENTATION; CORRECT?

02:14PM  10    A.   CORRECT.

02:14PM  11    Q.   AND THEN THE DECK CONTINUES.

02:14PM  12         "TYPICAL PT DOES NOT PERFORM FOR FREQUENTLY AS A CANARY IN

02:14PM  13    A COAL MINE, CLOSER TO REALTIME MONITORING"; CORRECT?

02:14PM  14    A.   CORRECT.

02:14PM  15    Q.   AND THEN THERE'S AN IMAGE OF A CANARY IN A COAL MINE NEXT

02:14PM  16    TO THAT.

02:14PM  17         IS THAT WHAT THAT IMAGE IS?

02:14PM  18    A.   YEAH, THAT'S WHAT THAT IS.

02:14PM  19    Q.   THE DECK CONTINUES.

02:14PM  20         "THE THERANOS AAP IS SUPERIOR TO STANDARD PT AND WILL

02:15PM  21    PROVIDE EVEN MORE QUALITY ASSURANCE," AND THEN IT REFERENCES,

02:15PM  22    "IS PERFORMED USING ACTUAL CLINICAL SPECIMENS."

02:15PM  23         DO YOU SEE THAT?

02:15PM  24    A.   YES.

02:15PM  25    Q.   SO THIS PLAN WOULD USE ACTUAL SPECIMENS VERSUS

02:15PM   1      MANUFACTURED SPECIMENS?

02:15PM   2      A.   YES.

02:15PM   3      Q.   OKAY.  THEN THE DECK CONTINUES.

02:15PM   4           "ALLOWS CERTAIN VARIABLES TO BE TRACKED THAT MIGHT AFFECT

02:15PM   5      LAB TESTING, WHICH NORMAL PT WOULD NOT ALLOW."

02:15PM   6           DO YOU SEE THAT?

02:15PM   7      A.   YES.

02:15PM   8      Q.   AND THAT'S THE PRESENTATION THAT YOU SUBMITTED TO

02:15PM   9      MR. BALWANI?

02:15PM   10     A.   THAT'S CORRECT.

02:15PM   11     Q.   AND THEN THE DECK CONTINUES.

02:15PM   12          "PASSING AN AAP EVENT IS JUST AS RIGOROUS AS PT, IN FACT,

02:15PM   13     IT IS MORE RIGOROUS DUE TO INCREASED FREQUENCY."

02:15PM   14          DO YOU SEE THAT?

02:15PM   15     A.   YES.

02:15PM   16     Q.   AND THAT IS ALSO PART OF THE PRESENTATION?

02:15PM   17     A.   YES.

02:15PM   18     Q.   YOU CAN SET THAT ASIDE.

02:16PM   19          DR. PANDORI, IF YOU CAN TAKE A LOOK AT EXHIBIT 20279.

02:16PM   20     20279.  IT SHOULD BE IN VOLUME 2.

02:17PM   21          20279.

02:17PM   22     A.   OKAY.

02:17PM   23     Q.   20279, THE FIRST PAGE, REFERENCES A MESSAGE TO

02:17PM   24     ADAMROSENDORFF@THERANOS.COM TRANSITION REPORT DATED MAY 30,

02:17PM   25     2014.

PANDORI CROSS BY MR. CAZARES

02:17PM 1          DO YOU SEE THAT?

02:17PM 2    A.   YES.

02:17PM 3    Q.   AND THEN THERE'S AN ATTACHMENT REFERENCED ON THAT FIRST

02:17PM 4    PAGE.

02:17PM 5          DO YOU SEE THAT?

02:17PM 6    A.   YES.

02:17PM 7    Q.   AND THEN THERE'S A SIGNOFF ON THE EMAIL.  IT SAYS MARK.

02:17PM 8          DO YOU SEE THAT?

02:17PM 9    A.   YES.

02:17PM 10   Q.   AND THEN IF YOU TAKE A LOOK AT THE ATTACHMENTS, THERE'S A

02:18PM 11   MEMO AT THE TOP M.W. PANDORI.

02:18PM 12         DO YOU SEE THAT?

02:18PM 13   A.   YES.

02:18PM 14   Q.   AND THIS IS A MEMO YOU DRAFTED?

02:18PM 15   A.   NO, I DON'T RECALL THIS.

02:18PM 16   Q.   YOU SENT THE MEMO TO DR. ROSENDORFF?

02:18PM 17   A.   NO.

02:18PM 18   Q.   THE EMAIL REFLECTS A MESSAGE TO

02:18PM 19   ADAMROSENDORFF@THERANOS.COM.

02:18PM 20         ADAM ROSENDORFF WAS THE LAB DIRECTOR AT THERANOS; CORRECT?

02:18PM 21   A.   YES.

02:18PM 22   Q.   AND YOU -- YOUR FIRST NAME IS MARK; CORRECT?

02:18PM 23   A.   MY FIRST NAME IS MARK.

02:18PM 24   Q.   OKAY.  MAY 30, 2014 IS THE DATE THAT YOU LEFT THERANOS;

02:18PM 25   CORRECT?

02:18PM  1      A.   I DON'T RECALL THAT.

02:18PM  2      Q.   YOU LEFT IN LATE MAY 2014?

02:18PM  3      A.   I WOULD NEED -- DO YOU HAVE SOMETHING TO REFRESH MY MEMORY

02:18PM  4      IN THAT REGARD?

02:18PM  5      Q.   YOU TESTIFIED TODAY THAT YOU LEFT THERANOS IN MAY OF 2014;

02:18PM  6      CORRECT?

02:18PM  7      A.   I TESTIFIED THAT IT WAS EARLIER IN MAY I THOUGHT.

02:19PM  8      Q.   IN MAY OF 2014?

02:19PM  9      A.   IT WAS MAY OF 2014.

02:19PM 10      Q.   OKAY.  AND YOUR INITIALS ARE M.W. PANDORI?

02:19PM 11      A.   YES.

02:19PM 12      Q.   AND THE MEMO REFLECTS TOPICS WITHIN THE CLINICAL

02:19PM 13      LABORATORIES SUCH AS HIV, HCG, SMALLER VOLUME PROJECT.

02:19PM 14           DO YOU SEE THAT?

02:19PM 15      A.   I SEE IT.

02:19PM 16      Q.   OKAY.  HIV WOULD REFER TO INFECTIOUS DISEASE; CORRECT?

02:19PM 17      A.   HIV -- EXCUSE ME?

02:19PM 18      Q.   HIV AND HCG SMALLER VOLUME PROJECT --

02:19PM 19      A.   YES.

02:19PM 20      Q.   -- WAS AN INFECTIOUS DISEASE PROJECT WITHIN THE

02:19PM 21      LABORATORY; CORRECT?

02:19PM 22      A.   I REMEMBER HCG, NOT HIV.

02:19PM 23      Q.   OKAY.  THE MEMO ON PAGE 3 REFERENCES EMC BUGS.

02:20PM 24           BUGS RELATES TO INFECTIOUS DISEASE AT THERANOS; CORRECT?

02:20PM 25      A.   YES.

02:20PM  1    Q.   OKAY.  AND THE REPORT IS REFLECTING ISSUES IN THE BUGS

02:20PM  2    LAB; CORRECT?

02:20PM  3    A.   I DON'T KNOW.  I'VE NEVER SEEN THIS REPORT BEFORE.

02:20PM  4    Q.   TURNING TO THE LAST PAGE OF THE EXHIBIT, UNDER CBC THERE'S

02:20PM  5    A REFERENCE TO ROMINA AND AURELIE IN THE NORMANDY LAB.

02:20PM  6         DO YOU SEE THAT?

02:20PM  7         ROMINA RIENER AND AURELIE SOUPPE WERE CLINICAL LAB

02:20PM  8    ASSOCIATES AT THERANOS?

02:20PM  9    A.   ROMINA AND AURELIE WERE.

02:20PM  10   Q.   OKAY.  AND UNDER OTHER NOTES THERE'S A DISCUSSION WITHIN

02:20PM  11   THE MEMO REGARDING EDISONS AND ISSUES WITH THE EDISONS.

02:21PM  12        DO YOU SEE THAT?

02:21PM  13   A.   I SEE THERE'S SOME ISSUES ON THE EDISONS.  I HAVEN'T READ

02:21PM  14   IT.

02:21PM  15            MR. CAZARES:  YOUR HONOR, I MOVE TO ADMIT 20279 AS A

02:21PM  16   BUSINESS RECORD.

02:21PM  17            MR. BOSTIC:  AUTHENTICATION, YOUR HONOR.

02:21PM  18            THE COURT:  SUSTAINED.

02:21PM  19   BY MR. CAZARES:

02:21PM  20   Q.   DR. PANDORI, YOU USED EMAIL AT THERANOS; CORRECT?

02:21PM  21   A.   CORRECT.

02:21PM  22   Q.   AND YOU USED IT TO COMMUNICATE WITH DR. ROSENDORFF?

02:21PM  23   A.   YES.

02:21PM  24   Q.   ON A ROUTINE BASIS?

02:21PM  25   A.   YES.

02:21PM  1    Q.   OKAY.  AND THE EMAIL ADDRESS IN PAGE 1 OF 20279 IS

02:21PM  2    ADAM ROSENDORFF'S EMAIL ADDRESS AT THERANOS; CORRECT?

02:21PM  3    A.   YES.

02:21PM  4    Q.   AND WHEN YOU LEFT THERANOS IN LATE 2014, YOU SENT A MEMO

02:21PM  5    TO DR. ROSENDORFF; CORRECT?

02:21PM  6    A.   I DON'T RECALL.

02:22PM  7            MR. CAZARES:  YOUR HONOR, I REQUEST TO CONDITIONALLY

02:22PM  8    ADMIT THE EXHIBIT GIVEN THAT DR. ROSENDORFF HAS BEEN IDENTIFIED

02:22PM  9    AS A WITNESS WHO WILL BE TESTIFYING SOME TIME NEXT WEEK, WHICH

02:22PM  10   IS WHAT HAS BEEN REPRESENTED TO US, AND WE BELIEVE A FOUNDATION

02:22PM  11   WILL BE ABLE TO BE LAID WITH DR. ROSENDORFF.

02:22PM  12            MR. BOSTIC:  SAME OBJECTIONS, YOUR HONOR.

02:22PM  13            THE COURT:  I'M GOING TO SUSTAIN THE OBJECTIONS,

02:22PM  14   COUNSEL, FOR THIS.  I DO THINK THERE ARE SOME AUTHENTICATION

02:22PM  15   ISSUES THAT DON'T ALLOW ME TO DO THAT AS I'VE DONE IN OTHER

02:22PM  16   EXHIBITS, AND SO I'M GOING TO SUSTAIN THE OBJECTION.

02:22PM  17            MR. CAZARES:  YOUR HONOR, MAY I HAVE A MOMENT?

02:22PM  18            THE COURT:  SURE.

02:22PM  19       (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

02:23PM  20   BY MR. CAZARES:

02:23PM  21   Q.   DR. ROSENDORFF, IF YOU COULD TAKE A LOOK -- I'M SORRY.

02:23PM  22       DR. PANDORI, IF YOU COULD TAKE A LOOK AT THE

02:23PM  23   DOCUMENT 20281 IN YOUR BINDER.

02:23PM  24   A.   YES.

02:23PM  25   Q.   AND 20281 APPEARS TO BE AN EMAIL CHAIN, THE LATTER -- OR

02:24PM   1    THE EARLIER OF WHICH IS MAY 30, 2014 FROM YOURSELF TO

02:24PM   2    DR. ROSENDORFF.

02:24PM   3         DO YOU SEE THAT?

02:24PM   4    A.   YES.

02:24PM   5    Q.   AND THE MESSAGE IS "ATTACHED A TRANSITION REPORT.  HOPE

02:24PM   6    THIS HELPS."

02:24PM   7         DO YOU SEE THAT?

02:24PM   8    A.   I SEE THE EMAIL THAT YOU'RE REFERRING TO.

02:24PM   9    Q.   OKAY.  AND THAT MESSAGE AT THE BOTTOM OF 20281 IS THE SAME

02:24PM  10    "ATTACHED A TRANSITION REPORT.  HOPE THIS HELPS," IN 20279 THAT

02:24PM  11    WE JUST LOOKED AT; CORRECT?

02:24PM  12    A.   I DON'T KNOW.

02:24PM  13    Q.   THE LANGUAGE IS THE SAME, "ATTACHED A TRANSITION REPORT.

02:24PM  14    HOPE THIS HELPS"?

02:24PM  15    A.   I DON'T RECALL.

02:24PM  16    Q.   I'M NOT ASKING IF YOU RECALL.

02:24PM  17         I'M ASKING IF THE TEXT IN 20281 AT THE BOTTOM "ATTACHED A

02:24PM  18    TRANSITION REPORT.  HOPE THIS HELPS.  MARK," IS THE SAME AS

02:24PM  19    WHAT IS REFLECTED IN 20279 ALSO ON MAY 30TH; CORRECT?

02:25PM  20    A.   THE EMAIL THAT SAYS, "ATTACHED A TRANSITION REPORT.  HOPE

02:25PM  21    THIS HELPS," HAS THE SAME TEXT OF THAT WHICH IS ON PAGE 1 OF

02:25PM  22    EXHIBIT 20279.

02:25PM  23    Q.   THANK YOU.

02:25PM  24         CONTINUING WITH 20281, THERE'S A RESPONSE FROM

02:25PM  25    DR. ROSENDORFF TO YOURSELF ON MAY 30TH, 2014.

02:25PM   1            DO YOU SEE THAT?

02:25PM   2       A.   YES.

02:25PM   3       Q.   "MARK, THANKS FOR SENDING THIS" --

02:25PM   4            THE COURT:  EXCUSE ME.  THIS HASN'T BEEN ADMITTED.

02:25PM   5            MR. CAZARES:  UNDERSTOOD.  UNDERSTOOD.

02:25PM   6       Q.   THERE APPEARS TO BE A RESPONSE FROM DR. ROSENDORFF TO

02:25PM   7       YOURSELF; CORRECT?

02:25PM   8       A.   YES.

02:25PM   9       Q.   OKAY.  AND CONTINUING ON THERE'S A MESSAGE AT THE TOP WITH

02:25PM  10       THE FROM LINE CUT OFF TO ADAM ROSENDORFF.

02:25PM  11            "SURE, BY ALL MEANS CONTACT ME ANY TIME, ET CETERA"?

02:25PM  12            MR. BOSTIC:  YOUR HONOR, THIS REMAINS NOT ADMITTED.

02:25PM  13            MR. CAZARES:  UNDERSTOOD.

02:25PM  14            THE COURT:  IT HASN'T BEEN ADMITTED.

02:25PM  15            MR. CAZARES:  YES, YOUR HONOR.

02:25PM  16       Q.   SO THE MESSAGE AT 20281 APPEARS TO BE THE SAME MESSAGE AS

02:25PM  17       IN 20279 WITH RESPONSES FROM DR. ROSENDORFF AND RESPONSES BY

02:26PM  18       YOURSELF TO DR. ROSENDORFF; CORRECT?

02:26PM  19       A.   THEY APPEAR TO BE.

02:26PM  20       Q.   AND USING EMAIL WAS A METHOD OF COMMUNICATION BETWEEN

02:26PM  21       YOURSELF AND DR. ROSENDORFF ON A REGULAR BASIS?

02:26PM  22       A.   YES, WE USED EMAIL ON A REGULAR BASIS.

02:26PM  23       Q.   AND AS YOU STATED BEFORE, THOSE EMAILS WERE MAINTAINED BY

02:26PM  24       THE I.T. OR IN THE -- ON THE SERVERS AT THERANOS; CORRECT?

02:26PM  25       A.   IT'S WHAT MY UNDERSTANDING IS, YES.

```
02:26PM   1              MR. CAZARES:  MOVE TO ADMIT 20281 AND 20279,

02:26PM   2   YOUR HONOR.

02:26PM   3              MR. BOSTIC:  AUTHENTICATION AND HEARSAY.

02:26PM   4        I'LL ALSO POINT OUT THAT DEFENSE EXHIBIT 20281 LACKS A

02:26PM   5   BATES NUMBER, THEREFORE, IT'S NOT COVERED BY OUR STIPULATION.

02:26PM   6              THE COURT:  I THINK THERE'S A -- I'LL SUSTAIN THE

02:26PM   7   OBJECTION AS TO 20279, AUTHENTICATION.

02:27PM   8        I'LL ADMIT THE 20281, AND IT MAY BE PUBLISHED.

02:27PM   9        (DEFENDANT'S EXHIBIT 20281 WAS RECEIVED IN EVIDENCE.)

02:27PM  10              MR. CAZARES:  IF WE CAN PUBLISH 20281.

02:27PM  11   Q.   SO, DR. PANDORI, 20281 ON THE SCREEN, THE MESSAGE IN THE

02:27PM  12   LOWER PORTION DATED MAY 30, 2014.

02:27PM  13        DO YOU SEE THAT?

02:27PM  14   A.   I SEE IT.

02:27PM  15   Q.   AND THERE'S A MESSAGE THAT APPEARS TO BE FROM YOURSELF TO

02:27PM  16   DR. ROSENDORFF; CORRECT?

02:27PM  17   A.   YES.

02:27PM  18   Q.   AND IT SAYS TRANSITION REPORT; CORRECT?

02:27PM  19   A.   YES.

02:27PM  20   Q.   AND THE MESSAGE READS, "ATTACHED A TRANSITION REPORT.

02:27PM  21   HOPE THIS HELPS.

02:27PM  22        "MARK."

02:27PM  23        CORRECT?

02:27PM  24   A.   THAT'S WHAT IT SAYS.

02:27PM  25   Q.   YOUR NAME IS MARK?
```

PANDORI CROSS BY MR. CAZARES

02:27PM 1      A.    MY NAME IS MARK.

02:27PM 2      Q.    AND YOU USED THERANOS EMAIL WHEN YOU WERE EMPLOYED AT

02:27PM 3      THERANOS; CORRECT?

02:27PM 4      A.    CORRECT.

02:27PM 5      Q.    AND THE RESPONSE FROM DR. ROSENDORFF TO YOU RE TRANSITION

02:27PM 6      REPORT, MAY 30, 2014 READS, "MARK,

02:27PM 7           "THANKS FOR SENDING THIS.  I HAVE ONE OR TWO QUESTIONS AS

02:27PM 8      TIME GOES BY.

02:27PM 9           "GOOD LUCK IN YOUR NEW VENTURES AND HOPE TO KEEP IN TOUCH.

02:27PM 10          "ADAM."

02:28PM 11          DO YOU SEE THAT?

02:28PM 12     A.    I SEE THAT.

02:28PM 13     Q.    AGAIN, THAT'S DR. ROSENDORFF, THE CLIA LAB DIRECTOR AT

02:28PM 14     THERANOS; CORRECT?

02:28PM 15     A.    I ONLY KNOW ONE ADAM ROSENDORFF.

02:28PM 16     Q.    OKAY.  THE LAST MESSAGE IN THE CHAIN IS A RESPONSE TO

02:28PM 17     ADAM ROSENDORFF:

02:28PM 18          "SURE, BY ALL MEANS CONTACT ME ANY TIME WITH QUESTIONS.

02:28PM 19          "I'M GOING OVER EVERYONES' TIMECARDS RIGHT NOW."

02:28PM 20          DO YOU SEE THAT?

02:28PM 21     A.    I SEE THAT.

02:28PM 22     Q.    AND YOU SENT A TRANSITION REPORT TO DR. ROSENDORFF ON

02:28PM 23     MAY 30, 2014 AS REFLECTED IN EXHIBIT 20281; CORRECT?

02:28PM 24     A.    NO, I DON'T RECALL DOING SO.

02:28PM 25     Q.    I'M NOT ASKING IF YOU RECALL IT.  I'M ASKING, YOU SENT A

02:28PM  1    TRANSITION REPORT TO DR. ROSENDORFF ON MAY 30, 2014; CORRECT?

02:28PM  2              MR. BOSTIC:  ASKED AND ANSWERED.

02:28PM  3              THE COURT:  SUSTAINED.

02:29PM  4         (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

02:29PM  5              MR. CAZARES:  YOUR HONOR, I'VE BEEN REMINDED TO

02:29PM  6    RAISE AN ISSUE REGARDING 20279, AND THE ISSUE RAISED IS THAT IT

02:29PM  7    IS AN EMAIL WITH A BATES RANGE COVERED BY THE STIPULATION OF

02:29PM  8    THE PARTIES.

02:29PM  9              MR. BOSTIC:  YOUR HONOR, UNDER THE LANGUAGE OF THAT

02:29PM 10    STIPULATION, THE AUTHENTICATION APPLIES TO THE EMAIL ONLY, NOT

02:29PM 11    TO ANY ATTACHMENTS BEING WHAT THEY APPEAR TO BE, AND THE

02:30PM 12    STIPULATION ALSO, I THINK, SAYS THAT THE EMAILS REFLECT EMAILS

02:30PM 13    SENT TO AND FROM THE INDICATED ADDRESSES.

02:30PM 14         THIS DOCUMENT DOESN'T HAVE AN INDICATED FROM ADDRESS.

02:30PM 15              MR. CAZARES:  YOUR HONOR, THE EMAIL HAS CLEARLY

02:30PM 16    DR. ROSENDORFF'S EMAIL ADDRESS, IT CONTAINS THE BATES RANGE

02:30PM 17    STIPULATION OF THE PARTIES, AND IT'S AN EMAIL THAT IS THE

02:30PM 18    SUBJECT TO THE STIPULATION.

02:30PM 19              THE COURT:  WHO IS IT FROM?

02:30PM 20              MR. CAZARES:  THERE'S AT LEAST ONE PARTY WITHIN THE

02:30PM 21    THERANOS EMAIL SYSTEM, AND DR. ROSENDORFF -- AND DR. PANDORI

02:30PM 22    HAS ACKNOWLEDGED ON THE OTHER EXHIBIT HIS EXCHANGE WITH

02:30PM 23    DR. ROSENDORFF ON THAT SAME DAY IN A FOLLOW-ON MESSAGE.

02:30PM 24         THE RECORD SEEMS TO CLEARLY INDICATE AUTHENTICATION BASED

02:30PM 25    ON THIS CHAIN OF EVENTS WITH THE SUBSEQUENT DOCUMENT 20281.

| | | |
|---|---|---|
| 02:30PM | 1 | THE COURT:  YOU KNOW, WE'LL HAVE THIS DISCUSSION |
| 02:30PM | 2 | LATER.  I SUGGEST YOU REFERENCE THE TIME OF THE EMAIL AS WELL |
| 02:30PM | 3 | AND THE LACK OF THE SENDER. |
| 02:31PM | 4 | SO I THINK THERE'S AN AUTHENTICATION ISSUE, SO I'LL |
| 02:31PM | 5 | SUSTAIN THE OBJECTION FOR NOW. |
| 02:31PM | 6 | MR. CAZARES:  YES, YOUR HONOR. |
| 02:31PM | 7 | (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.) |
| 02:31PM | 8 | BY MR. CAZARES: |
| 02:31PM | 9 | Q.  SO, DR. ROSENDORFF, GETTING BACK TO EXHIBIT 20279 -- |
| 02:31PM | 10 | THE COURT:  IT'S DR. PANDORI. |
| 02:31PM | 11 | MR. CAZARES:  I HAVE DR. ROSENDORFF ON THE BRAIN, |
| 02:31PM | 12 | YOUR HONOR. |
| 02:31PM | 13 | THE COURT:  HE'LL BE HERE SOON. |
| 02:31PM | 14 | (LAUGHTER.) |
| 02:31PM | 15 | BY MR. CAZARES: |
| 02:31PM | 16 | Q.  DR. PANDORI, 20279, THE EMAIL FROM -- THAT HAS NO SENDER |
| 02:31PM | 17 | ADDRESSED TO DR. ROSENDORFF. |
| 02:31PM | 18 | DO YOU SEE THAT? |
| 02:31PM | 19 | A.  I SEE IT. |
| 02:32PM | 20 | Q.  AND IT'S YOUR SWORN TESTIMONY TODAY THAT YOU DID NOT WRITE |
| 02:32PM | 21 | THE ATTACHMENT TO DR. ROSENDORFF REFLECTED IN EXHIBIT 20279; IS |
| 02:32PM | 22 | THAT YOUR TESTIMONY? |
| 02:32PM | 23 | A.  I DON'T -- I HAVE TO REVIEW THIS DOCUMENT.  I DON'T RECALL |
| 02:32PM | 24 | AUTHORING IT. |
| 02:32PM | 25 | Q.  AND IS IT YOUR TESTIMONY THEN THAT YOU DID NOT WRITE IT? |

02:32PM   1                MR. BOSTIC:  ASKED AND ANSWERED.

02:32PM   2                THE COURT:  SUSTAINED.

02:32PM   3       BY MR. CAZARES:

02:32PM   4       Q.   AND IS IT YOUR TESTIMONY TODAY THAT YOU'VE NEVER SEEN IT

02:32PM   5       BEFORE?

02:32PM   6       A.   I'M LOOKING AT THIS DOCUMENT, AND I HAVE NO RECOLLECTION

02:32PM   7       OF IT.

02:32PM   8       Q.   SO YOU MAY HAVE BOTH WRITTEN IT AND SEEN IT BEFORE?

02:32PM   9            DO YOU AGREE?

02:32PM  10       A.   IT'S POSSIBLE.

02:32PM  11       Q.   OKAY.  YOU CAN SET THAT ASIDE.

02:33PM  12            IF YOU CAN TAKE A LOOK AT EXHIBIT 20454.

02:33PM  13       A.   OKAY.  I'M THERE.

02:33PM  14       Q.   THE FIRST PAGE OF 20254 LOOKS TO BE A JANUARY 29, 2014

02:33PM  15       EMAIL, APPEARS TO BE FROM YOURSELF TO MR. BALWANI?

02:33PM  16                THE COURT:  I'M SORRY, THIS IS 2045 --

02:33PM  17                MR. CAZARES:  20254.

02:34PM  18                THE COURT:  202.

02:34PM  19                MR. CAZARES:  20254.

02:34PM  20                THE COURT:  DO YOU HAVE THAT EXHIBIT IN FRONT OF

02:34PM  21       YOU, DR. PANDORI?

02:34PM  22                THE WITNESS:  YES.

02:34PM  23                THE COURT:  OKAY.

02:34PM  24                THE WITNESS:  20254.  20254?  OH, WAIT.  20254

02:34PM  25       YOU'RE SAYING?

02:34PM  1              MR. CAZARES:  YES, 20254.  IT'S IN VOLUME 2.

02:34PM  2              THE COURT:  ARE YOU SURE IT'S NOT 20454?

02:34PM  3              MR. CAZARES:  NO, 20254.

02:34PM  4              THE WITNESS:  I DON'T HAVE THAT.

02:35PM  5          (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

02:35PM  6              MR. CAZARES:  AGAIN, MY BAD.

02:35PM  7      Q.   IT'S AT THE END OF VOLUME 1, 20254.

02:35PM  8              MR. COOPERSMITH:  ASK FOR A SIDE-BAR.

02:35PM  9      BY MR. CAZARES:

02:35PM  10     Q.   DO YOU HAVE 20254?

02:35PM  11     A.   YES.

02:35PM  12     Q.   AGAIN, IT APPEARS TO BE AN EMAIL JANUARY 29, 2014?

02:35PM  13     A.   YES.

02:35PM  14     Q.   AND THE MESSAGE CHAIN APPEARS TO BE BETWEEN YOURSELF AND

02:35PM  15     MR. BALWANI?

02:35PM  16     A.   IT DOES.

02:35PM  17              MR. CAZARES:  MOVE TO ADMIT 20254, YOUR HONOR.

02:35PM  18              MR. BOSTIC:  HEARSAY.

02:35PM  19     BY MR. CAZARES:

02:35PM  20     Q.   AND MR. PANDORI -- DR. PANDORI, YOU, AGAIN, REGULARLY USE

02:36PM  21     EMAIL TO COMMUNICATE WITHIN THE CLINICAL LAB AND WITH

02:36PM  22     MANAGEMENT WITHIN THERANOS?

02:36PM  23     A.   YES.

02:36PM  24     Q.   AND INCLUDING MR. BALWANI?

02:36PM  25     A.   YES.

02:36PM  1    Q.   REGARDING ISSUES IN THE CLINICAL LAB?

02:36PM  2    A.   YES.

02:36PM  3    Q.   AND THOSE WERE MAINTAINED AT THERANOS AS FAR AS YOU KNOW

02:36PM  4    AS FAR AS YOU'VE TESTIFIED TODAY?

02:36PM  5    A.   YES.

02:36PM  6         MR. CAZARES:  MOVE TO ADMIT, YOUR HONOR, BOTH AS A

02:36PM  7    BUSINESS RECORD AND STATE OF MIND OF MR. BALWANI.

02:36PM  8         MR. BOSTIC:  YOUR HONOR, SAME OBJECTIONS.

02:36PM  9         THE COURT:  STATE OF MIND OF MR. BALWANI?

02:36PM 10         MR. CAZARES:  BUSINESS RECORD AND STATE OF MIND.

02:36PM 11      (PAUSE IN PROCEEDINGS.)

02:36PM 12         THE COURT:  SO ARE YOU OFFERING THIS FOR THE TRUTH

02:36PM 13    OF THE MATTER ASSERTED OR SOLELY FOR THE ISSUE OF THE STATE OF

02:36PM 14    MIND OF YOUR CLIENT?

02:37PM 15         MR. CAZARES:  MY FIRST EXCEPTION IS THAT IT IS A

02:37PM 16    BUSINESS RECORD, YOUR HONOR, AND THE BACKUP IS STATE OF MIND.

02:37PM 17    IT RELATES TO CLINICAL LAB ISSUES.

02:37PM 18         THE COURT:  ALL RIGHT.  I'LL ADMIT THIS UNDER

02:37PM 19    803(6).

02:37PM 20         MR. CAZARES:  THANK YOU, YOUR HONOR.

02:37PM 21         THE COURT:  AND IT MAY BE PUBLISHED.

02:37PM 22      (DEFENDANT'S EXHIBIT 20254 WAS RECEIVED IN EVIDENCE.)

02:37PM 23    BY MR. CAZARES:

02:37PM 24    Q.   AND, DR. PANDORI, TURNING TO THE BOTTOM OF THE PAGE ON

02:37PM 25    20254.

PANDORI CROSS BY MR. CAZARES

02:37PM  1    A.   YES.

02:37PM  2    Q.   THERE'S A MESSAGE JANUARY 29TH, 2014 FROM MR. BALWANI TO

02:37PM  3    YOU?

02:37PM  4    A.   OKAY.

02:37PM  5    Q.   AND THE MESSAGE FROM MR. BALWANI SAYS, "CAN YOU PLEASE

02:37PM  6    REVIEW ALL SOP'S AND PROCESS IN LIGHT OF OUR DISCUSSION FROM

02:37PM  7    YESTERDAY AND THIS ISSUE WITH THE RESULTS AND 27-HOUR

02:37PM  8    TURN-AROUND TIME -- TO SEE WHAT WE CAN DO TO CREATE A PERFECT

02:37PM  9    EXPERIENCE AND PROCESSES AND RESPONSIBILITIES."

02:37PM  10        DO YOU SEE THAT?

02:37PM  11   A.   YES.

02:37PM  12   Q.   AND BELOW THAT MR. BALWANI WRITES, "I WOULD LIKE THE

02:37PM  13   PRODUCT MANAGEMENT TEAM 100 PERCENT OUT OF ANY CLIA MATTERS

02:38PM  14   ASAP -- EXCEPT FOR DEMOS."

02:38PM  15        DO YOU SEE THAT?

02:38PM  16   A.   YES.

02:38PM  17   Q.   AND THE PRODUCT MANAGEMENT TEAM, OR PM'S, ARE SOME OF THE

02:38PM  18   NON-SCIENTIFIC PEOPLE AT THERANOS THAT YOU'VE MENTIONED BEFORE

02:38PM  19   IN YOUR TESTIMONY; CORRECT?

02:38PM  20   A.   CORRECT.

02:38PM  21   Q.   AND MR. BALWANI IS TELLING YOU THAT HE WOULD LIKE THEM OUT

02:38PM  22   OF CLIA MATTERS ASAP.

02:38PM  23        DO YOU SEE THAT?

02:38PM  24   A.   I SEE THAT.

02:38PM  25   Q.   AND IN RESPONSE YOU WRITE TO MR. BALWANI, "I WILL BEGIN."

02:38PM   1            DO YOU SEE THAT?

02:38PM   2    A.   YES.

02:38PM   3    Q.   AND YOU AGREED WITH THAT, THE PROJECT MANAGER SHOULD BE

02:38PM   4    OUT OF CLIA MATTERS; CORRECT?

02:38PM   5    A.   I AGREE.

02:38PM   6    Q.   AND THEN MR. BALWANI RESPONDS TO YOU THAT, "WE NEED TO

02:38PM   7    CREATE A CULTURE OF RESPONSIBILITY AND OWNERSHIP IN CLIA AND

02:38PM   8    UNTIL THE PM TEAM IS INVOLVED IN BABYSITTING SAMPLES AND

02:38PM   9    PROCESSES, THIS WON'T HAPPEN.  THEY CAN HELP WHEN AND WHERE

02:38PM  10    NEEDED AND ASKED BY YOU.  BUT THIS SHOULD BE A PROCESS DECISION

02:39PM  11    YOU SHOULD MAKE.  THANKS."

02:39PM  12            DO YOU SEE THAT?

02:39PM  13    A.   YES.

02:39PM  14    Q.   AND SO MR. BALWANI IS ASKING YOU TO TAKE CHARGE AND KEEP

02:39PM  15    THE PM TEAM OUT OF CLIA MATTERS; CORRECT?

02:39PM  16    A.   I THINK HE WANTED -- I THINK IT MIGHT BE A LITTLE

02:39PM  17    DIFFERENT.

02:39PM  18    Q.   WELL, WHAT HE WROTE WAS, "WE NEED TO CREATE A CULTURE OF

02:39PM  19    RESPONSIBILITY AND OWNERSHIP AND UNTIL THE PM TEAM IS INVOLVED

02:39PM  20    BABYSITTING SAMPLES AND PROCESSES, THIS WON'T HAPPEN."

02:39PM  21            DO YOU SEE THAT PART?

02:39PM  22    A.   YES, BUT I DON'T UNDERSTAND THAT SENTENCE.

02:39PM  23    Q.   OKAY.  "THEY CAN HELP WHEN AND WHERE NEEDED AND ASKED BY

02:39PM  24    YOU."

02:39PM  25            DO YOU SEE THAT?

02:39PM   1    A.   YES.

02:39PM   2    Q.   AND SO HE'S SAYING THAT THEIR INVOLVEMENT SHOULD ONLY COME

02:39PM   3    AT YOUR REQUEST; CORRECT?

02:39PM   4    A.   THEIR HELP?

02:39PM   5    Q.   BEING THE PM'S, PRODUCT MANAGEMENT TEAM?

02:39PM   6    A.   THEIR HELP, YES.

02:39PM   7    Q.   OKAY.  AND MR. BALWANI FURTHER STATED, "BUT THIS SHOULD BE

02:39PM   8    A PROCESS DECISION YOU SHOULD MAKE."

02:40PM   9         DO YOU SEE THAT?

02:40PM  10    A.   IT SAYS THAT.

02:40PM  11    Q.   SO HE'S LEAVING IT TO YOU REGARDING THE INVOLVEMENT OF

02:40PM  12    PRODUCT MANAGEMENT TEAM IN THE CLIA LAB PER THIS EMAIL;

02:40PM  13    CORRECT?

02:40PM  14    A.   THAT'S WHAT IT SAYS.

02:40PM  15              MR. CAZARES:  YOUR HONOR, WE WOULD REQUEST A

02:40PM  16    SIDE-BAR ON AN ISSUE THAT WE THINK IS IMPORTANT.

02:40PM  17              THE COURT:  AT THIS TIME?

02:40PM  18              MR. CAZARES:  YES, YOUR HONOR.

02:40PM  19              THE COURT:  IS IT SOMETHING THAT YOU -- YOU HAVE

02:40PM  20    20 MINUTES LEFT.

02:40PM  21              MR. CAZARES:  I THINK IT'S SOMETHING THAT WE NEED TO

02:40PM  22    ADDRESS, YOUR HONOR.

02:40PM  23              THE COURT:  OKAY.  ALL RIGHT.  WE'LL TAKE A

02:40PM  24    SIDE-BAR.

02:40PM  25              LADIES AND GENTLEMEN, I'M GOING TO SPEAK WITH COUNSEL IN

02:40PM  1    THE BACK HERE, SO WE'LL LEAVE YOU HERE, PLEASE.

02:40PM  2         DO NOT DISCUSS THIS CASE IN ANY WAY AMONGST YOURSELVES.

02:40PM  3         YOU CAN STAND AND STRETCH.  YOU CAN'T LEAVE THE COURTROOM,

02:40PM  4    BUT YOU CAN STAND AND STRETCH, AND I'LL BE BACK IN JUST A

02:40PM  5    MOMENT.

02:40PM  6         IS THERE AN EXHIBIT I SHOULD TAKE WITH ME?

02:40PM  7              MR. CAZARES:  NO, YOUR HONOR.

02:40PM  8              THE COURT:  OKAY.

02:40PM  9         (SIDE-BAR CONFERENCE ON THE RECORD.)

02:44PM  10             THE COURT:  THANK YOU.  WE'RE AT SIDE-BAR, WHICH IS

02:44PM  11   IN THE JURY ROOM OUTSIDE OF THE PRESENCE OF THE JURY.  COUNSEL

02:44PM  12   ARE PRESENT.

02:44PM  13        YOU WANTED TO DISCUSS SOMETHING?

02:44PM  14             MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU FOR

02:44PM  15   THE COURT'S INDULGENCE.  I KNOW IT'S ALMOST THE END OF THE DAY.

02:44PM  16   WE REALLY DO APPRECIATE IT.

02:44PM  17        EXHIBIT 2079 AND THE ATTACHMENT --

02:44PM  18             MR. CAZARES:  202.

02:44PM  19             MR. COOPERSMITH:  20279 IS A CRUCIAL EXHIBIT.

02:44PM  20        IT'S MR. PANDORI'S EXIT MEMO, AND WE JUST WANT TO SHOW YOU

02:44PM  21   WHY IT'S ADMISSIBLE, AND IT'S HARD TO DO IT IN FRONT OF THE

02:44PM  22   JURY.  AND WE WOULDN'T BE DOING IT IF IT WASN'T AS IMPORTANT AS

02:44PM  23   IT IS IN TERMS OF GETTING THE TRUTH OUT HERE.

02:44PM  24             THE COURT:  I'M SORRY, WHAT DID YOU SAY?

02:44PM  25             MR. COOPERSMITH:  IN TERMS OF WHAT OUR VIEW OF THE

02:44PM  1    CASE IS.

02:44PM  2              MR. SCHENK:  YOUR HONOR, I'M SORRY TO INTERRUPT YOU.

02:44PM  3         JUST TWO QUICK THINGS.  THE COURT ASKED IF THE SIDE-BAR

02:44PM  4    WOULD INVOLVE AN EXHIBIT.  I THOUGHT THE ANSWER WAS NO, SO WE

02:44PM  5    DIDN'T BRING ANY EXHIBITS WITH US.

02:44PM  6              THE COURT:  NOR DID I.

02:44PM  7              MR. SCHENK:  THAT'S THE FIRST POINT.

02:44PM  8         THE SECOND IS WHY CAN'T WE DO 20 MORE MINUTES OR 30 MORE

02:44PM  9    MINUTES OF QUESTIONS AND TAKE THIS UP AT THE END OF THE DAY OR

02:44PM  10   MONDAY MORNING.  IS NOW REALLY THE RIGHT TIME?

02:44PM  11             MR. COOPERSMITH:  I THINK SO.  THE REASON I'M IN

02:44PM  12   HERE IS THAT I DO NOT THINK MR. BOSTIC, AND I'M NOT ACCUSING

02:44PM  13   ANYBODY OF ANYTHING, BUT THE STIPULATION DOES NOT SAY WHAT

02:44PM  14   MR. BOSTIC SAYS IT SAYS.

02:44PM  15             THE COURT:  CAN I JUST STOP YOU.  WE'RE -- IT'S

02:44PM  16   17 MINUTES TO 3:00.  OUR DISCUSSION IS GOING TO TAKE MORE THAN

02:44PM  17   17 MINUTES, I'M CONFIDENT OF THAT, JUST BASED ON WHERE WE ARE

02:44PM  18   GOING HERE.

02:44PM  19        I'D LIKE TO MOVE AND DO AS MUCH AS YOU CAN WITH YOUR

02:44PM  20   EXAMINATION.  MY SENSE IS THAT YOU HAVE 17 MINUTES WORTH OF

02:44PM  21   QUESTIONS THAT DON'T NECESSARILY NEED TO --

02:44PM  22             MR. COOPERSMITH:  WELL, YOU KNOW, MY UNDERSTANDING

02:44PM  23   IS THAT WE WOULD PREFER TO END WITH THIS TOPIC, AND WE DON'T

02:44PM  24   NEED TO GO INTO OTHER THINGS.

02:44PM  25        WE COULD, BUT WE DON'T JUST WANT TO DO THAT FOR THE SAKE

02:44PM 1    OF DOING IT.

02:44PM 2            THE COURT:  WELL, THEN LET'S END OUR DAY NOW, AND

02:44PM 3    THEN WE'LL HAVE THE DISCUSSION, AND THEN YOU CAN RAISE IT.

02:44PM 4            MR. COOPERSMITH:  OKAY.  I THINK THAT WOULD BE FINE.

02:44PM 5        (END OF DISCUSSION AT SIDE-BAR.)

02:44PM 6            THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

02:44PM 7    THE RECORD.  ALL COUNSEL ARE PRESENT.

02:44PM 8        DR. PANDORI IS PRESENT.

02:44PM 9        LADIES AND GENTLEMEN, WE NEED TO END THE DAY TODAY.  I

02:44PM 10   NEED TO TALK TO THESE LAWYERS A LITTLE BIT, AND IT'S GOING TO

02:44PM 11   EXHAUST THE TIME THAT IS LEFT, WHICH IS ABOUT 15 MINUTES TO

02:44PM 12   3:00.

02:44PM 13       COUNSEL HAS TOLD ME THAT WE NEED TO DISCUSS THIS BEFORE WE

02:44PM 14   MOVE ON TO ANY OTHER QUESTIONS.

02:44PM 15       SO LET ME JUST ASK ABOUT THE WITNESS'S AVAILABILITY

02:44PM 16   TUESDAY.

02:44PM 17       DO WE NEED TO MAKE ANY ADJUSTMENTS ABOUT THAT?

02:44PM 18           MR. BOSTIC:  YOUR HONOR, I WOULD DEFER TO

02:45PM 19   DR. PANDORI ON THAT, BUT I UNDERSTAND THAT HE DOES HAVE A

02:45PM 20   SCHEDULING CONFLICT ON THAT.

02:45PM 21           THE COURT:  DR. PANDORI, ARE YOU AVAILABLE TUESDAY

02:45PM 22   TO RETURN?

02:45PM 23           THE WITNESS:  I'M SCHEDULED TO PARTICIPATE IN A CLIA

02:45PM 24   INSPECTION FOR THE ALAMEDA COUNTY DEPARTMENT OF PUBLIC HEALTH

02:45PM 25   LAB ON THE 5TH OF APRIL, TUESDAY.

02:45PM  1           THE COURT:  OKAY.  WILL THAT TAKE UP THE ENTIRETY OF

02:45PM  2      YOUR DAY?

02:45PM  3           THE WITNESS:  IT'S IN OAKLAND, AND IT WILL TAKE UP

02:45PM  4      APPROXIMATELY FOUR AND A HALF TO FIVE HOURS.

02:45PM  5           THE COURT:  SURE.  OKAY.  ALL RIGHT.

02:45PM  6         SO WE'LL TAKE OUR RECESS NOW, LADIES AND GENTLEMEN.  I'M

02:45PM  7      GOING TO TALK WITH THE LAWYERS, AND WE'LL WORK OUT WHAT WE NEED

02:45PM  8      TO DO.

02:45PM  9         WE WILL INFORM YOU ABOUT ANY SCHEDULE CHANGES THAT OCCUR

02:45PM 10      OR THAT WILL OCCUR.

02:45PM 11         WE'RE SCHEDULED TO MEET NEXT WEEK TUESDAY AND WEDNESDAY

02:45PM 12      AND SO WE WILL -- MY ANTICIPATION IS WE WILL BE MEETING THEN

02:46PM 13      AND YOU'LL COME BACK ON THAT DATE, BUT WE'LL INFORM YOU AS TO

02:46PM 14      ANY CHANGES IN THAT SCHEDULE.

02:46PM 15         I DON'T KNOW IF ANY OF YOU HAVE ASKED OR LOOKED TO SEE

02:46PM 16      WHETHER OR NOT NEXT WEEK YOU CAN EXTEND YOUR TIME WITH US UNTIL

02:46PM 17      4:00 O'CLOCK IN THE AFTERNOON.  IF THAT'S POSSIBLE, I WOULD ASK

02:46PM 18      US TO DO THAT.

02:46PM 19         IF IT'S NOT, I COMPLETELY UNDERSTAND, AND YOU CAN REPORT

02:46PM 20      TO ME NEXT WEEK ON THAT AS WELL.

02:46PM 21         BEFORE WE BREAK, LET ME GIVE YOU THE ADMONISHMENT AGAIN.

02:46PM 22          PLEASE, DURING OUR BREAK, DO NOT READ, DO ANY INDEPENDENT

02:46PM 23      RESEARCH, HAVE CAUSE TO TALK TO ANYONE, LISTEN, OR DO ANY

02:46PM 24      INDEPENDENT RESEARCH ABOUT THIS CASE, ANYONE INVOLVED WITH IT

02:46PM 25      OR ANYTHING TO DO WITH THIS CASE.

1883

02:46PM   1           HAVE A GREAT WEEKEND.  WE'LL SEE YOU NEXT WEEK.  THANK

02:46PM   2    YOU.

02:46PM   3           (JURY OUT AT 2:46 P.M.)

02:47PM   4               THE COURT:  THANK YOU.  PLEASE BE SEATED.

02:47PM   5           DR. PANDORI, CAN YOU STEP OUTSIDE JUST BEFORE YOU LEAVE

02:47PM   6    FOR THE DAY, PLEASE?

02:47PM   7               THE WITNESS:  OF COURSE.

02:47PM   8               THE COURT:  THANK YOU.

02:47PM   9           (JURY OUT AT 2:47 P.M.)

02:47PM  10           (DR. PANDORI NOT PRESENT.)

02:47PM  11               THE COURT:  THE RECORD SHOULD REFLECT THAT THE JURY

02:47PM  12    HAS LEFT FOR THE WEEKEND, AND DR. PANDORI HAS LEFT THE

02:47PM  13    COURTROOM.

02:47PM  14           FIRST, LET'S TALK ABOUT DR. PANDORI'S AVAILABILITY NEXT

02:47PM  15    WEEK.  HE HAS TO BE AT HIS LAB, IT SOUNDS LIKE, FOR A CLIA

02:48PM  16    INSPECTION.

02:48PM  17           DOES THE GOVERNMENT HAVE A THOUGHT ABOUT WHAT WE WOULD DO

02:48PM  18    IF THE COURT WERE TO ALLOW HIM TO PARTICIPATE IN HIS JOB

02:48PM  19    FUNCTION?

02:48PM  20               MR. BOSTIC:  YES, YOUR HONOR.

02:48PM  21           OUR SUGGESTION WOULD BE TO CAPITALIZE ON THE DAY WHEN THE

02:48PM  22    JURY IS AVAILABLE TO PUT ANOTHER WITNESS ON THE STAND AND TAKE

02:48PM  23    WITNESSES OUT OF ORDER.

02:48PM  24           I BELIEVE WE HAD A WITNESS IDENTIFIED WHO WE CAN COMPLETE

02:48PM  25    THE DIRECT AND CROSS OF WITHIN THE DAY ON TUESDAY, AND THEN WE

02:48PM   1    COULD RESUME WITH DR. PANDORI ON WEDNESDAY WHEN HE BECOMES

02:48PM   2    AVAILABLE AGAIN.

02:48PM   3            THE COURT:  OKAY.  ALL RIGHT.

02:48PM   4        MR. COOPERSMITH.

02:48PM   5            MR. COOPERSMITH:  YES, YOUR HONOR.

02:48PM   6        YOU KNOW, WE DON'T WANT TO DISRUPT -- SORRY --

02:48PM   7    DR. PANDORI'S SCHEDULE, AND I THINK WE CAN TAKE HIM OUT OF

02:48PM   8    ORDER, AND HE'LL COME BACK WHEN HE'S ABLE TO COME BACK.

02:48PM   9            THE COURT:  OKAY.  THANK YOU.

02:48PM  10        THEN WHY DON'T WE -- SHOULD WE TELL HIM THAT HE SHOULD

02:48PM  11    COME BACK ON WEDNESDAY AT 9:00 A.M. THEN?

02:48PM  12            MR. COOPERSMITH:  THAT SUITS THE DEFENSE,

02:48PM  13    YOUR HONOR.

02:49PM  14            THE COURT:  DOES THAT WORK?

02:49PM  15            MR. BOSTIC:  YES, YOUR HONOR.

02:49PM  16            THE COURT:  CAN SOMEONE ASK HIM TO COME IN?  WE'LL

02:49PM  17    LET HIM LEAVE NOW.

02:50PM  18        (PAUSE IN PROCEEDINGS.)

02:50PM  19        (DR. PANDORI PRESENT.)

02:50PM  20            THE COURT:  DR. PANDORI, GOOD AFTERNOON.

02:50PM  21        SIR, I UNDERSTAND YOU HAVE THIS LAB COMMITMENT ON TUESDAY.

02:50PM  22    I'VE TALKED WITH THE LAWYERS, AND THEY HAVE AGREED TO ALLOW

02:50PM  23    YOU, AND I'LL CERTAINLY PERMIT YOU, TO NOT TO HAVE TO COME BACK

02:50PM  24    ON TUESDAY, BUT IF YOU COULD COME BACK ON WEDNESDAY AT

02:51PM  25    9:00 A.M.  BE AVAILABLE FOR TESTIMONY ON WEDNESDAY AT 9:00 A.M.

02:51PM 1          WILL THAT WORK FOR YOU, SIR?

02:51PM 2              THE WITNESS:  YES.

02:51PM 3              THE COURT:  ALL RIGHT.  IF YOU'LL COME BACK ON

02:51PM 4      WEDNESDAY, WEDNESDAY NEXT AT 9:00 A.M., WE'LL CONTINUE WITH

02:51PM 5      YOUR EXAMINATION.

02:51PM 6              THE WITNESS:  THANK YOU.

02:51PM 7              THE COURT:  YOU'RE WELCOME.

02:51PM 8          ALL RIGHT.  THE RECORD SHOULD REFLECT --

02:51PM 9              THE WITNESS:  SORRY.

02:51PM 10             THE COURT:  YOU CAN GO.  YOU CAN GO, DR. PANDORI.

02:51PM 11     THAT'S FINE.

02:51PM 12         THE RECORD SHOULD REFLECT THAT DR. PANDORI HAS LEFT THE

02:51PM 13     COURTROOM.  THE JURY HAS GONE FOR THE WEEKEND.

02:51PM 14         WE HAD A SIDE-BAR DISCUSSION AT COUNSEL'S REQUEST, BUT THE

02:51PM 15     REQUEST WAS TO TALK ABOUT SOMETHING.  I ASKED WHETHER I SHOULD

02:51PM 16     BRING DOCUMENTS BACK.  I WAS TOLD NO.  WE STARTED THAT

02:51PM 17     CONVERSATION, AND APPARENTLY IT WAS ABOUT 20281, I THINK.

02:52PM 18         I THINK, MR. COOPERSMITH, YOU SUGGESTED THAT IT WAS

02:52PM 19     IMPORTANT THAT WE DISCUSS THIS WITH 17 MINUTES BEFORE WE CLOSE

02:52PM 20     BECAUSE YOU WANTED TO END THE DAY -- YOU WANTED TO CURATE YOUR

02:52PM 21     DEFENSE IN A WAY THAT THE JURY WAS LEFT WITH THIS

02:52PM 22     DOCUMENT/EXAMINATION FRESH IN THEIR MINDS.

02:52PM 23             MR. COOPERSMITH:  I THINK THAT'S FAIR, YOUR HONOR.

02:52PM 24         AND WE DO APPRECIATE THE COURT'S INDULGENCE ON THE

02:52PM 25     SIDE-BAR.  AND IF THERE WAS A MISUNDERSTANDING WITH THE

1886

02:52PM  1    DOCUMENTS, I DO APOLOGIZE, BUT WE DID WANT TO CLEAR THIS UP,

02:52PM  2    AND PERHAPS WE CAN DO THAT RIGHT NOW WITH THE FEW MINUTES WE

02:52PM  3    HAVE UNTIL 3:00.

02:52PM  4           THE COURT:  SURE.

02:52PM  5       SO WHAT WOULD YOU LIKE ME TO KNOW?

02:52PM  6           MR. COOPERSMITH:  WELL, IF I COULD APPROACH,

02:52PM  7    YOUR HONOR, AND HAND YOU THE STIPULATION THAT IS AT ISSUE.

02:52PM  8        IT IS HARD TO TYPE WHILE YOU'RE ALSO HANDING THINGS UP.

02:53PM  9           THE COURT:  OKAY.  YOU'VE HANDED ME A DOCUMENT THAT

02:53PM  10   LOOKS LIKE IT'S FOUR PAGES.  IT'S TITLED STIPULATION REGARDING

02:53PM  11   CERTAIN EXHIBITS.

02:53PM  12          MR. COOPERSMITH:  YES, YOUR HONOR.

02:53PM  13       THIS IS A STIPULATION THAT THE PARTIES REACHED BEFORE

02:53PM  14   TRIAL, AND IT WAS FILED WITH THE COURT.

02:53PM  15       AND THE APPLICABLE PARAGRAPH IS, IF YOU TURN TO THE PAGE

02:53PM  16   AFTER THE COVER PAGE, IT'S LABELLED PAGE 1, IT'S PARAGRAPH

02:53PM  17   NUMBER 2.

02:53PM  18       I'M LOOKING AT THAT PARAGRAPH IN REFERENCE TO THE EXHIBIT.

02:53PM  19   IT MIGHT BE GOOD TO HAVE IT IN FRONT OF YOU, AND IT'S THAT

02:53PM  20   EXHIBIT 20279.  IT'S THE EXHIBIT THAT WAS ON THE TOP, THE EMAIL

02:53PM  21   FROM DR. PANDORI TO DR. ROSENDORFF ON MAY 30TH, 2014.  THERE'S

02:53PM  22   A BATES NUMBER AT THE VERY BOTTOM CORNER.

02:53PM  23       I'LL JUST NOTE TO START THAT THE BATES NUMBER IS A THPFM

02:54PM  24   BATES DOCUMENT.  SO THAT'S ONE OF THE BATES NUMBER ON THE

02:54PM  25   DOCUMENT.

02:54PM   1          IF YOU LOOK AT PARAGRAPH 2, THAT IS THE TYPE OF SERIES

02:54PM   2     AMONG THE DIFFERENT BATES NUMBER SERIES THAT IS STIPULATED TO

02:54PM   3     AS AUTHENTIC.

02:54PM   4          THE OTHER THING I WANTED TO POINT OUT, YOUR HONOR, AND I'M

02:54PM   5     NOT CASTING ANY ASPERSIONS ON THE GOVERNMENT, AND WE'RE IN THE

02:54PM   6     MIDDLE OF THE TRIAL AND THEY CAN'T HAVE THE STIPULATION IN

02:54PM   7     FRONT OF THEM NECESSARILY, BUT WHAT IT ACTUALLY SAYS IS,

02:54PM   8     "EMAILS TO OR FROM EMAIL ADDRESSES WITH THE DOMAIN THERANOS,

02:54PM   9     DOMAIN @THERANOS.COM THAT WAS SENT OR RECEIVED."

02:54PM  10          AND IF YOU LOOK AT THE EMAIL THAT IS AT ISSUE,

02:54PM  11     EXHIBIT 20279, EXHIBIT 20279, THAT IS THE EMAIL WITH THE

02:54PM  12     CORRECT BATES NUMBER THAT IS LISTED IN THE STIPULATION, AND IT

02:54PM  13     IS AN EMAIL IN FACT TO DR. ROSENDORFF AT THAT EXACT SAME

02:55PM  14     DOMAIN, AROSENDORFF@THERANOS.COM.

02:55PM  15          SO IT IS TRUE THAT THERE'S NO EMAIL IDENTIFIED IN THE FROM

02:55PM  16     FIELD, DR. PANDORI, BUT THE STIPULATION DOESN'T REQUIRE THAT

02:55PM  17     BECAUSE OF THE DISJUNCTIVE IN BOTH SECTIONS OR, TO OR FROM,

02:55PM  18     SENT OR RECEIVED.

02:55PM  19          SO WE THINK THIS 100 PERCENT CLEARLY FALLS WITHIN THE

02:55PM  20     STIPULATION AS AUTHENTIC.  THAT WAS THE OBJECTION.

02:55PM  21          AND THEN I WOULD ALSO NOTE, YOUR HONOR, TO GO A LITTLE

02:55PM  22     FURTHER, THAT DOESN'T NECESSARILY INCLUDE THE ATTACHMENT.

02:55PM  23     THERE WAS ANOTHER OBJECTION THAT MR. BOSTIC MADE THAT THE

02:55PM  24     STIPULATION DOESN'T INCLUDE ATTACHMENTS.

02:55PM  25          NOW, OF COURSE I HAVE TO AGREE THAT THE LANGUAGE IN THE

1888

02:55PM  1    STIPULATION DOESN'T MENTION THE WORD "ATTACHMENT," BUT I WOULD

02:55PM  2    NOTE THAT THE EMAIL ITSELF, LIKE THE EMAILS DO WHEN THEY HAVE A

02:55PM  3    FILE ATTACHED, HAS TRANSITION MWP 052014 DOCX, INDICATING A

02:56PM  4    WORD DOCUMENT ATTACHMENT, WHICH ALSO THE ATTACHMENT WHICH ALSO

02:56PM  5    HAS THE BATES NUMBER SERIES, WHICH ARE SEQUENTIAL.

02:56PM  6         SO AT A MINIMUM, I THINK THE EMAIL WOULD COME IN UNDER

02:56PM  7    STIPULATION.

02:56PM  8         THE ATTACHMENT, YOU KNOW, MR. BOSTIC MAY MAKE A SLIGHTLY

02:56PM  9    BETTER POINT THAT THE STIPULATION DOESN'T SAY ATTACHMENTS, BUT

02:56PM  10   I THINK THAT COMES FROM THE CONTENT OF THE EMAIL ITSELF.

02:56PM  11        SO I JUST WANTED TO MAKE SURE THAT THAT WAS CLEAR, YOU

02:56PM  12   KNOW, BEFORE WE LEFT THIS WITNESS WHO I UNDERSTAND IS COMING

02:56PM  13   BACK WEDNESDAY.

02:56PM  14            THE COURT:  SO ONE OF THE PROBLEMS -- I ASKED YOU

02:56PM  15   ABOUT TIME.  YOUR COLLEAGUE WAS TALKING ABOUT WAS THIS THE DAY

02:56PM  16   HE LEFT?  WE'LL ALL LOOK AT THE TRANSCRIPT AGAIN THIS EVENING.

02:56PM  17   I THINK HE SAID WAS IT CLOSE TO HIS BIRTHDAY, MAY 19TH, THAT HE

02:56PM  18   HAD THE CONVERSATION WITH YOUR CLIENT AND MS. HOLMES, AND THEN

02:56PM  19   HE SAID, I DECIDED -- IT SOUNDS LIKE HE DECIDED TO -- MADE THE

02:56PM  20   DECISION IN THEIR OFFICE TO RESIGN THAT DATE.  HE TOLD US HIS

02:57PM  21   BIRTHDAY WAS THE 19TH OF MAY AND THAT INTERVIEW WAS SOME TIME

02:57PM  22   AROUND THEN.

02:57PM  23        THE EMAIL THAT WAS REFERENCED IN THE OTHER DOCUMENT, WAS

02:57PM  24   THAT -- I THINK WAS THAT AT -- EXCUSE ME, MAY 30TH, BUT IT WAS

02:57PM  25   SOME TIME AROUND NOON, WAS IT?

02:57PM  1          MR. COOPERSMITH:  YES, YOUR HONOR.

02:57PM  2          THE COURT:  AND THIS IS SENT AROUND 7:29 P.M.?

02:57PM  3          MR. COOPERSMITH:  THAT IS THE TIME, ALTHOUGH

02:57PM  4   SOMETIMES THESE TIMES ARE NOT RELIABLE BECAUSE THEY'RE

02:57PM  5   SOMETIMES IN UTC TIMES.

02:57PM  6          THE COURT:  WHICH SUGGESTS THE RELIABILITY AND

02:57PM  7   AUTHENTICATION ISSUE THAT I WAS TALKING ABOUT.

02:57PM  8          MR. COOPERSMITH:  NO, I DON'T THINK SO, YOUR HONOR.

02:57PM  9       TWO POINTS.  FIRST, ON THE TESTIMONY, AND I DO RECALL THE

02:57PM 10   SAME TESTIMONY THAT DR. PANDORI SAID THAT HE REMEMBERS HIS

02:57PM 11   BIRTHDAY.  I THINK HE SAID IT WAS MAY 19TH.  AND THEN HE

02:57PM 12   REMEMBERS RESIGNING WITHIN MINUTES, SOMETHING TO THAT EFFECT.

02:57PM 13       IF NECESSARY, WE COULD SHOW THAT HE ACTUALLY HAD A

02:57PM 14   TRANSITION PERIOD AND HE DIDN'T WALK OUT OF THE BUILDING OR

02:57PM 15   ANYTHING LIKE THAT AND THEN WHICH WOULD SET UP HIM DOING THIS

02:58PM 16   EMAIL.

02:58PM 17          BUT IN ANY EVENT, YOUR HONOR --

02:58PM 18          THE COURT:  MAYBE WE SHOULD DO THAT.  WE'LL DO THAT.

02:58PM 19          MR. COOPERSMITH:  WELL, WE CERTAINLY CAN.

02:58PM 20       BUT WHAT WE WERE HOPING TO RELY ON, AND I'M TRYING TO

02:58PM 21   POINT OUT TO THE COURT I THINK WE'RE ENTITLED TO RELY ON, IS

02:58PM 22   THAT REGARDLESS OF WHAT THE COURT THINKS OR THE WITNESS MAY SAY

02:58PM 23   ABOUT THIS DOCUMENT, HE CAN DENY ABSOLUTELY, HE'S FREE TO DENY

02:58PM 24   THAT HE EVER SAW THIS OR SENT THIS, HE CAN TESTIFY THAT WAY IF

02:58PM 25   HE SO CHOOSES.

02:58PM 1          THE COURT:  WELL, HE DID.  WE HAVE HIS TESTIMONY ON

02:58PM 2     THIS.  HE SAID THAT HE DIDN'T RECOLLECT, THAT HE'S NEVER SEEN

02:58PM 3     IT BEFORE, THAT LINE OF RESPONSE.

02:58PM 4          MR. COOPERSMITH:  HE'S FREE TO SAY THAT, YOUR HONOR.

02:58PM 5      BUT HE'S ALSO FREE TO SAY THAT WITH THE EMAIL IN EVIDENCE

02:58PM 6     BECAUSE IT IS PART OF THE STIPULATION.  IT IS A STIPULATED

02:58PM 7     AUTHENTIC EMAIL AS AUTHENTICALLY COMING FROM, IN THIS CASE TO

02:58PM 8     DR. ROSENDORFF, AND IT'S PART OF THE STIPULATION.

02:58PM 9      THERE'S REALLY NO QUESTION, GIVEN THE LANGUAGE OF THE

02:58PM 10    STIPULATION.  AND IF IT COMES INTO EVIDENCE AND THE JURY SEES

02:58PM 11    IT AND IF HE WANTS TO DENY ON THE STAND --

02:58PM 12         THE COURT:  WELL, YOU SAID HE'S ENTITLED TO SAY, AND

02:59PM 13    THEN YOU SAID ALL OF THESE OTHER THINGS.

02:59PM 14     ENTITLED TO SAY WHAT?

02:59PM 15         MR. COOPERSMITH:  WITH THE EXHIBIT IN FRONT OF HIM

02:59PM 16    HE'S ENTITLED TO SAY THAT HE NEVER SENT THIS.  IF THAT'S WHAT

02:59PM 17    HE WANTS TO TESTIFY UNDER OATH, HE'S FREE TO DO THAT.

02:59PM 18     AND HE'S ALSO FREE TO TESTIFY THAT I DIDN'T SEND THE

02:59PM 19    ATTACHMENT OR WRITE IT, AND WE'LL DEAL WITH THAT WITH OTHER

02:59PM 20    WITNESSES IF THAT'S WHAT HE WANTS TO SAY UNDER OATH.

02:59PM 21         THE COURT:  HAS HE SAID THAT ALREADY?

02:59PM 22         MR. COOPERSMITH:  WELL, WHAT HE ACTUALLY SAID AT THE

02:59PM 23    END IS HE MIGHT HAVE TO REVIEW THE DOCUMENT, HE DOESN'T RECALL.

02:59PM 24    SO MAYBE HE'S HEDGING A LITTLE BIT.

02:59PM 25         THE COURT:  WELL, YOUR COLLEAGUE ASKED HIM ON CROSS,

02:59PM 1     RIGHT?  WELL, YOU DON'T REMEMBER.  THAT MEANS MAYBE YOU COULD

02:59PM 2     HAVE SENT IT, MAYBE YOU DID OR MAYBE YOU DIDN'T.

02:59PM 3               MR. COOPERSMITH:  RIGHT.  YOUR HONOR, AT THIS POINT

02:59PM 4     THE ONLY THING -- YES, HE CAN SAY WHAT HE WANTS ON THE STAND,

02:59PM 5     WE DON'T CONTROL WHAT A WITNESS SAYS ON THE STAND OBVIOUSLY.

02:59PM 6         BUT WHAT I THINK IS CLEAR IS THAT HE CAN DO SO WITH THE

02:59PM 7     DOCUMENT PUBLISHED IN EVIDENCE BECAUSE IT IS PART OF THE

02:59PM 8     STIPULATION, AND THAT'S ALL WE WERE ASKING AND WE'RE NOT

02:59PM 9     TRYING --

02:59PM 10               THE COURT:  OKAY.  SO YOU'RE SEEKING AN ADMISSION

02:59PM 11    THROUGH A STIPULATION.  AND YOU'RE TELLING ME THAT EVEN IF I

03:00PM 12    SAY NO TO THAT, YOU'RE GOING TO GET THIS IN THROUGH SOMEBODY

03:00PM 13    ELSE?  YOU MIGHT GET IT IN THROUGH DR. ROSENDORFF OR WHAT

03:00PM 14    YOU'RE TELLING ME IS THAT YOU HAVE ANOTHER WAY OF GETTING THIS

03:00PM 15    IN?

03:00PM 16               MR. COOPERSMITH:  WELL, YOU KNOW, I THINK WE DO,

03:00PM 17    YOUR HONOR.

03:00PM 18               THE COURT:  UH-HUH.

03:00PM 19               MR. COOPERSMITH:  BUT I THINK WE'RE ENTITLED TO PUT

03:00PM 20    ON A CROSS THAT WE WANT TO PUT ON AND IF IT'S WITHIN THE RULES

03:00PM 21    AND THE STIPULATION.

03:00PM 22         AND IF WE HAVE A WITNESS ON THE STAND WHO WE THINK THIS IS

03:00PM 23    EFFECTIVE WITH, AND WE HAVE A STIPULATION THAT THE DOCUMENT IS

03:00PM 24    AUTHENTIC, THEN I THINK WE SHOULD BE ABLE TO TRY THE CASE AS WE

03:00PM 25    WISH, AGAIN, WITHIN THE RULES AND WITHIN THE STIPULATION AND

1892

03:00PM   1    BASED ON THE ORDERS OF THE COURT.

03:00PM   2         BUT MR. BOSTIC -- AND THE REASON I WANTED TO BRING THIS UP

03:00PM   3    IS, BECAUSE, AGAIN, I'M NOT ACCUSING ANYONE OF ANYTHING, BUT

03:00PM   4    MR. BOSTIC SAID IT'S NOT COVERED BY THE STIPULATION BECAUSE IT

03:00PM   5    DIDN'T HAVE THE, YOU KNOW, THE FROM EMAIL ADDRESS ON THE

03:00PM   6    EXHIBIT, WHICH IS 20279, BUT THAT'S NOT REQUIRED BY THE

03:00PM   7    STIPULATION.

03:00PM   8         AND SO I THINK IT'S ADMISSIBLE UNDER THE STIPULATION, AND

03:00PM   9    I THINK IT COMES IN, AND THEN AS I SAID, DR. PANDORI CAN SAY

03:00PM  10    WHATEVER HE WANTS.

03:01PM  11              THE COURT:  OKAY.  SURE.

03:01PM  12         LET ME JUST SAY, WHY DID WE WASTE THE TIME?  THIS TRIAL --

03:01PM  13    WE'RE REALLY HAVING FITS AND STARTS IN THIS, AND I'M CONCERNED

03:01PM  14    ABOUT OTHER ISSUES COMING UP, AND I THINK WE'RE GOING TO HEAR

03:01PM  15    ABOUT ONE IN A MOMENT FROM A JUROR ABOUT POTENTIAL TRAVEL

03:01PM  16    ISSUES.

03:01PM  17         BUT HONESTLY, WE HAD 17 MINUTES AND SURELY, SURELY YOU

03:01PM  18    COULD HAVE TOUCHED ON ANOTHER SUBJECT AND THEN COME BACK TO

03:01PM  19    THIS.  YOU'LL HAVE ANOTHER OPPORTUNITY.

03:01PM  20         AND I UNDERSTAND YOU WOULD LIKE TO CURATE YOUR PART OF THE

03:01PM  21    CASE AS MUCH AS YOU CAN, BUT THAT'S FINE.  WE WENT BACK AND WE

03:01PM  22    LOST, YOU KNOW, 17 MINUTES OF TESTIMONY.  IN THE GRAND SCHEME

03:01PM  23    OF THINGS THAT DOESN'T SOUND LIKE A BIG DEAL, BUT IN A CASE OF

03:01PM  24    THIS DURATION WHEN WE'RE HAVING TROUBLE, WE'RE PARSING OUT OUR

03:01PM  25    DAYS, 17 MINUTES IS A LIFETIME IN THE TRIAL.

03:01PM   1          I JUST WANT TO ASK COUNSEL, EVERYONE TO PLEASE BE

03:01PM   2     COGNIZANT OF THAT.  I'M NOT GOING TO INTERRUPT AND STOP YOU

03:01PM   3     FROM DOING WHAT YOU NEED TO DO, BUT I THINK A BIG PICTURE LOOK

03:02PM   4     AT WHERE AM I, WHAT AM I DOING, WHAT DO I SEEK TO BE

03:02PM   5     ACCOMPLISHED WOULD BE HELPFUL FOR ALL OF US AND FOR THE JURY AS

03:02PM   6     WELL.

03:02PM   7          THIS JURY WAS -- YOU KNOW, I HAD TO SEND THEM HOME EARLY.

03:02PM   8     IT'S UNFORTUNATE.

03:02PM   9          MR. BOSTIC.

03:02PM   10              MR. COOPERSMITH:  YOUR HONOR, JUST LET ME SAY ONE

03:02PM   11    MORE THING ABOUT THAT, AND OF COURSE MR. BOSTIC CAN RESPOND.

03:02PM   12         I DO TAKE THE COURT'S COMMENTS TO HEART.  WE DON'T WANT TO

03:02PM   13    WASTE TIME.  NOTHING LIKE THAT.

03:02PM   14         BUT I JUST WANT TO POINT OUT THAT IF THE STIPULATION HAD

03:02PM   15    BEEN RECITED ACCURATELY AT THE TIME, I THINK WE COULD HAVE

03:02PM   16    CLEARED THIS UP IN ABOUT 30 SECONDS AS OPPOSED TO 17 MINUTES.

03:02PM   17    SO THAT WAS --

03:02PM   18              THE COURT:  MR. BOSTIC.

03:02PM   19              MR. BOSTIC:  AND THAT IS NOT TRUE AS I'LL EXPLAIN

03:02PM   20    BRIEFLY.

03:02PM   21         I WILL CONCEDE, THOUGH, THAT WITH THE LANGUAGE OF THE

03:02PM   22    STIPULATION IN FRONT OF ME, I DON'T BELIEVE THAT THE LACK OF A

03:02PM   23    FROM ADDRESS ON THIS DOCUMENT IS THE CHIEF REASON WHY IT'S NOT

03:02PM   24    ADMISSIBLE.

03:02PM   25         I THINK IT DOES STILL HAVE AN AUTHENTICITY PROBLEM BECAUSE

03:02PM   1   THE DEFENSE IS NOT SEEKING JUST TO ADMIT THE EMAIL, BUT ALSO

03:02PM   2   THE ATTACHED DOCUMENT.

03:02PM   3         AND THE STIPULATION COVERS THE EMAIL ITSELF BUT DOES NOT

03:03PM   4   SAY THAT THE ATTACHED DOCUMENTS ARE WHAT THEY APPEAR TO BE.

03:03PM   5         I THINK THE MORE IMPORTANT ISSUE IS THE HEARSAY PROBLEM,

03:03PM   6   AND I THINK WHEN WE ARE TALKING ABOUT THE ATTACHMENT AND THE

03:03PM   7   MEMORANDUM, I DON'T THINK ANY FOUNDATION HAS BEEN LAID THAT

03:03PM   8   THIS IS A BUSINESS RECORD.

03:03PM   9         THE WITNESS HAS TESTIFIED THAT HE HAS NO RECOLLECTION OF

03:03PM   10  SEEING OR PREPARING THIS DOCUMENT.

03:03PM   11        I THINK HIS TESTIMONY WAS CONSISTENT ON THAT.  I THINK

03:03PM   12  THAT'S THE ONLY ANSWER THAT HE GAVE TO THAT QUESTION.

03:03PM   13        AND I THINK THAT ANSWER MAKES IT IMPOSSIBLE TO LAY A

03:03PM   14  FOUNDATION THAT THE ATTACHMENT TO 20279 IS A BUSINESS RECORD OR

03:03PM   15  FALLS UNDER ANY OTHER APPLICABLE EXCEPTION TO THE HEARSAY RULE.

03:03PM   16        SO I DON'T THINK THAT THIS DOCUMENT IS ADMISSIBLE BASED ON

03:03PM   17  THE CURRENT RECORD.

03:03PM   18        I, OF COURSE, DID NOT ANTICIPATE THAT THE DEFENSE WOULD

03:03PM   19  SEEK TO ADMIT IT OR THAT THE WITNESS WOULD NOT REMEMBER IT, BUT

03:04PM   20  WE ARE WHERE WE ARE.

03:04PM   21            MR. COOPERSMITH:  YOUR HONOR, TWO BRIEF THINGS.

03:04PM   22        FIRST OF ALL, PUTTING ASIDE THE ATTACHMENT FOR THE MOMENT,

03:04PM   23  IT SOUNDS LIKE MR. BOSTIC IS CONCEDING --

03:04PM   24            THE COURT:  SO LET'S -- PARDON ME FOR INTERRUPTING

03:04PM   25  YOU.  PAGE 1 COMES IN.  LET'S TALK ABOUT THE ATTACHMENT.

03:04PM  1          MR. COOPERSMITH:  YES, YOUR HONOR.  AGREED.

03:04PM  2          SO LET'S TALK ABOUT THE ATTACHMENT.

03:04PM  3          SO IN DIRECT EXAMINATION MR. BOSTIC WAS ALLOWED TO PUT IN

03:04PM  4    AN ARTICLE FROM "THE WALL STREET JOURNAL," AS I RECALL, AND THE

03:04PM  5    RATIONALE OF ITS ADMISSIBILITY WAS TO INFORM -- BECAUSE THE

03:04PM  6    WITNESS TESTIFIED THAT HE HAD READ CERTAIN ARTICLES, AND HE WAS

03:04PM  7    EXCITED ABOUT THERANOS, AND THAT'S ONE REASON HE WANTED TO JOIN

03:04PM  8    THE COMPANY.  AND IT WAS ALLOWED TO SORT OF INFORM HIS WAY OF

03:04PM  9    PERCEIVING, WHICH IN THAT CASE WAS TO JOIN THERANOS.

03:04PM  10          WHAT THIS IS, IS THE TAIL END OF THAT.  THIS IS WHERE

03:04PM  11   DR. PANDORI IS LEAVING AND HE'S WRITING A TRANSITION MEMO, AND

03:04PM  12   HE'S SAYING HERE'S ALL OF THE THINGS THAT YOU SHOULD KNOW,

03:04PM  13   RIGHT?  AND THERE ARE SOME THINGS THAT WE WOULD WISH TO EXAMINE

03:05PM  14   HIM ABOUT.  AND THIS IS INFORMING, LIKE, THE ISSUE OF WHY HE

03:05PM  15   LEFT.

03:05PM  16          AND THE GOVERNMENT IN THEIR DIRECT EXAMINATION, AND THIS

03:05PM  17   IS FRONT AND CENTER IN THEIR DIRECT EXAMINATION, THEY PUT AT

03:05PM  18   ISSUE WHY DID DR. PANDORI LEAVE?  WHAT WAS THE REASONS -- WHAT

03:05PM  19   WAS IMPORTANT TO HIM?

03:05PM  20          AND HE TESTIFIED THAT HE HAD VARIOUS PROBLEMS AND ISSUES

03:05PM  21   WITH THERANOS, INCLUDING MR. BALWANI, AND THIS DROVE HIM TO

03:05PM  22   QUIT AND HE SAID IN MINUTES HE DECIDED.

03:05PM  23          ONCE THEY DO THAT, I THINK WE SHOULD BE ENTITLED TO

03:05PM  24   EXPLAIN THROUGH THE WITNESS'S OWN WORDS WHAT HE ACTUALLY SAID.

03:05PM  25          THE COURT:  ISN'T THAT THE PROBLEM, THOUGH,

03:05PM 1     MR. COOPERSMITH?  WE DON'T KNOW IF THESE ARE HIS OWN WORDS

03:05PM 2     BECAUSE HE DID NOT ATTRIBUTE THIS TO HIMSELF.

03:05PM 3          SO THAT'S, THAT'S THE ISSUE.

03:05PM 4          IF HE HAD SAID, OH, I REMEMBER WRITING THAT?

03:05PM 5          NO PROBLEM.  WE WOULDN'T HAVE THIS DISCUSSION.

03:05PM 6          BUT THERE'S A DISPUTE ABOUT HIM BEING THE AUTHOR OF THIS.

03:05PM 7               MR. COOPERSMITH:  RIGHT.  SO NOW WE'RE BACK INTO THE

03:05PM 8     AUTHENTICATION WORLD, RIGHT?

03:05PM 9          BECAUSE IF IT'S -- IF THAT'S THE QUESTION, THAT'S AN

03:05PM 10    AUTHENTICATION ISSUE, RIGHT?  BECAUSE YOU'RE RIGHT, HE

03:06PM 11    TESTIFIED THAT HE NEVER SAW THIS BEFORE.

03:06PM 12         AND THEN HE HEDGED A LITTLE BIT AT THE END AND HE SAID HE

03:06PM 13    WOULD HAVE TO REVIEW IT, BUT HE'S NOT SURE ONE WAY OR THE

03:06PM 14    OTHER, RIGHT?  SO HE DOESN'T HAVE A MEMORY OF IT, RIGHT?

03:06PM 15         SO IN TERMS OF -- IF OUR GOAL WAS TO AUTHENTICATE THE

03:06PM 16    ATTACHMENT WITH HIS TESTIMONY, I AGREE THAT THAT WOULD FAIL FOR

03:06PM 17    THIS WITNESS BECAUSE HE DIDN'T SAY THAT, YES, I WROTE THIS,

03:06PM 18    AND, YES, I REMEMBER THIS, RIGHT?

03:06PM 19         BUT THERE ARE OTHER WAYS TO AUTHENTICATE A DOCUMENT INTO

03:06PM 20    EVIDENCE OTHER THAN JUST THE WITNESS SAYING THAT HE REMEMBERS

03:06PM 21    IT.

03:06PM 22         IN THIS CASE THE AUTHENTICATION FACTORS ARE THAT IT'S

03:06PM 23    MENTIONED, THERE'S A DOCUMENT MENTIONED IN THE ATTACHMENT

03:06PM 24    CALLED TRANSITION MWP, A WORD DOCUMENT; THERE'S AN EMAIL THAT I

03:06PM 25    THINK WE'RE ALL NOW AGREEING SHOULD COME INTO EVIDENCE, IT SAYS

03:06PM   1   THE TRANSITION REPORT IS ATTACHED; AND THEN WHEN YOU LOOK THE

03:06PM   2   GOVERNMENT PRODUCED -- THEY PRODUCED THESE DOCUMENTS TO US,

03:06PM   3   RIGHT? -- WITH SEQUENTIAL BATES NUMBERS STARTING FROM THE ONE

03:07PM   4   THAT ENDS WITH 20 THROUGH 21 AND THEN GOING TO THE END OF THE

03:07PM   5   DOCUMENT.  SO I THINK IT COMES INTO EVIDENCE AS AUTHENTIC FOR

03:07PM   6   THOSE REASONS.

03:07PM   7        NOW, I AGREE WITH THE COURT, WHEN THE DOCUMENT IS ON THE

03:07PM   8   SCREEN AND IN FRONT OF THE JURY AND IN FRONT OF THE WITNESS,

03:07PM   9   AND IF THE WITNESS STILL WANTS TO SAY I NEVER WROTE THIS AND I

03:07PM   10  NEVER SAW THIS BEFORE, HE'S CERTAINLY FREE TO DO THAT, BUT

03:07PM   11  THAT'S DIFFERENT FROM WHETHER IT SHOULD COME INTO EVIDENCE.

03:07PM   12       AND I THINK ALL OF THE FEATURES HERE ARE PRESENT FOR THIS

03:07PM   13  DOCUMENT TO BE AUTHENTICATED.  AND AS I SAID, THE GOVERNMENT IS

03:07PM   14  THE PARTY THAT BROUGHT UP WHY HE LEFT, AND I THINK WE'RE

03:07PM   15  ENTITLED TO SHOW THE OTHER SIDE OF THE STORY WHY HE MAY HAVE

03:07PM   16  LEFT AND WHAT HE SAID WHEN HE LEFT.  HE IS HERE.

03:07PM   17            THE COURT:  IF HE DID WRITE IT.

03:07PM   18            MR. COOPERSMITH:  HE CAN DENY IT, BUT I THINK WE ARE

03:07PM   19  STILL --

03:07PM   20            THE COURT:  I THINK HE ALREADY HAS.  THAT'S PART OF

03:07PM   21  THE PROBLEM.  HE HAS NOT CLAIMED OWNERSHIP OF THIS.

03:07PM   22       YOUR COLLEAGUE GAVE HIM AN OPPORTUNITY TO DO THAT, AND

03:07PM   23  THEN HE REPEATED THE QUESTIONS AGAIN AND AGAIN AND AGAIN.

03:07PM   24       AND WE KNOW WHAT WITNESSES DO AFTER ANSWERING THE QUESTION

03:07PM   25  SEVERAL TIMES, THEY'LL YIELD, OKAY, YEAH, IT'S POSSIBLE, MAYBE

03:08PM   1       I DID, MAYBE I DIDN'T, I DON'T KNOW.  ALL THINGS ARE POSSIBLE,

03:08PM   2   OF COURSE.

03:08PM   3            MR. COOPERSMITH:  WELL --

03:08PM   4            THE COURT:  SO I TAKE YOUR POINT.

03:08PM   5       I STILL HAVE SOME PROBLEMS.  IF THERE WERE NO STIPULATION,

03:08PM   6   I THINK YOU WOULD AGREE, THERE WOULD BE A REAL DIFFICULTY

03:08PM   7   GETTING THIS IN.  THERE'S NO FROM ON HERE.  WE DON'T KNOW WHO

03:08PM   8   SENT THIS.  IT SAYS MARK.

03:08PM   9       THE RELIABILITY OF THIS IS THAT YOU'RE RELYING ON THE

03:08PM   10   BATES STAMPS AND THEY'RE SEQUENTIAL, AND THAT'S HOW THEY WERE

03:08PM   11   PROVIDED.

03:08PM   12       THE STIPULATION DOES NOT PROVIDE FOR APPENDICES, IT

03:08PM   13   PROVIDES FOR THE EMAILS, AND I UNDERSTAND YOUR FRUSTRATION.

03:08PM   14   AND THE EMAIL IS SOMEWHAT AMBIGUOUS, BUT THE EMAIL REALLY ISN'T

03:08PM   15   THE IMPORT.  THE IMPORT IS A MEMO THAT IS ATTACHED TO IT.

03:08PM   16       IT HAS M.W. PANDORI ON IT.

03:08PM   17       WHAT WAS TELLING WAS THAT WHEN THIS WAS FIRST SHOWN TO THE

03:08PM   18   WITNESS, HE LOOKED AT IT AND HE DISOWNED IT IMMEDIATELY.  IT

03:08PM   19   HAS MY NAME, BUT I DIDN'T DO THIS.

03:08PM   20       AND THEN WITH THE EXAMINATION -- AND THAT'S WHAT HAPPENS,

03:08PM   21   MAYBE HIS MEMORY IS REFRESHED, MAYBE HE WAS REMINDED THAT ALL

03:09PM   22   THINGS WERE POSSIBLE, EVEN TRIALS COMING IN UNDER THEIR TIME

03:09PM   23   LIMIT THAT WE'VE SCHEDULED, SOMETIMES THAT HAPPENS.

03:09PM   24       SO, YOU KNOW, ALL THINGS ARE POSSIBLE.

03:09PM   25       SO -- THAT'S HOW HE LEFT.

03:09PM 1          I STILL HAVE SOME PROBLEMS WITH THIS, THOUGH, I HAVE TO

03:09PM 2     SAY.

03:09PM 3          MR. BOSTIC.

03:09PM 4          MR. BOSTIC:  YOUR HONOR, JUST SO THE GOVERNMENT'S

03:09PM 5     POSITION IS CLEAR, I'M NOT DISPUTING THAT THE REST OF

03:09PM 6     EXHIBIT 20279 WAS THE ATTACHMENT TO THIS EMAIL AND PURSUANT TO

03:09PM 7     THE STIPULATION I AGREE THAT IT WAS STORED, COLLECTED, AND

03:09PM 8     PRODUCED BY THERANOS.

03:09PM 9          SO IT'S NOT -- THAT'S NOT THE NATURE OF THE AUTHENTICATION

03:09PM 10    OBJECTION.

03:09PM 11         I THINK, THOUGH, THAT COUNSEL IS ASSUMING THAT ONCE THE

03:09PM 12    AUTHENTICATION HURDLE HAS BEEN CLEARED, THAT THERE'S NO BARRIER

03:09PM 13    TO ADMISSIBILITY, AND THAT'S NOT THE CASE.

03:09PM 14         THE STIPULATION SAYS THAT DOCUMENTS THAT QUALIFY ARE

03:09PM 15    ADMISSIBLE OVER ANY OBJECTIONS AS TO AUTHENTICITY OR BEST

03:10PM 16    EVIDENCE, SO ASSUMING THAT THIS IS ALL AUTHENTICATED, AND

03:10PM 17    ASSUMING THAT THAT DOES APPLY TO THE ATTACHMENT, AND THAT THE

03:10PM 18    ATTACHMENT ITSELF IS ALSO AUTHENTICATED.

03:10PM 19         THE PROBLEM IS THAT WITHOUT THE WITNESS OR SOME EVIDENCE

03:10PM 20    CONFIRMING THAT THIS MEMO IS FROM HIM, IT'S NOT RELEVANT FOR

03:10PM 21    THE PROPOSITION THAT THE DEFENSE SEEKS TO ADMIT IT FOR, WHICH

03:10PM 22    IS TO SHOW THE WITNESS'S STATE OF MIND.  I'M SORRY IF I

03:10PM 23    MISSPOKE AND SAID DEFENDANT.

03:10PM 24         UNLESS THERE'S SOME EVIDENCE SHOWING THAT THE WITNESS

03:10PM 25    ACTUALLY WROTE THIS, THEN IT CAN'T COME IN UNDER 401 FOR HIS

03:10PM   1    STATE OF MIND AND WHAT WAS IMPORTANT FOR HIM, AND THAT'S STILL

03:10PM   2    SEPARATE FROM THE ISSUE OF THE FACT THAT THIS IS AN

03:10PM   3    OUT-OF-COURT STATEMENT THAT HASN'T BEEN ADOPTED OR OWNED BY A

03:10PM   4    WITNESS ON THE STAND.

03:10PM   5              THE COURT:  WELL, THAT'S WHAT I WAS TALKING ABOUT.

03:10PM   6         WHEN I SAID AUTHENTICATION, PERHAPS THAT WAS A SYNONYM FOR

03:10PM   7    ATTRIBUTION.  HE HASN'T.  HE'S DISOWNED IT, SO HOW CAN IT COME

03:11PM   8    IN?

03:11PM   9              MR. COOPERSMITH:  I UNDERSTAND THE QUESTION,

03:11PM  10    YOUR HONOR.

03:11PM  11         SO THERE MAY BE A LOT OF EXHIBITS.  JUST LET'S SAY

03:11PM  12    HYPOTHETICALLY THERE'S AN EXHIBIT THAT COMES IN OR IS BEING

03:11PM  13    OFFERED AND IT'S AN EMAIL, AND IT HAS THE BATES NUMBER, AND IT

03:11PM  14    DULY HAS THE RIGHT EMAIL ADDRESSES, AND THE WITNESS JUST SAYS I

03:11PM  15    JUST DON'T REMEMBER THIS, I'M SORRY.

03:11PM  16         WELL, FIRST OF ALL, IT'S AUTHENTIC, RIGHT?  AND AFTER THAT

03:11PM  17    IT COMES IN FOR THE PURPOSE IT COMES IN FOR.

03:11PM  18         SO I DON'T THINK THE FACT THAT THIS WITNESS IS -- AND

03:11PM  19    AGAIN, HE HEDGED AT THE END, BUT THE FACT THAT THIS WITNESS

03:11PM  20    SAYS I DON'T HAVE A DISTINCT MEMORY, I DON'T HAVE A MEMORY OF

03:11PM  21    THIS DOCUMENT DOESN'T REALLY MATTER.

03:11PM  22         SO, FOR EXAMPLE, YOUR HONOR, LET'S SAY THAT WE WERE IN OUR

03:11PM  23    CASE AND WE WANTED TO CALL A CUSTODIAN OF RECORDS WHO WOULD

03:11PM  24    SAY, YEP, THIS CAME FROM THE THERANOS EMAIL SERVER, AND IT WAS

03:11PM  25    PRODUCED TO THE UNITED STATES GOVERNMENT, AND THEN IT WAS

03:11PM  1    DUTIFULLY PRODUCED TO THE DEFENDANTS IN DISCOVERY.

03:11PM  2         I THINK -- AT THAT POINT I THINK IT COMES IN.

03:11PM  3         AND AGAIN, THAT'S A DIFFERENT QUESTION FROM WHETHER THE

03:12PM  4    WITNESS IS FREE TO DENY OR SAY HE DOESN'T REMEMBER IT, BUT

03:12PM  5    WE'RE ALLOWED TO GO THROUGH THE DOCUMENT WITH THE WITNESS, WITH

03:12PM  6    IT PUBLISHED TO THE JURY, AND SAY, SIR, YOU WROTE THESE WORDS,

03:12PM  7    AND GO SENTENCE BY SENTENCE AS NECESSARY.

03:12PM  8         THE COURT:  WHAT IS THE RELEVANCE OF THIS DOCUMENT,

03:12PM  9    THE MEMO?

03:12PM  10        MR. COOPERSMITH:  WELL, AGAIN, YOUR HONOR, THIS IS

03:12PM  11   HIS EXIT MEMO.  WE CALL IT THE TRANSITION MEMO, WHERE HE'S

03:12PM  12   SAYING ALL OF THE THINGS THAT HE WANTS TO PASS ON TO

03:12PM  13   DR. ROSENDORFF AS HE'S LEAVING THE COMPANY AFTER HE QUITS.

03:12PM  14        AND THE GOVERNMENT, OF COURSE, THIS WAS A MAJOR PART OF

03:12PM  15   THEIR DIRECT EXAMINATION OF DR. PANDORI, THAT DR. PANDORI LEFT

03:12PM  16   FOR A CERTAIN REASON AND THE REASON IS THAT HE HAD A

03:12PM  17   CONVERSATION WITH MR. BALWANI AND MS. HOLMES, AND DR. PANDORI

03:12PM  18   CLAIMS THAT --

03:12PM  19        THE COURT:  PARDON ME FOR INTERRUPTING.

03:12PM  20        SO THIS IS A DOCUMENT THAT PURPORTS TO BE AN EXIT MEMO?

03:12PM  21   HE'S TOLD US HE DIDN'T WRITE IT.

03:12PM  22        MR. COOPERSMITH:  RIGHT.

03:12PM  23        THE COURT:  SO IT PURPORTS TO BE AN EXIT MEMO.

03:13PM  24   THAT'S REALLY WHAT THE BASIS OF THIS IS, RIGHT?  THERE IS A

03:13PM  25   DOCUMENT HERE.  IT LOOKS LIKE IT'S AN EXIT MEMO.  DID YOU WRITE

03:13PM 1    THIS?

03:13PM 2            MR. COOPERSMITH:  HE SAYS HE DOESN'T REMEMBER.

03:13PM 3            THE COURT:  AND HE SAYS -- WELL, FIRST HE SAID NO.

03:13PM 4        AND THEN HE SAID I'VE NEVER SEEN THIS BEFORE, OR MAYBE HE

03:13PM 5    SAID THOSE THINGS CONTEMPORANEOUSLY.

03:13PM 6        AND THEN TOWARDS THE END OF YOUR COLLEAGUE'S EXAMINATION

03:13PM 7    TODAY HE SAID, WELL -- WHEN SAID, WELL, YOU DON'T REMEMBER?

03:13PM 8    THAT MEANS YOU COULD HAVE WRITTEN IT, MAYBE YOU DID, MAYBE YOU

03:13PM 9    DIDN'T, YOU JUST DON'T REMEMBER?  HE AGREED WITH THAT

03:13PM 10   ASSESSMENT.

03:13PM 11           MR. COOPERSMITH:  RIGHT.

03:13PM 12           THE COURT:  SO IT COMES IN AS NOT HIS DOCUMENT, BUT

03:13PM 13   AS A DOCUMENT THAT WAS ATTACHED TO AN EMAIL.

03:13PM 14           MR. COOPERSMITH:  YES, YOUR HONOR.  IT COMES IN AS A

03:13PM 15   DOCUMENT THAT IS DULY PRODUCED FROM THERANOS TO THE GOVERNMENT

03:13PM 16   WITH APPROPRIATE BATES NUMBERS WITH A COVER EMAIL THAT PURPORTS

03:13PM 17   TO BE FROM DR. PANDORI, AND IT COMES IN AS AN EXIT MEMO FROM A

03:13PM 18   GUY NAMED DR. PANDORI WHO --

03:13PM 19           THE COURT:  WELL, IT COMES IN FOR WHAT IT SAYS.

03:14PM 20       WHETHER OR NOT HE WROTE IT OR NOT IS STILL AT ISSUE.

03:14PM 21           MR. COOPERSMITH:  WELL, IT COMES IN FOR WHAT IT

03:14PM 22   SAYS, AND ALSO THAT IT IS FROM A PERSON NAMED MARK PANDORI, AND

03:14PM 23   THAT IT WAS RECEIVED --

03:14PM 24           THE COURT:  WELL, WE DON'T KNOW THAT, DO WE?

03:14PM 25           MR. COOPERSMITH:  WELL, WE DO KNOW THAT.

03:14PM 1        THE COURT:  WHO WROTE IT?  WHO WROTE IT?  WE DON'T

03:14PM 2   KNOW WHO WROTE IT.

03:14PM 3        MR. COOPERSMITH:  WELL, WE KNOW WHO RECEIVED IT.

03:14PM 4        THE COURT:  WE KNOW WHO RECEIVED IT, RIGHT.

03:14PM 5     WE DON'T KNOW IF JOE SMITH WROTE IT AND THEN PUT DOWN

03:14PM 6   MARK PANDORI, DO WE?

03:14PM 7        MR. COOPERSMITH:  WELL, I DON'T THINK THAT'S

03:14PM 8   POSSIBLE, YOUR HONOR.

03:14PM 9        THE COURT:  YOUR COLLEAGUE WOULD DISAGREE WITH YOU.

03:14PM 10  HE WOULD TELL YOU ALL THINGS ARE POSSIBLE.

03:14PM 11       MR. COOPERSMITH:  WELL, MAYBE SO, YOUR HONOR.

03:14PM 12    HERE'S THE BOTTOM LINE, BECAUSE I THINK EVERYONE

03:14PM 13  UNDERSTANDS THE POSITION --

03:14PM 14       THE COURT:  YES, WE DO.  WE DO.

03:14PM 15       MR. COOPERSMITH:  SO IF THIS IS NOT GOING TO COME IN

03:14PM 16  THROUGH DR. PANDORI, AND OBVIOUSLY OUR POSITION IS THAT WE

03:14PM 17  SUBMIT IT SHOULD.

03:14PM 18       THE COURT:  UNDERSTOOD.  UNDERSTOOD.

03:14PM 19       MR. COOPERSMITH:  THEN WHAT WE'RE GOING TO BE ASKING

03:14PM 20  FOR, AND WE'LL HAVE TO DO THIS, I GUESS, WHAT WE'LL CALL IT THE

03:14PM 21  HARD WAY, RIGHT, WHERE WE'RE GOING TO MAKE SURE THAT WE HAVE A

03:14PM 22  PARALEGAL LINED UP FROM THE UNITED STATES ATTORNEY'S OFFICE WHO

03:15PM 23  CAN TESTIFY ABOUT WHAT THEY RECEIVED FROM THERANOS AND WHAT

03:15PM 24  THEY'VE PRODUCED, AND WE CAN GO THROUGH THAT TO MAKE SURE --

03:15PM 25       THE COURT:  OKAY.  SO DON'T THREATEN ME WITH WHAT

1904

03:15PM 1      WE'RE GOING TO HAVE TO DO.  PLEASE DON'T DO THAT.  YOU'RE

03:15PM 2      BETTER THAN THAT.  YOU ARE.  YOU ARE BETTER THAN THAT.

03:15PM 3              MR. COOPERSMITH:  I WASN'T MEANING IT THAT WAY.

03:15PM 4              THE COURT:  COME ON.  YOU DON'T HAVE TO DO THAT.

03:15PM 5          ALL RIGHT.  ANYTHING FURTHER ON THIS?

03:15PM 6              MR. BOSTIC:  I'M SORRY, YOUR HONOR.

03:15PM 7          JUST TO CLARIFY THE GOVERNMENT'S POSITION IN RESPONSE TO

03:15PM 8      THAT, I DON'T THINK THAT THE APPROACH THAT MR. COOPERSMITH JUST

03:15PM 9      OUTLINED WOULD SOLVE THE PROBLEMS WITH THIS DOCUMENT.

03:15PM 10         PROVING THAT IT WAS STORED BY THERANOS AND PRODUCED BY

03:15PM 11     THERANOS DOES NOT SOLVE THE RELEVANCE PROBLEMS OR THE HEARSAY

03:15PM 12     PROBLEMS WHERE WE HAVE A WITNESS WHO WON'T TELL US THAT HE'S

03:15PM 13     THE ONE WHO WROTE IT, WHERE WE DON'T KNOW WHO WROTE THIS

03:15PM 14     DOCUMENT.

03:15PM 15         THAT'S ALL.

03:15PM 16             THE COURT:  OKAY.  GREAT.  ALL RIGHT.  THANK YOU.

03:15PM 17         WELL, THIS WITNESS ISN'T DUE TO COME BACK UNTIL WEDNESDAY.

03:15PM 18     HE'S IRONICALLY DOING A CLIA INSPECTION OF HIS OWN, ISN'T HE?

03:15PM 19     PERHAPS WE'LL ASK HIM HOW THAT WENT.

03:15PM 20         THANK YOU VERY MUCH.  I'M GOING TO LOOK AT THE TRANSCRIPT,

03:16PM 21     AND WE'LL ALL STEW ON THIS.

03:16PM 22             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

03:16PM 23             THE COURT:  SO WE'LL HAVE ANOTHER WITNESS TUESDAY?

03:16PM 24             MR. BOSTIC:  YES, YOUR HONOR.

03:16PM 25             THE COURT:  AND YOU'RE PRETTY CONFIDENT THAT WE CAN

```
03:16PM   1    FINISH THAT WITNESS?

03:16PM   2            MR. BOSTIC:  I BELIEVE SO.  WE'LL CONFER WITH THE

03:16PM   3    DEFENSE ON THAT, BUT WE HAVE EVERY REASON TO THINK SO.

03:16PM   4            THE COURT:  OKAY.

03:16PM   5            MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

03:16PM   6            THE COURT:  ANYTHING FURTHER?

03:16PM   7            MR. COOPERSMITH:  NO.  WE APPRECIATE IT, YOUR HONOR.

03:16PM   8            THE COURT:  ALL RIGHT.  HAVE A GOOD WEEKEND.  THANK

03:16PM   9    YOU.

03:16PM  10        (COURT CONCLUDED AT 3:16 P.M.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25
```

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18         DATED:  APRIL 1, 2022
19

20

21

22

23

24

25