UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CR-18-00258-EJD |
| PLAINTIFF, | ) |
| | ) SAN JOSE, CALIFORNIA |
| VS. | ) |
| | ) MAY 17, 2022 |
| RAMESH "SUNNY" BALWANI, | ) |
| | ) VOLUME 30 |
| DEFENDANT. | ) |
| _____ | ) PAGES 5838 - 5871 |

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                        BY:  JOHN C. BOSTIC
                             JEFFREY B. SCHENK
                        150 ALMADEN BOULEVARD, SUITE 900
                        SAN JOSE, CALIFORNIA 95113

                        BY:  ROBERT S. LEACH
                             KELLY VOLKAR
                        1301 CLAY STREET, SUITE 340S
                        OAKLAND, CALIFORNIA 94612

         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTERS:
                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074
                        LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595

       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1    A P P E A R A N C E S:  (CONT'D)

 2    FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                              BY:  MOLLY MCCAFFERTY
 3                                 SHAWN ESTRADA
                                   JAMES FLYNN
 4                            THE ORRICK BUILDING
                              405 HOWARD STREET
 5                            SAN FRANCISCO, CALIFORNIA 94105

 6                            BY:  JEFFREY COOPERSMITH
                                   AARON BRECHER
 7                                 AMANDA MCDOWELL
                              701 FIFTH AVENUE, SUITE 5600
 8                            SEATTLE, WASHINGTON 98104

 9                            BY:  STEPHEN CAZARES
                              77 SOUTH FIGUEROA STREET, SUITE 3200
10                            LOS ANGELES, CALIFORNIA 90017

11                            BY:  AMY WALSH
                              51 W 52ND STREET
12                            NEW YORK, NEW YORK 10019

13
      ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
14                            BY:  MADDI WACHS, PARALEGAL
                                   SARA SLATTERY, PARALEGAL
15
                              ORRICK, HERRINGTON & SUTCLIFFE
16                            JENNIFER CYGNOR, PARALEGAL

17                            PROLUMINA
                              BY:  COREY ALLEN
18                                 CHRISTIAN TIEDEMANN
                              2200 SIXTH AVENUE, SUITE 425
19                            SEATTLE, WASHINGTON 98121

20                            UNITED STATES POSTAL INSPECTION SERVICE
                              BY:  CHRISTOPHER MCCOLLOW
21
                              FEDERAL BUREAU OF INVESTIGATION
22                            BY:  MARIO C. SCUSSEL

23                            UNITED STATES FOOD & DRUG
                              ADMINISTRATION
24                            BY:  GEORGE SCAVDIS

25
```

```
 1    SAN JOSE, CALIFORNIA                    MAY 17, 2022
 2                    P R O C E E D I N G S
 3        (COURT CONVENED AT 9:25 A.M.)
 4        (JURY IN AT 9:26 A.M.)
 5            THE COURT:  THANK YOU AGAIN FOR YOUR COURTESY AND
 6    YOUR PATIENCE THIS MORNING.
 7        WE ARE ON THE RECORD IN THE BALWANI MATTER, AND ALL
 8    COUNSEL IS PRESENT.
 9        MR. BALWANI IS PRESENT.
10        OUR JURORS ARE PRESENT, SAVE FOR ONE JUROR WHO, LADIES AND
11    GENTLEMEN, IS ILL AND COULDN'T JOIN US TODAY.  I'VE HAD
12    OCCASION TO SPEAK WITH COUNSEL ABOUT THIS SITUATION.
13        WHAT WE'RE GOING TO DO IS TO -- I'M INFORMED THAT THE
14    JUROR WILL BE ABLE TO JOIN US TOMORROW.  AND SO WHAT I'M GOING
15    TO DO, AFTER DISCUSSING WITH COUNSEL, WE'RE GOING TO ADJOURN
16    FOR TODAY AND RESUME THE TRIAL TOMORROW.
17        SO THE -- OUR JUROR WHO IS ILL WILL BE ABLE TO, I'M
18    INFORMED, WILL BE ABLE TO JOIN US TOMORROW FOR THE PROCEEDINGS.
19        SO WE'RE NOT GOING TO HAVE ANY PROCEEDINGS TODAY WITH YOUR
20    SERVICE.
21        I APOLOGIZE FOR THE INCONVENIENCE.  I HOPE YOU JOIN ME IN
22    WISHING HIM WELL.  AND HE'LL BE BACK TOMORROW I'M TOLD.
23        SO LET ME ASK YOU THAT QUESTION, THOUGH, YOU 11 HERE, IF
24    ANY OF YOU HAVE -- MY ADMONITION QUESTION, DID ANY OF YOU HAVE
25    CAUSE DURING THE BREAK TO READ, HEAR, OR LEARN ANYTHING ABOUT
```

09:27AM 1    THIS CASE OUTSIDE OF THE COURTROOM?

09:27AM 2         IF SO, PLEASE RAISE YOUR HANDS.

09:27AM 3         I SEE NO HANDS.  THANK YOU VERY MUCH.

09:27AM 4         LET ME JUST ASK COUNSEL, COUNSEL, IS THERE ANY OBJECTION

09:27AM 5    TO THE COURT PROCEEDING THIS MORNING WITHOUT THE JUROR, OUR ILL

09:27AM 6    JUROR PRESENT FOR THE PURPOSE OF THIS PROCEEDING?

09:27AM 7              MR. SCHENK:  NO, YOUR HONOR.  THANK YOU.

09:27AM 8              MR. COOPERSMITH:  NO, YOUR HONOR.

09:27AM 9              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

09:27AM 10        SO, LADIES AND GENTLEMEN, WE'LL ADJOURN FOR THE DAY.  WE

09:27AM 11   WILL ENGAGE TRIAL TOMORROW.  I APOLOGIZE FOR THE INCONVENIENCE.

09:28AM 12        THESE THINGS HAPPEN, AND I HOPE YOU APPRECIATE THAT.  AND

09:28AM 13   WE'LL SEE YOU TOMORROW.  HAVE A GOOD DAY.

09:28AM 14        PLEASE AGAIN, REMEMBER THE ADMONITION.  CONTINUE TO DO

09:28AM 15   WHAT YOU'RE DOING, WHICH IS BEING FAITHFUL TO THAT ADMONITION

09:28AM 16   AND NOT LEARNING OR LISTENING, DISCUSSING, OR READING ANYTHING

09:28AM 17   ABOUT THIS CASE.

09:28AM 18        WE'LL SEE YOU TOMORROW.  I'M TOLD WE'LL START PROMPTLY AT

09:28AM 19   9:00 A.M. TOMORROW.

09:28AM 20        SO HAVE A GOOD EVENING.  WE'LL SEE YOU TOMORROW.

09:28AM 21        THANK YOU VERY MUCH.

09:28AM 22        (JURY OUT AT 9:28 A.M.)

09:28AM 23             THE COURT:  ALL RIGHT.  PLEASE BE SEATED.  THANK

09:28AM 24   YOU.

09:28AM 25        THE RECORD SHOULD REFLECT THAT THE JURY HAS LEFT FOR THE

09:29AM 1    DAY.

09:29AM 2        I WANT TO JUST INDICATE ON THE RECORD THAT ALL COUNSEL ARE

09:29AM 3    PRESENT, THE DEFENDANT IS PRESENT.  AGAIN, WE'RE OUTSIDE OF THE

09:29AM 4    PRESENCE OF THE JURY.

09:29AM 5        DID COUNSEL HAVE ANYTHING ELSE THAT THEY WANTED TO RAISE

09:29AM 6    TODAY?  WAS THERE SOMETHING, MR. COOPERSMITH?

09:29AM 7            MR. COOPERSMITH:  YES, YOUR HONOR.  THERE'S A MOTION

09:29AM 8    THAT WE FILED -- I'M SORRY.  SORRY, YOUR HONOR.

09:29AM 9        THERE'S A MOTION THAT WE FILED LAST NIGHT.  I DON'T KNOW

09:29AM 10   WHAT THE GOVERNMENT'S POSITION IS ON IT YET.  MAYBE THERE'S NO

09:29AM 11   ISSUE.

09:29AM 12       BUT IF THERE IS ONE, THEN MY COLLEAGUE, JAMES FLYNN, WHO

09:29AM 13   IS HERE TODAY FROM THE EAST COAST, WOULD ARGUE THAT.

09:29AM 14       THERE'S ALSO A COUPLE OF MATTERS TO TAKE UP WITH REGARD TO

09:29AM 15   ONE OF THE WITNESSES THAT WE SHOULD SEE TOMORROW, MS. --

09:30AM 16   PATIENT E.T., I THINK WE'LL CALL HER THAT.

09:30AM 17       AND IS THERE ANOTHER -- I THINK THAT MIGHT BE IT,

09:30AM 18   YOUR HONOR.

09:30AM 19           THE COURT:  OKAY.  ALL RIGHT.

09:30AM 20       AND THIS IS IN REGARDS TO DOCUMENT 1439, I BELIEVE IT IS,

09:30AM 21   THAT WAS FILED LAST NIGHT?

09:30AM 22           MR. COOPERSMITH:  YES, YOUR HONOR.

09:30AM 23           THE COURT:  AND IT'S IN RELATION TO THE ADMISSION OF

09:30AM 24   TRIAL EXHIBIT 20683?

09:30AM 25           MR. COOPERSMITH:  20683, YES, YOUR HONOR.

09:30AM  1                    THE COURT:  RIGHT.

09:30AM  2            MR. BOSTIC, HAVE YOU SEEN THIS?

09:30AM  3                    MR. BOSTIC:  I HAVE, YOUR HONOR.  I DID NOT HAVE A

09:30AM  4     CHANCE TO REVIEW IT.  LAST NIGHT IT WAS FILED LATE.  BUT I

09:30AM  5     REVIEWED IT THIS MORNING.

09:30AM  6            I UNDERSTAND THAT THE DEFENSE IS SEEKING TO ADMIT A SINGLE

09:30AM  7     PAGE, PAGE 9, OF THAT TRIAL EXHIBIT.

09:30AM  8            THE GOVERNMENT HAS SOME 403 CONCERNS AND 702, 702 ADJACENT

09:30AM  9     CONCERNS WITH THIS.

09:30AM  10           BUT I, I DON'T HAVE MUCH MORE TO ADD BEYOND THAT.

09:31AM  11                   THE COURT:  OKAY.

09:31AM  12                   MR. BOSTIC:  I THINK THE DEFENSE IS ASKING THAT THE

09:31AM  13    JURY RELY ON THIS AS AN AUTHORITY ON HOW HIV TESTING IS TO BE

09:31AM  14    CONDUCTED, AND IT'S NOT CLEAR TO ME THAT THE JURY, THE JURY IS

09:31AM  15    EQUIPPED TO INTERPRET THE DOCUMENT, AND IT'S CERTAINLY NOT

09:31AM  16    CLEAR THAT THE WITNESS IS IN A POSITION TO COMMENT ON ITS

09:31AM  17    CONTENT.

09:31AM  18           SO THOSE ARE MY CONCERNS.

09:31AM  19                   THE COURT:  OKAY.  THANK YOU.

09:31AM  20           GOOD MORNING.

09:31AM  21                   MR. FLYNN:  GOOD MORNING.  MAY I REMOVE MY MASK?

09:31AM  22                   THE COURT:  YES.

09:31AM  23                   MR. FLYNN:  JAMES FLYNN FOR MR. BALWANI.

09:31AM  24           AS TO 702, THE DEFENSE DOESN'T INTEND TO ASK THE WITNESS

09:31AM  25    ANYTHING THAT WOULD REQUIRE EXPERT ANALYSIS OR OPINION.  WE

09:31AM 1    INTEND TO ASK HER ABOUT THE CONTENTS OF THE DOCUMENTS, AS

09:31AM 2    YOUR HONOR HAS SEEN IN THE TRANSCRIPT OF THE HOLMES TRIAL.

09:31AM 3        SO WE DON'T THINK THERE IS 702 ISSUES WITH RESPECT TO

09:31AM 4    ASKING THIS WITNESS --

09:31AM 5            THE COURT:  PARDON ME FOR INTERRUPTING, MR. FLYNN.

09:31AM 6        WHY DON'T YOU FRAME FOR US WHAT IT IS THAT YOUR TEAM WOULD

09:31AM 7    LIKE TO DO.  TELL US WHAT THIS IS AND WHAT IT IS YOUR TEAM

09:31AM 8    WOULD LIKE TO DO.

09:32AM 9            MR. FLYNN:  SURE, YOUR HONOR.

09:32AM 10       THIS IS THE CDC'S ALGORITHM FOR HIV TESTING.  THE

09:32AM 11   GOVERNMENT INTENDS TO OFFER E.T.'S TEST RESULTS THAT SHOW FOUR

09:32AM 12   UNDIFFERENTIATED HIV ASSAY RESULTS, AND WE THINK THE JURY NEEDS

09:32AM 13   SOME MEANS FOR UNDERSTANDING WHAT THOSE FOUR TESTS WERE AND WHY

09:32AM 14   FOUR DIFFERENT TESTS WERE PERFORMED ON THAT SAMPLE.

09:32AM 15           THE COURT:  AND WOULD YOU CALL A WITNESS THEN TO

09:32AM 16   EXPLAIN THAT?

09:32AM 17           MR. FLYNN:  NO.  WE WOULD OFFER THIS DOCUMENT

09:32AM 18   THROUGH E.T., AND THIS DOCUMENT EXPLAINS THOSE TESTS.

09:32AM 19       AS TO 403 --

09:32AM 20           THE COURT:  LET ME, LET ME -- I BEG YOUR PARDON.

09:32AM 21           MR. FLYNN:  YES.

09:32AM 22           THE COURT:  AND WHAT IS THIS DOCUMENT?

09:32AM 23           MR. FLYNN:  THIS IS PART OF THE CDC'S RECOMMENDATION

09:32AM 24   FOR HOW LABORATORIES SHOULD APPROACH HIV TESTING.

09:32AM 25           THE COURT:  AND WHERE IS THIS DOCUMENT FOUND?

09:32AM 1          MR. FLYNN:  THIS WAS ON THE CDC'S WEBSITE.

09:32AM 2          THE COURT:  I THINK YOU ADVOCATE THAT IT'S A PUBLIC

09:32AM 3     RECORD.

09:32AM 4          MR. FLYNN:  IT IS UNDER 803(8).

09:32AM 5          THE COURT:  OKAY.  IS IT A PUBLIC RECORD?

09:32AM 6          MR. FLYNN:  IT IS.

09:32AM 7          THE COURT:  TELL ME WHY.

09:32AM 8          MR. FLYNN:  IT IS A DOCUMENT THAT SETS OUT THE

09:32AM 9     OFFICE'S ACTIVITIES, THE INVESTIGATION THAT THEY PERFORMED INTO

09:32AM 10    HIV TESTING, AND IT'S FACTUAL FINDINGS AND RECOMMENDATIONS WITH

09:33AM 11    RESPECT TO THE HIV TESTING.

09:33AM 12         THE COURT:  AND WHO PUBLISHES THIS DOCUMENT?

09:33AM 13         MR. FLYNN:  THE CDC, THE CENTER FOR DISEASE CONTROL.

09:33AM 14         THE COURT:  IS THAT A GOVERNMENT AGENCY?

09:33AM 15         MR. FLYNN:  IT IS A GOVERNMENT AGENCY.

09:33AM 16         THE COURT:  THANK YOU FOR ANSWERING THOSE QUESTIONS.

09:33AM 17      WHAT ELSE WOULD YOU LIKE ME TO KNOW?

09:33AM 18         MR. FLYNN:  SURE.

09:33AM 19      AS TO CONFUSION, WE RESPECTFULLY SUBMIT THAT THE CONFUSION

09:33AM 20    ARISES FROM THESE TEST RESULTS THAT HAVE FOUR UNEXPLAINED

09:33AM 21    DIFFERENT ASSAYS.

09:33AM 22      AND THE JURY, AS WE ALL ARE, ARE FAMILIAR WITH THE PROCESS

09:33AM 23    OF GETTING A SCREENING TEST AND A CONFIRMATORY TEST.  OVER THE

09:33AM 24    LAST TWO YEARS WE HAVE BECOME INTIMATELY FAMILIAR WITH THAT

09:33AM 25    CONCEPT.

09:33AM  1          WE THINK THE JURY COULD UNDERSTAND THIS IF GIVEN ONE PAGE

09:33AM  2     OF THIS EXHIBIT, AND SO WE DON'T THINK THAT IT INCREASES THE

09:33AM  3     CONFUSION.  IN FACT, IT MITIGATES THE CONFUSION ARISING FROM

09:33AM  4     THE EVIDENCE THAT THE GOVERNMENT SEEKS TO OFFER.

09:33AM  5          THE COURT:  WHO WOULD EXPLAIN THIS DOCUMENT THEN?

09:33AM  6     THE DOCUMENT COMES IN -- IF IT COMES IN AS A PUBLIC RECORD, AS

09:33AM  7     YOU SUGGEST, THEN WHAT DOES YOUR TEAM INTEND TO DO WITH IT IF

09:33AM  8     THE WITNESS, AS YOU CONCEDE, PERHAPS WILL NOT HAVE ANY

09:34AM  9     INFORMATION, KNOWLEDGE ABOUT ANYTHING ON THIS DOCUMENT, THEN

09:34AM  10    WHAT -- HOW DO YOU EXPLAIN IT AND WHAT IS THE RELEVANCE TO THE

09:34AM  11    JURY?  AREN'T YOU ASKING THE JURY THEN TO LOOK AT THIS DOCUMENT

09:34AM  12    AND TO SOMEHOW OPINE WITHOUT PROFESSIONAL INFORMATION ABOUT

09:34AM  13    WHAT IT SAYS TO INTERPRET?  HOW DO THEY DO THAT?

09:34AM  14         MR. FLYNN:  WE THINK AT LEAST THIS WOULD GET THE

09:34AM  15    JURY ONE STEP CLOSER TO UNDERSTANDING WHAT IS DISPLAYED ON THE

09:34AM  16    RESULTS, RIGHT.  THEY'RE NOT GOING TO UNDERSTAND THE RESULTS ON

09:34AM  17    THEIR OWN, AND SO THIS IS AT LEAST ONE TOOL TO GET THEM THERE.

09:34AM  18         WE THINK THE JURY COULD UNDERSTAND THIS LANGUAGE.  WE

09:34AM  19    DON'T THINK IT'S IN SUCH COMPLEX LANGUAGE, TECHNICAL LANGUAGE

09:34AM  20    THAT THE JURY COULDN'T UNDERSTAND, ESPECIALLY GIVEN THEIR

09:34AM  21    COMMON EXPERIENCE.

09:34AM  22         THE COURT:  SO THIS IS A ROSETTA STONE FOR THE

09:34AM  23    TESTING?  IS THAT WHAT THIS IS?

09:34AM  24         MR. FLYNN:  IT IS AT LEAST A GLOSSARY, IF YOU WILL,

09:34AM  25    FOR THE TEST RESULTS.

5847

09:34AM 1          THE COURT:  I SEE.  AND YOU OPINE THAT THE JURY WILL

09:34AM 2     BE ABLE TO LOOK AT THIS DOCUMENT AND TELL US WHAT IT IS?

09:34AM 3        DO YOU HAVE IT?

09:34AM 4          MR. FLYNN:  I DO, YOUR HONOR, YES.

09:35AM 5          THE COURT:  LET'S TAKE A LOOK AT IT.

09:35AM 6          MR. FLYNN:  (HANDING.)

09:35AM 7          THE COURT:  DO YOU HAVE A COPY OF THIS, MR. BOSTIC?

09:35AM 8          MR. BOSTIC:  I DO, YOUR HONOR.  THANK YOU.

09:35AM 9        (PAUSE IN PROCEEDINGS.)

09:35AM 10          THE COURT:  OKAY.  SO.  MR. FLYNN, THE JURY IS GOING

09:35AM 11     TO HAVE NO TROUBLE, IN PARAGRAPH 2, FOUR LINES DOWN, IN

09:35AM 12     INTERPRETING AND UNDERSTANDING THE FOLLOWING:  REACTIVE RESULTS

09:35AM 13     ON THE INITIAL ANTIGEN/ANTIBODY COMBINATION IMMUNOASSAY AND THE

09:35AM 14     HIV-1/HIV-2 ANTIBODY DIFFERENTIATION IMMUNOASSAY SHOULD BE

09:36AM 15     INTERPRETED AS POSITIVE FOR HIV-1 ANTIBODIES, HIV-2 ANTIBODIES,

09:36AM 16     OR HIV ANTIBODIES UNDIFFERENTIATED.

09:36AM 17          MR. FLYNN:  YOUR HONOR, WE THINK IT WILL TAKE THEM

09:36AM 18     AT LEAST ONE STEP FURTHER TO UNDERSTANDING THE TEST RESULTS

09:36AM 19     THAT THE GOVERNMENT IS ASKING THEM TO INTERPRET, AND THOSE TEST

09:36AM 20     RESULTS INCLUDE REACTIVE RESULTS ON THE INITIAL ANTIGEN,

09:36AM 21     ANTIBODY, COMBINATION IMMUNOASSAY.

09:36AM 22        AND SO THE JURY NEEDS SOME EXPLANATION FOR WHAT THAT MEANS

09:36AM 23     WHEN THE GOVERNMENT TELLS THEM THAT THERE WAS A REACTIVE

09:36AM 24     RESULT.

09:36AM 25          THE COURT:  SO DOES THIS LANGUAGE -- IT'S TECHNICAL

09:36AM 1     LANGUAGE, ISN'T IT?

09:36AM 2         MR. FLYNN:  IT IS SOMEWHAT TECHNICAL.

09:36AM 3         THE COURT:  I'M CURIOUS IF IT GETS THEM CLOSER OR

09:36AM 4     TAKES THEM FURTHER AWAY FROM COMPREHENSION SUCH THAT 403 SHOULD

09:36AM 5     BE INVOKED.

09:36AM 6         MR. FLYNN:  YOUR HONOR, I'M NOT SURE WHAT WOULD

09:36AM 7     ALLOW THEM TO UNDERSTAND THE RESULTS IN THE FIRST INSTANCE

09:36AM 8     WITHOUT SOME DEFINITION, ALBEIT TECHNICAL.

09:36AM 9     THE FLOW CHART ALSO HELPS FOR UNDERSTANDING HOW IT

09:36AM 10     PROCEEDED THROUGH THE TESTING.

09:36AM 11     I WOULD NOTE ALSO THAT THIS PROCESS WAS EXPLAINED TO

09:37AM 12     PATIENT E.T. BY THERANOS OVER THE PHONE, SO THERE MAY BE SOME

09:37AM 13     BASIS FOR HER UNDERSTANDING IT AS WELL WHEN ASKED ABOUT IT ON

09:37AM 14     THE STAND.

09:37AM 15         THE COURT:  THANK YOU.  SO WHAT -- SO IF THIS PAGE

09:37AM 16     COMES IN, IF IT IS ADMITTED, IT WILL BE DISPLAYED?

09:37AM 17         MR. FLYNN:  YES.

09:37AM 18         THE COURT:  THEN HOW DOES THIS INFORMATION GET

09:37AM 19     DISCUSSED THEN?  THE PATIENT PERHAPS WILL.  I DON'T KNOW.

09:37AM 20     MAYBE.

09:37AM 21         MR. FLYNN:  SHE MAY OR SHE MAY NOT.

09:37AM 22         THE COURT:  IF SHE DOESN'T?

09:37AM 23         MR. FLYNN:  AT THE VERY LEAST WE'LL ASK HER ABOUT

09:37AM 24     THE CONTENT, AS THE HOLMES COUNSEL DID IN THE HOLMES TRIAL, AND

09:37AM 25     COUNSEL WILL BE ABLE TO ARGUE INFERENCES IF ADMITTED IN CLOSING

09:37AM 1    ARGUMENT.  AND SO, FOR INSTANCE, WE CAN POINT TO THIS DOCUMENT

09:37AM 2    TO EXPLAIN THE RESULTS DEPICTED IN THE E.T. TEST RESULTS.

09:37AM 3          THE COURT:  WITH NO TESTIMONY SPECIFICALLY ABOUT

09:37AM 4    WHAT IT ACTUALLY MEANS?

09:37AM 5          MR. FLYNN:  BEYOND WHAT E.T. IS ABLE TO TESTIFY

09:37AM 6    HERSELF, THAT'S RIGHT, YOUR HONOR.

09:37AM 7          THE COURT:  OKAY.  THANK YOU.

09:37AM 8    GO AHEAD.  YOU ANSWERED MY QUESTIONS.

09:38AM 9    WHAT ELSE WOULD YOU LIKE ME TO KNOW?

09:38AM 10         MR. FLYNN:  SURE.

09:38AM 11    I THINK WITH RESPECT TO 702, THE ONE OTHER POINT I WOULD

09:38AM 12    MAKE IS THAT WE'RE ONLY ASKING THE WITNESS ABOUT HER

09:38AM 13    OBSERVATIONS BASED ON THE DOCUMENT.  THE SUPREME COURT HAS SAID

09:38AM 14    THAT IS OBSERVATION EVIDENCE THAT CAN COME IN THROUGH A LAY

09:38AM 15    WITNESS.  THAT'S CLARK VERSUS ARIZONA, 548 U.S. AT 757 TO -58.

09:38AM 16    AND THAT'S ALL I HAVE WITH RESPECT TO THOSE OBJECTIONS,

09:38AM 17    YOUR HONOR.

09:38AM 18         THE COURT:  OKAY.  THANK YOU.

09:38AM 19    MR. BOSTIC.

09:38AM 20         MR. BOSTIC:  JUST BRIEFLY, YOUR HONOR.

09:38AM 21    SO, FIRST OF ALL, TO BE CLEAR, THE GOVERNMENT IS NOT

09:38AM 22    OBJECTING ON A HEARSAY BASIS OR AUTHENTICITY BASIS.  I AGREE

09:38AM 23    WITH THE DEFENSE THAT THOSE CONDITIONS ARE SATISFIED.

09:38AM 24    BUT IF THE ARGUMENT IS THAT THIS DOCUMENT, THIS

09:38AM 25    COMPLICATED TECHNICAL DOCUMENT IS NECESSARY TO CURE CONFUSION

09:38AM  1    CREATED BY THE TEST RESULTS THEMSELVES, THAT'S WHERE I THINK I

09:38AM  2    PART WAYS WITH THE DEFENSE.

09:38AM  3        AND I'M LOOKING AT E.T.'S TEST RESULTS, AND THEY ARE QUITE

09:39AM  4    CLEAR, IN WHICH OF THE FOUR HIV RESULTS WERE REACTIVE AND WHICH

09:39AM  5    WERE NONREACTIVE AND NOT DETECTED.

09:39AM  6        AND, IN FACT, ON PAGE 3 OF THE LAB REPORT, FOR PATIENT

09:39AM  7    E.T., THERE'S A NOTE THAT SAYS HIV ANTIBODIES WERE NOT

09:39AM  8    CONFIRMED AND HIV RNA WAS NOT DEPICTED.  NO LABORATORY EVIDENCE

09:39AM  9    OF HIV-1 INFECTION.  FOLLOW-UP TESTING FOR HIV-2 SHOULD BE

09:39AM  10   PERFORMED IF CLINICALLY INDICATED.

09:39AM  11       I WOULD SAY THAT THAT LANGUAGE ACCOMPLISHES WHAT THE

09:39AM  12   DEFENSE IS TRYING TO ACCOMPLISH WITH THIS TECHNICAL DOCUMENT,

09:39AM  13   AND I THINK IN LIGHT OF THAT LANGUAGE, I'M NOT SURE THAT

09:39AM  14   THERE'S CONFUSION THAT NEEDS TO BE CURED.

09:39AM  15       BUT NOTHING TO ADD BEYOND THAT, YOUR HONOR.

09:39AM  16           THE COURT:  OKAY.  THANK YOU.

09:39AM  17       WELL, THAT'S A CONCERN THAT I HAVE.  AS I SAID EARLIER,

09:39AM  18   DOESN'T THIS CREATE MORE CONFUSION FOR THE JURY?

09:39AM  19           MR. FLYNN:  I DON'T THINK SO, YOUR HONOR.  I THINK

09:39AM  20   IT INTRODUCES TWO IMPORTANT CONCEPTS THAT ARE NOT CONTAINED IN

09:39AM  21   THE TEST RESULTS REPORT THAT THE GOVERNMENT JUST REFERENCED.

09:40AM  22       FIRST, IT'S THAT THERE IS A PROCESS, A SEQUENCE OF TESTS

09:40AM  23   THAT ARE TAKEN, AND THAT THERANOS FOLLOWED THAT PROCESS RATHER

09:40AM  24   THAN JUST TESTING FOUR DIFFERENT TESTS ALL AT ONCE, WHICH COULD

09:40AM  25   BE THE INFERENCE TAKEN FROM PAGE 2 OF THIS REPORT.

09:40AM   1        AND SECOND, THAT IN THOSE SEQUENCES, THERE'S FIRST A

09:40AM   2    SCREENING TEST AND THEN A CONFIRMATORY TEST.

09:40AM   3        AND WE DON'T THINK THAT THE JURY CAN UNDERSTAND THAT BASED

09:40AM   4    JUST ON THIS TEST RESULT REPORT THAT IS EXHIBIT 5483.

09:40AM   5        I WOULD NOTE THAT THE GOVERNMENT HAS NOT INDICATED THAT

09:40AM   6    THEY INTEND TO CALL ANY DOCTORS TO EXPLAIN THE TEST RESULT, THE

09:40AM   7    TREATING PHYSICIAN.

09:40AM   8        SO WE THINK WITHOUT THIS CDC DOCUMENT, THE GOVERNMENT'S

09:40AM   9    EVIDENCE IS CONFUSING AND NEEDS SOME MITIGATION FOR THE JURY.

09:40AM  10        THE COURT:  THANK YOU.

09:40AM  11        AND IN ARGUMENT YOU SAID YOUR COLLEAGUES WOULD BE ABLE TO

09:41AM  12    ARGUE, OR TURN TO THIS DOCUMENT AND MAKE SOME ARGUMENTS, BUT

09:41AM  13    THERE WON'T BE ANY TESTIMONY ABOUT THIS DOCUMENT.

09:41AM  14        MR. FLYNN:  THAT'S RIGHT, JUST THE CONTENTS OF THE

09:41AM  15    DOCUMENT.

09:41AM  16        AND I IMAGINE THOSE ARGUMENTS WOULD FOLLOW THE STATEMENTS

09:41AM  17    THAT I JUST MADE ABOUT THAT THERANOS FOLLOWED THE CDC PROCESS

09:41AM  18    AS REFLECTED IN THIS FLOW CHART, THAT THERE WAS A SCREENER AND

09:41AM  19    A CONFIRMATORY TEST, WHICH IS NOT SOMETHING THAT IS REFLECTED

09:41AM  20    IN JUST THE TEST RESULT 5483.

09:41AM  21        THE COURT:  WELL, MR. BOSTIC SUGGESTS, I THINK WITH

09:41AM  22    SOME ACCURACY, THAT WE CAN ALREADY DO THAT JUST BASED ON HER

09:41AM  23    TEST.

09:41AM  24        MR. FLYNN:  BASED ON HER TEST?

09:41AM  25        THE COURT:  YES, AND RESULTS.

09:41AM 1      MR. FLYNN:  I DON'T THINK THOSE TWO FACTS ARE

09:41AM 2  REFLECTED IN THE REPORT.  I DON'T THINK THERE'S ANYTHING IN

09:41AM 3  5483 THAT EXPLAINS THE SCREENER VERSUS CONFIRMATORY NATURE OF

09:41AM 4  THOSE TWO TESTS OR THE FACT THAT THEY'RE TESTED IN SEQUENCE AS

09:41AM 5  OPPOSED TO IN ONE BATCH AS MIGHT BE SUGGESTED BY PAGE 2 OF THE

09:41AM 6  REPORT.

09:41AM 7      THE COURT:  ALL RIGHT.  THANK YOU.

09:41AM 8    ANYTHING FURTHER, MR. BOSTIC?

09:41AM 9      MR. BOSTIC:  IF THAT'S THE CASE, THEN HOW IS THE

09:41AM 10 JURY TO CONCLUDE THAT THERANOS FOLLOWED THE SEQUENCE OR

09:42AM 11 PROCEDURE LAID OUT IN THE CDC DOCUMENT?

09:42AM 12     MR. FLYNN:  YOUR HONOR, BECAUSE THOSE TESTS ARE

09:42AM 13 LISTED ON PAGE 2 OF THE DOCUMENT, AND THAT'S A REASONABLE

09:42AM 14 INFERENCE THAT THE JURY COULD MAKE BASED ON THE COMBINATION OF

09:42AM 15 THESE TWO EXHIBITS, AND COUNSEL FOR THE DEFENSE COULD MAKE THAT

09:42AM 16 ARGUMENT FOR THAT INFERENCE.

09:42AM 17     THE COURT:  I'M SORRY, PAGE 2 OF THE DOCUMENT?

09:42AM 18     MR. FLYNN:  PAGE 2 OF THE TEST RESULT INDICATES THE

09:42AM 19 FOUR TESTS THAT WERE PERFORMED.

09:42AM 20   WE THINK A COMBINATION OF THAT EVIDENCE AND PAGE 9 OF

09:42AM 21 20683 COUNSEL CAN MAKE A REFERENCE INFERENCE ARGUMENT AND THE

09:42AM 22 JURY COULD TAKE THAT INFERENCE.

09:42AM 23     THE COURT:  OKAY.

09:42AM 24   ANYTHING FURTHER?

09:42AM 25     MR. BOSTIC:  NO.  SUBMIT IT, YOUR HONOR.

5853

| | | |
|---|---|---|
| 09:42AM | 1 | THE COURT:  MR. FLYNN? |
| 09:42AM | 2 | MR. FLYNN:  THANK YOU VERY MUCH. |
| 09:42AM | 3 | THE COURT:  ANYTHING FURTHER? |
| 09:42AM | 4 | MR. FLYNN:  NO.  THANK YOU. |
| 09:42AM | 5 | THE COURT:  ALL RIGHT.  THANK YOU FOR THIS AND THE |
| 09:42AM | 6 | CONVERSATION. |
| 09:42AM | 7 | IF THE DEFENSE CHOOSES TO ADVANCE THIS FOR ADMISSION, THE |
| 09:43AM | 8 | COURT, OVER THE GOVERNMENT'S OBJECTION, WOULD PERMIT IT.  FOR |
| 09:43AM | 9 | THE REASONS STATED BY THE DEFENSE, I'LL PERMIT IT.  AND I'LL |
| 09:43AM | 10 | NOTE THOSE REASONS ONLY. |
| 09:43AM | 11 | MR. BOSTIC:  UNDERSTOOD. |
| 09:43AM | 12 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:43AM | 13 | WHAT'S NEXT? |
| 09:43AM | 14 | MR. COOPERSMITH:  THANK YOU, YOUR HONOR. |
| 09:43AM | 15 | I FEEL LIKE A MASTER OF CEREMONIES HERE.  I APPRECIATE THE |
| 09:43AM | 16 | TIME. |
| 09:43AM | 17 | THERE'S JUST A COUPLE OF NOTABLY SMALL ISSUES WITH THE |
| 09:43AM | 18 | SAME WITNESS, PATIENT E.T., DIFFERENT FROM WHAT YOU JUST HEARD. |
| 09:43AM | 19 | SO THE FIRST ISSUE IS THAT THERE'S AN EXHIBIT THAT THE |
| 09:43AM | 20 | GOVERNMENT WISHES TO ADMIT, AS I UNDERSTAND IT, AND IT'S |
| 09:43AM | 21 | EXHIBIT 5484. |
| 09:43AM | 22 | AND I'M TRYING TO UNDERSTAND THE BEST WAY TO GIVE THAT TO |
| 09:43AM | 23 | YOUR HONOR.  I DON'T THINK I HAVE ANOTHER COPY, BUT MAYBE WE |
| 09:43AM | 24 | CAN DISPLAY IT ON THE SCREEN, OR I SUPPOSE I COULD HAND UP MY |
| 09:43AM | 25 | COPY. |

09:44AM 1          DO WE HAVE ANOTHER COPY?

09:44AM 2               THE COURT:  WE'RE GETTING ONE.  I THINK THE

09:44AM 3     GOVERNMENT IS GOING TO PROVIDE A COPY.

09:44AM 4               MR. COOPERSMITH:  VERY HELPFUL, YOUR HONOR.  THANK

09:44AM 5     YOU.

09:44AM 6               MR. BOSTIC:  MAY I APPROACH, YOUR HONOR?

09:44AM 7               THE COURT:  YES.  THANK YOU.

09:44AM 8               MR. BOSTIC:  (HANDING.)

09:44AM 9               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.  THAT'S

09:44AM 10    VERY COURTEOUS.

09:44AM 11         SO WHEN YOU -- WHAT THIS EXHIBIT IS IS IN -- AND IT'S

09:44AM 12    5484.

09:44AM 13         SO PATIENT E.T., BACK IN 2014 I BELIEVE IT WAS, SHE HAD AN

09:44AM 14    HIV TEST -- ACTUALLY 2015, MAY 2015, SHE HAD AN HIV TEST, AND

09:44AM 15    THE COURT JUST HEARD SOME INFORMATION ABOUT THAT.

09:44AM 16         AND THEN LAST YEAR, RIGHT BEFORE THE OTHER TRIAL STARTED

09:44AM 17    IN THE SUMMER, SHE WENT AND GOT A TEST AT THIS LABORATORY, THE

09:44AM 18    CONTRA COSTA HEALTH SERVICES LABORATORY.  I THINK SHE TESTIFIED

09:45AM 19    THAT THAT WAS AT THE RECOMMENDATION OF AN FBI AGENT.

09:45AM 20         AND SHE WAS -- SHE TESTIFIED THAT SHE WAS TRYING TO GET

09:45AM 21    ANOTHER PIECE OF EVIDENCE FOR THIS CASE.

09:45AM 22         AND THE ISSUE, THOUGH, IS THAT THE THERANOS TEST BACK IN

09:45AM 23    2015 WAS A VENOUS DRAW BLOOD TEST FROM THE ARM RUN ON

09:45AM 24    COMMERCIAL EQUIPMENT, AND THAT LED TO THE VARIOUS TESTS THAT

09:45AM 25    THE COURT HAS JUST HEARD ABOUT FROM MY COLLEAGUE, MR. FLYNN.

09:45AM  1    BUT THEN THIS TEST THAT WE'RE TALKING ABOUT IN 2021, WHICH

09:45AM  2    IS EXHIBIT 5484, IT'S A DIFFERENT TYPE OF TEST, IT'S A CHEEK

09:45AM  3    SWAB TEST, AND IT SAYS WHAT THE EQUIPMENT IS.  IT'S ON

09:45AM  4    SOMETHING CALLED THE ALERE, A-L-E-R-E, DETERMINE HIV RAPID TEST

09:45AM  5    KIT.

09:45AM  6         SO IT WAS A CHEEK SWAB TEST, A DIFFERENT TYPE OF TEST.

09:45AM  7         AND THEN IN ADDITION, WHEN YOU LOOK AT THE EXHIBIT,

09:46AM  8    THERE'S A CHECK BOX WITH THE WORD "NEGATIVE" AND THAT'S WHAT

09:46AM  9    SHE WAS, NEGATIVE.

09:46AM 10         AND THEN IT SAYS, NEXT TO THAT, EVIDENCE OF HIV ANTIGEN OR

09:46AM 11    ANTIBODY WERE NOT DETECTED.

09:46AM 12         AND THEN IT SAYS, A NEGATIVE TEST RESULT ONLY REFLECTS THE

09:46AM 13    HIV ANTIGEN/ANTIBODY STATUS ON THE DATE THAT THE SPECIMEN WAS

09:46AM 14    OBTAINED FROM THE ABOVE NAMED PERSON.

09:46AM 15         SO WE HAVE NO CONTEXT HERE.  WE HAVE NO EXPERT TESTIMONY.

09:46AM 16    WE HAVE NO PHYSICIAN WHO COULD SAY THAT THE CHEEK SWAB TEST IN

09:46AM 17    2021, YOU KNOW, SOME SIX YEARS LATER AFTER THE THERANOS TEST,

09:46AM 18    IS IN ANY WAY AN APPLES-TO-APPLES COMPARISON, AND WE JUST DON'T

09:46AM 19    KNOW THAT.

09:46AM 20         SO TO LET THE GOVERNMENT INTRODUCE THIS AS A CONFIRMATION

09:46AM 21    THAT THE THERANOS TEST WAS FALSE WE THINK WOULD BE IMPROPER,

09:46AM 22    BECAUSE OUR UNDERSTANDING FROM READING THE DISCOVERY AND THE

09:46AM 23    WITNESS'S TESTIMONY IS SHE CAN'T SAY ANYTHING ABOUT THAT ISSUE.

09:46AM 24         SO WE'RE -- WITHOUT MORE, WITHOUT FOUNDATION, WE DON'T

09:47AM 25    THINK 5484 CAN COME IN.  THAT'S THE FIRST ISSUE.

5856

09:47AM 1     THERE'S ANOTHER ISSUE, BUT I CAN PAUSE IF THE COURT WOULD

09:47AM 2     LIKE ME TO.

09:47AM 3          THE COURT:  WELL, WHY DON'T YOU TELL US THE SECOND

09:47AM 4     ISSUE?

09:47AM 5          MR. COOPERSMITH:  SURE.  THE OTHER ISSUE I THINK IS

09:47AM 6     SIMPLER.

09:47AM 7     THERE'S TESTIMONY FROM THIS WITNESS IN THE FIRST TRIAL,

09:47AM 8     AND I JUST WANT TO FLAG IT EXACTLY.

09:47AM 9     SO AT PAGE 6757, 6757, OF THE TRANSCRIPT OF THE TRIAL IN

09:47AM 10    THE HOLMES CASE, THE GOVERNMENT, MR. BOSTIC, ASKED A QUESTION

09:47AM 11    ON LINE 18:  "QUESTION, BASED ON YOUR MEDICAL HISTORY, ARE YOU

09:47AM 12    AWARE OF ANY REASON WHY HIV ANTIBODIES WOULD BE PRESENT IN YOUR

09:47AM 13    BLOOD?"

09:47AM 14    AND HER ANSWER WAS "NO."

09:47AM 15    RIGHT?

09:47AM 16    WHEN YOU LOOK AT THE DISCOVERY, THERE IS A REASON.  AND WE

09:47AM 17    HAVE THAT FROM DR. ASIN'S DISCOVERY AND HER DISCOVERY.  SHE

09:47AM 18    CHOSE TO GET THIS TEST, AND THERE'S A REASON.

09:48AM 19    AND I DON'T WANT TO GET INTO, IN CROSS-EXAMINATION, YOU

09:48AM 20    KNOW, HER PRIVATE LIFE OR HER PARTNERS OR ANYTHING LIKE THAT.

09:48AM 21    I THINK THAT'S NOT REALLY SOMETHING THAT WOULD BE APPROPRIATE

09:48AM 22    IN THIS COURT.

09:48AM 23    BUT BECAUSE THE GOVERNMENT LACKS A FOUNDATION FOR THE

09:48AM 24    QUESTION, WE DON'T THINK THEY SHOULD BE ALLOWED TO ASK A

09:48AM 25    QUESTION ABOUT WHETHER -- IS THERE ANY REASON WHY, YOU KNOW,

5857

09:48AM 1    YOU WOULD WANT TO GET AN HIV TEST, OR IS THERE ANY REASON WHY

09:48AM 2    YOU WOULD HAVE THESE ANTIBODIES IN YOUR BLOOD, AND SHE WOULD

09:48AM 3    SAY NO?

09:48AM 4        WE HAVE -- THERE IS NO FOUNDATION FOR THE QUESTION.

09:48AM 5        AND IN ORDER TO REALLY UNPACK THAT, WE WOULD HAVE TO GET

09:48AM 6    INTO THINGS I DON'T THINK ANYONE REALLY WANTS TO DO, WHICH IS

09:48AM 7    TO EXPLORE WHY WOULD THIS PERSON IN 2015 WANT TO CHOOSE TO GET

09:48AM 8    AN HIV TEST?

09:48AM 9        I DON'T WANT TO PRY INTO HER PRIVATE LIFE, BUT THAT'S THE

09:48AM 10   PROBLEM WITH THE QUESTION, IT JUST LACKS FOUNDATION.

09:48AM 11           THE COURT:  YOU SAID WE WOULD HAVE TO.

09:48AM 12           MR. COOPERSMITH:  WELL, I MEAN HAVE TO.

09:48AM 13       I DON'T THINK I WOULD DO IT, RIGHT, BECAUSE I DON'T THINK

09:49AM 14   IT'S HELPFUL.  I DON'T THINK IT'S -- IT'S EMBARRASSING FOR THE

09:49AM 15   WITNESS.  I JUST DON'T WANT TO --

09:49AM 16           THE COURT:  IT'S POTENTIALLY DANGEROUS.

09:49AM 17           MR. COOPERSMITH:  WHAT?

09:49AM 18           THE COURT:  IT'S POTENTIALLY DANGEROUS.

09:49AM 19           MR. COOPERSMITH:  SURE, YOUR HONOR.  ALL OF THAT.

09:49AM 20       I JUST DON'T THINK THAT IT'S SOMETHING THAT I WANT TO --

09:49AM 21   IT'S SOMETHING THAT -- MY GOAL IS NOT TO EMBARRASS A PERSON ON

09:49AM 22   THE WITNESS STAND.

09:49AM 23       THE PROBLEM, THOUGH, ARISES NOT FROM THAT, IT ARISES FROM

09:49AM 24   THE QUESTION, WHICH, AGAIN, DOESN'T HAVE A FOUNDATION, BECAUSE

09:49AM 25   MR. BOSTIC KNOWS, JUST LIKE I KNOW FROM READING THE SAME

09:49AM 1    INTERVIEW MEMOS AND TESTIMONY, THAT THERE WAS A REASON, RIGHT,

09:49AM 2    THAT SHE CHOSE TO GET THIS TEST.

09:49AM 3         SO THAT'S OUR POSITION ON THAT PARTICULAR POINT.

09:49AM 4              THE COURT:  OKAY.

09:49AM 5         MR. BOSTIC.

09:49AM 6              MR. BOSTIC:  LET ME RESPOND, IF I COULD, TO THE

09:49AM 7    SECOND POINT FIRST BECAUSE THAT'S WHAT IS ON MY MIND.

09:49AM 8              THE COURT:  SURE.

09:49AM 9              MR. BOSTIC:  MR. COOPERSMITH JUST PRESENTED TWO

09:49AM 10   VERSIONS OF GOVERNMENT QUESTIONS TO THE COURT WHICH WERE VERY

09:49AM 11   DIFFERENT FROM EACH OTHER.

09:49AM 12        HE READ IN THE TRANSCRIPT A QUESTION ABOUT WHETHER THIS

09:49AM 13   WITNESS WOULD BE AWARE OF ANY REASON WHY HIV ANTIBODIES WOULD

09:50AM 14   BE PRESENT IN HER SYSTEM.

09:50AM 15        THAT QUESTION, I BELIEVE, WAS ASKED AFTER THE POSITIVE

09:50AM 16   RESULT HAD BEEN INTRODUCED INTO EVIDENCE.

09:50AM 17        MR. COOPERSMITH THEN BLENDED THAT INTO A DISCUSSION ABOUT

09:50AM 18   THE REASON FOR THE WITNESS GETTING THE HIV TEST IN THE FIRST

09:50AM 19   PLACE.  THAT'S A VERY DIFFERENT THING.

09:50AM 20        SO THOSE TWO QUESTIONS ARE NOT THE SAME, THE QUESTION OF

09:50AM 21   CAN YOU EXPLAIN THIS POSITIVE RESULT VERSUS WHY DID YOU SEEK

09:50AM 22   THE TESTING IN THE FIRST PLACE ARE TWO ABSOLUTELY DIFFERENT

09:50AM 23   THINGS.

09:50AM 24        AS TO THAT SECOND POINT, THE REASON FOR GETTING THE TEST,

09:50AM 25   I DON'T THINK IT'S RELEVANT TO THE WITNESS'S TESTIMONY, I DON'T

09:50AM  1    THINK THE JURY NEEDS TO HEAR ABOUT IT.  I THINK IT SHOULD BE

09:50AM  2    EXCLUDABLE UNDER 403 IF THE DEFENSE INTENDED TO COVER IT, AND

09:50AM  3    I'M SOMEWHAT DISTURBED THAT WE'RE EVEN DISCUSSING IT IN OBLIQUE

09:50AM  4    TERMS ON THE OPEN RECORD IF I'M HONEST.

09:50AM  5         BUT THAT'S MY POSITION ON THAT.

09:50AM  6         BUT THERE WAS A BASIS FOR THE QUESTION.  THE QUESTION WAS,

09:51AM  7    WAS THE WITNESS AWARE OF ANY REASON WHY THIS RESULT MIGHT HAVE

09:51AM  8    BEEN WHAT IT WAS, AND THE ANSWER WAS A SIMPLE NO, AND SO I

09:51AM  9    THINK THAT'S RELEVANT.

09:51AM 10         I CAN MOVE ON TO THE FIRST POINT OR WE CAN STAY ON THIS.

09:51AM 11              THE COURT:  SURE.  GO AHEAD.

09:51AM 12              MR. BOSTIC:  ON THE FIRST POINT, YOUR HONOR, SO AT

09:51AM 13    VARIOUS TIMES THROUGHOUT THE TRIAL THERE HAS BEEN EVIDENCE OF

09:51AM 14    TESTING THAT HAS BEEN CONDUCTED OUTSIDE OF THERANOS, TESTING

09:51AM 15    CONDUCTED BY CONVENTIONAL LABS, TESTS THAT THE WITNESSES WERE

09:51AM 16    AWARE OF.

09:51AM 17         THE DEFENSE HAS ALSO ELICITED TESTIMONY FROM WITNESSES

09:51AM 18    ABOUT OTHER TESTING THAT THEY HAD DONE AROUND THE SAME TIME AS

09:51AM 19    THE THERANOS TESTS.

09:51AM 20         I DON'T THINK THAT IN ANY OF THOSE CASES THERE HAS BEEN AN

09:51AM 21    ANALYSIS OF THE METHODS USED BY THAT OUTSIDE LAB OR WHETHER

09:51AM 22    THEY SUFFICIENTLY MATCHED UP TO THE THERANOS METHODS.  IT'S

09:51AM 23    BEEN ENOUGH THAT THOSE TESTS WERE TESTING FOR THE SAME THING.

09:51AM 24         THAT'S TRUE FOR THESE HIV TESTS AS WELL.  THEY MAY USE

09:52AM 25    DIFFERENT METHODS TO TEST FOR THE SAME THING, BUT THEY BOTH

09:52AM 1    TEST FOR THE PRESENCE OF HIV ANTIGENS OR ANTIBODIES.

09:52AM 2         AND THE FACTS THAT THOSE ANTIGENS WERE NOT DETECTED IN

09:52AM 3    2021 IS CERTAINLY PROBATIVE OF WHETHER OR NOT THE THERANOS TEST

09:52AM 4    WAS ACCURATE WHEN IT SAID THAT THEY WERE PRESENT IN 2015.

09:52AM 5         AND I THINK, IF NECESSARY, THE COURT COULD TAKE JUDICIAL

09:52AM 6    NOTICE OF THE FACT THAT THERE IS, GENERALLY SPEAKING, NO CURE

09:52AM 7    FOR HIV, AND THAT ONCE SOMEONE HAS CONTRACTED THAT ILLNESS, IT

09:52AM 8    STAYS PRESENT IN THEIR SYSTEM.

09:52AM 9         SO I THINK MR. COOPERSMITH'S OBJECTION ABOUT WHETHER THIS

09:52AM 10   IS A PERFECT APPLES-TO-APPLES COMPARISON GOES TO WEIGHT RATHER

09:52AM 11   THAN ADMISSIBILITY.

09:52AM 12        I'M HAPPY TO ANSWER ANY OTHER QUESTIONS THAT THE COURT

09:52AM 13   MIGHT HAVE.

09:52AM 14             THE COURT:  THANK YOU.

09:52AM 15             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:52AM 16        I THINK ON THAT POINT, WITH REGARD TO EXHIBIT 5484, IT'S

09:52AM 17   ESSENTIALLY A 702 PROBLEM, RIGHT, BECAUSE THE WITNESS CAN'T

09:53AM 18   SAY, BECAUSE MY UNDERSTANDING IS THAT SHE DOESN'T KNOW, SHE'S

09:53AM 19   NOT A PHYSICIAN OR A SCIENTIST, THAT IT IS AN APPROPRIATE

09:53AM 20   COMPARISON WITH THE TEST FROM FIVE YEARS EARLIER.

09:53AM 21        AND SHE -- SO THERE'S NO, THERE'S NO CONTEXT, THERE'S NO

09:53AM 22   BASIS FOR PUTTING IT IN.

09:53AM 23        AND SHE IS, LIKE, AN ACTUAL COUNT OF THIS INDICTMENT WHERE

09:53AM 24   THE GOVERNMENT IS TRYING TO USE THIS TEST AS AFFIRMATIVE

09:53AM 25   EVIDENCE THAT -- OF THE ELEMENT OF FALSITY IN THE WIRE FRAUD

09:53AM  1    CHARGE THAT SHE'S THE SUBJECT OF.

09:53AM  2         SO I THINK IN THAT SITUATION, THE GOVERNMENT REALLY CAN'T

09:53AM  3    JUST PUT IN A TEST AND, WITH NO BASIS WHERE THE WITNESS CAN'T

09:53AM  4    SAY ANYTHING OTHER THAN, WELL, SHE -- I THINK SHE COULD SAY IT

09:53AM  5    WAS A DIFFERENT TEST.  SHE TESTIFIED BEFORE IT WAS A CHEEK SWAB

09:53AM  6    TEST, AND WE KNOW THAT.

09:53AM  7         BUT WE DON'T KNOW ANYTHING ABOUT WHAT THIS TEST WAS AND

09:53AM  8    HOW IT MIGHT COMPARE, OR NOT, TO THE THERANOS TEST.

09:53AM  9         AND I THINK THAT'S A PROBLEM, SO ESSENTIALLY A 702

09:53AM 10    PROBLEM.

09:53AM 11              THE COURT:  ANYTHING FURTHER ON THE 702 ISSUE?

09:54AM 12              MR. BOSTIC:  NO, YOUR HONOR, ONLY TO SAY THAT THIS

09:54AM 13    IS -- WE'RE NOT SEEKING EXPERT TESTIMONY FROM THIS WITNESS.

09:54AM 14         THE LAB RESULTS SPEAK FOR THEMSELVES.  ONE SAYS POSITIVE,

09:54AM 15    THE OTHER SAYS NEGATIVE.

09:54AM 16         THE DEFENSE CAN ARGUE THAT THAT'S NOT CONCLUSIVE, OR THEY

09:54AM 17    CAN HIGHLIGHT THE DIFFERENCE IN THE METHODS THAT WERE USED.

09:54AM 18         BUT THERE'S NO REASON THAT THE JURY ISN'T EQUIPPED TO

09:54AM 19    WEIGH THAT EVIDENCE AND MAKE A DETERMINATION AS TO WHETHER THE

09:54AM 20    EVIDENCE SUPPORTS THE FINDING THAT THE THERANOS TEST WAS

09:54AM 21    INACCURATE OR NOT.

09:54AM 22         I'LL ALSO JUST NOTE THAT I DON'T BELIEVE IT'S A

09:54AM 23    REQUIREMENT FOR THE GOVERNMENT TO PROVE THAT THESE INDIVIDUAL

09:54AM 24    TEST RESULTS WERE INACCURATE IN ORDER FOR THE JURY TO RETURN A

09:54AM 25    CONVICT ON A COUNT.  NOWHERE IN THE ELEMENTS FOR WIRE FRAUD IS

09:54AM   1    IT REQUIRED THAT THE CONTENT OF THE WIRE ACTUALLY CONTAINED

09:54AM   2    FALSE INFORMATION.

09:54AM   3         SO I THINK THAT, THAT IS KIND OF A DISTRACTION AND AN

09:54AM   4    ARGUMENT THAT DOESN'T REALLY MAKE A DIFFERENCE TO THE

09:55AM   5    ADMISSIBILITY OF THIS EVIDENCE.

09:55AM   6             MR. COOPERSMITH:  AND ON THAT POINT, YOUR HONOR, SO

09:55AM   7    THE GOVERNMENT IS PRESENTING THIS PARTICULAR PATIENT.  SHE IS A

09:55AM   8    COUNT.  AND THEY'RE -- IT'S PART OF THEIR EVIDENTIARY

09:55AM   9    PRESENTATION ABOUT FALSITY.

09:55AM  10         THEY'RE USING THIS, WE CALL IT AN ANECDOTE THE COURT MAY

09:55AM  11    REMEMBER, TO SHOW THAT THERE IS SOME PROBLEM WITH THERANOS

09:55AM  12    TESTING, IN THIS CASE COMMERCIAL TESTING, NOT EVEN THERANOS

09:55AM  13    TECHNOLOGY TESTING, AND THAT'S THE REASON FOR THE EVIDENCE, AND

09:55AM  14    THERE'S NO OTHER REASON.

09:55AM  15         SO THIS IS EVIDENCE THAT IS A PART OF THEIR, THEIR

09:55AM  16    BUILDING BLOCKS, YOU KNOW, TO SHOW THAT THERE IS FALSITY HERE

09:55AM  17    AND THERE'S INACCURACY IN THERANOS TESTING, SO THAT'S THE ONLY

09:55AM  18    REASON FOR THE EVIDENCE TO COME IN, I THINK, FROM THE

09:55AM  19    GOVERNMENT'S PERSPECTIVE.

09:55AM  20             THE COURT:  OKAY.  ALL RIGHT.

09:55AM  21         WELL, THANK YOU.  THANK YOU FOR THAT.

09:55AM  22         I LOOK AT THIS AND I DO SEE THAT IT DOES, AS

09:55AM  23    MR. COOPERSMITH SUGGESTS, AND MR. BOSTIC RECOGNIZES, IT WAS A

09:56AM  24    DIFFERENT FORMAT OF COLLECTION OF THE SWAB, A CHEEK SWAB, AND

09:56AM  25    THE WITNESS WOULD TESTIFY ABOUT HER, IN 2021, AUGUST, GETTING

09:56AM 1    THE CHEEK SWAB AND THEN WOULD REPORT ON THE RESULTS.

09:56AM 2        I DO THINK THAT THERE IS SOME RELEVANCE TO THIS.  I DON'T

09:56AM 3    SEE IT AS A 702 ISSUE.  I DO THINK IT'S REALLY A WEIGHT ISSUE.

09:56AM 4        AND YOU CERTAINLY WOULD HAVE AN OPPORTUNITY TO, IF YOU

09:56AM 5    WISH, MR. COOPERSMITH, YOUR TEAM, TO CALL OUT TO THE JURY

09:56AM 6    THROUGH THIS WITNESS OR OTHERWISE ARGUE THAT IT IS A DIFFERENT

09:56AM 7    TYPE OF TEST, AND THAT THE JURY SHOULDN'T CONSIDER IT FOR THAT

09:56AM 8    REGARD.

09:56AM 9        AND I JUST, I THINK IT'S -- ANY UNFAIR PREJUDICE HERE IS

09:56AM 10   OUTWEIGHED BY THE PROBATIVE VALUE OF THIS.

09:57AM 11       AND THE UNFAIR PREJUDICE IS, I DON'T SEE IT AS A REAL -- I

09:57AM 12   SEE IT AS A WEIGHT ISSUE, REALLY, AND THE JURY CAN ACCEPT IT

09:57AM 13   AND RECOGNIZE, AS YOU POINT OUT, IT'S A DIFFERENT TYPE OF A

09:57AM 14   TEST, AND DO WITH IT AS THEY WILL.  I DON'T SEE IT AS A REAL

09:57AM 15   PROBLEM IN THAT REGARD.

09:57AM 16       SO I'LL ALLOW THIS TO COME IN.

09:57AM 17       IN REGARDS TO THE QUESTION AND ASKING, IF THERE IS A

09:57AM 18   QUESTION, DO YOU HAVE ANY SUSPICION WHY YOU THOUGHT YOU HAD HIV

09:57AM 19   OR YOU WOULD REPORT A TEST, THAT'S A VERY, VERY PRECARIOUS

09:57AM 20   QUESTION TO POSE TO SOMEBODY.

09:57AM 21       AND IF YOU WANTED, OR SOMEONE FROM YOUR TEAM WANTED, TO

09:57AM 22   ASK THAT QUESTION, AND IF THERE WERE AN OBJECTION, THEN THE

09:57AM 23   COURT WOULD RULE IN FRONT OF THE JURY AFTER THAT QUESTION IS

09:57AM 24   POSED.

09:57AM 25           MR. COOPERSMITH:  RIGHT.

5864

09:57AM 1          JUST TO BE CLEAR, WE'RE NOT PROPOSING THAT WE'RE GOING TO

09:58AM 2     ASK THAT TYPE OF QUESTION OF PATIENT E.T.  THAT'S NOT OUR

09:58AM 3     INTENTION.

09:58AM 4          IT'S REALLY THE FLIP SIDE OF THAT, WE THINK, BECAUSE THAT

09:58AM 5     WOULD BE IMPROPER, BUT PERHAPS NECESSARY TO REALLY UNDERSTAND

09:58AM 6     WHAT WAS GOING ON HERE.

09:58AM 7          THE GOVERNMENT SIMPLY SHOULDN'T BE ABLE TO ASK THE SAME

09:58AM 8     QUESTION THAT THEY ASKED IN THE LAST TRIAL WITHOUT OBJECTION,

09:58AM 9     WHICH WAS, "IS THERE ANY REASON THAT THIS PATIENT WOULD BELIEVE

09:58AM 10    THAT THERE WAS ANY REASON TO THINK THAT THERE WOULD EVER BE

09:58AM 11    THESE ANTIBODIES IN HER BLOOD OR IN HER SYSTEM?"

09:58AM 12         AND THAT QUESTION IS WHAT WOULD TRIGGER THE NEED FOR OTHER

09:58AM 13    THINGS.  AS I SAID, WE'RE NOT INTENDING TO DO THAT, BUT THAT'S

09:58AM 14    THE CONUNDRUM, RIGHT.

09:58AM 15              THE COURT:  WELL, THAT'S WHAT THE QUESTION WOULD BE,

09:58AM 16    "ANY REASON IN YOUR MIND?"

09:58AM 17         AND SHE COULD SAY, "NO, NO REASON IN MY MIND."

09:58AM 18         YOU MIGHT HAVE A DIFFERENT OPINION BASED ON WHAT YOU KNOW

09:58AM 19    OF HER AS TO WHY SHE SHOULD BE CONCERNED ABOUT THAT.

09:59AM 20         BUT SHE'S EXPRESSING WHAT IS IN HER MENTAL IMPRESSION, AND

09:59AM 21    THAT'S WHAT IS RELEVANT, HER MENTAL IMPRESSION, NOT SOMEONE

09:59AM 22    ELSE'S MENTAL IMPRESSION ABOUT, WELL, I THINK YOU SHOULD BE

09:59AM 23    CONCERNED BECAUSE OF WHATEVER ELSE IT IS.

09:59AM 24         SO THAT'S THE -- AND I SUPPOSE, TO GO FURTHER INTO THAT,

09:59AM 25    WELL, ISN'T IT A FACT THAT YOU, X, Y, Z, AND GET INTO PERSONAL

09:59AM 1       LIVES.

09:59AM 2             I THINK THAT'S VERY RISKY AND THAT IS VERY THIN ICE.

09:59AM 3                   MR. COOPERSMITH:  I AGREE, YOUR HONOR, AND THAT'S

09:59AM 4       WHY WE DON'T INTEND TO DO THAT.

09:59AM 5                   THE COURT:  WELL, I APPRECIATE THAT.  I APPRECIATE

09:59AM 6       THAT RECOGNITION.

09:59AM 7             BUT I THINK THE INQUIRY AS TO HER, FROM HER STATE OF MIND,

09:59AM 8       HER MINDSET, IF THERE'S ANY REASON THAT SHE BELIEVES, THAT'S

09:59AM 9       PART OF HER IMPRESSION, AND I THINK THE WITNESS CAN TESTIFY

09:59AM 10      ABOUT THAT.

09:59AM 11                  MR. COOPERSMITH:  RIGHT.

09:59AM 12            IT'S JUST THAT BECAUSE WE CAN'T, YOU KNOW, WITH ANY SENSE

09:59AM 13      OF DECORUM, COULD NOT EVER EXPLORE THAT TOPIC, THEN WE'RE SORT

09:59AM 14      OF LEFT OUT WITHOUT ANY REMEDY FOR THE GOVERNMENT'S QUESTION,

10:00AM 15      WHICH IS SHE'S BEING ABLE TO STATE HER VIEW ABOUT THAT ISSUE,

10:00AM 16      BUT THERE'S NO WAY TO EXPLORE THAT BECAUSE IT'S JUST NOT

10:00AM 17      APPROPRIATE, RIGHT?

10:00AM 18            SO I JUST THINK THE FIRST PROBLEM IS SINCE WE KNOW -- THE

10:00AM 19      PROBLEM IS THAT THERE'S NO GOOD FAITH BASIS FOR THE QUESTION,

10:00AM 20      RIGHT?  THERE'S NO FOUNDATION.

10:00AM 21            THE GOVERNMENT KNOWS EXACTLY, JUST AS I DO, WHAT THE

10:00AM 22      REASON IS THAT SHE GOT THE TEST IN THE FIRST PLACE.

10:00AM 23            SO THAT'S THE PROBLEM WITH THE WHOLE SITUATION.

10:00AM 24                  THE COURT:  MR. BOSTIC.

10:00AM 25                  MR. BOSTIC:  THAT'S NOT WHAT THE QUESTION IS ABOUT

10:00AM 1     THOUGH, YOUR HONOR.

10:00AM 2         I'M NOT SURE HOW ELSE TO SAY IT, BUT THE QUESTION IS

10:00AM 3     ABOUT, LOOKING AT THIS POSITIVE RESULT, DO YOU HAVE AN

10:00AM 4     EXPLANATION FOR WHY THERE MIGHT HAVE BEEN -- AND

10:00AM 5     MR. COOPERSMITH HAS THE TRANSCRIPT -- BUT WHY YOU MIGHT HAVE

10:00AM 6     HAD HIV ANTIBODIES IN YOUR SYSTEM?

10:00AM 7         AND THE ANSWER FROM THE WITNESS WAS, NO.  THAT WAS AN

10:00AM 8     HONEST ANSWER, I BELIEVE.

10:00AM 9         THE QUESTION OF WHY SHE SOUGHT THE TEST IN THE FIRST PLACE

10:01AM 10    IS A DIFFERENT QUESTION.

10:01AM 11        AGAIN, IT'S DIFFICULT TO ARGUE THIS IN THE OPEN RECORD

10:01AM 12    BECAUSE I DON'T WANT TO GO INTO THIS WITNESS'S PERSONAL

10:01AM 13    DETAILS, BUT I THINK, ACCORDING TO MR. COOPERSMITH'S THEORY OF

10:01AM 14    THE RELATIONSHIP BETWEEN THOSE TWO QUESTIONS, HE SEEMS TO BE

10:01AM 15    SAYING THAT SOMEONE COULD NOT ANSWER NO TO MY QUESTION IF THEY

10:01AM 16    HAD EVER ENGAGED IN ANY OF THE BEHAVIORS THROUGH WHICH ONE

10:01AM 17    MIGHT ACQUIRE THIS ILLNESS.

10:01AM 18        AND I SIMPLY DON'T AGREE WITH THAT INTERPRETATION.

10:01AM 19        AND I THINK THE DIFFERENCE BETWEEN, YOU KNOW, ESSENTIALLY

10:01AM 20    DID THIS RESULT SURPRISE YOU VERSUS WHY DID YOU SEEK THE TEST

10:01AM 21    IN THE FIRST PLACE ARE TWO VERY DIFFERENT QUESTIONS.

10:01AM 22            MR. COOPERSMITH:  NOTHING FURTHER, YOUR HONOR.

10:01AM 23            THE COURT:  ALL RIGHT.  THANK YOU.

10:01AM 24        I THINK THE QUESTION FROM THE GOVERNMENT, AS POSED, IS NOT

10:01AM 25    INAPPROPRIATE, AND ANY FOLLOWUP ON THAT, I THINK YOU RECOGNIZE

10:02AM 1   OUR CONVERSATION, MR. COOPERSMITH.

10:02AM 2           MR. COOPERSMITH:  YES, YOUR HONOR.

10:02AM 3           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:02AM 4           MR. COOPERSMITH:  THANK YOU.

10:02AM 5           MR. BOSTIC:  THANK YOU, YOUR HONOR.

10:02AM 6           THE COURT:  ANYTHING ELSE WE SHOULD DISCUSS THIS

10:02AM 7   MORNING?

10:02AM 8           MR. COOPERSMITH:  WE HAVE NOTHING FURTHER AT THIS

10:02AM 9   TIME.

10:02AM 10          THE COURT:  OKAY.

10:02AM 11          MR. BOSTIC:  NOTHING FROM THE GOVERNMENT.

10:02AM 12      THANK YOU, YOUR HONOR.

10:02AM 13          THE COURT:  ALL RIGHT.  THANK YOU.

10:02AM 14      WE'VE -- COUNSEL HAVE SHARED WITH ME A PROPOSED SCHEDULE,

10:02AM 15  AND BASED ON THAT, MY SENSE IS THAT IT'S MY HOPE, AND I THINK

10:02AM 16  COUNSEL HAVE CONFIRMED THIS, THAT WE SHOULD BE ABLE TO COMPLETE

10:02AM 17  THE WITNESSES WHO WERE SCHEDULED TO TESTIFY TODAY, WE SHOULD BE

10:02AM 18  ABLE TO COMPLETE THEIR TESTIMONY IN TOTO TOMORROW WITH A FULL

10:02AM 19  DAY'S EXAMINATION.

10:02AM 20      IS THAT YOUR THOUGHT, MR. SCHENK?

10:02AM 21          MR. SCHENK:  THANK YOU, YOUR HONOR.

10:02AM 22      YES, I THINK THAT THAT IS CORRECT.  THE GOVERNMENT NEEDS

10:02AM 23  TO HAVE SOME CONVERSATIONS WITH AT LEAST ONE WITNESS WHO WAS

10:03AM 24  SCHEDULED TO TESTIFY TODAY REGARDING AVAILABILITY TOMORROW, BUT

10:03AM 25  PRESUMING THAT WORKS OUT OKAY, IT IS THE GOVERNMENT'S BELIEF

5868

10:03AM 1    THAT THE WITNESSES WE HAVE LINED UP FOR TODAY WILL FILL ONE

10:03AM 2    DAY, BUT CAN BE COMPLETED WITHIN ONE DAY.

10:03AM 3         AND IF WE MOVE ALL OF THEM UNTIL WEDNESDAY, UNTIL

10:03AM 4    TOMORROW, WE SHOULD BE ABLE TO SIMPLY COMPLETE THE TESTIMONY

10:03AM 5    TOMORROW.

10:03AM 6              THE COURT:  OKAY.  THANK YOU.

10:03AM 7         AND THEN YOU WOULD HAVE ANOTHER WITNESS, PERHAPS A FINAL

10:03AM 8    WITNESS FOR FRIDAY?

10:03AM 9              MR. SCHENK:  YES, YOUR HONOR.

10:03AM 10             THE COURT:  ALL RIGHT.  THANK YOU.

10:03AM 11        MR. COOPERSMITH.

10:03AM 12             MR. COOPERSMITH:  YES, YOUR HONOR.

10:03AM 13        BASED ON WHAT I KNOW RIGHT NOW, I BELIEVE THAT WE WILL

10:03AM 14   FINISH THE WITNESSES, ASSUMING THEY'RE GOING TO COME ON THE

10:03AM 15   STAND TOMORROW.  I THINK THERE ARE FIVE WITNESSES.  EVEN THOUGH

10:03AM 16   IT'S A LOT OF WITNESSES, I THINK WE CAN FINISH TOMORROW.

10:03AM 17        OBVIOUSLY THERE'S ALWAYS UNKNOWNS THAT HAPPEN.  BUT THAT

10:03AM 18   IS OUR INTENTION, AND WE THINK THAT IS VERY DOABLE.

10:03AM 19             THE COURT:  OKAY.  GREAT.  WELL, THANK YOU FOR THAT.

10:03AM 20   I APPRECIATE THAT.

10:03AM 21        WE'RE LOSING A DAY TODAY BECAUSE OF A JUROR'S ILLNESS.  I

10:04AM 22   APPRECIATE COUNSEL'S UNDERSTANDING THAT WE'RE GOING TO ADJOURN

10:04AM 23   FOR THE DAY.

10:04AM 24        I AM CONCERNED ABOUT THE SCHEDULE.  I UNDERSTAND THAT

10:04AM 25   WE'RE MOVING ALONG AND WE MIGHT BE INTO THE DEFENSE CASE SOON.

5869

10:04AM  1      WE STILL HAVE SOME WORK TO DO ON SOME OTHER PRELIMINARY

10:04AM  2   MATTERS, THOUGH.  AND IF WE HAVE TIME FRIDAY, MAYBE WE'LL

10:04AM  3   DISCUSS SOME OF THOSE.  I'LL GIVE THE DEFENSE SOME TIME TO

10:04AM  4   DIGEST THE COURT'S DECISIONS AND SEE WHERE WE GO.

10:04AM  5      BUT I APPRECIATE THAT -- THE RECOGNITION THAT,

10:04AM  6   MR. COOPERSMITH, YOUR TEAM IS GOING TO DO EVERYTHING YOU CAN TO

10:04AM  7   COMPLETE ALL OF THE EXAMINATION OF THESE WITNESSES.

10:04AM  8           MR. COOPERSMITH:  THAT IS OUR INTENT, YOUR HONOR.

10:04AM  9           THE COURT:  SO THEY'RE OUT OF TOWN.  SOME OF THEM

10:04AM  10  ARE OUT OF TOWN.

10:04AM  11     THAT WOULD BE HELPFUL.

10:04AM  12          MR. SCHENK:  YES, THAT IS CORRECT.  THANK YOU.

10:04AM  13          THE COURT:  OKAY.  GREAT.  THANK YOU VERY MUCH.

10:04AM  14          MR. SCHENK:  YOUR HONOR, THANK YOU FOR THE

10:04AM  15  DISCUSSION THIS MORNING REGARDING THE DECISION TO GO DARK OR

10:04AM  16  NOT GO DARK TODAY.  I CAN'T RECALL IF THE COURT --

10:04AM  17          THE COURT:  YES.  WELL, WE DID HAVE A DISCUSSION.  I

10:05AM  18  MET WITH COUNSEL THIS MORNING TO DISCUSS THIS MATTER.

10:05AM  19     IT WAS BROUGHT TO MY ATTENTION EARLY THIS MORNING,

10:05AM  20  ACTUALLY LAST NIGHT, AND I EXCHANGED COMMUNICATION WITH OUR

10:05AM  21  STAFF LAST NIGHT, 10:00, 11:00 O'CLOCK, WE WERE MONITORING THIS

10:05AM  22  JUROR'S CONDITION.  AND I WANTED TO SHARE THAT WITH YOU THIS

10:05AM  23  MORNING AS EARLY AS POSSIBLE.

10:05AM  24     I DID MEET WITH BOTH COUNSEL TO DISCUSS THIS AND GET YOUR

10:05AM  25  THOUGHTS ABOUT IT, AND IT WAS JUST PROCEDURAL.  IT WAS NOT

10:05AM  1    SUBSTANTIVE AT ALL.

10:05AM  2         DO YOU AGREE WITH THAT DESCRIPTION OF THE CONVERSATION?

10:05AM  3              MR. SCHENK:  YES, I DO.  THANK YOU.

10:05AM  4              MR. COOPERSMITH:  YES, YOUR HONOR.

10:05AM  5              THE COURT:  RIGHT.  AND WE WERE DISCUSSING

10:05AM  6    SCHEDULING.  THE PARTIES MET.

10:05AM  7         I BELIEVE IT'S FAIR FOR ME TO SAY THE GOVERNMENT'S DESIRE

10:05AM  8    WAS TO PROCEED TODAY, THIS MORNING, TO EXCUSE THE JUROR.

10:05AM  9         WE HAVE THREE ALTERNATES LEFT, FOUR ALTERNATES LEFT, AND

10:05AM  10   TO PROCEED.

10:05AM  11        MR. COOPERSMITH, I THINK YOUR PREFERENCE WAS TO EXCUSE THE

10:06AM  12   JUROR -- OR, EXCUSE ME, TO GO DARK FOR THE DAY AND -- ALLOW THE

10:06AM  13   JUROR TO PARTICIPATE AND GO DARK TODAY TO ALLOW THAT TO HAPPEN.

10:06AM  14   THAT WAS YOUR POSITION.

10:06AM  15              MR. COOPERSMITH:  THAT'S CORRECT, YOUR HONOR.

10:06AM  16              THE COURT:  YOU KNOW THE COURT'S DECISION, OF

10:06AM  17   COURSE.  WE'RE GOING DARK TODAY AS THE DEFENSE REQUESTED.  AND

10:06AM  18   THE COURT BENEFITTED FROM YOUR COMMENTS ABOUT THAT.  AND THAT

10:06AM  19   INFORMED THE COURT, SO IT MADE ITS DECISION.

10:06AM  20        AND THAT'S WHY I'M HAVING THIS DISCUSSION ABOUT

10:06AM  21   SCHEDULING, BECAUSE WE LOST A DAY.  OUR CONVERSATION INCLUDED

10:06AM  22   SCHEDULING, AND I APPRECIATE YOUR RECOGNITION THAT WE WILL

10:06AM  23   ACCOMPLISH THE EXAMINATION OF ALL OF THESE WITNESSES TOMORROW

10:06AM  24   SUCH THAT THERE'S NO DISRUPTION, SIGNIFICANT DISRUPTION OF THE

10:06AM  25   TIMING OF THE TRIAL.

5871

10:06AM  1          MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

10:06AM  2          THE COURT:  OKAY.

10:06AM  3          MR. COOPERSMITH:  THE ONLY OTHER THING I SHOULD

10:06AM  4     QUICKLY MENTION, AND I'M NOT SURE THIS IS IN YOUR HONOR'S MIND,

10:06AM  5     BUT IF YOU DO HAVE ANY OTHER QUESTIONS ABOUT THE PENDING MOTION

10:06AM  6     ON THE LABORATORY INFORMATION SYSTEM, WE CERTAINLY ARE PREPARED

10:06AM  7     AT ANY TIME AT THE COURT'S CONVENIENCE TO ANSWER THOSE OR

10:07AM  8     RESPOND TO THOSE.

10:07AM  9          THE COURT:  OKAY.  GREAT.  ALL RIGHT.

10:07AM 10       THANK YOU VERY MUCH.

10:07AM 11          MR. COOPERSMITH:  THANK YOU.

10:07AM 12          THE COURT:  THANK YOU.

10:07AM 13          (COURT ADJOURNED AT 10:07 A.M.)

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076

17

18       _____

19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595

20

21       DATED:  MAY 17, 2022

22

23

24

25