1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                         SAN JOSE DIVISION

5

        UNITED STATES OF AMERICA,          )
6                                          )   CR-18-00258-EJD
                        PLAINTIFF,         )
7                                          )   SAN JOSE, CALIFORNIA
                  VS.                      )
8                                          )   JUNE 6, 2022
        RAMESH "SUNNY" BALWANI,            )
9                                          )   VOLUME 34
                        DEFENDANT.         )
10      _____   )   PAGES 6505 - 6572

11

12                   TRANSCRIPT OF TRIAL PROCEEDINGS
                 BEFORE THE HONORABLE EDWARD J. DAVILA
13                  UNITED STATES DISTRICT JUDGE

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                              BY:  JOHN C. BOSTIC
16                                 JEFFREY B. SCHENK
                              150 ALMADEN BOULEVARD, SUITE 900
17                            SAN JOSE, CALIFORNIA 95113

18                            BY:  ROBERT S. LEACH
                                   KELLY VOLKAR
19                            1301 CLAY STREET, SUITE 340S
                              OAKLAND, CALIFORNIA 94612
20
                  (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
        OFFICIAL COURT REPORTERS:
22                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                              CERTIFICATE NUMBER 8074
23                            LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24
                 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                  TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      A P P E A R A N C E S:  (CONT'D)

 2      FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                                BY:  MOLLY MCCAFFERTY
 3                                   SHAWN ESTRADA
                                THE ORRICK BUILDING
 4                              405 HOWARD STREET
                                SAN FRANCISCO, CALIFORNIA 94105
 5
                                BY:  JEFFREY COOPERSMITH
 6                                   AMANDA MCDOWELL
                                701 FIFTH AVENUE, SUITE 5600
 7                              SEATTLE, WASHINGTON 98104

 8                              BY:  STEPHEN CAZARES
                                77 SOUTH FIGUEROA STREET, SUITE 3200
 9                              LOS ANGELES, CALIFORNIA 90017

10                              BY:  AMY WALSH
                                51 W 52ND STREET
11                              NEW YORK, NEW YORK 10019

12
        ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
13                              BY:  MADDI WACHS, PARALEGAL
                                     SARA SLATTERY, PARALEGAL
14
                                UNITED STATES POSTAL INSPECTION SERVICE
15                              BY:  CHRISTOPHER MCCOLLOW

16                              FEDERAL BUREAU OF INVESTIGATION
                                BY:  MARIO C. SCUSSEL
17
                                UNITED STATES FOOD & DRUG
18                              ADMINISTRATION
                                BY:  GEORGE SCAVDIS
19

20

21

22

23

24

25
```

1    SAN JOSE, CALIFORNIA                      JUNE 6, 2022

09:28AM  2                    P R O C E E D I N G S

09:28AM  3         (COURT CONVENED AT 9:28 A.M.)

09:28AM  4         (JURY OUT AT 9:28 A.M.)

09:28AM  5              THE COURT:  WE'RE ON THE RECORD IN THE BALWANI

09:29AM  6    MATTER.

09:29AM  7         WHY DON'T I HAVE COUNSEL STATE THEIR APPEARANCE FOR TODAY,

09:29AM  8    PLEASE.

09:29AM  9              MR. SCHENK:  GOOD MORNING, YOUR HONOR.

09:29AM 10         JEFF SCHENK ON BEHALF UNITED STATES.

09:29AM 11         I'M JOINED BY JOHN BOSTIC, ROBERT LEACH, AND KELLY VOLKAR.

09:29AM 12              THE COURT:  THANK YOU.  GOOD MORNING.

09:29AM 13              MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR.

09:29AM 14         JEFF COOPERSMITH REPRESENTING MR. BALWANI, WHO IS PRESENT.

09:29AM 15         I'M JOINED BY MY COLLEAGUES AMY WALSH AND STEPHEN CAZARES,

09:29AM 16    AND OTHER MEMBERS OF MY TEAM ARE IN THE GALLERY.

09:29AM 17              THE COURT:  THANK YOU.  GOOD MORNING.  IT'S NICE TO

09:29AM 18    SEE EVERYONE ON THEIR FEET AND IN THE COURTROOM AFTER A SHORT

09:29AM 19    BREAK.

09:29AM 20         THE FIRST MATTER I WANTED TO MENTION WAS A CONVERSATION

09:29AM 21    THAT OUR COURTROOM DEPUTY HAD WITH ONE OF OUR JURORS, AND

09:29AM 22    REGRETTABLY ONE OF THE JURORS IS COVID POSITIVE, AND -- LET'S

09:29AM 23    SEE.  WELL, I LEFT THE JURY LIST ON MY DESK, BUT IT IS JUROR --

09:30AM 24              THE CLERK:  (HANDING.)

09:30AM 25              JUROR NUMBER 2.

09:30AM 1          THE COURT:  JUROR NUMBER 2 APPARENTLY REPORTED COVID

09:30AM 2     POSITIVE.

09:30AM 3          WE HAVE -- I BEG YOUR PARDON.  WE HAVE THREE ALTERNATES

09:30AM 4     THAT WE CAN DRAW FROM, AND I DID MENTION THIS THIS MORNING TO

09:30AM 5     COUNSEL, AND I ASKED YOU TO SPEAK WITH YOUR TEAMS ABOUT ANY

09:30AM 6     THOUGHTS THAT YOU HAD ABOUT HOW YOU WANTED TO PROCEED.

09:30AM 7          LET ME TURN TO THE GOVERNMENT FIRST.

09:30AM 8          MR. SCHENK:  THANK YOU, YOUR HONOR.

09:30AM 9          IT'S THE GOVERNMENT'S RECOMMENDATION THAT WE REPLACE THIS

09:30AM 10    JUROR WITH THE NEXT ALTERNATE SO THAT WE MAY PROCEED THIS WEEK.

09:30AM 11         THE COURT:  THANK YOU.

09:30AM 12         MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:30AM 13         AND THE OBVIOUS CONCERN THAT WE HAVE, I'M SURE EVERYONE

09:30AM 14    SHARES, IS THAT WE NEVER WANT TO RISK DIPPING BELOW THE NUMBER

09:30AM 15    OF JURORS THAT ARE REQUIRED TO REACH A VERDICT IN THIS CASE

09:30AM 16    BECAUSE I DON'T THINK ANYONE WANTS TO DO THIS AGAIN FOR THAT

09:30AM 17    REASON.

09:30AM 18         BUT THAT SAID, WE DON'T HAVE AN OPPOSITION TO REPLACING

09:31AM 19    THE JUROR GIVEN THE CIRCUMSTANCES.  WE'RE OBVIOUSLY JUST HOPING

09:31AM 20    THAT THIS DOESN'T KEEP ARISING, AND WE'RE MINDFUL THAT THERE IS

09:31AM 21    COVID IN THE COMMUNITY.

09:31AM 22         I THINK AT SOME POINT, YOU KNOW, WE WOULD HAVE TO DO

09:31AM 23    SOMETHING DIFFERENT.

09:31AM 24         BUT FOR THIS ONE, I THINK IT MAKES SENSE.

09:31AM 25         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

09:31AM 1    I DO RECOGNIZE, AT LEAST IN THE COUNTY, OUR COUNTY,

09:31AM 2  SANTA CLARA COUNTY HAS REIMPOSED MASK RESTRICTIONS AS FAR AS

09:31AM 3  GATHERINGS AND MASKS ARE REQUIRED NOW INSIDE OF BUILDINGS, I

09:31AM 4  THINK, FROM THE HEALTH DIRECTOR.

09:31AM 5    WE ARE DOING THAT.  I DON'T KNOW IF YOU NOTICED WHEN YOU

09:31AM 6  CAME IN THE COURTHOUSE TODAY.  THERE ARE SIGNS THAT SAY MASKS

09:31AM 7  REQUIRED, AND I SEE EVERYONE IS MASKED TODAY.

09:31AM 8    SO I DO THINK THAT IT IS PRUDENT TO STRIKE JUROR NUMBER 2,

09:31AM 9  IS IT, SHE'S NUMBER 2?

09:31AM 10    THE CLERK:  SHE IS NOW, YOUR HONOR.

09:31AM 11    THE COURT:  AND WE'LL THEN MOVE -- IT'S ALTERNATE

09:31AM 12  NUMBER 4.  ALTERNATE NUMBER 4 WILL THEN BE MOVED TO REPLACE

09:32AM 13  THAT JUROR IN THAT SEAT.

09:32AM 14    AND WE WISH THAT JUROR A HEALTHY RECOVERY.

09:32AM 15    AND THEN WE CAN PROCEED -- OTHERWISE PROCEED WITH OUR

09:32AM 16  SCHEDULE.

09:32AM 17    ALL RIGHT.  THANK YOU.

09:32AM 18    TODAY, THIS MORNING, WE HAVE DISCUSSION ON MR. BALWANI'S

09:32AM 19  MOTION, DOCKET 1470, MOTION TO ADMIT VARIOUS TRIAL EXHIBITS.

09:32AM 20    EXCUSE ME.  I HAVE REVIEWED THAT.

09:32AM 21    AND I DON'T THINK THE GOVERNMENT FILED A FORMAL OPPOSITION

09:32AM 22  OR MEMO IN THAT REGARD.

09:32AM 23    MR. SCHENK?

09:32AM 24    MR. SCHENK:  THAT'S CORRECT, YOUR HONOR.

09:32AM 25    I WILL CEDE THE MICROPHONE TO MY COLLEAGUE, MR. LEACH, WHO

09:32AM  1      IS PREPARED TO ADDRESS THAT ORALLY.

09:32AM  2              THE COURT:  ALL RIGHT.  THANK YOU.

09:32AM  3      I THOUGHT WE WOULD DISCUSS THIS THIS MORNING, AND THEN

09:32AM  4      PERHAPS ANY OTHER REMAINING ISSUES, INCLUDING SCHEDULING BASED

09:32AM  5      ON WHERE WE ARE NOW.  I'D LIKE TO GET YOUR THOUGHTS ON THAT AS

09:33AM  6      WELL.

09:33AM  7              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:33AM  8          AND I WILL CEDE THE MICROPHONE TO MY COLLEAGUE, MS. WALSH.

09:33AM  9              THE COURT:  GREAT.

09:33AM  10     IT'S NICE TO SEE YOU, MS. WALSH.

09:33AM  11             MS. WALSH:  IT'S NICE TO SEE YOU, YOUR HONOR.

09:33AM  12             THE COURT:  THANK YOU.

09:33AM  13     ALL RIGHT.  THIS IS DOCKET 1470, MR. BALWANI'S MOTION TO

09:33AM  14     ADMIT VARIOUS TRIAL EXHIBITS.  I THINK I HAVE THESE FLAGGED.

09:33AM  15     MS. WALSH, WHAT WOULD YOU LIKE TO SAY OR LIKE ME TO KNOW

09:33AM  16     ABOUT YOUR REQUEST?

09:33AM  17             MS. WALSH:  YES, YOUR HONOR.

09:33AM  18     SO 1470 IS A MOTION TO ADMIT NINE DIFFERENT EXHIBITS,

09:33AM  19     WHICH WE INTEND TO OFFER THROUGH A WITNESS WHO IS A PARALEGAL

09:33AM  20     AT ORRICK, AND EACH OF THOSE -- I THINK WE SHOULD TAKE THEM ONE

09:33AM  21     BY ONE, BUT EACH OF THOSE CAN BE ADMITTED BECAUSE THEY ARE

09:34AM  22     AUTHENTIC EITHER PURSUANT TO STIPULATION OR OTHER RULES OF

09:34AM  23     EVIDENCE.

09:34AM  24     MANY ARE OFFERED FOR A NONHEARSAY PURPOSE, AND OTHERS FALL

09:34AM  25     WITHIN EXCEPTIONS, AND ALL OF THEM ARE RELEVANT TO ISSUES THAT

09:34AM 1        WE'VE SEEN DURING THE COURSE OF THE TRIAL.

09:34AM 2            SO I WOULD SUGGEST, YOUR HONOR, IF IT'S OKAY WITH YOU, IF

09:34AM 3        WE JUST TAKE THEM ONE BY ONE.

09:34AM 4                THE COURT:  SURE.  SURE.

09:34AM 5            ANYTHING YOU WANT TO SAY, MR. LEACH, THE GOVERNMENT WANTS

09:34AM 6        TO SAY IN ADVANCE OF OUR DISCUSSION?

09:34AM 7                MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD MORNING.

09:34AM 8            I WOULD SAY THE GOVERNMENT HAS REVIEWED THE FILING.  WE

09:34AM 9        DIDN'T FILE A WRITTEN OPPOSITION.  WE DO OPPOSE ADMISSION OF

09:34AM 10       EXHIBITS 1, 2, 6, 8, AND 9.  THOSE ARE THE EXHIBITS ATTACHED TO

09:34AM 11       THE -- MS. WALSH'S DECLARATION.  I DON'T HAVE THE TRIAL EXHIBIT

09:34AM 12       NUMBER HANDY, BUT THOSE ARE THE EXHIBIT NUMBERS IN THE FILING.

09:34AM 13           SO LONG AS EXHIBITS 3, 4, 5, AND 7 ARE OFFERED FOR A

09:35AM 14       NONHEARSAY PURPOSE, THAT IS, THE LIMITED PURPOSE OF NOTICE TO

09:35AM 15       THE DEFENDANT OR ALLEGED NOTICE TO THE DEFENDANT, WE HAVE NO

09:35AM 16       OBJECTION TO 3, 4, 5, AND 7.

09:35AM 17               THE COURT:  ALL RIGHT.  THANK YOU FOR THAT.

09:35AM 18           MS. WALSH, LET'S TALK ABOUT 3, 4, 5, AND 7 THEN INITIALLY.

09:35AM 19           ARE YOU SEEKING TO ADMIT THESE SOLELY FOR THE ISSUE OF --

09:35AM 20       NOT FOR THE TRUTH OF THE MATTER ASSERTED OF EACH OF THESE, BUT

09:35AM 21       SOLELY AS TO THE ISSUE OF NOTICE TO YOUR CLIENT?

09:35AM 22               MS. WALSH:  SO AS TO 3, 4, AND 5, THE ANSWER IS YES,

09:35AM 23       THEY WILL BE OFFERED ONLY FOR NOTICE TO MR. BALWANI.

09:35AM 24           AS TO 7, THIS IS THE FDA'S CLIA WAIVER FOR THERANOS'S

09:35AM 25       HSV-1 ASSAY, AND WE BELIEVE THAT IS ADMISSIBLE UNDER RULE

09:36AM 1   803(8), WHICH WOULD COME IN AS A HEARSAY EXCEPTION AND FOR ITS

09:36AM 2   TRUTH.

09:36AM 3        IN THE ALTERNATIVE CERTAINLY, CERTAINLY IT COULD COME IN,

09:36AM 4   IN OUR VIEW, AS TO NOTICE TO MR. BALWANI BECAUSE IT IS ATTACHED

09:36AM 5   TO AN EMAIL THAT IS SENT TO HIM.

09:36AM 6        THE COURT:  OKAY.  ALL RIGHT.  IT SOUNDS LIKE WE'LL

09:36AM 7   HAVE SOME MORE DISCUSSION ON THAT ONE, ON 7.

09:36AM 8        BUT IN REGARDS TO 3, 4, AND 5 THEN, YOU'RE ASKING THAT

09:36AM 9   THOSE BE ADMITTED SOLELY FOR THE ISSUE OF NOTICE, THAT IS,

09:36AM 10  NOTICE TO MR. BALWANI AS TO WHAT ISSUE?

09:36AM 11       MS. WALSH:  SO AS TO EXHIBIT 3, THAT IS AN EMAIL TO

09:36AM 12  MR. BALWANI REGARDING VARIOUS, AND THE NUMBER OF ASSAYS THAT

09:36AM 13  HAD BEEN DEVELOPED IN APRIL 2013, AND IT'S AN EMAIL FROM

09:37AM 14  DR. YOUNG TELLING MR. BALWANI THAT 95 PERCENT OF THE ASSAYS

09:37AM 15  LISTED WERE FINISHED AND THAT THEY WOULD BE BROUGHT -- THEY

09:37AM 16  WOULD BE SUBMITTED FOR CLIA VALIDATION.

09:37AM 17       SO WHAT IT IS RELEVANT TO, IT GOES TO MR. BALWANI'S STATE

09:37AM 18  OF MIND REGARDING HIS UNDERSTANDING THAT IN APRIL OF 2013,

09:37AM 19  THERANOS HAD DEVELOPED 95 PERCENT OF THE COMMONLY ORDERED

09:37AM 20  ASSAYS.

09:37AM 21       THROUGHOUT THE TRIAL IN THIS CASE, THE GOVERNMENT HAS

09:37AM 22  POINTED OUT THAT ONLY 12 ASSAYS WERE AVAILABLE ON THE EDISON

09:37AM 23  AND THERE WERE A LIMITED NUMBER OF ASSAYS THAT WERE AVAILABLE

09:37AM 24  FOR PATIENT TESTING, AND THIS EMAIL ESTABLISHES THAT, AT LEAST

09:37AM 25  AS FAR AS MR. BALWANI WAS CONCERNED, HE WAS ON NOTICE THAT

09:38AM 1    THERE WERE MANY ASSAYS THAT HAD BEEN DEVELOPED FOR THE CLIA

09:38AM 2    LAB.

09:38AM 3         THE COURT:  SO THIS IS NOTICE AS TO MR. BALWANI ON

09:38AM 4    THE -- AT LEAST AS OF THE DATE OF THE EMAIL, APRIL 21, 2013,

09:38AM 5    AND THOSE DATES AS TO THE STATUS OF DEVELOPMENT OF TESTING.

09:38AM 6         MS. WALSH:  THAT'S RIGHT, YOUR HONOR, ASSAY

09:38AM 7    DEVELOPMENT.

09:38AM 8         THE COURT:  MR. LEACH.

09:38AM 9         MR. LEACH:  YOUR HONOR, I THINK THAT

09:38AM 10   OVERSTATES PRETTY DRAMATICALLY THE PROBATIVE VALUE OF THE

09:38AM 11   EVIDENCE.

09:38AM 12       THERE'S NO EVIDENCE THAT MR. BALWANI READ THIS OR PAID ANY

09:38AM 13   ATTENTION TO IT, AND THERE'S NO CONTEXT TO THIS STRAY EMAIL

09:38AM 14   FROM APRIL OF 2013.

09:38AM 15       ALL OF THAT SAID, THIS WAS SOMETHING THAT HE RECEIVED.  IF

09:38AM 16   THEY WANT TO ARGUE THIS WAS NOTICE OF A PARTICULAR FACT, I'M

09:38AM 17   NOT GOING TO QUIBBLE WITH ITS ADMISSION, BUT I'D PREFER NOT TO

09:39AM 18   GET SPECIFIC ON THE GRANULARITY OF THE NOTICE BECAUSE I HAVE NO

09:39AM 19   REASON TO THINK THAT MR. BALWANI READ THIS.

09:39AM 20       I THINK THIS IS TAKEN OUT OF CONTEXT.  I THINK THERE'S A

09:39AM 21   MUCH DEEPER STORY TO THIS.

09:39AM 22       BUT IT PASSED THROUGH HIS IN BOX, AND I THINK ON THAT

09:39AM 23   BASIS WE'RE NOT GOING TO OBJECT TO THIS PARTICULAR EMAIL.

09:39AM 24       BUT I WOULD NOT WANT TO SUGGEST TO THE JURY THAT IT'S ANY

09:39AM 25   MORE THAN THAT.

09:39AM  1          THE COURT:  WELL, WHAT DO I -- I NOTICED -- THANK

09:39AM  2     YOU.  I NOTICED THAT THERE'S AN EMAIL FROM MR. -- ATTRIBUTED

09:39AM  3     FROM MR. BALWANI ON APRIL 19TH SANDWICHED BETWEEN THESE TWO,

09:39AM  4     MR. YOUNG'S EMAILS.

09:39AM  5          AND WHEN I HAVE PREVIOUSLY ADMITTED EVIDENCE FOR NOTICE, I

09:39AM  6     BELIEVE I HAVE INFORMED THE JURY NOTICE OF SOMETHING.  I THINK

09:39AM  7     WE NEED TO FILL THAT VACUUM IN SOME MANNER, AND THAT'S WHY I'M

09:39AM  8     ASKING, WHAT IS THIS A NOTICE FOR?  NOTICE OF LAB SITUATION?

09:40AM  9     NOTICE OF THE -- AT LEAST AS OF THIS DATE AND TIME, HIS NOTICE

09:40AM  10    OF LAB DEVELOPMENT, LAB PROCEDURES?

09:40AM  11          I'M OPEN TO DISCUSSING IT.

09:40AM  12          MR. LEACH:  SORRY, YOUR HONOR.

09:40AM  13          THE COURT:  NO, NO.

09:40AM  14          MR. LEACH:  IF I COULD SUGGEST IT BE NO MORE THAN

09:40AM  15    NOTICE AS TO THE MATTERS SET FORTH IN THE EMAIL AS OF THAT

09:40AM  16    DATE, I THINK THAT WOULD --

09:40AM  17          THE COURT:  SURE.

09:40AM  18          MR. LEACH:  -- AVOID WHAT I THINK ARE PRETTY DEEP

09:40AM  19    DISAGREEMENTS OVER HOW PROBATIVE THIS PARTICULAR EMAIL IS.

09:40AM  20          THE COURT:  THE SUBJECT LINE IS ASSAYS FOR FDA

09:40AM  21    FILING.  SHOULD WE SAY THAT?

09:40AM  22          MR. LEACH:  YES.

09:40AM  23          MS. WALSH:  SO, YOUR HONOR, I WOULDN'T SAY THAT

09:40AM  24    ACTUALLY.

09:40AM  25          I AGREE WITH MR. LEACH THAT THE CONTENT OF THE EMAIL IS

09:41AM  1    SUFFICIENT, AND THE PARTIES CAN MAKE VARIOUS ARGUMENTS BASED ON

09:41AM  2    THE WEIGHT ONCE IT COMES IN AS TO WHAT THE EMAIL MEANS.

09:41AM  3        I THINK THE CONTENT IS DIFFERENT FROM THE SUBJECT LINE.

09:41AM  4    THE CONTENT RELATES TO CLIA VALIDATION, WHEREAS THE SUBJECT

09:41AM  5    LINE RELATES TO ASSAYS FOR FDA FILING.

09:41AM  6        SO AS MR. LEACH POINTED OUT, I WOULDN'T WANT -- MAYBE

09:41AM  7    THAT'S TOO SPECIFIC TO LIST THE SUBJECT LINE.

09:41AM  8        I THINK WHAT YOUR HONOR PROPOSED, OR MAYBE IT WAS

09:41AM  9    MR. LEACH WHO PROPOSED IT, MAKES THE MOST SENSE.  IT GOES TO

09:41AM  10   MR. BALWANI'S STATE OF MIND AS TO WHAT IS IN THIS EMAIL.

09:41AM  11            MR. LEACH:  YOUR HONOR, I THINK MS. WALSH'S

09:41AM  12   STATEMENT JUST PROVES THE HAZARD OF TRYING TO GET TOO GRANULAR

09:41AM  13   ON THIS, BECAUSE I DON'T THINK IT APPLIES TO CLIA VALIDATION.

09:41AM  14       I THINK, JUST ME READING WHAT DR. YOUNG IS SAYING, AND

09:41AM  15   DR. YOUNG HAS NOT TESTIFIED, IS THAT HE'S TALKING ABOUT 75

09:41AM  16   WHOLE BLOOD TESTS THAT ARE STILL UNDER DEVELOPMENT, A REMAINDER

09:42AM  17   THAT NEED INTEGRATION ON THE DEVICE, AND ALL OF THIS IS A

09:42AM  18   PRELUDE TO CLIA VALIDATION.

09:42AM  19       SO --

09:42AM  20            THE COURT:  PARDON ME.  IS THIS AN EMAIL REGARDING A

09:42AM  21   NOTICE OF A DISCUSSION REGARDING THE VALIDATION PROCESS, THE

09:42AM  22   VALIDATION PROTOCOL?

09:42AM  23       I'M WORDSMITHING HERE WHILE WE'RE TALKING.

09:42AM  24            MS. WALSH:  I THINK THE VALIDATION PROCESS IS AN

09:42AM  25   APPROPRIATE WAY TO CHARACTERIZE IT.

09:42AM  1          THE COURT:  A LAB PROCESS.

09:42AM  2          MR. LEACH:  I THINK THERE'S A NUMBER OF WAYS TO READ

09:42AM  3   THIS EMAIL, YOUR HONOR, AND THAT THE COURT TRYING TO BE

09:42AM  4   GRANULAR ON THE PARTICULAR TYPE OF NOTICE MIGHT DO SOME HAZARD

09:42AM  5   TO BOTH SIDE'S POSITIONS, AND I THINK WE'RE MUCH MORE

09:42AM  6   COMFORTABLE WITH THE MATTERS SET FORTH IN THE EMAIL.

09:42AM  7          THE COURT:  AND I CERTAINLY DON'T WANT TO INTRUDE ON

09:43AM  8   ANYTHING -- ANY OF YOUR INTENTS IN THIS AT ALL.  I WANT TO BE

09:43AM  9   AS NEUTRAL AS I CAN AS TO TELL THE JURY WHAT THIS IS, AND IF

09:43AM 10   THIS IS FOR NOTICE OF THE MATTERS THAT ARE CONTAINED IN THE

09:43AM 11   EMAIL, DOES THAT PERMIT YOU TO ARGUE THAT IT'S A CLIA?  I THINK

09:43AM 12   IT DOES.

09:43AM 13          MS. WALSH:  SURE.  YES, YOUR HONOR.

09:43AM 14          THE COURT:  SO LET'S DO THAT, NOTICE OF ITEMS

09:43AM 15   CONTAINED IN THE EMAIL.  THANK YOU.

09:43AM 16       ALL RIGHT.  SHOULD WE HAVE THE SAME DISCUSSION FOR 4 AND 5

09:43AM 17   IN REGARDS TO NOTICE?

09:43AM 18          MR. LEACH:  YES, YOUR HONOR.

09:44AM 19          THE COURT:  AND 4?

09:44AM 20          MS. WALSH:  YES.

09:44AM 21       REGARDING 4, THIS IS NOTICE TO MR. BALWANI AS TO

09:44AM 22   DR. SAKSENA'S PROGRESS IN BECOMING THE FULL-TIME LAB DIRECTOR

09:44AM 23   AT THE NEWARK LAB IN JULY 2015, WHICH IS THE DATE OF THE EMAIL.

09:44AM 24          MR. LEACH:  AGAIN, YOUR HONOR, I DISAGREE THAT IT'S

09:44AM 25   EXACTLY THE NOTICE THAT MS. WALSH JUST DESCRIBED.

09:44AM  1          THIS EMAIL APPEARS TO BE SOMETHING THAT DR. SAKSENA

09:44AM  2     FORWARDED TO MR. BALWANI IN JULY OF 2015 REGARDING AN

09:44AM  3     APPLICATION TO BE A CLINICAL LABORATORY DIRECTOR.

09:44AM  4          THERE'S NO CONTEXT IN THE EMAIL OF WHY HE WAS DOING THIS

09:44AM  5     OR EXACTLY WHAT HE WANTED TO DO WITH THE LICENSURE.

09:44AM  6          I THINK THE DEFENSE WANTS TO ARGUE THAT THIS IS RELEVANT

09:44AM  7     TO MR. BALWANI'S STATE OF MIND THAT DR. SAKSENA SOME DAY WOULD

09:45AM  8     BECOME A LAB DIRECTOR AT THERANOS.

09:45AM  9          I THINK IF WE'RE TALKING ABOUT WHAT THIS IS NOTICE OF, I

09:45AM  10    THINK LIMITING IT TO THE SUBJECT LINE OF THE EMAIL WOULD

09:45AM  11    SUFFICE FOR THE GOVERNMENT.

09:45AM  12             THE COURT:  CLINICAL LAB DIRECTOR APPLICATION?

09:45AM  13             MS. WALSH:  YES.  THAT'S FINE, YOUR HONOR.

09:45AM  14          AND, OF COURSE, WE'LL MAKE ARGUMENTS BASED ON THE OTHER

09:45AM  15    EVIDENCE IN THE CASE.

09:45AM  16             THE COURT:  SURE.

09:45AM  17             MS. WALSH:  BUT AS FAR AS YOUR INSTRUCTION TO THE

09:45AM  18    JURY, WE ARE FINE WITH THAT.

09:45AM  19             THE COURT:  MR. LEACH.

09:45AM  20             MR. LEACH:  I'M SORRY, COULD THE COURT SAY THAT ONE

09:45AM  21    MORE TIME?

09:45AM  22             THE COURT:  THE SUBJECT MATTER ON AT LEAST THE TOP

09:45AM  23    EMAIL ON PAGE 13, ECF 13, READS, "SURAJ SAKSENA," COLON, AND

09:45AM  24    WHAT I WOULD SAY IS "NOTICE REGARDING CLINICAL LAB DIRECTOR

09:46AM  25    APPLICATION."

09:46AM 1          MR. LEACH:  THAT'S FINE, YOUR HONOR.

09:46AM 2          THE COURT:  SO I WOULD TELL THE JURY THAT THIS WOULD

09:46AM 3   BE ADMITTED NOT FOR THE TRUTH OF THE MATTERS ASSERTED IN THE

09:46AM 4   EMAILS, BUT AS TO THE ISSUE OF NOTICE OF MR. BALWANI AS TO THE

09:46AM 5   CLINICAL LAB DIRECTOR APPLICATION.

09:46AM 6          MR. LEACH:  I WOULD SAY A CLINICAL LABORATORY.

09:46AM 7          THE COURT:  THAT'S FINE.

09:46AM 8       MS. WALSH?

09:46AM 9          MS. WALSH:  THAT'S FINE, YOUR HONOR.

09:46AM 10         THE COURT:  OKAY.

09:46AM 11      AND THEN 5.

09:46AM 12         MS. WALSH:  SO WHAT WE WOULD PROPOSE FOR 5 IS THAT

09:46AM 13  THIS IS OFFERED FOR NOTICE TO MR. BALWANI REGARDING THERANOS'S

09:46AM 14  RELATIONSHIP WITH GLAXOSMITHKLINE, WHICH IS THE PHARMA COMPANY

09:47AM 15  IN THE EMAIL.

09:47AM 16      I THINK THAT'S RELATIVELY SIMPLE AND STRAIGHTFORWARD AND

09:47AM 17  WE CAN MAKE OUR ARGUMENTS BASED ON THE CONTENTS OF THE EMAIL

09:47AM 18  FROM THERE.

09:47AM 19         THE COURT:  MR. LEACH.

09:47AM 20         MR. LEACH:  YOUR HONOR, SO THIS IS AN EMAIL FROM

09:47AM 21  ELIZABETH HOLMES TO SOMEONE NAMED THOMAS BREWER AT GSKBIO.COM.

09:47AM 22      THERE'S ZERO TESTIMONY ABOUT WHO MR. BREWER IS.

09:47AM 23      IT'S COPIED TO MR. BALWANI AND THERE'S A NUMBER OF VERY

09:47AM 24  LENGTHY ATTACHMENTS TO THIS.

09:47AM 25      I THINK IF THIS IS COMING IN FOR NOTICE TO THE DEFENDANT,

09:47AM 1   IT SHOULD BE LIMITED TO THE SUBJECT MATTER SET FORTH IN THE

09:47AM 2   EMAIL AND NOTHING MORE.

09:47AM 3            THE COURT:  HAS THERE BEEN TESTIMONY REGARDING

09:47AM 4   WHETHER OR NOT MR. BALWANI WAS A PARTICIPANT IN ANY MEETING

09:48AM 5   WITH MR. BREWER?

09:48AM 6            MR. LEACH:  NO.

09:48AM 7            MS. WALSH:  NO, YOUR HONOR.

09:48AM 8        BUT THERE'S BEEN PLENTY OF TESTIMONY ABOUT RELATIONSHIPS

09:48AM 9   WITH OTHER PHARMA COMPANIES AND EMAILS THAT WENT TO MR. BALWANI

09:48AM 10  WITH LOGOS AND REPORTS WITHOUT LOGOS AND WITNESSES TESTIFYING

09:48AM 11  THAT WE DIDN'T VALIDATE THERANOS TECHNOLOGY, AND THIS IS A

09:48AM 12  DOCUMENT THAT REBUTS SOME OF THOSE CLAIMS.

09:48AM 13       IT'S AN EMAIL FROM ELIZABETH HOLMES TO SOMEONE AT

09:48AM 14  GLAXOSMITHKLINE, COPYING MR. BALWANI, SAYING IN THE EMAIL

09:48AM 15  THAT -- DESCRIBING THE THERANOS TECHNOLOGY.

09:48AM 16       IN THE POWERPOINT AT PAGE 23 OF THE DOCUMENT, IT SAYS,

09:48AM 17  "GSK COMPLETED A COMPREHENSIVE VALIDATION OF THERANOS SYSTEMS

09:48AM 18  IN 2008."

09:48AM 19       THAT WAS BEFORE MR. BALWANI GOT TO THE COMPANY.  THAT GOES

09:48AM 20  DIRECTLY TO HIS STATE OF MIND REGARDING THERANOS'S RELATIONSHIP

09:49AM 21  WITH PHARMA COMPANIES.

09:49AM 22            THE COURT:  THANK YOU.  SO THIS IS NOTICE TO

09:49AM 23  MR. BALWANI OF AN EMAIL FROM MS. HOLMES TO MR. BREWER REGARDING

09:49AM 24  THEIR MEETING.

09:49AM 25            MS. WALSH:  CORRECT, WITH ATTACHMENTS.

09:49AM 1          MR. LEACH:  THAT'S FINE, YOUR HONOR.

09:49AM 2          THE COURT:  OKAY.

09:49AM 3          MS. WALSH:  AND JUST SO I'M CLEAR, YOUR HONOR, WE

09:49AM 4    ARE OFFERING THE ENTIRE EXHIBIT.

09:49AM 5          THE COURT:  THAT WAS MY UNDERSTANDING.

09:49AM 6          MS. WALSH:  YES.

09:49AM 7          MR. LEACH:  I UNDERSTOOD THAT, TOO.

09:50AM 8       (PAUSE IN PROCEEDINGS.)

09:50AM 9          THE COURT:  ALL RIGHT.  THANK YOU.  WITH THOSE

09:50AM 10   CAVEATS AS TO WHAT THE COURT WILL INFORM THE JURY REGARDING

09:50AM 11   NOTICE, THOSE WILL BE ADMITTED, AND I WILL INFORM THE JURY AS

09:50AM 12   TO THE PURPOSE OF THE NOTICE FOR 3, 4, AND 5.

09:50AM 13       AND SHOULD WE DISCUSS 7 NOW?  IT'S IN THAT SAME SET.

09:50AM 14         MR. LEACH:  SURE, YOUR HONOR.

09:50AM 15         THE COURT:  MS. WALSH, I THINK YOU'RE SUGGESTING

09:50AM 16   THIS IS A PUBLIC RECORD OR IT FALLS WITHIN THE EXCEPTION OF

09:50AM 17   803(8), WHICH IS THE PUBLIC RECORDS EXCEPTION.

09:51AM 18         MS. WALSH:  THAT'S RIGHT, YOUR HONOR.

09:51AM 19         THE COURT:  OKAY.  WHAT SHOULD WE KNOW ABOUT THAT?

09:51AM 20         MS. WALSH:  SO IT IS A LETTER FROM THE FDA TO

09:51AM 21   MR. ARINGTON OF THERANOS, AND IT -- THEREFORE, IT'S A STATEMENT

09:51AM 22   OF A PUBLIC OFFICE.

09:51AM 23       AND I'M JUST GOING THROUGH THE ELEMENTS OF THE RULE, AND

09:51AM 24   IT'S -- IT REPORTS A MATTER OBSERVED WHILE UNDER A LEGAL DUTY

09:51AM 25   TO REPORT.

09:51AM  1          IT'S ISSUING -- IT'S ESSENTIALLY SAYING TO THERANOS, YOUR

09:51AM  2    APPLICATION FOR WAIVED STATUS UNDER THE CLIA REGULATIONS WAS

09:51AM  3    GRANTED.  THAT'S -- IT'S INFORMING THERANOS OF THAT FACT.

09:51AM  4          THE COURT:  AND THIS IS ECF PAGE 150.  IT'S TRIAL

09:51AM  5    EXHIBIT 20826, PAGE 2?

09:51AM  6          MS. WALSH:  YES, YOUR HONOR.

09:51AM  7          THE COURT:  AND IS THAT THE EXTENT OF WHAT YOU WANT

09:52AM  8    TO GET IN, OR IS IT PAGE 1 AS WELL, THE EMAILS?

09:52AM  9          MS. WALSH:  PAGE 1 AS WELL.  AND PAGE 1 IS IMPORTANT

09:52AM 10    BECAUSE MR. BALWANI IS ON THE EMAIL THAT MR. ARINGTON FORWARDS

09:52AM 11    WITH THE CLIA WAIVER ATTACHED.

09:52AM 12          THE COURT:  THE FIRST EMAIL I SEE ON THE LIST IS

09:52AM 13    FROM MR. BALWANI, JULY 15TH, 2015.

09:52AM 14       IS THAT --

09:52AM 15          MS. WALSH:  CORRECT.  I DON'T THINK THAT'S CRITICAL.

09:52AM 16       IT'S REALLY THE NEXT ONE FROM MR. ARINGTON TO MS. HOLMES,

09:52AM 17    MR. BALWANI, AND HEATHER KING, WHICH SAYS, "JUST CAME IN."

09:52AM 18       AND THAT'S WHAT'S ATTACHED.

09:52AM 19          THE COURT:  I SEE.  AND HE'S FORWARDING THE LETTER

09:52AM 20    FROM PETER TOBIN?

09:52AM 21          MS. WALSH:  CORRECT.

09:53AM 22          THE COURT:  MR. LEACH.

09:53AM 23          MR. LEACH:  YOUR HONOR, WE HAVE NO OBJECTION TO THIS

09:53AM 24    EMAIL COMING IN FOR NOTICE TO MR. BALWANI OF A CLIA WAIVER

09:53AM 25    GRANTED NOTIFICATION.

09:53AM 1      WE DO OBJECT TO THE EMAIL COMING IN FOR THE TRUTH OF THE

09:53AM 2  MATTER ASSERTED.

09:53AM 3      I'M A LITTLE SURPRISED TO HEAR THE DEFENSE ARGUE THAT THE

09:53AM 4  PUBLIC RECORDS EXCEPTION TO THE HEARSAY RULE CAN BE LAID

09:53AM 5  WITHOUT A WITNESS TO LAY THE FOUNDATION FOR THE PARTICULAR

09:53AM 6  ELEMENTS.

09:53AM 7      I THINK WHEN WE WERE OFFERING THE CMS INSPECTION REPORT,

09:53AM 8  HAD WE JUST OFFERED THAT IN THE ETHER THROUGH A PARALEGAL,

09:53AM 9  THERE CERTAINLY WOULD HAVE BEEN AN OBJECTION THAT THAT HEARSAY

09:53AM 10  EXCEPTION HAD NOT WITHIN BEEN SATISFIED.

09:53AM 11      THAT HOLDS TRUE FOR THE DEFENSE IN THEIR CASE.

09:53AM 12      THERE'S NOBODY FROM THE FDA TO EXPLAIN WHAT THIS IS, HOW

09:53AM 13  IT WAS PREPARED, WHETHER IT'S TRUE, WHETHER THERE WAS A PUBLIC

09:53AM 14  DUTY OR A LEGAL DUTY, WHETHER THESE WERE, IN FACT, MATTERS

09:53AM 15  OBSERVED IN THE COURSE OF THEIR BUSINESS, AND WITHOUT AN FDA

09:54AM 16  WITNESS TO LAY THAT FOUNDATION, I DON'T THINK IT'S APPROPRIATE

09:54AM 17  TO USE THE PUBLIC RECORDS EXCEPTION AS A BASIS TO ADMIT THIS

09:54AM 18  FOR THE TRUTH OF THE MATTER ASSERTED.

09:54AM 19      THE COURT:  SO IN THE PAST YOUR STIPULATION COVERS

09:54AM 20  AUTHENTICITY, BUT IT DOESN'T COVER THE OTHER BASES FOR

09:54AM 21  ADMISSIONS AS I UNDERSTAND IT, AS I RECALL.

09:54AM 22      MR. LEACH:  THAT'S CORRECT, YOUR HONOR.  BOTH

09:54AM 23  PARTIES RESERVED HEARSAY OBJECTIONS.

09:54AM 24      THE COURT:  RIGHT.

09:54AM 25      MR. LEACH:  AND OUR OBJECTION IS HEARSAY.

09:54AM 1          THE COURT:  RIGHT.

09:54AM 2      WHAT I HEAR MR. LEACH SAYING -- YOU DID, TOO -- THAT THERE

09:54AM 3  HAS TO BE A FOUNDATIONAL WITNESS OF SOME SORT TO LAY THE

09:54AM 4  FOUNDATION FOR THE PUBLIC RECORD.

09:54AM 5          MS. WALSH:  I UNDERSTAND, YOUR HONOR.

09:54AM 6      AND I GUESS -- THIS IS A LETTER ON THE LETTERHEAD OF THE

09:54AM 7  FDA.  I DON'T THINK THERE'S AN ISSUE THAT IT'S AUTHENTIC.

09:54AM 8          THE COURT:  RIGHT.  RIGHT.  I THINK YOUR STIPULATION

09:55AM 9  COVERS THAT.

09:55AM 10          MS. WALSH:  RIGHT.

09:55AM 11      SO IT SEEMS TO ME, ON ITS FACE, SINCE IT'S REPORTING THE

09:55AM 12  CLIA -- THE WAIVED STATUS OF THIS ASSAY, IT ISN'T LIKE THERE'S

09:55AM 13  A COMPLICATED ANALYSIS THAT HAS TO TAKE PLACE TO BE ABLE TO

09:55AM 14  READ THIS AND SAY THE FDA IS REPORTING THIS, AS PART OF ITS

09:55AM 15  JOB, THAT THERANOS GOT A CLIA WAIVER.

09:55AM 16      I DON'T THINK WE DO NEED A WITNESS TO ESTABLISH THAT.  I

09:55AM 17  THINK IT'S CLEAR ON THE FACE OF THE DOCUMENT.

09:55AM 18          MR. LEACH:  THAT COULD BE TRUE OF ANY DOCUMENT,

09:55AM 19  YOUR HONOR, THAT COMES FROM THE FDA, OR FOR THAT MATTER IF IT

09:55AM 20  COMES FROM CMS.

09:55AM 21      IT'S BEING OFFERED FOR THE TRUTH OF THE STATEMENTS IN THIS

09:55AM 22  LETTER.  FOR EXAMPLE, WAIVED STATUS AS APPLICABLE TO TEST

09:55AM 23  SYSTEMS AND THEIR INSTRUCTIONS ARE APPROVED OR CLEARED.

09:55AM 24      THAT'S A FACTUAL ASSERTION THAT THE DEFENDANT WANTS TO

09:55AM 25  MAKE.  IF HE WANTS TO MAKE THAT, HE NEEDS TO LAY THE FOUNDATION

09:56AM  1    FOR THE PUBLIC RECORDS EXCEPTION, AND SIMPLY SAYING THIS IS

09:56AM  2    WHAT THE DOCUMENT SAYS IS NOT A PROPER WAY TO DO THAT.

09:56AM  3        I WOULD SAY THIS ALSO IS CUMULATIVE IN THE SENSE THAT

09:56AM  4    DAN EDLIN TESTIFIED THAT IN JULY OF 2015 THERANOS LEARNED OF

09:56AM  5    SOME FORM OF FDA APPROVAL FOR ITS HERPES VACCINE.

09:56AM  6        THIS ADDS A LOT OF COMPLICATED DETAIL ABOUT WHAT THESE

09:56AM  7    TERMS MEAN AND WHAT EXACTLY THE FDA DID TO REACH THE JUDGMENTS

09:56AM  8    SET FORTH IN THIS LETTER, AND I SIMPLY DON'T THINK THAT IT'S

09:56AM  9    APPROPRIATE TO SAY, LOOK AT THE DOCUMENT, THE HEARSAY EXCEPTION

09:56AM 10    IS SATISFIED.

09:56AM 11        THEY SHOULD HAVE A WITNESS, EITHER FROM THERANOS OR THE

09:56AM 12    FDA, TO -- AND I DON'T CONCEDE SOMEONE FROM THERANOS CAN DO

09:56AM 13    THAT -- BUT A WITNESS OTHER THAN AN ORRICK PARALEGAL TO LAY THE

09:56AM 14    FOUNDATION FOR THE HEARSAY EXCEPTION.

09:56AM 15        EVERYTHING THAT MS. WALSH HAS SAID IS EQUALLY TRUE OF THE

09:57AM 16    CMS INSPECTION REPORT.  THERE'S NO WAY ON EARTH THAT THEY WOULD

09:57AM 17    HAVE PERMITTED THAT TO COME IN WITHOUT SOME LEVEL OF

09:57AM 18    FOUNDATION, AND THOSE EXACT SAME PRINCIPLES APPLY HERE.

09:57AM 19            MS. WALSH:  MAY I BE HEARD ON THAT, YOUR HONOR?

09:57AM 20            THE COURT:  YES.

09:57AM 21            MS. WALSH:  SO ON PAGES 7 THROUGH 8 OF OUR BRIEF

09:57AM 22    1470, IT SETS FORTH A CASE, UNITED STATES VERSUS

09:57AM 23    LOYOLA-DOMINGUEZ, FROM THE NINTH CIRCUIT THAT SAYS THAT THE

09:57AM 24    PUBLIC RECORDS EXCEPTION IS ONE OF THE FEW HEARSAY EXCEPTIONS

09:57AM 25    THAT DOES NOT REQUIRE A FOUNDATION.

09:57AM  1        INSTEAD, DOCUMENTS THAT FALL UNDER THE PUBLIC RECORDS

09:57AM  2   EXCEPTION ARE PRESUMED TRUSTWORTHY, PLACING THE BURDEN OF

09:57AM  3   UNTRUSTWORTHINESS ON THE OPPONENT OF THE EVIDENCE.

09:57AM  4        AND I THINK THAT'S EXACTLY WHAT IS THE CASE HERE, THAT ON

09:57AM  5   THE FACE OF THIS DOCUMENT, YOU DON'T NEED A WITNESS TO MEET THE

09:57AM  6   HEARSAY EXCEPTION HERE.

09:57AM  7        I'M SORRY, JUST ONE MORE THING AS FAR AS THE CITATION TO

09:57AM  8   MR. EDLIN.

09:58AM  9        MR. EDLIN DID TESTIFY ABOUT THE FDA CLEARANCE.  MY

09:58AM 10   RECOLLECTION IS THAT HE DIDN'T TALK ABOUT THE CLIA WAIVER.

09:58AM 11        AND THE CLIA WAIVER IS RELEVANT BECAUSE IT RELATES TO

09:58AM 12   THERANOS'S MOVING INTO PHASE II OF ITS BUSINESS MODEL, WHICH WE

09:58AM 13   HEARD ABOUT THROUGH TESTIMONY, PHASE II BEING MOVING FROM THE

09:58AM 14   CENTRAL LAB MODEL WHERE THE SAMPLES ARE SENT FROM WALGREENS TO

09:58AM 15   THERANOS TO BE TESTED, TO PLACING THE DEVICES IN THE STORES.

09:58AM 16   AND THE CLIA WAIVER IS THE MECHANISM AND THE TOOL TO ENABLE

09:58AM 17   THAT TO HAPPEN.

09:58AM 18        THE COURT:  SO IS THERE SOME AMBIGUITY IN THIS?  DO

09:59AM 19   WE HAVE -- IS THERE A VACUUM HERE THAT -- THE FIRST PARAGRAPH

09:59AM 20   OF THE LETTER SAYS THAT "WE'RE PLEASED TO INFORM YOU THAT YOUR

09:59AM 21   TEST SYSTEM AS IDENTIFIED BELOW IS WAIVED," AND THEN IT SAYS,

09:59AM 22   "SEE ATTACHMENT."

09:59AM 23        MS. WALSH:  RIGHT.

09:59AM 24        MR. LEACH:  THERE IS --

09:59AM 25        MS. WALSH:  THERE IS AN ATTACHMENT.

6526

09:59AM  1            THE COURT:  WHICH IS THE ATTACHMENT?

09:59AM  2            MS. WALSH:  PAGE 3 -- ACTUALLY PAGE 151 OF THE

09:59AM  3   DOCKET FILING.

09:59AM  4            THE COURT:  THE PATENT NUMBER KL43236?

09:59AM  5            MS. WALSH:  YEAH.  IT'S ACTUALLY A PARENT NUMBER.

09:59AM  6            THE COURT:  OH, PARENT NUMBER, I PEG YOUR PARDON.

09:59AM  7         THIS IS THE ATTACHMENT AND THIS IS PART OF THE SAME

09:59AM  8   EXHIBIT?

09:59AM  9            MS. WALSH:  CORRECT.

09:59AM  10           THE COURT:  AND IT SAYS, "TEST SYSTEM ANALYTE

09:59AM  11  COMPLEXITY."  I SEE.  OKAY.

10:00AM  12        DOES 803(8)(B) SUGGEST THAT THE OPPONENT HAS AN OBLIGATION

10:00AM  13  TO SHOW THAT THE SOURCE OF INFORMATION OR OTHER CIRCUMSTANCES

10:00AM  14  INDICATE THE LACK OF TRUSTWORTHINESS?  IS THAT WHAT THAT TELLS

10:00AM  15  US?  AND THAT'S THE ISSUE HERE, I THINK, REGARDING THIS

10:00AM  16  EXCEPTION.

10:00AM  17        AND WHAT I, WHAT I HEARD US TALK ABOUT WAS THE

10:00AM  18  AUTHENTICITY IS NOT AT ISSUE, AND SO FOR HEARSAY ONE OF THE

10:00AM  19  QUESTIONS IS WHETHER OR NOT THERE IS A RELIABILITY, A CONCERN

10:01AM  20  ABOUT THE RELIABILITY, AUTHENTICITY OF IT.

10:01AM  21        THIS EXCEPTION SAYS, WELL, IT'S A PUBLIC RECORD OF, IN

10:01AM  22  THIS CASE, THE FEDERAL GOVERNMENT.  THE RELIABILITY SHOULD NOT

10:01AM  23  BE QUESTIONED BECAUSE IT'S AN FDA LETTER, AND THERE'S NO

10:01AM  24  QUESTION THAT THE LETTER IS FABRICATED OR OTHERWISE OTHER THAN

10:01AM  25  AUTHENTIC.

10:01AM 1          MR. LEACH:  I'M NOT ARGUING, YOUR HONOR, THAT THE

10:01AM 2    LETTER IS NOT WHAT IT APPEARS TO BE.

10:01AM 3          I AM ARGUING THAT THERE IS NUANCE AND MEANING AND

10:01AM 4    COMPLEXITY TO THE WORDS THAT ARE IN THE LETTER, AND WITHOUT AN

10:01AM 5    FDA WITNESS TO EXPLAIN, THIS IS WHAT I MEANT BY THIS, THIS IS

10:01AM 6    WHAT WE WERE DOING, THIS IS THE DUTY UNDER WHICH I WAS

10:01AM 7    OBSERVING ALL OF THE MATTERS, THIS IS THE LIMIT OF WHAT I WAS

10:01AM 8    DOING, IT'S SIMPLY NOT APPROPRIATE TO OFFER THE DOCUMENT

10:01AM 9    WITHOUT SOMEBODY WHO CAN EXPLAIN THOSE THINGS.

10:01AM 10         AND IT'S BOTH A FOUNDATIONAL ELEMENT OF 803(8) -- AND IT'S

10:02AM 11   NOT THE RELIABILITY OF THE PIECE OF PAPER, BUT, YOU KNOW, WHAT

10:02AM 12   DOES THIS MEAN, AND WHAT INFERENCES ARE FAIR TO DRAW AND NOT

10:02AM 13   FAIR TO DRAW FROM THIS, THAT GIVES RISE TO THE 803(8)

10:02AM 14   OBJECTION, AS WELL AS A 403 AND 702 ISSUE.

10:02AM 15         SO ALL WE'RE GOING TO HAVE ON THE STAND IS AN ORRICK

10:02AM 16   PARALEGAL.  I'M NOT GOING TO BE ABLE TO ASK THE ORRICK

10:02AM 17   PARALEGAL, WHAT IS THIS ANALYTE?  AND DID THE FDA DO TO DO

10:02AM 18   THIS?

10:02AM 19         AND WE'VE REQUIRED A FOUNDATION FOR EVERY OTHER DOCUMENT

10:02AM 20   THAT COMES IN UNDER A HEARSAY EXCEPTION.  I DON'T THINK THERE'S

10:02AM 21   SOME SPECIAL RULE FOR 803(8), AND CERTAINLY NOT THIS TYPE OF

10:02AM 22   803 -- THIS TYPE OF GOVERNMENT DOCUMENT.

10:02AM 23         SO IT'S NOT A MATTER OF, IS THIS REALLY A DOCUMENT FROM

10:02AM 24   THE FDA?

10:02AM 25         IT'S REALLY, WHAT DO THESE WORDS MEAN?  WHAT DID THE FDA

10:02AM 1    DO?  WHAT WAS ITS DUTY?  ARE THESE FOUNDATIONAL ELEMENTS MET?

10:02AM 2        AND, UNDER 403, DOES THIS HAVE SOME DANGER OF MISLEADING

10:03AM 3    OR CONFUSING JURORS WHEN THE ONLY WITNESS IS A PARALEGAL?

10:03AM 4        THE COURT:  DO YOU WANT TO RESPOND TO THE 403?

10:03AM 5        MS. WALSH:  TO ALL OF IT, YOUR HONOR.

10:03AM 6    SO THERE WAS AN EXHIBIT, AT LEAST ONE, THAT CAME IN

10:03AM 7    WITHOUT A WITNESS TO LAY THE 803(8) FOUNDATION, AND THAT WAS

10:03AM 8    THE CDC REPORT REGARDING THE STEPS THAT A LAB IS SUPPOSED TO GO

10:03AM 9    THROUGH WITH AN HIV TEST.  THAT CAME IN WITH A WITNESS WHO HAD

10:03AM 10   NO IDEA WHAT THE MEANING OF THE DOCUMENT WAS, AND IT CAME IN.

10:03AM 11       AND SHE COULD NOT LAY THE FOUNDATION UNDER 803(8), AND

10:03AM 12   THAT CAME INTO EVIDENCE.

10:03AM 13       I THINK THE SAME RULE SHOULD APPLY HERE.

10:03AM 14       AS TO THE 403 ARGUMENTS, ALL OF THOSE GO TO WEIGHT.  WHAT

10:03AM 15   THE DOCUMENT MEANS AND WHAT ARGUMENTS THE PARTIES CAN MAKE ARE

10:03AM 16   ALL A MATTER OF WEIGHT.  THEY DO NOT GO TO THE ADMISSIBILITY OF

10:03AM 17   THIS AS A PUBLIC RECORD.

10:03AM 18       THE COURT:  I THINK WHAT I HEARD MR. LEACH SAY AND

10:03AM 19   WHAT RESONATES IS, WILL THE JURY BE CONFUSED BY SOME OF THE

10:04AM 20   INFORMATION THAT IS CONTAINED IN THE LETTER WHEN THEY DON'T

10:04AM 21   HAVE TESTIMONY REGARDING IT?

10:04AM 22       AND I UNDERSTAND THE PARTIES CAN ARGUE WHATEVER THE LETTER

10:04AM 23   SAYS OR DOESN'T SAY, WHETHER OR NOT THERE'S BEEN TESTIMONY

10:04AM 24   ABOUT THE SUBSTANCE OF THE LETTER.

10:04AM 25       BUT IS THERE A CONCERN THAT THE JURY MIGHT BE CONFUSED OR

10:04AM   1    CAUSE JURY CONFUSION IF THIS IS ADMITTED FOR SOMETHING OTHER

10:04AM   2    THAN NOTICE, THAT IS, THE TRUTH OF WHAT THE LETTER ASSERTS?

10:04AM   3          MS. WALSH:  YEAH.  AND I GUESS THAT -- I THINK

10:04AM   4    THROUGH THE COURSE OF THIS TRIAL WE HAVE HAD A LOT OF

10:04AM   5    COMPLICATED SUBJECT MATTERS THAT LOTS OF DOCUMENTS HAVE COME

10:04AM   6    IN, BOTH FROM THE GOVERNMENT AND THE DEFENSE, VALIDATION

10:04AM   7    REPORTS, PHARMACEUTICAL STUDIES, ASSAY COMPARISONS IN THE SLIDE

10:04AM   8    DECK THAT THERANOS SENT TO INVESTORS.  THERE HAS BEEN A LOT OF

10:04AM   9    COMPLICATED SCIENTIFIC EVIDENCE, MUCH MORE COMPLICATED THAN

10:04AM   10   THIS.

10:04AM   11        SO I DON'T THINK, GIVEN THE NATURE OF THE EVIDENCE THAT

10:04AM   12   HAS COME IN SO FAR IN THE TRIAL, THAT THIS LETTER GIVING CLIA

10:05AM   13   WAIVER WILL BE CONFUSING.

10:05AM   14          THE COURT:  OKAY.  THANK YOU.

10:05AM   15        MR. LEACH.

10:05AM   16          MR. LEACH:  SUBMITTED, YOUR HONOR.

10:05AM   17          THE COURT:  OKAY.  THANK YOU.  LET'S MOVE TO 12689

10:05AM   18   AND TALK ABOUT THOSE.

10:05AM   19        I SEE THE CHART.  THANK YOU FOR PUTTING THIS CHART IN YOUR

10:05AM   20   PLEADING.  IT'S ON PAGE 11, ECF 12 OF YOUR MOTION.

10:05AM   21        LET'S START WITH NUMBER 1.  IS THAT -- I JUST WANT TO MAKE

10:05AM   22   SURE THAT I'M READING YOUR CHART CORRECTLY.  IS THAT

10:05AM   23   EXHIBIT 7098?

10:05AM   24          MS. WALSH:  YES, IT IS, 7098, CORRECT.

10:05AM   25          THE COURT:  OKAY.

| | |
|---|---|
| 10:05AM 1 | MS. WALSH:  AND 7098 IS AN EMAIL FROM IAN GIBBONS TO |
| 10:05AM 2 | SUNNY BALWANI AND ELIZABETH HOLMES ON FEBRUARY 18TH, 2010, AND |
| 10:06AM 3 | IT ATTACHES A POWERPOINT PRESENTATION. |
| 10:06AM 4 | WE ARE OFFERING ONLY PAGES WITH THE BATES NUMBERS 15025 |
| 10:06AM 5 | AND 15026, WHICH ARE PART OF A LONGER PRESENTATION, BUT THOSE |
| 10:06AM 6 | ARE THE PAGES THAT WE ARE GOING TO OFFER, OR SEEK TO OFFER. |
| 10:06AM 7 | IAN GIBBONS WAS THERANOS'S CHIEF SCIENTIST IN 2010.  THAT |
| 10:06AM 8 | WAS ESTABLISHED BY MR. EDLIN IN HIS TESTIMONY. |
| 10:06AM 9 | AND THE RELEVANCE OF THIS IS THAT DR. GIBBONS EXPRESSES |
| 10:06AM 10 | HIS VIEWS ABOUT THE CAPABILITY OF THERANOS TECHNOLOGY, AND THE |
| 10:06AM 11 | CAPABILITY OF THERANOS TECHNOLOGY IS AT THE CENTER OF THIS |
| 10:06AM 12 | CASE, SO IT IS HIGHLY PROBATIVE THAT THIS IS BEING SENT TO |
| 10:06AM 13 | MR. BALWANI AND IT GOES TO HIS STATE OF MIND IN AS EARLY AS |
| 10:07AM 14 | 2010 AS TO WHAT HE IS BEING TOLD REGARDING THERANOS |
| 10:07AM 15 | TECHNOLOGY'S CAPABILITY. |
| 10:07AM 16 | THE COURT:  SO YOU'RE SEEKING TO ADMIT THIS NOT FOR |
| 10:07AM 17 | THE TRUTH, BUT ONLY AS TO THE ISSUE OF NOTICE, AND AGAIN, |
| 10:07AM 18 | THIS -- AND LET ME REPEAT THAT COLLOQUY THAT WE HAD, NOTICE OF |
| 10:07AM 19 | THE CONTENTS OF THE EMAIL THAT MR. BALWANI RECEIVED? |
| 10:07AM 20 | MS. WALSH:  THAT'S FAIR, YOUR HONOR.  THE CONTENT OF |
| 10:07AM 21 | THE EMAIL AND THE ATTACHED PAGES IS HOW I WOULD REQUEST IT. |
| 10:07AM 22 | THE COURT:  MR. LEACH. |
| 10:07AM 23 | MR. LEACH:  YOUR HONOR, THE GOVERNMENT OBJECTS UNDER |
| 10:07AM 24 | RULE 403, AND OUR OBJECTION LIES PRIMARILY -- I THINK IT'S |
| 10:07AM 25 | MISLEADING, FIRST OF ALL, TO SUBMIT JUST TWO PAGES OF THIS |

10:07AM 1    DOCUMENT.  IT'S -- WHAT THIS IS IS A FEBRUARY 2010 EMAIL FROM

10:07AM 2    DR. GIBBONS ATTACHING A 111 PAGE POWERPOINT.  IT'S CLEARLY A

10:08AM 3    DRAFT POWERPOINT.  THIS WAS ADMITTED IN THE HOLMES TRIAL AT

10:08AM 4    EXHIBIT 7098 WHEN SHE TESTIFIED ABOUT IT.

10:08AM 5        IT'S CLEARLY A DRAFT.  THERE ARE SOME BLANK SPACES IN IT.

10:08AM 6    THERE'S DISCUSSION OF SUBSTANTIAL ADDITIONAL WORK BY THERANOS

10:08AM 7    AND NUMEROUS LIMITATIONS OF ITS TECHNOLOGY AT THE TIME.

10:08AM 8        THERE'S DISCUSSION IN THE FULL POWERPOINT OF CANDIDATE

10:08AM 9    TECHNOLOGIES THAT THEY NEED TO FIND.

10:08AM 10       THERE'S NOTES FOR TBD, TO BE DETERMINED, ABOUT WHAT WE'RE

10:08AM 11   GOING TO DO ON THIS AND WHAT WE'RE GOING TO DO ON THAT.

10:08AM 12       AND IT'S IMPORTANT THAT THIS IS COMING FROM DR. GIBBONS

10:08AM 13   BECAUSE I THINK THIS HAS GREAT POTENTIAL TO MISLEAD AND CONFUSE

10:08AM 14   THE JURY ABOUT WHAT DR. GIBBONS THOUGHT.

10:08AM 15       DR. GIBBONS, THIS WAS THE SUBJECT OF SOME MOTION IN LIMINE

10:09AM 16   PRACTICE IN THE HOLMES CASE, UNFORTUNATELY PASSED AWAY IN 2013.

10:09AM 17   HIS WIDOW TOLD THE GOVERNMENT IN AN INTERVIEW THAT IN 2013

10:09AM 18   DR. GIBBONS HAD CONCERNS ABOUT THERANOS'S TECHNOLOGY AND WAS

10:09AM 19   DISTRESSED ABOUT THINGS THAT MS. HOLMES WAS SAYING.

10:09AM 20       IF -- IN 2015, THE DEFENDANT AND MS. HOLMES ARE TEXTING

10:09AM 21   BACK AND FORTH ABOUT SUSPECTING ROCHELLE GIBBONS TO BE THE

10:09AM 22   SOURCE FOR MR. CARREYROU'S ARTICLE, OR ONE OF THE SOURCES.

10:09AM 23       AND IN CONNECTION WITH THAT, MR. BALWANI AND MS. HOLMES,

10:09AM 24   THROUGH AN EMAIL BY HEATHER KING TO MR. CARREYROU, SAYS THAT

10:10AM 25   DR. GIBBONS IS NOT A TRUSTWORTHY SOURCE, A CREDIBLE FOR

10:10AM  1    THERANOS TECHNOLOGY.

10:10AM  2         AND I RAISE ALL OF THIS BECAUSE THEY'RE TRYING TO PUT TWO

10:10AM  3    PAGES OF A 111 PAGE POWERPOINT INTO EVIDENCE TO SAY,

10:10AM  4    ESSENTIALLY, I RELIED ON DR. GIBBONS, WHEN THE ENTIRE STORY IS

10:10AM  5    MUCH MORE COMPLICATED.

10:10AM  6         THE DEFENDANT'S OWN WORDS ARE, "YOU SHOULDN'T RELY ON

10:10AM  7    DR. GIBBONS."

10:10AM  8         AND FOR THOSE REASONS I THINK THIS HAS A LOT OF POTENTIAL

10:10AM  9    TO MISLEAD AND CONFUSE THE JURY.

10:10AM 10         AND AT A MINIMUM, IF THIS COMES IN, THE ENTIRE DOCUMENT

10:10AM 11    NEEDS TO COME IN, BECAUSE I THINK IF YOU LOOK AT THE ENTIRE

10:10AM 12    DOCUMENT, IT'S CLEARLY A DRAFT, IT'S CLEARLY A WORK IN

10:10AM 13    PROGRESS, IT'S CLEARLY AN EARLY ITERATION, AND THERE'S ANOTHER

10:10AM 14    SIDE TO THIS STORY THAT IS NOT BELIED BY THESE SINGLE THREE

10:10AM 15    PAGES OF A DOCUMENT.

10:10AM 16         THE COURT:  I HEAR MR. LEACH SUGGESTING, UNDER 106,

10:11AM 17    THE ENTIRETY OF THE DOCUMENT SHOULD COME IN, OR CERTAIN

10:11AM 18    PORTIONS SHOULD COME IN SHOULD THE GOVERNMENT DECIDE TO PUT

10:11AM 19    ADDITIONAL PORTIONS IN.

10:11AM 20         MS. WALSH:  SURE.  AND IF THERE ARE 106 ADDITIONS,

10:11AM 21    WE'RE FINE WITH THAT.

10:11AM 22         THE COURT:  AND AGAIN, IT COMES IN -- YOU'RE SEEKING

10:11AM 23    IT ONLY IN FOR NOTICE OF RECEIPT OF THIS INFORMATION?

10:11AM 24         MS. WALSH:  CORRECT.

10:11AM 25         THE COURT:  NOT FOR THE TRUTH OF THE MATTER

10:11AM 1     ASSERTED?

10:11AM 2              MS. WALSH:  THAT'S CORRECT, YOUR HONOR.

10:11AM 3              THE COURT:  AND, MR. LEACH, IF THE GOVERNMENT -- IF

10:11AM 4     THE COURT ALLOWS THIS TO COME IN, THE GOVERNMENT, UNDER 106,

10:11AM 5     WOULD BE PERMITTED TO PUT IN EITHER THE ENTIRETY OF THE

10:11AM 6     DOCUMENT, WHICH WOULD ALLOW YOU BOTH TO ARGUE IT, WHATEVER IT

10:11AM 7     IS, IF IT'S A DRAFT OR WHATEVER.

10:11AM 8          YOU WOULDN'T BE -- IT DOESN'T SOUND LIKE YOU WOULD BE

10:11AM 9     PRECLUDED, IN A REBUTTAL CASE, FOR PUTTING IN THE OTHER

10:11AM 10    INFORMATION THAT YOU TALKED ABOUT IF THAT'S WHAT YOU SEEK TO

10:11AM 11    DO.

10:12AM 12             MR. LEACH:  WELL, I THINK IT WOULD BE APPROPRIATE TO

10:12AM 13    DO ON CROSS-EXAMINATION, YOUR HONOR.  I'M TRYING TO SPARE ALL

10:12AM 14    OF US THAT STORY FOR THE VERY LIMITED PROBATIVE VALUE OF

10:12AM 15    MR. BALWANI RECEIVED THIS EMAIL IN FEBRUARY OF 2010.

10:12AM 16         THERE'S NO EVIDENCE THAT HE READ IT.  THERE'S NO EVIDENCE

10:12AM 17    THAT HE FORWARDED IT.

10:12AM 18             THE COURT:  SURE.

10:12AM 19             MR. LEACH:  THERE'S NO EVIDENCE THAT HE FOCUSSED ON

10:12AM 20    THESE TWO PAGES AS OPPOSED TO SOMETHING ELSE.

10:12AM 21         I GRANT YOU THIS PASSED THROUGH HIS IN BOX, AND THERE'S AN

10:12AM 22    ARGUMENT THAT IT HAS SOME PROBATIVE VALUE.

10:12AM 23         BUT THE WHOLE STORY IS, I THINK, AN INCREDIBLY WEAK

10:12AM 24    INFERENCE THAT MR. BALWANI RELIED ON THIS SINGLE POWERPOINT

10:12AM 25    FROM FEBRUARY OF 2010, AND IT HAS THE RISK OF CONFUSING THE

10:12AM   1    JURY ABOUT HOW MUCH MR. BALWANI REALLY PUT FAITH IN WHAT

10:12AM   2    DR. GIBBONS HAD TO SAY.

10:12AM   3           THE COURT:  OKAY.  ANYTHING FURTHER ON THIS THEN?

10:13AM   4           MS. WALSH:  YOUR HONOR, JUST ON THE ISSUE OF WHAT

10:13AM   5    DR. GIBBONS'S WIDOW TOLD THE GOVERNMENT.  SHE WASN'T A WITNESS

10:13AM   6    IN THIS CASE.  THERE WAS NO EVIDENCE ABOUT WHAT SHE EITHER SAID

10:13AM   7    OR TOLD MR. BALWANI.

10:13AM   8        THIS IS COMING IN FOR NOTICE TO MR. BALWANI, SO ANY

10:13AM   9    CROSS-EXAMINATION HAS TO BE TETHERED TO SOMETHING THAT

10:13AM  10    POTENTIALLY UNDERMINES NOTICE TO HIM, NOT JUST KICKING UP DUST

10:13AM  11    ABOUT DR. GIBBON'S WIDOW BEING UNHAPPY WITH THERANOS FOR

10:13AM  12    WHATEVER REASONS.

10:13AM  13        AS TO THERE'S A LOT MORE TO THE STORY AND THIS IS ONLY A

10:13AM  14    DRAFT, AGAIN, THOSE ARGUMENTS GO TO THE WEIGHT OF THE DOCUMENT,

10:13AM  15    NOT TO ITS ADMISSIBILITY.

10:13AM  16           THE COURT:  WELL, I DIDN'T HEAR MR. LEACH SAYING

10:13AM  17    THAT HE INTENDS TO CALL SOMEBODY TO TESTIFY ABOUT THE WIDOW.  I

10:13AM  18    THINK THIS WAS JUST CONTEXT FOR THE DISCUSSION.

10:13AM  19        IS THAT RIGHT, MR. LEACH?

10:13AM  20           MR. LEACH:  I, I DON'T INTEND TO CALL MS. GIBBONS,

10:14AM  21    BUT I DO INTEND TO CROSS-EXAMINE WHOEVER IS ON THE STAND WITH

10:14AM  22    APPROPRIATE DOCUMENTS THAT I THINK ARE ADMISSIBLE ON THEIR OWN

10:14AM  23    THAT WILL REFER TO DR. GIBBONS'S PASSING, AND WE'LL REFER TO

10:14AM  24    THE FACT THAT ROCHELLE WAS HIS WIDOW.

10:14AM  25        I MAY RECALL SOME OF THE TEXTS WHERE MR. BALWANI IS

6535

10:14AM  1    EXPRESSING ANGST ABOUT HER BEING A SOURCE FOR CARREYROU, AND I

10:14AM  2    WOULD DO IT THROUGH ADMISSIBLE EVIDENCE.

10:14AM  3              THE COURT:  OKAY.

10:14AM  4              MR. LEACH:  BUT I THINK THE BASIC POINT IS

10:14AM  5    MR. BALWANI -- DR. GIBBON'S VIEWS ABOUT THERANOS TECHNOLOGY

10:14AM  6    CHANGED, AND IF THEY'RE GOING TO ARGUE THAT HE RELIED ON

10:14AM  7    DR. GIBBONS, I SHOULD BE ENTITLED TO SHOW AT A DIFFERENT POINT

10:14AM  8    IN TIME HE DID NOT RELY ON DR. GIBBONS.

10:14AM  9              THE COURT:  OKAY.

10:14AM  10             MS. WALSH:  IF THAT WAS SHOWN TO MR. BALWANI.  THIS

10:14AM  11   GOES TO MR. BALWANI'S STATE OF MIND IN 2010.

10:14AM  12             THE COURT:  RIGHT.  OKAY.  SO THIS IS ONLY FOR

10:15AM  13   NOTICE AND NOT FOR THE TRUTH OF THE MATTER ASSERTED, THERE'S A

10:15AM  14   403 OBJECTION ON THAT, AND/OR YOU HAVE, THE DEFENSE HAS NO

10:15AM  15   OBJECTION FOR THE ENTIRETY OF THE DOCUMENT TO COME IN, OR

10:15AM  16   PORTIONS OF IT IF OFFERED BY THE GOVERNMENT.

10:15AM  17             MS. WALSH:  YES, YOUR HONOR.

10:15AM  18             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:15AM  19        LET'S MOVE TO NUMBER 2.  THIS IS 15004, EMAILS TO

10:15AM  20   MR. BALWANI REGARDING THERANOS TECHNOLOGY CAPABILITIES.

10:15AM  21        IS THERE A STIPULATION ON THIS?

10:15AM  22             MR. LEACH:  NO, YOUR HONOR.

10:15AM  23        THIS IS, THIS IS AN EMAIL FROM DR. GIBBONS -- THERE IS AN

10:15AM  24   AGREEMENT THAT THE EMAIL IS AUTHENTIC.

10:15AM  25             THE COURT:  I SEE.

10:15AM  1           MR. LEACH:  THE GOVERNMENT HAS A 403 OBJECTION

10:15AM  2    SIMILAR TO THE ONE WITH RESPECT TO EXHIBIT 1 THAT WE JUST

10:15AM  3    REVIEWED.

10:15AM  4        THIS IS AN EMAIL FROM DR. GIBBONS TO MS. HOLMES AND

10:16AM  5    SUREKHA GANGADKHEDKAR WITH A COPY TO MR. BALWANI.

10:16AM  6        AND OUR CONCERNS HERE ARE SIMILAR.  DR. GIBBONS HAS PASSED

10:16AM  7    AWAY, WE CAN'T EXAMINE HIM ABOUT WHAT HE MEANT IN THIS, WHETHER

10:16AM  8    OR NOT THESE ARE ARGUMENTS THAT HE WANTS TO PUT FORTH OR

10:16AM  9    GENUINE CONCLUSIONS THAT HE HAD REACHED ABOUT THE TECHNOLOGY.

10:16AM 10        AND THERE'S EVERY REASON TO THINK THAT MR. BALWANI DID NOT

10:16AM 11    PUT WEIGHT ON THESE STATEMENTS AT A LATER POINT IN TIME.

10:16AM 12        SO FOR ALL OF THE REASONS THAT WE OBJECTED TO EXHIBIT 1,

10:16AM 13    WE HAVE A SIMILAR OBJECTION TO EXHIBIT 2.

10:16AM 14           THE COURT:  OKAY.  THANK YOU.

10:16AM 15        MS. WALSH.

10:16AM 16           MS. WALSH:  YES, THANK YOU, YOUR HONOR.

10:16AM 17        SO ALL OF THOSE ARGUMENT AGAIN GO TO THE WEIGHT OF THIS

10:16AM 18    DOCUMENT.  THIS DOCUMENT WE ARE OFFERING FOR NOTICE TO

10:16AM 19    MR. BALWANI AS TO WHAT DR. GIBBONS WAS SAYING ABOUT THERANOS

10:16AM 20    TECHNOLOGY IN 2010.

10:16AM 21        AND SPECIFICALLY THE RELEVANCE IS REALLY TWO-FOLD, IT'S

10:17AM 22    ABOUT THE CAPABILITIES OF THERANOS TECHNOLOGY, BUT IT'S ALSO

10:17AM 23    RELATING TO A PRESENTATION TO GSK, WHICH IS ONE OF THE PHARMA

10:17AM 24    COMPANIES.

10:17AM 25        AND DR. GIBBONS IS TALKING ABOUT, I THINK WE HAVE

10:17AM 1    DEMONSTRATED CAPABILITIES FULLY EQUIVALENT TO LAB METHODS IN

10:17AM 2    AREAS WHERE WE HAVE DONE ASSAY DEVELOPMENT, AND HE GOES ON TO

10:17AM 3    SAY POSITIVE THINGS ABOUT THE THERANOS TECHNOLOGY IN THE

10:17AM 4    CONTEXT OF CREATING A SLIDE DECK FOR GSK.

10:17AM 5         THE GOVERNMENT, THROUGH THIS TRIAL, HAS PRESENTED EVIDENCE

10:17AM 6    THAT MS. HOLMES AND MR. BALWANI FALSELY REPRESENTED TO

10:17AM 7    INVESTORS THAT PHARMA COMPANIES VALIDATED THERANOS TECHNOLOGY,

10:17AM 8    AND THEY PRESENTED WITNESSES ON THAT ISSUE, A WITNESS FROM

10:17AM 9    SCHERING-PLOUGH, AND A WITNESS FROM PFIZER.

10:17AM 10        THEY DID NOT CALL A WITNESS FROM GSK.

10:17AM 11        AND THIS DOCUMENT TENDS TO REBUT THAT ASSERTION AT LEAST

10:18AM 12   AS FAR AS MR. BALWANI UNDERSTOOD IN 2010.

10:18AM 13             THE COURT:  THE SUBJECT MATTER ON THESE EMAILS IS

10:18AM 14   ALL GSK, I BELIEVE?

10:18AM 15             MS. WALSH:  YES.

10:18AM 16             THE COURT:  MR. LEACH.

10:18AM 17             MR. LEACH:  ASSUMING HE READ IT, ASSUMING HE PUT ANY

10:18AM 18   WEIGHT ON IT, ASSUMING THAT SOMETHING DIDN'T HAPPEN AFTER THE

10:18AM 19   FACT.

10:18AM 20        THERE ARE -- I CONCEDE THERE IS A LITTLE BIT OF PROBATIVE

10:18AM 21   VALUE TO THIS, BUT WITHOUT DR. GIBBONS EXPLAINING THE WHOLE

10:18AM 22   CONTEXT THAT I'VE DESCRIBED, THAT MR. GIBBONS BY 2013 HAD GRAVE

10:18AM 23   CONCERNS ABOUT THE TECHNOLOGY, AND MR. BALWANI, ALONG WITH

10:19AM 24   HEATHER KING AND ELIZABETH HOLMES, SAID HE'S NOT A CREDIBLE

10:19AM 25   SOURCE OF THE STATE OF THERANOS'S TECHNOLOGY, IT HAS GREAT

10:19AM  1    POTENTIAL TO MISLEAD AND CONFUSE THE JURY, AND OUR ARGUMENTS

10:19AM  2    ARE ESSENTIALLY 403.

10:19AM  3            THE COURT:  OKAY.

10:19AM  4            MR. LEACH:  MAY I ADD, YOUR HONOR, IF THE COURT

10:19AM  5    OVERRULES THE OBJECTION AND PROVIDES SOME TYPE OF LIMITING

10:19AM  6    INSTRUCTION, I WOULD URGE THE COURT, LIKE THE OTHER ONES, TO

10:19AM  7    LIMIT IT TO THE MATTERS SET FORTH IN THE EMAIL OR REGARDING THE

10:19AM  8    SUBJECT GSK.

10:19AM  9        I THINK THE PARTIES HAVE SIGNIFICANT DISAGREEMENTS OVER

10:19AM  10   THE IMPORT OF THIS AND WHAT EXACTLY IS BEING SAID TO

10:19AM  11   MR. BALWANI HERE.

10:19AM  12           THE COURT:  WELL, THANK YOU.

10:19AM  13       AND THAT'S AN ISSUE WHEN EMAILS, OTHER ITEMS, ARE

10:19AM  14   INTRODUCED NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT MERELY

10:19AM  15   FOR NOTICE.

10:19AM  16       WHAT THAT REALLY DOES IS IT ALLOWS THE PARTIES TO ARGUE

10:20AM  17   JUST WHAT INFERENCES ARE APPROPRIATE OR NOT APPROPRIATE TO BE

10:20AM  18   DRAWN FROM THE DOCUMENT, THE EMAIL, WHATEVER IT IS, BECAUSE

10:20AM  19   IT'S NOT OFFERED FOR THE TRUTH OF WHAT IS SAID IN THERE AND THE

10:20AM  20   PARTIES ARE, IN THOSE CIRCUMSTANCES, PERMITTED TO ARGUE THEIR

10:20AM  21   OPINIONS, AND THE JURY'S JOB IS TO LISTEN AND MAKE DECISIONS

10:20AM  22   BASED ON THE ARGUMENTS, THE EVIDENCE, AND THE INSTRUCTIONS.

10:20AM  23           MS. WALSH:  RIGHT.

10:20AM  24           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:20AM  25       LET'S GO TO THE NEXT ONE.  I BELIEVE NEXT IS 6.

10:20AM  1               MS. WALSH:  YES.

10:20AM  2               THE COURT:  MS. WALSH, WHAT ABOUT 6?

10:20AM  3               MS. WALSH:  SO 6 IS THE FDA'S 510(K) APPROVAL OF

10:20AM  4     THAT SAME ASSAY WE WERE TALKING ABOUT IN CONNECTION WITH THE

10:20AM  5     CLIA WAIVER.

10:20AM  6               THE COURT:  6 IS LONG YOU WERE GOING TO SAY, RIGHT?

10:20AM  7               MS. WALSH:  I WAS GOING TO SAY THAT, YES, IT IS

10:20AM  8     LONG.

10:21AM  9          AND THE FIRST PAGE OF THE EXHIBIT IS A SCREENSHOT OF WHAT

10:21AM  10    EXISTS ON THE FDA WEBSITE TODAY, AND THE PARALEGAL WILL BE ABLE

10:21AM  11    TO TESTIFY THAT HE WENT TO THE WEBSITE, HE -- THIS IS WHAT HE

10:21AM  12    SAW.  HE FOUND THE 510(K) CLEARANCE AND HE PULLED IT UP.

10:21AM  13         AND THEN THE CLEARANCE ITSELF IS BEHIND THAT SCREENSHOT.

10:21AM  14              THE COURT:  IS THERE A -- DO YOU NEED -- OH, I SEE

10:21AM  15    ON THE BOTTOM, I THINK IT'S MAY 18TH, 2022.  IS THAT THE TIME

10:21AM  16    STAMP FOR THE SCREENSHOT?

10:21AM  17              MS. WALSH:  CORRECT, YES.

10:21AM  18              THE COURT:  OKAY.  THANK YOU.

10:21AM  19         AND THEN THE ENTIRETY OF THIS DOCUMENT IS WHAT YOU SEEK?

10:21AM  20              MS. WALSH:  WE DO, YOUR HONOR, ALTHOUGH IF THE COURT

10:21AM  21    HAS CONCERN WITH IT, WE HAVE SOME PAGES THAT WE WANT TO

10:22AM  22    HIGHLIGHT.

10:22AM  23         AND IF WE -- IF THE COURT WAS CONCERNED ABOUT THE LENGTH,

10:22AM  24    WE COULD OFFER THE EXHIBIT, SO THE DOCKET FILING PAGE 94 TO

10:22AM  25    103, AND THAT'S MAYBE FIVE -- I GUESS A LITTLE MORE THAN FIVE

10:22AM   1    PAGES.

10:22AM   2              THE COURT:  WELL, THANK YOU.  I LOOK AT -- IT'S A

10:22AM   3    LONG DOCUMENT.  IT HAS A LOT OF CALCULATIONS, INSTRUCTIONS,

10:22AM   4    OTHER INFORMATION THAT IS INCLUDING 510(K), EQUIVALENCY

10:22AM   5    DETERMINATIONS AND THOSE TYPES OF THINGS, AND THAT WAS MY FIRST

10:22AM   6    PASS AT THIS, WAS THIS -- WHAT IS THIS FOR?

10:23AM   7        I THINK YOU'RE SAYING THIS IS NOTICE ALSO?

10:23AM   8              MS. WALSH:  ACTUALLY, WE ARE OFFERING THIS UNDER

10:23AM   9    803(8).

10:23AM  10              THE COURT:  OKAY.

10:23AM  11              MS. WALSH:  IT'S THE FDA APPROVAL OR CLEARANCE, I

10:23AM  12    GUESS, OF THE DEVICE.

10:23AM  13              THE COURT:  SURE.

10:23AM  14              MS. WALSH:  AND THE SPECIFIC PAGES WE WOULD WANT IS

10:23AM  15    PAGE 1, WHICH IS THE SCREENSHOT -- ACTUALLY I'M GOING TO

10:23AM  16    CONFUSE THE RECORD.  I'M GOING TO USE THE DOCKET PAGES.

10:23AM  17        SO PAGE 94 ON THE TOP OF THE DOCUMENT, 95, 96 THROUGH 97

10:23AM  18    IS THE LETTER ITSELF, 98 THROUGH 103 IS SOME DESCRIPTIONS OF

10:23AM  19    THE DEVICE AND DESCRIPTIONS OF THE PRECISION STUDY RESULTS, AND

10:23AM  20    I THINK THOSE ARE RELEVANT BASED ON OTHER EVIDENCE IN THE CASE,

10:24AM  21    SO WE WOULD WANT THOSE.

10:24AM  22              THE COURT:  ENDING AT PAGE 103?

10:24AM  23              MS. WALSH:  THROUGH PAGE 103.

10:24AM  24              THE COURT:  OKAY.

10:24AM  25        MR. LEACH.

10:24AM  1          MR. LEACH:  WE OBJECT, YOUR HONOR, UNDER RULE 104,

10:24AM  2     403, AND 801.

10:24AM  3          THIS IS A 54 PAGE EXHIBIT.  IT INCLUDES PRINTOUTS FROM THE

10:24AM  4     FDA'S WEBSITE, AND A LETTER FROM THE FDA TO SOMEONE NAMED

10:24AM  5     BRAD ARINGTON AT THERANOS.

10:24AM  6          THE LETTER ITSELF MAKES VERY SPECIFIC FACTUAL ASSERTIONS

10:24AM  7     WHICH ARE BEING OFFERED FOR THE TRUTH.

10:24AM  8          THE LETTER ALSO ATTACHES WHAT IS CALLED A FORM 3881, WHICH

10:24AM  9     IS AN APPLICATION BY THERANOS, SO THOSE ARE STATEMENTS BY

10:25AM 10     THERANOS, NOT MERELY THE FDA.

10:25AM 11          THE DOCUMENT IS HEARSAY.  IT COMPRISES OUT OF COURT

10:25AM 12     STATEMENTS BY THERANOS AND THE FDA.  THERE'S NO FOUNDATION FOR

10:25AM 13     RULE 803(8), THE PUBLIC RECORDS EXCEPTION.

10:25AM 14          THIS IS SIGNIFICANTLY MORE COMPLICATED THAN THE ONE PAGE

10:25AM 15     DOCUMENT THAT WE LOOKED AT ON THE CLIA WAIVER IN EXHIBIT 7.

10:25AM 16          AND THERE'S NO EVIDENCE THAT MR. BALWANI REVIEWED THIS.

10:25AM 17     YOU KNOW, THERE'S NO COVER EMAIL THAT SAYS THAT HE GOT THIS.

10:25AM 18          THIS IS SIMPLY A PRINTOUT FROM THE FDA'S WEBSITE.

10:25AM 19          SO PRIMARILY FOR HEARSAY AND 403 GROUNDS, WE OBJECT.

10:25AM 20          THE COURT:  THANK YOU.

10:25AM 21          WHAT IS THE CONNECTION THEN TO MR. BALWANI, OR DOES THERE

10:25AM 22     NEED TO BE ONE IN YOUR OPINION, MS. WALSH?

10:25AM 23          MS. WALSH:  I DON'T THINK THERE NEEDS TO BE ONE.

10:25AM 24          WELL, I GUESS THERE IS A CONNECTION ALREADY IN EVIDENCE

10:26AM 25     WHICH CAME IN THROUGH MR. EDLIN WHO TESTIFIED ABOUT THE ALL

10:26AM 1    HANDS MEETING AT THERANOS WHEN THE FDA APPROVED -- WHEN THE FDA

10:26AM 2    CLEARANCE WAS ANNOUNCED TO ALL OF THE EMPLOYEES AND A SLIDE

10:26AM 3    DECK WAS USED TO -- AND THAT CAME INTO EVIDENCE -- TO EXPLAIN

10:26AM 4    THE FDA CLEARANCE.

10:26AM 5        THIS IS THE DOCUMENT ITSELF, AND I THINK IT IS SELF

10:26AM 6    AUTHENTICATING.  I THINK IT IS A PUBLIC RECORD THAT SHOULD COME

10:26AM 7    IN UNDER ANY HEARSAY OBJECTION.

10:26AM 8        I DON'T THINK IT'S REALLY IN DISPUTE THAT THERANOS GOT

10:26AM 9    THIS ASSAY APPROVED, SO I'M NOT SURE WHY AT LEAST PART OF THIS

10:26AM 10   DOCUMENT SHOULDN'T COME IN.

10:26AM 11           THE COURT:  AND YOU'RE NOT ASKING FOR ANY REDACTIONS

10:26AM 12   TO THE LETTER, PAGE 96?  YOU'RE NOT ASKING THAT ANY OF THE

10:26AM 13   CONTENT BE CHANGED?

10:27AM 14           MS. WALSH:  NO.

10:27AM 15           THE COURT:  YOU'RE NOT ASKING THAT THE LAST SENTENCE

10:27AM 16   IN THE FIRST FULL PARAGRAPH BE STRICKEN, NOR THE FIRST SENTENCE

10:27AM 17   IN THE THIRD FULL PARAGRAPH, NONE OF THAT?

10:27AM 18           MS. WALSH:  WE WERE GOING TO OFFER IT AS IT EXISTS

10:27AM 19   ON THE WEBSITE.  BUT IF --

10:27AM 20           THE COURT:  NO, I'M JUST ASKING THAT, WHETHER ANY

10:27AM 21   REDACTIONS WERE GOING TO BE REQUESTED.

10:27AM 22       MR. LEACH.

10:27AM 23           MR. LEACH:  YOUR HONOR, NONE OF THIS SHOULD COME IN.

10:27AM 24   THESE ARE ALL FACTUAL ASSERTIONS BY THE FDA, AND THERE'S NO

10:27AM 25   HEARSAY EXCEPTION.  IT'S SAYING WE'VE REVIEWED YOUR SECTION

6543

10:27AM 1    510(K) PREMARKED NOTIFICATION.

10:27AM 2       THERE'S ALSO NO CONTEXT FOR WHAT ANY OF THESE WORDS MEAN

10:27AM 3    OR TOOLS TO GIVE THE JURY TO UNDERSTAND THIS.  IT'S, IT'S

10:27AM 4    HEARSAY, IT'S CONFUSING, IT'S -- BASED ON MS. WALSH'S ARGUMENT,

10:27AM 5    IT'S CUMULATIVE OF WHAT MR. EDLIN HAS ALREADY TESTIFIED TO.

10:28AM 6       I JUST DON'T SEE A NEED FOR THIS TO COME IN, AND AS WE

10:28AM 7    SAID BEFORE, THEY SHOULD HAVE A WITNESS FROM THE FDA TO LAY THE

10:28AM 8    FOUNDATION FOR THE PUBLIC RECORDS EXCEPTION.

10:28AM 9         THE COURT:  OKAY.  THANK YOU.

10:28AM 10    LET'S GO TO NUMBER 8, PLEASE.

10:28AM 11       THIS IS, MS. WALSH, NOT OFFERED FOR THE TRUTH OF THE

10:28AM 12    MATTER ASSERTED?

10:28AM 13         MS. WALSH:  CORRECT, IT IS NOT OFFERED FOR THE

10:28AM 14    TRUTH.

10:28AM 15       IT IS OFFERED FOR THE FACT OF THE DISCLOSURE BY THERANOS

10:28AM 16    TO THE FDA OF ITS USE OF MODIFIED COMMERCIAL DEVICES.

10:29AM 17         THE COURT:  MR. LEACH.

10:29AM 18         MR. LEACH:  I THINK THIS IS BEING OFFERED FOR THE

10:29AM 19    TRUTH, YOUR HONOR, AND WE OBJECT UNDER RULE 104, 401, 403, AND

10:29AM 20    801.

10:29AM 21       THIS IS AN EMAIL FROM ELIZABETH HOLMES, WHO WILL NOT BE

10:29AM 22    TESTIFYING IN THIS CASE, TO INDIVIDUALS AT THE FOOD AND DRUG

10:29AM 23    ADMINISTRATION.

10:29AM 24       IT SETS OUT VARIOUS FACTUAL MATTERS IN THE SUBSTANCE OF

10:29AM 25    THE EMAIL, "THERANOS DID THIS, THERANOS DID THAT."

10:29AM 1        IT ALSO ATTACHES LISTS OF ASSAYS THAT THERANOS CLAIMS IT

10:29AM 2    WAS USING IN ITS LAB AND INTENDED TO USE IN ITS LAB.

10:29AM 3        MS. WALSH SEEMS TO BE SAYING THAT WE DON'T CARE WHETHER

10:29AM 4    THE THINGS IN THE EMAIL WERE TRUE OR FALSE, WE JUST WANT THIS

10:29AM 5    IN AS EVIDENCE OF WHAT MS. HOLMES TOLD THE FDA.

10:30AM 6        I THINK THAT IS A HEARSAY PURPOSE, BUT IT'S ALSO

10:30AM 7    IRRELEVANT.

10:30AM 8        THE ARGUMENT SEEMS TO BE THAT BECAUSE MS. HOLMES WAS

10:30AM 9    CANDID, ALLEGEDLY, ON ONE OCCASION WITH FDA OFFICIALS, THE

10:30AM 10   INFERENCE THAT THEY WANT TO DRAW IS THAT MR. BALWANI WAS CANDID

10:30AM 11   WITH INVESTORS AND WITH PATIENTS IN OTHER CIRCUMSTANCES.  THE

10:30AM 12   FACT THAT THEY TOLD THE GOVERNMENT THIS MEANS THAT THEY

10:30AM 13   COULDN'T HAVE LIED TO INVESTORS.

10:30AM 14       THAT'S AKIN TO 404(B) EVIDENCE.  IT'S ESSENTIALLY

10:30AM 15   CHARACTER EVIDENCE.  I DON'T SEE THE RELEVANCE OF THAT.

10:30AM 16       MS. HOLMES CAN'T BE CROSS-EXAMINED ON THIS.  IT SHOULDN'T

10:30AM 17   COME IN.  IT'S BEING OFFERED FOR THE TRUTH.

10:30AM 18            MS. WALSH:  SO, YOUR HONOR, WE DO -- WE ARE NOT

10:30AM 19   OFFERING THIS FOR ITS TRUTH.  IT IS THE FACT THAT THERANOS GAVE

10:30AM 20   NOTICE TO THE FDA THAT IT WAS USING THESE MODIFIED COMMERCIAL

10:30AM 21   DEVICES.

10:30AM 22       AND THROUGHOUT THE TRIAL, THE GOVERNMENT HAS ARGUED THAT

10:30AM 23   THE USE OF MODIFIED COMMERCIAL DEVICES WAS A SUPER STATE SECRET

10:31AM 24   THAT -- WHERE MR. BALWANI AND MS. HOLMES DID NOT TELL ANYONE,

10:31AM 25   AND THE SECRECY WAS PART OF THE SCHEME TO DEFRAUD.

10:31AM 1       MR. GROSSMAN TESTIFIED THAT HE WAS NEVER TOLD THAT

10:31AM 2  THERANOS USED MODIFIED COMMERCIAL MACHINES.

10:31AM 3       DR. PANDORI REFERRED TO THE MODIFIED MACHINES AS HACKED,

10:31AM 4  INDICATING THAT THERE WAS SOMETHING SINISTER OR IMPROPER ABOUT

10:31AM 5  IT.

10:31AM 6       DR. ROSENDORFF TESTIFIED THAT THE USE OF THOSE MACHINES

10:31AM 7  WAS SUBJECT TO STRICT SECRECY.

10:31AM 8       AND THE GOVERNMENT'S THEORY IS THAT SECRECY WAS A MEANS TO

10:31AM 9  DEFRAUD INVESTORS.

10:31AM 10      THIS SHOWS THAT THE SECRECY WAS NOT A MEANS -- OR IT TENDS

10:31AM 11 TO SHOW.  IT'S AN ARGUMENT.

10:31AM 12      THE SECRECY WAS NOT TO DEFRAUD INVESTORS.  IT WAS TO

10:31AM 13 PROTECT VALUABLE IP.

10:31AM 14      AND HOW DOES ONE GO ABOUT DOING THAT?  IT FILES PATENTS,

10:31AM 15 AND IT DISCLOSES WHAT IS BEING USED TO A REGULATOR.

10:32AM 16      SO I THINK THE FACT OF THE DISCLOSURE TENDS TO REBUT THE

10:32AM 17 GOVERNMENT'S THEORY REGARDING SECRECY.

10:32AM 18           THE COURT:  IS THERE ANY CONCERN THAT MR. BALWANI'S

10:32AM 19 NAME IS NOT ATTACHED TO ANY OF THESE?

10:32AM 20           MS. WALSH:  WELL, YOUR HONOR --

10:32AM 21           THE COURT:  HE'S NOT A SENDER.

10:32AM 22           MS. WALSH:  HE'S NOT A SENDER, BUT HE IS CHARGED IN

10:32AM 23 A CONSPIRACY AND A SCHEME TO DEFRAUD WHERE THERE'S GOING TO BE

10:32AM 24 CO-SCHEMER LIABILITY THAT IS CHARGED TO THE JURY.

10:32AM 25      THE GOVERNMENT HAS BEEN ARGUING THROUGHOUT THE TRIAL, AND

10:32AM 1    I EXPECT IN CLOSING WILL ARGUE, THAT WHATEVER MS. HOLMES DID,

10:32AM 2    MR. BALWANI KNEW ALL ABOUT IT.

10:32AM 3        SO I DON'T THINK THAT HE HAS TO BE ON THE EMAIL FOR THIS

10:32AM 4    EMAIL TO BE RELEVANT.

10:32AM 5            THE COURT:  MR. LEACH.

10:32AM 6            MR. LEACH:  AGAIN, YOUR HONOR, THAT ALL GOES TO THE

10:32AM 7    TRUTH.

10:32AM 8        I THINK IT'S CRITICAL THAT MR. BALWANI IS NOT ON THIS.

10:32AM 9    THERE'S NO EVIDENCE THAT HE RECEIVED THIS.  THERE'S NO EVIDENCE

10:33AM 10   THAT HE KNEW THAT MS. HOLMES WAS DOING THIS.

10:33AM 11       AND THEY'RE OFFERING IT FOR THE TRUTH THAT MS. HOLMES MADE

10:33AM 12   THESE STATEMENTS TO THE FDA AND, THEREFORE, MS. HOLMES LACKED

10:33AM 13   THE INTENT TO HIDE THIS FROM INVESTORS AND PATIENTS, ALTHOUGH

10:33AM 14   THERE'S A HOST OF REASONS WHY YOU MIGHT TELL THE FDA SOMETHING,

10:33AM 15   BUT NOT YOUR INVESTORS.

10:33AM 16       AND I THINK THIS IS A CLASSIC HEARSAY PURPOSE AND 403

10:33AM 17   SHOULD EXCLUDE IT AS WELL.

10:33AM 18           MS. WALSH:  MAY I SAY ONE MORE THING?

10:33AM 19           THE COURT:  SURE.

10:33AM 20           MS. WALSH:  THE GOVERNMENT OFFERED THE PARLOFF

10:33AM 21   ARTICLE WHICH WAS CHOCK FULL OF STATEMENTS BY MS. HOLMES NOT

10:33AM 22   FOR THE TRUTH, BUT THE FACT THAT SHE WAS SAYING THIS TO THE

10:33AM 23   WORLD.

10:33AM 24       I THINK THIS IS THE SAME -- IT'S THE SAME BASIS FOR

10:33AM 25   ADMISSION HERE.  IT'S THE FACT THAT MS. HOLMES IS SAYING THIS

10:33AM 1    TO THE FDA THAT IS RELEVANT.

10:33AM 2        AND WHY IS IT RELEVANT?  BECAUSE IT SHOWS, OR TENDS TO

10:33AM 3    SHOW, THAT THE GOVERNMENT'S THEORY ABOUT SECRECY BEING A MEANS

10:33AM 4    OF DEFRAUDING INVESTORS MAY NOT BE 100 PERCENT TRUE.  THERE MAY

10:34AM 5    BE ANOTHER EXPLANATION.

10:34AM 6        THE COURT:  SO I THINK WE UNDERSTAND IN A

10:34AM 7    PROSECUTION, THE GOVERNMENT CAN ARGUE, IN A CONSPIRACY

10:34AM 8    PROSECUTION.  STATEMENTS, CONDUCT ATTRIBUTABLE TO A

10:34AM 9    COCONSPIRATOR.  I THINK THAT'S WHAT YOU'RE TALKING ABOUT.

10:34AM 10       IS THAT RIGHT?

10:34AM 11           MS. WALSH:  YES.

10:34AM 12           THE COURT:  AND THE GOVERNMENT CAN DO THAT.

10:34AM 13       ARE YOU SAYING THAT THE DEFENSE SHOULD BE ABLE TO

10:34AM 14   INTRODUCE OTHER TESTIMONY OR ITEMS UNDER THE SAME THEORY IN

10:34AM 15   THEIR CASE-IN-CHIEF?

10:34AM 16           MS. WALSH:  I'M NOT SAYING THAT THE RULES OF

10:34AM 17   EVIDENCE PERMIT THAT.

10:34AM 18       BUT I THINK AN ARGUMENT COULD BE FORMULATED THAT HERE IS

10:34AM 19   AN EMAIL FROM THE CEO OF THE COMPANY, AND THE CEO WAS ON THE

10:34AM 20   SAME PAGE ABOUT MAKING THESE DISCLOSURES TO THE FDA.

10:34AM 21           THE COURT:  OKAY.

10:34AM 22       MR. LEACH.

10:35AM 23           MR. LEACH:  IF THAT WERE TRUE, YOUR HONOR, EVERY

10:35AM 24   EMAIL THAT ELIZABETH HOLMES SENT EXPRESSING HONESTY OR HOPE

10:35AM 25   OR -- WOULD BE ADMISSIBLE UNDER THAT THEORY.

10:35AM   1        THEY'RE OFFERING IT FOR THE TRUTH THAT MS. HOLMES MADE

10:35AM   2   THESE STATEMENTS.  SHE'S UNAVAILABLE FOR CROSS-EXAMINATION IN

10:35AM   3   THIS PROCEEDING.

10:35AM   4        THE INFERENCES THAT THEY WANT TO DRAW FROM IT ARE WEAK AND

10:35AM   5   ALONG THE LINES OF CHARACTER EVIDENCE.

10:35AM   6        AND THIS IS DIFFERENT FROM THE PARLOFF ARTICLE.  THE

10:35AM   7   PARLOFF ARTICLE WAS READ AND CONSIDERED BY INVESTORS.  THAT WAS

10:35AM   8   THE PURPOSE FOR WHICH WE ADMITTED IT.

10:35AM   9        SO FOR ALL OF THOSE REASONS, WE THINK YOU THIS SHOULD NOT

10:35AM  10   COME IN.

10:35AM  11             THE COURT:  OKAY.  THANK YOU.

10:35AM  12        LET'S MOVE TO NUMBER 9.

10:35AM  13        MS. WALSH:  SURE.

10:35AM  14             THE COURT:  AND THIS IS -- YOU'RE SEEKING TO

10:35AM  15   INTRODUCE -- I BELIEVE, IS THIS THE PATENT APPLICATION?

10:35AM  16             MS. WALSH:  IT IS, YOUR HONOR.

10:35AM  17        AND WHAT IS IMPORTANT TO KNOW ABOUT THIS PATENT

10:35AM  18   APPLICATION IS THAT THIS APPLICATION IS ACTUALLY REFERENCED IN

10:36AM  19   ONE OF THE SLIDE DECKS THAT WENT TO LISA PETERSON, WHO IS ONE

10:36AM  20   OF THE INVESTORS.

10:36AM  21        AND THAT SLIDE DECK HAD A LIST OF PATENTS.  ONE OF THOSE

10:36AM  22   PATENTS, NUMBER 61/875,678, WAS FILED ON SEPTEMBER 9TH, 2013.

10:36AM  23        THIS APPLICATION IS -- CORRESPONDS TO THAT ENTRY IN THE

10:36AM  24   SLIDE DECK THAT WENT TO MS. PETERSON.

10:36AM  25        SO, AGAIN, IT'S SIMILAR TO THE FDA DISCLOSURE.  IT'S NOT

10:36AM 1     OFFERED FOR THE TRUTH.  IT'S OFFERED TO SHOW THE ACT OF

10:36AM 2     THERANOS APPLYING FOR A PATENT, TRYING TO PROTECT ITS

10:36AM 3     INTELLECTUAL PROPERTY, AND THE TECHNOLOGY IS THE MODIFICATION

10:37AM 4     OF COMMERCIAL DEVICES TO BE ABLE TO RUN SMALL FINGERSTICK

10:37AM 5     SAMPLES.

10:37AM 6              THE COURT:  SO IT'S THE APPLICATION AND IT'S NOT FOR

10:37AM 7     THE TRUTH OF ANYTHING ASSERTED, IT'S JUST FOR THE FACT THAT

10:37AM 8     THAT THE COMPANY FILED A PATENT APPLICATION ON THIS DATE AND

10:37AM 9     TIME FOR THIS TECHNOLOGY?

10:37AM 10              MS. WALSH:  THAT'S RIGHT.  CORRECT.

10:37AM 11              THE COURT:  MR. LEACH.

10:37AM 12              MR. LEACH:  WE OBJECT ON HEARSAY GROUNDS AND 403

10:37AM 13    GROUNDS, YOUR HONOR.

10:37AM 14         THIS IS A PROVISIONAL APPLICATION FOR A PATENT.

10:37AM 15         EVIDENTLY THE DEFENSE ACQUIRED THIS FROM THE FDA'S

10:37AM 16    WEBSITE.  THIS IS NOT A PUBLIC RECORD.  THIS IS AN APPLICATION

10:37AM 17    BY -- SIGNED BY AN INDIVIDUAL NAMED JAMES FOX, WHO THERE'S NO

10:38AM 18    TESTIMONY ABOUT, CLAIMING THAT SAM GONG, WILLIAM WESTRICK, WHO

10:38AM 19    THE JURY HAS NOT HEARD ABOUT, AND DANIEL YOUNG ARE THE

10:38AM 20    INVESTORS OF A PARTICULAR TECHNOLOGY.

10:38AM 21         THIS IS BEING OFFERED FOR THE TRUTH THAT THIS WAS DONE ON

10:38AM 22    A PARTICULAR DAY AND THAT THESE INDIVIDUALS ARE THE RIGHTFUL

10:38AM 23    PATENTEES OF THIS PARTICULAR TECHNOLOGY.

10:38AM 24         THIS IS A STATEMENT BY THERANOS, NOT A STATEMENT BY THE

10:38AM 25    FDA.

10:38AM 1    AND THERE'S NO EVIDENCE THAT MR. BALWANI SAW THIS.

10:38AM 2    THERE'S NO EVIDENCE THAT THIS WAS FORWARDED TO HIM.  THERE'S NO

10:38AM 3    EVIDENCE THAT LISA PETERSON WENT ON THE FDA'S WEBSITE TO TRY TO

10:38AM 4    COMPARE PAGE 100 AND SOMETHING OF A POWERPOINT TO THIS

10:38AM 5    PARTICULAR PATENT.

10:38AM 6    IT'S BEING OFFERED FOR A HEARSAY PURPOSE AND IT HAS

10:38AM 7    POTENTIAL TO MISLEAD AND CONFUSE THE JURY AND FOR THAT REASON

10:39AM 8    IT SHOULD BE EXCLUDED UNDER 403.

10:39AM 9    MS. WALSH:  YOUR HONOR, SO I THINK THERE ARE TWO

10:39AM 10   ISSUES WE SHOULD TALK ABOUT.  ONE IS AUTHENTICITY, AND THE

10:39AM 11   OTHER IS HEARSAY.

10:39AM 12   SO ON AUTHENTICITY, THIS FALLS SQUARELY WITHIN

10:39AM 13   901(B)(7)(A), WHICH IS EVIDENCE ABOUT PUBLIC RECORDS, EVIDENCE

10:39AM 14   THAT A DOCUMENT WAS RECORDED OR FILED IN A PUBLIC OFFICE AS

10:39AM 15   AUTHORIZED BY LAW, OR A PURPORTED PUBLIC RECORD OR STATEMENT IS

10:39AM 16   FROM THE OFFICE WHERE ITEMS OF THIS KIND ARE KEPT.

10:39AM 17   THIS CLEARLY WAS FILED WITH THE PATENT OFFICE.  IT WAS

10:39AM 18   ACCESSIBLE THROUGH THE PATENT OFFICE.

10:39AM 19   IN ADDITION, I THINK THAT THE COURT -- AND I WOULD REQUEST

10:39AM 20   THAT THE COURT TAKE JUDICIAL NOTICE OF THE FACT THAT THIS WAS

10:39AM 21   FILED WITH THE UNITED STATES PATENT OFFICE, AND WHAT I'M

10:39AM 22   REFERRING TO IS RULE 201(C)(2), WHICH SAYS THAT THE COURT MUST

10:39AM 23   TAKE JUDICIAL NOTICE IF A PARTY REQUESTS IT AND THE COURT IS

10:40AM 24   SUPPLIED WITH THE NECESSARY INFORMATION.

10:40AM 25   I THINK THE COURT DOES HAVE THE NECESSARY INFORMATION.

10:40AM 1    THIS IS THE PATENT APPLICATION THAT CORRESPONDS TO THE ENTRY IN

10:40AM 2    THE LISA PETERSON SLIDE DECK.

10:40AM 3            THE COURT:  THIS IS JUST THE APPLICATION, AND YOU'RE

10:40AM 4    ASKING THAT THE ENTIRETY, AGAIN, ALL OF THE PAGES, BEHIND IT?

10:40AM 5            MS. WALSH:  YES.  SO THIS IS A LONG DOCUMENT,

10:40AM 6    YOUR HONOR.  I RECOGNIZE THAT.

10:40AM 7            THE COURT:  YES.

10:40AM 8            MS. WALSH:  AND WE CAN LIMIT THE NUMBER OF PAGES IF

10:40AM 9    THAT IS A CONCERN.

10:40AM 10       AND WHAT I WOULD PROPOSE IS TO LIMIT IT TO THE DOCKET

10:40AM 11   STAMP PAGE NUMBER 162 THROUGH 169, AND THEN THE LAST TWO PAGES,

10:40AM 12   216 TO 217, WHICH IS THE ELECTRONIC ACKNOWLEDGEMENT RECEIPT,

10:41AM 13   AND THAT'S IMPORTANT BECAUSE IT CORRESPONDS TO THE APPLICATION

10:41AM 14   NUMBER THAT IS IN THE PETERSON SLIDE DECK.

10:41AM 15           THE COURT:  OKAY.

10:41AM 16      MR. LEACH.

10:41AM 17           MR. LEACH:  AGAIN, YOUR HONOR, I THINK IT'S HEARSAY

10:41AM 18   TO SAY THIS PARTICULAR INVENTION CLAIMED BY THIS PARTICULAR

10:41AM 19   GROUP OF PEOPLE CONCERNING THIS PARTICULAR TYPE OF TECHNOLOGY

10:41AM 20   IS HEARSAY.

10:41AM 21      ONE OF THESE INDIVIDUALS SHOULD TESTIFY ABOUT IT.

10:41AM 22      THE AUTHENTICITY PROVISION MS. WALSH IS REFERRING TO I

10:41AM 23   THINK REFERS TO THE FILINGS OF THE AGENCY ITSELF AND NOT

10:41AM 24   SOMETHING ANY THIRD PARTY COULD UPLOAD, SO I TAKE ISSUE WITH

10:41AM 25   THAT.

10:41AM  1          BUT IT'S LARGELY A HEARSAY AND A 403 OBJECTION.

10:41AM  2              THE COURT:  THANK YOU.

10:41AM  3          SO THIS IS THE APPLICATION.

10:41AM  4          ARE YOU SAYING, MS. WALSH, THAT MS. PETERSON TESTIFIED

10:42AM  5    ABOUT AN ACTUAL PATENT BEING ISSUED THAT CORRESPONDS TO THE

10:42AM  6    APPLICATION?

10:42AM  7              MR. COOPERSMITH:  NO, SHE DIDN'T TESTIFY ABOUT THAT.

10:42AM  8          IT'S JUST THAT IN THE SLIDE DECK THAT SHE WAS PROVIDED

10:42AM  9    WITH THAT SHE SAID SHE REVIEWED, I THINK SHE SAID SHE REVIEWED

10:42AM 10    IT CAREFULLY, BUT REGARDLESS, IT WAS INCLUDED IN A LIST OF

10:42AM 11    PATENTS, BOTH PATENTS THAT WERE FILED AND PATENTS THAT WERE

10:42AM 12    ISSUED.

10:42AM 13          THIS IS ONE OF THE PATENTS, AND IT'S THE PATENT THAT

10:42AM 14    CORRESPONDS TO THE ALTERATION, THE MODIFICATION OF THOSE

10:42AM 15    COMMERCIAL DEVICES TO DO FINGERSTICK SAMPLES ON THOSE DEVICES.

10:42AM 16              THE COURT:  SO IS -- WAS A PATENT ISSUED?

10:42AM 17              MS. WALSH:  EVENTUALLY IT WAS.

10:42AM 18              THE COURT:  IS THERE A VACUUM IN THE INFORMATION

10:42AM 19    THEN?  IF YOU SAY THERE WAS JUST AN APPLICATION, WHAT DOES THE

10:42AM 20    JURY DO WITH THAT?

10:42AM 21          I GUESS I'M LOOKING AT THAT THROUGH A 403 LENS.  WHAT DOES

10:42AM 22    THIS TELL US IF THERE'S JUST AN APPLICATION?

10:43AM 23              MS. WALSH:  RIGHT, YOUR HONOR.

10:43AM 24          SO I GUESS THE APPLICATION HAD THE DATE.  I THINK IT WAS

10:43AM 25    THE DATE WAS RELEVANT.  IN SEPTEMBER OF 2013 THIS APPLICATION

```
10:43AM   1    WAS MADE.  THAT'S A DATE WITHIN THE CHARGED CONSPIRACY AND

10:43AM   2    AROUND AND NEAR THE TIME THERANOS WAS SPEAKING TO INVESTORS, SO

10:43AM   3    I THINK WE KEYED IT OFF OF THAT.

10:43AM   4         BUT THE PATENT WAS ULTIMATELY ISSUED.

10:43AM   5              THE COURT:  IS THERE EVIDENCE IN THE RECORD THAT THE

10:43AM   6    PATENT WAS ISSUED, THIS PATENT WAS ISSUED?

10:43AM   7         DO YOU KNOW, MR. LEACH?

10:43AM   8              MR. LEACH:  NOT THAT I'M AWARE OF, YOUR HONOR.

10:43AM   9         AND I DON'T HAVE KNOWLEDGE WHETHER IT WAS, IN FACT,

10:43AM  10    ISSUED.

10:43AM  11              MS. WALSH:  SO, YOUR HONOR, WE'RE HAPPY TO OFFER THE

10:43AM  12    ENTIRE PATENT INTO EVIDENCE TO CLEAR THAT UP, TO CLOSE THAT

10:43AM  13    LOOP.

10:43AM  14              THE COURT:  OKAY.  ANYTHING ELSE ON 9?

10:44AM  15              MS. WALSH:  NO, YOUR HONOR.

10:44AM  16              MR. LEACH:  NO, YOUR HONOR.

10:44AM  17              THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU FOR

10:44AM  18    THE DISCUSSION.

10:44AM  19         I'M GOING TO REVIEW OUR DISCUSSION AND HOPEFULLY GET AN

10:44AM  20    ORDER OUT PERHAPS THIS AFTERNOON FOR YOU.

10:44AM  21         LET'S MOVE ON TO JUST SOME OTHER DISCUSSIONS ABOUT OUR

10:44AM  22    SCHEDULE.

10:44AM  23         SO OUR JURY IS COMING IN TOMORROW, AND I GUESS,

10:44AM  24    MR. COOPERSMITH, WILL YOU SPEAK TO OUR SCHEDULING, WHERE WE ARE

10:44AM  25    AT AND WHAT WE'RE DOING?
```

10:44AM 1     MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

10:44AM 2     THE COURT:  SO WE HAVE OUR JURY COMING IN TOMORROW.

10:44AM 3   YOU'LL HAVE A WITNESS TO GO FORWARD TOMORROW?

10:44AM 4     MR. COOPERSMITH:  YES, YOUR HONOR.  AND WE'VE

10:44AM 5   INFORMED THE GOVERNMENT OF THIS AS WELL.

10:44AM 6     THE COURT:  OKAY.

10:44AM 7     MR. COOPERSMITH:  WE HAVE TWO WITNESSES THAT WE

10:44AM 8   INTEND TO CALL TOMORROW.  ONE IS THE SUBJECT OF DISCUSSION THAT

10:44AM 9   THE COURT JUST HAD, MR. YOUSKE OKANO, WHO IS A PARALEGAL AT

10:45AM 10  ORRICK; AND THE OTHER IS RICHARD SONNIER, WHO THE COURT IS

10:45AM 11  FAMILIAR WITH FROM THE MOTION PRACTICE, AND THIS IS THE EXPERT

10:45AM 12  ON THE LIS SYSTEM.

10:45AM 13   THE DEFENSE ANTICIPATES RESTING AFTER THOSE WITNESSES.

10:45AM 14   OBVIOUSLY, OF COURSE, WE UNDERSTAND THAT MR. BALWANI HAS A

10:45AM 15  RIGHT TO TESTIFY.  AT THIS POINT WE DON'T ANTICIPATE THAT.

10:45AM 16  OBVIOUSLY MR. BALWANI CAN SLEEP ON THAT AND GIVE US HIS FINAL

10:45AM 17  DECISION.

10:45AM 18     THE COURT:  SURE.

10:45AM 19     MR. COOPERSMITH:  BUT THAT IS WHERE WE CURRENTLY ARE

10:45AM 20  AND THAT IS WHAT WE ANTICIPATE.

10:45AM 21     THE COURT:  OKAY.  THANK YOU.

10:45AM 22     MR. SCHENK:  THANK YOU, YOUR HONOR.

10:45AM 23   I THINK THE GOVERNMENT NEEDS TO SEE THE COMPLETION OF THE

10:45AM 24  DEFENSE CASE.  IF THIS HOLDS TRUE, WE HAVE HEARD ONE OF THREE

10:45AM 25  WITNESSES, AND WHEN WE HEAR THE TESTIMONY OF THE REMAINING TWO

10:45AM  1    WITNESSES, WE'LL BE IN A POSITION TO MAKE A DETERMINATION

10:45AM  2    REGARDING ANY GOVERNMENT REBUTTAL CASE.

10:45AM  3        I UNDERSTAND THAT THAT MAY CAUSE SOME CHALLENGES FOR

10:46AM  4    ALERTING THE JURY WHEN THE NEXT TIME THEY SHOULD COME BACK

10:46AM  5    WOULD BE, SO I THOUGHT AHEAD TO THAT AND I HAVE A SUGGESTION,

10:46AM  6    BUT OBVIOUSLY WE'LL TAKE DIRECTION FROM THE COURT.

10:46AM  7        IF WE ASSUME THAT WE COMPLETE THE DEFENSE CASE TOMORROW IN

10:46AM  8    THE EARLY AFTERNOON, THAT'S OBVIOUSLY A VERY ROUGH ESTIMATE,

10:46AM  9    BUT AT SOME POINT THAT FILLS THE MORNING BUT MAYBE DOES NOT

10:46AM  10   FILL THE WHOLE AFTERNOON, I THINK WHAT WE WOULD ASK IS TO

10:46AM  11   TAKE -- TO END THE DAY AND TO GIVE THE GOVERNMENT TEAM THE

10:46AM  12   OPPORTUNITY TO SIT AROUND A TABLE AND TALK FOR AN HOUR OR TWO

10:46AM  13   ABOUT WHETHER WE'RE GOING TO PUT ON A REBUTTAL CASE, AND THEN

10:46AM  14   ALERT THE COURT AND THE DEFENSE SO THAT THE COURT COULD THEN

10:46AM  15   CONTACT THE JURY AND PROVIDE AN ANSWER FOR WHETHER THEY NEED TO

10:46AM  16   COME BACK ON WEDNESDAY, OR NOT, FOR A GOVERNMENT REBUTTAL CASE.

10:46AM  17       I APPRECIATE THAT THAT RELIES A LITTLE BIT ON PRECISELY

10:46AM  18   WHAT TIME WE END AND WHAT TIME THESE EMAILS COULD GO OUT, SO

10:47AM  19   THERE MIGHT BE SOME NEED TO REFINE THAT SUGGESTION WHEN WE KNOW

10:47AM  20   PRECISELY WHAT TIME WE'RE BREAKING TOMORROW.

10:47AM  21       BUT I THINK THE GOVERNMENT WOULD BENEFIT FROM AT LEAST AN

10:47AM  22   HOUR OR TWO AFTER THE DEFENSE CASE ENDS TO MAKE THAT DECISION.

10:47AM  23           THE COURT:  SURE.

10:47AM  24       DO YOU HAVE ANY OBJECTION TO THAT?

10:47AM  25           MR. COOPERSMITH:  NO, YOUR HONOR.  I THINK IT'S A

10:47AM 1   HELPFUL SUGGESTION.  WE'RE HAPPY TO GIVE THE GOVERNMENT THAT

10:47AM 2   TIME.  WE ANTICIPATE OUR WITNESSES WOULD CERTAINLY FILL THE

10:47AM 3   MORNING, AND MAYBE STRAY INTO SOME PART OF THE AFTERNOON.  I

10:47AM 4   DON'T KNOW WHAT THE CROSS IS OBVIOUSLY.

10:47AM 5        BUT WE THINK THAT MAKES SENSE.

10:47AM 6        THE ONLY THING I WOULD ASK, AND AS I THINK I SAID BEFORE,

10:47AM 7   MR. SCHENK WAS COURTEOUS YESTERDAY -- I'M SORRY, FRIDAY -- TO

10:47AM 8   GIVE US THE POTENTIAL WITNESSES THAT THE GOVERNMENT MIGHT CALL

10:47AM 9   IN REBUTTAL IF THEY CHOOSE TO DO THAT.

10:47AM 10       I WOULD JUST ASK THAT WE ARE INFORMED THAT THOSE ARE THE

10:47AM 11  LIMIT, OR IF THEY WANT TO NARROW THE LIST, THAT'S ALSO FINE,

10:47AM 12  BUT JUST SO WE KNOW WHAT WE CAN ANTICIPATE SO WE CAN PREPARE.

10:47AM 13       BUT OTHER THAN THAT, I THINK MR. SCHENK'S SUGGESTION IS A

10:47AM 14  GOOD ONE, AND WE WOULD AGREE WITH THAT.

10:47AM 15            THE COURT:  OKAY.  THANK YOU.

10:48AM 16       WE HAVE AVAILABLE THE 16TH ALSO, I BELIEVE, FOR OUR JURY.

10:48AM 17  I THINK WE'VE CLEARED OUR DAY FOR THAT AS WELL, RIGHT, MADAM

10:48AM 18  CLERK?

10:48AM 19            THE CLERK:  YES.

10:48AM 20            THE COURT:  SO WE HAVE THE ENTIRE WEEK.

10:48AM 21       SHOULD WE -- ONE THING WE ALL NEED TO THINK ABOUT, AND I

10:48AM 22  THINK COUNSEL TOLD ME THIS AS WELL -- WE NEED TO THINK ABOUT

10:48AM 23  WHEN WE WOULD HAVE OUR CHARGING CONFERENCE.  MY SENSE IS THAT

10:48AM 24  THAT IS GOING TO TAKE A DAY, A FULL DAY TO DISCUSS, AND THE

10:48AM 25  COURT HOPEFULLY TO BE ABLE TO PREPARE FINAL INSTRUCTIONS.

10:48AM  1      AND THEN THE QUESTION COMES, WHEN SHOULD WE THEN SCHEDULE

10:48AM  2  ARGUMENT?  WE COULD -- IT SOUNDS LIKE, IF ALL OF THIS FALLS IN

10:48AM  3  PLACE, WE COULD HAVE A SITUATION WHERE ARGUMENT -- FRIDAY, THE

10:48AM  4  17TH, MIGHT BE AVAILABLE FOR ARGUMENT.

10:48AM  5      I'M, I'M -- IT'S NOT MY PREFERENCE TO HAVE ARGUMENTS

10:48AM  6  BROKEN UP BY A WEEKEND, AND MY PREFERENCE WOULD BE TO HAVE

10:49AM  7  ARGUMENTS COMPLETED CONSECUTIVELY WITHOUT A BREAK, AND THAT

10:49AM  8  WOULD BRING US TO THE 21ST AND 22ND.

10:49AM  9      AND, OF COURSE, I BELIEVE WE HAVE THE AFTERNOON OF THE

10:49AM  10  23RD SCHEDULED AVAILABLE AS WELL.

10:49AM  11          MR. COOPERSMITH:  I MIGHT BE OFF ON MY DATES HERE,

10:49AM  12  BUT I THOUGHT THE COURT WAS IN SESSION ON TUESDAY THE 14TH AND

10:49AM  13  WEDNESDAY THE 15TH.

10:49AM  14      IS THAT CORRECT?

10:49AM  15          THE COURT:  THAT IS CORRECT.

10:49AM  16          MR. COOPERSMITH:  OKAY.

10:49AM  17          THE COURT:  I'M SORRY.  I'M A WEEK AHEAD OF MYSELF.

10:49AM  18          MR. COOPERSMITH:  I WAS WONDERING.

10:49AM  19          THE COURT:  SORRY.  I WAS LOOKING AT THE SCHEDULE

10:49AM  20  AND THE WRONG WEEK.  YES, IT'S THE 14TH AND 15TH.

10:49AM  21      WE HAVE TRIAL SCHEDULED ON THE 13TH IN THE AFTERNOON, WE

10:49AM  22  HAVE THAT AVAILABLE AS WELL, BUT I'M NOT SURE ANYONE WANTS TO

10:50AM  23  START AN ARGUMENT RECOGNIZING THERE WOULD BE A NATURAL BREAK TO

10:50AM  24  IT.

10:50AM  25          ALL RIGHT.  I THROW THAT OUT FOR DISCUSSION.

6558

10:50AM 1      THE COURT ISSUED ITS ORDER ON THE LIS MOTION, I'M GOING TO

10:50AM 2  CALL IT THAT, IN 1464, AND I DID HAVE SOME -- WELL, YOU READ

10:50AM 3  THE ORDER.  YOU KNOW WHAT IT SAYS.

10:50AM 4      I'M PAUSING BECAUSE I JUST WANT TO KNOW WHETHER OR NOT THE

10:50AM 5  ORDER WAS INSTRUCTIVE TO THE PARTIES AS TO WHAT THEY CAN PUT

10:50AM 6  ON, WHAT THEY MAY PUT ON, WHAT THE COURT MIGHT HAVE SOME ISSUE

10:50AM 7  WITH, AND WHETHER OR NOT WE NEED TO DISCUSS THAT AS OPPOSED TO

10:50AM 8  HAVING A DISCUSSION, SHALL I SAY, IN REALTIME WHEN YOUR EXPERT

10:50AM 9  TESTIFIES.

10:50AM 10     MR. BOSTIC.

10:50AM 11        MR. BOSTIC:  THANK YOU, YOUR HONOR.

10:51AM 12     GOOD MORNING.  LET ME SWITCH MASKS.  THAT MIGHT MAKE IT

10:51AM 13 EASIER HERE.

10:51AM 14     IT'S A LITTLE DIFFICULT FOR THE GOVERNMENT TO ANSWER THAT

10:51AM 15 QUESTION WITHOUT HAVING SEEN THE DIRECT.

10:51AM 16     I DO STILL HAVE SOME CONCERNS.  I FOUND THE COURT'S ORDER

10:51AM 17 HELPFUL AND CLEAR, OF COURSE.

10:51AM 18     BUT I HAVE SOME CONCERNS ABOUT THE DEFENSE'S PLANS FOR

10:51AM 19 ESTABLISHING SOME OF THE FACTS THAT MR. SONNIER WON'T HAVE

10:51AM 20 PERSONAL KNOWLEDGE OF.

10:51AM 21     SO IT'S DIFFICULT FOR ME TO PICTURE THE MECHANICS OF THE

10:51AM 22 DIRECT AND HOW THE FRAMEWORK OF FACTS THAT UNDERLIE HIS OPINION

10:51AM 23 WILL BE ESTABLISHED.

10:51AM 24     SO I HAVE SOME CONCERNS ABOUT THAT, AND I WONDER IF A

10:51AM 25 DISCUSSION OF THAT MIGHT BE HELPFUL AT THIS POINT IN PLANNING

10:51AM  1    THE CROSS-EXAMINATION.  OBVIOUSLY I DON'T WANT TO REVEAL

10:51AM  2    DETAILS OF THAT ACTUALLY.

10:51AM  3              THE COURT:  SURE.

10:51AM  4              MR. BOSTIC:  BUT I --

10:51AM  5              THE COURT:  I'M SORRY, GO AHEAD.

10:51AM  6              MR. BOSTIC:  ALL I WAS GOING TO SAY WAS THAT I WANT

10:51AM  7    TO UNDERSTAND KIND OF HOW FACTS ARE GOING TO BE DEALT WITH THAT

10:52AM  8    AREN'T WITHIN THIS WITNESS'S PERSONAL KNOWLEDGE SO THAT I CAN

10:52AM  9    TAKE A CONSISTENT APPROACH DURING THE CROSS.

10:52AM  10             MR. COOPERSMITH:  I'M HAPPY TO TRY TO HELP THERE,

10:52AM  11   YOUR HONOR.

10:52AM  12        SO MR. SONNIER IS AN EXPERT WITNESS.  WE INTEND TO QUALIFY

10:52AM  13   HIM AS AN EXPERT WITNESS.  I DON'T ANTICIPATE AN ISSUE THERE,

10:52AM  14   BUT OBVIOUSLY THE GOVERNMENT CAN ASK.

10:52AM  15        AND LIKE ANY EXPERT THAT HAS PROBABLY EVER TESTIFIED, HE

10:52AM  16   DOESN'T HAVE PERSONAL KNOWLEDGE OF THE FACTS.  HE'S AN EXPERT,

10:52AM  17   RIGHT?

10:52AM  18        HE'S BEEN PROVIDED -- EXCUSE ME.  HE'S BEEN PROVIDED WITH

10:52AM  19   UNDERLYING INFORMATION THAT EXPERTS IN HIS POSITION TYPICALLY

10:52AM  20   RELY ON.

10:52AM  21        SO IN TERMS OF WHAT WE INTEND, AND I THINK MR. BRECHER

10:52AM  22   SAID THIS THE OTHER DAY, SO IT'S NO SECRET AND I DON'T MIND

10:52AM  23   SHARING THIS OPENLY, HE IS GOING TO TESTIFY ABOUT HIS

10:52AM  24   QUALIFICATIONS.  HE'S GOING TO TESTIFY ABOUT HIS WORK ON THIS.

10:52AM  25        IN TERMS OF THE FACTS THAT MR. BOSTIC IS SUGGESTING, I

10:52AM 1    THINK IN FAIRNESS -- AND THIS IS WHAT MR. BRECHER SAID -- I

10:53AM 2    THINK WE SHOULD DO THIS AND I DON'T THINK THERE WILL BE AN

10:53AM 3    OBJECTION TO THIS, HE WILL TESTIFY HE UNDERSTANDS THAT IN THE

10:53AM 4    MATERIALS THAT HE REVIEWED, THERE WAS A COPY OF THE LIS

10:53AM 5    PROVIDED TO THE GOVERNMENT, AND ULTIMATELY PROVIDED TO THE

10:53AM 6    DEFENSE, THAT IS NOT ACCESSIBLE, THAT THERE'S NO ENCRYPTION KEY

10:53AM 7    AND THERE'S NO ABILITY TO ACCESS THAT.  OKAY?

10:53AM 8        SO THAT'S A BASELINE.  I THINK THE GOVERNMENT HAS TAKEN

10:53AM 9    THAT POSITION MANY TIMES THAT THAT IS THE CASE.

10:53AM 10       AND HE IS NOT PLANNING TO TRY TO ATTRIBUTE SOME FAULT ON

10:53AM 11   THE GOVERNMENT'S PART FOR THAT BEING THE CASE; IN OTHER WORDS,

10:53AM 12   THERANOS PRODUCING SOMETHING.

10:53AM 13       NOW, CLEARLY MR. BALWANI DIDN'T PRODUCE IT, AND I THINK HE

10:53AM 14   WILL -- HE'S AWARE OF OTHER EVIDENCE IN THIS CASE THAT

10:53AM 15   MR. BALWANI LEFT THERANOS IN THE SPRING OF 2016.  SO WE WANT TO

10:53AM 16   MAKE SURE THAT THAT'S CLEAR.

10:53AM 17       BUT IN TERMS OF WE'RE NOT GOING TO FAULT THE GOVERNMENT

10:54AM 18   FOR GETTING A HARD DRIVE THAT THEY COULDN'T ACCESS BECAUSE IT

10:54AM 19   COULDN'T BE ACCESSED.

10:54AM 20       WHAT HE WILL TESTIFY ABOUT, THOUGH, MOVING FORWARD IS THAT

10:54AM 21   WE UNDERSTAND THE COURT'S ORDER THAT THE BRADY LETTER ITSELF

10:54AM 22   WILL NOT BE ADMISSIBLE.  OBVIOUSLY MR. SONNIER READ THAT, BUT

10:54AM 23   IT WON'T BE SHOWN TO THE JURY, BUT IT FORMS SOME INFORMATION

10:54AM 24   THAT HE HAD.

10:54AM 25       BUT IN PARTICULAR, WE DID GET THE GOVERNMENT'S PRODUCTION

10:54AM  1    THAT THE COURT ORDERED ON THE MORNING OF JUNE 2ND AS ORDERED BY

10:54AM  2    THE COURT, AND AMONG THE PAPERS THAT WERE PRODUCED IS THE

10:54AM  3    ACTUAL EMAIL FROM THE GOVERNMENT ALS SUPERVISOR, AND I DON'T

10:54AM  4    HAVE THE NUMBER IN FRONT OF ME, BUT I THINK WE ALL KNOW WHAT

10:54AM  5    I'M TALKING ABOUT, IT'S AN EMAIL THAT INFORMS THE GOVERNMENT OF

10:54AM  6    CERTAIN OPTIONS THAT THE GOVERNMENT MIGHT HAVE IN ORDER TO TRY

10:54AM  7    TO ACCESS THE LIS SYSTEM.

10:55AM  8        AND ONE OF THEM IS GO GET THE ORIGINAL SERVERS, AND ONE OF

10:55AM  9    THEM IS HIRE AN OUTSIDE VENDOR.

10:55AM  10        SO WE -- UNDER RULE 703, MR. SONNIER CAN RELY ON THAT

10:55AM  11    INFORMATION.  HE CAN CERTAINLY DISCUSS IT AT A MINIMUM.

10:55AM  12        BUT UNDER RULE 703, WE ALSO CAN ADMIT THAT DOCUMENT, AND I

10:55AM  13    THINK THERE'S A FEW REASONS WHY IT WOULD BE ADMISSIBLE.

10:55AM  14        ONE IS IT'S ADMISSIBLE UNDER 703 IT IS, IN THE COURT'S

10:55AM  15    DISCRETION, BECAUSE IT'S SOMETHING THAT INFORMS THE COURT'S

10:55AM  16    DISCRETION, IT'S SOMETHING THAT INFORMS THE EXPERT'S OPINION,

10:55AM  17    RATHER, AND THAT'S WITHIN THE COURT'S DISCRETION TO ADMIT THAT

10:55AM  18    DOCUMENT UNDER 703.

10:55AM  19        IN ADDITION, THERE'S A SEPARATE BASIS FOR ADMISSIBILITY OF

10:55AM  20    THAT PARTICULAR EMAIL, WHICH IS THAT IT'S A PARTY ADMISSION

10:55AM  21    UNDER 801.

10:55AM  22        AND I UNDERSTAND THE COURT'S RULING ON THE BRADY LETTER

10:55AM  23    ITSELF, BUT THIS IS A GOVERNMENT EMPLOYEE, THIS ALS SUPERVISOR,

10:55AM  24    ACTING WITHIN THE SCOPE OF HIS DUTIES, WHO IS WRITING AN EMAIL,

10:56AM  25    AND IT'S THE SAME THING AS WHY LOTS OF EMAILS HAVE COME IN THAT

10:56AM 1    MR. BALWANI WROTE IN THIS CASE, HE'S A PARTY OPPONENT, AND IN

10:56AM 2    FAIRNESS THE GOVERNMENT WAS ABLE TO ADMIT THEM IN ITS CASE.

10:56AM 3         AND THIS IS AN ALS SUPERVISOR AND IT'S ADMISSIBLE UNDER

10:56AM 4    801.

10:56AM 5         SO THERE ARE ACTUALLY TWO DIFFERENT BASES OF ADMISSION OF

10:56AM 6    THAT PARTICULAR EMAIL.  IT'S NOT THE BRADY LETTER.  IT'S THE

10:56AM 7    EMAIL THAT WE RECEIVED WITH THE COURT ORDERED PRODUCTION ON

10:56AM 8    JUNE 2ND.

10:56AM 9         THAT'S REALLY IT.  BEYOND THAT, MR. SONNIER WILL TESTIFY,

10:56AM 10   AS YOU'VE SEEN IN HIS DECLARATION, THAT BASED ON THE

10:56AM 11   INFORMATION AND HIS EXPERTISE AND HIS STUDYING OF THE

10:56AM 12   DOCUMENTATION THAT HE HAS SEEN ABOUT WHAT THE LIS SYSTEM WAS,

10:56AM 13   THAT IT WAS A MICROSOFT SQL SERVER SYSTEM, AND HE'S FAMILIAR

10:56AM 14   WITH THAT AND HOW THESE THINGS WORK.

10:56AM 15        AND HE'S GOING TO TESTIFY THAT, IN HIS EXPERT OPINION, IF

10:56AM 16   THE GOVERNMENT HAD PURSUED THE SERVERS, THAT WOULD HAVE WORKED.

10:56AM 17        AND I THINK THAT'S CONSISTENT WITH WHAT MR. BRECHER SAID

10:57AM 18   THE OTHER DAY, AND THAT IS THE BASIC SUMMARY OF THE TESTIMONY.

10:57AM 19             THE COURT:  OKAY.  THANK YOU.

10:57AM 20        MR. BOSTIC.

10:57AM 21             MR. BOSTIC:  JUST A FEW THINGS, YOUR HONOR.

10:57AM 22        FIRST, IT SOUNDS LIKE THERE'S A FRAMEWORK OF FACTS THAT

10:57AM 23   NEED TO BE ESTABLISHED IN ORDER FOR THIS EXPERT'S OPINION TO

10:57AM 24   MAKE SENSE.

10:57AM 25        FOR EXAMPLE, THE FACT THAT THERANOS DISASSEMBLED THE

6563

10:57AM 1    ORIGINAL LIS EQUIPMENT, IN ORDER FOR THE EXPERT'S OPINION TO BE

10:57AM 2    RELEVANT AND MAKE SENSE, THE JURY NEEDS TO UNDERSTAND THAT THE

10:57AM 3    ORIGINAL WAS DISASSEMBLED AT SOME POINT, THAT IT'S NO LONGER

10:57AM 4    AVAILABLE, BECAUSE THE EXPERT IS GOING TO BE TALKING ABOUT THE

10:57AM 5    FEASIBILITY OF RECONSTRUCTING IT.

10:57AM 6        SO I ASSUME THAT AT SOME POINT DURING THE DIRECT THAT FACT

10:57AM 7    WILL NEED TO BE ESTABLISHED.

10:57AM 8        I'M NOT SURE HOW THIS EXPERT ESTABLISHES THE FACT THAT

10:57AM 9    THERANOS DISASSEMBLED THE LIS DATABASE.

10:57AM 10       IF THAT FACT IS ESTABLISHED THROUGH THIS EXPERT, WILL THE

10:57AM 11   TIMING OF THAT DISASSEMBLY ALSO WILL BE ESTABLISHED?  AND IF

10:57AM 12   NOT, CAN THAT THEN BE ESTABLISHED ON CROSS SO THAT A COMPLETE

10:58AM 13   PICTURE IS PROVIDED?

10:58AM 14       THAT'S AN EXAMPLE OF THE KINDS OF QUESTIONS THAT I HAVE.

10:58AM 15           THE COURT:  WELL, THIS IS SOMETHING THAT I WAS

10:58AM 16   TRYING TO IDENTIFY IN THE COURT'S ORDER, AND CERTAINLY IN OUR

10:58AM 17   DISCUSSIONS ABOUT THIS ISSUE MANY TIMES.  THESE ARE CONCERNS

10:58AM 18   THAT I HAVE.  CALL THEM FOUNDATIONAL.  CALL THEM FULSOME

10:58AM 19   EXPLANATION OF WHAT TOOK PLACE.

10:58AM 20       AND WE ALL KNOW, AT LEAST WE HAVE SOME IDEA OF THE FACTS

10:58AM 21   OF THAT, AND THEN IT'S REALLY DEPENDENT ON --

10:58AM 22       I SUPPOSE IT'S DRIVEN, MR. COOPERSMITH, BY YOUR EXPERT AND

10:58AM 23   HOW MUCH AND HOW FAR AND HOW DEEP YOU GO.

10:58AM 24       THE COURT'S MIL ORDER TALKED ABOUT THIS, AS WELL AS THE

10:58AM 25   COURT'S MOST RECENT, AND WE'VE USED THE PHRASE OPENING THE DOOR

10:58AM  1    SEVERAL TIMES IN THIS REGARD.

10:58AM  2         BUT THAT'S THE CONCERN I HAVE.  I APPRECIATE THE

10:58AM  3    CONVERSATION THIS MORNING JUST TO INFORM ME AS TO WHAT IT IS

10:59AM  4    THAT THE PARTIES HAD IN MIND.

10:59AM  5         WHAT WOULD BE HELPFUL FOR ME, IF YOU WISH, IS TO SUBMIT TO

10:59AM  6    ME AT LEAST A COPY OF THE EMAIL THAT YOU'RE GOING TO SEEK TO

10:59AM  7    INTRODUCE.  THAT WOULD BE HELPFUL FOR ME TO SEE IN ADVANCE AS

10:59AM  8    WELL.

10:59AM  9         MR. COOPERSMITH:  YES, YOUR HONOR.  I DON'T HAVE A

10:59AM 10    COPY WITH ME.  WE CAN SUBMIT IT RIGHT AFTER COURT.

10:59AM 11         THE COURT:  SURE.

10:59AM 12         MR. COOPERSMITH:  AND LET ME SEE IF I CAN ALLAY SOME

10:59AM 13    OF THE FEARS OR CONCERNS THAT MR. BOSTIC HAS.

10:59AM 14         THERE IS NO DISPUTE IN THIS CASE THAT AT THE END OF

10:59AM 15    AUGUST OF 2018, I BELIEVE IT WAS AROUND AUGUST 30TH, THAT

10:59AM 16    THERANOS -- NOT MR. BALWANI, HE HAD LEFT THE COMPANY TWO YEARS

10:59AM 17    EARLIER -- BUT THERANOS DISASSEMBLED, DISMANTLED, WHATEVER YOU

10:59AM 18    HAVE IT, THE LIS SYSTEM AS IT WAS SITTING THERE IN THE NEWARK,

10:59AM 19    CALIFORNIA THERANOS.

10:59AM 20         THERE'S NO DISPUTE ABOUT THAT.  WE'RE HAPPY TO INTRODUCE

10:59AM 21    THAT ON DIRECT.  IF WE DIDN'T, I'M SURE THE GOVERNMENT WOULD

10:59AM 22    SHOW THAT ON CROSS.

10:59AM 23         THE COURT:  DIRECT OF MR. SONNIER?

10:59AM 24         MR. COOPERSMITH:  YES, YOUR HONOR.

10:59AM 25         AND THE REASON WHY THAT IS PROPER IS, UNDER RULE 703, THE

11:00AM 1    EXPERT CAN BASE AN OPINION ON FACTS OR DATA IN THE CASE THAT

11:00AM 2    HE'S BEEN MADE AWARE OF OR PERSONALLY OBSERVED.

11:00AM 3        IN THIS CASE HE'S BEEN MADE AWARE OF THOSE FACTS BY

11:00AM 4    READING A LOT OF DISCOVERY THAT THE GOVERNMENT ITSELF PROVIDED.

11:00AM 5    THEY INTERVIEWED WITNESSES AND THEY PROVIDED THOSE 302'S, AND

11:00AM 6    OTHER INFORMATION THAT THEY PROVIDED, EMAILS, THINGS OF THAT

11:00AM 7    NATURE.

11:00AM 8        AND IT'S NOT NECESSARY TO ADMIT THOSE, ALTHOUGH THEY

11:00AM 9    PROBABLY WOULD BE ADMISSIBLE UNDER 703.

11:00AM 10       IT'S REALLY JUST A MATTER OF HIM SAYING, I READ A BODY OF

11:00AM 11   INFORMATION, THIS IS WHAT I RELIED ON, AND THIS IS WHY

11:00AM 12   MR. SONNIER WILL TESTIFY THAT HE KNOWS THAT THERANOS

11:00AM 13   DISASSEMBLED THE SYSTEM.

11:00AM 14       HE'S NOT GOING TO SAY, NOR COULD HE SAY, IT'S THE

11:00AM 15   GOVERNMENT, YOU KNOW, WHO DISASSEMBLED THE SYSTEM.

11:00AM 16       THEY DIDN'T DO THAT.  IT WAS THERANOS WHO DID THAT.

11:00AM 17       I THINK THAT WILL BE WHAT HAPPENS.  WE EXPECT TO ELICIT

11:00AM 18   THAT TESTIMONY ON DIRECT.

11:00AM 19       SO I DON'T THINK THAT SHOULD BE CONTROVERSIAL.

11:01AM 20       IT'S REALLY WHAT HAPPENS AFTER THAT THAT IS INTERESTING TO

11:01AM 21   US.

11:01AM 22       AND THE ONLY DOCUMENT THAT I CAN REALLY THINK OF THAT IS

11:01AM 23   INFORMATIVE ON THAT IS THIS EMAIL THAT, AS THE COURT JUST SAID,

11:01AM 24   WE'LL SUBMIT IN A LITTLE BIT AFTER COURT.

11:01AM 25            THE COURT:  OKAY.

11:01AM 1          MR. BOSTIC:  SO HERE'S WHERE THE QUESTION MARKS COME

11:01AM 2    UP FOR ME.

11:01AM 3          OF COURSE AN EXPERT CAN BASE HIS OR HER OPINION ON

11:01AM 4    HEARSAY.  BUT THAT'S A LITTLE DIFFERENT FROM HAVING AN EXPERT

11:01AM 5    TAKE THE STAND AND THEN ESTABLISH FACTS THAT THE EXPERT ONLY

11:01AM 6    KNOWS THROUGH HEARSAY.

11:01AM 7          SO THE FACT THAT AN EXPERT MAY HAVE READ GOVERNMENT MOI'S,

11:01AM 8    302'S, DEPOSITIONS, AND THEN HAS AN UNDERSTANDING THAT CERTAIN

11:01AM 9    EVENTS OCCURRED IS ONE THING.

11:01AM 10          BUT FOR THE EXPERT THEN TO BE THE ONE WHO SAYS, "AND THEN

11:01AM 11    THIS HAPPENED, AND THEN THAT HAPPENED," TALKING ABOUT EVENTS

11:01AM 12    THAT HAPPENED YEARS EARLIER OUTSIDE OF THE EXPERT'S

11:01AM 13    OBSERVATION, THAT'S A LITTLE DIFFERENT FROM WHAT EXPERTS

11:01AM 14    TYPICALLY DO.  SO THAT'S WHERE CONCERNS COME UP FOR ME.

11:02AM 15          ON THE TOPIC OF THE EMAIL ITSELF, THE INTERNAL GOVERNMENT

11:02AM 16    EMAIL RELAYING RECOMMENDATIONS OR INFORMATION FROM A STAFF

11:02AM 17    MEMBER, FIRST, I'M NOT SURE THAT A STATEMENT BY ANY GOVERNMENT

11:02AM 18    EMPLOYEE CONSTITUTES A PARTY ADMISSION.

11:02AM 19          YOU KNOW, IT'S ONE THING WHEN A DEFENDANT MAKES A

11:02AM 20    STATEMENT.

11:02AM 21          A SIMILAR ARGUMENT COULD BE MADE ABOUT AN ATTORNEY

11:02AM 22    REPRESENTING A PARTY POSSIBLY IN SOME SITUATIONS.

11:02AM 23          BUT I'M NOT SURE IT'S A FAIR READING TO SAY THAT THAT

11:02AM 24    EXPANDS TO EVERY EMPLOYEE ON THE GOVERNMENT SIDE, SO I'M NOT

11:02AM 25    SURE THAT'S ESTABLISHED.

11:02AM  1    AND WHEN IT COMES TO RELEVANCE, AGAIN, I'M NOT SURE WHY

11:02AM  2    INFORMATION PROVIDED TO PROSECUTORS IS RELEVANT TO THIS

11:02AM  3    WITNESS'S OPINION ABOUT WHAT CAN BE DONE WITH AN SQL DATABASE.

11:02AM  4        IT SEEMS LIKE THIS EMAIL IS RELEVANT TO A PROSECUTOR'S

11:03AM  5    STATE OF MIND, AND IT'S NOT CLEAR WHY THAT IS AT ISSUE IN THIS

11:03AM  6    CASE, AND IF IT IS, THAT WOULD AFFECT THE SCOPE OF THE CROSS AS

11:03AM  7    WELL.

11:03AM  8        MR. COOPERSMITH:  YOUR HONOR, ON THAT POINT, THIS IS

11:03AM  9    JUST RELITIGATING THE LIS MOTION THAT THE COURT JUST RULED ON.

11:03AM  10        THIS WAS THE WHOLE GOVERNMENT POSITION, THAT THIS WAS A

11:03AM  11    RELEVANCE PROBLEM, AND THE FACT THAT THE PROSECUTION WAS AT

11:03AM  12    FAULT SHOULDN'T BE -- WELL, ACCORDING TO US, RIGHT -- SHOULDN'T

11:03AM  13    BE ADMISSIBLE.

11:03AM  14        AND THE COURT HAS ALREADY RULED ON THAT.  SO THE COURT HAS

11:03AM  15    RULED, AFTER TAKING INTO ACCOUNT LOTS OF BRIEFING AND ARGUMENT

11:03AM  16    OVER, FRANKLY, YEARS, THAT THIS IS ADMISSIBLE FOR THE PURPOSES

11:03AM  17    THAT THE COURT STATED.

11:03AM  18        AND WE UNDERSTAND THE LANE THAT THE COURT HAS PROVIDED AND

11:03AM  19    WE INTEND TO STAY WITHIN THAT LANE.

11:03AM  20        BUT FOR MR. BOSTIC TO NOW SAY THAT HE HAS A RELEVANCE

11:03AM  21    ISSUE, IT'S JUST RELITIGATING THE SAME THING.

11:03AM  22        SO THE HEART OF IT, THE WHOLE PURPOSE OF THE ADMISSIBILITY

11:03AM  23    OF THIS EVIDENCE, AS THE COURT HAS ALREADY RULED, IS TO SHOW

11:03AM  24    THAT THE GOVERNMENT HAD NOTICE, THEY WERE INFORMED THAT GETTING

11:04AM  25    THE SERVER WAS AN OPTION, AND THAT'S THE EMAIL THAT WE NOW HAVE

11:04AM 1    AND IT'S WHAT UNDERLIES THE <u>BRADY</u> LETTER.  IT'S, IT'S NOW

11:04AM 2    SOMETHING THAT CAN BE ADMITTED, AND WE'LL TALK ABOUT THAT MORE

11:04AM 3    IN A MINUTE.

11:04AM 4        AND NOW THAT WE HAVE THAT, MR. SONNIER WILL SIMPLY SAY

11:04AM 5    THAT THAT WOULD HAVE WORKED UNDER HIS EXPERT OPINION.

11:04AM 6        SO EXPERTS HAVE KNOWLEDGE OF FACTS ALL OF THE TIME THAT

11:04AM 7    THEY ESTABLISH BECAUSE THEY ARE EXPERTS IN THE FIELD AND RELY

11:04AM 8    ON THAT INFORMATION.

11:04AM 9        IN THIS CASE WHAT IS RELIED ON IS A STACK OF GOVERNMENT

11:04AM 10   INTERVIEWS AND 302'S AND OTHER INFORMATION THAT THE GOVERNMENT

11:04AM 11   ITSELF PROVIDED BASED ON THEIR INVESTIGATION, AND THAT IS WHAT

11:04AM 12   YOU WOULD TYPICALLY RELY ON IF YOU WERE IN THIS FIELD.

11:04AM 13       IN TERMS OF THE ADMISSIBILITY OF THE EMAIL, AS I SAID, IT

11:04AM 14   IS AN 801 ADMISSION.

11:04AM 15       IF THIS EMAIL IS NOT ADMISSIBLE UNDER 801, A GOVERNMENT

11:04AM 16   EMPLOYEE, AN ALS SUPERVISOR WHO IS ACTING WITHIN THE SCOPE OF

11:04AM 17   HIS DUTIES AS A GOVERNMENT EMPLOYEE, THEN NOTHING EVER IS

11:04AM 18   ADMISSIBLE AND THEN 801 BECOMES A TOTALLY ONE-SIDED RULE WHERE

11:05AM 19   THE GOVERNMENT COULD ADMIT DEFENSE STATEMENTS OR DEFENDANT'S

11:05AM 20   STATEMENTS, BUT WE COULD NEVER ADMIT A GOVERNMENT EMPLOYEE'S

11:05AM 21   STATEMENT ON A RELEVANT MATTER, WHICH IS WHAT IS RELEVANT.

11:05AM 22       IN ADDITION, AS I SAID, IT COULD BE ADMISSIBLE UNDER 703.

11:05AM 23       AND IN ADDITION, IT SIMPLY IS NOTICE TO THE GOVERNMENT OF

11:05AM 24   AN OPTION THAT THEY HAD, THAT MR. SONNIER SAID -- WILL SAY

11:05AM 25   WOULD WORK.

11:05AM 1        SO THIS RELITIGATING OF THE LIS MOTION, I DON'T THINK I

11:05AM 2   UNDERSTAND.  I MEAN, I UNDERSTAND THE GOVERNMENT WANTS TO CUT

11:05AM 3   OUT THE HEART OF MR. SONNIER'S OPINION BY HAVING HIM TESTIFY,

11:05AM 4   BUT IF HE COULDN'T TESTIFY ABOUT THIS EMAIL, EITHER ORALLY OR

11:05AM 5   BY ADMITTING IT, THEN THAT ERADICATES WHAT THE COURT HAS

11:05AM 6   ALREADY RULED AND THERE WOULD BE NO PURPOSE, RIGHT?

11:05AM 7        THE COURT:  SO HE'S GOING TO SAY IT'S -- SOMETHING

11:05AM 8   TO THE EFFECT OF, I UNDERSTAND THAT THE GOVERNMENT HAD A

11:05AM 9   CHARRETTE, A DISCUSSION ABOUT THIS, AND THAT THE GOVERNMENT,

11:05AM 10  FROM MY INFORMATION, CHOSE NOT TO DO X, WHATEVER IT IS.  MY

11:06AM 11  EXPERT OPINION IS THAT THEY COULD HAVE, NOT SHOULD HAVE, BUT

11:06AM 12  THEY COULD HAVE RECONSTRUCTED THE LIS AT THIS TIME.

11:06AM 13        MR. COOPERSMITH:  SIMPLY PUT, YOUR HONOR, YES, THAT

11:06AM 14  HE UNDERSTANDS THE GOVERNMENT RECEIVED THIS EMAIL, I THINK THAT

11:06AM 15  EMAIL IS ADMISSIBLE.

11:06AM 16        AND HE TOLD THE GOVERNMENT, YOU HAVE CERTAIN OPTIONS, ONE

11:06AM 17  IS TO GET THE SERVERS.  AND HE'S GOING TO SAY THAT IS THE

11:06AM 18  OPTION THAT WOULD WORK, RIGHT.

11:06AM 19        THAT'S IT.  THAT'S THE GIST OF IT.

11:06AM 20        THE COURT:  MR. BOSTIC EXPRESSED SOME CONCERN ABOUT

11:06AM 21  HIM TESTIFYING ABOUT THE EVIDENCE BASED ON THE READING OF

11:06AM 22  WHATEVER, HE WOULD THEN BECOME A DECLARANT, HISTORICAL

11:06AM 23  DECLARANT ABOUT WHAT HAPPENED IN THE PROCESS.

11:06AM 24        DO YOU INTEND, OR IF YOU WANT TO ANSWER THE QUESTION, BUT

11:06AM 25  IS THAT SOMETHING THAT YOU ENVISION HIM DOING, BEING A

11:06AM  1    HISTORICAL REPORTER ABOUT THINGS?

11:06AM  2         MR. COOPERSMITH:  I DON'T THINK IT'S FAIR TO

11:06AM  3    CHARACTERIZE HIM AS AN HISTORICAL REPORTER, BECAUSE AS WE ALL

11:07AM  4    KNOW, LIKE ANY EXPERT, HE DOESN'T HAVE PERSONAL KNOWLEDGE OF

11:07AM  5    THESE EVENTS.

11:07AM  6         WHAT HE WILL DO IS TALK ABOUT THE EVENTS THAT HE'S BEEN

11:07AM  7    MADE AWARE OF, AS RULE 703 ALLOWS, TO THE EXTENT THAT THEY FORM

11:07AM  8    THE BASIS OF HIS OPINION; RIGHT?

11:07AM  9         AND WHAT FORMS THE BASIS OF HIS OPINION IS THAT HE KNOWS

11:07AM 10    IT WAS AN LIS SYSTEM; HE KNOWS IT WAS A MICROSOFT SQL SERVER

11:07AM 11    SYSTEM; HE KNOWS THAT, IN AUGUST OF 2018, THAT THERANOS HAD THE

11:07AM 12    SYSTEM; THAT THERANOS DISMANTLED THE SYSTEM -- NOT THE

11:07AM 13    GOVERNMENT, THERANOS -- AND THAT UPON DISMANTLING IT OR RIGHT

11:07AM 14    BEFORE DISMANTLING IT, THERANOS PROVIDED A COPY OF THE LIS DATA

11:07AM 15    TO THE GOVERNMENT; THAT THAT COPY IS NOT ABLE TO BE ACCESSED

11:07AM 16    WITHOUT THE ENCRYPTION KEY; THAT THE DEFENSE GOT A COPY AND IT

11:07AM 17    IS NOT ABLE TO BE ACCESSED WITHOUT THE ENCRYPTION KEY.

11:07AM 18         AND FINALLY, YOUR HONOR, THAT HE RECEIVED AN EMAIL, THAT

11:07AM 19    HE'S AWARE OF AN EMAIL THAT WAS SENT FROM THE ALS SUPERVISOR TO

11:07AM 20    THE GOVERNMENT THAT SAID, HERE ARE OPTIONS TO TRY TO RESURRECT

11:08AM 21    THIS SYSTEM, AND ONE OF THE OPTIONS WAS TO GO AND GET THE

11:08AM 22    SERVERS, AND HE'S GOING TO SAY THAT WOULD HAVE WORKED.

11:08AM 23         AND THAT'S REALLY THE SUM TOTAL OF HIS TESTIMONY.

11:08AM 24         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11:08AM 25         MR. BOSTIC, ANYTHING ELSE.

6571

11:08AM 1      MR. BOSTIC:  NO, YOUR HONOR.  I THINK THIS

11:08AM 2  DISCUSSION HAS BEEN HELPFUL.

11:08AM 3      THE COURT MAY HEAR SOME OBJECTIONS FROM THE GOVERNMENT IF

11:08AM 4  THIS EVIDENCE IS PROFFERED, AND IT WOULD BE HELPFUL FOR THE

11:08AM 5  GOVERNMENT TO UNDERSTAND IN THE MOMENT THE PURPOSE FOR WHICH

11:08AM 6  THE EVIDENCE IS COMING IN, WHETHER IT'S COMING IN FOR NOTICE OR

11:08AM 7  SOME OTHER PURPOSE.

11:08AM 8      SO THAT WILL BE THE REASON WHY THE GOVERNMENT IS

11:08AM 9  OBJECTING, SO THAT WE CAN RETAIN CONSISTENT DURING THE CROSS.

11:08AM 10          THE COURT:  SURE.

11:08AM 11          MR. BOSTIC:  I'LL ALSO JUST POINT OUT THAT I THINK

11:08AM 12  THE COURT RESERVED A RULING ON THE ADMISSIBILITY OF THE EMAIL

11:08AM 13  THAT MR. COOPERSMITH IS REFERENCING.  I'M PRETTY SURE.

11:08AM 14      SO I'M NOT SEEKING TO RELITIGATE ANYTHING.  I'M JUST

11:08AM 15  POINTING OUT THAT AN EMAIL LIKE THAT --

11:08AM 16          THE COURT:  RIGHT.

11:08AM 17          MR. BOSTIC:  -- I DON'T THINK THE COURT HAS RULED

11:08AM 18  SPECIFICALLY ON IT.

11:08AM 19      AND IF IT'S COMING IN FOR NOTICE TO THE PROSECUTION OR TO

11:08AM 20  SHOW KNOWLEDGE, THEN I JUST WANT TO FLAG FOR THE COURT, I THINK

11:09AM 21  THAT WOULD OPEN THE DOOR TO OTHER DOCUMENTS COMING IN FOR A

11:09AM 22  SIMILAR PURPOSE.

11:09AM 23          THE COURT:  WELL, WE'VE HAD THAT DISCUSSION AND THE

11:09AM 24  COURT HAS RECOGNIZED THAT IN ITS MIL ORDERS, AS WELL AS SOME

11:09AM 25  CONVERSATION ON 1464, AND CERTAINLY IN THE COLLOQUY THAT I HAVE

11:09AM 1    ENJOYED WITH ALL COUNSEL THROUGHOUT THE CASE REGARDING THIS

11:09AM 2    ISSUE.

11:09AM 3         OKAY.  ANYTHING ELSE?

11:09AM 4              MR. COOPERSMITH:  I'LL JUST SAY -- JUST ONE OTHER

11:09AM 5    THING TO QUICKLY RESPOND TO MR. BOSTIC.

11:09AM 6         YOU KNOW, I THINK WHAT IS GOOD FOR THE GOOSE IS GOOD FOR

11:09AM 7    THE GANDER, AS THEY SAY, AND IF MR. BOSTIC -- IT SOUNDS LIKE HE

11:09AM 8    WANTS TO LIMIT OUR FACTUAL PRESENTATION, AND THAT'S FINE, AND

11:09AM 9    WE'LL STAY IN THE LANE.

11:09AM 10        BUT HE'S NOT GOING TO BE ABLE TO ASK QUESTIONS OF

11:09AM 11   MR. SONNIER THAT ARE NOT WITHIN HIS PERSONAL KNOWLEDGE TRYING

11:09AM 12   TO -- I DON'T KNOW WHAT MR. BOSTIC HAS IN MIND EXACTLY, BUT IF

11:09AM 13   IT'S ATTRIBUTING FAULT TO MR. BALWANI OR SOMETHING OF THAT

11:09AM 14   NATURE, I THINK THE COURT HAS ALREADY RULED THAT'S NOT

11:09AM 15   PERMISSIBLE.

11:09AM 16        CERTAINLY HE CAN ASK CROSS-EXAMINATION QUESTIONS, BUT I

11:10AM 17   THINK THERE ARE BOUNDARIES AND LIMITS TO WHAT HE CAN INSINUATE

11:10AM 18   IN CROSS OF MR. SONNIER.

11:10AM 19             MR. BOSTIC:  WE UNDERSTAND AND WILL ABIDE BY THE

11:10AM 20   COURT'S RULINGS.

11:10AM 21             THE COURT:  GREAT.

11:10AM 22        THANK YOU VERY MUCH.  WE'LL SEE YOU TOMORROW.  THANK YOU.

11:10AM 23             MR. BOSTIC:  THANK YOU, YOUR HONOR.

11:15AM 24        (COURT CONCLUDED AT 11:15 A.M.)

         25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18         _____
19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  JUNE 6, 2022

22

23

24

25