UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )   CR-18-00258-EJD |
| PLAINTIFF, | ) |
| | )   SAN JOSE, CALIFORNIA |
| VS. | ) |
| | )   JUNE 9, 2022 |
| RAMESH "SUNNY" BALWANI, | ) |
| | )   VOLUME 36 |
| DEFENDANT. | ) |
| _____ | )   PAGES 6669 - 6893 |


TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                       BY:  JOHN C. BOSTIC
                            JEFFREY B. SCHENK
                       150 ALMADEN BOULEVARD, SUITE 900
                       SAN JOSE, CALIFORNIA 95113

                       BY:  ROBERT S. LEACH
                            KELLY VOLKAR
                       1301 CLAY STREET, SUITE 340S
                       OAKLAND, CALIFORNIA 94612

        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTERS:
                       IRENE L. RODRIGUEZ, CSR, RMR, CRR
                       CERTIFICATE NUMBER 8074
                       LEE-ANNE SHORTRIDGE, CSR, CRR
                       CERTIFICATE NUMBER 9595

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      A P P E A R A N C E S:  (CONT'D)

 2      FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                                 BY:  MOLLY MCCAFFERTY
 3                                    SHAWN ESTRADA
                                      SACHI SCHURICHT
 4                               THE ORRICK BUILDING
                                 405 HOWARD STREET
 5                               SAN FRANCISCO, CALIFORNIA 94105

 6                               BY:  JEFFREY COOPERSMITH
                                      AARON BRECHER
 7                                    AMANDA MCDOWELL
                                 701 FIFTH AVENUE, SUITE 5600
 8                               SEATTLE, WASHINGTON 98104

 9                               BY:  STEPHEN CAZARES
                                 77 SOUTH FIGUEROA STREET, SUITE 3200
10                               LOS ANGELES, CALIFORNIA 90017

11                               BY:  AMY WALSH
                                 51 W 52ND STREET
12                               NEW YORK, NEW YORK 10019

13
        ALSO PRESENT:            OFFICE OF THE U.S. ATTORNEY
14                               BY:  MADDI WACHS, PARALEGAL
                                      SARA SLATTERY, PARALEGAL
15
                                 ORRICK, HERRINGTON & SUTCLIFFE
16                               JENNIFER CYGNOR, PARALEGAL

17                               PROLUMINA
                                 BY:  COREY ALLEN
18                               2200 SIXTH AVENUE, SUITE 425
                                 SEATTLE, WASHINGTON 98121
19
                                 UNITED STATES POSTAL INSPECTION SERVICE
20                               BY:  CHRISTOPHER MCCOLLOW

21                               FEDERAL BUREAU OF INVESTIGATION
                                 BY:  MARIO C. SCUSSEL
22
                                 UNITED STATES FOOD & DRUG
23                               ADMINISTRATION
                                 BY:  GEORGE SCAVDIS
24

25
```

09:58AM

1

2                          INDEX OF PROCEEDINGS

3      DEFENDANT'S:

4

5      **RICHARD SONNIER**
       DIRECT EXAM BY MR. BRECHER                P. 6711
6      CROSS-EXAM BY MR. BOSTIC                  P. 6747
       REDIRECT EXAM BY MR. BRECHER             P. 6809
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6672

INDEX OF EXHIBITS

                         IDENT.        EVIDENCE

GOVERNMENT'S

5915                                   6754
5916                                   6757
5897                                   6784
5943                                   6788
5917                                   6793




DEFENDANT'S

21832                                  6743
15004                                  6827
15058                                  6828
20817                                  6830
20826                                  6832
15029                                  6833
7286                                   6834
20827                                  6835
20830                                  6837
20788 AND 20145                        6840
20073A                                 6841

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                                    JUNE 9, 2022 |
| 2 | P R O C E E D I N G S |
| 09:02AM   3 | (COURT CONVENED AT 9:02 A.M.) |
| 09:02AM   4 | (JURY OUT AT 9:02 A.M.) |
| 09:02AM   5 | THE COURT:  LET'S GO ON THE RECORD IN THE BALWANI |
| 09:02AM   6 | MATTER. |
| 09:02AM   7 | COUNSEL, WHY DON'T I HAVE YOU STATE YOUR APPEARANCE, |
| 09:02AM   8 | PLEASE. |
| 09:02AM   9 | MR. BOSTIC:  GOOD MORNING, YOUR HONOR. |
| 09:02AM   10 | JOHN BOSTIC FOR THE UNITED STATES, ALONG WITH |
| 09:02AM   11 | ROBERT LEACH, JEFF SCHENK, AND KELLY VOLKAR. |
| 09:02AM   12 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:02AM   13 | MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR. |
| 09:02AM   14 | JEFF COOPERSMITH FOR MR. BALWANI WHO IS PRESENT, AND I'M |
| 09:02AM   15 | JOINED BY MY COLLEAGUES AMY WALSH AND STEPHEN CAZARES, AND |
| 09:02AM   16 | OTHER MEMBERS OF MY TEAM, MOLLY MCCAFFERTY AND AARON BRECHER. |
| 09:02AM   17 | THE COURT:  THANK YOU.  GOOD MORNING EVERYONE. |
| 09:02AM   18 | WE ARE OUTSIDE OF THE PRESENCE OF THE JURY AND I |
| 09:02AM   19 | UNDERSTAND THERE WERE SOME MATTERS THAT COUNSEL WISH TO |
| 09:02AM   20 | DISCUSS. |
| 09:02AM   21 | MR. COOPERSMITH:  YES, YOUR HONOR. |
| 09:02AM   22 | THE FIRST ONE IS SORT OF A CLARIFICATION OR HOUSEKEEPING |
| 09:03AM   23 | MATTER JUST FROM THE COURT'S ORDER THE OTHER DAY.  DOCKET 1475 |
| 09:03AM   24 | WAS THE COURT'S ORDER ON ADMITTING VARIOUS EXHIBITS, AND WE |
| 09:03AM   25 | JUST WANTED TO CLARIFY A FEW THINGS. |

6674

09:03AM   1          SO, FIRST OF ALL, WITH REGARD TO EXHIBIT 20817, WHICH WAS

09:03AM   2     LISTED AS EXHIBIT 6 IN THE COURT'S ORDER 1475, THE COURT

09:03AM   3     ORDERED THAT -- AND I'LL USE BOTH THE ECF PAGES AND THE EXHIBIT

09:03AM   4     PAGES -- THE ECF PAGES 94 THROUGH 97, WHICH ARE EXHIBIT PAGES 1

09:03AM   5     THROUGH 4, THE COURT ORDERED WERE ADMISSIBLE.  THAT'S CLEAR.

09:03AM   6          ECF PAGES 98 THROUGH 118, WHICH ARE EXHIBIT PAGES 5

09:03AM   7     THROUGH 25, THE COURT ORDERED WERE INADMISSIBLE.  THAT'S CLEAR.

09:04AM   8          BUT THEN THERE'S NO MENTION IN THE COURT'S RULING OF

09:04AM   9     ECF PAGES 119 THROUGH 147, WHICH ARE EXHIBIT PAGES 26 THROUGH

09:04AM  10     54.  WE JUST WANTED TO MAKE SURE, ONE WAY OR THE OTHER, WHETHER

09:04AM  11     THOSE PAGES ARE ADMISSIBLE OR NOT BEFORE WE OFFER EXHIBITS.  SO

09:04AM  12     WE DON'T WANT TO HAVE ANY MISTAKE THERE.

09:04AM  13          JUST SO THE COURT HAS IN MIND, THOSE EXHIBIT -- THOSE

09:04AM  14     PAGES ARE AN FDA DECISION SUMMARY, AND THEY'RE -- YOU KNOW,

09:04AM  15     IT'S -- IT'S A NUMBER OF PAGES, 20-SOMETHING PAGES.

09:04AM  16          BUT IT'S THE FDA DECISION SUMMARY, WHICH IS, LIKE, THE

09:04AM  17     SECOND THING THAT YOU CAN CLICK ON ON THE FDA WEBSITE.

09:04AM  18          SO WE JUST WEREN'T SURE ONE WAY OR THE OTHER.  OBVIOUSLY

09:04AM  19     WE WOULD PREFER IT BE ADMISSIBLE.  BUT EITHER WAY, WE JUST WANT

09:04AM  20     TO KNOW SO WE DON'T OFFER -- WE DON'T JUST WANT TO OFFER

09:05AM  21     EXHIBITS THAT THE COURT DID NOT INTEND FOR US TO ADMIT.  SO

09:05AM  22     THAT'S THE FIRST ISSUE.

09:05AM  23          AND THEN THE SECOND ISSUE, AGAIN, THE CLARIFICATION POINT,

09:05AM  24     IS EXHIBIT 20830, WHICH WAS EXHIBIT 7 IN OUR MOTION, AND THAT'S

09:05AM  25     HOW THE COURT REFERRED TO IT IN DOCKET 1475 IN THE COURT'S

6675

09:05AM 1    ORDER, THE COURT RULED THAT ECF PAGES 162 THROUGH 164 ARE

09:05AM 2    ADMISSIBLE, SO THAT'S CLEAR.  THOSE ARE EXHIBIT PAGES 1 THROUGH

09:05AM 3    3.

09:05AM 4         THE COURT ORDERED THAT ECF PAGE 165, WHICH IS EXHIBIT

09:05AM 5    PAGE 4, IS ADMISSIBLE, AND SO THAT'S CLEAR.

09:05AM 6         AND THEN THERE'S -- THE COURT MAY REMEMBER IN THAT

09:05AM 7    EXHIBIT -- THIS IS THE PATENT APPLICATION.  THERE'S A NUMBER OF

09:05AM 8    PAGES THAT, IN PARAGRAPH TO PARAGRAPH, DESCRIBE THE INVENTION.

09:06AM 9         AND THE COURT ORDERED THAT PAGES 166 -- I'M SORRY, 166

09:06AM 10   THROUGH 169, THESE ARE THE ECF PAGES, WERE ADMISSIBLE, AND THAT

09:06AM 11   PAGES 200 THROUGH 204 ARE INADMISSIBLE.

09:06AM 12        WHEN WE LOOKED AT THE EXHIBIT, IT LOOKED LIKE THOSE PAGES

09:06AM 13   THAT THE COURT ORDERED ADMISSIBLE WERE SORT OF A FEW PAGES OF

09:06AM 14   THE BODY OF THE PATENT APPLICATION, AND THEN THE REST WAS NOT

09:06AM 15   ADMISSIBLE, BUT IT DIDN'T NECESSARILY MAKE SENSE TO US WHY THAT

09:06AM 16   ONE WOULD BE ADMISSIBLE AND NOT THE OTHER.

09:06AM 17        SO IT MIGHT BE THAT THE COURT INTENDED FOR THE ENTIRE

09:06AM 18   SECTION TO BE INADMISSIBLE, BUT AGAIN, WE WANTED TO MAKE SURE

09:06AM 19   THAT WE DID NOT OFFER EXHIBITS THAT THE COURT DID NOT INTEND

09:06AM 20   FOR US TO BE ABLE TO ADMIT.

09:06AM 21             THE COURT:  OKAY.

09:06AM 22             MR. COOPERSMITH:  SO THAT'S THIS MATTER, AND I

09:06AM 23   UNDERSTAND THE COURT WOULD HAVE TO LOOK AT THOSE PAGES AND SORT

09:07AM 24   IT OUT.  BUT I JUST WANTED TO BRING IT TO THE COURT'S

09:07AM 25   ATTENTION.

09:07AM 1          THE COURT:  ALL RIGHT.  THANK YOU.

09:07AM 2       MR. BOSTIC.

09:07AM 3          MR. BOSTIC:  LET ME JUST CHECK WITH MR. LEACH, WHO

09:07AM 4    ARGUED THAT, TO SEE IF HE HAS ANYTHING TO ADD, YOUR HONOR.

09:07AM 5          THE COURT:  THANK YOU.

09:07AM 6       IS THIS, MR. COOPERSMITH, IS THIS SOMETHING THAT YOU NEED

09:07AM 7    RESPONSE TO PRIOR TO CALLING ANY NEXT WITNESS?

09:07AM 8          MR. COOPERSMITH:  WELL, AND THAT'S THE NEXT MATTER

09:07AM 9    ABOUT THAT NEXT WITNESS.

09:07AM 10         THE COURT:  OKAY.

09:07AM 11         MR. COOPERSMITH:  BUT WE, WE WOULD NEED CLARITY ON

09:07AM 12   THAT BEFORE THOSE EXHIBITS ARE OFFERED INTO EVIDENCE BECAUSE

09:07AM 13   THE COURT WOULD HAVE TO AGREE SOME PAGES OR THE OTHER PAGES ARE

09:07AM 14   ADMISSIBLE, AND WE JUST WANT TO MAKE SURE THAT WE GET IT RIGHT.

09:07AM 15         THE COURT:  RIGHT.  BUT DO YOU NEED THAT INFORMATION

09:07AM 16   OR THAT CLARIFICATION FROM THE COURT PRIOR TO YOUR CALLING YOUR

09:07AM 17   NEXT WITNESS?

09:07AM 18         MR. COOPERSMITH:  NOT NECESSARILY, YOUR HONOR.  AND

09:07AM 19   HERE'S WHY -- AND I INFORMED MR. LEACH AND MR. BOSTIC OF THIS

09:07AM 20   THIS MORNING.

09:07AM 21      THE EXHIBITS THAT ARE THE SUBJECT OF 1475, THERE ARE NINE

09:08AM 22   EXHIBITS.  ONE OF THEM, WHICH IS EXHIBIT 7098, WE'RE NOT GOING

09:08AM 23   TO OFFER.  SO THERE ARE EIGHT EXHIBITS.

09:08AM 24      AND THEN THERE ARE ADDITIONAL EXHIBITS THAT ARE ADMISSIBLE

09:08AM 25   BY STIPULATION.

09:08AM   1          OUR INTENT WHEN WE FILED THE MOTION AND ARGUED THAT MOTION

09:08AM   2   WAS TO CALL MR. OKANO, WHO OBVIOUSLY KNOWS NOTHING ABOUT THESE

09:08AM   3   EXHIBITS, AND BY CALLING MR. OKANO, IT WOULD GIVE US AN

09:08AM   4   OPPORTUNITY TO DISPLAY THESE EXHIBITS TO THE JURY, AND THE

09:08AM   5   QUESTIONS WOULD BE, DO YOU SEE THIS?  DO YOU SEE THAT?  THAT

09:08AM   6   SORT OF QUESTIONING.  WE THINK IT WOULD BE MORE EFFICIENT.

09:08AM   7          AND ALSO WE WOULD PREFER, AS PART OF OUR DEFENSE CASE, TO

09:08AM   8   SIMPLY HAVE THE COURT ADMIT THOSE EXHIBITS AND NOT CALL A

09:08AM   9   PARALEGAL WHO IS NOT NECESSARY FOR ADMISSIBILITY AND DOESN'T

09:08AM  10   ADD ANYTHING TO THE EQUATION.

09:08AM  11          AND WHAT WE WOULD BE FOREGOING, OBVIOUSLY, WOULD BE THE

09:08AM  12   ABILITY TO DISPLAY TO THE JURY RIGHT NOW THOSE DOCUMENTS.  BUT

09:09AM  13   OBVIOUSLY ONCE THEY'RE IN EVIDENCE, EITHER SIDE COULD USE THOSE

09:09AM  14   EXHIBITS HOW THEY SEE FIT FOR CLOSING.

09:09AM  15          SO THAT'S WHAT WE WOULD LIKE TO DO TODAY.  SO WE WOULD NOT

09:09AM  16   CALL MR. OKANO.  FOR THAT REASON, IT WOULDN'T BE NECESSARY FOR

09:09AM  17   THE COURT TO SORT OUT THAT PAGE ISSUES IF WE ADMITTED THE

09:09AM  18   EXHIBITS THAT WAY BECAUSE THE COURT COULD JUST LOOK AT THOSE

09:09AM  19   AND THEN ADMIT THOSE EXHIBITS AT THE TIME WHEN WE'RE READY TO

09:09AM  20   DO THAT.

09:09AM  21          THE COURT:  I SEE.  OKAY.  THANK YOU.

09:09AM  22      MR. LEACH.

09:09AM  23          MR. LEACH:  YOUR HONOR, WE DID HAVE QUESTIONS FOR

09:09AM  24   MR. OKANO, SO I'M NOT PREPARED RIGHT NOW TO SIMPLY STIPULATE TO

09:09AM  25   THEIR ADMISSION.  WE THINK IT'S APPROPRIATE -- WE ALSO HAD SOME

09:09AM   1    ADDITIONAL EXHIBITS THAT WE THINK SHOULD BE OFFERED AND

09:09AM   2    ADMITTED DURING CROSS-EXAMINATION.

09:09AM   3         SO I DO THINK THE ISSUE IS RIPE.

09:09AM   4         I WOULD SAY -- I DON'T KNOW IF MR. COOPERSMITH INTENDED TO

09:09AM   5    DISPLAY THE PAGES THAT THERE'S SOME AMBIGUITY ABOUT.  MY

09:09AM   6    EXPECTATION IS NOT.  AND IF THEY'RE NOT GOING TO BE DISPLAYED

09:09AM   7    WITH THE PARALEGAL, I'M SURE THIS IS SOMETHING THAT CAN BE

09:10AM   8    RESOLVED IN DUE COURSE.

09:10AM   9         BUT IF MR. -- IF THE COURT WANTS TO GO ANOTHER WAY AND

09:10AM  10    MR. OKANO IS THE FIRST WITNESS, WE DO HAVE QUESTIONS FOR HIM.

09:10AM  11              THE COURT:  SURE.  OKAY.

09:10AM  12              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:10AM  13         SO THIS IS OUR CASE, AND WE WOULD LIKE TO PROCEED THIS

09:10AM  14    WAY.  OBVIOUSLY ALL OF THE TIME -- AND, YOU KNOW, YOUR HONOR

09:10AM  15    HAS BEEN ON THE BENCH A LONG TIME -- EXHIBITS ARE ADMITTED WHEN

09:10AM  16    THERE'S NOT A WITNESS IF THEY'RE ADMISSIBLE.

09:10AM  17         SO WE HAVE A COMBINATION OF EXHIBITS THAT ARE ADMISSIBLE

09:10AM  18    BASED ON THE COURT'S ORDER, AND THEN OTHER EXHIBITS ARE

09:10AM  19    ADMISSIBLE BASED ON STIPULATION OF THE PARTIES.

09:10AM  20         WE THINK THEY SHOULD BE ADMITTED.

09:10AM  21         THE GOVERNMENT DOESN'T HAVE ANY RIGHT TO CROSS-EXAMINE.

09:10AM  22    FRANKLY, THERE WERE WITNESSES THAT I THOUGHT THE GOVERNMENT WAS

09:10AM  23    GOING TO CALL THAT I PREPARED FOR AND I THOUGHT I HAD SOME

09:10AM  24    GREAT CROSS-EXAMINATION, BUT THEY NEVER CALLED THE WITNESSES SO

09:10AM  25    I NEVER GOT TO DO IT, AND THAT'S JUST HOW TRIAL GOES.

09:10AM 1      SO WE DON'T THINK THAT MR. LEACH HAS ANY RIGHT TO HAVE US

09:10AM 2   CALL A WITNESS WHEN THE DOCUMENTS ARE OTHERWISE ADMISSIBLE.

09:11AM 3      IF HE HAS ANOTHER WAY TO GET HIS DOCUMENTS IN, IF IT'S AN

09:11AM 4   APPROPRIATE REBUTTAL CASE, I DON'T KNOW THAT IT IS, BUT

09:11AM 5   CERTAINLY THAT'S SOMETHING THAT THE GOVERNMENT COULD ASSERT.

09:11AM 6      BUT WE DON'T THINK THAT THERE'S ANY ABILITY FOR THE

09:11AM 7   GOVERNMENT TO INTERFERE WITH OUR DEFENSE CASE.  OUR STRATEGY

09:11AM 8   THAT WE HAVE COME TO THIS MORNING IS THAT WE WOULD LIKE TO GET

09:11AM 9   THESE EXHIBITS ADMITTED.

09:11AM 10      MR. OKANO ADDS NOTHING TO THE EQUATION.  HE DOESN'T

09:11AM 11   HELP -- HE'S NOT NECESSARY TO ESTABLISH ANYTHING.  THIS HAS

09:11AM 12   ALREADY BEEN ESTABLISHED BY COURT ORDER AND STIPULATION, AND SO

09:11AM 13   THAT'S HOW WE WOULD LIKE TO PROCEED.

09:11AM 14          THE COURT:  OKAY.

09:11AM 15      MR. LEACH.

09:11AM 16          MR. LEACH:  WE WOULD LIKE TO ASK HIM QUESTIONS,

09:11AM 17   YOUR HONOR, CONSISTENT WITH WHAT WE'VE BEEN DOING THROUGHOUT

09:11AM 18   THIS TRIAL.

09:11AM 19          THE COURT:  THANK YOU.

09:11AM 20      SO LET ME ASK YOU, IT SOUNDS LIKE WHAT I HEAR YOU SAYING,

09:11AM 21   MR. COOPERSMITH, IS THAT YOU BELIEVE THE COURT CAN JUST ADMIT

09:11AM 22   THESE EXHIBITS BASED ON STIPULATION, SOME OF THEM BASED ON

09:11AM 23   STIPULATION, AND OTHERS BASED ON --

09:11AM 24          MR. COOPERSMITH:  -- THE COURT ORDER.  SO WE WENT

09:12AM 25   THROUGH THIS --

6680

09:12AM 1       THE COURT:  1475.

09:12AM 2       MR. COOPERSMITH:  YES, YOUR HONOR, 1475.

09:12AM 3       THE COURT:  OKAY.

09:12AM 4       MR. COOPERSMITH:  AND WE WENT THROUGH ALL OF THOSE

09:12AM 5 DOCUMENTS, THE GOVERNMENT HAD A CHANCE TO ARGUE THAT, AND THEY

09:12AM 6 WERE ADMISSIBLE BECAUSE THEY WERE AUTHENTIC OR THEY WERE PUBLIC

09:12AM 7 RECORDS, AND THERE WAS NO DEBATE ABOUT THAT.  THERE WERE SOME

09:12AM 8 401 AND 403 ISSUES THAT THE COURT RESOLVED.

09:12AM 9  BUT AT THIS POINT, MR. OKANO, HE DOESN'T KNOW ANYTHING

09:12AM 10 OTHER THAN THEY'RE ADMISSIBLE BASED ON THE COURT'S ORDER, AND

09:12AM 11 ALL THAT MR. OKANO COULD ADD IS HE WOULD BE A WAY FOR US TO

09:12AM 12 DISPLAY THE EXHIBITS RIGHT NOW BECAUSE WE WOULD JUST PUT THE

09:12AM 13 EXHIBIT UP AND SAY, MR. OKANO, WE KNOW YOU DON'T KNOW ANYTHING

09:12AM 14 ABOUT THIS, BUT DO YOU SEE THIS PAGE AND DO YOU SEE THIS DATE?

09:12AM 15  AND THAT'S JUST OUR CHOICE IF WE WANT TO DISPLAY THINGS.

09:12AM 16  BUT IF WE DON'T WANT TO DISPLAY THINGS TO THE JURY RIGHT

09:12AM 17 NOW, THEN WE DON'T NEED HIM.

09:12AM 18  AND I THINK THAT'S HOW WE WANT TO PROCEED IN OUR DEFENSE

09:12AM 19 CASE.

09:12AM 20       THE COURT:  SO PREVIOUSLY YOU TOLD ME THAT YOUR

09:12AM 21 INTENT WAS TO CALL A PARALEGAL.  I THINK IT'S IN YOUR PLEADINGS

09:13AM 22 AS WELL.

09:13AM 23       MR. COOPERSMITH:  YES, YOUR HONOR.

09:13AM 24       THE COURT:  YOU'RE GOING TO CALL THE PARALEGAL, AND

09:13AM 25 THE PARALEGAL WILL TESTIFY AS TO WHATEVER FOUNDATIONAL NEEDS

09:13AM 1    ARE, AND YOU WOULD PUT HIM ON.

09:13AM 2         YOU WERE CONCERNED ABOUT -- I THINK YOU WERE CONCERNED

09:13AM 3    ABOUT CROSS-EXAMINATION.  ONE OF YOUR COLLEAGUES SUGGESTED

09:13AM 4    THAT.

09:13AM 5         AND THAT IS -- I THINK MR. BOSTIC WAS AT THE LECTERN, AND

09:13AM 6    THERE WAS SOME QUESTION ABOUT, WELL, A GOOD FAITH BASIS FOR

09:13AM 7    CROSS-EXAMINATION OF THE PARALEGAL.  I THINK THERE WAS A LITTLE

09:13AM 8    CONVERSATION ABOUT THAT.

09:13AM 9         BUT WHAT I HEAR YOU SAYING NOW IS THAT YOU'RE NOT -- YOU

09:13AM 10   DON'T INTEND TO CALL -- YOU'VE CHANGED YOUR MIND ABOUT THAT,

09:13AM 11   YOU DON'T INTEND TO CALL HIM OR HER, AND YOU'D LIKE THE COURT

09:13AM 12   TO JUST RULE ON THE ADMISSIBILITY OF THESE.

09:13AM 13        MR. COOPERSMITH:  YES, YOUR HONOR.  THE COURT HAS

09:13AM 14   ALREADY RULED ON THE ADMISSIBILITY OF THE EXHIBITS IN

09:13AM 15   DOCUMENT 1475.

09:13AM 16        AND YOUR HONOR IS CORRECT THAT WHEN WE FILED THE MOTION,

09:13AM 17   OUR INTENTION WAS TO CALL THE WITNESS.

09:14AM 18        BUT, AGAIN, THE ONLY PURPOSE OF DOING THAT WOULD BE TO

09:14AM 19   GIVE US THE ABILITY TO DISPLAY SOME DOCUMENTS TO THE JURY NOW

09:14AM 20   RATHER THAN JUST IN CLOSING ARGUMENT, AND WE DON'T NEED TO DO

09:14AM 21   THAT.  I THINK IT'S JUST A MATTER OF THE EXHIBITS ARE

09:14AM 22   ADMISSIBLE BY COURT ORDER, SOME BY STIPULATION, AND THAT'S HOW

09:14AM 23   WE WANT TO PROCEED.

09:14AM 24        AGAIN, THE GOVERNMENT DOESN'T HAVE ANY RIGHT TO INSIST ON

09:14AM 25   US CALLING A WITNESS IN OUR DEFENSE CASE IF THE DOCUMENTS ARE

09:14AM 1    OTHERWISE ADMISSIBLE.

09:14AM 2            THE COURT:  OKAY.

09:14AM 3        MR. LEACH.

09:14AM 4            MR. LEACH:  THEY SHOULD HAVE A SPONSORING WITNESS IF

09:14AM 5    THEY WANT TO PUT A DOCUMENT INTO EVIDENCE, YOUR HONOR, OR A

09:14AM 6    STIPULATION, WHICH THEY DON'T HAVE.

09:14AM 7        I, I AM CONCERNED THAT IF THESE DOCUMENTS JUST COME IN,

09:14AM 8    THE JURY IS NOT GOING TO HAVE ANY CONTEXT FOR THEM, THE CLOSING

09:14AM 9    ARGUMENTS MAY CROSS STREAMS, AND I THINK IF HE WANTS TO USE A

09:14AM 10   DOCUMENT IN CLOSING ARGUMENT, WE SHOULD HAVE THE OPPORTUNITY IN

09:14AM 11   THE MOMENT TO DRAW OUT THE PORTIONS OF THE DOCUMENT THAT WE

09:14AM 12   THINK UNDERCUT WHATEVER PROBATIVE VALUE THEY THINK IT HAS.

09:15AM 13       SO I'M, I'M LEERY OF JUST DUMPING THESE ON THE JURY WITH

09:15AM 14   NO CONTEXT AND NO ABILITY TO ASK A PERSON SOME QUESTIONS ABOUT

09:15AM 15   THE FULL CONTEXT OF THE DOCUMENT.

09:15AM 16       IN ADDITION, THESE DOCUMENTS ARE BEING OFFERED IN LARGE

09:15AM 17   MEASURE FOR THE STATE OF MIND OF MR. BALWANI.  AND IF THESE

09:15AM 18   DOCUMENTS ARE BEING OFFERED FOR THE STATE OF MIND OF

09:15AM 19   MR. BALWANI, THERE ARE ADDITIONAL DOCUMENTS ON THAT SAME TOPIC,

09:15AM 20   THAT IF THERE WERE AN FBI AGENT OR THE AUTHOR OF THE DOCUMENT,

09:15AM 21   WE WOULD RIGHTFULLY, IN THAT CROSS-EXAMINATION, BE ABLE TO

09:15AM 22   OFFER THOSE OTHER DOCUMENTS THAT ARE REFLECTIVE IN THE MOMENT

09:15AM 23   OF THAT STATE OF MIND.

09:15AM 24       SO THE PROPOSED COURSE IS HAMSTRINGING PROPER

09:15AM 25   CROSS-EXAMINATION I THINK ON SOME LEVEL.  THE DOCUMENTS HAVE

09:15AM 1     BEEN ADMITTED, OR THE COURT HAS RULED THAT THEY'RE

09:15AM 2     INADMISSIBLE, SO I DON'T THINK THAT THE CROSS-EXAMINATION IS

09:15AM 3     GOING TO BE LONG.

09:15AM 4          BUT I JUST, I'M WARY OF THESE COMING IN WITHOUT CONTEXT,

09:16AM 5     WITHOUT THE ABILITY TO SHOW IN THE MOMENT WHY THE GOVERNMENT

09:16AM 6     THINKS THAT THEY ARE AS PROBATIVE AS THE DEFENSE MIGHT THINK,

09:16AM 7     AND SO WE WOULD LIKE TO PROCEED THROUGH CROSS-EXAMINATION.

09:16AM 8               MR. COOPERSMITH:  YOUR HONOR, IF I COULD JUST

09:16AM 9     RESPOND TO THAT.

09:16AM 10         MR. OKANO, THE WITNESS, HE'S A PARALEGAL AT ORRICK.  HE

09:16AM 11    PROVIDES ZERO CONTEXT.  HE DOESN'T KNOW ANYTHING ABOUT THESE

09:16AM 12    DOCUMENTS.  HE DOESN'T WORK ON THIS CASE.  HE DIDN'T WORK AT

09:16AM 13    THERANOS.  ALL HE IS, IS POTENTIALLY A FOIL FOR US TO DISPLAY

09:16AM 14    DOCUMENTS TO THE JURY.

09:16AM 15         AND THE GOVERNMENT DOESN'T HAVE A RIGHT TO PUT IN WHATEVER

09:16AM 16    EVIDENCE THEY THINK THEY WANT TO PUT IN THROUGH OUR CASE.  THEY

09:16AM 17    CAN PUT IN DOCUMENTS IN THEIR OWN CASE.  THEY CERTAINLY HAVE

09:16AM 18    HAD MONTHS TO DO THAT.  AND, AS APPROPRIATE, THEY CAN MAKE A

09:16AM 19    REBUTTAL CASE.

09:16AM 20         BUT THEY DON'T HAVE A RIGHT TO PUT IN DOCUMENTS IN OUR

09:16AM 21    CASE.

09:16AM 22         AND AGAIN, YOUR HONOR, THERE WERE WITNESSES THAT THE

09:16AM 23    GOVERNMENT SAID THEY WOULD CALL AND ENDED UP NOT CALLING, AND I

09:16AM 24    WOULD HAVE BEEN DELIGHTED IF THEY CALLED THE WITNESSES BECAUSE

09:16AM 25    I THOUGHT I HAD REALLY GREAT DOCUMENTS I WANTED TO GET IN

6684

09:17AM 1   THROUGH CROSS AND I DIDN'T GET TO DO THAT BECAUSE THEY DIDN'T

09:17AM 2   CALL THE WITNESS.

09:17AM 3       THESE DOCUMENTS ARE ADMISSIBLE UNDER COURT ORDER AND

09:17AM 4   STIPULATION.  THERE'S NO DEBATE ABOUT THAT ANYMORE.

09:17AM 5       MR. OKANO ADDS NO CONTEXT AND NO FOUNDATION, NOTHING,

09:17AM 6   BEYOND WHAT THE COURT HAS ALREADY ORDERED.

09:17AM 7           THE COURT:  THANK YOU.

09:17AM 8       IF THE DOCUMENTS ARE ADMITTED WITHOUT THE WITNESS, IS IT

09:17AM 9   YOUR INTENT TO DISPLAY THEM AND PUBLISH THEM THEN?  DOES EITHER

09:17AM 10  SIDE WISH THAT TO HAPPEN?

09:17AM 11          MR. COOPERSMITH:  I HAVE NO NEED TO DISPLAY THEM TO

09:17AM 12  THE JURY.

09:17AM 13          THE COURT:  IF THE GOVERNMENT REQUESTS THAT THEY BE

09:17AM 14  PUBLISHED, WOULD YOU OBJECT TO THAT?

09:17AM 15          MR. COOPERSMITH:  NO, I WOULD NOT OBJECT TO THAT.

09:17AM 16      BUT IT'S NOT MY INTENTION TO DISPLAY DOCUMENTS WHEN

09:17AM 17  THERE'S NO WITNESS ON THE STAND.  IT WOULD JUST BE, LADIES AND

09:17AM 18  GENTLEMEN OF THE JURY, YOU SHOULD KNOW THE FOLLOWING EXHIBIT

09:17AM 19  NUMBERS ARE ADMITTED, AND WHATEVER PURPOSE THEY'RE ADMITTED

09:17AM 20  FOR, AND THEN WE WOULD OBVIOUSLY HAVE TO RESPECT THE COURT'S

09:17AM 21  ORDER AT ARGUMENT AS TO WHAT WE COULD ARGUE IF SOME ARE

09:17AM 22  ADMITTED FOR NOTICE AND NOT THE TRUTH AND WE WOULD HAVE TO,

09:17AM 23  BOTH SIDES, RESPECT THAT RULING.

09:17AM 24          THE COURT:  WELL, IT SEEMS TO ME THAT IF I'M GOING

09:18AM 25  TO ALLOW THESE DOCUMENTS TO COME IN, IT SEEMS TO ME IT WOULD BE

09:18AM 1    MORE HELPFUL FOR THE JURY TO SEE THEM IN REALTIME DURING THE

09:18AM 2    TRIAL, AND IF YOU WERE GOING TO ASK THAT THESE ARE ADMITTED FOR

09:18AM 3    A CERTAIN PURPOSE AND FOR THE JURY'S NOTE TAKING, FOR THEIR

09:18AM 4    EDIFICATION AND INFORMATION, IT SEEMS TO ME THAT IT WOULD BE

09:18AM 5    BETTER TO HAVE WHATEVER IT IS DISPLAYED AND THEN THE COURT

09:18AM 6    INSTRUCT THEM AT THAT MOMENT WHAT THIS DOCUMENT IS ADMITTED FOR

09:18AM 7    AND ANY LIMITATIONS TO IT FOR THEIR NOTE TAKING, JUST FOR THEIR

09:18AM 8    INFORMATION.

09:18AM 9        I THINK THAT'S MORE FULSOME THAN GIVING THEM NUMBERS AND

09:18AM 10   THEN HAVING THEM SORT IT OUT IN THE JURY ROOM WHEN THEY --

09:18AM 11           MR. COOPERSMITH:  THAT'S FINE, YOUR HONOR.  IT WOULD

09:18AM 12   ESSENTIALLY BE JUST A SLIDESHOW WHERE WE SHOW THE EXHIBIT ON

09:18AM 13   THE SCREEN AND THE COURT WOULD SAY THIS IS ADMITTED FOR A

09:18AM 14   CERTAIN PURPOSE, AND THEN WE WOULD MOVE ON TO THE NEXT ONE.

09:19AM 15       IT WOULD TAKE -- I HAVE NO OBJECTION TO THAT PROCEDURE IF

09:19AM 16   THAT'S HOW THE COURT WANTS TO PROCEED.

09:19AM 17           THE COURT:  SO BEFORE WE DO THIS, IT SOUNDS LIKE

09:19AM 18   THERE'S GOING TO BE A DELAY IN OUR STARTING THIS MORNING,

09:19AM 19   BECAUSE I'LL NEED TO LOOK AT THIS 1475 AND SORT OUT WHAT IT IS

09:19AM 20   THAT YOU'RE SEEKING TO INTRODUCE.

09:19AM 21           MR. COOPERSMITH:  YES, YOUR HONOR.

09:19AM 22       IT'S JUST -- IF WE JUST PROCEEDED BASED ON THE COURT

09:19AM 23   ORDER, IT WOULDN'T PREJUDICE THE DEFENSE.

09:19AM 24       BUT MY CONCERN WAS THAT WE MIGHT BE ADMITTING DOCUMENTS

09:19AM 25   THAT THE COURT DIDN'T REALLY INTEND FOR US TO BE ABLE TO ADMIT.

6686

09:19AM   1          THE COURT:  NO, I UNDERSTAND.  I APPRECIATE THAT.

09:19AM   2       SO I'M GOING TO NEED TO STEP DOWN AND REVIEW THINGS HERE

09:19AM   3    FOR A MOMENT, AND THEN COME BACK AND WE'LL TALK ABOUT THAT.

09:19AM   4       MR. LEACH.

09:19AM   5          MR. LEACH:  I WOULD JUST SUGGEST, YOUR HONOR, WE

09:19AM   6    START WITH MR. SONNIER, AND I THINK THE COURT MIGHT BE ABLE TO

09:19AM   7    RESOLVE THIS DURING A BREAK.

09:19AM   8          MR. COOPERSMITH:  THAT'S FINE, YOUR HONOR.  WE CAN

09:19AM   9    DO THIS -- IF THAT GIVES THE COURT THE TIME TO LOOK THROUGH

09:20AM  10    THIS, THAT'S FINE.  THEN WE CAN START WITH MR. SONNIER AND DO

09:20AM  11    THAT.

09:20AM  12          THE COURT:  YES.

09:20AM  13          MR. COOPERSMITH:  YOUR HONOR, I DON'T KNOW IF THIS

09:20AM  14    WOULD BE HELPFUL.  I DID SAY THE DIFFERENT PAGE NUMBERS ON THE

09:20AM  15    RECORD, BUT THERE'S A CHART I HAVE WHICH I HAD NOT, FRANKLY,

09:20AM  16    INTENDED TO PROVIDE, BUT IT MIGHT BE HELPFUL FOR THE COURT TO

09:20AM  17    TAKE A LOOK AT.

09:20AM  18          THE COURT:  SURE.  I'M HAPPY TO RECEIVE IT.

09:20AM  19       IF YOU WOULD GIVE A COPY TO MR. LEACH.

09:20AM  20          MR. COOPERSMITH:  I'M JUST GOING TO GIVE MR. LEACH

09:20AM  21    MY COPY.  IT HAS SOME NOTES ON IT, BUT I DON'T THINK THEY'RE

09:20AM  22    TOO BAD.

09:20AM  23          THE COURT:  GREAT.  OKAY.

09:20AM  24          THE CLERK:  (HANDING.)

09:20AM  25          THE COURT:  THANK YOU.  WE'LL LOOK AT IT AT AN

```
09:20AM    1        APPROPRIATE BREAK.
09:20AM    2            SO AS I UNDERSTAND IT, IT'S NOT CRITICAL TO YOUR
09:20AM    3    PRESENTATION THIS MORNING THAT THESE EXHIBITS BE ADMITTED
09:20AM    4    BEFORE MR. SONNIER TESTIFY, AND THEY COULD BE ADMITTED AT SOME
09:20AM    5    OTHER TIME, AND THAT WOULD NOT IN ANY WAY JEOPARDIZE THE
09:20AM    6    PRESENTATION OF YOUR --
09:20AM    7            MR. COOPERSMITH:  THAT'S CORRECT, YOUR HONOR.
09:20AM    8            THE COURT:  OKAY.
09:21AM    9            MR. COOPERSMITH:  WHAT WE WOULD DO IS WE WOULD CALL
09:21AM   10    MR. SONNIER, AND THEN THE NEXT THING THAT WOULD HAVE TO HAPPEN
09:21AM   11    IS THIS EXHIBIT ISSUE, BECAUSE WE'RE PLANNING TO REST AFTER
09:21AM   12    THESE EXHIBITS ARE ADMITTED.
09:21AM   13            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
09:21AM   14        SO A COUPLE OF THINGS ON THAT.
09:21AM   15        MR. SONNIER WILL TESTIFY.  WE'VE HAD BRIEF PREVIOUS
09:21AM   16    DISCUSSIONS ABOUT HIS TESTIMONY AT THE CHARGING CONFERENCE.
09:21AM   17    WE'VE DISCUSSED WHAT, IF ANYTHING, WOULD BE DONE IN REGARDS TO
09:21AM   18    HIS TESTIMONY AND IN REGARDS TO ANOTHER INSTRUCTION, POTENTIAL
09:21AM   19    INSTRUCTION.
09:21AM   20        I THINK OUR DISCUSSION YESTERDAY SAID THAT WE WOULD ENGAGE
09:21AM   21    THAT -- REENGAGE OUR CHARGING DISCUSSION AFTER MR. SONNIER'S
09:21AM   22    TESTIMONY, AND THAT WOULD INFORM WHETHER OR NOT THERE'S GOING
09:21AM   23    TO BE A REBUTTAL CASE FROM THE GOVERNMENT, AT LEAST AS TO THAT
09:21AM   24    EVIDENCE.
09:21AM   25            MR. COOPERSMITH:  YES, YOUR HONOR.
```

09:21AM   1          I UNDERSTAND THAT THE GOVERNMENT, AFTER SEEING THE

09:21AM   2     TESTIMONY WHEN IT'S COMPLETE, WANTS TO TAKE THE AFTERNOON TO --

09:21AM   3     OR AT LEAST HAVE DISCUSSION WITH THE COURT ABOUT THE

09:21AM   4     INSTRUCTION.

09:21AM   5               THE COURT:  RIGHT.

09:21AM   6               MR. COOPERSMITH:  WE'RE, OF COURSE, HAPPY TO DO

09:22AM   7     THAT.

09:22AM   8          THERE IS A MOTION THAT WE FILED.  THERE'S ONE EXHIBIT THAT

09:22AM   9     WE WANT TO ADMIT THROUGH MR. SONNIER, AND WE DID PROVIDE IT TO

09:22AM  10     THE COURT.  IT'S THE EMAIL THAT IS FROM THE ALS SUPERVISOR.

09:22AM  11               THE COURT:  20832?

09:22AM  12               MR. COOPERSMITH:  I THINK THAT IS THE NUMBER,

09:22AM  13     YOUR HONOR.

09:22AM  14          AND I DON'T KNOW WHAT THE GOVERNMENT'S POSITION IS ON

09:22AM  15     THAT, BUT MR. BRECHER IS PREPARED TO ARGUE THAT POINT TO THE

09:22AM  16     EXTENT IT NEEDS TO BE ARGUED.

09:22AM  17               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

09:22AM  18               MR. LEACH:  AND MR. BOSTIC WILL BE HANDLING THIS

09:22AM  19     ISSUE FOR THE GOVERNMENT.

09:22AM  20               THE COURT:  ALL RIGHT.  THANK YOU.

09:22AM  21          WELL, LET'S TALK ABOUT THAT NOW.

09:22AM  22               MR. LEACH:  YOUR HONOR, THERE WAS ONE THING I WANTED

09:22AM  23     TO SAY ON THE COURT'S ORDER.

09:22AM  24               THE COURT:  YES.

09:22AM  25               MR. LEACH:  I'M JUST LOOKING QUICKLY THROUGH THE

6689

09:22AM 1        PAGES THAT MR. COOPERSMITH CITED FOR 20817, PAGES 26 THROUGH

09:22AM 2        54.

09:22AM 3             AS I LOOK AT THE DOCUMENT, IT LOOKS TO ME LIKE THESE ARE

09:22AM 4        PORTIONS OF THE APPLICATION THAT WERE PREPARED BY THERANOS, AND

09:22AM 5        I DON'T KNOW IF THAT'S RELEVANT TO THE COURT'S ANALYSIS OR NOT,

09:23AM 6        BUT I JUST WANTED TO MAKE THAT OBSERVATION.

09:23AM 7             THE COURT:  THANK YOU.  THANK YOU.

09:23AM 8             MR. COOPERSMITH:  AND THAT'S EXACTLY WHY I BROUGHT

09:23AM 9        IT TO THE COURT'S ATTENTION.

09:23AM 10            THE COURT:  I HAVE SOME VAGUE RECOLLECTION ABOUT

09:23AM 11       THAT.  OKAY, SO I'LL REVIEW THAT.  THANK YOU.

09:23AM 12            MR. LEACH:  THANK YOU, YOUR HONOR.

09:23AM 13            MR. BRECHER:  GOOD MORNING, YOUR HONOR.

09:23AM 14            THE COURT:  GOOD MORNING.  SO 20832 IS THE -- SEEMS

09:23AM 15       TO BE THE EMAIL.  IS IT FOUR PAGES?

09:23AM 16            MR. BRECHER:  THAT'S CORRECT, YOUR HONOR.

09:23AM 17            THE FIRST PAGE IS A PLACE HOLDER.  THE WAY THE GOVERNMENT

09:23AM 18       PRODUCED THESE DOCUMENTS, WE GOT THE NATIVE .MSG FILES, AND

09:23AM 19       THEN WE GOT THESE BATES STAMPED PLACE HOLDER DOCUMENTS.

09:23AM 20            THE COURT:  OKAY.

09:23AM 21            MR. BRECHER:  YOUR HONOR, THIS IS THE ONLY EXHIBIT

09:23AM 22       THAT WE WOULD SEEK TO OFFER INTO EVIDENCE THROUGH MR. SONNIER.

09:23AM 23            THERE IS ONE EXHIBIT THAT I ALERTED MR. BOSTIC AND HIS

09:23AM 24       TEAM TO THAT WE MIGHT WANT TO PUBLISH AS A DEMONSTRATIVE.

09:23AM 25            BUT IT SEEMS TO ME THAT THERE'S BEEN A SERIES OF

6690

09:24AM 1      CONVERSATIONS, AND I KNOW THAT THE COURT'S RULING ON THE SCOPE

09:24AM 2      OF MR. SONNIER'S TESTIMONY LEFT OPEN THE QUESTION OF WHETHER

09:24AM 3      THESE COMMUNICATIONS WERE ADMISSIBLE, BUT I KNOW THAT THAT HAS

09:24AM 4      BEEN AN ONGOING CONCERN FOR THE GOVERNMENT.

09:24AM 5          SO I JUST THOUGHT IT WOULD BE HELPFUL, BEFORE WE CALL HIM

09:24AM 6      TO THE STAND, TO ADDRESS THAT ISSUE.  THAT WAY I CAN ADJUST MY

09:24AM 7      EXAMINATION DEPENDING ON THE COURT'S RULING.

09:24AM 8          BUT I THINK THE QUESTION IS, IS THE DOCUMENT AUTHENTIC?

09:24AM 9      IS IT RELEVANT?  IS IT NONHEARSAY OR OFFERED FOR A NONHEARSAY

09:24AM 10     PURPOSE?  ET CETERA.

09:24AM 11         AND ON AUTHENTICITY, I DON'T THINK THERE'S ANY QUESTION

09:24AM 12     THAT THE CASE LAW IS QUITE CLEAR.  THESE ARE DOCUMENTS PRODUCED

09:24AM 13     BY THE GOVERNMENT IN RESPONSE TO A COURT ORDER, SO IF THEY'RE

09:24AM 14     NOT AUTHENTIC, THAT WOULD BE QUITE A PROBLEM.

09:24AM 15         AS FOR HEARSAY, I KNOW THAT THERE WAS SOME DISCUSSION THAT

09:24AM 16     MR. BOSTIC AND MR. COOPERSMITH HAD I BELIEVE AT MONDAY'S

09:24AM 17     HEARING THAT I REGRETTABLY MISSED.

09:24AM 18         BUT AS THE COURT KNOWS, AND HOPEFULLY YOU'VE SEEN FROM OUR

09:25AM 19     MOTION, THERE'S QUITE A RANGE OF CASE LAW FROM THE

09:25AM 20     NINTH CIRCUIT AND OTHER CIRCUITS CONFIRMING THAT THE DEPARTMENT

09:25AM 21     OF JUSTICE IS INDEED A PARTY OPPONENT SUBJECT TO THE NONHEARSAY

09:25AM 22     RULE IN 801(D)(2).

09:25AM 23             THE COURT:  MAY I INTERRUPT YOU FOR JUST A MOMENT?

09:25AM 24         MAYBE I SHOULD ASK MR. BOSTIC HIS INITIAL THOUGHTS ON

09:25AM 25     THIS.

6691

09:25AM 1          MR. BRECHER:  OH, PLEASE.

09:25AM 2          THE COURT:  MR. BOSTIC.

09:25AM 3          MR. BOSTIC:  YES.  THANK YOU, YOUR HONOR.

09:25AM 4      SO MR. BRECHER IS CORRECT THAT THERE'S NO DISPUTE HERE AS

09:25AM 5  TO AUTHENTICITY.

09:25AM 6      THE GOVERNMENT'S CONCERNS DO FOCUS ON RELEVANCE, POSSIBLE

09:25AM 7  403 ISSUES, AND ALSO HEARSAY ISSUES.

09:25AM 8      AND I'LL START WITH HEARSAY ISSUES SINCE THAT'S WHAT THE

09:25AM 9  BULK OF THE DEFENSE FILING ADDRESSED.

09:25AM 10     AFTER READING THE CASE LAW LAST NIGHT AFTER THE DEFENSE

09:25AM 11 FILING, I DON'T THINK IT'S ANYWHERE NEAR AS SIMPLE AS THE

09:25AM 12 DEFENSE VIEWS IT.  THE CASES CITED BY THE DEFENSE ARE MARKEDLY

09:25AM 13 DISTINGUISHABLE FROM THE SITUATION HERE.

09:25AM 14     SO JUST TO BE CLEAR ABOUT THE EMAIL THAT WE'RE TALKING

09:25AM 15 ABOUT HERE, THIS IS AN INTERNAL U.S. ATTORNEY'S OFFICE EMAIL

09:26AM 16 FROM A SUPPORT STAFF MEMBER TO PROSECUTING LAWYERS PROVIDING

09:26AM 17 SOME IDEAS ABOUT HOW TO HANDLE AN E-DISCOVERY CHALLENGE.

09:26AM 18     IN CONTRAST, NONE OF THE CASES CITED BY THE DEFENSE DEAL

09:26AM 19 WITH THAT KIND OF INTERNAL COMMUNICATION, CERTAINLY NOTHING

09:26AM 20 RELATING TO THIS KIND OF NONPROSECUTION TECHNICAL TYPE ISSUE.

09:26AM 21     VAN GRIFFIN IS THE MAIN CASE RELIED ON BY THE DEFENSE.

09:26AM 22 THAT RELATES TO A MANUAL PUBLISHED BY THE RELEVANT GOVERNMENTAL

09:26AM 23 AGENCY.

09:26AM 24     HERE WE'RE NOT TALKING ABOUT THE JUSTICE MANUAL OR THE

09:26AM 25 U.S. ATTORNEY'S MANUAL OR SOMETHING SIMILAR.

6692

09:26AM 1   SO I THINK THERE'S A BIG DIFFERENCE THERE WHEREAS THAT WAS

09:26AM 2 AN OFFICIAL PUBLICATION OF THE AGENCY.  THIS IS SIMPLY A

09:26AM 3 COMMUNICATION BY AN EMPLOYEE OF THE AGENCY.

09:26AM 4   THE MORGAN CASE RELATES TO A STATEMENT IN A SWORN

09:26AM 5 AFFIDAVIT MADE TO A MAGISTRATE, AND IT'S UNDERSTANDABLE THAT

09:27AM 6 THAT WOULD BE VIEWED AS A STATEMENT BY A PARTY.  IT'S SUBMITTED

09:27AM 7 OUTSIDE OF THE GOVERNMENT.  IT'S MADE UNDER OATH TO THE COURT,

09:27AM 8 SO IT MAKES SENSE THAT THE PARTY WOULD BE BOUND BY THAT.

09:27AM 9   BRANHAM, THE SIXTH CIRCUIT CASE, RELATES TO STATEMENTS BY

09:27AM 10 A GOVERNMENT INFORMANT TO A DEFENDANT RELEVANT TO AN ENTRAPMENT

09:27AM 11 DEFENSE BY THAT DEFENDANT.

09:27AM 12   SO THAT COURT NOTED, INTERESTINGLY, THAT THAT STATEMENT

09:27AM 13 WASN'T NECESSARILY COMING IN FOR ITS TRUTH, OR IT DIDN'T NEED

09:27AM 14 TO NECESSARILY COME IN FOR ITS TRUTH.

09:27AM 15   THE MAIN ISSUE WAS THAT IT WAS SET AND THE EFFECT THAT

09:27AM 16 THAT MIGHT HAVE ON THE ENTRAPMENT DEFENSE.

09:27AM 17   BUT, AGAIN, I'LL POINT OUT THAT WAS AN EXTERNAL STATEMENT

09:27AM 18 MADE BY THE GOVERNMENT TO SOMEONE OUTSIDE OF THE GOVERNMENT

09:27AM 19 WORKING IN HIS CAPACITY THAT INVOLVED HIM MAKING THOSE

09:27AM 20 STATEMENTS TO SOMEONE OUTSIDE OF THE GOVERNMENT.

09:27AM 21   THE KATTAR CASE IS A FIRST CIRCUIT CASE.  THAT RELATES TO

09:27AM 22 STATEMENTS IN GOVERNMENT BRIEFS, IN GOVERNMENT FILINGS, AND

09:27AM 23 THAT COURT EXPRESSLY SAID THAT IT WASN'T DECIDING WHETHER

09:28AM 24 801(D)(2)(D) APPLIED THERE.

09:28AM 25   INSTEAD, IT FOUND THAT THAT STATEMENT HAD BEEN ADOPTED BY

6693

09:28AM  1    THE GOVERNMENT BECAUSE THE ATTORNEYS IN THAT CASE HAD POINTED

09:28AM  2    TO THOSE FILINGS IN OTHER COURTS AND HAD HELD THEM OUT TO OTHER

09:28AM  3    COURTS AS TRUE, THEREBY ADOPTING THE STATEMENTS AND JUSTIFYING

09:28AM  4    AND BINDING THE GOVERNMENT BY THEM.

09:28AM  5        THE CHANG CASE IN THE NINTH CIRCUIT RELATES TO THE

09:28AM  6    ASSIGNMENT OF A REGISTRATION NUMBER BY A GOVERNMENT AGENCY.

09:28AM  7        IN THAT CASE, THE ISSUE THAT THE COURT WAS BEING ASKED TO

09:28AM  8    DECIDE WASN'T EVEN DECIDED BY THE NINTH CIRCUIT BECAUSE THAT

09:28AM  9    COURT FOUND THAT THAT DEFENDANT HADN'T PROPERLY PRESERVED THE

09:28AM  10   ISSUE FOR APPEAL, SO THAT CASE DOESN'T REALLY MOVE THE NEEDLE

09:28AM  11   ONE WAY OR THE OTHER.

09:28AM  12       THE BAKSHINIAN CASE IN THE CENTRAL DISTRICT OF CALIFORNIA

09:28AM  13   RELATES TO A STATEMENT BY A PROSECUTOR IN ANOTHER TRIAL

09:28AM  14   RELATING TO THE SAME CONDUCT.

09:28AM  15       SO, AGAIN, THERE WE'RE TALKING ABOUT A STATEMENT BY A

09:28AM  16   GOVERNMENT EMPLOYEE WHOSE JOB IS TO ACT AS A REPRESENTATIVE

09:29AM  17   MAKING A STATEMENT ON THE RECORD, AND SO I THINK THAT ANALYSIS

09:29AM  18   IS REALLY DIFFERENT FROM WHAT WE'RE LOOKING AT HERE.

09:29AM  19       FINALLY, THE BAGCHO CASE -- THAT'S B-A-G-C-H-O -- THAT'S

09:29AM  20   THE D.C. DISTRICT, THAT COURT HELD THAT A STATEMENT BY ANOTHER

09:29AM  21   AGENCY REGARDING A SOURCE'S RELIABILITY COULD NOT COME IN FOR

09:29AM  22   ITS TRUTH, SO THAT ACTUALLY GOES THE OPPOSITE WAY FROM WHAT THE

09:29AM  23   DEFENSE IS SUGGESTING.

09:29AM  24       THERE ARE CASES THAT HOLD THAT STATEMENTS BY PROSECUTORS

09:29AM  25   FALL UNDER THIS EXCEPTION, BUT THAT'S NOT WHAT WE'RE LOOKING AT

09:29AM   1    HERE.  WE'RE NOT LOOKING AT SOMETHING THAT A REPRESENTATIVE OF

09:29AM   2    THE GOVERNMENT STATED IN COURT IN CONNECTION WITH A CASE.

09:29AM   3         THERE ARE SEVENTH CIRCUIT CASES THAT HOLD CONTRARY TO THE

09:29AM   4    DEFENSE'S ARGUMENT THAT, FOR EXAMPLE, IN THE SEVENTH CIRCUIT,

09:29AM   5    THAT THAT CIRCUIT GENERALLY DECLINES TO APPLY THIS RULE,

09:29AM   6    801(D)(2), TO STATEMENTS MADE BY GOVERNMENT EMPLOYEES IN

09:29AM   7    CRIMINAL CASES.

09:30AM   8         THAT'S BASED ON THE COMMON LAW PRINCIPLE THAT NO

09:30AM   9    INDIVIDUAL SHOULD BE ABLE TO BIND A SOVEREIGN, AND THAT'S

09:30AM  10    UNITED STATES VERSUS ZIZZO, Z-I-Z-Z-O, 120 F.3D 1338.

09:30AM  11         SIMILARLY, UNITED STATES VERSUS PREVATTE, P-R-E-V-A-T-T-E,

09:30AM  12    THAT'S 16 F.3D 767, HOLDS SIMILARLY.

09:30AM  13         ANOTHER CASE, UNITED STATES VERSUS ARROYO, 406 F.3D 881,

09:30AM  14    ALSO SEVENTH CIRCUIT, THAT CASE SAYS THAT WE HAVE HELD THAT

09:30AM  15    GOVERNMENT AGENTS ARE NOT PARTY OPPONENTS FOR PURPOSES OF

09:30AM  16    801(D)(2).

09:30AM  17         AND IN THE FIFTH CIRCUIT, UNITED STATES VERSUS GARZA,

09:30AM  18    THAT'S 448 F.3D 294, THAT COURT HELD THAT 801(D)(2)(D) DID NOT

09:30AM  19    APPLY TO STATEMENTS MADE BY A GOVERNMENT INVESTIGATOR,

09:30AM  20    REASONING THAT, PARTLY THAT BECAUSE THE INVESTIGATOR'S

09:31AM  21    RECOMMENDATION, WHICH WAS NOT TO PURSUE PROSECUTION, WAS NOT

09:31AM  22    ADOPTED ULTIMATELY BY DOJ, THAT IT DIDN'T MAKE SENSE TO HOLD

09:31AM  23    THOSE CONTENTS AS A STATEMENT BY THE GOVERNMENT.

09:31AM  24         SO HERE, AGAIN, WE'RE TALKING ABOUT STATEMENTS BY AN

09:31AM  25    EMPLOYEE OF OUR OFFICE THAT HAVEN'T BEEN ADOPTED BY THE

6695

09:31AM  1    GOVERNMENT.  THIS IS NOT AN EMPLOYEE WITH A ROLE WHO SPEAKS FOR

09:31AM  2    THE OFFICE OR WHO IS ABLE TO BIND THE OFFICE OF THE GOVERNMENT

09:31AM  3    GENERALLY.

09:31AM  4         SO I DON'T THINK WE'RE REALLY ON ALL FOURS WITH THE CASE

09:31AM  5    LAW CITED BY THE DEFENSE.

09:31AM  6              THE COURT:  ALL RIGHT.  THANK YOU.

09:31AM  7         LET ME NOTE AT THE OUTSET THAT THIS IS, I BELIEVE -- IS IT

09:31AM  8    1479, YOUR MOTION?

09:31AM  9              MR. BRECHER:  THAT'S CORRECT, YOUR HONOR.

09:31AM  10             THE COURT:  RIGHT.  THIS WAS FILED ABOUT 8:30 LAST

09:31AM  11   NIGHT.

09:31AM  12             MR. BRECHER:  THAT'S CORRECT.

09:31AM  13             THE COURT:  RIGHT.  AND I THINK YOU RECEIVED THE

09:31AM  14   DOCUMENT FROM THE GOVERNMENT, THAT IS, 20832, FROM THE

09:31AM  15   GOVERNMENT ON JUNE 2ND?

09:31AM  16             MR. BRECHER:  THAT IS CORRECT, YOUR HONOR.

09:31AM  17             THE COURT:  SO I SHOULD TELL YOU THAT THE LATE

09:31AM  18   FILING PUTS THE COURT AT A DISADVANTAGE, OF COURSE, AND I

09:31AM  19   APPRECIATE BOTH OF YOUR ATTENTION TO THE CASES HERE.

09:32AM  20        BUT LET ME HEAR YOUR RESPONSE TO MR. BOSTIC'S

09:32AM  21   OBSERVATIONS.

09:32AM  22             MR. BRECHER:  SURE.  AND FIRST OF ALL, YOUR HONOR, I

09:32AM  23   THINK I MAY BE ABLE TO SHORT CIRCUIT SOME OF THESE ISSUES.

09:32AM  24        FIRST, JUST SPEAKING TO THE CASE CITATIONS THAT MR. BOSTIC

09:32AM  25   ARTICULATES AND THE DISTINCTIONS HE'S OFFERING, THESE ARE

09:32AM 1     DISTINCTIONS THAT DON'T MAKE A DIFFERENCE.  THE VAN GRIFFIN

09:32AM 2     CASE FROM THE NINTH CIRCUIT REPRESENTS A MUCH BROADER AND MUCH

09:32AM 3     MORE EXTENSIVE READING OF RULE 801(D)(2), AND I THINK THAT'S

09:32AM 4     WHERE THE GOVERNMENT'S ARGUMENT STARTS TO GO OFF THE TRACKS

09:32AM 5     HERE, BECAUSE IT'S ENTIRELY DIVORCED FROM THE TEXT OF RULE 801

09:32AM 6     AND FROM THE ADVISORY COMMITTEE NOTES.

09:32AM 7          MR. BOSTIC TALKS ABOUT PUBLIC STATEMENTS, STATEMENTS MADE

09:32AM 8     IN A REPRESENTATIVE CAPACITY.

09:32AM 9          FIRST OF ALL, THERE'S A SEPARATE SUBSECTION OF 801(D) THAT

09:33AM 10    REFERS TO STATEMENTS MADE IN A REPRESENTATIVE CAPACITY.

09:33AM 11         WE TALK ABOUT THE SUBSECTION DEALING WITH STATEMENTS MADE

09:33AM 12    BY AN EMPLOYEE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT.

09:33AM 13    THEY'RE TWO SEPARATE GROUNDS OF ADMISSIBILITY.

09:33AM 14         WHAT MR. BOSTIC IS ARTICULATING IS A THEORY THAT SEEMS TO

09:33AM 15    HAVE BEEN ENDORSED BY A MINORITY OF CIRCUITS, BUT NOT THIS

09:33AM 16    ONE -- THIS ONE GOES THE OTHER WAY -- THAT THERE'S SOME SPECIAL

09:33AM 17    CARVE OUT IN CRIMINAL CASES WHERE THE RULE AGAINST -- WHERE THE

09:33AM 18    RULE OF PARTY OPPONENT ADMISSIONS APPLIES ONLY AGAINST THE

09:33AM 19    DEFENDANTS AND THE GOVERNMENT IS FOR SOME REASON EXEMPT FROM

09:33AM 20    THEM.

09:33AM 21         WE KNOW FROM THE NINTH CIRCUIT, WE KNOW IN MOST CIRCUITS

09:33AM 22    THAT THE DEPARTMENT OF JUSTICE IS AUTHORIZED TO BIND THE

09:33AM 23    GOVERNMENT.

09:33AM 24         BUT, AGAIN, THAT'S NOT EVEN THE THEORY UNDER WHICH WE'RE

09:33AM 25    SEEKING ADMISSION.

6697

09:33AM  1        SECOND, YOUR HONOR, I DON'T KNOW WHAT IS THE DIFFERENCE

09:33AM  2   BETWEEN AN INTERNAL COMMUNICATION AND A PUBLIC FACING

09:33AM  3   COMMUNICATION.  THERE ARE A WHOLE BUNCH OF INTERNAL

09:33AM  4   COMMUNICATIONS MADE BY MR. BALWANI WITHIN THERANOS, TEXTS TO

09:34AM  5   MS. HOLMES THAT WERE ADMITTED AS STATEMENTS OF A PARTY

09:34AM  6   OPPONENT.

09:34AM  7        WHERE DOES THAT COME FROM?  IT CERTAINLY DOES NOT COME

09:34AM  8   FROM THE TEXT OF RULE 801.  IT CERTAINLY DOESN'T COME FROM THE

09:34AM  9   COMMENTARY OF RULE 801, WHICH IS WHY THE DISTINCTIONS OFFERED

09:34AM  10  BY THE GOVERNMENT JUST DON'T WORK.

09:34AM  11       BUT I WANT TO JUMP PAST THAT A LITTLE BIT AND SAY THAT I

09:34AM  12  DON'T NEED THIS DOCUMENT TO COME IN FOR ITS TRUTH.  THIS IS

09:34AM  13  ALSO RELEVANT AS NOTICE TO THE GOVERNMENT, NOTICE TO THESE

09:34AM  14  PROSECUTORS OF THEIR OPTIONS.

09:34AM  15            THE COURT:  SO IF -- SO IF --

09:34AM  16            MR. BRECHER:  PLEASE.

09:34AM  17            THE COURT:  I THINK YOU NOTE THAT IN YOUR PLEADINGS

09:34AM  18  AND YOU'VE MENTIONED THAT BEFORE IN OUR ANTICIPATORY DISCUSSION

09:34AM  19  ON THIS ISSUE, THAT IT WOULD SERVE YOUR PURPOSE IF THIS WERE

09:34AM  20  BROUGHT IN JUST FOR NOTICE TO THE GOVERNMENT, AND THAT -- IT

09:34AM  21  SEEMS TO ME THAT THAT WOULD ALLOW YOUR WITNESSES, YOUR

09:34AM  22  ARGUMENT, I BELIEVE, ALLOW YOUR WITNESS TO SAY THE GOVERNMENT

09:34AM  23  KNEW THEY COULD HAVE DONE SOMETHING OR THEY KNEW AT LEAST THAT

09:35AM  24  THIS DOCUMENT SUGGESTS THAT SOMEONE IN THE GOVERNMENT SAID YOU

09:35AM  25  COULD DO THIS.

6698

09:35AM 1          MR. BRECHER:  THAT'S CORRECT.

09:35AM 2          AND IN TERMS OF THIS BEING AN INTERNAL DOCUMENT -- I'M

09:35AM 3     SORRY, IT'S DIFFICULT WITH THE MASK -- THAT ACTUALLY FAVORS

09:35AM 4     ADMITTING THE DOCUMENT UNDER THE THEORY THAT YOUR HONOR

09:35AM 5     ARTICULATED, AND THAT'S BECAUSE -- NOT TO SPOIL OUR DISCUSSION

09:35AM 6     ABOUT THE ADVERSE INFERENCE INSTRUCTION -- BUT AS THE COURT

09:35AM 7     KNOWS FROM THAT CASE LAW, ONE OF THE FACTORS TO BE CONSIDERED

09:35AM 8     IS WHETHER THE INFORMATION ABOUT PRESERVATION ISSUES WERE

09:35AM 9     BROUGHT TO THE ATTENTION OF THE PROSECUTING TEAM, MEANING THE

09:35AM 10    PROSECUTING ATTORNEYS.

09:35AM 11         THIS IS AN EMAIL SENT TO THE THREE MEMBERS OF THE

09:35AM 12    PROSECUTING TEAM IN THIS CASE.  IT IS DEAD ON IN TERMS OF WHAT

09:35AM 13    THE CASE LAW REQUIRES THE COURT TO CONSIDER.

09:35AM 14         SO IF THIS DOESN'T COME IN FOR THE TRUTH, I'M PERFECTLY

09:35AM 15    HAPPY WITH THAT.

09:35AM 16         MR. BOSTIC ALSO MENTIONED AT THE OUTSET, BUT I DON'T THINK

09:36AM 17    HAD A CHANCE TO ARGUE, SO I CERTAINLY WANT TO GIVE HIM THAT,

09:36AM 18    SOME CONCERNS ABOUT RELEVANCE AND 403 ISSUES.

09:36AM 19         BUT THAT ISSUE, I THINK, WAS ADDRESSED BY THE COURT'S

09:36AM 20    PRIOR RULING.  THIS IS EXACTLY THE PLAN THAT WE HAVE

09:36AM 21    ARTICULATED FROM THE BEGINNING.

09:36AM 22         WE'LL SHOW THIS TO MR. SONNIER, SHOW IT TO THE JURY, READ

09:36AM 23    THE EMAIL, AND HAVE HIM SAY, YEAH, GET A VENDOR, THAT WOULD

09:36AM 24    HAVE WORKED, SEIZE THE SERVERS, THAT WOULD HAVE WORKED.

09:36AM 25         THAT'S THE PURPOSE OF OFFERING THIS DOCUMENT.

6699

09:36AM  1          THE COURT:  TELL ME WHAT THE NOTICE IS.  WHAT IS THE

09:36AM  2   NOTICE TO THE GOVERNMENT OR TO THESE LAWYERS OR TO THE

09:36AM  3   PROSECUTION?  WHAT IS THAT?

09:36AM  4          MR. BRECHER:  THE NOTICE IS WHAT THE EMAIL ITSELF

09:36AM  5   FROM THE ALS SUPERVISOR ARTICULATES.  THERE'S A CATEGORY AND A

09:36AM  6   BULLETED LIST AT THE BOTTOM OF THAT EMAIL WHICH IS CALLED

09:36AM  7   POSSIBLE ROUTES FORWARD, AND IT OFFERS A SERIES OF OPTIONS, AND

09:36AM  8   TWO OF THOSE OPTIONS ARE ONES THAT I WANT TO TALK ABOUT WITH

09:36AM  9   OUR EXPERT.

09:36AM 10          THE COURT:  OKAY.

09:36AM 11      MR. BOSTIC, AS TO -- IF THIS IS ADMITTED NOT FOR THE TRUTH

09:36AM 12   OF THE MATTER ASSERTED, BUT MERELY AS TO THE NOTICE, AS

09:37AM 13   MR. BRECHER SUGGESTS, WHAT ARE YOUR THOUGHTS ON THAT?

09:37AM 14          MR. BOSTIC:  SO, YOUR HONOR, I UNDERSTAND HOW THIS

09:37AM 15   DOCUMENT THEN FITS INTO THE DEFENDANT'S THEORY.

09:37AM 16      I'M STILL UNCLEAR ON HOW IT INFORMS THE OPINION OF A

09:37AM 17   TESTIFYING EXPERT IN SQL DATABASES.  WHY IT DOES IT MATTER TO

09:37AM 18   MR. SONNIER'S OPINION ABOUT WHAT WAS TECHNICALLY POSSIBLE, THAT

09:37AM 19   THE GOVERNMENT KNEW OR DIDN'T KNOW SOMETHING ON A CERTAIN DATE.

09:37AM 20      SO THAT'S MY 401 AND 403 CONCERN THERE.

09:37AM 21          THE COURT:  I SEE.

09:37AM 22          MR. BRECHER:  YOUR HONOR, IF I COULD JUST RESPOND TO

09:37AM 23   THAT BRIEFLY.

09:37AM 24      THAT IS, I THINK, EXACTLY WHAT THE COURT DID RESOLVE IN

09:37AM 25   YOUR PRIOR LIS RULING.  YOU OUTLINED EXACTLY WHAT WE WANTED TO

09:37AM 1    DO IN THAT RULING AND SAID, CABINED TO THAT EFFORT, VIS-A-VIS

09:37AM 2    THIS NOTICE, THAT DOESN'T RAISE CONCERNS ABOUT A MINI TRIAL

09:37AM 3    UNDER 403, THAT'S RELEVANT UNDER 401.

09:37AM 4        AND NOW WE'RE JUST RELITIGATING WHAT MS. VOLKAR AND I

09:37AM 5    SPENT QUITE A BIT OF TIME ARGUING THE OTHER WEEK.

09:38AM 6        MR. BOSTIC:  I THINK THE DISTINCTION, YOUR HONOR, IS

09:38AM 7    WHAT IS GENERALLY ADMISSIBLE DURING THE CASE VERSUS WHAT CAN

09:38AM 8    COME IN WITH A CERTAIN SPONSORING WITNESS.

09:38AM 9        MR. BRECHER:  YOUR HONOR, AS THE COURT KNOWS FROM

09:38AM 10   THE ARGUMENT THAT YOU HEARD ON MONDAY FROM MS. WALSH, THIS

09:38AM 11   NOTION OF A SPONSORING WITNESS, IN ORDER TO HAVE PERSONAL

09:38AM 12   KNOWLEDGE, ALL THAT MATTERS IS THAT MR. SONNIER BE ABLE TO READ

09:38AM 13   THE EXHIBIT IN REAL TIME AND TELL THE JURY WHAT HE'S

09:38AM 14   PERCEIVING.

09:38AM 15       AGAIN, I DON'T KNOW IF THE COURT HAS FORMALLY RESOLVED THE

09:38AM 16   DISPUTE OVER WHETHER MR. OKANO IS GOING TO TESTIFY, BUT IT

09:38AM 17   SOUNDS LIKE HE'S NOT.  WE DON'T NEED A SPONSORING WITNESS.

09:38AM 18       THIS DOCUMENT IS ADMISSIBLE, AND IT WILL INFORM

09:38AM 19   MR. SONNIER AND IT WILL HELP GIVE LIFE TO MR. SONNIER'S OPINION

09:38AM 20   THAT NOT ONLY COULD THIS HAVE BEEN DONE, BUT THE GOVERNMENT,

09:38AM 21   THESE PROSECUTORS WERE ADVISED THAT IT COULD HAVE BEEN DONE.

09:38AM 22       THAT'S EXACTLY WHAT THE COURT ALREADY RULED.

09:38AM 23       THE COURT:  LET ME MOVE THE CONVERSATION FOR JUST A

09:38AM 24   MOMENT AS TO MR. SONNIER'S TESTIMONY, AND THERE'S STILL A

09:39AM 25   PENDING DISCUSSION ABOUT WHETHER OR NOT HE'S GOING TO BE AN

6701

09:39AM 1    EXPERT WITNESS OR A DUAL FACT AND EXPERT WITNESS.

09:39AM 2         CAN YOU TELL ME A LITTLE BIT ABOUT THAT?

09:39AM 3              MR. BRECHER:  SURE.  I'M HAPPY TO SPEAK TO THAT,

09:39AM 4    YOUR HONOR.

09:39AM 5         I THINK THIS CONVERSATION THAT WE WERE JUST HAVING, THIS

09:39AM 6    ESSENTIALLY IS THAT DISPUTE.

09:39AM 7         IF THIS EMAIL COMES IN AND MR. SONNIER IS READING IT, I

09:39AM 8    GUESS IT'S THE EMAIL THAT IS THE FACT EVIDENCE, NOT NECESSARILY

09:39AM 9    MR. SONNIER'S TESTIMONY.  BUT THAT MAY MOVE ACROSS THE LINE

09:39AM 10   INTO FACT WITNESS TESTIMONY.

09:39AM 11        I, FRANKLY, DON'T HAVE A STRONG VIEW ABOUT THAT.

09:39AM 12        AND THEN THE BACKGROUND ASSUMPTIONS THAT FORM THE BASIS

09:39AM 13   FOR HIS OPINIONS, I DON'T PARTICULARLY HAVE A STRONG VIEW ABOUT

09:39AM 14   WHETHER THAT WOULD BE FACT WITNESS TESTIMONY, BUT I CAN IMAGINE

09:39AM 15   CIRCUMSTANCES IN WHICH ASKING HIM, WELL, WHAT INFORMED THOSE

09:39AM 16   ASSUMPTIONS?  WHAT DID YOU DO?  THAT -- HE WOULD BE DESCRIBING

09:39AM 17   HIS CONDUCT AND HIS PERSONAL OBSERVATIONS IN A PERCIPIENT WAY.

09:39AM 18        BUT I DON'T HAVE A STRONG VIEW ON IT.  THAT'S WHY I THINK

09:40AM 19   IT WOULD PROBABLY BE BEST TO SEE HOW IT COMES IN, AND IF

09:40AM 20   MR. BOSTIC HAS OBJECTIONS, I'LL CERTAINLY FOLLOW THE COURT'S

09:40AM 21   LEAD ON HOW TO PHRASE THOSE QUESTIONS.

09:40AM 22              THE COURT:  WELL, I HAD SOME CONCERN, AFTER I READ

09:40AM 23   THE DECLARATION, THE DECLARATION THAT HE SIGNED, AND HE OPINES

09:40AM 24   AS TO MANY THINGS THAT ARE FACTUAL.  I DON'T KNOW THE SOURCE OF

09:40AM 25   THE INFORMATION.

6702

09:40AM  1    BUT THAT'S SOMETHING THAT I HAD GREAT CONCERN ABOUT.  IF

09:40AM  2  HE'S GOING TO COME UP AND TESTIFY AS HE DID IN HIS DECLARATION,

09:40AM  3  I THINK THERE ARE SOME ISSUES THERE.

09:40AM  4    BUT WHAT YOU'RE TELLING ME IS THAT IT'S NOT YOUR INTENT TO

09:40AM  5  DO THAT.

09:40AM  6    MR. BRECHER:  NO, YOUR HONOR.

09:40AM  7    I THINK THE WAY I WOULD FRAME THE QUESTIONS IS BEFORE WE

09:40AM  8  GET INTO THE SUBSTANCE OF HIS OPINIONS, HOW YOU COULD

09:40AM  9  RECONSTRUCT THIS DATABASE, THAT IT'S VERY DOABLE, THAT IT'S

09:40AM 10  SOMETHING PEOPLE DO ALL OF THE TIME, THE JURY HAS TO

09:40AM 11  UNDERSTAND, WHAT ARE WE TALKING ABOUT AND WHY ARE TALKING ABOUT

09:40AM 12  IT?  IF THERE'S SOME COPY, WHY CAN'T WE USE THAT?

09:40AM 13    AND I THINK THE WAY I WOULD PHRASE THE QUESTIONS IS, TALK

09:40AM 14  ABOUT THE ASSUMPTIONS, THE FACTUAL ASSUMPTIONS THAT WENT INTO

09:41AM 15  FORMING YOUR OPINIONS AND WHAT MATERIALS DID YOU VIEW IN THAT

09:41AM 16  SO THAT THE JURY CAN UNDERSTAND THE CONTEXT OF HIS OPINIONS.

09:41AM 17    BUT, AGAIN, THOSE ARE THE SAME ASSUMPTIONS THAT I THINK,

09:41AM 18  ALTHOUGH TO BE HONEST, YOUR HONOR, THEY SEEM TO GO BACK AND

09:41AM 19  FORTH, THE GOVERNMENT SOMETIMES INSISTS IT DESPERATELY NEEDS

09:41AM 20  THAT INFORMATION IN THE CASE; BUT THEN IT SAYS WELL, WE CAN'T

09:41AM 21  PUT IT IN THE CASE; BUT THEN SAYS, WELL, IT WOULD BE UNFAIR IF

09:41AM 22  WE DIDN'T PUT IT IN THE CASE.

09:41AM 23    I HONESTLY DON'T KNOW WHAT THEY WANT, WHICH IS WHY I WOULD

09:41AM 24  BE ANXIOUS TO BEGIN THE EXAMINATION AND SEE WHAT OBJECTIONS

09:41AM 25  THEY HAVE.

6703

09:41AM 1      I THINK OUR PRESENTATION IS GOING TO BE FAIR IN TERMS OF

09:41AM 2   THE ASSUMPTION THAT THE GOVERNMENT REQUESTED INFORMATION, IT

09:41AM 3   WAS GIVEN A COPY, THAT COPY WAS UNUSABLE, THAT'S NO FAULT OF

09:41AM 4   THE GOVERNMENT, AND THEN MOVE ON TO, WELL, WHAT ELSE COULD HAVE

09:41AM 5   BEEN DONE?

09:41AM 6      THAT IS REALLY THE SUBSTANCE OF THE EXAMINATION.

09:41AM 7          THE COURT:  MR. BOSTIC.

09:41AM 8          MR. BOSTIC:  SO, YOUR HONOR, IF THE QUESTION IS,

09:41AM 9   DOES THAT TURN MR. SONNIER INTO A PERCIPIENT WITNESS?  I DON'T

09:41AM 10   THINK IT DOES.  IF THAT WERE THE CASE, IT WOULD TURN EVERY

09:42AM 11   EXPERT INTO A PERCIPIENT FACT WITNESS JUST BECAUSE THEY HAVE TO

09:42AM 12   EXPLAIN THE UNDERLYING CIRCUMSTANCES.

09:42AM 13      SIMILARLY, THE FACT THAT HE HAPPENS TO BE ON THE STAND

09:42AM 14   WHEN A DOCUMENT COMES INTO EVIDENCE I DON'T THINK MAKES HIM A

09:42AM 15   FACT WITNESS, EITHER.

09:42AM 16      BUT OTHERWISE I WOULD SUBMIT IT.

09:42AM 17      I ALSO HAVE SOME RESPONSES TO WHAT MR. BRECHER SAID ON THE

09:42AM 18   HEARSAY POINT, BUT IF THE COURT IS NOT LEANING TOWARDS

09:42AM 19   ADMITTING THIS EXHIBIT FOR THE TRUTH, THEN I'LL STAND DOWN.

09:42AM 20          THE COURT:  WELL, THANK YOU.  BOTH OF YOU ARE

09:42AM 21   PERCEPTIVE IN THAT REGARD, BECAUSE ME -- UNLESS THERE'S

09:42AM 22   ANYTHING FURTHER FROM YOU, MR. BRECHER, ON THIS, I'D BE

09:42AM 23   INCLINED TO DENY THE REQUEST TO ADMIT THIS FOR THE TRUTH.

09:42AM 24      BUT I WOULD ALLOW IT TO COME IN FOR NOTICE, FOR THE NOTICE

09:42AM 25   AS YOU INDICATED, NOT FOR THE TRUTH OF THE MATTER ASSERTED IN

09:42AM   1    ANY OF THESE PARAGRAPHS HERE, ANY OF THESE WRITINGS, BUT ONLY

09:42AM   2    SOLELY FOR THE ISSUE OF NOTICE AS TO A, I GUESS IT IS A -- THE

09:43AM   3    THIRD BOLDED PARAGRAPH DOWN, POSSIBLE ROUTES FORWARD.

09:43AM   4            MR. BRECHER:  THAT'S FINE, YOUR HONOR.

09:43AM   5        THE ONLY THING I WANTED TO ADD IS JUST SOME CLARIFICATION

09:43AM   6    THAT MY COLLEAGUE REMINDED ME.

09:43AM   7        BUT ON THAT QUESTION ABOUT FACTUAL ASSUMPTIONS AND FACTUAL

09:43AM   8    BACKGROUND, IT SOUNDS LIKE WE'RE GETTING CLOSER TO RESOLUTION

09:43AM   9    HERE.

09:43AM  10        AGAIN, WE WOULDN'T OFFER THAT AS FACT TESTIMONY.

09:43AM  11        THE ONLY THING THAT I THINK MAY CROSS THE LINE IS THE

09:43AM  12    QUESTION OF, WELL, WHAT DID YOU DO TO DETERMINE THAT THIS COPY

09:43AM  13    COULDN'T BE OPENED?

09:43AM  14        BUT I -- FRANKLY, I DON'T HAVE STRONG VIEWS ABOUT MOST OF

09:43AM  15    THIS.

09:43AM  16            THE COURT:  WELL, DID HE DO ANYTHING WITH THIS?  IS

09:43AM  17    HE GOING TO TESTIFY ABOUT --

09:43AM  18            MR. BRECHER:  HE TRIED TO OPEN IT.

09:43AM  19            THE COURT:  AND IS HE GOING TO TESTIFY ABOUT

09:43AM  20    ANYTHING HE DID IN REGARDS TO WHAT YOU RECEIVED, WHAT YOU HAD?

09:43AM  21            MR. BRECHER:  I DIDN'T FOLLOW THE LAST PART OF THE

09:43AM  22    QUESTION, YOUR HONOR.  I'M SORRY.

09:43AM  23            THE COURT:  SURE.  IS HE GOING TO TESTIFY ABOUT ANY

09:43AM  24    EXPERIMENT OR CONDUCT THAT HE TOOK IN REGARDS TO THE SAME

09:43AM  25    DOCUMENT THAT THE GOVERNMENT HAD?

09:43AM 1          MR. BRECHER:  THE SAME ENCRYPTED BACKUP COPY?  YES,

09:43AM 2     I THINK HE WOULD SAY, I TRIED TO OPEN IT AND I WAS

09:44AM 3     UNSUCCESSFUL.

09:44AM 4          THE COURT:  AND WHAT DO WE DO ABOUT ANY JUROR

09:44AM 5     CONFUSION ABOUT THAT?

09:44AM 6        MY UNDERSTANDING IS THAT THE GOVERNMENT PROVIDED THE

09:44AM 7     DEFENSE A COPY OF WHAT THEY HAD RECEIVED PURSUANT TO THE

09:44AM 8     SUBPOENA AND YOU HAVE THE SAME THING THAT THEY HAVE.

09:44AM 9          MR. BRECHER:  THAT'S CORRECT, YOUR HONOR.

09:44AM 10         THE COURT:  SO HOW DO WE DEAL WITH THAT THEN?  IS

09:44AM 11    THERE GOING TO BE SOME CONFUSION ABOUT THE JURY THINKING,

09:44AM 12    WHAT -- ARE THEY PASSING THIS THING IN THE NIGHT, OR WHAT IS

09:44AM 13    THIS?

09:44AM 14         MR. BRECHER:  I HAD THAT SAME THOUGHT, YOUR HONOR,

09:44AM 15    AND MY HOPE WAS JUST TO LEAP PAST IT BY ASKING MR. SONNIER, DO

09:44AM 16    YOU UNDERSTAND WHETHER THE GOVERNMENT GOT A COPY OF THIS?

09:44AM 17        YES.

09:44AM 18        DO YOU UNDERSTAND WHETHER THE DEFENSE GOT A COPY OF THIS?

09:44AM 19        YES.

09:44AM 20        AND TO MAKE CLEAR, YOU DON'T FAULT THE GOVERNMENT?  THERE

09:44AM 21    WAS NO MANIPULATION BY THE GOVERNMENT OF THIS BACKUP COPY, JUST

09:44AM 22    SO WE CAN GET THAT BACKGROUND OUT OF THE WAY.

09:44AM 23        THERE IS A COPY, BOTH SIDES GOT IT, NO ONE CAN OPEN IT.

09:44AM 24         THE COURT:  MR. BOSTIC.

09:44AM 25         MR. BOSTIC:  I HAVE A BETTER IDEA, YOUR HONOR, FOR

09:44AM 1    CLEARING UP THAT CONFUSION.

09:45AM 2         I CONTINUE TO BE CURIOUS OR A LITTLE APPREHENSIVE ABOUT

09:45AM 3    THIS WITNESS TESTIFYING ABOUT THINGS THAT HE DOESN'T HAVE

09:45AM 4    FIRST-HAND KNOWLEDGE OF.

09:45AM 5         BUT I UNDERSTAND THAT THESE DETAILS NEED TO BE CLEAR FOR

09:45AM 6    THE JURY, SO NO OBJECTION TO THAT APPROACH.

09:45AM 7              THE COURT:  ALL RIGHT.  WELL, THANK YOU.  THAT WAS A

09:45AM 8    CONCERN THAT I HAD IS THAT THERE'S -- AND I APPRECIATE YOUR

09:45AM 9    ATTENTION TO THIS.  WE'RE WALKING A FINE LINE, AS WE OFTEN DO

09:45AM 10   WITH EVIDENTIARY QUESTIONS.

09:45AM 11        BUT I JUST WANT TO AVOID JUROR CONFUSION.

09:45AM 12        AND THIS IS AN ISSUE WHERE BOTH OF YOU HAVE THE SAME

09:45AM 13   THING.  I THINK YOU RECEIVED A COPY, YOUR TEAM DID, FROM THE

09:45AM 14   GOVERNMENT.

09:45AM 15        IS THAT IMPORTANT TO NOTE, OR IS IT IMPORTANT TO NOTE THAT

09:45AM 16   YOU BOTH HAVE THE SAME THING?  I DON'T KNOW.

09:45AM 17             MR. BRECHER:  I'M HAPPY TO MAKE CLEAR WITH

09:45AM 18   MR. SONNIER HIS UNDERSTANDING THAT IT'S THE SAME THING.

09:45AM 19        I MEAN, TO RESOLVE MR. BOSTIC'S CONCERN, OR AT LEAST

09:45AM 20   ADDRESS IT, I WON'T PRESUME TO RESOLVE IT, BUT I THINK UNDER

09:46AM 21   RULE 703, ESPECIALLY GIVEN THAT THESE ARE UNDISPUTED FACTS, OR

09:46AM 22   AT LEAST THESE ASPECTS OF THEM ARE UNDISPUTED, I THINK THAT

09:46AM 23   THAT WILL PROVIDE THE CONTEXT NECESSARY TO HELP THE JURORS.

09:46AM 24             THE COURT:  OKAY.

09:46AM 25             MR. BRECHER:  MY REAL GOAL WAS TO GET PAST THIS

09:46AM 1    STAGE AND THEN TALK ABOUT SO WHAT HAPPENED -- WHAT DO WE DO

09:46AM 2    NEXT?

09:46AM 3              THE COURT:  OKAY.  ALL RIGHT.

09:46AM 4         ANYTHING FURTHER?

09:46AM 5              MR. BOSTIC:  NO, YOUR HONOR.

09:46AM 6              MR. BRECHER:  NO, YOUR HONOR.

09:46AM 7              THE COURT:  ALL RIGHT.  THANK YOU THEN.

09:46AM 8         JUST TO CLARIFY, THIS WILL BE ADMITTED, NOT FOR THE TRUTH

09:46AM 9    OF THE MATTER ASSERTED, BUT ONLY AS TO THE ISSUE OF NOTICE.

09:46AM 10   AND WHEN I SAY "THIS" I MEAN 20832.

09:46AM 11             MR. BRECHER:  THANK YOU, YOUR HONOR.

09:46AM 12             THE COURT:  AND YOU CAN IDENTIFY THE NOTICE ISSUE

09:46AM 13   SUCH THAT I CAN INFORM THE JURY ON THAT.

09:46AM 14        AND THE OTHER TOPICS WE HAVE TALKED ABOUT IN REGARDS TO

09:46AM 15   1475 I'LL DEFER UNTIL WE HAVE A BREAK, AND THEN WE'LL COME BACK

09:47AM 16   AND DEAL WITH THOSE.

09:47AM 17        GO AHEAD, MR. BOSTIC.

09:47AM 18             MR. BOSTIC:  APOLOGIES, YOUR HONOR.

09:47AM 19        ONE ISSUE THAT WE SHOULD FRONT FOR THE COURT.  THE EXHIBIT

09:47AM 20   THAT MR. BRECHER MENTIONED HE MIGHT WANT TO PUBLISH TO THE JURY

09:47AM 21   WAS ACTUALLY THE GOVERNMENT'S BRADY LETTER, WHICH THE COURT --

09:47AM 22   OR A PORTION OF THE GOVERNMENT'S BRADY LETTER.

09:47AM 23        AM I WRONG ABOUT THAT?

09:47AM 24             MR. BRECHER:  IF THAT WAS THE NUMBER I LISTED, THEN

09:47AM 25   THAT WAS A MISTAKE.  NO.

6708

09:47AM 1          IT'S A DIAGRAM OF THE LIS SYSTEM, A TWO-PAGE DIAGRAM.

09:47AM 2          I'M HAPPY TO CLARIFY THAT WITH MR. BOSTIC OFF THE RECORD.

09:47AM 3          MR. BOSTIC:  THAT'S A MISUNDERSTANDING.  IT MIGHT

09:47AM 4   HAVE BEEN MY FAULT.

09:47AM 5          THEN NOTHING FURTHER WE NEED TO --

09:47AM 6          THE COURT:  ALL RIGHT.  I DO WANT TO TALK ABOUT A

09:47AM 7   JURY ISSUE, AND WE'LL TAKE THIS UP WHEN THE JURY COMES OUT.

09:47AM 8          BUT JUST FOR YOUR INFORMATION, THE COURT HAS AND INTENDS

09:47AM 9   TO EXCUSE JUROR NUMBER 5, JUROR NUMBER 5, AND REPLACE JUROR

09:48AM 10  NUMBER 5 WITH ALTERNATE JUROR NUMBER 4.

09:48AM 11         THE COURT IS DOING THIS RECOGNIZING SOME HEALTH CONCERNS.

09:48AM 12         ANY COMMENT ON THAT, MR. BOSTIC?

09:48AM 13         MR. BOSTIC:  NO OBJECTION, YOUR HONOR.

09:48AM 14         MR. COOPERSMITH:  WE HAVE NO OBJECTION, YOUR HONOR.

09:48AM 15         THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL DO THAT

09:48AM 16  WHEN THE JURY COMES OUT.

09:48AM 17         MR. BOSTIC:  THANK YOU, YOUR HONOR.

09:48AM 18         THE COURT:  MR. BRECHER, SOMETHING ELSE?

09:48AM 19         MR. BRECHER:  NO, NOTHING FURTHER.

09:48AM 20         I WAS GOING TO CONFER WITH MR. BOSTIC OFF THE RECORD.

09:48AM 21         THE COURT:  OKAY.  ANYTHING ELSE THEN BEFORE WE TAKE

09:48AM 22  OUR BREAK?

09:48AM 23         MR. COOPERSMITH:  NO, YOUR HONOR.  WE JUST NEED

09:48AM 24  ABOUT FIVE MINUTES.

09:48AM 25         THE COURT:  YES.  OF COURSE.

09:48AM  1          MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

09:48AM  2          (RECESS FROM 9:48 A.M. UNTIL 10:04 A.M.)

10:04AM  3          (JURY IN AT 10:04 A.M.)

10:04AM  4          THE COURT:  GOOD MORNING, LADIES AND GENTLEMEN.  WE

10:04AM  5   ARE BACK ON THE RECORD IN THE BALWANI CASE.

10:04AM  6          ALL COUNSEL ARE PRESENT.  MR. BALWANI IS PRESENT.

10:04AM  7          OUR JURORS ARE PRESENT.

10:04AM  8          GOOD MORNING, LADIES AND GENTLEMEN.  IT'S NICE TO SEE YOU

10:04AM  9   ALL AGAIN.

10:04AM  10         LET ME FIRST INDICATE ON THE RECORD, WE DID, AFTER

10:05AM  11   CONSULTING WITH COUNSEL, THE COURT DID EXCUSE JUROR NUMBER 5,

10:05AM  12   JUROR NUMBER 5 WAS EXCUSED, AND THAT MEANS THAT ALTERNATE

10:05AM  13   NUMBER 4 IS MOVED INTO OUR JURY.  THANK YOU.

10:05AM  14         WELCOME.  I'M SURE A CELEBRATION AND WELCOMING PARTY WILL

10:05AM  15   BE HELD LATER, AND WE'LL SCHEDULE THAT LATER SOME TIME.

10:05AM  16         BUT IT'S GOOD TO SEE YOU ALL AGAIN.

10:05AM  17         LET ME ASK YOU, DURING THE LONG BREAK THAT WE HAD, AND I

10:05AM  18   APPRECIATE THAT, LET ME ASK YOU, DURING THAT BREAK, HAVE ANY OF

10:05AM  19   YOU, DID ANY OF YOU HAVE ANY OCCASION TO LEARN ANYTHING ABOUT

10:05AM  20   THIS CASE, TO DO ANY INVESTIGATION, TO HAVE DISCUSSIONS WITH

10:05AM  21   ANYONE ABOUT THIS CASE, TO SEE ANYTHING, HEAR ANYTHING, READ

10:05AM  22   ANYTHING TO DO WITH THIS CASE OUTSIDE OF THE COURTROOM?

10:05AM  23         IF SO, WOULD YOU PLEASE RAISE YOUR HAND, I'D BE GRATEFUL.

10:05AM  24         I SEE NO HANDS.

10:06AM  25         THANK YOU AGAIN FOR YOUR FIDELITY TO THE COURT'S

10:06AM  1    ADMONITION.  ALL OF US ARE APPRECIATIVE OF THAT FACT, AND I

10:06AM  2    RECOGNIZE IT'S DIFFICULT TO DO, AND WE'RE GRATEFUL.

10:06AM  3         IT'S NICE TO SEE YOU ALL AGAIN.

10:06AM  4         I'M ABOUT TO ASK THE DEFENSE IF THEY HAVE A WITNESS TO

10:06AM  5    CALL.

10:06AM  6              MR. BRECHER:  WE DO, YOUR HONOR.

10:06AM  7         THE DEFENSE CALLS RICHARD SONNIER.

10:06AM  8              THE COURT:  ALL RIGHT.  SIR, IF YOU COULD COME

10:06AM  9    FORWARD AND STAND OVER HERE AND FACE OUR COURTROOM DEPUTY AND

10:06AM  10   RAISE YOUR RIGHT HAND, SHE HAS A QUESTION FOR YOU.

10:06AM  11        **(DEFENDANT'S WITNESS, RICHARD SONNIER, WAS SWORN.)**

10:06AM  12             THE WITNESS:  YES.

10:07AM  13             THE COURT:  SIR, LET ME INVITE YOU TO HAVE A SEAT UP

10:07AM  14   HERE AND MAKE YOURSELF COMFORTABLE.

10:07AM  15        FEEL FREE TO ADJUST THE CHAIR AND MICROPHONE AS YOU NEED.

10:07AM  16        THERE'S SOME WATER THERE THAT YOU CAN USE TO REFRESH

10:07AM  17   YOURSELF SHOULD YOU NEED IT.

10:07AM  18        WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR NAME

10:07AM  19   AND THEN SPELL IT, PLEASE.

10:07AM  20             THE WITNESS:  YES.  MY NAME IS RICHARD SONNIER.  THE

10:07AM  21   LAST NAME IS SPELLED S-O-N-N-I-E-R.

10:07AM  22             THE COURT:  THANK YOU.  AND RICHARD IS THE CLASSIC

10:07AM  23   SPELLING?

10:07AM  24             THE WITNESS:  YES, STANDARD SPELLING FOR RICHARD.

10:07AM  25             THE COURT:  ALL RIGHT.  THANK YOU.

10:07AM  1          COUNSEL.

10:07AM  2               MR. BRECHER:  THANK YOU, YOUR HONOR.

10:07AM  3                       **DIRECT EXAMINATION**

10:07AM  4     BY MR. BRECHER:

10:07AM  5     Q.   GOOD MORNING, MR. SONNIER.  THANK YOU FOR BEING HERE WITH

10:07AM  6     US TODAY.

10:07AM  7     A.   YES.

10:07AM  8     Q.   MR. SONNIER, IF YOU ARE FULLY VACCINATED AND FEELING

10:07AM  9     COMFORTABLE, YOU CAN REMOVE YOUR MASK DURING THE TESTIMONY.

10:07AM 10     A.   OKAY.  THANK YOU.

10:08AM 11     Q.   AND I THINK I'LL DO THE SAME.

10:08AM 12          YOUR HONOR, MAY I APPROACH THE COURT AND THE WITNESS?

10:08AM 13               THE COURT:  YES.

10:08AM 14               MR. BRECHER:  (HANDING.)

10:08AM 15     Q.   GOOD MORNING AGAIN, MR. SONNIER.  YOU AND I HAVE MET

10:08AM 16     BEFORE, BUT FOR THE RECORD, MY NAME IS AARON BRECHER AND I'M AN

10:08AM 17     ATTORNEY FOR SUNNY BALWANI.  I'D LIKE TO ASK YOU SOME QUESTIONS

10:08AM 18     TODAY.

10:08AM 19          LET'S START WITH, MR. SONNIER, WHAT DO YOU DO FOR A

10:08AM 20     LIVING, SIR?

10:08AM 21     A.   I'M AN I.T. CONSULTANT.

10:08AM 22     Q.   AND WHO IS YOUR EMPLOYER?

10:08AM 23     A.   IT'S MY OWN COMPANY, IT'S NAMED NIMBLE SERVICES

10:08AM 24     INCORPORATED.

10:08AM 25     Q.   OKAY.  AND, MR. SONNIER, WERE YOU RETAINED BY THE DEFENSE

10:08AM   1    IN THIS CASE?

10:08AM   2    A.   YES, I WAS.

10:08AM   3    Q.   OKAY.  WE'LL TALK ABOUT THAT A BIT MORE IN A MINUTE, BUT

10:08AM   4    VERY BRIEFLY, WHAT WERE YOU HIRED TO DO, SIR?

10:08AM   5    A.   I WAS HIRED TO LOOK INTO THE FEASIBILITY OF RECOVERING THE

10:09AM   6    LIS DATABASE.

10:09AM   7    Q.   OKAY.  AND YOU UNDERSTAND THAT TO BE THE THERANOS

10:09AM   8    LABORATORY INFORMATION DATABASE?

10:09AM   9    A.   YES, THAT'S MY UNDERSTANDING.

10:09AM   10   Q.   OKAY.  AND LET'S BACK UP A LITTLE BIT.

10:09AM   11        COULD YOU BRIEFLY DESCRIBE FOR THE JURY YOUR EDUCATIONAL

10:09AM   12   BACKGROUND, SIR?

10:09AM   13   A.   I HAVE BACHELORS OF SCIENCE DEGREES IN COMPUTER SCIENCE,

10:09AM   14   AND A SECOND INDEPENDENT ONE IN PHYSICS.

10:09AM   15        I ALSO HAVE A -- WHAT IS CALLED A MINI MBA, IT'S A MASTERS

10:09AM   16   IN BUSINESS ADMINISTRATION, OR A CERTIFICATE IN THAT.

10:09AM   17        AND I'VE ALSO ATTENDED GRAD SCHOOL IN COMPUTER SCIENCE.

10:09AM   18   Q.   WHAT SORT OF COURSE WORK AT THE GRADUAL LEVEL, SIR?

10:09AM   19   A.   RELATIONSHIP DATABASE, AND I CAN'T REMEMBER THE OTHER ONES

10:09AM   20   RIGHT NOW.

10:09AM   21   Q.   FAIR ENOUGH.

10:09AM   22        MR. SONNIER, CAN YOU BRIEFLY DESCRIBE YOUR PROFESSIONAL

10:09AM   23   BACKGROUND FOR THE JURY?

10:09AM   24   A.   YES.  I STARTED MY CAREER AT LITTON INDUSTRIES WHERE I WAS

10:10AM   25   THE SOLE I.T. SUPPORT FOR A NAVAL PROJECT TO BUILD A LARGE

SONNIER DIRECT BY MR. BRECHER

10:10AM 1    DATABASE OF SHIP INFORMATION, NAVY SHIP INFORMATION.

10:10AM 2        AND I ENDED MY CAREER AT LITTON AS A DB2, DATABASE

10:10AM 3    ADMINISTRATOR, JUST EXACTLY THOSE LETTERS AND NUMBERS, DATABASE

10:10AM 4    ADMINISTRATOR.

10:10AM 5        AND THEN FROM THERE I MOVED ON TO WORK AT -- AS A

10:10AM 6    CONTRACTOR AT EXXON, IT WAS EXXON BACK THEN, NOW EXXON MOBILE.

10:10AM 7        FROM EXXON I JOINED A STARTUP COMPANY NAMED PARANET, AND

10:10AM 8    THAT'S WHEN I STARTED DOING, REALLY, I.T. CONSULTING FULL TIME.

10:10AM 9    I DID ALL KINDS OF PROJECTS AT PARANET, AND LEFT PARANET WITH

10:10AM 10   ANOTHER GENTLEMAN AND WE FORMED OUR OWN I.T. CONSULTING FIRM,

10:11AM 11   AND THEN FROM THAT FIRM WE SPLIT THAT FIRM UP AND MY HALF

10:11AM 12   BECAME NIMBLE SERVICES.

10:11AM 13   Q.   I SEE.  AND, MR. SONNIER, THERE'S ONE ASPECT OF THAT I

10:11AM 14   DIDN'T HEAR YOU DESCRIBE.

10:11AM 15       WHAT DID YOU DO WHEN YOU WERE WORKING AT EXXON, SIR?

10:11AM 16   A.   I DID ALL KINDS OF PROJECTS FOR EXXON, INCLUDING BACKUP

10:11AM 17   SYSTEMS, BACKUP, RESTORE, SECURITY ANALYSIS.  I DESIGNED A

10:11AM 18   HIGHLY SECURE REPLACEMENT NETWORK FOR THEIR GEOPHYSICAL

10:11AM 19   ENVIRONMENT, AS WELL AS OTHER ASPECTS OF ENCRYPTION AND

10:11AM 20   SECURITY OF THEIR DATABASES, AND BACKUPS OF THEIR DATA IN

10:11AM 21   GENERAL.

10:11AM 22   Q.   AND, MR. SONNIER, ALL TOGETHER, HOW LONG HAVE YOU WORKED

10:11AM 23   IN THE I.T. FIELD?

10:11AM 24   A.   OVER 35 YEARS.

10:11AM 25   Q.   AND YOU MENTIONED BACKUPS.  DID I HEAR THAT RIGHT, SIR?

10:11AM   1    A.   YES, THAT'S RIGHT.

10:11AM   2    Q.   SO COULD YOU BRIEFLY TELL THE JURY WHAT EXPERIENCE, IF

10:11AM   3    ANY, YOU HAVE WITH DATA RECOVERY?

10:12AM   4    A.   YES.  SO THE POINT OF ANY BACKUP SYSTEM -- AND I'VE

10:12AM   5    DONE -- BACKUP HAS ALWAYS BEEN PART OF MY JOB RESPONSIBILITY MY

10:12AM   6    WHOLE CAREER -- IS, IN FACT, RECOVERY, UP TO AND INCLUDING

10:12AM   7    RECOVERY IN A DISASTER SITUATION WHERE THE ORIGINAL EQUIPMENT

10:12AM   8    MAY HAVE BEEN DESTROYED, SAY, FOR EXAMPLE, IN AN EARTHQUAKE AND

10:12AM   9    YOU NEED TO GET REPLACEMENT EQUIPMENT AND THEN RESTORE ALL OF

10:12AM   10   THE DATA BACK TO THAT REPLACEMENT EQUIPMENT AND RECOVER THE

10:12AM   11   PRODUCTION SYSTEM.

10:12AM   12   Q.   THANK YOU, MR. SONNIER.

10:12AM   13        YOU USED ANOTHER WORD EARLIER, ENCRYPTION.  AT A HIGH

10:12AM   14   LEVEL, SIR, COULD YOU TELL THE JURY WHAT THAT IS AND WHAT YOUR

10:12AM   15   EXPERIENCE WITH IT IS?

10:12AM   16   A.   YEAH, CERTAINLY.

10:12AM   17        SO ENCRYPTION MERELY MEANS TAKING SOME SORT OF INFORMATION

10:12AM   18   THAT IS TOTALLY READABLE, INTELLIGIBLE, YOU CAN JUST LOOK AT IT

10:12AM   19   AND SEE WHAT IT MEANS, AND RENDERING IT UNINTELLIGIBLE USING A

10:12AM   20   KEY.  YOU HAVE SOME SORT OF KEY, OR PERHAPS IT'S CALLED

10:12AM   21   PASSWORD, THAT YOU APPLY AN ALGORITHM OR PROCEDURE TO THAT

10:13AM   22   READABLE DATA AND MAKE IT UNREADABLE, OR AT LEAST OBFUSCATE IT

10:13AM   23   TO THE POINT WHERE, WHEN YOU LOOK AT IT, IT DOESN'T MAKE ANY

10:13AM   24   SENSE COMPARED TO THE ORIGINAL FORM.

10:13AM   25   Q.   AND HOW MUCH EXPERIENCE DO YOU HAVE WITH DATA ENCRYPTION,

10:13AM 1    SIR?

10:13AM 2    A.   YEAH, I'VE DONE ENCRYPTION AND DATA ENCRYPTION MY ENTIRE

10:13AM 3    CAREER.

10:13AM 4    Q.   AND WHAT ABOUT DATA RECOVERY THAT WE TALKED ABOUT A MOMENT

10:13AM 5    AGO, HOW MUCH EXPERIENCE WITH THAT?

10:13AM 6    A.   YEAH, I DO ROUTINELY RECOVER DATA FOR OUR CLIENTS EVERY

10:13AM 7    YEAR.

10:13AM 8    Q.   OKAY.  AND, MR. SONNIER, DOES THE TERM "SQL" MEAN ANYTHING

10:13AM 9    TO YOU?

10:13AM 10   A.   YES.  SQL IS AN ACRONYM FOR STRUCTURE QUERY LANGUAGE, BUT

10:13AM 11   IN PRACTICE IT REFERS TO A TYPE OF DATABASE.

10:13AM 12   Q.   OKAY.  AND WOULD I BE CORRECT IF I CALLED OR PRONOUNCED IT

10:13AM 13   SQL?

10:13AM 14   A.   YES.  THE ACRONYM IS OFTEN PRONOUNCED SQL.

10:13AM 15   Q.   OKAY.  AND YOU SAID IT'S A TYPE OF -- IT'S OFTEN A TYPE OF

10:14AM 16   DATABASE.  CAN YOU EXPLAIN A LITTLE BIT MORE ABOUT WHAT THAT

10:14AM 17   MEANS?

10:14AM 18   A.   RIGHT.  SO THERE -- BEFORE SQL WAS INVENTED AT I.B.M.,

10:14AM 19   THERE WERE MANY DIFFERENT TYPES OF DATABASES, THERE STILL ARE,

10:14AM 20   BUT IT BECAME THE DOMINANT ONE AFTER ITS INVENTION AT I.B.M.

10:14AM 21   OVER THE YEARS.

10:14AM 22       SO IT STORES THE DATA INSIDE OF ITSELF AS TABLES OF

10:14AM 23   INFORMATION, ORGANIZED IN ROWS AND COLUMNS, SIMILAR TO AN EXCEL

10:14AM 24   SPREADSHEET, ALTHOUGH YOU CAN HAVE LOTS AND LOTS OF TABLES.

10:14AM 25   AND IT ALSO KNOWS THE RELATIONSHIP BETWEEN THOSE DATA ITEMS IN

10:14AM   1    THOSE TABLES.

10:14AM   2    Q.   AND WHAT KIND OF EXPERIENCE DO YOU HAVE WORKING WITH SQL

10:14AM   3    DATABASES, SIR?

10:14AM   4    A.   YES.  I'VE WORKED WITH SQL DATABASES MY WHOLE CAREER.

10:14AM   5    Q.   IS THERE ALSO A PROPRIETARY SOFTWARE MADE BY MICROSOFT

10:15AM   6    THAT GOES BY THAT NAME?

10:15AM   7    A.   YES.

10:15AM   8    Q.   AND CAN YOU EXPLAIN WHAT THAT IS FOR THE JURY?

10:15AM   9    A.   SURE.  SO SQL IS A CONCEPT IN THE I.T. INDUSTRY AND

10:15AM  10    DIFFERENT VENDORS MAKE DIFFERENT IMPLEMENTATIONS OF IT.

10:15AM  11        MICROSOFT'S IMPLEMENTATION IS IN FACT CALLED SQL SERVER,

10:15AM  12    OR YOU COULD PRONOUNCE IT SQL SERVER.

10:15AM  13    Q.   AND, MR. SONNIER, DO YOU HAVE ANY PRIOR EXPERIENCE BEING

10:15AM  14    RETAINED BY A CRIMINAL DEFENDANT?

10:15AM  15            THE COURT:  LET'S TAKE A BRIEF RECESS FOR JUST A

10:15AM  16    MOMENT.

10:16AM  17        LET'S TAKE A RECESS FOR A FEW MINUTES, LADIES AND

10:16AM  18    GENTLEMEN.  THANK YOU.

10:16AM  19        YOU CAN STAND DOWN IF YOU WISH, SIR.

10:23AM  20        (RECESS FROM 10:16 A.M. UNTIL 10:35 A.M.)

10:35AM  21            THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

10:35AM  22        ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT AGAIN.

10:35AM  23        MR. BRECHER, WOULD YOU LIKE TO CONTINUE?

10:35AM  24            MR. BRECHER:  YES.  THANK YOU, YOUR HONOR.

10:35AM  25    Q.   THANK YOU, MR. SONNIER.  YOU CAN REMOVE YOUR MASK AGAIN,

10:36AM  1    SIR.

10:36AM  2         MR. SONNIER, WHEN WE LEFT OFF I WAS ASKING YOU ABOUT YOUR

10:36AM  3    EXPERIENCE WITH SQL DATABASES AND MICROSOFT SQL SERVERS.

10:36AM  4         DO YOU REMEMBER THAT, SIR?

10:36AM  5    A.   YES.

10:36AM  6    Q.   COULD YOU SAY A LITTLE BIT MORE ABOUT YOUR PAST WORK WITH

10:36AM  7    THOSE PRODUCTS?

10:36AM  8    A.   RIGHT.  SO I'VE DONE LOTS OF WORK WITH ALL MANNER OF SQL

10:36AM  9    SERVERS SYSTEMS, BUT IN PARTICULAR MICROSOFT SQL SERVER, I USE

10:36AM  10   THAT DAILY ALL OF THE TIME.  SO --

10:36AM  11   Q.   AND FOR HOW LONG HAVE YOU USED IT DAILY ALL OF THE TIME,

10:36AM  12   SIR?

10:36AM  13   A.   TWENTY YEARS.

10:36AM  14   Q.   AND, MR. SONNIER, DO YOU HAVE ANY PRIOR EXPERIENCE BEING

10:36AM  15   RETAINED BY A DEFENDANT IN A CRIMINAL CASE?

10:36AM  16   A.   NO.

10:36AM  17   Q.   NO.  ABOUT WHAT OTHER PRIOR EXPERIENCE WITH LEGAL

10:36AM  18   PROCEEDINGS?

10:36AM  19   A.   YES.  I AM RETAINED IN SEVERAL, OR MANY, CIVIL MATTERS.

10:37AM  20   Q.   AND, MR. SONNIER, ARE YOU BEING COMPENSATED FOR YOUR TIME

10:37AM  21   TODAY AND FOR YOUR WORK IN THIS CASE?

10:37AM  22   A.   YES, I AM.

10:37AM  23   Q.   HOW MUCH, SIR?

10:37AM  24   A.   MY TIME IS BILLED AT $300 AN HOUR.  I GET -- ABOUT HALF OF

10:37AM  25   THAT SORT OF COMES TO ME AS MY COMPENSATION.

10:37AM  1    Q.   OKAY.  AND DOES YOUR COMPENSATION TURN IN ANY WAY ON THE

10:37AM  2    SUBSTANCE OF THE OPINIONS YOU OFFER TODAY?

10:37AM  3    A.   NO, IT DOES NOT.

10:37AM  4    Q.   DOES YOUR COMPENSATION DEPEND IN ANY WAY ON THE OUTCOME OF

10:37AM  5    THIS TRIAL?

10:37AM  6    A.   NO, IT DOES NOT.

10:37AM  7    Q.   AND DOES YOUR COMPENSATION IN ANY WAY AFFECT THE OPINIONS

10:37AM  8    THAT YOU'VE REACHED IN THIS CASE?

10:37AM  9    A.   NO.

10:37AM 10          MR. BRECHER:  YOUR HONOR, THE DEFENSE OFFERS

10:37AM 11    MR. SONNIER AS AN EXPERT IN SQL DATA RECOVERY AND DATA

10:37AM 12    ENCRYPTION.

10:37AM 13          MR. BOSTIC:  NO OBJECTION.

10:37AM 14          THE COURT:  ALL RIGHT.  THANK YOU.

10:37AM 15      LADIES AND GENTLEMEN, THIS WITNESS WILL BE PERMITTED TO

10:38AM 16    TESTIFY AS AN EXPERT IN THE AREA OF SQL DATA RECOVERY AND DATA

10:38AM 17    ENCRYPTION.

10:38AM 18      YOU WILL BE INSTRUCTED IN THE FINAL INSTRUCTIONS HOW YOU

10:38AM 19    MAY CHARACTERIZE AND EVALUATE THIS TESTIMONY.

10:38AM 20      COUNSEL.

10:38AM 21          MR. BRECHER:  THANK YOU, YOUR HONOR.

10:38AM 22    Q.   SO, MR. SONNIER, LET'S TURN TO THE SUBSTANCE A BIT MORE.

10:38AM 23      AND WE'RE TALKING ABOUT THE THERANOS LABORATORY

10:38AM 24    INFORMATION SYSTEM.

10:38AM 25      DID YOU SAY THAT EARLIER?

10:38AM  1    A.   YES.

10:38AM  2    Q.   AND JUST TO MAKE CLEAR, ARE YOU A LABORATORY SCIENTIST BY

10:38AM  3    TRAINING?

10:38AM  4    A.   NO.

10:38AM  5    Q.   ARE YOU A MEDICAL DOCTOR?

10:38AM  6    A.   NO, I'M NOT.

10:38AM  7    Q.   DO YOU HAVE ANY PRIOR EXPERIENCE WITH BLOOD TESTING OR

10:38AM  8    BLOOD TESTING TECHNOLOGY?

10:38AM  9    A.   NO.  ONLY AS I'VE HAD A BLOOD TEST MYSELF.

10:38AM 10    Q.   OKAY.  FAIR ENOUGH.

10:38AM 11         MR. SONNIER, DO YOU HAVE ANY KNOWLEDGE ABOUT THE CONTENT

10:38AM 12    OF THE THERANOS LIS OR WHAT IT WOULD SHOW?

10:38AM 13    A.   THERE WERE SOME MATERIALS THAT I REVIEWED, LIKE IT WAS THE

10:38AM 14    USER'S GUIDE FOR THAT SYSTEM, SO I KNOW SORT OF SOME OF THE

10:39AM 15    INFORMATION THAT WAS DOCUMENTED THERE.

10:39AM 16    Q.   OKAY.  BUT YOU DON'T KNOW ANYTHING, FOR INSTANCE, ABOUT

10:39AM 17    PATIENT TESTING RESULTS OR ANYTHING LIKE THAT?

10:39AM 18    A.   NO.

10:39AM 19    Q.   OKAY.  AND DO THE OPINIONS THAT YOU FORMED IN THIS CASE

10:39AM 20    TURN ON THAT INFORMATION?

10:39AM 21    A.   NO, THEY DO NOT.

10:39AM 22    Q.   OKAY.  SO I GUESS, AND I THINK I ASKED YOU THIS EARLIER,

10:39AM 23    BUT WHAT WERE YOU ASKED TO EXAMINE?

10:39AM 24    A.   I WAS ASKED TO LOOK AT THE FEASIBILITY OF THE RECOVERY OF

10:39AM 25    THE LIS DATA.

10:39AM 1    Q.   OKAY.  AND I THINK YOU'VE TOUCHED ON THIS, BUT WHAT SORT

10:39AM 2    OF MATERIALS DID YOU REVIEW TO FORM YOUR OPINIONS IN THIS CASE?

10:39AM 3    A.   THERE WERE A WHOLE SERIES OF INFORMATION, SOME LEGAL

10:39AM 4    FILINGS, SOME DEPOSITIONS, FBI INTERVIEW, SUMMARIES.

10:39AM 5         PREVIOUSLY I MENTIONED SOME SORT OF LIS USER

10:40AM 6    DOCUMENTATION.

10:40AM 7         I THINK THERE WERE SOME THERANOS POLICY AND PROCEDURES

10:40AM 8    SORT OF STANDARDS DOCUMENTS, EMAILS, THE LEASE AGREEMENT, AND

10:40AM 9    THEN SOME PUBLIC INFORMATION THAT'S JUST AVAILABLE ON THE

10:40AM 10   INTERNET.

10:40AM 11   Q.   OKAY.  AND, MR. SONNIER, ARE THESE THE SORTS OF MATERIALS

10:40AM 12   THAT YOU TYPICALLY RELY ON IN YOUR WORK?

10:40AM 13   A.   IT'S VERY COMMON, DOING WHAT I DO, TO RECEIVE A BUNCH OF

10:40AM 14   INFORMATION, WRITTEN EMAILS, TRANSCRIPTS, DOCUMENTATION, AND

10:40AM 15   THEN TO PUT TOGETHER HOW TO SOLVE THE PROBLEM AT HAND.

10:40AM 16   Q.   AND, MR. SONNIER, WE'VE TALKED ABOUT SOME OF THE THINGS

10:40AM 17   THAT YOU'RE NOT HERE TO DISCUSS, THE CONTENT OF ANY PATIENT

10:40AM 18   TESTING DATA.

10:40AM 19        BUT LET'S TURN TO A LITTLE BIT ABOUT THE TECHNICAL ASPECTS

10:40AM 20   OF THE LIS SYSTEM.

10:40AM 21        CAN YOU BREAK DOWN SOME TERMS FOR ME?  DO YOU HAVE AN

10:40AM 22   UNDERSTANDING OF THE TERM "LIS SYSTEM" FROM A TECHNICAL

10:41AM 23   PERSPECTIVE BASED ON THE MATERIALS THAT YOU'VE REVIEWED?

10:41AM 24             MR. BOSTIC:  OBJECTION.  FOUNDATION.  CALLS FOR

10:41AM 25   HEARSAY.

10:41AM  1          THE COURT:  WELL, LET ME -- YOU CAN ANSWER THE

10:41AM  2   QUESTIONS FOR FOUNDATIONAL PURPOSES.

10:41AM  3          MR. BRECHER:  THANK YOU, YOUR HONOR.

10:41AM  4          THE WITNESS:  SO IN THE INFORMATION THAT I REVIEWED,

10:41AM  5   THE LIS SYSTEM WAS PRETTY STANDARD.  IT WAS COMPOSED OF THE

10:41AM  6   DATABASE, THE LIS DATABASE, WHERE THE INFORMATION WAS ACTUALLY

10:41AM  7   STORED, AND THEN PROGRAMS, IN THIS CASE IT'S DOT NET PROGRAMS,

10:41AM  8   VERY STANDARD IN CORPORATE ENVIRONMENTS, AND A WEB SERVER THAT

10:41AM  9   UTILIZED THOSE PROGRAMS TO READ AND WRITE THAT DATA INTO AND

10:41AM 10   OUT OF THE DATABASE AND PRESENT IT TO THE USER.

10:41AM 11   BY MR. BRECHER:

10:41AM 12   Q.  AND YOU HAVE A BINDER OF DOCUMENTS IN FRONT OF YOU.  I

10:41AM 13   THINK THAT SHOULD STILL BE THERE.

10:41AM 14   A.  YES.

10:41AM 15   Q.  COULD YOU TURN TO THE TAB MARKED 20005?

10:42AM 16   A.  I'M THERE.

10:42AM 17   Q.  THANK YOU.  I'LL ASK YOU TO TURN TO PAGES 2 AND 3 OF THAT

10:42AM 18   EXHIBIT.  LET ME KNOW WHEN YOU'RE THERE.

10:42AM 19   A.  I'M THERE.

10:42AM 20   Q.  AND DO YOU SEE SOME IMAGES OR DIAGRAMS?

10:42AM 21   A.  YES.

10:42AM 22   Q.  AND DO THOSE IMAGES REFLECT THE STRUCTURE OF THE EQUIPMENT

10:42AM 23   RELATED TO THE THERANOS LIS BASED ON THE MATERIALS THAT YOU

10:42AM 24   REVIEWED?

10:42AM 25   A.  YES, BASED ON THE MATERIAL THAT I REVIEWED, THIS IS A

SONNIER DIRECT BY MR. BRECHER

10:42AM 1    DIAGRAM OF THE EQUIPMENT THAT RAN THE LIS SYSTEM.

10:42AM 2    Q.   AND IS THIS DIAGRAM CONSISTENT WITH YOUR TRAINING AND

10:42AM 3    EXPERIENCE ABOUT WHAT A SYSTEM OF THIS SORT WOULD LOOK LIKE?

10:42AM 4    A.   YES, IT'S EXACTLY WHAT I WOULD HAVE EXPECTED.

10:42AM 5                MR. BRECHER:  YOUR HONOR, I'D LIKE TO PUBLISH

10:42AM 6    PAGES 2 AND 3 OF EXHIBIT 20005 FOR PURPOSES OF DEMONSTRATIVE

10:42AM 7    PURPOSES ONLY.

10:42AM 8                MR. BOSTIC:  FOUNDATION AND RELEVANCE, YOUR HONOR.

10:42AM 9                THE COURT:  WHY DON'T YOU LAY A FOUNDATION FOR THIS

10:43AM 10   A LITTLE BIT MORE?

10:43AM 11               MR. BRECHER:  SURE.

10:43AM 12               THE COURT:  NO, GO AHEAD.

10:43AM 13               MR. BRECHER:  THANK YOU, YOUR HONOR.

10:43AM 14   Q.   SO, MR. SONNIER, YOU TESTIFIED THAT YOU REVIEWED SOME

10:43AM 15   LEASE AGREEMENTS; IS THAT RIGHT?

10:43AM 16   A.   YES.

10:43AM 17   Q.   AND YOU TESTIFIED THAT YOU REVIEWED INTERNAL

10:43AM 18   CORRESPONDENCE.  DID I HEAR THAT RIGHT?

10:43AM 19   A.   YES, EMAILS.

10:43AM 20   Q.   OKAY.  AND THIS -- THESE DIAGRAMS YOU SAID ARE CONSISTENT

10:43AM 21   WITH WHAT YOU WOULD EXPECT AN LIS SYSTEM -- EXCUSE ME, A SQL

10:43AM 22   SERVER SYSTEM WOULD LOOK LIKE?

10:43AM 23   A.   YES.

10:43AM 24   Q.   WOULD IT BE HELPFUL FOR YOU, IN EXPLAINING THE CONSTITUENT

10:43AM 25   PARTS OF THAT SYSTEM, TO POINT US TO IMAGES ON THIS DIAGRAM?

10:43AM 1    A.  YES, PICTURES ARE ALWAYS GOOD.

10:43AM 2          MR. BRECHER:  YOUR HONOR, I'D LIKE TO PUBLISH

10:43AM 3    PAGES 2 AND 3, AGAIN, FOR DEMONSTRATIVE PURPOSES ONLY.  WE

10:43AM 4    WON'T BE OFFERING THIS INTO EVIDENCE.

10:43AM 5          THE COURT:  MR. BOSTIC.

10:43AM 6          MR. BOSTIC:  YOUR HONOR, IF THIS IS BEING OFFERED TO

10:43AM 7    SHOW A GENERIC STRUCTURE OF THE SQL SYSTEM?

10:44AM 8          THE COURT:  THAT WAS MY QUESTION.

10:44AM 9      IS THIS GOING TO BE A GENERIC DESCRIPTION OF THIS DATABASE

10:44AM 10   OR THE CONFIGURATION, OR IS THIS -- ARE YOU SEEKING TO OFFER

10:44AM 11   THIS OR EXPLAIN THAT THIS WAS THE ACTUAL CONFIGURATION AND

10:44AM 12   ARCHITECTURE OF THERANOS?

10:44AM 13         MR. BRECHER:  OF COURSE, YOUR HONOR.  WHY DON'T I

10:44AM 14   ASK SOME FOUNDATIONAL QUESTIONS?

10:44AM 15         THE COURT:  SURE.  RIGHT.

10:44AM 16         MR. BRECHER:  AND WE CAN FIND OUT.

10:44AM 17   Q.  MR. SONNIER, DO YOU UNDERSTAND -- WHAT DO YOU UNDERSTAND

10:44AM 18   THESE DIAGRAMS TO BE, MORE SPECIFICALLY?

10:44AM 19   A.  THESE DIAGRAMS ARE A SERIES OF NETWORK EQUIPMENT,

10:44AM 20   FIREWALLS, LOAD BALANCERS, NETWORK SWITCHES -- I'M SORRY IF

10:44AM 21   THOSE ARE ALL TECHNICAL TERMS -- AND THEN SEVERAL SERVERS.  ONE

10:44AM 22   IS A BACKUP SERVER, AND ONE WOULD BE THE SERVER ON WHICH THE

10:44AM 23   LIS SYSTEM WOULD HAVE RUN.

10:44AM 24   Q.  AND DID YOU LOOK TO OTHER MATERIALS BEYOND THIS DIAGRAM TO

10:44AM 25   COME TO YOUR UNDERSTANDING OF THE STRUCTURE OF THE LIS SYSTEM?

10:45AM  1    A.   DO YOU MEAN THE EQUIPMENT THAT WAS RUNNING IT?

10:45AM  2    Q.   YES.

10:45AM  3    A.   YES.  SO I REVIEWED THE LEASE AGREEMENT THAT THERANOS HAD,

10:45AM  4    AND IN THAT LEASE AGREEMENT, WHICH WAS WITH DELL CORPORATION,

10:45AM  5    IT PROVIDES WHAT ARE CALLED SERVICE TAGS.  THAT'S ESSENTIALLY A

10:45AM  6    DELL SERIAL NUMBER, AND DELL IS VERY NICE, THEY PUBLISH THAT

10:45AM  7    INFORMATION PUBLICLY ON THE INTERNET.

10:45AM  8         SO I WAS ABLE TO LOOK UP AND ESSENTIALLY GET A FULL

10:45AM  9    INVENTORY OF ALL OF THE BITS AND PIECES THAT MADE UP THAT

10:45AM 10    EQUIPMENT THAT WAS REPRESENTED IN THAT LEASE.

10:45AM 11    Q.   AND IS THAT REVIEW CONSISTENT WITH THE DIAGRAMS THAT

10:45AM 12    YOU'RE LOOKING AT IN EXHIBIT 20005?

10:45AM 13    A.   YES.

10:45AM 14         MR. BRECHER:  YOUR HONOR, I THINK UNDER 703, IT

10:45AM 15    WOULD BE HELPFUL FOR US TO SEE A VISUAL REPRESENTATION.

10:45AM 16         MR. BOSTIC:  YOUR HONOR, IF THIS IS MEANT TO

10:45AM 17    REPRESENT THE ACTUAL LIS, THEN THE OBJECTION IS FOUNDATION,

10:46AM 18    HEARSAY, AND BEST EVIDENCE.

10:46AM 19         THE COURT:  IS THIS -- ARE YOU SUGGESTING AND

10:46AM 20    OFFERING THIS TO BE THE ACTUAL ARCHITECTURE, THE SERVERS IN

10:46AM 21    PLACE, OR IS THIS A REPRESENTATIVE OF OR SOMETHING IN BETWEEN?

10:46AM 22         MR. BRECHER:  SOMETHING IN BETWEEN.  BUT I'M MORE

10:46AM 23    THAN HAPPY TO KEEP IT LIMITED TO A GENERIC REPRESENTATIVE OF.

10:46AM 24    I JUST WANT TO MAKE SURE THAT WE CAN UNDERSTAND THE DIFFERENT

10:46AM 25    PARTS.

10:46AM  1          THE COURT:  OKAY.  ALL RIGHT.

10:46AM  2          WITH THE UNDERSTANDING THAT THIS IS NOT AND YOU'RE NOT

10:46AM  3   OFFERING THIS IN ANY WAY TO REPRESENT THE SPECIFIC ARCHITECTURE

10:46AM  4   THAT EXISTED AT THE TIME, BUT RATHER REPRESENTATIVE OF THE

10:46AM  5   ARCHITECTURE OF A SIMILAR TYPE, IS THAT ACCURATE?

10:46AM  6          MR. BRECHER:  I THINK THAT'S FAIR, YOUR HONOR.

10:46AM  7          THE COURT:  ALL RIGHT.  THEN THESE CAN BE PUBLISHED.

10:46AM  8          LADIES AND GENTLEMEN, THESE WILL BE PUBLISHED, NOT

10:46AM  9   ADMITTED AS EVIDENCE, BUT PUBLISHED AS A DEMONSTRATIVE TO

10:46AM  10  ASSIST THE TESTIMONY OF THE WITNESS.

10:46AM  11         MR. BRECHER:  THANK YOU, YOUR HONOR.

10:47AM  12         AND, MR. ALLEN, IF WE CAN PUT UP PAGES 2 AND 3 TOGETHER

10:47AM  13  JUST SO WE CAN SEE THEIR RELATIONSHIP.

10:47AM  14  Q.   MR. SONNIER, DO YOU HAVE THAT ON THE SCREEN IN FRONT OF

10:47AM  15  YOU, SIR?

10:47AM  16  A.   YES, I DO.

10:47AM  17  Q.   IT'S ALSO IN YOUR BINDER IF THAT'S EASIER.

10:47AM  18  A.   YES.

10:47AM  19  Q.   DO YOU HAVE AN UNDERSTANDING OF THE RELATIONSHIP BETWEEN

10:47AM  20  PAGE 2, THE IMAGE ON THE LEFT, AND PAGE 3, THE IMAGE ON THE

10:47AM  21  RIGHT?

10:47AM  22  A.   YES.  THEY'RE JUST TWO DIAGRAMS OF THE SAME THING.  THE

10:47AM  23  LEFT -- THE IMAGE ON THE LEFT IS WHAT I WOULD CALL SORT OF A

10:47AM  24  CONNECTION DIAGRAM SHOWING HOW THE PIECES ARE CONNECTED TO EACH

10:47AM  25  OTHER AND KIND OF BLOWN OUT MAYBE MAKES IT A LITTLE EASIER TO

10:47AM 1     INSTRUCT THAT, WHEREAS THE ONE ON THE RIGHT IS A MORE PHYSICAL

10:47AM 2     DIAGRAM OF HOW SUCH SAID EQUIPMENT WOULD BE STORED IN THE

10:47AM 3     TYPICAL SERVER ROOM.

10:47AM 4     Q.   AND THINKING ABOUT A TYPICAL SERVER ENVIRONMENT -- AND I'M

10:48AM 5     NOW GOING TO ASK, MR. ALLEN, IF YOU COULD JUST FOCUS ON PAGE 2,

10:48AM 6     PLEASE -- I SEE A SERIES OF THIN HORIZONTAL STRIPS IN THIS --

10:48AM 7     WHAT DID YOU CALL IT?  A BLOWN OUT VERSION?

10:48AM 8     A.   YES.  IT'S LIKE A CONNECTION DIAGRAM JUST SHOWING THE

10:48AM 9     DIFFERENT PIECES, AND THE LITTLE LINES REPRESENT SORT OF HOW

10:48AM 10    THEY'RE HOOKED TOGETHER.

10:48AM 11    Q.   OKAY.  AND DO YOU HAVE A SENSE OF WHAT THESE THIN

10:48AM 12    HORIZONTAL STRIPS REPRESENT?

10:48AM 13    A.   YES, THOSE ARE ALL VARIOUS ASPECTS OF THE NETWORK.

10:48AM 14         I CAN DETAIL A LITTLE BIT.  THE TWO AT THE TOP ARE

10:48AM 15    FIREWALLS; THE NEXT TWO SORT OF YELLOW ORANGE ONES ARE LOAD

10:48AM 16    BALANCERS; THE NEXT FOUR THINNER BOXES ARE SWITCHES THAT ALLOW

10:48AM 17    THE EQUIPMENT TO TALK TO EACH OTHER, AS WELL AS THE INTERNET

10:48AM 18    AND THE WIDE WORLD.

10:48AM 19    Q.   AND -- I'M SORRY, SIR.  WERE YOU FINISHED?

10:48AM 20    A.   NO.  I DIDN'T KNOW IF YOU WANTED ME TO CONTINUE DOWN THE

10:48AM 21    PAGE OR NOT.

10:48AM 22    Q.   NO.  WE'LL GET THERE STEP BY STEP.  THANK YOU, SIR.

10:49AM 23         MR. SONNIER, THINKING ABOUT A TYPICAL MICROSOFT SQL SYSTEM

10:49AM 24    ARCHITECTURE, THOSE THIN, I THINK YOU CALLED IT THEM NETWORK

10:49AM 25    STRIPS THAT WE WERE JUST TALKING ABOUT, WERE THOSE IMPORTANT TO

10:49AM  1    UNDERSTAND IN FORMING YOUR OPINIONS ABOUT THE RECOVERABILITY OF

10:49AM  2    THE LIS?

10:49AM  3    A.   NO, THE NETWORK WOULDN'T HAVE HAD ANY IMPACT ON THE

10:49AM  4    RECOVERABILITY.

10:49AM  5    Q.   OKAY.  I'M LOOKING STILL ON PAGE 2 ON THE TOP HALF, AND I

10:49AM  6    SEE IN THE CENTER TWO LARGER STRIPS.  THE FIRST ONE IS LABELLED

10:49AM  7    DELL R520.

10:49AM  8         DO YOU SEE THAT, SIR?

10:49AM  9    A.   YES.

10:49AM  10   Q.   AGAIN, THINKING ABOUT THIS AS A GENERIC OR HOPEFULLY

10:49AM  11   TYPICAL SQL SERVER ARCHITECTURE, WHAT IS THAT, SIR?

10:49AM  12   A.   SO THAT'S A STANDARD DELL SERVER FOR THE TIME, VERY

10:50AM  13   GENERIC, LOTS OF THEM IN THE WORLD.

10:50AM  14        AND THEN THE LARGER BOX UNDERNEATH IT IS ESSENTIALLY A

10:50AM  15   DATA STORAGE DEVICE.  IT'S A LOWER PERFORMANCE.

10:50AM  16        THESE TWO TOGETHER HAD THE FUNCTION -- OR IN THE MATERIALS

10:50AM  17   I REVIEWED, THESE TWO WERE BASICALLY DESIGNATED AS THE BACKUP

10:50AM  18   FOR THE SQL SYSTEM OR FOR THE LIS SYSTEM.

10:50AM  19   Q.   OKAY.  LET'S TURN DOWN TO THE BOTTOM OF PAGE 2.  I'M

10:50AM  20   SEEING ANOTHER TWO STRIPS HERE.  ONE OF THEM IS LABELLED 5108

10:50AM  21   UCS CHASSIS.

10:50AM  22        DO YOU SEE THAT, SIR?

10:50AM  23   A.   YES, I DO.

10:50AM  24   Q.   AND THE ONE BELOW THAT IS LABELLED NIMBLE CS300.

10:50AM  25        DO YOU SEE THAT, SIR?

SONNIER DIRECT BY MR. BRECHER

10:50AM 1     A.   YES, I DO.

10:50AM 2     Q.   WHAT WOULD THOSE BE IN ARCHITECTURE LIKE THIS?

10:51AM 3     A.   SO THE LARGER UNIT IS ESSENTIALLY A SERVER ARRAY.  SO AS

10:51AM 4     THE ONE ABOVE THAT WHOLE BOX WAS ONE SERVER, THIS IS REALLY A

10:51AM 5     DENSER CONFIGURATION THAT ALLOWS YOU TO PUT SERVERS IN ONE BOX.

10:51AM 6     IT ALLOWS YOU TO SAVE SPACE WHEN YOU'RE RENTING DATA CENTER

10:51AM 7     SPACE BY THE FOOT, AND IN THAT ONE BOX YOU CAN PUT FOUR OR

10:51AM 8     EIGHT SERVERS INTO IT.

10:51AM 9     Q.   OKAY.

10:51AM 10    A.   THE FINAL BOX AT THE VERY BOTTOM IS A HIGH PERFORMANCE

10:51AM 11    DISK ARRAY THAT PROVIDES ALL OF THE STORAGE OF ALL OF THE

10:51AM 12    SERVERS IN THE LARGER BOX.

10:51AM 13    Q.   THANK YOU, MR. SONNIER.

10:51AM 14         AND THEN TURNING TO PAGE 3 OF THE EXHIBIT.  COULD YOU

10:51AM 15    EXPLAIN AGAIN TO US WHAT THIS IS?

10:51AM 16    A.   YES.  SO ALL OF THE BOXES WE JUST TALKED ABOUT IN THE

10:52AM 17    CONNECTION DIAGRAM ARE ARRANGED TOP TO BOTTOM IN WHAT --

10:52AM 18    ESSENTIALLY THIS IS A COMPUTER RACK IS WHAT WE CALL IT, OR A

10:52AM 19    SERVER RACK.

10:52AM 20         SO IN AN ACTUAL DATA CENTER, ALL OF THAT EQUIPMENT WOULD

10:52AM 21    BE MOUNTED INTO THIS RACK, WHICH IS THE LARGE GRAY BARS AROUND

10:52AM 22    THE OUTSIDE OF THE DIAGRAM, AND EACH OF THE BOXES IS THEN

10:52AM 23    BOLTED IN PLACE, AND THEN FROM THERE IT WOULD HAVE BEEN

10:52AM 24    CONNECTED TO POWER AND THE NETWORK WOULD HAVE BEEN WIRED UP PER

10:52AM 25    THE CONNECTION DIAGRAM.

SONNIER DIRECT BY MR. BRECHER

10:52AM 1   Q.   OKAY.  AND, MR. SONNIER, I THINK WE MAY HAVE COVERED THIS,

10:52AM 2   BUT BASED ON YOUR TRAINING AND EXPERIENCE, DOES THIS

10:52AM 3   ARCHITECTURE LOOK LIKE WHAT ONE WOULD EXPECT A SQL SERVER

10:52AM 4   SYSTEM OF THIS NATURE TO RESEMBLE?

10:52AM 5   A.   YES, PRETTY STANDARD.

10:52AM 6   Q.   MR. ALLEN, I THINK WE CAN TAKE THAT DOWN.

10:52AM 7        AND, MR. SONNIER, LET'S TALK A LITTLE BIT MORE ABOUT SQL,

10:53AM 8   BECAUSE WHEN WE WERE SPEAKING EARLIER, I THINK I HEARD THE

10:53AM 9   TERMS SQL FILE, SQL SERVER, SQL DATABASE, AND MICROSOFT SQL.

10:53AM 10  SO WHY DON'T WE BREAK THOSE DOWN ONE BY ONE.

10:53AM 11       WHAT EXACTLY IS A SQL FILE?

10:53AM 12  A.   SO ALL DATABASES HAVE TO STORE INFORMATION FOR

10:53AM 13  PERMANENTLY, AND SO THEY WRITE IT INTO A FILE, SIMILAR TO A

10:53AM 14  WORD DOCUMENT OR AN EXCEL DOCUMENT THAT YOU MIGHT HAVE ON YOUR

10:53AM 15  PERSONAL COMPUTER.  SO ALL SQL SYSTEMS HAVE TO ACTUALLY WRITE

10:53AM 16  INTO A FILE.

10:53AM 17       SO THEY ALL STORE INTO FILES, AND SOMETIMES PEOPLE WILL

10:53AM 18  REFER TO THE FILE AS THE DATABASE ITSELF, OR THEY MAY CALL IT

10:53AM 19  JUST THE SQL FILE BECAUSE YOU MIGHT THINK OF THE DATABASE AS

10:53AM 20  NOT JUST THE FILE, BUT ALSO THE SOFTWARE TO ACCESS THE FILE.

10:53AM 21  Q.   OKAY.  AND I THINK YOU MENTIONED A COUPLE OF OTHER TERMS

10:54AM 22  THAT AT LEAST I AM A BIT MORE FAMILIAR WITH.

10:54AM 23       YOU SAID A WORD DOCUMENT, AND I THINK YOU SAID AN EXCEL

10:54AM 24  DOCUMENT; IS THAT RIGHT?

10:54AM 25  A.   YES.

10:54AM  1      Q.   AND CAN WE COMPARE A LITTLE BIT IN TERMS OF FUNCTION?  HOW

10:54AM  2      DOES A SQL FILE COMPARE TO SOMETHING LIKE AN EXCEL FILE THAT WE

10:54AM  3      MIGHT BE A LITTLE BIT MORE FAMILIAR WITH?

10:54AM  4      A.   SURE.  SO AN EXCEL FILE IS COMMONPLACE.  IT'S A

10:54AM  5      REPRESENTATION OF A SPREADSHEET GENERALLY USED FOR COMPUTING

10:54AM  6      FORMULAS AND ACCOUNTING NUMBERS.

10:54AM  7           AND YOU HAVE THE SAME SORT OF THING FOR A DATABASE OR A

10:54AM  8      SQL DATABASE.  THE INFORMATION THAT REPRESENTS TABLES, ROWS AND

10:54AM  9      COLUMNS, JUST LIKE IN AN EXCEL SPREADSHEET, ARE STORED IN THE

10:54AM  10     SQL FILE OR THE SQL DATABASE, AND THEN YOU CAN USE THE SQL

10:54AM  11     SOFTWARE TO RETRIEVE IT, JUST LIKE YOU CAN USE EXCEL TO OPEN UP

10:55AM  12     THIS EXCEL FILE AND THEN DISPLAY THE ROWS AND COLUMNS IN AN

10:55AM  13     EXCEL SPREADSHEET.

10:55AM  14     Q.   WHAT SORT OF DIFFERENCES EXIST BETWEEN A SQL FILE AND AN

10:55AM  15     EXCEL FILE, TO STICK WITH THAT ANALOGY?

10:55AM  16     A.   SURE.  SO A SQL FILE WOULD BE MORE LIMITED THAN A

10:55AM  17     RELATIONAL DATABASE WOULD BE OR A SQL DATABASE WOULD BE.  IT

10:55AM  18     PROBABLY COULDN'T STORE ANYWHERE NEAR THE AMOUNT OF DATA.

10:55AM  19     Q.   I'M SORRY, MR. SONNIER.  I'M GOING TO PAUSE.  I MAY HAVE

10:55AM  20     MISHEARD YOU.  DID YOU SAY THAT A SQL FILE WOULD BE MORE

10:55AM  21     LIMITED THAN A SQL DATABASE, OR DID I MISHEAR YOU?

10:55AM  22     A.   NO.  AN EXCEL FILE WOULD BE MORE LIMITED THAN A SQL

10:55AM  23     DATABASE.

10:55AM  24     Q.   OKAY.  THANK YOU.

10:55AM  25           MR. SONNIER, LET'S -- WE'LL FLESH THIS OUT IN A FEW

10:55AM  1    MOMENTS, BUT WE WERE TALKING A LOT ABOUT WHAT YOU WERE ASKED TO

10:55AM  2    EXAMINE, AND AT A VERY HIGH LEVEL, WHAT DID YOU ULTIMATELY

10:56AM  3    CONCLUDE ABOUT THE RECOVERABILITY OF THE THERANOS LABORATORY

10:56AM  4    INFORMATION SYSTEM?

10:56AM  5    A.   SO ULTIMATELY, AFTER REVIEWING ALL OF THE MATERIALS THAT I

10:56AM  6    REVIEWED, I CONCLUDED THAT, CERTAINLY BEFORE AUGUST 2018, IT

10:56AM  7    WOULD HAVE BEEN A VERY STRAIGHTFORWARD TECHNICAL TASK TO

10:56AM  8    RECOVER THAT DATA, AND EVEN AFTER AUGUST 2018 IT WOULD BE THE

10:56AM  9    SAME, YOU COULD STILL RECOVER THAT INFORMATION.

10:56AM 10    Q.   AND YOU USED A DATE THERE, AUGUST OF 2018, AND I THINK

10:56AM 11    WE'LL GET INTO WHY THAT DATE IS SIGNIFICANT IN JUST A MOMENT.

10:56AM 12         LET'S START, AND MAYBE THIS WILL BE A NATURAL SEGUE, SIR,

10:56AM 13    CAN YOU TELL US A BIT ABOUT THE FACTUAL ASSUMPTIONS THAT FORMED

10:56AM 14    THE OPINIONS THAT YOU REACHED IN THIS CASE?  WHY ARE WE TALKING

10:56AM 15    ABOUT NEEDING TO RECOVER THE LIS?

10:56AM 16    A.   SO FROM THE MATERIALS THAT I REVIEWED, IT WAS THE CASE

10:57AM 17    THAT THE MATERIALS THAT WERE BEING SUBPOENAED TO SUPPLY

10:57AM 18    INFORMATION FROM THEIR LIS SYSTEM TO THE GOVERNMENT, AND THERE

10:57AM 19    WAS AN ATTEMPT TO PROVIDE THAT INFORMATION IN THE FORM OF A SQL

10:57AM 20    SERVER BACKUP.  I THINK ULTIMATELY IT WAS DELIVERED IN AUGUST

10:57AM 21    OF 2018.

10:57AM 22         THEREAFTER, THE PRODUCTION SYSTEM, THE LIS PRODUCTION

10:57AM 23    SYSTEM IN PARTICULAR, THE SQL DATABASE SYSTEM, WAS DISASSEMBLED

10:57AM 24    AND THE HARD DRIVES WERE SENT TO ONE STORAGE LOCATION AND THE

10:57AM 25    EQUIPMENT WENT TO A DIFFERENT STORAGE LOCATION.

10:57AM 1    Q.   OKAY.  AND WE'LL BREAK THAT DOWN IN A MOMENT, BUT YOU USED

10:57AM 2    A TERM "PRODUCTION SYSTEM" OR "PRODUCTION EQUIPMENT."

10:57AM 3         WHAT DO YOU MEAN BY THAT, SIR?

10:58AM 4    A.   SO IN STANDARD I.T. ENVIRONMENTS WITHIN CORPORATE

10:58AM 5    ENVIRONMENTS, YOU HAVE DIFFERENT TYPES OF SETUPS.

10:58AM 6         SO THE ONE THAT IS ACTUALLY RUNNING, THAT USERS ARE

10:58AM 7    INTERACTING WITH AND MAKING, YOU KNOW, DECISIONS ON IS CALLED

10:58AM 8    THE PRODUCTION SYSTEM, AND IT'S GENERALLY VERY SECURE AND

10:58AM 9    CHANGES ARE NOT ALLOWED TO IT.

10:58AM 10        YOU THEN ALSO HAVE TEST SYSTEMS TO ALLOW NEW VERSIONS OF

10:58AM 11   THE SYSTEM TO BE TESTED, AND NORMALLY IF, IN FACT, THE COMPANY

10:58AM 12   IS DEVELOPING THAT SYSTEM, CREATING THE SOFTWARE OR DESIGNING

10:58AM 13   THE DATABASE, THEY'LL HAVE DEVELOPMENT SYSTEMS AS WELL.

10:58AM 14        SO KIND OF THINK OF IT AS AN ASSEMBLY LINE.  THE

10:58AM 15   DEVELOPMENT TEAM ROLLS OUT A NEW VERSION IN THE DEVELOPMENT

10:58AM 16   SYSTEMS AND THEY PLACE IT ON A TEST AND GET EVERYONE TO SIGN

10:59AM 17   OFF ON IT, AND THEN IT GOES INTO THE SECURE PRODUCTION

10:59AM 18   ENVIRONMENT.

10:59AM 19   Q.   OKAY.  YOU MENTIONED SOMETHING ELSE AS WELL.  YOU

10:59AM 20   MENTIONED THAT ONE OF THE ASSUMPTIONS THAT INFORMED YOUR

10:59AM 21   OPINIONS IS THAT THE GOVERNMENT RECEIVED A BACKUP COPY.

10:59AM 22        DID I HEAR THAT RIGHT?

10:59AM 23   A.   MATERIAL THAT I REVIEWED HAS VARIOUS CORRESPONDENCE, AND

10:59AM 24   PRIMARILY EMAIL, THAT DISCUSS A USB DEVICE, I THINK ACTUALLY

10:59AM 25   MORE THAN ONE, AND THE LAST BACKUP OF THE LIS DATABASE WAS

10:59AM  1    PLACED ON EACH OF THESE EXTERNAL DISK DRIVES.

10:59AM  2         THOSE DISK DRIVES THEN WERE FULLY ENCRYPTED, AND SOME OF

10:59AM  3    THE INFORMATION, IT'S MY UNDERSTANDING, WAS CONFIDENTIAL IN THE

10:59AM  4    LIS DATABASE.

10:59AM  5         AND SO THEN THOSE UNITS WERE DELIVERED TO VARIOUS

11:00AM  6    ATTORNEYS, AND ULTIMATELY ONE OR MORE COPIES MADE ITS WAY TO

11:00AM  7    THE GOVERNMENT.

11:00AM  8    Q.   ALL RIGHT.  SO YOU SAID "ONE OR MORE OF THESE BACKUP

11:00AM  9    COPIES WENT TO THE GOVERNMENT."

11:00AM  10   A.   YES.

11:00AM  11   Q.   DO YOU HAVE AN UNDERSTANDING OF WHETHER OR NOT THE DEFENSE

11:00AM  12   ALSO GOT THIS COPY?

11:00AM  13   A.   THAT'S MY UNDERSTANDING.

11:00AM  14   Q.   OKAY.  AND I GUESS, MR. SONNIER, WHY AREN'T WE DEALING

11:00AM  15   WITH THIS COPY IN YOUR UNDERSTANDING?

11:00AM  16   A.   FROM THE MATERIALS THAT I REVIEWED, THERE WERE SEVERAL

11:00AM  17   DIFFICULTIES WITH ACCESSING THE INFORMATION ON THIS EXTERNAL

11:00AM  18   DRIVE.

11:00AM  19        THE FIRST STUMBLING BLOCK SEEMED TO BE THE FACT THAT THE

11:00AM  20   ENTIRE DRIVE WAS ENCRYPTED.  THAT SEEMED TO CAUSE SOME DELAY IN

11:00AM  21   ACCESSING IT.

11:00AM  22        IT SEEMS LIKE, THOUGH, THE PASSWORD TO UNLOCK THAT

11:00AM  23   ENCRYPTION WAS AVAILABLE AND EVERYBODY WAS POTENTIALLY ABLE TO

11:01AM  24   DECRYPT THE OVERALL DRIVE.

11:01AM  25        THE SECOND PROBLEM SEEMED TO BE THAT THE BACKUP WAS VERY

11:01AM  1    LARGE, AND THE VARIOUS SOFTWARE THAT WAS BEING UTILIZED, AT

11:01AM  2    LEAST AT THE GOVERNMENT FACILITIES, HAD A LIMITATION AND

11:01AM  3    COULDN'T PROCESS A SQL DATABASE BACKUP THAT LARGE.

11:01AM  4         FARTHER DOWN THE ROAD, MAYBE TWO YEARS LATER, IT WAS

11:01AM  5    REALIZED THAT EVEN AFTER DECRYPTING THE DRIVE AND ACCESSING

11:01AM  6    THESE LARGE BACKUPS WITH APPROPRIATE SOFTWARE, THAT THE BACKUP

11:01AM  7    ITSELF WAS SEPARATELY AND SORT OF INDEPENDENTLY ENCRYPTED AND A

11:02AM  8    SECOND PASSWORD WAS NEEDED TO ACTUALLY RECOVER THAT BACKUP TO A

11:02AM  9    RUNNING SQL SERVER WHERE YOU COULD ACTUALLY ACCESS THE DATA.

11:02AM  10   Q.   AND, MR. SONNIER, WERE YOU GIVEN ACCESS TO THIS BACKUP

11:02AM  11   COPY TO EXAMINE?

11:02AM  12   A.   YES.  I WAS GIVEN ACCESS REMOTELY WHILE THE DEVICE WAS

11:02AM  13   RESIDING IN THE ATTORNEY'S OFFICE AND I PERFORMED THE

11:02AM  14   DECRYPTION OF THE OVERALL DISK DRIVE AND ACCESSED THE FILES ON

11:02AM  15   IT.

11:02AM  16   Q.   AND WHAT ABOUT THAT SECOND LAYER OF ENCRYPTION THAT YOU

11:02AM  17   MENTIONED?  DID YOU EVER TRY TO GET PAST THAT?

11:02AM  18   A.   YES.  IN THE REVIEW MATERIAL, THERE WAS AT LEAST ONE

11:02AM  19   DOCUMENT THAT HAD A LOT OF PASSWORDS THAT POTENTIALLY COULD

11:02AM  20   HAVE BEEN THE PASSWORD NEEDED TO RECOVER THE BACKUP OR RESTORE

11:03AM  21   IT.

11:03AM  22        AND SO I COPIED A FEW OF THE FILES OFF THE EXTERNAL DISK

11:03AM  23   DRIVE OVER TO MY OFFICE AND THEN PROCEEDED TO TRY THOSE

11:03AM  24   PASSWORDS THAT WERE IN THE MATERIAL.

11:03AM  25   Q.   WHY DID YOU DO THAT, SIR?

11:03AM  1    A.   I WAS ASKED TO BY THE ATTORNEYS.

11:03AM  2    Q.   OKAY.  THAT'S OUR TEAM?

11:03AM  3    A.   YES.

11:03AM  4    Q.   OKAY.  AND WHAT WERE THE RESULTS?

11:03AM  5    A.   UNFORTUNATELY NONE OF THE PASSWORDS FROM THE MATERIALS

11:03AM  6    THAT I REVIEWED WORKED TO RECOVER THE DATA.

11:03AM  7    Q.   SO, MR. SONNIER, YOU SAID THAT YOU ASSUMED THAT THERANOS

11:03AM  8    HAD PROVIDED THIS BACKUP COPY TO THE GOVERNMENT; IS THAT RIGHT?

11:03AM  9    A.   YEAH.  THE INFORMATION THAT I SAW INDICATED THAT IT WENT

11:03AM  10   TO THE THERANOS ATTORNEY AND THAT THE ATTORNEY FOR THERANOS HAD

11:03AM  11   FORWARDED IT ON BY COURIER.

11:03AM  12   Q.   OKAY.  AND THAT SAME COPY WAS LATER GIVEN TO THE DEFENSE

11:04AM  13   AS WELL?

11:04AM  14   A.   SO I THINK THERE WERE INDEPENDENT COPIES, IDENTICAL, AND I

11:04AM  15   THINK DIFFERENT PHYSICAL DEVICES WENT TO DIFFERENT PLACES.

11:04AM  16   Q.   I SEE.  BUT IDENTICAL COPIES?

11:04AM  17   A.   YES.  ALL OF THE INFORMATION INDICATES THAT HE COPIED THE

11:04AM  18   EXACT SAME FILES TO ALL OF THE DEVICES.

11:04AM  19   Q.   AND, MR. SONNIER, IN YOUR OPINIONS TODAY, YOU DON'T FAULT

11:04AM  20   THE GOVERNMENT FOR NOT BEING ABLE TO OPEN THIS COPY, DO YOU?

11:04AM  21   A.   NO.  THIS SORT OF THING HAPPENS PERIODICALLY IN THE

11:04AM  22   INDUSTRY.

11:04AM  23   Q.   OKAY.  AND I THINK YOU JUST TESTIFIED THAT YOU WERE NOT

11:04AM  24   ABLE TO OPEN IT EITHER?

11:04AM  25   A.   THAT'S CORRECT.

11:04AM  1    Q.   OKAY.  DO YOU HAVE AN UNDERSTANDING -- OR TO YOUR

11:04AM  2    KNOWLEDGE, HAS IT EVER BEEN OPENED?

11:04AM  3    A.   NONE OF THE MATERIALS THAT I'VE SEEN INDICATE ANYONE WAS

11:04AM  4    SUCCESSFUL IN RESTORING THAT BACKUP.

11:04AM  5    Q.   OKAY.  I'M SORRY.  I SHOULD HAVE ASKED, YOU SAID THIS COPY

11:04AM  6    WAS PROVIDED IN I THINK YOU SAID AUGUST 2018?

11:05AM  7    A.   YES.

11:05AM  8    Q.   DO YOU HAVE AN UNDERSTANDING AS TO WHETHER MR. BALWANI WAS

11:05AM  9    AT THERANOS IN AUGUST 2018?

11:05AM  10            MR. BOSTIC:  OBJECTION.  FOUNDATION.

11:05AM  11            THE COURT:  SUSTAINED.

11:05AM  12   BY MR. BRECHER:

11:05AM  13   Q.   MR. SONNIER, LET'S TURN TO I GUESS THE SUBSTANCE OF WHAT

11:05AM  14   YOU'RE HERE TO TALK ABOUT.  WE'VE ADDRESSED THIS COPY.

11:05AM  15        IS THAT THE END OF THE MATTER?

11:05AM  16   A.   SO FROM WHAT I WAS ASKED TO DO, THE BACKUP COPY WAS SORT

11:05AM  17   OF A DISTRACTION.  FROM MY ORIGINAL REVIEW OF THE MATERIAL, I

11:05AM  18   SORT OF CONCLUDED THAT THE BEST WAY WOULD BE TO SORT OF GO TO

11:05AM  19   THE SOURCE OF THAT BACKUP AND NOT WORRY ABOUT THE BACKUP

11:05AM  20   ITSELF.

11:05AM  21        OBVIOUSLY IF YOU COULD GET THE BACKUP RESTORED, THEN THAT

11:05AM  22   WOULD BE GREAT.  BUT IT SEEMED LIKE A LOT OF PEOPLE HAD ALREADY

11:05AM  23   TRIED AND WERE UNSUCCESSFUL.

11:05AM  24        SO I THOUGHT YOU SHOULD GO AFTER THE PRODUCTION SERVERS

11:05AM  25   THEMSELVES.

11:05AM  1    Q.   OKAY.  AND WHEN YOU DESCRIBED THIS OPINION IN HIGH LEVEL

11:06AM  2    FORM EARLIER, I THINK YOU DREW A DISTINCTION BETWEEN

11:06AM  3    AUGUST 2018 AND BEFORE AND AFTER THAT DATE.

11:06AM  4        WHY DID YOU SAY THAT, SIR?

11:06AM  5    A.   IN THE MATERIALS THAT I REVIEWED, IT WAS VERY CLEAR THAT

11:06AM  6    THERE WERE STILL PEOPLE ACCESSING THE DATABASE ALL OF THE WAY

11:06AM  7    THROUGH THE END OF AUGUST 2018.

11:06AM  8        SO IT WAS UP AND RUNNING AND IT WAS FULLY FUNCTIONAL, AND

11:06AM  9    OBVIOUSLY THAT WOULD BE AN IDEAL SITUATION TO GO AND EXTRACT

11:06AM 10    THE DATA, WHATEVER DATA YOU WANTED OUT OF IT.

11:06AM 11        AT THE END OF AUGUST 2018, AT THE DIRECTION OF THERANOS,

11:06AM 12    THE THERANOS CONTRACTOR DISASSEMBLED THE SYSTEM, SO TURNED IT

11:06AM 13    OFF, UNPLUGGED IT TO PROTECT THE CONFIDENTIAL INFORMATION --

11:06AM 14            MR. BOSTIC:  OBJECTION.  FOUNDATION.

11:06AM 15            THE COURT:  SUSTAINED.

11:06AM 16    BY MR. BRECHER:

11:06AM 17    Q.   SO, MR. SONNIER, LET'S FOCUS ON THAT PERIOD AFTER 2018.  I

11:07AM 18    THINK WE'VE ESTABLISHED YOUR ASSUMPTION THAT THE SYSTEM WAS

11:07AM 19    DISASSEMBLED; IS THAT FAIR?

11:07AM 20    A.   CORRECT.

11:07AM 21    Q.   OKAY.  COULD YOU STILL GET THIS DATA AFTER IT WAS

11:07AM 22    DISASSEMBLED?

11:07AM 23    A.   YES.  SO RIGHT AFTER IT WAS ASSEMBLED, YOU COULD JUST --

11:07AM 24    DISASSEMBLED, YOU COULD REVERSE THE PROCESS AND REASSEMBLE IT.

11:07AM 25    Q.   COULD YOU BRIEFLY WALK US THROUGH THOSE STEPS?  WHAT DOES

11:07AM 1      THAT ENTAIL?

11:07AM 2      A.   SO IN THE MATERIALS I REVIEWED, THEY SEPARATED THE HARD

11:07AM 3      DRIVES OUT AND THE EQUIPMENT IN DIFFERENT PLACES.  SO YOU WOULD

11:07AM 4      GO TO THE STORAGE LOCATIONS AND RETRIEVE THOSE PIECES, BRING

11:07AM 5      THEM BACK TO A COMMON LOCATION.  YOU WOULD UTILIZE THE

11:07AM 6      INVENTORY THAT I MENTIONED EARLIER, WHICH ESSENTIALLY TELLS YOU

11:07AM 7      WHAT SIZE AND WHAT SPEED, EVEN THE SERIAL NUMBERS OF THE DISK

11:07AM 8      DRIVES THAT GO INTO VARIOUS PIECES OF EQUIPMENT.

11:08AM 9          SO IT'S A BIT OF LIKE A PUZZLE.  YOU HAVE A BUNCH OF HOLES

11:08AM 10     IN THAT RACK DIAGRAM THAT WE TALKED ABOUT BEFORE WHERE THE DISK

11:08AM 11     DRIVES GO, AND YOU USE THE INVENTORY INFORMATION TO PUT IT BACK

11:08AM 12     TOGETHER, YOU KNOW, PLUG IT IN THE RIGHT SPOT.

11:08AM 13         IN SOME CASES YOU MAY NEED TO EXAMINE THE HARD DRIVE SORT

11:08AM 14     OF AT A LOW LEVEL FORENSICALLY JUST TO READ THE META DATA OFF

11:08AM 15     OF IT IN ORDER TO FIGURE OUT, YOU KNOW, WHERE IN THE JIGSAW

11:08AM 16     THAT THAT PARTICULAR PIECE PLUGS IN.

11:08AM 17     Q.   AND YOU USED A TERM JUST NOW, "META DATA."  WHAT ARE YOU

11:08AM 18     TALKING ABOUT NOW IN THIS CONTEXT, SIR?

11:08AM 19     A.   SO IN THESE ENTERPRISE SYSTEMS, THE DISK DRIVES ALL HAVE A

11:08AM 20     PORTION OF THEM RESERVED FOR SYSTEM INFORMATION ABOUT THAT

11:08AM 21     DRIVE'S PURPOSE AND FUNCTION.  IT'S DATA, BUT THAT NO USER

11:09AM 22     WOULD EVER LOOK AT.

11:09AM 23         AND IT'S STRICTLY HIDDEN, IF YOU WILL, ON THE DRIVE SO

11:09AM 24     THAT WHEN THE DRIVE IS FIRST ACCESSED BY THE SYSTEM, THE SYSTEM

11:09AM 25     CAN SAY WHAT THE PURPOSE OF THAT DRIVE IS FOR.

SONNIER DIRECT BY MR. BRECHER

11:09AM  1      SO I CALL THAT META DATA.  IT'S NOT USER DATA, BUT IT'S

11:09AM  2  JUST SORT OF SYSTEM DATA ABOUT THAT DRIVE'S PURPOSE.

11:09AM  3  Q.   AND YOU WERE SAYING A BIT MORE ABOUT THE PROCESS OF

11:09AM  4  REASSEMBLING THE CONSTITUENT PARTS AND MAKING SURE THEY ALL

11:09AM  5  WENT IN THE RIGHT ORDER.  COULD YOU SAY MORE ABOUT THAT,

11:09AM  6  PLEASE.

11:09AM  7  A.   SURE.  SO THERE -- ACCORDING TO THE INVENTORY, THERE WERE

11:09AM  8  SERVER DISK DRIVES, AND THOSE WERE A PARTICULAR SIZE AND SPEED,

11:09AM  9  AND THEY WOULD HAVE BEEN IN A PARTICULAR CADDY FROM THE

11:09AM  10  MANUFACTURER THAT WOULD HAVE BEEN DISTINCT AND MATCHED UP WITH

11:09AM  11  THE EQUIPMENT.

11:09AM  12      AND THEN THE ACTUAL DATA STORAGE WOULD HAVE BEEN ON THE

11:10AM  13  DISK THAT WENT INTO THAT DISK ARRAY, AND THOSE WERE A DIFFERENT

11:10AM  14  TYPE OF EQUIPMENT, STILL FROM THE SAME COMPUTER MANUFACTURER,

11:10AM  15  AND THEY WOULD HAVE BEEN DIFFERENT CADDIES AND DIFFERENT SPEED

11:10AM  16  AND SIZES AND DIFFERENT TYPES OF DISK DRIVES.

11:10AM  17      AND SO ALTOGETHER YOU COULD THEN SAY, OKAY, THESE ARE

11:10AM  18  SERVERS, THESE ARE DATA DRIVES, AND YOU COULD PLUG THEM INTO

11:10AM  19  THE DATA ARRAY OR INTO THE SERVER ARRAY.

11:10AM  20  Q.   OKAY. AND, MR. SONNIER, THE OTHER THOUGHT, WHAT ABOUT

11:10AM  21  THIS MISSING PASSWORD ISSUE?  WOULD THAT AFFECT YOUR ABILITY TO

11:10AM  22  RECOVER THE DATA?

11:10AM  23  A.   NO.  AS I KIND OF MENTIONED EARLIER, THE PASSWORD ISSUE IS

11:10AM  24  REALLY RELATED TO RECOVERING OF THE BACKUP OF THE SQL SERVER,

11:10AM  25  AND IT DOESN'T HAVE ANY ROLE IN THIS PROCESS.

11:10AM   1    Q.   WHAT ABOUT OTHER FORMS OF ENCRYPTION THAT MAY BE IN PLACE?

11:10AM   2    A.   ACCORDING TO THE MATERIALS I REVIEWED, THE DATABASE ITSELF

11:11AM   3    WAS ENCRYPTED AT REST, AND SO THERE ARE ENCRYPTION KEYS, BUT

11:11AM   4    ALL OF THOSE KEYS WERE ON THE PRODUCTION SYSTEM ON THE SERVER

11:11AM   5    DISK DRIVES THAT I'VE JUST MENTIONED.

11:11AM   6    Q.   AND IS THAT CONSISTENT WITH YOUR UNDERSTANDING OF A

11:11AM   7    TYPICAL ARCHITECTURE FOR A SYSTEM LIKE THIS?

11:11AM   8    A.   YEP, IT'S STRAIGHT DOWN MICROSOFT VENDORS TECHNICAL

11:11AM   9    DOCUMENTATION.  THAT'S EXACTLY HOW IT WOULD WORK.

11:11AM   10   Q.   OKAY.  BUT IN FAIRNESS, MR. SONNIER, YOU NEVER EXAMINED --

11:11AM   11   LET ME ASK IT THIS WAY:  DID YOU EVER EXAMINE THE PHYSICAL LIS

11:11AM   12   PRODUCTION?

11:11AM   13   A.   NO, I ONLY EXAMINED CERTAIN DOCUMENTS.

11:11AM   14   Q.   HOW THEN CAN YOU BE CONFIDENT THAT THERE'S NO OTHER

11:11AM   15   SOFTWARE OR ENCRYPTION THAT WOULD PREVENT OUR ABILITY TO ACCESS

11:11AM   16   THIS DATA?

11:11AM   17   A.   BECAUSE WE'RE USING STANDARD MICROSOFT SQL SERVER, THERE'S

11:12AM   18   REALLY -- AND A PARTICULAR FEATURE OF THAT STANDARD SOFTWARE,

11:12AM   19   THERE'S REALLY ONLY ONE WAY THAT THAT STANDARD FEATURE CAN

11:12AM   20   WORK.

11:12AM   21   Q.   AND WHAT ABOUT MODIFICATIONS TO, SAY, THE DEVELOPMENT

11:12AM   22   SOFTWARE FOR THE LIS?  HOW WOULD THAT AFFECT YOUR OPINIONS?

11:12AM   23   A.   SO THE DEVELOPMENT SOFTWARE IS REALLY INDEPENDENT OF THE

11:12AM   24   STANDARD SQL SERVER FOR MICROSOFT.

11:12AM   25        SO IT WAS -- THE TERM WE USE WAS THE APPLICATION PROGRAM,

SONNIER DIRECT BY MR. BRECHER

11:12AM  1    AND IT WOULD HAVE USED THE DATABASE, BUT IT DOESN'T REALLY

11:12AM  2    CHANGE THE OPERATIONS OF THE SQL SERVER.

11:12AM  3        IT DEPENDS ON THOSE OPERATIONS, BUT IT DOESN'T, IT DOESN'T

11:12AM  4    MODIFY THEM, CERTAINLY NOT AT THE DATA STORAGE ENCRYPTION

11:12AM  5    LEVEL.

11:12AM  6    Q.   AND IS THAT CONCLUSION BASED ON YOUR TRAINING AND

11:12AM  7    EXPERIENCE?

11:12AM  8    A.   ABSOLUTELY.

11:12AM  9    Q.   IS IT ALSO CONSISTENT WITH THE UNDERLYING MATERIALS THAT

11:12AM  10   YOU'VE REVIEWED IN THIS CASE?

11:12AM  11   A.   YES, IT IS.

11:12AM  12   Q.   I'M GOING TO ASK YOU TO TURN IN YOUR BINDER TO ANOTHER

11:13AM  13   TAB.  THIS ONE IS MARKED 20832.  LET ME KNOW WHEN YOU'RE THERE,

11:13AM  14   SIR.

11:13AM  15   A.   20832.  OKAY.

11:13AM  16   Q.   ARE YOU THERE, MR. SONNIER?

11:13AM  17   A.   YES, I AM.

11:13AM  18   Q.   GREAT.

11:13AM  19       AND I'M GOING TO ASK YOU TO LOOK AT PAGE 2 OF THAT

11:13AM  20   EXHIBIT.

11:13AM  21       DO YOU SEE THAT THIS IS AN EMAIL SENT OCTOBER 5TH, 2018?

11:13AM  22   A.   YES.

11:13AM  23   Q.   AND DO YOU SEE THAT THE SENDER IS SOMEONE NAMED

11:13AM  24   SUTTON PEIRCE?

11:13AM  25   A.   YES.

11:13AM    1    Q.   AND THE RECIPIENTS ARE ON THE TO LINE, JEFF SCHENK,

11:13AM    2    ROBERT LEACH, AND JOHN BOSTIC?

11:13AM    3    A.   YES.

11:13AM    4    Q.   AND DO YOU UNDERSTAND THOSE TO BE THE PROSECUTORS IN THIS

11:13AM    5    CASE?

11:13AM    6    A.   THAT'S MY UNDERSTANDING.

11:13AM    7    Q.   OKAY.

11:13AM    8         YOUR HONOR, THE DEFENSE OFFERS EXHIBIT 20832 SOLELY FOR

11:13AM    9    NOTICE TO THE GOVERNMENT.

11:14AM   10              MR. BOSTIC:  401, YOUR HONOR.

11:14AM   11              THE COURT:  EACH PAGE?  WHAT ARE YOU OFFERING?

11:14AM   12              MR. BRECHER:  PAGES 2 THROUGH 4.

11:14AM   13              THE COURT:  AND THIS IS BEING OFFERED NOT FOR THE

11:14AM   14    TRUTH OF THE MATTER ASSERTED?

11:14AM   15              MR. BRECHER:  THAT'S CORRECT, YOUR HONOR, SOLELY AS

11:14AM   16    NOTICE TO THE GOVERNMENT.

11:14AM   17              THE COURT:  AS TO WHAT ISSUE?

11:14AM   18              MR. BRECHER:  AS TO THE METHODS OF RECOVERING --

11:14AM   19    POSSIBLE METHODS FOR RECOVERING THE LIS SYSTEM.

11:14AM   20              THE COURT:  AS TO POSSIBLE ROUTES FORWARD AS

11:14AM   21    INDICATED IN THE DOCUMENT?

11:14AM   22              MR. BRECHER:  THAT'S RIGHT, YOUR HONOR.

11:14AM   23              THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, THIS

11:14AM   24    DOCUMENT WILL BE ADMITTED NOT FOR THE TRUTH OF THE MATTER

11:14AM   25    ASSERTED IN THE EMAIL, BUT ONLY AS TO THE ISSUE OF NOTICE IN

SONNIER DIRECT BY MR. BRECHER

11:14AM 1      REGARDS TO POSSIBLE ROUTES FORWARD.

11:14AM 2              THE OTHER PAGES, PAGE 3 AND 4, ARE YOU OFFERING THOSE FOR

11:14AM 3      THE TRUTH OF THE MATTER ASSERTED?

11:14AM 4              MR. BRECHER:  NO, YOUR HONOR, JUST AS CONTEXT FOR

11:14AM 5      THE NOTICE TO SHOW -- I THINK IT'S THE ATTACHMENT TO THIS

11:15AM 6      EMAIL.

11:15AM 7              THE COURT:  ALL RIGHT.  SO PAGES 3 AND 4 LIKEWISE,

11:15AM 8      LADIES AND GENTLEMEN, ARE NOT OFFERED FOR THE TRUTH OF THE

11:15AM 9      MATTER ASSERTED.  THERE MAY BE TESTIMONY REGARDING THOSE PAGES,

11:15AM 10     BUT IT IS NOT RELATED TO THE TRUTH.  IT ONLY GOES, AS

11:15AM 11     MR. BRECHER SAYS, FOR CONTEXTUAL PURPOSES ONLY, AND IT WILL BE

11:15AM 12     ADMITTED WITH THOSE LIMITATIONS.

11:15AM 13             IT'S ADMITTED, AND IT MAY BE PUBLISHED.

11:15AM 14             (DEFENDANT'S EXHIBIT 20832 WAS RECEIVED IN EVIDENCE.)

11:15AM 15             MR. BRECHER:  THANK YOU, YOUR HONOR.

11:15AM 16             SO, MR. ALLEN, LET'S START ON THIS FIRST PAGE.

11:15AM 17     Q.   DO YOU SEE UP AT THE HEADING UNDER ATTACHMENTS IT SAYS

11:15AM 18     THERANOSSEAGATEDRIVE.PDF?

11:15AM 19     A.   YES.

11:15AM 20     Q.   OKAY.  AND LET ME ASK YOU TO TURN VERY BRIEFLY TO PAGE 4

11:15AM 21     OF THE DOCUMENT.

11:15AM 22     A.   UH-HUH.

11:15AM 23     Q.   AND IT WILL BE ON YOUR SCREEN AS WELL.  DO YOU RECOGNIZE

11:15AM 24     THIS?  HAVE YOU SEEN IT YOURSELF?

11:15AM 25     A.   WHEN I DID MY WORK WITH THE USB DRIVE AND RAN THE

11:16AM  1    DECRYPTION THE PASSWORD, THIS IS THE EXACT SAME FOLDER LISTING

11:16AM  2    THAT I SAW.

11:16AM  3    Q.   AND WHEN YOU SAY "THE USB DRIVE," YOU'RE REFERRING TO THIS

11:16AM  4    ENCRYPTED COPY OF THE BACKUP?

11:16AM  5    A.   YES.  IT WAS ONE OF THE ENCRYPTED COPIES THAT WE SPOKE OF

11:16AM  6    EARLIER.

11:16AM  7    Q.   AND IS THAT WHAT YOU UNDERSTAND TO BE THE SUBJECT OF THIS

11:16AM  8    EMAIL?

11:16AM  9    A.   YES.

11:16AM  10   Q.   OKAY.  LET'S GO BACK, MR. ALLEN, TO PAGE 2 ON THE SCREEN.

11:16AM  11        STARTING AT THE TOP, IT SAYS, "HELLO TEAM,

11:16AM  12        "I'M WRITING TO OUTLINE THE ISSUES SURROUNDING THIS DRIVE

11:16AM  13   AND TO PROPOSE SOME POSSIBLE PATHS TOWARD RESOLUTION."

11:16AM  14        DO YOU SEE THAT?

11:16AM  15   A.   YES.

11:16AM  16   Q.   AND THEN UNDER THE FIRST BOLDED HEADING, WHAT THE DRIVE

11:16AM  17   CONTAINS, YOU SEE THE FIRST BULLET, "IN THIS CIRCUMSTANCE IT'S

11:16AM  18   MOST LIKELY THAT THE .BAK EXTENSION INDICATES THAT THESE ARE

11:17AM  19   BACKUP FILES FOR A MICROSOFT SQL DATABASE."

11:17AM  20        DID I READ THAT RIGHT?

11:17AM  21   A.   YES.

11:17AM  22   Q.   OKAY.  AND THEN THE NEXT BULLET DOWN, "IF THAT'S CORRECT

11:17AM  23   THESE FILES WOULD BE USED TO RESTORE DATABASE BACKUPS ON A

11:17AM  24   MICROSOFT SQL SERVER."

11:17AM  25        DO YOU SEE THAT?

11:17AM  1     A.   YES.

11:17AM  2     Q.   OKAY.  LET'S LOOK DOWN TO THE THIRD AND FINAL BULLET

11:17AM  3     HEADING, "POSSIBLE ROUTES FORWARD."

11:17AM  4          ARE YOU THERE WITH ME, MR. SONNIER?

11:17AM  5     A.   YES.

11:17AM  6     Q.   AND THE FIRST BULLET SAYS, "PUSH BACK ON DEFENSE AND SEE

11:17AM  7     IF THEY CAN BE PERSUADED TO PRODUCE THIS IN A MANNER THAT CAN

11:17AM  8     BE VIEWED AND PROCESSED IN A STANDARD WAY RATHER THAN IN AN

11:17AM  9     UNSPECIFIED ARCHIVE FORMAT THAT WE CAN'T ACCESS."

11:17AM  10          DO YOU SEE THAT?

11:17AM  11    A.   YES.

11:17AM  12    Q.   AND THEN IT LOOKS LIKE THERE'S A SUBBULLET UNDER THAT.

11:17AM  13    "IF THEY CAN'T FIGURE OUT HOW TO PRODUCE THE CONTENTS OF THEIR

11:17AM  14    DATABASE IN A LEGITIMATE MANNER, PERHAPS THEY'LL CONSIDER

11:17AM  15    HANDING OVER THEIR PHYSICAL SQL SERVER AND WE CAN SET IT UP IN

11:18AM  16    A WORKROOM?"

11:18AM  17          DO YOU SEE THAT?

11:18AM  18    A.   YES.

11:18AM  19    Q.   AND THEN THE NEXT BULLET DOWN, "CHECK WITH THE FBI (OR

11:18AM  20    OTHER AGENCIES) TO SEE IF THEY HAVE A RESOURCE THAT CAN PROCESS

11:18AM  21    LARGE SQL DATABASE ARCHIVES."

11:18AM  22    A.   YES.

11:18AM  23    Q.   AND THEN THE FINAL MAIN BULLET, "IDENTIFY A VENDOR WHO

11:18AM  24    COULD PROCESS THE MATERIAL."

11:18AM  25          DO YOU SEE THAT?

11:18AM  1    A.   YES.

11:18AM  2    Q.   AND LET'S START WITH THAT "IDENTIFY A VENDOR" BULLET.

11:18AM  3         DO YOU AGREE WITH THAT AS A POSSIBLE ROUTE TO RECOVERING

11:18AM  4    THIS DATA?

11:18AM  5    A.   SURE, THAT'S REASONABLE.

11:18AM  6    Q.   ARE YOU SUCH A VENDOR?

11:18AM  7    A.   YES, I AM.

11:18AM  8    Q.   OKAY.  GIVEN THE CIRCUMSTANCES AS YOU UNDERSTOOD THEM,

11:18AM  9    WHAT KIND OF ADVICE WOULD YOU HAVE GIVEN IF YOU HAD BEEN

11:18AM  10   CONSULTED AT THIS TIME?

11:18AM  11           MR. BOSTIC:  RELEVANCE.  CALLS FOR SPECULATION.

11:18AM  12           THE COURT:  SUSTAINED.

11:18AM  13           MR. BRECHER:  ALL RIGHT.

11:18AM  14   Q.   MR. SONNIER, LET'S LOOK AT THE FIRST BULLET, "PUSH BACK ON

11:19AM  15   DEFENSE," AND THEN THE SUBBULLET AFTER THAT.

11:19AM  16        IF THEY CAN'T FIGURE OUT HOW TO PRODUCE THE CONTENTS OF

11:19AM  17   THEIR DATABASE, PERHAPS THEY CAN FIGURE OUT HOW TO HANDLE THEIR

11:19AM  18   SQL SERVER AND WE CAN SET IT UP IN A WORKROOM.

11:19AM  19        WOULD THAT HAVE WORKED?

11:19AM  20   A.   YES, THAT WOULD HAVE WORKED.

11:19AM  21   Q.   AND IS THAT KIND OF WHAT WE HAVE BEEN TALKING ABOUT HERE?

11:19AM  22   A.   YES.

11:19AM  23   Q.   AND SO, MR. SONNIER, KIND OF BOTTOM LINE, WHAT IS YOUR

11:19AM  24   CONCLUSION ABOUT THE RECOVERABILITY OF THE LIS SYSTEM IN THIS

11:19AM  25   2018 TIME PERIOD?

11:19AM 1    A.   THAT IT WOULD HAVE BEEN POSSIBLE TO GET PRODUCTION TO THE

11:19AM 2    SQL SERVER AND THEN EXTRACT THE DATA FROM THAT.

11:19AM 3    Q.   AND WHAT EFFECT, IF ANY, DOES THE DISASSEMBLY OF THE

11:19AM 4    SYSTEM HAVE ON YOUR OPINION?

11:19AM 5    A.   IT DOESN'T CHANGE IT.  IT MIGHT HAVE MADE IT A LITTLE MORE

11:19AM 6    TIME CONSUMING BECAUSE YOU HAVE TO PUT THE PIECES BACK

11:19AM 7    TOGETHER.

11:19AM 8    Q.   THANK YOU.

11:19AM 9         MAY I HAVE A MOMENT, YOUR HONOR?

11:19AM 10             THE COURT:  YES.

11:20AM 11        (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

11:20AM 12             MR. BRECHER:  THANK YOU VERY MUCH, MR. SONNIER.

11:20AM 13        NO FURTHER QUESTIONS.

11:20AM 14             THE COURT:  CROSS-EXAMINATION?

11:20AM 15             MR. BOSTIC:  YES, YOUR HONOR.

11:20AM 16                       **CROSS-EXAMINATION**

11:20AM 17   BY MR. BOSTIC:

11:20AM 18   Q.   GOOD MORNING, MR. SONNIER.  I'M JOHN BOSTIC AND I

11:21AM 19   REPRESENT THE UNITED STATES IN THIS CASE.

11:21AM 20   A.   NICE TO MEET YOU.

11:21AM 21   Q.   I HAVE A FEW QUESTIONS FOR YOU FOLLOWING UP ON THE TOPICS

11:21AM 22   THAT YOU DISCUSSED IN YOUR DIRECT EXAMINATION.

11:21AM 23        I'D LIKE TO START WITH YOUR STATUS AT A RETAINED EXPERT.

11:21AM 24   LET'S TALK ABOUT THAT.

11:21AM 25        YOU'RE HERE TODAY BECAUSE YOU WERE HIRED BY THE

11:21AM  1    DEFENDANT'S LAWYERS TO DELIVER AN OPINION ABOUT SQL DATABASES;

11:21AM  2    IS THAT CORRECT?

11:21AM  3    A.   YES.

11:21AM  4    Q.   AND BEFORE BEING CONTACTED BY THE DEFENSE IN THIS CASE,

11:21AM  5    DID YOU HAVE ANY KNOWLEDGE ABOUT THE TECHNICAL SYSTEMS

11:21AM  6    OPERATING AT THERANOS?

11:21AM  7    A.   NO.

11:21AM  8    Q.   DID YOU EVEN KNOW, BEFORE YOU SPOKE TO THE DEFENSE

11:21AM  9    LAWYERS, THAT THERANOS HAD A SQL DATABASE AT ALL?

11:21AM  10   A.   NO, I DID NOT.

11:21AM  11   Q.   THE FACT THAT YOU'RE HIRED AS AN EXPERT WITNESS MEANS

11:21AM  12   THAT, UNLIKE A NORMAL FACT WITNESS, YOU'RE PAID FOR YOUR

11:21AM  13   SERVICES; IS THAT RIGHT?

11:21AM  14   A.   YES.

11:21AM  15   Q.   AND YOU TESTIFIED ON DIRECT THAT YOU'RE COMPENSATED AT A

11:21AM  16   RATE OF $300 PER HOUR FOR YOUR WORK ON THIS CASE?

11:22AM  17   A.   THAT'S WHAT MY TIME IS BILLED AT, YES.

11:22AM  18   Q.   AND WHEN WERE YOU FIRST RETAINED BY THE DEFENSE TO WORK ON

11:22AM  19   THIS MATTER?

11:22AM  20   A.   SEPTEMBER LAST YEAR, 2021.

11:22AM  21   Q.   AND SINCE THEN, CAN YOU ESTIMATE FOR US EITHER THE NUMBER

11:22AM  22   OF TOTAL HOURS THAT YOU SPENT WORKING ON THIS MATTER, OR THE

11:22AM  23   TOTAL AMOUNT THAT YOU BILLED, WHICHEVER IS EASIER?

11:22AM  24   A.   I THINK SOMEWHERE BETWEEN 30 AND 40 HOURS, OR AROUND THAT.

11:22AM  25   Q.   AND 40 HOURS WOULD EQUATE TO $12,000 IN BILLING FOR THIS

11:22AM 1     MATTER.  DOES THAT SOUND RIGHT TO YOU APPROXIMATELY?

11:22AM 2     A.   YEAH.  SO I THINK THAT I MENTIONED THAT WHAT I'M BILLING,

11:22AM 3     MY COMPENSATION IS ABOUT HALF OF THAT.

11:22AM 4          BUT, YES, I THINK THE MATH IS CORRECT.

11:22AM 5     Q.   SO THAT WOULD MAKE YOUR COMPENSATION APPROXIMATELY $6,000

11:22AM 6     SO FAR FOR THIS CASE?

11:22AM 7     A.   SOMETHING LIKE THAT, YES.

11:22AM 8     Q.   DO YOU HAVE AN UNDERSTANDING THAT THE DEFENSE LAWYERS IN

11:22AM 9     THIS CASE VIEW YOUR OPINION AS HELPFUL TO THEIR ARGUMENTS IN

11:23AM 10    THE CASE?

11:23AM 11              MR. BRECHER:  OBJECTION.  401, YOUR HONOR.

11:23AM 12              THE COURT:  SUSTAINED.

11:23AM 13    BY MR. BOSTIC:

11:23AM 14    Q.   MR. SONNIER, DO YOU HAVE AN UNDERSTANDING AS TO WHETHER

11:23AM 15    YOU VIEW YOUR OPINION AS HELPFUL TO THE DEFENSE IN THE CASE?

11:23AM 16         AND, YOUR HONOR, THIS GOES TO --

11:23AM 17              MR. BRECHER:  OBJECTION.  401.

11:23AM 18              THE COURT:  YOU CAN ANSWER THE QUESTION.

11:23AM 19              THE WITNESS:  I'M NOT EXACTLY SURE IF IT'S HELPFUL

11:23AM 20    OR NOT.

11:23AM 21    BY MR. BOSTIC:

11:23AM 22    Q.   AS PART OF THE MATERIALS THAT THE DEFENSE PROVIDED YOU,

11:23AM 23    THEY INCLUDED A NUMBER OF FILINGS MADE BY THE DEFENDANTS IN

11:23AM 24    THIS CASE; IS THAT RIGHT?

11:23AM 25    A.   YES.

11:23AM  1    Q.   AND THOSE FILINGS EXPLAIN HOW YOUR OPINION FITS INTO THEIR

11:23AM  2    ARGUMENTS IN THE CASE; ISN'T THAT RIGHT?

11:23AM  3    A.   YEAH, I THINK I'VE SEEN SOME FILINGS TO THAT EFFECT.

11:23AM  4    Q.   IS IT YOUR TESTIMONY THAT EVEN AFTER REVIEWING THOSE

11:24AM  5    FILINGS, YOU DON'T HAVE AN UNDERSTANDING, SITTING HERE TODAY,

11:24AM  6    AS TO WHETHER OR NOT YOUR OPINION IS HELPFUL TO THE DEFENSE?

11:24AM  7    A.   FROM THE FILINGS I WOULD ASSUME THAT THEY'RE MAKING THE

11:24AM  8    ARGUMENTS BECAUSE THEY THINK IT'S HELPFUL.

11:24AM  9    Q.   GOING BACK TO THE SUBJECT OF YOUR COMPENSATION, ARE YOU

11:24AM  10   BEING COMPENSATED FOR YOUR TIME IN TESTIFYING TODAY?

11:24AM  11   A.   YES, I AM.

11:24AM  12   Q.   AT THE SAME RATE WE DISCUSSED BEFORE?

11:24AM  13   A.   YES, IT'S THE SAME RATE.

11:24AM  14   Q.   WOULD YOU EXPECT TO BE TESTIFYING IN THIS CASE CALLED BY

11:24AM  15   THE DEFENSE IF YOUR OPINION WAS ULTIMATELY NOT HELPFUL TO THE

11:24AM  16   DEFENSE?

11:24AM  17        MR. BRECHER:  OBJECTION.  CALLS FOR SPECULATION.

11:24AM  18        THE COURT:  IS THIS RELATED TO HIS PRACTICE?

11:24AM  19        MR. BOSTIC:  YES, YOUR HONOR.  I'M ASKING SOLELY FOR

11:24AM  20   HIS UNDERSTANDING, AND THIS IS RELEVANT FOR BIAS.

11:24AM  21        THE COURT:  IT IS.

11:24AM  22   YOU MAY ANSWER THE QUESTION.

11:24AM  23        THE WITNESS:  SO JUST GENERALLY, I WOULD ASSUME THAT

11:24AM  24   I WOULDN'T BE TESTIFYING IF SOMEHOW MY TESTIMONY WOULDN'T BE

11:25AM  25   HELPFUL.

11:25AM   1    BY MR. BOSTIC:

11:25AM   2    Q.   AND SPECIFICALLY WHEN YOU SAY, "HELPFUL," THAT MEANS

11:25AM   3    HELPFUL TO THE PARTY WHO HIRED YOU AND WHO IS PAYING YOU;

11:25AM   4    RIGHT?

11:25AM   5    A.   YEAH, I SUPPOSE SO.

11:25AM   6    Q.   GENERALLY SPEAKING, YOUR OPINION RELATES TO STEPS THAT YOU

11:25AM   7    BELIEVE THE GOVERNMENT COULD HAVE TAKEN TO OBTAIN ACCESS TO THE

11:25AM   8    INFORMATION IN THE THERANOS LIS DATABASE; IS THAT FAIR TO SAY?

11:25AM   9    A.   IT WASN'T LIMITED TO JUST THE GOVERNMENT.  ANYONE THAT WAS

11:25AM  10    INTERESTED IN RECOVERING THIS COULD HAVE DONE THE STEPS.

11:25AM  11    Q.   OKAY.  AND IN PREPARING THAT OPINION, YOU REVIEWED A RANGE

11:25AM  12    OF MATERIALS THAT THE DEFENSE LAWYERS SUPPLIED YOU WITH; IS

11:25AM  13    THAT RIGHT?

11:25AM  14    A.   THAT'S CORRECT.

11:25AM  15    Q.   IN PREPARING YOUR TESTIMONY AND IN REACHING YOUR OPINION,

11:25AM  16    DID YOU COME TO UNDERSTAND THE GOVERNMENT MADE MULTIPLE

11:25AM  17    REQUESTS OF THERANOS FOR THE INFORMATION ON THE LIS DATABASE?

11:25AM  18    A.   SO IN THE MATERIALS THAT I REVIEWED, IT SEEMED LIKE THERE

11:26AM  19    WERE MANY REQUESTS AND FOLLOW-UP REQUESTS.  EVEN AFTER THERANOS

11:26AM  20    SORT OF WENT AWAY, THERE WERE FOLLOW-UP REQUESTS WITH THE

11:26AM  21    ASSIGNEE OF THOSE ASSETS.

11:26AM  22    Q.   OKAY.

11:26AM  23         MAY I APPROACH, YOUR HONOR?

11:26AM  24             THE COURT:  YES.

11:26AM  25             MR. BOSTIC:  (HANDING.)

SONNIER CROSS BY MR. BOSTIC

11:26AM 1   Q.   MR. SONNIER, I'VE JUST HANDED YOU SOME DOCUMENTS, AND I'D

11:26AM 2   LIKE TO GO THROUGH SOME OF THEM WITH YOU.

11:26AM 3       CAN YOU START BY TURNING TO TAB 5915?  AND THAT WILL BE IN

11:26AM 4   THE FIRST BINDER?

11:26AM 5   A.   OKAY.  SO VOLUME 1?

11:26AM 6   Q.   UH-HUH.  IT'S 5915.

11:26AM 7   A.   15?

11:26AM 8   Q.   5915, UH-HUH.

11:26AM 9   A.   OKAY.

11:27AM 10  Q.   AND LET ME KNOW WHEN YOU'RE THERE.

11:27AM 11  A.   YES, I'M HERE.

11:27AM 12  Q.   AT 5915, DO YOU SEE A COVER LETTER AND A SUBPOENA SENT TO

11:27AM 13  THERANOS IN FEBRUARY OF 2018?

11:27AM 14  A.   YES, I SEE THAT.

11:27AM 15      MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5915.

11:27AM 16      MR. BRECHER:  OBJECTION.  HEARSAY AND 403,

11:27AM 17  YOUR HONOR.  AND FOUNDATION AS TO THIS WITNESS.  I APOLOGIZE.

11:27AM 18      MR. BOSTIC:  SO, YOUR HONOR, THIS IS NOT FOR THE

11:27AM 19  TRUTH.  SO THIS IS A NONHEARSAY USE.

11:27AM 20      THIS WITNESS IS TESTIFYING ABOUT STEPS THAT THE GOVERNMENT

11:27AM 21  OR ANYONE COULD HAVE TAKEN TO OBTAIN THE LIS ACCORDING TO THIS

11:27AM 22  WITNESS.

11:27AM 23      IT IS RELEVANT WHAT STEPS WERE ACTUALLY TAKEN TO OBTAIN

11:27AM 24  THE LIS I WOULD SAY HIS RESPONSE TO THE DIRECT AND SATISFIES

11:27AM 25  RULE 403 FOR THAT REASON.

SONNIER CROSS BY MR. BOSTIC                                    6753

11:28AM   1              THE COURT:  YOU'RE OFFERING THE ENTIRETY OF THE

11:28AM   2    DOCUMENT, INCLUDING THE SUBPOENA?

11:28AM   3              MR. BOSTIC:  YES, YOUR HONOR.

11:28AM   4              THE COURT:  AND THE SUBPOENA IS NOT BEING OFFERED,

11:28AM   5    OR ANY OF THIS -- NONE OF THIS, I SHOULD SAY, IS BEING OFFERED

11:28AM   6    FOR THE TRUTH OF THE MATTER ASSERTED.

11:28AM   7              MR. BOSTIC:  CORRECT, YOUR HONOR.

11:28AM   8              THE COURT:  BUT TO INFORM AS TO --

11:28AM   9              MR. BOSTIC:  AS TO THE FACT THAT THE SUBPOENA WAS

11:28AM  10    SENT ON THE DATE INDICATED SHOWING EFFORTS THAT THE GOVERNMENT

11:28AM  11    TOOK TO OBTAIN THIS INFORMATION.

11:28AM  12              MR. BRECHER:  YOUR HONOR, I STILL HAVE SOME CONCERNS

11:28AM  13    ABOUT THE FOUNDATION OF THIS WITNESS.  THE GOVERNMENT

11:28AM  14    REPEATEDLY OBJECTED ON THAT BASIS DURING DIRECT.

11:28AM  15         HOW DOES MR. SONNIER KNOW WHAT THIS DOCUMENT IS?

11:28AM  16              THE COURT:  DO YOU WANT TO LAY A FOUNDATION IF YOU

11:28AM  17    CAN, OR ASK SOME ADDITIONAL QUESTIONS ABOUT THOSE?

11:28AM  18         I UNDERSTAND YOUR -- THE REASON FOR BRINGING THIS, AND I

11:28AM  19    THINK THERE IS SOME RELEVANCE BASED ON THE TESTIMONY, THE

11:28AM  20    DIRECT TESTIMONY ABOUT THIS.

11:28AM  21              MR. BRECHER:  YES, YOUR HONOR.  RELEVANCE IS NOT OUR

11:28AM  22    OBJECTION.  IT'S FOUNDATION AT THIS POINT.  THANK YOU.

11:28AM  23              MR. BOSTIC:  SO, YOUR HONOR, WE MIGHT BENEFIT FROM A

11:28AM  24    BRIEF SIDE-BAR DISCUSSION.  THE LIMITATION THAT THE DEFENSE IS

11:29AM  25    ADVOCATING FOR DIDN'T SEEM TO APPLY DURING THE DIRECT PORTION

11:29AM  1    OF THE EXAM.

11:29AM  2            THE COURT:  I'M GOING TO ADMIT THIS, NOT FOR THE

11:29AM  3    TRUTH OF THE MATTER ASSERTED, LADIES AND GENTLEMEN, BUT THIS

11:29AM  4    IS -- THIS WAS TOUCHED ON DURING THE DIRECT, THE BACKGROUND

11:29AM  5    REGARDING THE LIS AND THE INFORMATION IN IT.  THIS PROVIDES

11:29AM  6    CONTEXT FOR THAT POTENTIALLY.

11:29AM  7        SO IT'S ADMITTED, AND IT MAY BE PUBLISHED, AGAIN, NOT FOR

11:29AM  8    THE TRUTH OF THE MATTER ASSERTED IN THE DOCUMENT.

11:29AM  9        (GOVERNMENT'S EXHIBIT 5915 WAS RECEIVED IN EVIDENCE.)

11:29AM  10   BY MR. BOSTIC:

11:29AM  11   Q.   SO IN A MOMENT, MR. SONNIER, YOU'LL SEE EXHIBIT 5915 ON

11:29AM  12   THE SCREEN IN FRONT OF YOU.

11:29AM  13       TO START, DO YOU SEE THAT WE'RE LOOKING AT A COVER LETTER

11:29AM  14   DATED IN MID-FEBRUARY 2018?

11:29AM  15   A.   YES.

11:29AM  16   Q.   AND THAT'S ABOUT SIX MONTHS BEFORE THE AUGUST 2018 TIME

11:29AM  17   PERIOD THAT YOU WERE DISCUSSING ON DIRECT; IS THAT RIGHT?

11:29AM  18   A.   YES.

11:29AM  19   Q.   AND DO YOU SEE THAT THIS IS A LETTER ADDRESSED TO THERANOS

11:30AM  20   INCORPORATED, CUSTODIAN OF RECORDS?

11:30AM  21   A.   YES.

11:30AM  22   Q.   AND THE LETTER INFORMS THERANOS THAT IT HAS RECEIVED A

11:30AM  23   GRAND JURY SUBPOENA IN FURTHERANCE OF AN INVESTIGATION.

11:30AM  24       DO YOU SEE THAT?

11:30AM  25   A.   YES.

SONNIER CROSS BY MR. BOSTIC

11:30AM  1    Q.   LET'S TURN TO PAGE 2 OF THIS EXHIBIT.  AND DO YOU SEE THAT

11:30AM  2    NOW WE'RE LOOKING AT THE SUBPOENA ITSELF?

11:30AM  3    A.   YES.

11:30AM  4    Q.   AND THE SUBPOENA IS DATED FEBRUARY 13TH, AND IT'S SIGNED

11:30AM  5    BY JEFF SCHENK, WHO YOU UNDERSTAND TO BE ONE OF THE PROSECUTORS

11:30AM  6    IN THE CASE YOU TESTIFIED?

11:30AM  7    A.   YES.

11:30AM  8    Q.   LET'S LOOK NOW AT PAGE 5 OF THE EXHIBIT.

11:30AM  9         DO YOU SEE HERE THAT THERE ARE SOME INSTRUCTIONS FOR

11:30AM  10   COMPLYING WITH THE SUBPOENA?

11:30AM  11   A.   THERE ARE INSTRUCTIONS TITLES HERE.

11:30AM  12   Q.   AND UNDER THE INSTRUCTIONS, PART A, IT INFORMS THERANOS

11:31AM  13   THAT IT'S TO PROVIDE DOCUMENTS FITTING BETWEEN TWO DATES, AND

11:31AM  14   THAT'S JULY 1ST, 2014, AND SEPTEMBER 1ST, 2014.

11:31AM  15        DO YOU SEE THAT?

11:31AM  16   A.   YES.

11:31AM  17   Q.   AND THEN LET'S LOOK AT THE DOCUMENTS THAT ARE ACTUALLY

11:31AM  18   BEING REQUIRED ON PAGE 12.

11:31AM  19        DO YOU SEE UNDER THERE, THERE'S A TITLE HEADING DOCUMENTS

11:31AM  20   TO BE PRODUCED?

11:31AM  21   A.   YES, I SEE THAT HEADING.

11:31AM  22   Q.   AND UNDER DOCUMENTS TO BE PRODUCED, THERANOS IS INSTRUCTED

11:31AM  23   UNDER THE SUBPOENA TO PRODUCE "THE ENTIRETY OF ALL BLOOD TEST

11:31AM  24   REPORTS, EXCEPT AS DESCRIBED BELOW."

11:31AM  25        DO YOU SEE THAT?

11:31AM   1      A.    YES.

11:31AM   2      Q.    OKAY.  WE CAN PUT THAT ASIDE.

11:31AM   3            DO YOU KNOW ANYTHING ABOUT WHAT THERANOS PRODUCED TO THE

11:32AM   4      GOVERNMENT IN RESPONSE TO THAT FEBRUARY SUBPOENA FOR LAB

11:32AM   5      REPORTS?

11:32AM   6      A.    I HAVE SEEN SOME MATERIALS THAT INDICATE THAT I THINK THAT

11:32AM   7      THE THERANOS ATTORNEY WAS REPRESENTING THAT THEY HAD PRODUCED

11:32AM   8      EVERYTHING ASKED FOR BY THE GOVERNMENT.

11:32AM   9            I DON'T KNOW THAT I CAN SAY IT WAS SPECIFIC FOR THIS

11:32AM  10      SUBPOENA, BUT THE MATERIAL THAT I SAW SEEMED TO BE ASKING FOR

11:32AM  11      THE SAME SET OF THINGS.

11:32AM  12      Q.    AMONG THE MATERIALS THAT THE DEFENSE LAWYERS PROVIDED YOU

11:32AM  13      FOR REVIEW, DID YOU SEE ANY OF THE MATERIALS FROM THAT

11:32AM  14      PRODUCTION?

11:32AM  15      A.    IF I DID, IT WASN'T LINKED UP THAT WAY FOR ME.

11:32AM  16      Q.    TURN, IF YOU WOULD, TO THE NEXT TAB IN THE BINDER, AND

11:32AM  17      THAT'S 5916.  AND AT 5916, DO YOU SEE ANOTHER SUBPOENA TO

11:33AM  18      THERANOS, THIS ONE DATED MAY 2018?

11:33AM  19      A.    YES.

11:33AM  20      Q.    OR SORRY, THIS ONE IS ACTUALLY DATED APRIL 2018.

11:33AM  21            DO YOU SEE THAT AT THE BOTTOM OF THE PAGE?

11:33AM  22      A.    AT THE BOTTOM?  RIGHT.  OKAY.

11:33AM  23            THERE'S A DATE AND TIME HIGHER UP, BUT THE DATE AT THE

11:33AM  24      BOTTOM NEXT TO THE SIGNATURE IS APRIL.

11:33AM  25                  MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5916

11:33AM 1      FOR THE SAME BASIS AS 5915.

11:33AM 2              THE COURT:  NOT FOR THE TRUTH OF THE MATTER

11:33AM 3      ASSERTED?

11:33AM 4              MR. BOSTIC:  CORRECT.

11:33AM 5              MR. BRECHER:  NO OBJECTION.

11:33AM 6              THE COURT:  IT'S ADMITTED.

11:33AM 7          AND IT IS ADMITTED, LADIES AND GENTLEMEN, AGAIN, NOT FOR

11:33AM 8      THE TRUTH OF THE MATTER ASSERTED IN HERE, BUT SOLELY AS TO

11:33AM 9      EXPLANATORY AND CONTEXTUAL DISCUSSION, AND IT MAY BE PUBLISHED.

11:33AM 10         (GOVERNMENT'S EXHIBIT 5916 WAS RECEIVED IN EVIDENCE.)

11:33AM 11     BY MR. BOSTIC:

11:33AM 12     Q.  FIRST LET'S LOOK AT PAGE 1 OF THIS DOCUMENT.  IS THIS THE

11:33AM 13     SECOND SUBPOENA THAT WE'RE REVIEWING NOW, MR. SONNIER?

11:34AM 14     A.  I DON'T KNOW IF IT'S FIRST OR SECOND, BUT IT'S ANOTHER

11:34AM 15     SUBPOENA.

11:34AM 16     Q.  SECOND ONE THAT WE HAVE LOOKED AT TODAY; CORRECT?

11:34AM 17     A.  SECOND ONE, CORRECT.

11:34AM 18     Q.  LET'S LOOK AT PAGE 4.  THIS, UNDER INSTRUCTIONS, CALLS FOR

11:34AM 19     A MUCH WIDER TIMEFRAME, 2006 THROUGH 2016.

11:34AM 20     A.  YES, I SEE THAT.

11:34AM 21     Q.  LET'S LOOK AT PAGE 11.  AND UNDER PAGE 11, DOCUMENTS TO BE

11:34AM 22     PRODUCED.

11:34AM 23         DO YOU SEE THAT THIS SUBPOENA CALLS FOR "THE ENTIRETY OF

11:34AM 24     ALL BLOOD TEST LAB REPORTS MAINTAINED IN THE LIS DATABASE,

11:34AM 25     EXCEPT AS DESCRIBED BELOW."

11:34AM   1        DO YOU SEE THAT?

11:34AM   2   A.   YES, I SEE THAT.

11:34AM   3   Q.   AND IT SAYS, "PLEASE PRODUCE THESE REPORTS IN THE SAME

11:34AM   4   FORMAT ORIGINALLY PROVIDED TO SUCH PATIENTS."

11:34AM   5        DO YOU SEE THAT LANGUAGE?

11:34AM   6   A.   YES, I SEE THAT.

11:35AM   7   Q.   AND LET'S LOOK AT THE NEXT PAGE, PAGE 12.

11:35AM   8        AND DO YOU SEE THERE THERE IS SOME LANGUAGE IN BOLD THAT

11:35AM   9   SAYS "NOTICE CONCERNING DOCUMENT DESTRUCTION AND OBSTRUCTION OF

11:35AM  10   JUSTICE"?

11:35AM  11   A.   I SEE THAT NOTICE.

11:35AM  12   Q.   AND THAT LANGUAGE READS, "ANY PERSON WHO WITHHOLDS,

11:35AM  13   ALTERS, DELETES, OR DESTROYS DOCUMENTS -- INCLUDING ELECTRONIC

11:35AM  14   DOCUMENTS -- DEMANDED BY THIS SUBPOENA, OR WHO REMOVES OR

11:35AM  15   TRANSFERS SUCH DOCUMENTS TO OUTSIDE THE JURISDICTION OF THE

11:35AM  16   UNITED STATES, MAY BE SUBJECT TO CRIMINAL PROSECUTION FOR

11:35AM  17   OBSTRUCTION OF JUSTICE," OR OTHER VIOLATIONS.

11:35AM  18        DO YOU SEE THAT?

11:35AM  19   A.   YES, I SEE THAT.

11:35AM  20   Q.   AND THERANOS WAS BEING INFORMED OF THIS IN APRIL OF 2018;

11:35AM  21   IS THAT YOUR UNDERSTANDING?

11:35AM  22   A.   YES.

11:35AM  23   Q.   WE CAN SET THAT ASIDE.

11:35AM  24        YOU TESTIFIED ON DIRECT THAT YOUR UNDERSTANDING IS THAT

11:35AM  25   THE GOVERNMENT DID EVENTUALLY RECEIVE A COPY OF LIS FROM

11:35AM   1    THERANOS; IS THAT RIGHT?

11:35AM   2    A.   IT RECEIVED AN LIS DATABASE BACKUP.

11:35AM   3    Q.   IS THAT THE SAME THING AS A COPY?

11:36AM   4    A.   IT'S ALL THE DATA THAT IS IN THE SYSTEM, SO IT'S A COPY OF

11:36AM   5    THAT DATA.  IT'S NOT THE SYSTEM THOUGH.

11:36AM   6    Q.   BUT IT SHOULD CONTAIN A COPY OF ALL OF THE INFORMATION ON

11:36AM   7    THE DATABASE?

11:36AM   8    A.   YES, ALL OF THE INFORMATION THAT WAS -- THAT LIVED INSIDE

11:36AM   9    OF THE DATABASE WOULD HAVE BEEN IN THAT BACKUP.

11:36AM   10   Q.   AND AS PART OF YOUR WORK IN THIS CASE, THE DEFENSE

11:36AM   11   PROVIDED YOU WITH A COPY OF WHAT THERANOS HAD PROVIDED THE

11:36AM   12   GOVERNMENT; IS THAT RIGHT?

11:36AM   13   A.   IT'S, IT'S -- THE COPY REMAINED IN THE ATTORNEY'S OFFICE.

11:36AM   14   I JUST ACCESSED IT REMOTELY, BUT I DID ACCESS IT.

11:36AM   15   Q.   AND YOU SAY YOU ACCESSED IT, BUT, IN FACT, YOU WERE NOT

11:36AM   16   ABLE TO GAIN ACCESS TO THE DATA IN THE DATABASE; ISN'T THAT

11:36AM   17   RIGHT?

11:36AM   18   A.   THAT'S CORRECT.  I JUST ACCESSED THE EXTERNAL DRIVE ON

11:36AM   19   WHICH THE BACKUP LIVED.  I WAS ABLE TO LOOK AT THE FILES, BUT I

11:36AM   20   WAS NOT ABLE TO ACTUALLY GO THROUGH AND RECOVER THAT DATA INTO

11:37AM   21   A WORKING SQL SERVER.

11:37AM   22   Q.   YOU TESTIFIED EARLIER ABOUT YOUR EXPERIENCE AND EXPERTISE

11:37AM   23   RELATING TO THE SQL SERVERS.

11:37AM   24        DID YOU BRING THAT EXPERIENCE AND EXPERTISE TO BEAR IN

11:37AM   25   TRYING TO GET INTO THAT HARD DRIVE?

11:37AM  1     A.   YES, I DID.

11:37AM  2     Q.   AND YOU WERE UNSUCCESSFUL?

11:37AM  3     A.   I WAS.

11:37AM  4     Q.   CAN YOU THINK OF ANYTHING ELSE THAT YOU COULD HAVE TRIED

11:37AM  5     TO GET INTO THAT HARD DRIVE THAT YOU DIDN'T TRY?

11:37AM  6     A.   THE LAST OPTION THAT WOULD HAVE BEEN AVAILABLE, WHICH IS A

11:37AM  7     REAL SORT OF LONG SHOT, WOULD BE TO TRY TO BRUTE FORCE BREAK

11:37AM  8     THE ENCRYPTION.  BUT IT'S A VERY INDUSTRY STANDARD ENCRYPTION,

11:37AM  9     AND IT WOULD TAKE, YOU KNOW, A VERY LONG PERIOD OF TIME TO TRY

11:37AM  10    TO DO SUCH A THING.

11:37AM  11    Q.   AND YOU DID NOT MAKE THAT ATTEMPT WHEN IT CAME TO --

11:38AM  12    A.   NO, I DID NOT.

11:38AM  13    Q.   YOU TESTIFIED ON DIRECT THAT THERE CAME A TIME WHEN

11:38AM  14    THERANOS DISASSEMBLED THE ORIGINAL HARDWARE THAT WAS RUNNING

11:38AM  15    THEIR VERSION OF THE LIS.

11:38AM  16         DO YOU RECALL THAT?

11:38AM  17    A.   YES.  THAT'S, THAT'S -- FROM THE INFORMATION THAT I

11:38AM  18    REVIEWED, THAT'S WHAT HAPPENED.

11:38AM  19    Q.   FROM THE INFORMATION THAT YOU REVIEWED, DO YOU HAVE AN

11:38AM  20    UNDERSTANDING AS TO THE TIMING THERE?  IN OTHER WORDS, HOW SOON

11:38AM  21    AFTER THERANOS GAVE THE GOVERNMENT A COPY DID IT TAKE APART THE

11:38AM  22    ORIGINAL?

11:38AM  23    A.   OH, AT LEAST FROM THE INFORMATION THAT I REVIEWED, THE

11:38AM  24    ACTUAL DELIVERY OF THE COPY SEEMED TO BE VERY CLOSE TO WHEN THE

11:38AM  25    EQUIPMENT WAS DISASSEMBLED.

11:38AM  1        BUT I COULDN'T SAY FOR SURE EXACTLY THE TIMING.

11:38AM  2        IT SEEMS THAT THE DISK DRIVES WERE SENT BY COURIER, SAY,

11:39AM  3   MAYBE A DAY OR SO BEFORE THE EQUIPMENT WAS DISASSEMBLED.

11:39AM  4   Q.   AND WHAT'S YOUR UNDERSTANDING, IF YOU HAVE ONE, AS TO THE

11:39AM  5   CURRENT LOCATION OF THE ORIGINAL HARD DRIVES CONTAINING THE

11:39AM  6   THERANOS LIS?

11:39AM  7   A.   NOTHING I HAVE SEEN SAYS THAT THEY'RE ANYWHERE OTHER THAN

11:39AM  8   THE STORAGE LOCKERS THAT THEY WERE ORIGINALLY PLACED INTO AFTER

11:39AM  9   DISASSEMBLY.

11:39AM 10   Q.   HAVE YOU MADE ANY EFFORT TO CONFIRM THAT THOSE DISK DRIVES

11:39AM 11   ARE STILL AVAILABLE?

11:39AM 12   A.   I BELIEVE I SORT OF ASKED ABOUT THAT, BUT NO ONE SEEMS TO

11:39AM 13   KNOW.

11:39AM 14   Q.   SO LET ME JUST BE CLEAR THEN.  DO YOU HAVE FIRST-HAND

11:39AM 15   KNOWLEDGE OF WHERE THOSE DISK DRIVES ARE, AND THAT IS, THE

11:39AM 16   ORIGINAL DISK DRIVES THAT WERE HOUSING THE THERANOS VERSION OF

11:39AM 17   THE LIS?

11:39AM 18   A.   NO.  ALL I KNOW IS WHAT WAS IN THE MATERIALS THAT I

11:39AM 19   REVIEWED, AND IT WAS JUST GENERALLY THAT THEY WERE TAKEN TO

11:40AM 20   STORAGE LOCATIONS.

11:40AM 21   Q.   AND, IN FACT, DURING THE COURSE OF YOUR WORK FOR

11:40AM 22   MR. BALWANI'S LAWYERS, THEY ASKED YOU WHETHER YOU HAD BEEN ABLE

11:40AM 23   TO DETERMINE THE LOCATION OF THOSE DRIVES.

11:40AM 24        DO YOU REMEMBER THAT?

11:40AM 25   A.   I DON'T SPECIFICALLY RECALL THAT, BUT PROBABLY.  I MEAN,

11:40AM 1     WE DID, WE DID TALK ABOUT WHERE THE EQUIPMENT WAS STORED AND

11:40AM 2     WHERE THE DISK DRIVES WERE STORED.

11:40AM 3     Q.   IF I COULD ASK YOU TO LOOK IN YOUR BINDER AT TAB 5924.

11:40AM 4     A.   4?  OKAY.  5924.

11:40AM 5     Q.   AND DO YOU SEE THERE AN EMAIL BETWEEN YOU AND

11:40AM 6     MR. COOPERSMITH, THE DEFENDANT'S LAWYER?

11:40AM 7     A.   YES.

11:40AM 8     Q.   AND DOES THAT REFRESH YOUR RECOLLECTION THAT IN OCTOBER OF

11:40AM 9     LAST YEAR, MR. COOPERSMITH ASKED YOU WHERE THE DISK DRIVES WERE

11:41AM 10    STORED?

11:41AM 11    A.   YES, I SEE THAT.

11:41AM 12    Q.   AND DO YOU SEE YOUR RESPONSE ABOVE?

11:41AM 13    A.   YES.  IN THE RESPONSE ABOVE, I REFERENCED ONE OF THE

11:41AM 14    DOCUMENTS THAT I REVIEWED, MAKING IT SEEM THAT THE DISK DRIVES

11:41AM 15    WOULD HAVE BEEN STORED AT A STORAGE LOCATION, IN PARTICULAR,

11:41AM 16    ONE RUN BY IRON MOUNTAIN.

11:41AM 17    Q.   AND DO YOU SEE THAT YOUR RESPONSE INCLUDES SOME

11:41AM 18    CONFLICTING INFORMATION?

11:41AM 19         MR. BRECHER:  OBJECTION.  MISCHARACTERIZES THIS

11:41AM 20    EMAIL.

11:41AM 21         AND THE DOCUMENT IS NOT IN EVIDENCE, YOUR HONOR.

11:41AM 22         THE COURT:  WELL, HE CAN TESTIFY ABOUT WHAT HE

11:41AM 23    PERCEIVES FROM THE DOCUMENT, SO OVERRULED.

11:41AM 24         THE WITNESS:  YES.  I DON'T RECALL THAT RIGHT NOW.

11:41AM 25         BUT APPARENTLY AT THE TIME I WROTE THIS EMAIL, I HAD SEEN

11:42AM   1    OTHER MATERIALS THAT HAD SAID THIS WAS IN ANOTHER STORAGE

11:42AM   2    LOCATION, AND I CONCLUDED THAT THE OTHER STORAGE LOCATION BEING

11:42AM   3    REFERRED TO THERE WAS, IN FACT, IRON MOUNTAIN.

11:42AM   4    BY MR. BOSTIC:

11:42AM   5    Q.   I'M SORRY.  DID YOU SAY WAS OR WAS NOT IRON MOUNTAIN?

11:42AM   6    A.   WAS.

11:42AM   7    Q.   OKAY.  AND YOU CONCLUDED THAT BASED ON YOUR REVIEW OF

11:42AM   8    DOCUMENTS PROVIDED TO YOU BY THE DEFENSE LAWYERS?

11:42AM   9    A.   YES, THE SAME MATERIALS THAT I'VE BEEN REVIEWING THIS

11:42AM  10    WHOLE TIME.

11:42AM  11    Q.   SO SITTING HERE TODAY, YOU BELIEVE THAT THE ORIGINAL HARD

11:42AM  12    DRIVES CONTAINING THAT INFORMATION ARE STILL IN STORAGE AT IRON

11:42AM  13    MOUNTAIN?

11:42AM  14    A.   I HAVE SEEN NO MATERIALS TO SAY THAT THEY'RE NOT THERE,

11:42AM  15    BUT I HAVE NO -- YOU KNOW, I HAVE NEVER GONE TO THIS FACILITY

11:42AM  16    TO SEE FOR MYSELF.

11:42AM  17    Q.   ARE YOU AWARE OF ANYONE THAT YOU WORK WITH IN CONNECTION

11:42AM  18    WITH THIS CASE MAKING THAT EFFORT TO DETERMINE WHETHER THOSE

11:43AM  19    DRIVES WERE THERE?

11:43AM  20    A.   NO, I'M NOT AWARE OF ANY EFFORT LIKE THAT.

11:43AM  21    Q.   IF I COULD ASK YOU TO LOOK AT TAB 5927.

11:43AM  22         AND YOU TESTIFIED ON DIRECT THAT AMONG THE MATERIALS THAT

11:43AM  23    YOU REVIEWED TO HELP YOU REACH YOUR OPINION WERE SOME REPORTS

11:43AM  24    OF WITNESSES CONDUCTED BY THE FBI; IS THAT RIGHT?

11:43AM  25    A.   THAT'S CORRECT.

11:43AM  1    Q.   IF YOU WOULD LOOK AT 5927, DO YOU SEE ONE OF THOSE REPORTS

11:43AM  2    THAT YOU REVIEWED AND CONSIDERED?

11:43AM  3    A.   THIS APPEARS TO BE ONE OF THE FBI REPORTS, INTERVIEW

11:43AM  4    REPORTS.

11:43AM  5    Q.   I'LL ASK YOU TO LOOK AT PAGE 3 OF THAT DOCUMENT.  AND AT

11:44AM  6    THE TOP OF PAGE 3, DO YOU SEE THAT YOU WERE BEING PROVIDED WITH

11:44AM  7    INFORMATION INDICATING THAT A THERANOS EMPLOYEE DID NOT KNOW

11:44AM  8    WHERE THESE HARD DRIVES HAD BEEN TAKEN FOR STORAGE?

11:44AM  9    A.   SO WHERE ON PAGE 3 YOU SAID?

11:44AM  10   Q.   SURE.  AT THE TOP OF PAGE 3 IN THE TOP PARAGRAPH.  TAKE A

11:44AM  11   MOMENT AND READ THAT WHOLE PARAGRAPH IF YOU WOULD LIKE.

11:44AM  12        (PAUSE IN PROCEEDINGS.)

11:44AM  13   BY MR. BOSTIC:

11:44AM  14   Q.   JUST LET ME KNOW WHEN YOU'RE DONE.

11:44AM  15   A.   SURE.

11:44AM  16        (PAUSE IN PROCEEDINGS.)

11:44AM  17            THE WITNESS:  OKAY.  I'VE READ IT NOW.

11:44AM  18   BY MR. BOSTIC:

11:44AM  19   Q.   AND DOES THAT REFRESH YOUR MEMORY THAT YOU WERE PROVIDED

11:45AM  20   INFORMATION INDICATING THAT A THERANOS EMPLOYEE INVOLVED WITH

11:45AM  21   THESE EVENTS DID NOT KNOW WHERE THOSE HARD DRIVES HAD BEEN

11:45AM  22   STORED?

11:45AM  23            MR. BRECHER:  OBJECTION.  YOUR HONOR, THIS IS NOT AN

11:45AM  24   INTERVIEW WITH A THERANOS EMPLOYEE, FOR ONE.

11:45AM  25            THE COURT:  WELL, THIS IS JUST USED TO REFRESH THE

11:45AM 1    RECOLLECTION.  IT DOESN'T NECESSARILY HAVE TO BE A SPECIFIC

11:45AM 2    WITNESS.  IF IT REFRESHES HIS RECOLLECTION, IT ACCOMPLISHES

11:45AM 3    THAT.

11:45AM 4                MR. BOSTIC:  I'M HAPPY TO CORRECT THAT DETAIL,

11:45AM 5    YOUR HONOR.

11:45AM 6                THE COURT:  SURE, IF YOU'D LIKE.

11:45AM 7    BY MR. BOSTIC:

11:45AM 8    Q.   SO, MR. SONNIER, DOES WHAT YOU'VE JUST REVIEWED REFRESH

11:45AM 9    YOUR RECOLLECTION THAT AN I.T. PROFESSIONAL INVOLVED IN THESE

11:45AM 10   EVENTS WAS UNAWARE OF WHERE THE ORIGINAL HARD DRIVES WERE

11:45AM 11   STORED?

11:45AM 12   A.   SO THE I.T. PROFESSIONAL IN QUESTION WAS A CONTRACTOR WHO

11:45AM 13   ACTUALLY HAD DONE THE DISASSEMBLY IS MY UNDERSTANDING, AND I

11:46AM 14   THINK IT EVEN SAYS HERE THAT HE REMEMBERS WHEN HE TOOK THE HARD

11:46AM 15   DRIVES OUT THAT THEY WERE PACKED IN A BOX, AND HE DIDN'T KNOW

11:46AM 16   WHERE THAT BOX WAS DELIVERED BECAUSE IT WAS OUTSIDE OF HIS

11:46AM 17   SCOPE OF WORK.

11:46AM 18   Q.   AND IS IT ALSO YOUR UNDERSTANDING THAT THOSE HARD DRIVES

11:46AM 19   WERE TAKEN SOMEWHERE OTHER THAN WHERE THE REST OF THE LIS

11:46AM 20   EQUIPMENT WAS STORED?

11:46AM 21   A.   YES, IT -- MY UNDERSTANDING IS THAT THE EQUIPMENT WAS

11:46AM 22   STORED IN A DIFFERENT LOCATION THAN WHEREVER THE HARD DRIVES

11:46AM 23   ACTUALLY WENT TO.

11:46AM 24   Q.   OKAY.  YOU CAN SET THAT ASIDE.

11:46AM 25            IN CONNECTION WITH YOUR WORK IN THIS CASE, YOU PREPARED A

11:46AM  1     WRITTEN DECLARATION.

11:46AM  2          DO YOU REMEMBER THAT?

11:46AM  3     A.   YES.

11:46AM  4     Q.   AND IF YOU COULD LOOK IN THE SECOND BINDER AT TAB 5935.

11:46AM  5     A.   35?

11:46AM  6     Q.   5935.  AND DO YOU SEE -- OH, I'LL WAIT FOR YOU TO GET

11:47AM  7     THAT.

11:47AM  8     A.   YES, I'M LOOKING AT IT.

11:47AM  9     Q.   AND IS THAT A COPY OF THE DECLARATION THAT YOU PREPARED?

11:47AM  10    A.   I'M JUST GETTING -- IT'S GOT A LOT OF PIECES TO IT.

11:47AM  11    Q.   OF COURSE.

11:47AM  12    A.   I'LL JUST CHECK REAL QUICK.

11:47AM  13         YES.

11:47AM  14    Q.   AND THAT DECLARATION CONTAINS AND EXPLAINS THE OPINIONS

11:47AM  15    THAT YOU TESTIFIED ABOUT TODAY; IS THAT CORRECT?

11:47AM  16    A.   YES, IT DOES.

11:47AM  17    Q.   DID YOU PREPARE THAT DECLARATION INDEPENDENTLY OR DID YOU

11:47AM  18    WORK WITH DEFENSE COUNSEL IN CREATING IT?

11:47AM  19    A.   I DRAFTED THE FULL BODY OF THE OPINION MYSELF, AND THEN

11:47AM  20    DEFENSE COUNSEL HAD SOME SUGGESTIONS FOR EDITS.

11:47AM  21    Q.   AND DID YOU TAKE THOSE SUGGESTIONS AND MAKE SOME OF THE

11:47AM  22    REQUESTED EDITS?

11:47AM  23    A.   YEAH, THEY WERE ALL VERY MINOR SORT OF WORDSMITHING.

11:48AM  24    Q.   ULTIMATELY, THOUGH, YOU SIGNED OFF ON THAT DECLARATION

11:48AM  25    UNDER OATH; IS THAT CORRECT?

11:48AM 1    A.   YES.

11:48AM 2    Q.   SO THE LANGUAGE IN THAT DECLARATION ACCURATELY REFLECTS

11:48AM 3    YOUR OPINIONS IN THIS CASE; IS THAT RIGHT?

11:48AM 4    A.   YES, THIS DECLARATION REPRESENTS MY OPINIONS.

11:48AM 5    Q.   AND THERE'S MORE IN THE DECLARATION BESIDES YOUR OPINIONS.

11:48AM 6    YOU ALSO RELAYED THE BASES FOR YOUR OPINIONS; ISN'T THAT RIGHT?

11:48AM 7    A.   THAT IS CORRECT.

11:48AM 8    Q.   IF YOU DECIDED TO INCLUDE A FACT OR A STATEMENT IN THE

11:48AM 9    DECLARATION, IS IT FAIR TO ASSUME THAT THAT'S BECAUSE YOU

11:48AM 10   VIEWED THAT STATEMENT OR FACT AS RELEVANT TO YOUR ULTIMATE

11:48AM 11   OPINIONS?

11:48AM 12   A.   YES.  I WAS TRYING TO KIND OF LAY OUT THE SURROUNDING

11:48AM 13   CIRCUMSTANCES AT THE TIME OF THE EVENTS, AND THEN USE THAT AS

11:48AM 14   PART OF THE BASIS FOR MY OPINION.

11:48AM 15   Q.   ALL RIGHT.  YOU TESTIFIED ON DIRECT ABOUT YOUR BELIEF THAT

11:48AM 16   THE GOVERNMENT COULD HAVE REACQUIRED THE THERANOS LIS

11:49AM 17   INFORMATION EVEN AFTER THE ORIGINAL WAS DISASSEMBLED.

11:49AM 18        IS THAT A FAIR CHARACTERIZATION?

11:49AM 19   A.   THAT IS CORRECT.

11:49AM 20   Q.   JUST TO BE CLEAR, THOUGH, YOU'RE NOT HERE BECAUSE YOU HAVE

11:49AM 21   ANY SPECIAL KNOWLEDGE ABOUT THE SPECIFIC DATABASE USED AT

11:49AM 22   THERANOS; IS THAT RIGHT?

11:49AM 23   A.   NO, I HAVE NO KNOWLEDGE OF THE SPECIFIC DATABASE.

11:49AM 24   Q.   YOUR EXPERTISE IS IN SQL DATABASES GENERALLY?

11:49AM 25   A.   THAT IS CORRECT.

11:49AM   1    Q.   AND TO THE EXTENT THAT YOU HAD AN UNDERSTANDING OF THE

11:49AM   2    THERANOS DATABASE, IT IS SECOND OR THIRD HAND?  IS THAT FAIR TO

11:49AM   3    SAY?  IT COMES FROM THE MATERIALS THAT YOU'VE READ?

11:49AM   4    A.   YES, MY KNOWLEDGE OF THERANOS DATABASE IS ONLY FROM THE

11:49AM   5    MATERIALS THAT I REVIEWED, WHATEVER HANDEDNESS THOSE MATERIALS

11:49AM   6    MAY HAVE.

11:49AM   7    Q.   DID YOU COME TO UNDERSTAND FROM THOSE MATERIALS THAT THE

11:49AM   8    THERANOS LIS DATABASE WAS BESPOKE?

11:50AM   9    A.   THERE IS ONE OF THE FBI INTERVIEWS WHERE -- I DON'T

11:50AM  10    REMEMBER -- IT MIGHT BE WHERE MR. CHUNG USES THAT TERM.

11:50AM  11         BUT I DON'T THINK THAT THE DATABASE SOFTWARE ITSELF AND

11:50AM  12    ITS OPERATION WERE IN ANY WAY CUSTOM, WHICH IS WHAT I INTERPRET

11:50AM  13    BESPOKE TO MEAN.

11:50AM  14         I BELIEVE THAT WAS IN REFERENCE TO THE FACT THAT IT WAS A

11:50AM  15    PROPRIETARY SYSTEM DEVELOPED BY THERANOS FOR THERANOS'S USE,

11:50AM  16    NOT A GENERAL SYSTEM THAT MR. CHUNG WOULD HAVE ENCOUNTERED OUT

11:50AM  17    IN THE WORLD FROM A THIRD PARTY VENDOR.

11:50AM  18    Q.   LET ME ASK YOU TO TAKE A LOOK AT TAB 5929 IN YOUR BINDER.

11:50AM  19    A.   5929.  IS THAT IN THE FIRST VOLUME?

11:51AM  20    Q.   YES, IN THE FIRST VOLUME.

11:51AM  21    A.   OKAY.  OKAY, I'M THERE.

11:51AM  22    Q.   AND AT 5929, DO YOU SEE ANOTHER ONE OF THESE REPORTS THAT

11:51AM  23    YOU REVIEWED IN REACHING YOUR OPINION?

11:51AM  24    A.   YES, THIS IS ANOTHER FBI INTERVIEW REPORT.

11:51AM  25    Q.   AND AT THE TOP OF PAGE 2, DO YOU SEE THAT THESE MATERIALS

11:51AM    1       INFORMED YOU OR RELAYED TO YOU THE STATEMENT THAT THE LIS

11:51AM    2       DATABASE WAS A BESPOKE DATABASE DEVELOPED BY A GROUP OF

11:51AM    3       SOFTWARE ENGINEERS WHO PREVIOUSLY WORKED AT THERANOS?

11:51AM    4       A.   I DO SEE THAT, YES.

11:51AM    5       Q.   AND THE WORD "BESPOKE" MEANS CUSTOM OR UNIQUE; ISN'T THAT

11:52AM    6       RIGHT?

11:52AM    7       A.   THAT'S HOW I INTERPRETED IT, YES.

11:52AM    8       Q.   AND YOU EXPLAINED KIND OF WHAT YOU TOOK AWAY FROM THIS AND

11:52AM    9       WHAT YOU UNDERSTOOD IT TO MEAN A MOMENT AGO; RIGHT?

11:52AM   10       A.   YES.

11:52AM   11       Q.   IN INTERPRETING THAT, YOU WERE MAKING SOME ASSUMPTIONS

11:52AM   12       ABOUT WHAT THIS INDIVIDUAL MEANT WITH THAT LANGUAGE; IS THAT

11:52AM   13       RIGHT?

11:52AM   14       A.   WELL, I, I REVIEWED THE ENTIRE CONTEXT OF INTERVIEW, AS

11:52AM   15       WELL AS OTHER INFORMATION FROM MR. CHUNG, AND I BELIEVE I CAME

11:52AM   16       TO AN UNDERSTANDING OF WHAT HIS POSITION WAS OF THIS ITEM OF

11:52AM   17       LIS DATABASE AND SYSTEM BEING CUSTOM.

11:52AM   18       Q.   FROM YOUR EXPERIENCE WITH SQL DATABASES, DO YOU HAVE AN

11:52AM   19       UNDERSTANDING OF THE WAYS IN WHICH THE BESPOKE OR CUSTOM

11:52AM   20       DETAILS OF A DATABASE CAN MAKE IT IMPOSSIBLE TO MOVE OR

11:52AM   21       DECONSTRUCT?

11:53AM   22       A.   YEAH, THERE'S NO WAY THAT A CUSTOM DATABASE DESIGN, AND

11:53AM   23       THE CUSTOM DATABASE IMPLEMENTATION IN A STANDARD MICROSOFT SQL

11:53AM   24       SERVER SYSTEM WOULD PREVENT IT FROM BEING MOVED.

11:53AM   25       Q.   SORRY, I DIDN'T MEAN TO TALK OVER YOU.  FINISH YOUR

11:53AM  1     ANSWER.

11:53AM  2     A.   I'M FINISHED.

11:53AM  3     Q.   YOU SAID IN A STANDARD SQL SYSTEM.

11:53AM  4          ARE YOU ASSUMING THAT THERANOS WAS RUNNING A STANDARD SQL

11:53AM  5     SYSTEM?

11:53AM  6     A.   ALL OF THE INFORMATION THAT I JUST REVIEWED IS THAT

11:53AM  7     THEY'RE RUNNING A STANDARD MICROSOFT SQL SERVER ENVIRONMENT

11:53AM  8     CONFIGURED AND SET UP PER MICROSOFT'S GUIDELINE.

11:53AM  9     Q.   BUT, AGAIN, YOU NEVER ACTUALLY EXAMINED THE LIS SYSTEM IN

11:53AM  10    PERSON, DID YOU?

11:53AM  11    A.   NO, I DID NOT.

11:53AM  12    Q.   YOU'RE RELYING --

11:53AM  13    A.   IT WAS DISASSEMBLED IN SOME STORAGE LOCATION, SO --

11:53AM  14    Q.   SO YOU'RE RELYING ENTIRELY ON SECOND-HAND DESCRIPTIONS AND

11:54AM  15    THE MATERIALS THAT YOU REVIEWED TO UNDERSTAND IT; IS THAT FAIR?

11:54AM  16    A.   I'M RELYING ON THE FACT THAT AT THE LEVEL OF DATA

11:54AM  17    RECOVERY, THE SQL SERVER SYSTEM FOR MICROSOFT SORT OF ONLY

11:54AM  18    WORKS ONE WAY, AND IT DOESN'T REALLY MATTER IF IT'S A CUSTOM

11:54AM  19    DATABASE THAT THAT SYSTEM IS HOSTING OR, SAY, A STANDARD ERP

11:54AM  20    DATABASE FROM SOME BUSINESS VENDOR.

11:54AM  21         THE RECOVERABILITY REMAINS THE SAME, IRREGARDLESS IF IT'S

11:54AM  22    A STANDARD VENDOR SUPPLY DATABASE OR A CUSTOM IN-HOUSE

11:54AM  23    DATABASE.

11:54AM  24    Q.   AT LEAST THAT'S BEEN TRUE IN ALL OF THE DATABASES THAT YOU

11:54AM  25    HAD FIRST-HAND EXPERIENCE WITH; IS THAT RIGHT?

11:54AM  1    A.   THAT'S RIGHT.  OVER MY VAST EXPERIENCE IT'S ALWAYS BEEN

11:54AM  2    THE CASE.

11:54AM  3    Q.   BUT THAT FIRST-HAND EXPERIENCE DOES NOT INCLUDE THE

11:54AM  4    THERANOS LIS; IS THAT FAIR?

11:54AM  5    A.   THAT'S CORRECT, I HAVE NOT HAD ANY FIRST-HAND EXPERIENCE

11:55AM  6    WITH THE THERANOS DATABASE.

11:55AM  7    Q.   IF I COULD ASK YOU TO TURN TO 5927 IN YOUR BINDER.

11:55AM  8    A.   5927.

11:55AM  9    Q.   AND IF YOU LOOK AT PAGE 3 -- WELL, FIRST OF ALL, IS 5927

11:55AM  10   PART OF THE MATERIALS THAT YOU REVIEWED AND CONSIDERED IN

11:55AM  11   REACHING YOUR OPINION?

11:55AM  12   A.   YES, THIS IS ANOTHER FBI INTERVIEW REPORT.

11:55AM  13   Q.   OKAY.  AND ON PAGE 3 OF THIS REPORT AT THE TOP OF THE

11:55AM  14   PAGE, IT WAS RELAYED TO YOU VIA THIS DOCUMENT THAT AN I.T.

11:55AM  15   PROFESSIONAL TOLD SOMEONE AT THERANOS THAT THEY WOULD NOT BE

11:55AM  16   ABLE TO GET ANYTHING OFF OF THE HARD DRIVES.

11:55AM  17        DID YOU CONSIDER THAT INFORMATION IN REACHING YOUR

11:56AM  18   OPINION?

11:56AM  19   A.   SEVERAL OF THE INTERVIEWS, INCLUDING THIS ONE, SORT OF

11:56AM  20   MADE REFERENCE TO THAT.

11:56AM  21        AND SO I DID TAKE UP A PARTICULAR LINE OF INVESTIGATION TO

11:56AM  22   MAKE SURE THAT THAT WAS JUST SORT OF ORDINARY CONCERNS OF WHEN

11:56AM  23   YOU REMOVE HARD DRIVES FROM A SYSTEM AS OPPOSED TO SOME SORT OF

11:56AM  24   HARD BARRIER THAT WOULD PREVENT RECOVERY.

11:56AM  25   Q.   TURN TO TAB 5928 IF YOU WOULDN'T MIND.

11:56AM   1    A.   YES.

11:56AM   2    Q.   AND DO YOU SEE THERE ANOTHER ONE OF THESE REPORTS THAT YOU

11:56AM   3    REVIEWED AND CONSIDERED IN REACHING YOUR OPINION?

11:56AM   4    A.   YES.

11:56AM   5    Q.   AT THE TOP OF PAGE 3, DO YOU SEE INFORMATION THAT WAS

11:56AM   6    PROVIDED TO YOU INDICATING THAT IT WOULD NOT HAVE BEEN POSSIBLE

11:57AM   7    TO GET THE LIS DATABASE TO WORK AGAIN AFTER IT WAS TAKEN APART?

11:57AM   8    A.   SO AT THE VERY TOP OF PAGE 3?

11:57AM   9    Q.   YES.

11:57AM  10    A.   I SEE HERE THAT MR. CHUNG DIDN'T THINK THAT YOU WOULD BE

11:57AM  11    ABLE TO RECOVER THE LIS DATABASE OR GET IT WORKING AGAIN.

11:57AM  12    Q.   AND THAT CONFLICTS WITH YOUR OPINION; IS THAT CORRECT?

11:57AM  13    A.   THAT'S CORRECT.

11:57AM  14    Q.   DO YOU UNDERSTAND THAT MR. CHUNG WAS SOMEONE WHO HAD

11:57AM  15    FIRST-HAND EXPERIENCE WITH THE THERANOS LIS?

11:57AM  16            MR. BRECHER:  OBJECTION.  ASSUMES FACTS.  LACKS

11:57AM  17    FOUNDATION.

11:57AM  18            THE COURT:  DID YOU GAIN THAT KNOWLEDGE FROM THE --

11:57AM  19    I THINK, IS THAT YOUR QUESTION, WHETHER HE GAINED THAT

11:58AM  20    KNOWLEDGE THROUGH THE MATERIALS?

11:58AM  21            MR. BOSTIC:  YES, YOUR HONOR.  I'M ASKING SOLELY

11:58AM  22    ABOUT HIS UNDERSTANDING.

11:58AM  23            THE COURT:  RIGHT.

11:58AM  24        YOU CAN ANSWER THE QUESTION.

11:58AM  25            THE WITNESS:  MY UNDERSTANDING OF MR. CHUNG WAS THAT

SONNIER CROSS BY MR. BOSTIC

11:58AM  1    HE WAS A CONTRACTOR BROUGHT IN TO DO A VERY SPECIFIC TASK, AND

11:58AM  2    WAS NOT THERE VERY LONG, AND HAD VERY, VERY LITTLE KNOWLEDGE OF

11:58AM  3    HOW THE LIS SYSTEM OR DATABASE WAS CONFIGURED OR WORKED.

11:58AM  4    BY MR. BOSTIC:

11:58AM  5    Q.   LET ME TRY ASKING MY QUESTION AGAIN THOUGH.

11:58AM  6    A.   SURE.

11:58AM  7    Q.   MY QUESTION WAS, DO YOU UNDERSTAND THAT MR. CHUNG HAD

11:58AM  8    FIRST-HAND EXPERIENCE WITH THE THERANOS LIS?

11:58AM  9    A.   I'M DISAGREEING WITH THE CHARACTERIZATION THAT HE HAD

11:58AM  10   FIRST-HAND EXPERIENCE.

11:58AM  11       HE WAS ON SITE.  HE TOUCHED THE HARDWARE.

11:58AM  12       BUT I DON'T THINK HE HAD VERY MUCH EXPERIENCE WITH THE

11:58AM  13   SYSTEM.

11:58AM  14   Q.   FAIR TO SAY HE HAD MORE FIRST-HAND EXPERIENCE WITH THE

11:58AM  15   SYSTEM THAN YOU DID; IS THAT CORRECT?

11:58AM  16   A.   HE HAD MORE HANDS ON THAN I DID, ABSOLUTELY.

11:58AM  17   Q.   IN REACHING YOUR ULTIMATE OPINION THAT THIS DATA COULD BE

11:58AM  18   RECOVERED, YOU ULTIMATELY DISAGREED WITH THIS INFORMATION FROM

11:59AM  19   MR. CHUNG; IS THAT FAIR?

11:59AM  20   A.   TO THE EXTENT THAT HE DIDN'T THINK THAT IT WOULD BE

11:59AM  21   POSSIBLE TO GET THE LIS DATABASE WORKING AGAIN, YES, I

11:59AM  22   DISAGREED WITH THAT OPINION.

11:59AM  23   Q.   YOU TESTIFIED EARLIER ABOUT YOUR UNDERSTANDING OF THE

11:59AM  24   HARDWARE THAT WOULD BE USED TO RUN A TYPICAL SQL DATABASE.

11:59AM  25       DO YOU RECALL THAT?

11:59AM  1     A.   YES.

11:59AM  2     Q.   IN THE SAME DOCUMENT THAT YOU'RE LOOKING AT, IF I COULD

11:59AM  3     ASK YOU TO LOOK AT PAGE 2 -- SO THAT'S 5928, PAGE 2.

11:59AM  4     A.   YES.

11:59AM  5     Q.   AND IN THE MIDDLE OF THE BOTTOM PARAGRAPH, DO YOU SEE THAT

11:59AM  6     YOU WERE PROVIDED INFORMATION INDICATING THAT THE LIS WAS ON A

11:59AM  7     COMPLETELY DIFFERENT INFRASTRUCTURE CONSISTING OF HUNDREDS OF

11:59AM  8     SERVERS?

11:59AM  9     A.   SO AT THE BOTTOM OF PAGE 2?

11:59AM  10    Q.   YES, BOTTOM PARAGRAPH IN THE MIDDLE OF THAT PARAGRAPH.

12:00PM  11    A.   SO BASED ON ALL OF THE MATERIAL THAT I REVIEWED --

12:00PM  12    Q.   I'M SORRY.  SIR, I'M JUST ASKING IF YOU WERE PROVIDED

12:00PM  13    INFORMATION INDICATING THAT --

12:00PM  14    A.   OH, PROVIDED INFORMATION?

12:00PM  15    Q.   YES.  WERE YOU PROVIDED WITH INFORMATION INDICATING THAT

12:00PM  16    THE LIS WAS ON A COMPLETELY DIFFERENT INFRASTRUCTURE CONSISTING

12:00PM  17    OF HUNDREDS OF SERVERS?

12:00PM  18    A.   I WAS PROVIDED INFORMATION THAT IT WAS ON A COMPLETELY

12:00PM  19    DIFFERENT INFRASTRUCTURE.  HOWEVER, THIS APPEARS TO BE THE ONLY

12:00PM  20    PART OF THAT INFORMATION THAT WOULD SAY HUNDREDS OF SERVERS.

12:00PM  21    Q.   AND THIS WAS PART OF THE INFORMATION THAT WAS PROVIDED TO

12:00PM  22    YOU SO YOU COULD REACH YOUR CONCLUSIONS; IS THAT CORRECT?

12:00PM  23    A.   THAT IS CORRECT.

12:00PM  24    Q.   IF I COULD ASK YOU TO TURN TO 5929, WHICH IS THE NEXT TAB.

12:01PM  25    A.   THE NEXT ONE, THE FBI REPORT?

12:01PM   1    Q.   YES.  DO YOU HAVE THAT ONE IN FRONT OF YOU?

12:01PM   2    A.   YES.

12:01PM   3    Q.   AND AT 5929, I'LL ASK YOU TO LOOK AT PAGE 5.  THERE'S A

12:01PM   4    PARAGRAPH TOWARDS THE TOP OF THE PAGE THAT BEGINS "THE LAST

12:01PM   5    DAY."

12:01PM   6         DO YOU SEE THAT?

12:01PM   7    A.   YES, ON THE LAST DAY.

12:01PM   8    Q.   YES.  AND HALFWAY DOWN THAT PARAGRAPH, YOU WERE PROVIDED

12:01PM   9    WITH INFORMATION THAT INDICATED THAT ONCE THE HARD DRIVES WERE

12:01PM  10    TAKEN OUT OF THE LIS SERVERS, IF THEY WERE NOT TRACKED AS TO

12:01PM  11    WHERE THEY CAME FROM, IT WOULD HAVE BEEN IMPOSSIBLE TO PUT THEM

12:01PM  12    BACK TOGETHER.

12:01PM  13         DID YOU RECEIVE THAT INFORMATION?

12:01PM  14    A.   I DID RECEIVE THAT INFORMATION, BUT I DISAGREE WITH IT.

12:01PM  15    Q.   DID YOU ALSO RECEIVE THE INFORMATION FOLLOWING THAT, THAT

12:02PM  16    EVEN IF THE HARD DRIVES WERE ALL LABELLED CORRECTLY, IT WOULD

12:02PM  17    HAVE BEEN EXTREMELY DIFFICULT TO RECONSTRUCT THE DATABASE,

12:02PM  18    BECAUSE IN ADDITION TO THE SERVERS, THERE ARE ALSO HUNDREDS OF

12:02PM  19    NETWORK DEVICES WHICH WOULD HAVE TO BE CONNECTED CORRECTLY?

12:02PM  20         DID YOU RECEIVE THAT INFORMATION?

12:02PM  21    A.   YES, I RECEIVED THAT INFORMATION.

12:02PM  22    Q.   AND YOU DISAGREED WITH THAT INFORMATION AS WELL; CORRECT?

12:02PM  23    A.   WELL, IN PARTICULAR, THE PART ABOUT NETWORK DEVICES IS NOT

12:02PM  24    A FACTOR IN THE RECOVERY OF THE DATABASE ITSELF.

12:02PM  25    Q.   SO AGAIN, JUST TO ANSWER MY QUESTION, YOU ULTIMATELY

12:02PM  1    DISAGREED WITH THE STATEMENT THAT WAS BEING RELAYED FROM THIS

12:02PM  2    I.T. PROFESSIONAL?

12:02PM  3    A.   THAT'S CORRECT.

12:02PM  4    Q.   AND IN THIS CASE WE'RE TALKING ABOUT THE SAME I.T.

12:02PM  5    PROFESSIONAL WHO HAD SOME HANDS-ON EXPERIENCE WITH THE LIS

12:02PM  6    SYSTEM; IS THAT YOUR UNDERSTANDING?

12:02PM  7    A.   SO, AGAIN, I DON'T THINK HE HAD HANDS-ON EXPERIENCE WITH

12:02PM  8    THE LIS SYSTEM.  I THINK HE TOUCHED THE HARDWARE, SO HE HAD

12:03PM  9    HANDS-ON EXPERIENCE WITH THE EQUIPMENT THAT RAN THE LIS SYSTEM.

12:03PM  10   Q.   AND TO BE CLEAR, WERE YOU PRESENT WHEN HE WAS DOING HIS

12:03PM  11   WORK AT THERANOS?

12:03PM  12   A.   NO, I WAS NOT.

12:03PM  13   Q.   SO CAN YOU CONFIDENTLY TESTIFY ABOUT WHAT HE DID AND WHAT

12:03PM  14   HE DIDN'T DO?

12:03PM  15   A.   I CAN ONLY TESTIFY ABOUT THE MATERIALS AND WHAT THE

12:03PM  16   MATERIALS THAT I REVIEWED DESCRIBE.

12:03PM  17        IN THOSE DESCRIPTIONS, THIS I.T. PROFESSIONAL WAS A

12:03PM  18   CONTRACTOR BROUGHT ON TO THERANOS, VERY LIMITED AMOUNT OF TIME,

12:03PM  19   TO DO A VERY SPECIFIC THING, WHICH WAS MOVE EQUIPMENT, AND HE

12:03PM  20   SEEMED TO HAVE DONE THAT WITH DISPATCH.

12:03PM  21        BUT I DON'T THINK HE GOT INTO THE RUNNING OF THE SYSTEM OR

12:03PM  22   HOW THEY WERE ORGANIZED.

12:03PM  23   Q.   SO IN DECIDING TO BELIEVE OR DISBELIEVE THE INFORMATION

12:03PM  24   THAT THIS I.T. SPECIALIST IS PROVIDING, YOU'RE WEIGHING -- OR

12:03PM  25   YOU'RE INCORPORATING YOUR VIEW OF HOW INVOLVED HE WAS IN THE

12:04PM   1    LIS WORK AT THERANOS?

12:04PM   2               MR. BRECHER:  OBJECTION.  MISSTATES PRIOR TESTIMONY.

12:04PM   3               THE COURT:  OVERRULED.

12:04PM   4          YOU CAN ANSWER THE QUESTION.

12:04PM   5               THE WITNESS:  YES, I AM FACTORING INTO THE VARIOUS

12:04PM   6    INTERVIEWEES WHAT THEIR SCOPE AND EXPERIENCE AT THERANOS WAS AS

12:04PM   7    DESCRIBED IN THOSE INTERVIEWS.

12:04PM   8    BY MR. BOSTIC:

12:04PM   9    Q.   TO THE EXTENT THAT YOU MIGHT BE WRONG ABOUT THOSE

12:04PM  10    ASSUMPTIONS, WOULD THAT CALL INTO QUESTION YOUR ULTIMATE

12:04PM  11    DECISION ABOUT WHETHER TO BELIEVE OR DISBELIEVE THESE OTHER

12:04PM  12    STATEMENTS?

12:04PM  13    A.   NO.  IT'S ALL A TECHNICAL MATTER FOR ME.  ONCE THE DISK

12:04PM  14    DRIVES ARE RECOVERED AND THE EQUIPMENT IS RECOVERED, THEN YOU

12:04PM  15    CAN RECOVER THE DATABASE.

12:04PM  16          AND SO I DID INVESTIGATE STATEMENTS THAT SEEMED TO BE AT

12:05PM  17    ODDS WITH THAT JUST TO SEE IF THERE WAS ANY TECHNICAL -- OR

12:05PM  18    THERE WAS ANY REASON WHY THE PROFESSIONAL MIGHT HAVE THAT

12:05PM  19    OPINION, AND I COULDN'T FIND ANY.

12:05PM  20    Q.   I'LL ASK YOU TO TURN TO PAGE 4 IN THAT SAME DOCUMENT,

12:05PM  21    5928, PAGE 4?

12:05PM  22    A.   PAGE 4.

12:05PM  23    Q.   AND YOU SEE THERE'S A SUBHEADING LABELLED NEETEK 746,

12:05PM  24    N-E-E-T-E-K?

12:05PM  25               MR. BRECHER:  I'M SORRY, COUNSEL.  WHICH EXHIBIT IS

12:05PM   1      THIS?

12:05PM   2                   MR. BOSTIC:  THIS IS 5928.

12:05PM   3                   THE COURT:  5928.

12:05PM   4                   THE WITNESS:  OH, THE PREVIOUS ONE.

12:05PM   5                   MR. BOSTIC:  YES.  SORRY.

12:05PM   6      Q.   BACK TO 5928.

12:05PM   7      A.   YES.  I WAS SAYING I DIDN'T SEE ANY HEADINGS.

12:05PM   8      Q.   SORRY.  I'M NOT CONFUSING YOU ON PURPOSE.

12:05PM   9      A.   AND WHICH PAGE?

12:05PM  10      Q.   PAGE 4.  AND DO YOU SEE THAT HEADING IN THE MIDDLE OF

12:06PM  11      PAGE 746?

12:06PM  12      A.   YES, 746, I'VE GOT IT.

12:06PM  13      Q.   AND BELOW THAT, DO YOU SEE THAT YOU WERE PROVIDED

12:06PM  14      INFORMATION FROM THE SAME SOURCE INDICATING THAT IT DID NOT

12:06PM  15      MATTER HOW MANY COPIES THEY MADE OF THIS LIS DATABASE BECAUSE

12:06PM  16      THEY WOULD NOT BE ABLE TO RESTORE THE DATA WITHOUT A KEY?

12:06PM  17           WERE YOU PROVIDED THAT INFORMATION?

12:06PM  18      A.   YES, I WAS PROVIDED THAT INFORMATION.

12:06PM  19           I THINK THIS IS REFERRING TO THAT ENCRYPTION KEY FOR THE

12:06PM  20      BACKUP, THOUGH, THAT WE DISCUSSED EARLIER.

12:06PM  21      Q.   LET'S GO TO 5938.

12:06PM  22      A.   5938.

12:06PM  23      Q.   AND AT 5938, DO YOU SEE ANOTHER REPORT FROM A DIFFERENT

12:06PM  24      I.T. PROFESSIONAL THAT YOU WOULD HAVE CONSIDERED AND REVIEWED

12:07PM  25      IN CONNECTION WITH YOUR OPINION?

SONNIER CROSS BY MR. BOSTIC                                              6779

12:07PM  1    A.   YES.

12:07PM  2    Q.   AND IF YOU LOOK AT PAGE 3 OF THAT DOCUMENT, DO YOU SEE IN

12:07PM  3    THE SECOND TO TOP PARAGRAPH, AT THE BOTTOM OF THAT PARAGRAPH,

12:07PM  4    THAT YOU RECEIVED INFORMATION INDICATING THAT IF THERANOS TOOK

12:07PM  5    THE LIS APART, THEY WOULD NOT BE ABLE TO ACCESS IT AGAIN

12:07PM  6    BECAUSE THEN THE ENCRYPTION KEY WOULD BE LOST?

12:07PM  7         WERE YOU PROVIDED THAT INFORMATION?

12:07PM  8    A.   YES, I WAS.

12:07PM  9    Q.   AND WERE YOU PROVIDED THE FOLLOW-UP INFORMATION THAT THE

12:07PM  10   ENCRYPTION KEY WAS LOCATED ON A DISK ARRAY WHICH HAD A LOT OF

12:07PM  11   PIECES, AND WHEN THEY TOOK THE DISK ARRAY APART, IT WOULD HAVE

12:07PM  12   DESTROYED THE ENCRYPTION KEY?  WERE YOU PROVIDED THAT

12:07PM  13   INFORMATION?

12:07PM  14   A.   YES, I WAS.

12:07PM  15   Q.   DID YOU DISAGREE WITH THAT INFORMATION FROM THAT OTHER

12:07PM  16   I.T. PROFESSIONAL?

12:07PM  17   A.   I TOOK THAT STATEMENT VERY SERIOUSLY AND INVESTIGATED THEM

12:07PM  18   EXTENSIVELY AND FOUND THAT THERE'S NO TECHNICAL BASIS FOR THAT

12:07PM  19   STATEMENT.

12:08PM  20        SO TO THE EXTENT THIS PROFESSIONAL IS REFERRING TO THE

12:08PM  21   FEASIBILITY OF THE RECOVERY OF THE LIS DATABASE, IT'S

12:08PM  22   INCORRECT.

12:08PM  23        HE MAY HAVE BEEN TALKING ABOUT SOMETHING ELSE.

12:08PM  24        BUT I TOOK THESE STATEMENTS VERY SERIOUSLY AND

12:08PM  25   INVESTIGATED THEM VERY EXTENSIVELY AND THERE'S NO TECHNICAL

12:08PM  1      BASIS FOR THEM.

12:08PM  2      Q.   YOU SAID YOU INVESTIGATED THEM THOROUGHLY.  YOUR

12:08PM  3      INVESTIGATION, THOUGH, DIDN'T INCLUDE ANY REVIEW OF THE LIS

12:08PM  4      ORIGINAL HARDWARE; IS THAT CORRECT?

12:08PM  5      A.   THAT'S RIGHT.  THE HARDWARE, WE HAVE THE INVENTORY SO YOU

12:08PM  6      CAN GO LOOK UP THE EXACT MODELS AND LOOK UP THE TECHNICAL

12:08PM  7      INFORMATION INDEPENDENT OF ACTUALLY INSPECTING THE PHYSICAL

12:08PM  8      UNITS THEMSELVES.

12:08PM  9      Q.   THAT THOROUGH INVESTIGATION YOU REFERENCED, DID IT INCLUDE

12:08PM  10     SPEAKING TO ANY OF THE I.T. PROFESSIONALS WHOSE STATEMENTS

12:08PM  11     YOU'VE READ?

12:08PM  12     A.   I DIDN'T SPEAK TO ANY, ANY OF THE PROFESSIONALS.

12:08PM  13     Q.   ULTIMATELY WHEN YOU READ THIS INFORMATION THAT WAS

12:09PM  14     PROVIDED FOR YOUR REVIEW, YOU DISREGARDED INFORMATION THAT WAS

12:09PM  15     INCONSISTENT WITH YOUR ULTIMATE CONCLUSION.

12:09PM  16          IS THAT FAIR TO SAY?

12:09PM  17     A.   NO.  I WAS PUTTING TOGETHER A JIGSAW PUZZLE FROM ALL OF

12:09PM  18     THE INFORMATION, SO I WAS CROSS-REFERENCING EVERYTHING.

12:09PM  19          BUT IF THE INFORMATION, AS IN THESE INTERVIEWS, OTHER

12:09PM  20     DOCUMENTS PROVIDED, AND THE PUBLIC INFORMATION AND DETERMINING

12:09PM  21     WHAT ACTUALLY HOOKS TOGETHER AND MAKES THE COMPLETE PICTURE.

12:09PM  22          SO I DIDN'T DISREGARD THEM WHERE THE STATEMENT SEEMED

12:09PM  23     IMPLAUSIBLE OR PROBABLY, YOU KNOW, CONSTRUCTED TECHNICALLY,

12:09PM  24     LIKE THAT DIDN'T SOUND RIGHT, I INVESTIGATED THEM EXTENSIVELY

12:09PM  25     TO SEE IF PERHAPS THERE WAS SOME BASIS.

SONNIER CROSS BY MR. BOSTIC                                                6781

12:09PM   1          AND TO THE EXTENT THAT I'M DISAGREEING WITH ANY OF THESE

12:10PM   2     MATERIALS IN THEIR INTERVIEW STATEMENTS, IT'S BECAUSE I FOUND

12:10PM   3     NO TECHNICAL BASIS TO SUPPORT THEM.

12:10PM   4     Q.   AND DO YOU FEEL THAT YOU INVESTIGATED THOSE STATEMENTS AS

12:10PM   5     THOROUGHLY AS YOU COULD GIVEN THE LIMITATIONS THAT YOU DIDN'T

12:10PM   6     HAVE ACCESS TO ANY OF THE ORIGINAL HARDWARE OR THE INDIVIDUALS

12:10PM   7     WHO HAD THAT KNOWLEDGE?

12:10PM   8     A.   YES.   SO I DIDN'T FEEL THAT ACCESS TO THE INDIVIDUALS OR

12:10PM   9     THE ACTUAL HARDWARE WAS NECESSARY IN ORDER TO REACH THE

12:10PM   10    CONCLUSIONS THAT I REACHED.

12:10PM   11    Q.   DID YOU CONCLUDE, AS PART OF YOUR REVIEW, THAT

12:10PM   12    RECONSTRUCTING THE LIS WOULD HAVE BEEN MORE DIFFICULT ONCE THE

12:10PM   13    LIS SYSTEM HARDWARE WAS RETURNED?

12:10PM   14    A.   SO THERE ARE TWO ASPECTS TO THAT FROM THE MATERIAL THAT I

12:10PM   15    REVIEWED.   THE MORE LIKELY SCENARIO IS THAT THE LIS PRODUCTION

12:10PM   16    HARDWARE WAS NEVER RETURNED, OR AT LEAST THERE'S NOTHING TO SAY

12:11PM   17    THAT IT EVER LEFT ITS STORAGE LOCATION.

12:11PM   18          THERE IS ANOTHER SCENARIO IN WHICH IT IS POSSIBLE THAT THE

12:11PM   19    EQUIPMENT WAS RETURNED TO THE PERSON HOLDING THE LEASE, THE

12:11PM   20    LEASE HOLDER, MAYBE A YEAR AFTER DISASSEMBLY, AND I DID

12:11PM   21    CONSIDER THAT SCENARIO AND CONCLUDED THAT IT'S EASY ENOUGH TO

12:11PM   22    GET REPLACEMENT EQUIPMENT ON THE REFURBISHED MARKET, STANDARD

12:11PM   23    PRACTICE.

12:11PM   24          AND SO IF THE EQUIPMENT WERE NOT AVAILABLE, YOU COULD

12:11PM   25    OBTAIN THE EXACT SAME MODELS AND EQUIPMENT FROM THE REFURBISHED

12:11PM   1    MARKET.

12:11PM   2        AND I ACTUALLY INVESTIGATED IT AT THE TIME, LAST FALL, TO

12:11PM   3    SEE IF SUCH -- THOSE TYPES OF EQUIPMENT APPEARED TO BE

12:11PM   4    AVAILABLE, AND THEY'RE GENERALLY AVAILABLE IN THAT MARKET.

12:11PM   5    Q.   OKAY.  SO A COUPLE OF THINGS.

12:12PM   6        FIRST, DO YOU HAVE ANY PERSONAL KNOWLEDGE AS TO WHETHER

12:12PM   7    THE ORIGINAL EQUIPMENT WAS ACTUALLY RETURNED FROM THERANOS OR

12:12PM   8    NOT?  DO YOU PERSONALLY KNOW THAT?

12:12PM   9    A.   ALL OF THE MATERIALS THAT I'VE REVIEWED DON'T INDICATE

12:12PM  10    THAT, AND I CERTAINLY HAVE NO PERSONAL KNOWLEDGE OF WHERE THAT

12:12PM  11    EQUIPMENT WENT PAST THE STORAGE LOCKER.

12:12PM  12    Q.   DO YOU BELIEVE, THOUGH, OR DO YOU AGREE THAT RECOVERING

12:12PM  13    THE LIS DATA WOULD BE MORE DIFFICULT IF THAT EQUIPMENT HAD BEEN

12:12PM  14    RETURNED?

12:12PM  15    A.   YES.  AS I JUST STATED, YOU WOULD HAVE TO GET --

12:12PM  16    POTENTIALLY YOU WOULD HAVE TO GET REPLACEMENT EQUIPMENT OR USE

12:12PM  17    MORE COMPUTER FORENSIC TECHNIQUES TO RECOVER IT IN THIS CASE.

12:12PM  18            MR. BOSTIC:  SO, YOUR HONOR, I'M ABOUT TO SWITCH

12:12PM  19    TOPICS.  I'M NOT SURE WHEN THE COURT WANTED TO TAKE A BREAK.

12:12PM  20            THE COURT:  I THOUGHT EARLIER WE WOULD BREAK AT NOON

12:13PM  21    FOR ABOUT -- I THINK WE'RE BREAKING TODAY AT 2:00 O'CLOCK, 2:00

12:13PM  22    P.M., LADIES AND GENTLEMEN.  I BELIEVE THAT'S STILL CORRECT.

12:13PM  23    MY RECOLLECTION IS THAT SOME JURORS HAD SOME APPOINTMENTS.

12:13PM  24        SO WHY DON'T WE TAKE A BREAK NOW?

12:13PM  25        COULD WE TAKE 20 MINUTES?  LET'S TAKE ABOUT 20,

```
12:13PM    1    25 MINUTES, AND THEN WE'LL RESUME.

12:13PM    2         YOU CAN STAND DOWN, SIR.  THANK YOU.

12:13PM    3         (RECESS FROM 12:13 P.M. UNTIL 12:40 P.M.)

12:40PM    4            THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

12:40PM    5    ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

12:40PM    6         MR. BOSTIC.

12:40PM    7            MR. BOSTIC:  THANK YOU, YOUR HONOR.

12:40PM    8    Q.   MR. SONNIER, WELCOME BACK.

12:40PM    9         CAN I ASK YOU TO LOOK AT TAB 5897 IN YOUR BINDER, PLEASE.

12:40PM   10    A.   DID YOU SAY 5857?

12:40PM   11    Q.   5897.

12:40PM   12    A.   OKAY.

12:40PM   13    Q.   AND YOU TESTIFIED EARLIER THAT YOU'RE AWARE THAT A COPY,

12:40PM   14    OR RATHER A BACKUP, OF THE THERANOS LIS WAS PROVIDED TO THE

12:40PM   15    GOVERNMENT?

12:40PM   16    A.   THAT IS CORRECT.

12:40PM   17    Q.   AND IS IT YOUR UNDERSTANDING THAT THAT HAPPENED IN LATE

12:40PM   18    AUGUST 2018?

12:41PM   19    A.   YES.

12:41PM   20    Q.   AND AT 5897, DO YOU SEE AN EMAIL BETWEEN INDIVIDUALS AT

12:41PM   21    THERANOS AND AN EMAIL BETWEEN INDIVIDUALS AT A LAW FIRM CALLED

12:41PM   22    WILMER HALE IN LATE AUGUST 2018?

12:41PM   23    A.   I DO SEE THE EMAIL, AND I DO RECOGNIZE THE FROM AS BEING

12:41PM   24    SOMEONE FROM WILMER HALE.

12:41PM   25         I'M NOT SURE I RECOGNIZE ANY OF THE NAMES ON THE TO LINE.
```

12:41PM   1    Q.   DO YOU SEE DOMAIN NAMES FROM THERANOS THERE AS WELL?

12:41PM   2    A.   I GUESS TO -- OKAY.  AS YOU GET THROUGH THE THREAD, I DO

12:41PM   3    SEE SOME THERANOS, SOME THERANOS DOMAIN NAMES.

12:41PM   4              MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5897.

12:42PM   5              MR. BRECHER:  OBJECTION.  AUTHENTICITY.

12:42PM   6              THE COURT:  MR. BOSTIC.

12:42PM   7              MR. BOSTIC:  SO, YOUR HONOR, I BELIEVE THIS SHOULD

12:42PM   8    BE AUTHENTIC ON ITS FACE.  I'LL POINT OUT THE BATES NUMBER ON

12:42PM   9    THE BOTTOM INDICATING THAT THIS WAS PRODUCED BY WILMER HALE.

12:42PM  10       I ALSO HAVE THE COVER LETTERS FOR THAT PRODUCTION IF THE

12:42PM  11    COURT AND THE DEFENSE WOULD LIKE TO REVIEW THEM.

12:42PM  12              THE COURT:  HAVE YOU SEEN THE COVER LETTERS?

12:42PM  13              MR. BRECHER:  NOT RECENTLY.

12:42PM  14              THE COURT:  WOULD YOU LIKE TO LOOK AT THOSE NOW?

12:42PM  15              MR. BRECHER:  THAT WOULD BE HELPFUL.

12:42PM  16              THE COURT:  SURE.

12:42PM  17              MR. BOSTIC:  MAY I PASS UP A COPY, YOUR HONOR?

12:42PM  18              THE COURT:  THANK YOU.

12:42PM  19              MR. BOSTIC:  (HANDING.)

12:42PM  20         (PAUSE IN PROCEEDINGS.)

12:43PM  21              THE COURT:  ANYTHING FURTHER?

12:43PM  22              MR. BRECHER:  NO, YOUR HONOR.

12:43PM  23              THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

12:43PM  24         (GOVERNMENT'S EXHIBIT 5897 WAS RECEIVED IN EVIDENCE.)

12:43PM  25    BY MR. BOSTIC:

12:43PM 1    Q.   OKAY.  SO, MR. SONNIER, DO YOU SEE ON THE SCREEN IN FRONT

12:43PM 2    OF YOU THIS EMAIL CHAIN FROM LATE AUGUST OF 2018?

12:43PM 3    A.   YES.

12:43PM 4    Q.   AND LET'S LOOK AT THE FIRST EMAIL, AND IF WE CAN ZOOM IN

12:43PM 5    THERE.

12:43PM 6         DO YOU SEE THAT IT BEGINS WITH A MESSAGE FROM SOMEONE

12:43PM 7    NAMED DAVID TAYLOR?

12:43PM 8    A.   YES, I SEE THAT.

12:43PM 9    Q.   DO YOU HAVE AN UNDERSTANDING FROM YOUR REVIEW OF DOCUMENTS

12:43PM 10   THAT DAVID TAYLOR WAS THE CEO AT THERANOS AT THE TIME?

12:43PM 11   A.   I'M NOT SURE I KNEW HE WAS THE CEO, BUT I HAD A FEELING

12:43PM 12   THAT HE WAS THE ONE CALLING THE SHOTS AT THE TOP.

12:43PM 13   Q.   DO YOU SEE THAT HE EMAILS A GROUP OF PEOPLE, OTHERS AT

12:43PM 14   THERANOS, AND A LAWYER AT WILMER HALE, AND HE SAYS, "CAN THIS

12:43PM 15   GROUP CONVENE FOR A CALL AS SOON AS POSSIBLE, IDEALLY THIS

12:43PM 16   AFTERNOON."

12:44PM 17        DO YOU SEE THAT?

12:44PM 18   A.   YES, I SEE THAT.

12:44PM 19   Q.   AND HE SAYS, "TO HASH OUT WHAT WE STILL NEED FROM LIS AND

12:44PM 20   WHAT WE NEED TO DO TO GET IT, GIVEN THAT THE SYSTEM WILL BE PUT

12:44PM 21   INTO STORAGE THIS FRIDAY AND MAY THEREAFTER BE VERY DIFFICULT

12:44PM 22   TO RESUSCITATE?"

12:44PM 23        DO YOU SEE THAT?

12:44PM 24   A.   YES, I SEE THAT.

12:44PM 25   Q.   WHEN YOU WERE REACHING YOUR OPINION AND REVIEWING

12:44PM 1   DOCUMENTS, WERE YOU AWARE THAT MR. TAYLOR UNDERSTOOD IN LATE

12:44PM 2   AUGUST 2018 THAT PUTTING THE LIS INTO STORAGE WOULD MAKE IT

12:44PM 3   VERY DIFFICULT TO RESUSCITATE?

12:44PM 4   A.   I DON'T RECALL IF I SPECIFICALLY KNEW THAT MR. TAYLOR KNEW

12:44PM 5   THIS, BUT I CERTAINLY WAS AWARE THAT THERE WERE CERTAIN PEOPLE

12:44PM 6   AT THERANOS THAT WERE AWARE OF THAT.

12:44PM 7   Q.   OKAY.  WE CAN SET THAT ASIDE.

12:44PM 8        AND THIS WAS AROUND THE SAME TIME THAT YOU UNDERSTOOD THE

12:45PM 9   GOVERNMENT WAS PROVIDED WITH A BACKUP OF THE LIS; IS THAT

12:45PM 10  CORRECT?

12:45PM 11  A.   YEAH, THIS MAY HAVE BEEN A LITTLE BIT BEFORE THE BACKUP

12:45PM 12  ACTUALLY GOT TO THE GOVERNMENT, BUT --

12:45PM 13  Q.   IF I COULD ASK YOU TO JUST LOOK BRIEFLY AT 5895.

12:45PM 14  A.   5895.  OKAY, I'VE GOT THAT.

12:45PM 15  Q.   TAKE A MOMENT TO LOOK AT THAT AND LET ME KNOW IF THAT --

12:45PM 16  TAKE A MOMENT TO REVIEW IT, AND LET ME KNOW WHEN YOU'RE DONE

12:45PM 17  WITH THAT FIRST PAGE.

12:45PM 18  A.   OKAY.  I'VE READ THE FIRST PAGE.

12:45PM 19  Q.   DOES THAT REFRESH YOUR RECOLLECTION THAT THE GOVERNMENT

12:45PM 20  WAS PROVIDED WITH ITS COPY OF THE LIS JUST THE DAY BEFORE THE

12:45PM 21  EMAIL THAT WE JUST LOOKED AT?

12:46PM 22  A.   SO I HAD LOOKED AT THIS, AND IT DOES SAY THAT, LIKE, IT

12:46PM 23  WAS SENT THAT DAY.  BUT I DON'T GET -- I DIDN'T SEE ANY

12:46PM 24  CONFIRMATION UNTIL THE 29TH.

12:46PM 25  Q.   AS TO THE GOVERNMENT'S RECEIPT OF THE LIS?

12:46PM 1    A.   THAT'S CORRECT.

12:46PM 2    Q.   OKAY.  AND THAT WAS ALL WITHIN DAYS OF THE TIME WHEN,

12:46PM 3    ACCORDING TO THAT EMAIL THAT WE JUST SAW, THERANOS WAS GOING TO

12:46PM 4    PUT THE ORIGINAL IN STORAGE; IS THAT CORRECT?

12:46PM 5    A.   YES.  AFTER ALL OF THAT, AND EVEN THAT OTHER EMAIL, SORT

12:46PM 6    OF BASICALLY THE END OF THAT WEEK IS WHEN THE SYSTEM WAS

12:46PM 7    DISASSEMBLED AND PUT INTO STORAGE.

12:46PM 8    Q.   TURN NEXT IF YOU WOULD TO 5940.  IT SHOULD BE TOWARDS THE

12:46PM 9    BACK OF YOUR BINDER.

12:46PM 10   A.   5940.

12:46PM 11   Q.   ACTUALLY MAKE THAT 5943 AT THE VERY BACK.

12:47PM 12   A.   5943.

12:47PM 13   Q.   AND AT 5943, DO YOU SEE A CONTINUATION OF THE EMAIL AT THE

12:47PM 14   U.S. ATTORNEY'S OFFICE THAT YOU REVIEWED ON DIRECT WITH

12:47PM 15   MR. BRECHER?

12:47PM 16   A.   I BELIEVE THE EMAIL THAT WE PREVIOUSLY LOOKED AT IS THE

12:47PM 17   NEXT ONE IN THE THREAD, AND SO I GUESS THIS IS A FOLLOWUP TO

12:47PM 18   THAT.

12:47PM 19           MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5943.

12:47PM 20           MR. BRECHER:  NO OBJECTION, YOUR HONOR.

12:47PM 21           THE COURT:  IT'S ADMITTED.

12:47PM 22           MR. BRECHER:  YOUR HONOR, IF THE WITNESS COULD MOVE

12:47PM 23   THE MICROPHONE A LITTLE BIT CLOSER, THAT WOULD BE HELPFUL.

12:47PM 24           THE WITNESS:  SORRY.  I KNOCKED IT OUT OF THE WAY

12:47PM 25   WITH THE BINDER.

12:47PM   1             THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

12:47PM   2             (GOVERNMENT'S EXHIBIT 5943 WAS RECEIVED IN EVIDENCE.)

12:47PM   3      BY MR. BOSTIC:

12:47PM   4      Q.   LET'S ZOOM IN ON THE TOP HEAR.

12:48PM   5             AND DO YOU SEE THAT THIS IS COMMUNICATION BETWEEN THE SAME

12:48PM   6      INDIVIDUALS WHO WERE PREVIOUSLY DISCUSSING POSSIBLE WAYS TO

12:48PM   7      HANDLE THIS COPY OF THE LIS?

12:48PM   8      A.   I'M JUST CHECKING TO MAKE SURE.

12:48PM   9             YEAH, IT APPEARS TO BE THE SAME PEOPLE.

12:48PM  10      Q.   AND DO YOU SEE THAT THIS MESSAGE IS FROM SOMEONE NAMED

12:48PM  11      LAKISHA HOLLIMAN WHO WRITES BACK TO SUTTON PEIRCE AT THE U.S.

12:48PM  12      ATTORNEY'S OFFICE, AND CC'D ON THE EMAIL ARE THE PROSECUTORS IN

12:48PM  13      THE CASE, MYSELF, MR. SCHENK, AND MR. LEACH.

12:48PM  14             DO YOU SEE THAT?

12:48PM  15      A.   YES.

12:48PM  16      Q.   AND THIS READS, "I HAD A MEETING WITH THE AUSA'S ON THE

12:48PM  17      CASE REGARDING OUR OPTIONS AND WE ALL DECIDED TO DO THE

12:48PM  18      FOLLOWING."

12:48PM  19             DO YOU SEE THAT?

12:48PM  20      A.   YES, I DO.

12:48PM  21      Q.   AND THERE ARE TWO BULLET POINTS SELECTED THERE.

12:48PM  22             "PUSH BACK ON DEFENSE AND SEE IF THEY CAN BE PERSUADED TO

12:48PM  23      PRODUCE THIS IN A MANNER THAT CAN BE VIEWED AND PROCESSED IN A

12:48PM  24      STANDARD WAY RATHER THAN AN UNSPECIFIED ARCHIVE FORMAT THAT WE

12:49PM  25      CAN'T ACCESS."

12:49PM   1          DO YOU SEE THAT OPTION?

12:49PM   2     A.   YES.

12:49PM   3     Q.   AND THE OTHER OPTION, CHECK WITH THE FBI TO SEE IF THEY

12:49PM   4     CAN PROCESS THE DATABASE; CORRECT?

12:49PM   5     A.   YES.

12:49PM   6     Q.   AND DO YOU HAVE ANY FIRST-HAND KNOWLEDGE OF THE STEPS THAT

12:49PM   7     THE GOVERNMENT TEAM TOOK TO TRY TO GAIN ACCESS TO THIS DATABASE

12:49PM   8     AFTER THIS DATE?

12:49PM   9     A.   DO YOU MEAN THE COPY OR THE DATABASE ORIGINAL?

12:49PM   10    Q.   LET ME ASK JUST GENERALLY ABOUT THE DATABASE INFORMATION.

12:49PM   11    A.   OKAY.

12:49PM   12    Q.   DO YOU HAVE ANY KNOWLEDGE OF ANY EFFORTS THAT THE

12:49PM   13    GOVERNMENT TOOK TO TRY TO GAIN ACCESS TO THAT INFORMATION IN

12:49PM   14    OCTOBER OF 2018 OR LATER?

12:49PM   15    A.   I'VE SEEN SOME MATERIAL THAT INDICATES THAT THERE IS

12:49PM   16    FOLLOW-UP ABOUT GETTING THIS INFORMATION.  I'M NOT SURE HOW

12:50PM   17    MUCH PAST OCTOBER 30TH IT GOES, IF IT EVEN GOES PAST THAT,

12:50PM   18    BUT --

12:50PM   19    Q.   OKAY.  LET ME HAVE YOU LOOK AT 5917.

12:50PM   20    A.   OKAY.  5917.  I'VE GOT IT.

12:50PM   21    Q.   OKAY.  AND DO YOU SEE THAT'S AN EMAIL CHAIN BETWEEN MYSELF

12:50PM   22    AND SOMEONE NAMED STEPHEN O'NEILL AT A LAW FIRM CALLED DORSEY?

12:50PM   23    A.   OKAY.

12:50PM   24    Q.   DO YOU UNDERSTAND THAT THERANOS'S ASSETS WERE HANDED OFF

12:50PM   25    TO AN ASSIGNEE?

12:50PM  1      A.   YES, I UNDERSTAND THAT.

12:50PM  2      Q.   AND AS PART OF YOUR REVIEW, DID YOU COME TO UNDERSTAND

12:50PM  3      THAT STEPHEN O'NEILL AT DORSEY WAS A REPRESENTATIVE OF THAT

12:51PM  4      ASSIGNEE?

12:51PM  5      A.   I'M NOT FAMILIAR.  I DON'T KNOW STEPHEN O'NEILL EXACTLY.

12:51PM  6      I HAVE HEARD THE FIRM DORSEY BEING THE ASSIGNEE'S FIRM.

12:51PM  7      Q.   AND DO YOU SEE THAT THIS EMAIL IS FROM MARCH OF 2019?

12:51PM  8      A.   YES, MARCH 25TH.

12:51PM  9               MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5917.

12:51PM  10              MR. BRECHER:  OBJECTION.  801, YOUR HONOR.  THERE

12:51PM  11     ARE MULTIPLE LAYERS OF HEARSAY IN HERE AND I'M SEEING

12:51PM  12     CONVERSATIONS WITHIN CONVERSATIONS.

12:51PM  13         I ALSO HAVE 403 CONCERNS ABOUT THE DOUBLE OR TRIPLE

12:51PM  14     HEARSAY IN THE SECOND EMAIL DOWN.

12:51PM  15              MR. BOSTIC:  SO, YOUR HONOR, EMAILS HAVE COME IN AND

12:51PM  16     EXHIBITS HAVE COME IN TO SHOW NOTICE TO THE GOVERNMENT ON THIS

12:51PM  17     SPECIFIC TOPIC, WHAT THE GOVERNMENT KNEW AND WHAT INFORMATION

12:51PM  18     WAS BEING PROVIDED.

12:51PM  19         THIS SHOULD BE ADMITTED FOR THE SAME REASON.  I'M NOT

12:51PM  20     COMING IN FOR THE TRUTH, BUT RATHER TO SHOW WHAT INFORMATION

12:51PM  21     WAS GIVEN TO THE GOVERNMENT AND WHEN.

12:51PM  22              THE COURT:  THANK YOU.

12:51PM  23         IT'S BEING ADMITTED THEN FOR NOTICE ONLY, NOT FOR THE

12:52PM  24     TRUTH OF THE MATTER ASSERTED.

12:52PM  25              MR. BRECHER:  YES, YOUR HONOR.  I'M SORRY.

SONNIER CROSS BY MR. BOSTIC                                    6791

12:52PM    1                    THE COURT:  NO, GO AHEAD.

12:52PM    2                    MR. BRECHER:  THAT CURES THE HEARSAY ISSUE, OR

12:52PM    3       MIGHT.

12:52PM    4            BUT I STILL HAVE THE 403 CONCERNS ABOUT THE SECOND EMAIL,

12:52PM    5       ESPECIALLY GIVEN THAT THERE'S NO FOLLOWUP ON THIS AND THERE'S

12:52PM    6       NO CONTEXT.  I THINK THAT WOULD BE MISLEADING HERE.  THERE'S NO

12:52PM    7       FOUNDATION FOR IT.

12:52PM    8            I'M REFERRING TO THE EMAIL, THURSDAY MARCH 21ST, 2019, AT

12:52PM    9       5:50 P.M.

12:52PM   10            (PAUSE IN PROCEEDINGS.)

12:52PM   11                    THE COURT:  MR. BOSTIC.

12:52PM   12                    MR. BOSTIC:  YOUR HONOR, I THINK THE ENTIRE EMAIL IS

12:52PM   13       ADMISSIBLE FOR NOTICE.  THAT PORTION THAT MR. BRECHER IS

12:52PM   14       REFERENCING STILL DOES CONSTITUTE NOTICE THAT THE GOVERNMENT

12:52PM   15       RECEIVED.

12:52PM   16            IF THE COURT DISAGREES, I COULD REDACT.

12:52PM   17                    THE COURT:  ARE YOU ASKING -- THANK YOU.  THE LAST

12:53PM   18       PAGE IS PAGE 3.  IT SAYS PLACE HOLDER.

12:53PM   19            IS THAT PART OF YOUR ADMISSION AS WELL?

12:53PM   20                    MR. BOSTIC:  NO, YOUR HONOR.  I CAN ADMIT JUST THE

12:53PM   21       FIRST TWO PAGES.

12:53PM   22                    THE COURT:  ALL RIGHT.  THANK YOU.

12:53PM   23                    MR. BRECHER:  AND, YOUR HONOR, IF WE CAN REDACT THE

12:53PM   24       FIRST PORTION OF THAT MIDDLE EMAIL UP TO "HERE'S HOW DAVID."

12:53PM   25       I'M FINE WITH "HERE'S HOW DAVID."  I'M FINE.

12:53PM 1          BUT I THINK THE REST OF IT THERE ARE 403 CONCERNS.

12:53PM 2                  THE COURT:  MR. BOSTIC.

12:53PM 3                  MR. BOSTIC:  I DISAGREE, YOUR HONOR.  I THINK THIS

12:53PM 4     IS INFORMATION THAT THE GOVERNMENT RECEIVED DURING THE

12:53PM 5     INVESTIGATION.  IT'S RELEVANT TO ITS INVESTIGATION AND THE

12:53PM 6     STEPS THAT IT TOOK SUBSEQUENTLY.

12:53PM 7                  MR. BRECHER:  RESPECTFULLY, THERE'S NO EVIDENCE THAT

12:53PM 8     THE GOVERNMENT TOOK STEPS BASED ON THAT INFORMATION.  THERE

12:53PM 9     CERTAINLY IS NO FOUNDATION FOR THAT.

12:53PM 10                 THE COURT:  WELL, THERE'S BEEN TESTIMONY ABOUT THE

12:54PM 11    LIS AND ENCRYPTION, AND UNDER THE 403 ANALYSIS, THIS IS

12:54PM 12    PROBATIVE AS TO THAT ANALYSIS AND THE ENCRYPTION AND ABOUT

12:54PM 13    THAT.

12:54PM 14                 MR. BRECHER:  WELL, YOUR HONOR, I THINK THAT WOULD

12:54PM 15    HAVE TO ASSUME THE DOCUMENT'S ADMISSIBLE FOR ITS TRUTH.

12:54PM 16                 THE COURT:  WELL, IT'S GOING FOR NOTICE ONLY, I

12:54PM 17    THINK.

12:54PM 18         IS THAT RIGHT, MR. BOSTIC?

12:54PM 19                 MR. BOSTIC:  YES, YOUR HONOR.

12:54PM 20                 THE COURT:  THAT'S RIGHT.  I'M GOING TO ADMIT IT.

12:54PM 21    THE OBJECTION IS OVERRULED.

12:54PM 22         BUT, LADIES AND GENTLEMEN, THIS IS NOT OFFERED FOR THE

12:54PM 23    TRUTH OF THE MATTER ASSERTED IN THIS EMAIL.  IT ONLY GOES AS TO

12:54PM 24    THE ISSUE OF NOTICE OR INFORMATION IN REGARDS TO THIS DATABASE

12:54PM 25    AND THE GOVERNMENT'S CONNECTION TO IT.

12:54PM  1           AND IT MAY BE PUBLISHED.

12:54PM  2                MR. BOSTIC:  THANK YOU, YOUR HONOR.

12:54PM  3           (GOVERNMENT'S EXHIBIT 5917 WAS RECEIVED IN EVIDENCE.)

12:54PM  4      BY MR. BOSTIC:

12:54PM  5      Q.   LET'S START WITH PAGE 2 OF THIS EMAIL.

12:54PM  6           MR. SONNIER, DO YOU SEE THAT THIS EMAIL STARTS WITH A

12:55PM  7      MESSAGE TO ME FROM MR. O'NEILL FROM THE DORSEY LAW FIRM?

12:55PM  8      A.   YES.

12:55PM  9      Q.   AND DO YOU SEE IN THAT IMAGINE I'M REQUESTING A BRIEF CALL

12:55PM  10     TO TOUCH BASE ON SOME ISSUES REGARDING THERANOS?

12:55PM  11     A.   YES.

12:55PM  12     Q.   LET'S GO TO PAGE 1.

12:55PM  13          DO YOU SEE ON THE BOTTOM HALF OF THE PAGE THERE'S A

12:55PM  14     MESSAGE FROM MR. O'NEILL AND HE REPORTS SOME INFORMATION ABOUT

12:55PM  15     THE LIS DATABASE.

12:55PM  16          DO YOU SEE THAT?

12:55PM  17     A.   THE MIDDLE PART OF THE EMAIL CHAIN?

12:55PM  18     Q.   YES.  IT'S ALSO ON THE SCREEN IF THAT'S EASIER.

12:55PM  19     A.   YES, YES, I SEE THAT.

12:55PM  20     Q.   AND HE'S REPORTING TO THE GOVERNMENT THAT THE LIS DATABASE

12:55PM  21     WAS ENCRYPTED BY SUNNY BALWANI AND SOMEONE NAMED

12:55PM  22     SHEKAR CHANDRASEKARAN.

12:55PM  23          DO YOU SEE THAT?

12:55PM  24     A.   YES.

12:55PM  25     Q.   AND THEN THERE'S SOME INFORMATION RELAYED FROM

12:55PM 1    DAVID TAYLOR, WHO IS IDENTIFIED AS THE FORMER THERANOS

12:55PM 2    PRESIDENT.

12:55PM 3         DO YOU SEE THAT?

12:55PM 4    A.   YES.

12:55PM 5    Q.   AND ACCORDING TO THE EMAIL, MR. TAYLOR SAYS BEFORE THE

12:56PM 6    COMPANY FORMALLY CLOSED, WE WERE ADVISED THAT IT WOULD BE A

12:56PM 7    HERCULEAN UNDERTAKING TO GET THE LIS UP AND RUNNING AGAIN.

12:56PM 8         DO YOU SEE THAT?

12:56PM 9    A.   YES.

12:56PM 10   Q.   AND LET'S GO UP IN THIS CHAIN FORWARD IN TIME AND LOOK AT

12:56PM 11   ANOTHER EMAIL FROM MR. O'NEILL TO THE GOVERNMENT.

12:56PM 12        DO YOU SEE THAT?

12:56PM 13   A.   YES.

12:56PM 14   Q.   AND HE REPORTS THE "ASSIGNEE DOES NOT KNOW WHO

12:56PM 15   DECOMMISSIONED THE LIS DATABASE."

12:56PM 16        DO YOU SEE THAT?

12:56PM 17   A.   YES.

12:56PM 18   Q.   AND THEN IN THE MIDDLE OF THAT PARAGRAPH IT SAYS, "ERIC

12:56PM 19   STATED THAT THE LIS DATABASE WAS NOT INCLUDED IN THE MIGRATION

12:56PM 20   OF THE CORPORATE SERVER EQUIPMENT OUT OF THE THERANOS FACILITY

12:56PM 21   AND INTO THE COLO ENVIRONMENT."

12:56PM 22        DO YOU SEE THAT?

12:56PM 23   A.   YES, I SEE THAT.

12:56PM 24   Q.   INSTEAD IT SAYS, "IT WAS DECOMMISSIONED SOMETIME EARLIER."

12:56PM 25        DO YOU SEE THAT?

12:56PM   1      A.    YEAH, I SEE THAT.  BUT I THINK THAT MIGHT BE MISTAKEN.

12:57PM   2      Q.    I APPRECIATE THAT, SIR.  BUT ALL I'M ASKING FOR NOW IS

12:57PM   3      WHETHER YOU SEE THE LANGUAGE IN THE EMAIL?

12:57PM   4      A.    YES.

12:57PM   5      Q.    AND DO YOU HAVE PERSONAL KNOWLEDGE OF WHEN THE LIS

12:57PM   6      DATABASE WAS DECOMMISSIONED?  WERE YOU PRESENT WHEN THESE

12:57PM   7      THINGS WERE HAPPENING?

12:57PM   8      A.    I ONLY KNOW THE SEQUENCE OF EVENTS FROM THE MATERIALS THAT

12:57PM   9      I REVIEWED, AND THAT WOULD HAVE BEEN WHEN IT WAS DISASSEMBLED

12:57PM   10     AT THE END OF AUGUST 2018.

12:57PM   11     Q.    AND DO YOU SEE AT THE BOTTOM OF THAT PARAGRAPH THE EMAIL

12:57PM   12     CONTINUES, "PRIOR TO THE ASSIGNMENT FOR THE BENEFIT OF

12:57PM   13     CREDITORS, THERANOS HAD BEEN TOLD THAT IT COULD NO LONGER BE

12:57PM   14     RECONSTRUCTED WITH THE EXISTING RESOURCES."

12:57PM   15           DO YOU SEE THAT REFERRING TO THE LIS?

12:57PM   16     A.    YES.

12:57PM   17     Q.    IS THIS MORE INFORMATION FROM PEOPLE ASSOCIATED WITH

12:58PM   18     THERANOS THAT YOU ULTIMATELY DISAGREED WITH?

12:58PM   19     A.    I FEEL LIKE THIS IS SORT OF TANGENTIAL BECAUSE I'M

12:58PM   20     FOCUSSED JUST ON THE LIS DATABASE AND THE FEASIBILITY OF

12:58PM   21     RECOVERING THAT DATABASE AND ITS DATA.

12:58PM   22           I HAVE A FEELING THAT THIS IS SAYING THE LIS GENERALLY,

12:58PM   23     LIKE THE LIS SYSTEM, WHICH IS A BIGGER, A BIGGER TASK.

12:58PM   24           EVEN SO, I DO DISAGREE WITH IT, THAT IT COULDN'T BE

12:58PM   25     RECONSTRUCTED AT ALL OR THAT IT WAS A HERCULEAN TASK.  IT WOULD

12:58PM  1    JUST TAKE SOME EFFORT TO PUT IT BACK TOGETHER.

12:58PM  2    Q.   SO YOU SAY THAT THIS REFERENCES THE LIS SYSTEM AND NOT THE

12:58PM  3    DATABASE; IS THAT RIGHT?

12:58PM  4    A.   THAT, THAT -- THE SECOND STATEMENT WHERE IT COULD NO

12:59PM  5    LONGER BE CONSTRUCTED, I THINK THAT'S WHAT THEY WERE REFERRING

12:59PM  6    TO THERE.

12:59PM  7    Q.   ON ITS FACE, THOUGH, THIS EMAIL IS TALKING ABOUT THE LIS

12:59PM  8    DATABASE.

12:59PM  9        DO YOU SEE THE LANGUAGE AT THE TOP?

12:59PM  10   A.   THAT'S WHAT ERIC IS TALKING ABOUT.

12:59PM  11   Q.   SO YOU HAVE A DIFFERENT READ BASED ON YOUR ASSUMPTION

12:59PM  12   AFTER READING THE EMAIL?

12:59PM  13   A.   YEAH.  BASED ON MY TECHNICAL EXPERIENCE, KIND OF READING

12:59PM  14   IT FROM A TECHNICAL PERSPECTIVE, THAT'S MY INTERPRETATION.

12:59PM  15   Q.   AND YOU DISAGREED WITH THERANOS'S OWN UNDERSTANDING THAT

12:59PM  16   IT WOULD BE IMPOSSIBLE TO RECONSTRUCT THE LIS WITH EXISTING

12:59PM  17   RESOURCES; IS THAT CORRECT?

12:59PM  18        MR. BRECHER:  OBJECTION.  MISSTATES PRIOR TESTIMONY

12:59PM  19   AND THIS DOCUMENT.  THIS IS NOT THERANOS'S UNDERSTANDING.

12:59PM  20        THE COURT:  DO YOU WANT TO ASK THAT QUESTION AGAIN?

12:59PM  21        MR. BOSTIC:  SURE.

12:59PM  22   Q.   DO YOU SEE IN THIS EMAIL IT INDICATES THAT THERANOS HAD

12:59PM  23   BEEN TOLD THAT IT COULD NO LONGER RECONSTRUCT THE LIS DATABASE

12:59PM  24   WITH THE EXISTING RESOURCES?

12:59PM  25   A.   I DO SEE THAT, YES.

SONNIER CROSS BY MR. BOSTIC

01:00PM  1    Q.   DO YOU BELIEVE THAT THAT INFORMATION PROVIDED TO THERANOS

01:00PM  2    WAS INCORRECT?

01:00PM  3             MR. BRECHER:  OBJECTION, YOUR HONOR.  THIS DOCUMENT

01:00PM  4    WAS ADMITTED FOR NOTICE TO THE GOVERNMENT, NOT FOR THE TRUTH OF

01:00PM  5    THE MULTIPLE LAYERS OF HEARSAY WITHIN.

01:00PM  6             THE COURT:  ARE YOU ASKING HIS OPINION NOW SEPARATE

01:00PM  7    FROM THE CONTEXT HERE, OR IS THIS A HYPOTHETICAL?

01:00PM  8             MR. BOSTIC:  YES, YOUR HONOR.  THIS WAS INFORMATION

01:00PM  9    PROVIDED TO THE GOVERNMENT.  I'M ASKING THIS WITNESS IF HE

01:00PM 10    AGREES OR DISAGREES WITH THE PICTURE THAT IS BEING PAINTED OF

01:00PM 11    THE GOVERNMENT AT THIS TIME.

01:00PM 12             MR. BRECHER:  AS PHRASED, I THINK THAT'S OKAY.  BUT

01:00PM 13    THE QUESTION WAS ABOUT INFORMATION PROVIDED TO THERANOS.

01:00PM 14             THE COURT:  WELL, I THINK MR. BOSTIC REPHRASED THE

01:00PM 15    QUESTION IN A DIFFERENT WAY.

01:00PM 16         DID YOU UNDERSTAND THE QUESTION NOW, SIR?

01:00PM 17             THE WITNESS:  I THINK I'VE LOST THE TRAIL.

01:00PM 18    BY MR. BOSTIC:

01:00PM 19    Q.   LET ME TRY TO WEAVE THAT BACK TOGETHER.

01:00PM 20             THE COURT:  WELL, THEN LET'S TRY TO REBOOT THEN,

01:00PM 21    SHALL WE?

01:00PM 22    BY MR. BOSTIC:

01:00PM 23    Q.   DO YOU SEE IN THIS EMAIL THAT THIS REPORTS TO THE

01:00PM 24    GOVERNMENT THAT THERANOS HAD BEEN TOLD THAT IT WOULD NOT BE

01:01PM 25    ABLE TO RECONSTRUCT THE LIS WITH EXISTING RESOURCES; IS THAT

01:01PM 1    CORRECT?

01:01PM 2    A.   YES.

01:01PM 3    Q.   AND YOU ULTIMATELY CONCLUDED SOMETHING DIFFERENT BASED ON

01:01PM 4    YOUR REVIEW; IS THAT FAIR?

01:01PM 5    A.   YES.

01:01PM 6    Q.   OKAY.  WE CAN SET THAT ASIDE.

01:01PM 7         YOU TESTIFIED EARLIER THAT YOU NEVER ACTUALLY ACCESSED THE

01:01PM 8    LIS DATABASE, SO YOU HAVE NO FIRST-HAND KNOWLEDGE OF ITS

01:01PM 9    CONTENTS; IS THAT FAIR?

01:01PM 10   A.   YES, I NEVER ACCESSED THE ACTUAL PRODUCTION DATABASE.

01:01PM 11   Q.   DO YOU ALSO AGREE THAT YOU DON'T HAVE ANY FIRST-HAND

01:01PM 12   KNOWLEDGE OF WHEN OR TO WHAT EXTENT LIS WAS USED TO STORE

01:01PM 13   THERANOS DATA?

01:01PM 14   A.   THE ONLY INFORMATION THAT I REVIEWED IS JUST GENERAL USER

01:01PM 15   GUIDE INFORMATION ABOUT SORT OF WHAT THEY WERE SHOWING THE USER

01:01PM 16   COULD DO IN THE SYSTEM.  THAT'S IT.

01:02PM 17   Q.   SO TO ANSWER MY QUESTION THEN, YOU DON'T HAVE ANY PERSONAL

01:02PM 18   KNOWLEDGE OF TO WHAT EXTENT THERANOS USED THE LIS DATABASE?

01:02PM 19   A.   THEY'RE IN THE MATERIALS.  THEY DISCUSS THAT -- IN VARIOUS

01:02PM 20   PLACES THEY SAY ALL, OR AT LEAST MOST, THERANOS LAB TEST

01:02PM 21   INFORMATION, PATIENT INFORMATION, STUFF LIKE THAT, IS STORED IN

01:02PM 22   THE DATABASE AFTER CERTAIN, AFTER A CERTAIN TIME.

01:02PM 23        I THINK THEY WERE USING A PREVIOUS SYSTEM, AND THEY MOVED

01:02PM 24   THAT DATA INTO THE NEW SYSTEM.

01:02PM 25   Q.   LET ME SEE IF I CAN CLARIFY MY QUESTIONS FOR YOU.

01:02PM   1        SO WHEN I USE THE TERM "FIRST-HAND KNOWLEDGE," I MEAN

01:02PM   2   KNOWLEDGE OF WHAT YOU'VE SEEN OF THE DATABASE AND NOT

01:02PM   3   INFORMATION THAT YOU'VE GATHERED FROM READING MATERIALS.

01:02PM   4        CAN WE USE THAT AS A SHORTHAND FOR THAT?

01:02PM   5   A.   OKAY.

01:03PM   6   Q.   SO TO ASK THAT QUESTION AGAIN, DO YOU HAVE ANY FIRST-HAND

01:03PM   7   PERSONAL KNOWLEDGE, NOT FROM WHAT YOU'VE READ, BUT FIRST-HAND

01:03PM   8   KNOWLEDGE ABOUT THE EXTENT TO WHICH THERANOS ACTUALLY USED THE

01:03PM   9   LIS?

01:03PM   10  A.   RIGHT.  SO AS I'VE SAID, I NEVER HAD MY HANDS ON THE

01:03PM   11  DATABASE ITSELF.

01:03PM   12  Q.   OKAY.  IF I COULD ASK YOU TO LOOK AT 5930.

01:03PM   13  A.   5930.

01:03PM   14  Q.   AND AT 5930, DO YOU SEE AN EMAIL CHAIN BETWEEN PEOPLE AT

01:03PM   15  THERANOS, INCLUDING MR. BALWANI?

01:03PM   16  A.   INCLUDING WHO?

01:03PM   17  Q.   MR. BALWANI, THE DEFENDANT.

01:03PM   18  A.   OH, OKAY.  YES.

01:03PM   19  Q.   DO YOU SEE THAT, SIR?

01:04PM   20  A.   I'M LOOKING.  MAYBE IT'S FURTHER DOWN.

01:04PM   21  Q.   ARE YOU LOOKING AT 5930?

01:04PM   22  A.   5930.  YES, I'M LOOKING AT 5930.

01:04PM   23  Q.   AT THE TOP OF THE PAGE, DO YOU SEE THAT THIS IS AN EMAIL

01:04PM   24  CHAIN INCLUDING MAX FOSQUE AND CHRISTIAN HOLMES AT THERANOS,

01:04PM   25  ALONG WITH SUNNY BALWANI?

01:04PM   1      A.   SOMEHOW 5930 THAT I HAVE COMES FROM MIKE ROMEO AND THEN I

01:04PM   2      SEE CHRIS DAVIES --

01:04PM   3              MR. BOSTIC:  MAY I APPROACH, YOUR HONOR?

01:04PM   4              THE COURT:  YES.

01:04PM   5          MR. BRECHER, DO YOU HAVE 5930?

01:04PM   6              MR. BRECHER:  I DO, YOUR HONOR, CONSISTENT WITH

01:04PM   7      MR. BOSTIC'S DESCRIPTION.

01:04PM   8              THE COURT:  OKAY.

01:04PM   9      BY MR. BOSTIC:

01:04PM  10      Q.   MR. SONNIER, I'VE JUST HANDED YOU A COPY OF 5930.

01:04PM  11          DO YOU SEE IT THERE?

01:04PM  12      A.   OKAY.

01:05PM  13      Q.   AND DO YOU SEE THAT THAT'S AN EMAIL CHAIN INCLUDING

01:05PM  14      MR. BALWANI?

01:05PM  15      A.   YES, I SEE HIS NAME ON THIS EMAIL.

01:05PM  16              MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS 5930.

01:05PM  17              MR. BRECHER:  OBJECTION.  BEYOND THE SCOPE OF DIRECT

01:05PM  18      AND PRIOR RULINGS, YOUR HONOR.

01:05PM  19              THE COURT:  THIS IS THE TWO PAGES, MR. BOSTIC?

01:05PM  20              MR. BOSTIC:  YES, YOUR HONOR.

01:05PM  21              THE WITNESS:  IT SEEMS TO BE THREE PAGES.

01:05PM  22              MR. BOSTIC:  THE WITNESS, WHO HAS MY COPY, POINTS

01:05PM  23      OUT IT MAY BE THREE PAGES.

01:05PM  24              THE COURT:  YES.

01:05PM  25              MR. BRECHER:  AND I'LL TAKE THE TIME TO POINT OUT I

01:05PM   1    THINK IT MIGHT ACTUALLY BE FOUR.

01:05PM   2            THE COURT:  IT'S TWO PHYSICAL PAGES THAT ARE PRINTED

01:05PM   3    ON BOTH SIDES.  CAN WE ALL AGREE ON THAT?

01:05PM   4            MR. BRECHER:  YES.

01:05PM   5        (LAUGHTER.)

01:06PM   6            THE COURT:  MR. BOSTIC, I'M NOT CERTAIN ABOUT THE

01:06PM   7    ENTIRETY OF THIS CHAIN, WHAT IT ADDS TO THE EXAMINATION OF THIS

01:06PM   8    WITNESS.

01:06PM   9            MR. BOSTIC:  APOLOGIES, YOUR HONOR.

01:06PM  10        I THINK I COULD LIMIT THE EXHIBIT TO THE FIRST PAGE AND

01:07PM  11    PERHAPS THE VERY TOP PORTION OF THE SECOND PAGE.

01:07PM  12            (PAUSE IN PROCEEDINGS.)

01:07PM  13            MR. BRECHER:  SAME OBJECTIONS, YOUR HONOR, SCOPE AND

01:07PM  14    PRIOR RULINGS ON THE SCOPE OF THIS WITNESS'S TESTIMONY.

01:08PM  15            THE COURT:  MR. BOSTIC, I'M GOING TO -- WITHOUT A

01:08PM  16    FOUNDATION, I'M GOING TO SUSTAIN THE OBJECTION.

01:08PM  17            MR. BOSTIC:  OKAY.  THANK YOU, YOUR HONOR.

01:08PM  18    Q.   MR. SONNIER, DO YOU HAVE ANY FIRST-HAND KNOWLEDGE -- AND

01:08PM  19    AGAIN, THAT'S PERSONAL KNOWLEDGE -- OF ANY PROBLEMS WITH THE

01:08PM  20    LABORATORY INFORMATION SYSTEM THAT MIGHT HAVE AFFECTED ITS

01:08PM  21    STABILITY OR RELIABILITY?

01:08PM  22    A.   NO, I HAVE NO KNOWLEDGE OF THAT ASPECT.

01:08PM  23    Q.   CAN I ASK YOU TO TURN THE PAGE TO 5931, PLEASE.

01:08PM  24    A.   OKAY.  5931.

01:08PM  25    Q.   5931, DO YOU SEE ANOTHER EMAIL CHAIN INTERNALLY AT

01:08PM   1     THERANOS INCLUDING MR. BALWANI?

01:09PM   2     A.   MY 5931 SEEMS TO BE WHAT YOU JUST HANDED ME AS 5903.

01:09PM   3     Q.   OH, I SEE.

01:09PM   4     A.   OH, MAYBE I NEED TO GO TO THE NEXT PAGE.

01:09PM   5     Q.   AND IT SHOULD BE STAMPED AT THE BOTTOM OF THE PAGE 5931.

01:09PM   6     A.   OKAY.  SO 5931.  GOT IT.

01:09PM   7     Q.   DO YOU SEE A DECEMBER 2014 EMAIL CHAIN?

01:09PM   8     A.   MY 5931 IS THURSDAY, DECEMBER 18TH, 2014.

01:09PM   9     Q.   THAT'S CORRECT.

01:09PM  10     A.   OKAY.

01:09PM  11     Q.   AND DO YOU SEE THAT THAT EMAIL CHAIN INCLUDES MR. BALWANI?

01:09PM  12     A.   YES, THE SECOND PORTION AT LEAST.

01:09PM  13          MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT OFFERS --

01:09PM  14     I'M SORRY TO TALK OVER YOU.

01:10PM  15          THE GOVERNMENT OFFERS 5931.

01:10PM  16          MR. BRECHER:  SAME OBJECTIONS, YOUR HONOR,

01:10PM  17     PARTICULARLY AS TO THE FINAL EMAIL ON PAGE 2, I GUESS THE

01:10PM  18     EARLIEST IN THE CHAIN.  BEYOND THE SCOPE AND PRIOR RULINGS ON

01:10PM  19     THE SCOPE OF HIS TESTIMONY.

01:10PM  20          MR. BOSTIC:  SO YOUR HONOR -- I'LL LET THE COURT

01:10PM  21     REVIEW IT.

01:10PM  22          THE COURT:  GO AHEAD.

01:10PM  23          MR. BOSTIC:  THIS WITNESS IS TESTIFYING ABOUT THE

01:10PM  24     FEASIBILITY OF RECOVERING THIS DATABASE.

01:10PM  25          I SUBMIT THAT EVIDENCE REGARDING ITS STABILITY AND BUGS

01:10PM  1    WITH THE DATABASE IS RELEVANT TO THAT ISSUE, ESPECIALLY TO THE

01:10PM  2    EXTENT THAT THE WITNESS HAS OR HAS NOT CONSIDERED THIS EVIDENCE

01:10PM  3    BEFORE.

01:10PM  4              THE COURT:  WHY DON'T YOU LAY A FOUNDATION AS TO

01:10PM  5    THAT?  I THINK YOU ASKED THAT OF THE PREVIOUS DOCUMENT.

01:10PM  6    BY MR. BOSTIC:

01:10PM  7    Q.   MR. SONNIER, YOU REVIEWED A WIDE RANGE OF MATERIALS

01:10PM  8    PROVIDED TO YOU BY DEFENSE COUNSEL IN ORDER TO REACH YOUR

01:10PM  9    CONCLUSIONS; IS THAT RIGHT?

01:10PM  10   A.   YES, I DID.

01:10PM  11   Q.   AND DID THE INFORMATION PROVIDED BY DEFENSE COUNSEL

01:11PM  12   INCLUDE ANY EVIDENCE REGARDING STABILITY PROBLEMS OR BUGS WITH

01:11PM  13   THE THERANOS LIS DATABASE?

01:11PM  14   A.   I DON'T RECALL ANY SUCH INFORMATION, AND BASICALLY THAT

01:11PM  15   WOULDN'T HAVE MATTERED TO ME ANYWAY.

01:11PM  16   Q.   ARE YOU AWARE OF CIRCUMSTANCES WHERE STABILITY PROBLEMS OR

01:11PM  17   BUGS OR ERRORS IN THE DATABASE CAN CREATE CHALLENGES IN

01:11PM  18   ACCESSING OR RECOVERING THE DATABASE?

01:11PM  19   A.   NO, I AM NOT.

01:11PM  20   Q.   IT'S YOUR TESTIMONY TODAY THAT STABILITY PROBLEMS AND

01:11PM  21   ERRORS IN THE DATABASES NEVER HAVE AN EFFECT ON THE ABILITY TO

01:11PM  22   ACCESS A DATABASE?

01:11PM  23              MR. BRECHER:  OBJECTION.  MISSTATES PRIOR TESTIMONY.

01:11PM  24              THE COURT:  OVERRULED.  HE CAN ANSWER THE QUESTION.

01:11PM  25              THE WITNESS:  SO ONLY IF THE PHYSICAL EQUIPMENT IS

01:11PM  1    AT FAULT, SO LIKE THE HARD DRIVES THEMSELVES ARE FAILING.

01:11PM  2        TO THE EXTENT THAT THERE ARE SOME FLAWS OR OTHER PROBLEMS

01:12PM  3    WITH EITHER THE SOFTWARE OR THE DATABASE DESIGN, THAT WOULDN'T

01:12PM  4    AFFECT THE RECOVERY.  YOU WOULD SIMPLY RECOVER IT BUG FOR BUG

01:12PM  5    LIKE IT WAS.

01:12PM  6        SO IF IT HAS INTERNAL PROBLEMS IN ITS STRUCTURE, IT

01:12PM  7    WOULDN'T BE A PROBLEM RECOVERING.

01:12PM  8        IF THE HARD DRIVE, THE EQUIPMENT HAD FAILED, THEN YOU

01:12PM  9    WOULD HAVE A HARD TIME RECOVERING.

01:12PM 10    BY MR. BOSTIC:

01:12PM 11    Q.  IF YOU RECOVERED A DATABASE WITH BUGS, HOWEVER, COULDN'T

01:12PM 12    YOU STILL ENCOUNTER PROBLEMS ACTUALLY ACCESSING AND MAKING USE

01:12PM 13    OF THAT DATA?

01:12PM 14    A.  NOT IN THE CONTEXT OF A MICROSOFT SQL SERVER.  THE DATA

01:12PM 15    MAY INDEED HAVE LOGIC ERRORS IN IT AND BE SOMEHOW INCONSISTENT

01:12PM 16    AND RETURN AT A USER LEVEL BUGGY OR INCORRECT INFORMATION, BUT

01:12PM 17    THE DATA WOULD BE THE DATA AND IT WOULD STILL BE RECOVERABLE.

01:12PM 18    Q.  AND ONCE IT'S RECOVERABLE, IT'S YOUR TESTIMONY THAT THIS

01:12PM 19    COULD STILL BE ACCESSED AND MANIPULATED REGARDLESS OF THE BUGS?

01:12PM 20    A.  THAT'S CORRECT.

01:12PM 21    Q.  OKAY.  WE CAN SET THAT ASIDE.

01:13PM 22        YOU WERE QUALIFIED AS AN EXPERT IN SQL DATABASES DATA

01:13PM 23    RECOVERY AND DATA ENCRYPTION; IS THAT RIGHT?

01:13PM 24    A.  YES.

01:13PM 25    Q.  AND YOU ARE NOT HERE TO TESTIFY ABOUT SUBJECTS LIKE BEST

01:13PM   1      PRACTICES FOR A CRIMINAL INVESTIGATION; IS THAT RIGHT?

01:13PM   2      A.   NO, I'M NOT.

01:13PM   3      Q.   YOU DON'T HAVE A BASIS TO GIVE AN OPINION ON SOMETHING

01:13PM   4      LIKE THAT; IS THAT RIGHT?

01:13PM   5      A.   NO.  I DO COMPUTER FORENSICS FOR LEGAL CASES, BUT THAT'S

01:13PM   6      REALLY A DIFFERENT TOPIC.

01:13PM   7      Q.   SO YOU'RE NOT HERE TO GIVE ANY OPINION ABOUT, FOR EXAMPLE,

01:13PM   8      WHAT CONSTITUTES A GOOD CRIMINAL INVESTIGATION OR A BAD

01:13PM   9      CRIMINAL INVESTIGATION; RIGHT?

01:13PM  10      A.   I'M NOT HERE FOR THAT.

01:13PM  11      Q.   AND YOU'RE NOT HERE TO WEIGH IN ON SOMETHING LIKE HOW

01:13PM  12      PROSECUTORS PRIORITIZE INVESTIGATIVE STEPS IN A COMPLEX

01:13PM  13      CRIMINAL INVESTIGATION; IS THAT FAIR?

01:13PM  14      A.   THAT'S CORRECT.

01:14PM  15      Q.   AND ALTHOUGH YOU'RE AN EXPERT IN SQL DATABASES, YOUR

01:14PM  16      TESTIMONY HERE HAS BEEN ABOUT A PARTICULAR DATABASE; IS THAT

01:14PM  17      RIGHT?

01:14PM  18      A.   IT'S A PARTICULAR DATABASE IN THAT IT'S A PARTICULAR --

01:14PM  19      IT'S -- WE'RE TALKING ABOUT A PARTICULAR DATABASE IN THAT THE

01:14PM  20      SPECIFIC DATA THAT WOULD BE RECOVERED WOULD BE PARTICULAR.

01:14PM  21          BUT THE TECHNIQUES I'M DESCRIBING WOULD APPLY TO ANY SQL

01:14PM  22      SERVER DATABASE.

01:14PM  23      Q.   BUT THE SPECIFIC DATABASE THAT WE'RE TALKING ABOUT TODAY

01:14PM  24      IS THE THERANOS LIS DATABASE; RIGHT?

01:14PM  25      A.   THAT IS CORRECT.

01:14PM   1    Q.   AND WHEN IT COMES TO THAT DATABASE, YOU'RE TESTIFYING

01:14PM   2    ABOUT THE DATABASE THAT YOU HAD NO ROLE IN DESIGNING; IS THAT

01:14PM   3    RIGHT?

01:14PM   4    A.   THAT IS CORRECT.  BUT THE -- AGAIN, THE DESIGN WOULDN'T

01:14PM   5    IMPACT ANY OF MY OPINION BECAUSE IT OPERATES UNDERNEATH ALL OF

01:15PM   6    THAT.

01:15PM   7    Q.   YOU ALSO HAD NO ROLE IN INSTALLING OR SETTING UP THE

01:15PM   8    THERANOS LIS DATABASE; IS THAT RIGHT?

01:15PM   9    A.   THAT IS CORRECT.

01:15PM   10   Q.   YOU HAD NO ROLE IN MAINTAINING THE THERANOS LIS; IS THAT

01:15PM   11   CORRECT?

01:15PM   12   A.   THAT'S CORRECT.

01:15PM   13   Q.   AT NO POINT DID YOU EVER OPERATE OR ACCESS THE THERANOS

01:15PM   14   LIS; IS THAT CORRECT?

01:15PM   15   A.   THAT'S CORRECT.

01:15PM   16   Q.   AND, IN FACT, YOU NEVER SAW THE THERANOS LIS OR ANY

01:15PM   17   COMPONENT OF THE DATABASE IN PERSON; IS THAT CORRECT?

01:15PM   18   A.   OTHER THAN THE BACKUP THAT I LOOKED AT AND WAS UNABLE TO

01:15PM   19   RESTORE, THAT IS THE ONLY HANDS ON THAT I HAD WITH THE LIS

01:15PM   20   DATABASE.

01:15PM   21   Q.   AND THE PEOPLE WHO DID HAVE THAT FIRST-HAND KNOWLEDGE, THE

01:15PM   22   PEOPLE WHO SET UP, WHO OPERATED, WHO MAINTAINED THE DATABASE,

01:15PM   23   YOU NEVER HAVE SPOKEN TO A SINGLE ONE OF THEM; IS THAT CORRECT?

01:15PM   24   A.   THAT'S CORRECT, I'VE NEVER SPOKEN TO THOSE INDIVIDUALS.

01:15PM   25   Q.   YOU LEARNED ABOUT THE DATABASE PARTLY BY REVIEWING

01:16PM   1    STATEMENTS AND COMMUNICATIONS FROM SOME OF THOSE PEOPLE WITH

01:16PM   2    FIRST-HAND KNOWLEDGE?

01:16PM   3    A.   YES.

01:16PM   4    Q.   AND IN REVIEWING THAT INFORMATION FROM THOSE INDIVIDUALS,

01:16PM   5    YOU BECAME AWARE OF SOME INFORMATION FROM THEM THAT WAS

01:16PM   6    DIRECTLY CONTRARY TO YOUR ULTIMATE CONCLUSION IN THE CASE; IS

01:16PM   7    THAT CORRECT?

01:16PM   8    A.   I WENT THROUGH ALL OF THE STATEMENTS, AND IF THERE WAS

01:16PM   9    ANYTHING THAT SEEMED ODD OR INCONSISTENT, I INVESTIGATED IT.

01:16PM   10   Q.   DURING OUR CONVERSATION TODAY, HAVEN'T WE LOOKED AT SOME

01:16PM   11   SPECIFIC EXAMPLES WHERE YOU WERE PROVIDED STATEMENTS FROM

01:16PM   12   INDIVIDUALS THAT CONFLICTED WITH YOUR ULTIMATE CONCLUSION?

01:16PM   13   A.   THERE WERE STATEMENTS THAT DIDN'T MAKE SENSE TO ME AT THE

01:16PM   14   TIME AND I INVESTIGATED THOSE, AND, YES, I ARRIVED AT MY

01:17PM   15   OPINIONS THAT WOULD BE CONTRARY TO THAT STATEMENT.

01:17PM   16   Q.   IS THAT YES TO MY QUESTION, SIR?

01:17PM   17   A.   YES.

01:17PM   18   Q.   AND THE QUESTION OF WHETHER THE LIS COULD HAVE BEEN

01:17PM   19   RECOVERED FROM THE ORIGINAL IS SOMETHING OF A HYPOTHETICAL

01:17PM   20   BECAUSE YOU DON'T HAVE PERSONAL KNOWLEDGE OF WHERE THAT

01:17PM   21   HARDWARE ACTUALLY IS; IS THAT CORRECT?

01:17PM   22        MR. BRECHER:  OBJECTION.  COUNSEL IS TESTIFYING.

01:17PM   23   IT'S ARGUMENT.

01:17PM   24        THE COURT:  OVERRULED.

01:17PM   25        DO YOU UNDERSTAND THE QUESTION?

SONNIER CROSS BY MR. BOSTIC

01:17PM 1                    THE WITNESS:  YES, I DO.

01:17PM 2                    THE COURT:  YOU CAN ANSWER IT.

01:17PM 3                    THE WITNESS:  NO, ABSOLUTELY NOT.  THIS IS A SQL

01:17PM 4     SERVER, IT'S A KNOWN PRODUCT, IT'S WELL DOCUMENTED BY

01:17PM 5     MICROSOFT, IT HAS WELL-KNOWN RECOVERY TECHNIQUES, AS ARE THE

01:17PM 6     EQUIPMENT WHICH IT OPERATES.

01:17PM 7          IT'S ALL WHAT WE CALL COMMERCIAL OFF-THE-SHELF EQUIPMENT,

01:17PM 8     AGAIN, WITH DEFINED AND WELL-KNOWN WAYS TO RECOVER THE DATA.

01:17PM 9     BY MR. BOSTIC:

01:17PM 10    Q.   AND YOU'RE ASSUMING THAT NOT BASED ON FIRST-HAND

01:17PM 11    INFORMATION, BUT BASED ON THE MATERIALS THAT YOU'VE REVIEWED;

01:17PM 12    IS THAT CORRECT?

01:17PM 13    A.   WELL, I'M GOING BY THE INFORMATION THAT SAYS WHAT THE

01:18PM 14    EQUIPMENT WAS AND WHAT THE SOFTWARE WAS AND THEN USING THAT

01:18PM 15    HARD TECHNICAL INFORMATION TO ARRIVE AT MY OPINION.

01:18PM 16    Q.   AND DO YOU HAVE THE ABILITY, AS OF TODAY, TO CONFIRM

01:18PM 17    WHETHER YOU'RE RIGHT OR WRONG, THAT IS, WHETHER TO ACTUALLY --

01:18PM 18    LET ME START THAT AGAIN.

01:18PM 19         DO YOU HAVE THE ABILITY TO TEST YOUR OPINION AND TO

01:18PM 20    ACTUALLY TRY TO RECONSTRUCT THE DATABASE FROM THE ORIGINAL

01:18PM 21    HARDWARE?

01:18PM 22    A.   I WOULD BE HAPPY TO DO THAT IF YOU PROVIDED ME THE DISK

01:18PM 23    DRIVES.

01:18PM 24    Q.   AND SITTING HERE TODAY, ARE YOU AWARE OF WHERE THOSE DISK

01:18PM 25    DRIVES ARE?  DO YOU HAVE THAT PERSONAL KNOWLEDGE?

01:18PM 1      A.   I DO NOT KNOW WHERE THE DISK DRIVES ARE.

01:18PM 2      Q.   THANK YOU.

01:18PM 3           NO FURTHER QUESTIONS.

01:18PM 4               THE COURT:   REDIRECT?

01:18PM 5               MR. BRECHER:   YES, YOUR HONOR.   THANK YOU.

01:18PM 6                     **REDIRECT EXAMINATION**

01:18PM 7      BY MR. BRECHER:

01:18PM 8      Q.   THANK YOU, MR. SONNIER.

01:19PM 9           I'M GOING TO ASK YOU A FEW QUESTIONS ABOUT YOUR

01:19PM 10     CONVERSATION JUST NOW WITH MR. BOSTIC.

01:19PM 11          IS THAT ALL RIGHT?

01:19PM 12     A.   CERTAINLY.

01:19PM 13     Q.   OKAY.   AND MR. BOSTIC ASKED YOU ABOUT SOME OF THE

01:19PM 14     MATERIALS THAT YOU REVIEWED.

01:19PM 15          DO YOU REMEMBER THAT?

01:19PM 16     A.   YES.

01:19PM 17     Q.   AND HE ASKED YOU WHETHER THOSE WERE PROVIDED BY THE

01:19PM 18     DEFENSE?

01:19PM 19     A.   YES.

01:19PM 20     Q.   DID YOU HAVE A CHANCE TO REQUEST ADDITIONAL MATERIALS THAT

01:19PM 21     YOU THOUGHT NECESSARY TO FORM YOUR OPINION?

01:19PM 22     A.   YES, AND I DID SO SEVERAL TIMES.

01:19PM 23     Q.   OKAY.   AND DID YOU RECEIVE MATERIALS THAT YOU THOUGHT WERE

01:19PM 24     SUFFICIENT TO FORM YOUR OPINIONS?

01:19PM 25     A.   YES, I DID.

01:19PM 1    Q.   OKAY.  MR. BOSTIC SHOWED YOU A FEW INTERVIEW MEMOS I THINK

01:20PM 2    CONDUCTED BY THE FBI.

01:20PM 3         DO YOU REMEMBER THAT?

01:20PM 4    A.   YES.

01:20PM 5    Q.   AND HAD YOU SEEN THOSE BEFORE?

01:20PM 6    A.   YES, I HAD.

01:20PM 7    Q.   WHO PROVIDED THEM TO YOU?

01:20PM 8    A.   THE DEFENSE TEAM DID.

01:20PM 9    Q.   AND DID YOU CONSIDER THOSE MEMORANDA IN FORMING YOUR

01:20PM 10   OPINIONS?

01:20PM 11   A.   YES, I DID.

01:20PM 12   Q.   AND YOU MAY HAVE MR. BOSTIC'S BINDER STILL IN FRONT OF

01:20PM 13   YOU, AND I'M NOT GOING TO DWELL ON THIS, BUT LET'S START WITH

01:20PM 14   EXHIBIT 5929.

01:20PM 15        TAKE YOUR TIME, SIR.

01:20PM 16   A.   OKAY.  5929.  OKAY, I THINK I HAVE IT.

01:20PM 17   Q.   AND IS THIS ONE OF THOSE MEMORANDA THAT YOU REVIEWED?

01:20PM 18   A.   IT IS INDEED.

01:20PM 19   Q.   AND DO YOU HAVE AN UNDERSTANDING ABOUT WHEN THE INTERVIEW

01:20PM 20   REFERENCED WITHIN IT TOOK PLACE, WHAT YEAR?

01:21PM 21   A.   2020.

01:21PM 22   Q.   OKAY.  HOW ABOUT 5927.  LET ME KNOW WHEN YOU'RE THERE,

01:21PM 23   SIR?

01:21PM 24   A.   5927.  YES, I'VE GOT IT.

01:21PM 25   Q.   IS THIS ANOTHER ONE OF THOSE INTERVIEW MEMORANDA CONDUCTED

01:21PM  1    BY THE GOVERNMENT?

01:21PM  2    A.   YES, IT IS.

01:21PM  3    Q.   AND DO YOU KNOW WHAT YEAR THIS INTERVIEW TOOK PLACE BASED

01:21PM  4    ON THE INFORMATION THAT YOU RECEIVED?

01:21PM  5    A.   YES, 2020.

01:21PM  6    Q.   AND IF YOU WOULD FLIP AHEAD ONE TAB TO EXHIBIT 5928.

01:21PM  7    A.   5928, YES.

01:21PM  8    Q.   IS THIS ANOTHER ONE OF THOSE MEMORANDA THAT WE'VE BEEN

01:21PM  9    TALKING ABOUT?

01:21PM  10   A.   YES, IT IS.

01:21PM  11   Q.   AND DO YOU HAVE AN UNDERSTANDING ABOUT WHICH YEAR THIS

01:21PM  12   INTERVIEW TOOK PLACE?

01:21PM  13   A.   YES.  AGAIN, 2020.

01:21PM  14   Q.   AND COULD WE LOOK AT EXHIBIT 5938?

01:21PM  15   A.   5938.  UH-HUH.

01:22PM  16   Q.   MR. SONNIER, IS THIS ANOTHER ONE OF THOSE INTERVIEW

01:22PM  17   MEMORANDA THAT WE'VE BEEN DISCUSSING?

01:22PM  18   A.   YES, IT IS.

01:22PM  19   Q.   AND DO YOU KNOW WHAT YEAR -- DO YOU HAVE AN UNDERSTANDING

01:22PM  20   OF WHAT YEAR THIS INTERVIEW TOOK PLACE?

01:22PM  21   A.   2020.

01:22PM  22   Q.   OKAY.  STICKING WITH THOSE MEMORANDA, MR. BOSTIC ASKED YOU

01:22PM  23   ABOUT INFORMATION YOU RECEIVED FROM VARIOUS I.T. PERSONS

01:22PM  24   WORKING AT OR NEAR THERANOS IN AUGUST 2018.

01:22PM  25        DO YOU REMEMBER THAT?

01:22PM 1    A.   I BELIEVE SO, YES.

01:22PM 2    Q.   OKAY.  AND ONE OF THE PEOPLE THAT HE SPOKE TO ABOUT -- I

01:22PM 3    THINK YOU SAW FOUR MEMORANDUM FROM HIM -- WAS MICHAEL CHUNG.

01:22PM 4    A.   YES.

01:22PM 5    Q.   AND I BELIEVE YOU STARTED TO TELL MR. BOSTIC ABOUT YOUR

01:22PM 6    UNDERSTANDING OF MR. CHUNG'S ROLE AT THE TIME.

01:22PM 7    A.   YES.

01:22PM 8    Q.   AND COULD YOU DESCRIBE THAT IN GREATER DEPTH, JUST YOUR

01:22PM 9    UNDERSTANDING, SIR?

01:22PM 10          MR. BOSTIC:  OBJECTION.  FOUNDATION.  CALLS FOR

01:22PM 11   SPECULATION.

01:22PM 12          MR. BRECHER:  YOUR HONOR, THE GOVERNMENT SQUARELY

01:23PM 13   OPENED THE DOOR TO THIS BY ASKING ABOUT MR. CHUNG'S RELATIVE

01:23PM 14   EXPERIENCE WITH LIS, AND I THINK IT'S FAIR TO CONTEXTUALIZE

01:23PM 15   THAT.

01:23PM 16          THE COURT:  THE WITNESS HAS ALREADY TESTIFIED

01:23PM 17   SEVERAL TIMES ABOUT HIS OPINION ABOUT MR. CHUNG BEING A

01:23PM 18   CONTRACT EMPLOYEE, I THINK.  IS THAT WHAT YOU'RE ASKING HIM TO

01:23PM 19   ELABORATE ON?

01:23PM 20          MR. BRECHER:  THAT, AND THE DATE AND EXTENT OF HIS

01:23PM 21   EXPOSURE TO LIS, WHICH WAS AN EXTENSIVE SUBJECT DURING CROSS.

01:23PM 22          THE COURT:  YOU CAN ASK THOSE QUESTIONS.

01:23PM 23          MR. BRECHER:  THANK YOU, YOUR HONOR.

01:23PM 24   Q.   MR. SONNIER, DO YOU HAVE A SENSE OF MR. CHUNG'S ROLE IN

01:23PM 25   THIS SUMMER 2018 PERIOD?

01:23PM 1    A.   YES.  MY UNDERSTANDING FROM THE MATERIALS THAT I REVIEWED

01:23PM 2    WAS THAT MR. CHUNG WAS RECOMMENDED AS A CONTRACTOR IN THE

01:23PM 3    SUMMER OF 2-18 TO COME IN AND MOVE SERVER EQUIPMENT AT THERANOS

01:23PM 4    TO OTHER LOCATIONS.  I BELIEVE CADDENHEAD, ERIC CADDENHEAD

01:23PM 5    ACTUALLY SET HIM UP AS THE CONTACT, OR REFERRED HIM TO

01:24PM 6    THERANOS.

01:24PM 7    Q.   AND YOU SAID SUMMER 2-18.  DOES THAT MEAN THE SUMMER 2018,

01:24PM 8    SIR?

01:24PM 9    A.   RIGHT, THE SUMMER OF 2018.

01:24PM 10   Q.   AND MR. BOSTIC ASKED YOU ABOUT YOUR UNDERSTANDING OF

01:24PM 11   MR. CHUNG'S FIRST-HAND EXPERIENCE WITH THE LIS SYSTEM; IS THAT

01:24PM 12   RIGHT?

01:24PM 13   A.   THAT'S CORRECT.

01:24PM 14   Q.   AND WHAT IS THAT UNDERSTANDING?

01:24PM 15   A.   MY UNDERSTANDING IS THAT MR. CHUNG QUITE UNDERSTANDABLY

01:24PM 16   KNEW VERY LITTLE ABOUT LIS.  IT WAS A CUSTOM SYSTEM.  HE NEVER

01:24PM 17   HAD SEEN IT AT ANY OF HIS OTHER CLIENTS, AND HE WAS VERY

01:24PM 18   CONCERNED BECAUSE THERE WERE VERY FEW PEOPLE --

01:24PM 19             MR. BOSTIC:  OBJECTION, YOUR HONOR.

01:24PM 20             THE COURT:  SUSTAINED.

01:24PM 21             MR. BOSTIC:  LACK OF FOUNDATION AND MOVE TO STRIKE.

01:24PM 22             THE COURT:  SUSTAINED.  THE LAST PORTION OF THE

01:24PM 23   ANSWER IS STRICKEN FOR LACK OF FOUNDATION.

01:24PM 24   BY MR. BRECHER:

01:24PM 25   Q.   MR. SONNIER, DID YOU SEE ANYTHING IN ALL OF THE MATERIALS

01:24PM   1    THAT SUGGESTED THAT MR. CHUNG'S CONCERNS THAT YOU DISCUSSED

01:25PM   2    WITH MR. BOSTIC WOULD UNDERMINE YOUR OPINION IN ANY WAY?

01:25PM   3    A.   NO, NONE OF HIS CONCERNS UNDERMINED MY OPINION IN ANY WAY.

01:25PM   4    Q.   WHAT ABOUT THAT OF THE OTHER I.T. PERSON, I DON'T THINK

01:25PM   5    HIS NAME CAME INTO EVIDENCE, BUT THE OTHER MEMORANDUM THAT YOU

01:25PM   6    LOOKED AT WITH MR. BOSTIC?

01:25PM   7    A.   AGAIN, IT DIDN'T ULTIMATELY AFFECT MY OPINION.

01:25PM   8    Q.   YOU TESTIFIED WHEN YOU WERE TALKING TO MR. BOSTIC THAT

01:25PM   9    THERE WERE SOME PIECES OF INFORMATION THAT YOU REVIEWED THAT

01:25PM   10   YOU ULTIMATELY DISAGREED WITH; IS THAT CORRECT?

01:25PM   11   A.   THAT'S CORRECT.

01:25PM   12   Q.   CAN YOU EXPLAIN WHY YOU ULTIMATELY DISAGREED?

01:25PM   13   A.   WELL, SOME OF THE STATEMENTS IMPLIED A CERTAIN

01:25PM   14   IMPLEMENTATION OF TECHNOLOGY, AND THEN BY THE TIME I WENT

01:25PM   15   THROUGH ALL OF THE MATERIAL, IT TURNS OUT THERE WAS NO

01:25PM   16   TECHNICAL BASIS FOR THAT OPINION.

01:26PM   17        SO I, I SIMPLY CONCLUDED THAT MAYBE THERE WAS SOME

01:26PM   18   MISUNDERSTANDING IN THAT REPORT BY THAT WITNESS OR THE

01:26PM   19   INTERVIEWEE OR THEY WERE SPEAKING OF SOME OTHER ASPECT OF

01:26PM   20   TECHNOLOGY OTHER THAN THE RECOVERY OF THE LIS DATABASE.

01:26PM   21   Q.   BUT IN FAIRNESS, SIR, MR. BOSTIC ASKED WHETHER YOU

01:26PM   22   PERSONALLY INTERVIEWED THESE PEOPLE.

01:26PM   23        DO YOU REMEMBER THAT TESTIMONY?

01:26PM   24   A.   THAT'S CORRECT.

01:26PM   25   Q.   YES.  AND YOU SAID THAT YOU HAD NOT?

01:26PM  1    A.  I HAVE NOT.

01:26PM  2    Q.  WAS THAT NECESSARY FOR YOU TO FORM YOUR OPINIONS?

01:26PM  3    A.  NO.  ALL I REALLY NEEDED TO IDENTIFY WAS THE EXACT -- NOT

01:26PM  4    THE EXACT, BUT THE GENERAL HARDWARE AND SOFTWARE THAT WAS USED

01:26PM  5    FOR THE LIS DATABASE, AND ONCE I HAD THAT INFORMATION AND PUT

01:26PM  6    THE PUZZLE TOGETHER, THEN THAT WAS THE BASIS FOR MY OPINION.

01:26PM  7    Q.  IN YOUR OTHER WORK, DO YOU TYPICALLY FORM CONCLUSIONS

01:26PM  8    WITHOUT INTERVIEWING PERSONS WITH FIRST-HAND KNOWLEDGE?

01:27PM  9    A.  YES.  IT OFTEN HAPPENS THAT SUCH PERSONS ARE UNAVAILABLE.

01:27PM  10   Q.  COULD YOU GIVE US A SENSE OF WHY THAT MIGHT BE THE CASE?

01:27PM  11   A.  FOR EXAMPLE, ONE TIME THE PERSON WAS TRYING TO STEAL ALL

01:27PM  12   OF THE BUSINESS STUFF OF MY CLIENT, AND SO THEY WANTED NOTHING

01:27PM  13   MORE TO DO WITH THEM.

01:27PM  14   Q.  ANY OTHER CIRCUMSTANCES?

01:27PM  15   A.  SOMETIMES PEOPLE --

01:27PM  16       MR. BOSTIC:  OBJECTION.  RELEVANCE.

01:27PM  17       MR. BRECHER:  YOUR HONOR, MR. BOSTIC ASKED ABOUT THE

01:27PM  18   LIMITATIONS OF THE METHODOLOGY.  I THINK IT'S FAIR TO EXPLORE

01:27PM  19   THAT.

01:27PM  20       THE COURT:  YOU CAN ANSWER THE QUESTION.

01:27PM  21       MR. BRECHER:  THANK YOU.

01:27PM  22       THE WITNESS:  SOMETIMES PEOPLE HAVE JUST MOVED ON TO

01:27PM  23   OTHER COMPANIES AND THEY EITHER DON'T WANT OR CAN'T, MAYBE NOT

01:27PM  24   EVEN ALLOWED, TO ANSWER QUESTIONS ABOUT THEIR FORMER EMPLOYER.

01:27PM  25   BY MR. BRECHER:

01:27PM   1    Q.   WHY DON'T WE JUST WRAP UP THIS LINE OF TESTIMONY,

01:27PM   2    MR. SONNIER.

01:27PM   3         WOULD YOU DESCRIBE IT AS TYPICAL IN YOUR WORK TO RELY ON

01:27PM   4    INTERVIEW SUMMARIES OR SECOND-HAND INFORMATION?

01:27PM   5    A.   IT'S VERY OFTEN.  IT PROBABLY ALWAYS IS A LITTLE BIT OF A

01:28PM   6    TIME SAVINGS IF YOU CAN GET SOME INFORMATION DIRECT FROM THE

01:28PM   7    PEOPLE THAT -- WHO ARE IN CHARGE OF THE SYSTEM PREVIOUSLY.

01:28PM   8         BUT IT OFTEN HAPPENS, LIKE I SAID, THAT THOSE PEOPLE

01:28PM   9    AREN'T AVAILABLE, AND SO YOU WORK FROM THE -- ULTIMATELY FROM

01:28PM  10    THE SYSTEM IN FRONT OF YOU OR FROM THE TECHNICAL INFORMATION

01:28PM  11    ABOUT THAT SYSTEM.

01:28PM  12    Q.   YOU TOLD MR. BOSTIC THAT YOU THOROUGHLY INVESTIGATED

01:28PM  13    STATEMENTS IN THE MATERIALS THAT YOU REVIEWED THAT YOU THOUGHT

01:28PM  14    WERE CONTRARY TO YOUR ULTIMATE OPINIONS.

01:28PM  15         DO YOU REMEMBER THAT?

01:28PM  16    A.   YES.

01:28PM  17    Q.   COULD YOU EXPLAIN HOW YOU INVESTIGATED THOSE STATEMENTS?

01:28PM  18    A.   WELL, I REVIEWED ALL OF THE MATERIAL, AND WHEN I CAME

01:28PM  19    ACROSS STATEMENTS THAT MIGHT APPEAR OR COULD POTENTIALLY CREATE

01:28PM  20    SOME BARRIER MAKING IT DIFFICULT, OR POSSIBLY REMOVE THE

01:28PM  21    POSSIBILITY OF RECOVERING THE LIS DATABASE, WHICH WAS, AS I'VE

01:29PM  22    STATED, MY TASK, THEN I INVESTIGATED THOSE ITEMS THOROUGHLY TO

01:29PM  23    SEE IF THERE'S ANY REAL TECHNICAL REASON WHY THOSE STATEMENTS

01:29PM  24    MIGHT HAVE BEEN MADE.

01:29PM  25         AND IN ALL CASES IT TURNED OUT NOT TO BE THE CASE.

01:29PM    1    Q.    OKAY.  AND LET'S TALK ABOUT A FEW OF THOSE STATEMENTS.

01:29PM    2          MR. BOSTIC ASKED YOU ABOUT A NUMBER OF PERSONS WHO SEEM TO

01:29PM    3    BELIEVE THAT IT WOULD HAVE BEEN EITHER IMPOSSIBLE OR VERY

01:29PM    4    DIFFICULT TO REASSEMBLE THE LIS SYSTEM.

01:29PM    5          DO YOU REMEMBER THAT TESTIMONY?

01:29PM    6    A.    YES.

01:29PM    7    Q.    WHY DO YOU CONCLUDE THAT THAT WAS NOT THE CASE?

01:29PM    8    A.    AGAIN, ONCE YOU ANALYZE THE SYSTEM, THE EQUIPMENT IT WAS

01:29PM    9    RUNNING ON, AND THE STANDARD OFF-THE-SHELF MICROSOFT SQL

01:29PM   10    SERVER, THEN YOU CAN DETERMINE THAT IT IS RECOVERABLE UNLESS

01:29PM   11    THERE'S SOME ACTIVE BLOCK, AND THERE WEREN'T -- AT A TECHNICAL

01:29PM   12    LEVEL, THERE WEREN'T ANY.

01:30PM   13          I CAN'T REALLY EXPLAIN WHY PERHAPS SOME STATEMENTS WERE

01:30PM   14    MADE THAT INDICATED THAT IT WASN'T.

01:30PM   15    Q.    AND WHEN YOU REVIEW MATERIALS -- ACTUALLY, LET'S START

01:30PM   16    WITH WHEN YOU REVIEWED MATERIALS IN THIS CASE, INCLUDING THOSE

01:30PM   17    STATEMENTS, DO YOU TAKE THE MATERIALS YOU REVIEW AT FACE VALUE?

01:30PM   18    A.    I ALWAYS RUN ALL OF THE INFORMATION BACKWARDS AND FORWARDS

01:30PM   19    TO MAKE SURE THAT THE WHOLE PUZZLE FITS TOGETHER BECAUSE, YOU

01:30PM   20    KNOW, ESPECIALLY TECHNICAL PEOPLE SOMETIMES SUMMARIZE

01:30PM   21    INFORMATION OR THEY DUMB IT DOWN FOR WHOEVER THEY'RE TALKING

01:30PM   22    TO, HOPING TO TAKE A HIGHLY TECHNICAL SUBJECT AND MAKE IT MORE

01:30PM   23    UNDERSTANDABLE, AND SO THEY MAY GLOSS OVER SOME OF THE DETAIL.

01:30PM   24          SO I DON'T THINK THEY DO IT WITH THE INTENT TO DECEIVE OR

01:30PM   25    ANYTHING.  IT'S JUST THE NATURE OF TECHNICAL WORK.

SONNIER REDIRECT BY MR. BRECHER

01:30PM 1    SO I ALWAYS CHECK THE TECHNICAL BASIS FOR EVERY STATEMENT

01:30PM 2    THAT IS RELEVANT.

01:30PM 3    Q.    AND IS THAT CONCLUSION CONSISTENT WITH YOUR TRAINING AND

01:31PM 4    EXPERIENCE?

01:31PM 5    A.    ABSOLUTELY.

01:31PM 6    Q.    AND IS THAT CONCLUSION CONSISTENT WITH THE MATERIALS THAT

01:31PM 7    YOU REVIEWED IN THIS CASE?

01:31PM 8    A.    YES.

01:31PM 9    Q.    MR. BOSTIC ASKED YOU ABOUT ANOTHER STATEMENT ABOUT THE

01:31PM 10   THERANOS LIS BEING A BESPOKE SYSTEM.

01:31PM 11       DO YOU REMEMBER THAT TESTIMONY?

01:31PM 12   A.    YES.

01:31PM 13   Q.    AND WHY DOESN'T THAT AFFECT YOUR ANALYSIS?

01:31PM 14   A.    BECAUSE IT'S IN THE NATURE OF SQL DATABASES IN GENERAL,

01:31PM 15   AND MICROSOFT SQL SERVER, THAT IF YOU DO ANY CUSTOM DATABASE,

01:31PM 16   THEN YOU CAN THINK OF IT AS BESPOKE.  I MEAN, CUSTOM, "BESPOKE"

01:31PM 17   IN MY INTERPRETATION IS SYNONYMOUS.

01:31PM 18       AND SO IT'S JUST A ROUTINE USAGE OF A MICROSOFT SQL SERVER

01:31PM 19   THAT A COMPANY, IF THEY'RE CREATING A DATABASE FOR THEIR OWN

01:31PM 20   IN-HOUSE USE, NOT FOR SALE TO THE PUBLIC, IT WOULD BE A CUSTOM

01:32PM 21   DATABASE.

01:32PM 22       SO THAT'S ROUTINE IN THE USE OF MICROSOFT SQL SERVER.

01:32PM 23   Q.    AND WHAT IS THE RELATIONSHIP, IF ANY, BETWEEN THAT KIND OF

01:32PM 24   CUSTOMIZATION ON THE ONE HAND AND THE RECOVERABILITY OF THE

01:32PM 25   UNDERLYING DATA ON THE OTHER?

SONNIER REDIRECT BY MR. BRECHER

01:32PM 1    A.   IT HAS NOTHING TO DO WITH EACH OTHER.

01:32PM 2    Q.   MR. ALLEN, I DON'T KNOW IF THIS IS POSSIBLE, BUT

01:32PM 3    MR. BOSTIC INTRODUCED AN EXHIBIT ON DIRECT -- EXCUSE ME, ON

01:32PM 4    CROSS, WHICH IS ALREADY IN EVIDENCE, EXHIBIT 5940.  I DON'T

01:32PM 5    KNOW IF WE HAVE THAT.  THAT'S FINE.

01:32PM 6         PERHAPS I COULD ASK THE INDULGENCE OF MS. WACHS TO PUT

01:32PM 7    THAT UP.

01:32PM 8         AND THAT WILL BE IN THE GOVERNMENT'S BINDER THAT YOU HAVE

01:32PM 9    AS WELL, SIR?

01:32PM 10             MR. BOSTIC:  DO YOU MEAN 5943, COUNSEL?

01:32PM 11             MR. BRECHER:  I DO.  EXHIBIT 5943.

01:32PM 12             THE WITNESS:  5943.

01:32PM 13   BY MR. BRECHER:

01:32PM 14   Q.   AND IT WILL ALSO BE UP ON THE SCREEN IN FRONT OF YOU.

01:33PM 15   A.   OH, OKAY.  I SEE IT, YES.

01:33PM 16   Q.   AND I BELIEVE YOU WERE TALKING TO MR. BOSTIC, THIS IS A

01:33PM 17   FOLLOW-UP EMAIL TO THE ONE THAT YOU AND I SPOKE ABOUT ON

01:33PM 18   DIRECT; IS THAT RIGHT?

01:33PM 19   A.   YES.

01:33PM 20   Q.   AND SO THIS IS AN EMAIL IN WHICH SOME SORT OF -- SOME

01:33PM 21   INTERNAL GOVERNMENT PERSON IS DISCUSSING THE VARIOUS OPTIONS

01:33PM 22   FOR RECOVERING THE LIS DATA; IS THAT RIGHT?

01:33PM 23   A.   YES.

01:33PM 24   Q.   OKAY.  AND I'M JUST LOOKING AT THE VERY TOP EMAIL UNDER

01:33PM 25   "POSSIBLE ROUTES FORWARD."

01:33PM 1          AND JUST BEFORE THAT IT SAYS, "I HAD A MEETING WITH THE

01:33PM 2     AUSA'S ON THE CASE REGARDING OUR OPTIONS AND WE ALL DECIDED TO

01:33PM 3     DO THE FOLLOWING."

01:33PM 4     A.   YES, I SEE THAT.

01:33PM 5     Q.   AND YOU SEE THE FIRST BULLET SAYS, "PUSH BACK ON DEFENSE

01:33PM 6     AND SEE IF THEY CAN BE PERSUADED TO PRODUCE THIS IN A MANNER

01:33PM 7     THAT CAN BE VIEWED AND PROCESSED IN A STANDARD WAY"?

01:33PM 8          DO YOU SEE THAT?

01:33PM 9     A.   YES.

01:33PM 10    Q.   AND THE SECOND OPTION IS "CHECK WITH THE FBI."

01:33PM 11         DO YOU SEE THAT?

01:34PM 12    A.   YES.

01:34PM 13    Q.   BUT IN THE EMAIL BELOW, YOU SAW THAT THERE WERE TWO OTHER

01:34PM 14    OPTIONS LISTED; ISN'T THAT RIGHT?

01:34PM 15    A.   YEAH.  I BELIEVE THE EMAIL BELOW HAS LOTS OF OTHER OPTIONS

01:34PM 16    BEYOND THOSE TWO.

01:34PM 17    Q.   THANK YOU, MS. WACHS.

01:34PM 18         AND IF WE CAN TURN BACK, MR. ALLEN, TO EXHIBIT 20832.

01:34PM 19         IT WILL BE IN YOUR BINDER, BUT IT WILL ALSO COME UP ON THE

01:34PM 20    SCREEN.

01:34PM 21         AND IF WE LOOK -- THIS IS AN EMAIL THAT PRECEDED THE ONE

01:34PM 22    THAT WE WERE JUST LOOKING AT; IS THAT RIGHT?

01:34PM 23    A.   YES.

01:34PM 24    Q.   OKAY.  AND DO YOU SEE UNDER THE FIRST BULLET, THAT FIRST

01:34PM 25    SUBBULLET THAT SAYS, "IF THEY CAN'T FIGURE OUT HOW TO PRODUCE

01:34PM   1    THE CONTENTS OF THEIR DATABASE IN A LEGITIMATE MANNER, PERHAPS

01:34PM   2    THEY'LL CONSIDER HANDING OVER THEIR PHYSICAL SQL SERVER AND WE

01:34PM   3    CAN SET IT UP IN A WORKROOM."

01:34PM   4    A.   YES, I SEE THAT.

01:34PM   5    Q.   SO IT SEEMS THAT WAS NOT ONE OF THE OPTIONS THAT THE

01:34PM   6    GOVERNMENT DECIDED TO PURSUE?

01:34PM   7    A.   IF THEY FOLLOWED --

01:34PM   8         MR. BOSTIC:  OBJECTION.  CALLS FOR SPECULATION.

01:34PM   9         THE COURT:  SUSTAINED.

01:34PM   10        MR. BRECHER:  THANK YOU, YOUR HONOR.

01:34PM   11   Q.   BASED ON THE EMAIL THAT MR. BOSTIC SHOWED YOU ON

01:34PM   12   CROSS-EXAMINATION, WAS THAT LISTED AS ONE OF THE TWO OPTIONS

01:34PM   13   THAT THIS TEAM HAD DECIDED ON?

01:35PM   14   A.   IT WAS NOT.

01:35PM   15   Q.   OKAY.  AND THIS OPTION, WOULD THAT HAVE WORKED?

01:35PM   16   A.   THIS WOULD HAVE WORKED.

01:35PM   17   Q.   OKAY.  AND THE THIRD BULLET, "IDENTIFY A VENDOR."

01:35PM   18   A.   YES.

01:35PM   19   Q.   IS THAT ALSO AN OPTION THAT WAS NOT LISTED ON

01:35PM   20   EXHIBIT 5940?

01:35PM   21   A.   YES.

01:35PM   22   Q.   WOULD THAT HAVE ALSO WORKED?

01:35PM   23   A.   IT WOULD WORK, YES.

01:35PM   24   Q.   OKAY.  MR. SONNIER, MR. BOSTIC ASKED YOU SOME QUESTIONS

01:35PM   25   ABOUT YOUR UNDERSTANDING OF THE LOCATION OF THE DISK DRIVES

01:35PM  1    UNDERLYING THE THERANOS LIS.

01:35PM  2         DO YOU REMEMBER THAT?

01:35PM  3    A.   YES.

01:35PM  4    Q.   AND YOU HAD A CONVERSATION WITH HIM ABOUT A FACILITY

01:35PM  5    CALLED IRON MOUNTAIN?

01:35PM  6    A.   YES.

01:35PM  7    Q.   OKAY.  AND MR. BOSTIC ASKED YOU WHETHER YOU WERE AWARE OF

01:35PM  8    ANYONE GOING AND PERSONALLY INSPECTING THE DISK DRIVES AT IRON

01:35PM  9    MOUNTAIN?

01:35PM  10   A.   IT WAS SOMETHING APPROXIMATING THAT.

01:35PM  11   Q.   HE DID ASK YOU WHETHER YOU PERSONALLY WENT OUT TO IRON

01:36PM  12   MOUNTAIN?

01:36PM  13   A.   RIGHT.

01:36PM  14   Q.   OKAY.  ARE YOU AWARE, BASED ON THE MATERIALS THAT YOU

01:36PM  15   REVIEWED, OF ANY EFFORT BY ANY GOVERNMENT AGENT TO GO TO IRON

01:36PM  16   MOUNTAIN?

01:36PM  17   A.   I HAVE SEEN NOTHING IN THE MATERIALS THAT I RECEIVED TO

01:36PM  18   THAT EFFECT.

01:36PM  19   Q.   ARE YOU AWARE OF ANY EFFORT BY ANY PROSECUTOR TO GO TO

01:36PM  20   IRON MOUNTAIN?

01:36PM  21   A.   THE SAME.  I HAVEN'T SEEN ANYTHING TO THAT EFFECT.

01:36PM  22   Q.   ARE YOU AWARE OF ANY EFFORT BY ANY GOVERNMENT I.T. EXPERT

01:36PM  23   TO GO TO IRON MOUNTAIN?

01:36PM  24   A.   I'M NOT.

01:36PM  25   Q.   OKAY.  MR. SONNIER, IN ANY OF THE MATERIALS THAT YOU

01:36PM  1    REVIEWED, ARE YOU AWARE OF ANY EFFORT BY THE GOVERNMENT TO TRY

01:36PM  2    TO GET THE SERVERS AND DRIVES AS YOU RECOMMEND?

01:36PM  3    A.   I AM NOT AWARE OF ANY SUCH EFFORT.

01:36PM  4    Q.   AND, MR. SONNIER, BASED ON ANYTHING THAT MR. BOSTIC SHOWED

01:36PM  5    YOU ON CROSS-EXAMINATION, ARE YOU AWARE OF ANY EFFORT BY THE

01:36PM  6    GOVERNMENT TO SECURE THE SERVERS AND DRIVES AS YOU RECOMMEND?

01:37PM  7            MR. BOSTIC:  I'LL OBJECT TO THAT.  401 AND 403 TO

01:37PM  8    THIS LINE.

01:37PM  9            THE COURT:  OVERRULED.

01:37PM  10       YOU CAN ANSWER THE QUESTION.

01:37PM  11           THE WITNESS:  NO, I'M NOT AWARE OF ANY SUCH EFFORT.

01:37PM  12   BY MR. BRECHER:

01:37PM  13   Q.   AND, MR. SONNIER, DID ANYTHING IN YOUR DISCUSSION WITH

01:37PM  14   MR. BOSTIC CAUSE YOU TO RECONSIDER THE OPINIONS YOU'VE OFFERED

01:37PM  15   HERE TODAY?

01:37PM  16   A.   NO, THEY DID NOT.

01:37PM  17           MR. BRECHER:  YOUR HONOR, IF I COULD HAVE A MOMENT?

01:37PM  18           THE COURT:  SURE.

01:37PM  19       (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

01:37PM  20           MR. BRECHER:  MR. SONNIER, THANK YOU VERY MUCH, SIR.

01:37PM  21       NOTHING FURTHER.

01:37PM  22           MR. BOSTIC:  NOTHING FURTHER.

01:37PM  23           THE COURT:  MAY THIS WITNESS BE EXCUSED?

01:37PM  24           MR. BOSTIC:  YES, YOUR HONOR.

01:37PM  25           MR. BRECHER:  YES, YOUR HONOR.

6824

```
01:38PM    1              THE COURT:  YOU'RE EXCUSED.  THANK YOU VERY MUCH.

01:38PM    2         DOES THE DEFENSE HAVE ADDITIONAL WITNESSES TO CALL?

01:38PM    3              MR. COOPERSMITH:  NO, YOUR HONOR.

01:38PM    4         BUT WE DO HAVE ADDITIONAL EXHIBITS TO ADMIT AS WE

01:38PM    5    DISCUSSED EARLIER.

01:38PM    6              THE COURT:  ALL RIGHT.  THANK YOU.

01:38PM    7         LET'S TURN TO THOSE EXHIBITS NOW.

01:38PM    8         LADIES AND GENTLEMEN, WHY DON'T YOU JUST TAKE A STANDING

01:38PM    9    BREAK WHILE WE ORGANIZE SOME EXHIBITS FOR YOU, IF YOU'D LIKE.

01:38PM   10    AND WE WILL -- WE WILL CONCLUDE TODAY IN ABOUT 20 MINUTES AT

01:38PM   11    2:00 O'CLOCK AS I INDICATED.

01:38PM   12         BUT LET'S SEE IF WE CAN RESOLVE THESE LAST EXHIBITS,

01:38PM   13    COUNSEL.

01:39PM   14         (PAUSE IN PROCEEDINGS.)

01:39PM   15              MR. COOPERSMITH:  YOUR HONOR, IF IT WOULD BE HELPFUL

01:39PM   16    FOR THE COURT, I HAVE A BINDER WITH EXHIBIT NUMBERS.

01:39PM   17              THE COURT:  ALL RIGHT.  THANK YOU.

01:39PM   18              MR. COOPERSMITH:  (HANDING.)

01:40PM   19         (PAUSE IN PROCEEDINGS.)

01:40PM   20              THE COURT:  ALL RIGHT.  MR. COOPERSMITH.

01:40PM   21              MR. COOPERSMITH:  YES, YOUR HONOR.

01:40PM   22         AS I SAID -- MAY I REMOVE MY MASK?

01:40PM   23              THE COURT:  YES, YES.

01:40PM   24              MR. COOPERSMITH:  WE HAVE A NUMBER OF EXHIBITS TO

01:40PM   25    ADMIT FOR THE RECORD, AND I CAN JUST START WITH THE FIRST ONE
```

01:40PM  1      IF THAT'S OKAY WITH THE COURT.

01:40PM  2              THE COURT:  SURE.

01:40PM  3              MR. COOPERSMITH:  SO THE FIRST ONE WE OFFER PURSUANT

01:40PM  4      TO PREVIOUS RULINGS BY THE COURT IS EXHIBIT 15004.  WITH THE

01:40PM  5      COURT'S PERMISSION, WHEN YOU GET THAT, WE CAN PUBLISH THAT.

01:40PM  6              THE COURT:  THIS IS BEING OFFERED FOR NOTICE?

01:40PM  7      FOR --

01:40PM  8              MR. COOPERSMITH:  YES, YOUR HONOR.  IT'S BEING

01:40PM  9      OFFERED ONLY FOR NOTICE TO MR. BALWANI OF THE MATTER ADDRESSED

01:41PM  10     IN THE EMAIL.

01:41PM  11             THE COURT:  ALL RIGHT.  IT'S NOT BEING OFFERED FOR

01:41PM  12     THE TRUTH OF THE MATTER ASSERTED?

01:41PM  13             MR. COOPERSMITH:  THAT'S CORRECT, YOUR HONOR.

01:41PM  14             THE COURT:  AND IS THAT ACCURATE AS TO ALL OF THESE

01:41PM  15     EXHIBITS?

01:41PM  16             MR. COOPERSMITH:  THERE ARE A FEW THAT WOULD BE IN A

01:41PM  17     DIFFERENT CATEGORY BECAUSE THEY'RE PUBLIC RECORDS.

01:41PM  18             THE COURT:  OKAY.

01:41PM  19             MR. COOPERSMITH:  BUT FOR THE MOST PART.

01:41PM  20             THE COURT:  ALL RIGHT.  LET'S TAKE THEM ONE AT A

01:41PM  21     TIME.

01:41PM  22         15004, YOU'RE OFFERING THIS NOT FOR THE TRUTH OF THE

01:41PM  23     MATTER ASSERTED, BUT ONLY AS TO NOTICE FOR THE ITEMS CONTAINED

01:41PM  24     IN THE EMAILS, THE SUBJECT CONTAINED IN THE EMAIL AS TO

01:41PM  25     MR. BALWANI?

6826

01:41PM  1          MR. COOPERSMITH:  YEAH, AND THE ATTACHMENTS, YES,

01:41PM  2    YOUR HONOR.

01:41PM  3          THE COURT:  THE ATTACHMENTS.  I HAVE A ONE PAGE

01:41PM  4    DOCUMENT THAT'S PRINTED ON BOTH SIDES.  IS THAT --

01:41PM  5          MR. COOPERSMITH:  OH, YES.  YOUR HONOR, I'M SORRY.

01:41PM  6    JUST THE EMAIL THAT HAS THOSE TWO PAGES.

01:41PM  7          THE COURT:  RIGHT.  OKAY.

01:41PM  8       ANY OBJECTION?

01:41PM  9          MR. LEACH:  THAT'S FINE, YOUR HONOR.

01:41PM  10          THE COURT:  THANK YOU.

01:41PM  11       THIS IS ADMITTED, LADIES AND GENTLEMEN, AGAIN, NOT FOR THE

01:41PM  12    TRUTH OF THE MATTER ASSERTED IN THE EMAIL, BUT ONLY FOR THE

01:42PM  13    ISSUE OF NOTICE AS TO THE SUBJECT IN THE EMAIL.

01:42PM  14       AND LET'S PUBLISH IT NOW, BOTH -- FOR THE JURY, BOTH

01:42PM  15    SIDES, IF THAT'S POSSIBLE.

01:42PM  16          MR. COOPERSMITH:  YOUR HONOR, DO YOU WANT ME TO

01:42PM  17    DESCRIBE IT IN ANY WAY OR JUST LEAVE IT AT THAT?

01:42PM  18          THE COURT:  WELL, I THINK YOU CAN PUT ON THE RECORD

01:42PM  19    JUST THE DATES IN THE EMAILS.  YOU DON'T HAVE TO READ IT I

01:42PM  20    DON'T THINK.

01:42PM  21       MR. LEACH.

01:42PM  22          MR. LEACH:  I THINK IT'S APPROPRIATE, YOUR HONOR, TO

01:42PM  23    DISPLAY THE EMAIL.  I WOULDN'T WANT ARGUMENT.

01:42PM  24          THE COURT:  RIGHT.  IT'S JUST GOING TO BE DISPLAYED

01:42PM  25    ONLY.

6827

01:42PM   1          AND IF YOU CAN JUST TIME STAMP IT?  FOR EXAMPLE, THIS

01:42PM   2     IS -- WELL, I DON'T WANT TO TESTIFY HERE, BUT YOU CAN INDICATE

01:42PM   3     WHAT THIS IS JUST FOR THE DATE AND THE TIME JUST TO TIME STAMP

01:42PM   4     IT.

01:42PM   5          MR. COOPERSMITH:  VERY WELL, YOUR HONOR.  THANK YOU.

01:42PM   6          THIS IS AN EMAIL DATED OCTOBER 19TH, 2010 FROM IAN GIBBONS

01:42PM   7     TO ELIZABETH HOLMES AND OTHERS, WITH A COPY TO MR. BALWANI AND

01:42PM   8     OTHERS.

01:42PM   9          THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM   10     (DEFENDANT'S EXHIBIT 15004 WAS RECEIVED IN EVIDENCE.)

01:43PM   11          THE COURT:  AND IF WE CAN SHOW THE JURY THE SECOND

01:43PM   12     PAGE, I THINK.

01:43PM   13          MR. COOPERSMITH:  YES, YOUR HONOR.

01:43PM   14          AND THOSE ARE -- THE SECOND EMAIL, OR THE ONE THAT YOU'RE

01:43PM   15     SEEING ON THE SECOND PAGE IS FROM DR. GIBBONS TO

01:43PM   16     ELIZABETH HOLMES, WITH A COPY TO MR. BALWANI AND OTHERS.

01:43PM   17          THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM   18          MR. COOPERSMITH:  YES, YOUR HONOR.

01:43PM   19          THE NEXT EXHIBIT IS 15058.

01:43PM   20          THE COURT:  ALL RIGHT.

01:43PM   21          MR. COOPERSMITH:  THIS IS BEING OFFERED FOR THE

01:43PM   22     PURPOSE OF NOTICE TO MR. BALWANI AS WELL.

01:43PM   23          THE COURT:  AND THERE'S AN ATTACHMENT, SOME SLIDES.

01:43PM   24     ARE YOU SEEKING ADMISSION OF THOSE SLIDES IN ADDITION TO THE

01:43PM   25     FIRST PAGE, WHICH IS THE EMAIL?

01:43PM 1          MR. COOPERSMITH:  YES, YOUR HONOR, ALL OF THE

01:43PM 2   ATTACHMENTS THAT COME WITH EXHIBIT 15058.

01:43PM 3          THE COURT:  AND THIS IS OFFERED NOT FOR THE TRUTH OF

01:44PM 4   THE MATTER ASSERTED, BUT FOR NOTICE?

01:44PM 5          MR. COOPERSMITH:  YES, YOUR HONOR.

01:44PM 6          THE COURT:  MR. LEACH.

01:44PM 7          MR. LEACH:  THAT'S FINE.

01:44PM 8          THE COURT:  15058 IS ADMITTED NOT FOR THE TRUTH OF

01:44PM 9   THE MATTER ASSERTED, BUT ONLY AS TO THE ISSUE OF NOTICE OF THIS

01:44PM 10  MATERIAL AS TO MR. BALWANI, NOT FOR THE TRUTH OF THE MATTER

01:44PM 11  ASSERTED.

01:44PM 12      IT CAN BE PUBLISHED.

01:44PM 13      (DEFENDANT'S EXHIBIT 15058 WAS RECEIVED IN EVIDENCE.)

01:44PM 14         THE COURT:  I DON'T THINK WE NEED TO PUBLISH EACH OF

01:44PM 15  THE SLIDES.

01:44PM 16         MR. COOPERSMITH:  NO, YOUR HONOR.  I THINK THAT'S

01:44PM 17  FINE.  THANK YOU.

01:44PM 18      BUT THE EMAIL THAT IS NOW ON THE SCREEN IS THE COVER

01:44PM 19  EMAIL, AND THAT IS AN EMAIL FROM ELIZABETH HOLMES TO

01:44PM 20  THOMAS BRUER AT THE EMAIL ADDRESS GSKBIO.COM, WITH A COPY TO

01:44PM 21  MR. BALWANI, AND IT ATTACHES A NUMBER OF ITEMS AS THE COURT

01:44PM 22  REMARKED.

01:44PM 23         THE COURT:  AND THE DATE OF THE EMAIL IS?

01:44PM 24         MR. COOPERSMITH:  SORRY, YOUR HONOR.  IT'S

01:44PM 25  DECEMBER 15TH, 2009.

6829

| | | |
|---|---|---|
| 01:44PM | 1 | THE COURT:  OKAY.  THANK YOU. |
| 01:45PM | 2 | NEXT? |
| 01:45PM | 3 | MR. COOPERSMITH:  NEXT IS EXHIBIT 20817. |
| 01:45PM | 4 | YOUR HONOR, THIS WAS THE SUBJECT OF SOME DISCUSSION WITH |
| 01:45PM | 5 | THE COURT EARLIER AS TO WHICH PAGES.  WE UNDERSTAND THAT |
| 01:45PM | 6 | EXHIBIT NUMBER PAGES 1 THROUGH 4 ARE ADMISSIBLE AND -- |
| 01:45PM | 7 | THE COURT:  THIS IS EXHIBIT 6, I BELIEVE, THAT WE |
| 01:45PM | 8 | DISCUSSED. |
| 01:45PM | 9 | MR. COOPERSMITH:  THAT'S CORRECT, YOUR HONOR. |
| 01:45PM | 10 | AND -- YES, YOUR HONOR, EXHIBIT 6 AS THE COURT NOTED IT. |
| 01:45PM | 11 | AND WE UNDERSTAND THE COURT HAS PREVIOUSLY RULED 1 THROUGH |
| 01:45PM | 12 | 4 ADMISSIBLE.  WE UNDERSTAND PAGES 25 -- I'M SORRY, PAGES 5 |
| 01:45PM | 13 | THROUGH 25 ARE NOT ADMISSIBLE, AND WE HAD A QUESTION ABOUT 26 |
| 01:45PM | 14 | TO 54. |
| 01:45PM | 15 | SO WE'LL PUBLISH WHATEVER THE COURT -- SO AT LEAST 1 |
| 01:45PM | 16 | THROUGH 4, BUT PERHAPS OTHER PAGES IF THE COURT -- |
| 01:46PM | 17 | THE COURT:  WELL, LET ME INDICATE THAT THE ECF PAGES |
| 01:46PM | 18 | 119 THROUGH 147 WERE NOT ADMISSIBLE PURSUANT TO 403. |
| 01:46PM | 19 | I THINK THERE WAS A VACUUM AS TO 104 AND 118 IS WHAT OUR |
| 01:46PM | 20 | DISCUSSION WAS, AND THOSE, FOR THE SAME REASON, UNDER 403 WOULD |
| 01:46PM | 21 | NOT BE ADMITTED. |
| 01:46PM | 22 | AND THESE ARE ECF PAGES. |
| 01:46PM | 23 | MR. COOPERSMITH:  YES, YOUR HONOR.  MY UNDERSTANDING |
| 01:46PM | 24 | IS IT WOULD BE ECF PAGES 94 THROUGH 97, WHICH IS PAGES 1 |
| 01:46PM | 25 | THROUGH 4 IN THE EXHIBIT NUMBER. |

6830

01:46PM   1                THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

01:46PM   2                MR. COOPERSMITH:  YES, YOUR HONOR.  WE WOULD JUST

01:46PM   3    ADMIT THOSE PAGES.

01:46PM   4                THE COURT:  THOSE ARE ADMITTED.

01:46PM   5           ANYTHING FURTHER, MR. LEACH?

01:46PM   6                MR. LEACH:  NO, YOUR HONOR, THANK YOU.

01:46PM   7                THE COURT:  THOSE ARE ADMITTED.

01:46PM   8         (DEFENDANT'S EXHIBIT 20817 WAS RECEIVED IN EVIDENCE.)

01:46PM   9                THE COURT:  DO YOU WANT TO PUBLISH THOSE?

01:46PM   10               MR. COOPERSMITH:  THE FIRST IS A SCREEN PRINT OF AN

01:46PM   11   FDA WEBSITE PAGE TITLED FDA -- I'M SORRY, 510(K) PREMARKET

01:46PM   12   NOTIFICATION AVAILABLE ON THE WEBSITE.

01:47PM   13        IF YOU GO TO THE BOTTOM OF THE EXHIBIT, THE VERY BOTTOM ON

01:47PM   14   THE LEFT, THERE'S A TIME STAMP WHERE IT COMES FROM.

01:47PM   15        IF YOU COULD HIGHLIGHT THAT, MR. ALLEN, ON THE VERY

01:47PM   16   BOTTOM.

01:47PM   17        THAT COMES FROM AN FDA WEBSITE, AND IT WAS RETRIEVED ON

01:47PM   18   MAY 18TH, 2022, FROM THE FDA WEBSITE.

01:47PM   19        YOUR HONOR, MAY I PUBLISH PAGE 3 AS WELL?

01:47PM   20               THE COURT:  YES.

01:47PM   21               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:47PM   22        PAGE 3 IS A JULY 7TH, 2015 LETTER FROM THE FDA TO

01:47PM   23   BRAD ARINGTON OF THERANOS REGARDING THE 510(K) CLEARANCE.

01:47PM   24               THE COURT:  ALL RIGHT.  THANK YOU.

01:47PM   25               MR. COOPERSMITH:  YES, YOUR HONOR.

01:47PM   1          NEXT WE HAVE EXHIBIT 20826.  THIS IS AN EMAIL CONSISTING

01:48PM   2    OF THREE PAGES, YOUR HONOR.

01:48PM   3          THE COURT:  AND THIS IS OFFERED?

01:48PM   4          MR. COOPERSMITH:  THIS IS OFFERED UNDER THE PUBLIC

01:48PM   5    RECORDS EXCEPTION TO THE HEARSAY RULE, YOUR HONOR.

01:48PM   6          THE COURT:  SO THAT YOU'RE ASKING THAT THIS BE

01:48PM   7    ADMITTED FOR THE TRUTH OF THE MATTER ASSERTED?

01:48PM   8          MR. COOPERSMITH:  YES, YOUR HONOR.

01:48PM   9          THE COURT:  OR FOR NOTICE?

01:48PM  10          MR. COOPERSMITH:  IT'S FOR TRUTH BECAUSE OF THAT

01:48PM  11    803(8).

01:48PM  12          THE COURT:  OKAY.

01:48PM  13       MR. LEACH.

01:48PM  14          MR. LEACH:  I THINK THAT APPLIES TO PAGES 2 AND 3,

01:48PM  15    YOUR HONOR, BUT NUMBER -- SORRY.  I DON'T THINK THAT APPLIES TO

01:48PM  16    PAGE 1.

01:48PM  17          THE COURT:  PAGE 1 SEEMS TO BE AN EMAIL.

01:48PM  18          MR. COOPERSMITH:  AND THAT'S FINE, YOUR HONOR.  WE

01:48PM  19    CAN ADMIT PAGE 1 FOR NOTICE, AND THEN PAGES 2 AND 3 FOR THE

01:48PM  20    TRUTH UNDER 803(8).

01:49PM  21          THE COURT:  ALL RIGHT.  THANK YOU.

01:49PM  22       LADIES AND GENTLEMEN, THIS PAGE WILL BE ADMITTED.  PAGE 1,

01:49PM  23    AS YOU'LL SEE IN JUST A MOMENT, IS AN EMAIL EXCHANGE.  THAT IS

01:49PM  24    ADMITTED NOT FOR THE TRUTH OF THE MATTERS ASSERTED IN THE

01:49PM  25    EMAIL, BUT ONLY AS TO NOTICE FOR THE DEFENDANT, MR. BALWANI, AS

6832

01:49PM  1    TO THE ITEMS CONTAINED THEREIN.

01:49PM  2         THE FOLLOWING TWO PAGES, HOWEVER, ARE ADMITTED UNDER THE

01:49PM  3    PUBLIC RECORDS EXCEPTION, THOSE ARE ADMITTED, AND MAY BE

01:49PM  4    CONSIDERED FOR THE TRUTH OF THE MATTERS ASSERTED THEREIN.

01:49PM  5         (DEFENDANT'S EXHIBIT 20826 WAS RECEIVED IN EVIDENCE.)

01:49PM  6         MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:49PM  7         AND JUST TO ORIENT US, THE FIRST PAGE ADMITTED FOR NOTICE

01:49PM  8    IS THE EMAIL FROM -- THE SECOND EMAIL IS FROM BRAD ARINGTON TO

01:49PM  9    ELIZABETH HOLMES, SUNNY BALWANI, AND HEATHER KING, AND THAT'S

01:49PM  10   DATED JULY 15TH, 2015.

01:49PM  11        THE SECOND EMAIL ON THAT PAGE IS FROM PETER TOBIN, WITH AN

01:50PM  12   FDA EMAIL ADDRESS, DATED JULY 15TH, 2015, AND IT SAYS -- WELL,

01:50PM  13   I WON'T READ IT, BUT IT'S, IT'S TO A GROUP OF PEOPLE.

01:50PM  14        AND THEN IF YOU GO TO THE NEXT PAGE, PAGE 2 IS A LETTER

01:50PM  15   FROM THE U.S. FOOD AND DRUG ADMINISTRATION TO BRAD ARINGTON

01:50PM  16   THAT HAS GOT A HEADING, WAIVER GRANTED NOTIFICATION.

01:50PM  17        AND THEN COULD I SHOW THE JURY PAGE 3?  I GUESS IT'S ON

01:50PM  18   THE SCREEN.

01:50PM  19             THE COURT:  YES.

01:50PM  20             MR. COOPERSMITH:  PAGE 3 IS AN ATTACHMENT THAT

01:50PM  21   DESCRIBES A PARTICULAR TEST SYSTEM.

01:50PM  22             THE COURT:  AND THE DATE OF THE LETTER IS?

01:50PM  23             MR. COOPERSMITH:  THE DATE OF THE LETTER IS

01:50PM  24   JULY 15TH, 2015, YOUR HONOR.

01:50PM  25             THE COURT:  ALL RIGHT.  THANK YOU.

01:50PM  1          MR. COOPERSMITH:  THE NEXT EXHIBIT IS EXHIBIT 15029.

01:51PM  2      THIS IS BEING OFFERED, YOUR HONOR, SIMPLY FOR THE FACT OF

01:51PM  3  THE DISCLOSURE OF THE MATTERS IN THE DOCUMENT TO THE U.S. FOOD

01:51PM  4  AND DRUG ADMINISTRATION.

01:51PM  5          THE COURT:  HOW MANY PAGES ARE YOU SEEKING TO ADMIT?

01:51PM  6          MR. COOPERSMITH:  YOUR HONOR, IT'S PAGES -- ALL OF

01:51PM  7  THE PAGES IN THE EXHIBIT.  SO THAT WOULD BE --

01:51PM  8          THE COURT:  FROM 47 TO 54?

01:51PM  9          MR. COOPERSMITH:  YES, YOUR HONOR, THANK YOU.

01:51PM 10          THE COURT:  AND THIS IS NOT FOR THE TRUTH OF THE

01:51PM 11  MATTER ASSERTED, BUT NOTICE ONLY?

01:51PM 12          MR. COOPERSMITH:  JUST FOR THE FACT OF DISCLOSURE TO

01:51PM 13  THE FDA.

01:51PM 14          THE COURT:  MR. LEACH.

01:51PM 15          MR. LEACH:  NO OBJECTION, YOUR HONOR.

01:51PM 16          THE COURT:  15029 IS ADMITTED NOT FOR THE TRUTH OF

01:52PM 17  THE MATTER ASSERTED, LADIES AND GENTLEMEN, BUT ONLY AS TO THE

01:52PM 18  ISSUE OF DISCLOSURE.

01:52PM 19      IS THAT CORRECT?

01:52PM 20          MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

01:52PM 21      (DEFENDANT'S EXHIBIT 15029 WAS RECEIVED IN EVIDENCE.)

01:52PM 22          MR. COOPERSMITH:  AND THEN TO ORIENT US ON THE FIRST

01:52PM 23  PAGE OF EXHIBIT 15029, THERE'S AN EMAIL FROM ELIZABETH HOLMES

01:52PM 24  TO SALLY HOJVAT AND JOHN HOBSON, AND THEN THERE'S A DATE OF

01:52PM 25  OCTOBER 23RD, 2013.

6834

01:52PM 1          AND THEN IF WE CAN SHOW THE SECOND PAGE OF THE EXHIBIT,

01:52PM 2     MR. ALLEN.

01:52PM 3          THERE'S A CHART THAT'S TITLED TESTS RUN IN THERANOS'S CLIA

01:52PM 4     LABORATORY FROM SAMPLES COLLECTED IN THERANOS WELLNESS CENTERS.

01:52PM 5               THE COURT:  ALL RIGHT.

01:52PM 6               MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:52PM 7          THE NEXT EXHIBIT WE HAVE IS 7286, AND THIS IS OFFERED FOR

01:53PM 8     NOTICE OF THE MATTERS CONTAINED IN THE EMAILS, IN THE EMAIL.

01:53PM 9               THE COURT:  AS TO MR. BALWANI?

01:53PM 10              MR. COOPERSMITH:  YES, YOUR HONOR.

01:53PM 11              THE COURT:  MR. LEACH.

01:53PM 12              MR. LEACH:  NO OBJECTION, YOUR HONOR.

01:53PM 13              THE COURT:  THIS IS ADMITTED, LADIES AND GENTLEMEN,

01:53PM 14    AGAIN, NOT FOR THE TRUTH OF THE MATTER ASSERTED IN THE EXHIBIT,

01:53PM 15    BUT ONLY AS TO THE ISSUE OF NOTICE AS TO THE CONTENTS, NOTICE

01:53PM 16    TO MR. BALWANI AS TO THE CONTENTS.

01:53PM 17         (DEFENDANT'S EXHIBIT 7286 WAS RECEIVED IN EVIDENCE.)

01:53PM 18              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:53PM 19         AND EXHIBIT 07286 IS AN EMAIL, THE TOP EMAIL FROM

01:53PM 20    DANIEL YOUNG TO SUNNY BALWANI, WITH A COPY TO ELIZABETH HOLMES,

01:53PM 21    DATED APRIL 21ST, 2013.

01:53PM 22              THE COURT:  ALL RIGHT.  THANK YOU.

01:53PM 23              MR. COOPERSMITH:  THE NEXT EXHIBIT IS 20827.

01:54PM 24         THIS IS ALSO BEING OFFERED FOR THE NOTICE OF THE SUBJECT

01:54PM 25    MATTER, CLINICAL LAB DIRECTOR APPLICATION.

6835

01:54PM 1          THE COURT:  NOTICE AS TO?

01:54PM 2          MR. COOPERSMITH:  THE MATTER IN THE EMAIL, WHICH IS

01:54PM 3   THE SUBJECT MATTER OF CLINICAL LAB DIRECTOR APPLICATIONS.

01:54PM 4          THE COURT:  AS TO MR. BALWANI?

01:54PM 5          MR. COOPERSMITH:  YES, YOUR HONOR.

01:54PM 6          THE COURT:  EXCUSE ME.

01:54PM 7     MR. LEACH.

01:54PM 8          MR. LEACH:  WITH THAT NOTATION, YOUR HONOR, NO

01:54PM 9   OBJECTION.

01:54PM 10         THE COURT:  THIS WILL BE ADMITTED THEN NOT FOR THE

01:54PM 11  TRUTH OF THE MATTERS ASSERTED, LADIES AND GENTLEMEN, IN THE

01:54PM 12  EMAILS, BUT ONLY AS TO THE ISSUE OF NOTICE OF THE SUBJECT OF

01:54PM 13  THE EMAIL AS TO MR. BALWANI.

01:54PM 14     (DEFENDANT'S EXHIBIT 20827 WAS RECEIVED IN EVIDENCE.)

01:54PM 15         MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

01:54PM 16     AND THIS IS -- WHAT IS ON THE SCREEN AND ADMITTED FOR THAT

01:55PM 17  PURPOSE IS AN EMAIL FROM, AT THE TOP, SURAJ SAKSENA TO

01:55PM 18  SUNNY BALWANI, DATED JULY 27TH, 2015.

01:55PM 19     NEXT, YOUR HONOR, IS EXHIBIT 20830.

01:55PM 20         THE COURT:  ALL RIGHT.

01:55PM 21         MR. COOPERSMITH:  EXHIBIT 20830 IS BEING OFFERED

01:55PM 22  UNDER THE PUBLIC RECORDS EXCEPTION, IT'S A PATENT APPLICATION.

01:55PM 23     AND, YOUR HONOR, THIS WAS ANOTHER ONE, IT WAS, IT WAS --

01:55PM 24  IT WAS KNOWN AS EXHIBIT NUMBER 7 IN PRIOR DISCUSSIONS WITH THE

01:55PM 25  COURT, BUT THIS -- WE HAD SOME CLARIFYING QUESTIONS WITH THE

01:55PM 1    COURT EARLIER ABOUT WHICH PAGES WOULD BE ADMITTED.

01:56PM 2                THE COURT:  IS IT EXHIBIT 7 OR EXHIBIT 9?

01:56PM 3                MR. COOPERSMITH:  I THINK IT WAS KNOWN AS EXHIBIT 7,

01:56PM 4    WHICH IN EXHIBIT NUMBERS IS 20830.

01:56PM 5                THE COURT:  MY RECOLLECTION IS THAT IT'S 9 FOUND

01:56PM 6    IN --

01:56PM 7                MR. COOPERSMITH:  LET ME CHECK THAT, YOUR HONOR.

01:56PM 8                THE COURT:  -- IN DOCKET 1470-3.

01:56PM 9                MR. COOPERSMITH:  YES, YOUR HONOR, MY APOLOGIES, IT

01:56PM 10   IS NUMBER 9.

01:56PM 11               THE COURT:  THANK YOU.

01:56PM 12          AND THE COURT'S ORDER REFERRING TO 1475, AND I'LL REFER

01:56PM 13   THE PARTIES BACK TO THE COURT'S ORDER IN THAT REGARD.

01:56PM 14               MR. COOPERSMITH:  YOUR HONOR, TO CLARIFY, WHAT THE

01:56PM 15   ORDER SAYS IS WHAT IS ADMISSIBLE?

01:56PM 16               THE COURT:  YES.

01:56PM 17               MR. COOPERSMITH:  OKAY.  THANK YOU.  THAT'S HELPFUL.

01:56PM 18          IN THAT CASE, YOUR HONOR, WE WOULD OFFER THE DOCUMENT

01:56PM 19   UNDER THE PUBLIC RECORDS EXCEPTION, AND WE OFFER ON THE EXHIBIT

01:56PM 20   NUMBER PAGES, PAGES 1 THROUGH 4, PAGES 5 THROUGH -- I'M SORRY.

01:57PM 21               THE COURT:  SO LET'S CORRESPOND THOSE TO THE ECF

01:57PM 22   PAGES.

01:57PM 23               MR. COOPERSMITH:  IT MIGHT BE EASIER.

01:57PM 24               THE COURT:  YES.  THE ECF PAGES ARE 162 THROUGH 169,

01:57PM 25   AND 216 AND 217, WHICH ARE THE FINAL RECEIPT PAGES, IF YOU

01:57PM 1  WILL.

01:57PM 2          MR. COOPERSMITH:  216 AND 217, YOUR HONOR?

01:57PM 3          THE COURT:  RIGHT.

01:57PM 4          MR. COOPERSMITH:  YES, THANK YOU.

01:57PM 5      SO THOSE ARE BEING OFFERED FOR THE REASONS THAT I STATED.

01:57PM 6          THE COURT:  OKAY.

01:57PM 7          MR. LEACH:  YOUR HONOR, I UNDERSTOOD THIS WAS BEING

01:57PM 8  ORDER FOR A NONHEARSAY PURPOSE, THE MERE FACT OF AN

01:57PM 9  APPLICATION, AND NOT FOR THE TRUTH OF THE MATTERS ASSERTED IN

01:57PM 10  THE APPLICATION.

01:57PM 11      IF THAT IS THE LIMIT, WE HAVE NO OBJECTION.

01:57PM 12          THE COURT:  THAT'S WHAT I THOUGHT YOU WERE DOING,

01:57PM 13  MR. COOPERSMITH.

01:57PM 14          MR. COOPERSMITH:  YES, YOUR HONOR, THAT'S FINE.

01:57PM 15          THE COURT:  THESE PAGES, LADIES AND GENTLEMEN, THIS

01:58PM 16  EXHIBIT IS ONCE AGAIN ADMITTED NOT FOR THE TRUTH OF ANYTHING

01:58PM 17  INDICATED IN THE EXHIBITS, BUT JUST FOR THE FACT OF

01:58PM 18  ESTABLISHING AN APPLICATION WAS FILED.

01:58PM 19      (DEFENDANT'S EXHIBIT 20830 WAS RECEIVED IN EVIDENCE.)

01:58PM 20          MR. COOPERSMITH:  YES, YOUR HONOR.

01:58PM 21      TO ORIENT US ON THE FIRST PAGE OF 20830, IT'S A DOCUMENT

01:58PM 22  ENTITLED PROVISIONAL APPLICATION FOR PATENT COVER SHEET, AND IT

01:58PM 23  HAS CERTAIN INVENTOR NAMES, AND THEN IT HAS A TITLE, THE TITLE

01:58PM 24  OF INVENTION READS, DEVICES, METHODS, AND SYSTEMS FOR REDUCING

01:58PM 25  SAMPLE VOLUME.

6838

01:58PM 1         AND THEN IF WE CAN GO TO THE SECOND PAGE BRIEFLY, THERE'S

01:58PM 2    A DATE OF OCTOBER 8TH, 2013.

01:58PM 3         THE COURT:  ALL RIGHT.

01:59PM 4         MR. COOPERSMITH:  YOUR HONOR, THAT, I BELIEVE,

01:59PM 5    EXHAUSTS THE EXHIBITS THAT WERE ADMITTED UNDER THE COURT'S

01:59PM 6    RULING.

01:59PM 7         THERE WAS ONE OTHER THAT WE'RE NOT OFFERING, WHICH IS

01:59PM 8    7098, BUT WE WON'T OFFER THAT.

01:59PM 9         THE COURT:  OKAY.

01:59PM 10        MR. COOPERSMITH:  BUT THERE ARE TWO OTHER EXHIBITS,

01:59PM 11   YOUR HONOR, THAT ARE ADMISSIBLE PURSUANT TO A STIPULATION OF

01:59PM 12   THE PARTIES, AND THOSE STIPULATIONS ARE AT DOCKET 1472 AND

01:59PM 13   1473.

01:59PM 14        WE ASK THAT THE COURT READ THE STIPULATION TO THE JURY,

01:59PM 15   AND YOU CAN --

01:59PM 16        THE COURT:  I'M HAPPY TO DO THAT.  IF YOU WOULD HAND

01:59PM 17   ONE UP TO ME, THAT WOULD BE TERRIFIC.  OH, THANK YOU SO MUCH.

01:59PM 18        CAN I JUST INQUIRE IF THE GOVERNMENT HAS A COPY OF THIS?

01:59PM 19        MR. LEACH:  I DON'T, YOUR HONOR.  I'LL TRY TO LOOK

01:59PM 20   IT UP.

01:59PM 21        MR. COOPERSMITH:  CAN I --

01:59PM 22        THE COURT:  DO YOU -- HOW MANY COPIES DO YOU HAVE?

01:59PM 23        MR. COOPERSMITH:  I HAVE MULTIPLE COPIES ACTUALLY.

02:00PM 24        (HANDING.)

02:00PM 25        MR. LEACH:  THANK YOU.

02:00PM 1            MR. COOPERSMITH:  MY TEAM CAN BE VERY EFFICIENT.

02:00PM 2        (LAUGHTER.)

02:00PM 3            MR. COOPERSMITH:  OH, AND THERE'S ANOTHER ONE,

02:00PM 4    YOUR HONOR.

02:00PM 5            THE COURT:  ALL RIGHT.

02:00PM 6        LADIES AND GENTLEMEN, I'M GOING TO READ TO YOU NOW TWO

02:00PM 7    STIPULATIONS THAT THE PARTIES HAVE AGREED TO REGARDING CERTAIN

02:00PM 8    EVIDENCE, AND YOU'LL HAVE THE STIPULATION FOR YOU.

02:00PM 9        THE FIRST STIPULATION IS AS FOLLOWS:

02:00PM 10       THE UNITED STATES AND RAMESH BALWANI, THROUGH UNDERSIGNED

02:00PM 11   COUNSEL, HEREBY STIPULATE AND AGREE TO THE ADMISSION OF TRIAL

02:00PM 12   EXHIBIT 20073A INTO EVIDENCE; TRIAL EXHIBIT 20073A IS A NATIVE

02:01PM 13   EXCEL SPREADSHEET PRODUCED BY SOUTHWEST CONTEMPORARY WOMEN'S

02:01PM 14   CLINIC, SWCWC, AND REFLECTS ALL SWCWC PATIENTS WHO RECEIVED

02:01PM 15   THERANOS BLOOD TESTING RESULTS AFTER AUGUST 2015.

02:01PM 16       DID I READ THAT STIPULATION CORRECTLY, MR. COOPERSMITH?

02:01PM 17           MR. COOPERSMITH:  YES, YOUR HONOR.

02:01PM 18           THE COURT:  MR. LEACH?

02:01PM 19           MR. LEACH:  YES, YOUR HONOR.

02:01PM 20           THE COURT:  ALL RIGHT.  THANK YOU.

02:01PM 21       THAT EXHIBIT IS ADMITTED PURSUANT TO THE STIPULATION.

02:01PM 22       THE NEXT STIPULATION, LADIES AND GENTLEMEN, IS AS FOLLOWS:

02:01PM 23       THE PARTIES STIPULATE THAT THE DOCUMENTS BEARING BATES

02:01PM 24   NUMBERS NUNN THERANOS 0002301 THROUGH NUNN THERANOS 0002304 AND

02:02PM 25   NUNN THERANOS 0000855 THROUGH NUNN THERANOS 0000950 ARE TRUE

02:02PM  1    AND CORRECT COPIES OF DOCUMENTS PROVIDED TO SAM NUNN BY

02:02PM  2    THERANOS AND PRODUCED BY HIM IN RESPONSE TO A SUBPOENA.

02:02PM  3         THE PARTIES STIPULATE THAT THE DOCUMENTS ARE ADMISSIBLE

02:02PM  4    FOR THIS PURPOSE.

02:02PM  5         DID I READ THAT STIPULATION CORRECTLY?

02:02PM  6              MR. COOPERSMITH:  YES, YOUR HONOR.

02:02PM  7         AND THE EXHIBITS THAT GO WITH THAT STIPULATION, MAY I

02:02PM  8    OFFER THOSE AT THIS TIME?

02:02PM  9              THE COURT:  MR. LEACH?

02:02PM  10             MR. LEACH:  YOU READ THE STIPULATION CORRECTLY,

02:02PM  11   YOUR HONOR, AND THEY MAY BE ADMITTED.

02:02PM  12             THE COURT:  THANK YOU.  THOSE ARE ADMITTED.

02:02PM  13        AND YOU'D LIKE TO DISPLAY THOSE BRIEFLY?

02:02PM  14             MR. COOPERSMITH:  YES, YOUR HONOR.

02:02PM  15        AND JUST FOR THE RECORD, THE STIPULATION THAT THE COURT

02:02PM  16   READ HAS CERTAIN BATES NUMBERS, AND THE EXHIBIT NUMBERS ARE

02:03PM  17   20788 AND 20145.  AND THOSE ARE THE EXHIBITS THAT WE OFFER

02:03PM  18   PURSUANT TO THAT STIPULATION.

02:03PM  19             THE COURT:  ALL RIGHT.  THANK YOU.  THOSE ARE

02:03PM  20   ADMITTED.

02:03PM  21        (DEFENDANT'S EXHIBITS 20788 AND 20145 WERE RECEIVED IN

02:03PM  22   EVIDENCE.)

02:03PM  23             MR. COOPERSMITH:  AND IF WE CAN BRIEFLY DISPLAY THEM

02:03PM  24   TO THE JURY?

02:03PM  25             THE COURT:  SURE, LET'S BRIEFLY DO THAT.

6841

02:03PM   1          MR. COOPERSMITH:  THIS IS 20788.  IT'S AN EMAIL FROM

02:03PM   2    TEMPE STEPHEN DATED JULY 15TH, 2014, TO SAM NUNN, SUBJECT

02:03PM   3    THERANOS FINANCIALS.

02:03PM   4          THE COURT:  OKAY.  THANK YOU.

02:03PM   5          MR. COOPERSMITH:  AND THEN THE OTHER EXHIBIT IS

02:03PM   6    20145.  IT IS A PROJECTED STATEMENT OF INCOME WITH SOME

02:03PM   7    HANDWRITING, AND IT DOES NOT HAVE A DATE ON THE DOCUMENT, BUT

02:03PM   8    IT DOES HAVE COLUMNS LABELLED 2014 AND 2015.

02:03PM   9          THE COURT:  ALL RIGHT.  THANK YOU.

02:03PM  10          MR. COOPERSMITH:  THANK YOU.

02:03PM  11       AND I THINK -- IF I COULD HAVE ONE MOMENT TO CONFER?

02:03PM  12          THE COURT:  YES.

02:04PM  13       (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

02:04PM  14          MR. COOPERSMITH:  YOUR HONOR, JUST TO CONFIRM,

02:04PM  15    EXHIBIT 20073A, APPLE, THAT IS ADMITTED IN EVIDENCE?

02:04PM  16          THE COURT:  YES.

02:04PM  17       (DEFENDANT'S EXHIBIT 20073A WAS RECEIVED IN EVIDENCE.)

02:04PM  18          MR. COOPERSMITH:  AND CAN WE BRIEFLY DISPLAY THAT

02:04PM  19    FIRST PAGE?

02:04PM  20          THE COURT:  SURE.

02:04PM  21          MR. COOPERSMITH:  IT'S A SPREADSHEET WITH A NUMBER

02:04PM  22    OF ENTRIES IN NATIVE FORM WHERE THERE'S A COLUMN THAT SAYS

02:04PM  23    PRACTICE CODE AND IT SAYS SWC ON THE PAGE WE'RE SEEING, AND

02:04PM  24    THEN FACILITY NAME TO READ THERANOS, AND THEN THERE'S DATES IN

02:05PM  25    THE COLUMN, COLUMN C.  THAT'S THE EXHIBIT.

02:05PM  1          THANK YOU, YOUR HONOR.

02:05PM  2                  THE COURT:  ALL RIGHT.  THANK YOU.

02:05PM  3                  MR. COOPERSMITH:  WITH THAT, YOUR HONOR, THE DEFENSE

02:05PM  4     RESTS.

02:05PM  5                  THE COURT:  ALL RIGHT.  THANK YOU.

02:05PM  6          LADIES AND GENTLEMEN, THE DEFENSE HAS NOW RESTED IN THE

02:05PM  7     CASE.

02:05PM  8          I SEE IT'S PAST 2:00 O'CLOCK AND I TOLD YOU WE WOULD BREAK

02:05PM  9     AT 2:00 O'CLOCK.

02:05PM  10          I'M GOING TO HAVE THE LAWYERS STAY HERE AND I'M GOING TO

02:05PM  11     TALK TO THEM ABOUT WHAT OUR NEXT STEPS ARE, INCLUDING WHETHER

02:05PM  12     OR NOT THE GOVERNMENT WILL HAVE A REBUTTAL CASE.

02:05PM  13          SO LET'S RECESS FOR TODAY.  WE WILL RECESS FOR TODAY.  I

02:05PM  14     WILL ASK THAT, FOR NOW, YOU SCHEDULE YOURSELVES SUCH THAT YOU

02:05PM  15     COULD RETURN TOMORROW AT 9:00 A.M., AT 9:00 A.M., UNLESS YOU

02:05PM  16     HEAR OTHERWISE.

02:05PM  17          I'M GOING TO TALK TO THE LAWYERS ABOUT SCHEDULING, AND OUR

02:05PM  18     WONDERFUL COURTROOM DEPUTY WILL BE IN TOUCH WITH YOU AS TO

02:06PM  19     WHETHER OR NOT THERE'S ANY CHANGES IN THE SCHEDULE.

02:06PM  20          DURING THE BREAK, PLEASE -- AGAIN, I REMIND YOU OF THE

02:06PM  21     ADMONITION.  DO NOT READ, LISTEN TO, OR IN ANY WAY TRY TO LEARN

02:06PM  22     ANYTHING ABOUT THIS CASE UNTIL THE CASE HAS BEEN SUBMITTED TO

02:06PM  23     YOU FOR YOUR DELIBERATIONS.

02:06PM  24          AS I'VE SAID TO YOU, AS OF NOW THE DEFENSE HAS RESTED.  AS

02:06PM  25     OF NOW, YOU HAVE ALL OF THE EVIDENCE YOU MAY NEED.

6843

02:06PM  1        I NEED TO DISCUSS FURTHER STEPS WITH THE LAWYERS BEFORE WE

02:06PM  2   GO FURTHER.

02:06PM  3        SO WE MAY HAVE ADDITIONAL EVIDENCE TO PRESENT TO YOU, BUT

02:06PM  4   WE'LL SEE WHAT HAPPENS.

02:06PM  5        SO YOU'LL BE IN RECESS NOW.  THANK YOU VERY MUCH.

02:06PM  6        REMEMBER THE ADMONITION.

02:06PM  7        WE'LL SEE YOU TOMORROW MORNING, UNLESS YOU HEAR OTHERWISE.

02:06PM  8   THANK YOU.

02:07PM  9        (JURY OUT AT 2:07 P.M.)

02:07PM 10        THE COURT:  PLEASE BE SEATED.  THANK YOU.  THE

02:07PM 11   RECORD SHOULD REFLECT OUR JURY HAS LEFT FOR THE DAY AND ALL

02:07PM 12   COUNSEL AND MR. BALWANI REMAIN.

02:07PM 13        MR. COOPERSMITH.

02:07PM 14        MR. COOPERSMITH:  YES.  AT THIS TIME WE RENEW OUR

02:07PM 15   RULE 29 MOTION AND WANT TO MAKE SURE THAT'S IN THE RECORD AND

02:07PM 16   IT'S REFLECTED.

02:07PM 17        WHAT WE THINK MAKES SENSE IS TO HAVE THE COURT RESERVE

02:07PM 18   UNTIL AFTER THE VERDICT, AND THEN WE CAN SET A BRIEFING

02:07PM 19   SCHEDULE OR WHATEVER IS NECESSARY, IF IT'S NECESSARY.

02:07PM 20        THE COURT:  SURE.

02:07PM 21        MR. COOPERSMITH:  THANK YOU.  THAT'S OUR REQUEST.

02:07PM 22        THE COURT:  I WILL NOTE THAT YOU'VE MADE A RULE 29

02:07PM 23   MOTION, AND I THINK YOU MADE IT PREVIOUSLY AT THE CLOSE OF THE

02:07PM 24   GOVERNMENT'S CASE.

02:07PM 25        MR. COOPERSMITH:  YES, YOUR HONOR.

02:07PM 1          THE COURT:  AND I'LL RECOGNIZE THE RENEWAL.

02:07PM 2      THE COURT WILL RESERVE JUDGMENT ON THAT UNTIL AFTER ANY

02:07PM 3  VERDICT THAT MIGHT BE ENTERED, AND WE CAN TALK ABOUT

02:07PM 4  SCHEDULING.

02:07PM 5      WE WERE GOING TO HAVE A DISCUSSION ABOUT WHETHER OR NOT

02:08PM 6  THERE'S GOING TO BE REBUTTAL.

02:08PM 7      I'M GOING TO STEP DOWN NOW.  AS YOU KNOW, I THINK I TOLD

02:08PM 8  YOU, I HAVE ANOTHER MATTER TO TAKE CARE OF.  I THINK IT'S

02:08PM 9  REMOTE.

02:08PM 10      BUT WHY DON'T I STEP DOWN AND WE'LL SEE COUNSEL IN

02:08PM 11  ABOUT -- WELL, WHY DON'T I SAY 3:00 O'CLOCK JUST TO BE SAFE, IN

02:08PM 12  ABOUT ANOTHER 50 MINUTES IF THAT WORKS FOR YOU.

02:08PM 13          MR. COOPERSMITH:  YES, YOUR HONOR.

02:08PM 14          THE COURT:  OKAY.  GREAT.  THANK YOU.

02:08PM 15      (RECESS FROM 2:08 P.M. UNTIL 3:14 P.M.)

03:14PM 16      (JURY OUT AT 3:14 P.M.)

03:14PM 17          THE COURT:  WE'RE BACK ON THE RECORD OUTSIDE OF THE

03:14PM 18  PRESENCE OF THE JURY.

03:15PM 19      ALL COUNSEL ARE PRESENT.  MR. BALWANI IS PRESENT.

03:15PM 20      LET ME SAY, FIRST OF ALL, I DID RECEIVE A COPY OF THE WORK

03:15PM 21  IN PROGRESS JURY INSTRUCTIONS, AND WE CAN MAYBE CHAT ABOUT

03:15PM 22  THOSE IN A MOMENT.

03:15PM 23      BUT LET ME JUST TURN TO THE PARTIES AS TO THE NEXT STEPS.

03:15PM 24  I THINK THAT'S THE GOVERNMENT'S CALL.

03:15PM 25      MAY I HAVE THE PARTIES COME FORWARD.

03:15PM 1      MR. LEACH:  THANK YOU, YOUR HONOR.

03:15PM 2      I THINK YESTERDAY THE GOVERNMENT INDICATED THAT BEFORE

03:15PM 3  MAKING A DECISION ABOUT WHETHER TO PUT ON A REBUTTAL CASE, IT

03:15PM 4  WOULD BE HELPFUL TO HAVE A DISCUSSION ABOUT THE ADVERSE

03:15PM 5  INFERENCE INSTRUCTION THAT THE DEFENSE IS REQUESTING.

03:16PM 6      WE'RE PREPARED TO HAVE THAT DIALOGUE NOW, AND I THINK THAT

03:16PM 7  WOULD INFORM THE GOVERNMENT'S VIEW ABOUT WHETHER ANY FORM OF

03:16PM 8  REBUTTAL IS APPROPRIATE.

03:16PM 9      THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

03:16PM 10     MR. COOPERSMITH:  YOUR HONOR, MR. BRECHER IS

03:16PM 11 PREPARED TO ADDRESS THAT ISSUE.

03:16PM 12     THE COURT:  OKAY.

03:16PM 13     YES, MR. BRECHER.

03:16PM 14     MR. BRECHER:  OH, I DIDN'T KNOW IF YOU WANTED TO

03:16PM 15 START WITH THE DEFENSE OR THE GOVERNMENT ON THAT.

03:16PM 16     SO, YOUR HONOR, WE HAVE PROPOSED AN INSTRUCTION, AN

03:16PM 17 ADVERSE INFERENCE INSTRUCTION.  I THINK WE'RE HAPPY TO RETITLE

03:16PM 18 IT A MISSING EVIDENCE INSTRUCTION, OR FRANKLY, ANYTHING ELSE.

03:16PM 19     AS YOU KNOW, WE HAD FILED A PLEADING THAT ADOPTED

03:17PM 20 MS. HOLMES'S MOTION TO SUPPRESS PATIENT COUNT EVIDENCE AND

03:17PM 21 ANECDOTAL EVIDENCE, AND THE COURT HAS ISSUED A RULING, AND WE

03:17PM 22 STAND BY OUR MOTION, PARTICULARLY NOW THAT THE COURT HAS HAD AN

03:17PM 23 OPPORTUNITY TO HEAR FROM MR. SONNIER.

03:17PM 24     BUT I THINK WHEN IT COMES TO THE INSTRUCTION, WHICH IS A

03:17PM 25 LESSER REMEDY, I DO THINK THAT THAT INSTRUCTION IS IMPLICATED

6846

03:17PM 1    BY THESE FACTS.

03:17PM 2         AND WE'VE HEARD A COUPLE OF ISSUES, TWO OF THEM PRIMARILY,

03:17PM 3    THAT ARE SORT OF PURE QUESTIONS OF LAW FROM THE GOVERNMENT.

03:17PM 4         BUT OTHERWISE I'M NOT QUITE SURE OF THE GOVERNMENT'S

03:17PM 5    POSITION OTHER THAN THEY OPPOSE THE INSTRUCTION.

03:17PM 6         BUT I KNOW THAT IN THEIR MOTION TO EXCLUDE MR. SONNIER'S

03:17PM 7    TESTIMONY, THE GOVERNMENT SUGGESTED THAT AN ADVERSE INFERENCE

03:17PM 8    INSTRUCTION WAS APPROPRIATE ONLY IN CASES OF BAD FAITH.

03:17PM 9         THAT'S NOT CORRECT.

03:17PM 10        LATER IN THEIR REPLY BRIEF, IN A FOOTNOTE THEY SAID THAT

03:17PM 11   SUCH AN INSTRUCTION WAS ONLY APPROPRIATE IN CASES IN WHICH THE

03:17PM 12   GOVERNMENT HAD ACTUALLY COME INTO POSSESSION OF THE EVIDENCE

03:18PM 13   AND IT WAS LOST OR DESTROYED IN THE GOVERNMENT'S POSSESSION.

03:18PM 14        THAT, TOO, AS FAR AS I READ NINTH CIRCUIT LAW, IS NOT

03:18PM 15   CORRECT.

03:18PM 16        I'M HAPPY TO ADDRESS BOTH OF THOSE LEGAL ISSUES, BUT I

03:18PM 17   DON'T KNOW WHAT WOULD BE MOST HELPFUL FOR THE COURT TO BEGIN

03:18PM 18   WITH.

03:18PM 19             THE COURT:  WELL, LET ME -- THANK YOU.

03:18PM 20        LET ME ASK FIRST A THRESHOLD QUESTION.  ARE YOU ARGUING IN

03:18PM 21   ANY WAY THAT THERE HAS BEEN A CONSTITUTIONAL DUE PROCESS

03:18PM 22   VIOLATION HERE?

03:18PM 23             MR. BRECHER:  WELL, YOUR HONOR, WE DID ARGUE THAT IN

03:18PM 24   OUR MOTION TO SUPPRESS, AND WE STAND BY THAT ARGUMENT.

03:18PM 25        SO I DON'T WANT TO DISCLAIM IT, BUT I DON'T THINK THAT'S

6847

03:18PM  1    NECESSARY FOR THE INSTRUCTION THAT WE'RE REQUESTING HERE.

03:18PM  2              THE COURT:  OKAY.

03:18PM  3              MR. BRECHER:  SO THAT'S A SECOND -- I THINK THAT'S A

03:18PM  4    TANGENTIAL ISSUE.

03:18PM  5              THE COURT:  OKAY.  THANK YOU.  I JUST WANT TO MAKE

03:18PM  6    CLEAR THAT YOU'RE NOT ASKING FOR THAT, BECAUSE THAT DOES RAISE

03:18PM  7    DIFFERENT STANDARDS AS YOU KNOW.

03:18PM  8              MR. BRECHER:  YES.

03:18PM  9              THE COURT:  SO AS TO THE, I'LL JUST CALL IT ADVERSE

03:19PM 10    INSTRUCTION, I DON'T THINK THAT WE HAVE TO HAVE A CONVERSATION

03:19PM 11    ABOUT WHETHER OR NOT BAD FAITH IS GOING TO BE SHOWN ON NOT.

03:19PM 12    THAT'S NOT SOMETHING THAT I NEED SOME ASSISTANCE ON.

03:19PM 13         BUT WHAT I AM INTERESTED IN, AND I THINK I TOUCHED ON

03:19PM 14    YESTERDAY, WE SHOULD LOOK AT LOUD HAWK AND THEN JUDGE KENNEDY'S

03:19PM 15    CONCURRENCE WHICH I THINK DOES CONTROL THE FACTORS AND THE

03:19PM 16    BALANCING TEST AND THE BALANCING THAT THE COURT NEEDS TO ENGAGE

03:19PM 17    IN FOR PURPOSES OF DETERMINING WHETHER OR NOT THE EVIDENCE

03:19PM 18    SUPPORTS SUCH AN INSTRUCTION.

03:19PM 19              MR. BRECHER:  THAT'S CORRECT, YOUR HONOR.  AT LEAST

03:19PM 20    UP THROUGH 2018, AS I READ THE NINTH CIRCUIT CASE LAW, THAT

03:19PM 21    STANDARD, THAT BALANCING TEST HAS BEEN ELABORATED TO SOME

03:19PM 22    EXTENT.

03:19PM 23         BUT THE CORE HOLDING REMAINS JUDGE KENNEDY'S CONTROLLING

03:19PM 24    CONCURRENCE FROM LOUD HAWK, TWO WORDS.

03:20PM 25              MR. LEACH:  I AGREE THAT'S THE APPROPRIATE STANDARD,

6848

03:20PM 1     YOUR HONOR.

03:20PM 2            THE COURT:  OKAY.

03:20PM 3            MR. LEACH:  AND THAT'S THE STANDARD CITED IN THE

03:20PM 4     NINTH CIRCUIT MODEL AT 3.19 FOR LOST OR DESTROYED EVIDENCE.

03:20PM 5            THE COURT:  ALL RIGHT.  LET ME TURN TO YOU,

03:20PM 6     MR. BRECHER.  WHY DO YOU FEEL, AND DO THE FACTS IN THIS CASE

03:20PM 7     SUGGEST THAT THE COURT SHOULD GIVE SUCH AN INSTRUCTION?

03:20PM 8            MR. BRECHER:  THANK YOU, YOUR HONOR.

03:20PM 9         I WANT TO LEVEL-SET ON WHAT THE STANDARD IS, BECAUSE I

03:20PM 10    RECALL DURING OUR CONVERSATION, I BELIEVE IT WAS YESTERDAY,

03:20PM 11    MS. VOLKAR HAD SUGGESTED THAT BECAUSE OUR PROPOSED LANGUAGE

03:20PM 12    DEVIATES FROM THE MODEL INSTRUCTION BY USING THE WORD

03:20PM 13    "NEGLIGENTLY" OR "RECKLESSLY" INSTEAD OF "INTENTIONALLY," THAT

03:20PM 14    THAT'S SOME SORT OF DEVIATION FROM NINTH CIRCUIT LAW, AND

03:20PM 15    THAT'S NOT THE CASE.

03:20PM 16        AS THE COURT KNOWS FROM THE SIVILLA DECISION WHICH WE

03:20PM 17    CITED SEVERAL TIMES IN OUR PLEADINGS IN DOCKET 1476, THE

03:21PM 18    NINTH CIRCUIT HAS REVERSED CONVICTIONS FOR THE FAILURE TO GIVE

03:21PM 19    THE INSTRUCTION, EVEN IN A CASE WHERE, ONE, THE GOVERNMENT'S

03:21PM 20    CONDUCT WAS NEGLIGENT, AND TWO, THE EXCULPATORY VALUE OF THE

03:21PM 21    EVIDENCE WAS SPECULATIVE AT BEST.

03:21PM 22        I THINK THE COURT WILL RECALL FROM FEBRUARY 8TH,

03:21PM 23    MR. COOPERSMITH HAD A DIALOGUE WITH YOUR HONOR ABOUT THIS CASE,

03:21PM 24    AND THERE IT WAS A TRUCK THAT WAS IMPOUNDED AT THE BORDER THAT

03:21PM 25    HAD SOME DRUGS HIDDEN IN A COMPARTMENT.

03:21PM 1          AND THEN LATER, IN CONTRAVENTION OF A COURT ORDER, THAT

03:21PM 2    TRUCK WAS INADVERTENTLY SOLD AT AUCTION, AND THEN ANY POTENTIAL

03:21PM 3    EXCULPATORY EVIDENCE WAS DESTROYED.

03:21PM 4          IN THIS CASE, I THINK, THE ISSUES ARE -- OBVIOUSLY THE

03:21PM 5    FACTS ARE QUITE DIFFERENT, BUT I THINK THE STANDARDS AND THE

03:21PM 6    PRINCIPLES APPLY THE SAME.

03:21PM 7          THE ISSUE IS, WAS THE GOVERNMENT NEGLIGENT?

03:21PM 8          WE KNOW FROM OTHER MODEL INSTRUCTIONS, BOTH IN THE

03:21PM 9    CRIMINAL CONTEXT AND THE CIVIL -- AND I THINK THIS CLOSELY

03:22PM 10   TRACKS THE MODEL PENAL CODE OR THE COMMON LAW DEFINITION --

03:22PM 11   THAT NEGLIGENCE IS JUST THE FAILURE TO DO SOMETHING OR THE

03:22PM 12   DOING OF SOMETHING THAT A REASONABLY PRUDENT PERSON WOULD NOT

03:22PM 13   DO UNDER THOSE -- UNDER SIMILAR CIRCUMSTANCES.

03:22PM 14         AND RECKLESSNESS, AS THE COURT KNOWS, IS PROCEEDING ON A

03:22PM 15   COURSE OF CONDUCT DESPITE ACTUAL KNOWLEDGE OF SOME RISK OR SOME

03:22PM 16   DANGER.

03:22PM 17         IN THIS CASE I THINK WE'VE PRESENTED AT LEAST THE FACTUAL

03:22PM 18   PREDICATE FOR MR. COOPERSMITH TO ARGUE EITHER OF THOSE.  ONE,

03:22PM 19   THAT A REASONABLY PRUDENT PERSON SHOULD HAVE SEIZED THE LIS

03:22PM 20   PRODUCTION EQUIPMENT AND HARD DRIVES; AND TWO, THAT THE

03:22PM 21   GOVERNMENT, HAVING BEEN EXPRESSLY ADVISED THAT THAT WAS A

03:22PM 22   POTENTIAL ROUTE GOING FORWARD, SHOULD HAVE UNDERTAKEN THAT

03:22PM 23   STEP.

03:22PM 24         AND I WANT TO POINT OUT, YOUR HONOR, THAT OUR PROPOSED

03:22PM 25   INSTRUCTION DOESN'T REQUIRE, IT DOESN'T ASK THE COURT TO TELL

6850

03:22PM   1    THE JURY THESE ARE THE FACTS THAT THEY MUST CONCLUDE OR THAT

03:22PM   2    THE GOVERNMENT WAS NEGLIGENT OR WAS RECKLESS.

03:23PM   3         YOU MAY RECALL THERE WAS A NINTH CIRCUIT DECISION CALLED

03:23PM   4    FRIES WHICH WE CITE I BELIEVE IN A PRIOR PLEADING, AND IF NOT,

03:23PM   5    I'M HAPPY TO PROVIDE THE COURT WITH THAT CITATION.

03:23PM   6         AND THE ISSUE THERE WAS THE DEFENDANT HAD REQUESTED SOME

03:23PM   7    MANDATORY INSTRUCTION ABOUT THE GOVERNMENT'S FAILURE TO RECORD

03:23PM   8    A CRITICAL PHONE CONVERSATION, AND THE DEFENDANT SAID, THE

03:23PM   9    GOVERNMENT FAILED TO DO THIS, YOU MUST CONSIDER THIS IN YOUR

03:23PM   10   DELIBERATIONS.

03:23PM   11        AND OBVIOUSLY THAT INSTRUCTION WASN'T GIVEN, AND I THINK

03:23PM   12   THE NINTH CIRCUIT AFFIRMED THAT CONVICTION.

03:23PM   13        THIS IS A LITTLE BIT DIFFERENT.  WE SIMPLY SPELL OUT, IN

03:23PM   14   WHAT I HOPE ARE NONCONTROVERSIAL TERMS, WHAT THE LAW

03:23PM   15   SURROUNDING NEGLIGENCE IS, WHAT -- HOW IT'S DEFINED, AND HOW

03:23PM   16   RECKLESSNESS IS DEFINED, AND INVITE IT AS A PERMISSIVE

03:23PM   17   INFERENCE ONLY, QUOTE, "IF YOU FIND" -- AND I'M QUOTING FROM

03:23PM   18   OUR PROPOSAL AT 1476, YOUR HONOR -- "IF YOU FIND THAT THE

03:23PM   19   GOVERNMENT NEGLIGENTLY OR RECKLESSLY FAILED TO PRESERVE THE LIS

03:24PM   20   LABORATORY -- THE THERANOS LIS, THAT THE GOVERNMENT KNEW OR

03:24PM   21   SHOULD HAVE KNOWN WOULD BE EVIDENCE IN THIS CASE, YOU MAY

03:24PM   22   INFER, BUT ARE NOT REQUIRED TO INFER, THAT THIS EVIDENCE WAS

03:24PM   23   UNFAVORABLE TO THE GOVERNMENT."

03:24PM   24        I THINK THAT THAT -- THE CORE OF IT, YOUR HONOR, THUS

03:24PM   25   TRACKS THE NINTH CIRCUIT MODEL INSTRUCTION.

6851

03:24PM  1    AND THE REFERENCE TO STATE OF MIND CLOSELY TRACKS OTHER

03:24PM  2    INSTRUCTIONS, AS WELL AS NINTH CIRCUIT CASE LAW FROM SIVILLA

03:24PM  3    AND OTHERS.

03:24PM  4        I NEXT WANT TO TURN, YOUR HONOR, TO A DIFFERENT ARGUMENT

03:24PM  5    THAT THE GOVERNMENT HAS RAISED, AND AGAIN, I'M KIND OF

03:24PM  6    PROCEEDING BLIND HERE WITHOUT KNOWING EXACTLY WHAT MR. LEACH'S

03:24PM  7    POSITION IS, BUT THERE'S BEEN SOME SUGGESTION THAT THESE

03:24PM  8    INSTRUCTIONS ARE NOT APPROPRIATE UNLESS THE GOVERNMENT WAS IN

03:24PM  9    PHYSICAL -- HAD ALREADY TAKEN CUSTODY AND POSSESSION OF THE

03:24PM  10   INFORMATION, AND I JUST DON'T THINK THAT'S TRUE.

03:24PM  11       IF YOU LOOK AT THE NINTH CIRCUIT'S DECISION IN ROBERTSON,

03:24PM  12   WHICH THE COURT CITED IN DOCKET 887, AND WHICH IS AT

03:24PM  13   895 F.3D 1206, IF YOU LOOK AT PAGE 1213, ROBERTSON ARTICULATES

03:25PM  14   THAT MULTI FACTOR BALANCING TEST TAKEN FROM LOUD HAWK AND IT

03:25PM  15   NOTES THERE'S NOT ONE FACTOR THAT IS DISPOSITIVE.

03:25PM  16       AND WHEN YOU LOOK AT THE ONE PRONG, THE QUALITY OF THE

03:25PM  17   GOVERNMENT'S CONDUCT, WHICH THE GOVERNMENT BEARS THE BURDEN OF

03:25PM  18   PROVING, ONLY ONE OF THE FACTORS IS WHETHER EVIDENCE LOST --

03:25PM  19   WHETHER THE EVIDENCE WAS LOST OR DESTROYED WHILE IN THE

03:25PM  20   GOVERNMENT'S CUSTODY.

03:25PM  21       THE OTHERS INCLUDE WHETHER THE GOVERNMENT ACTED IN

03:25PM  22   DISREGARD OF THE DEFENDANT'S INTERESTS; WHETHER THE GOVERNMENT

03:25PM  23   WAS NEGLIGENT, WHICH WE CONTEND WAS THE CASE FOR BOTH OF THOSE

03:25PM  24   LAST TWO; WHETHER THE ACTUAL PROSECUTING ATTORNEYS WERE

03:25PM  25   INVOLVED, WHICH WE CONTEND IS THE CASE; AND THEN ALSO WHETHER

6852

03:25PM 1    THE DESTRUCTION INVOLVED DELIBERATE ACTS AND AN ABSENCE OF GOOD

03:25PM 2    FAITH BY THE GOVERNMENT.

03:25PM 3         I THINK GIVEN THAT STANDARD, YOUR HONOR, WE'RE NOT ASKING

03:25PM 4    THE COURT TO TELL THE JURY WHAT HAPPENED OR TO TELL THE JURY

03:26PM 5    WHAT IT MEANS.

03:26PM 6         WE'RE ASKING THE COURT TO PROVIDE A LEGAL FRAMEWORK

03:26PM 7    AGAINST WHICH MR. COOPERSMITH COULD ARGUE -- OBVIOUSLY, AS I

03:26PM 8    THINK THE COURT KNOWS, EVEN IN THE ABSENCE OF THAT FRAMEWORK

03:26PM 9    MR. COOPERSMITH COULD STILL MAKE THE ARGUMENT, THOSE DECISIONS

03:26PM 10   THAT HAVE NOT AWARDED THE INFERENCE HAVE DONE SO IN

03:26PM 11   CIRCUMSTANCES WHERE THE DEFENDANT WAS ALLOWED TO MAKE THE

03:26PM 12   ARGUMENT ANYWAY, AND BARRING THE DEFENDANT FROM MAKING THAT

03:26PM 13   ARGUMENT IS ONE OF THE FACTORS THAT LENDS ITSELF TO REVERSAL IN

03:26PM 14   THE OTHER DECISIONS THAT WE'VE CITED.

03:26PM 15        THE COURT:  WELL, WE'VE HAD CONVERSATION, YOU AND I

03:26PM 16   AND MR. COOPERSMITH AS WELL, REGARDING -- AND I THINK I ASKED

03:26PM 17   YOU, YOU HAVE ENOUGH TO ARGUE INSUFFICIENCY OF THE EVIDENCE

03:26PM 18   NOW, DON'T YOU, BOTH WITH DR. ROSENDORFF AND MS. CHEUNG AND

03:26PM 19   OTHERS WHO GAVE SOME PERIPHERAL TESTIMONY ABOUT THE LIS, AND I

03:26PM 20   THINK I SAID -- MADE AN OBSERVATION THAT THE PROOF IS THAT

03:26PM 21   THERE ARE THREE WITNESSES, THERE'S SOME EVIDENCE THAT MILLIONS

03:26PM 22   OF TESTS, PERHAPS HUNDREDS OF THOUSANDS OF TESTS WERE MADE, AND

03:27PM 23   YOU HAVE THAT OPPORTUNITY TO ARGUE THAT, AS YOU JUST SUGGEST,

03:27PM 24   EVEN WITHOUT AN INSTRUCTION.

03:27PM 25        I MEAN, YOU WOULD RECOGNIZE THAT.

6853

03:27PM  1          MR. BRECHER:  I DO RECOGNIZE THAT, YOUR HONOR.

03:27PM  2      I THINK WITH RESPECT, IT'S A SLIGHTLY DIFFERENT ARGUMENT

03:27PM  3  THAN THE ONE I'M ARTICULATING HERE.

03:27PM  4      YES, THE DEFENSE MAY IN THIS CASE, AND I THINK MAY IN

03:27PM  5  EVERY CASE, ARGUE THAT THE GOVERNMENT HASN'T MET ITS BURDEN.  I

03:27PM  6  THINK THAT'S KIND OF THE POINT OF THE CLOSING.

03:27PM  7      AND CERTAINLY THERE'S AN EVIDENTIARY PREDICATE FOR

03:27PM  8  MR. COOPERSMITH TO MAKE SPECIFIC REFERENCE TO THE LIS AND WHAT

03:27PM  9  WAS CONTAINED IN IT.

03:27PM  10     BUT HERE THE ISSUE IS, CAN WE ALSO MAKE INFERENCES, AND

03:27PM  11  CAN THE JURY BE GIVEN SOME LEGAL FRAMEWORK IN THE FORM OF AN

03:27PM  12  INSTRUCTION TO UNDERSTAND THE CONDUCT IN FAILING TO SECURE THAT

03:27PM  13  LIS INFORMATION?

03:27PM  14          THE COURT:  SO THIS -- THANK YOU.  THIS GOES TOWARD

03:27PM  15  PREJUDICE, WHICH IS YOUR BURDEN, IS IT?

03:27PM  16          MR. BRECHER:  SOMEWHAT, YOUR HONOR.

03:27PM  17      PREJUDICE IS OUR BURDEN, BUT THE GOVERNMENT'S CONDUCT IS

03:27PM  18  THE GOVERNMENT'S BURDEN.

03:27PM  19          THE COURT:  RIGHT.  SO I'M FOCUSSING ON YOU NOW.

03:27PM  20  WHAT IS THE PREJUDICE?

03:28PM  21          MR. BRECHER:  WELL, THE PREJUDICE IS PRECISELY I

03:28PM  22  THINK WHAT MR. COOPERSMITH ARTICULATED ON FEBRUARY 8TH.  IT'S

03:28PM  23  THE ABSENCE OF COMPREHENSIVE TESTING DATA IN A CASE THAT IS AT

03:28PM  24  ITS CORE ABOUT THE SYSTEMIC, ALLEGED SYSTEMIC UNRELIABILITY OF

03:28PM  25  PATIENT TESTS.

6854

03:28PM  1       THE DEFENSE IS LEFT ILL EQUIPPED TO REBUT THE GOVERNMENT'S

03:28PM  2  CHARGES, WHICH ARE LEFT TO STAND ON THE EXPERIENCES OF A

03:28PM  3  HANDFUL OF PATIENT WITNESSES AND A FEW DOZEN E-MAILS OVER THE

03:28PM  4  COURSE OF THREE TO SIX YEARS.

03:28PM  5       SO I THINK THAT THAT'S THE PREJUDICE, YOUR HONOR.

03:28PM  6       AND WE ALSO -- AGAIN, I KEEP FLASHING BACK TO OUR

03:28PM  7  FEBRUARY 8TH CONVERSATION THAT MR. COOPERSMITH HAD WITH THE

03:28PM  8  COURT.

03:28PM  9       BUT REMEMBER, AS DR. ROSENDORFF TESTIFIED, THERE ARE A

03:28PM 10  SERIES OF THINGS, CONCRETE THINGS THAT YOU CAN DO WITH THE LIS.

03:28PM 11  YOU CAN RUN PATIENT TREND ANALYSIS.  IT CONTAINS ALL OF THE

03:28PM 12  QUALITY CONTROL INFORMATION, AT LEAST ACCORDING TO

03:28PM 13  DR. ROSENDORFF.

03:28PM 14       I THINK MS. CHEUNG TESTIFIED DIFFERENTLY.

03:28PM 15       AND AS THE COURT WILL RECALL, MUCH OF THE GOVERNMENT'S

03:29PM 16  CASE ABOUT TESTING RELIABILITY TURNS ON QUALITY CONTROL ISSUES.

03:29PM 17       THE COURT:  IS THERE EVIDENCE IN THE CASE THAT WOULD

03:29PM 18  SUGGEST THAT THE LIS ITSELF, WHATEVER INFORMATION IS ON THE

03:29PM 19  LIS, WOULD ACTUALLY PROVIDE THAT INFORMATION?  OR IS IT

03:29PM 20  SPECULATIVE AS TO WHAT THAT WOULD PROVIDE EITHER WAY?

03:29PM 21       YOU RECALL IN A COURT'S PREVIOUS ORDER, PERHAPS IN ANOTHER

03:29PM 22  CASE, THE COURT -- IT MIGHT HAVE BEEN IN DOCKET 798, THE COURT

03:29PM 23  RECOGNIZED THAT, AT LEAST AS OF THE TIME OF THAT HEARING, THAT

03:29PM 24  MOTION, IT WAS SPECULATIVE AS TO WHAT THE LIS CONTAINED.  IT

03:29PM 25  WAS EQUALLY PLAUSIBLE THAT IT COULD INCULPATE AS WELL AS

03:29PM 1    EXCULPATE.

03:29PM 2            MR. BRECHER:  YES.  LET ME TAKE THAT IN ORDER, YOUR

03:29PM 3    HONOR.

03:29PM 4        FIRST, AS TO WHETHER THERE'S EVIDENCE ABOUT WHAT THE LIS

03:29PM 5    CONTAINS, THE ANSWER IS YES.  BUT I'LL RECOGNIZE THAT SOME OF

03:29PM 6    THAT EVIDENCE CONFLICTS WITH ONE ANOTHER, BUT THAT'S SORT OF

03:30PM 7    THE CLASSIC CASE, YOUR HONOR, AND THAT'S AN ISSUE THAT THE

03:30PM 8    PARTIES CAN ARGUE ABOUT THE SIGNIFICANCE OF THAT.

03:30PM 9        WHAT DR. ROSENDORFF TESTIFIED, AND I THINK THIS IS THE

03:30PM 10   PORTION THAT THE DEFENSE WOULD EMPHASIZE, MR. LEACH MAY

03:30PM 11   EMPHASIZE DIFFERENT TESTIMONY, IS THAT THE LIS CONTAINED ALL OF

03:30PM 12   THE TEST RESULTS, ALL OF THE QUALITY CONTROL INFORMATION,

03:30PM 13   INFORMATION ABOUT THE TYPE OF DEVICE USED.  I BELIEVE THE

03:30PM 14   PERSON WHO TOOK THE DRAW, CLINICAL NOTES, FOLLOWUPS, REDRAWS.

03:30PM 15       AND HE TESTIFIED FURTHER, YOUR HONOR.  HE SAID THAT IF A

03:30PM 16   CLINICIAN CALLED WITH CONCERNS, HE WOULD FREQUENTLY TURN TO THE

03:30PM 17   LIS FOR THAT PATIENT TREND ANALYSIS IN ORDER TO FIGURE OUT, YOU

03:30PM 18   KNOW, WAS THAT TEST VALID.

03:30PM 19       SO THERE IS EVIDENCE TO THAT EFFECT.

03:30PM 20       I THINK WHAT THE COURT -- I THINK THE SECOND PART OF THE

03:30PM 21   COURT'S QUESTION, IF I UNDERSTAND IT, IS, IS THERE A DISPUTE OR

03:30PM 22   IS THERE EVIDENCE ABOUT WHETHER IT'S EXCULPATORY OR

03:30PM 23   INCULPATORY, AND THERE IS SUCH A DISPUTE.

03:30PM 24       THE GOVERNMENT HAS CONTENDED -- WELL, DIFFERENT THINGS.

03:30PM 25   FOR A WHILE THEY WERE SAYING THIS IS WHERE THE BODIES ARE

03:31PM 1    BURIED AND IT'S CRITICAL INCULPATORY EVIDENCE IN THE CASE.

03:31PM 2          AND THEN AS SOON AS MR. SONNIER'S TESTIMONY SHOWED UP,

03:31PM 3    THEY CHANGE THEIR TUNE CHANGED DRAMATICALLY AND THEY SAID NOT

03:31PM 4    AT ALL.

03:31PM 5          BUT THE DEFENSE HAS ALWAYS CONTENDED, AND I THINK THE

03:31PM 6    FACTS OF THIS CASE AND THE ANECDOTAL PRESENTATION OF THE

03:31PM 7    GOVERNMENT'S CASE UNDERSCORE, THAT THIS EVIDENCE WOULD BE

03:31PM 8    EXCULPATORY.

03:31PM 9          YOU HEARD FROM, AND I DON'T WANT TO GET INTO CLOSING, YOUR

03:31PM 10   HONOR, BUT YOU HEARD FROM DR. BURNES, WHO SAW MANY, MANY

03:31PM 11   PERSONS WHO GOT THEIR BLOOD TESTS AT THERANOS.  YOU SAW ONE

03:31PM 12   PATIENT WITH A PROBLEM.

03:31PM 13         YOU HEARD FROM DR. ZACHMAN.  MANY PATIENTS WITHOUT

03:31PM 14   PROBLEMS COULD ONLY FIND ONE PATIENT WITH A PROBLEM.

03:31PM 15         YOU HEARD FROM DR. WOOTEN.  MANY PATIENTS FROM THERANOS,

03:31PM 16   NONE WITH A PROBLEM.

03:31PM 17         SO I THINK THAT IN COMBINATION WITH WHAT WE KNOW THE LIS

03:31PM 18   COULD DO, MAKES IT NONSPECULATIVE.

03:32PM 19             THE COURT:  PARDON ME FOR INTERRUPTING YOU.  THAT'S

03:32PM 20   THE QUESTION I HAVE, ISN'T THERE A QUESTION AS TO WHAT THE LIS

03:32PM 21   COULD DO?  IT HAS THIS INFORMATION, BUT DOESN'T THERE HAVE TO

03:32PM 22   BE SOME COMPARATOR?

03:32PM 23         MY SENSE IS THAT THE LIS -- AND PLEASE HELP ME WITH

03:32PM 24   THIS -- THE LIS HAS THE RESULTS OF THE TESTS.

03:32PM 25         AND I'VE ALWAYS WONDERED, WELL, OKAY, DON'T YOU HAVE TO

6857

03:32PM   1     COMPARE THAT, AS SOME OF THE EVIDENCE SHOWED -- ONE OF THE

03:32PM   2     WITNESSES WHO WAS SELF-REGULATING, HE KNEW HIS BODY, HE KNOWS

03:32PM   3     THE WAY HE FEELS, AND HE TESTIFIED ABOUT THE TEST HE GOT DID

03:32PM   4     NOT COMPORT WITH HIS BODY SYMPTOMS AND THOSE TYPES OF THINGS.

03:32PM   5     THAT WAS A COMPARATOR.

03:32PM   6          DOESN'T THERE HAVE TO BE A SIMILAR TYPE OF COMPARATOR WITH

03:32PM   7     THE LIS INFORMATION?

03:32PM   8               MR. BRECHER:  I SEE.

03:32PM   9          I THINK THERE WOULD BE TWO RESPONSES FROM THAT.  THE FIRST

03:32PM   10    IS DRAWN FROM DR. ROSENDORFF'S TESTIMONY WHICH ESTABLISHES, TO

03:32PM   11    OUR MIND -- AND THE GOVERNMENT CAN DRAW FROM DIFFERENT

03:32PM   12    TESTIMONY TO ARGUE SOMETHING DIFFERENT -- THAT IN RUNNING THAT

03:33PM   13    PATIENT TREND ANALYSIS, IT'S NOT JUST LOOKING AT ONE TEST IN

03:33PM   14    TIME, BUT LOOKING AT THE WHOLE SEQUENCE OF TESTS, BOTH FOR ONE

03:33PM   15    PATIENT AND THE CROSS PATIENTS, WE CAN DRAW CONCLUSIONS ABOUT

03:33PM   16    THE ACCURACY AND RELIABILITY OF THAT TESTING.

03:33PM   17               THE COURT:  JUST BASED ON LOOKING AT ALL OF THE

03:33PM   18    RESULTS, AND WHAT WILL THAT -- IS THERE EVIDENCE OF THAT?

03:33PM   19               MR. BRECHER:  I THINK THAT WAS DR. ROSENDORFF'S

03:33PM   20    TESTIMONY.  I BELIEVE WE CITED IT BOTH IN OUR MOTION TO COMPEL

03:33PM   21    SOME OF THESE LIS DOCUMENTS AS BRADY, AND WE CITED IT IN OUR

03:33PM   22    OPPOSITION TO THE GOVERNMENT'S MOTION.

03:33PM   23          SO I DON'T HAVE THE CITATION OFFHAND, BUT PERHAPS I CAN --

03:33PM   24    IF THE COURT NEEDS IT, I CAN TURN TO ONE OF MY COLLEAGUES.

03:33PM   25               THE COURT:  SO THE TESTIMONY OF DR. ROSENDORFF IS,

03:33PM  1    OH, YEAH, WE COULD HAVE CHECKED WITH PATIENT A AND JUST LOOKED

03:33PM  2    AT ALL OF HER TEST RESULTS TO SEE IF THEY'RE CONSISTENT OR IF

03:33PM  3    THERE'S A SKEW; IS THAT IT?

03:33PM  4            MR. BRECHER:  DR. ROSENDORFF'S TESTIMONY WAS THAT HE

03:33PM  5    COULD RUN PATIENT TREND ANALYSES AND WOULD DO SO IN ORDER TO

03:33PM  6    DETERMINE WHETHER A TEST WAS VALID.  HE DID TESTIFY TO THAT

03:33PM  7    EFFECT, YOUR HONOR.

03:34PM  8        BUT THE SECOND PIECE THAT I WOULD FOCUS ON, YOUR HONOR,

03:34PM  9    IS, IS THERE SOME DEGREE OF SPECULATION INVOLVED IN ANY MISSING

03:34PM 10    EVIDENCE?  I SUPPOSE THAT'S INHERENTLY TRUE AND SORT OF

03:34PM 11    LOGICALLY TRUE.

03:34PM 12        BUT IF THE STANDARD WERE THAT THE DEFENSE BORE THE BURDEN

03:34PM 13    OF ESTABLISHING THAT THIS EVIDENCE WOULD ABSOLUTELY BE

03:34PM 14    EXCULPATORY AND IT WOULD BE THE KEY TO THE CASE AND IT'S A SURE

03:34PM 15    FIRE, SLAM DUNK ACQUITTAL, THEN THERE NEVER WOULD BE A MISSING

03:34PM 16    EVIDENCE INSTRUCTION.

03:34PM 17        IT'S PRECISELY THE PREJUDICE THAT THE NINTH CIRCUIT

03:34PM 18    ARTICULATES, AND I THINK LOGIC DEMANDS, THAT IT IS OUR LACK OF

03:34PM 19    ACCESS TO THIS INFORMATION THAT HURTS US.

03:34PM 20        WHEN WE'RE DEALING WITH A CASE WHERE WE HEAR FROM THREE

03:34PM 21    PATIENT WITNESSES, AND WE SEE A FEW DOZEN E-MAILS, AND WE SEE A

03:34PM 22    REGULATORY REPORT ABOUT LABORATORY ERROR, 85 PERCENT OF IT BY

03:34PM 23    MY COUNT HAVING NOTHING TO DO WITH THERANOS'S PROPRIETARY

03:34PM 24    TECHNOLOGY, WHAT SORT OF CONCLUSIONS CAN WE DRAW?

03:35PM 25        WHAT WE REALLY NEED IS THAT CENTRAL REPOSITORY OF TESTING

03:35PM  1     DATA AND THAT'S ONE.

03:35PM  2         THE SECOND ONE IS WHAT I WAS TALKING TO YOU ABOUT, THE

03:35PM  3     GOVERNMENT'S MOTION TO EXCLUDE MR. SONNIER.  AND THAT IS, IT

03:35PM  4     CAN'T BE THE CASE THAT THE LAW REQUIRES EXCULPATORY EVIDENCE TO

03:35PM  5     BE SOMETHING THAT YOU LOOK AT AND YOU DON'T NEED ANYTHING ELSE

03:35PM  6     AND THAT JUST GIVES YOU THE ANSWER.

03:35PM  7         OTHERWISE THAT REALLY IS NO DIFFERENT THAN A FINGERPRINT,

03:35PM  8     YOUR HONOR.  STANDING ALONE, A FINGERPRINT TELLS YOU NOTHING.

03:35PM  9     IT'S ONLY IN COMBINATION WITH OTHER EVIDENCE THAT YOU KNOW

03:35PM  10    WHETHER THIS IS INCULPATORY OR EXCULPATORY.

03:35PM  11            THE COURT:  OKAY.

03:35PM  12            MR. LEACH:  THE PROPOSED INSTRUCTION IS NOT

03:35PM  13    SUPPORTED BY THE LAW AND IT'S NOT SUPPORTED BY THE FACTS.

03:35PM  14        I'M SURE THE COURT IS FAMILIAR WITH THE CASES CITED IN THE

03:36PM  15    DEFENDANT'S PROPOSED INSTRUCTIONS.  NOT ONE OF THEM INVOLVE A

03:36PM  16    THIRD PARTY, NOT THE GOVERNMENT, WHO DESTROYS OR FAILS TO

03:36PM  17    PRESERVE EVIDENCE.  THAT'S THE CRITICAL DISTINCTION IN THIS

03:36PM  18    CASE.

03:36PM  19        THE TIME THAT MR. BRECHER HAS BEEN TALKING ABOUT, HE

03:36PM  20    CONTINUES NOT TO CITE A SINGLE CASE WHERE A THIRD PARTY, NOT

03:36PM  21    THE GOVERNMENT, DESTROYS OR FAILS TO PRESERVE EVIDENCE.

03:36PM  22        AND I'M QUITE CONFIDENT THAT MY FRIENDS ON THE OTHER SIDE

03:36PM  23    HAVE SCOURED THE EARTH TO FIND A CASE WHERE THIS REMEDIAL

03:36PM  24    INSTRUCTION -- THIS IS A REMEDIAL INSTRUCTION TO PUNISH A PARTY

03:36PM  25    FOR NOT DOING SOMETHING WHERE IT'S NOT THE PARTY WHO DID

6860

03:36PM 1    ANYTHING HERE.

03:36PM 2        TO BE CRYSTAL CLEAR, THE GOVERNMENT DID NOT DESTROY

03:36PM 3    EVIDENCE, AND THE GOVERNMENT DID NOT FAIL TO PRESERVE EVIDENCE.

03:36PM 4        THERANOS AND THE ASSIGNEE -- I'M NOT EVEN SURE WHO BASED

03:36PM 5    ON THE TESTIMONY THAT I HEARD TODAY -- ARE THE ONES WHO ELECTED

03:37PM 6    TO DISASSEMBLE THE LIS DATABASE AND DO SOMETHING, AND I'M NOT

03:37PM 7    SURE WHAT THE STATUS OF THE RECORD IS AFTER MR. SONNIER'S

03:37PM 8    TESTIMONY TODAY WITH THOSE DRIVES.

03:37PM 9        THERE SIMPLY IS ZERO EVIDENCE THAT THE GOVERNMENT

03:37PM 10   DESTROYED OR FAILED TO PRESERVE EVIDENCE IN THIS CASE, AND THAT

03:37PM 11   SHOULD BE A FULL STOP ON THIS INSTRUCTION.

03:37PM 12       I KNOW THE COURT IS FAMILIAR WITH THE CASES AND THE LAW

03:37PM 13   THAT THE DEFENDANT CITES IN SUPPORT OF THIS INSTRUCTION.  I

03:37PM 14   THINK IT'S IMPORTANT TO GO THROUGH THEM JUST TO SEE HOW

03:37PM 15   DIFFERENT THE FACTS ARE FROM THOSE CASES.

03:37PM 16       THE FIRST THING THEY CITE IS THE MODEL INSTRUCTION, WHICH

03:37PM 17   SAYS, "IF YOU FIND THAT THE GOVERNMENT INTENTIONALLY DESTROYED,

03:37PM 18   FAILED TO PRESERVE," AND THEN INSERT THE EVIDENCE, "THAT THE

03:37PM 19   GOVERNMENT KNEW OR SHOULD HAVE KNOWN WOULD BE EVIDENCE IN THIS

03:37PM 20   CASE, YOU MAY INFER, BUT ARE NOT REQUIRED TO INFER, THAT THIS

03:38PM 21   EVIDENCE WAS UNFAVORABLE TO THE GOVERNMENT."

03:38PM 22       FULL STOP ON THE WORD "INTENTIONALLY."

03:38PM 23       THERE IS NO EVIDENCE THAT THE GOVERNMENT DESTROYED OR

03:38PM 24   FAILED TO PRESERVE EVIDENCE IN THIS CASE, AND THERE'S CERTAINLY

03:38PM 25   NO EVIDENCE THAT THE GOVERNMENT DID IT INTENTIONALLY.

6861

03:38PM  1        THE NEXT CASE THAT THEY CITE IS LOUD HAWK, WHICH THE COURT

03:38PM  2    IS VERY FAMILIAR WITH.  LOUD HAWK IS A CASE WHERE STATE

03:38PM  3    AUTHORITIES DETONATED THE DYNAMITE THAT HAD BEEN SEIZED.  IT

03:38PM  4    WAS THE STATE ITSELF, WHICH GETS ATTRIBUTED TO THE FEDERAL

03:38PM  5    GOVERNMENT, THAT ELECTED TO DETONATE VERY DANGEROUS TNT.

03:38PM  6        THAT IS NOT THIS CASE.  THE GOVERNMENT DIDN'T DESTROY AND

03:38PM  7    IT DIDN'T FAIL TO PRESERVE ANYTHING.

03:38PM  8        THE NEXT CASE IS ROBERTSON, WHICH WE HEARD AGAIN TODAY

03:38PM  9    FROM MR. BRECHER, AND FRANKLY, I'M SURPRISED THAT THEY'RE

03:38PM 10    RAISING THE ROBERTSON CASE.

03:38PM 11        THIS INVOLVED A MAIL THEFT AND THERE WAS A PARKING LOT AT

03:39PM 12    THE U.S. POSTAL FACILITY AND THE DEFENDANT WAS A MAIL EMPLOYEE

03:39PM 13    THERE AND HER ALLEGATION WAS THAT I TOLD THE INSPECTOR OR THE

03:39PM 14    INSPECTOR KNEW THERE WAS A VIDEO CAMERA RECORDING THE PARKING

03:39PM 15    LOT, AND HE FAILED TO GO AND GET THAT.

03:39PM 16        WELL, THAT WAS THE GOVERNMENT THAT FAILED TO PRESERVE ITS

03:39PM 17    OWN RECORDING OF THE PARKING LOT THERE.

03:39PM 18        IT'S NOT THIS CASE.  THE GOVERNMENT OBTAINED A BACKUP COPY

03:39PM 19    OF THE HARD DRIVE FROM THERANOS.  IT PRODUCED THAT BACKUP COPY

03:39PM 20    TO THE DEFENSE, AND THE ASSIGNEE, OR THERANOS, FOR REASONS THAT

03:39PM 21    WERE KNOWN AT THE TIME ONLY TO THERANOS AND THE ASSIGNEE,

03:39PM 22    ELECTED TO DISASSEMBLE THE ORIGINAL EQUIPMENT.

03:39PM 23        THERE'S NO EVIDENCE THAT THE GOVERNMENT SHOULD HAVE KNOWN

03:39PM 24    IT WAS HAPPENING OR ACTUALLY KNEW THAT THAT WAS HAPPENING.  IT

03:39PM 25    WAS THERANOS AND THE ASSIGNEE, NOT THE GOVERNMENT, THAT ELECTED

03:39PM  1    TO DISASSEMBLE THE ORIGINAL EQUIPMENT.

03:40PM  2         AND THERE'S ZERO REASON FOR THE GOVERNMENT TO THINK THAT

03:40PM  3    WILMER HALE, A PRESTIGIOUS LAW FIRM, DORSEY WHITNEY, ANOTHER

03:40PM  4    PRESTIGIOUS LAW FIRM, WOULD NOT TAKE STEPS TO COMPLY WITH THE

03:40PM  5    SUBPOENAS THAT THEY HAD RECEIVED TO PRESERVE EVIDENCE.

03:40PM  6         WE DIDN'T HEAR A SINGLE THING FROM MR. SONNIER TODAY

03:40PM  7    SUGGESTING THAT THE GOVERNMENT SOMEHOW SHOULD HAVE KNOWN THOSE

03:40PM  8    PARTIES WOULD NOT HAVE TAKEN APPROPRIATE STEPS TO PRESERVE THE

03:40PM  9    EQUIPMENT.

03:40PM  10        SO ROBERTSON DOESN'T HELP THEM AT ALL BECAUSE IT'S THE

03:40PM  11   GOVERNMENT THAT DIDN'T PRESERVE ITS OWN VIDEO IN THAT CASE.

03:40PM  12        AND THERE ARE OTHER FACTORS I CAN TALK ABOUT IN THE

03:40PM  13   ROBERTSON CASE, BUT THAT CASE DOESN'T HOLD WATER.

03:40PM  14        THE OTHER CASE THAT THEY CITE, AND THE COURT HAS CITED

03:40PM  15   REPEATEDLY IN ITS ORDERS, IS THE SIVILLA CASE.  THAT'S A CASE

03:40PM  16   WHERE THE NINTH CIRCUIT REVERSED THE FAILURE TO GIVE A REMEDIAL

03:40PM  17   INSTRUCTION.  IT SAYS THE GOVERNMENT WAS NEGLIGENT IN THAT

03:41PM  18   CASE.

03:41PM  19        BUT CONSIDER THE FACTS OF THAT CASE.  THIS IS WHERE A CAR

03:41PM  20   WAS DRIVEN OVER THE BORDER.

03:41PM  21        THE DEFENSE IMMEDIATELY SENT THE GOVERNMENT A PRESERVATION

03:41PM  22   LETTER SAYING PRESERVE EVIDENCE IN THIS CASE.

03:41PM  23        THEY FILED A MOTION TO PRESERVE EVIDENCE IN THIS CASE.

03:41PM  24        THE COURT ORDERED THE GOVERNMENT TO PRESERVE THE CAR.

03:41PM  25        AND THEN WHAT DID THE GOVERNMENT DO?  IT SOLD THE CAR FOR

1    FORFEITURE.

2         AND THERE WAS NO BAD FAITH IN THAT CASE, OR AT LEAST NO

3    FINDING OF BAD FAITH IN THAT CASES, BUT THE NINTH CIRCUIT SAID

4    A REMEDIAL INSTRUCTION WAS APPROPRIATE THERE BECAUSE THE AGENTS

5    AND THE PROSECUTORS ESSENTIALLY WERE IGNORING A COURT ORDER.

6         AND IT'S IMPORTANT BECAUSE THE EVIDENCE IN THAT CASE THAT

7    WAS NOT PRESERVED OR THAT WAS DESTROYED WAS ACTUALLY IN THE

8    POSSESSION, CUSTODY, OR CONTROL OF THE GOVERNMENT.

9         THAT SIMPLY CANNOT BE SAID HERE, YOUR HONOR.

10        THEY'RE TRYING TO FIT THIS SQUARE PEG INTO A ROUND HOLE BY

11   SAYING BECAUSE THE GOVERNMENT DIDN'T GO OUT AND GET A SEARCH

12   WARRANT TO OBTAIN THESE SERVERS OR DIDN'T EXERCISE ENOUGH

13   PERSUASIVE CONTROL OVER THE ASSIGNEE OVER ITS OWN EQUIPMENT,

14   THEN IT IS SOMEHOW NEGLIGENT OR RECKLESS.

15        THERE IS NO CASE THAT THEY HAVE CITED TO SUPPORT THAT

16   PROPOSITION, AND THIS COURT WOULD, I THINK, BE THE FIRST COURT

17   TO IMPOSE A REMEDIAL SANCTION, WHICH IS WHAT THEY'RE ASKING

18   FOR, FOR THE GOVERNMENT NOT DOING ENOUGH AND THE THIRD PARTY,

19   UNBEKNOWNST TO THE GOVERNMENT, DESTROYING EVIDENCE.

20        THE LAST CASE THAT THEY CITE IS AN UNPUBLISHED DECISION,

21   UNITED STATES VERSUS BURNES.  THERE'S NO DISCUSSION IN THE

22   BURNES CASE ABOUT WHAT THE MISSING EVIDENCE IN THAT CASE WAS,

23   WHAT THE PARTICULAR ISSUES WERE.

24        IT'S AN UNPUBLISHED DECISION, AND ALL IT DOES IS STAND FOR

25   THE PROPOSITION THAT BAD FAITH IS NOT REQUIRED AND THE DISTRICT

6864

03:43PM  1      COURT ERRED THERE THINKING THAT BAD FAITH WAS REQUIRED.

03:43PM  2          THE COURT ASKED A QUESTION WHAT AND SO THERE'S NO CASE

03:43PM  3      THAT HAS APPLIED THIS LOUD HAWK BALANCING TO WHERE A THIRD

03:43PM  4      PARTY AND NOT THE GOVERNMENT HAS DESTROYED OR FAILED TO

03:43PM  5      PRESERVE THE EVIDENCE.

03:43PM  6          SO I THINK ON THAT BASIS ALONE IT'S A FULL STOP AND THE

03:43PM  7      COURT SHOULD DECLINE TO GIVE THE INSTRUCTION HERE.

03:43PM  8          YOU ASKED A QUESTION ABOUT WHAT THE RELATIVE BURDENS ARE

03:43PM  9      ON SUPPORTING THE GOVERNMENT'S CONDUCT.  THAT IS THE

03:43PM 10      GOVERNMENT'S BURDEN.

03:43PM 11          ON THE PREJUDICE TO THE DEFENDANT, IT'S NOT MAYBE THE

03:43PM 12      DEFENDANT.  IT'S FULL STOP THE DEFENDANT.

03:43PM 13          AND I THINK IT'S CRITICAL THERE BECAUSE THE COURT HAS

03:43PM 14      TWICE, NOT ONCE, TWICE IN ITS ORDER DENYING THE MOTION TO

03:43PM 15      SUPPRESS BY MS. HOLMES, AND ALSO THE ORDER DENYING THE MOTION

03:44PM 16      TO SUPPRESS BY MR. BALWANI, FOUND THAT THE EXCULPATORY VALUE OF

03:44PM 17      THE LIS DATABASE WAS AND REMAINS SPECULATIVE.  THAT'S AT

03:44PM 18      ECF 1326, PAGE 32.

03:44PM 19          SO ON THE PRONG WHERE THE DEFENDANT HAS THE BURDEN, YOU

03:44PM 20      HAVE ALREADY FOUND THAT IT'S SPECULATIVE TO SAY THE LIS

03:44PM 21      EVIDENCE IS EXCULPATORY.

03:44PM 22          THE COURT IS ABSOLUTELY RIGHT -- AND THIS IS A POINT THAT

03:44PM 23      THE ROBERTSON COURT, THE NINTH CIRCUIT MAKES ON PAGE 1214 --

03:44PM 24      THERE'S ALSO NO PREJUDICE BECAUSE EVERY ARGUMENT THAT

03:44PM 25      MR. BRECHER JUST MADE TO YOU ABOUT WHY THIS INSTRUCTION IS

03:44PM  1      APPROPRIATE ARE ARGUMENTS THAT MR. COOPERSMITH CAN MAKE IN HIS

03:44PM  2      CLOSING ARGUMENT.

03:44PM  3          HE CAN SAY THE GOVERNMENT WAS TOLD IN OCTOBER OF 2018 THAT

03:44PM  4      THE PARTS COULD BE PUT BACK TOGETHER IF YOU JUST GO OUT AND GET

03:44PM  5      THE PARTS.  HE CAN ARGUE THAT THE GOVERNMENT SHOULD HAVE DONE

03:44PM  6      THAT.

03:44PM  7          HE CAN ARGUE THAT, YOU KNOW, THE THERANOS EMPLOYEES ON THE

03:45PM  8      GROUND -- I'M NOT SURE HE CAN ARGUE THIS BECAUSE IT'S NOT IN

03:45PM  9      EVIDENCE OTHER THAN THE OPINION BASIS.

03:45PM 10          BUT, YOU KNOW, HE CAN ARGUE THAT THE THERANOS EMPLOYEES

03:45PM 11      WERE WRONG AND MR. SONNIER WAS RIGHT.

03:45PM 12          HE CAN MAKE ALL OF THESE ARGUMENTS, THE GOVERNMENT HAS NOT

03:45PM 13      MET ITS BURDEN, YOU NEED LIS TO CONVICT.

03:45PM 14          WHAT THEY WANT IS A REMEDIAL INSTRUCTION THAT SAYS NOT

03:45PM 15      JUST USE THAT IN EVALUATING WHETHER THE GOVERNMENT HAS MET ITS

03:45PM 16      BURDEN OR NOT, BUT YOU'RE ENTITLED TO INFER IT WAS EXCULPATORY.

03:45PM 17          THAT'S A STEP TOO FAR.  THERE'S NO BASIS FOR SUCH A

03:45PM 18      REMEDIAL SANCTION LIKE THAT.

03:45PM 19          EVERY SINGLE CASE THAT THEY CITE INVOLVES THE GOVERNMENT

03:45PM 20      DESTROYING OR FAILING TO PRESERVE SOMETHING THAT IS IN ITS

03:45PM 21      CUSTODY, POSSESSION, OR CONTROL.  THEY HAVE NOT CITED A SINGLE

03:45PM 22      CASE TO SUPPORT THIS INSTRUCTION.

03:45PM 23          AND IF YOU LOOK JUST AT THE WORDS IN THE FIRST LINE OF THE

03:45PM 24      INSTRUCTION, "IF YOU FIND THAT THE GOVERNMENT NEGLIGENTLY OR

03:46PM 25      RECKLESSLY FAILED TO PRESERVE THE LIS," THERE'S NO EVIDENCE FOR

6866

03:46PM   1    VIRTUALLY ALL OF THE WORDS IN THAT FIRST SENTENCE.

03:46PM   2         WITH RESPECT TO NEGLIGENCE, THERE'S NO EVIDENCE ABOUT WHAT

03:46PM   3    STANDARD OF CARE A LAW ENFORCEMENT OFFICER IN A COMPLEX

03:46PM   4    CRIMINAL INVESTIGATION NEEDS TO EMPLOY IN MAKING THE JUDGMENT

03:46PM   5    WHETHER OR NOT TO TAKE PHYSICAL POSSESSION OF A COMPLICATED

03:46PM   6    DATABASE POST INDICTMENT WHERE YOU MIGHT HAVE TO, YOU KNOW, WHO

03:46PM   7    KNOWS WHAT TO TRY TO SET THAT UP.

03:46PM   8         THERE'S NO CASE THAT SAYS -- THAT GIVES THE JURY ANY

03:46PM   9    SUPPORT FOR A FINDING THAT IT'S NEGLIGENT TO CHOOSE ONE OF FOUR

03:46PM  10    OPTIONS OR TWO OF FOUR OPTIONS IN A PARTICULAR E-MAIL.

03:46PM  11         THERE'S NO EVIDENCE TO SUPPORT A FINDING OF RECKLESSNESS.

03:46PM  12         WHAT IS THE STANDARD OF CARE?

03:46PM  13         MR. SONNIER CANDIDLY ADMITTED WHEN HE WAS TESTIFYING THAT

03:47PM  14    HE HAD NEVER BEEN INVOLVED IN A CRIMINAL INVESTIGATION BEFORE.

03:47PM  15    I DON'T THINK HE KNOWS WHAT A 302 IS.  I DON'T THINK HE'S EVER

03:47PM  16    RELIED ON ONE BEFORE.

03:47PM  17         BUT HE CERTAINLY HAS NO BASIS TO SAY THE GOVERNMENT WAS

03:47PM  18    NEGLIGENT OR RECKLESS, AND THERE'S REALLY -- WITHOUT THAT

03:47PM  19    EVIDENCE, WHICH THE DEFENDANT ELECTED NOT TO PUT ON, THERE

03:47PM  20    SIMPLY IS NO BASIS FOR THIS JURY TO DRAW A COMPARISON BETWEEN

03:47PM  21    WHAT THIS PROSECUTOR OR WHAT THIS AGENT WOULD DO IS NOT THE

03:47PM  22    REASONABLE THING TO DO IN THE CONTEXT OF AN INVESTIGATION LIKE

03:47PM  23    THIS.

03:47PM  24         THE INSTRUCTION GOES ON TO SAY, "FAILED TO PRESERVE THE

03:47PM  25    THERANOS LIS."

6867

03:47PM  1        THE GOVERNMENT DID NOT FAIL TO PRESERVE THE LIS.  THE

03:47PM  2   GOVERNMENT SUBPOENAED THE LIS.  THE GOVERNMENT RECEIVED A

03:47PM  3   BACKUP COPY THAT NOBODY HAS BEEN ABLE TO ACCESS.

03:47PM  4        BUT IT WAS THE ASSIGNEE, IF ANYBODY, AT THERANOS THAT

03:48PM  5   FAILED TO PRESERVE ANYTHING.

03:48PM  6        AND THE OTHER THING THAT IS CRITICAL ABOUT THIS, YOUR

03:48PM  7   HONOR, IS BASED ON THE TRIAL RECORD RIGHT NOW, I DON'T THINK

03:48PM  8   THERE'S A BASIS FOR THIS JURY TO CONCLUDE THAT THE LIS HAS

03:48PM  9   FAILED TO BE PRESERVED.

03:48PM 10        WE ASKED MR. SONNIER A NUMBER OF TIMES, WHERE ARE THE HARD

03:48PM 11   DRIVES?  WHERE ARE THE SERVERS?  HE THINKS THEY'RE SITTING IN

03:48PM 12   IRON MOUNTAIN.

03:48PM 13        AND SO I DON'T THINK THERE'S A BASIS FOR THIS JURY TO

03:48PM 14   CONCLUDE THAT THERE'S ACTUALLY MISSING EVIDENCE.

03:48PM 15        HAS THE GOVERNMENT PRESENTED THE LIS DATABASE TO THEM?

03:48PM 16   NO.  AND THEY'RE TOTALLY FREE TO ARGUE THAT.

03:48PM 17        BUT ON THIS RECORD, I DON'T THINK THERE'S A BASIS FOR THIS

03:48PM 18   JURY TO CONCLUDE THAT THERE ACTUALLY IS EVIDENCE THAT HAS BEEN

03:48PM 19   LOST OR DESTROYED.

03:48PM 20        MR. SONNIER DOESN'T HAVE FIRST-HAND KNOWLEDGE OF THIS.  HE

03:48PM 21   SAYS IT'S EQUIVOCAL FROM THE MATERIALS THAT HE'S REVIEWED.

03:48PM 22        AND I THINK IT'S TERRIBLY UNFAIR TO BOTH PARTIES TO ASK

03:48PM 23   THIS JURY TO COME TO A CONCLUSION ABOUT WHETHER OR NOT EVIDENCE

03:49PM 24   HAS ACTUALLY BEEN LOST OR PRESERVED.

03:49PM 25        I WANT TO GO THROUGH SOME OF THE LOUD HAWK FACTORS BECAUSE

6868

03:49PM 1    I THINK THE DEFENSE ON SOME LEVEL WANTS TO GLOSS OVER THEM AND

03:49PM 2    FIT THIS SQUARE PEG INTO A ROUND HOLE.

03:49PM 3         IN ASSESSING THE GOVERNMENT'S CONDUCT, THE FIRST THING --

03:49PM 4    AND I WOULD SUBMIT THE PRIMARY THING -- THAT THE COURT NEEDS TO

03:49PM 5    CONSIDER IS, WAS THE EVIDENCE LOST OR DESTROYED WHILE IN THE

03:49PM 6    GOVERNMENT'S CUSTODY?

03:49PM 7         THERE IS ZERO DISPUTE ABOUT THAT.  NONE.

03:49PM 8         THE GOVERNMENT PRODUCED THE BACKUP COPY THAT IT ACTUALLY

03:49PM 9    RECEIVED TO THE DEFENDANT.

03:49PM 10        THERE IS SIMPLY NO EVIDENCE IN THIS CASE OR IN THE

03:49PM 11   SUPPRESSION MOTION ARGUMENT THAT THE GOVERNMENT LOST OR

03:49PM 12   DESTROYED ANYTHING.

03:49PM 13        THE NEXT QUESTION IS WHETHER THE GOVERNMENT ACTED IN

03:49PM 14   DISREGARD OF THE DEFENDANT'S INTEREST?

03:49PM 15        THERE'S NO EVIDENCE THAT THE GOVERNMENT DID THAT.  THERE'S

03:49PM 16   NO EVIDENCE THAT MR. BOSTIC OR MR. SCHENK OR I SAT AROUND AND

03:50PM 17   THOUGHT, WELL, LET'S NOT GO GET THAT LIS DATABASE BECAUSE WE'RE

03:50PM 18   REALLY WORRIED WHAT IS IN THERE.

03:50PM 19        NO.  THE EVIDENCE THAT CAME IN TODAY SHOWED THAT

03:50PM 20   MR. BOSTIC WAS ENGAGING WITH THE ASSIGNEE TO TRY TO GET ACCESS

03:50PM 21   TO THE LIS DATABASE AND WAS TOLD INDIRECTLY THROUGH THE LAWYER,

03:50PM 22   THE PEOPLE WHO ACTUALLY WORK WITH THIS THING, THAT IT'S A

03:50PM 23   HERCULEAN TASK TO GET IN THERE.  IT'S JUST NOT GOING TO HAPPEN.

03:50PM 24        THERE'S JUST SIMPLY NO EVIDENCE THAT THE GOVERNMENT ACTED

03:50PM 25   IN DISREGARD OF MR. BALWANI'S INTEREST.

6869

03:50PM  1          THE NEXT QUESTION IS WHETHER THE GOVERNMENT WAS NEGLIGENT?

03:50PM  2          THE ANSWER TO THAT QUESTION IS NO.  THE GOVERNMENT DIDN'T

03:50PM  3     FAIL TO PRESERVE ANYTHING.  IT PRODUCED THE BACKUP COPY TO THE

03:50PM  4     DEFENDANT.

03:50PM  5          THEY -- THE THRUST OF WHAT THEY'RE SAYING, YOUR HONOR, IS

03:50PM  6     THAT IN OCTOBER OF 2018, THE GOVERNMENT SHOULD HAVE GONE AND

03:50PM  7     GOT A SEARCH WARRANT, MAGISTRATE FINDS PROBABLE CAUSE, AND IT

03:50PM  8     SHOULD HAVE TAKEN POSSESSION OF ALL OF THESE PHYSICAL SERVERS,

03:51PM  9     AND IT DIDN'T DO IT FAST ENOUGH BECAUSE IT SHOULD HAVE KNOWN

03:51PM  10    THAT DORSEY WOULDN'T KEEP THE HARD DRIVES OR WOULDN'T KEEP THE

03:51PM  11    SERVERS, EVEN THOUGH THEY HAD A PRESERVATION LETTER, EVEN

03:51PM  12    THOUGH THEY HAD SUBPOENAS REQUIRING THEM TO MAINTAIN

03:51PM  13    EVERYTHING.

03:51PM  14         THERE IS SIMPLY NOTHING TO SUGGEST THAT THE GOVERNMENT WAS

03:51PM  15    ON NOTICE OR SHOULD HAVE BEEN ON NOTICE THAT THESE SERVERS WERE

03:51PM  16    GOING TO DISAPPEAR IN A WAY WHERE THEY COULDN'T BE PUT BACK

03:51PM  17    TOGETHER AGAIN.  SO THERE'S NO EVIDENCE OF GOVERNMENT

03:51PM  18    NEGLIGENCE.

03:51PM  19         WHETHER THE PROSECUTING ATTORNEYS WERE INVOLVED.

03:51PM  20         MY FRIENDS ON THE OTHER SIDE LIKE TO POINT TO THE E-MAIL

03:51PM  21    THAT CAME INTO EVIDENCE TODAY FOR NOTICE TO SUGGEST THAT THE

03:51PM  22    PROSECUTORS IN THIS CASE WERE INVOLVED.

03:51PM  23         BUT I THINK THE PROPER READING OF THAT FACTOR, YOUR HONOR,

03:51PM  24    IS WHETHER THE PROSECUTORS WERE INVOLVED IN DESTROYING OR

03:51PM  25    FAILING TO PRESERVE EVIDENCE IN ITS CUSTODY.

6870

```
03:51PM   1        LOOK AT THE ROBERTSON CASE.  IN THAT CASE, YOU KNOW, IT
03:52PM   2   WAS GOVERNMENT EVIDENCE.
03:52PM   3        AND I THINK THE SIVILLA CASE REALLY MAKES THIS CLEAR.  THE
03:52PM   4   PROSECUTOR HAD BEEN ORDERED TO PRESERVE THIS, AND THE
03:52PM   5   PROSECUTOR DIDN'T ACT QUICKLY ENOUGH TO GET WORD TO THE
03:52PM   6   FORFEITURE UNIT TO HALT THE FORFEITURE THERE.
03:52PM   7        AND SO IT WAS RIGHT IN SIVILLA TO SAY THAT THE PROSECUTORS
03:52PM   8   HAD SOME BLAME IN THAT CASE FOR NOT PRESERVING THE JEEP IN THAT
03:52PM   9   CASE.
03:52PM  10        IF THE ACTS WERE DELIBERATE, WHETHER THEY WERE TAKEN IN
03:52PM  11   GOOD FAITH.
03:52PM  12        I HAVEN'T HEARD ONE THING FROM MR. BRECHER IN THIS CASE
03:52PM  13   THAT THE GOVERNMENT ACTED TRYING TO OBTAIN THIS EVIDENCE BY
03:52PM  14   SUBPOENA AND THEN ENGAGING DORSEY & WHITNEY AFTERWARDS.
03:52PM  15        SO THOSE ARE THE FACTORS ON THE GOVERNMENT'S SIDE, AND I
03:52PM  16   THINK EVERY SINGLE ONE OF THEM SUPPORTS THAT THE GOVERNMENT DID
03:53PM  17   EVERYTHING RIGHT HERE AND IT WAS THWARTED IN ITS EFFORT TO GET
03:53PM  18   INFORMATION, AND IT WOULD BE WRONG TO PERMIT THIS JURY, ON THE
03:53PM  19   BASIS OF NO EVIDENCE, TO TRY TO MAKE A FINDING THAT THE
03:53PM  20   GOVERNMENT WAS NEGLIGENT OR RECKLESS OR THAT IT FAILED TO
03:53PM  21   PRESERVE SOMETHING.
03:53PM  22        SO THERE'S SIMPLY NO BASIS FOR THIS INSTRUCTION.
03:53PM  23        I'M HAPPY TO RESPOND IF THERE ARE PARTICULAR POINTS
03:53PM  24   MR. BRECHER HAS MADE.
03:53PM  25        THERE'S ONE I WANT TO EMPHASIZE, WHICH IS THE COURT IS
```

6871

03:53PM   1    RIGHT ON THE COMPARATOR ISSUE.  DR. ROSENDORFF HAS NOT

03:53PM   2    TESTIFIED THAT LIS BY ITSELF IS THE BE ALL, END ALL OF HOW TO

03:53PM   3    GET TO THE BOTTOM OF WHETHER OR NOT THE TESTS WERE ACCURATE OR

03:53PM   4    INACCURATE.

03:53PM   5        THE OTHER THING I WOULD LIKE TO POINT TO IN TERMS OF THEIR

03:53PM   6    PROBATIVE VALUE, THE PROBATIVE VALUE OF THIS PARTICULAR

03:53PM   7    EVIDENCE, IS THAT THE DEFENSE LIKES TO SPEAK AS IF LIS IS THE

03:54PM   8    ONLY PLACE WHERE YOU CAN GET INFORMATION ABOUT THERANOS'S

03:54PM   9    TESTING.

03:54PM  10        THERANOS WAS INVOLVED IN LAWSUITS FROM 2016 UP TO AND

03:54PM  11    THROUGH THE DATE OF THE INDICTMENT.  THEY'VE PRODUCED HUNDREDS

03:54PM  12    OF THOUSANDS OF PAGES, IF NOT MILLIONS OF PAGES, ABOUT THEIR

03:54PM  13    TESTING, INCLUDING DATA FROM LIS.

03:54PM  14        THE DEFENDANT HAS ALL OF THAT.

03:54PM  15        THERE ARE EMPLOYEES AT THERANOS, THERE IS INFORMATION

03:54PM  16    PROVIDED TO CMS.  THERANOS RETAINED FTI TO WORK WITH THE LIS

03:54PM  17    DATABASE AND GENERATE DATA FROM THAT.

03:54PM  18        THE NOTION THAT THE ONLY PLACE THAT YOU COULD POSSIBLY GO

03:54PM  19    IS THE WORKING COPY OF THE DATABASE IS SIMPLY NOT CORRECT, AND

03:54PM  20    I THINK WEIGHS IN TERMS OF THE PREJUDICE THAT THEY'RE ARGUING

03:54PM  21    FOR.

03:54PM  22        THE ONLY OTHER POINT I WANT TO MAKE, YOUR HONOR, IT'S

03:54PM  23    IMPORTANT TO PUT INTO CONTEXT WHEN ALL OF THIS HAPPENED, WHICH

03:54PM  24    IS OCTOBER OR -- YOU KNOW, WHEN I THINK MY FRIENDS ON THE OTHER

03:55PM  25    SIDE ARE ARGUING THAT THE GOVERNMENT HAD NOTICE AND THAT IT

6872

03:55PM 1     SHOULD HAVE GONE OUT AND GOTTEN THE SERVERS IN OCTOBER OF 2018,

03:55PM 2     OR WE CAN EVEN MOVE IT BACK TO AUGUST OF 2018.

03:55PM 3          THAT'S POST INDICTMENT.  THAT'S WHEN MR. BALWANI KNOWS HIS

03:55PM 4     LIBERTY IS ON THE LINE FOR THESE PATIENT CHARGES.  HE HAS

03:55PM 5     RULE 17 SUBPOENA AUTHORITY AT THAT POINT.  HE COULD HAVE SENT A

03:55PM 6     PRESERVATION LETTER TO THE GOVERNMENT, LIKE THE ATTORNEYS DID

03:55PM 7     IN THE SIVILLA CASE, SAYING THIS IS REALLY IMPORTANT TO ME,

03:55PM 8     PLEASE, GOVERNMENT, PRESERVE THIS.

03:55PM 9          THERE'S NO EVIDENCE OF THAT.  THERE'S NO EVIDENCE THAT HE

03:55PM 10    ISSUED A RULE 17 SUBPOENA TO TRY TO GET THIS INFORMATION.

03:55PM 11         AND THERE'S EVERY REASON TO THINK, BECAUSE

03:55PM 12    MR. CHANDRASEKARAN WAS HIS LITIGATION CONSULTANT, THAT HE HAD

03:55PM 13    MORE INSIGHT INTO WHAT WAS GOING ON WITH THE LIS DATABASE THAN

03:55PM 14    THE GOVERNMENT.

03:55PM 15         SO I'M NOT CASTING BLAME ON HIM FOR NOT GETTING IT, AND OF

03:56PM 16    COURSE IT'S OUR BURDEN.

03:56PM 17         BUT I THINK IF THIS HAD THE UNIQUE EXCULPATORY VALUE THAT

03:56PM 18    THE DEFENDANTS HAVE BEEN ADVOCATING BOTH AT THE MOTION TO

03:56PM 19    SUPPRESS STAGE AND NOW, YOU WOULD SEE A PRESERVATION LETTER TO

03:56PM 20    THE GOVERNMENT, YOU WOULD SEE A RULE 17 SUBPOENA SAYING, I'VE

03:56PM 21    GOT TO GET THIS BECAUSE THIS IS THE ONLY WAY I CAN DEFEND

03:56PM 22    MYSELF, AND IT IS -- THIS IS NOT EVIDENCE THAT THE GOVERNMENT

03:56PM 23    UNIQUELY HAD AND SOMEHOW DESTROYED OR LOST.

03:56PM 24         THIS WAS IN THE POSSESSION OF THE THIRD PARTY.  EVERYBODY

03:56PM 25    HAD ACCESS TO LEGAL TOOLS TO GET IT.  THE GOVERNMENT PURSUED

03:56PM  1    ONES THAT IT VIEWED AS THE RIGHT ONES AT THE RIGHT TIME, AND WE

03:56PM  2    ARE WHERE WE ARE.

03:56PM  3        BUT FOR ALL OF THOSE REASONS, THIS INSTRUCTION REALLY

03:56PM  4    WOULD, I THINK, UNFAIRLY PUT THE COURT'S IMPRIMATUR -- OR I MAY

03:56PM  5    NOT HAVE THE RIGHT WORD THERE -- STAMP OF APPROVAL ON A

03:56PM  6    PARTICULAR DEFENSE WHERE THEY CAN ARGUE AS LONG AS THEY WANT,

03:57PM  7    YOU NEED THE LIS TO CONVICT, THE GOVERNMENT DIDN'T BRING IT TO

03:57PM  8    YOU, YOU SHOULDN'T HOLD THEM TO THEIR BURDEN.

03:57PM  9        TO GO THE EXTRA ADDED STEP OF A REMEDIAL SANCTION ON THESE

03:57PM  10   FACTS IS JUST NOT SUPPORTED AND NOT SUPPORTED BY A SINGLE CASE

03:57PM  11   THAT THEY HAVE CITED.

03:57PM  12        THE COURT:  THANK YOU.

03:57PM  13     MR. BRECHER.

03:57PM  14        MR. BRECHER:  THANK YOU, YOUR HONOR.

03:57PM  15     I'M RELIEVED TO HEAR THAT MR. LEACH IS NOT CASTING BLAME

03:57PM  16   ON MR. BALWANI, AND THAT WAS NOT IN THE GOVERNMENT'S PLEADINGS

03:57PM  17   A FEW WEEKS AGO WHEN THEY SAID THAT MR. BALWANI, THROUGH HIS

03:57PM  18   SILENCE, ALLOWED THE LIS TO BE DISASSEMBLED.

03:57PM  19        OBVIOUSLY WE KNOW FROM THE E-MAIL RECORD THAT NOTHING OF

03:57PM  20   THE SORT IS TRUE, DESPITE THE GOVERNMENT'S MANY PUBLIC

03:57PM  21   PLEADINGS TO THE CONTRARY.

03:57PM  22        BUT I WANT TO FOCUS ON THIS INSTRUCTION HERE.  MR. LEACH

03:57PM  23   IS CORRECT THAT WE DO NOT CITE A CASE IN WHICH THE COURT HAS

03:57PM  24   AWARDED THIS INSTRUCTION WHEN INFORMATION WAS DISASSEMBLED BY A

03:57PM  25   THIRD PARTY.

6874

03:57PM 1     BUT THERE ARE TWO PROBLEMS WITH THAT ARGUMENT.  FIRST, AS

03:58PM 2  WE HEARD FROM MR. SONNIER TODAY, AND THIS DID COME INTO

03:58PM 3  EVIDENCE, THE DISASSEMBLY DIDN'T AFFECT THE GOVERNMENT'S

03:58PM 4  ABILITY TO COLLECT THE INFORMATION, AND THERE'S NO INDICATION

03:58PM 5  ABOUT WHEN EXACTLY THAT ABILITY CEASED.

03:58PM 6     SECOND, ROBERTSON ITSELF, A CASE THAT MR. LEACH TALKED

03:58PM 7  ABOUT, A CASE THAT I TALKED ABOUT, NOTES THAT WHETHER THE

03:58PM 8  GOVERNMENT LOST OR DESTROYED THE EVIDENCE, WHETHER IT WAS IN

03:58PM 9  THE GOVERNMENT'S POSSESSION IS JUST ONE FACTOR.  IF THAT FACTOR

03:58PM 10  ALONE WERE DISPOSITIVE, THEN IT WOULDN'T BE LISTED.  IT WOULD

03:58PM 11  JUST BE A REQUIREMENT IN ORDER TO GET SUCH AN INSTRUCTION.

03:58PM 12     MR. LEACH SAYS THAT IT SHOULD BE READ AS THE PRIMARY

03:58PM 13  FACTOR, BUT HE OFFERS NO CASE LAW AND NO ANALYSIS TO SUPPORT

03:58PM 14  THAT.

03:58PM 15     SECOND, THERE SEEMS TO BE A LITTLE BIT OF CONFLICT BETWEEN

03:58PM 16  WHETHER WE'RE RELYING ONLY ON THE EVIDENCE THAT HAS BEEN

03:58PM 17  INTRODUCED THUS FAR AT TRIAL OR THE EVIDENCE THAT THE COURT CAN

03:58PM 18  RELY ON IN MAKING ITS LOUD HAWK BALANCING, WHICH IS WHAT HAS

03:58PM 19  BEEN PROFFERED.

03:58PM 20     BUT YOU SHOULD KNOW, THE SUGGESTION THAT THIS INFORMATION

03:59PM 21  WAS DESTROYED OR COULDN'T BE RECOVERED IS CERTAINLY NOT

03:59PM 22  SUPPORTED BY ANY TRIAL EVIDENCE.

03:59PM 23     BUT I THINK IT'S NOW BECOME CLEAR, I HOPE IT HAS BECOME

03:59PM 24  CLEAR, THAT WHAT THE GOVERNMENT HAS BEEN SUGGESTING IN ITS

03:59PM 25  PAPERS AND IN ITS ARGUMENTS FOR THE LAST YEAR PLUS, THAT THESE

03:59PM 1    INSIDERS WITH DEEP KNOWLEDGE OF THE LIS DREW CONTRARY

03:59PM 2    CONCLUSIONS IS SIMPLY NOT TRUE.

03:59PM 3        THEY RESTED ON THE OPINION OF THE LAST I.T. GUY STANDING

03:59PM 4    AT A COMPANY THAT WAS CIRCLING THE DRAIN AND OF A CONSULTANT

03:59PM 5    PERSON WHO -- AND OF A CONSULTANT WHOSE JOB WAS TO MOVE

03:59PM 6    EQUIPMENT FROM ONE LOCATION TO ANOTHER.  THAT'S WHO THEY ARE

03:59PM 7    RELYING ON.

03:59PM 8        WE OBVIOUSLY RELIED ON MR. SONNIER.

03:59PM 9        BUT FOCUSSING ON WHAT HAS COME INTO EVIDENCE, WE KNEW THE

03:59PM 10   GOVERNMENT WAS ADVISED, WAS SPECIFICALLY ADVISED OF AT LEAST

03:59PM 11   TWO COURSES OF ACTION THAT UNREBUTTED EXPERT TESTIMONY SAYS

03:59PM 12   WOULD HAVE LED TO SECURING THIS EVIDENCE.

03:59PM 13       AND THE GOVERNMENT CHOSE NOT TO UNDERTAKE THOSE ACTIONS.

04:00PM 14   INDEED, THAT WASN'T EVEN A DOCUMENT THAT THEY PUT INTO

04:00PM 15   EVIDENCE.  THAT CAME IN ON CROSS.

04:00PM 16       SO I DO THINK WE'RE DEALING WITH, AT A MINIMUM,

04:00PM 17   NEGLIGENCE, AND GIVEN THE EXPRESS WARNING, I THINK

04:00PM 18   RECKLESSNESS.

04:00PM 19       I WANT TO TURN VERY BRIEFLY TO THE SECOND REASON -- TO THE

04:00PM 20   SECOND ISSUE, THE PRONG -- THE PREJUDICE PRONG.

04:00PM 21       AND MR. LEACH IS RIGHT, THE DEFENSE DOES BEAR THE BURDEN

04:00PM 22   THERE.  I DON'T THINK I DENIED THAT IN MY OPENING REMARKS, BUT

04:00PM 23   IF I DID, I MUST HAVE MISSPOKEN.

04:00PM 24       THAT CITATION FOR DR. ROSENDORFF'S TESTIMONY, MY COLLEAGUE

04:00PM 25   JUST HANDED IT UP, IT'S APRIL 22ND, AND IT'S TRANSCRIPT

04:00PM  1    PAGES 3601 THROUGH 3604.  AND I THINK THAT THAT WILL BE

04:00PM  2    INSTRUCTIVE FOR THE COURT AS IT CONSIDERS THE VALUE OF LIS AND

04:00PM  3    WHAT IT COULD SHOW.

04:00PM  4        LAST, YOUR HONOR, THERE'S NOTHING THAT ACTUALLY CAME INTO

04:00PM  5    EVIDENCE IN THIS TRIAL THAT SUGGESTS ANYTHING CONTRARY TO

04:01PM  6    MR. SONNIER'S UNDERSTANDING.

04:01PM  7        AND THE GOVERNMENT CERTAINLY HAS NOT PUT IN ANY EVIDENCE

04:01PM  8    ABOUT MR. BALWANI'S ABILITY, SUBPOENA POWER.  THAT JUST DIDN'T

04:01PM  9    COME UP.

04:01PM 10        SO I DON'T KNOW THAT THE COURT SHOULD BE CONSIDERING THAT

04:01PM 11    IN -- AS IT CRAFTS THIS INSTRUCTION.

04:01PM 12        THE LAST POINT, YOUR HONOR, IS THAT I APPRECIATE MR. LEACH

04:01PM 13    ACKNOWLEDGING THAT WE CAN ARGUE ALL OF THESE POINTS.  CERTAINLY

04:01PM 14    WE CAN ARGUE FROM ANYTHING THAT COMES INTO EVIDENCE.

04:01PM 15        BUT I THINK WHAT MATTERS HERE IS GIVING THE JURY AN

04:01PM 16    APPROPRIATE FRAMEWORK TO UNDERSTAND HOW THEY CAN SEE THESE

04:01PM 17    ISSUES, AND IN THIS CASE WE HAVE DRAWN ON NOT ONLY THE NINTH

04:01PM 18    CIRCUIT MODEL INSTRUCTION FOR MISSING EVIDENCE, BUT ALSO

04:01PM 19    COMPARABLE MODEL INSTRUCTIONS FOR NEGLIGENCE AND RECKLESSNESS.

04:01PM 20        EXCUSE ME.  WE HAVE PROPOSED A PURELY PERMISSIVE

04:01PM 21    INSTRUCTION, A PURELY PERMISSIVE INFERENCE, AND WE JUST WANT TO

04:01PM 22    GIVE THE JURY AN OPPORTUNITY TO UNDERSTAND HOW THIS EVIDENCE

04:01PM 23    COULD COME INTO PLAY GIVEN THAT THEY HAVE HEARD FROM A SERIES

04:02PM 24    OF DOCTORS, ALL OF WHOM HAVE SAID WE HAVE HAD HUNDREDS OF

04:02PM 25    PATIENTS GET TESTED AT THERANOS AND THE GRAND TOTAL OF PROBLEMS

6877

04:02PM  1    WE FOUND WERE TWO.

04:02PM  2         I THINK THIS IS APPROPRIATE HERE GIVEN THE TESTIMONY THAT

04:02PM  3    YOU HEARD THIS MORNING.

04:02PM  4         OTHER THAN THAT, YOUR HONOR, I'M JUST HAPPY TO ANSWER ANY

04:02PM  5    OF THE COURT'S QUESTIONS.

04:02PM  6             THE COURT:  OKAY.

04:02PM  7         ANYTHING FURTHER, MR. LEACH?

04:02PM  8             MR. LEACH:  I'D JUST LIKE TO RESPOND BRIEFLY TO ONE

04:02PM  9    POINT, YOUR HONOR, WHICH IS THE E-MAIL THAT CAME INTO EVIDENCE

04:02PM 10    FOR THE GOVERNMENT'S NOTICE IS FROM AN ALS SUPERVISOR NAMED

04:02PM 11    SUTTON PEIRCE WHO THE JURY HAS NOT HEARD FROM AND KNOWS NOTHING

04:02PM 12    ABOUT THE CONTEXT OF THAT.

04:02PM 13         AND WHAT SHE WROTE IN THE E-MAIL WAS PERHAPS THE DEFENSE

04:02PM 14    CAN BE PERSUADED TO MAKE THE SERVERS AVAILABLE IN OUR

04:02PM 15    ENVIRONMENT.  THAT'S THROWING OUT ONE OF FOUR IDEAS.

04:02PM 16         THERE'S NO REASON FOR THE GOVERNMENT TO THINK THAT

04:02PM 17    DORSEY & WHITNEY IS NOT GOING TO PRESERVE WHATEVER IT HAS AT

04:02PM 18    THAT POINT IN TIME, NONE.

04:02PM 19         MR. SONNIER DIDN'T PROVIDE THAT.  NO WITNESS COULD PROVIDE

04:03PM 20    THAT.  THERE SIMPLY IS NO REASON FOR -- YOU KNOW, IT'S ONE

04:03PM 21    THING TO SAY THAT THE GOVERNMENT WAS GIVEN THIS HYPOTHETICAL

04:03PM 22    SUGGESTION.

04:03PM 23         BUT WHAT THEY NEED TO DO IS SAY THE CORE OF THEIR

04:03PM 24    NEGLIGENCE THEORY IS THAT THE GOVERNMENT SHOULD ASSUME THE

04:03PM 25    EVIDENCE IS GOING TO BE DESTROYED IF IT DOESN'T GO OUT AND ACT

04:03PM 1    IMMEDIATELY, AND THERE'S NO BASIS FOR THAT ASSUMPTION IN THE

04:03PM 2    CONTEXT HERE.

04:03PM 3         IN TERMS OF THE FRAMEWORK THAT MR. BRECHER IS LOOKING FOR,

04:03PM 4    HE HAS INSTRUCTIONS ON THE GOVERNMENT'S BURDEN OF PROOF, THE

04:03PM 5    DEFENSE'S NEED TO NOT COME FORWARD WITH ANY EVIDENCE, HE HAS

04:03PM 6    ALL OF THE LEGAL INSTRUCTIONS AND FRAMEWORK THAT THEY NEED TO

04:03PM 7    MAKE THE ARGUMENTS THAT THEY WANT.

04:03PM 8         AND THIS WAS SOMETHING THAT THE NINTH CIRCUIT POINTED OUT

04:03PM 9    IN THE ROBERTSON CASE IN DENYING A REMEDIAL INSTRUCTION UNDER

04:03PM 10   FACTS THAT ARE DRAMATICALLY WORSE THAN THE FACTS HERE.

04:03PM 11        THE NINTH CIRCUIT ON THE PREJUDICE PRONG WAS CAREFUL TO

04:03PM 12   EMPHASIZE ALL OF THESE ARE ARGUMENTS THAT THE DEFENDANT COULD

04:04PM 13   MAKE AND DID MAKE BASED ON THE EVIDENCE IN THE RECORD.

04:04PM 14        AND THAT'S ALL WE'RE ASKING FOR THE COURT TO DO HERE IS

04:04PM 15   NOT PUT ITS THUMB ON THE SCALES IN ALLOWING A REMEDIAL

04:04PM 16   INSTRUCTION WHERE THE JURY CAN DRAW A NEGATIVE INFERENCE BASED

04:04PM 17   ON THIS FACTUAL RECORD HERE WHERE IT'S NOT SUPPORTED.

04:04PM 18        THE COURT:  ALL RIGHT.  THANK YOU.

04:04PM 19        MR. BRECHER:  JUST VERY BRIEFLY.

04:04PM 20        FIRST, YOUR HONOR, I DON'T THINK A PERMISSIVE INSTRUCTION

04:04PM 21   WOULD BE PUTTING THE THUMB ON ANY SCALE.  ALL IT IS DOING IS

04:04PM 22   OFFERING THE JURY A CHOICE.

04:04PM 23        AND SECOND, I'M STILL A LITTLE BIT CONFUSED, BUT AS TO THE

04:04PM 24   POINT ABOUT WHEN THE GOVERNMENT RECEIVED THIS ADVICE AND WHAT

04:04PM 25   IT COULD HAVE DONE THEN AND WHAT THE GOVERNMENT'S REASONABLE

04:04PM 1    UNDERSTANDINGS WERE AT THE TIME, I THINK THE POINT IS THE

04:04PM 2    GOVERNMENT NEVER TRIED TO GET THE SERVERS.

04:04PM 3        AND REGARDLESS OF WHAT SUTTON PEIRCE SAID, I'M NOW HEARING

04:04PM 4    THE SUGGESTION THAT THESE PROSECUTORS DIDN'T THINK THAT THE

04:05PM 5    ASSIGNEE WOULDN'T HAVE PRESERVED EVIDENCE.

04:05PM 6        WELL, THEY ALREADY HAD THE BACKUP COPY.  THEY ALREADY KNEW

04:05PM 7    IT DIDN'T WORK.  THEY COULD HAVE TAKEN OTHER STEPS, AND THEY

04:05PM 8    DIDN'T.  THEY WERE ADVISED THAT THEY COULD HAVE TAKEN THOSE

04:05PM 9    STEPS, AND THEY DIDN'T.  AND THOSE OTHER STEPS WOULD HAVE

04:05PM 10   WORKED.

04:05PM 11       SO I THINK THAT THE INSTRUCTION IS FAIR.

04:05PM 12       OTHER THAN THAT, NOTHING ELSE, YOUR HONOR.

04:05PM 13           THE COURT:  THANK YOU.  THANK YOU VERY MUCH.

04:05PM 14       THIS IS A BIT OF A HYBRID AND PERPLEXING PROBLEM.  I THINK

04:05PM 15   YOU BOTH AGREE ON THE FACTS HERE, THAT IS, AND THE EVIDENCE

04:05PM 16   SHOWS THIS, DURING THE INVESTIGATION THERE WERE SUBPOENAS.  WE

04:05PM 17   KNOW THAT THERE WERE S.E.C. SUBPOENAS.  THE EVIDENCE ISN'T IN

04:05PM 18   THIS CASE, BUT WE KNOW THAT.

04:05PM 19       WE KNOW THAT, AT LEAST FROM EVIDENCE THAT WAS INTRODUCED

04:05PM 20   IN THIS CASE, THAT THE GOVERNMENT RECEIVED THE LIS OR A COPY OF

04:05PM 21   IT PURSUANT TO THE REQUEST THAT WAS -- YOUR CLIENT RECEIVED THE

04:06PM 22   SAME THING.

04:06PM 23       AND THEN WE KNOW THAT THE GOVERNMENT HAD DIFFICULTIES

04:06PM 24   RETRIEVING THE INFORMATION, OPENING IT, IF YOU WILL.

04:06PM 25       THE E-MAIL THAT WAS SHOWN TODAY FOR NOTICE PURPOSE

1    DESCRIBES INTERNAL DISCUSSIONS FROM A GOVERNMENT I.T. EMPLOYEE

2    WITH SUGGESTIONS ON WHAT TO DO NEXT.

3         AND I THINK THE CRITIQUE THAT THE DEFENSE HAS IS THAT THEY

4    DIDN'T FOLLOW THEIR OWN I.T. PERSON'S -- ONE OF THE

5    SUGGESTIONS, WHICH IS TO GET THE SERVERS, AND SEE IF THEY'LL

6    GIVE US THE SERVERS, AND WE CAN PUT THEM IN THE WORKPLACE HERE.

7    THAT SEEMS TO BE WHAT THEY SAID.  GO GET THOSE AND BRING THEM

8    BACK TO OUR OFFICE, AND WE'LL TRY TO DO IT IN OUR OFFICE, WHICH

9    IS A LITTLE DIFFERENT.

10        BUT I LOOK AT THIS AND I, I DO THINK THAT LOUD HAWK -- IT

11   DOES REQUIRE A LOUD HAWK ANALYSIS, AND LET ME JUST SAY FOR THE

12   RECORD, THAT'S THE STANDARD THAT THE COURT IS EXERCISING HERE

13   AS IT LOOKS AT THIS PROBLEM AND THE ISSUE OF WHETHER OR NOT AN

14   INSTRUCTION IS WARRANTED HERE.

15        AND GOING THROUGH THE LOUD HAWK FACTORS, WHICH IS WHAT I

16   INTEND TO DO, AND I THINK YOU'VE ALL DONE THIS ALREADY, AND THE

17   FIRST ONE IS IN EVALUATING THE QUALITY OF THE GOVERNMENT'S

18   CONDUCT HERE, WAS THE EVIDENCE LOST OR DESTROYED WHILE IT WAS

19   IN THE GOVERNMENT'S CUSTODY?

20        AND I THINK THE ANSWER TO THAT IS NO, THEY DID NOT HAVE

21   IT.

22        AND THE CASES, THE OTHER CASES THAT WE HAVE TALKED ABOUT

23   DESCRIBE EVIDENCE WHERE THE GOVERNMENT ACTUALLY EITHER HAD IT

24   OR HAD AVAILABILITY TO IT.

25        THE VIDEO FROM THE POST OFFICE ABOUT MS. ROBERTSON,

6881

04:07PM  1    APPARENTLY THERE'S SOME ALLEGATION THAT SHE SECRETED SOME OF

04:07PM  2    THE MAIL IN THE MAIL BAG AND IN THE VERY ROOM THAT SHE WAS

04:08PM  3    BEING INTERVIEWED BY THE C.I.D., AND THAT WAS NOT PICKED UP

04:08PM  4    UNTIL LATER.

04:08PM  5        BUT THERE THE GOVERNMENT HAD THE VIDEOS.  THEY FAILED TO

04:08PM  6    SECURE THE VIDEOS, ALBEIT I THINK THERE WAS TESTIMONY THAT THE

04:08PM  7    VIDEOS WOULDN'T HAVE BEEN DISPOSITIVE ANYHOW, THEY WERE GRAINY

04:08PM  8    AND ANGLES WERE BAD AND ALL OF THAT.

04:08PM  9        BUT THE GOVERNMENT, AT LEAST THE EVIDENCE FROM THE COURT'S

04:08PM  10   PERSPECTIVE AND AS I SEE IT, THE GOVERNMENT NEVER HAD THE LIS

04:08PM  11   TO DESTROY.

04:08PM  12       SO THIS ISN'T A CASE WHERE THEY WERE IN POSSESSION OF A

04:08PM  13   LIS OR SOMETHING, AND THEN THEY LEFT IT IN THE BACKGROUND, IT

04:08PM  14   WAS -- WHATEVER HAPPENED TO IT, IT WAS CORRUPTED, A DOG ATE THE

04:08PM  15   HOMEWORK, IF YOU'LL PARDON ME.  NONE OF THAT HAPPENED HERE

04:08PM  16   BECAUSE THEY NEVER HAD IT.

04:08PM  17       WHAT THEY HAD WAS -- THEY NEVER WERE ABLE TO GET INTO IT.

04:08PM  18       AND I THINK MR. SONNIER SAID THE SAME THING, HE WAS NEVER

04:08PM  19   ABLE TO ACCESS WHAT HE HAD, WHICH IS THE SAME THING THAT THE

04:08PM  20   GOVERNMENT HAD.

04:09PM  21       DID THE GOVERNMENT ACT IN DISREGARD FOR THE INTEREST OF

04:09PM  22   THE ACCUSED?

04:09PM  23       THE EVIDENCE DOESN'T SUPPORT THAT.  I DON'T THINK YOU'RE

04:09PM  24   ARGUING THAT THAT HAPPENED, OTHER THAN IN THE NEGLIGENCE THAT

04:09PM  25   WAS CONTRARY TO YOUR CLIENT'S INTEREST.

6882

04:09PM 1      BUT THERE IS NOTHING IN THE RECORD THAT SUGGESTS THAT

04:09PM 2  THERE WAS ANY DECISION OR ACTS OR CONDUCT BY THE GOVERNMENT

04:09PM 3  THAT WERE DIRECTED TOWARDS KEEPING INFORMATION FROM THE

04:09PM 4  DEFENSE, HIDING INFORMATION FROM THE DEFENSE IN SOME WAY THAT

04:09PM 5  DISREGARDED THE INTEREST OF THE ACCUSED.

04:09PM 6      BAD CONDUCT IS WHAT I'M SUGGESTING HERE, AND I DON'T SEE

04:09PM 7  ANYTHING IN THE RECORD THAT SUPPORTS THAT.

04:09PM 8      WAS THE GOVERNMENT NEGLIGENT IN FAILING TO ADHERE TO

04:09PM 9  ESTABLISHING REASONABLE STANDARDS OF CARE FOR POLICE IN

04:09PM 10  PROSECUTORIAL FUNCTIONS?  THAT'S FROM LOUD HAWK.

04:10PM 11      REMEMBER THE LOUD HAWK CASE?  IT INVOLVED DYNAMITE.  IT

04:10PM 12  INVOLVED A SMALL POLICE DEPARTMENT, AND APPARENTLY THERE WAS A

04:10PM 13  ROGUE SHERIFF'S DEPUTY WHO DECIDED TO, CONTRARY TO THE

04:10PM 14  GOVERNMENT'S REQUEST, TO STOP THE VEHICLE.

04:10PM 15      AND THEN IN STOPPING THE VEHICLE, THEN OF COURSE THE

04:10PM 16  SHERIFF'S DEPARTMENT IS OF COURSE LEFT WITH, WHAT DO WE DO WITH

04:10PM 17  THIS DYNAMITE THAT IS KIND OF WEEPING AND IT'S VERY -- YOU

04:10PM 18  KNOW, IT'S VOLATILE?  WELL, THEY HAD NO PLACE TO STORE IT, SO

04:10PM 19  THEY DESTROYED IT.

04:10PM 20      FORTUNATELY THERE WERE PHOTOGRAPHS TAKEN, WHICH IS

04:10PM 21  SECONDARY EVIDENCE, WHICH WE'LL TALK ABOUT IN JUST A MOMENT.

04:10PM 22      BUT THAT TYPE OF SITUATION DOESN'T EXIST HERE.

04:10PM 23      AND WHAT ARE THE REASONABLE STANDARDS OF CARE?  AND I

04:10PM 24  THINK THE GOVERNMENT -- EXCUSE ME, THE DEFENSE MAKES THE

04:10PM 25  ARGUMENT THAT, WELL, THEY KNEW THAT THIS DATABASE, THE ORIGINAL

6883

04:10PM 1    DATABASE EXISTED, AND SO THAT'S THE STANDARD OF CARE, WHICH

04:10PM 2    SUPPORTS A NEGLIGENCE THEORY THAT THEY SOMEHOW FELL BELOW THE

04:11PM 3    CONDUCT -- THEIR CONDUCT FELL BELOW THE STANDARD OF CARE.

04:11PM 4        BUT IN THE TOTALITY OF LOOKING AT THE CIRCUMSTANCES HERE,

04:11PM 5    THE GOVERNMENT, AND I THINK THERE'S DOCUMENTS IN, THE DORSEY

04:11PM 6    LETTER AND THE WILMER HALE LETTERS SUPPORT CONTINUOUS

04:11PM 7    CONVERSATION ABOUT RETRIEVING THE LIS, TRYING TO FIND OUT, WHAT

04:11PM 8    CAN WE DO TO OPEN THIS?  HOW CAN WE RESOLVE THIS?

04:11PM 9        THEY'VE RELIED, IT APPEARS, ON THE REPRESENTATIONS OF

04:11PM 10   THERANOS'S ATTORNEYS WHEN THEY RECEIVED WHAT THEY SUBPOENAED

04:11PM 11   AND WHAT THEY ASKED FOR.

04:11PM 12       AND ARE WE SAYING THEN THAT EVERY TIME, PURSUANT TO A

04:11PM 13   SUBPOENA, THAT THE GOVERNMENT RECEIVES A DOCUMENT OR A PRODUCT

04:11PM 14   OR AN ITEM FROM COUNSEL IN RESPONSE TO THE SUBPOENA THAT THEY

04:11PM 15   SHOULD BE SUSPICIOUS OF IT AND TAKE EXTRA STEPS?  IS THAT THE

04:12PM 16   STANDARD OF CARE?

04:12PM 17       OR IS THERE A STANDARD OF CARE THAT THEY SHOULD RELY ON

04:12PM 18   MEN AND WOMEN WHO SWEAR TO SUPPORT THE CONSTITUTION AND FOLLOW

04:12PM 19   THE RULES OF COURT AND THE RULES OF PRACTICE AND WILL PROVIDE

04:12PM 20   WHAT THE SUBPOENA ASKS FOR IN GOOD FAITH?  AND IS THAT THE

04:12PM 21   STANDARD OF CARE?  CAN THEY PLACE TRUST IN THE LAWYERS WHO

04:12PM 22   REPRESENT THE COMPANY IN THEIR CONDUCT?  CAN THEY RELY ON THEM,

04:12PM 23   COUNSEL WHO RESPOND APPROPRIATELY TO A GRAND JURY SUBPOENA, AS

04:12PM 24   MR. LEACH POINTS OUT, RECOGNIZING THAT FAILURE TO DO THAT COULD

04:12PM 25   RESULT IN AN OBSTRUCTION OF JUSTICE INVESTIGATION ON THEIR OWN?

```
04:12PM   1        AND WITH THAT HANGING OVER A SUBPOENA, COUNSEL,

04:12PM   2   EXPERIENCED COUNSEL -- AND CORPORATIONS AND BUSINESSES TEND TO

04:12PM   3   ONLY HIRE EXPERIENCED COUNSEL, THESE TWO FIRMS ARE

04:13PM   4   INTERNATIONAL FIRMS -- DOESN'T THAT SUPPORT THE GOVERNMENT'S AT

04:13PM   5   LEAST TRUST OR BELIEF THAT, OKAY, WHAT WE RECEIVED IS FULSOME,

04:13PM   6   IS WHOLESOME, AND IS NOT CORRUPTED?

04:13PM   7        I SUPPOSE I LOOK AT IT, AND WHAT ABOUT THE GOVERNMENT'S

04:13PM   8   CONDUCT WAS UNREASONABLE IN THE TOTALITY OF THE CIRCUMSTANCES

04:13PM   9   IN THAT REGARD?

04:13PM  10        THE NEXT ANALYSIS IS DELIBERATE.  WERE THE ACTS

04:13PM  11   DELIBERATE?  WERE THEY DONE IN GOOD FAITH, WITH REASONABLE GOOD

04:13PM  12   FAITH, AND IS THERE REASONABLENESS HERE?

04:13PM  13        AND I HAVE TO SAY, DISAPPOINTING AS THE RESULT WAS, I HAD

04:13PM  14   WISHED, AND WE ALL HAD HOPED, THAT WHEN THE GOVERNMENT WAS

04:13PM  15   GIVEN THE COPY THAT THEY WERE, THAT IT HAD BEEN WHOLESOME AND

04:13PM  16   ACCESSIBLE AS THEY EXPECTED.  I DO THINK THAT THERE WAS GOOD

04:13PM  17   FAITH IN RECEIPT OF WHAT THEY HAD.

04:13PM  18        NOW, I THINK THE FAULT THAT YOU -- AND IT'S ENTIRELY

04:14PM  19   APPROPRIATE FOR THE DEFENSE TO BE CRITICAL OF THE PROSECUTION

04:14PM  20   HERE AND THE EVIDENCE THAT WAS PRESENTED, AND IT'S ENTIRELY

04:14PM  21   APPROPRIATE FOR YOU TO SAY, THE DEFENSE, TO SAY THEY COULD

04:14PM  22   HAVE, THEY SHOULD HAVE DONE MORE, AND MR. SONNIER SUPPORTS

04:14PM  23   THAT.  THEY SHOULD HAVE DONE THAT.

04:14PM  24        AND THAT IS FAIR GAME FOR THIS JURY TO HEAR THAT IF THE

04:14PM  25   GOVERNMENT, THE FULL POWER OF THE UNITED STATES GOVERNMENT
```

6885

04:14PM 1   COMES AND BRINGS SOMEONE TO BEAR IN A FEDERAL PROSECUTION, THEY

04:14PM 2   BETTER DARN WELL HAVE THEIR DUCKS LINED UP AND DO IT CORRECTLY,

04:14PM 3   LADIES AND GENTLEMEN, AND HERE'S THE FAILURE IN THIS CASE.

04:14PM 4         AND THIS IS THE QUESTION ALSO THAT I WANTED TO MENTION

04:14PM 5   ABOUT WAS THERE SECONDARY OR SUBSTITUTE EVIDENCE IN THE CASE?

04:14PM 6         AND YOU AND I, MR. BRECHER, AND YOUR COLLEAGUE,

04:14PM 7   MR. COOPERSMITH, HAVE TALKED ABOUT THAT AND HAVE ACKNOWLEDGED,

04:14PM 8   YES, WE COULD GET UP AND STATE RIGHT NOW WITH GREAT PRIDE, THE

04:15PM 9   STATE OF THE EVIDENCE RIGHT NOW IS INSUFFICIENT BECAUSE THEY

04:15PM 10  HAVE NOT PUT THE LIST TOGETHER AND ALL THEY HAVE PUT, THE

04:15PM 11  GOVERNMENT, IN FRONT OF YOU IS, COUNT THEM ON ONE HAND, THE

04:15PM 12  PEOPLE WHO HAVE SAID THEY HAVE HAD BAD TESTS, AND NOW LET'S

04:15PM 13  STEP BACK, LADIES AND GENTLEMEN, AND LOOK AT THE NUMBER OF

04:15PM 14  PEOPLE.

04:15PM 15        I THINK YOU INTRODUCED THE ACRONYM WAS THE CWAC, THE

04:15PM 16  WOMEN'S CLINIC, WHICH SHOWS MANY, MANY OTHER INACCURATE TESTS,

04:15PM 17  SO THAT SECONDARY TEST I THINK SUPPORTS YOUR ARGUMENT THAT IT

04:15PM 18  MIGHT BE PERSUASIVE TO THIS JURY THAT THE GOVERNMENT HAS NOT

04:15PM 19  MET THEIR BURDEN IN REGARDS TO CONSISTENT RELIABILITY AND

04:15PM 20  ACCURACY OF THE TESTS.

04:15PM 21        YOU HAVE THAT ARGUMENT NOW AND, YOU KNOW, I DON'T KNOW IF

04:15PM 22  THE GOVERNMENT IS CONCERNED ABOUT THAT.  THEY SHOULD BE, I

04:15PM 23  SUPPOSE, WHEN YOU BALANCE THOSE WITNESSES, AS YOU SAY IT,

04:15PM 24  MR. BRECHER, THAT THEY JUST PUT A HANDFUL OF PEOPLE ON, AND

04:15PM 25  YET, THERE'S MULTIPLE, MULTIPLE PIECES OF EVIDENCE THAT SUPPORT

04:16PM 1    ACCURACY AS OPPOSED TO THOSE THAT PUT ON.

04:16PM 2        SO THE COURT FINDS THAT SECONDARY OR SUBSTITUTE EVIDENCE,

04:16PM 3    I'LL CALL IT THAT, THAT ABILITY TO MAKE THAT ARGUMENT IS NOT AT

04:16PM 4    ALL PRECLUDED, AND YOU'RE NOT IN ANY WAY DIMINISHED TO ARGUE

04:16PM 5    THAT TO THE JURY.

04:16PM 6        I DON'T SEE THERE WAS BAD FAITH ON THE PART OF THE

04:16PM 7    GOVERNMENT.  I DON'T SEE ANY DELIBERATE ACTIONS.  THE EVIDENCE

04:16PM 8    DOESN'T SUPPORT THAT.

04:16PM 9        AND YOU'VE SEEN THAT IN ONE OF THE MIL ORDERS BOTH IN THIS

04:16PM 10   CASE AND IN MS. HOLMES'S CASE, TOO.  I JUST WANT TO SAY, IN

04:16PM 11   THOSE ORDERS THE COURT MENTIONED THAT AND RECOGNIZED IN THOSE

04:16PM 12   ORDERS THAT THE GOVERNMENT DIDN'T DESTROY THIS.  IT WASN'T

04:16PM 13   DESTROYED BY THEM.

04:16PM 14       I THINK -- I JUST WANT TO MAKE THE RECORD CLEAR.  THE

04:16PM 15   COURT DID USE THE WORD IT MAY BE, MAY BE THAT THEY WERE

04:16PM 16   NEGLIGENT AT MOST.  AND I USED THAT PHRASE IN IDENTIFYING THE

04:17PM 17   GOVERNMENT'S CONDUCT.  MAYBE IT WAS NEGLIGENT.  IT WAS NOT A

04:17PM 18   FINDING OF NEGLIGENCE.

04:17PM 19       BUT IT WAS -- WHAT IT WAS, WAS A WAY TO DISTINGUISH AT

04:17PM 20   LEAST SOME SPECIFIC ABHORRENT CONDUCT BY THE GOVERNMENT WHICH I

04:17PM 21   DON'T THINK YOU'RE ARGUING EXISTS.  BUT THE COURT DOESN'T FIND

04:17PM 22   IT.

04:17PM 23       WHEN I BALANCE, MR. BRECHER, WHEN I LOOK THROUGH THE

04:17PM 24   LOUD HAWK ANALYSIS AND DO THE BALANCING, AND NOW WHAT FORMER

04:17PM 25   JUSTICE KENNEDY SUGGESTED -- AND THAT WAS AN INTERESTING

1    OPINION, WASN'T IT, THE LOUD HAWK OPINION, THERE WERE -- I

2    WONDER WHAT THAT CONFERENCE WAS LIKE.

3        BUT WHAT WE GET, WHAT WE GET IN THE INSTRUCTION, WE GET

4    THEN JUDGE KENNEDY'S CONCURRENCE, AND THE MAJORITY OF THE PANEL

5    SAW THE WISDOM OF THAT GUIDANCE, AND THAT'S WHAT HAS GUIDED

6    COURTS NOW IN THIS CIRCUIT AND IT GUIDES THIS COURT WHEN IT

7    DOES THIS ANALYSIS.

8        AND WHEN I DO THAT BALANCING, I HAVE TO SAY THAT IN

9    DOING -- IN CONSIDERING THE TOTALITY OF THE EVIDENCE AS TO THIS

10   ISSUE AND THE EVIDENCE THAT'S BEFORE THE COURT AS TO THIS

11   ISSUE, I DO NOT FIND THAT IT WOULD BE APPROPRIATE TO GIVE THE

12   INSTRUCTION THAT YOU HAVE PRESENTED FOR THIS JURY TO HEAR.  I

13   DON'T BELIEVE IT IS NECESSARY.  I DON'T BELIEVE THE EVIDENCE

14   SUPPORTS IT BY DOING -- AS A RESULT OF A LOUD HAWK BALANCING

15   ANALYSIS.

16       SO I'M GOING TO RESPECTFULLY DECLINE YOUR INVITATION TO

17   GIVE AN ADVERSE INFERENCE INSTRUCTION.  I DO NOT BELIEVE THE

18   EVIDENCE IN THIS CASE SUPPORTS SUCH AN INSTRUCTION.

19       NOW, HAVING SAID THAT, I'M NOT PRECLUDING YOU IN ANY WAY,

20   OR MR. COOPERSMITH -- IT SOUNDS LIKE MR. COOPERSMITH IS GOING

21   TO BE YOUR SPOKESPERSON FOR CLOSING.

22            MR. BRECHER:  I SUSPECT SO.

23            THE COURT:  AND THIS DOES NOT IN ANY WAY, OF COURSE,

24   PRECLUDE HIM FROM SHOUTING TO THE HEAVENS THE FAILURE OF PROOF

25   IN THIS CASE, PARTICULARLY IN REGARDS TO THIS LIS EVIDENCE AND

6888

04:19PM  1    THE CONVERSATION ABOUT THE NUMBER OF PATIENTS THAT YOU COUNT ON

04:19PM  2    ONE HAND VIS-A-VIS THE DOCUMENTS THAT WERE RECEIVED BOTH TODAY

04:19PM  3    AND OTHER DOCUMENTS THAT WERE RECEIVED, AND EVIDENCE THAT WAS

04:19PM  4    RECEIVED IN THE CASE THAT SUPPORT, THAT SUPPORT FROM THE

04:19PM  5    DEFENSE PERSPECTIVE, AND THE EVIDENCE CAN BE ARGUED THAT

04:19PM  6    SUPPORT THAT ACTUALLY THE TEST RESULTS WERE QUITE THE CONTRARY

04:19PM  7    AND JUST THE OPPOSITE OF WHAT THE GOVERNMENT PRESENTS TO THE

04:19PM  8    JURY AND THE JURY SHOULD SO FIND AND SHOULD ACQUIT YOUR CLIENT

04:19PM  9    ON THOSE COUNTS.

04:19PM  10        THAT ARGUMENT I'M NOT IN ANY WAY -- BY THE COURT'S

04:19PM  11    RESPECTFULLY DECLINING TO GIVE THIS INVITATION, I'M NOT

04:19PM  12    PRECLUDING THAT ARGUMENT AT ALL, AND THE ARGUMENT CAN BE MADE,

04:19PM  13    AND I DON'T THINK THE GOVERNMENT PARTS COMPANY WITH THAT.

04:19PM  14        THEY'LL TAKE THEIR BRUISES AND HITS AS THEY COME.

04:20PM  15            MR. BRECHER:  THANK YOU, YOUR HONOR.  WE STAND ON

04:20PM  16    OUR ARGUMENTS AND WE STAND ON OUR POSITION, BUT WE UNDERSTAND

04:20PM  17    THE COURT'S DECISION.

04:20PM  18            THE COURT:  THANK YOU ALL.  THANK YOU VERY MUCH.

04:20PM  19        LET ME ALL -- LET ME MOVE TO -- CAN THE GOVERNMENT ANSWER

04:20PM  20    THE QUESTION ABOUT REBUTTAL NOW?

04:20PM  21            MR. LEACH:  CAN I HAVE ONE MOMENT NOW, YOUR HONOR?

04:20PM  22            THE COURT:  YES.  OF COURSE.

04:20PM  23        (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

04:20PM  24            MR. LEACH:  THE ANSWER IS YES, YOUR HONOR.

04:20PM  25        THE GOVERNMENT DOES NOT INTEND TO PUT ON A REBUTTAL CASE.

04:20PM   1          THE COURT:  ALL RIGHT.  THE JURY THEN HAS ALL OF THE

04:20PM   2   EVIDENCE THAT THEY NEED THEN TO DECIDE THIS CASE.

04:20PM   3          MR. LEACH:  YES.

04:20PM   4          THE COURT:  ALL RIGHT.

04:20PM   5      THE NEXT THING WE SHOULD DO IS FINISH UP OUR COLLOQUY

04:20PM   6   ABOUT JURY INSTRUCTIONS.

04:20PM   7          MR. COOPERSMITH:  YES, YOUR HONOR.

04:20PM   8      I JUST WANT TO MENTION ONE THING, AND EARLIER I MAY HAVE

04:20PM   9   JUMPED THE GUN A LITTLE BIT JUST OUT OF AN ABUNDANCE OF

04:20PM  10   CAUTION.  I MENTIONED THE RULE 29 PLACE HOLDER AND THE COURT

04:20PM  11   ACKNOWLEDGED THAT.

04:20PM  12      I THINK I'M ACTUALLY SUPPOSED TO DO THAT WHEN ALL OF THE

04:20PM  13   EVIDENCE HAD CLOSED, AND TECHNICALLY THE GOVERNMENT HAD NOT

04:21PM  14   DECIDED, AND SO I JUST WANT TO MAKE SURE THAT'S CLEAR.

04:21PM  15      WE DO RENEW OUR RULE 29.  WE UNDERSTAND THE COURT WILL

04:21PM  16   RESERVE, BUT NOW THERE'S NOT GOING TO BE ANY MORE EVIDENCE.

04:21PM  17          THE COURT:  THANK YOU.  THANK YOU.  THAT IS THE

04:21PM  18   APPROPRIATE PROTOCOL, AND YOU HAVE PRESERVED IT MULTIPLE TIMES

04:21PM  19   AND WE'LL RECOGNIZE YOUR TIMELINESS IN THAT.

04:21PM  20      SO LET ME JUST ASK A PROCEDURAL QUESTION.  TOMORROW IS

04:21PM  21   FRIDAY.  WE HAVE TO FINISH OUR INSTRUCTIONS.  I WANT TO FINISH

04:21PM  22   THOSE.

04:21PM  23      WE ARE NOT GOING TO ENGAGE IN THE BEGINNING OF ANY CLOSING

04:21PM  24   ARGUMENTS TOMORROW.  THAT'S MY THOUGHT.  I DON'T WANT TO BREAK

04:21PM  25   UP YOUR ARGUMENTS BY THE WEEKEND.  I DON'T THINK THAT'S

6890

04:21PM   1    APPROPRIATE.

04:21PM   2         MY SENSE IS THAT YOU -- BOTH SIDES WOULD WELCOME THE

04:21PM   3    WEEKEND TO PREPARE ARGUMENTS IN ANY EVENT.

04:21PM   4              MR. COOPERSMITH:  YES, YOUR HONOR.

04:21PM   5              THE COURT:  OUR NEXT TIME TOGETHER, I BELIEVE, IS

04:21PM   6    TUESDAY.

04:21PM   7         IS THAT RIGHT, MS. ROBINSON?

04:21PM   8              THE CLERK:  YES, THAT'S CORRECT, YOUR HONOR.

04:21PM   9              THE COURT:  AND SO WHAT I THOUGHT I WOULD ASK

04:22PM  10    MS. ROBINSON TO DO IS TO SO INFORM THE JURY THAT THEY SHOULD

04:22PM  11    COME BACK TUESDAY AT 9:00 O'CLOCK.

04:22PM  12         WHEN THEY COME BACK, I'LL ASK THE GOVERNMENT ON THE RECORD

04:22PM  13    IF YOU HAVE ANY REBUTTAL EVIDENCE, YOU'LL TELL ME NO IN FRONT

04:22PM  14    OF THE JURY, AND THEN WE CAN -- I WILL TELL THEM THEN THAT IT'S

04:22PM  15    THE TIME FOR CLOSING ARGUMENTS, AND THE GOVERNMENT WILL BEGIN

04:22PM  16    THEIR CLOSING ARGUMENT, AND THEN, MR. COOPERSMITH, YOU WILL,

04:22PM  17    FOLLOW.

04:22PM  18              MR. COOPERSMITH:  YES, YOUR HONOR.

04:22PM  19         FOR THE COURT'S INFORMATION AND FOR SCHEDULING, AND FOR

04:22PM  20    THE GOVERNMENT'S AS WELL, SO AS I UNDERSTAND IT, THE CLOSING

04:22PM  21    ARGUMENTS WILL BEGIN ON TUESDAY.  THE GOVERNMENT WILL MAKE

04:22PM  22    THEIR ARGUMENT.

04:22PM  23         I THINK THE ESTIMATE WE GOT -- AND OBVIOUSLY I'M NOT

04:22PM  24    HOLDING THEM TO THIS AND WOULD NOT -- BUT IT WAS SOMETHING LIKE

04:22PM  25    THREE AND A HALF TO FOUR HOURS.  BUT WHATEVER IT IS, IT SOUNDS

6891

04:22PM 1    LIKE I WOULD BEGIN THE ARGUMENTS IN THE AFTERNOON ON TUESDAY.

04:22PM 2              THE COURT:  IT COULD BE.

04:22PM 3              MR. COOPERSMITH:  AND THAT'S FINE, YOUR HONOR.

04:22PM 4         MY ARGUMENTS, I DO EXPECT, WILL EXTEND TO WEDNESDAY.

04:23PM 5              THE COURT:  SURE.

04:23PM 6              MR. COOPERSMITH:  I JUST HAVE TO GIVE THE COURT THE

04:23PM 7    INFORMATION.  IT IS GOING TO BE LENGTHY, YOU KNOW, JUST BECAUSE

04:23PM 8    THERE'S SO MUCH EVIDENCE IN THIS CASE THAT I HAVE TO ADDRESS,

04:23PM 9    AND I JUST WANT TO GIVE THE COURT THAT INFORMATION UP-FRONT.

04:23PM 10             THE COURT:  YOU KNOW, YOU TAKE WHATEVER TIME YOU

04:23PM 11   NEED, WHATEVER TIME YOU THINK IS APPROPRIATE.

04:23PM 12        OF COURSE THE COURT CANNOT -- I WOULD NEVER GIVE TIME

04:23PM 13   LIMITS ON CLOSING ARGUMENTS IN A CRIMINAL CASE.  SO WHATEVER

04:23PM 14   YOU FEEL IS APPROPRIATE IS APPROPRIATE.

04:23PM 15        IF YOU NEED TO TAKE BREAKS -- AND, MR. COOPERSMITH, WHILE

04:23PM 16   YOU PLAN OVER THE WEEKEND, WHILE YOU PLAN YOUR ARGUMENT, IF YOU

04:23PM 17   FEEL IT APPROPRIATE TO TAKE SOME BREAKS DURING YOUR ARGUMENT

04:23PM 18   AND YOU WOULD LIKE TO PUT IN PAUSES DURING YOUR ARGUMENT, JUST

04:23PM 19   LET ME KNOW AND WE'LL DO THAT.

04:23PM 20             MR. COOPERSMITH:  YES, YOUR HONOR.  YOU KNOW, I

04:23PM 21   THINK THAT'S A GREAT SUGGESTION, AND I WILL LOOK FOR NATURAL

04:23PM 22   STOPPING POINTS AND THEN I'LL LET THE COURT KNOW ABOUT THAT.

04:23PM 23   BUT, YEAH, THANK YOU.

04:23PM 24             THE COURT:  SURE.  WE CAN DO THAT.

04:23PM 25             MR. SCHENK:  YOUR HONOR, MY RECOLLECTION IS THAT

04:23PM 1    THIS JURY HAS NOT BEEN ASKED ABOUT COMING TO COURT NEXT

04:23PM 2    THURSDAY, AND I WONDER IF WHAT MR. COOPERSMITH IS SUGGESTING IS

04:24PM 3    THAT HE MIGHT TAKE THE FULL DAY ON WEDNESDAY, AND WOULD THAT

04:24PM 4    REQUIRE THE GOVERNMENT'S REBUTTAL TO BE FRIDAY, OR AM I

04:24PM 5    MISREADING THIS AND THE REBUTTAL COULD ALSO OCCUR ON WEDNESDAY?

04:24PM 6            MR. COOPERSMITH:  YOU KNOW, IT REALLY DEPENDS ON HOW

04:24PM 7    MUCH TIME I HAVE ON TUESDAY, YOUR HONOR.

04:24PM 8        BUT, YOU KNOW, I THINK IT'S POSSIBLE THAT I WOULD NEED THE

04:24PM 9    WHOLE DAY ON WEDNESDAY.  I'M HOPING NOT.

04:24PM 10       OBVIOUSLY I WANT TO MAKE SURE THAT THE GOVERNMENT HAS

04:24PM 11   ENOUGH TIME FOR THEIR REBUTTAL AND ISN'T SQUEEZED THERE EITHER.

04:24PM 12       AND I THINK WE HAVE UNTIL 4:00 ON WEDNESDAY.

04:24PM 13       IS THAT CORRECT?

04:24PM 14           THE COURT:  YES.  WELL, LET'S DO THIS:  I'LL HAVE --

04:24PM 15   WHEN MS. ROBINSON REACHES OUT TO THE JURY ABOUT TOMORROW, WE'LL

04:24PM 16   INQUIRE OF THE JURY ABOUT THURSDAY.

04:24PM 17       AND FRIDAY, IS FRIDAY A SCHEDULED DAY ALREADY?

04:24PM 18           THE CLERK:  YES, IT IS, YOUR HONOR.

04:24PM 19           THE COURT:  RIGHT.  WE HAVE THAT SCHEDULED.  BUT IF

04:25PM 20   WE CAN CAPTURE THURSDAY IF NEEDED, MY RECOLLECTION IS THAT IT

04:25PM 21   MIGHT BE A HALF A DAY.  I JUST DON'T REMEMBER.  ONE JUROR HAD A

04:25PM 22   CONFLICT.

04:25PM 23           THE CLERK:  I DON'T RECALL.  WE POLLED THEM.

04:25PM 24           THE COURT:  WE'RE NOT GOING TO DO ANYTHING ELSE

04:25PM 25   TODAY.  WE'LL COME BACK TOMORROW MORNING AT 10:00 O'CLOCK AND

04:25PM 1      FINISH OUR JURY INSTRUCTIONS.  I THINK ALL OF US WOULD BENEFIT.

04:25PM 2              MR. COOPERSMITH:  WE'LL PROCEED TOMORROW AT 10:00?

04:25PM 3              THE COURT:  YES, TOMORROW AT 10:00 O'CLOCK TO FINISH

04:25PM 4      OUR JURY INSTRUCTIONS.

04:25PM 5          I DID GET THE DRAFT AND I WANT TO LOOK AT THE DRAFT THAT

04:25PM 6      WAS PROVIDED.  I WOULD LIKE YOU TO -- IN LIGHT OF THE COURT'S

04:25PM 7      RULING, THAT IS GOING TO CHANGE THINGS ALSO, AND WE'RE AT THE

04:25PM 8      BOTTOM OF THE HOUR HERE, AND I'D LIKE TO HAVE US START FRESH

04:25PM 9      TOMORROW MORNING.

04:25PM 10         DOES 10:00 O'CLOCK WORK FOR EVERYONE?

04:25PM 11             MR. COOPERSMITH:  YES, YOUR HONOR.

04:25PM 12             MR. SCHENK:  YES, YOUR HONOR.

04:25PM 13             THE COURT:  OKAY.  LET'S DO THAT.  LET'S GET

04:25PM 14     TOGETHER TOMORROW AT 10:00 O'CLOCK.

04:25PM 15         WE'LL HAVE MS. ROBINSON CONTACT THE JURY ABOUT THAT.

04:26PM 16             THE CLERK:  YES.

04:26PM 17             THE COURT:  OKAY.  THANK YOU.

04:26PM 18         CAN I JUST SEE THE TWO OF YOU AT SIDE-BAR HERE FOR JUST A

04:26PM 19     MOMENT?

04:26PM 20             MR. COOPERSMITH:  YES.

04:26PM 21         (SIDE-BAR CONVERSATION OFF THE RECORD.)

04:28PM 22             THE CLERK:  COURT IS ADJOURNED.

        23         (COURT ADJOURNED AT 4:28 P.M.)

        24

        25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18         _____

19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  JUNE 9, 2022

22

23

24

25