JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    (415) 773-5700
Facsimile:     (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAMESH "SUNNY" BALWANI, <br><br> Defendant. | Case No. CR-18-00258-EJD <br><br> **MOTION FOR NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33 AND FOR LEAVE TO PARTICIPATE AT EVIDENTIARY HEARING** <br><br> Date:  October 20, 2022 <br> Time: 9:00 a.m. <br> CTRM.: 4, 5th Floor <br><br> Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTION FOR NEW TRIAL AND FOR LEAVE TO PARTICIPATE AT EVIDENTIARY HEARING**

PLEASE TAKE NOTICE that on October 20, 2022, at 9:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move the Court to order a new trial based on newly discovered evidence. Mr. Balwani seeks leave to participate in the evidentiary hearing currently scheduled for October 17, 2022.[1] The Motion is based on the below Memorandum of Points, the record in this case, and any other matters that the Court deems appropriate.

DATED: October 6, 2022         Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By:  /s/ Jeffrey B. Coopersmith
     Jeffrey B. Coopersmith

     Attorney for Defendant
     RAMESH "SUNNY" BALWANI

---

[1] As discussed in the memorandum below, the Court has already scheduled an evidentiary hearing on this issue in the Holmes matter, and the Court's analysis there applies with even greater force to Mr. Balwani's case. While Mr. Balwani has noticed this motion for hearing under the schedule set by the Local Rules, he asks for leave to participate in the hearing now set for October 17.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Dr. Adam Rosendorff, a critical government witness at the trials of both Mr. Balwani and Ms. Holmes, appeared at Ms. Holmes' door in August and expressed concerns about the government's twisting facts to make them seem incriminating and his own regrets about his testimony given his view that everyone at Theranos was working hard to do something good. These statements conflict with Dr. Rosendorf's testimony at Mr. Balwani's trial. There, Dr. Rosendorff testified repeatedly about problems with Theranos' proprietary technology, his own efforts to elevate concerns about that technology, and the purported indifference of senior management—including Mr. Balwani—toward those concerns. The government has already conceded that Dr. Rosendorff's testimony in Mr. Balwani's trial was substantially similar to his testimony in Ms. Holmes' trial. Dkt. 1587 at 4. And in fact, Dr. Rosendorff went further on these points in his testimony in Mr. Balwani's trial than in Ms. Holmes' trial: in this case, he expressed doubts about the data he received from other Theranos scientists underlying Theranos' assay development work and described what he perceived as regulatory "cheating." Dr. Rosendorff's testimony was essential to the government's case: the government referenced him by name more than 100 times in their closing arguments.

The divergences between Dr. Rosendorff's trial testimony and his post-trial statements constitute newly discovered evidence requiring a new trial under Rule 33. They demand an evidentiary hearing, as the Court has already ordered in Ms. Holmes' case.

Mr. Balwani recognizes based on this week's hearing that the Court is not prepared to order a new trial based solely on the newly discovered evidence presented by Ms. Holmes. But because any potential government misconduct or inaccuracies in Dr. Rosendorff's testimony would affect Mr. Balwani's verdict at least as much as they would Ms. Holmes', he seeks the same opportunity to explore these exculpatory facts at the evidentiary hearing the Court has ordered based on Ms. Holmes' motion. For the sake of judicial economy, Mr. Balwani seeks leave to participate in the evidentiary hearing currently scheduled for October 17, 2022, and to

submit post-hearing briefing along with the other parties.[2]

## II.  BACKGROUND

As the Court knows from Ms. Holmes' filings, Dr. Rosendorff approached both Ms. Holmes' counsel and Ms. Holmes' partner William Evans in August 2022. *See* Dkts. 1574, 1574-1, 1574-3. Dr. Rosendorff told Mr. Evans that (1) he tried to answer questions honestly during the Holmes trial but the government tried to make everyone at the company look bad and (2) everyone at Theranos was working hard to do something good and meaningful and doing the best that they could. *See* Dkt. 1574-2; *see also* Dkt. 1587-2 (describing Dr. Rosendorff's statement that he was having trouble sleeping and that he felt as though he had done something wrong).

The government later submitted a declaration from Dr. Rosendorff, but in that declaration he did not deny the encounter with Mr. Evans or any of the statements attributed to him. *See* Dkt. 1587-1.

At a status conference this week, the Court ordered an evidentiary hearing on whether the government committed misconduct and whether Dr. Rosendorff testified truthfully at trial. *See* Dkt. 1593.[3]

## III.  ARGUMENT

### A.  The Same Legal Standard and Similar Facts as Those in Ms. Holmes' Case Support Granting a New Trial

Federal Rule of Criminal Procedure 33 allows the Court to vacate a judgment and grant a new trial "if the interest of justice so requires." When the request for a new trial is based on newly discovered evidence, the Rule authorizes relief when: (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material; (4) the evidence

---

[2] Given the Court's statement at the October 3, 2022 hearing that it may take 7–10 days after the submission of post-hearing briefing to enter a written decision on Ms. Holmes' new trial motion, the deadlines for submitting sentencing memoranda in Mr. Balwani's case—where sentencing is currently set for November 15, 2022—and the Court's moving Ms. Holmes' sentencing date, Mr. Balwani also asks the Court to continue his sentencing to a date after Ms. Holmes' sentencing hearing.

[3] Based on the record in his trial and the authorities submitted by Ms. Holmes, Mr. Balwani contends that a more expansive hearing is appropriate, and we join in her request for a plenary evidentiary hearing to explore the entirety of the facts surrounding Dr. Rosendorff's interactions with the government, his post-trial conduct, and his later declaration.

is not merely cumulative or impeaching; and (5) the evidence suggests that the defendant would likely be acquitted in a new trial. *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). Ms. Holmes discussed the relevant authorities and their significance in her motion for a new trial and in her reply. *See* Dkts. 1574, 1590. Mr. Balwani joins those arguments and will not rehash them here.

In short, Dr. Rosendorff was at least as central to Mr. Balwani's trial as he was to Ms. Holmes'. His testimony lasted longer than that of any other witness. Trial was marked by disputes over the admissibility of bias evidence related to Dr. Rosendorff's post-Theranos employment, just as in the Holmes trial. *See, e.g.*, Dkt. 1401. The government relied extensively on Dr. Rosendorff's testimony, referring to him by name more than 100 times during closing arguments. *See* Balwani 6/21/22 Tr. 6938–7086 (mentioning Dr. Rosendorff 68 times during summation); Balwani 6/24/22 Tr. 7576–7685 (mentioning Dr. Rosendorff 35 times during rebuttal). The government offered no expert witness on the functioning of Theranos' proprietary technology. And as noted above, the government has conceded that Dr. Rosendorff's testimony was substantially similar at both trials. Dkt. 1587 at 4.

Testimony that everyone at Theranos was working hard on meaningful projects—and did the best they could—is a far cry from Dr. Rosendorff's repeated claims at trial that his orders were ignored, that the company was not interested in regulatory compliance or patient safety, and that Mr. Balwani repeatedly ignored his concerns. Especially given the bias issues that Mr. Balwani sought to introduce at trial, any improper conduct by the government in trying to paint a misleading picture of the facts also calls the verdict into serious question. And Dr. Rosendorff's post-trial statements to Mr. Evans may be the tip of the iceberg. As noted during the October 3, 2022 hearing, the circumstances here are extraordinary: a linchpin government witness located and traveled uninvited to Ms. Holmes' residence to air his extreme discomfort with the government's presentation of his testimony.

Mr. Balwani thus has at least as strong a claim to a new trial as Ms. Holmes does. In fact, as discussed below, his claim is stronger.

- 3 -    MOTION FOR NEW TRIAL
CASE NO. CR-18-00258-EJD

### B. The Need for a New Trial Is Even Starker for Mr. Balwani than It Is for Ms. Holmes

Any changes in Dr. Rosendorff's testimony or evidence of government misconduct will affect Mr. Balwani even more than it will Ms. Holmes. This is so for three reasons.

First, Dr. Rosendorff's trial testimony in Mr. Balwani's case hewed closely to what he claimed in the Holmes trial. But when there were differences, those differences are completely at odds with his statements to Mr. Evans—which he nowhere denies—that everyone at Theranos was working hard to do something meaningful.

Examples abound. For instance, Dr. Rosendorff told Mr. Balwani's jury that Theranos' proficiency-testing practices were "legally … a form of cheating." Balwani 4/20/22 Tr. 3307. And Dr. Rosendorff did not trust Mr. Balwani to convey an instruction to perform proficiency testing. Balwani 4/20/22 Tr. 3311–12. He also volunteered that a prior lab director at Theranos had "quit in disgust." Balwani 4/20/22 Tr. 3402. And he tried to walk back his testimony from the Holmes trial that he never "offered tests that [he] thought were inaccurate or unreliable when" serving as lab director. Holmes 9/28/21 Tr. 1990. Instead, he claimed during Mr. Balwani's trial that he "came to doubt the accuracy of the testing, and when those doubts reached a certain threshold, [he] left the company." Balwani 4/22/22 Tr. 3554; *compare* Holmes 9/28/21 Tr. 1989–92, *with* Balwani 4/22/22 Tr. 3554–56. Dr. Rosendorff also claimed that, once Theranos assays started being used on patients, they no longer met "the applicable standards in [his] view as lab director." Balwani 4/26/22 Tr. 3755. He even cast doubt on the reliability of data underlying Theranos' research and development and assay-validation work. *See* Balwani 4/20/22 Tr. 3262 (testifying to his suspicion that "R&D was being pressured to produce data that indicated a certain result" and that he "wasn't entirely sure if [he] should trust what I was looking at, but [he] decided to trust"); Balwani 4/22/22 Tr. 3537 (claiming to have signed validation reports "trusting that the data that was being show to [him] was truthful" and noting that he now has reason to doubt that truthfulness). This testimony flatly conflicts with telling Mr. Evans that everyone at Theranos was doing the best they could to accomplish something meaningful.

Second, Dr. Rosendorff had a significant incentive to conform his testimony in the

Balwani case to his earlier testimony. As a sophisticated witness represented by counsel and repeatedly deposed, Dr. Rosendorff obviously knew the importance of consistent testimony. And he did conform his testimony, as the government has conceded. Dkt. 1587 at 4.

And third, Mr. Balwani was convicted on the patient-fraud counts, to which Dr. Rosendorff's testimony was essential. While the working of Theranos' technology was the core alleged misrepresentation at the heart of the government's entire case, the patient-fraud counts would completely unravel with different, more honest, statements from Dr. Rosendorff. The government called no expert to discuss the systemic reliability of Theranos' technology. The only witnesses with the percipient knowledge and expertise to assess that technology were Drs. Rosendorff and Pandori. The latter's testimony can bear little weight given his demonstrable and repeated perjury.[4] So the convictions must rest almost entirely on Dr. Rosendorff's testimony.

### C. Allowing Mr. Balwani's Participation in the Scheduled Hearing Will Conserve Judicial Resources

Mr. Balwani recognizes that the Court was unwilling to grant Ms. Holmes a new trial based on her motion and oral argument alone. But the Court did recognize that these extraordinary circumstances demand an evidentiary hearing. Because Mr. Balwani's claims are at least as strong as Ms. Holmes', the Court's reasoning applies to him with the same or greater force. And because the Court has already scheduled an evidentiary hearing, allowing Mr. Balwani to participate will save the Court and the parties the need for multiple hearings on the same issue.

This interest in judicial economy supports allowing Mr. Balwani to examine Dr. Rosendorff just as Ms. Holmes is allowed to do. Mr. Balwani should also be allowed to submit post-hearing briefing on the same schedule set for the government and Ms. Holmes, preventing the Court's having to address seriatim briefing schedules raising similar issues.

---

[4] Dr. Pandori claimed to have advised Mr. Balwani and Dr. Rosendorff to stop using the Edison device. Balwani 3/30/22 Tr. 1671. But an exit memo he authored—and initially claimed on the stand not to have written—along with several of his emails show that Dr. Pandori in fact repeatedly recommended that Theranos double the number of Edison devices used for clinical testing in his final weeks at the company. *See* Balwani 4/1/22 Tr. 1863–72; Balwani 4/6/22 Tr. 2208–18, 2259–68. Dr. Pandori also falsely claimed to have quit the company "five minutes" after a purported meeting with Ms. Holmes and Mr. Balwani about concerns over alleged misrepresentations in an article in *Wired* magazine. *See* Balwani 4/1/22 Tr. at 1740–43. But Dr. Pandori was still working at Theranos weeks after this meeting and had received the *Wired* article months earlier. *See* Balwani 4/22/22 Tr. 3492–93.

## IV. CONCLUSION

The Court should grant Mr. Balwani's motion and allow him to participate in the evidentiary hearing currently scheduled for October 17, 2022.

DATED: October 6, 2022

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH "SUNNY" BALWANI