STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS S. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Email:  robert.leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL BRIEF REGARDING RESTITUTION |
| v. | Date: February 17, 2023<br>Time: 9:30 a.m.<br>Court: Hon. Edward J. Davila |
| RAMESH "SUNNY" BALWANI, | |
| Defendant. | |

In advance of the restitution hearing scheduled for February 17, 2023, the government respectfully submits the following supplement to its sentencing memoranda regarding restitution. ECF Nos. 1661 & 1674.

## I. LEGAL STANDARD

Restitution is considered separately under a different standard than the loss amount used for calculating the Sentencing Guidelines. *See United States v. Gossi*, 608 F.3d 574, 579-80 (9th Cir. 2010). "Restitution clearly focuses on the *victim,* not the individual defendant. Restitution seeks to compensate the *victim* for all the *direct and proximate losses* resulting from the defendant's conduct, not only for the reasonabl[y] foreseeable losses. The purpose of restitution is to put the *victim* back in the position he or she would have been but for the defendant's criminal conduct." *Id*. at 581 (emphasis in original). "'The primary and overarching goal of the [Mandatory Victims Restitution Act, 18 U.S.C. § 3663A] is to make victims of crime whole.'" *Id.* at 580 (quoting *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004), *abrogated on other grounds*, *Lagos v. United States*, 138 S. Ct. 1684 (2018)). Indeed, "the ordinary meaning of restitution is restoring someone to a position he occupied before a particular event." *United States v. Kaplan*, 839 F.3d 795, 800-01 (9th Cir. 2016) (internal quotation omitted) (noting "the purpose of the MVRA is . . . to restore victims to their original state prior to the criminal act"); *United States v. Brock-Davis*, 504 F.3d 991, 998 (9th Cir. 2007) (emphasizing that the purpose of restitution is to restore the defrauded party to the position he would have had absent the fraud).

The MVRA, as its name suggests, is mandatory: "Notwithstanding any other provision of law . . . the court shall order . . . that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1). The statute defines victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). The MVRA applies in all sentencing proceedings for convictions of any offense that is "an offense against property under this title . . . including any offense committed by fraud

or deceit," as well as "any offense . . . in which an identifiable victim or victims has suffered a . . . pecuniary loss." *Id.* § 3663A(c)(1)(A) & (B).[1]

The Court's order of restitution shall require that the defendant "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—(A) return the property to the owner of the property or someone designated by the owner." *Id.* § 3663A(b)(1)(A). The MVRA provides further:

> If return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to—
> (i) the greater of—
> (I) the value of the property on the date of the damage, loss, or destruction; or
> (II) the value of the property on the date of sentencing, less
> (ii) the value (as of the date the property is returned) of any part of the property that is returned[.]

*Id.* § 3663A(b)(1)(B).

The remedial purpose of the MVRA grants "district courts a degree of flexibility in accounting for a victim's complete losses." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (internal quotation marks omitted). The MVRA is satisfied by a preponderance of evidence, and the Court may use any evidence that possesses sufficient indicia of reliability to support its probable accuracy. *Id.*

Cases applying these principles demonstrate that restitution for victims of wire fraud and securities fraud is the full amount of the money invested. In *Robers v. United States*, 572 U.S. 639 (2014), the defendant, like Holmes and Balwani, was convicted of conspiracy to commit wire fraud. The Supreme Court, in the course of applying 18 U.S.C. § 3663A(b)(1), observed that in the case of a fraudulently obtained loan the "specific property lost by a victim . . . is the money lent." *Id.* at 640-41; *id.* at 642 (noting that "any part of the property" in § 3663A(b)(1)(B)(ii) "refers to the property the [victims] lost, namely the money they lent"). By analogy, in the case of a fraudulently obtained

---

[1] The MVRA supplements the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663. Restitution under the VWPA is discretionary. *Id.* § 3663(a)(1)(A) ("[t]he court . . . may order . . . the defendant make restitution"); *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003). The VWPA also requires a court to consider a defendant's resources when evaluating restitution. § 3663(a)(1)(B); *De La Fuente*, 353 F.3d at 769. By contrast, the MVRA makes restitution mandatory for certain offenses (including conspiracy to commit wire fraud and wire fraud) and requires restitution "regardless of the defendant's financial resources or ability to pay." *United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003).

investment the specific property lost by a victim is the money invested.  Indeed, it would be anomalous to say that in the case of a fraudulently induced *loan* "property" subject to restitution means the total amount of a loan but in the case of a fraudulently induced *investment* "property" subject to restitution means only a portion of the investment.

In *United States v. Sarad*, 227 F. Supp. 3d 1153 (E.D. Cal. 2016), the court awarded restitution in the full amount of the victim investments.  There, the CEO of Telomolecular Corporation was convicted of securities fraud for false statements he made in connection with sales of the company's stock.  He raised money from more than 300 investors based on false claims about the company.  The government sought restitution of $7,047,200.52 based on "an itemized loss sheet derived from the victims-investors' bank accounts." *Id.* at 1161.  The court awarded that amount, despite objections that not every investor actually relied on his misrepresentations, that some money went to a legitimate corporate purpose, and that "the government [could not] prove how much money his statements alone reduced the value of the investment." *Id.* at 1159.  The court reasoned:  "what eventually happened to the investor's money is irrelevant under the MVRA because the statute provides for calculating restitution based on what the victims lost at the time of Sarad's fraudulent conduct, not afterwards." *Id.*

Similarly, in *United States v. Ageloff*, 809 F. Supp. 2d 89 (E.D.N.Y. 2011), *aff'd sub nom. United States v. Catoggio*, 698 F.3d 64 (2d Cir. 2012), involving a pump-and-dump scheme, the court held that "the victims are entitled to the return of the money they were fraudulently induced to hand over to [defendant]." *Id.* at 100.  The court rejected the defense argument that "the restitution order should account for th[e] residual value [of shares unsold in accounts of certain victims] as an offset to the government's loss total." *Id.*

## II. ANALYSIS

Applying these principles, the Court should award restitution as follows:

- $807,465,307 raised from Theranos C-1 and C-2 investors during the period of the investor conspiracy (2010 to 2015).  *See* Declaration of Robert S. Leach in Support of Supplemental Brief Regarding Restitution ("Leach Decl."), Ex. A.[2]

---

[2]   In advance of the sentencing, the government provided to Probation Office a spreadsheet evidencing $730,840,309 in C-1 and C-2 investments from late 2013 through 2015.  PSR ¶ 45.  A

- $40 million to WVC Investments, LLC, a Walgreen Co. subsidiary, which invested $40 million via a Convertible Promissory Note on or about June 5, 2012, and which submitted a sworn victim impact statement on or about September 6, 2022. *See* Leach Decl. Ex. B.
- $30 million to Safeway, which paid that amount to Theranos on August 19, 2011, on account of two Convertible Promissory Notes and a Master Services Agreement and whose then-CEO, Steve Burd, testified to the false representations made by Holmes and Balwani to Safeway. *See* Holmes TX 387, 495, 496, 5426; 10/06/21 Tr. at 2952-53, 2954-55, 2969-70, 2972-73, 2974, 2977-78, 2985-90, 2997-98.
- $100,000 to Eileen Lepera, who submitted a sworn victim impact statement for a 2011 investment. *See* Leach Decl. Ex. C.

All of these investments were made during the conspiracy to defraud Theranos investors. In its Order on Sentencing in the *Holmes* matter, with respect to loss, the Court observed that including C-1 and C-2 investors "appear[s] to have some support," noting "[g]iven the extent of Defendant's misrepresentations in widespread marketing materials and to the media for publication, it may be 'reasonable to infer that all [Series C investors] were duped by the conspiracy.'" ECF No. 1712 at p.6 n.2 (quoting *United States v. Laurienti*, 611 F.3d 530, 556 (9th Cir. 2010)); *see also id.* at 16-17. Although the Court ultimately declined to make such an inference for loss, restitution, as noted above, serves a different purpose. All of the individuals and entities described above were directly harmed by Holmes and Balwani's criminal conduct in the course of the scheme, conspiracy, or pattern, and it was entirely foreseeable that investors would lose the entirety of their investment.

In the alternative, the Court should award full restitution to the following (less any amounts returned):

---

version was filed at ECF No. 1644-1. The $807,465,307 amount includes (1) seven additional C-1 investments totaling $76,225,005, all made during the investor conspiracy and largely prior to late 2013 and (2) one $399,993 investment on December 31, 2015.

| Investor | Investment Date | Amount Invested | Amount Returned |
|---|---|---|---|
| Peer Ventures Group III, L.P. | 7/1/2010 | $45,000,000 | |
| Peer Ventures Group IV, L.P. | 6/10/2013 | $17,700,000 | |
| Hall Black Diamond II, LLC | 1/14/2014 | $4,875,000 | $3,000,000 |
| Richard Kovacevich | 1/14/2014 | $3,999,990 | |
| Richard Kovacevich | 1/14/2014 | $150,000 | |
| Lucas Venture Group IV LP | 1/14/2014 | $500,010 | |
| Lucas Venture Group XI | 1/14/2014 | $7,069,995 | |
| Mendenhall TF Partners | 1/14/2014 | $1,312,500 | |
| Black Diamond Ventures XII-B, LLC | 1/14/2014 | $5,349,900 | |
| Peer Ventures Group IV, L.P. | 1/14/2014 | $17,549,925 | |
| Peer Ventures Group IV, L.P. | 1/14/2014 | $13,249,987 | |
| Partner Investments LP | 2/7/2014 | $55,479,993 | $43,500,000 |
| PFM Healthcare Master Fund, L.P. | 2/7/2014 | $38,336,632 | |
| PFM Healthcare Principals Fund, L.P. | 2/7/2014 | $2,323,373 | |
| Mosley Family Holdings, LLC | 10/31/2014 | $5,999,997 | |
| RDV Corporation | 10/31/2014 | $99,999,984 | |
| Keith Rupert Murdoch | 2/13/2015 | $124,999,997 | |
| Alan Eisenman | 1/14/2014 | $99,990 | |
| Sherrie Eisenman | 1/14/2014 | $49,995 | |
| **TOTAL** | | $444,047,268[3] | $46,500,000 |

The Court found that each of these investors was a "victim" within the meaning of the Sentencing Guidelines and included investments by each of the above in its loss calculation. 12/07/2022 Tr. at 90 (Balwani sentencing proceeding). In its Order on Sentencing in the *Holmes* case, the Court summarized with respect to each of the above investors (except the Eisenmans): "After reviewing the evidence presented by the government, the Court found by a preponderance of the evidence that Defendant's fraudulent representations resulted in at least ten (10) victims investing a total of $381,197,283 . . . . In reaching this count and figure, the Court only included those investors who indicated they had relied on or reviewed the Theranos misrepresentations propagated by [Holmes'] conspiratorial conduct, instead of counting every Series C investor as the PSR does." ECF No. 1712 at 6; *see id.* at 13 ("The evidence supports a finding that the following investors satisfy the definition of 'victim' under the Sentencing Guidelines [listing all of the above except the Eisenmans]."); *id.* at 16 ("In

---

[3] This amount is $62,849,985 greater than the table on p.6 of the Court's Order on Sentencing (ECF No. 1712) because it includes an additional $62,700,700 in investments by Peer Ventures and $149,985 in investments by Alan and Sherrie Eisenman.

sum, the Court finds that the preponderance of the evidence supports the conclusion that the aforementioned ten investors [not including the Eisenmans] invested significant sums in reliance on Ms. Holmes' misrepresentations."). These findings support the conclusion that Holmes and Balwani's fraudulent conduct was a but-for cause of the investments above. These findings also support the conclusion that Holmes and Balwani's fraudulent conduct proximately caused the victims' losses. It was entirely foreseeable that the victims would lose their entire investment. Only full restitution will restore victims to their original state prior to the criminal act, which is the purpose of the MVRA.

Finally, in no event should restitution be less than the loss amounts found by the Court in the sentencing. ECF No. 1712 at 11-12.

## III.   PREJUDGMENT INTEREST & INVESTIGATIVE COSTS

Prejudgment interest is available under the MVRA. *Gordon*, 393 F.3d at 1058-59; *id.* at 1059 ("Prejudgment interest reflects the victim's loss due to his inability to use the money for a productive purpose, and is therefore necessary to make the victim whole." (emphasis and internal quotation omitted)). The rate of prejudgment interest "is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate." *Gordon*, 393 F.3d at 1058 n.12. Title 28 U.S.C. § 1961(a) provides that the rate "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

The MVRA also requires a defendant to "reimburse the victim for lost income . . . and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). One victim, RDV, avers in its sworn victim impact statement that it incurred "[i]n excess of $500,000 in legal fees in connection with document collections and productions, law enforcement interviews, depositions, grand jury, and trial testimony." Victim Impact Statement of RDV Corporation at p.3. An amount of $500,000 is appropriately included in any restitution award to RDV.[4]

---

[4]   In addition to submitting a victim impact statement dated September 6, 2022 and submitted to the Probation Office prior to sentencing, PFM provided a letter to the government confirming it is not

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court award restitution in the amounts described above.

DATED: January 30, 2023                                   Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

  */s/ Robert S. Leach*
JEFFREY B. SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
KELLY I. VOLKAR
Assistant United States Attorneys

---

seeking investigative costs. The letter also sets forth PFM's views regarding loss and restitution. The letter is attached as Exhibit D to the Declaration of Robert S. Leach for the Court's consideration.