JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted Pro Hac Vice)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>        Defendant. | Case No. CR-18-00258-EJD<br><br>**DEFENDANT RAMESH "SUNNY" BALWANI'S SUPPLEMENTAL SENTENCING MEMORANDUM RE: RESTITUTION**<br><br>Date:  February 17, 2023<br>Time:  9:30 a.m.<br>CTRM.: 4, 5th Floor<br><br>Hon. Edward J. Davila |

# I. INTRODUCTION

Mr. Balwani opposes the government's request for an order of restitution. Restitution is owed to victims who were "directly and proximately harmed as a result of" the offense. 18 U.S.C. § 3663A(a)(2). The government has failed to prove that the investors' losses as of the date of sentencing were directly and proximately caused by Mr. Balwani rather than by decisions made after Mr. Balwani left the company. In addition, the government has not established another statutory requirement regarding the amount of restitution: the property's value on the date of the damage or loss. *See* 18 U.S.C. § 3663A(b)(1)(B). Calculating the value of the property that investors lost as of the date of the loss—the payment of an inflated share price due to fraud as found by the Court—is unduly complicated and speculative for the Court to rely on. Under those circumstances, the restitution statute "shall not apply." *Id.* § 3663A(c)(3)(B).

Finally, the government's inflated restitution figure fails to account for all value received by those investors in various settlements.

For all these reasons, the Court should find that the government has not met its burden to prove restitution.

# II. LEGAL STANDARDS

The Mandatory Victim Restitution Act ("MVRA") requires district courts imposing sentences for fraud offenses to order restitution to victims "in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). The Act requires the Court to mandate the return of property to its owner. *Id.* § 3663A(b)(1)(A). If the return of the same property is impossible or impracticable, then defendants must pay an amount equal to:

> (i) the greater of—
> (I) the value of the property on the date of the damage, loss, or destruction; or
> (II) the value of the property on the date of sentencing, less
>
> (ii) the value (as of the date the property is returned) of any part of the property that is returned[.]

*Id.* § 3663A(b)(1)(B).

On these principles, at least, the parties agree. But the government's brief gives short shrift to other requirements for any order of restitution:

- 1 -

DEFENDANT BALWANI'S
SUPP. SENTENCING MEMORANDUM
RE: RESTITUTION
CASE NO. CR-18-00258-EJD

***Causation.*** Victims may receive restitution only for harm directly and proximately caused by the offense or scheme. 18 U.S.C. § 3663A(a)(2). The government bears the burden of proving by a preponderance of the evidence that "a person or entity is a victim for purposes of restitution, and of proving the amount of the loss." *United States v. Waknine*, 543 F.3d 546, 556–57 (9th Cir. 2008) (holding that district court erred by relying exclusively on one-page loss summaries provided by the victims and in not requiring more detailed explanations of the losses each victim suffered). In determining the proper amount of restitution, courts may use "only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *Id.* at 557.

To be included in restitution, the loss incurred must be the "direct and foreseeable result" of the offense. *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002). "But for" causation alone is thus insufficient. *See, e.g.*, *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011). As a result, a court may order restitution "only for loss that flows directly from the specific conduct that is the basis of the offense of conviction." *United States v. May*, 706 F.3d. 1209, 1214 (9th Cir. 2013) (internal quotation marks omitted). While there may be "multiple links in the causal chain" between a defendant's conduct and the victim's specific losses, that "chain may not extend so far … as to become unreasonable." *Id.* at 1262–63. And "any … intervening cause[] must be directly related to the defendant's conduct." *Id.*

***No windfall.*** "A district court may not order restitution such that victims will receive an amount greater than their actual losses; to do so is plain error." *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011). "This is necessarily a backward-looking inquiry that takes into account what actually happened, including whether the victim managed to recover some or all of the value it originally lost." *United States v. Innarelli*, 524 F.3d 286, 294 (1st Cir. 2008) *superseded by rule on other grounds as stated in United States v. Carrasquillo-Vilches*, 33 F.4th 26 (1st Cir. 2022); *see also United States v. Oladimeji*, 463 F.3d 152, 160 (2d Cir. 2006) (observing that, had lender who was induced into making home-equity loan by defendant's fraudulent documentation recouped money from resale of home after foreclosure, defendant would have been entitled to an offset in that amount under 18 U.S.C. § 3663A(b)(1)(B)).

***No undue complexity.*** Last, even if the Court finds that some persons are victims under

the statute, the restitution statute "shall not apply" if the Court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution … is outweighed by the burden on the sentencing process." *Id.* § 3663A(c)(3)(B).

### III.     ANALYSIS

No matter which date is used to calculate restitution for the offenses found by the jury—the value of the property on the date of the loss or on the date of sentencing, 18 U.S.C. § 3663A(b)(1)(B)—the government's proof fails.

### A.     The government cannot show the value of the property at issue on the date of the loss.

To prove the actual loss incurred by victims that should be awarded in restitution, the government must show both direct and proximate causation by a preponderance of the evidence. But as Mr. Balwani explained in his sentencing memorandum, the jury's general verdicts shed no light on what investors relied on when they bought the shares, and therefore, there is no way to know which representations were found by the jury to have been fraudulent, and which of those caused the relevant investments. *See* Dkt. 1664-3 at 23. The experience of Theranos investors widely varied: some saw financials, others did not; some met with the defendants, others did not. The investors had a wide range of access to information. Few testified at trial or submitted claims for restitution or victim impact statements.

On this basis alone, the government has not adequately supported its position.[1] By failing to provide evidence with "sufficient indicia of reliability" for each of the investors for whom it seeks restitution, the government has not proven its theory by a preponderance of the evidence. *Waknine*, 543 F.3d at 557. The spreadsheet the government attaches shows nothing about direct and proximate causation or what representations investors relied on.

---

[1] The government's reliance on *United States v. Sarad*, 227 F. Supp. 3d 1153, 1158–60 (E.D. Cal. 2016), is misplaced. There, the defendant's plea agreement acknowledged that every investor for whom the government sought restitution was exposed to his material misrepresentations. *Id.* Neither the jury's verdict nor other evidence establishes the same for Theranos' investors. And unlike Mr. Balwani, nothing suggests that the defendant in *Sarad* relinquished all influence over the company in which victims invested years before the value of those investments dissipated. *Id.*

To be sure, the Court identified specific victims at Mr. Balwani's sentencing, and calculated a loss of $120 million for sentencing purposes. Coopersmith Decl., Ex. A (12/7/22 Tr.) at 85–89, 92–93. And that calculation was based on the Court's determination that the identified investors had lost money in the amount that they overpaid for Theranos stock, whose value the Court found had been inflated due to fraud. *Id.* at 90.

But there are differences between determining loss for sentencing and determining loss for restitution. Critically, under the Guidelines, a court need only "reasonabl[y] estimate" loss. U.S.S.G. § 2B1.1 note 3(C). Restitution, by contrast, may be awarded for no more than victims' actual losses. *Rizk*, 660 F.3d at 1137. These principles often lead to restitution awards far less than the amount of loss under the Guidelines. *See, e.g.*, *United States v. Patterson*, 595 F.3d 1324, 1326–27 (11th Cir. 2010) (affirming loss amount more than double restitution); *United States v. Newsom*, 281 F. App'x 464, 466–67 (6th Cir. 2008) (unpublished) (same).

Given these principles, the task of calculating each victim's actual losses—and which of them and to what extent those losses were proximately caused by representations the jury found to be fraudulent—would overly complicate the sentencing process, and warrants dispensing with restitution. 18 U.S.C. § 3663A(c)(3)(B). The Court must account for not only the actual value of property lost, but also whether the victim managed to recover some of that value.[2] *See Innarelli*, 524 F.3d at 294. But as the Court knows from the sentencing hearing, this task is exceedingly complex. Even the government's expert acknowledged that Theranos had massive value from its intangible assets, for which investors received meaningful compensation in the form of valuable Theranos stock. *See, e.g.*, Dkt. 1645 at 46, 49. And applying more reasonable assumptions, Mr. Balwani's experts have shown that the government's expert analysis undervalued Theranos stock by hundreds of millions of dollars—thus inflating loss under the Guidelines by tens of

---

[2] The government also fails to provide any information on whether investors were able to offset other income with tax losses reported from their Theranos investments. If such offsets are not accounted for, investors would receive a windfall beyond any actual losses in Theranos because they will have been able to effectively reduce their losses through tax savings. *Cf. United States v. Kruschke*, 2009 WL 499335, at *2 n.3 (E.D. Wis. Feb. 27, 2009) (noting that some of the reduction of a defendant's restitution obligations stemmed from a tax write-off taken by the victim).

millions of dollars. Dkt. 1664-3 at 35–37. This value must factor into determining any actual loss.

On that score, the government's citation to *United States v. Ageloff*, 809 F. Supp. 2d 89 (E.D.N.Y. 2011), *aff'd sub nom. United States v. Catoggio*, 698 F.3d 64 (2d Cir. 2012), is unavailing. In fact, *Ageloff* expressly distinguished securities fraud conspiracies where the defendants promote worthless stock from offenses involving "cooking the books and propping up a company's stock but not … render[ing] the company worthless." *Id.* at 100 (initial brackets omitted). Here, the Court has already found that Theranos' stock was far from worthless.

Moreover, the analysis the Court relied on for calculating loss also rested on assumptions that were—in the words of Mr. Balwani's expert—"highly dependent on and sensitive to" inputs that are inherently speculative. Dkt. 1664-3 at 37 (quoting Rieff Decl. ¶¶ 4-5). While Mr. Balwani maintains his position that the Court's calculation of loss at sentencing was too speculative to be reliable, he recognizes that the Court found otherwise. But for determining the actual losses each investor victim incurred for restitution, the uncertainty is too great without committing the "plain error" of awarding investors more than their actual losses. *See Rizk*, 660 F.3d at 1137.

At the very least, the Court's restitution order should not exceed what it found to be the loss at sentencing, minus the statutorily mandated reductions for value received since the time of the loss. For the victims identified by the Court, the government acknowledges these required offsets: the $43.5 million returned to PFM as part of a settlement agreement and the $3 million returned to Hall Black Diamond. *See* Dkt. 1726 at 6.

**B.    Intervening causes make it impossible to attribute investors' loss at the time of sentencing to Mr. Balwani.**

Turning to the value of property lost at the time of sentencing, intervening causes break the causal chain and sever the connection between Mr. Balwani's conduct and the C-1 and C-2 investors' total losses.

As Mr. Balwani explained at length in his sentencing memorandum, he left Theranos in May 2016 and no longer had any influence over the company's governance or operational decisions. *See* Dkt. 1664-3 at 32-35. More than two years passed before Theranos dissolved, and more than six years passed before Mr. Balwani was sentenced. The diminution in the value of

investors' Theranos stock was not attributable to Mr. Balwani. A critical and undisputed fact that the government seems to ignore is that when he left, Theranos had more than $350 million in cash and an IP portfolio that may have been worth even more than the total value of investments. *See id.* But what to do with that value was a decision in the hands of Theranos' executives and Board, not Mr. Balwani. It was not merely the passage of time or fluctuations in the market that led to Theranos' shuttering. After Mr. Balwani left Theranos, the company's board, officers, and investors charted the course for Theranos' operations, corporate governance, and business strategy going forward. Mr. Balwani had no role in these decisions because he was no longer at the company.

For example, in 2017, months after Mr. Balwani's departure, investors were approving transactions like a significant loan secured by Theranos' IP portfolio and major changes to Theranos' governance to maximize the company's value as an ongoing concern and protect their investments. *See, e.g.*, Dkt. 1665-6 at 51–63. Many investors, including almost all those identified by the Court as victims, entered into a May 2017 agreement to exchange their preferred shares in Theranos for a new class of shares with superior rights, in a transaction that still reflected Theranos' immense value even then. *See* Coopersmith Decl., Ex. B (Exchange & Settlement Agreement). All these decisions were made with no input from Mr. Balwani and well after he left the company.

Any causal nexus between the complete loss of value of Theranos stock and Mr. Balwani's actions is too attenuated given these facts. *See United States v. Swor*, 728 F.3d 971 (9th Cir. 2013) (holding that, where defendant had severed ties with fraudulent company and co-defendant before company's dissolution, restitution was improper for losses incurred by victims of a different individual that defendant had merely introduced to a co-schemer); *see also United States v. Meksian*, 170 F.3d 1260 (9th Cir. 1999) (holding that, while the defendant made false statements to the victim bank in the process of securing a loan, the victims' intervening reliance on a third-party report broke the causal chain); *United States v. Ward*, 2013 WL 57855, at *3–5 (N.D. Cal. Jan. 3, 2013) (determining, as to challenged categories of restitution, that defendants convicted of conspiracy and wire fraud were responsible for "some, but not all" of investors'

losses because of intervening recession and because government failed to support specific misrepresentations made to other victims, for whom impact statements that they "felt deceived and that their trust had been violated" were insufficient).

The years of active decision-making and changes to Theranos' operations cannot be laid at Mr. Balwani's feet. Those decisions turned a company with hundreds of millions of dollars in cash and hundreds of millions more dollars of IP (even after revelation of the facts the jury found fraudulent) into a dissolved company worth nothing. They also took the value of Mr. Balwani's own investment in Theranos from millions of dollars to zero. Even if these intervening causes of loss were not deemed relevant by the Court for guidelines loss amount purposes, given the Court's decision to calculate loss as of December 2014, the intervening causes must be considered for restitution purposes and should lead the Court to deny the government's restitution request.

C.     **The government's exorbitant restitution figure contains other errors.**

The nearly $900 million restitution order that the government seeks to impose on Mr. Balwani is beyond anyone's ability to pay. But the government's request is plagued by several other errors.

First, the government ignores the $15.5 million dollar payment to Safeway paid in accordance with a settlement agreement. *See* Coopersmith Ex. C (Safeway Settlement). Tellingly, Safeway was among the vast majority of investors who did not submit a claim for restitution. The government's oversight raises grave doubts about the reliability of the one-page investor spreadsheet attached to the government's brief. *Compare* Dkt. 1726-2 at 2, *with Waknine*, 543 F.3d at 556–57 (rejecting district court's reliance on only a one-page loss summaries provided by the victims and in not requiring more detailed explanations of the losses each victim suffered).

Second, the government's questionable inclusion of several investors in the list of those for whom it seeks restitution raises similar doubts. For instance, two investments (Larry Fitzgerald and Riley and Susan Bechtel) on the spreadsheet filed by the government were made after the publication of the *Wall Street Journal* article in October 2015. *See* Dkt. 1726-2 at 2

(showing investment dates of 12/31/2015 and 2/3/2016). The government offers no account of how these investment decisions could have been caused by fraud when the conduct and representations at issue had already been made public. Identifying Bois Schiller & Flexner and David Bois as "victims" is similarly dubious given their intimate role in the conduct.

Third, neither the government nor Walgreen's impact statement substantiates the requested $40 million dollars in restitution to Walgreens by a preponderance of the evidence. *See* Dkt. 1725 at 5; Dkt. 1726-3; *see also Ward*, 2013 WL 57855, at *5. Given the showing at trial—that Walgreens had Theranos' devices for years before clinical testing began, that Walgreens' chief medical officer reviewed the accuracy of Theranos' testing before it was offered in Walgreens' stores, and that the promises reflected in the very services agreement (TX 617) that gave rise to the promissory note at issue were the product of mutual decision-making—the evidence does not show reliance on fraudulent misrepresentations.

Fourth, while the victim-impact statement submitted by Eileen Lepera states that she "lost $100,000" in her Theranos investment, she nowhere clarifies whether this reflects what she paid for those shares, which she bought from Don Lucas. *See* Dkt. 1726-4 at 1–2. There is no basis on which to conclude that the defendants' statements caused her loss.

**D.     The Court should waive interest and suspend payments on any award of restitution.**

If the Court adopts any of the government's proposals on restitution, the resulting award will be well beyond the ability of Mr. Balwani—or almost anyone else—to pay. The Court should therefore exercise its discretion to waive the requirement for interest. *See* 18 U.S.C. § 3612(f)(3) (authorizing court to waive on restitution interest if it determines that the defendant does not have the ability to pay interest). The Court should also order that Mr. Balwani's obligation to pay restitution be suspended during any period in which he is incarcerated.

## IV. CONCLUSION

The complexity of determining restitution justifies dispensing with it. If any restitution is ordered, it must account for all the value that investors received.

DATED: February 10, 2023          Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Jeffrey B. Coopersmith*
    Jeffrey B. Coopersmith

    Attorney for Defendant
    RAMESH "SUNNY" BALWANI