UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No.   5:18-cr-00258-2 EJD<br><br>**ORDER DENYING MOTION FOR RELEASE PENDING APPEAL**<br><br>Re: ECF No. 1711 |

Following a three-month trial, a jury returned a verdict of guilty as to Ramesh "Sunny" Balwani on all twelve counts of the Third Superseding Indictment.  The Court subsequently sentenced Mr. Balwani to 155 months of imprisonment with a surrender date of March 15, 2023. Now before the Court is Mr. Balwani's Motion for Release Pending Appeal, which has been fully briefed and heard.  ECF Nos. 1711, 1725, 1729.  Having considered the record, the submitted briefing, and oral arguments, the Court DENIES the Motion.

## I.    PROCEDURAL BACKGROUND

On July 7, 2022, a jury convicted Ramesh "Sunny" Balwani on twelve counts, consisting of one (1) count of conspiracy to commit wire fraud and six (6) counts of wire fraud against Theranos investors and one (1) count to conspiracy to commit wire fraud and four (4) counts of wire fraud against Theranos paying patients, in violation of 18 U.S.C. §§ 1343 and 1349.

On December 7, 2022, the Court sentenced Mr. Balwani to 155 months of imprisonment to be served concurrently, followed by 3 years of supervised release to be served concurrently.  The Court also set a self-surrender date for Mr. Balwani at 2:00 p.m. on March 15, 2023.  Mr. Balwani filed his Notice of Appeal on December 20, 2022, and this Motion for Release Pending Appeal

("Motion") followed shortly thereafter on January 9, 2023.  On February 17, 2023, the Court heard oral arguments on Mr. Balwani's Motion.

## II.      LEGAL STANDARD

Per 18 U.S.C. § 3143(b), a defendant who has been found guilty and sentenced to a term of imprisonment must be detained, even if an appeal has been filed.  However, a court may allow the defendant to be released pending appeal if it makes the following four findings:

1. The defendant has demonstrated by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person in the community if released;

2. The appeal is not for purpose of delay;

3. The appeal raises a substantial question of law or fact; and

4. If that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).  On a motion for release pending appeal, the burden of proof shifts from the government to the defendant to demonstrate entitlement to release.  *Id.*

## III.     FLIGHT RISK AND DANGER TO COMMUNITY

As to the first element, the Court considers whether Mr. Balwani is likely to flee or pose a danger to the safety of the community.  The government does not affirmatively introduce any new evidence in support of this factor (nor are they required to); rather, it argues that Mr. Balwani has failed to satisfy this required showing by clear and convincing evidence.[1]  Opp. 5–10.

The Court is satisfied that Mr. Balwani has presented clear and convincing evidence that he is not likely to flee or pose a danger.  Mr. Balwani has been a naturalized U.S. citizen for over 23 years and maintains strong ties with his two brothers, also U.S. residents, who attended every day of his trial.  Mr. Balwani has also demonstrated a history of compliance with the terms of his release, including seeking and obtaining court approval to release his passport in anticipation of international travel to India.  ECF No. 401.  When COVID-19 travel restrictions ultimately

---

[1] The government does not argue that the instant Motion is brought for the purpose of delay.

United States District Court
Northern District of California

1    rendered those travel plans infeasible, Mr. Balwani returned his then-renewed passport to the

2    government on request.  ECF No. 557.  The Court is also not aware of any indication that Mr.

3    Balwani was a flight risk during the five months when he was in possession of his valid passport.

4         Additionally, Mr. Balwani has demonstrated that he is not likely to pose a danger to the

5    safety of any person in the community if released.  Mr. Balwani was convicted of non-violent—

6    though nonetheless serious—crimes that occurred by virtue of his influence and position at

7    Theranos.  Today, Mr. Balwani is in no position to inflict similar harms of fraud on the

8    community, and the Court is unaware of any evidence that he is likely to commit acts of deception

9    or fraud in his everyday life.  The government's recitation of the events giving rise to Mr.

10   Balwani's investor and patient fraud convictions provides limited insight into the risk he poses

11   today to the community, removed from the artifices that enabled his criminal activity.

12        The Court, accordingly, finds that Mr. Balwani has provided clear and convincing

13   evidence that he is neither a flight risk nor a danger to the community.

14   **IV.   "SUBSTANTIAL QUESTION" AND "LIKELIHOOD OF REVERSAL"**

15        The Court next considers in tandem whether Mr. Balwani's "appeal raises a substantial

16   question of law or fact" and whether a favorable determination on that question would be "likely

17   to result in reversal or an order for new trial."  *Handy*, 761 F.2d at 1283.

18        The "substantial question" requirement defines the level of merit required of the question

19   presented.  *Handy*, 761 F.2d at 1280.  The Ninth Circuit has held that a "substantial question" is

20   one that may be "fairly debatable" or "fairly doubtful."  *Id.* at 1283.  It must present "something

21   more than the absence of frivolity" or issues "debatable among jurists of reason."  *Id.* at 1281–82

22   (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  The question, however, need not be a

23   "close" one.  *Handy*, 761 F.2d at 1282 n.2.

24        On the other hand, the "likelihood of reversal or new trial" requirement defines the "*type* of

25   question that must be presented" for appeal.  *Handy*, 761 F.2d at 1281 (emphasis added).  This

26   analysis, therefore, "does not involve assessing the likelihood that a reversal will occur in the

27   particular case."  *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).  Rather, the

28   Court must find the question presented to be "so integral to the merits of the conviction on which

United States District Court
Northern District of California

defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).  Put differently, the question cannot be one that would be considered harmless, would have no prejudicial effect, or was insufficiently preserved.  *Id.*

In sum, the Court must assess whether Mr. Balwani has presented the correct *type* of question that has met the necessary *level of merit*.  Because the "likelihood of reversal" inquiry is a more straightforward and largely binary determination, the Court will first review each question Mr. Balwani presented for satisfaction of this categorical requirement.  If the question for appeal passes this inquiry, the Court will then proceed to consider whether that question is a substantial one, *i.e.*, fairly debatable or fairly doubtful.

### A.     Constructive Amendment

Mr. Balwani first argues that, by admitting evidence concerning the accuracy and reliability of traditional commercial blood-testing technology used at Theranos, the Court permitted the Third Superseding Indictment ("TSI") to be constructively amended because the indictment can only be construed to allege fraud pertaining to Theranos's proprietary technology, not commercial blood-testing technology.  Mot. 6–11.  Specifically, Mr. Balwani challenges the denial of his motion to exclude the testimony from the Centers for Medicare and Medicaid Services ("CMS") regarding Theranos's lab conditions.  Mot. 6–11; *see also* ECF No. 1326, at 7–8, Feb. 28, 2022.  In its prior order, the Court had rejected Mr. Balwani's interpretation, finding that the TSI's language is broad enough to encompass *all* facets of Theranos's blood testing services, both proprietary and commercial.  ECF No. 1326, at 8.

#### 1.     Likelihood of Reversal

The U.S. Supreme Court has declared that "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960).  However, minor differences between an indictment and the proof offered at trial could be dismissed as "nothing more than a variance." *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006) (quoting *Stirone*, 361 U.S. at 217).  "[A]

constructive amendment requires reversal, while a variance does not, unless it prejudices the defendant's substantial rights." *Hartz*, 458 F.3d at 1020.

The Court finds that, assuming the Ninth Circuit were to agree with Mr. Balwani's constructive amendment theory and its application to all twelve convictions, it would likely result in the reversal of all counts on which imprisonment has been imposed. As noted above, constructive amendment is a *per se* violation of the Fifth Amendment's Grand Jury Clause that would always require reversal if established. *See, e.g.*, *Hartz*, 458 F.3d at 1020. At the Motion hearing, Mr. Balwani also clarified that the question he raises is one of constructive amendment and rejected the suggestion that there may instead be a variance. *See* 2/17/23 Hr'g Tr. 47:4–13.

The government argues that, even if an appellate court were to accept his constructive amendment argument, Mr. Balwani's convictions are amply supported by other evidence and misrepresentations to investors. Opp. 10-12. However, the issue raised here on a constructive amendment challenge is not necessarily one of the evidence's sufficiency but rather one of kind, *i.e.*, whether "the proof offered at trial matche[s] the charges made in the indictment." *Hartz*, 458 F.3d at 1021. Therefore, the fact that there were other misrepresentations on which the jury could have permissibly convicted Mr. Balwani does not preclude the possibility that it *may* have convicted him on an impermissible set of facts. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (listing constructive amendment cases where jury instructions "permitted" jury to convict on a divergent complex of facts).

Accepting the merits and scope of Mr. Balwani's proposed argument, the Court finds that the constructive amendment argument would be the "type of question that must be presented" for Mr. Balwani to prevail on his Motion, *i.e.*, it is likely to result in reversal or a new trial if determined favorably to him on appeal. *Handy*, 761 F.2d at 1281. The Court proceeds to consider whether this question is indeed a sufficiently substantial one that can be fairly debated.

### 2. Substantial Question

Mr. Balwani argues the TSI only alleges that defendants made misrepresentations, *inter alia*, about the accuracy of proprietary Theranos technology, yet the jury heard evidence and was permitted to convict him based on misrepresentations about the accuracy of non-proprietary

commercial testing.  Mot. 6–7.  The government responds that the TSI can be fairly read to allege—and provided notice to Mr. Balwani of—a scheme involving misrepresentations as to both proprietary and commercial blood testing.  Opp. 14–16.

      The Court first provides a preliminary clarification.  Although the parties have primarily focused their briefs on how the TSI should be interpreted, the proper construction of the TSI is *not* a question that is likely (on its own) to result in reversal or new trial.  As the Court discussed above, the question presented that satisfies the "likelihood of reversal" requirement is whether the TSI has been constructively amended.  *See supra* Section III(B)(1)(a); *Handy*, 761 F.2d at 1283.  When considering constructive amendments, the Ninth Circuit does not focus solely on how an indictment may be interpreted but instead has often compared the "complex of facts" charged in the indictment with the "complex of facts" presented at trial and permitted by the jury instructions.  *See Adamson*, 291 F.3d at 615 (defining constructive amendment as a "complex of facts presented at trial *distinctly different* from those set forth in the charging instrument") (emphasis added) (brackets omitted); *Hartz*, 458 F.3d at 1021 (noting that constructive amendment cases typically involve a "difference between the indictment and the jury instructions [that] allowed the defendant to be convicted on the basis of *different behavior* than that alleged in the original indictment") (emphasis in original).  In so comparing, the Ninth Circuit often distinguishes constructive amendment from a variance, which "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."  *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984); *see also Adamson*, 291 F.3d at 615 (compiling constructive amendment and variance cases); *Hartz*, 458 F.3d at 1021 (holding that convictions permitted "despite variance so long as the variance does not alter the behavior for which the defendant can be convicted") (brackets and ellipses omitted).

      From this body of Ninth Circuit constructive amendment cases, the Court has distilled at least three relevant inquiries for evaluating Mr. Balwani's question of whether the TSI has been constructively amended: (1) fairly read, what facts and behavior are charged in the TSI's allegations; (2) what facts and behavior were permitted as bases for the jury's convictions; and (3) if there is a divergence between the facts in the indictment and the facts permitted as bases for the

jury's convictions, does that divergence more closely resemble an amendment or a variance? The Court considers Mr. Balwani's arguments as to each, recognizing that he must present a fairly debatable "substantial question" as to constructive amendment overall and not just any one facet.

### a.   TSI Interpretation

As to the first inquiry, the Court agrees with Mr. Balwani that the TSI's language—including what specific Theranos blood tests are encompassed by its allegations of misrepresentations and falsity—is open to fair debate, at least as to Mr. Balwani's interpretation regarding Theranos's commercial blood testing. Although it had previously rejected Mr. Balwani's interpretation in favor of the government's—and remains doubtful of this interpretation—the Court recognizes that "it is not enough that [the Court is] unimpressed." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955).

Here, the TSI's language is not so clear and unassailable that it would preclude any fair debate as to alternative interpretations. For instance, the TSI does not directly allege that Theranos's commercial tests were not, in fact, "accurate, fast, reliable, and cheap" as advertised. TSI ¶ 15. By contrast, the TSI *does* directly allege that Theranos's proprietary blood tests "w[ere], in fact, not capable of consistently producing accurate and reliable results." TSI ¶ 16. Taken together, the direct allegations regarding the *proprietary* tests' inaccuracies, combined with the absence of similar allegations regarding the *commercial* tests' inaccuracies, could support an interpretation that the TSI's alleged falsity only extended to Theranos's *proprietary* blood tests. At the very least, the Court is satisfied that the proper common-sense interpretation of what specific facts and behavior are alleged in the TSI can be a "debatable [question] among jurists of reason." *Handy*, 761 F.2d at 1282.

### b.   Evidence at Trial and Jury Instructions

As to the second inquiry, even if it accepts Mr. Balwani's interpretation of the TSI, the Court is unable to identify a "fairly debatable" question that the jury may have convicted Mr. Balwani on the disputed factual bases, *i.e.*, for misrepresentations regarding Theranos's non-proprietary and commercial testing. Here, the jury instructions provided affirmative guardrails to

United States District Court
Northern District of California

protect against the possibility of conviction on those bases, specifically to avoid finding liability based on regulatory deficiencies of Theranos's laboratory testing or medical devices.

The two relevant jury instructions here are Jury Instruction Nos. 15 and 28, which state:

Instruction No. 15, Activities Not Charged: You are here only to determine whether Mr. Balwani is guilty or not guilty of the charges in the indictment.  *Mr. Balwani is not on trial for any conduct or offense not charged in the indictment*.

Instruction No. 28, Alleged Violations of Regulations and Industry Standards: You have heard evidence regarding alleged violations of regulations and industry standards.  You may consider such evidence, along with other evidence, limited to any purposes for which such evidence was admitted, in assessing whether the government has proved each of the counts charged in the indictment.  However, *you may not find Mr. Balwani liable for any of the offenses alleged in the indictment merely because he or Theranos may have violated federal or state regulations or because Mr. Balwani or Theranos may have engaged in negligent practices or violated industry standards related to laboratory testing or medical devices*.

ECF No. 1630 (emphasis added).

Though couched in somewhat general terms, Instruction No. 15 nonetheless cautioned the jury against finding guilt as to "conduct or offense not charged in the indictment," an instruction that the Ninth Circuit recently had found relevant in rejecting a constructive amendment challenge. *See United States v. Heredia*, 2022 WL 2301993, at *2 (9th Cir. June 27, 2022) (quoting nearly identical jury instruction).  Additionally, Instruction No. 28 quite clearly instructs the jury *against* convicting Mr. Balwani merely because "Theranos may have engaged in negligent practices or violated industry standards related to laboratory testing or medical devices."  Although this language does not directly call out Theranos's commercial testing, the resulting proscribed set of facts overlaps almost entirely with the evidence Mr. Balwani had moved to exclude, ECF No. 1326, at 7, as well as the "complex of facts" he now claims the jury may have impermissibly convicted him on.  *See* Mot. 7, 9–10 (objecting to evidence regarding "regulatory deficiencies related to Theranos' use of ordinary commercial devices" and "alleged regulatory violations (including an immediate jeopardy finding) corresponding mainly to non-Theranos devices").

At oral arguments, Mr. Balwani argued that these jury instructions were "quite precise" and would not have any impact on the asserted constructive amendment error, which he claimed was a "structural error."  *See* Hr'g Tr. 46:22–47:2, Feb. 17, 2023.  This assertion, however, runs counter to the significant body of Ninth Circuit authority that have considered jury instructions at

United States District Court
Northern District of California

length to determine whether an indictment has been constructively amended. *See, e.g.*, *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) ("[T]he determination of whether a constructive amendment has been effected requires sensitivity to both the jury instructions as a reflection of the indictment, and to the nature of the proof offered at trial."); *United States v. Arreola*, 467 F.3d 1153, 1162 (9th Cir. 2006) (rejecting constructive amendment argument after "considering the jury verdict form in light of the court's instructions and the trial as a whole").

Furthermore, contrary to Mr. Balwani's suggestion that a general verdict prevents the Court from determining the basis for the verdict, the Ninth Circuit has expressly acknowledged that jury instructions can provide assurances that the jury convicted the defendant based solely on certain conduct instead of other impermissible conduct. *See Ward*, 747 F.3d at 1191 ("Typically, that assurance will be provided by jury instructions requiring the jury to find the conduct charged in the indictment before it may convict."). Likewise, here, Jury Instructions Nos. 15 and 28 were prophylactic measures informing the jury that they *could not* convict Mr. Balwani based solely on the evidence he sought to exclude—*i.e.*, the CMS testimony and regulatory finding regarding Theranos's commercial devices—thereby undermining a finding that the indictment had been constructively amended to permit conviction on that "complex of facts."

Mr. Balwani's cited excerpts from the government's closing argument also do not evidence an improper invitation for the jury to convict based on "problems related to ordinary commercial technology." Mot. 10. The government's references to Theranos's inability to run accurate blood tests does not misstate the indictment; in fact, they track it. *See, e.g.*, TSI ¶¶ 15 ("Theranos's ability to provide accurate . . blood tests and test results"); 17(A) ("materially false and misleading information concerning the accuracy and reliability of Theranos's blood testing services"). Similarly, the government's references to the CMS findings and inspection also do not, *ipso facto*, invite convictions based improperly on the inaccuracies of Theranos's commercial testing. Mot. 10. Although the CMS findings mostly addressed regulatory deficiencies with Theranos's commercial devices, certain deficiencies were nonetheless directed at Theranos's proprietary device. And if there were any ambiguities regarding how the CMS findings fit into the case, the jury was instructed against improperly relying on those findings by Jury Instruction No. 28.

Considering the evidence presented and instructions provided to the jury, the Court cannot find that it is "fairly debatable" that the jury may have convicted Mr. Balwani based solely on the accuracy and reliability issues relating to Theranos's commercial non-proprietary blood testing.

### c.    Amendment vs. Variance

Finally, assuming *arguendo* that there are differences between the allegations asserted in the TSI and the evidence presented at trial, the Court finds that any such divergence would more closely resemble a variance than a constructive amendment.  As presented by Mr. Balwani, the two divergent complexes of fact are (1) misrepresentations regarding the accuracy of Theranos's proprietary tests as alleged in the TSI; and (2) misrepresentations regarding the accuracy of commercial tests conducted by Theranos as presented at trial for the jury.  Mot. 6–7.

Even accepting this juxtaposition, there is no "fairly debatable" question that this divergence constitutes a variance because "here, there is but one set of facts with a single divergence, namely, the content of the misrepresentation." *Adamson*, 291 F.3d at 615–16.  In *Adamson*, the Ninth Circuit held that, where the indictment had alleged misrepresentations of the fact that servers had been upgraded but the jury was permitted to convict based on misrepresentations of *how* the servers were upgraded, there was no constructive amendment, though it did ultimately find the variance to be prejudicial. *Id.*  Similarly, Mr. Balwani's constructive amendment challenge amounts to a single divergence as to the content of his misrepresentations (*i.e.*, whether the misrepresentations related to the accuracy and reliability of all Theranos blood tests or only Theranos proprietary blood tests).  Mot. 6–7.

Mr. Balwani's response at oral argument—that the divergence here is "too fundamental" simply because it touched upon the accuracy and reliability of Theranos's tests—also fails to raise a "fairly debatable" question.  Hr'g Tr. 47:4–13.  Here, the elements of wire fraud as set forth in Jury Instruction No. 20 required a finding that Mr. Balwani participated in "a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  ECF No. 1630.  Whether the jury found the requisite fraudulent representations to be those pertaining to Theranos's proprietary technology or those regarding Theranos's non-proprietary blood tests does not present two "distinctly different"

complexes of fact, nor does it indicate that Mr. Balwani was convicted for "different behavior" than what was alleged in the TSI. *Adamson*, 291 F.3d at 615; *Hartz*, 458 F.3d at 1021. The mere fact that those misrepresentations involved the "fundamental" topic of accuracy does not widen or transform that limited difference.

The divergence in this case is also consistent with those in other circuit decisions that have rejected a finding of constructive amendment in favor of finding a variance instead. *See, e.g.*, *Hartz*, 458 F.3d at 1019 (finding variance where indictment alleged crimes involving two specific firearms but jury convicted based on a different weapon); *Von Stoll*, 726 F.2d at 586 (finding variance where "[t]he only inconsistency is that the indictment specified that [defendant] took the money from one partner, while the proof showed he got it from the other"); *United States v. Olson*, 925 F.2d 1170, 1175 (9th Cir. 1991) ("What matters on this mail fraud indictment is that [defendant] fraudulently obtained the use of others' money. Whether he intended that the effects of his fraud be permanent or temporary has no legal relevance."); *see also United States v. Dupre*, 462 F.3d 131, 141 (2d Cir. 2006) (finding no constructive amendment where "the particular wire transfer identified in the indictment was not proven at trial"). The considerable weight of this case law leaves little to no room for fair debate on whether the alleged divergence here could constitute constructive amendment.[2]

\* \* \*

Although Mr. Balwani has raised a fairly debatable question as to whether the TSI could be interpreted in his favor, he has not demonstrated that there can be fair debate as to the overall question of whether the TSI has been constructively amended throughout the course of trial. The jury instructions provided clear and precise boundaries to ensure the jury did not convict on conduct not charged in the TSI. Furthermore, even if the Court were to accept the two divergent

---

[2] The Court recognizes that variances may nonetheless warrant reversal if they prejudiced defendants' substantial rights. Here, however, Mr. Balwani has expressly dispelled any notion that he is arguing for a variance and has not made a showing that the variance prejudiced his substantial rights. *See* 2/17/23 Hr'g Tr. 47:4–13. Accordingly, the Court does not analyze whether Mr. Balwani would have been able to present a "substantial question" on a reversible variance theory as opposed to his constructive amendment theory.

"complexes of fact" as suggested by Mr. Balwani, the degree and nature of this divergence would only amount to a variance instead of a constructive amendment.

Accordingly, the Court finds that Mr. Balwani has failed to establish a "substantial question" as to whether the TSI has been constructively amended.

### B.    Improper Lay Testimony

Mr. Balwani also argues that certain testimony provided by Erika Cheung, Mark Pandori, and Adam Rosendorff were improperly admitted without being qualified as experts.  Mot. 11–12.

On appeal, the erroneous admission of expert testimony is subject to harmless error review, which means reversal is required only if the error is prejudicial.  *United States v. Wells*, 879 F.3d 900, 923 (9th Cir. 2018).  If it is more probable than not that the jury would have reached the same verdict had the evidence not been admitted, then there is no prejudice.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010).[3]

Mr. Balwani argues that certain testimony from Ms. Cheung, Dr. Pandori, and Dr. Rosendorff was expert testimony erroneously admitted without expert qualification.  Mot. 11–13. Notably, a favorable decision to Mr. Balwani would not have operated to exclude the entirety of these witnesses' testimony because certain portions of their testimony are indisputably admissible, such as the details of their jobs at Theranos, the events they witnessed, and the things they said or did.  *See* Reply 6.  The only portions Mr. Balwani challenges are those relating to testimony regarding Theranos device accuracy that involved scientific, technical, or other specialized knowledge.  Mot. 13.

Although accuracy and reliability were certainly salient points of the government's case, it is not true that *all* of Mr. Balwani's convictions called for a determination of Theranos's testing accuracy.  For instance, multiple investors had expressed shock upon learning that Theranos was using third-party machines instead of its own proprietary devices to conduct blood tests, evidencing a misrepresentation relevant to investors that does not turn on the accuracy of

---

[3] The Court notes at the outset that this standard alone distinguishes the "likelihood of reversal" analysis from the analogous analysis on the constructive amendment question, where reversal was *required* if the appellate court found a constructive amendment.  *See supra* Section III(B)(1)(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Theranos's technology.  *See* Opp. 10–11 (citing trial transcripts).  In other words, even if the Ninth

2    Circuit were to agree with Mr. Balwani that lay testimony regarding the accuracy of Theranos

3    technology was improperly admitted, there would nonetheless remain some bases for Mr.

4    Balwani's convictions that would undermine a likelihood of reversal or new trial on all counts on

5    which imprisonment was imposed.

6            Because the admission or exclusion of the relevant witnesses' testimony is not "so integral

7    to the merits" of (at least) the investor fraud convictions, the Court cannot find that a favorable

8    appellate determination on this question would be likely to result in reversal or a new trial.  *Miller*,

9    753 F.2d at 23.  The Court accordingly does not consider whether this question has reached the

10   requisite level of merit or substantiality to justify release pending appeal.

11           **C.      Tolbert Testimony**

12           Mr. Balwani asserts that the government committed *Napue* misconduct by soliciting

13   testimony from Bryan Tolbert, the vice president of one of the investor victims, allegedly

14   containing discrepancies with the recording of a December 2013 investor call.  Mot. 14–15.

15           "*Napue* does not create a 'per se rule of reversal.'"  *Panah v. Chappell*, 935 F.3d 657, 664

16   (9th Cir. 2019) (quoting *Sivak v. Hardison*, 658 F.3d 898, 912 (9th Cir. 2011)).  The testimony or

17   evidence in question must be material to result in reversal.  *Id.*

18           The alleged government misconduct here is the solicitation of Mr. Tolbert's recollections

19   about an investor call without admitting the actual recording of the call, which Mr. Balwani claims

20   reflected a different characterization than Mr. Tolbert's recollections.   However, even if this

21   argument prevails, it is limited to Count 5, *i.e.*, the investor fraud conviction that involved Mr.

22   Tolbert.  Mr. Balwani also has not established how the corresponding discrepancies between the

23   recording and Mr. Tolbert's testimony would be material to—and therefore require reversal of—

24   the conviction on the transaction and investor fraud alleged in Count 5.  And even assuming the

25   error is prejudicial and does somehow necessitate reversal of Count 5, Mr. Balwani has not shown

26   that this error requires reversal of *all* investor fraud counts on which Mr. Balwani was convicted

27   and sentenced to imprisonment.

28

The Court finds that the question of whether the government engaged in misconduct by introducing Mr. Tolbert's testimony without the accompanying recording is not the type that is likely to result in reversal or a new trial of all counts.

### D.    LIS Evidence

Mr. Balwani challenges the Court's previous denial of his motion to suppress evidence of customer complaints, testing results, and the CMS report findings, as well as its denial of his request for a "missing evidence" instruction.  ECF No. 1326, at 30–31.  "Just like all other evidentiary errors," the admission of the above evidence is subject to harmless error review, meaning reversal is required only if there is a finding of prejudice.  *Wells*, 879 F.3d at 923.

Mr. Balwani claims that the suppression of such evidence would have resulted in an acquittal on all counts because they related to a common underlying allegation: the accuracy and reliability of Theranos' clinical testing.  Mot. 16–17; Reply 12.  However, the TSI did not solely claim that Mr. Balwani's fraud on Theranos investors consisted of representations about the accuracy of Theranos's clinical testing—it also alleged that Mr. Balwani made misrepresentations regarding the company's financial status, reliance on third-party and commercially available devices, and validation by pharmaceutical companies.  TSI ¶ 12.  These misrepresentations to Theranos investors—and the evidence in support thereof—do not turn on whether Theranos's clinical tests were inaccurate and, therefore, those convictions would not be reversed by the requested suppression and missing evidence instruction.

### E.    Dr. Rosendorff's Bias and Post-Trial Conduct

Mr. Balwani also claims that the admission of testimony regarding Dr. Rosendorff's post-Theranos employment would have resulted in reversal of all counts because it would demonstrate the bias in Dr. Rosendorff's testimony.  Mot. 17; Reply 13–14.  Furthermore, Mr. Balwani claims that he should have been entitled to a new trial or evidentiary hearing based on Dr. Rosendorff's post-trial conduct at Ms. Holmes' residence.  Mot. 17–18.

Mr. Balwani's reliance on Dr. Rosendorff's testimony is misplaced.  Dr. Rosendorff's testimony arose from his tenure as Theranos' lab director and, per Mr. Balwani, "was crucial to determining the accuracy of Theranos' technology, Mr. Balwani's knowledge of alleged

deficiencies in that technology, and his attitude toward regulatory compliance." Mot. 17. Despite conclusory assertions that these issues were "core to all counts," Dr. Rosendorff's testimony is primarily focused on Theranos's lab operations and bear little, if any, weight as to the fraudulent representations made to investors. *See supra* Section III.B.4. Any question focusing on Dr. Rosendorff's bias, therefore, would not be the type likely to result in reversal or new trial on all convicted counts, especially where Dr. Rosendorff was subjected to extensive cross-examination over three days of trial. Nor would reversal or a new trial be likely based on an evidentiary hearing into Dr. Rosendorff's opinion of the government's presentation of evidence at Ms. Holmes' trial. *See generally* ECF No. 1636, at 3–8 (outlining reasons for denying new trial based on Dr. Rosendorff's post-trial conduct).

Even if the Court admitted evidence of Dr. Rosendorff's post-Theranos employment and permitted Mr. Balwani to ask Dr. Rosendorff about his post-trial conduct, these questions are not so integral to the merits of all convictions such that a favorable appellate decision would likely result in reversal or a new trial.

### F.    Department of Defense Representations

Mr. Balwani takes issue with the admission of evidence regarding misrepresentations in materials Theranos provided to the military and argues that such evidence constituted inadmissible character evidence under Federal Rule of Evidence 404(b). He claims that, had such evidence instead been suppressed, he would have been acquitted of the investor counts. Mot. 18.

Here, Mr. Balwani's convictions for investor fraud involved many different misrepresentations made to investors, regarding Theranos's testing capabilities, validation by pharmaceutical companies, Theranos's relationship with Walgreens and the Department of Defense, and the company's financial projections. *See* ECF No. 1645, at 7–8. The representations regarding the Department of Defense, therefore, constitute only one facet of the larger body of misrepresentations made to investors. Even if the Ninth Circuit were to agree with Mr. Balwani that the evidence of Theranos's representations to the Department of Defense should have been suppressed, the Court cannot find that this evidence on its own was "so integral to the merits of the

1    [investor fraud] conviction . . . that a contrary appellate holding is likely to require reversal of the

2    conviction or a new trial."  *Miller*, 753 F.2d at 23.

3         The Court accordingly finds that the question of whether evidence regarding Theranos's

4    misrepresentation to the Department of Defense should have been admitted is not one that is likely

5    to result in reversal or a new trial.

6         **G.    Standard of Proof at Sentencing**

7         Finally, Mr. Balwani asserts that, had the Court applied the "clear and convincing"

8    standard in sentencing him, he would have received either probation or a sentence shorter than the

9    time for appeal.  Mot. 19.  In doing so, Mr. Balwani presumes that a favorable appellate decision

10   on this question would result in a loss amount of zero.  *Id.* ("And without the loss amount, the

11   resulting Guidelines range would have been 4-10 months.").

12        Mr. Balwani's perfunctory suggestion is not supported by the jury's finding that he was

13   guilty beyond a reasonable doubt of defrauding six different investors of amounts surpassing $150

14   million.  In addition to the jury's convictions, the Court's Order on Sentencing recounted the

15   evidence supporting its decisions to include certain specified investors in the loss calculation

16   analysis.  ECF No. 1730, at 14–20.  The Court cannot say that this body of evidence would be

17   likely to fail the "clear and convincing" standard (*i.e.*, that the Court lacks "an abiding conviction

18   that the truth of the factual contentions at issue is highly probable") as to so many investors that

19   Mr. Balwani would only be subject to imprisonment for a few years.  *United States v. Lonich*, 23

20   F.4th 881, 916 (9th Cir. 2022) (internal brackets and quotation marks omitted).  The question of

21   whether the Court applied the correct standard of proof at sentencing, therefore, is not one that is

22   likely to result in reversal or a new trial on the related investor counts.

23   **V.    CONCLUSION**

24        Although the Court finds that Mr. Balwani is not a flight risk or a danger to the safety of

25   the community, it is unable to find that he has raised a "substantial question of law or fact" that if

26   "determined favorably to [him]on appeal, [would be] likely to result in reversal or an order for a

27   new trial of all counts on which imprisonment has been imposed."  *Handy*, 761 F.2d at 1283; 18

28   U.S.C. § 3143(b).

United States District Court
Northern District of California

Case No.: 5:18-cr-00258-2 EJD                    16
ORDER DENYING MOTION FOR
RELEASE PENDING APPEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        Based on the foregoing, the Court DENIES Mr. Balwani's Motion for Release Pending

Appeal.

        **IT IS SO ORDERED.**

Dated: March 9, 2023

                                                    _____
                                                    EDWARD J. DAVILA
                                                    United States District Judge